# EXHIBIT B – PART 2 OF 3

## COUNT III
## DEFENDANTS AMERISOURCE, CARDINAL AND MCKESSON'S VIOLATION OF WEST VIRGINIA UNIFORM CONTROLLED SUBSTANCES ACT

107.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 106.

108.    The Defendants Amerisource, Cardinal and McKesson intentionally contributed to the opioid epidemic in the state of West Virginia through repeated intentional violations of various provisions of the West Virginia Uniform Controlled Substances Act and through reckless disregard to the safety and wellbeing of the citizens of the City of Huntington.

109.    The Defendants Amerisource, Cardinal and McKesson intentionally failed to meet or otherwise misrepresented their compliance with the requirements of W.Va. Code § 60A-8-1 et seq. and otherwise intentionally violated the West Virginia Uniform Controlled Substances Act.

110.    The Defendants Amerisource, Cardinal and McKesson intentionally failed to ensure their conduct conformed to industry standards, West Virginia law and other regulations.

111.    The Defendants Amerisource, Cardinal and McKesson intentionally violated industry standards, West Virginia law, and other regulations by regularly distributing obscene quantities of commonly-abused, highly addictive controlled substances to clients who were serving a customer base comprised of individuals who were abusing prescription medications, many of whom were addicted and whom can reasonably be expected to become addicted or to engage in illicit drug transactions.

112.    The Defendants Amerisource, Cardinal and McKesson's intentional acts and omissions have led to the dispensing of controlled substances for non-legitimate medical purposes and fueling an opioid epidemic in the City of Huntington.

113.    The Defendants Amerisource, Cardinal and McKesson's intentional acts and omissions supplied millions of doses of commonly-abused, highly addictive controlled

substances that supported the demands of pain clinics that provided highly addictive prescription pain killers to individuals with no medical evidence supporting the prescription.

114.    The Defendants Amerisource, Cardinal and McKesson's intentional acts and omissions fueled countless prescriptions that were primarily filled to divert the medication to illegal purposes.

115.    The Defendants Amerisource, Cardinal and McKesson's intentional violations of West Virginia law make them liable for all the damages which are sustained there from W.Va. Code Section 55-7-9.

116.    The Defendants Amerisource, Cardinal and McKesson's intentional acts and omissions have proximately caused and substantially contributed to damage suffered by the City of Huntington, and created conditions which contribute to the violation of West Virginia laws by others.

117.    The Defendants Amerisource, Cardinal and McKesson's intentional acts and omissions have proximately caused and substantially contributed to damages suffered by Plaintiff and were in violation of the customs, standards and practices within Defendants' own industries.

118.    Upon information and belief, the Defendants Amerisource, Cardinal and McKesson continue to intentionally violate West Virginia laws and regulations, United States laws and regulations, and Defendants' industry customs, standards and practices which continue to proximately cause substantial damages to Plaintiff.

## COUNT V
## DR. CHANEY'S VIOLATION OF
## VIOLATION OF WEST VIRGINIA
## UNIFORM CONTROLLED SUBSTANCES ACT

119.   Plaintiff incorporates by reference the allegations in paragraphs 1 through 118.

120.   Dr. Chaney constructively delivered controlled substances requiring valid prescriptions by the issuance of purported prescriptions on behalf of purported patients who received the controlled substances from various pharmacists who filled such prescriptions.

121.   Dr. Chaney issued such prescriptions intentionally or knowingly outside the usual "course of professional practice or research," thereby not engaging in the authorized activities of a "practitioner," as defined in W.Va. Code, 60A-1-101(v), as amended. Dr. Chaney's prescriptions were issued intentionally or knowingly without a legitimate medical other authorized purpose.

122.   By virtue of Dr. Chaney's actions, he constructively delivered controlled substances in violation of W.Va. Code, 60A-4-401(a), as amended, which is part of West Virginia's Uniform Controlled Substances Act.

123.   Defendant Dr. Chaney's intentional violations of West Virginia law make him liable for all the damages which are sustained therefrom. W.Va. Code § 55-7-9.

124.   Defendant Dr. Chaney's intentional acts and omissions have proximately caused and substantially contributed to damage suffered by the City of Huntington, and created conditions which contribute to the violation of West Virginia laws by others.

## COUNT Y
## UNJUST ENRICHMENT

125.   Plaintiff incorporates by reference the allegations in paragraphs 1 through 124.

126.   As a result of all Defendants' actions, Plaintiff has expended substantial amounts of money annually that  it would not have otherwise expended on numerous services through various agencies, including, but not limited to: increased law enforcement, emergency response teams, prosecutors and prosecutions, courts and court personnel,  public defender services, corrections and correctional facilities,  probation  and  parole,  public  welfare  and  service agencies,  healthcare  and  medical services and drug abuse education and treatment.

