# EXHIBIT B – PART 3 OF 3

obligations until March 2015. Since that time, McKesson has submitted 4,814 suspicious order reports.

51.     Failing to submit its required suspicious order reports is not a new development for McKesson. McKesson paid a $13.2 million fine to settle similar claims in 2008 with regard to suspicious orders from internet pharmacies.

52.     The Defendant McKesson settled a similar investigation brought by the Department of Justice in 2015 by paying $150 million and suspending the DEA registrations for three distribution centers.

53.     The Defendants Amerisource and Cardinal similarly delayed compliance with the reporting of suspicious orders. After June 2012, Cardinal finally submitted 2,426 suspicious order reports, though nine months are seemingly missing from their submissions.  In 2008 Cardinal paid a $34 million fine for failing to report suspicious orders of hydrocodone. More recently, in 2012 Cardinal's Lakeland, Florida warehouse was suspended by the DEA for two years as a result of shipping suspect orders of opioids.

54.     The Defendants Amerisource, Cardinal and McKesson were also aware that the Healthcare Distribution Management Association ("HDMA"), of which they are members, created "Industry Compliance Guidelines" based upon Drug Enforcement Agency requirements which stressed the critical role of each member of the supply chain in distributing controlled substances. These industry guidelines provided: "At the center of a sophisticated supply chain, Distributors are uniquely situated to perform due diligence in order to help support the security of controlled substances they deliver to their customers." Indeed, the HDMA advises all distributors to "Know Your Customer."

55.     Between 2007 and 2012 the Defendants Amerisource, Cardinal and McKesson have shipped 423 million doses of highly addictive controlled pain killers into West Virginia, many of which should have been stopped and/or investigated as suspicious orders.

56.     Upon information and belief, the Defendants Amerisource, Cardinal and McKesson failed to undertake any effective affirmative efforts to prevent diversion of its medicines for illegal or abusive purposes.

57.     The Defendants Amerisource, Cardinal and McKesson delivered an excessive and unreasonable number of highly addictive controlled substances in the City of Huntington.

58.     Upon information and belief, the Defendants Amerisource, Cardinal and McKesson did not refuse to ship or supply any controlled substances to any the City of Huntington pharmacy between 2007 and the present.

59.     The Defendants Amerisource, Cardinal and McKesson knew or should have known that they were supplying opioid medications far in excess of the legitimate needs for the City of Huntington.

60.     The Defendants Amerisource, Cardinal and McKesson knew or should have known that there was a high likelihood that a substantial number of the prescription pain killers they supplied to pharmacies and drug stores in the City of Huntington were being diverted to illegal use or abuse.

61.     The Defendants Amerisource, Cardinal and McKesson had a legal duty to ensure they were not filling suspicious orders, as well as to report suspicious orders.

62.     Upon information and belief, the Defendants Amerisource, Cardinal and McKesson made little to no effort to inquire of the pharmacies and drug stores in and adjacent to the City of Huntington to which they shipped substantial amounts of prescription medication, in

order to conduct due diligence to ensure the medications they were shipping were not diverted to illegal uses.

63.     The Defendants Amerisource, Cardinal and McKesson paid its sales force employees' and managers' bonuses and commissions on the sale of most or all of the highly addictive prescription pain killers supplied to and the City of Huntington.

64.     The Defendants Amerisource, Cardinal and McKesson made substantial profits from the drugs which were sold in the City of Huntington.

65.     The Defendants Amerisource, Cardinal and McKesson undertook intentional distribution of excessive prescription pain killers to a small community which showed a reckless disregard to the safety of the City of Huntington and its residents.

66.     Despite being a licensed physician, Dr. Chaney undertook no efforts to determine whether the volume of prescription pain killers he was prescribing to Huntington residents was excessive and whether any of the prescriptions he wrote should have been refused.

67.     Dr. Chaney knew or should have known that he was prescribing opioid medications far in excess of the legitimate needs for Huntington patients.

