# Exhibit A

## IN THE CIRCUIT COURT OF BOONE COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA
ex rel DARRELL V. MCGRAW, JR.
Attorney General,

        Plaintiff,

v.                                  Civil Action No. _12-C-140_

CARDINAL HEALTH, INC.
an Ohio corporation doing business in
West Virginia,

        Defendant.

### COMPLAINT

For its complaint the State of West Virginia, by and through its duly-elected Attorney

General Darrell V. McGraw, Jr., states the following:

### I.

### Summary of Action

    1.    This civil action addresses the epidemic of prescription drug abuse and its

costs. Prescription drug abuse costs the State of West Virginia hundreds of millions of dollars

annually. Beyond the actual dollars lost, prescription drug abuse devastates families,

communities and reduces the State's economic productivity. Prescription drug abuse adversely

affects West Virginia's hospitals, schools, courts, social service agencies, jails and prisons as

well as diminishing the very quality of life in our cities and towns. Accordingly, the State, by its

Attorney General, brings this action against a party whom the Attorney General has identified as

having substantially contributing to and who have substantially, illicitly and tortiously benefitted

financially from the prescription drug abuse problem in West Virginia.

1

2.     The Defendant herein named distributes various prescription drugs which are closely identified with the prescription drug abuse problem in West Virginia. This Defendant was on notice of the growing epidemic from the abuse of those prescription drugs which it supplied and of the quantities and frequency with which those drugs were distributed to entities in West Virginia. For reasons which are more specifically set forth in the following causes of actions this Defendant is answerable in damages to the State of West Virginia and is susceptible to such other relief as is requested.

3.     The problems, crimes, damages and losses related to the prescription drug epidemic in West Virginia include, inter alia, the following:

a.     Costs to the State of as much as $430 million annually in the year 2010 with costs projected to be as much as $695 million annually by 2017;

b.     A per capita death rate from prescription drug overdose which has at times been either the highest or the second highest recorded for all states in the United States. One county, McDowell located in Southern West Virginia, had a death rate of 34.2 per 100,000 in 2001 and 97.3 in 2008;

c.     Between 2001 and 2008 West Virginia deaths from overdoses involving prescription drugs quadrupled from 5.1 deaths per 100,000 residents to 21.5;

d.     According to Charleston Area Medical Center approximately twenty (20) percent of patients admitted through the hospital's trauma service have an issue with narcotic usage which contributes to their injuries. As such, the demand from the growing problem of addiction and management of addicted patients will eventually be too great for the available care provides unless the problem is addressed. Many of the addicted patients have no

2

medical insurance coverage;

    e.    West Virginia has been identified as the nation's "most medicated state" based upon data gathered for 2009. Pharmacies in the State filled 18.4 prescriptions per capita as compared to the national average of 11.6 per capita;

    f.    One pharmacy which is located in tiny Kermit, West Virginia in 2006 received 3,194,400 dosage units of hydrocodone which ranked 22nd in the nation among pharmacies with respect to purchases of hydrocodone dosage and 35th nationally if you include mail order pharmacies. The owner who is a licensed pharmacists has testified that the pharmacy filled one prescription per minute. Pharmacy records reveal that the pharmacy regularly paid suppliers hundreds of thousands of dollars, that virtually 90% of the drugs ordered and received and are of the kind associated with the prescription drug epidemic. The pharmacy reported revenue of more than $500,000 per month. Recently, an article described Kermit, population 300, as "ground zero" in the prescription drug epidemic;

    g.    One Pittsburgh area physician who has entered a guilty plea to a drug law violation allegedly worked in or owned an operation in Southern West Virginia which a federal investigation disclosed netted him personally as much as $20,000 per day in cash deposits made to his personal bank account. That so-called clinic was closed by the government resulting in seizure of hundreds of thousands of dollars in cash from physicians and others who were associated with the clinic;

    h.    State prosecutors and judges lament that as much as 90% of their case load is regularly made up of matters which are either directly or indirectly related to prescription drug abuse. As one prosecutor recently told a Charleston newspaper " I have

sometimes morbidly said I would welcome a cocaine case because at least not as many people are dying from cocaine abuse as they are from prescription drug abuse. I bring this up to point out foremost that we continue to ignore the human cost of substance abuse. Families are destroyed. People die. People can't get jobs and become homeless. They don't send their children to school, which ultimately contributes to truancy, delinquency, another generation of crime and a host of other problems. We're at the top of the nation in births of drug-addicted babies."

