IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

THE CITY OF HUNTINGTON,
              Plaintiff,
    v.

AMERISOURCEBERGEN DRUG
CORPORATION, CARDINAL HEALTH
INC., MCKESSON CORPORATION, and
GREGORY DONALD CHANEY, M.D.,
              Defendants.

Civil Action No. 3:17-cv-01362
Judge Robert C. Chambers

**MEMORANDUM IN SUPPORT OF
CARDINAL HEALTH INC.'S MOTION TO DISMISS**

## INTRODUCTION

This lawsuit is misguided.  It is brought by the wrong plaintiff against the wrong defendants at the wrong time on claims that stretch the concepts of standing, duty, and proximate cause beyond the breaking point.  The problem of opioid abuse is a real one, and in no place more serious than West Virginia.  But no matter how well-intentioned this lawsuit, the claims it asserts are not cognizable and should be dismissed as a matter of law.

Cardinal Health is a *wholesale distributor* of prescription drugs.  It has no dealings with patients; it fulfills orders of pharmacies registered by the Drug Enforcement Administration ("DEA") and duly licensed by the West Virginia Board of Pharmacy ("BoP").  Such pharmacies fill prescriptions written by doctors licensed to practice medicine by the West Virginia Board of Medicine.  Cardinal Health does not manufacture opioids, nor does it have anything to do with advertising or marketing the drugs.  It does not examine patients, diagnose the severity and causes of pain, or prescribe opioids—only a licensed doctor can do that—and it likewise has nothing to do with filling a doctor's prescriptions—only licensed pharmacists do that.  By virtue of the federal Health Insurance Portability and Accountability Act, Cardinal Health does not, and cannot, know what doctor prescribed or what pharmacist dispensed which opioid drugs for which patients, or with what regularity and in what amounts.

As Plaintiff recognizes and alleges, many of the residents of the City of Huntington ("the City") work in industries such as mining, timbering, and manufacturing—"all jobs that require heavy manual labor and leave workers prone to injury."  Am. Compl. ¶ 31.  Many patients have a legitimate medical need for prescription opioids, and, for that reason, federal health officials over the past two decades recommended increased treatment of acute and chronic pain and year after year substantially increased the quota for hydrocodone and oxycodone that could be manufactured, distributed, and prescribed.  Cardinal Health delivers those medications to

pharmacies so that they can fill the legitimate prescriptions that doctors write for their patients. Although it cannot police pharmacies or doctors, Cardinal Health operates a robust and state-of-the art program designed to identify possible diversion of controlled substances. Plaintiff will be unable to show that Cardinal Health sold a single pill other than to a pharmacy that was licensed and in good standing with the DEA and the State of West Virginia.

The City is the wrong plaintiff for several reasons. Foremost, it is the wrong plaintiff because West Virginia has a comprehensive scheme for regulating public health, including the reporting of suspicious prescription-drug orders by pharmacies. This State scheme preempts scattershot efforts by local authorities to regulate physicians, pharmacists, or distributors—including the City's attempt here to bar the shipment of prescription-drug orders. Not only does the State enjoy exclusive authority for regulating distributors; the State has exercised that authority. The Attorney General brought a lawsuit against Cardinal Health in 2012 based on the same allegations asserted here, and the State settled that action in January 2017, granting Cardinal Health a release. That judgment is *res judicata*.[1] The City is also the wrong plaintiff because the real victims described by the Amended Complaint[2] (the "Complaint") are the individuals who suffer from the reckless or criminal prescription of opioid drugs by "pill mills." The costs incurred by the City in addressing the problems of addiction are governmental services, and the "free public services" doctrine precludes recovery of those costs.

The City is, in any event, delinquent in bringing these claims and its suit is time-barred.

---

[1] Cardinal Health intends to present its *res judicata* argument by separate motion.

[2] On January 26, 2017, Plaintiff filed an Amended Complaint which is essentially identical to the initial Complaint but for the addition of two paragraphs (16 and 17). As of the time of this filing, the Amended Complaint had not yet been served on Cardinal Health. The reasons supporting the dismissal of Plaintiff's claims are the same as to both the initial Complaint and the Amended Complaint. Accordingly, Cardinal Health requests dismissal of Plaintiff's action in its entirety, including the Amended Complaint, as well as the initial Complaint.

It complains about Cardinal Health's distribution of "large quantities" of prescription drugs and its failure to report suspicious orders before 2012, *more than four years ago*. The City was on notice of these claims then, when the State filed its well-publicized suit against Cardinal Health.

Even if the City's claims were not preempted, barred by *res judicata*, and foreclosed by the statute of limitations, its negligence and unjust enrichment claims are legally deficient. As to negligence, the City fails to allege a cognizable duty. Plaintiff here is the City, not its residents or the State. If Cardinal Health owes any duty to prevent addiction, it would be a duty owed *to individuals*, not to the City. And if it owes any duty to report suspicious orders and suspend such shipments, it is a duty owed *to the State* by reason of State regulations, not to the City.

The City's notion of proximate cause is legally unsustainable. It is black-letter law that criminal acts break the chain of causation, and the Complaint alleges *three* such intervening criminal acts—a doctor's unlawful prescribing of opioids, a pharmacy's unlawful dispensing of the prescription, and the addict's use of "criminal means" to obtain the drugs. If the City can claim that the cost incurred by the City Police Department for reporting to the scene of a drug overdose is proximately caused by Cardinal Health's alleged failure to report a pharmacy's suspicious bulk order, then it stands to reason that the City can also claim damages from every negligent driver when an officer reports to the scene of a fender-bender. That is not the law.

