**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**
**BLUEFIELD DIVISION**

**THE CITY OF HUNTINGTON,**

          **Plaintiff,**

**v.**                                      **Case No: 3:17-cv-01362**
                                              **Judge Robert C. Chambers**

**AMERISOURCEBERGEN DRUG**
**CORPORATION, CARDINAL HEALTH INC, and**
**MCKESSON CORPORATION,**
**GREGORY DONALD CHANEY, M.D.,**

          **Defendants.**

## <u>MEMORANDUM IN SUPPORT OF MOTION TO REMAND</u>

      COMES now the Plaintiff, The City of Huntington, by counsel, Charles R. "Rusty" Webb of the Webb Law Centre, PLLC, and submits the following memorandum in support of Plaintiff's *Motion to Remand*. Defendants invoked diversity jurisdiction under 28 U.S.C. 1332 in removing this action, notwithstanding the inclusion of a non-diverse defendant, Dr. Chaney, based on the premise of fraudulent misjoinder. (ECF 1 at 4-6). This is particularly obscure species of fraudulent joinder jurisprudence traces its roots to a factually and procedurally inapposite case from the Eleventh Circuit Court of Appeals; it has yet to be adopted by a single other Circuit Court of Appeals (most notably it has not been sanctioned by the Fourth Circuit); and, by its own terms, requires a level of "egregiousness" not present- nor even pressed- here. For those reasons alone this matter should be remanded. Nonetheless, even assuming this Court (a) accepts the doctrine in theory, and (b) disregards its express "egregious" requirement, this case must still be remanded because the claims- and, notably, several defenses already presented- all arise out of the same series of transactions or occurrences: "The City of Huntington has been severely damaged by Defendants' collective actions. The Defendants have illegally and

tortiously profited from the prescription drug abuse problems knowingly dumping opioids into the City of Huntington." "Through their acts and omissions the Defendants have inserted themselves as an integral part of the epidemic of opioid abuse. As alleged herein, this epidemic consist of medical providers, pharmacies and distributors of controlled substances, each of whom knowingly or while acting grossly negligent prescribe, dispense or distribute prescription medicine for illegitimate medical purposes. Each act alone would be ineffective to divert controlled substances for illegitimate medical purposes. Equally, each act together causes and contributes to the opioid epidemic." (ECF No. 1-3 ¶2, 11). Dr. Chaney is, thus, properly joined. This matter should be remanded to state court, where it was initially filed, because as the action is not removable generally pursuant to 28 U.S.C. §1441 and on the basis that this Court does not have jurisdiction pursuant to 28 U.S.C. §1332 and 28 U.S.C. §1446. For the reasons set forth herein, Plaintiff respectfully request that this motion be granted and this matter be remanded to the Circuit Court of Cabell County, West Virginia, for further proceedings.

## FACTUAL BACKGROUND

In the last 20 years, an opioid epidemic has infected this country, particularly in Huntington, West Virginia. Defendants each played a key role in the creation and continuation of the opioid epidemic resulting momentous damages, (ECF No. 1-3 ¶19). The Defendants Amerisource, Cardinal and McKesson had a legal duty to ensure they were not filling suspicious orders, as well as to report suspicious orders. (ECF No. 1-4 ¶69). Dr. Chaney had a legal duty to ensure he was not prescribing suspicious orders. Defendants were each on notice that the controlled substances they distributed or prescribed were the kinds that were susceptible to being diverted for illegal purposes, abused, overused, and otherwise sought for illegal, unhealthy and problematic purposes. As entities involved in the distribution and prescribing of dangerous

opioid medications, Defendants were engaged in an abnormally and/or inherently dangerous activity and had a duty of care under West Virginia law. (ECF No. 1-3 ¶42). The actions of Defendants have caused and will continue to cause the City of Huntington to disburse substantial sums of public funds to deal with the significant consequences of the opioid epidemic that was fueled by Defendants' illegal, reckless, and malicious actions in flooding the state with highly addictive prescription medications without regard for the adverse consequences to the City of Huntington or its residents. (ECF No. 1-3 ¶12). Plaintiff seeks to recover, inter alia, the substantial additional sums it has been forced to expend in responding to the crisis. (ECF No. 1-3 ¶13) Plaintiff alleges its claims against three drug distributors: Amerisource Bergen Drug Co. (AmeriSource), Cardinal Health Inc. ("Cardinal") McKesson Corporation ("McKesson") and a West Virginia Physician, Dr. Donald Chaney.

## DEFENDANTS HAVE INVOKED FRAUDULENT MISJOINDER, NOT FRAUDULENT JOINDER

While at one point the Notice of Removal states that Dr. Chaney was "fraudulently joined," (ECF No. 1 at 10), it nowhere argues traditional fraudulent joinder jurisprudence, nor could it. As this court has recognized, "the rigor of the fraudulent joinder standard is draconian," *Fleming v. United Teachers Associates Ins. Co.*, 250 F. Supp. 2d 658, 662 (S.D.W. Va. 2003), as such "claims must survive a black-and-white analysis, with any shades of gray resolved in favor of remand. A plaintiff need have only a '*glimmer of hope*' in order for the case to be remanded to state court." *Crigger v. Parsley Enterprises, Inc*., CIV .A. 1:14-30971, 2015 WL 874433, at *2-3 (S.D.W. Va. Feb. 27, 2015).

