**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION**

THE CITY OF HUNTINGTON,
               Plaintiff,

    v.

AMERISOURCEBERGEN DRUG
CORPORATION, CARDINAL HEALTH
INC., MCKESSON CORPORATION, and
GREGORY DONALD CHANEY, M.D.,
               Defendants.

Civil Action No. 3:17-cv-01362
Judge Robert C. Chambers


**Opposition of AmerisourceBergen Drug Corporation, Cardinal Health Inc., and McKesson Corporation to Plaintiff's Motion to Remand**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 2

ARGUMENT ........................................................................................................... 4

I.   COMPLETE DIVERSITY EXISTS BECAUSE DR. CHANEY WAS MISJOINED ........................... 4

　　A.   The Fraudulent Misjoinder Doctrine Has Been Uniformly Recognized by
　　　　the District Courts in West Virginia ....................................................... 5

　　B.   Dr. Chaney Was Fraudulently Misjoined To Defeat Diversity ............................ 6

　　　　1.   The claims against Dr. Chaney arise out of different transactions
　　　　　　than the claims against Distributor Defendants ................................... 7

　　　　2.   The claims against Dr. Chaney and those against Distributor
　　　　　　Defendants present no common questions ............................................ 11

　　C.   Although No Showing of Egregiousness Is Necessary, the Misjoinder of
　　　　Dr. Chaney Is Indeed Egregious ............................................................ 13

II.  COMPLETE DIVERSITY ALSO EXISTS BECAUSE THE CITY CANNOT SUCCEED ON ITS
　　CLAIMS AGAINST DR. CHANEY IN THIS ACTION ................................................... 16

　　A.   The Fraudulent Joinder Doctrine Applies When Claims Are Foreclosed by
　　　　the Plaintiff's Failure To Satisfy Statutory Pre-Suit Requirements ................... 17

　　B.   The City Did Not Comply with the MPLA, and Its Claims Against Dr.
　　　　Chaney Are Therefore Barred at the Threshold ............................................ 18

CONCLUSION ......................................................................................................... 20

## INTRODUCTION

This misguided lawsuit is an effort by the City of Huntington, a political subdivision of West Virginia, to lay blame and liability for the wide-ranging social ills caused by prescription opioid abuse on three out-of-state wholesale distributors of pharmaceuticals ("Distributor Defendants").  Federal diversity jurisdiction exists precisely for this type of case, in which local passions risk being inflamed against unpopular outsiders.  *See Bank of United States v. Deveaux*, 9 U.S. 61, 87–88 (1809) (Marshall, C.J.).  The City does not deny that its claims against Distributor Defendants, standing alone, would be removable under 28 U.S.C. § 1332 and § 1441.

In a gambit to defeat diversity jurisdiction and deny out-of-state Distributor Defendants a federal forum, however, the City has added as a defendant a single West-Virginia-based physician (Dr. Gregory Chaney), who is not alleged to have any connections at all to Distributor Defendants beyond the theory that all contributed in some way to the "opioid epidemic."  The City now relies on this gambit to argue that complete diversity is absent, and asks for remand to its home field, the Circuit Court of Cabell County.  ECF No. 19 ("Remand Br.").

The right to a federal forum is not so easily defeated.  The fraudulent joinder doctrine, well-recognized for more than a century, precludes this manipulation and gamesmanship.  Under that doctrine, removal is appropriate so long as complete diversity exists with all *properly joined* defendants.  Dr. Chaney is not among them for two reasons.  *First*, the claims against him (which arise from his prescription of opioids to individual patients and concern medical malpractice) lack sufficient legal or factual nexus to the claims against Distributor Defendants (which arise from the fulfillment of bulk orders by licensed pharmacies and concern regulatory reporting obligations).  In short, the claims against Dr. Chaney and Distributor Defendants are misjoined under Rule 20.  *Second*, even if the claims against Dr. Chaney were not misjoined, the City has

1

no possibility of succeeding on those claims in this action because it failed to satisfy the statutory pre-suit requirements applicable to claims against health care providers.

The City barely attempts to defend its misjoinder of Dr. Chaney.  Instead, it urges this Court to "reject" the fraudulent misjoinder doctrine—even though Judges Chambers, Haden, Copenhaver, Bailey and Goodwin have recognized and applied it since 2014.  What little the City says in support of joining Dr. Chaney only highlights just how far the City is stretching the relevant legal principles.  The City, for example, insists that "the opioid epidemic" represents a single "transaction" under the Federal Rules of Civil Procedure and that its broad damages demand for all expenditures related to that epidemic creates a "common question."  The opioid crisis is a social phenomenon, not a transaction.  To define it as a "transaction" for purposes of Rule 20 is to render the test meaningless.  The "common question of law or fact" test, moreover, requires more than a conclusory allegation seeking to hold all defendants responsible for the same damages; it requires that the liability of one defendant depend on the liability of the other. Here, however, the liability of Dr. Chaney for prescribing opioids without a valid medical purpose does not depend on whether Distributor Defendants reported certain pharmacy orders to the Board of Pharmacy as "suspicious"—and vice versa.

Due to Dr. Chaney's fraudulent misjoinder and joinder, this Court should deny the City's motion, retain the claims against Distributor Defendants, and remand or dismiss the claims against Dr. Chaney.

## BACKGROUND

The City's amended complaint (ECF Nos. 1-3, 1-4 ("Compl.")) asserts two different

classes of claims against two different classes of defendants.[1]  *First*, the complaint names Distributor Defendants, three wholesale drug distributors regulated in West Virginia by the State's Board of Pharmacy ("BoP").  *Id.* ¶¶ 3–5.  Distributor Defendants buy prescription drugs from manufacturers and fulfill orders placed by licensed pharmacies.  *Id.* ¶ 43.  They do not examine patients, diagnose pain, or prescribe opioids (only licensed doctors can do that), or fill doctors' prescriptions (only licensed pharmacists can do that).  The City alleges that Distributor Defendants failed to stop or report "suspicious orders" by licensed pharmacies and shipped an "excessive and unreasonable number" of opioids to West Virginia.  *Id.* ¶¶ 55–57.  Based on those allegations, the City asserts claims against Distributor Defendants for negligently distributing opioids (Count I), violation of provisions of the Uniform Controlled Substances Act ("CSA") that apply to drug distributors (Count III), and unjust enrichment (Count V).

