IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

THE CITY OF HUNTINGTON and
CABELL COUNTY COMMISSION,
  Plaintiffs,

v.              CIVIL ACTION NO. 3:17-01362
                 CIVIL ACTION NO. 3:17-01665

AMERISOURCEBERGEN DRUG
CORP., CARDINAL HEALTH, INC.
and McKESSON CORP.,       (On remand from OHND MDL-2804)
  Defendants.

## PLAINTIFFS' POSITION STATEMENT

COME NOW the Plaintiffs, CITY OF HUNTINGTON and CABELL COUNTY COMMISSION and submits this position statement in accordance with the Court's directive (Doc. 121) (Filed 01/16/20).

### Preliminary Statement

Nearly three years ago this case launched the largest and most important mass litigation in the history of the country. The formation of the MDL2804, while serving the greater good, has stalled our case and propelled others to the front. It is only fitting that the City of Huntington and Cabell County (WV) are now remanded for a final reckoning.

Time is of the essence. Defendants AmerisourceBergen Drug Corporation, Cardinal Health, Inc. and McKesson Corporation ("The Big 3") are in the midst of national settlement negotiations with the state Attorney Generals led by the Attorney Generals for Texas, Pennsylvania, North Carolina and Tennessee. Unfortunately, West Virginia has been ignored. The current national settlement model allocates West Virginia just $24 million of the $18 billion proposal…payable over 18 years. The West Virginia political subdivisions outright reject the national settlement model and refuse to voluntarily dismiss our claims. There is no justice in bargaining against the people's interest. *United*

1

*States v. Walker*, No. 2:17-CR-00010, 2017 WL 2766452, at *11 (S.D.W. Va. June 26, 2017) (Goodwin, J.). We demand transparency and accountability through a civil trial.

Achieving this remand was no small feat. Plaintiffs were required to sever their claims against all defendants except the Big 3 (Case: 1:17-md-045053 -DAP) (Doc #: 237) (Granted 2/16/19), narrow our claims and limit our remedy (Case: 1:17-md-045053 -DAP) (Doc #:240) (Granted: 2/23/19). Only thereafter did Judge Polster file a suggestion of remand which was approved by the United States Judicial Panel for Multidistrict Litigation on January 14, 2020. Having traveled so far and so long on this journey, we now seek a final remedy which only this Court can provide. An immediate trial date suddenly makes West Virginia relevant.

We ask for an immediate nonjury (bench) trial, staggered over time, which allows the Plaintiffs to build a record with facts learned over the past three years while permitting discovery to continue on those unripe issues which remain. No other process will make a difference. Our journey ends here.

The groundwork has been laid in Track One to allow the parties to move quickly, efficiently with laser focus to trial in this Track 2 matter. To date, the MDL parties have exchanged more than 162 million pages of documents, served over 300 third-party subpoenas, conducted roughly 550 depositions, served over 2600 requests for production, interrogatories, and written 30(b)(6) requests, and exchanged over 11,000 pages of written discovery. Defendants, including the Big 3, filed multiple rounds of dismissal briefing, 30 motions for Summary Judgment, 14 Daubert Motions and 104 Motions in limine. The Big 3 engaged in extensive trial preparation in advance of the October 2019 trial date, empaneled a jury and settled with the Track 1 Plaintiffs on the first day of trial. Notably, over 400 depositions were taken in a three-month period and expert depositions were taken within 3 weeks of production. This history establishes both the substantial work that has already been done and the Parties' ability to efficiently and expeditiously complete the remaining work.

To assist the Court, we provide the following summary of facts and procedural history:

1. **Plaintiffs**. Plaintiffs are West Virginia political subdivisions with standing to eliminate hazards to public health and safety and to abate or cause to be abated a public nuisance. W. Va. Code § 7-1-3kk; W. Va. Code § 8-12-5(23). Plaintiffs are not an agent of the State of West Virginia. W. Va. Code § 29-12A-3(c) [1986]; W. Va. Code § 14-2-3 [1967]; *Kucera v. City of Wheeling*, 153 W. Va. 531, 170 S.E.2d 217 (1969). Plaintiffs are not bound by prior settlements with the State of West Virginia. *See* Order Denying Cardinal Health's Motion to Dismiss, *Brooke County Commission et al. v. Cardinal Health Inc.*, et al., Circuit Court of Marshall County, WV, Civil Action No. 17-C-248 (Hummel, J.) (December 28, 2018) (writ denied).

