# COVINGTON

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

**Laura Flahive Wu**

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T  +1 202 662 5982
lflahivewu@cov.com

**Via Electronic Mail**                                        December 6, 2019

Paul T. Farrell, Jr.
Greene, Ketchum, Farrell, Bailey & Tweel
419 11th Street (25701) / P.O. Box 2389
Huntington, West Virginia 25724-2389
paul@greeneketchum.com

Michael A. Woelful
Woelfel and Woelful, LLP
801 Eighth Street
Huntington, West Virginia 25701
mikewoelfel3@gmail.com

> **Re:  Plaintiff Cabell County Commission's Responses to the
> Distributor Defendants' First Sets of Interrogatories and
> RFPs in the Track 2 Cases**

Dear Counsel:

We write on behalf of defendants AmerisourceBergen, Cardinal, and McKesson to request a conference to discuss Plaintiff Cabell County Commission's ("Plaintiff" or "Cabell County") recent responses to the Distributor Defendants' First Set of Interrogatories and First Requests for Production of Documents in the Track 2 cases.  We are continuing to review Plaintiff's responses and may have additional issues to raise in the future, but we want to begin discussions as soon as possible on certain issues that are immediately apparent.  Please let us know a day and time the week of December 9 when you would be available.

Listed below are the subjects on which we believe discussion is needed.

## I.      Plaintiff Cabell County Commission's Interrogatory Responses

Responses Under Oath.  As you know, interrogatory answers must be provided "under oath."  Fed. R. Civ. P. 33(b)(2).  No verifications or other means of attestation under oath have been supplied.

Incorporation of Huntington's Answers.  Certain of Plaintiff's answers purport to "join[] and incorporate[] the CITY OF HUNTINGTON's answer."  It is unclear whether Plaintiff also intends to "join[] and incorporate[]" any or all of Huntington's corresponding objections. We should discuss the scope of Plaintiff's incorporation of Huntington's answers and, to the

**COVINGTON**

extent Plaintiff does intend to assert and/or rely on any of Huntington's objections, the nature and scope of any withheld information.

Interrogatory No. 1.  This interrogatory asked for identification of every person likely to have discoverable information, including those that Plaintiff intends to rely on for summary judgment or at trial.[1]  As an initial matter, though Plaintiff's response directs the reader to "Appendix A" for "a more comprehensive list of potential witnesses," Plaintiff does not appear to have included any appendices with its discovery responses.  Plaintiff should produce the referenced appendix without delay.  Additionally, Plaintiff's response "reserves the right to rely on other individuals for testimony in any trial in this action."  Defendants are entitled to a clear, complete, and coherent listing of persons who are potential witnesses in this litigation.  Accordingly, Defendants request that Plaintiff either: (1) immediately supplement its response to include every person likely to have discoverable information, without reservation; or (2) verify that, based on Plaintiff's current knowledge, there are no additional persons to identify.

Interrogatory No. 2.  This interrogatory asked for identification of past or present departments and employees with knowledge regarding the wrongful abuse, use, misuse, prescribing, dispensing, sale, distribution, addiction to, and/or diversion of Prescription Opioids and/or other opioids.  Plaintiff's answer includes legal argument concerning the "administrative and/or fiscal authority" of the Cabell County Commission, along with what appear to be screenshots of organizational charts and a listing of "Information Technology Specialists" for various entities.  Plaintiff's answer is not responsive to the question asked, and does not explain how Defendants will be able to identify which people or which entities have the knowledge on which this interrogatory focuses.  Defendants are entitled to a complete listing of entities and persons with the requested knowledge.  Accordingly, Defendants request that Plaintiff either: (1) immediately supplement its response to include every "department[], agenc[y], subdivision[], or other constituent entit[y], official[], employee[], and representative[]" that possess relevant information; or (2) verify that, based on Plaintiff's current knowledge, the only persons with relevant information are the six "Information Technology Specialists" identified in Plaintiff's response.

