# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, et al.,<br><br>    Defendants. | Civil Action No. 3:17-01362<br>Hon. David A. Faber |
| CABELL COUNTY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, et al.,<br><br>    Defendants. | Civil Action No. 3:17-01665<br>Hon David A. Faber |

**MEMORANDUM IN SUPPORT OF DISTRIBUTOR DEFENDANTS'
MOTION TO COMPEL FURTHER DISCOVERY RESPONSES**

**INTRODUCTION**

On October 25, 2019, Distributor Defendants[1] served their first sets of interrogatories (Exhibit A) and requests for production (Exhibit B) on the track two plaintiffs—City of Huntington and Cabell County Commission ("Cabell County") (collectively, "Plaintiffs"). Those requests seek basic information to which Distributor Defendants are clearly entitled, including certain information that plaintiffs are normally obligated to disclose *automatically* pursuant to Rule 26(a) at the outset of any civil action. The information sought is central to plaintiffs' claims and essential to Distributor Defendants' ability to defend themselves in this action.

*Cabell County*. Cabell County responded to Distributor Defendants' requests on December 3, 2019 (Exhibits C, D), but its responses were plainly deficient. Among other issues, Cabell County refused to answer when it first became aware that prescription opioids were being abused within its geographic boundaries (ROG 5),[2] refused to provide information regarding opioid-related expenditures (ROG 10), and generally failed to indicate whether it would or would not produce any responsive documents. Distributor Defendants sent Cabell County a deficiency letter highlighting these and other issues on December 6 (Exhibit E), and Cabell County responded on December 10 (Exhibit F), generally electing to "stand by" its deficient responses. Cabell County submitted "amended" responses following a meet and confer on December 13 (Exhibits G, H), but those "amended" responses are likewise deficient.

*City of Huntington*. City of Huntington similarly responded to Distributor Defendants' requests on December 3, 2019 (Exhibits I, J), and while its responses were generally more

---

[1]  AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation

[2]  For purposes of convenience, this memorandum summarizes or paraphrases many of the discovery requests that are discussed; such summarization or paraphrasing is not intended to supersede or otherwise limit any of the original requests.

2

complete than those of Cabell County, there remain critical deficiencies necessary for the distributor defense. Distributor Defendants sent City of Huntington a deficiency letter on December 6 (Exhibit K), and City of Huntington responded on December 12 (Exhibit L). City of Huntington's follow-up on December 17 (Exhibit M) following our December 13 meet and confer, did not address the areas of disagreement in this letter.

## ARGUMENT

For the reasons set forth below, Distributor Defendants request an order compelling both City of Huntington and Cabell County to provide full, complete, and responsive answers to the listed discovery requests.

### I.     CABELL COUNTY'S DISCOVERY RESPONSES ARE DEFICIENT.

Cabell County's present discovery responses are deficient and must be supplemented for the following reasons.

#### A.     Cabell County's Responses to Distributor Defendants' Interrogatories Are Deficient.

**Interrogatory No. 5**: This interrogatory asks Cabell County to identify the date and manner in which it first became aware that prescription opioids were being abused or diverted within its geographic boundaries. Rather than provide a substantive response to this basic request, Cabell County has (1) raised wholly irrelevant and improper legal arguments concerning statute of limitations and (2) provided vague information concerning when it was "likely" on constructive notice of the opioid epidemic by combing through public news records. *See* Ex. G at 9–10. Those responses are insufficient. Distributor Defendants are entitled to a certified response setting forth Cabell County's understanding as to when it was *actually* on notice of prescription opioid abuse and diversion, not a *post-hoc* listing of news articles compiled by counsel. Despite Distributor

Defendants' efforts, Cabell County has refused to meaningfully meet and confer on this issue, instead asserting that "[t]his issue is ripe for [the MDL Special Master]." *See* Ex. F at 2.

**Interrogatory Nos. 6 and 7**: These interrogatories seek related information: (1) the maximum number of opioid pills or dosage units that Cabell County believes should properly have been distributed (ROG 6); and (2) the number of prescription opioids that Cabell County believes were diverted (ROG 7). Cabell County failed to provide a substantive response to either interrogatory, instead asserting (without support) that: (1) the number of prescription opioids distributed in Cabell County was "facially in excess of any reasonable assessment of the medical need of the community" (ROG 6); and (2) the number of prescription opioids that were diverted within Cabell County is "immeasurable." *See* Ex. G at 11–12. Those responses are insufficient.

