IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br> Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br> Defendants.<br>_____<br><br>CABELL COUNTY COMMISSION,<br><br> Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br> Defendants. | Civil Action No. 3:17-01362<br><br><br><br><br><br><br><br><br><br>Civil Action No. 3:17-01665 |

**DEFENDANTS' MEMORANDUM CONCERNING RIGHT TO JURY TRIAL**

Pursuant to the Court's order of January 28, 2019 (Civ. Action No. 3:17-01665, Dkt. No. 257), Defendants AmerisourceBergen Drug Corp., Cardinal Health, Inc. and McKesson Corporation respectfully submit this Memorandum to show that they have a Seventh Amendment right to a jury trial in this case. Because the jury trial right attaches irrespective of whether Plaintiffs assert a claim for punitive damages, Plaintiffs may not strip Defendants of that right by withdrawing their purported claim for punitive damages.

**ARGUMENT**

Plaintiffs have expressly disavowed all of their causes of action other than public nuisance, and unambiguously waived any remedy for that claim other than "abatement damages." Dkt. No.

254 at 3–4. Based on their assertion that the remedy they seek is "equitable in nature," Plaintiffs now request a bench trial on their public nuisance claim. *Id.* at 5. Because Defendants have a Seventh Amendment right to a jury trial, this case cannot be tried by the Court without Defendants' consent.

Plaintiffs' complaint—like each Defendant's answer—includes a jury trial demand.[1] Plaintiffs may not withdraw their jury demand absent Defendants' consent. *Millner v. Norfolk & W. R. Co.*, 643 F.2d 1005, 1011 (4th Cir. 1981) ("Rule 38(d) provides that if a proper demand for jury trial has been made, it cannot be withdrawn without the consent of all the parties …."). To date, Defendants have not consented to a bench trial.[2]

The Seventh Amendment guarantees a defendant's right to a jury trial "[i]n Suits at common law" where the amount in controversy exceeds twenty dollars. U.S. Const. amend. VII. The phrase "Suits at common law" refers to "suits in which *legal* rights [are] to be ascertained and determined," as opposed to suits "where equitable rights alone [are] recognized, and equitable remedies [are] administered." *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990) (quotation marks and citation omitted).

The right to trial by jury under the Seventh Amendment is governed by *federal* law even in diversity actions.[3] Federal courts consider two factors in determining whether a cause of action

---

[1] Dkt Nos. 194, 239, 241, 242.

[2] Defendants have not excluded the possibility of waiving their jury trial right and consenting to a bench trial on a reasonable schedule and after appropriate discovery, and have been in discussions with Plaintiffs' counsel on this and other issues. Defendants expect to be in position to address the issue more concretely at the next conference before the Court on March 5.

[3] *See Simler v. Conner*, 372 U.S. 221, 222 (1963) ("[T]he right to trial by jury in the federal courts is to be determined as a matter of federal law in diversity as well as other actions."); *Burcham v. J.P. Stevens & Co.*, 209 F.2d 35, 40 (4th Cir. 1954) (similar). This includes relevant determinations such as whether the claim is legal or equitable in nature. *See WEGCO, Inc. v. Griffin Servs., Inc.*, 19 F. App'x 68, 73 (4th Cir. 2001) ("In diversity cases, although the substantive rights asserted in (continued…)

is legal or equitable: (1) the practice during the Eighteenth Century "in the courts of England prior to the merger of the courts of law and equity," and (2) the nature of "the remedy sought." 494 U.S. at 564 (quotation marks and citation omitted). Here, both factors weigh in favor of the conclusion that Defendants have a Seventh Amendment right to a jury trial on Plaintiffs' nuisance claim.

### I. THE EXISTENCE OF A PUBLIC NUISANCE WAS A JURY QUESTION UNDER ENGLISH COMMON LAW.

At the time of the founding, claims for public nuisance were tried to juries, not in the courts of equity. Accordingly, the first prong of the Supreme Court of the United States' two-part test weighs in favor of a jury trial right.

In the Eighteenth Century, there were three primary English courts: the Court of the Exchequer (claims in equity); the Court of Common Pleas (claims for damages); and the King's Bench (criminal prosecutions). Unlike the Court of Common Pleas or the King's Bench, the Court of the Exchequer could not engage in fact-finding and could not enlist the assistance of a jury. 3 William Blackstone, *Commentaries on the Laws of England* \*48 (1765–1769) ("[I]f any fact be disputed between the parties, the [court of equity] cannot try it, having no power to summon a jury …").[4]

At that time, only two relief mechanisms were available for public nuisance: a criminal indictment or, in limited circumstances, an action at law. *See id.* at \*219–220. The general rule

---

a claim arise under state law, 'the characterization of that state-created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law.'" (quoting *Simler*, 372 U.S. at 222)). It is therefore irrelevant whether a jury trial right would attach to a claim for abatement of a public nuisance under West Virginia law.

