## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**THE CITY OF HUNTINGTON,**
     **Plaintiff,**
**v.**                                                    **CIVIL ACTION NO. 3:17-01362**

**AMERISOURCEBERGEN DRUG**
**CORPORATION, et al.,**
     **Defendants.**

_____

**CABELL COUNTY COMMISSION,**
     **Plaintiff,**
**v.**                                                    **CIVIL ACTION NO. 3:17-01665**

**AMERISOURCEBERGEN DRUG**
**CORPORATION, et al.,**
     **Defendants.**

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF NONJURY TRIAL

Plaintiffs, CABELL COUNTY COMMISSION and CITY OF HUNTINGTON, file this memorandum in support of their request that the Court conduct a nonjury (bench) trial in their representative public nuisance claim against Defendants AmerisourceBergen Drug Corporation ("ABC"), Cardinal Health, Inc. ("CAH"), and McKesson Corp. ("MCK") in accordance with the Court's directive. [Cabell Doc. 145]

### INTRODUCTION

Plaintiffs seek an expedited nonjury (bench) trial to abate the public health crisis precipitated by Defendants' actions. While this action was stayed for over two years, the opioid crisis killed hundreds of people in Cabell County and the City of Huntington. The opioid crisis is a public nuisance that continues to kill people every week if not every day in Cabell County and the City of Huntington.

In order to expedite trial, Plaintiffs have streamlined their case by dismissing defendants, claims, and damages. [Cabell Doc. 237, 240] At the January 27, 2020, status conference, Plaintiffs offered on the record to dismiss their punitive damages claim, the last remaining claim to which a right to a jury trial attaches, in exchange for Defendants' agreement to allow a nonjury trial. Defendants refused and elected a jury trial, with punitive damages, in front of a West Virginia jury. This week Plaintiffs renewed that offer. *See* Farrell Letter (attached as Exhibit A). Defendants have not changed their position.

While Plaintiffs endeavored to resolve this matter without a need for the Court's intervention, Plaintiffs now seek a ruling, for the reasons stated below, that there is no right to a jury trial in a governmental public nuisance case seeking only abatement.[1]

## ARGUMENT

### THE DEFENDANTS DO NOT HAVE A RIGHT TO A JURY TRIAL IN A GOVERNMENTAL PUBLIC NUISANCE ACTION SEEKING ONLY ABATEMENT

"[T]he right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions."[2] While state law is not entirely irrelevant to the inquiry, the ultimate question is still one of federal law: "In diversity cases, of course, the substantive dimension of the claim asserted finds its source in state law, ... but the characterization of that state-created claim as legal or equitable

---

[1] To be clear, Plaintiffs are only willing to dismiss their punitive damage claims to allow this Court to conduct a bench trial.  If the Court determines that the right to a jury trial attaches to the nuisance claim, Plaintiffs will try punitive damages as permitted by West Virginia law.

[2] *Simler v. Conner,* 372 U.S. 221, 222 (1963).

for purposes of whether a right to jury trial is indicated must be made by recourse to federal law."[3]

In the absence of a stipulation, this Court is directed by Rule 39 to conduct a bench trial if it "finds that on some or all of those issues there is no federal right to a jury trial."[4] Of course, the right to a jury trial in federal court is governed by the Seventh Amendment which provides that, "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."[5] In *Tull v. United States*, the Supreme Court construed this language to require a jury trial only in actions that are analogous to "[s]uits at common law" at the time of the adoption of the Seventh Amendment.[6]

The determination is whether a claim "is more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty."[7] This test examines "both the nature of the action and of the remedy sought".[8] The first part of the test requires the court to compare the claim "to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity."[9] The second part of the test requires the examination of "the remedy sought and determine

---

[3] *Id.*

[4] Fed. R. Civ. Pro. 39(a)(2).

[5] U.S. Const. amend. VII.

[6] *Tull v. United States*, 481 U.S. 412, 417 (1987).

[7] *Id.* at 417–18.

