IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| **THE CITY OF HUNTINGTON,**<br><br>    Plaintiff,<br><br>v.<br><br>**AMERISOURCEBERGEN DRUG CORPORATION,** *et al.*<br><br>    Defendants. | Civil Action No. 3:17-01362 |
| **CABELL COUNTY COMMISSION,**<br><br>    Plaintiff,<br><br>v.<br><br>**AMERISOURCEBERGEN DRUG CORPORATION,** *et al.*<br><br>    Defendants. | Civil Action No. 3:17-01665 |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PROPOSED CASE MANAGEMENT ORDER

This memorandum, in support of defendants' proposed Case Management Order, urges a reasonable schedule for this litigation.

Discovery of Cabell County and the City of Huntington has scarcely begun: while document production has started, there is significant resistance from Plaintiffs about the scope of permissible discovery, and no depositions have taken place. Before Judge Polster, discovery of Cuyahoga and Summit County took 18 months. The City of Cleveland—which started out as a Plaintiff in Track 1—was ultimately sidelined by Judge Polster for failure to comply with discovery after 17 months.

DC: 7234689-5

This discovery is critical. It will enable defendants to probe plaintiffs' allegations about the impact of opioid abuse on their communities, including whether and to what extent defendants' alleged conduct affected plaintiffs' governmental operations; when plaintiffs knew or should have known of their claims; and whether plaintiffs can prove the necessary element of causation. Indeed, in contrast to the tremendous amount of discovery already taken of defendants, *all* of the facts that are necessary for defendants to mount a defense as to liability—including whether there has been an unreasonable interference with a public right in Cabell County and the City of Huntington, and who or what caused plaintiffs' alleged injury—remain to be discovered. In addition, plaintiffs have not yet even offered up a total of the so-called "abatement damages" they seek, much less allowed defendants the opportunity to seek discovery into what a proper abatement remedy might look like. Moreover, necessary third-party discovery has hardly begun.

As you may know, defendants supported remand of this case from the MDL. We did so based on, among other things, the belief that this Court is better positioned to supervise the voluminous local discovery that must still be completed and to decide important issues of West Virginia law that have yet to be briefed.

**I.     Discovery of Plaintiffs.**

Per the Court's order, defendants have filed a proposed Case Management Order, which includes a February 2021 trial date. Given the overwhelming volume of discovery of the plaintiffs and third parties that must occur for defendants to put on a meaningful defense, as outlined in defendants' status conference statement (ECF No. 124 in C.A. No. 3:17-01665), even starting trial by February 2021 will be difficult. Nevertheless, in response to the Court's comments at the last status conference and Magistrate Judge Aboulhosn's remarks, and understanding the urgency of the matter, defendants have mapped out what we believe to be the absolute bare minimum of time

required to prepare for a trial in this case, even assuming that plaintiffs and third parties are able to meet their discovery obligations as quickly as currently projected (which is rarely the case).

Plaintiffs' representations about their own discovery obligations obscure how much remains to be done. For example, counsel for Cabell County Commission notified Magistrate Judge Aboulhosn and defendants late last week that Cabell County Commission expects to complete its document productions by the end of February. (Email from Paul Farrell, Feb. 6, 2020, attached as Exhibit A). Mr. Farrell's representation omits the significant discovery of Cabell County that is currently in dispute and therefore not subject to Mr. Farrell's projected production date. It also ignores the fact that, as discussed further below, the Cabell County Commission is apparently taking the position that discovery of some of its own agencies must be pursued separately as third-party discovery. In any event, the parties' experience in the MDL bellwether cases indicates that Mr. Farrell's expectation is highly optimistic even for the documents that the Cabell County Commission agrees must be produced. In the MDL bellwether cases, the initial discovery period of four months was extended to ten months, and fact discovery alone eventually took over a year. Even with that extension, the two city-plaintiffs had to drop out of Track 1 because they could not comply with their discovery deadlines.[1] But even if counsel's expected timing holds, that would mean only that document discovery of one plaintiff would be complete less than four months before trial. Document discovery of the other plaintiff and third parties also would need to be completed in that same period, and, in the next few months, the parties would also have to complete fact depositions, expert reports, expert depositions, motions for summary judgment, *Daubert* motions, and pretrial hearings.

---

[1] Similarly, in the over 300 opioid cases pending in state courts around the country, fact discovery has taken a minimum of 11 or 12 months.

