IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**THE CITY OF HUNTINGTON and
CABELL COUNTY COMMISSION,**

    Plaintiffs,

v.                                                  CIVIL ACTION NO. 3:17-01362

**AMERISOURCEBERGEN DRUG
CORPORATION, et al.,**

    Defendants.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL**

COME NOW Plaintiffs Cabell County Commission and the City of Huntington ("Plaintiffs") and respond to Distributor Defendants' Motion to Compel Further Discovery Responses (Doc. 149) ("Motion") and Memorandum in Support of Distributor Defendants' Motion to Compel Further Discovery Responses (Doc. 150) ("Memo").

**I.     BACKGROUND**

The opioid multidistrict litigation consolidated in the Northern District of Ohio and styled *In Re: National Prescription Opiate Litigation* ("MDL" or "MDL 2804") has been pending for more than two (2) years. The MDL litigation includes marketing claims against the manufacturers, distribution claims against the distributors and dispensing claims against the pharmacies. The first bellwether cases in the MDL ("Case Track One" or "CT1") included both marketing and distribution claims spanning eleven (11) causes of actions brought by two Ohio Counties, Cuyahoga and Summit ("CT1 Plaintiffs"). The CT1 Plaintiffs sought both economic damages and abatement as a remedy. The City of Huntington and Cabell County Commission were selected as

1

the second bellwether ("Case Track Two" or "CT2"). After claims against other defendants were severed, the matter *sub judice*, which is limited to a cause of action for public nuisance in conjunction with civil conspiracy and which seeks only the remedy of abatement, was remanded to the Southern District of West Virginia.

Plaintiffs submit that the Motion to Compel raises old issues in a new light given the narrow factual and legal issues presented in the second bellwether case. Thus, this Motion is both ripe and important. Plaintiffs also provide notice that we intend to file motions to compel against the Distributor Defendants in the near future. We are mindful that the defensive positions we take herein must be reconciled with our offensive positions. Nor do we defend our position by pointing to deficiencies by our adversaries. Each of the parties have independent obligations to abide by the Rules. With this in mind, we have carefully reviewed and considered your holdings in Handy v. State Farm Mut. Auto. Ins. Co., No. 5:15-CV-01950, 2016 WL 146530 (S.D.W. Va. Jan. 12, 2016).

The Distributor Defendants served their first sets of interrogatories and requests for production on October 25, 2019. Plaintiffs responded to these requests on December 3, 2019. Defendants sent Plaintiffs deficiency letters in reference to these responses on December 6, 2019. The parties conferred on December 13, 2019 and both Plaintiffs subsequently provided Defendants with additional information. On January 31, 2020, Defendants filed the instant Motion to Compel.

In their Motion, Distributor Defendants state that they "seek basic information to which Distributor Defendants are clearly entitled, including certain information that plaintiffs are normally obligated to disclose automatically pursuant to Rule 26(a) at the outset of any civil action." (Memo p. 2). The MDL Court waived initial disclosures at the outset of this litigation. See Case Management Order 1, ¶9.b (Case: 1:17-md-02804-DAP) (Doc #: 232) (Filed: 04/11/18).

Moreover, Plaintiffs disagree that the Distributor Defendants are "clearly entitled" to the discovery requested in this Motion.

The Federal Rules of Civil Procedure require the parties to make a good faith effort to cooperate in discovery. This collaborative approach "also reflects a duty owed to the court system and the litigation process." *Brown v. Tellermate Holdings Ltd.*, No. 2:11-CV-1122, 2014 WL 2987051, at *16 (S.D. Ohio July 1, 2014), *adopted as modified*, 2015 WL 4742686 (S.D. Ohio Aug. 11, 2015). Defendants' Motion, however, is clearly an effort to simply further delay the proceedings of this case by recycling the same discovery arguments they failed to prevail on during CT1. Accordingly, Distributors' Motion should be denied in its entirety.

## II.    ARGUMENT

### A. **Defendants' Motion to Compel Seeks to Enforce Unreasonable Requests and Ignores Prior, Controlling Discovery Rulings**

It is a well-accepted reality that, "with respect to certain discovery, principally interrogatories and document production requests, lawyers customarily serve requests that are far broader, more redundant and burdensome than necessary to obtain sufficient facts to enable them to resolve the case through motion, settlement or trial." *Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 358 (D. Md. 2008). "The rationalization for this behavior is that the party propounding Rule 33 and 34 discovery does not know enough information to more narrowly tailor them…." *Id.*

Here, however, despite having had ample opportunity to narrow and streamline their discovery requests, Distributors' Interrogatories and Requests for Production to Plaintiffs are virtually identical to Defendants' prior requests in the CT1. In fact, most – if not all – of the requests Distributor Defendants currently seek to compel are requests that the Court has previously concluded were overbroad or disproportionate to the needs of the case. Because there are no new

3

factual or legal circumstances in the instant case that would require that the current disputes be resolved in a different manner, Defendants' Motion to Compel the discovery described below should likewise be denied.

