AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of West Virginia

| | |
|---|---|
| City of Huntington; Cabell County Commission ) | |
| *Plaintiff* ) | Civil Action No. 3:17-01362; 3:17-01665 |
| v. ) | |
| AmerisourceBergen Drug Corporation, et al. ) | |
| ) | |
| *Defendant* ) | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To: Coalition for Responsible Chronic Pain Management, c/o West Virginia Legislature, Joint Committee on Government & Finance, Building 1, State Capitol, Charleston, WV 25305

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

All documents, communications, and electronically stored information identified and described in Attachment A to this subpoena.

| Place: Carey, Scott, Douglas & Kessler, PLLC<br>901 Chase Tower, 707 Virginia Street, East<br>Charleston, WV 25323 | Date and Time:<br>03/18/2020 1:31 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 3/03/2020

*CLERK OF COURT*                                                      OR

_____                    _____
*Signature of Clerk or Deputy Clerk*                          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Cardinal Health, Inc. _____, who issues or requests this subpoena, are:
Michael W. Carey, David R. Pogue, mwcarey@csdlawfirm.com, drpogue@csdlawfirm.com, 304-345-1234

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or
    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A TO SUBPOENA TO THE
## COALITION FOR RESPONSIBLE CHRONIC PAIN MANAGEMENT

### DEFINITIONS

The following terms shall have the meanings set forth below. Notwithstanding any definition set forth below, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Civil Rules for the District Court of the Southern District of West Virginia.

1. "You" and "Your" refers to the Coalition for Responsible Chronic Pain Management ("Coalition"), all predecessors, successors, and assigns thereof, and all others acting or purporting to act on the Coalition's behalf, including any Coalition members, committees, subcommittees, working groups, and joint task forces.[1]

2. "Communication" has the full meaning ascribed to it by Local Rule of Civil Procedure 26.2(c)(1), and means any transmission of information (whether formal or informal) by one or more persons or entities, and/or between two or more persons or entities, including, but not limited to, telephone conversations, letters, faxes, electronic mail, text messages, instant messages, other computer linkups, written memoranda, and face-to-face conversations.

3. "Document" has the full meaning ascribed to it by Federal Rule of Civil Procedure 34(a) and Local Rule of Civil Procedure 26.2(c)(2), and means the complete original (or complete copy where the original is unavailable) and each non-identical copy (where different from the original because of notes made on the copy or otherwise) of any writing or record, including, but not limited to, all written, typewritten, handwritten, printed, or graphic matter of any kind or nature, however produced or reproduced, any form of collected data for use with electronic data processing equipment, and any mechanical or electronic visual or sound recordings or text messages in GACSA's possession, custody, or control. "Documents" include, but are not limited to, books, papers, contracts, memoranda, invoices, correspondence, notes, studies, reports, manuals, photographs, drawings, charts, graphs, data compilations, other writings, microfilm, microfiche, audio recordings, video recordings, electronic mail, and any other information stored in electronic form, and each different version or copy of each Document, including, but not limited to, drafts.

4. "Defendants" means all defendants named in *City of Huntington v. AmerisourceBergen Drug Corp., et al.*, Civil Action No. 3:17-01362, and *Cabell County Commission v. AmerisourceBergen Drug Corp., et al.*, Civil Action No. 3:17-01665, as of the date of this notice.

5. "Person" has the full meaning ascribed to it by Local Rule of Civil Procedure 26.2(c)(6), and means any natural person or any business, legal or governmental entity or association.

---

[1] The Coalition for Responsible Chronic Pain Management was created by the West Virginia legislature pursuant to West Virginia Code § 16-52-1 et seq.

1

6. "Prescription Opioids" means FDA-approved pain-reducing medications that consist of natural, synthetic, or semisynthetic chemicals that bind to opioid receptors in the brain or body to produce an analgesic effect, including but not limited to prescription medications containing hydrocodone, oxycodone, fentanyl, and hydromorphone, that may be obtained by patients in West Virginia only through prescriptions filled by dispensers duly licensed and regulated by appropriate agencies.

7. "Illicit Opioids" means substances comprised of or containing natural, synthetic, or semisynthetic chemicals that bind to opioid receptors in the brain or body that are not approved by FDA, including but not limited to heroin, fentanyl, carfentanil, other fentanyl-type analogs, and counterfeit opioid medications.

8. "ARCOS Data" means data reported by DEA Registrants pursuant to 21 U.S.C. § 827 through the Automation of Reports and Consolidated Orders System.

9. "Suspicious Order Report(s)" means a report filed by DEA Registrants pursuant to 21 C.F.R. § 1301.74(b).

