AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of West Virginia

| | |
|---|---|
| City of Huntington; Cabell County Commission <br> *Plaintiff* <br> v. <br> AmerisourceBergen Drug Corporation, et al. <br> *Defendant* | ) ) ) ) Civil Action No. 3:17-01362; 3:17-01665 ) ) ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: West Virginia Board of Pharmacy,
2310 Kanawha Blvd., E., Charleston, WV 25311

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:
All documents, communications, and electronically stored information identified and described in Attachment A to this subpoena.

| Place: Carey, Scott, Douglas & Kessler, PLLC <br> 901 Chase Tower, 707 Virginia Street, East <br> Charleston, WV 25323 | Date and Time: <br> 03/18/2020 1:30 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 3/03/2020

*CLERK OF COURT*

OR  /s/ signature

_____    _____
*Signature of Clerk or Deputy Clerk*    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____, who issues or requests this subpoena, are:
Cardinal Health, Inc.
Michael W. Carey, David R. Pogue, mwcarey@csdlawfirm.com, drpogue@csdlawfirm.com, 304-345-1234

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
 (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
 (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
  (i) is a party or a party's officer; or
  (ii) is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
 (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
 (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
 (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
 (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
 (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  (i) fails to allow a reasonable time to comply;
  (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
  (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  (iv) subjects a person to undue burden.
 (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  (i) disclosing a trade secret or other confidential research, development, or commercial information; or
  (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
 (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
 (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
 (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
 (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
 (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
 (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  (i) expressly make the claim; and
  (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
 (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Cardinal Health, Inc. hereby serves the following Requests for Production of Documents on the West Virginia Board of Pharmacy.

## DEFINITIONS

The following terms shall have the meanings set forth below. Notwithstanding any definition set forth below, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Rules of Procedure for the Southern District of West Virginia.

1. "You" and "Your" refers to the West Virginia Board of Pharmacy ("WVBOP"), and all others acting or purporting to act on WVBOP's behalf, including any affiliates, programs, employees, directors, agents, contractors, representatives, board members, committees, subcommittees, working groups, and task forces.

2. "Communication" has the full meaning ascribed to it by Local Rule of Civil Procedure 26.2(c)(1), and means any transmission of information (whether formal or informal) by one or more Persons and/or between two or more Persons by means including, but not limited to, telephone conversations, letters, faxes, electronic mail, text messages, instant messages, other computer linkups, written memoranda, and face-to-face conversations.

3. "Document" has the full meaning ascribed to it by Federal Rule of Civil Procedure 34(a) and Local Rule of Civil Procedure 26.2(c)(2), and means the complete original (or complete copy where the original is unavailable) and each non-identical copy (where different from the original because of notes made on the copy or otherwise) of any writing or record, including, but not limited to, all written, typewritten, handwritten, printed, or graphic matter of any kind or nature, however produced or reproduced, any form of collected data for use with electronic data processing equipment, and any mechanical or electronic visual or sound recordings or text messages in WVBOP's possession, custody, or control. "Documents" include, but are not limited to, books, papers, contracts, memoranda, invoices, correspondence, notes, studies, reports, manuals, photographs, drawings, charts, graphs, data compilations, other writings, microfilm, microfiche, audio recordings, video recordings, electronic mail, and any other information stored in electronic form, and each different version or copy of each Document, including, but not limited to, drafts.

4. "Plaintiffs" means, collectively, the plaintiffs named in *City of Huntington v. AmerisourceBergen Drug Corp., et al.*, Civil Action No. 3:17-01362, and *Cabell County Commission v. AmerisourceBergen Drug Corp., et al.*, Civil Action No. 3:17-01665, the City of Huntington and Cabell County, including but not limited to its executive and legislative branches, agencies, offices, departments, divisions, commissions, committees,

1

subcommittees, boards, directors, administrators, employees, agents, contractors, vendors, instrumentalities, representatives, counsel, and all persons and entities acting or purporting to act under their control or on their behalf.

