# Exhibit 8

**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

STATE OF WEST VIRGINIA, ex rel,
AMERISOURCEBERGEN DRUG CORPORATION,
CARDINAL HEALTH, INC. and
McKESSON CORPORATION,

       Petitioners,

v.                                 Docket No. 19-0204

HONORABLE DAVID W. HUMMEL, JR.,
Judge of the Circuit Court of Marshall County,
West Virginia,

       Respondent.

*From the Circuit Court of Marshall County, West Virginia*
*Civil Action Nos. 17-C-248, 17-C-249, 17-C-250, 17-C-251, 17-C-252,*
*17-C-253, 17-C-254 and 17-C-255*

**RESPONSE IN OPPOSITION TO PETITION FOR WRIT OF PROHIBITION**

Clayton J. Fitzsimmons (WV Bar #10823)
Robert P. Fitzsimmons (WV Bar # 1212)
Mark A. Colantonio (WV Bar #4238)
**FITZSIMMONS LAW FIRM PLLC**
1609 Warwood Avenue
Wheeling, WV 26003

Samuel D. Madia (WV Bar # 10819)
**SHAFFER MADIA LAW PLLC**
343 West Main Street
Clarksburg, WV 26301

Paul J. Napoli (*Pro Hac Vice*)
Joseph L. Ciaccio (*Pro Hac Vice*)
**NAPOLI SHKOLNIK, LLP**
360 Lexington Avenue, 11th Floor
New York, NY 10017

Jonathan E. Turak (WV Bar # 3816)
**GOLD, KHOUREY & TURAK**
510 Tomlinson Ave.
Moundsville, WV 26041

Daniel J. Guida  (WV Bar #4604)
**GUIDA LAW OFFICE**
3374 Main St.
Weirton, WV 26062

***Counsel for Respondents, Brooke County Commission, Hancock County Commission,
Harrison County Commission, Marshall County Commission, Ohio County Commission,
Tyler County Commission and Wetzel County Commission***

{00303510-4}

## **TABLE OF CONTENTS**

I.     **INTRODUCTION**.................................................................................................... 1

II.    **QUESTIONS PRESENTED** ............................................................................... 1

III.   **STATEMENT OF THE CASE**............................................................................ 2

IV.   **SUMMARY OF ARGUMENT**............................................................................ 6

V.    **STATEMENT REGARDING ORAL ARGUMENT AND DECISION**.................... 7

VI.   **ARGUMENT**.......................................................................................................... 7

       A.    Petitioner is Not Entitled to Issuance of a Writ of Prohibition Under the Facts and Circumstances of This Case. .......................................................................7

       B.    Respondent Counties' Claims are Not Barred by Res Judicata..................................12

             i.    The Circuit Court Did Not Err in Concluding the Respondent Counties' Claims Are Not Virtually Identical to Those Asserted in the WVAG Lawsuit.............................................................................12

             ii.   The Circuit Court Did Not Err in Concluding That the State and the Respondent Counties Are Not in Privity..................................... 15

             iii.  Respondent County Commissions Are Constitutional Entities Separate from the State with Independent Powers and Duties. ...................................16

             iv.  The WVAG and the State Lack the Power to Represent the Respondent Counties...............................................................................17

             v.    The County Retains the Power to Abate Nuisances. ......................................18

             vi.  The State Does Not Have *Parens Patriae* Power to Bring the Respondent Counties' Claims.............................................................................19

             vii. The Circuit Court Did Not Err in Ruling That the Doctrine of "Virtual Representation" Does Not Apply to the Facts in This Case..........................21

       C.    The Respondent Counties' Claims Have Not Been Released. ...................................25

       D.    The Circuit Court Did Not Error in Ruling That the Respondent Counties' Claims Are Not Barred by the Statute of Limitations. ...............................................27

VII.  **CONCLUSION** ...................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**

*Ara v. Erie Ins. Co.,* 182 W.Va. 266, 387 S.E.2d. 320 (1998)..................................................... 35

*Beahm v. 7-Eleven, Inc.,* 223 W.Va. 269, 672 S.E.2d 598 (2008)......................................... passim

*Blake v. Charleston Area Medical Center, Inc.,* 201 W.Va. 469, 498 S.E.2d 41 (1997) ....... 13, 22

*Bradley v. Williams,* 195 W.Va. 180, 465 S.E.2d 180 (1995) ..................................................... 35

*Buskirk v. Judge of Circuit Court,* 7 W.Va. 91 (1873) ................................................................ 10

*City of New York v. Beretta U.S.A. Corp.,* 315 F.Supp.2d 256 (E.D. NY 2004)............................ 24

*Crawford v. Taylor,* 138 W.Va. 207, 75 S.E.2d (1953 ................................................................... 8

*Dunn v. Rockwell,* 225 W.Va. 43, 689 S.E.2d 255 (2009) ................................................. 7, 12, 33

*E.K. v. W. Virginia Dep't of Health,* No. 16-0773, 2017 WL 5153221,
at *6 (W.Va. Nov. 7, 2017) ........................................................................................................ 34

*Floyd v. Watson,* 163 W.Va. 65, 254 S.E.2d 687 (1979).............................................................. 30

*Fortuna v. Queen,* 178 W.Va. 586, 363 S.E.2d 472 (1987)........................................................... 30

*Froebel v. Meyer,* 217 F 3d 928 (7th Cir. 2000)........................................................................... 29

*Gaither v. City Hosp., Inc.,* 199 W.Va. 706, 487 S.E.2d 901 (1997) .............................. 12, 13, 34

*Galanos v. National Steel Corp,* 178 W.Va. 193, 358 S.E.2d 452 (1987) ................................... 25

*Gentry v. Farruggia,* 132 W.Va. 809, 53 S.E.2d 741 (1949) ....................................................... 27

*Graham v. Beverage,* 211 W.Va. 466, 566 S.E.2d 603 (2002)....................................................... 32

*Hannah v. Beasley,* 132 W.Va. 814, 53 S.E.2d 729 (1949)........................................................... 14

*Harnett v. Billman,* 800 F.2d 1308 (4th Cir. 1986)...................................................................... 17

*Harris Cty., Tex. v. CarMax Auto Superstores Inc.,* 177 F3d 306 (5th Cir. 1999)...................... 29

*Hinkle v. Black,* 164 W. Va. 112, 262 S.E.2d 744 (1979) ............................................................ 10

*In re Nat'l Prescription Opiate Litig.* No. 1:17-MD-2804, 2018 WL 6628898
(N.D. Ohio Dec. 19, 2018) ................................................................................................ 32, 35

*Keith v. Aldridge,* 900 F.2d 736 (4th Cir. 1990) ........................................................................ 16

*Lodge Dist. Co. v. Texaco, Inc.*, 161 W.Va. 603, 606, 245 S.E.2d 157 (1978) ........................... 9

*Martinez v. Texaco Trading & Transp., Inc.*, 353 F.3d 758 (9th Cir. 2003) ............................... 28

*Mason v. Torrellas*, 238 W.Va. 1, 792 S.E.2d 12, (2016) ......................................................... 32

*Nash County Bd. of Education v. Biltmore Co.,* 640 F.2d 484 (4th Cir. 1981) ........................... 27

*Pueschel v. United States,* 369 F.3d 345 (4th Cir. 2004) ........................................................... 31

*Satsky v. Paramount Communications, Inc.,* 7 F.3d (10th Cir. 1993) ........................................ 16

*Silva v. Stevens*, 1st Vt. 94, 589 A2d. 852 (1991) ...................................................................... 35

*State ex rel. Arrow Concrete Co. v. Hill*, 194 W. Va. 239, 460 S.E.2d 54 (1995) ........................ 9

*State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 231 W.Va. 227, 744 S.E.2d 625 (2013) .......... 20

*State ex rel. Gibson v. Hrko*, 220 W.Va. 574, 648 S.E.2d (2007) ................................................ 8

*State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d (1996) ................................... 8, 10, 11

*State ex rel. McGraw [subsequently Morrisey] v. Cardinal Health, Inc.*, No. 12-C-140
(W.Va.Cir.Ct. Boone County, filed June 26, 2012) .................................................................... 11

*State ex rel. Morrisey v. West Virginia Office of Disciplinary Counsel*, 234 W.Va. 238, 764
S.E.2d 769 (2014) ...................................................................................................................... 21

*State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977) ........................... 10

*State ex rel. Riffle v. Ranson*, 195 W.Va. 121, 128, 464 S.E.2d 763 (1995) ............................... 21

