# Exhibit 10

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**STATE OF WEST VIRGINIA**
*ex rel.* **DARRELL V. MCGRAW, JR.,**
**ATTORNEY GENERAL,**

        Plaintiff,

v.                                      Civil Action No. 2:12-CV-3760
                                      (Hon. John T. Copenhaver, Jr., Judge)

**AMERISOURCEBERGEN DRUG**
**CORPORATION**, *et al.*,

        Defendants.

### STATE OF WEST VIRGINIA'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR REMAND AND FOR COSTS

In their response brief, Defendants rely on the same illogical premise expressed in their Notice of Removal as a basis for denying the State's Motion to Remand. First, Defendants argue that whether the State's claims can withstand a challenge under Rule 12(b)(6) controls this Court's jurisdiction—essentially arguing that if the State has failed to state a claim under Rule 12(b)(6), that circumstance means federal jurisdiction is extant because the State therefore is not a real party in interest. Second, Defendants make the bold and improbable leap that, even though under their theory the State has no authority to assert the claims *for damages to the State* asserted in the State's Complaint, unidentified individuals have authority to assert the same claims for ***damages accrued by the State***—even though these unidentified individuals have no interest in or standing to assert the State's claims. Defendants' argument is circular and self-defeating, and they are able to reach their erroneous conclusions only through misconstruing the entirety of the State's Complaint and its authority stated in the Motion to Remand, and by ignoring the nature of the damages the State seeks

in this action.  Defendants fail to meet their heavy burden as the parties seeking removal of this case.

Accordingly, the Motion to Remand should be granted.

## I.    THE ENACTMENT OF CAFA DID NOT ALTER THE TRADITIONAL DIVERSITY JURISDICTION ANALYSIS

Defendants cannot meet their heavy burden as the proponents of removal.  *McNutt v. Gen.*

*Motors Acceptance Corp. of Ind.*, 298 U.S. 178 (1936) (party seeking to invoke jurisdiction of

federal court has the burden of proving jurisdiction exists); *Strawn v. AT & T Mobility, LLC*, 530

F.3d 293 (4th Cir. 2008); *Mulcahey v. Columbia Organic Chem. Co., Inc.*, 29 F.3d 148, 151 (4th Cir.

1994).  Faced with abundant precedent from this Court, the Fourth Circuit, and many others that

weigh heavily in favor of remand, Defendants insist the Class Action Fairness Act ("CAFA") has

altered the traditional jurisdictional analysis when ascertaining whether a case brought by a State

should be remanded.  Defendants' incorrect position is asserted in an attempt to eliminate the threat

posed by applicable caselaw such as this Court's decision in *West Virginia ex rel. McGraw v.*

*Minnesota Mining and Manufacturing Co.*, 354 F. Supp. 2d 660 (S.D. W. Va. 2005) (Copenhaver,

J.), a case they seek desperately to distinguish into oblivion.[1]  *See, e.g.*, *Defs.' Resp.*, ECF 66, at 6.

Contrary to Defendants' assertions, by enacting CAFA Congress did not alter the traditional

diversity jurisdiction analysis; it merely expanded the reach of diversity jurisdiction to include cases

---

[1]     In addition to this misrepresentation of the post-CAFA removal jurisdiction analysis, Defendants also misstate the purpose for which the State cited these cases.  *See, e.g.*, *Defs.' Resp.*, ECF 66, at 4 n.2, 5–6.  For example, in footnote two of their response brief, Defendants blithely ignore this Court's black-and-white language, asserting that in *Minnesota Mining*, *supra*, this Court did not hold that "*ultra vires* pursuit of recompense for the state [does not] convert [a state officer] into the real party in interest for diversity purposes under these circumstances."  *Minnesota Mining*, 354 F. Supp. 2d at 665.  Defendants do so by citing to a separate legal discussion in the same order—this Court's fraudulent joinder analysis—where a determination of whether the State could in fact bring at least one claim is dispositive of that issue.  *Id.* at 667.

-2-

that fall within the CAFA statutory definitions of "mass actions" and "class actions". The Fourth

Circuit recognized this distinction:

> The difficulty with [the defendant's] position is that it seeks, without
> textual support, to reverse the established rules for alleging and
> demonstrating jurisdiction on removal. The relevant portions of
> CAFA were enacted to amend the **requirements for diversity**
> **jurisdiction** and to amend the rules for removing cases to federal
> court, and while CAFA expressly altered certain requirements for
> asserting diversity jurisdiction and removing class actions, ***it did not***
> ***reverse the established principles for alleging and demonstrating***
> ***jurisdiction on removal***.

*Strawn*, 530 F.3d at 297 (emphasis added). Unsurprisingly, the Seventh Circuit came to the same

conclusion, upholding the traditional jurisdictional analysis in *LG Display Co., Ltd. v. Madigan*, 665

F.3d 768 (7th Cir. 2011), observing that "just because CAFA was meant to expand federal courts'

jurisdiction over class actions, it does not follow that 'federal courts are required to deviate from the

traditional "whole complaint" analysis when evaluating whether a State is the real party in interest

in a *parens patriae* case.'" *Id.* at 773–74 (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.*, MDL

No. 1827, 2011 WL 560593, *3 (N.D. Cal. Feb. 15, 2011)).

