# Exhibit 11

# JACKSONKELLY PLLC

500 LEE STREET EAST • SUITE 1600 • P.O. BOX 553 • CHARLESTON, WEST VIRGINIA 25322 • TELEPHONE: 304-340-1000 • TELECOPIER: 304-340-1130
www.jacksonkelly.com

E-mail Address: aemch@jacksonkelly.com
Direct Dial No.: 304-340-1172
Fax No.: 304-340-1050

April 24, 2018

Mr. Joseph Rucki, Clerk
Circuit Court of Marshall County
Marshall County Courthouse
600 Seventh Street
Moundsville, WV 26041

Re:   ***Brooke County Commission, et al., v. Purdue Pharma, L.P., et al.***
Circuit Court of Marshall County, West Virginia
Civil Action Nos.:  17-C-248 through 17-C-255

Dear Mr. Rucki:

Enclosed for filing please find ***AmerisourceBergen Drug Corporation, Cardinal Health, Inc. and McKesson Corporation's Motion to Dismiss Plaintiffs' Complaint*** and ***Memorandum in Support of AmerisourceBergen Drug Corporation, Cardinal Health, Inc. and McKesson Corporation's Motion to Dismiss Plaintiffs' Complaint.***

Thank you for your attention in this matter.

Very truly yours,

A. L. Emch

ALE/bab

Enclosure

cc:   Honorable David W. Hummel, Jr.
Counsel of Record

**IN THE CIRCUIT COURT OF MARSHALL COUNTY, WEST VIRGINIA**

| | |
|---|---|
| BROOKE COUNTY COMMISSION,<br>HANCOCK COUNTY COMMISSION,<br>HARRISON COUNTY COMMISSION,<br>LEWIS COUNTY COMMISSION,<br>MARSHALL COUNTY COMMISSION,<br>OHIO COUNTY COMMISSION,<br>TYLER COUNTY COMMISSION, and<br>WETZEL COUNTY COMMISSION,<br>*Plaintiffs*,<br><br>v.<br><br>PURDUE PHARMA L.P.; PURDUE PHARMA INC.; THE PURDUE FREDERICK COMPANY, INC.; MARK RADCLIFFE; MARK ROSS; PATTY CARNES; TEVA PHARMACEUTICALS USA, INC.; CEPHALON, INC.; JANSSEN PHARMACEUTICALS, INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC., n/k/a Janssen Pharmaceuticals, Inc.; JANSSEN PHARMACEUTICA, INC., n/k/a Janssen Pharmaceuticals, Inc.; JOHNSON & JOHNSON; ENDO HEALTH SOLUTIONS INC.; ENDO PHARMACEUTICALS, INC.; ALLERGAN plc; ACTAVIS plc; ACTAVIS, INC.; ACTAVIS, LLC; ACTAVIS PHARMA, INC.; WATSON PHARMACEUTICALS, INC.; WATSON PHARMA, INC.; WATSON LABORATORIES, INC.; MCKESSON CORPORATION; CARDINAL HEALTH, INC.; AMERISOURCEBERGEN DRUG CORPORATION; RITE AID OF MARYLAND, INC.; KROGER LIMITED PARTNERSHIP II; CVS INDIANA, L.L.C.; WAL-MART STORES EAST, LP; GOODWIN DRUG COMPANY; WEST VIRGINIA BOARD OF PHARMACY; DAVID POTTERS; EDITA P. MILAN, M.D.; TRESSIE MONTENE DUFFY, M.D.; EUGENIO ALDEA MENEZ, M.D.; SCOTT JAMES FEATHERS, D.P.M.; and AMY LYNN BEAVER, P.A.-C,<br>*Defendants*. | Civil Action No.:  17-C-248<br>Civil Action No.:  17-C-249<br>Civil Action No.   17-C-250<br>Civil Action No.   17-C-251<br>Civil Action No.:  17-C-252<br>Civil Action No.:  17-C-253<br>Civil Action No.:  17-C-254<br>Civil Action No.:  17-C-255<br><br>Judge:  David W. Hummel, Jr. |

**AMERISOURCEBERGEN DRUG CORPORATION, CARDINAL HEALTH AND MCKESSON CORPORATION'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendants AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation (collectively "Distributor Defendants"), pursuant to Rules 8(a), 9(b) and 12(b)(6) of

1

the West Virginia Rules of Civil Procedure, hereby move to dismiss the Plaintiffs' Complaint for the reasons set forth below and in the accompanying Memorandum in Support of Motion to Dismiss Plaintiffs' Complaint.

1.      The Counties' Complaint should be dismissed because the Counties lack standing and legal authority to enforce the West Virginia Controlled Substances Act ("WVCSA"), whether directly or under the guise of the common law.  All of the Counties' claims against Distributor Defendants are premised upon alleged violations of the WVCSA.  But the Counties have no right—express, implied, or at common law—to enforce the WVCSA, which may be enforced exclusively by the State Board of Pharmacy ("BOP").

2.      All of the Counties' claims fail because the Counties cannot recover the damages they seek because they lack standing, and, even if they had standing, their claims are barred by the free-public-services doctrine, the economic loss rule, and West Virginia Code section 30-5-21(a).

3.      The Counties' negligence claims also fail because Distributor Defendants owe no common law duty to the Counties.  The Counties fail to adequately allege that Distributor Defendants were the actual or proximate cause of the Counties' opioid abuse problem.  The many independent, intervening, and often criminal causes of the opioid abuse problem (as identified by the Counties in their Complaint) break the chain of causation and preclude such a finding.

4.      The Counties claims for Public Nuisance should be dismissed because they fail to allege a public right, an unreasonable interference with that right, or that Distributor Defendants caused the alleged nuisance.

5.      The Counties' claims for unjust enrichment and fraud by concealment should be dismissed.  The Counties cannot recover based upon their unjust enrichment claim because they have failed to plead a benefit conferred on the defendant by the plaintiff.  The Counties' fraud by

2

concealment claims fail to meet West Virginia's heightened pleading requirement for such claims, and the Counties fail to allege factual elements that if proven true would establish fraud by Distributor Defendants.

For these reasons and those more specifically set forth in the accompanying Memorandum in Support of their Motion to Dismiss, Distributor Defendants respectfully request that this Honorable Court dismiss the Plaintiffs' Complaint.

Dated:  24 April 2018

AMERISOURCEBERGEN DRUG
CORPORATION

A. L. Emch (WVSB # 1125)
Gretchen M. Callas (WVSB# 7136)
L. Jill McIntyre (WVSB # 8837)
Adam J. Schwendeman (WVSB # 11989)
JACKSON KELLY PLLC
500 Lee Street, East, Suite 1600
P.O. Box 553
Charleston, WV 25322
Telephone: (304) 340-1000
Facsimile: (304) 340-1130

*Counsel for AmerisourceBergen Drug Corporation
in actions by Brooke, Hancock, Lewis, Marshall,
Tyler and Wetzel County Commissions*

Harry G. Shaffer III (WVSB #3344)
Todd A. Mount (WVSB #6939)
SHAFFER & SHAFFER
P.O. Box 38
Madison, WV 25130
Telephone: (304) 369-0511
Facsimile: (304) 369-5411

*Counsel for AmerisourceBergen Drug Corporation
in Ohio County Commission action*

3

*CARDINAL HEALTH, INC.*

Brian A. Glasser (WVSB# 6597)
Steven R. Ruby (WVSB# 10752)
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, West Virginia  25301
(304) 345-6555

*Counsel for Cardinal Health, Inc.*


**MCKESSON CORPORATION**

Russell D. Jessee (WVSB #10020)
STEPTOE & JOHNSON PLLC
Chase Tower, 17th Floor
P.O. Box 1588
Charleston, West Virginia 25326
(304) 353-8000

*Counsel for McKesson in actions by Brooke,*
*Hancock, Ohio,*
*Tyler and Wetzel County Commissions*

Jeffrey M. Wakefield (WVSB #3894)
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box 3843
Charleston, West Virginia 25338-3843326
(304) 345-0200

*Counsel for McKesson in actions by Lewis and*
*Marshall County Commissions*

4

Daniel C. Cooper (WVSB #5476)
Jamison H. Cooper (WVSB# 8043)
COOPER LAW OFFICES, PLLC
240 West Main Street
Bridgeport, West Virginia  26330
(304) 842-0505

*Counsel for McKesson in action by Harrison County*

IN THE CIRCUIT COURT OF MARSHALL COUNTY, WEST VIRGINIA

| | |
|---|---|
| BROOKE COUNTY COMMISSION, | Civil Action No.: 17-C-248 |
| HANCOCK COUNTY COMMISSION, | Civil Action No.: 17-C-249 |
| HARRISON COUNTY COMMISSION, | Civil Action No. 17-C-250 |
| LEWIS COUNTY COMMISSION, | Civil Action No. 17-C-251 |
| MARSHALL COUNTY COMMISSION, | Civil Action No.: 17-C-252 |
| OHIO COUNTY COMMISSION, | Civil Action No.: 17-C-253 |
| TYLER COUNTY COMMISSION, and | Civil Action No.: 17-C-254 |
| WETZEL COUNTY COMMISSION, | Civil Action No.: 17-C-255 |

*Plaintiffs*,

v.

Judge: David W. Hummel, Jr.

PURDUE PHARMA L.P.; PURDUE PHARMA
INC.; THE PURDUE FREDERICK COMPANY,
INC.; MARK RADCLIFFE; MARK ROSS; PATTY
CARNES; TEVA PHARMACEUTICALS USA,
INC.; CEPHALON, INC.; JANSSEN
PHARMACEUTICALS, INC.; ORTHO-MCNEIL-
JANSSEN PHARMACEUTICALS, INC., n/k/a
Janssen Pharmaceuticals, Inc.; JANSSEN
PHARMACEUTICA, INC., n/k/a Janssen
Pharmaceuticals, Inc.; JOHNSON & JOHNSON;
ENDO HEALTH SOLUTIONS INC.; ENDO
PHARMACEUTICALS, INC.; ALLERGAN plc;
ACTAVIS plc; ACTAVIS, INC.; ACTAVIS, LLC;
ACTAVIS PHARMA, INC.; WATSON
PHARMACEUTICALS, INC.; WATSON PHARMA,
INC.; WATSON LABORATORIES, INC.;
MCKESSON CORPORATION; CARDINAL
HEALTH, INC.; AMERISOURCEBERGEN DRUG
CORPORATION; RITE AID OF MARYLAND,
INC.; KROGER LIMITED PARTNERSHIP II; CVS
INDIANA, L.L.C.; WAL-MART STORES EAST,
LP; GOODWIN DRUG COMPANY; WEST
VIRGINIA BOARD OF PHARMACY; DAVID
POTTERS; EDITA P. MILAN, M.D.; TRESSIE
MONTENE DUFFY, M.D.; EUGENIO ALDEA
MENEZ, M.D.; SCOTT JAMES FEATHERS,
D.P.M.; and AMY LYNN BEAVER, P.A.-C,

*Defendants*.

**MEMORANDUM IN SUPPORT OF AMERISOURCEBERGEN DRUG CORPORATION,
CARDINAL HEALTH, INC. AND MCKESSON CORPORATION'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 3

APPLICABLE LAW ............................................................................................... 4

ARGUMENT .......................................................................................................... 5

I.     THE COUNTIES LACK STANDING TO SUE FOR VIOLATIONS OF THE WVCSA. .............................................................................................................. 5

    A.    Only the Board of Pharmacy (and not the Counties) is Authorized to Enforce the WVCSA. ................................................................................ 5

    B.    The WVSCA Creates No Implied Private Right of Action. ................... 6

    C.    Relabeling WVCSA Claims as Common Law Claims Cannot Save the Counties' Claims. .................................................................................. 8

    D.    The Complaint Does Not Adequately Plead that Distributor Defendants Violated any Anti-Diversion Requirement. .......................................... 10

II.    THE COUNTY'S COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO STATE A COGNIZABLE CLAIM UNDER WEST VIRGINIA LAW. ........ 11

    A.    The Counties Have No Standing to Pursue These Claims. ..................... 11

        1.    The Counties Lack Parens Patriae Authority. ............................ 12

        2.    The Counties may not Recover Indirect Damages. ..................... 12

    B.    The Free-Public-Services Doctrine Bars the Counties' Claim for Damages. ....... 15

    C.    The Economic Loss Rule Bars the Counties' Claims for Recovery of Economic Loss. .................................................................................... 17

    D.    Distributor Defendants are Middlemen From Whom Plaintiffs Cannot Recover Damages. ............................................................................... 18

III.   THE COUNTIES FAIL TO STATE A NEGLIGENCE CLAIM. ...................... 20

    A.    Distributor Defendants Do Not Owe a Common Law Duty to the Counties. ............................................................................................. 20

        1.    The West Virginia Board of Pharmacy (not the Counties) Administers the WVSCA. ......................................................... 20

        2.    Distributor Defendants do not have a Legal Duty to Limit Controlled Substances. ............................................................. 21

        3.    So-Called Industry Standards do not Impose a Legal Duty. ...... 22

    B.    The Counties do not Plausibly Allege Causation. ................................. 23

IV.   THE COUNTIES FAIL TO STATE A PUBLIC NUISANCE CLAIM. ........... 28

A.    The Public Nuisance Doctrine Is Not an All-Purpose Remedy. ............................ 29

B.    The Counties Have Not Identified a Public Right with Which Distributors
       Interfered. ...................................................................................................................... 31

C.    The Counties Have Not Alleged That the Distributor Defendants
       Controlled the Medications When They Caused Injury. ...................................... 35

D.    The Counties Do Not Plausibly Allege Causation. ............................................... 36

E.    The Counties Cannot Recover Damages For a Public Nuisance. ......................... 37

V.    THE COUNTIES HAVE NOT PLED THE ELEMENTS OF UNJUST
       ENRICHMENT. ............................................................................................................. 39

VI.   THE COUNTIES FAIL TO ADEQUATELY PLEAD THE ELEMENTS OF
       FRAUDULENT CONCEALMENT AND FAIL TO MEET THE HEIGHTENED
       PLEADING STANDARD OF RULE 9. ....................................................................... 40

CONCLUSION ........................................................................................................................... 42

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.O. Fox v. Am Tobacco*,
    362 A.D.2d 413 (2d Dept. 2003) ...................................................................................14

*Aikens v. Debow*,
    208 W.Va. 486, 541 S.E.2d 576 (2000).................................................................17, 18, 26

*Am. Heartland Port, Inc. v. Am. Port Holdings, Inc.*,
    53 F. Supp. 3d 871 (N.D.W. Va. 2014), *aff'd per curiam*, 624 F. App'x 110
    (4th Cir. 2015)..........................................................................................................39

*Arbaugh v. Bd. of Educ., Cty. of Pendleton*,
    214 W.Va. 677, 591 S.E.2d 235 (2003) ...........................................................................9

*Ashley County, Arkansas v. Pfizer, Inc.*,
    552 F.3d 659 (8th Cir. 2009) ................................................................................*passim*

*Ashworth v. Albers Med., Inc.*,
    395 F. Supp. 2d 395 (S.D. W. Va. 2005) .......................................................................19

*Baker v. Purdue Pharma L.P.*,
    No. 1:01-0553, 2002 WL 34213424 (S.D. W. Va. Mar. 28, 2002) ...................................19

*Baker v. Smith & Wesson Corp.*,
    2002 WL 31741522 (Del. Super. Nov. 27, 2002) ...........................................................16

*Bertovich v. Advanced Brands & Importing Co.*,
    No. 5:05CV74, 2006 WL 2382273 (N.D. W. Va. Aug. 17, 2006)......................................24

*Blue Cross & Blue Shield of NJ v. Philip Morris, USA Inc.*,
    3 N.Y.3d 200 (2004) ...............................................................................................13, 14

*Brandon Twp. v. Jerome Builders, Inc.*,
    263 N.W.2d 326 (Mich. App. 1977) ..............................................................................16

