## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA

THE CITY OF HUNTINGTON,

       Plaintiff,

v.

AMERISOURCEBERGEN DRUG
CORPORATION, et al.,

       Defendants.

Civil Action No. 3:17-01362
Hon. David A. Faber

CABELL COUNTY COMMISSION,

       Plaintiff,

v.

AMERISOURCEBERGEN DRUG
CORPORATION, et al.,

       Defendants.

Civil Action No. 3:17-01665
Hon David A. Faber

## MEMORANDUM IN SUPPORT OF
## CARDINAL HEALTH'S MOTION FOR SUMMARY JUDGMENT:
## RES JUDICATA AND RELEASE OF CLAIMS

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ....................................................................................................... 1

STATEMENT OF THE CASE....................................................................................... 2

SUMMARY OF ARGUMENT ..................................................................................... 4

ARGUMENT ............................................................................................................. 6

I.       THE *RES JUDICATA* DOCTRINE BARS PLAINTIFFS' CLAIMS .............................. 6

II.      THE STATE RELEASED PLAINTIFFS' CLAIMS ..................................................... 14

CONCLUSION........................................................................................................... 16

CERTIFICATE OF SERVICE ...................................................................................... 18

## TABLE OF AUTHORITIES

### FEDERAL CASES

*E.P.A. v. City of Green Forest, Ark.*, 921 F.2d 1394 (8th Cir. 1990) ...........................12

*Envt'l Def. Fund, Inc. v. Higginson*, 631 F.2d 738 (D.C. Cir. 1979) ....................................10, 11

*Keith v. Aldridge*, 900 F.2d 736 (4th Cir. 1990) ........................................................6, 8

*Nash Cty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484 (4th Cir. 1981) ........................7, 12, 13, 15

*New Jersey v. New York*, 345 U.S. 369 (1953) ..............................................10

*South Carolina v. North Carolina*, 558 U.S. 256 (2010)..............................................10

*St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Ref., L.L.C.*, 500 F. Supp. 2d 592 (E.D. La. 2007), *opinion adhered to as modified on denial of reconsideration*, 2007 WL 3256463 (E.D. La. Nov. 5, 2007) ..........................................12

*State of West Virginia ex rel. McGraw v. Cardinal Health, Inc.*, No. 2:12-CV-03836 (S.D.W.Va. Oct. 1, 2012)..........................................13

*United States v. Olin Corp.*, 606 F. Supp. 1301 (N.D. Ala. 1985) ..........................................11, 12

### STATE CASES

*Beahm v. 7 Eleven, Inc.*, 223 W.Va. 269, 672 S.E.2d 598 (2008)....................................6, 8, 9, 10

*Blake v. Charleston Area Med. Ctr., Inc.*, 201 W.Va. 469, 498 S.E.2d 41 (1997)....................6, 8

*Calhoun Cty. Court v. Mathews*, 99 W.Va. 483, 129 S.E. 399 (1925)..........................................15

*Cater v. Taylor*, 120 W.Va. 93, 196 S.E. 558 (1938) ..............................................10

*Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 128 S.E.2d 626 (1962).....................14

*Gribben v. Kirk*, 195 W.Va. 488, 466 S.E.2d 147 (1995)..............................................9

*Herald v. Bd. of Educ.*, 65 W. Va. 765, 65 S.E. 102 (1909)..............................................15

*In re Certified Question*, 638 N.W.2d at 414..............................................15

*In re McIntosh's Estate*, 144 W.Va. 583, 109 S.E.2d 153 (1959) ..................................................7

*Rowe v. Grapevine Corp.*, 206 W.Va. 703, 527 S.E.2d 814 (1999) ..............................................6

*State ex rel. W. Va. Parkways Auth. v. Barr*, 228 W.Va. 27, 716 S.E.2d 689 (2011) ..................15

*State of West Virginia ex rel. McGraw v. Hon. David W. Hummel, Jr.*, No. 19-0210 (W. Va. May 13, 2019) ..........................................................................................................9

*State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995) ....................................................8

*W. Va. Human Rights Comm'n v. Esquire Grp., Inc.*, 217 W.Va. 454, 618 S.E.2d 463 (2005) ........................................................................................................................10

*West Virginia ex rel. McGraw v. Cardinal Health, Inc.*, No. 12-C-140 (W.Va. Cir. Ct. Boone Cnty. June 26, 2012) ............................................................................. *passim*

## OTHER AUTHORITIES

W. Va. Code § 60A-2-201(a) ...........................................................................................15

West Virginia Controlled Substances Act ...............................................................11, 15

West Virginia Rule of Civil Procedure 20 ........................................................................9

## INTRODUCTION

In 2012, the State of West Virginia, acting in its *parens patriae* capacity, sued Cardinal Health, Inc. ("Cardinal Health"), one of the nation's largest wholesale distributors of prescription medications, for causing the opioid epidemic in the state.  In reliance on public allegations made by the Drug Enforcement Agency ("DEA") against Cardinal Health, the State alleged that the company had supplied West Virginia pharmacies with opioid medications in such volumes that it should have known that the medications were not being prescribed and used for legitimate medical purposes.  The State also alleged that the company had failed to implement safeguards to flag excessive pharmacy orders and stop their shipment.  Four years later, in 2016, the State resolved that lawsuit on favorable terms and the state court dismissed it—in so doing, bringing an end to litigation based on those allegations.

