**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**THE CITY OF HUNTINGTON,**

      **Plaintiff,**

**v.**

**AMERISOURCEBERGEN DRUG
CORPORATION, et al.,**

      **Defendants.**

_____

**CABELL COUNTY COMMISSION,**

      **Plaintiff,**

**v.**

**AMERISOURCEBERGEN DRUG
CORPORATION, et al.,**

      **Defendants.**

_____

**CIVIL ACTION NO. 3:17-01362**

**CIVIL ACTION NO. 3:17-01665**

**MEMORANDUM OF LAW IN SUPPORT OF MCKESSON CORPORATION'S MOTION TO
DISMISS OR FOR SUMMARY JUDGMENT ON *RES JUDICATA*
AND RELEASE GROUNDS**

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 1

APPLICABLE LAW ....................................................................................................... 4

ARGUMENT ................................................................................................................. 5

I.      THE COUNTY AND CITY'S CLAIM IS BARRED BY *RES JUDICATA*............................ 5

      A.     There Was a Final Adjudication on the Merits. .................................................. 5

      B.     The County and City Are in Privity with the State. ............................................. 5

      C.     The State's Suit and the Current Suit Rely on the Same Alleged Facts............. 10

            1.     The Causes of Action Are Identical........................................................ 10

            2.     The County and City's Claim Could Have Been Resolved, Had It Been Presented, in the State's Suit. ........................................................ 11

II.     THE STATE RELEASED THE COUNTY AND CITY'S CLAIM. .................................... 12

      A.     The Settlement Agreement Requires Dismissal of the County and City's Successive Suit. ............................................................................................. 12

      B.     The Attorney General Is Authorized to Represent and Settle the Claims of Its Counties, Municipalities, and Residents. ..................................................... 15

CONCLUSION .............................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alaska Sport Fishing Ass'n v. Exxon Corp.*,
    34 F.3d 769 (9th Cir. 1994) (per curiam) .......................................................9, 17

*Am. Contractors Indem. Co. v. Carolina Realty & Dev. Co.*,
    2012 WL 2711802 (D.S.C. July 9, 2012) ............................................................13

*Badgley v. City of New York*,
    606 F.2d 358 (2d Cir. 1979) ...........................................................................9, 10

*Beahm v. 7–Eleven, Inc.*,
    223 W.Va. 269, 672 S.E.2d 598 (2008) ................................................... *passim*

*Calhoun Cty. Court v. Mathews*,
    99 W.Va. 483, 129 S.E. 399 (1925) ................................................................8, 16

*Celtic Marine Corp. v. James C. Justice Cos.*,
    760 F.3d 477 (5th Cir. 2014) ...............................................................................14

*In re Certified Question from U.S. Dist. Court for E. Dist. of Mich.*,
    638 N.W.2d 409 (Mich. 2002) ..................................................................7, 16, 18

*In re Circuit City Stores, Inc.*,
    591 B.R. 289 (Bankr. E.D. Va. 2018) ...................................................................14

*City of New Orleans v. BellSouth Telecomms., Inc.*,
    690 F.3d 312 (5th Cir. 2012) .........................................................................14, 15

*City of Tacoma v. Taxpayers of Tacoma*,
    357 U.S. 320 (1958) ...............................................................................................9

*Cmty. Commc'ns Co. v. City of Boulder*,
    455 U.S. 40 (1982) ...............................................................................................17

*County of Boyd v. US Ecology, Inc.*,
    48 F.3d 359 (8th Cir. 1995) .........................................................................7, 9, 12

*Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc.*,
    239 W.Va. 549, S.E.2d 519 (2017) ......................................................... *passim*

*Davis v. Cincinnati Metro. Hous. Auth., Inc.*,
    2013 WL 5876051 (S.D. Ohio Oct. 30, 2013) ....................................................14

*State ex rel. Discover Fin. Servs., Inc. v. Nibert*,
    231 W.Va. 227, 744 S.E.2d 625 (2013) ..............................................................16

*Envtl. Def. Fund, Inc. v. Higginson*,
   631 F.2d 738 (D.C. Cir. 1979) ...................................................................6, 7, 8

*Gribben v. Kirk*,
   195 W.Va. 488, 466 S.E.2d 147 (1995) ...................................................6, 8

*Hart Steel Co. v. R.R. Supply Co.*,
   244 U.S. 294 (1917) ...................................................................................5

*Herald v. Bd. of Educ.*,
   65 W.Va. 765, 65 S.E. 102 (1909) ...........................................................17

*Ins. Prod. Mktg., Inc. v. Conseco Life Ins. Co.*,
   2012 WL 3308368 (D.S.C. Aug. 13, 2012) ..............................................14

*Keith v. Aldridge*,
   900 F.2d 736 (4th Cir. 1990) .........................................................5, 13, 15

*McCallister v. Nelson*,
   186 W.Va. 131, 411 S.E. 456 (1991) ....................................................9, 17

*In re McIntosh's Estate*,
   144 W.Va. 583, 109 S.E.2d 153 (1959) .....................................................5

*State ex rel. Morrisey v. AmerisourceBergen Drug Corp.*,
   2014 WL 12814021 (Boone Cty. Cir. Ct. Dec. 12, 2014) ..........................16

*State ex. rel. Morrisey v. McKesson Corp.*,
   No. 16-C-1 (W. Va. Cir. Ct. Boone Cty. Jan. 8, 2016)..............................1, 4

*State ex rel. Morrisey v. W. Va. Office of Disciplinary Counsel*,
   234 W.Va. 238, 765 S.E.2d 769 (2014) ...................................................16

