UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**THE CITY OF HUNTINGTON,**
 Plaintiff,

v.

**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**
 Defendants.

CIVIL ACTION NO. 3:17-01362

---

**CABELL COUNTY COMMISSION,**
 Plaintiff,

v.

**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**
 Defendants.

CIVIL ACTION NO. 3:17-01665

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE DEFENDANTS' NOTICES OF NON-PARTY FAULT**

### INTRODUCTION

Plaintiffs City of Huntington and Cabell County Commission (collectively, "Plaintiffs") submit this memorandum of law in support of their motion for the Court to strike the Defendants' Notices of Non-Party Fault.

Notwithstanding the Defendants' failure to maintain effective controls against diversion and their distribution between 2006 and 2014 of 56.5 million doses of hydrocodone and oxycodone into Huntington and Cabell County, the Defendants each have filed notices of non-party fault seeking to blame others for their wholesale

disregard of their duties under the Controlled Substances Act.[1] The notices were filed pursuant to W.Va. Code § 55-7-13d(a)(2) ("2015 Act") which Defendants wrongfully allege permits this Court to consider the fault of the non-parties identified in the notices.[2] Cardinal's notice filed in *Huntington* lists 1,949 non-parties allegedly at fault,[3] and the remaining notices generically list categories of non-parties alleged to be at fault.[4]

The 2015 Act and its predecessor, W.Va. Code § 55-7-24 ("2005 Act") (collectively "Apportionment Statutes"), are inapplicable to Plaintiffs' claims set for trial in August. First, by its very terms, the 2015 Act applies only to actions at law seeking damages – not to this action in equity seeking abatement.[5] Similarly, the limited several liability under the 2005 Act also only applies to damage claims.[6] Second, the 2015 Act is not retroactive. It explicitly applies only to causes of action which accrue on or after its effective date, May 25, 2015.[7] Plaintiffs' nuisance claims

---

[1] *See Cabell,* Doc. 96 (McKesson), Doc. 97 (ABDC), & Doc. 99 (Cardinal); *Huntington,* Doc 31(Cardinal), Doc. 32 (McKesson), & Doc. 33 (ABDC).

[2] *E.g., Huntington,* Doc. 33 at 1.

[3] *Huntington,* Doc. 31

[4] *See, e.g., Cabell,* Doc. 96 (identifying by category pharmacies, prescribers, illegal drug sellers, manufacturers, non-party distributors, and governmental entities). In *Cabell,* the Court entered an order permitting some of the Defendants to identify only categories pending further discovery. Doc. 92.

[5] *See, e.g.,* W. Va. Code § 55-7-13d(1) (permitting trier of fact to consider the fault of "all persons contributed to the alleged *damages*" (emphasis added)).

[6] W.Va. Code § 55-7-24 (repealed 2015) (in actions arising from tortious conduct liability of defendant less than 30% at fault, liability is several and such defendant "shall be liable only for the *damages* attributable to him or her" (emphasis added).

[7] W. Va. Code § 55-7-13d(h).

2

first arose prior to May 25, 2015. For these reasons, Plaintiffs now seek an order striking the notices of non-party fault filed by the Defendants.

## COMMON LAW AND STATUTORY BACKGROUND

With respect to tort actions prior to 2005, West Virginia was "committed to the concept of joint and several liability among joint tortfeasors" permitting a plaintiff to sue "any or all of those responsible. . .and collect his damages from whomever is able to pay, irrespective of their percentage of fault."[8]

In 2005, the Legislature limited joint liability in damage actions sounding in tort to parties found greater than 30% at fault.[9,10] The 2005 Act applies "only to causes of action that accrued on or after the first day of July, two thousand five."[11] Apportionment under the 2005 Act is appropriate only between "the parties in the litigation at the time the verdict is rendered."[12]

The 2005 Act was repealed in 2015.[13] The 2015 Act provides that "[i]n any *action for damages*, the liability of each defendant *for compensatory damages* shall be

---

[8] *Sitzes v. Anchor Motor Freight, Inc.*, 169 W. Va. 698, 698, 289 S.E.2d 679, 681 (1982).

[9] W.Va. Code § 55-7-24(a) (repealed 2015).

[10] The 2005 Act did include exceptions that applied "the rules of joint and several liability" to "[a]ny party who acted in concert with another person as part of a common plan or design resulting in harm," or in the in case of "[a]ny party who acted with the intention of inflicting injury or damage. *Id.* at § 55-7-24(b)(1), (2).

[11] *Id.* at § 55-7-24(g).

