IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

THE CITY OF HUNTINGTON,
    Plaintiff,

v.                                                  CIVIL ACTION NO. 3:17-01362

AMERISOURCEBERGEN
DRUG CORPORATION, et al.,
    Defendants.

CABELL COUNTY COMMISSION,
    Plaintiff,

v.                                                    CIVIL ACTION NO. 3:17-01665

AMERISOURCEBERGEN
DRUG CORPORATION, et al.,
    Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
AMERISOURCEBERGEN DRUG CORPORATION'S
MOTION FOR SUMMARY JUDGMENT BASED ON *RES JUDICATA***

### I.    INTRODUCTION

    AmerisourceBergen Drug Corporation respectfully requests the Court grant its Motion for Summary Judgment based on the doctrine of *res judicata,* which precludes re-litigation of (i) the same or similar claims (ii) by a party in privity (iii) where there has been a final adjudication on the merits of the prior claims. Plaintiffs—political subdivisions of the State—assert the very same claims made by the State in its 2012 lawsuit, which ended with a final order dismissing the lawsuit

with prejudice. And, for this reason, all of the prerequisites for the application of *res judicata* are met here.

## II. BACKGROUND

On June 26, 2012, the State of West Virginia, acting in its *parens patriae* capacity, filed suit in the Circuit Court of Boone County, West Virginia against AmerisourceBergen Drug Corporation ("ABDC") and ten other wholesale pharmaceutical distributors, alleging they should have flagged and stopped shipment of large pharmacy orders that were the result of doctors' purportedly over-prescribed opiate-based medications.[1] The State's lawsuit sought to protect "West Virginia communities by enjoining Defendants from distributing controlled substances without sufficient monitoring and controls…to prevent the creation of…Pill Mills." *See* Ex. A, State's Second Amended Compl. ¶ 7. Count IV of the State's Second Amended Complaint alleged that "the public nuisance … affects West Virginia communities and the state, and endangers the public health and safety and inconveniences the citizens of the State" by increasing expenditure of public resources by hospitals, police departments, local prosecutors' offices, courts, jails and prisons. *See* Ex. A, State's Second Amended Compl. ¶ 51.

On January 9, 2017, the State settled its lawsuit against ABDC and executed a Settlement Agreement and Release ("Settlement and Release") on behalf of "each and every" State agency, department, and instrumentality, including "any agency, person, or other entity claiming by or through them or any of them." *See* Ex. B, Settlement and Release 5. In settling the case against ABDC, the State acted expressly "to protect West Virginia ***communities***, as well as the health and

---

[1] Complaint, *State ex rel. Morrisey v. AmerisourceBergen Drug Corporation*, No. 12-C-141 (W.Va. Cir. Ct. Boone Cnty. June 26, 2012) ("State Compl."). The Complaint was amended twice. *See* Second Amended Complaint at Ex. A. ("State's Second Amended Compl.").

well-being—both physical and economic—of its ***residents in general***."[2] *See* Ex. B, Settlement and Release 2, Recital E (emphasis added). The Settlement and Release further provided for the release of "any and all claims . . . and causes of action whatsoever, known and unknown, foreseen, unforeseen, or unforeseeable, which the State has asserted or could have asserted on its own behalf or in its *parens patriae* capacity…." Ex. B, Settlement and Release 5–6. ABDC has always disputed liability regarding the State's claims, and those, such as Plaintiffs, that followed. Ex. B, Settlement and Release 4, Recital P–Q.

Despite the breadth of the State's lawsuit and the equally broad release, in 2017, the Cabell County Commission and the City of Huntington ("Plaintiffs") filed suits against ABDC (and others) asserting the same claims for public nuisance as the State had asserted in the earlier action. *See, e.g.*, Doc. # 194 (Third Amended Compl., City of Huntington, First Claim for Relief, ¶¶ 1401-1450). Likewise, Plaintiffs sought the same relief—abatement of the public nuisance, the recovery of public expenditures, etc.—as the State did in its suit against ABDC. *Id.* at 467–68, ¶ 1603.

