# EXHIBIT 1

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

IN RE: OPIOID LITIGATION.,  Civil Action No.  19-C-9000

## MASS LITIGATION PANEL

**Alan D. Moats - Lead Presiding Judge**
**Derek C. Swope - Presiding Judge**
**Joanna I. Tabit, Lead Resolution Judge**
**Jay M. Hoke, Resolution Judge**
**Debra Scudiere, Resolution Judge**

## HEARING

BEFORE:  The Honorable Alan D. Moats, Lead Presiding Judge, the Honorable Derek C. Swope, Presiding Judge, the Honorable Joanna I. Tabit, Lead Resolution Judge, the Honorable Jay M. Hoke, Resolution Judge, and the Honorable Debra Scudiere, Resolution Judge,  in the Kanawha County Courthouse, Ceremonial Courtroom, Charleston, Kanawha County, West Virginia, at 10:04 a.m., on the 6th day of December, 2019.

APPEARANCES:  **CLAYTON J. FITZSIMMONS, Attorney at Law**
Fitzsimmons Law Firm PLLC
1600 Warwood Avenue
Wheeling, West Virginia 26003

and

Donna Miller-Mairs, Certified Court Reporter
7724 Sissonville Drive, Sissonville, West Virginia 25320
304-988-9581

APPEARANCES:   (Continued)

**HUNTER SHKOLNIK, Attorney at Law**
**JOSEPH L. CIACCIO, Attorney at Law**
Napoli Shkolnik, LLP
360 Lexington Avenue, Eleventh Floor
New York, New York  10118

and

**LISA F. FORD, Attorney at Law**
**217 East Main Street**
**Clarksburg, West Virginia  26301**
  Counsel for Plaintiffs

**ANNE MCGINNIS KEARSE, Attorney at Law**
112 Capitol Street, Suite 200
Charleston, West Virginia  25301
  Counsel for Plaintiffs Clarksburg, Richwood, City of Nitro,
  South Charleston, WJ Springs, Bell

**STEPHEN B. FARMER, Attorney at Law**
Farmer, Cline & Campbell, PLLC
746 Myrtle Road
Post Office Box 3842
Charleston, West Virginia 25338

and

**JOHN W. "DON" BARRETT, Attorney at Law**
Barrett Law Group, P.A.
404 Court Square North
Lexington, Mississippi 39095

and

**LETITIA N. CHAFIN, Attorney at Law**
The Chafin Law Firm
Post Office Box 1799
Williamson, West Virginia 25661

and

APPEARANCES:        (Continued)

**MARK TROY, Attorney at Law**
Troy Law Firm
222 Capitol Street, Suite 200 A
Charleston, West Virginia 25301
  Counsel for Plaintiffs Camden-Clark Memorial Hospital
  Corporation, The Charles Town General Hospital, City Hospital,
  Inc., Grant Memorial Hospital, Potomac Valley Hospital of
  W.Va., Inc., Reynolds Memorial Hospital, Inc., St. Joseph's
  Hospital of Buckhannon, Inc., West Virginia United Health
  System and Williamson Memorial Hospital, LLC

**JAMES D. YOUNG, Attorney at Law**
Morgan & Morgan Complex Litigation Group
76 South Laura Street, Suite 1100
Jacksonville, Florida 32202
  Counsel for Plaintiffs, The County Commission of Mason
  County, et al and Mayor Peggy Knotts Barney on behalf of City of
  Grafton and Mayor Philip Bowers on Behalf of City of Philippi

**ROBERT L. WHITE, Attorney at Law**
5605 Starling Drive
Charleston, West Virginia 25306
  Counsel for Mid-Ohio Valley 13 Plaintiffs

**ERIC J. HOLMES, Attorney at Law**
Law Offices of Harris & Holmes, PLLC
115 North Church Street
Ripley, West Virginia 25271
  Counsel for Plaintiffs 19-C-96 through 19-C-108

**VAUGHN T. SIZEMORE, Deputy Attorney General**
Consumer Protection Division
812 Quarrier Street, First Floor
Charleston, West Virginia 25301
  Counsel for State of West Virginia ex Rel Patrick Morrisey,
  Attorney General

**WILLIAM R. SLICER, Attorney at Law**
Shuman, McCuskey & Slicer, PLLC
1411 Virginia Street East, Suite 200
Post Office Box 3953
Charleston, West Virginia  25339

       and

**JOHN A. McCAULEY, Attorney at Law**
2 Hopkins Plaza
Baltimore, Maryland  21201
  Counsel for Abbott

APPEARANCES:     (Continued)

**ANA M. FRANCISCO, Attorney at Law**
Foley & Lardner LLP
111 Huntington Avenue, Suite 2500
Boston, Massachusetts  02199-7610
  Counsel for Anda, Inc.

**KEITH A. JONES**, Attorney at Law
**STEVEN LUXTON, Attorney at Law**
Jones Law Group, PLLC
Post Office Box 13395
Charleston, West Virginia 25360
  Counsel for Actavis, LLC, Actavis Pharma, Inc., Watson Pharma,
  Inc., Watson Laboratories, Inc., Teva Pharmaceuticals USA, Inc.,
  Cephalon, Inc, Teva Pharmaceuticals Industries Ltd., Inc. and
  Anda, Inc.

**PATRICIA M. BELLO, Attorney at Law**
Lewis Brisbois Bisgaard & Smith LLP
222 Capitol Street, Fifth Floor
Charleston, West Virginia 25301

                     and

**DONNA WELCH, Attorney at Law**
Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
  Counsel for Defendants Allergan Finance, LLC f/k/a/ Allergan,
  Inc. f/k/a Watson Pharmaceuticals

**CHRISTOPHER D. PENCE, Attorney at Law**
Hardy Pence PLLC
10 Hale Street, Fourth Floor
Charleston, West Virginia 25301

                     and

**SARAH BENOIT, Attorney at Law**
Ulmer & Berne LLP
65 East State Street, Suite 1100
Columbus, Ohio 43215-4213
  Counsel for Amneal Pharmaceuticals LLC

**WILLIAM A. HAHN, Attorney at Law**
Barnes & Thornburg, LLP
11 South Meridian Street
Indianapolis, Indiana 42604
  Counsel for Defendant AmerisourceBergen Drug Corporation in
  action by Ohio County Commission and H.D. Smith LLC f/k/a
  H.D. Smith Wholesale Drug Co.

APPEARANCES:        (Continued)

**ALVIN L. EMCH, Attorney at Law**
Jackson Kelly PLLC
500 Lee Street, Suite 1600
Charleston, West Virginia 25322
  Counsel for Defendant AmerisourceBergen Drug Corporation in
  actions by Brooke, Hancock, Harrison, Lewis, Marshall, Tyler
  and Wetzel County Commission

**STEVEN R. RUBY, Attorney at Law**
Bailey & Glasser, LLP
200 Capitol Street
Charleston, West Virginia 25301
  Counsel for Defendant Cardinal Health, Inc.

**CARTE P. GOODWIN, Attorney at Law**
**ALEX J. ZURBUCH, Attorney at Law**
Frost Brown Todd LLC
500 Virginia Street East, Suite 1100
Charleston, West Virginia 25301

            and

**TODD A. MOUNT, Attorney at Law**
Shaffer & Shaffer
Post Office Box 38
Madison, West Virginia 25130
  Counsel for Defendant CVS Indiana, L.L.C.

**ERIK W. LEGG, Attorney at Law**
Farrell, White & Legg PLLC
The Farrell Building
914 Fifth Avenue
Post Office Box 6457
Huntington, West Virginia 25772

            and

**DAVID HIBEY, Attorney at Law**
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Avenue NW
Washington, DC 20001-3743
  Counsel for Endo Health Solutions Inc. And Endo
  Pharmaceuticals, Inc.

**JON "J. H." MAHANEY, Attorney at Law**
Dinsmore
611 Third Avenue
Huntington, West Virginia 25701
  Counsel for Fruth Pharmacy

APPEARANCES:        (Continued)

**RHONDA L. HARVEY, Attorney at Law**
**FATAL A. SHEER, Attorney at Law**
Bowles Rice LLP
600 Quarrier Street
Charleston, West Virginia 25301
  Counsel for Kroger Limited Partnership II

**JOHN J. MEADOWS, Attorney at Law**
**RUSSELL D. JESSE, Attorney at Law**
Steptoe & Johnson
707 Virginia Street, East
Charleston, West Virginia 25301

                    **and**

**JAMISON H. COOPER, Attorney at Law**
Cooper Law Offices
240 W Main Street
Bridgeport, West Virginia  26330-1749
   Counsel for McKesson Corp.

