IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, et al.,<br><br>　　　　　　Defendants. | Civil Action No. 3:17-01362<br>Hon. David A. Faber |
| CABELL COUNTY COMMISSION,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, et al.,<br><br>　　　　　　Defendants. | Civil Action No. 3:17-01665<br>Hon David A. Faber |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT:
STANDING**

**Introduction**

At the December 6, 2019 hearing of the Mass Litigation Panel, the Panel questioned whether the plaintiff counties and municipalities have standing to bring a public nuisance claim. Citing the West Virginia Supreme Court of Appeal's decision in *Parker v. City of Fairmont*, 72 W. Va. 688, 79 S.E. 660 (1913), the Panel noted that the historic rule has been that counties and municipalities may seek abatement of a public nuisance only where the nuisance has been (i) "recognized as such per se" or (ii) designated as such "by a lawful statute or ordinance."[1] Based on that rule, the Panel commented about the counties' claims:

---

[1] Dec. 6, 2019 Hr'g Tr. 37:21- 38:3 (Ex. 1).

1

- "[I]t would have to be oxycodone in and of itself is a nuisance, and I don't think that applies."

- "[I]n looking at the complaints, I see nothing. There hasn't been anything alleged by any county or city that they are alleging something under an ordinance."

- "[T]he question would be does a county or city ... have the authority to just say this is a nuisance and it becomes so?"

- "[I]t is going to have to be something per se. It can't be just because the county says this is a public nuisance. They have no authority to declare something a public nuisance that I am aware of."[2]

The Panel also inquired about the timing of any such county and city ordinances (i.e., whether enacted "before or after" the claimed injury), questioning whether an after-the-fact ordinance would be an "*ex post facto* law."[3]  Accordingly, the Panel ordered the plaintiff municipalities and counties to identify any ordinance that authorized their nuisance claims. The plaintiffs' subsequent submission did not identify any ordinance, nor did it claim that Defendants' alleged conduct constituted a per se nuisance.[4]

Had City of Huntington and Cabell County been subject to the same inquiry and same order, their answer would have been the same. Neither has claimed (nor could they) that Defendants' alleged wrongful conduct—the distribution of FDA-approved prescription opioids to DEA-registered and state-licensed pharmacies—constitutes a per se nuisance. And neither has enacted an ordinance of general applicability that defines the public nuisance about which it

---

[2]  *Id* at 37:24-38:2; 37:14-17; 38:4-6; 46:10-14.

[3]  *Id.* at 36:16-22.

[4]  December 12, 2019 Order Regarding Rulings Issued During the December 6, 2019 Hearings and Status Conference at pp. 2-3; Plaintiffs' Joint Memorandum of Law Regarding Nuisance at pp. 2-7.

complains. Therefore, Huntington and Cabell County lack standing under West Virginia law to bring a nuisance claim, and Defendants are entitled to summary judgment.

## I. MUNICIPALITIES AND COUNTIES DO NOT HAVE STANDING TO SUE FOR NUISANCE *UNLESS* THEY SHOW [1] A PER SE NUISANCE OR [2] VIOLATION OF AN ORDINANCE OF GENERAL APPLICABILITY

To have standing under West Virginia law to sue for public nuisance, a municipality or county must allege either (i) a per se nuisance or (ii) violation of an ordinance of general applicability that brands the conduct as a nuisance. This has been the rule in West Virginia for more than one hundred years. *Parker v. City of Fairmont*, 72 W. Va. 688, 79 S.E. 660 (1913); *Donohoe v. Fredlock*, 72 W.Va. 712, 79 S.E. 736 (1913); *State ex rel. Ammerman v. City of Philippi*, 136 W. Va. 120, 125, 65 S.E.2d 713, 715–16 (1951); *Sharon Steel Corp. v. Fairmont*, 175 W. Va. 479, 334 S.E.2d 616, 625 (1985); *Cty. Comm'n of Lincoln Cty. v. W. Va.-Am. Water Works Co. (In re: Water Contamination Litig.)*, Slip. Op. at 12, No. 17-C-41 LCN (W. Va. Cir. Ct. Kanawha Cty. Dec. 12, 2018).

