# EXHIBIT 11

IN THE CIRCUIT COURT OF BOONE COUNTY, WEST VIRGINIA

**STATE OF WEST VIRGINIA**
*ex rel.* **PATRICK MORRISEY**,
Attorney General, **JOSEPH THORNTON**,
in his capacity as the Secretary of the
**WEST VIRGINIA DEPARTMENT**
**OF MILITARY AFFAIRS AND PUBLIC SAFETY**,
an agency of the State of West Virginia, and
**KAREN BOWLING**, in her capacity as the Secretary
of the **WEST VIRGINIA DEPARTMENT OF**
**HEALTH & HUMAN RESOURCES**, an agency
of the State of West Virginia,

        Plaintiffs,

v.

                                               Civil Action No.12-C-140
                                               (Hon. William S. Thompson, Judge)

**CARDINAL HEALTH, INC.**,
an Ohio corporation doing business in
West Virginia,

        Defendant.

## AMENDED COMPLAINT

    For their Amended Complaint, the State of West Virginia, at the relation of its duly-

elected Attorney General Patrick Morrisey, and Secretary Joseph Thornton, and Secretary Karen

Bowling of two of its agencies, the West Virginia Department of Military Affairs and Public

Safety, and the West Virginia Department of Health & Human Resources, state the following:

### I.

### Summary of Action

    1.    This civil action addresses the epidemic of prescription drug abuse and its

costs. Prescription drug abuse costs the State of West Virginia hundreds of millions of dollars

annually.  Beyond the actual dollars lost, prescription drug abuse devastates families, communities and reduces the State's economic productivity.  Prescription drug abuse adversely affects West Virginia's hospitals, schools, courts, social service agencies, jails and prisons as well as diminishing the very quality of life in our cities and towns.  Accordingly, the State, both by its Attorney General and two of its agencies, brings this action against a party whom they have identified as having substantially contributing to and which has substantially, illicitly and tortiously benefitted financially from the prescription drug abuse problem in West Virginia.

2.     The Defendant herein named distributes various prescription drugs closely identified with the prescription drug abuse problem in West Virginia.  This Defendant was on notice of the growing West Virginia epidemic from the abuse of those prescription drugs which it supplied and of the quantities and frequency with which those drugs were distributed to entities in West Virginia.  Notwithstanding their knowledge and the Defendant's attendant duties as required by West Virginia law and industry customs and practices this Defendant inserted itself as an integral part of the pill mill process which fuels this epidemic.  For reasons which are more specifically set forth in the following causes of actions this Defendant is answerable in damages to the State of West Virginia and is susceptible to such other relief as is requested herein.

a.     This Defendant acted negligently, recklessly, and in contravention of West Virginia law including violations of State statutes and regulations that govern the distribution of controlled substances and consumer protection.  While so acting, this Defendant received substantial revenue when engaging in the wholesale distribution of controlled substances in West Virginia and regularly supplying West Virginia pill mills.

-2-

3.     The problems, crimes, damages and losses related to the prescription drug epidemic in West Virginia include, <u>inter alia</u>, the following:

a.     Costs to the State of as much as $430 million annually in the year 2010 with costs projected to be as much as $695 million annually by 2017;

b.     A per capita death rate from prescription drug overdose which has at times been either the highest or the second highest recorded for all states in the United States.  One West Virginia county, McDowell County, located in Southern West Virginia, had a prescription drug overdose death rate of 34.2 per 100,000 in 2001 and 97.3 in 2008;

c.     Between 2001 and 2008 West Virginia deaths from overdoses involving prescription drugs quadrupled from 5.1 deaths per 100,000 residents to 21.5; Counties in which this Defendant distributed drugs have the highest per capita death rates in America.

d.     According to Charleston Area Medical Center approximately twenty (20) percent of patients admitted through the hospital's trauma service have an issue with narcotic usage contributing to their injuries or illnesses.  As such, the demand from the growing problem of addiction and management of addicted patients can reasonably be expected to become too great for the available care providers unless the problem is now effectively addressed.

e.     West Virginia has been identified as the nation's "most medicated state" based upon data gathered for 2009.  Pharmacies in the State filled 18.4 prescriptions per capita as compared to the national average of 11.6 per capita;

f.     One Pittsburgh area physician who has recently entered a guilty plea to a drug law violation worked in and/or owned a bogus "pain clinic" in Southern West

Virginia that a federal investigation disclosed netted as much as $20,000 per day in cash deposits. That so-called clinic was closed by the government resulting in seizure of hundreds of thousands of dollars in cash from physicians and others who were associated with the clinic. A pharmacy listed as a "preferred pharmacy" by this pill mill was among those which were regularly supplied with prescription drugs known to be abused.

g.      State prosecutors and judges lament that as much as 90% of their case load consists of matters that are either directly or indirectly related to prescription drug abuse. As one prosecutor recently told a Charleston newspaper " I have sometimes morbidly said I would welcome a cocaine case because at least not as many people are dying from cocaine abuse as they are from prescription drug abuse. I bring this up to point out foremost that we continue to ignore the human cost of substance abuse. Families are destroyed. People die. People can't get jobs and become homeless. They don't send their children to school, which ultimately contributes to truancy, delinquency, another generation of crime and a host of other problems. We're at the top of the nation in births of drug-addicted babies."

h.      According to media reports from 2013, "Thirty-five percent of babies born in the state are born drug-addicted because their mothers are using drugs." It was reported also that West Virginia Senator Ron Stollings of Boone County, a physician, stated  that the economic costs of substance abuse is "chewing up tremendous amounts of money."

i.      White House drug czar Gil Kerlowske stated the obvious to West Virginia leaders at an assembly: "The devastation wrought by prescription drug abuse on Appalachian communities is simply heartbreaking . . . . Prescription drug abuse is claiming too many lives, threatening public safety and placing unnecessary obstacles in the way of economic

-4-

prosperity in Appalachia."

   j. The controlled substances distributed by this Defendant without sufficient monitoring of suspicious orders includes, but is not limited to, hydrocodone combinations (vicodin, lortab, lorcet, vocoprofen, tussenex, tussicaps), codeine combinations (e.g. empirin with codeine, fiorinal with codeine, tylenol with codeine), phenobarbital, lorazepam (ativan), triazolam (halcion), chlordiazepoxide (librium), diazepam (valium), alprazolam (xanax), zolpidem (ambien), zaleplon (sonata), zopiclone (lunesta), dextropropoxyphene (davron, darvocet), codeine preparations (Robitussin A-C), amobarbital (amytal), pentobarbital (nembutal), secobarbital (seconal), morphine (roxanol, duramorph), oxycodone (oxycontin, tylox, percocet, percodan), hydromorphone (diaudid), oxymorphone (opana, numorphan, numorphone), and meperdine (demerol) and other generic versions of each of the foregoing.

   4. West Virginia and its agencies seek to protect West Virginia communities by enjoining Defendant from distributing controlled substances without sufficient monitoring and controls and requiring notice to the State in order to prevent the creation and operation of pill-mills and distribution to any other suspicious prescription drug retailers.  The State of West Virginia seeks to recover the damages it has incurred, continues to incur and will in the future incur in addressing and combating the prescription drug abuse epidemic in West Virginia and in addressing its effects.

   5. The Defendant has profited from this epidemic by distributing controlled substances in West Virginia in amounts that are in excess of the amount of controlled substances legitimately medically required, thereby sourcing drugs ultimately used by drug abusers.  West Virginia law requires distributors of controlled substances such as this defendant to, "provide

effective controls and procedures to guard against . . . diversion of controlled substances [and] shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. . . . Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency." 15 WVCSR § 2-4.2.1 and 15 WVCSR § 2-4.4. By distributing excessive amounts of controlled substances, the Defendant violated West Virginia law by failing to implement or more particularly to follow and adhere to effective controls to guard against prescription drug diversion and by failing to effectively monitor, enforce and/or disclose the suspicious orders it filled.

6.     This Defendant is aware of its legal responsibilities in regard to preventing suspicious orders of abused prescription drugs from flooding susceptible locales. In 2008, Defendant Cardinal Health, Inc., paid $34 Million to settle charges that it failed to alert the DEA to suspicious orders for millions of pain pills that it was shipping to Internet pharmacies— operations that for years supplied the illicit market. In 2012, the DEA took action against Cardinal. In that case, the DEA alleged Cardinal sent a "staggeringly high" volume of pills to various dispensers that posed "an imminent danger to public health or safety." The DEA further alleged Cardinal otherwise failed to report suspicious orders. As a consequence, the DEA issued an Immediate Suspension Order to Cardinal on February 2, 2012. In the agreement it reached with the DEA in May 2012, Cardinal admitted that it had inadequate control over some of its prescription drugs. As far back as 2006, internet pharmacy owner, Rakesh Jyoti Saran, pleaded guilty in Texas to illegally distributing controlled substances from 1999 through 2005 and acknowledged purchasing controlled substances from Defendant Cardinal and several entities who are Defendants in companion litigation hereto, namely AmeriSourceBergen, Anda, and H.D.

-6-

Smith.

7.     The State expressly indicates that it does not seek any relief in this action for the federal share of funding for the State Medicaid Program.  Claims of damages for any federal monies expended are hereby expressly disavowed.

## II.

## Parties

8.     Plaintiff State of West Virginia appears at the relation of its duly elected Attorney General, Patrick Morrisey.  General Morrisey is authorized by the West Virginia Constitution, West Virginia common law and by statute to bring this action:

a.     *West Virginia Code* § 60A -5-501(c) invests the Attorney General with the duty and the authority to assist in the enforcement of the provisions of the Uniform Controlled Substances Act and to cooperate with agencies and other governmental entities, including but not limited to the West Virginia Department of Military Affairs and Public Safety and the West Virginia Department of Health and Human Resources, as relates to controlled substances; and

b.     *West Virginia Code* § 46A- 7-101 *et seq*, invests the Attorney General with authority to sue for violations of the West Virginia Consumer Protection Act, to recover civil penalties and to seek other remedies for violations of said statute.

9.     Plaintiff Joseph Thornton acting in his capacity as Secretary of the West Virginia Department of Military Affairs and Public Safety, an agency of the State of West Virginia established by *W.Va. Code* §5F-1-2.  The agency includes, *inter alia*, the West Virginia State Police, National Guard, the Division of Justice and Community Services, the Division of

-7-

Corrections, the Division of Homeland Security & Emergency Management, the Division of Juvenile Services, the Division of Protective Services, and the Regional Jail and Correctional Facilities Authority. This agency is charged with responsibility for, *inter alia*, enforcing the Uniform Controlled Substance Act, *W.Va. Code* § 60A-5-501 and for housing inmates who have violated said Act and/or committed other crimes related to their violations of the Act.

10. Plaintiff Karen Bowling acting in her capacity as Secretary of the West Virginia Department of Health & Human Resources, an agency of the State of West Virginia established by *W.Va. Code* § 5F-1-2. The agency includes, *inter alia*, the West Virginia Bureau of Behavioral Health & Health Facilities, the Bureau for Children and Families, the Bureau for Medical Services, and the Bureau for Public Health. This agency is charged with the responsibility for, *inter alia*, providing services related to drug addiction as well as the attendant problems of treatment and family-related issues.

11. The Defendant Cardinal Health, Inc. is an Ohio corporation which at all times pertinent hereto, was conducting business in West Virginia. This Defendant is a registrant with the West Virginia Board of Pharmacy and was so at all times relevant hereto.

### III.

### Jurisdiction and Venue

12. Pursuant to *W.Va. Code* § 46A-7-114 venue is proper in that the Defendants committed acts in violation of, *inter alia*, the West Virginia Uniform Controlled Substances Act and the West Virginia Consumer Credit and Protection Act in Boone County West Virginia. Further, the Defendants transacted business in Boone County as well as in other counties within the State of West Virginia.

-8-

## IV

## DEA's Suspension of Cardinal Health, Inc. As an
## Example of Defendants' Illegal Conduct

13.     In a recent federal district court proceeding in the District of Columbia regarding the DEA's suspension of Defendant Cardinal's federal controlled substances license, DEA alleged that Cardinal had not taken adequate safeguards to prevent prescription drugs which it distributed from being unlawfully diverted.

14.     The DEA further alleged that Cardinal's "staggeringly high" volumes of pills sent to various dispensers posed "an imminent danger to public health or safety" and thus the DEA issued an Immediate Suspension Order ("ISO") to Cardinal on February 2, 2012.

        a.      During this proceeding, it became apparent that Cardinal had sent 2,050,000 pills to a store in Florida, where the population of the town was 53,000 (USA Today).

        b.      An average pharmacy in the United States dispenses 69,000 oxycodone pills a year.  (USA Today).

15.     Indeed, the DEA explained "Orders Cardinal flagged as suspicious were overwhelmingly released with little or no explanation why.  Even those few orders that Cardinal refused to fill as suspect it failed to report to DEA, as Lakeland [Cardinal's location] was required to do.  Since it resumed operations in October 2008, Lakeland has not alerted DEA about a single suspicious order for three of its top four customers, even though two of them have surrendered their DEA registrations due to committing the very sort of diversion DEA expects Cardinal and all distributors to police.  During the relevant period of time, Cardinal never

-9-

conducted an in-store audit of either CVS, despite DEA having told Cardinal that it could not fulfill its due diligence obligations simply by relying on CVS's corporate controls.

16.     Moreover, when Cardinal's investigations did raise red flags, they were frequently ignored. In October 2010, for example, a Cardinal investigator suspected that a pharmacy was illegitimately dispensing oxycodone, and recommended that Cardinal call DEA. Not only did that call never come, Lakeland [Cardinal's location] increased oxycodone volume to this pharmacy in the months after the visit, notwithstanding the investigator's warning that this particular pharmacy posed a "high risk of diversion."

From the bench during a hearing on February 29, 2012, U.S. District Judge Reggie Walton ruled in favor of the DEA, stating, "I think DEA is correct that companies have an obligation to police themselves ... and to be proactive in assessing whether diversion (of controlled substances) is taking place." (Reuters)

17.     In regard to the District Court's validation of the DEA's Immediate Suspension Order (ISO), Cardinal appealed same. On May 16, 2012 the United States Court of Appeals for the District of Columbia Circuit ruled that the Defendant's (Cardinal Health, Inc) emergency motion for injunction pending appeal be denied, therefore the administrative stay of the DEA's immediate suspension order (ISO) was dissolved.

18.     Cardinal's actions or inactions in Florida are consistent with and similar to Cardinal's conduct in West Virginia. More particularly stated, as a major distributor of controlled substances in West Virginia, Cardinal has supplied controlled substances to rogue drugstores which dispense controlled substances based on bogus prescriptions from unethical physicians who are prescribing controlled substances for illegitimate medical purposes.

-10-

# Causes of Action

## Count I

### Injunctive Relief for Violations of Responsibilities and Duties Under The West Virginia Uniform Controlled Substances Act

19.     The State and its agencies hereby incorporate by reference all of the previous allegations of this Amended Complaint.

20.     *West Virginia Code* § 60A-5-501(c) provides: "All prosecuting attorneys and the attorney general, or any of their assistants, shall assist in the enforcement of all provisions of this act and shall cooperate with all agencies charged with the enforcement of the laws of the United States, of this state, and of all other states relating to controlled substances."

21.     *West Virginia Code* § 60A-5-503(a) states that "The courts of record of this state have and may exercise jurisdiction to restrain or enjoin violations of this act."

22.     Regulations promulgated pursuant to the West Virginia Uniform Controlled Substances Act, *W. Va. Code* § 60A-3-301, provide, *inter alia,* for the following:

- "Every person who manufactures, distributes or dispenses any controlled substance or who proposes to engage in the manufacture, distribution or dispensing of any controlled substance shall obtain annually a controlled substance permit unless exempted by law or pursuant to Section 3.2 of this rule." 15 *W.Va.C.S.R.* § 2-3.1.1.

- "All registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances." 15 *W.Va.C.S.R.* § 2-4.2.1.

- "The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances.  The registrant shall

-11-

inform the Office of the West Virginia Board of Pharmacy of suspicious orders when discovered by the registrant. Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency." 15 *W.Va.C.S.R.* § 2-4.4.

23.     Although this Defendant is the single registrant who has actually disclosed two (2) suspicious orders to the West Virginia Board of Pharmacy, (one of which was subsequently shipped) the Defendant has not been consistent in doing so and has filled suspicious orders that thereafter led to illegal dispensing of drugs for illegitimate purposes. The Defendant has failed to provide effective controls and procedures to guard against diversion of controlled substances in contravention of West Virginia law.

24.     By failing to do so, Defendant has willfully and repeatedly violated the Uniform Controlled Substances Act and corresponding regulations.

25.     The State, by and through, the Attorney General under the authority of *W.Va. Code* § 60A-5-501(c) and *W. Va. Code* § 60A-5-503(a) seeks to restrain the violations of 15 *W.Va.C.S.R.* § 2-4.4.

26.     The State of West Virginia and its agencies have in the past sustained enormous damages as the proximate result of the failure by the Defendant to comply with 15 *W.Va.CSR* § 2-4.2.1 and 15 *W.Va.CSR* § 2-4.4. Unless restrained by injunctive relief the State and its agencies will continue to suffer those losses as the proximate result of the failure by the Defendant to monitor and to disclose suspicious orders of controlled substances.

27.     The State of West Virginia has suffered substantial and irreparable harm and will in the future suffer irreparable harm unless the Defendant is restrained by an injunction.

28.     A lawsuit for damages for past losses as have been sustained by the State

-12-

is inadequate by itself to prevent future losses that will result from the failure to comply with West Virginia law as herein alleged.

## Count II

### Damages Resulting From Negligence and Violations of the West Virginia Uniform Controlled Substances Act

29.     The State and its agencies hereby incorporate by reference all of the previous allegations of this Amended Complaint.

30.     The epidemic prescription drug abuse is attended and promoted by the repeated violation of various provisions of the West Virginia Uniform Controlled Substances Act, to wit;

    a.    Improper dispensing of prescriptions contrary to *W.Va Code* § 60A-3-308;

    b.    Engaging in prohibited acts contrary to *W.Va Code* §§ 60A-4-401 through 403;

    c.    Deceiving and attempting to deceive medical practitioners in order to obtain prescriptions in contravention of *W.Va. Code* § 60A-4-410;

    d.    Disregarding the requirements of the Wholesale Drug Distribution Licensing Act of 1991, *W.Va. Code* § 60A-8-1 *et seq,*; and

    e.    Conspiring to violate the West Virginia Uniform Controlled Substances Act.

