# EXHIBIT 25

The Boone County Commission met in REGULAR SESSION on Tuesday, August 21, 2012. Those present for the meeting were Commission President Mickey Brown and Commissioner Eddie Hendricks. Staff present was James Gore, Administrator and Pam White, Assistant Administrator and Judy Sanders, Secretary.

This meeting was recorded on CD 265 A and 265 B. Commissioner Brown called the meeting to order at 10:00 a.m.

At Track 1 on CD, Commissioner Hendricks made a motion to approve the Exonerations as prepared and presented by the Assessor's Office, seconded by Commissioner Brown, motion passed.

At Track 1 on CD, Commissioner Hendricks made a motion to approve the Minutes from the August 09, 2012 Meeting, seconded by Commissioner Brown, motion passed.

At Track 1 on CD, Commissioner Hendricks made a motion to approve the County Clerk's Appointments and Finals as presented by the County Clerk's Office, seconded by Commissioner Brown, motion passed.

At Track 1 on CD, Larry Lodato, Boone Economic Development Corporation Director, presented three checks in the amount of $1,950.00 representing rent at the Business Incubator.

At Track 3 on CD, Commissioner Hendricks made a motion to approve to request a Change of Scope for a 2011 Community Participation Program Grant in the amount of $5,000.00 earmarked for the Bituminous Coal Heritage Museum for improvements to include new displays, signage, exhibits and to expand the facilities as funds permit, due to roof leakage problems at the Museum, which will allow inspection and repair of the leakage problem, as per request of Larry Lodato, Boone Economic Development Corporation Director, seconded by Commissioner Brown, motion passed.

At Track 4 on CD, Commissioner Hendricks made a motion to approve the attendance of Larry Lodato to the West Virginia Economic Development Council Annual Meeting held in Morgantown, West Virginia, at the Waterfront Place Hotel on September 17 and 18, 2012, as per request of Larry Lodato, Boone Economic Development Corporation Director, seconded by Commissioner Brown, motion passed.

At Track 4 on CD, Sandra Scott, Crime Watch Member, and others spoke to the Commission regarding the Foster Community Center.

At Track 14 on CD, Joy Underwood spoke to the Commission regarding Armstrong Cable, and asked for information on how to get a franchise. Mr. Underwood was advised that a meeting with the Prosecuting Attorney was underway and he would be contacted regarding the issue.

At Track 18 on CD, Commissioner Hendricks made a motion to approve to accept the resignation of Vanessa Scott as the janitor of the Foster Community Center, seconded by Commissioner Brown, motion passed.

At Track 19 on CD, Commissioner Hendricks made a motion to approve the attendance of James Gore and Rick Kirk to the Brownfields Conference held on September 5 and 6, 2012 at the Glade Springs Resort, as per request of James Gore, County Administrator, seconded by

Commissioner Brown, motion passed.

At Track 19 on CD, Commissioner Hendricks made a motion to approve to pay an invoice to Travelers Insurance in the amount of $238,106.00 for vehicle and property Liability Insurance for the Policy Period of July 01, 2012 to July 01, 2013, seconded by Commissioner Brown, motion passed.

At Track 20 on CD, Commissioner Hendricks made a motion to approve the attendance of James Gore and Mickey Brown to the County Commissions' Association of West Virginia Meeting held on September 16 and 17, 2012 in Charles Town, West Virginia, at the Charles Town Inn, as per request of James Gore, County Administrator, seconded by Commissioner Brown, motion passed.

At Track 20 on CD, Commissioner Hendricks made a motion to approve to purchase and install Blinds at the Racine Community Center, as per request of the Racine Community Center Panel, seconded by Commissioner Brown, motion passed.

At Track 21 on CD, Commissioner Hendricks made a motion to approve to transfer the old Bailer from the Boone County Solid Waste Authority to the Nicholas County Solid Waste Authority, as per request of Larry Bradford, Executive Director, Nicholas County Solid Waste Authority, seconded by Commissioner Brown, motion passed.

At Track 23 on CD, Commissioner Hendricks made a motion to approve the last week of September 2012 as "Boone County Association of Retired School Employees Week", seconded by Commissioner Brown, motion passed.

At Track 27 on CD, Commissioner Hendricks made a motion to approve to give a grant to the Boone County PSD in the amount of $420.81 to pay an invoice to HD Supply Waterworks for materials for the Dartmont Park Water Extension Project, as per request of Nancy Shreve, Boone County PSD, seconded by Commissioner Brown, motion passed.

At Track 27 on CD, Commissioner Hendricks made a motion to approve to give a grant to the Boone County PSD in the amount of $13,000.00 to pay an invoice to Chojnacki Construction for services provided for the Dartmont Park Water Extension Project, as per request of Nancy Shreve, Boone County PSD, seconded by Commissioner Brown, motion passed.

At Track 28 on CD, Commissioner Hendricks made a motion to approve to give a grant to the Boone County PSD in the amount of $28,992.77 to pay an invoice to HD Supply Waterworks for materials for the Joes Creek III Water Extension Project, as per request of Nancy Shreve, Boone County PSD, seconded by Commissioner Brown, motion passed,

At Track 31 on CD, Commissioner Hendricks made a motion to approve to give a grant to the Boone County PSD to pay an invoice to Potesta Engineers for services provided to obtain reimbursements from the West Virginia American Water Company for the following Water Extension Projects:

- Six Mile Road      $3,750.00
- Long Branch Road   $3,250.00
- Stollings Road     $3,500.00

692

2

- Dartmont Park        $3,500.00
- Joes Creek I         $1,000.00
- Joes Creek II        $3,500.00
- Joes Creek III       $3,500.00

as per request of Nancy Shreve, Boone County PSD, seconded by Commissioner Brown, motion passed.

At Track 32 on CD, Commissioner Hendricks made a motion to approve to give a grant to the Boone County PSD in the amount of $1,204.80 to pay an invoice to Waste Management for sludge removal, as per request of Nancy Shreve, Boone County PSD, seconded by Commissioner Brown, motion passed.

At Track 32 on CD, Commissioner Hendricks made a motion to approve to give a grant to the Boone County PSD to pay an invoice to Precision Pump in the amount of $17,140.00 for pump repair, as per request of Nancy Shreve, Boone County PSD, seconded by Commissioner Brown, motion passed.

At Track 33 on CD, Commissioner Hendricks made a motion to approve to give a grant to the Boone County PSD to pay an invoice to Potesta Engineers in the amount of $2,450.00 for services for the NPDES Permit Modification Long Term Control Plan, as per request of Nancy Shreve, Boone County PSD, seconded by Commissioner Brown, motion passed.

At Track 37 on Larry Greene, Investigator for the Prosecuting Attorney, presented the Jail Bill with a credit in the amount of $1,024.80.

