## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**THE CITY OF HUNTINGTON,**
    **Plaintiff,**

**v.**                             **CIVIL ACTION NO. 3:17-01362**

**AMERISOURCEBERGEN DRUG**
**CORPORATION, et al.,**
    **Defendants.**

_____

**CABELL COUNTY COMMISSION,**
    **Plaintiff,**

**v.**                             **CIVIL ACTION NO. 3:17-01665**

**AMERISOURCEBERGEN DRUG**
**CORPORATION, et al.,**
    **Defendants.**

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS OR FOR SUMMARY JUDGMENT BASED ON *RES JUDICATA* AND RELEASE

## INTRODUCTION

The issue of whether *res judicata* bars the claims by the City of Huntington and Cabell County Commission ("Plaintiffs") has been pending since June 13, 2017 when Cardinal Health, Inc. ("Cardinal") first filed a motion seeking summary judgment on that basis.[1]  It is time to remove this obstacle to resolution of this case once and for all. The separate settlements between the West Virginia Attorney

_____

[1] Cabell Doc. 65.

General ("WVAG") and Cardinal, AmerisourceBergen Drug Company ("ABDC"), and

McKesson Corporation ("McKesson") (collectively "Defendants") do not bar Plaintiffs'

claims because:

- Defendants cannot establish that the Plaintiffs and the WVAG were in privity with each other because Plaintiffs, who are entities separate from the State, bring public nuisance claims that the State and the WVAG do not have the power to bring.

- Neither the State nor the WVAG has *parens patriae* power to bring Plaintiffs' claims as the Legislature has not expressly given *parens patriae* authority to abate the public nuisance at issue here and has impliedly supplanted whatever common law authority might otherwise exist.

- The doctrine of virtual representation is inapplicable here because the Plaintiffs neither actively participated in and exercised control over the conduct of the prior litigation, impliedly consented to abide by the prior judgment, nor engaged in deliberate maneuvering or manipulation in an effort to avoid the preclusive effects of a prior judgment.

- The Plaintiffs' claims for abatement of a public nuisance by a City and a County are not the same claims as the damages claims previously raised by the State and the WVAG.

- Plaintiffs' claims were not released by the WVAG because the plain language of the releases, as confirmed by negotiating history, release only the claims of the State and the WVAG, the only claims the State and the WVAG had the power to bring or release.

Notably, Defendants each disregard the fact that Cardinal raised the bars of

*res judicata* and release in state court and lost. More importantly, they conveniently

leave out the fact that the adverse state court decision was challenged in the Supreme

Court of Appeals of West Virginia where the request for a writ of prohibition was

unanimously denied.  This Court should follow the lead of the state court and deny Defendants' Motions.[2]

## FACTUAL BACKGROUND

Beginning in 2012, the WVAG brought separate civil actions against the Defendants in the Circuit Court of Boone County.  While each of these actions included, *inter alia,* a claim for public nuisance,[3] the complaints did not seek abatement as a remedy, and instead, only sought damages.[4]  Nor did the WVAG develop an abatement claim, either in discovery or as part of settlement negotiations.

In the State's cases, the WVAG sought the State's damages, and did not attempt to determine or quantify what damages the Plaintiffs herein suffered.[5] Indeed, a review of the claims brought in the WVAG's complaints confirms that the State was litigating its case and not the claims of cities and counties. For example, the WVAG's complaint against Cardinal seeks to recoup the costs to the "State of West Virginia."[6] In its complaints, the WVAG consistently refers to damages sustained by "the State" or "the State of West Virginia and its agencies."[7]

---

[2] Docs. 216, 222, & 226.

[3] Doc. 216-3 at p. 20-21; Doc. 222-2 at p. 51-52; Doc. 226-1 at p. 56-57.

[4] While the complaints mention abatement in the course of stating that damages will continue unless the nuisance is abated, *see, e.g.* Doc. 216-3 at ¶¶ 417-18, the WVAG's complaints make no request for abatement.  Doc. 216-3 at p. 27; Doc. 222-2 at p. 60; Doc. 226-1 at p. 62.

[5] *See, e.g.,* MDL Doc. 728-2 at p.5 (WVAG FOIA response).

[6] Doc. 216-3 at ¶ 1.

[7] *See, e.g., id.* at ¶¶ 2, 6, 29-31, 37, 45, 56, 62, 71 (emphasis added) (Cardinal);  *see also* Doc. 226-1 at ¶¶  2, 6, 7, 15.a.-15.k, 24, 25, 32, 40, 41, 53, 65, 66, 68 (ABDC); and Doc. 222-2 at ¶¶ 20, 27, 32, 33, 34, 35, 388, 407, 408, 409 (McKesson).

With respect to parties, the WVAG's complaints named three parties: the State of West Virginia ex. rel. Patrick Morrisey; Joseph Thornton, in his official capacity as Secretary of the Department of Military Affairs and Public Safety; and Karen Bowling, in her official capacity as Secretary of the Department of Health and Human Services.[8]   No West Virginia county or city is named as a plaintiff; nor do the complaints allege that any of the plaintiffs in the WVAG's cases are acting on behalf of any county or city.

In late 2016, the WVAG, Cardinal, ABDC, and other Distributor Defendants successfully negotiated a settlement of the WVAG's case against them. On December 27, 2016, the court ordered the parties to finalize and publicly disclose the terms of the settlement.[9] On January 9, 2017, the Court entered dismissal orders in each case, and separate settlement agreements and releases for Cardinal and ABDC were filed the next day in the respective cases.[10]

While Cardinal, ABDC, and the WVAG were drafting the settlement documents, West Virginia counties and cities were investigating potential claims against the Defendants. On December 23, 2016, McDowell County, West Virginia filed the first local government suit against Defendants and others in circuit court.[11]

---

[8] *See, e.g.,* Doc. 216-3 at p. 1.

