## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

**IN RE: WATER CONTAMINATION LITIGATION**          **CIVIL ACTION 16-C-6000**

### THIS DOCUMENT APPLIES TO:

**COUNTY COMMISSION OF LINCOLN
COUNTY, WEST VIRGINIA,**
    **Plaintiff**
**v.**                                        **CIVIL ACTION NO. 17-C-41 LCN**

**WEST VIRGINIA-AMERICAN WATER WORKS
COMPANY, INC.; EASTMAN CHEMICAL
COMPANY; GARY SOUTHERN; DENNIS P.
FARRELL; WILLIAM E. TIS; CHARLES E.
HERZING; ROBERT J. REYNOLDS; AND
MICHAEL E. BURDETTE,**
    **Defendants.**

### ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

Pending before the Mass Litigation Panel (MLP) are motions to dismiss filed by defendants, West Virginia-American Water Company (WVAW),[1] Eastman Chemical Company,[2] Gary Southern,[3] and William E. Tis and Charles E. Herzing.[4] A hearing was held on September 21, 2018, pursuant to prior order at which all parties appeared by counsel and presented oral argument.

### *Motion for Pro Hac Vice Admission of Michael Donovan*

At the hearing, counsel for the Lincoln County Commission made an oral motion for the *pro hac vice* admission of Michael Donovan, which had been filed but not ruled upon when the

---

[1] MLP Trans ID 62289200, July 31, 2018.  WVAW is incorrectly named in the style of the action as West Virginia-American Water Works Company, Inc.

[2] MLP Trans ID 62361013, filed Aug. 17, 2018.

[3] MLP Trans ID 62439078, filed September 11, 2018.

[4] MLP Trans ID 62401401, filed Aug. 31, 2018.

case was originally filed in the Circuit Court of Lincoln County.[5]  There being no objection, the motion was **GRANTED** from the bench.  The Court entered a written order granting the motion on September 26, 2018.  MLP Trans ID 62490859.

### Motion to Remand to Circuit Court of Lincoln County

Lincoln County's counsel also made an oral motion arguing that the Mass Litigation Panel (MLP) no longer has jurisdiction because the Lincoln County Commission's Complaint is the only remaining action pending before the MLP in this consolidated action.[6]  Lincoln County argued the action should be remanded to Lincoln County where it was originally filed.  Upon consultation among the Presiding Judges,[7] the motion was **DENIED** from the bench.

### Defendants' Motions to Dismiss

The Presiding Judges have reviewed and maturely considered the filings and arguments of counsel, regarding the defendants' Motions to Dismiss the Complaint.  Having conferred with one another to insure uniformity of their decision, as contemplated by Rule 26.07(a) of the West Virginia Trial Court Rules, the Presiding Judges unanimously **GRANT** the defendants' motions for the following reasons.

---

[5] The previously filed motion was electronically filed with the MLP on Sept. 25, 2018.  MLP Trans ID 62487218.

[6] Motions to join Lincoln County's action with the MLP Water Contamination actions pursuant to West Virginia Trial Court Rule 26.09, were previously filed by defendants WVAW, MLP Trans ID 60646425, Eastman Chemical, MLP Trans ID 60595914.  Defendants Tis and Herzing joined by motion filed in the Circuit Court of Lincoln County on June 2, 2017.  Lead counsel for the MLP plaintiffs joined in the motion.  MLP Trans ID 60646762.  Lincoln County opposed the motion, arguing the action should remain in Lincoln County.  The Panel granted the motion by order dated June 12, 2017.  MLP Trans ID 60716565.  Lincoln County's motion for reconsideration, MLP Trans ID 60770123, was denied by the Panel in an order dated July 12, 2017.  MLP Trans ID 60846575.  On January 26, 2018, Plaintiffs moved to lift the existing stay, Order, Jan. 22, 2018, MLP Trans ID 61594845, and remand the action to Lincoln County.  MLP Trans ID 61616024.  The Panel denied the motion by order dated March 5, 2018.  MLP Trans ID  61757318.

[7] By order dated February 12, 2016, the Honorable Alan D. Moats was appointed Lead Presiding Judge and the Honorable John A. Hutchison and the Honorable Derek C. Swope were appointed as Presiding Judges.

