IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, et al.,<br><br>    Defendants. | Civil Action No. 3:17-01362<br>Hon. David A. Faber |
| CABELL COUNTY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, et al.,<br><br>    Defendants. | Civil Action No. 3:17-01665<br>Hon David A. Faber |

**REPLY IN SUPPORT OF
CARDINAL HEALTH'S MOTION FOR SUMMARY JUDGMENT:
RES JUDICATA AND RELEASE OF CLAIMS**

**Introduction**

The *res judicata* doctrine—as Plaintiffs acknowledge—precludes "relitigating the issues that were decided or the issues that could have been decided in the earlier action."[1]  In 2012, the State sued Cardinal Health for allegedly causing a statewide public nuisance, and, in 2016, there was a final adjudication of that claim when the State and Cardinal Health settled, and the Boone County Circuit Court dismissed the lawsuit with prejudice.  Accordingly, *res judicata* bars this

---

[1]  Pl. Mem. of Law in Opp. (Dkt. 242) ("Opp.") at 10 (quoting *Beahm v. 7 Eleven, Inc.*, 672 S.E.2d 598, 601 (W. Va. 2008) (per curiam)).

action because Plaintiffs—the City of Huntington and Cabell County—seek to relitigate the very *same* cause of action (public nuisance), based on a subset of the *same* transactions or series of transactions (Defendants' alleged failure to report and halt shipment of suspicious orders from Huntington and Cabell County pharmacies), and seek the *same* relief.

There are three telling indicators of Plaintiffs' bankrupt position:

- First, to support the argument that the State cannot have litigated their claims, Plaintiffs make the desperate argument that they alone have authority to sue to abate a public nuisance within their borders and that the Attorney General, then and now, lacks authority to bring a common law, public nuisance action against Defendants on behalf of the State and its citizens to address the public health concerns arising from the alleged "epidemic" of opioid addiction throughout West Virginia.  Opp. 2, 13–14.  Not surprisingly, Plaintiffs fail to cite any West Virginia case holding that the Attorney General cannot bring a common law public nuisance claim.  Countless cases reflect that the Attorney General has done so, and the Boone County Circuit Court held that the Attorney General had such authority in the 2012 case against Cardinal Health.

- Second, to support the argument that the claims in the two cases are not identical, Plaintiffs argue that the State in 2012 sought only damages and "did not seek abatement as a remedy." Opp. 3.  Whether the remedy is the same is irrelevant to the *res judicata* analysis,[2] but Plaintiffs' argument also is untrue.  The State sought, *inter alia*, "[d]amages sustained as the proximate result of nuisances created by the prescription drug abuse epidemic," "[d]isgorgement of unjust enrichment of the Defendant," a "permanent injunction ordering … the Defendants to

---

[2] *See* Mem. in Support of Cardinal Health's Motion for Summary Judgment (Dkt. 220) ("Br.") at 9; *see also infra* at 5.

2

comply with the West Virginia Uniform Controlled Substances Act," i.e., abatement of the allegedly nuisance-causing conduct, **and** "[e]quitable relief, including but not limited to restitution and disgorgement."[3]

- Third, Plaintiffs advance straw-man arguments—that (i) Plaintiffs are not an arm of the State, Opp. 11, (ii) the Attorney General, as a general matter, cannot litigate "on behalf of" cities and counties, *id*. at 13, and (iii) the State lacks even *parens patraie* authority to bring public nuisance claims "on behalf of" cities and counties, *id*. at 16. The question, however, is not whether the State can or did sue in Plaintiffs' names or expressly on their behalf; the question is whether the State and Plaintiffs share the same interest and legal right, such that the State acted as Plaintiffs' "virtual representative" when it sued Cardinal Health for creating a public nuisance in Huntington and Cabell County—and, indeed, throughout the entire state. The answer to the latter question is yes, and Plaintiffs' claims therefore are barred by *res judicata*.

## ARGUMENT

## I. THE *RES JUDICATA* DOCTRINE BARS PLAINTIFFS' CLAIMS.

Nothing said in Plaintiffs' Opposition refutes Cardinal Health's showing that the three conditions for application of the *res judicata* doctrine are met here.

### A. Final Adjudication

The first condition for applying the *res judicata* doctrine is met. The State settled the 2012 case against Cardinal Health, and the Boone County Circuit Court dismissed it with

---

[3] Second Amended Compl., *State ex rel. Morrisey v. Cardinal Health, Inc.*, C.A. 12-C-40 (W. Va. Cir. Cit. Boone Cty. Aug. 11, 2015) ("SAC") at 26–27 (Br. Ex. 3).

