**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

THE CITY OF HUNTINGTON,

      Plaintiff,

v.                                                                          CIVIL ACTION NO. 3:17-01362

AMERISOURCEBERGEN DRUG
CORPORATION, et al.,

      Defendants.

_____

CABELL COUNTY COMMISSION,

      Plaintiff,

v.                                                                          CIVIL ACTION NO. 3:17-01665

AMERISOURCEBERGEN DRUG
CORPORATION, et al.,

      Defendants.

_____

**DEFENDANT MCKESSON CORPORATION'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS OR FOR SUMMARY JUDGMENT
ON *RES JUDICATA* AND RELEASE GROUNDS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................ 1

ARGUMENT .................................................................................................................... 3

I.      THE COUNTY AND CITY'S CLAIM IS BARRED BY *RES JUDICATA*. ................... 3

        A.      The County and City Are in Privity with the State. ................................. 3

        B.      The State's Suit and the Current Suit Rely on the Same Alleged Facts. .............. 12

II.     THE STATE RELEASED THE COUNTY AND CITY'S CLAIM. .............................. 14

        A.      The Plain Language of the Settlement Agreement Requires Dismissal of
                the County and City's Successive Suit. ................................................ 14

        B.      The Attorney General Is Authorized to Represent and Settle the Claims of
                Its Counties, Municipalities, and Residents. ........................................ 16

CONCLUSION ................................................................................................................. 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Sport Fishing Ass'n v. Exxon Corp.*,
    34 F.3d 769 (9th Cir. 1994) .........................................................................................11, 16

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*,
    458 U.S. 592 (1982)........................................................................................................5, 7

*Beahm v. 7 Eleven, Inc.*,
    223 W.Va. 269, 672 S.E.2d 598 (2008) .............................................................................13

*Calhoun Cty. Court v. Mathews*,
    99 W.Va. 483, 129 S.E. 399 (1925) ....................................................................................3

*In re Certified Question from U.S. Dist. Court for E. Dist. of Mich.*,
    638 N.W.2d 409 (Mich. 2002)..........................................................................................5, 7

*State ex rel. City of Charleston v. Bosely*,
    165 W.Va. 332, 268 S.E.2d 590 (1980) ..............................................................................8

*State ex rel. City of Charleston v. Coghill*,
    156 W.Va. 877, 207 S.E.2d 113 (1973).............................................................................8

*Cmty. Commc'ns Co. v. City of Boulder, Colo.*,
    455 U.S. 40 (1982)...............................................................................................................3

*County of Boyd v. U.S. Ecology, Inc.*,
    48 F.3d 359 (8th Cir. 1995) .........................................................................................10, 11

*Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc.*,
    239 W.Va. 549, 803 S.E.2d 519 (2017)...............................................................11, 12, 13

*State ex rel. Discover Fin. Servs., Inc. v. Nibert*,
    231 W.Va. 227, 744 S.E.2d 625 (2013)..................................................................5, 6, 7, 16

*Envtl. Def. Fund v. Higginson*,
    631 F.2d 738 (D.C. Cir. 1979) ...........................................................................................9

*Gribben v. Kirk*,
    195 W.Va. 488, 466 S.E.2d 147 (1995)...........................................................................3, 4

*Kansas v. Colorado*,
    1997 WL 33796878 (U.S. Sept. 9, 1997) ..........................................................................11

*Keith v. Aldridge*,
    900 F.2d 736 (4th Cir. 1990) ..................................................................15

*McCallister v. Nelson*,
    186 W.Va. 131, 411 S.E. 456 (1991) ........................................................3

*State ex rel. McGraw v. Burton*,
    212 W.Va. 23, 569 S.E.2d 99 (2002) ........................................................7

*State ex rel. Miller v. Stone*,
    216 W.Va. 379, 607 S.E.2d 485 (2004) ...................................................15

*Mormon Church v. United States*,
    136 U.S. 1 (1890) ......................................................................................7

*State ex rel. Morrisey v. AmerisourceBergen Drug Corp.*,
    2014 WL 12814021 (Boone Cty. Cir. Ct. Dec. 12, 2014) ...................4, 11

*State ex rel. Morrisey v. Pfizer, Inc.*,
    969 F. Supp. 2d 476 (S.D. W. Va. 2013) ..................................................6

*State ex rel. Morrisey v. West Virginia Office of Disciplinary Counsel*,
    234 W.Va. 238, 765 S.E.2d 769 (2014) ................................................4, 6

*Nash Cty. Bd. of Educ. v. Biltmore Co.*,
    640 F.2d 484 (4th Cir. 1981) ........................................................... *passim*

*New York v. Beretta*,
    315 F. Supp. 2d 256 (E.D.N.Y. 2004) ...................................................8, 9

*Perrine v. E.I. du Pont de Nemours & Co.*,
    225 W.Va. 482, 694 S.E.2d 815 (2010) ...................................................15

*Pocahontas Land Corp. v. Evans*,
    175 W.Va. 304, 332 S.E.2d 604 (1985) ...................................................15

*Richardson v. Church of God Int'l*,
    2014 WL 4202619 (S.D. W. Va. Aug. 22, 2014) .....................................12

*State ex rel. Riffle v. Ranson*,
    464 S.E.2d 763 (W. Va. 1995) ...................................................................7

