**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

THE CITY OF HUNTINGTON,
     Plaintiff,

v.                                                                         CIVIL ACTION NO. 3:17-01362

AMERISOURCEBERGEN
DRUG CORPORATION, et al.,
     Defendants.

_____

CABELL COUNTY COMMISSION,

     Plaintiff,

v.                                                                         CIVIL ACTION NO. 3:17-01665

AMERISOURCEBERGEN
DRUG CORPORATION, et al.,
     Defendants.

_____

**OPPOSITION TO PLAINTIFFS' MOTION TO STRIKE**
**<u>DEFENDANTS' NOTICES OF NON-PARTY FAULT</u>**

     Having repeatedly alleged and asserted that the relief they seek on their public nuisance claim is an award of monies—literally, "***money damages***"—Plaintiffs now style their request for hundreds of millions of dollars as equitable "abatement costs," all in an effort to avoid West Virginia's Apportionment Statutes.  The Court should reject this about-face and deny Plaintiffs' motion.

     Plaintiff had it right in the beginning of this litigation when it asserted that the "Cabell County Commission seeks ***economic damages*** from the Defendant Wholesale Distributors to pay for the cost to permanently eliminate the hazards to public health and safety and abate the

temporary public nuisance."[1]  In opposing motions to dismiss, they said the same thing:  "[T]he Counties . . . brought these suits against the Defendants seeking ***damages*** to eliminate the hazard to public health and safety as well as to abate, or cause to be abated, the public nuisance."[2]  And when Plaintiffs filed a motion to sever all defendants except Defendants AmerisourceBergen Drug Corp., Cardinal Health, Inc., and McKesson Corp., they told Judge Polster that they intended to seek "***only*** money damages for the 'elimination of hazards to public health and safety and to abate or cause to be abated ... at public nuisance.'"[3]

In every version of the Complaint, the Motion to Sever, the Notice of Voluntary Dismissal, and their Position Statement, Plaintiffs also have asserted a claim for punitive damages.[4]  That claim is significant, because punitive damages can be awarded only if the litigant is seeking and obtains an award of "compensatory damages."  *See* W. Va. Code § 55-7-29(b)–(c) (requiring the jury to first find liability for "compensatory damages" and limiting punitive damage awards to "four times the amount of compensatory damages"); Syl. Pt. 1, *Garnes v. Fleming Landfill, Inc.*, 186 W. Va. 656, 413 S.E.2d 897 (1991) (jury may not "return punitive damages without finding compensatory damages").  Plaintiffs obviously understood that they were seeking compensatory

---

[1] *See, e.g.*, Case No. 3:17-cv-1665, Dkt. 1 (Cabell Complaint) at 34; *id.* at 35 ("[The] Commission seeks ***compensatory and punitive damages*** . . . for the creation of a public nuisance.").  All document-number citations are to the docket for the Cabell County Commission case, Case No. 3:17-cv-1665, unless otherwise indicated.  All emphases are added unless otherwise indicated.

[2] *See, e.g.*, Cabell Resp. to Motion to Dismiss Compl. (Dkt. 61) at 10; Cabell Resp. to Motion to Dismiss Second Am. Compl. (Dkt. 163) at 19 (arguing that relief was not limited to an injunction, but that "***[b]road damages*** are recoverable in a public nuisance claim").

[3] Pls' Motion to Sever (Dkt. 237) at 2 (quoting W. Va. Code § 7-1-3kk) (emphasis in original).

[4] Case No. 3:17-cv-1362, Dkt. 1-4 (Huntington Compl.) at 16; Case No. 3:17-cv-1362, Dkt. 47 (Huntington Second Am. Compl.) at 183; Cabell Complaint (Dkt. 1) at 35; Cabell Second Am. Compl. (Dkt. 134) at 317; Joint Third Am. Compl. (Dkt. 190) at 467; Pls' Motion to Sever (Dkt. 237) at 2; Pls' Notice of Voluntary Dismissal (Dkt. 240) at 2.

damages; otherwise, their offer to drop their claim for punitive damages in exchange for Defendants' agreement to a bench-trial was a meaningless offer.[5]

Plaintiffs' assertion that they "have waived all claims for damages," and that their "public nuisance claims seeking only the equitable remedy of abatement are not tort actions for compensatory damages," is word-play and not credible.[6]   The United States Supreme Court has cautioned that with "lawyerly inventiveness," any claim seeking legal relief can be phrased as one seeking equitable relief.   *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 211 n.1 (2002).   This is exactly why, when adjudicating cases, courts appropriately focus on the substance of the claim asserted, not self-serving labels affixed by counsel.   *See, e.g.*, *Gilbert v. City of Cambridge*, 932 F.2d 51, 57–58 (1st Cir. 1991) ("To prevent plaintiffs from making a mockery of the statute of limitations by the simple expedient of creative labelling—styling an action as one for declaratory relief rather than for damages—courts must necessarily focus upon the substance of an asserted claim as opposed to its form.").

