# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>    Defendants. | Civil Action No. 3:17-01362 |
| CABELL COUNTY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>    Defendants. | Civil Action No. 3:17-01665 |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION
## FOR A BENCH TRIAL MANAGEMENT ORDER

We are in the midst of a global pandemic[1] and a national and state emergency.[2] Thousands of people have already lost their lives to Coronavirus Disease 2019 ("COVID-19"),[3] and millions of people in the United States and elsewhere are under lockdowns.[4] West Virginia recently confirmed its first community-spread case of the virus. Its count of confirmed infections is rising rapidly, and their distribution throughout the state is broadening.[5] West Virginia is particularly vulnerable, with "a relatively elderly population and high incidence of other medical conditions that can make individuals more vulnerable to the virus."[6] The Governor has issued an indefinite stay-at-home order directing "all individuals within the State of West Virginia . . . to stay at home or their place of residence unless performing an essential activity" and requiring all non-essential

---

[1] United States District Court for the Southern District of West Virginia, *General Order: Court Operations Under the Exigent Circumstances Created by the COVID-19 Pandemic* (Mar. 13, 2020), https://www.wvsd.uscourts.gov/pdfs/generalorders/covid19/General-Order-Continuing-Jury-Matters-March-13-2020.pdf ("S.D.W. Va. General Order").

[2] White House, *Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak* (Mar. 13, 2020), https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/; U.S. News & World Report, *WVa Has 5 Positive Coronavirus Cases; Gov Tests Negative* (Mar. 19, 2020), https://www.usnews.com/news/best-states/west-virginia/articles/2020-03-19/virus-concerns-shut-greenbrier-resort-in-west-virginia.

[3] World Health Organization, *COVID-19 situation*, https://experience.arcgis.com/experience/685d0ace521648f8a5beeeee1b9125cd.

[4] *See, e.g.*, County of San Mateo, *Shelter in Place FAQs* ("the Health Officer of San Mateo County is requiring people to stay home except for essential needs"); CNN, *Lockdowns are being imposed around the world. China's example highlights the costs* (Mar. 17, 2020); https://www.cnn.com/2020/03/16/asia/coronavirus-xi-wuhan-anger-intl-hnk/index.html; Foreign Policy, *Sorry, America, the Full Lockdown Is Coming* (Mar. 18, 2020), https://foreignpolicy.com/2020/03/18/america-united-states-lockdown-coming.

[5] West Virginia Department of Health & Human Resources, *Coronavirus Disease 2019 (COVID-19)*, https://dhhr.wv.gov/COVID-19/Pages/default.aspx.

[6] S.D. W. Va. General Order, *supra* n.1.

(continued…)

businesses and operations to cease operations temporarily.[7]  Similarly, the West Virginia Supreme Court of Appeals has declared a "judicial emergency" and stayed all non-emergency proceedings and court deadlines through April 10, 2020.[8]

As suppliers of medications and medical equipment, Defendants are focused on their critical role in responding to the COVID-19 pandemic, which requires ongoing dependable access to the medical supplies and medicines that Defendants distribute to hospitals, urgent care facilities, long-term care facilities, and pharmacies across the country.  Defendants' employees are heavily engaged in these and other activities to mitigate the effects of this pandemic on the healthcare supply chain:  Defendants have implemented "pandemic contingency plans"[9] and are "engaged

---

[7] State of West Virginia, Executive Department, Executive Order No. 9-20 (Mar. 23, 2020), http://www.wvlegislature.gov/legisdocs/misc/Exec-Order-9-20-20200323.pdf.

[8] Administrative Order, Supreme Court of Appeals of West Virginia (Mar. 22, 2020), http://www.courtswv.gov/covid19/JudicialEmergencyDeclared3-22-20.pdf.  Other jurisdictions across the country in recognition of the dramatically changed circumstances confronting litigants also have taken swift action in response to the crisis, including the Eastern District of Virginia, which issued a General Order that suspends upcoming non-critical and non-emergency hearings and extends filings dates for cases with upcoming deadlines.  United District Court Eastern District of Virginia, General Order No. 2020-07 (Mar. 24, 2020), http://www.vaed.uscourts.gov/notices/2020-07%20-%20Court%20Operations.pdf; and Ohio, whose legislature just enacted legislation that, among other emergency measures, will toll "[t]he time within which discovery or any aspect of discovery must be completed" if that time is set to expire between March 9 and July 30, 2020, Ohio General Assembly Passes Emergency Legislation In Response To COVID-19 (Mar. 26, 2020), https://www.jdsupra.com/legalnews/ohio-general-assembly-passes-emergency-67516/, and which Governor DeWine quickly signed into law, Governor DeWine Signs House Bill 197, https://governor.ohio.gov/wps/portal/gov/governor/media/news-and-media/dewine-signs-house-bill-197 (Mar. 27, 2020).  These are just two of the many recent measures courts and legislatures have taken in response to this uniquely unpredictable crisis, which continues to evolve from day to day.

