AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of West Virginia

| | |
|---|---|
| City of Huntington and Cabell County Commission <br> *Plaintiff* <br> v. <br> AmerisourceBergen Drug Corporation, et al. <br> *Defendant* | ) ) ) ) Civil Action No. 3:17-01362; 3:17-01665 ) ) ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: West Virginia Offices of the Insurance Commissioner, 900 Pennsylvania Ave, Charleston, WV 25302

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: All documents, communications, and electronically stored information identified and described in Attachment A to this subpoena.

| Place: Flaherty Sensabaugh Bonasso PLLC <br> 200 Capitol Street, Charleston, WV 25301, <br> or another mutually convenient location | Date and Time: <br> 03/31/2020 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 03/17/2020

CLERK OF COURT

OR

_____         /s/Jeffrey M. Wakefield
*Signature of Clerk or Deputy Clerk*         *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* McKesson Corporation , who issues or requests this subpoena, are:
Jeff Wakefield, 200 Capitol Street, Charleston, WV 25301, jwakefield@flahertylegal.com, (304) 347-4231

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**EXHIBIT A**

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A TO SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS ON THE WEST VIRGINIA OFFICES OF THE INSURANCE COMMISSIONER

### DEFINITIONS

The following terms shall have the meanings set forth below. Notwithstanding any definition set forth below, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Rules of Procedure for the Southern District of West Virginia.

1. "Prescription Opioid(s)" refers to FDA-approved pain-reducing medications consisting of natural, synthetic, or semisynthetic chemicals that bind to opioid receptors in the brain or body to produce an analgesic effect, including, but not limited to, prescription medications containing hydrocodone, oxycodone, fentanyl, and hydromorphone, that may be obtained by patients in West Virginia only through prescriptions written by duly licensed and DEA-registered prescribers.

2. "Alternative Treatment(s)" means all alternative (non-Prescription Opioid) drugs, treatments, procedures, or therapies used to treat chronic pain or opioid addiction, including, but not limited to, counseling, cognitive behavioral therapy, physical therapy, weight loss, massage, meditation, chiropractic services, acupuncture/acupressure, in-patient and out-patient drug rehabilitation programs, and abuse-deterrent forms of Prescription Opioids.

3. "Person" has the full meaning ascribed to it by Local Rule of Civil Procedure 26.2(c)(6), and means any natural person or any business, legal or governmental entity or association, individual, corporation, firm, partnership, joint venture, unincorporated association, trade association, governmental entity, dealer group, council or other incorporated or

unincorporated entity, business entity or group of individuals or entities, singular or plural, as the content may require.

4. "You" and "Your" refer to the West Virginia Offices of the Insurance Commissioner ("OIC") and its divisions, subdivisions, offices, or departments, and all others acting or purporting to act on Your behalf, or controlled by You, including any affiliates, programs, employees, directors, agents, contractors, representatives, board members, committees, subcommittees, working groups, and task forces.

5. "Document" has the full meaning ascribed to it by Federal Rule of Civil Procedure 34(a) and Local Rule of Civil Procedure 26.2(c)(2), and means the complete original (or complete copy where the original is unavailable) and each non-identical copy (where different from the original because of notes made on the copy or otherwise) of any writing or record, including, but not limited to, all written, typewritten, handwritten, printed, or graphic matter of any kind or nature, however produced or reproduced, any form of collected data for use with electronic data processing equipment, and any mechanical or electronic visual or sound recordings or text messages in Your possession, custody, or control. "Documents" include, but are not limited to, books, papers, contracts, memoranda, invoices, correspondence, notes, studies, reports, manuals, photographs, drawings, charts, graphs, data compilations, other writings, microfilm, microfiche, audio recordings, video recordings, electronic mail, and any other information stored in electronic form, and each different version or copy of each Document, including, but not limited to, drafts.

6. "Communication" has the full meaning ascribed to it by Local Rule of Civil Procedure 26.2(c)(1), and means any transmission of information (whether formal or informal) by one or more Persons and/or between two or more Persons by means including, but not limited to,

telephone conversations, letters, faxes, electronic mail, text messages, instant messages, other computer linkups, written memoranda, and face-to-face conversations.

7. "Concerning," in addition to its other customary and usual meanings, means relating to, discussing, constituting, mentioning, pertaining to, referring to, dealing with, assessing, recording, describing, regarding, touching upon, and/or summarizing.

8. "Plaintiffs" means the plaintiffs named in this action, the City of Huntington and Cabell County, including but not limited to, its executive and legislative branches, agencies, offices, departments, divisions, commissions, committees, subcommittees, boards, directors, administrators, employees, officers, directors, shareholders, agents, contractors, vendors, instrumentalities, representatives, counsel, and all Persons and entities acting or purporting to act under their control or on their behalf.

