# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CITY OF HUNTINGTON,**

 **Plaintiff,**

              Civil Action No. 3:17-01362

v.

**AMERISOURCEBERGEN DRUG CORPORATION, et. al,**

 **Defendants.**

**AND**

**CABELL COUNTY COMMISSION,**

 **Plaintiff,**

              Civil Action No. 3:17-01665

v.

**AMERISOURCEBERGEN DRUG CORPORATION, et. al,**

 **Defendants.**

## AFFIDAVIT OF WEST VIRGINIA OFFICES OF THE INSURANCE COMMISSIONER DEPUTY COMMISSIONER/GENERAL COUNSEL ERIN HUNTER

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, to-wit:

I, Erin K. Hunter, being first duly sworn do depose and say as follows:

1. As the Deputy Insurance Commissioner and General Counsel for the West Virginia Offices of Insurance Commissioner, I submit this affidavit in support of "Non-Party West Virginia Offices of the Insurance Commissioner's Motion to Quash Defendant

McKesson Corporation's Subpoena to Produce Document and Subpoena to Testify at a Deposition in a Civil Action."

2. I am fully aware of the facts set forth herein.

3. On March 17, 2020, McKesson Corporation served the WVOIC with two broad subpoenas for documents and deposition testimony. The time of service coincided with the Covid-19 pandemic, which has drastically impacted the operations of the WVOIC.

4. In response to the Covid-19 pandemic, the WVOIC has closed its buildings and the entirety of its staff is either working remotely or has been placed on administrative leave. WVOIC employees that are working remotely do not have full access to materials potentially responsive to the document subpoena and/or have limited functionality.

5. The office closures are anticipated to be in effect for at least two weeks and are likely to be lengthened based upon the evolving nature of the pandemic.

6. Many WVOIC employees have been diverted from their usual job duties to complete tasks to assist in the State's response to the Covid-19 pandemic.

7. As the Covid-19 pandemic is having a significant affect or impact on health insurers, healthcare providers, workers' compensation claimants and workers' compensation insurers, as well as raising many issues surrounding business interruption insurance coverage, the WVOIC is dedicating a high percentage of its time to dealing with the pandemic and the insurance regulatory ramifications thereof.

8. Data collection based upon the language in the subpoenas would take three to four months.

9. Data collection would necessitate one employee devoting 50 percent of their time and other employees devoting time to assist and support as needed.

10. The data compilation will be tenuous because the subpoenas command a large amount of data, but have failed to ask for anything specific that assists in developing codes and search parameters.

11. The WVOIC is unsure as to whether it will be able to develop search parameters to obtain information responsive to McKesson's requests in regard to the claims data from the former Workers' Compensation Commission.

12. McKesson's requests regarding "alternative treatments" will likely overlap with prescription claims. The WVOIC would not be able to determine whether the treatment was, in fact, an alternative to opioids without doing a manual claim file review of tens or hundreds of thousands of claims, possibly more.

13. Many of the WVOIC's pre-2000 materials are on microfiche.

14. Many years of the WVOIC's scanned files are in TIF or PDF format that are unsearchable.

15. The subpoena requests could necessitate the review of millions of pages of claim files that contain – in addition to protected health information – Personally Identifiable Information ("PII") that would need to be reviewed and redacted.

16. Prior to January 1, 2006, all workers' compensation claims in West Virginia were administered and paid by the former Workers' Compensation Commission (with the exception that some self-insured employers administered their own claims). When the former Workers' Compensation Commissioner ceased to exist, the WVOIC took over the remaining duties, which included administration of the run-off funds, as well the

uninsured employer's fund. There are millions of claims filed from the former Workers' Compensation Commission that the WVOIC may, partially at least, have access to that could have prescription medication payment information responsive to McKesson's broad subpoena request.

17. Since the time of workers' compensation, the WVOIC has had contracts with various third-party administrator vendors who have provided services to the run-off funds, as well as the uninsured employer fund and the state agency workers' compensation program, which may have information responsive to this subpoena.

18. It will take several WVOIC employees to testify in relation to the topics of examination delineated in the subpoena. This could potentially include an Assistant Commissioner, employees from the claim management division, employees from the WVOIC fraud department, and WVOIC's Inspector General. Given the broad timeframe of the command, it may also require testimony from prior Inspectors General and former WVOIC claims management employees. Further, testimony from WVOIC's third party vendors may be necessary.

FURTHER, YOUR AFFIANT SAITH NAUGHT.

_____
Erin K. Hunter[1]
Deputy Insurance Commissioner/
General Counsel

Case 3:17-cv-01362  Document 259-3  Filed 03/30/20  Page 4 of 5 PageID #: 9263

---

[1] Due to the evolving Covid-19 pandemic and directives for social distancing, the affiant was unable to have this affidavit notarized. If requested, WVOIC can supplement this filing with a notarized affidavit once the WVOIC's offices have reopened.