UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CITY OF HUNTINGTON,**

    **Plaintiff,**

v.                                                 Civil Action No. 3:17-01362

**AMERISOURCEBERGEN DRUG
CORPORATION, et. al,**

    **Defendants.**

**AND**

**CABELL COUNTY COMMISSION,**

    **Plaintiff,**

v.                                                 Civil Action No. 3:17-01665

**AMERISOURCEBERGEN DRUG
CORPORATION, et. al,**

    **Defendants.**

**NON-PARTY WEST VIRGINIA OFFICES OF THE INSURANCE COMMISSIONER'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH DEFENDANT
MCKESSON CORPORATION'S SUBPOENA TO PRODUCE DOCUMENTS AND
SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

      Non-Party West Virginia Offices of the Insurance Commissioner ("WVOIC") files this Memorandum of Law in support of its Motion to Quash two subpoenas served upon it on March 17, 2020 by Defendant McKesson Corporation. Specifically, WVOIC has moved this Court, pursuant to Rules 26 and 45(d)(3) of the Federal Rules of Civil Procedure, to quash the subpoena to produce documents and the subpoena to testify at a deposition in a civil action on the grounds that the subpoenas do not provide a reasonable time for compliance. In addition to an unreasonable

time for compliance, the broad scope of the subpoenas would render compliance unduly burdensome and the subpoenas seek information that is statutorily confidential. The WVOIC has additionally moved to stay the deposition demanded for March 31, 2020. In the alternative, the WVOIC requests that this Court modify the subpoenas served upon the WVOIC to provide a more reasonable time for compliance following the end of Covid-19 related office closures and to reflect a less burdensome scope.

Pursuant to Local Rule 37.1, counsel for the WVOIC has corresponded with counsel for the issuing party McKesson Corporation regarding the issues raised in this motion. However, counsel has been unable to come to an agreement at this time.

## I. FACTUAL BACKGROUND

The WVOIC is a non-party in the above-captioned matter. On March 17, 2020, McKesson Corporation served the WVOIC with two subpoenas. The subpoena for documents demanded WVOIC to produce by March 31, 2020 forty-three (43) expansive categories of documents from 1996 to present. *See* Attachment A to Motion to Quash. The command included, but was not limited to, documents pertaining to contractors used for administering pharmacy benefits; the organizational structure of the WVOIC; workers' compensation claims data; knowledge of various opioid tracking databases; reimbursements paid for prescription opioids; policies for processing, tracking, and adjudicating claims for reimbursement of prescription opioids; evaluations and audits; actions taken against suspicious pharmacies; rebates and formulary or preferred drug list status; data analysis of potentially suspicious or problematic pharmacies, doctors, and patients; practices, policies, discussions of and procedures for "alternative treatments"; actions and interactions with numerous entities regarding prescription opioid abuse and diversion; and knowledge of and response to the opioid crisis.

Meanwhile, the subpoena to testify at a deposition demanded testimony for twenty-one (21) broad categories. *See* Attachment B to Motion to Quash. The topics for examination included, but were not limited to, policies, procedures, and practices for prescription opioid dispensing and reimbursement; placement of opioids on drug formularies and preferred drug lists; identification of suspicious pharmacies, providers, patients, and claims; investigations undertaken by the Insurance Fraud Unit and Special Investigations Unit; knowledge of and access to tracking systems; knowledge of and efforts taken in response to opioid abuse; collaboration with various entities; knowledge of diversion of prescription opioids; role in expanding Medicaid coverage for prescription opioids; considerations of legitimate medical needs; causes of opioid use; organizational structure of the WVOIC; and the subject matter of the documents in the simultaneously served document subpoena. Unlike the 24-year period provided in the subpoena for documents, the subpoena for a deposition included no direction on the applicable time frame.

In both subpoenas, and as further detailed below, the production categories are very broad and would likely implicate the WVOIC's statutory confidentiality provisions. *See* W. Va. § Code 33-2-19; W. Va. Code § 33-41-7; W. Va. Code § 23-1-4.

