## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CITY OF HUNTINGTON,**
      **Plaintiff,**
**v.**                                 **CIVIL ACTION NO. 3:17-01362**
**AMERISOURCEBERGEN DRUG**
**CORPORATION, et al.,**
      **Defendants.**

---

**CABELL COUNTY COMMISSION,**
      **Plaintiff,**                       *Consolidated case:*
**v.**                                 **CIVIL ACTION NO. 3:17-01665**
**AMERISOURCEBERGEN DRUG**
**CORPORATION, et al.,**
      **Defendants.**

## PLAINTIFFS' MOTION TO COMPEL
## DEFENDANTS' COMMUNICATIONS WITH THE DEA

COME NOW Plaintiffs, CITY OF HUNTINGTON and CABELL COUNTY COMMISSION, who submit this motion to compel Defendants' communications with the DEA pursuant to Rules 26(a)(1)(A)(ii) and 37 of the Federal Rules of Civil Procedure, and in support thereof state as follows:

1.      It has become apparent that Defendants intend to rely on communications with the DEA to support their defense that their suspicious order monitoring systems ("SOMS") were approved by the DEA, claiming that some of these approvals occurred as far back as the 1980's. Plaintiffs herein seek an order compelling Defendants to identify and produce all communications with the DEA from 1980 to present.

2.      Until recently, this issue was pending before Special Master David Cohen in MDL 2804. Special Master Cohen ruled on March 5, 2020, that this issue was appropriate for consideration in CT2. Plaintiffs attach hereto as Exhibit A the correspondence among the parties and Special Master related to this issue.

3.      The general temporal scope of discovery in CT1 was limited to 2006[1] even though the SOMS at issue in this litigation were implemented by Defendants as early as the 1990's. As discovery developed, Defendants have used communications with the DEA from before 2006, upon which Defendants are relying to support that their SOMS were approved by the DEA.

4.      As the Court is well aware, the focal issues in this litigation evolve around two critical questions: a) what were the Defendants' obligations related to their SOMS and b) what SOMS did each of the Defendants have in place and what was the basis for same?  The Defendants have focused their defense in this case on the DEA and its approval (whether explicit or implied) of SOMS, as well as the lack of guidance from the DEA.  As set out more fully below, in mounting this defense Defendants are utilizing documents that pre-date the 2006 discovery cut-off.  Certainly, Defendants are entitled to utilize these documents in presenting their case, but Plaintiffs should be permitted to discover what other communications and guidance Defendants had with DEA during this timeframe.  As it currently stands, pre-2006 discovery is a one-way street on this issue. Plaintiff should be permitted to travel this street as well.

5.      Cardinal, for example, produced letters from Thomas Gitchel, then acting chief of DEA's Diversion Operations Section, to the National Wholesale Druggists' Association (predecessor to the Healthcare Distribution Alliance[2]) in 1984.[3] Cardinal contends these letters support that the DEA approved the SOMS Cardinal had in place beginning in the 1990's.[4]  Former Cardinal Vice President of Quality and Regulatory Affairs Steve Reardon also testified that

---

[1] Defendants were required to produce transactional data and suspicious order reports back to 1996. *See* Discovery Ruling Nos. 2 and 3 [Dkt. 693 & 762], *In re National Prescription Opiate Litigation*, MDL No. 2804.

[2] https://www.hda.org/about/hda-history.

[3] **Exhibit B** - CAH_MDL2804_01465723, 31-34; **Exhibit C** - Cardinal Health's Third Supplemental Responses to Plaintiffs' Combined Discovery (CT1), p. 8.

[4] *Id*.

Cardinal relied on the 1984 Gitchel letters as approval of Cardinal's SOMS implemented in the early 1990's. He testified as follows:

> Q. Now, let's talk a little bit more about these ingredient limit reports. And I've heard you say several times today that these ingredient limit reports were approved by the DEA. Tell the jury who at the DEA approved these ingredient limit reports.
>
> A. I believe there's a letter out there by Thomas Gitchel.
>
> […]
>
> Q. And when was that letter sent?
>
> A. It was around 1990.
>
> Q. And in 1990, you believe some letter is out there that exists that says it's okay to provide the ingredient limit reports?
>
> A. There was a collaboration between the DEA and the trade association to develop the report.
>
> Q. You don't happen to have a copy of that letter, do you?
>
> A. I do not.[5]

6.     Additionally, AmerisourceBergen cross-examined Plaintiffs' SOMS expert, James Rafalski, on communications between it and DEA from 1996 and 1998.[6] Counsel indicated the first of such letters was a request by ABDC for DEA to approve the SOMS system it planned to implement and that the July 1998 letter from Chief Patricia Good, Office of Diversion Control, granted the approval.

