Highly Confidential - Subject to Further Confidentiality Review

```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF OHIO
                         EASTERN DIVISION



*****************************
IN RE:
NATIONAL PRESCRIPTION OPIATE     MDL NO. 2804
LITIGATION

This document relates to:      Case No. 17-MD-2804

All cases                      Hon. Dan A. Polster

*****************************

              HIGHLY CONFIDENTIAL - SUBJECT TO
                FURTHER CONFIDENTIALITY REVIEW
                    VIDEOTAPED DEPOSITION OF:
                          STEVE REARDON
                       ALOFT BOSTON SEAPORT
                         401-403 D Street
                      Boston, Massachusetts
                 November 30, 2018    9:03 a.m.


                      Darlene M. Coppola
                   Registered Merit Reporter
                   Certified Realtime Reporter
```

```
1    what we're trying to do is prevent diversion,

2    isn't it?

3         A.   Yes.

4         Q.   So if we have an order that we've

5    determined is suspicious, we wouldn't want to give

6    it to the people we think are placing the

7    suspicious order, would we?

8              MR. PYSER:  Object to form.

9    BY MR. FULLER:

10        Q.   That wouldn't make sense?

11        A.   No.

12        Q.   We would want to do whatever due diligence

13   we need to do to confirm that it is not a

14   suspicious order before we ship it, correct?

15             MR. PYSER:  Object to form.

16        A.   Correct.

17   BY MR. FULLER:

18        Q.   Now, let's talk a little bit more about

19   these ingredient limit reports.  And I've heard

20   you say several times today that these ingredient

21   limit reports were approved by the DEA.

22             Tell the jury who at the DEA approved

23   these ingredient limit reports.

24        A.   I believe there's a letter out there by
```

```
 1      Thomas Gitchel.

 2      Q.   Thomas who?

 3      A.   Gitchel.

 4      Q.   Can you help me out with the spelling of

 5   that last name?

 6      A.   G-i-t-c-h-e-l.

 7      Q.   And when was that letter sent?

 8      A.   It was around 1990.

 9      Q.   And in 1990, you believe some letter is

10   out there that exists that says it's okay to

11   provide the ingredient limit reports?

12      A.   There was a collaboration between the DEA

13   and the trade association to develop the report.

14      Q.   You don't happen to have a copy of that

15   letter, do you?

16      A.   I do not.

17      Q.   Because any communications between the DEA

18   and Cardinal, there's been an order that that's

19   supposed to be produced to the plaintiffs, and I

20   have not seen that letter.

21      A.   I --

22              MR. PYSER:  Object to form.

23   BY MR. FULLER:

24      Q.   Might that be one of those documents that
```