Highly Confidential - Subject to Further Confidentiality Review

```
 1                UNITED STATES DISTRICT COURT
                FOR THE NORTHERN DISTRICT OF OHIO
 2                      EASTERN DIVISION
 3     IN RE: NATIONAL                )   MDL No. 2804
       PRESCRIPTION OPIATE            )
 4     LITIGATION                     )   Case No.
                                      )   1:17-MD-2804
 5                                    )
       THIS DOCUMENT RELATES TO       )   Hon. Dan A.
 6     ALL CASES                      )   Polster
                                      )
 7
 8
 9                        — — —
10              Monday, May 13, 2019
                          — — —
11
         HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
12               CONFIDENTIALITY REVIEW
                          — — —
13
14
15
16       Videotaped Deposition of JAMES E.
       RAFALSKI, held at Weitz & Luxenburg PC, 3011
17     West Grand Avenue, Suite 2150, Detroit,
       Michigan, commencing at 9:20 a.m., on the
18     above date, before Michael E. Miller, Fellow
       of the Academy of Professional Reporters,
19     Registered Diplomate Reporter, Certified
       Realtime Reporter and Notary Public.
20
21
22
                          — — —
23
              GOLKOW LITIGATION SERVICES
24        877.370.3377 ph | fax 917.591.5672
                  deps@golkow.com
25
```

1     of regulatory compliance and security

2     services for the Bergen Brunswig Corporation.

3     That's in his letterhead.

4               And this letter is written and

5     signed by Patricia M. Good, who is now at

6     this point in time the chief liaison and

7     policy section -- the chief of the liaison

8     and policy section for the Office of

9     Diversion Control.

10              Do you see that?

11         A.   I see that.

12         Q.   So I guess there was a change

13    in personnel, and Ms. Good is now in this

14    position, correct?

15         A.   You could draw that conclusion

16    since she now signs as the chief, yes.

17         Q.   And do you know who -- do you

18    know her?

19         A.   Just the name, sir, not

20    personally.

21         Q.   Okay.  So can you read the

22    first sentence of the letter?

23         A.   This is to grant approval of

24    your request to implement on a nationwide

25    basis your newly developed system to identify

1    and report suspicious orders for controlled

2    substances and regulated chemicals as

3    required by the federal regulation.

4         Q.     And read the second sentence.

5         A.     DEA managers who have been

6    involved with the testing of the system have

7    relayed their positive opinions regarding its

8    ability to provide information in a fashion

9    which is not only useful overall but is also

10   responsive to the needs of individual DEA

11   offices.

12        Q.     You are not familiar with this

13   letter?

14        A.     I don't recall seeing this

15   letter, sir.

16        Q.     Can you read the next

17   paragraph, please.  It's short.

18        A.     We appreciate the efforts you

19   have undertaken to develop this improved

20   system and apologize for the lengthy approval

21   process.  It did not seem appropriate to

22   grant this approval prior to the conclusion

23   of the Suspicious Order Task Force formed as

24   a result of the Methamphetamine Control Act.

25   Thank you for your patience in this matter.

```
 1         Q.    Is there any doubt in your mind
 2   having read this letter that the DEA
 3   explicitly and in writing approved Bergen
 4   Brunswig's suspicious order monitoring
 5   program on a nationwide basis?
 6               MR. FULLER:  Form, misstates
 7         the letter.
 8         A.    Well, I think the content of
 9   the letter is open to the interpretation of
10   the reader.  I just would go back to, you
11   know, my experience with the DEA and in my
12   training is that the DEA doesn't give
13   approval to systems, and that was the same
14   information that was consistent in the DEA's
15   manual at this time that this letter was
16   issued.
17               So -- but I do acknowledge the
18   content of this letter.
19   BY MR. NICHOLAS:
20         Q.    The content of the letter says
21   that the DEA is issuing an approval of a
22   system, right?
23         A.    Well --
24               MR. FULLER:  Form.
25         A.    I don't disagree that that's
```