# EXHIBIT 1

IN THE CIRCUIT COURT OF BOONE COUNTY, WEST VIRGINIA

**STATE OF WEST VIRGINIA**
*ex rel.* **PATRICK MORRISEY,**
Attorney General, **JOSEPH THORNTON,**
in his capacity as the Secretary of the
**WEST VIRGINIA DEPARTMENT**
**OF MILITARY AFFAIRS AND PUBLIC SAFETY,**
an agency of the State of West Virginia, and
**KAREN BOWLING,** in her capacity as the Secretary
of the **WEST VIRGINIA DEPARTMENT OF**
**HEALTH & HUMAN RESOURCES**, an agency
of the State of West Virginia,

       Plaintiffs,

v.                                                                     Civil Action No.12-C-140
                                                                        (Hon. William S. Thompson, Judge)

**CARDINAL HEALTH, INC.,**
an Ohio corporation doing business in
West Virginia,

       Defendant.

## THE STATE OF WEST VIRGINIA'S
## RESPONSE TO CARDINAL HEALTH'S MOTION TO DISMISS

# I. TABLE OF CONTENTS

I.  FACTS ................................................................. 1

II. ARGUMENT ........................................................... 3

    A.    THE STATE'S CLAIMS ARE PLED SUFFICIENTLY UNDER
          WEST VIRGINIA LAW ............................................. 3

    B.    PLAINTIFFS HAVE THE POWER, AUTHORITY AND
          STANDING TO BRING THE INSTANT CLAIMS ....................... 6

    C.    THE WVCCPA CLAIM IS ACTIONABLE ............................ 6

          1.    A SALE BY A CREDITOR DIRECTLY TO A
               CONSUMER IS NOT REQUIRED FOR THE STATE
               TO BRING ITS WVCCPA CLAIM ............................. 8

          2.    THE ALLEGED CONDUCT IS UNFAIR ....................... 12

    D.    THE "MUNICIPAL RECOVERY DOCTRINE"
          (A/K/A "FREE PUBLIC SERVICES DOCTRINE")
          DOES NOT BAR THE STATE'S CLAIMS ............................ 15

          1.    THE MUNICIPAL RECOVERY DOCTRINE
               SHOULD NOT BE ADOPTED ............................... 16

          2.    EVEN IF THE MUNICIPAL RECOVERY DOCTRINE
               IS ADOPTED IN WEST VIRGINIA, IT DOES NOT
               APPLY TO THIS CASE ..................................... 16

III. CONCLUSION

## I FACTS

The State of West Virginia, at the relation of its duly-elected Attorney General, and two of its agencies, the West Va. Dept. of Military Affairs and Public Safety (DMAPS), and the West Va. Dept. of Health & Human Resources (collectively "the State") brought this action to address "the epidemic of prescription drug abuse and its costs to the State of West Virginia." Am. Compl. ¶ 1. Prescription drug abuse costs the State of West Virginia hundreds of millions of dollars annually, devastates West Virginia communities and families, reduces the State's economic productivity, adversely affects West Virginia's hospitals, schools, courts, social service agencies, jails and prisons as well as diminishing the very quality of life in our cities and towns. *Id.* ¶¶ 1, 3. It is well recognized West Virginia has been, per capita, one of the "most medicated" states in the country and has the highest prescription drug overdose rate in the country. *Id.* ¶¶ 2, 3.

Defendant sells and distributes controlled substances closely identified with the prescription drug abuse epidemic in West Virginia, and has contributed substantially to and illicitly and tortiously benefitted financially from the prescription drug abuse epidemic in West Virginia. *Id.* ¶¶ 1-2. Defendant was on notice of the growing West Virginia epidemic of the abuse of those prescription drugs it supplied and of the quantities and frequency with which those drugs were distributed in West Virginia. *Id.* ¶¶ 2, 3.

Regulations promulgated pursuant to the West Virginia Uniform Controlled Substances Act require Defendant (or "registrant" as it is called therein) to do the following:

- "All registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances." 15 *W.Va.C.S.R.* § 2-4.2.1.

- "The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the Office of

-1-

the West Virginia Board of Pharmacy of suspicious orders when discovered by the registrant.   Suspicious orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency."   15 *W.Va.C.S.R.* § 2-4.4.

*Id.* ¶ 22. Defendant has not complied with the requirements in the regulations. *Id.* ¶¶ 23-24.  By distributing excessive amounts of controlled substances, Defendant violates West Virginia law (15 *W.Va.C.S.R.* § 2-4.2.1 and 15 *W.Va.C.S.R.* § 2-4.4) by failing to implement or more particularly to follow and adhere to effective controls to guard against prescription drug diversion and by failing to effectively monitor, enforce and/or disclose suspicious orders it fills. *Id.* ¶ 5.

More particularly, Defendant is a distributor who supplied controlled substances to "Pill Mills" where the amount, frequency, and ratios ordered from Defendant in the context of the receiving entity warrant that the orders are, at the very least, suspicious.[1] *Id.* ¶ 2, 3.  Defendant profits from this epidemic by distributing controlled substances in West Virginia in amounts that are in excess of the amount of controlled substances legitimately medically required, thereby sourcing drugs diverted to and used by drug abusers. *Id.* ¶ 5. Through its acts and omissions, Defendant inserted itself as an integral, necessary part of the Pill Mill process. *Id.* ¶ 2. Defendant received substantial revenue from West Virginia while engaging in wholesale drug distribution in the State and supplying Pill Mills. *Id.* ¶ 5.

---

[1]The controlled substances distributed by Defendants without sufficient monitoring of suspicious orders include, but is not limited to, hydrocodone combinations (vicodin, lortab, lorcet, vocoprofen, tussenex, tussicaps), codeine combinations (e.g. empirin with codeine, fiorinal with codeine, tylenol with codeine), phenobarbital, lorazepam (ativan), triazolam (halcion), chlordiazepoxide (librium), diazepam (valium), alprazolam (xanax), zolpidem (ambien), zaleplon (sonata), zopiclone (lunesta), dextropropoxyphene (davron, darvocet), codeine preparations (Robitussin A-C), amobarbital (amytal), pentobarbital (nembutal), secobarbital (seconal), morphine (roxanol, duramorph), oxycodone (oxycontin, tylox, percocet, percodan), hydromorphone (diaudid), oxymorphone (opana, numorphan, numorphone), meperdine (demerol) and other generic versions of each of the foregoing. *Id.* ¶ 3j.

