# EXHIBIT 3

RUDOLPH L. Di TRAPANO
JOSHUA I. BARRETT †
J. TIMOTHY DiPIERO
LONNIE C. SIMMONS
SEAN P. McGINLEY
ROBERT M. BASTRESS III

†Of Counsel

# DiTRAPANO, BARRETT, DiPIERO,
# McGINLEY & SIMMONS, PLLC

ATTORNEYS AT LAW
P.O. Box 1631
CHARLESTON, WEST VIRGINIA 25326-1631
TELEPHONE 304-342-0133
FACSIMILE 304-342-4605
**www.dbdlawfirm.com**

sean.mcginley@dbdlawfirm.com

November 30, 2015

Mr. Rory L. Perry, II, Clerk, Clerk
West Virginia Supreme Court of Appeals
State Capitol Complex, East Wing
1900 Kanawha Boulevard, East
Building 1, Room E-317
Charleston, WV 25305

RE:     *State ex rel. Amerisourcebergen Corp., et al v. Hon. William S. Thompson, et al.*
        Case No. 15-1026

Dear Mr. Perry:

Enclosed for filing is the original and ten copies of the ***Response to Petition for Writ of Prohibition***. As evidenced by the Certificate of Service, copies of the same have this day been provided to all counsel of record, as well as Judge Thompson.

Sincerely,

Sean P. McGinley, Esquire

SPM/s

cc.     Hon. William S. Thompson, Judge
        All counsel of record

### IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**STATE OF WEST VIRGINIA** *ex rel.*,
**AMERISOURCEBERGEN DRUG CORP,** *et al.*,

      Petitioners,

**v.**                                                                                                   No.  15-1026

**THE HONORABLE WILLIAM S.THOMPSON,**
Judge, Circuit Court of Boone County, *et al.*,

      Respondents.


**Respondents PATRICK MORRISEY, Attorney General of the State of West Virginia,
JOSEPH THORNTON, in his capacity as the Secretary of the WEST VIRGINIA
DEPARTMENT OF MILITARY AFFAIRS AND PUBLIC SAFETY, an agency of the
State of West Virginia, and KAREN BOWLING in her capacity as the Secretary of the
WEST VIRGINIA DEPARTMENT OF HEALTH & HUMAN RESOURCES, an agency of
the State of West Virginia,**

### RESPONSE TO PETITION FOR WRIT OF PROHIBITION

Patrick Morrisey, Attorney General
Vaughn Sizemore, Deputy Attorney General
**OFFICE OF THE ATTORNEY GENERAL**
Building 1, Room 26-E Capitol Complex
Charleston, WV 25305

James Cagle
P. Rodney Jackson
**CAGLE & JACKSON**
P.O. Box 12326
Big Chimney Station, WV 25301

Rudolph L. DiTrapano
Sean McGinley
Robert M. Bastress, III
**DiTRAPANO, BARRETT DiPIERO,
McGINLEY & SIMMONS, PLLC**
604 Virginia Street East
Charleston, WV 25301

      *Counsel for Respondents*

**Table of Contents**                                        **Page**

Statement of the Case....................................................................................................................1

Statement of Facts.......................................................................................................................2

Procedural History.......................................................................................................................5

Summary of Argument.................................................................................................................6

Statement Regarding Oral Argument and Decision.......................................................................9

Argument.....................................................................................................................................9

A       The Drug Distributor Defendants' Petition is nothing more than a disguised
        appeal of a non-appealable order, and should be refused summarily......................9

B       If the Court considers the merits, it should refuse the Petition...............................14

        1.      Standing....................................................................................................14

        2.      Separation of Powers.................................................................................19

        3.      Authority to bring the instant claims.........................................................19

        4.      The Second Amended Complaint States Causes of Action.........................21

        5.      The State is Not Required to "Exhaust Administrative Remedies"...........22

        6.      Municipal Cost Recovery Doctrine.............................................................26

        7.      The WVCCPA claim...................................................................................30

                A       A Sale Directly from a Defendant to a Natural Person Is Not
                        Required for the State to Bring its WVCCPA Claim....................31

                B       The Drug Distributor Defendants' Conduct Was Unfair...............34

                C       The Controlled Substances Act Does Not Preclude the State from
                        Bringing a WVCCPA Claim..........................................................35

        8.      Private Cause of Action.............................................................................37

C       Conclusion...........................................................................................................40

## Table of Authorities                                   Page

### Cases

*Alden v. Maine*, 527 U.S. 706 (1999).............................................................................................26

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592 (1982).................................................17

*Beichler v. West Va. Univ. at Parkersburg*, 226 W.Va. 321, 700 S.E.2d 532 (2010).............25, 26

*Blankenship v. Ethicon, Inc.,* 221 W. Va. 700, 656 S.E.2d 451 (2007).........................................22

*Cather v. Seneca-Upshur Petroleum, Inc.*, 2010 WL 3271965 (N.D. W.Va. 2010).....................32

*CBC Holdings, LLC v. Dynatec Corp., USA*, 224 W. Va. 25, 680 S.E.2d 40 (2009)....................23

*Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (2002)........................................................29

*City of Boston v. Smith & Wesson Corp.*, 2000 WL 1473568 (Mass.Sup. 2000)..........................29

*City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*, 719 F.2d 322 (9th Cir. 1983).............29

*City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222 (Ind. 2003)......................27

*Collins v. Elkay Mining Co.*, 179 W.Va. 549, 371 S.E.2d 46 (1988)............................................26

*Commonwealth, Pa. Fish & Boat Comm'n v. Consol Energy, Inc.*,
233 W. Va. 409, 758 S.E.2d 762 (2014)..........................................................................17

*County of Erie v. Colgan Air, Inc.*, 711 F.3d 147 (2d Cir. 2013)..................................................29

*Crawford v. Taylor*, 138 W. Va. 207, 75 S.E.2d 370 (1953).........................................................10

*District of Columbia v. Air Fla, Inc.*, 750 F.2d 1077 (D.C. Cir. 1984).........................................29

*James v. Arms Tech., Inc.*, 820 A.2d 27, 49 (N.J.Super.App.Div. 2003)..........................27, 28, 29

*James M.B. v. Carolyn M.*, 193 W. Va. 289, 456 S.E.2d 16 (1995)...............................................10

*General Pipeline Constr., Inc. v. Hairston*, 234 W.Va. 274, 765 S.E.2d 163 (2014)...................39

*Guido v. Guido*, 202 W. Va. 198, 503 S.E.2d 511 (1998)..............................................................10

*Hinkle v. Black*, 164 W. Va. 112, 262 S.E.2d 744 (1979)..............................................................10

*Horkulic v. Galloway,* 222 W. Va. 450, 665 S.E.2d 284 (2008)....................................................11

*Hurley v. Allied Chemical Corp.,* 164 W.Va. 268, 262 S.E.2d 757 (1980)...................8, 38, 39, 40

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.,*
    516 F. Supp. 2d 1072 (N.D. Cal. 2007).............................................................................34

*In Re Oxycontin Antitrust Litig.,* 821 F.Supp.2d 591 (S.D.N.Y. 2011)....................................16-17

*In re Taylor B.C,* 233 W.Va. 130, 755 S.E.2d 664 (2014).............................................................21

*Marshall v. Miller,* 276 S.E.2d 397 (N.C. 1981)...........................................................................35

*McCallister v. Purdue Pharma L.P.,* 164 F. Supp. 2d 783 (S.D.W.Va. 2001)...............................38

*Medco Health Solutions v. W. Va. Pub. Ems. Ins. Agency* (Cir. Ct. 2003)....................................33

*Newcomb v. Cambridge Home Loans, Inc.,* 861 F. Supp. 2d 1153 (D. Haw. 2012).....................35

*PNR, Inc. v. Beacon Property Management,* Inc., 842 So.2d 773 (Fla. 2003)...............................35

*Pritchard v. Crouser,* 175 W.Va. 310, 332 S.E.2d 611 (1985).......................................................37

*Province v. Province,* 196 W. Va. 473, 473 S.E.2d 894 (1996)......................................................10

*River Riders, Inc. v. Steptoe,* 223 W. Va. 240, 672 S.E.2d 376 (2008)..........................................11

*Robertson v. LeMaster,* 171 W. Va. 607, 301 S.E.2d 563 (1983)...............................................7,21

*Rollins, Inc. v. Butland,* 951 So.2d 860 (Fla.Dist.Ct.App.2006)....................................................35

*Sears v. Fisher,* 101 W. Va. 157 (1926)..........................................................................................28

*Southwood Pharmaceuticals,* FR Doc 07-3218 (July 3, 2007)......................................................36

*Speigel v. FTC,* 540 F.2d 287 (7th Cir.1976)..................................................................................35

*State ex inf. Ashcroft v. Kansas City Firefighters Local No. 42,*
    672 S.W.2d 99 (Mo. Ct. App. 1984) ................................................................................27

*SER Arrow Concrete Co. v. Hill,* 194 W.Va. 239, 460 S.E.2d 54 (1995)...............................10, 12

*SER Bell Atlantic-W. Va. v. Ranson,* 201 W. Va. 402, 497 S.E.2d 755 (1997)..............................12

*SER Citifinancial, Inc. v. Madden,* 223 W. Va. 229, 672 S.E.2d 365 (2008)..........................36-37

*SER Discover Fin. Servs., Inc. v. Nibert,*
    231 W.Va. 227, 744 S.E.2d 625 (W.Va. 2013)................................................7, 19, 20, 21

*SER Evans v. Robinson,* 197 W. Va. 482, 475 S.E.2d 858 (1996)..................................................11

*SER Gibson v. Hrko,* 220 W. Va. 574, 648 S.E.2d 338 (2007)........................................................10

*SER Hoover v. Berger,* 199 W. Va. 12, 483 S.E.2d 12 (1996)..................................................12, 13

*SER McGraw v. Bear Stearns,* 217 W.Va. 573, 618 S.E.2d 582 (2005)...................................35-36

*SER McGraw v. Scott Runyan Pontiac-Buick, Inc.* 194 W.Va. 770, 461 S.E.2d 516 (1995)..30, 31

*SER Morrisey v. AmerisourceBergen Drug Corp.,* 2013 WL 1305575 (S.D.W. Va. 2013)...........5

*SER.Morrisey v. West Va. O.D.C.,* 234 W.Va. 238, 764 S.E.2d 769 (2014).................................20

*SER Rite Aid of WV, Inc. v. Hon. William S. Thompson, Judge, et al.,*
    No. 11-0648 (W.Va. May 25, 2011)....................................................................................23

*SER Smith v. Thornsbury,* 214 W. Va. 228, 588 S.E.2d 217 (2003).............................................25

*SER West Va. Consol. Pub. Ret. Bd. v. Nibert,* 235 W. Va. 203, 772 S.E.2d 609 (2015).............12

*SER West Va. Nat'l Auto Ins. Co. v. Bedell,* 223 W. Va. 222, 672 S.E.2d 358 (2008).................10

*State v. Lead Ind. Assn., Inc.,* 2001 WL 345830 (R.I. Super. App. 2001)....................................26

*State of Texas v. Am. Tobacco Co.,* 14 F. Supp. 2d 956 (E.D. Tex. 1997)....................................17

*State v. Chanze,* 178 W. Va. 309, 359 S.E.2d 142  (1987).............................................................28

*State v. St. Clair,* 177 W. Va. 629, 355 S.E.2d 418 (1987)............................................................28

*State v. Zain,* 207 W. Va. 54, 528 S.E.2d 748 (1999).....................................................................38

*Sturm v. Board of Educ. of Kanawha County,* 223 W.Va. 277, 672 S.E.2d 606 (2008)...............26

*U.S. v. Standard Oil of Cal.,* 332 U.S. 301 (1947)........................................................................30

*Walker v. Fleetwood Homes of N. Carolina, Inc.,* 653 S.E.2d 393 (N.C. 2007)...........................35

*Walker v. Tri-County Crematory,* 643 S.E.2d 324 (Ga. Ct. App. 2007)........................................29

*Wamsley v. LifeNet Transplant Servs. Inc.,* 2011 WL 5520245 (S.D. W.Va. 2011).....................36

*Weimer v. Sanders*, 232 W. Va. 367, 752 S.E.2d 398 (2013)............................................24, 25, 26

*West Virginia ex rel. McGraw v. Minnesota Mining and Mfg. Co.*
 354 F. Supp.2d 660 (S.D. W. Va. 2005)............................................................................32

*White v. Wyeth*, 227 W.Va. 131, 705 S.E.2d 828 (2010)...........................................................35-36

*Wiggins v. E. Associated Coal Corp.*, 178 W.Va. 63, 357 S.E.2d 745 (1987)..............................26

*Windy City Met. Fab. & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*,
 536 F.3d 663 (7th Cir. 2008).............................................................................................35

