# EXHIBIT 8

**IN RE: OPIOID LITIGATION**
**Hearing on 03/13/2020**

```
 1                    IN THE CIRCUIT COURT OF

 2               KANAWHA COUNTY, WEST VIRGINIA

 3

 4

 5  IN RE:  OPIOID LITIGATION      Civil Action No. 19-C-9000

 6

 7                  MASS LITIGATION PANEL

 8          Alan D. Moats - Lead Presiding Judge
            Derek C. Swope - Presiding Judge
 9

10

11                         *   *   *

12                         HEARING

13                         *   *   *

14      BEFORE:  The Honorable Alan D. Moats, Lead Presiding

15  Judge, and The Honorable Derek C. Swope, Presiding

16  Judge, in the Kanawha County Courthouse, Ceremonial

17  Courtroom, Charleston, Kanawha County, West Virginia, at

18  10:05 a.m., on the 13th day of March, 2020.

19

20

21

22

23

24
```

**IN RE: OPIOID LITIGATION**
**Hearing on 03/13/2020**                                    Page 2

```
 1   APPEARANCES:

 2
             ABBY G. CUNNINGHAM, Deputy Attorney General
 3           MICHELLE L. BRADLEY, Deputy Attorney General
             Consumer Protection Division
 4           812 Quarrier Street, First Floor
             Charleston, West Virginia  25301
 5
                     and
 6
             LINDA SINGER, Attorney at Law
 7           ELIZABETH SMITH, Attorney at Law
             Motley Rice, LLC
 8           112 Capitol Street, Suite 200
             Charleston, West Virginia  25301
 9             Counsel for State of West Virginia,
               ex rel. Patrick Morrisey, Attorney General
10

11           LETITIA NEESE CHAFIN, Attorney at Law
             The Chafin Law Firm, PLLC
12           P.O. Box 1799
             Williamson, West Virginia  25661
13
                     and
14
             MARK TROY, Attorney at Law
15           Troy Law Firm, PLLC
             222 Capitol Street, Suite 200A
16           Charleston, West Virginia  25301

17                   and

18           HARRY F. BELL, JR., Attorney at Law
             Stewart Bell, PLLC
19           30 Capitol Street
             Charleston, West Virginia  25301
20
                     and
21
             HUNTER MULLENS, Attorney at Law
22           Mullens & Mullens, PLLC
             9 N. Main Street
23           Philippi, West Virginia  26416

24                   and
```

**IN RE: OPIOID LITIGATION**
**Hearing on 03/13/2020**                                    **Page 3**

```
 1   APPEARANCES (Continued):

 2
             JAMES YOUNG, Attorney at Law
 3           Morgan & Morgan Complex Litigation Group
             76 South Laura Street, Suite 1100
 4           Jacksonville, Florida  32202
                Counsel for Mingo County, McDowell County,
 5              Lincoln County, Mercer County, et al.

 6
             CLAY J. FITZSIMMONS, Attorney at Law
 7           MARK COLANTONIO, Attorney at Law
             Fitzsimmons Law Firm, PLLC
 8           1609 Warwood Avenue
             Wheeling, West Virginia  26003
 9              Counsel for Monongalia County, Brooke County,
                Hancock County, Ohio County, et al.
10

11           CHARLES "RUSTY" WEBB, Attorney at Law
             The Webb Law Centre, PLLC
12           716 Lee Street East
             Charleston, West Virginia  25301
13
                         and
14
             ANNE McGINNESS KEARSE, Attorney at Law
15           NATALIE DEYNEKA, Attorney at Law
             Motley Rice, LLC
16           112 Capitol Street, Suite 200
             Charleston, West Virginia  25301
17              Counsel for City of Huntington, Braxton
                County, Calhoun County, City of Bluefield,
18              City of Buckhannon, et al.

19
             ANTHONY J. MAJESTRO, Attorney at Law
20           Powell & Majestro, PLLC
             405 Capitol Street, Suite P-1200
21           Charleston, West Virginia  25301
                Counsel for Cabell County, Kanawha County,
22              Logan County, Wayne County, et al.

23

24
```

**IN RE: OPIOID LITIGATION**
**Hearing on 03/13/2020**                                      **Page 4**

```
 1   APPEARANCES (Continued):

 2
             WARREN R. McGRAW, II, Attorney at Law
 3           McGraw Law Office
             P.O. Box 534
 4           Pineville, West Virginia  24874
                Counsel for Wyoming County, Town of
 5              Pineville and Town of Mabscott

 6
             JOHN D. WOOTON, Attorney at Law
 7           Wooton, Davis, Hussell & Ellis, PLLC
             300 Summers Street, Suite 1230
 8           Charleston, West Virginia  25301
                Counsel for Raleigh County, Summers County
 9              and Monroe County

10
             STEPHEN B. FARMER, Attorney at Law
11           Farmer, Cline & Campbell, PLLC
             746 Myrtle Road
12           Charleston, West Virginia  25314

13                      and

14           TIMOTHY R. LINKOUS, Attorney at Law
             Linkous Law, PLLC
15           179 Hanalei Drive, Suite 100
             Morgantown, West Virginia  26508
16              Counsel for West Virginia University
                Hospitals, Inc., Appalachian Regional
17              Healthcare, Inc., Bluefield Hospital
                Company, LLC, et al.
18

19           JUSTIN TAYLOR, Attorney at Law
             Bailey & Wyant, PLLC
20           500 Virginia Street, East, Suite 600
             Charleston, West Virginia  25337
21              Counsel for West Virginia Board of Pharmacy

22
             RITA MASSIE BISER, Attorney at Law
23           Moore & Biser, PLLC
             317 Fifth Avenue
24           South Charleston, West Virginia  25303
                Counsel for Henry Schein, Inc.
```

**IN RE: OPIOID LITIGATION**
**Hearing on 03/13/2020**                                             **Page 5**

```
 1   APPEARANCES (Continued):

 2
             RAE WOODS, Attorney at Law
 3           MARK H. LYNCH, Attorney at Law
             Covington & Burling, LLP
 4           One CityCenter
             850 Tenth Street, NW
 5           Washington, DC  20001-4956

 6                   and

 7           RUSSELL D. JESSEE, Attorney at Law
             Steptoe & Johnson, PLLC
 8           P.O. Box 1588
             Charleston, West Virginia  25326-1588
 9
                     and
10
             JEFFREY M. WAKEFIELD, Attorney at Law
11           Flaherty, Sensabaugh & Bonasso, PLLC
             200 Capitol Street
12           Charleston, West Virginia  25338-3843

13                   and

14           CAROL DAN BROWNING, Attorney at Law
             Stites & Harbison, PLLC
15           400 West Market Street, Suite 1800
             Louisville, Kentucky  40202-3352
16
                     and
17
             JAMISON H. COOPER, Attorney at Law
18           Cooper Law Offices, PLLC
             240 West Main Street
19           Bridgeport, West Virginia  26330
                Counsel for McKesson Corporation
20

21           G. THOMAS SMITH, Attorney at Law
             Smith Law, PLLC
22           516 W. Main Street
             Clarksburg, West Virginia  26301
23              Counsel for Tim Ashworth, Employee of
                McKesson
24
```

**IN RE: OPIOID LITIGATION**
**Hearing on 03/13/2020**                                                 Page 6

```
 1   APPEARANCES (Continued):

 2
             CARTE GOODWIN, Attorney at Law
 3           ALEX ZURBUCH, Attorney at Law
             Frost Brown Todd, LLC
 4           500 Virginia Street, East, Suite 1100
             Charleston, West Virginia  25301
 5              Counsel for CVS of Indiana, LLC

 6
             JENNIFER G. WICHT, Attorney at Law
 7           Williams & Connolly, LLP
             725 Twelfth Street, N.W.
 8           Washington, DC  20005

 9                   and

10           STEVEN R. RUBY, Attorney at Law
             RAYMOND S. FRANKS, II, Attorney at Law
11           Bailey & Glasser, LLP
             209 Capitol Street
12           Charleston, West Virginia  25301
                Counsel for Cardinal Health, Inc.
13

14           WEBSTER J. ARCENEAUX, III, Attorney at Law
             Lewis Glasser, PLLC
15           300 Summers Street
             Charleston, West Virginia  25326
16              Counsel for Rite Aid of Maryland, Inc., and
                Rite Aid of West Virginia, Inc.
17

18           GRETCHEN M. CALLAS, Attorney at Law
             Jackson Kelly, PLLC
19           500 Lee Street, Suite 1600
             Charleston, West Virginia  25322
20              Counsel for AmerisourceBergen Drug
                Corporation
21

22           K. BRIAN ADKINS, Attorney at Law
             Shaffer & Shaffer, PLLC
23           2116 Kanawha Boulevard East
             Charleston, West Virginia  25311
24              Counsel for HD Smith
```

**IN RE: OPIOID LITIGATION**
**Hearing on 03/13/2020**                                    Page 7

```
 1   APPEARANCES (Continued):

 2
             RONDA L. HARVEY, Attorney at Law
 3           FAZAL A. SHERE, Attorney at Law
             Bowles Rice, LLP
 4           600 Quarrier Street
             Charleston, West Virginia  25301
 5              Counsel for The Kroger Co., Kroger Limited
                Partnership I and Kroger Limited
 6              Partnership II

 7
             MARC E. WILLIAMS, Attorney at Law
 8           Nelson Mullins Riley & Scarborough, LLP
             949 Third Avenue, Suite 200
 9           Huntington, West Virginia  25701
                Counsel for Janssen and Johnson & Johnson
10

11           ROBERT H. AKERS, Attorney at Law
             M. DAVID GRIFFITH, Attorney at Law
12           Thomas Combs & Spann, PLLC
             300 Summers Street, Suite 1380
13           Charleston, West Virginia  25301
                Counsel for Walgreen Company
14

15           ERIK W. LEGG, Attorney at Law
             Farrell, White & Legg, PLLC
16           914 Fifth Avenue
             Huntington, West Virginia  25701
17              Counsel for Endo

18
             NEVA G. LUSK, Attorney at Law
19           Spilman Thomas & Battle, PLLC
             300 Kanawha Boulevard, East
20           Charleston, West Virginia  25301
                Counsel for Walmart, Inc., and Wal-Mart
21              Stores East, LP

22

23

24
```

