**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**THE CITY OF HUNTINGTON,**
        **Plaintiff,**

v.

**AMERISOURCEBERGEN DRUG**                    **CIVIL ACTION NO. 3:17-01362**
**CORPORATION, et al.,**
        **Defendants.**

_____

**CABELL COUNTY COMMISSION,**
        **Plaintiff,**

v.

**AMERISOURCEBERGEN DRUG**                    **CIVIL ACTION NO. 3:17-01665**
**CORPORATION, et al.,**
        **Defendants.**

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO STRIKE**
**DEFENDANTS' NOTICES OF NON-PARTY FAULT**

As Plaintiffs' motion explains, West Virginia's 2015 apportionment statute, W. Va. Code §§ 55-7-13a through 55-7-13d ("2015 Act" or "Act"), does not apply to Plaintiffs' equitable claim for abatement of a public nuisance. As a result, Defendants may not avail themselves of the statute's provision to submit notices of non-party fault. This Court, therefore, should grant Plaintiffs' motion to strike those notices.

In response, Defendants contend that the 2015 Act applies because, in their view, Plaintiffs' claim is a tort action that seeks damages. But Defendants mischaracterize Plaintiffs' requested remedy, both factually and legally, and ignore that Plaintiffs have expressly disclaimed damages in this action and seek only equitable, prospective relief in the form of abatement. Defendants also erroneously argue that Plaintiffs have conceded that their public nuisance claim is time-barred.

I.     **THE 2015 ACT IS INAPPLICABLE BECAUSE PLAINTIFFS SEEK ABATEMENT, NOT DAMAGES.**

Defendants assert that Plaintiffs seek damages rather than abatement, and that Defendants, therefore, were entitled to file notices of non-party fault under the 2015 Act.  But Defendants rely on outdated statements regarding Plaintiffs' claims, ignore Plaintiffs' express abandonment of any damages claims (both compensatory and punitive), and erroneously equate an equitable abatement remedy requiring the payment of money with money damages.

A.     **The 2015 Act Applies To Tort Claims Seeking Damages.**

The plain language of the Act shows that it applies only to claims seeking damages.[1]  As explained in Plaintiffs' motion, the Act limits its provision governing comparative fault and allocation of liability to "*any action* based on tort or any other legal theory *seeking damages* for personal injury, property damage, or wrongful death[.]"  W. Va. Code § 55-7-13a(b) (emphases added).  The specific provision Defendants relied upon in filing their notices of non-party fault states that, in assessing fault, the trier of fact shall consider the fault of all persons who contributed to the "alleged damages."  *Id.* § 55-7-13d(a)(1).  "Damages" are defined, for purposes of that section, to include "all damages which may be recoverable for personal injury, death, or loss of or damage to property."  *Id.* § 55-7-13d(e). The Act further provides that "[e]ach defendant shall be liable only for the amount of compensatory damages allocated to that defendant[.]"  *Id.* § 55-7-13c(a).  And "compensatory damages" are defined as damages to "compensate a plaintiff for economic and noneconomic loss."  *Id.* § 55-7-13b.

The Act's comparative fault and apportionment provisions, therefore, expressly apply only to "action[s] . . . seeking damages," and limit a defendant's liability to compensatory damages allocated to that defendant.  W. Va. Code § 55-7-13a(b); *see also id.* § 55-7-13a(a) (comparative fault defined with

---

[1] *See, e.g.*, *In re Greg H.*, 208 W. Va. 756, 760, 542 S.E.2d 919, 923 (2002) (statutes should be construed based on plain meaning of language used); *see also Worley v. Beckley Mech., Inc.,* 220 W. Va. 633, 638, 648 S.E.2d 620, 625 (2007).

reference to "an alleged personal injury or death or damage to property"); *id.* § 55-7-13b (defining

"defendant" "for purposes of determining an obligation to pay damages"); *id.* § 55-7-13c(a) ("In any

action for damages, the liability of each defendant shall be several only and may not be joint.").[2]

Despite the 2015 Act's plain language and clear emphasis on damages, Defendants argue (Opp.

