# EXHIBIT 1

EFiled: Feb 19 2020 10:31AM EST
Transaction ID 64739341



IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

IN RE: OPIOID LITIGATION                                 Civil Action No. 19-C-9000

THIS DOCUMENT APPLIES TO ALL CASES

ORDER REGARDING TRIAL OF LIABILITY FOR PUBLIC NUISANCE

Pursuant to the Court's *Order Regarding Rulings Issued During December 6, 2019 Hearing and Status Conference* (Transaction ID 64520672), the parties filed legal memoranda regarding whether they are in agreement with the Court's proposal to conduct a non-jury, Phase I trial on the sole issue of whether there is liability for public nuisance under West Virginia law, which trial can be conducted while the parties are conducting discovery on the issues of damages and abatement of public nuisance. *Plaintiffs' Joint Memorandum of Law Regarding Non-Jury, Phase I Nuisance Trial* (Transaction ID 64547564) and *Submission of Defendants' Liaison Counsel for 12/12/19 Order* (Transaction ID 64547685). The Court has reviewed these memoranda.

Plaintiffs agree with the Court's proposed non-jury, Phase I trial on the issue of liability for public nuisance. They contend the plan promotes judicial economy, maximizes the resources of the Court and the parties, allows a speedy trial on this issue to be conducted within the next year and, unlike jury trials, allows breaks between trial days to accommodate the Mass Litigation Panel's existing trial docket. Plaintiffs' Joint Mem. p. 4[1] Plaintiffs propose that discovery be limited to liability for public nuisance until after the Phase I trial has been conducted so any

---

[1] Plaintiffs in *The City of Huntington v. AmerisourceBergen, et al.,* Civil Action No. 3:17-01362 (*City of Huntington*), and *Cabell County Commission v. AmerisourceBergen, et al.,* Civil Action No. 3:17-01665 (*Cabell County*), pending before the Honorable David A. Faber in the United States District Court for the Southern District of West Virginia, are also seeking an expedited non-jury trial of their representative public nuisance claim against Defendants AmerisourceBergen Corporation, Cardinal Health, Inc., and McKesson Corporation. *Plaintiffs' Memorandum in Support of Nonjury Trial,* filed on February 6, 2020. Defendants in those cases "have not excluded the possibility of waiving their jury trial right and consenting to a bench trial on a reasonable schedule and after appropriate discovery . . . ." Footnote 2, page 2, *Defendants' Memorandum Concerning Right to Jury Trial,* filed on February 6, 2020.

Defendant judicially determined not to have contributed to the alleged public nuisance is not subject to extensive and expensive damages discovery, and so there is an the opportunity to coordinate discovery with the *Cabell County* and *City of Huntington* cases pending in federal court. *Id.* pp. 2-3   Plaintiffs further propose that discovery commence on the issues of damages and abatement immediately after the Court reaches a decision in Phase I. *Id.*

Defendants do not consent to the Court's proposal.  Defendants contend they have the right to refuse a liability-only trial on the equitable issues, pursuant to Syllabus Point 6 of *Camden-Clark Mem. Hosp. Corp. v. Turner,* 212 W. Va. 752, 575 S.E.2d 362 (2002).  They suggest that, with respect to Plaintiffs' public nuisance claims, the first step is to test and resolve the legal basis for Plaintiffs bringing those claims.  Submission of Defendants p. 1

Having reviewed the above-referenced memoranda, the Presiding Judges **FIND** that a Phase I, non-jury trial on the issue of liability for public nuisance is appropriate for the following reasons.

Rule 39(a) of the West Virginia Rules of Civil Procedure provides that:

> When trial by jury has been demanded as provided in Rule 38 or a timely motion or request therefor has been made under subdivision (b) of this rule, the action shall be designated upon the docket as a jury action.  The trial of all issues so demanded or requested shall be by jury, unless (1) the parties or their attorneys of record by written stipulation made in open court and entered into the record, consent to trial by the court sitting without a jury or (2) *the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the State.*

(Emphasis added).  Plaintiffs have demanded a jury trial in their Complaints.  Therefore, pursuant to Rule 39(a), either the parties must consent to trial by the court sitting without a jury, or the Court must find that a right of trial by jury does not exist under the Constitution or statutes of the State.

