UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**THE CITY OF HUNTINGTON,**
    Plaintiff,

v.

**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**
    Defendants.

CIVIL ACTION NO. 3:17-01362

---

**CABELL COUNTY COMMISSION,**
    Plaintiff,

v.

**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**
    Defendants.

CIVIL ACTION NO. 3:17-01665

### PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING STATUTE OF LIMITATIONS

### INTRODUCTION

Two dispositive questions of law require denial of Defendants' motion. There is simply no statute of limitations that applies in this case. In *Dunn v. Rockwell,* the Supreme Court held there is no statute of limitations for a claim sounding in equity.[1] And, in *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, the Supreme

---

[1] Syl. pt. 6, 689 S.E.2d 255 (W. Va. 2009).

Court effectively held there is no statute of limitations for an unabated temporary nuisance.[2] The response to Defendants' motion is that simple.

Defendants ignore *Dunn* completely. Regarding *Kermit Lumber,* Defendants first attempt to obfuscate its relevance by hiding their attempts to distinguish it in the midst of other arguments irrelevant to its application here, and they then ignore the fact that these same arguments were rejected both by Judge Polster, this Court's Special Master, and the West Virginia state court trial and appellate judges hearing West Virginia opioids cases.

Both of these cases are dispositive of the Defendants' motion and mandate its rejection.

## ARGUMENT

**I. THERE IS NO STATUTE OF LIMITATIONS FOR CLAIMS SEEKING EQUITABLE RELIEF.**

In *Dunn v. Rockwell,* the Supreme Court reemphasized decades of precedent and reaffirmed its prior holdings: "Our law is clear that there is no statute of limitation for claims seeking equitable relief."[3]

Plaintiffs are seeking equitable relief. Defendants continue to argue that, because Plaintiffs are seeking money from Defendants, that their remedy constitutes damages not abatement.[4] Defendants are simply wrong. The equitable remedy of abatement is distinct from damages. For the reasons set forth in Part I of Plaintiffs'

---

[2] Syl. pt. 11, 488 S.E.2d 901 (W.Va. 1997).

[3] 689 S.E.2 at 266; *see also id.* at n.9 (citing cases).

[4] Doc. 241 at 23-25.

Reply in Support of Plaintiffs' Motion to Strike Defendants' Notices of Non-Party Fault (which Plaintiffs incorporate herein), the prospective remedy of abatement sought by Plaintiffs does not transform a claim for equitable abatement into a damage claim merely because money is required to fund the abatement remedy.

Defendants concede that "the statute of limitations does not bar the government from enjoining a continuing nuisance,"[5] but they fail to explain why this same theory does not apply to other equitable remedies. And Plaintiffs are not seeking future damages or "reimbursement for public expenditures."[6] As Defendants point out, Plaintiffs have "expressly abandoned any claim for past and future economic losses."[7]  Instead, Plaintiffs have made it clear that they are seeking abatement which is equitable in nature and provides a prospective remedy that compensates a plaintiff for the costs of rectifying the nuisance.[8]

---

[5] Doc. 241 at 23.

[6] *Id.* at 24.

[7] *Id.* at 1 (internal quotations omitted).

[8] Doc. 125.  Defendants' citations to statements Judge Polster made during the MDL pretrial conferences, Doc. 241 at 24, n.61, are taken out of context. Judge Polster, having bifurcated abatement from the scheduled jury trial on RICO and nuisance liability, had excluded evidence of abatement. (Sept. 16, 2019 Hr'g Tr.) at 10-11.  The issue then became whether Plaintiffs were entitled to present to the jury evidence of future damages with respect to their RICO claim or whether they were limited to past damages. *Id.* at 12-14. In the end, the Court did not rule because the issue "hasn't really been fronted in all the issues that I've had to decide," and asked the parties to address it in their trial briefs. *Id.* at 14.  In the Motion in Limine granted by the Court on October 15, 2019, the Defendants sought preclusion of future damages in the RICO case arguing that they would create a risk of "double recovery" and because they had never been disclosed. MDL Doc. 2661 at 2-5 & n.4.  The motion did not address what was recoverable in an abatement action other than a conclusory throwaway argument.  *Id.* at 3, n.2. ("Defendants maintain their position that the prospective

