Case 3:17-cv-01362   Document 302   Filed 04/09/20   Page 1 of 12 PageID #: 6121

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CITY OF HUNTINGTON,**

    **Plaintiff,**

**v.**                                                     **Civil Action No. 3:17-01362**

**AMERISOURCEBERGEN DRUG CORPORATION, et. al,**

    **Defendants.**

**AND**

**CABELL COUNTY COMMISSION,**

    **Plaintiff,**

**v.**                                                     **Civil Action No. 3:17-01665**

**AMERISOURCEBERGEN DRUG CORPORATION, et. al,**

    **Defendants.**

### NON-PARTY WEST VIRGINIA OFFICES OF THE INSURANCE COMMISSIONER'S REPLY TO DEFENDANTS' RESPONSE TO MOTION TO QUASH SUBPOENAS

Non-Party West Virginia Offices of the Insurance Commissioner ("WVOIC") files this reply in support of its Motion to Quash two subpoenas served upon it by Defendants McKesson Corporation, Cardinal Health, Inc., and AmerisourceBergen Drug Corporation (collectively, "Defendants"). Contrary to the Defendants' assertions in its April 6, 2020 response (Dkt. No. 281), WVOIC's Motion to Quash (Dkt. No. 259) should be granted because the subpoenas fail to provide a reasonable time to comply, are unduly burdensome, and seek statutorily confidential information.

### 1. There are Numerous Active Disputes Regarding the Subpoenas

The Defendants inaccurately assert that there is no active dispute regarding their overly broad and burdensome subpoenas. As demonstrated in WVOIC's recent correspondence to McKesson's counsel, there remain numerous active disputes regarding the subpoenas. *See* Ex. A (April 7, 2020 letter to J. Wakefield). Further, WVOIC's Motion to Quash is appropriate per Rule 45 of the Federal Rules of Civil Procedure.

As grounds for the denial of WVOIC's Motion to Quash, the Defendants cite to their March 31, 2020 letter to the WVOIC. *See* Ex. A to Defendants' Response. However, all modifications proposed by Defendants fail to counterbalance the valid grounds argued in WVOIC's Motion to Quash and Supporting Memorandum.

The March 31, 2020 correspondence did nothing to alleviate the unreasonable time for compliance. Rule 45(c)(3)(i) of the Federal Rules of Civil Procedure provides that the Court "*must* quash or modify a subpoena that fails to allow a reasonable time to comply." (emphasis added) The Covid-19 pandemic continues to drastically impact WVOIC's operations. As of this date, all employees continue to work remotely or have been placed on administrative leave. Many employees have been diverted from their usual functions to perform tasks related to Covid-19's heavy impact on the insurance industry. The offer to extend the document production deadline 18 days from March 31, 2020 until April 18, 2020 does not resolve the logistical hurdles impacting WVOIC.

Even absent the extraordinary circumstances of an unprecedented and evolving pandemic, the Defendants have requested a massive amount of information that necessitates a large coordination by the WVOIC and involves many divisions within the WVOIC. Under the current subpoenas, this compilation and review could take three to four months and would entail one

employee devoting 50 percent of their time and several others devoting portions of their work day. Due to the broad definition of "You," the WVOIC will also have to consult with numerous third party administrators and insurance carriers to determine what potentially responsive materials they may have that would fall within the care, control, and custody of the WVOIC.

The Defendants' proposal also fails to mitigate burdens caused by the overly broad 24-year "Relevant Time Period." Specifically, the Defendants proposed limiting WVOIC's "initial compliance" to a time period of 2010 to present while reserving the right to later seek responsive documents dating back to 1996. *See* Ex. A to Defendants' Response. Breaking down the compilation of data into two time tranches would result in additional burden being placed upon the WVOIC. Therefore, the Defendants' lack of a firm commitment on the applicable time frame rendered its proposed modification inconsequential.

The Defendants' efforts to narrow the scope of the subpoenas' commands also fail to mitigate the substantial burden imposed on the WVOIC. Prioritization of commands does not equate to the narrowing of a subpoena. Further, the "priority document requests" focused on the very materials that will necessitate the review of potentially millions of pages of claim files. In addition, despite the fact that one of the categories in the subpoena refers to "claims data," the demand is actually for "all documents" as opposed to aggregate data. Further, the failure to provide specific search terms result in a difficult data compilation process.

