UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CITY OF HUNTINGTON,**

      **Plaintiff,**

                                  Civil Action No. 3:17-01362

**v.**

**AMERISOURCEBERGEN DRUG CORPORATION, et. al,**

      **Defendants.**

**AND**

**CABELL COUNTY COMMISSION,**

      **Plaintiff,**

                                  Civil Action No. 3:17-01665

**v.**

**AMERISOURCEBERGEN DRUG CORPORATION, et. al,**

      **Defendants.**

## SECOND AFFIDAVIT OF WEST VIRGINIA OFFICES OF THE INSURANCE COMMISSIONER DEPUTY COMMISSIONER/GENERAL COUNSEL ERIN HUNTER

STATE OF WEST VIRGINIA
COUNTY OF KANAWHA, to-wit:

      I, Erin K. Hunter, being first duly sworn do depose and say as follows:

1. As the Deputy Insurance Commissioner and General Counsel for the West Virginia Offices of Insurance Commissioner, I submit this affidavit in support of the "Non-Party

**EXHIBIT B**

West Virginia Offices of the Insurance Commissioner's Reply to Defendants' Response to Motion to Quash Subpoenas."

2. I am fully aware of the facts set forth herein.

3. I previously signed an affidavit in support of the original Motion to Quash. All facts below, supplement those in my original affidavit based upon the ongoing work of the WVOIC in regard to the subpoenas.

4. The WVOIC performs wide ranging functions with limited resources. WVOIC's duties have become more complicated during the current and evolving Covid-19 pandemic, as evidenced by the fact that the WVOIC has issued ten (10) Insurance Bulletins and six (6) Emergency Orders within the past month. By means of comparison, the WVOIC generally issues two (2) to three (3) Bulletins or Informational Letters per year, and has not issued an emergency order since 2017, or a state wide emergency order since the 2016 floods.

5. WVOIC's physical offices remain closed and are not expected to reopen to full staffing until after April 30, 2020.

6. Due to the wide range of functions performed by the WVOIC, claims data and reimbursement data falls into various categories including the State Agency Workers Compensation ("SAWC") program, the Old Fund, the Self-Insured Security Fund, the Self-Insured Guaranty Fund, the Uninsured Employers Fund, and the Coal Workers Pneumoconiosis Fund.

7. As it pertains to the SAWC program, which has existed since July 1, 2011, two different insurance carriers have administered claims - the first from 2011-2017 and the second

from 2017 to present. Claims data for the SAWC program is not retained by the WVOIC and the WVOIC has to acquire it from these insurance carriers.

8. For the workers' compensation funds that the WVOIC administers, the WVOIC has hired multiple third party administrators to administer these claims or benefits with the assistance and oversight of the WVOIC Claims Services Division. There have been four TPAs since 2006 and one other entity that subcontracted for a TPA. The WVOIC and the TPAs share access to some of the databases for these claims.

9. Since the receipt of the subpoenas, the WVOIC has worked to design a template for a data call to insurance carriers and/or data pull to attempt to identify claims wherein prescription opioids and/or "alternative treatments" were paid.

10. The WVOIC has identified 12,542 unique NDC prescription codes for opioids to include in the data template.

11. As of the date of this filing, the template has been finalized and has been sent to the insurance carriers for the SAWC program.

12. The WVOIC information technology team is attempting to undertake data extract on the WVOIC/TPA administered claims in the other funds. If WVOIC IT is unable to extract the data in a credible manner, the WVOIC will need to send the same data template it sent to the SAWC insurance carriers to the current and former TPAs for the workers' compensation funds and ask the TPAs to pull the data.

13. A data pull of this magnitude and scope is unprecedented for the WVOIC and is complicated by Covid-19 staffing issues.

14. The data pull or data extract process will result in raw data that will identify claims wherein an opioid prescription or alternative treatment was identified, and should

hopefully identify the type of prescription paid by NDC code and the amount paid. However, it will not pull documents.

15. The underlying claim documents cannot be identified or obtained until after the data pull results are received, which will identify the claims by their Jurisdictional Claim Number ("JCN").

16. The WVOIC is the custodian of millions of claims files inherited from the former Workers' Compensation Commission and has administered upwards of 40,000 of those "Old Fund" claims at various times since workers' compensation privatization in 2006, in addition to the SAWC claims, Uninsured Employer Fund claims, Self-Insured Security Fund claims, Self-Insured Guaranty Fund claims, and the Coal Workers Pneumoconiosis Fund claims.

17. It is believed that WVOIC is the custodian for more than 2.2 million workers' compensation claim files, of which the WVOIC was the payor for more than 1.4 million claims. While many of these claim files pre-date 1996, a sizable portion will be claims in which benefits were paid during the past 24 years and in which opioids and/or alternative treatments were paid. The 1.4 million claims for which the WVOIC was the payor include tens, if not hundreds, of millions of pages of file documents and medical records.

18. No simple mechanism has been discovered whereby claims can be broken down by jurisdiction and be limited to Cabell County/Huntington.

19. The data template will collect information for Cabell County zip codes for the claimant, physician, and dispensing pharmacy.

FURTHER, YOUR AFFIANT SAITH NAUGHT.

_____
Erin K. Hunter[1]
Deputy Insurance Commissioner/
General Counsel

---

[1] Due to the evolving Covid-19 pandemic and directives for social distancing, the affiant was unable to have this affidavit notarized. If requested, WVOIC can supplement this filing with a notarized affidavit once the WVOIC's offices have reopened.