IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| **CITY OF HUNTINGTON;** <br> **CABELL COUNTY COMMISSION,** | : | |
| | : | Civil Action No. 3:17-01362 |
| Plaintiffs, | | Civil Action No. 3:17-01665 |
| | : | *(Consolidated)* |
| v. | : | |
| **AMERISOURCEBERGEN DRUG** <br> **CORPORATION,** *et al.,* | : | |
| | : | |
| Defendants. | : | |

### CABELL HUNTINGTON HOSPITAL'S MEMORANDUM OF LAW
### IN SUPPORT OF PETITION AND MOTION TO QUASH SUBPOENA

Cabell Huntington Hospital ("Cabell"), a non-party to this litigation, respectfully submits to the Court its Memorandum of Law in Support of its *Petition and Motion to Quash the Subpoena of AmerisourceBergen Drug Corporation* ("AmerisourceBergen") pursuant to Fed. R. Civ. P. 45(d)(3)(A)(i) because it fails to allow a reasonable time for Cabell to comply with said Subpoena under the present circumstances. In support:

AmerisourceBergen submitted the attached Subpoena to Produce Documents, Information or Objects ("Subpoena"), to the West Virginia Secretary of State for service on March 12, 2020. *See Exhibit A*. Cabell received the Subpoena on March 17, 2020. The initial production date was set for March 26, 2020. After a cursory review of the Subpoena's scope, it was reasonable to assume that nine (9) days would be an insufficient amount of time to compile and analyze the requested information. AmerisourceBergen agreed to extend the production date to April 9, 2020. That date has arrived, and Cabell has now been in possession of AmerisourceBergen's Subpoena for three weeks. Nevertheless, due to the scope of the information sought in conjunction with the current COVID-19 pandemic, Cabell has not been given a reasonable amount of time to respond.

1

Before summarizing the impact of this global pandemic in which everyone is all too familiar, it is helpful to understand the scope of this Subpoena. AmerisourceBergen seeks approximately twenty-four (24) years of documents and information covering a broad range of various topics. For example, Request No. 1 seeks all communications from the last 24 years between Cabell and Plaintiffs "discussing, referring, or relating to the prescribing, dispensing, use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, theft or trafficking of Prescription Opioids or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County." The quoted language is the first of nineteen (19) similar requests.

Moreover, Request No. 1 defines Cabell as "Cabell Huntington Hospital and all others acting on the Hospital's behalf, including any affiliates, programs, employees, directors, agents, contractors, representatives, board members, committees, subcommittees, working groups, and task forces." It further defines Plaintiffs as "the plaintiffs named in this action the City of Huntington and Cabell County, including but not limited to its executive and legislative branches, agencies, offices, departments, divisions, commissions, committees, subcommittees, boards, directors, administrators, employees, agents, contractors, vendors, instrumentalities, representatives, counsel, and all persons and entities acting or purporting to act under their control or on their behalf." These are two (2) of fifteen (15) defined terms utilized by the Subpoena.

Cabell appreciates, generally, the breadth and complexities of this litigation. Cabell does not want to be viewed as an obstructionist by this court. If additional time is provided to respond, Cabell will make every reasonable effort to assist the parties. For these reasons, Cabell does not yet assert that the sought-after information is absolutely improper or otherwise objectional at this time. Moreover, Cabell does not yet formally declare that compliance with the Subpoena is unduly

burdensome at this time. While it very well may be, Cabell is simply not in the position to take any such position. In an effort to comply with the Subpoena, if possible, Cabell seeks additional time to compile and review any potentially responsive information before proceeding.

Cabell notes, however, that this is not the ordinary subpoena. It requires a substantial amount of work by a multitude of various medical and legal personnel. Due to the nature and complexity of the information sought, it requires overlapping scrutiny for privileges and objections such as *the Health Insurance Portability and Accountability Act*, the *Health Care Quality Improvement Act*, or the *Peer Review Privilege* codified in W. Va. Code 30-3C-1 *et seq.*, not to mention privileges such as the attorney-client privilege, the work product doctrine or any other rule-based objection, proprietary confidence or permissible privilege which may become evident during the requisite investigation. Cabell respectfully reserves its right to address those issues under a reasonable – and not rushed – timeframe for compliance.

These issues are complicated by the current virus pandemic. The requisite investigation necessary to tackle this Subpoena will entail extensive interaction with hospital personnel and detailed document review, many of which may or may not be available in an electronic format. The investigation will exceed the limitations of email and telephone communications. Undersigned counsel and staff will need to interject themselves into the hospital environment for fact-finding interviews and document review. Under normal circumstances and with a reasonable time for compliance, this would be ok. Currently, however, medical providers and administrative staff should be left to focus on pandemic preparedness.

For sake of brevity, a national emergency was declared on March 13, 2020, and as of March 19, 2020, all fifty states as well as many Tribes and local governments have declared COVID-19

an emergency, disaster, or public-health emergency.[1] These emergency declarations rely heavily on the preparedness of the nation's health care providers. Cabell plays a primary role in the regional health care system. It has been engaged in emergency preparedness for treatment of COVID-19 patients. It's representatives have been focused on compliance with COVID-19 national emergency declarations. And it's resources have been amalgamated and re-distributed to best receive these patients. These changes have brought about social and economic restraints, not to mention time constraints, which effect the ability to practice health care law.[2] The ultimate impact of this pandemic is not currently predictable. The pandemic is generally expected to reach its peak during the next several weeks.[3] Assuming that holds true, Cabell anticipates the need for at least ninety (90) to one-hundred and twenty (120) days to regain its footing and immerse itself into this Subpoena.

