## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**THE CITY OF HUNTINGTON and**
**CABELL COUNTY COMMISSION,**
     **Plaintiffs,**
**v.**                                       **CIVIL ACTION NO. 3:17-01362**
**AMERISOURCEBERGEN DRUG**
**CORPORATION, et al.,**
     **Defendants.**

### PLAINTIFFS' SECOND JOINT DISCOVERY STATUS REPORT

Pursuant to the Court's request during the parties' March 5, 2020 status conference, Plaintiffs, the City of Huntington and Cabell County Commission, respectfully submit the following status report with the intention of updating the Special Master as to the progress of this case.

Like Defendants, Plaintiffs are keenly aware of the recent impact of COVID-19 – both nationally and also within their communities.  In their Status Report, Defendants state that "already tight case deadlines are becoming more difficult to meet" and note that they are "presently focused on their critical role in responding to the COVID-19 pandemic, which requires ongoing dependable access to the medical supplies and medicines that Defendants distribute to hospitals, urgent care facilities, long-term care facilities, and pharmacies across the country."[1]  However, as the consequences of COVID-19 collide with another public health crisis – the opioid epidemic brought on by the Defendants – it is clear that the resolution of Plaintiffs' claims is now even more urgent than before.

---

[1] *See* Defendants' Second Status Report at p. 3.

1

Already, experts have expressed concerns that "despite ongoing public health efforts, the opioid overdose crisis does not appear to be slowing down" and that the "emergency of Covid-19 could worsen it if we do not preemptively develop and implement response plans."[2]  Experts have also cautioned that, "[w]ithout new support, problems that plagued the opioid response effort – a dearth of providers, stigma, and access to treatment – will only be exacerbated by the pandemic."[3] For those individuals suffering from opioid use disorder, daily visits to treatment centers for medication, syringe distribution, or other harm-reduction efforts are critical, yet, the availability of those resources is now significantly diminished.  Those areas – like Plaintiffs' communities – that were hit especially hard by the opioid crisis are now especially at risk for a devastating perfect storm.  Doctors have also expressed concerns that individuals with a history of opioid-use disorder may be more susceptible to COVID-19, "because they are more likely to have weak immune systems and have existing infections such as Hepatitis C or HIV."[4]  The CDC has identified Cabell County has being among the top 5% of counties most at risk of outbreaks of HIV and/or hepatitis C as a result of the opioid epidemic.[5] As the director of the National Institute on Drug Abuse

---

[2] *See, e.g.,* Ximena A. Levander and Sarah E. Wakeman, *Covid-19 will worsen the opioid overdose crisis if we don't prepare now*, STAT, March 17, 2020, *available at* https://www.statnews.com/2020/03/17/covid-19-will-worsen-the-opioid-overdose-crisis-if-we-dont-prepare-now/; Andrea Marks, *With Covid-19, Life Got Even More Dangerous for People Addicted to Opioids*, Rolling Stone, April 2, 2020, (explaining that COVID-19 is now likely to further exacerbate the consequences of the opioid epidemic in Plaintiffs' communities and unravel prior system-level gains as access to treatment centers, syringe exchange programs and other harm-reduction programs could now be compromised), *available at* https://www.rollingstone.com/culture/culture-features/opioid-methadone-covid-19-coronavirus-975191/

[3] Dan Goldberg and Brianna Ehley, Trump officials, health experts worry coronavirus will set back opioid fight, Politico, April 10, 2020, *available at* https://www.politico.com/news/2020/04/10/trump-officials-health-experts-worry-coronavirus-will-set-back-opioid-fight-179257

[4] Doctors have also expressed concerns that individuals with a history of opioid-use disorder may be more susceptible to COVID-19, "because they are more likely to have weak immune systems and have existing infections such as Hepatitis C or HIV." *See* Martha Bebinger, Opioid Addiction is a Disease of Isolation, So Pandemic Puts Recovery At Risk, NPR, March 27, 2020, *available at* https://www.npr.org/sections/health-shots/2020/03/27/820806440/opioid-addiction-is-a-disease-of-isolation-so-pandemic-puts-recovery-at-risk

[5] *See* amfAR, Opioid & Health Indicators Database, *available at* https://opioid.amfar.org/WV

recently explained in reference to the opioid epidemic: "I think we're going to see deaths climb again . . . . **We can't afford to focus solely on Covid. We need to multitask**."[6]

Defendants have themselves acknowledged that: "This litigation is undoubtedly very important, and the parties continue to make progress with discovery even in the face of an unprecedented public health crisis."[7] There is no doubt, particularly in these times, that ensuring the health and safety of all participants in the litigation is of paramount importance. However, Plaintiffs are also confident in the parties' ability to do so while still maintaining the current case schedule, and believe that the parties' continued discovery efforts – described in greater detail below – are a testament to that ability.

