IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, et al.,<br><br>    Defendants | Civil Action No. 3:17-01362<br>Hon. David A. Faber |
| CABELL COUNTY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, et al.,<br><br>    Defendants. | Civil Action No. 3:17-01665<br>Hon David A. Faber |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO COMPEL DISCOVERY RESPONSES**

Defendants[1] seek the production of certain custodial files essential to Defendants' ability to defend themselves in this action. The parties have agreed to certain document custodians, but Plaintiffs[2] have declined to search for and produce responsive documents from a number of other custodial sources. Huntington has rejected custodians in some key disciplines, and Cabell County has asserted a blanket objection to producing any documents from its Prosecuting Attorney's Office. Plaintiffs have not argued that any of these custodial files are irrelevant or subject to a

---

[1] AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation.

[2] City of Huntington ("Huntington" or "City") and Cabell County Commission ("Cabell County" or "County").

privilege, nor could they. In fact, Special Master Wilkes has already ordered Cabell County to produce some documents from its Prosecuting Attorney's Office.

Accordingly, Defendants' motion to compel the records of the critical, targeted custodians identified below should be granted, and Plaintiffs should be ordered to produce the custodial records at issue.

## ARGUMENT

### I. Huntington Should be Ordered to Produce Files for the Custodians at Issue.

On December 13, 2019, Huntington served its responses to Defendants' first set of interrogatories (**Exhibit 1**) and first set of requests for production of documents (**Exhibit 2**). In its responses to Defendants' Interrogatories 1 and 2, Huntington identified twenty-eight employees (former and current) and ten departments that it believed "to have discoverable information" and/or to "possess[] documents, data, or other information" relating to Huntington's claims. *See* Ex. 1 at 2-12.

On December 31, 2019, Defendants sent Huntington a letter (**Exhibit 3**) requesting that Plaintiffs produce the custodial files of the employees and departments identified in Huntington's discovery responses.[3] Although the Parties have conferred extensively regarding Defendants' requests for custodial files, Huntington has improperly refused to produce custodial files for the below six individuals, despite the fact that some of these individuals were specifically named by

---

[3] During the March 27, 2020 conference call with the parties, Special Master Wilkes queried whether the parties are in disagreement as to the meaning of the term "custodial" file. Defendants do not believe there is a disagreement. Defendants and the attorneys representing Plaintiffs in these actions have a substantial history of producing custodial files on terms that were largely agreed in the multidistrict litigation proceeding from which these actions were remanded. Defendants do not take Plaintiffs to be objecting on the basis that "custodial" file is vague or undefined, and Plaintiffs do not appear to contest their obligation to produce the types of information Defendants have sought throughout this proceeding (*see* Plaintiffs' Discovery Status Report (ECF No. 254) at 3). Rather, Plaintiffs object to producing any discoverable information whatsoever for the specific individuals addressed herein.

Huntington in its discovery responses and the remainder work in, or once worked in, the departments (and in the same roles as other individuals) that Huntington specifically identified as "possess[ing] documents, data, or other information." Huntington's refusal in each of these instances boils down to its unsubstantiated claim that the requested discovery would be "cumulative and duplicative." That objection is not sufficient.

Under Rule 26, a "party that objects to discovery as cumulative or duplicative must provide a specific basis for that assertion." Huntington has not done so. Instead, Huntington is speculating that the subject custodial files would be "cumulative" of documents that it has agreed to produce for other similar custodians. Such speculation is not a valid basis to refuse to provide discovery. "The party resisting discovery, not the party seeking discovery, bears the burden of persuasion." *McKelvey v. W. Reg'l Jail*, 2015 WL 2144668, at *2 (S.D.W. Va. May 7, 2015). Huntington "must do more to carry its burden than make conclusory and unsubstantiated allegations" such as these. *Id.*; *accord Buskirk v. Wiles*, 2016 WL 7118288, at *6 (S.D.W. Va. Dec. 6, 2016) (Aboulhosn, M.J.) ("To prevail upon an objection of burdensomeness, the objecting party must demonstrate how the request is burdensome by submitting affidavits or other evidence revealing the nature of the burden."). "It is not sufficient to merely speculate that the proposed additional discovery will yield nothing new." Federal Rules of Civil Procedure, Rules and Commentary Rule 26 (citing *Garcia Ramirez v. U.S. Immigration & Customs Enf't*, 331 F.R.D. 194, 197 (D.D.C. 2019)).[4]

