UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

**CITY OF HUNTINGTON, WEST VIRGINIA,**

 **Plaintiff,**
v.

**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**

 **Defendants.**

CASE NO. 3:17-cv-01362

**CABELL COUNTY COMMISSION,**

 **Plaintiff,**
v.

**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**

 **Defendants.**

CASE NO. 3:17-cv-01665

## PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL THE DEPOSITION OF TIM ASHWORTH

 Cabell County Commission and the City of Huntington (hereinafter "Plaintiffs") hereby file this reply memorandum in further of their motion to compel the deposition of McKesson's Retail Sales Manager for Cabell County and the City of Huntington, Tim Ashworth.

 McKesson's opposition brief makes clear that the basic arguments in support of Plaintiffs' motion are all well founded. McKesson does not dispute that Plaintiffs' core due process argument is legitimate. McKesson concedes that it did not even make the MDL Plaintiffs aware of the initial deposition of Mr. Ashworth until nearly six months after it was taken in a separate litigation

1

involving the West Virginia Attorney General. (McKesson's Mem. at 2). Thus, it cannot be reasonably argued – and McKesson does not even attempt to argue – that Plaintiffs had an opportunity to even participate in this initial deposition.

Additionally, while McKesson contends that Mr. Ashworth's initial deposition covered how he generally went about performing his job, McKesson fails to cite to a single line of deposition testimony indicating that Mr. Ashworth was questioned about specific conduct related to customers in Cabell County. The reason for this omission is clear. No such questioning occurred. And there is good reason for that as well. The due diligence files for most of the Cabell County customers have only recently been produced by McKesson. Thus, it is vital that Plaintiffs be afforded the opportunity to question Mr. Ashworth in detail on the contents of those due diligence files.

Moreover, McKesson readily acknowledges that its production of relevant documents for Mr. Ashworth have not even been completed to this date. (*See* McKesson's Mem. at 4). Therefore, McKesson's response makes clear that there are additional relevant documents forthcoming that alone justify Mr. Ashworth's deposition being taken in this matter.

Tellingly, McKesson's opposition brief focuses much more on the ground rules for taking Mr. Ashworth's deposition than truly seeking to oppose the deposition taking place at all. Based on the aforementioned concessions, that tactic makes sense. But, the limitations McKesson seeks to place on Plaintiffs' ability to take the deposition of Mr. Ashworth are equally without merit.[1]

McKesson contends that Mr. Ashworth's deposition should be delayed until someone unstated time in the future due to concerns related to COVID-19 and that a remote deposition is

---

[1] Plaintiffs do agree that the deposition of Mr. Ashworth should not proceed until McKesson has substantially completed its document production for him. McKesson has indicated it will complete document production for Mr. Ashworth by April 30th and Plaintiffs have no objection to scheduling his deposition to occur shortly thereafter.

2

"unreasonable". (McKesson's Mem. at 4-5). While the COVID-19 pandemic has certainly altered some aspects of daily life, it should not serve as a basis to delay Mr. Ashworth's deposition. As the consequences of COVID-19 collide with another public health crisis – the opioid epidemic brought on by the Defendants – it is clear that the resolution of Plaintiffs' claims is now more urgent than ever.[2] These are unprecedented times that call for sensitivity, flexibility, and creativity to enable the judicial system to remain accessible and resolve disputes. The Government, Legislature, and Courts remain open. The parties have a responsibility to work together and see this case to its ultimate resolution. Indeed, the Governor has specifically concluded that attorneys and law firms are "Essential Businesses and Operations" who are exempt from the Governor's "Stay at Home Order." (*See* Mar. 23, 2020 Executive Order No. 9-20 at ¶ 3(u), which includes "legal services" in definition of "Essential Businesses and Operations"; Order attached hereto as Exhibit A). Thus, in order for the current trial date to remain intact, depositions of witnesses for all parties will likely have to be conducted remotely, at least to some degree.

Plaintiffs are fully prepared to take Mr. Ashworth's deposition remotely, and despite McKesson's largely speculative claims to the contrary, it is both reasonable and appropriate to do so here. In support of its tenuous position, McKesson raises purely speculative concerns about the adequacy of "home technology, limited bandwidth availability capable of streaming a remote deposition, whether a home deposition is compatible with the witnesses' family responsibilities" and challenges related to the use of exhibits as reasons it believes justifies barring a remote deposition of Mr. Ashworth. (McKesson Mem. at 5 fn. 1). However, McKesson utterly fails to establish whether any of these concerns actually exist for Mr. Ashworth. Once again, the reason for this omission is not difficult to fathom.

---

[2] Plaintiffs hereby incorporate by reference the discussion of the negative impact of COVID-19 on the opioid epidemic from Plaintiffs' Second Joint Discovery Status Report. (*See* ECF Dkt. No. 319 at 1-3).

3

McKesson also unpersuasively argues that Mr. Ashworth will not have "meaningful access to counsel" before and during his deposition if the deposition is taken remotely. (McKesson's Mem. at 5, fn. 1). However, this is an inconvenience rather than a prejudice and one that is shared equally by Plaintiffs and Defendants since all parties will be taking the deposition remotely and Plaintiffs envision the need for similar procedures to be applied to depositions of its witnesses in the future as well. In short, witnesses can be prepared for deposition in real time via any number of electronic means, including telephone and videoconference. Practical realities dictate that those means be utilized here.

