# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

THE CITY OF HUNTINGTON,
      Plaintiff,

v.                                                                          CIVIL ACTION NO. 3:17-01362

AMERISOURCEBERGEN
DRUG CORPORATION, et al.,
      Defendants.

_____

CABELL COUNTY COMMISSION,

      Plaintiff,

v.                                                                          CIVIL ACTION NO. 3:17-01665

AMERISOURCEBERGEN
DRUG CORPORATION, et al.,
      Defendants.

_____

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO EXTEND COURT DEADLINES

Since the March 5 status conference, the world has been transformed in ways that the Court and parties could not have foreseen. The state and the country have largely shut down, an unprecedented event that is essential to save lives but has badly hobbled discovery. Defendants AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation (collectively, "Defendants") respectfully request modest relief from the ambitious schedule this Court set at the March 5, 2020 status conference. Specifically, Defendants request that all current pre-trial deadlines be extended by three months and that the trial be rescheduled to begin on or around December 1, 2020.

4827-1199-1226.v1

From the start, it was apparent that it would be very difficult for the parties to meet that schedule given the breadth of Plaintiffs' allegations, the complexity of the opioid crisis in West Virginia for which Plaintiffs are trying to hold Defendants entirely responsible, the breadth and magnitude of the remedies that Plaintiffs seek, the extensive discovery required from state and local agencies and other third parties, and the absence of any prior discovery or case preparation specific to these plaintiffs.

Mindful of the aggressive schedule, Defendants have diligently pursued discovery. Defendants' request for relief is necessitated in large part by *Plaintiffs'* failure to comply with their discovery obligations, and the need for critical and indisputably relevant third-party discovery that understandably is at a virtual standstill due to the current health crisis. The challenges presented by the ambitious schedule and Plaintiffs' discovery failures have been compounded by the recent global health crisis associated with the spread of the Coronavirus Disease ("COVID-19").

As distributers of medications and medical equipment, Defendants are focused on their critical role in helping to respond to the COVID-19 pandemic, which requires ongoing dependable access to the medical supplies and medicines that Defendants distribute to hospitals, urgent care facilities, long-term care facilities, and pharmacies across the country. Defendants' employees are heavily engaged in these and other activities to help mitigate the effects of this pandemic on the healthcare supply chain and will be for the foreseeable future. Defendants have implemented "pandemic contingency plans"[1] and are "engaged with government and healthcare officials,"[2]

---

[1]    Cardinal    Health,    *COVID-19    /    Cardinal    Health    Global    Preparedness*, https://www.cardinalhealth.com/en/cmp/ext/corp/cardinal-health-covid-19-response-plan.html.
[2] AmerisourceBergen, *Coronavirus (COVID-19)*, https://www.amerisourcebergen.com/coronavirus-covid-19-information.

4827-1199-1226.v1

including those at the highest levels of governments,[3] to get "critical supplies to customers who need them."[4]

Plaintiffs and other key government agencies are likewise, and rightly, focused on the urgent and immediate issues presented by COVID-19.  The same departments and agencies who possess relevant and necessary discovery—including those related to public health, law enforcement, and emergency response—are also among those most overwhelmed with the response to the COVID-19 crisis and its impact.

The inescapable conclusion is that the current schedule now is entirely unworkable. Defendants, therefore, request a three-month extension of all of the deadlines set by the Court at the March 5, 2020 status conference.  While the pressing need for the requested extension applies right now to the fact discovery currently underway, the compressed schedule set by the Court for expert discovery—for example, requiring all reports to be prepared and served in less than three weeks after the close of fact discovery—and other pretrial proceedings does not allow for fact discovery deadlines to move without a corresponding shift in other dates.  As events unfold, particularly due to unavoidable impediments created by the pandemic, further adjustments in the schedule may be necessary.  There is no proper basis to deprive the parties of the time needed to adequately prepare this case for trial.

I.      APPLICABLE LAW

Pursuant to Rule 16(b)(4) of the Federal Rules of Civil Procedure, "[a] schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4); *see also* LR

---

[3] White House, *Remarks by President Trump in a Meeting with Supply Chain Distributors on COVID-19* (Mar. 29, 2020), https://www.whitehouse.gov/briefings-statements/remarks-president-trump-meeting-supply-chain-distributors-covid-19/.
[4] McKesson, *McKesson's Response to Coronavirus (COVID-19)*, https://www.mckesson.com/About-McKesson/Coronavirus-Response.

