## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON, | |
| Plaintiff, | |
| v. | Civil Action No. 3:17-01362<br>Hon. David A. Faber |
| AMERISOURCEBERGEN DRUG<br>CORPORATION, et al., | |
| Defendants. | |
| CABELL COUNTY COMMISSION, | |
| Plaintiff, | |
| v. | Civil Action No. 3:17-01665<br>Hon David A. Faber |
| AMERISOURCEBERGEN DRUG<br>CORPORATION, et al., | |
| Defendants. | |

## DEFENDANTS' REPLY IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT: STANDING

Plaintiffs' Opposition is long on mere assertion and misreads settled West Virginia law. Few principles of West Virginia law are as long-established as the rule that a local government "may abate only that as a nuisance which is [1] recognized as such per se, or [2] branded as such by lawful statute or ordinance." *Parker v. City of Fairmont*, 72 W. Va. 68 Syl. 1, 79 S.E. 660 Syl. 1 (1913).[1]  The Opposition seeks to side-step these requirements because Plaintiffs cannot satisfy either requirement.

**No Per Se Nuisance**.  The distribution of FDA-approved medications by DEA-registered, state-licensed distributors to DEA-registered, state-licensed pharmacies cannot be a

---

[1]  *Accord Sharon Steel Corp. v. City of Fairmont*, 175 W. Va. 479, 487, 334 S.E.2d 616, 625 (1985); *State ex rel. Ammerman v. City of Philippi*, 136 W. Va. 120, 124, 65 S.E. 2d 713, 716 (1951); *Donohoe v. Fredlock*, 72 W. Va. 712 Syl. 1, 79 S.E. 736 Syl. 1 (1913).

per se nuisance based on two settled principles of West Virginia law.  First, such distribution is

not "at all times and under all circumstance" a nuisance.  *Duff v. Morgantown Energy Ass'n*, 187

W. Va. 712, 716 n.8, 421 S.E.2d 253, 257 n.8 (1992).  Second, such distribution is both "a lawful

business" and "a business authorized to be conducted by the government."  *Burch v. Nedpower*

*Mount Storm*, 220 W. Va. 443, 45657, 647 S.E.2d 879, 89293 (2007).

      **No Ordinance**.  It is uncontested that neither Plaintiff enacted the requisite ordinance

that defines the distribution of prescription opioids as a nuisance.

      Accordingly, Plaintiffs lack standing to bring a public nuisance claim, and Defendants are

entitled to summary judgment.

### This Case Does Not Involve a Per Se Nuisance

      1.    The Supreme Court of Appeals has consistently and clearly defined what

constitutes a per se nuisance.  It is "an act, occupation, or structure which is a nuisance ***at all***

***times*** and ***under all circumstances***."  *Duff*, 187 W. Va. at 716 n.8, 421 S.E.2d at 257 n.8 (all

emphases added unless otherwise stated); *Harless v. Workman*, 145 W. Va. 266, 274, 114 S.E.2d

548, 552 (1960).  This is the long-established, broadly-accepted definition of nuisance per se.[2]

And the corollary of this definition is that "a lawful business or a business authorized to be

conducted by the government cannot constitute a nuisance *per se*."  *Burch*, 220 W. Va. at 45657,

---

[2]    *See* Restatement (Second) of Torts § 821A, cmt. b (1979) (defining "nuisance per se" as
"harmful conduct of a kind that *always* results in liability"); 6A McQuillin Mun. Corp.
§ 24:63 (3d ed.) ("A nuisance per se … is one not permissible under any condition, … it is a
nuisance *at all times, and under all circumstances*"); 7 American Law of Torts § 20:2 ("[A]
nuisance per se is an act, occupation, or structure that is a nuisance *at all times and under any*
*circumstances* …. *A statutorily authorized activity … cannot constitute an absolute nuisance*
*as a matter of law*."); 58 Am. Jur. 2d Nuisances §§ 12 ("A 'nuisance per se' is an act,
occupation, or structure that, by its very nature and of itself, is a nuisance *at all times and*
*under any circumstances*."), 13 ("The traditional test for determining what is a nuisance per
se is that the nuisance has become dangerous *at all times, and under all circumstances*, to
life, health, or property.").

In contrast, "[a] nuisance per accidens, or in fact, has been generally defined as those which
become … a nuisance based on the facts, circumstances, and surroundings, … one which
may become a nuisance by reason of … the manner in which it may be conducted or
managed."  *Duff*, 187 W.Va. at 716 n.8, 421 S.E.at 257 n.8.

