IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>    Defendants. | Civil Action No. 3:17-01362 |
| CABELL COUNTY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>    Defendants. | Civil Action No. 3:17-01665 |

## **DEFENDANTS' THIRD DISCOVERY STATUS REPORT**

For the benefit of the Special Master and the information of the Court, Defendants submit their third biweekly discovery status report pursuant to the Court's request during the March 5, 2020 status conference. *See* Status Conf. Tr. 41:15-23 (Mar. 5, 2020).[1]

The COVID-19 pandemic is having a very significant adverse impact on the progress of discovery in this case, as Plaintiffs themselves recognize. *See* Dkt. 319 at 1. Critical third-party discovery has been impeded and largely blocked by the needs of various local and state agencies

---

[1] Consistent with discussion at the status conference, this filing is not a vehicle to seek any relief from the Court, and any necessary motions will be filed separately. This report is simply meant to update the Special Master on the progress of the case as the Court monitors the overall schedule and plans for the litigation.

to respond to the pandemic, as Plaintiffs also recognize. *Id*. For instance, in a telephone status conference before Judge Wilkes on April 17, 2020, third-party state insurance agencies explained that they could not realistically comply with subpoena deadlines because of the pandemic. To date, only seven third parties have produced any documents in response to the parties' subpoenas—with several of these productions constituting just a handful of documents—and no third party has fully complied with its production obligations.

Beyond these very significant obstacles to the completion of third-party discovery, Plaintiffs are making only slow progress in producing documents from their own files. In particular, the City of Huntington has not represented that it has substantially completed production of even a single custodial or departmental file. Cabell County's document productions are also incomplete. For example, it has been unable to locate custodial files for its former sheriffs Kim Wolfe and Tom McComas. Because of these deficiencies in Plaintiffs' discovery responses and the delays in third-party discovery, among other considerations, Defendants have now moved for an extension of the case schedule, requesting that all current pre-trial deadlines be extended by three months and that the trial be rescheduled to begin on or around December 1, 2020. Dkt. 347.

## I. Plaintiffs' Production of Documents

Although Plaintiffs continue to highlight the total number of pages they have produced in discovery, that is not an accurate reflection of the progression of discovery. *See* Dkt. 319 at 6-7. A much more important fact is that Plaintiffs have yet to produce a single document from 17 of the custodians whose files they have agreed to produce.[2] Further, for certain non-custodial sources in Plaintiffs' production—such as the Cabell County Sheriff's Office—Defendants' review to date

---

[2] Production statistics in this Status Report are current as of April 14, 2020.

has shown that the vast majority of documents are not relevant, thus reflecting that a total count of pages is not an accurate measure of progress on discovery.

As discussed in Defendants' Second Discovery Status Report, Defendants detailed various issues with Plaintiffs' custodial production in a letter on March 27, 2020. Both Plaintiffs have now responded to this letter, but there are still significant outstanding issues with respect to Plaintiffs' productions from their custodial files. The City of Huntington has yet to verify that it has substantially completed the production of documents from any of its custodians.

Plaintiffs' production of documents from these custodial files continues to be halting and incomplete. Just a few days ago, on April 16, Huntington produced an additional 10,000 pages of documents from the custodial files of fire chief Jan Rader. As another example, on April 2, 2020, Cabell County represented that "certain data" from the files of former Sheriff Tom McComas had been "lost as the result of a malware attack in 2016," as an explanation for minimal production from his files. But a few weeks later, the County made a small production of additional documents including 149 documents from Mr. McComas's custodial file, without any explanation of where these documents were located. Nor has the County explained why the loss of "certain data" has resulted in so few responsive documents from Mr. McComas's custodial files.

If Plaintiffs are unable or unwilling to provide information regarding these issues or rectify the production gaps, further motions practice may be necessary. Furthermore, until these issues related to custodial and departmental documents are resolved, it is not feasible to commence depositions of the relevant witnesses.

