## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON, | |
| Plaintiff, | |
| v. | Civil Action No. 3:17-01362 |
| AMERISOURCEBERGEN DRUG CORPORATION, et al., | Hon. David A. Faber |
| Defendants. | |
| CABELL COUNTY COMMISSION, | |
| Plaintiff, | |
| v. | Civil Action No. 3:17-01665 |
| AMERISOURCEBERGEN DRUG CORPORATION, et al., | Hon. David A. Faber |
| Defendants. | |

## MEMORANDUM IN RESPONSE TO DEFENDANTS'
## MOTION TO COMPEL DISCOVERY RESPONSES FROM DEA

Defendants seek to compel the United States Drug Enforcement Administration (DEA) to

respond to an excessively broad subpoena that seeks 36 expansive categories of documents.  Had

this subpoena been issued to DEA—a non-party, governmental agency—in a newly-filed case, it

would be overly broad, unduly burdensome, and improper for the reasons articulated in the letter

issued by the U.S. Attorney for the Southern District of West Virginia to Defendants denying

their request.[1]  *See* Ex. A.  But, as this Court knows, those are not the circumstances here.

---

[1] The Department of Justice denied Defendants' request pursuant to agency regulations
governing the disclosure of official agency information (i.e., *Touhy* regulations).  Federal

Rather, Defendants issued the subpoena shortly before the close of written discovery in cases that were remanded to this Court for trial following *two years of proceedings*—including extensive discovery from DEA—in the consolidated multidistrict litigation in the Northern District of Ohio (the "MDL court").

Defendants' attempt to reopen broad third-party discovery from DEA and others following remand is improper and inconsistent with the intent and expectations of the MDL court that suggested these cases be remanded for trial.  The MDL court clarified its views in its recently issued order—it expected that "only limited, jurisdiction-specific discovery in the West Virginia cases would be necessary after remand."  *See* Ex. B, Resp. to Mot. for Clarification at 2, *In Re: National Prescription Opiate Litigation*, No. 17-md-02804 (N.D. Ohio Apr. 17, 2020), ECF No. 3263.  More specifically, the MDL court "*did not believe additional discovery from DEA was necessary or appropriate for a fair trial*."  *Id.* at 2–3 (emphasis added).  This point cannot be overstated:  the MDL court suggested remand for these specific cases after overseeing extensive general and specific discovery for two years because it believed they were essentially trial-ready, and that additional discovery was not needed from DEA.

Indeed, the parties' actions on remand, and those of Defendants in particular, threaten to undermine not only the sound judgment of the MDL court, but also that of the Judicial Panel on Multidistrict Litigation (JPML).  The JPML made an informed decision to consolidate these cases with other similar lawsuits pending in federal courts across the country to ensure the just and efficient conduct of opioid-related cases.  The JPML relied on the MDL court's intimate knowledge of these cases and, most importantly, that court's view that discovery was

_____

agencies may regulate the disclosure of information by their employees, including refusing to produce subpoenaed documents. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). As explained in Part IV, *infra*, the Administrative Procedure Act provides the sole avenue for review of such agency denials, which are presumed valid.

substantially complete, and the cases were trial-ready.  While this Court may reach its own conclusion as to what additional discovery, if any, may be appropriate, that decision should not be made in a vacuum as Defendants suggest; rather, it should be informed by the extensive MDL discovery and pretrial proceedings.

In short, Defendants' efforts to reopen discovery and re-litigate issues upon remand to this Court, if allowed, will effectively undercut the entire MDL process.  This alone provides a sufficient and independent basis to deny Defendants' motion to compel.  Defendants' specific arguments in support of their motion also lack merit for the following reasons.

*First*, Defendants' motion to compel a privilege log for documents withheld in the MDL should be directed to that court.  Moreover, as DEA has told Defendants, it intends to begin rolling productions of its privilege log *in the MDL* imminently.

*Second*, Defendants' burden arguments miss the point.  The significant burden imposed on DEA to respond to discovery requests similar to those in the MDL outweighs whatever limited benefit Defendants would achieve through DEA's compliance.

