# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**THE CITY OF HUNTINGTON,**
    **Plaintiff,**

**v.**

                                **CIVIL ACTION NO. 3:17-01362**

**AMERISOURCEBERGEN DRUG
CORPORATION, et al.,**
    **Defendants.**

_____

**CABELL COUNTY COMMISSION,**
    **Plaintiff,**

**v.**

                                **CIVIL ACTION NO. 3:17-01665**

**AMERISOURCEBERGEN DRUG
CORPORATION, et al.,**
    **Defendants.**

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL U.S. DRUG ENFORCEMENT AGENCY'S PRODUCTION OF SUBPOENAED DOCUMENTS

Plaintiffs The City of Huntington and Cabell County Commission (collectively, "Plaintiffs") submit this memorandum in support of their motion for the Court to compel third party the U.S. Drug Enforcement Agency ("DEA") to produce documents pursuant to a subpoena Plaintiffs served on March 19, 2020.

## INTRODUCTION

On March 19, 2020, Plaintiffs served upon DEA a letter pursuant to the U.S. Department of Justice's *Touhy* regulations, 28 C.F.R. §§ 1621-1626, and a subpoena to produce nine categories of documents pertaining to distribution of prescription opioids in West Virginia. Plaintiffs' first seven requests seek documents related to ten pharmacy stores operating in or just

outside Plaintiffs' jurisdictions.  The eighth and ninth requests seek documents related to CVS Pharmacy and Rite Aid Pharmacy stores operating within West Virginia.

The documents Plaintiffs seek clearly are relevant to their causes of action against the three distributor Defendants.  Plaintiffs allege that Defendants created and maintained a public nuisance by repeatedly, unlawfully, and wrongfully failing to maintain effective controls against diversion of the prescription opioids and other controlled substances they distributed, which unreasonably interfered with and had a substantial impact upon the public health, giving rise to the opioid epidemic within their jurisdictions.  *See* Corrected Joint and Third Amended Complaint (Doc. 80), ¶¶ 801-884 (Defendant fact allegations); ¶¶ 1401-1450 (Public Nuisance Count allegations).  The documents Plaintiffs seek relate to pharmacy stores in and around their jurisdictions to which Defendants distributed prescription opioids while failing to maintain effective controls, including failing to identify and effectively respond to suspicious pharmacy orders.  The pharmacy stores' ordering, dispensing, and sales practices clearly are relevant to Plaintiffs' claims.  *See*, *e.g.*, *In re Nat'l Prescr. Opiate Litig.*, 2019 U.S. Dist. LEXIS 141126, at *91-95 (N.D. Ohio Aug. 20, 2019) (Opinion and Order re Defendants' motions to exclude expert opinions) (Plaintiffs' experts' uses of pharmacy store ordering patterns to identify suspicious orders "are both relevant and helpful to resolving issues in this case").

Despite the foregoing, DEA has refused to produce any documents responsive to Plaintiffs' nine requests concerning West Virginia pharmacy stores.  Instead, it objected based upon alleged burden, relevancy, privilege, and procedural grounds.  None of these objections has merit, as set forth in detail below.  The Court therefore should order DEA to produce the documents Plaintiffs request concerning West Virginia pharmacy stores.

## PROCEDURAL HISTORY

On March 19, 2020, Plaintiffs served their *Touhy* letter and subpoena to produce documents upon DEA.  *See* Ex. A (March 19, 2020 Letter and Notice of Service of Subpoena). Plaintiffs' subpoena contains nine requests for production of documents.

Plaintiffs' first six requests identify six specific pharmacy stores in or near Plaintiffs' jurisdictions:

- Safe Script Pharmacy No. 6, located in Huntington;

- A+ Care Pharmacy, located in Barboursville;

- McCloud Family Pharmacy, located in Huntington;

- Drug Emporium, located in Barboursville;

- S & F Pharmacy, d/b/a Fruth Pharmacy Store #12; and

- Fruth Pharmacy of Milton, Inc.;

and for these six stores, ask DEA to produce:

> All documents relating to [pharmacy store], include, but not limited to, all documents relating to or reflecting the purchase, sale, distribution or dispensing of opioids or other controlled substances by [pharmacy store] or the investigation or prosecution of [pharmacy store] related to opioids.

