**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CITY OF HUNTINGTON,**
      **Plaintiff,**
**v.**                                         **CIVIL ACTION NO. 3:17-01362**
**AMERISOURCEBERGEN DRUG**
**CORPORATION, et al.,**
      **Defendants.**

**CABELL COUNTY COMMISSION,**
      **Plaintiff,**                           *Consolidated case:*
**v.**                                         **CIVIL ACTION NO. 3:17-01665**
**AMERISOURCEBERGEN DRUG**
**CORPORATION, et al.,**
      **Defendants.**

<u>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL**</u>

COME NOW Plaintiffs, CITY OF HUNTINGTON and CABELL COUNTY COMMISSION, who submit this reply memorandum in further support of their motion to compel Defendant Cardinal Health discovery. Plaintiffs state in reply to Defendants' response as follows:

It is important for the Court to understand why Plaintiffs are bringing Combined Discovery Request No. 4 back before it, when all previously thought the issue was resolved. During a recent meet and confer, and confirmed in Cardinal's response to Plaintiffs' Motion to Compel, Cardinal stated its position that it believes it is required to identify "centralized due diligence files," but not relevant due diligence documents from outside those centralized files, for use at trial. Cardinal did not assert this position in its supplemental response to Plaintiffs' Combined Discovery Requests, hence the reason Plaintiffs believed the issue was moot. While Cardinal maintained "centralized due diligence" files for at least some of its CT2 customers, Cardinal acknowledges that additional responsive documents exist elsewhere in its productions but refuses to identify them. Cardinal

1

further refuses to explain how Plaintiffs can be certain that they have everything Cardinal would consider part of its due diligence files and what they will assert as due diligence at trial.

Cardinal's response also ignores the fact that it waived any argument it had with respect to subsequent depositions of the four requested witnesses when it represented to the Plaintiffs and the Court in January that it was working to obtain potential dates. Cardinal never raised *any* issue with the fact that Moné, Barber, and Cameron had already been deposed until the parties met and conferred recently on April 7, nearly four months after Plaintiffs requested the depositions and two months after telling the Court it was working on securing potential dates. Cardinal is also incorrect that Plaintiffs have offered no protocol to ensure safety and security for the depositions given the COVID-19 pandemic. It is Cardinal that failed to negotiate in good faith, refusing to even discuss the issue of an appropriate protocol.

Finally, Cardinal is incorrect that Plaintiffs only recently asked for the identity of the local PBCs and distribution center cage/vault personnel. Plaintiffs asked for the identity of these individuals in December. These individuals played crucial roles in Cardinal's SOM system and, at minimum, their identity is relevant to this litigation.

## I.      Request No. 4

Cardinal supplemented its response on March 4 to identify 28 sets of documents comprising centralized files for CT2 customers and stated that it would "continue to produce on an ongoing and rolling basis any additional documents relating to its Track 2 customer diligence that can be located after a reasonable search."[1] It was only after Plaintiffs inquired whether Cardinal was able to identify any additional responsive documents that Plaintiffs learned that 1) Cardinal has previously produced more responsive documents but 2) Cardinal has no intention to

---

[1] **Exhibit A** - Cardinal Health, Inc.'s Supplemental Objections and Responses to Plaintiffs' (First) Combined Discovery Requests, supplemental Response to Request No. 4.

identify them by Bates number as it did with the "centralized" due diligence files already identified. The present issue only became ripe for consideration once Cardinal clarified that it changed its position on identifying Bates numbers for due diligence documents it had already produced.

Moving to the substance of Cardinal's response, Cardinal's argument that there is no Federal requirement to maintain due diligence files is simply wrong. While Plaintiffs disagree with Cardinal's position that distributors are under no obligation to maintain due diligence files,[2] it is of no consequence. Plaintiffs are only asking Cardinal to identify what it has in the way of due diligence on each of its pharmacy customers in the CT2 jurisdiction. Whether it is in a centralized file or not, Cardinal must be compelled to identify this due diligence by Bates number.

