IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br>  Plaintiff, | |
| v. | CIVIL ACTION NO. 3:17-01362 |
| AMERISOURCEBERGEN<br>DRUG CORPORATION, et al.,<br>  Defendants. | |

| | |
|---|---|
| CABELL COUNTY COMMISSION,<br>  Plaintiff, | |
| v. | CIVIL ACTION NO. 3:17-01665 |
| AMERISOURCEBERGEN<br>DRUG CORPORATION, et al.,<br>  Defendants. | |

**DEFENDANTS' REPLY IN SUPPORT OF
<u>MOTION TO EXTEND COURT DEADLINES</u>**

Plaintiffs' Response to Defendants' Motion to Extend Court Deadlines ("Plaintiffs' Response") fails to refute the compelling reasons for granting a reasonable, three month extension of the pre-trial schedule. As Plaintiffs concede, the vast majority of third-party document discovery, as well as critical party document discovery, is still not complete. Until that discovery is finished, it will not be possible to schedule depositions. These delays in fact discovery, many of them an unavoidable consequence of the pandemic, will have ripple effects that make it impossible to achieve the deadlines of the current schedule.

Plaintiffs' Response fails to address any of the deadlines in this case except one: the trial date. But the deadlines in this case are like dominos: one must be completed in order for the next one to fall. Plaintiffs themselves effectively acknowledge that the current schedule is not workable because they make the remarkable and far-fetched suggestion that the parties continue to conduct discovery *during trial*. That is not a reasonable or orderly way to conduct a case, particularly one of this significance and complexity, as the Court acknowledged during the March 5 status conference, and it only illustrates why the delays in the completion of fact discovery warrant a modest adjustment in the entire schedule. *See* Status Conf. Tr. 30-31 (Mar. 5, 2020) (In rejecting Plaintiffs' proposed "bifurcated staggered bench trial," which would be "too confusing," the Court stated, "I'd like to have the discovery done" before starting trial to "keep all this compartmentalized and separated."). If fact discovery is not completed before trial begins, Defendants will not have the discovery needed for pre-trial matters that include expert reports, dispositive motions, and motions in limine.

Accordingly, Defendants' request for a modest extension of the schedule is appropriate, necessary, and more than meets the requisite "good cause" standard. *See Hunt v. Brooks Run Mining Co.*, 51 F. Supp. 3d 627, 636 (S.D.W. Va. 2014) (Faber, J.) ("'Good cause' requires 'the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence.'" (citing *Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012))). This is particularly true given the unprecedented impact of COVID-19 on the parties' ability to obtain necessary discovery.

**ARGUMENT**

**I.   Key Document Discovery from the Parties Remains Outstanding and Must Be Completed Before Moving Forward.**

Plaintiffs paint an incomplete picture about the status of their document productions. Plaintiffs do not dispute that significant document discovery sought from the parties remains outstanding as of the Court's April 30, 2020 deadline for completion of document discovery. *See* Plaintiffs' Response at 5-6, 8. Indeed, **both sides** have served discovery requests for which responses are not yet even due. Further, there are substantial gaps in Plaintiffs' custodial and non-custodial productions alike, and Plaintiffs continue to find, collect, and produce significant numbers of documents.

In an effort to suggest that their document productions are substantially complete and that the case is ready to move forward, Plaintiffs point to the parties' agreed-to number of custodians and the total number of documents produced. Those numbers are misleading. Instead, there remain very significant deficiencies in Plaintiffs' discovery—and Plaintiffs have a long way to go before completing their obligations to provide document discovery to Defendants.

Cabell County has produced no documents for 10 of its 48 agreed-upon custodians. For the remaining 38 custodians, Cabell County has produced fewer than 100 documents for 16 custodians and fewer than 50 documents for 13 custodians. Huntington's productions of custodial files are similarly deficient. Huntington has produced no documents for 8 of its 51 agreed-upon custodians, fewer than 100 documents for 11 custodians, and fewer than 10 documents for 6 custodians.

Moreover, roughly 43 percent of Huntington's produced documents are duplicates, and over 50 percent of Cabell County's produced documents are not responsive to Defendants' requests. Further, over 80 percent of the documents from the Cabell County Sheriff's Department

3

are irrelevant, and Cabell County has produced only 98 documents from the Cabell County Commission—primarily agendas and minutes.

Special Master Wilkes has already resolved some document production disputes, and noted during the May 1 conference that he reasonably expects to be called on to resolve more disputes in the near future. Plaintiffs' Response readily acknowledges that Special Master Wilkes recently ordered them to perform electronic searches of custodians in the Cabell County Prosecuting Attorney's Office and complete their production of those custodial files by May 29, 2020, a month *after* the current deadline for completing document discovery. On top of that, Defendants have identified numerous other deficiencies in Plaintiffs' document production in letters they have sent Plaintiffs, which will be the subject of upcoming meet and confers and may need to be raised with Special Master Wilkes. None of this is surprising or unexpected in a case of this magnitude—and a reasonable extension of the current schedule is needed to ensure that the process plays out completely and fairly.

