## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON, <br><br>     Plaintiff, <br><br>     v. <br><br> AMERISOURCEBERGEN DRUG CORPORATION, et al., <br><br>     Defendants. | Civil Action No. 3:17-01362 <br><br> Hon. David A. Faber |
| CABELL COUNTY COMMISSION, <br><br>     Plaintiff, <br><br>     v. <br><br> AMERISOURCEBERGEN DRUG CORPORATION, et al., <br><br>     Defendants. | Civil Action No. 3:17-01665 <br><br> Hon. David A. Faber |

## MEMORANDUM IN RESPONSE TO PLAINTIFFS' MOTION TO COMPEL DEA'S PRODUCTION OF SUBPOENAED DOCUMENTS

Plaintiffs, like Defendants, misconstrue the Drug Enforcement Administration's (DEA) role in this litigation.  DEA is not a party to this litigation.  Nor is DEA a *private* third-party, arguably subject to the type of "broad . . . discovery" envisioned by Plaintiffs.  On the contrary, DEA is a non-party, governmental agency.  Thus, Department of Justice (DOJ) regulations (i.e., *Touhy* regulations) governing the disclosure of official agency documents provide the parameters under which DEA officials may or may not respond to Plaintiffs' requests.[1]  And the

---

[1] The Department of Justice denied Plaintiffs' requests pursuant to agency regulations governing the disclosure of official agency information (i.e., *Touhy* regulations).  Federal agencies may

Administrative Procedure Act (APA) provides the sole avenue for Plaintiffs to challenge the agency's refusal to provide documents in response to their requests.  Likewise, the APA provides the deferential standard by which this Court may review the reasonableness of DOJ's decision.

Here, DOJ faithfully applied the *Touhy* regulations to the requests at issue.  DOJ's analysis was neither arbitrary nor capricious.  On the contrary, DOJ conducted a rational analysis of Plaintiffs' requests and reasonably concluded, based on the totality of the circumstances, that disclosure of the requested information was not appropriate under DOJ's *Touhy* regulations.

Plaintiffs do not suggest otherwise.  They do not allege that DOJ's denial was arbitrary, capricious, or otherwise unlawful; that DOJ relied on inappropriate factors; or that DOJ's process was flawed in any way.  Instead, they repeatedly argue that DOJ's conclusions were "incorrect" and ask this Court to substitute its judgment for that of the agency officials best situated to evaluate the impact of such a request on DEA's resources.  This is not a proper basis to overturn agency action.

Although not relevant to this Court's review, DOJ's conclusions were not only reasonable and rationally related to the facts and governing regulations, they were also correct. *First*, DOJ correctly concluded that Plaintiffs' requests were cumulative, overly broad, and unduly burdensome, particularly in light of DEA's significant efforts in the MDL and the precedential impact of responding to similar requests in remanded opioid cases.  *Second*, DOJ correctly concluded that the burden would be compounded by the nature of the agency's work. While DEA is a regulator, it is also a law enforcement agency, and, as such, its official

---

regulate the disclosure of information by their employees, including the refusal to produce subpoenaed documents.  *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).  As explained in Part II, *infra*, the Administrative Procedure Act provides the sole avenue for review of such agency denials, which are presumed valid.

documents, particularly those related to specific registrants (*e.g.*, pharmacies), frequently contain information that may reveal investigative techniques or investigatory records compiled for law enforcement purposes.  *Third*, DOJ correctly concluded that Plaintiffs could and should have sought from others—either in the MDL or upon remand to this Court—many of the documents they now seek from DEA.  *Finally*, DOJ correctly concluded that Plaintiffs' description of the documents sought and their relevance to Plaintiffs' claims was inadequate.  In any event, DOJ's conclusions need not be "correct," they need only be reasonable and rationally related to the facts.

Finally, Plaintiffs erroneously claim that their decision to seek documents from DEA upon remand to this Court is consistent with the MDL court's intent and expectations.  In fact, the MDL court stated the opposite in a recent clarification, explaining that it "***did not believe additional discovery from DEA was necessary or appropriate for a fair trial***."  Resp. to Mot. for Clarification at 2, *In Re: National Prescription Opiate Litigation*, No. 17-md-02804 (N.D. Ohio Apr. 17, 2020), ECF No. 3263 (emphasis added).  Plaintiffs' suggestion that their decision to seek additional discovery from DEA is somehow "consistent" with the MDL court's position is perplexing and rests entirely on their selective and misleading quotation of the MDL court.

In sum, Plaintiffs have put forth no evidence that DOJ acted in an arbitrary, capricious, or otherwise unreasonable manner in denying their *Touhy* requests, and therefore the motion should be denied.

