UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**THE CITY OF HUNTINGTON,**
    Plaintiff,

v.

**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**
    Defendants.

CIVIL ACTION NO. 3:17-01362

**CABELL COUNTY COMMISSION,**
    Plaintiff,

v.

**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**
    Defendants.

CIVIL ACTION NO. 3:17-01665

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
MOTION TO COMPEL U.S. DRUG ENFORCEMENT
AGENCY'S PRODUCTION OF SUBPOENAED DOCUMENTS**

Plaintiffs The City of Huntington and Cabell County Commission (collectively, "Plaintiffs") submit this reply memorandum in further support of their motion for the Court to compel third party the U.S. Drug Enforcement Agency ("DEA") to produce documents pursuant to a subpoena Plaintiffs served on March 19, 2020.

# INTRODUCTION

"Since becoming United States Attorney, our number one priority has been a sense of urgency to fight the opioid epidemic. We fight that fight with every tool we have every day.

-Michael B. Stuart, United States Attorney, Southern District of West Virginia, April 23, 2019 Press Release

Despite public statements to the contrary, the United States Department of Justice refuses to comply with a lawful subpoena seeking to disclose the facts and circumstances regarding notorious pill mills in Huntington, Cabell County, West Virginia. Plaintiffs subpoena is narrowly tailored toward jurisdiction-specific discovery directly relevant to this litigation. Plaintiffs have spent over a year jumping through procedural obstacles only to be stonewalled on crucial facts. Plaintiffs ask this Honorable Court to order the executive branch of our federal government to comply with the subpoena.

Plaintiffs seek an order compelling DEA to produce documents relating to purchases and sales of prescription opioids by **ten** specific pharmacy stores in West Virginia. These stores are within or just outside Plaintiffs' jurisdictions. *See* Plaintiffs' Ex. A (Doc. 386-1), Subpoena Requests 1-7.[1] These stores' purchases and sales clearly are relevant to Plaintiffs' claims that Defendants unlawfully failed to maintain effective controls against diversion of the prescription opioids they distributed to pharmacies in and around Plaintiffs' jurisdictions. *See In re Nat'l Prescr. Opiate Litig.*, 2019 U.S. Dist. LEXIS 141126, at *95 (N.D. Ohio Aug. 20, 2019) (experts' analyses of pharmacy store ordering patterns "are both relevant and helpful to resolving issues in this case, including . . . whether Defendants employed reasonable measures to identify potentially suspicions orders[.]").

---

[1] Plaintiffs' remaining requests seek State-wide information for the stores of two pharmacy chains—CVS and Rite Aid—that have stores located in or near Cabell County that are governed by common district management policies.

DEA argues that its compliance with Plaintiffs' subpoena is governed by the Department of Justice's *Touhy* regulations and subject to review under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*. DEA relies upon Fourth Circuit cases addressing subpoenas issued outside of federal court and not governed by Fed. R. Civ. P. 45. *See COMSTAT Corp. v. Nat'l Science Found.*, 190 F.3d 269, 271 (4th Cir. 1999) (subpoena issued by arbitrator); *Smith v. Croner*, 159 F.3d 875, 877 (4th Cir. 1998) (subpoena in state court case). These cases thus are not controlling.

Moreover, even under the APA and the *Touhy* regulations, DEA still must produce the requested pharmacy store documents, which are clearly relevant and in the public interest. This is what the MDL Court, considering both Rule 45 and APA standards, has concluded in several instances ordering DEA to produce documents in this litigation:

> There is overwhelming need for the Plaintiffs in this case to learn the truth surrounding marketing and distribution of opioids, including what the manufacturers, distributors, retailers, and DEA knew and then they knew it . . . .
>
> The objective of the DEA is protection of the public and regulation of dangerous drugs. . . . [P]roducing the requested information will only serve to strengthen those objectives by revealing ways the system failed. . . . Therefore, the Court finds that DEA's bases for refusal to produce the requested data are arbitrary and capricious.

