IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>    Defendants.<br>_____<br><br>CABELL COUNTY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>    Defendants. | Civil Action No. 3:17-01362<br><br><br><br><br><br><br><br><br>Civil Action No. 3:17-01665 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL
DISCOVERY RESPONSES ON OPIOID-RELATED EXPENDITURES**

    Plaintiffs seek a novel remedy in this litigation that they call "abatement damages," but they have failed to provide sufficient information or documents for Defendants to understand or evaluate this requested relief. As far as Defendants can tell, Plaintiffs seek future money damages, meaning damages that they have not yet incurred—and may never incur—to abate the opioid crisis.[1] Assuming such a remedy exists, predicting what abatement costs may be incurred in the

---

[1] *See, e.g.*, Amended Answers of Plaintiff Cabell County Commission to Distributor Defendants' First Set of Interrogatories to Plaintiffs, at 15 (Dec. 13, 2019) ("We will be seeking *money damages* to eliminate the hazard to public health and safety and abate the opioid epidemic.") (emphasis added).

future likely requires determining what abatement costs have been incurred in the past. Plaintiffs allege that they have been abating the opioid crisis for at least several years. *See* Compl. ¶¶ 1149-97. Thus, detailed information and documents about the abatement-related actions that Plaintiffs have taken, including the cost of each such action, are critical to analyzing Plaintiffs' sought abatement damages.[2]

The details of Plaintiffs' opioid-related actions and expenditures also are critical for issues in this litigation independent of abatement damages. For example, the dates, nature, and extent, and targets of Plaintiffs' opioid-related actions are relevant to Plaintiffs' ability to prove that Defendants' conduct constituted a public nuisance that proximately caused the alleged harm, as well as to Defendants' defenses of non-party fault and the statute of limitations.

The importance of damages-related discovery is highlighted in the federal rules, which generally require plaintiffs to provide, at the outset of discovery, "a computation of each category of damages claimed" and to produce "the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed R. Civ. P. 26(a)(1)(A)(iii). But Plaintiffs have resisting providing information and documents on their opioid-related expenditures and abatement damages in responses to Defendants' discovery requests, in part based on the

---

[2] Defendants dispute that abatement involves eliminating the effects of the "opioid epidemic." Under West Virginia law, abatement involves stopping the nuisance-causing conduct, not remedying all effects of such conduct. Dkt. 356. Nonetheless, because Plaintiffs seek sweeping "abatement damages" related to the costs of the opioid crisis, Defendants need discovery of such costs.

(continued…)

assertion that these matters will be addressed in their expert reports. But these are objective, factual matters that must be tested during fact discovery; they are not a matter of expert opinion.[3]

Defendants made these points in their January 31, 2020 motion to compel Plaintiffs' complete discovery responses. Dkt. 150. Special Master Wilkes granted that motion in relevant part, ordering Plaintiffs "to fully respond" to Defendants' discovery requests on Plaintiffs' opioid-related actions and expenditures—specifically interrogatories 10 and 11 and request for production 16—by April 30, 2020. Discovery Ruling No. 1 ("DR1"), Dkt. 248 at 7. The deadline for Plaintiffs to comply with DR1 now has expired, and Plaintiffs have failed to meet their discovery obligations.

Defendants have diligently worked to assist Plaintiffs in meeting their discovery obligations. On April 3, 2020, approximately a week following the entry of DR1, Defendants sent a letter to Plaintiffs clarifying the information, data, and documents that they expected would be produced related to abatement damages under DR1 and Defendants' discovery requests. The letter explained that Defendants expected to receive a complete list of categories of abatement damages that Plaintiffs seek; accounting data on opioid-related expenditures; annual reports; operational data showing opioid-related actions; FTE counts and salary, wage, and benefits data for Plaintiffs' employees; and documents and data regarding Plaintiffs' funding of hospitals, clinics, or treatment centers. Ex. A. Plaintiffs never responded to this letter.

