IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>    Defendants.<br>_____<br><br>CABELL COUNTY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*,<br><br>    Defendants. | Civil Action No. 3:17-01362<br>Hon. David A. Faber<br><br><br><br><br><br><br><br><br>Civil Action No. 3:17-01665<br>Hon. David A. Faber |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION TO COMPEL DISCOVERY RESPONSES**

Plaintiffs insist that their document productions are complete, and refuse to substantiate or remedy numerous apparent production deficiencies. The City of Huntington also has refused to produce the custodial files for seven employees that it identified for the first time on April 30, 2020—then the final day of document discovery. Faced with Plaintiffs' refusal to meaningfully address gaps in their productions, Defendants are forced to seek this Court's intervention.

For the reasons set forth below, the Court should grant Defendants' motion, and enter an order requiring a meet and confer supervised by Special Master Wilkes wherein Plaintiffs must explain the identified deficiencies in Plaintiffs' productions, and compelling the City of Huntington to produce the seven custodial files at issue.

**ARGUMENT**

I.  **Plaintiffs' Must Explain Their Deficient Productions.**

On April 28, 2020, Defendants sent Plaintiffs a letter (**Exhibit 1**) summarizing the apparent deficiencies in Plaintiffs' productions. Defendants' letter outlined several substantive deficiencies: Plaintiffs' total productions included large percentages of irrelevant or duplicate documents; the produced custodial files were deficient and productions of departmental files sometimes non-existent; and Plaintiffs repeatedly had produced large numbers of documents from files *after* representing that production of those files was "substantially complete." *See* Ex. 1 at 1.

Plaintiffs have refused to meaningfully address the deficiencies that Defendants have identified and specifically outlined for Plaintiffs. On May 8, 2020, Plaintiffs responded via letter (**Exhibit 2**). Cabell County dismissed the production deficiencies as "subjective" and said that it saw "no point in addressing [them] point by point." Ex. 2 at 1. Cabell admitted that it has failed to produce any documents for nine of its custodians and stood on its conclusory assertion that it "conducted thorough searches."[1] *See* Ex. 2 at 2. Huntington provided some explanation for its document collection process, but it also failed to address any specific deficiencies that Defendants identified, asserting that it had "completed its document production with the exception of certain, previously identified discrete items." Ex. 2 at 2.

Plaintiffs' summary statements that production is complete do not relieve them of their discovery obligations. Plaintiffs' productions remain deficient because (1) large numbers of their documents are duplicates or irrelevant, (2) productions of their custodial files are incomplete, (3)

---

[1] For a tenth custodian, Ryan Cole, Cabell claimed that it "has produced 32 custodial documents." Ex. 2 at 1. Cabell actually has produced only eight documents for Mr. Cole—all after Defendants sent their deficiencies letter.

productions of their departmental files are deficient, and (4) Plaintiffs' representations of substantial completion repeatedly have been belied by their subsequent productions.

### A. Plaintiffs have produced large numbers of duplicate or irrelevant documents.

Although Plaintiffs tout the number of produced pages of documents, those numbers do not accurately reflect the status of their productions.[2] Of the 370,933 documents produced by Huntington, more than 43 percent (167,037) are duplicates.[3] In terms of pages, the duplicate number is higher: 1,147,477 pages (60 percent) of the 1,836,752 pages produced by Huntington are duplicates. For Cabell, well over half of the 421,647 documents it has produced are irrelevant, and an additional 35,560 are duplicates.

### B. Plaintiffs' production of agreed-upon custodial files is deficient.

Both Cabell and Huntington assert that their custodial productions are complete for their 48 and 51 agreed-upon custodians, respectively. *See* Ex. 2 at 1–3. Yet, as Cabell has admitted, *id.* at 1–2, it has produced *zero* documents for nine of its agreed-upon custodians.[4] For 18 of the remaining 39 custodians, Cabell has produced fewer than 100 documents; for 13 of those, Cabell has produced fewer than 50 documents. Similarly, Huntington has produced *zero* documents for

---

[2] All numbers are current as of May 13. Additionally, on April 27, Cabell provided the production volume CHHD_REPROD002, which provided new metadata for certain previously produced documents. Consequently, some custodial document numbers may have shifted since Defendants' prior discovery status updates on account of the new metadata.

[3] Huntington maintains that "[t]o the extent Defendants believe Plaintiffs' productions include duplicates, those duplicates are a product of the manner in which electronic documents were retained on the City's archival server in the ordinary course of business." Ex. 2 at 3 n.3. The duplicates numbers cited by Defendants come directly from the metadata provided by Plaintiffs with each production, not Defendants' own analysis.

