# EXHIBIT 1

**COVINGTON**

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC  20001-4956
T  +1 202 662 6000

**By Electronic Mail**                                      April 28, 2020

Anne McGinness Kearse
Temitope O. Leyimu
Motley Rice LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29464

Paul Farrell
Farrell Law
422 Ninth Street, 3rd Floor
Huntington, WV 25701

Brandon Bogle
Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.
316 South Baylen Street
Pensacola, FL 32502

All Plaintiffs' Counsel
mdl2804discovery@motleyrice.com

Re:  **Plaintiffs' Document Production Deficiencies**

Dear Counsel:

Following up on our April 17 meet and confer, we write to summarize the apparent deficiencies in Plaintiffs' document productions, which, along with other factors, make closing document discovery in two days impossible.  This summary is based on our review of the documents that Plaintiffs have produced to date.[1]  Because we do not have visibility into the sources of documents that Plaintiffs have searched or not searched, or how Plaintiffs have conducted their search, collection, and production, there may be additional deficiencies of which we are unaware.

As discussed further below, Plaintiffs' total productions include large percentages of documents that are irrelevant or duplicates, Plaintiffs' productions of custodial files are deficient and productions of departmental files are sometimes non-existent, Plaintiffs' productions demonstrate that priority custodians used personal emails to conduct official government

---

[1] The information discussed in this letter is current through April 22, 2020.

COVINGTON

April 28, 2020
Page 2

business, and Plaintiffs have in multiple cases represented that custodial files are "substantially complete" only to subsequently produce more documents from those files.

I.  **General production deficiencies.**

Although Plaintiffs tout the number of produced pages of documents, those numbers do not accurately reflect the status of their productions.

Of the 342,122 documents produced by Huntington, 149,667 are duplicates—over 43 percent. When judged by production of pages, the number is higher: 1,011,961 pages of the total 1,673,883 pages produced by Huntington are duplicates, or over 60 percent. Further, of those documents that are not duplicates, over 60 percent of those reviewed are irrelevant.

For Cabell, over half of the documents produced are irrelevant. These irrelevant documents include junk files such as image files, bin files, and ATTs. For example, CCDS_0000034, a document from the "Sheriff Tax Office and Prosecuting Attorney," is a "0 Byte File" with no native available. Plaintiffs have also included clearly non-responsive documents, such as CC911_0016006, an email about concealed carry law in West Virginia, and EMS_CCEMS_0012749 a mail-delivery-failure email memorializing the failed attempt to send an email with the subject line "Why submission ace Dustin Hazelett walked away from UFC: He was genuinely happy | MMAjunkie."

Further, Cabell has only produced 34,688 master emails across all productions, less than half as many master emails as Huntington has produced, even though Huntington has agreed to produce files from approximately the same number of custodians as Cabell has. Indeed, Cabell has produced fewer than 250 master emails from the custodial files of all but two of its priority deponents—including from the file of Gordon Merry, who has been with Cabell County EMS since its inception in 1974.

II. **Plaintiffs' agreed-upon custodial productions remain incomplete.**

A number of Plaintiffs' custodial productions are deficient on their face. Cabell represented in its April 14 Second Joint Discovery Status Report and an April 16 letter to Defendants that it had substantially completed production for all of its 48 agreed-upon custodians. Yet, as of April 22, Cabell has produced *zero* documents for ten agreed-upon custodians.[2] For 16 of the remaining 38 custodians, Cabell has produced fewer than 100 documents; for 13 of those, Cabell has produced fewer than 50 documents.

Similarly, as of April 22, 2020, Huntington has produced *zero* documents for six agreed-upon custodians.[3] For 11 of its remaining 39 custodians, Huntington has produced fewer than 100 documents; for six of those, Huntington has produced fewer than ten documents. These

---

[2] These custodians are Ottie Adkins, Betty Bates, Clayton Bates, Scott Bias, Adele Chandler, Ryan Cole, James Sheidler, Mary Beth Steele, David Wright, and Stephen Zoeller.

[3] These custodians are Carl Eastham, David Felinton, Krishawna Harless, Brandi Jacob Jones, Creig Moore, and Mike Shockley.

COVINGTON

April 28, 2020
Page 3

deficient productions belie Huntington's assertion, in Plaintiffs' Second Joint Discovery Status Report, that Huntington "has substantially completed its document productions." ECF No. 319 at 7.

