# EXHIBIT B





APR 3 0 2020

--------------------------

**PATRICK MORRISEY**
**ATTORNEY GENERAL**

**STATE OF WEST VIRGINIA**
**OFFICE OF THE ATTORNEY GENERAL**

**B. Allen Campbell**
**Senior Assistant Attorney General**

**HEALTH & HUMAN RESOURCES**
**LEGAL DIVISION**

**350 Capitol Street, Suite 350**
**Charleston, West Virginia 25301**

**Telephone: (304) 356-4797**
**Fax: (304) 558-1008**
**e-mail: Allen.B.Campbell@wv.gov**

April 24, 2020

**Via Electronic Mail and Regular Mail**
Sean Thomas, Esq.
Gretchen Callas, Esq.
Jackson Kelly, PLLC
500 Lee Street, Suite 1600
Charleston, WV 25301

Re:    Response to Subpoena Duces Tecum
       Civil Action No. 3:17-01362; 3:17-01665

Counsel:

Please find attached the **RESPONSE TO SUBPOENA DUCES TECUM DIRECTED TO THE OFFICE OF THE CHIEF MEDICAL EXAMINER** in the above-referenced civil action.

Documents will be provided in hard copy via U.S. Mail.

Very truly yours,

B. Allen Campbell
Senior Assistant Attorney General

Cc:    April Robertson, General Counsel (via email)
       Matthew D. Izzo, OCME

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CITY OF HUNTINGTON, *et al*.**

**v.**                                    **Civil Action No. 3:17-01362;3:17-01665**

**AMERISCOURCEBERGEN DRUG
CORPORATION, *et al*.**

### RESPONSE TO SUBPOENA DUCES TECUM DIRECTED TO
### THE OFFICE OF THE CHIEF MEDICAL EXAMINER

Comes now the West Virginia Department of Health and Human Resource,

Office of the Chief Medical Examiner ("OCME"), a non-party to this action, by counsel,

and hereby responds as follows:

### DOCUMENTS PRODUCED

1.    Organizational charts for the Medical Examiner, including those

individuals appointed or employed by You to perform autopsies and/or examinations

on Your behalf in the City of Huntington or Cabell County, West Virginia, or for deaths

that arise out of the City of Huntington or Cabell County, West Virginia.

<u>**RESPONSE**</u>

**Current Organization Charts for OCME are attached.**

2.    All Documents, including, but not limited to, databases and/or compilations

of data, discussing, referring, or relating to any and all individuals within the City of

Huntington, Cabell County, or any town, village, or city within Cabell County whose

death was attributed in whole or in part to the abuse, use, misuse, prescribing,

dispensing, sale, illegal sale, distribution, addiction to and/or diversion of Prescription

Opioids, other Controlled Substances, or Illicit Opioids including, but not limited to, all

notes, reports, investigative files, medical examiner reports, autopsy reports, toxicology reports, and death certificates.

**RESPONSE**

**Objection. This request is overly broad and unduly burdensome. Notwithstanding said objection, OCME provides the following Response. OCME does not maintain any database or compilation of documents responsive to this request. OCME only completes the medical portion of the Vital Registration Death Certificate. Vital Registration is the custodian of Death Certificates. OCME has no means to delineate case files by geographic area other than to go through every file individually. Even if such information could be curated from Vital Registration, the curated death certificates would have to be correlated with OCME archived records. The OCME files would then need to be pulled from archives for physical inspection to verify that the decedent meets the criteria for inclusion in a response. This inspection would need to be conducted by OCME staff with sufficient knowledge and expertise to make such a determination. The amount of time required to conduct and cost to conduct such a search would be extremely lengthy and exorbitant.**

**Additionally, any such "notes, reports, investigative file, medical examiner reports, autopsy reports, toxicology reports, and death certificates" are deemed confidential pursuant to West Virginia Code § 61-12-3, *et seq.*, and would require a release from the legal next of kin of the deceased. Moreover, there may be "third party" documents included within case files that the West Virginia Code prohibits releasing through production requests or subpoena.**

