IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

THE CITY OF HUNTINGTON,
    Plaintiff,

v.     CIVIL ACTION NO. 3:17-01362

AMERISOURCEBERGEN
DRUG CORPORATION, et al.,
    Defendants.

---

CABELL COUNTY COMMISSION,
    Plaintiff,

v.     CIVIL ACTION NO. 3:17-01665

AMERISOURCEBERGEN
DRUG CORPORATION, et al.,
    Defendants.

---

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
TO COMPEL DISCOVERY RESPONSES FROM THE
<u>OFFICE OF THE CHIEF MEDICAL EXAMINER</u>**

Defendant AmerisourceBergen Drug Corporation ("Defendant") seeks the production of documents and communications responsive to Defendant's Subpoena to Produce Documents, Information, or Objections (the "Subpoena") to the Office of the Chief Medical Examiner ("OCME") served on February 24, 2020. Defendant granted the OCME several short extensions to respond to the Subpoena, ultimately extending the deadline to respond to April 24, 2020. A copy of the Subpoena is attached as Exhibit A.

Defendant issued this Subpoena because Plaintiffs allege that Defendants caused thousands of opioid-related deaths in West Virginia. The OCME has investigated the cause of death for many of the individuals who were determined to have died from a drug overdose. Defendants seeks information related to these investigations because the information is directly relevant to Plaintiffs' claims that Defendants caused the deaths.

On April 24, 2020, Defendant received formal responses and objections to the Subpoena. *See* Exhibit B (April 24, 2020 Resp. to Subpoena). Prior to receiving the OCME's formal objections, Defendant met and conferred with the OCME and discussed the OCME's production with Counsel by phone and email numerous times. Although the OCME does not contend that Defendant's requests are irrelevant, it has thus far refused to produce any documents contained in decedent case files and indeed has produced only *two documents* responsive to the Subpoena— organizational charts for the OCME Administration and non-physician personnel. The OCME's two primary objections—that the requests are "overly broad and unduly burdensome," and that certain documents are barred by statute from being released—are unavailing, and do not justify the OCME's refusal to produce responsive documents. For the reasons discussed below, the Court should grant Defendant's motion to compel.

## I. Background

The "primary functions" of the OCME "are to perform death investigations, establish cause and manner of death, formulate conclusions, opinion or testimony in judicial proceedings. . . ."[1] All deaths in West Virginia that occur "by apparent suicide, or suddenly when in apparent good health . . ." need be reported to the OCME. W. Va. Code § 61-12-8(a). These deaths may then be investigated by the OCME to determine the cause or manner of death. Further, "[i]f the chief

---

[1] *Welcome*, Office of the Chief Medical Examiner, https://dhhr.wv.gov/ocme/Pages/default.aspx (attached as Exhibit C).

medical officer determines that a drug overdose is the cause of death of a person, the chief medical examiner shall provide notice of the death to the West Virginia Controlled Substances Monitoring Program Database Review Committee established pursuant to § 60A-9-5(b) and shall include in the notice any information relating to the cause of the fatal overdose."

Plaintiffs' Complaint attributes thousands of opioid related deaths in West Virginia to Defendants. Of note, Plaintiffs allege that:

- "Defendants' conduct in promoting and facilitating opioid use and thereby causing addiction, abuse, overdose and **death** has had severe and far-reaching public health, social services, and criminal justice consequences, including the fueling of addiction and overdose from illicit drugs such as heroin." Third Amended Complaint 17, ¶ 19, ECF 194, *City of Huntington et al. v. AmerisourceBergen Drug Corporation et al.*, 3:17-CV-1263 (emphasis added).

- "Defendants intentionally, unreasonably, and/or unlawfully deceptively marketed and/or pushed as many opioids onto the market as possible, fueling addiction to and diversion of these powerful narcotics, resulting in increased addiction and abuse, an elevated level of crime, **death** and injuries to the residents of Plaintiffs' Community. . ." *Id.* 427, ¶ 1418 (emphasis added).

