AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Southern District of West Virginia

| | |
|---|---|
| City of Huntington; Cabell County Commission )<br>*Plaintiff* )<br>v. )<br>AmerisourceBergen Drug Corporation, et al. )<br>)<br>*Defendant* ) | Civil Action No. 3:17-01362; 3:17-01665 |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: AMERICAN MEDICAL ASSOCIATION
C/O Erin Sutton, Associate Counsel, Office of General Counsel

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:   SEE ATTACHMENT A

| Place: American Medical Association<br>330 N. Wabash Ave., Suite 39300<br>Chicago, IL 60611 | Date and Time:<br>07/15/2020 10:00 am |
|---|---|

The deposition will be recorded by this method: Stenography and Video

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:   SEE ATTACHMENT B

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 05/19/2020

*CLERK OF COURT*

OR

_____    _____
*Signature of Clerk or Deputy Clerk*    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Cardinal Health, Inc
David R. Pogue, Carey, Scott, Douglas & Kessler, PLLC            , who issues or requests this subpoena, are:
707 Virginia Street, East, Charleston, WV 25301; drpogue@csdlawfirm.com; 304-345-1234

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

## DEFINITIONS

The following terms shall have the meanings set forth below. Notwithstanding any definition set forth below, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Rules of Procedure for the Southern District of West Virginia.

1. "You" and "Your" refers to the American Medical Association ("AMA"), and all others acting or purporting to act on AMA's behalf, including any affiliates, programs, employees, directors, agents, contractors, representatives, board members, committees, subcommittees, working groups, and task forces.

2. "Communication" has the full meaning ascribed to it by Local Rule of Civil Procedure 26.2(c)(1), and means any transmission of information (whether formal or informal) by one or more Persons and/or between two or more Persons by means including, but not limited to, telephone conversations, letters, faxes, electronic mail, text messages, instant messages, other computer linkups, written memoranda, and face-to-face conversations.

3. "Defendants" means all defendants named in *City of Huntington v. AmerisourceBergen Drug Corp., et al.*, Civil Action No. 3:17-01362, and *Cabell County Commission v. AmerisourceBergen Drug Corp., et al.*, Civil Action No. 3:17-01665, as of the date of this notice, and their present or former officers, directors, shareholders, employees, agents, representatives, counsel and all persons and entities acting or purporting to act under their control or on their behalf.

4. "Person" has the full meaning ascribed to it by Local Rule of Civil Procedure 26.2(c)(6), and means any natural person or any business, legal or governmental entity or association.

5. "Prescription Opioids" means FDA-approved pain-reducing medications that consist of natural, synthetic, or semisynthetic chemicals that bind to opioid receptors in the brain or body to produce an analgesic effect, including but not limited to prescription medications containing hydrocodone, oxycodone, fentanyl, and hydromorphone, that may be obtained by patients in West Virginia only through prescriptions filled by dispensers duly licensed and regulated.

6. "And" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside the scope.

## TOPICS FOR EXAMINATION

1. Your history, mission, organizational structure, and membership.

2. The creation and efforts of Your Opioid Task Force, including its history, structure, and membership along with its meetings and discussions, and any studies, polices, positions or recommendations it considered, analyzed, or undertook.

3. Your communications relating to the legitimate need for or use of Prescription Opioids—meaning any need for and/or use of Prescription Opioids that You do not contend would be unlawful or harmful—and the responsibilities and obligations of doctors to prescribe Prescription Opioids to patients for a legitimate medical purpose.

4. Your communication with the West Virginia Board of Medicine, other state boards of medicine, state boards of pharmacy, state boards of nursing, state boards of dentistry, the Federation of State Medical Boards, or the Joint Commission (formerly the Joint Commission on Accreditation of Healthcare Organizations (JCAHO)) concerning pain management (including the monitoring, measuring, and treatment of pain by healthcare professionals); the concept of "pain as the fifth vital sign"; the inclusion of pain-related questions on patient satisfaction surveys; Prescription Opioids; or the AMA's endorsement in 2001 of the Joint Statement from 21 Health Organizations and the Drug Enforcement Administration regarding Promoting Pain Relief and Preventing Abuse of Pain Medications: A Critical Balancing Act.[1]

5. Your studies, policies, guidelines, recommendations, or statements, including those of any committee, subcommittee, working group, review group, or task force, related to pain management (including the monitoring, measuring, and treatment of pain by healthcare professionals), the concept of "pain as the fifth vital sign," the inclusion of pain-related questions on patient satisfaction surveys, or Prescription Opioids, and the reasons or bases for them.

6. Your communications and efforts concerning the concept of "pain as the fifth vital sign," including the emergence of the concept in the 1990s; any endorsement, adoption, or promotion of the concept by AMA; AMA's 2016 recommendation that pain be removed from the panel of vital signs; and communications with or about the Joint Commission and its adoption of pain management standards in 2001.

