IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>  Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, et al.,<br><br>  Defendants. | Civil Action No. 3:17-01362<br>Hon. David A. Faber |
| CABELL COUNTY COMMISSION,<br><br>  Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, et al.,<br><br>  Defendants. | Civil Action No. 3:17-01665<br>Hon David A. Faber |

**CARDINAL HEALTH'S MOTION FOR RECONSIDERATION TO THE
<u>SPECIAL MASTER REGARDING DISCOVERY RULING NO. 4</u>**

  Defendant Cardinal Health hereby respectfully seeks reconsideration of two aspects of the Special Master's Discovery Ruling No. 4 (the "Ruling"). First, Cardinal Health asks not to be required to disclose trial exhibits five months before trial, long before Plaintiffs must disclose theirs and long before it can know what exhibits will be needed to rebut Plaintiffs' case-in-chief. Cardinal Health has no objection to identifying documents that are part of its due diligence files—indeed, it already has. But requiring it alone to designate trial exhibits months in advance would give Plaintiffs an extraordinary advantage, one unnecessary to the discovery they seek. Second, Cardinal Health asks to produce its pharmacy business consultants' custodial files dating back to 2006 rather than 2000. No court in the nationwide opioid litigation has required the production of

pre-2006 custodial files, and Plaintiffs themselves say the relevant time frame begins in 2006 when it comes to the production of their own files.

## I. Cardinal Health Requests Partial Reconsideration As To Due Diligence Documentation in Response to Combined Discovery Request No. 4.

Request No. 4 in Plaintiffs' (First) Combined Discovery Requests seeks the "due diligence file for each of [Cardinal Health's] customers" in the City of Huntington and Cabell County. Cardinal Health has produced these files and identified each of them by Bates number, but Plaintiffs nonetheless moved to compel Cardinal Health to identify by Bates number "additional due diligence documents" not contained in the "due diligence file" but contained in custodial files or other sources. Mot. 3.

The Special Master granted Plaintiffs' motion to compel, and the Ruling as written directs Cardinal Health to do two things in response to this request. First, Cardinal Health is ordered to "identify, by Bates number, any of the documents it intends to rely upon at trial as evidence of any due diligence it exercised in reporting suspicious orders." Second, "*if* Cardinal Health contends that documents exist that are responsive to Combined Discovery Request No. 4 in that they are a portion of the 'due diligence file', these documents must be specifically identified by Bates number range." Ruling at 2 (emphasis added).

### A. Cardinal Health Has Complied With the Special Master's Order to Identify Documents That Are Its "Due Diligence File" for Each Pharmacy Customer.

There is no statutory requirement for wholesale distributors to conduct due diligence. Accordingly, there is no precise definition of a "due diligence file." Nevertheless, Cardinal Health maintains a diligence file on its pharmacy customers. Included in that file are documents like know-your-customer forms, site visit reports, and memos to file regarding customer data. Cardinal Health has produced to Plaintiffs these "formal" due diligence files for each of its City of

Huntington and Cabell County customers, and has identified each specific file by Bates number. In doing so, it fully answered Request No. 4.

When assessing a customer, however, Cardinal Health may review any and all information it maintains on its pharmacy customers beyond the formal diligence file. For example, if a client requests a threshold increase due to a change in business circumstances, Cardinal Health may review data pertaining to the customer's historic purchases. That purchase data is maintained outside of the formal diligence file. If the customer's request for a threshold increase was made by email, that email is also reviewed; it, too, is maintained outside of the formal diligence file. Accordingly, there are many sources of information beyond the formal diligence file that Cardinal Health may use as a resource to assess a pharmacy customer. While these sources of information are not part of the formal diligence file, they are part of Cardinal Health's general due diligence— the research, investigation, and/or analysis—of its pharmacy customers.

Along with the formal diligence files, Cardinal Health has already produced to Plaintiffs the other sources of information it uses to assess its pharmacy customers. Plaintiffs have, for example, purchase history data, Tableau files, and threshold event reports for each of the City of Huntington and Cabell County pharmacy customers. Plaintiffs also have emails relating to these customers. And Plaintiffs are able to search all of these sources of information by pharmacy name and DEA numbers, just like Cardinal Health can. The burden is no different. Cardinal Health has, therefore, already produced to Plaintiffs the relevant information they seek. Requiring Cardinal Health to do more when Plaintiffs have yet to identify a single allegedly problematic pharmacy or order is disproportionate to the needs of this case and unwarranted.

