# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON, <br><br> Plaintiff, <br><br> v. <br><br> AMERISOURCEBERGEN DRUG CORPORATION, et al., <br><br> Defendants. | Civil Action No. 3:17-01362 <br><br> Hon. David A. Faber |
| CABELL COUNTY COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> AMERISOURCEBERGEN DRUG CORPORATION, et al., <br><br> Defendants. | Civil Action No. 3:17-01665 <br><br> Hon. David A. Faber |

## THE FBI'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF SUBPOENAED DOCUMENTS

The Federal Bureau of Investigation ("FBI" or "Bureau"), a non-party to these actions, respectfully opposes Defendants' May 15, 2020 motion to compel compliance with certain third-party discovery requests (Dkt. 435-436). Although Defendants asked the Court to hold their motion in abeyance, without any immediate response from the FBI and other non-parties from whom Defendants seek discovery, the Court has not ruled on Defendants' request. The FBI therefore submits this response out of an abundance of caution so as not to waive its arguments that the motion should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

On or about April 3, 2020, the U.S. Department of Justice ("DOJ") received a *Touhy* letter from Defendants seeking deposition testimony and documents from FBI Agent Darren Cox regarding his participation in the Huntington Violent Crime & Drug Task Force ("Task Force"). *See* April 3, 2020 Letter from Wu to Phipps ("*Touhy* Letter"), Attachment A hereto. Two subpoenas—one for Agent Cox's deposition, the other for 20 categories of documents—were attached to the *Touhy* Letter.[1] *Touhy* Letter Ex. 1-2. The FBI later learned that Defendants also had a process server serve the same subpoenas on Agent Cox personally, at his home. The *Touhy* Letter characterizes the relevance of Defendants' subpoena requests as follows:

> [D]iscovery concerning the Task Force's investigation of unlawful diversion and communications regarding the source of any increase in drug-related crimes is crucial to responding to Plaintiffs' allegations regarding causation as well as assessing the reasonableness of Defendants' conduct. Likewise, discovery concerning the formation, organization, and mission of the Task Force is crucial to understanding the nature of the opioid-related harms Plaintiffs are facing as well as the Defendants [sic] alleged role in causing them.

*Touhy* Letter at 2. The specific requests for Agent Cox's testimony are both broad and vague, seeking his knowledge about a wide range of Task Force-related information from the past 24 years, for example:

- "communications with any representative of the City of Huntington or Cabell County regarding or relating to prescription opioids or illicit opioids;"

- "efforts to investigate or track the illegal entry, distribution, trafficking, diversion, or use of prescription opioids or illicit opioids in the City of Huntington or Cabell County;"

---

[1] Both subpoenas are directed towards Agent Cox personally, but seek information only about his professional responsibilities and activities involving the Task Force. (Defendants served Agent Cox, and did not properly serve the FBI as required by Fed. R. Civ. P. 4). The FBI is responding to this motion because only it may authorize the release and production of the information sought.

- "efforts to track the sources of the prescription and illicit opioids that caused problems in the City of Huntington or Cabell County,"

- "communications with the DEA or any other federal agency regarding prescription opioids, illicit opioids, the opioid epidemic, the Defendants, ARCOS data or suspicious order reports,"

*Id.* at 2-3. The document subpoena's 20 requests for documents from the 24-year time frame (1996 to the present) are similarly broad and vague, *e.g.*

- All Documents and data referring, tracking, or relating to any arrests, investigations, and indictments for crimes relating to the unlawful use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, and/or trafficking of Prescription or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

- All Documents discussing, referring, or relating to Your efforts, or the efforts of the Huntington Violent Crime & Drug Task Force, to combat the unlawful use, misuse, abuse, sale diversion, production, transportation, distribution, purchase, and/or trafficking of Prescription or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

*Touhy* Letter Ex. 2, ex. B, Request Nos. 5-6.

