**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

CITY OF HUNTINGTON;                    :
CABELL COUNTY COMMISSION,
                                       :          **Civil Action No. 3:17-01362**
                Plaintiffs,              **Civil Action No. 3:17-01665**
                                       :          *(Consolidated)*
v.
                                       :

AMERISOURCEBERGEN DRUG                 :
CORPORATION, *et al.,*
                                       :
                Defendants.
                                       :

**JOINT RESPONSE OF CABELL HUNTINGTON HOSPITAL AND ST. MARY'S
MEDICAL CENTER TO DEFENDANTS' MOTION TO COMPEL THIRD-PARTY
DISCOVERY AND RIGHT TO RENEW MOTION TO QUASH**

      Cabell Huntington Hospital, Inc., ("Cabell"), and St. Mary's Medical Center, Inc., ("St. Mary's" and collectively "Hospitals"), appear herein as non-parties to this litigation and respectfully submit their *Joint Response to Defendants' Motion to Compel Third-Party Discovery*. Moreover, for the reasons stated herein, Hospitals further respectfully reserve and assert the right to renew their prior *Petition and Motion to Quash*. (ECF No. 309).

I.    <u>Introductory Statement</u>:

      The issues set forth herein arise from certain *Subpoenas to Produce Documents, Information or Objects* which Defendants previously caused to be served upon these non-party Hospitals. As an introductory matter, the Hospitals are continuing to work cooperatively with the Defendants in furtherance of a plan for compliance with the pending Subpoenas. The Hospitals submit this Response to *Defendants' Motion to Compel Third-Party Discovery* in order to preserve their rights to seek relief from the Court in the event that negotiations ultimately fail. The Hospitals parrot the Defendants in this regard and respectfully request that the Court hold these issues in

abeyance with a right to renew objections at a later date.  Alternatively, should the Court determine that judicial intervention is currently necessary, the Hospitals respectfully request that this Response be accepted by the Court as an outline of the Hospital's general objections to the pending Subpoenas.

II.    Statement of Facts:

(A)    **Relevant Procedural History and Summary of Subpoenas:**

The Hospitals are non-party medical facilities situated in Huntington, West Virginia.[1]  The Hospitals are not parties to this or any other subset of the Multi-District Litigation known as *In Re: National Opiate Litigation*, MDL No. 2804.  The Hospitals vaguely understand that this litigation was recently remanded from the aforementioned MDL by agreement of the parties.  Plaintiffs have severed all other Defendants.  Plaintiffs are proceeding upon a common law public nuisance claim involving some component of civil conspiracy.  Plaintiffs intend to seek certain damages for abatement of a public nuisance.  And the verdict will be rendered by the bench.

Defendants proceed upon all elemental defenses and intend to assert suggestions of non-party fault pursuant to West Virginia Code § 55-7-13d.  Defendants seek third-party discovery, in part, to further develop their defenses and to evaluate whether "other medical professionals… improperly prescribed or administered controlled substances[.]"[2] *See Memorandum of Law in Support of Defendants' Proposed Case Management Order*. (ECF No. 158).  Plaintiffs dispute the application of West Virginia Code § 55-7-13d and this issue has been briefed.  Defendants are

---

[1]  As a point of clarification, Cabell Huntington Hospital acquired St. Mary's Medical Center in May of 2018.  As Defendants submitted separate requests to Cabell and St. Mary's, the distinction is maintained for ease of presentation.

[2]  Undersigned counsel feels compelled to note that this statement is submitted to better understand the scope and relevancy issues attendant these Subpoenas.  Hospitals fundamentally take no position regarding Defendants' trial strategy.

engaged in a substantial discovery campaign.   In furtherance, Defendants served non-party Hospitals with two *Subpoenas to Produce Documents, Information or Objects,* which can be summarized as follows:

(1)    The "Cabell Subpoena" was issued by the West Virginia Secretary of State for service on March 12, 2020.   Cabell received the Subpoena on March 17, 2020.   The initial production date was set for March 26, 2020.   Cabell had no prior knowledge of the Subpoena.   It contained fifteen (15) defined terms, (15) instructions and nineteen (19) areas of production.   The temporal scope was defined as 1996 to present.   The Defendants have agreed to extend the 'command production' date on several occasions.   Cabell has begun compiling potentially responsive information, but production has yet to occur.

