UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

THE CITY OF HUNTINGTON,
    Plaintiff,

v.                                                    Civil Action No. 3:17-01362

AMERISOURCEBERGEN DRUG
CORPORATION, *et al.*
    Defendants.

CABELL COUNTY COMMISSION,
     Plaintiff,

v.                                                   Civil Action No. 3:17-01665

AMERISOURCEBERGEN DRUG
CORPORATION, *et al.*
    Defendants.

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO COMPEL DISCOVERY RESPONSES

Defendants seek to compel a meet and confer with Plaintiffs that they ask occur under the supervision of Special Master Wilkes. (Defs' Mem. at 1). However, Defendants' motion is premature and unnecessary. Defendants have sent Plaintiffs multiple letters which raised questions and concerns about various aspects of Plaintiffs' document productions and Plaintiffs have responded accordingly via response letters and/or through the production of documents. At no point have the Defendants requested an additional meet and confer on Plaintiffs' document productions. Plaintiffs are not opposed to such a meet and confer, but as described in more detail below, the conference should be narrowly tailored to address only those issues that can objectively be discussed.

Thus, there is no dispute as to the requested meet and confer, which renders Defendants' motion moot. However, given that Defendants have engaged in numerous unfounded attacks on

Plaintiffs' document productions, Plaintiffs also endeavor here to respond to those attacks. Plaintiffs are hopeful this response will further clarify the record and set the stage for a meaningful and fruitful meet and confer with Defendants on these matters.

## I. **PLAINTIFFS HAVE UNDERTAKEN GREAT EFFORTS TO PRODUCE A LARGE NUMBER OF DOCUMENTS IN A STREAMLINED AND DILIGENT FASHION**

Plaintiffs have vigorously and diligently worked to produce an extremely large volume of documents during a relatively short time period. Yet, rather than applaud these herculean efforts, Defendants have continually issued letters to Plaintiffs raising nondescript, generalized concerns about Plaintiffs productions. As is demonstrated more fully below, Plaintiffs productions are not deficient in any material respect.

### A. THE CABELL COUNTY COMMISSION'S PRODUCTIONS

Defendants' complaints about the Cabell County Commission's document productions are without merit. The Cabell County Commission has been extremely accommodating of Defendants exceedingly broad discovery requests throughout the litigation of this case and has worked feverishly to produce an enormous number of documents requested by Defendants stemming from those requests. Before addressing Defendants' baseless complaints about what the Cabell County Commission has not produced, the Cabell County Commission believes it is important to detail the breadth of information it has produced.

To date, the Cabell County Commission has produced 415,074 documents spanning 2,234,230 pages collected from forty-eight (48) individual custodians along with the servers and other shared storage media used by the Commission and its subdivisions. These collections involved the Cabell County Clerk, Cabell County EMS, Cabell County 911, Cabell County Circuit Clerk, Cabell County Assessor's Office, Cabell County Prosecutor's Office, and the Law

Enforcement and Tax Divisions of the Cabell County Sheriff's Office. These documents were collected as both ESI and in paper hard copy form and represent over ten terabytes of data.

In its diligent efforts to fulfill its discovery obligations in this matter, the Cabell County Commission employed a team of experts in civil litigation and discovery, eDiscovery, IT matters, and digital forensic examination. As part of its extensive and thorough data mapping process, Cabell County interviewed over one hundred current and former employees, agents, and vendors with knowledge of substantive issues of the facts surrounding the opioid crisis in Cabell County as well as IT professionals who gave a detailed and complete understanding of County IT infrastructure. In addition to individual user profiles and other data from County workstations that contained relevant program files generated by County personnel, Cabell County also collected a large volume of County server data including, but not limited to: Commission agendas and minutes, budgets and other financial records for all subdivisions; insurance coverage and claim information; vital statistics and records; EMS and 911 dispatch records; law enforcement investigation and incident reports; judicial case files; and a host of administrative and operational information in the form of policies, procedures, and organizational charts. As a result of its exhaustive efforts to thoroughly fulfill its discovery obligations, the Cabell County Commission has diligently produced relevant documents since December 7, 2019 in twenty-four separate document productions.

