IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

THE CITY OF HUNTINGTON and
CABELL COUNTY COMMISSION,
     Plaintiffs,

v.                                           CIVIL ACTION NO. 3:17-01362

AMERISOURCEBERGEN DRUG
CORPORATION, et al.,
     Defendants.

**PLAINTIFFS' JOINT MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO COMPEL DISCOVERY RESPONSES**

Defendants request the production of additional custodial files they claim are "essential" to their "ability to defend themselves in this action."[1] To date, the parties have agreed to ninety-three (93) human custodians and a host of departmental custodians in this litigation. Accordingly, Plaintiffs have collectively produced over 3 million pages of documents from various departments and individuals in the Cabell County Commission and the City of Huntington that are responsive to defendants' requests in this litigation. The purpose of identifying custodians is to streamline discovery and produce information from individuals most likely to have non-cumulative, discoverable information. The requested production of custodial files for twenty (20) custodians at the Cabell County Prosecutor's Office sought from the Cabell County Commission is unnecessarily burdensome, contains information that is duplicative of what has already been produced in this litigation, and is rife with protected attorney work product. Similarly, the requested production of six (6) additional custodial files from the City of Huntington is unreasonably cumulative and duplicative in light what Plaintiffs have already produced in their significant quantity of custodial files and departmental files. Accordingly, for the reasons

---

[1] *See* Defendants' Memorandum in Support of Defendants' Motion to Compel (Def.'s Mem.) at p. 1, attached hereto as Exhibit 1.

1

discussed in greater detail below, Plaintiffs request that Defendants' Motion to Compel be denied in all respects.

## ARGUMENT

I. **DEFENDANTS' REQUESTS FOR ADDITIONAL CUSTODIANS SHOULD BE DENIED AS CUMULATIVE, DUPLICATIVE, AND DISPROPORTIONATE UNDER THE FEDERAL RULES**

Defendants argue that the production of additional custodial files is appropriate because "Plaintiffs have not argued that any of these custodial files are irrelevant or subject to a privilege"[2] and because the custodial files could have information responsive to Defendants' discovery requests. However, Defendants' arguments fail to apply to the analysis required under the Federal Rules of Civil Procedure. Specifically, Fed. R. Civ. P. 26(b)(1) provides the general limits on the scope of discovery and clearly limits discovery to information, including electronically stored information ("ESI") that is "relevant to any party's claim or defense and proportional to the needs of the case." Pursuant to this rule, the relevant inquiry is not whether these custodial files could have documents with information responsive to Defendants' discovery requests, but rather, whether these files are likely to have relevant, non-duplicative documents, the production of which is likely to be proportional to the needs of the case and not otherwise cumulative. This proportionality standard is particularly significant in cases involving a large amount of electronically stored information ("ESI") that is searched, reviewed, and produced. Accordingly, additional document custodians are only appropriate in instances where the requested custodians are likely to "provide unique relevant information not already obtained." *Garcia Ramirez v. U.S. Immigration & Customs Enf't*, 331 F.R.D. 194, 198 (D.D.C. 2019).

---

[2] Def.'s Mem. at 2, (Ex. 1).

2

Federal courts have routinely denied motions to compel additional document custodians where, like here, a party has not and cannot explain how information from additional custodians would not be duplicative. *See, e.g., U.S. ex rel. McBride v. Halliburton Co.*, 272 F.R.D. 235, 241 (D.D.C. 2011) (denying motion to compel additional document custodians when plaintiff had an insufficient basis to believe the additional custodians had documents that were "highly probative of some fact"); *Nevro Corp v. Bos. Sci. Corp.*, No. 16-CV-06830-VC (MEJ), 2017 WL 2687806, at *3 (N.D. Cal. June 22, 2017) (denying request for additional document custodians, noting "Although Nevro refers to a number of individuals whose emails may be relevant to its claims, it does not explain how information from additional custodians would not be duplicative . . ."); *Enslin v. Coca-Cola Co.*, No. 2:14-CV-06476, 2016 WL 7013508, at *1 (E.D. Pa. May 13, 2016) (denying motion to compel additional document custodians on the grounds that "while Plaintiff explained why he believes that these additional individuals may have some connection to the events at issue in this action, he did not articulate any basis to believe that Defendants' search and production of responsive documents was inadequate; in other words, why they would be in possession of additional non-cumulative responsive information.").

