IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>    Defendants. | Civil Action No. 3:17-01362 |
| CABELL COUNTY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>    Defendants. | Civil Action No. 3:17-01665 |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL
DISCOVERY RESPONSES ON OPIOID-RELATED EXPENDITURES**

    The issue here is straightforward: Plaintiffs seek money from Defendants in this litigation, *see, e.g.*, Dkt. 288 at 2 ("Plaintiffs are seeking money from Defendants"), but they refuse to provide Defendants with basic information about the "abatement damages" that they seek, severely hampering Defendants' ability to prepare their defenses. Plaintiffs refuse to state, or provide documents supporting, (a) how much money they seek, (b) what the separate components of the "abatement damages" are, or (c) how the dollar amounts of the components or the overall amount were calculated. Defendants are entitled to that information during fact discovery, as Special Master Wilkes already ruled in Discovery Ruling No. 1 ("DR1"). Moreover, to explore and test in fact discovery the basis for any "abatement damages," Defendants require detailed accounting

and other records of the costs incurred in the past in abating or otherwise responding to the opioid abuse crisis. If in fact Plaintiffs have no records at all of the costs that have been incurred to date in abating or otherwise responding to the opioid abuse crisis, as Cabell County's overdue supplemental discovery responses appear to indicate, Defendants are willing to accept a sworn declaration on that subject. But Defendants cannot be left unable to defend themselves for lack of records concerning what the opioid abuse crisis responses and abatement to date have cost.

I. **Plaintiffs Must Fully Respond to Discovery Requests Regarding their Claim for Money During Fact Discovery.**

The amount and computation of money claimed is factual information normally provided *automatically* at the outset of fact discovery. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii) ("a party must, without awaiting a discovery request, provide to the other parties . . . a computation of each category of damages claimed by the disclosing party . . . [and] the documents or other evidentiary material . . . on which each computation is based"). While Judge Polster has provided that the initial disclosure requirements of Rule 26 generally do not apply in the MDL proceedings absent contrary direction,[1] Plaintiffs must still provide this critical information in response to discovery requests. *See, e.g.*, *Azure LLC v. Figueras Seating U.S.A., Inc.*, 2014 WL 12512542, at *1 (S.D. Fla. Jan. 10, 2014) (in response in interrogatories, "[p]laintiff must compute in dollars how much it claims for each category of damages"); *Bengelsdorf v. Lumenis, Inc.*, 2011 WL 617118, at *2 (M.D. Tenn. Feb. 11, 2011) (requiring "a full and complete response" to an interrogatory and a request for production seeking a statement of damages, the bases therefor, and identification of related documents). This Court already incorporated the same basic principle in its ruling requiring

---

[1] Case Management Order One, Dkt. 232 ¶ 9(b), *In re Nat'l Prescription Opiate Litig.*, Case No. 1:17-MD-2804.

Plaintiffs "to fully respond" to Defendants' discovery requests on Plaintiffs' opioid-related actions and expenditures by April 30, 2020. Discovery Ruling No. 1 ("DR1"), Dkt. 248 at 7.

Plaintiffs do not dispute that Defendants are entitled to this information, but argue that Defendants must wait until expert discovery to receive it. That argument is directly contrary to DR1, which required supplementation during fact discovery. It is also contrary to settled case law. *See, e.g.*, *Balt. Aircoil Co. v. SPX Cooling Techs.*, 2016 WL 4426681, at *19 (D. Md. Aug. 22, 2016) (belated document production until "after all fact depositions were concluded" was not cured by giving experts "ample time to review" the documents); *Bengelsdorf*, 2011 WL 617118, at *2 (plaintiffs' "decision to employ an expert witness at trial does not entitle plaintiffs to defer responding to [damages] discovery until the deadline for disclosing opinions of expert witnesses"). And, perhaps most importantly, the schedule in this case clearly contemplates that Defendants will have full discovery of Plaintiffs' "abatement damages" claims before Plaintiffs submit their expert reports: Defendants' experts must submit their reports just ten days after Plaintiffs' experts submit theirs. It will be impossible for Defendants to respond within mere days unless they are able to ascertain Plaintiffs' abatement damages claim and probe the bases for that claim during fact discovery.

Plaintiffs respond that Special Master Cohen ruled differently, but he did not. Contrary to what Plaintiffs argue, Special Master Cohen *twice* required plaintiffs to supplement damages-related discovery responses during fact discovery, *see* Ex. A at 103:22-23 (Discovery Conf. Tr., Oct. 23, 2018) ("the Federal Rules of Civil Procedure do require [plaintiffs] to give much more than [they] have" in response to interrogatory requesting damages calculations); Ex. B at 2 (Dkt. 1147, *In re Nat'l Prescription Opiate Litig.*, Case No. 1:17-MD-2804) (requiring plaintiffs to "supplement their damages computations by providing their current good-faith estimates of the

elements of their alleged damages"). And regardless, the controlling authority for this litigation is the ruling by Special Master Wilkes in DR1.

Lastly, Plaintiffs suggest that they need not provide key discovery at this juncture due to purported procedural deficiencies that they identify for the first time now, but this "gotcha" attempt rings hollow. Plaintiffs concede that, on April 3, 2020, approximately one week after entry of DR1, Defendants sent Plaintiffs a letter clarifying the specific information, data, and documents that Defendants expected would be produced related to abatement damages under DR1 and Defendants' discovery requests. Dkt. 475 at 3. They also concede that they "declined to respond" to that letter. *Id.* Not having received a response by the then-April 30 deadline, Defendants followed up on May 6 with a letter that reiterated their expectations regarding supplementation. On May 15—four days *after* the Court extended case deadlines—Plaintiffs finally responded to the May 6 letter, explaining that they intended to supplement certain discovery responses. Plaintiffs now argue for the first time that Defendants' April 3 letter was "an attempt to seek new and additional discovery through informal and improper means." Dkt. 475 at 3. Had Plaintiffs believed that the requested information was not in fact covered by DR1 or Defendants' outstanding discovery requests, they should have said so. At this late date, the Court should reject Plaintiffs' belated attempt to elevate form over substance and should order Plaintiffs to provide the key discovery requested.

