**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| THE CITY OF HUNTINGTON, | |
|      Plaintiff, | |
| v. | Civil Action No. 3:17-01362<br>Hon. David A. Faber |
| AMERISOURCEBERGEN DRUG<br>CORPORATION, *et al.* | |
|      Defendants. | |
| ——————————————————— | |
| CABELL COUNTY COMMISSION, | |
|      Plaintiff, | |
| v. | Civil Action No. 3:17-01665<br>Hon. David A. Faber |
| AMERISOURCEBERGEN DRUG<br>CORPORATION, *et al.*, | |
|      Defendants. | |

**REPLY IN SUPPORT OF DEFENDANTS'**
**MOTION TO COMPEL DISCOVERY RESPONSES**

Plaintiffs concede that the issue of production deficiencies warrants a meet and confer, but continue to insist that their document productions are complete, refuse to substantiate or remedy numerous apparent production deficiencies, and maintain that many of the identified deficiencies cannot be addressed. And although the City of Huntington has agreed to produce custodial files for one of the seven employees that it identified for the first time on April 30, 2020, it continues to refuse to produce the other six requested custodial files. In the face of Defendants' motion, Plaintiffs for the first time offer to meaningfully respond to the deficiencies that Defendants have repeatedly raised.

For these reasons and those set forth below, the Court should grant Defendants' motion and enter an order requiring a meet and confer supervised by Special Master Wilkes, in which Plaintiffs must explain the identified deficiencies in Plaintiffs' productions, and compelling the City of Huntington to produce the six custodial files still at issue.

## ARGUMENT

### I.   Plaintiffs Must Explain Their Deficient Productions.

Plaintiffs do not dispute that a meet and confer is warranted.  Instead, in the face of numerous identified deficiencies, they continue to assert that their productions are sufficient and that many of the deficiencies identified by Defendants could not be addressed by a meet and confer.[1]  Dkt. 476 at 1.  As explained below, Plaintiffs' productions contain clear deficiencies and each of these deficiencies can and should be addressed in a supervised meet and confer.

#### A.   Plaintiffs' Productions Are Deficient.

Despite multiple opportunities to do so, Plaintiffs remain unable or unwilling to demonstrate that their productions are complete and contend that the issues identified by Defendants are "nondescript, generalized concerns."  Dkt. 476 at 2.  To the contrary, Defendants have clearly laid out systemic, concrete issues in Plaintiffs' productions, including that (1) large numbers of the documents are duplicates or irrelevant, (2) Plaintiffs' representations of substantial completion repeatedly have been belied by their subsequent productions, (3) productions of their custodial files are incomplete, and no custodial documents have been produced for 22 custodians;[2] (4) custodial files produced include significant temporal gaps; and (5) productions of the

---

[1] Plaintiffs also do not contest that the meet and confer should be supervised by Special Master Wilkes, as Defendants request.  *See* Dkt. 425 at 1.

[2] This number does not include Paul Matovich, whose documents Huntington agreed to produce on May 27, 2020, *see* Dkt. 476 at 17, but has not yet started producing.

departmental files are deficient.  Each of these deficiencies requires meaningful justification.  This must happen before depositions begin to avoid prejudice to defendants and delays in the schedule.

- **Duplicate and Irrelevant Documents:**  Plaintiffs once again fall back on citing the number of documents produced as a proxy for adequate collection and production of documents, Dkt. 476 at 2-4, but fail to address that these numbers are significantly inflated by the large number of duplicate and irrelevant documents that they have produced.  *See* Dkt. 425 at 3.  This fact alone undercuts the sufficiency of each custodial production and exacerbates the other issues identified by Defendants.

- **Production of Additional Documents After Representing that Production Is "Substantially Complete":**  Plaintiffs do not dispute that they have produced significant numbers of additional documents from various files after telling Defendants that the production from those files is complete.  *See generally* Dkt. 476 at 3-12.  Instead, Cabell contends that any discussion of this fact is "semantic," and that because "Plaintiffs have now produced these documents," a meet and confer "can thus serve no purpose in this regard."  *Id.* at 5.   But when Plaintiffs repeatedly produce documents after asserting that production from certain files was complete, *see* Dkt. 425 at 5-6, it undercuts the previous assurances of completed productions for those *and other* files.  Defendants have no assurances as to which, if any, custodial files are complete.

