## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON, | |
|     Plaintiff, | |
| | Civil Action No. 3:17-01362 |
|     v. | |
| | Hon. David A. Faber |
| AMERISOURCEBERGEN DRUG CORPORATION, et al., | |
|     Defendants. | |
| CABELL COUNTY COMMISSION, | |
|     Plaintiff, | |
| | Civil Action No. 3:17-01665 |
|     v. | |
| | Hon. David A. Faber |
| AMERISOURCEBERGEN DRUG CORPORATION, et al., | |
|     Defendants. | |

## DEA'S OBJECTION TO SPECIAL MASTER'S
## DISCOVERY RULING NO. 5

As the Fourth Circuit has made clear:  the only question for the Special Master, and now

for this Court, to resolve here is whether the Department of Justice (DOJ) applied its regulations

governing the disclosure of agency documents to litigants in federal and state court (known as

*Touhy* regulations) in an arbitrary and capricious manner.[1]  *See COMSAT Corp. v. National*

*Science Foundation*, 190 F.3d 269, 274 (4th Cir. 1999).  The Special Master, however, did not

---

[1] Because Defendants sought documents from DEA, a law enforcement agency within DOJ, the Defendants' request was evaluated pursuant to DOJ regulations governing the disclosure of information to private litigants.  *See* 28 C.F.R. § 16.21 *et seq.*  Accordingly, this memorandum refers to DOJ when discussing the agency's evaluation and denial of Defendants' request.

address this question.  Instead, the Special Master overlooked circuit precedent and applied the wrong legal standard—rejecting DOJ's determination because, in his view, defendants' requests "d[id] not appear to be unduly burdensome."  But neither the Special Master nor this Court is charged with conducting a de novo review of the burden imposed on DEA by Defendants' requests.  To the contrary, this Court's review is limited to whether *DOJ's analysis* was based on inappropriate factors or otherwise untethered from the facts and circumstances before the agency.  It was not.[2]

Here, DOJ faithfully applied its *Touhy* regulations to the requests at issue in light of the relevant circumstances.  The litigants in this suit spent over two years in MDL discovery proceedings, in which DEA was asked to carry out extensive document searches, produced tens of thousands of pages of documents and provided numerous witnesses.  Following these proceedings, the MDL court suggested that these cases be remanded to this Court for trial, with no expectation that further third-party discovery would be sought from DEA.  Defendants, however, have asked that DEA now be compelled to once again search for twenty years' worth of documents, including all documents of entire divisions or offices within DEA.  DOJ reviewed these requests and determined—against the backdrop of extensive MDL discovery—that such requests must now be rejected given their cumulative and unduly burdensome nature.  DOJ's analysis was neither arbitrary nor capricious.  Accordingly, we object to the Special Master's Discovery Rule No. 5 (hereinafter D.R. No. 5), and ask this Court to deny Defendants' motion.[3]

---

[2] This Court reviews de novo all conclusions of law and findings fact made by the Special Master.  (Order of Appointment at 5, ECF No. 200 (citing Fed. R. Civ. P. 53(f)(4) and (5)).)

[3] In addition to being wrongly decided, D.R. No. 5 appears to be incomplete in that it does not address the portion of Defendants' motion that sought to compel production of a privilege log.  As explained by DEA in its response to Defendants' motion, this Court lacks jurisdiction to compel compliance with a subpoena issued by another court.  Only the issuing court may modify,

## BACKGROUND

In granting Defendants' motion to compel, D.R. No. 5 does not address the lengthy procedural history of these cases in consolidated multi-district litigation proceedings in the Northern District of Ohio (the MDL court).[4]  On December 13, 2017, the Judicial Panel on Multidistrict Litigation (JPML) transferred these two cases from this Court to the United States District Court for the Northern District of Ohio for consolidated pretrial proceedings.  JPML's transfer decision sought to ensure the just and efficient conduct of opioid-related cases, and a critical component of this was the MDL court's coordination of discovery.

These cases spent over two years in the MDL court before they were deemed trial-ready and remanded.  During that time, the parties sought extensive discovery from DEA, and, as the MDL court noted, "the parties thoroughly and vigorously negotiated" the scope of that discovery, "in light of the needs of the case and the burden on DEA as a non-party, governmental agency."  Ex. A, Resp. to Mot. for Clarification at 1, *In Re: National Prescription Opiate Litigation*, No. 17-md-02804 (N.D. Ohio Apr. 17, 2020).

Although these prior requests were extremely burdensome, DEA recognized the importance of this litigation and therefore sought to work cooperatively with the parties to provide them with relevant documents and testimony sought through the MDL proceedings.

