**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, et al.,<br><br>Defendants. | Civil Action No. 3:17-01362<br>Hon. David A. Faber |
| CABELL COUNTY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, et al.,<br><br>Defendants. | Civil Action No. 3:17-01665<br>Hon David A. Faber |

**DEFENDANTS' RESPONSE TO DEA'S OBJECTION TO SPECIAL MASTER'S DISCOVERY RULING NO. 5**

## I. Introduction

Defendants engaged in hours of meet-and-confers and reduced their requests by 50 percent, but DEA refuses to produce a ***single*** document in response to Defendants' requests, while at the same time producing documents in response to Plaintiffs' first subpoena with "no objection." Now, after Judge Wilkes issued a lengthy and well-reasoned order requiring DEA to finally produce documents responsive to Defendants' requests, DEA seeks further delay by filing its objections to the discovery ruling. The Court should reject DEA's objections and confirm DEA is ordered to produce documents responsive to Defendants' lawful subpoena. Given DEA's numerous attempts to delay production and the fact that document discovery closes this Friday,

the Court should also require a production schedule to ensure DEA complies with Discovery Ruling No. 5 in a timely manner.

The documents sought by Defendants' requests go to the heart of this litigation. Defendants' 14 requests—four fewer than Plaintiffs' 18 total requests served in CT2[1]— seek targeted information relating to the City of Huntington and Cabell County, West Virginia, and two federal government reports published after CT1 discovery closed about DEA's actions. In its response to Defendants' Motion to Compel, DEA conceded that the MDL court expected "limited, jurisdiction-specific discovery in the West Virginia cases would be necessary after remand"—the very type of information sought by Defendants' requests. The relevance of such jurisdiction-specific fact discovery cannot reasonably be disputed, but is particularly acute in West Virginia, where DEA's actions relating to opioid medications and the prevention of diversion continue to be the subject of governmental reports.[2] Yet DEA continues its refusal to produce documents in response to Defendants' narrow, targeted requests seeking highly relevant information.

[1] "CT2" refers to the instant action of *The City of Huntington v. AmerisourceBergen Drug Corp. et al*. and *Cabell County Commission v. AmerisourceBergen Drug Corp et al.* "CT1" refers to the MDL litigation in Cleveland of *The County of Summit, Ohio et al. v. Purdue Pharma et al.* and *The County of Cuyahoga, et al. v. Purdue Pharma et al.* "CT1B" refers to the second "track" of the MDL litigation in Cleveland involving pharmacy defendants.

[2] For example, a report issued only last week by the West Virginia Attorney General describes what it says was a "catastrophic" failure by DEA in West Virginia, concluding that "DEA was asleep at the switch" and the "Agency's failures were deadly." DEA's Failure to Combat Diversion Cost Lives: Results from the West Virginia Attorney General's Investigation into the DEA's Catastrophic Failure to Manage the National Drug Quota System (June 4, 2020), available at https://ago.wv.gov/publicresources/Documents/DEA%e2%80%99s%20Failure%20to%20Combat%20Diversion%20Cost%20Lives--Results%20from%20the%20West%20Virginia%20Attorney%20General%e2%80%99s%20%20Investigation.pdf.

Another report issued last fall by the Department of Justice found "that DEA was slow to respond to the significant increase in the use and diversion of opioids since 2000." Department of Justice OIG, Review of the Drug Enforcement Administration's Regulatory Enforcement (continued…)

DEA's objections to Discovery Ruling No. 5 center on DEA's faulty contention that Judge Wilkes applied the wrong standard of review when evaluating DEA's noncompliance with Defendants' subpoena. But there is no need for the Court to determine the standard of review that applies to DEA's action. Courts often decline to resolve the applicable standard of review when an agency's action should be set aside under either standard. DEA's blanket refusal to produce highly relevant documents in response to Defendants' targeted requests fails under either the Rule 45 or APA § 706 standard of review.[3]

As set forth in Defendants' Motion to Compel and Reply (Dkt. Nos. 321 and 403), DEA's refusal to comply with Defendants' subpoena is unlawful, an abuse of discretion, and arbitrary and capricious and should be set aside. *See* 5 U.S.C. § 706 (a court shall "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").

