IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

THE CITY OF HUNTINGTON,
    Plaintiff,

v.                                 CIVIL ACTION NO. 3:17-01362

AMERISOURCEBERGEN
DRUG CORPORATION, et al.,
    Defendants.

---

CABELL COUNTY COMMISSION,
    Plaintiff,

v.                                 CIVIL ACTION NO. 3:17-01665

AMERISOURCEBERGEN
DRUG CORPORATION, et al.,
    Defendants.

---

**REPLY IN SUPPORT OF DEFENDANT'S MOTION
TO COMPEL DISCOVERY RESPONSES FROM THE
<u>WEST VIRGINIA BUREAU FOR CHILDREN AND FAMILIES</u>**

Plaintiffs put the West Virginia Bureau for Children and Families ("BCF") and its files at issue in this case by alleging that Defendants' conduct caused Plaintiffs to incur damages relating to children in foster care, and seeking future abatement for such costs. BCF has confirmed that it possesses documents responsive to Defendant AmerisourceBergen Drug Corporation's ("Defendant") subpoena *duces tecum* ("Subpoena"). Yet, BCF has not produced a single document to Defendant since being served with Defendant's Subpoena on February 25, 2020. BCF has not served any objections to the Subpoena, nor has it objected to producing full and complete responses to ten of the eleven categories of documents identified as priority requests in

Defendant's Motion to Compel (Request Nos. 1-3, 7, 9, 15, 17, 29 and 34; *see* ECF 430, 431). Accordingly, the Court should require BCF to produce all documents responsive to Defendant's Subpoena Request Nos. 1-3, 7, 9, 13, 15, 17, 29 and 34.

In the Opposition, BCF takes issue with just one request for documents (Request No. 8), which seeks BCF's production of case files housed on its Families and Children Tracking System ("FACTS"). The subject case files are discoverable and should be produced because Plaintiffs are seeking monetary relief to address the impact of opioid use and abuse within their communities, including the impact on families and children. To understand and defend against Plaintiffs' allegations, Defendants are entitled to discovery into BCF's services provided to children and families and the factors that are driving the need for those services. As BCF has itself asserted, the only way to obtain that information is to review the case files. BCF claims that it does not maintain any compilations or summaries of data that reflect the reason for child removals and what, if any, impact opioids played in such removals.

BCF alleges that it should not be required to produce case files because they are protected from disclosure by W. Va. Stat. § 49-5-101 and because their production would be burdensome. Not so. Defendant has requested that BCF produce the subject case files with all identifying information redacted to ensure the confidentiality and anonymity of the juveniles. Such measures would preserve all safeguards set out in W. Va. Stat. § 49-5-101. With respect to BCF's burden assertion, Defendant has offered to tailor its request for case files (Request No. 8) in order to obtain only a subset of key redacted documents from each case file, instead of the entire redacted file. For the reasons stated herein, the Court should grant Defendant's motion and compel BCF to produce relevant, redacted documents from its case files.

**ARGUMENT**

I.     **Defendant's Motion is Not "Premature."**

BCF claims that Defendant's Motion is "premature" and requests that Defendant's Motion be held in abeyance while it reviews its files for responsive documents. *See* Opp. ¶¶ 3-4. Defendant's Motion is not premature and should not be held in abeyance. On February 25, 2020, Defendant served the Subpoena on BCF with a return date of March 17, 2020. *See* Motion Ex. 1 (ECF No. 430-1). BCF acknowledges that it has located responsive documents, *but it has not produced a single document* in response to the Subpoena served on it more than three months ago.[1] Defendant has noticed a Rule 30(b)(6) deposition of BCF for July 1, 2020, and Defendant requires time to review BCF's documents in advance of that deposition. Furthermore, the Court's deadline for filing motions to compel by May 15, 2020, which Defendant met, fortifies that the Motion is not premature.

Defendant acknowledges that BCF is facing challenges caused by the COVID-19 pandemic. However, those challenges cannot excuse BCF's failure to produce any responsive documents. BCF states that "shortly after BCF received the [S]ubpoena… the Governor issued a Stay at Home Order requiring all state employees to stay home, teleworking where possible." Opp. ¶ 2. However, the Governor's Stay-at-Home Order was issued on March 23, 2020, which was more than a month after Defendant served the Subpoena and five days after BCF's initial deadline for producing documents. *See* https://coronavirus-wvgovstatus-

