# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON, <br><br> Plaintiff, <br><br> v. <br><br> AMERISOURCEBERGEN DRUG CORPORATION, et al., <br><br> Defendants. | Civil Action No. 3:17-01362 <br><br> Hon. David A. Faber |
| CABELL COUNTY COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> AMERISOURCEBERGEN DRUG CORPORATION, et al., <br><br> Defendants. | Civil Action No. 3:17-01665 <br><br> Hon. David A. Faber |

## DEA'S REPLY OBJECTION TO SPECIAL MASTER'S DISCOVERY RULING NO. 5

In their response to the U.S. Drug Enforcement Administration's (DEA) Objection to the Special Master's Discovery Ruling No. 5 (ECF No. 524) (Defendants' Response), Defendants obfuscate and misapply clear and controlling Fourth Circuit law, and misleadingly seek to create a narrative out of whole cloth that they have been treated inequitably by the Government. Instead, the Department of Justice (DOJ) acted in accordance with governing Fourth Circuit law, which the Special Master misapprehended in Discovery Ruling No. 5 (ECF No. 474) (D.R. No. 5) and which now requires Court intervention to correct as made clear in DEA's Objection to D.R. No. 5 (ECF No. 502) (DEA Objection).

The Court's analysis must begin with *COMSAT Corp. v. National Science Foundation*, 190 F.3d 269, 274 (4th Cir. 1999), which controls the resolution of this dispute. The question is a limited one: whether DOJ acted arbitrarily and capriciously in issuing its *Touhy* decision in response to Defendants' subpoena served on DEA. *See* DEA Objection, Exh. C. None of Defendants' arguments provide a basis for this Court to ignore binding Fourth Circuit precedent set forth in *COMSAT* and other cases governing third party discovery from the United States. Likewise, the cases Defendants cite purporting to show that DOJ's *Touhy* decision runs afoul of the deferential standard required under *COMSAT* do not stand for the propositions Defendants assert. Instead, Defendants cherry-pick quotes devoid of important context and rely on cases where federal agencies summarily denied subpoenas without reasoning that are a far cry from the facts in this case. Here, the DEA has dedicated in excess of 5,000 hours to complying with discovery requests, produced more than 27,000 pages of documents, and provided dozens of hours of deposition testimony from current and former employees in response to prior discovery requests from these defendants and others in the MDL.

The Fourth Circuit has made clear that the only question for the Special Master, and now for this Court, to resolve is whether the Department of Justice (DOJ) applied its regulations governing the disclosure of agency documents to litigants in federal and state court (known as *Touhy* regulations) in an arbitrary and capricious manner.[1] *See COMSAT Corp.*, 190 F.3d at 274. The Special Master, however, did not address this question. Instead, the Special Master overlooked circuit precedent and applied the wrong legal standard—rejecting DOJ's

---

[1] Because Defendants sought documents from DEA, a law enforcement agency within DOJ, the Defendants' request was evaluated pursuant to DOJ regulations governing the disclosure of information to private litigants. *See* 28 C.F.R. § 16.21, *et seq.* Accordingly, this memorandum refers to DOJ when discussing the agency's evaluation and denial of Defendants' request.

2

determination because, in his view, defendants' requests "d[id] not appear to be unduly burdensome." D.R. No. 5 at 4. But neither the Special Master nor this Court is charged with conducting a *de novo* review of the burden imposed on DEA by Defendants' requests. To the contrary, this Court's review is limited to whether *DOJ's analysis* was based on inappropriate factors or otherwise untethered from the facts and circumstances before the agency. It was not, and the Court's analysis should end there.[2] DOJ issued a thorough and well-reasoned *Touhy* denial to Defendants rooted in agency policy and regulations, *see* DEA Objection, Exh. C, and Defendants' have failed to establish that DOJ's decision was arbitrary or capricious. Moreover, DOJ supported its reasoning with a detailed declaration from a senior DEA official. Yet the Special Master's ruling gives no indication that he even considered (1) the record before the agency when it made its decision, or (2) the thorough and rational analysis undertaken by the agency in reaching it conclusion. *See* DEA Objection at 3-5, 11-20, Exh. C. Accordingly, the Court should reject D.R. No. 5, and deny Defendants' motion to compel.