127.   Plaintiff remains responsible for costs of prescriptions, health care, and other medically-related costs, rehabilitation, and work-related programs, workers' compensation, public insurance, law enforcement, prosecution costs, court related costs, public defender services, correctional institutions, probation and parole services, which costs have substantially increased as a result of the Defendants' acts and omissions.

128.   Plaintiff will continue to incur these increased costs in the future as a result of the Defendants' conduct.

129.   Collectively, Defendants made large profits while fueling the opioid epidemic in West Virginia and the City of Huntington.

130.   The Defendants Amerisource, Cardinal and McKesson continue to receive considerable profits from the distribution of controlled substances in the City of Huntington.

131.   The Defendants have thus been enriched unjustly by neglecting its duty of distributing drugs only for proper medical purposes, which are for purposes other than legitimate medical needs.

132.   The unjust enrichment of the Defendants is directly related to the damage, loss and detriment to the Plaintiff.

133.    The Defendants negligent, intentional, malicious, oppressive, illegal and unethical acts, omissions, and wrongdoing have unjustly enriched the Defendants and are directly related to the damages and losses of the Plaintiff.

## PRAYER

WEHREFORE, Plaintiff prays that the Court grant the following relief:

1.    Order a jury trial on all issues so triable to determine damages as a result of the Defendants' actions outlined in this Complaint.

2. Enter Judgment in favor of Plaintiff;

3. Enter a temporary restraining order which:

   a. Prevents Defendants from continuing to violate West Virginia laws;
   b. Prevents Defendants from continuing to violate United States laws and regulations relating to the distribution of controlled substances;
   c. Mandates that Defendants promptly notify the appropriate state and federal authorities of any and all suspicious orders for controlled substances as received from parties who are located in the City of Huntington;
   d. Mandates Defendants submit their system for determining suspicious orders to those West Virginia authorities for prior approval, and to enjoin Defendants from distributing any controlled substance in the City of Huntington for any non-legitimate medical purpose.

4. Enter a permanent restraining order which:

   a. Prevents Defendants from continuing to violate West Virginia laws;
   b. Prevents Defendants from continuing to violate United States laws and regulations relating to the distribution of controlled substances;
   c. Mandates that Defendants promptly notify the appropriate state and federal authorities of any and all suspicious orders for controlled substances as received from parties who are located in the City of Huntington;
   d. Mandates Defendants submit their system for determining suspicious orders to those West Virginia authorities for prior approval, and to enjoin Defendants from distributing any controlled substance in the City of Huntington for any non-legitimate medical purpose; and
   e. Mandates Defendants provide Plaintiff with the assistance necessary to address the addiction and the resulting destruction left by Defendants' actions.

5.    Award   punitive   damages   for   Defendants'   willful,   wanton,   malicious,

oppressive,  and intentional actions as detailed herein;

6.    Award attorneys' fees and costs; and

7.    Award such other relief as this Court deems just and appropriate.

**PLAINTIFF SEEKS A TRIAL BY JURY FOR ALL COUNTS SO TRIABLE.**

                                                            **THE CITY OF HUNTINGTON,**
                                                            By Counsel:

CHARLES R. "RUSTY" WEBB (WVSB No. 4782)
THE WEBB LAW CENTRE, PLLC
716 Lee Street, East
Charleston, West Virginia  25301
Telephone: (304) 344-9322
Facsimile: (304) 344-1157
rusty@rustywebb.com



**SUMMONS**

2017 JAN 19 PM 1: 28

IN THE CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

HOOD
CLERK

THE CITY OF HUNTINGTON,

    Plaintiff,

v.                             Civil Action No.: 17-C-38

AMERISOURCEBERGER DRUG CORPORATION,
CARDINAL HEALTH, INC.,              /s/ CHRISTOPHER D. CHILES
MCKESSON CORPORATION and
GREGORY DONALD CHANEY, M.D.,

    Defendants.

| **DEFENDANT** | **DAYS TO ANSWER** | **SERVICE** |
|---|---|---|
| **GREGORY D. CHANEY, M.D.** | 30 | Certified mail |
| 1426 SPRING BROOK ROAD | | |
| KENOVA, WV, 25530 | | |

**To the above-named Defendant:**

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and

required to serve upon <u>Charles R. "Rusty" Webb</u>, Plaintiff's attorney, whose address is <u>716 Lee</u>

<u>Street, East, Charleston, West Virginia 25301</u>, an Answer, including any related Counterclaim

you may have, to the Complaint filed against you in the above-styled civil action, a true copy of

which is herewith delivered to you. You are required to serve your Answer within timeframe, as

set forth above, following service of this Summons upon you, exclusive of the day of service. If

you fail to do so, judgment by default will be taken against you for the relief demanded in the

Complaint and you will be thereafter barred from asserting in another action any claim you may

have which must be asserted by Counterclaim in the above-styled civil action.