68.     Dr. Chaney knew or should have known that there was a high likelihood that a substantial number of the prescription pain killers he wrote in Huntington were being diverted to illegal use or abuse.

69.     Dr. Chaney had a legal duty to ensure he was not prescribing suspicious orders.

70.     Dr. Chaney made substantial profits from the drugs which were sold to Huntington residents.

## COUNT I
## NEGLIGENCE OF DEFENDANTS AMERISOURCEBERGER
## DRUG CORPORATION, CARDINAL HEALTH, INC. and
## MCKESSON CORPORATION

71.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 69.

72.     The Defendants Amerisource, Cardinal and McKesson are distributors of controlled substances and must comply with both the laws of West Virginia and with industry customs and standards.

73.     As licensed registrants with the West Virginia Board of Pharmacy, the Defendants Amerisource, Cardinal and McKesson were required to submit suspicious order reports.

74.     The Defendants Amerisource, Cardinal and McKesson failed to submit, or fully disclose suspicious orders.

75.     The Defendants Cardinal and McKesson negligently failed to ensure its conduct conformed to West Virginia law and regulations.

76.     The Defendants Cardinal and McKesson negligently failed to conform their conduct to United States law and regulations.

77.     The Defendants Cardinal and McKesson negligently disregarded the aforementioned factors by regularly distributing large quantities of commonly-abused, highly addictive controlled substances to clients who were serving a customer base comprised of individuals who were abusing prescription medications, many of whom were addicted and whom reasonably can be expected to become addicted or to engage in illicit drug transactions and probable heroin use.

78.     The Defendants Amerisource, Cardinal and McKesson had a duty to the City of Huntington to comply with their obligation to report suspicious orders in the City of Huntington.

79.    The Defendants Amerisource, Cardinal and McKesson breached this duty.  The breach is the proximate cause of damages suffered by Plaintiff.

80.    Industry standards also require the Defendants Amerisource, Cardinal and McKesson to:

> *Know its customers, know its customer base, know the population base served by a particular pharmacy or drug store, know the average prescriptions filled each day, know the percentage of diverted and/or abused controlled  substances distributed as compared to overall purchases, have a description of how the dispenser fulfills its responsibility  to ensure that prescriptions filled are for legitimate medical purposes, and know the identification of the physicians and bogus pain clinics and centers for the alleged treatment of pain that are the pharmacy or drug stores' most frequent prescribes.*

81.    The Defendants Amerisource, Cardinal and McKesson negligently failed to ensure its conduct conformed to industry standards.

82.    The aforementioned conduct was a direct breach of the duty Defendants Amerisource, Cardinal and McKesson owed to Plaintiff which was the proximate cause of Plaintiff suffering damages for which it seeks recovery herein.

### COUNT II NEGLIGENCE OF DR. CHANEY

83.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 82.

84.    Data obtained from an agency of the United States government for 2014 revealed that Dr. Chaney prescribed opioids to 58% of the 398 Medicare patients, compared to an average of 25% among all physicians.[18]

85.    Dr. Chaney wrote 1,357 prescriptions (to include refills) for Hydrocodone-Acetaminophen to Medicare patients in 2014. Based on an average of 30 pills per prescription, this equaled 40,700 pills.

---

[18] All Medicare data for Dr. Chaney was located at ProPublica.org.

86.     Dr. Chaney wrote 124 prescriptions (to include refills) for Oxycodone-Acetaminophen to Medicare patients in 2014. Based on an average of 30 pills per prescription, this equaled 3,720 pills.

87.     Dr. Chaney wrote 117 prescriptions (to include refills) for Tramadol HCL to Medicare patients in 2014. Based on an average of 30 pills per prescription, this equaled 3,510 pills.

88.     Dr. Chaney wrote 107 prescriptions (to include refills) for Oxycodone HCL to Medicare patients in 2014. Based on an average of 130 pills per prescription[19], this would equal 13,910 pills.

89.     In January 6, 2015, the Complaint Committee of the West Virginia Board of Medicine (West Virginia Board of Medicine) initiated an investigation of Dr. Chamber for improper prescribing of narcotic pain medication, including narcotics, to a patient who subsequently died.