## II.

## Parties

4.      The Plaintiff is the State of West Virginia. Darrell V. McGraw, Jr. is the Attorney General of the State of West Virginia. He is authorized both by the West Virginia Constitution and by statute to bring this action. More particularly:

a.      West Virginia Code, Chap. 60A, Art. 5, Sec. 501( c ) invests the Attorney General with the duty and the authority to assist in the enforcement of the provisions of the Uniform Controlled Substances Act and to cooperate with agencies and other governmental entities as relates to controlled substances; and

b.      West Virginia Code, Chap. 46A, Art. 7, Sec, 101 et seq, and Code 47-18-1 et seq invest the Attorney General with the authority to sue for violations of the West Virginia Consumer Protection Act and the West Virginia Antitrust Act, to recover civil penalties and to seek other remedies for violations of said statutes.

4

5. The Defendant Cardinal Health, Inc. is an Ohio corporation which at all times pertinent hereto, was conducting business in West Virginia. This Defendant is a registrant with the West Virginia Board of Pharmacy.

### III.

### Jurisdiction and Venue

6. Jurisdiction exists pursuant to the provisions of West Virginia Code Chap. 56, Art. 3, Sec. 33, as amended in that Defendant by and through its authorized agents, servants and employees regularly transacted business in West Virginia, supplied and distributed prescription drugs in West Virginia and further through its acts and omissions tortiously caused injuries in West Virginia by engaging in a persistent course of conduct in West Virginia which violated West Virginia law. This Defendant derived substantial revenue as the result of the prescription drugs which were distributed to West Virginia entities and later consumed by persons then residing in West Virginia.

7. Pursuant to W.Va. Code §46A-7-114 and W.Va Code §47-18-15 venue is proper in that the Defendant committed acts in violation of the West Virginia Uniform Controlled Substances Act and the West Virginia Consumer Credit and Protection Act and the West Virginia Antitrust Act in Boone County West Virginia. Further, the Defendant transacted business in Boone County as well as in other counties within the State of West Virginia.

5

## IV

### DEA's Suspension of Cardinal Health, Inc. As an Example of Defendants' Illegal Conduct

8.    In a recent federal district court proceeding in the District of Columbia regarding the DEA's suspension of Defendant Cardinal's federal controlled substances license, DEA alleged that Cardinal had not taken adequate safeguards to prevent prescription drugs which it distributed from being unlawfully diverted.

9.    The DEA further alleged that Cardinal's "staggeringly high" volumes of pills sent to various dispensers posed "an imminent danger to public health or safety" and thus the DEA issued an Immediate Suspension Order ("ISO") to Cardinal on February 2, 2012.

a.    During this proceeding, it became apparent that Cardinal had sent 2,050,000 pills to a store in Florida, where the population of the town was 53,000 (USA Today).

b.    An average pharmacy in the United States dispenses 69,000 oxycodone pills a year. (USA Today).

10.    Indeed, the DEA explained "Orders Cardinal flagged as suspicious were overwhelmingly released with little or no explanation why. Even those few orders that Cardinal refused to fill as suspect it failed to report to DEA, as Lakeland [Cardinal's location] was required to do. Since it resumed operations in October 2008, Lakeland has not alerted DEA about a single suspicious order for three of its top four customers, even though two of them have surrendered their DEA registrations due to committing the very sort of diversion DEA expects Cardinal and all distributors to police. During the relevant period of time, Cardinal never

6

conducted an in-store audit of either CVS, despite DEA having told Cardinal that it could not fulfill its due diligence obligations simply by relying on CVS's corporate controls.

11.    Moreover, when Cardinal's investigations did raise red flags, they were frequently ignored. In October 2010, for example, a Cardinal investigator suspected that a pharmacy was illegitimately dispensing oxycodone, and recommended that Cardinal call DEA. Not only did that call never come, Lakeland [Cardinal's location] increased oxycodone volume to this pharmacy in the months after the visit, notwithstanding the investigator's warning that this particular pharmacy posed a "high risk of diversion."