Finally, the City ignores the predicate element of an unjust enrichment claim—that *the plaintiff* has conferred a benefit on the defendant. *The City* has not paid any monies to or conferred any benefit on Cardinal Health—and does not allege otherwise.[3]

---

[3] Cardinal Health also incorporates by reference the arguments set forth in AmerisourceBergen Drug Corp.'s Motion to Dismiss.

## BACKGROUND

The Complaint alleges that Cardinal Health, McKesson, and AmerisourceBergen each "failed to undertake any effective affirmative efforts" to prevent the unlawful diversion of its prescription drugs, and supplied "excessive prescription pain killers to a small community." Am. Compl. ¶¶ 56, 65.  Count I alleges that Cardinal Health was negligent in (1) failing to report suspicious orders and (2) "regularly distributing large quantities" of prescription drugs into the City of Huntington.  *Id.* ¶¶ 74, 77–79.  Count III alleges that Cardinal Health violated "various" unidentified provisions of West Virginia's Controlled Substances Act ("CSA") "by regularly distributing obscene quantities" of prescription drugs "to clients who were serving a customer base comprised of individuals who were abusing prescription medications."  *Id.* ¶ 113.  And "Count V"[4] alleges Cardinal Health was "enriched unjustly by neglecting its duty of distributing drugs only for proper medical purposes."  *Id.* ¶ 133.

The Complaint alleges that Dr. Chaney, who practiced in Barboursville, West Virginia, "undertook no efforts to determine whether the volume of prescription pain killers he was prescribing to Huntington residents was excessive."  *Id.* ¶¶ 7–10, 66.  This allegation, and the related Counts II and IV of the Complaint, do not relate to Cardinal Health.

The Complaint seeks damages for conduct from 2007 to the present.  But the allegations against Cardinal Health concern conduct only prior to 2012.  *Id.* ¶¶ 6, 55 ("Between 2007 and 2012 the Defendants Amerisource, Cardinal and McKesson have shipped 423 million doses of highly addictive controlled pain killers into West Virginia.").  The City concedes that Cardinal Health has complied with its reporting requirements since June 2012.  *Id.* ¶ 53.

---

[4]     The count that appears fourth in sequence is labeled "Count V," and the count that appears fifth is labeled "Count Y."  Cardinal Health will refer to these counts As Counts IV and V.

## ARGUMENT

I.   **THE CSA DOES NOT EMPOWER THE CITY TO BRING CLAIMS FOR ITS VIOLATION.**

The City lacks legal authority/standing to pursue a claim for violation of the CSA.  The State's interests in protecting the public health are paramount and preempt the City's lawsuit. Even apart from preemption, the West Virginia Legislature has assigned the BoP *exclusive* responsibility to enforce the State's regulatory scheme governing the distribution of pharmaceutical products in West Virginia.  The City may not exercise that authority, either directly through an implied cause of action for damages (Count III) or by relabeling alleged violations of the CSA as common law claims (Counts I and V).

### A.   State Law Preempts The City's Claims.

The City's claims are at odds with the statewide scheme for regulating public health. Cities are "artificial entities created by state statute . . . [and] [a]s such, they possess only the powers expressly granted to them by the state constitution or legislature, or necessarily implied from those expressly given." *EQT Prod. Co. v. Wender*, 191 F. Supp. 3d. 583, 594 (S.D.W. Va. 2016).  Their power is "inferior in status and subordinate to state" power, such that "just as federal law will displace state law when the two meet, so, too, is state law superior to local law." *Id.* at 596–97.  As the West Virginia Supreme Court of Appeals told the City long ago, "[p]ublic health is a matter of *statewide* rather than local or municipal interest or concern and in the regulation of public health *the power of the state is supreme*."  *City of Huntington v. State Water Comm'n*, 73 S.E.2d 833, 835 (W. Va. 1953) (emphasis added).

The conduct the City seeks to regulate here—the reporting of suspicious prescription-drug orders—is a matter of public health, and thus of statewide concern.  The State has heavily regulated the field through the CSA and its implementing regulations, which, among other

things, detail the requirements for pharmaceutical distributors to register and obtain licenses. This comprehensive regulatory scheme occupies the field of prescription drug regulation so as to preempt any attempts at local regulation.  "[T]he state has comprehensively regulated this area . . . *and left no room for local control.*"  *EQT Prod. Co.*, 191 F. Supp. 3d at 598–99 (emphasis added); *see also id.* ("At no point is any power to regulate such matters expressly granted to [local governments].").

Because Plaintiff's claims, whether styled as violations of statutory or common law, conflict with state law, they are preempted by West Virginia's extensive enforcement regime. First, the City asserts that Cardinal Health has a duty to refuse to *ship* suspicious orders.  This conflicts with State regulations, which require distributors only to *report* such orders.  *See infra* Part I.B.  Second, the City seeks to assess liability against Cardinal Health when the BoP has affirmatively licensed Cardinal Health (and the pharmacies in Huntington to which it supplies prescription drugs) and has refused to assess any such liability against it.  Third, the City's theories would essentially bar Cardinal Health from doing business in the City by distributing to Huntington pharmacies, impeding their licensed authority to dispense controlled substances.  The City may not regulate Cardinal Health's conduct in a manner inconsistent with State law, whether by litigation or other means.  *See AstraZeneca LP v. State*, 41 So. 3d 15, 33 (Ala. 2009) (observing that "regulation by litigation" poses "serious questions of . . . preemption and supremacy").