The standard for traditional fraudulent joinder is met only where "the removing party….establishes either: that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud

in the plaintiff's pleading of jurisdictional facts." *Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir.

1999) (emphasis in original) (quoting *Marshall v. Manville Sales Corp*., 6 F.3d 229, 232 (4th Cir.

1993)).

Thus,

> *[t]he party alleging fraudulent joinder bears a heavy burden- it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." This standard is said to be even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Rule 12(b) (6) of the Federal Rules of Civil Procedure. To defeat removal all that is required is the possibility of a right to relief by the plaintiff.*

*Fleming*, 250 F. Supp. 2d at 661-62 (quoting Hartley v. CSX Transp., Inc., 187 F .3d 422, 424

(4th Cir. 1999); *Miller v. BAS Technical Employment*, 153 F. Supp. 2d 835, 837 (S.D.W. Va.

2001)).

Defendants do not argue that Plaintiff's claims against Dr. Chaney suffer from such

infirmities that there is not so much as a "glimmer of hope" for them.  Rather, Defendants-

impliedly conceding that there is at least some possibility of recovery against the non-diverse

defendants- impliedly conceding that there is at least some possibility of recovery against the non-

diverse defendant, assert that the claims against Dr. Chaney are misjoined, in that they are

"legally and factually too remote to sustain joinder under either federal or West Virginia law."

(ECF No. 1 at 11). That theory is referred to inconsistently in the relevant authority as fraudulent

joinder, fraudulent misjoinder, or procedural misjoinder. *Ashworth v. Albers* Med. Inc., 395 F.

Supp. 2d 395, 409-10 (S.D.W. Va. 2005). Plaintiff refers to the theory here as fraudulent

misjoinder.

However, "[f]raudulent joinder and fraudulent misjoinder are two distinct legal

doctrines." *Wyatt v. Charleston Area Medical Center, Inc.*, 651 F. Supp. 2d 492,496 (S.D.W. Va.

2009).  The latter "is an assertion that claims against certain defendants, while provable, have no real connection to the claims against other defendants in the same action and were only included in order to defeat diversity jurisdiction and removal." *Id.* "The doctrine of fraudulent misjoinder is relatively new and not clearly defined," *Id.*, and "what conduct may constitute fraudulent misjoinder has merited much debate," *Ashworth*, 395 F. Supp. 2d at 410.

What is clear, is that the doctrine arose form *Tapscott v. MS Dealer Service Corp.*, 77 F. 3d 1353 (11th Cir. 1996), abrogated on other grounds, Cohen v. Office Depot, 204 F. 3d 1069 (11th Cir. 2000). See Wyatt, 651 F. Supp. 2d at 496; Ashworth, 395 F Supp. 2d at 409-10. In *Tapscott*, the plaintiffs were two separate classes asserting two separate and unrelated claims against separate sets of defendants: The first class, citizens of Alabama, arising out of the sale of service contracts on automobiles; the second class of plaintiffs- not added until a second amended complaint, were Alabama citizens asserting claims against a different, diverse, defendant arising out of the sale of extended service contracts in connection with the sale of retail products. *Tapscott*, 77 F. 3d at 1355. The diverse defendant removed, and moved to server the claims against it. *Id*. At 1355-56.

Plaintiffs moved to remand arguing that "while a court may disregard the citizenship of fraudulently joined parties, a misjoinder, no matter how egregious, is not fraudulent joinder." Id. at 1360. The Eleventh Circuit disagreed, finding that the "the only similarity between the allegations in the 'automobile' class and the 'merchant' class are allegations of violations of Alabama Code 5-19-1, 5-19-20. Such commonality on its face is insufficient for joinder." *Id*. Because the joinder in *Tapscott* was "egregious" and bordered on a sham," the Eleventh Circuit affirmed denial of the motion to remand. Yet, it made clear that "mere misjoinder" is not enough: "We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district

court that Appellants' attempt to join these parties is so egregious as to constitute Id. Courts in the Eleventh Circuit apply the egregiousness fraudulent joinder." Requirement with great fealty[1].