*Second*, the complaint names Dr. Gregory Chaney, a physician licensed by the West Virginia Board of Medicine ("BoM").  *Id.* ¶ 7.  Dr. Chaney sees patients and prescribes medications for them.  *Id.* ¶¶ 10, 47.  The complaint does not allege any link between Dr. Chaney and Distributor Defendants.  Rather, it alleges that Dr. Chaney engaged in "improper prescribing of narcotic pain medication."  *Id.* ¶ 89.  He allegedly wrote a number of opioid prescriptions in 2014.  *Id.* ¶¶ 85–88.  Dr. Chaney allegedly prescribed narcotics to a patient who subsequently died, and upon investigation, the BoM allegedly found his patient-interaction practices to be unsatisfactory.  *Id.* ¶¶ 89–103.  The City asserts claims against Dr. Chaney for negligently practicing medicine (Count II), violations of CSA provisions that apply to doctors but not distributors (Count IV), and unjust enrichment (Count V).

---

[1]   The fourth count in the complaint is labeled "Count V," while the fifth is labeled "Count Y." This brief will refer to these counts by their numerical order.

3

As the complaint thus necessarily recognizes, Distributor Defendants and Dr. Chaney occupy distinct roles in the system governing delivery of prescription opioids to patients.

## ARGUMENT

The City does not dispute that diversity jurisdiction exists between it and Distributor Defendants.  The City argues, however, that by naming Dr. Chaney as a defendant, it destroyed diversity and defeated jurisdiction.  That argument fails because Dr. Chaney was fraudulently misjoined *and* fraudulently joined.  *First*, because the City's malpractice claims against Dr. Chaney and its wrongful distribution claims against Distributor Defendants arise from distinct transactions and share no common questions of law or fact, Dr. Chaney and Distributor Defendants were misjoined.  *Second*, because the City failed to follow the statutory pre-suit obligations for claims against health care providers, it has no chance of succeeding against Dr. Chaney in this action, even if he were not misjoined.

## I.      Complete Diversity Exists Because Dr. Chaney Was Misjoined.

Under the doctrine of fraudulent misjoinder, a plaintiff cannot single-handedly defeat diverse defendants' right to a federal forum by adding a non-diverse defendant who has "no real connection with the controversy."  *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996); *see also Ashworth v. Albers Med., Inc.*, 395 F. Supp. 2d 395, 411–12 (S.D. W. Va. 2005).  Naming Dr. Chaney as a defendant in this case is a textbook example of that ploy.  The City's claims against Dr. Chaney arise out of *different* transactions, involve *different* evidence, and rest on *different* legal theories than its claims against Distributor Defendants.  They are therefore "legally and factually too remote to sustain joinder under either federal or West Virginia law."  *Ashworth*, 395 F. Supp. 2d at 412.  Because Dr. Chaney was fraudulently

4

misjoined, the City's claims against him should be severed, leaving complete diversity between the City and Distributor Defendants.  *See id.* at 412–13.

> **A.**   **The Fraudulent Misjoinder Doctrine Has Been Uniformly Recognized by the District Courts in West Virginia.**

Implicitly acknowledging the misjoinder here, the City devotes the bulk of its brief to urging the Court to "reject" the fraudulent misjoinder doctrine.  Remand Br. 6.  The City neglects to mention that its plea is contrary to *uniform authority* in this district and the Northern District, which have recognized and applied the doctrine for more than a decade.  *E.g.*, *Ashworth*, 395 F. Supp. 2d at 409 (denying remand based on fraudulent misjoinder) (Copenhaver, J.); *Burns v. W. S. Life Ins. Co.*, 298 F. Supp. 2d 401, 402 (S.D. W. Va. 2004) (same) (Haden, J.); *Grennell v. W. S. Life Ins. Co.*, 298 F. Supp. 2d 390, 395 (S.D. W. Va. 2004) (same) (Chambers, J.); *Hughes v. Sears, Roebuck & Co.*, No. 2:09-cv-93, 2009 WL 2877424, at *7 (N.D. W. Va. Sept. 3, 2009) (same) (Bailey, J.); *Wyatt v. Charleston Area Med. Ctr., Inc.*, 651 F. Supp. 2d 492, 496 (S.D. W. Va. 2009) (recognizing doctrine) (Goodwin, J.).  It cites no decision from any district court in West Virginia that has refused to recognize the doctrine.

Despite the City's characterization of fraudulent misjoinder as an "obscure" doctrine (Remand Br. 1), it is neither unknown nor untested.  It has been applied to support diversity jurisdiction by courts across the country for years.  *E.g.*, *Tapscott*, 77 F.3d at 1360; *In re Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir. 2002); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 684–85 (D. Nev. 2004); *Reed v. Am. Med. Sec. Grp., Inc.*, 324 F. Supp. 2d 798, 805 (S.D. Miss. 2004); *In re Diet Drugs Prods. Liab. Litig.*, 294 F. Supp. 2d 667, 678 (E.D. Pa. 2003).

The widespread acceptance of the fraudulent misjoinder doctrine comes as no surprise because the Supreme Court has long directed the federal courts to reject the sham joinder of non-diverse defendants.  *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921) (holding

that "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy").  Fraudulent misjoinder is no different in principle, and no less a sham, than adding a defendant against whom there is no hope of recovery.  *See Tapscott*, 77 F.3d at 1360 ("Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action."); *Ashworth*, 395 F. Supp. 2d at 410.