2. **Complaint.** The operative complaint is the Joint Third Amended Complaint (Case: 1:17-op-45053-DAP) (Doc #: 194) (Filed: 09/16/19).

3. **Defendants.** Plaintiffs severed all but AmerisourceBergen Drug Corporation ("ABC"), Cardinal Health, Inc. ("CAH") and McKesson Corp. ("MCK"). The defendants are sometimes collectively referred to as "the Big 3".

4. **Theories of Liability.** Plaintiffs voluntarily dismissed all but the following causes of action:

 **A.** Public Nuisance[1];

 **B.** Civil Conspiracy[2];

---

[1] The Supreme Court of Appeals of West Virginia has explained that our definition of a public nuisance is consistent with the RESTATEMENT (SECOND) OF TORTS § 821B(1), which defines a public nuisance as an unreasonable interference with a right common to the general public. *Barker v. Naik*, No. 2:17-CV-04387, 2018 WL 3824376 (S.D.W. Va. Aug. 10, 2018) (Johnston, J.). See also *Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 97 (4th Cir. 2011); *Rhodes v. E.I. du Pont de Nemours & Co.*, 657 F. Supp. 2d 751, 768 (S.D.W. Va. 2009) (Goodwin, J.)

[2] A civil conspiracy is not a per se, stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s). *Dunn v. Rockwell*, 225 W. Va. 43, 689 S.E.2d 255, Syl. Pt. 9 (2009).

3

      **C.**    Joint Liability[3]; and

      **D.**    Punitive Damages[4].

5.    **Causation.**    Plaintiffs argue the standard for causation on a public nuisance claim is "caused or substantially contributed" to the public nuisance. RESTATEMENT (SECOND) OF TORTS § 834 ("One is subject to liability for a nuisance caused by an activity, not only when he carries on the activity but also when he participates to a substantial extent in carrying it on."); RESTATEMENT (SECOND) OF TORTS § 433B, comment a (causation is established where the plaintiff produces "evidence that the conduct of the defendant has been a substantial factor in bringing about the harm he has suffered").

6.    **Remedy.**  With respect to these Defendants, Plaintiffs have waived all past and future economic losses sustained by the political subdivisions and seek abatement which is "equitable in nature and provides a prospective remedy that compensates a plaintiff for the costs of rectifying the nuisance." MDL2804 Opinion and Order, p. 5 (Case: 1:17-md-02804-DAP) (Doc #: 2572) (Filed: 09/04/19). Plaintiffs allege the Big 3 are jointly liable for any abatement damages awarded. W.Va. Code § 55-7-24(b)(2).

7.    **Law of the Case.**  Plaintiffs submit that are several landmark rulings from the MDL which will shape future proceedings:

      **A.**    <u>**Public Nuisance**</u>**:** Opinion and Order Denying Manufacturer Defendants' Motion For Summary Judgment On Plaintiffs' Public Nuisance Claims (Case: 1:17-md-02804-DAP) (Doc #: 2578) (Filed: 09/09/19);

      **B.**    <u>**Public Nuisance**</u>**:** Opinion and Order, p. 5 (Case: 1:17-md-02804-DAP) (Doc #: 2572) (Filed: 09/04/19);

---

[3] Joint liability may be imposed on "[a]ny party who acted in concert with another person as part of a common plan or design resulting in harm." W.Va. Code § 55-7-24(b)(2).

[4] An award of punitive damages may only occur in a civil action against a defendant if a plaintiff establishes by clear and convincing evidence that the damages suffered were the result of the conduct that was carried out by the defendant with actual malice toward the plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others. W. Va. Code § 55-7-29.

      **C.**     **CSA Rulings:** Opinion and Order Regarding Plaintiffs' Summary Judgment Motions Addressing the Controlled Substances Act (Case: 1:17-md-02804-DAP) (Doc #: 2483) (Filed: 08/19/19);

      **D.**     **Causation:** Opinion and Order Regarding Defendants' Summary Judgment Motions on Causation (Case: 1:17-md-02804-DAP) (Doc #: 2561) (Filed: 09/03/19); and

      **E.**     **Daubert Rulings:** Opinion and Order Regarding Defendants' Motions to Exclude Opinions of James Rafalski and Craig McCann (Case: 1:17-md-02804-DAP) (Doc #: 2494) (Filed: 08/20/19); Order (Case: 1:17-md-02804-DAP) (Doc #: 2518) (Filed: 08/26/19).