Interrogatory No. 3.  This interrogatory asked for the identification of individuals who hold, or have held, certain positions.  It is difficult to imagine any interrogatory that should be easier for Plaintiff to answer, yet the response here is also plainly incomplete.  Among other things, the response does not include the relevant time period for every person listed.  Furthermore, the response completely fails to identify persons for key positions, including without limitation budget and/or finance personnel, health department personnel, law enforcement narcotics personnel, medical examiner(s), coroner(s), correctional facility personnel, fire chief, family and/or children's services personnel, and human resources personnel.  Defendants are entitled to a *complete* answer to this interrogatory.  To the extent no persons held the roles identified in the interrogatory, Plaintiff's should affirmatively state as much.

Interrogatory No. 5.  Plaintiff provided no substantive answer to this interrogatory, which simply asked Plaintiff to identify the date and manner in which it first became aware that Prescription Opioids were being abused or diverted within its geographic

---

[1] For purposes of convenience, this letter summarizes or paraphrases many of the discovery requests that are discussed; such summarization or paraphrasing is not intended to supersede or otherwise limit any of the original requests.

**COVINGTON**

boundaries.  Instead, Plaintiff's response consists of improper legal argument concerning the statute of limitations for Plaintiff's claims (a subject not at issue in this interrogatory), along with identification of certain dates upon which Plaintiff was "likely" on notice of certain facts. Interrogatory No. 5 requests fundamental information that Defendants are clearly entitled to have now for purposes of fact discovery.

   Interrogatory No. 6.  This interrogatory requests information regarding the maximum number of opioid pills or dosage units that Plaintiff believes should properly have been distributed within its geographic boundaries during the relevant timeframe.  Plaintiff provided no substantive response to this interrogatory, which seeks fundamental information underlying Plaintiff's allegation that the Distributor Defendants shipped an excess number of opioid pills in Cabell County.  Plaintiff's conclusory assertion that 52 million pills is "facially in excess of any reasonable assessment of the medical need of the community" is plainly insufficient, and Plaintiff provides absolutely no basis for its allegation that Defendants possess medical records sufficient to determine whether specific prescriptions were legitimate.  Plaintiff should be able to answer this basic interrogatory, which cuts to the core of the allegations underlying Plaintiff's complaint.  Defendants are entitled to a concrete answer setting forth Plaintiff's understanding as to the proper volume of prescription opioid shipments and/or an appropriate method for calculating same.

   Interrogatory No. 7.  Similar to Interrogatory No. 6, this interrogatory requests information regarding the number of Prescription Opioids that were diverted within Cabell County during the relevant timeframe.  As an initial matter, Plaintiff's response includes an incomplete reference to "Exhibit 3 of xxxx."  Defendants are unable to determine what document and/or information Plaintiff intended to cite, and request that Plaintiff immediately supplement its response to properly identify the referenced exhibit.  Further, Plaintiff's response to this interrogatory is plainly insufficient.  Rather than provide a substantive response, Plaintiff answers that the number of diverted pills is "immeasurable" but later indicates it has identified some number of "suspicious orders" that Defendants should have blocked and/or investigated. Plaintiff should, at a minimum, immediately disclose the "suspicious orders" it has identified. Additionally, Defendants are entitled to a full accounting of the opioid pills that Plaintiff believes were diverted within Cabell County during the relevant timeframe.

   Interrogatory No. 8.  This interrogatory seeks information regarding the pharmacies, doctors, healthcare providers, and drug retailers that Plaintiff alleges diverted or wrongfully dispensed Prescription Opioids, thereby causing injury.  Plaintiff's answer identifies only two pharmacies and two individuals, a remarkably small number given the scope of Plaintiff's allegations concerning the impact of the opioid crisis in Cabell County.  We would like to know the extent of the due diligence that has been undertaken to provide a reasonably complete answer to this interrogatory and whether Plaintiff is prepared to commit that no other pharmacies, doctors, healthcare providers, and/or drug retailers diverted or wrongfully dispensed Prescription Opioids in Cabell County.

   Interrogatory No. 9.  This interrogatory seeks information regarding each investigation, arrest, or prosecution within Cabell County involving opioids.  Plaintiff did not provide a substantive response to this interrogatory, and it is insufficient to respond that Plaintiff has requested information from other sources or may be able to provide information at some unspecified point in the future.  Defendants are entitled to a clear, complete, and coherent response to this interrogatory, which seeks basic information necessary to test Plaintiff's claims during fact discovery.