Interrogatories 6 and 7 seek information that is foundational to Cabell County's core allegations: that Distributor Defendants distributed an excess number of prescription opioids, and failed to prevent diversion of same. Distributor Defendants are thus entitled to concrete answers setting forth Cabell County's understanding as to the proper volume of prescription opioids and a full accounting of the prescription opioid pills that Cabell County believes were diverted within its geographic boundaries. At a minimum, Cabell County should be compelled to immediately disclose the "suspicious orders" it claims to have identified in response to Interrogatory No. 7. *See* Ex. G at 12. Despite Distributor Defendants' efforts, Cabell County has refused to meaningfully meet and confer on these issues, instead asserting that they are "ripe for [the MDL Special Master]." *See* Ex. F at 2.

**Interrogatory No. 8**: This interrogatory seeks information regarding the pharmacies, doctors, healthcare providers, and drug retailers that Cabell County alleges diverted or wrongfully dispensed prescription opioids, thereby causing injury. As an initial matter, Cabell County has

waived any objection to the information sought by this interrogatory by providing a response identifying two pharmacies and two individuals. *See* Ex. G at 13–14. Cabell County's cherry-picked listing of pharmacies and individuals is improper. If Cabell County cannot identify any other pharmacies, doctors, healthcare providers, or drug retailers that diverted or wrongfully dispensed prescription opioids, it should so certify. On the other hand, if Cabell County intends to introduce evidence concerning other entities in this litigation, it must supplement its response to identify those entities. Despite Distributor Defendants' efforts, Cabell County has refused to meaningfully meet and confer on this issue, instead asserting that "[t]his issue is ripe for [the MDL Special Master]." *See* Ex. F at 2.

**Interrogatory No. 9**: This interrogatory seeks information regarding each investigation, arrest, or prosecution within Cabell County involving opioids. Plaintiff did not provide a substantive response to this interrogatory, and it is insufficient to respond that Plaintiff has requested information from other sources or may be able to provide information at some unspecified point in the future. Defendants are entitled to a clear, complete, and coherent response to this interrogatory, which seeks basic information necessary to test Plaintiff's claims during fact discovery. Despite Distributor Defendants' efforts, Cabell County has refused to meaningfully meet and confer on this issue, instead asserting that "[t]his issue is ripe for [the MDL Special Master]." *See* Ex. F at 3.

**Interrogatory No. 10**: This interrogatory seeks information concerning Cabell County's efforts to address "hazards to public safety" allegedly caused by the Distributor Defendants and "the amount of taxpayer dollars … expended to fund th[ose] efforts." Although Cabell County admits that it has "dedicated tremendous resources to fighting the opioid epidemic," Ex. G at 15, it refuses to provide any information whatsoever concerning those resources. The apparent basis

for Cabell County's refusal is its decision to sever certain defendants and dismiss certain counts from its complaint. Neither basis justifies Cabell County's deficient response.

First, the identity of defendants in the case has absolutely nothing to do with whether Distributor Defendants are entitled to the information sought by this interrogatory, and Cabell County does not explain otherwise. Second, even in a nuisance-only trial, information concerning Cabell County's opioid-related expenditures, if any, remains both relevant and important. Among other things, such information is relevant to assessing Cabell County's knowledge of and response to the opioid crisis, the extent of harm caused by the opioid crisis, and whether the opioid crisis constituted a "public nuisance" in Cabell County. Information concerning past damages will also be relevant in comparing and assessing Cabell County's abatement plan and request for forward-looking money damages. Thus, it is simply irrelevant that, at this point, Cabell County "is not seeking reimbursement of past/future economic losses," *see* Ex. G at 15, the information sought by Interrogatory No. 10 is relevant and discoverable, and Cabell County must provide a full response. Distributor Defendants are entitled to receive a complete substantive response to this interrogatory now, during the fact discovery period, so that they have an opportunity to seek follow-up fact discovery based on Cabell County's response.