[4] Blackstone's *Commentaries on the Laws of England* is considered by the Supreme Court to be the "preeminent authority on English law for the founding generation." *See Alden v. Maine*, 527 U.S. 706, 715 (1999).

was that "no *action* lies for a public or common nuisance, but an *indictment* only" brought by the "king in his public capacity of supreme governor and *pater-familias* of the kingdom." *Id.* at *220. Such criminal actions were subject to trial by jury. *See* 4 Blackstone at *309.

As an exception to the general rule, the law provided that private persons who suffered "extraordinary damage, beyond the rest of the king's subjects … shall have a private satisfaction by action." 3 Blackstone at *219. While several actions had been available to such private persons at various points in history, by the Eighteenth Century, all had been abolished save one: an "action on the case for damages." *See id.* at *220. As the Supreme Court has repeatedly recognized when analyzing English common law, such "actions on the case"—"like other actions at law"—"were tried before juries." *Feltner v. Columbia Pictures Television*, 523 U.S. 340, 349 (1998).

Early American legal authority confirms that nuisance claims were legal rather than equitable at the time of the founding. In 1815, noted American jurist and New York Chancellor James Kent made two observations regarding English public nuisance law. *See Attorney Gen. v. Utica Ins. Co.*, 1 Johns. Ch. 371, 382 (1815). First, Kent described how public nuisance cases in English courts of equity had "lain dormant" for over a century and a half from the time of Charles I to the year 1795. *Id.* Second, he noted that even prior to the dormancy period, equity jurisdiction was limited to requests by the king to remove nuisances from his own property. *See id.* Some years later, in 1838, the Supreme Court held that equity jurisdiction for public nuisance actions "has been finally sustained," indicating that equity jurisdiction was a ***new*** feature of Anglo-American common law that had displaced the rule in effect at the time of the founding. *See Mayor, etc. of City of Georgetown v. Alexandria Canal Co.*, 37 U.S. 91, 98 (1838) (citing Kent's summary of English public nuisance law).

Even as equity jurisdiction over nuisance actions began to expand in the early Nineteenth Century, equity courts required plaintiffs first to obtain a jury finding that a nuisance existed before they would consider granting injunctive relief as a remedy. *See, e.g.*, *Proprietors of Charles River Bridge v. Proprietors of Warren Bridge*, 36 U.S. 420, 650 (1837) (Baldwin, J., concurring) ("A court of equity never grants an injunction against a public nuisance, without a previous trial by jury, as it would, in effect, be tantamount to the conviction of a public offense."). As Justice Story explained, "the question of nuisance or not must, in cases of doubt, be tried by a jury." 2 Joseph Story, *Commentaries on Equity Jurisprudence, as Administered in England and America* § 923, at 203 (1st ed. 1836) (discussing public nuisance). This understanding tracked with English courts of equity during that period, which similarly concluded that "public nuisance … is a question of fact, which must be tried by a Jury[.]" *Attorney Gen. v. Cleaver*, (1811) 34 Eng. Rep. 297; *see Atty Gen. v. The United Kingdom Electric Telegraph Co.*, (1861) 54 Eng. Rep. 899 (refusing to grant an injunction until "proceedings at law have been taken" where plaintiffs "establish the fact that the act done is a nuisance at law before [the Court] gives its aid by way of injunction").[5]

In sum, the clear practice of Eighteenth Century English courts prior to the merger of law and equity was to try public nuisance claims to a jury. Accordingly, this factor weighs heavily in favor of the conclusion that Defendants have a Seventh Amendment right to a jury trial here.[6]

---

[5] *See also Anon.*, (1752) 26 E.R. 1230 (refusing to grant injunction where plaintiff had not established a nuisance at law, stating: "A bill in this court to restrain nuisances extends to such only as are nuisances at law.").