[8] *Id.*

[9] *Id.*

whether it is legal or equitable in nature."[10] Modern Supreme Court jurisprudence emphasizes that "[t]he second inquiry is the more important in [the Court's] analysis."[11]

### A.      Nuisance claims historically were brought in courts of equity.

In applying the first part of the *Tull* test, one need not look further than *Tull*:

> *A public nuisance action was a classic example of the kind of suit that relied on the injunctive relief provided by courts in equity.* Prosser 603. "Injunctive relief [for enjoining a public nuisance at the request of the Government] is traditionally given by equity upon a showing of [peril to health and safety]." *Steelworkers v. United States*, 361 U.S. 39, 61, 80 S.Ct. 1, 186, 4 L.Ed.2d 12 (1959) (Frankfurter, J., concurring).[12]

As the commentators at the time noted, governmental actions to abate a public nuisance by injunction were historically recognized as actions in equity.[13]

As noted above, state law provides the substantive dimension of the claim asserted. Here, West Virginia law has long characterized public nuisance abatement actions as equitable. In 1900, the Supreme Court of Appeals held: "Courts of equity have an ancient and unquestionable jurisdiction to prevent or abate public nuisance, and this alone would give jurisdiction, even if it had not been decided that this was a public nuisance."[14] Similarly, the Court in *McMechen v. Hitchman-Glendale Consol. Coal Co.,* recognized that "[a] court of equity, having jurisdiction in such case to abate

---

[10] *Id.* at 18.

[11] *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990).

[12] *Tull,* 481 U.S. at 423 (emphasis added).

[13] 2 Story, *Commentaries on Equity Jurisprudence* §§923-924 (5th ed. 1849); Wood, *A Practical Treatise on the Law of Nuisances in their Various Forms* §769, p. 812 (1st ed. 1875).

[14] *Town of Weston v. Ralston*, 48 W. Va. 170, 36 S.E. 446, 456 (1900).

the nuisance, may assess, and enter a decree for, such damages, . . . the jurisdiction so to do [being] merely incidental to the exercise of the jurisdiction to abate the nuisance."[15]

No exact counterpart to this abatement action existed in eighteenth century England, but the closest analogue was a common law action filed by the commonwealth to abate a public nuisance by injunction. In the eighteenth century, these actions were brought in courts of equity.[16]

The fact that courts of equity could refer certain issues, like whether a particular category of harm constitutes a public nuisance, to a jury does not alter this conclusion. When such referrals were made, the courts did so pursuant to their discretionary power, not because litigants had any "right" to a jury trial on the issue. Where a court of equity "possessed subject matter jurisdiction, it was never obliged to refer a fact dispute to a common law trial."[17] The discretionary nature of jury referrals by courts of equity was and is well-accepted.[18] Courts of equity could refer to a jury issues in any action for equitable relief (and not just public nuisance actions), Any argument that the availability of a referral renders a claim legal instead of

---

[15] 88 W. Va. 633, 107 S.E. 480, 481 (1921).

[16] *See* Spencer, *Public Nuisance- A Critical Examination,* 48 Cambridge Law Journal 55, 66-73 (1989); Pomeroy, *A Treatise On Equity Jurisprudence* §1349, p. 380 (1st ed. 1881).

[17] Langbein, *Fact Finding in the English Court of Chancery: A Rebuttal,* 83 Yale L.J. 1620, 1624 (1974).

[18] *Id.* at 1624-1625; *see also* James, *Right to a Trial in Civil Actions,* 72 Yale L.J. 655, 655 (1963).

equitable would establish a jury trial right in almost any action for equitable relief.[19] The Seventh Amendment does not require this result.

Even when courts of equity referred issues to a jury, the jury's opinion was advisory. Courts of equity often accepted the jury's findings, but "this was a voluntary policy."[20] Aside from some narrow exceptions that do not apply here, those courts "delegated fact disputes to common law trial *for their own convenience*, and the verdict was advisory only."[21] Although those courts may have accepted the jury's verdict, they had unlimited discretion to disregard the verdict and "grant a new trial" or "enter a decree contrary to the verdict."[22] The availability of an advisory verdict then is no different than now as Rule 39(c) permits a court to empanel an advisory jury. The use of an advisory jury in England prior to the adoption of the Constitution does not transform an equitable action into a legal one any more than the existence of a potential advisory jury under Rule 39(c) would today.