## II.     Further Discovery of Defendants.

Plaintiffs' counsel here serve as national counsel in the MDL and, as such, have already taken more than a year of discovery from defendants, receiving millions of pages of documents and conducting scores of depositions. But plaintiffs have made clear they intend to take still further discovery from defendants here. For example, plaintiffs have indicated they intend to seek additional discovery from defendants even as to threshold legal issues, including whether plaintiffs' claims are preluded by the doctrine of res judicata in light of defendants' prior settlements with the West Virginia Attorney General.

The parties also have not yet finalized the search terms that will be applied to defendants' documents, or even settled on the identity of document custodians. By way of example, for Defendant AmerisourceBergen Drug Corporation, plaintiffs continue to discuss production from upwards of 42 potential additional new custodians whose files will then need to be retrieved, reviewed for responsiveness and privilege, and produced. Defendants are working diligently with plaintiffs on these issues, but this volume of document production necessarily requires time.

## III.    Third-Party Discovery.

Discovery from third parties will take even longer than discovery from plaintiffs. In addition to what might be called "true" third-party discovery—which is particularly relevant in a case like this one, where causation is a contested and dispositive element of liability—this case will involve a separate, highly distinctive category of "third party" discovery from government entities affiliated with Cabell County and the City of Huntington whom Plaintiffs' counsel purport not to represent. For instance, the attached email from Mr. Farrell notified defendants for the first time that the Cabell-Huntington Health Department is apparently a "third party" with its own legal representation. As a result, defendants will need to pursue discovery from this highly relevant agency through a time-consuming subpoena process. This difficulty is compounded by the fact

that defendants still do not know which government entities are third parties, and which are not. To expedite plaintiffs' determination of which entities they represent, defendants sent plaintiffs a detailed chart of potential party custodians on February 4, with blank columns for plaintiffs to indicate whether each potential custodian is a third party or represented by plaintiffs' counsel. (Email from Steven Boranian, Feb. 4, 2020, attached as Exhibit B). Defendants have yet to receive a response for entities other than the Cabell-Huntington Health Department.

Third-party discovery outside of Cabell County and the City of Huntington's own government entities will also be extensive. First, discovery from potential alternative causes of plaintiffs' injury is crucial to defendants' causation defense. Plaintiffs' allegations are against wholesale distributors, but no prescription opioid pill could reach a patient without a pharmacist's decision to dispense it or a physician's prescription to prescribe it, and plaintiffs allege harm resulting from use of illegal opioids. It must be emphasized that third-party discovery is extremely important for defendants' defense of this case, even putting aside issues of non-party fault, because this discovery goes directly to a core defense in the case: lack of causation.

Second, West Virginia Code § 55-7-13d(a)(2) provides that "[f]ault of a nonparty shall be considered" in tort actions, and plaintiffs themselves allege that numerous third parties are at fault for their alleged harm. Each defendant has given notice of third parties at fault within 180 days after service of process on the defendant, as required under the statute. (Exhibits C through H). As plaintiffs' allegations and defendants' notices indicate, a vast array of third parties are potentially at fault here, including, but not limited to, pharmacies, pharmacists, prescribing practitioners, criminal cartels and other sellers of illegal opioids (such as heroin and fentanyl), pharmaceutical manufacturers, non-party wholesale pharmaceutical distributors, health insurers, and federal, state, and local government entities. We expect discovery from state agencies to be

particularly extensive, including, but not limited, to the West Virginia Board of Pharmacy, which administers and enforces the West Virginia Uniform Controlled Substances Act and its implementing regulations, as well as the State's Prescription Drug Monitoring Program; state professional boards that license and regulate physicians, dentists, nurses, and other medical professionals who may have improperly prescribed or administered controlled substances; the West Virginia State Police and the police departments of non-party municipalities in Cabell County, which enforce the laws related to illegal drug sale and use; the West Virginia Office of the Chief Medical Examiner, which performs investigations into causes of death, including drug overdoses; and state agencies that administer medical insurance programs, including Medicaid.

## IV.    Discovery Disputes.

As the parties' preliminary back and forth about custodians indicates, discovery disputes in this litigation are likely to be extensive and complex. Magistrate Judge Aboulhosn has already found as much. After reviewing defendants' motion to compel full, complete, and responsive answers to their first sets of interrogatories and requests for production, Magistrate Judge Aboulhosn notified the parties that he will recommend the appointment of a special master to handle discovery disputes. He explained: "Having reviewed the voluminous materials concerning the initial discovery disputes, and noting that the amount of time necessary to assist the parties in these civil actions, it has become apparent that the appointment of a special master would prove beneficial to the parties in these matters . . . ." (ECF No. 154). He then cancelled further discovery conferences until further notice, postponing any consideration of defendants' motion to compel and, thus, any document production that may result from a ruling on the motion. Our MDL experience shows that discovery issues like these will significantly extend the time needed for litigation.