### 1. The City of Huntington and Cabell County Have Adequately Responded to Distributors' Interrogatories Nos. 5, 6, 7, and 8.

Defendants' Motion to Compel identifies four Interrogatory Requests for which it argues both the City of Huntington and Cabell County's responses are deficient. Defendants' Motion as to each of these four interrogatories should be denied on the grounds that Plaintiffs have provided a sufficient response to these Interrogatories, consistent with the prior discovery rulings in the MDL litigation.

#### a) Interrogatory No. 5

Defendants' Interrogatory No. 5 asks Plaintiffs to "State the date(s) and the manner in which You first became aware that Prescription Opioids were being abused within Your geographic boundaries, that Prescription Opioids were being diverted within Your geographic boundaries and/or by Your residents, and/or that addiction to Prescription Opioids was occurring and/or increasing within Your geographic boundaries." Notably, Distributors served an identical Interrogatory during CT1 discovery as their Interrogatory No. 13.

Plaintiffs believe this discovery request attempts to create a factual record for purposes of a statute of limitations defense and agree that information relating to Defendants' statute of limitations defense is an appropriate area for discovery. Accordingly, Plaintiffs' have responded to the best of their abilities as political subdivisions with an institutional memory limited to the current officeholders. Nevertheless, Plaintiffs have provided Defendants with substantive responses to this Interrogatory by outlining notable events within their respective communities,

acknowledging public knowledge and information within the public domain, and highlighting their efforts in relation to the opioid crisis.

Without distracting from the purpose of discovery, it is noteworthy that West Virginia has adopted the discovery rule and the revelation of the role of the Distributor Defendants is relatively new. Moreover, West Virginia law provides that the statute of limitations does not begin to run until the nuisance is abated. *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co*., 200 W. Va. 221, 488 S.E.2d 901, Syl. Pt. 11 (1997). Plaintiffs fail to understand how any answer other than the one provided is (a) possible and (b) creates a better factual record for the Distributor Defendants to assert the affirmative defense.

Not only does Defendants' insistence that Plaintiffs provide them with a, singular date certain ignore that Plaintiffs simply cannot speculate as to the "state of mind" of a public entity at one definitive moment in time, but also, it ignores that this very same issue has previously been ruled on. During Case Track One, plaintiffs similarly provided Defendants with general information concerning their knowledge of issues relating to opioid use and diversion within their communities through written responses, document productions, and extensive 30(b)(6) testimony. Defendants took issue with this, as they do again here, and argued that the CT1 Plaintiffs' response was insufficient and that they needed to provide a more definitive answer. Special Master Cohen, disagreed, however, ruling that "supplementation [was] not required" and finding that the CT1 Plaintiffs' "responses provided to the Interrogatory and related discovery are sufficient."[1]

b) **Interrogatories No. 6 and 7**

---

[1] *See* Agenda 173 Ruling dated 5/29/2019.

Distributor's Interrogatory No. 6 asks Plaintiffs to determine "the maximum number of pills or other dosage units of Prescription Opioids that should properly have been distributed within Your geographic boundaries for legitimate medical purposes during each year of the Timeframe, and explain how You calculated that number." Similarly, Defendants' Interrogatory No. 7 asks Plaintiffs to "state the number of pills or other dosage units of Prescription Opioids that were diverted from legitimate purposes. . . ." As before, Defendants sought – and ultimately moved to compel – identical discovery during CT1. In denying Defendants' Motion to Compel in CT1, the Special Master concluded that defendants would "obtain sufficient information regarding whether a given pill was 'medically legitimate' simply by virtue of plaintiffs' answers to interrogatories addressing specific suspicious orders," noting that "[w]hile the two categories are not entirely congruent, most or all orders identified as suspicious by plaintiffs will necessarily include at least some pills that they believe were dispensed for other than legitimate medical purposes. . . . defendants' insistence that they need more exactitude now, before plaintiffs produce their expert reports, is not well-taken."[2]

In this case, Plaintiffs have endeavored to provide Defendants with as much information as possible at the very outset of litigation by providing Defendants with extensive ARCOS information pertaining to their jurisdictions that Plaintiffs intended to rely upon during trial.

---

[2] *See* Special Master Cohen's Discovery Ruling No. 7. Special Master Cohen's rulings on these issues – which apply to all of the Discovery Requests Defendants have raised here -- were further underscored by Judge Polster's December 26, 2019 Evidentiary Order. *See* Doc. No. 3052. That Order cited the Court's prior rulings on Defendant's summary judgment motions and noted: "In ruling on Defendants' summary judgment motions, the Court rejected the notion that Plaintiffs must show that specific opioid orders were diverted." *Id.* at 5, citing Judge Polster's Summary Judgment Order as to Causation, Doc. No. 2561 at 809, which held:

> "Plaintiffs' aggregate proof of causation was sufficient to overcome summary judgment; given the massive increases in the supply of prescription opioids, combined with evidence suggesting a systemic failure to maintain effective controls against diversion, a fact finder could reasonably infer these failures were a substantial factor in producing the alleged harm."