## INTRODUCTION

1. Unless otherwise agreed in writing, all Documents are to be produced to the attention of Michael W. Carey, David R. Pogue, Carey, Scott, Douglas & Kessler, PLLC, 901 Chase Tower, 707 Virginia Street, East, Charleston, WV 25301.

2. Each page of every Document must be marked with a unique identifier or "Bates stamp."

3. Requested format for documents produced electronically in response to this Request:

> Form: Documents produced in response to this Request should be provided as a Group 4 compression single-page "TIFF" image that reflects how the source would have appeared if printed out to a printer attached to a computer viewing the file. Extracted text will be included in the manner provided herein. To the extent that extracted text does not exist, these images will be processed through Optical Character Recognition ("OCR") so that they are fully searchable. Extracted text and OCR should be provided in separate document level text files. "Load files" shall be produced to accompany the images and shall facilitate the use of the litigation support database systems to review the produced images.
>
> Document Unitization: Each page of a document shall be electronically converted into an image as described above. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating the image file and appropriately designated in the load files. The corresponding parent/attachment relationships, to the extent possible, shall be provided in the load files furnished with each production.

Filing Naming Conventions: File Naming Conventions. Each document image file shall be named with the unique Bates Number of the page of the document in the case of single-page TIFFs, followed by the extension "TIF." Each document shall be named with a unique document identifier. Attachments shall have their own unique document identifiers.

Production Media: The documents should be produced on CD-ROM, DVD, or external hard drive (with standard Windows PC compatible interface), (the "Production Media"). Each piece of Production Media shall identify a production number corresponding to the production "wave" the documents on the Production Media are associated with (e.g., "V001," "V002"), as well as the volume of the material in that production wave (e.g., "-001," "-002"). For example, if the first production wave comprises document images on three hard drives, the Respondent shall label each hard drive in the following manner: "V001-001," "V001-002," "V001-003." Additional information that shall be identified on the physical Production Media shall include: (1) text referencing that it was produced in [Case Docket No.], (2) the producing party's name, (3) the production date, and (4) the Bates Number range of the materials contained on the Production Media.

Objective Coding/Extracted Meta Data: Respondent shall produce with each production of documents with extracted metadata for each document (the "Objective Coding") included in the load file. The data file shall include the following fields and type of content: the date the document was created; the filename or, for emails, the "Subject" line and the individuals or entities listed in the "To" "From" "CC" and "BCC" fields. Objective Coding shall be labeled and produced on Production Media in accordance with the provisions set forth above.

Native format for Excel and databases: Respondent shall produce with each production of documents with extracted metadata for each document (the "Objective Coding") included in the load file. The data file shall include the fields and type of content set forth in the SPECIAL INSTRUCTIONS FOR ELECTRONICALLY STORED MATERIAL section. Objective Coding shall be labeled and produced on Production Media in accordance with the provisions set forth above.

4. Documents that are in paper form or that constitute other physical objects from which recorded information may be visually read, as well as audio or video tapes or text messages and similar recordings, should be produced in their original form or in copies that are exact duplicates of the originals. Computer files and similar electronic records should be produced in a readable form.

5. Please produce password-protected Documents with any applicable passwords.

6. Should You consider any of the documents requested to be confidential such that they should not be generally disseminated to the public or released to the press, please designate those documents as such under the operative Protective Order(s) in this case. Copies of the relevant Protective Orders in effect in this litigation are attached.

7. For any data provided, all relevant characteristics/fields and codes should be

produced, along with data dictionaries.

8.      Except as otherwise specified, the timeframe for these requests is January 1, 1996 through the present.[2]

## DOCUMENTS TO BE PRODUCED

1.      All Documents reflecting the structure and operation of the Coalition, including but not limited to organizational charts and all Documents discussing the operation of Coalition's Executive Board, initiatives, and programs.

2.      All Documents identifying members of the Coalition, how or why the members were selected for service, and the application process for members of the Governor's Council.

3.      All Documents reflecting the finances of the Coalition, including but not limited to budgets, expense reports, and Documents concerning the Coalition's funding.