5. "Defendants" means, collectively, AmerisourceBergen Drug Corporation; Cardinal Health, Inc.; and McKesson Corporation, the named defendants in *City of Huntington v. AmerisourceBergen Drug Corp., et al.*, Civil Action No. 3:17-01362, and *Cabell County Commission v. AmerisourceBergen Drug Corp., et al.*, Civil Action No. 3:17-01665, as of the date of this notice, and their present or former officers, directors, shareholders, employees, agents, representatives, counsel and all persons and entities acting or purporting to act under their control or on their behalf.

6. "Person" has the full meaning ascribed to it by Local Rule of Civil Procedure 26.2(c)(6), and means any natural person or any business, legal or governmental entity or association.

7. "Prescription Opioids" means FDA-approved pain-reducing medications that consist of natural, synthetic, or semisynthetic chemicals that bind to opioid receptors in the brain or body to produce an analgesic effect, including but not limited to prescription medications containing hydrocodone, oxycodone, fentanyl, and hydromorphone, that may be obtained by patients only through prescriptions written by duly licensed and DEA registered prescribers.

8. "Illicit Opioids" means substances comprised of or containing natural, synthetic, or semisynthetic chemicals that bind to opioid receptors in the brain or body that are not approved by FDA, including but not limited to heroin, fentanyl, carfentanil, other fentanyl-type analogs, and counterfeit opioid medications.

9. "Including" or "Includes" means "including, but not limited to" or "including without limitation."

10. "Relating to," "Referring to," or "Concerning," when referring to any given subject matter, means any Document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, mentions, alludes to, refers directly or indirectly to the particular subject matter identified.

11. "ARCOS Data" means data reported by DEA Registrants pursuant to 21 U.S.C. § 827 through the Automation of Reports and Consolidated Orders System.

12. "Suspicious Order Report(s)" means a report filed by DEA Registrants pursuant to 21 C.F.R. § 1301.74(b) and/or W.Va. C.S.R. § 15-2-5.3, including previous codifications, such as W.Va. C.S. R. § 15-2-4.4.

13. "Licensed Medical Professional" means any individual subject to a licensing requirement managed or implemented by the West Virginia Board of Pharmacy.

14. The words "and" as well as "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of these requests any information that might otherwise be construed as falling outside the scope of these requests.

15. Words used in the singular shall, when the context permits, be deemed to include the plural, and words used in the plural shall, when the context permits, be deemed to include the singular. The masculine gender shall, when the context permits, be deemed to include the feminine or neuter genders.

## INSTRUCTIONS

Unless otherwise agreed in writing, all Documents are to be produced to the attention of Michael W. Carey and David R. Pogue, Carey, Scott, Douglas & Kessler, PLLC, 901 Chase Tower, 707 Virginia Street, East, Charleston, WV 25323.

1. Each page of every Document must be marked with a unique identifier or "Bates stamp."

2. Requested format for documents produced electronically in response to this Request:

    Form: Documents produced in response to this Request should be provided as a Group 4 compression single-page "TIFF" image that reflects how the source would have appeared if printed out to a printer attached to a computer viewing the file. Extracted text will be included in the manner provided herein. To the extent that extracted text does not exist, these images will be processed through Optical Character Recognition ("OCR") so that they are fully searchable. Extracted text and OCR should be provided in separate document level text files. "Load files" shall be produced to accompany the images and shall facilitate the use of the litigation support database systems to review the produced images.

    Document Unitization: Each page of a document shall be electronically converted into an image as described above. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating the image file and appropriately designated in the load files. The corresponding parent/attachment relationships, to the extent possible, shall be provided in the load files furnished with each production.

    Filing Naming Conventions: File Naming Conventions. Each document image file shall be named with the unique Bates Number of the page of the document in the case of single-page TIFFs, followed by the extension "TIF." Each document shall be named with a unique document identifier. Attachments shall have their own unique document identifiers.