*State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 200 W.Va. 221,
488 S.E.2d 901 (1997) ............................................................................................................... 31

*State ex rel. State Auto Prop. & Cas. Ins. Co. v. Stucky*, No. 15-1178, 2016 WL 3410352,
at *(6W.Va. June 14, 2016) ....................................................................................................... 11

*State ex rel. W. Va. Nat. Auto Ins. Co. v. Bedell*, 223 W. Va. 222, 672 S.E.2d 358 (2008) ........... 8

*Trafalgar House Const., Inc., v. ZMM, Inc.*, 211 W.Va. 578, 567 S.E.2d 300 (2002) .......... 34

*West Virginia Human Rights Comm'n v. Esquire Group, Inc.*, 618 S.E.2d 463
(W. Va. 2005) ...................................................................................................................... 15, 16

*Wilfong v. Wilfong*, 156 W.Va. 754, 758-59, 197 S.E.2d (1973) ................................................ 8, 9

*Williams v. Wheeling Steel Corp.*, 266 F. Supp. 651 (N.D. W. Va. 1967) ...................................... 9

## Statutes

W. Va. Code § 60A-5-501(c) ..................................................................................................... 2

W.Va. Code § 17-16-1 ............................................................................................................... 22

W.Va. Code § 17-19-1 ............................................................................................................... 22

W.Va. Code § 17-22-22 ............................................................................................................. 22

W.Va. Code § 17-23-9 ............................................................................................................... 22

W.Va. Code § 17C-3-8 .............................................................................................................. 22

W.Va. Code § 22-13-12 ............................................................................................................. 22

W.Va. Code § 29-12A-3(e) ........................................................................................................ 19

W.Va. Code § 30-7-14 ............................................................................................................... 22

W.Va. Code § 30-7C-13 ............................................................................................................. 22

W.Va. Code § 5-3-1 ................................................................................................................... 20

W.Va. Code § 5-3-2 ................................................................................................................... 20

W.Va. Code § 61-3-47 ............................................................................................................... 22

W.Va. Code § 7-1-3kk ................................................................................................... 19, 21, 22

W.Va. Code § 7-4-3 ................................................................................................................... 20

W.Va. Code §§ 46A-7-101 .......................................................................................................... 2

W.Va. Code §§ 47-18-1 ............................................................................................................... 2

W.Va. Code §§ 7-14-1 ............................................................................................................... 19

W.Va. Code §§ 7-15-1 ............................................................................................... 19

W.Va. Code §§ 7-5-1 ................................................................................................. 19

W.Va. Code §§ 7-8-1 ................................................................................................. 19

**Constitution**

West Virginia Constitution Art. IX ......................................................................... 6, 20

West Virginia Constitution Art. IX § 11 ............................................................... 16, 18

**Rules**

W. Va. R. Civ. Pro. 19 ............................................................................................... 20

W. Va. R. Civ. Pro. 20 ............................................................................................... 19

W.Va. R. Civ. P. 12(b)(6) .......................................................................................... 13

W.Va. Rule of App. Proc. 16(a) ................................................................................. 16

W.Va. Rule of App. Proc. 18(a) ................................................................................. 12

W.Va. Rule of App. Proc. 21 ..................................................................................... 12

**Other**

800 F.2d at 1314 Restatement (Second) of Judgments § 24(2) (1982) ....................... 15

Restatement (Second) of Judgments § 26(1)(a) .................................................... 15, 26

Wright & Miller, *Federal Practice and Procedure*: Civil § 1216 (1969) ...................... 8

## I.     INTRODUCTION

Petitioner Cardinal Health, Inc., filed this *Writ of Prohibition* as an improper interlocutory appeal of a circuit court order denying its motion to dismiss and permitting the claims of the Respondent Counties to proceed. As no usurpation of power or abuse of discretion by the trial court has occurred, the Writ should be denied.

Petitioner's Writ misapplies the law of *res judicata* and asks this Court to become the trier of fact as to the application of the statute of limitations with respect to a prior settlement between Petitioner and the West Virginia Attorney General ("WVAG"). Petitioner's position is incorrect because the WVAG did not—nor could not—have brought the claims asserted here by the Respondent Counties. Thus, the principle of *res judicata* does not apply. In the WVAG's lawsuit, Petitioner unsuccessfully sought to include claims of West Virginia cities and counties in its release—but this attempt was rejected. As such, there was no release of Respondent Counties' claims, and no *res judicata*. Moreover, the Respondent Counties' claims are not barred by the statute of limitations because the opioid nuisance which the Respondent Counties seek to abate and its resulting damages are on-going and continuing, and numerous material issues of fact exist which preclude dismissal at this stage of the proceedings.

## II.     QUESTIONS PRESENTED

1.     Whether the doctrine of *res judicata* bars Respondent Counties' claims based upon a prior settlement between Petitioner and the WVAG when: the Counties were not parties to and their claims were not—nor could not—have been brought in the prior WVAG lawsuit; the Counties are not and could not have been represented by the same counsel; the Respondent

Counties did not control or participate in the prior WVAG lawsuit; and the Counties' claims were excluded from settlement of the prior WVAG lawsuit.

2.      Whether Petitioners' settlement with the WVAG released the Respondent Counties' claims when the Respondent County claims were excluded from the release and the Counties' claims were not and could not have been brought in the WVAG lawsuit.

3.      Whether the Respondent Counties' claims are barred by the statute of limitations when the alleged nuisance which the Counties seek to remedy remains unabated and is on-going and continuing and where material issues of fact exist as to each respective Counties' knowledge of Petitioner's conduct and its connection with the opioid crisis.

### III.    STATEMENT OF THE CASE

The June 26, 2012 lawsuit filed in Boone County, West Virginia, by the West Virginia Attorney General's office against Petitioner (hereinafter "the WVAG lawsuit") was brought to prosecute separate and distinct claims from those which are being asserted by the Respondent Counties in this case. The Complaint in the WVAG lawsuit clearly laid out the distinct authority of the Attorney General to bring the action pursuant to W.Va. Code § 60A-5-501(c), which the Attorney General alleged invests it "with the duty and the authority to assist in the enforcement of the provisions of the Uniform Controlled Substances Act" and W.Va. Code §§ 46A-7-101, *et seq.*, and 47-18-1, *et seq.*, which invests it "with the authority to sue for violations of the West Virginia Consumer Protection Act and the West Virginia Antitrust Act to recover civil penalties and to seek other remedies for violation of said statutes." [APP0411].

A review of the Complaint filed in the WVAG lawsuit confirms that the State was litigating its case and not the Respondent Counties claims:

- "This Defendant has by its acts and omissions proximately caused and substantially contributed to damages to the State of West Virginia…" (Count II - Damages Resulting from Negligence and Violations of the West Virginia Uniform Controlled Substances Act);

- "As a result of the Defendant's actions and omissions Plaintiff has sustained damages…" (Count III – Violations of the West Virginia Consumer Credit and Protection Act (WVCCPA));

- "The State of West Virginia has sustained economic harm and will in the future suffer economic harm unless the above-described public nuisance is abated." (Count IV – Creating a Public Nuisance);

- "The unjust enrichment of the Defendant is directly related to the damage, loss and detriment to the Plaintiff State of West Virginia." (Count V – Unjust Enrichment); and

- "…Defendant and its agents have caused the State to incur excessive prescription costs…in that many of the citizens of West Virginia are Medicaid or publicly-funded health care recipients…" (Count VI – Negligence).

[APP0419, APP0421, APP0423, APP0424, APP0425].

In late 2016, the WVAG and Petitioner negotiated a settlement of the WVAG lawsuit. On December 27, 2016 the court presiding over the WVAG lawsuit ordered the parties to finalize and publicly disclose the terms of the settlement.[1] On January 9, 2017, the court entered the dismissal order, and the parties' *Final Settlement Agreement and Release* was filed the next day (hereinafter "the Release"). [APP0755 at Docket Entries 244 and 245].

While the parties were drafting the settlement documents, Petitioner and the other settling defendants in the WVAG's lawsuit, proposed to include language that would attempt to release from the WVAG lawsuit claims of West Virginia cities and counties.[2] However, their attempts were not successful.

---

1 *See* Respondent Counties' Supplemental Appendix [APP0750-0755] which was filed in the Circuit Court As Exhibit 1 to Respondent Counties' *Memorandum in Opposition to Petitioner's Motion to Dismiss*.