Thus, the cases in the Southern District of West Virginia and the Fourth Circuit that define

removal jurisdiction and the traditional test for determining whether a State is the real party in

interest remain the law, and guide this Court's current analysis. Moreover, the Fourth Circuit's

recognition in *Strawn* that Congress did not "reverse the established principles for alleging and

demonstrating jurisdiction on removal" shows the Fourth Circuit's analysis is consistent with the

*parens patriae* analysis of the Seventh and Ninth Circuits that properly examines a complaint as a

whole, and rejects the claim-by-claim approach adopted by the Fifth Circuit.[2]  *Strawn*, 530 F.3d at 297.

## II.    THIS ACTION IS NOT A "CLASS ACTION" UNDER CAFA

The Fourth Circuit's recent decision in *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169 (4th Cir. 2011) upholding this Court's decision is dispositive on the issue of whether this action is removable as a "class action" under CAFA.  In *CVS Pharmacy*, the Fourth Circuit held that "because the action before us was not brought under Federal Rule of Civil Procedure 23 or 'a similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action,' 28 U.S.C. § 1332(d)(1)(B), the district court did not err in remanding this case."  *CVS Pharmacy*, 646 F.3d at 177–78.  Here, just as in *CVS Pharmacy*, the State has not brought its claims pursuant to Federal Rule of Civil Procedure 23 or West Virginia's equivalent.

As discussed below in more detail, Defendants' argument that the State lacks authority to assert the instant action—an argument that is appropriate instead at the Rule 12(b)(6) motion to dismiss stage—cannot cause the Court to disregard CAFA's statutory definitions and transform the State's own claims into a Rule 23 class action.  Defendants' argument is circular.  Defendants ask this Court to find the State's action to recover its own damages from Defendants is a class action on

---

[2]       Defendants again cite to the partial quotation from the Fourth Circuit's decision in *West Virginia ex rel. McGraw v. CVS Pharmacy*, 646 F.3d 169, 176 n.2 (4th Cir. 2011), as a basis to argue the Fourth Circuit follows the Fifth Circuit's decision in *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418 (5th Cir. 2008).  However, Defendants ignore the fact that the Fourth Circuit's discussion of *Caldwell* was extremely limited, the court did not adopt the *Caldwell* claim-by-claim analysis, and in fact the *CVS* court concluded the State's action was indeed a *parens patriae* action.  Rather than repeating the argument made in the Memorandum in Support of the State's Motion to Remand, the State instead directs the Court's attention to the discussion therein.  *See Mem. in Supp. of Mot. to Remand*, ECF 57, at 9 n.3.

-4-

behalf of West Virginia citizens even though (1) Defendants agree this action is not a class action and (2) the damages sought are the State's own damages. *Defs.' Resp.*, ECF 66, at 16 n.7 ("In making this argument, Defendants in no way concede that this is a proper class action or that the Attorney General has authority to pursue these claims as a class representative."). Indeed, this action is not a class action under CAFA's definitions, and therefore this Court should deny jurisdiction on this ground.

## III.  THIS ACTION IS NOT A "MASS ACTION" UNDER CAFA

Defendants' contention that the State's action is a "mass action" under CAFA's definitions hinges on one finding—the State is not the real party in interest. In order to make this argument, Defendants spend a significant portion of their brief misstating both what the State asserted in its Motion to Remand, and what the State alleges in its Complaint, all in an effort to disguise the fact that Defendants actually agree with much of the State's argument. Both the State and Defendants agree the real parties in interest are the only relevant parties for purposes of a jurisdictional analysis. Defendants state: "for purposes of determining whether the Attorney General was pursuing *parens patriae* interests, it was important [for the Court] to distinguish between those remedies that would enure to the state and those that were for the benefit of individual consumers." *Id.* at 8 (citing *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 748 F. Supp. 2d 580, 590 (S.D. W. Va. 2010) (Copenhaver, J.)). The State agrees.

Consistent with the foregoing, the State's Complaint and its Motion to Remand details the damages ***to the State*** caused by Defendants' illegal activities and the relief the State seeks as a result—in other words, the State's "interest[s] *apart from the interests of particular private parties* . . . ." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 606 (1982) (emphasis

-5-

added); *see also*, *Defs.' Resp.*, ECF 66, at 4. Nonetheless, Defendants attempt the tricky maneuver of recasting the State's claims and the State's damages as instead being claims and damages belonging to individual citizens. This maneuver fails.

"It is well-settled that "'[s]ince neither a state nor its alter ego is a citizen for purposes of diversity jurisdiction", a suit between a state, or its alter ego, and a citizen of another state is not a suit between citizens of different states and diversity jurisdiction does not exist.'" *Minnesota Mining*, 354 F. Supp.2d at 663. Defendants have not and are unable to point to 100 or more persons with monetary claims who are the real parties in interest in this action because the State is asserting damages in its own right, and is the real party in interest in this action. Accordingly, Defendants are unable to satisfy the numerosity or minimal diversity requirements necessary to establish this action is a "mass action" under CAFA.