*Broder v. Cablevision Sys. Corp.*,
    418 F.3d 187 (2d Cir. 2005)..........................................................................................9

*Calhoun Cty. Court v. Mathews*,
    99 W. Va. 483, 129 S.E. 399 (1925)..............................................................................12

*Camden Cty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*,
    273 F.3d 536 (3rd Cir. 2001) .......................................................................................34

*Canyon County v. Syngenta Seeds, Inc.*,
    2005 WL 3440474 (D. Idaho Dec. 14, 2005) ........................................................................ 16

*Christian v. United States*,
    No. 3:12-CV-72, 2013 WL 5913845 (N.D. W. Va. Nov. 4, 2013) .......................................... 9

*City of Chicago v. American Cyanamid Co.*,
    823 N.E.2d 126 (Ill. App. Ct. 2005) .................................................................................... 33

*City of Chicago v. Beretta U.S.A. Corp.*,
    821 N.E.2d 1099 (Ill. 2004) ........................................................................................ *passim*

*City of Flagstaff v. Atchison, Topeka, and Santa Fe Railway Co.*,
    Topeka, 719 F.2d 322 (9th Cir. 1983) ................................................................................. 16

*City of Philadelphia v. Beretta U.S.A. Corp.*,
    277 F.3d 415 (3d Cir. 2002) ................................................................................................ 37

*City of Philadelphia v. Beretta U.S.A., Inc.*,
    126 F. Supp.2d 882 (E.D. Pa. 2000), *aff'd* on other grounds, 277 F.3d 415 (3d
    Cir. 2002) ............................................................................................................................. 17

*City of Philadelphia v. Philadelphia Rapid Transit Co.*,
    10 A.2d 434 (Pa. 1940) ....................................................................................................... 13

*City of Pittsburgh v. Equitable Gas Co.*,
    512 A.2d 83 (Pa. Cmwlth. 1986) ......................................................................................... 17

*Cleaves v. De Lauder*,
    302 F.Supp. 36 (N.D. W. Va. 1969) ................................................................................... 14

*Coffman v. Bank of Am., NA*,
    No. CIV.A. 2:0900587, 2010 WL 3069905 (S.D. W. Va. Aug. 4, 2010) ............................ 9

*Copper Beech Townhome Communities Twenty-Six, LLC*,
    239 W. Va. 741, 806 S.E.2d 172 (2017) .............................................................................. 8

*Crews v. Hollenbach*,
    751 A.2d 481 (Md. 2000) .................................................................................................... 16

*Cty. of Erie v. Colgan Air, Inc.*,
    711 F.3d 147 (2d Cir. 2013) ................................................................................................ 16

*Dep't of Natural Resources v. Wisconsin Power & Light Co.*,
    321 N.W.2d 286 (Wis. 1982) .............................................................................................. 17

*Detroit Bd. of Educ. v. Celotex Corp.*,
    493 N.W.2d 513 (Mich. Ct. App. 1992) ........................................................................ 30, 35

*District of Columbia v. Air Fla., Inc.*,
    750 F.2d 1077 (D.C. Cir. 1984) ................................................................................. 15

*District of Columbia v. Beretta, U.S.A. Corp.*,
    872 A.2d 633 (D.C. 2005) ........................................................................................ 30

*Duff v. Morgantown Energy Assocs.*,
    187 W.Va. 712, 421 S.E.2d 253 (1992) .................................................................... 32

*Emp'r Teamsters-Local Nos. 175/505 Health & Welfare Tr. Fund v. Bristol Myers
    Squibb Co.*,
    969 F. Supp. 2d 463 (S.D. W. Va. 2013) ........................................................ 25, 26, 28

*EQT Prod. Co. v. Wender*,
    191 F. Supp. 3d 583 (S.D. W. Va. 2016) ..................................................................... 8

*Fordham v. Oldroyd*,
    131 P.3d 280 (Utah App. 2006) ................................................................................ 17

*Ganim v. Smith & Wesson Corp.*,
    1999 WL 1241909 (Conn. Super. Dec. 10, 1999), aff'd on other grounds, 780
    A.2d 98 (Conn. 2001) .............................................................................................. 16

*Ganim v. Smith & Wesson Corp.*,
    780 A.2d 98 (Conn. 2001) ........................................................................................ 32

*Gelman Scis., Inc. v. Dow Chem. Co.*,
    508 N.W.2d 142 (Mich. Ct. App. 1993) ..................................................................... 35

*Gen. Pipeline Constr., Inc. v. Hairston*,
    234 W.Va. 274, 765 S.E.2d 163 (2014) ....................................................................... 7

*Hatfield v. Arbor Springs Health & Rehab Ctr.*,
    2012 WL 4476612 (M.D. Ala. Sept. 4, 2012) ............................................................ 10

*Hendricks v. Stalnaker*,
    181 W.Va. 31, 380 S.E.2d 198 (1989) ....................................................................... 32

*Highmark W. Va., Inc. v. Jamie*,
    221 W.Va. 487, 655 S.E.2d 509 (2007) .................................................................. 5, 40

*Hill v. Stowers*,
    224 W.Va. 51, 680 S.E.2d 66 (2009) ........................................................................... 7

*Hurley v. Allied Chem. Corp.*,
    164 W.Va. 268, 262 S.E.2d 757 (1980) ....................................................................... 7

*Jackson v. Putnam Cty. Bd. of Educ.*,
 221 W.Va. 170, 653 S.E. 2d 632 (2007).............................................................................26

*John W. Lodge Distributing Co., Inc., v. Texaco, Inc.*,
 161 W.Va. 603, 245 S.E.2d 157 (1978)............................................................................4, 5

*Johnson v. Ross*,
 419 F. App'x 357 (4th Cir. 2011) ......................................................................................39

*In re Jones*,
 Ch. 13 Case No. 09-14499-BFK, 2011 WL 5025329 (Bankr. E.D. Va. Oct. 21, 2011) .........23

*Jones v. Hobbs*,
 745 F. Supp. 2d 886 (E.D. Ark. 2010), *aff'd*, 658 F.3d 842 (8th Cir. 2011) ............................10

*Kapherr v. MFG Chemicals, Inc.*,
 625 S.E.2d 513 (Ga. App. 2005)........................................................................................16

*Kessel v. Leavitt*,
 204 W.Va. 95, 511 S.E.2d 720 (1998)................................................................................41

*Kodiak Island Borough v. Exxon Corp.*,
 991 P.2d 757 (Alaska 1999).............................................................................................16

*Kopelman & Associates, L.C. v. Collins*,
 196 W.Va. 489, 473 S.E.2d 910 (1996)..............................................................................25

*Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*,
 191 F.3d 229 (2d Cir. 1999).............................................................................................13

*In re Lead Paint Litigation*,
 924 A.2d 484 (N.J. 2007)...............................................................................15, 30, 31, 38

*Lehman Bros. Holdings, Inc. v. Laureate Realty Servs., Inc.*,
 No. 1:04-cv-1432-RLY-TAB, 2007 WL 2904591 (S.D. Ind. Sept. 28, 2007) ........................22

*Liberty Mut. Ins. Co. v. Domtar Paper Co.*,
 113 A.3d 1230 (Pa. 2015) ...............................................................................................15

*Mahoney v. Walter*,
 157 W.Va. 882, 205 S.E.2d 692 (1974)..............................................................................30

*Malone v. Potomac Highlands Airport Auth.*,
 237 W.Va. 235, 786 S.E.2d 594 (2015)..............................................................................25

*Matthews v. Cumberland & Allegheny Gas Co.*,
 138 S.Va. 639, 77 S.E.2d 180 (1953) ................................................................................23

*Mayor & Council of City of Morgan City v. Jesse J. Fontenot, Inc.*,
    460 So.2d 685 (La. App. 1984)............................................................16

*McCallister v. Purdue Pharma L.P.*,
    164 F. Supp. 2d 783 (S.D. W. Va. 2001) ...............................................6

*State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*,
    194 W.Va. 770, 461 S.E.2d 516 (1995)..................................................5

*McKesson Corp. et al. v. Hembree*,
    No. 17-CV-323-TCK-FHM, 2018 WL 340042 (N.D. Okla. Jan. 9, 2018) .............................6

*Miller v. Whitworth*,
    455 S.E.2d 821 (W. Va. 1995)........................................................20, 25

*Montgomery County v. Gupton*,
    39 S.W. 447 (Mo. 1897) .................................................................17

*State ex rel. Morrisey, et al. v. Cardinal Health, Inc.*,
    No. 12-C-140 (Boone Cty. Cir. Ct. Feb. 19, 2016)......................................8

*North Carolina Highway & Public Works Comm'n v. Cobb*,
    2 S.E.2d 565 (N.C. 1939)...............................................................17

*O'Connell v. City of Stockton*,
    162 P.3d 583 (Cal. 2007)..............................................................8, 9

*In re Oil Spill by The Amoco Cadiz*,
    954 F.2d 1279 (7th Cir. 1992) .........................................................15

*Ouachita Wilderness Institute, Inc. v. Mergen*,
    947 S.W.2d 780 (Ark. 1997)............................................................16

*Penelas v. Arms Technology*,
    1999 WL 1204353 (Fla. Cir. Dec. 13, 1999), aff'd on other grounds, 778
    So.2d 1042 (Fla. App. 2001)........................................................16, 37

*Perry v. American Tobacco Co., Inc.*,
    324 F.3d 845 (6th Cir. 2003) ..........................................................13

*Perry v. Town of Putnam*,
    131 A.3d 1284 (Conn. App. 2016) ......................................................37

*Pope v. Edward M. Rude Carrier Corp.*,
    138 W.Va. 218, 75 S.E.2d 584 (1953)..................................................34

*Portsmouth v. Campanella & Cardi Construction Co.*,
    123 A.2d 827 (N.H. 1956)..............................................................17

- vii -

*Prince George's County, Md. v. Levi*,
    79 F.R.D. 1 (D. Md. 1977)........................................................................12

*In re Rezulin Prods. Liab. Litig.*,
    133 F. Supp. 2d 272 (S.D.N.Y. 2001)......................................................19

*Rhodes v. E.I. du Pont de Nemours & Co.*,
    636 F.3d 88 (4th Cir. 2011) .....................................................................33

*Sharon Steel Corp. v. City of Fairmont*,
    175 W.Va. 479, 334 S.E. 2d 616 (1985).......................................29, 30, 32, 33

*State ex rel. Slatton v. Boles*,
    147 W.Va. 674, 130 S.E.2d 192 (1963).....................................................12

*Smith v. Hickenlooper*,
    164 F. Supp. 3d 1286 (D. Colo. 2016)....................................................6, 8

*Smoot ex rel. Smoot v. American Elec. Power*,
    222 W.Va. 735, 671 S.E.2d 740 (2008)....................................................22

*People ex rel. Spitzer v. Sturm, Ruger & Co., Inc.*,
    309 A.D.2d 91 (N.Y. App. Div. 2003) ........................................30, 31, 34

*Stanley v. Sewell Coal Co.*,
    169 W.Va. 72, 285 S.E.2d 679 (1981).......................................................40

*State Farm Mut. Auto. Ins. Co. v. De Wees*,
    143 W.Va. 75, 101 S.E.2d 273 (1957).......................................................14

*State of Sao Paulo of Federative Republic of Brazil v. American Tobacco Co.*,
    919 A.2d 1116 (Del. 2007) ..................................................................13, 14

*State of Texas v. Am. Tobacco Co.*,
    14 F. Supp. 2d 956 (E.D. Tex. 1997)........................................................34

*State v. Lead Indus. Ass'n, Inc.*,
    951 A.2d 428 (R.I. 2008)..................................................................*passim*

*State v. St. Clair*,
    177 W.Va. 629, 355 S.E.2d 418 (1987).....................................................16

*State of West Virginia, et al. v. McKesson Corp.*,
    No. 2:17-03555 (S.D. W. Va. Feb. 15, 2018) .............................................6

*Stevens v. MTR Gaming Group, Inc.*,
    237 W.Va. 531, 788 S.E.2d 59 (2016).......................................................21

*Sticklen v. Kittle*,
    168 W.Va. 147, 287 S.E.2d 148 (1981) ........................................................ 5

*Syracuse Rural Fire Dist. v. Pletan*,
    577 N.W.2d 527 (Neb. 1998) ...................................................................... 17

*Talley v. Danek Med., Inc.*,
    179 F.3d 154 (4th Cir. 1999) .................................................................... 10

*Thomas v. Pang*,
    811 P.2d 821 (Haw. 1991) ........................................................................ 16

*Thomas v. Wyeth*,
    No. 5:05-0094, 2005 WL 3754203 (S.D. W. Va. June 16, 2005) ............ 19, 20

*Tioga Pub. Sch. Dist. v. U.S. Gypsum Co.*,
    984 F.2d 915 (8th Cir. 1993) ....................................................... 29, 30, 31, 35

*Topelski v. Universal S. Side Autos, Inc.*,
    180 A.2d 414,420-21 (Pa. 1962) ............................................................... 15

*Torres v. Putnam County*,
    541 S.E.2d 133 (Ga. App. 2000) ............................................................... 16

*Town of Howard v. Soo Line R.R. Co.*,
    217 N.W.2d 329 (Wis. 1974) ..................................................................... 17

*Trafalgar House Const., Inc. v. ZMM, Inc.*,
    211 W. Va. 578, 567 S.E.2d 294 (2002) ................................................... 40

*Traube v.Freund*,
    775 N.E.2d 212 (Ill. App. Ct. 2002) ......................................................... 35

*U.S. v. Real Prop. & Improvements Located at 1840 Embarcadero, Oakland, Calif.*,
    932 F. Supp. 2d 1064 (N.D. Cal. 2013) .................................................... 10

*Ultramares Corp. v. Touche*,
    255 N.Y. 170 (1931) ................................................................................. 18

*Valentine v. Wheeling Elec. Co.*,
    180 W.Va. 382, 376 S.E.2d 588 (1988) .................................................... 23

*State ex rel. W. Va. Parkways Auth. v. Barr*,
    228 W.Va. 27, 716 S.E.2d 689 (2011) ...................................................... 12

*Walker Cty. v. Tri-State Crematory*,
    643 S.E.2d 324 (Ga. Ct. App. 2007) ......................................................... 16

*Webb v. Sessler*,
    135 W.Va. 341, 63 S.E.2d 65 (1950) ............................................................. 26

*White v. Wyeth*,
    227 W.Va. 131, 705 S.E.2d 828 (2010) ......................................................... 26

*Yourtree v. Hubbard*,
    196 W.Va. 683, 474 S.E.2d 613 (1996) ............................................. 9, 24, 36

**Statutes**

21 U.S.C. § 801, *et seq.* .............................................................................. 3

21 U.S.C. § 822(a)(2) .................................................................................. 4

21 U.S.C. § 823(b) ..................................................................................... 22

21 U.S.C. § 829 ........................................................................................... 3

21 U.S.C. § 841-863 .................................................................................... 3

21 U.S.C. § 903 ........................................................................................... 8

W. Va. Code § 15-3-6 ................................................................................ 38

W. Va. Code § 30-5-21 ............................................................................... 18

W. Va. Code § 60A-1-101, *et seq.* .............................................................. 3

W. Va. Code § 60A-2-201 ................................................................... 6, 7, 20

W. Va. Code § 60A-3-301, *et seq.* .............................................................. 4

W. Va. Code § 60A-3-302 ........................................................................... 4

W. Va. Code § 60A-3-308 ........................................................................... 3

W. Va. Code § 60A-4-401 ........................................................................... 3

W. Va. Code § 60A-8-3 ............................................................................... 7

W. Va. Code § 60A-8-10 ............................................................................. 6

W. Va. Code § 60A-8-12 .......................................................................... 6, 7

W. Va. Code § 60A-9-2 .......................................................................... 4, 27

W. Va. Code § 60A-9-5 ............................................................................... 4

**Rules**

W. Va. R. Civ. P. 9 ........................................................................................................... 40

W. Va. R. Civ. P. 12(b)(6) .................................................................................................. 4

Franklin D. Cleckley et al., Litigation Handbook on West Virginia Rule of Civil
    Procedure 289-90 (2002) ............................................................................................. 5

Lugar & Silverstein, West Virginia Rules of Civil Procedure 75 (1960) .......................... 5

**Regulations**

45 C.F.R § 164.502 ........................................................................................................... 28

**Other Authorities**

57A Am. Jur. 2d Negligence § 104 (1989) ....................................................................... 25

*Prosser and Keeton on the Law of Torts*, § 86 ................................................................ 30

*Restatement (Second) of Torts* § 821B(1) ...................................................................... 32

*Restatement (Second) of Torts* § 821C(2) ...................................................................... 38

W. Va. C.S.R. § 15-2-4.2.1 ............................................................................................... 22

W. Va. C.S.R. § 15-2-4.2.2 ............................................................................................... 22

W. Va. C.S.R. § 15-2-4.2.3 ............................................................................................... 22

W. Va. C.S.R. § 15-2-4.3 .................................................................................................. 22

W. Va. C.S.R. § 15-2-4.4 .................................................................................................. 21

Wright & Miller, Federal Practice and Procedure § 1216 (1969) ..................................... 5

## INTRODUCTION

This lawsuit is misguided.  It is pursued by the wrong plaintiffs against the wrong defendants on claims that stretch the concepts of standing, duty, proximate cause, and public nuisance beyond the breaking point.  To be sure, the problem of opioid abuse is real, and in no place more serious than West Virginia.  But no matter how serious the problem, the claims asserted against Distributor Defendants in this lawsuit are not cognizable and should be dismissed as a matter of law.