Yet more than five years after the State sued Cardinal Health on behalf of all the State's citizens, seeking redress for the nuisance allegedly caused by the company's distribution of prescription opioids, City of Huntington and Cabell County ("Plaintiffs") filed lawsuits asserting the same claims against Cardinal Health.  The doctrine of *res judicata* precludes these lawsuits from moving forward, for Plaintiffs assert the same claims as did the State, and these Plaintiffs and the State share substantially similar interests.  The Release for which Cardinal Health bargained in settling the State's lawsuit separately bars Plaintiffs' claims, because they are merely derivative of the *parens patriae* claims brought by the State.

The *res judicata* doctrine reflects the importance the law places on finality.  Where it applies—as it does here—it is a threshold issue.  Just as a case should not proceed if the court lacks subject matter jurisdiction, so it should not advance one step forward if the same matter has been previously adjudicated before and resolved.  The *res judicata* doctrine bars the lawsuits brought by Plaintiffs because (1) the State's lawsuit was finally adjudicated on the merits,

(2) Plaintiffs assert the same claims made by the State in its 2012 lawsuit against Cardinal Health, and (3) Plaintiffs are in privity with the State.  Moreover, in releasing all claims it asserted or could have asserted in its *parens patriae* capacity, the State released Plaintiffs' claims.

## STATEMENT OF THE CASE

**The State's 2012 Lawsuit**.  On June 26, 2012, the State of West Virginia filed suit against Cardinal Health in Boone County alleging that the company failed to report suspicious orders to the West Virginia Board of Pharmacy and distributed excessive quantities of prescription opioids into the State between 2007 and 2012.[1]  The State alleged from the beginning that there is an "epidemic of prescription drug abuse" that has devastated communities across West Virginia, reduced the state's economic productivity, and imposed costs on the state's hospitals, schools, courts, social service agencies, jails, and prisons.  State Compl. ¶ 1.

Regarding Cardinal Health's responsibility for the epidemic, the State alleged that Cardinal, "[a]s a major distributor of controlled substances in West Virginia, … supplied controlled substances to rogue drugstores which dispense controlled substances based on bogus prescriptions from unethical physicians who are prescribing controlled substances for illegitimate medical purposes." *Id.* ¶ 13.  As a factual basis for this allegation, the State cited action taken by the Drug Enforcement Administration ("DEA") against Cardinal Health in Florida, where the DEA alleged that "Cardinal had not taken adequate safeguards to prevent prescription drugs which it distributed from being unlawfully diverted," *id.* ¶ 8, with the result that "Cardinal's

---

[1]   Complaint, *West Virginia ex rel. McGraw v. Cardinal Health, Inc.*, No. 12-C-140 (W.Va. Cir. Ct. Boone Cnty. June 26, 2012) ("State Compl.") (Ex. 1).  The Complaint was amended twice.  *See* Am. Compl., *West Virginia ex rel. Morrisey v. Cardinal Health, Inc.*, No. 12-C-140 (W.Va. Cir. Ct. Boone Cnty. Jan. 9, 2014) ("FAC") (Ex. 2); Second Amended Complaint, *West Virginia ex rel. Morrisey v. Cardinal Health, Inc.*, No. 12-C-140 (W.Va. Cir. Ct. Boone Cnty. Aug. 11, 2015) ("SAC") (Ex. 3).

'staggeringly high' volumes of pills sent to various dispensers [in Florida] posed 'an imminent danger to public health or safety,'" *id*. ¶ 9.

The State in 2012 did not allege what volume of prescription opioids Cardinal Health had supplied to pharmacies in West Virginia, nor what volume all distributors had supplied collectively, and it identified only one pharmacy in the state (a Cardinal Health customer in 1995–96) that placed suspicious orders (in 2006).  But the State did allege that "Cardinal's actions or inactions in Florida are consistent with Cardinal's conduct in West Virginia," *id*. ¶ 13; that the company "was on notice that an epidemic from prescription drug abuse existed" in West Virginia, *id*. ¶ 43; and that the company "persistently engaged in a pattern of distributing controlled substances … in such quantities and with such frequency that [it] knew or should have known that these substances were not being prescribed and consumed for legitimate medical purposes," *id*. ¶ 45.  Based on these factual allegations, the State asserted causes of action for public nuisance (and more).