*Nash Cty. Bd. of Educ. v. Biltmore Co.*,
   640 F.2d 484 (4th Cir. 1981) ............................................................ *passim*

*New Jersey v. New York*,
   345 U.S. 369 (1953).....................................................................................7

*Nottingham Partners v. Trans-Lux Corp.*,
   925 F.2d 29 (1st Cir. 1991)......................................................................4, 15

*Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*,
   111 F.3d 1386 (8th Cir. 1997) ..................................................................14

*Perrine v. E.I. du Pont de Nemours & Co.*,
   225 W.Va. 482 (2010) ...............................................................................13

*Pocahontas Land Corp. v. Evans*,
   175 W.Va. 304, 332 S.E.2d 604 (1985) ...................................................13

*Richardson v. Church of God Int'l*,
  2014 WL 4202619 (S.D.W. Va. Aug. 22, 2014) ..................................................................11

*Rowe v. Grapevine Corp.*,
  206 W.Va. 703, 527 S.E.2d 814 (1999) ................................................................5, 6, 11, 15

*Soltis v. J.C. Penney Corp.*,
  635 F. App'x 245 (6th Cir. 2015) .......................................................................................14

*South Carolina v. North Carolina*,
  558 U.S. 256 (2010) ...................................................................................................6, 7, 8

*St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Ref., L.L.C.*,
  500 F. Supp. 2d 592 (E.D. La. 2007) ..................................................................................9

*State v. City of Dover*,
  891 A.2d 524 (N.H. 2006) ...................................................................................7, 8, 13, 18

*State v. Miller*,
  194 W.Va. 3, 459 S.E.2d 114 (1995) ...................................................................................6

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) ...........................................................................................................9

*Tromp v. City of New York*,
  465 F. App'x 50 (2d Cir. 2012) ..........................................................................................14

*United States v. Kagama*,
  118 U.S. 375 (1886) ..........................................................................................................17

*United States v. Olin Corp.*,
  606 F. Supp. 1301 (N.D. Ala. 1985) ...............................................................................9, 15

*State ex rel. W. Va. Parkways Auth. v. Barr*,
  228 W.Va. 27, 716 S.E.2d 689 (2011) ................................................................................16

*Washington v. Wash. State Commercial Passenger Fishing Vessel Ass'n*,
  443 U.S. 658 (1979) ...........................................................................................................9

*Wisconsin Pub. Intervenor v. Mortier*,
  501 U.S. 597 (1991) ..........................................................................................................17

**Statutes**

W. Va. Code § 60A-2-201(a) ...............................................................................................10

West Virginia Consumer Credit and Protection Act ...............................................................2

West Virginia Uniform Controlled Substances Act .......................................................... *passim*

**Other Authorities**

18A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
§ 4458 (3d ed. Aug. 2019 update) ........................................................................18

W. Va. R. Civ. P. 20(a) ..........................................................................................13

**INTRODUCTION**

The West Virginia Attorney General, acting on behalf of "all of the citizens and entities of the State," entered into a settlement agreement with McKesson to resolve finally and completely "all claims" that could have been asserted in its litigation against McKesson "arising out of Defendant's conduct as a distributor of pharmaceuticals in the State of West Virginia."[1]   In exchange, the State received funds that it will deploy, among other purposes, to develop substance abuse programs, craft treatment options, and bolster the mental health and substance abuse workforce throughout the State.

In the wake of this comprehensive settlement agreement, the same claims of wrongful distribution asserted by the Cabell County Commission (the "County") and the City of Huntington (the "City" and, collectively, "Plaintiffs") against McKesson cannot proceed.  Plaintiffs' claims are based on the same misconduct alleged in the State's lawsuit:  that is, alleged misconduct arising out of wholesale pharmaceutical distribution in West Virginia and its constituent counties and municipalities.  The State adequately represented the County and City and their interests in pursuing and settling such claims.  Accordingly, the State's settlement of "all claims" relating to McKesson's distribution of opioids in West Virginia requires dismissal of the claims asserted by the County and City under settled principles of *res judicata* and release.

**BACKGROUND**

On January 8, 2016, the State of West Virginia, acting through its Attorney General, filed suit against McKesson in Boone County Circuit Court.[2]  The State alleged that McKesson Corporation

---

[1]   Settlement Agreement and Release at 3–4 (filed May 2, 2019) ("Settlement Agreement") (attached as Ex. A).

[2]   Compl., *State ex. rel. Morrisey v. McKesson Corp.*, No. 16-C-1 (W. Va. Cir. Ct. Boone Cty. Jan. 8, 2016).  The State's Complaint was amended a few days later.  Am. Compl. *State ex rel. Morrisey v. McKesson Corp.*, No. 16-C-1 (W. Va. Cir. Ct. Boone Cty. Jan. 21, 2016) (hereinafter "State Compl.") (attached as Ex. B).

("McKesson") failed to report suspicious orders and distributed excessive quantities of opioids throughout the state between 2007 and 2012.  *E.g.*, State Compl. ¶¶ 32, 47–49, 61–67, 366.

1.      The State's Complaint alleged misconduct at the county level, including specific allegations about ten counties.  *See id.* ¶¶ 49–331 (using ten counties to "demonstrate, by example").  For example, McKesson allegedly supplied 4,661,390 doses of Hydrocodone and Oxycodone to Barbour County from 2007 to 2012, allegedly "in excess of any amount reasonable to serve a community as small as Barbour County."  *Id.* ¶¶ 242, 255.  The State alleged that McKesson "knowingly" and "negligently filled suspicious orders in Barbour County," "show[ing] a reckless disregard to the safety of [the County] *and its residents*."[3]  *Id.* ¶¶ 256, 258, 262.  And the State alleged that McKesson's conduct in Barbour County was an example "indicative of [conduct in] other counties and small communities throughout the state," *id.* ¶ 49, including "Cabell County," *id.* ¶ 302.