[12] *Id.* at § 55-7-24(a)(1). Thus, for purposes of allocation, the liability of absent, settling, immune, or bankrupt defendants was ignored. *Halcomb v. Smith*, 230 W. Va. 258, 260, 737 S.E.2d 286, 288, n.1 (2012).

[13] H.B.2002, 2015 Leg. 82nd Sess. (W.Va.2015) (codified at W. Va. Code §§ 55–7–13a through 13d) ("2015 Act").

several only and may not be joint."[14] Like the 2005 Act, the 2015 Act contains exceptions.[15] However, unlike the 2005 Act's focus on the parties "in the litigation at the time of verdict," the 2015 Act requires that the trier of fact "consider the fault of all persons who contributed to the alleged *damages* regardless of whether the person was or could have been named as a party to the suit.[16]

The Defendants' notices of non-party fault were purportedly authorized by the 2015 Act. It provides that the fault of a nonparty shall be considered "if a defending party gives notice no later than one hundred eighty days after service of process upon said defendant that a nonparty was wholly or partially at fault."[17]

The 2015 Act is not retroactive as it applies to "causes of action arising or accruing on or after the effective date of its enactment [May 25, 2015]."[18] There are no decisions interpreting the 2015 Act's provisions.

---

[14] W. Va. Code § 55-7-13c(a).

[15] *See* W. Va. Code § 55-7-13c(a) (joint liability imposed "on two or more defendants who consciously conspire and deliberately pursue a common plan or design to commit a tortious act or omission"); *id.* at § 55-7-13c(h)(2) (joint liability imposed when defendant's "acts or omissions constitute criminal conduct"); *id.* W. Va. Code Ann. § 55-7-13d(b) (person may be "held liable for the portion of comparative fault assessed against another person who was acting as an agent or servant of such person, or if the fault of the other person is otherwise imputed or attributed to such person by statute or common law").

[16] W. Va. Code § 55-7-13d(a)(1) (emphasis added).

[17] *Id.* at § 55-7-13d(a)(2).

[18] *Id.* at § 55-7-13d(h).

# ARGUMENT

I. **The Apportionment Statutes Do Not Apply To Plaintiffs' Equitable Public Nuisance Claims Seeking Only Abatement.**

The only remaining substantive claim before the Court is Plaintiffs' claim for abatement of a public nuisance.[19] Plaintiffs have waived all claims for damages,[20] including punitive damages.[21] Plaintiffs' public nuisance claims seeking only the equitable remedy of abatement are not tort actions for compensatory damages, and, as such, the Apportionment Statutes simply do not apply to these claims.

   A. **Plaintiffs' public nuisance claims seeking abatement as an equitable remedy are not tort actions for compensatory damages.**

The Supreme Court of Appeals has recognized that the "distinction between abatement of nuisances and recovery of damages for injuries occasioned by wrongful acts constituting nuisances" is both "apparent" and "vast."[22] This is particularly true in governmental abatement actions where, unless the plaintiff can show special harm, "damages are not at issue, and the Restatement does not contemplate the possibility of a public entity seeking anything other than injunctive relief."[23]

West Virginia law has long made clear the equitable nature of an action to abate a public nuisance. In 1900, the Supreme Court of Appeals held: "Courts of

---

[19] Cabell Doc. 240; MDL Order [Non-Document] (Dec. 23, 2019) The Court construes Plaintiffs' notice of dismissal (docket no. [240]) as a motion to dismiss certain claims. That motion is GRANTED. " ).

[20] Cabell Doc. 240 at 1, n.1.

[21] Cabell Doc. 267 at 2 & Exh. A.

[22] *McMechen v. Hitchman-Glendale Consol. Coal Co.*, 88 W. Va. 633, 107 S.E. 480, 482 (1921); *see Duff v. Morgantown Energy Assocs. (M.E.A.)*, 187 W. Va. 712, 717, 421 S.E.2d 253, 258

5

equity have an ancient and unquestionable jurisdiction to prevent or abate public nuisance, and this alone would give jurisdiction."[24] Other courts and commentators agree that the aim of an abatement action is to reduce or eliminate a nuisance prospectively as contrasted with an action for damages which seeks to compensate for prior harm.[25] As the California Court of Appeals noted:

> An equitable remedy's sole purpose is to eliminate the hazard that is causing prospective harm to the plaintiff. An equitable remedy provides no compensation to a plaintiff for prior harm. Damages, on the other hand, are directed at compensating the plaintiff for prior accrued harm that has resulted from the defendant's wrongful conduct. The distinction between these two types of remedies frequently arises in nuisance actions.[26]