### III. STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. Rule 56(a).

### IV. ARGUMENT

As early as 2001, West Virginia filed suit against the manufacturer of OxyContin, alleging that it had engaged in deceptive marketing practices that encouraged doctors to over-prescribe the drug. The State settled that lawsuit in 2004.[3] In 2012, West Virginia sued ABDC and other

---

[2] This language can be found verbatim in the United States Supreme Court's seminal case on *parens patriae*. *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 607 (1982).
[3] *See* https://www.nytimes.com/2004/11/06/business/maker-of-oxycontin-reaches-settlement-with-west-virginia.html (last accessed March 12, 2020).

3

wholesale distributors, alleging that they failed to meet their obligations under federal and state law with respect to the distribution of opioids throughout West Virginia. The State settled its lawsuit against ABDC in 2017. In settling on behalf of its citizens by suing in its *parens patriae*,[4] as well as its own, capacity, the State stepped into the shoes of its citizens and their local communities to recover significant damages on their behalf, which the State then directed to be placed into a fund to be used to address opiate addiction throughout West Virginia. *See* W. Va. Code § 16-53-2 (2020).

In light of the State's 2017 Settlement and Release, Plaintiffs' claims are barred by the doctrine of *res judicata*. Plaintiffs' lawsuit fits squarely into *res judicata*'s three criteria: (1) the settlement and the accompanying dismissal with prejudice of the State's lawsuit was a final adjudication on the merits; (2) Plaintiffs have asserted identical public nuisance claims; and (3) Plaintiffs share substantially similar interests with the State because their injuries (increased public expenditures for medical care and services) all derive from the personal injuries (i.e., addiction) of the Plaintiffs' residents, whose claims the State settled.

### A. THE PLAINTIFFS' PUBLIC NUSIANCE CLAIMS ARE BARRED BY THE DOCTRINE OF *RES JUDICATA*.

*Res judicata* will bar the subsequent litigation of a lawsuit when (1) there was a final adjudication on the merits in a prior action; (2) the two actions must involve identical parties or persons in privity with those same parties; and (3) the cause of action central to resolution of the subsequent proceeding "must be identical to the cause of action determined in the proper action or must be such that it could have been resolved, had it been presented, in the prior action." *Beahm v. 7 Eleven, Inc.*, 223 W. Va. 269, 273, 672 S.E.2d 598, 602 (W. Va. 2008) (per curiam) (quoting

---

[4] In his September 8, 2015 Order, Judge Thompson concluded that the State had standing to bring its claims "by its *parens patriae* authority." *State ex rel. Morrisey v. AmerisourceBergen Drug Corp.*, No. 12-C-141, 2015 WL 13713593, at *8 (W. Va. Cir. Ct. Sept 8, 2015).

4

Syl. Pt. 4, *Blake v. Charleston Area Medical Ctr., Inc.*, 201 W. Va. 469, 498 S.E.2d 41 (W. Va. 1997). Plaintiffs' public nuisance claims alleged against ABDC satisfies all three elements. Accordingly, West Virginia law compels dismissal of Plaintiffs' public nuisance claims.

### 1. The City of Huntington and the Cabell County Commission, in their Third Amended Complaint, allege identical causes of action against AmerisourceBergen.

In its case, the State alleged that Defendants "created and continue to perpetrate and maintain a public nuisance by the massive distribution of abused prescription drugs for use by the citizens of West Virginia." Ex. A, State's Second Amended Compl. 56, ¶ 43. Further, the State alleged, Defendants "interfered with the right of West Virginians to be free from unwarranted injuries, addictions, diseases and sickness." *Id.* at 56, ¶ 44.

The State also averred that Defendants "have caused ongoing damage, hurt or inconvenience to the State of West Virginia and its residents" now "exposed to the risk of addiction to prescription drugs, who have become addicted, and/or have suffered other adverse consequences from the use of the addictive prescription drugs distributed by Defendants, and countless others who will suffer the same fate in the future as Defendants' conduct is continuing." *Id.* The Complaint further alleged Defendants "have caused ongoing damage, hurt or inconvenience to the public health, the public safety and the general welfare of the citizens of West Virginia." *Id.* at 56, ¶ 45.