**STEPHEN D. ANNAND, Attorney at Law**
**KEITH J. GEORGE, Attorney at Law**
Robinson & McElwee, PLLC
700 Virginia Street, Suite 400
Charleston, West Virginia 25301
   Counsel for Defendant Mallinkrodt and SpecGX LLC

**MICHAEL B. HISSAM, Attorney at Law**
Hissam Forman Donovan Ritchie PLLC
707 Virginia Street, East, Suite 260
Charleston, West Virginia 25301

                    and

**REBECCA C. MANDEL, Attorney at Law**
Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004
  Counsel for Defendant Mylan Pharmaceuticals

**LISA FURBEE FORD, Attorney at Law**
Covington & Burling LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956

                    and

APPEARANCES:     (Continued)

**MARC E. WILLIAMS, Attorney at Law**
**MATTIE HUDSON, Attorney at Law**
Nelson, Mullins, Riley & Scarborough, LLP
949 Third Avenue, Suite 200
Huntington, West Virginia 25701

and

**MATTIE F. HUTTON, Attorney at Law**
1625 Eye Street NorthWest
Washington, DC 20006
   Counsel for Defendants Ortho-McNeil-Janssen
   Pharmaceuticals, Inc. n/k/a Janssen Pharmaceuticals, Inc.,
   Janssen Pharmaceutica, Inc. n/k/a Jannssen
   Pharmaceuticals, Inc., Johnson & Johnson

**JON B. ORNDORFF, Attorney at Law**
**KELLY CALDER MOWEN, Attorney at Law**
99 Cracker Barrel Drive, Suite 100
Barboursville, West Virginia  25504
   Counsel for Noramaco, Inc.

**WEBSTER J. ARCENEAUX, III, Attorney at Law**
Lewis Glasser, PLLC
300 Summers Street
Charleston, West Virginia 25326
   Counsel for Rite Aid of Maryland, Inc. and  Rite Aid of West
   Virginia, Inc.

**SARAH A. WALLING, Attorney at Law**
Jenkins Fenstermaker, PLLC
Post Office Box 2688
Huntington, West Virginia 25726
   Counsel for Richard Sackler, M.D.

**NEVA G. LUSK, Attorney at Law**
Spilman Thomas & Battle, PLLC
300 Kanawha Boulevard, East
Charleston, West Virginia 25301

and

**CHRISTOPHER J. LOVRIEN, Attorney at Law**
Jones Day
555 South Flower Street, Fiftieth Floor
Los Angeles, California 90071-2300
   Counsel for Wal-Mart Stores East, LP

APPEARANCES:        (Continued)

**JUSTIN TAYLOR, Attorney at Law**
Bailey & Wyant PLLC
500 Virginia Street, East, Suite 600
Charleston, West Virginia 25337
  Counsel for West Virginia Board of Pharmacy

**RITA MASSIE BISER, Attorney at Law**
Moore & Biser, PLLC
317 Fifth Avenue
South Charleston, West Virginia 25303
  Counsel for Henry Schein, Inc.

```
 1                    P R O C E E D I N G S
 2            JUDGE MOATS:  Good morning.  It is good to
 3    see everyone in such a great mood.  It is Friday.  We
 4    have bar from West Virginia and out of state here.
 5            I appreciate everybody's hard work that you
 6    have done back since September.
 7            I know you-all are waiting with bated breath
 8    to see what we are going to do today.  It depends on
 9    how things go.
10            First of all, I want to reintroduce our Mass
11    Litigation Panel.
12            To my left is Judge Jay Hoke.  He is from the
13    Lincoln and Boone County Circuit, and he is going to
14    be on the resolution part of the panel.
15            Next to him is our newest member of our Mass
16    Litigation Panel, Judge Debra Scudiere.  Judge
17    Scudiere is in Monongalia County, and she took the
18    bench back in --
19            JUDGE SCUDIERE:   April Fool's Day.
20            JUDGE MOATS:   -- April Fool's Day, she says.
21    She said it.  I didn't.
22            Before she took the bench, she was a long
23    time practicing attorney and recognized as one of the
24    foremost mediators in our state.
```

1          She has been active in every branch of the

2     legal profession and previous State Bar president, and

3     so she is a valuable addition.

4          I assigned her to the resolution side so we

5     can have her mediation skills.

6          Of course, I am Judge Moats.  I am the

7     chairman of our mass litigation panel, and I am the

8     Lead Presiding Judge in this case.

9          To my right is Judge Derek Swope from Mercer

10    county, and he is on the trial side, and he has been

11    here a long time.

12         He and I are very closely aligned as far as

13    talking all the time and working closely together in

14    this litigation.

15         To my far right is Judge Joanna Tabit from

16    here in Kanawha County.  Judge Tabit is the Lead

17    Presiding Resolution Judge in the case.

18         She has had long time experience in mediating

19    prior to becoming a judge and teaches mediation

20    courses.

21         So ordinarily, I told you before, when we do

22    these cases, normally we have an initial status with

23    all five or six or however many of the judges that we

24    have assigned to the case that are going to be

1   involved, and then after that first hearing we

2   normally don't get back together as a whole panel with

3   the two sides.

4           Now this time it is going to be different.

5   Until we actually begin the resolution phase, we are

6   going to continue to meet together because we believe

7   it is critically important in a case of this magnitude

8   and complexity that the resolution judges have full

9   understanding of what is happening, what has happened

10  to give them the extra tools and insight in this as

11  they go forward.

12          So that is why we are continuing to do this

13  in this manner.

14          Then once they start attempting to resolve

15  the case, then we will no longer be meeting and

16  working together.

17          Now as far as what we are going to do here

18  today, a few days ago I signed an order to extend some

19  deadlines pertaining to motions to dismiss.

20          I set some deadlines for the defendants for

21  the day after Christmas, and now yesterday some of the

22  defendants filed motions asking for an extension, and

23  they were quite kind in the way they did it.

24          They talked about the necessity of all the

1    work for today's hearing and getting ready instead of

2    saying, "Listen, Scrooge, what is wrong with you."

3         I just want you to be honest with me.  So I

4    do not want to be called Judge Scrooge.  Your motions

5    are granted, and you may have until January -- I think

6    you asked for the 9th, and that is fine.

7         After thinking about it, I was going to do it

8    anyway.  I already had it on my schedule to do.  I

9    didn't pay much attention, but I went back and looked

10   at it and I saw that I had given you until the 26th.

11        I didn't know if the attorneys here would do

12   it, but I figured some associate would be working hare

13   on Christmas Eve and Christmas night and New Year's

14   Eve or whatever, and I didn't want that.

15        So we will enter those orders to extend that

16   time period and Merry Christmas to one and all.

17        MR. MEADOWS:  Thank you, Your Honor.

18        JUDGE MOATS:   You are welcome.

19        Now in keeping with the holiday season, I

20   hope all of you had a wonderful Thanksgiving.  I hope

21   that you didn't have to spend Thanksgiving evening and

22   Thanksgiving and the day after working on this.

23        I did.  Judge Swope did.  Ms. Fields did, but

24   it didn't stop me from eating Thanksgiving dinner.  So

 1  don't feel sorry for any of us.

 2         When I was eating Thanksgiving dinner, I

 3  really enjoyed it.  We always have big gatherings,

 4  family gatherings, and I love Thanksgiving because it

 5  seems to be a lot easier and more family and friends

 6  oriented and I eat way too much.

 7         So as I was doing that, I recalled back to

 8  when I still had my mother growing up.  My mother

 9  would say, "If you put it on your plate, eat it, and

10  if you don't want it, don't put it on your plate."

11         My grandmother used to tell me and I am sure

12  some of yours did, too, "Your eyes are bigger than

13  your belly."

14         When I was a little kid, I didn't know what

15  she meant by that.  I could not relate to that.  I

16  soon learned.