This standing rule stems from the fact that municipalities and county commissions lack general, inherent powers and may exercise only those powers expressly conferred by the West Virginia Constitution and the Legislature. *See* Syl. Pt. 2, *State ex rel. Charleston v. Hutchinson*, 154 W. Va. 585, 176 S.E.2d 691 (1970) ("A municipal corporation has only the powers granted to it by the legislature, and any such power it possesses must be expressly granted or necessarily or fairly implied or essential and indispensable. If any reasonable doubt exists as to whether a municipal corporation has a power, the power must be denied."); Syl. Pt. 3, *Barbor v. County Court of Mercer County*, 85 W. Va. 359, 101 S.E. 721 (1920) ("The county [commission] is a corporation created by statute, and possessed only of such powers as are expressly conferred by the Constitution and Legislature, together with such as are reasonably and necessarily implied in

the full and proper exercise of the powers so expressly given. It can do only such things as are authorized by law, and in the mode prescribed.").

Plaintiffs have not alleged, and cannot prove, a per se nuisance. Nor can Plaintiffs show that they enacted an ordinance of general applicability that defined the distribution of prescription opioids as a public nuisance.

## II. NEITHER PLAINTIFF HAS ALLEGED A PER SE NUISANCE

Plaintiffs do not allege a nuisance per se. "The number of nuisances per se is necessarily limited," because a nuisance per se is "an act, occupation, or structure which is a nuisance ***at all times and under all circumstances***, regardless of location or surroundings." *Harless v. Workman*, 145 W. Va. 266, 274, 114 S.E.2d 548, 552 (1960);[5] *see also Duff v. Morgantown Energy Ass'n*, 187 W. Va. 712, 716 n.8, 421 S.E.2d 253, 257 n.8 (1992) (same).[6] For obvious reasons, there is no authority that the distribution of FDA-approved prescription opioid medications is "always" a public nuisance.

If anything, the opposite is demonstrably true. Defendants are licensed by state regulation and registered by the U.S. Drug Enforcement Agency to engage in the wholesale distribution of controlled substances to pharmacies that are themselves state-licensed and DEA-registered. These are lawful, highly regulated businesses—and "a lawful business or a business

---

[5] All emphases are added unless otherwise indicated.

[6] In contrast to a nuisance per se, "[a] nuisance per accidens, or in fact, has been generally defined as those which become or may become a nuisance based on the facts, circumstances, and surroundings, and as an activity not by its nature a nuisance, but one which may become a nuisance by reason of the locality, surroundings, or the manner in which it may be conducted or managed." *Duff*, 187 W. Va. at 716 n.8, 421 S.E.2d at 257 n.8. Plaintiffs cannot sue for damages or to abate even a nuisance per accidens without an ordinance in place prohibiting such conduct at the time the alleged conduct complained of occurred. *See* discussion in n. 1, *supra*.

4

authorized to be conducted by the government *cannot constitute a nuisance per se*." *Burch v. NedPower Mount Storm, LLC*, 220 W. Va. 443, 456-57, 647 S.E.2d 879, 892-93 (2007); *see McGregor v. Camden*, 47 W. Va. 193, 196, 34 S.E. 936, 937 (1899). Because the business of distributing pharmaceuticals is not only lawful, but essential, and highly regulated by the federal and state governments, Defendants' actions cannot be a nuisance per se.

### III.     PLAINTIFFS DID NOT SUE PURSUANT TO ANY ORDINANCE

#### A.     Plaintiffs Must Prove a Violation of an Ordinance of General Applicability That Defined Distribution of Prescription Opioids as a Public Nuisance

Because Plaintiffs have not alleged and could not show a per se nuisance, they must prove that Defendants violated an ordinance of general applicability that defined their alleged conduct as a public nuisance. There is no such ordinance. *See* III.B, *infra*.