31.     The Defendant as a distributor of controlled substances is expected to comply both with the laws of the State into which they distribute controlled substances and with industry customs and standards.  In the instant case the standard of conduct for Defendant's industry requires that the Defendant know its customers which includes *inter alia* an awareness

-13-

of the customer base, knowledge of the average prescriptions filled each day, the percentage of controlled substances compared to overall purchases, a description of how the dispenser fulfills its responsibility to ensure that prescriptions filled are for legitimate medical purposes, and identification of physicians and bogus centers for the alleged treatment of pain that are the dispenser's most frequent prescribers.

32.     This Defendant has wilfully turned a blind eye towards the actual facts by regularly distributing large quantities of controlled substances to clients who are serving a customer base comprised of individuals who are themselves abusing prescription medications, many of whom are addicted and all of whom can reasonably be expected either to become addicted or to engage in illicit drug transactions.  The Defendant negligently acted to violate West Virginia's drug laws, dispensing controlled substances for illegitimate medical purposes, operating bogus pain clinics which do little more than provide prescriptions for controlled substances and thereby creating and continuing addictions to prescription medications.

33.     Under West Virginia law a party who violates a statute which violation results in damages is liable for such damages as are sustained therefrom. *W. Va. Code* § 55-7-9.

34.     This Defendant has by its acts and omissions proximately caused and substantially contributed to damages to the State of West Virginia by violating West Virginia laws, by creating conditions which contribute to the violations of West Virginia laws by others, by its negligence and by its reckless disregard of the customs, standards and practices within Defendant's own industry.

## Count III

## Violation of the West Virginia Consumer Credit and Protection Act (WVCCPA)

-14-

### Unfair Methods of Competition or Unfair or Deceptive Acts or Practices

35.     The State and its agencies hereby incorporate by reference all of the previous allegations of this Amended Complaint.

36.     West Virginia law as embodied in *W.Va. Code* § 46A-6-104 prohibits the use of unfair methods and/or competition or unfair or deceptive acts or practices in any trade or commerce.

37.     The Attorney General specifically is charged with the administration of this provision and may act *sua sponte* as the agent and legal representative of the State in civil proceedings to enforce the statute, *W. Va. Code* § 46A-6-103, §§ 46A-7-102, -108, -110, -111.

38.     Violations of statutes and regulations that are enacted to protect the Public or in the exercise of the State's police power constitute unfair or deceptive acts or practices.

39.     Regulations promulgated pursuant to the West Virginia Uniform Controlled Substances Act, *W. Va. Code* § 60A-3-301 18 provide, *inter alia,* for the following:

- "Every person who manufactures, distributes or dispenses any controlled substance or who proposes to engage in the manufacture, distribution or dispensing of any controlled substance shall obtain annually a controlled substance permit unless exempted by law or pursuant to Section 3.2 of this rule." 15 *W.Va.C.S.R.* § 2-3.1.1.

- "All registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances." 15 *W.Va.C.S.R.* § 2-4.2.1.

- "The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the Office of the West Virginia Board of Pharmacy of suspicious orders when discovered by the registrant. Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency." 15 *W.Va.C.S.R.* § 2-4.4.

40.     Each violation of these mandatory duties in the West Virginia Uniform

-15-

Controlled Substances Act and its corresponding regulations is an unfair or deceptive act or practice in the conduct of trade or commerce, as set forth in *W. Va. Code* § 46A-6-104.

41. Defendant's repeated violations were and are willful, and the State seeks civil penalties under *W. Va. Code* § 46A-7-111(2) for each violation.

42. As a result of the Defendant's actions and omissions the State and its agencies have sustained damages, both past and in the future.

43. The State and its agencies seek all " other appropriate relief" under *W. Va. Code* § 46A-7-108, including attorney fees and costs.

## Count IV

## Public Nuisance

44. The State and its agencies hereby incorporate by reference all of the previous allegations of this Amended Complaint.

45. Defendant, individually and acting through its employees and agents, has created and continues to perpetrate and maintain a public nuisance by the massive distribution of abused prescription drugs for use by the citizens of West Virginia, and by its failure to put in place effective controls and procedures to guard against theft and diversion of controlled substances, and its failures to adequately design and operate a system to disclose suspicious orders of controlled substances, and by its failures to inform the State of suspicious orders when discovered by the registrant ("suspicious orders" include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency). Defendant knew or should have known its conduct would cause hurt or inconvenience to the countless numbers of West Virginians in a multitude of ways.

-16-

46.     As a direct result of the conduct of this Defendant as set forth above, Defendant has negligently, intentionally and/or unreasonably interfered with the right of West Virginians to be free from unwarranted injuries, addictions, diseases and sicknesses and have caused ongoing damage, hurt or inconvenience to West Virginia residents exposed to the risk of addiction to prescription drugs, who have become addicted, and/or have suffered other adverse consequences from the use of the addictive prescription drugs distributed by Defendant, and countless others who will suffer the same fate in the future as Defendant's conduct is continuing.

47.     As a direct result of Defendant's conduct as set forth above, Defendant has negligently, intentionally and/or unreasonably interfered with the Public's right to be free from unwarranted injury, disease or sickness, and have caused ongoing damage, hurt or inconvenience to the public health, the public safety and the general welfare of the citizens of West Virginia.

48.     The health and safety of the citizens of West Virginia, including those who have used or will use prescription drugs, is a matter of great public interest and of legitimate concern to the State and its citizens.

49.     The public nuisance created, perpetuated and maintained by Defendant can be abated and further occurrence of such harm and inconvenience can be prevented.

50.     This Defendant was on notice that an epidemic from prescription drug abuse existed and has existed during times relevant to this Amended Complaint. Such notice is the result of

- A large amount of media coverage of prescription drug abuse and its consequences by both national and local print, television and radio media;

- Publications received from government sources as well as warnings and recommendations contained in trade and professional journals;

-17-

- Changes in law and regulations which were designed specifically to address the growing problem of prescription drug abuse.

51. The widespread publicity contained many references and statistics concerning West Virginia's problems from prescription drug abuse including, but not limited to, suffering the nations' highest per capita death rate from prescription drug overdose.

52. Notwithstanding the knowledge of this epidemic of prescription drug abuse in West Virginia, the Defendant persisted in a pattern of distributing controlled substances of the kinds which were well-known to be abused and diverted all the while distributing them in geographic areas, and in such quantities and with such frequency, that the Defendant knew or should have known that these substances were not being prescribed and consumed for legitimate medical purposes.

53. As the result of the above-described conduct the Defendant negligently, recklessly and/or intentionally, and acting with blind indifference to the facts, created and continued propagate a public nuisance. More particularly, the public nuisance so created, injuriously, and in many areas pervasively, affects West Virginia communities and the State, and endangers the public health and safety and inconveniences the citizens of the State, *inter alia,* in the following ways:

- Areas in certain communities have become congested with persons who gather in large groups outside of "clinics, pharmacies and physician offices" that in fact are component parts of Pill Mills that exist only to prescribe and deliver drugs for illicit, non-medical purposes;
- Crimes and other dangerous activities have increased;
- Hospital services, especially those services provided by emergency rooms, are being consumed by persons with prescription drug abuse issues;

- Law enforcement and prosecutorial resources are being exhausted and consumed

-18-

by having to address prescription drug abuse issues to the exclusion of other matters;

- Public resources are being unreasonably consumed in efforts to address the prescription drug abuse epidemic, thereby eliminating available resources which could be used to benefit the public at large;

- Court dockets are congested by prescription drug-related cases as well as by crimes committed by addicts, thereby diminishing access to our courts by others;

- Jails and prisons suffer from overcrowding.

54.     As a direct result of the acts and omissions of Defendant in creating, perpetuating and maintaining the public nuisance hereinabove described, the public nuisance described herein has damaged the health and safety of West Virginia citizens in the past and will continue to do so in the future unless the nuisance is abated.

55.     The State has sustained economic harm in the expenditure of massive sums of monies and will in the future continue to suffer economic harm unless the above-described public nuisance is abated.

**Count V**

**Negligence**

56.     The State and its agencies reallege and incorporates by reference all preceding paragraphs as though fully set forth herein and further alleges the following.

57.     Defendant has a duty to exercise reasonable care in the distribution of controlled substances.

58.     Defendant has breached this duty by their conduct alleged above.

59.     As a proximate result, Defendant and its agents have caused the State and

-19-

its agencies to incur excessive costs related to diagnosis, treatment and cure of addiction or the risk of addiction to such controlled substances, thus the State has borne the massive costs of these illnesses and conditions by having to provide necessary medical care, facilities and services for treatment of citizens of West Virginia who are unable to afford or otherwise obtain such necessary medical care, facilities and services.

60.     The Defendant was negligent in failing to monitor and guard against third-party misconduct, *i.e.* the conduct of the Pill Mill physicians and staff as well as corrupt pharmacists and staff and, in fact, by their actions the Defendant participated and enabled such misconduct.

61.     Defendant's acts and omissions as aforesaid imposed an unreasonable risk of harm to others separately and/or as combined with the negligent and/or criminal acts of third parties.

62.     The Defendant is in a class of a limited number of parties that distribute controlled substances and such activity poses distinctive and significant dangers.  The dangers include diversion of controlled substances for non-legitimate medical purposes and addiction to same by consumers.

63.     The Defendant was negligent in not acquiring and utilizing special knowledge and special skills that relate to the dangerous activity in order to prevent and/or ameliorate such distinctive and significant dangers.

64.     Controlled substances are dangerous commodities.  The Defendant distributor is required to exercise a high degree of care and diligence to prevent injury to the public from the diversion of controlled substances during distribution.  The Defendant breached

its duty to exercise the degree of care, prudence, watchfulness, and vigilance commensurate to the dangers involved in the transaction of its business. The Defendant cannot delegate this duty of care to another.

65.     The distribution of these controlled substances is under the exclusive control and management of the Defendant. The State and its agencies are without fault and the injuries to the State, it agencies and its citizens would not have happened in the ordinary course of events had the Defendant used due care commensurate to the dangers involved in the distribution of controlled substances. Hence, the Defendant is negligent.

## **PRAYER**

**WHEREFORE**, the State and its agencies pray that the Court grant the following relief:

1.   Judgment in favor of the State;

2.   Temporary relief, a preliminary injunction and permanent injunction ordering the ordering the Defendant to comply with the West Virginia Uniform Controlled Substances Act, *W. Va. Code* § 60A-3-301 (and regulations promulgated thereto), and *West Virginia Code* § 46A-6-104, and to cease its unlawful conduct, and mandate the Defendant promptly notify the West Virginia Board of Pharmacy, the Office of the Attorney General, and the Department of Military Affairs and Public Safety of any and all suspicious orders for controlled substances as received from parties who are located in West Virginia and to submit their system for determining suspicious orders to those West Virginia authorities for prior approval, and to enter temporary and permanent injunctions that mandate Defendant be enjoined from distributing in West Virginia any controlled

substances for any non-legitimate medical purpose;

3. Equitable relief, including but not limited to restitution and disgorgement;

4. Order a jury trial to determine such costs, losses and damages as are proved in this action in relation to the several counts of this Amended Complaint including, but not limited to:

   a. Losses sustained as the proximate result of both negligent and conscious violations of the West Virginia Uniform Controlled Substances Act and regulations;

   b. Damages sustained as the proximate result of nuisances created by the prescription drug abuse epidemic;

   c. Damages and losses sustained as the proximate result of the Defendant's negligence in marketing, promoting and distribution of controlled substances in West Virginia;

   d. Disgorgement of unjust enrichment of the Defendant;

   e. Civil penalties of up to $5000 for each repeated and willful violation of Chapter 46A, under *West Virginia Code* § 46A-7-111;

   f. Pre- and post-judgment interest;

   g. Costs and reasonable attorneys' fees; and

5. Such other relief, fees and cost as shall be available under the West Virginia Credit and Consumer Protection Act.

6. Order reimbursement of all litigation costs and enter an award of attorney fees herein.

7. And grant such other and further relief as shall be deemed appropriate herein.

   **Plaintiffs seek a jury trial for all such counts as are so triable.**

-22-

**STATE OF WEST VIRGINIA** *ex rel.*
Patrick Morrisey, Attorney General

Joseph Thornton, Secretary
**WEST VIRGINIA DEPARTMENT OF
MILITARY AFFAIRS AND PUBLIC
SAFETY**, an agency of the State of West
Virginia,

Karen Bowling, Secretary
**WEST VIRGINIA DEPARTMENT OF
HEALTH & HUMAN RESOURCES**, an
agency of the State of West Virginia,

*By Counsel,*

Dan Greear, Esq., Chief Counsel
**OFFICE OF ATTORNEY GENERAL**
Building 1, Room 26-E
Capitol Complex
Charleston, WV 25305
Telephone: 304-558-2021

James M. Cagle, WV Bar No. (580)
**CAGLE & JACKSON, ATTORNEYS**
P.O. Box 12326
Big Chimney Station
Charleston, WV 25302

Rudolph L. DiTrapano WV Bar No.1024
**DITRAPANO BARRETT DIPIERO
MCGINLEY & SIMMONS, PLLC**
604 Virginia Street, East
Charleston, WV 25301

-23-

## IN THE CIRCUIT COURT OF BOONE COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA
ex rel DARRELL V. MCGRAW, JR.
Attorney General,

                Plaintiff,

v.

CARDINAL HEALTH, INC.
an Ohio corporation doing business in
West Virginia,

                Defendant.

Civil Action No.12-C-140
Judge William S. Thompson

### CERTIFICATE OF SERVICE

TO:    Cardinal Health, Inc.: Via Fax and email: 304-357-0919
        W. Henry Jernigan, Jr., Esq. (WV Bar No. 1884)
        Mark A. Carter, Esq. (WV Bar No. 4316)
        Dinsmore & Shohl, LLP
        P.O. Box 11887
        Charleston, WV 25339-1887
        *Counsel for Cardinal Health, Inc.*

The undersigned, Counsel for the Plaintiff, State of West Virginia ex rel. McGraw does

hereby certify that a true and correct copy of the ***Plaintiff's Amended Complaint*** was served by

via email and regular US mail to Mark A. Carter, Esq., and W. Henry Jernigan, Jr., Esq at the law

firm of Dinsmore & Shohl, LLP, P.O. Box 11887, Charleston, WV 25339, counsel for

Defendant, on this the 8th day of January, 2014.

James M. Cagle (WV Bar No. 580)
P. Rodney Jackson, (WV Bar No.1861)
**CAGLE & JACKSON**
P.O. Box 12326
Big Chimney Station
Charleston, WV 25301

Dan Greear (WV Bar No. 6036)
Chief Deputy Attorney General
**OFFICE OF ATTORNEY GENERAL**
Building 1, Room 26-E, Capitol Complex
Charleston, WV 25305
(304) 558-2021
(304) 558-0140 facsimile

# EXHIBIT 12

# Cagle & Jackson, Attorneys

P.O. Box 12326 Big Chimney Station
Charleston, WV 25302
Email: Caglelaw@aol.com
Phone: (304) 342-3174
Fax: (304) 342-0448

August 11, 2015

Sue Ann Zickefoose, Clerk
Boone County Courthouse
200 State Street
Madison, WV 25130

*Re:*      ***State et al. v. Cardinal Health Inc.***
        ***Civil Action No. 12-C-140***

Dear Ms. Zickefoose:

   Find delivered herewith the Second Amended Complaint which is being filed **under seal**. A copy of course is being served upon counsel for Cardinal Health Inc. Further, a copy is being sent to Judge Thompson also under seal until the Court concludes, if it does, that it should be unsealed.

Sincerely,

James M. Cagle

JMC/maj
Enclosures
cc:    Honorable William S. Thompson, Circuit Judge
       Steve Jarrell, Esq. Assistant Attorney General
       Rudy DiTrapano, Esq.
       Rob Bastress, Esq.
       Sean McGinley, Esq.
       James R. Wooley, Esq.
       Chad A. Readler, Esq.
       W. Henry Jernigan, Jr. Esq.
       Mark A. Carter, Esq.

IN THE CIRCUIT COURT OF BOONE COUNTY, WEST VIRGINIA

**STATE OF WEST VIRGINIA**
*ex rel.* **PATRICK MORRISEY,**
Attorney General, **JOSEPH THORNTON,**
in his capacity as the Secretary of the
**WEST VIRGINIA DEPARTMENT
OF MILITARY AFFAIRS AND PUBLIC SAFETY,**
an agency of the State of West Virginia, and
**KAREN BOWLING,** in her capacity as the Secretary
of the **WEST VIRGINIA DEPARTMENT OF
HEALTH & HUMAN RESOURCES**, an agency
of the State of West Virginia,

       Plaintiffs,

v.                                      Civil Action No.12-C-140
                                      (Hon. William S. Thompson, Judge)

**CARDINAL HEALTH, INC.,**
an Ohio corporation doing business in
West Virginia,

       Defendant.

# UNDER SEAL

## SECOND AMENDED COMPLAINT

## IN THE CIRCUIT COURT OF BOONE COUNTY, WEST VIRGINIA

**STATE OF WEST VIRGINIA**
*ex rel.* **PATRICK MORRISEY,**
Attorney General, **JOSEPH THORNTON,**
in his capacity as the Secretary of the
**WEST VIRGINIA DEPARTMENT
OF MILITARY AFFAIRS AND PUBLIC SAFETY,**
an agency of the State of West Virginia, and
**KAREN BOWLING,** in her capacity as the Secretary
of the **WEST VIRGINIA DEPARTMENT OF
HEALTH & HUMAN  RESOURCES,** an agency
of the State of West Virginia,

        Plaintiffs,

v.                                              Civil Action No.12-C-140
                                               (Hon. William S. Thompson, Judge)

**CARDINAL HEALTH, INC.,**
an Ohio corporation doing business in
West Virginia,

        Defendant.

## SECOND AMENDED COMPLAINT

For their Second Amended Complaint, the State of West Virginia, at the relation of its

duly-elected Attorney General Patrick Morrisey, and two of its agencies, the West Virginia

Department of Military Affairs and the West Virginia Department of Health & Human Resources

by cabinet secretaries Joseph Thornton and Karen Bowling respectively state the following:

### I.

### Introduction

Pursuant to the Order of this Court and in conformity with Rule 15(b) and (d) of the West

Virginia Rules of Civil Procedure, counsel for the Plaintiffs file their Second Amended and

Supplemental Complaint on behalf of the Plaintiff. They present the following as supplemented in part by information contained in the discovery which was previously produced by this Defendant.