At Track 40 on CD, Commissioner Hendricks made a motion to approve to close and vacate a certain alley that lies between Lot 15 and 16 in the Town of Wharton, in the Crook District of Boon County, West Virginia, which is shown on a series of maps of record in the Office of the County Clerk in Map Book 19, at page 26, owned by Stephen and Jenny Elswick, Petitioners, as per request of Judson C. MacCallum, Attorney for Petitioners, seconded by Commissioner Brown, motion passed.

At Track 41 on CD, Commissioner Hendricks made a motion to approve to hire Aimee Browning, Part Time, in the County Clerk's Office, effective August 22, 2012, at the rate of $10.00 per hour without benefits, pending the pre-employment drug screening results, as per request of Gary Williams, County Clerk, seconded by Commissioner Brown, motion passed.

At Track 42 on CD, Commissioner Hendricks made a motion to approve to hire Stephanie Sloan, Part Time, as janitor of the Emergency Management Agency, effective August 22, 2012, at the rate of $62.50 per week, pending the pre-employment drug screening results, seconded by Commissioner Brown, motion passed.

At Track 45 on CD, Commissioner Hendricks made a motion to approve to reappoint Atholl Halstead to the Capitol Resource Board for a one year term, expiring on April 01, 2013, seconded by Commissioner Brown, motion passed.

693        3

At Track 44 on CD, Bill Cook, Director of Campus Operations, Sam Littearl, CEO, and Joanne Tomblin, President, spoke to the Commission regarding future plans for Southern West Virginia Community College in regard to property located on Corridor G, recently purchased by the County. Mrs. Tomblin stated that the site is a great opportunity for possibly a new campus or extension of programs already in place. Mrs. Tomblin was advised to work with Larry Lodato, Boone Economic Development Office Director, regarding plans for a future project.

At Track 69 on CD, Greg Lay, Emergency Management Agency Director, advised the Commission that he will be filing a Notice of Intent to apply for Hazard Mitigation Assistance for possibly the purchase of generators, phone boosters and ice machines at the Community Centers.

At Track 71 on CD, Commissioner Hendricks made a motion to approve the purchase of U-Channel green posts from American Fiber Technologies for the Addressing Department in the amount of $846.00, as per request of Greg Lay, Emergency Management Agency Director, seconded by Commissioner Brown, motion passed.

At Track 72 on CD, Commissioner Hendricks made a motion to approve an eight month Maintenance and Support Agreement from Emergitech, Inc. for a 30-button Vodavi Exec Full Duplex Speakerphone at the Emergency Management Agency in the amount of $44.10, as per request of Greg Lay, Emergency Management Agency Director, seconded by Commissioner Brown, motion passed.

At Track 14 on CD 265 B, Commissioner Hendricks made a motion to approve the Contingent Fee Agreement with the law firms of Cagle, Jackson and DiTrapano, Barrett and DiPiero, and authorize the President to sign on its behalf, seconded by Commissioner Brown, motion passed.

At Track 16 on CD, Commissioner Hendricks made a motion to approve to replace the copier in the Boone County Sheriff's Detachment Office of Sex Crimes and Child Abuse with a Bizhub C35, as per request of Chad Barker, Chief Deputy, seconded by Commissioner Brown, motion passed.

At Track 16 on CD, Commissioner Hendricks made a motion to approve to have internet services provided to the Boone County Sheriff's Detachment Office of Sex Crimes and Child Abuse, as per request of Chad Barker, Chief Deputy, seconded by Commissioner Brown, motion passed.

At Track 16 on CD, Commissioner Hendricks made a motion to approve to go into Executive Session to discuss a Personnel Matter, seconded by Commissioner Brown, motion passed.

At Track 17 on CD, The Boone County Commission was back in Regular Session.

At Track 18 on CD, Commissioner Hendricks made a motion to approve to pay the Bills as presented, seconded by Commissioner Brown, motion passed.

At Track 19 on CD, Commissioner Hendricks made a motion to approve the Purchase Orders as prepared and presented, seconded by Commissioner Brown, motion passed.

At Track 20 on CD, The Boone County Solid Waste Authority Board Meeting was held.

At Track 24 on CD, The Boone County Commission was back in Regular Session.

At Track 24 on CD, Commissioner Hendricks made a motion to approve to Adjourn the Meeting until Tuesday August 28, 2012 at 5:00 p.m., seconded by Commissioner Brown, motion passed.

I hereby certify the above to be a true and correct summary of the Boone County Commission's REGULAR SESSION held on August 21, 2012 at 10:00 A.M.

Judy L. Sanders

Accepted and Approved this 28th day of August, 2012.

Mickey Brown, President

_____ABSENT_____
Atholl Halstead, Commissioner

Eddie Hendricks, Commissioner

695                5

# EXHIBIT 26

IN THE CIRCUIT COURT OF McDOWELL COUNTY, WEST VIRGINIA

**THE COUNTY COMMISSION OF
McDOWELL COUNTY**, a public
corporation,

       Plaintiff,

v.

                           Civil Action No. 13-C- 1485
                           Judge: ___Stephens___

**BLACK DIAMOND PHARMACY, LLC,**
a West Virginia corporation,
**McDOWELL PHARMACY, INC.,**
a West Virginia corporation,
**WELCH PHARMACY, INC.,**
a West Virginia corporation, and
**RITE AID OF WEST VIRGINIA, INC.,**
a West Virginia corporation, d/b/a **RITE AID DISCOUNT
PHARMACY 1795,** d/b/a **RITE AID DISCOUNT
PHARMACY 1462,** d/b/a **RITE AID DISCOUNT
PHARMACY 1359,**

       Defendants.

RECEIVED & FILED
CIRCUIT COURT
McDOWELL COUNTY, W.VA.
2013 AUG 21 PM 3: 15

## COMPLAINT

For its Complaint the Plaintiff asserts the following:

I.

## Summary of Complaint

    1.    This action addresses prescription drug abuse that has reached epidemic levels in the

United States, in West Virginia, and in McDowell County, West Virginia in particular. Prescription

drug abuse costs McDowell County millions of dollars annually and destroys the very quality of life

in the community. The Defendants named herein proximately caused and contributed to the

prescription drug abuse epidemic in McDowell County. Moreover, these Defendants have profited

substantially from their participation in prescription drug abuse.

II.

**Parties**

2.      The Plaintiff is the County Commission of McDowell County.  Plaintiff is a public

corporation authorized by *W.Va. Code* §7-1-1(a) to sue.

3.      The Defendants named herein are the following pharmacies:

a.      Black Diamond Pharmacy, LLC.

b.      McDowell Pharmacy, Inc.

c.      Welch Pharmacy, Inc.

d.      Rite Aid of West Virginia, Inc., d/b/a Rite Aid Discount Pharmacy 1795
(Bradshaw); d/b/a Rite Aid Discount Pharmacy 1462 (War); d/b/a Rite Aid
Discount Pharmacy 1359 (Welch).