[9] *State ex rel. Morrisey v. Cardinal Health,* Doc. No. 12-C-140, Docket Sheet at line 243 (Boone Co., W.Va. 2012) (Exhibit A); *State ex rel. Morrisey v. ABDC,* Doc. No. 12-C-141, Docket Sheet at line 1388 (Boone Co., W.Va. 2012) (Exhibit B).

[10] *Id.* at line 244, 245.

[11] *McDowell County v. McKesson, et al.,* No. 16-C-137 (McDowell Co., W.Va. 2016). Defendants removed the case and it was transferred to the MDL where it remains pending. *See* MDL Doc. No. 1:17-op-45066-DAP.

4

Faced with both McDowell County's claims, and the prospect of new lawsuits due to the Boone County Circuit Court's order releasing ARCOS data obtained by the WVAG, Cardinal and ABDC attempted to obtain a release from the WVAG of the claims of West Virginia cities and counties.[12] They were not successful.

Cardinal and ABDC sought a number of provisions in the release expanding the scope of claims and persons released.[13] Defendants' proposed language was largely rejected, and Defendants proceeded to settlement without securing the release of the claims of West Virginia's cities, counties and citizens.[14]

For example, with respect to the definition of "Releasor", Cardinal proposed the inclusion of "subdivisions, political subdivisions (as that term is defined Chapters 5 and 29 of the West Virginia Code)" into the definition.[15] That proposal was rejected, and the Release as finally executed contains the following limited definition of the "Releasor":

> the State, through its Attorney General, on its own behalf and on behalf of its departments, agencies, divisions, boards, commissions, and instrumentalities of any kind, and any person, in their official capacity elected or appointed to serve the State, its attorneys, and/or by any

---

[12] Although the WVAG refused to respond to Cabell's FOIA request, *see* October 4, 2017 WVAG FOIA Response (Exhibit C), in the MDL, Cardinal produced to Cabell County a single email providing some documentation of the unsuccessful efforts by Cardinal and ABDC to obtain a release of city and county claims. *See* December 29, 2016 email and attachments from Cardinal attorney Tostado (Exhibit D).

[13] Exhibit E, Attach. 1 (Proposed Release).

[14] *Compare* Doc. 216-4 (Cardinal Final Settlement and Release (hereinafter "Release") with Proposed Release. Plaintiffs have created a redline comparing the Proposed Release with the Release as executed. *See* Exhibit E.

[15] Proposed Release at p.5, ¶ 1.

agency, person, or entity claiming by or through them or any of them ....[16]

With respect to the claims subject to the Release, Cardinal proposed inclusion of the sentence, "[t]he State accepts the Settlement Payment on its behalf and on behalf of the citizens of West Virginia through its *parens patriae* authority."[17]  This was rejected, and instead the claims to be released was limited to the claims of the State:

> any and all claims, demands, debts, damages, liabilities, civil penalties, restitution, disgorgement, reimbursement, fines, expenses, actions, and causes of action whatsoever, known and unknown, foreseen, unforeseen, or unforeseeable, which the State has asserted or could have asserted on its own behalf or in its *parens patriae* capacity **that the State** now has or may have in the future against the Released Entities or any of them growing out of, relating to, or concerning the Litigation ... subject to the conditions set forth herein ("Released Claims")... This is a full, final, and complete release of the Released Claims. . . **by the State**....[18]

Defendants also requested the following indemnity from the State:

> The State shall fully indemnify the Released Entities and hold them harmless from and against, and from attorney's fees and costs incurred in defending or arising from, all claims, demands, actions, and causes of action that may be asserted or initiated against any of the Released Entities relating to the events described in the Litigation and the controlled substances epidemic up to the Effective Date by (1) any "Political Subdivision" and/or "Municipality" in the State of West Virginia (as those terms are defined in the West Virginia Code, including Chapters 5 and/or 29) and/or by (2) any other party by reason of any claim, demand, action, or cause of action asserted or initiated by the State against said party.  This provision includes, without limitation, claims, demands, actions, or causes of action seeking to hold any of the Released Entities liable or to obtain contribution for any alleged liability for or relating to the events described in the Litigation, the controlled

---

[16] Release at p. 4.

[17] Proposed Release at p. 6.

[18] Release. at pp. 5-6 (emphasis added).

substances epidemic, or the damages or costs the State or any "Political Subdivision" and/or "Municipality" in the State claims it has incurred as a result of the controlled substances epidemic.[19]

This indemnity paragraph was rejected by the State in its entirety.[20] Finally, two proposed inclusions to the recitals in the Proposed Release were also rejected.[21]

ABDC's counsel was included in the email chain discussing the proposed modifications to the release.[22] None of the additions proposed by Cardinal and rejected by the WVAG were included in the ABDC release.[23] Indeed, the substantive language of the release in the ABDC case is identical to the Cardinal release.[24]

Notwithstanding the clear intent to preserve city and county claims, the Defendants have sought to use the WVAG settlements as a bar to the claims of Plaintiffs' (and others). The instant motions are the fourth attempt to do so. Cardinal first moved for summary judgment in this Court in the Cabell action.[25] That motion was stayed and never briefed before transfer of this case to the MDL. In the MDL,

---

[19] Proposed Release at p. 10, ¶ 7.

[20] Release at p. 9.

[21] Language expanding the Release's recital regarding the WVAG's power to bring suit so as to include not just recovery of damages allegedly suffered by the State but also to include damages suffered by "the citizens of West Virginia" was proposed. and rejected. Release at pp. 1-2 Recital C. Similarly, a recital noting, the "State has concluded that it is in the best interest of the State, its agencies, the residents of the State represented by them, and the communities in West Virginia to resolve all claims and avoid further litigation," Proposed Release at Recital H, was also rejected. Release at p. 2.

[22] Exhibit D.

[23] *See generally* Doc. 226-2 (ABDC Release).