## Findings of Fact

1.     The Lincoln County Commission brings this action for equitable relief, seeking abatement of a public nuisance.  Lincoln County's Complaint asserts a common law public nuisance claim, asserting that under W.Va. Code § 7-1-3kk and § 16-3-6 it has the authority as the "Sovereign" to invoke the equitable powers of any court to abate nuisance.  Complaint ¶¶115-116.

2.     Lincoln County also asserts it can bring an equitable action to abate nuisance under its Ordinance No. 2017-1, the "Lincoln County Public Nuisance Ordinance," which it passed on March 16, 2017.  Complaint, Counts II and III.[8]  Lincoln County further relies upon West Virginia Code §§ 7-1-3kk and 16-3-16 as providing statutory authority to enact Ordinance No. 2017-1 ("the Ordinance").  Complaint ¶ 4 ("The Governmental Plaintiff is authorized to exercise the inherent power of the Sovereign under the Public Nuisance Doctrine embodied in the common law of the State of West Virginia pursuant to the provisions of West Virginia Code §§ 7-1-3kk and 16-3-16 to investigate, abate, or cause to be abated any condition which the County Commission determines to be a Public Nuisance…").

3.      Lincoln County expressly brings this action "on behalf of the adversely affected public."  Complaint ¶ 1.

4.     Lincoln County seeks mandatory equitable relief for the abatement of an alleged nuisance that it claims arose from a chemical contamination incident that occurred in Charleston, West Virginia, starting January 9, 2014.  Complaint ¶ 1.[9]

---

[8] The Ordinance is attached to the Complaint as Exhibit A.

[9] During oral argument, counsel expressly stated that Lincoln County's causes of action were in equity. Admissions in oral argument are binding.  See *Perrine v. E.I. Du Pont De Nemours & Co*., 225 W.Va. 482, 694 S.E.2d 815 (2010) ("During oral argument, however, the parties stated that, after the punitive damages verdict was returned, the trial court apportioned punitive damages between the property claims and the medical monitoring claims, allocating forty percent to the medical monitoring claims and sixty percent to the property claims.

3

5.      The Complaint alleges that a chemical mixture spilled into the Elk River from tanks owned and operated by Freedom Industries on January 9, 2014.  Contaminated water was distributed to WVAW's customers in nine counties, including Lincoln County.  Complaint ¶ 1.

6.   The Complaint further alleges the contamination incident began on January 9, 2014 and extended for ten days.   Complaint ¶117 ("Such ambient air and public water supply conditions commenced on January 9, 2014 and continued for a period of approximately ten days thereafter…").  The latest allegation in the Complaint related to contamination is on March 3, 2014, when the Centers for Disease Control advised pregnant women that they could resume drinking water distributed by WVAW.  Complaint ¶ 72.

7.      In its response to WVAW's motion, Lincoln County asserts "[a]lthough WV AmWater is correct that the Freedom Industries Release ended at some point in January of 2014, it is incorrect in asserting that the public nuisance to which WV AmWater contributed ended at the same time. Indeed, as paragraph 119 of the Complaint alleges, the endangerment and risk created by that release and by WV AmWater released chemicals continues to this day.... [quoting Complaint Paragraph 119]."  Plaintiff Lincoln County Commission's Response in Opposition to West Virginia-American Water Company's Motion to Dismiss, at 8.

8.      Residents, businesses and governmental entities brought suits in state and federal court seeking a broad array of damages allegedly arising from the chemical contamination incident that occurred in Charleston, West Virginia, starting January 9, 2014.  Suits in federal court were consolidated before the Honorable John T. Copenhaver as *Crystal Good v. American Water Works, Inc.*, *et al.*, Civil Action No. 2:14-01374, United States District Court for the Southern District of West Virginia ("*Good*").   Other actions, filed in state court, were removed

---

Accepting this undisputed representation by the parties, we reduce the  …  punitive damages award by forty percent….").

and remanded, and were consolidated by the Chief Justice of the Supreme Court of Appeals of West Virginia before the Mass Litigation Panel ("MLP").[10]

9.      Eastman and WVAW reached a class settlement in *Good v. American Water Works* after extensive negotiations with counsel for plaintiffs with cases filed in both state and federal court.  The United States District Court granted preliminary approval of the proposed settlement by order dated September 21, 2017, and set various deadlines, including deadlines for claimants wishing to opt out.  The parties sought final approval of the settlement, which was initially denied without prejudice.[11]

10.      The District Court granted final approval of the *Good* class settlement by order dated June 8, 2018, in which the District Court found the settlement terms were "fair, reasonable and adequate within the meaning of Fed. R. Civ. P. 23(e)."  June 26, 2018, *Notice of Order Granting Final Approval of Good Class Settlement,* MLP Trans. ID 62177965.  The Lincoln County Commission opted out of the *Good* class settlement.  No other individuals or businesses in Lincoln County are alleged to have opted out of the settlement.[12]  No one objected to the settlement.