3

prejudice. Although they bury it in the Opposition at footnote 40, Plaintiffs concede that the settlement and dismissal constituted a final adjudication.[4]

### B. Identity of Claims

Plaintiffs argue that "[t]he Claims Are Not Based on the Same Causes of Action," Opp. 21, but there is now only one cause of action—common law public nuisance—and that is the same cause of action brought by the State in 2012. It is Count IV in the State's Second Amended Complaint and the First Claim For Relief in Plaintiffs' Third Amended Complaint. Both the State and Plaintiffs allege that (i) Cardinal Health flooded the community with prescription opioid medications (ii) by reason of its failure to report and halt shipment of suspicious pharmacy orders for such medications, thereby (iii) encouraging the diversion of the medications to illegitimate use and (iv) causing a detrimental effect on the public health.[5] Thus, the respective claims not only carry the same label, but are based on the same factual allegations. The claims are *identical* insofar as Huntington and Cabell County are concerned; they differ only in that the State's claims made as to all West Virginia communities were broader. Plaintiffs do not point to any proof they would offer in support of their public nuisance claim that the State would not have offered in a trial of its same claim. In sum, Plaintiffs' public nuisance claim arises out of the "same core of operative facts" as the State's claim. And where that is true, the second condition for applying the *res judicata* doctrine is met. *Beahm v. 7 Eleven, Inc.*, 223 W.Va. 269, 275, 672 S.E.2d 598, 604–605 (2008) (per curiam).[6]

---

[4] Opp. 10 n.40 ("Plaintiffs do not contest the finality requirement as it applies to the WVAG settlements.").

[5] *Compare* SAC ¶¶ 14–31, 42–48, 54–63, *with Cabell Cty. Com'n, et al. v. Purdue Pharma L.P., et al.*, Case No. 1-17-op-45053-DAP (Dkt. 193, Sept. 12, 2019), Corrected Joint and Third Amended Complaint ("Compl.") ¶¶ 1401–1450 (Br. Ex. 6).

[6] Because Plaintiffs' public nuisance claim arises out of the same core of operative facts as the State's claim—indeed, is identical to the State's claim as it concerned Huntington and Cabell

Plaintiffs argue that their nuisance claim is not the same because the "damage claims sought by the State differ substantially from the abatement relief sought by Plaintiffs here." Opp. 22. That argument is wrong factually and legally. The State did not seek only damages. The State also sought civil penalties, a permanent injunction to abate Cardinal Health's allegedly nuisance-causing conduct, disgorgement, and "[e]quitable relief, including but not limited to restitution and disgorgement."[7] As a matter of law, however, it would not matter if the State had sought different relief. In *Beahm*, the plaintiffs in the second lawsuit argued that their claims were not the same because their damages were different than those of plaintiffs in the first lawsuit. The Supreme Court called that argument "disingenuous" and held that the claims in the two lawsuits were identical for purposes of *res judicata* because the claims arose out of the same core of operative facts, and the plaintiffs in the second-filed lawsuit could have joined the first lawsuit and pursued any different damages. 223 W.Va. at 272, 275–76, 672 S.E.2d at 601–02, 604–05.

### C. Privity

For purposes of determining whether the *res judicata* doctrine applies, it does not matter that cities and counties are "separate from the State with independent powers and duties" or that

---

County—Plaintiffs could have joined the State's lawsuit against Cardinal Health. *Beahm*, 223 W.Va. at 272–73, 672 S.E.2d at 601–02 (holding that claims are identical for *res judicata* purposes where they "could have been resolved, had [they] been presented, in the prior action").

Plaintiffs do not deny that they could have joined the State's lawsuit; they say only that "[j]oinder under Rule 20 is explicitly permissive, not mandatory." Opp. 23. That is precisely the Supreme Court's point in *Beahm*: because Plaintiffs could have joined the lawsuit, whether or not they did, their claim satisfies the identity-of-claims condition for applying the *res judicata* doctrine. (This is not to say that Plaintiffs' public nuisance claim would have survived a motion to dismiss for lack of standing. *See* Defendants' Motion for Summary Judgment: Standing, Dkt. 238, 239).

[7] SAC at 26–27.