*Rowe v. Grapevine Corp.*,
    206 W.Va 703, 527 S.E.2d 814 (W. Va. 1999) .......................................16

*Satsky v. Paramount Commc'ns, Inc.*,
    7 F.3d 1464 (10th Cir. 1993) ...................................................................12

*South Carolina v. North Carolina,*
    558 U.S. 256 (2010)........................................................................................10

*State ex rel. State Line Sparkler of WV, Ltd. v. Teach,*
    187 W.Va. 271, 418 S.E.2d 585 (1992)..............................................................8

*State v. City of Dover,*
    891 A.2d 524 (N.H. 2006) ................................................................................9

*Swift & Co. v. Hocking Valley Ry. Co.,*
    243 U.S. 281 (1917)........................................................................................10

*Tektel, Inc. v. United States,*
    116 Fed. Cl. 612 (2013) ..................................................................................10

*Wisconsin Pub. Intervenor v. Mortier,*
    501 U.S. 597 (1991)..........................................................................................3

**Constitution and Statutes**

W. Va. Const. art. IX § 11 ......................................................................................6, 9

W. Va. Code § 7-1-3kk ...............................................................................................7

W. Va. Code § 7–4–1 ..................................................................................................6

W. Va. Code § 8–12–5..................................................................................................7

Defendant McKesson Corporation ("McKesson") hereby submits this Reply Memorandum of Law in support of its Motion to Dismiss or for Summary Judgment on *Res Judicata* and Release Grounds of the claim asserted by Cabell County Commission (the "County") and the City of Huntington (the "City" and, collectively, "Plaintiffs") in the operative Corrected Joint and Third Amended Complaint ("Compl.").

## INTRODUCTION[1]

Plaintiffs insist that their lawsuit is exempt from the doctrines of *res judicata* and release on the ground that the State of West Virginia is powerless to resolve litigation relating to what Plaintiffs themselves call a public health crisis "that is devastating families and communities across the state." Compl. ¶ 1151. A statewide crisis, in Plaintiffs' view, can only be redressed via iterative, individualized lawsuits brought by the hundreds of counties, municipalities, and other local government entities within West Virginia's borders. *See* Opp. 13–19, 24–25. That is precisely backwards: just ***one*** lawsuit (the State's), not hundreds, is necessary to resolve claims that "[d]istributors of prescription opioids [unlawfully] showered the State of West Virginia" with pills. Compl. ¶ 4. Because that lawsuit has already taken place, and a final judgment has been entered, the tag-along lawsuits by the County and City must be dismissed.

The State's lawsuit, brought in its *parens patriae* capacity, sought to address injuries to West Virginia citizens as a result of opioid addiction and overdose. *See, e.g.*, State Compl. ¶¶ 20, 26, 33, 408. That is precisely what Plaintiffs aim to address with their public nuisance claim in this successive suit. *See* Compl. ¶ 1417 ("The significant interference with rights common to the general public" includes "[a] staggering increase in opioid abuse, addiction, overdose, injuries, and

---

[1]    All emphasis herein has been added and internal quotation marks and citations omitted unless otherwise noted.

deaths"). Plaintiffs insist that privity cannot exist when claims of "overlapping governmental entities" are involved. Opp. 16. But that is precisely why privity *must* exist when the Attorney General asserts *parens patriae* claims on behalf of the State's citizens, lest every "overlapping" county, city, board of education, and other municipal corporation be able to bring successive suits against the same defendant for the same alleged misconduct involving the same statewide public health crisis.

Plaintiffs are likewise wrong to assert that the Settlement Agreement between McKesson and the State does not cover their claims. That Agreement released, *inter alia*, "any and all claims for damages or relief of any nature whatsoever related to the allegations in the [State's] Litigation," and "any and all claims relating to any act, conduct, error, or omission in distributing controlled substances in West Virginia." Settlement Agreement at 4–5.[2] The allegations here are indisputably "related" to those in the State's suit, and indisputably concern "distributing controlled substances in West Virginia."

Ignoring the plain language of the McKesson Settlement Agreement, Plaintiffs point to a state trial court's denial of a motion to dismiss filed by a *different defendant* that raised different arguments about a settlement agreement that contained materially different terms. None of that is binding on this Court. Nor is any of it relevant to McKesson's motion, which concerns different release language that *no court* has construed. The motion here raises distinct issues, unique to McKesson and based on its separate settlement agreement with the State. The County and City's claims against McKesson cannot succeed under the well-established and independent doctrines of *res judicata* and release.

---

[2]   *See also* Br. 15–16.