In making the currently expedient argument that West Virginia's apportionment statute does not apply here, Plaintiffs borrow trouble for themselves elsewhere.   They claim that Section 55-7-13d(a)(2) of the West Virginia Code (the "2015 Act")[7] does not apply because their public

---

[5] Plaintiffs note that they have disclaimed punitive damages.   Case No. 3:17-cv-1362, Dkt. 225 (Pls' Mem. of Law in Support of Motion to Strike Def. Notices of Non-Party Fault, hereinafter "Pls' Mem.") at 5.   But that belated disclaimer (as of February 6) is beside the point.   The fact that Plaintiffs in their Complaint (and three amended complaints) sought punitive damages signifies that Plaintiffs understood that the underlying award they were seeking was *compensatory damages*.

[6] *Id*.

[7] Defendants made their non-party fault designations under § 55-7-13d(a)(2), which is one part of the Legislature's 2015 comprehensive rewriting of the law regarding comparative fault—now set forth in §§ 55-7-13a through 55-7-13d.   Reference herein to the 2015 Act encompasses all these sections.

nuisance claim accrued prior to the Act's effective date of May 25, 2015. ***That is a judicial admission that their nuisance claim is time-barred***. Accordingly, it does not matter what apportionment rules apply. To the extent that any timely claim for nuisance-causing conduct remains, it necessarily accrued after May 25, 2015, and so is subject to the 2015 Act.

## ARGUMENT

## I.   THE 2015 ACT APPLIES TO THE ONLY POTENTIALLY REMAINING NUISANCE CLAIM.

The 2015 Act became effective on May 25, 2015, and "applies to all causes of action arising or accruing on or after the effective date of its enactment." W. Va. Code § 55-7-13d(f) (2015). Plaintiffs contend the 2015 Act does not apply because their public nuisance claim accrued ***before*** May 25, 2015. Their exact words are: (1) "Plaintiffs' right to bring a public nuisance action against the Defendants seeking abatement first arose prior to May 25, 2015"; and (2) "Defendants' conduct that gave rise to the opioid epidemic first created an actionable public nuisance well before May 25, 2015."[8] These are judicial admissions that bar Plaintiffs' nuisance claims under the applicable one-year statute of limitations. The City of Huntington and Cabell County Commission did not file their lawsuits until January 19 and March 9, 2017, respectively, and so the City of Huntington may at most seek recovery based on wrongful conduct that occurred ***after January 19, 2016***, and the Cabell County Commission for wrongful conduct that occurred ***after March 9, 2016***—as fully documented and explained in Defendants' pending Motion for Summary Judgment re Statute of Limitations. Case No. 3:17-cv-1362, Dkt. 240 & 241 ("SJ-SOL").

As more fully addressed in that motion, the continuing-tort doctrine does not apply to Plaintiffs' claims. Defendants' allegedly wrongful conduct is not "continuing" in nature but rather

---

[8] Pls' Mem. at 11–12.

consists of discrete and separate events—shipments of medicines made in response to discrete and separate orders placed by pharmacies. This was not a continuing tort, but rather was a series of individual events that occurred over time. *See* SJ-SOL at 19–21. As such, Plaintiffs' potentially remaining claims concerns post-January 2016 conduct.

In a footnote, Plaintiffs conjure a distinction between the date of accrual and the date the statute of limitations begins to run. Pls' Mem. at 11 n.41 ("The date of accrual of a claim is distinct from the date the statute of limitations commences to run because the statute of limitations for a claim that has arisen is still subject to tolling doctrines."). But Plaintiffs have not alleged and cannot establish the elements necessary to establish fraudulent concealment or any other tolling doctrine. And because the continuing tort doctrine does not apply, Plaintiffs' only viable nuisance claim could only have accrued in January 2016 and thereafter, as discussed above. In any event, the continuing tort doctrine does not "toll" the statute of limitations. Even where it applies, the doctrine allows a plaintiff to recover damages only for conduct occurring **within the limitations period**, even though the allegedly wrongful conduct began outside the limitations period.[9]

For these reasons, the significance of Plaintiffs' motion lies, not in whether the 2015 Act applies, but in the fact that Plaintiffs have admitted that their nuisance claims are time-barred.