[9] Cardinal Health, *COVID-19 / Cardinal Health Global Preparedness*, https://www.cardinalhealth.com/en/cmp/ext/corp/cardinal-health-covid-19-response-plan.html.

(continued…)

3

with government and healthcare officials"[10] to get "critical supplies to customers who need them."[11] Just yesterday, the CEOs of McKesson and Cardinal Health met with President Trump and federal officials at the White House to help plan the distribution of vital medical supplies, and then joined the President for his daily coronavirus update to the nation.[12] Leadership and employees at every level of all three Defendants are engaged in combating the pandemic and will be for the foreseeable future.

Plaintiffs and other key government agencies are likewise, and rightly, focused on the urgent and immediate issues presented by COVID-19. The same departments and agencies who possess relevant and necessary discovery—including those related to public health, law enforcement, and emergency response—are also among those most overwhelmed with the response to the COVID-19 crisis and its impact.

While this litigation is indisputably very important, and will continue to progress, in this unprecedented situation, Plaintiffs' focus on "ensur[ing] the preservation of the August 31, 2020 bench trial"[13] is misplaced.

Plaintiffs' motion is also premature. Their request for relief is vague, but appears to focus on various ways to avoid presenting testimony in court. Even setting aside the legal impediments

---

[10] AmerisourceBergen, *Coronavirus (COVID-19)*, https://www.amerisourcebergen.com/coronavirus-covid-19-information.

[11] McKesson, *McKesson's Response to Coronavirus (COVID-19)*, https://www.mckesson.com/About-McKesson/Coronavirus-Response.

[12] White House, *Remarks by President Trump in a Meeting with Supply Chain Distributors on COVID-19* (Mar. 29, 2020), https://www.whitehouse.gov/briefings-statements/remarks-president-trump-meeting-supply-chain-distributors-covid-19/.

[13] Plaintiffs' Motion at 1–2.

(continued…)

to Plaintiffs' suggestions, detailed further below, there is no reason now for the Court to consider extraordinary means of presenting (or omitting to present) trial testimony.

**I.        Plaintiffs' Request for Bench Trial Management Order is Premature.**

Plaintiffs seek a bench trial management order but fail to explain how that could be consistent with an orderly litigation.  The Court already rejected a piecemeal approach, stating, "I'd like to have the discovery done" before starting trial to keep everything "compartmentalized and separated."[14]  At this time, fact discovery is still in its early stages, with document production from Plaintiffs ongoing, production from third parties just beginning, and no deposition dates set. Moreover, expert discovery and pre-trial motion practice are still months away under the Court's case management schedule.[15]  In setting this schedule, the Court acknowledged that it would be demanding:  "I know there will be wailing and gnashing of teeth, but . . . [t]his matter needs to be resolved and I feel it's my responsibility to push it."[16]

Since the Court set that schedule, COVID-19 has been declared a pandemic, and this Court and the West Virginia Supreme Court of Appeals have suspended proceedings.[17]  Despite this dramatically changed landscape, Defendants are doing their utmost to obtain requisite document discovery at this time and will schedule depositions as soon as public safety permits.  It appears likely, however, that the already truncated time for discovery set by the Court's schedule may have to be extended to account for time lost because of the COVID-19 pandemic and associated public

---

[14] Tr. of Status Conference at 31:4–7 (Mar. 5, 2020).

[15] *Id.* at 42:7–13.

[16] *Id.* at 41:24–42:2.

[17] S.D.W. Va. General Order, *supra* n.1; Supreme Court of Appeals, State of West Virginia, *Supreme Court Issues Order Suspending Court Proceedings Throughout W.Va. Due to Coronavirus* (Mar. 16, 2020), http://www.courtswv.gov/public-resources/press/releases/2020-releases/mar16_20.pdf.

health crisis. While it is too early to reach firm conclusions, the effects of the COVID-19 pandemic have, through no one's fault—and indeed in the face of best efforts—made the need for such an extension and continuance of the current trial date distinct possibilities.