9. "Defendants" means all defendants named in *City of Huntington v. AmerisourceBergen Drug Corp., et al.*, Civil Action No. 3:17-01362, and *Cabell County Commission v. AmerisourceBergen Drug Corp., et al.*, Civil Action No. 3:17-01665, as of the date of this notice, and their present or former officers, directors, shareholders, employees, agents, representatives, counsel and all persons and entities acting or purporting to act under their control or on their behalf.

10. "Plaintiff Jurisdictions" refers to Cabell County, West Virginia, and the City of Huntington, West Virginia.

11. "Suspicious" refers to individuals, entities, or claims associated with orders of unusual size, orders deviating substantially from a normal pattern, or orders of unusual frequency.

12. "Controlled Substance" means any substance identified as a Schedule I-V substance pursuant to 21 U.S.C. § 812.

3

13. The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "All" means "any and all"; "any" means "any and all." "Including" means "including but not limited to." "And" and "or" encompass "and" as well as "or," as necessary to bring within the scope of these requests any information that might otherwise be construed as falling outside the scope of these requests.

## INTRODUCTION

Should You consider any of the Documents requested to be confidential such that they should not be generally disseminated to the public or released to the press, we ask that You designate them as such under the Protective Orders in the MDL (copies attached) and the parties will deal with them accordingly.

All of the following requests are intended to encompass Documents maintained in electronic or paper form, and "correspondence" or "Communications" include emails, letters or other papers, and memos reflecting oral Communications.

As these Documents will be shared with other counsel and parties, we ask that You produce copies of them in electronic or paper form. Please let Defendants know if there are charges or fees for searching or copying and, if so, also advise whether You will provide an invoice for the cost after production or if prepayment is required.

Requested format for Documents produced electronically in response to this Request:

Form: Documents produced in response to this Request should be provided in Group 4 compression single-page "TIFF" format. Extracted text shall be included in the manner provided herein. To the extent that extracted text does not exist, these images will be processed through Optical Character Recognition ("OCR") so that they are fully searchable. Extracted text and OCR should be provided in separate document level text files. "Load Files" shall be produced to accompany the images and shall facilitate the use of the litigation support database systems to review the produced images.

Document Unitization: Each page of a document shall be electronically converted into an image as described above. If a document is more than one page, the unitization of the

document and any attachments and/or affixed notes shall be produced using logical document breaks when creating the image file and appropriately designated in the load files. The corresponding parent/attachment relationships, to the extent possible, shall be provided in the load files furnished with each production. Document productions that are not unitized or that do not capture parent/attachment relationships will not be accepted. Distributor Defendants will seek reimbursement by court order for any costs associated with unitizing document productions.

Filing Naming Conventions: File Naming Conventions. Each document image file shall be named with the unique Bates Number of the page of the document in the case of single-page TIFFs, followed by the extension "TIF." Each document shall be named with a unique document identifier. Attachments shall have their own unique document identifiers.

Production Media: The documents should be produced on CD-ROM, DVD, or external hard drive (with standard Windows PC compatible interface), (the "Production Media"). Each piece of Production Media shall identify a production number corresponding to the production "wave" the documents on the Production Media are associated with (e.g., "V001," "V002"), as well as the volume of the material in that production wave (e.g., "001," "-002"). For example, if the first production wave comprises document images on three hard drives, the Respondent shall label each hard drive in the following manner" "V001-002," "V001-003." Additional information that shall be identified on the physical Production Medial shall include: (1) text referencing that it was produced in [Case Docket No.], (2) the producing party's name, (3) the production date, and (4) the Bates Number range of the materials contained on the Production Media.

Objective Coding/Extracting Meta Data: Respondent shall produce with each production of documents with extracted metadata for each document (the "Objective Coding") included in the load file. The data file shall include the following fields and type of content: "Custodian", the date the document was created, sent or last modified (e.g., "Date Created", "File Created Date", "Date Sent", and "Last Modified Date"; the filename (e.g., "File Name") or, for emails, the "Subject" line and the individuals or entities listed in the "To" "From" "CC" and "BCC" fields. In addition, the following fields shall also be provided, if available. "Confidentiality_filepath," "MD5 Hash," and file extension. Objective Coding shall be labeled and produced on Production Media in accordance with the provisions set forth above.

Native format for PowerPoint Presentations, Spreadsheets (Excel), audio-visual files and databases: PowerPoints, spreadsheets (Excel), audio-visual files and databases shall be produced in native format along with the extracted text and relevant metadata.