On March 18, 2020, undersigned counsel contacted McKesson's counsel in an effort to obtain a time extension. Specifically, undersigned counsel shared that the Covid-19 pandemic created logistical hurdles to the compilation and review of materials potentially responsive to the subpoena. In addition, the office closure and document compilation issues would make it impossible to adequately prepare numerous witnesses for deposition. In rejecting the WVOIC's request for a 60-day extension, McKesson's counsel countered that it could extend the subpoenas to only April 18, 2020.

Undersigned counsel discussed the subpoenas again with McKesson's counsel on March 25, 2020. At that time, WVOIC indicated that additional review of the subpoenas indicated that compliance by March 31, 2020, the extended deadline of April 18, 2020, or any time soon thereafter would be impossible. McKesson's counsel again rejected the request for a less oppressive time to respond.

On March 27, 2020, undersigned counsel again participated in a phone conference with McKesson's counsel. While the dialogue remains open between the parties to potentially narrow the scope of the subpoena commands, McKesson's counsel has maintained its positon that it cannot extend the compliance date for the document subpoena beyond April 18, 2020 due to the scheduling order in this matter. McKesson's counsel indicted that there could potentially be more leeway with the scheduling of depositions. As a satisfactory resolution could not be reached in advance of the March 31, 2020 return date for the subpoenas, the WVOIC is compelled to file this Motion to Quash to protect its interests.

The Covid-19 pandemic has drastically impacted the operations of the WVOIC, including the closure of its buildings. *See* Exhibit 3 to Motion to Quash. Employees who have the capability to work remotely are doing so, while others have been placed on administrative leave. *Id.* WVOIC employees that are working remotely do not have full access to materials potentially responsive to the document subpoena and/or have limited functionality. *Id.* Due to the closure of WVOIC buildings, WVOIC employees are also unable to meaningfully prepare for deposition. The office closures are anticipated to be in effect for at least two weeks and are likely to be lengthened based upon the evolving nature of the pandemic. *Id.*

In addition to lacking access to their normal workspaces, many WVOIC employees have been diverted from their usual job duties to complete tasks to assist in the State's response to the

Covid-19 pandemic. *Id.* The mission of the WVOIC is to promote a competitive and solvent insurance market with adequate consumer protection by fairly and consistently administering the insurance laws of West Virginia. As the Covid-19 pandemic is having a significant affect or impact on health insurers, healthcare providers, workers' compensation claimants and workers' compensation insurers, as well as raising many issues surrounding business interruption insurance coverage, the WVOIC is dedicating a high percentage of its time to dealing with the pandemic and the insurance regulatory ramifications thereof. *Id.* Compliance with the subpoena under its current time restraints would jeopardize the WVOIC's ability to fully respond to Covid-19 issues.

Concerns regarding the Covid-19 pandemic have been expressed by this Court. On March 23, 2020, this Court issued an order acknowledging that the Centers for Disease Control and Prevention and other public health authorities have advised taking precautions to reduce potential exposure to the Coronavirus.[1] The Court further continued all civil and criminal trials scheduled to commence through April 24, 2020, and postponed all in-person proceedings through April 24, 2020.

Also on March 23, 2020, West Virginia Governor Jim Justice issued Executive Order No. 9-20 ordering West Virginians to stay at home unless performing an essential function.[2] It is unknown when the Stay at Home order will be lifted.

On March 29, 2020, President Donald Trump extended federal distancing guidelines to April 30, 2020.[3] Among other instructions, these guidelines direct Americans to work from home if possible and avoid gathering in groups of ten or more.