> Q. Okay. So can you read the first sentence of the letter?
>
> A. This is to grant approval of your request to implement on a nationwide basis your newly developed system to identify and report suspicious orders for controlled substances and regulated chemicals as required by the federal regulation.

---

[5] **Exhibit D** - Deposition of Steve Reardon, 421:18-422:16.

[6] **Exhibit E** - ABDCMDL00315791; ABDCMDL00315789; ABDCMDL00315783.

3

Q. And read the second sentence.

A. DEA managers who have been involved with the testing of the system have relayed their positive opinions regarding its ability to provide information in a fashion which is not only useful overall but is also responsive to the needs of individual DEA offices.

Q. You are not familiar with this letter?

A. I don't recall seeing this letter, sir.

Q. Can you read the next paragraph, please. It's short.

A. We appreciate the efforts you have undertaken to develop this improved system and apologize for the lengthy approval process. It did not seem appropriate to grant this approval prior to the conclusion of the Suspicious Order Task Force formed as a result of the Methamphetamine Control Act. Thank you for your patience in this matter.

Q. Is there any doubt in your mind having read this letter that the DEA explicitly and in writing approved Bergen Brunswig's suspicious order monitoring program on a nationwide basis?[7]

7.      Rule 26(a) requires that Defendants produce all communications with the DEA related to the Defendants' SOMS obligations.

(a) **Required Disclosures.**
(1) *Initial Disclosure.*
(A) *In General.* Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:

[…]

(ii) a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment[.][8]

---

[7] **Exhibit F** – Deposition of James Rafalski (MDL 2804, Day 1), 110:21-112:5.

[8] F.R.C.P. 26(a)(1)(A)(ii).

8.      It has become clear through the development of this litigation that communications and SOMS prior to 2006 are material to the core issues of this litigation and particularly to Defendants' defenses. Plaintiffs request an order requiring Defendants to produce all communications with the DEA back to 1980 regarding Defendants' SOMS obligations.  This timeframe would capture any communications preceding the implementation of Defendants' SOMS in the early- to mid-1990's.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request the Court to enter an order requiring Defendants to produce all correspondence with DEA related to the approval or request for approval of the Defendants' SOMS from 1980 to present.

Dated: March 31, 2020

Respectfully submitted,

Plaintiffs,

THE CITY OF HUNTINGTON and
CABELL COUNTY COMMISSION

/s/ *Michael J. Fuller, Jr.*
Michael J. Fuller, Jr. (WV Bar No. 10150)
**McHUGH FULLER LAW GROUP, PLLC**
97 Elias Whiddon Rd.
Hattiesburg, MS  39402
T: 601-261-2220
F: 601-261-2481
mike@mchughfuller.com

Paul T. Farrell, Jr. (WVSB No. 7443)
**FARRELL LAW**
422 Ninth Street, 3rd Floor (25701)
P.O. Box 1180
Huntington, WV  25714-1180
Tel:  304-654-8281
paul@farrell.law

Anne McGinness Kearse (WVSB No. 12547)
Joseph F. Rice
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel:  843-216-9000
Fax:  843-216-9450
akearse@motleyrice.com
jrice@motleyrice.com

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on March 31, 2020, a copy of the foregoing **PLAINTIFFS' MOTION TO COMPEL DEFENDANTS' COMMUNICATIONS WITH THE DEA** has been filed electronically using the Court's CM/ECF system and will be served *via* the Court's CM/ECF filing system, which will send notification of such filing to the attorneys of record at their e-mail addresses on file with the Court.

*/s/  Michael J. Fuller, Jr..*
Michael J. Fuller, Jr.