This Defendant is aware of its legal responsibilities in regard to preventing suspicious orders of abused prescription drugs from flooding susceptible locales. In 2008, Defendant paid $34 Million to settle charges that it failed to alert the DEA to suspicious orders for millions of pain pills that it was shipping to Internet pharmacies— operations that for years supplied the illicit market. *Id.* ¶ 6. In 2012, the DEA took action against Cardinal. *Id.* In that case, the DEA alleged Cardinal sent a "staggeringly high" volume of pills to various dispensers that posed "an imminent danger to public health or safety." *Id.* The DEA further alleged Cardinal otherwise failed to report suspicious orders. *Id.* As a consequence, the DEA issued an Immediate Suspension Order to Cardinal on February 2, 2012. *Id.* In the agreement it reached with the DEA in May 2012, Cardinal admitted that it had inadequate control over some of its prescription drugs. *Id.* As far back as 2006, internet pharmacy owner, Rakesh Jyoti Saran, pleaded guilty in Texas to illegally distributing controlled substances from 1999 through 2005 and acknowledged purchasing controlled substances from Defendant and several entities who are Defendants in companion litigation hereto, namely AmeriSourceBergen, Anda, and H.D. Smith. *Id.*

The State herein pleads five claims: Injunctive Relief for Violations of West Virginia Controlled Substances Act (Count I), Damages from Negligence and Violations of Controlled Substances Act (Count II), Violations of West Virginia Consumer Credit and Protection Act (Count III), Public Nuisance (Count IV), and Negligence (Count V).

## II    ARGUMENT

### A    THE STATE'S CLAIMS ARE PLED SUFFICIENTLY UNDER WEST VIRGINIA LAW

West Virginia is a "notice pleading" State. Complaints are thereby construed liberally, no

heightened standard of pleading is required, and a plaintiff is not required to set out claims in detail, with specific facts, so long as the court and opposing parties can understand whether a valid claim is alleged:

> "Complaints are to be read liberally as required by the notice pleading theory underlying the West Virginia Rules of Civil Procedure. *Mandolidis v. Elkins Indus., Inc.,* 161 W.Va. 695, 246 S.E.2d 907 (1978); *John W. Lodge Distrib. Co., Inc. v. Texaco, Inc.,* 161 W.Va. 603, 245 S.E.2d 157 (1978). *See also Conley v. Gibson,* 355 U.S. 41, 47–48, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80, 85–86 (1957). The circuit court, viewing all the facts in a light most favorable to the nonmoving party, may grant the motion only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his[, her, or its] claim which would entitle him[, her, or it] to relief." Syl. pt. 3, in part, *Chapman v. Kane Transfer Co., Inc.,* 160 W.Va. 530, 236 S.E.2d 207 (1977), *citing Conley,* 355 U.S. at 45–46, 78 S.Ct. at 102, 2 L.Ed.2d at 84. Indeed, Rule 8 of the Rules of Civil Procedure requires clarity but not detail. Specifically, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" In addition, Rule 8(e)(1) states, in part, that "[e]ach averment of a pleading shall be simple, concise, and direct." The primary purpose of these provisions is rooted in fair notice. Under Rule 8, a complaint must be intelligibly sufficient for a circuit court or an opposing party to understand whether a valid claim is alleged and, if so, what it is. Although entitlement to relief must be shown, **a plaintiff is not required to set out facts upon which the claim is based**."

*State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 776, 461 S.E.2d 516, 522 (1995)(emphasis added). The State meets and exceeds this standard easily. The Complaint is not pled in conclusory terms, and easily is understood by the court and opposing party, who in its Motion clearly understands the nature of claim capably enough to proffer numerous defenses.

"For this reason, motions to dismiss are viewed with disfavor, and," the West Virginia Supreme Court, "counsel[s] lower courts to rarely grant such motions." *In re Flood Litigation Coal River Watershed*, 222 W. Va. 574, 586, 668 S.E.2d 203, 215 (2008) (*per curiam*) (citing *John W. Lodge Distrib. Co., Inc. v. Texaco, Inc.*, 161 W. Va. 603, 605 06, 245 S.E.2d 157, 159 (1978))

(emphasis added); *accord Forshey v. Jackson*, 222 W. Va. 743, 749, 671 S.E.2d 748, 754 (2008) (citing *John W. Lodge*). Indeed, "[s]ince the preference is to decide cases on their merits, courts presented with a motion to dismiss for failure to state a claim construe the complaint in the light most favorable to the plaintiff, taking all allegations as true." *Sedlock*, 222 W. Va. at 550, 668 S.E.2d at 179 (quoting *John W. Lodge*, 161 W. Va. at 604-05, 245 S.E.2d at 158-59); *see also Highmark*, 221 W. Va. at 492, 655 S.E.2d at 514 (citing *Price v. Halstead*, 177 W. Va. 592, 594, 355 S.E.2d 380, 383 (1987); *Chapman, supra*, 160 W. Va. at 538, 236 S.E.2d at 212); *Cantley v. Lincoln County Comm'n*, 221 W. Va. 468, 470, 655 S.E.2d 490, 492 (2007) (citing *John W. Lodge*). Additionally, the Circuit Court "must 'draw all reasonable inferences in favor of the plaintiff.'" *Hoover*, 222 W. Va. at 116, 662 S.E.2d at 715 (quoting *Conrad v. ARA Szabo*, 198 W. Va. 362, 369, 480 S.E.2d 801, 808 (1996)).

The Amended Complaint satisfies the State's pleading obligation easily, and exceeds the minimal pleading requirements under West Virginia law. Defendant is alleged to have breached its duty to put in place effective controls and procedures to prevent diversion of controlled substances, and that it breached its duty to design and operate a system to detect and report suspicious orders. The impact of the breach of these duties is shown, as well as identification of numerous addictive controlled substances Defendant distributed in this State without effective controls or systems in place, and that this breach has led to a prescription drug abuse of epic proportions, requiring huge expenditures by the State and its agencies, and widespread damage to the health, welfare and economy of West Virginia and its citizens. Defendant clearly understands what it is accused of in this case – and the State has pled its claims sufficiently.

**B** **THE STATE PLAINTIFFS HAVE THE POWER, AUTHORITY AND STANDING TO BRING THE INSTANT CLAIMS**

In response to the arguments of Cardinal made in Part I of its Memorandum in Support of its Motion to Dismiss, the Plaintiffs submit they have the power, authority and standing to bring the instant claims. The State hereby adopts and incorporates the arguments made in the State's Response to the H.D. Smith Motion to Dismiss addressing those same issues.[2]

**C** **THE WVCCPA CLAIM IS ACTIONABLE**

Contrary to Defendant's suggestion, the Attorney General has broad authority under the WVCCPA. Our Supreme Court repeatedly has stated, "under Article 7 of the [CCPA], the Attorney General is given <u>broad powers</u> to supervise, investigate and prosecute violations in order to see that compliance with the [CCPA] is maintained." *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.* 194 W.Va. 770, 779, 461 S.E.2d 516, 525 (1995) (*quoting Harless v. First National Bank,* 162 W.Va. 116, 125, 246 S.E.2d 270, 276 (1978)) (emphasis added); *see also W. Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 175 (4th Cir. 2011). Additionally, West Virginia is in accord with the "[m]any courts [which] <u>interpret the powers of their State's Attorney General broadly</u> and refuse to restrict the Attorney General's authority to protect the public's interest where the limitations would rob the statute of its purpose." *Scott Runyan,* 194 W. Va. at 781, 461 S.E.2d at 527 (emphasis added).[3]

---

[2]The State likewise adopts and incorporates herein all of the arguments it makes in both the Response to H.D. Smith's Motion to Dismiss and its Response to the Amerisource Motion to Dismiss (Civil Action No. 12-C-141) in regard to Parts III and IV of Cardinal's Memorandum.