*Young v. Apogee Coal Co., LLC*, 232 W. Va. 554, 753 S.E.2d 52 (2013).....................................19

## **Statutes**

*W.Va. Code* § 5-3-1.......................................................................................................................15

*W.Va. Code* § 5-3-2.......................................................................................................................15

*W.Va. Code* § 14-1-1.....................................................................................................................15

*W.Va. Code* § 14-1-2.....................................................................................................................15

*W.Va. Code* § 14-1-3.....................................................................................................................15

*W.Va. Code* § 17A-2-9..................................................................................................................16

*W.Va. Code* § 23-2-17...................................................................................................................25

*W.Va. Code* § 30-3-5.....................................................................................................................16

*W.Va. Code* § 30-3-7.....................................................................................................................16

*W. Va. Code* § 46A-1-101.............................................................................................................32

W.Va. Code § 46A-6-102.........................................................................................................32, 34

*W.Va. Code* § 46A-6-104..................................................................................................30, 31, 33

*W. Va. Code* § 46A-6-106.......................................................................................................33, 34

*W. Va. Code* § 46A-7-108...................................................................................................25, 29, 34

*W.Va. Code* § 46A-3-109..................................................................................37

*W. Va. Code* § 46A-7-110.................................................................25, 29, 34

*W. Va. Code* § 46A-7-111.................................................................25, 29, 34

*W.Va. Code* § 55-7-9 .............................................................................7, 38

*W.Va. Code* § 60A-4-403a ..........................................................................39

*W.Va. Code* § 60A-5-501.................................................15, 18, 21, 22, 23, 29

*W.Va. Code* § 60A-5-503.....................................................19, 23, 25, 29

*W.Va. Code* § 60A-8-1................................................................................22

*W.Va. Code* § 60A-8-3................................................................................22

*W. Va. Code* § 60A-8-10..............................................................23, 24, 25, 26

*W. Va. Code* § 60A-8-11............................................................................23

*W.Va. Code* § 62-5-7...................................................................................28

*West Va. Constitution,* Art. V, § 1...............................................................7, 19

## Other

*W.Va. R. App. Pro.* 16................................................................................1

*W. Va. R. Civ. P.* 12(b)(6)........................................................................1, 2

7 Am.Jur.2d *Attorney General* § 6.............................................................20

72 Am.Jur.2d *States, etc.* § 89 (2012)..........................................................15

72 Am.Jur.2d *States, etc.* § 93 (2012)..........................................................15

## STATEMENT OF THE CASE

The Petition for Writ of Prohibition of the Drug Distributor Defendants (Petitioners hereinafter are identified collectively as "DDDs") is a thinly-disguised attempt to appeal a nonappealable order, and this Court should refuse it summarily. The Circuit Court Order the DDDs seek to appeal here (12-14-14 Order) – is a routine, non-final denial of Rule 12 motions to dismiss – the trial court carefully considered and rejected each ground for dismissal the DDDs have recycled here for their quasi-appeal. Thus it is perhaps unsurprising the DDDs violate *W.Va.R.App.P.* 16(d)(7)'s requirement that they "must explain why the original jurisdictional relief sought is not available in any other court or cannot be had through any other process." The fact is that the trial court's orders may be appealed through the normal appeal process. The DDDs cannot meet the high bar necessary for issuance of a rule to show cause or writ, and should not be permitted to invoke this Court's jurisdiction improperly as a substitute for appeal.

In any event, the DDDs' Petition fails to establish the trial court in any way abused its judicial power in denying twice-briefed and argued motions to dismiss. The State, by its Attorney General and two state agencies (collectively hereinafter "the State"), has standing and brought this action under well-recognized common law and statutory authority to administer and enforce the Consumer Credit and Protection Act, authority complemented by the W.Va. Controlled Substances Act ("CSA"), to recompense the State for damages and to enjoin the DDDs from continuing to fuel West Virginia's epidemic of prescription drug abuse without monitoring, controlling and reporting suspicious controlled substance orders from Pill Mills.[1]

---

[1]Many pharmacies that order very large quantities of addictive and abused controlled substances from the DDDs are located in rural or low population areas where the amount of those addictive and abused controlled substances ordered from the DDDs is so much greater than a population of that size would or could warrant

### Statement of Facts

The factual basis for the State's claims is compelling. Properly applying Rule 12, the Circuit

Court found (12-14-14 Order at ¶¶ 6 -17) the State brought this action to address the epidemic of

prescription drug abuse and its costs to the State of West Virginia:

"6. The State alleges the problems caused by the prescription drug epidemic in West Virginia contributed by Defendants includes the fact that West Virginia is the Nation's "most medicated state" – citing data showing West Virginia pharmacies supplied by Defendants filled almost twice as many prescriptions as the national average on a *per capita* basis. (Am. Compl. ¶ 6(e)). [. . .]

8. It is alleged prescription drug abuse is widespread and costs the State hundreds of millions of dollars annually, devastates West Virginia communities and families, reduces the State's economic productivity, adversely affects West Virginia's hospitals, schools, courts, social service agencies, jails and prisons as well as diminishing the quality of life in the State's cities and towns. (*Id.* ¶¶ 1, 6).

9. Defendants are distributors of addictive controlled substances who supply controlled substances to pharmacies dispensing those drugs for illegitimate medical purposes, and that some of those pharmacies located in rural or low population areas order large quantities of commonly abused controlled substances from Defendants in amounts much greater than the populations in those areas would warrant, such that those orders are, at the very least, suspicious. (*Id.* ¶ 3). [. . . ]

11. The State claims Defendants profit from the prescription drug epidemic in West Virginia by distributing controlled substances in amounts in excess of the amount of controlled substances legitimately medically required. By distributing these excessive amounts of controlled substances, it is alleged Defendants violate West Virginia law by failing to implement or more particularly to follow and adhere to effective controls to guard against prescription drug diversion and by failing to effectively monitor, enforce and/or disclose suspicious orders they fill. (*Id.* ¶ 8).

12. In paragraph 29 of the Amended Complaint, the State alleges Defendants conduct violates industry customs and standards:

"The Defendants are distributors of controlled substances and must comply both with the laws of the State into which they distribute controlled

---

that the orders are, at the very least, suspicious. These pharmacies commonly are known as "Pill Mills." Second Amended Complaint at ¶¶ 3-4.

substances and with industry custom and standards. In the instant case, the standard of conduct for Defendants' industry requires Defendants know their customers, which includes, *inter alia,* an awareness of their customer base (including but not limited to population levels of the immediate area), knowledge of the average prescriptions filled each day, the percentage of diverted and/or abused controlled substances distributed as compared to overall purchases, how the dispenser fulfills its responsibility to ensure that prescriptions filled are for legitimate medical purposes, and identification of physicians and bogus centers for the alleged treatment of pain that are the dispenser's frequent prescribers."

13. In paragraph 30 of the Amended Complaint, the State claims:

"Defendants have wilfully turned a blind eye towards the foregoing factors by regularly distributing large quantities of commonly abused controlled substances to clients who are serving a customer base comprised of individuals who are themselves abusing prescription medications, many of whom are addicted and whom reasonably can be expected to become addicted or to engage in illicit drug transactions. The Defendants negligent acts and omissions in violation of West Virginia's drug laws have lead to the dispensing of controlled substances for non-legitimate medical purposes of epidemic proportions, including the operation of bogus pain clinics that do little more than provide prescriptions for addictive controlled substances and thereby creating and continuing addictions to prescription medications."

14. The State asserts each of the Defendants were aware of this epidemic of prescription drug abuse in West Virginia, but they nevertheless persisted in a pattern of distributing commonly abused and diverted controlled substances in geographic areas, and in such quantities and with such frequency, that each of the Defendants knew or should have known these commonly abused controlled substances were not being prescribed and consumed for legitimate medical purposes. (*Id.* ¶ 50).

15. Regulations promulgated pursuant to the West Virginia Controlled Substances Act require Defendants to do the following:

- "All registrants shall provide effective controls and procedures to guard against theft and diversion of controlled substances [. . . .]" 15 W.Va.C.S.R. § 2-4.2.1.

- "The registrant shall design and operate a system to disclose to the registrant suspicious orders of controlled substances. The registrant shall inform the Office of the West Virginia Board of Pharmacy of suspicious orders when discovered by the registrant. Suspicious

orders include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency." 15 W.Va.C.S.R. § 2-4.4. (*Id.* ¶ 20).

16. The State further alleges [. . . ] that by distributing excessive amounts of controlled substances, Defendants violate West Virginia law (15 *WVCSR* § 2-4.2.1 and 15 *WVCSR* § 2-4.4) by failing to implement effective controls to guard against prescription drug diversion and by failing to effectively monitor, enforce and/or disclose suspicious orders they fill. (*Id.* ¶ 8)."[2]

The State's Second Amended Complaint contains numerous concrete examples of the DDDs supplying well known Pill Mills in West Virginia in violation of the foregoing and other duties. For example, the State alleges, *inter alia*, at ¶ 15 of the 2nd Am. Cmplt., that records of the Drug Enforcement Agency indicate that between 2007 and 2012, the DDDs shipped the following quantities of dosages of oxycodone and hydrocodone to West Virginia:

|  | **Oxycodone** | **Hydrocodone** |
| --- | --- | --- |
| Amerisourcebergen Drug Corp. | 38,395,120 | 80,586,670 |
| Miami-Luken, Inc. | 8,253,600 | 20,442,900 |
| Anda, Inc. | 6,356,940 | 12,426,900 |
| H.D. Smith Wholesale Drug Co. | 4,476,820 | 13,897,880 |
| The Harvard Drug Group, LLC | 28,300 | 4,514,310 |
| Associated Pharmacies, Inc. | 266,700 | 2,688,690 |
| Keysource Medical Inc. | 905,100 | 1,238,700 |
| Masters Pharmaceutical, Inc. | 860,400 | 1,454,040 |
| Top Rx, Inc. | 16,800 | 1,668,920 |
| J.M. Smith Corp. | 294,880 | 587,100 |
| Quest Pharmaceuticals, Inc. | 73,900 | 1,148,940 |

The Second Amended Complaint alleges separate, specific allegations of wrongful acts and omissions of each DDD, including, *inter alia*, acts of each DDD in distributing controlled substances

---

[2]The State alleges the DDDs' wrongful distribution practices contributes to the fact that thirty-five (35) percent of babies born in West Virginia are born drug-addicted because their mothers are using drugs. 2nd Am. Cmplt. ¶ 6(I). The State asserts between 2001 and 2008, deaths in West Virginia from overdoses involving prescription drugs quadrupled from 5.1 deaths per 100,000 residents to 21.5. *Id.* ¶ 6(c).

to specifically identified pharmacies or locales in West Virginia. 2nd Am. Cmplt. at ¶¶ 14-15. The

State alleges further that the DDDs have created a public nuisance that, "pervasively affects West

Virginia communities and the State, and endangers the public health and safety and inconveniences

the citizens of the State, *inter alia,* in the following ways:

"•     Areas in certain communities have become congested with persons who gather in large groups outside of "clinics, pharmacies and physician offices" that in fact are component parts of Pill Mills that exist only to prescribe and deliver drugs for illicit, non-medical purposes;
- Crimes and other dangerous activities have increased;
- Hospital services, especially those services provided by emergency rooms, are being consumed by persons with prescription drug abuse issues;
- Law enforcement and prosecutorial resources are being exhausted and consumed by having to address prescription drug abuse issues to the exclusion of other matters;
- Public resources are being unreasonably consumed in efforts to address the prescription drug abuse epidemic, thereby eliminating available resources which could be used to benefit the public at large;
- Court dockets are congested by prescription drug-related cases as well as by crimes committed by addicts, thereby diminishing access to our courts by others;
- Jails and prisons suffer from overcrowding." 2nd Am. Cmplt at ¶ 51.

**Procedural History**

The State filed the original Complaint almost three and a half years ago. Throughout the

litigation, rather than defend the case on the merits and demonstrate compliance with the law, the

DDDs have deployed a series of delay tactics to try to stop this case in its tracks. First, the DDDs

removed to federal court, asserting baseless grounds for removal, all of which were rejected by the

federal court. *SER Morrisey v. AmerisourceBergen Drug Corp.*, 2013 WL 1305575 at *8 (S.D.W.Va.

2013) (remanding for lack of subject-matter jurisdiction). As found by the federal court:

"The [State's Complaint] is positively permeated with the notion that the defendants' monitoring and control failures have significantly contributed to the rampant abuse of prescription medications in the State. The complaint recites at multiple points the financial and human toll visited upon the Sovereign as a result of the crisis, affecting even something so basic as law enforcement and the delivery of justice. In sum, the

State wants the prescription drug epidemic halted and compensation for the past harms the alleged plague has visited upon its social welfare, health care, and justice systems."