**IN RE: OPIOID LITIGATION**
**Hearing on 03/13/2020**                                    **Page 8**

```
 1   APPEARANCES (Continued):

 2
             STEPHEN D. ANNAND, Attorney at Law
 3           MARISA BRUNETTI, Attorney at Law
             Robinson & McElwee, PLLC
 4           700 Virginia Street, Suite 400
             Charleston, West Virginia  25031
 5             Counsel for Mallinckrodt LLC; SpecGx LLC;
               Mallinckrodt Enterprises LLC; and
 6             Mallinckrodt Brand Pharmaceuticals

 7
             KEITH A. JONES, Attorney at Law
 8           Jones Law Group, PLLC
             P.O. Box 13395
 9           Charleston, West Virginia  25360

10                    and

11           MAUREEN K. BARBER, Attorney at Law
             Morgan, Lewis & Bockius, LLP
12           One Oxford Centre, 32nd Floor
             Pittsburgh, Pennsylvania  15219-6401
13             Counsel for Cephalon, Inc.; Teva
               Pharmaceuticals USA, Inc.; et al.
14

15           KEITH A. JONES, Attorney at Law
             Jones Law Group, PLLC
16           P.O. Box 13395
             Charleston, West Virginia  25360
17             Counsel for Anda, Inc.

18
             WILLIAM R. SLICER, Attorney at Law
19           Shuman, McCuskey & Slicer, PLLC
             1411 Virginia Street East, Suite 200
20           Charleston, West Virginia  25339-3953
               Counsel for Abbott Laboratories
21

22           MICHAEL B. HISSAM, Attorney at Law
             J. ZAK RITCHIE, Attorney at Law
23           Hissam Forman Donovan Ritchie, PLLC
             707 Virginia Street East, Suite 260
24           Charleston, West Virginia  25301
               Counsel for Mylan Pharmaceuticals, Inc.
```

```
 1   APPEARANCES (Continued):

 2
              JON B. ORNDORFF, Attorney at Law
 3            KELLY CALDER MOWEN, Attorney at Law
              Litchfield Cavo LLP
 4            Village Professional Building
              Barboursville, West Virginia  25504
 5               Counsel for Noramco, Inc.

 6
              CHANDLER E. STROGEN, Attorney at Law
 7            Dinsmore & Shohl LLP
              707 Virginia Street East, Suite 1300
 8            Charleston, West Virginia  25301
                 Counsel for Fruth Pharmacy
 9

10            PAUL J. COSGROVE, Attorney at Law
              Ulmer & Berne, LLP
11            600 Vine Street, Suite 2800
              Cincinnati, OH  45202-2409
12
                       and
13
              SCOTT WICKLINE, Attorney at Law
14            Hardy Pence, PLLC
              10 Hale Street, 4th Floor
15            Charleston, West Virginia  25301
                 Counsel for Amneal Pharmaceuticals,
16             LLC, et al.

17
              PATRICIA M. BELLO, Attorney at Law
18            Lewis Brisbois Bisgaard & Smith, LLP
              222 Capitol Street, Fifth Floor
19            Charleston, West Virginia  25301
                 Counsel for Allergan Finance, LLC,
20             f/k/a Watson Pharmaceuticals, Inc.

21
              LISA FURBEE FORD, Attorney at Law
22            Ford Law Office
              217 East Main Street
23            Clarksburg, West Virginia  26301-2125

24
```

```
 1                        *   *   *
 2                 P R O C E E D I N G S
 3                        *   *   *
 4              JUDGE MOATS:  Good morning, everyone.
 5   Thank you all for coming.
 6              I'm surprised as many people are here, once we
 7   got the option for people to listen remotely.  And that
 8   just came in two or three days ago.  And at that time, I
 9   assumed that we had conference-call capability here.
10   I'm sure there are some people listening remotely.  All
11   they can do is monitor.  We don't have the capacity for
12   anybody out of this courtroom to speak.
13              But this is the ceremonial courtroom here in
14   Kanawha County, and so it's only used for special
15   functions.  And I was not aware -- didn't become aware
16   until Wednesday that we did not have the capacity for
17   calling.  So Thursday morning, bright and early, about
18   7:00 o'clock, I called the Supreme Court IT director,
19   Pat Moats, and asked if she could try to come up with a
20   system so this could be broadcast, in light of what's
21   happening in our country.
22              And so it seemed like a very simple deal,
23   because I guess in technology we're just accustomed to
24   it working, we don't understand that somebody has to
```

1  make it work.  So she and her staff, working with the

2  staff here in Kanawha County, John Caudill, the

3  facilities director, and other people here came up with

4  this system.  And so from here on out we are going to

5  attempt to utilize this.

6          We don't know how long this national situation

7  is going to go on.  But even once it is resolved, it may

8  be helpful for those people who have other obligations,

9  particularly people traveling across country, cost, and

10  all those kind of things.  So this is going to be

11  something we will continue to do as time goes on.

12          Now, it's critical today that the only people

13  who can speak are at the podium.  This sound system or

14  Skype system is wired directly into my microphone,

15  Judge Swope's microphone and the microphone at the

16  podium.  So if somebody tries to speak at counsel table

17  or someplace else in the room, that is not going to pick

18  up.

19          Now, things have come quite a ways since we

20  were last here in early December, and we also understand

21  things have come a way in the federal system, with the

22  trial now having been scheduled by Judge Faber for late

23  August, pertaining to Cabell County and the City of

24  Huntington.

1            And we appreciate Mr. Meadows and Mr. Linkous

2   furnishing us with an update, as far as what is

3   happening nationally.  We note that there are many cases

4   that are set for trial here over the next one to two

5   years, including many in this year that we are currently

6   working in.  And along those lines, we want to come up

7   with a reasonable time frame for a trial in this case.

8   We will be coordinating with Judge Faber.  For

9   Judge Swope and I, Judge Faber is somebody we look up

10  to, always have.  He is an outstanding federal judge,

11  one of the best.  And so we look forward to coordinating

12  our efforts with him.  And I have already told him that

13  we are not going to do anything in our case that is

14  going to be in conflict, timewise, in his case.

15           And so we have looked at the memorandum

16  submitted by the Defendants, stating that they need

17  18 months to conduct discovery.  We don't believe that's

18  necessary.  Were it not for that federal case, we would

19  be probably looking at a trial this fall.  However, we

20  cannot do that in light of that trial that's going to go

21  on from August through the end of this year.  So we are

22  looking to set trial in this case to begin March 22,

23  2021.

24           We believe that is a reasonable time period,

 1  in light of the requests of the Defendants and the

 2  concerns of the Plaintiffs.  They've said before, they

 3  are ready to go forthwith.  We see no way it can be done

 4  before the federal trial in August.  We still have cases

 5  coming in.  There were new cases filed very recently.

 6  I'm sure there will be motions pertaining to those, as

 7  there have been in all of the other cases, that we will

 8  need to deal with and matters that we need to consider

 9  and rule on.

10          We've had a motion to reconsider, filed this

11  week, on our past ruling.  We had a motion come in last

12  night wanting to submit briefs.  I think that was by

13  Mr. Williams, who just recently came into the case.  I'm

14  going to give everybody two weeks to file anything you

15  want to file in that regard, and we're going to look at

16  it.

17          However, back in December, we related -- we

18  told you that we believe this is about public nuisance.

19  Judge Polster told everybody in the federal case that's

20  what the case is all about.  He asked the Plaintiffs to

21  pare down their theories.  He only agreed to send the

22  case back to Cabell County, or the Cabell County and

23  Huntington case back to West Virginia, if those

24  Plaintiffs did that.  They agreed.  Ultimately, they

1  gave up numerous causes of action.

2          I said before, this case has the capacity to

3  outlast any case we've ever dealt with.  The longest

4  case we've dealt with was 22 years.  That was the

5  tobacco litigation that started in 1998.  We entered an

6  order last Friday, March 6, that dismissed that tobacco

7  litigation in its entirety, after 22 years.  Had a

8  torturous route through our state's Supreme Court,

9  United States Supreme Court, attempts to select juries.

10  And this has the same capacity.

11          Now, we understand that there are

12  disagreements, and there's always going to be

13  disagreements, as far as what we've done.  I can tell

14  you we are not inclined to revisit this issue of a

15  nonjury trial.  Quite frankly, we disagree with the

16  Defendants' position.  This is an equitable matter, and

17  if we don't address it, years and years, decades will go

18  by before something as critical as a public health

19  crisis is addressed.  We don't believe that's what our

20  law was set up to do.  And if we allow this case to

21  languish for 5 years, 10 years, 15, 20, 30 years, then

22  that means our legal system has failed.  And we're not

23  going to let that happen.

24          And so we are not inclined to reconsider this

1  nonjury trial on the public nuisance, because our

2  position is as we said.  It's an equitable matter, we

3  believe we have the authority.

4          Now, I'm sure the Supreme Court may be asked

5  to tell us we don't.  And we understand that.  And if

6  they tell us we don't, then we will go back and we'll

7  start at the beginning.

8          You have talked about the statutes.  There

9  were three statutes:  Chapter 16, Chapter 7, Chapter 8.

10  You all know what they are.  We put in our order, we

11  looked at Chapter 16.  I asked you the last time to tell

12  me the ordinances that you were working under.  Never

13  saw an ordinance.

14          We're not saying that there's no authority

15  under those other two statutes, we just weren't quite

16  satisfied with the Plaintiffs' responses.  So you have

17  the opportunity to look at that again, as the Defendants

18  have filed this motion for us to reconsider.

19          As far as the discovery is concerned, the

20  Defendants are saying:  We need to depose every single

21  entity -- plaintiff-wise -- every county commission,

22  every city, to see whether there was an unreasonable

23  interference with the public weight in each of those

24  areas.

1          Now, the memo that Mr. Linkous and Mr. Meadows
2   submitted says that there are approximately 3,000 of
3   these cases pending nationally, and in 49 states and
4   territories.  3,000.  Does that mean that there has to
5   be showing that there is a public nuisance specifically
6   related to every one of those 3,000 places?  That
7   doesn't make much sense.
8          Right now we're dealing with a virus.  Viruses
9   know no boundaries.  From wherever we all came from
10  yesterday, it knows no boundaries.  And it's illogical
11  and unreasonable to think that somehow a public nuisance
12  that is alleged to not be in just this state but in
13  every state, somehow stops at the boundaries of the
14  municipality, a county, or a state for that matter.
15         It appears from what we have been able to
16  determine, this thing has been discovered to death so
17  far, in the federal MDL.  It continues to be discovered
18  to death in the Cabell County, Huntington case.  So you
19  all are going to have the benefit of all of them.
20         So we are not going to open up discovery for
21  every county and every city.  We said before we would
22  look at a specific county, city, hospital, so you can
23  get an idea what the allegations are, as far as
24  abatement is concerned.

1            Now, the Defendants say:  Well, these are

2    damages.

3            Well, we disagree with that.  Judge Polster

4    disagrees with that.  He said the abatement is a cost,

5    not a damage, recognized as such.  And that's how we

6    look at it as well.

7            So we are going to -- you're going to have

8    Cabell County and Huntington.  We are going to allow

9    specific discovery on all the issues for one county, one

10   city, one hospital.  And we have chosen an area where

11   there all three, hospitals, together:  the County of

12   Harrison, City of Clarksburg, United Hospital Center.

13            The allegations by the Plaintiffs say the

14   Defendants flooded not just Clarksburg, not just

15   Harrison County, but the entire state with opioids.  It

16   knows no boundary, because every other state is saying

17   the same thing.  But this will be the opportunity to

18   conduct discovery to see what kind of costs a typical

19   county, city and hospital say they have incurred, or

20   will continue to have to put out to abate what they say

21   is a nuisance.  You're going to have that very soon in

22   Cabell County and Huntington.

23            And if here, over the next few months, it

24   appears that we need to expand that, then you can file

1  an appropriate motion and we will consider that.

2          We have cases filed by the State of

3  West Virginia, by the Attorney General.  The Attorney

4  General has filed a motion very recently wanting an

5  expedited trial.  We haven't even dealt with motions to

6  dismiss in those cases yet, at least in one of them.

7  And one of them, another case, in Endo Health Solutions,

8  to my knowledge, hasn't even come to the panel yet.  Is

9  it going to?  Probably.

10         Our position is going to be we are going to

11  focus like a laser on public nuisance.  If somebody has

12  a severed artery, nobody worries about who caused it,

13  they worry about how to stop the bleeding, and then

14  later figure out what the cause of that was.

15         And so to the Attorney General, the punitive

16  statute of consumer credit protection can all be done in

17  good time.  We will look and see is it possible to take

18  that up at a bench trial.  Because it would be a bench

19  trial as well.  I don't know the answer to that.  We'll

20  all have to discuss that, consider it, and make a

21  decision as we go along.

22         We had an issue, I think Mr. Williams raised,

23  on res judicata.  He's shaking his head "yes."  So

24  that's going to have to be dealt with.  It's my

1  understanding from the case in federal court that there

2  are issues of res judicata pertaining to the distributor

3  defendants in prior cases that were brought by the State

4  of West Virginia, the Attorney General, DHHR, I believe

5  Division of Military Affairs, and whether a settlement

6  in those cases somehow is going to adversely impact

7  municipalities, counties.  That has not been brought to

8  us yet, but it's my understanding Judge Faber is going

9  to be taking up that issue.

10          And so I'm sure somebody at some point in time

11  is going to file that motion here before us as well.

12          Last week, or the week before, there were

13  14 new cases filed in Marshall County.  I would assume

14  that you all are going to get together and come up with

15  an agreed order to transfer those to the panel.

16          I hope that you will think seriously about the

17  motions to dismiss that you're going to be filing.  We

18  have spent countless hours, days and weeks working on

19  all the other motions to dismiss.  You all have taken

20  those to the Supreme Court, twice, with the same result.

21          You're looking here at me, Judge Swope, our

22  mass litigation manager, who is our law clark, Kim

23  Fields.  We're it.  In addition to our regular dockets

24  and the other things we do.  You say:  Well, those two

1  judges are pretty boring people.