at 7) that the 2015 Act "applies to 'any action based on tort,'" including a suit for public nuisance,

"irrespective of whether it seeks damages." That reading is inconsistent with the statutory text, which

limits the statute's application to "any action . . . seeking damages[,]" regardless of whether the action

is "based on tort or any other legal theory[.]" W. Va. Code § 55-7-13a(b). Moreover, even if there

were any ambiguity as to the plain meaning of the Act, the other provisions of the statute (cited above),

which repeatedly reference "damages," confirm that Defendants' proposed interpretation, which

would render the phrase "seeking damages" meaningless, cannot be correct.[3] It is unclear how the

Act's provisions, which focus on allocating fault and limiting a defendant's liability for *damages*, could

be applied in any action that does not seek damages.

---

[2] As Plaintiffs explained in their motion to strike, the 2015 Act's predecessor statute, W. Va. Code § 55-7-24(a)(1) ("2005 Act"), similarly applies only to damage claims, and therefore would not authorize Defendants' notices of non-party fault. *See* Doc. 225 at 2, 7. Because Defendants' opposition does not even address the 2005 Act, they have conceded that the 2005 Act does not apply.

[3] *See, e.g., U.S. v. Scott*, 328 F.3d 132, 139 (4th Cir. 2003) ("Where possible, we must give effect to every provision and word in a statute and avoid any interpretation that may render statutory terms meaningless or superfluous."); *see also Miller's Apple Chevrolet Olds-Geo, Inc. v. Goodwin*, 177 F.3d 232, 234 (4th Cir. 1999) ("In considering the meaning of statutory terms, we consider not only their statutorily defined meaning . . . , but also their placement, taking into account rules of grammar, and their context."). In section 55-7-13a(b), the term "any action" is modified by the remainder of that clause: "based on tort or any other legal theory seeking damages for personal injury, property damage, or wrongful death[.]" Defendants' proposed construction—that the act applies to any *tort* claim—is grammatically strained. To achieve that construction, the Legislature would have had to add further punctuation and at least one additional word to section 55-7-13a(b): "In any action based on tort[,] or [on] any other legal theory seeking damages . . . ." This would have made clear what Defendants would prefer the act to mean, *i.e.*, that it applies to *all tort claims* as well as to other actions seeking particular sorts of *damages*. But the Legislature did not do this.

In any event, even if the Act applies to any tort action, Plaintiffs do not concede that public nuisance is a tort.[4]  Indeed, in CT1, Defendants raised this same argument before Judge Polster, urging application of Ohio's apportionment statute, which likewise applied to tort claims seeking compensatory damages.  *See In re National Prescription Opiate Litig.*, No. 1:17-md-2804, 2019 WL 4194272, at *3 (N.D. Oh. Sept. 4, 2019).  Judge Polster rejected that argument, expressing skepticism that public nuisance is a tort, but ultimately concluding that it did not matter, because an equitable suit for abatement of a public nuisance is not a suit for damages.  *Id.* ("[T]he fact that 'nuisance' is sometimes characterized as a variety of 'tort' does not change the fact than an equitable claim to abate a nuisance is not a tort claim seeking compensatory damages. … Unlike tort damages that compensate an injured party for past harm, abatement is equitable in nature and provides a prospective remedy that compensates a plaintiff for the costs of rectifying the nuisance").  And in addressing this same question under the law of West Virginia, the Mass Litigation Panel relied on Judge Polster's analysis.  Ex. 1, *In re: Opioid Litig.*, Civ. No. 19-C-900, Mass Litig. Panel, Order Regarding Trial of Liability for Public Nuisance at 4-5 (Cir. Ct. Kanawha Cty., Feb. 19, 2020).  While Defendants seek to revisit every adverse ruling by Judge Polster, there is no basis in West Virginia law for distinguishing his prior ruling.