Although Rule 2 of the West Virginia Rules of Civil Procedure has abolished the

distinction between law and equity, the right to a jury trial still depends on whether one had the right to a jury trial prior to adoption of the Rules. *Warner v. Kittle,* 167 W.Va. 719, 725, 280 S.E.2d 276, 280 (1981). As the Supreme Court of Appeals of West Virginia stated in *E. Shephersdstown Developers, Inc. v. J. Russell Fritts, Inc.*:

> The merger of law and equity, effected by Rule 2, W.Va. R. Civ. P., abolished the *procedural* distinctions between law and equity. However, it did *not* extend the right of jury trial to civil cases that, before the merger, would have been in equity. In Syl. Pt. 1, *W. Va. Human Rights Commission v. Tenpin Lounge, Inc.,* 155 W. Va. 349, 211 S.E.2d 349 (1975), decided long after the merger of law and equity in West Virginia, this Court made it clear that, "[s]ince equitable issues are generally determined by a court without a jury, one is not entitled, as a matter of right under the law, to a jury trial of such issues . . ."

183 W. Va. 691, 694-95, 398 S.E.2d 517, 520-521(1990) (emphasis in original). Because the plaintiff was seeking the equitable remedy of specific performance, the Supreme Court found the case was one in equity to which the right of jury trial had never attached. *Id.* 183 W. Va. at 695 and 398 S.E.2d at 521. Consequently, "*[a]ll of the findings of fact, as well as the conclusions of law, were for the trial court to make.* The trial court did not need to appoint the advisory jury, nor did it need to listen to the advisory jury." *Id.* (emphasis added).

West Virginia has long held that courts of equity have jurisdiction to prevent or abate public nuisance:

> *Courts of equity have had an ancient and unquestionable jurisdiction to prevent or abate public nuisance* . . . . "Courts of equity interfere to restrain and prevent public nuisances threatened or in progress, as well as to abate those already existing." "In regard to public nuisances, the jurisdiction of courts of equity seems to be of a very ancient date, and has been distinctly traced back to the reign of Queen Elizabeth. *** An indictment lien to abate the nuisance and punish the offender, but an information also lies in equity to redress the grievance, by way of injunction."

*Town of Weston v. Ralston*, 48 W. Va. 170, 36 S.E. 446. 456 (1900) (emphasis added) (citations omitted). As stated in *Mugler v. Kansas*:

> The ground of this jurisdiction . . . is the ability of courts of equity to give a more

3

speedy, effectual, and permanent remedy than can be had at law. They cannot only prevent nuisances that are threatened, and before irreparable mischief ensues, but arrest or abate those in progress, and, by perpetual injunction, protect the public against them in the future; whereas courts of law can only reach existing nuisances, leaving future acts to be the subject of new prosecutions or proceedings. This is a salutary jurisdiction, *especially where a nuisance affects the health, morals, or safety of the community.* Though not frequently exercised, the power undoubtedly exists in courts of equity thus to protect the public against injury.

123 U.S. 623, 673 (1887) (emphasis added) (citations omitted).

Likewise, in the context of private nuisance, the West Virginia Supreme Court held that "[a] court of equity, having jurisdiction in such case to abate the nuisance, may assess, and enter a decree for, such damages, whether the defendants be jointly or separately liable therefor, taking care to decree them on the basis of the legal liability of the parties; but the jurisdiction so to do is merely incidental to the exercise of the jurisdiction to abate the nuisance." Syllabus, *McMechen v. Hitchman-Glendale Consol. Coal Co.,* 88 W. Va. 633, 107 S.E. 480, 481 (1921). As the Supreme Court explained, "[i]t is well established that equity, having taken jurisdiction to abate a nuisance, may in the same suit assess and decree the resulting damages. Its diverse remedies enable it to award the damages either jointly or separately, according to legal liability." *Id.* 107 S.E. at 483 (internal citations omitted).