3

Defendants examples are inapposite. Funding future treatment and education to eradicate the epidemic Defendants wrought is not damages because such funding is not compensation for an injury to Plaintiffs; rather it is the cost that must be incurred to reverse the conditions causing an interference with the public's right to health and safety. Put differently, future damages, a legal remedy, seek to compensate Plaintiffs for the cost of injuries that will continue into the future—such as, for example, lost tax revenue—whereas abatement, an equitable remedy, addresses the costs of actions to prevent or lessen such future harms, in this case actions that will reduce or eliminate the ongoing opioid crisis in Plaintiffs' communities. Abatement expenditures represent what would need to be spent, *whether by Plaintiffs or other entities*, to remediate the nuisance. The fact that there may be common elements between certain types of future damages and an abatement plan does not transform abatement into damages, any more than baseball becomes football when their seasons overlap.

Thus, based on the clear holding in *Dunn,* Defendants' motion should be rejected.[9]

---

compensation plaintiffs seek for public nuisance is not recoverable as "abatement."). In any event, Judge Polster did not rule on the scope of available abatement remedies for the second phase of the trial which had not even been set.

[9] While *Dunn* noted that laches may be available in equity, 689 S.E.2d at 267, n.11, the Defendants have not raised it. Moreover, laches is inappropriate in an action by a public entity to abate a nuisance. *People v. ConAgra Grocery Prod. Co.*, 17 Cal. App. 5th 51, 135, 227 Cal. Rptr. 3d 499, 571 (Ct. App. 2017) (laches does not apply to bar public plaintiffs' abatement claim in public nuisance action); *City of Lee's Summit v. Browning*, 722 S.W.2d 114, 116 (Mo. Ct. App. 1986) ("as against a public nuisance, especially one affecting the public health, peace and comfort, the doctrine of laches is not applicable." (quoting *Potashnick Truck Serv. v. City of Sikeston*, 351 Mo. 505, 514, 173 S.W.2d 96, 101 (1943)); *Clearview Land Dev. Co. v. Com.*, 15 Pa. Cmwlth. 303, 309, 327 A.2d 202, 205 (1974) (refusing to find laches in

## II. THERE IS NO STATUTE OF LIMITATIONS FOR AN UNABATED TEMPORARY NUISANCE.

Even if Defendants were correct in their assertion that Plaintiffs are seeking legal as opposed to equitable remedies—though they are not—Plaintiffs' public nuisance claims would still not be subject to any statute of limitations. This is so because a separate West Virginia Supreme Court decision, *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, expressly holds that the statute of limitations does not run on an unabated public nuisance.

In *Kermit Lumber,* the Supreme Court addressed the commencement of the one-year statute of limitations for a public nuisance in an action brought by the West Virginia Department of Environmental Protection eight years after it learned Kermit Lumber was improperly handling hazardous waste at its facility.[10] The Court noted that nuisance cases in West Virginia were characterized as either permanent or temporary for the purposes of analyzing whether an action is time-barred.[11] A permanent nuisance is a "type of nuisance where by one act a permanent injury is done being at once necessarily productive of all the damage which can ever result from it."[12] By contrast, temporary nuisances involve "continuing or repeated injury."[13] The statute of limitations for a permanent nuisance begins to run

---

public nuisance abatement action where Commonwealth was attempting to enforce duties or obligations under its police power).

[10] 488 S.E.2d at 905-06.

[11] *Id.* at 922-24.

[12] *Id.* at 922–23 (quoting 58 Am.Jur.2d Nuisances § 27 (1989)).

[13] *Id.* at 923.

5

immediately, while, when the nuisance is classified as temporary, "suits may be maintained as damage goes on."[14] *Kermit Lumber* found that the public nuisance the DEP alleged there was an unabated and temporary one for which the statute of limitations would not run until the nuisance was abated.[15] *Kermit Lumber* governs here and is dispositive.