### 2. Relevancy of Information Sought in Subpoenas

The Defendants next argue that the information sought by their subpoenas is highly relevant to their defenses. However, relevance does not trigger a pencil's down event. The Defendants failed to address legal authority indicating that subpoenas seeking relevant information can be quashed where compliance is unduly burdensome or where the potential harm caused by

production outweighs the benefit. *See In re: Modern Plastics Corporation*, 890 F.3d 244, 251 (6th Cir. 2018), cert. denied, 139 S. Ct. 289, 202 L. Ed. 2d 136 (2018) (Courts must "balance the need for discovery against the burden imposed on the person ordered to produce documents," and the status of that person as a non-party is a factor). Furthermore, there is a heightened standard for obtaining documents from a non-party. *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180 (4th Cir.), *cert. denied*, 140 S. Ct. 672, 205 L. Ed. 2d 438 (2019).

The subpoenas issued to non-party WVOIC should be quashed because compliance is unduly burdensome and the potential harm outweighs the benefit under the balancing standard. The WVOIC serves as the state regulator of the insurance industry, the administrator of various workers' compensation funds, the State Agency Workers' Compensation Program, and oversees the workers' compensation litigation adjudicatory bodies. *See* Ex. B (Second Affidavit of Erin K. Hunter). The WVOIC performs these wide ranging functions with limited resources. WVOIC's duties have become more complicated during the current and evolving pandemic, as evidenced by the fact that the WVOIC has issued ten (10) Insurance Bulletins and six (6) Emergency Orders within the past month. *Id.* By means of comparison, the WVOIC generally issues two (2) to three (3) Bulletins or Informational Letters per year, and has not issued any emergency order since 2017, and has not issued a statewide emergency order since the 2016 floods. *See* www.wvinsurance.gov/covid-19. Stated another way, to divert resources from the State of West Virginia Covid-19 response during a State of Emergency and during a declared Insurance Emergency to comply with the overly broad subpoenas issued as part of a private civil action would not best serve the interests of the public or of state government.

Even absent issues related to the ongoing pandemic, the subpoenas are unduly burdensome on non-party WVOIC. As detailed above, the compilation and review of the materials in the broad

4

43-category document subpoena and the preparation of numerous witnesses for deposition, will take considerable staffing and involves employees in multiple divisions within the agency.

### 3. Time Period for Compliance Remains Unreasonable

The Defendant next asserts that the subpoenas should not be quashed because their time for compliance is reasonable. McKesson cites to a Louisiana District Court case, which held that "the time allowed for compliance seems to be judged on the underlying circumstances." *Freeport v McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc*., 2004 WL 595236, at *9 (E.D. La. Mar. 23, 2004).

The WVOIC asserts that "underlying circumstances" support the conclusion that compliance by April 18, 2020 or anytime soon thereafter is unreasonable and oppressive. WVOIC currently has a remote based workforce that lacks full access to potentially responsive materials. Further, the WVOIC is triaging Covid-19 issues on a daily basis. Therefore, the underlying circumstances support that compliance with the broad subpoena by April 18, 2020 or soon thereafter constitutes an unreasonable time for compliance and the subpoenas must be quashed or modified consistent with Rule 45(d)(3) of the Federal Rules of Civil Procedure.

While WVOIC understands that the discovery deadline for this matter is April 30, 2020, this litigation originated in 2017 and it was the Defendants' own strategy to serve a non-party with overly broad subpoenas during a pandemic. Even allowing compliance on the last day of discovery would afford the WVOIC only 44 days to comply and, based upon current projections, it is unlikely that the OIC's physical offices will reopen to full staffing until after April 30, 2020. *See* Ex. B (Second Affidavit of Erin K. Hunter). The WVOIC should not be unduly burdened due to the belated nature of the Defendants' subpoenas.

### 4. Defendants' Efforts to Narrow Scope

The Defendants' fourth argument in opposition to WVOIC's Motion to Quash is that its subpoenas are not unduly burdensome because it has "worked to narrow the document subpoena's scope and relevant time period and to extend the response date." *See* Defendants' Response to Motion to Quash at 4.  As discussed above, the Defendants have offered no actual modifications to their oppressive subpoenas and have instead merely prioritized the documents they want in an initial production. Further, the very documents that the Defendants have prioritized are those like "claims data" that do not request actual data, but instead documents within claims files. Therefore, this will require the manual review of an enormous volume of claims files.

The Defendants have also mischaracterized their narrowing of the time scope. In actuality, the Defendants made no firm commitment on narrowing the relevant time frame and reserved the right to later seek materials during the entire 24-year period in the subpoena's command.