Cabell seeks the appropriate relief from this Court. Federal district courts have wide discretion in managing civil discovery. *See Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 365 (7th Cir. 2017). One of the methods in which the courts exercise this discretion is through the use of Rule 45 of the Federal Rules of Civil Procedure. Rule 45 authorizes courts to quash or modify

---

[1] *See* Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (Mar. 13, 2020), www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/; Network for Public Health Law, *COVID-19 Emergency Legal Preparedness Primer* at 20 (Mar. 19, 2020), www.networkforphl.org/wp-content/uploads/2020/03/Western-Region-Primer-COVID-3-19-2020.pdf.

[2] Additionally, undersigned counsel fell ill. While the illness was likely a cold or seasonal flu, counsel reluctantly agreed to self-quarantine.

[3] *See, ex.,* Press Release, Mike DeWine, Governor of Ohio, *Ohio Issues "Stay at Home" Order*, Mar. 22, 2020, https://governor.ohio.gov/wps/portal/gov/governor/media/news-and-media/ohioissues-stay-at-home-order-and-new-restrictions-placed-on-day-cares-for-children.

Significant uncertainty remains about the trajectory of the COVID-19 pandemic in the United States over the next weeks and months, and Plaintiff reserves its right to seek further relief as circumstances warrant.

a subpoena for several different reasons. One of those reasons is for "failure to allow a reasonable time to comply." Fed. R. Civ. P. 45(d)(3)(A)(i).

Cabell requests that this Court exercise this discretion and quash or modify AmerisourceBergen's Subpoena. Such a conclusion would permit Cabell to more readily address this public health emergency and the threat it poses to the community, including the health and public safety of litigants, court staff and the general public alike. As United States Magistrate Judge Gabriel Fuentes recently noted in *DeVine v. XPO Logistics Freight,* 2020 U.S. Dist. LEXIS 45739 (N.D. Ill. 2020):

> The medical community is very, very busy right now, and likely will be busy for weeks or months to come. And these doctors and nurses are busy preparing to take care of sick people. Soon they may be taking care of more sick people than they can handle. We all hope that conditions will not overwhelm our health care system, but at this writing, we do not know how significant the impact will be. Even if the system is not overwhelmed, it may be strained to at or near its limits. Physicians who do not normally practice emergency care may find themselves deployed to emergency rooms. Physicians who might never practice emergency medicine may find themselves immersed in logistical planning or other essential services. It is reasonable for all of us to expect that at this moment and at least for the next few weeks and possibly longer, the situation at hospitals and medical offices will be all hands on deck. All hands cannot be on deck if some of them are at a law office sitting for a deposition in a tort lawsuit.

*Id.* at *2. Similarly, all hands cannot be on deck if these health care providers and administrative personnel are compiling and scrutinizing twenty-four (24) years of documents and information for response to this Subpoena. It is not only unreasonable but unsafe.

Wherefore, non-party Cabell Huntington Hospital has also submitted to the court its *Petition and Motion to Quash the Subpoena of AmerisourceBergen Drug Corporation* pursuant to Fed. R. Civ. P. 45(d)(3)(A)(i) and respectfully requests that such Petition and Motion be granted

as well as requests any and all such further relief as the court deems fair and equitable under the present circumstances.

                Respectfully submitted,

                CABELL HUNTINGTON HOSPITAL, INC.

                /s/ Ryan Q. Ashworth
                Of Counsel

Thomas L. Craig, Esquire (WV 859)
Ryan Q. Ashworth, Esquire (WV 10451)
BAILES, CRAIG, YON & SELLARDS, PLLC
Post Office Box 1926
Huntington, West Virginia 25720-1926
(304) 697-4700 - Telephone
(304) 697-4714 – Facsimile
tlc@bcyon.com
rqa@bcyon.com

**Counsel Cabell Huntington Hospital, Inc.**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# AT HUNTINGTON

| | | |
|---|---|---|
| **CITY OF HUNTINGTON;** | : | |
| **CABELL COUNTY COMMISSION,** | | |
| | : | Civil Action No. 3:17-01362 |
| Plaintiffs, | | Civil Action No. 3:17-01665 |
| | : | *(Consolidated)* |
| v. | | |
| | : | |
| **AMERISOURCEBERGEN DRUG** | : | |
| **CORPORATION,** *et al.*, | | |
| | : | |
| Defendants. | | |
| | : | |

## CERTIFICATE OF SERVICE

The undersigned, counsel for Cabell Huntington Hospital, Inc., do hereby certify that the foregoing **"CABELL HUNTINGTON HOSPITAL'S MEMORANDUM OF LAW IN SUPPORT OF PETITION AND MOTION TO QUASH SUBPOENA"** has this _9_th day of April, been duly served upon counsel of record by electronic transmission.

/s/   *Ryan Q. Ashworth*
Thomas L. Craig, Esquire (WV 859)
Ryan Q. Ashworth, Esquire (WV 10451)
BAILES, CRAIG, YON & SELLARDS, PLLC
401 Tenth Street, Suite 500
Post Office Box 1926
Huntington, West Virginia 25720-1926
(304) 697-4700 (telephone)
(304) 697-4714 (facsimile)
tlc@bcyon.com
rqa@bcyon.com
*Counsel for Cabell Huntington Hospital, Inc.*