## I.      Plaintiffs' Upcoming Request for Remote Discovery Protocol

These are unprecedented times that call for sensitivity, flexibility, and creativity to enable the judicial system to remain accessible and resolve disputes. The Government, Legislature, and Courts remain open. The parties have a responsibility to work together and see this case to its ultimate resolution. Indeed, the Governor has specifically concluded that attorneys and law firms are "Essential Businesses and Operations" who are exempt from the Governor's "Stay at Home Order."[8] Plaintiffs anticipate bringing to the Court's attention this week their request for the Court to enter an Order regarding teleconference and remote discovery depositions. Specifically, Plaintiffs feel confident that the use of remote and electronic technology will serve to avoid any delays that may be occasioned by the emergent COVID-19 pandemic. Such measures are not

---

[6] Dan Goldberg and Brianna Ehley, Trump officials, health experts worry coronavirus will set back opioid fight, Politico, April 10, 2020, *available at* https://www.politico.com/news/2020/04/10/trump-officials-health-experts-worry-coronavirus-will-set-back-opioid-fight-179257 (quoting Nora Volkow)

[7] Defendants' Second Status Report at p. 7.

[8] *See* Executive Order No. 9-20 at ¶ 3(u) (including "legal services" in definition of "Essential Businesses and Operations)" (Mar. 23, 2020) (https://coronavirus-wvgovstatus-cdn.azureedge.net/STAY_AT_HOME_ORDER.pdf)

unprecedented.  The United States Supreme Court of the United States is hearing oral arguments by teleconference.[9]  So is the WV Court of Appeals.[10]

The use of remote and video depositions has been a staple for many years in complex litigation.  While remote depositions may not be the preferred option for either Plaintiffs or Defendants, state and federal court around the county have recognized that permitting remote depositions to proceed will not prejudice either side.  In response to the COVID-19 pandemic, federal courts have issued directives and/or encouraged alternative means of deposition-taking – including videoconference depositions.[11]  Similarly, many state courts have also ordered the continuation of depositions via remote technology.[12]  Remote depositions are also clearly permissible pursuant to the Federal Rule of Civil Procedure. *See* FRCP 30(b)(4) ("The parties may stipulate – or the court on motion – that a deposition be taken by phone or other remote means.").  The Advisory Committee Notes make clear that "remote means" include those conducted electronically. *See* 1993 Advisory Committee Notes.  Likewise, Rule (30)(b)(3) permits deposition testimony to "be recorded by audio, audiovisual, or stenographic means."

---

[9] *See* Robert Barnes, *Supreme Court for first time to hold arguments via teleconference next month*, Wash. Post, April 13, 3030, *available at* https://www.washingtonpost.com/politics/courts_law/supreme-court-for-first-time-to-hold-arguments-via-teleconference-next-month/2020/04/13/f7e325d0-7d8d-11ea-a3ee-13e1ae0a3571_story.html

[10] *See, e.g.,* http://www.courtswv.gov/supreme-court/calendar/2020/Dockets/apr-14-20ad.html (Argument Docket for April 14, 2020 noting "All cases will be argued remotely and oral arguments will be webcast.")