---

[4] Further, to the extent Huntington's refusal is premised on a view that only individuals likely to be deposed should be custodians (*see* ECF No. 254 at 3) that view flatly contradicts Rule 26's conception of the discovery process. *See Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 199 (N.D.W. Va. 2000) (noting that "[i]nformation must be, at a minimum, relevant to be discoverable" and that "courts broadly construe relevancy in the context of discovery" under Rule 26(b)(1)). It also ignores the fact that document and deposition discovery inform each other—that is, document review may identify the best individuals to depose, and deposition testimony may identify additional individuals or sources with relevant information. At this stage of the discovery process, where Huntington is in the best position to know the sources likely to have relevant information, allowing Huntington to choose custodians based on who it believes

- 3 -

Accordingly, Huntington should be compelled to produce the files of the following six individuals.

**a.    Justin Antle, Huntington Deputy Fire Chief.** In its responses to Defendants' interrogatories, Huntington *specifically identified* Mr. Antle as a person "likely to have discoverable information" related to Huntington's claims. Ex. 1 at 2-3. For this reason, Mr. Antle's custodial documents are indisputably relevant and discoverable. *See* Fed. R. Civ. P. 26(c). However, by letter dated February 21, 2020 (**Exhibit 4**), Huntington refused to produce Mr. Antle's custodial file based on its unilateral claim that Mr. Antle's documents "would be duplicative and cumulative" of the custodial file of Ray Canafax, another deputy fire chief whom Huntington designated as having discoverable information. Ex. 4 at 4; *see also* Ex. 1 at 2-3. Yet, Huntington has not explained how Mr. Antle's documents would be duplicative and cumulative of Mr. Canafax's.

Given that Huntington identified Mr. Antle as having relevant knowledge as a Deputy Fire Chief, and given Mr. Antle's 22 years of service with the Huntington Fire Department, Mr. Antle's custodial file is expected to contain documents regarding the "necessary and costly responses to the opioid crisis" for which Huntington seeks reimbursement, "includ[ing] [costs] associated with handling of emergency responses to overdoses." Joint Third Amended Complaint ("TAC," ECF No. 2595) ¶ 19; *see also id.* ¶ 1437 ("As a direct and proximate result of Defendants' tortious conduct and the public nuisance created by Defendants, Plaintiffs have suffered and will continue to suffer economic damages including, but not limited to, significant expenses for police, emergency, health, prosecution, corrections, rehabilitation, and other services."); Huntington's

---

should be deposed would effectively result in Huntington unilaterally deciding who Defendants depose. For these reasons, the identification of custodians cannot and should not be equivalent to identifying individuals to depose.

- 4 -

Resp. to Interrog. No. 10 (Ex. 1) at 24 ("The Police and Fire Departments in the City have been at the forefront in addressing the opioid public health crisis. These departments and their current personnel have been challenged to continue responding to drug overdoses as the number of overdoses increased dramatically over the years.").

Huntington should be ordered to produce Mr. Antle's custodial files and responsive documents. Mr. Antle's custodial file is believed to include documents responsive to several of Defendants' Requests for Production, including but not limited to, Request Nos. 1, 4, 5, 6, 9, 10, 11, 15, 16, 17, 19, 22, 23, and 25. *See* Ex. 2 at 1-20. His files likely contain discoverable information given his role with Huntington, and Plaintiffs have specifically identified Mr. Antle as a person possessing discoverable information. Moreover, Huntington has not provided a specific basis for the assertion that Mr. Antle's documents would be "cumulative" of those being produced for other custodians.

    **b.** **John Ellis, City of Huntington Police Captain.** Huntington has provided no basis for its refusal to produce the custodial file of Captain John Ellis of the Huntington Police Department ("HPD") other than an unsupported claim that it is "cumulative." *See* Ex. 4 at 3. Captain Ellis is one of five members of HPD's Executive Command Staff.[5] He has served on HPD for 25 years and is now the Commander of the Criminal Investigations Bureau,[6] which includes the Forensics Investigation Unit.[7] This bureau is "responsible for the collection, analysis, documentation and interpretation of evidence in . . . crime scene investigations," including opioid

---

[5] Huntington Police Department, *Executive Command Staff*, https://hpdwv.com/about-us/executive-command-staff/.

[6] *Id.*

[7] Huntington Police Department, *A Year of Transition: 2014 Annual Report*, at 15, http://www.cityofhuntington.com/assets/pdf/document-center/HPDReport_2014_web.pdf.