To do nothing as it pertains to taking depositions, as McKesson proposes, would result in this entire case coming to a screeching halt for potentially several months and would likely result in the current trial date being vacated. But, the reality is that a remote deposition can practically be conducted here. Fortunately, we live in an era where there is available technology to address the logistical challenges presented by the current health crisis that will not compromise the goal of moving this case forward. The court reporting service Plaintiffs have utilized throughout this litigation, Golkow Technologies, stands ready to conduct remote depositions and has the capability to do so in a seamless fashion.[3] This case is simply too important and impacts the lives of too many West Virginians to justify it being stalled when reasonable options exist that would allow for the continued efficient work-up of the case.

The taking of remote depositions is also explicitly authorized under the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 30(b)(4) provides that "[t]he parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means." The Advisory Committee Notes make clear that "remote means" include those

---

[3] Representatives from Golkow Technologies also stand ready to address any concerns the parties or the Court may have concerning logistics related to conducing remote depositions.

conducted electronically. *See* 1993 Advisory Committee Notes**.** Likewise, Rule 30(b)(2) provides that the party taking the deposition has the ability to *record* the deposition in whatever manner he sees fit including "sound and visual" thus "recogniz[ing] the routine nature of non-stenographic recording." Fed. R. Civ. P. 30(b)(2). Rule 30(b)(3) permits deposition testimony to "be recorded by audio, audiovisual, or stenographic means." Fed. R. Civ. P.30(b)(3).

Importantly, Courts across the nation, including in West Virginia, have recognized the need to continue the litigation of cases during this pandemic. In fact, specifically in response to the COVID-19 pandemic, federal courts have issued Orders dictating the taking of remote depositions.

In an order entered just last week, the Court of Common Pleas of Philadelphia held that litigation should continue in all respects, including depositions, for all cases pending before that court. The Court specifically noted that "much can be done to advance civil litigation in a safe manner consistent with the appropriate social distancing practices." (President Judge Administrative Order No. 29 of 2020; attached hereto as Exhibit B). As to depositions, the Court ordered "to the extent practicable, depositions should be conducted remotely through telephone, videoconference, or similar technology. Court reporters need not be present in the same location as witnesses and/or counsel." *Id.*

Three weeks ago the Southern District of New York also issued a directive outlining alternatives to traditional in-person depositions:

> "[P]ursuant to Fed. R. Civ. P. 30(b)(3) and (b)(4), that all
> depositions in this action may be taken via telephone,
> videoconference, or other remote means, and may be recorded by
> any reliable audio or audiovisual means. This order does not
> dispense with the requirements set forth in Fed. R. Civ. P. 30(b)(5),
> including the requirement that ('[u]nless the parties stipulate
> otherwise") the deposition be "conducted before an officer
> appointed or designated under Rule 28," and that the deponent be

5

>>placed under oath by that officer.' For avoidance of doubt however, a deposition will be deemed to have been conducted "before" an officer so long as that officer attends the deposition via the same remote means (e.g., telephone conference call or video conference) used to connect all other remote participants, and so long as all participants (including the officer) can clearly hear and be heard by all other participants."

*In re Keurig*, Order re Remote Depositions (SDNY March 16, 2020) (attached hereto as Exhibit C).[4]

Many of the highest Courts in the land have taken similar approaches to conducting their business. On April 8, 2020, the Supreme Court of Appeals of West Virginia announced in a press release that it would be conducting oral arguments using remote technology beginning on April 14, 2020. All justices and attorneys will be participating in oral arguments remotely. (Apr. 8, 2020 Supreme Ct. of Appeals of W.V. Press Release, attached hereto as Exhibit E). Additionally, the Supreme Court of the United States recently announced that for the first time in its history it would be conducting oral arguments remotely beginning in May. (Apr. 13, 2020 Supreme Court of U.S. Press Release, attached hereto as Exhibit F).

Finally, McKesson contends that any deposition of Mr. Ashworth should be limited to two hours. (McKesson Mem. at 5). Given that Plaintiffs have not yet had the opportunity to depose Mr. Ashworth and there being numerous topics specific to Cabell County that Plaintiffs need to cover with him, limiting Mr. Ashworth's deposition to two hours is simply not workable. However, Plaintiffs are willing to limit themselves to five hours on the record with Mr. Ashworth as a compromise position.[5]

---

[4] Other federal courts have entered similar orders in dealing with depositions being taken in the midst of the COVID-19 pandemic. *See, e.g., County of Cook v. Bank of America Corp. et. al.* (N.D. Ill. March 12, 2020) (encouraging the parties to conduct depositions by contemporaneous videoconferencing rather than simply canceling them outright) (complete transcript attached hereto as Exhibit D).

[5] McKesson notes that Plaintiffs previously agreed to a five-hour time limit for Mr. Ashworth's deposition, which is half true. Plaintiffs did agree to that time limit in exchange for an agreement that Mr. Ashworth would be produced for a deposition without the need for motion practice. Such an agreement was obviously never reached thus necessitating Plaintiffs' instant motion. However, Plaintiffs are willing to agree to a five-hour time limit here in order to streamline the issues for the Court's consideration.

In sum, Plaintiffs have produced ample evidence to support an Order compelling the deposition of Mr. Ashworth. That deposition should also be ordered to occur remotely, if necessary, in order to efficiently continue the litigation of this extremely important case. Therefore, Plaintiffs respectfully request an Oder from this Court compelling McKesson to produce Mr. Ashworth for a deposition in May of 2020, which can occur remotely if necessary.

Respectfully submitted,

Dated: April 16, 2020

/s/ Brandon L. Bogle
Brandon L. Bogle, Esq. FL Bar #52624
**Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.**
316 South Baylen Street, Suite 600
Pensacola, Florida 32502
bbogle@levinlaw.com
(850) 435-7043 (Telephone)
(850) 435-7020 (Facsimile)

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this the 16th day of April, 2020, the foregoing document was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Brandon L. Bogle
Brandon L. Bogle