4827-1199-1226.v1

Civ P 16.1(f)(1) (permitting modification of scheduling order to extend time limit to file motions, complete discovery as well as trial dates for good cause shown).  "'Good cause' requires 'the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence.'" *Hunt v. Brooks Run Mining Co.*, 51 F. Supp. 3d 627, 636 (S.D.W. Va. 2014) (Faber, J.) (citing *Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012)).  The "good cause standard will not be satisfied if the [district] court concludes that the party seeking relief . . . has not acted diligently in compliance with the schedule."  *Id.* at 635-36 (internal quotations omitted).  "While other factors warrant consideration, including danger of prejudice to the non-moving party, the length of delay and its potential impact on the judicial proceedings, the reason for the delay, and whether the movant acted in good faith, *diligence is the hallmark of the Rule 16(b)(4) good cause standard*." *Id.* (emphasis added).[5]  As explained below, good causes exists here and no considerations weigh against an extension.

## II.      ARGUMENT

### A.      Defendants Have Been Diligent in their Efforts to Comply with the Existing Schedule.

Defendants have been diligent in all ways throughout this litigation and have sought to stay ahead of the game on all possible issues that could arise—including the challenges that necessitate the filing of this motion, and notwithstanding the recent impact of COVID-19 on the work of Defendants and their counsel.  These efforts also have been detailed in the periodic status reports that have been submitted to the Court and the Special Master.  *See* Dkt. 247, 290.

---

[5] *See also* 3 Moore's Federal Practice § 15.14[1][b], at 16-72 (Matthew Bender 3d ed. 2010) ("[A]lthough undoubtedly there are differences of views among district judges about how compelling a showing must be to justify extending the deadlines set in scheduling orders, it seems clear that the fact on which courts are most likely to focus when making this determination is the relative diligence of the lawyer or lawyers who seek the change."); *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 155 (1st Cir. 2004) ("Prejudice to the opposing party remains relevant but is not the dominant criterion.").

4827-1199-1226.v1

Before the schedule was even set, Defendants commenced discovery in critical areas, including third-party discovery from law enforcement, opioid and substance abuse task forces, child and family services, medical examiners, medical boards, treatment centers, local courts and prosecutors, the West Virginia Board of Pharmacy, and the West Virginia Board of Medicine, as well as party discovery that Defendants served on Plaintiffs in October 2019.  Then, after the schedule was set, Defendants continued to diligently and urgently seek discovery from Plaintiffs and third-parties alike, including the West Virginia Department of Health and Human Services, the Drug Enforcement Agency ("DEA"), the West Virginia Public Employees Insurance Agency and the West Virginia Offices of the Insurance Commissioner, the West Virginia Bureau for Medical Services, the West Virginia Board of Dentistry, and additional local hospital and treatment centers.  Despite Defendants' diligent efforts, nearly all third-parties—citing the COVID-19 restrictions and their resulting impact—have requested more time, filed motions to quash, or failed to respond, thus requiring Defendants to engage in extensive motions practice before Special Master Wilkes.

**B.     Plaintiffs Have Continued to Seek Discovery That Would Extend Beyond the Current Schedule.**

Defendants are not alone in continuing to seek both party and third-party discovery as the current April 30, 2020 deadline for close of document discovery approaches.  In just the last few weeks, Plaintiffs have served their Fourth, Fifth and Sixth[6] Sets of Combined Requests on the Defendants, responses to which are not due until after the current written discovery and document production cut-off.  Moreover, in just the last two weeks Plaintiffs have served fifteen third-party subpoenas.  Fourteen of those subpoenas seek expansive transactional data from pharmacies.  The other subpoena seeks from consultant Thorsen French Advocacy, LLC broad discovery that is

---

[6] Plaintiffs have only served a Sixth Set of Combined Requests on Cardinal Health.

largely untethered to any geographic limitation, including all communications with **any** distributor of opioids—not limited to the three Defendants here—relating to the distribution of opioids, all documents referencing **any** legislation that pertains to opioids, and all documents referencing any contract with **any** distributor of opioids.  In addition, on March 31 Plaintiffs filed a Motion to Compel seeking an "order requiring Defendants to produce all communications with the DEA **back to 1980** regarding Defendants' SOMS obligations."  Pls.' Mot. to Compel at 5, Dkt. 269 (emphasis added).  On April 9, Defendants agreed to conduct a reasonable search for and produce any communications with DEA related to the approval or request for approval of Defendants' SOM systems dating back to 1980, which is an additional 16 years prior to what they had previously agreed to search for and produce.