647 S.E.2d at 89293 (2007).  Accordingly, the eye of the needle is small:  "[t]he number of nuisances per se is necessarily limited, and by far the greater number of nuisances are nuisances per accidens."  *Harless*, 145 W.Va. at 274, 114 S.E.2d at 55253 (quoting C.J.S. Nuisances § 3, at 73334).  Under these established standards of West Virginia law, Defendants' lawful business of distributing FDA-approved prescription opioids to DEA-registered and state-licensed pharmacies cannot be a per se nuisance.

To begin, it is clearly the case that the distribution of FDA-approved medications through the DEA-approved supply chain to pharmacies that fill a doctor's prescription is not "a nuisance at all times and under all circumstances."  *Duff*, 187 W. Va. at 716 n.8, 421 S.E.2d at 257 n.8.[3] Plaintiffs do not contend, after all, that their residents ***never*** had a need for prescription opioids, that doctors in the city and county ***never*** prescribed them for a legitimate medical purpose,[4] or that city and county pharmacies ***never*** placed orders with Defendants to fill legitimate prescriptions.  To the contrary, Plaintiffs themselves acknowledge the significant medical need for pain medication among West Virginia workers and residents.  *See* Huntington Compl. ¶¶ 19, 2831; Joint Compl. ¶¶ 115962.  Therefore, given Plaintiffs' concessions, Defendants'

---

[3]   The Joint Complaint does not allege that ABDC, Cardinal Health or McKesson was ever not DEA-registered and state-licensed to distribute controlled substances.  Nor does the Joint Complaint allege that any one of Defendants ever distributed prescription opioids to a West Virginia pharmacy that was not DEA-registered and state-licensed.

[4]   DEA told Congress in 2014 that 99.5 percent of doctors did not over-prescribe opioids. Examining the Growing Problems of Prescription Drug and Heroin Abuse:  Hearing Before the Subcomm. on Oversight and Investigations of the H. Comm. on Energy and Commerce, 113 Cong. 76 (2014) (Statement of Deputy Assistant Administrator, Office of Diversion Control, Drug Enforcement Administration).

Thus, Plaintiffs cannot claim that even pharmacy orders that allegedly should have been reported as "suspicious" were a nuisance "at all times" and "under all circumstances."  A particular pharmacy order may have been reportable (e.g., because larger than prior orders) and yet, in the circumstances, merely reflected prescriptions for a legitimate medical purpose that, in fact, were not diverted.  The MDL court recognized that "a distributor may perform due diligence and properly conclude that an order is not suspicious after all."  MDL Dkt. 2843 at 8.

distribution of prescription opioids cannot meet the core definition of a nuisance per se under West Virginia law, because it is not a nuisance "at all times" and "under all circumstances."

2.     Plaintiffs assert that it does not "insulate Defendants from liability" that "their general line of business is legal."  Opp. 9.  To be sure, the fact that Defendants are DEA-registered and state-licensed—in short, lawful businesses—does not provide them immunity from all claims if they engage in wrongful conduct.  But the fact that their "general line of business is legal" does conclusively establish that their business activity cannot constitute a per se nuisance.

The Supreme Court of Appeals' decision in *Burch* clearly illustrates the point.  There, the Court determined that the question of per se nuisance turned on the nature of the defendant's business, not its alleged conduct.  Relying on a long line of decisions, the Court explained that "[w]e have recognized that a lawful business or a business authorized to be conducted by the government cannot constitute a nuisance *per se*," and contrasted a lawful business with "[t]he classic example of an unlawful business"—a brothel, which inherently constitutes a per se nuisance.  220 W.Va. at 45657, 647 S.E.2d at 89293.  Thus, in *Burch*, the Supreme Court held that the defendant wind power facility, which was "a lawful business" that had been granted a siting certificate by the Public Service Commission, "cannot be considered a nuisance *per se*." 220 W.Va. at 457, 647 S.E.2d at 893; *see also Bisset v. Town of Littleton*, 87 W.Va. 127, 104 S.E. 289, 291 (1920) ("Used as places of recreation and amusement, pool rooms are not nuisances.  They may become nuisances when kept and resorted to for gambling, but they are not per se so."); *McGregor v. Camden*, 47 W.Va. 193, 196, 34 S.E. 936, 937 (1899) (focusing on the nature of the defendant's business—"[t]he drilling of oil and gas wells is … a legitimate business"—and stating that "[a] lawful business cannot be a nuisance per se," but may become a nuisance per accidens "by the manner in which it is conducted").