Defendants filed a motion on April 6, 2020 to compel the production of certain custodians' files. That motion is now fully briefed. As discussed in Defendants' Second Discovery Status Report, the motion seeks production of two categories of documents. *First*, it seeks production of

custodial documents from six individuals whom the *City of Huntington itself* specifically identified as likely to possess relevant materials and knowledge.³  *See* Dkt. 284 at 2-10.  *Second*, it seeks production of relevant documents from the Cabell County Prosecuting Attorney's office, which the County has refused to produce.  *Id.* at 10-13.  Plaintiffs' refusal to produce these documents is yet another reason Defendants have sought relief from the current Court deadlines.  *See* Dkt. 348 at 6-7.

## II.    Third-Party Discovery

As explained in Defendants' prior filings, third-party discovery is essential to Defendants' preparation of their case, and the progress of third-party discovery has been significantly impeded by the ongoing COVID-19 pandemic.  *See* Dkt. 348 at 11-14; Dkt. 290 at 6-7; Dkt. 258 at 6-8.  Moreover, certain entities that are often affiliated with county or local governments are, according to Plaintiffs, third parties in this litigation—for example, the Department of Children and Families, the Medical Examiner's office, and the Cabell-Huntington Health Department ("CHHD").  Accordingly, in order to obtain documents from these entities, Defendants were required to serve third-party subpoenas, which has compounded the discovery delays encountered to date.  And for the CHHD, Defendants were forced to engage in a meet and confer process before they could even determine the litigation status of that entity.

Numerous third parties have taken the position that they cannot respond to discovery requests in a timely manner because their resources are being diverted by the pandemic response.  *See* Dkt. 290 at 6-7.  Most of the third parties are agencies whose work relates to health care.  Most

---

³ The City of Huntington advised Defendants in a letter sent late on April 20, 2020 that it has searched for and produced responsive documents in the custodial files of these six individuals (with the exception of two custodians for whom Huntington claims it has no documents). Defendants have requested that their motion be held in abeyance as to the Huntington custodians until Defendants have had the opportunity to review the documents produced.

recently, since Defendants filed their Second Discovery Status Report, Defendants and the West Virginia Office of the Insurance Commissioner and the Public Employees Insurance Agency completed briefing on the those third parties' motions to quash subpoenas. The Special Master held a telephone status conference regarding those motions on April 17th, in which the third parties and Defendants agreed that good-faith subpoena negotiations were ongoing and no ruling was necessary. Similarly, after Cabell Huntington Hospital filed a motion to quash subpoenas on April 10, 2020, its counsel informed the Special Master that subpoena negotiations were ongoing and the motion could be held in abeyance. The Hospital intends to provide Defendants with updates regarding compliance with the subpoena on April 28th and May 14th.

To date, only seven entities have produced any documents in response to the third-party subpoenas served by Plaintiffs and Defendants. In response to Plaintiffs' subpoenas, DEA produced roughly 830 documents and Marshall Health produced 55 documents. In response to Defendants' subpoenas, the West Virginia Board of Medicine produced 19 documents, the West Virginia Board of Osteopathic Medicine produced 21 documents, the West Virginia State Auditor produced 8 documents, the Coalition for Responsible Chronic Pain Management produced 21 documents, and the Governor's Council just recently produced 7 documents. No third parties have completed their production of documents, nor does it seem likely that any third-party productions will be complete in the near future in light of the COVID-19 pandemic.

On April 14, 2020, Defendants filed a motion to compel discovery responses from the DEA. *See* Dkt. 320, 321. As explained in Defendants' motion, DEA has refused to provide any substantive response to Distributors' subpoena and has refused to produce any documents. *See* Dkt. 321 at 3-4. Complicating matters, DEA has treated the parties unevenly, producing multiple volumes of documents in response to a subpoena from Plaintiffs. *See id.* at 4-5. The discovery

Defendants seek from DEA is highly relevant to central issues in this litigation. DEA's opposition to Defendants' motion is due April 28, 2020.[4]

### III.     Deposition Scheduling and Remote Depositions

To date, no party depositions have been scheduled. Defendants have also issued a number of third-party deposition notices, but those also have not yet been scheduled. Among other things, until there is further progress on party and third-party document discovery, it is not realistic to proceed with depositions.