*Third*, Defendants' privilege arguments are equally misguided.  As an initial matter, DEA did not waive *any* of its objections to Defendants' discovery requests, let alone those based on law enforcement sensitive information.  DEA engaged in good faith efforts to meet and confer with Defendants on three separate occasions regarding their requests up to *and beyond* the return date of Defendants' subpoena, while maintaining that the requests were duplicative of those in the MDL, unduly burdensome, and sought law enforcement sensitive information.[2]  More

---

[2] DEA met and conferred with Defendants in an attempt to identify a narrower universe of documents that DEA could collect, review, and produce, but Defendants steadfastly refused to meaningfully narrow their requests.  While allegedly seeking to compel production for only some of their requests, Defendants still have refused to "withdraw their non-priority requests or request for testimony."  (Mem. in Supp. of Defs.' Mot. to Compel Disc. Resps. from DEA, ECF

importantly, DEA is a non-party, governmental agency and it has no obligation to file written

objections to a subpoena.  On the contrary, the agency's applicable *Touhy* regulations, *see* 28

C.F.R. § 16.21, *et seq*., dictate the procedure by which DEA must respond to a third-party

subpoena, and these regulations do not require the agency to respond within the time limit set by

Defendants.

Moreover, Defendants' argument that West Virginia privilege law governs DEA's

disclosure of official agency documents is plainly incorrect.  Further, by suggesting that DEA

simply produce documents under an "Attorneys Eyes Only" designation without conducting any

review, Defendants propose DEA abdicate its obligations under its *Touhy* regulations, which

prohibit it from disclosing investigative techniques or law enforcement sensitive records.

## I.      Background

Although largely ignored by Defendants in their motion, the procedural history of these

cases is critical to the resolution of Defendants' motion.  On December 13, 2017, the JPML

transferred the two cases before the Court now from this Court to the United States District Court

for the Northern District of Ohio for consolidated proceedings.  These cases spent over two years

in the MDL court before they were deemed trial-ready and remanded.  During that time, the

parties sought extensive discovery from DEA, and, as the MDL court noted, "the parties

thoroughly and vigorously negotiated" the scope of that discovery, "in light of the needs of the

case and the burden on DEA as a non-party, governmental agency."  Ex. B at 1.  A Special

Master resolved disputes between DEA and parties.

---

No. 321 at 2.)  Notably, the last of these conferences occurred on April 1, 2020, one day after the
return date of Defendants' subpoena.  Given the ongoing negotiations, it is disingenuous for
Defendants to suggest that DEA waived its objections to the subpoena.

Although these prior requests were extremely burdensome, DEA recognized the importance of this litigation and therefore sought to work cooperatively with the parties to provide them with relevant documents and testimony sought through the MDL proceedings. DEA provided extensive testimony and documents in response to the parties' discovery requests, based on assurances that coordinated discovery in the MDL would obviate the need for DEA to respond to similar requests in related litigation, including remanded cases. Indeed, this is the very purpose of MDL consolidation. Notably, the parties continue to seek additional discovery from DEA in the MDL.[3] In light of this history, we respectfully submit that this Court should reject the Defendants' overbroad requests and deny the Defendants' motion to compel.

### A. Defendants Sought and Obtained Expansive Discovery from DEA in MDL Track One-A.

In Track One, pursuant to the MDL court's orders, DEA produced nationwide electronic ARCOS data and Suspicious Order Reports (SORs) for specified drugs for the years 2006 to 2014.[4] These productions contained hundreds of millions of records and included data for West

---

[3] The initial discovery track ("Track 1A") focused on plaintiffs' distribution claims. Track 1A resolved when all but one of the parties reached a settlement after jury selection. The MDL court subsequently created Track One-B to focus on plaintiffs' distribution and dispensing claims. Track One-B Case Management Order, *In Re: National Prescription Opiate Litigation*, No. 17-md-02804 (N.D. Ohio Nov. 19, 2019), ECF No. 2940. In response to a Sixth Circuit decision, the MDL court recently struck the Track 1B dispensing claims, which will move to Track 3. Order Regarding Track 1B and Track 3, *In Re: National Prescription Opiate Litigation*, No. 17-md-02804 (N.D. Ohio Apr. 16, 2020), ECF No. 3261. DEA continues to respond to discovery requests from the Track 1B parties and may receive additional requests in Track 3.

[4] The Automated Records and Consolidated Orders System/Diversion Analysis and Detection System ("ARCOS/DADS") is a database in which manufacturers and distributors report their controlled substances transactions to DEA. 21 U.S.C. § 827(d)(1); 21 C.F.R. § 1304.33. DEA regulations require manufacturers and distributors to report suspicious orders of controlled substances ("SORs") when discovered. *See* 21 C.F.R. 1301.74(b). A suspicious order is an order that the recipient has reason to believe involves the diversion of a controlled substance outside of legitimate channels, including orders of unusual size or frequency, or that deviate substantially from normal patterns.

Virginia, Cabell County, and the City of Huntington.  DEA also produced hard-copy field SORs for certain states and searched for field SORs for other states, including West Virginia.