Ex. A, Subpoena-Schedule A, Requests 1-6.

Plaintiffs' seventh request seeks the same types of information for four CVS Pharmacy and/or West Virginia CVS Pharmacy, LLC stores, all located in Huntington:

- CVS store operating with DEA # BR4365486, located at 2901 Fifth Ave.;

- CVS store operating with DEA # BR4301545, located at 505 Twentieth St.;

- CVS store operating with DEA # BR4321787, located at 447 W. Washington Ave.;

- CVS store operating with DEA # AR6055025, located at 5179 U.S. Rte. 60E.

*Id.*, Subpoena-Schedule A, Request 7.

Plaintiffs' eighth and ninth requests seek the same types of information for all CVS Pharmacy and/or West Virginia CVS Pharmacy, LLC and Rite Aid Pharmacy, Inc. stores operating within the State of West Virginia.  *See id.*, Subpoena-Schedule A, Requests 8-9.[1]

The DEA has refused to produce any of these documents.  *See* Ex. B (DEA, April 24, 2020 Letter) at 8.  Instead, the DEA rests upon its objections that Plaintiffs' requests:

- are unreasonably cumulative and duplicative under Fed. R. Civ. P. 26(b)(2)(C), *id.* at 3-4;

- fail to provide a summary of information sought or statement or relevance, as required by 28 C.F.R. § 16.22(c)-(d), *id.* at 4-6;

- are overly broad and unduly burdensome under Fed. R. Civ. P. 26 and 45, *id.* at 6;

- seek law enforcement-sensitive information that is privileged under 28 C.F.R. § 1626(b)(5), *id.* at 7; and

- seek information that is available from other sources, including defendants, *id.* at 7-8.

Pursuant to the Court's Order Regarding Third-Party Discovery Disputes (Doc. 365), § 1, Counsel for Plaintiffs and for the DEA met and conferred by telephone on April 28, 2020. Based on the discussion, Counsel for Plaintiffs offered on April 30 to narrow the scope of Plaintiffs' requests in a good faith effort to resolve this dispute. Counsel for DEA has not responded as of the time of this motion filing.

---

[1] Plaintiffs' nine document requests related to specific West Virginia pharmacy stores are far more tailored to this case than Defendants' DEA subpoena, currently pending before the Court (Doc. 320), which requests 36 categories of documents, some covering subjects national in scope and not limited to these jurisdictions or to West Virginia. *See* Defs' Ex. A (Doc. 321-1), Subpoena Schedule A, Requests 2, 15, 20, 21, 30-32, 35-36. *These*, not Plaintiffs' tailored requests, may be grounds for DEA's objection discussed herein that certain requests duplicate MDL discovery. *See infra*, Argument § C.1. Defendants' requests also reach more broadly to cover *all* diversion, *all* unlawful opioid-related conduct, and *all* opioid-related investigations in Plaintiffs' jurisdictions. *See* Defs' Requests 3-5.

## ARGUMENT

### A.  Legal Standard

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).

Rule 26 provides for a "broad scope of discovery." *Ralston Purina Co. v. McFarland*, 550 F.3d 967, 973 (4th Cir. 1977); *see also CSS, Inc. v. Herrington*, 2018 U.S. Dist. LEXIS 231504, at *5 (S.D. W. Va. Jan. 9, 2018) (same).  Moreover, the "rules of discovery, including Rule 26, are to be given broad and liberal construction." *White v. Sam's East, Inc.*, 2016 U.S. Dist. LEXIS 5353, at *3 (S.D. W. Va. Jan. 15, 2016).

The same standards apply to discovery of third parties under Fed. R. Civ. P. 45.  "'Rule 45 adopts the standard codified in Rule 26 in determining what is discoverable.'"  *CSS*, 2018 U.S. Dist. LEXIS 231504, at *5 (quoting *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005)).  Rule 45 thus likewise "provides for a broad scope of discovery."  *Id.*

### B.    Plaintiffs' Subpoena Seeks Clearly Relevant Documents That Should Be Produced.

The documents Plaintiffs seek from DEA related to specific West Virginia pharmacy stores' purchase, sale, distribution, and dispensing of opioids and other controlled substances clearly are relevant to Plaintiffs' claims alleging unlawful distribution practices by Defendants.