Cardinal next admits that it possesses and has produced additional due diligence materials that were not part of the centralized files already identified, but then fails to explain why it did not identify them when it supplemented its response to Request No. 4.[3] Cardinal suggests a "common way" its employees identify a particular pharmacy is by running searches for DEA numbers. But finding a DEA number on the face of a particular document in no way confirms it is considered by Cardinal to part of the due diligence for that pharmacy.

The bottom line is that as Cardinal's response to Request No 4 currently stands, Cardinal has explicitly identified a set of due diligence documents for CT2 customers, but it continues to play "find the needle in the haystack" with unidentified documents, already produced, that are also

---

[2] **Exhibit B** - Opinion and Order regarding Plaintiffs' Summary Judgment motions Addressing the Controlled Substances Act  [MDL 2804 Dkt 2483], at p. 15. *See also Masters Pharm., Inc. v. Drug Enf't Admin.*, 861 F.3d 206, 221-22 (D.C. Cir. 2017) (Acknowledging that the Controlled Substances Act "mandates that pharmaceutical companies exercise 'due diligence' before shipping any suspicious order."). [2] **Exhibit C** - Shirlene Justus Dep. (07/13/18) at 316:10-317:21 (standard practice and procedure required documenting the reasoning behind clearing orders). **Exhibit D** - Steve Reardon Dep. (11/30/18) at 447:19-448:1 (confirming that the due diligence justifying decisions to ship suspicious orders to a pharmacy should have been documented).
[3] Cardinal Health's Response, at 4-5.

part of this due diligence or will be used at trial. Cardinal is the only entity that can identify these documents, and they must do so as they have for the centralized due diligence files or be prevented from using any other due diligence documents at trial.

## II.  Depositions

Cardinal has long waived its position that Plaintiffs are not entitled to the depositions of Melissa Schrebe, Michael Moné, Linden Barber, and Todd Cameron because they had already been deposed in other cases. Plaintiffs requested the depositions of the four individuals in December.[4] When they refused to provide a date for Melissa Schrebe, Plaintiffs filed their motion to compel her deposition on January 23, 2020.[5] Following the January 27 conference with Magistrate Judge Aboulhosn, both parties confirmed the outcome of the conference.[6] Cardinal's counsel wrote to both the Court and Plaintiffs, that "[a]s discussed, we are also working to obtain availability from these witnesses for dates for their respective depositions after their files have been produced, and we will promptly follow up with Plaintiffs on this when we hear back from the witnesses."[7]

Then on February 10, Cardinal wrote to Plaintiffs concerning Plaintiffs' request to take the deposition of Melissa Schrebe. Cardinal did not take the position that Plaintiffs had missed their opportunity to take Mrs. Schrebe's deposition in conjunction with the Ann Arundel County and City of Baltimore, Maryland cases.[8] Instead, Cardinal *invited* Plaintiffs to explain what topics they proposed to cover with Mrs. Schrebe. On February 18, Plaintiffs obliged, and advised that we were

---

[4] **Exhibit E –** December 2, 2019, letter from Plaintiffs to Counsel for Cardinal Health.
[5] Plaintiffs originally submitted letter briefing on this issue to Special Master Cohen in MDL 2804 on December 13, 2019, before this case was remanded to the Southern District of West Virginia and, which was not ruled on.
[6] **Exhibit F –** January 28, 2020 emails from Counsel for Cardinal and Counsel for Plaintiffs to Judge Aboulhosn.
[7] *Id.* at 1.
[8] **Exhibit G** – February 10, 2020 letter from N. Wadhwani to Counsel for Plaintiffs.

entitled to her deposition to cover facts specific to CT2, but requested copies of the transcripts from the Maryland depositions, which Cardinal provided on February 23. After reviewing the transcripts and confirming that no facts specific to Cabell County or the City of Huntington were covered in her depositions, Plaintiffs advised Cardinal of the same and reiterated our position on March 13.

In the meantime, Cardinal had still not provided deposition dates for Moné, Barber, or Cameron. On March 18, Cardinal confirmed that its production of custodial files for these individuals was complete. On April 2, Cardinal advised that due to COVID-19 Cardinal was not in a position to offer any dates for any depositions, despite Plaintiffs' offer to conduct the depositions safely and securely. On April 7, the parties held a meet and confer to discuss setting depositions, among other issues.