Plaintiffs acknowledge that Defendants have been making satisfactory progress with their document productions, any remaining discovery disputes are minimal, and suggest that Plaintiffs' case can be ready for trial after they take a handful of depositions. But that ignores entirely what Defendants need to defend themselves in this case. Plaintiffs' lawyers have been pursuing nationwide discovery against Defendants for years, and already have personally conducted dozens of depositions about Defendants' nationwide policies and practices. While Plaintiffs can leverage all of that MDL Track One discovery for a trial here, Defendants must obtain party-specific discovery from Cabell County and the City of Huntington, and key discovery from Plaintiffs remains outstanding. For example, as detailed in recent letters, custodial files for key Plaintiff witnesses whom Defendants wish to depose remain incomplete. Although Plaintiffs may need

4

only a limited set of documents and a few additional depositions, if that, Defendants are in an entirely different position and should not be forced to prematurely take depositions (of both Plaintiffs and third parties) and face imminent expert deadlines with so much document discovery still outstanding.

## II.     Critical Third-Party Document Discovery Remains Outstanding.

Third-party discovery is critical to the defense of Plaintiffs' public nuisance claims. Yet it remains substantially incomplete, particularly given the extremely difficult environment created by the COVID-19 pandemic. Most third parties have been unable to meaningfully respond to discovery because of the pandemic. Indeed, many will be unable to participate in depositions any time soon.

As even Plaintiffs acknowledge, most third parties have not produced *any* documents, and receipt of those documents is necessary before Defendants move on to depositions. *See* Plaintiffs' Response at 15-16. This includes key third parties such as the West Virginia Board of Pharmacy, the West Virginia Department of Health & Human Resources, and the West Virginia Medical Examiner. Several of those third parties have agreed to produce documents, but remain unable to do so for a number of weeks or months. For example, Cabell Huntington Hospital intends to begin production on or around May 14. The Cabell County Drug Court has advised that it would require "several months" to extract historical data and documents responsive to Defendants' subpoena. Other third parties, such as the Board of Dentistry and Board of Registered Professional Nurses, have been working on subpoena compliance to the fullest extent possible but are largely working from home and have limited access to many of the documents sought by the subpoenas.

In addition, the parties have obtained only minimal and incomplete production from many other third parties. For example, to date the West Virginia Board of Medicine has produced 19 documents, the West Virginia Board of Osteopathic Medicine has produced 21 documents, and

5

the Governor's Council on Substance Abuse and Treatment has produced 7 documents.  The U.S. Drug Enforcement Administration ("DEA") has produced roughly 830 documents only in response to Plaintiffs' requests and is resisting all further production (leading both parties to file motions to compel).  And questions remain regarding other productions that Defendants have received.  Just last week, the Cabell-Huntington Health Department (a third party) agreed to allow Plaintiffs to re-produce nearly 100,000 documents that Plaintiffs obtained many months ago, but were not provided to Defendants.  Defendants have just begun the process of trying to determine if these documents are actually responsive to their third-party subpoena or if additional categories of documents remain outstanding.

This outstanding third-party discovery is critical to the defense of Plaintiffs' public nuisance claims.  For example, Plaintiffs do not dispute that key third-party discovery from the DEA is almost entirely incomplete.  Plaintiffs' Response correctly acknowledges that "DEA documents are highly relevant to Plaintiffs' claims," but incorrectly states that "many such documents were previously produced in [Track One of the MDL]." Plaintiffs' Response at 11.  As Plaintiffs' own motion to compel DEA discovery states, the DEA did not produce documents relating to West Virginia in Track One, and that the parties have a right to obtain West Virginia-specific discovery from the DEA in this case, just as they did in Track One of the MDL.  *See* Plaintiffs' Motion to Compel, Dkt No. 386 (noting their right to obtain West Virginia-specific discovery on remand).  Similarly, discovery from state entities such as the West Virginia Board of Pharmacy also is critical in this case, as similar discovery has been in other jurisdictions.  But, to date, the Board of Pharmacy has not been able to produce any documents.

Neither party should be forced to complete fact depositions, submit expert reports, or file dispositive motions without this highly relevant discovery.  As with the depositions of Plaintiffs,

Defendants cannot begin to take the depositions of third parties until document productions are substantially complete. And, to date, only one third party has substantially completed its document production. The outstanding third-party document discovery is critical for fact depositions, and both document discovery and depositions are critical for expert reports, dispositive motions, pre-trial matters, and Defendants' ability to prepare for trial.