## I.      Plaintiffs Set Forth an Abbreviated and Selective Procedural History of the Dispute.

Plaintiffs' severely abbreviated "procedural history" in support of their motion fails to place their requests in appropriate context.  Plaintiffs state that they served their *Touhy* letter and a corresponding subpoena on March 19, 2020.  This is true.  By Plaintiffs' own timeline, they waited nearly two months following remand of these cases—and only six weeks prior to the

close of fact discovery—to submit the *Touhy* request at issue.  And while Plaintiffs' delay is certainly relevant, Plaintiffs omit additional relevant facts.

Plaintiffs filed these cases in January 2017 in West Virginia state court.  Defendants promptly removed the cases to this Court on the basis of diversity jurisdiction.  On December 13, 2017, the cases were transferred by the Judicial Panel on Multidistrict Litigation (JPML) to the United States District Court for the Northern District of Ohio (the "MDL court") for consolidated MDL proceedings.  The MDL court oversaw discovery and other pretrial proceedings in these and other consolidated cases for over two years.

The initial discovery track in the MDL ("Track One-A"), which involved cases from the Northern District of Ohio, focused on certain MDL plaintiffs' claims regarding the defendants' distribution of opioids.  Track One-A resolved when all but one of the parties reached a settlement after jury selection.  On December 31, 2018, the MDL court chose the *City of Huntington* and *Cabell County* cases as the Track Two cases.  Order, *In Re: National Prescription Opiate Litigation*, No. 17-md-02804 (N.D. Ohio Dec. 31, 2019), ECF No. 1218.  To enable the parties and the MDL court to focus on Track One-A, the Special Master purposefully waited to open Track Two discovery until October 15, 2019, at which time he gave the parties permission to serve written discovery in those cases.  Tr. of Final Pretrial Proceedings Before Special Master David R. Cohen at 8, *In Re: National Prescription Opiate Litigation*, No. 17-md-02804 (N.D. Ohio Oct. 15, 2019), ECF No. 2827.  Shortly thereafter, Plaintiffs proposed a Track Two-A trial against the three distributors in "early 2020."  Pls.' Position Statement Regarding Continuing Litigation at 5–6, *In Re: National Prescription Opiate Litigation*, No. 17-md-02804 (N.D. Ohio Nov. 5, 2019), ECF No. 2906.  Plaintiffs' proposal indicated that "[o]nly limited additional factual discovery of . . . Defendants [wa]s necessary to proceed to trial on liability,"

and did not suggest that any additional discovery from DEA was necessary.  To ensure that these cases were sufficiently streamlined for trial following remand, on November 22, 2019, the MDL court directed Plaintiffs to identify the "distributor and national pharmacy defendants against whom they d[id] not have a true and serious intention of pursing claims at trial on remand." Order Regarding Track Two Cases at 2, *In Re: National Prescription Opiate Litigation*, No. 17-md-02804 (N.D. Ohio Nov. 22, 2019), ECF No. 2950.  The MDL court then emphasized that it would "suggest remand of the Track Two cases only if plaintiffs pursue[d] their claims against a practicable, triable number of defendants."  *Id.*

So, Plaintiffs made a choice:  they decided that their clients would be best served by a remand that would permit a speedy trial, and they moved to dismiss most of the defendants and causes of action.  Pls. Cabell County Commission and City of Huntington's Mot. to Sever, *In Re: National Prescription Opiate Litigation*, No. 17-md-02804 (N.D. Ohio Dec. 13, 2019), ECF No. 2989.  Thereafter, the MDL court suggested remand for these two, trial-ready cases, and the JPML agreed.

Plaintiffs submitted the first of three related *Touhy* letters to DOJ on October 28, 2019, while these cases were still in the MDL court.  That letter, and an accompanying subpoena, requested that DEA produce nine categories of documents.  Notably, the letter sought both nationwide and jurisdiction-specific data from DEA.  For example, the original *Touhy* letter contained a number of incredibly broad nationwide requests for documents, including:

- ***All guidance documents*** provided to pharmacists and/or pharmacies related to proper dispensing of prescription opioids and/or red flags indicative of potential diversion;

- ***All communications to and/or from the National Retail Pharmacies*** related to the diversion of prescription opioids; and

- ***All internal memoranda summarizing meetings with the National Retail Pharmacies*** related to the diversion of prescription opioids.

5

Ex. A, October 28, 2019 *Touhy* Letter from Anne Kearse to James Bennett, at 2 (emphases added).  The request also sought, *inter alia*, the following jurisdiction-specific information:

- ***All documents and hard drives arising out of the search and seizure warrant*** executed on ***Safescript Pharmacy #6*** in the United States District Court for the Southern District of West Virginia, Huntington Division; and

- ***All discovery*** (including all documents, photos and data) arising out of the prosecution and conviction of Kofi Ohene Agyekum for drug distribution in the United States District Court for the Southern District of West Virginia (3:14-cr-00197) (September 10, 2014) arising out of his operation of ***A+ Pharmacy*** located in Cabell County (WV).