*In re Nat'l Prescr. Opiate Litig.*, No. 1:17-md-2804, 2018 U.S. Dist. LEXIS 90002, at *74 (N.D. Ohio April 11, 2018); *see also HD Media Co., LLC v. U.S. Dep't of Justice*, 927 F.3d 919, 934 (6th Cir. 2019) ("The [DEA's] ARCOS data will aid us in understanding the full enormity of the opioid epidemic and might thereby aid us in ending it."). The same reasoning applies here. The Court should grant Plaintiffs' requests, especially given their narrow, jurisdiction-specific focus.

The pharmacy stores at issue present stark examples of high-volume diversion of prescription opioids in Plaintiffs' communities. For example, SafeScript Pharmacy in the City of Huntington diverted more than 180,000 Hydrocodone pills between May 2007 and May 2011.

The vast majority of SafeScript's opioid dosage units were distributed by Defendant AmerisourceBergen Drug Corporation ("ABDC"). A full accounting of the facts that would have been evident to Defendants in supplying these pharmacies is important both to establishing Defendants' liability and to the public interest in understanding and abating the opioid epidemic in these jurisdictions. The Court should order DEA to produce these requested documents.

## ARGUMENT

### A. The Motion Should Be Decided in this Action and Granted Under Rule 45.

DEA's primary argument in opposition is that Plaintiffs' motion is impermissible because its production of documents is governed not by Rule 45, but by the APA, under which Plaintiffs must file a separate action against the agency. *See* DEA Memorandum in Response ("DEA Memo") (Doc. 415) at 8-10. The Court should reject this argument.

First, courts in and outside the Fourth Circuit have held repeatedly that a motion to compel discovery responses by a federal agency as a third party may be filed in an existing federal court action.[2] This approach is especially appropriate here, where Plaintiffs and Defendants both have filed motions concerning DEA documents. *See* Defs' Motion to Compel Discovery Responses from DEA (Doc. 320). Applying DEA's logic, these motions would necessitate a total of three separately-captioned actions, a result that is both irrational and inconsistent with relevant case law. The Court should decide Plaintiffs' motion in this action.

---

[2] *See*, *e.g.*, *Clay v. Consol Pa. Coal Co., LLC*, No. 5:12-cv-92, 2013 WL 12373597, at *2 (N.D. W. Va. Oct. 17, 2013) ("Although an aggrieved party may bring a separate action under the APA, if the underlying case is already in federal court, a motion to compel compliance with the subpoena or a motion to quash the subpoena are both sufficient mechanisms to allow a federal district court to review an agency's actions under its *Touhy* regulations."); *Lamb v. Wallce*, 2018 U.S. Dist. LEXIS 23002, at *7 (E.D.N.C. Feb. 12, 2018) ("Plaintiffs need not initiate a collateral action to review the Government's refusal to comply with their subpoenas issued pursuant to Federal Rule of Civil Procedure 45 and in compliance with the applicable *Touhy* regulations."); *Spence v. NCI Info. Sys., Inc.*, 530 F. Supp. 2d 739, 744 (D. Md. 2008) ("To require Spence to initiate a separate and independent action would result in needless delay and duplication of effort."); *see also United States Env'l Prot. Agency v. General Electric Co.*, 197 F.3d 592, 599 (2d Cir. 1999) (opinion "allowing the district court to proceed under the provisions of the APA to determine the propriety of the subpoena, without a separate and independent lawsuit").

4

Second, DEA's argument that Plaintiffs' motion must be decided under the APA based upon compliance with the agency's *Touhy* regulations, not under Rule 45, *see* DEA Memo at 8-9, also is incorrect. The Fourth Circuit case law on which DEA relies addressed actions filed outside of federal court to which Rule 45 did not apply. In *COMSTAT*, *supra*, the Fourth Circuit addressed an agency's appeal from an order requiring it to comply with deposition subpoenas issued by an arbitrator in a private party dispute. *See* 190 F.3d at 272-74. The Court held that the arbitrator lacked authority under the Federal Arbitration Act to compel non-parties to appear at depositions. *Id.* at 275-76. In *Smith v. Cromer*, *supra*, the Fourth Circuit addressed a state-court criminal action where the judge ordered the U.S. Department of Justice and DEA to produce the defendant's individual file, and the U.S. Government responded by removing the case and moving the federal district court for a protective order and/or to quash the subpoenas. *See* 159 F.3d at 877-78. The Court held that the doctrine of sovereign immunity deprived the district court of jurisdiction to enforce the subpoenas because the state court lacked jurisdiction over the U.S. Government parties. *See id.* at 879-80. In neither case did the Fourth Circuit rule upon the relationship between the APA and Rule 45, nor could it, because both cases addressed subpoenas issued by authorities other than federal district courts.