On May 6, 2020, approximately a week following the expiration of DR1's compliance deadline, Defendants sent another letter to Plaintiffs, this time notifying them of their failure to comply with DR1 or to respond adequately to Defendants' discovery requests on opioid-related

---

[3] Furthermore, the schedule in this case clearly contemplates that Defendants will have full discovery of Plaintiffs' abatement damages claims before Plaintiffs submit their expert reports: Defendants' experts must submit their reports just ten days after Plaintiffs' experts submit theirs. It will be impossible for Defendants to respond within mere days unless they are able to ascertain Plaintiffs' abatement damages claim and probe the bases for that claim during fact discovery.

expenditures and abatement damages. Ex. B. Plaintiffs responded in a letter on May 15, 2020 that did not dispute that they have failed to comply with DR1: Cabell stated that it "intends to supplement its response" to interrogatory 11, Plaintiffs repeated that they will rely on expert reports, and Plaintiffs stated that they have produced "many" or "numerous" documents responsive to request for production 16. Ex. C.

Defendants now seek the Court's assistance with obtaining critical discovery of Plaintiffs' alleged opioid-related actions and expenditures and abatement damages remedy. Specifically, Defendants request an order requiring Plaintiffs to provide complete discovery responses in those categories and to identify any responsive documents they have produced by Bates ranges.

## I. Interrogatories 10 and 11

Defendants served initial interrogatories on October 25, 2019. Interrogatories 10 and 11 seek information concerning Plaintiffs' efforts "to address 'hazards to public health and safety' that [they] attribute to the wrongful conduct of Distributor Defendants," including "the amount of taxpayer dollars [they] expended to fund these efforts," as well as the outside sources from which Plaintiffs have obtained, or sought to obtain, funding or recovery for their opioid-related expenditures.[4]

Plaintiffs responded in December 2019. Cabell County provided no substantive response to interrogatory 10 or 11. Instead, it stated, without explanation, that each of the entities for which it "has fiscal responsibility . . . has dedicated tremendous resources to fighting the opioid

---

[4] Distributor Defendants' First Set of Interrogatories to Plaintiffs, at 5 (Oct. 25, 2019) (quoting Third Amended Complaint ¶ 29).

(continued…)

4

epidemic."[5] Cabell also stated that it is "not seeking reimbursement of past/future economic losses" but, instead, it is "seeking money damages to eliminate the hazard to public health and safety and abate the opioid epidemic."[6] The City of Huntington responded to these interrogatories with general descriptions of its opioid-related initiatives, but not any specific information about the operations of any initiative or any quantification of the costs of any initiative.

Defendants moved to compel complete responses to interrogatories 10 and 11. DR1 granted the motion in relevant in part, ordering full supplementation of these responses by April 30, 2020. Plaintiffs supplemented their interrogatory responses on that deadline, but their responses to interrogatories 10 and 11 still are far from complete. In fact, Cabell failed to supplement its responses to those interrogatories *at all*. Instead, it removed information: it deleted the language stating that it was "seeking money damages to eliminate the hazard to public health and safety and abate the opioid epidemic."[7] While Huntington supplemented its responses to interrogatories 10 and 11 to some extent, it still has failed to provide specific operational information, any quantification of its costs, or a complete list of categories of abatement damages that it seeks.[8] *See* Ex. B.

---

[5] Amended Answers of Plaintiff Cabell County Commission to Distributor Defendants' First Set of Interrogatories to Plaintiffs, at 15 (Dec. 13, 2019).

[6] *Id.*

[7] First Amended Supplemental Amended Answers of Plaintiff Cabell County Commission to Distributor Defendants' First Set of Interrogatories to Plaintiffs, at 16 (May 11, 2020).

[8] Plaintiff City of Huntington, West Virginia's Supplemental Responses and Objections to Distributor Defendants' First Set of Interrogatories, at 31-41 (Apr. 30, 2020).