[4] These custodians are Ottie Adkins, Betty Bates, Clayton Bates, Scott Bias, Adele Chandler, James Sheidler, Mary Beth Steele, David Wright, and Stephen Zoeller.

12 agreed-upon custodians.[5] For 13 of its remaining custodians, Huntington has produced fewer than 100 documents; for six of those, Huntington has produced fewer than ten documents. The custodians for which Plaintiffs have failed to produce *any* documents include priority deponents such as former Huntington Fire Department Chief Carl Eastham and former Cabell County Sheriff Kim Wolfe.[6]

Defendants undertook a detailed review of the document productions for Defendants' 20 priority deponents and found significant additional deficiencies for 18 (90 percent) of them, including *all* of the Cabell priority deponents. *See* Ex. 1 at 3-7.[7] For example, although Nancy Cartmill has served as a Cabell County Commissioner for *14 years* (2006-present), Cabell has inexplicably not produced any of her documents from before 2016. Cabell has produced a total of 264 documents from Ms. Cartmill's files, and more than half of those documents are county news alerts. For Gordon Merry, who has been with Cabell County Emergency Medical Services since its inception in 1974, Cabell has produced only 711 custodial documents, including only 128 emails. It has failed to produce *any* documents from Mr. Merry's files from 2006 or 2011–2015, key periods for Plaintiffs' allegations. And for Ray Canafax, who has been with the Huntington

---

[5] These custodians are Gene Baumgardner, Joyce Clark, Carl Eastham, David Felinton, Greg Fuller, Krishawna Harless, Russel Houck, Brandi Jacob Jones, Tom McGuffin, Creig Moore, Mike Shockley, and Robert Wilhelm.

[6] Kim Wolfe is a custodian for both Cabell and Huntington.

[7] These 18 priority custodians with deficient productions are Bob Bailey, Nancy Cartmill, Tom McComas, Chuck Zerkle, Doug Adams, Kim Wolfe, Doug Ferguson, Gordon Merry III, Ray Canafax, Carl Eastham, Jan Rader, Skip Holbrook, Paul Hunter, Darla Bentley, Deron Runyon, Pamela Chandler, Steve Williams, and Hank Dial.

Fire Department since 1999, Huntington has produced only 198 custodial documents, and *none* from before 2014.[8]

### C. Plaintiffs' production of non-custodial files is deficient.

Plaintiffs' production of non-custodial departmental files also is lacking.  For example, Huntington has produced only *one* document from the departmental files of its Fire Department, despite the fact that the Fire Department is one of the primary responders to overdose calls.  In response to Defendants' March 27 letter stating as much (**Exhibit 3**), Huntington pointed to only three additional documents (**Exhibit 4**).  *See* Ex. 4 at 3.  For Cabell County EMS, by comparison, Cabell has produced more than 57,000 documents.  As another example, Cabell has failed to produce *any* non-custodial emails from its Sheriff's Department—and more than *80 percent* of the documents that Cabell has produced from the files of that department are irrelevant.  Huntington's productions of departmental files suffer from similar deficiencies.  For example, nearly 60 percent of the documents that it has produced from the departmental files of its Police Department are duplicates.

### D. Plaintiffs have produced large numbers of documents from files after representing that production of those files was substantially complete.

Both Cabell and Huntington repeatedly have produced large numbers of documents from custodial and departmental files *after* representing that production from those files was substantially complete.

---

[8] Defendants' position is that the statute of limitations bars Plaintiffs' claims before 2016.  Plaintiffs have opposed that position and assert that they can maintain claims for public nuisance for any time period.  They cannot have it both ways.  Either the earlier time periods are not relevant, as Defendants maintain, or Plaintiffs must produce documents for the time period for which they assert claims.

In Plaintiffs' April 14 Second Joint Discovery Status Report (**Exhibit 5**), both Huntington and Cabell represented that their productions were substantially complete. *See* Ex. 5 at 6-7. Yet, since then, Huntington has produced *64,329* additional documents, and Cabell has produced an additional *76,249* documents. Similar issues have occurred with regard to custodial files. For example, Cabell sent Defendants a letter on April 2 (**Exhibit 6**) representing that production of custodial documents was substantially complete for all their agreed-upon custodians except Gordon Merry and Irv Johnson. *See* Ex. 6 at 1. At the time, 768 documents had been produced from Chuck Zerkle's custodial files. Yet, on April 16, Cabell produced 325 additional documents from Mr. Zerkle's custodial files, increasing the number of his produced documents by more than 40 percent.