When Defendants previously identified deficiencies in custodial files, Plaintiffs have responded by pointing to ranges of produced documents that they claim come from those files. For example, in its April 10 letter, Huntington provided a range of documents allegedly from the custodial files of Carl Eastham of the Huntington Fire Department. The 224 documents in that range were actually from the departmental files of the Huntington Police Department and are comprised, in large part, of emails from or to Huntington Police Department personnel. Other document ranges that Plaintiffs pointed to likewise are from the files of unrelated custodians, such as Greg Shoemaker, the Huntington West Virginia Police Department, and even custodians mysteriously labeled "321" and "322."

We have undertaken a detailed review of the document productions for Defendants' priority custodians and have found additional deficiencies. There likely are similar deficiencies in the productions for other custodians. Representative examples of the production deficiencies for Defendants' priority deponents include the following:

- **Bob Bailey, Former Cabell County Commissioner.** Cabell's representation that it has searched a County workstation and Mr. Bailey's County-provided email address for documents does not satisfy its discovery obligations. Mr. Bailey served as a Commissioner for 24 years, starting in 1994. Yet, Cabell has produced only 11 documents predating 2016. Additionally, 153 documents are newsletters from newsletters@governing.com, 28 are marked "[SPAM]," and 20 relate to articles by CNN reporter Sanjay Gupta on medicinal marijuana—in short, nearly one-third of the documents produced from Mr. Bailey's custodial file to date are not relevant on their face. Moreover, the County's representation in its April 2, 2020 letter that Mr. Bailey, "as [a] County Commissioner[], rather than as [a] full time employee[] of the County, . . . typically only use[s] the workstation provided to [him] by the County on those few days [he is] present for Commission meetings" is contrary to public statements from Mr. Bailey himself: In an interview with the Herald-Dispatch, Mr. Bailey stated that he is a "'Full-Time' Commissioner . . . [who] come[s] to work every day."[4] Defendants request that Cabell verify that Mr. Bailey did not use any personal electronic devices or email addresses to conduct County Commission-related business and/or correspondence, and that it has searched all potential sources of Mr. Bailey's electronic and hard-copy files for responsive documents.

- **Nancy Cartmill, Cabell County Commissioner.** Although Ms. Cartmill has served as the Commissioner of Cabell County for *fourteen years* (2006-present), Plaintiffs have inexplicably not produced any of her documents that predate 2016, though they have produced agenda and minutes of Commission meetings recording Ms. Cartmill's vote on

---

[4] *Cabell County Commission candidate: Bob Bailey (D)*, The Herald-Dispatch (Sept. 24, 2018), https://www.herald-dispatch.com/elections/wv_candidates/cabell-county-commission-candidate-bob-bailey-d/article_1b22f944-c007-11e8-8ec6-d3cf34cd295d.html.

COVINGTON

April 28, 2020
Page 4

> reports and requests by County citizens, agencies, and employees, including grants, payment, and other funding requests prior to 2016. Presumably, a copy of the documents on which Ms. Cartmill voted or considered in forming her opinion would be in her custodial file. This is the second time Defendants have inquired about the low volume of custodial documents produced from Ms. Cartmill's file, and the County has provided no explanation for the 2016 cutoff. More than half of the mere 264 documents Plaintiffs *did* produce from her custodial file are county news alerts. Thus, Defendants reasonably expect Ms. Cartmill to have additional relevant documents from her entire tenure as Commissioner. Defendants request that Cabell verify that Ms. Cartmill did not use any personal electronic devices or email addresses to conduct County Commission-related business and/or correspondence, and that it has searched all potential sources of Ms. Cartmill's electronic and hard-copy files for responsive documents.

- **Tom McComas, Former Sheriff, Cabell County Sheriff's Department**: On April 2, 2020, Cabell County represented that "certain data" from the files of Mr. McComas had been "lost as the result of a malware attack in 2016" to explain the minimal production from his files. But a few weeks later, the County produced 149 documents from Mr. McComas's custodial file, without explaining where these documents were found or why they were not previously produced. Nor has the County explained why the loss of "certain data" has resulted in the production of so few responsive documents from Mr. McComas's custodial files. As it stands, plaintiffs have produced only 168 custodial documents for Mr. McComas, even though he was the Sheriff for seven years.

- **Chuck Zerkle, Sheriff, Cabell County Sheriff's Department:** On April 2 and 14, Cabell represented that the production of documents from Mr. Zerkle's files was complete. Yet, on April 16, Cabell produced 325 additional documents from Mr. Zerkle's custodial files, without explaining where those documents were found or why they were not previously produced, increasing the number of his produced documents by more than 40 percent. Further, over 25 percent of the documents produced from Mr. Zerkle's files are duplicates, and nearly half of the non-duplicate documents are irrelevant.