2

3.     All Documents, including, but not limited to, databases and/or compilations of data, discussing, referring, or relating to any and all individuals within the City of Huntington, Cabell County, or any town, village, or city within Cabell County whose Cause of Death was classified as a "drug overdose," including, but not limited to, all notes, reports, investigative files, medical examiner reports, autopsy reports, toxicology reports, and death certificates. *See* W.Va. Code§ 61-12-10(h) ("If the chief medical officer determines that a drug overdose is the cause of death of a person, the chief medical examiner shall provide notice of the death to the West Virginia Controlled Substances Monitoring Program Database Review Committee established pursuant to § 60A-9-5(b) of this code and shall include in the notice any information relating to the cause of the fatal overdose.")

**RESPONSE**

**OCME has no documents responsive to this request.  OCME does not provide documentation to the West Virginia Controlled Substances Monitoring Program Database Review Committee ("WVCSMP").  With regard to reports to the WVCSMP, it is OCMEs understanding this is accomplished by the State Registrar when a death certificate is filed with Vital Registration.**

4.     All Documents referring or relating to the unlawful use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, and/or trafficking of Prescription Opioids or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

3

**RESPONSE**

**Objection.  This request is overly broad and unduly burdensome. Notwithstanding said objection, OCME provides the following Response.  OCME does not maintain any database or compilation of documents responsive to this request. Documents of this nature would be maintained by law enforcement entities charged with these types of investigations.  OCME further objects in that while it is possible that a law enforcement report may be contained in some files, those reports are considered "third party" records prohibited from release by West Virginia Code § 61-12-8(a).  Even if the confidentiality provisions of the West Virginia Code could be overcome, a response would require a manual search be conducted of all case files to ascertain if any such references to law enforcement reports exist in archived records.**

5.     All Documents, including, but not limited to, databases and/or compilations of data, discussing, referring, or relating to any an[d] all individuals within the City of Huntington, Cabell County, or any town, village, or city within Cabell County who were administered Narcan or otherwise received overdose reversal treatment.

**RESPONSE**

**OCME has no documents responsive to this request.  Records pertaining to the administration of NARCAN are not maintained by the OCME.  The custodian of any such records would be law enforcement and/or Emergency Medical Services.  While it is possible that a law enforcement or Emergency Medical Services Report may be contained in some decedent files, OCME is prohibited by law from redisclosing those records pursuant West Virginia Code § 61-12-8(a).**

4

**Those records must be obtained from their source.  Moreover, even if the confidentiality provisions of the West Virginia Code could be overcome, a response would require a manual search of all decedent case files to ascertain if any such references exist to the requested third party information.  Such a search is overly broad and unduly burdensome.**

6.    All Documents discussing or identifying the source(s) of Illicit Opioids consumed in the City of Huntington, Cabell County, or any town, village, or city within Cabell County, including, but not limited to, all Documents identifying China, Mexico, or other actors as responsible for transporting Illicit Opioids.

**<u>RESPONSE</u>**

**OCME has generated no documents responsive to this request.  To the extent that a decedent file may contain a law enforcement document, see Objection to Request Number 5, above.  Furthermore, should a decedent case file contain a public document such as a newspaper clipping that may be responsive, a response would require a manual search be conducted of all decedent files to ascertain if any such references exist.  Such a search is overly broad and unduly burdensome.**

7.    All Communications between You and the West Virginia Controlled Substances Monitoring Program Database Review Committee discussing, referring, or relating to any and all individuals within the City of Huntington, Cabell County, or any town, village, or city within Cabell County whose cause of death was classified as a "drug overdose."

5

**RESPONSE**

**OCME has no documents responsive to this request.**

8.     All Documents, including, but not limited to, databases and/or compilations of data, discussing, referring, or relating to any and all individuals within the City of Huntington, Cabell County, or any town, village, or city within Cabell County whose cause of death was classified as an "unintentional pharmaceutical drug overdose," including, but not limited to, all notes, reports, investigative files, medical examiner reports, autopsy reports, toxicology reports, and death certificates. *See* W. Va. Code § 61-12A-2(a)(l) ("An unintentional pharmaceutical drug overdose fatality review panel [shall be established] to examine, analyze and review deaths resulting from unintentional prescription or pharmaceutical drug overdose.")