- "As the volume of prescription opioids flooding into West Virginia increased, so, too, did the **death toll**." *Id.* 10, ¶ 5 (emphasis added).

"According to the CDC, in 2016, 884 people **died of drug overdoses** in West Virginia, for a rate of 52.0 per 100.000 people making it the State with the highest overdose death rate in the United States." *Id.* 342, ¶ 1154 (emphasis added).

By virtue of these allegations, Plaintiffs have placed the cause of death for **<u>all</u>** individuals that have died of a drug overdose in Cabell County and/or the City of Huntington at issue in this litigation. Plaintiffs' allegations necessitate an examination into cause of death determinations for individuals whose death was attributed to drugs, and Defendants cannot adequately defend themselves against Plaintiffs' claims without access to such information. Accordingly, Defendant seeks information related to the OCME's cause of death investigations that involved drug overdoses.

On February 24, 2020, Defendant served the Subpoena on the OCME, seeking information concerning the OCME's role in reviewing and investigating causes of deaths as well as their understanding and knowledge of overdose deaths in West Virginia (and more specifically Cabell County and the City of Huntington). To date, the OCME has produced only two documents responsive to the Subpoena, neither of which relate to drug overdose deaths.

## II.     Applicable Law

The Federal Rules of Civil Procedure permit a party to issue subpoenas for the production of documents from nonparties. *See* Fed. R. Civ. P. 45(a)(1)(C); Fed. R. Civ. P. 34(c). Pursuant to Rule 45(d)(2)(B)(i), "[a]t any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection."

## III.    Defendant's Priority Requests

Defendant's requests are highly relevant to the central issues Plaintiffs present in this litigation. Defendant has further prioritized its requests in an attempt to understand the OCME's role and involvement in investigating overdose deaths as well as its understanding and knowledge of opioid use/misuse in West Virginia. Defendant also seeks information collected and prepared by the OCME relating to overdose deaths and opioid use.

At issue in the present Motion are Defendant's four priority requests: Request Nos. 2, 4, 16, and 32. These requests seek information relating to the prevalence of overdose deaths in Cabell County and/or the City of Huntington and, more importantly, how those determinations are made. This information is critical to Defendant's ability to defend itself against the claims in Plaintiffs' Complaint.

## IV. The OCME's Objections Fail to Justify Its Failure to Respond to Defendant's Subpoena

The two primary objections cited by the OCME in response to the Subpoena are that: (1) the requests are overly broad and unduly burdensome, and (2) some of the documents requested by Defendant are statutorily protected from being released to Defendant. Neither objection justifies the OCME's complete refusal to produce documents. First, burden is not a complete defense to production, and Defendant has made significant concessions in an attempt to reduce the purported burden on the OCME. Second, although there may be limited documents that are prohibited from being released by the OCME, the vast majority of documents requested by Defendant remain available and should be produced.

### A. All Documents Relating to Cause of Death Determinations for Overdose Deaths Should be Produced

**Request #2:**

The first priority request is Request No. 2, which seeks:

> All Documents, including, but not limited to, databases and/or compilations of data, discussing, referring, or relating to any and all individuals within the City of Huntington, Cabell County, or any town, village, or city within Cabell County whose death was attributed in whole or in part to the abuse, use, misuse, prescribing, dispensing, sale, illegal sale, distribution, addiction to and/or diversion of Prescription Opioids, other Controlled Substances, or Illicit Opioids including, but not limited to, all notes, reports, investigative files, medical examiner reports, autopsy reports, toxicology reports, and death certificates.