7. Your communications and efforts related to the inclusion of pain-related questions on patient satisfaction surveys, including communications expressing concern about such questions and AMA's 2016 recommendation that such questions be removed.

---

[1] https://www.deadiversion.usdoj.gov/pubs/advisories/painrelief.pdf

8. Your communication and efforts related to AMA's endorsement in 2001 of the Joint Statement from 21 Health Organizations and the Drug Enforcement Administration regarding Promoting Pain Relief and Preventing Abuse of Pain Medications: A Critical Balancing Act.

9. Your communications and efforts related to your policies, guidelines, recommendations, or statements concerning the AMA House of Delegates Resolution 235, titled "Inappropriate Use of CDC Guidelines for Prescribing Opioids," which was adopted at the 2018 Interim Meeting of the AMA House of Delegates.

10. Your communications and efforts related to your policies, guidelines, recommendations, or statements concerning the AMA House of Delegates Resolution 229, titled "Clarification of CDC Opioid Prescribing Guidelines," which was put before the AMA House of Delegates in 2019.

## ATTACHMENT B

### DEFINITIONS

The following terms shall have the meanings set forth below. Notwithstanding any definition set forth below, each word, term, or phrase used in these Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Rules of Procedure for the Southern District of West Virginia.

1. "You" and "Your" refers to the American Medical Association ("AMA"), and all others acting or purporting to act on AMA's behalf, including any affiliates, programs, employees, directors, agents, contractors, representatives, board members, committees, subcommittees, working groups, and task forces.

2. "Communication" has the full meaning ascribed to it by Local Rule of Civil Procedure 26.2(c)(1), and means any transmission of information (whether formal or informal) by one or more Persons and/or between two or more Persons by means including, but not limited to, telephone conversations, letters, faxes, electronic mail, text messages, instant messages, other computer linkups, written memoranda, and face-to-face conversations.

3. "Defendants" means all defendants named in *City of Huntington v. AmerisourceBergen Drug Corp., et al.*, Civil Action No. 3:17-01362, and *Cabell County Commission v. AmerisourceBergen Drug Corp., et al.*, Civil Action No. 3:17-01665, as of the date of this notice, and their present or former officers, directors, shareholders, employees, agents, representatives, counsel and all persons and entities acting or purporting to act under their control or on their behalf.

4. "Person" has the full meaning ascribed to it by Local Rule of Civil Procedure 26.2(c)(6), and means any natural person or any business, legal or governmental entity or association.

5. "Prescription Opioids" means FDA-approved pain-reducing medications that consist of natural, synthetic, or semisynthetic chemicals that bind to opioid receptors in the brain or body to produce an analgesic effect, including but not limited to prescription medications containing hydrocodone, oxycodone, fentanyl, and hydromorphone, that may be obtained by patients in West Virginia only through prescriptions filled by dispensers duly licensed and regulated.

6. "And" and "or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside the scope.

## INSTRUCTIONS

1. Unless otherwise agreed in writing, all Documents are to be produced to the attention of David R. Pogue, Carey, Scott, Douglas & Kessler, PLLC, 901 Chase Tower, 707 Virginia Street, East, Charleston, WV 25301.

2. Each page of every Document must be marked with a unique identifier or "Bates stamp."

3. Requested format for documents produced electronically in response to this Request:

Form: Documents produced in response to this Request should be provided as a Group 4 compression single-page "TIFF" image that reflects how the source would have appeared if printed out to a printer attached to a computer viewing the file. Extracted text will be included in the manner provided herein. To the extent that extracted text does not exist, these images will be processed through Optical Character Recognition ("OCR") so that they are fully searchable. Extracted text and OCR should be provided in separate document level text files. "Load files" shall be produced to accompany the images and shall facilitate the use of the litigation support database systems to review the produced images.

Document Unitization: Each page of a document shall be electronically converted into an image as described above. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating the image file and appropriately designated in the load files. The corresponding parent/attachment relationships, to the extent possible, shall be provided in the load files furnished with each production.

Filing Naming Conventions: File Naming Conventions. Each document image file shall be named with the unique Bates Number of the page of the document in the case of single-page TIFFs, followed by the extension "TIF." Each document shall be named with a unique document identifier. Attachments shall have their own unique document identifiers.

Production Media: The documents should be produced on CD-ROM, DVD, or external hard drive (with standard Windows PC compatible interface), (the "Production Media"). Each piece of Production Media shall identify a production number corresponding to the production "wave" the documents on the Production Media are associated with (e.g., "V001," "V002"), as well as the volume of the material in that production wave (e.g., "-001," "-002"). For example, if the first production wave comprises document images on three hard drives, the Respondent shall label each hard drive in the following manner: "V001-001," "V001-002," "V001-003." Additional information that shall be identified on the physical Production Media shall include: (1) text referencing that it was produced in [Case Docket No.], (2) the producing party's name, (3) the production date, and (4) the Bates Number range of the materials contained on the Production Media.