**B.     Cardinal Health Should Not Be Required To Unilaterally Disclose Its Trial Exhibits Months Before Trial in Response to Combined Discovery Request No. 4.**

As Cardinal Health understands the Ruling, it requires Cardinal Health to identify now, in response to a discovery request, "any of the documents it intends to rely upon at trial as evidence of any due diligence it exercised in reporting suspicious orders"—in other words, to disclose a portion of its trial exhibit list five months before trial. Plaintiffs, on the other hand, are not required to disclose their exhibit lists until the appropriate pre-trial juncture. In particular, Plaintiffs have not been required to preview for Cardinal Health any deficiencies they might allege with respect to Cardinal Health's customer diligence efforts or other documents they intend to rely on at trial.

Because Plaintiffs have not yet indicated which pharmacies they will contend placed suspicious orders that Cardinal Health failed to report and which particular orders were suspicious, Cardinal Health cannot, at this juncture, reasonably identify among the various sources of information every document it "intends to rely upon at trial as evidence of any due diligence it exercised in reporting suspicious orders." The fact that Cardinal Health conducted diligence efforts on its customers is not an "affirmative defense" on which Cardinal Health bears the burden of proof. Plaintiffs bear the burden of proving that Cardinal Health's conduct was unreasonable and caused a public nuisance. Cardinal Health will respond to whatever evidence Plaintiffs put forward regarding fault and causation, but it cannot do so until Plaintiffs identify particular customers and particular orders that they intend to use in their case against Cardinal Health. Cardinal Health currently has no insight into which customers or orders those may be because it does not have the benefit of Plaintiffs' expert reports, which Cardinal Health expects will identify the specific pharmacies Plaintiffs intend to focus on in their affirmative case, as happened during expert discovery in Track 1 in the MDL. There, Plaintiffs' expert James Rafalski identified specific pharmacies as to which he opined that Cardinal Health failed to maintain effective controls

against diversion. In response, Cardinal Health's own expert Brian Reise was able to point to specific documents in due diligence files and in Cardinal Health's productions overall that rebutted Mr. Rafalski's specific criticisms on a customer-by-customer basis.

At the current juncture—months before the close of fact depositions and before expert discovery has even begun—Plaintiffs have not identified any specific pharmacies or specific orders that will be their focus at trial. Accordingly, to comply with the Ruling, Cardinal Health would need to identify any document concerning any pharmacy at any point in time that it might want to rely on at trial. This approach is unduly prejudicial to Cardinal Health and inefficient for all. Because Cardinal Health already has identified by Bates numbers its centralized diligence files, as well as other sources reflecting information it collected about its customer pharmacies, Cardinal Health asks that the Special Master permit Cardinal Health to wait until pre-trial disclosures to identify, in a more targeted manner, "any of the documents it intends to rely upon at trial as evidence of any due diligence it exercised in reporting suspicious orders."

## II.     Cardinal Health Should Not Be Required To Depart from the Established Time Frame for Custodial Discovery for its Pharmacy Business Consultants.

Plaintiffs also moved to compel Cardinal Health to identify its pharmacy business consultants ("PBCs") in Cabell County and the City of Huntington dating back to 2000. Although the initial motion did not ask for Cardinal Health to provide these individuals' custodial files, the Special Master ruled that Cardinal Health should be required not only to identify the PBCs back to 2000 but also to provide the identified individuals' custodial files. Ruling at 4. Cardinal Health already has identified its PBCs for the City of Huntington and Cabell County back to 2006, and it will produce those individuals' custodial files in response to the Ruling dating back to 2006. Cardinal Health requests that the Special Master reconsider or clarify the Ruling, however, to the extent that it requires Cardinal Health to produce custodial files of PBCs dating back an additional

six years to 2000. This expanded time frame is not "'proportional to the needs of the case' under Rule 26(b)(1) … based on … the needs of the particular case in which the discovery is ordered." *In re: National Prescription Opiate Litig.*, No. 20-3075 (6th Cir. Apr. 4, 2020).