On April 17, 2020, DOJ responded to Defendants' *Touhy* Letter on the FBI's behalf. April 17, 2020 Letter from Stuart to Wu ("DOJ *Touhy* Response"), Attachment B hereto.[2] The response expressed concerns about Defendants' decision to serve the subpoenas on Agent Cox personally during the pandemic, both due to health and safety concerns and because such service did not comply with Fed. R. Civ. P. 4. *Id.* The FBI also indicated that at the present time, it could neither deny nor authorize any portion of the Defendants' *Touhy* request for testimony and documents, because the FBI's discovery staff was not authorized to work from home and thus

---

[2] DOJ's *Touhy* Response included Exhibits A and B. DOJ *Touhy* Response Exhibit A was Defendants' *Touhy* Letter, which itself had three exhibits: Exhibit 1 (Cox deposition subpoena); Exhibit 2 (part A- Cox document subpoena, part B- Cox document requests and specifications); and Exhibit 3 (MDL Protective Order). DOJ *Touhy* Response Exhibit B was the Declaration of FBI's Nancy Wiegand.


could not review or redact any of the documents sought by Defendants for privilege or other bases for withholding. *Id.* DOJ reiterated this position during an April 22, 2020 telephonic meet-and-confer with Defendants, during which defense counsel indicated they understood the FBI's predicament and the necessity of waiting to receive a substantive response to their subpoenas until the FBI's discovery personnel can resume working.[3]

On Monday, May 11, 2020, Defendants emailed DOJ that the parties were required to file all motions to compel by Friday, May 15, 2020, and that if the FBI could not provide any additional information about its potential responses to the *Touhy* request before Friday, Defendants would have to move to compel. May 11, 2020 email from Wu to Hsiao and Westfall, Attachment C hereto. FBI and DOJ then spent the next few days trying to ascertain whether the FBI possessed any documents responsive to Defendants' subpoenas that FBI could possibly review, redact, and produce within in a relatively short time frame.

DOJ initiated a meet-and-confer with Defendants in the late afternoon of Thursday, May 14, 2020, during which DOJ proposed a solution that might avoid a motion to compel. DOJ volunteered additional information about the Task Force's dates of operation and the FBI's role as Task Force coordinator, and offered to produce Task Force quarterly reports from 2012-2018, redacted for law enforcement sensitive information, by a target date of June 12, 2020. May 15, 2020 Email from Hsiao to Wu et al., Attachment D hereto. DOJ further indicated that the FBI would likely authorize the limited deposition of Agent Cox or a subsequent FBI-affiliated Task Force coordinator to testify generally about Task Force activities. Defendants expressed satisfaction with DOJ's offer and asked whether, in addition to the reports, the FBI had

---

[3] On May 4, the FBI determined that its discovery management staff could resume some operations with severely reduced, rotating staffing, but is still facing delays in meeting discovery requests due to the reduced staffing and backlogs due to having been shut down for two months.

documents or reports reflecting Task Force budgets and funding. Defense counsel stated that if the FBI could produce the reports and budget documents, Defendants would consider the FBI's obligation to respond to the subpoena discharged. *See* Memorandum of Law in support of Defendants' Motion to Compel (Dkt. 436) ("Defs. Memo.") at 7; May 15 Hsiao email to Wu. Defendants' memorialized this resolution in an email to DOJ later that evening. *Id.* The FBI has searched budget-related documents from 2012-2018 and plans to produce redacted versions of those search results along with the quarterly reports.

On the evening of May 15, 2020, Defendants filed a prophylactic motion to compel the FBI and other non-parties in order "to preserve their rights to seek relief from the Court." Defs.' Memo. at 5. Defendants noted that their subpoena negotiations with the FBI are "proceeding productively" and asked the Court to hold the motion in abeyance so that Defendants can activate it if they deem necessary. *Id.* Defendants' motion further requests that "no non-party be required to respond to this motion at this time." Defendants' Motion to Compel (Dkt. 435) at 4.

## ARGUMENT

Defendants' motion to compel the FBI to comply with their subpoenas should be denied. First, the motion is not ripe because there is no dispute here. Second, even if it were ripe, the motion must be denied because the Court lacks jurisdiction to compel the FBI to respond to Defendants' *Touhy* requests. Third, Defendants would not prevail in an Administrative Procedure Act claim against the FBI, because Defendants concede that the FBI's proposed response to their subpoenas is reasonable.