(2)    The "St. Mary's Subpoena" was issued by the West Virginia Secretary of State for service on April 15, 2020.   St. Mary's received the Subpoena on April 21, 2020.   The initial production date was set for April 27, 2020.   Counsel for AmerisourceBergen informed undersigned counsel that a subpoena upon St. Mary's would issue.   The Subpoena contained fifteen (15) defined terms, fourteen (14) instructions and thirty-four (34) areas of production.   The temporal scope was also defined as 1996 to present.   The Defendants have agreed to extend the 'command production' date.   St. Mary's has also begun compiling potentially responsive information, but production has yet to occur.

**(B)    Unforeseeable Delay:**

The Hospitals received the Subpoenas underlying this dispute at the height of the COVID-19 pandemic.   A national state of emergency was declared on March 13, 2020.   This Court entered its initial General Order that same day, recognizing the exigent circumstances created by the pandemic.   The State of West Virginia declared a State of Emergency on March 16, 2020, and

issued several Executive Orders closing public schools, various business, and public offices in an attempt to slow the spread of the disease.  Counsel for the Hospitals scuttled or dramatically reduced their legal staffing.  Global delay ensued.

The pandemic has persisted throughout the relevant time period herein.  On April 14, 2020, this Court entered its General Order #5, postponing all in person civil and criminal proceedings scheduled to occur through May 31, 2020.  Datasets suggest that the regional disease outbreak is increasing.  There are currently eighteen hundred and fifty (1,850) cases of COVID-19 in West Virginia, nine thousand (9,000) cases in Kentucky, and thirty-three thousand (33,000) cases in Ohio.  The effects of the pandemic are far-reaching and has affected all litigants.  Defendants herein recently filed a joint motion on May 5, 2020 with the NAS Plaintiffs to extend certain deadlines in MDL 2804 (ECF No. 3290).  Hospitals have moved to vacate scheduling orders in litigation pending before this Court.

From a litigation standpoint, the Hospitals have arguably been most affected by the pandemic.  Upon emergency declaration, pandemic preparedness became the central focus of the region's health care providers. These Hospitals serve a primary role in the regional health care system.  Administration and providers alike have been innately focused on compliance with the emergency declarations and Hospital assets have been redistributed to best anticipate an emergency response.  These reactionary measures resulted in social and economic strain which resulted in further delay.  The Hospitals have attempted in good faith to participate in all pending litigation matters, but the practice of health care law generally came to a halt.  These are the facts necessary for determination of the current motion.

**(C)     Renewal of and Supplementation to Prior Petition and Motion to Quash:**

As stated, Defendants served separate Subpoenas upon the Hospitals herein.   These Subpoenas raise substantially similar issues and judicial economy is best served through the submission of a Joint Response.   The Hospitals previously submitted a *Petition and Motion to Quash* (ECF No. 309), with *Memorandum of Law in Support* (ECF No. 310), for the Court's consideration on April 10, 2020.[3]   The Hospitals further state as follows:

III.     <u>Statement of Law and Legal Argument</u>:

**(A)     Introduction:**

The following discussion speaks in terms of preserved rights for the reasons stated above. To the extent that a dispute becomes inevitable, Hospitals would oppose the Defendants' Motion to Compel because the underlying Subpoenas improperly seek the disclosure of privileged and protected materials. *See* W. Va. Code §§ 30-3C-1, *et seq*.  The Hospitals would further oppose the Motion to Compel because they have not been provided with a reasonable time to comply under the circumstances. *See* Fed. R. Civ. P. 45(c)(3)(i).  Additionally, the broad scope of the Subpoenas would render compliance unduly burdensome, and the Hospitals would further oppose the Defendants' Motion to Compel upon those grounds. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii). Furthermore, the Hospitals believe that much of the information Defendants seek may be readily available from other sources.   Alternatively, the Hospitals would seek modifications of the

---

[3] The *Petition and Motion to Quash* was formally filed in the name of Cabell Huntington Hospital, Inc., on April 10, 2020.  At that time, the Hospitals herein interpreted the Cabell Subpoena to encompass St. Mary's due to the Subpoena's broadly defined terms in conjunction with the fact that St. Mary's had been previously acquired by Cabell in May of 2018.  After the filing of the *Petition and Motion to Quash*, Defendants issued a separate subpoena to St. Mary's on April 21, 2020.  Due to the continued course of negotiations, undersigned counsel did not formally join St. Mary's into the prior filing.