### B.   CITY OF HUNTINGTON'S PRODUCTIONS

Likewise, the City of Huntington has gone over and beyond in its efforts to answer Defendants' sweeping discovery requests in this litigation. To date, the City of Huntington has produced hundreds of thousands of documents it has collected from over 50 agreed to custodians, as well as documents from various departments in the City, including the Law Enforcement, Fire

Department, Finance Department, Development and Planning, Public Works, City Council, Purchasing and the Mayor's office. Plaintiffs collected these documents in both ESI and hardcopy form. With respect to law enforcement-related documents alone, Plaintiffs have taken on the arduous task of identifying, searching, reviewing, and producing documents from nearly 200 boxes of hard copy Huntington Police Department patrol and Drug Unit incident reports, court disposition records, arrest records and investigative files and reports.

Moreover, Plaintiff has spent a considerable amount of time interviewing dozens of City employees and officials, coordinating with the City's IT department and working with professional discovery vendors to identify, assess, process, review and produce hard copy and electronic files responsive to discovery in this litigation. Plaintiff's efforts have culminated in the production of hundreds of thousands of documents responsive to Defendants' requests in this case, including, but not limited to: compilations of information from various fire and law enforcement case management databases, annual reports and statistical documents, presentations, overdose information, budgets and expense documentation, grant materials, strategic plans, programs and initiatives.

## II. PLAINTIFFS HAVE PROPERLY RESPONDED TO DEFENDANTS' REPEATED REQUESTS FOR ADDITIONAL INFORMATION CONCERNING PLAINTIFFS' PRODUCTIONS

### A. THE CABELL COUNTY COMMISSION

Defendants erroneously argue that Plaintiffs have refused to "meaningfully address gaps in their productions". (Defs' Mem. at 1). However, throughout the process of responding to Defendants' discovery requests, the Cabell County Commission has communicated in good faith with Defendants to answer questions and discuss perceived deficiencies and other issues with our discovery responses and production of documents. The Cabell County Commission has

4

supplemented its initial discovery efforts with several rounds of additional interviews and collections in response to the meet and confer process and other communications with Defendants as well as to Discovery Ruling No. 1.

And even if Plaintiffs had been less cooperative than they have been thus far, the requested meet and confer could not address the majority of issues raised in Defendants' motion. For example, Defendants discuss their view that many of the documents produced by Plaintiffs are in their subjective view irrelevant or include duplicative information. (Defs' Mem. at 3). Since these complaints relate to documents already produced, a meet and confer cannot serve to address those unfounded complaints. Likewise, Defendants complain that Plaintiffs have produced documents for custodians after stating that productions are substantially complete for those custodians. (Defs' Mem. at 5-6). Without engaging in a semantical debate over the term "substantially complete", Plaintiffs have now produced these documents and a meet and confer can thus serve no purpose in this regard. Therefore, to the extent a meet and confer is truly something Defendants seek, it needs to focus on matters that it would be productive to address.

### B. THE CITY OF HUNTINGTON

Throughout the discovery process, Plaintiffs have diligently worked and communicated in good faith with Defendants by participating in numerous meet and confers regarding various discovery issues including search terms and custodial files. The City of Huntington remains willing to address any issues concerning certain averred production deficiencies that can reasonably be addressed and resolved via meet and confer. At some point, however, the Defendants' questions concerning the documents Plaintiffs have produced should be directed to the witnesses that Defendants intend to depose. Plaintiffs have fulfilled their obligation to collect documents that exist, review said documents and to produce what is responsive.