Defendants argue that they are entitled to additional custodians on the grounds that these custodians are likely to contain discoverable information. However, as explained below, Defendants have failed to articulate any basis for why Plaintiffs' search and production of custodial files for the Cabell County Prosecutor's Office, or the additional six City of Huntington custodians, is likely to provide additional, *non-cumulative*, responsive information.

3

## II. THE CABELL COUNTY COMMISSION SHOULD NOT BE COMPELLED TO PRODUCE CUSTODIAL FILES FOR MEMBERS OF THE CABELL COUNTY PROSECUTOR'S OFFICE.

Defendants' efforts to compel the production of custodial files for twenty (20) custodians who work at the Cabell County Prosecutor's Office – the majority of whom are barred attorneys who serve as prosecutors for Cabell County – should be denied. Defendants are correct that since January the Cabell County Commission has consistently maintained the position that the production of custodial files for these 20 custodians is inappropriate and unwarranted. This is because the request is not proportionate to the Defendants' discovery needs in the case, much of the information being sought by Defendants is protected work product or protected by other privileges, and the information that is discoverable has already been produced from other sources.

First, to understand the misleading nature of Defendants' Motion as to the custodial files from the Prosecutor's Office it is important to explain exactly what the Cabell County Commission has objected to producing and, likewise, what it has already produced and is still working to produce that relates to the investigation and prosecution of opioid related offenses in Cabell County. To date, the Cabell County Commission has agreed to search for and produce documents where available for forty-eight (48) unique human custodians along with the production of departmental data that is not tied to a specific human custodian. As of the date of this response, the Cabell County Commission has produced more than 1,525,000 pages of documents with additional documents to be produced in the coming days and weeks.

Moreover, the document productions to date have included many documents that are relevant to the investigation and prosecution of opioid related offenses. For example, the Cabell County Commission has already produced *all* of the closed, felony circuit court files in Cabell County, and closed investigative files related to opioid investigations from the Cabell County Sherriff's Office. The total volume of these productions alone is in excess of 129,000 documents

4

spanning more than 436,000 pages. Additionally, in response to Discovery Ruling 1, Cabell County is working with the Prosecutor's Office and the Sheriff's Office to identify whether they maintain any "lists, reports or other compilation of statistics of arrests for controlled substances by law enforcement agencies under their jurisdiction." (Discovery Ruling No. 1, page 6; ECF Doc. No. 248). If any such lists exist, those will also be produced on or before April 30th.

Defendants point to three defenses they contend these documents are relevant to: proximate causation, nonparty fault, and statute of limitations.[3] (Defs' Memo. At 12). Assuming, arguendo, that these are legitimate defenses – which they generally are not – the aforementioned circuit court files and documents from the Sheriff's Office are more than sufficient to address Defendants' discovery needs. The closed felony circuit court files that the Cabell County Commission has already provided to Defendants include everything that is on the court docket and that is related to any closed opioid case in Cabell County going as far back as 2006. The closed investigative files related to opioid investigations from the Cabell County Sherriff's Office have supplemented Defendants' access to those extensive court filings and provided significant insight into related investigations. Thus, the custodial files at the Prosecutor's Office relating to relevant closed opioid cases will be largely duplicative and cumulative of this information that has already been produced. Therefore, it is clear that the Cabell County Commission has and will continue to produce documents relevant to the investigation and prosecution of opioid related offenses.