## II. Plaintiffs' Discovery Responses Regarding their Claim for Money are Deficient.

Cabell County does not dispute that it failed to comply with DR1's requirement to supplement its discovery responses regarding its opioid-related expenditures by April 30, 2020. Cabell County responds only that it served supplemental responses on May 21, 2020—three weeks

after the deadline.[2] These supplemental responses stated that "the Office of the Prosecuting Attorney, Sheriff's Department and Emergency Medical Services . . . ha[ve] dedicated resources to responding to hazards of public health and safety related to the opioid epidemic," but that neither those departments nor Cabell County has the following requested information:

- "[B]udgets or expenditures [that] itemize expenses specifically related to the opioid epidemic . . . ."

- "[B]udgets or expenditures [that] itemize expenses specifically related to the . . . wrongful conduct of Distributor Defendants."

- "[D]ocuments which specifically address . . . expenditures related to the abuse, use, misuse, prescribing, dispensing, sale, distribution, addiction to, and/or diversion of Prescription Opioids . . . ."

- "[D]ocuments which specifically address . . . expenditures related to the possession, abuse, sale, distribution, or addiction to other opioids . . . ."

- "[D]ocuments relating to emergency assistance, treatment, or healthcare costs paid by" Cabell County or its insurers.

Ex. C at 2, 4 (Plaintiff Cabell County Commission's Supplemental Responses to Interrogatory No. 10 and Request for Production No. 15, Pursuant to Discovery Ruling No. 1). Defendants understand from these supplemental interrogatory responses that Cabell County's only opioid-related expenditures have related to services provided by the Office of the Prosecuting Attorney, Sheriff's Department, and Emergency Medical Services, but no specification has been made of any amount from those departments, and in fact Cabell County suggests that those departments have not incurred expenses specific to the opioid epidemic.

Given Plaintiffs' response, Defendants offered to resolve the discovery dispute by accepting a sworn declaration from Cabell County stating that Cabell County's only opioid-related

---

[2] That the close of document discovery is now June 12, 2020 is irrelevant, both because DR1 required supplementation by April 30 and because the Court did not issue its order extending the close of document discovery until May 11—*after* the deadline to comply with DR1.  Dkt. 410.

expenditures have been incurred by the three departments named in its supplemental interrogatory responses and that those departments have not incurred or recorded any costs specific to the opioid epidemic. Ex. D (Ltr. from Laura Flahive Wu to Paul Farrell, May 26, 2020). Cabell County's counsel flatly rejected this proposal. Ex. E (Email from Paul Farrell to Laura Flahive Wu, May 26, 2020). As result, Defendants remain in the dark about any factual basis to support Plaintiffs' claim for money.[3]

Plaintiffs respond that they have provided "numerous documents" reflecting their opioid-related initiatives and budgets. Dkt. 475 at 6. But Defendants' opening brief detailed the deficiencies in Plaintiffs' document productions, Dkt. 423 at 7, and Plaintiffs refute none of those points. In fact, Plaintiffs admit that they have provided no more than overall budgets, annual reports, and other summary information not specific to opioids. Dkt. 475 at 5-6. This is insufficient. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) ("Rule 26(a) requires more than providing—without any explanation—undifferentiated financial statements; it requires a 'computation,' supported by documents."); *Azure*, 2014 WL 12512542, at *1 (ordering plantiff to supplement responses to interrogatories seeking information similar to that required by Rule 26(a)).

Plaintiffs either must produce the factual information sufficient to support their claims, or their claims for money should be stricken.

---

[3] The City of Huntington has provided more information than Cabell County, including general descriptions of its opioid-related initiatives. But it too has failed to provide any specific information about the operations of any initiative or any quantification of the costs of any initiative. Dkt. 423.

**III.    Conclusion**

For the foregoing reasons, and those stated in Defendants' opening brief, Defendants respectfully request an order requiring Plaintiffs to fully supplement their discovery responses on their opioid-related expenditures, and to identify the responsiveness of produced documents by Bates ranges, or to provide sworn declarations stating they lack responsive information.


Respectfully Submitted,

*McKesson Corporation*
By Counsel:

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*/s/ Carol Dan Browning*
Carol Dan Browning
Stites & Harbison, PLLC
400 West Market Street
Suite 1800
Louisville, Kentucky  40202
Telephone:  (502) 587-3400
Facsimile:  (502) 587-6391
cbrowning@stites.com

*/s/ Timothy C. Hester*
Timothy C. Hester
Mark H. Lynch
Christian J. Pistilli
Laura Flahive Wu
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324

thester@cov.com
mlynch@cov.com
cpistilli@cov.com
lflahivewu@cov.com

*AmerisourceBergen Drug Corporation*
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Cardinal Health, Inc.*
By Counsel:

*/s/ Brian A. Glasser*
Brian A. Glasser (WVSB #6597)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
BAILEY GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
*Counsel in Cabell County action*


*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III

8

Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC  20005
Tel:  (202) 434-5000
Fax:  (202) 434-5029
emainigi@wc.com
lheard @wc.com
ahardin@wc.com

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 2nd day of June, 2020, the foregoing **"Defendants' Reply in Support of Motion to Compel Discovery Responses on Opioid-Related Expenditures"** was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)

10