- **Plaintiffs' Custodial Productions Are Incomplete:**  Cabell does not contest that it has produced *zero* documents for nine of its agreed-upon custodians.  *See* Dkt. 425 at 3.  Instead, Cabell asserts that no relevant documents exist for those custodians, either because their tenure ended before the litigation hold was placed, and therefore all their documents were lost, or because they "were employed in positions that were removed

3

from directly addressing the opioid epidemic." Dkt. 476 at 6-7. But Cabell produced documents for other custodians whose terms ended prior to 2017,[3] and for other custodians in the same roles as those Cabell alleges were "removed" from addressing the epidemic.[4] Further, for several of the positions that Cabell cites as "removed from directly addressing the opioid epidemic," Dkt. 476 at 7, no "direct[]" nexus to the opioid response is necessary, as these custodians were chosen because they were likely to have documents relating to budgets, financial statements, revenue, and expenditures—a fact that Cabell does not address. *See* Dkt. 425, Ex. 10 at 5-6 (Defendants' First Requests for Production). Huntington, by comparison, contends that, for the twelve custodians for whom Defendants have received zero custodial documents, it has produced custodial files because it has produced archival emails on the City of Huntington and Huntington Police Department backup servers. Dkt. 476 at 9. But these documents are not *custodial* files; they are archival emails that involve the relevant custodians and also numerous other custodians. Further, that does not explain

---

[3] For example, Cabell has produced 202 custodial documents for Anne Yon, who left in 2016; 168 documents for Tom McComas, who left in 2016; 137 documents for Doug Ferguson, who left in 2016; 61 documents for Tracey McComas, who left in 2016; 236 documents for J.R. Van Ottingham, who left in 2015; 30 documents for Chris Tatum, who left in 2015; and 23 documents for Joe Whitt, who left in 2014.

[4] For example, Cabell contends that no documents were available for Clayton Bates, a former IT specialist for Cabell County Commission, because his role was "removed from directly addressing the opioid epidemic" and his "short tenure" from 2015-2017. Dkt. 476 at 7. But Cabell has produced 5,716 custodial documents for Greg Shoemaker, who is also an IT specialist for Cabell County Commission who has been in his role for only three years (since 2017). Cabell similarly asserts that Betty Bates, former chief tax deputy for Cabell County Sheriff's Department, and Mary Beth Steele, who worked in accounts payable for Cabell County EMS, had roles removed from addressing the opioid epidemic. Dkt. 476 at 7 n.5. But Cabell has produced custodial files for Samantha Childers, also a chief tax deputy at the Cabell County Sheriff's Department, and for Suzanne Frye and Rose Ross-Woodrum, both of whom also worked in accounts payable for Cabell County EMS.

why there are so few custodial documents for those custodians whose files Huntington
has produced.

- **Plaintiffs' Custodial Productions are Deficient:** Neither Cabell nor Huntington
  attempted to address Defendants' concerns that, even where custodial files have been
  produced, those files have large temporal gaps, are filled with irrelevant and junk
  documents such as newsletters, or are missing key types of documents, such as emails.
  *See* Dkt. 425 at 4-5. Far from being "nondescript, generalized concerns," Dkt. 476 at
  2, these are clearly identified, systemic issues. *See* Dkt. 425 at 4-5.

- **Plaintiffs' Production of Non-custodial Files Remains Deficient:** Cabell does not
  contest that there remain significant gaps in its production of non-custodial files. *See
  generally* Dkt. 476 at 2-12. Huntington, however, argues that it has sufficiently
  produced non-custodial documents because it has produced one document for the
  Huntington Fire Department and "explained in [its] April 10, 2020 letter" that it
  produced a range of documents containing relevant data. Dkt. 476 at 11. But the range
  cited in Huntington's April 10 letter amounts to *four* documents—meaning that
  Huntington has produced a total of five documents for a department that has been at
  the center of its response to opioid use. Similarly, Huntington's contention that it
  "produced thousands of hard copy documents from the Huntington Police Department
  and Huntington Police Department's Special Investigations Bureau," Dkt. 476 at 12,
  does not remedy the fact that nearly 60 percent of these documents are duplicates.[5]

---

[5] Nor does Huntington's production of Dan Underwood's custodial files remedy deficiencies in
the separate, also agreed-to, production of Huntington Police Department non-custodial files.
*See* Dkt. 476 at 12.