---

quash, or order a party to comply with a subpoena. Fed. R. Civ. P. 45(d)(2)(B)(i) ("[T]he serving party may move *the court for the district where compliance is required* for an order compelling production or inspection." (emphasis added)); *see* 1991 Adv. Comm. Notes to Fed. R. Civ. P.  45 ("[T]he court in whose name the subpoena is issued is responsible for its enforcement."); *Shire LLC v. Mylan Pharmaceuticals*, Inc., 2013 WL 149635 at *1 (N.D.W. Va. Jan. 14, 2013) (collecting cases).  Accordingly, this request should be denied because Defendants should have directed this matter to the MDL court.

[4] A more detailed procedural history of these cases and the discovery requests propounded on DEA is set forth in DEA's response to Defendants' motion to compel.  (ECF No. 378 at 4–8.)

DEA provided extensive testimony and documents in response to the parties' discovery requests, based on assurances that coordinated discovery in the MDL would obviate the need for DEA to respond to similar requests in related litigation, including remanded cases.  Indeed, this is the very purpose of MDL consolidation.

In Track One of the MDL, DEA produced nationwide electronic ARCOS data and Suspicious Order Reports (SORs) for specified drugs for the years 2006 to 2014.[5]  These productions contained hundreds of millions of records and included data for West Virginia, Cabell County, and the City of Huntington.  DEA also produced hard-copy field SORs for certain states and searched for field SORs for other states, including West Virginia.

Additionally, Cardinal Health, which coordinated discovery on DEA on behalf of Defendants, served a *Touhy* request and subpoenas on DEA seeking 37 broad categories of documents, testimony on 24 topics pursuant to Federal Rule of Civil Procedure 30(b)(6), and fact testimony from 13 current and former DEA employees.  The Plaintiffs' Executive Committee also served a 30(b)(6) subpoena seeking DEA's testimony on five topics.  After significant negotiation, which ultimately required guidance from the MDL Special Master when the parties and DEA reached an impasse on certain issues, DEA produced approximately 27,000 pages of documents after conducting an extensive review as discussed further below; provided four agency 30(b)(6) witnesses, who collectively sat for 28 hours of deposition testimony (including one witness, who, to the best of our knowledge, sat for longer than any other individual deposed in the MDL); and produced five fact witnesses, several of whom sat for depositions that

---

[5] The Automated Records and Consolidated Orders System/Diversion Analysis and Detection System ("ARCOS/DADS") is a database in which manufacturers and distributors report their controlled substances transactions to DEA.  21 U.S.C. § 827(d)(1); 21 C.F.R. § 1304.33.  DEA regulations require manufacturers and distributors to report suspicious orders of controlled substances ("SORs") when discovered.  *See* 21 C.F.R. § 1301.74(b).

substantially exceeded the seven hours provided under Federal Rule of Civil Procedure 30.  DEA

also authorized the deposition testimony of three deputized DEA Task Force Officers.

In light of this significant history, Defendants' attempt to seek even more discovery from

DEA following remand is improper and inconsistent with the primary purpose of MDL

consolidation, which is "to promote efficiency through the coordination of discovery."  *In re*

*Nuvaring Prods. Liab. Litig.*, 2009 WL 4825170, at *1 (E.D. Mo. Dec. 11, 2009).  Moreover,

Defendants' actions are at odds with the intent and expectations of the MDL court that suggested

these cases be remanded for trial.  The MDL court clarified in its recently issued order that it

expected "only limited, jurisdiction-specific discovery in the West Virginia cases would be

necessary after remand."  *See* Ex. A at 2.  More specifically, the MDL court stated that it "***did***

***not believe additional discovery from DEA was necessary or appropriate for a fair trial***."  *Id.* at

2–3 (emphasis added).

## DISCUSSION

### I.      This Is an APA Challenge to Agency Action, Not a Discovery Dispute Between Private Parties.

Although Defendants have captioned their filing as a motion to compel pursuant to Rule

45, they are in fact challenging a final agency action by the DOJ pursuant to the Administrative

Procedure Act (APA), 5 U.S.C. 701, *et seq.*  This is because a federal court litigant seeking to

obtain documents from a non-party federal agency by means of a federal subpoena can do so

*only* pursuant to the express waiver of sovereign immunity under the APA.  Moreover, the

Fourth Circuit has explained that the APA provides the applicable standard of review in such a

case—that is, a non-party agency's response to a litigant's request for documents is reviewed

under the APA's arbitrary and capricious standard.  *COMSAT*, 190 F.3d at 274.  These

fundamental legal principles are not subject to legitimate dispute.