*First*, DEA has indisputably treated Plaintiffs and Defendants differently throughout this litigation, producing documents in response to Plaintiffs' first subpoena while stonewalling Defendants' efforts to obtain similar discovery.

*Second*, an agency's refusal to produce highly relevant documents in a litigation is an abuse of discretion and contrary to the public interest.

*Third*, DEA's sweeping assertions of law enforcement privilege are contrary to well-established law. DEA makes no attempt to satisfy its substantial threshold showing of specific harm that would result from disclosure.

---

Efforts to Control the Diversion of Opioids (Sept. 2019), available at https://oig.justice.gov/reports/2019/e1905.pdf.

[3] "Rule 45" refers to Federal Rule of Civil Procedure 45. "APA" refers to the Administrative Procedure Act.

*Finally*, DEA's cursory rejection of Defendants' proposal to use the existing Attorneys' Eyes Only ("AEO") protective order—an approach advocated by federal courts and used previously by DEA in the opioids litigations—is similarly arbitrary and capricious and an abuse of discretion.

DEA's reliance on its *Touhy* regulation to refuse to produce ***any*** documents and to make blanket assertions of law enforcement privilege is also misplaced. The *Touhy* regulation does not create any substantive or procedural rights for the federal government and is not an independent privilege for the government to refuse to comply with valid subpoenas. DEA's application of the *Touhy* regulation here is plainly unreasonable because it contradicts the regulation's plain language and DOJ's own internal standards, which concede that the *Touhy* regulations "***neither create new privileges nor supersede discovery obligations that exist under the Federal Rules of Civil Procedure***." Justice Manual, § 1-6.400 (emphasis added).[4]

Simply put, this Court should affirm Discovery Ruling No. 5.

## II. Argument

### A. DEA's Arguments Concerning the Applicable Standard of Review Are Irrelevant

DEA asks this Court to overturn Judge Wilkes' well-reasoned discovery ruling by claiming that Judge Wilkes applied the incorrect standard of review. But DEA's objections miss the mark. The Court need not even decide the standard of review because DEA's blanket denial of Defendants' discovery requests is unlawful, an abuse of discretion, and arbitrary and capricious under any standard of review.

[4] The Justice Manual further emphasizes in its Introduction that "the regulations are not intended to create new privileges or to supersede existing discovery rules." Justice Manual, § 1-6.100. The Manual is publicly available on the Department of Justice's website. *See* https://www.justice.gov/jm/jm-1-6000-doj-personnel-witnesses.

**1. The Court Need Not Determine the Standard of Review**

DEA contends that the Court should review DEA's wholesale non-compliance with Defendants' discovery subpoena under the APA's arbitrary and capricious standard of review. DEA's Objections at 1. In contrast, both Plaintiffs and Defendants argue that DEA's refusal to comply with their respective document subpoenas is subject to review under Rule 45.

Contrary to DEA's objections, however, there is no need for the Court to even reach this issue, much less overturn Judge Wilkes' decision. When faced with the issue of deciding whether Rule 45 or the APA applies, other district courts declined to resolve the issue. *See, e.g.*, *In re Vioxx Products Liability Litig.*, 235 F.R.D. 334, 344 (E.D. La. 2006) ("While acknowledging the dispute over the applicable standard, this Court need not resolve the issue."); *Fischer v. Cirrus Design Corp.*, 2005 WL 3159658, at *4 (N.D.N.Y Nov. 23, 2005) ("Because I find that even under this significantly deferential standard the agency's refusal to honor the subpoena issued cannot pass muster, I find it unnecessary to resolve this issue and determine whether a more relaxed burden should apply."). There is no need for the Court to reach what standard of review applies because DEA's blanket refusal to produce documents is unlawful, an abuse of discretion, and arbitrary and capricious. Put another way, DEA's actions fail even under the more agency-friendly standard of review.