---

[1] As noted in the Motion, BCF failed to serve any written objections to Defendants' Subpoena and thereby waived any such objections. *See* Motion at 4 (citing *Hanwha Azdel, Inc. v. C & D Zodiac, Inc.*, No. 6:12-CV-00023, 2013 WL 3660562, at *1 (W.D. Va. July 11, 2013); *Wang v. Hsu*, 919 F.2d 130, 131 (10th Cir. 1990); *Angell v. Shawmut Bank Connecticut Nat. Assn.*, 153 F.R.D. 585, 590 (M.D.N.C. 1994)). To date, the Opposition is the only written response BCF has made to the Subpoena, and that response was filed on May 28, 2020, after its deadline set out in the third party discovery order entered in this case, which Defendant provided to BCF prior to filing its Motion.

cdn.azureedge.net/STAY_AT_HOME_ORDER.pdf. Defendant is sensitive to the burdens placed on BCF by the COVID-19 pandemic, but those burdens cannot excuse BCF's failure to produce any documents responsive to the Subpoena after more than three months.

## II. The Court Should Compel BCF to Produce Documents in Response to Defendant's Priority Requests.

Defendant seeks an order compelling the production of certain categories of documents, which are particularly relevant given Plaintiffs' allegations related to the "thousands of children in foster care placements" as well as the alleged "[c]osts associated with providing care for children whose parents suffer from opioid-related disability or incapacitation." *See* Motion at 8-9 (quoting Joint Third Amended Complaint ["TAC," ECF No. 2595] ¶¶ 19, 1506). BCF does not object to producing documents responsive to any of these categories of documents. *See generally* Opposition. Accordingly, the Court should order BCF to produce all documents in its possession, which are responsive to the following Requests:

> *1. All Communications between You and Plaintiffs discussing, referring, or relating to the prescribing, dispensing, use, misuse, abuse, sale, diversion, production, distribution, or trafficking of Prescription Opioids or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.*
>
> *2. All Documents discussing, referring, or relating to any Defendant, including but not limited to, all Communications or transactions between You or Plaintiffs and any Defendant, manufacturer, distributor, or dispenser of Prescription and Illicit Opioids.*
>
> *3. All Documents discussing, referring, or relating to Your or Plaintiffs' knowledge of the prescribing, dispensing, use, misuse, abuse, sale, diversion, production, distribution, or trafficking of Prescription Opioids or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village or city within Cabell County.*
>
> *7. All Documents referring to or relating to the unlawful use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase and/or trafficking of Prescription or Illicit Opioids or other opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.*

*9. All Documents that describe, discuss, relate to, analyze, or refer to the impact on You, or anyone acting on Your behalf, of the use and abuse of opioids, including but not limited to, any harm suffered by any and all individuals residing within Cabell County or the City of Huntington, that are, or have been, attributed in whole or in part to the abuse, use, or misuse of Prescription or Illicit Opioids, or the abuse, use, or misuse of other opioids.*

*13. All Documents and Communications identifying, discussing, or relating to pill mills in the City of Huntington, Cabell County, or any town, village or city within Cabell County.*

*15. All Documents sufficient to identify, by year and for each program or service that You provide, (a) the number of individuals in Cabell County or the City of Huntington to whom You provided services because they, or someone closely associated with them or related to them have an opioid use disorder resulting from using Illicit Opioids, and the amount You were paid by Cabell County or the City of Huntington for those services; (b) the number of individuals in Cabell County or the City of Huntington to whom You provided services because they, or someone closely associated with them or related to them have an opioid use disorder resulting from the misuse or abuse of Prescription Opioids, and the amount You were paid by Cabell County or the City of Huntington for those services; (c) the number of individuals in Cabell County or the City of Huntington to whom You provided services because they, or someone closely associated with them or related to them have a drug addiction that does not involve opioids, and the amount You were paid by Cabell County or the City of Huntington for those services; and (d) the number of individuals in Cabell County or the City of Huntington to whom You provided services because they, or someone closely associated with them or related to them have a substance abuse problem or addiction that does not involve drugs, and the amount You were paid by Cabell County of the City of Huntington for those services.[2]*

*17. All Documents relating to the impact of Prescription or Illicit Opioids on children, including newborns, in the City of Huntington and Cabell County.*

*29. All Documents relating to any efforts by You to reduce the number of Prescription Opioids, Illicit Opioids, or opioid prescriptions in the State of West Virginia.*

---

[2] Prior to Defendant filing its Motion, BCF agreed to produce documents in response to Request No. 15. In particular, BCF stated it had an Excel spreadsheet reflecting the number of child placements/removals from 2017 to the present and the number of those cases that involved substance abuse issues. Because BCF had agreed to produce that spreadsheet, Defendant did not make Request No. 15 the subject of its Motion, but reserved the right to do so if BCF failed to produce the Excel spreadsheet it promised it would produce. *See* ECF No. 431 at fn 1, p. 6. Because BCF has not produced the referenced Excel spreadsheet or any other related information responsive to Request No 15, Defendant includes Request No. 15 herein.