    **I.**    **The Court Must Apply the Appropriate Standard of Review in Accordance with the Administrative Procedure Act (APA), and Conclude DOJ Did Not Act Arbitrarily and Capriciously.**

As established in DEA's Objection, the Special Master misapplied the controlling law by assessing Defendants' motion to compel under Rule 45 of the Federal Rules of Civil Procedure and not under the APA's arbitrary and capricious standard. When the Court applies the appropriate standard, it becomes clear that DOJ's *Touhy* letter is consistent with controlling authority and is not arbitrary or capricious.

---

[2] This Court reviews *de novo* all conclusions of law and findings fact made by the Special Master. (Order of Appointment at 5, ECF No. 200 (citing Fed. R. Civ. P. 53(f)(4) and (5)).)

### A. Defendants Wrongly Argue That the Court Need Not Determine *Any* Standard of Review.

At the outset, Defendants incorrectly assert that the Court need not consider the standard of review for assessing the motion before it. In doing so, Defendants rely on two out-of-circuit district court cases that, upon a cursory reading, actually favor DEA's Objection to the Special Master's ruling. *See* Defendants' Response at 5. Defendants rely on a quote without context from *Fischer v. Cirrus Design Corp*., 2005 WL 3159658 (N.D.N.Y. Nov. 23, 2005) for the proposition that the Court need not concern itself with the standard of review. But Defendants fail to mention that the court in *Fischer* went on to assess the agency's actions under the APA's "deferential" arbitrary and capricious standard of review, as Fourth Circuit law requires. *Fischer*, 2005 WL 3159658, at *8.

Similarly, Defendants selectively read *In re Vioxx Products Liability Litig.*, 235 F.R.D. 334 (E.D. La. 2006). Far from ignoring the applicable standard of review, the *Vioxx* court made explicit that it "must now determine which standard of review applies and then determine if the standard has been satisfied." *Id.* at 343. Unlike in D.R. No. 5, the *Vioxx* court applied the APA standard of review, as well as Rule 45, in rejecting the agency's denial of a deposition of a key agency employee. *Id.* at 343-45. Thus, as discussed further below, *In re Vioxx* supports DEA's Objection and denial of Defendants' motion.

### B. *COMSAT* Governs This Dispute.

In *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269 (4th Cir. 1999), the Fourth Circuit made clear that third-party subpoenas served on the government, its agencies, and its officials fall within the protection of sovereign immunity, and that the only means of reviewing an agency's response to such a subpoena is through the APA. *See* 190 F.3d at 277; *see also Kasi v. Angelone*, 300 F.3d 487, 506 (4th Cir. 2002) (the proper method for judicial review of an

agency's final decision regarding a third-party subpoena is through the APA); *United States v. Williams*, 170 F.3d 431, 434 (4th Cir. 1999) ("The proper method for judicial review of the agency's final decision pursuant to its regulations is through the [APA]."). "The APA waives sovereign immunity and permits a federal court to order a non-party agency to comply with a subpoena if the government has refused production in an arbitrary, capricious, or otherwise unlawful manner." *COMSAT*, 190 F.3d at 277; *Williams*, 170 F.3d at 434.