/s/ JEFFREY E. HOOD

Dated: JAN 1 9 2017

CLERK OF COURT

☒ Service - Certified (RD)
☐ Service - Sheriff
Returned to Atty. for Service
...... to Pltf. for Service



## SUMMONS

FILED COPY

2017 JAN 19 PM 1: 28

### IN THE CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

COD
CLERK

THE CITY OF HUNTINGTON,

    Plaintiff,

v.                                  Civil Action No.: 17-C- 38

AMERISOURCEBERGER DRUG CORPORATION,    /s/ CHRISTOPHER D. CHILES
CARDINAL HEALTH, INC.,  MCKESSON CORPORATION and
GREGORY DONALD CHANEY, M.D.,

    Defendants.

| DEFENDANT | DAYS TO ANSWER | SERVICE |
|---|---|---|
| **AMERISOURCEBERGER DRUG CORPORATION** CT CORPORATION SYSTEM 5400 D BIG TYLER ROAD CHARLESTON, WV, 25313 | 30 | West Virginia Secretary of State |

**To the above-named Defendant:**

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon Charles R. "Rusty" Webb, Plaintiff's attorney, whose address is 716 Lee Street, East, Charleston, West Virginia 25301, an Answer, including any related Counterclaim you may have, to the Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you.  You are required to serve your Answer within timeframe, as set forth above, following service of this Summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by Counterclaim in the above-styled civil action.

Dated: JAN 19 2017

/s/ JEFFREY E. HOOD

CLERK OF COURT

☐ Service - Certified (RD)
☐ Service - Sheriff
☐ Returned to Atty. for Service
☐ Returned to Pltf. for Service
☒ SOS

FILED
COPY
**SUMMONS**

2017 JAN 19 PM 1:28

IN THE CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

HOOD
CLERK

THE CITY OF HUNTINGTON,

    Plaintiff,

v.                                     Civil Action No.: 17-C-_38_

AMERISOURCEBERGER DRUG CORPORATION,
CARDINAL HEALTH, INC.,  MCKESSON CORPORATION and
GREGORY DONALD CHANEY, M.D.,

/s/ CHRISTOPHER D. CHILES

    Defendants.

| **DEFENDANT** | **DAYS TO ANSWER** | **SERVICE** |
|---|---|---|
| **CARDINAL HEALTH, INC.**<br>c/o CORPORATION SERVICE COMPANY<br>209 WEST WASHINGTON STREET<br>CHARLESTON, WV, 25302 | 30 | West Virginia Secretary of State |

**To the above-named Defendant:**

    IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and

required to serve upon <u>Charles R. "Rusty" Webb</u>, Plaintiff's attorney, whose address is <u>716 Lee

Street, East, Charleston, West Virginia 25301</u>, an Answer, including any related Counterclaim

you may have, to the Complaint filed against you in the above-styled civil action, a true copy of

which is herewith delivered to you.  You are required to serve your Answer within timeframe, as

set forth above, following service of this Summons upon you, exclusive of the day of service.  If

you fail to do so, judgment by default will be taken against you for the relief demanded in the

Complaint and you will be thereafter barred from asserting in another action any claim you may

have which must be asserted by Counterclaim in the above-styled civil action.

/s/ JEFFREY E. HOOD

Dated:   JAN 19 2017

CLERK OF COURT

☐ Service - Certified (RD)
☐ Service - Sheriff
☐ Returned to Atty. for Service
☐ Returned to Pltf. for Service
☒ SOS

**SUMMONS**



FILED
COPY

2017 JAN 19 PM 1:20

O JD
CLERK

IN THE CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

THE CITY OF HUNTINGTON,

    Plaintiff,

v.                                  Civil Action No.: 17-C-$38$

AMERISOURCEBERGER DRUG CORPORATION,    /s/ CHRISTOPHER D. CHILES
CARDINAL HEALTH, INC.,  MCKESSON CORPORATION and
GREGORY DONALD CHANEY, M.D.,

    Defendants.

| **DEFENDANT** | **DAYS TO ANSWER** | **SERVICE** |
|---|---|---|
| **MCKESSON CORPORATION** c/o PRENTICE HALL 1600 LAIDLEY TOWER CHARLESTON, WV 25301 | 30 | West Virginia Secretary of State |

**To the above-named Defendant:**

    IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon <u>Charles R. "Rusty" Webb</u>, Plaintiff's attorney, whose address is <u>716 Lee Street, East, Charleston, West Virginia 25301</u>, an Answer, including any related Counterclaim you may have, to the Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you.  You are required to serve your Answer within timeframe, as set forth above, following service of this Summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by Counterclaim in the above-styled civil action.