90.     On or about December 4, 2015, and after vacating his former offices located at 6007 US Rt. 60, East, Dr. Chaney opened a medical office at 702 Central Avenue in Barboursville, West Virginia.

91.     The Office of Health Facility Licensure and Certification, Chronic Pain Management ["OHFLAC/CPM"] conducted a verification survey with respect to Dr. Chaney. This survey included on site review of Dr. Chaney's practice on December 8 and 9, 2015 at the 702 Central Avenue practice location.

92.     On December 29, 2015, the Board received correspondence from OHFLAC/CPM chronicling some observations of Dr. Chaney's practice on December 8-9, 2015. Specifically,

---

[19] On Dec. 1, 2015, Dr. Chaney wrote a prescription for an employee for 120 30-milligram oxycodone pills without a physical examination.

and related to the disarray and dangerous procedures employed by Dr. Chaney, the Board was advised:

a. On December 8, 2015, an OHFLAC/CPM surveyor observed a woman sitting at the front desk writing out multiple prescription by copying information from prescription bottles onto new prescriptions;

b. On December 9, 2015, at 8:50 am, an OHFLAC/CPM surveyor observed an unsecured, unsigned prescription pad lying on top of the desk;

c. On December 9, 2015, at 11:05am, an OHFLAC/CPM surveyor observed a patient arrive requesting medication refills. The patient handed prescription bottles to the receptionist, who used them to write new prescriptions. The prescriptions were then taken by the receptionist to Dr. Chaney for signature, and were subsequently provided to the patient;

d. On December 9, 2015, at 11:20am, an OHFLAC/CPM surveyor observed another patient requesting medication refills. The receptionist could not locate the patient's medical chart, and asked the patient to write down her medications on a piece of paper. The receptionist wrote prescriptions according to the paper filled out by the patient. The receptionist questioned the patient about "the insulin" and the patient told the receptionist that she did not know the name of the insulin, but that it came in an orange pen. The receptionist named off different medications and the patient identified "Novolog" as the insulin she was prescribed. The receptionist wrote the prescription and told the patient that she would have another employee fill in the sliding scale dosages. The receptionist returned and provided the patient with prescriptions. On December 9, 2015, at 11:50am, an OHFLAC/CPM surveyor observed another patient arrive and ask for medication refills. This patient's chart could not be located, and the patient was asked to list medications on a sheet of paper. The receptionist filled out prescriptions according to the list and took them to the back of the office. The receptionist returned with signed prescriptions and provided them to the patient. These prescriptions included a prescription for Norco 1 Omg three times a day.

e. The receptionist ceased writing prescriptions at 2: 15pm.

f. On December 9, 2015, an OHFLAC/CPM surveyor observed a tray containing sixteen referrals on a shelf at the receptionist's desk. The office manager stated that the referrals had not been sent due to no facsimile service at the medical office.

g. OHFLAC/CPM staff interviewed Dr. Chaney on December 9, 2015. Dr. Chaney informed them that fifty percent of the patients who come in to the medical offices just get prescriptions and are never seen by him and not charged for an office visit.

93.    The December 29, 2015 report from OHFLC/CPM also contains additional allegations related to Dr. Chaney's standard of care and improper prescribing.

94.    From December 1, 2015 through January 10, 2016, Dr. Chaney was without a functioning medical practice location.

95.    Dr. Chaney continued to prescribe medication to his patients in December 2015, including after he was without any medical practice location.

96.    As of January 1, 2016, Dr. Chaney's medical corporation is not authorized to engage in the practice of medicine.

97.    It was found that Dr. Chaney was not mentally and/or physically fit to practice medicine with reasonable skill and safety.

98.    The Complaint Committee reviewed the information received from the Evaluating Physician, the Board Investigator, and OHFLAC/CPM and determined that evidence in its possession indicated that Dr. Chaney's continuation in practice or unrestricted practice constituted as an immediate danger to the public.