From the bench during a hearing on February 29, 2012, U.S. District Judge Reggie Walton ruled in favor of the DEA, stating, "I think DEA is correct that companies have an obligation to police themselves ... and to be proactive in assessing whether diversion (of controlled substances) is taking place." (Reuters)

12.    In regard to the District Court's validation of the DEA's Immediate Suspension Order (ISO), Cardinal appealed same. On May 16, 2012 the United States Court of Appeals for the District of Columbia Circuit ruled that the Defendant's (Cardinal Health, Inc) emergency motion for injunction pending appeal be denied, therefore the administrative stay of the DEA's immediate suspension order (ISO) was dissolved.

13.    Cardinal's actions or inactions in Florida are consistent with Cardinal's conduct in West Virginia.

As a major distributor of controlled substances in West Virginia, Cardinal has supplied controlled substances to rogue drugstores which dispense controlled substances based on bogus

7

prescriptions from unethical physicians who are prescribing controlled substances for illegitimate medical purposes.

"Pill Mills" consist of medical providers, pharmacies and distributors of controlled substances, each of whom must knowingly or while acting grossly negligent prescribe, dispense or distribute prescription medicine for illegitimate medical purposes. Each actor alone would be ineffective to divert controlled substances for illegitimate medical purposes. Conversely, each actor together causes and contributes to the diversion of prescription medicine.

## Causes of Action

### Count I

#### Injunctive Relief for Violations of Responsibilities and Duties Under The West Virginia Uniform Controlled Substances Act

14. Plaintiff hereby incorporates by reference all of the previous allegations of this complaint.

15. West Virginia Code §60A-5-501( c ) provides: "All prosecuting attorneys and the **attorney general, or any of their assistants, shall assist in the enforcement of all provisions of this act** and shall cooperate with all agencies charged with the enforcement of the laws of the United States, of this state, and of all other states relating to controlled substances."

16. West Virginia Code § 60A-5-503(a) states that "The courts of record of this state have and may exercise jurisdiction to restrain or enjoin violations of this act."

17. The Uniform Controlled Substances Act, W. Va. Code § 60A-3-301 provides, in relevant part that "The State Board of Pharmacy shall promulgate rules . . . relating

8

to the registration and control of the manufacture **and distribution of controlled substances within this State . . . ."**

      18.    The regulations promulgated pursuant to the above-referenced authority, effective May 1, 2001, provide, <u>inter alia</u>, for the following:

- "Every person who manufactures, distributes or dispenses any controlled substance or who proposes to engage in the manufacture, distribution or dispensing of any controlled substance shall obtain annually a controlled substance permit unless exempted by law or pursuant to Section 3.2 of this rule." 15 C.S.R. § 2-3.1.1.

- "All registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances." 15 C.S.R. § 2-4.2.1.

- "The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the Office of the West Virginia Board of Pharmacy of suspicious orders when discovered by the registrant. Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency." 15 C S.R. § 2-4.4.

      19.    Although this Defendant is the single registrant who has actually disclosed two (2) suspicious orders to the West Virginia Board of Pharmacy, (one of which was subsequently shipped) the Defendant has not been consistent in doing so and has failed to diligently respond to the suspicious orders which the Defendant has filled. The Defendant therefore has failed to provide effective controls and procedures to guard against diversion of controlled substances in contravention of West Virginia law.

9

20. By failing to do so, Defendant has willfully and repeatedly violated the Uniform Controlled Substances Act and corresponding regulations.

21. The State, by and through, the Attorney General under the authority of W.Va. Code § 60A-5-501( c ) and W. Va. Code § 60A-5-503(a) seeks to restrain the violations of 15 C.S.R. § 2-4.4.

22. The State of West Virginia has in the past sustained enormous damages as the proximate result of the failure by the Defendant to comply with 15 CSR §2-4.2.1 and 15 CSR §2-4.4. Unless restrained by injunctive relief the State will continue to suffer losses as the proximate result of the failure by the Defendant to monitor and to disclose suspicious orders of controlled substances.

23. The State of West Virginia has suffered irreparable harm and will in the future suffer irreparable harm unless the Defendant is restrained by an injunction.

24. A lawsuit for damages for past losses as sustained by the State is an inadequate remedy to prevent future losses which will result from the failure to comply with West Virginia law.

## Count II

### Damages Resulting From Negligence and Violations of the West Virginia Uniform Controlled Substances Act

25. The Plaintiff hereby incorporates by reference all of the previous allegations of this Complaint.

26. In addition to regulating the wholesale distribution of controlled substances the West Virginia Uniform Controlled Substances Act authorizes the Board of

10

Pharmacy to administer the provisions of Chapter 60A (the UCSA), §60A-2-201, which this
Plaintiff is required by law to enforce, §60A-5-501( c ).