### B.     Only The BoP Is Authorized To Enforce The CSA And Its Regulations.

Count III asserts violations of the West Virginia CSA, W. Va. Code § 60A-8-1 *et seq.*, and its regulations.  But the CSA does not authorize the City to bring this Count.

The CSA provides that *the BoP* "shall administer the provisions of this chapter," W. Va. Code § 60A-2-201(a), and it prescribes a specific enforcement scheme: "Complaints arising

-6-

under any provision" of the CSA article relevant here, "*shall* be handled" pursuant to procedures set forth in section 60A-8-10.  *Id.* § 60A-8-10.  Those procedures empower the BoP to "file a written complaint" charging "a wholesale drug distributorship operation with violations of this article," *id.* § 60A-8-10(a), after which the BoP may hold an "expedited hearing" and "suspend, restrict or revoke the license" of the registered company, *id.* § 60A-8-10(b).  The Act allows for judicial relief *only* if the *BoP* requests it:  "Upon proper application by the board, a court . . . may grant an injunction, restraining order or other order" enforcing the Act.  *Id.* § 60A-8-12(a).

The BoP has promulgated a number of regulations governing the procedures by which violations of the CSA and regulations will be adjudicated.  *See, e.g.*, W. Va. Code R. § 15-1-7.  These regulations provide that the sufficiency of a registrant's "controls against diversion" will be evaluated only *by the BoP*.  *Id.* § 15-2-4.2.1.  The BoP likewise evaluates its registrants' compliance with BoP regulations in determining whether to issue and renew a distributor's mandatory operating license.  W. Va. Code § 60A-8-7(b)(1), (3).  The BoP has done so for Cardinal Health—most recently renewing its Wholesale Drug Permit and its Controlled Substances Permit on June 27, 2016—demonstrating that the BoP disagrees with the City that Cardinal Health has failed to comply with the anti-diversion regulations.

Conversely, the CSA does not contain any provision which grants a city any authority to enforce the CSA or its regulations.  While there is a provision authorizing the BoP to enlist county prosecuting attorneys and the attorney general to assist and cooperate in the enforcement of the CSA, city attorneys are not mentioned.  *See* W. Va. Code § 60A-5-501(c).  The City thus lacks any basis for claiming authority to enforce the Act.

**C.    There Is No Implied Private Cause Of Action For Damages Under The CSA In Light Of The Extensive Regulatory Scheme.**

The BoP's exclusive enforcement authority also means that no implied right of action

exists under the CSA.  Four factors determine whether a private cause of action can be implied: (1) whether the plaintiff is part of "the class for whose benefit the statute was enacted;" (2) the legislature's intent; (3) whether a cause of action is "consistent with the underlying purposes of the legislative scheme;" and (4) whether implying a cause of action would intrude into an area of federal authority.  *Hurley v. Allied Chem. Corp.*, 262 S.E.2d 757, 763 (W. Va. 1980).  While all four *Hurley* prongs have weight, "legislative intent is the polar star in determining the existence of a private cause of action."  *Fucillo v. Kerner ex rel. J.B.*, 744 S.E.2d 305, 310 (W. Va. 2013).

The first three factors counsel against implying a private cause of action under the CSA. First, the CSA and its regulations were not enacted to protect cities, as political entities, from the cost of prescription-drug diversion.  Rather, "[t]he purpose of this article is to protect *the health, safety and general welfare of residents* of this state."  W. Va. Code § 60A-8-3.  Second, the Legislature provided for enforcement by the BoP, not for private damages suits, as demonstrated by the CSA's extensive statutory and regulatory enforcement scheme (discussed above, Part I.B). Third, allowing a city to enforce its own understandings of the CSA would be inconsistent with the existing legislative scheme—particularly where, as here, the BoP has declined to take action.

Indeed, the existence of an extensive administrative scheme for sanctioning violations of CSA regulations is dispositive.  In *Hill v. Stowers*, 680 S.E.2d 66 (W. Va. 2009), the Supreme Court of Appeals reasoned that, because the West Virginia Election Code set forth a "process for contesting elections" and established "a comprehensive and detailed procedure which allows a losing candidate to dispute the results," the court could not agree the Legislature intended "that violations of the statutes at issue would give rise to a private cause of action."  *Id.* at 74.  To the contrary, a private cause of action would "usurp the legislative scheme."  *Id.*  Indeed, where the Legislature has granted exclusive authority to a state administrative agency to sue and enforce

the statute, it does not intend to create a private right of action. *See Gen. Pipeline Constr., Inc. v. Hairston*, 765 S.E.2d 163, 171–72 (W. Va. 2014).

As in *Hill*, the Legislature has constructed a comprehensive scheme for the regulation of pharmaceutical drug distribution. And, as in *General Pipeline Construction*, the Legislature has granted exclusive authority to enforce that scheme (the CSA) to an administrative agency—here, the BoP, W. Va. Code § 60A-2-201—and has authorized it to seek injunctive relief for violations of the CSA, *id.* § 60A-8-12. Thus, the Legislature did not intend to create a private right of action for damages for a violation of the CSA or its regulations. *See Hairston*, 765 S.E.2d at 172; *see also McCallister v. Purdue Pharma L.P.*, 164 F. Supp. 2d 783, 793 (S.D.W. Va. 2001) (finding no private cause of action under the analogous federal CSA).