## THIS COURT SHOULD REJECT THE FRAUDULENT MISJOINDER DOCTRINE

Acceptance of this novel exception to the complete diversity rule has been uneven and, at the appellate level, evasive:  The Fifth, Eighth, Ninth, and Tenth Circuits sidestepped the issue[2].  "Notably, the Fourth Circuit falls within the majority of circuit courts that have not yet recognized the relatively new doctrine of fraudulent misjoinder," *Zirkle v. Valley Forge Ins. Co.*, 1:15CV82, 2015 WL 4729327, at *3 (N.D.W. Va. Aug. 10, 2015), "and district courts within the circuit have disagreed as to whether to adopt it." *Tinsley v. Streich*, 143 F. Supp. 3d 450, 458 (W.D.Va. 2015). "Indeed, only the Eleventh Circuit has expressly sanctioned its application." *Zirkle*, 2015 WL 4729327, at *3; see also generally Richard E. Kaye, J.D., Annotation, Construction and Application of Fraudulent Misjoinder Exception to complete Diversity Rule, 65

---

[1] See, e.g., *Bruner v. Am. Honda Motor Co., Inc.,* CV 15-00319-N, 2015 WL 5050050, at *4-5 (S.D. Ala. Aug. 25, 2015) ("This type of joinder is fraudulent because it represents misjoinder under Fed. R. Civ. P. 20 and because it is 'so egregious' as to 'border on a sham,'"); *Harvey v. Geico Gen. Ins. Co.,* 14-80078-CIV, 2014 WL 3828434, at *3 (S.D.. Fla. Aug. 4, 2014) ("Only egregious cases call for a court to disregard citizenship of a non-  diverse defendant ."); *Ramey v. Gilbert*, 5:05-CV-244 (CAR), 2005 WL 314931, at *3 (M.D. Ga. Nov. 23, 2005) ("StonebrIdge merely argues that the Defendants were misjoined under Rule 20 and fails to prove that the alleged misjoinder is so egregious as to be fraudulent joinder. In fact, StonebrIdge does not even contend that Plaintiffs' misjoinder in this case is egregious. Instead, it merely calls the misjoinder 'blatant.' Nowhere in either its motion to sever or its response to Plaintiffs' motion to remand does StonebrIdge use the work "egregious.' Although StonebrIdge does contend that the misjoinder in this case is 'blatant,' 'blatant' misjoinder is not the equivalent of 'egregious.'")

[2] See *In re Prempro Products Liab. Litig.,* 591 F.3d 613, 621-22 (8th Cir. 2010) ("The Eighth Circuit Court of Appeals has not yet considered the fraudulent misjoinder doctrine.  We make no judgment on the propriety of the doctrine in this case, and decline to either adopt or reject it at this time." (citation omitted)); *Lafalier v. State Farm Fire & Cas. Co.,* 391 Fed. Appx. 732, 739-40 (10th Cir. 2010) ("There may be many good reasons to adopt procedural misjoinder, as the Insurers argue. But we need not decide that issue today, because the record before us does not show that adopting the doctrine would change the result in this case."); *In re Benjamin Moore & Co.*, 318 F. 3d 626, 630-31 (5th Cir. 2002) ("Without detracting from the force of the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction, we do not reach its application in this case."); *California Dump Truck Owners Ass'n v. Cummins Engine Co., Inc.,* 24 Fed. Appx. 727, 729 (9th Cir. 2001) ("For purposes of discussion we will assume, without deciding, that this circuit would accept the doctrines of fraudulent and egregious join der as applied to plaintiffs.") see also *Kent State Univ. Bd. Of Trustees v. Lexington Ins. Co.,* 512 Fed. Appx. 485, 491 n.1 (6th Cir. 2013) ("The Sixth Circuit had not adopted the fraudulent misjoinder doctrine.")

A.L.R. Fed. 2d 527 (Originally published in 2012) (hereinafter Kaye, Fraudulent Misjoinder).

This court should avoid application of this unwieldly and unnecessary additional procedural nuance of removal jurisprudence. As several courts have recognized, the doctrine implicates significant functional and federalism concerns.

As a practical matter, the fraudulent misjoinder doctrine needless ads to the complexity of a federal court's decision as to removal, and "the last thing the federal courts need is more procedural complexity." *Osborn v. Metro. Life Ins.* Co., 341 F. Supp. 2d 1123, 1127-28 (E.D. Cal. 2004) (citing WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 3D 3723 at 656). That complexity is only heightened by various burgeoning splits in the doctrine's application: Is egregiousness require; if so, what level of egregiousness is sufficient; and, should a court rely on federal or state law to determine whether joinder was proper? See, e.g., *Osborn*, 341 F. Supp. 2d at 1127-28; *Murriel-Don Coal Co., Inc. v. Aspen Ins. UK lts.,* 790 F. Supp. 2d 590, 599-600 (E.D. Ky. 2011) ("Among the unsettled doctrinal questions are whether the court analyzes the propriety of the joinder under state or federal law, and how blatant the misjoinder has to be for it to rise to the level of 'fraudulent.'" (citation omitted)); Kaye, Fraudulent Misjoinder 4-6. "The doctrine is neither simple nor easy to apply. For this reason, it is unlikely to promote consistent results or conservation of the resources of courts and parties." *In re Yasmin & Yaz (Drospirenon) Mktg., Sales Practices & Products Liab. Litig*., 779 F. Supp. 2d 846, 857 (S.D. Ill. 2011) (quoting *Sabo v. Dennis Techs*., LLC, 01-CV-283-DRH, 2007 WL 1958591, at *8 (S.D. Ill. July 2, 2007)).