The City's objections to the doctrine are strained and unpersuasive.  It protests that the doctrine is too complex, yet fraudulent misjoinder requires courts only to apply Federal Rule of Procedure 20—a routine task they have performed for decades.  *See, e.g.*, *Man-Sew Pinking Attachment Corp. v. Chandler Mach. Co.*, 29 F. Supp. 480, 480 (D. Mass. 1939).  Any supposed complexity over whether to apply federal or state joinder law disappears when, as in West Virginia, "the two are identical."  *Grennell*, 298 F. Supp. 2d at 397.  The City's concern for federalism is similarly overblown: The Constitution guarantees diversity jurisdiction, U.S. Const. art. III., § 2, and, as noted, the Supreme Court has rejected sham efforts to evade such jurisdiction for more than a century, *see Ala. Great S. Ry. Co. v. Thompson*, 200 U.S. 206, 218 (1906).

### B.      Dr. Chaney Was Fraudulently Misjoined To Defeat Diversity.

Turning to application of the doctrine, "the issue is whether the joinder of the defendants is permissible or whether that joinder is asserted for the sole purpose of defeating the diverse defendant's right to removal."  *Ashworth*, 395 F. Supp. 2d at 411.  "Even assuming plaintiff has a claim" against a non-diverse defendant, the defendant is considered fraudulently misjoined if "that claim is legally and factually too remote to sustain joinder under either federal or West Virginia law."  *Id.* at 412.  Because federal and state law governing joinder "are identical in West

6

Virginia," the inquiry here reduces to whether, under the Federal Rules of Civil Procedure, the City's claims against Dr. Chaney may permissibly be joined with its claims against Distributor Defendants.  *Grennell*, 298 F. Supp. 2d at 397; *see also State ex rel. Energy Corp. of Am. v. Marks*, 774 S.E.2d 546, 550–51 & n.6 (W. Va. 2015) (relying on joinder case law under Federal Rule 20 "[b]ecause the West Virginia Rules of Civil Procedure are patterned after the Federal Rules of Civil Procedure").  If they may not, Dr. Chaney's citizenship should be ignored, leaving complete diversity and rendering the removal indisputably proper.

Federal Rule of Civil Procedure 20 governs this issue and sets forth two requirements: The claims against Dr. Chaney and Distributor Defendants must (1) arise out of the same transaction or occurrence and (2) present a question of law or fact common to all defendants. *Ashworth*, 395 F. Supp. 2d at 411; *Marks*, 774 S.E.2d at 550.  As explained below, neither prong is satisfied here.

<blockquote>

**1.     The claims against Dr. Chaney arise out of different transactions than the claims against Distributor Defendants.**

</blockquote>

In considering the first requirement under Rule 20—"transactional relatedness," *Marks*, 774 S.E.2d at 550—courts should consider "the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds," *Ross v. Bd. of Educ. of Twp. High Sch. Dist. 211*, 486 F.3d 279, 284 (7th Cir. 2007).  At bottom, the inquiry asks if the claims present "enough related operative facts" to make their joinder "fair."  *Marks*, 774 S.E.2d at 551 (quoting *Moore's Federal Practice*, § 20.05, at 20–30).  That is, claims arise out of the same transaction or occurrence "if there is a 'substantial evidentiary overlap' between them."  *Id.* (quoting *Klamath Irrigation Dist. v. United States*, 113 Fed. Cl. 688, 707 (Ct. Fed. Cl. 2013)).  Here, the respective claims arise from different types of transactions sharing no common parties. One set of transactions involves the doctor-patient relationship and the doctor's exercise of

medical judgment, based on examination of a patient, to prescribe certain medications.  The other set involves wholesale contracts between drug distributors and individual pharmacies to deliver medications to the pharmacies.  No "substantial evidentiary overlap" exists among these claims because they call for fundamentally different legal and factual inquiries.

As to Dr. Chaney, the City alleges that he wrote prescriptions that were not supported by legitimate medical purposes.  Compl. ¶¶ 66–69, 92, 105.  This allegation constitutes a claim of medical malpractice arising from the doctor-patient relationship between Dr. Chaney and an unknown number of unidentified patients.  To support these claims, the City must offer evidence about individual patients and whether they had a legitimate medical need for opioids.  These patient encounters, through which the patients obtained opioid prescriptions, constitute the underlying "transactions" from which the City's claims against Dr. Chaney arise.  *Janssen Pharmaceutica, Inc. v. Armond*, 866 So. 2d 1092, 1101 (Miss. 2004) ("[T]he transaction or occurrence . . . is each doctor's prescribing Propulsid to each plaintiff.").

By contrast, the claims against Distributor Defendants allege that they filled "suspicious" opioid orders placed, not by Dr. Chaney, but by the licensed pharmacies that they supply.  Compl. ¶¶ 43, 50, 55, 58, 60, 62, 77, 80.  These claims arise from the distributor-pharmacy relationship and the wholesale distribution of opioids—not the doctor-patient relationship.  To support them, the City must offer evidence regarding the size, frequency, and nature of the orders placed by the specific pharmacies supplied by Distributor Defendants and Distributor Defendants' anti-diversion procedures—not the medical legitimacy of prescriptions written by Dr. Chaney or anyone else.

It is important to underscore that Distributor Defendants are *wholesale* distributors.  Pharmacies do not place orders with distributors on a prescription-by-prescription basis; they

maintain an inventory of regularly prescribed medications so that they can fill prescriptions when patients present them.  Indeed, under the Health Insurance Portability and Accountability Act, pharmacies are not permitted to tell Distributor Defendants which patients received which drugs or in what amounts.  42 U.S.C. § 1320d *et seq.*; 45 C.F.R. §§ 160.101 *et seq*., §§ 164.102 *et seq*., §§ 164.500 *et seq*.  Moreover, the complaint does not allege that Distributor Defendants (as opposed to any of the other wholesale distributors that do business in West Virginia) supplied the pharmacies that filled Dr. Chaney's prescriptions—or even identify *any* pharmacy whatsoever.