    8.     **Evidentiary Rulings.** See MDL2804 Evidentiary Order (Case: 1:17-md-02804-DAP) (Doc #: 3052) (Filed: 12/26/19) (75 pages).

    9.     **Trial.** Plaintiffs seek a nonjury (bench) trial by stipulation pursuant to Fed. R. Civ. Proc. 39(a)(1). Plaintiffs recommend bifurcating liability/causation from abatement damages. During the first phase, Plaintiffs recommend staggering the introduction of evidence by reserving the first full week of every month, beginning in March 2020, for trial proceedings. Doing so will enable the creation of a record while permitting discovery to proceed for unripe factual and expert matters. By way of example, we propose:

> **WEEK 1 (March 2020): Data week.** The foundation of this case rests upon millions of lines of transactional data spanning from 1996 to the present. The source of the transaction data is two-fold: (1) the DEA's ARCOS database and (2) the Big 3's privately stored transactional data. The Big 3 refused to stipulate to authentication and foundation of the transactional data leading up to the first bellwether trial. We anticipate the first full week of trial will be necessary to lay the foundation for the transactional data and introduce into the evidentiary record. No further discovery is required. No opinion testimony is required.[5]
>
> **WEEK 2 (April 2020): DEA week.** Video deposition testimony is available from witnesses and designees presented by the U.S. Drug Enforcement Agency. In

---

[5] See Opinion and Order Regarding Defendants' Motions to Exclude Opinions of James Rafalski and Craig McCann (Case: 1:17-md-02804-DAP) (Doc #: 2494) (Filed: 08/20/19) ("McCann also expresses opinions that: (1) the ARCOS data produced by the DEA is complete and reliable; and (2) except for the data produced by ABDC, the transactional data produced by Defendants is reliable. Defendants do not challenge these portions of his Report.").

particular, we anticipate presenting the testimony Joseph Rannizzisi (2 day discovery deposition) and Thomas Prevoznik (3 day discovery deposition). We expect both parties to designate only portions of each deposition. Other DEA witnesses include: Kyle Wright; Stacy Harper-Avilla; Demetra Ashley; Michael Mapes; and June Howard.

**WEEK 3 (May 2020): ABDC week.** We anticipate presenting evidence and calling witnesses to establish AmerisourceBergen Drug Corporation's suspicious order monitoring system ("SOMS"), the suspicious order reports ("SORS") submitted to the DEA and the "due diligence" files for each of its customers in Huntington/Cabell County.

**WEEK 4 (June 2020): Cardinal Health week.** We anticipate presenting evidence and calling witnesses to establish Cardinal Health's suspicious order monitoring system ("SOMS"), the suspicious order reports ("SORS") submitted to the DEA and the "due diligence" files for each of its customers in Huntington/Cabell County.

**WEEK 5 (July 2020): McKesson week.** We anticipate presenting evidence and calling witnesses to establish McKesson's suspicious order monitoring system ("SOMS"), the suspicious order reports ("SORS") submitted to the DEA and the "due diligence" files for each of its customers in Huntington/Cabell County.

**WEEK 6 (August 2020): Conspiracy week.** We anticipate presenting evidence and calling witnesses to establish the Big 3 distributors "acted in concert with each other as part of a common plan or design resulting in harm" including actions taken by and through the trade group Healthcare Distribution Alliance ("HDA").

**WEEK 7 (September 2020): Liability and General Causation Expert week.** We anticipate calling expert witnesses very similar to those designated in the first bellwether.

**WEEK 8:    Local impact week.** We anticipate presenting evidence and calling witnesses to establish the four aspects of the opioid epidemic in Huntington/Cabell County: addiction, abuse, morbidity and mortality.

Plaintiffs submit that discovery is essentially complete through Week 6: Conspiracy week. Staggering a bench trial will allow for a proper timeframe to complete discovery for weeks 7 and 8. If, or when, the Plaintiffs prevail on liability and causation then a separate scheduling order can be entered for the abatement phase of trial and/or punitive damages.