**COVINGTON**

Interrogatory No. 10. This interrogatory seeks information regarding Plaintiff's efforts to address "hazards to public health and safety" allegedly caused by Distributor Defendants, along with an accounting of taxpayer dollars Plaintiff spend to fund those efforts. Plaintiff's response is non-responsive and includes only conclusory assertions that it has "dedicated tremendous resources" and is "not seeking reimbursement of past/future economic losses incurred on its behalf." Defendants are entitled to a clear, complete, and coherent response to this interrogatory, which seeks basic information necessary to test Plaintiff's claims during fact discovery.

Interrogatory No. 11. This interrogatory seeks information regarding Plaintiff's efforts to recover expenditures related to Prescription Opioid addiction, misuse, abuse, or overdoses. No substantive answer is provided to this interrogatory, beyond a meaningless global reference to the 1,603 paragraph third amended complaint. Defendants are entitled to a substantive answer to this interrogatory.

## II.    Plaintiff Cabell County Commission's Responses to RFPs

Incorporation of Huntington's Answers. As with the interrogatories, Plaintiff purports to "join[] and incorporate[] the CITY OF HUNTINGTON's responses" to Defendant's RFPs. It is unclear whether Plaintiff also intends to "join[] and incorporate[]" any or all of Huntington's corresponding objections. We should discuss the scope of Plaintiff's incorporation of Huntington's responses and, to the extent Plaintiff does intend to assert and/or rely on any of Huntington's objections, the nature and scope of any withheld information.

Failure to Actually Respond. As you are aware, Fed. R. Civ. P. 34(b)(2)(B) provides that for each item or category of documents requested, "the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." For most of Plaintiff's responses, as described more fully below, Plaintiff fails to indicate whether it will agree or refuse to produce documents. Such responses are plainly inadequate under the federal rules and must be supplemented immediately.

RFP No. 1. This request seeks all document that relate to the volumes of Prescription Opioids and/or other opioids prescribed, dispensed, sold, distributed, diverted, and/or used within Cabell County. In response to this request, Plaintiff identifies certain cherry-picked documents that it attached to an e-mail dated December 3, 2019. Plaintiff does not indicate whether any other responsive documents exist, whether it will agree to produce any other responsive documents, or whether it intends to reproduce the documents it attached to its e-mail in formal discovery. We would like to discuss the completeness of Plaintiff's response to RFP No. 1.

RFP No. 2. This request seeks all documents that relate to any alleged "suspicious orders" placed by or shipped to any person within Cabell County. Plaintiff's response merely identifies certain vague categories of evidence that Plaintiff intends to rely on at trial without (1) indicating whether those categories represent a complete accounting of responsive documents or (2) indicating whether it will actually produce documents falling within those categories in discovery. At a minimum, Plaintiff should answer both of the foregoing questions. To the extent Plaintiff believes that the listed categories represent the full scope of responsive documents within its possession, custody, and/or control, Defendants would like to discuss the adequacy of Plaintiff's investigation in support of its response.

**COVINGTON**

RFP No. 3.  Plaintiff's response to this request, indicating that Plaintiff "is not aware of any such documents nor of any standard which set forth the volume of Prescription Opioids which 'should properly have been distributed for legitimate medical purposes,'" is plainly inadequate.  Among other things, Plaintiff's response is non-responsive to the documents sought by the request and does not indicate whether Plaintiff will agree to produce any responsive documents or whether it is withholding responsive documents based on its apparent disagreement with the premise of the request.  We would like to discuss the adequacy of Plaintiff's investigation in support of its response and whether Plaintiff will agree to produce responsive documents, to the extent they exist.

RFP No. 4.  This request seeks all documents that relate to the abuse, use, misuse, prescribing, dispensing, sale, distribution, addiction to, and/or diversion of opioids.  Similar to Plaintiff's inadequate response to RFP No. 2, Plaintiff's response to this request merely identifies vague categories of documents that are in the process of being collected and will be produced at some unspecified point in the future.  Plaintiff fails to indicate whether those categories are exhaustive of all responsive documents, or whether certain categories of responsive documents are being withheld.  Plaintiff should, at a minimum, indicate whether it agrees to produce all responsive documents in response to this request.