Despite Distributor Defendants' efforts, Cabell County has refused to meaningfully meet and confer on this issue, instead asserting that "[t]his issue is ripe for [the MDL Special Master]." *See* Ex. F at 3.

**Interrogatory No. 11**: This interrogatory seeks information regarding Cabell County's efforts to recover expenditures related to prescription opioid addiction, misuse, abuse, or overdoses. Cabell County has refused to provide a substantive response to this interrogatory beyond a meaningless global reference to the 1,603 paragraph third amended complaint. Nor has

6

Cabell County provided any explanation for its refusal to provide a substantive response to this interrogatory, which seeks basic information to which Distributor Defendants are clearly entitled. Despite Distributor Defendants' efforts, Cabell County has refused to meaningfully meet and confer on this issue, instead asserting that "[t]his issue is ripe for [the MDL Special Master]." *See* Ex. F at 3.

### B. Cabell County's Responses to Distributor Defendants' Requests for Production Are Deficient.

**Cabell County's Failure to Actually Respond**: The federal rules provide that for each item or category of documents requested, "the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." *See* Fed. R. Civ. P. 34(b)(2)(B). The vast majority of Cabell County's responses fail to actually indicate whether Cabell County will produce documents or not, or whether Cabell County is withholding responsive documents on the basis of some objection or narrowing of the request. Cabell County's responses therefore do not comply with the federal rules, and must be amended to clearly indicate Cabell County's intended action in response to each request. Although Distributor Defendants raised this issue in their December 6 letter, *see* Ex. E at 4, Cabell County has thus far refused to respond or meaningfully meet and confer on this issue.

**RFP No. 1**: This request seeks all documents that relate to the volumes of opioids prescribed, dispensed, sold, distributed, diverted, and/or used within Cabell County. Although Cabell County's responses identify certain cherry-picked documents that have been produced in response to this request, Cabell County has failed to indicate whether any other responsive documents exist or whether it is withholding documents on the basis of some objection or unexpressed narrowing of the request. Cabell County should be required to clearly indicate

whether it is willing to search for and produce all documents in its possession, custody, or control that are responsive to RFP No. 1.

**RFP No. 2**: This request seeks all documents that relate to any alleged "suspicious orders" placed by or shipped to any person within Cabell County. Cabell County's response merely identifies certain vague categories of evidence that it intends to rely on at trial without (1) indicating whether those categories represent a complete accounting of responsive documents or (2) indicating whether it will actually produce documents falling within those categories in discovery. *See* Ex. H at 3. Until Distributor Defendants receive a response to both of the foregoing questions, they are unable to test the sufficiency of Cabell County's response in any meaningful way. Despite Distributor Defendants' efforts, Cabell County has refused to meaningfully meet and confer on this issue, instead asserting that "[t]his issue is ripe for [the MDL Special Master]." *See* Ex. F at 3.

**RFP No. 3**: This request seeks all documents concerning the volume of opioids that Cabell County believes, suspects, or contends could or should properly have been distributed for legitimate medical purposes. Cabell County's response, that it "is not aware of any such documents nor of any standard which sets forth the [appropriate] volume of Prescription Opioids," *see* Ex. H at 3, is non-responsive to the request and plainly deficient under Fed. R. Civ. P. 34(b)(2)(B). Cabell County must be required to immediately supplement its response to indicate whether it will search for and produce responsive documents notwithstanding its current "awareness" of whether such documents exist. Despite Distributor Defendants' efforts, Cabell County has refused to meaningfully meet and confer on this issue, instead asserting that "[t]his issue is ripe for SM Cohen." *See* Ex. F at 3.

**RFP No. 4**:  This request seeks all documents that relate to the abuse, use, misuse, prescribing, dispensing, sale, distribution, addiction to, and/or diversion of prescription and other opioids.  Although Cabell County has identified certain vague categories of documents that it will produce "on a rolling basis" in response to this request, *see* Ex. H at 4, it fails to indicate whether those categories are exhaustive of all responsive documents, or whether certain categories of responsive documents are being withheld.  Cabell County must be required to clearly indicate one way or another before Distributor Defendants are able to meaningfully test the sufficiency of Cabell County's response.  Despite Distributor Defendants' efforts, Cabell County has refused to meaningfully meet and confer on this issue, instead asserting that "[t]his issue is ripe for SM Cohen."  *See* Ex. F at 3.