[6] Although Plaintiffs also vaguely reference a "civil conspiracy" involving Defendants, they disavow any "stand-alone cause of action" for conspiracy. Dkt. No. 254 at 3 n.2. In any event, conspiracy claims too were considered legal in the courts of Eighteenth Century England. *In re Jensen*, 946 F.2d 369, 371 (5th Cir. 1991) ("[C]ivil conspiracy has its roots in criminal conspiracy, which was of course triable before a jury in a court of law."); *see Beacon Theatres*, 359 U.S. at 512–13 (Stewart, J., dissenting) (conspiracy allegations "clearly" stated "a cause of action triable as of right by a jury"); *In re Parkway Sales and Leasing, Inc.*, 411 B.R. 337, 351 (Bankr. E.D. Tex. 2009) (Seventh Amendment jury trial right attaches to claim for civil conspiracy); *In re RDM* (continued…)

## II.  THE REMEDY SOUGHT BY PLAINTIFFS IS PARADIGMATICALLY LEGAL.

Plaintiffs seek "abatement *damages*" as the remedy for their public nuisance claim. Dkt. No. 254 at 4. Under settled law, claims—like the one asserted here—seeking money damages as compensation for a plaintiff's injury are legal in nature. Accordingly, the second prong of the Supreme Court's test confirms that Defendants are entitled to a jury trial.

"Almost invariably," a suit that seeks "to compel the defendant to pay a sum of money to the plaintiff" is a suit "for money damages," which is "the classic form of *legal* relief." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quotation marks and citations omitted). As Plaintiffs themselves acknowledge, they seek to compel Defendants to pay them money "damages." Dkt. No. 254 at 4 (defining "abatement damages" as a "remedy that compensates a plaintiff for the costs of rectifying the nuisance"). Thus, the remedy that Plaintiffs seek—the payment of money from Defendants—is the classic form of legal damages.

The fact that Plaintiffs seek money damages under the guise of "abatement" does not alter this conclusion. To be sure, by the late Nineteenth Century, courts of equity had jurisdiction to abate a nuisance—but "abatement" in that context consisted of injunctive relief, not the payment of money. *See, e.g.*, *Mugler v. Kansas*, 123 U.S. 623, 677–78 (1887) (discussing the abatement of a nuisance by "closing the brewery, and thus putting an end to its use in the future"). Put simply, an action for money damages cannot be converted into one seeking equitable relief merely by characterizing the monetary relief as "abatement." *See, e.g.*, *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 49 n.7 (1989) ("[A]ny distinction that might exist between 'damages' and monetary relief under a different label is purely semantic, with no relevance to the adjudication of petitioners'

---

*Sports Grp., Inc.*, 260 B.R. 915, 919 (Bankr. N.D. Ga. 2001) ("[A] claim based on civil conspiracy is a common law, or legal, claim.").

(continued…)

Seventh Amendment claim."); *Dairy Queen v. Wood*, 369 U.S. 469, 477–78 (1962) ("[T]he constitutional right to trial by jury cannot be made to depend upon the choice of words used in the pleadings.").[7]

The Complaint demonstrates that the monies Plaintiffs seek to recover as abatement are in fact damages. The Complaint alleges that Plaintiffs have suffered injury in the form of out-of-pocket costs for public services related to the opioid crisis, including costs for providing healthcare, costs of training emergency response personnel, treatment costs, law enforcement costs, judicial costs, and lost tax revenue. *See, e.g.*, Compl. ¶ 1506. Plaintiffs say now that they are foregoing recovery of these expenditures as past damages, yet the monies they seek as "abatement" include precisely the same categories of expense.

In short, Plaintiffs admittedly seek "damages" as relief on their nuisance claim. Because money damages are the quintessential form of legal relief, Defendants are entitled to a jury trial on Plaintiffs' public nuisance claim unless they decide to waive that right.

## CONCLUSION

For the reasons stated, Defendants have a Seventh Amendment right to a jury trial in this case.

Dated: February 6, 2020

Respectfully Submitted,

*McKesson Corporation*
By Counsel:

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com

---

[7] Defendants do not dispute that truly equitable relief—*i.e.*, a negative injunction prohibiting future conduct—would be for the Court to decide. But the relief that Plaintiffs seek under the guise of "abatement" is not actually equitable or abatement relief.

Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*/s/ Geoffrey E. Hobart*
Geoffrey E. Hobart
Mark H. Lynch
Christian J. Pistilli
Laura Flahive Wu
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
cpistilli@cov.com
lflahivewu@cov.com

***AmerisourceBergen Drug Corporation***
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

8

*Cardinal Health, Inc.*
By Counsel:

*/s/ Steven R. Ruby*
Brian A. Glasser (WVSB #6597)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
BAILEY GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
*Counsel in Cabell County action*


*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC  20005
Tel:  (202) 434-5000
Fax:  (202) 434-5029
emainigi@wc.com
lheard @wc.com
ahardin@wc.com

9

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 6th day of February, the foregoing **"Defendants' Memorandum Concerning Right to Jury Trial"** was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