---

[19] Langbein, 83 Yale L.J. at 1624-1625 (noting broad power of equity courts to refer questions to jury for factfinding). Some authorities hold that the English court where equitable actions were tried, the Court of the Exchequer, was forbidden from engaging in factfinding. 3 W. Blackstone, *Commentaries on the Laws of England,* p. 48 (1765) ("if any fact be disputed between the parties, the [court] cannot try it, having no power to summon a jury"). Giving Seventh Amendment significance to such a rule would effectively grant a right to a jury trial in all cases as cases without factual disputes do not go to trial. *Cf.* Fed. R. Civ. Pro 56.

[20] Langbein, 83 Yale L.J. at 1626.

[21] *Id.* at 1627 (emphasis added); *see also Earl of Ripon v. Hobart* 40 E.R. 65, 68-70 (1834) (referring issue in public nuisance action to modern-day equivalent of special master).

[22] Langbein, at 1627; *see also* Spence, *The Equitable Jurisdiction of the Court of Chancery,* pp. 383-384 (1846).

The most oft-cited authority to the contrary is Justice Story's 1849 treatise, which while noting that "an information also lies in Equity to redress [a public nuisance] by way of injunction," stated: "[b]ut the question of nuisance or not must, in cases of doubt, be tried by a jury; and the injunction will be granted or not, as that fact is decided."[23] Reviewing the authorities cited by Justice Story, it is clear that he was concerned with factually different claims – injunctive actions by mostly private parties seeking to halt prospective nuisances rather than, as is the case here, governmental public nuisance actions seeking abatement.

In *People v. ConAgra Grocery Prod. Co.*, the court distinguished Justice Story's comment regarding a jury trial following an extensive review of the authorities he cited finding that the English authorities Story cited involved private plaintiffs seeking prohibitory injunctions rather than governments seeking abatement.[24] As the *ConAgra* Court recognized:

> The distinction between prohibitory injunctions and abatement orders was recognized in the 1850s in England. In *Attorney-General v. Birmingham Council* (1858) 70 Eng.Rep. 220 [4 K.&J. 528] (*Birmingham*), the plaintiffs sought an abatement order barring the defendants from continuing to pollute a river with sewage. (*Birmingham*, at p. 220.) The defendants argued before the Chancellor that under *Cleaver* and *Earl of Ripon* the Chancellor should not interfere and should leave the plaintiffs to seek a remedy at common law. (*Birmingham*, at p. 223.) The Chancellor rejected this argument and granted an abatement injunction. (*Birmingham*, at p. 228.)[25]

---

[23] Story, *supra* at § 923, p. 251.

[24] 17 Cal. App. 5th 51, 127–28, 227 Cal. Rptr. 3d 499, 565 (Ct. App. 2017).

[25] *Id.*

Notably, *ConAgra* was brought by a government seeking abatement of public nuisance arising out of the use of interior lead paint. The court found that there was no right to a jury trial under a California constitutional provision which is functionally identical to the Seventh Amendment.[26] Early United States decisions also confirm that government-brought public nuisance actions are equitable.[27]

## B.    Abatement is an equitable remedy.

With respect to the second part of the *Tull* test, it is clear that the remedy sought by Plaintiffs is equitable, not legal. As Judge Polster correctly concluded:

> [T]he fact that "nuisance" is sometimes characterized as a variety of "tort" does not change the fact that an equitable claim to abate a nuisance is not a tort claim seeking compensatory damages. Defendants also argue that what Plaintiffs' label as a claim for "abatement costs" is in fact a "claim for damages.". . . .Unlike tort damages that compensate an injured party for past harm, abatement is equitable in nature and provides a prospective remedy that compensates a plaintiff for the costs of rectifying the nuisance.[28]

---

[26] *Id.* at 131, 227 Cal. Rptr. 3d at 568.

[27] *Pennsylvania v. The Wheeling and Belmont Bridge Co.*, 54 U.S. 518, 522 (1851) (exercising original jurisdiction as court of equity over public nuisance action for abatement); *see also In re Debs*, 158 U.S. 564, 592 (1895) ("Indeed, it may be affirmed that in no well-considered [sic] case has the power of a court of equity to interfere by injunction in cases of public nuisance been denied"); *Mugler v. Kansas*, 123 U.S. 623, 673 (1887) (recognizing that courts of equity have jurisdiction over public nuisance cases and that a jury trial "is not required in suits in equity brought to abate a public nuisance."); *see also Wedel v. United States*, 2 F.2d 462, 462 (9th Cir. 1924) (recognizing that courts of equity had jurisdiction over public nuisances "to give a more speedy, effectual, and permanent remedy than can be had at law" and therefore rejecting a right to jury trial for a suit to abate a public nuisance).