V.     **Fact Depositions.**

After document discovery is complete, fact depositions will begin.  Although the MDL has provided plaintiffs with extensive discovery from defendants, defendants have yet to receive almost any discovery on the facts in the jurisdictions relevant here:  Cabell County and the City of Huntington.  As in Track 1 of the MDL, preparing a defense will require depositions of plaintiffs and their officials on topics including (among others) opioid use, law enforcement efforts against defendants and third parties, and government programs to treat and prevent substance abuse and addiction.  MDL Track 1 plaintiffs produced 99 witnesses for deposition, and a roughly comparable number of depositions will likely be necessary here.  Defendants' proposed case management order sets a compressed timeframe of approximately three months for these depositions, which would require one or two plaintiff depositions every single business day, in addition to third party depositions and defendant depositions.  Shortening this timing further is not feasible.

VI.    **Expert Discovery.**

After fact discovery closes, expert depositions will occur.  Plaintiffs' case likely will rest largely on their expert reports and testimony, including to show misconduct, causation, and damages.  For example, Cabell County Commission responded to defendants' request to produce documents on its damages by declining to provide any responsive information during fact discovery and, instead, stating its "inten[t] to disclose an abatement plan through expert witness testimony."  (Amended Responses of Plaintiff Cabell County Commission to Distributor Defendants' First Set of Requests for Production to Plaintiffs, attached as Exhibit I).  MDL Track 1 plaintiffs named 23 experts, and plaintiffs here likely will name a similar number.  Defendants' proposed case management order provides three weeks for depositions of plaintiffs' experts and

7

then the same amount of time for depositions of defendants' experts. This is the minimum amount of time needed, as it would require holding one or two expert depositions every business day.

## VII. Pretrial Motions.

Motions for summary judgment and *Daubert* motions will follow expert discovery. In MDL Track 1, defendants filed three motions for summary judgment, and plaintiffs filed two. Collective *Daubert* briefing ran to more than 800 pages. Defendants' proposed case management order provides less than two months for these motions, oppositions and replies, and hearings.[2]

Finally, before trial can occur, at least a few weeks for motions *in limine* and pretrial hearings will be necessary.

\* \* \*

For the foregoing reasons, defendants therefore respectfully request that the Court to set a trial date no earlier than February 2021.[3] In the alternative, defendants respectfully request an initial case management order that sets deadlines only for completing initial discovery, such as document production, with a plan to set a trial date after that initial discovery is completed. Such a process would enable the Court to make a better-informed decision about a trial date because the most significant source of uncertainty in the litigation schedule—the completion date for plaintiffs' extensive document productions—will have been removed.

---

[2] Plaintiffs have suggested to the Court that the decisions made on many of those MDL Track 1 motions should be treated as binding law of the case. This is inaccurate. Those decisions, all of them interlocutory and none applicable to *these* cases, are not law of the case or otherwise binding. Defendants will be prepared to fully brief that issue at the appropriate time (or earlier, if the Court desires).

[3] Mr. Farrell's previous suggestion that the trial be phased in such a way that the case would begin while discovery is incomplete and ongoing (and, in fact, in its early stages) would deprive defendants of due process: we would be forced to fly blind during the course of plaintiffs' presentation of evidence, without access to the discovery needed to present a full and appropriate defense.

Dated: February 11, 2020

Respectfully Submitted,

*McKesson Corporation*
By Counsel:

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
Jason L. Holliday (WVSB #12749)
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200
jwakefield@flahertylegal.com
jholliday@flahertylegal.com

*/s/ Geoffrey E. Hobart*
Geoffrey E. Hobart
Mark H. Lynch
Christian J. Pistilli
Laura Flahive Wu
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
cpistilli@cov.com
lflahivewu@cov.com

*AmerisourceBergen Drug Corporation*
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

9

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

**Cardinal Health, Inc.**
By Counsel:

*/s/ Steven R. Ruby*
Brian A. Glasser (WVSB #6597)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
BAILEY GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
*Counsel in Cabell County action*


 */s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC  20005
Tel:  (202) 434-5000
Fax:  (202) 434-5029
emainigi@wc.com
lheard @wc.com
ahardin@wc.com