Moreover, not only are Plaintiffs under no obligation to identify the number of pills they believe were "medically legitimate" and the number of pills "diverted from legitimate uses," but also, even if they were, this would be the subject of expert testimony and there inappropriate at this stage of the litigation. *Pauley v. CNE Poured Walls, Inc.*, No. 3:18-CV-01508, 2019 WL 3226996, at *1 (S.D.W. Va. July 17, 2019) ("Moreover, in cases where the parties anticipate the production of 'an expert report which will touch on the very contentions at issue, the Court should normally delay contention discovery until after the expert reports have been served, which may then render moot any further contention discovery').

### c) Interrogatory No. 8

Defendants' Interrogatory No. 8 asks Plaintiffs to identify "each pharmacy, doctor, healthcare provider, or other drug retailer who may have diverted or wrongfully dispensed opioids." Defendants do not dispute that Plaintiffs have provided a substantive response to this Interrogatory by identifying certain pharmacies and prescribers. Instead, Defendants take issue with Plaintiffs' continued investigation into additional parties who may be responsive to this request. However, Plaintiffs are continuing to review Defendants' recently produced and/or rolling productions of the requested due diligence files and transactional data for Huntington and Cabell County customers. As a result, Plaintiffs will provide Defendants with a complete list once they are able to do so based on their review of all related information.

### B. Cabell County has Adequately Responded to Defendants' Interrogatories Nos. 9 – 11 and Defendants' Requests for Production

Defendants have also taken issue with Cabell County's responses to Interrogatories Nos. 9, 10, and 11. As indicated before, Cabell County has indicated it would be collecting documents from relevant parties and that those documents would be produced on a rolling basis. Cabell County has also provided Defendants with extensive information as to the custodians and

databases that it is reviewing in Appendix A to its Responses to Defendants' Interrogatories and Requests for Production. Moreover, Cabell County has also indicated that it will supplement its discovery responses where possible.

### III. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendants' Motion to Compel.

Dated February 14, 2020                                          Respectfully submitted,

CITY OF HUNTINGTON                                               CABELL COUNTY

/s/ *Anne McGinness Kearse*                                      */s/ Paul T. Farrell, Jr.*
Anne McGinness Kearse (WVSB No. 12547)                           Paul T. Farrell, Jr. (WVSB Bar No. 7443)
Joseph F. Rice                                                   **FARRELL LAW**
**MOTLEY RICE LLC**                                              422 Ninth Street, 3rd Floor (25701)
28 Bridgeside Blvd.                                              PO Box 1180
Mount Pleasant, SC 29464                                         Huntington, West Virginia 25714-1180
Tel:  843-216-9000                                               Mobile: 304-654-8281
Fax:  843-216-9450                                               paul@farrell.law
akearse@motleyrice.com
jrice@motleyrice.com                                             Anthony J. Majestro (WVSB No. 5165)
                                                                 **POWELL & MAJESTRO, PLLC**
Linda Singer                                                     405 Capitol Street, Suite P-1200
David I. Ackerman                                                Charleston, WV 25301
**MOTLEY RICE LLC**                                              Tel.: 304-346-2889
401 9th Street NW, Suite 1001                                    Fax: 304-346-2895
Washington, DC 20004                                             amajestro@powellmajestro.com
Tel:  202-232-5504
Fax:  202-386-9622                                               Michael A. Woelfel (W.Va. Bar ID 4106)
lsinger@motleyrice.com                                           **WOELFEL AND WOELFEL, LLP**
dackerman@motleyrice.com                                         801 Eighth Street
                                                                 Huntington, West Virginia 25701
Charles R. "Rusty" Webb (WVSB No. 4782)                          304.522.6249
**THE WEBB LAW CENTRE, PLLC**                                    304.522.9282: fax
716 Lee Street, East                                             mikewoelfel3@gmail.com
Charleston, West Virginia 25301
Telephone: (304) 344-9322
Facsimile: (304) 344-1157
rusty@rustywebb.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 14, 2020, the foregoing has been served via email only to defense counsel at xALLDEFENDANTS-MDL2804-Service@arnoldporter.com and has been filed electronically using the Court's CM/ECF system and will be served via the Court's CM/ECF filing system, which will send notification of such filing to the attorneys of record at their email-addresses on file with the Court.

Respectfully Submitted,

*/s/ Monique Alycia Christenson*
Monique Alycia Christenson
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: 843-216-9000
Fax: 843-216-9450
mchristenson@motleyrice.com