4.      All Documents concerning and/or relating to the creation of the Coalition.

5.      All Documents constituting or reflecting guidance, publications, notices, or other Communications from the Coalition regarding Prescription Opioids. This includes but is not limited to all Documents relating to the Coalition's recommendations to the West Virginia legislature pursuant to West Virginia Code § 16-52-4, including but not limited to guidance on potential statutory solutions relative to regulation of chronic pain medications; guidance to enhance the provider patient relationship in the effective treatment and management of chronic pain; recommendations regarding regulations of wholesalers of controlled substances or terminal distributors of dangerous drugs; insight into whether "take back" programs or limitations on prescriber furnished controlled substances would be effective in West Virginia; conclusions and recommendations to promote a better means for regulation of chronic pain clinics while protecting the rights and needs of chronic pain patients; recommendations for statutory and regulatory modifications; and identification of any action which may be taken by the Legislature to better foster a balance between the clinical judgment of prescribers and the needs of chronic pain patients and the state interest in maintaining an effective regulatory structure.

6.      All minutes, agendas, notes and other records, including audio and/or visual recordings, of or from any public or non-public meeting of the Coalition, including any committees or subcommittees thereof, concerning Prescription Opioids. This includes but is not limited to all records of the Coalition's quarterly meetings pursuant to West Virginia Code § 16-52-4.

7.      All Documents reflecting or referring to reports, inquiries, or complaints received from any government officials of the City of Huntington, Cabell County, or any town, village, or

---

[2] Should the Court issue a ruling establishing a different time period for discovery, Defendants will revise the Relevant Time Period accordingly.

4

city within Cabell County, regarding suspicious order reports, or suspected or actual diversion or misuse of Prescription Opioids by pharmacists, pharmacy interns, doctors, other prescribers or dispensers, or patients.

8. Coalition files and records relating to diversion or misuse of Prescription Opioids, including but not limited to the following:

   a. Correspondence related to potential or actual diversion, overprescribing, or misuse of Prescription Opioids;

   b. Correspondence related to the consequences of potential or actual diversion, overprescribing, or misuse of Prescription Opioids

   c. Correspondence from or to the DEA or any other federal agency, any West Virginia state officer or agency, or any official of any West Virginia county or municipality relating to the diversion, overprescribing, or misuse of Prescription Opioids;

   d. Correspondence and related Documents concerning suspicious activity or concerns raised about pharmacists, pharmacy interns, doctors, other prescribers or dispensers, or patients involving Prescription Opioids.

9. All Documents constituting or discussing studies, reports, investigations, or analyses regarding actual or suspected diversion, overprescription, or misuse of Prescription Opioid medications that were prepared by, received by, or participated in by the Coalition.

10. All Documents relating to the diversion, overprescription, or misuse of Prescription Opioids in West Virginia that have been produced, provided, or made public by the Coalition in response to any West Virginia Public Records Act requests; in reports or submissions to the West Virginia legislature, West Virginia Governor, or West Virginia Attorney General; in reports or submissions to any agency or official of the West Virginia state or federal government; or to any commission, task force, or other entity that was studying, investigating, or evaluating Prescription Opioid addiction or abuse.

11. All Documents reflecting or relating to problems, concerns, or harm resulting from the refusal or failure of a pharmacist, or pharmacy intern to dispense Prescription Opioids.

12. All Documents reflecting or relating to analyses by You concerning the use of Prescription Opioids to treat chronic pain, including the creation of prescribing guidelines or any revisions thereto.

13. All Documents reflecting or relating to Your involvement in drafting, amending, assessing, introducing, lobbying for or against, implementing, administering, enforcing, and/or monitoring or analyzing compliance with or the effect of legislation, statutes, rules, regulations, or guidelines relating to Prescription Opioids or Illicit Opioids, including but not limited to the Intractable Pain Act (West Virginia Code § 30-3A-1 et seq.), Senate Bill 437 (2012) (amending several articles of West Virginia Code related to the Controlled Substance Monitoring Program

database), Senate Bill 339 (2017) (West Virginia Code § 16-52-1 et seq.) (creating the Coalition for Responsible Chronic Pain Management), and the Opioid Reduction Act (West Virginia Code § 16-54-1 et seq.).

14. All Documents reflecting or relating to contacts, requests, inquiries, meetings, or other Communications between any official, lawyer, or other representative of the City of Huntington, Cabell County, or any town, city, or village existing in Cabell County, and the Governor's Council regarding Prescription Opioid addiction, abuse, or overdoses in their respective geographic areas.

15. All Documents referring or relating to any Defendant, including but not limited to all Communications between You and any Defendant.

16. All Documents reflecting or relating to Your identification of the opioid abuse epidemic in West Virginia (including but not limited to in Cabell County, the City of Huntington, or any town, city, or village existing in Cabell County).

17. All Documents reflecting or relating to any investigation or identification by You or on Your behalf of activities of Defendants, including distribution of controlled substances, as a potential cause of the opioid abuse epidemic in West Virginia (including but not limited to in Cabell County, the City of Huntington, or any town, city, or village existing in Cabell County).