    Production Media: The documents should be produced on CD-ROM, DVD, or external hard drive (with standard Windows PC compatible interface), (the "Production Media"). Each piece of Production Media shall identify a production number corresponding to the

production "wave" the documents on the Production Media are associated with (e.g., "V001," "V002"), as well as the volume of the material in that production wave (e.g., "-001," "-002"). For example, if the first production wave comprises document images on three hard drives, the Respondent shall label each hard drive in the following manner: "V001-001," "V001-002," "V001-003." Additional information that shall be identified on the physical Production Media shall include: (1) text referencing that it was produced in [Case Docket No.], (2) the producing party's name, (3) the production date, and (4) the Bates Number range of the materials contained on the Production Media.

Objective Coding/Extracted Meta Data: Respondent shall produce with each production of documents with extracted metadata for each document (the "Objective Coding") included in the load file. The data file shall include the following fields and type of content: the date the document was created; the filename or, for emails, the "Subject" line and the individuals or entities listed in the "To" "From" "CC" and "BCC" fields. Objective Coding shall be labeled and produced on Production Media in accordance with the provisions set forth above.

Native format for Excel and databases: Respondent shall produce with each production of documents with extracted metadata for each document (the "Objective Coding") included in the load file. The data file shall include the fields and type of content set forth in the SPECIAL INSTRUCTIONS FOR ELECTRONICALLY STORED MATERIAL section. Objective Coding shall be labeled and produced on Production Media in accordance with the provisions set forth above.

3. Documents that are in paper form or that constitute other physical objects from which recorded information may be visually read, as well as audio or video tapes or text messages and similar recordings, should be produced in their original form or in copies that are exact duplicates of the originals. Computer files and similar electronic records should be produced in a readable form.

4. Please produce password-protected Documents with any applicable passwords.

5. Should You consider any of the documents requested to be confidential such that they should not be generally disseminated to the public or released to the press, please designate those documents as such under the operative Protective Order(s) in this case. Copies of the relevant Protective Orders in effect in this litigation are attached.

6. For any data provided, all relevant characteristics/fields and codes should be produced, along with data dictionaries.

7. Except as otherwise specified, the timeframe for these requests is January 1, 1996 through the present.[1]

---

[1] Should the Court issue a ruling establishing a different time period for discovery, Defendants will revise the Relevant Time Period accordingly.

4

## DOCUMENTS TO BE PRODUCED

1. All Documents and Communications discussing, referring, or relating to actual or suspected diversion of Prescription Opioids from a legitimate medical purpose, or dispensing of Prescription Opioids for other than a legitimate medical purpose, including, but not limited to, the number of pills or other dosage units of diverted or improperly dispensed Prescription Opioids, and healthcare professionals (including pharmacists, pharmacy technicians, or pharmacies) involved in diversion.

2. All Documents and Communications discussing, referring, or relating to Your or Plaintiffs' knowledge or investigation of the prescribing, dispensing, use, misuse, abuse, sale diversion, production, transportation, distribution, purchase, theft, or trafficking of Prescription Opioids or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

3. All Documents and Communications discussing, referring, or relating to Your or Plaintiffs' understanding of the "opioid epidemic" in the City of Huntington, Cabell County, or any town, village, or city within Cabell County, the point in time in which You identified the "opioid epidemic," any investigation regarding the cause of the "opioid epidemic," and any programs, initiatives, training, or continuing education You have developed in response to the "opioid epidemic."

4. All Documents and Communications discussing, referring, or relating to any Prescription Opioids that You believe, suspect, or contend were diverted within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

5. All Documents and Communications discussing, referring, or relating to the volume of Prescription Opioids prescribed, dispensed, sold, distributed, diverted, or used within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

6. All Documents and Communications discussing, referring, or relating to any prescriptions for Prescription Opioids that You or Plaintiffs believe, suspect, or contend were forged or improperly altered in the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

7. All Documents and Communications discussing, referring, or relating to allegedly suspicious orders or other improper or wrongful actions by distributors, prescribers, pharmacies, or other healthcare providers related to Prescription Opioids.