2 *See* Respondent Counties' Supplemental Appendix, which contains a December 29, 2016 email and attachments including the proposed Release from Petitioner's attorney Tostado. These documents were filed in the Circuit Court

Petitioner also sought a number of provisions in the release which attempted to expand the scope of claims and persons released. [APP0757-0784]. Petitioner's proposed language was largely rejected, and Petitioner proceeded to settle without securing language that attempted to release the claims of West Virginia's cities, counties and citizens.[3] The Release as finally executed contains the following limited definition of "Releasors":

> [T]he State, through its Attorney General, on its own behalf and on behalf of its departments, agencies, divisions, boards, commissions, and instrumentalities of any kind, and any person in their official capacity elected or appointed to serve the State, its attorneys, and by any agency, person, or other entity claiming by or through them or any of them ….

[APP0681].

Petitioners' proposal to add the inclusion of "subdivisions, political subdivisions (as that term is defined Chapters 5 and 29 of the West Virginia Code)" into the above definition was rejected. [APP0760].

With respect to the claims, the Release purports to include:

> [A]ny and all claims, demands, debts, damages, liabilities, civil penalties, restitution, disgorgement, reimbursement, fines, expenses, actions, and causes of action whatsoever, known and unknown, foreseen, unforeseen, or unforeseeable, which the State has asserted or could have asserted on its own behalf or in its *parens patriae* capacity *that the State* now has or may have in the future against the Released Entities or any of them growing out of, relating to, or concerning the Litigation . . . subject to the conditions set forth herein ("Released Claims"). . . . This is a full, final, and complete release of the Released Claims . . . *by the State* …

[APP0682] (emphasis added).

Petitioner's proposed inclusion of the sentence, "[t]he State accepts the Settlement Payment on its behalf and on behalf of the citizens of West Virginia through its *parens patriae* authority,"

---

As Exhibit 2 to Respondent Counties' *Memorandum in Opposition to Petitioner's Motion to Dismiss* but were omitted from Petitioner's Appendix [APP0756-0784].

3 Compare the Final *Settlement and Release* attached to Petitioner's Appendix [APP0678-0693] with Petitioner's Proposed Release contained in Respondent Counties' Supplemental Appendix [APP0756-0784].

was also rejected. [APP0762, APP0682-0683]. Petitioner also requested the following indemnity from the State:

> The State shall fully indemnify the Released Entities and hold them harmless from and against, and from attorney's fees and costs incurred in defending or arising from, all claims, demands, actions, and causes of action that may be asserted or initiated against any of the Released Entities relating to the events described in the Litigation and the controlled substances epidemic up to the Effective Date by (1) any "Political Subdivision" and/or "Municipality" in the State of West Virginia (as those terms are defined in the West Virginia Code, including Chapters 5 and/or 29) and/or by (2) any other party by reason of any claim, demand, action, or cause of action asserted or initiated by the State against said party. This provision includes, without limitation, claims, demands, actions, or causes of action seeking to hold any of the Released Entities liable or to obtain contribution for any alleged liability for or relating to the events described in the Litigation, the controlled substances epidemic, or the damages or costs the State or any "Political Subdivision" and/or "Municipality" in the State claims it has incurred as a result of the controlled substances epidemic. [APP0765, APP0766]

This indemnity paragraph was also rejected in its entirety. [APP0686]. Finally, two proposed inclusions to the recitals in the release were also rejected.[4]

There is nothing in the record here to indicate the proceeds of the settlement of the WVAG lawsuit found its way to the Respondent Counties to compensate them for their direct damages. There is also nothing in the record to indicate that any of the Respondent Counties have ever had any contract or contact with the WVAG regarding the WVAG lawsuit or the Respondent Counties' claims that Petitioner now argues should be barred. A review of the Complaint in this litigation clearly shows the damages being sought by the Respondent Counties are specifically local and relate to expenses incurred pursuant to the

---

[4] Language expanding the Release's recital regarding the WVAG's power to bring suit so as to include not just recovery of damages allegedly suffered by the State but also to include damages suffered by "the citizens of West Virginia" was proposed [APP0758, Recital C] and rejected. [APP0679, Recital C]. Similarly, a recital noting, the "State has concluded that it is in the best interest of the State, its agencies, the residents of the State represented by them, and the communities in West Virginia to resolve all claims asserted against Cardinal Health on the terms and conditions set forth below and thereby avoid the vagaries and costs associated with further litigation," [APP0759, Recital H], was also rejected. [APP0679-0680].

Counties fulfilling their duties and authority granted them by West Virginia Constitution Art. IX.

## IV.   SUMMARY OF ARGUMENT

Petitioner's Writ asks this Court to stretch the doctrine of *res judicata* past its limits and to ignore the independent duties and specific statutory authority granted to the Respondent Counties to bring the claims presented here. The Writ further asks this Court to sit as the trier of fact concerning application of the statute of limitations and decide as a matter of law what each respective County knew or should have known about Petitioners' conduct in connection with the opioid crisis without the aid of any discovery.

Petitioner's improper attempt at this interlocutory appeal is largely premised upon the incorrect assertion that the claims brought by the Respondent Counties in this case were or could have been brought by the WVAG in its 2012 lawsuit. Petitioner's arguments blatantly ignore that Respondent Counties are not the State, nor part of any state agency, and have independent constitutional and statutory footing and powers which enable them to bring the claims asserted in this case. Succinctly stated, the Respondent Counties' claims were not litigated, could not have been litigated, and were not released in the WVAG's 2012 lawsuit.

The constitutionally unique and independent nature of the Respondent Counties means that they are not in privity with the State or any state agency, they were not virtually represented, nor are their claims virtually identical to those claims which were brought and settled in the WVAG 2012 lawsuit. Accordingly, the doctrine of *res judicata* does not apply to bar the Respondent Counties' claims.

The harm and damages caused by Petitioner's conduct in creating and perpetuating the opioid crisis in the Respondent Counties continues and has not been abated. Therefore, the

statute of limitations on Respondents' important nuisance claims has not run. Respondent Counties' Complaint further alleges that they did not know or could not have known of Petitioners' tortious conduct in relation to the opioid epidemic and their damages. Only discovery in this case will reveal what and when the Respondent County commissioners knew or should have known about Petitioners' conduct in connection to the opioid crisis. Thus, issues of material fact exist and resolution of these issues at the pleading stage is improper. Syl. Pt. 5, *Dunn v. Rockwell*, 225 W.Va. 43, 689 S.E.2d 255 (2009).

For all of these reasons, Petitioner has failed to prove that the Circuit Court exceeded its legitimate powers and committed a substantial abuse of discretion in denying its motion to dismiss. Petitioner's Writ should accordingly be denied.

## V.   STATEMENT REGARDING ORAL ARGUMENT AND DECISION

Oral argument is unnecessary pursuant to W.Va. Rule of App. Proc. 18(a), because the petition is without substantial merit; the dispositive issues have been authoritatively decided; the facts and legal arguments are adequately presented in the briefs and record on appeal; and the decisional process would not be significantly aided by oral argument. Indeed, the matter is appropriate for memorandum decision pursuant to W.Va. Rule of App. Proc. 21, because there is no substantial question of law and the trial court's decision was correct; there is no prejudicial error; and other just cause exists for summary affirmance.

## VI.   ARGUMENT

### A. Petitioner is Not Entitled to Issuance of a Writ of Prohibition Under the Facts and Circumstances of This Case.

It is well established in West Virginia law that the "extraordinary remedy" of prohibition may not be used as a substitute for appeal.  *State ex rel. W. Va. Nat. Auto Ins. Co. v. Bedell*, 223 W. Va. 222, 226–27, 672 S.E.2d 358, 362–63 (2008), citing Syl. Pt. 1, *State ex rel. Gibson v. Hrko*, 220 W.Va. 574, 648 S.E.2d 338 (2007); Syl. Pt. 3, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996); and Syl. Pt. 1, *Crawford v. Taylor*, 138 W.Va. 207, 75 S.E.2d 370 (1953).  As the Court wrote in *Wilfong v. Wilfong*, 156 W.Va. 754, 758-59, 197 S.E.2d 96, 99-100 (1973):

> The principle of non-appealability in interlocutory rulings is well grounded in reason. It prevents the loss of time and money involved in piece-meal litigation and the moving party, though denied of immediate relief or vindication, is not prejudiced. The action simply continues toward a resolution of its merits following a decision on the motion. If unsuccessful at trial, the movant may still raise the denial of his motion as error on an appeal subsequent to the entry of a final order.[5]

This principle has particular force where, as here, Petitioner seeks to appeal from the trial court's denial of a W. Va. R. Civ. P. 12(b)(6) motion to dismiss, because "the motion to dismiss for failure to state a claim should be viewed with disfavor and rarely granted." *Lodge Dist. Co. v. Texaco, Inc.*, 161 W.Va. 603, 606, 245 S.E.2d 157, 159 (1978), citing *Williams v. Wheeling Steel Corp.*, 266 F. Supp. 651 (N.D. W.Va. 1967).   "Whether the plaintiff can prevail is a matter properly determined on the basis of proof and not merely on the pleadings." *Id.*, citing Wright & Miller, *Federal Practice and Procedure*: Civil § 1216 (1969).