A. **Defendants' Cited Defenses to the State's Authority to Assert the Claims in This Action Does Not Alter the Reality That the State Is the Real Party in Interest**

Defendants desperately cling to the idea that if the State cannot assert the claims stated in the Complaint (*i.e.*, that the Complaint fails to state a claim under Rule 12(b)(6)), the unidentified citizens of West Virginia thereby are imbued with "real party in interest" status—even though the damages sought ***are the State's damages***. Defendants spend a significant amount of time discussing why they believe the State is unable to bring these claims by misrepresenting the nature of the State's claims and the damages sought as relief in this action.[3] In doing so they ignore the well-established

---

[3]    This Court recognized that a "defendants' argument concerning the attorney general's authority is more properly framed . . . [as an allegation] that the state was fraudulently joined as a party in order to defeat diversity jurisdiction." *Minnesota Mining*, 354 F. Supp. 2d at 665–66. Defendants also acknowledge the Court previously has reached this conclusion, yet they nonetheless spend the majority of their brief arguing the State has no authority to bring these claims in the context of their real party in interest argument. *Defs.' Resp.*, ECF 66, at 17–18.

legal principle that "courts should 'resolve all doubts about the propriety of removal in favor of retained state court jurisdiction.'" *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999) (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)). Significantly, they also must ignore this Court's pronouncement in *Minnesota Mining*, *supra*, that "*ultra vires* pursuit of recompense for the state [does not] convert [a state officer] into the real party in interest for diversity purposes under these circumstances." *Minnesota Mining*, 354 F. Supp. 2d at 665.[4] Indeed, Defendants' argument asks this Court to examine the State's Complaint under the motion to dismiss standard in Rule 12(b)(6) of the Federal Rules of Civil Procedure and turn the Rule 12(b)(6) analysis into a jurisdictional one. *Defs.' Resp.*, ECF 66, at 11. Once again, in conflating these two standards, Defendants crafted an argument that is circular and self-defeating.

A careful examination of Defendants' proposed analysis of the State's interests in this action in comparison with the actual standard for who constitutes the real party in interest reveals Defendants' attempt to distract the Court with a strawman argument. In its brief in support of its Motion to Remand, the State cites the following widely accepted real party in interest test:

> "Whether a state is the real party in interest for diversity purposes must be determined by looking at the 'essential nature and effect of the proceeding.' In particular, a state, as a plaintiff, is the real party in interest for diversity purposes 'when the relief sought is that which enures to it alone, and in its favor the judgment or decree, if for the

---

[4] Defendants spend a footnote attempting to differentiate this action from the cases decided in the Seventh and Ninth Circuits, as well as the *CVS Pharmacy* decisions by this Court and the Fourth Circuit, in an effort to undermine *Minnesota Mining*. *Defs.' Resp.*, ECF 66, at 5 n.3, 5–6. Rather than repeat why these cases are more similar than not to the instant action, the State instead directs the Court's attention to pages 6–14 of its Memorandum in Support of its Motion to Remand, including footnotes. Most importantly, none of these cases cited by Defendants stand for the premise on which Defendants hinge their removal argument: that an allegedly *ultra vires* claim by the State transforms the State's claims pursuing relief for damages to the State's interests into interests that are instead asserted by specific citizens of West Virginia.

plaintiff, will effectively operate.'"

*Minnesota Mining*, 354 F. Supp.2d at 665 (*quoting State of West Virginia v. Morgan Stanley & Co., Inc.*, 747 F. Supp. 332, 337 (S.D. W. Va. 1990) (Copenhaver, J.)). Thus, in ascertaining whether the State is the real party in interest a court examines two things: (1) what is the main purpose of the proceeding and (2) whether the relief sought will enure to the State. In the instant case, the State of West Virginia satisfies both prongs.

First, the purpose of this action is to address

> "the epidemic of prescription drug abuse and its costs. Prescription drug abuse **costs the State of West Virginia** hundreds of millions of dollars annually. Beyond the actual dollars lost, prescription drug abuse devastates families, communities and reduces the State's economic productivity. Prescription drug abuse adversely **affects West Virginia's** hospitals, schools, courts, social service agencies, jails and prisons as well as diminishing the very quality of life in our cities and towns."

*Compl.* ¶ 1 (emphasis added). In pursuing this action, the State aims to rectify the intertwined statewide economic, criminal justice and health-related damages caused by the prescription drug abuse epidemic in West Virginia, costs of which are borne by the State.

Second, the State, through this action, pursues relief for the damages it has suffered as result of the prescription drug abuse epidemic. As the State exhaustively detailed in its Motion to Remand, the damages and relief the State pursues through this action enure to it, and it alone. *Mem. in Supp. of Mot. to Remand*, ECF 57, at 2, 8–14. In each claim, the State asserts its *parens patriae* interests by enforcing its own laws—a sovereign interest—and by protecting the health and order of its communities. *CVS Pharmacy*, 748 F. Supp. 2d at 592 ("States have a quasi-sovereign interest in the well-being of their citizens. More specifically, states have a quasi-sovereign interest in their citizens'

health and well-being, both physical and economic."). The State seeks to relieve the additional strain on the services the State provides, including the State's "hospitals, schools, courts, social service agencies, jails and prisons." *Compl.* ¶ 1. These are interests that no entity or individual *other than the State* could assert. Contrary to Defendants' contention, there is no fear of "duplicative recoveries by a sovereign and its citizens in [this] *parens patriae* setting." *CVS Pharmacy*, 748 F. Supp. 2d at 591 (citing *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 257 (1972)). The State's action satisfies both prongs of the test easily: it is the real party in interest.