Defendants AmerisourceBergen Drug Corporation ("ABDC"), Cardinal Health, Inc. ("Cardinal"), and McKesson Corporation ("McKesson") (collectively, "Distributor Defendants") are state-licensed and DEA-registered wholesale distributors of legal, FDA-approved medications, including prescription opioids.  Federal and state laws expressly allow, and comprehensively regulate, the distribution of controlled substances, and under these laws, the Drug Enforcement Administration (the "DEA") and the State Board of Pharmacy (the "BOP") determine whether Distributor Defendants meet their obligations under the applicable regulatory schemes so that they may remain licensed to do business.  In the course of conducting their highly regulated business, Distributor Defendants have been and remain committed to the safe and appropriate delivery of controlled substances in West Virginia and around the country.

Distributor Defendants play an important but limited role in the health care system— they distribute various types of prescription medications, including controlled substances, through legal channels to DEA-registered, state-licensed pharmacies, which in turn may dispense them to patients only pursuant to legitimate prescriptions from DEA-registered physicians.  Distributor Defendants do not design, manufacture, market, or draft warnings for prescription opioids—only licensed manufacturers do that.  Distributor Defendants do not engage in the practice of medicine, examine patients, diagnose pain, or prescribe opioids—only licensed doctors do that.  Distributor

- 1 -

Defendants do not fill doctors' prescriptions or counsel patients about proper medication use—only licensed pharmacists do that.  In fact, because of the federal Health Insurance Portability and Accountability Act, Distributor Defendants do not, and cannot, know what doctor prescribed or what pharmacist dispensed which opioid drugs for which patients, or with what regularity and in what amounts.  Despite this limited role, the Counties assert the following four causes of action against Distributor Defendants:  Public Nuisance (Count 1); Unjust Enrichment (Count 2); Fraud by Concealment (Count 3); and Negligence (Count 9).

All claims against Distributor Defendants are deficient and should be dismissed.  *First*, the Counties' claims against Distributor Defendants are premised upon alleged violations of the West Virginia Controlled Substances Act ("WVCSA").  But the Counties have no right—express, implied, or at common law—to enforce the WVCSA, which may be enforced exclusively by the State Board of Pharmacy ("BOP").  *Second*, the Counties' cannot recover the damages they seek because they lack standing and, even if they had standing, their claims are barred by the free-public-services doctrine, the economic loss rule, and West Virginia Code section 30-5-21(a).  *Third*, the Counties fail to state a negligence claim, as Distributor Defendants owe no common law duty to the Counties.  Furthermore, the Counties fail to adequately allege that Distributor Defendants were the actual or proximate cause of the Counties' opioid abuse problem.  In fact, the many independent, intervening, and often criminal causes of the opioid abuse problem (as identified by the Counties) preclude such a finding and bar the Counties' claims against Distributor Defendants.  *Fourth*, the Counties fail to state a claim for Public Nuisance because they fail to allege a public right, an unreasonable interference with that right, or that Distributor Defendants caused the alleged nuisance.  *Fifth*, the Counties claim for unjust enrichment fails because they have failed to plead "a benefit conferred on the defendant by the plaintiff."  *Sixth*, the Counties' fraud-based claims fail to meet West Virginia's heightened pleading requirement

for such claims, and the Counties fail to allege factual elements that if proven true would establish fraud by Distributor Defendants.[1]  For any and all these reasons, the Counties' claims against Distributor Defendants should be dismissed for failure to state a claim upon which relief can be granted.

## BACKGROUND

Federal and state laws comprehensively control the distribution and dispensing of prescription opioids.  Prescription opioids are legal, FDA-approved prescription medications that the Counties admit are effective in treating certain types of pain and for palliative (end-of-life) care.  *See, e.g.,* Compl. ¶¶ 4, 94, 601 n. 132.  Due to their potential for abuse, opioids are tightly and comprehensively regulated under the federal Controlled Substances Act, 21 U.S.C. §801 *et seq.* ("CSA"), and, in West Virginia, the WVCSA, W. Va. Code §60A-1-101, *et seq. See also* Compl. ¶ 8.  Those laws require that opioids be distributed and dispensed within a legal, closed system in which every participant other than the patient is registered with the DEA. *See, e.g.,* 21 U.S.C. §§ 821–830.  It is a crime to possess, use, dispense, or sell opioids other than as these laws allow.  21 U.S.C. §§ 841–863; W. Va. Code § 60A-4-401.

A patient may legally obtain opioids only pursuant to a prescription written for a legitimate medical purpose by a state-licensed, DEA-registered medical practitioner.  21 U.S.C. § 829.  Doctors and pharmacies play the critical role in the prescribing and dispensing of opioids.  Both deal directly with patients and must write and dispense prescriptions only for legitimate medical purposes.  *See* 21 U.S.C. § 829; W. Va. Code § 60A-3-308.  To dispense controlled

---

[1]  The Counties claims are all untimely and therefore barred by either the applicable statute of limitations or laches.  Concurrently with this filing, Cardinal is filing a motion related to (1) the Counties' claims being time-barred; and (2) the Counties' claims being barred by the doctrine of *res judicata* stemming from the dismissal of the State of West Virginia's lawsuit against Cardinal.  All Distributor Defendants intend to join in the argument that the Counties claims are time-barred.  The *res judicata* argument is made by Cardinal, and not joined by ABDC or McKesson.

substances in West Virginia, a pharmacy must have a valid DEA registration and West Virginia BOP license. 21 U.S.C. § 822(a)(2); W.Va. Code § 60A-3-302. Pharmacies must report detailed information about opioid prescriptions to West Virginia's Controlled Substances Monitoring Program Database ("CSMP") every day. W. Va. Code § 60A-9-2. Absent court order, the CSMP is available only to the DEA, physicians, pharmacists, and certain state entities (including the BOP, the Board of Medicine ("BOM"), and the West Virginia State Police and other law enforcement)—*but not to distributors*. W. Va. Code § 60A-9-5.

To distribute opioids in West Virginia, each Distributor Defendant must, and did, obtain a registration from the DEA and a license from the BOP, which, in turn, is responsible (along with the Board of Medicine) for regulating controlled substance dispensing in West Virginia. (*See* Compl. ¶ 788); W. Va. Code §60A-3-301 to 308. Both agencies require, as a condition for their respective registration and licensing, that distributors comply with regulations to ensure the security of controlled substances, including by designing and operating systems to detect and report "suspicious" orders. The DEA also requires distributors to report their sales of prescription opioids to the DEA's ARCOS database, *which only the DEA may access*. The Counties do not and cannot dispute that neither the DEA nor the BOP has ever denied registration/licensing to any Distributor Defendant as a result of failure to comply with any law or regulation related to the distribution of controlled substances in West Virginia.

### APPLICABLE LAW

The West Virginia Rules of Civil Procedure authorize a court to dismiss a plaintiff's cause of action for "failure to state a claim upon which relief can be granted." W. Va. R. Civ. P. 12(b)(6). In considering a defendant's Rule 12(b)(6) motion to dismiss, the court must view the complaint . . . in the light most favorable to [the] plaintiff, and its allegations are to be taken as true." *John W. Lodge Distributing Co., Inc., v. Texaco, Inc.*, 161 W.Va. 603, 245 S.E.2d 157,

158 (1978). To be sure, "[c]omplaints are to be read liberally," and the "trial court should not dismiss a complaint merely because it doubts that the plaintiff will prevail in the action." *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516, 522 (1995); *John W. Lodge Distrib. Co. v. Texaco, Inc.*, 161 W.Va. 603, 245 S.E.2d 157, 159 (1978) (citing Wright & Miller, Federal Practice and Procedure § 1216 (1969)). But "the plaintiff is still required at a minimum to set forth sufficient information to outline the elements of his/her claim. If a plaintiff fails to do so, dismissal is proper." Franklin D. Cleckley et al., Litigation Handbook on West Virginia Rule of Civil Procedure 289-90 (2002). "Liberalization in the rules of pleading in civil cases does not justify a carelessly drafted or baseless pleading[, and] [s]implicity and informality of pleading do not permit carelessness and sloth." *Sticklen v. Kittle*, 168 W.Va. 147, 287 S.E.2d 148, 164-65 (1981) (quoting Lugar & Silverstein, West Virginia Rules of Civil Procedure 75 (1960)). Thus, "bald statements or a carelessly drafted pleading will not survive a Rule 12(b)(6) motion to dismiss." *Highmark W. Va., Inc. v. Jamie*, 221 W.Va. 487, 655 S.E.2d 509, 513-14 (2007) (internal citations omitted).

## ARGUMENT

### I. THE COUNTIES LACK STANDING TO SUE FOR VIOLATIONS OF THE WVCSA.

The Counties lack standing and legal authority to enforce the WVCSA, whether directly or under the guise of the common law. The BOP has exclusive authority to enforce the WVCSA, and the duties alleged in the Counties' Complaint arise solely under the statute. Accordingly, the Counties' claims against Distributor Defendants should be dismissed in their entirety.

#### A. Only the Board of Pharmacy (and not the Counties) is Authorized to Enforce the WVCSA.

The Counties' claims against Distributor Defendants all are premised on alleged violations of duties arising under the WVCSA. But Distributor Defendants owe no duties under the

WVSCA *to the Counties.* The WVCSA, by its plain terms, contains no private right of action and may be enforced exclusively by state regulators. The statute creates no enforcement role for political subdivisions such as counties or cities, and likewise creates no private right of action.

The WVCSA vests exclusive authority in the BOP to "administer [its] provisions," W. Va. Code § 60A-2-201(a), and prescribes a specific enforcement scheme: "Complaints arising under any provision" of the relevant WVCSA article "*shall* be handled" pursuant to procedures set forth in the statute, *id.* § 60A-8-10 (emphasis added). Those procedures empower the BOP to "file a written complaint" charging "a wholesale drug distributorship operation with violations of this article," *id.* § 60A-8-10(a), after which the BOP may hold an "expedited hearing" and "suspend, restrict or revoke the license" of the company, *id.* § 60A-8-10(b). The WVCSA allows for judicial relief only if the BOP requests it: "Upon proper application *by the board*, a court . . . may grant an injunction" to enforce the Act. *Id.* § 60A-8-12(a) (emphasis added).[2]

**B.    The WVSCA Creates No Implied Private Right of Action.**

Moreover, there is no implied private right of action under the WVCSA. Four factors determine whether a private cause of action can be implied under a West Virginia statute: (1) whether the plaintiff is part of "the class for whose benefit the statute was enacted"; (2) the legislative intent; (3) whether a cause of action is "consistent with the underlying purposes of

---

[2]    The Federal Controlled Substances Act ("CSA") similarly limits enforcement to the United States Attorney General. Recognizing this exclusive authority conferred on public regulators, "federal courts have uniformly held that the [federal] CSA does not create a private right of action." *Smith v. Hickenlooper*, 164 F. Supp. 3d 1286, 1290 (D. Colo. 2016); *accord McCallister v. Purdue Pharma L.P.*, 164 F. Supp. 2d 783, 793 (S.D. W. Va. 2001) (finding no private cause of action under the CSA). Courts have recently reached this same conclusion in the context of the nationwide opioid litigation. *See State of West Virginia, et al. v. McKesson Corp.*, No. 2:17-03555 (S.D. W. Va. Feb. 15, 2018) (ECF No. 21), at 14-15; *McKesson Corp. et al. v. Hembree*, No. 17-CV-323-TCK-FHM, 2018 WL 340042, at *5 (N.D. Okla. Jan. 9, 2018). Nothing in the text or structure of the CSA suggests that Congress intended to confer legal rights—much less an enforceable private remedy—on political subdivisions like the County. *See Smith*, 164 F. Supp. 3d at 1290; *McAllister*, 164 F. Supp. 2d at 793 n.16 (finding no such "legislative intent"). The same reasoning applies to the WVSCA.

the legislative scheme"; and (4) whether a cause of action would intrude into an area of federal authority. *Hurley v. Allied Chem. Corp.*, 164 W.Va. 268, 262 S.E.2d 757, 763 (1980). Analyzing the "*Hurley*" factors demonstrates that there is no private cause of action under the WVCSA. *First*, the WVCSA was not enacted to protect counties, as political subdivisions, from the costs of drug diversion. Rather, "[t]he purpose of th[e] article is to protect the health, safety and general welfare *of residents* of this state." W. Va. Code § 60A-8-3 (emphasis added). *Second*, based on the WVSCA's explicit text, the Legislature intended for the BOP to enforce the WVCSA, not political subdivisions represented by private counsel paid on a contingency fee basis. *Third*, allowing a county to enforce its own understandings of the WVCSA would be inconsistent with the existing legislative scheme—particularly where, as here, the BOP continued to register Distributor Defendants and declined to take any enforcement action against them.

In this case, the legislative intent behind the WVSCA's comprehensive administrative scheme is dispositive. Under West Virginia law, where the Legislature has granted exclusive authority to a state agency to sue and enforce a statute, it does not intend to create a private right of action. *See Gen. Pipeline Constr., Inc. v. Hairston*, 234 W.Va. 274, 765 S.E.2d 163, 171-72 (2014). For example, in the context of election law, the Supreme Court of Appeals reasoned that because the West Virginia Election Code set forth a "process for contesting elections" and established "a comprehensive and detailed procedure" to dispute the results, a private cause of action would "usurp the legislative scheme." *Hill v. Stowers*, 224 W.Va. 51, 680 S.E.2d 66, 74 (2009). Similarly here, the Legislature constructed a comprehensive scheme to regulate the distribution of controlled substances. And like in *General Pipeline*, the Legislature granted exclusive authority to enforce that scheme to an administrative agency—the BOP—and authorized it, and only it, to seek relief for violations. *See* W. Va. Code §§ 60A-2-201, 60A-8-12.