In January 2017, the State settled its lawsuit against Cardinal Health and executed a Settlement Agreement and Release on behalf of "each and every" State agency, department, and instrumentality, including "any agency, person, or other entity claiming by or through them or any of them."[2]  That same day the Circuit Court of Boone County entered an order dismissing the State's claims against Cardinal Health with prejudice.[3]

The Settlement Agreement and Release defined "Released Claims" as including "any and all claims …, known and unknown, … which the State has asserted or could have asserted on its own behalf or in its *parens patriae* capacity … against the Released Entities or any of them

---

[2]   *See* Settlement Agreement and Release ("Release") at 1 (Jan. 10, 2017) (Ex. 4).

[3]   *See* Order of Dismissal with Prejudice, *West Virginia ex rel. Morrisey v. Cardinal Health, Inc.*, No. 12-C-140 (W.Va. Cir. Ct. Boone Cty. Jan. 9, 2017) (Ex. 5).

growing out of, relating to, or concerning the Litigation now pending before the Circuit Court of Boone County, West Virginia," as well as "claims relating to any act, conduct, error, or omission in distributing controlled substances in West Virginia ...."[4]  The Settlement Agreement and Release further recited that the litigation was brought "pursuant to the State's *parens patriae* authority to recover damages allegedly suffered by the State."[5]

**Plaintiffs' Lawsuits**.  In January 2017, City of Huntington filed this action against Cardinal Health (and others).  Cabell County followed suit in March 2017.  Plaintiffs' complaints make the ***same*** allegations as did the State—that Cardinal Health was on notice of an epidemic of prescription opioid abuse in the city and county, but nevertheless continued to supply the drugs to pharmacies in such quantities that it should have known they were being prescribed and/or used without a legitimate medical purpose.[6]  Based on these allegations, Plaintiffs' complaints assert the ***same*** claim for public nuisance.[7]  And Plaintiffs' complaints seek the ***same*** relief—equitable relief as well as the recovery of past and future public expenditures made on behalf of residents addicted to opioids and as a result of the impact of addiction on their communities.[8]

## SUMMARY OF ARGUMENT

The State of West Virginia has been in the legal vanguard in seeking to protect its citizens from the scourge of prescription opioid abuse.  In 2001, before any other state had taken

---

[4]   Release at 5.

[5]   *Id.* at 2.

[6]   *See, e.g.*, *Cabell County Commission, et al. v. Purdue Pharma L.P., et al.*, Case No. 1-17-op-45053-DAP (Doc. 193, Sep. 12, 2019) Corrected Joint and Third Amended Complaint ("Compl.") ¶¶ 323, 822–860  (Ex. 6).

[7]   Compl. ¶¶ 308–310, 323, 822–860, 1401–1450.

[8]   Compl. ¶¶ 13, 1450.  The Counties also seek relief to abate the alleged nuisance.  *Id.* ¶¶ 13, 40.

action, West Virginia sued Purdue Pharma, the manufacturer of OxyContin, alleging that Purdue had deceptively marketed the drug, encouraged its over-prescription by doctors, and created an epidemic of addiction.  The State settled that lawsuit in 2004.  In 2012, again taking the lead nationwide, West Virginia sued Cardinal Health and 13 other wholesale distributors, alleging that they should have flagged and stopped shipment of the large pharmacy orders that were the result of doctors' over-prescription.  The State settled its lawsuit against Cardinal Health in 2016.

In suing, the State acted promptly to protect the citizens of West Virginia.  In settling, the State recovered substantial resources for the benefit of its citizens.  In both suing and settling, the State acted for all the citizens of West Virginia.  It did so in its sovereign capacity as the governmental embodiment of the people's will.  But the State acted even more directly on behalf of its citizens by suing in its *parens patriae* capacity, stepping into their shoes and suing and settling for each and every one of them, as if they had each sued individually.