2.      The State asserted eight claims against McKesson:  Count I, Violation of the West Virginia Consumer Credit and Protection Act (*id.* ¶¶ 332–47); Count II, Unfair Methods of Competition and/or Unfair or Deceptive Acts or Practices (*id.* ¶¶ 348–57); Count III, Violations of the West Virginia Uniform Controlled Substances Act (*id.* ¶¶ 358–75); Count IV, Negligent Violation of Law (*id.* ¶¶ 376–90); Count V, Intentional Acts and Omissions (*id.* ¶¶ 391–403); Count VI, Public Nuisance (*id.* ¶¶ 404–18); Count VII, Negligence (*id.* ¶¶ 419–34); and Count VIII, Unjust Enrichment (*id.* ¶¶ 435–46).  Each claim relied on the State's allegations that McKesson failed to report suspicious orders and distributed excessive quantities of opioids, allegedly in violation of duties imposed by the West Virginia Uniform Controlled Substances Act (the "WVCSA") and its implementing regulations.

3.      On September 16, 2019, the County and City filed the operative Corrected Joint and Third Amended Complaint ("Compl.").  The County and City allege that McKesson and other

---

[3]      All emphasis herein has been added and internal quotation marks and citations omitted unless otherwise noted.

Distributors shipped excessive quantities of opioid medications to the County and City and failed to report suspicious orders.  *E.g.*, Compl. ¶¶ 142–44, 323, 862–63.

4.      The County and City's sole cause of action against Distributors, for Public Nuisance (Compl. ¶¶ 1401–50), is identical to one of the State's claims against McKesson.

5.      On May 1, 2019, the State executed the Settlement Agreement with McKesson on behalf of "all the citizens and entities of the State, whether natural persons or otherwise, … and/or by any agency, person, or entity claiming by or through any of them."  Settlement Agreement at 3; *see also id.* at 1 ("this Litigation is brought pursuant to the Attorney General's authority to bring claims for the citizens of the State of West Virginia"); *id.* at 2 ("through this Litigation, the State seeks to protect the health and well-being of West Virginia residents and their communities").

6.      The Settlement Agreement releases any and all claims by the State and its instrumentalities, "any agency, person, or entity claiming by or through them," and any claims that "have been or could have been asserted in the Litigation," including, *inter alia*, "any and all claims in [the State's] representative capacity as *parens patriae*," "any and all claims … based on, related to, or arising out of Defendant's conduct as a distributor of pharmaceuticals in the State of West Virginia," "any and all claims relating to any act, conduct, error, or omission in distributing controlled substances in West Virginia, … including, without limitation, claims arising under the West Virginia Uniform Controlled Substances Act, W. Va. Code §§ 60A-1-101," "any and all claims … for harm to the health and well-being of the citizens of the State," "any and all claims of harm to the public generally," and "any and all claims for damages or relief whatsoever of any nature related to the allegations in the Litigation."  *Id.* at 3–5.

7.      The next day, the Boone County Circuit Court, having learned that "all claims and controversies between [McKesson and the State] have been compromised and settled," entered

an Order incorporating portions of the Settlement Agreement and dismissing the case with prejudice.[4]

8.      The West Virginia courts and the MDL court have not addressed the preclusive effect of the Settlement Agreement between McKesson and the State.

## APPLICABLE LAW

"[A] suit can be barred by the earlier settlement of another suit in either of two ways:  res judicata or release."  *Nottingham Partners v. Trans-Lux Corp.*, 925 F.2d 29, 31–32 (1st Cir. 1991).

*Res judicata*, or claim preclusion, bars a subsequent suit when (1) there was "a final adjudication on the merits in the prior action"; (2) "the two actions … involve either the same parties or persons in privity with those same parties"; and (3) "the cause of action identified for resolution in the subsequent proceeding either [is] identical to the cause of action determined in the prior action or [is] such that it could have been resolved, had it been presented, in the prior action."  *Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc.*, 239 W.Va. 549, 560, S.E.2d 519, 530 (2017).

Separately, for release, "[w]hen a consent judgment entered upon settlement by the parties of an earlier suit is invoked by a defendant as preclusive of a later action, the preclusive effect of the earlier judgment is determined by the intent of the [settling] parties."  *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990).

These doctrines should be rigorously enforced at the outset of litigation.  "[R]es judicata is based on a recognized public policy to quiet litigation and on a desire that individuals should not be forced to litigate an issue more than once."  *Dan Ryan*, 239 W.Va. at 529 n.32; *accord Beahm v. 7–Eleven, Inc.*, 223 W.Va. 269, 273, 672 S.E.2d 598, 602 (2008) (*res judicata* "protects … adversaries from the expense and vexation attending multiple lawsuits," "conserves judicial resources," and "minimiz[es] the possibility of inconsistent decisions").  Thus, the "doctrine of res judicata … is not a technical rule but *a rule of fundamental and substantial justice*, … which

---

[4]    Notice and Order of Dismissal with Prejudice at 1, *State ex rel. Morrisey v. McKesson Corp.*, No. 16-C-1 (W. Va. Cir. Ct. Boone Cty. May 2, 2019) (attached as Ex. C).

should be cordially regarded and enforced by the courts." *Nash Cty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir. 1981) (quoting *Hart Steel Co. v. R.R. Supply Co.*, 244 U.S. 294, 299 (1917)).