---

(1992) (internal quotations omitted) (upon establishing nuisance party entitled to "relief therefrom by the abatement of the nuisance *and* the defendants will be held liable for damages." (emphasis added)); *State ex rel. Ball v. Cummings,* 208 W. Va. 393, 402, 540 S.E.2d 917, 926 (1999) (severing claims after finding issues involved in action for monetary damages distinct from claim seeing abatement of pollution); *see also* Restatement (Second) of Torts § 821B, com. i (1979) ("There are numerous differences between an action for tort damages and an action for an injunction or abatement, and precedents for the two are by no means interchangeable."); Restatement (Third) of Torts: Liab. for Econ. Harm § 8, com. b (2019) ("An action by a public official will commonly lie to abate the nuisance by injunction but may not involve monetary recovery for harm done.").

[23] Robert Abrams & Val Washington, *The Misunderstood Law of Public Nuisance: A Comparison with Private Nuisance Twenty Years After Boomer*, 54 Alb. L. Rev. 359, 379 (1990) (citing Restatement (Second) Torts § 821C, com. a).

[24] *Town of Weston v. Ralston*, 48 W. Va. 170, 36 S.E. 446, 456 (1900).

[25] *See San Diego Unified Port Dist. v. Monsanto Co.*, No. 15cv578, 2018 U.S. Dist. LEXIS 149485, at *14 (S.D. Cal. Aug. 30, 2018) (recognizing "stark" distinction between abatement as equitable remedy for prospective relief and damages which compensate for "prior accrued harm"); *Town of Superior, Mont. v. Asarco, Inc.*, 874 F. Supp. 2d 937, 948–49 (D. Mont. 2004) (award of damages in nuisance case "is retroactive, applying to past conduct, while an injunction applies only to the future"); Restatement (Second) of Torts § 821B, com. i (1979) ("On the other hand an award of damages is retroactive, applying to past conduct, while an injunction applies only to the future.").

[26] *People v. ConAgra Grocery Products Co.*, 227 Cal.Rptr.3d 499, 569 (Cal.App.2017); *see also Mugler v. Kansas*, 123 U.S. 623, 673, 8 S.Ct. 273, 303 (1887) ("[Courts of equity] cannot only prevent nuisances that are threatened, and before irreparable mischief ensues, but arrest or abate those in progress, and, by perpetual injunction, protect the public against

6

Thus, compensatory damages are backward looking remedies. The equitable abatement action Plaintiffs bring here seeks a remedy that is different in kind and distinguishable from precedent and statutes involving damages. For the reasons noted below, this vast and apparent distinction renders the Apportionment Statutes inapplicable to the Plaintiffs' claims in this case.

> **B. The Apportionment Statutes relate to damage remedies and do not apply to equitable public nuisance claims seeking abatement as a remedy.**

The Apportionment Statutes relate to actions seeking damages. They simply do not apply to equitable public nuisance claims seeking abatement as a remedy.

First, the plain language of the Apportionment Statutes supports this interpretation. The statutes only expressly apply to claims for damages and do not refer to abatement or other equitable relief. Under the 2005 Act, the fact finder must determine, "the total amount of *damages* sustained by the claimant" and the limited several liability under the Act is imposed only with respect to "the *damages* attributable" to a defendant found less than 30% at fault.[27] Similarly, the 2015 Act,

---

them in the future; whereas courts of law can only reach existing nuisances, leaving future acts to be the subject of new prosecutions or proceedings. This is a salutary jurisdiction, especially where a nuisance affects the health, morals, or safety of the community."); *United States v. Price*, 688 F.2d 204, 212 (3d Cir.1982) ("Damages are awarded as a form of substitutional redress. They are intended to compensate a party for an injury suffered or other loss. A request for funds for a diagnostic study of the public health threat posed by the continuing contamination and its abatement is not, in any sense, a traditional form of damages.").

[27] W.Va. Code § 55-7-24(a)(1), (2) (emphasis added); W. Va. Code Ann. § 55-7-13a(b) (article applies to any action "seeking *damages* for personal injury, property damage, or wrongful death" (emphasis added)).