Finally, the State alleged that the public nuisance "affects West Virginia communities and the State, and endangers the public health and safety and inconveniences the citizens of the State, *inter alia*, in the following ways:"

- Areas in certain communities have become congested with persons who gather in large groups outside of "clinics, pharmacies and physician offices" that in fact are component parts of Pill Mills that exist only to prescribe and deliver drugs for illicit, non-medical purposes;

5

- Crimes and other dangerous activities have increased;

- Hospital services, especially those services provided by emergency rooms, are being consumed by persons with prescription drug abuse issues;

- Law enforcement and prosecutorial resources are being exhausted and consumed by having to address prescription drug abuse issues to the exclusion of other matters;

- Public resources are being unreasonably consumed in efforts to address the prescription drug abuse epidemic, thereby eliminating available resources which could be used to benefit the public at large;

- Court dockets are congested by prescription drug-related cases as well as by crimes committed by addicts, thereby diminishing access to our court by others;

- Jails and prisons suffering from overcrowding.

*Id.* at 58, ¶ 51. The State alleged that "the public nuisance described herein has damaged the health and safety of West Virginia citizens in the past and will continue to do so in the future unless the nuisance is abated." *Id.* at 58, ¶ 52.

Plaintiffs' Complaint asserts public nuisance claims identical to those the State asserted and settled. *Compare*, Compl., Doc. #194, 423–33, ¶¶ 1401–1450, *with* Ex. A, State's Second Amended Compl. 56–58, ¶¶ 42–53. Like the State, Plaintiffs allege that they have incurred "significant expenses for police, emergency, health, prosecution, corrections, rehabilitation, and other services" related to the public nuisance allegedly created by ABDC's conduct. *Id.* at 431, ¶ 1437.

Any attempt by Plaintiffs to argue that the alleged actions by ABDC on which the State premised its case are different from their own allegations is a distinction without a difference. The alleged conduct central to both the State and Plaintiffs' claims are virtually identical. As the Court stated in *Beahm*, claims "are virtually identical" when they "could have been resolved in the [first] action, had they been raised," as "they arose out of the same core of operative facts as all other claims." *Beahm*, 223 W.Va. at 275, 672 S.E.2d at 604–05. Plaintiffs' claims are closely tied to

6

4850-9788-6391.v1

and seek to protect the same interest as those already litigated and settled by the State. The interests—that the public health nuisance be abated for the benefit of the citizens of West Virginia—is foundational to *both* the State and Plaintiffs' complaints and, the resolution of the State's claims should bar Plaintiffs' public nuisance claim in this action.[5]

### 2. A Final Adjudication on the Merits was Reached in the Prior Action, Which Released AmerisourceBergen From All Claims, Including the State's Claims for Public Nuisance.

In West Virginia, settlement agreements and consent decrees are final judgments for purposes of conducting a *res judicata* claim preclusion analysis.[6] Here, the State settled its case with ABDC by executing the January 9, 2017 Settlement and Release. A final order of dismissal with prejudice issued by the Court on the same day. Ex. C, Order of Dismissal. The settlement— which included all claims "the State has asserted or could have asserted on its own behalf or in its *parens patriae* capacity that the State now has or may have in the future" against ABDC—operates

---

[5] Section 16-3-6 of the West Virginia Code states as follows:

> The state director of health or any county or municipal health officer shall inquire into and investigate all nuisances affecting the public health within his jurisdiction; and the said director or any such officer or the county commission of any county or any municipality is authorized and empowered to apply to the circuit court of the county in which any such nuisance exists, or to the judge thereof in vacation, for an injunction forthwith to restrain, prevent or abate such nuisance.

W.V. Code § 16-3-6. In this litigation, Plaintiffs take the position that Section 16-3-6 has no application here because it is limited to nuisances relating to infectious or communicable diseases. *See Plaintiff Cabell County Commission's Omnibus Memorandum in Opposition* at n.12, *In re: Nat'l Prescription Opiate Lit.*, 2018 WL 3617018 (N.D. Ohio July 9, 2018 ("[Section 16-3-6]" is part of the article giving public health officials authority over communicable diseases, and, as such it is not applicable to this case."). For this and other reasons, ABDC does not disagree with Plaintiffs' position on this. However, assuming, arguendo, Section 16-3-6 had any application, Plaintiffs have also acknowledged that it grants the WVDHHR authority to abate public nuisances thereunder. *See Plaintiff Cabell County Commission's Memorandum in Opposition to Cardinal Health, Inc.'s Motion to Dismiss* at 8 n.14, *In re: Nat'l Prescription Opiate Lit.*, Doc. 728 ("W.Va. Code § 16-3-6 does empower [the] state director of health or any county or municipal health officer to seek abatement of nuisances impacting public health, but the authority granted by that provision is limited to nuisances [for] infectious diseases which is the sole subject of Article 3."). Thus, even assuming Section 16-3-6 applied, the prior State settlement, which also included the WVDHHR as a signatory party, is preclusive.