17         Now what does that have to do with today?

18  Rule 19.  We have read all of your responses, motions,

19  and I recalled back to my mother and my grandmother in

20  eating too much.

21         Looking at Rule 19, I see that there are

22  maybe 251 additional plaintiffs to bring in if we go

23  forward in that manner.

24         This case as I told you at the first hearing

1   is without question the most complex, complicated, and

2   trying matter we have ever dealt with.

3         Judge Polster says the same thing in federal

4   court, and I am sure judges in other states say the

5   same thing.

6         Judge Swope and I talk most every day early

7   in the morning, and we decided we were served an

8   elephant.  I said, "How do you eat an elephant?"  His

9   answer, "One bite at a time."

10         Well, we decided we are willing and we told

11   you we would eat the elephant that was served us, but

12   we decided we are not going to order a second helping.

13         As a result our rule to show cause in our

14   order to bring in all these other parties is

15   rescinded, and so that is the end of that.

16         We will eat it with what we have in front of

17   us.  We will deal with anymore that are filed -- and I

18   don't know if you are aware there were eight more

19   cases filed in the past couple of weeks all dealing

20   with municipalities, and those are in Marshall County.

21         I am sure in good order there will be more

22   and we will deal with those, but we will not be

23   bringing anybody in under Rule 19.

24         So the motion is granted and our order will

```
1   be rescinded.

2            Now along those lines, however, I told you

3   the reason we were looking at that was to try to have

4   a full and complete resolution in this state to all

5   these matters.

6            We have cases pending in federal court.  Some

7   of you-all are in both state court and federal court.

8            We have the huge issue of the federal class

9   settlement negotiating class where all of the towns

10  and counties across this country had until November 22

11  to decide to opt out.

12           We talked about the novelty of that back on

13  September 20th.  That has never been done before, but

14  this kind of case has never occurred here.

15           Now a lot of places have decided to opt out.

16  I saw some article yesterday that said that 98 percent

17  of the parties decided not to opt out, but various

18  parties have decided to opt out.

19           We have both attempted to educate ourselves

20  as much as possible as far as what is happening in the

21  federal MBL for our purposes, and we are aware of what

22  Judge Polster is doing, and what he is doing is

23  nothing less than incredible, what he has been under

24  so far.
```

1          I don't think any of us can understand the

2     extent of the work that he has done over the past

3     couple of years and is still doing.

4          But I found it interesting for him to say

5     what he has done, that the model that was in place is

6     not working and it can't work.

7          So he is going back to the drawing board as

8     he goes forward.

9          We know that he is talking about remanding

10    two cases here in this state, Cabell County and

11    Huntington, back to the Southern District, I assume in

12    Huntington.

13         Under certain terms and conditions, I guess

14    the Plaintiffs are going to have to decide whether

15    they are going to agree.  I have no idea other than

16    what was in that order.

17         However, a few months ago, I guess two or

18    three months ago, I had a case where Jack Smith -- is

19    Jack here?

20         He is on the Defendants hearing committee.  I

21    can't remember.  I think he said he was representing

22    some entity from California, but he offered to come in

23    and be involved to assist and cooperate in our state

24    case if it would be helpful to any of us.

 1          Since then, Paul Farrell Jr., who is one of

 2   the lead counsel in the federal case, has offered the

 3   same -- has put forth, rather, the same offer to come

 4   in and be involved.

 5          So we have talked.  If you-all are willing,

 6   is it possible to attempt to bring before our

 7   resolution panel all the cases, not to do anything to

 8   usurp anything that is in federal court, but I can't

 9   imagine Judge Polster would object to cases settling

10   out. I am sure he would be very happy if that

11   happened.

12          So is it possible for you-all to get together

13   with your federal counterparts and attempt to resolve

14   all of the cases whether they are at the federal level

15   or here at the state level with the entire Mass

16   Litigation Panel process.

17          I would like you to look at that.  I would

18   like you to discuss it.  Mr. Farrell says he is

19   willing to.  I don't know if Jack Smith is on the

20   steering committee.  I don't know who the lead

21   attorney is.  I am sure you-all do.

22          Please consider that and let us know if you

23   are willing to do that.  If you would like to have a

24   status conference somehow to maybe lay some

```
 1   groundwork, we certainly are pulling to that.
 2          Because this is going to be a process and it
 3   is not going to happen overnight.
 4          We have various issues that we need to
 5   discuss.  The last time I raised an issue of statute
 6   of limitations.  We don't know the answer to this.
 7          Where is Mr. Linkous today?  Is he here as
 8   your liaison?
 9          MR. FARMER:  Mr. Linkous is unavailable
10   today, Your Honor, the one day on his calendar that he
11   could not make it.  He apologizes for his absence, but
12   he has delegated some of us to proceed in his absence.
13          JUDGE MOATS:  Well, I have one question to
14   the Plaintiffs.  Who is speaking for them?
15          MR. FARMER:  Pardon me?
16          JUDGE MOATS:  Who is going to speak for
17   them?
18          MR. FARMER:  Mr. Fitzsimmons was to speak
19   today on the Rule 19 issue.
20          JUDGE MOATS:  Well, he doesn't need to speak
21   to that.
22          MR. FARMER:  I am happy -- Steve Farmer --
23   as Co-Lead Counsel to --
24          JUDGE MOATS:  Mr. Farmer, I have one
```

```
 1    question.

 2              MR. FARMER:   Yes, sir.

 3              JUDGE MOATS:   How far back do the Plaintiffs

 4    believe they can go for damages?

 5              MR. FARMER:   Back to when this whole thing

 6    started, Your Honor.

 7              JUDGE MOATS:   Which is?

 8              MR. FARMER:   It started in 1996 with Perdue

 9    Pharma in the beginning of the false narrative and the

10    fraud about what these drugs could do and why they

11    should be prescribed.

12              JUDGE MOATS:   Okay.  So we are going to have

13    to have briefed this whole issue of statute of

14    limitations.

15              So you are going to have to show how you can

16    go back to 1996.  We all know it is a two-year statute

17    of limitations normally when you knew or reasonably

18    should have known.

19              So that is going to be the first issue we are

20    going to want to look at better.

21              We are going to want to look at how far in

22    the future do you think you can go.  We want that

23    briefed, and we would like to know how long do you

24    think it is going to take you to brief it because I am
```

```
 1    going to give both sides the same.

 2              MR. FARMER:  We can brief it in 30 days.

 3              JUDGE MOATS:  Sure.  Mr. Meadows?

 4              MR. MEADOWS:  Good morning, Your Honor.

 5              JUDGE MOATS:  Good morning.  I assume you

 6    disagree with Mr. Farmer's position.

 7              MR. MEADOWS:  Absolutely, Your Honor.

 8              JUDGE MOATS:  Okay, so how long do you

 9    believe that you need to be able to brief that issue

10    on statute of limitations?

11              MR. MEADOWS:  I am going to pivot, if you

12    don't mind, Your Honor, and look at my team.

13              JUDGE MOATS:  And I understand we have -- I

14    understand we have two holidays basically for two

15    weeks which makes things very difficult.  That is why

16    I gave you some more time.

17              MR. MEADOWS:  We believe, Your Honor, that

18    if they were granted 30 days to prepare a brief, we

19    could respond within 30 days of their submission.

20              JUDGE MOATS:  All right.

21              JUDGE SWOPE:  How far back do you think they

22    can go?  He said 1996.

23              MR. MEADOWS:  Two years, Your Honor.

24              JUDGE SWOPE:  Two years, okay.  So we know
```

```
1   to plan.

2           JUDGE MOATS:   That is all we want to know.

3   We are not going to argue your positions.

4           JUDGE SWOPE:   No, no.  What have you got?

5           MR. EMCH:   Just speaking as Lead Counsel for

6   today, Your Honor -- and first of all, let me thank

7   you for the ruling you ruled.

8           You said in the first hearing -- one of the

9   things you said in the first hearing was you don't

10  like to be told things you can't do.

11          I know you and I know the panel, and I know

12  you understand that there are times when lawyers have

13  to say to the Court, "Your Honors, we don't think we

14  can do this."

15          We appreciate your consideration of that

16  position in this situation, and Your Honor, on our

17  motion and our bringing this to the Court and the

18  ruling you made.

19          That is one thing I wanted to say to you.

20          The second thing on this issue I would simply

21  say Lincoln County v. The American Water Company case,

22  which you decided as far as how far back they could go

23  on the statute of limitations.

24          JUDGE MOATS:   I recall.
```

1          MR. EMCH:   And the 30 days, I agree with my

2    colleague, Mr. Meadows, and we usually try to be as

3    concise and consistent as we can on the defense side.