As a municipality and county commission, Plaintiffs lack inherent or plenary legislative powers. *See* Syl. Pt. 2, *Hutchinson*, 154 W. Va. at 176, 176 S.E.2d at 696. Two legal rules follow from the fact that municipalities and counties exercise limited, delegated authority:

First, a municipality's or county's authority is only "to abate what the law holds to be a nuisance, not to enact that any particular thing is a nuisance," Syl. Pt. 1, *Parker*, 79 S.E. 662. Thus, insofar as charter provisions "grant[] a police power of abatement," that grant is "not an arbitrary power of determining that something is a nuisance which by no law is known to be such." *Id*. at 661-62; *In re: Water Contamination Litig.*, Slip. Op. at 12, No. 17-C-41 LCN (W. Va. Cir. Ct. Kanawha Cty. Dec. 12, 2018) (dismissing nuisance claim because conduct declared a nuisance by county ordinance did not qualify as a common law nuisance).

Second, and of central importance here, the legislative grant of authority (without more) does not permit the municipality or county to proceed against an alleged offender. *Donohoe*, 79 S.E. at 737 ("[T]he legislative grant to regulate division fences does not authorize the municipal

5

council to declare any fence a nuisance *unless and until* its proper officers have, *by a general ordinance*, in fact declared the nature and character of the fences that may be so constructed."). In *Donohoe*, the Elkins city council declared a fence constructed and maintained by Donohoe to be a nuisance and ordered its abatement. As authority for its action, the city relied upon the statutory authority, as incorporated in its city charter, "to regulate the making of division fences" and to "prevent injury or annoyance to the public or individuals from anything dangerous, offensive or unwholesome," and "to abate … whatever in the opinion of the city council is a nuisance. 72 W.Va. 712, 79 S.E. at 737. The city contended, just as Plaintiffs do here, that these general powers were fully operative in the absence of an ordinance of general applicability. *Id*. The Supreme Court rejected that argument, holding that this legislative grant of authority did not authorize the city to declare the fence a nuisance and seek its abatement in the absence of an ordinance prescribing what fencing could be properly built and maintained:

> Under the provisions of the charter of a city that the council thereof shall have the power "to regulate the making of division fences …; to prevent injury or annoyance to the public or individuals from anything dangerous, offensive or unwholesome; and to abate … whatever in the opinion of the council is a nuisance," *the council may abate only that as a nuisance which is recognized as such per se or branded as such by a lawful statute or ordinance*.

*Id*. at syl. pt. 1.

The Supreme Court thus acknowledged the legislative grant of authority to regulate division fences, etc., but emphasized that the grant constituted only the first of two necessary preconditions to the city's taking action against Donohoe:

> *The power to regulate means only the power to enact a reasonable ordinance for that purpose*, and thereafter to enforce it by appropriate proceedings. It does not vest in the municipality the power to declare the fence of any one citizen a nuisance and abate it, *without first exercising its legislative power to prescribe what fences may properly be built and maintained*.

6

*Id.* at 736. Because the city had not enacted any such ordinance before ordering the removal of Donohoe's fence, the Supreme Court reinstated the trial court's injunction restraining enforcement of the city's abatement order.

In a companion decision, rendered one week earlier, the Supreme Court stated the same rule. The Court prohibited the City of Fairmont from declaring a dye works a nuisance in the absence of an ordinance of general applicability:

> The production and emission of smoke from the plant of a lawful business cannot be abated by the city of Fairmont under its mere charter powers to abate nuisances and to prevent injury and annoyance, ***in the absence of a reasonable ordinance, applicable alike to all of a class, making such production and emission unlawful***.
>
> [A]t the time of the procedure against plaintiffs business neither the city charter nor any ordinance passed in pursuance thereof warranted the order to abate that business as a nuisance …. [T]he city by its answer in the cause cannot justify its act against plaintiff. It cannot say merely by its answer that the use is in fact a nuisance. ***It must first say that by general and uniform ordinance.***

Syl. Pt. 2, *Parker*, 72 W. Va. at 688, 79 S.E. at 660, 662.[7]

This remains the rule. *See State ex rel. Ammerman v. City of Philippi*, 136 W. Va. 120, 125, 65 S.E.2d 713 (1951) ("The provisions of the charter … are not self-executing. ***Enabling ordinances are necessary***."); *Sharon Steel Corp. v. Fairmont*, 175 W. Va. 479, 334 S.E.2d 616, 625 (1985) (citing *Donohoe* with approval and upholding a city ordinance that prohibited the permanent disposal of hazardous waste within the city).