The Defendant's initial discovery production already exceeds thousands of pages and involves millions of controlled substances transactions. There exists the potential of literally thousands of wrongful acts which will be litigated in this case. As a consequence of the foregoing, Plaintiffs set forth additional offending acts and omissions together with specific examples and supporting statistics.

## **Description of Action**

1.    This civil action addresses the epidemic of prescription drug abuse and its costs to the State of West Virginia. Prescription drug abuse costs the State of West Virginia hundreds of millions of dollars annually. Beyond the actual dollars lost, prescription drug abuse devastates West Virginia communities and families and reduces the State's economic productivity. The damage done by prescription drug abuse adversely effects West Virginia's hospitals, schools, courts, social service agencies, jails and prisons as well as diminishing the very quality of life in our cities and towns. Accordingly, the State, at the relation of its Attorney General, the West Virginia Department of Military Affairs and Public Safety, and the West Virginia Department of Health and Human Resources (collectively herein referred to as "the State") brings this action against the largest distributor by volume among the distributors who have tortiously benefitted financially from the prescription drug abuse problem in West Virginia.

2.    This Defendant has distributed prescription drugs of the kind closely identified with the prescription drug abuse problem in West Virginia.  In recent years, it has been well publicized in the media that West Virginia has been, per capita, one of the "most medicated" states in the country, with a prescription drug abuse problem of epidemic proportions.  The Defendant was on notice of the growing West Virginia epidemic of the abuse of those prescription drugs it supplied and of the quantities and frequency with which those drugs were distributed to entities in West Virginia.  For reasons more specifically set forth in the following causes of actions this Defendant is answerable in damages to the State of West Virginia and is susceptible to such other relief as is being requested herein.

3.    According to DEA data Defendant Cardinal is the largest distributor of controlled substances to West Virginia customers.  Many of these customers are located in rural or low population areas and order such large quantities that are so much greater than the population that those orders are, at the very least, suspicious.  Many of these pharmacies are "pill mills."

4.    Through its acts and omissions this Defendant has inserted itself as an integral part of the Pill Mill process.

5.    As hereinafter alleged the Defendant acted negligently, recklessly and in contravention of West Virginia law.  More particularly, the Defendant violated West Virginia statutes and regulations that govern controlled substances and consumer protection.  The Defendant received substantial revenue from West Virginia entities while engaging in wholesale drug distribution in West Virginia and in supplying West Virginia pill mills.

-3-

6.   The problems, damages and losses related to the prescription drug epidemic in West

Virginia include, *inter alia,* the following:

a.   Costs to the State of as much as $430 million annually in the year 2010 with costs projected to be as much as $695 million annually by 2017;

b.   A per capita death rate from prescription drug overdose that has at times been either the highest or the second highest recorded for all States in the United States. One West Virginia County, McDowell County, located in Southern West Virginia, had a death rate of 34.2 per 100,000 in 2001 and 97.3 in 2008; West Virginia's death rate by drug overdose was 36.2 per 100,000 in 2011 as compared to the U.S. rate of 13.2.

c.   Between 2001 and 2008 West Virginia deaths from overdoses involving prescription drugs quadrupled from 5.1 deaths per 100,000 residents to 21.5; and now it is even greater according to more recent statistics;

d.   According to Charleston Area Medical Center approximately twenty (20) percent of patients admitted through the hospital's trauma service have an issue with narcotic usage which contributes to their injuries. As such, the demand from the growing problem of addiction and management of addicted patients will eventually be too great for the available care provided unless the problem is addressed. Many of the addicted patients have no medical insurance coverage;

e.   West Virginia has been identified as the nation's "most medicated state" based upon data gathered for 2009. Pharmacies in the State filled 18.4 prescriptions per capita as compared to the national average of 11.6 per capita;

f.   One pharmacy located in tiny Kermit, West Virginia (population 400) in 2006 received 3,194,400 dosage units of hydrocodone which ranked 22nd in the nation among all pharmacies with respect to purchases of hydrocodone dosage and 35th nationally when mail order pharmacies were taken into account. The owner who is a licensed pharmacist has testified that the pharmacy filled one prescription per minute. Pharmacy records reveal that the pharmacy regularly paid suppliers hundreds of thousands of dollars and that virtually 90% of the drugs ordered and received were of the kind associated with the prescription drug epidemic. The pharmacy reported revenue of more than $500,000 per month. A recent article described Kermit as "ground zero" in the prescription drug epidemic;

g.   One Pittsburgh area physician who entered a guilty plea to a criminal law violation allegedly worked in or owned an operation in Southern West Virginia that a federal investigation disclosed netted him as much as $20,000 per day in

-4-

cash deposits made to his personal bank account. That so-called clinic was closed by the government resulting in seizure of hundreds of thousands of dollars in cash from physicians and others who were associated with the clinic. Two pharmacies listed as "preferred" by this pill mill were among those that regularly were supplied by this Defendant with prescription drugs known to be abused;

h.   As much as 90% of Circuit Court criminal dockets are regularly made up of matters that are either directly or indirectly related to prescription drug abuse.

i.   Reports indicate that thirty-five percent of babies born in the State are born drug-addicted because their mothers are using drugs.

j.   White House drug czar Gil Kerlowske stated the obvious to West Virginia leaders at an assembly: "The devastation wrought by prescription drug abuse on Appalachian communities is simply heartbreaking . . . . Prescription drug abuse is claiming too many lives, threatening public safety and placing unnecessary obstacles in the way of economic prosperity in Appalachia."

7.   West Virginia and its agencies hereby seek to protect West Virginia communities by enjoining this Defendant from distributing controlled substances without sufficient monitoring and controls of suspicious orders, and by requiring notice to the State in order to prevent the creation and operation of pill mills or distribution to any other suspicious prescription drug retailers. The State further seeks to require the Defendant to actually strictly follow its suspicious orders protocol. The State of West Virginia also seeks to recover the damages it has incurred, continues to incur, and will incur in the future in addressing and combating the prescription drug abuse epidemic in West Virginia and in addressing its effects, to all of which Cardinal's acts and omission as stated herein were a proximate case.

8.   This Defendant has profited from this epidemic by distributing controlled substances in West Virginia in amounts that are in excess of the amount of controlled substances which are for legitimate medical purposes, thereby sourcing drugs ultimately used by drug

-5-

abusers.  West Virginia law requires distributors of controlled substances such as the Defendant to, "provide effective controls and procedures to guard against . . . diversion of controlled substances [and] . . . design and operate a system to disclose to the registrant suspicious orders of controlled substances. . . . Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency."  15 *WVCSR* § 2-4.2.1 and 15 *WVCSR* § 2-4.4.  By distributing excessive amounts of  controlled substances as aforesaid, the Defendant drug distributor violated West Virginia law by failing to implement, or more particularly failing to follow, and adhere to effective controls to guard against prescription drug diversion and by failing to effectively monitor, enforce and/or disclose suspicious orders it fills.

9.    This Defendant is well aware of its legal responsibilities in regard to preventing suspicious orders of abused prescription drugs from flooding susceptible locales.  In 2008 Cardinal paid a $34 million to the DEA to resolve allegations that Cardinal failed to notify the DEA about suspicious orders it filled.  In 2012 Cardinal agreed to a two year suspension of its license to ship controlled substances from its Lakeland, Florida operation for having improperly distributed prescription pain pills.

10.   The State expressly indicates that it does not seek any relief in this action for the federal share of funding of the State Medicaid Program.  Claims of damages for any federal monies are hereby expressly disavowed.

## II.

## Parties

11.    Plaintiff State of West Virginia appears at the relation of its duly elected Attorney

General, Patrick Morrisey.  General Morrisey is authorized by the West Virginia

Constitution, West Virginia common law and by statute to bring this action:

a.    *West Virginia Code* § 60A-5-501(c) invests the Attorney General with the duty

and the authority to assist in the enforcement of the provisions of the Uniform

Controlled Substances Act and to cooperate with agencies and other governmental

entities, including but not limited to the West Virginia Department of Military

Affairs and Public Safety and the West Virginia Department of Health and Human

Resources, as relates to controlled substances;

b.    *West Virginia Code* § 46A- 7-101 *et seq*, invests the Attorney General with

authority to sue for violations of the West Virginia Consumer Protection Act, to

recover civil penalties and to seek other remedies for violations of said statute;

and

c.    Under West Virginia common law, the Attorney General possesses the authority

to enforce all of the applicable laws cited herein, including the consumer

protection laws, substance abuse laws, and laws governing the illicit distribution

of drugs in West Virginia.

12.    Plaintiff Joseph Thornton acts in his capacity as Secretary of the West Virginia

Department of Military Affairs and Public Safety, an agency of the State of West Virginia

established by *W.Va. Code* §5F-1-2.  The agency includes, *inter alia*, the West Virginia

-7-

State Police, National Guard, the Division of Justice and Community Services, the Division of Corrections, the Division of Homeland Security & Emergency Management, the Division of Juvenile Services, the Division of Protective Services, and the Regional Jail and Correctional Facilities Authority. This agency is charged with responsibility for, *inter alia*, enforcing the Uniform Controlled Substance Act, *W.Va. Code* § 60A-5-501 and for housing inmates who have violated said Act and/or committed other crimes related to their violations of the Act.

13.  Plaintiff Karen Bowling acts in her capacity as Secretary of the West Virginia Department of Health & Human Resources, an agency of the State of West Virginia established by *W.Va. Code* § 5F-1-2. The agency includes, *inter alia*, the Bureau of Behavioral Health & Health Facilities, the Bureau for Children and Families, the Bureau for Medical Services, and the Bureau for Public Health. This agency is charged with the responsibility for, *inter alia*, providing services related to drug addiction as well as the attendant problems of treatment and family-related issues.

14.  At all times pertinent to this Second Amended Complaint this Defendant was doing business in West Virginia as a wholesale drug distributor.

At relevant times Defendant Cardinal Health, Inc. was:

   •   Knew or should have known and was on notice that an epidemic of prescription drug abuse existed in West Virginia and in the specific areas of this State in which their customers were located. Further, Cardinal knew or should have known and was on notice that the controlled substances being distributed were the kind which were being abused;

-8-

- Knew or should have known and was on notice that State law required them, *inter alia*, to provide effective controls and procedures to guard against diversion of controlled substances, 15 WVCSR §2-4.21 and 15 WVCSR §2-4-4; and

- Knew or should have known and was on notice that the Healthcare Distribution Management Association ("HDMA") *Industry Compliance Guidelines: Reporting Suspicious Orders and Preventing Diversion of Controlled Substances*" describe the critical role of each member of the supply chain in distributing controlled substances.  These industry guidelines further provide: "At the center of a sophisticated supply chain, distributors are uniquely situated to perform due diligence in order to help support the security of controlled substances they deliver to their customers."  Industry standards and guidelines contain the following elements:

I.     Know Your Customer Due Diligence

II.    Monitoring for Suspicious Orders

III.   Suspend/Stop an Order of Interest Shipment

IV.    Investigation of Orders of Interest

V.     File Suspicious Order Reports with DEA

VI.    Employees, Training and Standard Operating Procedure (SOP)

VII.   Additional Recommendations

The guidelines' first element of "Know Your Customer" provides that distributors must

gather substantial information on each of its customers, including, *inter alia*, their business background, customer base, average number of prescriptions filled each day, average number of controlled substances item prescriptions filled each day, percentage of controlled substance purchases compared to overall purchases, *etc.* According to the industry standards and guidelines, this information must be reviewed carefully by the distributor, and the distributor must conduct a thorough, independent investigation of the customer:

- Subject to the requirement that it provide notice to the appropriate authorities of any suspicious orders for controlled substances and not fill the same. Notwithstanding its duties regarding suspicious orders, Cardinal regularly filled suspicious orders of West Virginia customers. In so doing Cardinal acted either with gross negligence or with a willful blind eye to the facts and circumstances when filling suspicious orders for controlled substances.

- Further, Cardinal failed to adhere to industry customs and standards and violated applicable West Virginia statutes and regulations.

### III.

### Jurisdiction, Venue and Claims

15. Jurisdiction exists pursuant to the provisions of *West Virginia Code* § 56-3-33, as amended, in that Defendant Cardinal by and through its authorized agents, servants and employees regularly transacted business in West Virginia, supplied and distributed prescription drugs in West Virginia and further through their acts and omissions tortiously caused injuries in West Virginia by engaging in a persistent course of conduct

in West Virginia that violated West Virginia law.  These Defendants derived substantial revenue as the result of the controlled substance that were distributed to West Virginia entities and later consumed by persons then residing in West Virginia.  More particularly, the acts and omissions as claimed are described hereinafter.

16.   DEA statistics indicate that in the 5 years beginning January 2007 and ending December 2012 Defendant Cardinal Health, Inc. distributed at least 155,629,101 hydrocodone and 85,493,140 oxycodone pills to West Virginia customers.

These same statistics when broken down by county are revealing in that the counties most effected by the prescription drug epidemic received large quantities of controlled substances from Cardinal.  For example: The distribution statistics stated below show such a huge amount of distribution of controlled substances beyond what the local population legitimated could be expected to need that one amount of distributions should have been identified as suspicious, but were not.

      a.     During this period of time Boone county customers received *1,042,090* hydrocodone and *431,120* oxycodone from Cardinal.  Neighboring Logan County customers received from Cardinal a total of *8,863,310* hydrocodone and *1,844,000* oxycodone.  Mingo County customers received *2,382,9900* hydrocodone and *117,400* oxycodone while McDowell County received *3,052,370* hydrocodone and *1,492,960* oxycodone from Cardinal.

      b.     Statewide the foregoing figures reflect Cardinal alone distributed 154.39 hydrocodone for each man, woman and child in West Virginia over 5

-11-

years, and also 84.81 oxycodone for every person in the State.

c.     Considering the populations of Logan County (36,743) that amounts to 241.22 hydrocodone for every person in the county and 50.19 oxycodone for each person.

d.     For McDowell County (population 22,113) it is 138.04 per person for hydrocodone and 67.52 per person for oxycodone consumption.

e.     In Williamson, West Virginia, population 3,191, this Defendant distributed massive amounts of hydrocodone and other abused controlled substances to Hurley Pharmacy, a pill mill which filled prescriptions written by the notorious Williamson pill mill physicians at the Mountain Medical Clinic, aka Williamson Wellness Center, and Diane Shafer.  The totals reflected in Cardinal's records are as follows: (2007-2008) 397,500 hydrocodone; (2009-2010) 470,900 alpraxalom and 749,300 hydrocodone; (2011-2012) 355,000 alpraxalom and 991,000 hydrocodone and 68,100 oxycodone. (2013) 87,000 alpraxalom and 246,400 hydrocodone and 29,300 oxycodone.  At the same times other distributors who are known to the State were also inundating Hurley Pharmacy with hydrocodone.

17.    Cardinal records indicate that the company distributed oxycodone to Best Care Pharmacy. Records reflect the 2013 total to be 73,900 oxycodone distributed and in years 2011 and 2012 the total was 23,000.  In 2014 Best Care pharmacist Mario Blount was charged with violations of federal drug laws because of his illegal distribution and conspiracy to distribute oxycodone and oxymorphone.  This followed October, 2013 search warrants

-12-

served at several Best Care locations.  Mr. Blount has since been convicted and sentenced to a period of incarceration.  Cardinal's distributions of controlled substances to Best Care as aforesaid were suspicious and should have been refused and reported, but were not.

18.  Other suspicious transactions appear from the records as supplied by Cardinal in its discovery.

    a.  Distribution to Trivillian's Pharmacy in Charleston.  This Pharmacy's owner is awaiting sentencing after entering a guilty plea following an investigation by drug task force officers.  Trivillian's filled all prescriptions brought to it from the Hope Clinic, a pill mill operation which has been closed by authorities in West Virginia.  Cardinal's records indicate delivery of 246,400 hydrocodone in 2013, 245,000 in 2011-2012 along with 362,800 oxycodone.  The 2009-2010 totals were 263,000 hydrocodone and 333,800 oxycodone distributed.  These distributions were suspicious, should have been refused and reported, but were not.

    b.  Van, West Virginia is a Boone County community which had a population of 211 people in 2010.  In the period of 2011-2012 Cardinal distributed to Van Professional Pharmacy 102,100 alpraxalom and 207,000 hydrocodone.  Cardinal's distribution to Van Professional Pharmacy as aforesaid were suspicious, should have been refused and reported, but were not.

19.   The foregoing statistical information standing alone is representative and prima facie shows suspicious transactions.  That is particularly so when one considers the known data referred to in paragraph 6 supra and the requirement that this distributor shall "know your customer."  Cardinal violated these duties in making the distributions identified above.

20.   Further, this Defendant regularly supplied known addictive and abused controlled substances to Family Pharmacy, aka B&K Pharmacy, of South Williamson, Kentucky. Family Pharmacy is a pill mill pharmacy located in Pike County just yards away from the State line with Mingo County, West Virginia.  Family Pharmacy was on the list of "preferred pharmacies" which regularly filled prescriptions faxed directly to it by staff at Mountain Medical Center and other prescriptions delivered by Diane Shafer's customers or patients.  Along with other distributors who are being sued by these Plaintiffs, Cardinal distributed that cocktail of widely abused controlled substances which the pill mill "physicians" and their staffs forwarded to Family Pharmacy on a daily basis.

21.   The foregoing are not intended to be exhaustive of Cardinal's wrongful acts and omissions at issue herein.  They are however representative.

## IV

### Causes of Action

### Count I

**Injunctive Relief for Violations of Responsibilities and
Duties Under The West Virginia Uniform
Controlled Substances Act**

22.    The State hereby incorporates by reference all of the previous allegations of this Second Amended Complaint.

-14-

23. *West Virginia Code* § 60A-5-501(c) provides: "All prosecuting attorneys and the attorney general, or any of their assistants, shall assist in the enforcement of all provisions of this act and shall cooperate with all agencies charged with the enforcement of the laws of the United States, of this state, and of all other states relating to controlled substances."

24. *West Virginia Code* § 60A-5-503(a) states that, "The courts of record of this state have and may exercise jurisdiction to restrain or enjoin violations of this act."

25. Regulations promulgated pursuant to the West Virginia Uniform Controlled Substances Act, *W. Va. Code* § 60A-3-301, provide, *inter alia,* for the following:

   • "Every person who manufactures, distributes or dispenses any controlled substance or who proposes to engage in the manufacture, distribution or dispensing of any controlled substance shall obtain annually a controlled substance permit unless exempted by law or pursuant to Section 3.2 of this rule." 15 *W.Va.C.S.R.* § 2-3.1.1.