III.

**Facts**

4.      At all times pertinent hereto, the Defendants herein named were on notice that:

a.      There existed a growing epidemic from the abuse of prescription drugs.

b.      The prescriptions they filled and controlled substances they distributed
included those that were and are being widely abused.

c.      Dangerous controlled drugs distributed by Defendants were not prescribed or

being used for legitimate medical purposes.  Instead, they were being abused and/or used to feed

addictions and/or were being diverted by drug dealers.

-2-

5.      McDowell County had a per capita death rate of 34.2 per 100,000 in 2001. In 2008, it was 97.3. An April 2012 article in Playboy magazine about the McDowell County prescription drug abuse problem was titled "Overdose County, USA."

6.      The prosecuting authorities for McDowell County estimate most of their caseload is related either directly or indirectly to the prescription drug abuse epidemic.

7.      The Plaintiff Commission is forced to expend hundreds of thousands of dollars annually in regional jail fees for housing inmates who are incarcerated either directly or indirectly for crimes related to prescription drug abuse.

8.      Both the County Sheriff and the Office of Prosecuting Attorney expend the greatest portion of their budgets to address crimes and investigations that are related either directly or indirectly to the prescription drug abuse epidemic.

9.      Two examples of crimes related to this prescription drug epidemic in McDowell County and which underscore the same are the murder of Tom Hatcher, Mayor of the McDowell County Town of War in July, 2012 in which the mayor's daughter-in-law and her brother killed him in order to steal $1,100 to buy more prescription drugs and the theft of a coal truck which was traded for 10 pills.

10.     These pill mill pharmacy Defendants acted contrary to accepted standards of care by failing to recognize and by continuing to fill prescriptions that were not written and/or used for legitimate medical purposes and/or by turning a blind eye to the obvious facts that reflected the drugs they distributed were not being used for legitimate medical purposes, and as more fully described in paragraphs 16 and 17.

-3-

11.     The Defendant pharmacies acted out of greed due to the profits achieved from their acts and omissions.

12.     As the proximate result of the acts and omissions of these Defendants, the Plaintiff County Commission has sustained damages in the form of substantial increases in jail costs, prosecuting attorneys, law enforcement services and probation services.

13.     Further, as the proximate result of the acts and omissions of these Defendants, the Plaintiff County Commission seeks to abate the public nuisance which the epidemic has created.

IV.

**Claims**

**(COUNT I - NEGLIGENCE)**

14.     Plaintiff re-alleges and incorporates by reference the previous allegations in this Complaint.

15.     Each Defendant owes a duty to the Plaintiff and to the county which they represent to act in accordance with the law and accepted standards of care.

16.     The pill mill pharmacy Defendants breached this duty by, *inter alia*, (1) failing to establish effective controls and procedures against the diversion of controlled substances; (2) failing to design an effective system to flag suspicious orders; (3) failing to operate a system to flag suspicious orders; and (4) failing to report and inform authorities of suspicious orders.  See 15 *W. Va. C.S.R.* §2-4.

17.     Defendants' breaches of their duties caused Plaintiff to suffer damages, as described above more particularly within paragraphs 6-7, 12 and 13.

-4-

### (COUNT II - PUBLIC NUISANCE)

18.     Plaintiff re-alleges and incorporates by reference the previous allegations in this Complaint.

19.     Defendants were on notice of the prescription drug abuse epidemic and pill mill problem as a result of the extensive  media coverage and governmental resources devoted to the issue.

20.     Notwithstanding this knowledge of the problem, Defendants engaged in a pattern of distributing controlled substances which were well-known to be abused and diverted for illegal and illegitimate purposes.

21.     Defendants' conduct has harmed the quality of life in McDowell County.

22.     Defendants' acts and omissions stated herein constitute a public nuisance by injuriously affecting the safety, health, and morals of the public in McDowell County, and have worked substantial annoyance, inconvenience, or injury to the public in McDowell County.

23.     Defendants' wrongful sales and distributions of dangerous controlled drugs resulted in McDowell County and its citizens and taxpayers being stuck paying large expenditures relating to an influx of criminal conduct caused by the wrongful distribution of the controlled drugs by Defendants, as well as resulting corrections, law-enforcement costs and other costs.  The citizenry of McDowell County suffered the consequences of the Defendants wrongful distributions of controlled substances.

24.     Defendants' acts and omissions as stated herein unlawfully operated to hurt or inconvenience an indefinite number of citizens of McDowell Count, thereby affecting the general public.  Defendants acts and omissions interfered with the rights of McDowell County citizens,

-5-

either in person, property, the enjoyment of property, or comfort. The defendants acts and omissions have infringed upon the well-being, comfort, repose, and enjoyment of ordinary McDowell County citizens.

25.     Defendants' acts and omissions as stated herein unreasonably interfered with rights common to the general public.

26.     Defendants' acts and omissions as stated herein involve a significant interference with the public health, the public safety, the public peace, the public comfort and the public convenience.

27.     Defendants' acts and omissions as stated herein is proscribed by a statute or ordinance or administrative regulation.

28.     Defendants acts and omissions as stated herein has been of a continuing nature and has produced a permanent or long-lasting effect, and, as Defendants know or have reason to know, their acts and omissions stated herein has a significant effect upon the public right. .

29.     The Defendants acts and omissions as stated herein in wrongfully selling and distributing controlled substances has allowed them to make substantial sums of money in McDowell County, and left McDowell County and its citizens to pay for a crime surge related to their distribution of controlled substances, and to pay for the diversion of law enforcement and incarceration resources required to be devoted to prescription drug related crime. Defendants' wrongful conduct as stated herein injuriously impacted the lives, livelihoods and quality of life of McDowell County citizens due to the wrongful distribution of controlled substances.

30.     Defendants' conduct has caused and contributed to the public nuisance and will continue to do so unless the nuisance is abated.

-6-

31.    The County has sustained economic harm and damages because of the nuisance and will continue to do so until the nuisance is abated.

32.    Defendants' conduct has caused a county-wide nuisance beyond that which has plagued other parts of America.

## (COUNT III - STRICT LIABILITY)

33.    Plaintiff re-alleges and incorporates by reference the previous allegations in this Complaint.

34.    Distributing or dispensing prescription drugs for illegitimate purposes, or drug dealing, is an abnormally dangerous, ultrahazardous, and an inherently dangerous activity.

35.    Distributing and dispensing prescription drugs for illegitimate purposes, or drug dealing, involves a high degree of risk of harm to the County in which it occurs.

36.    The likelihood that the County will continue to suffer harm as a result of this drug dealing is great.

37.    The risks posed by the distributing and dispensing of prescription drugs for illegitimate purposes, or drug-dealing, cannot be eliminated or reduced without substantial expenditures of resources.