[24] *Compare* Cardinal Release *with* ABDC Release.

[25] Cabell Doc. 65.

the Court designated Cabell County as a motion track case, and Cardinal filed the motion before Judge Polster.[26]

Cardinal also filed this same motion on April 24, 2018 in *Brooke County v. Purdue Pharma L.P.,* an action pending against the Defendants in state court.[27]  The Circuit Court of Marshall County denied the motion on December 28, 2018.[28]  On March 7, 2019, Cardinal sought a writ of prohibition from the Supreme Court of Appeals which was unanimously denied on June 4, 2019.[29]

Cabell County filed a notice of supplementary authority informing Judge Polster of the state court rulings on November 1, 2019.[30]  On November 20, 2019, without explanation, Cardinal withdrew the fully briefed motion.[31]

While the Defendants have not filed the instant motion in any of the cases pending before the Mass Litigation Panel ("MLP"), the MLP has determined that it will apply the prior Marshall County rulings (including the *res judicata* ruling) to any motions to dismiss filed by Defendants in all the cases pending before the MLP based

---

[26] Cabell Doc. 146.

[27] *Brooke County Commission v. Purdue Pharma L.P.,* No. 17-C-248 (Marshall Co., W.Va. Dec. 28, 2018) (Order Denying Cardinal's Motion to Dismiss) (Exhibit F).

[28] *Id.*

[29] *See State ex rel. Cardinal Health v. Hummel,* No. 19-0204 (W.Va. June 4, 2019) (Exhibit G).

[30] MDL Doc. 2893.

[31] Cabell Doc. 230.

on law of the case.[32]  The Defendants' writ challenging that ruling was denied on November 19, 2019.[33]

While the ABDC and Cardinal Releases were signed in January 2017, the McKesson settlement did not occur until May 1, 2019.  The City of Huntington case was filed on January 19, 2017 and Cabell County's case was filed on March 9, 2017. Thereafter, West Virginia cities and counties began to file complaints in state and federal court.  There are currently 116 pending opioid cases brought against the Defendants by West Virginia cities and counties.[34]  Of those, approximately 86 cases were already pending prior to May 1, 2019.  The McKesson settlement occurred following the filing of complaints against it by these and numerous other West Virginia cities and counties. The McKesson settlement occurred with Cardinal's *res judicata* motion pending in Cabell's case and after the authority of the WVAG to release local government claims had been rejected in Marshall County.  McKesson settled without insisting that any of the language requested by Cardinal and ABDC be included in the McKesson release.[35]

Plaintiffs had no contact with the WVAG regarding the claims Defendants now contend were released in the settlement, and their damages were not sought.  The equitable relief sought by the WVAG was not abatement; instead, it sought an

---

[32] *Monongalia County Commission v. Purdue Pharma L.P.,* No. 18-C-222 MSH, Trans. Id. 64374611 at p. 3 (W.Va. MLP October 31, 2019) (Exhibit H).

[33] *See* Exhibit I (MLP Listing of pending state and federal court cases).

[34] *See* Exhibit I.

[35] *Compare* Exhibit E, Attach 1 (Proposed Release) *with* Doc. 222-1 (McKesson Release).

injunction stopping Defendants from continuing to violate the West Virginia Controlled Substances Act ("WVCSA").[36]  Plaintiffs, on the other hand, clearly seek abatement as their only remedy against these Defendants.

## ARGUMENT

### I.  Plaintiff's Claims Are Not Barred By *Res Judicata*.

*Res judicata* "generally applies when there is a final judgment on the merits which precludes the parties or their privies from relitigating the issues that were decided or the issues that could have been decided in the earlier action."[37] The application of *res judicata* is dependent on the "distinctive characteristics of a particular case,"[38] and the party seeking to invoke the bar must show that "the two actions … have (1) substantially the same parties who sue and defend in each case in the same respective character [and] (2) the same cause of action."[39] Here, neither of these elements is met, and the defense of *res judicata* fails.[40]

### A.  No Privity Exists Between Plaintiffs and the State with Respect to Plaintiffs' Claims.

When, as here, the parties are not the same, the defense of *res judicata* requires a showing of privity.[41] West Virginia law recognizes that "[p]rivity, in a legal sense, ordinarily denotes 'mutual or successive relationship to the same rights of

---

[36] Doc. 216-3 at p. 26; Doc. 222-2 at p. 58-59; Doc. 226-1 at pp. 61-62.

[37] *Beahm v. 7 Eleven, Inc.*, 672 S.E.2d 598, 601 (W. Va. 2008) (per curium) (quotation omitted).

[38] *Id.* at 605.

[39] *Id.* at 602.

[40] Plaintiffs do not contest the finality requirement as it applies to the WVAG settlements.

[41] *Beahm*, 672 S.E.2d at 605.

property."[42] The "key consideration for [privity's] existence is the sharing of the same legal right by parties allegedly in privity, so as to ensure that the interests of the party against whom preclusion is asserted have been adequately represented."[43] This requisite relationship is wholly absent here.

### 1. West Virginia cities and county commissions are separate from the State with independent powers and duties.

Neither the City of Huntington nor the Cabell County Commission are an arm of the state or an entity of the government of the State of West Virginia.[44]

The West Virginia Constitution establishes counties as separate units of government and grants explicit powers to county commissions over the "superintendence and administration of the internal police and fiscal affairs of their counties."[45] It further grants the Legislature plenary power to assign county commissions powers and duties.[46] Chapter seven of the Code sets forth the specific powers, duties, and obligations of County Commissions and their officers,

---

[42] *Id*. (quoting *West Virginia Human Rights Comm'n v. Esquire Group, Inc.*, 618 S.E.2d 463, 469 (W. Va. 2005)).

[43] *Beahm, supra*, at 605.