11.      Defendant Southern reached a separate settlement with the class, which was approved by the District Court and included in the *Good* class Settlement.  September 5, 2018, *Memorandum Opinion and Order Granting Final Approval of Settlement,* MLP Trans. ID 62439078.  Defendant Farrell also reached a separate settlement with the class, which was

---

[10] Administrative Order, January 28, 2016 (available online at http://www.courtswv.gov/lower-courts/mlp/mlp-orders/water-contamination/MotionToRefer-Miller.pdf.).

[11] The District Court initially denied the motion for final settlement approval without prejudice.  *Good v. W. Virginia-Am. Water Co.*, No. CV 14-1374, 2017 WL 2884535, at *31 (S.D.W. Va. July 6, 2017) (Motion for final approval of settlement denied without prejudice and the parties were directed "to file [a] modified settlement agreement" addressing concerns set forth by the court….) MLP Trans. ID 61227188.

[12] At oral argument, Lincoln County's counsel was unable to state whether any Lincoln County residents or businesses opted out of the *Good* class settlement, stating the issue was not relevant.

approved by the District Court by Order dated June 8, 2018. Funds from those settlements are included in the funds that will be distributed in the overall class settlement claims process.

12.     Lincoln County does not seek recovery for any current personal injury or property damage, nor does it allege there is a currently existing contamination resulting from the January 2014 chemical release.

13.     Lincoln County alleges the lack of conclusive scientific studies on the chemicals released in January 2014 constitutes a public nuisance.  Paragraph 1 of the Complaint alleges:

> [T]he precise nature and concentrations of the toxic chemicals to which the public was actually exposed, the precise nature and concentrations of chemicals resulting from the degradation of chemical components of the released chemical mixture once it was released into the soil and surface water environments, and the synergistic effects of those toxic chemicals, if any, to which the public has been or may have been exposed have not been fully investigated and their full toxicological effect on human health and the environment has not been adequately and properly identified, investigated, studied, and responded to, as may be necessary following such necessary remedial investigation and studies….”

Paragraph 119 of the Complaint further alleges:

> Due to the public's exposure to contaminated drinking water and ambient air resulting from the 2014 Elk River Hazardous Substances Spill Event, a continuing imminent and substantial endangerment to the Public Health and Safety of the exposed populations of Lincoln County, WV, and in particular to much more vulnerable population of children age 5 and under and fetuses the (sic) were exposed to the contaminated public water supply, may be presented and continue to exist. This endangerment to Public Health and Safety has neither been adequately assessed and investigated by the Defendants, nor has it been adequately abated. The Public Nuisance/Imminent and Substantial Endangerment to the Public Health and Safety caused, created, or contributed to by all of the Defendants continues to exist for the residents of those areas, including areas within Lincoln county (sic), exposed to the released, toxic chemicals, Hazardous Substances and Hazardous Wastes from the January 9, 2014 Spill Event.

14.     Declaring that the fact that the chemicals released in January 2014 have not been adequately assessed or investigated constitutes a continuing nuisance, Lincoln County seeks an

injunction requiring the defendants to perform comprehensive health studies on the chemical mixture, establish a data base containing all such studies and establish a data base disclosing documents related to the January 2014 chemical spill.  Complaint ¶1 and Prayer for Relief.

15.     Lincoln County further seeks the recovery of its attorneys' fees and expenses. The 2017 Lincoln County Public Nuisance Ordinance provides for "recovery from Responsible Parties, jointly and severally, of all [incurred] Abatement Action Costs" and "further Abatement Action Costs to be incurred by the County…."  Ex. A, Ordinance at §I b. 6 (b) and (c), pp. 6-7.