5

the State "lack[s] the power to represent cities and counties." Opp. 11, 13. The issue is whether the State and Plaintiffs shared (i) *the same interest* in protecting the public health from an epidemic of opioid addiction and (ii) *the same legal right* in prosecuting a public nuisance action to protect that interest, such that "the interests of the party again[st] whom [the] preclusion is asserted have been adequately represented." *Beahm*, 223 W.Va. at 273, 672 S.E.2d at 602 (internal citation omitted). Plaintiffs do not dispute that there was only one nuisance in their community arising from the alleged wrongful distribution of prescription opioids and that the State first sued Cardinal Health (then others) to hold it responsible for the alleged nuisance. And, while Plaintiffs contend that the State did not sue to "abate" the nuisance, the fact is that the State sought both (i) a permanent injunction to compel Cardinal Health to stop its allegedly nuisance-causing conduct—i.e., both to comply with the West Virginia Uniform Controlled Substances Act and to prohibit distribution of opioids for "any non-legitimate medical purpose"—and (ii) "[e]quitable relief, including but not limited to restitution and disgorgement."[8] Consequently, the State's 2012 lawsuit manifested the same interest and asserted the same legal right as does Plaintiffs' suit. And where that is the case—where the issue "has once been adequately tried by a person sharing a substantial identity of interests with a nonparty"—*res judicata* bars re-litigation of the claim. *Beahm*, 223 W.Va. at 274, 672 S.E.2d at 603.

There can be no real dispute that the State already has litigated the alleged public nuisance in Huntington and Cabell County. Plaintiffs' astonishing and far-fetched argument is that this Court should deem the State's lawsuit a nullity. "[N]either the State nor the WVAG," Plaintiffs contend, "had the power to bring … the Plaintiffs' public nuisance claims arising out of

---

[8] SAC at 26–27.

6

the unlawful distribution of controlled substances in their communities." Opp. 15–16.[9] This argument both is misdirected and wrong.

It is misdirected because it constitutes a collateral attack on the final judgment entered by the Boone County Circuit Court in 2016. It is too late now to argue that the 2016 final judgment should be voided because the Attorney General purportedly lacked the power to bring a public nuisance claim.[10] In any event, any such challenge should have been addressed to the Boone County Circuit Court. This Court cannot void the judgment. *Jefferson Cty. Planning Com'n v. Far Away Farms, LLC*, 2009 WL 3617749, at *8 (N.D. W. Va. Oct. 29, 2009) ("[A] collateral attack of a state court judgment cannot be mounted in federal court where the state court had jurisdiction.").[11]

Regardless, Plaintiffs' argument already has been rejected. In the 2012 lawsuit, the Boone County Circuit Court expressly held that "[i]n addition to the inherent standing of the State to bring the instant claims, the Attorney General is authorized to do so pursuant to the

---

[9] *See also* Opp. 14 (the legislature's grant of powers to local governments implicitly preempted the Attorney General's common law powers and "remov[ed] any common law authority from the WVAG over the Plaintiffs' claims"); *id.* at 21 ("neither the State nor the WVAG had any authority to bring the Plaintiffs' public nuisance claims seeking abatement"). If Plaintiffs mean to say that the Attorney General can bring a public nuisance claim—only not one for a local nuisance—that distinction is nonsense. Like politics, all nuisances are "local" to some community.

[10] *See* W. Va. R.C.P. 60(b).

[11] Even where the basis for the collateral attack is lack of jurisdiction, the collateral attack cannot be maintained in federal court where the state court "fully and fairly considered its jurisdiction," *Far Away Farms*, 2009 WL 3617749, at *8, as the Circuit Court did. *See infra* n.12.

The reasoning behind the *Rooker-Feldman* doctrine also applies to bar collateral attack in federal court on the state court judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (explaining that the doctrine bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments").

7

common law and several statutes …."[12] And Plaintiffs cite *no* contrary West Virginia authority. Plaintiffs acknowledge that the "WVAG possesses inherent common law powers," but they wrongly argue that the legislature's grant of authority to local governments to abate public nuisances implicitly preempted the Attorney General's common law powers. Opp. 14. The Supreme Court has held that the "Office of Attorney General retains inherent common law powers, when not *expressly* restricted or limited by statute." Syl. Pt. 3, *State ex rel. Discover Fin. Servs., Inc. v. Nibert,* 231 W.Va. 227, 744 S.E.2d 625 (2013) (emphasis added). Thus, the Attorney General's common law authority to bring public nuisance actions cannot be removed "implicitly," and Plaintiffs do not contend that the legislature did so expressly. To the contrary, regarding what was historically the core concern of public nuisance law, the legislature provided in § 61-9-3 of the Code that "[w]henever a nuisance exists, *the attorney general of the State* … *may bring a suit in equity in the name of the State of West Virginia* … to abate such nuisance and to perpetually enjoin the person or persons maintaining the same from further maintenance thereof." (Emphasis added.)[13] The Attorney General repeatedly has sued to abate nuisances, as have state agencies that are not explicitly authorized to do so by statute. *See*, *e.g.*, *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 200 W. Va. 221, 226 488 S.E.2d 901, 906 (1997); *State ex rel. Laurita v. Pileggi*, 154 W. Va. 514, 515–516, 177 S.E.2d 29–30 (1970).