## ARGUMENT

## I.  THE COUNTY AND CITY'S CLAIM IS BARRED BY *RES JUDICATA*.

Plaintiffs' public nuisance claim is barred by *res judicata* because (i) the County and City are in privity with the State; and (ii) the State's suit and the current suit rely on the same alleged facts.[3]

### A.  The County and City Are in Privity with the State.

Plaintiffs do not dispute that "nonparties can be bound to a judgment or ruling where they are in privity with parties to the prior litigation."  Br. 6 (quoting *Gribben v. Kirk*, 195 W.Va. 488, 498 n.21, 466 S.E.2d 147, 157 n.21 (1995)).  Because the interests of the County and City were adequately represented in the State's prior lawsuit against McKesson, they are in privity with the State, and their arguments to the contrary are unavailing.[4]

The County and City, as mere creatures of the State, may not relitigate claims already litigated to final judgment by the State.  *See Calhoun Cty. Court v. Mathews*, 99 W.Va. 483, 129 S.E. 399, 401 (1925) ("The county is a mere creature of the [State]."); *McCallister v. Nelson*, 186 W.Va. 131, 135, 411 S.E. 456, 460 (1991) ("municipalities are creatures of the State").[5]  This is

---

[3]  Plaintiffs do not dispute that the final judgment requirement is satisfied.  *See* Opp. 10 n.40.

[4]  Indeed, by asserting that McKesson is liable to the County and City because of alleged violations of the WVCSA, Plaintiffs *necessarily* put themselves in privity with the State.  Br. 10–11.  Plaintiffs cite no authority that supports their transparent attempt to recover for purported violations of a statute that gives them no private right of action and whose enforcement is vested exclusively with the State.

[5]  *Accord Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 607–08 (1991) ("The principle is well settled that local governmental units are created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them in its absolute discretion."); *Cmty. Commc'ns Co. v. City of Boulder, Colo.*, 455 U.S. 40, 53–54 (1982) ("There may be cities, counties, and other organized bodies within limited legislative functions, but they are all derived from, or exist in, subordination to" the "States of the Union."); Br. 17–18 & n.10.

(continued…)

particularly so where, as here, the State litigated its prior suit as *parens patriae* to redress harms arising from injury to its citizens—*i.e.*, "the effects of [the] epidemic of prescription drug addiction," State Compl. ¶ 26; *see also id.* ¶ 408—and the County and City have now sued to redress harms arising from injury to subsets of those same citizens, *see* Compl. ¶¶ 37–38 ("The distribution, sale, and diversion of opioids … into the City of Huntington and into Cabell County … created the foreseeable opioid crisis and opioid public nuisance," including "opioid abuse, addiction, morbidity, and mortality"); *see also* Br. 9–10.[6]  Permitting states, counties, cities, and other municipal corporations to bring successive lawsuits based on the same alleged wrongdoing and the same injuries to the same people would open "the door to countless varieties of manipulation." *Gribben*, 195 W.Va. at 498 n.21, 466 S.E.2d at 157 n.21.

Plaintiffs' principal response is that the Attorney General lacked "*parens patriae* authority to abate the public nuisance." Opp. 2.[7]  But that argument is contrary to settled law.  The West Virginia Attorney General has common-law authority to "bring ***any*** action which he thinks necessary to protect the public interest," *State ex rel. Morrisey v. West Virginia Office of*

---

[6]   The County and City's claimed damages derive from injuries to State residents.  *See* Compl. ¶ 1476 ("But for the opioid-addiction epidemic [affecting County and City residents] … Plaintiff would not have lost money."); *see also, e.g., id.* ¶¶ 19, 1437 (enumerating "necessary and costly responses to the opioid crisis [such as] handling of emergency responses to overdoses, providing addiction treatment, handling opioid-related investigations … treating opioid-addicted newborns … burying the dead").

[7]   The Opposition's insistence (at 3, 9–10, 18) that the State "did not seek abatement as a remedy" is both irrelevant and incorrect.  It is irrelevant because *res judicata* does not require the parties in each suit to seek identical legal remedies; the doctrine requires that the actions be founded on similar factual allegations.  *See* Opp. 23 (conceding that "*res judicata* may apply to both claims brought and claims which could have been brought"); *see also infra* Part I.B.  It is incorrect because the State's Complaint repeatedly discussed harm it would suffer "unless the … public nuisance is abated," State Compl. ¶ 418; *see also id.* ¶¶ 412, 417, and its prayer for relief included a request for "[e]quitable relief," *id.* at p. 59 ¶¶ 4, 9.  (For the avoidance of doubt, McKesson does not agree that the monetary relief Plaintiffs have requested in this case is either equitable in nature or abatement, properly construed.)

4

*Disciplinary Counsel*, 234 W.Va. 238, 254,765 S.E.2d 769, 785 (2014), such as "a *parens patriae* suit to vindicate 'quasi-sovereign' interests on behalf of [the State's] citizens," *State ex rel. Morrisey v. AmerisourceBergen Drug Corp.*, 2014 WL 12814021, at *5 (Boone Cty. Cir. Ct. Dec. 12, 2014).  And "it must surely be conceded that, if the health and comfort of the inhabitants of a State are threatened, the State is the proper party to represent and defend them."  *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 603–04 (1982).  Indeed, the common-law "prerogative of *parens patriae*" to sue for "***the abatement of public nuisances***" is "inherent in the supreme power of every State."  *Id.* at 600, 603–05.  Such common-law authority is not limited to merely representing citizens; it also extends to protecting the interests of political subdivisions. *See* Br. 7, 17; *see also, e.g.*, *Nash Cty. Bd. of Educ. v. Biltmore Co.*, 640 F.2d 484, 495 (4th Cir. 1981) ("The Attorney General as legal representative of the sovereign and its constitutional subdivisions had both common law and statutory power to bind the State and the subdivisions by his acts."); *In re Certified Question from U.S. Dist. Court for E. Dist. of Mich.*, 638 N.W.2d 409, 414 (Mich. 2002) ("Because the Attorney General possesses the authority to sue on behalf of the state in matters of state interest, it follows that the Attorney General necessarily has the authority to sue on behalf of the state's political subdivisions in matters of state interest.").