---

[9] Contrary to Plaintiffs' argument, under the continuing tort doctrine a new cause of action accrues with each successive invasion of interest, and for that reason recovery is limited to any new causes of action that arise within the statutory period. *See Taylor v. Culloden Pub. Serv. Dist.*, 214 W.Va. 639, 647 n.21, 591 S.E.2d 197, 205 n.21 (2003) (applying the continuing tort doctrine from *Graham*, but explaining that "the damages that [the plaintiffs] can recover … are *limited to the two-year period in time prior to the filing of their* [*nuisance*] *cause of action*"); Syl. Pt. 11, *Graham v. Beverage*, 211 W. Va. 466, 566 S.E.2d 603 (2002) ("Where a tort involves a continuing or repeated injury, the cause of action *accrues* at and the statute of limitations begins to run from the date of the last injury or when the tortious overt acts or omissions cease."); *Henry v. Ohio River R. Co.*, 40 W. Va. 234, 21 S.E. 863, 867 (1895) ("'[T]he general rule as to nuisances applies to this case" and "[t]hat rule is that every continuance from day to day is a new nuisance, for which a fresh action lies, so that, though action for the original nuisance be barred, damages are recoverable for the statutory period for injuries within it …."); *see also* SJ-SOL at 21–23.

Accordingly, Defendants are entitled to summary judgment on statute of limitations grounds. If Plaintiffs' nuisance claims for post-January 2016 conduct survives despite their admission, the 2015 Act necessarily permits apportionment of fault to non-parties for that conduct.

## II. THE 2015 ACT APPLIES BECAUSE PLAINTIFFS BRING TORT CLAIMS AND SEEK "DAMAGES."

With the passage of the 2015 Act, the Legislature sought "to fully occupy the field of comparative fault and the consideration of the 'fault of parties and nonparties to a civil action.'" *Modular Bldg. Consultants of West Virginia, Inc. v. Poerio, Inc.*, 235 W. Va. 474, 486 n.12, 774 S.E.2d 555, 567 n.12 (2015) (internal citation omitted). The statutory language is undeniably broad, stating that "the liability of each person" is to be apportioned "[i]n any action based on tort *or* any other legal theory seeking damages[.]" W. Va. Code § 55-7-13a(b); *see also Clovis v. J.B. Hunt Transport, Inc.*, No. 1:18-cv-147, 2019 WL 4580045, at *3 n.4 (N.D. W. Va. Sept. 20, 2019) (referring to the 2015 Act as "sweeping statutory provisions").[10] The 2015 Act also defines the term "compensatory damages" broadly as "damages awarded to compensate a plaintiff for economic and noneconomic loss." *Id.* § 55-7-13b.

Plaintiffs argue that "public nuisance claims seeking only the equitable remedy of abatement are not tort actions for compensatory damages."[11] But that argument is wrong for two separate reasons.

---

[10] *Clovis* explains that, subject to limited exceptions, the 2015 Act eliminated contribution claims. Because liability under the 2015 Act is several and no defendant can be called upon to pay more than its proportionate share of fault, and because a defendant can assert that non-parties are at fault, there is no basis for contribution. *See* 2019 WL 4580045, at *5 n.7 ("[T]he 'negligence' claim framed in the Third-Party Complaint is merely an effort to seek contribution. . . . Given the statutory revisions to West Virginia's comparative fault system, such claims, as discussed, are unnecessary and inappropriate here."). If Plaintiffs were correct that the 2015 Act does not apply, Defendants would retain their right to bring contribution and third-party claims.

[11] Pls' Mem. at 5.

First, Plaintiffs' argument fails because West Virginia law considers public nuisance a tort. *See Kermit Lumber*, 200 W.Va. 221, 245 n.29, 488 S.E.2d 901, 925 n.29 (1997) (recognizing that "a nuisance is a tort"). Indeed, West Virginia follows the Restatement definition of public nuisance, *Duff v. Morgantown Energy Assoc.*, 187 W.Va. 716 n.6, 421 S.E.2d 253, 257 n.6 (1992), and that definition is found in the Restatement (Second) of **Torts** § 821B (1979). Because the 2015 Act applies to "any action based on tort"—irrespective of whether it seeks damages—the act applies to Plaintiffs' claims here. W. Va. Code § 55-7-13a(b).