The effects of COVID-19 can already be seen in critical fact discovery in this litigation, despite Defendants' best efforts. Several third parties that Defendants have engaged in discussions about subpoena compliance, ahead of subpoena return dates, have requested extensions or said the pandemic will make timely compliance difficult:

- The West Virginia Offices of the Insurance Commissioner ("WVOIC") said that it would be "impossible" to comply with subpoenas "by March 31, April 17 or anytime soon thereafter" because "the WVOIC offices have been shuttered due to the evolving Covid-19 pandemic," employees are either on leave or working remotely, many of the employees working remotely "lack full access to potentially responsive materials," and "many WVOIC employees have been diverted from their usual job duties to complete tasks to assist in the State's response to the Covid-19 pandemic."[18]

- The West Virginia Department of Health and Human Resources ("DHHR") Bureau of Medical Services requested an extension to respond to subpoenas because "bureau employees are teleworking as per the recommendation of the Governor" and "all agency resources are currently focused on dealing with the Covid-19 pandemic and its impact on the state."[19]

---

[18] Email from Cassandra L. Means to Jeff Wakefield (Mar. 25, 2020), attached as Exhibit A.
[19] Email from Riley J. Romeo, Jr., Esq. to Jeff Wakefield (Mar. 20, 2020), attached as Exhibit B.

- The DHHR Office of Drug Control Policy requested an extension to respond to subpoenas "due to the public health crisis created by the COVID 19 virus." As a result of "the Governor's Stay At Home Order, the majority of DHHR's employees are working from home with limited capabilities and limited access to information," hampering the ability of counsel for the Office of Drug Control Policy "to meet with Agency staff and gather the requested documentation."[20]

- The DHHR Bureau for Children and Families stated that it "will not be able to respond to the subpoena by the date of return due to the public health crisis created by the COVID 19 epidemic." Many employees of the Bureau for Children and Families are working from home under the Governor's Stay at Home Order, where they have "limited capabilities and diminished access to the types of information and data necessary to respond to the subpoena," and "management level staff are focused on ensuring vital services are maintained during this crisis."[21]

- The West Virginia Department of Military Affairs and Public Safety said that, "in light of the COVID-19 crisis, much of our personnel is tasked with immediate issues involving public safety," and "some employees are working remotely, which may contribute to delays in the meetings necessary to fully gather and evaluate the information" subject to subpoenas.[22]

---

[20] Email from B. Allen Campbell to David Pogue (Mar. 26, 2020), attached as Exhibit C.

[21] Email from B. Allen Campbell to Brent Gary (Mar. 26, 2020), attached as Exhibit D.

[22] Email from William R. Valentino to Jeff Wakefield (Mar. 20, 2020), attached as Exhibit E. (continued…)

- The West Virginia Board of Dentistry requested an extension until after "the Board is able to resume normal business operations" because, "[p]ursuant to the Governor's recent orders issued in response to the coronavirus pandemic, the Board's staff are currently working remotely and, therefore, are unable to search for information and documents that may be responsive to the subpoena."[23]

- The West Virginia Board of Pharmacy has offered to make certain documents available for inspection, but the Governor's shelter-in-place order currently prevents Defendants from putting together the requisite team and traveling to conduct the document review.[24] The Board of Pharmacy, moreover, would need to have its in-house counsel review any documents before it could make them available for inspection or production, and that attorney is fully occupied with issues arising from COVID-19.

- The Governor's Council on Substance Abuse Prevention and Treatment requested an extension to respond to the subpoenas because "[t]he COVID-19 pandemic has delayed the ability to search for documents and to craft a response."[25]

- Cabell Huntington Hospital requested an extension of the document production deadline because "[a]ll dedicated assets are focused on compliance with COVID-19 national emergency declarations."[26]

---

[23] Email from Keith D. Fisher to Gretchen Callas (Mar. 24, 2020), attached as Exhibit F.

[24] State of West Virginia, Executive Department, Executive Order No. 9-20, *supra* note 7.

[25] Email from Nicholas R. Stuchell to David Pogue (Mar. 18, 2020), attached as Exhibit G.

[26] Email from Ryan Q. Ashworth to Gretchen Callas (Mar. 19, 2020), attached as Exhibit H. (continued…)

## II. Plaintiffs' Requested Provisions Are Improper and Premature.

It is not clear what specific provisions Plaintiffs seek in their requested bench management trial order. To the extent Plaintiffs' requests can be discerned, they are improper and premature.