To the extent a geographic scope applies to a request herein, that scope, whether expressly stated or not, is defined as the City of Huntington, Cabell County, or any town, village or city within Cabell County.

Unless otherwise indicated, the Relevant Time Period applicable to these requests is 1996 to the present.[1]

## REQUESTS FOR PRODUCTION

### *Organizational Structure and Knowledgeable Persons or Entities*

1. Documents sufficient to describe Your organizational structure during the Relevant Time Period and at the present time, and to identify all personnel with knowledge of the matters included in these Requests.

2. Documents sufficient to identify all Persons or entities currently or formerly employed, affiliated with, or consulted by You (including any third-party individuals or entities) that are or were involved in deciding whether and on what terms to provide coverage (including formulary or preferred drug list status) or reimbursement for Prescription Opioids and/or Alternative Treatments.

3. Documents sufficient to identify all Persons or entities currently or formerly employed, affiliated with, or consulted by You (including any third-party individuals or entities) that are or were involved in investigations of Suspicious orders, prescriptions, or reimbursement claims of Prescription Opioids.

### *Contractors Used for Administering Pharmacy Benefits and Processing Claims*

4. Documents sufficient to identify all contractors or vendors (including but not limited to managed care organizations, third party administrators, pharmacy benefit managers, and fiscal agents) currently or formerly used, employed, affiliated with, or consulted by You in

---

[1] Should the Court issue a ruling establishing a different time period for discovery, Defendants will revise the Relevant Time Period accordingly.

6

administering pharmacy benefits and processing claims concerning Prescription Opioids and/or Alternative Treatments.

5. All contracts, memoranda of understanding, or agreements between You and the contractors or vendors identified in response to Request 4 concerning the administration of pharmacy benefits or processing of claims.

*Claims Data*

6. All Documents concerning claims, including but not limited to workers' compensation claims, You reimbursed for Prescription Opioids taken, prescribed, or dispensed in the Plaintiff Jurisdictions, including all data fields recorded when tracking the reimbursed claims.

7. All Documents concerning Your knowledge of, access to, and use of any system or database that tracks the sale or dispensing of Controlled Substances to West Virginia residents, including but not limited to the West Virginia Controlled Substances Monitoring Program, the RxDataTrack CSAPP, any repository established under WV Code § 60A-9, and the Drug Enforcement Administration's Automation of Reports and Consolidated Orders System ("ARCOS"), and any data from such systems related to Prescription Opioids.

8. All Documents concerning Your knowledge of, access to, and use of National Council for Prescription Drug Programs ("NCPDP") standards.

9. All Documents concerning Your knowledge of, access to, and use of any system or database that tracks the reimbursement of Prescription Opioid and/or Alternative Treatment claims, including but not limited to workers' compensation claims, in West Virginia, including but not limited to (a) private payor databases, (b) the West Virginia Transformed Medicaid

7

Statistical Information System ("T-MSIS"), (c) the State Drug Utilization Data ("SDUD") database, and (d) Medicaid Analytic eXtract ("MAX").

***Reimbursement for Prescription Opioids***

10. Documents sufficient to identify all reimbursements paid by You for Prescription Opioids taken, prescribed, or dispensed in the Plaintiff Jurisdictions, by quarter and in the aggregate, and by National Drug Code.

11. Documents sufficient to identify all reimbursements paid by You for Alternative Treatments taken, prescribed, dispensed, referred, administered, or that took place in the Plaintiff Jurisdictions, by quarter and in the aggregate, and by National Drug Code or other identifier where applicable.

12. All Documents concerning Your policies and procedures for processing, tracking, and adjudicating claims for reimbursement for Prescription Opioids and/or Alternative Treatments, including but not limited to:

   a) Documents identifying any reasoning for or restrictions concerning reimbursement for Prescription Opioids, including any limitations on the amount of Prescription Opioids that may be dispensed in a given time period or to a particular patient;

   b) Documents concerning Your processes and systems (including any criteria, information, or Persons consulted) for determining whether Prescription Opioid claims involved a prescription that was medically necessary or otherwise eligible for payment, and for avoiding reimbursement for illegitimate or unlawful Prescription Opioid prescriptions (including but not limited to those resulting from (a) doctor shopping, (b) fraud in obtaining Prescription Opioids, (c) over-prescribing by physicians, (d) patients obtaining multiple, overlapping prescriptions, (e) pill mills, and (f) illegal internet pharmacies);

   c) Documents concerning any limits, quotas, or thresholds You placed on the quantities or amounts of Prescription Opioids and/or Alternative Treatments reimbursed for any particular pharmacy, doctor, or patient.