---

[1] *See* General Order #3: In re Court Operations in Light of the Exigent Circumstances Presented by the Covid-19 Pandemic: https://www.wvsd.uscourts.gov/pdfs/generalorders/covid19/Gen%20Order%203%20with%20header.pdf
[2] *See* State of West Virginia Executive Order No. 9-20: https://coronavirus-wvgovstatus-cdn.azureedge.net/STAY_AT_HOME_ORDER.pdf
[3] *See* The President's Coronavirus Guidelines for America: https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf

5

Even absent Covid-19 issues, the subpoenas and their broad commands provide an unreasonable time for compliance. Data collection based upon the language in the subpoenas would take three to four months. *See* Exhibit 3 to Motion to Quash. This collection would necessitate one employee devoting 50 percent of their time and other employees devoting time to assist and support as needed. *Id*. The data compilation will be tenuous because the subpoenas command a large amount of data, but have failed to ask for anything specific that assists in developing codes and search parameters. *Id*. Also at this time, the WVOIC is unsure as to whether it will be able to develop search parameters to obtain information responsive to McKesson's requests in regard to the claims data from the former Workers' Compensation Commission. *Id*. Furthermore, McKesson's requests regarding "alternative treatments" will likely overlap with prescription claims. The WVOIC would not be able to determine whether the treatment was, in fact, an alternative to opioids without doing a manual claim file review of tens or hundreds of thousands of claims, possibly more. *Id*. Other issues delaying data compilation include that many pre-2000 materials are on microfiche, many years of scanned files are in TIF or PDF format that are unsearchable, and all of the millions of pages of claim files contain – in addition to protected health information – Personally Identifiable Information ("PII") that would need to be reviewed and redacted. *Id*.

The scope of the subpoenas are also very broad due to McKesson Corporation's definition of "You" and "Your" to "refer to the West Virginia Offices of the Insurance Commissioner and its divisions, subdivisions, offices or departments, and all others acting or purporting to act on Your behalf, or controlled by You, including any affiliates, programs, employees, directors, agents, contractors, representatives, board members, committees, subcommittees, working groups and task forces." *See* Exhibits A and B to Motion to Quash at para. 4. Prior to January 1, 2006, all workers'

compensation claims in West Virginia were administered and paid by the former Workers' Compensation Commission (with the exception that some self-insured employers administered their own claims). *See* Exhibit C to Motion to Quash. When the former Workers' Compensation Commission ceased to exist, the WVOIC took over the remaining duties, which included administration of the run-off funds, as well the uninsured employer's fund. *Id*. There are millions of claims filed from the former Workers' Compensation Commission that the WVOIC may have at least partial access to that could have prescription medication payment information responsive to McKesson's broad subpoena request. *Id*. In addition, since the time of workers' compensation, the WVOIC has had contracts with various third-party administrator vendors who have provided services to the run-off funds, as well as the uninsured employer fund and the state agency workers' compensation program. The WVOIC will need to review the applicable contracts and reach out to those vendors as necessary to obtain information that would fall within the WVOIC's care, control, and custody. It is additionally notable that WVOIC's third party vendors are likewise dealing with insurance and healthcare issues created by the COVID-19 pandemic.

In addition to data and document compilation delays, the scope of the deposition subpoena will result in preparation impediments. It will take several WVOIC employees to testify in relation to the topics of examination delineated in the subpoena. *Id*. This could potentially include an Assistant Commissioner, employees from the claim management division, employees from the WVOIC fraud department, and WVOIC's Inspector General. *Id*. Given the broad timeframe of the command, it may also require testimony from prior Inspectors General and former WVOIC claims management employees. *Id*. Further, testimony from WVOIC's third party vendors may be necessary.

## II.     ARGUMENT

For the reasons stated herein and pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, good cause exists for this Court to quash the subpoenas served on the WVOIC by McKesson Corporation. Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). Pursuant to Rule 26, a Court may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" up to and including "forbidding the disclosure or discovery." Fed.R.Civ.P. 26(c). A court must also limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit..." Fed.R.Civ.P. 26(b)(2)(C).

Rule 45 governs subpoenas to nonparties and permits the same scope of discovery as Rule 26. *Brown v. Meehan*, 2014 WL 4701170 (E.D. Va. Sep. 22, 2014). Rule 45(d)(3) of the Federal Rules of Civil Procedure provides that, upon timely motion, a Court "*must* quash or modify a subpoena" if it "(i) fails to allow reasonable time to comply;…(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." (emphasis added). The movant carries the burden of proving that a subpoena should be quashed. *Deakins v. Pack*, 2012 WL 626200 (S.D.W. Va. Feb. 24, 2012).