[3]*Quoting Western Food Plan, Inc. v. District Court,* 198 Colo. 251, 598 P.2d 1038 (1979); *State ex rel. Hartigan v. E & E Hauling, Inc.,* 153 Ill.2d 473, 180 Ill.Dec. 271, 607 N.E.2d 165 (1992); *State ex rel. Guste v. Orkin Exterminating Co., Inc.,* 528 So.2d 198 (La.App.1988); *State ex rel. Celebrezze v. Grogan Chrysler-Plymouth, Inc.,* 73 Ohio App.3d

In previously rejecting many of the same arguments Defendant and others now make, this Court recently recognized both the exceedingly broad nature of the unfair or deceptive act or practice ("UDAP") statute in *W. Va. Code* § 46A-6-104 <u>and</u> the liberal interpretation required of it:

> "Count II alleges that by violating the provisions of the Pharmacy Act, W. Va. Code § 30-5-1, a statute that was enacted to protect the consuming public, Rite Aid has engaged in '[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce,' or 'UDAP,' in violation of West Virginia Code § 46A-6-104. 'Trade or commerce' is defined as the sale of goods in 'any trade or commerce, directly or indirectly, affecting the people of this state.' *Id.* § 46A-6-102(6). This provision is 'among the most broadly drawn provisions' in the CCPA, *McFoy v. Amerigas*, 295 S.E.2d 16, 19 (W. Va. 1982), and must be interpreted liberally to further its remedial purposes. *Scott Runyan*, 461 S.E.2d at 524."

*State ex rel. McGraw v. Rite Aid of WV, Inc.*, Civil Action 09-C-217 (Cir. Ct. Boone Cty. March 15, 2011 ¶ 9) (Thompson, J.), attached as **Ex. 1**.

Furthermore, the preamble to Article 6 of the WVCCPA explains its public interest purpose and its broad conceptions of UDAPs. The Act provides, "[t]he purpose of this article is to complement the body of federal law governing unfair competition and unfair, deceptive and fraudulent acts or practices in order to protect the public" and continues, "this article shall be liberally construed so that its beneficial purposes may be served." *W. Va. Code* § 46A-6-101(1). The second subsection of the preamble, § 46A-6-101(2), suggests the act may be used to remedy acts "injurious to the public interest." *See* § 46A-6-101(2).

The State through its Attorney General, as a duly elected constitutional officer and under his broadly-worded and liberally-construed authority in *W. Va. Code* §§ 46A-7-108, 110, and -111, brings Count III for a violation of the broadly-worded and liberally-construed UDAP statute in *W.*

---

792, 598 N.E.2d 796 (1991); *State v. International Collection Serv., Inc.,* 156 Vt. 540, 594 A.2d 426 (1991)).

*Va. Code* § 46A-6-104. Defendant and others make various arguments for why the WVCCPA claim should be dismissed. These arguments fail.

### 1    A SALE BY A CREDITOR DIRECTLY TO A CONSUMER IS NOT REQUIRED FOR THE STATE TO BRING ITS WVCCPA CLAIM

To the extent Defendant or others seek to write in a requirement that a consumer must make a purchase as part of the sales at issue, that is simply not contained in the language of *W. Va. Code* § 46A-6-104. The UDAP statute does not require the presence of a consumer or consumer transaction. *W. Va. Code* § 46A-6-104. It says plainly, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." *Id.* Nothing about this prohibition in § 46A-6-104 indicates the statute only protects and applies to consumer transactions. Indeed, section 104 applies to "any trade or commerce, directly or indirectly, affecting the people of this state." *W.Va. Code* § 46A-6-102(6). Defendant's' misconduct in supplying and filling suspicious orders, for example, fits within this definition. (*See* Am. Compl. ¶¶ 2-4). Defendant does not argue the alleged UDAPs occur outside of indirect "trade or commerce."

Nor is the Attorney General limited to bringing enforcement actions only on behalf of consumers. One of the sections that authorizes the Attorney General to enforce the WVCCPA, *W.Va. Code* § 46A-7-111(2), provides: "The attorney general may bring a civil action against a creditor or other person to recover a civil penalty for willfully violating this chapter[.]" There is thus no suggestion that the Attorney General must limit his enforcement actions under this section to matters involving consumer or consumer transactions.

This Court has been through this analysis before. The Court recently found for the State on

-8-

this very argument when it held:

> "Rite Aid also seeks dismissal of Count II to the extent it alleges overcharges to third-party prescription-drug payors. Analyzing as it must the provisions of the statute at issue here, the Court finds that neither the Consumer Protection Act (W. Va. Code § 46A-6-104) nor the accompanying provisions authorizing the Attorney General to enforce the statute (W. Va. Code §§ 46A-7-108 & -111) limit the protections of the CCPA to direct consumers."

*State ex rel. McGraw v. Rite Aid of WV, Inc.*, Civil Action 09-C-217 (Cir. Ct. Boone Cty. March 15,

2011 ¶ 11) (Thompson, J.), attached as **Ex. 1**.

This Court's finding is consistent with the other courts examining the same issue. After

acknowledging the liberal interpretation that must be accorded the broad statutory powers conferred

upon the Attorney General, Judge Copenhaver previously explained,

> "Plaintiff's CCPA claims accuse defendants of unfair methods of competition and/or unfair deceptive acts or practices in violation of West Virginia Code section 46A-6-104, as defined in 46A-6-102(f). (Compl.¶ 23.) These claims do not appear to require the presence of either a consumer or a consumer transaction. Unfair competition and deceptive acts are proscribed by section 46A-6-104 as follows: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." W. Va.Code § 46A-6-104. The supreme court of appeals has observed this section is "among the most broadly drawn provisions contained in the [CCPA] and it is also among the most ambiguous." *McFoy v. Amerigas, Inc.,* 170 W.Va. 526, 529, 295 S.E.2d 16, 19 (1982). Further, the CCPA provides: "The attorney general may bring a civil action to restrain a person from violating this chapter and for other appropriate relief." W. Va.Code, § 46A-7-108. In addition, the attorney general is authorized to bring a civil action to recover civil penalties for repeated and willful violations. W. Va.Code § 46A-7-111(2).
>
> . . . the supreme court of appeals could possibly conclude the attorney general may, on the state's behalf, pursue an action under section 46A-6-104 in the absence of a consumer transaction . . . ."

*West Va. ex rel. McGraw v. Minnesota Mining and Mfg. Co.*, 354 F. Supp.2d 660, 667 (S.D. W. Va.