After remand, the DDDs repeatedly have sought to stay discovery. The trial court denied the DDDs' first round of motions of dismiss by Order entered on December 14, 2014, and concomitantly directed the State to amend its Complaint to add defendant- specific allegations. The State promptly complied by timely amending its Complaint, thus precipitating a second round of repetitive motions to dismiss. The trial court denied the DDDs' second round of motions to dismiss on September 8, 2015, holding specifically that it would reconsider the DDDs' arguments at the summary judgment stage.[3] The DDDs nevertheless thereafter informed the trial court they intended to file the instant writ, and predictably again asked for a discovery stay, which was partially granted.

In the face of the State's allegations, the DDDs, rather than defend on the merits, have deployed a series of delay tactics, the most recent of which is the instant petition. The DDDs' petition is wholly without merit, and should be refused summarily so the case may proceed with discovery and factual development, and then to final judgment – either for or against the DDDs – and appeal, if any, in the normal course, rather than through an improper interlocutory appeal by way of extraordinary writ.

### Summary of Argument

This Court should deny the Petition for Writ of Prohibition because the Petition is an

---

[3]The trial court stated, "after reviewing the allegations against the individual Defendants, the Court is of the opinion that, if the Defendants raise the same arguments in a motion for summary judgment after discovery is completed, an entirely different result might be reached, once the summary judgment standard is applied with the allegations and the facts that are uncovered in discovery." 9-8-15 Order at 3. The trial court specifically stated it will reconsider the DDDs' arguments at the summary judgment stage – again, this shows that the DDDs are not entitled to a rule to show cause or an extraordinary writ because they still have an opportunity to make their case below.

improper interlocutory appeal. The Circuit Court has subject matter jurisdiction in this case, and hardly can be said to have "abused its powers" by denying the motions to dismiss. This Court has held many times that a writ of prohibition cannot be used as a substitute for an appeal, as it is being used here. A writ of prohibition cannot be used to correct alleged errors that are correctable later, at the summary judgment stage, and/or on appeal. A writ of prohibition lies only when a court abuses its powers so flagrantly that it violates a Petitioner's rights in a way that makes an appeal inadequate – not the case here because petitioners can move for summary judgment, and thereafter appeal. The trial court's denial of the DDDs' motions to dismiss is not in any way "extraordinary" and does not justify invocation of this Court's original jurisdiction.

The State respondents have standing and authority to bring the claims that they assert in the Circuit Court. The State has standing to sue in its sovereign capacity because it has suffered an economic injury, and has standing to assert injuries to its sovereign interests, to its proprietary interests and to its *parens patriae* interests.

To the extent the DDDs assert the novel argument that the State's lawsuit somehow violates the *W.Va. Constitution's* "separation of powers" clause, no caselaw or logic supports that argument.

The State, its Attorney General, and the State agency respondents, have authority to bring the instant claims. Nothing in the CSA expressly restricts or limits the Attorney General's common law power and authority to bring this case. *SER Discover Fin. Servs., Inc. v. Nibert*, 744 S.E.2d 625 (W.Va. 2013). In fact, the CSA also authorizes this suit.

The DDDs ignore the trial court's primary rationale for concluding the State has asserted valid claims for negligence pursuant to *Robertson v. LeMaster*, 171 W. Va. 607, 301 S.E.2d 563 (1983). Additionally, the trial court correctly ruled that *W. Va. Code* § 55-7-9 permits the recovery

-7-

of damages for the DDDs' violation of the CSA and accompanying regulations. The trial court also properly held that to the extent it is necessary to find a private cause of action pursuant to the four-part test set forth in *Hurley v. Allied Chemical Corp.*, 164 W.Va. 268, 262 S.E.2d 757 (1980), the State easily meets that test here.

The trial court properly concluded there is no prerequisite of exhaustion of administrative remedies in this case. There is not an administrative remedy available to the State respondents, and even if somehow one could be read into the CSA, it is not mandatory or exclusive. When contrasted with the judicial remedies in the CSA and CCPA, it is plain the State need not exhaust an administrative remedy before filing this suit. Finally, the futility and inadequacy exceptions would also apply to vitiate any exhaustion requirement.

The trial court properly concluded the municipal cost recovery doctrine does not apply to bar the State's claims. The doctrine never has been applied in West Virginia, nor has it ever been applied to preclude the claims of a State in any jurisdiction. Because the misconduct is ongoing as opposed to a discrete event, the doctrine should not apply. Lastly, the "public nuisance" and "statutory authority" exceptions would apply to the facts of this case.

The trial court properly concluded the State's CCPA claim is proper. The State's UDAP claim for improper and illegal sales to Pill Mills without effective anti-diversion controls in violation of state regulations is brought pursuant to the State's broadly-interpreted authority in Article 7 of the CCPA. Therefore, a sale directly from the DDDs to a natural person is not required under a plain reading of the CCPA. The DDDs' conduct of profiting off of the prescription drug epidemic while flaunting anti-diversion regulations was unfair. Nothing in the CSA or its regulations eviscerates the State's authority under the CCPA or otherwise prohibits the State from bringing its CCPA claim.

-8-

### Statement Regarding Oral Argument and Decision

Oral argument is unnecessary because the Petition is patently without merit, and further proceedings only would delay further the State's prosecution of its case.

### Argument

**A.      The Drug Distributor Defendants' Petition is nothing more than a disguised appeal of a non-appealable order, and should be refused summarily.**

This case was filed almost three-and-a-half years ago. The DDDs have attempted to delay and avoid discovery at every turn. The instant petition for writ of prohibition is simply the latest strategic procedural vehicle the DDDs have utilized to try to avoid the consequences of answering questions in discovery about whether they comply with West Virginia laws requiring them to both effectively monitor for and report any suspicious orders of addictive controlled substances, and their role in causing West Virginia's epidemic of prescription drug abuse.

Considering that the DDDs now argue the Circuit Court of Boone County somehow lacks subject-matter jurisdiction, it is worth noting that the first delay tactic employed by these same DDDs was the unjustified removal of the case to federal court, where they argued the federal court, not any state administrative agency, had subject-matter jurisdiction of the case. In federal court, the DDDs forced the State to litigate a remand motion while the federal district court stayed discovery. Curiously, in resisting the State's motion to remand, the DDDs argued the federal district court had subject-matter jurisdiction over the State's claims. The federal court remanded the case and held that it did not have subject-matter jurisdiction, and that jurisdiction was, in fact, proper in the Circuit Court of Boone County. Now, after over three years of litigation and numerous failed arguments and in an obvious effort to stymie discovery, the DDDs seek solace in this Court's extraordinary writ

procedure, desperately searching for a way to avoid depositions by attempting an interlocutory appeal of the denials of their motions to dismiss.

Denial of a motion to dismiss is interlocutory and not immediately appealable. *Syl.* Pt. 2, *SER Arrow Concrete Co. v. Hill,* 194 W.Va. 239, 460 S.E.2d 54 (1995). The law is clear. "Under W. Va. Code, 58-5-1, appeals only may be taken from final decisions of a circuit court. A case is final only when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined." *Syl.* Pt. 3, *James M.B. v. Carolyn M.*, 193 W. Va. 289, 456 S.E.2d 16 (1995). "The required finality is a statutory mandate, not a rule of discretion." *Province v. Province*, 196 W. Va. 473, 478, 473 S.E.2d 894, 899 (1996). In other words, this Court generally lacks discretion to permit an appeal of an interlocutory order that does not terminate a claim or the litigation between parties.

This Court consistently has held, "[W]e are adamantly opposed to being in the interlocutory appeals business." *Hinkle v. Black*, 164 W. Va. 112, 116, 262 S.E.2d 744, 747 (1979). "To be appealable, therefore, an order either must be a final order or an interlocutory order approximating a final order in its nature and effect." *Guido v. Guido*, 202 W. Va. 198, 202, 503 S.E.2d 511, 515 (1998). "[A]s an extraordinary remedy invoking the original jurisdiction of this Court, a petition for a writ of prohibition may not be used as a substitute for an appeal. *Syl.* Pt. 1, *SER Gibson v. Hrko*, 220 W. Va. 574, 648 S.E.2d 338 (2007); *Syl.* Pt. 1, *Crawford v. Taylor*, 138 W. Va. 207, 75 S.E.2d 370 (1953). "As early as 1873, this Court stated that a 'mere error in the proceeding may be ground of appeal or review, but not of prohibition.'" *SER W. Va. Nat'l Auto Ins. Co. v. Bedell,* 223 W. Va. 222, 226-227, 672 S.E.2d 358, 362-63 (2008) (quoting Syl. Pt. 3, *Buskirk v. Judge of Circuit Court,* 7 W. Va. 91 (1873).

-10-

This Court consistently has explained that the use of the extraordinary writ of prohibition is reserved for only those cases where the trial court engages in an abuse of powers, "so flagrant and violative of the petitioner's rights" as to make an appeal inadequate.

> "[W]e have explained, "traditionally, the writ of prohibition speaks purely to jurisdictional matters. It was not designed to correct errors which are correctable upon appeal. . . . [O]nly if the appellate court determines that the abuse of powers is **so flagrant and violative of petitioner's rights as to make a remedy by appeal inadequate,** will a writ of prohibition issue."

*SER Evans v. Robinson,* 197 W. Va. 482, 489, n.11, 475 S.E.2d 858, 865 n.11 (1996) (cited authority omitted) (emphasis added). Here, the trial court merely has undertaken the common judicial act of denying motions to dismiss – denial of a motion to dismiss is not a "flagrant abuse of powers so violative of petitioners' rights as to make a remedy of appeal inadequate" – indeed, inherent in *every* denial of a motion to dismiss is the position of a defendant that the trial court erred in denying the motion, but the defendant will have further opportunities, at the dispositive motion stage, at trial, and upon appeal, to make the case for dismissal of a plaintiff's claims. This case is no different, and the remedy of appeal is adequate here.

This Court has cautioned that "'prohibition against judges [is a] drastic and extraordinary remedy,'" and as such, "[is] reserved for really extraordinary causes." *River Riders, Inc. v. Steptoe,* 223 W. Va. 240, 247, 672 S.E.2d 376, 383 (2008) (quoting *SER United States Fid. & Guar. Co. v. Canady,* 194 W. Va. 431, 436, 460 S.E.2d 677, 682 (1995)). Accordingly, the Court "has been restrictive in the use of prohibition as a remedy." *Horkulic v. Galloway,* 222 W. Va. 450, 458, 665 S.E.2d 284, 292 (2008) (quoting *SER W. Va. Fire & Casualty Co. v. Karl,* 199 W. Va. 678, 683, 487 S.E.2d 336, 341 (1997)).

Faced with similar circumstances of a defendant making what is essentially an appeal of the

denial of a motion to dismiss for failure to state a claim, this Court refused to grant a writ of prohibition. In *Arrow Concrete,* defendants sought a writ of prohibition when their motion to dismiss was denied, ostensibly seeking this Court's resolution of discovery issues. This Court refused the bait, observing, "[i]ndirectly, the defendants are asking this Court to address the trial court's denial of their motion to dismiss for failure to state a claim." 194 W. Va. at 245, 460 S.E.2d at 60. This Court continued:

> Although for obvious reasons the defendants resist categorizing this prohibition as
> an appeal of the denial of a motion to dismiss a claim for failure to state a cause of
> action, essentially that is what this proceeding involves. Accordingly, we hold that
> ordinarily the denial of a motion for failure to state a claim upon which relief can be
> granted made pursuant to West Virginia Rules of Civil Procedure 12(b)(6) is
> interlocutory and is, therefore, not immediately appealable. Thus, the defendants
> may not indirectly raise this issue by seeking a writ of prohibition in order to preclude
> the trial judge from compelling discovery.

*Id.; see also SER Bell Atlantic-W. Va. v. Ranson*, 201 W. Va. 402, 418 n.12, 497 S.E.2d 755, 771 n.12 (1997) (relying on *Arrow Concrete* to deny writ of prohibition to prohibit enforcement of trial court's order denying motion to dismiss under *W. Va. R. Civ. P.* 12(b)(6)).

The cases the DDDs cite to support their assertion that a writ of prohibition may lie to prohibit a denial of a motion to dismiss clearly are inapposite. *See SER Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996) (trial court exceeded powers by approving issuance of subpoena); *SER W. Virginia Consol. Pub. Ret. Bd. v. Nibert*, 235 W. Va. 203, 772 S.E.2d 609 (2015) (trial court exceeded its jurisdiction by accepting petition for administrative review filed out of time more than 30 days after decision). The DDDs' citation of the foregoing cases is for the purpose of citing *Syllabus* Point 4 of *Hoover, supra*, where this Court held:

> "In determining whether to entertain and issue the writ of prohibition for cases not
> involving an absence of jurisdiction but only where it is claimed that the lower

-12-

tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Curiously, the DDDs ignore *Hoover*'s five-part test and address *only* part 3 – they make no pretense over their inability to satisfy parts 1, 2, 4 and 5 because clearly (1) they have other adequate means to obtain their sought after relief, such as a direct appeal; (2) denial of the motions to dismiss will not damage or prejudice them in a way that is not correctable on appeal; (4) the alleged error of the lower court is not "oft repeated" nor is there any asserted "persistent disregard for procedural or substantive law; and (5) the lower court's order does not raise new or important problems or issues of law of first impression. As for part 3 of the test in *Syllabus* Point 4 of *Hoover, supra*, the lower court's denial of the motions to dismiss is not "clearly erroneous as a matter of law" – in fact, as shown below, it is the DDDs who proffer (at best) novel legal arguments to defeat the State's claims.