2          And you're right, we don't have much of a life

3  outside of what we do in our profession.  And we are not

4  complaining about that.  But the point is, we do not

5  have unlimited time and resources, and so we have to try

6  to work as smart as we can with the time that we have.

7  But we are willing to work harder, regardless.  And we

8  do.

9          I would like to hear from the Attorney

10 General's office.  Who's here for the AG?

11          MS. SINGER:  Linda Singer, Your Honor.

12          JUDGE MOATS:  I need you to come to the

13 microphone.  And I need you to put your name on the

14 record, who you represent, first of all, for all the

15 throngs of people listening out and around the country.

16          MS. SINGER:  Linda Singer, Your Honor,

17 Motley Rice, for the Attorney General's Office.  And,

18 I'm sorry, you had directed us to speak up here, so my

19 apologies for that.

20          In terms of what the panel would like to hear,

21 I'm happy to speak.

22          JUDGE MOATS:  Well, what I've just talked

23 about.  You asked for an expedited trial in two months.

24 We haven't even dealt with motions to dismiss.  How in

1  the world would we do that?

2            MS. SINGER:  So we recognize that we

3  submitted an aggressive schedule.  We think for all the

4  reasons that Your Honor spoke to, that's appropriate in

5  this case.  Plus the fact that -- I think there are

6  really three reasons.  The first is that while the

7  Attorney General's cases are new to this panel -- and I

8  can update the panel to say that you now have the case

9  against Janssen and Johnson & Johnson, the case against

10  Teva -- the Attorney General's Office did not oppose the

11  transfer of the Teva case to the Mass Litigation Panel.

12            Mallinckrodt and Endo are the two outstanding

13  cases that the Attorney General's Office has filed.

14  Those have been served.  And as with Teva, the Attorney

15  General's Office is not going to oppose the transfer of

16  those cases into the Mass Litigation Panel.

17            So those will be four cases.  These cases

18  against the manufacturers of the opioids actually date

19  back even before the multidistrict litigation before

20  Judge Polster.  They were filed originally in 2014.

21  There has been extensive discovery involving these

22  defendants.

23            We recognize that motions to dismiss have been

24  filed.  The State will file its first reply on Monday,

1   and promptly to other motions thereafter.  We recognize

2   the burden on this panel and the need for you to

3   consider those motions.  That's no reason, we believe,

4   to stop discovery in this case.

5              JUDGE MOATS:  Well, let me ask you this.

6              The last cases the Attorney General filed,

7   where there were settlements filed against the

8   manufacturer, against the distributor defendants --

9   McKesson, AmerisourceBergen and Cardinal Health -- that

10  took five years.  They were filed in 2012, and there was

11  a settlement early January 2017.  These cases are filed,

12  and you want us to go to trial in two months.  It makes

13  no sense.

14             MS. SINGER:  So the points I would make to

15  that remark, obviously, that is, in fact, what happened.

16  Those were the first cases filed against distributors in

17  the country.  They took an incredible amount of work to

18  prepare, to conduct discovery, and for the legal issues

19  to be resolved.  This panel does not face the

20  manufacturer cases on a blank slate.

21             JUDGE MOATS:  Okay.  Let me interrupt you.

22             Why should we focus on those issues that are

23  punitive in nature as opposed to what I said before,

24  having laser-light focus on public nuisance?  Which is

 1  the most important?

 2              MS. SINGER:  I think there's no question

 3  that the State of West Virginia, like the other

 4  Plaintiffs before the panel, and the panel itself

 5  recognizes that public nuisance is a critical remedy in

 6  this case.  I think they're -- again, a number of

 7  reasons.  One is that the case under the West Virginia

 8  Customer Credit Protection Act is a streamlined case.

 9  It doesn't require discovery of the State.  I know

10  Janssen has raised issues that required discovery.  We

11  think it's very streamlined.  I'm happy to go into that.

12          The second is that the finding on deceptive

13  and unfair conduct would be an element of the public

14  nuisance case too.

15              JUDGE MOATS:  Well, then you may need to

16  bring that into public nuisance.  Because we respect

17  what you're saying, but it's not going to happen.  We

18  are going to focus -- again, at the risk of being

19  redundant, which I am -- like a laser on public

20  nuisance.

21          Now, the next question is -- I asked this back

22  in August:  Is the Attorney General going to file any

23  more?  We have all of these defendants here.  I asked in

24  August:  Are there going to be any more cases filed?

```
 1              And I was told:  Can't answer that question.

 2              You know what?  Two more were filed within

 3   24 hours.

 4              Judge Swope and I were shocked.  And I don't

 5   quite understand.  We have several questions.  We have,

 6   what, 30-some cities, 26 county commissions who have

 7   filed against all these defendants.  And I'm sure they

 8   want to know:  Are they going to be subject to more

 9   lawsuits here over the next few months?  Or if there's

10   some kind of agreement that doesn't pertain to the

11   State, is the State going to come back a year from now,

12   or two years from now, and do the same thing?  Is this

13   going to be neverending?

14              If this is a public nuisance, does the

15   Attorney General believe that the defendants it has not

16   sued, were not guilty of engaging in causing a public

17   nuisance?

18              Those are questions we don't understand the

19   answers to.

20              MS. SINGER:  And they are questions that I

21   think the panel is going to remain frustrated by no

22   response to.  I know Mr. Sizemore is still recovering

23   from the last discussion.

24              JUDGE MOATS:  We're not trying to berate,
```

1  but we just don't understand.  We just want -- we want

2  finality.  And we've tried that from the beginning.

3  That's what we're trying to do.  That's why I suggested

4  at the beginning that we need to try to have a

5  West Virginia solution.

6          Ohio has come out with their Ohio One Plan,

7  where all the cities and State had gotten together.

8  They've come to some agreement.  That's what we need

9  here.

10          MS. SINGER:  So to respond to a number of

11  those issues.  The Attorney General and the Attorney

12  General's Office regards this issue as, I think, the

13  number one priority for this office, that's why it was

14  so far out ahead on the distributor case.  But both the

15  AG's Office has a responsibility to investigate its case

16  thoroughly, to bring those cases that it has determined

17  it can bring, based on the investigation it's conducted.

18  It's also very bound, as this panel recognizes, by

19  confidentiality restrictions, on the status of its

20  investigations, so --

21          JUDGE MOATS:  What about public nuisance?

22  Surely to goodness you all have the same access to all

23  this discovery as everybody else does.  Are you going to

24  file or join in or attempt to join these defendants for

1  public nuisance?  Or is that going to come up somewhere

2  down the road?  Or are you prepared to state on the

3  record:  No, we're not going to go after any of the

4  other defendants that we haven't sued for public

5  nuisance.

6              MS. SINGER:  I'm certainly not prepared to

7  say on the record that the Attorney General's Office

8  will not be bringing additional cases.  The Attorney

9  General's Office is investigating wrongdoing and

10  potential litigation against every participant in this

11  crisis.

12              JUDGE MOATS:  And I understand that.  But I

13  had that answer given to me in August.

14              Here we have public nuisance.  We have said we

15  are going to have a public nuisance trial pertaining to

16  everybody, every plaintiff, every defendant, everybody,

17  including the State of West Virginia.

18              You say the State of West Virginia has a

19  common-law right to bring it.  And we don't disagree

20  with that.  But right now you just brought it against a

21  few defendants.  Are you going to come back after we do

22  all this and say:  We want to do it again, because we

23  have not abated against all these defendants on behalf

24  of the State.

1                    MS. SINGER:  So, again, I cannot speak to

2    the status of any current investigation.  I can tell the

3    court that -- the panel that, first, we have now

4    proceeded against the manufacturers.  The AG's Office

5    previously proceeded against the distributors, not just

6    the big three, but a dozen or so distributors.  There

7    are obviously other defendants before this court, but

8    the Attorney General has an obligation to move speedily

9    but deliberately.  I can assure the panel that it is not

10   the Attorney General's Office intention to be a

11   bystander in this process.  To the extent it brings

12   other cases, it will bring them as rapidly as it can

13   before the panel so that it can be a full participant.

14                    JUDGE MOATS:  Now, see, that tells us

15   nothing whatsoever.  It's been several months since I

16   got that last answer.  I'm setting a trial a year out.

17   Several months from now, am I going to get the same

18   answer?

19                    I don't know.  It just doesn't make any sense

20   to me.  And I know it doesn't to Judge Swope, because we

21   have discussed this in detail.

22                    If this is such a public crisis, such a public

23   health crisis in this state, then we don't understand

24   where the State is.  To say, "We need to be deliberate;

 1  we need to take months and years to investigate; and we

 2  will do it in our own good time" -- makes no sense to

 3  us.  Period.

 4          Now, I understand your position.  But if we

 5  adopted that position, then we would be saying:  Yes,

 6  Defendants, we're going to give you a jury trial, and

 7  we're going to set it in the year 2037.  Because we want

 8  to be slow and deliberate and take our time, dot every

 9  single "I," cross every single "T."  That's all we're

10  asking for.

11          We told you we want the law to work, as it

12  should work.  That's what our obligations are, and as

13  judges, to try to move this, to respect the rights of

14  the Defendants, but to recognize we have these

15  allegations of a public health crisis, and to try to

16  strike a balance.  And so we're not asking anything

17  unreasonable out of the Attorney General's Office.

18          We have studied the statute, Chapter 16.

19  Whether you agree with it or not, it says the State

20  Director of Health has the same authority.  No

21  departments, only the State can join in.  It's strictly

22  the Attorney General filing this action.

23          I would think that you would be working with

24  all these lawyers.  We've got some of the best lawyers

1  in the state, in the country here, to confer, to work

2  together.  And that's what needs to happen.  There needs

3  to be complete, total cooperation, working together to

4  come up with a solution.  And the solution is not:

5  Let's wait six more months, ten months, a year, two

6  years.

7            That's not what I'm asking from you.

8            MS. SINGER:  So -- and, I'm sorry, I

9  certainly don't mean to interrupt, Your Honor.  I would

10  just say that it is not that the State of West Virginia

11  has sat back, to leave others to resolve this problem,

12  or that it has not brought every sense of urgency to

13  this crisis.  It was involved in this litigation before

14  this group was involved in it.  It has proceeded with

15  enormous dedication and determination, not just on the

16  distributor litigation, now the litigation against

17  manufacturers, but in developing with other parties a

18  proposed plan to abate the crisis.  It has worked in

19  other litigation outside of this panel.  I'm sure the

20  panel is aware of it.  So it's not simply that the

21  Attorney General's Office hasn't focused on this issue.

22            And as a sovereign, as a law enforcement

23  official, it has an obligation to move deliberately and

24  appropriately and with speed to participate in this

1  process.  And I can sure you that it is doing that.  And

2  it doesn't intend to wait until this process resolves

3  itself.

4             JUDGE MOATS:  All right.  Thank you.

5             One thing I would like all of you to consider

6  is, in this Cabell County and the Huntington case, is to

7  be thinking -- depending on what happens -- and I know

8  there are a lot of variables.  There's these motions to

9  dismiss for res judicata.  Judge Faber, I'm sure, will

10 be addressing that.  But in the event that there would

11 be a finding by Judge Faber, after a trial, that shows

12 there's public nuisance or something else, is that going

13 to constitute collateral estoppel to those three

14 defendants?

15             I'm sure that will be something we will

16 consider as time goes by as well.

17             The next thing I understand and I know, and I

18 talked to Judge Faber, and he's issued an order

19 appointing retired Senior Status Judge Christopher C.

20 Wilkes as special master in the federal case.  And we

21 talked before, and I asked all of you to come up with

22 some names, as far as a discovery commissioner here.

23 And Judge Wilkes was one of the names you all came up

24 with.

1          And so it's our intention to appoint

2   Judge Christopher C. Wilkes as discovery commissioner.

3   And we will pretty well mirror Judge Faber's orders, as

4   far as the duties, the authority of the discovery

5   commissioner, the compensation will be the same as set

6   by Judge Faber.