Moreover, Defendants' reliance on a footnote (Opp. at 7) in *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 200 W.Va. 221, 245 n.29, 488 S.E.2d 901, 925 n.29 (1997), to support their argument that public nuisance is a tort, is unpersuasive.  Although *Kermit Lumber* stated, without analysis or citation, that "a nuisance is a tort," it then described how the general doctrine of continuing

---

[4] Although public nuisance is included in the Restatement (Second) of Torts, that is not determinative of its status as a tort, particularly considering that the Restatement (First) of Torts deliberately excluded public nuisance on the ground that public nuisance was *not* a tort.  *See* Restatement (First) of Torts, Introduction to Chapter 40, pp. 216-17 (1939) ("A public nuisance is an offense against the State, and as such is subject to abatement or indictment on the motion of the proper governmental agency.  A private nuisance is a tort to a private person, and actionable by him as such.").

torts was "unworkable" in the context of an action to remediate a public nuisance. *Id.  Kermit Lumber*, therefore, suggests that a public nuisance abatement claim does not fit within general tort principles.

## B.     Damages Are Distinct From Abatement Remedies.

The 2015 Act defines "'damages'" to include "all damages which may be recoverable for personal injury, death, or loss of or damage to property, including those recoverable in a wrongful death action." W. Va. Code § 55-7-13d(e); *see also id.* § 55-7-13b (compensatory damages are to "compensate a plaintiff for economic and noneconomic loss"). This definition is consistent with the general understanding that damages are intended to compensate an injured party for its harm or loss. *See, e.g., Brooks v. City of Huntington*, 234 W. Va. 607, 612, 768 S.E.2d 97, 102 (2014) (purpose of damages is to make the injured party whole). Damages are a legal remedy. *See, e.g., Burch v. Nedpower Mount Storm, LLC*, 220 W. Va. 443, 458, 647 S.E.2d 879, 894 (2007); *see also Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) ("an action at law for damages" is "intended to provide a victim with monetary compensation for an injury to his person, property, or reputation").

Abatement, in contrast, is an equitable remedy that provides prospective relief to remediate or abate the nuisance itself, rather than to compensate for any harms or loss caused by the nuisance. In CT1, Judge Polster aptly described the abatement remedy:

> In a traditional public nuisance case, a municipal entity who is harmed by the maintenance of a nuisance will give notice and ask the offending party to abate the nuisance. If the offending party is unable or unwilling to abate, the harmed party can, when appropriate, abate the nuisance themselves or ask the court for the right to do so, and then seek compensation for the costs of abating the nuisance. This compensation is equitable in nature. The goal is not to compensate the harmed party for harms already caused by the nuisance. This would be an award of damages. Instead, an abatement remedy is intended to compensate the plaintiff for the costs of rectifying the nuisance, going forward.

*See In re National Prescription Opiate Litig.*, No. 1:17-md-2804, 2019 WL 4043938, at *1 (N.D. Oh. August. 26, 2019). Judge Polster distinguished between "the forward-looking, equitable remedy of abatement and the rearward-looking remedy of damages." *Id.*; *see also,* Ex. 1, *In re: Opioid Litig.*, Civ.

No. 19-C-900, Mass Litig. Panel, Order Regarding Trial of Liability for Public Nuisance at 9 (Cir. Ct. Kanawha Cty., Feb. 19, 2020) ("the Court finds that Plaintiffs' claims for abatement of public nuisance are equitable claims to which a right to jury trial does not attach").

West Virginia law has long characterized public nuisance abatement actions as equitable. *See, e.g., Town of Weston v. Ralston*, 48 W. Va. 170, 36 S.E. 446, 456 (1900) ("Courts of equity have an ancient and unquestionable jurisdiction to prevent or abate public nuisance[.]"); *McMechen v. Hitchman-Glendale Consol. Coal Co.*, 88 W. Va. 633, 107 S.E. 480, 481 (1921) (court of equity has jurisdiction to abate nuisance).