As Judge Dan Polster has recognized:

[T]he fact that "nuisance" is sometimes characterized as a variety of "tort" does not change the fact that an equitable claim to abate a nuisance is not a tort claim seeking compensatory damages. Defendants also argue that what Plaintiffs' label as a claim for "abatement costs" is in fact a "claim for damages." (*See* Doc. #: 2540 at 8-9). This point is not well-taken for the reasons explained in the Court's recent Order denying Defendants' motion to exclude Plaintiffs' abatement experts. Unlike tort damages that compensate an injured party for past harm, abatement is equitable in nature and provides a prospective remedy that compensates a plaintiff for the costs of rectifying the nuisance.

*In re Nat'l Prescription Opiate Litig.,* No. 1:17-MD-2804, 2019 WL 4194272, at *3 (N.D. Ohio

4

Sept. 4, 2019).

West Virginia statute provides further support for the Court's equitable jurisdiction to abate a public health nuisance. Although no party has raised it, W. Va. Code § 16-3-6 (1977) authorizes county commissions or municipalities to apply to a circuit court for an injunction to restrain, prevent or abate a public health nuisance:

> **§ 16-3-6. Nuisances affecting public health.**
>
> The state director of health or any county or municipal health officer shall inquire into and investigate all nuisances affecting the public health within his jurisdiction; and the said director or any such officer *or the county commission of any county or any municipality is authorized and empowered to apply* to the circuit court of the county in which any such nuisance exists, or to the judge thereof in vacation, *for an injunction forthwith to restrain, prevent or abate such nuisance.*

(emphasis added).

In *Berkeley County Com'n v. Shiley,* the West Virginia Supreme Court held that, "W. Va. Code 16-3-6 authorizes public officials, including a county commission, to apply for circuit court injunctions *to abate public health nuisances*. County commissions are not authorized to petition for injunctions against any other public nuisances." Syl., 170 W. Va. 684, 685, 295 S.E.2d 924, 925 (1982) (emphasis added). Finding no evidence the public health was affected in any way by concerts, the Supreme Court held that the county commission was not entitled to an injunction preventing a promotor from promoting, holding, or allowing concerts on his parents' farm. *Id.* The Supreme Court found its interpretation of § 16-3-6 in *Shiley* to be consistent with its prior interpretation of the statute in *Board of Com'rs of Ohio County v. Elm Grove Mining Co.,* 122 W. Va. 442, 95 S.E.2d 813 (1940). *Id.*

In *Elm Grove*, county commissioners brought an action under W. Va. Code § 16-3-6 to abate sulfur emissions from a burning gob pile that were causing area citizens to have respiratory ailments. The Supreme Court discussed the version the statute in effect at the time and held:

5

> Under Code, 16–3–6, which authorizes proceedings by municipalities or county courts to abate "nuisances affecting the public health," a circuit court, at such instance, is warranted, *under its authority in equity*, in restraining the adding of combustible substances to a burning pile of refuse, which pile has come into existence as an incident to the operation of a mine for the production of bituminous coal, the fact appearing from the record that sulphur dioxide emanating from the burning refuse *is detrimental to public health.*

Syl. Pt. 2, 122 W. Va. 442, 95 S.E.2d 813 (emphasis added). Thus, the trial chancellor, "was clearly warranted by affirmative evidence *in finding that the fumes* from the burning gob pile *constitute a nuisance affecting the public health*, within the meaning of the statute, Code, 16-3-6." *Id.* 95 S.E.2d at 817 (emphasis added).

The Supreme Court discussed the effect of an affirmance of the trial chancellor's injunctive decree on the coal mining industry, and determined that:

> *public health comes first*. Even in as useful and important industry as the mining of coal, an incidental consequence, such as here involved, cannot be justified or permitted unqualifiedly, if the health of the public is impaired thereby. Notwithstanding a business be conducted in the regular manner, yet if in the operation thereof it is shown by facts and circumstances to constitute a nuisance affecting public health "no measure of necessity, usefulness or public benefit will protect it from the unflinching condemnation of the law."