### A. Plaintiffs' claims arise out of a temporary nuisance.

The first step in the *Kermit Lumber* analysis is to determine whether the nuisance alleged is one that is temporary or permanent.[16] In making this determination here, it is important to recognize that this is a governmental action seeking to abate a public nuisance. A "public nuisance is by nature continuous or recurring."[17] That is because "[a] public nuisance action usually seeks to have some harm which affects the public health and safety abated."[18]

In *Kermit Lumber,* the Court found unremediated hazardous waste a temporary nuisance in a governmental abatement action holding that that "[t]he object of a public nuisance action is to abate or stop the harm to the 'public health, safety and the environment[,]' which will continue until the hazardous waste is removed."[19] The Court emphasized that the proper focus in a governmental action

---

[14] *Id.*

[15] *Id.* at 925.

[16] *Id.* at 923.

[17] *Id.* at 925.

[18] *Id.*

[19] *Id.* at 925, n.29.

6

seeking abatement is the continuing harm to the public interest rather than when "the acts of the persons in placing the hazardous waste in the soil" stopped.[20] The Court was careful to distinguish private nuisance cases as "less than helpful" because those cases focus on individual harms rather than on harms to "the public health, safety and environment."[21]

Defendants do not contend that the harms to the public health and safety here are abated or unabatable.[22] Thus, the nature of the public nuisance here is indistinguishable from the unremediated hazardous waste in *Kermit Lumber*. Like hazardous waste, the impact of the opioid epidemic continues to spread.[23] And like the hazardous waste in *Kermit Lumber,* the opioid epidemic can be remediated.[24]

---

[20] *Id.*

[21] *Id.* at 924, n.27.

[22] *SER AmerisourceBergen Drug Corp. v. Hummel,* No. 19-0204, Petition for Writ of Prohibition at *2 ("There is no doubt of the need to address the national opioid crisis…") (Exhibit 1).

[23] *See, e.g.* Joint Complaint at ¶ 1179 (graphically detailing the spread of crime from drug offenses from 2004-2016); *id.* at ¶ 1180 (detailing the spread of calls to the Huntington Fire Department to address drug overdoses); *id.* at ¶ 1183 (needles are scattered across the Plaintiffs' communities' parks, sidewalks, and streets) *id.* at ¶ 1184 (blood-borne infectious diseases tied to IV drug use once rare now common throughout Huntington); *id.* at ¶ 1185 (dramatic increase in HIV in Cabell County primarily among IV drug users); *id.* at ¶ 1188 (need for increases in services by Cabell-Huntington Health Department to opioid abdicated population); *id.* at ¶ 1189 (residential treatment centers struggle to keep pace with demand for addiction treatment services); *id.* (residential recovery facility had 100 beds and waitlist of up to six months; outpatient treatment center serves 1,000 patients daily and has waitlist of 18 months); *id.* at ¶ 1196 (at Cabell County Hospital, one out of every five babies delivered has been exposed to drugs before they were born; state's incidence rate of NAS increased over 2009-2012 from 13.90 to 24.50 per 1,000 population and was estimated to be 49.9 in 2016); *id.* at ¶ 1196-97 (from 2014-2016 opioids account for 20% of decline in labor force participation among men and 25% of decline among women).

[24] *See Cabell County Resiliency Plan* (Jan. 2020) (Exhibit 2). Plaintiffs offer this plan as one example of how treatment, education, and other short-term and long-term strategies can abate the damage the Defendants have wrought on their community. Plaintiffs will offer a

The "ability to abate test" is one of the classic tests for characterizing a nuisance as temporary.[25] It is met here, and the public nuisance is a temporary one.

## B. Because the harms created by the public nuisance caused by the Defendants remain unabated, the statute of limitations has not yet begun to run on Plaintiffs' abatement claim.