The Defendants' fourth argument further addressed its demand for subpoenaed documents to be provided utilizing a very specific production method.  While the Defendants asserted that they will discuss further adjustments regarding the mechanisms for production, they declined to address WVOIC's argument that Rule 45(e)(1)(A) of the Federal Rules of Civil Procedure provides that the WVOIC may produce any responsive documents as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the subpoena. Per Rule 45 of the Federal Rules of Civil Procedure, the recipient of the subpoena may choose the manner in which to produce documents. The Defendants' demanded mechanisms for production - including document unitization, use of a specific file naming convention, and inclusion of objective coding and extracted metadata – remain inconsistent with the Federal Rules of Civil Procedure.

### 5. Confidentiality Issues

The Defendants' fifth argument in opposition to the Motion to Quash is that the production of confidential protected health information is governed by relevant Protective Orders. However, the Defendants' response disregards the numerous confidentiality statutes provided in WVOIC's Motion to Quash and Supporting Memorandum regarding provision of the WVOIC's investigation materials. *See* W. Va. § Code 33-2-19; W. Va. Code § 33-41-7; W. Va. Code § 23-1-4. For example, West Virginia Code § 33-41-7 unambiguously provides that "documents, materials, or other information in the possession or control of the office of the Insurance Commissioner that are provided…in an investigation of alleged fraudulent acts related to the business of insurance shall be confidential by law and privileged…" *See also* W. Va. Code § 33-2-19, which provides similar confidentiality provisions. The statute further states that these documents "shall not be open to public inspection, *shall not be subject to subpoena, and shall not be subject to discovery or admissible in evidence in any private civil action.*" W. Va. Code § 33-41-7(a) (emphasis added). The statute also protects the Commissioner and WVOIC employees from testifying regarding confidential documents, materials, or information in any private civil action. W. Va. Code § 33-41-7(b).

Consistent with statutory authority, the WVOIC is not required to respond to subpoena requests for this investigation information and may only use the information itself in regulatory proceedings brought by the WVOIC or in criminal proceedings. Therefore, it is inconsequential if the information is relevant to the Defendants' defense or whether or not there is a protective order in place for health information. Stated another way, much of the information requested in the subpoena is wholly confidential and protected from civil subpoena requests regardless of whether there is a protective order.

### 6. The Defendants' Proposed Modifications Do Not Alleviate the Undue Burden Imposed on the WVOIC

The Defendants request that the Special Master require the WVOIC to produce a modified list of documents by April 30, 2020. While the WVOIC may be able to provide portions of this information by April 30, 2020, including "(h) documents sufficient to describe each agency's organizational structure", certain categories will require collaboration with various third party administrators and insurance carriers. It will be impossible for this data to be compiled, reviewed, and produced by April 30, 2020.

In particular, the production of claims data and reimbursement data would require a lengthy time period. Due to the wide range of functions performed by the WVOIC, claims data and reimbursement data falls into various categories including the State Agency Workers Compensation ("SAWC") program, the Old Fund, the Self-Insured Security Fund, the Self-Insured Guaranty Fund, the Uninsured Employers Fund, and the Coal Workers Pneumoconiosis Fund. *See* Ex. B (Second Affidavit of Erin K. Hunter). As it pertains to the SAWC program, which has existed since July 1, 2011, two different insurance carriers have administered claims - the first from 2011-2017 and the second from 2017 to present. *Id*. Claims data for the SAWC program is not retained by the WVOIC and the WVOIC has to acquire it from these insurance carriers. *Id.*

Meanwhile, for the workers' compensation funds that the WVOIC administers, the WVOIC has hired multiple third party administrators ("TPAs") to administer these claims or benefits with the assistance and oversight of the WVOIC Claims Services Division. *Id*. There have been four TPAs since 2006 and one other entity that subcontracted for a TPA. The WVOIC and the TPAs share access to some of the databases for these claims. *Id.*

Since the receipt of the subpoenas, the WVOIC has worked to design a template for a data call to insurance carriers and/or data pull to attempt to identify claims wherein prescription opioids

and/or "alternative treatments" were paid. *Id.* However, this has been a cumbersome process due to the Defendants' failure to provide drug code data or codes for alternative treatments. To illustrate the expansive scope of the Defendants' command, the WVOIC has identified 12,542 unique NDC codes for opioids to include in the data template. *Id.*

As of the date of this filing, the template has been finalized and has been sent to the insurance carriers for the SAWC program. *Id.* Meanwhile, the WVOIC information technology team is attempting to undertake data extract on the WVOIC/TPA administered claims in the other funds. *Id.* However, if WVOIC IT is unable to extract the data in a credible manner, the WVOIC will need to send the same data template it sent to the SAWC insurance carriers to the current and former TPAs for the workers' compensation funds and ask the TPAs to pull the data. *Id.* A data pull of this magnitude and scope is unprecedented for the WVOIC. *Id.* Therefore, delays are possible.