[11] *See, e.g., County of Cook v. Bank of America Corp. et. al.* (N.D. Ill. March 12, 2020 (encouraging the parties to conduct depositions by contemporaneous videoconferencing rather than simply canceling them outright); *In re Keuring*, Order re Remote Depositions (SDNY March 16, 2020) (issuing a directive outlining alternatives to traditional in-person depositions); *see also,* ); *see also* Nueces County District Order Regarding Remote Participation in Videoconferenced Depositions and/or those Telephonically Recorded, noting that while "depositions noticed and taken remotely pose no risk of spreading the coronavirus. . . . a blanket cessation of discovery in civil cases creates constitutional concerns as it could deprive citizens of their right access to open court…"

[12] *See, e.g.,* March 13, 2020 Superior Court of New Jersey Asbestos Case Order; April 8, 2020 Order, *In Re: Civil litigation during the Covid-19 crisis*, Court of Common Pleas of Philadelphia County (recognizing that although "Pennsylvania courts are physically closed to the public due to the health crisis created by COVID-19, much can be done to advance civil litigation in a safe manner consistent with appropriate social distancing practices" and specifically holding that "To the extent practicable, depositions should be conducted remotely through telephone, videoconference, or similar technology").

II.   **Defendants' Production of Documents**

A.   **Plaintiffs' Motion to Compel Defendants' Communications with the DEA**

On March 31, 2020, after reaching an impasse, Plaintiffs filed a Motion to Compel Defendants' communications with the Drug Enforcement Administration ("DEA"). (Doc # 269). In their Opposition filed on April 9, 2020, Defendants unconditionally conceded and agreed to produce the documents requested. (Doc #: 306). Plaintiffs will hold a reply in abeyance until April 30, 2020, pending Defendants' compliance.

B.   **Defendants' Responses to Plaintiffs' Third Request for Production**

On February 28, 2020, Plaintiffs served their Second Set of Combined Discovery Requests, which consisted of just four requests and sought documents relating to the Committee on Energy and Commerce's investigation of the distribution of opioids, particularly in West Virginia, and documents relating to the Defendants' efforts with regard to the Marino Bill, including from the custodial file of each Defendant's CEO.  While Cardinal has agreed to produce responsive documents from its CEO, both McKesson and AmerisourceBergen objected to any production from their CEO's custodial file.[13]  Plaintiffs met and conferred with McKesson on this issue on April 10, 2020 but were unable to resolve Defendants' objections.  Plaintiffs are also scheduled to confer with AmerisourceBergen on this issue on April 14, 2020.

C.   **Other Pending Discovery Issues**

On March 31, 2020, Plaintiffs filed a Motion to Compel the deposition testimony of current McKesson employee Tim Ashworth, as McKesson has taken the position that it will not produce him for deposition in this case. (Doc #: 268).  On April 10, 2020, McKesson filed its Opposition

---

[13] Cardinal has also agreed to search for additional documents that may be responsive to Plaintiffs' requests.

to Plaintiffs' motion. (Doc #: 313). Plaintiffs intend to file a reply brief on or before April 17th and will thereafter forward all briefing materials to Judge Wilkes as an issue ripe for resolution.

There are also several issues that are ripe or are becoming ripe relating to CAH's prior productions and disclosures that, if the Parties are not able to resolve, may require Court intervention. These issues include Cardinal's identification of witnesses whose past or present work pertained to Cabell County or Cardinal's Wheeling Distribution Center during the relevant time period, as well as ongoing disputes relating to Cardinal's document productions. If the Parties cannot reach an agreement regarding these issues, Plaintiffs will file a motion to compel production.

### III.  Plaintiffs' Production of Documents

On October 25, 2019, Defendants served their First Set of Interrogatories to Plaintiffs and their First Set of Requests for Production. Plaintiffs answered the interrogatories and request for production of documents and supplemented where necessary.[14]

In response to Defendants' requests for production, to date, the Cabell County Commission has produced approximately **1,525,000 pages of documents**. The Cabell County Commission has advised Defendants it has substantially completed its document productions at this point in time, although it does expect to produce additional payroll data and will likely have some small production supplements over the next couple of weeks. Once those productions are complete, all document production will be complete for the Cabell County Commission.

Similarly, the City of Huntington has made thirty-one productions, producing **1,520,932 pages of documents** that it will continue to supplement as necessary. The City of Huntington has

---

[14] In Discovery Ruling 1, Special Master Wilkes denied, in part, Defendants' Motion to Compel and held that the Plaintiffs' ongoing supplementation of additional discovery was appropriate. (Doc #: 248) (Filed 03/24/20).

advised Defendants it has substantially completed its document productions at this point in time. The City of Huntington anticipates supplemental production over the next few weeks in fulfillment of its due diligence to identify any remaining responsive documents. Once those productions are complete, all document production will be complete for the City of Huntington.