- 5 -

overdose deaths and other drug crimes.[8] That evidence is critical to present a defense, including on issues of proximate causation and nonparty fault, as it will provide detailed information on misconduct involving opioids in Huntington and alternate causes of the opioid epidemic.

Mr. Ellis is also expected to possess documents related to Huntington's alleged damages. *See* TAC ¶ 19 (alleging that Huntington seeks reimbursement for the "necessary and costly responses to the opioid crisis," including costs "associated with… handling opioid-related investigations, arrests, adjudications, and incarceration"); *see also id*. ¶ 1437. Mr. Ellis' custodial file is believed to include documents responsive to several of Defendants' Requests for Production, including, but not limited to, Request Nos. 1, 2, 4, 5, 6, 7, 9, 10, 11, 15, 16, 17, 18, 19, 22, 23, and 25. *See* Ex. 2 at 1-20. As such, Huntington should be ordered to produce Mr. Ellis' custodial files.

    **c.**    **Gene Baumgardner, former Huntington Police Chief.** In its February 21, 2020 letter, Huntington refused to produce Mr. Baumgardner's custodial file because, according to Huntington, "[a]ny files from the former police chiefs rolled over to the next chief in office." Ex. 4 at 4. Huntington stated that "the City intends to provide documents that are responsive under the custodial file of Hank Dial," the current chief, and that these "documents would include the files" of former chiefs, including Mr. Baumgardner. *Id*. Thereafter, the parties conferred and Huntington disclosed that the documents being produced as part of Mr. Dial's custodial files would *not* include the emails of former chiefs of police or all of Mr. Baumgardner's files.

By letter dated March 17, 2020 (**Exhibit 5**), Huntington agreed to produce the custodial files of Skip Holbrook (chief of police from 2007 to 2014), Jim Johnson (chief of police from April 2014 to September 2014), and Joe Ciccarelli (chief of police from 2014 to 2016). However, Huntington continues to refuse to produce the custodial file of Mr. Baumgardner (who served from

---

[8] *Id.*

2004 to 2007) because "the requested custodial file for Gene Baumgardner is cumulative." *Id.* at 2. Huntington does not contend that Mr. Baumgardner's documents would be included in those of the other custodians whose documents it has agreed to produce, and Huntington has not explained how Mr. Baumgardner's documents could be "cumulative" given that he was the police chief at a different time than the custodians whose documents it has agreed to produce. This is inconsistent with Huntington's position that "every year each Distributor Defendants distributed opioids is relevant" in calculating Huntington's alleged damages, "including but not limited to 2006 to 2014," a timeframe which includes Mr. Baumgardner's tenure as police chief. *See* Ex. 1 at 16.

Because Mr. Baumgardner served as police chief during this relevant timeframe, his custodial file is also expected to include documents regarding the "necessary and costly responses to the opioid crisis" for which Huntington seeks reimbursement, including costs "associated with… handling opioid-related investigations, arrests, adjudications, and incarceration." TAC ¶ 19. *See also id.* ¶ 1437. Mr. Baumgardner's custodial file is believed to include documents responsive to several of Defendants' Requests for Production, including but not limited to, Request Nos. 1, 2, 4, 5, 6, 7, 9, 10, 11, 15, 16, 17, 18, 19, 22, 23, and 25. *See* Ex. 2 at 1-20. For these reasons, Huntington should be ordered to produce Mr. Baumgardner's custodial file.

      **d.** **Robert Wilhelm, City of Huntington Former Finance Director.** Defendants requested the production of the custodial files of the four individuals who served as finance director during the 2006-2014 timeframe that Huntington claims is relevant to its alleged damage calculation. The custodial files of these individuals are expected to include documents regarding the "necessary and costly responses to the opioid crisis" for which Huntington seeks reimbursement. TAC ¶ 19. *See also id.* ¶ 1437. Mr. Wilhelm's custodial file is believed to include

- 7 -

documents responsive to several of Defendants' Requests for Production, including but not limited to, Request Nos. 10, 11, 15, 16, 17, 18, 20, 22, 23, and 25. *See* Ex. 2 at 1-20.

In its February 21, 2020 letter, Huntington refused to produce Mr. Wilhelm's files because they claim that, "[g]iven the number of financial custodians in this case," Mr. Wilhelm's documents "would serve to be unnecessarily cumulative" of documents in the custody of Mr. Wilhelm's successors, whose custodial documents Huntington agreed to produce. *See* Ex. 4 at 3.