> **C.     Extension of the Schedule Is Needed Because Plaintiffs Have Not Produced the Documents Needed to Move Discovery Forward.**

As set forth in the Motion to Compel that Defendants filed on April 6, 2020,[7] Plaintiffs have yet to produce many key documents and custodial files.  Defendants cannot proceed with the necessary deposition discovery before document discovery is complete (even if COVID-related issues relating to depositions somehow could be resolved).  Defendants seek this critical information from custodians identified by *Plaintiffs* as individuals likely to possess relevant information.  For many of these key individuals, Plaintiffs either have failed to produce complete custodial files or have outright refused to produce any documents at all.

Specifically, the City of Huntington identified twenty-eight current or former employees who would likely have discoverable information relating to Huntington's claims.  *See* Defs. Mot. to Compel. at 1-2, Dkt. 284.  On December 31, 2019, Defendants requested that Plaintiffs produce

---

[7] Defs.' Mot. to Compel. at 10-13, Dkt. 284.

4827-1199-1226.v1

the custodial files for those employees and departments identified. *Id.* at 2. Despite numerous attempts to meet and confer regarding the production of these custodial files, Huntington has continued to improperly withhold files for six individuals.[8] *Id.* at 2-3. Their objections merely assert that the requested documents would be cumulative and duplicative. These blanket and unsubstantiated objections do not justify Plaintiffs' refusal to produce the requested files. *Id.* at 3.

Similarly, Defendants have requested from Cabell County the custodial files for twenty relevant employees from the County's Prosecuting Attorney's Office. *Id.* at 10-11. After numerous meet and confers, Cabell County remains firm in its refusal to produce *a single page* from any of the requested custodial files. *Id.* These custodial files indisputably are relevant. The requested files contain a vast amount of information central to the issues in this action—and likely will provide details related to investigations and prosecution of doctors, pharmacists, and illegal drug trafficking organization as well as anyone who engaged in misconduct that may have contributed to the opioid crisis. (Indeed, *the absence* of such information in these files would also be relevant to this litigation.) Such information also may lead to relevant information related to when Cabell County became aware of opioid-related misconduct in its communities. Cabell County stands on its position despite the Special Master's Discovery Ruling No. 1, which requires Plaintiffs to produce responsive information from Cabell County Prosecuting Attorney. Discovery Ruling No. 1 at 7, Dkt. 248. As a result of Plaintiffs' recalcitrance, Defendants remain in the dark as to this critical information needed to defend themselves against Plaintiffs' sweeping claims.

---

[8] The individuals whose custodial files are being withheld from Defendants include:
- Justin Antle, Huntington Deputy Fire Chief;
- John Ellis, City of Huntington Police Captain;
- Gene Baumgardner, City of Huntington Police Chief;
- Robert Wilhelm, (Former) City of Huntington Finance Director;
- Greg Fuller, (Former) City of Huntington Fire Chief; and
- Angie Bracey, Executive Assistant to the Mayor of the City of Huntington.

4827-1199-1226.v1

Finally, on March 27, 2020, Defendants provided Plaintiffs with a list of priority deponents, hoping that Plaintiffs could prioritize responses to Defendants' requests for production accordingly.  *See* Letter re: Custodial Files for Priority Deponents, Ex. 1.  Despite Defendants' efforts, production of custodial and department files for those identified priority deponents remains woefully incomplete.  And for some individuals, Cabell County has been unable to locate even a single document for production.[9]

## D.  Critical Third Party Discovery Remains Outstanding.

Third parties possess critical documents in this case.  Despite Defendants' diligence in seeking these documents, the vast majority of third party discovery remains outstanding, largely due to the impact of COVID-19 that was not, and could not have been, taken into account in the initial case schedule.  Like party depositions, Defendants cannot proceed with fact depositions of key third party witnesses until document production can be completed by those parties.