Simply put, while a lawful business can become a nuisance by the manner in which it is conducted at a particular time and under particular circumstances ("per accidens"), a lawful

4

business can never become a nuisance per se, as *Burch*, *Duff*, *McGregor*, and *Harless* establish. *See State ex rel. Bradford v. Stubblefield*, 220 P.2d 305 (Wash. 1950) ("[A] lawful business may become a nuisance in fact—not that it may become one *per se* … [T]o speak of a lawful business as 'becoming' a nuisance *per se* would be a contradiction in terms.  A nuisance *per se*, by definition, means an act, thing, omission, or use which 'is not permissible or excusable under any circumstances,' and hence has never been lawful.").

3.     Plaintiffs assert that a per se nuisance "includes conduct that violates state and federal statutes."  Opp. 7.  But the case they cite, *Duff*, says no such thing; it involved no statute or statutory violation.  What Plaintiffs quote from *Duff* is the traditional definition of a *public* nuisance, which the Supreme Court cited to distinguish public nuisances from private ones.  187 W.Va. at 716, 421 S.E.2d at 257.  They ignore *Duff*'s definition of nuisance per se:  "an act … which is a nuisance at all times and under any circumstances."  187 W.Va. at 716 n.8, 421 S.E.2d at 257 n.8.  Plaintiffs also baldly assert that "it has long been the law in this State that engaging in any form of business in defiance of laws regulating or prohibiting business activities constitutes a nuisance per se."  Opp. 8.  But the one decision Plaintiffs cite in support of that proposition, *Princeton Power Co. v. Calloway*, 99 W. Va. 157, 128 S.E. 89 (1925), did not even involve a cause of action for nuisance, much less the assertion of a public nuisance claim by a city or county.  It instead involved taxi cab operators who (while licensed to operate their taxi business) had "never obtained certificates of authority" to transport passengers between "fixed termini" (i.e., railway stations), and thus were engaged in an unlawful business insofar as they sought to do so.  *Id*. at 99 W. Va. 157, 128 S.E. at 92.  On those facts, the court enjoined the taxi cab company from transporting passengers between railway stations (in direct competition with the plaintiff railroad) "until they shall have acquired authority so to do in the manner provided by law."  *Id*.  That is fundamentally different from the facts here, where there is no allegation that

Defendants were not authorized to do what they did—ship prescription medicines pursuant to DEA and state regulation to pharmacies that were similarly subject to DEA and state regulation.[5]

More broadly, West Virginia law is clear that the violation of a statute or regulation by a lawfully operating business is not per se negligence, but at most only *prima facie* evidence of negligence. *See Hersh v. E-T Enterprises, Ltd. Partnership*, 232 W. Va. 305, 312 & nn. 89, 752 S.E.2d 336, 342 & nn. 89 (2013). By the same logic, such a statutory or regulatory violation cannot meet the standards for per se nuisance articulated in *Burch*, *Duff*, *McGregor*, and *Harless*.

4.    Plaintiffs' response is further flawed, because they cannot base a nuisance per se claim on alleged violations of the federal Controlled Substances Act or its West Virginia counterpart. Opp. 5 (predicating their nuisance claim on "conduct that violates" the CSA and WVCSA). Plaintiffs, as local governments, lack standing to enforce the CSA and WVCSA. Any duties created by those Acts run to the federal government and the State, respectively. The CSA gives the United States Attorney General exclusive authority to enforce the Act. Recognizing that exclusive authority, this Court and other federal courts "have uniformly held that the CSA does not create a private right of action" of any kind. *State of West Virginia, et al. v. McKesson Corp.,* No. 2:17-03555 (S.D. W.Va. Feb. 15, 2018) (Dkt. 21) at 1415; *accord McKesson Corp. et al. v. Hembree,* No. 17-CV-323-TCK-FHM, 2018 WL 340042, at *5 (N.D. Okla. Jan. 9, 2018); *Smith v. Hickenlooper,* 164 F. Supp. 3d 1286, 1290 (D. Colo. 2016);