Plaintiffs acknowledged in their Second Discovery Status Report that in-person depositions cannot proceed in the near future and that they intended to file a "request" for an order requiring the parties to move forward with remote depositions via teleconference or videoconference. Dkt. 319 at 3-4. Plaintiffs have not yet filed that motion. Rather, on Friday, April 17, they filed a motion to compel against Cardinal Health, in which they seek an order requiring the remote depositions of certain Cardinal Health witnesses. In accordance with the parties' agreed protocol, Cardinal Health will oppose Plaintiffs' motion on Tuesday, April 28. Similarly, Defendants will reply to any proposal by Plaintiffs for remote depositions in due course.

However, Defendants briefly note here that remote depositions under present circumstances are not as straightforward as portrayed in Plaintiffs' Second Discovery Status Report, including because of demands on witnesses' schedules during the COVID-19 crisis and because the parties will need to consider any remote deposition alternatives carefully to ensure that such procedures adequately address serious safety, security, technological, and logistical issues.

---

[4] On April 15, 2020, the DEA filed a motion in MDL 2804 seeking "clarification" regarding the MDL Court's suggestion of remand. *See* MDL Dkt. 3260. On April 17, 2020, the MDL Court issued a "response" to the DEA's Motion, noting that discovery disputes in these cases "are no longer within [the MDL] Court's jurisdiction. Any further resolution of discovery disputes is within the purview of the transferor court." MDL Dkt. 3263.

Among other things, videoconference depositions are far more logistically challenging than telephonic court hearings. This includes the need for witnesses to have access to private, secure, and quiet spaces that they can occupy, undisturbed, for the duration of a deposition. Videoconference depositions pose difficulties with exhibits as well, which may need to be transmitted electronically in real-time or by preparing, shipping, storing, and showing hard-copy exhibits. Depositions in this matter, unlike public hearings, also will involve confidential and highly confidential information from both sides, and yet serious questions exist about the adequacy of remote deposition providers' security protocols. Further, videoconference depositions require significant Internet bandwidth, often over an entire day. Witnesses and counsel alike will face competing demands on that bandwidth—for example, from spouses also working remotely and children engaged in distance learning. Such challenges are not as pronounced for a remote hearing, which typically takes much less time and can therefore be more easily accommodated.

Contrary to Plaintiffs' assertion, an entirely remote videoconference deposition (with everyone situated in a different place, remotely) is not a "staple" of complex litigation. In the past, videoconference depositions were typically held in two or more law offices, complete with the resources available to those offices. And while the attorney taking the deposition may be remote in a traditional videoconference deposition, the defending attorney would still be in the same location as the witness. Requiring parties to move forward with depositions when counsel is unable to represent their witness from the same location poses unique challenges. These issues, and many others, mean that remote depositions should be the exception, not the rule—even under present trying circumstances. These issues will be addressed more fully when Defendants respond to Plaintiffs' proposal for a remote deposition protocol.

\*   \*   \*

In short, Defendants require crucial discovery from Plaintiffs and third parties. They continue to make progress, but third-party document discovery, in particular, continues to be significantly impeded by the COVID-19 pandemic. Motions to compel production of key Plaintiffs' custodial files and core discovery from DEA are now pending. The City of Huntington has failed to represent that it is substantially complete in any meaningful way. And only a handful of third parties have produced any documents. For these and the other reasons explained in Defendants' Motion to Extend Court Deadlines, it is now clear that the current case schedule will require adjustment.

Respectfully Submitted,

*McKesson Corporation*
By Counsel:

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
Jason L. Holliday (WVSB #12749)
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200
jwakefield@flahertylegal.com
jholliday@flahertylegal.com


*/s/ Carol Dan Browning*
Carol Dan Browning
Stites & Harbison, PLLC
400 West Market Street
Suite 1800
Louisville, Kentucky  40202
Telephone:  (502) 587-3400
Facsimile:  (502) 587-6391
cbrowning@stites.com

*/s/ Timothy C. Hester*
Timothy C. Hester
Mark H. Lynch
Christian J. Pistilli

Laura Flahive Wu
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
mlynch@cov.com
cpistilli@cov.com
lflahivewu@cov.com

*AmerisourceBergen Drug Corporation*
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Cardinal Health, Inc.*
By Counsel:

*/s/ Brian A. Glasser*
Brian A. Glasser (WVSB #6597)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
BAILEY GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555

9

Facsimile: (304) 342-1110
*Counsel in Cabell County action*

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard@wc.com
ahardin@wc.com