Additionally, Cardinal Health, which coordinated discovery on DEA on behalf of Defendants, served a *Touhy* request and subpoenas on DEA seeking 37 broad categories of documents, testimony on 24 topics pursuant to Federal Rule of Civil Procedure 30(b)(6), and fact testimony from 13 current and former DEA employees.[5]  The Plaintiffs' Executive Committee also served a 30(b)(6) subpoena seeking DEA's testimony on five topics.  After significant negotiation, which ultimately required guidance from the MDL Special Master when the parties and DEA reached an impasse on certain issues, DEA produced approximately 27,000 pages of documents after conducting an extensive review as discussed further below; provided four agency 30(b)(6) witnesses, who collectively sat for 28 hours of deposition testimony (including one witness, who, to the best of our knowledge, sat for longer than any other individual deposed in the MDL); and produced five fact witnesses, several of whom sat for depositions that substantially exceeded the seven hours provided under FRCP 30.  DEA also authorized the deposition testimony of three deputized DEA Task Force Officers.

In addition to these requests, DEA reviewed:  (1) 14 expert reports drafted by former DEA employees and responded to the submitting parties, (2) deposition excerpts cited by the parties for trial, as well as DEA records identified by the parties as trial exhibits; and (3) proposed redactions related to the parties' motions for summary judgment on a highly expedited basis.  Each of these tasks required coordination with the relevant subject matter

---

[5] Defendants' requests on remand for 36 broad categories of documents are strikingly similar to the 37 broad categories of information they sought in the MDL, and their requests for testimony on 30 separate topics pursuant to Rule 30(b)(6) largely mirror, and in certain instances even expand on, the 24 broad categories on which they sought 30(b)(6) testimony in the MDL.  *See* Ex. D; Part V.C., *infra*.

experts at DEA to assess privilege and law enforcement sensitivities and diverted DEA's resources from mission-critical functions such as regulating the distribution of controlled substances and investigating potential violations of the law.

### B.   Both Parties Seek Additional Discovery from DEA in the Remanded Cases.

Despite the extensive discovery sought and obtained from DEA in Track One, Defendants issued additional discovery requests to DEA upon remand.  Defendants stated at a March 5, 2020 status conference before this Court:  "There's also *expansive discovery* that's been served on DEA and DOJ. And it's not just defendants who have requested this discovery. It's plaintiffs as well who have requested this discovery.  So there's much left."  (Tr. of Status Conference at 27:16–19, ECF No. 196 (emphasis added).)  The subpoena that is the subject of Defendants' motion to compel is indeed "expansive."  It seeks 36 broad categories of documents. While Defendants focused their motion to compel on 18 "priority" requests, they refuse to "withdraw their non-priority requests or request for testimony."  (ECF No. 321 at 2.)  The majority of these requests—including almost all of Defendants' priority requests—seek the same broad categories of documents that the parties and DEA expressly narrowed following extensive negotiation and compromise in the MDL.  The attached chart—Exhibit C—illustrates just how broad and redundant Defendants' discovery requests are when compared to those issued in the MDL.  *See also* Ex. D.  Indeed, five of the requests are identical to those issued in the MDL.[6] *See* Ex. C, Request Nos. 30, 31, 33, 34, and 35.  In addition, Defendants served a subpoena

---

[6] Of the 18 requests that Defendants have identified as high priority, one (Request No. 34) is identical to a request issued by Defendants in Track One of the MDL, and another (Request No. 30) simply adds the word "aggregate" to Defendants' request for production quotas.  Despite this, Defendants made the inaccurate assertion to this Court that they "did not request discovery on these specific topics in CT1."  (ECF No. 321 at 12.)  This is simply not true.

seeking DEA 30(b)(6) testimony on 30 topics.  Notably, this request is even more expansive than Defendants' overly broad 30(b)(6) request in the MDL.

As Defendants note, Plaintiffs too have issued additional discovery requests to DEA in this Court.  And DOJ has concluded that the majority of Plaintiffs' requests should be denied under the *Touhy* regulations for the same reasons that Defendants' requests are not authorized. *See* Ex. A.  DEA has agreed, however, to produce documents responsive to certain requests that were limited in nature, and which Plaintiffs further narrowed to identify specific documents that DEA could collect, review, and produce.  Defendants, on the other hand, have refused to meaningfully narrow their subpoena requests beyond identifying the 18 "priority" requests that are the subject of their motion, which remain individually and collectively both broad and burdensome.  This is not favoritism; it is how rational parties negotiate discovery disputes. Moreover, Defendants ignore that the lion's share of documents and testimony furnished by DEA in Track 1A was in response to Defendants' requests.