The MDL Court has addressed in great detail the relevancy of pharmacy store ordering and dispensing data to distribution-based claims.  In finding the Case Track 1 ("CT1") Plaintiffs' expert opinions on Distributors' failures to maintain effective controls against diversion admissible under Fed. R. Evid. 702, the MDL Court addressed the experts' methodologies for identifying suspicious orders, all of which were based on analysis of pharmacy store data.  *See In re Nat'l Prescr. Opiate Litig.*, *supra*, 2019 U.S. Dist. LEXIS 141126, at *91-95 (describing experts methodologies based upon identifying patterns in pharmacy store ordering).  The MDL Court concluded that these methodologies based upon pharmacy store ordering patterns:

> are both relevant and helpful to resolving issues in this case, including: (1) whether Defendants employed reasonable measures to identify potentially suspicious orders; (2) the number of orders Defendants could have reasonably flagged; and (3) whether Defendants conducted adequate due diligence to stop shipment of suspicious orders.

*Id.* at *95.

The opioid dispensing and sales practices of pharmacy stores in and around Plaintiffs' jurisdictions thus clearly are relevant to Plaintiffs' claims here that the Defendant Distributors failed to maintain effective controls against diversion like those addressed by the MDL Court.

### C.   DEA's Objections to Plaintiffs' Requests Have No Merit.

#### 1.   Plaintiffs' Requests Are Not Unreasonably Cumulative or Duplicative.

DEA first objects on the grounds that Plaintiffs' requests "are unreasonably cumulative or duplicative with discovery requests to DEA in either Track One-A or Track One-B of the MDL." Ex. B (DEA April 24, 2020 Letter) at 3.  They are not.

The documents Plaintiffs seek pertaining to specific West Virginia pharmacy stores were not produced in CT1 because there were and are no West Virginia claimants in the CT1 cases.

The DEA does not and cannot dispute this.  Instead, it makes two arguments to try to establish cumulativeness and duplication, neither of which justifies its failure to produce.

First, DEA tries to shift the focus away from Plaintiffs' March 19 requests for West Virginia pharmacy documents by addressing a different set of requests.  *See id.* at 3 ("And yet, Requests 5-9 *of your February 3 letter* are not geographically limited to West Virginia . . . .") (emphasis added).  Whether or not Plaintiffs' *previous* requests were limited to West Virginia, their *current* requests are.  Indeed, these requests are appropriately tailored under the very MDL Court ruling that DEA cites.  *See In re Nat'l Prescr. Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio April 17, 2020) (Doc. 3263—Response to DEA Motion for Clarification) at 2 ("As stated, this Court believed only limited, jurisdiction-specific discovery in the West Virginia cases would be necessary after remand.").  That is precisely what Plaintiffs are seeking here—West Virginia-specific discovery, as it is their right to obtain.  *See* Discovery Ruling Granting Plaintiffs' Motion to Compel Deposition of Tim Ashworth (Doc. 360) at 2 ("Although there is a coordinated effort in the MDL litigation to reduce repetitious discovery in all forms, it anticipates parties will have a meaningful opportunity to discovery information concerning specific issues unique to their jurisdictions.").

DEA's assertion that this discovery "is inconsistent with the MDL Court's understanding that no further discovery from DEA would be needed in this case upon remand," Ex. B (April 24, 2020 Letter) at 4, is plainly incorrect.  The MDL Court's observation that "jurisdiction-specific discovery in the West Virginia cases" remains to be completed after remand demonstrates that Plaintiffs' West Virginia-specific requests herein are not cumulative or duplicative of MDL discovery.