During the April 7 meet and confer, for the first time, Cardinal stated that, irrespective of COVID-19, it would not provide dates for depositions of Moné, Barber, or Cameron without imposing some undefined limitations on both the length and scope of their depositions, since each had been deposed in related matters in other jurisdictions. Cardinal refused to elaborate on what limitations it foresaw were needed, so Plaintiffs filed their motion to compel.

To the extent Cardinal contends Plaintiffs are not entitled to depositions of these individuals because they have already been deposed, those arguments were waived when it represented to the Court and Plaintiffs in January that it would cooperate in setting the depositions and would provide deposition dates.[9] Regarding Cardinal's request for a two-hour limit on these depositions if ordered to go forward, Plaintiffs submit such a limitation would not allow Plaintiffs to cover the necessary testimony in full. Consistent with Special Master Wilkes' ruling compelling

---

[9] *See* **Exhibit F**, January 28, 2020 email from S. Salgado to Judge Aboulhosn and Plaintiffs.

the deposition of McKesson employee Tim Ashworth (Dkt. 360), Plaintiffs should be permitted at least four hours per deposition.

Cardinal also argues that Plaintiffs have not proposed a protocol by which the depositions could be taken safely and securely. This simply is not the case. Cardinal has rejected the possibility of remote depositions. Plaintiffs stand ready to discuss the necessary protocol any time Cardinal is available

### III.    Identification of PBCs and Distribution Center Employees

Plaintiffs are entitled to the identity of the PBCs for Cabell County and Huntington from 2000-2006 as well as the Wheeling, West Virginia distribution center cage/vault personnel, sometimes referred to as "pickers and checkers." Cardinal incorrectly argues that a one-year statute of limitations precludes discovery from this timeframe, when, in fact, the statute of limitations has not started running.[10] These individuals were directly involved in Cardinal's due diligence and suspicious order monitoring and reporting efforts in Cabell County/Huntington at a time when the country's opioid epidemic was in its infancy.

With respect to the PBCs, Plaintiffs request that Cardinal be compelled to produced the custodial files of each individual. Plaintiffs originally requested Cardinal to identify these custodians for the relevant timeframe in December.[11] And Plaintiffs only recently learned that the individual Cardinal initially identified had only been in this role since 2018.[12] As for the distribution center employees, Plaintiffs ask that Cardinal simply identify them. Their custodial files are not necessary, but Cardinal should be able to easily identify and provide the names of the requested individuals.

---

[10] *See* Discovery Ruling No. 1, at 2-3 [Dkt. 248].
[11] *See* **Exhibit E**.
[12] *See* Plaintiffs' Motion to Compel, at 6.

Dated: May 4, 2020

Respectfully submitted,
Plaintiffs,

THE CITY OF HUNTINGTON and
CABELL COUNTY COMMISSION

/s/ *Michael J. Fuller, Jr.*
Michael J. Fuller, Jr. (WV Bar No. 10150)
**McHUGH FULLER LAW GROUP, PLLC**
97 Elias Whiddon Rd.
Hattiesburg, MS  39402
T: 601-261-2220
F: 601-261-2481
mike@mchughfuller.com

Paul T. Farrell, Jr. (WVSB No. 7443)
**FARRELL LAW**
422 Ninth Street, 3rd Floor (25701)
P.O. Box 1180
Huntington, WV  25714-1180
Tel:  304-654-8281
paul@farrell.law

Anne McGinness Kearse (WVSB No. 12547)
Joseph F. Rice
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel:  843-216-9000
Fax:  843-216-9450
akearse@motleyrice.com
jrice@motleyrice.com

7

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 4, 2020, a copy of the foregoing **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL CARDINAL HEALTH DISCOVERY** has been filed electronically using the Court's CM/ECF system and will be served *via* the Court's CM/ECF filing system, which will send notification of such filing to the attorneys of record at their e-mail addresses on file with the Court.

*/s/  Michael J. Fuller, Jr..*
Michael J. Fuller, Jr.