Unable to dispute the vast gaps in the critical third-party discovery, Plaintiffs are left only to suggest that the third-party discovery being sought by Defendants is motivated, in part, by a desire to obtain a continuance. This assertion is baseless. As Plaintiffs are aware, Defendants have expended significant resources meeting and conferring with third parties regarding the timing and scope of the third-party subpoenas, in an effort to meet the existing court deadlines. Despite these continued diligent efforts, however, third parties have barely begun producing documents, and critical third-party discovery is far from complete. This Court should not sacrifice Defendants' due process rights to develop their defense in an attempt to satisfy Plaintiffs' desire for an early (and now unworkable) trial date.

### III. Plaintiffs' Suggestion of a Trial with Ongoing Discovery is Unworkable and Highly Prejudicial to Defendants.

Trying to avoid the consequences that flow from the acknowledged need for more time for discovery, Plaintiffs suggest that discovery be completed *during* trial. This suggestion would be remarkable in any case—and is particularly problematic and unworkable in a case of this magnitude and complexity. Among other things, it ignores entirely that discovery is critical for pre-trial submissions such as expert reports and dispositive motions, and it underscores that Plaintiffs are trying to rush this case to trial before it is ready. Plaintiffs' failure to account for expert discovery is particularly problematic, as Plaintiffs have emphasized repeatedly that expert opinions will play a critical role in their cases and in Defendants' cases alike.

As explained, the pre-trial deadlines in this case are dependent upon one another, and one must be substantially completed before moving to the next. Otherwise, the parties will be forced to take depositions without critical documents, submit expert reports and dispositive motions before all documents are produced and depositions are completed, prepare pre-trial matters without a complete discovery record, and—at Plaintiffs' suggestion—begin trial *without* a complete discovery record. Plaintiffs' proposal would deprive Defendants of the opportunity to use this discovery in their pre-trial submissions and fully develop their defense for trial, and will force them to cross-examine Plaintiffs' witnesses with one hand tied behind their back. This Court has already rejected Plaintiffs' highly unusual proposal for a "bifurcated staggered bench trial" as "too confusing," Status Conf. Tr. at 30-31, and it should do the same again.

The importance of meeting each key case deadline before moving to the next is particularly important here because the already-compressed case schedule provides no room for belated compliance. For example, the current schedule allows one week from the close of fact discovery until the deadline for Plaintiffs' expert reports, and then just nine days after that for Defendants' expert reports.[1] The experts cannot finalize their opinions and reports without the benefit of the facts developed in discovery. Allowing the additional time required for completion of fact discovery therefore necessitates an adjustment of the expert deadlines. Similarly, the current schedule allows just 30 days from the close of expert discovery to the start of trial. In that time, the parties need to file, and the Court needs to consider, *Daubert* motions, summary judgment motions, and motions in limine. The discovery deadlines simply cannot move without moving the subsequent case deadlines and the trial date.

---

[1] Defendants respectfully submit that the current time allotted for responsive expert reports is already compressed to the point where Defendants cannot sufficiently respond to Plaintiffs' anticipated expert reports, and suggest that this deadline be adjusted.

8

For the reasons stated above and in their Memorandum of Law In Support of Motion to Extend Court Deadlines, Defendants respectfully request a three-month extension of all deadlines set at the March 5, 2020 status conference, culminating in a trial date on or around December 1, 2020.

Dated: May 5, 2020

Respectfully submitted,

***AmerisourceBergen Drug Corporation***
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

***Cardinal Health, Inc.***
By Counsel:

*/s/ Steven R. Ruby*
Brian A. Glasser (WVSB #6597)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
BAILEY GLASSER LLP
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
bglasser@baileyglasser.com

9

sruby@baileyglasser.com
rfranks@baileyglasser.com
*Counsel in Cabell County action*

*/s/ Michael W. Carey*
Michael W. Carey (WVSB #635)
David R. Pogue (WVSB #10806)
CAREY, SCOTT, DOUGLAS & KESSLER, PLLC
901 Chase Tower,
707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
mwcarey@csdlawfirm.com
drpogue@csdlawfirm.com
*Counsel in the City of Huntington action*

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard @wc.com
ahardin@wc.com

*McKesson Corporation*
By Counsel:

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
Jason L. Holliday (WVSB #12749)
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200
jwakefield@flahertylegal.com
jholliday@flahertylegal.com

10

*/s/ Geoffrey E. Hobart*
Geoffrey E. Hobart
Mark H. Lynch
Christian J. Pistilli
Laura Flahive Wu
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street N.W.
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
cpistilli@cov.com
lflahivewu@cov.com

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on this 5th day of May, 2020, the foregoing ***Defendants' Reply in Support of Motion to Extend Court Deadlines*** was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

>*/s/ Gretchen M. Callas*
>Gretchen M. Callas (WVSB #7136)