*Id.* (emphases added).  After meeting and conferring with Plaintiffs, on December 20, 2019, DOJ responded to Plaintiffs' original *Touhy* request, providing documents responsive to Request No. 1 (concerning the search and seizure warrant executed on Safescript Pharmacy #6) and Request No. 6 (seeking communications to and/or from the National Retail Pharmacies related to the diversion of prescription opioids).  Ex. B, December 20, 2019 Letter from Ava Rotell Dustin to Linda Singer.  In its response, DOJ indicated that it was continuing to review additional documents that may be responsive to the request.  Plaintiffs did not challenge—via the APA or a motion to compel—DOJ's response to their October 28, 2019 *Touhy* request.

Following remand of the cases to this Court, Plaintiffs re-issued their prior *Touhy* letter to DEA on February 3, 2020, this time directing their request to the United States Attorney for the Southern District of West Virginia.[2]  Ex. C, February 3, 2020 *Touhy* Letter from Anne Kearse to

---

[2] Plaintiffs take issue with the fact that DOJ addressed both their February 3, 2020 *Touhy* letter and their March 19, 2020 *Touhy* letter in its April 24 response.  While Plaintiffs' letters overlapped substantially, they propounded different requests on DEA.  Moreover, Plaintiffs never withdrew their February 3, 2020 requests and, in its initial response to those requests, DOJ indicated that it was continuing to review additional documents and that "additional disclosures may be authorized."  Ex. D at 3.  By failing to challenge DOJ's denial of this request on any procedural or substantive grounds, Plaintiffs have waived any right to later seek review of DOJ's decision with respect to their February 3, 2020 *Touhy* request.

6

Michael B. Stuart.  On February 21, 2020, DOJ provided an additional response to Plaintiffs that included documents responsive to Request Nos. 2 and 5 through 9 of the *Touhy* letter.  Ex. D, February 21, 2020 Letter from Michael B. Stuart to Linda Singer.  DOJ again indicated that it was continuing to review additional documents potentially responsive to Plaintiffs' request.  As with their first *Touhy* letter, Plaintiffs did not challenge the reasonableness of DOJ's action under the APA.  After continued efforts to negotiate the scope of the requests, DOJ determined that additional disclosure was not appropriate under the *Touhy* regulations and issued a letter on April 24, 2020, informing Plaintiffs of its conclusion.  (Ex. B to Plaintiffs' Motion to Compel, ECF No. 386-2.)

While DOJ's review of Plaintiffs' second *Touhy* letter was still ongoing, Plaintiffs issued yet another *Touhy* letter to DEA on March 19, 2020.  Ex. E, March 19, 2020 Letter from Linda Singer to Michael B. Stuart.  This letter is the subject of Plaintiffs' instant motion to compel. This letter, too, sought nine categories of documents; however, Plaintiffs' most recent set of requests revised and expanded on certain of their prior requests.  *Compare* Exs. A and C, Request Nos. 1 and 2, *with* Ex. E, Request Nos. 1 and 2.  In addition to expanding their prior requests involving specific pharmacies in Cabell County, Plaintiffs also added additional pharmacies to the list in their latest *Touhy* request.  Specifically, Request Nos. 3 through 7 in Plaintiffs' March 19, 2020 *Touhy* letter each seek "all documents" related to specific pharmacies. Ex. E.  Finally, Plaintiffs have further expanded the scope of their final *Touhy* letter by seeking "all documents" relating to two national retail pharmacies' operations in West Virginia ***over a 24-year period***.  Notably, Plaintiffs voluntarily dismissed both of these national retail pharmacies—CVS and Rite Aid—from their cases prior to remand in an effort to convince the MDL court that these cases had been sufficiently streamlined for trial.  And these pharmacies

remain as named defendants in an ongoing MDL discovery track, in which DEA has also

received—and is responding to—discovery.[3]

## II.      This Dispute Is Governed by the Administrative Procedure Act.

Plaintiffs—like Defendants in their recently filed motion to compel—fundamentally

misunderstand the posture of this dispute and misstate the governing law.  Although Plaintiffs

have filed a motion to compel pursuant to Federal Rule of Civil Procedure 45, it is their *Touhy*

request and DOJ's application of its *Touhy* regulations—not Plaintiffs' subpoena or the contours

of Rule 45—that is at issue here.  *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951);

*COMSAT Corp. v. National Science Foundation*, 190 F.3d 269, 278 (4th Cir. 1999) (when a

government agency is served with a third-party subpoena, "[t]he decision whether to provide

documents or employee testimony in response . . . is committed to agency discretion"); *Barreto*

*v. SGT, Inc.*, 2019 WL 3253373, at *4 (D. Md. July 19, 2019) ("Agencies may promulgate

regulations that govern their responses to subpoenas."); *In re Packaged Ice Antitrust Litig.*, No.