For this reason, the Court can and should apply Rule 45 and should order DEA to comply with the subpoena for the reasons set forth in Plaintiffs' moving papers.

**B.** **The Motion Also Should Be Granted if it is Governed by the APA.**

DEA seeks application of the APA's standard for reviewing executive agency action. *See* DEA Memo at 10; *see also* 5 U.S.C. § 706 (2)(A) ("The reviewing court shall . . . hold unlawful and set aside agency action . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"); *COMSTAT*, 190 F.3d at 277 ("[C]ourts may reverse

an agency's decision not to comply only when the agency has acted unreasonably."). Even under this standard, however, the Court should overturn DEA's refusal to provide documents on the ordering and sales practices of pharmacy stores in Plaintiffs' jurisdictions.

The U.S. Department of Justice's ("DOJ's") *Touhy* regulations direct Department officials and attorneys to consider, in responding to a demand, "[w]hether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose." 28 C.F.R. § 16.26(a)(1). The scope of production under Rule 45 thus is relevant to DEA's duty to produce. Disclosure is permitted if "the administration of justice requires" it, including if "disclosure is necessary to pursue a civil . . . prosecution" based upon consideration of:

(1) The seriousness of the violation . . . involved,

(2) The past history . . . of the violator . . . ,

(3) The importance of the relief sought,

(4) The importance of the legal issues presented,

(5) Other matters brought to the attention of the Deputy or Associate Attorney General.

28. C.F.R. § 1626(c).

These are the same considerations the MDL Court addressed in overruling DEA's objections to producing data in its Automated Records and Consolidated Orders System ("ARCOS") at the outset of the litigation. Although the MDL Court held that Rule 45 governed, *see* 2018 U.S. Dist. LEXIS 90002, at *57, it also ruled that production would be required under the APA and DOJ's *Touhy* regulations because of the "overwhelming need for the Plaintiffs in this case to learn the truth surrounding marketing and distribution of opioids, including what the manufacturers, distributors, retailers, and DEA knew and when they knew it . . . ." *Id.* at *74. The Court also found that disclosure was strongly in the public interest because "producing the

requested information will only serve to strengthen [DEA's public protection] objective by revealing ways the system failed, so that deficiencies may be fixed." *Id.* at *75; *see also HD Media*, 927 F.3d at 933 ("The ARCOS data will aid us in understanding the full enormity of the opioid epidemic and might thereby aid us in ending it."). Based upon these findings of litigation necessity and strong public interest, the MDL Court concluded that "DEA's bases for refusal to produce the requested data are arbitrary and capricious." 2018 U.S. Dist. LEXIS 90002 at *75-6.

The same considerations support compelling DEA to produce Plaintiffs' far narrower request here for documents related to **ten** pharmacy stores located in their jurisdictions. *See* Plaintiffs' Ex. A (Doc. 386-1), Requests 1-7. These stores seem to present stark examples of the large-scale diversion of prescription opioids that Defendants should have identified but utterly failed to prevent. As discussed, DEA has alleged that SafeScript Pharmacy in the City of Huntington ordered 860,000 doses of Hydrocodone between May 2007 and May 2011, while it dispensed only 677,000 doses during this period. *See* Ironton Tribune, South Point Man at center of Huntington drug probe, Feb. 22, 2012.[3] Most of SafeScript's opioid dosage units were distributed by Defendant ABDC. Similarly, McCloud Family Pharmacy in Huntington (Pltfs' Request No. 3) dispensed almost 4.5 million hydrocodone and oxycodone pills from 2006 to 2014, while S&F Pharmacy (Fruth) (Pltfs' Request No. 6) dispensed almost 5 million hydrocodone and oxycodone pills during the same time period. The requested documents thus are highly relevant and should be produced.