(continued…)

## II.     Request for Production 16

Defendants served initial requests for production on October 25, 2019, seeking documents relating to Plaintiffs' opioid-related expenditures and programs, initiatives, or actions.[9]

Plaintiffs responded in December 2019. Cabell promised to search for some responsive documents, but the bulk of its response was an argument that its opioid-related expenditures are not relevant because it seeks abatement damages.[10] Cabell also said that it "intend[ed] to disclose an abatement plan through expert witness testimony."[11] Huntington promised to produce more documents, including those from its New World Database, but it similarly objected to "information related to damages" and said it would provide responsive information through expert reports.[12]

In Defendants' January 31 motion to compel complete discovery responses, Defendants explained that discovery requests on opioid-related expenditures are critical for issues of liability and abatement damages, for the reasons discussed above. Defendants also explained that it was no answer that Plaintiffs would provide responsive information during expert discovery: any abatement plan would rely on facts, so those underlying facts needed to be disclosed during fact discovery for Defendants to test the inputs to Plaintiffs' proposed abatement plans. Dkt. 150 at 11-12. DR1 required Plaintiffs to respond fully to the requests for production regarding opioid-related expenditures by April 30, 2020.[13]

---

[9] Distributor Defendants' First Set of Requests for Production to Plaintiffs, at 6-7 (Oct. 25, 2019).

[10] Amended Responses of Plaintiff Cabell County Commission to Distributor Defendants' First Set of Requests for Production to Plaintiffs, at 7-8 (Dec. 13, 2019).

[11] *Id.* at 7.

[12] Plaintiff City of Huntington, West Virginia Responses and Objections to Distributor Defendants' First Set of Requests for Production, at 10, 12-14 (Dec. 3, 2019).

[13] While DR1 focuses on Cabell's response to request for production 16, the discussion in DR1 relates to discovery requests on opioid-related expenditures and programs, which Defendants' January 31 motion to compel addressed with regard to both Plaintiffs' responses to requests for production 11 and 15. *See* Dkt. 150 at 11-12, 15.

The April 30 deadline has expired, and Plaintiffs have failed to supplement their document productions adequately. None of Huntington's production cover letters have indicated that Huntington has produced documents or data in response to DR1. Huntington has otherwise provided only incomplete documentary evidence showing its opioid-related actions and expenditures. For example, it has provided little, if any, line-item accounting data, employee headcount information, or actuals data on salaries, wages, or benefits. As for operational data, Huntington has provided only sporadic, summary statistics, such as a table in a Report to City Council showing the number of calls that the Huntington Fire Department has responded to annually, in total and in categories labeled "rescue," "fires," and "false"—and no categories specific to opioids. HUNT_00019591.

Cabell made three small productions, totaling 81 documents, on April 29 and 30, purportedly in response to DR1. The first production consisted of 41 documents from the Cabell County Sheriff's Department with indecipherable lines of data. *E.g.*, CCDS_0080422. The second production consisted of 13 West Virginia State Police reports listing numbers of incidents, without any explanation or detail, such as about whether the incidents took place in Cabell County, involved opioids, or led to convictions. *E.g.*, CCDS_0081487. And the third production consisted of five documents from the Cabell County Prosecuting Attorney's Office listing cases, which do not indicate whether the cases involved opioids or provide any information regarding the office's operations or expenditures. *E.g.*, CCPROS_0000001.

### III. Conclusion

For the foregoing reasons, Defendants respectfully request an order requiring Plaintiffs to fully supplement their discovery responses on their opioid-related actions and expenditures and their sought remedy of abatement damages, as well as to identify the responsiveness of produced documents by Bates ranges.

Respectfully Submitted,

*McKesson Corporation*
By Counsel:

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*/s/ Carol Dan Browning*
Carol Dan Browning
Stites & Harbison, PLLC
400 West Market Street
Suite 1800
Louisville, Kentucky  40202
Telephone:  (502) 587-3400
Facsimile:  (502) 587-6391
cbrowning@stites.com

*/s/ Timothy C. Hester*
Timothy C. Hester
Mark H. Lynch
Christian J. Pistilli
Laura Flahive Wu
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
mlynch@cov.com
cpistilli@cov.com
lflahivewu@cov.com

*AmerisourceBergen Drug Corporation*
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC

8

Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

***Cardinal Health, Inc.***
By Counsel:

*/s/ Brian A. Glasser*
Brian A. Glasser (WVSB #6597)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
BAILEY GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
*Counsel in Cabell County action*

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard @wc.com
ahardin@wc.com

9

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 15th day May, the foregoing **"Memorandum in Support of Defendants' Motion to Compel Discovery Responses on Opioid-Related Expenditures"** was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)