These repeated, unexplained mismatches between Plaintiffs' representations and productions, such as those outlined above, make it difficult to rely on those representations. Accordingly, because Plaintiffs' productions clearly are deficient, and because Plaintiffs refuse to fix or satisfactorily explain these deficiencies, Defendants request an order requiring a meet and confer supervised by Special Master Wilkes wherein Plaintiffs must explain the identified deficiencies in Plaintiffs' productions. *See* Fed. R. Civ. P. 37.

## II. Huntington Must Produce the Custodial Files of Its Newly Identified Relevant Employees.

On April 30, 2020, the then-final day of document discovery, the City of Huntington served Supplemental Responses and Objections to Distributor Defendants' First Set of Interrogatories (**Exhibit 7**) that for the first time identified seven individuals as employees who have held relevant positions in the City's police department, fire department, and city council. *See* Ex. 7 at 17-20.

On May 6, 2020, Defendants sent Huntington a letter (**Exhibit 8**) requesting that Plaintiffs produce the custodial files of these seven newly identified individuals. *See* Ex. 8 at 1-2.

6

Huntington responded on May 12, 2020 (**Exhibit 9**), denying Defendants' request as to all seven custodians on the unsubstantiated claim that discovery would be "unduly burdensome, cumulative and duplicative" and that certain of them had no relevant information.  *See* Ex. 9 at 1-2.

Huntington itself identified these people as holding relevant positions; it cannot then turn around and blithely assert that they would have no relevant documents. Each of these individuals' files are highly likely to have relevant information, as they are members of law enforcement task forces addressing opioid issues, have been involved in the Huntington Quick Response Team, are members of City Council, and/or have led the Huntington Fire Department. And, Huntington, as the party objecting to discovery on the basis that it is cumulative and duplicative, bears the burden of persuasion.  Fed. R. Civ. P. 26; *McKelvey v. W. Reg'l Jail*, 2015 WL 2144668, at *2 (S.D.W. Va. May 7, 2015).  Huntington's assertion that these files would be cumulative is mere speculation, and "[i]t is not sufficient to merely speculate that the proposed additional discovery will yield nothing new." Rules and Commentary, Fed. R. Civ. P. 26 (citing *Garcia Ramirez v. U.S. Immigration & Customs Enf't*, 331 F.R.D. 194, 197 (D.D.C. 2019)).  Accordingly, Huntington should be compelled to produce the files of the following seven individuals:

- **Paul Matovich, Police Corporal, Huntington Police Department.**
- **Stephen Maniskas, Police Corporal, Huntington Police Department.**
- **Adrian Rosario, Detective, Huntington Police Department.**
- **Greg Moore, Sergeant, Huntington Police Department.**
- **Sid Hinchman, Former Private First Class, Huntington Police Department.**
- **Charles Shaw, Huntington City Council Member.**
- **Ralph Rider, Former Deputy Fire Chief.**

Huntington has identified Mr. Matovich, Mr. Maniskas, Mr. Rosario, Mr. Moore, and Mr. Hinchman as members of the Huntington Violent Crime and Drug Task Force / FBI Task Force, and Mr. Matovich as a member of the DEA Heroin Task Force, both of which are responsible for investigating and dismantling drug trafficking organizations operating within and around

Huntington. *See* Ex. 7 at 19-20. Each of these individuals has been with the Huntington Police Department since 2011 or earlier,[9] and many of them have been recognized by the Department for their work related to drug investigations: Mr. Matovich has received a U.S. Attorney's Law Enforcement & Victim Assistance Award for his involvement in investigating heroin distribution operations in Huntington, and Mr. Hinchman received a U.S. Attorney Award for outstanding implementation of the Drug Market Intervention Initiative in Huntington, which aims to shut down open-air drug markets. Further, Mr. Matovich, Mr. Rosario, Mr. Moore, and Mr. Hinchman have each been recognized by the Huntington Police Department as Officer of the Month for various narcotics trafficking investigations.