- **Doug Adams, Deputy Chief, Cabell County Sheriff's Department**: Cabell represented on April 7 and April 14 that it completed production from Mr. Adams' custodial files, even though it has produced only 135 documents from those files. Given that Mr. Adams has been with the Cabell County Sheriff's Department since at least 2007, that is a surprisingly low number of documents.

- **Kim Wolfe, Former Sheriff, Cabell County Sheriff's Department; Former Mayor, Huntington:** Cabell has produced *zero* documents for Mr. Wolfe's files, and Huntington has produced only four documents, despite the fact that Mr. Wolfe was Cabell's Sheriff from 2001-2009 and Huntington's Mayor from 2009-2013. Cabell has represented that it is unable to locate any documents from Mr. Wolfe's files, even using "eDiscovery best practices," because he left his position as Sheriff in 2009. *See* April 2, 2020 Cabell Ltr. Cabell has not mentioned any efforts to search for Mr. Wolfe's hard-copy documents. Further, given that Cabell similarly asserted that Mr. McComas's files were also lost before locating over a hundred of his documents, Defendants request that

COVINGTON

April 28, 2020
Page 5

> Cabell verify that it has searched all potential sources of Mr. Wolfe's electronic and hard-copy files for responsive documents.
>
> - **Doug Ferguson, Former Deputy Chief, Cabell County Sheriff's Department:** Cabell represented on April 2 that the production from Mr. Ferguson's files is complete. At the time, it had produced only 24 documents from his files. Then, on April 15, it produced 113 additional documents from his files. This suggests that Cabell's representations about the production status of Mr. Ferguson's files are unreliable. Moreover, even with that April 15 production, Cabell has only produced 137 documents from Mr. Ferguson's files—many of which are newsletters and other low-value documents, *see, e.g.*, CCWVPD_0017986—and not a single document from before June 2011. Particularly given that Mr. Ferguson has been a Chief Deputy since 2009, Defendants would expect more documents to be produced.
>
> - **Gordon Merry III, Director, Cabell County Emergency Medical Services:** Cabell maintains that the production of Mr. Merry's custodial file is complete. *See* April 7, 2020 Cabell Ltr. But Cabell has produced only 711 documents from Mr. Merry's files, including only 128 of emails, even though Mr. Merry has been with Cabell County EMS since it was first introduced in 1974. Moreover, *two-thirds*—456 of 711—of the produced documents are duplicates. Additionally, there are significant temporal gaps in the production of Mr. Merry's custodial files: Cabell has failed to produce *any* documents from these files from 2006 or 2011-2015. The 2011-2015 gap is particularly concerning because of the importance of that time period to Plaintiffs' allegations.
>
> - **Ray Canafax, Deputy Chief, Huntington Fire Department:** Despite claiming, on March 23, that its production from Mr. Canafax's custodial files is "substantially complete," Huntington has produced *no* documents from those files from before 2014 (even though Mr. Canafax has been with the department since 1999) and only 198 documents total. Moreover, over *two-thirds* of the documents produced from Mr. Canafax's files are irrelevant.[5]
>
> - **Carl Eastham, Former Chief, Huntington Fire Department:** To date, *no* custodial documents have been produced from Mr. Eastham's files. Huntington concedes that Mr. Eastham's custodial production is not complete. *See* April 10, 2020 Huntington Ltr. ("Additional documents for former Chief Carl Eastham have been collected and will be produced promptly."). Although Huntington represented, in its April 10 letter, that it has produced certain documents from Mr. Eastham's custodial files, that is not the case. All the 224 documents to which Huntington points are departmental files for the Huntington Police Department, most of which are emails to large groups of people. Mr. Eastham was with the fire department for over twenty-five

---

[5] In an April 10 letter, Huntington listed documents purportedly from Mr. Canafax's files, but that list contained only six documents beyond those that Defendants have identified—and all six were outside his custodial files.