**RESPONSE**

**OCME has no documents responsive to this request.  The Unintentional Prescription Drug Overdose Review Panel (UPDORP) was not convened and has never conducted any business or meetings.**

9.     All Communications between You and the Fatality and Mortality Review Team discussing, referring, or relating to any and all individuals within the City of Huntington, Cabell County, or any town, village, or city within Cabell County whose cause of death was classified as an "unintentional pharmaceutical drug overdose."

**RESPONSE**

**OCME has no documents responsive to this request.  Some members of the Fatality and Mortality Review Team are housed at the OCME and are subdivided into Child Fatality and Domestic Violence Teams. Reviews by these**

6

**team members are retroactive and not completed in real time.  They are not permitted to review any case until the case is closed.  Some members of the Fatality and Mortality Review Team have limited access to review autopsy and toxicology reports internally, but the information is deidentified and aggregated for the final report that annually goes to the Legislature.  Any reports provided to Team Members are destroyed with all of their reviewed material from any source. Any records utilized by the Fatality and Mortality Review Team are protected from disclosure pursuant to West Virginia Code § 61-12A-4(a).**

10.   All Documents discussing, referring, or relating to Your or Plaintiffs' involvement in drafting, assessing, introducing, lobbying for, implementing, administering, and/or monitoring compliance with legislation, statutes, rules, regulations, or guidelines relating to Prescription Opioids or Illicit Opioids.

**RESPONSE**

**OCME has no documents responsive to this request.**

11.   All Documents discussing, referring, or relating to Your involvement or participation with the Fatality and Mortality Review Team as it relates to unintentional pharmaceutical drug overdose fatalities.

**RESPONSE**

**Objection.  Any records utilized by the Fatality and Mortality Review Team are protected from disclosure pursuant to West Virginia Code § 61-12A-4(a).**

12.   All Documents discussing, referring, or relating to Your procedures, policies, or protocols regarding the investigation of a drug overdose death, completing and filing death certificates, performing autopsies, determining the history of

7

prescription medication use of a decedent, determining manner of death, determining cause of death, and performing post-mortem toxicology analysis, including, but not limited to, all manuals and handbooks.

### RESPONSE

**OCME has no procedures, policies, or protocols specific to the investigation of drug overdose deaths. Additionally, OCME has no handbooks or instructions for the Forensic Pathologists regarding the performance of autopsies, determination of cause and manner of death, performing toxicological analysis, or completing death certificates as these procedures are conducted by the Board Certified Forensic Pathologists in accordance with their individual experience, training and standards of medical practice. OCME obtains available prescription medication information from the Board of Pharmacy. OCME may also utilize decedent medical records as needed. OCME is continuing to search for documents responsive to this request and will submit a supplemental response should any be found.**

13. All Documents discussing, referring, or relating to Your policies, procedures or protocols for use of the West Virginia Controlled Substances Monitoring Program.

### RESPONSE

**OCME does not have any documents that are responsive to this request.**

14. All Documents discussing, referring, or relating to Your involvement, compliance, participation, or use of the West Virginia Controlled Substances Monitoring Program.

8

**RESPONSE**

**OCME does not have any documents that are responsive to this request.**

15.   All Documents discussing, referring, or relating to Your involvement, communication, compliance, or participation with the West Virginia Controlled Substances Monitoring Program Database Review Committee.

**RESPONSE**

**The Chief Medical Examiner and Chief Administrator have attended committee meetings held by the WVCSMP, but OCME maintains no written records with regard to such attendance that are responsive to this request.**

16.   All reports created by You or on Your behalf related to the abuse, use, misuse, overdose, prescribing, dispensing, sale, illegal sale, distribution, addiction to and/or diversion of Prescription Opioids, other Controlled Substances, or Illicit Opioids in the State of West Virginia, including all data and source materials used to create those reports.

**RESPONSE**

**Objection.  This request is overly broad.  OCME requests a more definitive definition of the term "reports" as utilized in this request.  OCME will supplement its response upon clarification.**

17.   All Documents discussing, referring, or relating to Your Annual Reports or other summary or synopsis provided to the State of West Virginia, including the legislature or an agency of the state.