Documents responsive to this Request clearly are relevant and discoverable. Section 61-12-10(a) requires that a "full record and report of the findings developed by the autopsy shall be filed with the office of the chief medical examiner by the person making the autopsy." W. Va. Code § 61-12-10(a). "The office of the chief medical examiner shall keep full, complete and properly indexed records of all deaths investigated, containing all relevant information concerning the death and the autopsy report if an autopsy report is made." *Id.* § 61-12-10(c). And, "[c]opies

5

of these records or information shall be furnished, upon request, to any court of law, ***or to the parties therein to whom the cause of death is a material issue*** . . . ." *Id.* § 61-12-10(d) (emphasis added). As discussed above, Plaintiffs' allegations attribute countless overdose deaths to Defendants. *See supra* Part I. Plaintiffs allege that Defendants "facilitated opioid use" and "pushed as many opioids onto the market as possible," drawing an alleged connection between prescription opioids and overdose deaths. *Id.* Defendant's request falls squarely into those authorized by W. Va. Code § 61-12-10(d) as Plaintiffs have made the OCME's cause of death determinations a material issue.

The OCME objected to Request No. 2, stating that Defendant's request was overly broad and unduly burdensome because the OCME does not maintain responsive databases or compilations and completes only a portion of death certificates. Ex. B at 2. The OCME further contends that release of "notes, reports, investigative files, medical examiner reports, autopsy reports, toxicology reports and death certificates" are "deemed confidential pursuant to West Virginia Code § 61-12-3, *et seq.*, and would require release from the legal next-of-kin of the deceased." Neither objection justifies the OCME's refusal to produce responsive documents.

First, the burden associated with complying with the Subpoena does not completely excuse the OCME from searching for and producing responsive documents. A party receiving a subpoena under Rule 45 has an obligation to collect and produce responsive documents, and while Defendant understands that the OCME may not have responsive documents prearranged in a database for production, Defendant has discussed various alternatives with the OCME to reduce the number of files needed for review. This includes utilizing databases or compilations of drug overdose data.[2]

---

[2] *See, e.g.*, W. Va. Code § 61-12-10(j) ("If the chief medical officer determines that a drug overdose is the cause of death of a person, the chief medical examiner shall provide notice of the death to the West Virginia Controlled Substances Monitoring Program Database Review Committee established pursuant to § 60A-9-5(b) and shall include in the notice any information relating to the cause of the fatal overdose.).

6

Several such compilations appear to exist.  The OCME, along with the West Virginia Department for Health and Human Resources, Bureau for Public Health and the West Virginia Health Statistics Center, "have maintained a collaboration of documenting drug-related overdose death data for each specific drug detected from toxicology results and recorded on death certificates."[3]  Plaintiffs cite to this report in their Complaint.  *See* Third Amended Complaint ¶ 1156, n.490, (Dkt. 194).

Similarly, the West Virginia University School of Pharmacy and the West Virginia Center for Drug and Health Information have maintained a database in collaboration with the OCME since 2005, which includes "decedent's demographic information, cause of death, toxicology testing results, other medical conditions present and recent prescriptions for controlled substances."[4]  This database has been highly praised because "[West Virginia's] medical examiners pinpoint the cause of every drug-related death, and the relevant facts populate a statewide forensic drug database maintained at the WVU Health Sciences Center."[5]  Yet, the OCME has advised Defendant that no documents relating to such databases or compilations exist.

The OCME has stated that the only way it can locate information related to Subpoena would be to review case files one-by-one and that it would need a list of decedent names and/or file numbers to undertake this review.  If that is true, Defendant is willing to collaborate with the OCME to develop such a list, including, if necessary, by reviewing death certificates from Cabell County and the City of Huntington to filter out those listing drugs as either the immediate cause of death, the underlying cause of death, or another significant condition contributing to the death but not resulting in the underlying cause.  Cabell County has produced approximately 12,000 death

---

[3] *West Virginia Drug Overdose Deaths Historical Overview 2001-2015*, Department of Health and Human Resources 5, https://dhhr.wv.gov/oeps/disease/ob/documents/opioid/wv-drug-overdoses-2001_2015.pdf (attached as Exhibit D).
[4] *Fentanyl deaths up 122 percent in West Virginia, say WVU* researchers, WVUTODAY, https://wvutoday.wvu.edu/stories/2019/04/16/fentanyl-deaths-up-122-percent-in-west-virginia-say-wvu-researchers (attached as Exhibit E).
[5] *Id.*

certificates dating from 2006 to 2012, which Defendant has reviewed. Plaintiffs intend to provide Defendant with additional death certificates for years 2013 to present in the coming weeks. In addition to receiving and using databases such as those described above, Defendant would agree to provide a list of decedents compiled from death certificates to guide the OCME's review and production.