Objective Coding/Extracted Meta Data: Respondent shall produce with each production of documents with extracted metadata for each document (the "Objective Coding") included in the load file. The data file shall include the following fields and type of content: the date the document was created; the filename or, for emails, the "Subject" line and the individuals or entities listed in the "To" "From" "CC" and "BCC" fields. Objective Coding shall be labeled and produced on Production Media in accordance with the provisions set forth above.

Native format for Excel and databases: Respondent shall produce with each production of documents with extracted metadata for each document (the "Objective Coding") included in the load file. The data file shall include the fields and type of content set forth in the SPECIAL INSTRUCTIONS FOR ELECTRONICALLY STORED MATERIAL section. Objective Coding shall be labeled and produced on Production Media in accordance with the provisions set forth above.

4. Documents that are in paper form or that constitute other physical objects from which recorded information may be visually read, as well as audio or video tapes or text messages and similar recordings, should be produced in their original form or in copies that are exact duplicates of the originals. Computer files and similar electronic records should be produced in a readable form.

5. Please produce password-protected Documents with any applicable passwords.

6. Should You consider any of the documents requested to be confidential such that they should not be generally disseminated to the public or released to the press, please designate those documents as such under the operative Protective Order in this case (copy attached).

7. Except as otherwise specified, the timeframe for these requests is January 1, 1996 through the present

## **DOCUMENTS TO BE PRODUCED**

1. Documents sufficient to demonstrate Your history, mission, organizational structure, and membership.

2. Documents and communications relating to the legitimate need for or use of Prescription Opioids—meaning any need for and/or use of Prescription Opioids that You do not contend would be unlawful or harmful—and the responsibilities and obligations of doctors to prescribe Prescription Opioids to patients for a legitimate medical purpose.

3. Documents concerning the creation and efforts of Your Opioid Task Force, including its history, structure, and membership along with any agenda notes, meeting minutes, or meeting notes, and any studies, polices, positions or recommendations it considered, analyzed, or undertook.

4. Documents related to your communication with the West Virginia Board of Medicine, other state boards of medicine, state boards of pharmacy, state boards of nursing, state boards of dentistry, the Federation of State Medical Boards, or the Joint Commission (formerly the Joint Commission on Accreditation of Healthcare Organizations (JCAHO)) concerning pain management (including the monitoring, measuring, and treatment of pain by healthcare professionals); the concept of "pain as the fifth vital sign"; the inclusion of pain-related questions on patient satisfaction surveys; Prescription Opioids; or the AMA's endorsement in 2001 of the Joint Statement from 21 Health Organizations and the Drug Enforcement Administration regarding Promoting Pain Relief and Preventing Abuse of Pain Medications: A Critical Balancing Act.[1]

5. Documents related to any studies, policies, guidelines, recommendations, or statements, including those of any committee, subcommittee, working group, review group, or task force, concerning pain management (including the monitoring, measuring, and treatment of pain by healthcare professionals), the concept of "pain as the fifth vital sign," the inclusion of pain-related questions on patient satisfaction surveys, or Prescription Opioids, and the reasons or bases for them.

6. Documents concerning the concept of "pain as the fifth vital sign," including the emergence of the concept in the 1990s; any endorsement, adoption, or promotion of the concept by AMA; AMA's 2016 recommendation that pain be removed from the panel of vital signs; and communications with or about the Joint Commission and its adoption of pain management standards in 2001.

7. Documents related to the inclusion of pain-related questions on patient satisfaction surveys, including communications expressing concern about such questions and AMA's 2016 recommendation that such questions be removed.

---

[1] https://www.deadiversion.usdoj.gov/pubs/advisories/painrelief.pdf

8. Documents related to AMA's endorsement in 2001 of the Joint Statement from 21 Health Organizations and the Drug Enforcement Administration regarding Promoting Pain Relief and Preventing Abuse of Pain Medications: A Critical Balancing Act.

9. Documents related to your communications, policies, guidelines, recommendations, or statements concerning the AMA House of Delegates Resolution 235, titled "Inappropriate Use of CDC Guidelines for Prescribing Opioids," which was adopted at the 2018 Interim Meeting of the AMA House of Delegates.

10. Documents related to your communications, policies, guidelines, recommendations, or statements concerning the AMA House of Delegates Resolution 229, titled "Clarification of CDC Opioid Prescribing Guidelines," which was put before the AMA House of Delegates in 2019.