Separate and apart from the statute of limitations, Plaintiffs themselves have identified 2006 as the beginning of the relevant time frame for this case. In response to an interrogatory asking it to "[s]tate the years during which You claim each Distributor Defendant engaged in conduct for which You seek damages or injunctive relief," Cabell County responded: "2006 through presently available transactional data." Ex. A at 9 (First Am. Suppl. Amended Answers of Plaintiff Cabell County Commission to Distributor Defendants' First Set of Interrogatories to Plaintiffs, May 11, 2020). Both Cabell County and the City of Huntington generally are providing discovery from their own custodians back to 2006 and have refused requests for custodians and custodial documents that cover earlier timeframes. *See, e.g.*, Ex. B at 2 (Ltr. from A. Kearse to S. Boranian, Feb. 21, 2020) (noting that the City of Huntington intends to produce city council documents from 2006, and resisting other earlier discovery as "not temporally reasonably proportionate to the needs of the case"); *see also* Dkt. 426 at 4–5 (noting that even where Plaintiffs have agreed to produce from certain custodians, their productions to date have been limited to the past few years).

In addition, to the extent that it requires production of PBC custodial files back to 2000, the Ruling represents the first time that a court in the nationwide opioid litigation has required production of custodial files pre-dating 2006.[1] The Track 1 MDL court, which was the first court

---

[1] Cardinal Health recently agreed to conduct a reasonable search for and produce communications it had with the DEA related to the approval or request for approval of its suspicious order monitoring system going back to 1980. As stated at the time, Cardinal Health did agree that appropriate time period for discovery in this litigation more generally extended prior to 2006. Dkt. No. 306

to manage discovery in the nationwide opioid litigation, established the relevant timeframe for discovery of distributor defendants as beginning in 2006. *See* Discovery Ruling No. 2, *In re: National Prescription Opiate Litig.*, MDL No. 2804, Dkt. 693 (June 30, 2018); Discovery Ruling No. 3, *In re: National Prescription Opiate Litig.*, MDL No. 2804, Dkt. 762 (July 17, 2018). The 2006–present timeframe has carried over into the various state-court opioid litigations ongoing across the country as well. Plaintiffs have not identified any reason that would justify broadening the relevant time frame for PBCs in this jurisdiction by six years other than their bald statement that "2000-2006 is a critical period in the history of the national opioid epidemic," Mot. 7, a position that is belied by their own views of the timeframe relevant and proportionate to this litigation.[2]

## **CONCLUSION**

For the foregoing reasons, Cardinal Health respectfully requests that the Special Master reconsider or clarify Discovery Ruling No. 4 in the two limited respects described above. Should the Special Master deny this request in whole or part, Cardinal Health respectfully requests a short extension of its time to file an appeal to Judge Faber until seven days after the Special Master's ruling.

Dated: May 20, 2020

---

[2] Cardinal Health maintains that the scope of Plaintiffs' claims is limited by the one-year statute of limitations for nuisance claims and that evidence of its conduct dating back to 2006 is irrelevant. That issue currently is pending before the Court, but even if Cardinal Health loses on that issue, there is no basis to extend discovery back to 2000.

Respectfully submitted,


*/s/ Steven R. Ruby*
Brian A. Glasser (WVSB #6597)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
BAILEY GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
bglasser@baileyglasser.com
sruby@baileyglasser.com
rfranks@baileyglasser.com
***Counsel for Cardinal Health, Inc. in Cabell County action***


*/s/ Michael W. Carey*
Michael W. Carey (WVSB #635)
David R. Pogue (WVSB #10806)
Carey, Scott, Douglas & Kessler, PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
mwcarey@csdlawfirm.com
drpogue@csdlawfirm.com
***Counsel for Cardinal Health, Inc. in The City of Huntington action***


Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW Washington,
DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
emainigi@wc.com
lheard@wc.com
ahardin@wc.com
***Counsel for Cardinal Health, Inc.***

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 20th day of May, the foregoing **"Cardinal Health's Motion for Reconsideration to the Special Master Regarding Discovery Ruling No. 4"** was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Steven R. Ruby*
Steven R. Ruby