**1. Defendants' motion is not ripe**

There is no controversy or dispute between Defendants and the FBI for the Court to resolve.[4] In fact, the opposite is true: Defendants concede they have reached an agreement with the FBI on how it will respond to the subpoenas. *See* Defs. Memo. at 7. Although the Bureau would have been justified to deny Defendants' exceedingly broad subpoena requests on grounds such as lack of service of process, vagueness, relevance, and burden, the FBI committed to produce quarterly Task Force reports and possibly budget documents, and to authorize one or more active agents to participate in a limited deposition. The Bureau is working hard to satisfy that agreement—efforts that are especially remarkable given significantly reduced staffing levels and that the FBI's first priority is protecting national security and public safety during this crisis.

Defendants' May 15, 2020 deadline to file motions to compel is no excuse for filing an unwarranted motion against a cooperative non-party. That they were up against a motion deadline with respect to the FBI is a problem of Defendants' own making: they chose to serve their *Touhy* request on April 3—less than a month before the original discovery cut-off date in this case—rather than when fact discovery began in 2019. If this information was truly critical to Defendants' defenses, they could have served their subpoenas months ago.

There is no reason for the Court to waste time and resources on the motion against the FBI, which should be denied. Defendants have not expressed even mild dissatisfaction with the FBI's plan to produce certain documents and limited deposition testimony. Instead, Defendants have filed a motion that leaves the Bureau with little choice but to waste time opposing this

---

[4] The FBI has not rejected Defendants' requests or indicated that it will not comply with them. To the extent FBI has taken any formal position, it is that it can neither deny nor authorize responses to Defendants' *Touhy* Letter. DOJ *Touhy* Response at 1.

motion—time that could be better spent searching for and reviewing the documents that Defendants have indicated would satisfy their discovery requests.

### 2. The Court lacks jurisdiction to require the FBI to comply with the subpoenas

Defendants have not filed an Administrative Procedure Act ("APA") action challenging the reasonableness of FBI's position here, and this Court therefore lacks jurisdiction to order the FBI to comply with Defendants' subpoenas. Defendants' subpoenas and its motion to compel compliance with them amount to "an action against the United States, subject to the governmental privilege of sovereign immunity." *Smith v. Cromer*, 159 F.3d 875, 879 (4th Cir. 1998). This sovereign immunity from routine discovery "gives rise to the Government's power to refuse compliance with a subpoena." *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 277 (4th Cir. 1999). Unless the FBI waives its sovereign immunity—and it has not—this Court lacks jurisdiction to order the FBI to engage in the discovery sought. *Id.*

When a government agency is served with a third-party subpoena, "[t]he decision whether to provide documents or employee testimony in response . . . is committed to agency discretion." *Id.* at 278. *See also Barreto v. SGT, Inc.*, 2019 WL 3253373, at *4 (D. Md. July 19, 2019) ("Agencies may promulgate regulations that govern their responses to subpoenas."); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 1790189, at *4 (E.D. Mich. May 10, 2011) ("When served with a subpoena for the production of materials or witnesses, the DOJ, by its authorized representative . . . is required to evaluate the request under the DOJ's *Touhy* Regulations."). The APA, not Rule 45, governs whether a federal agency reasonably exercised its discretion in deciding whether and how to comply with Defendants' discovery requests. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). Where, as here, the United States is not a party to the cases, "the APA provides *the sole avenue* for review of an agency's refusal to

permit its employees to comply with subpoenas." *COMSAT*, 190 F.3d at 274 (emphasis added); *Sauer Inc. v. Lexington Ins. Agency, Inc.*, 2014 WL 5580954, at *4 (E.D.N.C. Oct. 31, 2014).