Subpoenas: (1) to permit a reasonable time for compliance under the circumstances and (2) to limit the overly burdensome nature of the requests.

### (B)(i):  Peer Review Privilege - Rule 45(d)(3)(A)(iii) and Rule 26:

Hospitals would first oppose the Defendants' Motion to Compel because the underlying Subpoenas improperly seek the disclosure of privileged and protected materials pursuant to W. Va. Code §§ 30-3C-1, *et seq*., The Health Care Quality Improvement Act of 1986, codified at 42 U.S.C. Section 11101*, et seq.,* and Title IV of Public Law 99-660, 45 C.F.R. pt. 60 *et seq*.  Rule 45 authorizes courts to quash or modify a subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" *See* Fed. R. Civ. P. 45(d)(3)(A)(iii). Moreover, Rule 45(c) was "not intended to diminish rights conferred by Rules 26-37." *See* Fed. R. Civ. P. 45, (Adv. Comm. note to 1991 Amendment; *see also Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F. 2d 1017, 1023 (Fed. Cir. 1986) (noting that Rule 45 must be read in light of Rule 26(b)); 9A Wright & Miller, Federal Practice and Procedure: Civil 2d § 2452 (1995).  Thus, pursuant to Fed. R. Civ. P. 26, a "party generally may obtain discovery regarding any matter, **not privileged**, which is relevant to the subject matter involved in the pending action or which appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1) (emphasis added).

The most concerning aspect of the Subpoenas, and the issue which ultimately may require judicial intervention, arises from the Defendants' requests for information and materials otherwise completely privileged and protected by the legal authority cited above, and most importantly arising from W. Va. Code §§ 30-3C-1, *et seq.*  Again, Defendants seek the production of this evidence, in part, to support their suggestions of non-party fault pursuant to West Virginia Code § 55-7-13d.  Regardless of the rationale underlying these requests, no Subpoena should ever be

allowed to infringe upon the fundamental privileges and protections of peer review.  For this reason, the Hospitals primarily assert and preserve the protections and privileges afforded them under the cited legal authority.

The import of this specific issue warrants further discussion.  Succinctly stated, peer review is fundamental to health care.  The Hospitals frequently engage in a myriad of peer review functions involving either: (1) internal peer review committees; or (2) external peer review organizations.  These functions are designed to improve the quality of health care and to credential or review health care providers.  Such protections are afforded to every medical facility in the State of West Virginia as well as the vast majority of other jurisdictions.  The privilege is designed to encourage the free exchange of opinions among medical providers without fear of public scrutiny and without concern that the information will be later used to infer the existence of medical malpractice in civil litigation.  Proponents of the privilege suggest that the lack of such peer review protections may result in a chilling effect upon the open exchange of ideas and ultimately impact the overarching goal of safe and effective health care delivery to the patient population.  Therefore, the societal benefit of this protection would greatly outweigh any reason advanced by Defendants to command production.

The West Virginia legislature has addressed these issues through enactment of W. Va. Code 30-3C-3 (2019), entitled "Confidentiality of Records."  The statute states, in relevant part:

>    **(a)**    Any document prepared by or on behalf of a health care provider for the purpose of improving the quality, delivery, or efficiency of health care or for the purpose of credentialing or reviewing health care providers is confidential and privileged and shall not be subject to discovery in a civil action or administrative proceeding. Such documents include, without limitation:

>              *                    *                    *

(2)  Documents related to review organization proceedings for hiring, disciplining, terminating, credentialing, issuing staff privileges, renewing staff privileges, or alleged misconduct of a health care provider;

(3)  Review organization documents;

(4)  Quality control and performance improvement documents;

(5)  Documents satisfying regulatory obligations related to quality assurance and performance improvement; and

(6)  Reviews, audits, and recommendations of consultants or other persons or entities engaged in the performance of peer review.