### III. PLAINTIFFS' PRODUCTIONS ARE NOT DEFICIENT

#### A.     THE CABELL COUNTY COMMISSION

Defendants also incorrectly argue that Plaintiffs' document productions are deficient. They premise this argument largely on two faulty contentions. First, Defendants assert that Plaintiffs have produced fewer documents for some custodians than Defendants think should have been produced. But, as with many other aspects of Defendants' arguments, this is an extremely generalized contention that is impossible to squarely address. Of course, since the custodial document productions involve filtering documents based on what hits on agreed upon search terms, there are generally many fewer documents produced for these custodians than are actually collected for them. This is quite simply driven by how involved the individual has been in dealing with topics that are covered by the agreed upon search terms.[1]

Second, Defendants have complained about the lack of documents that exist for several custodians for Cabell County. But again, there are plausible explanations for the lack of documents for these custodians, which have, for the most part, already been conveyed to the Defendants. By way of example, most of the Cabell County custodians with no custodial documents are a direct result of the length of time that the employees had been removed from County employment by the time the litigation hold was put in place in this case. Quite simply, the custodial documents for these individuals had been purged well before the litigation hold was put in place in 2017.[2]

---

[1] This is not a topic that can be addressed in a meet and confer absent a great deal more detail being provided by the Defendants. The Defendants' vague contentions made thus far simply provide nothing for Plaintiffs to address.

[2] The witnesses for Cabell County that clearly fall into this category are as follows: Scott Bias (departure from County employment in 2012), James Sheidler (departure from County employment in 2009), Kim Wolfe (departure from County employment in 2009), Stephen Zoeller (departure from County employment in 2012). Additionally, Ottie Adkins and Adele Chandler left County employment in 2016 and their custodial documents were deleted soon thereafter.

Defendants should be very familiar with this concept, as it has been a basis for their own failure to produce custodial files for multiple witnesses during the course of this litigation.

Other Cabell County custodians had documents collected for them, but nothing that was responsive to the agreed upon search terms. This is generally due to the fact that these witnesses were employed in positions that were removed from directly addressing the opioid epidemic. Clayton Bates is an excellent example of this type of custodian. More than 1,000 custodial documents were collected for Mr. Bates, but none met the search terms criteria. This is easily explained by the fact that Mr. Bates has worked in the IT department for the Cabell County Commission for a short period of time and doesn't work on matters that directly involve the opioid epidemic. Given his title and short tenure (2015-2017), the lack of responsive documents is far from surprising.[3]

Finally, David Wright presents with his own unique factual scenario. He works as a consultant for Cabell County EMS and is only onsite approximately one day per month. He previously had a County email address, but that address was discontinued years ago due to lack of use. For years Mr. Wright has operated without a County email address and it is the Cabell County Commission's understanding that he does not typically generate documents in his capacity as a consultant for Cabell County EMS. Therefore, the lack of custodial documents for him is also easily understandable.

Thus, from these basic explanations – many of which have already been conveyed to Defendants or should otherwise be obvious to them – there are no deficiencies that can be claimed based on the documents produced by the Plaintiffs.

---

[3] Betty Bates and Mary Beth Steele also fit well within this category of custodians. Each had a job that was removed from being involved in dealing with the opioid epidemic and thus the lack of responsive documents for them is understandable. Betty Bates is a former chief tax deputy for the Sheriff's office and Mary Beth Steele previously worked as a clerical worker in accounts payable for Cabell County EMS.

Finally, the Cabell County Commission has retained an independent auditor, Interhack Corporation, to evaluate its collections and productions in this case. As indicated in the attached affidavit from Interhack's founder Matthew Curtin, no "deficiencies in the collection or production of documents from Cabell County" have been identified thus far.[4] (Interhack Affidavit at ¶ 2). This finding was reached with the specific contemplation of the complaints Defendants have raised about the Cabell County Commission's collection and production efforts, as outlined in their instant motion. (Interhack Affidavit at ¶ 3). While Interhack's audit is not entirely complete, this finding further supports Cabell County's position that its collection and production processes have been compliant and adequate. Of course, if this audit reveals matters that need to be addressed further the Cabell County Commission will not hesitate to do so.