---

[3] As is evident from Defendants' brief, Defendants quest for documents they contend are relevant to the statute of limitations is nothing more than an unwarranted fishing expedition. Relying solely on information from documents produced in Ohio and irrelevant statements made related to other counties in West Virginia, Defendants arbitrarily contend that there may be similar information contained in the Cabell County Prosecutor's custodial files. (Defs' Mem. at 12-13) (Ex. 1). These bald claims do not support carte blanche access to 20 custodial files from the Prosecutor's Office. Additionally, to the extent Defendants' truly seek information related to the statute of limitations they have already served extensive Requests for Admissions that more than amply cover that topic. (*See e.g.,* McKesson Corporation's First Set of Requests for Admission to Cabell County Commission). This discovery includes 76 separate Requests for Admission and almost all of them relate directly to arguments Defendants intend to make concerning the statute of limitations.

5

In light of the Cabell County Commission's past and continued productions, wholesale production of the 20 custodial files belonging to the custodians at the Prosecutor's Office is particularly *disproportionate* to the discovery needs of this case. In short, much (if not all) of the discoverable information that Defendants could hope to obtain from the subject custodial files is duplicative or cumulative of the information the Cabell County Commission has already produced. As such, discovery of the 20 custodial files is barred by Rule 26. *See Martin v. State Farm Mut. Auto. Ins. Co.*, No. 3:10-CV-0144, 2011 WL 13228851, at *5 (S.D.W.Va. Jan. 20, 2011) ("Fed Rule Civ. P. 26(b)(2) requires limitations on discovery when (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; . . .").

Second, large swaths – if not all – of the information in the 20 custodial files from the Prosecutor's office is protected attorney work product. Based on discussions with defense counsel during the meet and confer process, which has also been confirmed through Defendants' instant Motion, the documents Defendants truly seek are internal memorandums and e-mails from the Prosecutor's Office that describe the prosecutor's opinions about the strengths and weaknesses of a specific case. This information is a "textbook" example of attorney work product protected from discovery. *See State ex rel. U.S. Fid. & Guar. Co. v. Canady*, 460 S.E.2d 677, 690 (W. Va. 1995) ("In addition to [West Virginia] Rule [of Civil Procedure] 26(b)(3), this Court consistently has recognized that the work product exception may act as a bar to discovery requests."); *State ex rel. United Hosp. Ctr., Inc. v. Bedell*, 484 S.E.2d 199, 211 (W. Va. 1997) ("Where opinion work product is involved, the showing required to obtain discovery is even stronger since [West Virginia Rule of Civil Procedure 26(b)(3)] states that the court shall protect against disclosure of mental impressions, conclusions, opinions or legal theories.") (internal quotations omitted); *see also E.I. du Pont de Nemours & Co. v. Forma-Pack, Inc.*, 718 A.2d 1129, 1145 (Md. Ct. App. 1998)

6

("Courts have identified other categories of information which might be protected by either the attorney-client privilege or work product doctrine. These categories of information include communications involving: the strength or weakness of a specific claim[]"). The Work Product Doctrine would similarly prevent disclosure of any factual work product contained in the 20 custodial files. *Canady*, 460 S.E.2d at 691 (Fact work product and opinion work product "are generally protected and can be discovered only in limited circumstances[]") (quoting *In re Grand Jury Proceedings*, 33 F.3d 342, 348 (4th Cir. 1994)). Importantly, Defendants' Motion fails to make *any* showing necessary to justify the disclosure of any fact or opinion work product in the subject custodial files. Thus, production of those files is barred under West Virginia law. *See Canady*, 460 S.E.2d at 691 ("Fact work product can be discovered upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship . . . . Opinion work product is even more scrupulously protected . . . .").

Finally, to the extent the requested information is not duplicative or protected attorney work product, the requested custodial files contain a significant amount of information that is either privileged or confidential; either because it reflects information identifying (and disclosed by) confidential informants or undercover officers,[4] criminal records[5], records relating to minors,[6]

---

[4] *See Maclay v. Jones*, 542 S.E.2d 83, 86 (W. Va. 2000) ("A common law privilege is accorded the government against the disclosure of the identity of an informant who has furnished information concerning violations of law to officers charged with the enforcement of the law.").