**B.      Each of These Issues Can and Should Be Addressed via Meet and Confer.**

Although Plaintiffs state they are willing to attend a meet and confer, they contend that "the requested meet and confer could not address the majority of issues raised in Defendants' motion," and that "Defendants' questions concerning the documents Plaintiffs have produced should be directed to the witnesses that Defendants intend to depose." Dkt. 476 at 5. This is incorrect. As laid out above and in Defendants' opening motion, the deficiencies that Defendants have identified are indicative of systemic issues in document collection and production, which cannot adequately be addressed on a witness-by-witness basis.[6] They are well suited to be addressed at a meet and confer, however, where Plaintiffs can explain the steps taken to obtain, search, and produce documents; why files have been produced after Defendants were previously told those files did not exist; and why documents appear to be missing for large swaths of custodians, time periods, or types of documents.

It is imperative that these questions be answered early and thoroughly. Defendants' experience with the City of Cleveland in Track One is instructive. There, like here, Cleveland repeatedly claimed that it had met its discovery obligations and that defendants' concerns regarding the comparatively small number of documents produced by the City was mere speculation based on an unfounded view that more responsive documents should exist. Months of protracted back-and-forth and meet and confers ultimately revealed that there were significant,

_____

[6] Defendants have identified other potential deficiencies that *are* suited to witness-by-witness inquiry at depositions, and have therefore not included them in these motions. For example, a number of custodians have been identified as using their personal emails to conduct official government business on behalf of Huntington or Cabell. Defendants will address these concerns on a witness-by-witness basis at depositions, as, unlike the deficiencies identified in these motions, they do not suggest systemic issues in production.

systemic problems in Cleveland's collection and production, and Cleveland was removed from Track One as a result.

Defendants recognize that no two plaintiffs are the same, but seek to preempt any similar issues here. Cabell's hiring an auditor to audit its productions is a step in the right direction, but the affidavit submitted by the auditor explains that the audit is ongoing and incomplete because the auditor was unable to obtain the files necessary to inspect Cabell's document collection. *See* Dkt. 476 Ex. A at 2, 3 ("However, I have not yet been able to complete a collection of selected data sources at the County."). Thus, particularly given the short time period remaining for discovery, Defendant request that these issues be addressed via a meet and confer supervised by Special Master Wilkes.

## II.  <u>Huntington Must Produce the Custodial Files of Its Newly Identified Relevant Employees.</u>

Huntington has agreed to produce documents from one of Defendants' requested supplemental custodians, Paul Matovich, but refuses to produce documents for the other six custodians on the groundless claim that they are disproportionate, "cumulative and duplicative." *See* Dkt. 476 at 15-18. Huntington's argument does not stand up to analysis.

To begin, Huntington misstates the applicable legal standard, attempting to place the burden on Defendants to demonstrate that these custodians would not be duplicative. Dkt. 476 at 13-14. The burden rests on Huntington to demonstrate that production of concededly relevant files would be cumulative and duplicative. *See Kinetic Concepts, Inc. v. ConvaTec Inc.*, 268 F.R.D. 226, 243 (M.D.N.C. 2010) (explaining that district courts in the Fourth Circuit have repeatedly ruled that "the party or person resisting discovery, not the party moving to compel discovery, bears the burden of persuasion."); *Johnson v. Ford Motor Co.*, 309 F.R.D. 226, 232 (S.D.W. Va. 2015) ("The party resisting discovery, not the party seeking discovery, bears the burden of persuasion.");

*United States for use of Asphalt Contractors & Site Work, Inc. v. KAR Contracting*, LLC, 2015 WL 13050048, at *1 (S.D.W. Va. Aug. 10, 2015) (same); *Jones v. Bank of Am., N.A.*, 2015 WL 1808916, at *2 (S.D.W. Va. Apr. 21, 2015) (same); *Clere v. GC Servs.*, L.P., 2011 WL 2181176, at *2 (S.D.W. Va. June 3, 2011) (same).  Accordingly, Huntington, as the party resisting disclosure, "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010) (citing *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402-403 (4th Cir. 2003)).

Huntington has not done so here, and production for the six requested custodians is proportionate and proper, as explained below.