The Special Master ignored this clear and well-settled law, however.  The Special Master instead proceeded as if the case were governed by the burden balancing analysis of Federal Rule of Civil Procedure 45.  This cannot be reconciled with the Fourth Circuit's holding in *COMSAT*, which expressly rejected this approach.  *Id.* (rejecting argument that "non-party federal agencies must produce evidence in response to the subpoenas of private litigants, subject only to the court's discretionary right to limit burdensome discovery under Rules 26 and 45 of the Federal Rules of Civil Procedure").[6]

### A. DOJ's *Touhy* Regulations Govern the Disclosure of Agency Information to Private Litigants, Such as Defendants.

It is undisputed that federal agencies, including DOJ, have properly adopted regulations governing the disclosure of agency documents to litigants in federal and state court.  *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951); *COMSAT*, 190 F.3d at 278 (when a government agency is served with a third-party subpoena, "[t]he decision whether to provide documents or employee testimony in response . . . is committed to agency discretion"); *Barreto v. SGT, Inc.*, 2019 WL 3253373, at *4 (D. Md. July 19, 2019) ("Agencies may promulgate regulations that govern their responses to subpoenas.").  DOJ's *Touhy* regulations are set out at 28 C.F.R. Part 16, Subpart B, and govern the agency's response to third-party subpoenas.

The policy underlying these regulations "is to conserve governmental resources where the United States is not a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business."  *Boron Oil Co. v. Downie*, 873 F.2d 67, 70 (4th Cir. 1989).  If federal officials are routinely compelled to testify or produce government

---

[6] Rule 45, like all of the Federal Rules of Civil Procedure, cannot be used to waive the sovereign immunity of the United States or to "modify, abridge or enlarge the substantive rights of litigants or affect the jurisdiction of federal courts."  *See United States v. Sherwood,* 312 U.S. 584, 589–90 (1941).

documents in private lawsuits where the United States is not even a party, "significant loss of manpower hours would predictably result and agency employees would be drawn from other important agency assignments." *Id.* These policy concerns are implicated even more so where, as here, an "explosion in [related] litigation" threatens to conscript the resources of an agency. *Id.* at 72.

Accordingly, DOJ's *Touhy* regulations provide a general prohibition against the production or disclosure of DOJ files where the United States is not a party.  28 C.F.R. 16.22.  In addition, section 16.26 of the regulation provides both general and specific guidance for DOJ officials charged with evaluating requests from private litigants.  The regulations provide that DOJ officials should generally consider whether disclosure would be inconsistent with the "rules of procedure governing the case" or "the relevant substantive law governing privilege."  28 C.F.R. § 16.26(a).  Moreover, the regulations *explicitly prohibit* disclosure when any of six specific factors is present.  28 C.F.R. § 16.26(b) (listing circumstances in which "disclosure will not be made by any Department official").  Among the requests which must be denied under the regulations are those that seek information for which disclosure "would reveal investigatory records compiled for law enforcement purposes."  28 C.F.R. § 16.26(b)(5).

Here, the responsible official at DOJ—the United States Attorney for the Southern District of West Virginia—consulting closely with DEA, faithfully applied these regulations to Defendants' requests and declined to authorize production of the documents.  Defendants themselves acknowledged the applicability of these regulations to their requests by submitting a *Touhy* request letter to the U.S. Attorney.  Ex. B, February 21, 2020 Letter from Laura Flahive Wu to Michael B. Stuart (acknowledging that, "[b]ecause these subpoenas are directed at DEA, ***compliance is subject to the* Touhy *process*" (emphasis added)).  Yet the Special Master

7

reframed DOJ's application of its regulations as a "*Touhy* objection."  (ECF No. 474 at 2.)  This suggests a misunderstanding of the legal and regulatory principles that govern litigants' requests for documents from non-party federal governmental agencies.  Sovereign immunity "gives rise to the Government's power to refuse compliance with a subpoena," and agency *Touhy* regulations provide the standards under which federal government officials must evaluate requests such as those submitted by Defendants here and determine whether to assert that immunity and refuse to comply with the requests.  *COMSAT*, 190 F.3d at 277.

**B.**      **The APA's Arbitrary and Capricious Standard Governs the Court's Review of Defendants' Motion to Compel.**

Although DOJ's *Touhy* regulations serve an important gatekeeping function, DOJ has never claimed—as the Special Master seemed to suggest—that these regulations serve as an all-encompassing "shield to discovery."  (ECF No. 474 at 3.)  Indeed, a litigant whose *Touhy* request is denied is not without judicial recourse.  But, as the Fourth Circuit has made clear: any challenge to DOJ's application of its *Touhy* regulations, including one framed as a motion to compel, may only be brought pursuant to the APA's express waiver of sovereign immunity and must be evaluated under the APA's arbitrary and capricious standard of review.  *COMSAT*, 190 F.3d at 274 (explaining that "[w]hen the government is not a party, the APA provides the sole avenue for review of an agency's refusal to permit its employees to comply with subpoenas," and therefore "[a] reviewing court may set aside a final agency action when the action is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law"); *see also Hasie v. Office of Comptroller of Currency of U.S.*, 633 F.3d 361, 365 (5th Cir. 2011); *United States EPA v. General Electric Co.*, 197 F.3d 592, 598–599 (2d Cir. 1999); *Edwards v. U.S. Dep't of*