**2. DOJ's Reliance on *COMSAT* for Standard of Review Is Misplaced**

Contrary to DEA's assertion that "the Fourth Circuit has made clear" that the "arbitrary and capricious" standard governs DEA's refusal to comply with Defendants' subpoena, the law concerning whether the APA § 706 or Rule 45 standard of review governs a federal court's review of an agency's non-compliance in a federal action is far from settled.

Courts around the country are split on whether to review an agency's non-compliance with a subpoena under Rule 45 or the APA's § 706. *In re Vioxx*, 235 F.R.D. at 344 ("[A] split has developed over whether the APA's arbitrary and capricious standard or Rule 45's undue burden standard should control…."). DEA relies on the Fourth Circuit's decision in *COMSAT* to contend that the arbitrary and capricious standard of the APA governs the Court's review of Defendants' motion to compel. But DEA's reliance on *COMSAT* is misplaced.

DEA's expansive interpretation of *COMSAT* is inapposite because the subpoenas at issue here arose pursuant to a litigation in federal court. In contrast, the Fourth Circuit's decision in *COMSAT* concerned a federal agency's appeal from an order in a private arbitration. *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 272-274 (4th Cir. 1999). The Fourth Circuit's analysis in *COMSAT* centered on the power of a private arbitrator to issue subpoenas to third parties under the Federal Arbitration Act. The holding in *COMSAT* is expressly limited to the power of a private arbitrator under the Federal Arbitration Act to compel discovery from third parties in a private arbitration. *Id.* at 278 ("In summary, we hold today that a federal court may not compel a third party to comply with an ***arbitrator's subpoena for prehearing discovery***, absent a showing of special need or hardship." (emphasis added)).

DEA's attempt to import *COMSAT* into a civil litigation originating in federal court is contrary to the plain language of *COMSAT*. *Id*. *COMSAT* did not concern a federal court subpoena arising from a case that originated in federal court. Subpoenas originating from a private arbitrator or a state court implicate sovereign immunity issues not present in a case originating in federal court. *See Lamb,* 2018 WL 847242, at *2 (finding *COMSAT* is "inapposite to the present issue because the sovereignty concern underlying those decisions is not present when the subpoenas stem from a proceeding initiated in federal court").

The Fourth Circuit has not addressed the relationship between Rule 45 and review under the APA because (to our knowledge) the Fourth Circuit has not considered a federal agency's noncompliance with a subpoena issued by a federal court. The Department of Justice's internal manual interpreting its *Touhy* regulations concedes that the regulations "neither create new privileges ***nor supersede discovery obligations that exist under the Federal Rules of Civil Procedure***." Justice Manual, § 1-6.400 (emphasis added).

**3. DEA's Noncompliance Is Unlawful, an Abuse of Discretion, and Arbitrary and Capricious Under Any Standard of Review**

Under either standard of review, however, DEA's boilerplate and conclusory objections to Defendants' subpoena do not justify its wholesale failure to even search for, let alone produce, any responsive documents while producing documents in response to certain of Plaintiffs' requests. Defendants' Motion to Compel and Reply Brief set forth in detail why DEA's actions are unlawful, an abuse of discretion, and arbitrary and capricious regardless of what standard of review is applied.