> *34.  All Documents reflecting direct, indirect, and monetary costs and expenses You or any Plaintiff has incurred that You attribute to the opioid abuse epidemic or the use, misuse or abuse of Prescription Opioids or Illicit Opioids in the City of Huntington, Cabell County, or any town, village or city within Cabell County.*

With respect to several of these priority Requests, Defendant provided BCF with a proposed list of BCF custodians whose files should be searched for responsive documents, as well as a list of search terms that could be applied to those files. *See* Defendant's Request No. 28 (ECF No. 430-1 at 18); Defendant's May 11, 2020 Letter (ECF No. 430-2 at 33-36). BCF does not object to any of Defendant's search terms, and it has not lodged any objection to applying those search terms to the custodial files of the individuals Defendant has identified. *See generally* Opposition. Accordingly, the Court should order BCF to produce documents responsive to Defendant's Request Nos. 1-3, 7, 9, 13, 15, 17, 29 and 34 and apply the search terms listed in Exhibit 2 to Defendant's Motion to the custodial files of the individuals listed in Defendant's Request No. 28. *See* Defendant's Request No. 28 (ECF No. 430-1 at 18); Defendant's May 11, 2020 Letter (ECF No. 430-2 at 33-36).

### III.  **The Court Should Order BCF to Produce Anonymous Case Files.**

BCF takes issue with just one request for documents (Request No. 8), which seeks BCF's production of case files housed on FACTS.[3] BCF maintains that it should not be required to produce those documents because they are protected from disclosure by W. Va. Stat. § 49-5-101. However, Defendant has stated to BCF and argued in its Motion that it is willing to accept FACTS

---

[3] "FACTS was designed and developed based on the requirements established by the U.S. Department of Health and Human Services, Administration for Children and Families, to support the state's federal reporting for Adoption and Foster Care Analysis and Reporting System (AFCARS) and National Child Abuse and Neglect Data System (NCANDS)."
http://www.wvfacts.org/WVFacts/learning/guides/factsguides.htm

files that have been anonymized through redaction of juveniles' names and other identifying information.

As the West Virginia Supreme Court has recognized, anonymizing records is an appropriate way to ensure the confidentiality of juvenile records when they are relevant in a legal proceeding. *Ogden Newspapers, Inc. v. City of Williamstown*, 192 W. Va. 648, 656, 453 S.E.2d 631, 639 (1994). In *Ogden Newspapers*, the defendant locality was ordered to produce copies of criminal incident reports involving juveniles, but with the juveniles' names redacted. *Id*. Noting that the juvenile confidentiality statutes are "intended to protect the confidentiality of juvenile records," the Court held that "releasing a redacted copy of the incident report at issue in this case would not require a breach of that confidentiality." *Id*.

In the Opposition, BCF argues that the "statute providing for the confidentiality of child protective services records was not implicated in" *Ogden Newspapers*. Opp. ¶ 6. BCF is incorrect. *Ogden Newspapers* did involve the statute at issue here, W.Va. Stat. § 49-5-101[4] and the West Virginia Supreme Court held that "the factual data contained in a *properly redacted* incident report does not rise to the level of a 'juvenile record' protected from disclosure…by the confidentiality statutes." *Ogden Newspapers*, 192 W. Va. at 656, 453 S.E.2d at 639 (emphasis added). In other words, according to the West Virginia Supreme Court, *un*redacted incident reports would be considered "juvenile records" within the meaning of § 49-5-101, and could be disclosed only on court order and following an *in camera* review. But, if the records are redacted, the juvenile confidentiality statutes are inapplicable.

---

[4] When *Ogden Newspapers* was decided in 1994, the provision of the Code which BCF claims is applicable here (§ 49-5-101) was codified at § 49-7-1. *See Ogden Newspapers*, 192 W. Va. at 656, 453 S.E.2d at 639 n.13.