Though *COMSAT* deals with an order to compel discovery in an arbitration, district courts throughout the Fourth Circuit have applied *COMSAT* to civil litigation in federal courts where a discovery dispute arises concerning a federal agency as a third party. *See Barreto v. SGT, Inc.*, 2019 WL 3253373 (D. Md. July 19, 2019); *In re Subpoena to Nat'l Sci. Found., Office of Inspector Gen.*, 2018 WL 5017612 (E.D. Va. Oct. 16, 2018); *Lamb v. Wallace*, 2018 WL 847242 (E.D.N.C. Feb. 13, 2018); *Andreas-Myers v. Nat'l Aeronautics & Space Admin.*, 2017 WL 1632410 (D. Md. Apr. 28, 2017); *Sauer Inc. v. Lexington Ins. Agency, Inc.*, 2014 WL 5580954 (E.D.N.C. Oct. 31, 2014); *Clay v. Consol Pa. Coal Co.*, LLC, 2013 WL 12373597 (N.D.W. Va. Oct. 17, 2013); *Bruno v. Nationwide Mut. Fire Ins. Co.*, 2009 WL 10681974 (D. Md. Oct. 26, 2009); *Hoover v. Trent*, 2009 WL 10676534, at *3 (N.D. W.Va. June 3, 2009) ("While *COMSAT* involved an arbitration proceeding, its principles are equally applicable to a federal civil action wherein a party seeks to obtain information from a non-party government agency through the subpoena process."); *Spence*, 530 F. Supp. 2d 739; *Bavarian Nordic A/S v. Acambis Inc.*, 2007 WL 9782602 (D. Md. Jan. 19, 2007); *see also RLI Ins. Co. v. Nexus Servs., Inc.*, 2020 WL 1496466, at *3 (W.D. Va. Jan. 17, 2020) ("[T]he court finds that DHS's denial was reasonable because it was made in accordance with DHS's *Touhy* regulations, considered the request properly, does not run counter to the evidence, and was not implausible. DHS's

letters make clear that the agency considered the required factors and found that the factors weighed in favor of denying Nexus' request.").

At least one case cited by the Defendants, *In re Subpoena to Nat'l Sci. Found.*, 2018 WL 5017612 (E.D. Va. Oct. 16, 2018), likewise held that the principles stated in *COMSAT* apply to third-party subpoenas issued by federal courts in which the agency is not a party:

> The movants attempt to distinguish *COMSAT* by arguing that an arbitration panel, not a federal court, issued the subpoena in that case. *See id*. at 275-76. *But district courts throughout the Fourth Circuit have applied COMSAT when a non-party federal agency refuses to comply with a federal court-issued subpoena.* For example, a court within this district reviewed the U.S. Attorney's refusal to comply with a federal subpoena under *COMSAT*. *See Saslaw v. Matricardi*, No. 3:04-cv-185, at 3 (E.D. Va. Oct. 12, 2004) ("[T]he Court's review of the U.S. Attorney's decision not to comply with Plaintiffs' subpoena must be reviewed under an arbitrary and capricious or abuse of discretion standard."); *see also Sauer Inc. v. Lexington Ins. Agency, Inc.*, No. 5:13-CV-180-F, 2014 WL 5580954, at *4-6 (M.D.N.C. Oct. 31, 2014) ("[T]he Army Corps acted reasonably and in accordance with its own regulations in denying Defendant's deposition subpoena."); *Spence v. NCI Info. Sys., Inc.*, 530 F. Supp. 2d 739, 746 (D. Md. 2008) ("[T]he Air Force has complied with the strictures of the APA in refusing to produce its officials for depositions."). *The Court declines to depart from the weight of authority in the Fourth Circuit, and thus holds that COMSAT provides the appropriate standard of review in this case.*

*Id.* at *2 (footnote omitted and emphasis added). Thus, the Defendants' attempt to distinguish *COMSAT* is without merit.

It is clear from reviewing the Special Master's decision that he not only failed to apply the proper standard under the APA, but he also did not even consider or address that standard at all in his decision. Moreover, the standard he did apply—*de novo* review under Rule 45—has been squarely rejected as the appropriate standard of review by the Fourth Circuit. *See COMSAT*, 190 F.3d at 278 ("The [district] court . . . erred when it reviewed [the agency's] actions under the standards of Federal Rule of Civil Procedure 45, rather than the standard established by the APA."); *see also Bellamy v. Butler*, 2015 WL 917762, at *3 (S.D.W.Va.

6

March 3, 2015) ("the court is bound to follow the precedent established by the United States Court of Appeals for the Fourth Circuit and the United States Supreme Court.") (Faber, J.). Thus, the Special Master erred by failing to follow the applicable standard of review established by the Fourth Circuit.