/s/ JEFFREY E. HOOD

Dated:_____JAN 1 9 2017_____

CLERK OF COURT

☐ **Service - Certified (RD)**
☐ **Service - Sheriff**
☐ **Returned to Atty. for Service**
☒ **Returned to Pltf. for Service**

```
          Cabell County Circuit Clerk's Office          Page:    1
          750 5th Avenue
          Huntington, WV  25701

RECEIPT
NUMBER: 271591                                    January 19, 2017

Received of: Charles R. Webb

The exact sum of Two Hundred and Thirty Five Dollars and 00 cents


Plaintiff: The City of Huntington
Defendant: Amerisourceberger Drug Corporation, Cardinal Health, I +more

Case Number: CK-6-2017-C-38

Description                                                  Amount
FILE      CIVIL      Filing Fee                              200.00
SERVICE   1CCK       First Class Mail by Circuit Clerk         5.00
                     to Amerisourceberger Drug
SERVICE   1CCK       First Class Mail by Circuit Clerk         5.00
                     to Cardinal Health, Inc
SERVICE   1CCK       First Class Mail by Circuit Clerk         5.00
                     to McKesson Corporation
SERVICE   CERC       Certified Mail by Circuit Clerk          20.00
                     to Gregory D. Chaney MD
PAYMENT-CHECK (3312)                                        -235.00

                     Jeffrey E. Hood, Circuit Clerk

                     Deputy _____
                            Sarah Board
```

| PLAINTIFF(S): THE CITY OF HUNTINGTON<br>DEFENDANT(S): AMERISOURCEBERGER DRUG CORP.,<br>CARDINAL HEALTH, INC., MCKESSON CORP. and GREGORY<br>DONALD CHANEY, M.D. | CASE NO.: 17-C-38<br><br>2017 JAN 26 PM 1: 50<br><br>CLERK |

## II.   TYPE OF CASE:

| TORTS | | OTHER | CIVIL | |
|---|---|---|---|---|
| ☐ Asbestos | ☐ Adoption | | ☐ Appeal from Magistrate Court | |
| ☐ Professional Malpractice | ☐ Contract | | ☐ Petition for Modification of Magistrate Sentence | |
| ☐ Personal Injury | ☐ Real Property | | ☐ Miscellaneous Civil | |
| ☐ Product Injury | ☐ Mental Health | | ☐ Other | |
| ☒ Other Tort | ☐ Appeal of Administrative Agency | | ☐ | |

III.   JURY DEMAND:   ☒ Yes   ☐ No

CASE WILL BE READY FOR TRIAL BY: January, 2018

IV.   DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS DUE TO A DISABILITY OR AGE?
☐ Yes  ☒ No
☐ Wheelchair accessible hearing room and other facilities
☐ Interpreter or other auxiliary aid for the hearing impaired
☐ Reader or other auxiliary aid for the visually impaired
☐ Spokesperson or other auxiliary aid for the speech impaired
☐ Other: _____

| Attorney Name: | Charles R. "Rusty" Webb<br>WVSB No.: 4782 | Representing: |
| Firm: | The Webb Law Centre, PLLC | ☒ Plaintiff  ☐ Defendant |
| Address: | 713 Lee Street, East<br>Charleston, WV 25301 | |
| Telephone: | (304) 344-9322 | |

Dated: January 23, 2017

_Charles R. Webb_

Charles R. "Rusty" Webb (WVSB No.: 4782)

A copy, Teste:

Circuit Clerk

IN THE CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

FILED

2017 MAR 26 PM 1: 50

CLERK

THE CITY OF HUNTINGTON,

     Plaintiff,

v.

                                    Civil Action No.: 17-C-_38_

AMERISOURCEBERGER DRUG CORPORATION,
CARDINAL HEALTH, INC.,
MCKESSON CORPORATION and
GREGORY DONALD CHANEY, M.D.,

     Defendants.