99.    Thereafter, the Committee determined, based upon the evidence in its possession, to recommend that the full Board impose summary discipline in this matter, pursuant to W. Va. Code §30-3-14(k), because Dr. Chaney's continuation in practice constituted an immediate danger to the public.

100.    The conduct which formed the basis of the Complaint Committee's conclusions are predicated in whole or in part upon the following professional conduct standards:

    a.    W. Va. Code §30-3-14(c)(21) and W. Va. Code R. §1 1-1A-12.1.h., relating to an inability to practice medicine and surgery or podiatry with reasonable skill and safety due to physical or mental impairment, including deterioration through the aging process, loss of motor skill or abuse of drugs or alcohol; and/or

    b. W. Va. Code §30-3-14(c)(17), W. Va. Code R. §ll-lA-12.1.e and 12.1.j, and W. Va. Code R. §1 l-lA-12.2.d., related to engaging in dishonorable, unethical or unprofessional conduct and/or conduct that has the effect of bringing the medical profession into disrepute; and/or

    c. W. Va. Code §30-3-14(c)(19) and W. Va. Code R. §ll-lA-12.1.aa, related to gross negligence in the use and control of prescription forms; and/or

    d. W. Va. Code §30-3-14(c)(16) relating to the delegation of professional responsibilities to a person when the delegating physician knows or has reason to know that the person is not qualified by training, experience or licensure to perform them.

101.    A meeting of the West Virginia Board of Medicine was convened on Monday, January 11, 9:00a.m. At the January 11, 2016, meeting of the full Board, the Complaint Committee reported that evidence in its possession indicating that Dr. Chaney's continuation in practice or unrestricted practice constituted as an immediate danger to the public.

102.    The Board further determined, with no dissenting votes, that under all of the circumstances and given the cumulative effect of the evidence referenced herein, for Dr. Chaney to continue to hold an active license to practice medicine in the State of West Virginia, constituted as an immediate danger to the health, welfare and safety of the public.

103.    The Board concluded, as a matter of law, that such a danger to the public demands extraordinary measures, and the Board, with a quorum of the Board present and voting, therefore found, with no dissenting votes, that in accordance with its statutory mandate to protect the public interest, the license to practice medicine of Dr. Chaney, license number 16608, was summarily suspended, in accordance with the provisions of W. Va. Code §30-3-14(k) and W. Va. Code R. §11-3-10.16.

104.    As a practicing physician prescribing drugs to Huntington residents, Dr. Chaney owed a duty of care to the residents of Huntington, West Virginia.

105.   Dr. Chaney's negligent acts and omissions have led to the dispensing of controlled

substances for non-legitimate medical purposes and fueling an opioid epidemic in West Virginia.

106.   Dr. Chaney's negligent acts and omissions fueled countless prescriptions that were

primarily filled to divert the medication to illegal purposes.

107.   Dr. Chaney's negligent violations of West Virginia law make him liable for all the

damages which are sustained therefrom. W.Va. Code § 55-7-9.

108.   Dr. Chaney's negligent acts and omissions have proximately caused and

substantially contributed to damages suffered by Plaintiff.

**COUNT III**
**DEFENDANTS AMERISOURCE, CARDINAL AND MCKESSON'S**
**VIOLATION OF WEST VIRGINIA**
**UNIFORM CONTROLLED SUBSTANCES ACT**

109.   Plaintiff incorporates by reference the allegations in paragraphs 1 through 108.

110.   The Defendants Amerisource, Cardinal and McKesson intentionally contributed

to the opioid epidemic in the state of West Virginia through repeated intentional violations of

various provisions of the West Virginia Uniform Controlled Substances Act and through reckless

disregard to the safety and wellbeing of the citizens of the City of Huntington.

111.   The Defendants Amerisource, Cardinal and McKesson intentionally failed to meet

or otherwise misrepresented their compliance with the requirements of W.Va. Code § 60A-8-1 et

seq. and otherwise intentionally violated the West Virginia Uniform Controlled Substances Act.