   27. The epidemic prescription drug abuse is attended and promoted by the
repeated violation of various provisions of the West Virginia Uniform Controlled Substances
Act, to wit;

    a. Improper dispensing of prescriptions contrary to
     W.Va Code §60A-3-308;

    b. Engaging in prohibited acts contrary to W.Va Code
     §§60A-4-401 through 403;

    c. Deceiving and attempting to deceive medical practitioners
     in order to obtain prescriptions in contravention of W.Va.
     Code §60A-4-410;

    d. Disregarding the requirements of the Wholesale Drug
     Distribution Licensing Act of 1991, W.Va. Code
     §60A-8-1 et seq,; and

    e. Conspiring to violate the West Virginia Uniform Controlled
     Substances Act.

   28. The Defendant as a distributor of controlled substances is expected to
comply both with the laws of the State into which they distribute controlled substances and with
industry custom and standards.  In the instant case the standard of conduct for Defendant's
industry requires that the Defendant know its customers which includes inter alia an awareness of
the customer base, knowledge of the average prescriptions filled each day, the percentage of
controlled substances compared to overall purchases, a description of how the dispenser fulfills
its responsibility to ensure that prescriptions filled are for legitimate medical purposes, and

11

identification of physicians and bogus centers for the alleged treatment of pain that are the dispenser's most frequent prescribers.

29.     This Defendant has wilfully turned a blind eye towards the actual facts by regularly distributing large quantities of controlled substances to customers who are serving a customer base comprised of individuals who are themselves abusing prescription medications, many of whom are addicted and all of whom can reasonably be expected to become addicted. The Defendant negligently acted with others to violate West Virginia's drug laws, dispensing controlled substances for illegitimate medical purposes, operating bogus pain clinics which do little more than provide prescriptions for controlled substances and thereby creating and continuing addictions to prescription medications.

30.     Under West Virginia law a party who violates a statute which violation results in damages is liable for such damages as are sustained therefrom, W.Va. Code §55-7-9.

31.     This Defendant has by its acts and omissions proximately caused and substantially contributed to damages to the State of West Virginia by violating West Virginia laws, by creating conditions which contribute to the violations of West Virginia laws by others, by its negligence and by its reckless disregard of the customs, standards and practices within Defendant's own industry.

## Count III

## Violation of the West Virginia Consumer Credit and Protection Act (WVCCPA) Unfair Methods of Competition or Unfair or Deceptive Acts or Practices

32.     Plaintiff hereby incorporates by reference all of the previous allegations of this Complaint.

12

33.    West Virginia law as embodied in W.Va. Code §46A-6-104 prohibits the use of unfair methods and/or competition or unfair or deceptive acts or practices in any trade or commerce.

34.    The Attorney General is specifically charged with the administration of this provision and may act *sua sponte* as the agent and legal representative of the State in civil proceedings to enforce the statute, W. Va. Code § 46A-6-103, §§ 46A-7-102, -108, -110, -111.

35.    Violations of statutes and regulations which are enacted to protect the public or in the exercise of the State's police power constitute unfair or deceptive acts or practices.

36.    The Uniform West Virginia Controlled Substances Act, W. Va. Code § 60A-3-301, provides, in relevant part that "The State Board of Pharmacy shall promulgate rules and charge fees relating to the registration and control of the manufacture and distribution of controlled substances within this State . . . ."

37.    The regulations promulgated pursuant to this authority, effective May 1, 2001, provided that:

- **"Every person who manufactures, distributes or dispenses any controlled substance or who proposes to engage in the manufacture, distribution or dispensing of any controlled substance shall obtain annually a controlled substance permit unless exempted by law or pursuant to Section 3.2 of this rule." 15 C.S.R. § 2-3.1.1.**

- **"All registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances." 15 C.S.R. § 2-4.2.1.**

- **"The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the Office of the West Virginia Board of Pharmacy of**

13

> suspicious orders when discovered by the registrant. Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency." 15 C.S.R. § 2-4.4.

38.     Each violation of these mandatory duties in the West Virginia Uniform Controlled Substances Act and its corresponding regulations is an unfair or deceptive act or practice in the conduct of trade or commerce, as set forth in W. Va. Code § 46A-6-104.