The City's reliance on W. Va. Code § 55-7-9 as a basis for establishing a private cause of action is unavailing. *See* Am. Compl. ¶ 117. As this Court has held, "§ 55-7-9 only creates a presumption of negligence, *not a private right of action* for every violation of every statute." *Cunningham Energy, LLC v. Outman*, 2013 WL 5274361, at *5 (S.D.W. Va.). In other words, whether a private right of action for damages exists is controlled by *Hurley*, not § 55-7-9. *See Yourtee v. Hubbard*, 474 S.E.2d 613, 617–18 (W. Va. 1996). And under *Hurley*, no private right of action exists under the CSA.[5]

### D.    The Statutory Claims Cannot Be Relabeled As Common Law Claims.

The City lacks authority to bring claims premised on violations of CSA regulations, whether framed as claims directly under the CSA or as common law negligence or unjust

---

[5]    In *State ex rel. Morrisey, et al. v. Cardinal Health, Inc.*, No. 12-C-140 (the "State action"), slip op. (Boone Cty. Cir. Ct. Feb. 19, 2016), Judge Thompson concluded under *Hurley* that the Attorney General could bring an action under the CSA. *Id.* ¶¶ 48–53. Cardinal Health respectfully submits that this conclusion was mistaken under the precedent discussed above. In any event, a determination that the Attorney General may assist the BoP in enforcing the CSA does not address the question whether a *city* may do so.

enrichment claims premised on conduct that allegedly violates the CSA and its regulations.  In the first instance, if Cardinal Health was in compliance with the CSA, then it was not negligent and did not unjustly enrich itself, for the wrongful conduct alleged is the same for all three causes of action.  If Cardinal Health did violate the CSA, however, it remains the case that the Legislature entrusted enforcement of the CSA to the BoP alone.  It would be nonsensical to allow cities to enforce the CSA indirectly through common law claims when they have no authority to enforce the CSA directly.  *See Civil Aeronautics Bd. v. Delta Air Lines, Inc.*, 367 U.S. 316, 328 (1961) (refusing to grant a board "power to do indirectly what it cannot do directly"); *Blankenship v. Ethicon, Inc.*, 656 S.E.2d 451, 458–59 (W. Va. 2007) (affirming the conclusion that the Medical Professional Liability Act governed the claims despite "[t]he fact [that] [the plaintiffs] label [their claims] as 'products' claims"); *see also Revak v. SEC Realty Corp.*, 18 F.3d 81, 91 (2d Cir. 1994) ("We are not prepared to permit plaintiffs to use a common law claim to circumvent the standing requirements of the [applicable statute].").

Here, the City's negligence and unjust enrichment claims are based on, and ultimately rely on, alleged violations of the CSA.  *See* Am. Compl. ¶ 78 ("Cardinal . . . had a duty to the City of Huntington to comply with [its] obligation to report suspicious orders in the City of Huntington."); *id.* ¶ 133 ("Defendants have thus been enriched unjustly by neglecting its [*sic*] duty of distributing drugs only for proper medical purposes, which are for purposes other than legitimate medical needs.").  The City cannot evade the limits on its enforcement authority by simply relabeling the precluded statutory claims as arising under the common law.

## II.     THE CLAIMS AGAINST CARDINAL HEALTH ARE UNTIMELY.

The City asserts three claims against Cardinal Health.  All are untimely.  The City was put on notice of Cardinal Health's conduct at least five years ago, when the State sued Cardinal Health for the same alleged conduct.

## A.     The Negligence Claim Violates The Two-Year Limitation Period.

West Virginia has a two-year limitation period for negligence claims.  W. Va. Code § 55-2-12(b); *Trafalgar House Constr., Inc. v. ZMM, Inc.*, 567 S.E.2d 294, 299 (W. Va. 2002) ("[C]laims in tort for negligence . . . are governed by a two-year statute of limitation.").  That period begins to run when the plaintiff knows or should know of "the essential elements of a possible cause of action, that is, discovers duty, breach, causation and injury."  *Gaither v. City Hosp., Inc.*, 487 S.E.2d 901, 909 (W. Va. 1997).  Generally, a "plaintiff will 'discover' the existence of a cause of action, and the statute of limitation will begin to run, at the same time that the actionable conduct occurs."  *Dunn v. Rockwell*, 689 S.E.2d 255, 265 (W. Va. 2009).[6]

Here, the City alleges Cardinal Health was negligent in failing to report suspicious orders *before* June 2012 and in "regularly distributing large quantities" of prescription drugs into the City during that time.  Am. Compl. ¶¶ 53, 55, 74, 77–79.  Yet the City did not bring this lawsuit until December 2016—more than four years after Cardinal Health concededly began reporting large numbers of suspicious orders in compliance with the BoP's requirements.  *Id.* ¶ 53.

The City was on notice of the alleged non-reporting as early as 2012.  Indeed, the State sued the company in June 2012, alleging the very failure-to-report and excessive-distribution claims the City now seeks to pursue.[7]  That public filing put the City on notice no later than June 2012 of "the essential elements of a possible cause of action."  *Gaither*, 487 S.E.2d at 909.  The filing of the State's Complaint was a matter of public record; Cardinal Health openly disclosed

---

[6]   In determining when a plaintiff "discovered" the existence of a cause of action, the Court is not limited to the allegations in the Complaint, but may consider matters of which the Court can take judicial notice, *Schenker AG v. Société Air France*, 102 F. Supp. 3d 418, 422 (E.D.N.Y. 2015)—such as filings in another case.  Fed. R. Evid. 201; *see, e.g.*, *Cook v. Mildred Mitchell-Bateman Hosp.*, 2016 WL 1306648, at *1 & n.2 (S.D.W. Va.).