Indeed, just within this Circuit, courts have taken widely varying views on adoption and application of the theory. Some reject the theory altogether[3], some apply it with a strict egregiousness gloss[4], some dispense with any egregiousness requirement whatsoever[5], and some appear to chart a middle course, borrowed from traditional fraudulent joinder jurisprudence, asking whether there is a "reasonable possibility that a state court would find" that plaintiff's claims "were properly joined with his claims against the other defendants."[6]

All of these vagaries are easily avoided by outright rejection of this theory crafted from judicial whole cloth.  The discretion to expand removal rests with the legislative branch:

> Federal courts possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. Moreover, the fact that federal courts are courts of limited jurisdiction imposes special risks on litigants, especially litigants who choose to proceed in federal court where the grounds for federal subject matter jurisdiction are not clear, namely, that months and years of litigation may be in vain as a result of a jurisdictional error.
>
> ….
>
> [The] decision to enlarge the scope of federal diversity jurisdiction on removal through the adoption of the fraudulent misjoinder doctrine is one for Congress to make.

---

[3] See, e.g., *Tinsley*, 143 F. Supp. 3d at 458-59 ("Even if the court were to adopt the doctrine as an exception to the complete diversity rule, which it declines to do, the court finds no misjoinder under either the federal or the state rule."); *Palmetto Health All. v. S.C. Elec. & Gas Co.,* 3:11-CV-2060-JFA, 2011 WL 5027162, at *2 (D.S.C. Oct. 21, 2011) ("Absent direction from the Fourth Circuit, this court declines to adopt fraudulent misjoinder and accept jurisdiction over this case.").

[4] *Wyatt v. Charleston Area Med.* Ctr., Inc., 651 F. Supp. 2d 492, 498-99 (S.D.W. Va. 2009) ("Even if these claims were misjoined, I could not find that the joinder was 'so egregious as to constitute fraudulent joinder.' In order to sever and remand the claims against the Medical Defendants, I would need to find that not only were they joined inappropriately, but that there was 'something more' than mere misjoinder." (citation omitted) (quoting *Tapscott*, 77 F. 3d at 1360)).

[5] *Hughes v. Sears, Roebuck & Co.,* CIV.A. 2:09-CV-93, 2009 WL 2877424, at *4- 5 (N.D.W. Va. Sept. 3, 2009) (rejecting egregiousness requirement and stating "this Court will apply only the two requirements within Rule 20(a) to determine whether there is misjoinder that requires severance of claims. Upon a finding that both requirements are satisfied, this court will follow the appropriate course of action, which is to sever the claims against the misjoined defendant.").

[6] *Ashworth v. Albers Med., Inc.,* 395 F. Supp. 2d 395, 410 (S.D.W. Va. 2005).

*In re Yasmin & Yaz*, 779 F. Supp. 2d at 855, 857 (quoting Sabo, 2007 WL 1958591, at *8, *9). Indeed, legislation related to misjoinder and its effect on diversity jurisdiction is currently pending before Congress.[7]

Likewise, as this court has repeatedly recognized, "because removal raises federalism concerns, the court must carefully scrutinize the facts to ensure that removal is appropriate and resolve any doubt about the propriety of removal in favor of remanding to state court." Karnes v. Outback Steakhouse of Florida, LLC, CV 1:15-13441, 2016 WL 3661557, at *1-2 (S.D.W. Va. July 5, 2016) (citing Mulcahey v. Columbia Organic Chems. Co., 29 F. 3d 148, 151 (4th Cir. 1994)). "Congress' clear intention is to restrict removal and resolve all doubts about the propriety of removal in favor of retaining state court jurisdiction." Pinnoak Res., LLC v. Certain Underwriters at Lloyd's, London, 394 F. Supp. 2d 821, 825 (S.D.W. Va. 2005).

Such federalism concerns are likewise easily assuaged by rejection of the theory in toto. As the courts following that course have Identified, the better path is to return the matter to state court where the propriety, or not, of the joinder can be examined, "and then, if that court severed the case and diversity then existed, [defendant] could seek removal of the cause to federal court." *Osborn*, 341 F. Supp. 2d at 1127-28; see also Murriel-Don Coal Co., 790 F. Supp. 2d at 599-600 ("The Court agrees with the other district courts that have left the whole enterprise to the state courts. After remand, Aspen may try to convince the Kentucky courts that Dunaway had been improperly joined in this action." (Citations omitted)): *Geffen v. Gen. Elec. Co.,* 575 F. Supp. 2d 865, 871-72 (N.D. Ohio 2008) ("The better course of action is for the state court to

---

[7] See Fairness in Class Action Litigation Act of 2017, H.R. 985, 115th Cong. § 4 (2017), available at https://www.congress.gov/bill/115th-congress/house-bill/985/text#toc-H95907577FE5F4956B98F71D534AC5252.

rule on the propriety of joinder under the state's join der law in the first instance.")