The Northern District's *Hughes* decision is instructive.  The plaintiff was injured on a treadmill, and her doctor misdiagnosed her injury.  She tried to join the (diverse) manufacturer and (non-diverse) physician.  2009 WL 2877424, at *1.  The court found fraudulent misjoinder. The claims against the manufacturer arose "from the design, testing, manufacture, and sale of a consumer product," while those against the doctor arose from his "care, treatment, and services." *Id.* at *6.  "[T]he evidence supporting these claims will be markedly different." *Id.*  Many courts have reached the same result in cases seeking to join medical malpractice claims with medical-product liability claims.  *See, e.g.*, *Smith v. Hendricks*, 140 F. Supp. 3d 66, 73–75 (D.D.C. 2015) (claim against manufacturer "pertains to the research, development, production, and marketing of" the medical product, as compared to "treatment by and interaction with" doctor; citing other cases); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 144–45 (S.D.N.Y. 2001).

Just as the *Hughes* doctor's malpractice had no nexus to the treadmill's defective design, Dr. Chaney's alleged malpractice has no nexus to Distributor Defendants' alleged failure to report and/or suspend shipment of suspicious orders.  The malpractice claim arises from the doctor-patient relationship.  It turns on evidence concerning the patient's medical history and the nature of his/her report of pain.  It also calls for expert testimony about the medical standard of

9

care for prescribing opioids.  By contrast, the claims against Distributor Defendants involve commercial relationships and regulatory duties to report "suspicious" orders—a duty that involves analysis of the number, volume, and pattern of pharmacy orders, but has nothing to do with individual doctors and patients, as distributors do not have access to records that show which doctors prescribe drugs for which patients or in what amounts.  The different claims against Dr. Chaney and Distributor Defendants, by their very nature, call for "markedly different" evidence.  *Hughes*, 2009 WL 2877424, at *6.  The misjoinder here is *more* obvious than in *Smith* and *Rezulin*: Unlike in those cases, the City does not allege any defect in the opioids, which might arguably link participants in the supply chain.  Distributor Defendants and Dr. Chaney allegedly engaged in *unrelated* misconduct involving the drugs.  That fails Rule 20's transactional test.

The City does not dispute that Dr. Chaney's alleged misconduct is distinct from that of Distributor Defendants, but posits that the "opioid epidemic" constitutes a single, monolithic "transaction or occurrence" that suffices to join any claims relating in any way to that social phenomenon.  Remand Br. 16–17.  That broad, global approach "views 'occurrence' at too high a level of generality."  *United States v. Pittman*, 209 F.3d 314, 318 (4th Cir. 2000).  "Courts must avoid viewing the transaction-or-occurrence standard at 'too high a level of generality,' lest claims be capaciously joined in one lawsuit even though the only thing they have in common is a solitary fact or set of facts that are not tied together in both law and in fact."  *reFX Audio Software Inc. v. Doe*, No. 13-C-1790, 2014 WL 1293816, at *5 (N.D. Ill. Mar. 24, 2014).  Under the City's approach, it could equally join failure-to-warn claims against opioid manufacturers, RICO claims against traffickers in black-market versions of the drug, negligence claims against local pharmacies, and even claims against employers who assign hard labor that results in painful

10

injuries for which treatment leads to addiction.  Such an approach would make a mockery of the "same transaction" requirement.

As courts have therefore recognized, the mere fact that the same drugs are involved is insufficient to satisfy Rule 20.  *See McNaughton v. Merck & Co.*, No. 04-cv-8297, 2004 WL 5180726, at *2 (S.D.N.Y. Dec. 17, 2004) ("[D]rug liability cases have held that related factual or legal issues, such as a similar injury allegedly caused by the same drug, are insufficient for Rule 20 joinder purposes."); *Greene*, 344 F. Supp. 2d at 684; *Rezulin*, 168 F. Supp. 2d at 145–46; *Graziose v. Am. Home Prods. Corp.*, 202 F.R.D. 638, 640 (D. Nev. 2001); *see also Smith*, 140 F. Supp. 3d at 74 (finding link to same product "immaterial" because "joinder requires more").  Courts must focus more sharply on the acts that caused the alleged injuries, and gave rise to the claims, to identify a common evidentiary basis.  Here, for the reasons explained, Dr. Chaney's alleged malpractice vis-a-vis his individual patients has no such connection to the transactions by which Distributor Defendants supply duly-licensed pharmacies.

## 2.  The claims against Dr. Chaney and those against Distributor Defendants present no common questions.

Although the lack of a common transaction defeats joinder in itself, the City's claims also fail Rule 20's second requirement—a common question of law or fact.  Where the liability of one defendant "has no bearing" on the liability of another, the claims do not share a common question of law or fact.  *Marks*, 774 S.E.2d at 551; *see also Hughes*, 2009 WL 2877424, at *6. In *Marks*, plaintiffs could not join their negligence claims against a trucking company arising out of a car accident with claims against their insurer for medical coverage of injuries sustained in the accident.  774 S.E.2d at 551.  The claims arose out of the same accident, but lacked a common issue of law or fact, as the truck driver's negligence "ha[d] no bearing" on the insurer's duty to cover the victim's medical costs.  *Id.*  Likewise, in *Hughes*, no common issue existed

11

because "whether Dr. Logar is found liable for malpractice has absolutely no effect on whether

Sears and Icon are found liable under a theory of products liability."  2009 WL 2877424, at *6.