    **10.**     **Pending and future motions.**

        **A.**     Defendants filed and then withdrew motions to dismiss. See Docket (Case: 1:17-md-02804-DAP) (Doc #: 2946) (Filed: 11/20/19), (Case: 1:17-md-02804-DAP) (Doc #: 2942) (Filed: 11/20/19), and (Case: 1:17-md-02804-DAP) (Doc #: 2951) (Filed: 11/22/19) and 233. The MDL Court, in

   recognition of this, ruled "[t]o the extent there are legal issues that need to be addressed, this Court or the transferor Court will address them via summary judgment motions." (Case: 1:17-md-02804-DAP) (Doc #: 2950) (Filed: 11/22/19) Similar motions by these Defendants were rejected by the Circuit Court of Boone County and the Supreme Court of Appeals (which denied a writ to review this decision), <u>see</u> (Case: 1:17-md-045053 -DAP) (Doc #:163-2) (Filed: 7/09/2018), prior to the filing of this action, and more recently by the Circuit Court of Marshall County and the Supreme Court of Appeals (which again denied the review via writ), *see* Notice of Supplemental Authority filed by Track II Plaintiffs (Case: 1:17-md-02804-DAP) (Doc #: 2893) (Filed: 11/01/19). The West Virginia state court actions against these defendants are pending before the Mass Litigation Panel which has refused to reconsider these rulings. *Id.*

  **B.** Plaintiffs anticipate that Defendants will seek to file a summary judgment motion on the question of public nuisance. West Virginia follows the same Restatement (Second) approach to public nuisance that was at issue in the MDL rulings noted above. *Compare Duff v. Morgantown Energy Assocs. (M.E.A.)*, 421 S.E.2d 253, 257 n.6 (W.Va. 1992) and *Rhodes v. E.I. du Pont de Nemours & Co.*, 657 F. Supp. 2d 751, 768 (S.D. W.Va. 2009) *with* Opinion and Order Denying Manufacturer Defendants' Motion for Summary Judgment on Plaintiffs' Public Nuisance Claims (Case: 1:17-md-02804-DAP) (Doc #: 2578) (Filed: 09/09/19). Given the previous rulings in the MDL and the fact that this case is proposed to proceed as a bench trial, resolution of the sufficiency of the evidence to support a public nuisance claim can be deferred to trial on the merits.

  **C.** Likewise, Plaintiffs anticipate that Defendants will seek to file a summary judgment motion on the question of causation. Like public nuisance, the Ohio causation standard is the same as West Virginia's. As such, the resolution of the sufficiency of the evidence to support a causation on our public nuisance claim can also be deferred to trial on the merits.

  **D.** Plaintiffs anticipate that Defendants will file *Daubert* motions similar to those filed in the MDL. To the extent Plaintiffs intend to use expert witnesses who were the subject of prior motions, Judge Polster's decisions must be upheld and testimony admitted.

**11.** **Discovery.** The Parties have responded to and continue to supplement written discovery and requests for production of documents. The parties are actively negotiating and near finalizing ESI search terms and actively negotiating the identity of custodians. As referenced above, extensive discovery has taken place in regards to ABDC, McKesson and Cardinal – including relevant evidence to activities in West Virginia specific to this case. Focused discovery is underway specific to

activities and Defendants actions directed to Cabell County/City of Huntington including customer due diligence files, the identity of persons with sales responsibilities and local responsibilities for operating distribution centers that serviced Cabell/Huntington customers and transactional data. Plaintiffs are responding to specific discovery requests from the defendants even though there is an extensive public record that exists in regards to the opioid crisis that has devastated the City of Huntington and Cabell County.[6] As to the specifics:

    **A.**  **City of Huntington**. The parties Document collection for the City of Huntington is substantially complete. The relevant departments in the City of Huntington are essentially comprised of the Huntington Fire Department, The Huntington Police Department, The Finance office and the Mayor's office. Plaintiff has collected substantially all relevant documents from these departments including both via electronic and hard copy documents. To date, The City has produced 19,240 pages in 3,791 documents. As Plaintiff continues to review documents collected, Plaintiff intends to expeditiously produce documents weekly, on a rolling basis.