RFP Nos. 5, 6, 7, 8, 16.  Plaintiff's responses to each of these requests are substantively identical, indicating that Plaintiff "was not in possession of any such documents prior to this litigation" while providing absolutely no indication as to whether Plaintiff will agree to produce any potentially responsive documents now or at any point in the future.

As an initial matter, Plaintiff provides no justification for its apparent decision to limit the scope of responsive documents to those obtained "prior to this litigation," and there is none.  Plaintiff does not dispute that the requested documents, to the extent they exist, are relevant and discoverable, and it must produce all such documents in its possession, custody, and/or control regardless of when such documents were first obtained.

Second, though Plaintiff's responses are silent as to whether Plaintiff will produce responsive documents, Defendants have reason to believe that responsive documents exist.  For instance, in response to RFP Nos. 7 and 8, Plaintiff states that it "was not in possession of any such documents prior to this litigation," and then references its responses to Interrogatory Nos. 8 and 9.  But Plaintiff's response to Interrogatory No. 8 positively identifies four pharmacies/individuals alleged to have diverted or wrongfully dispensed prescription opioids, and Plaintiff's response to Interrogatory No. 9 indicates that Plaintiff has "begun harvesting records" and has "requested information regarding federal prosecutions from the United States Department of Justice."  Plaintiff should, at a minimum, confirm that it will produce any responsive documents currently within its possession, custody, and/or control as well as all responsive documents that it obtains during the course of this litigation.

RFP Nos. 9, 12, 13, 14, 18, 19, 20, 21, 22.  Plaintiff's responses to each of these requests are substantively identical, indicating that there are no responsive documents (or, alternatively, "[n]one other than the pending litigation").  Plaintiff appears to agree that the requested documents are relevant and should be produced, and has not asserted any objections to the requests as stated.  Defendants believe it is remarkably unlikely that Plaintiff is not in possession of any documents responsive to these requests, and would like to discuss the adequacy of Plaintiff's investigation in support of its responses and whether it is prepared to certify that it does not actually possess and will not introduce as evidence in this litigation or at trial any documents responsive to these requests.

**COVINGTON**

<u>RFP Nos. 10, 23</u>.  Plaintiff's responses to each of these requests simply direct Defendants to local government websites.  Plaintiff provides no indication of the precise documents hosted on those websites that are responsive to Defendant's requests, and does not indicate whether Plaintiff intends to actually produce responsive documents from those websites in discovery.  Additionally, with regards to RFP No. 10, Plaintiff's identification of annual budgets fails to account for the fact that Defendants have additionally requested all documents *supporting* those annual budgets.

<u>RFP No. 11</u>.  Plaintiff's response to this request, which includes a vague and conclusory explanation of the types of damages Plaintiff seeks in this litigation and no commitment to produce any documents, is non-responsive to the request and plainly deficient. If Plaintiff believes that the documents sought by RFP No. 11 are not relevant to any of the claims or defenses in this litigation, please provide a complete explanation of the basis of that objection.

<u>RFP No. 15</u>.  Defendants disagree that the documents sought by this request are not relevant to any party's claim or defense in this matter.  Documents referring or relating to Plaintiff's opioid-related expenditures are quite possibly the *most* relevant documents in this entire litigation given the nature of Plaintiff's claims and damages sought.  If Plaintiff seriously believes that it need not produce the documents sought by this request, Defendants would like to discuss further.

<u>RFP No. 17</u>.  Plaintiff indicates that it is in the process of collecting such documents "to sustain its burden of proof."  To the extent this represents a narrowing of what has been requested, Defendants would like to discuss further.

<u>RFP No. 24</u>.  Plaintiff's response to this request, which seeks all documents identified or relied upon in Plaintiff's interrogatory responses, does not actually indicate whether Plaintiff will agree to produce such documents.

Sincerely,

/s/ Laura Flahive Wu

Laura Flahive Wu