**RFP Nos. 5, 6, 7, 8, and 16**[3]:  Cabell County's responses to each of these requests are substantively identical, indicating that Plaintiff "was not in possession of any such documents prior to this litigation" while providing absolutely no indication as to whether Plaintiff will agree to search for or produce any potentially responsive documents now or at any point in the future.  *See* Ex. H at 5–6, 9.  In response to Distributor Defendants' December 6 letter, Cabell County indicated that is "harvesting this information" and "needs no reminder" of its obligation to supplement its

---

[3]  These requests seek documents that are clearly relevant: (5) documents that relate to diversion of Prescription Opioids or dispensing of Prescription Opioids for other than legitimate medical purposes, including documents identifying Persons involved in such diversion or dispensing; (6) documents relating to any violation of state or federal law or regulation, or any other wrongful conduct, by, among others, any pharmacy, healthcare provider, manufacturer, or distributor; (7) documents relating to any law enforcement or administrative investigations, prosecutions, or enforcement actions relating to opioids within or affecting Your geographical area; (8) documents relating to individuals or entities whose conduct relating to Prescription Opioids You believe, suspect, or contend caused You harm; and (16) documents that state, discuss, reflect or suggest recommendations for programs, initiatives, or actions taken by You, any agency of West Virginia or the federal government to, among other things, prevent, treat, or otherwise ameliorate wrongful importation or distribution, abuse, misuse of, or addiction to, opioids.  *See* Ex. B at 5, 7.

answers, but *still* refuses to indicate whether it will search for or produce documents responsive to these requests. *See* Ex. F at 3. Cabell County must do so in accordance with the federal rules before Distributor Defendants can meaningfully test the sufficiency of its responses. Despite Distributor Defendants' efforts, Cabell County has refused to meaningfully meet and confer on this issue, instead asserting that "[t]his issue is ripe for SM Cohen." *See id*.

**RFP Nos. 9, 12, 13, 14, 18, 19, 20, 21, 22[4]**: Cabell County's responses to each of these requests are substantively identical, indicating that there are no responsive documents (or, alternatively, "[n]one other than the pending litigation"). *See* Ex. H at 6, 8–11. In response to Distributor Defendants' December 6 letter, Cabell County clarified that it is "unaware of the existence of any of the types of documents referenced in these discovery requests," but otherwise refused to indicate whether it will specifically search for or produce responsive documents. *See* Ex. F at 3. That response is plainly insufficient. Distributor Defendants are entitled to a clear

---

[4] These requests seek the following categories of relevant documents: (9) documents related to the West Virginia Controlled Substance Automated Prescription Program, and any use made of that program or actions taken based on it; (12) documents relating to transactions with manufacturers, distributors, or dispensers of Prescription Opioids Regarding Prescription Opioids; (13) documents relating to the prescription nor dispensing of Prescription Opioids by any physician, pharmacist, or health care provider employed by You or who practiced at a facility owned, affiliated, operated, or supported by or with You; (14) documents relating to the legitimate need for or use of Prescription Opioids; (18) documents relating to You efforts to recover expenditures relating to Prescription Opioid addiction, misuse, abuse, or overdose in Your geographic boundaries from any Person, including various types of entities listed; (19) documents related to or communications between You and any federal, state, or local official or agency, insurer, third-party payer, or pharmacy benefit manager that refer or relate to Suspicious Orders, diversion, improper prescribing, unlawful sale, or other suspected wrongdoing related to Prescription Opioids, or the possession, abuse, illegal sale, or addiction to other opioids; (20) documents constituting or relating to any communication or transaction between You and Your insurers, workers' compensation providers, or Medicare/Medicate relating to Prescription Opioids; (21) documents constituting or relating to any communication or transaction with any manufacturer, distributor, or dispenser of Prescription Opioids; and (22) documents that refer or relate to You awareness or analysis of, or meetings, presentations, or proposals involving, the abuse, use, misuse, addiction to, or diversion or Prescription Opioids, or possession, abuse, illegal sale, or addiction to other opioids. *See* Ex. B at 5–8.

response for each of the aforementioned discovery requests setting forth whether Cabell County will agree to search for and produce responsive documents; only then can Distributor Defendants test the sufficiency of Cabell County's response. Despite Distributor Defendants' efforts, Cabell County has refused to meaningfully meet and confer on this issue, instead asserting that "[t]his issue is ripe for SM Cohen." *See* Ex. F at 3.