[28] *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 4194272, at *3 (N.D. Ohio Sept. 4, 2019); *see* also *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 4686815, at *4 (N.D. Ohio Sept. 26, 2019) ("it is settled law that, if a defendant is found liable for creating a public nuisance, the decision of whether to impose an abatement remedy (and if so, what that remedy should be) is one that must be decided by the Court, not the jury"); *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 4043938, at *1 (N.D. Ohio Aug. 26, 2019) ("the harmed party can, when appropriate, abate the nuisance themselves or ask the court for the right to do so, and then seek compensation for the costs of abating the nuisance. This compensation is equitable in nature. The goal is not to

This is not a controversial proposition.[29] In deciding whether the Seventh Amendment guaranteed a jury trial for a government action seeking civil penalties and injunctive relief under the Clean Water Act, *Tull* distinguished civil penalties, which were punitive in nature (and could only be enforced in courts of law), from the injunctive relief provided to abate a public nuisance, which is equitable.[30] This conclusion is significant considering the Supreme Court's instruction in *Chauffeurs* that the nature of the remedy is the more important of the two-part test.

A number of federal courts applying *Tull's* test have concluded that a public nuisance abatement action is an equitable action that does not implicate the Seventh Amendment.[31] Similarly, in the course of interpreting similar state constitutional

---

compensate the harmed party for harms already caused by the nuisance. This would be an award of damages. Instead, an abatement remedy is intended to compensate the plaintiff for the costs of rectifying the nuisance, going forward.").

[29] *See Bennis v. Michigan,* 516 U.S. 442, 446, 116 S. Ct. 994, 997, 134 L. Ed. 2d 68 (1996) (noting that state court "confirmed the trial court's description of the nuisance abatement proceeding as an 'equitable action,'); *Michigan v. U.S. Army Corps of Engineers*, 667 F.3d 765, 781 (7th Cir. 2011) ("A court may grant equitable relief to abate a public nuisance that is occurring or to stop a threatened nuisance from arising."); *San Diego Unified Port Dist. v. Monsanto Co.*, No. 15CV578-WQH-JLB, 2018 WL 4185428, at *5 (S.D. Cal. Aug. 30, 2018) ("An abatement of a nuisance is accomplished by a court of equity by means of an injunction proper and suitable to the facts of each case."); *Orange Cty. Water Dist. v. Unocal Corp.,* No. SACV0301742CJCANX, 2016 WL 11201024, at *5 (C.D. Cal. Nov. 3, 2016) ("Abatement is rooted in equitable, injunctive relief."); *W. Morgan-E. Lawrence Water & Sewer Auth. v. 3M Co.*, 208 F. Supp. 3d 1227, 1234 (N.D. Ala. 2016) (As defendants state, plaintiffs' claim for 'abatement of nuisance' is actually a request for equitable relief. . ."); *New York v. W. Side Corp.*, 790 F. Supp. 2d 13, 29 (E.D.N.Y. 2011) ("This goes back to the original theory of nuisance under which "if abatement by judicial process was desired, [a] resort to equity was required.").

[30] 481 U.S. at 423.

[31] See, e.g., *Nat'l Ass'n For the Advancement of Colored People (NAACP) v. Acusport Corp.,* 226 F. Supp. 2d 391, 397 (E.D.N.Y. 2002) (citing authorities) (public nuisance action challenging the proliferation of firearm sales and seeking "recovery of costs incurred in

provisions, numerous state courts have refused to find a right to a jury trial in public nuisance actions seeking abatement.[32]

---

abatement are equitable"); *United States v. Wade*, 653 F. Supp. 11, 13 (E.D. Pa. 1984) ("[T]he Commonwealth has elected to seek recovery only of its costs incurred in abating the nuisance . . . . relief [that] is in the nature of equitable restitution. The non-generator defendants therefore have no right to a trial by jury of the issues presented in the nuisance count."); *Conner v. City of Santa Ana*, 897 F.2d 1487, 1493 (9th Cir. 1990) ("The City was proceeding to abate a nuisance; it was not proceeding under a criminal forfeiture statute. Therefore, a jury was not required to determine whether the Conners' automobiles constituted a nuisance. . . ."); *Citizens for Alternatives to Radioactive Dumping v. CAST Transportation, Inc.,* No. CV 99-321 MCA/ACT, 2004 WL 7338006, at *15 (D.N.M. Sept. 30, 2004) (court in public nuisance abatement action concluded that "both the nature of the cause of action and the remedy sought here compel the conclusion that this action is one in equity to which no constitutional right to a jury trial attaches.").