18. All Documents reflecting or relating to any investigation or identification by You or on Your behalf of factors other than the activities of Defendants that caused or contributed to the opioid abuse epidemic in West Virginia (including but not limited to in Cabell County, the City of Huntington, or any town, city, or village existing in Cabell County).

19. All Documents reflecting or relating to presentations, lectures, seminars, workshops, symposia, or other similar educational programs made or sponsored by Your or on Your behalf related to the opioid abuse epidemic, including all data and source materials used to create the content therein.

20. All Documents discussing, referring, or relating to Your efforts to facilitate intelligence sharing and promote coordinated strategies to combat the use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, and/or trafficking of Prescription or Illicit Opioids in West Virginia (including but not limited to in Cabell County, the City of Huntington, or any town, city, or village existing in Cabell County).

21. All Documents containing data relating to Your monitoring or assessment of the opioid abuse epidemic in West Virginia, including but not limited to health outcomes (e.g. overdoses, deaths), criminal statistics, funds expended to respond to the epidemic, and lost productivity related to the epidemic.

22. All Documents reflecting, summarizing, discussing, or otherwise addressing the number of prescriptions dispensed for Prescription Opioids in West Virginia (including but not limited to in Cabell County, the City of Huntington, or any town, city, or village existing in Cabell County).

23. All Documents relating to the Coalition's efforts to assess or track the illegal entry, distribution, or use of opioids, including Illicit Opioids, or stolen Prescription Opioids, in West Virginia (including but not limited to in Cabell County, the City of Huntington, or any town, city, or village existing in Cabell County).

24. All Documents discussing or identifying the source(s) of Illicit Opioids consumed in West Virginia (including but not limited to in Cabell County, the City of Huntington, or any town, city, or village existing in Cabell County), including but not limited to all Documents identifying China, Mexico, or other actors as responsible for transporting Illicit Opioids

25. All Documents reflecting or referring to discussions, conclusions, or speculation of or to the Governor's Council about when, where, and by whom Prescription Opioids were diverted from duly licensed and DEA registered entities to non-licensed and non-registered entities who misused, abused, or illegally transferred them.

26. All Documents relating to the legitimate need for and/or use of Prescription Opioids, including studies, reports, investigations, or analyses regarding the benefits and/or medical uses of prescription opioid medications that were prepared by, received by, or participated in by the Coalition.

27. All Documents relating to comments, complaints, or inquiries by members of the general public concerning the abuse, use, misuse, prescribing, dispensing, sale, distribution, addiction to, illegal sale, and/or diversion of Prescription Opioids or Illicit Opioids.

28. All Documents that state, discuss, reflect, or suggest recommendations for actions to be taken by You or any federal, state, or local agency in West Virginia (including but not limited to in Cabell County, the City of Huntington, or any town, city, or village existing in Cabell County), to combat the use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, and/or trafficking of Prescription or Illicit Opioids, or to provide treatment for residents who suffer from substance use disorder.

29. All Documents and communications identifying, discussing, describing, or otherwise relating to the circumstances in which Prescription Opioid use is or is not medically necessary, reasonably required, or otherwise appropriate for the treatment of pain, whether chronic or non-chronic.

30. All Documents containing data or analysis relating to the number or opioid users, opioid addicts, and/or opioid overdoses in West Virginia (including but not limited to in Cabell County, the City of Huntington, or any town, city, or village existing in Cabell County), including those users, addicts, or overdoses that resulted from addiction after use of Prescription Opioids.

31. All Documents containing data or analysis relating to individuals who obtained Prescription Opioids in West Virginia through illegal or improper means.

32. All Documents concerning this civil action (captioned above) or any other lawsuit (regardless of whether criminal or civil, and regardless of whether brought or pending in state or

federal court in the United States) relating to the diversion, overprescribing, or misuse of Prescription Opioids.

33. All Documents reflecting or relating to the creation of, or revisions to, policies governing the availability of Prescription Opioids to Your employees, workers compensation participants, and/or other public assistance program participants, including formulary decisions related to same.

34. All Documents related to third-party consultants or advisors engaged by You in relation to the abuse, use, misuse, prescribing, dispensing, sale, distribution, addiction to, illegal sale, and/or diversion of Prescription Opioids or Illicit Opioids.

35. All Communications between You and any person or entity that are responsive to any request listed above (No. 1 through 34), including but not limited to all Communications regarding Illicit Opioids, Prescription Opioids, diversion, and the opioid epidemic.