8. All Documents and Communications identifying, discussing, or relating to "pill mills" or "pill mill" prescribers or dispensers in the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

9. All Documents and Communications discussing, referring, or relating to Your or Plaintiffs' use of the West Virginia Board of Pharmacy Controlled Substance Monitoring

Program to track shipments of, prescriptions for, and/or sales of Prescription Opioids, including, but not limited to, (a) Your management and use of the Controlled Substance Automated Prescription Program database to combat the unlawful prescribing, dispensing, use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, or trafficking of Prescription Opioids or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County, and (b) actions Your or Plaintiffs took, or considered taking, based on information You received from the West Virginia Board of Pharmacy Controlled Substance Monitoring Program.

10. All Documents constituting or describing Your use, review, or analysis of data or other information from the West Virginia Board of Pharmacy Controlled Substance Monitoring Program as part of the process of licensing, investigating, or disciplining any Licensed Medical Professional.

11. All Documents discussing, referring, or relating to Your use of the West Virginia Board of Pharmacy Controlled Substance Monitoring Program to identify and investigate Licensed Medical Professionals who were prescribing or dispensing high volumes of Prescription Opioids.

12. All data in the West Virginia Board of Pharmacy Controlled Substance Monitoring Program relating to the prescribing, dispensing, use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, or trafficking of Prescription Opioids or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

13. All Documents and Communications discussing, referring, or relating to any proposed or enacted legislation or rules regarding the West Virginia Board of Pharmacy Controlled Substance Monitoring Program, including but limited to any references to Senate Bills 437 (2012) and 339 (2017), West Virginia Code §§ 60A-9-5a, 16-5H-4(7), and 16-54-1 et seq., and including Documents and Communications related to whether pharmacists, prescribers, and dispensers should be required to check a patient's West Virginia Board of Pharmacy Controlled Substance Monitoring Program or Controlled Substance Automated Prescription Program history before dispensing or prescribing Prescription Opioids.

14. All Documents and Communications discussing, referring, or relating to any proposed or enacted legislation or rules regarding the West Virginia Board of Pharmacy's enforcement of proper prescribing and dispensing practices related to Prescription Opioids.

15. All Documents and Communications discussing, referring, or relating to the standard of care for prescribing and dispensing Prescription Opioids.

16. All Investigation files for any physician, other healthcare provider, pharmacist, and pharmacy who, based on information reasonably available to You, has been the target of an investigation You conducted concerning a prescriber, pharmacist, pharmacy, or other

6

healthcare provider's improper prescribing or dispensing of Prescription Opioids, including the reason for initiation, organization, handling, and resolution of such investigation.

17. All Documents and Communications discussing, referring, or relating to any alleged or actual Prescription Opioid-related violation of state or federal law or regulation, including, but not limited to, 21 CFR § 1306.04, W.Va. C.S.R. § 15-1, related to any pharmacy, medical doctor, physician assistant, pharmacist, pharmacy technician, healthcare provider, or other person or entity in the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

18. All Documents and Communications discussing, referring, or relating to any request or receipt of information by You or Plaintiffs to or from any local, state, or federal official or agency—including the United States Department of Justice, the United States Drug Enforcement Administration ("DEA"), any United States Attorney's Office, the West Virginia Department of Military Affairs and Public Safety, or the West Virginia Attorney General's Office—regarding diversion of Prescription Opioids, suspicious orders, improper prescriptions, improper dispensing, or individuals responsible for diversion of Prescription Opioids.

19. All Documents and Communications discussing, referring, or relating to Your or Plaintiffs' efforts, including, but not limited to, any initiatives, programs or task forces that You or Plaintiffs may have developed or collaborated with, to combat the unlawful prescribing, dispensing, use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, theft, and trafficking of Prescription Opioids or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

20. All Documents and Communications discussing, referring, or relating to recommendations for actions to be taken by You or Plaintiffs to combat the unlawful prescribing, dispensing, use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, or trafficking of Prescription Opioids or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

21. All Documents and Communications discussing, referring, or relating to WVBOP meeting minutes, including but not limited to, any meetings of any board, committee, or subcommittee, including the Board of the WVBOP, in which the prescribing, dispensing, use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, or trafficking of Prescription Opioids or Illicit Opioids within or into the State of West Virginia were discussed.