---

[5] "Although *Wilfong* did not directly address the denial of a motion for failure to state a claim upon which relief can be granted made pursuant to W.Va.R.Civ.P. 12(b)(6), the above rationale in *Wilfong* is nevertheless applicable to a 12(b)(6) motion." *State ex rel. Arrow Concrete Co. v. Hill*, 194 W.Va. 239, 245, 460 S.E.2d 54, 60 (1995) (citing multiple authorities).

The paucity of Petitioner's argument in support of its entitlement to the remedy of prohibition evidences the lack of jurisprudential support underlying its attempt to disguise an interlocutory appeal as an extraordinary writ. As Petitioner acknowledges, a writ of prohibition lies only where a trial court has "exceed[ed] it legitimate powers." Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977), by making "substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or common law mandate which may be resolved independently of any disputed facts..." Syl. Pt. 1, *Hinkle v. Black*, 164 W. Va. 112, 262 S.E.2d 744 (1979). In order to determine whether a petition for writ of prohibition meets the stringent standard established by this Court almost one hundred fifty years ago, *see* Syl. Pt. 3, in part, *Buskirk v. Judge of Circuit Court,* 7 W.Va. 91 (1873) ("a mere error in the proceeding may be ground of appeal or review, but not of prohibition"), the Court is guided by the five-factor test articulated in *Hoover, supra,* at Syl. Pt. 4:

> "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight."

*Id.*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

With respect to the first *Hoover* factor, lack of adequate means to secure relief, Petitioner does not address how, if at all, it applies to this case. Therefore, the Court should deem any argument on this point to be waived. And in any event, it is apparent that Petitioner "has other

adequate means to obtain the desired relief. For example, [it] could file a motion for summary judgment after the completion of discovery…." *State ex rel. State Auto Prop. & Cas. Ins. Co. v. Stucky*, No. 15-1178, 2016 WL 3410352, at *6 (W.Va. June 14, 2016).

Petitioner's claim of entitlement to a writ of prohibition rests entirely on the third *Hoover* factor, whether the trial court committed clear error in determining that *res judicata* does not bar Respondents' claims; that the claims were not released by operation of a settlement in *parens patriae* litigation brought by the West Virginia Attorney General against Cardinal; and that the claims are not barred by the statute of limitations. In its skeletal argument on the issues of *res judicata* and release, both of which revolve around the 2017 settlement of *State ex rel. McGraw [subsequently Morrisey] v. Cardinal Health, Inc.*, No. 12-C-140 (W.Va.Cir.Ct. Boone County, filed June 26, 2012), Petitioner contends that the trial court's rulings in this case are "contrary to this Court's determination" in the case of *Beahm v. 7-Eleven, Inc.*, 223 W. Va. 269, 672 S.E.2d 598 (2008). This argument is wholly misplaced, as *Beahm* established no bright line rule that governs the instant case, let alone at the pleading stage. To the contrary, the *Beahm* majority specifically cautioned: "[w]e wish to emphasize once again that the application of *res judicata* is dependent upon the distinctive characteristics of a particular case….," and that its decision was "[b]ased upon the ***facts and circumstances of the instant appeal***." 223 W. Va. at 276, 672 S.E.2d at 605 (emphasis supplied).[6] Here, of course, the facts and circumstances have not been developed, since Petitioner is trying to derail the case at the outset.

In its equally bare-boned discussion of the third alleged "clear error"—whether the claims in this case are barred by the statute of limitations—this Court has held that "[i]n the great

---

[6] In this case, the Respondent Counties were not, and could not have been, included in the *parens patriae* suit, as they are not in privity with the State or its agencies and the Attorney General has no constitutional or statutory authority to file litigation on their behalf.

majority of cases, the issue of whether a claim is barred by the statute of limitations is a question

of fact for the jury." *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 714-15, 487 S.E.2d 901, 909-10

(1997). In the instant case, the trial court agreed, setting forth the five-part test in Syl. Pt. 5,

*Dunn v. Rockwell*, 225 W.Va. 43, 46, 689 S.E.2d 255, 258 (2009),[7] and concluded that "the

resolution of steps two through five … involve questions of material fact that will need to be

resolved by the trier of fact." [APP0007]. In short, as cogently summarized in *State Auto, supra*,

Slip Op. at 7, "this is not the type of case from which only one conclusion may be drawn

regarding the timeliness of [the Respondent Counties'] claims."

With respect to the fourth *Hoover* factor, whether the trial court's error is an oft-repeated

error or manifests persistent disregard for the law, Petitioner makes no argument. Again, the

Court should deem any argument on this point to be waived.

Finally, with respect to the fifth *Hoover* factor--whether the trial court's order raises new

and important issues of first impression—Petitioner has specifically disclaimed any reliance on

this point by contending that this case should be reviewed on the Court's Rule 19 docket because

it involves the "[application of] *settled law* to threshold issues of *res judicata* and statute of

limitations…." (Pet., p. 11) (emphasis supplied).

Rule 16(a) of the West Virginia Rules of Appellate Procedure provides, in relevant part,

that "[i]ssuance by the Court of an extraordinary writ is not a matter of right, but of discretion

---

[7] "First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, as set forth in Syllabus Point 4 of *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E.2d 901 (1997). Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact." *Dunn*, 225 W. Va. at 46, 689 S.E.2d at 258.

sparingly exercised." Under the facts and circumstances set forth in this brief, *infra*, the Court should conclude that Petitioner is not entitled to extraordinary relief at the pleading stage of this case. The writ of prohibition prayed for should be denied, and Plaintiff/Respondents given the opportunity to develop the material facts underlying the claims set forth in their Complaint.

### B. Respondent Counties' Claims are Not Barred by *Res Judicata*.

*Res judicata* "generally applies when there is a final judgment on the merits which precludes the parties or their privies from relitigating the issues that were decided or the issues that could have been decided in the earlier action." *Beahm v. 7-Eleven, Inc.*, 223 W.Va. 269, 272, 672 S.E.2d 598, 601 (2008) (per curium) (citations omitted). The application of *res judicata* is dependent on the "distinctive characteristics of a particular case," *Beahm,* 223 W.Va. at 276, 672 S.E.2d at 605 (2008), and the party seeking to invoke the bar must show that "the two actions … have (1) substantially the same parties who sue and defend in each case in the same respective character [and] (2) the same cause of action. …" *Beahm,* 223 W.Va. at 274, 672 S.E.2d at 602 (2008), (quoting *Hannah v. Beasley*, 132 W.Va. 814, 821, 53 S.E.2d 729, 733 (1949)).

The circuit court correctly ruled in this case that *res judicata* does not apply because: no privity exists between the Respondent Counties and the State in that the Respondent Counties are constitutionally and statutorily not part of the state or any state agency; the WVAG did not and could not represent Respondent Counties since the WVAG is only authorized to represent the state and state agencies or state commissions; and the doctrine of virtual representation does not apply to the circumstances in this case.

  i.  **The Circuit Court Did Not Err in Concluding the Respondent Counties'**
      **Claims Are Not Virtually Identical to Those Asserted in the WVAG Lawsuit.**

In order for *res judicata* to be applicable, "the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action." *West Virginia Human Rights Com'n*, 217 W.Va. at 462, 618 S.E.2d at 471 (2005) (quoting Syl. Pt. 4, *Blake*, 201 W.Va. 464, 498 S.E.2d 41 (1997)).

The WVAG lawsuit asserted claims which the Respondent Counties have not and could not make against Petitioner: Count I – Injunctive Relief for Violations of Responsibilities and Duties Under The West Virginia Uniform Controlled Substance Act; and Count III – Violations of the West Virginia Consumer Credit and Protection Act (WVCCPA). [APP0415, 0419]. The WVAG made clear that its claims were being brought pursuant to authority exclusively vested with the WVAG. [APP0411]. Additionally, the WVAG lawsuit sought to recover damages incurred or that would be incurred by the State and not by the Respondent Counties. ("The State of West Virginia has sustained economic harm and will in the future suffer economic harm unless the above-described public nuisance is abated.") [APP0423] ("…Defendant and its agents have caused the State to incur excessive prescription costs…in that many of the citizens of West Virginia are Medicaid or publicly- funded health care recipients…") [APP0425].