Nonetheless, Defendants ask the Court to make an unprecedented leap from a 12(b)(6) analysis—whether the State has authority to assert these claims and seek relief—to the conclusory, unsubstantiated pronouncement that since the State cannot make these claims, the individual consumers of West Virginia therefore are the real parties in interest. What Defendants fail to do, however, is make any argument at all as to how these individuals have any right or interest that allows them to assert claims for damages the **State** has suffered as a result of the Defendants' actions. Defendants cannot, in fact, make any such argument because the West Virginia citizens Defendants so desperately wish to bring into this suit likewise would, under the same 12(b)(6) analysis Defendants urge this Court to adopt at the remand stage, be eliminated as the real parties in interest. These West Virginia citizens have no interest in the State's claims and therefore no standing to assert them. The damages and relief sought in this action enure to the State as an entity, and Defendants cannot satisfy the numerosity or minimal diversity requirements for CAFA jurisdiction. *See Defs. Resp.*, ECF 66, at 14 ("These Defendants do not dispute that if the Attorney General were the sole real party in interest, they could not establish CAFA's numerosity requirements.").

> **i.** **Whether the State may bring claims under Article 5 of the WVCCPA does not alter the fact these damages are damages suffered by the State, and the State alone**

Whether the State may bring the stated claim is, again, an issue that the state court judge may address upon a Rule 12(b)(6) motion—it is not the appropriate inquiry for jurisdictional purposes.[5] Defendants place great emphasis on the State's assertion of claims for damages under Article 5 of the West Virginia Consumer Credit and Protection Act ("WVCCPA"). While perhaps relevant under Rule 12(b)(6), whether or not the State can actually assert a claim under Article 5 for its own actual damages is irrelevant for jurisdictional purposes.[6] Instead, what is relevant is that these actual

---

[5]      Try as they might, Defendants cannot transform the State's claims into something they are not. The State is not bringing any claims for individuals, and assuming *arguendo* the Complaint could be construed otherwise, the State disclaims such construction or intent. This lawsuit is for damages to the State, not for a class or group of individuals.

[6]      Article 5 is entitled, "Civil Liability and Criminal Penalties." The Supreme Court of Appeals has refused to address whether Article 5 defenses apply to the Attorney General. *See State ex rel. McGraw v. Telecheck Servs.*, 213 W. Va. 438, 450, n.19 (2003) ("W.Va. Code, 46A-5-101(8) [1974] provides that certain conduct may not violate the WVCCPA if the conduct was the result of a 'bona fide error of fact notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation or error. . . .' *Id.* Because of the location of this defense in the relatively complex scheme of the WVCCPA, the applicability vel non of this section to Telecheck and the UDAP claims made by the Attorney General against it is unclear, and we make no ruling on that issue.").

One of the two specific provisions of the WVCCPA is section 46A-5-104, that states, "[i]n any claim brought under this chapter applying to illegal, fraudulent or unconscionable conduct or any prohibited debt collection practice, the court may award all or a portion of the costs of litigation, including reasonable attorney fees, court costs and fees, to the consumer." *Id.* (emphasis added). While Defendant seizes on the last word in that sentence, "consumer," in an effort to transform the State's obvious pursuit of its own damages into something it is not, the text of this section clearly is not limited to individual consumer claims. The section refers to "*any* claim" brought under this "chapter," thereby unequivocally including the entirety of the WVCCPA set forth in Chapter 46A. It is beyond cavil that "any claim" under Chapter 46A must include "any claim" made by the Attorney General on behalf of the State. Indeed, adhering to the broad remedial authority afforded to the Attorney General, *see, e.g., State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 174 W. Va. 770, 781 (1995) ("Many courts interpret the powers of their State's Attorney General broadly . . ."), the appropriate reading of section 5-104 is that the Court may, in fact, award costs of litigation

-10-

damages are ***damages suffered by the State***, and not the individual citizens of West Virginia.[7] Defendants conveniently ignore the fact that the interests and damages sought in Count III of the State's Complaint as "actual damages" under Article 5 are the <u>State's damages</u>. Specifically, the State asserts claims under the WVCCPA for Defendants' violations of the State Board of Pharmacy's promulgated rules and regulations under the West Virginia Uniform Controlled Substances Act. *Compl.* ¶¶ 32–35.

Because the basis for the WVCCPA claim is Defendants' violations of the Uniform Controlled Substances Act, the State necessarily incorporates therein the litany of damages <u>incurred by the State</u> as a result of these violations stated in Counts I and II of the Complaint. Nowhere in Counts I, II or III does the Complaint refer to the harms suffered by specific individuals as a result of their prescription drug addiction. Instead, the Counts refer only to the damages to the <u>State of West Virginia</u> as a result of Defendants' violations of state law. *See, e.g.*, *Compl.* ¶¶ 15, 19–21, 24, 28, 34, 37.

Again, Defendants raise the specter of an allegedly "unauthorized claim" by the State and again, the strawman argument collapses upon examination. By merely adding the phrase "claims of consumers," Defendants cannot transform the pursuit of the State's own actual damages into the

---

to the State.

[7]     Defendants also vaguely cite to state court civil actions brought by individual plaintiffs who are represented by a private attorney. The Chief Deputy Attorney General is counsel of record in this action, and the state court actions referred to by Defendants are not related to the case at bar. *Minnesota Mining*, 354 F. Supp. 2d at 666, n.6.