The comprehensive regulatory scheme occupies the field of prescription drug regulation so as to preempt any attempts at local regulation, including through litigation.  "[T]he state has comprehensively regulated this area . . . and left no room for local control."  *EQT Prod. Co. v. Wender*, 191 F. Supp. 3d 583, 598-99 (S.D. W. Va. 2016); *see also id.* ("At no point is any power to regulate such matters expressly granted to county commissions."); *O'Connell v. City of Stockton*, 162 P.3d 583, 589 (Cal. 2007) ("The comprehensive nature of the [Uniform Controlled Substances Act] in defining drug crimes and specifying penalties . . . is so thorough and detailed as to manifest the Legislature's intent to preclude local regulation.").  Accordingly, the Legislature did not intend to create a private right of action for damages based on a violation of the WVCSA, and no such right of action can be implied under well-settled West Virginia law.[3, 4]

### C.    Relabeling WVCSA Claims as Common Law Claims Cannot Save the Counties' Claims.

The Counties may not simply re-label their WVCSA claims as common law claims to escape dismissal.  The reason is simple: There is no common law duty to identify and/or report suspicious controlled substance orders.  The duties allegedly owed by Distributor Defendants

---

[3]   In *State ex rel. Morrisey, et al. v. Cardinal Health, Inc.*, No. 12-C-140, slip op. (Boone Cty. Cir. Ct. Feb. 19, 2016), a state trial court concluded that the State Attorney General could sue under the WVCSA.  Distributor Defendants respectfully submit that this conclusion was mistaken under the precedent discussed above and particularly in light of a later decision by the Supreme Court of Appeals of West Virginia.  *See Copper Beech Townhome Cmtys. Twenty-Six, LLC*, 239 W. Va. 741, 806 S.E.2d 172 (2017) (holding that alleged violations of "pervasive regulation[s]" of landlords cannot be bootstrapped through CCPA to state claim under that separate statutory scheme).  In any event, even if *the State Attorney General* may assist the BOP in enforcing the WVCSA, *a county* has no such role to play.

[4]   Furthermore, no reason exists that the WVCSA should impliedly create a private right of action when the federal CSA clearly does not.  "[F]ederal courts have uniformly held that the CSA does not create a private right of action."  *Smith v. Hickenlooper*, 164 F. Supp. 3d 1286, 1290 (D. Colo. 2016), *aff'd sub nom Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865 (2017).  "[A]ccording to its plain terms, the [CSA] is a statute enforceable only by the [United States] Attorney General and, by delegation, the Department of Justice."  *Id.* (internal alterations and quotation omitted).  To find that the WVCSA implies a private right of action when the federal CSA does not would violate the prohibition on state law creating a "positive conflict" with the federal CSA.  *See* 21 U.S.C. § 903.

arise ***exclusively*** under the WVCSA and its legislative rules, not the common law. *See, e.g.*, Compl. ¶ 640 ("Pursuant to the West Virginia Controlled Substances Act and West Virginia law, Defendants were required to provide effective controls and procedures to guard against diversion of controlled substances."); *id.* (alleging a duty to identify and report suspicious orders); ¶ 664 (alleging that "Distributor Defendants violated West Virginia law and regulations relating to distributors, by failing to properly identify and/or report suspicious orders")).

Under West Virginia law, "a violation of a statute ***could*** give rise to a common law negligence action" only if "the statute creates an implied private cause of action." *Arbaugh v. Bd. of Educ., Cty. of Pendleton*, 214 W.Va. 677, 591 S.E.2d 235, 239 (2003) (emphasis added) (quoting *Yourtree v. Hubbard*, 196 W.Va. 683, 474 S.E.2d 613, 618 (1996)); *see also Christian v. United States*, No. 3:12-CV-72, 2013 WL 5913845, at *4 (N.D. W. Va. Nov. 4, 2013) (rejecting plaintiff's negligence claim based on violation of statute that offers no private cause of action). Courts routinely block attempts to enforce statutory duties under the guise of common law claims where, as here, no private cause of action exists under the relevant statutes. *See, e.g.*, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 200-01 (2d Cir. 2005) ("[A]llowing a claim of fraud by omission, based on Cablevision's failure to disclose the . . . rates as purportedly required by PSL § 224-a(4), would impermissibly permit [plaintiff] to maintain a private cause of action for an alleged violation of PSL § 224-a."); *Coffman v. Bank of Am., NA*, No. CIV.A. 2:0900587, 2010 WL 3069905, at *8 (S.D. W. Va. Aug. 4, 2010) ("Plaintiff may not circumvent the [federal Office of Thrift Supervision]'s exclusive authority to implement disclosure requirements for federal savings banks through a state law claim of unconscionable inducement.").

In addition, Counties may not rely on negligence *per se* to create a private right of action. "The negligence per se doctrine . . . is not a magic transforming formula that automatically

creates a private right of action for the civil enforcement, in tort law, of every statute." *Talley v. Danek Med., Inc.*, 179 F.3d 154, 158 (4th Cir. 1999).[5] Because the Counties have no private right of action under the WVCSA, they cannot create a cause of action that does not exist at common law.

### D.      The Complaint Does Not Adequately Plead that Distributor Defendants Violated any Anti-Diversion Requirement.

Even if the Counties could rely on alleged violations of the WVCSA, which they cannot, the Complaint does not plead any facts that establish that Distributor Defendants violated any provision of the WVCSA.  The Counties do not identify *any* aspect of Distributor Defendants' order-monitoring programs that they claim are inadequate, much less *how* or *when* Distributor Defendants supposedly failed to comply with any requirement.  Instead, the Counties' allegations about violations by Distributor Defendants are asserted entirely as indiscriminate group pleading, without a single pertinent allegation specific to ABDC, Cardinal, or McKesson or their unique order monitoring programs.  Compl. ¶¶ 664, 682.

Thus, the Counties have no authority to bring this lawsuit for alleged violations of the WVCSA, no matter how they choose to style their claims. Accordingly, because all claims against Distributor Defendant are premised on Distributor Defendants purported violations of

---

[5]      Similarly, courts have rejected attempts to use other statutes, rules, and causes of action to enforce the federal CSA. *See, e.g., Jones v. Hobbs*, 745 F. Supp. 2d 886, 890-94 (E.D. Ark. 2010) (Declaratory Judgment Act does not expand court's jurisdiction to entertain private CSA suits when Congress did not include that jurisdiction in the CSA), *aff'd*, 658 F.3d 842 (8th Cir. 2011); *U.S. v. Real Prop. & Improvements Located at 1840 Embarcadero, Oakland, Calif.*, 932 F. Supp. 2d 1064, 1072 (N.D. Cal. 2013) (seeking an injunction under Fed. R. Civ. P. Supp. R. G "is tantamount to [acting as] the Government in a civil enforcement or criminal prosecution under the CSA," and "because Claimants have no right of action under the CSA to force [a drug dispensary] to cease its operations, they cannot take such action using Rule G(7)(a)."); *Hatfield v. Arbor Springs Health & Rehab Ctr.*, 2012 WL 4476612, at *3 (M.D. Ala. Sept. 4, 2012) ("The Controlled Substances Act does not create the wrongful termination claim that plaintiff asserts in this action. The provisions of the Act on which plaintiff relies do not provide expressly for a private civil cause of action, nor does the Act imply a private right of action.") (footnote omitted).

that statutory regime, the Counties' claims against Distributor Defendants should be dismissed in their entirety.

## II.      THE COUNTY'S COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO STATE A COGNIZABLE CLAIM UNDER WEST VIRGINIA LAW.

All the Counties' claims fail because (1) the Counties lack standing because they may not recover indirect damages allegedly suffered by their residents and they do not have *parens patriae* authority; (2) the claims are barred by the free-public-services doctrine; and (3) the claims are barred by the economic loss doctrine; and (4) West Virginia law immunizes distributors from liability.  Accordingly, all of the Counties' claims fail as a matter of law and should be dismissed for failure to state claims upon which relief may be granted.

### A.      The Counties Have No Standing to Pursue These Claims.

All of the Counties' claims must fail because they lack the threshold requirement of standing to recover the damages they seek.  Those damages fall into two categories:  (1) expenditures for public services related to dealing with opioid addiction; and (2) monies spent (or lost) by reason of the personal injuries suffered by addicted residents of the Counties.  The former category encompasses the Counties' alleged damages based upon its efforts "to eliminate the hazard to public health and safety . . . caused by the opioid epidemic."  *Id.* ¶ 820.  These damages include costs stemming from "increased costs for law enforcement[,] . . . drug abuse education," and "the costs of Naloxone," among others.  *Id.* ¶ 29.  The latter category includes "massive costs" of "healthcare and medical services" costs stemming from residents who have been unable to work because of opioid-related illnesses.  Compl. ¶¶ 29, 819.  The Counties lack standing to recover the first category of damages because the free-public-services doctrine and the economic loss rule bar such damages.  The Counties lack standing to recover the second category of damages because they belong (if to anyone) to the individual who has been personally injured by opioid addiction.  The Counties' claims to recover those damages are

- 11 -

therefore derivative, but the Counties have not alleged that they enjoy any subrogation rights, and they do not. They also lack any *parens patriae* authority to pursue such claims.

### 1.    The Counties Lack *Parens Patriae* Authority

To the extent the Counties assert claims for damages based upon underlying injuries to county residents, the claims are also barred as a matter of law because the Counties lack standing to assert such claims. Unlike the State of West Virginia, the Counties do not have standing in this case because they lack *parens patriae* authority. *Parens patriae* authority comes from the State's status "as a sovereign." *State ex rel. Slatton v. Boles*, 147 W.Va. 674, 130 S.E.2d 192, 195 (1963). The Counties are not "sovereign," but merely political subdivisions of the State. Discussing the power of county commissions, the Supreme Court of Appeals of West Virginia stated, "the county is a mere creature of the sovereign. Being a creature, it has only such rights as were granted by its creator." *Calhoun Cty. Court v. Mathews*, 99 W. Va. 483, 129 S.E. 399, 401 (1925). "The county commission is a corporation created by statute, and possessed only of such powers as are expressly conferred by the Constitution and legislature, together with such as are reasonably and necessarily implied in the full and proper exercise of the powers so expressly given. It can do only such things as are authorized by law, and in the mode prescribed." *State ex rel. W. Va. Parkways Auth. v. Barr*, 228 W.Va. 27, 716 S.E.2d 689, 694 (2011). Thus, because the Counties are not "sovereign," but merely political subdivisions, they do not have the authority to bring *parens patriae* actions. *See, e.g. Prince George's County, Md. v. Levi*, 79 F.R.D. 1 (D. Md. 1977) (Counties, unlike States, do not have the power to bring *parens patriae* actions).

### 2.    The Counties may not Recover Indirect Damages

The Counties allege that there was a failure to warn about the dangerously addictive properties of opioid medications, combined with a deceptive marketing campaign designed to

promote the promiscuous use of such medications, resulting in widespread addiction.  But for the absence of the individuals directly harmed by the alleged conduct (i.e., those who became addicted to opioids or overdosed), this case is a classic personal injury case.  In seeking to recover damages for the monies they spent in providing health services to these individuals, the Counties assert a claim that is wholly derivative of those individuals' personal injury claims.  The Counties may not bring a direct action to seek damages for others' injuries.  This has long been the common law rule.

Two principles are well-established at common law.  First, "[a]n injury is indirect or derivative when the loss arises solely as a result of injuries sustained by another party."  *Blue Cross & Blue Shield of NJ v. Philip Morris, USA Inc.*, 3 N.Y.3d 200, 207-08 (2004).  Here, those "directly-injured" are the persons who used opioid medications and became addicted.  Only because of their addiction did the Counties incur costs.

Second, "what is required is that the party actually injured be the one to bring suit . . . ."  *Id.* at 208.  Conversely, "[u]nder common law, . . . a third-party payer of medical expenditures may not recover derivatively for injuries suffered by its insured."  *Id.*; *see City of Philadelphia v. Philadelphia Rapid Transit Co.*, 10 A.2d 434, 435 (Pa. 1940) (dismissing the direct action brought by the City of Philadelphia seeking compensation for lost wages and medical bills it had paid to firemen injured in an accident because "[t]he right to recover wages and expenses [belonged] in the individual fireman.").  When the third-party payer sues, nine federal circuits courts of appeal "uniformly have concluded that such claims must fail because the alleged injuries are too remote."  *Perry v. American Tobacco Co., Inc.*, 324 F.3d 845, 849 (6th Cir. 2003 (dismissing claims for recovery of increased, health-related expenses due to smoking because the third-party payer claims are "inherently contingent on injury to third-party smokers"); *Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229 (2d Cir. 1999); *State of*

*Sao Paulo of Federative Republic of Brazil v. American Tobacco Co.*, 919 A.2d 1116, 1125 (Del. 2007) ("Multitudinous other state and federal appellate courts have unanimously invoked the same rationale in eighteen separate opinions, all holding that third-party payors or providers of medical services, including U.S. States and political subdivisions, . . . have no cognizable claims under . . . state common law to recover medical expenses from the tobacco companies, because the plaintiffs' alleged injuries were entirely derivative of the injuries to the smoker-consumers of the tobacco companies' products").

West Virginia adheres to this fundamental principle. In *State Farm Mut. Auto. Ins. Co. v. De Wees*, 143 W.Va. 75, 75, 101 S.E.2d 273, 273 (1957), the insurance company sought to recover in its own name for damages suffered by its insured after the insured himself had sued for damages. The Supreme Court held that State Farm's lawsuit was barred by the doctrine of *res judicata*—a holding that follows from the fact that State Farm's damages were derivative, not direct, and that it could not sue except by standing in the shoes of the insured. *See Cleaves v. De Lauder*, 302 F.Supp. 36, 38 (N.D. W. Va. 1969) ("[A] West Virginia court dealing with a partial subrogee would treat him as one with only a contingent interest in the litigation and not one in whose name an action could be prosecuted.").

Based on these two principles, "the authorities and cases unanimously hold that the insurer's recovery is premised exclusively on subrogation." *Blue Cross & Blue Shield*, 3 N.Y.3d at 206. But the Counties are not "third-party payors" and do not have any rights in connection with the claims of their residents who have suffered opioid-related illnesses (we are aware of no statute or contract that gives the County any such rights), and the Counties fail to allege any facts that would support a claim that the Counties are insurers or third-party payors. Even if any County had such rights, it has failed even to identify the injured individuals on whose behalf it seeks to recover. *A.O. Fox v. Am Tobacco*, 362 A.D.2d 413 (2d Dept. 2003) (dismissing

subrogation claim "because the plaintiff failed to identify the individual patients and their particular injuries . . ."); *Liberty Mut. Ins. Co. v. Domtar Paper Co.*, 113 A.3d 1230, 1240 (Pa. 2015) (dismissing subrogation suit because where injured employee "did not commence an action," "was not named in the action," and "did not join the action"); *Topelski v. Universal S. Side Autos, Inc.*, 180 A.2d 414,420-21 (Pa. 1962) (subrogee-County must bring suit "in the name of [the subrogor] individually and in the name of the County use-plaintiff").

### B.     The Free-Public-Services Doctrine Bars the Counties' Claim for Damages.

One of the functions of government is to provide basic services. The police do not bill for their time when they cite a negligent driver for a fender-bender, nor does the fire department when it puts out the fire caused by the homeowner's negligence. The "free public services" doctrine bars such claims. *See, e.g., In re Lead Paint Litigation*, 924 A.2d 484, 498 (N.J. 2007). The Counties expressly seek funding for the public services that they have or expect to provide to their citizens. Although the Counties artfully mischaracterize the other amounts they seek as costs of "abating" the "public nuisance" caused by the "opioid epidemic," the costs they seek to recover stem solely from the Counties' performance of their public duties and responsibilities. Accordingly, their recovery through civil litigation is barred by the "free-public-services" doctrine, which precludes government entities from recovering their expenditures made in doing what it is their public duty to do. *See In re Oil Spill by The Amoco Cadiz*, 954 F.2d 1279, 1310 (7th Cir. 1992) (per curiam). "[T]he government's decision to provide tax-supported services is a legislative policy determination," and "[i]t is not the place of the courts to modify such decisions." *District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1080 (D.C. Cir. 1984).

The Supreme Court of Appeals of West Virginia has disallowed claims against inmates seeking recovery for "the costs of room and board in the county jail," reasoning that such costs are "a public charge on the county" that cannot "be collected . . . [absent] statutory authority."