The State's potential damages were greater because it sued in its *parens patriae* capacity. At the same time, settlement of the State's lawsuit promised greater finality to Cardinal Health because it was brought in the State's *parens patriae* capacity.  When Cardinal Health settled with the State in 2016 rather than engage in protracted litigation, it reasonably expected that the settlement would resolve once and for all any claims that it had "flooded" West Virginia with opioid medications.  Cardinal Health had that reasonable expectation because it was settling ***both*** the State's own claims and those of every citizen.  And Cardinal Health bargained to ensure that its reasonable expectation was made explicit in the settlement agreement, such that the State released "any and all claims …, known and unknown, … which the State has asserted or could have asserted on its own behalf or in its *parens patriae* capacity … against the Released Entities

[Cardinal Health] or any of them growing out of, relating to, or concerning the Litigation now pending ….."[9]

Plaintiffs' lawsuit satisfy the three criteria for application of the *res judicata* doctrine: (1) the settlement and the accompanying dismissal with prejudice was a final adjudication on the merits; (2) Plaintiffs assert identical causes of action (for public nuisance and more); and (3) Plaintiffs share substantially similar interests with the State, because their alleged injuries (increased addiction-related public expenditures) all derive from the personal injuries (i.e., addiction) of Plaintiffs' residents, whose claims the State settled in its *parens patriae* capacity.

The *res judicata* doctrine and the State's release of its *parens patriae* claims each operate to stop duplicative litigation from moving forward and to conserve judicial and party resources.

## ARGUMENT

## I.    THE *RES JUDICATA* DOCTRINE BARS PLAINTIFFS' CLAIMS

The *res judicata* doctrine applies when:  (1) there was a final judgment on the merits in the first lawsuit, (2) the current lawsuit asserts claims identical to those in the first lawsuit, or claims that could have been resolved in that action, had they been presented, and (3) the current lawsuit involves the same parties or persons in privity with those parties.  Syl. pt. 3, *Beahm v. 7 Eleven, Inc.*, 223 W.Va. 269, 672 S.E.2d 598 (2008) (per curiam); Syl. pt. 4, *Blake v. Charleston Area Med. Ctr., Inc.*, 201 W.Va. 469, 498 S.E.2d 41 (1997).  This case satisfies all three conditions.

**Final adjudication**.  There can be no dispute that there was a final adjudication of the State's lawsuit.  The Boone County Circuit Court dismissed the State's case with prejudice upon its settlement.  An order dismissing a case with prejudice pursuant to settlement is "a final judgment on the merits for res judicata purposes."  *Keith v. Aldridge*, 900 F.2d 736, 742 (4th Cir.

---

[9]    Release at 5.

6

1990); *accord Rowe v. Grapevine Corp.*, 206 W.Va. 703, 714, 527 S.E.2d 814, 825 (1999) ("It is well-settled that resolution of an action based on a consent decree is a final judgment on the merits for purposes of *res judicata*."); *In re McIntosh's Estate*, 144 W.Va. 583, 590–91, 109 S.E.2d 153, 157–58 (1959); *Nash Cty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486–87 (4th Cir. 1981) (consent decree of judgment supports the final judgment requirement for *res judicata*).

**The claims**.  The claims asserted by Plaintiffs in this case are "virtually identical" to those asserted by the State in three respects.  *Beahm*, 223 W.Va. at 275, 672 S.E.2d at 604–05. In *Beahm*, where the plaintiffs in the second-filed lawsuit complained about the same groundwater contamination as did the plaintiffs in the first-filed suit, the Supreme Court of Appeals readily concluded that the claims in both lawsuits "are virtually identical" because (1) the identical four causes of action were asserted in both cases; (2) the prayer for relief was "almost identical"; and (3) all claims (including two added in the second lawsuit) "could have been resolved in the [first] action, had they been raised," as "they arose out of the same core of operative facts as all of the other claims."  *Id*.

The same is true here.  The State's complaint contained a count for public nuisance, and so do Plaintiffs' complaints.[10]  Even apart from this correspondence, the State's lawsuit and Plaintiffs' lawsuits are "virtually identical" because the nuisance claims in both "arose of the same core of operative facts," *id*.—in great part, Cardinal Health's alleged failure to report and stop shipment of excessive amounts of opioid medications to West Virginia pharmacies.  Also as in *Beahm*, the State's and Plaintiffs' prayers for relief are substantially the same.  The State sought both equitable relief and compensatory damages for the costs incurred in addressing the

---

[10]    *Compare* State Compl. ¶¶ 14–31, 42–48, 54–63, *with* Compl. ¶¶ 1401–1450.  The State's complaint and Plaintiffs' complaints also allege other causes of action in common, but, as Plaintiffs have withdrawn all their claims other than public nuisance, those other commonalities are irrelevant for purposes of this motion.

opioid epidemic (trebled), while Plaintiffs ask for "money damages for the 'elimination of hazards to public health and safety and to abate or cause to be abated … a public nuisance,'"[11] plus punitive damages.