**ARGUMENT**

## I.    THE COUNTY AND CITY'S CLAIM IS BARRED BY *RES JUDICATA.*

The County and City's claim is barred by *res judicata.*  The doctrine's three elements are satisfied:  (i) there is a final judgment on the merits; (ii) the County and City are in privity with the State; and (iii) the State's suit and the current suit rely on the same alleged facts.

### A.    There Was a Final Adjudication on the Merits.

The Boone County Circuit Court dismissed the State's case with prejudice following the State's settlement with McKesson, *see supra* at p. 4 ¶ 8, and such an order dismissing a case with prejudice following a settlement agreement is "a final judgment on the merits for res judicata purposes." *Keith*, 900 F.2d at 742; *accord Rowe v. Grapevine Corp.*, 206 W.Va. 703, 714, 527 S.E.2d 814, 825 (1999) ("It is well-settled that resolution of an action based on a consent decree is a final judgment on the merits for purposes of res judicata."); *In re McIntosh's Estate*, 144 W.Va. 583, 109 S.E.2d 153, 158 (1959) ("A judgment recording a compromise settlement and dismissing the action 'settled and agreed' is sufficient on which to found a res judicata plea."); *see also* Settlement Agreement at 3–5.

### B.    The County and City Are in Privity with the State.

The second *res judicata* element is also satisfied because "nonparties can be bound to a judgment or ruling where they are in privity with parties to the prior litigation." *Gribben v. Kirk*, 195 W.Va. 488, 498 n.21, 466 S.E.2d 147, 157 n.21 (1995).

"[T]he privity concept is fairly elastic under West Virginia law." *Id.*  "[P]rivity is merely a word used to say that the relationship between one who is a party on the record and another is close enough to include that other within the *res judicata*." *Beahm*, 223 W.Va. at 273.  "[T]he key consideration for [privity's] existence" is that "the interests of the party again[st] whom preclusion is asserted have been adequately represented" in the prior litigation. *Id.*; *accord Rowe*, 206 W.Va.

5

at 715, 527 S.E.2d at 826 ("privity element of res judicata [is] satisfied when the party to the first suit was an adequate representative of the interests of [the] party to [the] second suit"); *State v. Miller*, 194 W.Va. 3, 13 n.17, 459 S.E.2d 114, 124 n.17 (1995) ("the focus of the preclusion inquiry … [is on] whether the party's interests were fully represented in the earlier case, albeit by another").

Privity exists here for three independent reasons.

*First*, the Attorney General adequately represented the interests of the County and City in the prior litigation.  Indeed, when a state sues as *parens patriae*, as the Attorney General did here, it is **presumed** to adequately represent all entities within its borders—including political subdivisions.  *See South Carolina v. North Carolina*, 558 U.S. 256, 275 (2010) (given "North Carolina's role as *parens patriae*, … we see no reason that North Carolina cannot represent Charlotte's interest"); *Envtl. Def. Fund, Inc. v. Higginson*, 631 F.2d 738, 739–40 (D.C. Cir. 1979) (state acting as *parens patriae* "is presumed to represent the interests of all" "creatures" within its borders; it matters not whether the creature "is a subdivision or citizen").[5]  This presumption of adequate representation is "a necessary recognition of sovereign dignity, as well as a working rule for good judicial administration.  Otherwise, a state might be judicially impeached on matters of policy by its own subjects, and there would be no practical limitation on the number of citizens, as such, who would be entitled to be made parties."  *New Jersey v. New York*, 345 U.S. 369, 373 (1953) (rejecting Philadelphia's attempt to entangle itself in Pennsylvania's *parens patriae* litigation).

---

[5]    *Accord County of Boyd v. US Ecology, Inc.*, 48 F.3d 359, 361–62 (8th Cir. 1995) (county lawsuits precluded by state's prior litigation); *State v. City of Dover*, 891 A.2d 524, 530, 534 (N.H. 2006) (in *parens patriae* actions, "the cities are represented by the State" and "the burden properly rests upon the cities to show that they cannot obtain complete relief through the State's suit"); *In re Certified Question from U.S. Dist. Court for E. Dist. of Mich.*, 638 N.W.2d 409, 414 (Mich. 2002) (Michigan attorney general possessed the "authority to represent the interest of the people of Michigan, and thus the Attorney General has the authority as part of this representation to represent … a county [which is comprised] of these same people").

Political subdivisions hoping to maintain separate causes of action thus have the "burden of showing some compelling interest in [their] own right, apart from [their] interest in a class with all other citizens and creatures of the state, which interest is not properly represented by the state." *Id.* at 373; *accord South Carolina*, 558 U.S. at 274–75 (municipality must show "a compelling interest in [its] own right, distinct from the collective interest of all other citizens and creatures of the state"); *Envtl. Def. Fund*, 631 F.2d at 739 ("a sub-state entity … [must] offer[] a compelling reason or circumstance in which they differ[] from the positions adopted by the state[]").