7

applies "[i]n any *action for damages*," and requires "the liability of each defendant *for compensatory damages*" be several only.²⁸ And, the trier of fact is directed to apportion by considering "the fault of all persons who contributed to the alleged *damages*."²⁹ Finally, the definition of "damages" does not include equitable relief.³⁰

Second, Defendants' interpretation of the Apportionment Statutes to apply to equitable claims runs contrary to established common law. As early as 1936, the Supreme Court of Appeals recognized that Defendants who were concurrently at fault in creating a nuisance were subject to joint liability.³¹ And, joint liability is subject to a different and more liberal standard in equity:

> Upon the state of facts here disclosed, the law courts could only give damages for the wrong, and, if the defendants are not jointly liable, they could not be jointly sued at law. Their creation or maintenance of nuisances, or both, is an entirely different thing. . . . Although brought into existence or maintained by the separate acts of a number of persons, a nuisance, considered in all of its aspects and elements, may be an entire thing. Limited in its functions to a mere matter of compensation for damages, a court of law could not, under all circumstances, treat it as an entirety, but a court of equity can do so, because of its more extensive remedial powers.³²

---

²⁸ W.Va. Code § 55-7-13c(a).

²⁹ W. Va. Code § 55-7-13d(a)(1) (emphasis added).

³⁰ W.Va. Code § 55-7-13d(e) ("[f]or purposes of this section, 'damages' includes all damages which may be recoverable for personal injury, death, or loss of or damage to property, including those recoverable in a wrongful death action").

³¹ *Baker v. City of Wheeling*, 117 W. Va. 362, 185 S.E. 842, 844 (1936) (Court holding in nuisance action that "[t]he concurrent neglect of each . . . allegedly resulted in plaintiff's injuries. Hence she could sue them jointly.").

³² *McMechen,* 88 W. Va. 633, 107 S.E. at 482 (1921).

If the Legislature intends to alter or supersede the common law, it must do so clearly and without equivocation. Our "common law is not to be construed as altered or changed by statute, unless legislative intent to do so be plainly manifested."[33] The lack of a clear intent to include equitable claims into the Apportionment Statutes is fatal to Defendants' attempts to shoehorn these distinct equitable remedies into a statutory framework only expressly applicable to damages.

Indeed, the Legislature understands the difference between damages and abatement and expressly includes abatement or injunctive remedies when it intends laws to apply to both remedies.[34] Given the established jurisprudence marking the difference between damages and equitable remedies like abatement, the absence of language expressly including equitable remedies is both telling and determinative.[35]

Finally, jurisprudence from other jurisdictions with similar statutes clearly differentiates between compensatory damages and nuisance abatement, holding that

---

[33] *State ex rel. Van Nguyen v. Berger,* 199 W. Va. 71, 75, 483 S.E.2d 71, 75 (1996).

[34] W. Va. Code § 61-13-4 (limiting political subdivision actions from bringing actions seeking "damages, abatement or injunctive relief" relating to firearms); W. Va. Code § 22-11-27 (Water Pollution Control Act provision preserving "rights to suppress nuisances or to abate any pollution now or hereafter existing, or to recover damages"); W. Va. Code § 22-10-11 (Abandoned Well Act; same); W. Va. Code Ann. § 22-12-13 (Groundwater Protection Act; same); W. Va. Code Ann. § 47-2-14 (Trademark Act expressly providing for injunctions and damages); W. Va. Code §§ 47-18-8, 9 (Antitrust Act providing separate remedies for injunctions and damages); W. Va. Code Ann. § 47-11A-9 (Unfair Trade Practices Act; same); W. Va. Code § 46A-6-106 (Consumer Protection Act providing for damages and equitable relief).

[35] *Phillips v. Larry's Drive-In Pharmacy, Inc.,* 220 W. Va. 484, 492, 647 S.E.2d 920, 928 (2007) (recognizing and applying doctrine of *expressio unius est exclusio alterius*, the express mention of one thing implies the exclusion of another).

9

state statutes limiting the availability of the former (like the Apportionment Statutes) have no impact whatsoever on the availability of the latter remedy.[36]

## II. The 2015 Act is Inapplicable Because Plaintiffs' Nuisance Claims Arose Prior to May 25, 2015.

The 2015 Act by its express terms does not apply to this case. It expressly applies only to "causes of action arising or accruing on or after the effective date of its enactment" on May 25, 2015.[37] As Plaintiffs' claims first arose or accrued prior to May 25, 2015, the 2015 Act is simply inapplicable. In West Virginia, the general rule is that a statute is presumed to be prospective unless expressly made retrospective.[38] This presumption and the express application date are conclusive of the Legislative intent here.[39]