[6] *See Porter v. McPherson*, 198 W.Va. 158, 166, 479 S.E.2d 668, 676 (W. Va. 1996) (conducting *res judicata* analysis involving a settlement agreement for an underlying tort, ultimately denying claim preclusion on the third prong, which requires that the subsequent suit be based on the same cause of action); *Rowe v. Grapevine Corp.*, 206 W. Va. 703, 714, 527 S.E.2d 814, 825 (W. Va. 1999) ("It is well-settled that resolution of an action based on a consent decree is a final judgment on the merits for purposes of res judicata.").

7

as an adjudication on the merits and, as a result, satisfies the "final adjudication" prong of the *res judicata* analysis. *See* Ex. B Settlement and Release 6.

### 3. The City of Huntington and the Cabell County Commission are in privity with the Plaintiffs in the WV Attorney General case.

Plaintiffs are in privity with the State because their interests are substantially the same, and the State released its *parens patriae* claims on behalf of its citizens and their communities. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 600 (1982) (State claims under *parens patriae* authority seek to protect "interest in the health and well-being—both physical and economic—of its residents in general.").

The law is clear that "[a] plaintiff cannot escape the application of *res judicata* … simply because [it] was not formally joined as a party in the prior litigation." *Beahm*, 223 W.Va. at 272, 672 S.E. 2d at 602. The law, instead, looks to the relationship of the parties allegedly in privity and asks whether they have a "mutual … relationship to the same rights of property." *Id.* (quoting *W. Va. Human Rights Comm'n v. Esquire Grp., Inc.*, 217 W.Va. 454, 460, 618 S.E.2d 463, 469 (2005) (per curiam) (quoting *Cater v. Taylor*, 120 W.Va. 93, 196 S.E. 558, 558 (1938)).

On January 9, 2017, the State released all claims it had "asserted or could have asserted on its own behalf or in its *parens patriae* capacity." Ex. B, Settlement and Release 6. The State asserted that the lawsuit was brought "in order "to protect West Virginia communities," and "the health and well-being . . . of its residents in general." Ex. B, Settlement and Release 2, Recitals C–E. The State's release was broad—including any and all claims that "the State now or may have in the future against [ABDC] growing out of, or relating to, or concerning" the State's lawsuit, *id.*, and the State's release was on behalf "of each and every one of its departments, agencies, divisions, boards, commissions, and instrumentalities of any kind, and any person in their official capacity elected or appointed to serve the State, its attorneys, and by any agency, person, or other

8

entity claiming by or through them or any of them . . . ." *Id.* at 5. As result of the release, the State necessarily released any claim that could be brought for the benefit of West Virginia's citizens and communities.

The very nature of a *parens patriae* lawsuit establishes privity here. The "prerogative of *parens patriae* is inherent in the supreme power of every State" and is "often necessary to be exercised in the interests of humanity. . . ." *Alfred L. Snapp*, 458 U.S. at 600. Fundamentally, a State's right to proceed in its *parens patriae* capacity arises from "a set of interests that the State has in the well-being of ***its populace***." *Id.* at 602 (emphasis added). The United States Supreme Court, in *Alfred*, made it clear that a State's interest in a *parens patriae* claim is distinct from its own interests as a sovereign. *Id.*

A plaintiff who was not a party to the prior judgment is bound by a prior judgment if it has a "legal relationship that is derivative from one who was a party" to the prior judgment "independent of the litigation leading to the judgment." Restatement (Second) of Judgments, *Introduction* 1 (1982). Such a derivative relationship exists where a public official, such as an Attorney General, "ha[s] authority to maintain … litigation on behalf of individuals or a collective public interest." *Id.* § 41, cmt. d. Accordingly, "[w]here the interest to be protected is one held by members of the public at large, an action by a public official [o]n behalf of that interest" is "preemptive of" constituents' remedies such that "preclusive effect[]" is "given to a judgment in an action involving the official." *Id.* § 41, reporter's note on cmt. d.