4          It is a very large and diverse group.   It

5    does not have a single face and it is difficult to

6    coordinate these things, but we will certainly do our

7    best, Your Honor.

8          JUDGE MOATS:   Well, you know what their

9    position is.  So you-all can start working on that

10   today.

11         MR. EMCH:   Yes, sir.

12         MR. FARMER:   Your Honor?

13         JUDGE MOATS:   Yes, sir.

14         MR. FARMER:   May I address the Court very

15   briefly --

16         JUDGE MOATS:   Go ahead.

17         MR. FARMER:   -- on the same subject?

18         JUDGE MOATS:   Go ahead.

19         MR. FARMER:   And that is on behalf of West

20   Virginia's hospitals, I would like the Court to

21   understand that on the motions to dismiss we did not

22   ask for extra time to respond to the motion to

23   dismiss, and the reason is simple.

24         That is our clients, the hospitals, don't

 1   have extra time.  They are in a critical bind as far

 2   as things, and the only thing I want to ask is on this

 3   issue of statute of limitations, in an effort to move

 4   this thing along, could we have 30 days?

 5            We are happy to work through two holidays to

 6   get these papers within 30 days, but I think it would

 7   be fair and just and appropriate given the subject

 8   matter that the briefs be submitted at the same time.

 9            There is no reason to have another 30 days

10   for response.

11            JUDGE MOATS:  I will agree to that.  I will

12   give each of you 60 days.

13            MR. FARMER:  But we submit them at the same

14   time?

15            JUDGE MOATS:  Yes.

16            MR. FARMER:  Thank you, Your Honor.

17            JUDGE MOATS:  You are welcome.

18            MR. ARCENEAUX:  Your Honor?

19            JUDGE SWOPE:  Let me say something about

20   that.  Go ahead.

21            MR. ARCENEAUX:  Yes, Your Honor.  Jay

22   Arceneaux here on behalf of Rite-Aid.

23            I want to emphasize the point that Mr. Emch

24   made, which is we are diverse defendants, and I know

1    in particular Rite-Aid has been involved in litigation

2    for years, and it has a particular statute of

3    limitations argument that it would like to bring to

4    the Court, and I am aware that other pharmacies have

5    similar issues.

6              Would the Court entertain more than one brief

7    per side?

8              If people have a unique statue of limitations

9    argument, would they be entitled to present it at this

10   time?

11             JUDGE MOATS:  I guess it depends on how many

12   we are going to have.  If we are going to have -- I

13   don't know how many defendants we have.

14             I know a lot of you are -- there are

15   families, what I call families of defendants.  We

16   don't want 20 different briefs.

17             You know, we have limited time, too.  Both of

18   us have full dockets.  We deal with this at nights, on

19   weekends, on holidays, which brings up we just had

20   motions to dismiss the West Virginia Board of

21   Pharmacy.

22             We had that set for hearing today.  We worked

23   hours on that one.  That was --

24             JUDGE SWOPE:  Over Thanksgiving.

Donna Miller-Mairs, CCR

 1          JUDGE MOATS:   Over Thanksgiving.  That is

 2   why that I said that I worked on Thanksgiving, all

 3   Thanksgiving week.

 4          Part of that was spending hours on the Board

 5   of Pharmacy motion to dismiss that was withdrawn two

 6   days ago.

 7          Now we can't do that.  That is the epitome of

 8   frustration for a case that has been pending for a

 9   long time, since January.

10          JUDGE SWOPE:   Which somebody dismissed that

11   in February.

12          JUDGE MOATS:   In February part of it was

13   dismissed, but yet two days before this hearing after

14   we, two judges and our law clerk and my staff and

15   Judge Swope's staff spends hours and hours working,

16   and it is not left.

17          Well, if we are going to do this and you-all

18   say how critical it is, we can't waste our time.  We

19   have to be like lasers focused on a topic.  That is

20   the only way this is going to work.

21          So I guess, Mr. Arceneaux, you need to

22   contact Mr. Meadows and he needs to submit something

23   once you can tell us how many briefs you actually

24   need.

1          I cannot tell you and give you an answer

2     today.

3          MR. ARCENEAUX:   Okay, thank you.

4          JUDGE MOATS:   Just do it in due course very

5     shortly.

6          MR. ARCENEAUX:   We will work with Mr.

7     Meadows.  Thank you, Your Honor.

8          JUDGE MOATS:   Okay, 60 days for both sides.

9          JUDGE SWOPE:   I just want to add to that

10    here, too, if you don't mind.

11         JUDGE MOATS:   Go ahead.

12         JUDGE SWOPE:   Yesterday -- I guess Mr.

13    Linkous isn't here.  Yesterday he had filed or maybe

14    the day before as I was finishing my 30 criminal pre-

15    trials and I actually had an abuse and neglect until

16    6:00 Monday night, I get this thing that says, "Here

17    is our agenda," and there are a thousand pages.

18         Who the hell is going to read that?  Sit

19    down.  Who is going to read that?  Okay, the point

20    that I am trying to make here is brevity is the soul

21    of wit.  You know, and when you file things that are

22    just on and on -- if you ask for a hundred pages, we

23    probably got 99.

24         When you ask for that, how about bearing in

1  mind who is reading this.  We don't have an army of

2  law clerks.  We don't have people to -- we don't have

3  that.  You are looking at us right here.

4          So if you want to respect the Court, if you

5  appreciate what we do, how about getting to the point,

6  okay?  I am not smart.  I am not a law review person,

7  okay.

8          Just send it where the calves can get it, and

9  that is what I am going to read.

10          All right, everybody understand that?

11          So I don't need your law review article.  I

12  don't need your theme and thesis.  I don't need your

13  Phi Beta Kappa Ph.D. essay pieces.

14          I want you to get to the point on what you

15  want.  I don't care what they did in New Hampshire.  I

16  don't care what they did in Guam or Alaska, okay.

17          I want to know what we need to do here.  That

18  is all I am going to say, Judge Moats.  I am done for

19  the day.

20          JUDGE MOATS:   Now you are.

21          JUDGE SWOPE:   But that really upset me when

22  we spent time going over the Board of Pharmacy.  I

23  said why are we doing this?  They dismissed part of

24  that in February.  What are we doing this for?

1           So when I got that thing yesterday after I

2    had listened to God knows how many sexual abuse cases

3    of children, never mind.  What is it, Roseanne

4    Roseannadana, Saturday Night Live, never mind.

5           You know, that really upset me.  I guess you

6    probably figured that out.

7           Thank you, Judge Moats.

8           JUDGE MOATS:   You are welcome.

9           Now let's talk about overall the path this

10   case is going to take.  This is not simple, and

11   anybody that says it is is whistling past the

12   graveyard.

13          It is complicated.  There are so many parties

14   and there are so many moving parts.  We have this

15   issue of case management.

16          The Plaintiffs say, "Let's try every party,

17   every issue next June, and let's have a bifurcated

18   trial with liability and a punitive damage

19   multiplier."

20          There was a seismic shift in West Virginia in

21   2015.  Things changed as we know it in the field of

22   litigation.

23          Joint and several liability for the most part

24   was abolished, and a new punitive damage statute was

1    enacted that same year.

2              I was in the asbestos litigation back in
3    2002.  Union Carbide was the last defendant standing.
4    I went through a five-week trial.

5              We bifurcated that case, liability, and you
6    had a punitive damage multiplier.  What does the
7    statute say now?  It doesn't say the plaintiffs can
8    bifurcate.

9              It says that the defendant may request for
10   bifurcation, and if it is granted, the jury first has
11   to decide the amount of the punitive -- or of the
12   compensatory damages before it can be submitted to the
13   jury on the issue of punitive damages.