---

7   In *Parker*, the city relied on the statutory grant of authority (Code 1906, ch. 47, sec. 28), which provided that "[t]he council … shall have plenary power and authority therein … to abate … anything which, in the opinion of a majority of the whole council, shall be a nuisance." As in *Donohoe*, the Supreme Court held that the statutory authorization, absent an ordinance that implemented the authority, could not support action against specific defendant.

7

Huntington and Cabell County may argue that Sections 8-12-5(23) and 7-1-3kk of the Code, respectively, provide stand-alone authority for their public nuisance claims against Defendants. But these provisions are indistinguishable from those at issue in *Donohoe* and *Parker*; they merely authorize municipalities or county commissions to enact ordinances determining something to be a public nuisance and then to take measures to abate that nuisance.[8]

An unbroken line of precedent—spanning one hundred years from *Donohoe* and *Parker* (1913) to *Ammerman* (1951) to *Sharon Steel* (1985) to today—is clear. A municipality or county is without legal authority, and therefore lacks standing, to do what Plaintiffs seek to do here—sue for abatement of an alleged public nuisance without first enacting pursuant to an ordinance of general applicability that proscribes the conduct.

---

[8] For three reasons, § 16-3-6 of the Code is also unavailing. First, as the state plaintiffs have acknowledged, it applies only to "communicable and infectious diseases," not to injuries allegedly flowing from the distribution of a lawful product. *See* Resp. In Opp. to Cardinal Health, Inc.'s Motion to Dismiss, Dkt. No. 381, at 9 n.3 ("W.Va. Code § 16-3-6 does empower the state director of health or any county or municipal health officer to seek abatement of nuisances impacting public health, *but the authority granted by that provision is limited to nuisances* [*for*] *infectious diseases which is the sole subject of Article 3*"); Resp. In Opp. to Petition for Writ of Prohibition, Dkt. No. 19-0204, at p.27 n.14 (noting that W.Va. Code § 16-3-6 "giv[es] public health officials authority of communicable diseases" and stating, "[a]s such *it is not applicable here*"). Second, § 16-3-6 is inapplicable because it provides that a plaintiff may "apply *to the circuit court of the county* in which any such nuisance exists … *for an injunction* forthwith to restrain, prevent or abate such nuisance." W.Va. Code § 16-3-6. Neither Plaintiff seeks an injunction; they seek instead the payment of monies. Third, Cabell County filed in federal court, not circuit court.

### B. Neither Plaintiff Enacted an Ordinance of General Applicability That Defined Distribution of Prescription Opioids as a Public Nuisance

Huntington has at no time enacted an ordinance of general applicability that defines the distribution of FDA-approved prescription opioids as a public nuisance,[9] and it therefore lacks standing to sue Defendants for nuisance.

Cabell County likewise has not enacted—either before filing suit or since—an ordinance of general applicability that defines the distribution of FDA-approved prescription opioids as a public nuisance. It did pass a resolution on January 26, 2017 declaring "that the unlawful distribution of prescription pain pills, including hydrocodone and oxycodone, has created a public nuisance to the people of Cabell County."[10] But that resolution does not satisfy the requirement recognized in *Parker* and *Donohoe* for three reasons.