   • "All registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances." 15 *W.Va.C.S.R.* § 2-4.2.1.

   • "The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the Office of the West Virginia Board of Pharmacy of suspicious orders when discovered by the registrant. Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency." 15 *W.Va.C.S.R.* § 2-4.4.

26. This Defendant has failed to diligently respond to suspicious orders that it has filled. Defendant Cardinal therefore has failed to provide effective controls and procedures to guard against diversion of controlled substances in contravention of West Virginia law.

27. By failing to do so, Cardinal has willfully and repeatedly violated the West Virginia Uniform Controlled Substances Act and corresponding regulations.

28. The State, by and through, the Attorney General under the authority of *W.Va. Code* §

-15-

60A-5-501(c) and *W. Va. Code* § 60A-5-503(a) seeks to restrain the violations of 15 *W.Va.C.S.R.* §§ 2-4.2.1, 2-4.4.

29. The State of West Virginia and its agencies have in the past sustained enormous damages as the proximate result of the failure by Cardinal to comply with 15 *W.Va.CSR* §2-4.2.1 and 15 *W.Va.CSR* §2-4.4.  Unless restrained by injunctive relief the State will continue to suffer losses as the proximate result such to monitor and to disclose suspicious orders of controlled substances.

30. The State of West Virginia and its agencies have suffered substantial and irreparable harm and will in the future suffer irreparable harm unless Cardinal is restrained by an injunction.

31. A lawsuit for damages for past losses as have been sustained by the State and its agencies is inadequate by itself to prevent the future losses that will result from the failures of said Defendant to comply with West Virginia law as herein alleged.

## Count II

### Damages Resulting From Negligence and Violations of the West Virginia Uniform Controlled Substances Act

32. The State hereby incorporates by reference all of the previous allegations of this Amended Complaint.

33. The epidemic prescription drug abuse is attended and promoted by the repeated violation of various provisions of the West Virginia Uniform Controlled Substances Act, to wit;

    a.    Improper dispensing of prescriptions contrary to *W.Va Code* § 60A-3-308;

    b.    Engaging in prohibited acts contrary to W.Va *Code*

-16-

§§ 60A-4-401 through 403;

c.      Deceiving and attempting to deceive medical practitioners in order to obtain prescriptions in contravention of *W.Va. Code* § 60A-4-410;

d.      Disregarding the requirements of the Wholesale Drug Distribution Licensing Act of 1991, *W.Va. Code* §60A-8-1 *et seq*,; and

e.      Conspiring to violate the West Virginia Uniform Controlled Substances Act.

34.    Defendant Cardinal is a distributor of controlled substances and must comply both with the laws of the State into which it distributes controlled substances and with industry custom and standards.  In the instant case, the standard of conduct for Defendant's industry requires that it know its customers, which includes, *inter alia,* an awareness of its customer base (including but not limited to population levels of the immediate area), knowledge of the average prescriptions filled each day, the percentage of diverted and/or abused controlled substances distributed as compared to overall purchases, a description of how the dispenser fulfills its responsibility to ensure that prescriptions filled are for legitimate medical purposes, and identification of physicians and bogus centers for the alleged treatment of pain that are the dispenser's most frequent prescribers.

35.    Defendant Cardinal has wilfully turned a blind eye towards the foregoing factors by regularly distributing large quantities of commonly-abused controlled substances to clients who are serving a customer base comprised of individuals who are themselves abusing prescription medications, many of whom are addicted and who reasonably can be expected to become addicted or to engage in illicit drug transactions.  The Defendant's

-17-

negligent acts and omissions in violation of West Virginia's drug laws have led to the dispensing of controlled substances for non-legitimate medical purposes of epidemic proportions, including the operation of bogus pain clinics that do little more than provide prescriptions for addictive controlled substances, thereby creating and continuing addictions to prescription medications.

36. Under West Virginia law a party who violates a statute which violation results in damages is liable for such damages as are sustained therefrom. *W.Va. Code* § 55-7-9.

37. Defendant Cardinal has by its acts and omissions proximately caused and substantially contributed to damage to the State by violating West Virginia laws, by creating conditions that contribute to the violations of West Virginia laws by others, by its negligence and by its reckless disregard of the customs, standards and practices within Defendant's own industry.

## Count III

### Violation of the West Virginia Consumer Credit and Protection Act (WVCCPA)
### Unfair Methods of Competition or Unfair or Deceptive Acts or Practices

38. The State and its agencies hereby incorporate by reference all of the previous allegations of this Amended Complaint.

39. West Virginia law as embodied in *W.Va. Code* § 46A-6-104 prohibits the use of unfair methods and/or competition or unfair or deceptive acts or practices in any trade or commerce.

40. The Attorney General specifically is charged with the administration of this provision and may act *sua sponte* as the agent and legal representative of the State in civil proceedings

to enforce the statute, *W. Va. Code* § 46A-6-103, §§ 46A-7-102, -108, -110, -111.

41.  Violations of statutes and regulations that are enacted to protect the Public or in the

exercise of the State's police power constitute unfair or deceptive acts or practices.

42.  Regulations promulgated pursuant to the West Virginia Uniform Controlled Substances

Act, *W. Va. Code* § 60A-3-301 18 provide, *inter alia,* for the following:

- "Every person who manufactures, distributes or dispenses any controlled substance or who proposes to engage in the manufacture, distribution or dispensing of any controlled substance shall obtain annually a controlled substance permit unless exempted by law or pursuant to Section 3.2 of this rule." 15 *W.Va.C.S.R.* § 2-3.1.1.

- "All registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances." 15 *W.Va.C.S.R.* § 2-4.2.1.

- "The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the Office of the West Virginia Board of Pharmacy of suspicious orders when discovered by the registrant. Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency." 15 *W.Va.C.S.R.* § 2-4.4.

43.  Each violation of these mandatory duties in the West Virginia Uniform Controlled

Substances Act and its corresponding regulations is an unfair or deceptive act or practice

in the conduct of trade or commerce, as set forth in *W. Va. Code* § 46A-6-104.

44.  Defendant Cardinal's repeated violations were and are willful, and the State seeks civil

penalties under *W. Va. Code* § 46A-7-111(2) for each violation.

45.  As a proximate cause and result of the Defendant's actions and omissions the State has

sustained damages, both past and in the future.

46.  The State seeks all "other appropriate relief" under *W. Va. Code* § 46A-7-108, including

attorney fees and costs.

-19-

## Count IV

## Public Nuisance

47.   The State and its agencies hereby incorporate by reference all of the previous allegations
      of this Amended Complaint.

48.   Defendant Cardinal, individually and acting through its employees and agents, has created
      and continues to perpetrate and maintain a public nuisance by the massive distribution of
      abused prescription drugs for use by the citizens of West Virginia, and by its failure to put
      in place effective controls and procedures to guard against theft and/or diversion of
      controlled substances, and its failures to adequately design and operate a system to
      effectively disclose suspicious orders of controlled substances, or to follow the system it
      has designed, and by its failure to inform the State of suspicious orders when discovered
      by the registrant ("suspicious orders" include but are not limited to orders of unusual size,
      orders deviating substantially from a normal pattern, and orders of unusual frequency).
      The Defendant knew or should have known that its conduct would cause hurt or
      inconvenience and/or damage to the State of West Virginia in a multitude of ways.

49.   As a direct and proximate result of the conduct of Defendant Cardinal as set forth above,
      Defendant has negligently, intentionally and/or unreasonably interfered with the right of
      West Virginians to be free from unwarranted injuries, addictions, diseases and sicknesses
      and have caused ongoing damage, hurt or inconvenience to the State of West Virginia and
      its residents exposed to the risk of addiction to prescription drugs, who have become
      addicted, and/or have suffered other adverse consequences from the use of the addictive
      prescription drugs distributed by Defendant, and countless others who will suffer the

same fate in the future as Defendant's conduct is continuing.

50.     As a direct result of Defendant's conduct as set forth above, Defendant has negligently, intentionally and/or unreasonably interfered with the Public's right to be free from unwarranted injury, disease or sickness, and have caused ongoing damage, hurt or inconvenience to the public health, the public safety and the general welfare of the citizens of West Virginia.

51.     The health and safety of the citizens of West Virginia, including those who have used or will use prescription drugs, is a matter of great public interest and of legitimate concern to the State and its citizens as the prescription drug epidemic has been so widespread that entire communities have been devasted.

52.     The public nuisance created, perpetuated and maintained by Defendant can be abated and further occurrence of such harm and inconvenience can be prevented.

53.     The Defendant was on notice that an epidemic of prescription drug abuse existed and has existed during times which are relevant to this Amended Complaint.  Such notice is the result of

    •     A large amount of media coverage of prescription drug abuse and its consequences by both national and local print, television and radio media;

    •     Publications received from government sources as well as warnings and recommendations contained in trade and professional journals; and

    •     Changes in law and regulations that were designed specifically to address the growing problem of prescription drug abuse.

54.     The widespread publicity contained many references and statistics concerning West Virginia's severe problems resultant from prescription drug abuse including, but not

-21-

limited to, suffering the nations' highest per capita death rate from prescription drug overdose, and crime that county prosecutors estimate comprise more than half their criminal case dockets.

55.     Notwithstanding the knowledge of this epidemic of prescription drug abuse in West Virginia, the Defendant persisted in a pattern of distributing controlled substances of the kinds that were well-known to be abused and diverted all the while distributing them in geographic areas, and in such quantities and with such frequency, that the Defendant knew or should have known that these substances were not being prescribed and consumed for legitimate medical purposes.

56.     As the result of the above-described conduct the Defendant negligently, recklessly and/or intentionally, and acting with blind indifference to the facts, created and continued propagate a public nuisance.  More particularly, the public nuisance so created, injuriously, and in many areas pervasively, affects West Virginia communities and the State, and endangers the public health and safety and inconveniences the citizens of the State, *inter alia,* in the following ways:

- Areas in certain communities have become congested with persons who gather in large groups outside of "clinics, pharmacies and physician offices" that in fact are component parts of Pill Mills that exist only to prescribe and deliver drugs for illicit, non-medical purposes;

- Crimes and other dangerous activities committed by those addicted to controlled substances have increased dramatically;

- Hospital services, especially those services provided by emergency rooms, are being consumed by persons with prescription drug abuse issues;

- Law enforcement and prosecutorial resources are being exhausted and consumed by having to address prescription drug abuse issues to the exclusion of other

-22-

matters;

- Public resources are being unreasonably consumed in efforts to address the prescription drug abuse epidemic, thereby eliminating available resources which could be used to benefit the public at large;

- Court dockets are congested by prescription drug-related cases as well as by crimes committed by addicts, thereby diminishing access to our courts by others;

- Jails and prisons suffer from overcrowding.

57.   As a direct result of the acts and omissions of Defendant in creating, perpetuating substantially contributing to and maintaining the public nuisance herein above described, the public nuisance described herein has damaged the health and safety of West Virginia citizens in the past and will continue to do so in the future unless the nuisance is abated.

58.   The State has sustained economic harm in the expenditure of massive sums of monies and will in the future continue to suffer economic harm unless the above-described public nuisance is abated.

## Count V

## Negligence

59.   The State realleges and incorporates by reference all preceding paragraphs as though fully set forth herein and further alleges the following.

60.   Defendant Cardinal has a duty to exercise reasonable care in the distribution of controlled substances.

61.   This Defendant has breached this duty by its acts and omissions alleged above.

62.   As a proximate result, Defendant and its agents have caused the State to incur excessive costs related to diagnosis, treatment and cure of addiction or the risk of addiction to such controlled substances, fighting and controlling crime thus the State has borne the massive

-23-

costs of these illnesses and conditions by having to provide necessary medical care, facilities and services for treatment of citizens of West Virginia who are unable to afford or otherwise obtain such necessary medical care, facilities and services, and many other costs proximately caused by Cardinal's wrongful acts and omissions.

63.     The Defendant was negligent in failing to monitor and guard against third-party misconduct, *i.e.* the conduct of the Pill Mill physicians and staff as well as corrupt pharmacists and staff and, in fact, by its actions the Defendant participated and enabled such misconduct.

64.     Defendant's acts and omissions as aforesaid imposed an unreasonable risk of harm to others separately and/or as combined with the negligent and/or criminal acts of third parties.

65.     The Defendant is in a class of a limited number of parties that distribute controlled substances and such activity poses distinctive and significant dangers.  The dangers include diversion of controlled substances for non-legitimate medical purposes and addiction to same by consumers.

66.     The Defendant was negligent in not acquiring and utilizing special knowledge and special skills that relate to the dangerous activity in order to prevent and/or ameliorate such distinctive and significant dangers.

67.     Controlled substances are dangerous commodities.  The Defendant as a distributor is required to exercise a high degree of care and diligence to prevent injury to the public from the diversion of controlled substances during distribution.  The Defendant breached its duty to exercise the degree of care, prudence, watchfulness, and vigilance

-24-

commensurate to the dangers involved in the transaction of its business.  The Defendant cannot delegate this duty of care to another.

68.   The distribution of these controlled substances are under the exclusive control and management of the Defendant.  The State is without fault and the injuries to the State and its citizens would not have happened in the ordinary course of events had the Defendant used due care commensurate to the dangers involved in the distribution of controlled substances.  Hence, the Defendant is negligent.

## Count VI

## Unjust Enrichment

69.   Plaintiffs incorporate by reference all of the previous allegations of this Complaint.

70.   Because of prescription drug abuse the State of West Virginia expends additionally hundreds of millions of dollars annually on law enforcement, prosecutors and prosecutions, courts and court personnel, public defender services, corrections and correctional facilities, probation and parole, public welfare and service agencies, healthcare and medical services and drug abuse education.  Further, the State suffers losses in revenue and incurs costs from workplace accidents and absenteeism resulting from prescription drug abuse.

71.   The State of West Virginia remains responsible for costs of prescriptions, health care and other medically-related costs, rehabilitation and work-related programs, workers' compensation, public insurance, law enforcement, prosecution costs, court related costs, public defender services, correctional institutions, probation and parole services, which costs have substantially increased as the result of the Defendant's acts and omissions

herein complained of and will in the future continue to increase unless the Defendants' conduct is abated.

72. The Defendant has thus been enriched unjustly by neglecting its duty of distributing drugs only for proper medical purposes which substances are consumed for reasons other than medical.

73. The unjust enrichment of the Defendant Cardinal is directly related to the damage, loss and detriment to the Plaintiff State of West Virginia and its agencies named herein.

## **PRAYER**

**WHEREFORE**, the State and its agencies pray that the Court grant the following relief:

1. Judgment in favor of the State;

2. Temporary relief, a preliminary injunction and permanent injunction ordering the ordering the Defendants to comply with the West Virginia Uniform Controlled Substances Act, *W. Va. Code* § 60A-3-301 (and regulations promulgated thereto), and *West Virginia Code* § 46A-6-104, and to cease their unlawful conduct, and mandate the Defendants to promptly notify the West Virginia Board of Pharmacy, the Office of the Attorney General, and the Department of Military Affairs and Public Safety of any and all suspicious orders for controlled substances as received from parties who are located in West Virginia and to submit their system for determining suspicious orders to those West Virginia authorities for prior approval, and to enter temporary and permanent injunctions that mandate Defendant be enjoined from distributing in West Virginia any controlled substances for any non-legitimate medical purpose;

3. Equitable relief, including but not limited to restitution and disgorgement;

4.     Order a jury trial where so triable to determine such costs, losses and damages as are proved in this action in relation to the several counts of this Second Amended Complaint including, but not limited to:

    a.     Losses sustained as the proximate result of both negligent and conscious violations of the West Virginia Uniform Controlled Substances Act and regulations;

    b.     Damages sustained as the proximate result of nuisances created by the prescription drug abuse epidemic;

    c.     Damages and losses sustained as the proximate result of the Defendant's negligence in marketing, promoting and distribution of controlled substances in West Virginia;

    d.     Disgorgement of unjust enrichment of the Defendant;

    e.     Civil penalties of up to $5000 for each repeated and willful violation of Chapter 46A, under West Virginia Code § 46A-7-111;

    f.     Pre- and post-judgment interest;

    g.     Costs and reasonable attorneys' fees; and

5.     Such other relief, fees and cost as shall be available under the West Virginia Credit and Consumer Protection Act;

6.     Order reimbursement of all litigation costs and enter an award of attorney fees herein;

7.     And grant such other and further relief including but not limited to punitive damages as shall be deemed appropriate herein.

**Plaintiffs seek a jury trial for all such counts as are so triable**.

**STATE OF WEST VIRGINIA** *ex rel*.
Patrick Morrisey**,** Attorney General

Joseph Thornton, Secretary
**WEST VIRGINIA DEPARTMENT OF
MILITARY AFFAIRS AND PUBLIC
SAFETY,** an agency of the State of West
Virginia,

Karen Bowling, Secretary
**WEST VIRGINIA DEPARTMENT OF
HEALTH & HUMAN RESOURCES,** an
agency of the State of West Virginia,

*By Counsel*,

_____
Steve Jarrell, (W.Va. Bar No. 6787)
Chief Deputy Attorney General
**OFFICE OF ATTORNEY GENERAL**
Consumer Protection and Antitrust Division
812 Quarrier Street, 1st Floor
Charleston, WV 25326
Telephone: 304-558-8986

_____
James M. Cagle, WV Bar No. (580)
**CAGLE & JACKSON, ATTORNEYS**
P.O. Box 12326
Big Chimney Station
Charleston, WV 25302

_____
Rudolph L. DiTrapano WV Bar No.1024
**DITRAPANO BARRETT DIPIERO
MCGINLEY & SIMMONS, PLLC**
604 Virginia Street, East
Charleston, WV 25301

**IN THE CIRCUIT COURT OF BOONE COUNTY, WEST VIRGINIA**

**STATE OF WEST VIRGINIA**
*ex rel.* **PATRICK MORRISEY**,
Attorney General, **et al.**

        Plaintiffs,

v.                                          Civil Action No.12-C-140
                                           (Hon. William S. Thompson, Judge)

**CARDINAL HEALTH, INC.**,
an Ohio corporation doing business in West Virginia,

        Defendant.

## CERTIFICATE OF SERVICE

The undersigned, Counsel for the Plaintiff, State of West Virginia ex rel. Morrisey does

hereby certify that a true and correct copy of the ***Second Amended Complaint*** was served by via

fax and email to Mark A. Carter, Esq., and W. Henry Jernigan, Jr., Esq at the law firm of

Dinsmore & Shohl, LLP, P.O. Box 11887, Charleston, WV 25339 and via email to James R.