38.    Distributing and dispensing prescription drugs for illegitimate purposes, or drug dealing, is an activity that is not a matter of common usage.

39.    Distributing and dispensing prescription drugs for illegitimate purposes, or drug dealing, is an inappropriate activity, where it is carried on, throughout the County.

-7-

40.     The dangerous attributes of distributing or dispensing prescription drugs for illegitimate purposes, or drug-dealing, outweigh whatever *de minimis* communal value if any can be gleaned from it.

41.     By distributing or dispensing prescription drugs for illegitimate purposes, or drug dealing, Defendants have sought profits that have exposed the County to an abnormal risk and an abnormally dangerous condition.

42.     Defendants knew or should have known they were profiting from an abnormally dangerous, ultrahazardous, and inherently dangerous activity.

43.     Plaintiff suffered damage as a result of Defendants' abnormally dangerous, ultrahazardous, and inherently dangerous activities in dealing drugs.

### (COUNT IV - UNJUST ENRICHMENT)

44.     Plaintiff re-alleges and incorporates by reference the previous allegations in this Complaint.

45.     The relationship between Plaintiff and Defendants precludes Defendants from being unjustly enriched at the expense of Plaintiff and from receiving and retaining benefits therefrom, including Defendants' profiting from the rise of pill mills, illicit drug dealing and the prescription drug abuse epidemic in the County.

46.     Defendants have been unjustly enriched at the expense of Plaintiff.

V.

### Relief

Plaintiff seeks to recover the following from Defendants:

a.      Compensatory damages proximately caused by Defendants;

b.      Attorney fees and costs;

-8-

c.  Punitive Damages in an amount sufficient to ensure that such actions are not repeated
and in accordance with West Virginia law;

d.  Injunctive Relief requiring the nuisance to be abated and for Defendants to devise
a court-approved plan to comply with the state regulations violated; and;

e.  All other relief this Court deems just and proper.

(To be clear, Plaintiff seeks all recompense and remuneration to go directly to the County.
Plaintiff does not intend to recover and will not accept monetary amounts on behalf of individual
citizens. Rather, Plaintiff seeks compensation for damages that it, and it alone, has suffered and
incurred and will continue to incur in the future.)

**PLAINTIFF RESPECTFULLY REQUESTS A TRIAL BY JURY.**

                                        **McDOWELL COUNTY COMMISSION,**
                                        *–By Counsel–*

_____
Rudolph L. DiTrapano          (W.Va. Bar No. 1024)
Sean P. McGinley              (W.Va. Bar No. 5836)
Robert M. Bastress III        (W.Va. Bar No. 9616)
**DiTRAPANO, BARRETT, DiPIERO,**
**McGINLEY & SIMMONS, PLLC**
604 Virginia Street, East
Charleston, West Virginia 25301
(304) 342-0133 (phone)
(304) 342-4605 (fax)

_____
James M. Cagle         (w/ permission)
                       (W.Va. Bar No. 580)
**CAGLE & JACKSON, ATTORNEYS**
P.O. Box 12326
Big Chimney Station
Charleston, WV 25322

-9-

# EXHIBIT 27

IN THE CIRCUIT COURT OF BOONE COUNTY, WEST VIRGINIA

**THE COUNTY COMMISSION OF**
**BOONE COUNTY**, a public
corporation,

        Plaintiff,

v.

        Civil Action No. 13-C- *180*
        Judge Thompson

**LARRY'S DRIVE-IN PHARMACY, INC.,**
a West Virginia corporation,
**MEDICINE STOP, INC.,**
a West Virginia corporation,
**MEDS 2 GO, INC.,**
a West Virginia corporation,
**MEDS 2 GO EXPRESS PHARMACY, INC.,**
 a West Virginia corporation, d/b/a ALUM CREEK PHARMACY,
**ALUM CREEK PHARMACY, INC.,**
a West Virginia corporation, d/b/a MEDS 2 GO, and
**TRIVILLIAN'S PHARMACY OF KANAWHA CITY, INC.,**
a West Virginia corporation,

        Defendants.

## COMPLAINT

For its Complaint the Plaintiff asserts the following:

I.

## Summary of Complaint

1.    This action addresses prescription drug abuse that has reached epidemic levels in the United States, in West Virginia, and in Boone County, West Virginia in particular. Prescription drug abuse costs Boone County millions of dollars annually and destroys the very quality of life in the community. The Defendants named herein proximately caused and contributed to the prescription drug abuse epidemic in Boone County. Moreover, these Defendants have profited substantially from their participation in prescription drug abuse.

## II.

### Parties

2.     The Plaintiff is the County Commission of Boone County.  Plaintiff is a public corporation authorized by *W.Va. Code* §7-1-1(a) to sue.

3.     The Defendants named herein are the following pharmacies:;

     a.     Larry's Drive-In Pharmacy, Inc.;

     b.     Medicine Stop, Inc.;

     c.     Meds 2 Go, Inc. d/b/a Alum Creek Pharmacy;

     d.     Meds 2 Go Express Pharmacy, Inc. d/b/a Alum Creek Pharmacy;

     e.     Alum Creek Pharmacy, Inc., d/b/a Meds 2 Go; and

     f.     Trivillian's Pharmacy of Kanawha City, Inc.

## III.

### Facts

4.     At all times pertinent hereto, the Defendants herein named were on notice that:

     a.     There existed a growing epidemic from the abuse of prescription drugs.

     b.     The prescriptions they filled and controlled substances they distributed included those that were and are being widely abused.

     c.     Dangerous controlled drugs distributed by Defendants were not prescribed or being used for legitimate medical purposes.  Instead, they were being abused and/or used to feed addictions and/or were being diverted by drug dealers.

5.     The prosecuting authorities for Boone County estimate most of their caseload is related either directly or indirectly to the prescription drug abuse epidemic.

6.      The Plaintiff Commission is forced to expend hundreds of thousands of dollars annually in regional jail fees for housing inmates who are incarcerated either directly or indirectly for crimes related to prescription drug abuse.

7.      Both the County Sheriff and the Office of Prosecuting Attorney expend the greatest portion of their budgets to address crimes and investigations that are related either directly or indirectly to the prescription drug abuse epidemic.

8.      These pill mill pharmacy Defendants acted contrary to accepted standards of care by failing to recognize and by continuing to fill prescriptions that were not written and/or used for legitimate medical purposes and/or by turning a blind eye to the obvious facts that reflected the drugs they distributed were not being used for legitimate medical purposes, and as more fully described in paragraphs 14 and 15.

9.      The Defendant pharmacies acted out of greed due to the profits achieved from their acts and omissions.

10.     As the proximate result of the acts and omissions of these Defendants, the Plaintiff County Commission has sustained damages in the form of substantial increases in jail costs, prosecuting attorneys, law enforcement services and probation services.