[44] *See* W. Va. Code § 29-12A-3(e) ("'State means the state of West Virginia, including, but not limited to, the Legislature, the supreme court of appeals, the offices of all elected state officers, and all departments, boards, offices, commissions, agencies, colleges, and universities, institutions, and other instrumentalities of the state of West Virginia. 'State' does not include political subdivisions."). *See* W. Va. Code § 14-2-3 ("'state agency' shall not be considered to include county commissions, county boards of education, municipalities, or any other political or local subdivision of the state regardless of any state aid that might be provided."); *Pniewski v. Martorella*, Civil Action No. 3:04-0354, (S.D. W. Va. August 25, 2008) 2008 WL 4057523, *2 ("[T]here is no authority for characterizing the county commission as an 'arm of the State.'"); *see also Brooke County, supra*, p. 3, ¶ 10.

[45] W. Va. Const., art. IX, sec. 11.

[46] *Id*.

implementing the Constitution's grant of police and fiscal powers.[47]  Relevant to the instant motion, W. Va. Code § 7-1-3kk is explicit in its grant of authority: the County is authorized to "enact ordinances, issue orders and take other appropriate and necessary actions for the elimination of hazards to public health and safety and to abate or cause to be abated anything which the commission determines to be a public nuisance." In addition, West Virginia counties "have authority to employ such legal counsel as [they] may deem necessary for the purpose of advising such county commission on matters of a civil nature and to conduct any litigation of a civil nature to which the county is a party."

Similarly, the West Virginia Constitution authorizes the creation by the Legislature of home rule for municipalities under which the electors of cities (like the City of Huntington) "shall have power and authority to frame, adopt and amend the charter of such corporation, or to amend an existing charter thereof, and through its legally constituted authority, may pass all laws and ordinances relating to its municipal affairs."[48]  Pursuant to this constitutional authority, Huntington was chartered as a home rule city.  As such, the Legislature granted it the express power "to provide for the elimination of hazards to public health and safety and to abate or cause to be abated anything which in the opinion of a majority of the governing body

---

[47] *See, e.g., id.* at art. 5 (fiscal affairs); *id.* at art. 8 (jail); *id.* at art. 14 (Deputy Sheriffs); *id.* at art. 15 (ambulance services).

[48] W.Va. Const. art. 6, sec. 39a.

is a public nuisance."[49]  Similarly, all cities have the power to hire counsel,[50] and to "institute, maintain and defend any civil action or other proceeding in any court."[51]

The Plaintiffs' claims in this action are clearly within these express grants of authority.

### 2. The WVAG and the State lack the power to represent cities and counties.

The Defendants cite no constitutional or statutory authority authorizing the WVAG to litigate claims on behalf of cities and counties. West Virginia law generally authorizes the WVAG to represent the State and State entities.[52] Neither the Constitution nor any statute provides the WVAG with the legal authority to bring suit on behalf of cities and counties.  Nor does the WVAG have any common-law authority with respect to representation of local governments. The WVAG's office has expressly disclaimed any intent to represent the interests of its political subdivisions in opioids litigation.[53]

---

[49] W. Va. Code § 8-12-5(23).

[50] W.Va. Code § 8-10-1a.

[51] W. Va. Code § 8-12-1(3).

[52] *See, e.g.,* W. Va. Code § 5-3-2 (WVAG's power to prosecute suits limited to supporting "official duties of any **state** officer, board or commission" (emphasis added)); W. Va. Code § 5-3-1 (same listing state officers and entities).

[53] *See* Doc. 2893-3 at p.19 (MLP Transcript of August 22, 2019 (Deputy AG Sizemore stating: "The Attorney General has never claimed to be representing political subdivisions. Legally, the Attorney General does not represent political subdivisions. They are their own legal entity.").

13

The WVAG possesses inherent common law powers, which exist unless or until the scope of those powers are restricted by the Legislature.[54] The Supreme Court of Appeals of West Virginia has, however, found implicit legislative preemption of the WVAG's common law powers based on the Legislature's grant of particular powers to local governments.[55] Here the relevant constitutional and statutory provisions noted above grant the Plaintiff county and city broad authority to address the public health, safety, and fiscal consequences of the opioid epidemic in their communities, removing any common law authority from the WVAG over the Plaintiffs' claims. Faced with the identical argument in *Brooke County,* Judge Hummel found "neither the Constitution, nor any statute, nor the common law provides the WVAG with the legal authority to bring suit on behalf of [local government] Plaintiffs."[56]

### a. The Plaintiffs retain the power to abate nuisances.

The relative powers are particularly clear in the context of the Plaintiffs' nuisance claim. As noted above, Plaintiffs have the express power to declare a

---

[54] *State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 744 S.E.2d 625, 645 (W. Va. 2013); *State ex rel. Morrisey v. West Virginia Office of Disciplinary Counsel*, 764 S.E.2d 769, 784 (W. Va. 2014).

[55] *See, e.g.*, *Morrisey*, 764 S.E.2d at 791 (noting the express constitutional and statutory power granted to counties to prosecute criminal cases, the court, applying *expressio unius est exclusio alterius,* found WVAG's broad common law power to prosecute had been implicitly abolished by Legislature's grant of limited prosecutorial powers); *cf. State ex rel. Riffle v. Ranson*, 464 S.E.2d 763, 770 (W. Va. 1995) (the conclusion that the Legislature intended to exclude and abolish all other common law powers to change venue when it adopted statute providing for change of venue in limited cases compelled by both *expressio unius est exclusio alterius* along with reason and common sense).

[56] *Brooke County, supra* at p.4, ¶ 13.

nuisance and take action to remedy it.[57] By contrast, the Legislature has not enacted a statute granting the State general authority to abate nuisances; instead the code only authorizes specific State agencies the power to abate nuisances in specific contexts.[58] Notably, in the Boone County cases the State acted through the West Virginia Department of Military Affairs and Public Safety and West Virginia Department of Health and Human Resources, neither of which has statutory authority to bring actions to abate nuisances caused by prescription drugs.[59]

Under both the doctrine of *expressio unius est exclusio alterius* and the holdings in *Morrisey* and *Ranson,* neither the State nor the WVAG had the power to bring (let alone release) the Plaintiffs' public nuisance claims arising out of the unlawful

---

[57] W. Va. Code § 7-1-3kk; W. Va. Code § 8-12-5(23).