16.     Count III of the Complaint seeks recovery of "Abatement Action Costs," under these sections of the Ordinance, stating "each Defendant is liable to Lincoln County for timely reimbursement of all abatement action costs that are 'incurred by or to be incurred by the Lincoln County' with respect to the Public Nuisance/Imminent and Substantial Endangerment to the Public Health and Safety caused, created, or contributed to by the Defendants."  Complaint ¶ 140.

17.     The Prayer for Relief seeks "an equitable order" for all "Abatement Action Costs" as defined in the Ordinance incurred and to be incurred in the future "that will be binding on any subsequent action or actions to recover further response costs or damages, unless all Abatement Actions with respect to the Public Nuisance(s) have been completed and all related Abatement Actions Costs presented to the Court or their recovery expressly waived by Lincoln County." Complaint, Prayer for Relief ¶ B.

## CONCLUSIONS OF LAW

### A. Statute of Limitations

1.     Lincoln County's public nuisance action is governed by a one-year statute of limitations under West Virginia Code § 55-2-12(c).  See *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.,* 200 W.Va. 221, 488 S.E.2d 901 (1997) (Public nuisance claims for harm

caused to the "public health, safety, and the environment" are subject to the one-year statute of limitations for 'any other matter' . . . quoted . . . in W.Va. Code § 55-2-12(c)."). Lincoln County does not dispute that West Virginia Code § 55-2-12(c) governs this action.

2.      All defendants move to dismiss the Complaint as barred by the statute of limitations because it was filed more than one year after the alleged chemical contamination ended in January 2014. Lincoln County argues that under *Kermit Lumber*, the statute of limitations has not begun to run because the nuisance, as declared by the County Commission, still exists.

3.      The last alleged event occurred in 2014, more than one year before the Complaint was filed on April 20, 2017. Complaint ¶117. Lincoln County states in its briefing that "[a]lthough WV AmWater is correct that the Freedom Industries Release ended at some point in January of 2014, it is incorrect in asserting that the public nuisance to which WV AmWater contributed ended at the same time." Lincoln County's Response to WVAW Motion to Dismiss, *supra*, at 8.

4.      Lincoln County does not allege there is any ongoing tortious conduct or current contamination. Rather, it argues the statute of limitations has not commenced because there is a "continuing endangerment … to Public Health and Safety" that "may be presented and continue to exist" which has not "been adequately assessed [or] investigated." Complaint ¶ 119 (emphasis added); see also Response at 2, 5, 8-10 (confirming the County alleges only that an endangerment "may" be presented). On this basis, Lincoln County argues that under *Kermit Lumber*, the statute of limitations has not begun to run. See Lincoln County Response to WVAW Motion to Dismiss at 9 ("the court in *Kermit Lumber* also held, a claim for the abatement of such a public nuisance does not accrue, for the purposes of the statute of limitations, until such nuisance is abated….").

8

5.      The lack of an allegation of current tortious conduct or contamination is fatal to Lincoln County's continuing tort theory.  There is no precedent in West Virginia, nor has the Panel been advised of precedent elsewhere recognizing that lack of information about a past contamination is a nuisance, or that it is continuing tortious conduct or contamination.

6.      Lincoln County's reliance on *Kermit Lumber* is misplaced.  In *Kermit Lumber*, the Supreme Court of Appeals of West Virginia expressly held the statute of limitations did not begin to run because the hazardous waste remained in the ground and was flowing into the river: "[A]s long as the arsenic remains on the Kermit Lumber business site in amounts above the regulatory limits and as long as the arsenic is flowing into the Tug Fork River, the harm or nuisance continues and thus, is a continuing (or temporary) nuisance." *Kermit Lumber,* 488 S.E. 2d at 925.

7.      Lincoln County concedes in its Complaint and conceded at oral argument that the contamination resulting from the January 2014 chemical spill ceased in 2014.  Accordingly, Lincoln County's Complaint is therefore barred under the one-year statute of limitations in West Virginia Code § 55-2-12(c).

### *B. Allegation of Nuisance*

1.      All defendants assert the Complaint fails to state a claim for public nuisance under West Virginia common law, and Lincoln County cannot enact an ordinance declaring a nuisance that is not cognizable at common law.  Lincoln County argues that under its Ordinance the lack of comprehensive health effect studies on the chemical mixture spilled in January 2014 constitutes a nuisance which it, as the sovereign, is entitled to seek to abate pursuant to its statutory powers.