Not surprisingly, then, the two cases relied upon by Plaintiffs do not hold that the Attorney General lacks authority to bring a common law public nuisance claim. Neither case— *State ex rel. Morrisey v. W. Va. Office of Disciplinary Counsel*, 764 S.E.2d 769 (W.Va. 2014)

---

[12] Order Denying Motion to Dismiss, *State of West Virginia ex rel. Morrisey v. Cardinal Health, Inc.*, No. 12-C-140 (W. Va. Cir. Ct. Boone Cty. Apr. 17, 2015) ("State Order") ¶ 26 (Br. Ex. 9).

[13] Plaintiffs overlook § 61-9-3 when they wrongly assert that "the Legislature has not enacted a statute granting the State general authority to abate nuisances." Opp. 15.

8

and *State ex rel. Riffle v. Ranson*, 464 S.E.2d 763, 770 (W. Va. 1995)—even mention public nuisance, much less the Attorney General's common law authority to bring public nuisance claims.[14]

When Plaintiffs argue that privity does not exist "where the claims of two overlapping governmental entities are involved," they do not even cite West Virginia law. Opp. 16. *City of New York v. Beretta*, 315 F. Supp.2d 256 (E.D.N.Y. 2004), is not persuasive authority for four reasons. First, it does not apply West Virginia law. Second, the court found that the dismissal of the prior case "[did] not constitute a final judgment on the merits of a similar claim" and that the "allegations in the instant suit are not identical to those in the state case." *Id*. at 264–65. Therefore, what the court went on to say about privity was *dicta*. Third, the court based its *dicta* that New York City was not in privity with the State on a detailed history of the relationship between the City and State, including the City's home rule provisions. And, fourth, the court stated that the "decision not to find the City in privity with the State is confined to the circumstances of this case." *Id*. at 274.

Nor does *Galanos v. National Steel Corp.*, 358 S.E.2d 452, 454 (W. Va. 1987) rule out privity. Plaintiffs are wrong that it stands for the proposition that the virtual representation doctrine "applies only" in three circumstances. Opp. 19. *Galanos* did not so limit the doctrine; it listed the three circumstances as examples of recognized applications of the doctrine distinct

---

[14] In the former case, the issue was "whether the Attorney General retains common law authority to prosecute criminal cases," and the Supreme Court held that pursuant to Article 9, § 1 of the West Virginia Constitution and W. Va. Code § 7-4-1, "the office of Attorney General was stripped of common law prosecutorial authority." *Morrisey*, 764 S.E.2d at 788. In the latter case, the issue was "whether W. Va. Code § 56-1-1(b), superseded and rendered inapplicable the doctrine of *forum non conveniens*," and the Court decided that the statute "represents the wholesale abandonment of the doctrine of *forum non conveniens* in all areas of intra-State transfers." *Riffle*, 464 S.E.2d at 768, 770.

from the "radical" notion of virtual representation advanced in that case—namely, that personal injury plaintiff represented other persons injured in the same explosion. 358 S.E.2d at 454–55. The facts in *Galanos* are a far cry from the situation here, where the State brought suit specifically to secure a remedy for the alleged public nuisance in Huntington, Cabell County, and other West Virginia communities.

In the end, summarizing their argument regarding privity, Plaintiffs hang their hat on the claim that "neither the State nor the WVAG had any authority to bring the Plaintiffs' public nuisance claims seeking abatement." Opp. 21. That claim is unsupported by any authority, is contrary to West Virginia statute and case law, and, frankly, incredible. The third and final condition for applying the *res judicata* doctrine also is met.

## II. THE STATE RELEASED PLAINTIFFS' CLAIMS.

Plaintiffs do not take issue with the proposition that Cardinal Health can only be adjudicated liable *once* for creating or maintaining a nuisance in Huntington and Cabell County by reason of its distribution practices. That is why Plaintiffs argue that only they had authority to sue for public nuisance, and the Attorney General was without any authority. For the reasons given above, the Attorney General did have authority, and Plaintiffs cannot now collaterally attack that determination.[15] Therefore, the question is whether the State released the *one* public nuisance claim that could arise out of Cardinal Health's distribution of opioids to pharmacies in Huntington and Cabell County.