The Opposition (at 2) contends that the Attorney General's common-law authority must be "expressly given" by the Legislature, but that argument was squarely rejected by the Supreme Court of Appeals in *State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 231 W.Va. 227, 744 S.E.2d 625 (2013).  In a prior case, *Manchin v. Browning*, the court interpreted West Virginia's Constitution to limit the powers of its Attorney General to those expressly provided for by the Legislature, but *Nibert* "expressly overruled" *Browning* "based upon the clear language of our Constitution."  231 W.Va. at 247–48, 744 S.E.2d at 645–46.  *Nibert* established that the

5

presumption goes the other way:  "we make clear and once again expressly hold that the Office of Attorney General retains inherent common-law powers, when not expressly restricted or limited by statute."  *Id.* at 247, 645.[8]

The Opposition (at 2) also erroneously insists that the Legislature "***impliedly*** supplanted" "whatever common law authority" the West Virginia Attorney General had.  That argument fails at the outset:  the Supreme Court of Appeals has recognized that any legislative divestiture of the Attorney General's traditional authority must be "expressly" and "plainly manifested."  *Nibert*, 231 W.Va. at 247–49, 744 S.E.2d at 645–47.  Plaintiffs do not—and cannot—contend that any statute ***expressly*** and ***plainly*** divests the Attorney General of his common-law authority to bring *parens patriae* actions to abate a public nuisance.   Instead, Plaintiffs cite various statutes recognizing additional areas of State authority and then invoke the *expressio unius* canon of construction to divine significance from the absence of an express mention of the State's common-law authority to abate a nuisance.  *See* Opp. 15 & nn.57–59, 17 n.66.  But that was precisely the argument that *Nibert* refused to apply in determining the scope of "the Attorney General's inherent common law authority."  231 W.Va. at 250–51, 744 S.E.2d at 648–49.[9]

---

[8]   Plaintiffs' suggestion that *Nibert*'s reasoning—and overruling of *Manchin*—was somehow limited to "the common law power of the WVAG to hire outside counsel," Opp. 16 n.61, is meritless and finds no support in the Court's opinion.

[9]   The Opposition (at 14–15) searches for support in *West Virginia Office of Disciplinary Counsel*, but that decision merely "follow[ed] the teachings of *Nibert.*"  234 W.Va. at 253, 764 S.E.2d at 784.  In that case, it was significant that "Virginia had stripped the Attorney General of his common law powers to prosecute criminal offenses" "over sixty years *before* West Virginia became a state" by vesting such authority instead in "elected county prosecutors."  *Id.* at 256, 787.  Since "[t]he political structure of West Virginia has its roots in Virginia," the Court understood the equivalent vesting of such authority in county prosecutors pursuant to "West Virginia Constitution article 9, § 1 … and the Legislature's enactment of W. Va.Code § 7–4–1" to, given the historical circumstances, abolish "the common law criminal prosecutorial authority of the Attorney General."  *Id.* at 253–60, 784–91.  Plaintiffs do not—and cannot—identify an analogous historical tradition of stripping State Attorney Generals of (continued…)

For the same reason, statutes that merely authorize cities or counties to abate public nuisances under specified conditions—such as Sections 7–1–3kk and 8–12–5 of the West Virginia Code—do not divest the Attorney General of his common-law *parens patriae* authority.  *See Nibert*, 231 W.Va. at 249, 744 S.E.2d at 647 ("the common law is not to be construed as altered or changed by statute, unless legislative intent to do so be plainly manifested").  Other courts— including the Fourth Circuit—have rejected analogous arguments-by-implication.  *See, e.g.*, *Nash Cty.*, 640 F.2d at 495 ("The statutes relied upon do create a unique right in the school boards"— "to sue and be sued in their own behalf"—"but these statutes do not contradict the Attorney General's right to represent such school districts."); *In re Certified Question*, 638 N.W.2d at 414 ("the authority of counties to sue in matters of local interest cannot be used to undermine the authority of the state to sue in matters of state interest").[10]

---

their *parens patriae* authority by vesting such authority instead in civil-side county attorneys. *Cf. State ex rel. Morrisey v. Pfizer, Inc.*, 969 F. Supp. 2d 476, 492 (S.D. W. Va. 2013) ("The power to sue as *parens patriae*—literally, parent of the country—is 'inherent in the supreme power of every State.'" (quoting *Mormon Church v. United States*, 136 U.S. 1, 57 (1890))). The Opposition's reliance (at 14–15) on *State ex rel. Riffle v. Ranson*, 464 S.E.2d 763 (W. Va. 1995) is equally unavailing; that decision does not concern the powers of the Attorney General and, moreover, pre-dates *Nibert* and the overruling of *Manchin v. Browning*.