Second, Plaintiffs are wrong that they do not seek "damages" within the meaning of the 2015 Act. According to Plaintiffs, the 2015 Act does not apply here because this is an "action in equity seeking abatement."[12] But abatement has only ever meant one thing in West Virginia law— the issuance of an ***injunction*** to halt the offending conduct or undo its consequences.[13] Plaintiffs

---

[12] Pls' Mem. at 2.

[13] *See, e.g.*, Dobbs, *Handbook On the Law of Remedies*, 2 (1973) ("The injunction is a personal command to the defendant to act or to avoid acting in a certain way."); Prosser and Keeton, *The Law of Torts*, 631 (5th ed. 1984) (referring to the "fundamental distinction between entitlement to damages and entitlement to abatement of the nuisance"); *Woods v. Cottrell*, 55 W. Va. 476, 47 S.E. 275, 278 (1904) (a public nuisance "may be abated as part of the judgment, and the thing with which the nuisance is done may be destroyed"); *Fellows v. City of Charleston*, 62 W. Va. 665, 59 S.E. 623, 625 (1907) ("The town has power to enforce its ordinance, and, if necessary for the abatement or removal of the [public] nuisance, may remove or destroy the thing creating the nuisance[.]"); *Bansbach v. Harbin*, 229 W. Va. 287, 728 S.E.2d 533, 538 (2012) (referring to injunction requiring party to halt activity as abatement); *Burch v. Nedpower Mount Storm, LLC*, 220 W. Va. 443, 647 S.E.2d 879, 892–94 (2007) (using abatement and injunctive relief interchangeably, and holding that "an unsightly activity may be abated when it occurs in a residential area and is accompanied by other nuisances"); *Duff*, 187 W. Va. at 716, 421 S.E.2d at 257 ("While courts generally grant injunctions to abate existing nuisances, there is also authority for courts to enjoin prospective or anticipatory nuisances."); *Berkeley Cty. Comm'n v. Shiley*, 170 W. Va. 684, 295 S.E.2d 924, 926 (1982) (discussing state and local officials' power under state law to bring suits seeking injunctions to "abate" nuisances); *Mahoney v. Walter*, 157 W. Va. 882, 205 S.E.2d 692 (1974) (holding that an automobile salvage yard was a nuisance that could be abated by injunction); *Martin v. Williams*, 141 W. Va. 595, 93 S.E.2d 835, 841 (1956) ("Mandatory injunctions are awarded for the abatement of nuisances more frequently than for other purposes."); *State v. Navy*, 123 W. Va. 722, 17 S.E.2d 626, 628 (1941) ("A bawdy house is a 'public nuisance *per se*' that may be abated by injunction."). Indeed, the cases cited by Plaintiffs confirm this

do not seek injunctive relief[14]—they seek money.  As recently as December 13, 2019, Plaintiffs represented to the MDL court that they "seek *__only__* money damages."[15]  Plaintiffs have now coined the term "abatement damages,"[16] but damages are damages.  Plaintiffs admittedly are not seeking to "abate"—i.e., enjoin or stop—the nuisance.[17]  They seek monies to "compensate[] for the costs of rectifying the nuisance."[18]  Plaintiffs' "lawyerly inventiveness" in putting "abatement" before "damages" cannot transform money damages into equitable relief.  By their own repeated admissions, Plaintiffs seek damages, which they contrast with injunctive relief.  Even now, when they eschew "damages," they don't deny that all they seek is a very large money award.  Consequently, their claims are subject to the 2015 Act.  *See Great-West Life & Annuity Ins. Co.*, 534 U.S. at 211 n.1.

When categorizing a claim as legal or equitable, West Virginia courts consider the substance of the action, not Plaintiffs' creative labeling, to be determinative.  For example, in *Realmark Developments, Inc. v. Ranson*, 214 W. Va. 161, 588 S.E.2d 150 (2003), the Supreme

---

longstanding understanding of abatement.  *See, e.g.*, *Mugler v. Kansas*, 123 U.S. 623, 677–78 (1887) ("abatement" remedy was to "clos[e] the [facility], and thus putting an end to its use in the future," with no mention of reimbursement costs); *Town of Weston v. Ralston*, 48 W. Va. 170, 36 S.E. 446, 457 (1900) (abatement consisted of an order authorizing the town to "remove such nuisance" with no mention of reimbursement costs).