Plaintiffs suggest they could "substantially advance the litigation" by later proffering evidence for the record to enable the Court to take judicial notice of purported adjudicative facts.[27] But the Fourth Circuit has made clear that "judicial notice must not be used as an expedient" and "thereby upset the procedural rights of litigants to present evidence on disputed matters." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 511 (4th Cir. 2015) (internal quotation marks omitted). That is, courts do not have "carte blanche" to take judicial notice of information, but instead must make a context-dependent determination based "on the use to which [the information] is put." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 558 (4th Cir. 2013), *abrogated on other grounds by Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015). This is true even for "information . . . garnered from the public record." *Id.* Here, Plaintiffs seek to proffer for the record not only public information but also the national IQVIA database, which is strictly confidential.[28]

Similarly, Plaintiffs ask the Court to "[p]ermit[] testimony in open court by contemporaneous transmission from a different location" under Federal Rule of Civil Procedure 43(a).[29] But Plaintiffs omit the rest of the sentence in the rule, which requires "good cause in compelling circumstances and with appropriate safeguards" to allow such transmission. Fed. R. Civ. P. 43(a). "The importance of presenting live testimony in court cannot be forgotten," as "[t]he

---

[27] Plaintiffs' Motion at 2.

[28] *See, e.g.*, CVS Production Letter of IQVIA documents in MDL No. 2804 (stating that documents "have been designated as Confidential or Highly Confidential"), attached as Exhibit I.

[29] Plaintiffs' Motion at 3.

very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling." *Rusu v. U.S. I.N.S.*, 296 F.3d 316, 322 n.9 (4th Cir. 2002) (quoting Fed. R. Civ. P. 43(a) advisory committee notes to 1996 amendment). "This court shares the strong preference for live testimony illustrated in the Federal Rules." *Kaufman v. United States*, 2014 WL 2740407, at *1 (S.D.W. Va. June 17, 2014) (Faber, J.).

Any decision to allow remote testimony under Rule 43(a) cannot be made at this preliminary stage. Rather, "[r]elief under Rule 43(a) is highly fact specific" and must take into account the identities and particular circumstances of the witnesses that a party seeks to have testify remotely. *Humbert v. O'Malley*, 2015 WL 1256458, at *2 (D. Md. Mar. 17, 2015); *accord United States v. Kivanc*, 714 F.3d 782, 791 (4th Cir. 2013) (evaluating whether there was "good cause" and "compelling circumstances" based on "facts" regarding specific witnesses). In *Kaufman*, a plaintiff filed a motion, after the close of discovery, "to permit all of her witnesses to testify remotely either by phone or video conferencing." 2014 WL 2740407, at *1. This Court denied the motion because, although the plaintiff stated "that most of her witnesses are more than 300 miles away from this district," the "plaintiff's motion lack[ed] specifics as to which of her witnesses would require remote testimony and logistics as to where and how these witnesses would provide such testimony." *Id.*

Plaintiffs' blanket request here to permit remote testimony here is even more problematic than the motion that this Court denied in *Kaufman*, for two reasons. First, Plaintiffs fail to tie their request to any particular witnesses or facts. Second, it is premature to make judgments about remote testimony while discovery is still in its earliest stages, before Defendants have taken any depositions and before Defendants are in a position to assess the testimony of particular witnesses or to determine what cross-examination they will need of such witnesses. *See Flame S.A. v. Indus.*

10

*Carriers, Inc.*, 2014 WL 4181958, at *2 (E.D. Va. Aug. 21, 2014) (decision to allow remote testimony cannot be based on "hypothetical" or "uncertain variables"); *see also In re NC Swine Farm Nuisance Litig.*, 2016 WL 3742135, at *4 (E.D.N.C. July 7, 2016) ("The obvious purpose of discovery is to determine the opinions and positions of the opposition's witnesses and prepare for cross-examination." (internal quotation marks omitted)).

\* \* \*

For the foregoing reasons, defendants respectfully request that the Court deny Plaintiffs' Motion for a Bench Trial Management Order.

Dated: March 30, 2020

Respectfully Submitted,

***McKesson Corporation***
By Counsel:


*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
Jason L. Holliday (WVSB #12749)
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200
JWakefield@flahertylegal.com
JHolliday@flahertylegal.com

*/s/ Timothy C. Hester*
Timothy C. Hester
Mark H. Lynch
Christian J. Pistilli
Laura Flahive Wu
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
mlynch@cov.com

cpistilli@cov.com
lflahivewu@cov.com

*AmerisourceBergen Drug Corporation*
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Cardinal Health, Inc.*
By Counsel:

*/s/ Steven R. Ruby*
Brian A. Glasser (WVSB #6597)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
BAILEY GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
*Counsel in Cabell County action*


 */s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP

725 Twelfth Street NW
Washington, DC  20005
Tel:  (202) 434-5000
Fax:  (202) 434-5029
emainigi@wc.com
lheard@wc.com
ahardin@wc.com