8

    d)    Documents sufficient to identify the Person(s) most knowledgeable about Your Prescription Opioid and/or Alternative Treatment claims adjudication and approval policies, procedures, and processes; and

    e)    Documents concerning any changes to these policies, procedures, and processes over time.

13. All Documents sufficient to describe Your internal controls, compliance measures, processes, and systems intended to monitor and track reimbursement for Prescription Opioids to ensure adherence to the policies, procedures, and processes identified in response to Request 12.

14. All Documents concerning evaluations and/or audits of the controls, compliance measures, processes, and systems identified in response to Request 13.

15. All Documents sufficient to describe Your processes and systems for identifying, monitoring, reporting, and taking corrective action against Suspicious pharmacies, doctors, patients, and claims, including any course of action considered or pursued to ensure that health care providers or pharmacies did not recommend, prescribe, or dispense Prescription Opioids for other than legitimate medical purposes or otherwise write unnecessary prescriptions to patients.

16. All Documents concerning actions taken by You to reduce, restrict, or limit the number of Prescription Opioids prescribed, dispensed, or reimbursed, including any efforts to prohibit or otherwise restrict the prescribing, dispensing, or reimbursement of Prescription Opioids for chronic non-cancer pain.

17. All Documents concerning any claims for reimbursement for Prescription Opioids that were appealed, disputed, or denied reimbursement by You in the Plaintiff Jurisdictions, including but not limited to any claims refused as Suspicious or medically unnecessary Prescription Opioid prescriptions.

18. All Documents concerning any efforts You undertook to report, assess, study, analyze, review, or audit Your reimbursement of claims for Prescription Opioids, including but not limited to any assessments of the cost or financial impact of reimbursing or of denying reimbursement for Prescription Opioids.

## *Rebates and Formulary or Preferred Drug List Status*

19. Documents sufficient to identify all rebates (including supplemental rebates) received by You for all Prescription Opioids reimbursed in the Plaintiff Jurisdictions (*i.e*, all reimbursements identified in response to Request 10), by quarter and in the aggregate, and by National Drug Code.

20. Documents sufficient to identify all rebates (including supplemental rebates) received by You for all Alternative Treatments reimbursed in the Plaintiff Jurisdictions (*i.e*, all reimbursements identified in response to Request 11), by quarter and in the aggregate, and by National Drug Code or other identifier where applicable.

21. Documents sufficient to identify the status or placement of all Prescription Opioids on all drug formularies or preferred drug lists available to Your beneficiaries in the Plaintiff Jurisdictions, including any changes made to the drug formularies or preferred drug lists during the Relevant Time Period.

22. All contracts, memoranda of understanding, or agreements between You and any pharmaceutical manufacturers concerning rebates (including supplemental rebates) or formulary or preferred drug list placement for all Prescription Opioids and all Alternative Treatments.

## *Data Analysis and Utilization Review*

23. Documents sufficient to describe any electronic processing capabilities You have had access to or utilized to identify potentially Suspicious or problematic pharmacies, doctors,

and patients (including patients suspected of "doctor shopping" or "pharmacy hopping," who received treatment for Prescription Opioid abuse, were admitted to a hospital for a Prescription Opioid overdose, delivered infants with Neonatal Abstinence Syndrome or Neonatal Opioid Withdrawal Syndrome, and/or died from Prescription Opioid exposure, whether or not Prescription Opioids were the only cause of death), or to determine whether Prescription Opioid claims involved a prescription that was medically necessary or otherwise eligible for payment.

24. Documents sufficient to describe the policies and procedures You have implemented to perform any prospective, retrospective, or other utilization review of Prescription Opioids.

25. All Documents concerning the results of any utilization review of Prescription Opioids in the Plaintiff Jurisdictions, including all Documents concerning any corrective actions taken as a result of such utilization review.

*Alternative Treatments*

26. Documents sufficient to describe any policies or procedures You have implemented and/or considered concerning the coverage or reimbursement of Alternative Treatments.

27. Documents sufficient to identify each instance in which You added or removed a Prescription Opioid or Alternative Treatment on any of Your drug formularies or preferred drug or treatment lists.

28. Documents sufficient to identify any Prescription Opioid or Alternative Treatment on any of Your drug formularies or preferred drug or treatment lists requiring prior authorization or step edits, and the reasons for any instance during the Relevant Time Period in which You, or

anyone acting on Your behalf, added or removed a prior authorization requirement or step edit for any such treatment.

29. All Documents concerning Your knowledge and understanding of Alternative Treatments, including without limitation your awareness of treatment guidelines issued by professional groups or by You.