### A.     The Subpoenas Do Not Allow a Reasonable Amount of Time to Comply.

The subpoenas served upon the WVOIC by McKesson Corporation do not allow a reasonable time to comply due to the evolving Covid-19 pandemic and the broad scope of the information commanded. Rule 45(c)(3)(i) provides that the Court "*must* quash or modify a subpoena that fails to allow a reasonable time to comply." (emphasis added). The Federal Rules

of Civil Procedure do not prescribe a minimum or maximum amount of time for compliance with a subpoena.

"In determining whether a subpoena should be quashed, the Court should consider the facts of the case and the issuing party's need for the information subject to the subpoena *duces tecum.*" *Deakins* (citing to *Ohio Valley Environmental Coalition, Inc. v. United States Army Corps of Engineers,* 2012 WL 112325, *2 (N.D .W.Va. Jan. 12., 2012)). The "reasonableness of the time allowed for compliance seems to be judged depending on the underlying circumstances." *Freeport McMoran Sulpher, LLC v. Mike Mullen Energy Equip. Res., Inc.,* 2004 WL 595236 (E.D. La. Mar. 23, 2004).

The subpoenas issued by McKesson Corporation provide fourteen (14) days for compliance and counsel for McKesson would not agree to an extension beyond April 18, 2020. The current circumstances of an unprecedented and evolving global pandemic render the 14-day or 30-day compliance window unreasonable. These timeframes do not allow WVOIC and its counsel enough time to collect, review, and produce the commanded documents and to meaningfully prepare numerous employees for deposition.

The 14-day and 30-day time frame is further unreasonable because the entirety of the WVOIC workforce is either working remotely or has been placed on administrative leave. The WVOIC offices have been closed until further notice and the employees that are working remotely do not have full access to potentially responsive documents. The limited functionality of WVOIC's staff also renders it impossible for employees to effectively prepare for deposition. As the deposition is currently framed, numerous current and former WVOIC employees could be required to be deposed.

In addition to the logistical inability to review potentially responsive documents and prepare for deposition during the ongoing and expanding pandemic, many WVOIC employees have been diverted from their usual tasks to work on issues related to Covid-19. The WVOIC staff has been focused on issuing numerous Emergency Orders, Insurance Bulletins, and Consumer Notices. The regulation of the insurance market is of heightened importance during the Covid-19 crisis and devoting staff to the compilation and review of a massive amount of documents and deposition preparation is not reasonable during the current public health crisis.

In addition to being unable to adequately prepare for deposition, it is unreasonable for McKesson Corporation to demand numerous WVOIC employees to appear for deposition during West Virginia's Stay at Home order and during a period when public health officials are instructing all persons to practice social distancing. The conduct of these depositions on March 31, 2020, April 18, 2020, or soon thereafter could very likely be detrimental to the health of WVOIC's employees and their families. The import of social distancing has been acknowledged by this Court in its March 23, 2020 order, which continued all in-person proceedings.

In addition to the circumstances of a global health emergency, the expansive time scope of the compelled documents render the subpoenas' short period for compliance unreasonable. Specifically, the document subpoena requests documents from 1996 to current. This command for documents from over two decades, including health and investigation information which may be sensitive, cannot be produced without careful review. Meanwhile, the WVOIC has no direction from McKesson regarding the applicable time frame for the deposition of WVOIC employees.

McKesson has requested massive amounts of information that would necessitate a large coordination by the WVOIC. As stated above, the collection of the subpoenaed data could take three to four months. Completion in an extended timeframe would entail one employee devoting

50 percent of their time and several others devoting portions of their work day. The lack of search parameters in the massive document and data command would cause additional delay. As the commands are currently drafted, the WVOIC could have to manually review millions of pages of claims.

In sum, McKesson's oppressive time frame for compliance with its document and deposition subpoenas do not allow anywhere near enough time to collect, review, and produce documents and prepare potential witnesses. Non-party WVOIC cannot reasonably comply with the subpoenas within this time frame, and asks this Court to quash the subpoenas and stay the deposition of the WVOIC. In the alternative, the WVOIC requests that this Court modify the subpoenas due to the amount of time and labor that would be necessary to produce the documents and prepare for deposition.