2005)(emphasis added). Another court to analyze the matter in the context of whether a direct

purchase was required likewise found that the State's UDAP claim could proceed in the absence of

a consumer transaction:

> "West Virginia asks this Court to reconsider its rulings under the West
> Virginia Consumer Credit and Protection Act (the 'CCPA'). Under the
> CCPA, 'unfair methods of competition and unfair or deceptive acts or
> practices in the conduct of any trade or commerce are hereby declared
> unlawful.' W. Va.Code 46A–6–102. Trade or commerce 'means the
> advertising, offering for sale, or distribution of any goods or services and
> shall include any trade or commerce, directly or indirectly, affecting the
> people of this state.' *Id.* 46A–6–102(e). The 'Attorney General may bring a
> civil action to restrain a person from violating this chapter and for other
> appropriate relief.' *Id.* 46A–7–108. Finally, the CCPA provides that the
> Court should construe the Act according to 'the interpretation given by the
> federal courts to the various federal statutes dealing with [unfair competition
> and unfair, deceptive and fraudulent acts or practices].' *Id.* 46A–6–101(1).
> Based on these provisions, the Court will reconsider its previous ruling and
> reinstate West Virginia's claims for restitution under the CCPA on behalf of
> both direct and indirect purchasers."

*Fed. Trade Comm'n v. Mylan Labs., Inc.*, 99 F. Supp. 2d 1, 10 (D.D.C. 1999).[4]

In a case brought by the Rhode Island Attorney General against lead pigment manufacturers

for their concealment of the hazards of lead, the court denied a motion to dismiss the State's UDAP

claim. *State v. Lead Ind. Assn., Inc.*, 99-5226, 2001 WL 345830, \*\*9-10 (R.I. Super. Apr. 2, 2001).

The lack of consumer transactions did not doom that case either. *See id.*

Isolating *W. Va. Code* § 46A-1-104, it is suggested that the mention of "consumers" in the

discussion of a section on choice-of-law issues somehow could be read to defeat all of the State's

---

[4]In support of its argument, Defendant refers to a California MDL class action. *In re Dynamic Random Access Memory Antitrust Litig.*, 516 F. Supp.2d 1072, 1118 (N.D. Cal. 2007). That case dealt with the power of private litigants and did not deal with the power of the State through its elected Attorney General under Article 7 of the WVCCPA. The cases where the Attorney General has brought claims in the absence of consumer transactions have either found or suggested that the claims should go forward under the UDAP statute of the WVCCPA. *Mylan Labs*, 99 F. Supp. 2d at 10; *3M*, 354 F. Supp.2d at 667. Accordingly, the Court should follow the more analogous line of cases and allow the State's claim to proceed.

enumerated powers in Article 7. This trick has been tried before and soundly rejected. The federal

district court for the Southern District of West Virginia has explained:

> "Section 104 provides that Chapter 46A applies (1) if a West Virginia
> resident consumer is induced to enter certain credit transactions involving
> revolving charge accounts, where the goods, services proceeds are delivered
> in West Virginia and payment is made from this state or (2) to civil actions
> in West Virginia to collect on credit sales and loans consummated in another
> state. See W.Va.Code § 46A-1-104. Section 104 does not say, however, the
> WVCCPA ONLY applies to such transactions. As Plaintiff correctly points
> out, this section merely clarifies coverage of Chapter 46A for these two
> limited contacts, which might otherwise create choice-of-law issues.
> Defendants' narrow interpretation would wipe out almost all of the
> WVCCPA, except those relatively minor portions dealing with revolving
> charge accounts."

*Rhoades v. W. Virginia Credit Bureau Reporting Servs., Inc.*, 96 F. Supp. 2d 528, 534 (S.D.W.Va.

2000); *see also Polis v. Am. Liberty Fin., Inc.*, 237 F. Supp. 2d 681, 686 (S.D. W.Va. 2002). *W. Va.

Code* § 46A-1-104 does not eviscerate all of the WVCCPA.

If Defendant seeks to draw upon the unpublished opinion in *Cather v. Seneca-Upshur

Petroleum, Inc.*, 2010 WL 3271965, *7 (N.D. W.Va.), where lessors of natural gas asserted a

WVCCPA claim solely under Article 6, its reliance is misplaced. In this case, the State is bringing

its claim pursuant to the Attorney General's powers in Article 7 of the WVCCPA. Obviously,

*Cather* did not involve Article 7 or the Attorney General's power thereunder. Defendant and others

cannot credibly argue the Attorney General's powers in Article 7 are nullified by a mention of

consumers elsewhere in the Act.

Reliance on *White v. Wyeth* misses the mark for similar reasons. *White v. Wyeth* does not

control the WVCCPA claim alleged here. In *White*, the holding dealt with "[t]he private cause of

action afforded consumers under West Virginia Code § 46A-6-106(a)[.]." *Syl.* Pt. 6, *White v. Wyeth*,

-11-

227 W. Va. 131, 133, 705 S.E.2d 828, 830 (2010). Section 106 is not at issue in this case. Here, the

State, not individual consumers, brings this action under the broader and liberally-construed powers

afforded to it in Article 7 of the WVCCPA, specifically *W. Va. Code* §§ 46A-7-108, 110, and 111.

Citation to *State ex rel. McGraw v. Bear, Stearns & Co., Inc.*, 217 W. Va. 573, 579, 618

S.E.2d 582, 588 (2005) likewise is unhelpful to any argument for dismissal of the WVCCPA claim.

In that case, the issue was whether an express exemption in the WVCCPA for buying and selling

securities (W. Va. Code § 46A-1-102(21)) could be bypassed by the fact that advice was given in

the selling of the securities. *Bear Stearns* reasoned, "the service of providing investment advice and

analyses is so ancillary or subsidiary to the buying and selling of securities" such that it falls within

this statutory exemption embodied in the WVCCPA. *See id.* 217 W. Va. at 577, 618 S.E.2d at 586.

Further, our Supreme Court was careful to explain, "the legal issue before us is a narrow one" and

the "opinion should not be read as an attempt to in any way diminish the power of the office of the

Attorney General." *Id.* at 217 W. Va. at 579, 618 S.E.2d at 588. Notably, the question in *Bear*

*Stearns* was not whether the Attorney General had the authority to address an epidemic devastating

and ravaging West Virginia.[5] *See id.*

### 2    THE ALLEGED CONDUCT IS UNFAIR

To reiterate, the Act prohibits, "unfair or deceptive acts or practices in the conduct of any

trade or commerce." *W. Va. Code* § 46A-6-104. Defendant and others argue their violation of the

anti-diversion regulations cannot be characterized as "unfair or deceptive" because this misconduct

---

[5]This Court recognized these nuances when it made its ruling in 2011 well after the publication of all the cases upon which Defendant and others rely. *State ex rel. McGraw v. Rite Aid of WV, Inc.*, Civil Action 09-C-217 (Cir. Ct. Boone Cty. March 15, 2011 ¶¶ 9-11) (Thompson, J.), attached as Ex. 1.

does not fit neatly in the examples of potential UDAPs set forth in the statute. However, Defendants refuse to recognize the broad language of *W. Va. Code* § 46A-6-102(7).