The DDDs also ignore *Syllabus* Point 3 of *Hoover, supra*, that holds:

"Prohibition lies only to restrain inferior courts from proceedings in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers, **and may not be used as a substitute for [a petition for appeal] or certiorari**." Syl. Pt. 1, *Crawford v. Taylor*, 75 S.E.2d 370 (1953).

(Emphasis added). Pursuant to *Hoover, supra*, the DDDs' Petition is "being used as a substitute for appeal," and unless this Court means to overturn the foregoing longstanding prohibition standard, prohibition does not lie to restrain the trial court's denial of their motions to dismiss. Accordingly,

-13-

the State respectfully requests this Court refuse to issue a rule to show cause, and allow this cause to proceed in the normal course before the Circuit Court of Boone County.

**B.      If the Court considers the merits, it should refuse the Petition.**

As stated above, there is no basis in this Court's writ jurisprudence or the writ statute to issue a rule to show cause. The Circuit Court's denial of the motions to dismiss do not rise to the extraordinary level of an abuse of judicial power. Indeed, the rulings were correct. Even if they were not, any asserted error can and should be addressed adequately in the normal course of litigation. Nonetheless, in an abundance of caution, the State will address the merits of the Petition below. As the following discussion demonstrates, the Circuit Court committed no error in refusing the motions to dismiss, a disfavored means of disposing of a case that rarely should be granted.

**1      Standing[4]**

This case is brought in the name of the State of West Virginia. The Attorney General is the lawyer, and although he may be the representative of the State, the claims are brought in the name of the State, and for the benefit of the State, and the State is the real party in interest. 12-14-14 Order at ¶¶ 22-23. "A State may have standing to assert an injury to a sovereign interest, to some proprietary interest, or to its *parens patriae* interest. A State has standing to sue in its sovereign

---

[4]Standing is about whether a party has suffered sufficient harm to have a personalized stake in the case and whether the Plaintiff has alleged injury, causation, and redressability. The DDDs are *not* arguing harm or injury is missing; rather, their "standing" argument (Pet. at 9-14) conflates standing with whether there is a properly pled "cause of action." As stated by the trial court in its 12-14-14 Order at ¶ 21, "[S]tanding is defined as '[a] party's right to make a legal claim or seek judicial enforcement of a duty or right.'" *Findley v. State Farm Mut. Auto. Ins. Co.*, 576 S.E.2d 807, 821 (W.Va. 2002)(quoting *Blacks Law Dictionary* (7th ed. 1999). "'Standing is comprised of three elements: First, the party attempting to establish standing must have suffered an 'injury-in-fact'-an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent and not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct forming the basis of the lawsuit. Third, it must be likely that the injury will be redressed through a favorable decision of the court.'" *Syl.* pt. 5, *Findley, supra."*

capacity if it has suffered an economic injury." 72 Am.Jur.2d *States, etc.* § 93 at 516 (2012); *see also id.,* § 89 at 513 (2012)("A state, as a political corporation, has the right, independent of any statutory provision, to institute a suit in any of its courts[,] whether doing so is required by its pecuniary interests or by the general public welfare. It possesses this right both in its sovereign capacity and by virtue of its corporate rights."). 12-14-14 Order at ¶ 24. Thus, the DDDs' argument concerning "standing" is nothing more than an elaborate red herring.[5]

The DDDs ignore the trial court's conclusions concerning the State's standing in favor of their caselaw-barren argument that only the West Virginia Board of Pharmacy ("BOP") may bring the State's claims made here. Pet. at 9 - 14 (DDDs cite no supporting caselaw for the bald argument that only the BOP may bring the State's claims). While the DDDs characterize their argument as one of "standing," the DDDs have confused and conflated the issue of standing with whether the State has a cause of action – their argument fails to recognize the difference between State's standing and whether it has authority to bring and has properly pled its causes of action.

Spinning from whole cloth, the DDDs argue the fact that the Legislature enacted a statute giving the BOP the authority to issue licenses to them somehow immunizes them from the State's claims for damages – if accepted, this bizarre argument could be used to immunize others who are issued licenses by an administrative body – doctors could use the same logic to argue they are immunized from malpractice negligence lawsuits ("The [West Virginia] board [of Medicine] remains

---

[5]While unnecessary due to the clear standing of the State to bring its claims, the trial court properly concluded in the alternative that, "the Attorney General is authorized to do so pursuant to the common law, the doctrine of *parens patriae*, and several statutes, including but not limited to *W.Va. Code* §§ 5-3-1, 5-3-2, 14-1-1, 14-1-2, 14-1-3[,]" 12-14-14 Order at ¶ 26-27, and *W.Va. Code* § 60A-5-501(c) (12-14-14 Order at ¶ 86). As for the DDDs' discussion thereof (Petition at 15-17), see n. 10, *infra*, concerning the applicability of *W.Va. Code* § 60A-5-501(c). *W.Va. Code* §§ 14-1-1 to 3 also give the Attorney General standing because the instant claims are to enforce liabilities owed to the State.

the sole authority for the issuance of licenses to practice medicine and surgery[. . . .] and shall regulate the professional conduct and discipline of such individuals." *W.Va. Code* § 30-3-5 and 7)), and even those with drivers' licences who cause auto accidents would be subject only to licensure proceedings by the Dept. of Motor Vehicles ("The commissioner [of the Division of Motor Vehicles] shall observe, administer and enforce the provisions of this chapter and all laws the enforcement of which is now or hereafter vested in the department." *W.Va. Code* § 17A-2-9(a)). Under the DDDs' rationale, all claims related to car accidents would be administrative licensure proceedings within the exclusive purview of the department of motor vehicles, and medical malpractice claims would be licensure proceedings within the exclusive authority of the Board of Medicine. Such results would be absurd, just as they would be here. It was not "clear error" for the trial court to reject the DDDs' assertion they are immunized from liability by the fact that the BOP has the power to administer their licenses, just as those with licenses to drive or practice medicine are not immunized from liability – to the contrary, it would have been clear error for the trial court to grant the motions and immunize them.

The trial court correctly found the DDDs' "standing" arguments further ignore the well-recognized right of a State, through its officers, to bring a proprietary suit in which it sues much like a private party suffering a direct, tangible injury or to bring a *parens patriae* suit to vindicate "quasi-sovereign" interests on behalf of its citizens. A State's "quasi-sovereign"' interests include protecting the health and well-being—both physical and economic—of its residents in general – precisely what is at issue in the case at bar.[6] Because the State is entitled to bring suit under these

---

[6]DDDs ignore well established precedent holding a, "State may bring a proprietary suit in which it sues much like a private party suffering a direct, tangible injury. . . . It may also bring a *parens patriae* suit in which it seeks to vindicate a 'quasi-sovereign' interest on behalf of its citizens. . . . A State's 'quasi-sovereign'

-16-

doctrines, it has standing. 12-12-14 Order at ¶¶ 28-29. By and large, where this Court has addressed standing, it has been with regard to individual citizens or citizen groups attempting to enforce a generalized right, and not the rights of state agencies or members of the Board of Public Works. It can not seriously be questioned that the State has standing in the case at bar, first, by virtue of its direct, tangible injuries, and also by its *parens patriae* authority. 12-14-14 Order at ¶ 30. The State of West Virginia has standing and may sue for damages to vindicate its quasi-sovereign interests caused by the DDDs' wrongdoing. *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 600-01 (1982) (Puerto Rico had *parens patriae* standing to seek redress from private parties for discriminating against its citizens). [7]

The DDDs cite (Pet. at 18-19) this Court's recent holding in *Commonwealth, Pennsylvania Fish & Boat Comm'n v. Consol Energy, Inc.*, 233 W. Va. 409, 758 S.E.2d 762 (2014), where it held at *Syllabus* Point 3 that, "'[a]lthough an express grant of powers to an administrative agency will be

interests include protecting the 'health and well-being—both physical and economic—of its residents in general.'" *In re Oxycontin Antitrust Litig.*, 821 F. Supp.2d 591, 601 (S.D.N.Y. 2011).

[7]The Supreme Court held in *Snapp* that a State may sue in court to enforce its quasi-sovereign interests, that "consist of a set of interests that the State has in the well-being of its populace," *Id.* at 602. This includes "both [the] physical and economic" well-being "of its residents in general." *Id.* at 607. "Although more must be alleged than injury to an identifiable group of individual residents, the indirect effects of the injury must be considered as well in determining whether the State has alleged injury to a sufficiently substantial segment of its population." *Id.* at 607. 12-14-14 Order at ¶¶ 31-32. The State has "articulate[d] an interest apart from the interests of particular private parties." 458 U.S. at 607. The trial court thus concluded properly the State has *parens patriae* standing here. 12-14-14 Order at ¶ 34. *Snapp* illustrates the basic point that a statute need not expressly provide for suit by states in a quasi-sovereign capacity to have standing. *See, e.g., State of Texas v. Am. Tobacco Co.*, 14 F. Supp. 2d 956, 962 (E.D. Tex. 1997)(State of Texas had sufficient interest to maintain an action in its "quasi-sovereign capacity" against tobacco companies since it expended millions of dollars each year to provide medical care, affecting the health and welfare of the people of Texas). Likewise, in the case *sub judice*, the State alleges it has "spent hundreds of millions of dollars annually" and the epidemic caused by DDDs' conduct has cost as much as $430 million in 2010 and may cost as much as $695 million by 2017. 2nd Am. Cmplt. at ¶ 6. Thus, the State demonstrates it may maintain suit against the DDDs in its "quasi-sovereign" capacity and has standing to pursue its claims. *Snapp, supra*.

-17-

determined to include such other powers as are necessarily or reasonably incident to the powers granted, the agency's powers should not be extended by implication beyond what may be necessary for their just and reasonable execution.' Syl. Pt. 3, *Walker v. W.Va. Ethics Com'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997)." Here, virtually the entirety of the DDDs' argument is premised on a broad extension of the powers of the BOP far beyond what is necessary for their just and reasonable execution. The BOP is a licensing body – by granting it power over licensing the DDDs, the Legislature did not expressly (nor impliedly for that matter) restrict or limit the common law authority of the State or its Attorney General. The deafening silence of the CSA as to extending the BOP's powers into the area of recovering damages for the State shows clearly the Legislature did not intend, expressly or otherwise, to restrict or repeal the State or the Attorney General's common law standing and authority to bring the instant claims.

On the other hand, West Virginia Code § 60A-5-501(c) provides express statutory authority, as the Attorney General is charged with "assist[ing] in the enforcement of the act" and "cooperat[ing] with all agencies charged with the enforcement of the laws . . . of this state[:]"

> "**[T]he attorney general, or any of their assistants, shall assist in the enforcement of all provisions of this act and shall cooperate with *all* agencies charged with the enforcement of the laws** of the United States, **of this state**, and of all other states relating to controlled substances."

*Id.* (emphasis added). Integral is the word "all." The Attorney General "shall" (i.e., must) assist and cooperate with *all* agencies charged with law enforcement agencies of this State. *Cf.*, note 10 *infra*. That is precisely what the Attorney General is doing with this lawsuit – assisting agencies charged with enforcement of West Virginia law. DHHR and DMAPS are unquestionably charged with enforcement of West Virginia law. When DHHR and DMAPS, at the request of the Governor, joined

-18-

the lawsuit and obviously are requesting (as law enforcement agencies) the assistance and cooperation of the Attorney General, he, as the State's lawyer, has authority to bring this lawsuit on their behalf. A judicial remedy to do just that is available within Article 5 in W. Va. Code § 60A-5-503. *See* 12-14-14 Order at ¶ 91 ("the CSA includes a specific grant of authority to seek injunctive relief in *W.Va. Code* § 60A-4-403. . . . the judicial remedy in § 60A-5-503(a) of the CSA does not limit the State authorities who may pursue relief under that section.").