7          We believe it's very important that we have

8   the same discovery commissioner, so we don't have

9   dueling discovery decisions that would be very

10  problematic.  And I'm hoping that Judge Wilkes will be

11  able to handle that double-duty with his time.

12         Ms. Chafin has sent a letter to the court, for

13  the second time, asking us to make a request of

14  Judge Polster to put more on our plate.  I told you the

15  last time my thoughts about asking for second helpings.

16  However, I would like to know:  How many West Virginia

17  cases are pending in the MDL?  Can somebody answer that?

18         Ms. Chafin, come forward, state your name and

19  who you represent.

20             MS. CHAFIN:  Your Honor, Letitia Chafin, on

21  behalf of 32 counties and cities, that we represent all

22  the state court claims, near-identical defendants as to

23  the ones pending before -- some are pending before the

24  panel in the Mass Litigation Panel, where we are today.

 1  Twelve of them are removed -- have been removed and are

 2  pending in the MDL.

 3          I'm aware of only the 12 -- our 12 clients

 4  that were removed -- that have state court claims that

 5  have been removed and are still pending in the MDL.

 6          JUDGE MOATS:  And my question is:  How many

 7  other cities or counties are in federal court, from

 8  West Virginia?  Do we have somebody else --

 9          MR. JESSEE:  Your Honor, if I may.

10  Russell --

11          JUDGE MOATS:  Wait just a second.  Speak

12  into the mic.

13          MR. JESSEE:  Russell Jessee, I represent

14  McKesson, and I'm John Meadows' body double today.

15          I have been tracking these.  I believe that in

16  the MDL there are 70 total cases with West Virginia

17  plaintiffs, 24 counties, 38 municipalities.  And so

18  that's 62.

19          And then -- actually, there may be -- there

20  may be 72 total, because I believe there are ten others

21  in addition to the governmental entities.  So,

22  actually --

23          JUDGE MOATS:  What kind of others?

24          MR. JESSEE:  I'm sorry?

1           JUDGE MOATS:  What kind of others?

2           MR. JESSEE:  Others include personal injury

3  actions, there's six NASBA actions, and two personal

4  injury wrongful death actions.  There's also one

5  insurance premium purported class action, based on

6  increased insurance premiums.  And there is a union

7  first-party payer matter, Employer Teamsters Local 175

8  and 505, and they were --

9           JUDGE MOATS:  Are you all going to file any

10  kind of response to that letter?

11          MR. JESSEE:  Well, Your Honor, the

12  circumstance of state court judges asking Judge Polster

13  to sua sponte remand some cases to state court --

14  Judge Polster issued an order last year sometime, and I

15  don't remember exactly when, that said that he would

16  entertain those requests for a limited period of time.

17          There were only two state court judges that

18  made those requests.  I can't remember both of them.

19  One of them was Missouri.  And Judge Polster remanded --

20  I think it was Pennsylvania, was the other one.

21          But Judge Polster remanded those specific

22  cases requested at that time, and said at that time:  No

23  more; I'm done with this.

24          JUDGE MOATS:  Well, I understand that.  But

1  I guess if both sides would go to Judge Polster and say:

2  Hey, we would like to have this done, it makes sense, we

3  can resolve them all in one fell swoop -- that would be

4  what would seem to make sense, if both sides agree.

5              MR. JESSEE:  And at this time I don't have

6  a poll of defendants to have a position on that.

7              JUDGE MOATS:  So I guess, Ms. Chafin, our

8  response is:  We understand your position.  And our

9  position from day one is:  Let's attempt to resolve all

10  the West Virginia cases here, at one time.

11             Judge Polster told the Plaintiffs you all have

12  thrown in everything but the kitchen sink in this

13  litigation.  Now, there's quite a divergence on public

14  health crisis, fraud, misrepresentation, clear down to

15  negligence.  It just seems so contrary.  Negligence to

16  intentional creation of a public health crisis.  And I

17  think that's what Judge Polster got it.  Get rid of all

18  this extraneous stuff and let's deal with this for what

19  it really is, what I said at the beginning.

20             Well, Judge Swope said at the beginning, this

21  is a case of public nuisance.  That's what it's all

22  about.  That's what other states are looking at.

23             The Defendants, when they asked us to

24  reconsider our order, said:  Well, the reason we agreed

1  to a nonjury trial before Judge Faber was because the

2  Plaintiffs conceded certain positions.

3          Do the same thing here.  If you Plaintiffs are

4  so confident in your cases, as you seem to be, in the

5  hundreds of pages constituting complaints, then stand

6  behind it.  Go to the Defendants and say:  We get rid of

7  all that stuff.  We get rid of all this stuff in federal

8  court if you agree to bring these things back.  We unite

9  and do this and wrap it all up in one case.

10          And so that's the way, then you all can go

11  united to Judge Polster and say:  Judge, we have a

12  proposal.

13          MS. CHAFIN:  Your Honor, may I just address

14  three points?

15          JUDGE MOATS:  Go ahead.

16          MS. CHAFIN:  One is that you can't talk

17  about public nuisance without mentioning the southern

18  West Virginia clients that I identified in my letter.  I

19  mean that's --

20          JUDGE SWOPE:  What do you think I do all

21  day?

22          MS. CHAFIN:  I know, Your Honor, you

23  know -- both of you know, as well as anybody, that abuse

24  and neglect proceedings, the criminal trials, they take

1 up more than 90 percent of your docket, I'm sure.

2            JUDGE MOATS:  Well, Ms. Chafin, right now,

3 just last week we have the City of Buck in this case.

4 And I guess I disagree with them.  Because that's

5 contrary to what I said before.

6            This knows no boundary.  It's alleged in all

7 the states, at least 49 of them.  And so, yes, what's

8 alleged in southern West Virginia is terrible.  What's

9 alleged in all the other counties and all the other

10 counties in every other state.  We are not making a

11 judgment call.  But all we are saying is that it's not

12 confined.

13           And so to show that there is a public

14 nuisance, it's not going to be.  But we have to show

15 that it was a public nuisance in Ravenswood, it was a

16 public nuisance in Philippi.

17           There's -- I assume that there's going to be

18 evidence, as you say, that it was so widespread, it's

19 everywhere.  And that's what it's going to be.

20           So, again, if you all want to get together,

21 that's fine.  But Judge Polster already issued an order,

22 he said:  Don't do it.

23           We're not going to do it, unless Judge Polster

24 says otherwise.  He said:  No, don't come here, don't

1  ask for it.

2          We're not going to violate his order.  But if

3  you all get together and come up with an agreement, then

4  he may say:  This makes sense.

5          MS. CHAFIN:  Since those orders, the one

6  thing I would just notify the panel about is, it's my

7  understanding that Judge Polster -- because this is an

8  ever-changing litigation, as the panel is well aware of.

9  It's my understanding that Judge Polster would be

10 receptive to --

11         JUDGE SWOPE:  Why don't you all file a

12 motion there, then?

13         MS. CHAFIN:  Well, it was -- Your Honor, I

14 will.  We debated whether we should file a motion or a

15 letter.  It was -- we felt it was maybe a little awkward

16 to file a motion for you to write a letter.  But if you

17 would prefer it to be in that vehicle, I'd be happy to

18 do it.  As the court indicated, we have two weeks to

19 file briefs.

20         JUDGE MOATS:  All right.  But Judge Polster

21 already told us.  He entered an order.  He said:  Don't

22 ask, because I'm not doing it.

23         It's up to you all to ask him to reconsider.

24 Or else come to this other resolution.  That makes sense

1  to us.  We've talked --

2              JUDGE SWOPE:  Absolutely.

3              MS. CHAFIN:  Thank you, Your Honor.

4              JUDGE MOATS:  You're welcome.

5              JUDGE SWOPE:  Let me ask:  Who's the

6  head honcho on the defense side?  Mr. Williams?  You got

7  the Cheshire cat grin.  Are you the boss over there?

8  Implicitly, if not --

9              JUDGE MOATS:  We heard Mr. Meadows went to

10 France.

11             JUDGE SWOPE:  Yeah, he's stuck in Nice.

12             MR. WILLIAMS:  He did.  And with any luck

13 he won't be let back in.

14             JUDGE MOATS:  If Mr. Meadows is listening

15 right now:  Hello, Mr. Meadows.

16             JUDGE SWOPE:  Bonjour.

17             MR. WILLIAMS:  Hopefully he is listening.

18         I'm not the head honcho here.

19             JUDGE SWOPE:  Well, let me ask you this:

20 You're a smart guy.  We have you in all sorts of cases.

21             Wouldn't it make sense for you all to sit down

22 on your side of the table and say:  Hey, guys.  Hey,

23 ladies.  We can get rid of punitive, we can get rid of

24 all of this other extraneous stuff.

1            You know, if we'll go to them and they come to

2    us and say:  Hey, we're willing to focus on public

3    nuisance, and we'll give up our right to a jury trial,

4    you give up your right to a jury trial, we just do this

5    on the simple issue that we're proposing -- all the

6    other -- I used to be a plaintiff lawyer, I was with the

7    Board of Governors.  Mr. Majestro was a defense lawyer

8    when I was on the Board of Governors for the Plaintiff

9    Bar, okay.

10            Why can't you all just sit down together, use

11   some common sense, and do what Judge Moats has proposed?

12            And I'm just, philosophically, picking on you.

13   But this is for everybody sitting over here.  Apply some

14   common sense, try and get this back here in a simple way

15   that we can get rid of it.  As opposed to, you know --

16   they'll find my skeletal remains before this gets

17   finished, if you go the old-fashioned way.

18            So, I mean, you're standing up here, I'm just

19   picking on you, because you're a smart guy and I like

20   you and I know you, so.

21            But this is for everybody:  Why can't you do

22   that?

23            MR. WILLIAMS:  We would be happy to sit

24   down and confer with Plaintiffs' counsel regarding any

 1  of these issues.  I can tell you that the proposal that

 2  resulted in the track to remand the Cabell County and

 3  City of Huntington case to Judge Faber, and the

 4  arrangements that were worked out regarding claims,

 5  et cetera, have not been the subject of discussion,

 6  regarding Ms. Chafin's request for the remand of those

 7  cases that are currently before the MDL.  But we're

 8  happy to meet and confer with Plaintiffs' counsel.

 9              JUDGE SWOPE:  Why can't you all do that, on

10  this side?

11        Have some social distancing, sit apart, don't

12  breathe on anybody, and try to come up with a

13  commonsense way to fix this.

14              MR. WILLIAMS:  We're happy to have that

15  discussion.  I can't make any representations as to

16  whether they're going to be successful.  But until those

17  proposals are before us, we can't really evaluate what

18  our position would be on those.

19              JUDGE MOATS:  Well, you have to be willing

20  to talk.

21              MR. WILLIAMS:  Sure.

22              JUDGE MOATS:  In looking at the federal

23  MDL, Judge Polster -- and I've read as much as I could

24  read -- he has expressed his frustrations repeatedly.

1  There seems to be little grounds for agreement.  And I

2  understand stakes are incredibly high, probably as high

3  as they've ever been.  I believe perhaps the tobacco

4  litigation, in years past, a big settlement.  But so

5  contentious.

6          I mean these motions to dismiss with 600,

7  700 pages of exhibits, for what, to me, as far as a

8  plaintiff's burden, is hardly more than stepping over an

9  extension cord on the floor.  It doesn't take much to

10  overcome a motion to dismiss.  At least in our state.

11  Rarely.

12          But we spent weeks and weeks and weeks, on

13  thousands of pages of documents.  And we anticipate --

14  not with pleasant thoughts -- probably having more to

15  deal with these 14 new cases.

16          So I would ask that you please consider all of

17  this, what you're really trying to do.  The Supreme

18  Court is going to get tired of you coming for writs of

19  prohibition.  But by all means, if that's what you want

20  to do, do it.

21          Some of these issues, perhaps they're much

22  more critical.  This right to a jury trial, we believe

23  we're right.  You belive we're wrong.  It's an honest

24  difference of opinion.  Take it up, if you want.  Get

1  together.

2          The Plaintiffs -- you can be seated,

3  Mr. Williams.

4              MR. WILLIAMS:  Thank you.

5              JUDGE SWOPE:  I just picked on you, but you

6  can have a seat.