### C.       Plaintiffs Seek An Abatement Remedy.

Plaintiffs here seek only a prospective, equitable abatement remedy, not damages within the meaning of the 2015 Act.[5]  Plaintiffs have waived all claims for damages (compensatory or punitive), Cabell Doc. 240 at 1, n.1; Cabell Doc. 267 at 2 & n.1, 8-13 & Exh. A, and seek only prospective relief to remediate the public nuisance of the opioid epidemic. *See also* Cabell Doc. 254 at 4 ("Remedy. With respect to these Defendants, Plaintiffs have waived all past and future economic losses sustained by the political subdivisions and seek abatement which is "equitable in nature and provides a prospective remedy that compensates a plaintiff for the costs of rectifying the nuisance.").

Defendants cite (Opp. at 8) Plaintiffs' complaint and various other filings to suggest that Plaintiffs nevertheless seek to pursue damages in this action, such that the 2015 Act could apply.  This argument is contrary to the concession Defendants made one week ago.  Doc. 241 at 1 (Plaintiffs "expressly abandoned any claim for 'past and future economic losses'").  But the fact that Plaintiffs,

---

[5] Defendants argue (Opp. at 6 n.10) that, if the 2015 Act does not apply, "Defendants would retain their right to bring contribution and third-party claims."  That argument, however, has no bearing on whether the 2015 Act does or does not apply.  In any event, this Court can address that issue at the appropriate time, if necessary.  No contribution or third-party claims are currently pending before this Court.

at one time, may have sought damages in addition to abatement relief is irrelevant now that Plaintiffs have abandoned any such claims and have consented to a bench trial on the one remaining claim of public nuisance. *See* Doc. 240 (Cabell County) at 1 n.1 ("Plaintiffs waive past damages for economic losses sustained by the CABELL COUNTY COMMISSION and CITY OF HUNTINGTON."); Tr. 1/27/20 at 9:19-20 ('we have carved this case down to the point where it's an equitable action seeking abatement"); Tr. 3/5/2020 at 21:15 ("it's an abatement action"). As Plaintiffs previously explained to this Court, Plaintiffs have dismissed numerous defendants, claims, and damages to expedite trial. *See* Cabell Doc. 240 at 1, n.1 (notice of voluntarily dismissal of claims except for public nuisance, civil conspiracy, joint liability, and punitive damages). And Plaintiffs offered to dismiss the punitive damages claim if Defendants would agree to a non-jury trial, a deal Defendants ultimately took. *See* Cabell Doc. 267 at 2 & n.1, 8-13 & Exh. A (recognizing that a claim for punitive damages would require a jury trial, but the claim for abatement of public nuisance would not); Doc. 191.

Defendants further contend (Opp. at 8) that, because Plaintiffs' action seeks money, the action is for damages. That is not correct. "The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) (holding that the State's request for a return of funds was for specific relief, rather than damages). Payment of money constitutes damages only if it compensates the plaintiff for an injury or loss. In contrast, payment for costs incurred to abate a public nuisance is equitable relief, rather than damages, as numerous courts have recognized. *See, e.g., In re National Prescription Opiate Litig.*, 2019 WL 4043938, at *1 (payment for costs incurred to abate the nuisance is equitable relief); Ex. 2, *State of Oklahoma ex rel., Hunter v. Purdue,* at 30 Conclusion of Law #23 ("the proper remedy for the public nuisance is equitable abatement" and ordering that State's abatement plan be executed, which required defendants to fund the abatement plan); *Commonwealth v. Purdue Pharma, L.P.,* No. 1884CV01808, 2019 WL 5495716, at *5 (Mass. Super. Oct. 8, 2019)