*Id.* (emphasis added) (citations omitted).

Based on its reading of W. Va. Code § 16-3-6 and the cases interpreting the statute, the Court finds that it has authority to conduct a Phase I, non-jury trial on the issue of liability for a public health nuisance.

Defendants' contend they have the right to refuse a non-jury trial on the issue of liability for public nuisance, based on Syllabus Point 6 of *Camden-Clark Mem. Hosp. Corp. v. Turner,* 212 W. Va. 752, 575 S.E.2d 362 (2002). However, the Court finds Defendants' reliance on *Camden-Clark* misplaced. In *Camden-Clark,* the Supreme Court recognized the original proceeding against the employee was a proceeding in equity to obtain a temporary restraining order preventing the employee from entering the employer's premises, but expressed concern the

6

employee had not had the opportunity to present her counterclaims for wrongful discharge and abuse of process to a jury. Recognizing the potential danger of letting requests for injunctive relief interfere with jury trials *in the context of employment cases,* because an employer could, in theory, always seek an injunction before taking action adverse to an employee, thereby greatly reducing the likelihood a jury would ever hear the employee's potential counterclaims, the Supreme Court held that, "if a civil action contains both a request for injunctive relief and a legal claim that would ordinarily be tried before a jury, a court must allow a jury to hear the legal claim before ruling on the question of permanent injunctive relief." Syl. Pt. 6, *Camden-Clark,* 212 W. Va. at 760-61, 575 S.E.2d at 370-71.

Unlike the employment law case in *Camden-Clark,* the Opioid Litigation concerns a national public health emergency, as recognized by the U.S. Department of Health & Human Services:

> As a result of the consequences of the opioid crisis affecting our Nation, on this date and after consultation with public health officials as necessary, I, Eric D. Hargan, Acting Secretary of Health and Human Services, pursuant to the authority vested in me under section 319 of the Public Health Service Act, do hereby determine that *a public health emergency exists nationwide.*

*Determination That a Public Health Emergency Exists,* October 26, 2017 (emphasis added). Furthermore, West Virginia Governor Jim Justice has issued a statement agreeing with President Trump that, "we have a national public health emergency when it comes to opioid use . . . . I have been saying all along that we have an emergency in West Virginia with opioid and drug addiction. This devastating scourge is taking the lives of hundreds of our citizens every year." *Gov. Justice Issues Statement on President Trump's National Public Health Emergency,* August 11, 2017.

Given the complexity of the Opioid Litigation, the number of parties involved, and the magnitude of the public health emergency recognized in West Virginia and the United States, it

7

is imperative to conduct a trial on the issue of liability for public nuisance in West Virginia as soon as the parties have conducted reasonable discovery on this issue. A Phase I, non-jury trial on the issue of liability for public nuisance will not only maximize the Court's and the parties' resources, but will also promote judicial economy, allow a relatively speedy trial on this issue, and unlike a jury trial, will allow the Presiding Judges to take breaks in order to accommodate their circuit court trial dockets.

*Beacon Theatres, Inc. v. Westover,* 359 U.S. 500 (1959) does not alter the Court's finding. In that case, the United States Supreme Court held that "only under the most imperative circumstances can right to a jury trial of legal issues be lost through prior determination of equitable claims." Here, the right to a jury trial of legal issues is not lost. Rather, the Court can try the equitable issue of liability for public nuisance before the parties go to the significant expense of time, money and effort to determine their legal issues. If the Court finds there is no liability for public nuisance as to one or more Defendants, there is no need to proceed with the time and expense of Phase II discovery regarding the cost of abatement and damages. Only Defendants adjudged liable for public nuisance will proceed with Phase II discovery and trial.