With a public nuisance that is temporary (and thus abatable), the statute of limitations does not begin to run until the nuisance is abated. Thus, as *Kermit Lumber* held in syllabus point 11, when "a public nuisance action is brought in order to remediate" harms to public health, public safety, and the environment, the statute of limitations does not begin to run, "until the harm or endangerment to the public health, safety and the environment is abated."[26]

Ignoring *Kermit Lumber,* Defendants focus on their nuisance-causing conduct rather than the continued existence of the public health crisis that resulted from that conduct.[27] This analysis misses the mark when the action involves an unabated public nuisance, where the focus is *"not on the offending party's interest in continuing the nuisance, but on the type of harm suffered."*[28]

---

formal abatement plan and identify experts pursuant to the Court's scheduling order deadlines.

[25] *Id.* at 923, n.26.

[26] 488 S.E.2d at 901.

[27] Doc. 241 at 18-21.

[28] 488 S.E.2d at 923 (quotation omitted; emphasis in original).

8

The cases cited by Defendants are cases bought by private parties sounding in private nuisance,[29] or other non-nuisance theories,[30] precisely the sort of cases *Kermit Lumber* found distinguishable and "less than helpful" because they focus on private damages rather than the public interest in abating harm to the public's interest in health and safety.

The only case cited by Defendants that even mentions *Kermit Lumber* is *Taylor v. Culloden Pub. Serv. Dist.*, which involved a private, rather than a public, nuisance. *Taylor* illustrates that the analysis for such a private nuisance case differs from that in a public nuisance action. The *Taylor* Court determined that the damage claims in *Taylor* were a continuing tort involving "distinct instances of injury result[ing] from the nuisance, as opposed to a singular injury."[31] From that, the Court concluded that the two-year statute of limitations in subsection 12(a) does not run in a private nuisance action seeking damages for a temporary nuisance "until the date of the last injurious act or when the acts constituting the nuisance have been abated or discontinued."[32]

*Taylor* recognized the *Kermit Lumber* rule for an unabated *public nuisance,* that the one-year statute of limitations does not begin to run until the "harm or

---

[29] *Rhodes v. E.I. du Pont de Nemours & Co.*, 657 F. Supp. 2d 751 (S.D. W. Va. 2009); *Taylor v. Culloden Pub. Serv. Dist.*, 591 S.E.2d 197 (W. Va. 2003).

[30] *Roberts v. W. Virginia Am. Water Co.*, 655 S.E.2d 119 (W.Va. 2007) (individual negligence action); *Handley v. Town of Shinnston*, 169 W. Va. 617 (W.Va. 1982) (same); *Graham v. Beverage*, 566 S.E.2d 603, 610 n. 13 & 611 (W.Va. 2002) (individual negligence and malicious interference claim).

[31] 591 S.E.2d at 205.

[32] *Id.* at syl. pt. 6.

9

endangerment to the public health, safety and the environment is abated."[33] *Taylor* declined to consider whether plaintiffs should have been permitted to amend their complaint to assert a public nuisance claim, holding "there is no need for Appellants *to seek the benefit*" of the *Kermit Lumber* rule, given its conclusion that the statute of limitations did not present a bar.[34]

Defendants point out that the *Kermit Lumber* Court explained that "[a] different public nuisance action may warrant a different analysis" citing the "general rule" that the focus should supposedly be on conduct not injury.[35] But, the Defendants give no reason for distinguishing the facts here from those in *Kermit Lumber* or why the rule there should not apply.

Defendants' argument that their conduct in the distribution of opioids over the years was distinct and separate so that it could not constitute a continuing injury was explicitly rejected by Judge Polster in the MDL.[36] More importantly, however, Defendants' focus on their conduct as the statute of limitations trigger in a public nuisance action seeking abatement was explicitly rejected in *Kermit Lumber*.[37] The Court did not even address whether Kermit Lumber's <u>conduct</u> was continuous.

---

[33] *Id.* (quoting *Kermit Lumber*).

[34] *Id.* (emphasis added).

[35] Doc. 241 at 20 (quoting *Kermit Lumber*).

[36] MDL Doc. 2568 at 23 (Exhibit 3) (finding "persuasive" MDL Plaintiffs' response that Defendants' conduct involved "a decades-long marketing and distribution scheme that continues unabated, satisfying the tolling requirement that alleged acts cannot be said to occur on any particular day, but [rather] over a series of days or years" and recognizing that "Courts have allowed the statute of limitations to be tolled when there is a longstanding and demonstrable policy of the forbidden activity." (citations and internal quotations omitted)).