It is notable that this data pull or data extract process will result in raw data that will identify claims wherein an opioid prescription or alternative treatment was identified, while the subpoena actually commands the production of "all documents." The underlying claim documents cannot be identified or obtained until after the data pull results are received, which will identify the claims by their Jurisdictional Claim Number ("JCN"). *Id.* Of note, the WVOIC is the custodian of millions of claims files inherited from the former Workers' Compensation Commission and has actively administered upwards of 40,000 of those "Old Fund" claims at various times since workers' compensation privatization in 2006, in addition to the SAWC claims, Uninsured Employer Fund claims, Self-Insured Security Fund claims, Self-Insured Guaranty Fund claims, and the Coal Workers Pneumoconiosis Fund claims. *Id.* It is believed that WVOIC is the custodian for approximately 2.2 million claims files. *Id.* While many of these claims files pre-date 1996, a

sizable portion will be claims in which benefits were paid during the past 24 years and in which opioids and/or alternative treatments were paid. *Id.* However, the WVOIC cannot even begin to estimate the number of documents that would be required to be pulled in a manual review of claims files, which is contemplated in the subpoena request, until the claims are identified by JCN in a data pull or data extract and aggregate claims data is identified.

It is additionally notable that no simple mechanism has been discovered whereby claims can be broken down by jurisdiction and be limited to Cabell County/Huntington. *Id.* Due to the broad nature of the subpoena commands, the data template will collect information for Cabell County zip codes for the claimant, physician, and dispensing pharmacy. *Id.* Therefore, the data may include information for a Jackson County resident who obtained a prescription opioid from a Cabell County pharmacy.

In sum, the request for claims data and reimbursement data for Prescription Opioids and Alternative Treatments is not an easy task. Rather, it requires multiple steps and, if these subpoenas are not limited to actual aggregate claims data, will eventually necessitate the manual review of what is likely to be thousands of claims files and tens of thousands of documents, if not hundreds of thousands of documents. Even absent the Covid-19 pandemic and the logistical hurdles resulting therefrom, this task could not be completed by April 30, 2020.

In addition to commanding years of documents that are difficult to isolate, the document subpoena commands the production of materials that are outside of the WVOIC's care, control, and custody including (c) reimbursement policies and procedures, (d) documents concerning drug utilization review; and (e) formularies and/or preferred drug lists. These materials are retained by the applicable TPAs or insurance carriers for the SAWC. WVOIC policies regarding reimbursement and utilization review for workers' compensation claims are contained in the West

Virginia Code of State Rules. *See* W. Va. Code R. § 85-20-1, *et seq.*; W. Va. Code R. § 85-21-1, *et seq.*; and W. Va. Code R. § 85-1-1, *et seq.*

The proposed modifications also seek to compel the production of confidential information. As detailed above, "(g) documents sufficient to identify persons involved in investigations of suspicious orders, prescriptions, or claims" constitute confidential information that is protected by statute.

## CONCLUSION

Pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, and for the reasons stated herein and in WVOIC's Motion to Quash and Supporting Memorandum, the WVOIC respectfully requests that the Court enter an order quashing the March 17, 2020 document and deposition subpoenas issued to it. In the alternative, the WVOIC requests that this Court issue an order mandating that the subpoenas' time for compliance be expanded to a period when the unprecedented pandemic-related closures have ended and be limited to a less burdensome scope.

**Respectfully submitted,**

**WEST VIRGINIA OFFICES OF THE INSURANCE COMMISSIONER**

**By Counsel,**

**PATRICK MORRISEY**
**ATTORNEY GENERAL**

*/s/ Cassandra L. Means*

**CASSANDRA L. MEANS (WVSB# 10522)**
**ASSISTANT ATTORNEY GENERAL**
West Virginia Attorney General's Office
Building 1, Room W-435
Charleston, West Virginia  25305
Phone: 304-558-2522
Email: cassandra.l.means@wvago.gov

## CERTIFICATE OF SERVICE

I, Cassandra L. Means, Assistant Attorney General, do hereby certify that on April 9, 2020 the foregoing "Non-Party West Virginia Offices of the Insurance Commissioner's Reply to Defendants' Response to Motion to Quash" was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECR participant:

Jeffrey M. Wakefield

*Cassandra L. Means*
**CASSANDRA L. MEANS (WVSB# 10522)**
**ASSISTANT ATTORNEY GENERAL**
West Virginia Attorney General's Office
Building 1, Room W-435
Charleston, West Virginia  25305