Defendants provided Plaintiffs with a requested list of custodians on December 31, 2019. Throughout the course of discovery, Plaintiffs and Defendants have conferred on the identification of current and former employees as document custodians.[15]  In the spirit of cooperation, Plaintiffs have agreed to a majority of Defendants' requests, even though Plaintiffs believe they are overbroad and duplicative in nature, in order to prevent any unnecessary delay to the litigation. In agreeing to collect a particular custodial file, Plaintiffs had no way of knowing how many documents would be responsive to the parties' agreed upon search terms for any particular file. To date, Cabell County Commission has agreed to search for and produce documents where available for **forty-eight (48)** custodians along with production of departmental data that is not tied to a specific custodian.  Likewise, City of Huntington has agreed to search for and produce documents where available for **forty-five (45)** custodians with production of departmental data that is not tied to a specific custodian.  Plaintiffs are aware of their obligations to produce relevant documents under their custody and control and have so produced.  Plaintiffs have also notified Defendants of those files that are substantially complete. Still not satisfied, Defendants have filed a Motion to Compel regarding these custodian requests.  (Doc #: 283) (Filed: 4/6/2020).

On or before April 15th, the City of Huntington and Cabell County Commission will file their opposition to Defendants' Motion to Compel, which seeks the custodial files for twenty (20)

---

[15] *See* Plaintiffs' First Discovery Status Report alerting the Court to a "looming conflict" regarding the production of custodial files. (Doc #: 254) (Filed: 3/26/2020).

custodians from the Cabell County Prosecutor's Office and six (6) additional City of Huntington custodians. As Plaintiffs will explain more fully in their opposition, Defendants' requests for files from the Cabell County Prosecutor's Office are duplicative of voluminous materials already produced from the Cabell County Sheriff's Office and the Cabell County Circuit Court. The information Defendants seek from these custodial files is also protected by the work product doctrine, which further supports the Cabell County Commission's view that Defendants' Motion should be denied.  Similarly, the City of Huntington has already agreed to produce departmental files and individual files for forty-five (45) individual custodians that span multiple different City departments. The additional custodians sought in Defendants' requests are therefore duplicative of the discovery produced in this litigation thus far.

Cabell County and the City of Huntington have both responded to Defendants requests for priority custodians.

### IV.    DEA *Touhy* Requests

Both Plaintiffs and Defendants have served formal Touhy requests to the U.S. Department of Justice to seeking documents relevant to this case.

Plaintiffs served their first Touhy request on the DEA, seeking nine (9) categories of documents, on October 28, 2019[16]  and their second request for nine (9) additional categories on March 19, 2020.  On March 11, 2020, Defendants also served a Touhy request on the DEA seeking thirty (30) categories of testimony and thirty-six (36) requests for production of documents. Plaintiffs have now participated in three meet and confers between Defendants and the Department of Justice; however, Defendants appear to be at an impasse with the Department of Justice as to

---

[16] On February 3, 2020, Plaintiffs re-served these requests to reflect the fact that the Case Track Two case had been remanded to the Southern District of West Virginia, and addressing their requests to Michael B. Stuart, Assistant United States Attorney in the Southern District of West Virginia, in addition to the same lawyers at Department of Justice headquarters involved in handling MDL Touhy requests.

certain discovery disputes.  In light of the discovery deadlines in this case, on April 8, 2020, Plaintiffs sent Defendants a letter requesting that they not let their outstanding discovery disputes linger and, to the extent such disputes remain unresolved, that Defendants promptly seek the relief they believe necessary from the Court.

## V.    Other Third-Party Subpoenas

To date, Defendants have served a total of forty-nine (49) third-party subpoenas – thirty-three (33) document subpoenas and sixteen (16) testimonial subpoenas. Defendants' document subpoenas seek **1,037** categories of documents and their testimonial subpoenas identify **344** topics for testimony.[17]

Conversely, to date, Plaintiffs have only served nineteen (19) third-party subpoenas for documents and no testimonial subpoenas; their third-party subpoenas span a total of only 122 requests.