Huntington's objection is not sufficient. *See* Federal Rules of Civil Procedure, Rules and Commentary Rule 26 ("A party that objects to discovery as cumulative or duplicative must provide a specific basis for that assertion. It is not sufficient to merely speculate that the proposed additional discovery will yield nothing new.") Huntington has not offered any support for its speculation that Mr. Wilhelm's documents would be "cumulative" of documents in the custody of his successors. Therefore, Huntington should be ordered to produce Mr. Wilhelm's custodial file.

**e.     Greg Fuller, Huntington Former Fire Chief.** Defendants requested the production of the custodial files of the four individuals who served as fire chief during the 2006-2014 timeframe that Huntington claims is relevant to its alleged damage calculation. Mr. Fuller's custodial file is believed to include documents responsive to several of Defendants' Requests for Production, including but not limited to, Request Nos. 1, 4, 5, 6, 9, 10, 11, 15, 16, 17, 19, 22, 23, and 25. *See* Ex. 2 at 1-20.

In its February 21, 2020 letter, Huntington refused to produce Mr. Fuller's files because, "[g]iven the number of individuals requested in the fire department and the relevant timespan," Mr. Fuller "is not an appropriate custodian as his documents would prove to be cumulative." *See* Ex. 4 at 4. Like the other custodians that are the subject of this motion, Huntington has not offered support for its speculation that Mr. Fuller's documents would be "cumulative" of documents in

the custody of his successors. Moreover, Mr. Fuller served as fire chief into 2009, which is well within the timespan that Huntington maintains is relevant. Therefore, Huntington should be ordered to produce Mr. Fuller's custodial file.

      f.     **Angie Bracey, Executive Assistant to the Huntington Mayor.** In its December 3, 2019 responses to Defendants' interrogatories, Huntington identified Ms. Bracey as an "employee[]… that possesses documents, data, or other information relating to the allegations of the Joint Third Amended Complaint." Ex. 1 at 11-12. Despite having specifically identified Ms. Bracey as possessing relevant documents, Huntington has refused to produce her custodial file, arguing that it would be "duplicative, [and] cumulative" of the documents contained in the custodial file of Bryan Chambers, the mayor's communications director. Ex. 4 at 4.

As the executive assistant to the Mayor, Ms. Bracey's custodial file is expected to include documents regarding the formation and operation of the "Mayor's Office of Drug Control Policy (ODCP)" which was established in 2014 "to combat opioid addiction in Huntington … by creating a holistic approach involving prevention, treatment, and law enforcement." Huntington's Resp. to Interrog. No. 10 (Ex. 1) at 22-23. Ms. Bracey's custodial file is expected to include, among other things, documents regarding ODCP's "strategic plans for addressing the opioid crisis," including the creation of the "harm reduction program." *Id.* Ms. Bracey's custodial file is believed to include documents responsive to several of Defendants' Requests for Production, including but not limited to, Request Nos. 1, 3, 4, 5, 6, 7, 9, 10, 11, 15, 16, 17, 18, 19, 20, 22, 23, and 25. *See* Ex. 2 at 1-20.

Huntington has offered no support for its speculation that Ms. Bracey's documents would be "cumulative" of those being produced for Mr. Chambers, an individual who performs a different job from Ms. Bracey. If anything, the dearth of documents produced from the purported custodial files from the Mayor's Office confirms the importance of Ms. Bracey's files. According to

Huntington's March 23, 2020 letter (**Exhibit 6**), former Mayor Wolfe's custodial file is substantially complete, but the file contains only *four documents*. Given that Huntington has specifically identified Ms. Bracey as a person who possesses relevant documents, and given her critical role over many years in the Mayor's Office and the lack of appropriate custodial files from that Office throughout the relevant timeframe, Huntington should be compelled to produce her custodial file and responsive documents.

II. **Cabell County Should be Ordered to Produce the Prosecuting Attorney Custodial Files at Issue**

Defendants' first set of interrogatories asked for the identification of all departments, agencies, subdivisions or other entities, officials, employees, and representatives that possess data, or other information relating to the allegations in Plaintiffs' Joint Third Amended Complaint. *See* Defs.' Interrog. No. 2 (**Exhibit 7**) at 3. In response to that request, Cabell County identified its Prosecutor's Office. *Id.* at 4. On December 31, 2019, Defendants requested the custodial files for certain individuals from Cabell County's Prosecuting Attorney's office. (**Exhibit 8**) These custodial files are believed to include documents responsive to several of Defendants' Requests for Production (**Exhibit 9**), including but not limited to, Request Nos. 1, 2, 3, 4, 5, 6, 7, 9, 11, 16, 17, 19, 22, 23, and 25. *See* Ex. 9 at 1-20.