By way of example, Defendants have requested relevant documents from key third parties such as the DEA, the West Virginia Board of Pharmacy, the West Virginia Department of Health and Human Services, the West Virginia Office of the Chief Medical Examiner ("Medical Examiner"), the Cabell-Huntington Health Department ("Health Department"), and the Bureau of Children and Families ("BCF").

Defendants seek critical third party discovery from their federal regulator, the DEA— which now is the subject of a Motion to Compel filed on April 14.  As the motion explains, despite Defendants' best efforts to reach an agreement with the Department of Justice ("DOJ") lawyers representing DEA, DEA still will not commit to produce any documents responsive to Defendants'

---

[9]  On March 21, 2020, Cabell County indicated that they were unable to locate the custodial file for either Kim Wolfe or Tom McComas—former Sheriffs for Cabell County—without providing any explanation for this deficiency. *See* Letter re: Custodial Files for Priority Deponents 2, Ex. 1.

4827-1199-1226.v1

subpoena and has not even served written objections to the requests.  It is undisputed that DEA documents are highly relevant to Plaintiffs' claims and are essential to Defendants' preparing their defense, including summary judgment motions and expert reports, and trial itself.

Defendants also need key discovery from their state regulator, the West Virginia Board of Pharmacy.  The Board of Pharmacy is the state entity that licenses and regulates Defendants, licenses and regulates the pharmacy customers serviced by Defendants, and administers and enforces the West Virginia Uniform Controlled Substances Act and its implementing regulations, as well as the State's Prescription Drug Monitoring Program ("PDMP").  The Board of Pharmacy receives and analyzes suspicious order reports, as well as the statewide prescription data that it receives through the PDMP.  The Board of Pharmacy is indisputably a key third party from which defendants need discovery in this litigation, but it has not yet been able to begin collecting or producing documents.

There are numerous other state agencies and offices from which Defendants seek necessary discovery.  For example, Defendants need critical third party discovery from the West Virginia Bureau of Children and Families.  BCF likely possesses information and documents relevant to Plaintiffs' alleged damages, including information relating to the placement of children in foster care whose parents suffer from opioid-related disabilities or incapacitation.  This discovery likely will reveal information on policies and practices related to investigations of cases involving opioids.  Defendants sent a subpoena to the BCF on February 25, 2020 and, despite continued meet and confer efforts, BCF has not yet produced a single document.

In addition, the West Virginia Medical Examiner possesses discovery related to fatal overdoses as well as other information relating to deaths potentially attributable to opioids.  This information is relevant to an understanding and assessment of the opioid epidemic's impact in

4827-1199-1226.v1

Huntington, West Virginia, and the surrounding Cabell County area.  A critical consideration in assessing the opioid epidemic's impact in Plaintiffs' communities is the number of individuals whose deaths are attributable to opioids or other controlled substances as well as the procedures and policies in place for determining how to classify a death as opioid-related.  Defendants need this information to gain a clear understanding of the opioid epidemic in Cabell County, and their expert witnesses also need this information to determine whether investigations on opioid-related deaths are being accurately reported.  Defendants sent a subpoena to the Medical Examiner on February 21, 2020, but the Medical Examiner has not yet produced a single document.

Defendants have requested similar documents and underlying data from key local entities such as the Cabell-Huntington Health Department.  This information is needed too.  Plaintiffs' case is premised on the theory that Defendants' conduct created a public health crisis. Accordingly, the Health Department documents are central to the claims and defenses in this case. For example, the information sought from the Health Department might reveal alternative, intervening, or superseding causes for the harms Plaintiffs attribute to Defendants' conduct, including but not limited to illicit drug use by Plaintiffs' residents and other illegal or fraudulent third-party conduct.  This discovery also might demonstrate that Plaintiffs themselves approved and endorsed certain prescription opioids they now say were unnecessary or misused, laying blame on Defendants.  This discovery also may show that Plaintiffs provided reimbursements for treatment with prescription opioids in a manner that caused doctors to prescribe opioids rather than other, more expensive, pain management treatments.  This community impact data is the most basic of information related to the claims Plaintiffs assert—yet none has been produced since Defendants sent a subpoena to the Health Department on March 5, after a lengthy period of conflicting messages from Plaintiffs as to whether Plaintiffs would continue to produce documents

4827-1199-1226.v1

from the Health Department, or whether a third party subpoena was necessary.  Once Defendants

served a subpoena on the Health Department, they learned only within the last few days that

Plaintiffs collected documents from the Health Department months ago, but had neither reviewed

nor produced 75,000 electronic Health Department documents, despite receiving Defendants'

document requests nearly six months ago.