---

[5]    The term "nuisance per se" appears only once in *Princeton Power*—when it paraphrases a State of Washington opinion, *Puget Sound Traction, Light & Power Co. v. Grassmeyer*, 173 P. 504 (Wash. 1918), which permitted a plaintiff "specially injured" by the defendant's operation of his business "in defiance of laws regulating or prohibiting the business" to *enjoin* the defendant. That decision is not binding or persuasive authority here, where (i) the *Erie* doctrine obliges this Court to apply West Virginia law, (ii) Plaintiffs do not seek an injunction, and (iii) *Grassmeyer* does not have the broad meaning *Princeton Power* suggested, but concerned a circumstance where the defendant had no license or permit to conduct the business. *See Motor Car Dealers' Ass'n of Seattle v. Fred S. Haines Co.*, 222 P. 611, 613 (Wash. 1924) ("[T]he language relied upon from the *Grassmeyer* case is not of such comprehensive effect as appellants think. In that case … [t]he injunction was sought against persons having *no franchise, no license or permit of any kind*, …. They were engaging in the business unlawfully.").

*McCallister v. Purdue Pharma L.P.,* 164 F. Supp. 2d 783, 793 (S.D.W.Va. 2001) (Haden, J.). Nor may the CSA be enforced through a state cause of action. *See Astra USA, Inc. v. Santa Clara County*, 563 U.S. 110, 118 (2011). The WVCSA is modeled on the CSA, and the same conclusion follows.[6]

Nothing in the text or structure of the CSA suggests that Congress intended to confer legal rights—much less an enforceable private remedy—on cities and counties. *Smith,* 164 F. Supp. 3d at 1290; *McAllister,* 164 F. Supp. 2d at 793 n.16 (finding no such "legislative intent").

In summary, Defendants are not merely lawful businesses, like Main Street shops. They are highly regulated businesses, and their distribution of prescription opioids is subject to DEA registration and state licensure. Such businesses cannot be a per se nuisance under West Virginia law, which limits that small category to activity that is inherently unlawful or harmful, like the operation of a brothel. In any event, local governments lack standing to bring any claim predicated on violation of the CSA or WVCSA, which vest exclusive enforcement authority in the DEA and State, respectively.

### Neither Plaintiff Sued Pursuant to an Ordinance

1.      Plaintiffs concede that neither has passed an ordinance of general applicability that in any manner defines Defendants' alleged conduct as a public nuisance. That fact is dispositive, for a local government has no authority under West Virginia law to abate a nuisance per accidens in the absence of an ordinance defining the nuisance. *Parker*, Syl. 1, 72 W. Va. 68, 79 S.E. 660; *Donohoe*, Syl. 1, 72 W. Va. 712, 79 S.E. 736; *Ammerman*, 136 W. Va. at 124, 65

---

[6]    The same reasoning applies to the WVSCA, because the first of four requirements for implying a private right of action under West Virginia law is that the plaintiff be part of "the class for whose benefit the statute was enacted." *Hurley v. Allied Chem. Corp.,* 164 W.Va. 268, 262 S.E.2d 757, 763 (1980). The WVCSA was not enacted to protect cities or counties. W. Va. Code § 60A-8-3 ("The purpose of th[e] article is to protect the health, safety and general welfare *of residents* of this state."). The MDL court has held that "[t]he CSA was intended to protect individual members of the public from falling victim to drug misuse and abuse" and "was not intended to protect [governments] from spending more on addiction-related public services." MDL Dkt. 1680 at 2425.

S.E. 2d at 715; *accord Sharon Steel*, 175 W. Va. at 487, 334 S.E.2d at 625.  Defendants do not dispute that the Legislature has delegated to cities and counties authority **to make laws** regarding public nuisances.  The relevant question, however, is whether either Plaintiff in fact exercised that delegated authority by **passing a law**—i.e., enacting an ordinance of general applicability that defined Defendants' alleged conduct as a public nuisance—and did so before filing suit. The Opposition admits that neither Plaintiff did so.[7]

2.      Contrary to Plaintiffs' assertion, Defendants did not "invent a requirement that cities and counties pass a general ordinance."  Opp. 15.  The Supreme Court of Appeals established this requirement in *Parker* and *Donohoe*, and confirmed it in *Ammerman* and *Sharon Steel*.  *See* Def. Mem. (Dkt. 239) 5–7.  In those cases, no one disputed that the cities had been delegated authority to abate the alleged nuisances; the issue was whether the authority was operative in the absence of an ordinance.  Thus, in *Donohoe*, the Supreme Court recognized that

---

[7]   Opp. 10, 21 ("Plaintiffs are not required to sue pursuant to an ordinance"; "A formal ordinance is unnecessary"; "Plaintiffs did not pass an ordinance and seek to impose new obligations on Defendants retroactively.").  Plaintiffs offer no real rebuttal to Defendants' arguments, Def. Mem. (Dkt. 239) 9–12, that the Cabell County January 2017 resolution is not a substitute for an ordinance, that it cannot apply retroactively, and that it does not define the offending conduct, but functions as a bill of attainder.  They simply assert again that "no formal ordinance," and no definition of the nuisance, is necessary, because Defendants' conduct is a per se nuisance.  Opp. 21–22.