## II.    Defendants' Discovery Requests Undercut the Entire MDL Process.

Unfortunately, Defendants have treated the MDL court's remand as an opportunity to reopen discovery.  To the extent the parties believed that additional discovery was needed from DEA, they were obligated to inform the MDL court, object to remand, and seek that discovery as part of the MDL proceedings.  Instead, they stipulated to the remand with no indication that they intended to issue a host of additional discovery requests to DEA.  By seeking broad additional discovery from DEA—a non-party, governmental agency—in this Court, Defendants threaten to undermine not only the efficiency gains that the MDL court sought to achieve through its strategic remand of these cases but also the MDL process itself.

The "primary purpose" of MDL consolidation "is to promote efficiency through the coordination of discovery." *In re Nuvaring Prods. Liab. Litig.*, 2009 WL 4825170, at *1 (E.D. Mo. Dec. 11, 2009). The "purposes of the MDL will not be advanced if [a party] intends, upon remand . . . , to conduct in her individual case the very discovery that will be coordinated in th[e] MDL." *In re Bridgestone/Firestone, Inc.*, 128 F. Supp. 2d 1196, 1198 (S.D. Ind. 2001). Remand under such circumstances "would be nothing more than an abandonment of the Panel's judgment to include the . . . cases in th[e] MDL." *In re Bridgestone/Firestone*, 128 F. Supp. 2d at 1198.

Here, the MDL court determined (correctly) that both general and specific discovery, as well as pretrial motions practice, had been completed for the two cases remanded to this Court, and therefore the purpose of consolidation had been achieved. "The Court selected the West Virginia cases, in particular, because the status of case-specific and global discovery, pretrial rulings, and other litigation matters had advanced far enough to allow for fairly prompt trial in the transferor courts." Ex. B at 2. DEA too believed that discovery—and certainly discovery involving it, a non-party, governmental agency—was substantially complete. In light of this history, the MDL court determined that the strategic remand of these two trial-ready cases was appropriate and would continue to "serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation," as intended by the JPML. *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378 (J.P.M.L. 2017).

The parties' actions on remand subvert this determination. The discovery the parties seek in these cases largely retreads that which was sought and carefully negotiated in the MDL. In the course of meeting and conferring with the government, however, counsel for Defendants have stated that they do not view the MDL proceedings as limiting their ability to seek similar

discovery in these cases and, in fact, view remand as an *opportunity* to seek materials and testimony that was expressly foreclosed during MDL negotiations overseen by the Special Master.  The parties' actions and expressed views are particularly concerning given their silence regarding this additional third-party discovery at the time the MDL court was considering remanding the cases.  Notably, after being alerted to the broad discovery requests issued by Defendants in these cases, the MDL court quickly sought "to clarify its view of the status of the West Virginia cases at the time of remand, in order to assist the transferor court."  Ex. B at 2. The MDL court "believed only limited, jurisdiction-specific discovery in the West Virginia cases would be necessary after remand," and it "did not believe additional discovery from DEA was necessary or appropriate for a fair trial, applying the standards set out in Rules 26, 30, and 45 of the Federal Rules of Civil Procedure."  *Id.* at 2–3.[7]

Defendants' discovery requests to DEA are improper.  They are inconsistent with the MDL court's judgment that these cases had substantially completed discovery and therefore were appropriate for remand to this Court, the JPML's reliance on the sound judgment of the MDL court, and the basic premise of MDL consolidation.  This alone is a sufficient basis to deny Defendants' motion to compel in its entirety.

---

[7] After the MDL Court responded to DEA's Motion for Clarification, Defendants filed a notice with that court accusing DEA of "forum-shopping."  This is a bizarre and unfounded allegation. DEA asked the MDL court to clarify *its* suggestion of remand.  DEA did not ask that court to rule on Defendants' motion to compel filed in this Court, nor is Defendants' pending motion to compel relevant to the MDL court's intent when it suggested that these cases be remanded months ago.  Moreover, DEA has plainly stated (both to the MDL court and this Court) that this Court remains free to reach its own conclusion as to what additional discovery, if any, is appropriate.  Finally, Defendants' filing in the MDL court is particularly disingenuous given their attempt to use remand as an opportunity to reopen discovery issues resolved in the MDL.

III.    **Defendants' Motion to Compel Production of DEA's Privilege Log Should be Directed to the MDL Court.**

In seeking to compel production of DEA's privilege log, Defendants ask this Court to do something it cannot:  enforce a subpoena it did not issue.  Only the issuing court may modify, quash, or order a party to comply with a subpoena.  Fed. R. Civ. P. 45(d)(2)(B)(i) ("[T]he serving party may move *the court for the district where compliance is required* for an order compelling production or inspection." (emphasis added)); *see* 1991 Adv. Comm. Notes to Fed. R. Civ. P.  45 ("[T]he court in whose name the subpoena is issued is responsible for its enforcement."); *Shire LLC v. Mylan Pharmaceuticals*, Inc., 2013 WL 149635 at *1 (N.D.W.Va. Jan. 14, 2013) (collecting cases).  Accordingly, this request should be denied because Defendants should have directed this matter to the MDL court.