Second, DEA also misses the mark in asserting that "Requests 8-10 of your March 19 Letter specifically seek documents concerning Rite Aid and CVS, both of which are defendants in Track One-B and are not defendants in this case." Ex. B (April 24, 2020 Letter) at 3. This is irrelevant because, although Rite Aid and CVS are parties to CT1B, *Plaintiffs herein are not.* Nor is any other West Virginia entity. DEA thus does not and cannot explain how the discovery sought in Plaintiffs' March 19 letter concerning West Virginia pharmacy stores either was or can now be obtained in the CT1 proceedings involving Ohio Plaintiffs. This discovery is intended not to support claims against Rite Aid and CVS for their conduct in two Ohio counties that is at issue in CT1, but rather to support Plaintiffs' claims herein based on Defendants' conduct in supplying these pharmacies in Plaintiffs' own jurisdictions. The DEA's reference to CT1 thus is entirely misplaced.

In sum, DEA's objections on the grounds of alleged cumulativeness or duplication are baseless and should be rejected.

## 2. Plaintiffs' Requests Are Not Overly Broad or Unduly Burdensome.

DEA also objects on the grounds that Plaintiffs' document requests "are overly broad and unduly burdensome." Ex. B (April 20, 2020 Letter) at 6. They are not.

Here again, DEA expands the focus beyond Plaintiffs' March 19 requests for West Virginia pharmacy store documents by arguing that "response to 18 individual document requests would be unduly burdensome." *Id.* Whether or not that would be so, it does not answer the question presented here of whether Plaintiffs' March 19 requests for documents related to specified West Virginia pharmacy stores are appropriately tailored. They are. The Special Master's recent Discovery Ruling recognizes that Plaintiffs must be afforded the opportunity to take jurisdiction-specific discovery like this. *See* Discovery Ruling (Doc. 360) at 2

("Recognizing that the prior action involved questioning Mr. Ashworth on his activities on behalf of McKesson in West Virginia, it did not afford these Plaintiffs the ability to question him on issues specific to Huntington and Cabell County and, therefore, they should be allowed this inquiry.").  So, too, should Plaintiffs be permitted this discovery tailored to DEA's documents pertaining to specific Huntington, Cabell County, and West Virginia pharmacy stores.

DEA also tries to expand the focus of this dispute by stating that it "has borne and continues to bear significant burdens from discovery in the MDL and other opioid-related litigations . . . ."  Ex. B (April 24, 2020 Letter) at 7.  DEA also made a version of this argument to the MDL Discovery Special Master, who found that this is not grounds for denying otherwise appropriate discovery requests.  *See* Ex. C (*In re Nat'l Prescr. Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio April 10, 2020)) at 5 ("[T]his Order compels DOJ to locate and produce just six audit documents to Rite Aid.  Even multiplied by numerous MDL distributor defendants, this is not an onerous burden."); *id.* at 11 ("Finally, in light of the burden imposed upon DOJ . . . , DOJ may 'roll out' this discovery production."). DEA's assertion as to a cumulative MDL-wide burden is not grounds for denying Plaintiffs' requests for relevant documents.[2]

### 3.   Plaintiffs' Requests Are Not Barred by Law Enforcement Privilege.

DEA next argues that a law enforcement privilege bars Plaintiffs' document requests in their entirety.  *See* Ex. B (April 24, 2020 Letter) at 7.  This is incorrect for two reasons.

First, as DEA recognizes, Plaintiffs do not seek *only* records related to investigation or prosecution.  Rather, they seek "all documents relating to or reflecting the purchase, sale, distribution or dispensing of opioids or other controlled substances by [pharmacy store] *or* the investigation or prosecution of [pharmacy store] related to opioids."  Ex. A (March 19, 2020

---

[2] Moreover, even if DEA's cumulative burden argument were relevant, it would apply with far greater force to Defendants' more sweeping requests, *see supra* fn.1, than it would to Plaintiffs' tailored requests herein.

Letter), Subpoena Sched. A, Requests 1-9.  DEA nonetheless remarkably contends that "even if some subset of the requested information can be disclosed without compromising law enforcement interests, it will impose a significant additional burden on DEA to identify and withhold law enforcement sensitive information."  Ex. B (April 24, 2020 Letter) at 7.  By this reasoning, DEA would never have to produce relevant evidence for any company it has ever investigated since even a request *excluding* such documents still would require DEA to make this ostensibly burdensome determination of what is and is not "law enforcement sensitive information."  The Department of Justice's regulations, however, require DEA to make precisely this determination.  *See* 28 C.F.R. § 16.26(a)(2) ("In deciding whether to make disclosures pursuant to a demand, Department officials and attorneys should consider . . . [w]hether disclosure is appropriate under the relevant substantive law concerning privilege.").  DEA's argument here, if accepted, would relieve the agency from ever having to make this determination that the regulations direct it to make.