08-MD-01952, 2011 WL 1790189, at *4 (E.D. Mich. May 10, 2011) ("When served with a

subpoena for the production of materials or witnesses, the DOJ, by its authorized

representative . . . is required to evaluate the request under the DOJ's *Touhy* Regulations.").  This

is because the subpoena, as well as Plaintiffs' motion to compel compliance with it, is "an action

against the United States, subject to the governmental privilege of sovereign immunity."  *Smith*

*v. Cromer*, 159 F.3d 875, 879 (4th Cir. 1998).  And under clear and binding Fourth Circuit

---

[3] Although these Plaintiffs are not part of that MDL track, they retain access to MDL document repositories.  *See* Discovery Ruling No. 22 at 2, *In Re: National Prescription Opiate Litigation*, No. 17-md-02804 (N.D. Ohio Dec. 31, 2019), ECF No. 2576 (explaining that MDL is meant to serve as document repository for all opioid-related discovery, and "future Plaintiffs (including Plaintiffs in additional MDL Track cases, remanded cases, and even State court cases" may access such repositories to "*decrease*[] [the] burden for all parties") (emphasis added).

authority, this Court lacks jurisdiction to order DEA—a non-party federal agency—to engage in discovery absent the necessary waiver of sovereign immunity.  *See COMSAT*, 190 F.3d at 277 ("[I]t is sovereign immunity, not housekeeping regulations, that gives rise to the Government's power to refuse compliance with a subpoena.").  Thus, if Plaintiffs wish to challenge the agency action at issue here—DOJ's interpretation and application of its *Touhy* regulations—they must identify an avenue to do so, and that avenue must include the requisite waiver of sovereign immunity.  But they have not done so.

Where, as here, the United States is not a party to a proceeding, "the APA provides *the sole avenue* for review of an agency's refusal to permit its employees to comply with subpoenas."  *COMSAT*, 190 F.3d at 274 (emphasis added).  Moreover, such a waiver can only be provided through a separate action brought under the APA.  *See* 5 U.S.C. § 703 (providing that an "action for judicial review [of agency action] may be brought against the United States, the agency by its official title, or the appropriate officer"); *United States v. Williams*, 170 F.3d 431, 434 (4th Cir. 1999) (noting that, "if dissatisfied with the agency's response to the request, [a party] is not without recourse" and the "proper method for judicial review of the agency's final decision pursuant to its regulations is through the [APA]"); *Cromer*, 159 F.3d at 881 ("Cromer's remedy, if any, for the Justice Department's [refusal to permit its employees to testify] may be found in the [APA] . . . .").  Simply put, the United States has not consented to be sued in this private-party litigation.  Accordingly, if Plaintiffs wish to challenge DOJ's response to any of their three *Touhy* requests, they must do so through a separately filed action under the APA.

Despite this clear precedent, some courts in the Fourth Circuit—apparently in the interest of efficiency—have concluded that, where the underlying case is already in federal court, a party need not bring a separate action under the APA to allow the court to review the agency's *Touhy*

decision. *Clay v. Consol Pa. Coal Co.*, LLC, 2013 WL 12373597, at \*2 (N.D.W. Va. Oct. 17, 2013); *Spence v. NCI Info. Sys., Inc.*, 530 F. Supp. 2d 739, 745 (D. Md. 2008). Plaintiffs, however, did not cite these cases or otherwise provide a basis for this Court to address their arguments. Indeed, Plaintiffs do not mention the APA at all. *Cf.* Pls.' Mem. of Law in Supp. of Mot. to Compel U.S. Drug Enforcement Agency's [*sic*] Production of Subpoenaed Docs. at 5, ECF No. 386 (citing FRCP 26 and 45 and one unpublished case addressing third-party discovery *from a non-governmental entity*).

In any event, whether Plaintiffs' arguments are addressed in a separately filed action, or by this Court as part of the underlying action here, one thing is clear: "courts may reverse an agency's decision not to comply *only when the agency has acted unreasonably*." *COMSAT*, 190 F.3d at 277 (emphasis added). "Administrative actions are presumed valid, and the Court's scope of review is narrow." *Barreto*, 2019 WL 3253373, at \*3. Accordingly, a federal court may order a non-party government agency to comply with a subpoena only "if [it] has refused production in an arbitrary, capricious, or otherwise unlawful manner." *COMSAT*, 190 F.3d at 277. An agency decision is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 44 (1983).

An agency's decision must be upheld if it is reasonable and in accordance with the agency's *Touhy* regulations. *Spence*, 530 F. Supp. 2d at 745; *see also Andreas-Myers v. Nat'l Aeronautics & Space Admin.*, 2017 WL 1632410, at \*4 (D. Md. Apr. 28, 2017) (APA requires

only "'a rational connection between the facts found and the choice made'" (quoting *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council*, 462 U.S. 87, 105 (1983)). "When an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources." *COMSAT*, 190 F.3d at 278.