DEA's grounds for refusing to produce are patently unreasonable and therefore do not withstand scrutiny. DEA continues to contend that the MDL Court somehow precluded Plaintiffs from taking this discovery *after it remanded the case to this Court.* Not so. The Court stated that

---

[3] Available at https://www.irontontribune.com/2012/02/22/south-point-man-at-center-of-huntington-drug-probe/.

it "did not believe additional discovery from the DEA was necessary or appropriate for a fair trial[,]" but that "limited jurisdiction-specific discovery in the West Virginia cases would be necessary after remand." These West-Virginia specific requests arose after remand and are clearly "*within the purview of the transferor court.*" *In re Nat'l Prescr. Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio April 17, 2020) (Doc. 3263 at 2-3 (emphasis added). Plaintiffs' jurisdiction-specific document requests thus are for this Court alone to decide.

Finally, the Court also should reject DEA's argument that Plaintiffs' requests for jurisdiction-specific documents should be denied "in light of the significant cumulative burden imposed on DEA by these *and other opioid-related requests*." DEA Memo at 16 (emphasis added). DEA cites no authority allowing it to deny requests for clearly relevant documents supported by strong case-specific and public interests based upon the effect of *other parties' requests for other information*. The *Touhy* regulations and the APA do not give DEA boundless discretion to deny a party's requests that satisfy their applicable standards just because some other party has requested some other information. *Cf. Yetiv v. U.S. Dep't of Housing and Urban Devel.*, 503 F.3d 1087, 1091 (9th Cir. 2007) ("Relying on irrelevant factors renders an agency adjudication arbitrary and capricious."). Acceptance of this argument would effectively write the federal courts out of their critical role in reviewing executive agency action under the APA. The Court thus should order DEA to produce jurisdiction-specific pharmacy store documents.

## CONCLUSION

For all of the reasons set forth herein and in Plaintiffs' moving papers, Plaintiffs' motion to compel should be granted.

Dated: May 15, 2020

**THE CITY OF HUNTINGTON**

/s/ *Anne McGinness Kearse*
Anne McGinness Kearse (WVSB No. 12547)
Joseph F. Rice
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: 843-216-9000
Fax: 843-216-9450
akearse@motleyrice.com
jrice@motleyrice.com

Linda Singer
David I. Ackerman
**MOTLEY RICE LLC**
401 9th Street NW, Suite 1001
Washington, DC 20004
Tel: 202-232-5504
Fax: 202-386-9622
lsinger@motleyrice.com
dackerman@motleyrice.com

Charles R. "Rusty" Webb (WVSB No. 4782)
**THE WEBB LAW CENTRE, PLLC**
716 Lee Street, East
Charleston, West Virginia 25301
Telephone: (304) 344-9322
Facsimile: (304) 344-1157
rusty@rustywebb.com

Respectfully submitted,

**CABELL COUNTY COMMISSION**

/s/ *Paul T. Farrell, Jr.*
Paul T. Farrell, Jr. (WVSB Bar No. 7443)
**FARRELL LAW**
422 Ninth Street, 3rd Floor (25701)
PO Box 1180
Huntington, West Virginia 25714-1180
Mobile: 304-654-8281
paul@farrell.law

/s/ *Anthony J. Majestro*
Anthony J. Majestro (WVSB No. 5165)
**POWELL & MAJESTRO, PLLC**
405 Capitol Street, Suite P-1200
Charleston, West Virginia 25301
304-346-2889 / 304-346-2895 (f)
amajestro@powellmajestro.com

Michael A. Woelfel (WVSB No. 4106)
**WOELFEL AND WOELFEL, LLP**
801 Eighth Street
Huntington, West Virginia 25701
Tel. 304.522.6249
Fax. 304.522.9282
mikewoelfel3@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Reply Memorandum was filed electronically using the Court's CM/ECF system and thereby was served upon all counsel registered in the system on May 15, 2020, and also was served by email to Plaintiffs' listserv at mdl2804discovery@motleyrice.com, to Defendants' listserv at track2opioiddefendants@reedsmith.com, and Special Master Chris Wilkes at cwilkesllc@gmail.com, and to the Drug Enforcement Administration at the following email addresses: fred.westfall@usdoj.gov; Jonathan.K.Hoerner@usdoj.gov; James.A.Jaco@usdoj.gov; Kelly.E.Phipps@usdoj.gov; David.M.Sobotkin@usdoj.gov.

/s/ Anthony J. Majestro, Esq.