As to these individuals, Huntington does not deny that they may have relevant documents, but rather refuses to produce their files on the claim that they would be "cumulative and duplicative" of Huntington Police Department files—some of which include documents belonging to these custodians—and other previously produced custodial files. Ex. 9 at 1–2. But the mere fact that Huntington has produced documents from the same department, some of which may include documents from the seven additional custodians, does not make these individuals' custodial files unnecessary; if anything, it points to the fact that their files are likely to contain relevant information. In fact, as members of the Huntington Violent Crime and Drug Task Force and the DEA Heroin Task Force, Mr. Matovich, Mr. Maniskas, Mr. Rosario, Mr. Moore, and Mr. Hinchman are likely to have information critical to Defendants' ability to present a defense. Their custodial files are believed to include documents responsive to several of Defendants' requests for

---

[9] Mr. Matovich has been with the Huntington Police Department since at least 2005, Mr. Maniskas and Mr. Rosario have been with the Huntington Police Department for at least a decade, Mr. Moore has been with the department since at least 2011, and Mr. Hinchman was with the Huntington Police Department for 15 years until his retirement in 2018.

production of documents (**Exhibit 10**), including, but not limited to, Request Nos. 1, 2, 4, 5, 6, 7, 9, 10, 11, 15, 16, 17, 18, 19, 22, 23, and 25. *See* Ex. 10 at 4–8. In particular, their files are likely to have information relevant to issues of proximate causation and non-party fault, including information on misconduct involving opioids in Huntington and alternate causes of the opioid epidemic, and to Huntington's costs associated with "handling opioid-related investigations, arrests, adjudications, and incarceration." Joint Third Amended Complaint (ECF No. 2595) ¶ 19.

Mr. Shaw's and Mr. Hichman's files also are relevant and non-cumulative. Huntington has identified Mr. Shaw as a current City Council Member, taking the seat vacated by Alex Vence (one of Huntington's agreed-upon custodians), and Mr. Rider as the interim Fire Chief for 2011–2012, as well as the Deputy Fire Chief of the Huntington Fire Department. *See* Ex. 7 at 19–20. Additionally, Mr. Shaw has overseen the addition of a faith-based element into Huntington's Quick Response Team ("QRT"), which offers education and treatment to individuals who have overdosed.

Huntington maintains that neither of these individuals are likely to possess documents, data, or other information relating to the allegations in this case. *See* Ex. 9 at 2. This is incorrect. As a City Council Member and participant in the QRT, Mr. Shaw is likely to have information relevant to Huntington's alleged damages, including costs to the City incurred by QRT, and to the current extent of opioid abuse in Huntington. Similarly, although Mr. Rider was Deputy Fire Chief from 2011-2012, he has been with the Huntington Fire Department since at least 2003, making him likely to have information spanning from the beginning of Plaintiffs' claims. Accordingly, both Mr. Shaw and Mr. Rider are likely to have documents pertaining to the "necessary and costly responses to the opioid crisis." Joint Third Amended Complaint (ECF No. 2595) ¶ 19. Consequently, their custodial files are believed to include documents responsive to several of

9

Defendants' Requests for Production, including but not limited to, Request Nos. 1, 4, 5, 6, 9, 10, 11, 15, 16, 17, 18, 19, 22, 23, and 25. *See* Ex. 10 at 4–8.

Given this, this Court should compel Huntington to produce these supplemental custodial files.

## CONCLUSION

For the reasons set forth above, Defendants request an order granting their Motion to Compel, and requiring the following:

1. That Plaintiffs participate in a meet and confer supervised by Special Master Wilkes wherein Plaintiffs must explain the identified deficiencies in Plaintiffs' productions.

2. That the City of Huntington produce the custodial files for the following persons it has identified as custodians:

- Paul Matovich, Police Corporal, Huntington Police Department
- Stephen Maniskas, Police Corporal, Huntington Police Department
- Adrian Rosario, Detective, Huntington Police Department
- Greg Moore, Sergeant, Huntington Police Department
- Sid Hinchman, Former Private First Class, Huntington Police Department
- Charles Shaw, Huntington City Council Member
- Ralph Rider, Former Deputy Fire Chief

In addition, the Court should order any further relief deemed necessary and appropriate.

Dated: May 15, 2020

Respectfully submitted,

***McKesson Corporation***
By Counsel:

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843

Charleston, WV 25338-3843
Telephone: (304) 345-0200

*/s/ Timothy C. Hester*
Timothy C. Hester
Mark H. Lynch
Christian J. Pistilli
Laura Flahive Wu
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
mlynch@cov.com
cpistilli@cov.com
lflahivewu@cov.com

***AmerisourceBergen Drug Corporation***
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

***Cardinal Health, Inc.***
By Counsel:

11

*/s/ Steven R. Ruby*
Brian A. Glasser (WVSB #6597)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
BAILEY GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
*Counsel in Cabell County action*

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC  20005
Tel:  (202) 434-5000
Fax:  (202) 434-5029
emainigi@wc.com
lheard @wc.com
ahardin@wc.com

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 15th day of May, the foregoing **"Memorandum in Support of Defendants' Motion to Compel Discovery Responses"** was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)