COVINGTON

April 28, 2020
Page 6

> years, and he was Chief for four of those, so it is hard to believe that no relevant documents exist for him.
>
> - **Jan Rader, Chief, Huntington Fire Department:** Although Ms. Rader has been with the Huntington Fire Department since before 2000, Huntington has produced custodial documents for her only from 2013-2019 and the year 2009. It has not produced any from before 2009 or 2010-2012.
>
> - **Skip Holbrook, Former Chief, Huntington Police Department:** Even though Mr. Holbrook was the Huntington Police Chief from 2007-2014, Huntington has produced only 103 custodial documents from his files—and only two from before 2012. Further, Huntington has not produced a single email from Mr. Holbrook's files. Such emails clearly exist: Mr. Holbrook was the sender or recipient of 322 emails produced from other custodial files.[6]
>
> - **Paul Hunter, Sergeant, Huntington Police Department; Drug and Violent Crimes Task Force:** Even though Mr. Hunter has been with the Huntington Police Department since 2010 or earlier, Huntington has produced *no* documents from his custodial files from before 2016. Particularly given that Huntington has produced over 4,000 documents from his files from 2016 onward, Defendants reasonably expect Mr. Hunter to have relevant documents from before 2016.
>
> - **Darla Bentley, Budget Director, Huntington.** Even though Ms. Bentley served as the Budget Director for Huntington Budget Office for *thirteen* years (2003-2016), Plaintiffs have produced a mere 15 emails and attachments from her custodial files. In total, Plaintiffs have produced just 904 documents from Ms. Bentley's custodial file, of which only a handful of documents (14) are from 2006 or earlier. Defendants reasonably expect Ms. Bentley to have additional relevant documents and emails for her entire tenure as Budget Director, and request that Huntington verify that it has searched all potential sources of Ms. Bentley's electronic and hard-copy files for responsive documents.
>
> - **Deron Runyon, Finance Director, Finance Division, Huntington.** Mr. Runyon served as Finance Director for the City of Huntington for six years (2009-2015). However, nearly *half* of Mr. Runyon's documents produced to date are from just two years: 2014 and 2015. Defendants reasonably expect Mr. Runyon to have additional relevant documents from 2009-2013. Additionally, Plaintiffs have produced just 37 emails and attachments from Mr. Runyon's custodial file from the years 2009, 2010, and 2011. Defendants reasonably expect Mr. Runyon to have additional relevant emails and attachments from 2009, 2010, and 2011, and request that Huntington verify that it has

---

[6] In an April 10 letter, Huntington listed documents purportedly from Mr. Holbrook's files, but that list contained only five documents beyond those that Defendants have identified—and all five were outside his custodial files.

COVINGTON

April 28, 2020
Page 7

> searched all potential sources of Mr. Runyon's electronic and hard-copy files for responsive documents.
>
> - **Pamela Chandler, Finance Director, Finance Division, Huntington.** Ms. Chandler served as Finance Director for the City of Huntington from 2015-2017. To date, Plaintiffs have produced a mere 1,542 documents from Ms. Chandler's custodial file. Bizarrely, this includes a mere 11 emails and attachments, only 7 of which appear to be from Ms. Chandler's tenure as Finance Director. Defendants reasonably expect Ms. Chandler to have additional relevant emails and attachments during her time as Finance Director for the City of Huntington, and request that Huntington verify that it has searched all potential sources of Ms. Chandler's electronic and hard-copy files for responsive documents.
>
> - **Steve Williams, Mayor, Huntington.** Huntington has produced a mere four emails and attachments from Mr. Williams's custodial file from 2013 (the year he enacted a freeze on all nonessential spending and a citywide cleanup campaign), 16 from 2014 (when he established the "River to Jail" initiative and the Mayor's Office of Drug Control Policy), 28 from 2015 (the year he established a needle exchange program), 40 from 2016 (when he joined a national task force on the opioid epidemic), and 31 from 2017 (the year he developed a $1.2 million dollar plan for a recovery center and Huntington sued Defendants). Huntington has produced only one email from Mr. Williams to Jim Johnson in 2014, though Mr. Johnson was selected that year by Mr. Williams to lead the Mayor's Office of Drug Control Policy. Defendants reasonably expect Mr. Williams to have additional relevant emails and attachments during his service as Mayor for the City of Huntington, and request that Huntington verify that it has searched all potential sources of Mr. Williams' electronic and hard-copy files for responsive documents.

### III. Plaintiffs' productions of non-custodial files are similarly deficient.

Plaintiffs' production of non-custodial departmental files are also lacking. The following are representative examples:

> - **Cabell County Sheriff's Department:** Over *80 percent* of the documents that Cabell has produced from the departmental files of its Sheriff's Department are irrelevant, including numerous incident reports that do not involve opioids. *See, e.g.*, CCDS_0007248 (incident report describing marijuana arrest). Cabell also has failed to produce *any* non-custodial emails for this department. Further, for the vast majority of documents that Cabell has produced for this department, it has produced no metadata information: no dates, file names, or other information.
>
> - **Cabell County 9-1-1 Center:** Nearly *half* of the documents that Cabell has produced from the departmental files of its 9-1-1 Center are irrelevant. Further, only 1,500 master emails have been produced from those files. Given the number of documents produced for Cabell County EMS (56,997), Defendants reasonably expect this number to be larger.
>
> - **Cabell County Commission:** Cabell's production of 98 documents, consisting of the agendas and minutes of County Commission meetings, dates back only to 2009 and

COVINGTON

April 28, 2020
Page 8

>contains only one meeting agenda for 2013, even though the Commission typically meets monthly.  Additionally, most of these documents indicate that additional records and reports from county departments and entities were placed "on the record" at Commission meetings, but none have yet been produced.