**RESPONSE**

**OCME does not have any documents that are responsive to this request.**

9

18.   All Documents discussing, referring, or relating to presentations, Power Points, summaries or reports related to the abuse, use, misuse, overdose, prescribing, dispensing, sale, illegal sale, distribution, addiction to and/or diversion of Prescription Opioids, other Controlled Substances, or Illicit Opioids in the State of West Virginia.

**RESPONSE**

**OCME is still researching this request and will provide a supplemental response upon completion.**

19.   All Documents discussing, referring, or relating to Your or Plaintiffs' knowledge of the prescribing, dispensing, use, misuse, abuse, overdose, sale, diversion, production, distribution, or trafficking of Prescription Opioids or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

**RESPONSE**

**OCME does not have any documents that are responsive to this request.**

20. All Communications between You and Plaintiffs discussing, referring, or relating to the prescribing, dispensing, use, misuse, abuse, overdose, sale, diversion, production, distribution, or trafficking of Prescription Opioids or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

**RESPONSE**

**OCME does not have any documents that are responsive to this request.**

21. All Documents discussing, referring, or relating to Your or Plaintiffs' efforts, including, but not limited to, any programs or task forces that You or Plaintiffs

10

have developed to combat the unlawful prescribing, dispensing, use, misuse, abuse, overdose, sale, diversion, production, distribution, purchase, or trafficking of Prescription Opioids or Illicit Opioids within the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

   **RESPONSE**

   **OCME has no documents responsive to this request.**

   22. All Documents discussing, referring, or relating to Your or Plaintiffs' collaborations or partnerships with any local, state, or federal agency, organization, or task force to combat the unlawful prescribing, dispensing, use, misuse, abuse, overdoses, sale, diversion, production, distribution, purchase, or trafficking of Prescription Opioids or Illicit Opioids within the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

   **RESPONSE**

   **OCME is still researching this request and will provide a supplemental response upon completion.**

   23. All Documents discussing, referring, or relating to Your or Plaintiffs' Communications with any local, state, or federal agency, organization, or task force to combat the unlawful prescribing, dispensing, use, misuse, abuse, overdose, sale, diversion, production, distribution, purchase, and trafficking of Prescription Opioids or Illicit Opioids within the City of Huntington, Cabell County, or any town, village, or city within Cabell County, including, but not limited to, all Communications between You and any such agency, organization, or task force.

**RESPONSE**

**OCME is still researching this request and will provide a supplemental response upon completion.**

24.   All Documents discussing, referring, or relating to recommendations for actions to be taken by You or Plaintiffs to combat the unlawful prescribing, dispensing, use, misuse, abuse, overdose, sale, diversion, production, distribution, purchase, or trafficking of Prescription Opioids or Illicit Opioids within the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

**RESPONSE**

**OCME is still researching this request and will provide a supplemental response upon completion.**

25.   All Documents discussing, referring, or relating to any Defendant, including, but not limited to, all Communications between You or Plaintiffs and any Defendant.

**RESPONSE**

**OCME is still researching this request and will provide a supplemental response upon completion.**

26.   All Communications with any manufacturer, distributor, or dispenser of Prescription Opioids related to Prescription Opioids, including (a) marketing and distribution, (b) risks and benefits, (c) safety outcomes, and (d) abuse, misuse, addiction, or diversion.

**RESPONSE**

**OCME does not have any documents responsive to this request.**

12

27.    All Documents referring or relating to any Defendant, including, but not limited to, all Communications between You and any Defendant.

**RESPONSE**

**OCME is still researching this request and will provide a supplemental response upon completion.**

28.   All Documents relating to any transaction between You or any Plaintiff and any manufacturer, distributor, or dispenser of Prescription Opioids regarding Prescription Opioids.

**RESPONSE**

**OCME does not have any documents responsive to this request.**

29.   All Documents reflecting Your finances, including but not limited to, budgets, expense reports, financial reports, and Documents concerning Your funding.