Second, the law does not require that legal next-of-kin release the requested information. The OCME has cited Section 61-12-3, *et seq.*, but that provision does not require release from the legal next-of-kin of the deceased. The rights of the legal next-of-kin to OCME records can be found in W. Va. State Rule § 64-84, which states that the "OCME shall release records and information obtained by the OCME investigation to the next-of-kin, the executor or administrator of the estate, or to any designee specified by the next-of-kin or executor of administrator of the estate, upon their written request . . . ." W. Va. State Rule § 64-84-18.2. This regulation provides for the release of information to the next-of-kin upon the conclusion of the OCME's investigation. It does not prevent, or even pertain to, the release of information to Defendants. Instead, Section 64-84-18.1 provides the overarching rule pertaining to the release of information. This section states that "[a]utopsy and investigation findings, results of ancillary studies performed by or at the request of the OCME and all case file documents created by the process of death investigation by this office are confidential records and information, **disclosed only as specified under WV Code §§ 61-12-8, 61-12-10, 61-12-13 and 61-12A-3.**" W. Va. State Rule § 64-84-18.1 (emphasis added). As discussed above, documents sought by Defendant are being requested pursuant to W. Va. Code § 61-12-10, which is expressly authorized by this regulation.

Defendant, therefore, seeks production of all case file documents related to investigations performed by the OCME where cause of death was attributed to opioids, including all notes,

8

reports, investigative files, medical examiner reports, autopsy reports, toxicology reports, and death certificates. Defendant also seeks any other database that the OCME contributes to and all information related to the abovementioned databases and/or compilations.

### B. "Third Party" Records Should be Recorded in a Privilege Log to be Produced to Defendant

**Request #4:**

In the second priority request, Request No. 4, Defendant seeks:

All Documents referring or relating to the unlawful use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, and/or trafficking of Prescription Opioids or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

The OCME states that it is prohibited from releasing "third party" records and, even if the confidentiality provisions could be overcome, "a response would require a manual search to be conducted of all case files to ascertain if any such references to law enforcement reports exist in archived records." *Id.* Defendant recognizes that certain case file documents may be prohibited from being released. Such protection, however, is limited to investigation records and/or records related to therapeutic, corrective, or medical treatment, obtained from law enforcement agencies, state or regional correctional facilities, and treatment centers. W. Va. Code § 61-12-8(a).

To the extent that files responsive to **any** of Defendant's Requests are prohibited from being produced by Section 61-12-8(a), Defendant requests that the OCME create a privilege log describing each document, including the agency, entity or individual who provided it, the date of the document, and a short description of the document. *See* Fed. R. Civ. P. 45(e)(2)(A) (requiring a person withholding subpoenaed information under a claim of privilege to "(i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim").

The OCME's response and objections to Request No. 4 also assumes that all information being requested would be found in individual's case files. However, Defendant seeks all documents responsive to this request relating or referring to "the unlawful use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, and/or trafficking" of opioid drugs within Plaintiffs' communities. Information sought in this request is not likely to be specific to any particular individual and, therefore, review and production of requested documents will not require "a manual search to be conducted of all case files." And, to the extent that such documents are contained in individual files, Defendant is willing to provide the list discussed above to narrow the focus and reduce the burden on the OCME in producing these files. Defendant, therefore, requests that the OCME be compelled to produce all documents, including emails or reports from other state agencies not otherwise restricted that are responsive to Defendant's Request No. 4.