In other words, to challenge the FBI's decision on how and whether to respond to Defendants' *Touhy* Letter and subpoenas, Defendants must bring a separate APA action against the FBI. *See* 5 U.S.C. § 703 (providing that an "action for judicial review [of agency action] may be brought *against* the United States, the agency by its official title, or the appropriate officer (emphasis added)); *United States v. Williams*, 170 F.3d 431, 434 (4th Cir. 1999) (noting that, "if dissatisfied with the agency's response to the request, [a party] is not without recourse" and the "proper method for judicial review of the agency's final decision pursuant to its regulations is through the [APA]"); *Cromer*, 159 F.3d at 881 ("Cromer's remedy, if any, for the Justice Department's [refusal to permit its employees to testify] may be found in the [APA] . . . ."). Defendants have not filed an APA claim, and their motion against the FBI must be denied for lack of jurisdiction.

**3. DOJ's consideration of Defendants' requests was reasonable and appropriate**

Even if Defendants' motion were treated as a separate action challenging the FBI's response to their subpoenas under the APA,[5] that action would still fail because the FBI's approach to the subpoenas is not only reasonable, but acceptable to the Defendants. A court may order a non-party government agency to comply with a subpoena only "if [it] has refused production in an arbitrary, capricious, or otherwise unlawful manner." *COMSAT*, 190 F.3d at 277 ("courts may reverse an agency's decision not to comply only when the agency has acted

---

[5] Some courts in the Fourth Circuit—apparently in the interest of efficiency—have concluded that, where the underlying case is already in federal court, a party need not bring a separate action under the APA to allow the court to review the agency's *Touhy* decision. *See Clay v. Consol Pa. Coal Co.*, LLC, No. 5:12-CV-92, 2013 WL 12373597, at *2 (N.D. W.Va. Oct. 17, 2013); *Spence v. NCI Info. Sys., Inc.*, 530 F. Supp. 2d 739, 745 (D. Md. 2008).

unreasonably"). An agency decision is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

To obtain the information they seek, Defendants must comply with DOJ's *Touhy* regulations, which prohibit current and former FBI employees from disclosing official information absent express authorization from DOJ. 28 C.F.R. § 16.22(a); *see Cromer*, 159 F.3d at 879–80. The *Touhy* regulations prohibit DOJ from disclosing official information when doing so would be inconsistent with the "rules of procedure governing the case" or "the relevant substantive law governing privilege." 28 C.F.R. § 16.26(a). Moreover, disclosure is inappropriate if it would: (1) violate a statute or rule of procedure; (2) violate a specific regulation; (3) reveal classified information; (4) reveal a confidential source or informant; (5) reveal investigative techniques or investigatory records compiled for law enforcement purposes; or (6) reveal trade secrets without the owner's consent. *Id.* § 16.26(b). Among other requirements, a *Touhy* request must also include an explanation of the requested information's "relevance to the proceeding." 28 C.F.R. § 16.22(c); *see also* § 16.22(d).

An agency's decision must be upheld if it is reasonable and in accordance with the applicable *Touhy* regulations. *Spence*, 530 F. Supp. 2d at 745; *see Andreas-Myers v. Nat'l Aeronautics & Space Admin.*, No. GJH-16-3410, 2017 WL 1632410, at *4 (D. Md. Apr. 28, 2017) ("The APA only requires the Court to decide whether the agency 'articulated a rational connection between the facts found and the choice made.'" (quoting *Baltimore Gas & Elec. Co.*

*v. Natural Res. Def. Council*, 462 U.S. 87, 105 (1983)). Ultimately, "[w]hen an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources." *COMSAT*, 190 F.3d. at 278.

Courts in the Fourth Circuit regularly uphold agency refusals to comply with third-party subpoenas so long as they are rationally related to the facts and the agency's *Touhy* regulations. *See, e.g.*, *Barreto*, 2019 WL 3253373, at *4 (granting agency's motion to quash a third-party subpoena on sole basis that subpoena "did not give a sufficient rationale to justify expending appropriated monies for . . . non-federal purpose," because agency's decision had "a rational connection to the subpoena"); *Bruno v. Nationwide Mut. Fire Ins. Co.*, No. CV RDB 08-494, 2009 WL 10681974, at *2 (D. Md. Oct. 26, 2009) ("FEMA's refusal to comply with [a] subpoena was not arbitrary, capricious or otherwise unlawful because . . . FEMA was reasonably acting to preserve its human resources."); *Bavarian Nordic A/S v. Acambis Inc.*, No. CV DKC 2006-2406, 2007 WL 9782602, at *2 (D. Md. Jan. 19, 2007) (upholding agency refusal to comply with non-party subpoena on basis that it would be contrary to agency's self-interest).