(b)  A person who testifies before a review organization, or who is a member of a review organization, shall not be required to testify regarding, or be asked about, his or her testimony before such review organization, deliberations of the review organization, or opinions formed as a result of the review organization's proceedings. A person who testifies before a review organization, or who is a member of a review organization, shall not be prevented from testifying in court or an administrative hearing as to matters within his or her personal knowledge.

(c)  All peer review proceedings, communications, and documents of a review organization and all records developed or obtained during an investigation conducted pursuant to §30-3-1 et seq., §30-3E-1 et seq., and/or §30-14-1 et seq. of this code shall be confidential and privileged and shall not be subject to discovery in any civil action or administrative proceeding: Provided, That an individual may be given access to any document that was used as the basis for an adverse professional review action against him or her, subject to such protective order as may be appropriate to maintain the confidentiality of the information contained therein. Privilege is not deemed to be waived unless the review organization executes a written waiver authorizing the release of such peer review proceedings, communications, or documents.

*See* W. Va. Code §§ 30-3C-1, *et seq.* (2019).

The legislative intent is clear from the plain language of the statute.  This information should not be subjected to discovery in any civil proceeding.  In the present case, however,

8

compliance with the Defendants' Subpoenas would directly infringe upon the privileges and protections afforded the Hospitals under the cited legal authority.  For instance, the Cabell Subpoena defines the term "You" as:

> Cabell Huntington Hospital and all others acting on the Hospital's behalf, including any affiliates, programs, employees, directors, agents, contractors, representatives, board members, **committees, subcommittees, working groups and task forces**.

*See* Cabell Subpoena, at Definition No. 1 (emphasis added).  The emphasized language contained in this definition would otherwise necessitate disclosure of the exact information and materials in which the statute was designed to exclude from the scope of civil litigation.  The Hospitals' Bylaws, at <u>Article X, Section 3, Subsection 2</u>, expressly create and empower internal committees to conduct these protected peer review functions and engage licensed medical providers to participate therein.  For this reason, the Hospitals would assert these protections to prevent, quash or otherwise modify the scope of the Defendants' Subpoenas and to deny the Defendants' Motion to Compel.

Additionally, <u>Request No. 14</u> of the Cabell Subpoena *expressly* seeks privileged information:

> [A]ny documents relating to your involvement with the **Joint Commission** (formerly known as the Joint Commission on Accreditation of Healthcare Organizations) or with any other institution that provides accreditations or certificates, as it relates to the treatment of pain and/or the prescribing of prescription opioids for the purposes of gaining and/or maintaining accreditations or a certificate.

*See* Cabell Subpoena, at Request No. 14 (emphasis added).  The Joint Commission is the epitome of an external peer review organization.  Its mission "is to continuously improve health care for the public… by evaluating health care organizations and inspiring them to excel in providing safe and effective care of the highest quality and value." *See* https://www.jointcommission.org/about-

us.  The Hospitals' Bylaws, at <u>Article X, Section 3, Subsection 2</u>, specifically refer to the Joint Commission as a peer review organization and there is no plausible argument to the contrary.  This request fundamentally violates the privileges and protections of peer review.  As such, the Hospitals would again assert the aforementioned law to prevent, quash or otherwise modify the scope of the Defendants' Subpoenas and to deny the Defendants' Motion to Compel.

The Subpoenas are replete with language which, broadly interpreted, would violate peer review.  The Hospitals jointly assert this privilege and protection against any and all such requests which could be interpreted to require disclosure of protected and privileged peer review information and materials, or which could be interpreted to require the identification of peer review participants.  Documents and information created in connection with internal peer review committees, such as the medical executive committee, or external peer review organizations, such as the Joint Commission or the Health Care Authority, would be fall under the protections of the law.