      **B.    THE CITY OF HUNTINGTON**

Defendants' contentions as to deficiencies in the City of Huntington's production are similarly flawed. As Plaintiff previously explained, to the extent there are any duplicative files in the City's document production, this is due to the nature of how electronic information on the City of Huntington's backup archival servers is stored and kept in the ordinary manner of business.

The City of Huntington has gone over and above, employing great time, effort and resources to search for, obtain, review and produce any responsive documents that could be identified for the Parties' agreed upon 54 custodians. Indeed, Plaintiffs were able to identify and produce responsive, non-privileged[5] documents for a majority of the custodians Defendants requested, and, as discussed more fully below, have been upfront with Defendants concerning the

---

[4] *See* Interhack Affidavit attached as Exhibit A.

[5] Plaintiffs are diligently working on the privilege log and intend to release into production any documents that upon further review should not be on the privilege log. Plaintiffs have produced all such documents for those individuals Defendants identified as "priority deponents."

8

fact that no responsive documents were located for certain agreed to custodians. As Plaintiffs have previously explained to Defendants, when possible, Plaintiffs collected the individualized, electronic mailboxes for requested custodians. The information stored on those mailboxes was searched for non-privileged, responsive documents and subsequently produced.

Because personalized electronic mailboxes were not available for many of the City's former employees, and because the City's archival servers account for the farthest back in time electronically stored e-mails exist in the City's custody and control, Plaintiff also searched and produced electronic communications from the City's two archival, backup servers. Specifically, the City located, reviewed and produced communications for requested custodians using the To/From/CC/BCC field in the City of Huntington and the Huntington Police Department's backup servers. For example, although Defendants assert that the City of Huntington has produced zero documents for Carl Eastham, Greg Fuller, Krishawna Harless, Brandi Jacob Jones, and Mike Shockley, Plaintiffs have in fact located and produced these individuals' communications from the email archive. *See, e.g.*, Carl Eastham (HUNT015, HUNT031), Greg Fuller (HUNT039), Krishawna Harless (HUNT015, HUNT016, HUNT023, HUNT030), Brandi Jacob-Jones (HUNT035) and Mike Shockley (HUNT033). Similarly, Defendants also falsely state that Plaintiffs produced no documents for Former Mayor Kim Wolfe, however Plaintiffs did produce documents identified for Mr. Wolfe in Volume HUNT020.

Moreover, as discussed above, Plaintiffs have kept Defendants informed of instances wherein responsive documents were not identified for a given individual. For example, in their March 17, 2020 letter to Defendants following up on the Parties' prior March 11, 2020 meet and confer, Plaintiffs advised Defendants that a diligent search yielded no responsive documents for city council members Joyce Clark, Russell Houck or Tom McGuffin. Similarly, Plaintiffs' March

9

26, 2020 joint status report advised that after diligently searching, the City was unable to locate responsive documents from the custodial files of: Brandi Jacob Jones[6] and David Felinton and C. Creig Moore.[7]

On April 6, 2020, Defendants filed a motion to compel six (6) additional custodial files.[8] Plaintiffs responded to this motion on April 15, 2020.[9] In a good faith effort to prevent additional delay, Plaintiffs subsequently withdrew their objections to Defendants' Motion to Compel on April 20, 2020 and agreed to produce responsive documents for these requested custodians. In that same letter, Plaintiffs advised Defendants that after diligently searching, they were unable to locate any responsive documents for two of the six requested custodians: Robert Wilhelm and Gene Baumgardner.[10]

Additionally, Defendants bemoan that "for 13 of its remaining custodians, Huntington has produced fewer than 100 documents; for six of those, Huntington has produced fewer than ten documents." (Def's Mem. at 4). However, Plaintiffs can only produce what exists and is responsive. Of note, several of the custodians that likely fall into this category[11] are City Council members. Defendants insisted that the City produce these individual's custodial files despite the

---

[6] Documents associated with Brandi Jacob Jones were identified from the City's backup server and were promptly produced in Volume 35.