[5] *See*, *e.g.*, W. Va. Code Ann. § 49-5-104(a) (requiring a court order for the disclosure of specified juvenile records); *State ex rel. W. Va. State Police v. Taylor*, 499 S.E.2d 283, 296 (W. Va. 1997) ("Therefore we hold that in the absence of exceptional circumstances, criminal history record information for an individual who does not consent to the release of the information may not be obtained by a *subpoena duces tecum* to a governmental or law enforcement agency issued at the request of a private party in civil litigation.").

[6] *See* W. Va. Code § 49-5-101(a) (prohibiting the disclosure of all "records and information concerning a child or juvenile which are maintained by" a law-enforcement agency); *see also* 34 C.F.R. § 99.31(9)(ii) (requiring redaction of personally identifiable information or notification of the parent or student before disclosure of personally identifiable information from the educational record of a student).

7

and/or records related to substance abuse.[7] As to many of these records, the Cabell County Commission would either need to (where applicable) redact specified information or require a court order specifically ordering the release of such information before disclosing the same. Accordingly, Plaintiff opposes wholesale production of these files due to this unnecessary burden as well.

### III. THE CITY OF HUNTINGTON SHOULD NOT BE ORDERED TO PRODUCE FILES FOR THE CUSTODIANS AT ISSUE

Defendants initially requested the files of seventy (70) human custodians for the City of Huntington. Many of these requested custodial files were not in the custody or control of the City and many were duplicative and/or outside the relevant time-frame. The City of Huntington agreed to forty-five (45) of these custodians, working diligently to collect, search, and produce their files. These agreed to custodians are current and former employees whose positions span the areas of law enforcement, fire department, mayoral oversight, finance, development and planning, public works, human resources, and city council:

1. Arthur, Scott, Budget Director (2017-Present)
2. Bailey, Kim, City of Huntington Purchasing Director (2017 - Present)
3. Bates, Mark, City Council, Council Member (2008-Present)
4. Bentley, Darla, Budget Director (2003-2016)
5. Bills, Shane, Police Detective (2005- Present)
6. Blackburn, Ernie, HPD Special Emphasis Unit, Sergeant (1993, on and off - Present)
7. Burns, Cathy, Huntington Municipal Development Authority Executive Director; Former/Acting City Manager (2016-2019)
8. Canafax, Ray, Huntington Fire Department, Deputy Chief (1999-Present, Deputy Chief since 2018)
9. Chambers, Bryan, City of Huntington Communications Director (2014- Present)
10. Chandler, Pam, Finance Division, Finance Director (2015-2017)
11. Ciccarelli, Joseph, Police Chief (2014 - 2018)

---

[7] *See, e.g.*, W. Va. Code R. 15-8-7 (indicating that information in the central repository of information regarding the prescribing, dispensing and consumption of certain controlled substances, drugs of concern, and opioid antagonists is confidential and should not be disclosed unless a court issues an order); 42 C.F.R. §§ 2.61-.64 (federal regulations governing the release of substance abuse records pursuant to a court order).