- **Huntington Drug Task Force Members:**  Huntington concedes that Stephen Maniskas, Adrian Rosario, Greg Moore, and Sid Hinchman have relevant knowledge, but argues that production of their documents would be cumulative because that knowledge is not "unique."  Dkt. 476 at 16.  Huntington points to the fact that it has produced documents from the Huntington Police Department and its Drug Unit; searched the Department's email archive for documents pertaining to the DEA Task Force, FBI Task Force, and Huntington Violent Crime and Drug Task force; and produced custodial files of three other police officers.  Dkt. 476 at 16-17.  But the mere fact that departmental and some custodial files have been produced does not render all other custodial files in the same department duplicative.  The officers whose files Defendants request are all members of drug-related task forces on the Huntington Police Department, and they likely worked on different investigations and participated in different prosecutions than other custodians did—and Huntington (which carries the

burden of opposing this discovery) has made no showing to the contrary. Consequently, these officers are likely to have valuable information on investigations of prescription diversion and illegal opioids.

- **Ralph Rider and Charles Shaw:** Huntington makes the unsupported contention that the files of Charles Shaw (Huntington City Council member) and Ralph Rider (former interim Fire Chief) are duplicative of the "custodial files for 6 current and former members of the fire department and 12 City Council members" whose documents Defendants also requested. Dkt. 476 at 17. But Huntington has produced few or no custodial documents for many of those people, including three of Defendants' requested custodians from the Fire Department[7] and four from the City Council.[8] Therefore, there are few documents of which Mr. Shaw's or Mr. Rider's documents could be duplicative. Further, these custodians' tenures each span different time periods. Obtaining documents relating to the full time period during which Plaintiffs allege misconduct is integral to Defendants' ability to present a defense.

Accordingly, Huntington's arguments regarding these custodians should be rejected. Defendants have requested a reasonable number of custodians, as demonstrated by the fact that Track One had similar numbers of plaintiff custodians. Contrary to Huntington's suggestion that Defendants could have requested these custodians earlier, Huntington did not identify them as relevant employees until April 30, the then-final day of production. Consequently, this Court should compel Huntington to produce the requested supplemental custodial files.

---

[7] These are Carl Eastham, C. Creig Moore, and Greg Fuller.

[8] These are Joyce Clark, Russell Houck, Tom McGuffin, and Mike Shockley.

## CONCLUSION

For the foregoing reasons, and those stated in Defendants' opening brief, Defendants respectfully request an order granting their Motion to Compel, and requiring the following:

1.     That Plaintiffs participate in a meet and confer supervised by Special Master Wilkes in which Plaintiffs must explain the deficiencies identified by Defendants in Plaintiffs' productions.

2.     That the City of Huntington produce the custodial files for the following persons:

- Stephen Maniskas, Police Corporal, Huntington Police Department
- Adrian Rosario, Detective, Huntington Police Department
- Greg Moore, Sergeant, Huntington Police Department
- Sid Hinchman, Former Private First Class, Huntington Police Department
- Charles Shaw, Huntington City Council Member
- Ralph Rider, Former Deputy Fire Chief

Any further relief deemed necessary and appropriate.


Dated: June 2, 2020               Respectfully submitted,

                                  ***McKesson Corporation***
                                  By Counsel:

                                  */s/ Jeffrey M. Wakefield*
                                  Jeffrey M. Wakefield (WVSB #3894)
                                  jwakefield@flahertylegal.com
                                  Jason L. Holliday (WVSB #12749)
                                  jholliday@flahertylegal.com
                                  FLAHERTY SENSABAUGH BONASSO PLLC
                                  P.O. Box. 3843
                                  Charleston, WV 25338-3843
                                  Telephone: (304) 345-0200

                                  */s/ Timothy C. Hester*
                                  Timothy C. Hester
                                  Mark H. Lynch
                                  Christian J. Pistilli
                                  Laura Flahive Wu
                                  COVINGTON & BURLING LLP

One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
mlynch@cov.com
cpistilli@cov.com
lflahivewu@cov.com

***AmerisourceBergen Drug Corporation***
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

***Cardinal Health, Inc.***
By Counsel:

*/s/ Steven R. Ruby*
Brian A. Glasser (WVSB #6597)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
BAILEY GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
*Counsel in Cabell County action*

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC  20005
Tel:  (202) 434-5000
Fax:  (202) 434-5029
emainigi@wc.com
lheard@wc.com
ahardin@wc.com

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 2nd day of June, 2020, the foregoing **"Reply in Support of Defendants' Motion to Compel Discovery Responses"** was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)