*Justice*, 43 F.3d 312, 315 (7th Cir. 1994); *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991).[7]

This is true whether a case originates in state court or federal court. *See, e.g.*, *Spence v. NCI Info. Sys., Inc.*, 530 F. Supp. 2d 739, 745 (D. Md. 2008) (addressing party's motion to compel agency response to a subpoena as an APA action in case filed in federal court). Contrary to Defendants' assertions—apparently accepted by the Special Master—the federal government is protected by sovereign immunity in federal court and state court alike. In federal court, however, the APA provides the requisite express waiver of such immunity that allows a federal court to review an agency's refusal to comply with a subpoena. But a litigant that wishes to challenge an agency's response to a subpoena must still overcome the deferential standard of review afforded to the government's decision under the APA. *COMSAT*, 190 F.3d at 277.

Ignoring the Fourth Circuit's analysis of this issue, Defendants have argued that they are entitled to de novo review of DOJ's decisionmaking under Federal Rule of Civil Procedure 45. The Special Master mistakenly accepted this contention, which cannot be reconciled with clear circuit precedent. *COMSAT*, 190 F.3d at 274 (expressly rejecting application of Rule 45 to non-party agency's refusal to comply with subpoena). As the Fourth Circuit has explained, because the APA supplies the requisite waiver of sovereign immunity, it also supplies the governing standard of review. *COMSAT*, 190 F.3d at 277 ("The APA waives sovereign immunity and

---

[7] In the government's view, to properly obtain review, Defendants should have filed a separate APA action challenging DOJ's decision. *See* 5 U.S.C. § 703 (providing that an "action for judicial review [of agency action] may be brought *against* the United States, the agency by its official title, or the appropriate officer" (emphasis added)). This is particularly true here in light of Defendants' continued efforts to evade the APA's arbitrary and capricious standard of review. But even assuming a separate action is not required, Defendants cannot avoid the APA's arbitrary and capricious review. As explained, the Fourth Circuit has made clear that this is the only review available where, as here, a non-party agency denies a litigant's request for documents pursuant to its *Touhy* regulations.

permits a federal court to order a non-party agency to comply with a subpoena if the government has refused production in an arbitrary, capricious, or otherwise unlawful manner.")  And district courts in this Circuit have consistently recognized this.  Indeed, D.R. No. 5 places this Court at odds with every other court in the Fourth Circuit to have addressed this issue, each of which has relied on *COMSAT* to conclude that a *federal* court litigant's motion to compel a government agency to respond to a *federal* court subpoena is governed by the APA and its deferential standard of review, not Federal Rule of Civil Procedure 45.[8]  *Barreto v. SGT, Inc.*, 2019 WL 3253373 (D. Md. July 19, 2019); *In re Subpoena to Nat'l Sci. Found., Office of Inspector Gen.*, 2018 WL 5017612 (E.D. Va. Oct. 16, 2018); *Lamb v. Wallace*, 2018 WL 847242 (E.D.N.C. Feb. 13, 2018); *Andreas-Myers v. Nat'l Aeronautics & Space Admin.*, 2017 WL 1632410 (D. Md. Apr. 28, 2017); *Sauer Inc. v. Lexington Ins. Agency, Inc.*, 2014 WL 5580954 (E.D.N.C. Oct. 31, 2014); *Clay v. Consol Pa. Coal Co.*, LLC, 2013 WL 12373597 (N.D.W. Va. Oct. 17, 2013); *Bruno v. Nationwide Mut. Fire Ins. Co.*, 2009 WL 10681974 (D. Md. Oct. 26, 2009); *Hoover v. Trent*, 2009 WL 10676534 (N.D.W. Va. June 3, 2009); *Spence*, 530 F. Supp. 2d 739; *Bavarian Nordic A/S v. Acambis Inc.*, 2007 WL 9782602 (D. Md. Jan. 19, 2007).