District courts inside and outside the Fourth Circuit faced with nearly identical actions by federal agencies found the agencies' noncompliance unlawful, an abuse of discretion, and arbitrary and capricious. *See In re Vioxx*, 235 F.R.D. at 345-347 (finding FDA's blanket refusal to produce a witness for deposition as "arbitrary and capricious"); *Lamb*, 2018 WL 847242, at *6 ("The agency's refusal to comply with Plaintiffs' subpoena was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law…."); *In re Subpoena to the National Science Foundation,* 2018 WL 5017612, at *4 (E.D. Va. Oct. 16, 2018) ("The NSF abused its discretion in refusing to comply with the movant's subpoena."); *Ceroni v. 4Front Engineered Solutions, Inc.*, 793 F. Supp. 2d 1268, 1278 (D. Colo. 2011) (finding USPS's denial under *Touhy* was arbitrary and capricious because the response "is composed solely of boilerplate objections, devoid of any

individualized factual analysis"); *Fischer*, 2005 WL 3159658, at *8 (finding the FAA's decision to not produce documents was "arbitrary and capricious" in view of the protective order in place in the litigation).

**B. Touhy Is Not a Shield Against Discovery**

DEA contends that the *Touhy* regulations prohibit disclosure of responsive documents. DEA's Objections at 11-12. DEA went even further in its briefing before Judge Wilkes, asserting that *Touhy* "permits DEA to refuse to comply with third party subpoenas." Dkt. 378 at 14. DEA's sweeping assertions are contrary to well-established law and DOJ's own internal guidelines on *Touhy*.

The *Touhy* regulation does not create substantive and procedural rights for the government to shield itself from valid subpoenas. The *Touhy* regulation itself explains that the regulations are "intended only to provide guidance for the internal operations of the Department of Justice, and is not intended to, and ***may not be relied upon to create any right or benefit, substantive or procedural***, enforceable at law by a party against the United States." 28 C.F.R. § 16.21(d) (emphasis added). "There is no 'independent privilege to withhold government information or shield federal employees from valid subpoenas' that arises from the regulations." *Lamb*, 2018 WL 847242, at *5.

Courts emphasize that *Touhy* may not "be used as a tool by the executive to usurp the judiciary's role in determining what evidence will enter into the courtroom." *Streett v. United States*, 1996 WL 765882, at *4 (W.D. Va. Dec. 18, 1996); *see also Owings v. Hunt & Henriques*, 673 F.Supp.2d 1104, 1106 (E.D. Cal. 2009) ("The U.S. Army's *Touhy* regulations do not authorize the Army to ignore discovery requests or court orders addressing those discovery requests in a pending federal action."). The Department of Justice's own manual interpreting its *Touhy*

regulations concedes that *Touhy* regulations do not abrogate DEA's obligations under Rule 45. Justice Manual, § 1-6.400; Justice Manual, § 1-6.100.

DEA's reliance on the *Touhy* regulations to shield itself from Defendants' subpoena is misplaced. Even if the *Touhy* regulation affords DEA the protection it claims (which it does not), DEA articulates no reason—much less a "rationale"—sufficient to justify its wholesale refusal to comply with Defendants' 14 clearly relevant and narrowed requests. *See Ceroni*, 793 F. Supp. 2d at 1278 (finding USPS's denial under *Touhy* was arbitrary and capricious because the response "is composed solely of boilerplate objections, devoid of any individualized factual analysis").

### C. DEA's Blanket Denial of Defendants' Requests Is Unlawful Under Any Standard of Review

When DEA finally responded to Defendants' requests—10 days after Defendants were forced to seek relief because DEA refused to provide any substantive response—DEA rejected every one of Defendants' requests, even those requests that it acknowledged were sufficiently narrow and targeted on their face. Even assuming the standard of review under APA § 706 applies, DEA's actions are unlawful, an abuse of discretion, and the definition of arbitrary and capricious.

#### 1. DEA's Disparate Treatment of Plaintiffs and Defendants Is the Definition of Arbitrary and Capricious

DEA's disparate treatment of Plaintiffs' and Defendants' requests is arbitrary and capricious. "Where an agency applies different standards to similarly situated entities and fails to support this disparate treatment with a reasoned explanation and substantial evidence in the record, its action is arbitrary and capricious and cannot be upheld." *Burlington Northern & Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 777 (D.C. Cir. 2005). DEA fails even to address its disparate treatment of the parties in its objections because DEA's actions are indefensible.