Here, Defendant requests that BCF produce redacted copies of FACTS case files from which juvenile's names, dates of birth, and other identifying information have been redacted, thus maintaining "juvenile confidentiality." *Ogden Newspapers*, 192 W. Va. at 656, 453 S.E.2d at 639. Further, in *Ogden Newspapers*, the redacted records were provided to the plaintiff newspapers without any restriction on their further use or dissemination to the public. *See id*. Here, by contrast, Defendant is requesting that the redacted records be produced as confidential pursuant to the protective order in this litigation, which would prohibit the public disclosure of those records even in redacted form. Accordingly, the production of properly redacted case files would obviate the need for this Court to conduct an *in camera* review of the requested files.

**IV. The Court Should Grant Defendant's Narrowly Tailored Request for Information from Case Files.**

Plaintiffs seek monetary relief for what they claim results from Defendants' alleged "conduct in promoting and facilitating opioid use," including costs "associated with… placing thousands of children in foster care placements." Motion at 3 (quoting TAC ¶ 19). *See also id*. ¶ 1193 ("The opioid crisis has created a strain on the foster care system which serves Plaintiffs' Community's [*sic*], as it is now 'stretched dangerously thin.'"); *id*. ¶ 1506 (alleging that Plaintiffs suffered damages by incurring "[c]osts associated with providing care for children whose parents suffer from opioid-related disability or incapacitation that Plaintiffs suffered injuries").

Because Plaintiffs have put the causes and costs of foster care and removal proceedings at issue, Defendant is entitled to information regarding, among other things, the extent of services provided, the factors that led to the need for such services, and the basis for the supposed costs. *Human Res.*, No. 15-0863, 2016 WL 2970887, at *1 n.2 (W. Va. Ct. App. May 20, 2016). However, BCF has indicated that information regarding the number of foster removals involving opioids is not available in summary form and is determinable only by review of case files.

BCF does not assert that this information is irrelevant but instead claims that producing the responsive documents "would entail millions of pages of documents and several thousand man hours to complete." Opp. at 3. When a non-party claims that a subpoena is burdensome and oppressive, the non-party must support its claim by showing, for example by affidavits, specifically how production would be burdensome. *In re: Monitronics Int'l, Inc.*, No. MDL 1:13-MD-2493, 2014 WL 12623046, at *4 (N.D.W. Va. June 19, 2014) (finding that non-party objecting to subpoena as burdensome "did not support its objection or motion with any showing, such as through affidavits, which sets out in detail the expenses which would be involved, as it was required to do"); *Vaughan Furniture Co. Inc. v. Featureline Mfg., Inc.*, 156 F.R.D. 123, 125 (M.D.N.C. 1994) (holding that when a non-party claims that a subpoena is burdensome and oppressive, the non-party must support its claim by showing how production would be burdensome). BCF has not explained how it arrived at the conclusion that the requested case files would cover "millions" of pages and that producing them would take "thousands of man hours." Moreover, BCF waived any burden objection by failing to timely serve written objections to the Subpoena. *See* Motion at 4 (citing *Hanwha Azdel, Inc. v. C & D Zodiac, Inc.*, No. 6:12-CV-00023, 2013 WL 3660562, at *1 (W.D. Va. July 11, 2013) (holding that third party waived objections to subpoena by failing to timely serve them in writing and despite having obtained an extension of time to serve responses)). For these reasons, BCF should be ordered to produce case files in their entirety, per Request No. 8.

If the Court is not inclined to order the production of the case files in their entirety, Defendant has expressed to BCF that it will narrow its request for FACTS data in order to reduce any alleged burden on BCF. Defendant requests that, in the alternative to BCF producing the entire redacted case file, BCF be ordered to produce only the following subset of key documents from

the files at issue: 1) intake forms or removal reports that reflect the reason for the juvenile or child's removal and what drugs, if any, were the cause for removal; and 2) information reflecting whether a parent of the subject child or juvenile had a history of drug use that attributed to the removal.[5]

Defendant's request is narrowly tailored and seeks relevant, important information that BCF should be required to produce, particularly given the nature of Plaintiffs' allegations in this case and their request for reimbursement of alleged future, abatement damages.

## CONCLUSION

For the reasons set forth above, the Court should grant Defendant's Motion to Compel Discovery Responses from the Bureau for Children and Families and enter the proposed order being filed contemporaneously herewith.

Dated:  June 10, 2020

Respectfully submitted,

***AmerisourceBergen Drug Corporation***
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100

---

[5] Furthermore, if necessary, Defendant is willing to explore alternative solutions with BCF to produce the above-referenced information from all case files on the FACTS system from 2017 to present, and a random sampling from prior years.

Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on this 10th day of June, 2020, the foregoing was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)