### C. DOJ's *Touhy* Decision Complies with the Applicable Law.

When DOJ's *Touhy* decision is evaluated against the proper standard of review—whether that decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law"—it is clear that the Special Master ruling was erroneous and Defendants' motion should be denied. *See COMSAT*, 190 F.3d at 274. Under the proper standard, an agency's denial of a *Touhy* request must be upheld if it is reasonable and in accordance with the agency's regulations. *Spence*, 530 F. Supp. 2d at 745; *see also COMSAT*, 190 F.3d at 277 (a "court[] may reverse an agency's decision not to comply only when the agency has acted unreasonably."); *Andreas-Myers*, 2017 WL 1632410, at *4 (holding that APA requires only "a rational connection between the facts found and the choice made") (quoting *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council*, 462 U.S. 87, 105 (1983)). As made clear in DEA's Response to Defendants' Motion to Compel (ECF No. 378) and in DEA's Objection, DOJ acted reasonably in evaluating and denying Defendants' requests pursuant to its *Touhy* regulations.[3]

---

[3] Defendants also mistakenly rely on Justice Manual Section 1-6.400 in an attempt to undermine DOJ's *Touhy* process. *See* Defendants' Response at 4. This is yet another example of Defendants quoting materials selectively and out of context. Section 1-6.400 addresses the circumstances under which the Deputy Attorney General or Associate Attorney General may be requested to deny the disclosure of requested materials following a court order requiring their disclosure. Accordingly, this section simply has no applicability to the instant matter. Notably, Defendants omit any reference to Section 1-6.220, which states that where "the party issuing the demand has followed the *Touhy* procedures but is unwilling to limit the appropriate scope of the testimony through negotiation," the United States Attorney or his/her designated assistant should

### 1. DOJ Appropriately Considered the Burden Required to Respond to Defendants' Expansive Subpoena Requests.

One of the overriding factors in DEA's assessment of Defendants' overbroad discovery request is the substantial burden it would impose on the agency. *See* DEA Objection at 11-20. This burden is, in large part, a direct result of Defendants' broadly drafted requests.

Here, Defendants' discovery requests seek "all documents" relating to certain subjects and are, on their face, improperly broad, unduly burdensome, and not focused. Such an approach is disfavored precisely because of the burdens imposed on recipients. *See* Manual for Complex Litigation (4th ed.) at 75. Courts too have reached the same conclusion. Requests for production using "all documents" are inherently overly broad and should be forbidden as failing to "state discovery requests with 'reasonable particularity.'" *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649-650 (10th Cir. 2008) (quoting Fed. R. Civ. P. 34(b)(1)(A)). This is part of the context through which DOJ assessed Defendants' discovery requests.[4]

As Defendants first limited its discovery requests only when they brought their motion to compel, all 36 of Defendants' requests, encompassing 24 years of DEA operations, were before DOJ when it had to weigh the burden imposed by Defendants' expansive subpoena. *See* DEA Objection, Exh. B at 18-21, Exh. C. In evaluating Defendants' expansive requests, DOJ properly considered the substantial burden compliance would impose on the agency, which was already considerably burdened in responding to discovery requests from the parties in the MDL itself. Though the *Touhy* letter alone would have sufficed under *COMSAT* to warrant denial of

---

take appropriate steps "*including simply declining to authorize the disclosure, objecting to the demand, or moving to quash any subpoena accompanying the demand.*"

[4] Even if it had been appropriate for the Special Master to independently assess the discovery requests—which it was not—the Special Master erred in concluding that the discovery requests were not overly broad. It is clear that these requests are all overly broad as a matter of law, and the Defendants' motion to compel these requests should be denied for that additional reason.

Defendants' motion, DEA supplemented the record before the Special Master with a declaration addressing the agency's burden concerns.

DEA proffered a declaration from Heather Wehrle, DEA Acting Diversion Group Supervisor in DEA's Charleston, West Virginia office, detailing the significant burden imposed on the agency by Defendants requests. *See* DEA Response to Defendants' Motion to Compel, Exh. E; DEA Objection, Exh. D.  Ms. Wehrle explained that "Defendants' priority requests collectively seek documents concerning virtually every report, investigation, communication, and action by DEA relating to opioids in West Virginia from 1996 to present, a 24-year period." *Id.* ¶ 8.  Request No. 3 alone implicates "almost every effort [by DEA] to combat the diversion or misuse of prescription opioids in West Virginia," and would require DEA to search for responsive documents across multiple locations, "including in hard-copy offsite storage and archives, in multiple DEA databases, electronic files, and emails associated with the approximately 95 current and former DEA employees in West Virginia." *Id.* ¶ 13–14.  This is merely a fraction of the burden associated with Defendants' discovery requests, which was seemingly ignored by the Special Master.