## AMENDED COMPLAINT

COMES NOW the Plaintiff, the City of Huntington, West Virginia, by counsel Charles R. "Rusty" Webb of The Webb Law Centre, PLLC and for its Amended Complaint against Defendants, AmerisourceBergen Drug Co. (Amerisource), Cardinal Health Inc. ("Cardinal") McKesson Corporation ("McKesson") and Gregory Donald Chaney, M.D. ("Dr. Chaney") and state as follows:

1.     Plaintiff, the City of Huntington, is a political subdivision of the state of West Virginia.

2.     The City of Huntington has been severely damaged by Defendants' collective actions. The Defendants have illegally and tortiously profited from the prescription drug abuse problems knowingly dumping opioids into the City of Huntington. The devastation caused by these Defendants goes beyond the economic damage; the City of Huntington's families have lost children, parents and grandparents. This epidemic of opioid abuse caused by the Defendants has taken and destroyed the lives of many residents of the City of Huntington.

3.     Upon information and belief, Defendant AmerisourceBergen Drug Corporation ("Amerisource") is a Delaware Corporation that conducts business in West Virginia. Upon

information and belief, Amerisource distributes pharmaceuticals to retail pharmacies, hospitals and county health departments. Upon information and belief, Amerisource is a registrant with the West Virginia Board of Pharmacy and does substantial business in the State of West Virginia wherein it has, during the period relevant herein, distributed pharmaceuticals in the City of Huntington.

4.      Upon information and belief, Cardinal Health Inc. ("Cardinal") is an Ohio Corporation that conducts business in West Virginia. Upon information and belief, Cardinal distributes pharmaceuticals to retail pharmacies, hospitals and county health departments. Upon information and belief, Cardinal is a registrant with the West Virginia Board of Pharmacy and does substantial business in the state of West Virginia wherein it has, during the period relevant herein distributed pharmaceuticals in the City of Huntington.

5.      Upon information and belief, McKesson Corporation ("McKesson") is a Delaware Corporation with headquarters in California that conducts business in West Virginia. Upon information and belief, McKesson distributes pharmaceuticals to retail pharmacies, hospitals and county health departments. Upon information and belief, McKesson is a registrant with the West Virginia Board of Pharmacy and does substantial business in the State of West Virginia wherein it has, during the period relevant herein, distributed pharmaceuticals in the City of Huntington.

6.      Upon information and belief, the above named Defendants shipped 423 million pain pills to West Virginia between 2007 and 2012, earning $17,000,000,000 in net income.

7.      Upon information and belief, Dr. Chaney was a licensed physician who had held an active license, No. 16608, to practice medicine in the State of West Virginia which was issued by the Board on July 1, 1991.

8.      Upon information and belief, Dr. Chaney's practice address of record with the Board was in Barboursville, West Virginia.

9.      Upon information and belief, Dr. Chaney was the sole shareholder of Area Health Systems, Inc., d/b/a Tri-State Medical Center.  From January 1, 1996 through January 1, 2016, Area Health Systems, Inc. held a Certificate of Authorization as a Medical Corporation issued by the Board, Registration Number 01213.

10.     Upon information and belief, over the relevant time period, Dr. Chaney wrote prescriptions for medications, including but not limited to schedule II opioids, to Huntington residents.

11.     Through their acts and omissions the Defendants have inserted themselves as an integral part of the epidemic of opioid abuse. As alleged herein, this epidemic consist of medical providers, pharmacies and distributors of controlled substances, each of whom knowingly or while acting grossly negligent prescribe, dispense or distribute prescription medicine for illegitimate medical purposes. Each act alone would be ineffective to divert controlled substances for illegitimate medical purposes.  Equally, each act together causes and contributes to the opioid epidemic.

12.     The actions of Defendants have caused and will continue to cause the City of Huntington to disburse substantial sums of public funds to deal with the significant consequences of the opioid epidemic that was fueled by Defendants' illegal, reckless, and malicious actions in flooding the state with highly addictive prescription medications without regard for the adverse consequences to the City of Huntington or its residents.

13.     The Defendants' actions, motivated by financial gain without regard to the welfare of the City of Huntington and its residents, have caused substantial damages, including, but not

limited to, increased expenses of drug abuse treatment program, prevention and training costs (for law enforcement, hospitals and schools), costs of the drug Naloxone as well as education, training and use, youth development community programs, medical care and hospitalizations, increased costs of law enforcement, increased costs of prosecutions and most significantly increased costs of incarcerations.

14.     This Court has jurisdiction over this case and over Defendants pursuant to the provisions of W .Va. Code § 56-3-33.