112.   The Defendants Amerisource, Cardinal and McKesson intentionally failed to

ensure their conduct conformed to industry standards, West Virginia law and other regulations.

113.   The Defendants Amerisource, Cardinal and McKesson intentionally violated

industry standards, West Virginia law, and other regulations by regularly distributing obscene

quantities of commonly-abused, highly addictive controlled substances to clients who were

serving a customer base comprised of individuals who were abusing prescription medications, many of whom were addicted and whom can reasonably be expected to become addicted or to engage in illicit drug transactions.

114. The Defendants Amerisource, Cardinal and McKesson's intentional acts and omissions have led to the dispensing of controlled substances for non-legitimate medical purposes and fueling an opioid epidemic in the City of Huntington.

115. The Defendants Amerisource, Cardinal and McKesson's intentional acts and omissions supplied millions of doses of commonly-abused, highly addictive controlled substances that supported the demands of pain clinics that provided highly addictive prescription pain killers to individuals with no medical evidence supporting the prescription.

116. The Defendants Amerisource, Cardinal and McKesson's intentional acts and omissions fueled countless prescriptions that were primarily filled to divert the medication to illegal purposes.

117. The Defendants Amerisource, Cardinal and McKesson's intentional violations of West Virginia law make them liable for all the damages which are sustained there from W.Va. Code Section 55-7-9.

118. The Defendants Amerisource, Cardinal and McKesson's intentional acts and omissions have proximately caused and substantially contributed to damage suffered by the City of Huntington, and created conditions which contribute to the violation of West Virginia laws by others.

119. The Defendants Amerisource, Cardinal and McKesson's intentional acts and omissions have proximately caused and substantially contributed to damages suffered by

Plaintiff and were in violation of the customs, standards and practices within Defendants' own industries.

120.    Upon information and belief, the Defendants Amerisource, Cardinal and McKesson continue to intentionally violate West Virginia laws and regulations, United States laws and regulations, and Defendants' industry customs, standards and practices which continue to proximately cause substantial damages to Plaintiff.

## COUNT V
## DR. CHANEY'S VIOLATION OF
## VIOLATION OF WEST VIRGINIA
## UNIFORM CONTROLLED SUBSTANCES ACT

121.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 120.

122.    Dr. Chaney constructively delivered controlled substances requiring valid prescriptions by the issuance of purported prescriptions on behalf of purported patients who received the controlled substances from various pharmacists who filled such prescriptions.

123.    Dr. Chaney issued such prescriptions intentionally or knowingly outside the usual "course of professional practice or research," thereby not engaging in the authorized activities of a "practitioner," as defined in W.Va. Code, 60A-1-101(v), as amended. Dr. Chaney's prescriptions were issued intentionally or knowingly without a legitimate medical other authorized purpose.

124.    By virtue of Dr. Chaney's actions, he constructively delivered controlled substances in violation of W.Va. Code, 60A-4-401(a), as amended, which is part of West Virginia's Uniform Controlled Substances Act.

125.    Defendant Dr. Chaney's intentional violations of West Virginia law make him liable for all the damages which are sustained therefrom. W.Va. Code § 55-7-9.

126.    Defendant Dr. Chaney's intentional acts and omissions have proximately caused and substantially contributed to damage suffered by the City of Huntington, and created conditions which contribute to the violation of West Virginia laws by others.

## COUNT Y
## UNJUST ENRICHMENT

127.    Plaintiff incorporates by reference the allegations in paragraphs 1 through 126.

128.    As a result of all Defendants' actions, Plaintiff has expended substantial amounts of money annually that it would not have otherwise expended on numerous services through various agencies, including, but not limited to: increased law enforcement, emergency response teams, prosecutors and prosecutions, courts and court personnel, public defender services, corrections and correctional facilities, probation and parole, public welfare and service agencies, healthcare and medical services and drug abuse education and treatment.