39.     Defendant's repeated violations were and are willful.

40.     As a result of the Defendant's actions and omissions Plaintiff has sustained damages, both past and in the future.

41.     In addition to compensatory damages, Plaintiff seeks all statutory damages available under the WVCCPA, including but not limited to the following:

> a.     Actual damages for past and future violations of the WVCCPA as authorized by W. Va. Code § 46A-5-101(1);
>
> b.     Statutory damages in the maximum amount authorized by W. Va. Code § 46A-5-101(1) as adjusted for inflation pursuant to W. Va. Code § 46A-5-106;
>
> c.     Attorney fees and court costs, pursuant to W. Va. Code § 46A-5-104; and
>
> d.     Penalties for *each* willful violation pursuant to W. Va. Code § 46A-7-111(2).

## Count IV

## Creating A Public Nuisance

42.     Plaintiff hereby incorporates by reference all of the previous allegations of this Complaint.

14

43.     This Defendant was on notice that an epidemic from prescription drug abuse existed and has existed during times which are relevant to this Complaint. Such notice is the result of

- An inordinate amount of media coverage by both national and local print, television and radio media.

- Publications received from government sources as well as warnings and recommendations contained in trade and professional journals.

- Changes in law and regulations which were designed specifically to address the growing problem of prescription drug abuse.

44.     The widespread publicity contained many references and statistics concerning West Virginia's problems from prescription drug abuse including, but not limited to, suffering the nations' highest per capita death rate from prescription drug overdose.

45.     Notwithstanding the knowledge of this epidemic this Defendant persistently engaged in a pattern of distributing controlled substances of the kinds which were well-known to be abused and diverted all the while distributing them in such quantities and with such frequency that the Defendant knew or should have known that these substances were not being prescribed and consumed for legitimate medical purposes.

46.     As the result of the above-described conduct this Defendant negligently, recklessly and/or intentionally, and acting with blind indifference to the facts, created and continued a public nuisance. More particularly, the public nuisance so created injuriously affects the communities of West Virginia, endangers the public health and safety and inconveniences the citizens of the State in the following ways:

- Areas in certain communities have become congested with persons who

15

gather in large groups outside of "clinics, pharmacies and physician offices" which are in fact component parts of pill mills which exist only to prescribe and deliver drugs for illicit, non-medical purposes.

- Crimes and other dangerous activities have increased.

- Hospital services, especially those services provided by emergency rooms, are being consumed by persons with prescription drug abuse issues.

- Law enforcement and prosecutorial resources are being exhausted and consumed by having to address prescription drug abuse issues to the exclusion of other matters.

- Public resources are being unreasonably consumed in efforts to address the prescription drug abuse epidemic, thereby eliminating available resources which could be used to benefit the public at large.

- Court dockets are congested by drug-related cases as well as by crimes committed by addicts, thereby diminishing access to our courts by others.

- Jails and prisons suffer from overcrowding.

47. The Defendant's acts and omissions which have caused and contributed to the nuisance described herein has damaged the health and safety of West Virginia citizens in the past and will continue to do so in the future unless the nuisance is abated.

48. The State of West Virginia has sustained economic harm and will in the future suffer economic harm unless the above-described public nuisance is abated.

### Count V

### Unjust Enrichment

49. Plaintiff hereby incorporates by reference all of the previous allegations of this Complaint.

50. Because of prescription drug abuse the State of West Virginia expends additionally hundreds of millions of dollars annually on law enforcement, prosecutors and

16

prosecutions, courts and court personnel, public defender services, corrections and correctional facilities, probation and parole, public welfare and service agencies, healthcare and medical services and drug abuse education. Further, the State suffers losses in revenue and incurs costs from workplace accidents and absenteeism resulting from prescription drug abuse.

51.     The State of West Virginia remains responsible for costs of prescriptions, health care and other medically-related costs, rehabilitation and work-related programs, workers' compensation, public insurance, law enforcement, prosecution costs, court related costs, public defender services, correctional institutions, probation and parole services, which costs have substantially increased as the result of the Defendant's acts and omissions herein complained of and will in the future continue to increase unless the Defendants's conduct is abated.

52.     The Defendant has thus been enriched unjustly by neglecting its duty of distributing drugs only for proper medical purposes which substances are consumed for reasons which are other than medical.

53.     The unjust enrichment of the Defendant is directly related to the damage, loss and detriment to the Plaintiff State of West Virginia.