[7]   *See generally* Complaint, *State ex rel. Morrisey, et al. v. Cardinal Health, Inc.*, No. 12-C-140 (Boone Cty. Cir. Ct. June 26, 2012) (attached to the Motion as "Exhibit A").

-11-

it; and there was a flood of state and national news articles about the lawsuit.[8]  Accordingly, Count I should be dismissed because it is time-barred as a matter of law.

**B.      The CSA Claim Violates The One-Year Limitation Period.**

Even assuming the City can bring a claim under the CSA, it had only one year to do so because the CSA does not specify a limitation period.  W. Va. Code § 55-2-12 ("Every personal action for which no limitation is otherwise prescribed shall be brought . . . within one year . . . ."); *see State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 488 S.E.2d 901, 912–13 (W. Va. 1997) (applying one-year limitation period to claim under civil enforcement statute that "is silent as to whether there are any applicable statutes of limitations").

The City's CSA claim parrots the allegations of Count I that Cardinal Health over-distributed opioids and under-reported suspicious orders, Am. Compl. ¶¶ 111–113, but, again, the allegations regarding Cardinal Health's distributions date to 2007–2012, *id.* ¶¶ 6, 55.  Thus, even assuming Cardinal Health's distribution of FDA-approved medications to licensed pharmacies violated the CSA and that the City could assert such a claim, the City is four years late in doing so, and Count III should therefore also be dismissed.

**C.      Laches Bars The Unjust Enrichment Claim.**

---

[8]      Cardinal Health, Inc., Annual Report (Form 10-K) (Aug. 13, 2014) at 45, http://ir.cardinalhealth.com/financial-reporting/sec-filings/sec-filings-details/default.aspx?FilingId=10149186 (last visited Jan. 30, 2017); *see, e.g.*, Zac Taylor, *McGraw Targets 'Pill Mill' Suppliers*, Charleston Gazette-Mail, June 27, 2012, at P1A; Jared Hunt, *McGraw Targeting Pill Mills; Attorney General Files Lawsuit Asking Drug Companies To Prove Sales Are for Legitimate Reasons*, Charleston Daily Mail, June 27, 2012, at P1A; Chad Abshire, *W. Va. AG McGraw Sues 14 'Pill Mill' Suppliers*, Williamson Daily News, June 28, 2012; Editorial, *Their View: W. Va. Attorney General Tied to Rogue Drug Firm*, Mineral Daily News-Trib. (Keyser, W. Va.), Aug. 8, 2013, at 4; Jon Kamp, *West Virginia Sues Drug Distributors in Pill-Abuse Fight*, Wall St. J. Online (June 27, 2012, 5:08 PM), http://www.wsj.com/articles/SB10001424052702304058404577492853204473294; Lawrence Messina, Associated Press, *W. Va. AG Sues 14 Pain Drug Distributors*, YAHOO! NEWS (June 27, 2012), https://www.yahoo.com/news/w-va-ag-sues-14-130327939.html.

As a claim seeking equitable relief, the City's unjust enrichment claim is subject to the doctrine of laches. *Absure, Inc. v. Huffman*, 584 S.E.2d 507, 511 (W. Va. 2003). "Laches is a delay in the assertion of a known right which works to the disadvantage of another, or such delay as will warrant the presumption that the party has waived his right." *Grose v. Grose*, 671 S.E.2d 727, 733 (W. Va. 2008) (internal quotation marks omitted). "The elements of laches consist of (1) unreasonable delay and (2) prejudice." *State ex rel. Webb v. W. Va. Bd. of Med.*, 506 S.E.2d 830, 833 (W. Va. 1998). Both elements are present here.

As explained above, the City was aware of its potential claims in 2012, yet delayed bringing this action for almost four years. This delay prejudiced Cardinal Health. Beyond the fading memories, diminished availability of witnesses, and loss of evidence regarding the claims, *see Laurie v. Thomas*, 294 S.E.2d 78, 82 (W. Va. 1982), Cardinal Health also incurred expenses and obligations in reliance on the absence of the present lawsuit. Chief among them, Cardinal Health agreed to settle the State lawsuit asserting identical claims in reliance on the decision of the City (and other political subdivisions) not to intervene on a timely basis. Allowing the City to take a "wait and see" approach to the State action and sue Cardinal Health for the *same shipments* at this late date smacks of gamesmanship. *See, e.g.*, *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330 (1979) (disfavoring equitable doctrines for "wait and see" plaintiffs). Simply put, the City's unreasonable delay "work[ed] to the disadvantage of" Cardinal Health. *Grose*, 671 S.E.2d at 733; *see also Amos v. Courtney*, 2014 WL 1672930, at *4 (W. Va.) (upholding application of laches where delay "forced [respondent] to engage in additional litigation"). As a result, Count V should also be dismissed.

## III.   THE CITY'S CLAIMS FAIL ON OTHER, INDEPENDENT LEGAL GROUNDS.

The City fails adequately to allege negligence because the harms were not proximately caused by Cardinal Health's alleged misconduct and, separately, Cardinal Health had no duty to

the City to prevent criminal conduct by third parties.  Further, the Complaint fails to plead the predicate element of unjust enrichment—that the City conferred any benefit on Cardinal Health. Finally, each claim fails because the free public services doctrine bars recovery.