This Court should hold similarly, reject the fraudulent misjoinder doctrine, and return this matter to state court. There, Defendants can present the state court with the joinder issue. If successful, they can then remove after the claims against Dr. Chaney are severed, assuming they otherwise meet the removal requirements. This process respects the longstanding blackletter law that removal should be strictly construed, doubts about federal jurisdiction should be resolved in favor of remand, and pays the necessary deference to state courts that federalism requires.

## IF ADOPTED, DEFENDANTS HAVE NEITHER ARGUED NOR ESTABLISHED EGREGIOUS MISJOINDER

If the court were to accept the fraudulent misjoinder doctrine- which it should not, it should also adopt the egregiousness requirement Identified in *Tapscott*. The Eleventh Circuit is the sole appellate court to adopt the doctrine,[8] and its identification of the need for something more than "mere misjoinder" was neither equivocal nor surplusage. See *Tapscott*, 77 F. 3d at 1360 (We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder.") (emphasis added).

This additional requirement quells some of the federalism concerns omnipresent in the removal context. Here, all doubts concerning federal jurisdiction are to be resolved in favor of

---

[8] Certain authorities claim that the Fifth Circuit has adopted the doctrine as well, citing to Crockett v. R.J. Reynolds Tobacco Co., 436 F.3d 529 (5th Cir. 2006). However, Crockett simply stands for the proposition that following severance of a diverse defendant by the state court, a subsequent removal is proper and not defeated by the voluntary-involuntary rule. Id. at 533 ("That salutary purpose is also served by recognizing an exception to the voluntary- involuntary rule where defendants are improperly, though not fraudulently, joined. We therefore conclude that removal on the basis of an unappealed severance, by a state court, of claims against improperly joined defendants is not subject to the voluntary-involuntary rule"). Indeed, the district court in Crockett did initially remand the matter, over a claim of fraudulent joinder, prior to the state court severance. Id. at 531.

remand. *Pinnoak Res.*, 394 F. Supp. 2d at 825. That is why the standard for traditional fraudulent joinder, requiring not even so much as a "glimmer of hope" of a successful claim against the in-state defendant- is so exacting. The egregiousness requirement enunciated in *Tapscott* addresses, at least to some degree, this concern. If it accepts the theory at all, this Court should follow in the wake of others in this District and strictly apply the egregiousness requirement. See *Wyatt*, 651 F. Supp. 2d at 498-99 ("Even if these claims were misjoined, I could not find that the joinder was 'so egregious as to constitute fraudulent joinder.' In order to sever and remand the claims against the Medical Defendants, I would need to find that not only were they joined inappropriately, but that there was 'something more' than mere misjoinder. (Citation omitted) (quoting *Tapscott*, 77 F. 3d at 1360; *In re Bridgestone/Firestone, Inc*., 260 F. Supp. 2d 722, 728 (S.D. Ind. 2003))).

The Notice of Removal fails to allege that the joinder of Dr. Chaney was egregious or that there is "something more" than mere misjoinder. That pleading defect alone is sufficient to remand this matter. In any event, as explained below, the joinder of Dr. Chaney was wholly proper, and thus could never meet the fraudulent misjoinder standard.

## EVEN IF MERE MISJOINDER WERE SUFFICIENT, THE CLAIMS AGAINST DR. CHANEY ARE PROPERLY JOINED

### Permissive Joinder Under West Virginia and Federal Law

Even if the Court were to accept the fraudulent misjoinder theory while simultaneously rejecting the egregiousness requirement, this matter should still be remanded as the claims against Dr. Chaney are properly joined. While the wording of West Virginia's permissive joinder

Rule[9]  is similar to that of Rule 20 of the Federal Rules of Civil Procedure[10], the state rule is to

be "liberally constructed. '*State ex rel. J.C. ex rel. Michaelle C. v. Mazzone,* 772 S.E. 2d 336,

334 (W. Va. 2015); *Anderson v. McDonald*, 289 S.E. 2d 729, 734 (W. Va. 1982) (same); see also

*In re Davocet, Darvon & Propoxyphene Products Liab. Litig.,* 889 F. Supp. 2d 931, 943-44

(E.D. Ky. 2012) (noting that while the California and federal permissive joinder rules were

nearly Identical, that the California rule was to be "interpreted more liberally," and that the

claims were "likely enough to satisfy California's joinder rule").

Both rules require a two inquiry analysis: 1) whether the claims to be joined arise out of

the same transaction, occurrence, or series of transactions or occurrences; and 2) whether some

questions of law or fact common to all the parties will arise in the action.

Under West Virginia law, "the same transaction or occurrence prong of Rule 20(a) means

all logically related events. This does not mean that all events must Identical" *State ex rel. J.C. v.*

*Mazzone*, 759 S.E. 2d 200, 207 (W. Va. 2014). Likewise, under the federal rule,

> the first prong does not require absolute Identity of events and would permit all
> reasonably related claims for relief by or against different parties to be tried in a single
> proceeding … This test is similar to the logical relationship test under Rule 13(a) in
> which all logically related events entitling a person to institute a legal action against
> another generally are regarded as comprising a transaction or occurrence.