So too here.  The City brings what is essentially a malpractice claim against Dr. Chaney,

alleging that he breached his physician's duty to prescribe controlled substances only for a

"legitimate medical purpose."  W. Va. Code R. § 15-2-7.4.1.  Whether that duty was breached

calls for application of medical judgment to individual patients.  Distributor Defendants make no

medical judgments.  The claims against them allege breach of their distinct, purported duty not to

ship "excessive" amounts of opioids ordered from pharmacies.  *Cf.* W. Va. Code R. § 15-2-4

(requiring "effective controls against diversion").  Whether Dr. Chaney breached his physician's

duty in applying his medical judgment "has no bearing" on whether Distributor Defendants may

have breached their purported duty to limit opioid distribution; the claims thus do not present

common questions.  *Marks*, 774 S.E.2d at 551; *see also Hughes*, 2009 WL 2877424, at *6

("absolutely no effect"); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, No.

07-1487,  2007 WL 2572048, at *2 (D. Minn. Aug. 30, 2007) ("Any liability that may be found

against either Guidant/EVI or Dr. Housman would not be a basis for liability as to the other.").

The City does not dispute that Distributor Defendants' liability is independent of Dr.

Chaney's.  After all, the complaint asserts negligence and statutory counts *separately* against Dr.

Chaney (Counts II & IV) and Distributor Defendants (Counts I & III).  The City argues that by

naming all Defendants in the unjust enrichment count (Count V), it somehow cured the problem.

Remand Br. 18.  Not so.  Like the rest of the complaint, Count V alleges no connection between

Dr. Chaney and Distributor Defendants.  The City seeks "profits" Defendants allegedly realized

from their conduct, Compl. ¶¶ 131–33, but Dr. Chaney's profits (from patient visits) are distinct

from Distributor Defendants' (from wholesale drug sales).  Likewise, whatever direct or indirect

benefit the City believes it conferred on Distributor Defendants (Remand Br. 18–19), it is surely a *different* benefit than was supposedly conferred on Dr. Chaney, given their vastly different roles and conduct.  Count V identifies no *common* benefit, and so creates no *common* question. *See Bailey v. N. Trust Co.*, 196 F.R.D. 513, 517 (N.D. Ill. 2000) ("Although plaintiffs' claims rest upon the same general theory of law … this is not sufficient for purposes of Rule 20(a).").

What is left is the City's argument that Defendants are all liable for the same harms. Remand Br. 17–18.  But an overbroad damages demand is hardly a silver bullet.  Federal and state courts alike have rejected the notion that a mere allegation of common damages satisfies Rule 20—even in cases involving truly indivisible harms, like physical injuries to individuals. *Hughes*, 2009 WL 2877424, at *5 (rejecting argument that "determination and apportionment of damages" present "questions of law and fact common to all the defendants"); *Marks*, 774 S.E. 2d at 546, 554 (rejecting argument that "amount of damages sustained" was common question).  In any event, here the damages are different.  Dr. Chaney can conceivably be liable only for damages flowing from improper prescriptions *he* wrote for *his* patients—presumably some subset of the opioid prescriptions he allegedly wrote in 2014.  *See* Compl. ¶¶ 85–88.  By contrast, the City seeks to hold Distributor Defendants liable for public harms allegedly caused by the "opioid epidemic," based on their shipment of opioids since 2007.  *Id.* ¶¶ 6, 55, 58. Particularly given the City's sweeping prayer for relief, the supposed commonality of its damages cannot hold together these unrelated claims against unrelated defendants.

**C.    Although No Showing of Egregiousness Is Necessary, the Misjoinder of Dr. Chaney Is Indeed Egregious.**

The City contends that even if its claims cannot properly be joined, this Court should still remand the case so long as the misjoinder was not "egregious."  Remand Br. 10–11.  The fraudulent misjoinder doctrine includes no such additional element, at least in this district.  In

13

any case, this lawsuit would surely satisfy any egregiousness standard, in light of the obvious transparency of the City's effort to evade federal jurisdiction.

As to the law, the Eleventh Circuit in *Tapscott* initially left open the question whether "mere" misjoinder would permit removal, 77 F.3d at 1360, but federal courts in West Virginia have answered that it will: The weight of authority "[i]n this district" is that "the 'egregious' nature of the misjoinder is not relevant to the [fraudulent misjoinder] analysis." *Burns*, 298 F. Supp. 2d at 403; *see also Grennell*, 298 F. Supp. 2d at 396; *Ashworth*, 395 F. Supp. 2d at 410. And for good reason: As the City elsewhere points out, any "egregiousness" gloss will create "vagaries" and lead to uncertainty.  Remand Br. 7–8.  *See Burns*, 298 F. Supp. 2d at 403 (agreeing that egregiousness element would "overly complicate" the analysis).[2]

In any event, the City's joinder of Dr. Chaney here is as "egregious" as it gets.  It could hardly be clearer that the City's only interest is denying Distributor Defendants their right to a federal forum.  To start, the City purports to seek damages for all the social ills caused by the misuse of opioids in West Virginia.  Yet despite its recognition that nobody can "obtain opioids without a prescription written by a licensed medical provider," the City has named only *one* doctor in the state, who is not alleged to have any links to Distributor Defendants.  Compl. ¶ 47. Likewise, despite the fact that suspicious orders can exist only if pharmacies place them, the City has not named a single pharmacy.  The City insists it wants this lawsuit to hold accountable all those responsible for the opioid epidemic.  Yet it ignores every pharmacy, pharmacist, and physician, save *one*.  The reason is obvious: The City is content to name just *one* non-diverse

---

[2]   The City cites *Wyatt* (Remand Br. 8), but that decision found joinder to be *proper*, and so any limited discussion of egregiousness was necessarily mere *dicta*.  651 F. Supp. 2d at 498.

defendant because *one* is all it needs "to unfairly defeat the diverse defendants' right to have the action against them heard in this court." *Ashworth*, 395 F. Supp. 2d at 412.

If there could be any remaining doubt, three other West Virginia political subdivisions have sued Distributor Defendants and followed the same pattern: naming one non-diverse doctor to try to defeat diversity.[3]  As courts have previously observed, this practice is common in the health care realm.  *See Vagenos v. Alza Corp.*, No. 1:09-1523, 2010 WL 2944683, at *3 (S.D. W. Va. 2010) (noting "widespread practice of fraudulently joining pharmacies in products liability actions against drug manufacturers in an attempt to defeat diversity jurisdiction").  The City and its sister subdivisions are following the same playbook.  In short, while egregiousness is not required to find fraudulent misjoinder, this case more than fits the bill.