    **B**.  **Cabell County**. Document collection for the Cabell County Commission is substantially complete. The relevant organizational custodians under the auspices of the Cabell County Commission are: the Cabell County Commission, including Commissioners and staff; the Cabell County Clerk; the Cabell County Circuit Clerk; the Cabell County Sheriff's Office Law Enforcement Division; Cabell County Sheriff's Office, Tax Division; the Cabell County Assessor and the Office of the Cabell County Prosecuting Attorney. In addition to these county offices, the Cabell County Commission is also the administrative superior for Cabell County EMS and Cabell County 911. For all of the aforementioned county entities, the plaintiff has collected substantially all relevant documents and other data including electronically stored information, material published via the various county and subunit websites and hard copy documents. To date, The County has produced 478,458 pages of relevant data in 58,405 documents in five production sets. As Plaintiff continues to review collected documents, Plaintiff intends an expeditious rolling production of documents on a weekly basis.

    **C.**  **AmerisourceBergen Drug Corporation.** The production of customer due diligence files and transactional data have already begun. Plaintiff's anticipate 2-3 depositions for each topic area noted above (sales, due diligence,

---

[6] See Joint Third Amended Complaint (Case: 1:17-op-45053-DAP) (Doc #: 194) (Filed: 09/16/19) detailing facts specific to Huntington and Cabell County including the fact that Plaintiffs are "well-known for being situated at ground zero of the opioid epidemic sweeping the nation." Para 10.

transactional data and distribution centers). Custodial files should be produced prior to depositions on a rolling basis.

    D. **Cardinal Health.** Cardinal has begun producing transactional data, jurisdiction-specific suspicious order report data, and customer due diligence files. Plaintiffs have requested deposition dates from Cardinal for multiple individuals and have requested that Cardinal identify custodians with knowledge related to anti-diversion, distribution, sales, due diligence, and Cardinal's relationship with chain pharmacies (specifically CVS). Personnel and custodial files should be produced prior to depositions. Plaintiffs are today filing a motion to compel deposition dates, identification of custodians responsive to the topics listed above, and complete responses to certain discovery requests.

    E. **McKesson.** The majority of the transactional data, blocked order reports, and threshold history reports is complete. Depositions requested for David Gustin (former Director of Regulatory Affairs), Kevin Meunier (former Distribution Center Manager), Tim Ashworth (retail sales manager), and Elaine Thomet (customer service executive for retail national customers). Plaintiff's anticipate one additional deposition of employee with sales responsibilities and one additional deposition of a regulatory employee. Personal files should be produced prior to depositions. Production of due diligence files has not begun.

In closing, the Plaintiffs, The City of Huntington and Cabell County Commission, have streamlined their case to allow for a trial to proceed against a limited number of defendants, present a limited number of theories of liability and focus on a remedy to abate the public nuisance that has plagued their communities. We remain optimistic that that parties can work together with the Court's guidance and proceed as expeditiously as possible to a just resolution in this matter.

/s/ Paul T. Farrell, Jr.
Paul T. Farrell, Jr. (W.Va. Bar ID 7443)
GREENE, KETCHUM, FARRELL, BAILEY &TWEEL
419 - 11th Street (25701)/ P.O. Box 2389
Huntington, West Virginia 25724-2389
800.479.0053 or 304.525.9115
304.529.3284: fax
paul@greeneketchum.com
*Representing Cabell County Commission*

Anthony J. Majestro, Esq. (WVSB #5165)
Powell & Majestro, PLLC
405 Capitol Street, Suite P-1200
Charleston, WV 25301
Telephone: (304) 346-2889
Facsimile: (304) 346-2895
amajestro@powellmajestro.com
*Representing Cabell County Commission*


/s/ *Anne McGinness Kearse*
Anne McGinness Kearse (WVSB No. 12547)
Joseph F. Rice
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: 843-216-9000
Fax: 843-216-9450
akearse@motleyrice.com
jrice@motleyrice.com
*Representing The City of Huntington*

Charles R. "Rusty" Webb (WVSB No. 4782)
**The Webb Law Centre, PLLC**
716 Lee Street, East
Charleston, West Virginia 25301
Telephone: (304) 344-9322
Facsimile: (304) 344-1157
rusty@rustywebb.com
*Representing The City of Huntington*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 23, 2020, a copy of the foregoing **PLAINTIFF'S POSITION STATEMENT** has been filed electronically using the Court's CM/ECF system and will be served *via* the Court's CM/ECF filing system, which will send notification of such filing to the attorneys of records at their e-mail addresses on file with the Court.

/s/Anthony J. Majestro
Anthony J. Majestro, Esq.