**RFP Nos. 11 and 15:** These requests seek documents relating to Cabell County's opioid-related expenditures, including "any cost, expenditure, damage, loss, or harm" for which Cabell County is seeking equitable or monetary relief in this litigation. Cabell County's answers, both in its initial and "amended" responses, are deficient. Cabell Count objects, in essence, that because it is not seeking "damages for private nuisance," it need not produce any documents responsive to RFP Nos. 11 and 15, but instead can "disclose an abatement plan through expert witness testimony." *See* Ex. F at 4. Cabell County's objections miss the mark.

First, for the reasons described *supra*, information relating to Cabell County's opioid-related expenditures is relevant to this litigation regardless of whether Cabell County seeks past damages as part of its public nuisance claim. Second, RFP No. 11 seeks documents relating to *equitable* relief sought by Cabell County. Because abatement is an equitable remedy, any documents it intends to rely on in forming an abatement plan (whether contained in an expert report or not) are covered by this request and must be produced. Third, RFP No. 11 seeks *documents*, not *expert opinion*. Thus, it is no answer to RFP No. 11 to indicate that Cabell County intends to offer an expert abatement plan at some unspecified point in the future. Cabell County may not decline to produce the factual bases for their damages demands—abatement or otherwise—during the fact discovery period on the ground that they will later provide expert opinions about those damages demands. Among other reasons, Distributor Defendants are entitled

11

to receive complete substantive responses to RFP Nos. 11 and 15 now, during the fact discovery period, so that they have an opportunity to seek follow-up fact discovery based on Cabell County's responses. If Cabell County is permitted to wait until after the close of the fact discovery period to provide the requested information—or whatever subset of it Cabell County's damages experts elect to provide—the Distributor Defendants would lose the ability to further test the ultimate factual bases for Cabell County's damages demands. Finally, Cabell County's assertion that the information is irrelevant "[u]nless you assert a claim that we failed to mitigate the epidemic," *see* Ex. F at 4, only serves to highlight the relevance of the request. Failure to mitigate is not a "claim" that Distributor Defendants need to assert, and Distributor Defendants will be unable to test whether Cabell County failed to mitigate damages unless and until the documents sought by RFP Nos. 11 and 15 are produced.

Despite Distributor Defendants' efforts, Cabell County has refused to meaningfully meet and confer on this issue, instead asserting that "[t]his issue is ripe for [the MDL Special Master]." *See* Ex. F at 4.

**RFP No. 17:** In response to RFP No. 17, Cabell County indicated that it was "in the process of collecting such documents to sustain its burden of proof and will timely supplement its response." *See* Ex. H at 9. Critically, Cabell County's response does not indicate: (1) whether inclusion of the term "to sustain its burden of proof" represents a narrowing of the request; or (2) whether it actually intends to produce documents that are "harvested" in response to RFP No. 17. Cabell County must be required to answer both questions before Distributor Defendants are able to meaningfully test the sufficiency of its response. Despite Distributor Defendants' efforts, Cabell County has refused to meaningfully meet and confer on this issue, instead asserting that "[t]his issue is ripe for [the MDL Special Master]." *See* Ex. F at 4.

**RFP No. 24:** This request seeks all documents that Cabell County identified or relied on in responding to Distributor Defendants' first set of interrogatories. Cabell County's response does not indicate whether it will search for or produce any documents responsive to this request. Despite Distributor Defendants' efforts, Cabell County has refused to meaningfully meet and confer on this issue, instead asserting that "[t]his issue is ripe for [the MDL Special Master]." *See* Ex. F at 4.

## II.  CITY OF HUNTINGTON'S DISCOVERY RESPONSES ARE DEFICIENT.

Responses from City of Huntington share several of the issues identified above, presented in abbreviated form below.