[32] *See Com. v. United Food Corp.,* 374 Mass. 765, 778, 374 N.E.2d 1331, 1341 (1978) ("[A]n injunction against the future maintenance of a public nuisance may properly be entered without the involvement of a jury."); *State ex rel. Wilcox v. Ryder,* 126 Minn. 95, 106, 147 N.W. 953 (1914) ("As to their claim of right to jury trial, even if the action be held civil in all its details, it is sufficient to say that in its main features the proceeding is unquestionably equitable, and that when a court of equity properly assumes jurisdiction of a cause for one purpose it acquires it for all and grants full relief."); *Pompano Horse Club v. State,* 93 Fla. 415, 428-430, 111 So. 801, 806-807 (1927) (A proceeding by suit in equity, to suppress by injunction, as a public nuisance, does not deprive the defendant in such suit of a right to trial by jury as secured by the Constitution); *King v. Commonwealth,* 194 Ky. 143, 238 S.W. 373, 375 (1922) ("As the defendant was not anciently entitled to trial by jury in cases where the relief sought was purely equitable, as in this case, the seventh constitutional provision relied upon has no application"); *State ex rel. Miller v. Anthony* (1995), 72 Ohio St.3d 132, 647 N.E.2d 1368 ("In Ohio, it is well settled that there is no right to a jury trial in a nuisance abatement action"); *Balch v. State ex rel. Grigsby, County Attorney,* 65 Okla. 146, 164 Pac. 776 (1917) ("In an action by the state to abate a public nuisance, the defendant is not entitled to a jury trial"); *Com. v. Dietz,* 285 Pa. 511, 517-518, 132 A. 572 (1926) ("Courts of equity may be given jurisdiction to abate common nuisance affecting public health" and finding that "this has long been a subject within the sphere of equitable relief at the complaint of those entitled to act for the public"). "); *State ex rel. State Bd. of Milk Control v. Newark Milk Co.,* 118 N.J. Eq. 504, 512, 179 A. 116, 121 (1935) (Finding that equity has inherent power to restrain threatened nuisances dangerous to health of whole community).

**C.** **The cases to the contrary are either distinguishable or not persuasive.**

To the extent there is language in *Mugler v. Kansas*, *supra,* that suggests that a jury is required when the existence of a public nuisance is disputed,[33] that language is dicta and unpersuasive. First, the Court relied on the quote from Justice Story which, as noted above, is not persuasive in the context of abatement actions. Instead, *Mugler* addressed a criminal prosecution for violation of state liquor laws, not a civil action for public nuisance. In addition, the Court did not address the distinction between abatement and an anticipatory injunction.[34] In any event, the Supreme Court's later approach in *Tull* and *Chauffeurs* undermines *Mugler's* continued applicability.

In *City of New York v. Beretta, U.S.A. Corp.*, the district court, in an abundance of caution, ordered a jury trial in a public nuisance case.[35] *Beretta* reasoned that the "precedential value and impact of such a case is likely to be substantial," and that "[a] jury is likely to enhance the sense of parties and public that justice has been served—providing the litigation with greater moral as well as legal force."[36] However, *Beretta* did not address Federal Rule of Civil Procedure 39(a), which requires a nonjury trial if the Court finds "there is no federal right to a jury trial." Here, because

---

[33] 123 U.S. at 623 ("the question of nuisance or not must in cases of doubt be tried by a jury") (citing 2 Story, Eq. Jur. § 923)).

[34] *Cf. ConAgra, supra.*

[35] 312 F. Supp.2d 411, 414 (E.D.N.Y. 2004).

[36] *Id.*

there is no federal right to a jury trial on the public nuisance abatement claim, absent

agreement by the parties, Rule 39 dictates that a jury shall not try the claim.