22. All Documents identifying members of the Board of the WVBOP, how or why the members were selected for service, and the application process for members of the Board of the WVBOP.

23. All Documents and Communications discussing, referring, or relating to any guidance, continuing education, training, presentations, policies, procedures, or resources that You provide to registrants regarding Prescription Opioids, including, but not limited to, factors that Licensed Medical Professionals must or may consider in making the decision as to whether or not to dispense a Prescription Opioid to a particular patient and, if so, in what dosage and over what time period.

24. All Documents and Communications discussing, referring, or relating to the responsibilities and obligations of Licensed Medical Professionals in connection with dispensing Prescription Opioids.

25. All Documents and Communications discussing, referring, or relating to materials or publications that You or Plaintiffs created or caused to be created concerning the use, coverage, and benefits of Prescription Opioids for the treatment of pain, including to prescribers, pharmacists, pharmacies and other health care professionals.

26. All Documents and Communications discussing, reflecting, or referring to the legitimate need for or use of prescription opioids—meaning any need for and/or use of Prescription Opioids that You do not contend would be unlawful or harmful—and the responsibilities and obligations of pharmacists, pharmacies or other healthcare providers to treat pain patients, including studies, reports, investigations, or analyses regarding the benefits and/or medical uses of prescription opioid medications that were prepared by, received by, or participated in by the WVBOP.

27. All Documents and Communications constituting or relating to Communications with workers' compensation providers, insurance providers, and providers of Medicare and/or Medicaid, and all agents and employees thereof, relating to Prescription Opioids, including all Documents reflecting or relating to the creation of, or revisions to, policies governing the availability of Prescription Opioids to Your employees, workers' compensation participants, and/or other public assistance program participants, such as formulary decisions related to same.

28. All Documents and Communications discussing, referring, or relating to any contacts, requests, inquiries, meetings, subpoenas, Freedom of Information Act requests, Open Records Act requests, West Virginia Freedom of Information Act requests, complaints, or any other communications or requests issued to You by the City of Huntington, Cabell County, or any town, village, or city within Cabell County, or any attorney, employee, representative, or agent of any of the following law firms:

    a. Greene, Ketchum, Farrell, Bailey & Tweel LLP
    b. McHugh Fuller Law Group
    c. Levin Papantonio
    d. Baron & Budd

29. Copies of all Documents and Communications produced in response to any subpoenas, Freedom of Information Act requests, Open Records Act requests, West Virginia

8

Freedom of Information Act requests, or any similar document requests referenced in Request No. 28 above.

30. All Documents and Communications discussing, referring, or relating to Your or Plaintiffs' efforts to suspend, revoke, or seek the suspension or revocation of registrations or licenses of, or fine or otherwise sanction manufacturers, distributors, pharmacies, pharmacists, healthcare providers, or other DEA registrants because of alleged diversion of Prescription Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

31. All Documents and Communications constituting or describing Your procedures, policies, or protocols related to Your receipt, review, analysis, investigation, and processing of license applications for any pharmacist or pharmacy legally able to prescribe and dispense Prescription Opioids, whether a first application or a renewal application.

32. All Documents and Communications constituting or describing any instance in which You denied a license application or declined to renew a license on the basis of any information, concern, investigation, report, allegation or finding related to the applicant's practice of selling, giving away, personally furnishing, prescribing, administering, dispensing, or abusing Prescription Opioids or other DEA-controlled substances for other than legal and legitimate medical purposes.

33. All Documents and Communications constituting or describing any instance in which You granted a license application or renewed a license after receipt of a complaint or after other awareness, investigation, knowledge, reporting, allegation or suspicion that the applicant has sold, given away, personally furnished, prescribed, administered, misused, or abused Prescription Opioids or other DEA-controlled substances for other than legal and legitimate medical purposes.

34. All Documents and Communications constituting or describing complaints made to You relating to any misuse or abuse of Prescription Opioids or other DEA-controlled substances, including the receipt, organization, analysis, investigation, handling, and resolution of all such complaints.