Because the State through the Attorney General sought different claims and did not claim or seek the damages sought here by the Respondent Counties, it cannot be said that the claims were virtually identical. This is particularly true with respect to the Respondent Counties' individual claims for damages. While *res judicata* may apply to both claims brought and claims which could have been brought pursuant to *West Virginia Human Rights Com'n*, *supra*, claims of a third party (i.e. a party other than the party appearing *parens patriae*) are not

the same claims for purposes of *res judicata. See Satsky v. Paramount Communications, Inc.,* 7 F.3d 1464 (10th Cir. 1993) (holding that private landowners could pursue private property claims against a defendant despite a consent decree in an earlier lawsuit between Colorado and the same defendant because the state could not have recovered as *parens patriae* for injuries to the plaintiffs' private interests).

Petitioner's reliance upon the decision in *Keith v. Aldridge,* 900 F.2d 736 (4th Cir. 1990), for the proposition that the claims here could have been raised and resolved in the prior WVAG lawsuit is misplaced. In *Keith,* an employee entered a settlement agreement with his employer in a first lawsuit and then filed a second lawsuit against his same employer. *Id.* at 737. The district court dismissed the second action on the grounds of *res judicata* concluding the settlement of the first lawsuit precluded future litigation and the order dismissing the first lawsuit was a final judgment on the merits. *Id.* at 739.

It is clear the facts here are completely different and not in any way analogous to the facts that were presented in *Keith*. When describing a "transactional approach" for preclusion purposes, the Court in *Keith* cited *Harnett v. Billman*, 800 F.2d 1308 (4th Cir. 1986). *Keith,* 900 F.2d at 740 (4th Cir. 1990). In *Harnett*, the plaintiff filed a second action after reaching a settlement in the first lawsuit. *Harnett,* 800 F.2d at 1311 (4th Cir. 1986). The second complaint filed was between the same parties and the court found that the claims arose out of the same transaction that was subject of the settlement. *Id.* at 1315. In reaching its determination, the court stated:

> "The rule of claim preclusion we apply, however, asks only if a claim made in the second action involves a right arising out of the same transaction or series of connected transactions that gave rise to the claims in the first action. To decide this, we measure the scope of "transaction or series of connected transactions" by considering pragmatic factors such as common origin and relation, as well as

whether the acts giving rise to the claim would be considered as part of the same unit by the parties in their business capacities."

*Id.*, at 1315. *See* Restatement (Second) of Judgments § 24(2) (1982).

When applying a transactional approach to the facts here, it is clear that the Respondent Counties' claims do not involve "a right arising out of the same transaction or series of connected transactions that gave rise to the claims in the first action." Not only were the Respondent Counties not parties to the original WVAG lawsuit, but the State's complaint sought completely different and distinct damages incurred by state agencies. Further, the State's Complaint did not assert claims or damages for expenses incurred by the Plaintiff Counties.

Finally, Petitioner's argument that the Respondent Counties' claims could have been brought in the WVAG lawsuit itself establishes that *res judicata* is inappropriate here. [Pet., p. 16]. Joinder under Rule 20 is explicitly permissive, not mandatory. W. Va. R. Civ. Pro. 20. Indeed, should Petitioner have believed that the Respondent Counties were necessary parties, it was incumbent on Petitioner to seek to have the Respondent Counties joined as necessary parties. *See* W. Va. R. Civ. Pro. 19.

### ii.    The Circuit Court Did Not Err in Concluding That the State and the Respondent Counties Are Not in Privity.

When, as here, the parties are not the same, the defense of *res judicata* requires a showing of privity. *Beahm*, 223 W.Va. at 273-74, 672 S.E.2d at 602-03. West Virginia law recognizes that "[p]rivity, in a legal sense, ordinarily denotes 'mutual or successive relationship to the same rights of property.'" *Beahm*, 223 W.Va. at 273, 672 S.E.2d at 602 (quoting *West Virginia Human Rights Comm'n v. Esquire Group, Inc.*, 217 W.Va. 454, 460, 618 S.E.2d 463, 469 (2005). The "key consideration for [privity's] existence is the sharing of the same legal right by parties allegedly in privity, so as to ensure that the interests of the party against whom

preclusion is asserted have been adequately represented." *Beahm,* 223 W.Va. at 273, 672

S.E.2d at 602 (quoting *West Virginia Human Rights Comm'n*, 217 W.Va. at 460-61, 618

S.E.2d at 463). This requisite relationship is absent here.

    **iii.**    **Respondent County Commissions Are Constitutional Entities Separate from the State with Independent Powers and Duties.**

The Respondent County Commissions are not an arm of the state or an entity of the

government of the State of West Virginia. *See* W.Va. Code § 29-12A-3(e) ("'State' means the

state of West Virginia, including, but not limited to, the Legislature, the supreme court of

appeals, the offices of all elected state officers, and all departments, boards, offices,

commissions, agencies, colleges, and universities, institutions, and other instrumentalities of

the state of West Virginia"). The West Virginia Constitution establishes counties as separate

units of government and grants explicit powers to county commissions over the

"superintendence and administration of the internal police and fiscal affairs of their counties."

West Virginia Constitution Art. IX § 11. The Constitution further grants the Legislature

plenary power to assign county commissions powers and duties. *Id.* Further, Chapter Seven of

the West Virginia Code sets forth the specific powers, duties and obligations of County

Commissions and their officers, implementing the Constitution's grant of police and fiscal

powers. *See, e.g.,* W.Va. Code §§ 7-5-1 et. seq. (Fiscal Affairs); W.Va. Code §§ 7-8-1 et. seq.

(Jail); W.Va. Code §§ 7-14-1 et. seq. (Deputy Sheriffs); W.Va. Code §§ 7-15-1 et. seq.

(Ambulance Service).

    Specific to the claims here, W.Va. Code § 7-1-3kk is explicit in its grant of authority—

the County is authorized to "enact ordinances, issue orders and take other appropriate and

necessary actions for the elimination of hazards to public health and safety and to abate or

cause to be abated anything which the commission determines to be a public nuisance." In

addition, West Virginia counties "have authority to employ such legal counsel as [they] may deem necessary for the purpose of advising such county commission on matters of a civil nature and to conduct any litigation of a civil nature to which the county is a party." W.Va. Code § 7-4-3. Respondent Counties' claims here are clearly within these grants of authority.

iv.     **The WVAG and the State Lack the Power to Represent the Respondent Counties.**

Petitioner cites no constitutional or statutory authority authorizing the WVAG to litigate claims on behalf of the Respondent Counties. West Virginia law generally authorizes the WVAG to represent the State and State entities. *See, e.g.,* W.Va. Code § 5-3-2 (WVAG's power to prosecute suits limited to supporting "official duties of any *state* officer, board or commission" (emphasis added)); W.Va. Code § 5-3-1 (County Commissions/County Commissioners not included among enumerated state officers and entities). Neither the Constitution nor any statute provides the WVAG with the legal authority to bring suit on behalf of the Respondent Counties.

Nor does the WVAG have any common-law authority with respect to representation of the Respondent Counties. While the WVAG possesses common law powers, the scope of those powers can be abolished or restricted by the Legislature. *State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 231 W.Va. 227, 247, 744 S.E.2d 625, 645 (2013); *State ex rel. Morrisey v. West Virginia Office of Disciplinary Counsel*, 234 W.Va. 238, 253, 764 S.E.2d 769, 784 (2014). This Court has not hesitated to find implicit legislative preemption of the WVAG's powers based on the Legislature's grant of particular powers to counties. *See, e.g.*, *State ex. Rel. Morrisey*, 234 W.Va. at 260, 764 S.E.2d at 791(noting the express constitutional and legislative statutory grant of power to counties to prosecute criminal cases, the court found the WVAG's broad common law power to prosecute had been implicitly abolished.); *See also,*

*State ex rel. Riffle v. Ranson*, 195 W.Va. 121, 128, 464 S.E.2d 763, 770 (1995) (the conclusion that the Legislature intended to exclude and abolish the common law powers of circuit courts to apply the doctrine of *forum non conveniens* to intra-state scenarios not expressly codified was compelled by statutory cannon of construction, *expressio unius est exclusio alterius,* along with reason and common sense). Here, the relevant constitutional and statutory provisions noted above grant the Respondent Counties broad authority to address the public health, safety, and fiscal consequences of the opioid epidemic in their communities, implicitly removing any common law authority from the WVAG over the Respondent Counties' claims. West Virginia Constitution Art. IX § 11; W.Va. Code § 7-1-3kk.