Additionally, Defendants' reference to those state court actions actually ***supports*** the State's Motion to Remand because those actions are cases where individuals are asserting claims and damages that enure to them, and ***not to the State.*** Such cases stand in contrast to the instant action where the State asserts only claims and damages that enure to ***the State***.

pursuit of "'actual damages' of [individual] consumers under Article 5 of the Act." *Defs.' Resp.*, ECF 66, at 7. Defendants want the Court to examine the instant action by questioning whether the State has authority to assert a claim under Article 5 of the WVCCPA. However, as this is a Motion to Remand and not a Rule 12(b)(6) motion to dismiss, the relevant questions are to whom would the State's actual damages enure and what is the purpose of the litigation. *Minnesota Mining*, 354 F. Supp.2d at 665 (*quoting Morgan Stanley*, 747 F. Supp. at 337). If the State succeeds in this action, the actual damages calculated under Article 5 would be the damages caused to the State in the additional costs it bears as a result of Defendants' wrongful conduct, such as the additional costs for providing public services such as in the court system, the jails, social service agencies, and the public health system. *Compl.* ¶¶ 1, 6, 19, 28, 37. Here, such damages unquestionably enure to the State. There is no mention in Count III of any interest of any individual West Virginia citizen. Thus, regardless of the State's authority to assert the claim, it is the real party in interest.

### ii. The Attorney General is authorized to enforce the Uniform Controlled Substances Act[8]

The plain text of *West Virginia Code* § 60A-5-501(c) clearly establishes the Attorney General may bring cases to enforce the West Virginia Uniform Controlled Substances Act.[9] The full text of this provision reads: "All prosecuting attorneys **and the attorney general, or any of their**

---

[8] The State does not fully brief all of the arguments it has to rebut Defendants' disguised 12(b)(6) motion to dismiss. However, it is plainly apparent the State states a cognizable claim.

[9] Defendants first challenge the Attorney General's authority by citing the two preceding sub-sections of § 60A-5-501 as establishing other entities are responsible for the enforcement of this Act. However, the powers conferred in these sub-sections are limited and are non-litigation related. The only reference to an individual able to bring a litigation or other court-related action under the Uniform Controlled Substances Act is restricted to sub-section (c).

-12-

**assistants, shall assist in the enforcement of all provisions of this act *AND*** shall cooperate with all agencies charged with the enforcement of the laws of the United States, of this State, and of all other states relating to controlled substances." *W. Va. Code* § 60A-5-501(c). Significantly, there are two operative clauses in this provision. First, the attorney general "shall assist in the enforcement of all provisions of this act." While Defendants argue the words "shall assist" should be read as meaning "shall assist" limits the Attorney General's obligation to enforce the Uniform Controlled Substance Act, West Virginia law shows such an interpretation is wrong: "The word 'shall', in the absence of language in the statute showing a contrary intent on the part of the legislature, should be afforded a mandatory connotation." Syllabus Point 2, *Terry v. Sencindiver*, 153 W.Va. 651, 171 S.E.2d 480 (1969). Far from limiting the Attorney General's duties and powers, the words "shall assist in the enforcement of all provisions of this Act" confer a mandatory obligation on the Attorney General to do exactly what he is doing in this case—helping the State enforce the Uniform Controlled Substances Act. *Compl.* at Counts I–II.

The second clause of the provision is the only portion requiring the Attorney General work with other entities, stating the Attorney General " shall cooperate *with all agencies* charged with enforcement of the laws . . . relating to controlled substances." *Id.* (emphasis added). The Legislature affirmatively required the Attorney General to assist in the enforcement of all provisions of the Act. That mandatory duty is contrasted with the more limited duty "to cooperate" with any federal agency, in-state agency, or out-of-state agency charged generally with enforcing laws relating to controlled substances. The Attorney General's specific, mandatory duty to help the State enforce the Uniform Controlled Substances Act is not one that can be voided by another state officer or agency. There is no limitation or constraint put on the Attorney General's mandatory duty and

-13-

authority under this provision. Accordingly, by the plain text of *West Virginia Code* § 60A-5-501(c), the Attorney General not only has the authority to bring this action to enforce the rules and regulations promulgated pursuant to the Uniform Controlled Substances Act, but he is obliged to do so.

### iii.     The State pursues relief for the damages it has suffered through its asserted common law and antitrust claims

Defendants acknowledge their entire argument is based on a 12(b)(6) analysis. *Defs.' Resp.*, ECF 66, at 11; *see also id.* at 10 n.6 (citing various cases and arguments in an attempt to undermine the validity of the State's claim, *i.e.*, essentially arguing the State failed to state a claim upon which relief can be granted). Defendants attempt to conceal this fact by again recasting the State's damages as damages suffered by individuals. However, as detailed in the State's Motion to Remand, each common law claim and the antitrust claim[10] specifically seek relief and damages suffered by the State as a result of Defendants' wrongful activities. *See Mem. in Supp. of Mot. to Remand*, ECF 57, at 2, 9–10, 11–12. In fact, Defendants can make no more than a conclusory statement in support of their contention that the State's claims somehow are individuals claims. *Defs.' Resp.*, ECF 66, at 12.