*State v. St. Clair*, 177 W.Va. 629, 355 S.E.2d 418, 419-20 (1987).  Numerous other jurisdictions

have applied the doctrine to bar analogous claims.  *See, e.g.*, *Cty. of Erie v. Colgan Air, Inc.*, 711

F.3d 147, 149, 150-51 (2d Cir. 2013) (claims against an airline for costs of responding to an

airplane crash); *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1147 (Ill. 2004)

(claims against gun manufacturers for costs incurred to address gun violence); *Walker Cty. v.

Tri-State Crematory*, 643 S.E.2d 324, 329 (Ga. Ct. App. 2007) (claims against crematorium for

costs of disposing improperly stored human remains).[6]

---

[6]  Courts in more than eighteen jurisdictions have applied the doctrine to preclude municipal and county governments from asserting claims for damages against private entities to reimburse or fund their expenditures in performing their public duties.  *See Kodiak Island Borough v. Exxon Corp.*, 991 P.2d 757, 760-61 (Alaska 1999) ("free public services doctrine" bars recovery of municipal response costs except by statute); *City of Flagstaff v. Atchison, Topeka, and Santa Fe Railway Co.*, 719 F.2d 322, 323 (9th Cir. 1983) ("[w]here [municipal] services are provided by the government and the costs are spread by taxes, the tortfeasor does not expect a demand for reimbursement"); *Ouachita Wilderness Institute, Inc. v. Mergen*, 947 S.W.2d 780, 784 (Ark. 1997) ("[p]ublic policy would be violated if a citizen was said to invite private liability merely because he happened to create a need for public services"); *Ganim v. Smith & Wesson Corp.*, 1999 WL 1241909, at *6 & n.7 (Conn. Super. Dec. 10, 1999) (city cannot sue for "recoupment" of municipal expenditures), aff'd on other grounds, 780 A.2d 98 (Conn. 2001); *Baker v. Smith & Wesson Corp.*, 2002 WL 31741522, at *4-5 (Del. Super. Nov. 27, 2002) ("governmental entities themselves currently bear the cost in question; the legislature and its public deliberative processes, rather than the court, is the appropriate forum to address such fiscal concerns"); *Penelas v. Arms Technology*, 1999 WL 1204353, at *2 (Fla. Cir. Dec. 13, 1999) ("costs to provide 911, police, fire and emergency services. . .are not, without express legislative authorization, recoverable by governmental entities"), aff'd on other grounds, 778 So.2d 1042 (Fla. App. 2001); *Kapherr v. MFG Chemicals, Inc.*, 625 S.E.2d 513, 515 (Ga. App. 2005) ("it offends public policy to say that a citizen invites private liability merely because he happens to create a need for those public services"); *Torres v. Putnam County*, 541 S.E.2d 133, 136 & n.4 (Ga. App. 2000) (allegation that defendant "caus[ed] the county to spend money enforcing its laws and protecting its citizens" failed to state a claim); *Thomas v. Pang*, 811 P.2d 821, 825 (Haw. 1991) ("it offends public policy to say that a citizen invites private liability merely because he happens to create a need for those public services"); *Canyon County v. Syngenta Seeds, Inc.*, 2005 WL 3440474, at *6 (D. Idaho Dec. 14, 2005) ("[a]t common law, a governmental entity generally [i]s not allowed to recover the cost of its services from a non-contracting party"); *Mayor & Council of City of Morgan City v. Jesse J. Fontenot, Inc.*, 460 So.2d 685, 688 (La. App. 1984) (the law "does not include within the ambit of its protection the risk that public property and funds will be expended"); *Crews v. Hollenbach*, 751 A.2d 481, 489 (Md. 2000) ("taxpayers should not be subjected to. . .one charge in the form of state tax and the second in paying damages in [a government] civil suit"); *Brandon Twp. v. Jerome Builders, Inc.*, 263 N.W.2d

In sum, the public costs the Counties seek to recover represent a legislative policy determination to provide public services that the courts may not disturb.  Because the Counties are not entitled to any of the damages they plead, their claims against Distributor Defendants must be dismissed.

### C.   The Economic Loss Rule Bars the Counties' Claims for Recovery of Economic Loss

The Counties' claims for pure economic "damages" are also barred by the economic loss rule.  The Counties absurdly plead economic loss to its "business" of providing public services.  Compl. ¶ 44.  The Counties, however, may not recover such economic loss from Distributor Defendants.  *See* Syl. Pt. 9, *Aikens v. Debow*, 208 W.Va. 486, 541 S.E.2d 576 (2000).  Whether characterized as a rule based on lack of duty, lack of foreseeability, or prudential concern for limiting potentially limitless tort suits, the economic loss doctrine requires physical harm or property damage to support tort liability in the absence of a special relationship.  Syl. pt. 9,

---

326, 328 (Mich. App. 1977) (no recovery in nuisance for governmental expenses; "the appropriate remedy in such a situation is not a suit for damages"); *Montgomery County v. Gupton*, 39 S.W. 447, 448 (Mo. 1897) (no recovery for cost of housing insane person; "the provision made by law for the support of the poor is a charitable provision, from which no implication of a promise to repay arises, and moneys so expended cannot be recovered"); *Syracuse Rural Fire Dist. v. Pletan*, 577 N.W.2d 527, 533 (Neb. 1998) ("citizen[s] should not be made to pay twice for the rendering of a public service, once through taxation and a second time through damages"); *Portsmouth v. Campanella & Cardi Construction Co.*, 123 A.2d 827, 830-31 (N.H. 1956) (liability for municipal fire-fighting expenses limited to statute); *North Carolina Highway & Public Works Comm'n v. Cobb*, 2 S.E.2d 565, 567 (N.C. 1939) ("no governmental expenditure paid out for apprehension of a criminal or the maintenance or recovery of his custody incident to the punishment or correction of such a crime can be construed into a tortious invasion of the property rights of the State"); *City of Pittsburgh v. Equitable Gas Co.*, 512 A.2d 83, 84 (Pa. Cmwlth. 1986) ("[t]he cost of public services for protection from a safety hazard is to be borne by the public as a whole, not assessed against a tortfeasor whose negligence creates the need for the service"); *City of Philadelphia v. Beretta U.S.A., Inc.*, 126 F. Supp.2d 882, 894-95 (E.D. Pa. 2000) (same), *aff'd* on other grounds, 277 F.3d 415 (3d Cir. 2002); *Fordham v. Oldroyd*, 131 P.3d 280, 284 (Utah App. 2006) ("it offends public policy to say that a citizen invites private liability merely because he happens to create a need for those public services"); *Dep't of Natural Resources v. Wisconsin Power & Light Co.*, 321 N.W.2d 286, 288 (Wis. 1982) ("no common law liability permitting a governmental entity to charge [a defendant] for fire suppression expenses"); *Town of Howard v. Soo Line R.R. Co.*, 217 N.W.2d 329, 330 (Wis. 1974) (same).

- 17 -

*Aikens*, 208 W.Va. 486, 541 S.E.2d 576.  Without this rule, tort duty would spread a tsunami of economic and social chaos "to a liability in an indeterminate amount for an indeterminate time to an indeterminate class."  *Id.* at 581 (quoting Justice Cardozo in *Ultramares Corp. v. Touche*, 255 N.Y. 170 (1931)); *see also City of Chicag*o, 821 N.E.2d at 1143 (dismissing, under economic loss rule, city's costs of responding to gun violence).

In this case, the Counties plead no physical harm directly caused by Distributor Defendants.  Although the Counties insert the two words "property damage" in several of the paragraphs in the Complaint, the Counties fail to identify or provide any factual support for any purported "property damage."  *See* Compl. ¶¶ 26, 607, 714, 744, 749, 754, 775, 794, 806, 813, 819.[7]  Accordingly, the Counties claims for their costs of providing governmental services are barred by the economic loss rule.

### D. Distributor Defendants are Middlemen From Whom Plaintiffs Cannot Recover Damages.

West Virginia Code section 30-5-21(a), Distributor Defendants are immune from Plaintiffs' claims for public nuisance, unjust enrichment, fraud by concealment, and negligence. Section 30-5-21(a) provides: "*All persons*, whether licensed pharmacists or not, shall be responsible for the quality of all drugs . . . they may *sell* . . . ." (emphases added).  There is an exception, however, where the drug is sold "unchanged from the original retail package of the manufacturer, in which event the manufacturer shall be responsible."  *Id.*  The few cases to have applied section 30-5-21(a) involve pharmacies, but the plain language of the statute extends beyond pharmacies to "all persons."  As such, the exception includes all middlemen—wholesalers and retailers alike—that stand between the manufacturer and the patient-consumer.

---

[7]  Given the nature of the harm alleged in the complaint, it can only be concluded that such property damage resulted from individuals abusing prescription opioids.  Such harm would necessarily occur after prescription opioids are delivered to a DEA-registered and state-licensed pharmacy, further highlighting the problematic nature of seeking to hold Defendant Distributors liable for the criminal and/or wrongful conduct of third parties.

- 18 -

This section abrogates liability for a variety of claims, including negligence, fraud, and conspiracy. *See, e.g., Thomas v. Wyeth*, No. 5:05-0094, 2005 WL 3754203, at *2-3 (S.D. W. Va. June 16, 2005) (finding negligence, failure to warn, and breach of express and implied warranty claims barred); *Ashworth v. Albers Med., Inc.*, 395 F. Supp. 2d 395, 408 (S.D. W. Va. 2005) (negligence, warranty, fraud, conspiracy, intentional infliction of emotional distress, and statutory claims preempted); *Baker v. Purdue Pharma L.P.*, No. 1:01-0553, 2002 WL 34213424, at *4 (S.D. W. Va. Mar. 28, 2002) (claims for negligence, intentional infliction of emotional distress, and breach of express and implied warranty barred) ; *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 294 (S.D.N.Y. 2001) (applying West Virginia law and precluding claims for negligence, willfulness, wantonness, and breach of express and implied warranty). In other words, to the extent Plaintiffs' claims "are predicated on the quality of drugs, they are preempted by § 30-5-12(a) [now section 30-5-21(a)]." *Ashworth*, 395 F. Supp. 2d at 408.

Here, it is certainly the case that the Counties' claims are "predicated on the quality of drugs." They allege that opioid medications are dangerously addictive and unsafe for long-term use. *See, e.g.*, Compl. ¶¶ 5, 7, 13. Because manufacturers allegedly over-promoted the medications, doctors allegedly over-prescribed them, pharmacies allegedly over-dispensed them, and Distributor Defendants allegedly over-supplied them, the Counties claim that they incurred extra costs that flowed from higher rates of addiction. *Id.* ¶¶ 19, 24-26; at 32 (section header titled "Opioid Use Is Associated with Known and Substantial Risks"); ¶ 69 ("Due to concerns about their addictive properties, opioids have been regulated at the federal level . . . since 1970. The labels for scheduled opioid drugs carry black box warnings of potential addiction and serious, life-threatening, or fatal respiratory depression, as a result of an excessive dose." (internal quotation marks and alteration omitted)); ¶ 607 (detailing harms Plaintiffs have allegedly incurred as a result of opioid addiction and abuse). It is allegations of this kind that

- 19 -

trigger section 30-5-21(a).  *See, e.g., Thomas*, 2005 WL 3754203, at *3 (barring claims against pharmacy where plaintiffs alleged that the drugs prescribed caused them to develop serious illnesses after having used the drugs over a period of time).

There is no suggestion that Distributor Defendants altered the packaging for the opioid medications they supplied to pharmacies in the Counties.  Therefore, Distributor Defendants are exempt from liability under West Virginia Code section 30-5-21(a).

## III.    THE COUNTIES FAIL TO STATE A NEGLIGENCE CLAIM.

The Counties' negligence claim fails for several reasons.  First, Distributor Defendants do not owe the Counties a common law duty.  Second, the Counties do not plausibly allege either factual or proximate causation.

### A.    Distributor Defendants Do Not Owe a Common Law Duty to the Counties.

As discussed above, the Counties  may not assert a claim for negligence premised on Distributor Defendants' alleged regulatory violations because no private cause of action can be implied from the WVCSA or its regulations.  To state a claim for negligence, then, the Counties must allege that Distributor Defendants breached a common law duty, independent of the obligations imposed by the WVCSA and the BOP regulations, to prevent diversion.  *Miller v. Whitworth*, 455 S.E.2d 821, 824 (W. Va. 1995) ("No action for negligence will lie without a duty broken.").  No such common law duty exists.

#### 1.    The West Virginia Board of Pharmacy (not the Counties) Administers the WVSCA.

As discussed above, the BOP administers West Virginia's comprehensive regulatory scheme for the distribution and dispensing of controlled substances. W. Va. Code § 60A-2-201(a).  The Counties' claims rely on the allegation that Distributor Defendants "had the ability—and duty—to slow down, question, inspect, report, alert, or otherwise limit the flow of [prescription opioids] in the Counties' communities; however . . . did nothing and continued to

- 20 -

fill thousands of suspicious orders." Compl. ¶ 762.  The Counties claim that "given the number of prescriptions and the total population of the Plaintiffs' counties, Distributor Defendants knew or should have known that they were supplying opioid medications far in excess of the legitimate needs of the counties and surrounding areas . . . ."  *Id.* ¶ 763.  These purported common law duties—which are nowhere to be found in the WVCSA or the regulations thereunder—simply do not exist.

West Virginia's Legislature has weighed the societal need within the state for controlled substances, including opioid pain medications, against the societal costs and burdens caused by their misuse, abuse, and potential for addiction.  In balancing the factors, the Legislature clearly made the public policy choice that prescription opioid medications must remain available to treat patients and that only the BOP shall have authority to enforce the provisions of the WVCSA.  The Court simply does not have jurisdiction to evaluate this clear policy choice enacted by the Legislature.  Accordingly, Distributor Defendants do not owe a duty to the Counties. *See Stevens v. MTR Gaming Group, Inc.*, 237 W.Va. 531, 788 S.E.2d 59, 66 (2016) (stating that "the statutory scheme and the plaintiff's common law claim are so incompatible that they cannot both occupy the same space" and concluding that highly regulated video lottery machine manufacturer and casino could not be liable in tort to gambling addict's estate as a matter of law).

### 2. Distributor Defendants do not have a Legal Duty to Limit Controlled Substances.

While West Virginia's regulations include the administrative requirements that Distributor Defendants identify and *report* suspicious orders there is no requirement that Distributor Defendants refuse to *ship* any order identified as suspicious.[8] *See* W. Va. C.S.R. § 15-2-4.4.  The reporting regulation does not include any interdiction requirement.  Also, no duty

---

[8]   Furthermore, the Counties' Complaint lacks any allegation that reporting suspicious orders to the BOP would have resulted in any action by the Board against the pharmacies placing the orders.

to suspend or limit shipments can be found in the regulatory requirement that distributors "provide effective controls and procedures to guard against theft and diversion of controlled substances." W. Va. C.S.R. § 15-2-4.2.1.[9] West Virginia C.S.R. § 15-2-4.2.1 limits "effective controls against diversion" to the BOP's determination of the adequacy of a registrant's "overall security system" on a registrant-by-registrant basis. *Id.*[10] The BOP's only requirement to distributors regarding due diligence before shipping controlled substances is to confirm that a receiving pharmacy is registered to possess controlled substances if the distributor is unsure of the pharmacy's registration. W. Va. C.S.R. § 15-2-4.3. In sum, no requirement to refuse any controlled substances order exists in West Virginia law. Distributors have no such obligation to the BOP, much less to the Counties.