In *Beahm*, the Supreme Court said ***three*** times that the test for *res judicata* is satisfied where the claims in the second lawsuit are identical or (1) "could have been decided in the earlier action," (2) "could have been resolved, had [they] been presented, in the prior action," and (3) "could have been resolved in the [first] action, had they been raised."  *Beahm*, 223 W.Va. at 272–73, 672 S.E.2d at 601–02 (quoting *State v. Miller*, 194 W.Va. 3, 9, 459 S.E.2d 114, 120 (1995); *id.* at 273, 672 S.E.2d at 602 (quoting *Blake v. Charleston Area Med. Ctr., Inc.*, 201 W.Va. 469, 498 S.E.2d 41, 49); *id.* at 275, 672 S.E.2d at 604.  Claims could have been raised and resolved in the first lawsuit, the Supreme Court explained, if they arise out of the same core of operative facts.  *Id.* at 276, 672 S.E.2d at 605; *see Keith*, 900 F.2d at 740 ("[W]e have adopted a transactional approach to the identity of claims question—'the appropriate inquiry is whether the new claim arises out of [the] same transaction or series of transactions as the claim resolved by the prior judgment.'").

This case meets that test because the claims Plaintiffs assert based on pre-2012 conduct unmistakably rest on the same facts alleged by the State in 2012.  Both the State and Plaintiffs allege that Cardinal Health (1) supplied such large quantities of opioid medications in the State that it should have known that the drugs were being diverted to improper use and (2) failed to monitor and report to the State the suspicious pharmacy orders that accounted for those large quantities.[12]  Plaintiffs will therefore rely on the same evidence as did the State in the prior case.

---

[11]  Plaintiffs Cabell County Commission and City of Huntington's Motion to Sever, Case No. 1:17-md-02804-DAP (Doc. 2989, Dec. 13, 2019) at 2 ("Motion to Sever") (Ex. 7).

[12]  State Compl. ¶¶ 1, 19, 28–29, 45–46; Compl. ¶¶ 323, 822–860.

Nothing prevented Plaintiffs from presenting their claims in 2012, as part of the State's lawsuit. Indeed, West Virginia Rule of Civil Procedure 20 authorizes parties to join an action if they have claims arising out of "the same … series of transactions."  W.Va. R. Civ. P. 20.  And had they done so, it would have conserved judicial and county resources.

Other plaintiff-counties have argued that their claims were not the same as the State's because the Attorney General could not seek recovery for the counties' damages.[13]  But the Supreme Court rejected that reasoning in *Beahm*.  The plaintiffs in the second lawsuit argued that their claims were not the same "because the properties' damages in the two cases are different"—an argument the Court rejected outright as "disingenuous."  223 W.Va. at 275, 672 S.E.2d at 604.  Any argument based on a difference in remedy has even less force here, because the relief sought by the State subsumed that sought by Plaintiffs.  Plaintiffs admittedly seek "money damages" for abatement of the alleged nuisance, as did the State.[14]  There can be only one alleged nuisance in Cabell County, and the State has already sued to abate it, and settled.[15]

**Privity**.  Plaintiffs are in privity with the State because their interests are substantially the same.  "[T]he privity concept is fairly elastic under West Virginia law."  *Gribben v. Kirk*, 195 W.Va. 488, 498 n.21, 466 S.E.2d 147, 157 n.21 (1995).  Accordingly, the law is that "[a] plaintiff cannot … escape the application of *res judicata* … simply because [it] was not formally joined as a party in the prior litigation."  *Beahm*, 223 W.Va. at 273, 672 S.E.2d at 602.  The law looks to

---

[13]   *See* Resp. in Opp'n to Pet. for Writ of Prohibition at 12–15, 19–21, *State of West Virginia ex rel. Amerisourcebergen Drug Corp. et al. v. Hon. David W. Hummel, Jr.*, No. 19-0204 (W. Va. May 13, 2019) (Ex. 8).

[14]   *See* Motion to Sever at 2; *compare* State Compl. ¶¶ 47–48, *with* Compl. ¶¶ 13, 1450.

[15]   The Counties argued below that the State lacked authority to abate nuisances affecting public health, but the Boone County Circuit Court recognized the State's authority to abate such a nuisance in its order denying Cardinal Health's motion to dismiss.  Order Denying Motion to Dismiss, *State of West Virginia ex rel. McGraw v. Cardinal Health, Inc.*, No. 12-C-140 (W.Va. Cir. Ct. Boone Cty. Apr. 17, 2015) ("State Order") (Ex. 9).

the relationship of the parties allegedly in privity and asks whether they have a "mutual …

relationship to the same rights of property," *id.* (quoting *W. Va. Human Rights Comm'n v.*

*Esquire Grp., Inc.*, 217 W.Va. 454, 460, 618 S.E.2d 463, 469 (2005) (per curiam) (quoting *Cater*

*v. Taylor*, 120 W.Va. 93, 196 S.E. 558, 558 (1938))), or whether they share the same legal right,

such that "the interests of the party again[st] whom [the] preclusion is asserted have been

adequately represented," *id.* (quoting *W. Va. Human Rights Comm'n*, 217 W.Va. at 460–61, 618

S.E.2d at 470).  The Supreme Court of Appeals has captured these related concepts in the

doctrine of "virtual representation," which bars re-litigation of a claim "that has once been

adequately tried by a person sharing a substantial identity of interests with a nonparty."  *Id.* at

274, 672 S.E.2d at 603 (internal quotation marks and citation omitted).