This bar is high.  For instance, in *City of Dover*, the court rejected a city's argument that it had a compelling interest in maintaining a separate suit because it was more affected than other parts of New Hampshire by alleged water pollution and because it had a "direct economic interest" in the litigation that would not be fully represented by the State.  891 A.2d at 531.  The court concluded that there was no reason to think "that the State will not seek to obtain full compensation for all communities, including the Cities.  While the compensation sought may not be the same as that which the cities would desire, a difference of that nature does not demonstrate an interest that is not properly represented by the State."  *Id.*

The County and City cannot surmount this bar here.  The losses the County and City allege suggest, at most, that they are part of "a class of [those] affected [by opioids in West Virginia], and the magnitude of [that loss] does not distinguish [them] in kind from other members of the class."  *South Carolina*, 558 U.S. at 274.  "[T]here appears to be no possible divergence between [Plaintiffs'] position and the state's position" with regard to the opioid crisis; Plaintiffs' legal "arguments … would be merely cumulative."  *Envtl. Def. Fund*, 631 F.2d at 740.[6]  The key issue is whether "the State is []able to properly obtain judgment on behalf of the Cities and other affected municipalities," *id.*, which it has here by settling "any and all claims relating to …

---

[6]   Any purported variations between the "different theories" alleged by the State and the County and City are immaterial and do not change this conclusion.  *See City of Dover*, 891 A.2d at 531.

distributing controlled substances in West Virginia," and by obtaining $37 million in settlement funds to address the opioid crisis throughout the state. *See* Settlement Agreement at 4, 8–9. The County and City thus cannot "demonstrate an interest that is not properly represented by the State," *City of Dover*, 891 A.2d at 531, and they are in privity with the State for purposes of *res judicata*.

*Second*, privity should be found to exist here because a contrary conclusion would "open[] the door to countless varieties of manipulation, including … suits by proxy." *Gribben*, 195 W.Va. at 499 n.21, 466 S.E.2d at 158 n.21. The County and City are mere creatures of the State. *See, e.g.*, *Calhoun Cty. Court v. Mathews*, 99 W.Va. 483, 129 S.E. 399, 401 (1925) ("The county is a mere creature of the [State]."); *McCallister v. Nelson*, 186 W.Va. 131, 135, 411 S.E. 456, 460 (1991) ("municipalities are creatures of the State"). Accordingly, they may not relitigate claims already litigated to final judgment by the State. *See Taylor v. Sturgell*, 553 U.S. 880, 895 (2008) ("[A] party bound by a judgment may not avoid its preclusive force by relitigating through a proxy.").

The State's suit was brought (and settled) in a *parens patriae* capacity, on behalf of all the residents of West Virginia. If Plaintiffs' suit were "not precluded" by the State's action, "a suit could well follow by [a] village … which if unsuccessful might well be followed by a class action on behalf of local residents." *County of Boyd*, 48 F.3d at 362. If the State's action is not given *res judicata* effect, "suits might be multiplied to an indefinite extent, so as to create a public evil, in many cases much greater than that which was sought to be redressed." *United States v. Olin Corp.*, 606 F. Supp. 1301, 1304, 1308 (N.D. Ala. 1985).

To prevent such suits by proxy, "once a state represents all of its citizens in a *parens patriae* suit, a consent decree or final judgment entered in such a suit is conclusive upon those citizens and is binding upon their rights." *Id.* at 1304; *see St. Bernard Citizens for Envtl. Quality,*

*Inc. v. Chalmette Ref., L.L.C.*, 500 F. Supp. 2d 592, 604 (E.D. La. 2007) (same).[7]  It is likewise conclusive of claims brought by subdivisions of the State—like the County and City—when they bring suit based upon alleged injuries to a subset of those citizens.  *See Alaska Sport Fishing Ass'n v. Exxon Corp.*, 34 F.3d 769, 773–74 (9th Cir. 1994) (per curiam) (*res judicata* precluded additional claims "on behalf of the public" following *parens patriae* suit and settlement because the State of "Alaska … ha[s] already recovered damages on behalf of the public"); *Badgley*, 606 F.2d at 365 ("it necessarily follows that the rights of Pennsylvania citizens cannot exceed those of Pennsylvania itself and the extent of Pennsylvania's rights … was conclusively determined by the terms of the [prior settlement]").

*Third*, by asserting that McKesson is liable to the County and City because of alleged violations of the WVCSA, these Plaintiffs **necessarily** put themselves in privity with the State. The State (through the West Virginia Board of Pharmacy ("BOP")) registers wholesale pharmaceutical distributors such as McKesson and has exclusive authority to enforce the WVCSA.  *See* W.Va. Code § 60A-2-201(a).  The County and City's public nuisance claim against Distributors nevertheless turns on the allegation that McKesson violated the WVCSA by unlawfully distributing opioids.  *See, e.g.*, Compl. ¶¶ 1420–23 (alleging in the public nuisance count that Distributors' "sale of distribution of opioids in West Virginia … violated" the WVCSA and thereby constituted "unreasonable nuisance-creating conduct").  The County and City, in other words, seek to stand in the shoes of the State and enforce purported obligations arising under the WVCSA.  Either Plaintiffs lack standing to do so (in which case its claims fail on their own terms), or they have standing to do so—in which case they necessarily stand in privity with the State.

---

[7]    *Accord Washington v. Wash. State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 692 n.32 (1979) ("individuals and groups [that] are citizens of the State of Washington … were represented by the State in [its] proceedings, and, like it, were bound by the judgment"); *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 340–41 (1958) (similar); *Badgley v. City of New York*, 606 F.2d 358, 364 (2d Cir. 1979) (consent decree settling suit in which State of Pennsylvania acted as *parens patriae* was "conclusive upon all Pennsylvania citizens and bind[s] their rights").

### C.      The State's Suit and the Current Suit Rely on the Same Alleged Facts.

Finally, preclusion is warranted because the causes of action here are (1) "identical to the cause[s] of action determined in the prior action" or (2) "could have been resolved, had [they] been presented, in the prior action."  *Dan Ryan*, 239 W.Va. at 560, 803 S.E.2d at 530.