---

[36] *See, e.g.*, *Cobbley v. City of Challis*, 59 P.3d 959, 963 (Idaho 2002) ("Had the court allowed the Cobbleys to amend their complaint, they could have specifically alleged a claim for abatement of a nuisance, which would not be an action to recover damages and subject to the constraints of the notice requirements under the [Idaho] Tort Claims Act."); *Peterson v. Putnam County*, 2006 Tenn. App. LEXIS 677, at *32-33 (Tenn. Ct. App. Oct. 19, 2006) ("In Tennessee, a nuisance-type claim that seeks *damages* against a governmental entity must be brought under the terms of the [Governmental Tort Liability Act]. . . . Our courts have held, however, that an *equitable action to abate* a nuisance created by a governmental entity is permitted outside of [the] terms of the GTLA.") (emphasis in original); *Bostco LLC v. Milwaukee Metro. Sewerage Dist.*, 835 N.W.2d 160, 178 (Wis. 2013) ("Accordingly, we conclude that the plain meaning of Wis. Stat. § 890.80(3) is to limit the dollar amount of recovery to be paid for damages. . . but that the plain meaning of that provision has no bearing on the availability of equitable relief such as abatement.").

[37] W. Va. Code § 55-7-13d(h).

[38] W. Va. Code § 2-2-10(bb) (2013); *Martinez v. Asplundh Tree Expert Co.*, 239 W. Va. 612, 616, 803 S.E.2d 582, 586 (2017) ("The presumption is that a statute is intended to operate prospectively, and not retrospectively, unless it appears, by clear, strong and imperative words or by necessary implication, that the Legislature intended to give the statute retroactive force and effect." (internal quotations omitted)).

[39] *Kisner v. Fiori*, 151 W. Va. 850, 856, 157 S.E.2d 238, 242 (1967) ("When, however, the language of the statute expressly declares. . . that the statute shall not be retroactive it is obvious that the statute must be given prospective effect."); *see also Central West Virginia*

The general rule in West Virginia is that a cause of action accrues or arises when the acts constituting breach of a duty occurs resulting in an injury.[40] At that time, the claim arises or accrues because the right to bring suit then exists.[41] Other authorities confirm that a claim first arises or accrues when a present enforceable demand or right exists.[42]

Here, the Plaintiffs' right to bring a public nuisance action against the Defendants seeking abatement first arose prior to May 25, 2015. Prior to this date,

---

*Regional Airport Authority, Inc. v. Triad Engineering, Inc.*, Civil Action No. 15-C-1022 KAN, at p.3 (W.Va. Mass. Lit Panel Feb. 26, 2019), *writ refused, State ex rel. Cast* & *Baker Corporation v. Swope,* No. 190178 (W.Va. Feb. 27, 2019) ("Because the cause of action in this case accrued before May 24, 2015, the Court finds, and the parties do not dispute, that § 55-7-24 [the 2005 Act] applies.").

[40] *Albright v. White*, 202 W. Va. 292, 301, 503 S.E.2d 860, 869 (1998) (quoting Syl. pt. 1, in part, *Cart v. Marcum,* 188 W.Va. 241, 423 S.E.2d 644 (1992); *see also* syl. pt. 1, in part, *Jones v. Trustees of Bethany College,* 177 W.Va. 168, 351 S.E.2d 183 (1986) (holding that "the right to bring an action for personal injuries accrues ... when the injury is inflicted").

[41] The date of accrual of a claim is distinct from the date the statute of limitations commences to run because the statute of limitations for a claim that has arisen is still subject to tolling doctrines. *Albright,* 202 W. Va. at 301, 503 S.E.2d at 869 ("Having determined that Albright was under the disability of infancy *at the time his cause of action against the defendants accrued*, it is now necessary to determine to what date the provisions of § 55–2–15 *tolled the governing statute of limitations.*" (emphasis added)); *Cart v. Marcum*, 188 W. Va. 241, 243–44, 423 S.E.2d 644, 646–47 (1992) (noting that "[t]he statute of limitations ordinarily begins to run *when the right to bring an action for personal injuries accrues which is when the injury is inflicted*," but recognizing tolling). Regardless, the statute of limitations for abating the pending public nuisance in this case has not started to run because the public nuisance has not been abated. *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 200 W.Va. 221, 488 S.E.2d 901 (1997).