Courts have found that claims brought by a state and settled of behalf of its citizens, such as an action under the authority of *parens patriae*, are conclusive judgments with respect to identical claims that could be brought on behalf of those same citizens. *See, e.g.*, *U.S. v. Olin Corp.*, 606 F. Supp. 1301 (N.D. Ala. 1985) (barring subsequent citizens' claims to abate public

9

nuisance under the doctrine of *res judicata*, following a settlement that involved the release of the State of Alabama's *parens patriae* claims against a chemical manufacturer).

*Olin Corporation* perfectly illustrates the point. There, the State of Alabama and the United States, under their *parens patriae* authority, sought injunctive relief against the Olin Corporation, a chemical manufacturer, alleging that Olin Corporation caused DDT to pollute the water and wildlife of several nearby watersheds. *Olin Corp.*, 606 F. Supp. at 1303. The United States and Alabama subsequently settled its claims with Olin Corporation. *Id.* The United States District Court for the Northern District of Alabama held that the agreement between the United States, the State of Alabama, and Olin Corporation barred any subsequent lawsuit brought by private citizens. *Id.* at 1304. As the Court explained: "The weight of authority indicates that once a state represents all of its citizens in a *parens patriae* suit, a consent decree or final judgment entered in such a suit is conclusive upon those citizens and is binding upon their rights." *Id.* at 1304; *see also E.P.A. v. City of Green Forest, Ark*, 921 F.2d 1394, 1403–05 (8th Cir. 1990) (*res judicata* barred a private enforcement action where EPA had concluded by consent decree a government enforcement action involving the same subject matter); *St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Ref, L.L.C.*, 500 F. Supp. 2d 592, 604 (E.D. La. 2007)[7] ("When either a state or federal government asserts *parens patriae* authority, courts have held that 'it can bind the citizens of a state as privies for *res judicata* purposes.'") (quoting *N.Y.C. v. Beretta USA*, 315 F. Supp. 2d 256, 265 (E.D.N.Y. 2004)), *opinion adhered to as modified on denial of reconsideration*, 2007 WL 3256463 (E.D. La. Nov. 5, 2007).[8]

---

[7] In the context of the Clean Water Act, the courts have found that the *res judicata and parens patriae* doctrines bar an enforcement action by private citizens even where the government's enforcement action was the later-filed case. *Sierra Club v. Two Elk Generation Partners, L.P.*, 646 F.3d 1258 (10th Cir. 2011); *Green Forest*, 921 F.2d at 1403–05; *St. Bernard Citizens*, 500 F. Supp. 2d at 604.

[8] *See also In re Methyl Tertiary Butyl Ether (MTBE) Product Liability Litigation*, 46 F. Supp. 3d 440 (S.D.N.Y. 2014) Although not expressly a *parens patriae* case, *MTBE Products Liability Litigation* is instructive. There, the Orange County District Attorney's settled two civil actions, which were brought on behalf of the State of California, alleging

10

Similarly, the State of West Virginia, in bringing a lawsuit in its *parens patriae* capacity, as well as its own capacity, acted on behalf of the general welfare of its citizens and the local communities in which they reside. The State's authority to respond to a public health emergency should remain primary to government subdivisions. *See* Syl. Pt. 5, *City of Huntington v. State Water Commission*, 137 W. Va. 786, 73 S.E.2d 833 (W. Va. 1953). ("Public health is a matter of statewide rather than local or municipal interest or concern and in the regulation of public health the power of the state is supreme.").

The relief sought by the State—abatement of a public nuisance—is the same cause of action asserted by Plaintiffs and sought to address the same public harm that Plaintiffs seeks to redress here. Plaintiffs' claims are a subset of the State's *parens patriae* claims, and are wholly derivative of the claims the State previously settled. Accordingly, the claims asserted by the State were settled and released, any subsequent claims that attempt to assert claims on behalf of its citizens—no matter how Plaintiffs attempt restyle its claims as to the allegedly unique harm they experienced—are efforts to assert the same right already litigated and settled by the State, and thus, are barred.