14             So how do we do that?  We can't.  The joint
15   and several statute completely ended that.

16             We just wrapped up the Airport litigation,
17   the Airport up the street that collapsed when, back in
18   2000 --

19             JUDGE HOKE:   In '15.

20             JUDGE MOATS:   In March and all these
21   defendants in the case across the country, but we were
22   under the old law.

23             When it came time to go to trial, it was
24   again, the last defendant standing.

1          That was taken up on a writ of prohibition

2   because the last defendant wanted to be the defendant

3   that was viewed as the most culpable on the verdict

4   form.

5          When the Supreme Court summarily refused that

6   writ, the case settled within 15 minutes, right?

7          JUDGE SWOPE:   Yes.

8          JUDGE MOATS:   That is not where we are.

9   Every defendant will be on the verdict form.

10         Then we have the new matter that we have

11  never dealt with before.  I have never dealt with it

12  before.  I haven't had a jury trial yet where it has

13  come up, non-party fault.

14         But yet in this case I think almost everybody

15  has filed a notice of non-party fault, and everyone

16  that I read I keep looking for my name to see if I am

17  in there.  So far, I haven't seen my name in there as

18  causing this.

19         It is the old thing that it is everybody's

20  fault; it is nobody's fault.  I understand that.

21         I mean, we have all these categories, but it

22  is something that we are going to have to deal with

23  with bated breath.

24         We have never done this before.  It is going

```
 1   to take time, and we will deal with it, but we have to

 2   decide first issues first.

 3           We have 31 new motions to dismiss pending

 4   that are going to have to be dealt with before we know

 5   who all the players are.

 6           JUDGE SWOPE:  Can I say something?

 7           JUDGE MOATS:  Go ahead.

 8           JUDGE SWOPE:  I just want to say that I sure

 9   hope those 31 to 33 motions that you-all filed aren't

10   going to be cookie-cutter regurgitations of the ones

11   that have already been filed and ruled on.

12           I think there is a writ of prohibition on

13   that, isn't there?  What is going on with that writ in

14   Charleston?

15           Didn't you-all file a writ about the law of

16   the case?

17           Where is that at?

18           MR. FITZSIMMONS:  Your Honor, the writ is

19   pending before the Supreme Court.  They have issued a

20   briefing schedule --

21           JUDGE SWOPE:  It hasn't been ruled on yet?

22           MR. FITZSIMMONS:  No, Your Honor, it has

23   not.

24           JUDGE SWOPE:  Okay, that is just part of my
```

1   point.  You know, we just had another mass litigation

2   case where all the briefs we got were cookie-cutter,

3   cookie-cutter.

4        So I really hope, folks, that you have raised

5   novel new things that weren't raised before, and I

6   hope that I am not going to read 31 or 33 or whatever

7   it is of the same thing.

8        JUDGE MOATS:  All right, now let's talk

9   about something else.

10        What all of you seem to say is the real issue

11   here, what Judge Polster says seems to be the real

12   issue is a common theme across all the cases in front

13   of him that have been brought in from all over the

14   country, and I understand it has been alleged all over

15   the country.

16        It is our understanding from Judge Polster

17   that these cases are pending in state courts in all

18   but two states, and that is the issue of public

19   nuisance, and we hear that all the time.

20        Now we cannot see or we don't see in any of

21   the complaints exactly what statute you-all are

22   raising that under.

23        Mr. Farmer, can you tell us the statute that

24   you are basing your cause of actions on?

1          MR. FARMER:   Your Honor, there is a robust

2    common-law of public nuisance in West Virginia, and by

3    the way, this was briefed in the motions to dismiss

4    that are pending before Your Honors.

5          JUDGE MOATS:   Okay, let me stop you there.

6    You-all need to back up.  You say you are basing it in

7    on common law?

8          MR. FARMER:   Yes, Your Honor.

9          JUDGE MOATS:   For a county commission or a

10   city to bring a common law --

11         MR. FARMER:   No, the hospitals.  I am

12   speaking on behalf of the hospitals.

13         JUDGE SWOPE:   Well, who is talking for the

14   counties and the cities?

15         JUDGE MOATS:   I understand your hospital

16   issue.  You are talking nuisance, and that is a

17   different matter.

18         MR. FARMER:   Okay.

19         JUDGE MOATS:   I am talking of all the

20   plaintiffs.

21         MR. FARMER:   I am hospitals only.

22         JUDGE MOATS:   Okay, public nuisance.  Who is

23   speaking for counties and cities?  Mr. Fitzsimmons?

24         MR. FITZSIMMONS:   Good morning, Your Honor,

```
 1  Clayton Fitzsimmons.
 2          JUDGE MOATS:   Okay, we need you to speak up
 3  and if necessary, come up here to the microphone so
 4  that we can hear you.
 5          What is your statute?
 6          MR. FITZSIMMONS:   I don't know the numeric
 7  number off the top of my head.  I can pull that out of
 8  the complaint, but I know that the counties, that
 9  there is a West Virginia Code, an ordinance, that
10  allows -- the statute allows them to pass an ordinance
11  declaring things to be public nuisances and also to
12  provide them a remedy to abate that.
13          JUDGE MOATS:   You are saying that there is a
14  statute that allows a county to pass an ordinance?
15          MR. FITZSIMMONS:   Yes, Your Honor.
16          JUDGE MOATS:  What is that statute?
17          MR. FITZSIMMONS:   I can pull it for you.  I
18  don't have it in front of me.
19          JUDGE MOATS:   Because I haven't seen it.
20          MR. FITZSIMMONS:   It was pled in our brief.
21          JUDGE MOATS:   What about the cities?
22          MR. FITZSIMMONS:   I don't represent the
23  Cities.  I can't speak on the Cities' behalf.
24          JUDGE MOATS:   All right.  I mean, I have
```

1    looked at it.  The only statute I can see is 16-3-6.

2    It is just nuisance affecting a county.

3          Basically it says county commissions or

4    municipalities all have a right to apply to circuit

5    court for an injunction to restrain or to abate a

6    public nuisance.

7          However, there was a case back in 1982,

8    Berkeley County Commission versus Chavez.  Under the

9    syllabus point it says that Code 16-3-6 authorizes

10   public officials, including a county commission, to

11   apply for circuit court injunctions to abate public

12   health nuisances.

13         County Commissions are not authorized to

14   petition for injunctions against any other public

15   nuisance.

16         But you are saying that has been overruled or

17   what?

18         MR. FITZSIMMONS:  I am saying that is not

19   the authority under which the counties are proceeding.

20         Again, Your Honor, I apologize.  I don't have

21   that off the top of my head.

22         JUDGE MOATS:  Okay.

23         MR. FITZSIMMONS:  I can get that to you and

24   I can provide you additional information if Your Honor

1    would wish.

2              JUDGE MOATS:   Okay.

3              MR. FITZSIMMONS:   This issue was briefed and

4    the motion has been dismissed that Judge Hummel had

5    denied.

6              JUDGE SWOPE:   Yes, because we are reading

7    things like throwing out the Board of Pharmacy, you

8    know, case in point.

9              MR. FITZSIMMONS:   Your Honor, would you like

10   for us to provide a supplemental authority or position

11   on that?  We would be happy to do so.

12             JUDGE MOATS:   Sure, I would.

13             The same for the cities, what is the

14   authority for the cities, and are you saying that all

15   these counties have enacted ordinances?

16             MR. FITZSIMMONS:   The cities -- I believe

17   that the counties that I know we represent have passed

18   ordinances declaring the opioid epidemic a public

19   nuisance.

20             JUDGE MOATS:   When, before or after?

21             JUDGE SWOPE:    Is it expo facto law?  It is

22   something that just passed?