First, a resolution is not the equivalent of an ordinance; a resolution does not have the force of law. *See State ex rel. Brown v. Corp. of Bolivar*, 209 W. Va. 138, 142, 544 S.E.2d 65, 69 (2000); 5 McQuillin, Municipal Corporations § 15:2 (3d ed.) ("A 'resolution' is usually a mere declaration with respect to future purpose or proceedings, while an 'ordinance' is a local law which is adopted with all the legal formality of a statute; a resolution adopted without the formality required of an ordinance cannot be deemed an ordinance."). A resolution is nothing more than a declaration. And merely "declaring" is what the Cabell County Commission's resolution does: "BE IT RESOLVED that the Cabell County Commission hereby ***declares*** that

---

[9] City of Huntington publishes a Code of Ordinances. Article 1109 is entitled "Nuisances" and contains three subsections. It does not define the distribution of prescription opioids as a nuisance. It does define other nuisances, including a polluted well, the maintenance of a privy vault or cesspool, and the accumulation of manure. Code of Ordinances, Art. 1109.01.

[10] Ex. 2 hereto.

the unlawful distribution of prescription pain pills ….."  But "*declar[ing]*" something a nuisance and "order[ing] its abatement—without an ordinance—was precisely what the Supreme Court of Appeals faulted in *Donohoe* and subsequent decisions.  79 S.E. at 736; *Parker*, 79 S.E. at 661-62 (holding that city must "ordain and publish law which relates to all alike" and finding invalid the city's action in summoning the defendant before the city council and "declar[ing]" the operation of his dye works a nuisance "by reason of the coal smoke and soot produced and emitted therefrom").

The Cabell County Commission publishes its ordinances online, but the January 26, 2017 resolution at issue here is not part of that online compilation.  When the Commission intends to enact an ordinance to define a public nuisance, it certainly knows how to do so, for the online compilation of county ordinances includes an ordinance to define the nuisance from "excessive levels of sound" and provides that "[n]o person shall make, continue, or cause to be made or continued, any loud, unnecessary or unusual noise or any noise which either annoys, disturbs, injures or endangers the comfort, repose, health, peace, or safety of others, within the County …."[11]  The ordinance is so captioned:  "IN THE MATTER OF THE ADOPTION OF A NOISE CONTROL ORDINANCE FOR CABELL COUNTY, WEST VIRGINIA," and it recites that it was adopted "pursuant to the provisions of Chapter 7-1-3kk of the West Virginia Code, as amended."  The ordinance, as one might expect of true legislation, includes definitions, an enumeration of proscribed acts, exceptions and waivers, a severability clause, and enumerated penalties.  None of this is true for the March 9, 2017 resolution.

Second, even if a resolution had the same legal force as an ordinance, the Cabell County Commission did not pass its resolution concerning opioid distribution until January 26, 2017—

---

[11]  Ex. 3 hereto.

10

the same day on which (in the same resolution) it retained counsel to bring this action, and only eight days before it filed the action. That does not suffice to confer standing to assert pre-2017 claims. The ordinance requirement exists to provide due process by giving advance notice of what constitutes an actionable nuisance. The Mass Litigation Panel realized as much at its December 6, 2019 hearing when it questioned whether such an ordinance would be an *ex post facto* law.[12] Thus, the county must "***first*** exercise[e] its legislative power to prescribe" what conduct is offensive, and only then may sue to proscribe that conduct. *Donohoe*, 79 S.E. at 737 (noting the council's "failure thus to prescribe any general rule applicable alike to all structures of this character ***prior to*** its attempt to declare plaintiff's fence a nuisance"). The resolution—which contains no retroactivity language—applies, at most, prospectively. *In re: Water Contamination Litig.*, Slip. Op. at 15 ("[A]s a matter of statutory construction, absent express language in the Ordinance confirming retroactive application, the Ordinance must be presumed to apply prospectively.").[13]

Third, this resolution is not one of general applicability. It does not state "the nature and character" of the distribution that constitutes a nuisance, *Donohoe*, 79 S.E. at 737, nor does it "prescribe rules, standards or guides" for determining what distribution of prescription pain pills

---

[12] Dec. 6, 2019 Hr'g Tr. 36:16-22. *See also Landgraf v. USI Film Prods.,* 511 U.S. 244, 266 (1994) (explaining that the "antiretroactivity principle," or "presumption against retroactive legislation," is rooted in the *Ex Post Facto*, Takings, and Due Process clauses of the Constitution); *Pub. Citizen, Inc. v. First Nat. Bank in Fairmont*, 198 W. Va. 329, 334, 480 S.E.2d 538, 543 (1996) ("Under West Virginia law, a statute that diminishes substantive rights or augments substantive liabilities should not be applied retroactively to events completed before the effective date of the statute (or the date of enactment if no separate effective date is stated) unless the statute provides explicitly for retroactive application.").