Wooley, Esq., and Chad A. Readler, Esq., on this the *11th* day of August, 2015.

_____        _____
James M. Cagle (WV Bar No. 580)      Steve Jarrell, (W.Va. Bar No. 6787)
P. Rodney Jackson, (WV Bar No.1861)  Chief Deputy Attorney General
**CAGLE & JACKSON**           **OFFICE OF ATTORNEY GENERAL**
P.O. Box 12326              Consumer Protection and Antitrust Division
Big Chimney Station          812 Quarrier Street, 1st Floor
Charleston, WV 25301        Charleston, WV 25326
                              Telephone: 304-558-8986

_____
Rudolph L. DiTrapano    (WV Bar #1024)
**DiTRAPANO, BARRETT, DiPIERO,**
**McGINLEY & SIMMONS, PLLC**
604 Virginia Street, East
Charleston, WV 25301
(304) 342-0133

# EXHIBIT 13

### IN THE CIRCUIT COURT OF BOONE COUNTY, WEST VIRGINIA

**STATE OF WEST VIRGINIA**
*ex rel.* **PATRICK MORRISEY,**
Attorney General, **JOSEPH THORNTON,**
in his capacity as the Secretary of the
**WEST VIRGINIA DEPARTMENT**
**OF MILITARY AFFAIRS AND PUBLIC SAFETY,**
an agency of the State of West Virginia, and
**KAREN BOWLING,** in her capacity as the Secretary
of the **WEST VIRGINIA DEPARTMENT OF**
**HEALTH & HUMAN  RESOURCES,** an agency
of the State of West Virginia,

        Plaintiffs,

v.

                                   Civil Action No.12-C-141
                                   (Hon. William S. Thompson, Judge)

**AMERISOURCEBERGEN DRUG CORP.,** a
Delaware corporation doing business in West Virginia,
**MIAMI-LUKEN, INC.,** an Ohio corporation doing
business in West Virginia, **J.M. SMITH CORP.** d/b/a
**SMITH DRUG CO.,** a South Carolina corporation doing
business in West Virginia, **THE HARVARD DRUG**
**GROUP, LLC,** a Michigan corporation doing business
in West Virginia, **ANDA INC.,** a Florida corporation doing
business in West Virginia, **ASSOCIATED PHARMACIES, INC.,**
an Alabama corporation doing business in West Virginia,
**H.D. SMITH WHOLESALE DRUG CO.,** a Delaware corporation
doing business in West Virginia, **KEYSOURCE MEDICAL INC.,**
an Ohio corporation doing business in West Virginia, **MASTERS**
**PHARMACEUTICALS, INC.,** an Ohio corporation doing business
in West Virginia, **QUEST PHARMACEUTICALS, INC.,**
a Kentucky corporation doing business in West Virginia,
**RICHIE PHARMACAL CO., INC.,** a Kentucky corporation
doing business in West Virginia, and
**TOP RX, INC.,** a
Tennessee corporation doing business in West Virginia,

        Defendants.

### AMENDED COMPLAINT

1

For their Amended Complaint, the State of West Virginia, at the relation of its duly-elected Attorney General Patrick Morrisey, and two of its agencies, the West Virginia Department of Military Affairs and Public Safety, and the West Virginia Department of Health & Human Resources, state the following:

1.  This civil action addresses the epidemic of prescription drug abuse and its costs to the State of West Virginia.  Prescription drug abuse costs the State of West Virginia hundreds of millions of dollars annually.  Beyond the actual dollars lost, prescription drug abuse devastates West Virginia communities and families and reduces the State's economic productivity.  The damage done by prescription drug abuse adversely affects West Virginia's hospitals, schools, courts, social service agencies, jails and prisons as well as diminishing the very quality of life in our cities and towns.  Accordingly, the State, at the relation of its Attorney General, the West Virginia Department of Military Affairs and Public Safety, and the West Virginia Department of Health and Human Resources (collectively herein referred to as "the State") brings this action against pharmaceutical drug distributors who have contributed substantially to and who have substantially, illicitly and tortiously benefitted financially from the prescription drug abuse problem in West Virginia.

2.  The Defendants each distribute prescription drugs closely identified with the prescription drug abuse problem in West Virginia.  In recent years, it has been well publicized in the media that West Virginia has been, per capita, one of the "most medicated" states in the Country, with a prescription drug abuse problem of epidemic proportions.  Defendants

were on notice of the growing West Virginia epidemic of the abuse of those prescription drugs which they supplied and of the quantities and frequency with which those drugs were distributed to entities in West Virginia. For reasons which are more specifically set forth in the following causes of actions these Defendants are answerable in damages to the State of West Virginia and are susceptible to such other relief as is requested.

3.     These Defendants are major distributors of controlled substances who have supplied controlled substances to drugstores and pharmacies that then dispense those controlled substances often based upon bogus prescriptions from physicians who are prescribing controlled substances for illegitimate medical purposes. Some pharmacies that order such large quantities of abused controlled substances from Defendants are located in rural or low population areas where the amount of those controlled substances ordered from Defendants is so much greater than a population of that size would warrant that the orders are, at the very least, suspicious. These pharmacies are known as "Pill Mills."

4.     Through their acts and omissions Defendants have inserted themselves as an integral part of the Pill Mill process.

5.     As hereinafter alleged these Defendants acted negligently, recklessly and in contravention of West Virginia law. More particularly, these Defendants have violated West Virginia statutes and regulations that govern controlled substances and consumer protection. The Defendants received substantial revenue from West Virginia entities while engaging in wholesale drug distribution in West Virginia and in supplying West Virginia Pill Mills.

6.     The problems, damages and losses related to the prescription drug epidemic in West Virginia include, *inter alia,* the following:

-3-

a.      Costs to the State of as much as $430 million annually in the year 2010 with costs projected to be as much as $695 million annually by 2017;

b.      A per capita death rate from prescription drug overdose which has at times been either the highest or the second highest recorded for all states in the United States. One West Virginia County, McDowell County, located in Southern West Virginia, had a death rate of 34.2 per 100,000 in 2001 and 97.3 in 2008;

c.      Between 2001 and 2008 West Virginia deaths from overdoses involving prescription drugs quadrupled from 5.1 deaths per 100,000 residents to 21.5;

d.      According to Charleston Area Medical Center approximately twenty (20) percent of patients admitted through the hospital's trauma service have an issue with narcotic usage which contributes to their injuries.  As such, the demand from the growing problem of addiction and management of addicted patients will eventually be too great for the available care provides unless the problem is addressed.  Many of the addicted patients have no medical insurance coverage;

e.      West Virginia has been identified as the nation's "most medicated state" based upon data gathered for 2009.  Pharmacies in the State filled 18.4 prescriptions per capita as compared to the national average of 11.6 per capita;

f.      One pharmacy located in tiny Kermit, West Virginia (with a population of approximately 400 people) in 2006 received 3,194,400 dosage units of hydrocodone which ranked 22nd in the nation among pharmacies with respect to purchases of hydrocodone dosage and 35th nationally if you include mail order pharmacies.  The owner who is a licensed pharmacist has testified that the pharmacy filled one prescription per minute.  Pharmacy records reveal that the pharmacy regularly paid suppliers hundreds of thousands of dollars, that virtually 90% of the drugs ordered and received and are of the kind associated with the prescription drug epidemic.  The pharmacy reported revenue of more than $500,000 per month.  Recently, an article described Kermit as "ground zero" in the prescription drug epidemic;

g.      One Pittsburgh area physician who entered a guilty plea to a drug law violation allegedly worked in or owned an operation in Southern West Virginia that a federal investigation disclosed netted him personally as much as $20,000 per day in cash deposits made to his personal bank account.  That so-called clinic was closed by the government resulting in seizure of hundreds of thousands of dollars in cash from physicians and others who were associated with the clinic.  A pharmacy listed as a "preferred pharmacy" by this Pill Mill was among those that regularly were supplied with prescription drugs known to be abused;

-4-

h.  West Virginia Prosecuting Attorneys and Judges lament that as much as 90% of their criminal docket regularly is made up of matters that are either directly or indirectly related to prescription drug abuse.  One Prosecutor recently told a Charleston newspaper, "I have sometimes morbidly said I would welcome a cocaine case because at least not as many people are dying from cocaine abuse as they are from prescription drug abuse. I bring this up to point out foremost that we continue to ignore the human cost of substance abuse. Families are destroyed. People die. People can't get jobs and become homeless. They don't send their children to school, which ultimately contributes to truancy, delinquency, another generation of crime and a host of other problems. We're at the top of the nation in births of drug-addicted babies."

i.  According to media reports from 2013, "Thirty-five percent of babies born in the state are born drug-addicted because their mothers are using drugs."  It was reported also that West Virginia Senator Ron Stollings of Boone County, a physician, stated  that the economic costs of substance abuse is "chewing up tremendous amounts of money."

j.  White House drug czar Gil Kerlowske stated the obvious to West Virginia leaders at an assembly: "The devastation wrought by prescription drug abuse on Appalachian communities is simply heartbreaking . . . . Prescription drug abuse is claiming too many lives, threatening public safety and placing unnecessary obstacles in the way of economic prosperity in Appalachia."

k.  The controlled substances distributed by Defendants without sufficient monitoring of suspicious orders includes, but is not limited to, hydrocodone combinations (vicodin, lortab, lorcet, vocoprofen, tussenex, tussicaps), codeine combinations (e.g. empirin with codeine, fiorinal with codeine, tylenol with codeine), phenobarbital, lorazepam (ativan), triazolam (halcion), chlordiazepoxide (librium), diazepam (valium), alprazolam (xanax), zolpidem (ambien), zaleplon (sonata), zopiclone (lunesta), dextropropoxyphene (davron, darvocet), codeine preparations (Robitussin A-C), amobarbital (amytal), pentobarbital (nembutal), secobarbital (seconal), morphine (roxanol, duramorph), oxycodone (oxycontin, tylox, percocet, percodan), hydromorphone (diaudid), oxymorphone (opana, numorphan, numorphone), meperidine (demerol) and other generic versions of each of the foregoing.

7.  West Virginia and its agencies seek to protect West Virginia communities by enjoining

Defendants from distributing controlled substances without sufficient monitoring and

controls and requiring notice to the State in order to prevent the creation and operation of

-5-

Pill Mills or distribution to any other suspicious prescription drug retailers. The State of West Virginia seeks to recover the damages it has incurred and continues to incur and will incur in the future in addressing and combating the prescription drug abuse epidemic in West Virginia and in addressing its effects.

8. The Defendant drug distributors profit from this epidemic by distributing controlled substances in West Virginia in amounts that are in excess of the amount of controlled substances legitimately medically required, thereby sourcing drugs ultimately used by drug abusers. West Virginia law requires distributors of controlled substances such as Defendants to, "provide effective controls and procedures to guard against . . . diversion of controlled substances [and] shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. . . . Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency." 15 *WVCSR* § 2-4.2.1 and 15 *WVCSR* § 2-4.4. By distributing excessive amounts of controlled substances, the Defendant drug distributors violate West Virginia law by failing to implement or more particularly to follow and adhere to effective controls to guard against prescription drug diversion and by failing to effectively monitor, enforce and/or disclose suspicious orders they fill.

9. These Defendants certainly are aware of their legal responsibilities in regard to preventing suspicious orders of abused prescription drugs from flooding susceptible locales. For example, Defendant AmerisourceBergen has acknowledged it is under investigation by the U.S. Attorney for the District of New Jersey for its lack of oversight of painkiller sales. In 2011, Defendant The Harvard Drug Group, LLC, after having its license

-6-

suspended by the DEA, paid $8 Million to the U.S. Attorney for the Eastern District of Michigan to settle allegations that it did not effectively identify suspicious orders of controlled substances.  In 2011, defendant Keysource Medical Inc. forfeited its license to distribute narcotics after an investigation by the DEA revealed Keystone did not exercise due diligence in detecting and reporting suspicious orders of controlled substances.  In 2009, Defendant Masters Pharmaceutical, Inc. paid $500,000 to the U.S. Attorney for the Southern District of Ohio to settle, *inter alia*, claims that it failed to report suspicious orders of controlled substances.  On March 28, 2007, Defendant Richie Pharmacal, Inc. had its controlled substance registration suspended by the DEA.  A DEA spokesman in a press release stated: "Richie Pharmacal, Inc. knew, or should have known, based on the large, frequent quantities, that their customers were diverting hydrocodone into arenas that were not legitimate."

10.   The State expressly indicates that it does not seek any relief in this action for the federal share of funding for the State Medicaid Program.  Claims of damages for any federal monies expended are hereby expressly disavowed.

## II.

## Parties

11.   Plaintiff State of West Virginia appears at the relation of its duly elected Attorney General, Patrick Morrisey.  General Morrisey is authorized by the West Virginia Constitution, West Virginia common law and by statute to bring this action:

a.   *West Virginia Code* § 60A-5-501(c) invests the Attorney General with the duty and the authority to assist in the enforcement of the provisions of the Uniform

Controlled Substances Act and to cooperate with agencies and other governmental entities, including but not limited to the West Virginia Department of Military Affairs and Public Safety and the West Virginia Department of Health and Human Resources, as relates to controlled substances;

b.    *West Virginia Code* § 46A- 7-101 *et seq*, invests the Attorney General with authority to sue for violations of the West Virginia Consumer Protection Act, to recover civil penalties and to seek other remedies for violations of said statute; and

c.    Under West Virginia common law, the Attorney General possesses the authority to enforce all of the applicable laws cited herein, including the consumer protection laws, substance abuse laws, and laws governing the illicit distribution of drugs in West Virginia.

12.    Plaintiff Joseph Thornton acting in his capacity as Secretary of the West Virginia Department of Military Affairs and Public Safety, an agency of the State of West Virginia established by *W.Va. Code* §5F-1-2. The agency includes, *inter alia*, the West Virginia State Police, National Guard, the Division of Justice and Community Services, the Division of Corrections, the Division of Homeland Security & Emergency Management, the Division of Juvenile Services, the Division of Protective Services, and the Regional Jail and Correctional Facilities Authority. This agency is charged with responsibility for, *inter alia*, enforcing the Uniform Controlled Substance Act, *W.Va. Code* § 60A-5-501 and for housing inmates who have violated said Act and/or committed other crimes related to their violations of the Act.

-8-

13.     Plaintiff Karen Bowling acting in her capacity as Secretary of the West Virginia

Department of Health & Human Resources, an agency of the State of West Virginia

established by *W.Va. Code* § 5F-1-2. The agency includes, *inter alia*, the Bureau of

Behavioral Health & Health Facilities, the Bureau for Children and Families, the Bureau

for Medical Services, and the Bureau for Public Health.  This agency is charged with the

responsibility for, *inter alia*, providing services related to drug addiction as well as the

attendant problems of treatment and family-related issues.

14.     At all times pertinent to this Amended Complaint each Defendant was doing business in

West Virginia as a wholesale drug distributor.  The Defendants are:

a.      Amerisourcebergen Drug Corporation, a Delaware corporation;

b.      Miami-Luken, Inc., an Ohio corporation;

c.      J.M. Smith Corporation d/b/a Smith Drug Company, a South Carolina
        corporation;

d.      The Harvard Drug Group, LLC, a Michigan corporation;

e.      ANDA Inc., a Florida corporation;

f.      Associated Pharmacies, Inc., an Alabama corporation;

g.      H.D. Smith Wholesale Drug Company, a Delaware corporation;

h.      Keysource Medical Inc., an Ohio corporation;

i.      Masters Pharmaceuticals, Inc., an Ohio corporation;

j.      Quest Pharmaceuticals, Inc., a Kentucky corporation;

k.      Richie Pharmacal Co., Inc., a Kentucky corporation; and

l.      Top RX, Inc., a Tennessee corporation.

## III.

### <u>Jurisdiction and Venue</u>

15.     Jurisdiction exists pursuant to the provisions of *West Virginia Code* § 56-3-33, as

amended, in that Defendants by and through their authorized agents, servants and

employees regularly transacted business in West Virginia, supplied and distributed

prescription drugs in West Virginia and further through their acts and omissions

tortiously caused injuries in West Virginia by engaging in a persistent course of conduct

in West Virginia which violated West Virginia law.  These Defendants derived

substantial revenue as the result of the prescription drugs which were distributed to West

Virginia entities and later consumed by persons then residing in West Virginia.

16.     Pursuant to *W.Va. Code* § 46A-7-114 venue is proper in that the Defendants committed

acts in violation of, *inter alia*, the West Virginia Uniform Controlled Substances Act and

the West Virginia Consumer Credit and Protection Act in Boone County West Virginia.

Further, the Defendants transacted business in Boone County as well as in other counties

within the State of West Virginia.

-10-

# Causes of Action

BOONE COUNTY
CIRCUIT CLERK
SUE ANN ZICKEFOOSE

2019 JAN -3 A 11: 48

RECEIVED

### Count I

### Injunctive Relief for Violations of Responsibilities and Duties Under The West Virginia Uniform Controlled Substances Act

17.     The State hereby incorporates by reference all of the previous allegations of this

Amended Complaint.

18.     *West Virginia Code* § 60A-5-501(c) provides: "All prosecuting attorneys and the attorney

general, or any of their assistants, shall assist in the enforcement of all provisions of this

act and shall cooperate with all agencies charged with the enforcement of the laws of the

United States, of this state, and of all other states relating to controlled substances."

19.     *West Virginia Code* § 60A-5-503(a) states that, "The courts of record of this state have

and may exercise jurisdiction to restrain or enjoin violations of this act."

20.     Regulations promulgated pursuant to the West Virginia Uniform Controlled Substances

Act, *W. Va. Code* § 60A-3-301, provide, *inter alia,* for the following:

- "Every person who manufactures, distributes or dispenses any controlled substance or who proposes to engage in the manufacture, distribution or dispensing of any controlled substance shall obtain annually a controlled substance permit unless exempted by law or pursuant to Section 3.2 of this rule." 15 *W.Va.C.S.R.* § 2-3.1.1.

- "All registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances." 15 *W.Va.C.S.R.* § 2-4.2.1.

- "The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances.  The registrant shall inform the Office of the West Virginia Board of Pharmacy of suspicious orders when discovered by the registrant.  Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency."  15

-11-

*W.Va.C.S.R.* § 2-4.4.