11.     Further, as the proximate result of the acts and omissions of these Defendants, the Plaintiff County Commission seeks to abate the public nuisance which the epidemic has created.

IV.

### Claims

### (COUNT I - NEGLIGENCE)

12.     Plaintiff re-alleges and incorporates by reference the previous allegations in this Complaint.

-3-

13.     Each Defendant owes a duty to the Plaintiff and to the county which they represent to act in accordance with the law and accepted standards of care.

14.     The pill mill pharmacy Defendants breached this duty by, *inter alia*, (1) failing to establish effective controls and procedures against the diversion of controlled substances; (2) failing to design an effective system to flag suspicious orders; (3) failing to operate a system to flag suspicious orders; and (4) failing to report and inform authorities of suspicious orders.  See 15 *W.Va.C.S.R.* §2-4.

15.     Defendants' breaches of their duties caused Plaintiff to suffer damages, as described above more particularly within paragraphs 6-7, 12 and 13.


## (COUNT II - PUBLIC NUISANCE)

16.     Plaintiff re-alleges and incorporates by reference the previous allegations in this Complaint.

17.     Defendants were on notice of the prescription drug abuse epidemic and pill mill problem as a result of the extensive  media coverage and governmental resources devoted to the issue.


18.     Notwithstanding this knowledge of the problem, Defendants engaged in a pattern of distributing controlled substances which were well-known to be abused and diverted for illegal and illegitimate purposes.

19.     Defendants' conduct has harmed the quality of life in Boone County.

20.    Defendants' acts and omissions stated herein constitute a public nuisance by injuriously affecting the safety, health, and morals of the public in Boone County, and have worked substantial annoyance, inconvenience, or injury to the public in Boone County.

21.    Defendants' wrongful sales and distributions of dangerous controlled drugs resulted in Boone County and its citizens and taxpayers being stuck paying large expenditures relating to an influx of criminal conduct caused by the wrongful distribution of the controlled drugs by Defendants, as well as resulting corrections, law-enforcement costs and other costs.  The citizenry of Boone County suffered the consequences of the Defendants wrongful distributions of controlled substances.

22.    Defendants' acts and omissions as stated herein unlawfully operated to hurt or inconvenience an indefinite number of citizens of Boone Count, thereby affecting the general public. Defendants acts and omissions interfered with the rights of Boone County citizens, either in person, property, the enjoyment of property, or comfort.  The defendants acts and omissions have infringed upon the well-being, comfort, repose, and enjoyment of ordinary Boone County citizens.

23.    Defendants' acts and omissions as stated herein unreasonably interfered with rights common to the general public.

24.    Defendants' acts and omissions as stated herein involve a significant interference with the public health, the public safety, the public peace, the public comfort and the public convenience.

25.    Defendants' acts and omissions as stated herein is proscribed by a statute or ordinance or administrative regulation.

26.    Defendants acts and omissions as stated herein has been of a continuing nature and has produced a permanent or long-lasting effect, and, as Defendants know or have reason to know, their acts and omissions stated herein has a significant effect upon the public right.

-5-

27.    The Defendants acts and omissions as stated herein in wrongfully selling and distributing controlled substances has allowed them to make substantial sums of money in Boone County, and left Boone County and its citizens to pay for a crime surge related to their distribution of controlled substances, and to pay for the diversion of law enforcement and incarceration resources required to be devoted to prescription drug related crime. Defendants' wrongful conduct as stated herein injuriously impacted the lives, livelihoods and quality of life of Boone County citizens due to the wrongful distribution of controlled substances.

28.    Defendants' conduct has caused and contributed to the public nuisance and will continue to do so unless the nuisance is abated.

29.    The County has sustained economic harm and damages because of the nuisance and will continue to do so until the nuisance is abated.

30.    Defendants' conduct has caused a county-wide nuisance beyond that which has plagued other parts of America.

### (COUNT III - STRICT LIABILITY)

31.    Plaintiff re-alleges and incorporates by reference the previous allegations in this Complaint.

32.    Distributing or dispensing prescription drugs for illegitimate purposes, or drug dealing, is an abnormally dangerous, ultrahazardous, and an inherently dangerous activity.

33.    Distributing and dispensing prescription drugs for illegitimate purposes, or drug dealing, involves a high degree of risk of harm to the County in which it occurs.

34.    The likelihood that the County will continue to suffer harm as a result of this drug dealing is great.

-6-

35.    The risks posed by the distributing and dispensing of prescription drugs for illegitimate purposes, or drug-dealing, cannot be eliminated or reduced without substantial expenditures of resources.

36.    Distributing and dispensing prescription drugs for illegitimate purposes, or drug dealing, is an activity that is not a matter of common usage.

37.    Distributing and dispensing prescription drugs for illegitimate purposes, or drug dealing, is an inappropriate activity, where it is carried on, throughout the County.

39.    The dangerous attributes of distributing or dispensing prescription drugs for illegitimate purposes, or drug-dealing, outweigh whatever *de minimis* communal value if any can be gleaned from it.

40.    By distributing or dispensing prescription drugs for illegitimate purposes, or drug dealing, Defendants have sought profits that have exposed the County to an abnormal risk and an abnormally dangerous condition.

41.    Defendants knew or should have known they were profiting from an abnormally dangerous, ultrahazardous, and inherently dangerous activity.

42.    Plaintiff suffered damage as a result of Defendants' abnormally dangerous, ultrahazardous, and inherently dangerous activities in dealing drugs.


## (COUNT IV - UNJUST ENRICHMENT)

43.    Plaintiff re-alleges and incorporates by reference the previous allegations in this Complaint.

44.    The relationship between Plaintiff and Defendants precludes Defendants from being unjustly enriched at the expense of Plaintiff and from receiving and retaining benefits therefrom,

including Defendants' profiting from the rise of pill mills, illicit drug dealing and the prescription drug abuse epidemic in the County.

45.     Defendants have been unjustly enriched at the expense of Plaintiff.


## V.

## Relief

Plaintiff seeks to recover the following from Defendants:

a.     Compensatory damages proximately caused by Defendants;

b.     Attorney fees and costs;

c.     Punitive Damages in an amount sufficient to ensure that such actions are not repeated and in accordance with West Virginia law;

d.     Injunctive Relief requiring the nuisance to be abated and for Defendants to devise a court-approved plan to comply with the state regulations violated; and;

e.     All other relief this Court deems just and proper.

(To be clear, Plaintiff seeks all recompense and remuneration to go directly to the County. Plaintiff does not intend to recover and will not accept monetary amounts on behalf of individual citizens. Rather, Plaintiff seeks compensation for damages that it, and it alone, has suffered and incurred and will continue to incur in the future.)

-8-

PLAINTIFF RESPECTFULLY REQUESTS A TRIAL BY JURY.