[58] *See* W. Va. Code § 17-16-1 (State highway department or county commission empowered to seek abatement of nuisances from roadway obstructions); W. Va. Code § 17-19-1 (State highway department can abate nuisances caused by illegal signs on roadway right-of-way); W. Va. Code § 17-22-22 (State highway commissioner or county prosecuting attorney may apply for an injunction to abate nuisance from illegal billboard); W. Va. Code § 17-23-9 (State highway commissioner or county prosecuting attorney may seek abatement of illegal salvage yards as a nuisance); W. Va. Code § 17C-3-8 (State highway commissioner or other authority having jurisdiction over highway may seek abatement of unauthorized traffic-control device as a nuisance); W. Va. Code § 22-13-12 (State may apply to court to abate nuisances in violation of Streams Preservation Act); W. Va. Code § 30-7-14 (State board of nursing may seek injunction to stop nuisance of unlicensed practice of nursing); W. Va. Code § 30-7C-13 (State board of nursing may seek injunction to stop nuisance of unlicensed practice by dialysis technician); W. Va. Code § 61-3-47 (State division of natural resources and others can bring suit to abate nuisance in form of obstruction of waterways).

[59] While W. Va. Code § 16-3-6 does empower state director of health to seek an injunction against nuisances impacting public health, the authority granted by that provision is limited to injunctions and does not provide authority to seek abatement.  The section also is limited to nuisances from infectious diseases, the sole subject of Article 3.  ABDC concedes that this provision is inapplicable to this case, Doc. 227 at p. 7, n.5, and neither Cardinal nor McKesson argue otherwise.

distribution of controlled substances in their communities.[60]   This is fatal to the Defendants' showing of privity.

### b. The State does not have **parens patriae** *power to bring the Plaintiffs' claims.*

Defendants argue that the doctrine of *parens patriae* supports finding privity. Notably, Defendants cite no West Virginia case even mentioning *parens patriae* let alone establishing the existence of the *parens patriae* authority of the State to bring public nuisance claims on behalf of cities and counties.[61]

Moreover, where the claims of two overlapping governmental entities are involved, privity does not exist. In *City of New York v. Beretta*, the court refused to find that "a prior case brought by New York State in its *parens patriae* capacity will bar the City of New York or other sub-state entities from subsequently bringing suit on the same cause of action."[62] The *Beretta* Court noted that *res judicata* analysis differed when the claims involved a subsequent suit by a sub-state governmental body, not a private citizen:

> The City is not precluded under the doctrine of *res judicata*, however, simply because its residents, if suing as private plaintiffs, might be barred from bringing suit. The City's interest cannot be characterized as coterminous with that of its inhabitants; it has a municipal interest that

---

[60] *Brooke County, supra* at p. 5, ¶ 15 ("Thus, the Court finds and concludes that the WVAG did not have the power to bring, let alone release, Plaintiffs' nuisance claim.").

[61] Defendants' reliance on *Discover v. Nibert, supra*, is misplaced. Its holding relates only to the common law power of the WVAG to hire outside counsel. 744 S.E.2d 625 (W. Va. 2013).

[62] 315 F.Supp.2d 256, 266 (E.D. NY 2004). *See also id.* at 274 (refusing to find privity for *res judicata* purposes, finding "nothing in the law to suggest that the Attorney General has the authority to represent the City's legal interests or that the exclusive grant of authority to the Corporation Counsel in the City's Charter is subject to exceptions").

is separate and distinct from, and not duplicate of, the interests of individual New Yorkers.[63]

The opioid crisis in Huntington and Cabell County involves a local concern analogous to gun crime in New York City.[64] And the Legislature  has given cities and counties the express power to abate a nuisance.[65]  Given the lack of authority for the WVAG to represent the City and County, not to mention the WVAG's express disavowal that it represented political subdivisions in its prior opioids litigation, the same result should apply here.[66] Finally, like in *Beretta,* barring the County from litigating its claims would interfere with the proper delineation of authority between the local governments and the WVAG, which would usurp the powers expressly delegated to local government Plaintiffs by both the Constitution and the Legislature.

Cases cited in support of Defendants' argument in which private citizens attempted to bring successive private enforcement actions after a State had privately sued in its capacity as *parens patriae* are distinguishable.[67] The Plaintiffs are not

---

[63] *Id.* (internal quotation omitted).

[64] *Cf. id.* at 274; *see also infra* p. 18 & n. 70 (noting Plaintiffs' separate interest in abating opioid epidemic).

[65] W. Va. Code § 7-1-3kk; W. Va. Code § 8-12-5(23).

[66] The Defendants emphasize that the release included *parens patriae* claims.  *See, e.g.,* Doc. 227 at p.3 (noting release included claims "that which the State has asserted or could have asserted on its own behalf or in its *parens patriae* capacity").  The presence of that language is not surprising as the State brought and settled consumer claims, Doc. 222-2 at pp. 40-45, and brought and later dismissed antitrust claims, Doc. 216-1 at pp. 21-22, the two claims for which *parens patriae* authority expressly exists. W.Va. Code § 46A-7-101 (Consumer Credit and Protection Act); W.Va. Code § 47-18-17 (Antitrust Act).

[67]  *See e.g. United States v. Olin Corp.*, 606 F. Supp. 1301 (N.D. Ala. 1985);  *E.P.A. v. City of Green Forest, Ark*, 921 F.2d 1394 (8th Cir. 1990); *St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Ref., L.L.C.*, 500 F. Supp. 2d 592, 604 (E.D. La. 2007); *Alaska Sport Fishing Ass'n v. Exxon Corp.*, 34 F.3d 769 (9th Cir. 1994).

private citizens of the State. Rather, each is an independent governmental entity created by and under the authority of the Constitution exercising powers expressly granted to them by the Legislature.