2.     Lincoln County has conceded, both in its memoranda and at oral argument, there is no evidence of current chemical contamination related to the January 2014 chemical spill. Moreover, Lincoln County concedes it is not making a claim for medical or property monitoring.

3.     The Supreme Court of Appeals of West Virginia has defined a public nuisance as "an act or condition that unlawfully operates to hurt or inconvenience an indefinite number of persons. The distinction between a public nuisance and a private nuisance is that the former affects the general public, and the latter injures one person or a limited number of persons only." *Sharon Steel Corp. v. City of Fairmont*, 175 W.Va. 479, 483, 334 S.E.2d 616, 620 (1985).  As Lincoln County concedes in ¶12 of the Complaint, West Virginia's definition of public nuisance is consistent with the Restatement (Second) of Torts, which defines public nuisance as "an unreasonable interference with a right common to the general public." See *Duff v. Morgantown Energy Associates (ME.A.)*, 187 W.Va. 712, 421 S.E.2d 253, 257 n.6 (1992); see also Restatement (Second) of Torts, § 821B(1) (1979).

4.     The possibility of harm, or an action to recover for monitoring for possible future harm, is not a "nuisance" under West Virginia law.  Lincoln County does not allege that any resident currently has any injury or disease related to past exposure to contaminated water from the 2014 spill, nor does it allege there is a likelihood residents will develop a latent disease in the future. Lincoln County argues a nuisance exists because there is a lack of information about the chemicals spilled in January 2014; and the chemicals "may" cause long term health effects. However, a speculative assertion that a resident may develop a latent disease at some uncertain point in the future simply does not constitute a nuisance under West Virginia law.

5.     To recover future costs of medical monitoring in the absence of a current injury, Lincoln County would have to prove the elements set forth in *Bower v. Westinghouse Elec.*

*Corp.*, 206 W.Va. 133, 138-9, 522 S.E.2d 424, 429-30 (W.Va. 1999).[13]  But Lincoln County states it is not seeking medical monitoring.[14]

6.       Lincoln County's claim is like the argument plaintiffs unsuccessfully asserted in *Carter v. Monsanto Company*, 212 W.Va. 732, 575 S.E.2d 342 (2002).  In *Carter*, plaintiffs argued the defendant was obligated to test their property for toxins and provide the results, so plaintiffs could determine whether contamination existed and bring claims.  The Supreme Court of Appeals of West Virginia refused to force the defendants to perform (or pay for) the testing in advance of any finding of fault because "[n]either West Virginia common law nor West Virginia statutory law presently supports or recognizes a claim for property monitoring."  *Id.,* 212 W. Va. at 736, 575 S.E.2d at 346.  Instead, the Court held the plaintiff must "first prove at his expense that his property has in fact been injured." *Id.*

7.       Similarly, in *State ex rel. E.I. Dupont De Nemours & Co. v. Hill*, 214 W. Va. 760, 591 S.E.2d 318 (2003), the Court rejected plaintiffs' attempt to force the defendant to pay for blood testing in advance of litigation. "The plaintiffs must bear the cost of proving, at their own expense, that they have been exposed to C-8 and that exposure has injured them."  Here, Lincoln County makes similar arguments – that because there "may" be a risk of harm, the defendants are obligated to fund extensive health testing.  West Virginia law does not support this argument

---

[13] To recover for medical monitoring, *Bower* requires proof by a plaintiff that "(1) he or she has, relative to the general population, been significantly exposed; (2) to a proven hazardous substance; (3) through the tortious conduct of the defendant; (4) as a proximate result of the exposure, plaintiff has suffered an increased risk of contracting a serious latent disease; (5) the increased risk of disease makes it reasonably necessary for the plaintiff to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of the exposure; and (6) monitoring procedures exist that make the early detention of a disease possible."

[14] Indeed, in another filing, Lincoln County stated it is not possible to determine "whether 'medical monitoring' in any form for any reason is even an appropriate step in the proper abatement of an endangerment to the Public Health until the nature and extent to the exposure leading to the possible endangerment has been adequately studied and assessed . . . ." *Lincoln County Commission's Memorandum in Support of its Motion for Reconsideration*, filed June 15, 2017, MLP Trans. ID 607701123, at 9 n. 6.

and Lincoln County has not supplied authority from any court that has done so.   Lincoln County's Complaint therefore fails to state a claim for nuisance.