---

[15] Ironically, Plaintiffs did not have authority to sue Cardinal Health for public nuisance—not in 2012, when the State sued, nor in 2016, when the State settled—because neither Plaintiff as of those dates had enacted an ordinance of general applicability defining the distribution of prescription opioids as a nuisance. *See* Def. Motion for Summary Judgment: Standing (Dkt. 238).

10

There can be no question that it did so. The State released (i) "all claims … and causes of action whatsoever" (ii) "which the State has asserted or could have asserted" (iii) "on its own behalf or in its *parens patriae* capacity" and that (iv) "the State now has or may have in the future." The Release recites that it "totally and completely bars any further future claims or demands of any kind or character whatsoever as a result of or relating to the Released Claims."[16]

Plaintiffs argue that "the releases do not apply to Plaintiffs' claims." Opp. 24. But, again, there is only one claim, and Plaintiffs' public nuisance claim is indistinguishable from the public nuisance claim released by the State.[17] Plaintiffs also argue that the Attorney General, because he purportedly lacked standing to sue in the first place, "had no power to contractually release them." Opp. 25. But, again, West Virginia courts have rejected the argument that the Attorney General lacks standing to sue for public nuisance, and the Attorney General has repeatedly done so. And Plaintiffs argue that "[c]ounties and cities are not mentioned as released parties." *Id*. But that argument is obviously misplaced: Plaintiffs were not released parties: they enjoyed a shared interest and shared legal right with the State, the **Releasor**. *See Beahm*, 223 W. Va. at 274, 672 S.E.2d at 603 (*res judicata* bars re-litigation of a claim "that has once been adequately tried by a person sharing a substantial identity of interests with a nonparty" (internal citation and alteration omitted)).

Putting aside that parol evidence is barred when interpreting unambiguous contract language—and Plaintiffs do not claim or make a showing that the Release is ambiguous—that evidence shows, not surprisingly, that Cardinal Health sought language that would provide "belts

---

[16] Settlement Agreement and Release ("Release") at 5–6 (Jan. 10, 2017) (Br. Ex. 4).

[17] In that regard, Plaintiffs argue that they are not claiming "by and through" the State because they "are not suing to enforce the WVCSA." Opp. 24. But their public nuisance claim is premised on alleged violations of the WVCSA. *See* Compl. ¶ 1420.

11

and suspenders" protection. Cardinal Health did not get the suspenders. But the belt did two things. It released the only public nuisance claim that could be brought by a governmental entity to enjoin the wrongful conduct and obtain equitable relief. And it released the State's *parens patriae* claim on behalf of the residents of Huntington and Cabell County. That release covers any claim for monetary recovery that is derivative of residents' addiction, such as medical and addiction-recovery treatment. In theory, Plaintiffs may have enjoyed a distinct claim to recover their own opioid-addiction-related public expenditures. But that claim is irrelevant now because Plaintiffs have withdrawn any claim for damages.

## Conclusion

Plaintiffs' public nuisance claim is indistinguishable from the 2012 public nuisance claim the West Virginia Attorney General filed against Cardinal Health. The West Virginia Attorney General settled that claim and released Cardinal Health from further liability. The Attorney General's 2012 lawsuit was dismissed with prejudice in 2016. Plaintiffs cannot now revive that same claim. It is barred by *res judicata* and should be dismissed.

Respectfully submitted,


*/s/ Steven R. Ruby*
Brian A. Glasser (WVSB #6597)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
BAILEY GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
bglasser@baileyglasser.com
sruby@baileyglasser.com
rfranks@baileyglasser.com
**Counsel for Cardinal Health, Inc. in Cabell County action**

*/s/ David R. Pogue*
Michael W. Carey (WVSB #635)
David R. Pogue (WVSB #10806)
Carey, Scott, Douglas & Kessler, PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
mwcarey@csdlawfirm.com
drpogue@csdlawfirm.com
***Counsel for Cardinal Health, Inc. in The City of Huntington action***

Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard@wc.com
ahardin@wc.com
***Counsel for Cardinal Health, Inc.***

## **CERTIFICATE OF SERVICE**

I, Steven R. Ruby, counsel for Defendant Cardinal Health, do hereby certify that service of the foregoing **REPLY IN SUPPORT OF CARDINAL HEALTH'S MOTION FOR SUMMARY JUDGMENT: RES JUDICATA AND RELEASE OF CLAIMS** was filed electronically via the CM/ECF electronic filing system and served on all counsel registered in the system.

*/s/ Steven R. Ruby*
Steven R. Ruby