[10]   The constitutional avoidance canon further cautions against Plaintiffs' interpretation of these statutory provisions, as any attempt by the Legislature to strip the Attorney General of his authority to abate statewide nuisances via *parens patriae* actions would likely be unconstitutional.  *See Nibert*, 231 W.Va. at 246, 744 S.E.2d at 644 ("there are certain core functions of the Office of Attorney General that are inherent in the office, of which the Office of Attorney General may not be [constitutionally] deprived, and which may not be transferred to or set up in conflict with other offices"); *accord State ex rel. McGraw v. Burton*, 212 W.Va. 23, 39, 569 S.E.2d 99, 115 (2002) ("the State and her citizens generally ... are, pursuant to the constitutional structure established by the framers, entitled to a governmental structure wherein a central legal office … can consider the issues in a given case in light of the broader interests of the State"); *Snapp*, 458 U.S. at 603–04 (explaining that the States' *parens patriae* authority to demand "abatement of outside nuisances" is vitally important as it represents an alternative to civil war).

7

Plaintiffs fare no better with their surprising suggestion that the opioid crisis is a matter of "local concern."  Opp. 17.  Matters of local concern include "penaliz[ing] violations of county building codes," *State ex rel. State Line Sparkler of WV, Ltd. v. Teach*, 187 W.Va. 271, 277, 418 S.E.2d 585, 591 (1992); "administrative authority over local development," *State ex rel. City of Charleston v. Bosely*, 165 W.Va. 332, 335, 268 S.E.2d 590, 593 (1980); and authority to "determine the appropriate mix of public and private uses of a public parking facility," *State ex rel. City of Charleston v. Coghill*, 156 W.Va. 877, 879, 207 S.E.2d 113, 115 (1973).  In contrast, as Plaintiffs themselves allege, the opioid crisis is a matter of statewide concern.  *E.g.*, Compl. ¶¶ 11, 1151 (the "crisis [exists] at the local, state and federal levels" and is a "problem that is devastating families and communities across the state").  And even if the opioid crisis were a matter of local concern, that would mean only that the Legislature "is entitled to delegate power to a municipal corporation" to address it—not that the State lacks that power itself.  *See State ex rel. City of Charleston v. Coghill*, 156 W.Va. 877, 879, 207 S.E.2d 113, 115 (1973) ("Under the police power of the State, the Legisl[a]ture has power to provide for the protection of the safety, health, morals, and general welfare of the public, and may delegate such powers to municipalities created by it.").

The County and City also broadly assert that, "where the claims of two overlapping governmental entities are involved, privity [can]not exist."  Opp. 16 (citing *New York v. Beretta*, 315 F. Supp. 2d 256 (E.D.N.Y. 2004)).  But numerous courts, including the Fourth Circuit, have held otherwise.  *See Nash Cty.*, 640 F.2d at 485–86; *see also* Br. 9–10 & n.7.  And the only case

cited by Plaintiffs—*New York v. Beretta*, 315 F. Supp. 2d 256 (E.D.N.Y. 2004)—only discussed privity in dicta which, moreover, was based on unique circumstances that are not present here.[11]

*Beretta* does not support the broad proposition that local governments may bring suit notwithstanding a final judgment in a similar action brought by a state. *See* 315 F. Supp. 2d at 274. Instead, its privity dicta was based on a provision of the New York Constitution that enshrined "a bill of rights for local government and grant[ed] municipalities a wide latitude to legislate on matters of local concern," and a provision of the New York City Charter that provided its corporation counsel with "exclusive" authority "to conduct all the law business of the City of New York." *Id.* at 268, 274. The West Virginia Constitution contains no comparable provisions. *Compare* N.Y. Const. art. IX §§ 1–2 (requiring the New York legislature to "secure to [local governments certain] rights, powers, privileges and immunities granted to them by this constitution"), *with* W. Va. Const. art. IX § 11 (granting county commissions, "***under such regulations as may be prescribed by law***, … the superintendence and administration of the internal police and fiscal affairs of their counties").[12] The *Beretta* reasoning—which was "confined to the circumstances of th[at] case," 315 F. Supp. 2d at 274—thus provides no support for Plaintiffs here.

---

[11] *Beretta* held that *res judicata* was not warranted because the prior decision did "not constitute a final judgment on the merits" since the dismissal there was "based on the insufficiency of the pleadings"—and in that circumstance "a new action that remedies the deficiency will not be precluded." 315 F. Supp. 2d at 264–65. The court's subsequent lengthy dissertation on privity between States and their political subdivisions was not essential to the decision.

[12] In *Beretta*, moreover, the political relationship between New York State and New York City was "acrimonious" and their interests were "often different," with the two governments at loggerheads on the regulation of firearms. 315 F. Supp. 2d at 273–74 ("Stricter views on gun control have led New York City to promulgate a layer of firearms regulation on top of the framework established by the State."). Here, by contrast, Plaintiffs and the State appear to be in agreement—not at loggerheads—on the issue of opioids in West Virginia. For instance, the County and City have not promulgated "a layer of [opioid] regulation on top of the framework established by the State," *see id.* at 273, and the Settlement Agreement between the State and (continued…)