[14] Plaintiffs have stated expressly that they are not seeking an injunction.  *See* Case No. 3:17-cv-1362, Dkt. 242 (Pls' Mem. of Law in Opp. to Defs' Motions to Dismiss and for Summary Judgment Based Upon Res Judicata and Release) at 9-10 ("The equitable relief sought by the WVAG was not abatement; instead it sought an injunction stopping Defendants from continuing to violate the [WVCSA].  *Plaintiffs . . . clearly seek abatement as their only remedy* against these Defendants.").

[15] Pls' Motion to Sever (Dkt. 237) at 2 (emphasis in original).

[16] Pls' Position Statement (Dkt. 254) at 4.

[17] *See* Black's Law Dictionary (10th ed. 2014) (defining "abatement" as "[t]he act of eliminating or nullifying").

[18] Pls' Position Statement (Dkt. 254) at 4 (internal quotations and citation omitted).

Court of Appeals of West Virginia considered whether there was a right to a jury trial on an unjust

enrichment claim seeking restitution.  *Id.* at 163–65, 588 S.E.2d at 151–54.  The key question

before the Court was whether the claim should be characterized as legal or equitable. *Id.* at 164,

588 S.E.2d at 153. The circuit court denied the request for a jury trial, concluding that the unjust

enrichment claim was equitable in nature, but the Supreme Court of Appeals disagreed.  *Id.* The

Court first noted that, although the right to recover in unjust enrichment was based upon principles

of equity, the plaintiff was seeking "a money judgment," which is a legal remedy.  *See id.* ("By

contrast, a 'right to trial by jury generally applies to an action for the recovery of money or

damages, or a legal action for the recovery of money only, or an action in which only a money

judgment is sought.'" (quoting 50A C.J.S. *Juries* § 50 (1997)).  Because the remedy sought was

monetary, the Court held that the action was at law:

> Clearly, the right to recover for unjust enrichment is based on the principles of
> equity.  However, ***the remedy sought in this case is a money judgment and, thus,
> is governed by law***.  In other words, "unjust enrichment ... is but the equitable
> *reason* for requiring payment for value of goods and services received.
>
> \*        \*        \*
>
> Accordingly, we now hold that a suit seeking monetary recovery under a theory of
> unjust enrichment is an action at law and therefore, can be tried before a jury.

*Id.* at 164–65, 588 S.E.2d at 153–54 (citation omitted); *see also Thompson v. Town of Alderson*,

215 W. Va. 578, 581 n.5, 600 S.E.2d 290, 293 n.5 (2004) ("Where relief to be awarded is money

damages, even though the underlying claim is historically one in equity, then the ordinary

characterization of the monetary award is as a legal remedy. . . .").

Federal court decisions are in accord with *Realmark*, holding that suits seeking a monetary

recovery arise at law, not equity.  For example, in *Granfinanciera, S.A. v. Nordberg*, the Unites

States Supreme Court made clear that "any distinction that might exist between 'damages' and

monetary relief under a different label is purely semantic." 492 U.S. 33, 49 n.7 (1989). Similarly, in *Great-West Life & Annuity*, the Court stated:

> Almost invariably … ***suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for "money damages,"*** as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.

534 U.S. at 210 (quoting *Bowen v. Massachusetts,* 487 U.S. 879, 918–19 (1988) (Scalia, J., dissenting)); *see also Montanile v. Bd. of Trs. of Nat. Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 658–59 (2016) ("Equitable remedies 'are, as a general rule, directed against some specific thing; they give or enforce a right to or over some particular thing ... rather than a right to recover a sum of money generally out of the defendant's assets.'" (citation omitted)); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) ("Money damages are, of course, the classic form of *legal* relief." (emphasis in original)); *Jaffee v. U.S.*, 592 F.2d 712, 715 (3d. Cir. 1979) ("We agree with the Government that the request for prompt medical examinations and all medical care and necessary treatment, in fact, is a claim for money damages. ***A plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money***. Jaffee requests a traditional form of damages in tort compensation for medical expenses to be incurred in the future." (citations omitted)).