30. All Documents discussing, analyzing, or comparing the cost of reimbursing for Prescription Opioids with the cost of reimbursing for Alternative Treatments.

31. All Documents concerning the cost of reimbursing Prescription Opioids or Alternative Treatments for Medicaid recipients.

*Actions and Interactions Concerning Opioid Abuse and Diversion*

32. All Documents concerning any Communications or interactions You have had with other entities concerning Prescription Opioid abuse or diversion, including but not limited to interactions with (a) pharmacies, (b) the West Virginia Board of Pharmacy, (c) the West Virginia Board of Medicine, (d) the West Virginia Board of Osteopathic Medicine, (e) the West Virginia State Board of Examiners for Licensed Practical Nurses, (f) the West Virginia State Board of Examiners for Registered Professional Nurses, (g) the West Virginia Board of Dentistry, (h) doctors and other healthcare providers, (i) patients and beneficiaries, (j) pharmacy benefit managers, (k) drug manufacturers, (l) drug wholesalers and distributors, including Defendants, (m) federal government agencies and law enforcement, (n) state and local agencies and law enforcement, (o) the West Virginia Controlled Substances Monitoring Program, and/or (p) policymakers and government officials within legislative or administrative bodies.

33. All Documents concerning any Communications or interactions You have had with industry trade groups and associations concerning Prescription Opioid misuse, abuse, and

diversion, including but not limited to interactions with the (a) Healthcare Distribution Management Association, (b) Healthcare Distribution Alliance, (c) Pain Care Forum, (d) National Association of Chain Drug Stores, (e) Pharmaceutical Research and Manufacturers of America, (f) West Virginia Pharmacists Association, (g) American Society of Consultant Pharmacists, (h) American Pharmacists Association, (i) Federation of State Medical Boards, (j) American Academy of Pain Medicine, (k) Alliance for Patient Access, (l) U.S. Pain Foundation, and/or (m) American Geriatrics Society.

***Knowledge of and Response to the Opioid Crisis***

34. All Documents concerning Your or Plaintiffs' knowledge of the prescribing, dispensing, use, misuse, abuse, sale, diversion, production, distribution, purchase, and trafficking of Prescription Opioids within or into the Plaintiff Jurisdictions.

35. Documents sufficient to identify any instance in which You identified a pharmacy, doctor, or patient (including any "pill mills" or "internet pharmacies") as Suspicious or as improperly dispensing, prescribing, abusing, or diverting Prescription Opioids, including all Documents identifying the date on which You became aware of each such Suspicious Person or entity, and any actions taken by You to shut down, curtail, or otherwise reduce the harmful effects of each such Suspicious Person or entity.

36. Documents sufficient to identify any actions considered, rejected, or taken (including reporting to any local, state, or federal agency or law enforcement) against any pharmacies, doctors, or patients You knew or suspected were improperly dispensing, prescribing, abusing, or diverting Prescription Opioids, including any Persons or entities identified in response to Request 35.

37. All Documents concerning any initiatives or efforts by You to abate the opioid epidemic in any way, including but not limited to:

    a) Documents describing any of Your efforts to educate prescribers and patients regarding the risks and benefits of Prescription Opioids (including the risk of addiction);

    b) Documents sufficient to show reimbursement for addiction treatment for patients who are already addicted to Prescription Opioids, and reimbursement for naloxone to decrease fatal overdoses;

    c) All Documents concerning investigations You conducted in response to Suspicious order reports submitted by any wholesale distributor of Controlled Substances to the West Virginia Board of Pharmacy or other government entity; and

    d) All Documents concerning any studies, reports, investigations, analyses, or other actions taken to ensure that any Prescription Opioids reimbursed were safe and effective for their intended use.

38. All Documents concerning any efforts made by You to utilize the West Virginia Controlled Substances Monitoring Program to identify pharmacists, pharmacy interns, doctors or other prescribers, or patients who might be diverting or abusing Prescription Opioids or other Controlled Substances.

39. All Documents concerning any studies, reports, investigations, or analyses regarding actual or suspected misuse, abuse, or diversion of Prescription Opioids about which You had knowledge, including but not limited to those that You prepared, received, or participated in.

40. All Documents concerning any efforts You have made to encourage the prescribing and use of Prescription Opioids.

41. All Documents concerning any efforts You have made to discourage the prescribing, abuse, or diversion of Prescription Opioids.

42. All Documents You prepared, received, or considered concerning the dangers, side effects, and addiction risks of Prescription Opioids, and/or ways to combat the problem of abuse and diversion of Prescription Opioids.

43. All Documents You prepared, received, or considered concerning the benefits, efficacy, and legitimate uses of Prescription Opioids in the treatment of pain.