### B.     The Subpoenas are Unduly Burdensome.

The WVOIC requests that this Court protect it as a non-party from the undue burden that will result from McKesson Corporation's overly broad subpoenas. As detailed below, the scope of the subpoenas are profoundly sweeping and unreasonably overbroad, and complying with them would be unduly burdensome to the WVOIC.

Rule 45(d)(3)(A)(iii) provides that "the court for the district where compliance is required *must* quash or modify a subpoena that…subjects a person to undue burden." (emphasis added). When conducting an analysis under Rule 45, the Court is required to apply the balancing standards: relevance, need, confidentiality, and harm. *Brown v. Meehan*, 2014 WL 4701170 (E.D. Va. Sept. 22, 2014) (citing to *In re NCAA Student–Athlete Name & Likeness Licensing Litig.*, 2012 U.S. Dist. LEXIS 84144, 2012 WL 2281253 (M.D.N.C. June 18, 2012)).

Even if the information sought is relevant, discovery is not allowed where compliance is unduly burdensome or where the potential harm caused by production outweighs the benefit. *See In re: Modern Plastics Corporation*, 890 F.3d 244, 251 (6th Cir. 2018), cert. denied, 139 S. Ct. 289, 202 L. Ed. 2d 136 (2018) (Courts must "balance the need for discovery against the burden imposed on the person ordered to produce documents," and the status of that person as a non-party is a factor). Moreover, "[a] subpoena imposes an undue burden on a party when [it] is overbroad." *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 241 (E.D. Va. 2012) (citing to *In re Subpoena Duces Tecum.,* 550 F.Supp.2d at 612).

Here, the subpoena issued to non-party WVOIC should be quashed because compliance is unduly burdensome and the potential harm outweighs the benefit under the balancing standard. The WVOIC serves the public as the state regulator of the insurance industry and does so with limited resources. The regulation of insurance has become more complicated during the current and evolving pandemic. To divert resources from Covid-19 duties to comply with the broad subpoenas would not best serve the interests of the public.

The subpoenas issued by McKesson also create undue burden on the WVOIC because they are overbroad in substance and scope of time. The document subpoena commands the production of materials over a 24-year time period, fails to make requests in a way in which search parameters can be devised, and would necessitate the review of millions of pages of claim files. The completion of this task will require the half-time dedication of one staff member and partial time dedication of several other WVOIC employees. Further, the subpoena's broad definition of "You" will necessitate WVOIC's collaboration with numerous third-party administrators, who are also handling insurance implications related to the Covid-19 pandemic. Also due to the broad definition of "You", portions of the subpoenas' requests fall outside the proper scope of a Rule 45 subpoena,

which expressly permits a party to issue discovery subpoenas to a nonparty for documents and things in the nonparty's possession, custody, or control. Once the Covid-19 pandemic has allowed WVOIC to review its contracts with third party administrators, it is likely that some of the information compelled in the subpoenas is not within WVOIC's possession, custody, or control.

The broad commands of the deposition subpoena will also require considerable preparation for numerous current and former WVOIC employees. Due to Covid-19 closures and diversion to Covid-19 tasks, it would place undue burden on the WVOIC to engage in extensive witness preparation at this time.

The subpoenas' requested mechanisms for production are also unduly burdensome and inconsistent with the Federal Rules of Civil Procedure. Specifically, McKesson requests that the documents be produced in a specific electronic format with document unitization, utilizing a specific file naming convention, and including certain objective coding and extracted meta-data. Per Rule 45(e)(1)(A) of the Federal Rules of Civil Procedure, the WVOIC may produce any responsive documents as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the subpoena. The recipient of the subpoena may choose the manner in which to produce documents. As a result, McKesson's demand for a very specific organization and method of production would not only impose undue burden on the WVOIC, but is also in direct conflict with the Federal Rules of Civil Procedure.