Again, this Court previously has rejected the very argument now made:

> "Rite Aid argues Count II fails to allege what it calls 'predicate acts' – one or more of the acts or practices contained in the definition of 'unfair or deceptive acts or practices' in West Virginia Code § 46A-6-102(f). The Court disagrees. The UDAP definition states the term 'includes, but [is] not limited to' the twelve listed acts or practices. This language indicates the definition is not exclusive, and other conduct can constitute unfair or deceptive acts or practices. Enforcement of the UDAP provisions in the face of Rite Aid's alleging overcharging for generic-prescription drugs fits within the Attorney General's 'broad powers to supervise investigate and prosecute violations [of the CCPA] or to see that compliance with the Act is maintained.' *Harless v. First Nat. Bank in Fairmont*, 246 S.E.2d 270, 276 (W. Va. 1978)."

*State ex rel. McGraw v. Rite Aid of WV, Inc.*, Civil Action 09-C-217 (Cir. Ct. Boone Cty. March 15, 2011 ¶¶ 9-10) (Thompson, J.), attached as **Ex. 1**.

"An unfair practice is one that *offends established public policy and* one that is *immoral, unethical*, oppressive, *unscrupulous* or substantially injurious to consumers." *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1348 (S.D. Fla. 2009) (emphasis added); *see PNR, Inc. v. Beacon Property Management*, Inc., 842 So.2d 773, 777 (Fla. 2003) (same); *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla.Dist.Ct.App.2006) (same); *see also Walker v. Fleetwood Homes of N. Carolina, Inc.*, 362 N.C. 63, 72, 653 S.E.2d 393, 399 (2007); *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981)("A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."); *Speigel v. FTC*, 540 F.2d 287, 293 (7th Cir.1976) (same); *Newcomb v. Cambridge Home Loans, Inc.*, 861 F. Supp. 2d 1153, 1168 (D. Haw. 2012) (same). "A court may find

-13-

unfairness even if the claim does not satisfy all three criteria. . . .  For example, a practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669 (7th Cir. 2008) (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 266 Ill.Dec. 879, 775 N.E.2d 951, 960 (2002)).  The question of unfairness is decided on a case-by-case basis.  *See, e.g., Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010).

"[A] practice can offend public policy if it violates a standard of conduct contained in an existing statute or common law doctrine that typically applies to such a situation." *Boyd v. U.S. Bank, N.A., ex rel. Sasco Aames Mortgage Loan Trust*, 787 F. Supp. 2d 747, 752 (N.D. Ill. 2011). Here, Defendant is well aware of this established public policy imposed on prescription drug distributors to effectively guard against drug diversion and design and operate a system to report suspicious orders inasmuch as federal and state regulations have long been in effect. *See generally* Am. Compl.; 15 *W.V.C.S.R.* §§ 2-4.2.1, 2-4.4.

Defendant cannot credibly argue that profiting off of the prescription drug epidemic by ignoring these anti-diversion regulations, thereby supplying Pill Mills, is moral, ethical or scrupulous. (*See* Am. Compl. ¶¶ 2-4). *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 672 (7th Cir. 2008) ("Although the complaint does not use specifically the words "immoral, unethical, oppressive, or unscrupulous," it alleges conduct that, if proven, could support this statutory definition of unfairness under the Consumer Fraud Act.").

The unfairness standard is even more expansive when the claim is pursued by the State.  The WVCCPA affords the Attorney General more leeway than private litigants generally.  *West Virginia Code* § 46A-7-108 does not require that the action taken by the Attorney General be confined to

violations of the chapter. The statute provides: "The attorney general may bring a civil action to restrain a person from violating this chapter <u>and for other appropriate relief</u>." *W. Va. Code* § 46A-7-108 (emphasis added). Obviously, this statute allows the Attorney General flexibility to pursue appropriate injunctive relief under Article 7 that may be beyond that contemplated in Article 6. Likewise, *W. Va. Code* § 46A-7-110, regarding temporary injunctive relief, accords the Attorney General similar flexibility. It states:

> "With respect to an action brought to enjoin violations of this chapter or unconscionable agreements or fraudulent <u>or unconscionable conduct</u>, the attorney general may apply to the court for appropriate temporary relief against a respondent, pending final determination of the proceedings. If the court finds after a hearing held upon notice to the respondent that there is reasonable cause to believe that the respondent is engaging in or is likely to engage <u>in conduct sought to be restrained</u>, it may grant <u>any temporary relief</u> or restraining order <u>it deems appropriate</u>."

*W. Va. Code* § 46A-7-110 (emphasis added). Indeed, the statute acknowledges and specifically makes a distinction between the broader powers afforded to the Attorney General as contrasted to the more limited power given consumers. It explains, "[t]he grant of powers to the attorney general in this chapter does not affect remedies available to consumers under this chapter . . . ." *W. Va. Code* § 46A-7-113.

In view of the broad nature and liberal interpretation of the UDAP statute, Plaintiffs have plead conduct that meets the "unfairness" portion of a UDAP claim, and Count III cannot be dismissed on this basis.

**D    THE "MUNICIPAL RECOVERY DOCTRINE" (A/K/A "FREE PUBLIC SERVICES DOCTRINE") DOES NOT BAR THE STATE'S CLAIMS.**

To begin, West Virginia never has recognized the common-law, "municipal cost recovery doctrine, " also referred to as the "free public services doctrine." Defendant and others cite a case

-15-

where our Supreme Court, based upon its reading of the applicable statutes, concluded that a county could not charge room-and-board to a convicted criminal, "as a cost incident to the prosecution." Syl. Pt., *State v. St. Clair*, 177 W. Va. 629, 355 S.E.2d 418 (1987). That issue of statutory interpretation has nothing to do with this common law doctrine, and has no bearing on this case.

### 1    THE MUNICIPAL RECOVERY DOCTRINE SHOULD NOT BE ADOPTED

Courts in Indiana and New Jersey have rejected the doctrine outright. The Indiana Supreme Court found:

> "[T]he mere fact that the City provides services as part of its governmental function does not render the costs of those services unrecoverable as a matter of law. We do not agree that the City, as a governmental entity, is necessarily disabled from recovering costs from tortious activity. Rather, we agree with those courts that have rejected the municipal cost doctrine as a complete bar to recovery."

*City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1243 (Ind. 2003) (citing, *inter alia*, *James v. Arms Tech., Inc.*, 359 N.J.Super. 291, 820 A.2d 27, 49 (N.J. App.Div.2003)). The New Jersey Appellate Court explained that the doctrine is misguided for the following reasons: (1) it favors tortfeasors who harm government as compared to those who harm private parties; (2) it lets tortfeasors "off the hook" without any real justification; and (3) it provides no incentives for potential tortfeasors to obtain liability insurance or take reasonable measures to eliminate or reduce the risk of harm. *James*, 359 N.J. Super. at 326-28, 820 A.2d at 48-49. The *James* court found it "fundamentally unfair" that taxpayers would subsidize the wrongful acts of a tortfeasor and thus refused to apply the doctrine and allowed all of the city's claims proceed. *See id.* The court should reject the application of the doctrine in any form.