### 2    The Separation of Powers Clause

The DDDs hyperbolically assert the State's claims against them somehow violate the "separation of powers" clause of Art. V, § 1 of the *W.Va. Constitution*. They baselessly argue the State's lawsuit is a legislative act. Petition at 12 -14. This novel theory lacks merit. Theoretically perhaps the constitutional separation of powers clause might be implicated if a state actor filed a lawsuit where the Legislature specifically had precluded the state actor from so doing, but such is not the case. Here, the State Plaintiffs have acted well within their its authority, and thus have not infringed on the Legislature's prerogatives. Revealingly, the DDDs cite no caselaw [8] suggesting the filing of a lawsuit by a State's Attorney General or state agencies violates the separation of powers clause of the *W.Va. Constitution*. There is no merit to the DDDs' separation-of-powers argument, and the Court should refuse to issue a rule to show cause.

### 3    Authority to bring the instant claims

In *Syl*. Pt. 3 of *State ex rel. Discover Fin. Servs., Inc. v. Nibert*, 744 S.E.2d 625 (W.Va.

---

[8]The only case cited by the DDDs in support of their novel separation of powers argument does not concern or even mention the separation of powers clause – it is a deliberate intent case. *Young v. Apogee Coal Co.*, LLC, 232 W. Va. 554, 753 S.E.2d 52 (2013)(non-employer "person" may not be made a defendant in a "deliberate intention" cause of action based upon proof of a known unsafe working condition). *Young* has no application to this case.

2013), this Court reaffirmed the Office of Attorney General retains inherent common law powers:

> "The Office of Attorney General retains inherent common law powers, when not **expressly restricted or limited by statute**. The extent of those powers is to be determined on a case-by-case basis. Insofar as the decision in *Manchin v. Browning,* 170 W.Va. 779, 296 S.E.2d 909 (1982), is inconsistent with this holding, it is expressly overruled."

(Emphasis added). "Under the common law, the attorney general has the power to bring any action which he or she thinks necessary to protect the public interest, a broad grant of authority which includes the power to enforce the state's statutes." 7 Am.Jur.2d *Attorney General* § 6 at 11. This common law authority has not been repealed by the Legislature, and thus continues. As this Court has held:

> "[U]nder Article VIII, Section 13, the Legislature can expressly repeal specific aspects of the Attorney General's inherent common law powers. However, contrary to *Manchin's* cavalier treatment of the subject, the "common law is not to be construed as altered or changed by statute, unless legislative intent to do so be plainly manifested." *Berger,* 199 W.Va. at 75, 483 S.E.2d at 75 (internal quotations and citation omitted)."

*Discover, supra,* 231 W. Va. at 249, 744 S.E.2d at 647. There is no "plainly manifested legislative intent" that might allow any statute to be construed as altering or changing the Attorney General's common law authority to bring these claims.[9] As held by the Circuit Court, the failure of the DDDs

---

[9]Unlike the inapposite *SER.Morrisey v. West Va. O.D.C.,* 234 W.Va. 238, 764 S.E.2d 769 (2014)(*W.Va. Constitution* and statute abolished AG's common law authority to prosecute criminal cases), neither the *W.Va. Constitution* nor any legislation empowers the BOP to bring the instant claims for the State and its agencies. Also, to the extent the DDDs argue denial of the motions to dismiss somehow create "conflicting enforcement schemes," no caselaw is cited to support that argument. Instead, the DDDs argue the BOP "disagrees" with the State concerning whether the DDDs have complied "with anti-diversion rules," because the BOP has renewed their respective licenses. As the Circuit Court held at ¶ 90, n.19 of its 12-14-14 Order, "the renewals are not conclusive proof the [DDDs] have complied with all laws and regulations for all of time which or [*sic*] warrant dismissal of the case."

-20-

to cite an express restriction is fatal to their argument.[10] 12-14-14 Order at ¶ 39.

### 4 The Second Amended Complaint States Causes of Action

Perhaps unsurprisingly, the DDDs ignore completely the Circuit Court's primary rationale

for concluding the State asserted a valid claim for negligence:

> "41. "'The liability to make reparation for an injury, by negligence, is founded upon an
> original moral duty, enjoined upon every person, so to conduct himself, or exercise his own
> rights, as not to injure another.'" *Syllabus* Point 1, *Robertson v. LeMaster*, 171 W. Va. 607,
> 301 S.E.2d 563 (1983) (internal citation omitted).
>
> 42. "One who engages in affirmative conduct, and thereafter realizes or should realize that
> such conduct has created an unreasonable risk of harm to another, is under a duty to exercise
> reasonable care to prevent the threatened harm." *Id. Syl.* Pt. 2.
>
> 43. The Court concludes the State's negligence claims constitute valid claims. The State
> alleges Defendants engaged in affirmative conduct, that is, the heavy distribution and sale
> of addictive controlled substances to Pill Mill pharmacies in unusually large amounts for the
> population base, when they knew or should have known that the distribution of addictive
> controlled substances in such amounts in such areas would be diverted and/or improperly
> used thereby creating an unreasonable risk of harm and damage to others, in the form of
> increased crimes and other public health and safety dangers in West Virginia communities.
> (See, e.g., Am. Compl. ¶¶ 3, 29). *Syl. Pts.* 1 and 2, *Robertson v. LeMaster*, 171 W. Va. 607,
> 301 S.E.2d 563 (1983)."

12-14-14 Order at ¶¶ 41-43. Nowhere in their Petition do the DDDs acknowledge or dispute the

Circuit Court's primary, correct conclusion that a claim for negligence is stated apart from the CSA

---

[10]*Arguendo*, even if the Attorney General lacked common law authority, he has authority under *W.Va. Code*
§ 60A-5-501(c), both independently and pursuant to the request of the State Police – he is not restricted to
taking only action requested by the BOP as argued by the DDDs. That creative argument, that the
Legislature's command to assist and cooperate with *all agencies* in enforcement somehow is an "express"
restriction or limitation on the State's authority to bring this case, is nothing more than sophistry. The
statutory "cooperate and assist" requirement is not a limitation or restriction on the Attorney General's
powers – that provision is not even limited to assisting and cooperating with enforcement of West Virginia's
CSA, but extends broadly to assisting and cooperating in the enforcement of all other states and the federal
government's controlled substances laws. This provision can not be construed even to be an implied
limitation on the Attorney General's authority to bring the instant claims, let alone the express limitation
required by *Syl.* Pt. 3 of *Discover, supra*. The DDDs citation to *In re Taylor B.C*, 233 W.Va. 130, 755 S.E.2d
664 (2014) is inapposite because the Attorney General's common-law authority to bring damages claims for
the State was not in issue.

and its attendant regulations. The Petition should be refused on that basis alone.

### 5     The State is Not Required to "Exhaust Administrative Remedies"

DDDs argue erroneously that the State of West Virginia should have exhausted administrative remedies before filing the instant claims. As background, "The Wholesale Drug Distribution **Licensing** Act of 1991" added Article 8 to the CSA. *W.Va. Code* § 60A-8-1 (emphasis added). The purpose of Article 8 was to ensure that those selling prescription drugs would be licensed by the State. *Id.* § 60A-8-3.[11]

While the BOP generally oversees the licensing requirements in Article 8, by contrast, Article 5, entitled "Enforcement and Administrative Provisions," requires the Attorney General to "assist in the enforcement of the act" and "cooperate with all agencies charged with the enforcement of the laws . . . of this state[.]" W. Va. Code § 60A-5-501(c). That is precisely what the State is doing in the case at bar. Article 5 explicitly recognizes the BOP is in no way the "exclusive" administrative body charged with enforcement of the Act as asserted by DDDs. At numerous points in Article 5 the enforcement authority and various other responsibilities are bestowed upon the State Police (a

---

[11]Much of the DDDs' Petition is spent attempting to transpose the State's claims for damages with some sort of a licensure "enforcement action" that might have been brought by the BOP under the Controlled Substances Act. The DDDs' transparent purpose of mislabeling the State's claims as a licensure "enforcement action" is to immunize their wrongful conduct from any claim by the State for damages. If, as the DDDs argue, the State's claims are an "enforcement action" and the BOP has "exclusive authority" over an "enforcement action," it also is clear the BOP lacks authority to bring or resolve any claim for damages suffered by the State or its agencies. Thus, the DDDs are not immunized from liability for the damages they have proximately caused the State. Avoiding the foregoing, the DDDs argue the State's common law claims are "nonsensical" Pet. at 25. Their citation to *Blankenship v. Ethicon, Inc.,* 656 S.E.2d 451 (W.Va. 2007) actually supports the State's claims – the statute in issue there, the Medical Professional Liability Act, contains an express, broad liability definition that clearly included the plaintiff's claim: "West Virginia Legislature's definition of medical professional liability [. . . ] includes liability for damages resulting from the death or injury of a person for *any* tort based upon health care services rendered or which should have been rendered." (Emphasis in original). *Id.* at *Syl.* Pt. 3. Thus, the fact the CSA does *not* have a broad definition of liability that covers *any tort* based upon controlled substances distribution shows that Plaintiff's claims are not governed by the CSA. *Id.*

subdivision of Plaintiff DMAPS). *See W.Va. Code* § 60A-5-501(a)(5), *W.Va. Code* § 60A-5-501(c)(3)-(6). Article 5 further also provides a judicial remedy: "The courts of record of this state have and may exercise jurisdiction to restrain or enjoin violations of this act." *Id.* § 60A-5-503(a). The BOP plainly does not have "exclusive" authority over the CSA.

Even if the BOP had "exclusive" authority to enforce the Act, which it does not, the fact that there is no administrative remedy available to the State respondents to recover their damages in this case shows there is no exhaustion prerequisite. The DDDs focus on, yet mis-characterize, § 60A-8-10,[12] but it is plainly not an administrative remedy available to the State respondents. The Petition seems to acknowledge as much. Pet. at 27. The rule which requires the exhaustion of administrative remedies is inapplicable where no administrative remedy is provided by law.'" Syl. Pt. 3, *CBC Holdings, LLC v. Dynatec Corp., USA*, 224 W. Va. 25, 680 S.E.2d 40 (2009) (internal quotation omitted). Because there is no administrative remedy provided by law for the State respondents to recover the enormous damages proximately caused by the DDDs, the common law exhaustion of administrative remedies doctrine is inapplicable. Thus, the Circuit Court correctly denied the DDDs' exhaustion argument on that basis alone. 12-12-14 Order ¶ 88-89.

In a nearly-identical setting involving claims brought by the State where defendants alleged the State did not exhaust an administrative remedy, this Court rejected a similar Petition for Writ of Mandamus exhaustion argument. *SER Rite Aid of WV, Inc. v. Hon. W. S. Thompson, Judge, et al.,* No. 11-0648 (May 25, 2011). In that case, as here, the following were present (1) the administrative

---

[12]Aside from *W.Va. Code* § 60A-8-10, the DDDs do not appear to contend any other section of the CSA constitutes an administrative remedy. The DDDs' mention of § 60A-8-11(a) is misleading as it provides only that the DDDs are not exempt from inspections if the BOP happens to receive a complaint, but it says nothing about any administrative remedy available to the State respondents.

-23-

remedy was not mandatory or exclusive, (2) there was a specific statutory grant of authority, and (3) application of the principle guarding against using a common-law doctrine to vitiate statutory rights. For these same reasons, the State did not need to exhaust any administrative remedies before initiating this suit.

Likewise, while the aforementioned provision (§ 60A-8-10) permits the BOP to proceed through its internal complaint process for the purpose of restricting licensing privileges of wholesale drug distributors, that section does not *require* a state agency or official with a complaint about a drug distributor to make its complaint only with the BOP or to only complain through that Board's internal process to merely restrict a drug distributor's license. *See id.* Rather, the language of § 60A-8-10 is limited to, "when complaints" disclose illegal conduct, the BOP may act – thus, the reference to "complaints" may be for those derived internally within the BOP, as opposed to from external sources. *See id.* § 60A-8-10(a). To the extent it could somehow be construed a administrative remedy for these State respondents, it would be permissive and neither mandatory or exclusive. In reversing a circuit court's order to the effect that a plaintiff must first exhaust administrative remedies before filing suit, this Court found dispositive that the administrative remedy was "permissive and not mandatory" under the statute. Syl. Pt. 6, *Weimer v. Sanders*, 232 W. Va. 367, 752 S.E.2d 398 (2013). Likewise, here, any paltry, inadequate ability to lodge a complaint with the BOP is permissive, not mandatory. Although the BOP may charge drug distributors under its authority to regulate licensing in *W.Va. Code* § 60A-8-10, that permissive authority in no way prohibits the filing of the State's claims here, just as every lawsuit against a corporation need not first file an administrative complaint with the Secretary of State's office on the basis that the Secretary of State may have the power to receive complaints from the public and revoke the license or

-24-

registration of a malfeasant corporation.