7              JUDGE MOATS:  Just a second.

8          I mean all these theories, the legal theories,

9  well, those are all well and good.  But how much does a

10 case have to weigh before it collapses under its own

11 weight?  How do you do this trial?  A jury trial.  It's

12 going to take six months, eight months, a year.  And

13 that's perhaps just for one county or city, one

14 hospital.  Most of us in here will no longer be

15 practicing law by the time it's all resolved.

16         We are making this much more complicated than

17 it really is.  We are.  We need to cut through it and

18 get to it.  And we can do that.  It's going to take

19 cooperation.

20         You all had the first mediation session two

21 weeks ago.  I immediately read in the newspaper the next

22 day about the mediation session, and numbers and stuff.

23 That's not the purpose for a mediation.  That causes

24 people to retract, retreat to their corners, and become

 1  overly cautious, as opposed to becoming overly

 2  cooperative.

 3          These things are confidential.  There needs to

 4  be a free and open exchange of positions, ideas.

 5  Numbers need to be able to flow freely inside of the

 6  mediation, not outside of the mediation.  I see all this

 7  stuff at a federal level.  It's almost like that there's

 8  a pipeline coming out.  And I don't understand that.

 9          I mean if this is not going to be tried to a

10  jury, it's certainly not for our benefit.  We don't

11  care.  I read that with bemusement, as does Judge Swope.

12          It serves no purpose.  But the only result

13  that comes is distrust, lack of cooperation.  I'm sure

14  when the Defendants read that in the newspaper, that the

15  fur on their necks stood up, they bristled.  They

16  probably thought:  Let's take a pause and step back.

17  We're going to need to rethink our level of cooperation.

18          That's not what it's all about.  This can get

19  done.  You all can do this.  It can be resolved.  It can

20  be resolved -- everything in this state can be resolved.

21  And I firmly believe that.

22          I've had most of the West Virginia attorneys

23  in front of me and in front of us many times in the

24  past.  You all do a great job.  But I am asking for a

1  new level of cooperation, a new level of civility.  I

2  want the citizens of our state to see the very best that

3  our legal profession has to offer.  That we have one of

4  the greatest challenges, not just of our careers, but of

5  our lifetime, that we're in the middle of.  It's

6  unlikely very many of our colleagues, whether they're

7  lawyers or judges, will ever be involved in something

8  like we are involved.  It's something that your children

9  and your grandchildren will talk about.

10          JUDGE SWOPE:  And if we had a jury trial,

11  they'll be trying it.

12          JUDGE MOATS:  Exactly.  And some of them

13  are going to be up here on the bench, presiding.  Maybe

14  one of your grandchildren.

15      But that's not what our profession is all

16  about.  And we cannot allow that to happen.  And I'm

17  asking that all of you not allow that to happen.

18          MR. COLANTONIO:  If I may?

19          JUDGE MOATS:  Go ahead.

20      State your name, please.

21          MR. COLANTONIO:  Mark Colantonio, I

22  represent 13 counties.

23      I just want to say I agree with the court, and

24  we've talked to our clients already about some of these

1   issues, narrowing claims.  I'm confident we can reach an

2   agreement with the Defendants and get this thing

3   narrowed down.  I just wanted to say that.

4           JUDGE MOATS:  You know, if I was one of the

5   defendants, I wouldn't do any -- I'd do what they're

6   doing.

7           You know, there's an old adage in criminal

8   law, criminal defense:  That a continuance is the next

9   best thing to an acquittal.

10          There's an old adage in civil law, for

11  defendants:  That a delay is the next best thing to a

12  defense verdict.

13          And if I was one of them, you can bet -- I'd

14  be like a football player with two minutes left, wanting

15  to slow down the other team.  I'd feign injury; I'd do

16  anything to slow you all down.

17          One of them said it best.  They agreed,

18  because you gave up something.  And when you do, you

19  start coming closer together.

20          Plaintiffs, you haven't given up anything.

21  Nothing.  Up to this point, it's been:  Me, me, me, my,

22  my, my.

23          Well, they're not going to respond to that.

24  There's got to be give and take.  So you all need to sit

1  down among yourselves.  And the Attorney General needs

2  to be a leader here, as opposed to:  We need six months,

3  or two years, or whatever, to think about this.

4          That's not acceptable.  And I want that

5  message to go out loud and clear.  It is not acceptable.

6          All the Plaintiffs, all of them need to get in

7  a room.  You need to discuss this.  When you go in the

8  room, leave the egos hanging on the hook on the outside.

9  And discuss it openly, honestly, cooperatively, where

10 nobody has to have more credit than anybody.  Let the

11 people of West Virginia have all the credit.  And you

12 need to decide:  If we are so confident in our case,

13 none of the rest of that stuff matters.

14          And it doesn't matter.  Because the odds are

15 it's never going to come before us or any other judge.

16 Never.  Can't happen.  But public nuisance can.  And

17 when you agree to do this, then these Defendants

18 probably are going to meet you at least halfway.

19 Because they know that they have at least narrowed down

20 what they are exposed to, so they know that they fight a

21 public nuisance battle, they're not going to have to

22 come back for round two through 200.  And we can move

23 forward.

24          And I think that you will see, if you can

1  start this and agree to this, that a new sense of

2  cooperation will emerge, and that can bring us closer to

3  resolving the entire litigation, as far as West Virginia

4  is concerned.

5          And that can also encompass these cases in

6  federal court in front of Judge Polster, because if all

7  of you go to Judge Polster and say, "Here's what we've

8  come up with for our state, and we ask you to approve

9  it," I would be very surprised if he would disagree.

10          That is our proposal.

11          I would like to know if anybody has any

12  thoughts about how frequently we should have status

13  conferences.  We're willing to do whatever.  We don't

14  want for this to become overly burdensome, for lots of

15  reasons, for all of you traveling and so forth.  But we

16  want to be available to keep this case moving on track.

17          Mr. Linkous, do you have any thoughts?

18          Come to the microphone.

19          MR. LINKOUS:  Tim Linkous, Your Honor, liaison

20  counsel, and far from being head honcho as well.

21          So I appreciate the invitation to speak.  We

22  have talked, we believe that it would be good to have a

23  monthly status conference before this court, that at

24  least liaison and counsel and local counsel could

1  appear.  And if counsel from out of state want to appear

2  by Skype, that would be fine.

3           We also believe that we should have a regular

4  hearing or meeting with the discovery commissioner every

5  two weeks.

6                JUDGE MOATS:  Okay.

7                MR. LINKOUS:  We also would like this

8  court, if it so chooses, to establish a hearing date for

9  all the motions it's invited.

10               JUDGE SWOPE:  Do you all want to travel to

11  Martinsburg, if you want to see Judge Wilkes every two

12  weeks?

13               MR. LINKOUS:  Yeah, that's close to me,

14  Your Honor.  So I'm in Martinsburg --

15               JUDGE SWOPE:  I mean that's where he is.

16               JUDGE MOATS:  And I think Judge Faber,

17  that's in his order; is it not?

18               MR. LINKOUS:  I believe it is, Your Honor.

19          But we're willing to do that.

20               JUDGE MOATS:  Okay.  Well, our order is

21  pretty well going to mirror his order.

22               MR. LINKOUS:  Yes.

23          And before I sit down, I just want to say I

24  appreciate the court's invitation to negotiate.  We, on

1  our side, have actually talked about this, about

2  approaching.  So this is timely.

3              JUDGE MOATS:  All right.

4              Who wants to speak on behalf of the

5  Defendants?

6              Mr. Jessee, are you here -- I'm sorry.

7  Mr. Williams.

8              JUDGE SWOPE:  He is the big cheese, right?

9              MR. WILLIAMS:  No, I think it's like the

10 short straw.

11             In regards to -- let me address the discovery

12 commissioner issue first.

13             Some of these issues might be able to be

14 handled not in person but over the phone, as disputes

15 arise.

16             JUDGE MOATS:  Sure.

17             MR. WILLIAMS:  So that would lessen the

18 burden of trying to get to Martinsburg, which is not

19 always easy.

20             We're happy to meet on whatever regular

21 schedule Judge Wilkes thinks is appropriate, and we'll

22 do that.

23             We think that the more judicial engagement

24 there is on these cases going forward, especially

1  towards trial, the better, not only from the discovery

2  commissioner, but from the panel.  So we would agree

3  with the Plaintiffs' recommendation that we have monthly

4  to six weeks' conferences with the presiding judges.

5              JUDGE MOATS:  I mean we will do that.  And

6  we will come up with a schedule going forward, over the

7  next year, so we have dates, as opposed to giving you a

8  date two or three weeks forward.

9              MR. WILLIAMS:  In the AG cases that have

10 been filed against Janssen, my client, we have

11 requested -- and finding yesterday that once that

12 briefing is completed, I think at the end of March --

13 that we have oral argument on that.  We'd be inclined to

14 have oral, or decide that on briefs.  And so could that

15 be added to the agenda, at whenever the next status

16 conference is?

17             JUDGE MOATS:  The answer to your question

18 is:  We will look at it and decide whether we need oral

19 arguments, and if we believe we do, then we'll set it

20 for one of those regularly scheduled conference dates.

21 Okay?

22             MR. WILLIAMS:  Okay.  Very good.

23             JUDGE MOATS:  Thank you.

24             MR. WILLIAMS:  Thank you.

1            JUDGE MOATS:  One thing that I want to

2  bring up, just as a housekeeping matter.  Some of the

3  items that have been served recently have just been

4  filed and served on me, they have not come to

5  Judge Swope or to Kim Fields, our mass litigation

6  manager.  So how about please making a note that anytime

7  you file something, it needs to go to all three of us.

8  And you also need to, like any motions or responses or

9  other documents that are germane to that specific

10  filing, we would appreciate that.

11            Now, are there any other issues that we need

12  to be aware of or to consider?

13            Mr. Williams.

14            MR. WILLIAMS:  One thing I was reminded by

15  Mr. Jessee.  There's been a request on our side that

16  future conferences start at 9:00 a.m., to make it easier

17  for those that are coming in.  They usually have to come

18  in the day before.  It makes it easier, in terms of

19  return flights.

20            JUDGE MOATS:  I have no problem with that.

21  I'm willing to start -- I'm usually up at 4:00 o'clock

22  every morning.  I'll start at 5:00 if you want.

23            MR. WILLIAMS:  I'm not sure we need to

24  start that early, Your Honor, but if that's what you

1  want to do, we'll be here.

2               JUDGE SWOPE:  And I usually don't get to

3  bed until 4:00 o'clock.

4               MR. WILLIAMS:  Well, why don't we just

5  catch you on the way out, and Judge Moats on the way up.

6               JUDGE MOATS:  That's true.  He texts me

7  sometimes at 3:30 in the morning, and I text him back at

8  4:00.

9         From the Plaintiffs, is there anything else

10  that we need to bring up?

11               MR. LINKOUS:  No, Your Honor.

12               JUDGE MOATS:  Well, I appreciate it,

13  everybody.  And I hope and trust that you will take to

14  heart what we have said, our suggestions.  Because we

15  believe that this is possible, and we believe that you

16  all have the power to do this and make it happen.

17         I appreciate it.  Everybody stay well.  I'd

18  come down and shake hands, but instead we're going to

19  adopt the new sign-off.  Good-bye.

20                              *   *   *

21               (Whereupon, this hearing was concluded at

22  11:10 a.m.)