("an abatement order in a public nuisance case could include a requirement that the defendants expend the money necessary to abate the nuisance"); *NAACP v. Acusport Corp.*, 226 F. Supp. 2d 391, 397 (E.D.N.Y. 2002) (in action seeking funds "to help abate" public nuisance "recovery of costs incurred in abatement are equitable"); *United States v. Wade*, 653 F. Supp. 11, 13 (E.D. Pa. 1984) ("[T]he Commonwealth has elected to seek recovery only of its costs incurred in abating the nuisance. . . . relief [that] is in the nature of equitable restitution."); *People v. ConAgra Grocery Prod. Co.*, 17 Cal. App. 5th 51, 131-32, 227 Cal. Rptr. 3d 499, 568-69 (Ct. App. 2017) (rejecting defendants' argument that abatement order was "actually an order that they pay damages" because "[a]n abatement order is an equitable remedy … An equitable remedy's sole purpose is to eliminate the hazard that is causing prospective harm to the plaintiff. An equitable remedy provides no compensation to a plaintiff for prior harm"); *New York v. West Side Corp.*, 790 F. Supp. 2d 13, 29-30 (E.D.N.Y. 2011) (distinguishing between costs already spent to remediate the public nuisance, which the court characterized as damages, and costs of additional, future clean-up, which were appropriate equitable relief to abate the nuisance).[6]

Defendants argue (Opp. at 13) that Plaintiffs may not seek prospective relief, because Plaintiffs do not seek injunctive relief regarding Defendants' failure to report or halt suspicious orders. Defendants assert that Plaintiffs instead seek costs for addiction treatment and related services, which Defendants contend is compensation for past harm. But Defendants confuse the alleged unlawful conduct (failure to report or halt suspicious orders) with the resulting nuisance (the opioid epidemic). Plaintiffs seek to remediate the nuisance, which includes the costs necessary to do so.[7]  That is

---

[6] Plaintiffs do not dispute that it may be possible for a plaintiff to pursue damages, in addition to abatement, in a public nuisance action.  But, as explained above, Plaintiffs do not do so here.

[7] Defendants likewise suggest (Opp. at 11 n. 20) that recovery of costs to abate a public nuisance are not distinguishable from damages merely because the costs are for prospective relief.   Defendants assert that damages have a prospective component, too, in that they may include future damages.  The fact that damages may have a forward-looking component, however, does not render the prospective

equitable relief, not compensation for a past injury.  Defendants are also mistaken in assuming that all

costs for addiction treatment and services are "damages."  Prospective costs for addiction treatment

and services may be sought as part of the necessary measures to abate or remediate the public nuisance

of the opioid epidemic.  Such costs are akin to the "clean up" costs that were assumed to be

recoverable to remediate the public nuisance in *Kermit Lumber*, 200 W. Va. 245, 488 S.E. 2d 925.

Defendants further contend (Opp. at 7) that abatement is limited to injunctive relief and,

because Plaintiffs do not seek injunctive relief but only the cost of abatement, Plaintiffs' action is not

an equitable abatement action.  Although an injunction is one of the remedies historically available in

in an abatement action, there is no authority (including Defendants' cited cases) that precludes other

forms of equitable relief, such as the costs to remediate the nuisance.  Indeed, equitable relief is

supposed to be flexible.  *See, e.g.*, *CashCall, Inc. v. Morrisey*, No. 12-1274, 2014 WL 2404300, at *19 (W.

Va. May 30, 2014) (memorandum opinion) ("Courts have broad powers to fashion equitable relief. . . .

Moreover, a court's equitable powers assume an even broader, more flexible character when the public

interest is involved in a proceeding in order to secure complete justice.") (citing *Porter v. Warner Holding

Co.*, 328 U.S. 395, 398 (1946)).  Numerous courts, acting in the exercise of their equitable powers, have

allowed for abatement costs regardless of whether the plaintiff sought injunctive relief.  *See, e.g.,* Ex. 2,

(Conclusion of Law, *Oklahoma v. Purdue*); *In re National Prescription Opiate Litig.*, 2019 WL 4043938, at

*1; *Commonwealth v. Purdue,* 2019 WL 5495716, at *5; *ConAgra*, 17 Cal. App. 5th at 131-34, 227 Cal.