In *Witteried v. City of Charles Town*, the Supreme Court rejected a similar argument that, before a circuit court can order permanent injunctive relief regarding an alleged nuisance, a jury has to find that a nuisance exists:

> While petitioners admit that this Court has stated that "[g]enerally, there is no right to a jury trial in a proceeding in which a permanent injunction is sought," *Weatherholt v. Weatherholt*, 234 W. Va. 722, 727, 769 S.E.2d 872, 877 (2015), they contend that the use of the word "generally" indicates that the rule is not absolute. They argue that before the circuit court could order injunctive relief as to alleged nuisance conditions on petitioners' property, a jury had to find that a nuisance exists. Petitioners' argument is undercut by this Court's discussion in *Weatherholt*, wherein we explained why there is generally no right to a jury trial in an action seeking a permanent injunction:
>
>> This is because at common law, a proceeding in which a permanent

8

> injunction was sought was heard in a court of equity, *and there is no right to a jury trial in a matter traditionally heard at equity ...* Further, "[s]ince equitable issues are generally determined by a court without a jury, one is not entitled, as a matter of right under the law, to a jury trial of such issues ...." Syl. pt. 1, in part, *Human Rights Commission v. Tenpin Lounge, Inc.,* 155 W. Va. 349, 211 S.E.2d 349 (1975). In addition, this Court has indicated that "[w]here already, at the time of the adoption of the Constitution, equity exercised jurisdiction in a certain matter, the provision of the Constitution guarantying trial by jury does not relate to or give right to trial by jury in suits in equity involving such matter." Syl. pt. 7, *Davis v. Settle,* 43 W.Va. 17, 26 S.E. 557 (1896); *see also Bishop Coal Co. v. Salyers,* 181 W.Va. 71, 77, 380 S.E.2d 238, 244 (1989) ("Suits in equity were tried without juries."); *Marthens v. B & O Railroad Co.,* 170 W.Va. 33, 38 n. 2, 289 S.E.2d 706, 712 n. 2 (1982) ("[T]hose issues heretofore decided in equity should today be tried to the judge alone."). Finally, as noted above, "the power to grant or refuse ... a permanent injunction ... ordinarily rests in the sound discretion of the trial court [not a jury], according to the facts and the circumstances of the particular case...." Syl. pt. 11, *Stuart,* 141 W.Va. 627, 92 S.E.2d 891. Therefore, we conclude that the circuit court did not err in denying the petitioners a jury trial on the respondent's suit for a permanent injunction.
>
> *Weatherholt* at 727, 769 S.E.2d at 877. Just as we found in *Weatherholt* and for the reasons set forth therein, we find that the circuit court did not err in denying petitioners a jury trial in the underlying permanent injunction action.

2018 WL 2175820 *5 (W.Va. 2018) (unpublished opinion) (emphasis added). Although *Wittereid* is an unpublished opinion, the Court finds the Supreme Court's reasoning in that case to be equally applicable here. Because the Court finds that Plaintiffs' claims for abatement of public nuisance are equitable claims to which a right to jury trial does not attach, a Phase I, non-jury trial on the issue of liability for public nuisance in West Virginia is appropriate.

For the reasons set forth above, the Court **ORDERS** a Phase I, non-jury trial on the issue of liability for public nuisance will be conducted as soon as practicable, after a reasonable period of discovery on this issue is conducted. The Court will discuss scheduling the Phase I trial and the timeframe for discovery regarding liability for public nuisance at the Status Conference scheduled at 10:00 a.m. on March 13, 2020. *Order Scheduling Status Conference* (Transaction ID 64683385).

9

All objections and exceptions to the Court's Order are noted and preserved for the record.

A copy of this Order has this day been electronically filed and serve on all counsel of record via File & Serve*Xpress*.

It is so **ORDERED.**

**ENTERED:**  February 19, 2020.                    /s/ Alan D. Moats
                                                    Lead Presiding Judge
                                                    Opioid Litigation


                                                    /s/ Derek C. Swope
                                                    Presiding Judge
                                                    Opioid Litigation