[37] 488 S.E.2d at 925, n.29.

Instead, in the very next sentence following the sentence quoted by Defendants concerning the "general rule", the Court rejected that "general rule" as "*unworkable* in the context of a public nuisance action" where the aim is to correct a condition "which is endangering the 'public health, safety and the environment.'"[38]

Defendants continue to argue that Plaintiffs are seeking the legal remedy of money damages rather than the equitable remedy of abatement. While the argument is simply wrong,[39] it is irrelevant to the *Kermit Lumber* analysis as evidenced by the fact that the State in *Kermit Lumber* was actually seeking "compensatory and punitive damages."[40] By establishing that public nuisance is both abatable and unabated, Plaintiffs meet *Kermit Lumber's* definition of a temporary and continuing nuisance for which the statute of limitations had not yet began to run.

Judge Polster came to the same conclusion and held that no statute of limitations applies to an unabated public nuisance under Ohio law.[41] Interpreting West Virginia law, both Judge Hummel, in Marshall County, and the West Virginia Mass Litigation Panel have each applied the holdings in *Kermit Lumber* and found that no statute of limitations applied to public entities' public nuisance claims.[42] The

---

[38] *Id.* (emphasis added).

[39] *See* Part I Plaintiffs' Reply in Support of Plaintiffs' Motion to Strike Defendants' Notices of Non-Party Fault.

[40] 488 S.E.2d at 921.

[41] MDL Doc. 2568 at *5 (Exhibit 3) ("A well-settled rule in Ohio is that no length of time can legalize a public nuisance and that therefore the statute of limitations does not run against an action to abate such a nuisance.") (quoting 72 Ohio Jur. 3d Nuisances § 22).

[42] *See Brooke County Commission, et. al. v. Purdue Pharma L.P., et. al.*, Nos. 17-C-248 at *6 (W.Va. Cir. Ct. Marshall County Dec. 28, 2018) (Exhibit 4); *Monongalia County, et al. v.*

11

Supreme Court unanimously denied writs seeking to challenge both of these decisions.[43]

In this very case, Special Master Wilkes also denied Defendants' motion to compel Plaintiffs to respond to discovery to identify the date and manner in which Cabell County first learned prescription opioids were being abused or diverted within its geographic boundaries.[44] In doing so, he found that "West Virginia law provides the statute of limitations on nuisance actions does not begin to run until the nuisance is abated."[45] Notably, in *Kermit Lumber,* the Supreme Court was not troubled that the State first learned of the contamination and Kermit Lumber's actions in 1987 but did not file its lawsuit until 1995.[46]

---

*Purdue Pharma L.P.*, et al., Nos. 18-C-222-236 (Exhibit 5) (adopting and applying the reasoning and rulings from *Brooke County*).

[43] *See State ex rel. Cardinal Health v. Hummel,* No. 19-0204 (W.Va. June 4, 2019) (Exhibit 6); *State ex rel. AmerisourceBergen Drug Corp. v. Moats,* No. 19-1051 (W.Va. January 30, 2020) (Exhibit 7).

[44] Doc. 248, Discovery Ruling 1 at *2-3. (Exhibit 8).

[45] *Id.* (citing *Kermit Lumber, supra*); *see also id.* at *2-3 ("[W]hat Cabell County has disclosed is satisfactory, in light of the fact that *as a matter of law* the statute of limitations doesn't begin to run until the nuisance is abated." *Id.* (emphasis added).

[46] 488 S.E.2d at 905-06.

\* \* \* \*

Eight West Virginia jurists sitting on four trial and appellate courts have rejected these Defendants' arguments that *Kermit Lumber* does not govern these cases.[47] This Court should do the same and find that there is no statute of limitations running on this unabated temporary nuisance.