Two Motions to Quash are pending before Special Master Wilkes.[18]

---

[17] The 49 subpoenas were served on the following 32 entities: Appalachia High Intensity Drug Trafficking Area (AHIDTA); Appalachian Regional Prescription Opioid Strike Force (ARPO); Cabell County Drug Court; Cabell Huntington Hospital; Cabell-Huntington Health Dept.; Darren Cox, U.S. Department of Justice; Drug Enforcement Agency; Federation of State Medical Boards (FSMB); Healthy Connections; Huntington Violent Crime & Drug Task Force (HVCD); Karen Manning, Financial Manager of Appalachia High Intensity Drug Trafficking Area (AHIDTA); Marshall Health; Marshall University; National Board of Medical Examiners (NBOME); PROACT, Inc.; Quality Insights; St. Mary's Medical Center; Valley Health Systems; WV BMS (Bureau for Medical Services); WV Board of Dentistry; WV Board of Examiners for Licensed Practical Nurses (RN Board); WV Board of Medicine; WV Board of Osteopathic Medicine; WV Dep't Military Affairs and Public Safety; WV DHHR (Dept. Health & Human Resources); WV DHHR, Bureau for Children and Families; WV Div. of Justice & Comm. Services; WV Division of Corrections & Rehab; WV Office of Chief Medical Examiner; WV OIC (Office of Ins Commissioner); WV PEIA (Public Employees Ins Agency); and WV State Police.

[18] *See* Non-Party West Virginia Offices of the Insurance Commissioner's Motion to Quash Defendant McKesson Corporation's Subpoena to Produce Documents and Subpoena to Testify at a Deposition in a Civil Action (Doc #: 259) (Filed: 3/30/2020) and West Virginia Public Employees Insurance Agency's Motion to Quash Subpoena to Produce Documents and Subpoena to Provide Deposition Testimony (Doc #: 259) (Filed: 3/30/2020) A third Motion to Quash has been filed but is not yet before the Court.  *See* Cabell Huntington Hospital's Petition and Motion to Quash Subpoena (Doc #: 309) (Filed: 4/10/2020).

## VI.    <u>Pending Motions</u>

Pending before the Court are several motions that may implicate the scope of discovery, including Plaintiffs' Motion to Strike Defendants' Notice of Non-Party Fault (Doc #: 224) (Filed: 3/13/2020) (*See* Plaintiffs' Memorandum of Law in Support of Motion to Strike Defendants' Notice of Non-Party Fault (Doc #: 225) (Filed: 3/13/2020) (arguing Defendants are jointly liable and are not entitled to apportion fault to non-parties*); Proposed Case Management Orders (Doc #: 157 and 159) (Filed: 2/11/2020);* Plaintiffs' Motion for a Bench Trial Management Order (Doc #: 230) (Filed: 3/16/2020); and Plaintiffs' and Defendants' Joint Stipulation and [Proposed] Order Regarding Party Discovery Disputes (Doc #: 300) (Filed: 4/8/2020) (requesting approval by the Court). Judgement on these motions and requested orders will continue to shape the forward progression of the case.

Dated:  April 14, 2020                              Respectfully submitted,


THE CITY OF HUNTINGTON                     CABELL COUNTY COMMISSION

/s/ *Anne McGinness Kearse*                     /s/ *Paul T. Farrell, Jr.*
Anne McGinness Kearse (WVSB No. 12547)   Paul T. Farrell, Jr., Esq. (WVSB No. 7443)
**MOTLEY RICE LLC**                            **FARRELL LAW**
28 Bridgeside Blvd.                            P.O. Box 1180
Mount Pleasant, SC 29464                       Huntington, WV 25714-1180
Tel:  843-216-9000                             422 Ninth Street, 3rd Floor
Fax:  843-216-9450                             Huntington, West Virginia 25701
akearse@motleyrice.com                         office: 304.523.7285
                                               cell: 304.654.8281
                                               email: paul@farrell.law

10

### CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing was filed electronically via the CM/ECF electronic filing system on April 14, 2020 and served on all counsel registered in the system and via email to plaintiffs' listserv at [mdl2804discovery@motleyrice.com](mailto:mdl2804discovery@motleyrice.com), defendants' listserv at [track2opioiddefendants@reedsmith.com](mailto:track2opioiddefendants@reedsmith.com).

/s/ Monique Christenson
Monique Christenson (SC Bar No. 104063)