On January 29, the parties had a meet and confer call to discuss the prosecutor files. During that call, Cabell County again refused to produce any prosecutor files, claiming that such a production would be too burdensome.[9] Throughout February and March, the parties met and

---

[9] Cabell County has not asserted that any privilege applies, nor could it. Under West Virginia law, the "burden of establishing the attorney-client privilege or the work product exception, in all their elements, always rests upon the person asserting it." *State ex rel. United Hosp. Ctr., Inc. v. Bedell*, 199 W. Va. 316, 325 (1997) (internal quotation marks omitted). Attorney-client privilege does not apply because "[t]he attorney-client privilege belongs to the client," *State ex rel. Allstate Ins. Co. v. Gaughan*, 203 W. Va. 358, 372 n.21 (1998), and Cabell County is not the client in criminal matters brought by the Prosecuting Attorney, *see* W. Va. Code § 7-4-1(a) ("The prosecuting

- 10 -

conferred regarding custodial file issues and worked to reduce disagreements, but Cabell County consistently refused to produce prosecutor files. On March 19, Defendants sent Cabell County a letter to confirm that the parties were at an impasse regarding the prosecutor custodial files (**Exhibit 10**), and, on March 21, Cabell County confirmed, stating "[o]ur position will not change on those custodians." (**Exhibit 11**). Defendants request an order compelling Cabell County to produce custodial files of twenty (20) individuals in its Prosecuting Attorney's Office. The individuals are as follows:

- **Sean Hammers** – Prosecutor at Cabell County Prosecutor's Office (2014-present);
- **Chris Chiles** – Former Prosecutor at Cabell County Prosecutor's Office (2006-2013);
- **Charles W. Peoples Jr.** – Assistant Prosecutor at Cabell County Prosecutor's Office;
- **Kellie M. Neal** - Assistant Prosecutor at Cabell County Prosecutor's Office;
- **Jara L. Howard** - Assistant Prosecutor at Cabell County Prosecutor's Office;
- **Lauren E. Plymale** - Assistant Prosecutor at Cabell County Prosecutor's Office;
- **Kent L. Bryson** - Assistant Prosecutor at Cabell County Prosecutor's Office;
- **Margaret Phipps Brown** - Assistant Prosecutor at Cabell County Prosecutor's Office;
- **Sharon M. Frazier** - Assistant Prosecutor at Cabell County Prosecutor's Office;
- **Joe Fincham** - Assistant Prosecutor at Cabell County Prosecutor's Office;
- **Ryan Hamady** - Assistant Prosecutor at Cabell County Prosecutor's Office;
- **Sherron Hornbuckle** - Assistant Prosecutor at Cabell County Prosecutor's Office;
- **Jason Spears** - Assistant Prosecutor at Cabell County Prosecutor's Office;
- **Sarah Dixon** - Assistant Prosecutor at Cabell County Prosecutor's Office;
- **Tim Murphy** – Investigator at Cabell County Prosecutor's Office;
- **Dawn Drown** – Victim Advocate at Cabell County Prosecutor's Office;
- **Jeremy Bailey** - Victim Advocate at Cabell County Prosecutor's Office;
- **Steve Kern** - Victim Advocate at Cabell County Prosecutor's Office;
- **Tim Murphy** – Investigator at Cabell County Prosecutor's Office; and
- **Madeline Pearson** – Information Technology Specialist at Cabell County Prosecutor's Office

---

attorney shall attend to the criminal business of the state in the county in which he or she is elected . . . ."). Work-product protection also does not apply. *See, e.g., Ostrowski v. Holem*, No. 02 C 50281, 2002 WL 31956039, at *4 (N.D. Ill. Jan. 21, 2002) ("[M]any courts have found the work-product privilege unavailable when a prosecutor in a prior criminal investigation later objects to discovery by a litigant in a related and subsequent civil lawsuit.").