Plaintiffs acknowledge that the current deadline for non-party discovery is unworkable, yet

argue that no other adjustment to the case schedule are required.  Contrary to Plaintiffs' position,

the compressed schedule set by the Court does not allow for fact discovery deadlines to move

without a corresponding shift in other dates.

**E.      Progress Has Been Constrained by the COVID-19 State of Emergency, Which
Has Brought Document Collection from Key Third Parties to a Standstill.**

This litigation necessarily involves the greater public health community, which currently

is under immense stress responding to the COVID-19 crisis.  The very same public health entities,

state agencies, and healthcare providers that possess information key to Plaintiffs' claims are on

the front line of West Virginia's response to this health crisis.  Defendants have issued subpoenas

to these organizations because the current case management schedule leaves them no other choice.

With few exceptions, these medical boards, hospitals, and state agencies have responded with

requests for more time or have asked to delay their response until the COVID-19 pandemic has

subsided.  Defendants are sympathetic to these requests and have readily offered responding

parties as much leeway as the current case schedule will allow.  Unfortunately, that timing is

simply not adequate in light of the unprecedented circumstances.

For example, just last week Cabell Huntington Hospital filed a Motion to Quash requesting

up to 120 days to respond to Defendants' subpoena.  *See* Cabell Huntington Hospital's Mot. to

Quash at 4, Dkt. 310.  Defendants had worked cooperatively with the Hospital for weeks before

the Hospital filed its motion, and had twice extended the Hospital's deadline to respond.  In its

motion, the Hospital does not dispute the relevance of the information sought.  Instead, the Hospital

ultimately concluded that it is not feasible to respond to the subpoena at this time, explaining:

> The requisite investigation necessary to tackle this Subpoena will entail extensive interaction with hospital personnel and detailed document review, many of which may or may not be available in an electronic format.  The investigation will exceed the limitations of email and telephone communications.  ***Undersigned counsel and staff will need to interject themselves into the hospital environment for fact-finding interviews and document review.***  Under normal circumstances and with a reasonable time for compliance, this would be ok. Currently, however, medical providers and administrative staff should be left to focus on pandemic preparedness.

*Id.* at 3 (emphasis added).  As a result, the Hospital "seeks additional time to compile and review"

the information sought.  *Id.*

This delay in production of key documents is not limited to just a few of the third parties.

Indeed, the Hospital's motion is representative of the responses Defendants have received from

most of the entities on which they have served document production requests.  *See, e.g.*, West

Virginia Office Insurance Commissioner's Mem. in Supp. Mot. to Quash at 3, Dkt. 261

("Specifically, undersigned counsel shared that the Covid-19 pandemic created logistical hurdles

to the compilation and review of materials potentially responsive to the subpoena.  In addition, the

office closure and document compilation issues would make it impossible to adequately prepare

numerous witnesses for deposition."); Public Employees Insurance Agency's Mem. in Supp. to

Mot. to Quash 2-3, Dkt. 262 ("The Covid-19 pandemic has drastically impacted the operations of

PEIA, including the closure of its buildings.  Employees who have the capability to work remotely

are doing so, while others will be placed on leave. PEIA employees that are working remotely do

not have full access to materials potentially responsive to the document subpoena and/or have

limited functionality.").