Three years after filing this lawsuit, Huntington filed a mis-named Notice of Supplemental Authority on April 15, 2020, to bring to the Court's attention, not new legal authority, but a resolution passed by the City Council just two days earlier purporting to "ratify and confirm the Mayor's prior findings that the wrongful manufacturing, distribution, and dispensing of prescription opioids pills … has created a nuisance to the people of the City of Huntington." Dkt. 325 at 1.  That resolution suffers from the same defects as Cabell County's January 2017 resolution: (1) it is not an ordinance; (2) it applies, at most, prospectively and cannot confer standing for pre-April 13, 2020 claims; and (3) it neither defines what conduct involving the distribution of prescription opioids constitutes a nuisance nor has general applicability, but instead functions as a bill of attainder.  *See* Def. Mem. (Dkt. 239) 9–12.

Huntington seeks to excuse its tardy resolution and Notice as necessary to clarify any ambiguity about whether the City Council supported the filing of this lawsuit.  There is no ambiguity:  Defendants challenge the city's *standing* to sue in the absence of a pre-existing ordinance that defined the nuisance in terms applicable to all, not the City Council's enthusiasm for the lawsuit.

the City of Elkins enjoyed an express delegation of authority in its charter to regulate division fences and party walls, but held that the City lacked standing to exercise that authority without a legislative enactment defining the nuisance:

> The power to regulate means only the power ***to enact a reasonable ordinance for that purpose***, and thereafter to enforce it by appropriate proceedings.  It does not vest in the municipality the power to declare the fence of any one citizen a nuisance and abate it, ***without first exercising its legislative power to prescribe what fences may properly be built and maintained***.

79 S.E. at 736.  Likewise, in *Parker*, the Supreme Court held that the City of Fairmont could not sue to abate the emission of smoke based on "its mere charter powers to abate nuisances … ***in the absence of a reasonable ordinance***, ***applicable alike to all of a class***, making such production and emission unlawful."  79 S.E. at 660; *id.* at 662 ("It must first say that by general and uniform ordinance.").  *Donohoe* and *Parker* are controlling law.

In summary, the Supreme Court has consistently held that the Legislature's delegation of power to local governments authorizes them to abate a per se nuisance—one that is at all times and under all circumstances a nuisance—in the absence of an ordinance.  But local government cannot abate a nuisance per accidens in the absence of an ordinance of general applicability that defines the times and circumstances that render certain conduct a nuisance.[8]

3.      Plaintiffs argue that *Donohoe* and *Parker* (and *Ammerman*) can be distinguished in three ways.  ***First***, they argue that all three decisions "recognized the power of a local government to abate as a per se nuisance conduct in violation of a statute."  Opp. 18.  The

---

[8]  Plaintiffs claim that Defendants concede that "if a specific ordinance is adopted, conduct in violation of the ordinance would meet the definition of an abatable nuisance."  Opp. 19.  Defendants made no such concession.  Plaintiffs misunderstand the point:  even a duly adopted ordinance must, among other things, "relate[] to all alike that are similarly situated," and the city "must proceed uniformly as to that and all other similarly produced" activity.  *Parker*, 79 S.E. at 662; *Donohoe*, 79 S.E. at 737 (a city cannot sue for nuisance unless there is first in place "an ordinance enacted in due form and applicable alike to all persons and structures of the character described").  That question of whether an ordinance is a "general rule applicable alike to all," 79 S.E. at 737, is not presented here, because Plaintiffs enacted no ordinance.

decisions do not recognize any such power.  The *Parker* Syllabus states:  "the [city] council may abate only that as a nuisance which is [i] recognized as such per se or [ii] **branded as such** by lawful statute."  79 S.E. at 661.  Here, as explained above, the business of distributing prescription opioids is lawful and not a nuisance per se.  And, indisputably, no West Virginia statute or regulation brands the distribution of prescription opioids (or even the failure to report and halt shipment of suspicious orders) as a nuisance.[9]

The Court did not say, as Plaintiffs assert, that the violation of any statute is a per se nuisance that local governments may abate.  Rather, the Court said that a local government may only abate what the law has already branded as nuisance per se or else "[i]t must ordain and publish law which relates to all alike that are similarly situated, and then enforce the same."  79 S.E. at 662.  Because no West Virginia statute or regulation defines the distribution of prescription opioids as a nuisance, it was incumbent on Plaintiffs to do by ordinance.  Neither did.