IV.    **Sovereign Immunity Precludes Enforcement of the Subpoena.**

Defendants' motion to compel compliance with their subpoena is "an action against the United States, subject to the governmental privilege of sovereign immunity."  *Smith v. Cromer*, 159 F.3d 875, 879 (4th Cir. 1998).  This Court lacks jurisdiction to order DEA—a non-party federal agency—to engage in discovery absent the necessary waiver of sovereign immunity.  *See COMSAT Corp. v. National Science Foundation*, 190 F.3d 269, 277 (4th Cir. 1999) ("[I]t is sovereign immunity, not housekeeping regulations, that gives rise to the Government's power to refuse compliance with a subpoena.").  Under binding Fourth Circuit precedent, such a waiver can only be provided through a *separate action* brought under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.  COMSAT*, 190 F.3d at 274 ("When the government is not a party, the APA provides *the sole avenue* for review of an agency's refusal to permit its employees to comply with subpoenas." (emphasis added)); *Smith*, 159 F.3d at 881 ("Cromer's remedy, if any, for the Justice Department's [refusal to permit its employees to testify] may be

11

found in the [APA] . . . ." ).  Accordingly, if Defendants wanted to compel the DOJ to respond to their February 21, 2020 *Touhy* request, they should have filed a separate action under the APA. *See* 5 U.S.C. § 706(1) (granting district court authority to "compel agency action unlawfully withheld or unreasonably delayed").  Likewise, if Defendants wish to challenge the reasonableness of DOJ's application of its *Touhy* regulations, they must do so through a separately filed action under the APA.

Despite clear and binding authority to the contrary, a number of courts in the Fourth Circuit have held that, where the underlying case is already in federal court, a party need not bring a separate action under the APA to allow the court to review the agency's actions under its *Touhy* regulations.  *Clay v. Consol Pa. Coal Co.*, LLC, 2013 WL 12373597, at *2 (N.D.W. Va. Oct. 17, 2013); *Spence v. NCI Info. Sys., Inc.*, 530 F. Supp. 2d 739, 745 (D. Md. 2008).  But even in those cases, the parties seeking to compel compliance at least acknowledged the applicability of the APA but argued that a separate action was not required.  Here, on the other hand, Defendants do not even mention the APA nor do they attempt to identify the correct standard of review for the Court.  Accordingly, Defendants provide no basis for this Court to find that the government has waived its sovereign immunity with respect to Defendants' motion to compel, and it has not.  This provides yet another independent basis on which this Court can and should deny the motion in its entirety.

## V.     Defendants' Discovery Requests Have Been Properly Considered and Denied Pursuant to DOJ *Touhy* Regulations.

Defendants' discovery requests are also improper because they do not comply in a number of material respects with the DOJ's *Touhy* regulations governing the disclosure of official DEA information.  In addition to running afoul of FRCP 26 and 45, many of the requests seek law enforcement sensitive information, the disclosure of which is expressly prohibited by

28 C.F.R. § 16.26(b), and would impose a heavy burden on DEA to review and redact law enforcement sensitive information.  *See* Ex. E, Declaration of Heather Wehrle, Acting Diversion Group Supervisor, DEA, Charleston, WV Office.  Finally, the requests are inappropriate based on a number of other procedural and substantive shortcomings under the governing regulations, as explained more fully in the U.S. Attorney's April 24, 2020 letter to Defendants in response to their February 21, 2020 *Touhy* request.  *See* Ex. A.

> **A.**     **The Standard of Review for a *Touhy* Denial Is Highly Deferential to the Government Agency.**

Even if this Court concludes that it has jurisdiction to address Defendants' motion, the APA governs the Court's review.  *COMSAT*, 190 F.3d at 274; *Spence*, 530 F. Supp. 2d at 745. Under the APA, "courts may reverse an agency's decision not to comply *only when the agency has acted unreasonably*."  *COMSAT*, 190 F.3d at 277 (emphasis added).  "The APA waives sovereign immunity and permits a federal court to order a non-party agency to comply with a subpoena if the government has refused production in an arbitrary, capricious, or otherwise unlawful manner."  *Id.*  An agency decision is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 44 (1983).  An agency's decision must be upheld if it is reasonable and in accordance with the agency's *Touhy* regulations.  *Spence*, 530 F. Supp. 2d at 745; *see Andreas-Myers v. Nat'l Aeronautics & Space Admin.*, 2017 WL 1632410, at *4 (D. Md. Apr. 28, 2017) ("The APA only requires the Court to decide whether the agency 'articulated a rational connection between the facts found and the choice made.'" (quoting *Baltimore Gas & Elec. Co.*

*v. Natural Res. Def. Council*, 462 U.S. 87, 105 (1983)).  Ultimately, "[w]hen an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources."  *COMSAT*, 190 F.3d at 278.