Second, even as to law enforcement-related materials, the Department's regulations do not provide for a blanket exclusion from discovery.  Instead, they permit withholding if "[d]isclosure would reveal investigatory records compiled for law enforcement purposes, *and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired.*"  28 C.F.R. § 16.26(b)(5) (emphasis added).  Thus, Plaintiffs' inclusion of documents "relating to . . . investigation or prosecution" within their requests is not *per se* prohibited.

This is precisely what MDL Special Master Cohen recently found in rejecting a similarly sweeping assertion of the law enforcement privilege by DEA.  In ruling upon DEA's (and the FBI's) refusal to produce audit documents sought by one or more CT1 Defendant, Special

Master Cohen noted that "DOJ asserts that DEA's audit documents 'reveal investigative methods,' including . . . 'key investigative decisions' made by DEA . . . ." Ex. C (*In re Nat'l Prescr. Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio April 10, 2020) (Doc. 3258)) at 7.  He then rejected DOJ's privilege assertion as "clearly hyperbolic" because, for example, "it is hard to imagine that a distributor can somehow avoid detection of its bad acts because it knows that unannounced investigations begin at 9:00 a.m., or last for eight hours, or focus on opioids."  *Id.* Moreover, Special Master Cohen conducted an *in camera* inspection of the DEA audit documents at issue and concluded that "production of the audits will not lead to 'disclosure of law enforcement techniques and procedures, [undermine] the confidentiality of sources, [endanger] witness and law enforcement personnel, [invade] the privacy of individuals involved in an investigation, [or] otherwise . . . interfere[e] with an[y] investigation.'"  *Id.* (quoting *MacNamara v. City of New York*, 249 F.R.D. 70, 78 (S.D.N.Y. 2008)) (alterations in citing opinion).

The fact that the documents at issue here include some related to investigations or prosecutions, rather than periodic audits, also does not support DEA's assertion of a blanket preclusion or privilege.  Federal courts have recognized numerous circumstances, such as where an investigation is concluded or the subject is aware of an ongoing investigation, in which disclosure related to a law-enforcement investigation is permitted.  *See*, *e.g.*, *U.S. ex rel. Brasher v. Pentec Health, Inc.*, 338 F. Supp. 3d 396, 402 (E.D. Pa. 2018) ("The fact that the Government conducted a criminal investigation does not support a finding of good cause to seal the case . . . . The investigation has concluded, Pentec was absolved, and no criminal charges were brought against Pentec.  The Government has not pointed to a specific, concrete harm that has happened or is likely to happen to Pentec if the now closed criminal investigation is disclosed."); *Shapiro*

*v. U.S. Dep't of Justice*, 153 F. Supp. 3d 253, 256-57 (D.D.C. 2016) (applying Freedom of Information Act) ("A law enforcement agency may rely on an exclusion only if a request is made for records that (1) implicate an ongoing criminal investigation if 'there is reason (i) to believe that the subject of the investigation is not aware of its pendency, and (ii) disclosure of the existence of the records could reasonably be expected to interfere with enforcement proceedings . . . .'") (quoting 5 U.S.C. § 552(c)(1)).

In sum, the Court should reject DEA's assertion of a sweeping law enforcement-related privilege that would shield from disclosure any document related to any company ever subject to an investigation as contrary to well-established law.

**4.      The Court Should Reject DEA's "Other Sources" Argument.**

DEA next argues that "several" of Plaintiffs' requests "seek documents that are more readily available from other sources, including defendants in this litigation or the MDL" and that, therefore, "[i]t is unreasonable for Plaintiffs to seek this information from the DEA." Ex. B (April 24, 2020 Letter) at 7.  This is incorrect for at least two reasons.