**III.    DOJ Properly Considered and Denied Plaintiffs' Discovery Requests Pursuant to DOJ *Touhy* Regulations.**

DOJ *Touhy* regulations prohibit current and former DEA employees from disclosing official information absent express authorization from DOJ. 28 C.F.R. § 16.22(a). Plaintiffs were required to comply with these regulations to obtain the information they sought from DEA. *See Cromer*, 159 F.3d at 879–80. These regulations prohibit disclosure of official information when doing so would be inconsistent with the "rules of procedure governing the case" or "the relevant substantive law governing privilege." 28 C.F.R. § 16.26(a). Moreover, disclosure is inappropriate if it would: (1) violate a statute or rule of procedure; (2) violate a specific regulation; (3) reveal classified information; (4) reveal a confidential source or informant; (5) reveal investigative techniques or investigatory records compiled for law enforcement purposes; or (6) reveal trade secrets without the owner's consent. *Id.* § 16.26(b).

Courts in the Fourth Circuit regularly uphold agency refusals to comply with third-party subpoenas so long as they are rationally related to the facts and the agency's *Touhy* regulations. *See, e.g.*, *Barreto*, 2019 WL 3253373, at *4 (granting agency's motion to quash third-party subpoena because agency's decision had "a rational connection to the subpoena"); *Bruno v. Nationwide Mut. Fire Ins. Co.*, 2009 WL 10681974, at *2 (D. Md. Oct. 26, 2009) ("FEMA's refusal to comply with [a] subpoena was not arbitrary, capricious or otherwise unlawful because . . . FEMA was reasonably acting to preserve its human resources."); *Bavarian Nordic*

11

*A/S v. Acambis Inc.*, 2007 WL 9782602, at *2 (D. Md. Jan. 19, 2007) (upholding agency refusal to comply with non-party subpoena on basis that it would be contrary to agency's self-interest).

In evaluating and denying Plaintiffs' requests, DOJ conducted a thorough and reasonable analysis based on its governing *Touhy* regulations that was rationally related to the facts presented here. DOJ appropriately considered the burden of responding to the requests, particularly in light of their cumulative nature and the significant resources DEA had already expended (and continues to expend) in responding to similar requests in the MDL. DOJ also considered the sensitive nature of much of the information sought and the burden required to identify, review, and redact such information prior to production. Finally, DOJ considered the fact that the requests contained additional substantive deficiencies under the governing *Touhy* regulations. Based on these factors, DOJ reasonably concluded that responding to Plaintiffs' requests was not an appropriate use of DEA resources and would divert agency personnel from mission-critical activities. DOJ's decision was neither arbitrary nor capricious.

Plaintiffs offer little in response. Plaintiffs do not, for example, argue that DOJ relied on inappropriate factors when evaluating their requests, or that it failed to consider relevant facts. Indeed, Plaintiffs do not identify a single case in which a court overturned an agency's refusal to comply with a subpoena based on facts similar to those here. Instead, Plaintiffs argue simply that DOJ reached the wrong result after applying the *Touhy* factors. Not only does that argument fail of its own accord, but its very premise fails to recognize the distinction between DOJ and a private third-party and thus provides no basis for this Court to overturn DOJ's decision.

## A. DOJ Properly Considered and Denied Plaintiffs' Requests Because the Requests Are Cumulative, Overly Broad, and Unduly Burdensome.

DOJ reasonably concluded that disclosure of the information sought by Plaintiffs is inconsistent with the rules of procedure governing the case, and therefore inappropriate under the

governing *Touhy* regulations.  *See* 28 C.F.R. § 16.26(a).  Specifically, Federal Rules of Civil Procedure 26 and 45 prohibit discovery requests that impose an undue burden or seek cumulative or duplicative information.  Fed. R. Civ. P. 26(b)(2)(C)(i); Fed. R. Civ. P. 45(d)(1).

In evaluating the burden imposed by third-party discovery requests, a government agency can, and as a practical matter must, consider the cumulative effect of past and future requests in related litigation.  *See COMSAT*, 190 F.3d at 278 (considering "potential cumulative burden upon the agency" in evaluating propriety of *Touhy* denial); *Andreas-Myers*, 2017 WL 1632410, at *8 ("An agency is free to consider the additional burden that a second request would entail after already having responded to a first request."); *Sauer Inc. v. Lexington Ins. Agency, Inc.*, 2014 WL 5580954, at *6 (E.D.N.C. Oct. 31, 2014) (upholding agency refusal to comply with a second subpoena based on rationale that it had "already expended significant time and effort" on the first document production); *Spence*, 530 F. Supp. 2d at 745 (stating that "federal agencies must be permitted to consider the precedential effects of granting individual discovery requests" when evaluating burden imposed by *Touhy* request).  Indeed, agencies may consider the cumulative burden imposed by multiple requests not only from the same party or stemming from the same litigation, but even from wholly unrelated potential future disputes.  *See Hoover v. Trent*, 2009 WL 10676534, at *4 (N.D.W. Va. June 3, 2009) (upholding FBI's refusal to comply with third-party subpoena because requiring production would impose an unreasonable "cumulative burden" on FBI, in light of potential for similar requests *in other, as yet unknown and unfiled, cases*).  And courts in this Circuit have expressly rejected arguments, like those advanced by Plaintiffs, that the agency is required to limit its burden to a party's particular request.  *Spence*, 530 F. Supp. at 746.