- **Huntington Fire Department:**  Huntington has produced only one document from the departmental files of its Fire Department.  In response to Defendants' March 27 letter stating as much, Huntington pointed to only four additional documents, all of which were in Jan Rader's custodial files.  *See* April 10, 2020 Huntington Ltr.  This is clearly deficient.

- **Huntington Police Department:**  Approximately *75 percent* of the documents produced from the departmental files of the Huntington Police Department are irrelevant, and 8,545 documents are junk documents.  Additionally, Huntington has produced *no* emails from before 2016 from these departmental files.

### IV. Plaintiffs must produce the personal emails of custodians who have used personal email accounts to conduct official government work.

Plaintiffs' productions demonstrate that at least several custodians, including priority custodians, have used their personal e-mail accounts to conduct official government business.  For example, Plaintiffs' productions include emails containing information on official government work from or to the personal email addresses of Ms. Rader, Mr. Zerkle, Hank Dial, and Mr. Canafax.[7]  We expect that other custodians may engage in the same practice.

Plaintiffs must therefore produce relevant emails from the personal email accounts of all custodians who use those accounts to conduct official government work.  This is particularly imperative given the small size of the custodial productions from the official government files of some of these custodians, such as Mr. Zerkle and Mr. Canafax.

### V. Plaintiffs have produced large numbers of documents from files after representing that production of those files was substantially complete.

Both Cabell and Huntington have repeatedly produced large numbers of documents from custodial and departmental files *after* representing that production from those files was substantially complete.

In Plaintiffs' April 14 Second Joint Discovery Status Report, Huntington represented that its productions were substantially complete.  Yet, since then, Huntington has produced *35,518* additional documents.  Huntington has also produced large numbers of documents from particular custodial files after representing that their productions from those files was substantially complete.  For example, Huntington informed Defendants on March 23 that

---

[7] Personal emails identified by Defendants in Plaintiffs' production include hdial9@aol.com, blazinwv122@msn.com, blazinwv@gmail.com, cnzerkle@yahoo.com, and raycanafax@yahoo.com.

COVINGTON

April 28, 2020
Page 9

production from Jan Rader's custodial file was substantially complete. At that point, Huntington had produced 5,464 custodial documents for Ms. Rader. But then, on April 16, Huntington produced 2,264 additional documents from Ms. Rader's custodial files, increasing the number of her produced documents by over forty percent.

Similarly, Cabell sent Defendants a letter on April 2 representing that production of custodial documents was substantially complete for all their agreed-upon custodians except Gordon Merry and Irv Johnson. At the time, 768 documents had been produced from Chuck Zerkle's custodial files. Yet, on April 16, Cabell produced 325 additional documents from Mr. Zerkle's custodial files, increasing the number of his produced documents by more than 40 percent. Similarly, Doug Ferguson's custodial production consisted of only 24 documents at the time that Cabell represented substantial completion on April 2.[8] Two weeks later, however, Cabell produced an additional 116 documents from Mr. Ferguson's files. Furthermore, Cabell represented that production of Nancy Cartmill's custodial file was substantially complete on March 21; yet, Plaintiffs produced nearly 30 percent of Ms. Cartmill's custodial documents after March 21.

These repeated, unexplained mismatches between Plaintiffs' representations and productions, such as those outlined above, makes it hard for Defendants to rely on those representations. This is particularly true where Plaintiffs' custodial file productions are quite small. Defendants request that Plaintiffs explain the sources of the documents that they produced after representing substantial completion, why those sources were not fully searched before Plaintiffs represented substantial completion, and whether there are additional document repositories that Plaintiffs intend to search or have chosen not to search.

Defendants are doing their utmost to proceed with discovery under the compressed litigation schedule. However, Plaintiffs' deficient document production makes it impossible to complete document discovery by April 30. And, until those issues are resolved, it is not feasible to commence depositions of even Defendants' priority witnesses, let alone other witnesses. Given the pressing discovery deadlines, we would appreciate and look forward to your prompt response.

Sincerely,

*/s/ Laura Flahive Wu*

Laura Flahive Wu

---

[8] Huntington represented in its April 10 letter that 51 documents had been produced for Mr. Ferguson. Twenty-seven of those documents have Greg Shoemaker listed as the custodian rather than Mr. Ferguson.