**RESPONSE**

**OCME's budget is managed by the Bureau for Public Health's Central Finance Office.   The Bureau for Public Health is the custodian of any such records.**

30.    All Documents and Communications that describe, refer, evidence, or relate to any cost, expenditure, damage, loss, or harm You incurred providing opioid-related services.

**RESPONSE**

**OCME has no documents responsive to this request.**

31.   All Documents relating to the money damages and other relief (if any) You or any Plaintiff is seeking in this action related to the services You provide or

have provided in connection with the use, misuse, abuse, or overdose of Prescription Opioids or Illicit Opioids.

**RESPONSE**

**OCME does not have any documents responsive to this request. OCME is not a party to this action.**

32. If not already produced in response to the requests herein, all custodial records of the following past and present employees:

- Dr. Allen Mock – Chief Medical Examiner
- Dr. James C. Kraner – Chief Toxicologist
- Jim Hanshaw - Chief Medical Investigator
- Matthew Izzo - Administrator

**RESPONSE**

**Objection. This request is overly broad and unduly burdensome. OCME requests a more specific definition of "custodial records." As stated, the request is so broad as to not be proportional to the subject matter of the litigation.**

33. All Communications between You and any person or entity that are responsive to any request listed above (Nos. 1 through 32), including, but not limited to, all communications regarding Illicit Opioids, Prescription Opioids, diversion, and the opioid epidemic.

**RESPONSE**

**Objection. This request is overly broad and unduly burdensome.**


Respectfully Submitted,

WV Department of Health and Human Resources, Office of the Chief Medical Examiner

14

*By Counsel*

PATRICK MORRISEY,
ATTORNEY GENERAL


B. ALLEN CAMPBELL
SENIOR ASSISTANT ATTORNEY GENERAL
W. VA. Bar ID # 6557
350 Capitol Street, Room 350
Charleston, West Virginia 25301
(304) 356-4797 (phone)
(304) 558-1008 (fax)
Allen.B.Campbell@wv.gov

M. CLAIRE WINTERHOLLER (WVBID 5589)
ASSISTANT ATTORNEY GENERAL
W. Va. Bard ID # 5589
350 Capitol Street, Suite 702
Charleston, West Virginia 25301-3712
(304) 356-4134 (phone)
(304) 558-1035 (fax)
M.Claire.Winterholler@wv.gov
*Counsel for Non-Party Office of the Chief Medical Examiner*

15



Commissioner BPH
Dr. Catherine Slemp
Deputy Commissioner
Walt Ivey
Chief Medical Examiner
Dr. Allen Mock
Chief Administrator Office Director
Matt Izzo
To OCME Administration Organizational Chart
Chief Toxicologist
Vacant
See OCME Admin Org Chart
First Deputy Chief Medical Examiner
Dr. Piotr Kubiczek
Deputy Chief Medical Examiner
Dr. Donald Pojman
Deputy Chief Medical Examiner
Vacant
Deputy Chief Medical Examiner
Dr. C. Metin Savasman
Deputy Chief Medical Examiner
Vacant
Deputy Chief Medical Examiner
New Position
Deputy Chief Medical Examiner
New Position
Physician's Assistant
Christy Lively-Harris (CDC)
Forensic Neuropathologist Part-Time Consult
Dr. Fahad Bafakih
Chief Dental Examiner Part-Time Consult
Dr. John Carson
Forensic Anthropologist Part Time Consult
Univ. of Tennessee
Forensic Pathologist Part Time
Dr. Jonathan Arden
Forensic Pathologist LOCUM
Dr. Anne Bucholtz
Forensic Pathologist LOCUM
Dr. Paul Mellen
Forensic Pathologist Part Time
Dr. Jacqueline Benjamin (CDC)
Forensic Pathologist Part Time
Dr. Thomas Young (CDC)
Forensic Pathologist Part-Time
Dr. Carolyn Revercomb
Forensic Pathologist Part-Time
Dr. Elizabeth Rouse (CDC)
Forensic Pathologist Part-Time
Dr. Jimmie Smith (CDC)

# OCME Organizational Chart (Non-Physician)