### C. Requests Seeking Clarification and/or Definition for Terms Used

For the remaining two priority requests, the OCME requests "a more definitive definition" of terms used in the Subpoena. Defendant responds to each of the OCME's requests as follows:

**Request #16:**

> All reports created by You or on Your behalf related to the abuse, use, misuse, overdose, prescribing, dispensing, sale, illegal sale, distribution, addiction to and/or diversion of Prescription Opioids, other Controlled Substances, or Illicit Opioids in the State of West Virginia, including all data and source materials used to create those reports.

The OCME seeks a more definitive definition of the term "reports" as used in this request. "Reports," as used throughout the Subpoena, includes any document or correspondence that discusses data, findings or information related to topics identified in the request. Reports also include spreadsheets or emails that discuss findings by the OCME related to the prevalence of cases reviewed by them that relate to opioid drugs and/or any other topic included in the request.

10

Other examples of "reports" would be any document that quantifies the OCME's work, including references to an increase or decrease of opioid-related deaths or other deaths where opioid drugs were found to be a contributing factor. Additionally, any document, including any correspondence related to an increase in opioid related deaths would also be responsive to Request No. 4.

**Request #32:**

>If not already produced in response to the requests herein, all custodial records of the following past and present employees:
>
>- Dr. Allen Mock – Chief Medical Examiner
>- Dr. James C. Kraner – Chief Toxicologist
>- Jim Hanshaw – Chief Medical Investigator
>- Matthew Izzo – Administrator

The OCME seeks clarification on the definition of "custodial records" for purposes of responding to Request No. 32. As used by Defendant in this request, "custodial records" are documents containing discussions of policies and procedure, matters that affect the operations of the OCME as well as opinions and/or findings relating to opioid overdose deaths within the jurisdiction of the OCME.

Defendant has responded to the OCME clarifying the definitions of "reports" and "custodial records" but, to date, has not received a response from the OCME.

### V. Supplemental Productions by the OCME

There are several requests[6] wherein the OCME responded that it is "continuing to search for documents responsive to this request and will submit a supplemental response should any be found" or are "researching this request and will provide a supplemental response upon completion." Defendant continues to meet and confer with the OCME regarding its supplemental production of documents.

---

[6] *See* Response to Request Nos. 12, 18, 22, 23, 24, 25, and 27 (Exhibit B).

## VI. Conclusion

These requests have been prioritized to focus on reducing the burden on the OCME in responding to the Subpoena. For the reasons set forth above, the Court should grant Defendant's Motion to Compel Discovery Responses from the Office of the Chief Medical Examiner and order the OCME to produce all documents responsive to Request Nos. 2, 4, 16, and 32 and to supplement its production to Request Nos. 12, 18, 22, 23, 24, 25, and 27.

Dated: May 15, 2020

Respectfully submitted,

*AmerisourceBergen Drug Corporation*
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

THE CITY OF HUNTINGTON,
 Plaintiff,

v.             CIVIL ACTION NO. 3:17-01362

AMERISOURCEBERGEN
 DRUG CORPORATION, et al.,
 Defendants.

---

CABELL COUNTY COMMISSION,
 Plaintiff,

v.             CIVIL ACTION NO. 3:17-01665

AMERISOURCEBERGEN
 DRUG CORPORATION, et al.,
 Defendants.

## **CERTIFICATE OF SERVICE**

 I hereby certify that on May 15, 2020 Defendant's Memorandum in Support of Defendant's Motion to Compel Discovery Responses from the Office of the Chief Medical Examiner was sent to Counsel for the Plaintiffs and Defendants using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.  Notice of Defendant's Memorandum has been sent to Counsel for the Office of the Chief Medical Examiner, Allen Campbell and M. Claire Winterholler, by electronic mail to the following e-mail addresses: Allen.B.Campbell@wv.gov; and M.Claire.Winterholler@wv.gov.

               */s/ Gretchen M. Callas*
               Gretchen M. Callas (WVSB # 7136)