As explained in DOJ's April 17, April 22 and May 14 communications with Defendants, the FBI faces unique, significant obstacles that impede its ability to provide substantive responses to Defendants' exceedingly broad, wide-ranging, and vague requests for 24-years' worth of information, much of which is likely privileged. *See generally* DOJ *Touhy* Response. Moreover, most of the information Defendants seek relates specifically to the City of Huntington and Cabell County or any town therein, and is more properly sought from the Plaintiffs (*e.g.*, DOJ *Touhy* Response, Ex. 2B, Request Nos. 2-10, 15, 17, 19), or Defendants themselves (*id.*, Request No. 18 (seeking communications with any Defendant)). DOJ has not yet raised these

objections and citing the significant burden involved to satisfy such undefined, overbroad requests, which seem to be of questionable relevance to these cases.[6] Instead, DOJ evaluated those requests and developed a practical proposal to search for and produce information that would address Defendants' demands while safeguarding the FBI's law enforcement sensitivities and other privileges.

Defendants concede that the FBI's proposed response to their subpoenas is not only reasonable, but acceptable. The FBI proposed, and Defendants agreed, that the FBI would discharge its obligations under the subpoenas by producing the promised quarterly Task Force reports from 2012-2018, redacted if necessary, around the June 12, 2020 target date, and authorized limited deposition testimony by Agent Cox or other agents knowledgeable about the Task Force's general activities during that time frame. Defendants further proposed, and the FBI agreed, to search for certain Task Force budget-related documents and to produce them if feasible. There is no question that the FBI's response to date complies with the APA, and Defendants do not assert otherwise. Accordingly, if the Court opts to consider Defendants' motion on the merits, the motion should be denied.

## CONCLUSION

For the foregoing reasons, the FBI respectfully requests that this Court deny Defendants' motion to compel.

---

[6] As noted above, the FBI has not yet issued a formal determination authorizing or denying discovery responsive to Defendants' *Touhy* Letter, and FBI reserves its right to assert these and other applicable objections.

        Respectfully submitted,

        MICHAEL D. GRANSTON
        Deputy Assistant Attorney General

        MICHAEL B. STUART
        United States Attorney
        Attorney for the United States
        Acting Under Authority Conferred by 28 U.S.C. § 515

By:    <u>/s/Fred B. Westfall, Jr.</u>
        Fred B. Westfall, Jr. (W.Va. Bar No. 3992)
        Assistant U.S. Attorney, Civil Chief
        300 Virginia Street East, Room 4000
        Charleston, WV 25301
        (304) 345-2200
        (304) 347-5443 (facsimile)
        E-mail: fred.westfall@usdoj.gov

        GUSTAV W. EYLER
        LISA K. HSIAO
        JOCELYN C. HINES
        United States Department of Justice
        Consumer Protection Branch
        450 5th Street, N.W. Ste. 6400-South
        Washington, D.C. 20001
        (202) 532-4892
        Lisa.K.Hsiao@usdoj.gov

        Attorneys for U.S. Department of Justice
        Federal Bureau of Investigation

## **CERTIFICATE OF SERVICE**

I, Fred B. Westfall, Jr., Assistant United States Attorney, hereby certify that on May 27, 2020, I filed the foregoing **THE FBI'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL PRODUCTION OF SUBPOENAED DOCUMENTS** with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record and will also send a copy of the aforesaid document by email to all counsel of record.

/s/Fred B. Westfall, Jr.
Fred B. Westfall, Jr. (W.Va. Bar No. 3992)
Assistant U.S. Attorney, Civil Chief
300 Virginia Street East, Room 4000
Charleston, WV 25301
(304) 345-2200
(304) 347-5443 (facsimile)
E-mail:  fred.westfall@usdoj.gov