**(B)(ii): Unduly Broad and Overly Burdensome: Peer Review – Rule 45(d)(3)(A)(iii):**

This is a principled matter.  As an additional reason to oppose the Defendants' attempt to procure peer review information, Hospitals would further assert Fed. R. Civ. P. 45(d)(3)(A)(iv), which provides that "the court for the district where compliance is required must quash or modify a subpoena that…subjects a person to undue burden."  When conducting this analysis under Rule 45, the court is required to apply the balancing standards: relevance, need, confidentiality, and harm. *Brown v. Meehan*, 2014 WL 4701170 (E.D. Va. Sept. 22, 2014) (citing *to In re NCAA Student–Athlete Name & Likeness Licensing Litig.*, 2012 U.S. Dist. LEXIS 84144, 2012 WL 2281253 (M.D.N.C. June 18, 2012)).

In the present case, the balancing test weighs heavily in favor of protection. The confidentiality element has been set forth in detail and strongly favors the Hospitals' position. Moreover, the Hospitals, their peer review committee participants and any medical provider subjected to peer review and/or credentialing would assert that the remaining factors further balance in their favor. As previously mentioned, Defendants seek third-party discovery, in part, to further develop their defenses and to evaluate whether "other medical professionals… improperly prescribed or administered controlled substances[.]" *See Memorandum of Law in Support of Defendants' Proposed Case Management Order*. (ECF No. 158).

Thus, it seems reasonable to conclude that Defendants' attempts to invade the province of peer review stems from their intent to strengthen the suggestions of non-party fault pursuant to West Virginia Code § 55-7-13d. While no ruling on this issue was apparent from counsel's review of the docket, it was noted that the Court previously emphasized "concern with the nonparty fault" and suggested that "discovery of that has to be limited, because it could go on forever, if you get to the point where you are going to look at the doctors who prescribed these medications[.]" *See* Status Conference Transcript, filed on 1/29/2020, at p. 14, l. 12-17 (ECF No. 147). As such, the remaining elements favor protection of all peer review information, and the Hospitals would further oppose such requests as overly broad and unduly burdensome.

**(C)      Failure to Allow a Reasonable Time to Comply – Rule 45(d)(3)(A)(i):**

The Hospitals would next oppose the Defendants' Motion to Compel because the Hospitals have not been provided with a reasonable time to comply under the relevant yet otherworldly circumstances underlying these Subpoenas. This opposition would arise pursuant to Fed. R. Civ. P. 45(c)(3)(i), which authorizes courts to quash or modify a subpoena for "failure to allow a reasonable time to comply." *See* Fed. R. Civ. P. 45(d)(3)(A)(i).

In determining whether a subpoena should be quashed, the Court should consider the facts of the case and the issuing party's need for the information subject to the subpoena *duces tecum*." *Deakins v. Pack,* 2012 WL 626200 (S.D.W. Va. Feb. 24, 2012) (citing *Ohio Valley Environmental Coalition, Inc. v. United States Army Corps of Engineers*, 2012 WL 112325, *2 (N.D .W.Va. Jan. 12., 2012)). The "reasonableness of the time allowed for compliance seems to be judged depending on the underlying circumstances*." Freeport McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc.*, 2004 WL 595236 (E.D. La. Mar. 23, 2004).

Hospitals would oppose the Defendants' Subpoenas and the Defendants' Motion to Compel under the rationale set forth in Rule 45. This extensive discovery campaign was initiated during a national pandemic. To date, this pandemic has not subsided. The far-reaching effects of this pandemic have had a profound impact upon the Hospitals' ability to compile documents and meet with legal counsel. Quite frankly, the Hospitals are only just beginning to gain their footing in the current environment.

Again, reasonableness "of the time allowed for compliance seems to be judged depending on the underlying circumstances*." Freeport McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc.*, 2004 WL 595236. The circumstances herein reveal that Cabell has been in possession of its Subpoena for slightly more than two (2) months, and that St. Mary's has been in possession of its Subpoena for slightly more than (1) month.[4] Even without the disruption of a national pandemic, these time periods would not satisfy the reasonable time requirement of Rule 45 for compliance with *these* Subpoenas.