[7] *See* Plaintiffs Cabell County Commission and City of Huntington's First Joint Discovery Status Report filed March 26, 2020 at Doc. # 0254-0 attached as Exhibit B.

[8] Specifically, Defendants requested the custodial files of: Justin Antle, Huntington Deputy Fire Chief; John Ellis, City of Huntington Police Captain; Gene Baumgardner, former Huntington Police Chief; Robert Wilhelm, City of Huntington Former Finance Director; Greg Fuller, Huntington Former Fire Chief; and Angie Bracey, Executive Assistant to the Huntington Mayor. *See* April 6, 2020 Motion to Compel at Doc. # 0283-0 attached as Exhibit C.

[9] *See* Plaintiff's Response to Defendants Motion to Compel at Doc. # 326-0 attached as Exhibit D.

[10] Plaintiffs were able to identify documents associated with Greg Fuller form the City's backup archival server, produced in Vols. 38 and 39.

[11] Defendants' Motion does not expressly identify these thirteen custodians.

fact that Plaintiffs had already produced thousands of documents for the City Council.[12] Specifically, Plaintiffs produced the custodial file of Barbara Miller, the City Clerk currently responsible for maintaining City Council documents. Documents from her custodial file encompass documents dating back to 2006 and include City Council minutes and minute synopses, City Council agendas and documents from the City Council's general file, which includes documents and materials germane to each Council meeting.

Defendants also argue that Huntington's production of non-custodial files is deficient and that the City of Huntington has produced "only one" document from the departmental files of its Fire Department. This is plainly false. As a preliminary matter, the "one" document Defendants reference is actually a collection of Narcan Administration forms ranging from 2016 to 2019. The City of Huntington has also produced a number of documents reflecting departmental data which track members of Huntington Fire departments' dispatches and runs from 2006 to 2016 (inclusive of approximately 6,000 entries) and overdose incidences from 2017 to 2019. For example, as Plaintiffs explained in their April 10, 2020 letter to Defendants, the City of Huntington has produced departmental documents for the Huntington Fire Department from the National Fire Incident Reporting System ("NFIRS") and the Firehouse Database, as part of Jan Rader's custodial file.[13] Moreover, the custodial file of Jan Rader also includes information concerning the Huntington Fire department budget, grant information, and overdose statistical reports among other department wide information.

---

[12] Plaintiffs maintain that Defendants' request for the custodial file for each of the twelve (12) separate City Council members that Defendants identified was improper, duplicative, and unduly burdensome for the purposes of this litigation. However, because Defendants were unwilling to defer on these individuals, Plaintiffs ultimately agreed to search for and produce these custodial files in the interest of avoiding discovery disputes that could otherwise delay this litigation.

[13] *See* April 10, 2020 Letter concerning priority deponents attached as Exhibit E.

11

Further, as discussed above, Plaintiffs have reviewed and produced thousands of hard copy documents from the Huntington Police Department and Huntington Police Department's Special Investigations Bureau ("The Drug Unit"). Plaintiffs have also produced the custodial file for the Captain of Huntington Police Department's Administrative Bureau, Dan Underwood, which includes department-wide documents such as information compiled from case management databases regarding criminal incidences and arrests, certain annual reports, grant applications and documents pertaining to budget, and overtime information.

### IV. DEFENDANTS' REQUESTS FOR ADDITIONAL CITY OF HUNTINGTON CUSTODIANS SHOULD BE DENIED

On December 31, 2019, Defendants requested the files of 70 individual custodians for the City of Huntington. Many of these custodial files were not in the custody or control of the City. To the extent that certain files were within the City's custody, many of Defendants' requests were duplicative and/or sought information outside of the time frame relevant to this litigation. However, in an effort to minimize all potential delay, Plaintiffs initially agreed to search for and produce responsive documents for 48 custodians.