8

12. Cornwell, Ray, Police Captain; Acting Chief (2020)
13. Dial, Hank, City Manager(2019-Present); Former Police Chief (2018-2019)
14. Eastham, Carl, Huntington Fire Department, Chief (2013-2016)
15. Felinton, David, Former Mayor (2001 to 2008)
16. Ferguson, Teresa, Huntington Municipal Court, Clerk (TBD- Present)
17. Harless, Krishawna, Former Mental Health Liaison/Law Enforcement Assisted Diversion Coordinator
18. Holbrook, Skip, Police Chief (2007-2014)
19. Howe, Rebecca, City Council, Council Member (2008-Present)
20. Hunter, Paul, Huntington Police Department, FBI Violent Crimes Drug Task Force, Sergeant (TBD); Drug Task Force, supervisor; Head of City Law Enforcement Narcotics Unit (1996- Present)
21. Insco, Jim, Public Works Director (TBD-Present)
22. Jones, Brandi Jacob, City Manager/Director of Administration and Finance (2007-2014)
23. Johnson, Jim, Police Chief (April-Sept. 2014); MODCP Director (2014-2017)
24. Johnson, Rocky, Police Captain (2011-2019)
25. Kluemper, Ted, City Council Member (2019)
26. Layne, Margaret, City Manager (2014-2015)
27. Lemley, Scott, Planning and Development, Director (TBD-Present); former member of the MODCP (2014-2017)
28. Lewis, Sherry, City of Huntington Human Resources, Director (2001-Present)
29. McComas, Charles, City Council, Council Member (2016-Present)
30. Miller, Barbara, City Clerk (2001- Present)
31. Minigh, Paul, Police Sergeant (1999-Present)
32. Moore, C. Creig, Huntington Fire Department, Chief (2009-2011)
33. Moore, Kathy, Finance Division, Finance Director (2017-Present)
34. Page, Tonia Kay, City Council, Council Member (2016-Present)
35. Polan, Carol, City Council, Council Member (2016-Present)
36. Preece, Craig, Police Detective (1998- Present)
37. Radar, Jan, Huntington Fire Department, Chief (1994-Present, Chief since 2017); MODCP, Member (2014-2017)
38. Runyon, Deron, Finance Division, Finance Director (2009-2015)
39. Shell, Breanna, City of Huntington Planning Director (2012- Present)
40. Shockley, Mike, City Council, Council Member (2016-Present)
41. Underwood, Dan, Police Captain, Administrative Bureau (1994 – Current)
42. Vence, Alex, City Council, Council Member (2016-Present)
43. Wheeler, Jennifer, City Council, Council Member (2016-Present)
44. Williams, Steve, Mayor (2014-Present)
45. Wolfe, Kim, Mayor (2009-2013)

Huntington also collected and produced departmental records, including incident reports, arrest records, court dispositions, drug unit investigative files, and exports from various records

management systems and databases. To the extent any electronic files or hard copy files for an agreed-to custodian could be identified, Plaintiffs collected, searched, and produced responsive and non-privileged documents accordingly. More than 1.5 million pages of documents have been produced in this litigation by the City of Huntington alone, including a large amount of electronic correspondence and other documents. The information contained within these documents is responsive to Defendant's requests. Still, after the agreement and production of responsive files from forty-five (45) custodians and departmental files and multiple meet and confers[8], Defendants remain unsatisfied and file this Motion to Compel six (6) additional custodians.

### a. Defendants' Requests For These Six (6) Additional Custodians Are Unreasonable Under FRCP 26

Defendants seek to require Plaintiffs to supply files for additional "custodians" because there is a chance that their e-mails and documents might turn up pertinent documents that have not already been produced. However, Rule 26 requires discovery that is calculated to be reasonably proportional to the needs of the case. This rule does not compel a party to turn over any and every custodial file that may have documents with discoverable information. Indeed, "[s]imply because information is discoverable under Rule 26…does not mean that discovery must be had." *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005) (citing *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004)). *See* also *McKelvey v. W. Reg'l Jail*, 2015 WL 2144668, at *4 (S.D.W. Va. May 7, 2015).

Rule 26(b)(2)(C) requires the Court, on motion or on its own, to limit the frequency and extent of discovery, when (1) "the discovery sought is unreasonably cumulative or duplicative;" (2) the discovery "can be obtained from some other source that is more convenient, less

---

[8] *See* Correspondence regarding custodians attached hereto as Exhibits 2-4.

10

burdensome, or less expensive;" (3) "the party seeking the discovery has already had ample opportunity to collect the requested information by discovery in the action;" or (4) "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii). This rule "cautions that all permissible discovery must be measured against the yardstick of proportionality." *Lynn v. Monarch Recovery Management, Inc.*, 285 F.R.D. 350, 355 (D.Md. 2012) (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc*., 269 F.R.D. 497, 523 (D.Md. 2010)). *See also McKelvey v. W. Reg'l Jail*, 2015 WL 2144668, at *5-6 (S.D.W. Va. May 7, 2015); *Martin v. State Farm Mut. Auto. Ins. Co.*, No. 3:10-CV-0144, 2011 WL 13228851, at *5 (S.D.W.Va. Jan. 20, 2011) ("Fed Rule Civ. P. 26(b)(2) requires limitations on discovery when (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; . . .").