As these courts have stressed, an agency's denial of a *Touhy* request must be upheld if it is reasonable and in accordance with the agency's regulations.  *Spence*, 530 F. Supp. 2d at 745; *see also Andreas-Myers*, 2017 WL 1632410, at *4 (APA requires only "'a rational connection between the facts found and the choice made'" (quoting *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council*, 462 U.S. 87, 105 (1983)).  "When an agency is not a party to an action, its

---

[8] It is therefore not surprising that, in support of their argument that Rule 45 governs this dispute, Defendants cited exclusively to out of circuit cases, while ignoring the unanimous view of courts within this circuit that the APA governs judicial review of an agency's refusal to comply with a federal subpoena.

choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources." *COMSAT*, 190 F.3d at 278.  Thus, a "court[] may reverse an agency's decision not to comply *only when the agency has acted unreasonably*." *COMSAT*, 190 F.3d at 277 (emphasis added).

## II.    DOJ Properly Considered and Denied Defendants' Discovery Requests Pursuant to DOJ *Touhy* Regulations.

DOJ's *Touhy* regulations prohibit current and former DEA employees from disclosing official information absent express authorization from DOJ.  28 C.F.R. § 16.22(a).  Defendants do not dispute the applicability of these regulations to their requests.  These regulations prohibit disclosure of official information when doing so would be inconsistent with the "rules of procedure governing the case" or "the relevant substantive law governing privilege."  28 C.F.R. § 16.26(a).  Moreover, the regulations prohibit disclosure if it would: (1) violate a statute or rule of procedure; (2) violate a specific regulation; (3) reveal classified information; (4) reveal a confidential source or informant; (5) reveal investigative techniques or investigatory records compiled for law enforcement purposes; or (6) reveal trade secrets without the owner's consent. *Id.* § 16.26(b).

Agency refusals to comply with third-party subpoenas must be, and routinely are, upheld so long as they are rationally related to the facts and based on the relevant considerations laid out in the agency's *Touhy* regulations.  *See, e.g.*, *Barreto*, 2019 WL 3253373, at *4 (granting agency's motion to quash third-party subpoena because agency's decision had "a rational connection to the subpoena"); *Bruno*, 2009 WL 10681974, at *2 ("FEMA's refusal to comply with [a] subpoena was not arbitrary, capricious or otherwise unlawful because . . . FEMA was reasonably acting to preserve its human resources."); *Bavarian Nordic*, 2007 WL 9782602, at *2

(upholding agency refusal to comply with non-party subpoena on basis that it would be contrary to agency's self-interest).

In evaluating and denying Defendants' requests, DOJ conducted a thorough and reasonable analysis based on the factors contained in its governing *Touhy* regulations that was rationally related to the facts presented here. DOJ appropriately considered the burden of responding to the requests, particularly in light of their cumulative nature and the significant resources DEA had already expended (and continues to expend) in responding to similar requests in the MDL. DOJ also considered the sensitive nature of much of the information sought and the burden required to identify, review, and redact such information prior to production. Based on these factors—and others laid out in DOJ's response to Defendants' *Touhy* request[9]—DOJ rationally concluded that responding to Defendants' requests was not an appropriate use of DEA resources and would divert agency personnel from mission-critical activities. DOJ's decision was neither arbitrary nor capricious, and it should be upheld.

### A. DOJ Properly Considered and Denied Defendants' Requests Because the Requests Are Cumulative, Overly Broad, and Unduly Burdensome.

DOJ reasonably concluded that disclosure of the information sought by Defendants was inconsistent with the rules of procedure governing the case, and therefore inappropriate under the

---

[9] DOJ's response to Defendants' *Touhy* request also relied on a number of other considerations, including the fact that the requests: (1) failed to provide a sufficient summary of information sought and statement of relevance, as required by 28 C.F.R. 16.22(c) and (d); (2) failed to describe 30(b)(6) topics with reasonable particularity; (3) violated the Privacy Act, 5 U.S.C. § 552a; and (4) sought information available from other sources, including Defendants. Ex. C, April 24, 2020 Letter from Michael B. Stuart to Laura Flahive Wu. Defendants have not challenged any of these bases for denial of their *Touhy* request. Accordingly, Defendants have waived any argument that DOJ's consideration and application of these factors to their request was arbitrary and capricious. DOJ's reliance on these factors, and Defendants' failure to object to them, provides an independent basis for this Court to deny Defendants' motion to compel.

governing *Touhy* regulations.  *See* 28 C.F.R. § 16.26(a).  Specifically, DOJ observed that the normal rules of discovery do not allow requests that impose an undue burden or seek cumulative or duplicative information.  Fed. R. Civ. P. 26(b)(2)(C)(i); Fed. R. Civ. P. 45(d)(1).

The first question before the Special Master, and now before this Court, is whether it was somehow improper for DOJ to consider the prohibitions on undue discovery burdens or cumulative or duplicative requests in denying Defendants' requests.  Plainly, it was not.  DOJ *Touhy* regulations expressly state that Department officials should consider whether disclosure is consistent with the rules of procedure governing a case, and therefore DOJ's consideration of this very issue was neither arbitrary nor capricious.  Furthermore, DOJ's analysis of Defendants' requests under these rules was eminently reasonable—reflecting a careful assessment of the present circumstances of this litigation.