Plaintiffs served their first CT2 subpoena on DEA in late October 2019, prior to remand of the cases. Plaintiffs re-served their first subpoena on DEA in February 2020, and served a second subpoena in March. Defendants were not invited to participate in any meet-and-confer process regarding these subpoenas and still have no idea what discussions were had between DEA and Plaintiffs, if any. What is apparent is that DEA agreed to produce documents responsive to Plaintiffs' subpoena. DEA began producing documents on December 20, 2019, explaining in its *Touhy* authorization letter to Plaintiffs that DEA has "no objection" to Plaintiffs' requests. *See* Ex. D to Reply (Dkt. No. 403-1). Notably, ***DEA produced investigation files***—the very documents DEA now says are subject to a law enforcement privilege and are too sensitive to be produced in response to Defendants' subpoena. *See* Ex. B to Motion (Dkt. No. 321-2).

On February 21, 2020, Defendants served their CT2 subpoena. DEA did not respond in writing, instead requesting a meet-and-confer. Despite not inviting Defendants to any meet and confers DEA had with Plaintiffs, DEA invited Plaintiffs to attend the meet-and-confers on Defendants' requests. As set forth in Defendants' Motion to Compel, the meet-and-confer process was not productive. During the meet-and-confer process, DEA requested that Defendants narrow the scope of their requests, and when the Defendants complied and spent hours walking DEA through each of the priority requests—which DEA acknowledged reduced the scope of the subpoena by approximately 50 percent—DEA nevertheless refused to produce a single document, necessitating that Defendants file a Motion to Compel.

By its own words, DEA therefore effectively concedes it stonewalled Defendants through three meet-and-confer sessions over the course of three weeks, despite Defendants' history of being willing to compromise with DEA to reduce the agency's burden. *See S.E.C. v. Chakrapani*, 2010 WL 2605819, at *10 (S.D.N.Y. June 29, 2010) (holding that *Touhy* denial was "arbitrary and

capricious" where government gave no credible reason for why it could give FBI files to one defendant but not another). DEA's production of documents in response to Plaintiffs' first subpoena but its refusal to produce any documents in response to Defendants' request is the embodiment of an arbitrary agency action. *See Burlington Northern & Santa Fe Ry. Co.*, 403 F.3d at 777.

**2. DEA's Refusal to Produce Highly Relevant Documents Is an Abuse of Discretion**

The refusal by a federal agency to produce documents critical to a party's defenses is an abuse of discretion under the APA. *See In re Subpoena to Nat'l Sci. Foundation*, 2018 WL 5017612, at *4 ("Because the transcripts contain important information for movants' defense and counterclaims in the underlying civil proceeding, production of the transcripts would prevent a miscarriage of justice. While the NSF has no direct interest in the outcome of the underlying civil proceeding, it does have an interesting ensuring a fair and impartial trial for the movants."). Here, it is indisputable that the discovery sought by Defendants from DEA is highly relevant to Plaintiffs' claims and Defendants' defenses in this complex action.

Plaintiffs allege in their complaints that Defendants' alleged failure to report suspicious orders of opioids to DEA resulted in harm to Plaintiffs. Discovery concerning DEA's receipt and use in this jurisdiction of suspicious order reports, ARCOS transactional data, and the West Virginia Controlled Substance Automated Prescription Program ("WVCSMP") is directly relevant to whether any alleged failure by Defendants resulted in Plaintiffs' alleged injuries. If DEA did not use suspicious order reports (or, instead, relied on ARCOS data or the WVCSMP) to investigate potentially suspicious orders, then any alleged failure by Defendants to report suspicious orders could not have caused Plaintiffs' alleged injuries. Indeed, there is reason to believe this discovery may be fruitful. *See* OIG, *Review of the Drug Enforcement Administration's*

*Regulatory and Enforcement Efforts to Control the Diversion of Opioids* (Sept. 2019) at 31 (stating that a DEA diversion program manager described DEA's suspicious order report database as a "joke"); GAO, *Actions Needed to Ensure Usefulness of Data on Suspicious Opioid Orders* (Jan. 2020) at 32 (noting GAO found during interviews with "DEA officials and DEA field division offices" that "they rarely use suspicious order reports to generate potential investigative leads."). Such evidence is critical to Defendants' defense.