Defendants rely on *Lamb v. Wallace* to argue that the agency's claim of burden cannot pass muster under the APA.  *See* Defendant's Response at 7.  However, the facts in *Lamb v. Wallace* are wholly distinguishable.  In *Lamb*, DOJ issued a *Touhy* denial for documents limited to one specific informant whose identity had long earlier become publicly known, and where the veracity of that specific informant was a core issue in the litigation where plaintiffs alleged "a constitutional violation of great magnitude" by law enforcement.  *Lamb v. Wallace*, 2018 WL 847242, at *6 (E.D.N.C. Feb. 13, 2018).  The *Lamb* court described this request as "narrowly tailored and not particularly burdensome" and "not an open-ended fishing expedition."  *Id.*  In

9

short, the question of burden in *Lamb* was starkly different than the burden in this case imposed by Defendants' 36 requests across a 24-year time period.

Likewise, Defendants' statement that DEA "articulates no reason—much less a 'rationale'" to justify its denial of Defendants' overbroad subpoena requests is fanciful. Defendants Response at 9. DOJ's 10-page *Touhy* letter sets forth and diligently applies the applicable factors, and speaks for itself. *See* DEA Objection, Exh. C. This is precisely the kind of thorough and thoughtful process envisioned by the courts when affording deference to agencies pursuant to *COMSAT* and the APA.

### 2. DOJ Appropriately Considered the Cumulative Burden Imposed on the Agency By This and Similar Requests.

In assessing burden, DOJ can consider the cumulative burden in making *Touhy* determinations. Defendants' argument to the contrary is without merit, and relies on a misreading of applicable authority.

A government agency can, and as a practical matter must, consider the cumulative effect of past and future requests in related litigation in order to conserve finite resources. *See COMSAT*, 190 F.3d at 278; *Spence v. NCI Info Sys., Inc.*, 530 F. Supp.2d 739, 745-46 (D. Md. 2008) ("[W]e reject the argument that [the agency] was required to limit its inquiry to whether Spence's particular request was unduly burdensome. As the case law makes clear, the [agency] was entitled to consider the cumulative effect of granting similar requests."). Even where the responsive documents in a government agency's possession was "a little over 1,000 copies" and the agency would not suffer "any undue burden," courts have upheld an agency denial based on the "cumulative burden of providing such information in other cases as mentioned in *COMSAT*." *Hoover*, 2009 WL 10676534 at *4.

As it is unlikely that this matter is the last set of cases to be referred by the MDL Court for trial, DOJ properly considered how post-transfer discovery would burden DEA in these and other cases. Though DEA has gone to considerable effort to produce documents and agency witnesses for testimony as a third party in the MDL, its resources are finite. Time and attention dedicated to complying with each and every discovery request served by Defendants is less time and attention it can pay to the myriad other matters within DEA's areas of responsibility. This triaging is a necessary fact of government management, and one rightly recognized by the courts as an appropriate basis in evaluating *Touhy* requests. *See Spence*, 530 F. Supp.2d at 745 ("The Fourth Circuit has recognized on multiple occasions that federal agencies have a compelling interest in "conserv[ing] governmental resources where the United States is not a party to a suit . . .") (quoting *Boron Oil Co. v. Downie*, 873 F.2d 67, 70 (4th Cir. 1989)).

Defendants' reliance on *In re Vioxx Products Liability Litig.*, 235 F.R.D. 334 (E.D. La. 2006) for their argument that DOJ improperly considered cumulative burden in its *Touhy* analysis is misplaced. The necessary context for the isolated quotation plucked by Defendants is that the *Vioxx* court was the MDL court itself, and it acknowledged its own ability to prospectively address cumulative burdens on the agency. Notably, it reassured the agency that it "need not go sleepless fearing endless depositions. This ruling is not a blank check . . . ." *Id.* at 345. Because DEA does not have the same assurance here, Defendants' reliance on *Vioxx* is misplaced.