15.     Venue is appropriate in Cabell County, West Virginia as the acts and practices of the Defendants at issue herein occurred in and caused damages in the City of Huntington, West Virginia.

16.     The Plaintiff affirmatively expresses that the City of Huntington is not seeking any relief in this action for the federal share of funding for the State Medical Program.

17.     Claims for damages for any federal monies expended by the City of Huntington are hereby expressly disavowed.

## FACTS

18.     In the last six years, drug wholesalers have showered the state of West Virginia with 780 million hydrocodone and oxycodone pills, while 1,728 West Virginians have fatally overdosed on those two painkillers. The unregulated shipments amount to 433 pain pills for every man, woman and child in the state of West Virginia.

19.     In the last 20 years, an opioid epidemic has infected this country, particularly in Huntington, West Virginia.  Defendants each played a key role in the creation and continuation of the opioid epidemic resulting momentous damages.

20.     The Defendants each profited while disregarding the impact that their actions had on the people under the influence of these drugs.

21.     Opioids are effective treatments for short-term post-surgical and trauma-related pain, and for palliative (end-of-life) care.[1]  However, opioids are addictive and subject to abuse, particularly when used long-term for chronic non-cancer pain (pain lasting three months or longer, hereinafter referred to as "chronic pain"), and should not be used except as a last-resort.

22.     As pharmaceutical wholesalers and a practicing physician, Defendants have known for years that with prolonged use, the effectiveness of opioids wanes, requiring increases in doses and markedly increasing the risk of significant side effects and addiction.

23.     Prescription opioids, which include well-known brand-name drugs like OxyContin and Percocet, as well as generics like oxycodone and hydrocodone, are narcotics. They are derived from or possess properties similar to opium and heroin, and thus, they are regulated as controlled substances.[2]

24.     Prescription opioids work by binding to receptors on the spinal cord and in the brain, dampening the perception of pain. Opioids also can create a euphoric high, which can make them addictive. At certain doses, opioids can slow the user's breathing, causing respiratory depression and, possibly, death.

25.     The dramatic increase in opioid prescriptions to treat common chronic pain conditions has resulted in a population of addicts who seek drugs from doctors. When turned

---

[1] "Originally a term denoting synthetic narcotics resembling opiates but increasingly used to refer to both opiates and synthetic narcotics." Stedman's Medical Dictionary, 27nd Edition.

[2] Since passage of the Controlled Substances Act ("CSA") in 1970, opioids have been regulated as controlled substances. Controlled substances are categorized in five schedules, ranked in order of their potential for abuse, with Schedule I being the highest. The CSA imposes a hierarchy of restrictions on prescribing and dispensing drugs based on their medicinal value, likelihood of addiction or abuse, and safety. Opioids generally had been categorized as Schedule II or Schedule III drugs. Schedule II drugs have a high potential for abuse, have a currently accepted medical use, and may lead to severe psychological or physical dependence. 21 U.S.C. § 812. Schedule II drugs may not be dispensed without an original copy of a manually signed prescription, which may not be refilled, from a doctor.

down by one physician, many of addicts deploy increasingly desperate tactics-including doctor-shopping, use of aliases, and criminal means to satisfy their cravings or turning to heroin as a cheaper alternative to prescription drugs.

26.     Opioid abuse has not displaced heroin, but rather triggered resurgence in its use imposing additional burdens on the City of Huntington and local agencies that address heroin use and addiction.  Huntington, West Virginia experienced 26 heroin overdoses in the span of four hours on August 17, 2016.  The amount of calls that were received overwhelmed emergency responders. When the first few calls came in, three ambulances were already out dealing with overdoses. For a half-hour span, there were no ambulances available in the county to send.  Eight of the victims were revived using the opioid-overdose-reversing drug naloxone and others by a manual resuscitator "a bag valve mask" to stimulate breathing. One victim was given three doses of naloxone.[3]

27.     A recent study by the Centers for Disease Control and Prevention found that hepatitis C cases in the State West Virginia have more than tripled between 2006 and 2012. The recent outbreak of hepatitis C, which can be transmitted by injecting drugs or having unprotected sex, is centered in rural areas among young, white drug users. West Virginia has seen 3,000 drug overdose deaths in the last five years, or an average of 600 a year.  In Cabell County alone this year, there were at least 32 overdose deaths and 360 drug overdoses, including heroin and prescription drugs. There have been 406 drug-related arrests in Huntington this year[4].