129.    Plaintiff remains responsible for costs of prescriptions, health care, and other medically-related costs, rehabilitation, and work-related programs, workers' compensation, public insurance, law enforcement, prosecution costs, court related costs, public defender services, correctional institutions, probation and parole services, which costs have substantially increased as a result of the Defendants' acts and omissions.

130.    Plaintiff will continue to incur these increased costs in the future as a result of the Defendants' conduct.

131.    Collectively, Defendants made large profits while fueling the opioid epidemic in West Virginia and the City of Huntington.

132.    The Defendants Amerisource, Cardinal and McKesson continue to receive considerable profits from the distribution of controlled substances in the City of Huntington.

133.   The Defendants have thus been enriched unjustly by neglecting its duty of distributing drugs only for proper medical purposes, which are for purposes other than legitimate medical needs.

134.   The unjust enrichment of the Defendants is directly related to the damage, loss and detriment to the Plaintiff.

135.   The Defendants negligent, intentional, malicious, oppressive, illegal and unethical acts, omissions, and wrongdoing have unjustly enriched the Defendants and are directly related to the damages and losses of the Plaintiff.

## PRAYER

WEHREFORE, Plaintiff prays that the Court grant the following relief:

1.   Order a jury trial on all issues so triable to determine damages as a result of the Defendants' actions outlined in this Complaint.

2.   Enter Judgment in favor of Plaintiff;

3.   Enter a temporary restraining order which:

   a. Prevents Defendants from continuing to violate West Virginia laws;
   b. Prevents Defendants from continuing to violate United States laws and regulations relating to the distribution of controlled substances;
   c. Mandates that Defendants promptly notify the appropriate state and federal authorities of any and all suspicious orders for controlled substances as received from parties who are located in the City of Huntington;
   d. Mandates Defendants submit their system for determining suspicious orders to those West Virginia authorities for prior approval, and to enjoin Defendants from distributing any controlled substance in the City of Huntington for any non-legitimate medical purpose.

4.   Enter a permanent restraining order which:

   a. Prevents Defendants from continuing to violate West Virginia laws;
   b. Prevents Defendants from continuing to violate United States laws and regulations relating to the distribution of controlled substances;

    c. Mandates that Defendants promptly notify the appropriate state and federal authorities of any and all suspicious orders for controlled substances as received from parties who are located in the City of Huntington;

    d. Mandates Defendants submit their system for determining suspicious orders to those West Virginia authorities for prior approval, and to enjoin Defendants from distributing any controlled substance in the City of Huntington for any non-legitimate medical purpose; and

    e. Mandates Defendants provide Plaintiff with the assistance necessary to address the addiction and the resulting destruction left by Defendants' actions.

5.     Award punitive damages for Defendants' willful, wanton, malicious, oppressive, and intentional actions as detailed herein;

6.     Award attorneys' fees and costs; and

7.     Award such other relief as this Court deems just and appropriate.

**PLAINTIFF SEEKS A TRIAL BY JURY FOR ALL COUNTS SO TRIABLE.**

                                        **THE CITY OF HUNTINGTON,**
                                        By Counsel:

_____

CHARLES R. "RUSTY" WEBB (WVSB No. 4782)
THE WEBB LAW CENTRE, PLLC
716 Lee Street, East
Charleston, West Virginia 25301
Telephone: (304) 344-9322
Facsimile: (304) 344-1157
rusty@rustywebb.com

## SUMMONS

### IN THE CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

THE CITY OF HUNTINGTON,

     Plaintiff,

v.                                  Civil Action No.: 17-C-38

AMERISOURCEBERGER DRUG CORPORATION,
CARDINAL HEALTH, INC.,
MCKESSON CORPORATION and
GREGORY DONALD CHANEY, M.D.,

     Defendants.

| DEFENDANT | DAYS TO ANSWER | SERVICE |
|-----------|----------------|---------|
| **GREGORY D. CHANEY, M.D.**<br>1426 SPRING BROOK ROAD<br>KENOVA, WV, 25530 | 10 | Certified mail |

**To the above-named Defendant:**

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon <u>Charles R. "Rusty" Webb</u>, Plaintiff's attorney, whose address is <u>716 Lee Street, East, Charleston, West Virginia 25301</u>, an Answer, including any related Counterclaim you may have, to the Amended Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve your Answer within timeframe, as set forth above, following service of this Summons upon you, exclusive of the day of service, **or within the time remaining for response to the original Complaint or within 10 days after service of the amended Complaint**, whichever period may be the longer, unless the court otherwise orders. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Amended Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by Counterclaim in the above-styled civil action.