## Count VI

### Negligence

54.     The State realleges and incorporates by reference all preceding paragraphs as though fully set forth herein and further alleges the following.

55.     Defendant has a duty to exercise reasonable care in the marketing, promotion and distribution of controlled substances.

56.     Defendant has breached this duty by the conduct alleged above.

17

57.     As a proximate result, Defendant and its agents have caused the State
to incur excessive prescription costs, health care costs and other medical costs related to
diagnosis, treatment and cure of addiction or the risk of addiction to such controlled substances
in that many of the citizens of West Virginia are Medicaid or publicly-funded health care
recipients, thus the State has borne the massive costs of these illnesses and conditions by having
to provide necessary medical care, facilities and services for treatment of citizens of West
Virginia who are unable to afford or otherwise obtain such necessary medical care, facilities and
services.

58.     The Defendant was negligent in failing to guard against third-party
misconduct, i.e. the conduct of the so-called "pill mill" physicians and staff as well as and
corrupt pharmacists and staff and, in fact, the Defendant participated in such misconduct.

59.     Defendant's conduct has imposed an unreasonable risk of harm to others
separately and/or as combined with the negligent and/or criminal acts of third parties.

60.     The Defendant is in a class of a limited number of parties that distribute
controlled substances and such activity poses distinctive and significant dangers. The dangers
include diversion of controlled substances for illegitimate medical purposes and addiction to
same by consumers.

61.     The Defendant is negligent in not acquiring and utilizing special
knowledge and special skills that relate to the dangerous activity in order to prevent and/or
ameliorate such distinctive and significant dangers.

18

62.     Controlled substances are dangerous commodities. The Defendant distributor is required to exercise a high degree of care and diligence to prevent injury to the public from the diversion of controlled substances during distribution. The Defendant breached its duty to exercise the degree of care, prudence, watchfulness, and vigilance commensurate to the dangers involved in the transaction of its business. The Defendant cannot delegate this duty of care to another.

63.     The distribution of these controlled substances are under the exclusive control and management of the Defendant. Plaintiff is without fault and the injuries to Plaintiff would not have happened in the ordinary course of events had the Defendant used due care commensurate to the dangers involved in the distribution of controlled substances. Hence, the Defendant is negligent.

## Count VII

## Medical Monitoring

64.     Through Defendant's tortious acts, omissions, and conduct as set forth above, users and abusers of prescription drugs have been significantly exposed to the dangers of addiction and misuse. Further, pill mill doctors and pharmacies and other careless professionals have been assisted in their acts or in their carelessness by the availability of such large quantities of abused substances. The increased risk of harm which attends these acts and omissions makes it both reasonable and necessary for the dependent users and abusers to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of the exposure. Monitoring, testing and counseling procedures exist for such treatment.

19

65.     Diagnosis and treatment of these conditions is clinically invaluable in that it can prevent or reduce illness, suffering and/or death.

66.     Many individuals who are at risk for addiction and dependency from exposure to overuse of prescription drugs cannot afford appropriate testing and/or therapy

67.     The increased susceptibility to death, injuries and irreparable harm to the health of abusers and dependent users resulting from their exposure to prescription drugs can only be mitigated or addressed by the creation of a Court-supervised fund, financed by the Defendant, that will fund a comprehensive medical monitoring program of:

a.     Notifying individuals.

b.     Aiding in diagnosis and treatment.

c.     Funding studies and research of the short and long term effects and treatment of overuse, misuse and addiction to prescription drugs.

d.     Accumulating and analyzing relevant medical and demographic information.

e.     Creating, maintaining and operating a "registry" in which relevant demographic and medical information is gathered, maintained and analyzed; and

f.     Gathering and forwarding to treating physicians information related to proper diagnosis and treatment.

68.     Prescription drug users in West Virginia have no adequate remedy at law in that monetary damages alone do not compensate for the continuing nature of the harm to them, and a monitoring program which notifies them of the dangers and aids in their treatment can prevent the greater harms which may not occur immediately but which is preventable if proper

20

research is conducted and the health risk is diagnosed and treated before harm occurs or become worse.

69.     Without a court-approved medical treatment monitoring program, the relevant product users will not receive prompt medical care which could detect and prolong their productive lives, increase prospects for improvement and minimize disability.