### A.    The Complaint Does Not Plausibly Allege Proximate Causation.

There can be no liability unless the harm was proximately caused by the wrong.  *See Valentine v. Wheeling Elec. Co.*, 376 S.E.2d 588, 591 n.4 (W. Va. 1988); *Matthews v. Cumberland & Allegheny Gas Co.*, 77 S.E.2d 180, 187 (W. Va. 1953).  "Generally, a willful, malicious, or criminal act breaks the chain of causation."  *Yourtee*, 474 S.E.2d at 620.  Thus, someone who leaves his car unlocked with the keys in the ignition is not liable for damage caused when a thief steals the car and crashes it.  *Id.* at 621.  Likewise, advertising for alcohol is not a proximate cause of illegal alcohol consumption by children, because "for an underage person to consume alcohol, there must be at least one illegal act, whether it is a retailer selling alcohol to an underage consumer or a person of age purchasing alcohol for someone underage." *Bertovich v. Advanced Brands & Importing Co.*, 2006 WL 2382273, at *11 (N.D.W. Va.).

Here, the Complaint identifies at least three criminal actors whose conduct intervened between Cardinal Health's conduct and the alleged harm—the doctors that *intentionally* and *unlawfully* prescribed opioids "for illegitimate medical purposes," the pharmacies that unlawfully dispensed them, and the individuals that abused them.  Am. Compl. ¶¶ 11, 25, 41, 105.  The City admits that "[i]ndividuals in West Virginia cannot obtain opioids without a prescription written by a licensed medical provider."  Am. Compl. ¶ 47.  Without a doctor to prescribe them and a pharmacy to dispense them, the opioids shipped by Cardinal Health would not reach Huntington residents.  *See, e.g.*, W. Va. Code §§ 60A-1-101(x), 60A-4-401(c) (criminalizing prescription of a controlled substance outside "the course of professional practice").  As the Complaint concedes, a wholesale distributor "alone" cannot "divert controlled

-14-

substances for illegitimate medical purposes." Am. Compl. ¶ 11.  Diversion cannot occur

without a doctor that is "grossly negligent" in "prescrib[ing]" the controlled substances and a

pharmacy that is "grossly negligent" in "dispen[ing]" the controlled substances.  *Id.*  These

intervening criminal acts, as alleged on the face of Plaintiff's Complaint, break the chain of

causation.

Similarly, the City admits "[m]any . . . addicts deploy increasingly desperate tactics—

including doctor-shopping, use of aliases, and criminal means to satisfy their cravings."  Am.

Compl. ¶ 25; *see* W. Va. Code § 60A-4-410(a) (prohibiting "withhold[ing] from a practitioner,

that the patient has obtained a prescription for a controlled substance of the same . . . therapeutic

use in a concurrent time period from another practitioner").  The City acknowledges that opioids

can be prescribed and used for legitimate medical purposes.  *See* Am. Compl. ¶ 21 ("Opioids are

effective treatment for short-term post-surgical and trauma-related pain, and for palliative (end-

of-life) care.").  In order for opioid pills to be diverted, then, there must be an individual who

criminally misuses the opioids, breaking the chain of causation.  *See* Am. Compl. ¶ 42 (alleging

that the pills "were susceptible to being diverted for *illegal* purposes, *abused*, *overused*, and

otherwise sought for *illegal*, unhealthy, and problematic purposes") (emphasis added).

By contrast, the allegations as to Cardinal Health are simply that it did not take sufficient

steps to *monitor and prevent* that intentional misconduct by third parties.  "[T]he proximate

causation analysis is about carefully drawing a line so as to distinguish the direct consequences

in a close causal chain from more attenuated effects influenced by too many intervening causes."

*Emp'r Teamsters-Local Nos. 175/505 Health & Welfare Tr. Fund v. Bristol Myers Squibb Co.*,

969 F. Supp. 2d 463, 475 (S.D.W. Va. 2013).  Facing a similarly "vast array of intervening

events, including the independent medical judgment of doctors," the Court in that case held that

the pharmaceutical manufacturer's marketing activities were too remote from the third-party payor's increased costs to establish proximate causation. *Id.* Here, the intervening unlawful conduct of the "pill mill" physicians, rogue pharmacies, and drug abusers "breaks the chain of causation" even more cleanly. *See Ashley County, Arkansas v. Pfizer, Inc.*, 552 F.3d 659 (8th Cir. 2009) (affirming dismissal of political subdivision's claims seeking to hold manufacturers of over-the-counter medications containing pseudoephedrine liable for costs incurred by counties in addressing the societal effects of the methamphetamine epidemic); *Yourtee*, 474 S.E.2d at 620.[9]

### B. The Complaint Does Not Plausibly Allege A Legal Duty Owed By Cardinal Health To The City.

The City likewise fails to allege a duty owed it by Cardinal Health. As discussed in Part I, the City cannot assert a claim for negligence premised on Cardinal Health's alleged regulatory violations, because no private cause of action can be implied from the CSA or its regulations. To state a claim for negligence, then, the City must allege that Cardinal Health breached a common law duty, independent of the obligations imposed by the CSA and the BoP regulations, to adopt controls against diversion. *Miller v. Whitworth*, 455 S.E.2d 821, 824 (W. Va. 1995) ("No action for negligence will lie without a duty broken.").

The City first claims that Cardinal Health is liable because it failed to report suspicious orders. Am. Compl. ¶¶ 73–74, 78. Cardinal Health, however, had no common law duty to do so. The duty to report suspicious orders arises solely from legislative rules enacted by the BoP, as discussed above. *See* W. Va. Code R. § 15-2-4. The City also claims Cardinal Health failed to protect it from harm resulting from the illegal distribution of "highly addictive controlled substances." Am. Compl. ¶ 77. Again, Cardinal Health had no such common law duty.