---

[9] See W. Va R. Civ. P. 20(a) ("All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.").

[10] See Fed. R. Civ. P. 20(a)(2) ("Persons….may be joined in one action as defendants if: (A) any right to relief if asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action").

*Wyatt,* 651 F. Supp. 2d at 496-97 (quoting *Ashworth*, 395 F. Supp. 2d at 411-12).

Under state law, "commonality under the rule is not a difficult test to satisfy. Rule 20(a) requires only a single common question be shown, not multiple common questions. The common question of fact or law 'need not be the most important or predominant issue in the litigation.' *Mazzone*, 759 S.E.2d at 207-08 (citations omitted) (quoting *Nguyen v. CTS Elecs. Mfg. Solutions Inc., N*o. 12-CV-03679-LHK, 301 F.R.D 337, 341, 2014 WL 46553, at *4 (N.D. Cal. Jan. 6, 2014)). Similarly, under federal law, "Rule 20(a) does not require that every question of law or fact in the action be common among the parties; rather the rule permits party joinder whenever there will be at least one common question of law or fact. *Wyatt*, 651 F. Supp. 2d-at 496-97 (quoting *Ashworth*, 395 F. Supp. 2d-at-411-12).

**Allegations of the Complaint**

Here, the claims against the Defendants, including Dr. Chaney, all arise out of the same series of transactions or occurrences. As alleged, this matter arises from Defendants' collective efforts "..motivated by financial gain without regard to the welfare of the City of Huntington and its residents, have caused substantial damages, including, but not limited to, increased expenses of drug abuse treatment program, prevention and training costs (for law enforcement, hospitals and schools), costs of the drug Naloxone  as well as education, training and use, youth development community programs, medical care and hospitalizations,  increased costs of law enforcement, increased costs of prosecutions and most significantly increased costs of incarcerations.." (ECF No. 1-3 at ¶13). "The actions of Defendants have caused and will continue to cause the City of Huntington to disburse substantial sums of public funds to deal with

the significant consequences of the opioid epidemic that was fueled by Defendants' illegal, reckless, and malicious actions in flooding the state with highly addictive prescription medications without regard for the adverse consequences to the City of Huntington or its residents." (ECF No. 1-3 at ¶12).  Importantly, Defendants "inserted themselves as an integral part of the epidemic of opioid abuse. As alleged herein, this epidemic consist of medical providers, pharmacies and distributors of controlled substances, each of whom knowingly or while acting grossly negligent prescribe, dispense or distribute prescription medicine for illegitimate medical purposes." (ECF No. 1-3 at ¶11). Simply put, "Each act alone would be ineffective to divert controlled substances for illegitimate medical purposes.  Equally, each act together causes and contributes to the opioid epidemic." (ECF No. 1-3 at ¶11).

And, "Defendants were each on notice that the controlled substances they distributed or prescribed were the kinds that were susceptible to being diverted for illegal purposes, abused, overused, and otherwise sought for illegal, unhealthy and problematic purposes. As entities involved in the distribution and prescribing of dangerous opioid medications, Defendants were engaged in an abnormally and/or inherently dangerous activity and had a duty of care under West Virginia law. (ECF No. 1-3 at ¶42).

Specifically, "The Defendants Amerisource, Cardinal and McKesson purchased opioids from manufacturers and sold them to pharmacies throughout the City of Huntington." (ECF No. 1-3 at ¶43).  "The Defendants Amerisource, Cardinal and McKesson had the ability to slow down, question, inspect, report or otherwise limit the flow of these drugs into the City of Huntington, but chose not to do so, because they did not want to lose profits." (ECF No. 1-3 at

¶46).  61. The Defendants Amerisource, Cardinal and McKesson had a legal duty to ensure they were not filling suspicious orders, as well as to report suspicious orders (ECF No. 1-4 at ¶61). Despite knowledge of the ongoing opioid epidemic in West Virginia and repeated fines and other sanctions for their consistent failures to report suspicious orders, between 2007 and 2012 the Defendants Amerisource, Cardinal and McKesson shipped 423 million doses of highly addictive controlled pain killers into West Virginia, many of which should have been stopped and/or investigated as suspicious orders (ECF No. 1-4 at ¶55).The sheer volume of pills in comparison to the population is suspicious on its face.   "The Defendants Amerisource, Cardinal and McKesson undertook intentional distribution of excessive prescription pain killers to a small community which showed a reckless disregard to the safety of the City of Huntington and its residents." (ECF No. 1-4 at ¶65).