Notably, five other counties recently filed suit *in federal court* against distributors only, and do not attempt to shoehorn a single physician into the litigation.[4]  Even putting aside issues of judicial efficiency, federal court is the proper venue for all counties suing the distributors.

*          *          *

---

[3]  *See* Compl., *McDowell Cty. v. McKesson Corp., et al.*, No. 1:17-cv-956 (S.D. W. Va. Jan. 25, 2017), ECF No. 1-1 (attached as "Exh. A"); Compl., *Mayor Charles Sparks, on behalf of the Town of Kermit v. McKesson Corp., et al.*, No. 17-c-13 (Mingo Cty. Cir. Ct. Jan. 31, 2017) (attached as "Exh. B"); Compl., *Mayor Reba Honaker, on behalf of the City of Welch v. McKesson Corp., et al.*, No. 17-c-18 (McDowell Cty. Cir. Ct. Feb. 13, 2017) (attached as "Exh. C").

[4]  *See* Compl., *Cabell Cty. Comm'n v. AmerisourceBergen Drug Corp., et al.*, No. 3:17-cv-01665 (S.D. W. Va. Mar. 9, 2017), ECF No. 1 (attached as "Exh. D"); Compl., *Kanawha Cty. Comm'n v. Rite Aid of Md., Inc., et al.*, No. 2:17-cv-01666 (S.D. W. Va. Mar. 9, 2017), ECF No. 1 (attached as "Exh. E"); Compl., *Fayette Cty. Comm'n v. Cardinal Health, Inc., et al.*, No. 2:17-cv-01957 (S.D. W. Va. Mar. 21, 2017), ECF No. 1 (attached as "Exh. F"); Compl., *Wayne Cty. Comm'n v. Rite Aid of Maryland, Inc., et al.*, No. 3:17-cv-01962 (S.D. W. Va. Mar. 21, 2017), ECF No. 1 (attached as "Exh. G"); Compl., *Boone Cty. Comm'n v. AmerisourceBergen Drug Corporation, et al.*, No. 2:17-cv-02028 (S.D. W. Va. Mar. 27, 2017), ECF No. 1 (attached as "Exh. H").  Plaintiffs' counsel in those lawsuits has indicated that he intends to file more suits, on behalf of other counties, in federal court.

The claims against Dr. Chaney do not arise out of the same transaction or occurrence as the claims against Distributor Defendants, and the claims involve no common questions of law or fact.  "Even assuming plaintiff has a claim" against Dr. Chaney, "that claim is legally and factually too remote to sustain joinder under either federal or West Virginia law." *Ashworth*, 395 F. Supp. 2d at 412.  Accordingly, this Court should find that Dr. Chaney "is not properly joined in this action," sever the claims against him, and remand those to state court. *Id.*  Having done so, complete diversity obtains as between the remaining parties. *See Johnson*, 781 F.3d at 704.

## II.   Complete Diversity Also Exists Because the City Cannot Succeed on Its Claims Against Dr. Chaney in This Action.

Dr. Chaney's citizenship should be disregarded for yet another reason.  A defendant is fraudulently joined if "there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant." *Johnson*, 781 F.3d at 704; *see also Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 218 (4th Cir. 2015) (finding fraudulent joinder because plaintiff "cannot succeed in any of his claims against the non-diverse defendants").  In this case, the City did not comply with the statutory pre-suit procedural requirements under West Virginia law for claims based on the provision of health care services.  Because the claims against Dr. Chaney are subject to those requirements and therefore fail as a matter of law, Dr. Chaney's joinder is fraudulent and cannot defeat jurisdiction.  On materially identical facts, courts around the country have found fraudulent joinder and upheld removal to federal court.  This Court should do the same here.[5]

---

[5]   The City claims that the Notice of Removal did not base the removal on the fraudulent joinder doctrine and, therefore, that Distributor Defendants waived that ground.  (Remand Br. 3–4).  Not so: The Notice expressly asserted that diversity jurisdiction exists because Dr. Chaney "was fraudulently joined solely to defeat diversity," including under the so-called "traditional" fraudulent joinder standard, as "there is no possibility that the plaintiff would be able to establish a cause of action against Dr. Chaney."  ECF No. 1, ¶¶ 10, 20 (citing

16

### A.   The Fraudulent Joinder Doctrine Applies When Claims Are Foreclosed by the Plaintiff's Failure to Satisfy Statutory Pre-Suit Requirements.

West Virginia, like certain other states, has enacted a comprehensive statute to reform claims for medical malpractice liability. West Virginia's Medical Professional Liability Act ("MPLA") imposes—among other things—a series of procedural prerequisites to the filing of an action against a health care provider (including, of course, a doctor) based on provision of health care services. *See* W. Va. Code § 55-7B-6 ("Prerequisites for filing an action against a health care provider"); *Blankenship v. Ethicon, Inc.*, 656 S.E.2d 451, 456–58 (W. Va. 2007). At least thirty days prior to filing the claim, the plaintiff must serve notice on the defendant, along with a "screening certificate of merit" executed under oath by a qualified expert. *See* W. Va. Code § 55-7B-6(b). In certain cases, the defendant may demand pre-litigation mediation. *See id.* § 55-7B-6(f). If these pre-suit requirements are not satisfied, the case must be dismissed. *See Robinson v. Mon*, 2014 WL 4161965 (S.D.W.Va.); *Stanley v. United States*, 321 F. Supp. 2d 805, 807–09 (N.D. W. Va. 2004).