### A.  City of Huntington's Responses to Distributor Defendants' Interrogatories Are Deficient.

**Interrogatory No. 5:** This interrogatory asks City of Huntington to identify the date and manner in which it first became aware that prescription opioids were being abused or diverted within its geographic boundaries. City of Huntington's response confirmed that it "has been made aware" of instances of diversion and abuse "at different times," but does not provide a date for such awareness. *See* Ex. I at 17–18. Instead, it includes various dates for actions the government took *in response* to that awareness. *Id.* As with Cabell County, Distributor Defendants are entitled to a certified answer to their question.

**Interrogatory No. 6:** This interrogatory seeks the maximum number of opioid pills or dosage units that City of Huntington believes should properly have been distributed for legitimate medical purposes. Curiously, City of Huntington first responds that "Plaintiff will not speculate" on what should have been distributed "for legitimate medical purposes," and that "this is not anticipated to be the subject of expert testimony." *See* Ex. I at 18–19. Years into this litigation, it

is stunning that Plaintiff does not think the legitimate medical need for Prescription Opioids should have any bearing on this case.

Distributor Defendants disagree. Contrary to City of Huntington's unsupported claim, in response to our deficiency letter, that '[t]hese records are in the possession of distributors and pharmacies," *see* Ex. L at 3, they are not. City of Huntington should provide an amount, or information to support an amount, of Prescription Opioids that should necessarily have been distributed to their city to support legitimate medical purposes.

**Interrogatory No. 7:** This interrogatory asks for the number of prescription opioids that City of Huntington believes were diverted. City of Huntington substitutes its own question for ours, both in its initial responses and in response to our deficiency letter, by discussing suspicious orders. *See*, Ex. I at 19–20; Ex. L at 3. City of Huntington must respond regarding its knowledge of *diversion*, which is simply different than suspicious ordering.

**Interrogatory No. 8:** This interrogatory seeks information regarding the pharmacies, doctors, healthcare providers, and drug retailers that City of Huntington alleges diverted or wrongfully dispensed prescription opioids, thereby causing injury. In response, City of Huntington listed the National Pharmacy Defendants, one independent pharmacy, and three individual prescribers. If City of Huntington cannot identify any other pharmacies, doctors, healthcare providers, or drug retailers that diverted or wrongfully dispensed prescription opioids, it should so certify. On the other hand, if City of Huntington intends to introduce evidence concerning other entities in this litigation, it must supplement its response to identify those entities.

    **B.**    **City of Huntington's Responses to Distributor Defendants' Requests for Production.**

City of Huntington has indicated that it either agrees to or is willing to discuss nearly all of Distributor Defendants' RFPs. *See*, Ex. L at 4–5. This makes it even more clear that Cabell

County's refusal to cooperate on these issues is unreasonable. That said, to the degree that City of Huntington seeks to limit production based on their distinction between damages and abatement, we disagree based on the reasoning for Cabell County's Responses to RFP Nos. 11 and 15 above.

## CONCLUSION

For the foregoing reasons, Plaintiffs' discovery responses are plainly deficient and must be supplemented so that Distributor Defendants can have a meaningful opportunity to take the fact discovery needed to test Plaintiffs' claims.

Dated: January 31, 2020

Respectfully Submitted,

*McKesson Corporation*
By Counsel:

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*/s/ Geoffrey E. Hobart*
Geoffrey E. Hobart
Mark H. Lynch
Christian J. Pistilli
Laura Flahive Wu
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
cpistilli@cov.com
lflahivewu@cov.com

*AmerisourceBergen Drug Corporation*
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Cardinal Health, Inc.*
By Counsel:

*/s/ Steven R. Ruby*
Brian A. Glasser (WVSB #6597)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
BAILEY GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
*Counsel in Cabell County action*


*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC  20005
Tel:  (202) 434-5000

16

Fax:  (202) 434-5029
emainigi@wc.com
lheard @wc.com
ahardin@wc.com

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 31st day of January, the foregoing **"Memorandum in Support of Distributor Defendants' Motion to Compel Further Discovery Responses"** was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