To the extent Defendants rely on dicta from Judge Polster in the CT1 trial

where he decided to bifurcate the abatement remedy from an otherwise required jury

trial, that decision should not apply here. First, at the time of the decision, Plaintiffs

were still pursuing state and federal racketeering claims for which the right to a jury

trial unquestionably attached.[37] As such, Plaintiffs did not dispute the decision to

bifurcate the abatement remedy from liability.[38] Reading the decision as permitting

bifurcation of public nuisance liability and the abatement remedy in the absence the

racketeering causes of action would be contrary to *Tull* which rejected bifurcation as

a "novel" approach.[39]

Finally, relying on *Beretta, supra.,* Judge Polster cited jurisprudential

considerations that are inapplicable here.[40] Unlike the CT1 trial before Judge Polster

which included legal claims where the right to a jury trial unquestionably existed,

relying on jurisprudential considerations here when no right to a jury trial exists is

inconsistent with Rule 39's mandate that this Court determine whether the right to

---

[37] *See In re Nat'l Prescription Opiate Litig.,* No. 1:17-MD-2804, 2019 WL 4621690, at *3 (N.D. Ohio Sept. 24, 2019) (noting "the great majority of facts the jury will need to find to decide plaintiffs' legal claims (federal RICO, Ohio Corrupt Practices Act, and civil conspiracy) are the same as those any finder of fact would have to determine to decide the nuisance claims").
[38] *Id.* at *1; *cf. id.* at * 3 ("Also supporting the decision to try nuisance liability to the jury is Supreme Court authority holding clearly that all facts found by a jury in adjudicating legal claims, which are also relevant to the plaintiffs' equitable claims, are binding on a court's subsequent determination of those equitable claims." (citing *Tull*, 481 U.S. at 425 ("[I]f a 'legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact.'")).

[39] *Tull*, 481 U.S. at 421, n.6.

[40] 2019 WL 4621690 at *4.

12

a jury trial exists.  Moreover, unlike the decision in CT1 which was made on the eve of trial, a decision to hold a jury trial here will delay and complicate a  trial. The public health consequences of further delay counsel in favor of resolving any doubt in favor of a ruling that will facilitate a prompt trial.

## CONCLUSION

There simply is no right to a jury trial in this public nuisance action seeking abatement. This Court should so rule and set this case for a bench trial.

Dated February 6, 2020

THE CITY OF HUNTINGTON

/s/ *Anne McGinness Kearse*
Anne McGinness Kearse (WVSB No. 12547)
Joseph F. Rice
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: 843-216-9000
Fax: 843-216-9450
akearse@motleyrice.com
jrice@motleyrice.com

Charles R. "Rusty" Webb (WVSB No. 4782)
**THE WEBB LAW CENTRE, PLLC**
716 Lee Street, East
Charleston, West Virginia 25301
Telephone: (304) 344-9322
Facsimile: (304) 344-1157
rusty@rustywebb.com

Respectfully submitted,

CABELL COUNTY COMMISSION

/s/ *Anthony J. Majestro*
Anthony J. Majestro (WVSB No. 5165)
**POWELL & MAJESTRO, PLLC**
405 Capitol Street, Suite P-1200
Charleston, WV 25301
304-346-2889 / 304-346-2895 (f)
amajestro@powellmajestro.com

/s/ *Paul T. Farrell, Jr.*
Paul T. Farrell, Jr. (WVSB No. 7443)
**FARRELL LAW**
422 Ninth Street, 3rd Floor
Huntington, WV 25701
Tel: (304) 654-8281
paul@farrell.law

Michael A. Woelfel (WVSB No. 4106)
**WOELFEL AND WOELFEL, LLP**
801 Eighth Street
Huntington, West Virginia 25701
Tel. 304.522.6249
Fax. 304.522.9282
mikewoelfel3@gmail.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 6, 2020, a copy of the foregoing **PLAINTIFFS' MEMORANDUM IN SUPPORT OF NONJURY TRIAL** has been filed electronically using the Court's CM/ECF system and will be served *via* the Court's CM/ECF filing system, which will send notification of such filing to the attorneys of record at their e-mail addresses on file with the Court.

*/s/ Anthony J. Majestro*
Anthony J. Majestro