35. All Documents and Communications constituting or describing Your procedures, policies, or protocols regarding licensing denials, revocations, disciplinary sanctions or other actions against any pharmacist, pharmacy or other healthcare provider determined by You to have engaged in improper prescription or dispensing of Prescription Opioids.

36. All Documents and Communications constituting or describing every instance in which You have disciplined or declined to discipline any pharmacist, pharmacy or other healthcare provider in connection with inappropriate prescribing or dispensing of Prescription Opioids, or after investigation of any use, misuse, abuse, or diversion of

9

Prescription or Illicit Opioids, including all documents constituting or describing the reason for Your decision not to pursue disciplinary action.

37. All Documents constituting or discussing studies, reports, investigations, or analyses regarding actual or suspected diversion, overprescription, or misuse of Prescription Opioid medications that were prepared by, received by, or participated in by the WVBOP.

38. All Documents and Communications discussing, referring, or relating to procedures or efforts made by You or Plaintiffs to identify any pharmacist, pharmacy, or other healthcare provider who might be diverting Prescription Opioids into or out of the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

39. All Documents and Communications discussing, referring, or relating to any Defendant, including but not limited to all Communications between You and any Defendant, all Documents relating to Your licensing of each Defendant, and all Documents reflecting any visits to any of Defendant's facilities.

40. All Suspicious Order Reports received by the WVBOP.

41. All Documents and Communications concerning the meaning of the term "suspicious orders" and "Suspicious Order Reports" in connection with orders for controlled substances, including but not limited to all Documents reflecting the WVBOP's position regarding the meaning of "suspicious orders" and "Suspicious Order Reports." This request includes all Documents and Communications reflecting or relating to WVBOP's standard operating procedures, guidance memos, protocols, and other such instructions regarding its administration and implementation of any requirement that wholesale drug distributors report suspicious orders to the WVBOP.

42. All Documents and Communications constituting or describing the WVBOP's procedures, policies, and protocols regarding its receipt, storage, maintenance, retention, organization, analysis, utilization, investigation, and handling of Suspicious Order Reports and its approach in investigating, sharing, or in any way responding to or using such Suspicious Order Reports.

43. All Documents and Communications constituting or describing the WVBOP's procedures, policies, and protocols regarding its receipt, storage, maintenance, retention, organization, analysis, utilization, investigation, and handling of the information required to be submitted to it by wholesale drug distributors.

44. All Documents and Communications discussing, referring, or relating to efforts made by the WVBOP to access, analyze, or utilize ARCOS Data, Suspicious Order Reports, and West Virginia Controlled Substance Automated Prescription Program data to combat the

diversion or misuse of Prescription Opioids in the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

45. All Documents, Communications, and data referring, tracking, or relating to any arrests, investigations, and indictments for crimes relating to the unlawful use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, and/or trafficking of Prescription or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

46. All Documents and Communications identifying, discussing, referring, or relating to the individuals or entities You suspect or know have unlawfully produced, transported, diverted, sold, and/or trafficked Prescription or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

47. All Documents and Communications discussing or identifying the source(s) of Illicit Opioids consumed in the City of Huntington, Cabell County, or any town, village, or city within Cabell County, including but not limited to all Documents identifying entities in China, Mexico, or other actors as responsible for transporting Illicit Opioids.

48. All Documents reflecting or relating to enforcement actions (including but not limited to fines, suspensions, revocations, and letters or other formal warnings or notices) taken by You against any licensee relating to diversion or misuse of Prescription Opioids.

49. All Documents and Communications discussing, referring, or relating to Your efforts to facilitate intelligence sharing and promote coordinated strategies to combat the use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, and/or trafficking of Prescription or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

50. All Documents and Communications that state, discuss, reflect, or suggest recommendations for actions to be taken by You or any federal, state, or local agency within the City of Huntington, Cabell County, or any town, village, or city within Cabell County, to combat the use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, and/or trafficking of Prescription or Illicit Opioids.