  **v.**  **The County Retains the Power to Abate Nuisances.**

   The distinction between the claims asserted in the WVAG lawsuit and those asserted by Respondent Counties in this litigation is particularly clear in the context of the Respondent Counties' nuisance claim. As noted above, the Respondent Counties have express power to declare a nuisance and take action to remedy it. W.Va. Code § 7-1-3kk. Like the limited prosecutorial power provided to the WVAG at issue in *Morrisey*, the Legislature has provided the WVAG limited authority to bring actions on nuisances in only five specific cases, none of which apply here.

   Here, the counties are given express powers to regulate all nuisances, and the Legislature has not enacted a general statute allowing the State Attorney General authority to abate nuisances, instead granting only specific state agencies the power to abate nuisances in specific cases.[8] Under both the doctrine of *expressio unius est exclusio alterius* and the

---

[8] *See* W.Va. Code § 17-16-1 (State highway department or county commission empowered to seek abatement of nuisances from roadway obstructions); W.Va. Code § 17-19-1 (State highway department can abate nuisances caused by illegal signs on roadway right-of-way); W.Va. Code § 17-22-22 (State highway commissioner or

holdings in *Morrisey* and *Ranson,* neither the State nor the WVAG had the power to bring (let alone release) the Respondent Counties' nuisance claim. Under these circumstances, the circuit court clearly did not err in concluding that the Respondent Counties are not in privity with the State.

### vi.    The State Does Not Have *Parens Patriae* Power to Bring the Respondent Counties' Claims.

Petitioner argues that the doctrine of *parens patriae* supports a finding of privity. Petitioner cites no relevant West Virginia case supporting its argument that under West Virginia law the state has *parens patriae* authority to bring the civil claims on behalf of counties or residents of counties. In any event, the analysis previously set forth as to why the WVAG and the State do not have the power to represent the Respondent Counties or bring their claims, applies equally to prove the lack of existence of a common law *parens patriae* power on the part of the State or the WVAG over the Counties' nuisance claims. The broad, clear legislative delegation of these powers to the Respondent Counties, with the reservation of only limited power to the State and the WVAG, demonstrate that whatever common law *parens patriae* authority exists for these claims is for the Respondent Counties to exercise not the State. Importantly, the Respondent Counties' claims do not involve consumer credit or antitrust claims where the WVAG has been given explicit *parens patriae* authority.

---

county prosecuting attorney may apply for an injunction to abate nuisance from illegal billboard); W.Va. Code § 17-23-9 (State highway commissioner or county prosecuting attorney may seek abatement of illegal salvage yards as a nuisance); W.Va. Code § 17C-3-8 (State highway commissioner or other authority having jurisdiction over highway may seek abatement of unauthorized traffic-control device as a nuisance); W.Va. Code § 22-13-12 (State may apply to court to abate nuisances in violation of Natural Streams Preservation Act); W.Va. Code § 30-7-14 (State board of nursing may seek injunction to stop nuisance of unlicensed practice of nursing); W.Va. Code § 30-7C-13 (State board of nursing may seek injunction to stop nuisance of unlicensed practice by dialysis technician); W.Va. Code § 61-3-47 (State division of natural resources and others can bring suit to abate nuisance in form of obstruction of waterways).

The cases cited in support of Petitioner's argument are all cases in which private citizens attempted to bring successive private enforcement actions after a State had privately sued in its capacity as *parens patriae* representative of its citizens. [Pet., p. 19-20]. However, the Respondent Counties are not private citizens of the State, but are rather independent governmental entities created by the Constitution. West Virginia Constitution Art. IX.

Moreover, where the claims of two overlapping governmental entities are involved, privity does not exist. In *City of New York v. Beretta U.S.A. Corp.,* 315 F.Supp.2d 256 (E.D. NY 2004), the court refused to find that "a prior case brought by New York State in its *parens patriae* capacity will bar the City of New York or other sub-state entities from subsequently bringing suit on the same cause of action." *Id.* at 266. The *Beretta* Court noted that *res judicata* analysis differed when the claims involved a subsequent suit by a sub-state governmental body, not a private citizen:

> The City is not precluded under the doctrine of *res judicata*, however, simply because its residents, if suing as private plaintiffs, might be barred from bringing suit. The City's interest cannot be characterized as coterminous with that of its inhabitants'; it has a municipal interest that is separate and distinct from, and not duplicate of, the interests of individual New Yorkers.

*Id.* Finding "nothing in the law to suggest that the Attorney General has the authority to represent the City's legal interests or that the exclusive grant of authority to the Corporation Counsel in the City's Charter is subject to exceptions," the Court refused to find privity for *res judicata* purposes. *Id.* at 274.

The opioid crisis in the Respondent Counties are a local concern analogous to gun crime in New York City. *Cf. Id.* at 274. Given the lack of authority for the WVAG to represent the Respondent Counties, the same result should apply here. Finally, like in *Beretta,* barring the Respondent Counties from litigating their claims would interfere with the proper delineation of

authority between the Respondent Counties and the WVAG, which would usurp the powers expressly delegated to the Counties by both the Constitution and the Legislature.

      **vii.**    **The Circuit Court Did Not Err in Ruling That the Doctrine of "Virtual Representation" Does Not Apply to the Facts in This Case.**

      West Virginia has utilized the doctrine of "virtual representation" as a "variety of privity" which "precludes relitigation of any issue that [has] once been adequately tried by a person sharing a substantial identify of interests with a nonparty." *Beahm*, 223 W.Va. at 274, 672 S.E.2d at 603 (quoting *Galanos v. National Steel Corp*, 178 W.Va. 193, 195, 358 S.E.2d 452, 454 (1987))). This Court has recognized the application of virtual representation only in cases in which a nonparty actively participated in and exercised control over the conduct of the prior litigation; where a nonparty impliedly consented to abide by a prior judgment; or if the nonparty's actions involved deliberate maneuvering or manipulation in an effort to avoid the preclusive effects of a prior judgment. *Galanos*, 178 W.Va. at 196, 358 S.E.2d at 455 (cases at issue did not come within any of the recognized classes of virtual representation and finding that the doctrine of collateral estoppel did not bar the actions even though Plaintiffs were represented by the same attorney and two plaintiffs had testified as witnesses in the prior litigation, where there was no showing of those plaintiffs' control over the prior litigation, consent to be bound, or deceit or tactical maneuvering). The "doctrine of virtual representation cannot be construed to imply privity to all who derive injury from a single wrongful act." *Beahm*, 223 W.Va. at 274, 672 S.E.2d at 603 (applying virtual representation to the case after finding that the parties had sought to join the prior action, shared common counsel, had notice of the prior suit and would have had the same practical opportunity to control the course of the proceedings).

In *Beahm,* the plaintiffs filed a second lawsuit in state court to avoid a ruling denying their request to be added as named plaintiffs in a previously filed lawsuit in federal court. *Beahm*, 223 W.Va. at 271-72, 672 S.E.2d at 600-01. The property owned by the plaintiffs in the second lawsuit had already been completely remediated and the first lawsuit was dismissed in federal court because the court ruled the plaintiffs failed to present any recoverable damages under West Virginia law. *Beahm*, 223 W.Va. at 272, 672 S.E.2d at 601. The court in *Beahm* reasoned the plaintiffs in the second lawsuit shared the same attorneys with the plaintiffs in the first lawsuit, had the same practical opportunity to control the course of the first lawsuit, and relied upon the same expert and fact witnesses and opinions. *Beahm*, 223 W.Va. at 274, 672 S.E.2d at 603. Under these circumstances, this Court found that privity existed between the parties in both lawsuits and *res judicata* applied. *Beahm*, 223 W.Va. at 274-276, 672 S.E.2d at 603-605.

Indeed, the virtual representation doctrine is itself a creature of equity, but equity clearly weighs against *res judicata* in this case. As already noted, the Respondent Counties were not represented by the West Virginia Attorney General in the WVAG lawsuit. The Respondent Counties also did not participate or control the proceedings in the WVAG lawsuit. Moreover, Petitioner was aware that West Virginia Counties had already filed lawsuits and of the likelihood of others when it unsuccessfully attempted to include county claims in the WVAG lawsuit settlement and release. This was done without any notice to the Respondent Counties. Petitioner now asks this Court to enforce a settlement they never obtained nor could obtain with the State. West Virginia courts have strenuously cautioned against "rigidly enforce[ing] the doctrine of *res judicata* where," as here, "to do so would plainly defeat the ends of justice." *Blake v. Charleston Area Medical Center, Inc.*, 201 W.Va. 469, 478, 498

S.E.2d 41, 50 (1997) (quoting *Gentry v. Farruggia*, 132 W.Va. 809, 811, 53 S.E.2d 741, 742 (1949)).