Defendants attempt to make an example out of one single claim, the medical monitoring claim, but there too, Defendants fail.[11] The purpose of the medical monitoring claim is to address

---

[10]     As stated in footnote six of the State's Memorandum in Support of its Motion to Remand: "the only monetary damages asserted in this action are those that enure to the State, alone. There are no monetary damages sought in this action based on damages suffered by individual West Virginia citizens." *Mem. in Supp. of Mot. to Remand*, ECF 57, at 11 n.6 (citing *Madigan*, 665 F.3d at 773–74 (concluding a *parens patriae* claim was not subsumed by CAFA jurisdiction merely because treble damages were sought on behalf of Illinois residents)). The assertion of an antitrust claim does not automatically confer class action or CAFA status.

[11]     Even assuming *arguendo* the medical monitoring claim would somehow be found to be a claim on behalf of individuals, this action should still be remanded to the Circuit Court of

damages suffered by the State itself, and to stem those damages going forward. The prescription drug abuse fueled by Defendants' wrongful conduct leads not just to health care issues, but to widespread negative societal impacts the State must expend its resources to remedy. As stated in the Complaint, these impacts include (but are by no means limited to) costs for the criminal justice system, social services, health care and decreased economic productivity.

For example, medical monitoring of addicts would alleviate a burden on the State's criminal justice system as a result of the increased criminal actions by those individuals suffering from these addictions. Specifically citing West Virginia as a State devastated early on by prescription drug abuse, the Eastern District of New York cited the well-recognized link between this epidemic and an increase in criminal activity: "Law enforcement agencies are increasingly 'reporting that pharmaceutical diversion and abuse pose the greatest drug threat to their areas, in part because of increases in associated crime and gang involvement.'" *United States v. Ilayayev*, 800 F. Supp. 2d 417, 430, 432 (E.D.N.Y. 2011) (quoting Nat'l Drug Intelligence Ctr., U.S. Dep't of Justice, *National Drug Threat Assessment 2010*, 42 (2010)). For example, the prescription drug abuse epidemic has led to a corresponding "'epidemic' of pharmacy robberies [that] has pharmacists around the country understandably concerned for their safety and for the safety of their customers. Pharmacists' worries are well founded in light of the often violent nature of the robberies, which can sometimes turn deadly." *Id.* at 433–34 (citations omitted).

---

Boone County, West Virginia. Count VII is a small portion of the relief sought in this action. Under the "whole complaint"approach, the "essential nature and effect of the proceedings" is to hold Defendants responsible for their violations of the Uniform Controlled Substances Act and achieve relief for the State for the damages it has suffered as a result of the prescription drug addition epidemic currently assailing the State. *Madigan*, 665 F.3d at 773 (citations and internal quotations omitted). The State is the overwhelming force behind this action and for whom the action seeks relief. Accordingly, remand is appropriate.

Thus, contrary to Defendant's arguments, the State's claim is not on behalf of individual addicts. The State asserts this claim on its own behalf in order to offset the expenses the State has borne and continues to bear in providing for criminal justice and community safety, and for rehabilitation, social services, health care, to rid prescription drug addicts of their addictions and thereby protect the State's communities. *Compl.* ¶¶ 1, 43, 48. By their nature, medical monitoring claims are dependent on certain individual characteristics (such as addiction here)—but mention of individuals in this case is an incidental component of the State's claim. By asserting a medical monitoring claim, the State seeks to transfer at least a portion of the responsibility for and cost of the care of the prescription drug addicts from the State to Defendants who, in this case, repeatedly have violated state regulations and caused the associated problems that now plague West Virginia's communities. This relief will thereby alleviate the costs and damages the State has thus far borne alone for the provision of state services and decrease the burden on the State's courts, prisons, and its entire state criminal justice system by eliminating a major cause of criminal activity in West Virginia. Thus, the State asserts this claim as part of its quasi-sovereign interest in the health, welfare and safety of its citizens and its communities, and to help control crime and promote public safety. *CVS Pharmacy*, 748 F. Supp. 2d at 592. This claim seeks relief for the State itself and therefore, it is the real party in interest.

### B.   Fraudulent Joinder

Curiously, Defendants urge this Court to abandon the well-reasoned fraudulent joinder analysis expressed in *Minnesota Mining* on the basis of one case they stretch far beyond the intent

of the Supreme Court of Appeals of West Virginia.[12]  In *State ex rel. McGraw v. Bear, Stearns &
Co.*, 217 W. Va. 573, 618 S.E.2d 582 (2005), it made a very narrow finding that "[t]he Attorney
General of West Virginia does not have the authority pursuant to *W. Va. Code* § 46A-6-104 (1974)
of the *Consumer Credit and Protection Act* to bring an action based upon conduct that is ancillary
to the ***general business of buying and selling securities.***"  *Id.* at Syllabus Point 2 (emphasis added).
*Bear Stearns* does not stand for a broad restriction of the Attorney General's powers under the
WVCCPA.  *See, e.g.*, *CVS Pharmacy*, 646 F.3d at 175.  In reaching its conclusion, the Supreme
Court of Appeals

> emphasize[d] that this opinion should not be read as an attempt to in
> any way diminish the power of the office of the Attorney General.
> This Court recognizes and respects the powers granted the Attorney
> General by the Constitution and by statute, including the authority to
> enforce the provisions of the consumer protection act.