### 3.   So-Called Industry Standards do not Impose a Legal Duty.

Nor can Plaintiff look to "industry standards" to impose a duty on Distributor Defendants. *See, e.g.,* Compl. ¶¶ 655, 764, 765. Industry standards or guidelines have no independent legal force or effect and do not establish a legal standard of care. *See Smoot ex rel. Smoot v. American Elec. Power*, 222 W.Va. 735, 671 S.E.2d 740, 744 n. 12 (2008); *see also Lehman Bros. Holdings, Inc. v. Laureate Realty Servs., Inc.*, No. 1:04-cv-1432-RLY-TAB, 2007 WL 2904591, at *28 (S.D. Ind. Sept. 28, 2007) (unreported) (concluding that Mortgage Bankers

---

[9]   Also, no such duty can be found in the federal Controlled Substances Act (the "CSA"). The federal CSA has a public interest factor of maintaining effective controls against diversion that the DEA considers when registering controlled substance distributors. *See* 21 U.S.C. § 823(b) and (e). As with the WVCSA, the federal CSA's public interest factor of maintaining effective controls against diversion does not require that distributors refuse to ship suspicious orders. The DEA, however, has asserted through adjudications that it may suspend a distributor's registration based on shipping controlled substances that the DEA deems should not have been shipped (typically to Internet pharmacies). These are purely regulatory actions based on the DEA's interpretation of the Federal CSA and cannot form the basis of a civil duty.

[10]   The two subsections following § 15-2-4.2.1 similarly refer to "[p]hysical security controls" and "security procedures to guard against in-transit losses." *See* W. Va. C.S.R. §§ 15-2-4.2.2, -4.2.3. These regulations nowhere mention a system to interdict suspicious orders.

Association's Canons of Ethics, as a purported "industry standard," do not "give rise to an independent and enforceable legal duty"); *In re Jones*, Ch. 13 Case No. 09-14499-BFK, 2011 WL 5025329, at *3 (Bankr. E.D. Va. Oct. 21, 2011) (unreported) (concluding that Consumer Data Industry Association's Credit Reporting Resource Guide is not "a national, legally enforceable standard for the reporting of debts in a Chapter 13 case").

## B.      The Counties do not Plausibly Allege Causation.

The Counties also fail to allege any facts that, taken as true, suggest that Distributor Defendants caused any of their alleged damages. There can be no liability unless the harm was proximately caused by the wrong. *See Valentine v. Wheeling Elec. Co.*, 180 W.Va. 382, 376 S.E.2d 588, 591 n.4 (1988); *Matthews v. Cumberland & Allegheny Gas Co.*, 138 S.Va. 639, 77 S.E.2d 180, 187 (1953). The Counties allege that their respective jurisdictions are in the midst of the opioid epidemic, that the opioid epidemic in West Virginia is the "epidemic of epidemics," (Compl. ¶¶ 2, 18), and they posit pure legal conclusions and opinions that Distributor Defendants allegedly violated the WVCSA and/or its regulatory requirements. The Counties then baldly, without a shred of factual support, allege that Distributor Defendants caused their damages and the epidemic: "By the actions and inactions described above, Distributor Defendants caused great harm to the Counties." Compl. ¶ 666.[11]

For example, the Complaint does not allege (1) that even a single pill Distributor Defendants distributed to any pharmacy was actually "diverted," as opposed to dispensed and used for legitimate medical purposes; (2) how any conduct or omission of Distributor Defendants purportedly led to the alleged diversion of any pill; (3) that any pharmacy customer of

---

[11]     *See also* Compl. ¶ 675 ("Defendant's conduct—over which they had control—significantly interfered, and continues to significantly interfere with the public health and safety, the public peace, and the public comfort in the Counties"); ¶ 687 ("Defendants' conduct directly and proximately caused injury to Plaintiffs and its residents. Plaintiffs continue to be directly and proximately injured by Defendants' actions in creating a public nuisance.").

Distributor Defendants was diverting pills, let alone filling prescriptions written other than for an illegitimate medical purpose.

The Counties have not pled a connection between Distributor Defendants and any allegedly diverted opioid pill. Thus, they have not adequately pled, for any of their claims, that Distributor Defendants did or are doing anything to cause the "opioid epidemic" or the alleged "damages" the Counties claim. *See, e.g., Bertovich v. Advanced Brands & Importing Co.*, No. 5:05CV74, 2006 WL 2382273, at *9-10 (N.D. W. Va. Aug. 17, 2006) (dismissing claims that defendants' advertising of alcohol caused minors to drink where complaint contained "no allegation that directly links the Defendants' actions or omissions" to plaintiff's alleged injuries).

Moreover, the Complaint identifies no fewer than five criminal actors whose conduct must have intervened between Distributor Defendants' conduct and the alleged harm—five individual health care providers who intentionally and unlawfully prescribed opioids for illegitimate medical purposes. Compl. ¶¶ 799-803. "Generally, a willful, malicious, or criminal act breaks the chain of causation." *Yourtree v. Hubbard*, 196 W.Va. 683, 474 S.E.2d 613, 620 (1996). Thus, someone who leaves his car unlocked with the keys in the ignition is not liable for damage caused when a thief steals the car and crashes it. *Id.* at 621. Likewise, advertising for alcohol is not a proximate cause of illegal alcohol consumption by children, because "for an underage person to consume alcohol, there must be at least one illegal act, whether it is a retailer selling alcohol to an underage consumer or a person of age purchasing alcohol for someone underage." *Bertovich v. Advanced Brands & Importing Co.*, 2006 WL 2382273, at *11 (N.D. W. Va.); *see Ashley County, Arkansas v. Pfizer, Inc.*, 552 F.3d 659 (8th Cir. 2009) (affirming dismissal of county claims seeking to hold manufacturers of over-the-counter medications containing pseudoephedrine liable for costs incurred by counties in addressing societal effects of methamphetamine epidemic). Rather than plead facts that would establish causation, the

- 24 -

Counties' allegations establish that any purported causal chain between Distributor Defendants and the Counties' alleged damages is broken by criminal conduct.[12] Without establishing proximate cause, all of the Counties' claims fail.

Just as Distributor Defendants have no control over doctors who write prescriptions, they have no control over the intervening causes of abuse; they have no (and cannot have any) contact with the patients who receive the opioids and have no way to know if they forged prescriptions, feigned pain, doctor-shopped to obtain prescriptions, or gave or sold any of their lawfully obtained opioids to others.  Compl. ¶¶ 612, 619, 620, 622.  Unlike Distributor Defendants, the DEA, BOP, BOM, and law enforcement at all levels (including the law enforcement agencies within the subject counties) have access to the information necessary to identify, interdict, and defeat (if it can be done) the criminal, drug-related activities that the Counties claim constitute a public nuisance and they have the authority to do so.  That law enforcement has not effectively tackled the problem does not justify shifting the blame for this extraordinarily complex social problem to entities like Distributor Defendants without any factual support whatsoever.

"[A]lthough the plaintiff enjoys the benefit of all inferences that plausibly can be drawn from the pleadings, a party's legal conclusions, opinions, or unwarranted averments of fact will not be deemed admitted."  *Malone v. Potomac Highlands Airport Auth.*, 237 W.Va. 235, 786 S.E.2d 594, 600 (2015) (quoting *Kopelman & Associates, L.C. v. Collins*, 196 W.Va. 489, 493, 473 S.E.2d 910, 914 (1996)); *Emp'r Teamsters-Local Nos. 175/505 Health & Welfare Tr. Fund v. Bristol Myers Squibb Co.*, 969 F. Supp. 2d 463, 475 (S.D. W. Va. 2013) (dismissing union funds' unjust enrichment claims against drug manufacturer, because "[b]etween Defendants'

---

[12]   Also, the intervening criminal acts that the Counties plead further establish that Distributor Defendants owe no duty to the Counties.  *See Miller v. Whitworth*, 193 W.Va. 262, 455 S.E.2d 821, 825 (1995) ("Generally, a person does not have a duty to protect others from the deliberate criminal conduct of third parties.") (quoting 57A Am. Jur. 2d Negligence § 104 (1989)).

alleged misleading marketing and Plaintiffs' prescription reimbursements lies a vast array of intervening events," and Plaintiffs' complaint lacked "sufficient allegations from which to properly infer that proximate causation is satisfied"); *White v. Wyeth*, 227 W.Va. 131, 705 S.E.2d 828, 837-38 (2010) (finding no causal connection between prescription drug purchases and alleged harm to consumers from deceptive marketing practices "because the consumer cannot and does not decide what product to purchase;" ordering dismissal following remand).

For example, in *Employer Teamsters*, applying West Virginia law, the court dismissed a complaint for failure to establish proximate causation. *Emp'r Teamsters-Local Nos. 175/505 Health & Welfare Tr. Fund v. Bristol Myers Squibb Co.*, 969 F. Supp. 2d 463, 472-75 (S.D. W. Va. 2013). The court held that a pharmaceutical manufacturer's activities in marketing a blood-thinning drug, Plavix, were too remote to have proximately caused the increased costs the plaintiff third-party payor had reimbursed for the drug.   *Id.*   As the court explained, plaintiffs' allegations showed that "[b]etween Defendants' alleged misleading marketing and Plaintiffs' prescription reimbursements lies a vast array of intervening events, including the 'independent medical judgment' of doctors" who prescribed the drug.   *Id.* at 475.   "Without any specific allegations as to who received these misrepresentations, how the misrepresentations influenced doctors, and why certain patients received Plavix instead of alternative medications, this Court is left without sufficient allegations from which to properly infer that proximate causation is satisfied."   *Id.*; *see also White v. Wyeth*, 227 W.Va. 131, 705 S.E.2d 828 (2010), discussed *id.* at 472-75.[13]

Another analogous case is *Ashley Cty., Arkansas v. Pfizer, Inc.*, 552 F.3d 659 (8th Cir. 2009).   There, various Arkansas governmental entities, including counties, sued manufacturers of

---

[13]   *See also, e.g., Webb v. Sessler*, 135 W.Va. 341, 63 S.E.2d 65, 68-69 (1950); *Jackson v. Putnam Cty. Bd. of Educ.*, 221 W.Va. 170, 653 S.E. 2d 632, 642 (2007); *Aikens v. Debow*, 208 W.Va. 486, 541 S.E.2d 576, 582-87 (2000).

over-the-counter pseudoephedrine medications seeking recovery for the harms caused by the state's methamphetamine "epidemic." The plaintiffs claimed the manufacturers had marketed and sold their legal products to retailers knowing that third parties would buy some of them to make illegal methamphetamine. *Id.* at 663. The Eighth Circuit affirmed the action's dismissal on the basis that the pseudoephedrine manufacturers' conduct as a matter of law was too far removed from the methamphetamine epidemic to allow the government to recover its costs from them. *Id.* at 667-73. The Court relied on the heavy regulation of pseudoephedrine and the many intervening causes, including criminal behavior, that lie between manufacturers' legal sales of pseudoephedrine to retailers and the abuses that required the state to incur costs to address the methamphetamine epidemic. *Id.* at 664, 668.

The same logic applies in this case. Distributor Defendants' purported connection to the "opioid epidemic" as a matter of law is too remote and attenuated to support a negligence claim (or any other claim). Prescription opioids are legal products that are tightly regulated at every level (far more tightly than pseudoephedrine). As the Counties' allegations show, many factors have contributed to the opioid abuse the Counties claim they have addressed or will address. Foremost among them—and, notably, a factor not present with pseudoephedrine that weighs even more decidedly against liability here—is the gatekeeping role physicians occupy in making opioids available. Physicians control the types and amounts of opioids that pharmacies dispense. They are responsible for the significant increase in opioid prescriptions that has made opioids available for abuse; and they exercise professional medical judgment in prescribing opioids. Physicians also have access to information in the CSMP that can help them determine whether a patient may be seeking a prescription for purposes of abuse. *See* W. Va. Code §60A-9-2. Distributor Defendants do not have any control over doctors who prescribe opioids and cannot second-guess their medical judgment (or, due to privacy laws, even know the patients to whom

they prescribe or their medical conditions). *See* 45 C.F.R § 164.502. Likewise, Distributor Defendants do not have access to ARCOS or the CSMP.

Pharmacies also play a crucial role in the dispensing of opioids. Like physicians, they have access to the CSMP data and their own legal obligation to determine whether opioid prescriptions are written for a legitimate medical purpose. As in *Employer Teamsters*, the central and undeniable role of physicians and their medical judgment in the prescribing, dispensing, availability, and use of opioids and the consequent abuse of some of them, as well as pharmacies' gatekeeper role, preclude an inference that Distributor Defendants proximately caused the opioid epidemic by supplying opioids to licensed pharmacies to be sold only upon lawful prescription. 969 F. Supp. 2d at 475.

Although Distributor Defendants share the Counties' concerns about opioid abuse, Distributor Defendants' alleged role as a matter of law is far too remote and broken by too many intervening causes outside Distributor Defendants' control for them to be deemed a proximate cause of the Counties' alleged damages. *Employer Teamsters*, 969 F. Supp. 2d at 475; *Ashley*, 552 F.3d at 664.

## IV.    THE COUNTIES FAIL TO STATE A PUBLIC NUISANCE CLAIM.

The Counties fail to appreciate that they may not recover damages in a public nuisance action. They also fail to appreciate the limited purpose and domain of the public nuisance doctrine, which is concerned as a general rule with a defendant's misuse of its own land or conduct that adversely affects another's land. The Counties do not allege any misuse or interference with property rights, and they also fail to plead facts sufficient to satisfy the basic requirements of a nuisance claim—that the claim concerns a right held by the general public, that the defendant controls the harmful instrumentality at the time of injury, and that the activity is unlawful.

- 28 -

Permitting the Counties to pursue a public nuisance claim here would supersede product liability law and transform the public nuisance doctrine into a sweeping new regulatory mechanism. *See City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E. 2d 1099, 1116 (Ill. 2004) ("We are also reluctant to recognize a public right so broad and undefined that the presence of any potentially dangerous instrumentality in the community could be deemed to threaten it."); *State v. Lead Indus. Ass'n, Inc.*, 951 A.2d 428, 454 (R.I. 2008) ); *Tioga Pub. Sch. Dist. v. U.S. Gypsum Co.*, 984 F.2d 915, 921 (8th Cir. 1993) ("Nuisance thus would become a monster that would devour in one gulp the entire law of tort . . . .").

### A.    The Public Nuisance Doctrine Is Not an All-Purpose Remedy.

Nuisance claims—and public nuisance claims in particular—occupy a niche role within the common law: they empower public officials to abate (i) unlawful invasions of rights (ii) shared by the general public by proceeding against those parties (iii) that control the harmful instrumentality at the time it causes injury.   The West Virginia Supreme Court has said that the state "has adopted a broad and flexible definition of a nuisance whereas [*sic*] 'nuisance is a flexible area of the law that is adaptable to a wide variety of factual situations.'"  *Sharon Steel Corp. v. City of Fairmont*, 175 W.Va. 479, 334 S.E. 2d 616, (1985)).   But context is key in understanding this statement, for the Supreme Court followed it with a near-exhaustive catalogue of cases intended to illustrate that "wide variety of factual situations."   Tellingly, each sounds in property or environmental law:

> As suggested by this broad definition, nuisance is a flexible area of the law that is adaptable to a wide variety of factual situations. We have decided nuisance cases involving land being used for rock concerts, a school site near an airport, dust created by coal trucks, an automobile junk yard, a used car lot, a rail tramroad built on a public road, a house of prostitution, an automobile garage built out of inflammable materials, fences, coal smoke and soot emitted by a dye works plant, a carpenter shop with a steam engine, damage to property adjacent to a railroad track, a merry-go-round, explosives factory, a house built partially on city property, noise from a factory, and an obstruction of a public road.

- 29 -

*Sharon Steel*, 175 W.Va. 479, 334 S.E.2d at 621 (citations omitted).

This listing reflects the fact that the public nuisance doctrine has historically been a creature of property law. "If 'nuisance' is to have any meaning at all, it is necessary to dismiss a considerable number of cases which have applied the term to matters not connected either with land or with any public right, as mere aberration . . . ." *Prosser and Keeton on the Law of Torts*, § 86, at 618; *see also Mahoney v. Walter*, 157 W.Va. 882, 205 S.E.2d 692, 697 (1974) (noting the "basic concept" of nuisance law, according to Blackstone, is "anything done to the hurt or annoyance of the lands, tenements, or hereditaments of another"); *Detroit Bd. of Educ. v. Celotex Corp.*, 493 N.W.2d 513, 521 (Mich. Ct. App. 1992) (observing that nuisance cases "almost universally concern the use or condition of property, not products"). Nearly every (perhaps all) West Virginia case upholding a nuisance claim has involved an invasion of property rights or environmental interests. *See Sharon Steel Corp.*, 175 W.Va. 479, 334 S.E.2d at 622 ("There is simply no common law doctrine that approaches nuisance in comprehensiveness or detail as a regulator of land use . . . ."). Nuisance may be broadly defined, flexible, and adaptable to a wide variety of factual scenarios, but that variety is itself confined to a narrow category of injury.