When a state sues as *parens patriae*, as the West Virginia Attorney General did in 2012,

there is a ***presumption*** that the state adequately represents the political subdivisions within its

borders.  *See South Carolina v. North Carolina*, 558 U.S. 256, 275 (2010) (given "North

Carolina's role as *parens patriae*, … we see no reason that North Carolina cannot represent

Charlotte's interest"); *Envt'l Def. Fund, Inc. v. Higginson*, 631 F.2d 738, 739–40 (D.C. Cir.

1979) (state acting as *parens patriae* "is presumed to represent the interests" of "all … creatures"

within its borders; it matters not whether the creature "is a subdivision or citizen").  The flip side

of that presumption is that political subdivisions that seek to maintain a separate cause of action

has the burden of showing "some compelling interest in [its] own right, apart from [its] interest

in a class with all other citizens and creatures of the state, which interest is not properly

represented by the state."  *New Jersey v. New York*, 345 U.S. 369, 374 (1953); *accord South*

*Carolina*, 558 U.S. at 274–75 (municipality must show "a compelling interest in [its] own right,

distinct from the collective interest of all other citizens and creatures of the state"); *Envt'l Def.*

*Fund*, 631 F.2d at 739 ("the sub-state entity … [must] offer[] a compelling reason or circumstance in which they differ[] from the positions adopted by the state[]").

Plaintiffs cannot overcome this presumption.  The State's suit was brought (and settled) in its *parens patriae* capacity, on behalf of all the residents of West Virginia.[16]  Had the State tried its case against Cardinal Health rather than settling, it would have sought to prove—for most, if not all, counties in the state—that Cardinal Health failed to report suspicious pharmacy orders and shipped excessive amounts of prescription opioids.  It is hard to conceive how the State's proof of Cardinal Health's liability for its shipments to Huntington and Cabell County would have been any different from the proof Plaintiffs would offer in these cases, were they to proceed.  That is, Plaintiffs' cases are merely a subset of the State's 2012 case (one county and county seat out of 55 counties).  Moreover, far from asserting an interest separate from the State, Plaintiffs put themselves in privity with the State by grounding their claims, including nuisance,[17] on violations of a state statute (the West Virginia Controlled Substances Act).

Finally, "[t]he weight of authority indicates that once a state represents all of its citizens in a *parens patriae* suit, a consent decree or final judgment entered in such a suit is conclusive upon those citizens and is binding upon their rights."  *United States v. Olin Corp.*, 606 F. Supp. 1301, 1304, 1308 (N.D. Ala. 1985) (*res judicata* barred suit by group of Alabama citizens where the United States and Alabama had previously sued and settled the same claims with defendant;

---

[16]  This means, in part, that the State stood in the shoes of each Huntington and Cabell County citizen, asserting claims that are ***derivative*** of each citizens' claims for opioid-related injury.  That is, the State did not suffer direct injury from anything Cardinal Health did or did not do; rather, both the State and Plaintiffs allegedly incurred (and will incur) additional costs because their citizens became addicted and imposed a burden on the public purse.  Had there been no epidemic of addiction, the State and Plaintiffs would not have incurred the increased, addiction-related costs the State sought (and Plaintiffs seek) as future damages.  The State and Plaintiffs thus share a substantial identity of interests, because their costs ***derive*** from ***the same persons***.

[17]  Compl. ¶ 1420.

11

the United States and Alabama had "su[ed] in a *parens patriae* capacity as a representative of all of its citizens" because they had sued "to eliminate the alleged public nuisance created by the presence of DDT pollution which was alleged to have caused injury to the wildlife, natural resources, health and welfare of Alabama residents in the subject area").[18]

In a case that resembles this one, the Fourth Circuit applied the virtual representation doctrine to bar a North Carolina school district from pursuing the same claims previously litigated by the North Carolina Attorney General. *Nash Cty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484 (4th Cir. 1981). In *Nash*, the Attorney General brought and settled a suit against nine dairy companies alleging that they acted in restraint of trade in the sale of milk products to North Carolina public school systems. The Nash County Board of Education later brought a lawsuit alleging the same antitrust conspiracy under federal rather than state law. The district court granted summary judgment to the defendants on *res judicata* grounds, and the Court of Appeals affirmed. The court readily found the first two requirements met, *id.* at 488,[19] and, regarding the privity requirement, held that "we have no difficulty in finding the appellant School District in privity with the Attorney General, in instituting the earlier state court proceeding," *id.* at 494. The Attorney General had common law authority to sue as a representative of the State or any of its