### 1.      The Causes of Action Are Identical.

"For purposes of *res judicata* or claim preclusion, 'a cause of action' is the fact or facts which establish or give rise to a right of action, the existence of which affords a party a right to judicial relief."  *Id.*; *see also Nash Cty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 487 (4th Cir. 1981) (there is a "much broader definition of 'cause of action' in connection with the doctrine of res judicata").  "The test to determine if the issue or cause of action involved in the two suits is identical is to inquire whether the same evidence would support both actions or issues."  *Dan Ryan*, 239 W.Va. at 560, 803 S.E.2d at 530.  This test is satisfied so long as "the two cases [do not] require substantially different evidence to sustain them."  *Id.*

Here, "the claims are … identical."  *Richardson v. Church of God Int'l*, 2014 WL 4202619, at *4 (S.D.W. Va. Aug. 22, 2014) (Faber, J.).  The State pled the same public nuisance count as did the County and City.  *Compare* State Compl. ¶¶ 404–18, *with* Compl. ¶¶ 1401–50.

In any event, "the same evidence would support both actions."  *Beahm v. 7 Eleven, Inc.*, 223 W.Va. 269, 275, 672 S.E.2d 598, 604 (2008).  The State alleged that McKesson "flood[ed] the state" by failing to report suspicious orders and distributing too many opioid medications in "counties and small communities throughout the state," all in alleged violation of the WVCSA and its regulations, producing a public nuisance.  *E.g.*, State Compl. ¶¶ 42, 47–49, 315, 361–71, 405–09.  The County and City allege the same thing:  McKesson was "flooding West Virginia" by failing to report suspicious orders and engaging in "excessive distribution," again in alleged violation of the WVCSA and producing a public nuisance.  *E.g.*, Compl. ¶¶ 675, 691, 1414–17.  That substantially the same evidence underlies both actions is determinative; minor variations do not alter the result.  *See Beahm*, 223 W.Va. at 275–76, 672 S.E.2d at 604–05 ("[t]he fact that different pieces of property allegedly sustained damages does not preclude the effects of *res judicata*";

10

"the differences between the two cases [are] too insignificant"); *Rowe*, 206 W.Va. at 717 n.33, 527 S.E.2d at 828 n.33 ("a claim can be barred even though the plaintiff seeks remedies or forms of relief not demanded in the original action").

*Nash County* is illustrative.   There, the North Carolina attorney general settled state antitrust claims that dairy companies had conspired to restrain prices of milk products sold to public school systems.   640 F.2d at 485.   The Fourth Circuit held that the settlement agreement precluded a subsequent lawsuit by a county board of education even though it sued under federal antitrust law, rather than state law, and sought different relief than the State.   *Id.* at 485–86.   The court explained:   "In both cases, the evidence will be identical," and "the identity of [these] two actions … will not be destroyed … simply because the two suits are based on different statutes." *Id.* at 488; *see also id.* ("Both suits deal with the same subject-matter," "allege the same wrongful act," and "involve the same operative facts and the same basic delict or wrong.").

The same is true here:   the "subject-matter," "wrongful act," and "operative facts" in the State's lawsuit and the current lawsuit relate to McKesson's alleged improper distribution of controlled substances in West Virginia.   Thus, both lawsuits "rely upon the same facts." *Dan Ryan*, 239 W.Va. at 560, 803 S.E.2d at 530.   Accordingly, the third *res judicata* element is satisfied.   *See County of Boyd*, 48 F.3d at 361 ("all theories of recovery stemming from one factual situation must be brought at once, or are forfeited; the law will not tolerate successive suits by a plaintiff stemming from the same scenario").

### 2.   The County and City's Claim Could Have Been Resolved, Had It Been Presented, in the State's Suit.

Preclusion also is warranted because Plaintiffs' claim "could have been resolved, had [it] been presented, in the [State's] action." *Dan Ryan*, 239 W.Va. at 560, 803 S.E.2d at 530; *accord Beahm*, 223 W.Va. at 275, 672 S.E.2d at 604 ("it is sufficient that the status of the [prior] suit was such that the parties **might** have had the matter disposed of on its merits").

The County and City's claim "ar[i]se[s] out of the same core of operative facts" as the State's claims.   *Beahm*, 223 W.Va. at 276, 672 S.E.2d at 605.   Specifically, the claims in both

cases arise out of McKesson's alleged distribution of excessive quantities of opioid medications in West Virginia, purported failure to report suspicious orders, and purported violations of the WVCSA producing a public nuisance.  Accordingly, the County and City's claim "could have been brought" in the State's earlier lawsuit.  *Id.* at 275, 604; *see also* W. Va. R. Civ. P. 20(a) (authorizing parties to join action if they have claims arising out of "the same … series of transactions"); Settlement Agreement at 4 (releasing all claims "which have been or could have been asserted in the Litigation").[8]

## II.   THE STATE RELEASED THE COUNTY AND CITY'S CLAIM.

### A.   The Settlement Agreement Requires Dismissal of the County and City's Successive Suit.

The Settlement Agreement between the State and McKesson "manifest[s] an intent to completely close the book on" opioid litigation in West Virginia.  *Keith*, 900 F.2d at 741; *see also id.* ("If the parties intended to foreclose through agreement litigation of a claim, assertion of that claim in a later suit, whether or not formally presented in the earlier action, is precluded.").  The plain and unambiguous language of the Settlement Agreement is controlling; the law does not countenance any other determinant of the parties' intent.  *See Perrine v. E.I. du Pont de Nemours & Co.*, 225 W.Va. 482, 511, 694 S.E.2d 815, 844 (2010) ("This Court has long recognized that, '[w]here the intent of the parties is clearly expressed in definite and unambiguous language …, the court is required to give effect to such language and, ordinarily, will not resort to parole or extrinsic evidence.'" (quoting *Pocahontas Land Corp. v. Evans*, 175 W.Va. 304, 308, 332 S.E.2d 604, 609 (1985))); *see also Am. Contractors Indem. Co. v. Carolina Realty & Dev. Co.*, 2012 WL 2711802, at *4 (D.S.C. July 9, 2012) ("the court holds the settlement agreement is unambiguous, the alleged intent behind the settlement agreement is irrelevant, and all claims arising out of the