[42] Black's Law Dictionary (11th ed. 2019) ("The term 'accrue' in the context of a cause of action means to arrive, to commence, to come into existence, or to become a present enforceable demand or right.") (internal quotation omitted)); *Cone v. Hankook Tire Co., Ltd.*, No. 14-1122, 2016 WL 7383731, at *3 (W.D. Tenn. Dec. 20, 2016) (quoting *Black's, supra*); *Cooey v. Strickland,* 479 F.3d 412, 419 (6th Cir. 2007) (cause of action accrues "when the wrongful act or omission results in damages"); *Fujimaki v. Ichikawa,* No. 324173, 2015 WL 7288054, at *3 (Mich. Ct. App. Nov. 17, 2015) (claim accrues when "all the elements of the claim have occurred").

11

Defendants repeatedly engaged in unlawful and wrongful conduct which unreasonably interfered with and had a substantial impact upon the public health of the City of Huntington and Cabell County.[43] Defendants' conduct that gave rise to the opioid epidemic first created an actionable public nuisance well before May 25, 2015.[44]

The 2015 Act is not retroactive. It explicitly applies only to causes of action which accrue on or after May 25, 2015. Because Plaintiffs' nuisance claims first arose prior to May 25, 2015, the 2015 Act is not applicable in this case and the Defendants' notices of non-party fault should be struck.

## CONCLUSION

For all the reasons set forth, the Court should grant Plaintiffs' Motion to Strike Defendants' Notices of Non-Party Fault.

Dated: March 13, 2020                              Respectfully submitted,

---

[43] *See* Cabell County Commission and the City of Huntington's Corrected Joint and Third Amended Complaint, filed on 9/16/19 (Doc # 2613) at ¶¶ 20, 31, 34, 131, 137, 144, 164, 166, 167, 168, 169, 682, 691, 807-810, 828, 839, 886, 900, 901-903, 920, 922-923, 949, 959, 965, 980-981, 1077-1084, 1149-1153, 1156-1157, 1172, 1179, 1184, 1185, 1194, and 1196.

[44] *See* Doc # 2613 at ¶¶ 710 -713, 764, 766-768, 774, 778, 789, 792, 798, 799, 811-813, 816-820, 825, 829-835, 840-845, 849-860, 865-884, 887-899, 904-918, 924-947, 950-955, 960-963, 967-978, 982-987, 1059-1067, 1068-1074, 1075-1076, 1114-1124, 1411-1423, 1430, 1432-1433, and 1435-1450.

| THE CITY OF HUNTINGTON | CABELL COUNTY COMMISSION |
|---|---|
| /s/ *Anne McGinness Kearse* | /s/ *Paul T. Farrell, Jr.* |
| Anne McGinness Kearse (WVSB No. 12547)<br>Joseph F. Rice<br>**MOTLEY RICE LLC**<br>28 Bridgeside Blvd.<br>Mount Pleasant, SC 29464<br>Tel: 843-216-9000<br>Fax: 843-216-9450<br>akearse@motleyrice.com<br>jrice@motleyrice.com | Paul T. Farrell, Jr. (WVSB Bar No. 7443)<br>**FARRELL LAW**<br>422 Ninth Street, 3rd Floor (25701)<br>PO Box 1180<br>Huntington, West Virginia 25714-1180<br>Mobile: 304-654-8281<br>paul@farrell.law |
| Linda Singer<br>David I. Ackerman<br>**MOTLEY RICE LLC**<br>401 9th Street NW, Suite 1001<br>Washington, DC 20004<br>Tel:  202-232-5504<br>Fax:  202-386-9622<br>lsinger@motleyrice.com<br>dackerman@motleyrice.com | /s/ *Anthony J. Majestro*<br>Anthony J. Majestro (WVSB No. 5165)<br>**POWELL & MAJESTRO, PLLC**<br>405 Capitol Street, Suite P-1200<br>Charleston, WV 25301<br>304-346-2889 / 304-346-2895 (f)<br>amajestro@powellmajestro.com |
| Charles R. "Rusty" Webb (WVSB No. 4782)<br>**THE WEBB LAW CENTRE, PLLC**<br>716 Lee Street, East<br>Charleston, West Virginia 25301<br>Telephone: (304) 344-9322<br>Facsimile: (304) 344-1157<br>rusty@rustywebb.com | Michael A. Woelfel (WVSB No. 4106)<br>**WOELFEL AND WOELFEL, LLP**<br>801 Eighth Street<br>Huntington, West Virginia 25701<br>Tel. 304.522.6249<br>Fax. 304.522.9282<br>mikewoelfel3@gmail.com |

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2020, a copy of the foregoing **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE DEFENDANTS' NOTICES OF NON-PARTY FAULT** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Anthony J. Majestro
Anthony J. Majestro (WVSB 5165)