To be sure, one court—outside West Virginia and applying different state law—has declined to extend *res judicata* to actions by county or municipal entities. *See City of New York v.*

---

that defendants BP Products North American, Inc. ("BP") and Shell Oil Company ("Shell") were responsible for an unauthorized release of MTBE gasoline from underground storage tanks. *In re MTBE*, 46 F. Supp. 3d at 443. The District Attorney entered into a settlement agreement and release with BP and Shell, releasing its claims against the companies, including "a release from any known or unknown past or present claims, violations, or causes of action that were or could have been asserted. . . ." *Id.* at 444. Following the settlement, the Orange County Water District ("District") filed its own claims, alleging that the District "suffered injury by having to 'expend funds to investigate, clean up, abate, and/or remediate the MTBE ... contamination caused by the Defendants'" *Id.* at 445 (internal citation omitted). The Southern District of New York held that such claims were precluded by *res judicata* as the claims brought by the District Attorney were brought on behalf of the citizens of California, and that because the District's claims were "essentially the same cause of action," it could not escape *res judicata* simply by restyling the claims in a separate action. *Id.* at 449. The court further stated that privity existed because both parties were acting on behalf of the public to enforce the same primary right. *Id.* at 450.

11

*Beretta*, 315 F. Supp. 2d 256 (E.D.N.Y. 2004) (finding that that "privity does not exist" where "the claims of two overlapping governmental entities are involved."). But the court in *Beretta* explicitly stated that its "decision not to find the City in privity with the State is confined to the circumstances of [that particular] case" and "does not stand for the proposition that the City may bring suit any time the State has not prevailed on a similar claim." *Id.* at 274.

Moreover, the circumstances of *Beretta* are readily distinguishable from this case. New York City's interest in controlling gun violence were distinct from the State's in that the City had "promulgated[d] a layer of firearms regulation on top of the framework established by the State." *Id.* at 273. By contrast, Plaintiffs here have not adopted their own regulatory framework governing controlled substances generally, or opioids specifically, nor are they authorized to do so.[9]

Ultimately, Plaintiffs' public nuisance claims are controlled by the principle that "[i]n a proper *parens patriae* action, a state is deemed to represent all of its citizens." *Olin Corp.*, 606 F. Supp. 2d at 1305. Common sense dictates that any given public nuisance can only be abated once. The public has only one collective right/interest in seeing a particular public nuisance abated. The State, acting in its *parens patriae* capacity, vindicated that interest once and for all when it executed the Settlement and Release with ABDC. All further suits seeking to vindicate that same interest are barred.

## V. CONCLUSION

For the reasons set forth above, ABDC respectfully requests the Court to grant its Motion for Summary Judgment and dismiss Plaintiffs' remaining claims alleged against ABDC.

---

[9] The West Virginia Controlled Substances Act ("WVCSA") vests exclusive authority with the State Board of Pharmacy ("BOP") to regulate the wholesale distribution of controlled substances within the State and to file suit to enforce the same. *See* W. Va. Code § 60A-2-201(a) (vesting the BOP with authority to "administer [its] provisions"); *see also* W.Va. Code § 60A-8-10 ("Complaints arising under any provision" of the relevant WVCSA article "shall be handled" pursuant to procedures set forth in the statute) (emphasis added).

12

Dated:  March 13, 2020

                                      Respectfully submitted,

*AmerisourceBergen Drug Corporation*
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

13

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

THE CITY OF HUNTINGTON,
    Plaintiff,

v.                               CIVIL ACTION NO. 3:17-01362

AMERISOURCEBERGEN
DRUG CORPORATION, et al.,
    Defendants.

---

CABELL COUNTY COMMISSION,
    Plaintiff,

v.                               CIVIL ACTION NO. 3:17-01665

AMERISOURCEBERGEN
DRUG CORPORATION, et al.,
    Defendants.

---

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on this 13th day of March, 2020, the foregoing ***Memorandum of Law in Support of AmerisourceBergen Drug Corporation's Motion for Summary Judgment Based on Res Judicata*** was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

                                                              */s/ Gretchen M. Callas*
                                                              Gretchen M. Callas (WVSB # 7136)