23             Do you know when?

24             Ms. Chafin, you represent some.  Did your

```
 1    county do anything like that?  You represent my

 2    county, Mercer County.

 3            Did they do that?  I don't know.  Do you know

 4    if Mercer County passed an ordinance?  Anybody?

 5            MR. FITZSIMMONS:   Your Honor, I am lead

 6    counsel for the hospitals only.  I don't know.

 7            JUDGE SWOPE:   That is why I asked Ms.

 8    Chafin.

 9            MR. FITZSIMMONS:  I am sorry.  I thought you

10    were looking at me.

11            JUDGE SWOPE:  Yes, I asked Ms. Chafin.

12            MS. CHAFIN:   Your Honor, I am not aware of

13    it.

14            JUDGE MOATS:  Because in looking at the

15    complaints, I see nothing.  There hasn't been anything

16    alleged by any county or city that they are alleging

17    something under an ordinance.

18            We have a case going clear back -- it has

19    been cited by the Supreme Court several times, Parker

20    versus The City of Fairmont, a 1913 case.

21            It says Counsel may abate only maters a

22    nuisance which is recognized as such per se, which

23    means that in and of itself.

24            So if we are talking opiates, it would have
```

1    to be oxycodone in and of itself is a nuisance, and I

2    don't think that applies -- or granted as such by a

3    lawful statute or ordinance.

4           So the question would be does a county or

5    city just have -- do they have the authority to just

6    say this is a nuisance and it becomes so?

7           I question whether that is the authority.

8           If somebody puts a pile of radioactive

9    material, that would be a nuisance per se, but does a

10   county commission or authority -- or a county, rather,

11   or a city just have the authority to say, "We declare

12   this is a public nuisance"?  That is the question.

13          If that is something you are alleging, that

14   is what you are going to need to look at.

15          As I said, Chapter 16, Article 3, Section 6

16   allows it to be done if that is what you are operating

17   under.

18          We want to know what you are operating under

19   so we can decide which way to go.

20          Injunctions regularly are decided by courts.

21   It is an equitable type remedy ordinarily that

22   wouldn't be entitled to a jury trial.  It would be

23   decided by the Court.

24          The Court would determine what the proper

1    abatement is.  Judge Polster is dealing with that.  He

2    took the position, as I understand it, that there is

3    no absolute right to a jury trial, but he decided to

4    give them one.

5          Well, we haven't decided that.  We have a

6    case, <u>Turner versus Camden Clark Memorial Hospital</u>,

7    that says where there are legal issues coupled with

8    injunctive -- a request for injunctive relief, the

9    legal issue, if it is to be tried by a jury, it is to

10   go first.

11         Now we recognize these time frames.  The

12   Plaintiffs are saying we want this to go to trial.

13   Our towns and cities are bleeding.  Please help us.

14   Get us to trial and stop this public nuisance.

15         JUDGE SWOPE:   Our hospitals are suffering.

16         JUDGE MOATS:   And our hospitals are

17   suffering.

18         The Defense is saying this is going to take

19   we don't know how long to prepare all the discovery.

20         We are willing to cut through it all.  We are

21   willing to have a trial as soon as possible on

22   the issue of public nuisance before the Court.

23         We understand Judge Polster seems to say that

24   probably many plus percent of the liability discovery

1    has already been done.  You have got a report and you-

2    all have access to it.

3            Well, you-all are asking for this to be

4    abated.  If it is proven that it is a public nuisance,

5    we have that authority.

6            Now right now the question is well, are our

7    hands tied under Turner versus Camden Clark Memorial

8    Hospital?

9            You-all don't have to try it.  You say "Hey,

10   we waive that.  We want this to be decided."

11           I don't think anybody understands the

12   magnitude and the time periods that we are talking

13   about here that this is going to take.

14           There is no way that we can have a total

15   joint trial of all these issues against all these

16   defendants.  I don't know how to do it.  None of us

17   do.

18           It is going to overwhelm the court system.  I

19   don't know what facility we are going to use.  This is

20   the largest courtroom that we would have.

21           I have been told it would be extremely

22   problematic to tie this place up for several months.

23           How long would we be talking about having a

24   trial, six months, eight months, a year or more?

1    Are we going to be able to have jurors commit

2  to that?  How do we do this logistically?

3    Judge Polster was able to do things we can't

4  because of this seismic ship in our role in the state

5  with the joint and several liability, that statute.

6    He is severing these.  He is allowing the

7  Cabell County and Huntington case to be severed, to

8  just be tried against a particular group of defendants

9  because he is doing that out in Cleveland with

10  pharmacies and he is sending other cases for the same

11  purpose.

12    He is going in a different direction we can't

13  go or at least there is no way that we know because

14  everybody has to be on that verdict form and fault has

15  to be determined for everybody.

16    Maybe you-all can come up with ideas that we

17  don't or we can't.  We have to be innovative.  We

18  can't do the same things we have always done even

19  though we have done it for a long time.

20    I have been doing this finishing my 23rd year

21  on the bench.  I have never done anything like this

22  before.  I don't know if any of you have actually

23  worked with this.

24    But we can do that if you-all want to.  I

```
1   can't force you to do anything you don't want to do.
2   We are willing to address the issue of public
3   nuisance.
4           That is what this is all about.  It is what
5   it has always been about.  It is what Judge Polster
6   says it is all about everywhere.
7           JUDGE SWOPE:  It is what the Oklahoma court
8   said it was all about.  They tried it for what, 33
9   days out there, Judge?
10          JUDGE MOATS:  Thirty-three days.  Many of
11  the same defendants who are in this case were
12  involved.  That case didn't actually get tried.  I
13  understand J&J was the last one standing until the
14  time it went to trial.
15          But that is where we are.  You need to tell
16  us if you are willing to do that or not.  We want to
17  know and we can focus on that.
18          When we open up the discovery, we don't need
19  to have an all-issues trial with public nuisance right
20  off the bat.
21          We can decide, number one, whether it is
22  public nuisance as the discovery goes along, how to
23  complete a public nuisance if it is so found.
24          So it is not critical to have all the
```

1  discovery complete.  We can do it in phases.

2          I told you before we were going to give you

3  time for both sides to respond to case management.

4  The Plaintiffs said we can do everything next June.

5          The Defendants say that is impossible.  They

6  still have to cite the law why it is not possible.

7          I don't know how we are going to do this.

8  Mr. Farmer has 26 hospitals.

9          How are we going to do this with all those

10  hospitals and they are totally separate parties?

11  Where would we put everybody?

12          Now we have 68 plaintiffs.

13          We need your assistance. It can't be, "Here,

14  Judge, you decide this.  You figure it out."

15          We are not smart enough, at least I am not.

16  Judge Swope is much smarter than I am.

17          JUDGE SWOPE:  I don't know about that.

18          JUDGE MOATS:  I look at him and say, "Here,

19  give me a game plan.  I need help."

20          We need your help.  We need you to work

21  together.  The best case scenario, resolve these

22  cases.  That is the best case scenario.  Resolve these

23  cases and the federal cases.  You come up with a plan

24  where an entire state is taken off of the table.

1          That would be the best case scenario.

2          I don't know how it plays in the federal

3   negotiating class.  I have no idea.  There have to be

4   things happening behind the scenes that we don't know

5   about, we will never know about.

6          Does that somehow tie our resolution judge's

7   hands as far as what can be done or when it can be

8   done here?  I don't know.  Maybe some of you do.

9          We sort of feel like we are somewhat in the

10  dark.  We have learned a lot in the past two and a

11  half months.

12         Judge Polster tells other judges he doesn't

13  want them to go through what he has gone through over

14  the past two years.

15         We would like to have all his knowledge today

16  that he has worked so hard over two years to obtain

17  but we don't.

18         We have the benefit of all of his orders and

19  some of the transcripts, which have been extremely

20  helpful to us, and we will learn as we go along.

21         Right now it seems like chaos as do a lot of

22  these cases when we start.  Over time we can narrow

23  them down and bring order to the cases and we will

24  here but it is going to take hard work and it is going

1    to take tremendous cooperation.

2              It cannot be and it won't work if every time

3    there is something said there has to be an argument

4    and a fight about it or a writ of prohibition.  It

5    just can't work.

6              Next week, next Thursday Judge Alsop and I

7    and going to be back up here and hope we are going to

8    bring to resolution the tobacco litigation in West

9    Virginia that has been pending since 1998,

10   approximately 1,300 plaintiffs, all the major tobacco

11   companies, 22 years in litigation, writs, appeals,

12   trials, attempts to get jurors.

13             Next week hopefully, hopefully we can finally

14   deal with that case.

15             This case has the same potential.  This case

16   has the potential to last that long.  It does.  You-

17   all may disagree, but it does unless you decide not

18   to.