[13] Retroactive application of the resolution would violate due process for two reasons: because (1) there is no advance notice of what is deemed wrongful, and (2) a resolution, as distinguished from an ordinance or other law, does not afford notice that a "violation" will lead to penalties.

11

is proper. *Ammerman*, 65 S.E.2d at 715. A standard-less resolution like this effectively vests sole discretion in the county commission to favor one distributor and fault another. "Such power does not accord with due process of law." *Id.*[14]

### Conclusion

For these reasons, the Court should grant summary judgment.

Dated: March 20, 2020

Respectfully submitted,

**CARDINAL HEALTH, INC.**

By: */s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
gcallas@jacksonkelly.com

JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Telephone: (304) 340-1000
Facsimile: (304) 340-1050

Robert A. Nicholas
rnicholas@reedsmith.com
Shannon E. McClure
smcclure@reedsmith.com

REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420

*Counsel for AmerisourceBergen Drug Corporation*

By: */s/ Steven R. Ruby*
Brian A. Glasser (WVSB #6597)
bglasser@baileyglasser.com
Steven R. Ruby (WVSB #10752)
sruby@baileyglasser.com

BAILEY & GLASSER, LLP
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110

*Counsel for Cardinal Health, Inc., in Cabell County Commission action*

---

[14] Even if either Plaintiff had passed an ordinance of general applicability purporting to define, in any fashion, the DEA-regulated distribution of FDA-approved prescription opioids as a nuisance, that ordinance would almost certainly be preempted by federal law. *See*, e.g., I-I.R. Rep. No. 1444, 91st Cong., 2nd Sess. 1970, *as reprinted in* 1970 U.S.C.C.A.N. 4566, 4571-72 (Congress enacted the Controlled Substances Act with the intent of reducing illegal diversion of controlled substances "while at the same time providing the legitimate drug industry with *a unified approach* to narcotic and dangerous drug control."

By: */s/ Jeffrey M Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com

    FLAHERTY SENSABAUGH BONASSO PLLC
    P.O. Box 3843
    Charleston, WV 25338-3843
    Telephone: (304) 345-0200

Mark H. Lynch
Christian J. Pistilli
Laura Flahive Wu
Megan A. Crowey

    COVINGTON & BURLING LLP
    One CityCenter
    850 Tenth Street NW
    Washington, DC 20001
    Telephone (202) 662-6000

***Counsel for McKesson Corporation***

*/s/ David R. Pogue*
Michael W. Carey (WVSB #635)
David R. Pogue (WVSB #10806)
mwcarey@csdlawfirm.com
drpogue@csdlawfirm.com

    CAREY, SCOTT, DOUGLAS & KESSLER, PLLC
    901 Chase Tower
    707 Virginia, East
    Charleston, West Virginia 25301
    Phone: (304) 345-1234
    Fax: (304) 342-1102

***Counsel for Cardinal Health, Inc., in City of Huntington action***

Enu Mainigi
emainigi@wc.com
F. Lane Heard III
lheard@wc.com
Ashley W. Hardin
ahardin@wc.com

    WILLIAMS & CONNOLLY LLP
    725 Twelfth Street, N.W.
    Washington, DC 20005
    Telephone: (202) 434-5000
    Facsimile: (202) 434-5029

***Counsel for Defendant Cardinal Health, Inc.***

## CERTIFICATE OF SERVICE

I, Steven R. Ruby, counsel for Defendant Cardinal Health, do hereby certify that service of the foregoing **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT: STANDING** was filed electronically via the CM/ECF electronic filing system and served on all counsel registered in the system.

Dated: March 20, 2020

                                            */s/ Steven R. Ruby*
                                            Steven R. Ruby (WVSB #10752)