21. Defendants have failed to diligently respond to suspicious orders which the Defendants have filled.  The Defendants therefore have failed to provide effective controls and procedures to guard against diversion of controlled substances in contravention of West Virginia law.

22. By failing to do so, Defendants have willfully and repeatedly violated the Uniform Controlled Substances Act and corresponding regulations.

23. The State, by and through, the Attorney General under the authority of *W.Va. Code* § 60A-5-501(c) and *W. Va. Code* § 60A-5-503(a) seeks to restrain the violations of 15 *W.Va.C.S.R.* §§ 2-4.2.1, 2-4.4.

24. The State of West Virginia and its agencies have in the past sustained enormous damages as the proximate result of the failure by the Defendants to comply with 15 *W.Va.CSR* §2-4.2.1 and 15 *W.Va.CSR* §2-4.4.  Unless restrained by injunctive relief the State will continue to suffer losses as the proximate result of the failure by the Defendants to monitor and to disclose suspicious orders of controlled substances.

25. The State of West Virginia and its agencies have suffered substantial and irreparable harm and will in the future suffer irreparable harm unless the Defendants are restrained by an injunction.

26. A lawsuit for damages for past losses as have been sustained by the State and its agencies is inadequate by itself to prevent the future losses that will result from the failures of Defendants to comply with West Virginia law as herein alleged..

<u>**Count II**</u>

**Damages Resulting From Negligence and Violations of the**
<u>**West Virginia Uniform Controlled Substances Act**</u>

27.     The State hereby incorporates by reference all of the previous allegations of this

Amended Complaint.

28.     The epidemic prescription drug abuse is attended and promoted by the repeated violation

of various provisions of the West Virginia Uniform Controlled Substances Act, to wit;

        a.    Improper dispensing of prescriptions contrary to
              *W.Va Code* § 60A-3-308;

        b.    Engaging in prohibited acts contrary to W.Va *Code*
              §§ 60A-4-401 through 403;

        c.    Deceiving and attempting to deceive medical practitioners
              in order to obtain prescriptions in contravention of *W.Va.*
              *Code* § 60A-4-410;

        d.    Disregarding the requirements of the Wholesale Drug
              Distribution Licensing Act of 1991, *W.Va. Code*
              §60A-8-1 *et seq*,; and

        e.    Conspiring to violate the West Virginia Uniform Controlled
              Substances Act.

29.     The Defendants are distributors of controlled substances and must comply both with the

laws of the State into which they distribute controlled substances and with industry

custom and standards.  In the instant case, the standard of conduct for Defendants'

industry requires that the Defendants know their customers, which includes, *inter alia,* an

awareness of their customer base (including but not limited to population levels of the

immediate area), knowledge of the average prescriptions filled each day, the percentage

of diverted and/or abused controlled substances distributed as compared to overall

-13-

purchases, a description of how the dispenser fulfills its responsibility to ensure that prescriptions filled are for legitimate medical purposes, and identification of physicians and bogus centers for the alleged treatment of pain that are the dispenser's most frequent prescribers.

30. These Defendants have wilfully turned a blind eye towards the foregoing factors by regularly distributing large quantities of commonly-abused controlled substances to clients who are serving a customer base comprised of individuals who are themselves abusing prescription medications, many of whom are addicted and whom reasonably can be expected to become addicted or to engage in illicit drug transactions. The Defendants' negligent acts and omissions in violation of West Virginia's drug laws have lead to the dispensing of controlled substances for non-legitimate medical purposes of epidemic proportions, including the operation of bogus pain clinics that do little more than provide prescriptions for addictive controlled substances, thereby creating and continuing addictions to prescription medications.

31. Under West Virginia law a party who violates a statute which violation results in damages is liable for such damages as are sustained therefrom. *W.Va. Code* § 55-7-9.

32. These Defendants have by their acts and omissions proximately caused and substantially contributed to damage to the State by violating West Virginia laws, by creating conditions which contribute to the violations of West Virginia laws by others, by their negligence and by their reckless disregard of the customs, standards and practices within Defendants' own industry.

-14-

## Count III

### Violation of the West Virginia Consumer Credit and Protection Act (WVCCPA)
### Unfair Methods of Competition or Unfair or Deceptive Acts or Practices

33.     The State and its agencies hereby incorporate by reference all of the previous allegations

of this Amended Complaint.

34.     West Virginia law as embodied in *W.Va. Code* § 46A-6-104 prohibits the use of unfair

methods and/or competition or unfair or deceptive acts or practices in any trade or

commerce.

35.     The Attorney General specifically is charged with the administration of this provision and

may act *sua sponte* as the agent and legal representative of the State in civil proceedings

to enforce the statute, *W. Va. Code* § 46A-6-103, §§ 46A-7-102, -108, -110, -111.

36.     Violations of statutes and regulations that are enacted to protect the Public or in the

exercise of the State's police power constitute unfair or deceptive acts or practices.

37.     Regulations promulgated pursuant to the West Virginia Uniform Controlled Substances

Act, *W. Va. Code* § 60A-3-301 18 provide, *inter alia,* for the following:

- "Every person who manufactures, distributes or dispenses any controlled substance or who proposes to engage in the manufacture, distribution or dispensing of any controlled substance shall obtain annually a controlled substance permit unless exempted by law or pursuant to Section 3.2 of this rule." 15 *W.Va.C.S.R.* § 2-3.1.1.

- "All registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances." 15 *W.Va.C.S.R.* § 2-4.2.1.

- "The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances.  The registrant shall inform the Office of the West Virginia Board of Pharmacy of suspicious orders when discovered by the registrant.  Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency."  15

-15-

*W.Va.C.S.R.* § 2-4.4.

38.  Each violation of these mandatory duties in the West Virginia Uniform Controlled
     Substances Act and its corresponding regulations is an unfair or deceptive act or practice
     in the conduct of trade or commerce, as set forth in *W. Va. Code* § 46A-6-104.

39.  Defendants' repeated violations were and are willful, and the State seeks civil penalties
     under *W. Va. Code* § 46A-7-111(2) for each violation.

40.  As a result of the Defendants' actions and omissions the State has sustained damages,
     both past and in the future.

41.  The State seeks all " other appropriate relief" under *W. Va. Code* § 46A-7-108, including
     attorney fees and costs.

**Count IV**

**Public Nuisance**

42.  The State and its agencies hereby incorporate by reference all of the previous allegations
     of this Amended Complaint.

43.  Defendants, individually and acting through their employees and agents, have created and
     continue to perpetrate and maintain a public nuisance by the massive distribution of
     abused prescription drugs for use by the citizens of West Virginia, and by their failure to
     put in place effective controls and procedures to guard against theft and diversion of
     controlled substances, and their failures to adequately design and operate a system to
     disclose suspicious orders of controlled substances, and by their failures to inform the
     State of suspicious orders when discovered by the registrant ("suspicious orders" include

-16-

orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency).  Defendants knew or should have known their conduct would cause hurt or inconvenience to the State of West Virginia in a multitude of ways.

44.   As a direct result of the conduct of each of the Defendants as set forth above, Defendants have negligently, intentionally and/or unreasonably interfered with the right of West Virginians to be free from unwarranted injuries, addictions, diseases and sicknesses and have caused ongoing damage, hurt or inconvenience to the State of West Virginia and its residents exposed to the risk of addiction to prescription drugs, who have become addicted, and/or have suffered other adverse consequences from the use of the addictive prescription drugs distributed by Defendants, and countless others who will suffer the same fate in the future as Defendants' conduct is continuing.

45.   As a direct result of Defendants' conduct as set forth above, Defendants have negligently, intentionally and/or unreasonably interfered with the Public's right to be free from unwarranted injury, disease or sickness, and have caused ongoing damage, hurt or inconvenience to the public health, the public safety and the general welfare of the citizens of West Virginia.

46.   The health and safety of the citizens of West Virginia, including those who have used or will use prescription drugs, is a matter of great public interest and of legitimate concern to the State and its citizens.

47.   The public nuisance created, perpetuated and maintained by Defendants can be abated and further occurrence of such harm and inconvenience can be prevented.

48.   These Defendants were on notice that an epidemic from prescription drug abuse existed

-17-

and has existed during times which are relevant to this Amended Complaint. Such notice is the result of

- A large amount of media coverage of prescription drug abuse and its consequences by both national and local print, television and radio media;

- Publications received from government sources as well as warnings and recommendations contained in trade and professional journals; and

- Changes in law and regulations which were designed specifically to address the growing problem of prescription drug abuse.

49. The widespread publicity contained many references and statistics concerning West Virginia's problems from prescription drug abuse including, but not limited to, suffering the nations' highest per capita death rate from prescription drug overdose.

50. Notwithstanding the knowledge of this epidemic of prescription drug abuse in West Virginia, the Defendants persisted in a pattern of distributing controlled substances of the kinds which were well-known to be abused and diverted all the while distributing them in geographic areas, and in such quantities and with such frequency, that the Defendants knew or should have known that these substances were not being prescribed and consumed for legitimate medical purposes.

51. As the result of the above-described conduct the Defendants negligently, recklessly and/or intentionally, and acting with blind indifference to the facts, created and continued propagate a public nuisance. More particularly, the public nuisance so created, injuriously, and in many areas pervasively, affects West Virginia communities and the State, and endangers the public health and safety and inconveniences the citizens of the State, *inter alia,* in the following ways:

-18-

- Areas in certain communities have become congested with persons who gather in large groups outside of "clinics, pharmacies and physician offices" that in fact are component parts of Pill Mills that exist only to prescribe and deliver drugs for illicit, non-medical purposes;

- Crimes and other dangerous activities have increased;

- Hospital services, especially those services provided by emergency rooms, are being consumed by persons with prescription drug abuse issues;

- Law enforcement and prosecutorial resources are being exhausted and consumed by having to address prescription drug abuse issues to the exclusion of other matters;

- Public resources are being unreasonably consumed in efforts to address the prescription drug abuse epidemic, thereby eliminating available resources which could be used to benefit the public at large;

- Court dockets are congested by prescription drug-related cases as well as by crimes committed by addicts, thereby diminishing access to our courts by others;

- Jails and prisons suffer from overcrowding.

52.	As a direct result of the acts and omissions of Defendants in creating, perpetuating and maintaining the public nuisance hereinabove described, the public nuisance described herein has damaged the health and safety of West Virginia citizens in the past and will continue to do so in the future unless the nuisance is abated.

53.	The State has sustained economic harm in the expenditure of massive sums of monies and will in the future continue to suffer economic harm unless the above-described public nuisance is abated.

**Count V**

**Negligence**

-19-

54. The State realleges and incorporates by reference all preceding paragraphs as though fully set forth herein and further alleges the following.

55. Defendants have a duty to exercise reasonable care in the distribution of controlled substances.

56. Defendants have breached this duty by their conduct alleged above.

57. As a proximate result, Defendants and their agents have caused the State to incur excessive costs related to diagnosis, treatment and cure of addiction or the risk of addiction to such controlled substances, thus the State has borne the massive costs of these illnesses and conditions by having to provide necessary medical care, facilities and services for treatment of citizens of West Virginia who are unable to afford or otherwise obtain such necessary medical care, facilities and services.

58. The Defendants were negligent in failing to monitor and guard against third-party misconduct, *i.e.* the conduct of the Pill Mill physicians and staff as well as corrupt pharmacists and staff and, in fact, by their actions the Defendants participated and enabled such misconduct.

59. Defendants' acts and omissions as aforesaid imposed an unreasonable risk of harm to others separately and/or as combined with the negligent and/or criminal acts of third parties.

60. The Defendants are in a class of a limited number of parties that distribute controlled substances and such activity poses distinctive and significant dangers. The dangers include diversion of controlled substances for non-legitimate medical purposes and addiction to same by consumers.

-20-

61.     The Defendants were negligent in not acquiring and utilizing special knowledge and special skills that relate to the dangerous activity in order to prevent and/or ameliorate such distinctive and significant dangers.

62.     Controlled substances are dangerous commodities. The Defendant distributors are required to exercise a high degree of care and diligence to prevent injury to the public from the diversion of controlled substances during distribution. The Defendants breached their duty to exercise the degree of care, prudence, watchfulness, and vigilance commensurate to the dangers involved in the transaction of its business. The Defendants cannot delegate this duty of care to another.

63.     The distribution of these controlled substances are under the exclusive control and management of the Defendants. The State is without fault and the injuries to the State and its citizens would not have happened in the ordinary course of events had the Defendants used due care commensurate to the dangers involved in the distribution of controlled substances. Hence, the Defendants are negligent.

## **PRAYER**

**WHEREFORE**, the State and its agencies pray that the Court grant the following relief:

1.      Judgment in favor of the State;

2.      Temporary relief, a preliminary injunction and permanent injunction ordering the ordering the Defendants to comply with the West Virginia Uniform Controlled Substances Act, *W. Va. Code* § 60A-3-301 (and regulations promulgated thereto), and *West Virginia Code* § 46A-6-104, and to cease their unlawful conduct, and mandate the Defendants to promptly notify the West Virginia Board of Pharmacy, the Office of the Attorney General, and the Department of Military Affairs and Public Safety of any and all

suspicious orders for controlled substances as received from parties who are located in West Virginia and to submit their system for determining suspicious orders to those West Virginia authorities for prior approval, and to enter temporary and permanent injunctions that mandate Defendants be enjoined from distributing in West Virginia any controlled substances for any non-legitimate medical purpose;

3. Equitable relief, including but not limited to restitution and disgorgement;

4. Order a jury trial to determine such costs, losses and damages as are proved in this action in relation to the several counts of this Amended Complaint including, but not limited to:

   a. Losses sustained as the proximate result of both negligent and conscious violations of the West Virginia Uniform Controlled Substances Act and regulations;

   b. Damages sustained as the proximate result of nuisances created by the prescription drug abuse epidemic;

   c. Damages and losses sustained as the proximate result of the Defendants' negligence in marketing, promoting and distribution of controlled substances in West Virginia;

   d. Disgorgement of unjust enrichment of the Defendants;

   e. Civil penalties of up to $5000 for each repeated and willful violation of Chapter 46A, under West Virginia Code § 46A-7-111;

   f. Pre- and post-judgment interest;

   g. Costs and reasonable attorneys' fees; and

5. Such other relief, fees and cost as shall be available under the West Virginia Credit and Consumer Protection Act;

6. Order reimbursement of all litigation costs and enter an award of attorney fees herein;

7.      And grant such other and further relief as shall be deemed appropriate herein.

**Plaintiffs seek a jury trial for all such counts as are so triable**.

> **STATE OF WEST VIRGINIA**
> *ex rel.* **PATRICK MORRISEY,**
> Attorney General, the **WEST VIRGINIA**
> **DEPARTMENT OF MILITARY**
> **AFFAIRS AND PUBLIC SAFETY,** an
> agency of the State of West Virginia, and the
> **WEST VIRGINIA DEPARTMENT OF**
> **HEALTH & HUMAN RESOURCES**, an
> agency of the State of West Virginia,
>
>
> Maryclaire Akers, WV Bar. No. 8085
> Deputy Attorney General
> **OFFICE OF ATTORNEY GENERAL**
> Building 1, Room 26-E, Capitol Complex
> Charleston, WV 25305
> Telephone: 304-558-2021

James M. Cagle, WV Bar No. 580
**CAGLE & JACKSON, ATTORNEYS**
P.O. Box 12326
Big Chimney Station
Charleston, WV 25301

Rudolph L. DiTrapano        (W.Va. Bar No. 1024)
Sean P. McGinley             (W.Va. Bar No. 5836)
Robert M. Bastress III      (W.Va. Bar No. 9616)
**DiTRAPANO, BARRETT, DiPIERO,**
**McGINLEY & SIMMONS, PLLC**
604 Virginia Street, East
Charleston, West Virginia 25301
(304) 342-0133 (phone)
(304) 342-4605 (fax)

## IN THE CIRCUIT COURT OF BOONE COUNTY, WEST VIRGINIA

**STATE OF WEST VIRGINIA**
*ex rel.* **PATRICK MORRISEY**,
Attorney General, **JOSEPH THORNTON**,
in his capacity as the Secretary of the
**WEST VIRGINIA DEPARTMENT
OF MILITARY AFFAIRS AND PUBLIC SAFETY,**
an agency of the State of West Virginia, and
**KAREN BOWLING**, in her capacity as the Secretary
of the **WEST VIRGINIA DEPARTMENT OF
HEALTH & HUMAN  RESOURCES**, an agency
of the State of West Virginia,

        Plaintiffs,

v.

                                       Civil Action No.12-C-141
                                       (Hon. William S. Thompson, Judge)

**AMERISOURCEBERGEN DRUG CORP.**, a
Delaware corporation doing business in West Virginia,
**MIAMI-LUKEN, INC.**, an Ohio corporation doing
business in West Virginia, **J.M. SMITH CORP.** d/b/a
**SMITH DRUG CO.**, a South Carolina corporation doing
business in West Virginia, **THE HARVARD DRUG
GROUP, LLC**, a Michigan corporation doing business
in West Virginia, **ANDA INC.**, a Florida corporation doing
business in West Virginia, **ASSOCIATED PHARMACIES, INC.**,
an Alabama corporation doing business in West Virginia,
**H.D. SMITH WHOLESALE DRUG CO.**, a Delaware corporation
doing business in West Virginia, **KEYSOURCE MEDICAL INC.**,
an Ohio corporation doing business in West Virginia, **MASTERS
PHARMACEUTICALS, INC.**, an Ohio corporation doing business
in West Virginia, **QUEST PHARMACEUTICALS, INC.**,
a Kentucky corporation doing business in West Virginia,
**RICHIE PHARMACAL CO., INC.**, a Kentucky corporation
doing business in West Virginia, and
**TOP RX, INC.**, a
Tennessee corporation doing business in West Virginia,

        Defendants.

## **CERTIFICATE OF SERVICE**

    I, Robert M. Bastress III, counsel for Plaintiffs, do hereby certify that a copy of the

"**AMENDED COMPLAINT**" was e-mailed to all counsel of record listed in the current,

consolidated email service list (as furnished by counsel for J.M. Smith Corp.) and the court's law

clerk on this the 2nd day of January 2014.