THE COUNTY COMMISSION OF
BOONE COUNTY,
–By Counsel–

_____

Rudolph L. DiTrapano (W.Va. Bar No. 1024)
Sean P. McGinley (W.Va. Bar No. 5836)
Robert M. Bastress III (W.Va. Bar No. 9616)
**DiTRAPANO, BARRETT, DiPIERO,
McGINLEY & SIMMONS, PLLC**
604 Virginia Street, East
Charleston, West Virginia 25301
(304) 342-0133 (phone)
(304) 342-4605 (fax)

_____

James M. Cagle (W.Va. Bar No. 580)
**CAGLE & JACKSON, ATTORNEYS**
P.O. Box 12326
Big Chimney Station
Charleston, WV 25322

-9-

# EXHIBIT 28

The Boone County Commission met in REGULAR SESSION on Tuesday, September 17, 2013. Those present for the meeting were Commission President Mickey Brown, Commissioner Atholl Halstead and Commissioner Eddie Hendricks. Staff present was James Gore, Administrator, Pam White, Assistant Administrator and Lee Ann Dale, Financial Assistant.

This meeting was recorded on CD 306A and 306B. Commissioner Brown called the meeting to order at 10:00 a.m.

At Track 1 on CD, Commissioner Halstead made a motion to approve the Exonerations as prepared and presented by the Assessor's Office, seconded by Commissioner Hendricks, motion passed.

At Track 1 on CD, Commissioner Hendricks made a motion to approve the Minutes from the September 3, 2013 Regular Meeting, seconded by Commissioner Halstead, motion passed.

At Track 1 on CD, Commissioner Halstead made a motion to approve the County Clerk's Appointments and Finals as presented by the County Clerk's Office, seconded by Commissioner Hendricks, motion passed.

At Track 2 on CD, Commissioner Halstead made a motion to approve the attendance of Judy Sanders to the Strength  Based Grant Writing Training, October 9 through October 11, 2013, in Charleston, in the amount of $199.00, as per request of Larry Ladato, Boone County Economic Development Office Director, seconded by Commissioner Hendricks, motion passed.

At Track 3 on CD, Commissioner Halstead made a motion to apply for a Fiscal Year 2013 11th Cycle Grant from the West Virginia Courthouse Facilities Improvement Authority for a fire suppression (sprinklers) system which would complete all the floors of the Boone County Courthouse and will provide 20% of the project value in local funding, if approved, seconded by Commissioner Hendricks, motion passed.

At Track 4 on CD, Commissioner Hendricks made a motion to authorize Mickey Brown, President of the Boone County Commission to sign all documentation pertaining to a Community Participation Grant in the amount of $33,000.00 to assist in the renovation of a portion of the old Ellis Building which the County Commission owns to be used by the Southwestern Regional Day Report Center, and agrees to follow all regulations, policies, guidelines and requirements outlined by the State of West Virginia in regard to the bidding procedures and will provide the required minimum 10% matching funds for the Grant if approved, seconded by Commissioner Halstead, motion passed.

At Track 6 on CD, Larry Green, Prosecuting Attorney Investigator, stated that the Regional Jail bill should include a debit in the amount of $48.25 for a total of $58,093.00 for the month of August.

At Track 8 on CD, Commissioner Hendricks made a motion to approve flu shots given by the Boone County Health Department on October 7, 2013, from 7:00 a.m. to 9:00 a.m., available to all full time and part time county employee and will cover any expense not covered by insurance, seconded by Commissioner Halstead, motion passed.

At Track 9 on CD, Commissioner Halstead made a motion to start the Breedlove Lane Water Project, seconded by Commissioner Hendricks, motion passed.

At Track 10 on CD, Commissioner Hendricks made a motion to accept a 2010 Ford Explorer XLT donated to the Commission from the Boone County Assessor's Office and to remove a vehicle from service in the Maintenance Department, seconded by Commissioner Halstead, motion passed.

At Track 11 on CD, Commissioner Halstead made a motion to approve the proclamation declaring October 7, 2013, as West Virginia Breast Cancer Awareness Day and October 2013 as Breast Cancer Awareness Month, seconded by Commissioner Hendricks, motion passed.

At Track 17 on CD, Mickey Brown was sworn in as a member of the Boone County Historic Landmark Commission for a one year term ending September 17, 2014.

At Track 18 on CD, Terry Martin, Regional Intergovernmental Council, updated the Commission on various Sewage and Water Extension Projects.

At Track 19 on CD, Commissioner Hendricks made a motion to approve Drawdown #5 in the amount of $193,002.38 to pay invoices to Chojnacki Construction, Potesta, Inc., and the Regional Intergovernmental Council for the Mud River/Cox's Fork Water Extension Project, and authorize the President to sign on its behalf, as per request of Terry Martin, Regional Intergovernmental Council, seconded by Commissioner Halstead, motion passed.

At Track 35 on CD, the Bid Opening for the Solid Waste Department Fuel Grant took place. One bid was received for the project, and as follows:

- B & M Oil Company

  Bid:   $6,270.00

At Track 39 on CD, the Bid Opening for the Solid Waste Department Tire Grant took place. One bid was received for the project, and as follows:

- Tic Toc Tire

  Bid:  $5,933.00

At Track 41 on CD, Commissioner Halstead made a motion for the County Administrator to review the bids for the Solid Waste Department Fuel & Tire Grants, making sure all specifications and requirements are met, seconded by Commissioner Halstead, motion passed.

At Track 42 on CD, Commissioner Halstead made a motion to accept the bid from B & M Oil Company in the amount of $6,270.00 for the Solid Waste Department Fuel Grant, seconded by Commissioner Hendricks, motion passed.

At Track 43 on CD, Commissioner Halstead made a motion to accept the bid from Tic Toc Tire in the amount of $5,933.00 for the Solid Waste Department Tire Grant, seconded by Commissioner Hendricks, motion passed.

At Track 44 on CD, Commissioner Halstead made a motion to reschedule the Abandoned Building Hearing of Gail Snyder for 60 days and will be on the County Commission Agenda, November 19, 2013, seconded by Commissioner Hendricks, motion passed.

At Track 54 on CD, Commissioner Halstead made a motion to dismiss the Abandoned

2

828

Building Hearing for Ira Steele, seconded by Commissioner Hendricks, motion passed.

At Track 61 on CD, Commissioner Hendricks made a motion to go into Executive Session to discuss a legal matter, seconded by Commissioner Halstead, motion passed.

At Track 62 on CD, The Boone County Commission was back in Regular Session.

At Track 63 on CD, Jeff Nelson of Boone Career and Technical Center, Travel and Tourism Management Program, spoke to the Commission requesting funding support for the October 5, 2013 Rivers n Ridges Adventure Weekend in Boone County.