Finally, Defendants argue that it is necessary for Plaintiffs to show some interest in their own right apart from the interest of the state bringing the *parens patriae* claim.[68] While the express authority to bring nuisance actions noted above renders it unnecessary to determine whether this exception is applicable,[69] the Plaintiffs here have the primary responsibility to provide many of the government services impacted by the opioid epidemic if it is not abated.[70] That the State and the WVAG did not seek either these damages or the remedy of abatement (and declined to release the claims of cities and counties) is powerful evidence of a separate

---

[68] Doc. 220 at 10-11; Doc. 223 at 7. Two of the cases cited by Defendants, *South Carolina v. North Carolina*, 558 U.S. 256, 275 (2010) and *New Jersey v. New York*, 345 U.S. 369, 374 (1953) address privity in this context of intervention into an original jurisdiction action pending in the United States Supreme Court where different considerations exist. *New Jersey v. New York, supra* ("Our original jurisdiction should not be thus expanded to the dimensions of ordinary class actions."). Thus, even in the context of intervention, a trial court applies a lesser standard than the Supreme Court to determine privity. *Envtl. Def. Fund, Inc. v. Higginson,* 631 F.2d 738, 740 (D.C. Cir. 1979).

[69] *Cf. State v. City of Dover*, 153 N.H. 181, 190, 891 A.2d 524, 532 (2006) (finding statutory authority for *parens patriae* action by State and rejecting statutory basis for city's claim).

[70] Plaintiffs' interest in abating the opioid epidemic is distinct from the State's. Unlike the State, the Plaintiffs are tasked with managing the fallout from the epidemic. *See* Doc. 80 at ¶¶ 26, 29, 1173 (first responders), 1174 (criminal justice expenses), 1175 and 1187 (HPD drug raids and arrests), 1176 (regional jail expenses), 1178 (abandoned buildings, decreased tax revenue), 1180 (Huntington Fire Department), 1183 (environmental hazards related to used needles), 1191 (Cabell-Huntington Quick Response Team), 1192 (City of Huntington's self-care program for first responders); 1437 (expenses for police, emergency, health, prosecution, corrections, rehabilitation, and other services).

interest.[71]

### 3.   The doctrine of "virtual representation" does not apply.

Nor does the doctrine of virtual representation apply to this case. West Virginia has utilized the doctrine of "virtual representation," a "variety of privity" which "precludes relitigation of any issue that [has] once been adequately tried by a person sharing a substantial identity of interests with a nonparty."[72] The West Virginia Supreme Court in *Galanos v. National Steel Corp*, recognized that the doctrine of virtual representation applies only in cases in which a nonparty actively participated in and exercised control over the conduct of the prior litigation; where a nonparty impliedly consented to abide by a prior judgment; or if the nonparty's actions involved deliberate maneuvering or manipulation in an effort to avoid the preclusive effects of a prior judgment.[73] The "doctrine of virtual representation cannot be construed to imply privity to all who derive injury from a single wrongful act."[74]   Citing this

---

[71] *Cf. South Carolina v. North Carolina*, 558 U.S. at  275 (finding no evidence that state was not representing interests of city); *New Jersey v. New York*, 345 U.S. at 374 (same); *State v. City of Dover*, 153 N.H. at 190, 891 A.2d at 532 (same); *Higginson*, 631 F.2d at 740 (finding no evidence that state was not representing interests of water district).

[72] *Beahm*, 672 S.E.2d at 603 (quoting *Galanos v. National Steel Corp*, 358 S.E.2d 452, 454 (W. Va. 1987)).

[73] *Galanos*, 358 S.E.2d at 455 (case did not come within any of the recognized classes of virtual representation and found that the doctrine of collateral estoppel did not bar the actions even though they were represented by the same attorney and two plaintiffs had testified as witnesses in the prior litigation, where there was no showing of those plaintiffs' control over the prior litigation, consent to be bound, or deceit or tactical maneuvering).

[74] *Beahm*, 672 S.E.2d at 603 (applying virtual representation to the case after finding that the parties had sought to join the prior action, shared common counsel, had notice of the prior suit and would have had the same practical opportunity to control the course of the proceedings).

authority, Judge Hummel in *Brooke County* found that the WVAG settlement of opioid claims here met "none of these conditions" from *Galanos* and concluded that "as such, the doctrine of virtual representation does not apply to foreclose Plaintiffs' claims."[75]

Indeed, the virtual representation doctrine is itself a creature of equity, but equity clearly weighs against *res judicata* in this case. Here, the Defendants knew of the subsequent lawsuits and the likelihood of others. At the last minute, Cardinal and ABDC tried unsuccessfully to include city and county claims in the settlement and release with the State without any notice to the cities and counties. McKesson's conduct is even more extreme. McKesson settled its case with the WVAG while these Plaintiffs were litigating the very issue of *res judicata* and after watching Cardinal receive adverse rulings from a West Virginia trial court and the Supreme Court of Appeals of West Virginia interpreting functionally identical release language.

The State did not represent (virtually or otherwise) any county or municipality. After unsuccessfully attempting to obtain the State's agreement, Defendants now seek this Court's help to enforce a deal they could not make with the State. The Supreme Court has admonished courts not to rigidly enforce the doctrine of *res judicata* where, as here, to do so would plainly defeat the ends of justice.[76]

---

[75] *Brooke County, supra* at p. 5 ¶ 18.

[76] *Blake v. Charleston Area Medical Center, Inc.*, 498 S.E.2d 41, 50 (W.Va. 1997).