8.      The fact that Lincoln County declared the lack of information to be a nuisance pursuant to its 2017 Ordinance is contrary to West Virginia law.  Lincoln County argues it has essentially unlimited power to declare nuisance, stating that under W.Va. Code § 7-1-3kk a nuisance is "anything which the commission determines to be a public nuisance…."   See Complaint at ¶115.  However, contrary to this assertion, the statutorily delegated power to enact ordinances does not allow the County to avoid the requirement that the public nuisance be cognizable under common law.

9.      In *Parker v. City of Fairmont*, 72 W.Va. 688, 79 S.E. 660, 661-62 (1913), the Court found that a statutory provision, like the one the County relies on here, which gives municipalities the power to declare a public nuisance, "grant[s] a police power of abatement; not an arbitrary power of determining that something is a nuisance which by no law is known to be such. It is not reasonable to presume that the Legislature meant to grant such arbitrary power to the municipal authorities." *Id.* at 661. The *Parker* Court further stated that "[t]rue, the opinion of most of the whole council is called for by the provision. But that opinion is to be applied in discerning that the thing complained of comes within the category of nuisances pronounced to be such by law. Clearly the power granted is to abate what the law holds to be a nuisance, not to enact that any particular thing is a nuisance." *Id.* at 662.  Since the claimed public nuisance does not meet the definition of a nuisance at common law, it also cannot be a nuisance under Lincoln County's 2017 Ordinance.

### *C. Standing*

1.      WVAW argues that Lincoln County has not pled sufficient facts establishing harm to give it standing to bring this action.  Because the possibility of harm based on the lack of

knowledge is not a nuisance, WVAW argues Lincoln County has not pled an injury and, therefore, lacks standing.  Lincoln County responds that it has standing under W.Va. Code § 7-1-3kk and its Ordinance.

2.      For the same reasons the Complaint fails to state a claim for public nuisance, the Panel finds Lincoln County has not pled a cognizable injury and, therefore, lacks standing.

### D. Res Judicata

1.      Lincoln County "brings this civil action forthwith to secure on behalf of the adversely affected public the prompt imposition by this Court of appropriate and effective mandatory injunctive relief…."   Complaint at ¶ 1.   However, defendants contend Lincoln County's civil action is barred by *res judicata* because: Lincoln County is in privity with the citizens for whom it expressly brings the civil action; the citizens of Lincoln County are also members of the *Good* class action; Lincoln County's civil action asserts the same claims that were fully adjudicated by final approval of the *Good* class action settlement; and no citizens of Lincoln County opted out of the *Good* class action settlement.  Lincoln County argues the *Good* class settlement is not relevant because Lincoln County's civil action is fundamentally different from any claim made in *Crystal Good*, particularly since no governmental entity or "sovereign" pursued the public nuisance claims presented by Lincoln County.

3.      *Res judicata* bars a civil action when an earlier civil action:  (1) reached a final judgment on the merits; (2) resolved or could have resolved, had it been raised, the present suit's cause of action; and (3) involved the same parties or persons in privity with those parties.  Syl. Pt. 2, *Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc.*, 239 W. Va. 549, 803 S.E.2d 519 (2017).

4.      First, there is no dispute the *Good* class settlement was a final judgment on the merits.  Therefore, the first element of the *res judicata* test is satisfied.

13

5.      Lincoln County argues that in this civil action, which it brings as a "sovereign," it is "pursuing different things in fundamentally different causes of action.  The test for determining whether a claim is one that was resolved or could have been resolved in the *Good* action is "whether the same evidence would support both actions or issues'" *Beahm*, 223 W.Va. at 275, 672 S.E.2d at 604 (citations omitted).

6.      A comparison of Lincoln County's Complaint with the Complaint in the *Good* class action demonstrates both actions were based on the same factual and legal assertions, which satisfies the second element of the *res judicata* test.  The *Good* Complaint expressly states and releases a claim for public nuisance for the class - which comprises precisely the same "public" on whose behalf Lincoln County brings this civil action.