9

Plaintiffs' assertion that they have "responsibility to provide many … government services impacted by the opioid epidemic," Opp. 18, is likewise unavailing.[13]  Even accepting as true the dubious premise that Plaintiffs have "a more direct economic interest … than the state" in addressing the opioid epidemic, that is not sufficient to establish the absence of privity.  *Envtl. Def. Fund v. Higginson*, 631 F.2d 738, 740 (D.C. Cir. 1979); *see also, e.g.*, *State v. City of Dover*, 891 A.2d 524, 531 (N.H. 2006) ("While the cities may have a direct economic interest in recovering for contamination to their water supplies, this economic interest is represented by the State's suit.").[14]  Moreover, Plaintiffs' economic interest does not separate them "from the collective interest of all other citizens and creatures of the state," *South Carolina v. North Carolina*, 558 U.S. 256, 274–75 (2010), including the numerous other political subdivisions that have sued to recover for the same alleged injury involving the same government services.  *See* Br. 8–9.[15]

---

McKesson secures funding for programs that are intended to help State citizens, including Plaintiffs' residents, *see* Settlement Agreement at 8–9.

[13]  Plaintiffs have renounced any claim to past "damages" and instead purport to seek only the prospective remedy of abatement.  They have accordingly abandoned any claims based upon their alleged economic injury in this case.

[14]  If showing a more "direct economic interest" sufficed to avoid the presumption of privity, then private citizens would rarely be precluded from relitigating a State's *parens patriae* suit—but Plaintiffs do not dispute that *res judicata* normally applies in such a circumstance.  *See* Opp. 17 & n.67.

[15]  The Opposition (at 13 & n.13) insists that the Attorney General "disclaimed any intent to represent the interests of its political subdivisions," relying on a court transcript from an August 22, 2019 hearing in which an attorney stated that the Attorney General "do[es] not *represent* the political subdivisions."  That argument is both misleading and irrelevant.  Of course the Attorney General does not "represent" entities like Plaintiffs; they have independent counsel.  The issue instead is whether the *interests* of political subdivisions were adequately represented—and the answer to that legal question does not, in any event, turn on a post-hoc inquiry into whether a party has "disclaimed any intent" to do so.  *See generally Tektel, Inc. v. United States*, 116 Fed. Cl. 612, 626 (2013) (a "court cannot be controlled by [parties' assertions] on a question of law" (quoting *Swift & Co. v. Hocking Valley Ry. Co.*, 243 U.S. 281, 289 (1917))); *Nash Cty.*, 640 F.2d at 496 ( "Attorney General's failure to … consult with the [County] Board prior to settlement … [was] of no moment" in privity analysis).

Finally, the Opposition (at 17) asserts that "barring the County from litigating its claims would interfere with the proper delineation of authority between the local governments" and the State and would "defeat the ends of justice."  Precisely the opposite is true.  "[R]espect for sovereign dignity requires us to recognize that [a State suing in *parens patriae*] properly represents [a subdivision] in [a] dispute."  *South Carolina*, 558 U.S. at 275.  If a County's action "were not precluded [after litigation by a State], … a suit could well follow by [a] village … which if unsuccessful might well be followed by a class action on behalf of local residents."  *County of Boyd v. U.S. Ecology, Inc.*, 48 F.3d 359, 362 (8th Cir. 1995).  But "*res judicata* is based on a recognized public policy to quiet litigation and on a desire that individuals should not be forced to litigate an issue more than once."  *Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc.*, 239 W.Va. 549, 559 n.32, 803 S.E.2d 519, 529 n.32 (2017).

In sum, Plaintiffs' claim is barred because the State, as *parens patriae*, already brought and settled a suit against McKesson "on behalf of the citizens of the State" in order to address injuries to West Virginia residents located in "counties and small communities throughout the state."  State Compl. ¶¶ 20, 26, 49; *see also id.* ¶ 408 (public nuisance claim alleging that McKesson "unreasonably interfered with the right of West Virginia Citizens to be free from unwarranted injuries, addictions, diseases and sicknesses, overdoses from prescription pain medication").  Through that *parens patriae* action, the State sought to vindicate "a general interest that [it] has in the well-being of its citizens."  *Kansas v. Colorado*, 1997 WL 33796878, at *39 (U.S. Sept. 9, 1997).  Here, Plaintiffs seek to redress through their public nuisance claim the very same injury to a subset of the very same "general public" whose addiction and overdose formed the basis of the State's claim.  *See AmerisourceBergen Drug Corp.*, 2014 WL 1281401, at *8 ("Our Supreme Court of Appeals repeatedly has explained [that] … a public nuisance affects the general

11

public.").[16]   Because the State has "already recovered damages on behalf of the public," the doctrine of *res judicata* precludes the County and City from recovering based on the same injuries (addiction and overdose) to the same people a second time.   *See Alaska Sport Fishing Ass'n v. Exxon Corp.*, 34 F.3d 769, 774 (9th Cir. 1994); *see also County of Boyd*, 48 F.3d at 361–62 ("In the [prior] cases, the county's residents were represented by the state …; in the present action, they are represented by the County"; "the plaintiffs in the [prior] cases are for preclusion purposes the same as those represented by the County here.").

### B.   The State's Suit and the Current Suit Rely on the Same Alleged Facts.

In addition to privity, *res judicata* requires either (1) an "identity" between the causes of action asserted in the two suits, or (2) that the causes of action asserted in the subsequent suit "could have been resolved, had [they] been presented, in the prior action."   *Dan Ryan*, 239 W.Va. at 560, 803 S.E.2d at 530.   Both of those disjunctive elements are satisfied here, and Plaintiffs' contrary arguments are unavailing.