Plaintiffs, not surprisingly, cite no authority—let alone West Virginia authority—that uses the term "abatement damages," much less provides for an award of "abatement damages." And the authority Plaintiffs do rely on is inapposite. Plaintiffs cite *McMechen v. Hitchman-Glendale Consol. Coal Co.*, 88 W. Va. 633, 107 S.E. 480 (1921), characterizing it as a case in which the court exercised jurisdiction of a case in equity for purposes of abating a nuisance, but also awarded "damages" as "merely incidental" to its equitable jurisdiction. *Id.* at 482. Plaintiffs' reliance on *McMechen* is misplaced for two reasons. First, *McMechen* referred to the plaintiff's requested

- 10 -

monetary relief as an award of "*damages*."  88 W.Va. 633, 107 S.E. at 482.  The court never said that damages were part of the equitable relief.  Second, Plaintiffs here do not seek a monetary award that is in any way incidental to equitable relief.  They do not seek an injunction.  Based on what plaintiffs' experts have opined elsewhere in the opioid litigation, one can expect Plaintiffs here to seek hundreds of millions of dollars—and only money, or, as they told Judge Polster, "*only money damages.*"

Plaintiffs quote *McMechen*'s observation that "[t]he distinction between abatement of nuisances and recovery of damages for injuries occasioned by wrongful acts, constituting nuisances, considered as grounds of action, is so apparent and so vast that it is not at all surprising to find well-defined and broad differentiation as to parties."  *See* Pls' Mem. at 5 (quoting 88 W. Va. 633, 107 S.E. at 482).  But that statement proves Defendants' point.  There is indeed a vast distinction in the case law and commentary between abatement of nuisances and recovery of money damages.  As illustrated in the very cases cited by Plaintiffs, abatement is synonymous with injunctive relief designed to stop the offending conduct,[19] while damages compensate for the past and future harm caused by the nuisance.[20]  Thus, in *McMechen*, the court both enjoined the defendants to "remove the refuse, cinders, slate and dirt they have already deposited in the stream" and awarded damages for the harm caused by the obstruction.  *Id.* at 481–82; *see also Webber v.*

---

[19] The Restatement (Third) of Torts equates "abatement" with an injunction.  *See* section 8 ("Public Nuisance Resulting in Economic Loss"), comment f ("Abatement"); *see also* notes 13, 17, *supra*.

[20] Plaintiffs' unsubstantiated assertion that future money awards are neither damages nor compensatory does not align with West Virginia law.  Future damages are indeed a component of overall compensatory damages.  *See, e.g.*, Syl. Pt. 9, *Jordan v. Bero*, 158 W. Va. 28, 210 S.E.2d 618 (1974) ("The permanency or future effect of any injury must be proven with reasonable certainty in order to permit a jury to award an injured party future damages.").  Indeed, if Plaintiffs' theory were correct, then application of the 2015 Act would have to be split within each cause of action, with a plaintiff's past damages subject to several liability and non-party fault, but not their future monetary awards.  That is not the law.

*Offhaus*, 135 W. Va. 138, 149, 62 S.E.2d 690, 697 (1950) ("[I]t is proper for the court to ascertain and award the damages flowing from the wrong which is the basis of equitable relief." (internal quotations and citation omitted)).  In short, since the merger of law and equity, a plaintiff can seek both injunctive and monetary relief in the same case.  But *McMechen* and cases like it are of little relevance here, because Plaintiffs do not seek injunctive relief, only money.  When the West Virginia courts awarded monetary relief, they called a spade, a spade and referred to that relief as what it was—"damages."

The non-West Virginia cases cited by Plaintiffs are of no more help to them.  The language Plaintiffs quote from the lone federal decision, *United States v. Price*, is *dicta*.  The district court **denied** the preliminary injunctive relief requested by the government—relief that included the funding of a diagnostic study—and the Court of Appeals affirmed, finding that the district court did not abuse its discretion.  Even the Court of Appeals' advisory language went no farther than to recognize that "[i]t is not unusual for a defendant in equity to expend money in order to obey or perform the act mandated by an injunction."  688 F.2d 204, 213 (3d Cir. 1982).  Here, however, Plaintiffs seek only a monetary award.  There is no question of Defendants' having to expend money in order to obey or perform an injunction, because Plaintiffs do not seek an injunction.[21]

The decision of the California intermediate appellate court in *People v. ConAgra Grocery Products Co.*, insofar as it approved a $1.15 billion "abatement fund," is aberrant: no court outside California has followed, or even cited, that portion of the opinion.  In any event, the court's