### C. The Subpoena Commands Information that is Likely Confidential.

Even if the timeframe for compliance was not unreasonable and the scope of the subpoenas were not unduly burdensome, some of the information commanded by McKesson Corporation is

likely confidential.[4] Rule 45(d)(3)(A)(iii) of the Federal Rules of Civil Procedure provides that a Court must quash a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies.

There are many statutory provisions in Chapter 33 and Chapter 23 of the West Virginia Code that make insurance investigatory materials confidential and not subject to disclosure. *See* W. Va. Code § 33-2-19 (general confidentiality of documents, materials, or other information in the possession or control of the commissioner that are obtained in an investigation of any suspected violation); W. Va. Code § 33-2-9 (confidentiality of working papers, recorded information, documents, and copies thereof obtained or disclosed during examination, analysis or review of a regulated entity); W. Va. Code § 33-41-7 (confidentiality of documents, material, or other information in an investigation of alleged fraudulent acts related to the business of insurance); and W. Va. Code § 23-1-4 (confidentiality of information obtained regarding employers and claimants for workers' compensation). As WVOIC employees lack full access to its files due to the evolving Covid-19 pandemic, the WVOIC is unable to definitively determine what materials may or may not be subject to production due to statutory confidentiality provisions.

The subpoenas issues by McKesson Corporation also seek highly sensitive medical information. Much of the workers' compensation claim information is protected from disclosure by the Health Insurance Portability and Accountability Act ("HIPAA"). *See* 45 C.F.R. §§ 160.103, 160.502(g). The WVOIC is aware that the protective orders in this matter specifically address HIPAA and the mode of document production for highly sensitive medical information. Specifically, in Case Management Order No. 2, the Court specifically found that disclosure of

---

[4] Due to the Covid-19 pandemic and the inability to compile and review all potentially responsive information, the WVOIC is unable to definitively determine at this time what confidentiality provisions would be applicable. Therefore, the WVOIC does not waive the right to raise additional objections based upon confidentiality issues.

protected health information is necessary for the conduct of these proceedings and limits the possible uses of that information. The order further required that when produced, the documents be marked with "Confidential Protected Health Information" on each page of each document. While the WVOIC may not prevail on its motion to quash the production of confidential health information, the process of producing HIPPA protected records will nonetheless be very cumbersome and require significant time. This further substantiates that McKesson's short timeframe for compliance is severely oppressive.

### III.   CONCLUSION

For the reasons stated herein and pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, the WVOIC respectfully requests that the Court enter an order quashing the March 17, 2020 document and deposition subpoenas issued to it. The WVOIC additionally requests a stay of the March 31, 2020 deposition.  In the alternative, the WVOIC requests that this Court issue an order mandating that the subpoenas' time for compliance be expanded to a period when the unprecedented pandemic-related closures have ended and be limited to a less burdensome scope.

    **Respectfully submitted,**

    **WEST VIRGINIA OFFICES OF THE**
    **INSURANCE COMMISSIONER**

    By Counsel,

**PATRICK MORRISEY**
**ATTORNEY GENERAL**

*/s/ Cassandra L. Means*
**CASSANDRA L. MEANS (WVSB# 10522)**
**ASSISTANT ATTORNEY GENERAL**
West Virginia Attorney General's Office
Building 1, Room W-435
Charleston, West Virginia  25305
Phone: 304-558-2522
Email: cassandra.l.means@wvago.gov

15

## CERTIFICATE OF SERVICE

I, Cassandra L. Means, Assistant Attorney General, do hereby certify that on March 30, 2020 the foregoing "Non-Party West Virginia Offices of the Insurance Commissioner's Memorandum of Law in Support of Motion to Quash Defendant McKesson Corporation's Subpoena to Produce Documents and Subpoena to Testify at a Deposition in a Civil Action" was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECR participant:

Jeffrey M. Wakefield

*Cassandra L. Means*

**CASSANDRA L. MEANS (WVSB# 10522)**
**ASSISTANT ATTORNEY GENERAL**
West Virginia Attorney General's Office
Building 1, Room W-435
Charleston, West Virginia  25305