### 2    EVEN IF THE MUNICIPAL RECOVERY DOCTRINE IS ADOPTED

## IN WEST VIRGINIA, IT DOES NOT APPLY TO THIS CASE

Even if it is not rejected out of hand, the common law doctrine does not apply to this case brought by the State, as opposed to municipal governments. The "municipal cost recovery doctrine" never has been read to limit the power of States, which, of course, hold a very different and special place in our federalist system from municipalities. *See, e.g., Alden v. Maine*, 527 U.S. 706, 715, 119 S. Ct. 2240, 2247, 144 L. Ed. 2d 636 (1999) ("The federal system established by our Constitution preserves the sovereign status of the States . . . . The States thus retain residuary and inviolable sovereignty. The Federalist No. 39, at 245. They are not relegated to the role of mere provinces or political corporations, but retain the dignity, though not the full authority, of sovereignty."); *see also West Va. ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 178 (4th Cir. 2011). Tellingly, not a single case is cited where the doctrine has been applied to frustrate the claims of a State.

Indeed, in a case where the municipal cost doctrine was sought to foreclose claims made by the State Attorney General, the doctrine specifically was rejected because of the expansive powers of the State to protect the public interest. There, the court stated:

> "However, this Court's recognition of the Attorney General's existing authority to protect the public interest is not, in this Court's opinion, creating a cause of action or judicial remedy. [footnote omitted]. Accordingly, the defendants' motions to dismiss must be examined in the context of the well-established powers of the Attorney General to redress public wrongs. To adopt the free public services rule and dismiss this action thereby, particularly in the absence of controlling caselaw requiring such a rule, would ignore existing authority of the Attorney General, as for example, with respect to his right to bring a public nuisance action."

*See, e.g., State v. Lead Ind. Assn., Inc.*, 99-5226, 2001 WL 345830, *5 (R.I. Super. Apr. 2, 2001).

The "municipal cost recovery doctrine" is limited to local governments, as its very name indicates. *See id.; see also State ex inf. Ashcroft v. Kansas City Firefighters Local No. 42*, 672

-17-

S.W.2d 99, 127 (Mo. Ct. App. 1984) (allowing State Attorney General to sue municipal fire fighters, not as taxpayer citizens, but as tortfeasors, to recover for cost of deployment of state militia in municipality to man fire stations during a strike).  This common law doctrine cannot be used to destroy the State's case and thus has no application to these claims.  The Court should refuse to break new ground and expand the common law municipal recovery doctrine to bar the well-established and broad powers of the State.  Accordingly, Defendant's argument should be rejected on this basis as well.

Further, those courts that nevertheless see the doctrine as valid still have not applied it to city, county and other municipal governments in the context of ongoing misconduct on a continuous basis, as the State alleges here.  The Ohio Supreme Court was emphatic:

> "Although a municipality cannot reasonably expect to recover the costs of city services whenever a tortfeasor causes harm to the public, it should be allowed to argue that it may recover such damages in this type of case. Unlike the train derailment that occurred in the *Flagstaff* case, which was a single, discrete incident requiring a single emergency response, **the misconduct alleged in this case is ongoing and persistent**. The continuing nature of the misconduct may justify the recoupment of such governmental costs. Therefore, if appellant can prove all the elements of the alleged torts, it should be able to recover the damages flowing from appellees' misconduct.

*Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St. 3d 416, 428, 768 N.E.2d 1136, 1149-50 (Ohio 2002). Likewise, New Jersey explained the rule does not apply, "in a case such as this, where the City claims a repeated course of conduct on defendants' part, requiring the City to expend substantial governmental funds on a continuous basis." *James*, 820 A.2d at 49.  Similarly, in Massachusetts, a court there explained in previous cases regarding fires, fuel spills, ruptured gas mains, train derailments and airplane crashes, "there is no evidence that the specific defendants had engaged in a repeated course of conduct causing recurring costs to the municipality" but "this case is different"

inasmuch as those particular plaintiffs alleged wrongful acts which were not "discrete." *City of Boston v. Smith & Wesson Corp.*, 199902590, 2000 WL 1473568 (Mass. Super. July 13, 2000). As a consequence, the *Boston* court refused to apply the doctrine.

All but a couple of the cases from the other jurisdictions cited by Defendant and others, where the free public services doctrine is invoked, involved single, discrete incidents causing an immediate response. *See In re Oil Spill by The Amoco Cadiz*, 954 F.2d 1279, 1310 (7th Cir. 1992) *(per curiam)* (oil spill); *District of Columbia v. Air Fla, Inc.*, 750 F.2d 1077, 1080 (D.C. Cir. 1984) (plane crash); *County of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 150-51 (2d Cir. 2013) (plane crash); *City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*, 719 F.2d 322, 323 (9th Cir. 1983) (train derailment); *Walker v. Tri-County Crematory*, 643 S.E.2d 324, 327-28 (Ga. Ct. App. 2007) (unburied human remains found at crematorium).[6]  The Court should refuse to apply the doctrine because the cases have, by and large, drawn a line of demarcation between discrete incidents and ongoing public harm, and this case clearly falls on the side of an ongoing problem. The doctrine is thus inapplicable for this reason as well.

Even the most expansive views of the doctrine have recognized an exception for an ongoing public nuisance, as the State has alleged in this case. *See, e.g., Flagstaff*, 719 F.2d at 324. The Ohio

---

[6] The other context in which courts have looked at this doctrine was in some of the cases municipalities brought against gun manufacturers. In one such case, *Baker v. Smith & Wesson Corp.*, CIV.A. 99C-09-283-FS, 2002 WL 31741522 (Del. Super. Nov. 27, 2002), the complaint did not "ask for injunctive relief to prevent the manufacturers from selling unreasonably dangerous products and creating a nuisance." In the other gun violence case cited by Defendant and others, *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 213 Ill.2d 351 (2004), that court expanded the doctrine, and no other court since then has adopted such a broad application. Obviously, as can be seen from above, there is substantial disagreement regarding the broad expansion of this doctrine. *See, e.g., Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St. 3d 416, 428, 768 N.E.2d 1136, 1149-50 (Ohio 2002).

Supreme Court explained:

> "Moreover, even the *Flagstaff* court recognized that recovery by a
> governmental entity is allowed where the acts of a private party create a
> public nuisance which the government seeks to abate. *Flagstaff*, 719 F.2d at
> 324. We therefore reject the court of appeals' holding that appellant cannot
> recover its governmental costs."

*Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St. 3d 416, 428, 768 N.E.2d 1136, 1149-50 (Ohio 2002).

Plaintiffs seek to abate the public nuisance in this case, and this case therefore also fits into this well-established exception to the doctrine.

Lastly, there is yet another exception to the doctrine when recovery is authorized by statute. *See, e.g., Flagstaff*, 719 F.2d at 324. In this case, there is statutory authority for suit as explained above and in the amended complaint. *See* Am. Compl. ¶¶ 11-13, 16-20, 23-24, 28, citing *W. Va. Code* §§ 60A-5-501(c), 60A-3-301, 60a-5-503(a), 46A-7-108, 46A-7-110, 46A-7-111(2).