There is a specific statutory grant of authority in the CSA as well as in the CCPA to seek, *inter alia*, injunctive relief in court in this case. *W. Va. Code* § 60A-5-503(a); *W.Va. Code* §§ 46A-7-108, -110 and -111. The CSA statute does not limit which state authorities may pursue relief under this section, and the CCPA explicitly authorizes the Attorney General to pursue the CCPA claim. *Id.* The State's Second Amended Complaint seeks injunctive relief and monetary damages against the DDDs, not revocation of their licenses. Consequentially, there is only one place in the CSA[13] that provides the remedies the State respondents pursue in this litigation, and that is found in Article 5's judicial remedy. *W. Va. Code* § 60A-5-503(a); *see id.* § 60A-8-10. With the powers delegated by § 60A-5-503(a), the Legislature allows other state regulators to fill in the judicial realm whatever void the over-loaded and under-staffed BOP cannot fulfill in the administrative licensing sphere. This case was filed precisely where it should be filed, in circuit court.[14]

When both an administrative and judicial remedy are available, an administrative remedy need not be exhausted first unless the statute so states explicitly. *See, e.g., Weimer*, 752 S.E.2d at 406 n. 4 ; *Beichler v. West Va. Univ. at Parkersburg*, 226 W.Va. 321, 700 S.E.2d 532 (2010). This Court repeatedly has construed dual-elective language allowing both judicial and administrative remedies in the same statute as indicative of the legislative intent to provide both a judicial and an administrative remedy, with no exhaustion requirement. *See, e.g., id.* Simply put, a common-law

---

[13]There is similar authority in the CCPA. *W. Va. Code* §§ 46A-7-108, 46A-7-110.

[14]While the DDDs fixate on *State ex rel. Smith v. Thornsbury*, 214 W. Va. 228, 588 S.E.2d 217 (2003), that case is inapposite. In *Smith*, the administrative remedies provided by W. Va. Code § 23-2-17 were exclusive to the agency and there was not "concurrent jurisdiction . . . statutorily prescribed[.]" *See id.* at 214 W. Va. at 231-233, 588 S.E.2d at 220-222. There was no concurrent judicial remedy in that case. *See id.*

principle of exhaustion of administrative remedies cannot vitiate statutory rights. *See id.*

Both the futility and inadequacy exceptions would also apply if there were any such administrative remedy.[15] The State respondents need not exhaust any administrative remedies before filing a court action under the CSA, the CCPA, the common law or otherwise.

## 6    Municipal Cost Recovery Doctrine

In the narrow circumstances where the common law "municipal cost recovery doctrine"[16] has been imposed by courts, the doctrine has been applied only to claims brought by municipal governments, not States. The Circuit Court observed, correctly, that, "[a]s the name suggests, the 'municipal cost recovery doctrine' has **never** before" been read to limit the power of States, which, of course, hold a special place in our federalist system. 12-12-14 Order ¶ 95 (emphasis added), *citing Alden v. Maine*, 527 U.S. 706, 715 (1999).

Indeed, in a case where the municipal cost recovery doctrine was sought to foreclose state claims made by the Attorney General of Rhode Island, the doctrine was rejected specifically because of the expansive powers of the State to protect the public interest. *State v. Lead Ind. Assn., Inc.*, 99-5226, 2001 WL 345830, \*5 (R.I. Super. App. 2001) ("To adopt the free public services rule and

---

[15]To the extent there was any administrative available to the State respondents, it would be inadequate and need not be pursued for the following reasons: (1) injunctive relief to stop violations is unavailable through the BOP's licensing procedures, (2) the BOP does not have jurisdiction over CCPA enforcement actions, and (3) the BOP cannot seek monetary damages. *See, e.g., Syl.* Pt. 2, *Weimer*, 752 S.E.2d at 406 n. 5; *Wiggins v. E. Associated Coal Corp.*, 357 S.E.2d 745 (W.Va. 1987). *See also Sturm v. Board of Educ. of Kanawha County*, 672 S.E.2d 606, 611 (W. Va. 2008) (recognizing inadequacy exception to exhaustion doctrine); *Collins v. Elkay Mining Co.*, 371 S.E.2d 46, 48-49 (W. Va. 1988); *W. Va. Code* § 60A-8-10. The DDDs' bald assertion that the inadequacy exception would only apply to Count III and would require this case to proceed in court on Count III while simultaneously engaging in some empty administrative exercise before the BOP on the other Counts is flat wrong. *See, e.g., Wiggins*, 357 S.E.2d 745. Another exception to the exhaustion doctrine exists where, as here, such administrative action would be futile. *See, e.g, Weimer*, 752 S.E.2d at 406 n. 5 (quoting *Syl.* pt. 1, *State ex rel. Board of Educ. v. Casey*, 176 W.Va. 733, 349 S.E.2d 436 (1986).

[16]Sometimes also referred to as the "free public services doctrine."

dismiss this action thereby, particularly in the absence of controlling caselaw requiring such a rule, would ignore existing authority of the Attorney General [to redress public wrongs]. . . ."). *See also State ex inf. Ashcroft v. Kansas City Firefighters Local No. 42*, 672 S.W.2d 99, 127 (Mo. Ct. App. 1984) (allowing Missouri Attorney General to sue municipal fire fighters as tortfeasors to recover for cost of deployment of state militia to man fire stations during a strike). The DDDs simply ignore these cases involving other State Attorneys General.

Because the doctrine is inapplicable to the State's claims, it is unsurprising the DDDs are unable to cite a single case where the doctrine has been so applied. The DDDs ask this Court to be the first in country to expand this unusual common law doctrine to a State. This Court should refuse to do so, and an analysis of the application of the municipal recovery doctrine is unnecessary.

Nevertheless, courts undertaking significant analysis of the issue have rejected the doctrine outright. For example, the Indiana Supreme Court held: "[T]he mere fact that the City provides services as part of its governmental function does not render the costs of those services unrecoverable as a matter of law. We do not agree that the City . . . is necessarily disabled from recovering costs from tortious activity. Rather, we agree with those courts that have rejected the municipal cost doctrine as a complete bar to recovery." *City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1243 (Ind. 2003) (citing, *inter alia, James v. Arms Tech., Inc.*, 820 A.2d 27, 49 (N.J. App.Div.2003)).

The DDDs next resort to proffering self-serving, so-called public policy reasons in an effort to justify application of the doctrine. Pet. at 32. It is hard to fathom how any true public policy considerations could favor allowing the DDDs to indiscriminately distribute addictive drugs to Pill Mills in violation of regulations and industry standards without consequence while the State incurs

-27-

the tremendous economic and moral costs of a devastating prescription drug abuse epidemic caused thereby. The New Jersey Appellate Court explained the doctrine is misguided and rejected it altogether for the following policy reasons: (1) it shields tortfeasors from liability and thus constitutes a tort subsidy to defendants and shifts burden onto taxpayers; (2) it favors tortfeasors who harm government as compared to those who harm private parties; (3) it is inequitable and fundamentally unfair to the municipality with an otherwise worthy claim because they are then without a remedy; and (4) it provides no incentives for potential tortfeasors to obtain liability insurance or take reasonable measures to eliminate or reduce the risk of harm. *James*, 359 N.J. Super. at 326-28, 820 A.2d at 48-49. If public policy is considered as part of the consideration for whether to apply the municipal cost recovery doctrine, the foregoing policy reasons are more than sufficient to exclude its application here. *Id.*

Contrary to the DDDs' suggestion, the trial court noted correctly that, "no court in West Virginia has ever recognized the common-law 'municipal cost recovery doctrine' or applied it to bar claims by a municipality." 12-12-14 Order ¶ 96. The DDDs cite inapposite cases where this Court, based upon applicable statutes, namely *W.Va. Code* § 62-5-7 and its predecessor, concluded a county may not charge room-and-board to convicted criminals for time spent awaiting trial, "as a cost incident to the prosecution." *Syl.* Pt., *State v. St. Clair*, 177 W. Va. 629, 355 S.E.2d 418 (1987); *State v. Chanze*, 178 W. Va. 309, 310, 359 S.E.2d 142, 143 (1987); *Sears v. Fisher*, 101 W. Va. 157, 158 (1926). Those cases apply statutory language – they have nothing to do with the common law municipal cost recovery doctrine.

Furthermore, those courts that hold the doctrine is valid do not apply it to municipal governments in the context of ongoing misconduct on a continuous basis, such as that alleged by the

-28-

State here. *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St. 3d 416, 428, 768 N.E.2d 1136, 1149-50 (Ohio 2002)(emphasis added); *see also City of Boston v. Smith & Wesson Corp.*, 2000 WL 1473568 (Mass. Sup. 2000); *James v. Arms Tech., Inc.*, 359 N.J. Super. 291, 327, 820 A.2d 27, 49 (App. Div. 2003). The majority of the cases cited by the DDDs where the municipal cost recovery doctrine was invoked involved single, discrete incidents causing an immediate response. Pet. at 30.[17] The Circuit Court correctly concluded the State "alleges an ongoing problem" in this case as opposed to a discrete incident, a circumstance distinguishable from those cases where the doctrine has been applied. 12-12-14 Order ¶ 98. The doctrine thus is inapplicable to this case for that reason as well.

While the Circuit Court rightly did not need to further consider exceptions to the doctrine because the doctrine plainly does not apply to these claims, it is nevertheless true that both recognized exceptions to application of the doctrine – (1) where DDDs' acts create a public nuisance the government seeks to abate and (2) where there is specific statutory authority for recovery of the losses suffered by the government – apply here. 12-12-14 Order at n. 22, citing *Cincinnati, supra,* 768 N.E.2d at 1149-50.[18]

In sum, the municipal cost recovery doctrine is not recognized in West Virginia, and even

---

[17]*See District of Columbia v. Air Fla, Inc.*, 750 F.2d 1077, 1080 (D.C. Cir. 1984) (plane crash); *County of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 150-51 (2d Cir. 2013) (plane crash); *City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*, 719 F.2d 322, 323 (9th Cir. 1983) (train derailment); *Walker v. Tri-County Crematory*, 643 S.E.2d 324, 327-28 (Ga. Ct. App. 2007) (human remains found at crematorium).

[18]Even the most expansive views of the doctrine have recognized an exception for an ongoing public nuisance, as the State has alleged in this case. *Cincinnati, supra,* 768 N.E.2d at 1149-50. The State seeks to abate the public nuisance in this case, and this case also fits into this well-established exception to the doctrine. Last, there is another exception to the doctrine when recovery is authorized by statute. *See, e.g., Flagstaff,* 719 F.2d at 324. In this case, there is statutory authority for suit. *See, inter alia, W. Va. Code* §§ 60A-5-501(c), 60A-5-503(a), 46A-7-108, 46A-7-110, 46A-7-111(2). When courts have imposed this common law doctrine, they have, by and large, done so only in the context of common law claims, not to eviscerate statutory rights. *See, e.g.,D.C. v. Air Florida, Inc.*, 750 F.2d 1077, 1079 (D.C. Cir. 1984); *Flagstaff,* 719 F.2d at 324.

if applicable, only applies to municipalities, not to claims of a sovereign state. 12-12-14 Order ¶ 95. In any event, this Court should follow the lead of the other states rejecting the doctrine altogether. *Id.* ¶ 96. Multiple public policy considerations, as explained above, heavily favor rejection of the doctrine. Moreover the doctrine, even if adopted, applies only to discrete, one-time events not to ongoing public problems like the conduct at issue here. *Id.* ¶ 97. Last, even if the doctrine is available, the circumstances of this case fit into the two recognized exceptions to the doctrine – first, recovery is allowed by a governmental entity where the acts of a private party create a public nuisance the government seeks to abate, and second, there is statutory authority for recovery of these losses. *Id.* at 36, n. 22. The Circuit Court correctly concluded "the 'municipal cost recovery doctrine' does not bar any of the State's claims[.]" *Id.* ¶ 98.[19]

### 7    The WVCCPA Claim

By way of background, the trial court properly acknowledged "[t]he purpose of the West Virginia Consumer and Credit Protection Act ("WVCCPA") is to protect the public and promote sound business practices. *See W. Va. Code § 46A-6-101.*" 12-12-14 Order ¶ 79. *West Va. Code §* 46A-6-104 is, "among the most broadly drawn provisions" in the CCPA, *McFoy v. Amerigas*, 295 S.E.2d 16, 19 (1982), and must be interpreted liberally to further its remedial purposes. *SER McGraw v. Scott Runyan Pontiac-Buick, Inc.* 194 W.Va. 770, 778, 461 S.E.2d 516, 524 (1995)[.]" *Id.* ¶ 80. Likewise, the Attorney General has broadly-stated powers under Article 7 of the CCPA, and those powers are to be interpreted broadly. *Scott Runyan*, 194 W.Va. at 779, 781, 461 S.E.2d

---

[19]For the first time in this litigation, the DDDs cite to *U.S. v. Standard Oil of Cal.*, 332 U.S. 301, 314-15 (1947). That decision does not impact the Circuit Court's correct analysis. The *Standard Oil* Court noted Congress had not conferred power on the governmental plaintiff to sue, as the West Virginia Legislature has done here. The Court refused to exercise its power to establish new liability. *Id.* at 316. That case makes no mention of the municipal cost recovery doctrine.

at 525, 527. *Id.* ¶ 81. Ignoring the foregoing principles, the DDDs' argument inaccurately states the purpose of the CCPA, and improperly seeks to diminish the Attorney General's powers thereunder. Pet. at 34.