23                              *   *   *

24

```
 1  THE STATE OF        :
    WEST VIRGINIA       :
 2                      :    SS:   C E R T I F I C A T E
    COUNTY OF OHIO      :
 3

 4          I, CONNIE M. NICHOLS, Registered Professional
    Reporter and Notary Public within and for the State of
 5  West Virginia, duly commissioned and qualified, do
    hereby certify that the proceedings within were by me
 6  reduced to stenotype; afterwards reduced to Computer
    Aided Transcription under my direction and control; and
 7  that the foregoing is a true and correct transcription
    of the proceedings within.
 8
            I do further certify that these proceedings
 9  were taken at the time and place in the foregoing
    caption specified, and were completed without
10  adjournment.

11          I do further certify that I am not a relative,
    counsel or attorney of either party, or otherwise
12  interested in the event of this action.

13          I, to the best of my ability, do further
    certify that the attached transcript meets the
14  requirements set forth within Article 27, Chapter 47 of
    the West Virginia Code.
15
            IN WITNESS THEREOF, I have hereunto set my
16  hand and affixed my seal of office at Wheeling,
    West Virginia, on the 20th day of March 2020.
17

18                      _____

19                      CONNIE M. NICHOLS, RPR
                        Notary Public within and for
20                      the State of West Virginia

21  My commission expires:
    October 16, 2021
22

23

24
```

**1**

10   14:21

11:10   52:22

12   32:3

13   44:22

14   19:13
  41:15

15   14:21

16   15:9,11
  28:18

175   33:7

18   12:17

1998   14:5

**2**

20   14:21

200   46:22

2012   22:10

2014   21:20

2017   22:11

2021   12:23

2037   28:7

22   12:22
  14:4,7

24   24:3
  32:17

26   24:6

**3**

3,000   16:2,
  4,6

30   14:21

30-some   24:6

32   31:21

38   32:17

3:30   52:7

**4**

49   16:3
  36:7

4:00   51:21
  52:3,8

**5**

5   14:21

505   33:8

5:00   51:22

**6**

6   14:6

600   41:6

62   32:18

**7**

7   15:9

70   32:16

700   41:7

72   32:20

7:00   10:18

**8**

8   15:9

**9**

90   36:1

9:00   51:16

**A**

a.m.   51:16
  52:22

abate   17:20
  29:18

abated   26:23

abatement
  16:24 17:4

Absolutely
  38:2

abuse   35:23

acceptable
  46:4,5

access   25:22

accustomed
  10:23

acquittal
  45:9

Act   23:8

action   14:1
  28:22 33:5

actions
  33:3,4

adage   45:7,
  10

added   50:15

addition
  19:23
  32:21

additional
  26:8

address
  14:17
  35:13
  49:11

addressed
  14:19

addressing
  30:10

adopt   52:19

adopted   28:5

adversely
  19:6

Affairs   19:5

AG   20:10
  50:9

AG's   25:15
  27:4

agenda   50:15

aggressive
  21:3

IN RE: OPIOID LITIGATION
Hearing on 03/13/2020                    Index: agree..bleeding

agree  28:19
  34:4 35:8
  44:23
  46:17 47:1
  50:2

agreed
  13:21,24
  19:15
  34:24
  45:17

agreement
  24:10 25:8
  37:3 41:1
  45:2

ahead  25:14
  35:15
  44:19

allegations
  16:23
  17:13
  28:15

alleged
  16:12
  36:6,8,9

Amerisourceber
gen  22:9

amount  22:17

answers
  24:19

anticipate
  41:13

anytime  51:6

apologies
  20:19

appears
  16:15
  17:24

Apply  39:13

appoint  31:1

appointing
  30:19

approaching
  49:2

appropriately
  29:24

approve  47:8

approximately
  16:2

area  17:10

areas  15:24

argument
  50:13

arguments
  50:19

arise  49:15

arrangements
  40:4

artery  18:12

assume  19:13
  36:17

assumed  10:9

assure  27:9

attempt  11:5
  25:24 34:9

attempts

14:9

Attorney
  18:3,15
  19:4 20:9,
  17 21:7,
  10,13,14
  22:6 23:22
  24:15
  25:11
  26:7,8
  27:8,10
  28:17,22
  29:21 46:1

attorneys
  43:22

August  11:23
  12:21 13:4
  23:22,24
  26:13

authority
  15:3,14
  28:20 31:4

aware  10:15
  29:20 32:3
  37:8 51:12

awkward
  37:15

_____
_____
         B
_____

back  13:17,
  22,23 15:6
  21:19
  23:21
  24:11
  26:21

29:11 35:8
  38:13
  39:14
  43:16
  46:22 52:7

balance
  28:16

Bar  39:9

based  25:17
  33:5

battle  46:21

bed  52:3

begin  12:22

beginning
  15:7 25:2,
  4 34:19,20

behalf  26:23
  31:21 49:4

belive  41:23

bemusement
  43:11

bench  18:18
  44:13

benefit
  16:19
  43:10

berate  24:24

bet  45:13

big  27:6
  41:4 49:8

blank  22:20

bleeding

18:13

Board 39:7,8

body 32:14

Bonjour
  38:16

boring 20:1

boss 38:7

bound 25:18

boundaries
  16:9,10,13

boundary
  17:16 36:6

breathe
  40:12

briefing
  50:12

briefs 13:12
  37:19
  50:14

bright 10:17

bring 23:16
  25:16,17
  26:19
  27:12 35:8
  47:2 51:2
  52:10

bringing
  26:8

brings 27:11

bristled
  43:15

broadcast

10:20

brought
  19:3,7
  26:20
  29:12

Buck 36:3

burden 22:2
  41:8 49:18

burdensome
  47:14

bystander
  27:11

———————
     C
———————

Cabell 11:23
  13:22
  16:18
  17:8,22
  30:6 40:2

call 36:11

called 10:18

calling
  10:17

capability
  10:9

capacity
  10:11,16
  14:2,10

Cardinal
  22:9

care 43:11

careers 44:4

case 12:7,
  13,14,18,
  22 13:13,
  19,20,22,
  23 14:2,3,
  4,20 16:18
  18:7 19:1
  21:5,8,9,
  11 22:4
  23:6,7,8,
  14 25:14,
  15 30:6,20
  34:21 35:9
  36:3 40:3
  42:10
  46:12
  47:16

cases 12:3
  13:4,5,7
  16:3 18:2,
  6 19:3,6,
  13 21:7,
  13,16,17
  22:6,11,
  16,20
  23:24
  25:16 26:8
  27:12
  31:17
  32:16
  33:13,22
  34:10 35:4
  38:20 40:7
  41:15 47:5
  49:24 50:9

cat 38:7

catch 52:5

Caudill 11:2

caused 18:12

causing
  24:16

cautious
  43:1

Center 17:12

ceremonial
  10:13

cetera 40:5

Chafin
  31:12,18,
  20 34:7
  35:13,16,
  22 36:2
  37:5,13
  38:3

Chafin's
  40:6

challenges
  44:4

Chapter
  15:9,11
  28:18

cheese 49:8

Cheshire
  38:7

children
  44:8

chooses 48:8

chosen 17:10

Christopher

30:19 31:2

circumstance
33:12

cities  24:6
25:7 31:21
32:7

citizens
44:2

city  11:23
15:22
16:21,22
17:10,12,
19 36:3
40:3 42:13

civil  45:10

civility
44:1

claims  31:22
32:4 40:4
45:1

clark  19:22

Clarksburg
17:12,14

class  33:5

clear  34:14
46:5

client  50:10

clients  32:3
35:18
44:24

close  48:13

closer  45:19
47:2

Colantonio
44:18,21

collapses
42:10

collateral
30:13

colleagues
44:6

commission
15:21

commissioner
30:22
31:2,5,8
48:4 49:12
50:2

commissions
24:6

common
39:11,14

common-law
26:19

commonsense
40:13

compensation
31:5

complaining
20:4

complaints
35:5

complete
29:3

completed
50:12

complicated
42:16

conceded
35:2

concerned
15:19
16:24 47:4

concerns
13:2

concluded
52:21

conduct
12:17
17:18
22:18
23:13

conducted
25:17

confer  29:1
39:24 40:8

conference
47:23
50:16,20

conference-
call  10:9

conferences
47:13 50:4
51:16

confident
35:4 45:1
46:12

confidential
43:3

confidentialit
y  25:19

confined
36:12

conflict
12:14

constitute
30:13

constituting
35:5

consumer
18:16

contentious
41:5

continuance
45:8

continue
11:11
17:20

continues
16:17

contrary
34:15 36:5

cooperation
29:3 42:19
43:13,17
44:1 47:2

cooperative
43:2

cooperatively
46:9

coordinating
12:8,11

cord   41:9

corners
  42:24

cost   11:9
  17:4

costs   17:18

counsel
  11:16
  39:24 40:8
  47:20,24
  48:1

counties
  19:7 31:21
  32:7,17
  36:9,10
  44:22

countless
  19:18

country
  10:21 11:9
  20:15
  22:17 29:1

county   10:14
  11:2,23
  13:22
  15:21
  16:14,18,
  21,22
  17:8,9,11,
  15,19,22
  19:13 24:6
  30:6 40:2
  42:13

court   10:18
  14:8,9

15:4 19:1,
20 27:3,7
31:12,22
32:4,7
33:12,13,
17 35:8
37:18
41:18
44:23
47:6,23
48:8

court's
  48:24

courtroom
  10:12,13

creation
  34:16

credit   18:16
  23:8
  46:10,11

criminal
  35:24
  45:7,8

crisis   14:19
  26:11
  27:22,23
  28:15
  29:13,18
  34:14,16

critical
  11:12
  14:18 23:5
  41:22

cross   28:9

current   27:2

Customer
  23:8

cut   42:17

_____

_____ D _____

damage   17:5

damages   17:2

date   21:18
  48:8 50:8

dates   50:7,
  20

day   34:9
  35:21
  42:22
  51:18

days   10:8
  19:18

deal   10:22
  13:8 34:18
  41:15

dealing   16:8

dealt   14:3,4
  18:5,24
  20:24

death   16:16,
  18 33:4

debated
  37:14

decades
  14:17

December
  11:20

13:17

deceptive
  23:12

decide   46:12
  50:14,18

decision
  18:21

decisions
  31:9

dedication
  29:15

defendant
  26:16

defendants
  12:16 13:1
  15:17,20
  17:1,14
  19:3 21:22
  22:8 23:23
  24:7,15
  25:24
  26:4,21,23
  27:7 28:6,
  14 30:14
  31:22
  34:6,23
  35:6 43:14
  45:2,5,11
  46:17 49:5

Defendants'
  14:16

defense   38:6
  39:7 45:8,
  12

delay  45:11

deliberate
 27:24 28:8

deliberately
 27:9 29:23

departments
 28:21

depending
 30:7

depose  15:20

detail  27:21

determination
 29:15

determine
 16:16

determined
 25:16

developing
 29:17

DHHR  19:4

difference
 41:24

directed
 20:18

directly
 11:14

director
 10:18 11:3
 28:20

disagree
 14:15 17:3
 26:19 36:4

47:9

disagreements
 14:12,13

disagrees
 17:4

discovered
 16:16,17

discovery
 12:17
 15:19
 16:20
 17:9,18
 21:21
 22:4,18
 23:9,10
 25:23
 30:22
 31:2,4,8,9
 48:4 49:11
 50:1

discuss
 18:20
 46:7,9

discussed
 27:21

discussion
 24:23
 40:5,15

dismiss  18:6
 19:17,19
 20:24
 21:23 30:9
 41:6,10

dismissed
 14:6

disputes
 49:14

distancing
 40:11

distributor
 19:2 22:8
 25:14
 29:16

distributors
 22:16
 27:5,6

distrust
 43:13

divergence
 34:13

Division
 19:5

docket  36:1

dockets
 19:23

documents
 41:13 51:9

dot  28:8

double  32:14

double-duty
 31:11

dozen  27:6

dueling  31:9

duties  31:4

———————
        E
———————

early  10:17

11:20
 22:11
 51:24

easier
 51:16,18

easy  49:19

efforts
 12:12

egos  46:8

element
 23:13

emerge  47:2

Employer
 33:7

encompass
 47:5

end  12:21
 50:12

Endo  18:7
 21:12

enforcement
 29:22

engagement
 49:23

engaging
 24:16

enormous
 29:15

entered  14:5
 37:21

entertain
 33:16

IN RE: OPIOID LITIGATION
Hearing on 03/13/2020

entire   17:15
  47:3

entirety
  14:7

entities
  32:21

entity   15:21

equitable
  14:16 15:2

establish
  48:8

estoppel
  30:13

evaluate
  40:17

event   30:10

ever-changing
  37:8

evidence
  36:18

exchange
  43:4

exhibits
  41:7

expand   17:24

expedited
  18:5 20:23

exposed
  46:20

expressed
  40:24

extension

41:9

extensive
  21:21

extent   27:11

extraneous
  34:18
  38:24

———————————
        F
———————————

Faber   11:22
  12:8,9
  19:8 30:9,
  11,18 31:6
  35:1 40:3
  48:16

Faber's   31:3

face   22:19

facilities
  11:3

fact   21:5
  22:15

failed   14:22

fall   12:19

federal
  11:21
  12:10,18
  13:4,19
  16:17 19:1
  30:20 32:7
  35:7 40:22
  43:7 47:6