Rptr. 3d at 568-71; *San Diego Unified Port Dist. v. Monsanto Co.*, No. 15-cv-578-WQH-AGS, 2020 WL

1479071, at *16 (S.D. Cal. Mar. 26, 2020) (allowing plaintiffs to "proceed[] to trial and attempt[] to

---

equitable remedy of abatement a damages remedy.  Damages, whether future or past, are focused on compensation for an injury or loss to make the injured party whole. Abatement is to rectify the nuisance itself.  *See In re National Prescription Opiate Litig.*, 2019 WL 4043938, at *1.  For example, the cost of providing opioid education programs or treatment centers might be part of the equitable relief to remediate the nuisance, while compensation for injuries or losses, such as individuals' reduced future earnings due to opioid addiction or death, would be future compensatory damages.

prove that abatement is necessary and feasible and that an abatement fund is a proper remedy"); *Cty. of Santa Clara v. Atl. Richfield Co.,* 137 Cal. App. 4th 292, 311, 40 Cal. Rptr. 3d 313, 329 (2006) (allowing public nuisance claim seeking future abatement to proceed); *Ypsilanti Charter Tp. v. Kircher*, 281 Mich. App. 251, 761 N.W.2d 761, 777-78 (2008) (approving payment of expenses incurred in repairing and abating the conditions that caused the public nuisance as an appropriate exercise of the court's equitable authority); *Penn Terra Ltd. v. Dept. of Environmental Resources, Com. of Pa.*, 733 F.2d 267, 278 (3d Cir. 1984) (finding that it was not a money judgment when the state attempted to enforce an injunction to prevent future harm created by an environmental hazard, even though the action would involve the expenditure of money).

Relatedly, Defendants assert (Opp. at 10-12) that Plaintiffs err in relying on *McMechen v. Hitchman-Glendale Consol. Coal Co.*, 88 W. Va. 633, 107 S.E.480 (1921), because here, unlike in *McMechen*, Plaintiffs did not request injunctive relief, so abatement costs cannot be awarded as incidental to the injunctive relief. But as already explained, this Court has authority, acting as a court of equity, to provide an abatement remedy, which may include payment of the forward-looking costs to abate the public nuisance. *See, e.g., In re National Prescription Opiate Litigation*, 2019 WL 4043938, at *1. Such a remedy is not damages, as Defendants presume here. Thus, there is no need for injunctive relief as a jurisdictional hook for the court to exercise its equitable authority.

Moreover, Defendants' attempts to distinguish *United States v. Price* and *ConAgra* are unavailing. *See* Opp. at 12-13. Although *Price* affirmed the district court's exercise of discretion to deny a preliminary injunction, it pointed out that the lower court had taken an "unduly restrictive view of its remedial powers." 688 F.2d 204, 211 (3d Cir. 1982). It was in this context that it pointed out the difference between damages, which "are intended to compensate a party for an injury suffered or other loss[,]" and an abatement remedy that would require funds. *Id.* at 212. "The funding of a diagnostic study in the present case, though it would require monetary payments, would be preventive

10

rather than compensatory. The study is intended to be the first step in the remedial process of abating an existing but growing toxic hazard which, if left unchecked, will result in even graver future injury[.]" *Id.* Similarly, here, any payment of funds by Defendants would be not to compensate Plaintiffs for their past damages or expenditures, but to remediate the opioid crisis.

Far from being "aberrant" the court's decision in *ConAgra* is one of numerous courts allowing for the payment of funds—whether in conjunction with an injunction or not—as part of a court's equitable remedies in abating a nuisance. *See supra*, 7-8 (citing cases). And, as in *ConAgra*, the sole purpose of the abatement fund Plaintiffs seek is to eliminate the hazard that is causing prospective harm to the Plaintiffs. 17 Cal. App. 5th at 132, 227 Cal. Rptr. 3d at 569. Here, that is the opioid crisis.

## II. THE 2015 ACT IS INAPPLICABLE BECAUSE PLAINTIFFS' NUISANCE CLAIM AROSE PRIOR TO MAY 25, 2015.

Defendants concede that the 2015 Act became effective on May 25, 2015, and applies only to "causes of action arising or accruing on or after the effective date of its enactment."[8] And Defendants do not dispute that under West Virginia law a claim accrues when breach of duty results in injury.[9] As Plaintiffs' nuisance claim first arose or accrued before May 25, 2015, the 2015 Act is simply inapplicable.