## CONCLUSION

The Defendants' motion should be denied.[48]

---

[47] Finally, in a footnote, Defendants note that West Virginia nuisance cases all supposedly involve property rights, an argument refuted by the various West Virginia courts that have addressed the opioid crisis, *see supra,* at n. 42, and a distinction explicitly rejected by several decisions of courts across the country. *See, e.g., In re Nat'l Prescription Opiate Litig.*, 2019 WL 2477416, at \*14 (N.D. Ohio Apr. 1, 2019) (rejecting limitation of nuisance to property rights under Montana law), *report and recommendation adopted in relevant part,* 2019 WL 3737023; *In re Nat'l Prescription Opiate Litig.,* 2019 WL 2468267, at \*28 & n.38 (N.D. Ohio Apr. 1, 2019) (same; interpreting Oklahoma law and citing numerous opioid cases), *report and recommendation adopted in relevant part*, 2019 WL 3737023; *City of Bos. et al. v. Purdue Pharma, L.P. et al. (& a companion case),* No. 1884CV02860, 2020 WL 977056, at \*5 (Mass. Super. Jan. 31, 2020) (same; Massachusetts law).

[48] The facts recited by the Defendants and the other arguments they raise, while irrelevant to the resolution of the instant motion, are not new to this litigation. In connection with the CT1 proceedings in the MDL, the Defendants also sought summary judgment based on the statute of limitations raising the same issues as they did here. MDL Doc. 1896. Plaintiffs filed a voluminous response which Plaintiffs incorporate herein. MDL Doc. 2179. Judge Polster, after reviewing the record, denied the motion. MDL Doc. 2568. These documents have all been designated as part of the record in this action on remand. Doc. 165-2 Exh. A. (Docket submitted with Joint Designation of the Record on Remand). Judge Polster's conclusions with respect to when Plaintiffs knew or should have known of their claims sufficient to commence the running of the statute of limitations, Doc. 2568 at 15-17, and his conclusion regarding the doctrine of fraudulent concealment, id. at 21-22, are law of the case, and equally applicable here as the elements of those doctrines are materially the same in West Virginia. *Dunn,* 689 S.E.2d at 265. If these two doctrines are applied to this case, they create factual disputes for trial.

Dated: April 6, 2020

**THE CITY OF HUNTINGTON**
/s/ *Anne McGinness Kearse*
Anne McGinness Kearse (WVSB No. 12547)
Joseph F. Rice
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: 843-216-9000
Fax: 843-216-9450
akearse@motleyrice.com
jrice@motleyrice.com

Linda Singer
David I. Ackerman
**MOTLEY RICE LLC**
401 9th Street NW, Suite 1001
Washington, DC 20004
Tel: 202-232-5504
Fax: 202-386-9622
lsinger@motleyrice.com
dackerman@motleyrice.com

Charles R. "Rusty" Webb (WV No. 4782)
**THE WEBB LAW CENTRE, PLY**
716 Lee Street, East
Charleston, West Virginia 25301
Telephone: (304) 344-9322
Facsimile: (304) 344-1157
rusty@rustywebb.com

Respectfully submitted,

**CABELL COUNTY COMMISSION**
/s/ *Paul T. Farrell, Jr.*
Paul T. Farrell, Jr. (WVSB Bar No. 7443)
**FARRELL LAW**
422 Ninth Street, 3rd Floor (25701)
PO Box 1180
Huntington, West Virginia 25714-1180
Mobile: 304-654-8281
paul@farrell.law

/s/ *Anthony J. Majestro*
Anthony J. Majestro (WVSB No. 5165)
**POWELL & MAJESTRO, PLLC**
405 Capitol Street, Suite P-1200
Charleston, WV 25301
304-346-2889 / 304-346-2895 (f)
amajestro@powellmajestro.com

Michael A. Woelfel (WVSB No. 4106)
**WOELFEL AND WOELFEL, LLP**
801 Eighth Street
Huntington, West Virginia 25701
Tel. 304.522.6249
Fax. 304.522.9282
mikewoelfel3@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2020, a copy of the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT REGARDING STATUTE OF LIMITATIONS** was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Anthony J. Majestro*