- 11 -

The custodial files for these individuals are highly relevant, as Special Master Wilkes's Discovery Ruling No. 1 indicates by ordering the production of information related to controlled substances violations from the Prosecuting Attorney's Office.[10] In particular, the files are relevant to at least three key defenses in this case: proximate causation, nonparty fault under West Virginia Code § 55-7-13D(a)(2), and the statute of limitations. *First*, the files likely will provide details of investigations and prosecutions of doctors, pharmacists, illegal drug trafficking organizations, and others who engaged in misconduct that caused the opioid epidemic in Cabell County and the City of Huntington, breaking the causal chain between Defendants' alleged conduct and Plaintiffs' alleged harm. *Second*, the files likely will show that nonparties are at fault for Plaintiffs' injuries, including by not sufficiently addressing opioid-related misconduct by others. *Third*, the files likely will show that Cabell County officials became aware, long before the applicable limitations periods, of opioid-related misconduct in Cabell County, their alleged resulting injuries, and perhaps even solicitation from private litigants to sue distributors to recover for such injuries. Indeed, prosecutors' files in other opioid litigations have proven to contain highly relevant information. For example, in Track 1 of the multidistrict litigation, evidence from a Cuyahoga County prosecutor showed that prescription opioids "exploded" into Ohio "like a jailbreak" and "absolutely" became a "problem" by the "early '90s."[11] In addition, given the history of county litigation against distributors in West Virginia, there is even more reason to believe that the Prosecuting Attorney's Office has relevant files. After the Attorney General sued Distributors in 2012, private counsel who were jointly representing the State urged a number of West Virginia counties to bring their own lawsuits against Distributors, including in Boone and Kanawha

---

[10] ECF No. 248 at 6.

[11] *See* James A. Gutierrez Deposition Transcript, *In re: National Prescription Opiate Litigation*, 1:17-md-02804 (Jan. 31, 2019), relevant portion attached as **Exhibit 12**.

counties where private counsel recommended that those counties sue out-of-state distributors for allegedly "dumping" opioids in the County. Defendants are entitled to discovery from the Prosecuting Attorney's Office files to determine, *inter alia*, whether Plaintiffs were told years ago that they had claims against distributors and were solicited to sue.

Further, Special Master Wilkes' recent ruling ordering the production of certain documents from the Prosecuting Attorney's Office confirms the relevance and importance of files from that Office:

> [I]n the interest in creating the best factual record possible, the undersigned RULES as follows. The undersigned finds Plaintiffs should be directed to provide any lists, reports or other compilation of statistics of arrests for controlled substances by law enforcement agencies under their jurisdiction, or those which they have access to. This would include the Sheriff's Office and City of Huntington Police Department. **Additionally, Cabell County should produce the same information from the Cabell County Prosecuting Attorney if available, along with any record.**

*See* ECF No. 248 at 6 (emphasis added). Because these subject Prosecuting Attorney custodial files are highly relevant to Defendants' defenses, and Cabell County has provided no legitimate basis for its refusal to provide additional relevant documents from that office, Defendants request that Cabell County be ordered to produce them.

## CONCLUSION

For the reasons set forth herein, Defendants request an order granting their Motion to Compel and ordering any further relief deemed necessary and appropriate.

April 6, 2020

**DEFENDANTS**

**AmerisourceBergen Drug Corporation**
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000

Fax: (304) 340-1050
gcallas@jacksonkelly.com


*/s/ Robert S. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH, LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

**Cardinal Health, Inc.**
By Counsel:

*/s/ Steven R. Ruby*
Brian A. Glasser (WVSB #6597)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
BAILEY GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Tel: (304) 345-6555
Fax: (304) 342-1110
*Counsel in Cabell County action*

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
emainigi@wc.com
lheard@wc.com
ahardin@wc.com

- 14 -

**McKesson Corporation**
By Counsel:

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*/s/ Timothy C. Hester*
Timothy C. Hester Mark H. Lynch
Christian J. Pistilli
Laura Flahive Wu
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
mlynch@cov.com
cpistilli@cov.com
lflahivewu@cov.com

*/s/ Carol Dan Browning*
Carol Dan Browning
Stites & Harbison, PLLC
400 West Market Street
Suite 1800
Louisville, Kentucky 40202
Tel: (502) 587-3400
Fax: (502) 587-6391
cbrowning@stites.com

*Counsel for McKesson Corporation*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 6th day of April, 2020, the foregoing "Memorandum in Support of Defendants' Motion to Compel Discovery Responses" was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)