4827-1199-1226.v1

Even those organizations that are not directly involved in providing medical treatment are understandably impacted by the pandemic, which has halted discovery progress across the board. For example, medical licensing boards that possess key information about opioid prescribing policies, procedures, and oversight, have sought extensions, because COVID-19 has closed their offices and sent their staff home.[10]  They cannot gather documents responsive to Defendants' subpoenas until these offices reopen.  In addition, the West Virginia Board of Pharmacy agreed to produce critical discovery that Defendants seek, but cannot do so in the current environment.  The Board of Pharmacy has offered to make certain documents available for inspection, but such inspection is not possible right now.  The Governor's shelter-in-place order currently prevents Defendants from putting together the requisite team and traveling to conduct the document review. The Board of Pharmacy, moreover, has indicated it would need to have its in-house counsel review certain documents before it could make them available for inspection or production, and that attorney is occupied with issues arising from COVID-19.  Similarly, the Board of Pharmacy has agreed to run search terms across custodial documents, but it is unable to determine whether certain custodial records exist on physical media, let alone run the searches, until employees can return to the office.

These issues are not confined to the smaller, local agencies.  Even the West Virginia Department of Health & Human Resources Bureau for Medical Services has requested an extension because its employees and resources are focused on responding to the COVID-19 pandemic.[11]  Similar extension requests have been made by the Governor's Council on Substance Abuse Prevention and Treatment and the West Virginia Department of Military Affairs.  As

---

[10]    *See, e.g.*, Def. Opp. Br. to Pls' Mot. for a Bench Trial Management Order 8, Dkt. 258-6.

[11] *Id.* at 6, Dkt. 258-2.

4827-1199-1226.v1

discussed above, all essential business and operations—both public and private—are operating at limited capacities and are rightly focused on responding to this global health pandemic.  With such limitations, it is simply not possible for Defendants to obtain necessary discovery in this case and to meet the Court's current schedule.

## III.    CONCLUSION

Defendants share the Court's desire to pursue an efficient resolution of these cases, and have worked expeditiously to secure the extensive discovery necessary to their defense of this litigation.  Despite this diligence, circumstances outside Defendants' control now necessitate a modest extension of the current schedule.  For the reasons stated above, Defendants respectfully request a three-month extension of all deadlines set at the March 5, 2020, status conference as set forth in Exhibit 2, culminating in a trial date on or around December 1, 2020.  Defendants will work diligently to adhere to this revised schedule, although it remains possible that further adjustments in the schedule may be required, particularly due to unavoidable further delays necessitated by the ongoing pandemic.

Dated:  April 17, 2020                                            Respectfully submitted,

                                                                 *AmerisourceBergen Drug Corporation*
                                                                 By Counsel:

                                                                 */s/ Gretchen M. Callas*
                                                                 Gretchen M. Callas (WVSB #7136)
                                                                 JACKSON KELLY PLLC
                                                                 Post Office Box 553
                                                                 Charleston, West Virginia 25322
                                                                 Tel: (304) 340-1000
                                                                 Fax: (304) 340-1050
                                                                 gcallas@jacksonkelly.com

4827-1199-1226.v1

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

**Cardinal Health, Inc.**
By Counsel:

*/s/ Steven R. Ruby*
Brian A. Glasser (WVSB #6597)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
BAILEY GLASSER LLP
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
bglasser@baileyglasser.com
sruby@baileyglasser.com
rfranks@baileyglasser.com
*Counsel in Cabell County action*

*/s/ Michael W. Carey*
Michael W. Carey (WVSB #635)
David R. Pogue (WVSB #10806)
CAREY, SCOTT, DOUGLAS &
KESSLER, PLLC
901 Chase Tower,
707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
mwcarey@csdlawfirm.com
drpogue@csdlawfirm.com
*Counsel in the City of Huntington action*

4827-1199-1226.v1

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC  20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard @wc.com
ahardin@wc.com

**McKesson Corporation**
By Counsel:

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
Jason L. Holliday (WVSB #12749)
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200
jwakefield@flahertylegal.com
        jholliday@flahertylegal.com

*/s/ Geoffrey E. Hobart*
Geoffrey E. Hobart
Mark H. Lynch
Christian J. Pistilli
Laura Flahive Wu
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street N.W.
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
cpistilli@cov.com
lflahivewu@cov.com

4827-1199-1226.v1

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 17th day of April, 2020, the foregoing

***Defendants' Memorandum of Law in Support of Motion to Extend Court Deadlines*** was served

using the Court's CM/ECF system, which will send notification of such filing to all counsel of

record.

/s/ Gretchen M. Callas
Gretchen M. Callas (WVSB # 7136)

17

4827-1199-1226.v1