**Second**, Plaintiffs seek to distinguish the three decisions as involving "conduct generally permissible … and not otherwise in violation of the law," Opp. 18, whereas their nuisance claim allegedly involves illegal conduct.  But this is simply to argue (again) that the violation of any statute or regulation is a per se nuisance.[10]  No West Virginia decision so holds.

---

[9]   The Code is replete with places, things, and/or conduct that the Legislature has expressly branded a nuisance.  *See, e.g.*, W.Va. Code § 17-23-9 ("The establishment, operation or maintenance of a salvage yard or any part thereof in violation of any provision of this article is hereby declared to be a public nuisance, …."); *id*. § 60-6-16 ("A place where alcoholic liquor is manufactured, sold, stored, possessed, given away, or furnished contrary to law shall be deemed a common and public nuisance."); *id*. § 30-7-14 ("The practice of registered professional nursing by any person who has not been licensed …, is hereby declared to be inimical to the public health and welfare and to be a public nuisance.").

[10]   That would be particularly unwarranted here, not only because there is no private right of action under the CSA and WVCSA, *supra* 6 & n.6, but also because, as the Supreme Court noted in a decision relied upon by Plaintiffs, the violations about which Plaintiffs complain are "'(m)ore or less technical violations.'"  *United States v. Moore*, 423 U.S. 122, 135 (1975) (quoting H.R.Rep. No. 91-1444, p. 10).

**Third**, Plaintiffs argue that the Court should disregard the three decisions because they "predate the modern home rule provisions," which purportedly "greatly expand[ed] government powers." *Id*. That assertion is both wrong and irrelevant. Plaintiffs' assertion that the "modern" home rule provisions greatly expand local government powers is wrong because the statutes on which Huntington relies are the **same** statutes that were at issue in *Parker* and *Donohoe*.[11] And Plaintiffs' assertion is irrelevant because they claim only that these home rule provisions gave Huntington "the authority **to enact any ordinances**, acts, resolutions, rules and regulations" not contrary to federal and state law. *Id*. at 13 (quoting W.Va. Code § 8-1-5a). Plaintiffs are therefore damned by their own distinction: they admittedly had "the authority" under the home rule provisions to "ordain and publish law which relates to all alike that are similarly situated," *Parker*, 79 S.E. at 662, but they did not exercise that authority to enact any ordinance that defined the alleged nuisance. Plaintiffs also claim authority to act under W.Va. Code § 8-12-5. Opp. 13. But that provision of the Code states in the opening paragraph (not quoted by Plaintiffs): "Every municipality … shall have plenary power and authority therein **by ordinance or resolution**, as the case may require, by appropriate action based thereon … [t]o provide for the elimination of hazards to public health and safety [etc.]." The same is true of W.Va. Code § 8-11-1 ("Ordinances to make municipal powers effective"), which provides: "To carry into effect the powers and authority conferred upon any municipality or its governing body by the provisions of this chapter, … the governing body has plenary power and authority to … [**m**]**ake and pass all needful ordinances, orders, bylaws, acts, resolutions, rules and regulations** not

---

[11]   *Compare* W.Va. Code 1906, ch. 47, sec. 28, *with* W.Va. Code § 8-12-5; also *compare* Code 1906, ch. 47, sec. 29 *with* W.Va. Code § 8-11-1. Plaintiffs so-called "modernization" is really nothing more than a recodification of these statues to a different chapter of the Code. *See Hogan v. City of South Charleston*, 164 W.Va. 136, 138, 260 S.E.2d 833, 835 (1979) (one purpose of the 1969 recodifications was to "provide a degree of uniformity to the type of powers granted to municipalities by the Legislature" because "[p]rior to 1969, the powers of a given municipal corporation were embodied in several scattered and sometimes conflicting sources").

11

contrary to the constitution and laws of this state; ....."[12]  Plaintiffs ignore this critical language—
they cite what objectives local governments are authorized to pursue, but omit reference to **how**
local governments must proceed—namely, "by lawful statute or ordinance."  *Parker*, Syl. 1, 79
S.E. at 661.