**B.    The Governing Law Permits DEA to Refuse to Comply with Third-Party Subpoenas.**

DOJ *Touhy* regulations prohibit current and former DEA employees from disclosing official information absent express authorization from DOJ.  28 C.F.R. § 16.22(a).  Accordingly, Defendants must comply with DOJ *Touhy* regulations before they may obtain any testimony or other information from a current or former DOJ employee.  *See Smith*, 159 F.3d at 879–80. These regulations prohibit disclosure of official information when doing so would be inconsistent with the "rules of procedure governing the case" or "the relevant substantive law governing privilege."  28 C.F.R. § 16.26(a).  Moreover, disclosure is inappropriate if it would: (1) violate a statute or rule of procedure; (2) violate a specific regulation; (3) reveal classified information; (4) reveal a confidential source or informant; (5) reveal investigative techniques or investigatory records compiled for law enforcement purposes; or (6) reveal trade secrets without the owner's consent.  *Id.* § 16.26(b).

West Virginia state law regarding privilege is irrelevant to the DOJ's *Touhy* analysis, and therefore irrelevant to this Court's deferential review of the reasonableness of that analysis. Even if West Virginia law constituted "the relevant substantive law governing privilege" under subsection 16.26(a) of the DOJ *Touhy* regulations—as Defendants appear to suggest—subsection 16.26(b) provides an independent prohibition on disclosing information that would "reveal investigative techniques or investigatory records compiled for law enforcement purposes."  This is the "law enforcement privilege" on which DOJ relied in denying Defendants' requests.

Accordingly, the Court's review is limited to whether DOJ's denial was arbitrary and capricious under the applicable *Touhy* regulations and federal law, not West Virginia state law.

Courts in the Fourth Circuit regularly uphold agency refusals to comply with third-party subpoenas so long as they are rationally related to the facts and the agency's *Touhy* regulations, including instances where the agencies' reasons are much more limited than those articulated here. For instance, in *Barreto v. SGT, Inc.*, the court granted NASA's motion to quash a third-party subpoena to depose a NASA employee on the sole basis that the subpoena "did not give a sufficient rationale to justify expending appropriated monies for this non-federal purpose," because the agency's decision had "a rational connection to the subpoena." 2019 WL 3253373, at *4 (D. Md. July 19, 2019). Courts have also recognized that preservation of human resources is an acceptable basis for federal agencies' refusal to comply with non-party subpoenas. *See Bavarian Nordic A/S v. Acambis Inc.*, 2007 WL 9782602, at *2 (D. Md. Jan. 19, 2007) (upholding agency refusal to comply with non-party subpoena on basis that it would be contrary to agency's self-interest); *Bruno v. Nationwide Mut. Fire Ins. Co.*, 2009 WL 10681974, at *2 (D. Md. Oct. 26, 2009) ("FEMA's refusal to comply with [a] subpoena was not arbitrary, capricious or otherwise unlawful because . . . FEMA was reasonably acting to preserve its human resources.").

### C.     DOJ Properly Considered and Denied Defendants' Requests Because the Requests Are Overly Broad, Unduly Burdensome, and Duplicative.

Disclosure of the information sought by Defendants is inconsistent with the rules of procedure governing the case, and therefore inappropriate under the governing *Touhy* regulations. Federal Rules of Civil Procedure 26 and 45 prohibit discovery requests that impose an undue burden or seek cumulative or duplicative information. Defendants' requests do just that.

Parties may not seek discovery that is "unreasonably cumulative or duplicative."  Fed. R.

Civ. P. 26(b)(2)(C)(i).  Nor is discovery appropriate where the burden on the producing party

outweighs the likely benefit of the materials sought.  Fed. R. Civ. P. 26(b)(1).  These prohibitions

are amplified where the discovery at issue is sought from a third-party.  *See, e.g.*, *Cusumano v.*

*Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("Although discovery is by definition

invasive, parties to a lawsuit must accept its travails . . . .  Non-parties have a different set of

expectations.  Accordingly, concern for the unwanted burden thrust upon non-parties is a factor

entitled to special weight in evaluating the balance of competing needs.").