First, the "available from other sources" argument is strained to the point of breaking. DEA first contends that Plaintiffs' Requests 8-10 "encompass correspondence between DEA and various pharmacies" and that "[s]uch correspondence is equally available from pharmacies who are parties to the MDL, including certain Defendants in Track One-B." *Id.*  Here again, although Rite Aid and CVS are parties to CT1B, *Plaintiffs herein are not.*  Nor is any other West Virginia entity.  The DEA thus does not and cannot explain how the discovery sought in Plaintiffs' March 19 letter concerning West Virginia pharmacy stores either was or can now be obtained in the CT1 proceedings involving Ohio Plaintiffs.  It cannot.

12

Nor can DEA salvage this argument by resorting to the Defendants in this case.  DEA asserts that "to the extent that the documents concerning pharmacies in your February 3 or March 19 Letters have any relevance to the knowledge or conduct of that distributors that are Defendants in this litigation, those relevant documents are likely to be in Defendants' possession."  *Id.*  This aspirational assertion ignores Plaintiffs' allegations that, although Defendants had a duty to monitor for and detect suspicious orders, *Defendants utterly failed to do so.  See*, *e.g.*, Third Am. Compl., ¶ 802 ("Supply Chain Defendants . . . failed to maintain effective control against diversion of prescriptions into the illicit market and Supply Chain Defendants failed to 'design and operate a system to disclose . . . suspicious orders of controlled substances . . . .'"); *id.*, ¶ 803 ("Supply Chain Defendants . . . breached their above stated duties under federal and state law by failing to . . . perform due diligence on orders which Supply Chain Defendants had reason to believe were suspicious, and instead shipping those orders without review."); *id.*, ¶ 812 (AmerisourceBergen further . . . failed to perform meaningful due diligence."); *id.*, ¶ 850 ("Cardinal also failed to conduct due diligence on its retail pharmacy chain customers, and instead, relied upon the chains to report this information."); *id.*, ¶ 881 ("DEA and DOJ described McKesson's due diligence failures as to opioids as both 'nationwide' and 'systemic.'").  Thus, although Defendants herein *should have* had knowledge and possession of information related to the retail pharmacy chains, this does not mean that they in fact did.

Second, the Court also should reject DEA's argument that Defendants herein, who were third parties to DEA-retail pharmacy communications, constitute an available "other source" as a legal matter.  The Department of Justice and DEA also made a version of this argument in the MDL CT1B proceedings, and Special Master Cohen flatly rejected it.  There, DOJ argued that CT1B Defendant "Rite Aid does not need the requested [DEA audit] discovery because Rite

Aid's own documents . . . provide the same information." Ex. C (*In re Nat'l Prescr. Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio April 10, 2020) (Doc. 3258)) at 5.  Special Master Cohen rejected this argument because "there is no comparison in evidentiary value between a document written by Rite Aid itself and a document written by the federal Agency that oversees compliance with the Controlled Substances Act."  *Id.*

Since DEA provides no basis to expect that the Distributor Defendants here possess the actual communications between DEA and the retail pharmacy companies that Plaintiffs seek, the Court should reject DEA's "other sources" argument and order it to produce these documents.

## 5.  Plaintiffs Have Complied With the *Touhy* Regulations' Procedural Requirements.

Finally, DEA also argues that it need not produce the documents Plaintiffs seek based upon alleged violations of DOJ's *Touhy* regulations in Plaintiffs' request letter.  *See* Ex. B (April 24, 2020 Letter) at 4-6.  This is incorrect.  DEA contends that Plaintiffs "fail[] to provide a summary of the information sought" or a "statement of relevance," as required under 28 C.F.R. § 16.22(c)-(d).  *Id.* at 4, 5.  Section 16.22(c) addresses demands for "oral testimony," which is not at issue.  Section 16.22(d) provides that "[w]hen information other than oral testimony is sought by a demand, the responsible U.S. Attorney shall request a summary of the information sought and its relevance to the proceeding."

Plaintiffs' March 19 Letter provides exactly this.  In a section headed "Summary of Information Sought and its Relevance to the Proceeding," Plaintiffs explain as follows:

> The City of Huntington and Cabell County have brought claims against the distributors, manufacturers, and dispensers of opioids for their roles in causing the devastating opioid epidemic in their communities by facilitating or failing to prevent the diversion of opioids, despite their duties under state and federal law. The MDL Court recently opened discovery in this case.