13

Plaintiffs' requests are indeed cumulative, overly broad, and unduly burdensome.  As an initial matter, Plaintiffs have issued two *Touhy* requests to DEA, the second of which significantly overlaps with and expands on the first.  This alone makes their requests, by definition, cumulative (not to mention, confusing), and their suggestion to the contrary is confounding.  Plaintiffs likewise miss the point in arguing that DOJ is trying to "shift the focus" away from their March 19 *Touhy* letter.  DOJ's focus is squarely on this letter and, in particular, the cumulative and burdensome nature of the requests in light of Plaintiffs' prior requests.

A comparison of Plaintiffs' letters reveals that, apparently unsatisfied with the results of the discovery requests they drafted and previously propounded on the agency, Plaintiffs decided to rewrite and expand certain requests at the eleventh hour of discovery in these cases.  For example, Request No. 1 in the first two *Touhy* letters specifically sought documents "arising out of the search and seizure warrant executed on Safescript Pharmacy #6."  Exs. A and C.  Request No. 1 in Plaintiffs' current *Touhy* letter expands this earlier request, which DOJ already responded to, and seeks "*[a]ll documents relating to Safe Script Pharmacy No. 6* in Huntington, West Virginia ("Safe Script") . . . .."  Ex. E (emphasis added).  Similarly, Request No. 2 in Plaintiffs' first two *Touhy* letters was restricted to all "discovery" arising out of the "prosecution and conviction of Kofi Ohene Agyekum" related to his operation of A+ Care Pharmacy in Barboursville, West Virginia.  Exs. A and C.  Plaintiffs have significantly expanded this request too, and now seek "*[a]ll documents relating to A+ Care Pharmacy* . . . ."  Ex. E (emphasis added).

Furthermore, Plaintiffs added a host of new requests to their latest *Touhy* letter that significantly expanded its scope.  The final *Touhy* letter adds five requests for "all documents" in DEA's possession relating to nine specific pharmacies.  Plaintiffs' letter offers no justification

14

for these late additions, and these pharmacy-specific requests are particularly troubling in light of

Plaintiffs' agreement to drop their dispensing claims in order to secure a remand and an

expedited trial.  Moreover, such seriatim requests are improper and impose an undue burden on

DEA, requiring it to redo work it has already done.  Each of these requests is also overly broad in

as much as they seek "all documents" in DEA's possession relating to the specific pharmacies,

which would necessarily include documents that are wholly irrelevant to the parties' dispute.

Document requests which seek "all" or "any and all" documents do not meet the "reasonable

particularity" standard for discovery.  *See, e.g.*, *Regan–Touhy v. Walgreen Co.*, 526 F.3d 641,

649–50 (10th Cir. 2008) (requests for "all documents" that relate to a subject are "overly

broad"); Manual for Complex Litigation § 11.443, at 75 ("In overseeing document production,

the court should . . . prevent indiscriminate, overly broad, or unduly burdensome

demands . . . such as those for 'all documents relating or referring to' a . . . claim . . . .").  Such

sweeping requests are nothing more than a fishing expedition that impose a heavy burden on the

recipient due to the nature of the searches required to comply with the requests.  This over-

breadth alone is reason to deny Plaintiffs' motion.  *See, e.g.*, *Henry v. Morgan's Hotel Grp., Inc.*,

2016 WL 303114 *2 (S.D.N.Y. 2016) (requests for any and all documents are inherently

overbroad and provide an "independent basis" for quashing a subpoena).

The latest *Touhy* letter also seeks "all documents" relating to two national retail

pharmacies' operations in West Virginia over a 24-year period.  These patently overbroad

requests are not limited to either Cabell County or opioids.  And even if they were limited in

such fashion, they would still be unduly burdensome for the reasons discussed above.  Moreover,

these requests too are cumulative of—while also expanding on—Plaintiffs' prior requests (in the

MDL and this Court) which sought, *inter alia*, all communications with, all internal memoranda

summarizing meetings with, and all documents relating to administrative actions taken against these and other national retail pharmacies.

In spite of this, Plaintiffs make the remarkable statement that all of the discovery they have sought from DEA is consistent with the MDL court's recent clarification.  This is incorrect. In making this argument, Plaintiffs cherry picked one sentence from the MDL court's order, taking it out of context.  The full passage from which Plaintiffs selectively quoted reads:

> As stated, this Court believed only limited, jurisdiction-specific discovery in the West Virginia cases would be necessary after remand. ***This Court did not believe additional discovery from the DEA was necessary or appropriate for a fair trial***, applying the standards set out in Rules 26, 30, and 45 of the Federal Rules of Civil Procedure.