---

[4] Due to the previously mentioned acquisition and considering that the majority of the requests against St. Mary's generally mirror the requests against Cabell, it is more accurate to state that both Hospitals have possessed most of the requests for more than two (2) months. Alternatively, the St. Mary's subpoena does contain approximately 18 additional requests.

When considering the scope of the requested information, both by reference to the substance and time, in conjunction with the dramatic effect of the pandemic, the time for compliance with these Subpoenas simply does not satisfy the notion of reasonableness espoused by the Rule. As United States Magistrate Judge Gabriel Fuentes recently noted in *DeVine v. XPO Logistics Freight,* 2020 U.S. Dist. LEXIS 45739 (N.D. Ill. 2020):

> The medical community is very, very busy right now, and likely will be busy for weeks or months to come. And these doctors and nurses are busy preparing to take care of sick people. Soon they may be taking care of more sick people than they can handle. We all hope that conditions will not overwhelm our health care system, but at this writing, we do not know how significant the impact will be. Even if the system is not overwhelmed, it may be strained to at or near its limits. Physicians who do not normally practice emergency care may find themselves deployed to emergency rooms. Physicians who might never practice emergency medicine may find themselves immersed in logistical planning or other essential services. It is reasonable for all of us to expect that at this moment and at least for the next few weeks and possibly longer, the situation at hospitals and medical offices will be all hands-on deck. All hands cannot be on deck if some of them are at a law office sitting for a deposition in a tort lawsuit.

*Id.* at *2.

Similarly, all hands cannot be on deck if these health care providers and administrative personnel are compiling and scrutinizing twenty-four (24) years of documents and information for response to these Subpoenas. Therefore, the Hospitals would further oppose the Defendants' Subpoenas for this reason or, in the alternative, would request the Court to enlarge the time of compliance and narrow the topics and temporal scope of the requests.

### (D) Unduly Broad and Overly Burdensome: Generally – Rule 45(d)(3)(A)(iii):

The Hospitals would further assert that the broad scope of the Defendants' Subpoenas would render compliance unduly burdensome pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iii). Rule 45(d)(3)(A)(iii) provides that "the court for the district where compliance is required must quash

or modify a subpoena that…subjects a person to undue burden."  Again, this analysis requires application of the balancing standards: relevance, need, confidentiality, and harm. *Brown v. Meehan*, 2014 WL 4701170 (E.D. Va. Sept. 22, 2014) (citing *to In re NCAA Student–Athlete Name & Likeness Licensing Litig.*, 2012 U.S. Dist. LEXIS 84144, 2012 WL 2281253 (M.D.N.C. June 18, 2012)).

Even if the information sought is relevant, discovery is not allowed where compliance is unduly burdensome or where the potential harm caused by production outweighs the benefit. *See In re: Modern Plastics Corporation*, 890 F.3d 244, 251 (6th Cir. 2018), *cert. denied*, 139 S. Ct. 289, 202 L. Ed. 2d 136 (2018) (Courts must "balance the need for discovery against the burden imposed on the person ordered to produce documents," and the status of that person as a non-party is a factor). Moreover, "[a] subpoena imposes an undue burden on a party when [it] is overbroad." *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 241 (E.D. Va. 2012) (citing to *In re Subpoena Duces Tecum.*, 550 F.Supp.2d at 612).

"Undue burden can be found when a subpoena is **facially overbroad**." *Linder v. Calero-Portocarrero,* 183 F.R.D. 314, 316, *citing Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998) (emphasis added).  In the present case, the Hospitals would also oppose the Defendants' Subpoenas upon the grounds that compliance is unduly burdensome.  By way of example, Request No. 1 to Cabell seeks all communications from the last 24 years between Cabell Huntington Hospital and Plaintiffs "discussing, referring, or relating to the prescribing, dispensing, use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, theft or trafficking of Prescription Opioids or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County."

Upon review, the request contains a plethora of discreet subparts.  The most notable distinction arises from the request for communications related to "Prescription Opioids" as contrasted to the request for communications related to "Illicit Opioids."  The contrasting nature of those terms invoke an entirely different approach to production, and the distinction is not one without a difference.  It begins to establish that the request is facially overbroad.