#### A. THE CITY OF HUNTINGTON HAS ALREADY PRODUCED AN EXTENSIVE NUMBER OF CUSTODIAL FILES SPANNING MULTIPLE DIFFERENT DEPARTMENTS

These 48 agreed to custodians are current and former employees whose positions span the areas of departments across the city, including and extensively within the police department. The City of Huntington also produced departmental records, including incident reports, arrest records, court dispositions, drug unit investigative files and exports from various records management systems and databases. To the extent any electronic files or hard copy files for an agreed to custodian could be identified, Plaintiffs collected, searched and produced responsive and non-privileged documents accordingly. As discussed *supra* Section III.B, on April 6, 2020, Defendants

12

filed a Motion to Compel seeking six (6) more custodians. Plaintiffs ultimately agreed to produce these six custodial files, bringing the total number of agreed to custodians to 54. Now, in the instant motion to compel, filed on May 15, 2020, Defendants seek the custodial files of seven (7) additional current and former City of Huntington employees.

**B. DEFENDANTS' REQUEST FOR ADDITIONAL CUSTODIAL FILES IS CONTRARY TO THE FEDERAL RULES OF CIVIL PROCEDURE'S STANDARD OF PROPORTIONALITY.**

Defendants argue that the production of additional custodial files is appropriate because "Huntington itself identified these people as holding relevant positions" and because the custodial files could have information responsive to Defendants' discovery requests. (Defs' Mem. at 7). However, Defendants' arguments fail to apply to the analysis required under the Federal Rules of Civil Procedure. Specifically, Fed. R. Civ. P. 26(b)(1) provides the general limits on the scope of discovery and clearly limits discovery to information, including electronically stored information ("ESI") that is "relevant to any party's claim or defense and proportional to the needs of the case." Pursuant to this rule, the relevant inquiry is not whether these custodial files could have documents with information responsive to Defendants' discovery requests, but rather, whether these files are likely to have relevant, non-duplicative documents, the production of which is likely to be proportional to the needs of the case and not otherwise cumulative. This proportionality standard is particularly significant in cases involving a large amount of electronically stored information ("ESI") that is searched, reviewed, and produced. Accordingly, additional document custodians are only appropriate in instances where the requested custodians are likely to "provide unique relevant information not already obtained." *Garcia Ramirez v. U.S. Immigration & Customs Enf't*, 331 F.R.D. 194, 198 (D.D.C. 2019).

Accordingly, federal courts have routinely denied motions to compel additional document custodians where, like here, a party has not and cannot explain how information from additional custodians would not be duplicative. *See, e.g., U.S. ex rel. McBride v. Halliburton Co.*, 272 F.R.D. 235, 241 (D.D.C. 2011) (denying motion to compel additional document custodians when plaintiff had an insufficient basis to believe the additional custodians had documents that were "highly probative of some fact"); *Nevro Corp v. Bos. Sci. Corp.*, No. 16-CV-06830-VC (MEJ), 2017 WL 2687806, at *3 (N.D. Cal. June 22, 2017) (denying request for additional document custodians, noting "Although *Nevro* refers to a number of individuals whose emails may be relevant to its claims, it does not explain how information from additional custodians would not be duplicative . . ."); *Enslin v. Coca-Cola Co.*, No. 2:14-CV-06476, 2016 WL 7013508, at *1 (E.D. Pa. May 13, 2016) (denying motion to compel additional document custodians on the grounds that "while Plaintiff explained why he believes that these additional individuals may have some connection to the events at issue in this action, he did not articulate any basis to believe that Defendants' search and production of responsive documents was inadequate; in other words, why they would be in possession of additional non-cumulative responsive information.").