The mere fact that an individual works or worked in a given position does not automatically deem them an appropriate "custodian" for the purposes of this litigation.[9] Rather, an appropriate custodian is an individual whom based on a good faith investigation is most likely to have non-cumulative discoverable information.[10] As explained *supra* Section I, the inquiry is not whether an individual was identified as someone potentially having discoverable information, but rather, whether this individual is likely to have unique information that is not otherwise duplicative of the

---

[9] Plaintiffs did not identify John Ellis, Gene Baumgardner, Robert Wilhelm, or Greg Fuller in discovery responses as individuals believed "to have discoverable information" or to "possess documents, data, or other information" relating to Huntington's claims.

[10] *See* Special Master Cohen's Order on Discovery in Track One Cases, and Amending Prior Orders, paragraph 2, attached hereto as Exhibit 5. (Doc. 941) (Filed: 9/06/18) ("The Parties shall certify… that their lists of custodians include those individuals whom they believe, based on a good-faith investigation (and, where applicable, negotiations with the opposing parties), are most likely to have non-cumulative discoverable information related both to the bellwether jurisdictions and (as to defendants) their national conduct.).

11

information and documents produced by other custodians in this litigation. As explained below, to the extent the six custodians Defendants identify are likely to have information responsive to Defendants' requests, the responsive information would be cumulative to the information the City has already collected and produced.

  1. **John Ellis, City of Huntington Police Captain**

To the extent John Ellis worked on any cases or incidents relevant to this litigation and responsive to Defendants discovery requests, it is reflected within the production of hard copy documents Plaintiffs collected from 2006 onward in the Huntington Police Department files and exports from the case management databases that have already been produced. Defendants cite John Ellis' former positions as part of the "command staff" and head of the Criminal Investigations unit as license to demand his custodial file. Notably, the link referencing the executive command staff includes Huntington Police former Chief Hank Dial, Interim Chief Ray Cornwell, former Cpt. Rocky Johnson, and Cpt. Dan Underwood—all whose documents have been produced to Defendants. Huntington has agreed to the production of numerous law enforcement custodians from various bureaus within the police department. Huntington has produced custodial files for Sgt. Shane Bills and Sgt. Paul Minigh, both of whom are a part of the Criminal Investigations Bureau, where John Ellis served as the former head. The request for John Ellis as a custodian is unreasonably cumulative and duplicative in light of what Plaintiffs have already agreed to produce, have produced to date, and in consideration of the fact that the documents sought can obtained from the sources identified above.

  2. **Gene Baumgardner, former Huntington Police Chief**

Gene Baumgardner served as police chief for the City of Huntington from 2004-2007. Huntington has already collected and produced hard copy documents from 2006 onward in the Huntington Police Department files and exports from the case management databases. Plaintiffs

12

have agreed to produce documents for five (5) different police Chiefs who have served in the Huntington Police Department from 2007 until present. Skip Holbrook (2007 to 2014), Jim Johnson (2014), Joe Ciccarelli (2014 to 2016), Hank Dial (2018), and interim police chief Ray Cornwell (2019). Upon information and belief, many of the files maintained by past police chiefs were under the custody and control of Chief Hank Dial and were produced. Moreover, Plaintiffs have already provided numerous documents regarding the "necessary and costly responses to the opioid crisis" for which Huntington seeks reimbursement, including costs "associated with… handling opioid-related investigations, arrests, adjudications, and incarceration" in departmental police files, other law enforcement custodial files, and city financial files for the relevant time period, all of which have been produced.

### 3. Robert Wilhelm, City of Huntington Former Finance Director

Robert Wilhelm served as finance director from 2001 to 2008. As enumerated above, Huntington has agreed to produce files and subsequently has produced files for several custodians who work with the City's finances, including multiple finance directors, budget directors, and city managers whose tenure with the City spans from 2003 to present day. From these custodians, the City has produced documents and files regarding departmental pay, salary wages, departmental budgets, proposed budgets, grant information, financial statements, reconciliations, etc. The documents sought for former finance director Mr. Wilhelm, regarding the "necessary and costly responses to the opioid crisis" for which Huntington seeks reimbursement have already been produced through custodial files and other documents.