The Special Master, however, failed to consider these questions.  Rather than evaluate— as he should have done under the APA—whether DOJ considered any inappropriate factors or reached an irrational decision, the Special Master instead undertook his own de novo assessment of the burden he believed Defendants' requests might impose.[10]  The Special Master then further compounded this threshold error by failing to consider the cumulative burden posed by these requests and failing to consider the substantial evidentiary record relied on by DOJ.  In evaluating the burden to DEA, the Special Master focused exclusively on Defendants' 14 "priority" requests, apparently viewing each of them in isolation not only from each other, but also from the plethora of opioid-related requests DEA has already responded to (and continues to

---

[10] *DOJ's consideration* of Rules 26 and 45 as part of its *Touhy* analysis is thus distinct from the *Special Master's* reliance on Rule 45:  The Special Master mistakenly concluded that he was justified in undertaking de novo review under Rule 45, but—as discussed, *supra* I.B.—the Fourth Circuit has rejected that position, and established that review must be limited to whether DOJ's consideration was arbitrary or capricious.

respond to) in the MDL and in other state and federal court proceedings throughout the country. The Special Master stated that Defendants' requests—viewed in isolation—"d[id] not appear to be" unduly burdensome and that DEA had provided "no evidence" to the contrary.  Not only did the DEA provide evidence in the form of a detailed declaration, but DEA's burden in this case must be viewed against the backdrop of the MDL.  In short, it was not arbitrary and capricious for DOJ to consider the cumulative burden imposed on DEA by these and other requests.

The law in the Fourth Circuit is clear:  when evaluating a request for documents, a government agency can, and as a practical matter must, consider the cumulative effect of past and future requests in related litigation.  *See COMSAT*, 190 F.3d at 278 (considering "potential cumulative burden upon the agency" in evaluating propriety of *Touhy* denial); *Andreas-Myers*, 2017 WL 1632410, at *8 ("An agency is free to consider the additional burden that a second request would entail after already having responded to a first request."); *Sauer*, 2014 WL 5580954, at *6 (upholding agency refusal to comply with a second subpoena based on rationale that it had "already expended significant time and effort" on the first document production); *Spence*, 530 F. Supp. 2d at 745 (stating that "federal agencies must be permitted to consider the precedential effects of granting individual discovery requests" when evaluating burden imposed by *Touhy* request).  Indeed, agencies may consider the cumulative burden imposed by multiple requests not only from the same party or stemming from the same litigation, but also from wholly unrelated potential future disputes.  *See Hoover*, 2009 WL 10676534, at *4 (upholding FBI's refusal to comply with third-party subpoena because requiring production would impose an unreasonable "cumulative burden" on FBI, in light of potential for similar requests *in other, as yet unknown and unfiled, cases*).

DOJ reasonably concluded that responding to Defendants' requests would impose an undue burden on DEA.  Even setting aside temporarily the cumulative burden on DEA, responding to just the priority requests identified by Defendants would impose an "unreasonable drain on DEA's limited resources and would invariably undermine ongoing investigative activities."  *See* Ex. D ¶ 11, Declaration of Heather Wehrle, Acting Diversion Group Supervisor, DEA, Charleston, WV Office.  As explained by the Acting Diversion Group Supervisor in DEA's Charleston, WV office, "Defendants' priority requests collectively seek documents concerning virtually every report, investigation, communication, and action by DEA relating to opioids in West Virginia from 1996 to present, a 24-year period."  *Id.* ¶ 8.  For instance, Defendants' Request No. 3 seeks "[a]ll Documents describing, relating to, or reflecting efforts made by [DEA] to access or utilize ARCOS Data, Suspicious Order Reports, and/or West Virginia Controlled Substance Automated Prescription Program data1 to combat the diversion or misuse of Prescription Opioids in the City of Huntington, Cabell County, or any town, village, or city within Cabell County."   This request alone implicates "almost every effort [by DEA] to combat the diversion or misuse of prescription opioids in West Virginia," and would require DEA to search for responsive documents across multiple locations, "including in hard-copy offsite storage and archives, in multiple DEA databases, electronic files, and emails associated with the approximately 95 current and former DEA employees in West Virginia."  *Id.* ¶ 13–14.