Defendants' request for documents concerning DEA audits and investigations of their distribution centers servicing West Virginia is also directly relevant to the issues of this litigation. In CT1B, Special Master Cohen considered a request by a pharmacy defendant for certain DEA distribution center audits—a request that mirrors Defendants' Request No. 13 at issue in this motion. DEA was ordered to produce the documents because the DEA documents were "at the very center of the issues to be decided in the upcoming trial" and "could not be more relevant." *See* Dkt. No. 3258 at 4, *In re: National Prescription Opiate Litigation*, 1:17-md-02804-DAP (N.D. Ohio). DEA's claims of law enforcement privilege over the audits were similarly rejected as "hyperbolic." *Id*. at 7-8 ("[P]roduction of the audits is not protected by law enforcement privilege.").

Defendants' requests directed to DEA's efforts to combat diversion and illicit opioid use in Cabell County, the City of Huntington, and West Virginia are similarly highly relevant to Plaintiffs' alleged injuries that purportedly result from users of illicit opioids and users of opioids diverted from legitimate prescriptions. Information about DEA's efforts relating to diversion of prescription opioids and trafficking of illicit opioids into Plaintiffs' geographical boundaries is critical to assessing whether Defendants' alleged conduct resulted in harm to Plaintiffs.

As another example, Defendants seek information relating to DEA's submissions to the U.S. House of Representative's Energy and Commerce Committee for the Committee's investigation that resulted in the 2018 report, *Red Flags and Warning Signs Ignored: Opioid Distribution and Enforcement Concerns in West Virginia*. This report has been the subject of multiple discovery requests by Plaintiffs to Defendants. But this report also investigated DEA's conduct in West Virginia, including DEA's response to red flags identified by distributors in West Virginia.[5] DEA's failure to act on red flags raised by distributors is highly relevant to Defendants' defenses. In addition, the documents sought by Defendants in this request were already produced by DEA during the congressional investigation. Because this material has already been produced by DEA, there should be no burden to reproduce the materials in this litigation; DEA should only have to duplicate its production CDs.

### D. DEA Improperly Attempts to Invoke a Blanket Law Enforcement Privilege to Avoid Compliance

DEA's objections further contend that *Touhy* provides an independent law enforcement privilege that allows DEA to refuse to comply with Defendants' subpoena. DEA Objections at 19-20. This is wrong and contradicted by DOJ's own internal guidelines on *Touhy*.

There is no law enforcement privilege created by the *Touhy* regulation that is separate from West Virginia privilege law, which governs in this litigation. DEA's argument otherwise is contrary to the *Touhy* regulation itself, which states that *Touhy* "may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law," *see* 28 C.F.R. § 16.21(d), and

[5] The report found, for example, "[m]any of the suspicious orders [reported by distributors to DEA] involve the same customers, meaning that DEA was alerted that some pharmacies were repeatedly being denied controlled substance orders because distributors were concerned about possible diversion." U.S. House of Representatives Energy & Commerce Committee, *Red Flags and Warning Signs Ignored: Opioid Distribution and Enforcement Concerns in West Virginia* (Dec. 19, 2018) at 61.

DOJ's internal guidelines on the *Touhy* regulations. *See* Justice Manual, § 1-6.400; Justice Manual, § 1-6.100. Judge Wilkes correctly concluded that West Virginia law governs DEA's assertions of law enforcement privilege, *see* Fed. R. Evid. 501, and West Virginia has "never adopted an all-encompassing law enforcement privilege." *Maclay v. Jones*, 542 S.E.2d 83, 86 (W.Va. 2000).