The *Vioxx* court also found that the agency's actions "failed to consider important aspects of this particular problem, offered an explanation that runs counter to the evidence before the agency, and is so implausible that it cannot be ascribed to a difference in view or the product of agency action." *Id.* at 346. That is hardly the case here, where DOJ issued a well-reasoned,

detailed, and thoughtful *Touhy* response that weighed the appropriate factors. The contrast of DEA's performance in this MDL and the agency in the *Vioxx MDL*, the comparative weighing of agency burdens, breadth and vagueness of the discovery requests at issue, and agencies' roles as third parties in the respective litigation could not be clearer.

### 3. DOJ Appropriately Considered the Burden Law-Enforcement Sensitive Documents Present to DEA.

Far from asserting a "blanket" law enforcement privilege as Defendants suggest, *see* Defendants' Response at 13, DOJ fairly assessed the additional burden that is imposed on an agency where a substantial portion of documents are law-enforcement sensitive. Simply put: DOJ never made an assertion of a blanket law enforcement privilege, despite Defendants' protests to the contrary.

The burden outlined above is merely associated with the first-level review of responsive documents. Given that DEA is primarily a law enforcement agency, an additional review to identify, analyze with appropriate agency personnel, segregate, and log law enforcement sensitive and otherwise privileged documents would impact almost all responsive documents and add an additional considerable burden on top of an already burdensome task. DOJ considered this, too, as part of the *Touhy* process, as authorized by law.

## II. "Attorneys Eyes Only" Production is Inappropriate Here.

Defendants also improperly conflate two wholly distinct sets of documents: those within DEA's possession, and those in the possession of a High Intensity Drug Trafficking Area (HIDTA). In the case of the latter, DEA negotiated an agreement with those HIDTAs—which are not federal agencies, but which possess sensitive federal law enforcement materials—to produce potentially sensitive documents outside of DEA's possession through an Attorneys Eyes Only (AEO) designation. Here, DEA possesses the potentially sensitive documents at issue.

As outlined in the Objection, DEA has agreed to AEO treatment for documents possessed by others in certain opioid-related litigation in which DEA had certain equity interests to protect those documents' sensitivity. Here, the governing *Touhy* regulations prohibit disclosure of information in DEA's possession if it would reveal law enforcement sensitive information. *See* 28 C.F.R. § 16.26(b)(5). An AEO designation does not provide sufficient protection nor do the applicable regulations provide for an AEO workaround for the production of law enforcement sensitive documents where DEA is a non-party recipient of discovery requests in civil litigation. To the extent that AEO treatment is otherwise available under MDL protective orders, such treatment is intended to principally protect sensitive business documents. *See, e.g.,* MDL Order Amending Case Management Order No. 2 (MDL ECF No. 1357); MDL Case Management Order No. 2 (MDL ECF No. 441) at ¶ 11.

Nor would AEO designation necessarily alleviate DEA's burden to a great extent. The agency would still have to collect potentially responsive documents, review, and segregate those sensitive documents. As outlined in the Wehrle Declaration, that alone is a substantial undertaking and driven in large part by the breadth and scope of Defendants' requests. *See* DEA Objection, Exh. D. DEA considered this, and other applicable *Touhy* factors in making its determination, which is entitled to substantial deference.

### III. Defendants Have Been Treated Equitably.

Defendants also seek to spin a narrative that they have been disparately treated by the Government as compared to Plaintiffs. To the contrary—DOJ has consistently dealt with Plaintiffs and Defendants alike, and acted in accordance with governing law. DOJ has subjected both parties' respective requests to the *Touhy* process (and both are now the subject of motions to

compel), and issued well-reasoned *Touhy* decisions to both Plaintiffs and Defendants after weighing the applicable considerations.