28.     According to the CDC, the percentage of heroin users who also use opioid pain relievers rose from 20.7% in 2002 to 2004 to 45.2% in 2011 to 2013. Heroin produces a very similar high to prescription opioids, but is often cheaper and easier to obtain.  While a single

---

[3] See http://www.cnn.com/2016/08/ 17/health/west-virginia-city-has-27-heroin-overdoses-in-4-hours/index.html
[4] http://www.dailymail.co.uk/news/article-3128229/West-Virginia-rate-drug-overdose-deaths.html#ixzz4W7qD5w3j

opioid pill may cost $10-$15 on the street, users can obtain a bag of heroin (0.1g), with multiple highs, for the same price.

29.    West Virginia had the highest drug-overdose death rate in the US in 2014, according to a recent CDC report[5]. The state also has one of the highest prescription rates of opioids in the United States[6].   West Virginia ranks in the top 10 for the highest rate of prescriptions given out for high-dose opioids and extended-release opioids both of which are targets for abusers.

30.    The roots of the opioid epidemic in West Virginia mirror the rest of the United States. However, there are crucial differences. As in the rest of the United States, opioid prescriptions started skyrocketing in the mid-1990s as pharmaceutical companies introduced powerful new painkillers such as MS Contin and Oxycontin to the public. Medical groups began calling pain the "fifth vital sign" that doctors should attend to, according to Dr. Ted Cicero, a professor of psychiatry at Washington University in St. Louis and an opioid-use researcher.

> "*There was a big push saying we had a big problem with the under-treatment of pain*,"
>
> "*Opioid prescriptions skyrocketed from the early '90s until about 2010.*"

The same phenomenon applied in West Virginia but collided with two other factors 1) A disproportionate number of jobs involving manual labor like coal mining, timbering, and manufacturing; and 2) High rates of joblessness.

31.    West Virginia has long been known as "coal country." Mining, timbering, and manufacturing play a huge role in West Virginia's economy[7]. They are all jobs that require heavy manual labor and leave workers prone to injury. Coal mining accounts for more than

---

[5] http://www.cdc.gov/drugoverdose/data/statedeaths.html.
[6] http://www.businessinsider.com/these-are-the-states-prescribing-the-most-opioid-painkillers-2016-3.
[7] http://www.seniorjobbank.org/database/West_Virginia/West_Virginia.html.

18,000 jobs in West Virginia[8]. Although the West Virginia's coal mines have lost more than 7,000 jobs since 2011, the mining industry as a whole has continued to grow in the state, thanks to strong growth in the natural gas and oil industries. According to the US Bureau of Economic Analysis, mining accounted for 18% of the state's overall GDP in 2014[9].

32.     Mining operations proved to be flash points for opioid abuse when prescription practices liberalized, as workers tried to stave off injuries. John Temple, a professor at West Virginia University and the author of the 2015 book "American Pain", has offered:

> In a mining camp, there aren't a lot of doctors," he said. "That doctor is going to be more likely to opt for the quick fix and give people pills to fix their pain and get them back into the mine, rather than give them rest or therapy or those things that can actually cure pain.[10]

33.     Dr. Carl "Rolly" Sullivan, who has run the addiction program at West Virginia University Hospitals since 1985, has noted the link between opioid abuse and the West Virginian economy:

> West Virginia was ripe for the picking, We had a lot of blue-collar workers who were in farming and timbering and coal mining and things that were likely to produce injuries.
>
> There are a lot of dangerous occupations" in Appalachia, he said. "People get prescribed opioids far more frequently" for the injuries associated with them.[11].

34.     Opioid abuse was further exacerbated by a declining economy and heavy job loss in the state over the last 20 years. As of March 2016, West Virginia has the second-highest unemployment rate in the US, at 6.5%[12]. According to a Bureau of Labor Statistics report last

---

[8] http://www.nma.org/pdf/c_employment_state_region_method.pdf.
[9] https://www.afsc.org/sites/afsc.civicactions.net/files/documents/Report-state-working-west-va-2014.pdf.
[10] http://www.amazon.com/American-Pain-Unleashed-Americas-Deadliest/dp/1493007386?tag=bisafetynet-20.
[11] http://www.wvgazettemail.com/apps/pbcs.dll/article?AID=/20151017/GZ01/151019539.
[12] http://www.bls.gov/web/laus/laumstrk.htm).

August, West Virginia was the only state to experience a statistically significant decrease in employment over the previous year, losing 19,100 jobs from 2014 to 2015[13].

35.     Though the coal-mining industry has been hit hard jobs in the sector have decreased from 41,000 in 1983 to approximately 18,000 in 2016[14], according to the Mine Safety and Health Administration, other industries were struck as bad or worse. According to The Wall Street Journal, jobs in construction and manufacturing have fallen by 23% and 16%, respectively, since the recession[15].