Dated: JAN 26 2017

CLERK OF COURT

☑ **Service - Certified (RD)**
☐ **Service - Sheriff**
☐ **Returned to Atty. for Service**
☐ **Returned to Pltf. for Service**

**SUMMONS**

IN THE CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

THE CITY OF HUNTINGTON,

    Plaintiff,

v.                        Civil Action No.: 17-C-38

AMERISOURCEBERGER DRUG CORPORATION,
CARDINAL HEALTH, INC., MCKESSON CORPORATION and
GREGORY DONALD CHANEY, M.D.,

    Defendants.

**COPY**

| **DEFENDANT** | **DAYS TO ANSWER** | **SERVICE** |
|---|---|---|
| **AMERISOURCEBERGER DRUG CORPORATION** CT CORPORATION SYSTEM 5400 D BIG TYLER ROAD CHARLESTON, WV, 25313 | 10 | West Virginia Secretary of State |

**To the above-named Defendant:**

    IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon Charles R. "Rusty" Webb, Plaintiff's attorney, whose address is 716 Lee Street, East, Charleston, West Virginia 25301, an Answer, including any related Counterclaim you may have, to the Amended Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve your Answer within timeframe, as set forth above, following service of this Summons upon you, exclusive of the day of service, **or within the time remaining for response to the original Complaint or within 10 days after service of the amended Complaint**, whichever period may be the longer, unless the court otherwise orders. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Amended Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by Counterclaim in the above-styled civil action.

Dated:   JAN 2 6 2017

CLERK OF COURT

☑ Service - Certified (RD)
☐ Service - Sheriff
☐ Returned to Atty. for Service
☐ Returned to Pltf. for Service

**SUMMONS**

IN THE CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

THE CITY OF HUNTINGTON,

     Plaintiff,

v.                           Civil Action No.: 17-C-38

AMERISOURCEBERGER DRUG CORPORATION,
CARDINAL HEALTH, INC., MCKESSON CORPORATION and
GREGORY DONALD CHANEY, M.D.,

     Defendants.

| DEFENDANT | DAYS TO ANSWER | SERVICE |
|---|---|---|
| **CARDINAL HEALTH, INC.**<br>c/o CORPORATION SERVICE COMPANY<br>209 WEST WASHINGTON STREET<br>CHARLESTON, WV, 25302 | 10 | West Virginia Secretary of State |

**To the above-named Defendant:**

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon Charles R. "Rusty" Webb, Plaintiff's attorney, whose address is 716 Lee Street, East, Charleston, West Virginia 25301, an Answer, including any related Counterclaim you may have, to the Amended Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you.  You are required to serve your Answer within timeframe, as set forth above, following service of this Summons upon you, exclusive of the day of service, **or within the time remaining for response to the original Complaint or within 10 days after service of the amended Complaint**, whichever period may be the longer, unless the court otherwise orders.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the Amended Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by Counterclaim in the above-styled civil action.

Dated:    JAN 26 2017

                                      JEFFREY E. HOOD
                                   CLERK OF COURT

☑ Service - Certified (RD)
☐ Service - Sheriff
☐ Returned to Atty. for Service
☐ Returned to Pltf. for Service

**SUMMONS**

IN THE CIRCUIT COURT OF CABELL COUNTY, WEST VIRGINIA

THE CITY OF HUNTINGTON,

     Plaintiff,

v.                          Civil Action No.: 17-C-38

AMERISOURCEBERGER DRUG CORPORATION,
CARDINAL HEALTH, INC., MCKESSON CORPORATION and
GREGORY DONALD CHANEY, M.D.,

     Defendants.