## Count VIII

### Antitrust

70.     The State realleges and incorporates by reference all preceding paragraphs as though fully set forth herein and further alleges as follows:

71.     The Attorney General of the State of West Virginia is empowered by law pursuant to West Virginia Code §§47-18-6, 47-18-7 and 47-18-9 to investigate suspected violation of, and to bring actions of behalf of, the State of West Virginia for damages sustained by the State that result from violation of the West Virginia Antitrust Act.

72.     Defendant, as described above, has violated said Act in particular, but without limitation, W.Va Code §47-18-3(b)(1)(B) and W.Va Code §47-18-4, which read in pertinent part:

            b.      Without limiting the effect of subsection (a) of the section, the following shall be deemed to restrain commerce unreasonably and are unlawful:

            1.      A contract, combination or conspiracy between two or more persons:

            . . . . .

            B.      Fixing, controlling, maintaining, limiting or discontinuing the production, manufacture, mining, sale or supply of any commodity,

21

> or the sale or supply of any service, for the purpose or with the
> effect of fixing, controlling or maintaining the market price rate
> or fee of the commodity or service. . . .

W.Va Code §47-18-3(b)(1)(B). §47-18-4.

73.    The Defendant has utilized unfair and deceptive business practices to attempt to obtain dominant market share in the West Virginia market for controlled substances.

74.    The Defendant has conspired with "pill mill" physicians and pharmacies who prescribe and fill these prescription for illegitimate medicine purposes in order to restrain and monopolize trade in West Virginia for the "pill mill" market. This conduct had and has resulted in a restraint of trade or had an anti-competitive effect on trade by seeking to gain advantage over law-abiding, careful wholesale distributors.

75.    Such attempts to provide controlled substances for illegitimate medical purposes, contrary to law, substantially lessened competition, restrained trade or tended to create a monopoly in the illicit pill mill controlled substance scheme in West Virginia.

76.    The combined actions of certain physicians, pharmacies and the Defendant in prescribing, filling and distributing controlled substances for illegitimate medical use, harms and restrains competition. The Defendant unfairly and contrary to law distributed controlled substances which prohibits distributors who distribute controlled substances for legitimate medical purposes from competing in the "pill mill market" which resulted in harm to the citizens of West Virginia and restrained trade.

77.    The combined actions, described above, allocates or divides customers or markets within West Virginia to the Defendant that distributes controlled substances for illegitimate medical purposes, which is in violation of W.Va Code 47-18-3(b)(1)( c ).

## Prayer

**WHEREFORE**, the Plaintiff prays that the Court grant the following relief:

1.    Enter temporary and permanent injunction which mandates the Defendant to promptly inform the West Virginia Board of Pharmacy of any all and all suspicious orders for controlled substances as received from parties who are located in West Virginia and to submit their system for determining suspicious orders to West Virginia authorities for prior approval. Enter temporary and permanent injunction which mandates that Defendant is enjoined from distributing in West Virginia any controlled substances for any illegitimate medical purpose.

2.    Order a jury trial to determine such costs, losses and damages as are proved in this action in relation to the several counts of this Complaint including, but not limited to:

    a.    Losses sustained as the proximate result of both negligent and conscious violations of the West Virginia Uniform Controlled Substances Act and regulations;

    b.    Damages sustained as the proximate result of nuisances created by the prescription drug abuse epidemic;

    c.    Damages and losses sustained as the proximate result of the Defendant's negligence in marketing, promoting and distribution of controlled substances in West Virginia;

    d.    Disgorgement of unjust enrichment of the Defendant;

23

e.     Treble damages under the West Virginia Antitrust Act.

3.     Such relief, fees and cost as shall be available under the West

Virginia Credit and Consumer Protection Act.

4.     Order reimbursement of all litigation costs and enter an award of

attorney fees herein.

5.     Order a plan of medical monitoring.

6.     And grant such other and further relief as shall be deemed

appropriate herein.

**Plaintiff seeks a jury trial for all such counts as are so triable.**

State of West Virginia ex rel.
**Darrell V. McGraw, Jr.**
Attorney General

*By Counsel,*

Frances A. Hughes, Esq.
Managing Deputy Attorney General
**OFFICE OF ATTORNEY GENERAL**
Building 1, Room 26-E
Capitol Complex
Charleston, WV 25305
Telephone: 304-558-2021

James M. Cagle, WV Bar No. (580)
Cagle & Jackson, Attorneys
P.O. Box 12326
Big Chimney Station
Charleston, WV 25302

24