---

[9]   The fact that the City seeks solely the recovery of monies expended in providing government services also means that the negligence claim is barred by the economic loss rule. *Aikens v. Debow*, 541 S.E.2d 576, 589–90 (W. Va. 2000).

"Generally, a person does not have a duty to protect others from the deliberate criminal conduct of third parties." *Miller*, 455 S.E.2d at 825.  Thus, for example, a drug manufacturer has no duty at common law "to control [a physician]'s practice of prescribing OxyContin." *Labzda v. Purdue Pharma L.P.*, 292 F. Supp. 2d 1346, 1355 (S.D. Fla. 2003).  Nor does a manufacturer have a common law duty either to "ensure that its products are counterfeit-proof" or to "police its distributors" to prevent counterfeit.  *Ashworth v. Albers Med., Inc.*, 410 F. Supp. 2d 471, 482 (S.D.W. Va. 2005).  The same applies to wholesale distributors, who do not manufacture, market, prescribe, or dispense controlled substances.  Cardinal Health merely delivers its products to pharmacies, who have legal, ethical, and professional responsibilities to dispense pursuant only to legitimate medical prescriptions.  *See* W. Va. Code R. § 15-2-7.  Those prescriptions are issued by physicians who also have legal, ethical, and professional responsibilities to prescribe medications only for legitimate medical purposes.  *See id.*

Nor can Plaintiff look to "industry standards" to impose a duty on Cardinal Health.  *See* Am. Compl. ¶¶ 54, 80–81, 112 (citing Healthcare Distribution Management Association, Industry Compliance Guidelines: Reporting Suspicious Orders and Preventing Diversion of Controlled Substances (the "HDMA Guidelines")).  For one thing, the HDMA Guidelines relied upon by Plaintiff no longer exist.  For another, the HDMA Guidelines only provide suggestions to distributors for complying with federal law as administered by the DEA; they have no independent legal force or effect.  *See Lehman Bros. Holdings, Inc. v. Laureate Realty Servs., Inc.*, 2007 WL 2904591, at *28 (S.D. Ind.) (concluding that Mortgage Bankers Association's Canons of Ethics, as a purported "industry standard," do not "give rise to an independent and enforceable legal duty"); *In re Jones*, 2011 WL 5025329, at *3 (Bankr. E.D. Va.) (concluding that Consumer Data Industry Association's Credit Reporting Resource Guide does not

"constitute[] a national, legally enforceable standard for the reporting of debts").

Finally, to the extent Plaintiff alleges that the CSA and BoP regulations impose a duty on distributors to refuse to ship all orders of controlled substances it identifies as possibly suspicious, that argument must fail. West Virginia's regulations require only that Cardinal Health *report* these orders to the BoP; not that it refuse to *ship* any order. *See* W. Va. Code R. § 15-2-4.4.

### C.     The City Fails To State An Unjust Enrichment Claim.

Plaintiff fails to plead facts sufficient to allege an unjust enrichment claim. A plaintiff seeking to recover "on a theory of unjust enrichment must [plead]," among other elements, "a benefit conferred on the defendant *by the plaintiff*." *Johnson v. Ross*, 419 F. App'x 357, 361 (4th Cir. 2011) (emphasis added) (applying West Virginia law); *see also Am. Heartland Port, Inc. v. Am. Port Holdings, Inc.*, 53 F. Supp. 3d 871, 879 (N.D.W. Va. 2014) ("In West Virginia, 'restitution damages from a claim of unjust enrichment are measured in terms of the benefit the plaintiff conferred to the defendant.'"), *aff'd per curiam*, 624 F. App'x 110 (4th Cir. 2015).

The Complaint fails to meet this threshold requirement, for it does not allege the City conferred a benefit on, made payments to, or performed services for Cardinal Health. To the contrary, the City claims its damages are the City's increased spending on *its own* services, not anything paid to Cardinal Health. Am. Compl. ¶¶ 128–130. Because the City has not alleged it conferred the "benefits that [Cardinal Health] received," "there is simply no basis to allow [the City] to pursue a claim against [Cardinal Health] for unjust enrichment." *Hill*, 680 S.E.2d at 75.

### D.     The Free Public Services Doctrine Bars The Claims.

One of the functions of government is to provide basic services. The police do not bill for their time when they cite a negligent driver for a fender-bender; nor does the fire department when it puts out the fire caused by the homeowner's negligence. The "free public services" doctrine bars such claims. *In re Oil Spill by The Amoco Cadiz*, 954 F.2d 1279, 1310 (7th Cir.

1992); *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1080 (D.C. Cir. 1984) (dismissing claim seeking expenses of providing emergency services).  West Virginia courts have invoked similar principles to bar claims against inmates to recover "the costs of room and board in the county jail," reasoning that such costs are "a public charge on the county" that cannot "be collected" absent statutory authority.  *State v. St. Clair*, 355 S.E.2d 418, 419–20 (W. Va. 1987).

The City here seeks exclusively costs that it incurred in providing public services to its citizens.  For example, it attempts to recover costs for "corrections and corrections facilities." Am. Compl. ¶ 128.  These "public charge[s]," *St. Clair*, 355 S.E.2d at 419–20, represent a legislative policy determination that the courts should not disturb.  As the City is not entitled to any of the damages it pleads, its claims against Cardinal Health must be dismissed.  *See Air Fla., Inc.*, 750 F.2d at 1080 (affirming dismissal of claim seeking expenses of providing emergency services); *Walker Cty. v. Tri-State Crematory*, 643 S.E.2d 324, 329 (Ga. Ct. App. 2007) (same).