Dr. Chaney's role was no less critical to the series of transactions at issue here. Importantly, individuals in West Virginia cannot obtain opioids without a prescription written by a licensed medical provider.   Dr. Chaney was a licensed medical provider in West Virginia over the relevant time period. Dr. Chaney provided written opioid prescriptions for patients despite knowing that the opioids were likely to be abused, diverted, or misused. Dr. Chaney knew or should have known his actions resulted in patients obtaining dangerous drugs that they did not need, were likely to be abused, or were likely to be resold on the street.." (ECF No. 1-3 at ¶47). Dr. Chaney likewise, "undertook no efforts to determine whether the volume of prescription pain killers he was prescribing to Huntington residents was excessive and whether any of the prescriptions he wrote should have been refused." (ECF No. 1-4 at ¶66). The relevant data

illustrates that Dr. Chaney's opioid prescription writing practices were far out-of-step with his colleagues. (ECF No. 1-4 at ¶84-88). For example, he "prescribed opioids to 58% of the 398 Medicare patients, compared to an average of 25% among all physicians. (ECF No. 1-4 at ¶84). He too was investigated by the relevant authorities, including in connection with "improper prescribing of narcotic pain medication, including narcotics, to a patient who subsequently died, (ECF No. 1-4 at ¶89"), his license to practice medicine was summarily suspended, in accordance with the provisions of W. Va. Code §30-3-14(k) and W. Va. Code R. §11-3-10.16. (ECF No. 1-4 at ¶103). Dr. Chaney's acts led to the dispensing of controlled substances for non-legitimate medical purposes and fueling an opioid epidemic in West Virginia. (ECF No. 1-4 at ¶105).

All Defendants were on notice that West Virginia law required them, inter alia, to provide effective controls and procedures to guard against diversion of controlled substances, pursuant to 15 C.S.R. § 2-4.21 and 2-4.4 and the WV Controlled Substances Act. . (ECF No. 1-4 at ¶48).

**Application**

Thus, Defendants each played crucial roles in the opioid epidemic this action is aimed at. In essence and effect, AmeriSource, Cardinal and McKesson were the suppliers of illicit drugs and Dr. Chaney was the dealer. The damages suffered by Plaintiff would not have occurred without the misdeeds of each defendant: But for the conduct of AmeriSource, Cardinal and McKesson the drugs would not have been shipped and made available in the City of Huntington; but for the conduct of Dr. Chaney, individuals would not have been able to purchase those improperly shipped drugs. Defendants represent two sides of the same coin; each is a player in

the same series of transactions. Their actions, as alleged, are inextricably intertwined.

In any event, this series of transactions is certainly "logically related," and that is all that is required under the state or federal rule. *Mazzone*, 759 S.E. 2d at 207; Wyatt, 651 F. Supp. 2d at 496-97. More to the point and after drawing all inferences in Plaintiff's favor and resolving all doubts in favor of remand, there is certainly a "reasonable possibility that a state court would find" that the claim against Dr. Chaney and the remaining defendants are "logically related." *Wyatt*, 651 F. Supp. 2d at 496 (quoting *Conk v. Richards & O'Neil*, LLP, 77 F. Supp. 2d 956, 971(S.D. Ind. 1999)).

Likewise, while all that is required is a single common question of fact or law to satisfy the second inquiry of the analysis, here, common issues abound. As an initial matter, Plaintiff is seeking the same damages from each of the defendants: The various increased costs incurred by Plaintiff in responding to the epidemic. (ECF No. 1-4 at ¶129).This alone is sufficient to defeat the misjoinder argument:

> Notably, the plaintiffs are seeking to recover for the same damages from all defendants. Assuming that the plaintiffs' allegations are true, the defendants will almost certainly debate which defendant is most responsible for the injuries. The injuries themselves, the extent of the injuries, and what caused those injuries are common questions of fact . . .

*Wyatt*, 651 F. Supp. 2d at 498-99.

Indeed, Defendant finger-pointing as to shares of responsibility has already begun. Defendant McKesson's Thirteenth and Fourteenth Affirmative Defenses claim the conduct of others, including, conceivably, the other Defendants are the cause of Plaintiff's damages. (ECF No. 9 at 17). Thus, damages, and each Defendants' responsibility therefore, will be a common factual questions.

In fact, the entire premise of this suit is sure to be challenged by Defendants and forms another common question; i.e. whether any of the opioids delivered to, and prescribed in the City of Huntington, were actually diverted for improper or illegal purposes, and whether, assuming such misuse did occur, the named Defendants' products or were prescriptions responsible therefore, again, affirmative defenses preview this fight, as its Eighth and Ninth defenses challenge whether any of the "suspicious orders" Identified in the complaint were provided by it and further alleges that Plaintiff "cannot specifically prove the presence or identity of the products sold and/or distributed by McKesson…." (ECF No. 9 at 21).

Moreover, Count V *[sic]* for Unjust Enrichment is alleged against all Defendants collectively, including Dr. Chaney. Defendants AmeriSource, Cardinal and McKesson have attacked this claim on theory that Plaintiff has not conferred a benefit upon Defendants. See (ECF No. 9 at 18; ECF No. 14 at 21 22; ECF No. 16 at 19). However, the type direct benefit conferral Defendants suggest is not required. Rather,

> under West Virginia law, unjust enrichment occurs when: ' [one] has and retains money or benefits which in justice and equity belong to another…. The benefit may be . . . beneficial services conferred; satisfaction of a debt or duty owed by him; or anything which adds to his security or advantage.