Federal courts routinely uphold removal by diverse defendants when the plaintiff fails to comply with such pre-suit requirements. The *en banc* Fifth Circuit found fraudulent joinder when the plaintiff had not completed the pre-suit screening process required by Louisiana's analogous statute. *Flagg v. Stryker Corp.*, 819 F.3d 132, 137–38 (5th Cir. 2016) (*en banc*).

---

*Johnson*, 781 F.3d at 704, which applies the "no possibility" test). That specific reference to the fraudulent joinder doctrine more than met the requirement of a "short and plain statement" of the grounds for removal. *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 199 (4th Cir. 2008). In all events, the City will have a full opportunity to respond to this argument in reply. *See McFadden v. Fed. Nat. Mortg. Ass'n*, 525 F. App'x 223, 227 (4th Cir. 2013) (finding no waiver where "the argument regarding fraudulent joinder was raised … in the pleading … opposing remand to the state court"); *Mendrop v. Shelter Mut. Ins. Co.*, 2006 WL 2246429, at *4 (N.D. Miss. Aug. 4, 2006) ("[B]ecause the defendant's submissions in opposition to the remand motion thoroughly explicate their fraudulent joinder argument, the Court declines to remand on the basis of the asserted defects in the notice of removal.").

Because a state court "would have been required" under that law "to dismiss the Medical Defendants," their citizenship was "discounted" in evaluating diversity. *Id.* at 138; *see also In re Accutane Prods. Liab.*, No. 8:04-MD-2523, 2012 WL 3194951, at *2 (M.D. Fla. July 31, 2012) ("[T]he federal district courts in Louisiana consistently deny remand when a plaintiff fails to present malpractice claims against a non-diverse defendant to a medical review panel because the courts find that such non-diverse defendants are improperly joined.").

Federal district courts in New York, Florida, and Washington have all reached the same conclusion under those states' similar medical malpractice statutes. *See In re Zyprexa Prods. Liab. Litig.*, No. 04-MD-01596, 2009 WL 1044508, at *8 (E.D.N.Y. Apr. 15, 2009) (finding joinder of non-diverse hospital to be "fraudulent" because "plaintiff did not comply with Miss. Code Ann. § 11–1–58" and "[t]his procedural defect means plaintiff maintains no cause of action for which there is a basis for recovery"); *Torrence v. Pfizer, Inc.*, No. 607-CV-199, 2007 WL 788368, at *4 (M.D. Fla. Mar. 14, 2007) (finding "no possibility" of relief against non-diverse health care defendants, and therefore upholding removal, because complaint "does not allege that Plaintiff has satisfied the presuit requirements of [Florida's] Chapter 766"); *Abear v. Teveliet*, No. C06-5550, 2006 WL 3813560, at *3 (W.D. Wash. Dec. 21, 2006) (upholding removal based on fraudulent joinder because "no certificate has been filed" as required by statute).

**B.    The City Did Not Comply with the MPLA.**

The City's claims against Dr. Chaney fall within the scope of the MPLA, but the City did not comply with its pre-suit requirements (and does not argue otherwise).  Consequently, whatever legal rights the City may have against Dr. Chaney, they cannot be vindicated in this action, and Dr. Chaney's citizenship must be disregarded under the fraudulent joinder doctrine. *See Weidman*, 776 F.3d at 218.

18

The MPLA provides that "no person may file a medical professional liability action against any health care provider without complying with the provisions of this section."  W. Va. Code § 55-7B-6(a).  And "medical professional liability" is defined broadly to include claims "based on health care services rendered," claims "contemporaneous" with or "related to" any such "tort or breach of contract," and claims that arise "in the context of rendering health care services."  *Id.* § 55-7B-2(i); *Blankenship*, 656 S.E.2d at 458.  Notably, the MPLA applies "regardless of how the claims have been pled"; it is the "circumstances giving rise to the cause of action" that matter, "not the type of claim asserted."  *Id.* at 453–54, 458.  It applies equally to negligence actions and intentional torts, *see id.* at 457 (citing *Gray v. Mena*, 625 S.E.2d 326, 330–31 (W. Va. 2005)), and it reforms both "common law and statutory rights," W. Va. Code § 55-7B-1.  In addition, the statute applies, not only to claims by patients, but also to "liability for damages resulting from the death or injury of a person for any tort . . . based on health care services rendered"—language that encompasses the City's allegation that its damages result from the injury caused to its residents by opioid and heroin addiction.  *E.g.*, *Osborne v. United States*, 567 S.E.2d 677, 685 (W. Va. 2002) (victims of car accident caused by drug-impaired driver sued the doctor who improperly prescribed narcotics); *see also* W. Va. Code § 55-7B-9b (contemplating these claims).

The City's claims against Dr. Chaney fall within the MPLA's broad sweep.  They allege that he "provided written opioid prescriptions for patients despite knowing that the opioids were likely to be abused, diverted, or misused."  Compl. ¶ 47.  Writing prescriptions is, of course, an act done within "the context of rendering health care services."  W. Va. Code § 55-7B-2(i); *see* W. Va. Code R. § 15-2-7.4.1 (requiring controlled substances prescriptions to be issued by a practitioner "for a legitimate medical purpose in the usual course of … professional practice").

19

Indeed, that is why the BoM allegedly investigated Dr. Chaney.  *See* Compl. ¶¶ 89–103.  To be sure, Dr. Chaney's practices were allegedly improper, but they were clearly not "unrelated to providing medical care." *Blankenship*, 656 S.E.2d at 458.  The MPLA thus applies. *See Minnich v. MedExpress Urgent Care, Inc.*, ___ S.E.2d ___, 2017 WL 563353, at *5 (W. Va. Feb. 9, 2017) (claim subject to MPLA where patient fell while attempting to climb onto examination table, because this occurred "in the course of his evaluation" for "treatment").

The City did not comply with either MPLA prerequisite—i.e., serving an advance notice or obtaining a screening certificate of merit—before filing suit, as of the date of removal, or even now.  Accordingly, the claims against Dr. Chaney cannot succeed in their present state. *See id.*; *Stanley*, 321 F. Supp. 2d at 807–09.