51. All Documents and Communications reflecting the structure and operation of the WVBOP, including but not limited to organizational charts and all Documents discussing the operation of the WVBOP's Board, initiatives, and programs.

52. All Documents and Communications reflecting the finances of the WVBOP, including but not limited to budgets, expense reports, financial reports, and Documents concerning the WVBOP's funding.

53. All Documents and Communications concerning and/or relating to the creation of the WVBOP.

54. All Communications between You and any federal, state, or local agency (including but not limited to the West Virginia Department of Military Affairs and Public Safety, West Virginia Board of Medicine, the West Virginia Board of Osteopathic Medicine, the West Virginia Board of Dentistry, the West Virginia State Board of Examiners for Licensed Practical Nurses, the West Virginia State Board of Examiners for Registered Professional Nurses, the DEA, the Department of Justice, the FBI, other federal, state, and local law enforcement entities), regarding Illicit Opioids, Prescription Opioids, diversion, or the opioid epidemic. Included within this request are all Documents and Communications regarding efforts to combat drug-related crime, respond to the opioid epidemic, form a joint task force to combat the opioid epidemic, combat the unlawful prescribing, dispensing, use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, theft, and trafficking of Prescription Opioids or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

55. All documents that have been made public or produced by the WVBOP, including documents produced in any action (regardless of whether criminal or civil) and regardless of whether brought or pending in state or federal court in the United States), relating to the diversion, overprescribing, improper dispensing, or misuse of Prescription Opioids.

56. All Documents constituting, discussing, or summarizing reports of theft or significant loss of Prescription Opioids received by the WVBOP from wholesale drug distributors, pharmacists, pharmacy interns, or others.

57. All Documents created or received at any time by the WVBOP discussing, analyzing, or otherwise addressing the number of pills or other dosage units, or the quantity in grams or morphine equivalent units, or number of prescriptions, of or for any Prescription Opioid that was required on a daily, monthly, yearly, or other time basis to fulfill legitimate medical needs in the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

58. All Documents reflecting or relating to Your or Plaintiffs involvement in drafting, amending, assessing, introducing, lobbying for or against, implementing, administering, enforcing, and/or monitoring or analyzing compliance with or the effect of legislation, statutes, rules, regulations, or guidelines relating to Prescription Opioids or Illicit Opioids, including but not limited to the Intractable Pain Act (West Virginia Code § 30-3A-1 et seq.), Senate Bill 437 (2012) (amending several articles of West Virginia Code related to the Controlled Substance Monitoring Program database), Senate Bill 339 (2017) (West Virginia Code § 16-52-1 et seq.) (creating the Coalition for Responsible Chronic Pain Management), and the Opioid Reduction Act (West Virginia Code § 16-54-1 et seq.).

59. All Communications with pharmaceutical or drug manufacturers related to Prescription Opioids, including (a) marketing and distribution, (b) risks and benefits, (c) safety outcomes, and (d) abuse, misuse, addiction, or diversion.

60. All Documents relating to any efforts by You to reduce the number of Prescription Opioids, Illicit Opioids, or opioid prescriptions in the State of West Virginia.

61. All Documents constituting or describing data and/or analysis relating to people who obtain Prescription Opioids through illegal or improper means and/or diversion.

62. All Documents containing data or analysis relating to Prescription Opioids that were prescribed off-label or contrary to accepted medical guidelines.

63. All Documents containing data or analysis relating to adverse health outcomes (e.g., addiction, overdose, death) caused by the use of Illicit Opioids.

64. All Documents containing data or analysis relating to the abuse, misuse, or diversion of Prescription Opioids, broken down by product or chemical substance.

65. All Documents relating to the money damages and other relief (if any) You or any Plaintiffs are seeking in this action related to the services You provide or have provided in connection with the prescribing, dispensing, use, misuse, abuse, sale, diversion, production, distribution, purchase, or trafficking of Prescription Opioids or Illicit Opioids.

66. All Communications between You and any person or entity that are responsive to any request listed above (No. 1 through 65), including but not limited to all Communications regarding Illicit Opioids, Prescription Opioids, diversion, and the opioid epidemic.