The case of *Nash County Bd. of Education v. Biltmore Co.,* 640 F.2d 484 (4th Cir. 1981) relied upon by Cardinal is not persuasive in this case. In *Nash,* the North Carolina Attorney General settled a state court lawsuit against nine dairy companies for acting in restraint of trade in the sale of milk products to North Carolina public school systems. *Nash*, 640 F.2d at 485-486. The Fourth Circuit Court of Appeals dismissed a subsequent federal lawsuit brought by a single North Carolina school district asserting damages from the sale of the same milk products, finding the school district was in privity and virtually represented by the State Attorney General in the prior suit. *Nash*, 640 F.2d at 497.

The Court in *Nash* reasoned that the Attorney General in the first state court lawsuit declared himself to legally represent "each public school district in this state which received tax revenue directly or indirectly from the State of North Carolina…which purchases fluid milk…" and that the school district in the second case "was concededly such a school district." *Id.* at 494. The court further noted that the North Carolina Attorney General possessed the authority to sue as the representative of the school district under North Carolina law because the Attorney General was broadly authorized to bring suit on behalf of any "organized activities" that receive support in part from the State and the school district received State tax revenues. *Id*. at 494-495. The Attorney General lawsuit specifically sought to recover for purchases of fluid milk by the school districts with funds supplied "in whole or in part" by the State. *Id*. at 495. Applying North Carolina law to these circumstances, the Court held the school district was barred from bringing the second lawsuit. *Id.* at 497.

Additionally, the claims in *Nash* were for transactions which financially involved both the State and the school districts and for which both suffered the same loss and the State did not seek treble damages for any other transactions. *Id.* at 495. These were the only stakes and the interests which the Attorney General sought to represent in the first lawsuit, (i.e., the recovery of past over-payments and equitable protection against future price control schemes by the appellees). *Id.* The state action was unquestionably one where the Attorney General's interests were identical with those asserted by the school district in the second federal lawsuit and which the Attorney General was authorized to bring under his express common law and statutory authority. *Id.* Under those circumstances, the court could not imagine a factual setting more clearly demonstrative of the requisite unity in interest in both suits. *Id.* Unlike the present case, the interests of the State of North Carolina in its original state court action, and the plaintiff School District in the subsequent federal action, were found to be identical, not merely contextually related.

The Circuit Court's ruling that the Respondent Counties are not in privity with the State is consistent with other courts which refuse to apply *res judicata* to claims involving the local interests of governmental entities.  In City of *Martinez v. Texaco Trading & Transp., Inc.*, 353 F.3d 758, 764 (9th Cir. 2003), the court refused to apply *res judicata* because the court found the City had an interest distinct from the State and the State did not act as the City's virtual representative and did not have the authority to settle the City's damage claims in a prior lawsuit. In *Froebel v. Meyer*, 217 F 3d 928, 934 (7th Cir. 2000), the court applied Wisconsin law and found that claim preclusion did not apply in favor of a County where the state had previously prevailed in an earlier lawsuit. The court looked to the County's lack of participation in the prior lawsuit and the fact that the parties in each lawsuit were represented by separate counsel as

important considerations in determining that the party's interests were different in each lawsuit. *Id*. In *Harris Cty., Tex. v. CarMax Auto Superstores Inc.,* 177 F3d 306, 316-19 (5th Cir. 1999), the court reasoned that a state attorney general does not necessarily speak for county officers in the conduct of a lawsuit in which the county is not a party. The court further held that the county was not in privity with or virtually represented by another county or the state in a prior lawsuit. *Id*. at 319.

### C. The Respondent Counties' Claims Have Not Been Released.

As discussed in detail above, the fact that the State resolved its claims against Petitioner and released claims "which the State has asserted or could have asserted on its own behalf or in its *parens patriae* capacity," does not relieve Petitioner from its liabilities to the Respondent Counties. Because neither the State nor WVAG had the authority to enter into a release of the Respondent Counties' claims, the Release is not valid as to the claims brought by Counties.

The State executed a Settlement Agreement and Release with Petitioner on behalf of "each and every" State agency, department and instrumentality, including "any agency, person, or other entity claiming by or through them or any of them." [APP0681]. The Counties are neither a State agency nor an instrumentality of the State nor are the Counties "claiming by or through" the State. Contrary to the Petitioner's assertions, the Counties are not suing to enforce the WVCSA and are not acting through the Board of Pharmacy or any other State agency. Thus, the Counties' claims were not released by the State's release of claims "growing out of, relating to, or concerning" its lawsuit by "any . . . entity claiming by or through" any State agency. Thus, the express terms of the Release do not bar the Counties' claims.

Without standing to bring the Counties' claims, the WVAG had no power to contractually release them. "Contracts of compromise and settlement are to be construed and

enforced like any other contract." *Fortuna v. Queen,* 178 W.Va. 586, 591, 363 S.E.2d 472, 477 (1987) (citing *Floyd v. Watson*, 163 W.Va. 65, 254 S.E.2d 687 (1979)). Petitioner cites no authority for the proposition that one party has the power to bind a separate non-party to a contractual release. In any event it is clear as a factual matter that the parties did not agree to include the Counties' claims in the release. Counties are not mentioned as releasing parties. Given the clear division between county and state government in West Virginia law, it follows that the parties did not agree to include them as releasing parties. As such, the Counties are not included within the scope of the release, and their claims are not barred. "Obviously, a judgment dismissing an action as compromised and settled does not preclude a party  from bringing suit upon a claim not within the scope of the  compromise agreement." *Fortuna,* 178 W.Va. at 590, 363 S.E.2d at 476.

The limited documents available to the Counties establish that the decision to exclude the Counties was in effect an agreement by the parties (or acquiescence by Petitioner) to split the claims of the State from the claims of the counties and cities. The fact that counties are excluded from the definition of releasing parties and the drafting history of Petitioner's release are both strong evidence of an effective agreement to split the Counties' claims or an acquiescence that permits the Counties' claims to proceed even if the Counties' claims could have otherwise been included within the scope of the Release or dismissal order (which they could not have been). *See* Restatement (Second) of Judgments § 26(1)(a) (claim is not extinguished by settlement or judgment when "parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein"); *Pueschel v. United States,* 369 F.3d 345, 356 (4th Cir. 2004).

### D.  The Circuit Court Did Not Err in Ruling That the Respondent Counties' Claims Are Not Barred by the Statute of Limitations.

The statute of limitations which governs the Respondent Counties public nuisance claims "does not accrue until the harm or endangerment to the public health, safety and the environment is abated." *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co*., 200 W.Va. 221, 245, 488 S.E.2d 901, 925 (1997). Here, the opioid public nuisance at issue is not over and has not been abated, and nothing offered by Petitioner supports a different conclusion. Accordingly, the Circuit Court correctly ruled that the statute of limitations has not expired on Counties' claims for this reason alone.

Furthermore, this Court has previously applied the continuing tort theory, which provides, "[w]here a tort involves a continuing or repeated injury, the cause of action accrues at and the statute of limitations begins to run from the date of the last injury or when the tortious overt acts or omissions cease." Syl. Pt. 11, *Graham v. Beverage*, 211 W.Va. 466, 566 S.E.2d 603 (2002). Other courts have applied the continuing violations or continuing tort theory in similar opioid litigation in denying the opioid defendants' motions to dismiss. *See*, e.g., *In re Nat'l Prescription Opiate Litig*. No. 1:17-MD-2804, 2018 WL 6628898 (N.D. Ohio Dec. 19, 2018). Here, the Circuit Court also correctly ruled that the Respondent Counties claims are not time barred because they have pled a continuing tort.

Respondent Counties' Complaint specifically alleges: "At all times material herein, Plaintiffs did not know or could not have known through the exercise of reasonable diligence of Defendants' tortious and improper conduct and relied upon Defendants' fraudulent conduct to their detriment." [APP0350; Compl. ¶ 702]. This allegation should be taken as true for purposes of Petitioner's Motion to Dismiss. *Mason v. Torrellas*, 238 W.Va. 1, 792 S.E.2d 12, (2016). Petitioner's Writ is filled with much argument and inuendo about what it claims the Respondent

Counties knew or should have known about the opioid epidemic and Petitioner's conduct in connection with this crisis and related ARCOS data. However, the Respondent County commissions act through their commissioners and there has been no discovery in this case. Therefore, the record has no evidence as to what each of the various County commissions knew or did not know about Petitioner's role in the opioid crisis in their respective counties.