*Bear, Stearns*, 217 W. Va. at 579.  Instead, the Supreme Court of Appeals's decision was dependent
on its "understanding of the Legislature's intent in drafting *W. Va. Code* § 46A-6-104[,]" the nature
of the highly regulated securities industry, and the history of the State's enactment of the WVCCPA
and the Uniform Securities Act.  *See generally*, *id.*  Simply put, this is not a securities case, so *Bear,
Stearns* has no applicability here.[13]

---

[12]    For brevity's sake, the State only addresses the new argument asserted in Defendants'
Response.  The State directs the Court to pages 15 through 17 for the remainder of its arguments on
fraudulent joinder.  *Mem. in Supp. of Mot. to Remand*, ECF 57, at 15–17.

[13]    To find *Bear, Stearns* controlling in this instance where a different interplay between
statutes is at issue would also require the Court to abandon the following observation it made in
*Minnesota Mining*, *supra*:

> In all events, a jurisdictional inquiry is not the appropriate stage of
> litigation to resolve . . . various uncertain questions of law and fact.
> Allowing joinder of public defendants is proper . . . because courts

## C.     The Eleventh Amendment Serves as a Bar to Removal of This Action

Defendants treat the State's Eleventh Amendment argument as an either, or proposition: either the Eleventh Amendment bars the removal of this action, or it does not.  This treatment ignores the State's argument.[14]  This sentence in the State's Motion to Remand summarizes its argument: "As is made obvious by Defendants' failure to identify such statutory language, CAFA is devoid of a statement of unequivocal congressional intent to force a state to litigate a violation of its own laws in federal court."  *Mem. in Supp. of Mot. to Remand*, ECF 57, at 20.  In *CVS Pharmacy*, *supra*, the Fourth Circuit recognized the importance of the federalism and comity principles inherent in the Eleventh Amendment, observing:

> should minimize threshold litigation over jurisdiction.  Jurisdictional rules direct judicial traffic.  They function to steer litigation to the proper forum with a minimum of preliminary fuss.  The best way to advance this objective is to accept the parties [as] joined . . . unless joinder is clearly improper.  To permit extensive litigation of the merits of a case while determining jurisdiction thwarts the purpose of jurisdictional rules.
>
> ***
>
> We cannot predict with certainty how a state court and state jury would resolve the legal issues and weigh the factual evidence in this case.  Hartley's claims may not succeed ultimately, but ultimate success is not required . . . .

*Minnesota Mining*, 354 F. Supp. 2d at 666 (quoting *Hartley*, 187 F.3d at 425–26).  Defendants ask this Court to extend the Supreme Court of Appeals's limited holding in *Bear, Stearns* to a heretofore unexamined situation in the context of a fraudulent joinder analysis.  This alone warrants a rejection of Defendants' argument.  Moreover, as established in the State's Motion to Remand and reasserted *supra*, footnote 11, there is, at the very least, much more than a "glimmer of hope" the State's antitrust claim would survive. The State has plead its claims properly, and it has the authority to raise them on the State's behalf.  Accordingly, Defendants' fraudulent joinder argument fails, and removal should be denied on this ground as well.

[14]     Rather than repeat its argument, the State directs the Court's attention to page 17 through 20 of its Memorandum in Support of Its Motion to Remand.

> While it is true that West Virginia voluntarily entered into its own
> courts to enforce its laws, it did not voluntarily consent to removal of
> its case to a federal court, and <u>a federal court should be most reluctant
> to compel such removal, reserving its constitutional supremacy only
> for when removal serves an overriding federal interest</u>.  *See
> Tennessee v. Davis*, 100 U.S. 257, 266–67, 25 L. Ed. 648 (1880).

*CVS Pharmacy*, 646 F.3d at 178 (emphasis added).  Here, as in *CVS Pharmacy*, *supra*, the State is

enforcing its own laws and seeking its own damages in its *parens patriae* capacity.  Therefore,

Defendants' cited authorities do not control in this instance, and the Eleventh Amendment and its

attendant principles of federalism and comity prohibit removal.

## IV.    CONCLUSION

For all the foregoing reasons and the reasons stated in its initial brief, the State's Motion to

Remand should be granted and this action should be remanded to the Circuit Court of Boone County,

and the State awarded its fees and costs.

Respectfully submitted,

**STATE OF WEST VIRGINIA ex rel.**
**DARRELL V. MCGRAW, JR.**
**ATTORNEY GENERAL**

<u>/s/ Sean P. McGinley</u>
Frances A. Hughes (WV Bar No. 1816)
Chief Deputy Attorney General
**OFFICE OF THE ATTORNEY GENERAL**
Building 1, Room 26-E
Capitol Complex
Charleston, WV  25305
(304) 558-2021
(304) 558-0140 facsimile

-19-

Rudolph L. DiTrapano (WV Bar No 1024)
Sean P. McGinley (WV Bar No. 5836)
Robert M. Bastress, III (WV Bar No. 9616)
Katherine R. Snow (WV Bar No. 11730)
**DiTRAPANO, BARRETT & DiPIERO, PLLC**
604 Virginia Street East
Charleston, WV 25301
(304) 342-0133
(304) 342-4605 facsimile
http://www.dbdlawfirm.com

James M. Cagle (WV Bar No. 580)
**CAGLE & JACKSON ATTORNEYS**
P.O. Box 12326
Big Chimney Station
Charleston, WV 25301
(304)-342-3174
(304)-342-0448 facsimile

*Counsel for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**STATE OF WEST VIRGINIA**
*ex rel.* **DARRELL V. MCGRAW, JR.,**
**ATTORNEY GENERAL,**

        Plaintiff,

v.                                 Civil Action No. 2:12-CV-3760
                                     (Hon. John T. Copenhaver, Jr., Judge)

**AMERISOURCEBERGEN DRUG**
**CORPORATION**, *et al.*,

        Defendants.