Courts have resisted the efforts of clever plaintiffs to stretch the doctrine beyond property or environmental law, *see, e.g., Tioga Pub. Sch. Dist. v. U.S. Gypsum Co.*, 984 F.2d 915 (8th Cir. 1993) (asbestos); *Lead Indus.*, 951 A.2d at 428 (lead paint); *City of Chicago*, 821 N.E. 2d at 1116 (guns), recognizing that an expanded doctrine could swallow traditional avenues of relief and dramatically expand the government's ability to "regulate by litigation."[14] The manufacture,

---

[14]  *See In re Lead Paint Litig.*, 924 A.2d 484, 505 (N.J. 2007) (refusing to permit plaintiffs "to supplant an ordinary product liability claim with a separate cause of action as to which there are apparently no bounds"); *District of Columbia v. Beretta, U.S.A. Corp.*, 872 A.2d 633, 650-51 (D.C. 2005) (declining to adopt a right of action for public nuisance applied to the manufacture and sale of guns generally, "where an effect may be a proliferation of lawsuits not merely against these defendants but against other types of commercial enterprises . . . in order to address a myriad of societal problems"); *People ex rel. Spitzer v. Sturm, Ruger &*

approval, wholesale distribution, and retail dispensing of prescription drugs is subject to detailed and comprehensive regulation at the federal and state level. The public nuisance doctrine is a blunt instrument. Applied in the loose fashion advocated by the Counties, the doctrine would supplant the calibrated regulatory framework administered and enforced by the FDA, DEA, and their state counterparts.

Thus, by ignoring that the foundation of nuisance lies in land use and property rights, the Counties' nuisance claim is misguided at a fundamental level. As further explained in the following sections, the public nuisance doctrine cannot be used to regulate activity that is already comprehensively regulated; it can only vindicate public rights; can only be directed at the party that controls the harmful instrumentality at the time of injury; and can only address unlawful activity. Here, the Counties seek to hijack the doctrine in order to pursue what are merely re-packaged negligence claims.

**B.     The Counties Have Not Identified a Public Right with Which Distributors Interfered.**

In West Virginia, as in virtually every other jurisdiction, the invasion of a public right is the defining element of a public nuisance claim and sets it apart from private nuisance. West

---

*Co., Inc.*, 309 A.D.2d 91, 96 (N.Y. App. Div. 2003) ("[G]iving a green light to a common-law public nuisance cause of action today will, in our judgment, likely open the courthouse doors to a flood of limitless, similar theories of public nuisance, not only against these defendants, but also against a wide and varied array of other commercial and manufacturing enterprises and activities"); *Spitzer*, 309 A.D.2d at 96 ("All a creative mind would need to do is construct a scenario describing a known or perceived harm of a sort that can somehow be said to relate back to the way a company or an industry makes, markets and/or sells its non-defective, lawful product or service, and a public nuisance claim would be conceived and a lawsuit born."); *Tioga*, 984 F.2d at 921 (concluding that adopting plaintiff's nuisance theory would make nuisance into "a monster that would devour in one gulp the entire law of tort"); *In re Lead Paint Litig.*, 924 A.2d at 505 (observing plaintiffs' nuisance theory would "vest the public entities with a general tort-based remedy" or would "create an ill-defined claim that would essentially take the place of [existing] enforcement, abatement, and public health funding scheme[s]").

Virginia generally accepts the Restatement's definition of a public nuisance,[15] which requires "unreasonable interference with a right common to the general public." *Restatement (Second) of Torts* § 821B(1). A public right is a right that is shared equally by all members of the public, like access to air, water, or public rights-of-way. *See Hendricks v. Stalnaker*, 181 W.Va. 31, 380 S.E.2d 198, 200 (1989) (describing public nuisance as that which "affects the general public as public"); *Lead Indus.*, 951 A.2d at 453 ("The interference must deprive all members of the community of a right to some resource to which they otherwise are entitled."); *Ganim v. Smith & Wesson Corp.*, 780 A.2d 98, 132 (Conn. 2001) ("[A] public nuisance by definition injures all in a common way."). When public rights are abridged, only "proper public officials" or specially damaged private persons may sue "to vindicate" those rights. *Sharon Steel Corp. v. City of Fairmont*, 175 W.Va. 479, 334 S.E. 2d 616, (1985). A private right, on the other hand, is an interest shared by "a limited number of persons only," not by all members of the public, and the cause of action belongs to the injured individual alone.[16] This line, which West Virginia courts have consistently maintained, lends doctrinal rigor to the public nuisance doctrine and prevents public officials from meddling in private controversies or private claims from circumventing the established standards for proving product liability claims.

The Complaint ignores this controlling West Virginia precedent and the rigor it brings to the definition of a public nuisance. All that the Complaint says about any "public right" is contained in a single conclusory sentence: It was reasonably foreseeable that defendants' conduct "would otherwise significantly and unreasonably interfere with public health, safety and welfare and with the public's right to be free from disturbance and reasonable apprehension of danger to person and property within the Counties." Compl. ¶ 686.

---

[15] *Duff v. Morgantown Energy Assocs.*, 187 W.Va. 712, 421 S.E.2d 253, 257 n.6 (1992).

[16] *See Hendricks*, 380 S.E.2d at 200.

We suspect that the Complaint does not clearly allege the public right at issue, because to do so would expose plainly how far removed it is from the public rights recognized in the case law—i.e., rights that are rooted in property and land use, like the public right to air unpolluted by coal smoke and soot from a dye plant, to a neighborhood free from factory noise, or to unobstructed use of a public road. *See Sharon Steel*, 175 W.Va. 479, 334 S.E.2d at 621. The opioid epidemic is a pressing social issue, but there is no public right to be free from prescription drugs that are harmful if deceptively marketed, mis-prescribed or misused. The Counties' approach to "public right" appears to rest on the mistaken premise that personal injury to a significant number of individuals is synonymous with the invasion of, or interference with, "a right common to the public." This is not so. A public right is "more than an aggregate of private rights by a large number of injured people," *Lead Indus.*, 951 A.2d at 448, or "an assortment of claimed private individual rights," *City of Chicago v. American Cyanamid Co.*, 823 N.E.2d 126, 131 (Ill. App. Ct. 2005). A public right is "an interest shared equally by members of the public." *Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 96 (4th Cir. 2011) (applying West Virginia law).

Even if the Counties had identified a public right, they have not plausibly alleged any interference with that right. Distributor Defendants were at all times DEA-registered and state-licensed wholesale distributors. They supplied wholesale orders placed by DEA-registered and state-licensed pharmacies, and they reported every shipment of opioid medications to the DEA. The controlled substances they handled were FDA-approved. There is no allegation that Distributor Defendants ever supplied opioid medications to pharmacies that were unregistered or unlicensed, and no allegation that they ever failed to comply with the rigorous regulatory requirements for ensuring the physical security of the medications. Thus, if there was diversion of opioid medications (as there surely was), it did not happen because Distributor Defendants

sold them to persons who were not entitled to receive them or because Distributor Defendants allowed the medications to be stolen from its facilities. Any diversion occurred after Distributor Defendants had delivered the medications to their pharmacy customers. And because Distributor Defendants reported every order and shipment of opioid medications to the DEA, it knew the total volume of medications purchased by each pharmacy in each County, the total purchases by all pharmacies in each County (information unknown and unavailable to each Distributor Defendant).

As the Supreme Court of Appeals of West Virginia explained more than 60 years ago, "that which is lawful, or is authorized by a valid statute, or which the public convenience imperatively demands, cannot be a public nuisance." *Pope v. Edward M. Rude Carrier Corp.*, 138 W.Va. 218, 75 S.E.2d 584, 589 (1953). In contravention of that holding, the Counties allege that the distribution of FDA-approved medications by licensed Distributor Distributors to licensed pharmacies constitutes a public nuisance. Other courts across the country have recognized in a number of contexts that there is no "public right to be free from the threat that some individuals may use an otherwise legal product (be it a gun, liquor, a car, a cell phone, or some other instrumentality) in a manner that may create a risk of harm to another." *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1116 (Ill. 2004); *see also, e.g., Camden Cty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*, 273 F.3d 536, 540 (3rd Cir. 2001) (refusing to allow "public nuisance claim to proceed against manufacturers for lawful products that are lawfully placed in the stream of commerce"); *State v. Lead Indus., Ass'n, Inc.*, 951 A.2d 428, 453 (R.I. 2008) (refusing to expand "the definition of public right" to encompass manufacture of lead paint); *Spitzer v. Sturm, Ruger & Co.*, 309 A.D.2d 91, 97 (N.Y. App. Div. 2003) ("[T]he non-defective, lawful products at issue in this case [handguns] cannot be a nuisance without straining the law to absurdity."); *State of Texas v. Am. Tobacco Co.*, 14 F. Supp. 2d 956, 973

(E.D. Tex. 1997) (rejecting "overly broad definition of the elements of public nuisance"); *Detroit Bd. of Educ. v. Celotex Corp.*, 493 N.W.2d 513, 521 (Mich. Ct. App. 1992) ("[A]ll courts that have considered the question have rejected nuisance as a theory of recovery for asbestos contamination.").

### C.   The Counties Have Not Alleged That the Distributor Defendants Controlled the Medications When They Caused Injury.

The Counties do not allege that Distributor Defendants had any control of opioid medications when they created a nuisance. Absent such control, Distributor Defendants cannot be liable, because liability for damage caused by a nuisance "turns on whether the defendant is in control of the instrumentality alleged to constitute a nuisance, since without control a defendant cannot abate . . . ." *Tioga Pub. Sch. Dist. v. U.S. Gypsum Co.*, 984 F.2d 915, 920 (8th Cir. 1993); *see Lead Indus.*, 951 A.2d at 449 ("As an additional prerequisite to the imposition of liability for public nuisance, a defendant must have control over the instrumentality causing the alleged nuisance *at the time the damage occurs*." (emphasis in original)); *Traube v. Freund*, 775 N.E.2d 212, 216 (Ill. App. Ct. 2002) (noting that the "absence of a manufacturer's control over a product *at the time the nuisance is created* is generally fatal" (emphasis added)); *Gelman Scis., Inc. v. Dow Chem. Co.*, 508 N.W.2d 142, 144 (Mich. Ct. App. 1993) ("If a commercial transaction is involved, control of the nuisance at the time of injury is required.").

On this point, it is significant that the Distributor Defendants are *wholesale* distributors of medications. What they sell to pharmacies constitutes inventory, and that inventory sits on the shelf until a patient presents a valid prescription to the pharmacist, who fills it. Any injury occurs only after the patient leaves the pharmacy with a prescription in hand, either because he misuses it or diverts it. The Distributors have long since lost control of the medication by that time. It has changed hands at least twice—from distributor to pharmacy, and pharmacy to

patient—before any injury occurred.  For this reason as well, the public nuisance claim fails as a matter of law.

**D.      The Counties Do Not Plausibly Allege Causation.**

The Counties fail to support their public nuisance claims with factual allegations that, taken as true, show that Distributor Defendants caused the alleged public nuisance in their respective counties.  This failure follows from the fact that the Counties do not allege the most basic foundational facts—*e.g.*, (1) that all or part of even a single wholesale order by any pharmacy was actually "diverted"; or (2) how any conduct or omission of Distributor Defendants led to the diversion of all or part of any pharmacy order.

Diversion, which is the intentional transfer of medications to persons not entitled to receive them, inherently involves unlawful conduct—*e.g.*, by the patient, in fabricating a complaint of pain or in obtaining prescriptions from more than one doctor; by the doctor, in prescribing the medications without making the professional judgment that there is a legitimate medical need; by pleasure-seekers, in buying or stealing the medications from persons who obtained them from a doctor; or by individual drug traffickers and dealers.  That such unlawful conduct came between Distributor Defendants' conduct and the alleged harm "breaks the chain of causation."  *Yourtree*, 196 W.Va. 683, 474 S.E.2d at 620; *see also City of Chicago*, 821 S.E.2d at 1136 ("[D]efendants' lawful commercial activity, having been followed by harm to person and property caused directly and principally by the criminal activity of intervening third parties, may not be considered a proximate cause of such harm.").

In *Ashley County, Arkansas* the Eighth Circuit dismissed a public nuisance claim against distributors, stating that "it is inadvisable as a matter of public policy to deem the dealer defendants' actions a legal cause of the alleged nuisance" where "[n]one of the Defendants [sellers of pseudoephedrine] are retailers, nor do they sell the medications directly to the public,"

but rather sold their products to "independent retailers" from whom illegal methamphetamine cooks obtained the products. *Ashley County, Arkansas v. Pfizer, Inc.*, 552 F.3d 659, 671 & n.5, 672 (8th Cir. 2009); *see also City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 426 (3d Cir. 2002) (affirming dismissal due to lack of proximate cause of an action seeking to hold gun distributors liable under various theories, including public nuisance, for the city's costs of responding to crime, injuries, and property damage from gun violence and stating—many "links . . . separate a manufacturer's sale of a gun to a [licensed retailer] and the gun's arrival in the illegal market through a distribution scheme that is not only lawful, but also is prescribed by statute with respect to the manufacturer's conduct"); *Penelas v. Arms Tech., Inc.*, No. 99-1941 CA-06, 1999 WL 1204353, at *4 (Fla. Cir. Ct. Dec. 13, 1999), *aff'd*, 778 So. 2d 1042 (Fla. Dist. Ct. App. 2001) ("a party cannot be held liable for nuisance absent control of the activity which creates the nuisance"); *Perry v. Town of Putnam*, 131 A.3d 1284, 1289 (Conn. App. 2016) (town was not liable in public nuisance for third parties' "unpleasant and disruptive behavior" at town-built parking lot; such behavior "is the proper bailiwick of police regulation and control, not of the law of nuisance").

**E.    The Counties Cannot Recover Damages For a Public Nuisance.**

The Counties' public nuisance claim for damages fails at the threshold, because the public nuisance doctrine allows a political subdivision to seek only abatement of the nuisance— *i.e.*, injunctive relief.

The prayer for relief seeks only money damages:

Plaintiffs demand judgment against Defendants, jointly and severally, for: (A) An amount of compensatory damages determined by a judge or jury . . . (B) An amount of punitive damages determined by a judge or jury . . . (C) Pre-judgment and post-judgment interest . . . (D) Costs and attorney fees expended in the prosecution of this matter; and (E) Any and all further relief as a court and/or jury deem just and proper.

- 37 -

Compl. at 269.  While the preceding paragraph uses the word, "abate," it equates the costs of abatement with damages.  *Id.* ¶ 820 ("Plaintiffs have further suffered economic and noneconomic damages, including damages and costs necessary to eliminate the hazard to public health and safety, and to abate . . . the public nuisance caused by the opioid epidemic, as well as any other damages that may be available under West Virginia law.").

The only remedy available to a public entity pursuing a public nuisance claim is an ***injunction*** to abate the nuisance at defendant's expense, not money damages.  West Virginia Code § 15-3-6 authorizes counties to investigate public nuisances affecting public health and to "to apply to the circuit court of the county in which any such nuisance exists, or to the judge thereof in vacation, *for an injunction forthwith to restrain, prevent or abate such nuisance.*" This restriction to injunction relief is consistent with the Restatement (Second) of Torts and precedent from other jurisdictions.  "[T]here is no right either historically, or through the *Restatement (Second)*'s formulation, for the public entity to seek to collect money damages in general." *Lead Paint Litig.*, 924 A.2d at 498-99; *see also Restatement (Second) of Torts* § 821C(2) (stating that a  "public official or public agency" may  "maintain a proceeding ***to enjoin***" a public nuisance (emphasis added)).  Individual private plaintiffs may be entitled to seek damages in nuisance suits.  *See City of Chicago*, 821 N.E.2d at 1143.  But where, as here, a public entity "seeks damages rather than remedies of abatement . . . [and thus] fall[s] outside the scope of remedies available to a public entity plaintiff," the complaint fails to state a claim for public nuisance and must be dismissed.  *Lead Paint Litig.*, 924 A.2d at 502.