---

18   *See also E.P.A. v. City of Green Forest, Ark.*, 921 F.2d 1394, 1403–05 (8th Cir. 1990) (*res judicata* barred a private enforcement action where E.P.A. had concluded by consent decree a government enforcement action involving the same subject matter); *St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Ref., L.L.C.*, 500 F. Supp. 2d 592, 604 (E.D. La. 2007) ("When either a state or federal government asserts *parens patriae* authority, courts have held that 'it can bind the citizens of a state as privies for *res judicata* purposes.'" (quoting *N.Y.C. v. Beretta USA*, 315 F. Supp. 2d 256, 265 (E.D.N.Y. 2004))), *opinion adhered to as modified on denial of reconsideration*, 2007 WL 3256463 (E.D. La. Nov. 5, 2007). That result follows from the principle that "[i]n a proper *parens patriae* action, a state is deemed to represent all of its citizens." *Olin Corp.*, 606 F. Supp. 2d at 1305.

19   The court also held that "[u]nder established precedent, the identity of two actions, as intimately tied together as these two, will not be destroyed in the res judicata context simply because the two suits are based on different statutes." *Nash*, 640 F.2d at 488.

political subdivisions, and he had sought to recover overpayments for dairy products where the money came in part "from the coffers of state government and the state itself had a direct stake in the litigation." *Id.* at 495.  In *Nash*, the North Carolina Attorney General declared that he was suing on behalf of each public school system.  The West Virginia Attorney General did not purport to sue Cardinal Health on behalf of West Virginia counties and cities, but he did sue in the State's *parens patriae* capacity on behalf of the State's residents.[20]

For purposes of the *res judicata* doctrine, that fact establishes even more clearly that the State acted as Plaintiffs' virtual representative.  The State expressly asserted its *parens patriae* authority;[21] the Boone County Circuit Court acknowledged it;[22] and the parties recited it in the Settlement Agreement and Release that served as the basis for the circuit court's dismissal of the case with prejudice.  The State released all claims "the State has asserted or could have asserted on its own behalf or in its *parens patriae* capacity …."  Release at 5.  In addition, there was a substantial identity of interests between the State and Plaintiffs because their claims arose out of the same core of operative facts—Cardinal Health's alleged conduct in shipping opioids into Huntington and Cabell County.

---

[20]  Notably, the Fourth Circuit in *Nash* did not find, and did not say that it was important to know, that the Attorney General had recovered the monies paid by the school districts as damages or had shared any part of the State's recovery with the school districts.  The requisite "unity of interest" existed because both the State and the school district had overpaid as a result of the defendants' conduct, and the Attorney General sued for damages. *Id.*  ("We cannot imagine a factual setting more clearly demonstrative of the requisite unity [of] interest in both suits.").

[21]  Plaintiff's Reply Memorandum in Support of Motion to Remand and for Costs, *State of West Virginia ex rel. McGraw v. Cardinal Health, Inc.*, No. 2:12-CV-03836, at 3 (S.D.W.Va. Oct. 1, 2012) (Ex. 10).

[22]  *See* State Order ¶¶ 28–34.

## II.    THE STATE RELEASED PLAINTIFFS' CLAIMS

The State released all claims "which [it] has asserted or could have asserted on its own behalf *or in its parens patriae capacity* that the State now has or may have in the future against [Cardinal Health] growing out of, relating to, or concerning" the State's lawsuit.  Release at 5 (emphasis added).  It did so for "each and every" State agency, department and instrumentality, including "any agency, person, *or other entity claiming by or through them or any of them*." *Id*. at 1 (emphasis added).  This plain language operates to release Plaintiffs' claims in two ways.[23]

First, the Release bars Plaintiffs' nuisance claim because that claim is one that not only could have been asserted by the State but was asserted.  The State's nuisance claim, brought in the State's *parens patriae* capacity, addressed alleged harm to the "public health and safety" of the "citizens of the State," State Compl. ¶ 46—language that mirrors Plaintiffs' nuisance claim, which alleges that Defendants' conduct "unreasonably interfere[d] with the public health, welfare, and safety in Plaintiffs' Community," Compl. ¶ 1405.  Thus, acting in its *parens patriae* capacity, the State did assert a nuisance claim on behalf of Plaintiffs. But even it hadn't do so, it could have.