---

[8]   The County and City "could have sought intervention in the State's suit.  Instead they filed separate suits ....  [T]his procedural difference … is not a material distinguishing factor." *City of Dover*, 891 A.2d at 530–31.

(continued…)

[underlying transaction or occurrence] are subject to the broad release."), *aff'd*, 529 F. App'x 346 (4th Cir. 2013).[9]

The Settlement Agreement releases "***any claims*** … which have been or could have been asserted in the Litigation," including:

- "any and all claims for damages or relief of any nature whatsoever related to the allegations in the Litigation,"

- "any and all claims relating to any act, conduct, error, or omission in distributing controlled substances in West Virginia,"

- "any and all claims … for harm to the health and well-being of the citizens of the State," and

- "any and all claims of harm to the public generally."

Settlement Agreement at 4–5.

---

[9]     *Accord Soltis v. J.C. Penney Corp.*, 635 F. App'x 245, 248 (6th Cir. 2015) ("In an unambiguous contract, intent is established solely based on the plain language of the contract because in such a case, 'no outside evidence can better evince the intent of the parties than the writing itself.'" (quoting *Omnicom Grp., Inc. v. 880 W. Long Lake Assocs.*, 504 Fed. App'x. 487, 490 (6th Cir. 2012))); *Celtic Marine Corp. v. James C. Justice Cos.*, 760 F.3d 477, 483 (5th Cir. 2014) ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."); *City of New Orleans v. BellSouth Telecomms., Inc.*, 690 F.3d 312, 328 (5th Cir. 2012) ("Given the broad scope of this release, the parties clearly intended to settle all of their disputes … [and] if the parties intended to allow [exceptions] …, then the parties needed to expressly declare that intent since it runs counter to the plain language … of the Agreement."); *Tromp v. City of New York*, 465 F. App'x 50, 51 (2d Cir. 2012) ("Where the language of a release is clear, effect must be given to the intent of the parties as indicated by the language employed"; moreover, "[w]hen general language is used in the releasing document, the release is to be construed most strongly against the releasor."); *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1391–92 (8th Cir. 1997) ("Astraea's assertion that it had a different subjective intent [is irrelevant] …. when the plain language … clearly expressed the parties' objective intent"); *In re Circuit City Stores, Inc.*, 591 B.R. 289, 295–96 (Bankr. E.D. Va. 2018) ("For written contracts …, such as the Settlement Agreement at issue here, the intention of the parties is to be ascertained from the writing alone, if possible"); *Ins. Prod. Mktg., Inc. v. Conseco Life Ins. Co.*, 2012 WL 3308368, at *8 (D.S.C. Aug. 13, 2012) ("Absent ambiguity, the court is to look only to the plain language of the Release to ascertain the parties' intent."); *Davis v. Cincinnati Metro. Hous. Auth., Inc.*, 2013 WL 5876051, at *4, *6 (S.D. Ohio Oct. 30, 2013) ("the broad release provision of the Settlement Agreement plainly and unambiguously includes all claims"; one party's "subjective understanding of the release should not be considered in light of the plain language of the release").

"There can be no serious question but that the claims pressed in this action f[a]ll well within the language of the general release." *Nottingham Partners*, 925 F.2d at 33.  As discussed, the actions are founded on the same allegations. *Compare* State Compl. ¶¶ 42, 47–49, 315, 361–71, 405–09, *with* Compl. ¶¶ 675, 691, 1414–17.  The County and City's allegations thus clearly "relate[] to the allegations in the [State's] Litigation" and "relat[e] to any act, conduct, error, or omission in distributing controlled substances in West Virginia."  Settlement Agreement at 4.  Moreover, the County and City's claim of public nuisance is identical to that pled by the State. *Compare* State Compl. ¶¶ 404–18, *with* Compl. ¶¶ 1401–50.  The plain language of McKesson's Settlement Agreement with the State thus bars this lawsuit.

The Settlement Agreement, furthermore, "do[es] not expressly reserve" any right for the County and City to continue to sue McKesson, or "express[] … clear consent to future litigation arising from [a] connected series of transactions." *Keith*, 900 F.2d at 741 (applying settlement agreement to bar subsequent suit against the same defendant); *see also, e.g.*, *City of New Orleans*, 690 F.3d at 328 (similar).  Just the opposite:  the Settlement Agreement releases "***any and all claims for damages or relief whatsoever of any nature related to the allegations***" in the State's litigation on behalf of "all the citizens ***and entities*** of the State."  Settlement Agreement at 3–4.

Accordingly, the State's release of McKesson precludes the County and City's claim. *See Olin*, 606 F. Supp. at 1305, 1308 (where "the prior litigation was in fact a *parens patriae* suit and … the [current plaintiffs] are unnamed parties or privies within the meaning of that doctrine," settlement of the *parens patriae* claims bars a subsequent suit); *accord Rowe v. Grapevine Corp.*, 206 W.Va. 703, 717, 527 S.E.2d 814, 828 (1999) ("since the government, in its representative capacity, released Exxon from 'any and all civil claims' that the government brought or could have brought against Exxon ..., under the doctrine of *res judicata*, [different plaintiffs] are barred from asserting such claims in a second suit").