19             So that is what we have to say today.  We

20   don't have a lot of answers for you.  I wish we did,

21   but this is not something that is going to happen

22   overnight.

23             We are no more prepared now to enter a case

24   management order than we were two and a half months

1   ago until we get these issues decided preliminarily.

2          So you have your briefing schedule for the

3   statute of limitations.  We want you to rack them up.

4   We want to know.  If you are alleging that there are

5   individual nuisance statutes that counties enacted,

6   and the statute by the way is supplemental (3)(k)(8)

7   probably that you are referring to.

8          Then there is a statute dealing with

9   municipalities and that is 8-12-5, Paragraph 23.

10          But again, it is going to have to be

11   something per se.  It can't be just because the county

12   commission or a city says this is a public nuisance.

13   They have no authority to declare something a public

14   nuisance that I am aware of.

15          I think that you are going to find out the

16   Supreme County cases say likewise unless it is

17   pursuant.

18          So I want you to look at that and I want you

19   to seriously consider and discuss seriously among

20   yourselves.

21          I want to know about this proposal that we

22   have to try the issue before the Court on public

23   nuisance, Phase I of the case, as you-all go about

24   your discovery for abatement issues, costs, and so

1   forth, and we will open it up for damages on all these

2   issues.

3           Then we will finish the matter when that is

4   complete and set the rest of it aside for the time

5   being or you can rely on Turner versus Camden Clark

6   and say, no, I am not going to do it, that this is

7   going to be a war to the bitter end.

8           That is how we are going to go about our

9   business.  The choice will be yours.

10          JUDGE SWOPE:   The whole thing, the point is

11  that, you know everybody keeps saying how it is

12  rattling us and you raise that point and we have all

13  said it.

14          We are offering right now a chance to stop

15  the bleeding.  We are offering a chance to stop the

16  bleeding and then we can pick up the pieces as to

17  that.

18          But you know, Judge Moats, I think you hit

19  the nail on the head.

20          JUDGE MOATS:   Judge Tabit, anything from

21  your standpoint?

22          JUDGE TABIT:   Just from our standpoint,

23  obviously on the decision made as to how we are going

24  to be moving forward, our panel certainly looks

1   forward to working with that and moving toward some

2   type of an amicable resolution to the matters.

3         JUDGE MOATS:   Okay, are there any issues or

4   anything else?

5         I am not going to hear any arguments or

6   anything, but is there anything procedurally that we

7   need to discuss or bring up here today?

8         Mr. Meadows?

9         MR. MEADOWS:   Your Honor, if I could just

10   add one thing.

11         JUDGE MOATS:   Go ahead.

12         MR. MEADOWS:   Just for the good of the

13   order, the defendants work together on a lot of the

14   issues and we have the ability to communicate among

15   ourselves and handle almost any issue that this panel

16   wishes to raise.

17         It would be helpful in advance of future

18   status conferences if we could potentially work with

19   Plaintiffs' Liaison Counsel and Ms. Fields to agree on

20   the agenda.

21         For instance, today when you raised the

22   statute of limitations, there are many issues coming

23   from the Defendants which are related to that.  I have

24   my own client I am representing here.

```
 1          Today when you asked the question off the
 2   cuff, I pivoted to look at someone who doesn't
 3   represent my client because I knew personally that he
 4   had a vested stake in that.
 5          JUDGE MOATS:   Sure.
 6          MR. MEADOWS:   And certainly all these
 7   defendants may have something to stay and I hate to
 8   commit on behalf of the Defendants when we didn't even
 9   know it was coming.
10          JUDGE MOATS:   I understand, but up to this
11   point it has been hard to really come up with a set
12   agenda because it has been such a moving target as the
13   days goes by leading up to a conference.
14          MR. MEADOWS:   I appreciate that, Your Honor.
15   Before they drag me out of here and tar and feather me
16   afterwards, I want to make sure I have at least said
17   that so that we can perhaps work on agendas in the
18   future just with Ms. Fields if that is appropriate.
19          JUDGE MOATS:   All right, another thing,
20   communicating with our Mass Litigation manager, Ms.
21   Fields, if you communicate with her it cannot be one-
22   sided and unfair.  If one side, one attorney
23   communicates with her, let them advise the other
24   party.
```

1      We all know you can't do that and it puts her

2  in a very difficult position, and it is not proper

3  just to communicate to her, "Hey, what do you think

4  the judges would do with this."  That is not her

5  function at all.

6      Anyway, anything else?  Yes, sir.  State your

7  name, please.

8      MR. SHKOLNIK:  Your Honor, Hunter Shkolnik

9  of Napoli Shkolnik.  I am one of the appointed co-

10 leads.  Thank you for your time today.

11     One issue you brought up, I think it would be

12 very helpful to the panel, there are other litigations

13 consolidated on issues going on across the country.

14     In fact, in New York we have a trial date

15 scheduled for March 20th.  Public nuisance will be the

16 only trial.

17     What I am suggesting in the future as part of

18 our agenda that we also provide you with an update of

19 any other consolidated litigations that would help the

20 Panel to know what else is going on other than Judge

21 Polster's orders that have been issued to help

22 streamline that case.

23     In fact, some of my colleagues here, we are

24 all going to be there Monday hashing out issues

1    regarding that trial.

2              I know you are trying to get your arms around

3    a mile here, and Judge Garguilo in New York is

4    wrestling those same issues and I just want to suggest

5    that we could provide updates.

6              JUDGE SWOPE:   Do you have the same statute

7    up there that we do on the verdict form.  I don't

8    think you do, do you?  About 25 states have that.  I

9    know because I looked at in the Airport case.

10             MR. SHKOLNIK:   We don't have -- we don't

11   have to have everybody on, but there is a portion of

12   liabilities –

13             JUDGE SWOPE:   But you don't have to put non-

14   parties, people who have settled, everybody else that

15   you can possibly throw into the mix on your verdict

16   form, right?

17             MR. SHKOLNIK:   No, we do not.

18             JUDGE SWOPE:   Okay.

19             JUDGE MOATS:   Our position to what you say

20   is we would absolutely love to have that.  For us it

21   is almost impossible to find.  We don't have any way

22   of digging all that out.  So it would be very helpful

23   to know that.

24             Along the same lines, back in 2007 and '08 we

1  had -- you may be seated.

2          JUDGE MOATS:   We had a case that was called

3  the Digitek Park litigation.  I don't know if any of

4  you were involved in any of that litigation, but there

5  was an MBL in that.

6          That went to Judge Joseph Goodwin here in the

7  Southern District of West Virginia, and our Mass

8  Litigation Panel had the West Virginia cases, and we

9  coordinated that with Judge Goodwin.

10         He really was great in leading that.  He

11  coordinated, reached out to all the other state court

12  judges, and it was not nearly as massive as this, but

13  we even had a joint conference in Philadelphia with

14  the state court judges and Judge Goodwin.

15         It was incredibly helpful to know what was

16  happening across the country, not just here in West

17  Virginia but for the other judges as well, and we

18  worked closely together as that case was resolved.

19         So it would be helpful for us to know what is

20  happening across the country.  We can find out in the

21  federal litigation, but we just don't have anyway to

22  know what goes on in other states.

23         So we would appreciate both sides working

24  with us to keep us informed.  It doesn't have to be

1    just when we come to these hearings.

2              You can do that periodically, and I would

3    like to know that because I even searched on news

4    sites to see if there was any news about that in other

5    states.

6              MR. SHKOLNIK:   Your Honors, we can work with

7    Defense Counsel and come up with not a one-sided but

8    we will come up with what should be jointly submitted.

9              JUDGE MOATS:   Sure, and maybe you can submit

10   that to us periodically, okay.

11             MR. SHKOLNIK:   We would be happy to do that.

12   Thank you.

13             Is that agreeable, Mr. Meadows?

14             MR. MEADOWS:   Yes, Your Honor.  I am in the

15   pit of this large room, but I am sure we can come up

16   with an agreement.

17             JUDGE MOATS:   I appreciate that.

18             MR. SHKOLNIK:   Thank you.

19             JUDGE MOATS:   Another issue that I wanted to

20   discuss which Judge Hoke reminded me of, one thing at

21   the federal level, I have been able to see Judge

22   Polster has appointed special masters under Rule 53 of

23   the Rules of Federal Civil Procedures.