STATE OF WEST VIRGINIA
*ex rel.* **PATRICK MORRISEY,**
Attorney General, **JOSEPH THORNTON,**
in his capacity as the Secretary of the **WEST
VIRGINIA DEPARTMENT OF
MILITARY AFFAIRS AND PUBLIC
SAFETY,** an agency of the State of West
Virginia, and **KAREN BOWLING,** in her
capacity as the Secretary of the **WEST
VIRGINIA DEPARTMENT OF
HEALTH & HUMAN RESOURCES,** an
agency of the State of West Virginia,

Maryclaire Akers, WV Bar. No. 8085
Deputy Attorney General
**OFFICE OF ATTORNEY GENERAL**
Building 1, Room 26-E, Capitol Complex
Charleston, WV 25305
Telephone: 304-558-2021

James M. Cagle, WV Bar No. 580
**CAGLE & JACKSON, ATTORNEYS**
P.O. Box 12326
Big Chimney Station
Charleston, WV 25301

Rudolph L. DiTrapano, W.Va. Bar No. 1024
Sean P. McGinley, W.Va. Bar No. 5836
Robert M. Bastress III, W.Va. Bar No. 9616
**DiTRAPANO, BARRETT, DiPIERO,
McGINLEY & SIMMONS, PLLC**
604 Virginia Street, East
Charleston, West Virginia 25301
(304) 342-0133 (phone)

BOONE COUNTY
CIRCUIT CLERK
SUE ANN ZICKEFOOSE

2014 JAN -3  A 11: 46

RECEIVED

# EXHIBIT 14

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit
https://www.djreprints.com.

https://www.wsj.com/articles/SB10001424052702304058404577492853204473294

HEALTH

# West Virginia Sues Drug Distributors in Pill-Abuse Fight

*By Jon Kamp*
Updated June 27, 2012 5:08 p.m. ET

West Virginia's attorney general is suing 14 drug wholesalers to force stricter distribution of painkillers and other controlled substances, alleging the companies have benefited from the state's problem with prescription-drug abuse.

The suit filed Tuesday targets big distributors like Cardinal Health Inc., CAH **0.07%** ▲ AmerisourceBergen Corp. ABC **1.33%** ▲ , Watson Pharmaceuticals Inc. distribution unit Anda Inc. and several small firms. State Attorney General Darrell McGraw said the lawsuit's aims include recovering damages, creating medical-monitoring for drug-abuse victims and forcing companies to promptly alert state authorities when they see suspicious orders.

"We are seeking to make major drug distributors that have substantially benefited from prescription drug abuse accept responsibility and pay for their illicit actions," Mr. McGraw said in a press release Tuesday.

The state aims to cut off distribution routes that are part of the "pill mill" process that also includes medical providers and pharmacies, Mr. McGraw said. The release cited data showing West Virginia is "the nation's most medicated state", filling nearly seven more prescriptions per person each year than the U.S. average. The lawsuit was filed in the Circuit Court in Boone County, W. Va.

Pharmaceutical distributors provide a bridge between drug manufacturers and the nation's vast network of retail pharmacies. Authorities had targeted them before for allegedly not doing enough to recognize and stop the flow of addictive pain pills, which may start with doctors writing prescriptions for nonmedical purposes.

In May, Cardinal Health settled government accusations that it distributed large volumes of addictive pain medication in Florida without proper controls. The company accepted a two-year suspension of its Drug Enforcement Administration license to ship controlled substances from a big distribution center in the state while promising to improve procedures to prevent the illegal diversion of drugs.

Cardinal spokesman Debbie Mitchell said the company only recently learned of the West Virginia lawsuit and didn't have an immediate comment on the matter.

Case 3:17-cv-01362   Document 240-2   Filed 03/20/20   Page 86 of 109 PageID #: 3307

Watson spokesman Charlie Mayr said the company's Anda distribution business has sophisticated methods of monitoring order patterns and immediately ceases shipments and launches investigations when it finds suspicious activity. Watson also makes generic pain drugs such as oxycodone.

"We take this very seriously," Mr. Mayr said.

An AmerisourceBergen spokesman couldn't be reached for comment.

**Write to** Jon Kamp at jon.kamp@dowjones.com

Copyright © 2019 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit https://www.djreprints.com.

# EXHIBIT 15

# McGraw targets 'pill mill' suppliers

Taylor, Zac . The Charleston Gazette ; Charleston, W.V. [Charleston, W.V]27 June 2012: A.1.

🔗 ProQuest document link

## ABSTRACT (ABSTRACT)

"[Prescription drug abuse] devastates families and hands enormous burdens on hospitals, courts, law enforcement and communities," [Darrell McGraw] said. "With today's filing, we are seeking to make major drug distributors that have substantially benefited from prescription drug abuse accept responsibility and pay for their illicit actions."

"I have sometimes morbidly said I would welcome a cocaine case because at least not as many people are dying from cocaine abuse as they are from prescription drug abuse," Wyoming County Prosecuting Attorney Rick Staton said in a Sunday Gazette-Mail column in December. McGraw alluded to the quote in Tuesday's filing.

"As a major distributor of controlled substances in West Virginia, Cardinal has supplied controlled substances to rogue drugstores that dispense controlled substances based on prescriptions from unethical physicians who are prescribing controlled substances for illegitimate medical purposes," according to McGraw's civil action.

## FULL TEXT

State authorities want to stop more than a dozen out-of-state drug companies that they say are selling suspicious amounts of prescription pills to West Virginia pharmacies.
Attorney General Darrell McGraw filed a civil action Tuesday in Boone Circuit Court, asking a judge to ban 14 drug companies from Delaware to Florida from selling huge amounts of medications to "pill mill" pharmacies in tiny West Virginia towns.

The civil action is another step state leaders have taken recently to combat a prescription drug abuse epidemic that costs the state an estimated $430 million a year.

"[Prescription drug abuse] devastates families and hands enormous burdens on hospitals, courts, law enforcement and communities," McGraw said. "With today's filing, we are seeking to make major drug distributors that have substantially benefited from prescription drug abuse accept responsibility and pay for their illicit actions."

Chief Deputy Attorney General Fran Hughes said drug companies keep statistics on the normal amount of prescriptions a pharmacy in a given area should expect to fill in a year. State law requires the drug companies to report "suspicious orders of unusual size" to the West Virginia Board of Pharmacy.

In 2006, a pharmacy in Kermit and its owner, James P. Wooley, received nearly 3.2 million doses of hydrocodone and ranked 22nd in the nation in purchases of that drug, according to the civil action and Gazette reports.

Wooley testified that the pharmacy filled one prescription per minute that year, the civil action states.

Records in that case also revealed that the pharmacy regularly paid its suppliers hundreds of thousands of dollars and that nearly 90 percent of the drugs it ordered and received are linked in some way to the state's drug epidemic,



the civil action states.

Federal prosecutors filed conspiracy charges against Wooley in January.

State prosecutors have reported that as much as 90 percent of their case loads indirectly relate to prescription drug abuse.

"I have sometimes morbidly said I would welcome a cocaine case because at least not as many people are dying from cocaine abuse as they are from prescription drug abuse," Wyoming County Prosecuting Attorney Rick Staton said in a Sunday Gazette-Mail column in December. McGraw alluded to the quote in Tuesday's filing.

Four Ohio-based companies are among those targeted by McGraw: Cardinal Health, Miami-Luken Inc., Keysource Medical Inc. and Masters Pharmaceuticals Inc.

Other companies in the complaint are Quest Pharmaceuticals Inc. and Richie Pharmacal Co. Inc., both of Kentucky; Top Rx Inc., of Tennessee; Amerisourcebergen Drug Corp. and H.D. Smith Wholesale Drug Company, both of Delaware; The Harvard Drug Group LLC and Auburn Pharmaceutical Company, both of Michigan; J.M. Smith Corp doing business as Smith Drug Co., of South Carolina; Associated Pharmacies Inc., of Alabama; and Anda Inc., of Florida.

The U.S. Drug Enforcement Agency filed a separate civil action against Cardinal Health, alleging that the company failed to implement safeguards against the unlawful diversion of controlled prescription drugs.

The agency alleged that the company sold a "staggeringly high" volume of controlled pills to pharmacies, including the sale of more than $2 million pills to a Florida pharmacy situated in a town of just 53,000 people.

"As a major distributor of controlled substances in West Virginia, Cardinal has supplied controlled substances to rogue drugstores that dispense controlled substances based on prescriptions from unethical physicians who are prescribing controlled substances for illegitimate medical purposes," according to McGraw's civil action.

The civil action would force the drug companies to pay an unspecified amount of money for violations of the West Virginia Uniform Controlled Substances Act and damages the state has lost in combating the drug epidemic.

A judge also might force the companies to implement medical monitoring programs for drug abuse victims.

Reach Zac Taylor

at zachary.taylor@wvgazette.com

or 304-348-5189.

Credit: Zac Taylor Staff writer

## DETAILS



| Company / organization: | Name: Cardinal Health Inc; Ticker: CAH; NAICS: 422210 |
|---|---|
| Publication title: | The Charleston Gazette; Charleston, W.V. |
| First page: | A.1 |
| Publication year: | 2012 |
| Publication date: | Jun 27, 2012 |
| Section: | News |
| Publisher: | Charleston Newspapers |
| Place of publication: | Charleston, W.V. |
| Country of publication: | United States, Charleston, W.V. |
| Publication subject: | General Interest Periodicals--United States |
| Source type: | Newspapers |
| Language of publication: | English |
| Document type: | News |
| ProQuest document ID: | 1022312202 |
| Document URL: | https://search.proquest.com/docview/1022312202?accountid=30868 |
| Copyright: | Copyright Charleston Newspapers Jun 27, 2012 |
| Last updated: | 2017-11-19 |
| Database: | ProQuest Central |

Database copyright © 2020 ProQuest LLC. All rights reserved.

Terms and Conditions   Contact ProQuest



# EXHIBIT 16

McGraw files suits against 'pill mill' distributors | West Virginia Record

FEDERAL COURT

LEGISLATION

CAMPAIGNS & ELECTIONS

ATTORNEYS & JUDGES

LAWSUITS

HOT TOPICS

REFORM

LEGAL ROUNDUP

OPINION ⌄

DIRECTORY

*Home* » *Stories* » *2012* » *June*

## McGraw files suits against 'pill mill' distributors

By **Chris Dickerson** | Jun 26, 2012

McGraw

Attorney General Darrell McGraw speaks Tuesday during a press conference at the state Capitol. (Photo by Chris Dickerson)

CHARLESTON – Attorney General Darrell McGraw's office on Tuesday filed lawsuits seeking to crack down on prescription drug distributors who he says are behind a "major scourge" in West Virginia.

Two lawsuits were filed Tuesday in Boone Circuit Court against 14 out-of-state drug

distributors "for their roles in creating and profiting" from a "prescription drug epidemic."

"Prescription drug abuse costs West Virginians over $430 million a year, devastates families, and hangs enormous burdens on our hospitals, courts, law enforcement, and communities," McGraw said. "With today's filing, we are seeking to make major drug distributors that have substantially benefitted from prescription drug abuse accept responsibility and pay for their illicit actions."

Last month, McGraw's office filed a lawsuit to shut down a key supplier of dangerous designer drugs such as "bath salts" and "incense." And McGraw also noted previous settlements with drug manufacturers that have secured funding for drug offender rehabilitation, alternative sentencing options and Day Report Centers throughout the state.

At a press conference Tuesday in his offices, McGraw said the Centers for Disease Control lists West Virginia as the nation's most-medicated state, filling nearly seven more prescriptions per person annually than the national average. He also said prescription drug abuse costs West Virginia about $430 million annually and is a burden on our "hospitals, courts and law enforcement."

His office's press release said that in 2006, two small pharmacies in Kermit -- a small mining town of 300 that Salon.com called "ground zero of the prescription drug epidemic" -- filled prescriptions of hydrocodone totaling 3.19 million dosage units, a total that ranked 22nd for the entire nation. An average pharmacy in the United States dispenses only 97,000 doses in a year.

Chief Deputy Attorney General Fran Hughes said Tuesday one of those pharmacies in Kermit was making $500,000 a month from Oxycontin.

"It's a simple theory of economics," she said. "There is no black market without an excess of supply. People who legitimately need these pain medications are going to take the medicine. They aren't going to sell it."

McGraw stressed that people who have a legitimate medical need for these medications aren't going to be affected.

"We are fully cognizant of those who need these medications for pain management and pain relief," he said. "The issue is making these pills available for non-medical purposes."

He said the complaints were filed in Boone County, just south of Charleston, because it's one of the southern counties where this is a big issue.

"It's magnified there," he said. "But that's not to say it isn't a problem everywhere in West Virginia."

McGraw cited with the West Virginia State Police, the Metro Drug Unit, county sheriffs, and local law enforcement agencies.

"It will take the cooperation of a dedicated team fighting drug abuse on many fronts to make West Virginia a safer, healthier place," McGraw said. "With today's court action, we aim to cut off the distribution routes of prescription drug suppliers."

## WEST VIRGINIA RECORD

controlled substance for non-medical purposes, to recover damages, to set up in-state medical monitoring for drug abuse victims and to force the companies to promptly inform state authorities of all suspicious orders for controlled substances from West Virginia.

The complaints say these companies supplied controlled substances -- including oxycodone -- to drugstores which dispensed the drugs based on prescriptions from physicians who prescribed them for non-legitimate medical purposes.

McGraw says the companies were integral parts of the "pill mill" process.

"These pill mill schemers are like dealers," McGraw said. "They profit from the suffering of their victims."

The defendants named in McGraw's suit are out-of-state drug distribution companies registered with the State Board of Pharmacy to do business in West Virginia. Below are the companies and their home state:

Cardinal Health, Ohio; Miami-Luken, Inc., Ohio; Keysource Medical Inc., Ohio; Masters Pharmaceuticals, Inc., Ohio; Quest Pharmaceuticals, Inc., Kentucky; Richie Pharmacal Co., Inc., Kentucky; Top Rx, Inc., Tennessee; Amerisourcebergen Drug Corp., Delaware; H.D. Smith Wholesale Drug Company, Delaware; The Harvard Drug Group, LLC, Michigan; Auburn Pharmaceutical Company, Michigan; J.M. Smith Corp., d/b/a Smith Drug Co., South Carolina; Associated Pharmacies, Inc., Alabama; and Anda Inc., Florida

Cardinal Health, which is named as a defendant in a separate complaint, has been cited by the Federal Drug Enforcement Agency for not taking adequate safeguards to prevent prescription drugs which it distributed from being unlawfully diverted, despite warnings from internal investigators. The DEA has said Cardinal's "staggeringly high" volumes of pills sent to various dispensers posed "an imminent danger to public health or safety" and thus the DEA issued an Immediate Suspension Order to Cardinal in February.



### Want to get notified whenever we write about ?

Next time we write about , we'll email you a link to the story. You may edit your settings or unsubscribe at any time.

Sign-up

## WEEKLY NEWSLETTER

Sign-up and get latest news about the courts, judges and latest complaints - right to your inbox.

Email

**SIGN UP**

By signing up you agree to receive email newsletters or alerts from West Virginia Record. You can unsubscribe at any time.

## TRENDING





MSHA inpsector claims she was sexually harassed during visit to ICG Tygart Valley coal mine

Woman claims KFC employee shut drive-thru window shut on her hand

Keyser man seeks cancellation of sales contract for Chevy Silverado, alleges defects

Sister of man who committed suicide in jail sues state Division of Corrections

Senate Judiciary passes intermediate appellate court bill with some amendments

# West Virginia Record

f   🐦   |   GET THE APP   🍎

**Other Publications**

**Cook County Record**

**Florida Record**

**Legal Newsline**

**Louisiana Record**

**Madison - St. Clair Record**

**Northern California Record**

**Pennsylvania Record**

**SE Texas Record**

**Southern California Record**

**St. Louis Record**

**News**

**Asbestos**

**Attorneys & Judges**

**Campaigns & Elections**

Federal Court

Government

Hot Topics

Lawsuits

Legislation

Reform

State AG

State Court

State Supreme Court

**Marketing**

Newsletters

Print Edition

iOS App

RSS

**More Info**

About

Contact

Directory

© 2020 West Virginia Record. All rights reserved.

Privacy Policy | Terms of Service

# EXHIBIT 17

LIVE:  Talkline with Hoppy Kercheval      WATCH NOW!      LISTEN NOW!



THE VOICE OF WEST VIRGINIA

ABOUT US    AFFILIATES    ADVERTISING    🔍 SEARCH

| NEWS | SPORTS | PODCASTS | OUTDOORS | MN Channel ▶ |

# AG Takes On Pill Mills

**SHARE ARTICLE**



Tweet

Share     1

By **MetroNews** in News | June 27, 2012 at 3:48AM

West Virginia Attorney General Darrell McGraw is making it clear his office is going after companies that supply illegal prescription drugs.

The Attorney General's Office filed a lawsuit in Boone County Circuit Court Tuesday morning against 14 out of state drug distributors that McGraw claims have created and profited from the drug epidemic in West Virginia.

"Our state has been ground zero for prescription drug abuse and exploitation by pill mills," McGraw said.

The 14 companies are located in Ohio, Kentucky, Tennessee, Delaware, Michigan, South Carolina, Alabama and Florida.

The Centers for Disease Control confirms that West Virginia is the most medicated state in the country, but that medication isn't always legal.  The drugs prescribed to a patient may be approved by the Food and Drug Administration, but they're for the purpose of abuse, not health reasons.

"It's a major scourge in our communities. It tears families apart, damages communities, hurts our workforce and destroys lives," the AG said.

The complaint filed by the Attorney General seeks to enjoin the 14 "pill mill" companies from distributing any controlled substances for non-medical purposes, recover damages, instate medical monitoring for drug abuse victims and force the companies to promptly inform state authorities of all suspicious orders for controlled substances from West Virginia.

McGraw stresses West Virginians who need those medicines will not be impacted.

"For those who have a legitimate medical need, this should not have any effect on their being treated in whatever kind of manner prescribed by their physicians," he said.

McGraw says his office chose to file the suit in Boone County because Southern West Virginia has been hit the hardest by prescription drug abuse.  He estimates that abuse, in total, costs the state more than $430 million a year

## MetroNews Staff

**MetroNews**
The Voice of West Virginia

info@wvmetronews.com
@wvmetronews
WVMetroNews

We are West Virginia's only news, talk and sports network providing you the ability to reach all of West Virginia through a single source.

Use a **Facebook account** to add a comment, subject to Facebook's **Terms of Service** and **Privacy Policy**.