At Track 1 on CD 306B, Commissioner Halstead made a motion to approve to give a contribution to Rivers n Ridges Adventure Weekend in Boone County in the amount $5,500.00, for fish stocking and stage, seconded by Commissioner Hendricks, motion passed.

At Track 2 on CD 306B, Commissioner Brown made a motion to Dismiss Civil Action No. 13-C-180. He spoke saying "I want to say, I along with the citizens of Boone County recognize that we have a drug problem, jail bills are rising, people are dying, crime is increasing and people are wasting their lives on drugs. I became concerned when two of our pharmacies were targeted. I argued that these pharmacies were operating properly and I knew that their job was to disburse medications as prescribed by doctors, and I want it to note as by doctors. The Sheriff, DEA, and Prosecutor influenced me that they were not abiding by ethical standards, I agreed, but I knew better. After reading the complaint, I questioned by decision because I knew these were not pill mills. After talking with Dr. Stollings, who said that the pharmacies duty was to disburse medication. He told me that Senate Bill 437 addresses the problem by making his records available to the Bureau of Health. He also told me that the high number of hydrocodone that were being prescribed were a substitute for drugs that cause liver and kidney damage. I felt it was unfair to the pharmacies to accuse them of improprieties because of their high volume of prescriptions and hearsay of allegations. I conclude that the Pharmacies are not the Doctor, the Pharmacies are not your Sheriff, their main job of the pharmacist is to disburse medication. Since I feel that I was influenced and given advice contrary to my belief, I move to Dismiss Civil Action No. 13-C-180, and I need a second, seconded by Commissioner Hendricks. Is there any discussion?" Commissioner Halstead spoke saying, "yes and I would like to know and you pretty well described why in your statement that you just read, I think that pretty well describes to the citizens of Boone County what Commissioner Brown thinks". Commissioner Brown spoke "Commissioner Brown thinks that we do have a drug problem and Commissioner Brown doesn't believe that you go out and get innocent people and drag them through the court system to get information, I just don't believe in that. I believe as well as anybody else we have done as much as we can on taking drugs but this is not the right way to do it. Any other discussion? Alright, call for questions. All those in favor signify by saying "I", Commissioner Brown and Commissioner Hendricks "I", all those who oppose, Commissioner Halstead, the "I's" have it. The Commission votes 2-1 to dismiss the Civil Action No. 13-C-180."

At Track 6 on CD 306B, The Solid Waste Authority Board Meeting was held.



3

At Track 18 on CD 306B, The Boone County Commission was back in Regular Session.

At Track 18 on CD 306B, Commissioner Halstead made a motion to approve to pay the Bills as presented, seconded by Commissioner Hendricks, motion passed.

At Track 18 on CD 306B, Commissioner Hendricks made a motion to approve the Purchase Orders as prepared and presented, seconded by Commissioner Halstead, motion passed.

At Track 19 on CD 306B, Commissioner Halstead made a motion to change the Meeting Date of the Boone County Commission from October 15, 2013, at 10:00 a.m., to October 16, 2013, at 10:00 a.m., seconded by Commissioner Hendricks, motion passed.

At Track 19 on CD 306B, Commissioner Halstead made a motion to Adjourn the Meeting until Tuesday, September 24, 2013 at 5:00 p.m., seconded by Commissioner Hendricks, motion passed.

I hereby certify the above to be a true and correct summary of the Boone County Commission's REGULAR SESSION held on September 17, 2013 at 10:00 A.M.


Lee Ann Dale

Accepted and Approved this 17th day of September, 2013.


Mickey Brown, President


Atholl Halstead, Commissioner


Eddie Hendricks, Commissioner

# EXHIBIT 29

**NewsRoom**

9/16/13 Charleston Gazette & Daily Mail (WV) 1A
2013 WLNR 23130209

Charleston Gazette (WV)
Copyright © 2013 Charleston Newspapers

September 16, 2013

Boone reconsiders 'pill mill' lawsuit

Eric Eyre

Staff writer

MADISON - Less than two weeks ago, the Boone County Commission filed a lawsuit against six pharmacies, alleging they helped fuel the county's problem with prescription drug abuse.

But commissioners are now having second thoughts. On Tuesday, they're scheduled to vote whether to withdraw the lawsuit, which names pharmacies in Madison, Uneeda, Alum Creek and Kanawha City.

"I know some of those pharmacists personally," said Richard Stevens, executive director of the West Virginia Pharmacists Association. "To my knowledge, they're all respectable professionals. They're not pill pushers."

The Boone County lawsuit - filed for the commission by Charleston lawyers Rudy DiTrapano and Jim Cagle - allege the "pill mill" pharmacies turned a blind eye to the prescription drug problem and knew many of the pills they distributed weren't being used for medical purposes.

"The pharmacies acted out of greed due to the profits achieved from their acts and omissions," according to the lawsuit.

The complaint says the Boone County sheriff and prosecuting attorney's office spend most of their budget on crimes related to the county's prescription drug "epidemic."

"Obviously, we have a huge problem with [prescription] drugs from Kanawha County on down," said Boone Prosecuting Attorney Keith Randolph. "We're overwhelmed by drug cases. Any time you can look at ways to address the flow of the problem and in other ways is a good thing."

Boone County commissioners voted unanimously to authorize the lawsuit in August 2012. Cagle and DiTrapano filed the lawsuit in Boone County Circuit Court on Sept. 3.

But late last week, Boone County commissioners scheduled a meeting at 11:25 a.m. Tuesday to "dismiss" the lawsuit, according to a tentative agenda.

"It's a strange turn of events," Randolph said.

Boone County commissioners could not be reached for comment Friday.

The pharmacies named in the lawsuit are: Larry's Drive-in Pharmacy in Madison; Medicine Stop in Uneeda; Meds 2 Go, Meds to Go Express and Alum Creek Pharmacy, all in Alum Creek; and Trivillian's Pharmacy in Kanawha City.

State law strictly prohibits pharmacies from distributing pills without a doctor's prescription.

"These controlled substances dispensed are given at the direction of licensed prescribers," Stevens said.

The Boone County lawsuit alleges that prescription drug abuse costs the county millions of dollars a year and "destroys the very quality of life in the community."

The problems forces the county commission to spend "hundreds of thousands of dollars" in regional jail fees to house inmates who commit crimes related to prescription painkillers, according to the complaint.

The lawsuit also says the pharmacies failed to design a system to flag suspicious pain-pill orders, and didn't alert authorities about customers who picked up excessive quantities of prescription painkillers.

"Defendants knew or should have known they were profiting from an abnormally dangerous, ultra-hazardous, and inherently dangerous activity," the suit alleges.

Boone County commissioners aren't the first group of elected officials to reconsider a lawsuit against "pain pill" pharmacies in West Virginia.