Nor is *Nash Cty. Bd. of Educ. v. Biltmore Co.*[77] persuasive here. In *Nash,* the court applied *res judicata* to bar a North Carolina school district from pursuing the same claims previously litigated by the North Carolina Attorney General. *Nash* is distinguishable from this case because the express authority of the Attorney General to sue as the representative of the school districts of the State was clear both in the common law and statutory law of North Carolina.[78] As set forth above, this is not the law in West Virginia.

Privity's key consideration, "ensur[ing] that the interests of the party against whom preclusion is asserted have been adequately represented,"[79] is absent here because neither the State nor the WVAG had any authority to bring the Plaintiffs' public nuisance claims seeking abatement, nor did they ever purport to act on behalf of the Plaintiffs here or other West Virginia counties or cities.

### B.    The Claims Are Not Based on the Same Causes of Action.

In order for *res judicata* to be applicable, "the cause of action identified for resolution in the subsequent proceeding either must be identical to the cause of action determined in the prior action or must be such that it could have been resolved, had it been presented, in the prior action."[80]

---

[77] 640 F.2d 484 (4th Cir. 1981).

[78] *Id.* at 494.

[79] *Beahm, supra*, at 605.

[80] *West Virginia Human Rights Com'n*, supra at 471 (quoting Syl. Pt. 4, *Blake, supra*, 498 S.E.2d 41).

The Attorney General's action sought to recover damages the State had incurred and would incur in the future addressing and combating the prescription drug abuse epidemic in West Virginia.[81]  For the reasons noted above, neither the State nor the Attorney General could seek abatement of the public nuisance alleged by Plaintiffs here.  Thus, it cannot be said that the claims were identical.

The damage claims sought by the State differ substantially from the abatement relief sought by the Plaintiffs here.  The "distinction between abatement of nuisances and recovery of damages for injuries occasioned by wrongful acts constituting nuisances" is both "apparent" and "vast."[82] The aim of an abatement action is to reduce or eliminate a nuisance prospectively as contrasted with an action for damages which seeks to compensate for prior harm.[83]

---

[81] *See* Doc 147-3 at ¶ 8.

[82] *McMechen v. Hitchman-Glendale Consol. Coal Co.*, 88 W. Va. 633, 107 S.E. 480, 482 (1921); *see Duff v. Morgantown Energy Assocs. (M.E.A.)*, 187 W. Va. 712, 717, 421 S.E.2d 253, 258 (1992) (internal quotations omitted) (upon establishing nuisance party entitled to "relief therefrom by the abatement of the nuisance *and* the defendants will be held liable for damages." (emphasis added)); *State ex rel. Ball v. Cummings,* 208 W. Va. 393, 402, 540 S.E.2d 917, 926 (1999) (severing claims after finding issues involved in action for monetary damages distinct from claim seeing abatement of pollution); *see also* Restatement (Second) of Torts § 821B, com. i (1979) ("There are numerous differences between an action for tort damages and an action for an injunction or abatement, and precedents for the two are by no means interchangeable."); Restatement (Third) of Torts: Liab. for Econ. Harm § 8, com. b (2019) ("An action by a public official will commonly lie to abate the nuisance by injunction but may not involve monetary recovery for harm done.").

[83] *See San Diego Unified Port Dist. v. Monsanto Co.*, No. 15cv578, 2018 U.S. Dist. LEXIS 149485, at *14 (S.D. Cal. Aug. 30, 2018) (recognizing "stark" distinction between abatement as equitable remedy for prospective relief and damages which compensate for "'prior accrued harm'"); *Town of Superior, Mont. v. Asarco, Inc.*, 874 F. Supp. 2d 937, 948–49 (D. Mont. 2004) (award of damages in nuisance case "is retroactive, applying to past conduct, while an injunction applies only to the future"); Restatement (Second) of Torts § 821B,  com. i (1979) ("On the other hand an award of damages is retroactive, applying to past conduct, while an injunction applies only to the future.").

While *res judicata* may apply to both claims brought and claims which could have been brought, (*West Virginia Human Rights Com'n*, *supra*), claims of a third party (i.e. a party other than the party appearing *parens patriae*) are not the same claims for purposes of *res judicata*. Where the state lacks *parens patriae* authority to proceed on a claim, any settlement it enters cannot bar a suit by others with the authority to bring the claim.[84]

Finally, the Defendants' argument that the Plaintiffs could have joined in the State's suit itself establishes that *res judicata* is inappropriate here. Joinder under Rule 20 is explicitly permissive, not mandatory. W.Va.R.Civ.Pro. 20. Indeed, if the Defendants believed that the cities and counties were necessary parties, it was incumbent on them to seek to have the Plaintiffs joined as a necessary party. *See* W.Va.R.Civ.Pro. 19.

Because the WVAG and the State were neither in privity with the County and City nor bringing the same claims as are being pursued here, *res judicata* cannot act as a bar to the Plaintiffs' claims.

## II.  Plaintiff's Claims Were Not Released.

The fact that the State resolved its claims against Defendants and released claims "which the State has asserted or could have asserted on its own behalf or in its *parens patriae* capacity," does not relieve Defendants from their liabilities to

---

[84] *Satsky v. Paramount Communications, Inc.,* 7 F.3d 1464 (10th Cir. 1993) (holding that private landowners could pursue private property claims against a defendant despite a consent decree in an earlier lawsuit between Colorado and the same defendant because the state could not have recovered as *parens patriae* for injuries to the plaintiffs' private interests).

Plaintiffs. The releases cannot be stretched to cover Plaintiffs' claims. Moreover, because neither the State nor WVAG had the authority to enter into a release of the Plaintiffs' claims, the Release cannot be a valid release of the Plaintiffs' claims even if it can be interpreted as covering the claims of the Plaintiffs here.