7.      Lincoln County's Complaint asserts a representative action on behalf of the "public" and Lincoln County is in privity with the Lincoln County residents who pursued and settled the *Good* action, which satisfies the third element of the *res judicata* test.

8.      Lincoln County's Complaint does not allege any eligible class member in Lincoln County, other than the County Commission itself, opted out of the *Good* settlement.  Therefore, the citizens for whom Lincoln County states it brings this action have accepted the terms of the class action settlement, which included the broad release of past, present and future personal injury and property claims, including claims for medical monitoring and public nuisance. *Amended Class Action Settlement Agreement,* MLP Trans. ID 61227188.

9.      The *Good* class action settlement also resolved the claims of minor plaintiffs.  A Guardian *Ad Litem* was appointed and recommended approval of the minor plaintiff settlement to the District Court.[15]  The *Good* class action settlement also resolved the claims of pregnant

---

[15]  Order Granting Final Approval of the *Good* Class Settlement and Entering Judgment, *Crystal Good v. West Virginia-American Water Company, et al,* Civil Action No. 2:14-cv-1374, Slip Op. at 5 (S.D.W.Va., June 8,

women, who were entitled to a particular payment under the settlement agreement and payment protocols.

10.     In this action, Lincoln County seeks to force the defendants to conduct health effect studies for the benefit of its residents.  Under *Dan Ryan Builders*, the court must consider "whether the same evidence would support both actions or issues." 239 W. Va. at 560. The same claims, demonstrated by a comparison of the Complaint filed in this action and the Complaint in the *Good* class action, were brought and resolved by its residents in the global class action settlement.  Based on its pleadings, Lincoln County is in privity with the Lincoln County residents who pursued and settled the *Good* class action.  Therefore, this action is barred under the doctrine of *res judicata*.

### E. Retroactive Application of Lincoln County Ordinance

1.     Defendants make two arguments that the Lincoln County Ordinance cannot be applied retroactively to conduct which occurred in 2014, three years before the passage of the Ordinance.  First, as a matter of statutory construction, absent express language in the Ordinance confirming retroactive application, the Ordinance must be presumed to apply prospectively. *Martinez v. Asplundh Tree Expert Co.*, 239 W. Va. 612, 803 S.E.2d 582, 583 (2017) ("The presumption is that a statute is intended to operate prospectively, and not retrospectively, unless it appears, by clear, strong and imperative words or by necessary implication, that the Legislature intended to give the statute retroactive force and effect.").  Second, Eastman argues the Ordinance, both on its face and as enforced in this action, violates constitutional due process

---

2018)(Based upon the report of the Guardian Ad Litem, "the court finds that the Amended Settlement Agreement is fair, reasonable and adequate with respect to Settlement Class Members who are minors, lack capacity or are incompetent. For purposes of the function of the Guardian Ad Litem, a minor is a person under age 18 and the definition of a Class Member who lacks capacity is the definition of incapacity provided in W.Va. Code §39B-1-102(5) …") MLP Trans ID 62177965.

protections because it purports to substantively change the law of nuisance for actions that occurred years before the ordinance was passed.

2.     Lincoln County argues the Ordinance is not being applied retroactively because "[b]y its very terms, the Ordinance plainly applies to present nuisances, present conditions, endangerments, and risks which threaten human health and the environment."  Lincoln County Response at 13.  Further, "[t]he Commission herein simply seeks to address and abate a current risk or endangerment which it intends to prove, at trial, meets the Ordinance's definition of a public nuisance." *Id.*

3.     As already determined, and as admitted by all parties, the alleged contamination ceased in January 2014.   There is no present or ongoing contamination, release, event or risk and, therefore, there is no current public nuisance under West Virginia Law. Under *Martinez v. Asplundh Tree Expert Co.*, because the Ordinance substantively changes the elements of public nuisance, it cannot be applied retroactively, particularly without express language.  Even if the Ordinance contained language allowing retroactive application, the application of the Ordinance to the 2014 release constitutes an impermissible retroactive application of the law which violates due process.

### F. Due Process Violations

1.     Defendants Eastman, Tis and Herzing also contend the Ordinance violates constitutional due process protections because it is impermissibly vague and eliminates affirmative defenses to which defendants have a right.   The County's passage of a vague Ordinance and the amendment or elimination of many legal defenses (such as *res judicata*, statute of limitations, waiver, and many others) that have long existed under West Virginia law violates the defendants' due process rights.