Two causes of action are "identical" for *res judicata* purposes if "the same evidence would support both actions."   *Id.*; *accord Richardson v. Church of God Int'l*, 2014 WL 4202619, at *4 (S.D. W. Va. Aug. 22, 2014) (Faber, J.) ("A cause of action consists of **the fact or facts** which establish or give rise to a right of action.").   Plaintiffs do not dispute that the same evidence would support both their claims and the State's claims—nor could they.   *See* Br. 10–11.   Instead, Plaintiffs assert that "claims for abatement of a public nuisance … are not the same … as … damages claims

---

[16]   *See also, e.g.*, Compl. ¶¶ 37–38 ("The distribution, sale, and diversion of opioids in West Virginia ('the State') and into the City of Huntington and Cabell County and surrounding areas… created the foreseeable opioid crisis and opioid public nuisance" including "opioid abuse, addiction, morbidity, and mortality"); *see also id.* ¶ 1417 ("The significant interference with rights common to the general public" includes "[a] staggering increase in opioid abuse, addiction, overdose, injuries, and deaths").

(continued…)

raised by the State."  Opp. 2; *see also id.* at 23 (asserting that "the County and City [are not] bringing the same claims").[17]  But that is irrelevant.  For purposes of *res judicata*, it is an identity of the facts that is required, not an identity of the relief requested.  Because Plaintiffs "never once make the argument that the substance of the claims is different nor that they would involve different evidence," this "element has been met."  *Richardson*, 2014 WL 4202619, at *4; *see also Nash Cty.*, 640 F.2d at 485–86, 488 (causes of action identical notwithstanding fact that county board of education sought different relief than the State where "[b]oth suits deal with the same subject-matter," "allege the same wrongful act," and "involve the same operative facts and the same basic delict or wrong").

This element is also satisfied because Plaintiffs' claim "could have been resolved, had [it] been presented, in the [State's] action."  Br. 13 (quoting *Dan Ryan*, 239 W.Va. at 560, 803 S.E.2d at 530).  The County and City do not dispute that their public nuisance claim "arises out of the same core of operative facts" as the State's claim.  Br. 13 (quoting *Beahm v. 7 Eleven, Inc.*, 223 W.Va. 269, 276, 672 S.E.2d 598, 605 (2008)).  Instead, Plaintiffs argue that because their joinder in the State's suit would have been "permissive, not mandatory," *res judicata* is "inappropriate" here.  Opp. 23.  But Plaintiffs cite no authority for that proposition, and there is none.  To the contrary, it is well-established that "*res judicata* may operate to bar a subsequent proceeding even if the precise cause of action involved was not actually litigated in the former proceeding so long

---

[17]  The only decision that Plaintiffs (at Opp. 23 n.84) cite for support, *Satsky v. Paramount Commc'ns, Inc.*, 7 F.3d 1464 (10th Cir. 1993), did not involve West Virginia law and did not analyze the third element of *res judicata*.  Instead, *Satsky* concluded that private citizens were not in privity with the State to the extent their "claims involve injuries to purely private interests."  *Id.* at 1470.  *Satsky* is thus wholly inapposite—not only does it concern a different element under a different jurisdiction's law, Plaintiffs' *public* nuisance claim does not concern "purely private interests."

13

as the claim *could have* been raised and determined." *Beahm*, 223 W.Va. at 275, 672 S.E.2d at 604.

## II.      THE STATE RELEASED THE COUNTY AND CITY'S CLAIM.

### A.      The Plain Language of the Settlement Agreement Requires Dismissal of the County and City's Successive Suit.

The unambiguous language of the McKesson Settlement Agreement released the County and City's claim.  Br. 13–15.

The McKesson Settlement Agreement (at 4) expressly released "any and all claims" that the State "asserted or could have asserted [in its] *parens patriae* capacity … based on, related to, or arising out of Defendant's conduct as a distributor of pharmaceuticals in the State of West Virginia."  The agreement made clear that the release extends, *inter alia*, to:

- "any and all claims the Attorney General has or could have asserted with respect to public health, safety, and well-being in the State of West Virginia"; and

- "any and all claims for damages or relief of any nature whatsoever related to the allegations in the Litigation, including any and all claims relating to any act, conduct, error, or omission in distributing controlled substances in West Virginia."

Settlement Agreement at 4.  Accordingly, the plain language of the McKesson Settlement Agreement encompasses the claims asserted by Plaintiffs here.  *See supra* Part I.A.

Plaintiffs argue that the release does not encompass their claims because they "are neither a State agency nor an instrumentality of the State."  Opp. 24.  But nothing in the ***McKesson*** Agreement limits the terms of the release to claims by State agencies or instrumentalities.  Nor, contrary to Plaintiffs' assertion (at Opp. 26), does anything in the Agreement "exclude" Plaintiffs from the terms of the release.  Rather, the release expansively encompasses (1) "any and all claims of harm to the public generally," (2) "any and all claims in [the State's] representative capacity as

14

*parens patriae* concerning the Defendant's alleged wrongful conduct," and (3) any and all claims "growing out of, relating to, or concerning the Litigation," including claims "to protect the general health and well-being of all the citizens **and entities** of the State, whether natural persons or otherwise." Settlement Agreement at 3–5.