---

[21] The *Price* court's *dicta* was also influenced by the fact that that the Government's action was brought pursuant to section 7003 of the Resource Conservation and Recovery Act and section 1431 of the Safe Water Drinking Act. In blessing an injunction that would include funding a diagnostic study, the court observed that the relief requested by the Government "*falls within the range of remedies contemplated and specifically authorized by Congress* when it enacted the endangerment provisions of RCRA and SDWA."  688 F.2d at 213.

rationale for such a fund does not apply here.  As explained by the very language Plaintiffs quote, the "sole purpose" of an equitable remedy "is to eliminate the hazard that is causing prospective harm to the plaintiff."  17 Cal. App. 5th 51, 132, 227 Cal. Rptr. 3d 499, 569 (Cal. Ct. App. 2017). The $1.15 billion fund in *ConAgra* served that purpose because its function was to pay for the removal of lead paint, the cause of prospective harm.  Here, however, Plaintiffs do not seek a monetary award for any comparable purpose.  Plaintiffs allege that Defendants caused or contributed to the nuisance by failing to report and halt shipment of suspicious pharmacy orders, but they do not seek one dollar of "abatement damages" for the prospective costs of reporting or halting shipment of such orders.  "An equitable remedy," the *ConAgra* court said, "provides no compensation to a plaintiff for prior harm."  *Id.*  But Plaintiffs' so-called abatement fund would do just that; the greater part of the fund would pay for addiction treatment and related services for those personally injured by opioid abuse.

In sum, this is (1) a tort action and (2) an action for damages to which the 2015 Act applies. Plaintiffs' efforts to relabel the relief they seek does not transform their claims and requested relief into anything other than tort claims "seek[ing] only money damages."  Plaintiffs' Motion to Strike should be denied.

Dated:  March 27, 2020                    Respectfully submitted,

                                          */s/ Gretchen M. Callas*
                                          Gretchen M. Callas (WVSB #7136)
                                          JACKSON KELLY PLLC
                                          Post Office Box 553
                                          Charleston, West Virginia 25322
                                          Tel: (304) 340-1000
                                          Fax: (304) 340-1050
                                          gcallas@jacksonkelly.com

                                          Robert A. Nicholas
                                          Shannon E. McClure
                                          REED SMITH LLP
                                          Three Logan Square
                                          1717 Arch Street, Suite 3100
                                          Philadelphia, PA 19103
                                          Tel: (215) 851-8100
                                          Fax: (215) 851-1420
                                          rnicholas@reedsmith.com
                                          smcclure@reedsmith.com

                                          ***Counsel for AmerisourceBergen
                                          Drug Corporation***


                                          */s/  Jeffrey M Wakefield*
                                          Jeffrey M. Wakefield (WVSB #3894)
                                          jwakefield@flahertylegal.com
                                          **FLAHERTY SENSABAUGH BONASSO PLLC**
                                          P.O. Box 3843
                                          Charleston, WV 25338-3843
                                          (304) 345-0200

                                          Timothy C. Hester
                                          Mark H. Lynch
                                          Christian J. Pistilli
                                          Laura Flahive Wu
                                          **COVINGTON & BURLING LLP**
                                          One CityCenter
                                          850 Tenth Street NW
                                          Washington, DC 20001
                                          (202) 662-6000

                                          ***Counsel for McKesson Corporation***

- 14 -

*/s/ Steven R. Ruby*
Brian A. Glasser (WVSB #6597)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
BAILEY GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
Counsel in Cabell County action

Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard @wc.com
ahardin@wc.com

**Counsel for Cardinal Health, Inc.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**


THE CITY OF HUNTINGTON,

     Plaintiff,


v.                                       CIVIL ACTION NO. 3:17-01362


AMERISOURCEBERGEN
DRUG CORPORATION, et al.,

     Defendants.

———————————————


CABELL COUNTY COMMISSION,

     Plaintiff,


v.                                         CIVIL ACTION NO. 3:17-01665


AMERISOURCEBERGEN
DRUG CORPORATION, et al.,

     Defendants.

———————————————


**<u>CERTIFICATE OF SERVICE</u>**

     The undersigned counsel hereby certifies that on this 27th day of March, 2020, the foregoing ***Opposition to Plaintiffs' Motion to Strike Defendants' Notices of Non-Party Fault*** was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

                                         */s/ Gretchen M. Callas*
                                         Gretchen M. Callas (WVSB # 7136)

- 16 -