In sum, this Court should follow the lead of courts in other states that rejected the doctrine altogether. Nevertheless, even if the doctrine was applicable in West Virginia, the "municipal recovery rule," as the name suggests, does not bar claims made by the State and thus would not apply to the State Plaintiffs in this case. Further, the doctrine applies only to discrete, one-time events not to ongoing public problems such that it does not apply to the facts here. Lastly, this case fits into the two exceptions for even those cases that have taken the most expansive view of the doctrine – first, recovery is allowed by a governmental entity where the acts of a private party create a public nuisance which the government seeks to abate, and second, there is statutory authority for recovery of these losses.

## CONCLUSION

For all of the foregoing reasons, Cardinal Health's Motion to Dismiss should be denied.

**STATE OF WEST VIRGINIA** *ex rel.*
Patrick Morrisey, Attorney General

Joseph Thornton, Secretary
**WEST VIRGINIA DEPARTMENT OF MILITARY AFFAIRS AND PUBLIC SAFETY**, an agency of the State of West Virginia,

Karen Bowling, Secretary
**WEST VIRGINIA DEPARTMENT OF HEALTH & HUMAN RESOURCES**, an agency of the State of West Virginia,

*By Counsel*

Dan Greear, Esq., Chief Counsel
**OFFICE OF ATTORNEY GENERAL**
Building 1, Room 26-E
Capitol Complex
Charleston, WV 25305
Telephone: 304-558-2021

James M. Cagle, WV Bar No. (580)
**CAGLE & JACKSON, ATTORNEYS**
P.O. Box 12326
Big Chimney Station
Charleston, WV 25302

-21-

Rudolph L. DiTrapano WV Bar No.1024
**DITRAPANO     BARRETT     DIPIERO
MCGINLEY & SIMMONS, PLLC**
604 Virginia Street, East
Charleston, WV 25301

IN THE CIRCUIT COURT OF BOONE COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA,
ex rel. DARRELL V. MCGRAW, JR.,
ATTORNEY GENERAL,

        Plaintiff,

v.                             **CIVIL ACTION NO. 09-C-217**

RITE AID OF WEST VIRGINIA, INC.,

        Defendant.

## ORDER DENYING MOTION TO DISMISS AMENDED COMPLAINT

On February 17, 2011, the parties appeared through counsel for argument on the Motion

to Dismiss Amended Complaint of Defendant Rite Aid of West Virginia, Inc. ("Rite Aid").

After careful consideration, the Court DENIES Rite Aid's motion.

### I. FINDINGS OF FACT

1.     Plaintiff State of West Virginia, *ex rel.* Darrell V. McGraw, Jr., Attorney General

("the State") has filed a three-count First Amended Complaint against Rite Aid. The First

Amended Complaint seeks injunctive relief, civil penalties, restitution and disgorgement against

Rite Aid for alleged violations of West Virginia law governing generic prescription-drug pricing

and the West Virginia Consumer Credit and Protection Act ("CCPA").

2.     The First Amended Complaint alleges Rite Aid routinely violates West Virginia

Code § 30-5-12b(g), a provision of the Pharmacy Act, which provides that pharmacies pass on to

purchasers the cost-savings realized by the pharmacies' lower acquisition costs of generic drugs.

Specifically, the statute states that "all savings in the retail price of the [generic] prescription

shall be passed on to the purchaser," and that "in no event shall such savings be less than the

449524



EXHIBIT
1

difference in acquisition cost of the brand name product prescribed and the acquisition cost of the substituted product." *Id.*

## II.    CONCLUSIONS OF LAW

### *Motion to Dismiss Standard*

3.    "A motion to dismiss should be granted only where it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. For this reason, motions to dismiss are viewed with disfavor, and [the Supreme Court] counsel[s] lower courts to rarely grant such motions." *Forshey v. Jackson*, 671 S.E.2d 748, 755 (W. Va. 2008) (cited authority omitted). In reviewing Rite Aid's motion to dismiss, this Court must view all facts in a light most favorable to the State, and may dismiss "only if it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim[.]" *Id.*

### *Challenges to All Counts*

4.    Rite Aid argues the First Amended Complaint fails to comply with Rule 8(a) of the West Virginia Rules of Civil Procedure, and should be dismissed on that ground. The Court disagrees. With respect to five generic-drugs sold by Rite Aid from January 1, 2008 through June 30, 2008, the First Amended Complaint alleges specifically the amount of Rite Aid's overcharge. For example, the State alleges that Rite Aid overcharged its West Virginia purchasers of generic Cefdenir (the 250mg/5 ml suspension form, dispensed in 60 ml quantities) by $37-48 per prescription. First Am. Compl. ¶ 29.

5.    These allegations satisfy Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court has stated, Rule 8(a) "requires clarity but not detail," and "[t]he primary purpose of [the Rule] is rooted in fair notice." *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 771, 776, 461

S.E.2d 516, 521 (1995). Contrary to Rite Aid's argument, Rule 8(e) is clear that, "[n]o technical forms of pleading...are required." Additionally, pursuant to Rule 8(f), "[a]ll pleadings shall be so construed as to do substantial justice." The Court concludes the State's allegations are more than sufficient to satisfy these requirements, and exceed the minimal requirement to "set forth enough information to outline the elements of a claim or permit inferences to be drawn that these elements exist." *Forshey*, 671 S.E.2d at 756.

6. Rite Aid contends the generic-drug statute applies only to substitution transactions -- *i.e.*, when a physician writes a prescription for a brand drug, but the pharmacist fills the prescription with a generic equivalent -- and argues the State has not alleged overpricing with respect to substitution transactions. This argument fails because the State in fact alleged Rite Aid overcharged for generic-drugs in substitution transactions, First Am. Compl. ¶¶ 30, 36, 42, 48, 54, and the Court must accept these allegations as true at this stage of the case.

7. Rite Aid also argues for dismissal on the ground that the allegations are not pled with specificity under Rule 9(b). The Court disagrees, and concludes the heightened Rule 9(b) pleading standard applies only to actions alleging fraud, and this action does not and need not allege fraud.

### *Count I*

8. Count I alleges Rite Aid has repeatedly violated the provisions of the generic drug-pricing law, and under West Virginia Code § 30-5-23, seeks equitable relief to enjoin the violations. That Code provision allows any "person," defined as "any . . . legal entity, including government," *id.* § 30-5-1b(24), to "apply to a court having competent jurisdiction . . . for a writ of injunction to restrain repetitious violations of the provisions of this article." *Id.* § 30-5-23. Rite Aid seeks dismissal of Count I because it contends the State must first exhaust

administrative remedies by filing an administrative complaint under West Virginia Code § 30-5-12b(q) with the Pharmacy Board alleging the violations of the generic-drug pricing law. The Court disagrees. The remedy of injunctive relief in the statute is a specific grant of authority to the State allowing it to seek to enjoin violations of the Pharmacy Act in circuit court. Nothing in Section 23 or the administrative complaint provision in Section 12b(q) indicates an administrative complaint remedy is mandatory or exclusive. The administrative complaint provision states only that a person "shall have the right" to file an administrative complaint; this language is not mandatory. The Court concludes that because the grant of authority to any legal entity to seek injunctive relief to enjoin violations of the Pharmacy Act is made by statute, no common law principle that purportedly requires exhaustion of administrative remedies can vitiate the statutory right.