The DDDs improperly and illegally distributed controlled substances to Pill Mills without the required and proper anti-diversion controls, thereby causing harm to the State. The State's CCPA claim is brought pursuant to the Attorney General's broad authority in Article 7, and the wrongful conduct by the DDDs constitutes an illegal "unfair or deceptive act or practice in the conduct of any trade or commerce," under any plain and broad meaning of *W. Va. Code* § 46A-6-104.

## A     A Sale Directly from a Defendant to a Natural Person Is Not Required for the State to Bring its WVCCPA Claim

The Circuit Court correctly rejected the two CCPA arguments made by the DDDs at the motion-to-dismiss stage. 12-12-14 Order ¶¶ 83-84. As the Circuit Court found, the first argument of the DDDs is an, "attempt to read into the WVCCPA a requirement that Defendants must make a sale directly to a 'consumer' (as that term is defined in the WVCCPA) in order for the State to have a valid WVCCPA claim." *Id.* ¶ 84. The Circuit Court correctly held: "To the extent Defendants seek to write in such a requirement, that is simply not contained in the language of *W. Va. Code* § 46A-6-104 or Article 7. Nothing about the declaration in § 46A-6-104 banning unfair or deceptive acts or practices in any trade or commerce indicates that statute only protects and applies to a defendant's sales made directly to a 'consumer.'" *Id.*

In addition to the language of the relevant statutes, the Circuit Court also correctly relied upon, "[t]wo published opinions, *Fed. Trade Comm'n v. Mylan Labs., Inc.*, 99 F. Supp. 2d 1, 10 (D.D.C. 1999) and *West Virginia ex rel. McGraw v. Minnesota Mining and Mfg. Co. ("3M")*, 354

-31-

F. Supp.2d 660, 667 (S.D. W. Va. 2005), [that] have noted that the UDAP statute and Article 7 do

not require a defendant to make a sale directly to a 'consumer.'" (*Id.*). After acknowledging the

liberal interpretation that must be accorded the broad statutory powers conferred upon the Attorney

General, Judge Copenhaver explained in *3M* that,

> Plaintiff's CCPA claims accuse defendants of unfair methods of competition and/or
> unfair deceptive acts or practices . . . . These claims do not appear to require the
> presence of either a consumer or a consumer transaction. . . . "Unfair methods of
> competition and unfair or deceptive acts or practices in the conduct of any trade or
> commerce are hereby declared unlawful." W. Va.Code § 46A-6-104. . . . Further, the
> CCPA provides: "The attorney general may bring a civil action to restrain a person
> from violating this chapter and for other appropriate relief." W. Va.Code, § 46A-7-
> 108. In addition, the attorney general is authorized to bring a civil action to recover
> civil penalties for repeated and willful violations. W. Va.Code § 46A-7-111(2).
>
> . . . the supreme court of appeals could possibly conclude the attorney general may,
> on the state's behalf, pursue an action under section 46A-6-104 in the absence of a
> consumer transaction . . . .

*West Virginia ex rel. McGraw v. Minnesota Mining and Mfg. Co.*, 354 F. Supp.2d 660, 667 (S.D.

W. Va. 2005) (emphasis added).[20]

Meanwhile, the DDDs cite no contrary authority where a court has found the State's UDAP

claims brought pursuant to Article 7 require a "consumer transaction." Instead, the DDDs focus on

(a) two cases – *Cather v. Seneca-Upshur Petroleum, Inc.*, 2010 WL 3271965, *7 (N.D. W.Va. 2010),[21]

---

[20]While unnecessary to the decision here where the State's authority under Article 7 allows it to bring suit
against the DDDs for the UDAP's they committed regardless of whether their misconduct implicated a
"consumer transaction," the State certainly does not waive any argument that sales by these DDDs were
indeed "consumer transactions." Pet. at 35. These DDDs sold prescription drugs to "persons" in the legal
sense (*i.e.*, pharmacies) that were being used for "personal purposes," (*i.e.*, prescription drug abuse). *See
W.Va. Code* § 46A-6-102(2), *W. Va. Code* § 46A-1-101(29), *W.Va. Code* § 46A-1-101(31).

[21]The trial court correctly analyzed the DDDs' reliance on *Cather*: "a.   Defendants cite the unpublished
opinion of *Cather v. Seneca-Upshur Petroleum, Inc.*, 2010 WL 3271965, *7 (N.D. W.Va. Aug. 18, 2010).
*Cather* concluded: "Because the plaintiffs . . . are lessors of oil and natural gas, and not 'consumers' as
defined in W. Va.Code § 46A-6–102(2) or 46A–1–102, the WVCCPA does not provide them with a legal
remedy in this case." *Id.* In *Cather*, the WVCCPA claim was not permitted to go forward because of the
type of plaintiffs asserting the claim. While the lessors of natural gas in *Cather* could not assert their

and *Medco Health Solutions*[22] – where the identity of the plaintiffs prohibited them from bringing

a CCPA claim under *W. Va. Code* § 46A-6-106 (which is not the issue here) and (b) statutory

language – the title of Article 6 and *W. Va. Code* § 46A-1-104 – that either favors the State's

argument or has been found by federal courts to not be limiting as the DDDs suggest. The trial court

cogently addressed each argument of the DDDs and rejected their remarkably incorrect assertion that

the language of *W.Va. Code* § 46A-6-104[23] was "irrelevant." 12-14-14 Order ¶ 84, p. 29.[24]

The DDDs wrongly suggest the State's authority to bring UDAP claims is identical to that

of individual consumers. Pet. at 36. The Legislature, however, differentiated the two when it

---

WVCCPA claim under Article 6, there is nothing that precludes the State from bringing its claim pursuant
to the Attorney General's powers in Article 7 of the WVCCPA." 12-12-14 Order ¶ 84a.

[22]In their Petition, the DDDs for the first time make reference to and attach a terse 2003 Circuit Court
decision, *Medco Health Solutions v. W. Va. Pub. Ems. Ins. Agency.* Appx. at 768-772. However, that case
was not brought pursuant to Article 7 of the CCPA. The Circuit Court dismissed PEIA's CCPA claim
because it was not a "'person' within the meaning of *W. Va. Code* § 46A-6-106. Appx. at 769. That case has
no relevance here.

[23]In footnote 16 of its Order, the Circuit Court again pointed out the flaw in another citation to W.Va. Code
§ 46A-1-104 made by the DDDs with the following comments:

Another point of clarification is needed regarding W. Va. Code § 46A-1-104, to which
*Cather* and the Drug Distributor Defendants make reference. Two published opinions
specifically have rejected the use of W. Va. Code § 46A-1-104 as a means of limiting other
provisions of the WVCCPA. In *Polis v. Am. Liberty Fin., Inc.*, 237 F. Supp. 2d 681, 686
(S.D. W.Va. 2002) and *Rhoades v. W. Virginia Credit Bureau Reporting Servs., Inc.*, 96 F.
Supp. 2d 528, 534 (S.D.W.Va. 2000), the Southern District of West Virginia underscored
that § 1-104 is a choice-of-law provision that does not say WVCCPA only applies to the
kinds of consumer transactions described in that specific choice-of-law provision. This point
is even more poignant where, as here, the Attorney General's broad powers in Article 7 are
at stake. The Court should follow the lead of *Polis* and *Rhoades* in refusing to extrapolate
from W. Va. Code § 46A-1-104 to "wipe out almost all of the WVCCPA." *Rhoades*, 96 F.
Supp.2d at 534. (12-12-14 Order at 29, n. 16).

[24]The Circuit Court correctly dismissed another of the DDDs' arguments regarding the title of Article 6: "b.
Defendants also note that the title of Article 6 of the WVCCPA is 'General Consumer Protection.' Though
the State may focus on Defendants' transactions that do not involve a sale directly to a 'consumer,' (as it is
defined in the WVCCPA), the State nevertheless is seeking to "protect consumers" through Count III of this
lawsuit. The title [of Article 6], therefore, does not add a requirement into the State's enforcement of *W. Va.
Code* § 46A-6-104 that Defendants must make a sale directly to a 'consumer.'" 12-12-14 Order ¶ 84b.

-33-

provided rights for individuals in Article 6, namely *W.Va. Code* § 46A-6-106, and for the State in

Article 7. Had it wanted to make those rights identical, it could have done so in the statute, but it

did not.[25] *Id.* Further, this Court previously has concluded the State's authority should be interpreted

broadly. *Id.* The DDDs' argument that a State action is equivalent to an individual's action thus

falls flat, and the trial court's analysis in the 12-14-14 Order, n.17, was precise and correct.

## B    The Drug Distributor Defendants' Conduct Was Unfair

The DDDs argue their alleged conduct is not unfair. Pet. at 36-38. In so arguing, they focus

on the enumerated list of UDAP's. As stated by the trial court in its 12-12-14 Order at ¶ 83.:

> The list of specifically-enumerated practices in W. Va. Code § 46A-6-102[7] contain
> the previous qualifier that an unfair or deceptive act or practice ("UDAP") "includes,
> but [is] not limited to" that specifically-enumerated list. *W. Va. Code § 46A-6-102(7)*
> .... This language indicates the list is not exclusive, and other conduct can constitute
> unfair or deceptive acts or practices.[26] *Id.*

The State asserts the DDDs violated state regulations in conjunction with their sales of

---

[25]As discussed above, the Legislature provided broader authority to the State in Article 7, particularly in *W. Va. Code* §§ 46A-7-108 ("[t]he Attorney General may bring a civil action to restrain a person from violating this chapter and for other appropriate relief"), 7-110 (the Attorney General may seek injunctive relief for "violations of this chapter or unconscionable agreements or fraudulent or unconscionable conduct") and 7-111(2) (the Attorney General may seek civil penalties) than the Legislature gave to individuals in *W. Va. Code* § 46A-6-106 (requiring individual purchaser or lessor of goods and services to suffer an ascertainable out-of-pocket loss and provide the defendant with a pre-suit right to cure letter via certified mail 20 days before filing suit to recover actual damages or $200 in the county where the seller resides or does business). *See id.; Scott Runyan, supra.*

[26]"The import of *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1118 (N.D. Cal. 2007) is over-stated by the DDDs. While the court noted the private antitrust (price-fixing) suit brought by indirect purchaser businesses did not allege conduct similar to that enumerated in the non-exhaustive list of examples of UDAP's, it found dispositive the fact that, 'the provision of the WVCCP that authorizes plaintiffs' private action expressly states that any such action may only be brought by a person or persons injured as a result "*of the use or employment by another person of a method, act or practice prohibited or declared to be unlawful by the provisions of this article*[.]"' *Id.* (emphasis in original). The same limitation does not apply to the State's WVCCPA claim in this case. *DRAM* does not require a different result here." 12-12-14 Order at n. 14, p. 27. That is, *DRAM* did not dismiss the CCPA claim on the basis that the alleged misconduct did not fit neatly within the enumerated definitions of a UDAP in *W. Va. Code* § 46A-6-102(7).

prescription drugs. While DDDs "counter that not all violations of a statute or regulation are unfair[,] [o]ther courts have articulated such a limit and stated, '[a]n unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" 12-12-14 Order ¶ 83, quoting *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1348 (S.D. Fla. 2009); citing *PNR, Inc. v. Beacon Property Management*, Inc., 842 So.2d 773, 777 (Fla. 2003) (same); *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla.Dist.Ct.App.2006) (same); *Speigel v. FTC*, 540 F.2d 287, 293 (7th Cir.1976); *Newcomb v. Cambridge Home Loans, Inc.*, 861 F. Supp. 2d 1153, 1168 (D. Haw. 2012); *Walker v. Fleetwood Homes of N. Carolina, Inc.*, 362 N.C. 63, 72, 653 S.E.2d 393, 399 (2007); *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). It is particularly telling that the DDDs fail to address this critical and long line of cases regarding what constitutes an "unfair" practice to which both the State and the Circuit Court refer. The DDDs simply ignore what they cannot distinguish. In sum, the DDDs profited from the prescription drug epidemic by selling controlled substances to Pill Mills while ignoring state-law anti-diversion regulations, and that easily meets the pleading requirement of unfairness at the motion-to-dismiss stage. 12-12-14 Order ¶ 83, *citing Windy City Met. Fab. & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 672 (7th Cir. 2008).