feign   45:15

fell   34:3

felt   37:15

Fields   19:23
  51:5

fight   46:20

figure   18:14

file   13:14,
  15 17:24
  19:11
  21:24
  23:22
  25:24 33:9
  37:11,14,
  16,19 51:7

filed   13:5,
  10 15:18
  18:2,4
  19:13
  21:13,20,
  24 22:6,7,
  10,11,16
  23:24
  24:2,7
  50:10 51:4

filing   19:17
  28:22
  51:10

finality
  25:2

find   39:16

finding
  23:12
  30:11
  50:11

fine   36:21

48:2

finished
  39:17

firmly   43:21

first-party
  33:7

fix   40:13

flights
  51:19

flooded
  17:14

floor   41:9

flow   43:5

focus   18:11
  22:22,24
  23:18 39:2

focused
  29:21

football
  45:14

forthwith
  13:3

forward
  12:11
  31:18
  46:23
  49:24
  50:6,8

frame   12:7

France   38:10

frankly
  14:15

fraud  34:14

free  43:4

freely  43:5

frequently
  47:12

Friday  14:6

front  43:23
  47:6

frustrated
  24:21

frustrations
  40:24

full  27:13

functions
  10:15

fur  43:15

furnishing
  12:2

future  51:16

_____

G

gave  14:1
  45:18

General
  18:3,4,15
  19:4 22:6
  23:22
  24:15
  25:11 27:8
  28:22 46:1

General's
  20:10,17

21:7,10,
13,15
25:12
26:7,9
27:10
28:17
29:21

germane  51:9

give  13:14
  28:6 39:3,
  4 45:24

giving  50:7

good  10:4
  18:17 28:2
  42:9 47:22
  50:22

Good-bye
  52:19

goodness
  25:22

governmental
  32:21

Governors
  39:7,8

grandchildren
  44:9,14

great  43:24

greatest
  44:4

grin  38:7

grounds  41:1

group  29:14

guess  10:23
  34:1,7
  36:4

guilty  24:16

guy  38:20
  39:19

guys  38:22

_____

H

halfway
  46:18

handle  31:11

handled
  49:14

hands  52:18

hanging  46:8

happen  14:23
  23:17 29:2
  44:16,17
  46:16
  52:16

happened
  22:15

happening
  10:21 12:3

happy  20:21
  23:11
  37:17
  39:23
  40:8,14
  49:20

harder  20:7

Harrison
  17:12,15

head  18:23
  38:6,18
  47:20

health  14:18
  18:7 22:9
  27:23
  28:15,20
  34:14,16

hear  20:9,
  20

heard  38:9

hearing
  48:4,8
  52:21

heart  52:14

helpful  11:8

helpings
  31:15

Hey  34:2
  38:22 39:2

high  41:2

honcho  38:6,
  18 47:20

honest  41:23

honestly
  46:9

Honor  20:11,
  16 21:4
  29:9 31:20
  32:9 33:11
  35:13,22

37:13 38:3
47:19
48:14,18
51:24
52:11

hook   46:8

hope   19:16
52:13

hoping   31:10

hospital
16:22
17:10,12,
19 42:14

hospitals
17:11

hours   19:18
24:3

housekeeping
51:2

hundreds
35:5

Huntington
11:24
13:23
16:18
17:8,22
30:6 40:3

**I**

idea   16:23

ideas   43:4

identified
35:18

illogical
16:10

immediately
42:21

impact   19:6

Implicitly
38:8

important
23:1 31:7

inclined
14:14,24
50:13

include   33:2

including
12:5 26:17

increased
33:6

incredible
22:17

incredibly
41:2

incurred
17:19

injury   33:2,
4 45:15

inside   43:5

insurance
33:5,6

intend   30:2

intention
27:10 31:1

intentional

34:16

interference
15:23

interrupt
22:21 29:9

investigate
25:15 28:1

investigating
26:9

investigation
25:17 27:2

investigations
25:20

invitation
47:21
48:24

invited   48:9

involved
29:13,14
44:7,8

involving
21:21

issue   14:14
18:22 19:9
25:12
29:21 39:5
49:12

issued   30:18
33:14
36:21

issues   17:9
19:2
22:18,22

23:10
25:11 40:1
41:21 45:1
49:13
51:11

items   51:3

**J**

Janssen   21:9
23:10
50:10

January
22:11

Jessee   32:9,
13,24
33:2,11
34:5 49:6
51:15

job   43:24

John   11:2
32:14

Johnson   21:9

join   25:24
28:21

judge   10:4
11:15,22
12:8,9,10
13:19 17:3
19:8,21
20:12,22
21:20
22:5,21
23:15
24:4,24

25:21
26:12
27:14,20
30:4,9,11,
18,19,23
31:2,3,6,
10,14
32:6,11,23
33:1,9,12,
14,19,21,
24 34:1,7,
11,17,20
35:1,11,
15,20
36:2,21,23
37:7,9,11,
20 38:2,4,
5,9,11,14,
16,19
39:11
40:3,9,19,
22,23
42:5,7
43:11
44:10,12,
19 45:4
46:15
47:6,7
48:6,10,
11,15,16,
20 49:3,8,
16,21
50:5,17,23
51:1,5,20
52:2,5,6,
12

judges  20:1
28:13

33:12,17
44:7 50:4

judgment
36:11

judicata
18:23 19:2
30:9

judicial
49:23

juries  14:9

jury  28:6
39:3,4
41:22
42:11
43:10
44:10

——————

K

Kanawha
10:14 11:2

Kim  19:22
51:5

kind  11:10
17:18
24:10
32:23
33:1,10

kitchen
34:12

knowledge
18:8

——————

L

lack  43:13

ladies  38:23

languish
14:21

laser  18:11
23:19

laser-light
22:24

late  11:22

law  14:20
19:22
28:11
29:22
42:15
45:8,10

lawsuits
24:9

lawyer  39:6,
7

lawyers
28:24 44:7

leader  46:2

leave  29:11
46:8

left  45:14

legal  14:22
22:18 42:8
44:3

lessen  49:17

Letitia

31:20

letter  31:12
33:10
35:18
37:15,16

level  43:7,
17 44:1

liaison
47:19,24

life  20:2

lifetime
44:5

light  10:20
12:20 13:1

limited
33:16

Linda  20:11,
16

lines  12:6

Linkous  12:1
16:1
47:17,19
48:7,13,
18,22
52:11

listen  10:7

listening
10:10
20:15
38:14,17

litigation
14:5,7
19:22

21:11,16,
19 26:10
29:13,16,
19 31:24
34:13 37:8
41:4 47:3
51:5

local   33:7
47:24

long   11:6

longer   42:14

longest   14:3

looked   12:15
15:11

lot   30:8

lots   47:14

loud   46:5

luck   38:12

——————————
M
——————————

made   33:18

Majestro
39:7

make   11:1
16:7 18:20
22:14
27:19
31:13 34:4
38:21
40:15
51:16
52:16

makes   22:12

28:2 34:2
37:4,24
51:18

making   36:10
42:16 51:6

Mallinckrodt
21:12

manager
19:22 51:6

manufacturer
22:8,20

manufacturers
21:18 27:4
29:17

March   12:22
14:6 50:12

Mark   44:21

Marshall
19:13

Martinsburg
48:11,14
49:18

mass   19:22
21:11,16
31:24 51:5

master   30:20

matter   14:16
15:2 16:14
33:7 46:14
51:2

matters   13:8
46:13

Mckesson

22:9 32:14

MDL   16:17
31:17
32:2,5,16
40:7,23

Meadows   12:1
16:1 38:9,
14,15

Meadows'
32:14

means   14:22
41:19

mediation
42:20,22,
23 43:6

meet   40:8
46:18
49:20

meeting   48:4

memo   16:1

memorandum
12:15

mentioning
35:17

message   46:5

mic   32:12

microphone
11:14,15
20:13
47:18

middle   44:5

Military
19:5

minutes
45:14

mirror   31:3
48:21

misrepresentat
ion   34:14

Missouri
33:19

Moats   10:4,
19 20:12,
22 22:5,21
23:15
24:24
25:21
26:12
27:14 30:4
32:6,11,23
33:1,9,24
34:7 35:15
36:2 37:20
38:4,9,14
39:11
40:19,22
42:7
44:12,19
45:4 48:6,
16,20
49:3,16
50:5,17,23
51:1,20
52:5,6,12

Monday   21:24

monitor
10:11

monthly
47:23 50:3

**IN RE: OPIOID LITIGATION**
Hearing on 03/13/2020                              Index: months..opposed

months  12:17
  17:23
  20:23
  22:12 24:9
  27:15,17
  28:1 29:5
  42:12 46:2

morning
  10:4,17
  51:22 52:7

motion
  13:10,11
  15:18
  18:1,4
  19:11
  37:12,14,
  16 41:10

motions  13:6
  18:5
  19:17,19
  20:24
  21:23
  22:1,3
  30:8 41:6
  48:9 51:8

Motley  20:17

move  27:8
  28:13
  29:23
  46:22

moving  47:16

multidistrict
  21:19

municipalities
  19:7 32:17

municipality
  16:14

_____

          N
_____

names  30:22,
  23

narrowed
  45:3 46:19

narrowing
  45:1

NASBA  33:3

national
  11:6

nationally
  12:3 16:3

nature  22:23

near-identical
  31:22

necks  43:15

neglect
  35:24

negligence
  34:15

negotiate
  48:24

neverending
  24:13

newspaper
  42:21
  43:14

Nice  38:11

night  13:12

nonjury
  14:15 15:1
  35:1

note  12:3
  51:6

notify  37:6

nuisance
  13:18 15:1
  16:5,11
  17:21
  18:11
  22:24
  23:5,14,
  16,20
  24:14,17
  25:21
  26:1,5,14,
  15 30:12
  34:21
  35:17
  36:14,15,
  16 39:3
  46:16,21

number  23:6
  25:10,13

numbers
  42:22 43:5

numerous
  14:1

_____

          O
_____

obligation
  27:8 29:23

obligations
  11:8 28:12

odds  46:14

offer  44:3

office
  20:10,17
  21:10,13,
  15 25:12,
  13,15
  26:7,9
  27:4,10
  28:17
  29:21

official
  29:23

Ohio  25:6

old-fashioned
  39:17

open  16:20
  43:4

openly  46:9

opinion
  41:24

opioids
  17:15
  21:18

opportunity
  15:17
  17:17

oppose
  21:10,15

opposed
  22:23

IN RE: OPIOID LITIGATION
Hearing on 03/13/2020                    Index: option..Polster