To avoid the obvious conclusion that the express effective date renders the 2015 Act inapplicable here, Defendants ignore whether the 2015 Act applies and instead argue that the statute of limitations bars any claim accruing before the Act's effective date. Defendants' construction of the term "accrue" in this context is incorrect, however, and they misstate and misapply the applicable statute of limitations.

---

[8] Doc. 256 at p. 4 (quoting W. Va. Code § 55-7-13d(f) (2015)).

[9] Doc. 225 at p. 11 (citing cases).

The law clearly distinguishes between when a cause of action accrues and when the statute of limitations begins to run.  As perhaps the most obvious example, when a minor is injured, his or her cause of action accrues at the time of injury, yet the statute of limitations on that cause of action will not begin to run until the minor reaches the age of majority.  *See, e.g., Albright v. White*, 202 W.Va. 292, 301, 503 S.E.2d 860, 869 (1998); W. Va. Code § 55-2-15.  No one would seriously argue that a minor injured in 2010 was subject to the 2015 Act, even if they did not bring suit until after its effective date.  This distinction is not one "conjured" by Plaintiffs; it is a distinction established in West Virginia law,[10] which Defendants simply ignore.[11]

The Legislature is presumed to be aware of judicial interpretations of legal terms of art, and when it enacts statutes using such terms, it is presumed to adopt those established interpretations.[12] And the Legislature commonly ties a law's applicability to accrual, as distinguished from the statute of limitations.[13]

---

[10] Doc. 225 at p. 11, n. 41 (citing cases); *see also Worley v. Beckley Mech., Inc.*, 220 W. Va. 633, 637, 648 S.E.2d 620, 624 (2007) ("The primary issue in this case is whether  . . . mental illness must occur at the same time the cause of action *accrues* in order to *toll* the commencement of the running of the statute of limitations." (emphasis added)); syl. pt. 5, *McKinney v. Fairchild Int'l, Inc.*, 199 W. Va. 718, 720, 487 S.E.2d 913, 915 (1997) ("Where a choice of law question arises about whether *the tolling provisions* of West Virginia, W.Va. Code, 55-2-18 [1985] *or* of the place *where the claim accrued* should be applied, the circuit court should ordinarily apply West Virginia law, unless the place *where the claim accrued* has a more significant relationship to the transaction and the parties.") (emphasis added).

[11] Because of this distinction, Plaintiffs are not judicially admitting anything that is relevant to (let alone supportive of) Defendants' statute of limitations motion.

[12] Syl. pt. 3, *CB&T Operations Co. v. Tax Com'r of State*, 211 W. Va. 198, 200, 564 S.E.2d 408, 410 (2002) ("When the Legislature enacts laws, it is presumed to be aware of all pertinent judgments rendered by the judicial branch.  By borrowing terms of art in which are accumulated the legal tradition and meaning of centuries of practice, the Legislature presumably knows and adopts the cluster of ideas attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.").

[13] *See* W. Va. Code Ann. § 55-2-15 ("If any person to whom *the right accrues* to bring any personal action . . . shall be, at the *time the same accrues*, an infant or insane, the same may be brought within the like number of years after his or her becoming of full age or sane . . . except that it shall in no case be brought after twenty years from the time *when the right accrues*" (emphasis added)); W. Va. Code § 55-2A-2 ("The period of limitation applicable to a claim accruing outside of this state shall be either that

In addition, the 2015 Act's express effective date is evidence of legislative intent. The general rule in West Virginia is that a statute is presumed to operate prospectively.[14] Thus, the Legislature's choice to include an effective date demonstrates an intent to provide expressly that the law applies only prospectively.[15] And, by selecting accrual as the trigger, the Legislature presumably intended that application of the Act be a simple legal determination, turning on whether the date of accrual is after the effective date, and without regard to whether the statute of limitations should be tolled or the harms from the culpable conduct occurred over an extended period.[16]

Defendants' only answer to this clear statutory language is to restate their arguments on the statute of limitations. For the reasons stated in Plaintiffs' statute of limitations opposition, those arguments fail there, and also fail here.[17] Moreover, Defendants' suggestion that, in an action for damages, a new cause of action accrues with each successive invasion of interest, is inapplicable in this equitable abatement action.[18] Either way, the 2015 Act does not apply temporally to the Plaintiffs' public nuisance action seeking abatement.