Plaintiffs do not claim, nor could they, that the delegation to local governments of
authority to take appropriate action "by ordinance or resolution, as the case may require," or "to
[m]ake and pass all needful ordinances" overrules *Donohoe*, *Parker*, and *Ammerman*, which held
that "[the] provisions of the charter … are not self executing.  Enabling ordinances are
necessary."  65 S.E.2d at 715.[13]

4.      *State ex rel. State Line Sparkler of WV, Ltd. v. Teach*, 187 W.Va. 271, 418 S.E.2d
585 (1992), cited by Plaintiffs as a broad interpretation of "the modern powers of political
divisions," Opp. 14, is not to the contrary and, indeed, not even relevant.  The issue there was
whether the "power to punish by fine or penalty is implied from the delegation by the legislature

---

[12]  As Plaintiffs acknowledge, the counterpart provision for county commissions, § 7-1-3kk, is
"substantively identical."  Opp. 16.

The Municipal Home Rule Amendment (Article 6, § 39a) of 1936 (Opp. 12 n.43) is
irrelevant.  The Amendment ended the Legislature's ability to enact special laws for
municipalities with a population of 2,000 or more, *Matter of City of Morgantown,* 159 W.Va.
788, 791-92, 226 S.E.2d 900, 903 (1976), thus limiting the State's power, not granting
municipalities new powers.  *See State ex rel. Plymale v. City of Huntington*, 147 W.Va. 728,
733, 131 S.E.2d 160, 163 (1963) (Amendment "does not mean that the city has become an
independent sovereignty"); *Brackman's, Inc. v. City of Huntington*, 126 W.Va. 21, 27 S.E.2d
71, 73 (1943) ("municipalities have no inherent power to exercise any function of
government whatsoever.  Their power rests upon grants of power made by the Legislature").

[13]  The West Virginia Attorney General's 1964 opinion is not to the contrary.  Opp. 20 & n.81.
First, the opinion concerned the validity of an ordinance, not the absence of an ordinance.
Second, the opinion allowed that a common nuisance "may be *enjoined* whether or not a
municipal ordinance specifically prohibits the conduct."  1964 WL 72602, at *3.  Plaintiffs,
however, do not seek an injunction.  In any event, Attorney General opinions are not
precedential and do not override the Supreme Court's decisions in *Parker*, *Donohoe*,
*Ammerman* and *Sharon Steel*.  *See* Syl. 2, *Hoover v. Blankenship*, 199 W.Va. 670, 487
S.E.2d 328 (1997) ("Opinions of the attorney general are not precedential or binding upon
this Court.").

of the right to enforce a particular police power *through ordinances or regulations*."  187 W.Va. at 272, 418 S.E.2d at 586.  The Supreme Court held that such power was implied, but noted no less than five times that the power accompanied the passage of an ordinance.[14]  Again in this case, Plaintiffs did not enact any ordinance.

     5.     Plaintiffs discuss *Sharon Steel Corp. v. City of Fairmont* at some length, Opp. 15–17, but it is not clear to what end.  That decision accepted as a "given" the limits on standing articulated 100 years earlier in *Parker* and *Donohoe*, citing both cases with approval.  *See* 175 W. Va. at 487, 334 S.E.2d at 625.  Plaintiffs are therefore correct that "*Sharon Steele* [sic] did not change the law regarding local government powers over public nuisances."  Opp. 17.  In *Sharon Steel*, the City of Fairmont had enacted an ordinance to define the nuisance.  175 W.Va. at 482, 334 S.E.2d at 619 ("It shall be unlawful for any person to permanently dispose or attempt to permanently dispose of hazardous waste within the City.").  The issue in *Sharon Steel* was not whether it was necessary for the city to pass a general ordinance, but whether the city had the power to pass the ordinance it had already enacted.  As Plaintiffs acknowledge, "*Sharon Steele* [sic] was a challenge to an ordinance."  Opp. 17.[15]  The Supreme Court upheld the ordinance and cited its decisions in *Parker* and *Donohoe* as support.  175 W.Va. at 487, 334 S.E.2d at 625.

     Plaintiffs conclude their discussion of *Sharon Steel* by claiming that the line of decisions from *Parker* and *Donohoe* forward "do not require a local government to enact an ordinance unless … the activity does not constitute a common nuisance."  Opp. 17.  This claim stands *Parker* on its head.  As explained above, a local government need not enact an ordinance

---

[14]  *See* 187 W.Va. at 275, 418 S.E.2d at 589 (referring to (1) "the plenary power to enact *ordinances*;" (2) the general rule that a grant of police power "empowers the governing body to use proper means to enforce its *ordinances*;" (3) "the right to enforce police power through *ordinances* and regulations;" (4) the fact that the rule may be otherwise "where the *ordinance* is not enacted pursuant to a grant of police power;" and (5) the legislature's grant of power "to enforce violations of building code *ordinances*").