Moreover, in evaluating the burden imposed by third-party discovery requests, a

government agency can—and for practical reasons must—consider the cumulative effect of past

and future requests in related litigation.  *See COMSAT*, 190 F.3d at 278 (considering "potential

cumulative burden upon the agency" in evaluating propriety of *Touhy* denial); *Spence*, 530 F.

Supp. 2d at 745 (stating that "federal agencies must be permitted to consider the precedential

effects of granting individual discovery requests" when evaluating burden imposed by *Touhy*

request).  For instance, a district court upheld the Army Corps' refusal to comply with a second

subpoena based on the Corps' rationale that it had "already expended significant time and effort"

on the first document production and "believed that information to be sufficient to comply with

Defendant's request."  *Sauer Inc. v. Lexington Ins. Agency, Inc.*, 2014 WL 5580954, at *6

(E.D.N.C. Oct. 31, 2014).  And in *Hoover v. Trent*, the Federal Bureau of Investigation (FBI)

refused to comply with a third-party subpoena that would have required it to produce 1,000

pages of documents that were sought from a single facility.  2009 WL 10676534, at *4 (N.D.W.

Va. June 3, 2009).  In upholding the FBI's denial, the court noted that producing "solely the

documents" sought in the subpoena would not impose an undue burden on the FBI, but

concluded that requiring production would impose an unreasonable "cumulative burden" on the

FBI, in light of the potential for similar requests in other cases.  *Id.*; *see also Andreas-Myers*,

2017 WL 1632410, at *8 ("An agency is free to consider the additional burden that a second

request would entail after already having responded to a first request."); *Spence*, 530 F. Supp. 2d

at 746 (upholding agency refusal to comply with subpoena and rejecting argument that agency

"was required to limit its inquiry to whether [Plaintiff's] particular request was unduly

burdensome").

Responding to Defendants' requests would impose an unreasonable burden on DEA.

This is particularly true in light of the cumulative nature of these requests and the immense

burden already imposed on DEA in Track One of the MDL.  Defendants' discovery requests in

the MDL imposed unique burdens on DEA as a non-party, law enforcement governmental

agency and required a time-consuming effort by the agency to narrow the initial universe of

documents generated by the parties' unreasonably broad requests.  First, DEA collected roughly

65 million pages of documents from 11 custodians, some of whom had left the agency years

prior.  DEA and DOJ then engaged in extensive negotiations with the parties to identify a subset

of custodians and search terms that could be reviewed.  Given the nature of DEA's work, many

requested documents contained privileged or law enforcement sensitive information, requiring

DEA to establish a process to identify such materials to be withheld for further review.

To quantify the resources devoted to these efforts, DEA estimates that its legal team—

comprised of ten attorneys and paralegals who have all devoted time to this matter—collectively

spent more than 5,000 hours addressing the Track 1A litigation.  This figure does not include the

hours devoted by the dozens of agents, investigators, and program personnel who aided the legal

team to identify and collect documents, identify subject matter experts, and prepare for and testify in depositions.

Now, Defendants—by issuing broad requests similar (and, in some instances, identical) to those in the MDL—are requesting that DEA unnecessarily duplicate these efforts.[8]  In some instances, the requests essentially ask for all documents of entire divisions or offices within DEA.  *See, e.g.*, Request Nos. 3, 7, 8, 9.  Other requests seek documents and testimony pertaining to DEA investigations.  *See, e.g.*, Request Nos. 13, 17, 18.  As was the case in the MDL, production of such documents would require careful, resource-intensive review to determine if an investigation is open or closed and then to redact privileged, law-enforcement sensitive, or otherwise protected information.  DEA may also need to confer with other law enforcement agencies on shared information.  DEA has limited resources to dedicate to responding to discovery as a non-party in civil litigation, and responding to these subpoenas requires significant input and effort from DEA personnel whose primary responsibilities are to prevent and investigate diversion.  *See* Ex. E.

Moreover, the immense burden on DEA to identify, review, and produce these documents greatly outweighs the likely benefit to Defendants.  Indeed, Defendants conceded as much to this Court.  At the March 5, 2020 status conference, Defendants argued that discovery they had received in other cases, including the MDL, would not suffice because those cases involved different agencies.  However, they then expressly conceded that DEA was an "exception" to this position, because Defendants have "a substantial amount of discovery from DEA already."  (ECF No. 196 at 29:3–4.)  Defendants further acknowledged that "most of" the

---

[8] Additionally, DEA has received overlapping and duplicative discovery requests from parties in related opiate litigation pending in various state courts across the nation.  These requests, too, have imposed a significant burden on DEA, and therefore further support the reasonableness of the agency's *Touhy* denial.