> Specifically, Plaintiffs request the documents outlined in the attached Schedule A. The requested documents are relevant to: the companies' knowledge or understanding of their legal duties with respect to diversion[,] their noncompliance with those duties, and the companies' knowledge or notice of deficiencies in their own programs and practices. Plaintiffs also believe that the documents will also provide illustrative examples on diversion that resulted from the companies' failures and the impact that this diversion has had on Plaintiffs' community. Each of these will be key issues in the upcoming litigation.

Ex. A (March 19 Letter) at 1-2.

This detailed statement of relevancy satisfies the regulations' requirements. This is evidenced by the fact that DEA was able to make substantive responses based upon an understanding of the requests' scope and subject matter, *see* Ex. B (April 24, 2020 Letter) at 6-7, and of their relationship to the claims by and against the parties in this litigation, *see id.* at 7.

The Court thus should reject DEA's procedural arguments as incorrect. Here, too, it is notable that DEA made similar procedural compliance arguments in the MDL CT1B proceedings, and Special Master Cohen rejected them in part based on futility in light of DEA's substantive objections and refusal to provide responsive information. *See* Ex. C (*In re Nat'l Prescr. Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio April 10, 2020) (Doc. 3258)) at 1 ("DOJ first asserts Rite Aid did not follow proper procedures when it subpoenaed the documents and testimony it seeks. As Rite Aid correctly notes, however, DOJ points to technicalities that . . . it would be futile for the Court to require Rite Aid to fulfill."); *id.* at 2 ("Moreover, it would be futile to require Rite Aid now to serve another, formal subpoena seeking discovery the DEA has already refused to produce. Accordingly, the DEA's procedural objections are overruled.").

In sum, Plaintiffs' subpoena seeks highly relevant documents, DEA's stated objections have no merit, and DEA thus should be compelled to produce the requested documents.

## **CONCLUSION**

For all of the reasons set forth, Plaintiffs' motion to compel should be granted.

Dated: May 1, 2020

**THE CITY OF HUNTINGTON**

/s/ *Anne McGinness Kearse*
Anne McGinness Kearse (WVSB No. 12547)
Joseph F. Rice
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: 843-216-9000
Fax: 843-216-9450
akearse@motleyrice.com
jrice@motleyrice.com

Linda Singer
David I. Ackerman
**MOTLEY RICE LLC**
401 9th Street NW, Suite 1001
Washington, DC 20004
Tel: 202-232-5504
Fax: 202-386-9622
lsinger@motleyrice.com
dackerman@motleyrice.com

Charles R. "Rusty" Webb (WVSB No. 4782)
**THE WEBB LAW CENTRE, PLLC**
716 Lee Street, East
Charleston, West Virginia 25301
Telephone: (304) 344-9322
Facsimile: (304) 344-1157
rusty@rustywebb.com

Respectfully submitted,

**CABELL COUNTY COMMISSION**

/s/ *Paul T. Farrell, Jr.*
Paul T. Farrell, Jr. (WVSB Bar No. 7443)
**FARRELL LAW**
422 Ninth Street, 3rd Floor (25701)
PO Box 1180
Huntington, West Virginia 25714-1180
Mobile: 304-654-8281
paul@farrell.law

/s/ *Anthony J. Majestro*
Anthony J. Majestro (WVSB No. 5165)
**POWELL & MAJESTRO, PLLC**
405 Capitol Street, Suite P-1200
Charleston, West Virginia 25301
304-346-2889 / 304-346-2895 (f)
amajestro@powellmajestro.com

Michael A. Woelfel (WVSB No. 4106)
**WOELFEL AND WOELFEL, LLP**
801 Eighth Street
Huntington, West Virginia 25701
Tel. 304.522.6249
Fax. 304.522.9282
mikewoelfel3@gmail.com

16

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum of Law was filed electronically using the Court's CM/ECF system and thereby was served upon all counsel registered in the system on May 1, 2020, and also was served by email to Plaintiffs' listserv at mdl2804discovery@motleyrice.com and to Defendants' listserv at track2opioiddefendants@reedsmith.com.

/s/ *Natalie Deyneka*

Natalia Deyneka (WVSB No. 12978)
**MOTLEY RICE LLC**