Resp. to Mot. for Clarification at 2, *In Re: National Prescription Opiate Litigation*, No. 17-md-02804 (N.D. Ohio Apr. 17, 2020), ECF No. 3263 (emphasis added).  Plaintiffs' argument ignores the host of jurisdiction-specific discovery available to them that does not involve DEA.  This may include discovery from local governmental agencies that did not participate in the MDL, or localized discovery on damages.  *See, e.g.*, *In re FedEx Ground Package Sys., Inc. Employment Practices Litig.*, No. 3:05-MD-527 RM, 2010 WL 415285, at *3-4 (N.D. Ind. Jan. 22, 2010) (explaining that case-specific discovery following remand should be limited to issues such as "individual damages" in mass tort litigation or "individualized expert discovery").  As the full passage makes clear, the MDL court did not envision discovery on remand from the DEA after it had already provided extensive discovery in the consolidated MDL proceedings.

Finally, DOJ properly considered and denied Plaintiffs' multiple *Touhy* requests in light of the significant cumulative burden imposed on DEA by these and other opioid-related requests. DEA is facing a substantial number of requests not only from the parties in these cases (both of which participated in the MDL and propounded requests on DEA there), but also from other parties still in the MDL, parties in state court proceedings, and parties seeking documents from

High Intensity Drug Trafficking Area (HIDTA) programs.[4]  Federal agency personnel serving a critical law enforcement mission cannot be repeatedly drafted into the service of private litigants, particularly at the eleventh hour of discovery.  Each request for documents or testimony diverts significant agency resources from their core functions, which is why agencies are afforded broad discretion to deny such requests.  The cumulative burden imposed on DEA by all of these requests—especially given the likelihood that DEA will continue to receive similar requests (in the MDL, remanded cases, or elsewhere)—is unsustainable and unreasonable.  *See* Ex. F, Declaration of Heather Wehrle, Acting Diversion Group Supervisor, DEA, Charleston, WV Office.

> **B.   DOJ Properly Considered and Denied Plaintiffs' Requests Because the Requests Seek Law Enforcement Sensitive Information.**

Pursuant to 28 C.F.R. § 16.26(b)(5), DEA is prohibited from releasing information if "[d]isclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired."  Much of the information sought by Plaintiffs implicates materials that would reveal DEA's investigative techniques and impede its ability to carry out its law enforcement mission.  Accordingly, DOJ reasonably concluded that disclosure of this material is prohibited by its *Touhy* regulations.

Each of Plaintiffs' nine requests expressly seeks documents relating to the "investigation or prosecution" of specific pharmacies.  Such documents will necessarily include information that could reveal DEA's investigative techniques and enable wrongdoers to avoid detection,

---

[4] Although the HIDTAs are not federal agencies, 21 U.S.C. § 1706(e)(4), the HIDTAs possess confidential federal law enforcement information shared by the DEA, FBI, and other federal law enforcement agencies.  Accordingly, the DEA, FBI, and other federal law enforcement agencies often need to review documents requested from the HIDTAs to protect privileged information.

which is why section 16.26(b)(5) prohibits such a release.  Plaintiffs argue that their request
should have been granted, however, because they did not seek "only" investigative materials, but
rather "all documents" relating to specific pharmacies.  This argument does not help Plaintiffs.
To the contrary, burying a request for law enforcement sensitive information in a broader request
for "all documents" only compounds the burden imposed on DEA.  For each request, DEA
would be required to undertake a painstaking review, which may require coordination with other
federal, state, or local partners, to identify potentially sensitive information within the broad
universe of documents Plaintiffs have sought.  Because DEA has limited resources to dedicate to
this type of undertaking, the work must be conducted by DEA personnel who have significant
additional responsibilities that are critical to the agency's efficient and effective execution of its
core functions.  Thus, even if some subset of the requested information could be disclosed
without compromising law enforcement interests, as DOJ acknowledged, doing so would impose
an unreasonable burden on DEA.

      Rather than contend with these issues and the practical implications of their requests,
Plaintiffs make a strawman argument—they assert that DOJ regulations do not provide for a
"blanket" law enforcement privilege or a "per se" prohibition on requests seeking investigative
materials.  (ECF No. 386 at 10.)  But DOJ has claimed no such "blanket" or "per se" exclusion.
To the contrary, and as Plaintiffs concede, DOJ plainly and explicitly stated the opposite in its
response to Plaintiffs' request:  DOJ acknowledged that, although "much of the information"
implicated the law enforcement privilege, "some subset of the materials" may be able to be
produced without running afoul of 28 C.F.R. § 26.16(b)(5).  This does not mean, as Plaintiffs
hyperbolically suggest, that "DEA would never have to produce relevant evidence for any
company it has ever investigated."  (ECF No. 386 at 10.)  Indeed, as Plaintiffs well know, DEA

has produced such information in the MDL.  DOJ simply reached the reasonable conclusion that, based on the totality of the circumstances, the burden on DEA to do so yet again, in response to an even broader set of requests, was not reasonable.