The scope of the request then increases exponentially when applying the defined terms to the language of the request.  For instance, Request No. 1 to Cabell centers upon communications between "Cabell" and "Plaintiffs."  Cabell is defined as "Cabell Huntington Hospital and all others acting on the Hospital's behalf, including any affiliates, programs, employees, directors, agents, contractors, representatives, board members, committees, subcommittees, working groups, and task forces."  Plaintiffs are defined as "the plaintiffs named in this action, the City of Huntington and Cabell County, including but not limited to its executive and legislative branches, agencies, offices, departments, divisions, commissions, committees, subcommittees, boards, directors, administrators, employees, agents, contractors, vendors, instrumentalities, representatives, counsel, and all persons and entities acting or purporting to act under their control or on their behalf."

As to the latter, the Hospitals would question whether this information is not better suited for response by Plaintiffs or whether wide swaths of this information may have previously been produced.  Pursuant to Fed. R. Civ. P. 26(b)(2)(C), on motion or its own volition, the court must limit the frequency or extent of discovery if it determines that (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample

opportunity to obtain the information by discovery in the action; or, (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Under either authority, this request is overly broad, unreasonably cumulative or can be obtained from some other source that is more convenient, less burdensome, or less expensive. Again, this is but one of nineteen (19) similar requests to Cabell and one of thirty-four (34) similar requests to St. Mary's.  The vast majority of these requests are not narrowly tailored but drafted to be excessively broad.  There is little dispute that these mechanical requests carry some burden, especially when considering that the temporal scope is approximately twenty-four years in duration.  The Hospitals would assert that the associated burden of compliance is not simply improper but is facially overbroad.

IV.   Conclusion:

For the foregoing reasons, the Hospitals submit this Response to *Defendants' Motion to Compel Third-Party Discovery* in order to preserve their rights to seek relief from the Court in the event that negotiations ultimately fail.  The Hospitals respectfully request that the Court hold these issues in abeyance with a right to renew objections at a later date.  Alternatively, should the Court determine that judicial intervention is currently necessary, the Hospitals respectfully request that this Response be accepted by the Court as an outline of the Hospital's general objections to the pending Subpoenas, and deny, quash or otherwise modify the Subpoenas as the Court deems fair and equitable under the circumstances.

Respectfully submitted,

**CABELL HUNTINGTON HOSPITAL, INC.**
**AND ST. MARY'S MEDICAL CENTER, INC.**


/s/  Ryan Q. Ashworth_____
Of Counsel


Thomas L. Craig, Esquire (WV 859)
Ryan Q. Ashworth, Esquire (WV 10451)
BAILES, CRAIG, YON & SELLARDS, PLLC
Post Office Box 1926
Huntington, West Virginia 25720-1926
(304) 697-4700 - Telephone
(304) 697-4714 – Facsimile
tlc@bcyon.com
rqa@bcyon.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CITY OF HUNTINGTON;                          :
CABELL COUNTY COMMISSION,
                                             :     **Civil Action No. 3:17-01362**
                          Plaintiffs,              **Civil Action No. 3:17-01665**
                                             :     *(Consolidated)*
v.
                                             :

AMERISOURCEBERGEN DRUG                       :
CORPORATION, *et al.*,
                                             :
                          Defendants.
                                             :

## CERTIFICATE OF SERVICE

The undersigned, counsel for Cabell Huntington Hospital, Inc., and St. Mary's Medical

Center, Inc., does hereby certify that the foregoing **"Joint Response to Defendant's Motion to**

**Compel Third-Party Discovery and Right to Renew Motion to Quash"** has this 27th day of

May, been duly served upon counsel of record by electronic transmission.


                                        /s/ Ryan Q. Ashworth_____
                                        Of Counsel

Thomas L. Craig, Esquire (WV 859)
Ryan Q. Ashworth, Esquire (WV 10451)
BAILES, CRAIG, YON & SELLARDS, PLLC
Post Office Box 1926
Huntington, West Virginia 25720-1926
(304) 697-4700 - Telephone
(304) 697-4714 – Facsimile
tlc@bcyon.com
rqa@bcyon.com