Rule 26 requires discovery that is calculated to be reasonably proportional to the needs of the case. This rule does not compel a party to turn over any and every custodial file that may have documents with discoverable information. Indeed, "[s]imply because information is discoverable under Rule 26…does not mean that discovery must be had." *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005) (citing *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004)). " *See also McKelvey v. W. Reg'l Jail*, 2015 WL 2144668, at *4 (S.D. W.Va. May 7, 2015).

Moreover, Rule 26(b)(2)(C) requires the court, on motion or on its own, to limit the frequency and extent of discovery, when (1) "the discovery sought is unreasonably cumulative or duplicative;" (2) the discovery "can be obtained from some other source that is more convenient, less burdensome, or less expensive;" (3) "the party seeking the discovery has already had ample opportunity to collect the requested information by discovery in the action;" or (4) "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). This rule "cautions that all permissible discovery must be measured against the yardstick of proportionality." *Lynn v. Monarch Recovery Management, Inc.*, 285 F.R.D. 350, 355 (D.Md. 2012) (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 523 (D. Md. 2010)). *See also McKelvey v. W. Reg'l Jail*, 2015 WL 2144668, at *5-6 (S.D. W. Va. May 7, 2015); *Martin v. State Farm Mut. Auto. Ins. Co.*, No. 3:10-CV-0144, 2011 WL 13228851, at *5 (S.D. W.Va. Jan. 20, 2011) ("Fed Rule Civ. P. 26(b)(2) requires limitations on discovery when (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; . . .").

### C. THE CUSTODIAL FILES REQUESTED ARE LIKELY TO BE CUMULATIVE AND DUPLICATIVE OF PLAINTIFFS' PRODUCTIONS TO DATE

As explained in greater detail below, Defendants have not – and cannot – provide any basis for why the production of custodial files for these additional individuals is likely to provide Defendants with additional, non-cumulative, and responsive information proportional to the needs of this case.

        a. <u>Information from the Custodial Files of the Five Additional Huntington Police Department Officers Requested is Likely to be Duplicative of Information Already Produced</u>

Defendants argue that they are entitled to the custodial files for five (5) additional Huntington police officers on the grounds that these individuals were identified in Plaintiffs' Supplemental Responses to Defendants' First Set of Interrogatories. However, Plaintiffs' Supplemental Responses merely indicated that these individuals would have relevant documents or knowledge – not that they would have unique documents or knowledge. To the contrary, it is far more likely that any information in these individuals' custodial files would be duplicative of information already produced. Indeed, as Plaintiffs outlined in their May 12, 2020 letter, the City has now produced hundreds of thousands of records, including electronic mail and other documents from the custodial files of numerous individuals holding numerous different positions in the Huntington Police Department.[14] For example, Plaintiffs have produced the custodial files of Huntington Police officers who are also drug task force members, including the custodial files of Sgt. Paul Hunter (Head of the Drug Unit), Sgt. Paul Minigh, and Sgt. Shane Bills. Irrespective of custodial files, the City of Huntington also searched the Huntington Police Department email archive for documents pertaining to the DEA Task Force, FBI Task Force and Huntington Violent Crime and Drug Task force and produced any responsive and non-privileged task force related documents that were identified. Production of the custodial files of Paul Matovich, Stephen Maniskas, Adrian Rosario, Greg Moore and Sid Hinchman are likely to be largely duplicative of these task force-related documents. (*See* Plaintiff Production Volumes 45-48)

---

[14] *See* May 12, 2020 Letter concerning 7 additional custodians attached as Exhibit F.

In addition to these aforementioned documents, Huntington has produced hard copy files and information gathered from case management databases from the Drug Unit, which includes documents relating to task force cases and the five newly requested police officers.