### 4. Greg Fuller, Huntington Former Fire Chief

Greg Fuller served as fire chief from 1999 to 2009. Huntington has produced departmental files from the Huntington fire department including dispatches and responses to overdoses from 2006 until 2019. To the extent files exist for former fire chiefs C. Creig Moore and Carl Eastham,

13

Huntington has collected those files for the production of all responsive, non-privileged documents. Additionally, Huntington has already collected and produced the custodial files for current fire chief Jan Rader and Deputy Chief Ray Canafax. Huntington has diligently worked to identify, search, and produce all responsive files for the fire department that are core to the claims of this litigation. The request for Greg Fuller as a custodian is unreasonably cumulative and duplicative in light of what Plaintiffs have already agreed to produce.

### 5. Angie Bracey, Executive Assistant to Mayor

Plaintiffs have collected, searched for responsiveness and subsequently produced Mayor Williams' custodial file. The Mayor's office of drug control policy, as defendants reference, was spearheaded by Angie Bracey's boss, Steve Williams. The members included Jim Johnson, Scott Lemley, and Jan Rader. Huntington has agreed to and produced the custodial files for each member of this Drug policy group. Moreover, Angie Bracey was not the executive assistant to any Mayors preceding Steve Williams and, as plaintiffs have explained, the responsive records in Kim Wolfe's files that could be identified have been produced.

### 6. Justin Antle, Huntington Deputy Fire Chief

Huntington has agreed to four (4) custodians in the Huntington fire department, including an individual in the same role as Justin Antle: Deputy Chief Ray Canafax. Mr. Canafax's files were collected and produced as agreed to. Fire chief Jan Rader's files were collected and produced, and documents and files for former chief C. Creig Moore and Carl Eastman, to the extent they exist, have been collected and are being reviewed for responsiveness prior to production. In addition, the departmental files, which include the National Reporting System and incident database for the Huntington Fire Department, envelop the relevant, discoverable information Defendants seek. These files contain the dispatched overdose runs to which Justin Antle

14

responded. Such information has already been produced, and it would be duplicative for Plaintiffs to additionally be compelled to produce his custodial file.

The discovery sought for these six (6) additionally requested "custodial files" is unreasonably cumulative and duplicative based on what Plaintiffs have already produced. The information Defendants claim to be seeking can already be obtained from within the numerous documents provided from 40-plus custodians who hold positions in the mayor's office, finance department, purchasing, human resources, law enforcement, fire department, public works, development and planning, city council, and various departmental files produced thus far in this litigation.

## CONCLUSION

Defendants' Motion to Compel is at odds with the principle of proportionality that defines the scope of permissible discovery under the Federal Rules. Given the cumulative and duplicative nature of Defendants' requests, the Court should find additional production of custodial files unwarranted and deny Defendants' Motion to Compel in its entirety.

Dated: April 15, 2020  Respectfully submitted,

THE CITY OF HUNTINGTON  CABELL COUNTY COMMISSION

/s/ *Anne McGinness Kearse*  /s/ *Paul T. Farrell, Jr.*
Anne McGinness Kearse (WVSB No. 12547)  Paul T. Farrell, Jr., Esq. (WVSB No. 7443)
**MOTLEY RICE LLC**  **FARRELL LAW**
28 Bridgeside Blvd.  P.O. Box 1180
Mount Pleasant, SC 29464  Huntington, WV 25714-1180
Tel: 843-216-9000  422 Ninth Street, 3rd Floor
Fax: 843-216-9450  Huntington, West Virginia 25701
akearse@motleyrice.com  office: 304.523.7285
 cell: 304.654.8281
 email: paul@farrell.law

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing was filed electronically via the CM/ECF electronic filing system on April 15, 2020 and served on all counsel registered in the system and via email to plaintiffs' listserv at mdl2804discovery@motleyrice.com, defendants' listserv at track2opioiddefendants@reedsmith.com.

/s/ Moniqúe Christenson
Moniqúe Christenson (SC Bar No. 104063)