This is just one example drawn from Defendants 14 priority requests, which does not account in any way for the extensive cumulative burden imposed on DEA by these and other requests.  DEA has already expended, and is continuing to expend, a significant amount of resources responding to opioid-related requests in multiple fora.  DEA is facing a substantial number of requests not only from the parties in these cases (both of which participated in the

MDL and propounded requests on DEA there), but also from other parties still in the MDL, parties in state court proceedings, and parties seeking documents from High Intensity Drug Trafficking Area (HIDTA) programs.[11]  DEA personnel serving a critical law enforcement mission cannot be repeatedly drafted into the service of private litigants, but that is exactly what is happening.  Each request for documents or testimony diverts significant agency resources from their core functions, which is why agencies are afforded broad discretion to deny such requests. The cumulative burden imposed on DEA by all of these requests—especially given the likelihood that DEA will continue to receive similar requests (in the MDL, remanded cases, or elsewhere)—is unsustainable and unreasonable.

DEA estimates that its legal team—comprised of ten attorneys and paralegals who have all devoted time to this matter—collectively spent more than 5,000 hours addressing the Track 1A litigation.  This figure does not include the hours devoted by the dozens of agents, investigators, and program personnel who aided the legal team to identify and collect documents, identify subject matter experts, and prepare for and testify in depositions.

Now, Defendants—by issuing broad requests similar to those in the MDL—are requesting that DEA unnecessarily duplicate these efforts.  In some instances, the requests essentially ask for all documents of entire divisions or offices within DEA.  *See, e.g.*, Request Nos. 3, 7, 8, 9.  D.R. No. 5 grants each of these expansive requests in its entirety, with no recognition of the enormous effort already undertaken by DEA to respond to similar requests in the MDL.  Other requests seek documents and testimony pertaining to DEA investigations.  *See,*

---

[11] Although the HIDTAs are not federal agencies, 21 U.S.C. § 1706(e)(4), the HIDTAs possess confidential federal law enforcement information shared by the DEA, FBI, and other federal law enforcement agencies.  Accordingly, the DEA, FBI, and other federal law enforcement agencies often need to review documents requested from the HIDTAs to protect privileged information.

*e.g.*, Request Nos. 13, 17, 18. As was the case in the MDL, production of such documents would require careful, resource-intensive reviews to determine if an investigation is open or closed, followed by redaction of privileged, law-enforcement sensitive, or otherwise protected information. DEA may also need to confer with other law enforcement agencies on shared information. DEA has limited resources to dedicate to responding to discovery as a non-party in civil litigation, and responding to these requests requires significant input and effort from DEA personnel whose primary responsibilities are to prevent and investigate drug diversion. *See* Ex. D.

Moreover, the immense burden on DEA to identify, review, and produce these documents greatly outweighs the likely benefit to Defendants. Indeed, Defendants conceded as much to this Court. At the March 5, 2020 status conference, Defendants argued that discovery they had received in other cases, including the MDL, would not suffice because those cases involved different agencies. However, they then expressly conceded that DEA was an "exception" to this position because Defendants have "a substantial amount of discovery from DEA already." (ECF No. 196 at 29:3–4.) Defendants further acknowledged that "most of" the DEA discovery they already have "from a national level" is "relevant to this case." (*Id.* at 29:11–13.) Defendants are correct. They already possess a "substantial amount" of discovery from DEA that is relevant to these cases. Whatever minimal additional benefit Defendants may potentially glean from their expansive and redundant requests simply cannot justify the significant additional burden imposed on DEA. In any event, this Court is not charged with conducting an independent burden balancing analysis; rather, its review is limited to whether DOJ's consideration of these burdens was arbitrary and capricious under the governing regulations. It was not.

Simply put, the evidence presented by DEA, which is wholly unaddressed in D.R. No. 5, goes well beyond what is necessary or sufficient to justify a non-party federal agency's denial of a subpoena request.  The Special Master, however, did not ask whether DOJ's consideration of this evidence was rational.  And although it would have been inappropriate under the governing legal standard, the Special Master does not even appear to have considered this evidence himself, in conducting a de novo review of the burden imposed on DEA.  This evidence is compelling, however, and at the very least, reveals that DOJ's denial of Defendants' requests was neither arbitrary nor capricious.

### B.   DOJ Properly Considered the Additional Burden That Would Be Imposed on DEA to Review and Redact Law Enforcement Sensitive Information.

Pursuant to 28 C.F.R. § 16.26(b)(5), the DOJ official responsible for evaluating a request for documents is prohibited from releasing information if its "[d]isclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired."  Much of the information sought by Defendants will necessarily include materials that would reveal DEA's investigative techniques and impede its ability to carry out its law enforcement mission.  For instance, Defendants' Request No. 7 seeks "[a]ll Documents and Communications identifying, discussing, or relating to the individuals or entities You suspect or know have unlawfully produced, transported, diverted, sold, and/or trafficked Prescription or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County."  Documents responsive to this request (and others) would undoubtedly include "investigatory records compiled for law enforcement purposes," and DOJ *Touhy* regulations prohibit disclosure of such information.  Moreover, the regulations provide no exception that would allow disclosure pursuant to a protective order or

otherwise.  Accordingly, DOJ reasonably concluded that the need to review, identify, and redact documents to prevent disclosure of such information would significantly increase the burden imposed on DEA by Defendants' requests.