DEA also contends that it is not required to search for any responsive documents because there is a chance some documents may implicate the law enforcement privilege. DEA's Objections at 18-20. This objection rings hollow.

As an initial matter, the fact that ***some*** documents—or even many documents—may be privileged cannot and does not shield DEA from having to even ***look for*** responsive documents. Here, DEA's claim that responsive documents would be protected by law enforcement privilege rings particularly hollow—DEA has not even attempted to look for responsive documents. It cannot possibly already know that ***every single*** responsive document—or even most responsive documents—are protected by privilege. Therefore, DEA's claim that some documents might be privileged is irrelevant.

The law enforcement privilege is a qualified privilege and "ceases once the reason for it no longer exists." *Lamb*, 2018 WL 847242, at *5. Indeed, even when reviewing government responses to discovery requests, courts are not "required to defer blindly to assertions made by a law enforcement official regarding the existence of the law enforcement privilege." *MacNamara v. City of N.Y.*, 249 F.R.D. 70, 85 (S.D.N.Y. 2008). Instead, federal courts require that "the party asserting the privilege must make 'a substantial threshold showing[] that there are specific harms likely to accrue from disclosure of specific materials, and that this burden must be discharged by

presenting 'those facts that are the essential elements of the privileged relationship' and not 'by mere conclusory or *ipse dixit* assertions.'" *Id*. (internal citations omitted).

Even if DEA could articulate a concern for information sought by some of Defendants' requests, there can be no dispute that the majority of Defendants' requests do not seek documents that would reveal sensitive information about ongoing DEA investigations. DEA concedes as much in its objections. DEA Objections at 20. There also can be no dispute that DEA could find a way to produce non-sensitive materials, as it did when producing the investigation files for Plaintiffs. There is no justification for DEA's blanket refusal to produce under the guise of a law enforcement privilege. *See* 5 U.S.C. 706. DEA should be required, like all party and non-party litigants, to produce non-privileged documents and provide a timely privilege log describing what documents it withholds.

And even if DEA has concerns about law enforcement sensitive information, DEA can and should utilize the "Attorneys Eyes Only" provision of the protective order in this case. DEA has used "Attorneys Eyes Only" protective orders to produce DEA law enforcement sensitive information in other opioids litigations. Indeed, DEA, in its *Touhy* authorization letter to Plaintiffs in CT2, recognized that protective orders could alleviate sensitivity concerns in CT2: "DOJ, on behalf of the DEA, may request a further order of the Court as contemplated in paragraph 4 of the Protective Order if we determine that such an order is necessary and appropriate to adequately protect the DEA's interests in future productions." *See* Ex. D to Reply (Dkt. No. 403-1). DEA's unfounded rejection of Defendants' proposal to use the AEO protective order is arbitrary and capricious. *See Fischer*, 2005 WL 3159658, at *8 (finding the FAA's decision to not produce documents was "arbitrary and capricious" in view of the protective order in place in the litigation).

**E. Defendants Do Not Seek to Reopen Discovery**

DEA further objects to Judge Wilkes' ruling because after careful consideration, the ruling rejects DEA's contention that Defendants served "broad requests similar to those in the MDL" against DEA. DEA Objections at 16. DEA's objection fails under scrutiny.

Defendants do not seek to repeat CT1 DEA discovery in CT2 or otherwise "reopen discovery" taken in CT1. Instead, as Judge Wilkes recognized, twelve of Defendants' 14 requests are geographically limited to West Virginia. Defendants' remaining two requests (Nos. 21 and 32) seek information regarding DEA's responses to or communications about two federal government reports related to the opioid crisis published ***after*** discovery in CT1 closed. Documents related to these reports are critical to understanding what DEA did or did not do in response to the opioid crisis, and could not have been requested in CT1. Defendants cannot "reopen discovery" about two reports that were not issued before the close of discovery in CT1. And DEA itself acknowledged during the meet-and-confer process that Request Nos. 21 and 32 were sufficiently narrow, but stated that it would not produce documents responsive to these requests because there was not agreement on other requests.