Any difference in outcomes between Defendants and Plaintiffs concerning their subpoenas to DEA are rooted in differences in the subpoenas themselves. First, the two subpoenas have different scopes and thus impose different burdens. Second, Defendants waited for three months to issue their CT2 subpoena after Plaintiffs issued theirs—and waited until after the MDL court remanded the cases to this Court in a trial-ready posture.[5]

Defendants' argument also falls flat given that the overwhelming majority of documents produced by DEA to date were provided in response to Defendants' *Touhy* request in the MDL. DEA provided tens of thousands of pages of documents and dozens of hours of deposition testimony in the MDL in response to an expansive *Touhy* request from Defendants' that sought 37 broad categories of documents, as well as testimony on 24 topics pursuant to Federal Rule of Civil Procedure 30(b)(6) and fact testimony from 13 current and former DEA employees.[6] In addition, DEA produced nationwide data and Suspicious Order Reports (SORs) for specified

---

[5] DOJ met and conferred with Defendants in good faith in an attempt to resolve these discovery disputes. Defendants failed to meaningfully limit their document requests, other than to prioritize certain requests. It was only when Defendants brought their motion that they sought to compel a subset of the requests contained in their subpoena to DEA. Defendants' supposed good act of "reduc[ing] their requests by 50 percent" rings hollow. Defendants' Response at 1. While seeking to compel production for only some of their requests, Defendants still have refused to "withdraw their non-priority requests or request for testimony." Mem. in Supp. of Defs.' Mot. to Compel Disc. Resps. from DEA, ECF No. 321 at 2. Also, merely reducing the number of document requests by 50 percent does not necessarily result in a reduction in DEA's burden of responding to a subpoena by 50 percent, which Defendants seem to assert. Finally, during these discussions, Defendants refused to clarify many of their requests, identify possible custodians, or offer search terms that would allow DEA to begin collection.

[6] By contrast, the Plaintiffs' requests to the DEA in the MDL has been far more limited.

14

drugs for the years 2006 to 2014, which contained hundreds of millions of records and included data for West Virginia, Cabell County, and the City of Huntington. DEA also produced hard-copy field SORs for certain states and searched for field SORs for other states, including West Virginia. DEA produced almost all of this discovery in response to Defendants' discovery requests in the MDL. Thus, Defendants' argument that the DEA is attempting to shield itself from discovery—in light of the foregoing—is untenable. *See* Defendants' Response at 8-9.

In short, Defendants have been treated equitably by the DEA. Yet, as their motion to compel makes clear, Defendants continue to seek more and more from the government regardless of the burden they impose and regardless of the voluminous discovery they have already received—and will continue to do so unless the Court intervenes.

## IV.    Conclusion

For the foregoing reasons, DEA respectfully requests that this Court deny Defendants' motion to compel.

Respectfully submitted,

MICHAEL D. GRANSTON
Deputy Assistant Attorney General

MICHAEL B. STUART
United States Attorney
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

By: /s/Fred B. Westfall, Jr.
FRED B. WESTFALL, JR.
(W.Va. State Bar No. 3992)
Assistant U.S. Attorney, Civil Chief
300 Virginia Street East, Room 4000
Charleston, WV 25301
(304) 345-2200
(304) 347-5443 (facsimile)
Fred.Westfall@usdoj.gov

JAMIE ANN YAVELBERG
NATALIE A. WAITES
JONATHAN K. HOERNER
J. ANDREW JACO
KELLY E. PHIPPS
DAVID M. SOBOTKIN
United States Department of Justice
Civil Division/Fraud Section
175 N Street, N.E., Room 10.222
Washington, D.C. 20002
(202) 616-2964
Natalie.A.Waites@usdoj.gov

Attorneys for U.S. Department of Justice
Drug Enforcement Administration

## **CERTIFICATE OF SERVICE**

I, Fred B. Westfall, Jr., Assistant United States Attorney, hereby certify that that on June 12, 2020, the foregoing DEA'S REPLY OBJECTION TO SPECIAL MASTER'S DISCOVERY RULING NO. 5 with the Court using the Court's CM/ECF system, which will send a copy thereof by email to all counsel of record.

/s/Fred B. Westfall, Jr.
Fred B. Westfall, Jr. (W.Va. State Bar No. 3992)
Assistant U.S. Attorney, Civil Chief
300 Virginia Street East, Room 4000
Charleston, WV 25301
(304) 345-2200
(304) 347-5443 (facsimile)
E-mail:  fred.westfall@usdoj.gov