36.     West Virginia was primed by prescriptions from work-related injuries, job loss was the gasoline on the fire. Dr. Richard Vaglienti, the director of the Pain Management Center at West Virginia University and a co-chair of West Virginia's Expert Pain Management panel, stated:

> The parts of the state that were worst hit were the areas in the southern coal fields that had just collapsed. It became a problem there and it spread throughout the state until it was everywhere," "If you look at the areas that are hardest hit, they are usually the areas that have nothing going on economically.

37.     Substance abuse in West Virginia becomes more common as joblessness increases. A lot of citizens will turn to alcohol, tobacco, illegal drugs and get high for recreation until the next job comes along.

38.     Low education levels, high rates of unemployment and job-related injuries are closely linked to abuse of alcohol, illicit drugs and prescription medications[16].

39.     As opioid prescribing rose, prescription opioids became the recreational drug of choice.[17]

---

[13] http://blogs.wsj.com/economics/2015/08/21/the-only-state-to-lose-jobs-since-july-last-year-west-virginia/.
[14] https://www.washingtonpost.com/news/wonk/wp/2013/11/04/heres-why-central-appalachias-coal-industry-is-dying/.
[15] http://blogs.wsj.com/economics/2015/08/21/the-only-state-to-lose-jobs-since-july-last-year-west-virginia/.
[16] Appalachian Regional Commission, 2009 report.

40.     The composition of the patients at the West Virginia University addiction program switched from 90% alcoholism in the 1990s to between 90% and 95% prescription painkiller addiction by 2002. Not long after, the state began cracking down on the "pill mills," tightening prescription rules, and launching a prescription drug monitoring program, leading to the arrests of many physicians and pharmacists. But at that point, the opioid epidemic was in full swing.

41.     Pharmaceuticals, like opioids, are not sold directly to pharmacies for ultimate dispensing. There is a sophisticated system which distributes the drugs across our nation.

42.     Defendants were each on notice that the controlled substances they distributed or prescribed were the kinds that were susceptible to being diverted for illegal purposes, abused, overused, and otherwise sought for illegal, unhealthy and problematic purposes. As entities involved in the distribution and prescribing of dangerous opioid medications, Defendants were engaged in an abnormally and/or inherently dangerous activity and had a duty of care under West Virginia law.

43.     The Defendants Amerisource, Cardinal and McKesson purchased opioids from manufacturers and sold them to pharmacies throughout the City of Huntington.

44.     Upon information and belief, the Defendants Amerisource, Cardinal and McKesson are registered with the West Virginia Board of Pharmacy.

45.     The Defendants Amerisource, Cardinal and McKesson knew or should have known that they were supplying vast amounts of dangerous drugs to small markets that were already facing abuse, diversion, misuse and other problems associated with the opioid epidemic. Though they had a duty to the consuming public, collectively and individually, Defendants

---

[17] http://www.salon.com/2012/04/11/americas_pill_popping_capital/.

Amerisource, Cardinal and McKesson failed to take any action to prevent or reduce the distribution of these drugs.

46.     The Defendants Amerisource, Cardinal and McKesson had the ability to slow down, question, inspect, report or otherwise limit the flow of these drugs into the City of Huntington, but chose not to do so, because they did not want to lose profits.

47.     Individuals in West Virginia cannot obtain opioids without a prescription written by a licensed medical provider.   Dr. Chaney was a licensed medical provider in West Virginia over the relevant time period. Dr. Chaney provided written opioid prescriptions for patients despite knowing that the opioids were likely to be abused, diverted, or misused. Dr. Chaney knew or should have known his actions resulted in patients obtaining dangerous drugs that they did not need, were likely to be abused, or were likely to be resold on the street.

48.     All Defendants were on notice that West Virginia law required them, inter alia, to provide effective controls and procedures to guard against diversion of controlled substances, pursuant to 15 C.S.R. § 2-4.21 and 2-4.4 and the WV Controlled Substances Act.

49.     The Defendants Amerisource, Cardinal and McKesson, knew, or should have known that West Virginia had an exceedingly high rate of illegal use and diversion of prescription opioids. Numerous publications, news sources and studies highlighted the epidemic rate of opioid abuse and overdose rates in West Virginia.

50.     The Defendants Amerisource, Cardinal and McKesson, like all pharmaceutical wholesalers, were under an obligation to report suspicious orders to the appropriate authorities. Despite having information that suspicious orders were being placed, and despite actually filling these suspicious orders time after time, McKesson did not begin to comply with its regulatory