| **DEFENDANT** | **DAYS TO ANSWER** | **SERVICE** |
|---|---|---|
| **MCKESSON CORPORATION** c/o PRENTICE HALL 1600 LAIDLEY TOWER CHARLESTON, WV 25301 | 10 | West Virginia Secretary of State |

**To the above-named Defendant:**

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon <u>Charles R. "Rusty" Webb</u>, Plaintiff's attorney, whose address is <u>716 Lee Street, East, Charleston, West Virginia 25301</u>, an Answer, including any related Counterclaim you may have, to the Amended Complaint filed against you in the above-styled civil action, a true copy of which is herewith delivered to you. You are required to serve your Answer within timeframe, as set forth above, following service of this Summons upon you, exclusive of the day of service, <u>**or within the time remaining for response to the original Complaint or within 10 days after service of the amended Complaint**</u>, whichever period may be the longer, unless the court otherwise orders. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Amended Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by Counterclaim in the above-styled civil action.

Dated:   JAN 26 2017

/s/ JEFFERY E. HOOD

CLERK OF COURT

☑ Service - Certified (RD)
☐ Service - Sheriff
☐ Returned to Atty. for Service
☐ Returned to Pltf. for Service

```
            Cabell County Circuit Clerk's Office              Page:    1
            750 5th Avenue
            Huntington, WV  25701

RECEIPT
NUMBER: 271813                                      January 26, 2017

Received of: The Webb Law Centre, PLLC

The exact sum of Thirty Five Dollars and 00 cents


Plaintiff: The City of Huntington
Defendant: Amerisourceberger Drug Corporation, Cardinal Health, I +more

Case Number: CK-6-2017-C-38

Description                                              Amount
OTHER      CERTMAIL     Certified Mail                     20.00
OTHER      CLERKFEE     First Class Mail                   15.00
PAYMENT-CHECK (3321)                                      -35.00

                      Jeffrey E. Hood, Circuit Clerk

                      Deputy _____
                             Stacy Smith
```

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305

# FILED

2017 JAN 27  AM 10: 22

J.E. HOOD
CIRCUIT COURT
CABELL CO. W.



**Mac Warner**
Secretary of State
State of West Virginia
**Phone:** 304-558-6000
886-767-8683
**Visit us online:**
www.wvsos.com

Jeffrey E. Hood
Cabell County Courthouse
P. O. Box 545
Huntington, WV 25710-0545

**Control Number:** 141816

**Defendant:** CARDINAL HEALTH 110 INC.  NOW:
CARDINAL HEALTH 110 LLC
5400 D Big Tyler Road
CHARLESTON, WV 25313 US

**Agent:** C. T. Corporation System

**County:** Cabell

**Civil Action:** 17-C-38

**Certified Number:** 92148901125134100001642943

**Service Date:** 1/24/2017

I am enclosing:

### 1 summons and complaint

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in your name and on your behalf.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process  in your name and on your behalf as your attorney-in-fact.  Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the Secretary of State's office.***

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305

# FILED

2017 JAN 27  AM 10: 21

J.E.HOOD
CIRCUIT COURT
CABELL CO. W



**Mac Warner**
Secretary of State
State of West Virginia
**Phone:** 304-558-6000
886-767-8683
**Visit us online:**
www.wvsos.com

Jeffrey E. Hood
Cabell County Courthouse
P. O. Box 545
Huntington, WV 25710-0545

**Control Number:** 141817
**Defendant:** MCKESSON CORPORATION
209 West Washington Street
Charleston, WV 25302 US

**Agent:** Corporation Service Company
**County:** Cabell
**Civil Action:** 17-C-38
**Certified Number:** 92148901125134100001642950
**Service Date:** 1/24/2017

I am enclosing:

**1 summons and complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted
service of process in the name and on behalf of your corporation.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of
process in the name and on behalf of your corporation as your attorney-in-fact. Please address any questions about this
document directly to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the Secretary of State's office**.*

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State