## IV.    THE CITY FAILS TO PLEAD FACTS SUFFICIENT TO STATE A PLAUSIBLE CLAIM FOR RELIEF.

Federal Rules of Civil Procedure 8 and 12(b)(6) require a plaintiff "to provide . . . more than labels and conclusions" to survive a motion to dismiss.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Complaint falls far short of Rule 8's requirements.  For some claims, the City includes no factual allegations at all.  The Complaint fails to specify which provisions of the CSA Cardinal Health allegedly violated, which orders were suspicious, or even which pharmacies submitted suspicious orders. It also fails to allege in what respect the company's anti-diversion program was inadequate or failed to conform to industry standards.  It does not allege such basic facts as how many opioid pills *Cardinal Health* distributed in the City, the number of pills prescribed for legitimate purposes versus the number diverted, that even a single opioid pill distributed by the company

was actually diverted, or that any single instance of diversion is connected to a suspicious order that the company should have reported.  The City also fails to allege facts that plausibly connect Cardinal Health's allegedly unlawful distribution of controlled substances with the City's alleged harms.  Nor does the Complaint link Cardinal Health to Dr. Chaney.  Cardinal Health does not distribute directly to consumers, and with no connection alleged between Cardinal Health and Dr. Chaney or Huntington pharmacies, the factual allegation of the Complaint do not establish a causal theory to support the City's claims.[10]

In sum, the Complaint fails to allege the basic facts necessary to establish the legal "plausibility" of the City's claims, as required by *Twombly*.

## CONCLUSION

For these reasons, the City's claims against Cardinal Health are insufficient as a matter of law, and this Court should dismiss the Complaint in its entirety.  To the extent the Complaint raises novel issues of West Virginia law, this Court should certify a question of law to the West Virginia Supreme Court.  *See* W. Va. Code § 51-1A-3.

---

[10] General allegations of causation—such as "Defendants each played a key role in the creation and continuation of the opioid epidemic resulting [in] momentous damages," Am. Compl. ¶19, or "[t]he aforementioned conduct was a direct breach of the duty [Distributor] Defendants . . . owed to Plaintiff which was the proximate cause of Plaintiff suffering damages for which it seeks a recovery herein," Am. Compl. ¶ 82—do not plead plausible causation. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555); *see, e.g.*, *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 426 (3d Cir. 2002) (affirming Rule 12(b) dismissal of negligence and public nuisance claims by City of Philadelphia and civic organizations against gun manufacturers, stating that "[t]he causal connection between the gun manufacturers' conduct and the plaintiffs' injuries is attenuated and weak").

Dated this the 2nd day of March, 2017.

Respectfully submitted,

**CARDINAL HEALTH 110, LLC**

**By Counsel,**

/s/ Susan M. Robinson
Susan M. Robinson (WVSB #5169)
srobinson@tcspllc.com
Robert H. Akers (WVSB #9622)
rakers@tcspllc.com
THOMAS COMBS & SPANN, PLLC
300 Summers Street, Suite 1380
Charleston, WV  25301
Telephone:  (304) 414-1800
Facsimile: (304) 414-1801

Enu Mainigi (*pro hac vice* application
filed)
emainigi@wc.com
F. Lane Heard (*pro hac vice* application
filed)
lheard@wc.com
Steven M. Pyser (*pro hac vice* application
filed)
spyser@wc.com
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC  20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

And

James R. Wooley (*pro hac vice* application
filed)
jrwooley@jonesday.com
JONES DAY
901 Lakeside Avenue
Cleveland, OH 44114
Telephone: (216) 586-3939
Facsimile: (216) 572-1212

Elizabeth P. Kessler (*pro hac vice*
application filed)
ekessler@jonesday.com
JONES DAY
325 John H. McConnell Blvd.
Columbus, OH 43215
Telephone: (614) 281-3852
Facsimile: (614) 461-4198

*Counsel for Cardinal Health 110, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of March, 2017, I served MEMORANDUM IN SUPPORT OF CARDINAL HEALTH INC.'S MOTION TO DISMISS electronically filed with the Clerk of the United States District Court for the Southern District of West Virginia, using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

> Charles R. "Rusty" Webb (WVSB #4782)
> The Webb Law Centre, PLLC
> 716 Lee Street, East
> Charleston, WV  25301
> *Counsel for Plaintiff*
>
> A. L. Emch (WVSB #1125)
> Adam J. Schwendeman (WVSB #11989)
> JACKSON KELLY PLLC
> 500 Lee Street East, Suite 1600
> Charleston, West Virginia 25301
> *Counsel for AmerisourceBergen Drug Corporation*
>
> Jeffrey M. Wakefield (WVSB #3894)
> FLAHERTY SENSABAUGH & BONASSO PLLC
> P.O. Box 3843
> Charleston, WV  25338
> *Counsel for McKesson Corporation*
>
> Gregory D. Chaney, M.D.
> 1426 Spring Brook Road
> Kenova, WV  25530
> *Defendant*

> /s/Susan M. Robinson
> Susan M. Robinson (WVSB #5169)
> Robert H. Akers (WVSB #9622)
> THOMAS COMBS & SPANN, PLLC
> 300 Summers Street, Suite 1380
> Charleston, WV  25301