*Am. Heartland Port, Inc. v. Am. Port Holdings, Inc*., 53 F. Supp. 3d 871, 879 (N.D.W. Va. 2014), aff'd, 624 F. App'x 110 (4th Cir. 2015) (alternations in original) (quoting *Dunlap v. Hinkle*, 317 S.E. 2d 508, 512 n.2 (W. Va. 1984)). "A person may be unjustly enriched not only where he receives money or property but also where he otherwise receives a benefit. He receives a benefit… where he has saved expense or loss." Id. (quoting *Bright v. QSP, Inc.,* 20 F. 3d 1300, 1311 (4th Cir. 1994)). This holistic understanding of unjust enrichment accords with the Restatement's view that "a person confers a benefit upon another if he…satisfies a debt or a duty

of the other, or in any way adds to the other's security or advantage.  He confers a benefit  not only where he adds to the property of another, but also where he saves the other from expense or loss.   Restatement (First) of Restitution § 1 comment b (1937).  Plaintiff alleges that it saved Defendants from expense or loss by incurring costs associated with the fallout from the opioid epidemic. Accordingly, determining Defendants liability for unjust enrichment is yet another common question of law and fact.

## CONCLUSION

This Court should reject the novel, judicial invention of fraudulent misjoinder. Considerations of federalism and judicial restraint, blackletter law regarding the heavy burden on removal and the related default towards remand, all counsel against its adoption. The joinder and severance issues are more appropriately determined by the state court in the first instance. In any event, the claims against Dr. Chaney arise out of the same transaction or series of transactions as the claims against the other Defendants and thus are properly joined here. They are, in no way, egregiously misjoinded, as the *Tapscott* standard requires. Accordingly, this matter should be remanded to state court.

Respectfully submitted,
**THE CITY OF HUNTINGTON**,
By Counsel,


s/Charles R. "Rusty" Webb_____
CHARLES R. "RUSTY" WEBB (WVSB No.: 4782)
The Webb Law Centre, PLLC
716 Lee Street, East
Charleston, West Virginia  25301
(304) 344-9322 - *telephone*
(304) 344-1157 – *facsimile*
rusty@rustywebb.com

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## BLUEFIELD DIVISION

**THE CITY OF HUNTINGTON,**

                **Plaintiff,**

**v.**                                              **Case No: 3:17-cv-01362**
                                                     **Judge Robert C. Chambers**

**AMERISOURCEBERGEN DRUG
CORPORATION, CARDINAL HEALTH INC, and
MCKESSON CORPORATION,
GREGORY DONALD CHANEY, M.D.,**

                **Defendants.**

## <u>CERTIFICATE OF SERVICE</u>

I, Charles R. Webb, counsel for Plaintiff, the City of Huntington, do hereby certify service

that on March 15, 2017, I served the forgoing ***Memorandum in Support of Motion to Remand***

upon the parties hereto by filing a true copy thereof *via* ECF to the following counsel of record:

A. L. Emch, Esquire
Adam J. Schwendeman, Esquire Jackson Kelly PLLC
500 Lee Street East, Suite 1600
P. O. Box 553 Charleston, West Virginia 25322

Eric W. Sitarchuk, Esquire
Meridith S. Auten, Esquire
Morgan Lewis & Bockius
1701 Market Street
Philadelphia, PA 19103

***Counsel for AmerisourceBergen Drug Corp.***

Susan M. Robinson, Esquire
Robert H. Akers, Esquire
Thomas Combs & Spann, PLLC
300 Summers Street, Suite 1380
Charleston, WV 25301

Enu Mainigi, Esquire *(Pro Hac Vice)*
F. Lanc Heard, Esquire
Steven M. Pyser, Esquire
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005

James R. Wooley, Esquire *(Pro Hac Vice)*
Jones Day
North Point - 901 Lakeside Avenue
Cleveland, OH 44114

Elizabeth P. Kessler, Esquire *(Pro Hac Vice)*
Jones Day
325 John H. McConnell Blvd.
Columbus, OH 43215

**Counsel for Cardinal Health, Inc.**

Jeffrey M. Wakefield , Esquire
Flaherty Sensabaugh Bonasso. PLLC
P. O. Box 3843
Charleston, WV 25338-3843

Geoffrey Hobart, Esquire
Matthew Benov, Esquire
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001

**Counsel for McKesson Corporation**

s/Charles R. "Rusty" Webb_____
CHARLES R. "RUSTY" WEBB (WVSB No.: 4782)
The Webb Law Centre, PLLC
716 Lee Street, East
Charleston, West Virginia  25301
(304) 344-9322 - *telephone*
(304) 344-1157 – *facsimile*
rusty@rustywebb.com