For this independent reason, too, Dr. Chaney was fraudulently joined.  This Court should dismiss the City's claims against him and retain jurisdiction over the claims against diverse Distributor Defendants. *See Flagg*, 819 F.3d at 137–38; *Accutane*, 2012 WL 3194951, at *2; *Zyprexa*, 2009 WL 1044508, at *8; *Torrence*, 2007 WL 788368, at *4; *Abear*, 2006 WL 3813560, at *3.

## CONCLUSION

The City has tried to fuse together two unrelated lawsuits.  One alleges that out-of-state distributors shipped "suspicious" drug orders placed by pharmacies, and failed to report them to the state regulatory board.  The other is a procedurally deficient medical malpractice action alleging that a physician wrote prescriptions not supported by a legitimate medical need on a patient-by-patient basis.  The former belongs in federal court; the latter does not.  The lack of any real connection between the claims compels the conclusion that the City's purpose in joining Dr. Chaney is "to unfairly defeat the diverse defendants' right to have the action against them

20

heard in this court." *Ashworth*, 395 F. Supp. 2d at 412.  Accordingly, this Court should deny the motion to remand, remand or dismiss the claims against Dr. Chaney, and retain jurisdiction over the remaining, completely diverse Distributor Defendants.

Dated this the 29th day of March, 2017.

Respectfully submitted,

**CARDINAL HEALTH, INC.**

**By Counsel,**

/s/ Susan M. Robinson

| | |
|---|---|
| Susan M. Robinson (WVSB #5169) | And |
| srobinson@tcspllc.com | |
| Robert H. Akers (WVSB #9622) | James R. Wooley (*pro hac vice* application |
| rakers@tcspllc.com | filed) |
| THOMAS COMBS & SPANN, PLLC | jrwooley@jonesday.com |
| 300 Summers Street, Suite 1380 | JONES DAY |
| Charleston, WV 25301 | 901 Lakeside Avenue |
| Telephone: (304) 414-1800 | Cleveland, OH 44114 |
| Facsimile: (304) 414-1801 | Telephone: (216) 586-3939 |
| | Facsimile: (216) 572-1212 |
| Enu Mainigi (*pro hac vice* application filed) | |
| emainigi@wc.com | Elizabeth P. Kessler (*pro hac vice* application |
| F. Lane Heard (*pro hac vice* application | filed) |
| filed) | ekessler@jonesday.com |
| lheard@wc.com | JONES DAY |
| Steven M. Pyser (*pro hac vice* application | 325 John H. McConnell Boulevard |
| filed) | Columbus, OH 43215 |
| spyser@wc.com | Telephone: (614) 281-3852 |
| WILLIAMS & CONNOLLY LLP | Facsimile: (614) 461-4198 |
| 725 Twelfth Street, N.W. | |
| Washington, DC  20005 | |
| Telephone: (202) 434-5000 | *Counsel for Cardinal Health, Inc.* |
| Facsimile: (202) 434-5029 | |

22

**AMERISOURCEBERGEN DRUG CORPORATION**
**By Counsel,**

/s/ Adam J. Schwendeman
A. L. Emch (WVSB #1125)
aemch@jacksonkelly.com
Adam J. Schwendeman (WVSB #11989)
aschwendeman@jacksonkelly.com
JACKSON KELLY PLLC
500 Lee Street, East, Suite 1600
P.O. Box 553
Charleston, WV 25322
Telephone: (304) 340-1000
Facsimile: (304) 340-1130

And

Meredith  S. Auten (*pro hac vice* application filed)
meredith.auten@morganlewis.com
Eric W. Sitarchuk (*pro hac vice* application to be filed)
eric.sitarchuk@morganlewis.com
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
(215) 963-5000

*Counsel for AmerisourceBergen Drug Corporation*

**McKESSON CORPORATION**
**By Counsel,**

/s/ Jeffrey M. Wakefield
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
FLAHERTY  SENSABAUGH & BONASSO PLLC
P.O. Box 3843
Charleston, WV 25338
Telephone: (304) 345-0200
Facsimile:  (304) 345-0260

And

Geoffrey Hobart (*pro hac vice* application to be filed)
ghobart@cov.com
Matthew Benov (*pro hac vice* application to be filed)
mbenov@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
Telephone: (202) 662-6000

*Counsel for McKesson Corporation*

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 29th day of March, 2017, I served  the OPPOSITION OF

AMERISOURCEBERGEN DRUG CORPORATION, CARDINAL HEALTH INC., AND

MCKESSON CORPORATION TO PLAINTIFF'S MOTION TO REMAND by electronically

filing with the Clerk of the United States District Court for the Southern District of West

Virginia, using the Court's CM/ECF system, which will send notification of such filing to all

counsel of record.

> Charles R. "Rusty" Webb (WVSB #4782)
> The Webb Law Centre, PLLC
> 716 Lee Street, East
> Charleston, WV  25301
> > *Counsel for Plaintiff*
>
> A. L. Emch (WVSB #1125)
> Adam J. Schwendeman (WVSB #11989)
> JACKSON KELLY PLLC
> 500 Lee Street East, Suite 1600
> Charleston, West Virginia 25301
> > *Counsel for AmerisourceBergen Drug Corporation*
>
> Jeffrey M. Wakefield (WVSB #3894)
> FLAHERTY SENSABAUGH & BONASSO PLLC
> P.O. Box 3843
> Charleston, WV  25338
> > *Counsel for McKesson Corporation*
>
> Gregory D. Chaney, M.D.
> 1426 Spring Brook Road
> Kenova, WV  25530
> > *Defendant*

> /s/Susan M. Robinson
> Susan M. Robinson (WVSB #5169)
> Robert H. Akers (WVSB #9622)
> THOMAS COMBS & SPANN, PLLC
> 300 Summers Street, Suite 1380
> Charleston, WV  25301