In *Dunn v. Rockwell,* 225 W.Va. 43, 689 S.E.2d 255 (2009), this Court held that whether the statutes of limitations preclude a plaintiff's claim is a fact-intensive issue that should be addressed later in the proceeding and articulated a five-part test:

> First, the court should identify the applicable statute of limitation for each cause of action. Second, the court (or, if questions of material fact exist, the jury) should identify when the requisite elements of the cause of action occurred. Third, the discovery rule should be applied to determine when the statute of limitation began to run by determining when the plaintiff knew, or by the exercise of reasonable diligence should have known, of the elements of a possible cause of action, . . . Fourth, if the plaintiff is not entitled to the benefit of the discovery rule, then determine whether the defendant fraudulently concealed facts that prevented the plaintiff from discovering or pursuing the cause of action. Whenever a plaintiff is able to show that the defendant fraudulently concealed facts which prevented the plaintiff from discovering or pursuing the potential cause of action, the statute of limitation is tolled. And fifth, the court or the jury should determine if the statute of limitation period was arrested by some other tolling doctrine. Only the first step is purely a question of law; the resolution of steps two through five will generally involve questions of material fact that will need to be resolved by the trier of fact.

*Id*. at Syl. Pt. 5. (emphasis added) (internal citations omitted),

This Court has further held:

> Because statute of limitations issues are often fact-determinative, a circuit court should hesitate to dismiss a complaint on this ground based solely on the face of the complaint. 'A statute of limitations analysis is generally riddled with questions of fact which *the Defendants* must establish in order to bar Plaintiffs' claims. Because of this fact-intensive burden, affirmative defenses such as the statute of limitations are generally not resolved with a motion to dismiss under Rule 12(b)(6).' Accordingly, 'unless the complaint alleges facts that create an ironclad defense, a limitations argument must await factual development.'

*E.K. v. W. Virginia Dep't of Health*, No. 16-0773, 2017 WL 5153221, at *6 (W. Va. Nov. 7, 2017) (emphasis in original, citations and text alteration omitted).

Here, the Circuit Court correctly denied Petitioner's Motion to Dismiss at this early juncture of the case because resolution of steps two through five of the *Dunn* test involve unresolved questions of material fact. [APP0008].

The Circuit Court also correctly ruled that Respondents' claims should not be dismissed because of application of the discovery rule, estoppel and Respondents allegations of fraudulent concealment. Under the discovery rule, "the statute of limitations begins to run when the plaintiff knows, or by the exercise of reasonable diligence, should know (1) that the plaintiff has been injured, (2) the identity of the entity who owed the plaintiff a duty to act with due care, and who may have engaged in conduct that breached that duty, and (3) that the conduct of that entity has a causal relation to the injury." *Dunn,* 225 W. Va. at 52-53, 689 S.E.2d at 264-265 (2009) (quoting *Gaither v. City Hosp., Inc.*, 199 W.Va. 706, 487 S.E2d. 901 (1997) at Syl. Pt. 4). (quotation marks omitted).

"Fraudulent concealment involves the concealment of facts by one with knowledge or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud." *Trafalgar House Const., Inc., v. ZMM, Inc.*, 211 W.Va. 578, 584, 567 S.E.2d 294, 300 (2002) (citing *Silva v. Stevens*, 156 Vt. 94, 589 A2d. 852, 857 (1991)) . Other courts have applied fraudulent concealment in denying Defendants motions to dismiss. See *In re Nat'l Prescription Opiate Litig., supra.* "[E]stoppel applies when a party is induced to act or to refrain from acting to her detriment because of her reasonable reliance on another party's misrepresentation or concealment of a material fact." *Bradley v. Williams,* 195 W.Va. 180, 184, 465 S.E.2d 180, 184 (1995)

(quoting *Ara v. Erie Ins. Co.,* 182 W.Va. 266, 387 S.E.2d. 320 (1998) at Syl. Pt.2, in part). Here, Respondent Counties' Complaint alleges facts supporting the application of both fraudulent concealment and estoppel. ("Defendants' misrepresentations and/or concealing and/or deceiving of their improper ... distribution, supplying, and/or regulation of opioid drugs coupled with Defendants' knowledge of the risks and harms created by their actions and conduct, as discussed herein, constitutes fraud…" [APP0350, Compl. ¶ 701]; "The Distributor Defendants had a duty to identify and report suspicious or alarming orders of opioid pharmaceuticals to the proper authorities and governing bodies, including the West Virginia Board of Pharmacy." [APP0338, Compl. ¶ 641.]; "The Distributor Defendants, in the interest of their own massive profits, intentionally failed in these duties." [APP0338, Compl. ¶ 645]).

In this case, the identity of Petitioner's unlawful conduct is hidden in the DEA ARCOS database and Petitioner's Suspicious Order Monitoring System, which still has not been disclosed.  As with the application of factors two through five of *Dunn*, the application of the discovery rule and fraudulent concealment involve resolution of material questions of fact. Accordingly, the Circuit Court was correct to deny Petitioner's Motion to Dismiss based upon application of these doctrines.

## VII.   CONCLUSION

For all the foregoing reasons, and based upon the record, Respondents respectfully request that this Court deny the *Petition for Writ of Prohibition* in its entirety.

Respectfully Submitted,

**BROOKE COUNTY COMMISSION, HANCOCK COUNTY COMMISSION, HARRISON COUNTY COMMISSION, LEWIS COUNTY COMMISSION, MARSHALL COUNTY COMMISSION, OHIO COUNTY COMMISSION, TYLER COUNTY COMMISSION,** and **WETZEL COUNTY COMMISSION,** *Respondents*

By: _____

Robert P. Fitzsimmons (WV Bar # 1212)
Clayton J. Fitzsimmons (WV Bar # 10823)
Mark A. Colantonio (WV Bar #4238)
**FITZSIMMONS LAW FIRM PLLC**
1609 Warwood Avenue
Wheeling, WV 26003
Telephone: (304) 277-1700
Fax: (304) 277-1705

Paul J. Napoli
Joseph L. Ciaccio
**NAPOLI SHKOLNIK, LLP**
360 Lexington Avenue, 11th Floor
New York, NY 10017
Telephone: (212) 397-1000
Fax: (646) 843-7986
(*Pro Hac Vice)*

Jonathan E. Turak (WV Bar # 3816)
**GOLD, KHOUREY & TURAK**
510 Tomlinson Ave.
Moundsville, WV 26041
Telephone: (304) 845-9750
Fax: (304) 845-1286

Daniel J. Guida  (WV Bar #4604)
**GUIDA LAW OFFICE**
3374 Main St.
Weirton, WV 26062
Telephone: (304) 748-1213

Samuel D. Madia (WV Bar # 10819)

**SHAFFER MADIA LAW PLLC**
343 West Main Street
Clarksburg, WV 26301
Telephone: (304) 622-1100
Fax:  (304) 622-1145

*Counsel for Respondents*

## **VERIFICATION**

STATE OF WEST VIRGINIA

COUNTY OF OHIO, to-wit:

I, Mark A. Colantonio, being duly sworn, states that he has read the foregoing **RESPONSE IN OPPOSITION PETITION FOR WRIT OF PROHIBITION** and that he knows the contents thereof; that the facts and allegations therein contained are true, except such as are therein stated upon information and belief, and as to such allegations he believes them to be true.

Dated: May 13th, 2019.

Mark A. Colantonio
*Counsel for Respondents*

Taken, sworn to and subscribed before me, this 13th day of May, 2019.



OFFICIAL SEAL
STATE OF WEST VIRGINIA
NOTARY PUBLIC
STEPHANIE BERARDINELLI
1609 WARWOOD AVE.
WHEELING, WV 26003
My Commission Expires June 14, 2021

Notary Public

[SEAL]

{00303510-4}                                      33

## CERTIFICATE OF SERVICE

I, Mark A. Colantonio, counsel for Respondents, do hereby certify that service of the foregoing **RESPONSE IN OPPOSITION TO PETITION FOR WRIT OF PROHIBITION** was made upon the all parties/counsel whose names appear on the attached "*Master Service List*" via email transmission and/or by regular, United States mail, postage prepaid, on this ___13th___ day of May, 2019.

Mark A. Colantonio