<u>**CERTIFICATE OF SERVICE**</u>

       I, Sean P. McGinley, counsel for the State of West Virginia, do hereby certify that on the 1st day of October, 2012, a copy of the foregoing **STATE OF WEST VIRGINIA'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR REMAND AND FOR COSTS** was filed with the Clerk of the Court and served electronically *via* the CM/ECF electronic filing system on the following counsel who are participants in the system:

Roger L. Foster
Julia Chico Abbitt
JACKSON KELLY, PLLC
150 Clay Street, Suite 500
P.O. Box 619
Morgantown, WV 26507-0619
    *Counsel for Defendant JM Smith Corp.*
        *d/b/a Smith Drug Co.*
Alvin L. Emch
Laurie K. Miler
JACKSON KELLY, PLLC
500 Lee Street East, Suite 1600
Charleston, WV 25301-3202
    *Counsel for Defendant AmerisourceBergen Drug Corp.*

Eric W. Sitarchuk
Meredith S. Auten
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103-2921
    *Counsel for Defendant AmerisourceBergen Drug Corp.*

Thomas J. Hurney
David A. Barnette
JACKSON KELLY, PLLC
500 Lee Street East, Suite 1600
Charleston, WV 25301-3202
    *Counsel for Defendant Miami-Luken, Inc.*

David B. Thomas
Susan M. Robinson
Bryant J. Spann
Robert H. Akers
THOMAS COMBS & SPANN PLLC
P.O. Box 3824
Charleston, WV 25338-3824
    *Counsel for Defendant The Harvard Drug Group, LLC*

Charles M. Love, III
Fazal Shere
BOWLES RICE MCDAVID GRAFF & LOVE LLP
600 Quarrier Street East
Charleston, WV 25301
    *Counsel for Defendant Anda, Inc.*

Webster J. Arceneaux, III
Ramonda Lyons
LEWIS GLASSER CASEY & ROLLINS, PLLC
BB&T Square, Suite 700
300 Summers Street
P.O. Box 1746
Charleston, WV 25326-1746
    *Counsel for Defendant Associated Pharmacies, Inc.*

W. Henry Jernigan
Mark Carter
DINSMORE & SHOHL
Huntington Square, 900 Lee Street, Suite 600
Charleston, WV 25301
    *Counsel for Defendant Auburn Pharmaceutical Co.*

Nathan Upfal
THE LAW OFFICES OF JACKIER GROULD
121 West Long Lake Road, Suite 200
Bloomfield Hills, MI 48304
    *Counsel for Defendant Auburn Pharmaceutical Co.*

Rebecca A. Betts
Pamela C. Deem
BETTS HARDY & RODGERS, PLLC
500 Lee Street East, Suite 800
P.O. Box 3394
Charleston, WV 25333-3394
    *Counsel for Defendant H.D. Smith Wholesale Drug Co.*

Larry Mackey
Dean Barnhard
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN 46204-3535
    *Counsel for Defendant H.D. Smith Wholesale Drug Co.*

Niall A. Paull
SPILMAN THOMAS & BATTLE, PLLC
Spilman Center
300 Kanawha Blvd, East
Charleston, WV 25301
    *Counsel for Defendant Keysource Medical, Inc.*

Nathan B. Atkinson
SPILMAN THOMAS & BATTLE PLLC
110 Oakwood Drive, Suite 500
Winston-Salem, NC 27103
    *Counsel for Defendant Keysource Medical, Inc.*

Tom Flaherty
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box 3843
Charleston, WV 25338-3843
   *Counsel for Defendant Masters Pharmaceutical, Inc.*

Charles Bailey
Robert Martin
David E. Schumacher
John P. Fuller
BAILEY & WYANT
P.O. Box  3710
Charleston, WV  25337-3710
   *Counsel for Defendant Quest Pharmaceuticals, Inc.*

David B. Thomas
Susan M. Robinson
Bryant J. Spann
Robert H. Akers
THOMAS COMBS & SPANN PLLC
P.O. Box 3824
Charleston, WV 25338-3824
   *Counsel for Defendant Richie Pharmacal Co., Inc.*

Robert J. Ridge
Alan Lopus
THORP REED & ARMSTRONG
One Oxford Centre
301 Grant Street, 14th floor
Pittsburgh, PA 15219
   *Counsel for Defendant Top Rx, Inc.*

Paul F.T. Edwards
Michael Marshall
E. Gene Thornton, III
EVANS PETREE
1000 Ridgeway Loop Road, Suite 200
Memphis, TN 38120
   *Counsel for Defendant Top Rx, Inc.*

                                    /s/ Sean P. McGinley
                                    Sean P. McGinley