That the Counties have asked for the wrong relief is not surprising, for the "right" relief— enjoining Distributor Defendants from distributing opioids—is irresponsible and makes no sense.  When a patient presents a valid prescription for an opioid medication at his pharmacy, is the pharmacist to turn him away because the pharmacist has none?  The County recognizes

that FDA has approved the medications as safe and effective.  Compl. ¶ 66.  And it alleges that some of its residents suffer from chronic pain (and surely others suffer from cancer and end-of-life pain) and need the medications as part of appropriate medical care.  Compl. ¶ 31.  But the Counties do not say how many pills is the "right" number in light of the community's needs.  Even were the Counties to come up with that number, they do not say how manufacturers are to allocate that limited amount to distributors, how distributors are to ration pharmacies, and what pharmacies are to do when ten patients present prescriptions and there is medication for only one.

Whether or not the Counties could have alleged a plausible claim for injunctive relief, the fact is that they alleged a claim for damages alone.  The Complaint thus fails to state a valid claim for relief.

## V.   THE COUNTIES HAVE NOT PLED THE ELEMENTS OF UNJUST ENRICHMENT.

The Counties fail to plead facts sufficient to allege an unjust enrichment claim.  A plaintiff seeking to recover "on a theory of unjust enrichment must [plead]," among other elements, "a benefit conferred on the defendant by the plaintiff." *Johnson v. Ross*, 419 F. App'x 357, 361 (4th Cir. 2011) (emphasis added) (applying West Virginia law); *see also Am. Heartland Port, Inc. v. Am. Port Holdings, Inc*., 53 F. Supp. 3d 871, 879 (N.D.W. Va. 2014) ("In West Virginia, 'restitution damages from a claim of unjust enrichment are measured in terms of the benefit the plaintiff conferred to the defendant.'"), *aff'd per curiam*, 624 F. App'x 110 (4th Cir. 2015).

The Complaint fails to meet this threshold requirement because it does not allege that the Counties conferred a benefit on, made payments to, or performed services for Distributor Defendants.  Nor could it.  No financial or business relationship existed—or is alleged to have

- 39 -

existed—between the Counties and Distributor Defendants. Accordingly, the Counties' unjust enrichment claims are factually unfounded, legally untenable, and should be dismissed.

## VI.  THE COUNTIES FAIL TO ADEQUATELY PLEAD THE ELEMENTS OF FRAUDULENT CONCEALMENT AND FAIL TO MEET THE HEIGHTENED PLEADING STANDARD OF RULE 9.

The Counties' claim for fraudulent concealment against Distributor Defendants is deficient in two respects, each of which standing alone is sufficient to warrant dismissal of this claim: (1) the Counties fail to plead the essential elements of the cause of action; and (2) they fail to meet heightened pleading standard of Rule 9 of the West Virginia Rules of Civil Procedure.

To establish a claim for fraud under West Virginia law, a plaintiff must establish four essential elements: that (1) the act claimed to be fraudulent was the act of the defendant or induced by him; (2) it was material and false; (3) plaintiff relied upon it and was justified under the circumstances in relying upon it; and (4) he was damaged because he relied upon it. *Trafalgar House Const., Inc. v. ZMM, Inc.*, 211 W. Va. 578, 584, 567 S.E.2d 294, 300 (2002). "Fraudulent concealment involves the concealment of facts by one with knowledge or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud." *Id.* "Actual fraud is intentional, and consists of intentional deception to induce another to part with property or to surrender some legal right, and which accomplishes the end designed." *Stanley v. Sewell Coal Co.*, 169 W.Va. 72, 76, 285 S.E.2d 679, 683 (1981). Recognizing the gravity of an allegation of fraud, West Virginia law imposes a heightened pleading standard for fraud claims. Rule 9 of the West Virginia Rules of Civil Procedure provides that "[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." W.Va. R. Civ. P. 9. "A pleading which includes a claim of fraud requires more than the short, plain statement of the claim contemplated under Rule 8(a)(1)." *Highmark W. Virginia, Inc. v. Jamie*, 221 W.Va. 487, 655 S.E.2d 509, 515 (W. Va. 2007). Fraud must be pled with particularity both to allow the

party alleged to have committed fraud to defend such charges and to permit the tribunal hearing the matter to conduct a full review of the complaining party's claims. *Kessel v. Leavitt,* 204 W.Va. 95, 511 S.E.2d 720, (1998). The Counties' Complaint falls well short of the mark.

The Counties' fraud allegations aimed at Distributor Defendants are contained in two paragraphs that are pled indiscriminately against all Defendants in the action. In paragraph 42 of the Complaint, the Counties allege: "At all times material herein, Defendants took steps to avoid detection of, and fraudulently concealed, their conspiratorial behavior and their negligent and reckless conduct relating to their marketing, promotion, sale, distribution, and prescribing of opioid drugs." The Counties further allege in Paragraph 701: "Defendants' misrepresentation and/or concealing and/or deceiving of their improper marketing, promotion, distribution, supplying, and/or regulation of opioid drugs coupled with Defendants' knowledge of the risks and harms created by their actions and conduct, as discussed herein, constitutes fraud, misrepresentations, and deceit, both actual and concealed."

The Counties' threadbare pleading is wholly insufficient to meet the requirements of Rule 8, let alone the heightened pleading requirements of Rule 9. Indeed, the Counties fail to allege what Distributor Defendants allegedly concealed, how they concealed it, or how they acted fraudulently in any way with respect to their lawful distribution of controlled substances in the subject counties. Furthermore, the Counties allege no facts that demonstrate that the Counties relied upon any fraud or concealment allegedly perpetrated by Distributor Defendants, nor could they. Distributor Defendants have no contact with the Counties that would create an opportunity for such reliance. They have no reporting obligations to the Counties. Finally, the Counties allege no facts outlining how they were damaged based upon the alleged fraud by Distributor Defendants.

In sum, the Counties' two-paragraph conclusory allegations fall well short of Rule 9's requirements, and the Counties have failed to plead the required the elements for fraud. Accordingly, this claim should be dismissed.

### CONCLUSION

Because the Counties fail to state a claim for any cause of action against Distributor Defendants, each and every claim against Distributor Defendants should be dismissed in its entirety.

Dated:  24 April 2018

**AMERISOURCEBERGEN DRUG**
**CORPORATION**

A. L. Emch (WVSB #1125)
aemch@jacksonkelly.com
Adam J. Schwendeman (WVSB #11989)
aschwendeman@jacksonkelly.com
JACKSON KELLY PLLC
500 Lee Street, East, Suite 1600
P.O. Box 553
Charleston, WV 25322
Telephone: (304) 340-1000
Facsimile: (304) 340-1130

*Counsel for AmerisourceBergen Drug Corporation*
*in actions by Brooke,  Hancock, Lewis, Marshall,*
*Tyler and Wetzel County Commissions*

Harry G. Shaffer III (WVSB #3344)
hshaffer@shafferlaw.net
Todd A. Mount (WVSB #6939)
tmount@shafferlaw.net
SHAFFER & SHAFFER
P.O. Box 38
Madison, WV 25130
Telephone: (304) 369-0511
Facsimile: (304) 369-5411

*Counsel for AmerisourceBergen Drug Corporation
in Ohio County Commission action*

**CARDINAL HEALTH, INC.**

**By Counsel,**

Brian A. Glasser (WVSB #6597)
bglasser@baileyglasser.com
Steven R. Ruby (WVSB #10752)
sruby@baileyglasser.com
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110

*Counsel for Defendant Cardinal Health, Inc.*

**McKESSON CORPORATION**

**By Counsel,**

Russell D. Jessee (WVSB #10020)
STEPTOE & JOHNSON PLLC
Chase Tower, 17th Floor
P.O. Box 1588
Charleston, WV 25326
Telephone: (304) 353-8000
Facsimile: (304) 353-8180

- 43 -

William D. Wilmoth (WV Bar # 4075)
STEPTOE & JOHNSON PLLC
P.O. Box 751
Wheeling, West Virginia 26003-0751
Telephone: (304) 233-0000

*Counsel to McKesson in actions by Brooke,
Hancock, Ohio, Tyler, and Wetzel Counties*


Jeffrey M. Wakefield (WVSB #3894)
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*Counsel to McKesson in actions by Lewis and
Marshall Counties*


Daniel C. Cooper (WVSB# 5476)
Jamison H. Cooper (WVSB# 8043)
COOPER LAW OFFICES, PLLC
240 Main West Street
Bridgeport, WV 26330
Telephone: (304) 842-0505
Facsimile:  (304) 842-0544

*Counsel to McKesson in action by Harrison County*

**IN THE CIRCUIT COURT OF MARSHALL COUNTY, WEST VIRGINIA**

| | |
|---|---|
| BROOKE COUNTY COMMISSION,<br>HANCOCK COUNTY COMMISSION,<br>HARRISON COUNTY COMMISSION,<br>LEWIS COUNTY COMMISSION,<br>MARSHALL COUNTY COMMISSION,<br>OHIO COUNTY COMMISSION,<br>TYLER COUNTY COMMISSION, and<br>WETZEL COUNTY COMMISSION,<br>       *Plaintiffs*,<br>  v. | Civil Action No.: 17-C-248<br>Civil Action No.: 17-C-249<br>Civil Action No. 17-C-250<br>Civil Action No. 17-C-251<br>Civil Action No.: 17-C-252<br>Civil Action No.: 17-C-253<br>Civil Action No.: 17-C-254<br>Civil Action No.: 17-C-255<br><br>Judge:  David W. Hummel, Jr. |

PURDUE PHARMA L.P.; PURDUE PHARMA INC.; THE PURDUE FREDERICK COMPANY, INC.; MARK RADCLIFFE; MARK ROSS; PATTY CARNES; TEVA PHARMACEUTICALS USA, INC.; CEPHALON, INC.; JANSSEN PHARMACEUTICALS, INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC., n/k/a Janssen Pharmaceuticals, Inc.; JANSSEN PHARMACEUTICA, INC., n/k/a Janssen Pharmaceuticals, Inc.; JOHNSON & JOHNSON; ENDO HEALTH SOLUTIONS INC.; ENDO PHARMACEUTICALS, INC.; ALLERGAN plc; ACTAVIS plc; ACTAVIS, INC.; ACTAVIS, LLC; ACTAVIS PHARMA, INC.; WATSON PHARMACEUTICALS, INC.; WATSON PHARMA, INC.; WATSON LABORATORIES, INC.; MCKESSON CORPORATION; CARDINAL HEALTH, INC.; AMERISOURCEBERGEN DRUG CORPORATION; RITE AID OF MARYLAND, INC.; KROGER LIMITED PARTNERSHIP II; CVS INDIANA, L.L.C.; WAL-MART STORES EAST, LP; GOODWIN DRUG COMPANY; WEST VIRGINIA BOARD OF PHARMACY; DAVID POTTERS; EDITA P. MILAN, M.D.; TRESSIE MONTENE DUFFY, M.D.; EUGENIO ALDEA MENEZ, M.D.; SCOTT JAMES FEATHERS, D.P.M.; and AMY LYNN BEAVER, P.A.-C,
       *Defendants*.

1

## CERTIFICATE OF SERVICE

I, A. L. Emch, counsel for Defendant AmerisourceBergen Drug Corporation ("ABDC"), certify that copies of the foregoing *AmerisourceBergen Drug Corporation, Cardinal Health, Inc. and McKesson Corporation's Motion to Dismiss Plaintiffs' Complaint* and *Memorandum in Support of AmerisourceBergen Drug Corporation, Cardinal Health, Inc. and McKesson Corporation's Motion to Dismiss Plaintiffs' Complaint* were served on the following counsel of record, by first class mail, postage prepaid, on this the 24th day of April, 2018:

Robert P. Fitzsimmons, Esquire
Clayton J. Fitzsimmons, Esquire
Mark A. Colantonio, Esquire
FITZSIMMONS LAW FIRM LLC
1609 Warwood Avenue
Wheeling, WV 2 6003

Paul J. Napoli, Esquire
Hunter J. Shkolnik, Esquire
Salvatore C. Badala, Esquire
Joseph L. Ciaccio, Esquire
Shayna E. Sacks, Esquire
NAPOLI SHKOLNIK, PLLC
400 Broadhollow Road - Suite 350
Melville, NY 11747

Jonathan E. Turak, Esquire
GOLD, KHOUREY & TURAK
510 Tomlinson Avenue
Moundsville, WV 26041

Daniel J. Guida, Esquire
GUIDA LAW OFFICE
3374 Main Street
Weirton, WV 26062

Joseph F. Shaffer, Esquire
Samuel D. Madia, Esquire
SHAFFER MADIA LAW PLLC
343 West Main Street
Clarksburg WV 26301

Harry G. Shaffer III, Esquire
Todd A. Mount, Esquire
SHAFFER & SHAFFER
P.O. Box 38
Madison, WV 25130

Brian A. Glasser, Esquire
Steven R. Ruby, Esquire
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, WV 25301

Russell D. Jessee, Esquire
STEPTOE & JOHNSON PLLC
Chase Tower, 17th Floor
P.O. Box 1588
Charleston, WV 25326

Jeffrey M. Wakefield, Esquire
FLAHERTY SENSABAUGH
BONASSO PLLC
P.O. Box 3843
Charleston, WV 25338

Daniel C. Cooper, Esquire
Jamison H. Cooper, Esquire
COOPER LAW OFFICES, PLLC
240 Main West Street
Bridgeport, WV 26330

2

Webster J. Arceneaux, III, Esquire
LEWIS GLASSER PLLC
P.O. Box 1746
Charleston, WV  25326

Carte P. Goodwin, Esquire
Joseph M. Ward
FROST BROWN TODD LLC
500 Lee Street East, Suite 1100
Charleston, WV  25301-3207

Charles M. Pritchett, Jr.
Lori E. Hammond, Esquire
FROST BROWN TODD LLC
400 W. Market Street, Suite 3200
Louisville, KY 40202

Marc E. Williams, Esquire
Robert M. Sellerds, Esquire
Christopher D. Smith, Esquire
NELSON MULLINS RILEY
& SCARBOROUGH LLP
949 Third Avenue, Suite 200
Huntington, WV 25701

Mark Ross (pro se)
Trivillian's Pharmacy
215 35th Street, S.E.
Charleston, WV 25304

John L. MacCorkle, Esquire
MACCORKLE LAVENDER PLLC
300 Summers Street, Suite 800
Charleston, WV 25301

Justin Taylor, Esquire
BAILEY & WYANT PLLC
500 Virginia Street, East, Suite 600
Charleston, WV 25301

Ronda L. Harvey, Esquire
Gerard R. Stowers
BOWLES RICE LLP
600 Quarrier Street
Charleston, WV 25301

Neva G. Lusk
James S. Crockett Jr.
SPILMAN THOMAS & BATTLE PLLC
300 Kanawha Boulevard, East
P.O. Box 273
Charleston, WV 25321

Steven A. Luxton, Esquire
MORGAN LEWIS & BROCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004

Michael D. Crim, Esquire
MCNEER, HIGHLAND, MCMUNN
AND VARNER, L.C.
400 West Main Street - Empire Building
P.O. Drawer 2040
Clarksburg, WV 26302-2040

Brent A. Clyburn, Esquire
The Law Office of Brent A. Clyburn
604 6th Street
Moundsville, WV 26041

Heather M. Noel, Esquire
MACCORKLE LAVENDER PLLC
2004 White Willow Way
Morgantown, WV  26505

_____
A. L. EMCH