Second, the State's release of claims "growing out of, relating to, or concerning" its lawsuit by "any … entity claiming by or through" any State agency encompasses Plaintiffs' nuisance claim.  That claim rests on the assertion that Cardinal Health failed to report "suspicious" pharmacy orders to the Board of Pharmacy in violation of the West Virginia Controlled Substances Act and thereby "flooded" Huntington and Cabell County with prescription opioids.

---

[23]    *See Cotiga Dev. Co. v. United Fuel Gas Co.*, 147 W. Va. 484, 490, 128 S.E.2d 626, 631 (1962) ("When the language of a written instrument is plain and free from ambiguity, a court must give effect to the intent of the parties as expressed in the language employed and in such circumstances resort may not be had to rules of construction.").

By basing their nuisance claim, at least in part, on the West Virginia Controlled Substances Act, Plaintiffs are purporting to act "by and through" state authority.  The State was authorized to release such claims, because (i) the Attorney General has common-law authority to represent not only citizens, but also political subdivisions of the State,[24] and (ii) municipalities and counties are "mere creature[s] of the sovereign [and] [b]eing a creature, [have] only such rights as were granted by its creator."[25]  Moreover, the legislature vested the Board of Pharmacy with exclusive authority to enforce the Act.  To the extent Plaintiffs sue to enforce the Act, they are acting in aid of the Board of Pharmacy and necessarily "through" it, as the Board alone has authority to "administer the provisions of this chapter."[26]

Thus, the State released the claims asserted by Plaintiffs here—both by releasing all *parens patriae* claims that it brought or could have brought and by releasing all claims brought "by and through" state law.

---

[24]  *See, e.g.*, *Nash Cty.*, 640 F.2d at 496 ("The Attorney General as legal representative of the sovereign and its constitutional subdivisions has both common law and statutory power to bind the State and the subdivisions by his acts."); *In re Certified Question*, 638 N.W.2d at 414 ("Because the Attorney General possesses the authority to sue on behalf of the state in matters of state interest, it follows that the Attorney General necessarily has the authority to sue on behalf of the state's political subdivisions in matters of state interest.").

[25]  *Calhoun Cty. Court v. Mathews*, 99 W.Va. 483, 129 S.E. 399, 401 (1925); *see also State ex rel. W. Va. Parkways Auth. v. Barr*, 228 W.Va. 27, 33, 716 S.E.2d 689, 694 (2011) ("The county [commission] is a corporation created by statute, and … can do only such things as are authorized by law, and in the mode prescribed."); *Herald v. Bd. of Educ.*, 65 W. Va. 765, 65 S.E. 102, 104 (1909) ("counties … are involuntary political or civil divisions of the state, created by general laws to aid in the administration of government").

[26]  W. Va. Code § 60A-2-201(a); *see* Cardinal Health, Inc.'s Motion to Dismiss and Memorandum in Support (Apr. 24, 2018) (Ex. 11) at 15.

## CONCLUSION

The State acted in a timely fashion to protect the interests of all the citizens of West Virginia.  These lawsuits seek to revisit claims that have been finally adjudicated and released. Accordingly, the Court should grant summary judgment.

Respectfully submitted,

**CARDINAL HEALTH, INC.**

/s/ David R. Pogue
Michael W. Carey (WVSB #635)
David R. Pogue (WVSB #10806)
mwcarey@csdlawfirm.com
drpogue@csdlawfirm.com
CAREY, SCOTT, DOUGLAS & KESSLER, PLLC
901 Chase Tower
707 Virginia, East
Charleston, West Virginia 25301
Phone: (304) 345-1234
Fax:    (304) 342-1102
*Counsel for Cardinal Health, Inc., in City of Huntington action*

/s/ Steven R. Ruby
Brian A. Glasser (WVSB #6597)
bglasser@baileyglasser.com
Steven R. Ruby (WVSB #10752)
sruby@baileyglasser.com
BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
*Counsel for Cardinal Health, Inc., in Cabell County action*

Enu Mainigi
emainigi@wc.com
F. Lane Heard III
lheard@wc.com
Ashley W. Hardin
ahardin@wc.com
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
*Counsel for Cardinal Health, Inc.*

## CERTIFICATE OF SERVICE

I, David R. Pogue, counsel for Defendant Cardinal Health, do hereby certify that service of the foregoing **MEMORANDUM IN SUPPORT OF CARDINAL HEALTH'S MOTION FOR SUMMARY JUDGMENT: RES JUDICATA AND RELEASE OF CLAIMS** was filed electronically via the CM/ECF electronic filing system and served on all counsel registered in the system.

Dated:   March 13, 2020

/s/ David R. Pogue
David R. Pogue

18