**B.      The Attorney General Is Authorized to Represent and Settle the Claims of Its Counties, Municipalities, and Residents.**

The West Virginia Constitution created the Office of Attorney General, and "there are certain core functions of the Office of Attorney General that are inherent in the office, of which the Office of Attorney General may not be deprived," including "extensive common-law powers." *State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 231 W.Va. 227, 246–47, 744 S.E.2d 625, 641, 644–45 (2013).  These inherent common-law powers include the authority to "bring any action which [the Attorney General] thinks necessary to protect the public interest," *State ex rel. Morrisey v. W. Va. Office of Disciplinary Counsel*, 234 W.Va. 238, 254, 765 S.E.2d 769, 785 (2014), such as "a *parens patriae* suit to vindicate quasi-sovereign interests on behalf of [the State's] citizens," *State ex rel. Morrisey v. AmerisourceBergen Drug Corp.*, 2014 WL 12814021, at *5 (Boone Cty. Cir. Ct. Dec. 12, 2014).

The Attorney General has common-law authority to represent not only citizens, but also political subdivisions of the State.  *See, e.g.*, *Nash Cty.*, 640 F.2d at 496 ("The Attorney General as legal representative of the sovereign and its constitutional subdivisions has both common law and statutory power to bind the State and the subdivisions by his acts."); *In re Certified Question*, 638 N.W.2d at 414 ("Because the Attorney General possesses the authority to sue on behalf of the state in matters of state interest, it follows that the Attorney General necessarily has the authority to sue on behalf of the state's political subdivisions in matters of state interest.").

Indeed, the West Virginia Supreme Court of Appeals has stated that "the county is a mere creature of the sovereign.  Being a creature, it has only such rights as were granted by its creator." *Calhoun Cty. Court v. Mathews*, 99 W.Va. 483, 129 S.E. 399, 401 (1925); *see also State ex rel. W. Va. Parkways Auth. v. Barr*, 228 W.Va. 27, 33, 716 S.E.2d 689, 694 (2011) ("The county [commission] is a corporation created by statute, and … can do only such things as are authorized by law, and in the mode prescribed."); *Herald v. Bd. of Educ.*, 65 W.Va. 765, 65 S.E. 102, 104 (1909) ("counties … are involuntary political or civil divisions of the state, created by general laws

to aid in the administration of government").[10]   The same is true of municipalities.   *See, e.g.*, *McCallister v. Nelson*, 186 W.Va. 131, 135, 411 S.E. 456, 460 (1991) ("municipalities are creatures of the State").   Accordingly, the Attorney General was authorized to bring and release claims against McKesson on behalf of "all the citizens **and entities** of the State," including any similar distribution-related claims that "could have been asserted in the Litigation."   Settlement Agreement at 3–4.

Allowing the County and City's lawsuit to proceed under these circumstances would result in "the creation of a cumbersome system leading to almost ludicrous results."   *Nash Cty.*, 640 F.2d at 496.   If litigants could not effectively obtain statewide peace via settlement with the Attorney General, the "result would be to severely limit the amount of damages [the State] could recover on behalf of the public in future" litigation.   *Alaska Sport*, 34 F.3d at 772.   Most notably, it would require the Attorney General to "consult with and obtain the consent of every" county and municipality in West Virginia to quiet the government's rights, *Nash Cty.*, 640 F.2d at 496—an unwieldy requirement, at best.

Courts therefore have consistently held that "the doctrine of *parens patriae* controls and [local governments'] suits must yield to the attorney general's suit."   *City of Dover*, 891 A.2d at 532; *see also, e.g.*, *In re Certified Question*, 638 N.W.2d at 415 ("the law establishes that where the Attorney General has acted [through a settlement agreement] to limit the power of the counties to sue where an issue is of state interest, the county may not act to defeat the state's clear intentions"); 18A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4458 (3d ed. Aug. 2019 update) ("state law [is] work[ing] increasingly toward the conclusion that

---

[10]   *Accord Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 607-08 (1991) ("[P]olitical subdivisions are components of [a State]."); *Cmty. Commc'ns Co. v. City of Boulder*, 455 U.S. 40, 53 (1982) ("[W]e are a Nation of States, a principle that makes no accommodation for sovereign subdivisions of States."); *United States v. Kagama*, 118 U.S. 375, 378 (1886) ("There exists within the broad domain of sovereignty [only the Federal Government and the States]. There may be cities, counties, and other organized bodies within limited legislative functions, but they are all derived from, or exist in, subordination to one or the other of these.").

litigation by the state or state officials is binding on political subdivisions, simply as a matter of establishing central control and common results").  The same conclusion is warranted here.

## CONCLUSION

For the foregoing reasons, the County and City's claim against McKesson should be dismissed and judgment should be entered in favor of McKesson.

Dated: March 13, 2020

**MCKESSON CORPORATION**

**By Counsel**


*/s/  Jeffrey M Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
**FLAHERTY SENSABAUGH BONASSO PLLC**
P.O. Box 3843
Charleston, WV 25338-3843
(304) 345-0200
(304) 345-0260 fax
jwakefield@flahertylegal.com

Mark H. Lynch
Christian J. Pistilli
Laura Flahive Wu
Megan A. Crowley
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
(202) 662-6000

***Counsel for McKesson Corporation***