24             That is fairly in-depth rule and it looks

1    like those special masters are kept very busy and they

2    do a lot of work.

3            He also has, I assume, some of the federal

4    magistrate judges overseeing some of the discovery

5    issues.

6            Our Rule 53 -- has anybody ever looked at

7    that?  Take a look at that.  It is a rule that says

8    absolutely nothing.

9            JUDGE SWOPE:  It basically says we are going

10   to do what we have always done.

11           JUDGE MOATS:  It says that we can have

12   commissioners and they can do what has always been

13   done as far as chancellors, commissioners have been

14   done.  Well, what is that?  It doesn't say.

15           So what does that rule say?  I don't have any

16   idea.  You have the rule there, Mr. --

17           JUDGE SWOPE:  I have got it here, too.

18           JUDGE MOATS:  Can you explain that rule?

19           MR. MEADOWS:  I wouldn't dare to do that,

20   Your Honor.

21           JUDGE MOATS:  Okay.  I have read it.  It

22   doesn't say much of anything.  Here it is.  Rule 53

23   states that Commissioners and Chancellors shall be

24   known as Commissioners.

1          "The practice respecting the appointment of

2     such commissioners and references to them respecting

3     their powers and duties and powers and duties of

4     courts to hold a hearing upon their reports shall be

5     in accordance with the practice heretofore followed in

6     West Virginia."

7          What does that mean?  I have no idea.  So

8     anyway, what we have done in the past is to appoint a

9     discovery commissioner when issues come up, and we

10    have been very successful and we have had

11    commissioners do a great job.

12         That brings us to you, Mr. Arceneaux.  We are

13    extremely disappointed in your behavior in this case.

14    Mr. Arceneaux has been one of our discovery

15    commissioners.  So when I saw him in the first case, I

16    think he did this to us on purpose.

17         JUDGE SWOPE:   This is how you escape it.

18         JUDGE MOATS:   This is how he escaped our

19    clutches.  Jay has done a wonderful job as a discovery

20    commissioner, sometimes on such short notice we were

21    almost embarrassed to ask him, but he would drop what

22    he was doing and have hearings and issue responses.

23         He was always thoughtful and both sides

24    appreciated him, and that is what we are looking for.

1    So what I am going to ask both sides here is

2 to submit names of persons, lawyers, here in this

3 state that you believe would be acceptable, hopefully

4 that you can get together and agree on.

5    Now this is going to be difficult in this

6 case because of the wide breadth of people involved,

7 and I am going to ask that we use the federal Rule 53

8 as a model because number one, it is an issue of

9 disqualification, and Rule 53 of the federal rules

10 specifically addresses who would be disqualified.

11    It is almost going to be as if that person,

12 which they are, is going to be in a judicial capacity

13 and would be disqualified in the same category as I or

14 Judge Swope or any other judge here.

15    So it is going to have to be somebody who is

16 not involved in the litigation, somebody who is not

17 involved before us in other cases, somebody who is not

18 involved with you in an adversarial role in cases

19 because that would not be proper either.

20    So it really narrows the scope of available

21 people.

22    There would be a category of possible people

23 retired or senior status judges that could be brought.

24 A lot of them don't have support staff.  So we would

1  have to be looking at how to get them support staff to

2  do this as well.

3        I have no idea the extent of the discovery

4  disputes that have taken place in federal court.  I

5  can only assume they have been numerous based upon

6  what I have seen and read.

7        We don't have the capacity to do that.  We

8  don't have the time, and it is going to have to be

9  done with a commissioner.

10        So we are going to ask that you please work

11  together and come up with a proposed list for us to

12  look at.

13        All right, is that agreeable?  Thank you all.

14        Anything else?  Yes, ma'am.  State your name.

15  MS. KEARSE:   Judge, Ann Kearse with Motley

16  Rice.  I have the eight other cases that are pending

17  in Marshall County.

18        I submitted a proposed order for transfer to

19  the case, a joint order.  I submitted that yesterday.

20  So it may not have had time, but it is pending, a

21  proposed order of transfer to be in, if Your Honor

22  judges me to be qualified as --

23        JUDGE MOATS:   You were there, weren't you?

24        MS. KEARSE:   I was there, Your Honor, and in

1    some of the other cases.

2              JUDGE MOATS:   Just as an aside, I was

3    telling the panel this morning -- you can be seated

4    unless you have something else.

5              MS. KEARSE:   My co-lead, my partner, Joe

6    Rice, is the lead in the MBL and would be happy to

7    provide information about the MBL from the other state

8    proceedings, Your Honor.

9              JUDGE MOATS:   Okay, again, that is what I

10   want you-all to do to see if we can do this and is it

11   possible to attempt to mediate all that stuff, and so

12   you will have an insight there and reason perhaps for

13   them to be involved.

14             So as soon as that proposed order comes

15   through, if the Defendants are agreeable, just sign it

16   and submit it.

17             So we have come a long -- as I started to

18   say, my very first case on this Mass Litigation Panel

19   was the asbestos litigation.

20             I had never done anything like this before.

21   My first hearing was in Judge Haden's courtroom.  Were

22   you there for that one?

23             I remember I walked in and every seat in the

24   room was taken, the jury box, counsel table, attorneys

1    lined up around the wall and out in the hall.

2          I stood up and I thought what have I gotten

3    myself into?  So it was incredible.  Everybody was

4    very cooperative.

5          When I asked everybody, I said, "We are going

6    to have an expedited trial because we already have the

7    first liability trial set in September."

8          I was dealing with the deliberate and intent

9    part of all of those cases.  I said, "Everybody,

10   please pull out your calendars.  I want to pick a date

11   that is convenient for everybody.  What is convenient

12   for me is December 1.  We will try it the whole month

13   of December.  Any objections?"  Dead silence.

14         I have two lawyers in front of me now for a

15   car wreck case and I can't get them to agree on a date

16   over the next nine months.

17         So I want to say these are a different breed

18   of cases, and it takes incredible cooperation,

19   diligence, and a willingness to cooperate and work

20   together.  That is the only way this can be done, and

21   that is what we are asking for.

22         We will work hard because we have been

23   working hard.  We just ask you to not do things unless

24   they are absolutely necessary and don't raise issues

1  just for the sake of raising them.

2         Don't be afraid to give ground. Take a close

3  look at your defendants.  Judge Polster told the

4  plaintiffs, the ones you are not serious about, get

5  rid of them.

6         This case can either be done or it can

7  collapse under its own weight.  Right now it is

8  extremely heavy, extremely, and unless some of the

9  issues and parties are narrowed down, it is going to

10  remain that way.

11         It is my understanding the last time you told

12  me that you were going to cast aside or at least shut

13  off all the individuals.

14         Has that been done?  I think I have signed

15  some orders to that effect.

16         MR. FITZSIMMONS:  Yes, Your Honor.

17         JUDGE MOATS:  All of them have been?

18         MR. FITZSIMMONS:  Yes, they have been

19  dismissed or settled.

20         JUDGE MOATS:  All right, thank you.  Okay,

21  with that, anything else?

22         I appreciate all of you coming here today.  I

23  wish you a joyous upcoming holiday season, and as soon

24  as we get these briefs sent in, we will reset the next

1    hearing.  We will reset something that was necessary

2    in the meantime.

3              Thank all of you so much.

4                          (WHEREUPON, at 11:08 a.m., the

5                          hearing was concluded.)

6

```
                REPORTER'S CERTIFICATE


STATE OF WEST VIRGINIA,

COUNTY OF KANAWHA, TO-WIT:


        I, Donna Miller-Mairs, Certified Court

Reporter, hereby certify that the foregoing is, to the

best of my skill and ability, a true and correct

transcript of the evidence introduced and proceedings

had in the aforementioned case on the 6th day of

December, 2019, as reported by me by Stenomask

procedure.

        I hereby further certify that the transcript

within meets the requirements of the Code of the State

of West Virginia, 51-7-4, and all rules pertaining

thereto as promulgated by the Supreme Court of

Appeals.

        Given under my hand this 27th day of

December, 2019.

        My commission expires November 22, 2022.



                    _____
                        DONNA MILLER-MAIRS
                    Certified Court Reporter
```