 Comments

Advertise with Us   Contact   Careers   EEO   Affiliates Intranet   Privacy Policy

Mobile Site   Subscribe to Email Alerts

© 2020 West Virginia MetroNews Network
1111 Virginia Street East, Charleston, WV 25301

Powered by

  

LATEST NEWSCASTS
**News** | **Sports**

# EXHIBIT 18

    

Adjust   Image Settings   Positive Negative   Settings ▾   How it Works

## Deal Would Shutter Ohio Massage Parlors

When you buy direct... when you direct... Sign Up Now! Massage parlor is the... porn... Watch Live Pictures.com Here

## STATE BRIEF

### Court affirms death sentence

RICHMOND, Va. (AP) — A federal appeals court Tuesday affirmed a South Carolina death row inmate's murder conviction and sentence.

A three-judge panel of the 4th U.S. Circuit Court of Appeals on Tuesday rejected claims by Chadrick Fulks that he was denied effective representation in court. Fulks also unsuccessfully challenged the prosecution's use of statements co-defendant Brandon Basham made to the Brunswick County sheriff.

Fulks pleaded guilty and Basham was convicted of kidnapping and killing 44-year-old Alice Donovan during a two-week crime spree after they escaped from a Hopkins County, Ky., jail in 2002. Federal juries sentenced both men to death.

### Lawmaker faces assault charges

LOGAN, W.Va. (AP) — A southern West Virginia lawmaker declined to comment Tuesday on the domestic battery and assault charges filed against him over the weekend.

Media outlets report that State Police arrested 43-year-old Delegate Rupert Phillips of Logan on misdemeanor charges Saturday.

According to a criminal complaint, a woman told Trooper S.A. Bell that Phillips pushed her during an altercation over relationship issues. She fell to the floor and went to a local hospital to receive stitches.

Bell said the woman had "visible bruising and swelling on her face."

### W.Va. AG sues 14 pain pill mills

CHARLESTON (AP) — West Virginia Attorney General Darrell McGraw alleges 14 pharmaceutical drug distributors have failed the state's painkiller abuse epidemic.

McGraw announced Tuesday that he's filing a pair of lawsuits in Boone County Circuit Court...

### C8 Panel Needs More Time On Reports

CHARLESTON (AP) — A panel studying possible links between a chemical used at a DuPont plant in West Virginia and various diseases needs at least three more months to finish its work.

The C8 Science Panel has already concluded there's a probable link to testicular and kidney cancers, and pregnancy-induced hypertension. But in April, it said it had found no link between the chemical, also known as perfluorooctanoic acid, and 19 other types of cancer.

In a letter sent Monday to Wood County Circuit Court J.D. Beane, the three-member panel said it won't be able to meet a July 31 deadline for assessment reports on 14 other diseases.

While the panel has made substantial progress, it said it underestimated the challenge in resolving borderline cases.

The panel intends to file seven reports with the court July 30 on: asthma; chronic obstructive pulmonary disease; stroke; infectious diseases; thyroid disease; autoimmune disease; and neurologic development in children.

It'll aim to issue reports on the other seven diseases by the end of October. Those will focus on: liver disease; kidney disease; Parkinson's disease; osteoarthritis; heart disease; hypercholesterolemia; and hypertension.

### Striking Red Cross Workers Come to Terms

Authorities searched the mail in the Akron area found there and at least $90,000 in cash. According to search warrants, dozens or even hundreds of men sought illegal sex. In the parlors, there were scores of women, many of them Korean and poor English speakers, might have been working against their will.

The tentative agreement comes after officials took steps to revoke...

The parlors to ... and could operate in certain locations if operators ... a license from the city.

Ohio's Director Greg Hicks said the aforesaid effort likely put the parlors out of business and suggested it would be more difficult for the operators to get a license from the city.


# DIVORCE AND FAMILY LAW
We fight for You!
**FORISEVALAW**
www.forisevlaw.com
1446 National Road
Wheeling, WV
**304-238-0066**
John Kyle, Esq.


## WANT A CAREER SUCCESS? GET CAREER SKILLS!
OPENINGS REMAIN IN ALL PROGRAMS AT HARRISON CAREER CENTER. SIGN UP NOW!



# OPHTHALMOLOGY AT ITS BEST

### Meet the Region's Top Eye Specialists

With an emphasis on excellence and compassion, it's the fastest growing ophthalmology practice in the region...

# EXHIBIT 19

**A8** Wednesday, June 27, 2012 — **Local and State** — *Telegram*

# Shinnston city manager presents list of sewer rate increases

by Jim Davis
STAFF WRITER

SHINNSTON — Shinnston residents will see a spike in their sewer bills next month, City Council learned Monday night, City Manager Debra Herndon presented council with a list of new sewer rates under the 26 percent increase.

The minimum monthly bill based on 2,000 gallons of usage will increase from $18.14 to $22.16.

The increase is to pay for a $4.2 million upgrade of Shinnston's sewer system. The

project involved upgrades to the wastewater treatment plant and the separation of the sanitary and storm sewer lines.

"The rates were approved prior to the start of the sewer project," Herndon said.

Herndon raised rates prior to the project to erase a deficit in the sewer fund. Herndon said.

The second increase was to take effect upon substantial completion of the project, the city manager said.

Contractors filed certificates of substantial completion in February, but the city didn't immediately forward them in

the state Public Service Commission, Herndon said.

"The rates were approved prior to the start of the sewer project," Herndon said.

Shinnston obtained a $2.16 million loan from the U.S. Department of Agriculture's Rural Utilities Service for the project.

The city also received grants in the amount of $4 million from the Rural Utilities Service and $500,000 from the U.S. Environmental Protection Agency.

Only the loan has to be paid off.

In other business, council

received an update on two community development projects.

Progressively, a Charleston marketing firm, will provide technical assistance to the city's capital campaign for a proposed community center on Pike Street, Finance Officer Emma Clarks said.

The city is paying for Progressity's services, with an $8,000 state Development Office grant and $2,000 in local matching funds, Clarke said.

Plans for the proposed facility include a banquet hall, kitchen, meeting rooms and an area for the Shinnston Senior Cit-

izens to use for its functions in the first floor. The second floor would house city offices.

The city recently was awarded a $5,000 grant to hire an architect to create an energy-efficient renovation plan for the structure, Clarke said.

The grant is from the Sustainability Institute at Bridgeport and the West Virginia Statewide Communities Program.

WVK Associates, which is doing the feasibility study, will also design the renovation plan, Clarke said.

Council will meet at noon Monday to elect a mayor and vice mayor and make appointments to city boards.



AIMING FOR A BULLSEYE

While chaos erupts and shot air rockets, Alex Loeman aimed his BB gun, striking a bullseye at the District Cub Scout Day Camp at Veterans Memorial Park recently.

Staff photo by Ryle Jenkins

## W.Va. AG sues pain drug distributors

by Lawrence Messina
THE ASSOCIATED PRESS

CHARLESTON — West Virginia Attorney General Darrell McGraw announced lawsuits Tuesday against 14 pharmaceutical drug distributors, alleging their negligent practices have helped fuel the state's pain pill abuse epidemic.

The complaints in Boone County Circuit Court seek to ensure the companies halt all shipments to West Virginia that aren't for legitimate medical purposes. The complaints also ask a judge to require that companies that suspicious drug orders to the state Board of Pharmacy.

The lawsuits also request a court-ordered program to monitor the health of prescription drug users, alleging the negligence has exposed these people to addiction and misuse. Alleging various consumer protection and antitrust violations as well, the filings seek damage awards to compensate West Virginia for costs to its health and public safety systems from prescription drug abuse, overdoses and related crimes.

West Virginia suffers the nation's highest drug overdose death rate, with most of those cases involving prescription drugs, the lawsuits note. Fatal prescription drug-related overdoses quadrupled between 2001

and 2008 in West Virginia to 21.5 deaths per 100,000 residents, the filings said. Ongoing federal probes centered on southern West Virginia have shut down suspected "pill mills" that unlawfully provide pain drugs or prescriptions, and have led to the criminal convictions of physicians, pharmacists and their staffers.

"Prescription drug abuse costs West Virginians over $430 million a year, devastates families and bangs enormous burdens on our hospitals, courts, law enforcement and communities," McGraw said in a Tuesday statement. "With today's filing, we are seeking to make major drug distributors that have substantially (benefited) from prescription drug abuse accept responsibility and pay for their illicit actions."

A spokesman for the parent company of one defendant, Anda Inc. of Florida, said it does not comment on pending lawsuits but that it seeks to avoid the sort of practices alleged by McGraw.

The official, Charlie Mayr of Watson Pharmaceuticals, said the company's safeguards include sophisticated monitoring that allows the company to halt and investigate suspicious ordering patterns. The company also doesn't ship directly to physician offices or to clinics or other places labeled "pill mills" by authorities.

## City compiling list of streets to be paved

by Jim Davis
STAFF WRITER

CLARKSBURG — Between 15 and 20 Clarksburg streets stand to get a fresh coat of blacktop this summer, city officials say.

The city plans to advertise for bids within the next few weeks, City Manager Martin Howe said.

"We're in the process of finalizing the list of streets," Howe said. "We went through those streets to assess which ones didn't need paved or have recently been paved and substituting those with others that need resurfaced.

"There are other streets that we do know will need attention going into next year," the city manager added. "Depending on where the bids come in at, we would have the flexibility of adding these streets if funds are available."

The city is bidding out paving a little earlier than last summer, when oil prices were higher.

Oil is used in the production of asphalt.

Crude futures are trading just under $80 a barrel, down $21 from the same time last year, according to the U.S. Energy Information Administration.

"We're optimistic that petroleum prices will continue to decrease, which would allow us to do more paving," Howe said.

Clarksburg City Council likely will review the bids and award the contract at an August meeting, Howe said.

He declined to say when paving might start, noting that

the city tries to schedule work around various summer festivals.

The city is in the 18th year of its 17-year paving plan. Howe said.

"The plan is used as a guide, but we're also flexible to move streets that need attention up in the plan and delay paving on others that still might be in good condition," Howe said.

Clarksburg is responsible for 145 miles of streets, he added.

The city has allocated $880,000 for street milling and paving for the new fiscal year that starts Sunday, according to budget documents.

Spending on paving has exceeded $1.4 million over the past five years, the budget documents show. That includes $377,855 this fiscal year and $239,041 during the 2010-11 fiscal year.

The funds come from the city's capital improvement levy.

Mayor Philip Trecost said the city's paving program is another example of the city giving back to the citizens who renew the levy every five years.

"The story behind paving is our citizens every time voted to pass the levy, and that's why our roads, parks and police cruisers look so nice," Trecost said.

"You only have to go to some of the other cities that don't have that tax base to see how dilapidated their streets are compared to ours," Trecost added. "It's a compliment to our citizens, and it's also a compliment to public works."

## Commission to be asked to help maintain flood-control dams

by Adam Tobias
STAFF WRITER

CLARKSBURG — The Harrison County Commission will be asked to make a $20,000 contribution toward maintaining flood-control dams around Salem when it meets on Thursday.

The meeting begins at 9 a.m. in the commission hearing room on the third floor of the courthouse.

In a letter written to the commission, West Fork Conservation District Chairman William Coffindaffer says the funding would assist in the operation, maintenance and repair of the Salem Fork Watershed Structures.

Coffindaffer said the commission signed a cost-share agreement with the district on Sept. 30, 2007, to release $7,000 for the watershed dams. The commission also gave the district $10,000 in 2011, he added.

Coffindaffer considers the dams to be vital for the west side of the county.

These dams have reduced flooding many times over the years in the little town of Salem, Coffindaffer said. "The costs that have been incurred will always be needed to maintain the integrity of the dams and to protect downstream...

certainly want to ask some questions and make sure that any money we would contribute is being spent wisely."

Commissioners also are scheduled to receive a memorandum regarding a road access request from a company looking to create a development of high-end estate homes near the North Central West Virginia Airport.

Robert LeFever, a managing member of LeFever Consulting LLC, said his company has a contract to purchase 215 acres from Dr. Michael Stewart and to develop the property.

LeFever Consulting is bidding for exclusive road access that would stretch from Hart Ridge Road to the planned development.

Harrison Airport Director Rick Rock said he believes the land that would be used for the road access is owned by the Benedum Airport Authority.

According to LeFever, the purpose of Thursday's meeting is to ask the commission for permission for the road access.

### YOUR CHOICE in post-hospital care

Thank you Heartland.

[Heartland logo]
Heartland

## 4th of July
### Holiday Deadlines

| Publication Day | Final Ad Deadline |
|---|---|
| Exponent Telegram Sunday Celebration/Hometown, July 8 | Tuesday, July 3, 12:00 Noon |
| Exponent Telegram Wednesday, July 4 | Monday, July 2, 2:00 PM |
| Exponent Telegram Thursday, July 5 | Monday, July 2, 2:00 PM |
| Exponent Telegram Friday, July 6 | Tuesday, July 3, 3:00 PM |
| Bridgeport News Thursday, July 5 | Friday, June 29, Noon |

Our office will be closed on Wednesday, July 4th.

Have a Happy & Safe Holiday

Call: 626-1430 or 1-800-982-6034

Come In Or Call...

ACE Hardware — Bridgeport • 842-5491
New Store Hours: Mon.-Sat. 8am-8pm • Sun. 9am-6pm

40 Gal Short Gas $349 95
40 Gal Tall Gas $329 95

OTHER SIZES & FUEL TYPES AVAILABLE IN STOCK!

$200 00

---

*Telegram*

## COURT

# Man charge crimes has

by Matt Harvey
ASSISTANT MANAGING EDITOR

CLARKSBURG — Bail has been modified for a man facing 17 sex charges.

Jeffrey Alan Brown's bond was shifted from $50,000, cash bond only, to $100,000, cash or surety, on Tuesday by Harrison Chief Judge John Lewis Marks Jr.

Assistant Prosecutor James Armstrong hadn't opposed the defense request to change the bond from cash only to cash or surety, due to constitutional concerns.

But Armstrong did successfully argue for a higher bond under the modification that was made. That should help ensure Brown's appearance in court, the state attorney said.

Brown, 42, had yet to post bond Tuesday afternoon.

He is charged with six counts of second-degree sexual assault, five counts of first-degree sexual abuse and six counts of incest.

Harrison Deputy C. Diaz has alleged the wrongdoing occurred during the second half of 2010. The accuser brought the allegations to the sheriff's department this May 3, Diaz has alleged.

During an interview, Brown first denied the allegations, but later said he had intercourse with the accuser four times and other sexual contact with her on three occasions, Diaz has alleged.

Also:
• Christopher Lee Billis, 18, of Weston, has pleaded guilty before U.S. Magistrate John S. Kaull to use of a firearm during a crime of violence.

The defendant's wrongdoing occurred Nov. 27 in Lewis County and involved a 40-caliber Hi-Point Stearns firearm, federal court jurors alleged.

An armed robbery charge remained pending Tuesday against the defendant from Lewis County, according to state jail records.

Billis robbed the 7-Eleven at 758 N. Main Ave in Weston on Nov. 27, state authorities have alleged.

Assistant U.S. Attorney Zelda Wesley prosecuted the

federal cases presented by Garrett Chief U.S. John Prescott presided over the cases.

• Handshaw of Spoiler tended to a prison facility...

Harrison Thomas A. can't sentence serving the crime.

# Lawmakers advised on autism care oversight

The Associated Press

CHARLESTON — West Virginia does not appear to need its own regulatory board to oversee specialists who treat children with autism, given current national standards, a Tuesday report presented to lawmakers concluded.

The legislative audit found that the national Behavior Analyst Certification Board "provides adequate and sufficient protection to the public."

The findings arrive after the West Virginia Board of Examiners of Psychologists sought to claim jurisdiction over behavior analysts last year. The board dropped that attempt following a lawsuit and an outcry among parents of children diagnosed with those neurological conditions.

These specialists provide applied behavioral analysis, a treatment considered crucial experts for many children with an autism spectrum disorder. These conditions are marked by problems with communication, behavior and social skills. The range includes a severe form called autistic disorder and the much milder Asperger's syndrome.

Tuesday's report said the number of West Virginia schoolchildren diagnosed within the spectrum increased to 1,474 during the just-completed school year from 372 during 2001-2002.

# EXHIBIT 20

# THE WALL STREET JOURNAL.

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit https://www.djreprints.com.

https://www.wsj.com/articles/SB10001424052702304058404577492853204473294

# West Virginia Sues Drug Distributors in Pill-Abuse Fight

*By Jon Kamp*

Updated June 27, 2012 5:08 pm ET

West Virginia's attorney general is suing 14 drug wholesalers to force stricter distribution of painkillers and other controlled substances, alleging the companies have benefited from the state's problem with prescription-drug abuse.

The suit filed Tuesday targets big distributors like Cardinal Health Inc., CAH **-2.61%** ▼ AmerisourceBergen Corp., ABC **-2.10%** ▼ Watson Pharmaceuticals Inc. distribution unit Anda Inc. and several small firms. State Attorney General Darrell McGraw said the lawsuit's aims include recovering damages, creating medical-monitoring for drug-abuse victims and forcing companies to promptly alert state authorities when they see suspicious orders.

"We are seeking to make major drug distributors that have substantially benefited from prescription drug abuse accept responsibility and pay for their illicit actions," Mr. McGraw said in a press release Tuesday.

The state aims to cut off distribution routes that are part of the "pill mill" process that also includes medical providers and pharmacies, Mr. McGraw said. The release cited data showing West Virginia is "the nation's most medicated state", filling nearly seven more prescriptions per person each year than the U.S. average. The lawsuit was filed in the Circuit Court in Boone County, W. Va.

Pharmaceutical distributors provide a bridge between drug manufacturers and the nation's vast network of retail pharmacies. Authorities had targeted them before for allegedly not doing enough to recognize and stop the flow of addictive pain pills, which may start with doctors writing prescriptions for nonmedical purposes.

In May, Cardinal Health settled government accusations that it distributed large volumes of addictive pain medication in Florida without proper controls. The company accepted a two-

year suspension of its Drug Enforcement Administration license to ship controlled substances from a big distribution center in the state while promising to improve procedures to prevent the illegal diversion of drugs.

Cardinal spokesman Debbie Mitchell said the company only recently learned of the West Virginia lawsuit and didn't have an immediate comment on the matter.

Watson spokesman Charlie Mayr said the company's Anda distribution business has sophisticated methods of monitoring order patterns and immediately ceases shipments and launches investigations when it finds suspicious activity. Watson also makes generic pain drugs such as oxycodone.

"We take this very seriously," Mr. Mayr said.

An AmerisourceBergen spokesman couldn't be reached for comment.

**Write to** Jon Kamp at jon.kamp@dowjones.com

Copyright © 2020 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit https://www.djreprints.com.