In late August, the McDowell County Commission voted unanimously to authorize Cagle and DiTrapano to sue pharmacies in that county. McDowell commissioners voted unanimously last week to withdraw the lawsuit.

Cagle and DiTrapano also are representing the state Attorney General's office in lawsuits against 14 out-of-state drug firms that distribute pain pills to pharmacies in Southern West Virginia.

Former Attorney General Darrell McGraw's office filed the lawsuit in June 2012.

Attorney General Patrick Morrisey, a Republican who defeated McGraw in the November election, has said he recused himself from one of the lawsuits - against Cardinal Health. Morrisey's wife, Denise Henry, has lobbied in Washington, D.C. for Cardinal Health for more than a decade.

Reach Eric Eyre

at ericeyre@wvgazette.com or 304-348-4869.


---- Index References ----

Company: CARDINAL HEALTH INC

News Subject: (Government Litigation (1GO18); Legal (1LE33))

Industry: (Pharmaceuticals & Biotechnology (1PH13); Pharmaceuticals Cost-Benefits (1PH30); Pharmacy (1PH23); Healthcare Services (1HE13); Pharmaceuticals (1PH33); Drugstores (1DR73); Online Pharmacy (1ON55); Healthcare (1HE06))

Boone reconsiders 'pill mill' lawsuit, 2013 WLNR 23130209

Region: (U.S. Mid-Atlantic Region (1MI18); West Virginia (1WE81); North America (1NO39); U.S. Southeast Region (1SO88); USA (1US73); Americas (1AM92); District of Columbia (1DI60))

Language: EN

Other Indexing: (Richard Stevens; Jim Cagle; Denise Henry; Patrick Morrisey; Rudy DiTrapano; Keith Randolph; Darrell McGraw)

Keywords: (News)

Word Count: 604

---

**End of Document**                                   © 2017 Thomson Reuters. No claim to original U.S. Government Works.



# EXHIBIT 30

**NewsRoom**

9/18/13 Charleston Gazette & Daily Mail (WV) 1A
2013 WLNR 23344260

Charleston Gazette (WV)
Copyright © 2013 Charleston Newspapers

September 18, 2013

BOONE COUNTY Officials drop 'pill mill' suit

Eric Eyre

Staff writer

MADISON - In a split vote Tuesday, the Boone County Commission dropped a lawsuit intended to reduce prescription drug abuse by targeting "pill mill" pharmacies in Southern West Virginia.

Two weeks ago, commissioners voted unanimously to file the lawsuit against six pharmacies.

But commissioners said Tuesday they changed their minds after speaking with state Sen. Ron Stollings, D-Boone, about Gov. Earl Ray Tomblin's 2012 substance abuse bill, which tightened restrictions on prescription pills.

"I just think it was done wrong," said Boone County Commissioner Eddie Hendricks, who voted to withdraw the lawsuit. "There wasn't a great deal of evidence [against the pharmacies]."

Commission President Mickey Brown said federal, state and county investigators improperly influenced him to authorize to the lawsuit against the pharmacies - two of which are located in Boone County. Brown said he voted earlier this month based on "hearsay evidence."

"I questioned my decision," Brown said. "I know these are not pill mills."

The lawsuit named six pharmacies: Larry Drive-In Pharmacy in Madison; Medicine Stop in Uneeda; Meds 2 Go, Meds to Go Express and Alum Creek Pharmacy, all in Alum Creek; and Trivillian's Pharmacy in Kanawha City.

Brown said talks with Stollings, a Madison doctor, convinced him the commission was going about the prescription drug problem the wrong way.

Brown and Hendricks said Boone County pharmacies have a high volume of pain pill prescriptions because many coal miners and heavy equipment operators get injured and require medications to alleviate pain.

Doctors also prescribe prescription painkillers to Boone County's many elderly residents because over-the-counter medications can cause liver damage, Brown said.

Pharmacists are just doing their jobs, he said.

"They're not doctors," Brown said. They're not law enforcement officers. They're there to fill prescriptions."

Matt Hatfield, a Boone County lawyer who represents two of the pharmacies, Larry's Drive-In and Medicine Stop, said the state Board of Pharmacy already tracks unscrupulous drug stores.

Hatfield praised the commission's 3-2 vote to dismiss the lawsuit.

"We are pleased. We are relieved. We believe [the commission] did the right thing," said Hatfield, who was accompanied by pharmacy employees at Tuesday's commission meeting in Madison. "They want to move on."

Boone County Commissioner Al Halstead, who voted against dropping the lawsuit, said something must be done to combat prescription drug abuse in the county. Boone County has the third highest death rate for drug abuse overdoses in West Virginia during the past decade.

Halstead said the lawsuit offered a new and innovative way to tackle the county's problem with prescription painkillers.

"I felt it was the proper thing to do," he said after Tuesday's vote. "We need help. Our people need help."

Charleston lawyer James Cagle, who filed the lawsuit earlier this month, said he was disappointed by the commission's about-face. Cagle said county prosecutors, drug enforcement agents and private investigators helped identify the pharmacies named in the lawsuit.

The lawsuit alleged the "pill mill" pharmacies turned a blind eye to the prescription drug problem and knew many of the pills they distributed weren't being used for medical purposes.

"We had a fact-based complaint," Cagle said.

Boone County commissioners are the second group of elected officials to drop a lawsuit against pharmacies in West Virginia this year.

In August, the McDowell County Commission voted unanimously to authorize Cagle to sue pharmacies in that county. Last week, McDowell commissioners voted unanimously to withdraw the lawsuit.

Tomblin's 2012 substance abuse bill required pain management clinics to secure licenses with the state. The bill also upgraded the state's controlled substances database so that it flags suspicious prescriptions and purchases of pain pills.

Reach Eric Eyre at ericeyre@wvgazette.com or 304-348-4869.


---- Index References ----

Company: WALGREEN CO

News Subject: (Drug Addiction (1DR84); Health & Family (1HE30))

Industry: (Healthcare Services (1HE13); Online Pharmacy (1ON55); Pharmaceuticals & Biotechnology (1PH13); Drugstores (1DR73); Pharmaceuticals Cost-Benefits (1PH30); Pharmaceuticals (1PH33); Pharmacy (1PH23); Healthcare (1HE06))

BOONE COUNTY Officials drop 'pill mill' suit, 2013 WLNR 23344260

Region: (Americas (1AM92); West Virginia (1WE81); North America (1NO39); USA (1US73); U.S. Southeast Region (1SO88))

Language: EN

Other Indexing: (Al Halstead; James Cagle; Eddie Hendricks; Earl Ray Tomblin; Matt Hatfield; Mickey Brown; Ron Stollings)

Keywords: (News)

Word Count: 607

---

**End of Document** <span style="float:right">© 2017 Thomson Reuters. No claim to original U.S. Government Works.</span>



---