First, the releases do not apply to Plaintiffs' claims. The State executed releases with Defendants on behalf of "each and every" State agency, department and instrumentality, including "any agency, person, or other entity claiming by or through them or any of them." The Plaintiffs are neither a State agency nor an instrumentality of the State.[85] Nor are the Plaintiffs "claiming by or through" the State. Contrary to the Defendants' assertions, the Plaintiffs are not suing to enforce the WVCSA and are not acting through the Board of Pharmacy or any other State agency. In essence, Defendants argument would lead to the conclusion that by relying on state law, Plaintiffs subjected themselves to the involuntarily settlement of their claims by the State. The Defendants cite no law for this novel proposition. The Plaintiffs claims were not ones "growing out of, relating to, or concerning" the State's lawsuit by "any . . . entity claiming by or through" any State agency. Plaintiffs' claim against Defendants is brought pursuant to explicit statutory authorization. Thus, the express terms of the Release do not bar the County's claims.

---

[85] *Supra* at § I(A)(1); *Amoroso v. Marion Cty. Comm'n,* 305 S.E.2d 299, 303, n.7 (W. Va. 1983) ("Although broad police powers have been expressly conferred on county commissions, they are not instrumentalities of the state"); *Corte Co. v. Cty. Comm'n of McDowell Cty.*, 299 S.E.2d 16, 18 (W.Va. 1982); W.Va. Code 29-12A-3(e) ("'State means the state of West Virginia, including, but not limited to, the Legislature, the supreme court of appeals, the offices of all elected state officers, and all departments, boards, offices, commissions, agencies, colleges, and universities, institutions, and other instrumentalities of the state of West Virginia. 'State' does not include political subdivisions.").

Without standing to bring the Plaintiffs' claims, the WVAG had no power to contractually release them. "Contracts of compromise and settlement are to be construed and enforced like any other contract."[86] The Defendants cite no authority for the proposition that one party has the power to bind a separate non-party to a contractual release.

In any event, the parties did not agree to include the Plaintiffs' claims in the release. Counties and cities are not mentioned as released parties. The negotiation history confirms the intent of this otherwise ambiguous agreement.[87] Given the clear division between local and state government in West Virginia law, it follows that the parties did not agree to include them as released parties. As such, they are not included within the scope of the release, and their claims are not barred. "Obviously, a judgment dismissing an action as compromised and settled does not preclude a party from bringing suit upon a claim not within the scope of the compromise agreement."[88]

Alternatively, while the State and the WVAG did not have authority to either bring or settle the Plaintiffs' claims, the negotiation history detailed above make it clear that there was a decision to exclude the cities and counties.  A claim is not extinguished by settlement or judgment when "parties have agreed in terms or in

---

[86] *Fortuna v. Queen,* 363 S.E.2d 472, 477 (W. Va. 1987).

[87] To the extent that the Court is uncertain whether the Plaintiffs' claims are released, it can review the negotiation history to clarify intent. *Shafi v. St. Francis Hosp. of Charleston*, 183 W. Va. 414, 417, 396 S.E.2d 181, 184 (1990) (parole evidence admissible to explain uncertain terms in an agreement).

[88] *Fortuna,* 363 S.E.2d at 477.

effect that the plaintiff may split his claim, or the defendant has acquiesced therein."[89] The fact that counties are excluded from the definition of released parties and the drafting history of the Release are strong evidence of either an agreement to exclude the claims or an acquiescence by the Defendants that permits the Plaintiffs' claim to proceed even if the claims could have otherwise been included within the scope of the Release (which is denied).

## CONCLUSION

The elements of *res judicata* are not present here, and the State's release cannot be interpreted to include Plaintiffs' claims. The Defendants' motions to dismiss should be denied.

---

[89] *See* Restatement (Second) of Judgments § 26(1)(a) (claim is not extinguished by settlement or judgment when "parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein"); *Pueschel v. United St*ates, 369 F.3d 345, 356 (4th Cir. 2004).

Dated: March 20, 2020

**THE CITY OF HUNTINGTON**

/s/ *Anne McGinness Kearse*
Anne McGinness Kearse (WVSB No. 12547)
Joseph F. Rice
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: 843-216-9000
Fax: 843-216-9450
akearse@motleyrice.com
jrice@motleyrice.com

Linda Singer
David I. Ackerman
**MOTLEY RICE LLC**
401 9th Street NW, Suite 1001
Washington, DC 20004
Tel:  202-232-5504
Fax:  202-386-9622
lsinger@motleyrice.com
dackerman@motleyrice.com

Charles R. "Rusty" Webb (WVSB No. 4782)
**THE WEBB LAW CENTRE, PLLC**
716 Lee Street, East
Charleston, West Virginia 25301
Telephone: (304) 344-9322
Facsimile: (304) 344-1157
rusty@rustywebb.com

Respectfully submitted,

**CABELL COUNTY COMMISSION**

/s/ *Paul T. Farrell, Jr.*
Paul T. Farrell, Jr. (WVSB Bar No. 7443)
**FARRELL LAW**
422 Ninth Street, 3rd Floor (25701)
PO Box 1180
Huntington, West Virginia 25714-1180
Mobile: 304-654-8281
paul@farrell.law

/s/ *Anthony J. Majestro*
Anthony J. Majestro (WVSB No. 5165)
**POWELL & MAJESTRO, PLLC**
405 Capitol Street, Suite P-1200
Charleston, WV 25301
304-346-2889 / 304-346-2895 (f)
amajestro@powellmajestro.com

Michael A. Woelfel (WVSB No. 4106)
**WOELFEL AND WOELFEL, LLP**
801 Eighth Street
Huntington, West Virginia 25701
Tel. 304.522.6249
Fax. 304.522.9282
mikewoelfel3@gmail.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of March 2020, I electronically filed the foregoing PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS OR FOR SUMMARY JUDGMENT BASED ON *RES JUDICATA* AND RELEASE with the Clerk of Court by using the CM/ECF System.

/s/ *Anthony J. Majestro*
Anthony J. Majestro