16

2.      To determine whether the Ordinance violates due process, the Court must balance three factors: "(1) the nature of the private interest that will be affected, (2) the comparative risk of an erroneous deprivation of that interest with and without additional or substitute procedural safeguards, and (3) the nature and magnitude of any countervailing interest in not providing additional or substitute procedural requirements." *D.B. v. Cardall*, 826 F.3d 721, 742 (4th Cir. 2016) (quoting *Turner v. Rogers*, 564 U.S. 431, 444-45 (2011)).

3.      Under the first factor, the defendants all have a private interest in the funds sought by Lincoln County. See, e.g., *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013) ("[M]oney is a clearly cognizable property interest.").

4.      Under the second factor, the Ordinance presents a grave risk that defendants will be erroneously deprived of their property interests for two reasons.

5.      First, the Ordinance is overly vague because it "forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Williams v. West Virginia University Bd. of Governors*, 782 F. Supp. 2d 219 (N.D. W. Va. Mar. 2, 2011) (citation omitted).  Because the Ordinance vaguely encompasses any conduct that "may present . . . an imminent and substantial endangerment," it fails to apprise individuals of the conduct that runs afoul of it. See Ordinance, at § 5(a)(1)-(2).

6.      Second, the Ordinance presents a severe risk to the defendants' property rights because it denies them the right to assert well-established defenses under West Virginia law. See *Jordan v. Roberts*, 161 W. Va. 750, 754, 246 S.E.2d 259, 261 (1978) ("[T]he state cannot preclude the right to litigate an issue central to the statutory violation or deprivation."). If interpreted literally, the Ordinance forbids numerous established affirmative defenses including statute of limitations, waiver, and *res judicata*.

7.      Courts determining whether the limitation of a defense violates due process have determined that "[s]ubstantive due process analysis 'depends on whether the statute implicates a fundamental right." <u>See</u> *State v. Holloway*, No. A16-1489, 2018 WL 3637371, at \*3 (Minn. Aug. 1, 2018) (citation omitted).

8.      Here, defenses like *res judicata* are well rooted in West Virginia's jurisprudence; therefore, the Ordinance's denial of those defenses presents a severe risk to the defendants' property rights. <u>See</u>*, e.g.*, *Bansimer v. Fell*, 39 W. Va. 448, 19 S.E. 545, 546 (1894) (recognizing *res judicata* in West Virginia over one hundred years ago).

9.      Finally, Lincoln County has asserted no countervailing interest sufficient to justify its overly vague Ordinance.

10.     Accordingly, because the due process factors overwhelmingly show that the Ordinance presents a severe risk to the defendants' due process rights, the Ordinance may not be applied in this case.

### G.  CERCLA Preemption

1.      Defendants Eastman, Tis and Herzing moved to dismiss Counts II and III of the Complaint because the Lincoln County Ordinance upon which the counts are based is preempted by federal law, specifically the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601-9674 ("CERCLA").  Lincoln County responds that this court does not have jurisdiction to determine CERCLA preemption, and that if it did, CERCLA does not preempt the ordinance duly passed by the county pursuant to its statutory authority under W.Va. Code § 7-1-3kk and § 16-3-6.

2.      Having determined that this action is barred under the applicable statute of limitation, the doctrine of *res judicata*, and on due process grounds, the Court finds there is no need to consider the parties' arguments regarding CERCLA preemption.

For the foregoing reasons, the Complaint of the County Commission of Lincoln County is **DISMISSED WITH PREJUDICE**.  The Court notes and preserves the objections of any party aggrieved by this Order.

The parties are hereby advised:  (1) that this is a final order; (2) that any party aggrieved by this order may file an appeal directly to the Supreme Court of Appeals of West Virginia; and (3) that a notice of appeal and the attachments required in the notice of appeal must be must be filed within thirty (30) days after the entry of this Order, as required by Rule 5(b) of the West Virginia Rules of Appellate Procedure.

It is so **ORDERED**.

**ENTER:**  December 12, 2018.                              /s/ Alan D. Moats
                                                                                Lead Presiding Judge
                                                                                Water Contamination Litigation