To circumvent the plain language of the McKesson Settlement Agreement, Plaintiffs purport to introduce the "negotiating history" between the State and a **different** defendant, Cardinal Health, Inc. ("Cardinal Health"). Opp. 2. But those communications can have no bearing on the question whether the State and **McKesson** "intended to foreclose through agreement litigation of a claim." *Keith v. Aldridge*, 900 F.2d 736, 741 (4th Cir. 1990).[18]

The Opposition (at 20) similarly faults McKesson for "settl[ing] its case with the WVAG … after watching Cardinal receive adverse rulings from a West Virginia trial court and the Supreme Court of Appeals of West Virginia interpreting functionally identical release language." But Plaintiffs' premise—that the two agreements contain "functionally identical release language"—is fundamentally flawed. The McKesson release, as described above, is different from and materially broader than the Cardinal Health release. Accordingly, even if Plaintiffs were correct that other courts have interpreted the State's agreement with Cardinal Health (they have not), that would be irrelevant **as to McKesson**.[19]

---

[18]  In addition, as Plaintiffs themselves concede, *see* Opp. 25 n.87, parole evidence is inadmissible where, as here, an agreement's language is plain. *See, e.g.*, *Perrine v. E.I. du Pont de Nemours & Co.*, 225 W.Va. 482, 511, 694 S.E.2d 815, 844 (2010) ("This Court has long recognized that, '[w]here the intent of the parties is clearly expressed in definite and unambiguous language …, the court is required to give effect to such language and, ordinarily, will not resort to parole or extrinsic evidence.'" (quoting *Pocahontas Land Corp. v. Evans*, 175 W.Va. 304, 308, 332 S.E.2d 604, 609 (1985)); Br. 14–15 n.9.

[19]  Contrary to Plaintiffs' misleading suggestion, neither the West Virginia trial court nor the Supreme Court of Appeals actually interpreted the language of the Cardinal Health agreement. *See* ECF No. 242-6 at 4; ECF No. 242-7; *see also State ex rel. Miller v. Stone*, 216 W.Va. 379, 382 n.3, 607 S.E.2d 485, 488 n.3 (2004) ("rejection of … a petition for an extraordinary writ (continued…)

### B.    The Attorney General Is Authorized to Represent and Settle the Claims of Its Counties, Municipalities, and Residents.

The County and City are likewise wrong to assert that the State, acting through the Attorney General, "had no power" to release their claims.  Opp. 25.

Plaintiffs argue that there is "no authority for the proposition that one party has the power to bind a separate non-party to a contractual release."  *Id*.  There is, in fact, ample authority to that effect.  The Supreme Court of Appeals itself "expressly rejected" the "contention that [Plaintiffs'] absence as named parties to [a] settlement agreement … prevents the agreement from operating as a bar to their … claims"; "[t]he fact that the settlement agreement released [a separate party] rather than the individual Plaintiffs is not determinative."  *Rowe v. Grapevine Corp*., 206 W.Va 703, 716–17, 527 S.E.2d 814, 827–28 (W. Va. 1999) (collecting cases); *see also* Br. 16–17.

Under West Virginia law, the Attorney General has "extensive common-law powers." *Nibert*, 231 W.Va. at 246–47, 744 S.E.2d at 644–45.  Those inherent common-law powers include the power to bring suits—and the power to settle those suits—on behalf of the State, its citizens, and its constituent entities, including political subdivisions like Plaintiffs.  *See* Br. 15–16; *see also supra* Part I.A.  This is confirmed by the express terms of the Settlement Agreement (at 4), which releases "any and all claims" that "have been or could have been asserted" in the State's "representative capacity as *parens patriae*."

If Plaintiffs' position that the State lacks the authority to release their claims is accepted, it would have adverse public policy consequences that reach far beyond this case.  It would "severely limit the amount of damages [the State] could recover" in future litigation.  *Alaska Sport*, 34 F.3d at 772.  It would also create "a cumbersome system leading to almost ludicrous results," *Nash Cty*,

---

generally is not an indication that we find the lower court's judgment correct unless we specifically state as much").

640 F.2d at 496, as it would prevent the efficient and effective resolution of litigation involving matters of statewide concern.  The Court should therefore reject Plaintiffs' assertion that the State is powerless to release *parens patriae* claims arising out of matters of statewide concern.

## CONCLUSION

For the foregoing reasons, judgment should be entered in favor of McKesson.

Dated: March 25, 2020                    Respectfully submitted,

*/s/  Jeffrey M Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
**FLAHERTY SENSABAUGH BONASSO PLLC**
P.O. Box 3843
Charleston, WV 25338-3843
(304) 345-0200

Timothy C. Hester
Mark H. Lynch
Christian J. Pistilli
Laura Flahive Wu
Megan A. Crowley
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
(202) 662-6000

*Counsel for McKesson Corporation*

17

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on this 25th day of March, 2020, the foregoing **"Defendant McKesson Corporation's Reply in Support of Its Motion To Dismiss or for Summary Judgment on *Res Judicata* and Release Grounds"** was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.


*/s/  Jeffrey M Wakefield*
Jeffrey M. Wakefield (WVSB #3894)

18