## *Count II*

9.      Count II alleges that by violating the provisions of the Pharmacy Act, W. Va. Code § 30-5-1, a statute that was enacted to protect the consuming public, Rite Aid has engaged in "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," or "UDAP," in violation of West Virginia Code § 46A-6-104. "Trade or commerce" is defined as the sale of goods in "any trade or commerce, directly or indirectly, affecting the people of this state." *Id.* § 46A-6-102(6). This provision is "among the most broadly drawn provisions" in the CCPA, *McFoy v. Amerigas*, 295 S.E.2d 16, 19 (W. Va. 1982), and must be interpreted liberally to further its remedial purposes. *Scott Runyan*, 461 S.E.2d at 524.

10.     Rite Aid argues Count II fails to allege what it calls "predicate acts" – one or more of the acts or practices contained in the definition of "unfair or deceptive acts or practices"

in West Virginia Code § 46A-6-102(f). The Court disagrees. The UDAP definition states the term "includes, but [is] not limited to" the twelve listed acts or practices. This language indicates the definition is not exclusive, and other conduct can constitute unfair or deceptive acts or practices. Enforcement of the UDAP provisions in the face of Rite Aid's alleged overcharging for generic-prescription drugs fits within the Attorney General's "broad powers to supervise, investigate and prosecute violations [of the CCPA] or to see that compliance with the Act is maintained." *Harless v. First Nat. Bank in Fairmont*, 246 S.E.2d 270, 276 (W. Va. 1978).

11.     Rite Aid also seeks dismissal of Count II to the extent it alleges overcharges to third-party prescription-drug payors. Analyzing as it must the provisions of the statute at issue here, the Court finds that neither the Consumer Protection Act (W. Va. Code § 46A-6-104) nor the accompanying provisions authorizing the Attorney General to enforce the statute (W. Va. Code §§ 46A-7-108 & -111) limit the protections of the CCPA to direct consumers.

### Count III

12.     Count III alleges that by violating the generic-drug pricing provisions, Rite Aid has collected excess charges under West Virginia Code § 46A-7-111(1). As a provision of the CCPA, the excess charge statute must be interpreted liberally in favor or the statute's remedial purposes, and has been so interpreted by the Supreme Court. For example, in *Scott Runyan*, the Court held the Attorney General had authority under the CCPA to collect a refund of excess charges relating to the unlawful sale of extended vehicle warranties. 461 S.E.2d at 526. The State has stated a claim for relief under Count III.

### III.     CONCLUSION

For these reasons, the Court DENIES the Defendant's Motion to Dismiss. The Clerk is

directed to send a certified copy of this Order to counsel of record.

Enter this ___15th___ day of ___March___, 2011.

_Will S._

Hon. William Thompson, Judge

Prepared by:

_Blun W. Barrett_

Brian A. Glasser (WV Bar No. 6597)
John W. Barrett (WV Bar No. 7289)
Michael L. Murphy (WV Bar No. 10888)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301

Frances A. Hughes (WV Bar No. 1816)
Chief Deputy Attorney General
OFFICE OF THE ATTORNEY GENERAL
Building 1, Room 26-E
Capitol Complex
Charleston, WV 25305

Joshua I. Barrett (WV Bar No. 252)
Sean P. McGinley (WV Bar No. 5836)
DiTRAPANO, BARRETT & DiPIERO, PLLC
604 Virginia Street East
Charleston, WV 25301

A COPY ATTEST

_Suedann Zickafoose_

CIRCUIT COURT

449524

6

## IN THE CIRCUIT COURT OF BOONE COUNTY, WEST VIRGINIA

**STATE OF WEST VIRGINIA**
*ex rel.* **PATRICK MORRISEY**,
Attorney General, **JOSEPH THORNTON,**
in his capacity as the Secretary of the
**WEST VIRGINIA DEPARTMENT
OF MILITARY AFFAIRS AND PUBLIC SAFETY,**
an agency of the State of West Virginia, and
**KAREN BOWLING,** in her capacity as the Secretary
of the **WEST VIRGINIA DEPARTMENT OF
HEALTH & HUMAN  RESOURCES**, an agency
of the State of West Virginia,

        Plaintiffs,

v.                                  Civil Action No.12-C-140
                                      (Hon. William S. Thompson, Judge)

**CARDINAL HEALTH, INC.,**

        Defendant.

### CERTIFICATE OF SERVICE

    I, Rudolph L. DiTrapano, counsel for the State, do hereby certify that a copy of "**THE**

**STATE OF WEST VIRGINIA'S RESPONSE TO CARDINAL HEALTH'S MOTION TO**

**DISMISS**" was e-mailed to the court's law clerk and the following counsel of record on this the

6th day of May 2014:

    Mark A. Carter, Esq.
    W. Henry Jernigan, Jr. Esq.
    **DINSMORE & SHOHL, LLP**
    PO Box 11887
    Charleston, WV 25339-1887
    henry.jernigan@dinsmore.com
    mark.carter@dinsmore.com

    James R. Wooley, Esq.
    **JONES DAY**
    North Point
    901 Lakeside Avenue

Cleveland, OH 44114-1190
Telephone: (216) 586-3939
Facsimile: (216) 579-0212
Email: jrwooley@jonesday.com

Chad A. Readler, Esq.
**JONES DAY**
P.O. Box 165017
Columbus, OH 43215-2673
Telephone: (614) 281-3891
Facsimile: (614) 461-4198
Email: careadler@,jonesday.com

Jeffrey J. Bresch (WV State Bar #9558)
**JONES DAY**
500 Grant Street, Suite 4500
Pittsburgh, PA 15219-2514
Telephone: (412) 394-7231
Facsimile: (412) 394-7959
Email: jbresch@jonesday.com

*Counsel for Defendant Cardinal Health, Inc.*

           **STATE OF WEST VIRGINIA**
           *ex rel.* **PATRICK MORRISEY**,
           Attorney General, **JOSEPH THORNTON,**
           in his capacity as the Secretary of the **WEST**
           **VIRGINIA DEPARTMENT OF**
           **MILITARY AFFAIRS AND PUBLIC**
           **SAFETY,** an agency of the State of West
           Virginia, and **KAREN BOWLING**, in her
           capacity as the Secretary of the **WEST**
           **VIRGINIA DEPARTMENT OF**
           **HEALTH & HUMAN RESOURCES**, an
           agency of the State of West Virginia,

           (with permission)

           Dan Greear, Esq.
           Chief Counsel
           **OFFICE OF ATTORNEY GENERAL**
           Building 1, Room 26-E, Capitol Complex
           Charleston, WV 25305

James M. Cagle      WV Bar No. 580
**CAGLE & JACKSON, ATTORNEYS**
P.O. Box 12326
Big Chimney Station
Charleston, WV 25301

Rudolph L. DiTrapano W.Va. Bar No. 1024
**DiTRAPANO, BARRETT, DiPIERO,
McGINLEY & SIMMONS, PLLC**
604 Virginia Street, East
Charleston, West Virginia 25301