## C   The Controlled Substances Act Does Not Preclude the State from Bringing a WVCCPA Claim

Bizarrely because they also assert the CSA does not afford any rights to the State in this case, the DDDs nevertheless contend (for the first time) that the CSA precludes the State from asserting its CCPA claim. Pet. at 39. In support, the DDDs fail to cite any specific provision in the CSA.[27] Instead, they cite *White v. Wyeth*, 227 W.Va. 131, 705 S.E.2d 828 (2010) and *SER McGraw v. Bear*

---

[27]To be clear, nowhere in the CSA or the CCPA does it mention the other.

*Stearns*, 217 W.Va. 573, 618 S.E.2d 582 (2005).[28]

Relying on *White* and *Bear Stearns*, the thrust of the DDDs' argument is that the State cannot maintain a CCPA claim because the challenged misconduct is so "highly regulated" that a CCPA claim is unnecessary. Pet. at 39. While certainly there are regulations concerning prescription drug distributors' responsibilities, the Deputy Administrator of the DEA, (as noted by the Circuit Court) found regulators must rely on DDDs to fulfill their anti-diversion obligations:

> "[T]he pharmacies that fill the prescriptions issued by them, are nothing more than drug pushers operating under the patina of legitimate authority. Cutting off the supply sources of these pushers is of critical importance in protecting the American people from this extraordinary threat to public health and safety. In accomplishing this objective, this Agency cannot do it all itself. It must rely on registrants to fulfill their obligation under the Act to ensure that they do not supply controlled substances to entities which act as pushers."

9-8-15 Order ¶ 40 (quoting *Southwood Pharmaceuticals,* FR Doc 07-3218, at 36488 (July 3, 2007). Here, the DDDs shipped hundreds of millions of dosage units of oxycodone and hydrocodone into West Virginia between 2007 and 2012, which included extraordinary numbers of addictive controlled substances shipped to notorious Pill Mills. 2nd Am. Cmplt. at ¶ 15. It thus is clear that this action is necessary and essential to the public interest and that the DDDs' anti-diversion practices are not so highly regulated as to make them immune from suit. If this Court were to adopt the DDDs' contention that regulated industries need not comply with the CCPA, that would eviscerate the statute and the Attorney General's clear authority thereunder.[29]

---

[28]In a footnote, the Circuit Court properly distinguished both *White v. Wyeth* and *Bear Stearns* from the case at bar.  12-12-14 Order at p. 29, n. 17.

[29]In the unpublished *Wamsley v. LifeNet Transplant Servs. Inc.*, 2011 WL 5520245 at *12 (S.D. W.Va. 2011), while no mention is made of a violation of any regulation, the individual plaintiff had negligence and malpractice claims but failed to pursue them timely. The plaintiff there could convert a malpractice claim into a CCPA claim. In *State ex rel. Citifinancial, Inc. v. Madden*, 223 W. Va. 229, 238, 672 S.E.2d 365, 374

Last, because of the other remedies available, the DDDs argue the CCPA claim is unnecessary. In so doing, the DDDs cite three cases, Pet. at 40, but none is applicable inasmuch as they do not concern a State's UDAP claim where DDDs' practices had violated a state regulation and were "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *See supra.* Neither the fact there are regulations regarding prescription drugs nor the fact that the State has other remedies available to it means the CCPA claim should be dismissed.

## 8    Private Cause of Action

*Arguendo*, even if the Court were to conclude the State had no common law authority to sue, no authority under the WVCCPA, and no express statutory authority to sue, the State has a private cause of action under the CSA. While the DDDs assert their conduct is immunized by arguing the CSA can not be the basis of a "private cause of action" for negligence or public nuisance, Pet. at 20 - 25, that argument too is contrary to law. As the trial court held:

> "Even if the State had not presented valid negligence claims pursuant to *Robertson v. LeMaster, supra*, the violation of a statute also is *prima facie* evidence of negligence, provided such violation is the proximate cause of injury. *See, e.g., Powell v. Mitchell*, 120 W.Va. 9, 196 S.E. 153 (1938); *Porterfield v. Sudduth*, 117 W.Va. 231, 185 S.E. 209 (1936). *See also Syl.* Pt. 1, *Anderson v. Moulder*, 183 W.Va. 77, 394 S.E.2d 61 (1990) ("Violation of a statute is *prima facie* evidence of negligence.").[30]

---

(2008), the Court had to interpret *W. Va. Code* § 46A-3-109, which is not implicated here. The *Madden* Court concluded this section of the CCPA "is replete with language indicating that the [Insurance] Commissioner's jurisdiction over insurance-related matters was not intended to be altered by the provisions of the CCPA." *Id.* at 223 W. Va. at 238, 672 S.E.2d at 374. Last, *Pritchard v. Crouser*, 175 W.Va. 310, 332 S.E.2d 611 (1985), does not implicate either the CSA or the CCPA. Rather, it pertains to the review of decisions of magistrates. *Id.* The quotation the DDDs extract from *Pritchard* referred to "a plethora of remedies against magistrate bias[.]" *Id.* 175 W.Va. at 313, 332 S.E.2d at 614.

[30]"The same is true for violations of regulations. *See Hersh v. E-T Enterprises, Ltd. P'ship*, 232 W. Va. 305, 752 S.E.2d 336, 342 (2013); *see also Syllabus* Point 1, in part, *Miller v. Warren*, 182 W.Va. 560, 390 S.E.2d 207 (1990); *Syllabus* Point 1, in part, *Johnson v. Monongahela Power Co.*, 146 W.Va. 900, 123 S.E.2d 81, 83 (1961)." 12-14-14 Order at n. 6.

12-14-14 Order at ¶ 47 (Footnote in original). As correctly held by the Circuit Court, *W.Va. Code §* 55-7-9[31] permits the recovery of damages stemming from a violation of a statute:

> "Any person injured by the violation of any statute may recover from the offender such damages as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed, unless the same be expressly mentioned to be in lieu of such damages."

As held in the 12-14-14 Order at ¶48, whether a private cause of action exists based on a violation of a statute is determined by applying the four-part test set forth in *Hurley v. Allied Chemical Corp.*, 164 W.Va. 268, 262 S.E.2d 757 (1980). *Syllabus* Point 1 of *Hurley, supra,* states:

> "The following is the appropriate test to determine when a State statute gives rise by implication to a private cause of action: (1) the plaintiff must be a member of the class for whose benefit the statute was enacted; (2) consideration must be given to legislative intent, express or implied, to determine whether a private cause of action was intended; (3) an analysis must be made of whether a private cause of action is consistent with the underlying purposes of the legislative scheme; and (4) such private cause of action must not intrude into an area delegated exclusively to the federal government."

The trial court properly concluded the State and its agencies as plaintiffs in this case are representatives of the State and the Public, for whose benefit the statute and accompanying regulations was enacted, so the first prong of the *Hurley* test is satisfied easily. 12-14-14 Order at ¶ 49. As for the second factor of "legislative intent,"[32] intent to create a private cause of action is

---

[31]While the DDDs argue the State and its agencies may not avail themselves of *W.Va. Code* § 55-7-9 because they are not "persons" defined thereby, the statute does not define "person" and to hold the State was not a person included therein would be an absurd result, no different than the Court's conclusion in *State v. Zain*, 207 W. Va. 54, 61-62, 528 S.E.2d 748, 755-56 (1999) ("[T]here are numerous statutes that treat the State as a person, further indicating such use is 'general and proper.' . . . we hold that the State of West Virginia and its political subdivisions are within the meaning of the terms 'person' and 'another' as those terms are used in *W. Va.Code* §§ 61-3-24(a) and (b) [and other statutes].").

[32]To the extent DDDs cite *dicta* from the federal court decision in *McCallister v. Purdue Pharma L.P.*, 164 F. Supp. 2d 783, 793 (S.D.W. Va. 2001), that *dicta* is unpersuasive because the court was concerned primarily with whether tort claims of plaintiffs therein were preempted, and concluded they were not.

unnecessary, *Hurley, supra,* 262 S.E.2d at 761-62, and , "state statutes often have sparse legislative history or none at all . . . and in its absence, a state court would be unable to utilize the second factor." *Id.,* 262 S.E.2d at 762. Because no West Virginia "legislative history" exists, the Circuit Court properly held the second factor could not be utilized. 12-14-14 Order at ¶ 50.[33] The Circuit Court went on to conclude correctly:

> "As for the third *Hurley* factor, it has been held that, "a private remedy should not be implied if it would frustrate the underlying purpose of the legislative scheme. On the other hand, when that remedy is necessary or at least helpful to the accomplishment of the statutory purpose, the Court is decidedly receptive to its implication under the statute. *Hurley,* 262 at 762, *quoting Cort v Ash,* 441 U.S. at 703. The Court concludes the State's causes of action are helpful to the statutory purpose – it is alleged by the State that there is an epidemic of prescription drug abuse in West Virginia, and that the Defendants put their desire for profits above and beyond their duty to put in place effective controls and procedures to prevent diversion of controlled substances and wholly failed in their duties to design and implement a system to disclose suspicious orders. The Court agrees the remedies sought by the State here, including damages, will be "helpful" to accomplish the statutory purposes of putting in effective controls against controlled substance diversions and reporting suspicious orders. Therefore, the Court concludes the third prong of *Hurley* is satisfied."[34]

---

[33]The Circuit Court correctly rejected the DDDs' assertion that *W.Va. Code* § 60A-4-403a(e) somehow evidences a "legislative intent" to limit a private cause of action. 12-14-14 Order at ¶ 60 ("There is nothing about the criminalizing of the selling of "drug paraphernalia" that suggests the Legislature intended to thereby remove a claim of public nuisance for wrongful conduct in the distribution of controlled substances."). While mostly ignored by the DDDs, the trial court properly concluded also the State had stated a claim for public nuisance. 12-14-14 Order at ¶¶ 54-63.

[34]The DDDs' citation to *General Pipeline Constr., Inc. v. Hairston,* 765 S.E.2d 163 (W.Va. 2014) is curious because therein this Court reiterated the fact that,"'[i]t is a firmly established rule in West Virginia that a defendant's disregard of a statute is *prima facie* negligence.' *Hersh v. E-T Enterprises Ltd. Partnership,* 232 S.E.2d 305, 311, 752 S.E.2d 336, 343 (2013)[.]" That firmly established rule applies here. *General Pipeline* found no private cause of action on behalf of the next of kin for a statutory claim of "grave desecration[,]" and (unlike the CSA) the grave desecration statute speaks explicitly to protecting the interests of those who are engaged in the scientific study of ancient historic graves, not next of kin, so it clearly was not meant to create a private cause of action for next of kin. Likewise, unlike the CSA, the grave desecration statute is very explicit in creating a private cause of action for the recovery of civil damages in the Director of the Historic Preservation Section, and how such damages may be used. The CSA has no similar provision, and thus the *Hairston* case is inapposite.

-39-

12-14-14 Order at ¶ 51.The fourth prong of the *Hurley* test is not relevant because as the State's claims are based on state, not federal law. 12-14-14 Order at ¶ 52. The Circuit Court did not commit a flagrant abuse of power in concluding the State has stated proper claims. *Id.* at ¶ 51.

**C      Conclusion**

For all of the foregoing reasons, a rule to show cause should not issue and the writ denied.

Respectfully submitted,

**STATE OF WEST VIRGINIA**
*ex rel.* **PATRICK MORRISEY**,
Attorney General, *et al.*,

Respondents,

*--By Counsel--*

Patrick Morrisey
Attorney General
Vaughn Sizemore
Deputy Attorney General
**OFFICE OF THE ATTORNEY GENERAL**
Building 1, Room 26-E Capitol Complex
Charleston, WV 25305

James M. Cagle          (WV Bar No. 580)
**CAGLE & JACKSON ATTORNEYS**
P.O. Box 12326
Big Chimney Station
Charleston, WV 25301
(304)-342-3174
(304)-342-0448 facsimile

Rudolph L. DiTrapano (WV Bar # 1024)
Sean P. McGinley          (WV Bar # 5836)
Robert M. Bastress III   (WV Bar # 9616)
**DiTRAPANO, BARRETT, DiPIERO,**
**McGINLEY & SIMMONS, PLLC**
604 Virginia Street, East
Charleston, WV 25301
(304) 342-0133

## CERTIFICATE OF SERVICE

I, Sean P. McGinley do hereby certify that I e-mailed a copy of the foregoing **"Respondents PATRICK MORRISEY, Attorney General of the State of West Virginia, JOSEPH THORNTON, in his capacity as the Secretary of the WEST VIRGINIA DEPARTMENT OF MILITARY AFFAIRS AND PUBLIC SAFETY, an agency of the State of West Virginia, and KAREN BOWLING in her capacity as the Secretary of the WEST VIRGINIA DEPARTMENT OF HEALTH & HUMAN RESOURCES, an agency of the State of West Virginia, Response to Petition for Writ of Prohibition"** on this the 30th day of November, 2015 to counsel of record.

Sean P. McGinley (WV Bar No. 5836)