39:15 43:1
46:2 50:7

option   10:7

oral   50:13,
14,18

order   14:6
15:10
19:15
30:18
33:14
34:24
36:21
37:2,21
48:17,20,
21

orders   31:3
37:5

ordinance
15:13

ordinances
15:12

originally
21:20

outlast   14:3

outstanding
12:10
21:12

overcome
41:10

overly   43:1
47:14

---

**P**

---

pages   35:5
41:7,13

panel   18:8
19:15
20:20
21:7,8,11,
16 22:2,19
23:4 24:21
25:18
27:3,9,13
29:19,20
31:24
37:6,8
50:2

pare   13:21

participant
26:10
27:13

participate
29:24

parties
29:17

past   13:11
41:4 43:24

Pat   10:19

pause   43:16

payer   33:7

pending   16:3
31:17,23
32:2,5

Pennsylvania
33:20

people   10:6,
7,10 11:3,
8,9,12
20:1,15
42:24
46:11

percent   36:1

period   12:24
28:3 33:16

person   49:14

personal
33:2,3

pertain
24:10

pertaining
11:23 13:6
19:2 26:15

Philippi
36:16

philosophicall
y   39:12

phone   49:14

pick   11:17

picked   42:5

picking
39:12,19

pipeline
43:8

places   16:6

plaintiff
26:16
39:6,8

plaintiff's
41:8

plaintiff-wise
15:21

plaintiffs
13:2,20,24
17:13 23:4
32:17
34:11
35:2,3
42:2 45:20
46:6 52:9

Plaintiffs'
15:16
39:24 40:8
50:3

plan   25:6
29:18

plate   31:14

player   45:14

pleasant
41:14

podium
11:13,16

point   19:10
20:4 45:21

points   22:14
35:14

poll   34:6

Polster
13:19 17:3
21:20
31:14
33:12,14,

19,21
34:1,11,17
35:11
36:21,23
37:7,9,20
40:23
47:6,7

position
14:16 15:2
18:10
28:4,5
34:6,8,9
40:18

positions
35:2 43:4

potential
26:10

power  52:16

practicing
42:15

prefer  37:17

premium  33:5

premiums
33:6

prepare
22:18

prepared
26:2,6

presiding
44:13 50:4

pretty  20:1
31:3 48:21

previously

27:5

prior  19:3

priority
25:13

problem
29:11
51:20

problematic
31:10

proceeded
27:4,5
29:14

proceedings
35:24

process
27:11
30:1,2

profession
20:3 44:3,
15

prohibition
41:19

promptly
22:1

proposal
35:12 40:1
47:10

proposals
40:17

proposed
29:18
39:11

proposing

39:5

protection
18:16 23:8

public  13:18
14:18
15:1,23
16:5,11
18:11
22:24
23:5,13,
16,19
24:14,16
25:21
26:1,4,14,
15 27:22
28:15
30:12
34:13,16,
21 35:17
36:13,15,
16 39:2
46:16,21

punitive
18:15
22:23
38:23

purported
33:5

purpose
42:23
43:12

put  15:10
17:20
20:13
31:14

Q

question
23:2,21
24:1 32:6
50:17

questions
24:5,18,20

R

raised  18:22
23:10

rapidly
27:12

Rarely  41:11

Ravenswood
36:15

reach  45:1

read  40:23,
24 42:21
43:11,14

ready  13:3

reason  22:3
34:24

reasonable
12:7,24

reasons
21:4,6
23:7 47:15

recently
13:5,13
18:4 51:3

receptive
  37:10

recognize
  21:2,23
  22:1 28:14

recognized
  17:5

recognizes
  23:5 25:18

recommendation
  50:3

reconsider
  13:10
  14:24
  15:18
  34:24
  37:23

record  20:14
  26:3,7

recovering
  24:22

redundant
  23:19

regard  13:15

regular
  19:23 48:3
  49:20

regularly
  50:20

related
  13:17 16:6

remain  24:21

remains

39:16

remand  33:13
  40:2,6

remanded
  33:19,21

remark  22:15

remedy  23:5

remember
  33:15,18

reminded
  51:14

remotely
  10:7,10

removed
  32:1,4,5

repeatedly
  40:24

reply  21:24

represent
  20:14
  31:19,21
  32:13
  44:22

representation
s  40:15

request
  31:13 40:6
  51:15

requested
  33:22
  50:11

requests
  13:1

33:16,18

require  23:9

required
  23:10

res  18:23
  19:2 30:9

resolution
  37:24

resolve
  29:11
  34:3,9

resolved
  11:7 22:19
  42:15
  43:19,20

resolves
  30:2

resolving
  47:3

resources
  20:5

respect
  23:16
  28:13

respond
  25:10
  45:23

response
  24:22
  33:10 34:8

responses
  15:16 51:8

responsibility

25:15

rest  46:13

restrictions
  25:19

result  19:20
  43:12

resulted
  40:2

rethink
  43:17

retired
  30:19

retract
  42:24

retreat
  42:24

return  51:19

revisit
  14:14

Rice  20:17

rid  34:17
  35:6,7
  38:23
  39:15

rights  28:13

risk  23:18

road  26:2

room  11:17
  46:7,8

round  46:22

route  14:8

**IN RE: OPIOID LITIGATION**

rule   13:9

ruling   13:11

Russell
  32:10,13

——————————
          S
——————————

sat   29:11

satisfied
  15:16

schedule
  21:3  49:21
  50:6

scheduled
  11:22
  50:20

seat   42:6

seated   42:2

select   14:9

send   13:21

Senior   30:19

sense   16:7
  22:13
  27:19  28:2
  29:12
  34:2,4
  37:4,24
  38:21
  39:11,14
  47:1

served   21:14
  51:3,4

serves   43:12

session
  42:20,22

set   12:4,22
  14:20  28:7
  31:5  50:19

setting
  27:16

settlement
  19:5  22:11
  41:4

settlements
  22:7

severed
  18:12

shake   52:18

shaking
  18:23

shocked   24:4

short   49:10

show   36:13,
  14

showing   16:5

shows   30:11

side   38:6,
  22  40:10
  49:1  51:15

sides   34:1,4

sign-off
  52:19

simple   10:22
  39:5,14

simply   29:20

Singer
  20:11,16
  21:2  22:14
  23:2  24:20
  25:10  26:6
  27:1  29:8

single   15:20
  28:9

sink   34:12

sit   38:21
  39:10,23
  40:11
  45:24
  48:23

sitting
  39:13

situation
  11:6

Sizemore
  24:22

skeletal
  39:16

Skype   11:14
  48:2

slate   22:20

slow   28:8
  45:15,16

smart   20:6
  38:20
  39:19

social   40:11

solution
  25:5  29:4

Solutions
  18:7

someplace
  11:17

sorts   38:20

sound   11:13

southern
  35:17  36:8

sovereign
  29:22

speak   10:12
  11:13,16
  20:18,21
  27:1  32:11
  47:21  49:4

special
  10:14
  30:20

specific
  16:22  17:9
  33:21  51:9

specifically
  16:5

speed   29:24

speedily
  27:8

spent   19:18
  41:12

spoke   21:4

sponte   33:13

staff   11:1,2

stakes   41:2

stand   35:5

standing
 39:18

start   15:7
 45:19  47:1
 51:16,21,
 22,24

started   14:5

state   16:12,
 13,14
 17:15,16
 18:2  19:3
 21:24
 23:3,9
 24:11  25:7
 26:2,17,
 18,24
 27:23,24
 28:19,21
 29:1,10
 31:18,22
 32:4
 33:12,13,
 17  36:10
 41:10
 43:20
 44:2,20
 47:8  48:1

state's   14:8

states   14:9
 16:3  34:22
 36:7

stating
 12:16

status   25:19

27:2  30:19
47:12,23
50:15

statute
 18:16
 28:18

statutes
 15:8,9,15

stay   52:17

step   43:16

stepping
 41:8

stood   43:15

stop   18:13
 22:4

stops   16:13

straw   49:10

streamlined
 23:8,11

strictly
 28:21

strike   28:16

stuck   38:11

studied
 28:18

stuff   34:18
 35:7  38:24
 42:22  43:7
 46:13

sua   33:13

subject   24:8
 40:5

submit   13:12

submitted
 12:16  16:2
 21:3

successful
 40:16

sued   24:16
 26:4

suggested
 25:3

suggestions
 52:14

Supreme
 10:18
 14:8,9
 15:4  19:20
 41:17

Surely   25:22

surprised
 10:6  47:9

swoop   34:3

Swope   12:9
 19:21  24:4
 27:20
 34:20
 35:20
 37:11
 38:2,5,11,
 16,19  40:9
 42:5  43:11
 44:10
 48:10,15
 49:8  51:5
 52:2

Swope's
 11:15

system   10:20
 11:4,13,
 14,21
 14:22

                T

table   11:16
 38:22

taking   19:9

talk   35:16
 40:20  44:9

talked   15:8
 20:22
 30:18,21
 38:1  44:24
 47:22  49:1

team   45:15

Teamsters
 33:7

technology
 10:23

tells   27:14

ten   29:5
 32:20

terms   20:20
 51:18

terrible
 36:8

territories
 16:4

Teva  21:10,
  11,14

text  52:7

texts  52:6

theories
  13:21 42:8

thing  16:16
  17:17
  24:12
  30:5,17
  35:3 37:6
  45:2,9,11
  51:1,14

things
  11:10,19,
  21 19:24
  35:8 43:3

thinking
  30:7

thinks  49:21

thought
  43:16

thoughts
  31:15
  41:14
  47:12,17

thousands
  41:13

throngs
  20:15

thrown  34:12

Thursday
  10:17

Tim  47:19

time  10:8
  11:11
  12:7,24
  15:11
  18:17
  19:10
  20:5,6
  28:2,8
  30:16
  31:11,13,
  15 33:16,
  22 34:5,10
  42:15

timely  49:2

times  43:23

timewise
  12:14

tired  41:18

tobacco
  14:5,6
  41:3

today  11:12
  31:24
  32:14

told  12:12
  13:18,19
  24:1 28:11
  31:14
  34:11
  37:21

torturous
  14:8

total  29:3

32:16,20

track  40:2
  47:16

tracking
  32:15

transfer
  19:15
  21:11,15

travel  48:10

traveling
  11:9 47:15

trial  11:22
  12:4,7,19,
  20,22 13:4
  14:15 15:1
  18:5,18,19
  20:23
  22:12
  26:15
  27:16 28:6
  30:11 35:1
  39:3,4
  41:22
  42:11
  44:10 50:1

trials  35:24

true  52:6

trust  52:13

Twelve  32:1

typical
  17:18

U

Ultimately
  13:24

understand
  10:24
  11:20
  14:11 15:5
  24:5,18
  25:1 26:12
  27:23 28:4
  30:17
  33:24 34:8
  41:2 43:8

understanding
  19:1,8
  37:7,9

unfair  23:13

union  33:6

unite  35:8

united  14:9
  17:12
  35:11

unlimited
  20:5

unreasonable
  15:22
  16:11
  28:17

update  12:2
  21:8

urgency
  29:12

**IN RE: OPIOID LITIGATION**
Hearing on 03/13/2020                    Index: utilize..yesterday

utilize   11:5

─────────────

**V**

─────────────

variables
  30:8

vehicle
  37:17

verdict
  45:12

violate   37:2

Virginia
  13:23 18:3
  19:4 23:3,
  7 25:5
  26:17,18
  29:10
  31:16
  32:8,16
  34:10
  35:18 36:8
  43:22
  46:11 47:3

virus   16:8

Viruses   16:8

─────────────

**W**

─────────────

wait   29:5
  30:2 32:11

wanted   45:3

wanting
  13:12 18:4
  45:14

ways   11:19

Wednesday
  10:16

week   13:11
  19:12 36:3

weeks   13:14
  19:18
  37:18
  41:12
  42:21
  48:5,12
  50:8

weeks'   50:4

weigh   42:10

weight   15:23
  42:11

West   13:23
  18:3 19:4
  23:3,7
  25:5
  26:17,18
  29:10
  31:16
  32:8,16
  34:10
  35:18 36:8
  43:22
  46:11 47:3

whatsoever
  27:15

widespread
  36:18

Wilkes
  30:20,23
  31:2,10
  48:11

49:21

Williams
  13:13
  18:22
  38:6,12,17
  39:23
  40:14,21
  42:3,4
  49:7,9,17
  50:9,22,24
  51:13,14,
  23 52:4

wired   11:14

work   11:1
  20:6,7
  22:17
  28:11,12
  29:1

worked   29:18
  40:4

working
  10:24 11:1
  12:6 15:12
  19:18
  28:23 29:3

world   21:1

worries
  18:12

worry   18:13

wrap   35:9

write   37:16

writs   41:18

wrong   41:23

wrongdoing
  26:9

wrongful
  33:4

─────────────

**Y**

─────────────

year   12:5,
  21 24:11
  27:16 28:7
  29:5 33:14
  42:12 50:7

years   12:5
  14:4,7,17,
  21 22:10
  24:12 28:1
  29:6 41:4
  46:3

yesterday
  16:10
  50:11