---

prescribed by the law of the place where the claim accrued or by the law of this state, whichever bars the claim."); W. Va. Code § 56-6-31(b)(1) ("the rate of prejudgment interest is two percentage points above the Fifth Federal Reserve District secondary discount rate in effect on January 2, of *the year in which the right to bring the action has accrued*" (emphasis added)).

[14] W. Va. Code § 2-2-10(bb).

[15] Other 2015 civil justice changes did not include similar effective date provisions, which led to litigation over the applicability of the amendments. *Martinez v. Asplundh Tree Expert Co.*, 239 W. Va. 612, 618, 803 S.E.2d 582, 588 (2017) (answering certified questions regarding whether the 2015 enactments of W. Va. Code § 55-7-29 and W. Va. Code § 55-7E-3 were retroactive).

[16] *Grove v. Myers*, 181 W. Va. 342, 349, 382 S.E.2d 536, 543 (1989) ("By providing . . . that prejudgment interest on special or liquidated damages is to be computed from the date the cause of action accrued, the legislature implicitly decided to avoid the complications inherent in calculating prejudgment interest on each element of special or liquidated damages from the respective dates on which each element was incurred.").

[17] *See* Plaintiffs' Opposition to Defendants' Motion for Summary Judgement Regarding Statute of Limitations at Part I.

[18] *Id.* at Part II(B).

## CONCLUSION

For the foregoing reasons, the 2015 Act does not apply to Plaintiffs' equitable claim for abatement of public nuisance.  Plaintiffs therefore respectfully request that this Court strike Defendants' notices of non-party fault filed pursuant to the Act.

Dated: April 6, 2020                                         Respectfully submitted,

**THE CITY OF HUNTINGTON**

/s/ *Anne McGinness Kearse*
Anne McGinness Kearse (WVSB No. 12547)
Joseph F. Rice
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: 843-216-9000
Fax: 843-216-9450
akearse@motleyrice.com
jrice@motleyrice.com

Linda Singer
David I. Ackerman
**MOTLEY RICE LLC**
401 9th Street NW, Suite 1001
Washington, DC 20004
Tel:  202-232-5504
Fax:  202-386-9622
lsinger@motleyrice.com
dackerman@motleyrice.com

Charles R. "Rusty" Webb (WVSB No. 4782)
**THE WEBB LAW CENTRE, PLLC**
716 Lee Street, East
Charleston, West Virginia 25301
Telephone: (304) 344-9322
Facsimile: (304) 344-1157
rusty@rustywebb.com

**CABELL COUNTY COMMISSION**

/s/ *Paul T. Farrell, Jr.*
Paul T. Farrell, Jr. (WVSB Bar No. 7443)
**FARRELL LAW**
422 Ninth Street, 3rd Floor (25701)
PO Box 1180
Huntington, West Virginia 25714-1180
Mobile: 304-654-8281
paul@farrell.law

/s/ *Anthony J. Majestro*
Anthony J. Majestro (WVSB No. 5165)
**POWELL & MAJESTRO, PLLC**
405 Capitol Street, Suite P-1200
Charleston, WV 25301
304-346-2889 / 304-346-2895 (f)
amajestro@powellmajestro.com

Michael A. Woelfel (WVSB No. 4106)
**WOELFEL AND WOELFEL, LLP**
801 Eighth Street
Huntington, West Virginia 25701
Tel. 304.522.6249
Fax. 304.522.9282
mikewoelfel3@gmail.com

14

**CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2020, a copy of the foregoing Reply in Support of Plaintiffs'

Motion to Strike Defendants' Notices of Non-Party Fault was filed electronically.  Notice of this filing

will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this

filing through the Court's system.

/s/Anthony J. Majestro
Anthony J. Majestro (WVSB 5165)