[15]  Accordingly, Plaintiffs' assertion two pages earlier that "[t]he court confirmed the power of a local government to bring abatement actions even when it had not passed an ordinance that set forth specific statements of conduct," Opp. 15, is inexplicable and mistaken.

defining the nuisance only when it seeks to abate a per se nuisance. *Parker*, 72 W.Va. 688, 79 S.E. at 660 ("The municipal authorities of Fairmont may, by the power in the city charter, abate per se nuisances; or under other powers granted by the charter it may pass reasonable ordinances preventing injury or annoyance to the citizens."). It is precisely when the offending activity constitutes a nuisance accidens (or common nuisance)—i.e., a nuisance by reason of the timing or circumstances of the activity—that the county or city "must ordain and publish law which relates to all alike that are similarly situated, and then enforce the same." *Id.* at 662; *Donohoe*, 72 W.Va. 712, 79 S.E. at 737 ("The power to regulate means only power to enact a reasonable ordinance …, and thereafter to enforce it by appropriate proceedings."). This is just what occurred in *Sharon Steel*, where the City of Fairmont enacted an ordinance to define the permanent storage of hazardous waste as a nuisance, and the Supreme Court both (i) recognized that "the ordinance was directed at abating a public nuisance condition" (i.e., common nuisance or nuisance per accidens), and (ii) "affirm[ed] the power of the City to enact" it. 175 W.Va. at 484, 488, 334 S.E.2d at 622, 626.

Because Plaintiffs have not alleged a nuisance per se and have not timely passed an ordinance of general applicability, they lack standing to assert their claims.

### Conclusion

West Virginia law has long been that a local government lacks standing to sue for public nuisance unless it alleges a per se nuisance or the violation of a general ordinance of general applicability. The distribution of prescription opioids is a lawful business and therefore cannot be a per se nuisance under settled West Virginia law. And Plaintiffs concede that they did not enact an ordinance to define the distribution of prescription opioids as a nuisance. Accordingly, under longstanding and well-established West Virginia law, Plaintiffs lack standing, and Defendants are entitled to summary judgment.

Dated:  April 20, 2020

14

Respectfully submitted,

*/s/ Steven R. Ruby*
Brian A. Glasser (WVSB #6597)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
BAILEY GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone:     (304) 345-6555
Facsimile:     (304) 342-1110
bglasser@baileyglasser.com
sruby@baileyglasser.com
rfranks@baileyglasser.com
**Counsel for Cardinal Health, Inc. in Cabell County Commission action**


*/s/ David R. Pogue*
Michael W. Carey (WVSB #635)
David R. Pogue (WVSB #10806)
Carey, Scott, Douglas & Kessler, PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone:     (304) 345-1234
mwcarey@csdlawfirm.com
drpogue@csdlawfirm.com
**Counsel for Cardinal Health, Inc. in The City of Huntington action**

Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC  20005
Telephone:     (202) 434-5000
Facsimile:     (202) 434-5029
emainigi@wc.com
lheard@wc.com
ahardin@wc.com
**Counsel for Cardinal Health, Inc.**

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Telephone:     (304) 340-1000
Facsimile:     (304) 340-1050
gcallas@jacksonkelly.com

Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone:     (215) 851-8100
Facsimile:     (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com
**Counsel for AmerisourceBergen Drug Corporation**

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone:     (304) 345-0200
jwakefield@flahertylegal.com
jholliday@flahertylegal.com

*/s/ Timothy C. Hester*
Timothy C. Hester
Mark H. Lynch
Christian J. Pistilli
Laura Flahive Wu
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone:     (202) 662-6000
thester@cov.com
mlynch@cov.com
cpistilli@cov.com
lflahivewu@cov.com
**Counsel for McKesson Corporation**

## <u>CERTIFICATE OF SERVICE</u>

I, Steven R. Ruby, counsel for Defendant Cardinal Health, Inc., do hereby certify that on this <u>20th</u> day of April, 2020, the foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT:  STANDING**  was filed electronically via the CM/ECF electronic filing system and served on all counsel registered in the system.

*/s/ Steven R. Ruby*
Steven R. Ruby