18

DEA discovery they already have "from a national level" is "relevant to this case." (*Id.* at 29:11–13.) Defendants are correct. They already possess a "substantial amount" of discovery from DEA that is relevant to these cases. Whatever minimal additional benefit Defendants may potentially glean from their expansive and redundant requests simply cannot justify the significant additional burden imposed on DEA.

### D. DEA Properly Considered and Denied Defendants' Requests Because the Requests Seek Law Enforcement Sensitive Information.

Pursuant to 28 C.F.R. § 16.26(b)(5), DEA is prohibited from releasing information if "[d]isclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired." Much of the information sought by Defendants implicates materials that would reveal DEA's investigative techniques and impede its ability to carry out its law enforcement mission. Accordingly, disclosure of this material is prohibited by the governing *Touhy* regulations.

For example, Defendants seek documents describing the "DEA's policies and procedures and training" concerning investigations, its use of ARCOS and SORS in investigations, and files and communications relating to virtually every DEA opioids investigation, open or closed, in West Virginia over the last 24 years. The release of such information could reveal DEA's investigative techniques and enable wrongdoers to avoid detection, which is why section 16.26(b)(5) prohibits such a release. Even if some subset of the requested information could be disclosed without compromising law enforcement interests, doing so would impose an unreasonable burden on DEA to identify and withhold law enforcement sensitive information.

Finally, Defendants' suggestion that DEA produce potentially sensitive documents without review pursuant to an "Attorneys Eyes Only" (AEO) designation is misguided.

Defendants are correct that DEA sought to limit the disclosure of sensitive DEA information by negotiating the use of this designation for documents produced by state Attorneys General that contained DEA information.  The fact that DEA was able to negotiate this protection for documents *outside of its possession and control* has no bearing on DEA's responsibilities and legal obligations with regard to documents it does possess and control.  The governing *Touhy* regulations prohibit disclosure of such information if it would reveal law enforcement sensitive information, and an AEO designation does not provide sufficient protection.

*      *      *

In sum, in denying Defendants' requests, DOJ appropriately considered the burden of responding to such expansive requests, particularly in light of the significant resources DEA has already expended (and continues to expend) in responding to similar requests in the MDL.  DOJ also considered the sensitive nature of much of the information sought.  Finally, DOJ considered the fact that the requests contained a number of other procedural and substantive deficiencies based on the governing *Touhy* factors.  Based on these considerations, DOJ reasonably concluded that responding to Defendants' overbroad and redundant requests was not an appropriate use of DEA resources and would divert agency personnel from carrying out mission-critical activities.  This conclusion was guided by the specific facts at issue here, was based on the governing DOJ *Touhy* regulations, and was neither arbitrary nor capricious.

**VI.    Conclusion**

For the foregoing reasons, DEA respectfully requests that this Court deny Defendants' motion to compel.

20

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MICHAEL B. STUART
United States Attorney
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

By:    /s/Fred B. Westfall Jr.
       Fred B. Westfall, Jr. (W.Va. Bar No. 3992)
       Assistant U.S. Attorney, Civil Chief
       300 Virginia Street East, Room 4000
       Charleston, WV 25301
       (304) 345-2200
       (304) 347-5443 (facsimile)
       E-mail:  fred.westfall@usdoj.gov

       MICHAEL D. GRANSTON
       ANDY J. MAO
       NATALIE A. WAITES
       JONATHAN K. HOERNER
       J. ANDREW JACO
       KELLY E. PHIPPS
       DAVID M. SOBOTKIN
       United States Department of Justice
       Civil Division/Fraud Section
       175 N Street, N.E., Room 10.222
       Washington, D.C. 20002
       (202) 616-2964
       Natalie.A.Waites@usdoj.gov

       Attorneys for U.S. Department of Justice
       Drug Enforcement Administration

## <u>CERTIFICATE OF SERVICE</u>

I, Fred B. Westfall, Jr., Assistant United States Attorney, hereby certify that on

April 30, 2020, I filed the foregoing **MEMORANDUM IN RESPONSE TO DEFENDANTS'**

**MOTION TO COMPEL DISCOVERY RESPONSES FROM DEA** with the Clerk of the

Court using the Court's CM/ECF system, which will send notification of such filing to all

counsel of record and will also send a copy of the aforesaid document by email to all counsel of

record.

<u>/s/Fred B. Westfall, Jr.</u>
Fred B. Westfall, Jr. (W.Va. Bar No. 3992)
Assistant U.S. Attorney, Civil Chief
300 Virginia Street East, Room 4000
Charleston, WV 25301
(304) 345-2200
(304) 347-5443 (facsimile)
E-mail:  fred.westfall@usdoj.gov