      **C.**    **DOJ Properly Considered Additional Factors in Denying Plaintiffs' Requests.**

In evaluating Plaintiffs' request, DOJ also considered the fact that Plaintiffs should be able to obtain (or should have previously obtained) from other sources many of the documents they now seek from DEA.  In addition, DOJ considered the inadequacy of Plaintiffs' circumscribed description of the materials sought and their relevance to the proceedings.  Both of these are appropriate factors for consideration under the governing regulations, and Plaintiffs do not contend otherwise.  Rather, Plaintiffs disagree with DOJ's ultimate conclusion based on its analysis of these factors.  Again, Plaintiffs fail to provide any basis on which this Court can overturn DOJ's decision.

First, Plaintiffs make much of the fact that they are not "parties" in Track One-B of the MDL, and therefore they could not possibly obtain documents from national retail pharmacy defendants—Rite Aid and CVS—who are named defendants in that Track.  Thus, rather than seek documents relating to these pharmacies' operations in West Virginia from the pharmacies, they have opted to seek them from DEA—a governmental entity that is not a party to *any* of the related opioid actions in this Court or the MDL.  Even in the absence of the MDL, this would be an improper request.  Plaintiffs could and should have served a third-party subpoena on the pharmacies—who remain intimately involved in related litigation in the MDL—if they wished to obtain documents relating to *those pharmacies' operations*.  But this request was particularly egregious in light of Plaintiffs' decision to dismiss these defendants in order to secure a speedy remand.  The fact that these pharmacies are no longer parties was Plaintiffs' decision, and it is

patently unreasonable for Plaintiffs to seek 24 years' worth of documents relating to the operations of potentially hundreds of pharmacies across the state of West Virginia from a non-party, governmental agency shortly before the close of discovery in a remanded, trial-ready case.

Second, what Plaintiffs label "procedural arguments" are in fact substantive requirements mandated by DOJ *Touhy* regulations.  Notably, Plaintiffs included the same exact formulaic statement of relevance in each of their three *Touhy* requests, even though the last request sought a substantially broader universe of information than the first two, and the first request was made before Plaintiffs dismissed the pharmacy defendants.  Plaintiffs contended that the documents sought—all of which involved pharmacies—were relevant to the "companies' knowledge"—not Defendants' knowledge.[5]  And despite propounding multiple requests on DEA, Plaintiffs made no attempt to refine their explanation of the documents sought in a manner that might aid DEA's review.  Moreover, this generic statement was particularly unhelpful given the breadth of the requests in Plaintiffs' final *Touhy* letter, each of which seeks "all documents" relating to specific pharmacies.

## IV.    Conclusion

For the foregoing reasons, DEA respectfully requests that this Court deny Plaintiffs' motion to compel.

---

[5] At best, Plaintiffs' reference to "companies" is ambiguous, particularly in light of the fact that their two *Touhy* requests issued after they had dismissed the pharmacy defendants continued to state that Plaintiffs had "brought claims against the distributors, manufacturers, *and dispensers* of opioids."  Ex. C at 1; Ex. E at 1.

Respectfully submitted,

MICHAEL D. GRANSTON
Deputy Assistant Attorney General

MICHAEL B. STUART
United States Attorney
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

By:    /s/Fred B. Westfall Jr.
FRED B. WESTFALL, JR. (W.Va. Bar No. 3992)
Assistant U.S. Attorney, Civil Chief
300 Virginia Street East, Room 4000
Charleston, WV 25301
(304) 345-2200
(304) 347-5443 (facsimile)
Fred.Westfall@usdoj.gov

ANDY J. MAO
NATALIE A. WAITES
JONATHAN K. HOERNER
J. ANDREW JACO
KELLY E. PHIPPS
DAVID M. SOBOTKIN
United States Department of Justice
Civil Division/Fraud Section
175 N Street, N.E., Room 10.222
Washington, D.C. 20002
(202) 616-2964
Natalie.A.Waites@usdoj.gov


Attorneys for U.S. Department of Justice
Drug Enforcement Administration

## CERTIFICATE OF SERVICE

I, Fred B. Westfall, Jr., Assistant United States Attorney, hereby certify that on

May 12, 2020, I filed the foregoing **MEMORANDUM IN RESPONSE TO PLAINTIFFS'**

**MOTION TO COMPEL DEA'S PRODUCTION OF SUBPOENAED DOCUMENTS** with

the Clerk of the Court using the Court's CM/ECF system, which will send notification of such

filing to all counsel of record and will also send a copy of the aforesaid document by email to all

counsel of record.


/s/Fred B. Westfall, Jr.
Fred B. Westfall, Jr. (W.Va. Bar No. 3992)
Assistant U.S. Attorney, Civil Chief
300 Virginia Street East, Room 4000
Charleston, WV 25301
(304) 345-2200
(304) 347-5443 (facsimile)
E-mail:  fred.westfall@usdoj.gov