Although the request for custodial files of these additional 5 police officers is unduly burdensome, cumulative and duplicative in consideration of what has already been collected and produced, in good faith, Plaintiffs are willing to produce any remaining responsive files that can be identified, for Paul Matovich, as Defendants have identified him as a witness they intend to depose in their letter on Friday, May 22, 2020.[15]

                    b.    <u>Information from the Custodial Files of Charles Shaw and Ralph Rider</u>

With respect to the other 2 of the 7 newly requested custodians, Interrogatory No. 3 asks Plaintiffs to: "Identify each Person in Your entity, for each year of the Timeframe, who held the following positions or their equivalents…" Plaintiffs supplemented this Interrogatory with the aforementioned five Huntington Police Department officers as well as with Charles Shaw (who was appointed to City Council less than 3 months ago on March 3, 2020) and Ralph Rider, who served briefly as interim fire chief in 2011, with the intention to provide an accurate update of tenure for former and past employees per department. Plaintiffs are not claiming that these individuals possess documents, data, other information relating to the allegations in the instant case and they are not appropriate custodians. Notably, Defendants have already requested custodial files for 6 current and former members of the fire department and 12 City Council members to date.

The mere fact that an individual works or worked in a given position does not automatically deem them an appropriate "custodian" for the purposes of this litigation. Rather, an appropriate

---

[15] *See* May 22, 2020 Letter concerning deponents attached as Exhibit G.

custodian is an individual whom based on a good faith investigation is most likely to have non-cumulative discoverable information. The inquiry is not whether an individual was identified as someone potentially having discoverable information, but rather, whether this individual is likely to have unique information that is not otherwise duplicative of the information and documents produced by other custodians in this litigation. As explained above, to the extent the additional custodians Defendants have identified are likely to have information responsive to Defendants' requests, the responsive information would be cumulative to the information the City has already collected and produced.

With the exception of Plaintiffs noted agreeability with producing any identifiable custodial files for Paul Matovich (thereby mooting the Motion to Compel as to his custodial file), the discovery sought for the remaining six individuals is unreasonably cumulative and duplicative of the numerous documents Plaintiffs have already provided from more than 50 custodians.

## V. **CONCLUSION**

In sum, both the City of Huntington and the Cabell County Commission are amenable to a meet and confer on narrowly tailored issues concerning Defendants asserted production deficiencies. However, as demonstrated herein, Plaintiffs are confident that no such deficiencies exist. Additionally, for the reasons set forth above, Plaintiff, City of Huntington, respectfully asks the Court to deny Defendants' request to compel the custodial files of: Stephen Maniskas, Adrian Rosario, Greg Moore, Sid Hinchman, Charles Shaw, and Ralph Rider.

Dated:  May 27, 2020                                        Respectfully submitted,

| THE CITY OF HUNTINGTON | CABELL COUNTY COMMISSION |
|---|---|
| /s/ *Anne McGinness Kearse* | /s/ *Paul T. Farrell, Jr.* |
| Anne McGinness Kearse (WVSB No. 12547) | Paul T. Farrell, Jr., Esq. (WVSB No. 7443) |
| **MOTLEY RICE LLC** | **FARRELL LAW** |
| 28 Bridgeside Blvd. | P.O. Box 1180 |
| Mount Pleasant, SC 29464 | Huntington, WV 25714-1180 |
| Tel:  843-216-9000 | 422 Ninth Street, 3rd Floor |
| Fax:  843-216-9450 | Huntington, West Virginia 25701 |
| akearse@motleyrice.com | office: 304.523.7285 |
| | cell: 304.654.8281 |
| | email: paul@farrell.law |

19

**CERTIFICATE OF SERVICE**

I hereby certify that on May 27, 2020, PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO COMPEL DISCOVERY RESPONSES was filed electronically via the CM/ECF electronic filing system and served on all counsel registered in the system and via email to plaintiffs' listserv at mdl2804discovery@motleyrice.com and defendants' listserv at track2opioiddefendants@reedsmith.com.

/s/ Monique Christenson
Monique Christenson (SC Bar No. 104063)