Again, rather than ask whether DOJ's consideration of this additional burden was arbitrary and capricious, the Special Master instead observed that "DEA did not indicate a specific document(s) DEA claims law enforcement privilege applies to."  (ECF No. 474 at 3.) But this misses the point.  DEA's argument is one of burden:  The vast trove of documents sought by Defendants will necessarily include law enforcement sensitive information, requiring DEA to undertake an additional, labor intensive review prior to production.  *See* Ex. C (explaining that Defendants' requests would "impose a significant additional burden on the DEA to identify and withhold law enforcement sensitive information").  Requiring DEA to collect every potentially responsive document and then engage in a painstaking privilege review of each document and present each such claim to the Court for review would entirely defeat the purpose of DOJ *Touhy* regulations, which are intended to "conserve governmental resources where the United States is not a party to a suit."  *Boron Oil*, 873 F.2d at 70.

The Special Master then compounded this error by hypothesizing as to what law may govern an as yet unspecified claim of privilege.  In doing so, the Special Master incorrectly, and unnecessarily, held that West Virginia state privilege law would trump any federal law enforcement privilege asserted by DEA.  But, as conceded by the Special Master, no specific privilege claim was before him, and therefore it was unnecessary—and improper—for him to opine as to the law that would govern such a claim.  Moreover, because Defendants' motion is in fact an APA action against the United States, separate from the underlying proceeding, federal law provides the "rule of decision," Fed. R. Evid. 501, and therefore federal, not state, law

governs any claim of privilege asserted by DOJ.  *See Kasi v. Angelone*, 300 F.3d 487, 506-07 (4th Cir. 2002), *cert. denied*, 537 U.S. 1025 (2002).

Rather than contend with these issues and the practical implications of their requests, Defendants make a strawman argument—they assert that DEA has made a "sweeping assertion that it can withhold all responsive documents as law enforcement sensitive under *Touhy*."  (ECF No. 403 at 8.)  But the government has made no such assertion.  On the contrary, the government has consistently maintained that some portion of the documents sought would not contain law enforcement sensitive information.  DOJ simply reached the rational conclusion that, based on the extensive and time-consuming efforts it had already undertaken, the burden on DEA to collect, review, and redact documents yet again, in response to repeated requests from these and other parties in related litigation, was not appropriate or reasonable under the governing regulations.  In any event, it was neither arbitrary nor capricious for DOJ to consider the additional burden generated by the sensitive nature of many of the documents sought by Defendants.

## III.   Conclusion

For the foregoing reasons, DEA respectfully requests that this Court deny Defendants' motion to compel.

Respectfully submitted,

MICHAEL D. GRANSTON
Deputy Assistant Attorney General

MICHAEL B. STUART
United States Attorney
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

By:    /s/Fred B. Westfall, Jr.
FRED B. WESTFALL, JR.
(W.Va. Bar No. 3992)
Assistant U.S. Attorney, Civil Chief
300 Virginia Street East, Room 4000
Charleston, WV 25301
(304) 345-2200
(304) 347-5443 (facsimile)
Fred.Westfall@usdoj.gov

JAMIE ANN YAVELBERG
NATALIE A. WAITES
JONATHAN K. HOERNER
J. ANDREW JACO
KELLY E. PHIPPS
DAVID M. SOBOTKIN
United States Department of Justice
Civil Division/Fraud Section
175 N Street, N.E., Room 10.222
Washington, D.C. 20002
(202) 616-2964
Natalie.A.Waites@usdoj.gov


Attorneys for U.S. Department of Justice
Drug Enforcement Administration

## CERTIFICATE OF SERVICE

I, Fred B. Westfall, Jr., Assistant United States Attorney, hereby certify that that on

June 3, 2020, the foregoing **DEA'S OBJECTION TO SPECIAL MASTER'S**

**DISCOVERY RULING NO. 5** with the Court using the Court's CM/ECF system, which will

send a copy thereof by email to all counsel of record.

<u>/s/Fred B. Westfall, Jr.</u>
Fred B. Westfall, Jr. (W.Va. Bar No. 3992)
Assistant U.S. Attorney, Civil Chief
300 Virginia Street East, Room 4000
Charleston, WV 25301
(304) 345-2200
(304) 347-5443 (facsimile)
E-mail:  fred.westfall@usdoj.gov