**F. DEA's "Cumulative Burden" and "Slippery Slope" Objections Should Be Rejected**

DEA also objects to Judge Wilkes' discovery ruling because he refused to accept DEA's argument that the requests were "cumulative" and created a slippery slope that could result in future requests for discovery from DEA. DEA's Objections at 15-16. The Court should reject this objection.

DEA offered this same "slippery slope" argument in its petition to Special Master Cohen to deny DEA discovery requested from a pharmacy defendant in CT1B of the MDL. There, DEA's same burden and "slippery slope" arguments were rejected in view of the demonstrated substantial need for the documents. *See* Dkt. No. 3258 at 6, *In re: National Prescription Opiate Litigation*,

1:17-md-02804-DAP (N.D. Ohio) ("In any event, all of DOJ's arguments regarding burden and relevance are conclusory or incorrect, and the slippery slope argument is of no more avail. The substantial need Rite Aid has demonstrated for the requested discovery, to defend itself in this national litigation, is certainly not disproportional to the burden placed on DOJ to produce it.").

Other courts have rejected similar arguments made by federal agencies. *See, e.g.*, *In re Vioxx Prods. Liab. Litig.*, 235 F.R.D. at 345. In the Vioxx multi-district litigation, the court rejected a federal agency's arguments "about the aggregate effect" that a discovery ruling "may have in future cases throughout the country." *Id.*; *see also In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 841 (6th Cir. 2020) ("[A]s the Supreme Court has made clear, every case in an MDL … retains its individual character."). Instead, discovery motions "should be decided on a case-by-case basis" and "are heavily based on individual facts in an individual case." *In re Vioxx Prods. Liab. Litig.*, 235 F.R.D. at 345; *see also In re Nat'l Prescription Opiate Litig.*, 956 F.3d at 845 (finding that a district court's decision "in an individual case ***depends on the record in that case and no others***" (emphasis added)). The *Vioxx* court found that if it "were to make such an unsound ruling" it would allow the agency "to implement a practice of denying all deposition requests under the guise of possible, although presently nonexistent consequences." *In re Vioxx Prods. Liab. Litig.*, 235 F.R.D. at 345. The court refused to "deal" the agency "a trump card." *Id.*

Similarly here, the Court should reject DEA's slippery slope assertions that DEA contends allow it to refuse to produce a ***single*** document in response to Defendants' requests.

**III. Conclusion**

For the reasons set forth above and in Defendants' Motion to Compel and Reply, the Court should grant Defendants' Motion to Compel, overrule DEA's Objections to Discovery Ruling No. 5, and order DEA to produce documents responsive to Defendants' 14 requests in a timely manner.

Dated: June 9, 2020

Respectfully submitted,

***McKesson Corporation***
By Counsel:

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
Jason L. Holliday (WVSB #12749)
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Tel: (304) 345-0200
jwakefield@flahertylegal.com
jholliday@flahertylegal.com

*/s/ Carol Dan Browning*
Carol Dan Browning
Stites & Harbison, PLLC
400 West Market Street, Suite 1800
Louisville, Kentucky 40202
Tel: (502) 587-3400
Fax: (502) 587-6391
cbrowning@stites.com

*/s/ Timothy C. Hester*
Timothy C. Hester
Mark H. Lynch
Christian J. Pistilli
Laura Flahive Wu
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
mlynch@cov.com

cpistilli@cov.com
lflahivewu@cov.com

***AmerisourceBergen Drug Corporation***
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

***Cardinal Health, Inc.***
By Counsel:

*/s/ Steven R. Ruby*
Brian A. Glasser (WVSB #6597)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
BAILEY GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
*Counsel in Cabell County action*

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW

Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard@wc.com
ahardin@wc.com