## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>         Plaintiff,<br><br>     v.<br><br>AMERISOURCEBERGEN DRUG<br>CORPORATION, et al.,<br><br>         Defendants. | Civil Action No. 3:17-01362<br><br>Hon. David A. Faber |
| CABELL COUNTY COMMISSION,<br><br>         Plaintiff,<br><br>     v.<br><br>AMERISOURCEBERGEN DRUG<br>CORPORATION, et al.,<br><br>         Defendants. | Civil Action No. 3:17-01665<br><br>Hon. David A. Faber |

## DEA'S OBJECTION TO SPECIAL MASTER'S
## DISCOVERY RULING NO. 6

The Drug Enforcement Administration (DEA) objects to the Special Master's Discovery

Ruling No. 6 (hereafter "D.R. No. 6") for largely the same reasons it objected to Discovery

Ruling No. 5.  Both rulings adopted and applied—without explanation or citation—the incorrect

legal standard.  As the Fourth Circuit has made clear, a motion to compel a non-party federal

agency's response to a subpoena is governed by the Administrative Procedure Act (APA), and

judicial review is limited to whether the agency acted in an arbitrary and capricious manner.  *See*

*COMSAT Corp. v. National Science Foundation*, 190 F.3d 269, 274 (4th Cir. 1999).  Rather than

analyze the agency's denial of Plaintiffs' requests under this standard, however, the Special

Master instead engaged in a de novo review of the requests under Federal Rule of Civil Procedure 45. This error undercuts the entirety of D.R. No. 6.

DOJ evaluated Plaintiffs' requests pursuant to its regulations governing the disclosure of agency documents to litigants in federal and state court (known as *Touhy* regulations).[1] *Touhy* regulations provide for centralized decisionmaking for a reason, and the requests at issue here underscore the importance of this centralized process. DOJ did not evaluate Plaintiffs' requests in isolation. Instead, it evaluated them in light of the multitude of document requests that DEA had already received—*including multiple prior requests from these Plaintiffs*—and will continue to receive from these and other parties involved in opioid-related litigation across the nation. DOJ rationally concluded—largely based on this critical context and the sensitive nature of much of the information sought—that Plaintiffs' requests should be denied. In reaching this conclusion, DOJ considered the factors expressly mandated by its governing *Touhy* regulations, and it applied these factors to the specific facts and circumstances confronting the agency. DOJ's application of its *Touhy* regulations is entitled to substantial deference and may be overturned only if this Court finds that DOJ's analysis and conclusion was arbitrary and capricious. It was not. Accordingly, DEA objects to D.R. No. 6 insofar as it compels production of documents responsive to Plaintiffs' Document Request Nos. 1 through 7, and asks this Court to deny Plaintiffs' motion in its entirety.[2]

---

[1]   Because Plaintiffs sought documents from DEA, a law enforcement agency within DOJ, Plaintiffs' request was evaluated pursuant to DOJ regulations governing the disclosure of information to private litigants. *See* 28 C.F.R. § 16.21 *et seq.* Accordingly, this memorandum refers to DOJ when discussing the agency's evaluation and denial of Plaintiffs' request.

[2]   This Court reviews de novo all conclusions of law and findings of fact made by the Special Master. (Order of Appointment at 5, ECF No. 200 (citing Fed. R. Civ. P. 53(f)(4) and (5)).)

**BACKGROUND**

D.R. No. 6 orders DEA to produce documents responsive to seven of the nine requests contained in the last of three *Touhy* requests submitted by Plaintiffs to DOJ.  In each of those requests, Plaintiffs acknowledged that DOJ *Touhy* regulations governed the agency's response.

Plaintiffs submitted their first *Touhy* request to DOJ on October 28, 2019, while these cases were still part of consolidated MDL proceedings in the Northern District of Ohio. Plaintiffs' initial *Touhy* letter contained seven broad requests for nationwide documents, as well as two much narrower requests for specific elements of DEA's investigative files concerning a pharmacy located in Cabell County (Request No. 1, concerning the search and seizure warrant executed on Safescript Pharmacy #6) and a pharmacist working in Cabell County (Request No. 2, concerning discovery arising out of the prosecution of Kofi Ohene Agyekum and A+ Pharmacy).  Both of Plaintiffs' original pharmacy related requests were narrow as compared to their more recent requests.  Request No. 1 was expressly limited to only those documents "***arising out of the search and seizure warrant*** executed on Safescript Pharmacy #6," and Request No. 2 was similarly limited to "***[a]ll discovery*** . . . ***arising out of the prosecution and conviction of Kofi Ohene Agyekum*** . . . arising out of his operation of A+ Pharmacy located in Cabell County (WV)."  Ex. A, October 28, 2019 *Touhy* Letter from Anne Kearse to James Bennett (emphases added).  Request No. 2 also identified a specific disc labeled "DISCOVERY" that Plaintiffs were seeking.  *Id.*

DOJ evaluated Plaintiffs' original requests pursuant to its *Touhy* regulations and authorized an initial, limited production of documents responsive to Request No. 1 and Request No. 6 (seeking communications to and/or from the National Retail Pharmacies related to the diversion of prescription opioids).  Ex. B, December 20, 2019 Letter from Ava Rotell Dustin to

3

Linda Singer.  DOJ also informed Plaintiffs that it was continuing to review additional documents that may be responsive to the remaining requests.  *Id.*

Following remand of the cases to this Court, Plaintiffs re-issued their prior *Touhy* letter to DEA on February 3, 2020, this time directing their request to the United States Attorney for the Southern District of West Virginia.  Ex. C, February 3, 2020 *Touhy* Letter from Anne Kearse to Michael B. Stuart.  DOJ authorized DEA to continue to search for and produce documents responsive to this request.  In other words, the agency simply continued the efforts it had begun three months prior as part of the coordinated pretrial proceedings in the MDL court.  DOJ again authorized DEA to make a limited production of documents, including documents responsive to Plaintiffs' Request No. 2 and Request Nos. 5 through 9.  Ex. D, February 21, 2020 Letter from Michael B. Stuart to Linda Singer.  DOJ again indicated that it was continuing to review additional documents potentially responsive to Plaintiffs' request.  *Id.*  Plaintiffs did not challenge the adequacy of any of these productions or the reasonableness of DOJ's responses to their first two *Touhy* requests.

Then, on March 19, 2020, after DOJ and DEA had expended significant time and resources responding to Plaintiffs' original nine requests that originated in the MDL court five months prior, Plaintiffs submitted a new *Touhy* letter to DOJ that contained nine additional requests for documents.  Ex. E, March 19, 2020 Letter from Linda Singer to Michael B. Stuart.  Plaintiffs' most recent set of requests revised and expanded on certain of their prior requests.  Plaintiffs, apparently dissatisfied with the results yielded by their original Request Nos. 1 and 2, redrafted these requests to encompass "*all documents*"[3] relating to the named pharmacies,

---

[3]   The use of "all documents" makes these discovery requests overly broad on their face.  *See* Manual for Complex Litigation (4th ed.) at p. 75 ("In overseeing document production, the court should . . . prevent indiscriminate, overly broad, or unduly burdensome demands—in general,

"including, but not limited to, all documents relating to or reflecting the purchase, sale, distribution or dispensing of opioids *or other controlled substances*."  Compare Exs. A and C, Request Nos. 1 and 2, with Ex. E, Request Nos. 1 and 2 (emphasis added).  In addition to expanding their prior requests involving specific pharmacies in Cabell County, Plaintiffs also added overly expansive requests for "all documents" relating to eight additional pharmacies and "all documents" relating to two national retail pharmacies' operations in West Virginia over a 24-year period.

The Special Master concluded that Plaintiffs' requests related to the two national retail pharmacies were so patently overbroad that they could not withstand scrutiny even under his de novo review pursuant to Rule 45.  But rather than evaluate *DOJ's analysis* of the remaining requests *based on the record before the agency*—the appropriate approach under the APA—the Special Master attempted to circumscribe the remaining overly broad (and cumulative) requests until, *in his view*, they satisfied the bare minimum requirements under the Federal Rules of Civil Procedure for discovery sought from third parties.  As explained below, this was error.  The question for the Special Master—and now for this Court—is whether DOJ reached a rational result when applying its *Touhy* regulations to the requests as they were submitted to the agency. The Special Master's decision to strike certain requests and revise others strongly suggests that DOJ's decision was in fact eminently reasonable, and therefore should have been upheld under the APA.

---

forbid sweeping requests, such as those for 'all documents relating or referring to' an issue, party, or claim . . . ."); *see also Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649–650 (10th Cir. 2008) (same); *Henry v. Morgan's Hotel Group, Inc.*, 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016) (same); *Great American Insurance Co. v. Veteran's Support Organization*, 166 F. Supp. 3d 1303, 1310 (S.D. Fla. 2015) (same).

**DISCUSSION**

I.     **DOJ's Denial of Plaintiffs' Requests Is Subject to Limited Judicial Review Under the APA.**

As the Fourth Circuit has made clear: any challenge to DOJ's application of its *Touhy* regulations, including one framed as a motion to compel, may only be brought pursuant to the APA's express waiver of sovereign immunity and must be evaluated under the APA's arbitrary and capricious standard of review.  *COMSAT*, 190 F.3d at 274 (explaining that "[w]hen the government is not a party, the APA provides the sole avenue for review of an agency's refusal to permit its employees to comply with subpoenas," and therefore "[a] reviewing court may set aside a final agency action when the action is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law").  The Special Master ignored this clear and well-settled law, however.  The Special Master instead, and without explanation, dismissed the APA and proceeded as if the case were governed by the burden balancing analysis of Federal Rule of Civil Procedure 45.  This cannot be reconciled with the Fourth Circuit's holding in *COMSAT*, which expressly rejected this approach.  *Id.* (rejecting argument that "non-party federal agencies must produce evidence in response to the subpoenas of private litigants, subject only to the court's discretionary right to limit burdensome discovery under Rules 26 and 45 of the Federal Rules of Civil Procedure").[4]  As the Fourth Circuit made abundantly clear in *COMSAT*:  "The [district] court . . . erred when it reviewed [the agency's] actions under the standards of Federal Rule of Civil Procedure 45, rather than the standard established by the APA."  190 F.3d at 278.

---

[4]     Rule 45, like all of the Federal Rules of Civil Procedure, cannot be used to waive the sovereign immunity of the United States or to "modify, abridge or enlarge the substantive rights of litigants or affect the jurisdiction of federal courts."  *See United States v. Sherwood,* 312 U.S. 584, 589–90 (1941).

Moreover, and contrary to Plaintiffs' assertions, the APA standard of review governs whether a case originates in state court or federal court. The Fourth Circuit has never suggested that *COMSAT's* holding does not apply with equal force to actions that originate in federal court. This is because *COMSAT's* holding is derived from the doctrine of sovereign immunity, and the federal government is protected by sovereign immunity in federal court and state court alike. The United States may not simply be sued on a whim in federal court. *See, e.g.*, *United States v. Mitchell*, 445 U.S. 535, 538 (1980) ("It is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued *in any court* define that court's jurisdiction to entertain the suit.'" (emphasis added) (alterations in original) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941))); *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 341 (4th Cir. 2014) ("As a general matter, the United States is immune from suit unless it waives that immunity."). Rather, the United States must expressly and unequivocally waive its immunity from suit. *Mitchell*, 445 U.S. at 538 (explaining that a waiver of sovereign immunity "'cannot be implied but must be unequivocally expressed'" (quoting *United States v. King*, 395 U.S. 1, 4 (1969)).

The APA contains a limited waiver of the United States' sovereign immunity: it allows "[a] person suffering legal wrong because of agency action" to "seek[ ] relief other than money damages" in federal court. 5 U.S.C. § 702; *see, e.g.*, *COMSAT*, 190 F.3d at 274 ("The APA waives the government's sovereign immunity from suit and permits federal court review of final agency actions, when the relief sought is other than money damages"). And because the APA provides the requisite express waiver of the United States' immunity, it is the "sole avenue" by which these parties may challenge DEA's refusal to comply with their subpoenas. *COMSAT*, 190 F.3d at 274. Thus, the only meaningful difference between an agency's refusal to comply

with a federal court subpoena as opposed to a state court subpoena is that a federal court possesses jurisdiction under the APA to review the agency's action and a state court does not. Put differently, a non-party agency's refusal to comply with a subpoena (whether issued by a federal court, state court, arbitrator, or any other entity) may not be challenged in state court, and it may be challenged in federal court only pursuant to the APA's express waiver of sovereign immunity.

Indeed, every court in the Fourth Circuit that has reviewed a non-party agency's refusal to comply with a subpoena has concluded that *COMSAT's* holding extends to a *federal* court litigant's motion to compel a government agency to respond to a *federal* court subpoena. *In re Subpoena to Nat'l Sci. Found., Office of Inspector Gen.*, 2018 WL 5017612, at *2 (E.D. Va. Oct. 16, 2018) ("The movants attempt to distinguish *COMSAT* by arguing that an arbitration panel, not a federal court, issued the subpoena in that case. ***But district courts throughout the Fourth Circuit have applied* COMSAT *when a non-party federal agency refuses to comply with a federal court-issued subpoena."*** (emphasis added)); *see Barreto v. SGT, Inc.*, 2019 WL 3253373 (D. Md. July 19, 2019); *Lamb v. Wallace*, 2018 WL 847242 (E.D.N.C. Feb. 13, 2018); *Andreas-Myers v. Nat'l Aeronautics & Space Admin.*, 2017 WL 1632410 (D. Md. Apr. 28, 2017); *Sauer Inc. v. Lexington Ins. Agency, Inc.*, 2014 WL 5580954 (E.D.N.C. Oct. 31, 2014); *Clay v. Consol Pa. Coal Co.*, LLC, 2013 WL 12373597 (N.D.W. Va. Oct. 17, 2013); *Bruno v. Nationwide Mut. Fire Ins. Co.*, 2009 WL 10681974 (D. Md. Oct. 26, 2009); *Spence*, 530 F. Supp. 2d 739; *Bavarian Nordic A/S v. Acambis Inc.*, 2007 WL 9782602 (D. Md. Jan. 19, 2007). Plaintiffs neither acknowledge nor attempt to refute this overwhelming and unanimous authority.

Equally important, under the APA, an agency's denial of a *Touhy* request must be upheld if it is reasonable and in accordance with the agency's regulations. *Spence*, 530 F. Supp. 2d at

745; *see also Andreas-Myers*, 2017 WL 1632410, at *4 (APA requires only "'a rational

connection between the facts found and the choice made'" (quoting *Baltimore Gas & Elec. Co.

v. Natural Res. Def. Council*, 462 U.S. 87, 105 (1983))).  "When an agency is not a party to an

action, its choice of whether or not to comply with a third-party subpoena is essentially a policy

decision about the best use of the agency's resources." *COMSAT*, 190 F.3d at 278.  Accordingly,

courts should "not second guess an agency decision or question whether the decision made was

the best one." *Andreas-Myers*, 2017 WL 1632410, at *8 (quoting *C & W Fish Co. v. Fox*, 931

F.2d 1556, 1565 (D.C. Cir. 1991)).  As the Fourth Circuit has explained, even the fact that an

agency *could* comply with a subpoena "without undermining the immediate purposes for the

[agency's *Touhy*] regulations," does not render its refusal to comply "arbitrary and capricious."

*Boron Oil*, 873 F.2d at 71.  Rather, a "court[] may reverse an agency's decision not to comply

only when the agency has acted unreasonably." *COMSAT*, 190 F.3d at 277.

## II.   DOJ Properly Considered and Denied Plaintiffs' Discovery Requests Pursuant to DOJ *Touhy* Regulations.

DOJ's *Touhy* regulations are set out at 28 C.F.R. Part 16, Subpart B, and govern the

agency's response to third-party subpoenas.[5]  DOJ's *Touhy* regulations provide a general

prohibition against the production or disclosure of DOJ files where the United States is not a

party.  28 C.F.R. 16.22.  In addition, section 16.26 of the regulation provides both general and

---

[5]   The policy underlying these regulations "is to conserve governmental resources where the United States is not a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business." *Boron Oil Co. v. Downie*, 873 F.2d 67, 70 (4th Cir. 1989).  If federal officials are routinely compelled to testify or produce government documents in private lawsuits where the United States is not even a party, "significant loss of manpower hours would predictably result and agency employees would be drawn from other important agency assignments." *Id.*  These policy concerns are implicated even more so where, as here, an "explosion in [related] litigation" threatens to conscript the resources of an agency. *Id.* at 72.

specific guidance for DOJ officials charged with evaluating requests from private litigants.  The regulations provide that DOJ officials should generally consider whether disclosure, "in the judgment of the responsible official," 28 C.F.R. § 16.24(b)(2), would be inconsistent with the "rules of procedure governing the case," *id.* § 16.26(a), or "the relevant substantive law governing privilege," *id.*  This discretion is removed, however, and disclosure is explicitly prohibited when any of six specific factors is present.  28 C.F.R. § 16.26(b).  Among the requests which must be denied under the regulations are those that seek information for which disclosure "would reveal investigatory records compiled for law enforcement purposes."  28 C.F.R. § 16.26(b)(5).

Contrary to the Special Master's de novo review, judicial review of non-party agency denials of document requests is typically extremely limited, as required by the APA.  *See, e.g.*, *Barreto*, 2019 WL 3253373, at *4 (granting agency's motion to quash third-party subpoena because agency's decision had "a rational connection to the subpoena"); *Bruno*, 2009 WL 10681974, at *2 ("FEMA's refusal to comply with [a] subpoena was not arbitrary, capricious or otherwise unlawful because . . . FEMA was reasonably acting to preserve its human resources."); *Andreas-Myers*, 2017 WL 1632410, at *8 (upholding non-party agency's refusal to comply with subpoena because agency "appropriately considered relevant factors, as outlined in its internal regulations, and provided a rational basis for its decision"); *Sauer*, 2014 WL 5580954 (upholding non-party agency's refusal to comply with subpoena even though agency denial failed to "explicitly state that . . . request [wa]s being denied based on Defendant's failure to comply with the *Touhy* regulations," because "'agency's path [could] reasonably be discerned'" (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974));

*Bavarian Nordic*, 2007 WL 9782602, at *2 (upholding non-party agency's refusal to comply with subpoena on basis that it would be contrary to agency's self-interest).

The Special Master's ruling places this Court squarely at odds with this clear weight of authority.  Although not considered by the Special Master in his ruling, DOJ's analysis was based on the relevant factors and its ultimate conclusion that the requests should be denied was reasonable, particularly in light of the extensive history of these and other opioid-related cases. Nothing more is required under the APA's highly deferential standard of review.

### A.     It Was Not Arbitrary and Capricious for DOJ to Consider The Cumulative Burden Imposed on DEA by Opioid-Related Litigation Requests.

DOJ properly considered the cumulative burden imposed on DEA by various opioid-related litigation requests—including prior requests submitted by these Plaintiffs—which was compounded by Plaintiffs' March 19, 2020 document requests.  It is undisputed that, under its *Touhy* regulations, DOJ must consider the burden generated by private litigants' requests for official agency documents.  *See* 28 C.F.R. § 16.26(a).  Moreover, Fourth Circuit law is clear that cumulative burden is an appropriate part of this analysis.  *COMSAT*, 190 F.3d at 278 (considering "potential cumulative burden upon the agency" in evaluating propriety of *Touhy* denial); *Boron Oil*, 873 F.2d at 71 (noting with approval that "concerns which motivated the agency may have extended beyond the burdens represented . . . in this particular case"); *see also Andreas-Myers*, 2017 WL 1632410, at *8 ("An agency is free to consider the additional burden that a second request would entail after already having responded to a first request."); *Sauer*, 2014 WL 5580954, at *6 (upholding agency refusal to comply with a second subpoena based on rationale that it had "already expended significant time and effort" on the first document production); *Spence*, 530 F. Supp. 2d at 745 (stating that "federal agencies must be permitted to

consider the precedential effects of granting individual discovery requests" when evaluating burden imposed by *Touhy* request).

And the cumulative burden imposed on an agency is *not* limited to requests from a single party, or even related parties. On the contrary, agencies may consider the precedential effect of granting a request that, on its own, is seemingly innocuous. In *Hoover*, the District Court for the Northern District of West Virginia expressly found that a request for documents denied by the FBI did not present "any undue burden." 2009 WL 10676534, at *4. The court still upheld the FBI's denial, however, based on "the argument that an order requiring production would present the FBI with the type of cumulative burden of providing such information in other cases as mentioned in *COMSAT*." *Id.* Indeed, *Touhy* regulations provide for centralized decisionmaking in large part to ensure that requests for documents are evaluated in light of all relevant demands facing agency personnel at a given time. *See Boron Oil*, 873 F.2d at 70, 72. Accordingly, DOJ's consideration of the cumulative burden imposed on DEA by opioid-related litigation requests was not arbitrary, capricious, or an abuse of discretion.

In their reply brief before the Special Master, Plaintiffs argued—without support or citation—that DOJ could not consider the cumulative burden imposed on DEA. This argument is meritless, and cannot be reconciled with the above-cited cases from and within the Fourth Circuit, which have explicitly and repeatedly held that agencies may consider the cumulative burden and precedential effects of a request. Plaintiffs also hyperbolically suggested that DEA is asserting "boundless discretion to deny a party's requests . . . just because some other party has requested some other information." (ECF No. 419 at 8.) This is nothing but a strawman argument intended to distract the Court from DOJ's actual evaluation of Plaintiffs' requests. First and foremost, DOJ has never asserted "boundless discretion" to deny litigants' requests for

documents.  On the contrary, DOJ has repeatedly acknowledged that its decision to authorize or deny production must be guided by its *Touhy* regulations and rationally related to the circumstances before the agency.  And while DOJ's discretion is not boundless, it is substantial, and this Court's review of DOJ's exercise of its substantial discretion is limited.

Second, DOJ denied Plaintiffs' requests not because "some other party ha[d] requested some other information," *id.*, but rather because *these* Plaintiffs had already requested *related* information from DEA.  Plaintiffs submitted their third *Touhy* request to DOJ on March 19, 2020, after DOJ and DEA had spent five months working to locate, review, and produce documents responsive to *these* Plaintiffs' first two requests.  Moreover, *these* parties participated in coordinated MDL discovery for two years, and DEA expended significant time and resources responding to closely related requests as part of those proceedings.  Significantly, the MDL court suggested remand only after Plaintiffs had narrowed their case[6] and only after discovery had proceeded to a point at which the MDL court believed that a trial could be undertaken expeditiously.  *See* Resp. to Mot. for Clarification at 2, *In Re: National Prescription Opiate Litigation*, No. 17-md-02804 (N.D. Ohio Apr. 17, 2020), ECF No. 3263 (MDL court explaining

---

[6]    In November 2019, Plaintiffs proposed a Track Two-A trial against the three distributors in "early 2020," which suggested to the MDL court that those claims would be ready for trial in a matter of months.  Pls.' Position Statement Regarding Continuing Litigation at 5–6, *In Re: National Prescription Opiate Litigation*, No. 17-md-02804 (N.D. Ohio Nov. 5, 2019), ECF No. 2906.  Plaintiffs' proposal indicated that "[o]nly limited additional factual discovery of . . . Defendants [wa]s necessary to proceed to trial on liability," and did not suggest that any additional discovery from DEA was necessary.  *Id.*  To ensure that these cases were sufficiently streamlined for trial following remand, on November 22, 2019, the MDL court directed Plaintiffs to identify the "distributor and national pharmacy defendants against whom they d[id] not have a true and serious intention of pursing claims at trial on remand."  Order Regarding Track Two Cases at 2, *In Re: National Prescription Opiate Litigation*, No. 17-md-02804 (N.D. Ohio Nov. 22, 2019), ECF No. 2950.  The MDL court then emphasized that it would "suggest remand of the Track Two cases only if plaintiffs pursue[d] their claims against a practicable, triable number of defendants."  *Id.*  Thereafter, Plaintiffs moved to dismiss most of the defendants and causes of action.  Pls. Cabell County Commission and City of Huntington's Mot. to Sever, *In Re: National Prescription Opiate Litigation*, No. 17-md-02804 (N.D. Ohio Dec. 13, 2019), ECF No. 2989.

that it "did not believe additional discovery from DEA was necessary or appropriate for a fair

trial").  Finally, DEA continues to face a substantial number of requests from other parties still in

the MDL, parties in state court proceedings, and parties seeking documents from High Intensity

Drug Trafficking Area (HIDTA) programs.  While many of these requests involve different

parties, those parties are not requesting "some other information."  Rather, they are all

propounding repeated requests on DEA for expansive and overlapping categories of documents

related to the illicit diversion of opioids, and many of these plaintiffs are (1) represented by the

same counsel, or (2) coordinating through the MDL's Plaintiffs' Executive Committee.  Thus, it

is quite disingenuous to suggest, as Plaintiffs do, that the other requests directed to DEA are

somehow different in nature or kind.  Indeed, the Fourth Circuit has previously underscored the

importance of *Touhy* regulations in just such a scenario when it warned of the potential for an

"explosion in [related] litigation" to conscript the resources of an agency.  *Boron Oil*, 873 F.2d at

72.

      In sum, it was neither arbitrary nor capricious for DOJ to conclude that Plaintiffs'

seriatim requests were imposing an undue burden on DEA, particularly in light of the multitude

of other requests DEA was (and is) facing—including from these parties—in the ongoing MDL

proceedings and related federal and state court cases across the nation.[7]

**B.**    **It Was Not Arbitrary and Capricious for DOJ to Consider the Additional Burden on DEA to Identify and Redact Law Enforcement Sensitive Information.**

      Each of the seven requests for documents granted by the Special Master explicitly seeks

documents related to the "investigation and prosecution" of specific pharmacies.  Documents

---

[7]    Although certainly not required under DOJ *Touhy* regulations or to withstand an APA challenge, DOJ provided further support for its burden arguments via a declaration from Heather Wehrle, the Acting Diversion Group Supervisor for DEA's Charleston, WV office.  *See* Ex. F.

responsive to these requests, to the extent they exist, will necessarily include "investigatory records compiled for law enforcement purposes," 28 C.F.R. § 16.26(b)(5), even under the narrowest definition of the law enforcement privilege.  DOJ *Touhy* regulations prohibit disclosure of such information.  *Id.*  Accordingly, DOJ reasonably concluded that the need to review, identify, and redact documents to prevent disclosure of such information would significantly increase the burden imposed on DEA by Plaintiffs' requests.

Rather than challenge the appropriateness of DOJ's determination under the APA, the parties have instead repeatedly attempted to obfuscate and mislead this Court as to the nature of DOJ's argument.  Both parties have claimed that DOJ is asserting a "sweeping" and "blanket" law enforcement privilege.  But DOJ has never asserted a "sweeping" or "blanket" law enforcement privilege and, in fact, has consistently acknowledged that some subset of the documents sought by the parties would *not* be protected by the law enforcement privilege.  DOJ has repeatedly explained to the parties in meet and confers, *Touhy* denial letters, and briefing before this Court that its argument is one of burden:  The documents sought by the parties will necessarily include law enforcement sensitive information, requiring DEA to undertake an additional, labor intensive review prior to production to prevent the disclosure of such information.

Plaintiffs do not dispute that their requests implicate law enforcement sensitive information.  Nor do Plaintiffs contend that DOJ's consideration of the additional work required to review and redact such information prior to production was arbitrary, capricious, or an abuse of discretion.  Likewise, the Special Master did not find that DOJ's consideration of this additional burden was inappropriate under the APA and DOJ *Touhy* regulations.

Because DOJ *Touhy* regulations explicitly prohibit disclosure of law enforcement sensitive information, it was appropriate for DOJ to consider how the presence of such information in documents sought by Plaintiffs would impact DEA's ability to respond to Plaintiffs' requests.  Moreover, it was not unreasonable or irrational for DOJ to conclude that the additional burden associated with reviewing and redacting such information further countenanced against providing the documents sought by Plaintiffs in their third *Touhy* request. Accordingly, DOJ's decision was not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.

## III.   Conclusion

For the foregoing reasons, DEA respectfully requests that this Court deny Plaintiffs' motion to compel in its entirety.

Respectfully submitted,

MICHAEL D. GRANSTON
Deputy Assistant Attorney General

MICHAEL B. STUART
United States Attorney
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

By:   Fred B. Westfall, Jr.
FRED B. WESTFALL, JR.
(W.Va. State Bar No. 3992)
Assistant U.S. Attorney, Civil Chief
300 Virginia Street East, Room 4000
Charleston, WV 25301
(304) 345-2200
(304) 347-5443 (facsimile)
Fred.Westfall@usdoj.gov

JAMIE ANN YAVELBERG
NATALIE A. WAITES
JONATHAN K. HOERNER
J. ANDREW JACO
KELLY E. PHIPPS
DAVID M. SOBOTKIN
United States Department of Justice
Civil Division/Fraud Section
175 N Street, N.E., Room 10.222
Washington, D.C. 20002
(202) 616-2964
Natalie.A.Waites@usdoj.gov

Attorneys for U.S. Department of Justice
Drug Enforcement Administration

## <u>CERTIFICATE OF SERVICE</u>

I, Fred B. Westfall, Jr., Assistant United States Attorney, hereby certify that that on

June 12, 2020, the foregoing DEA'S OBJECTION TO SPECIAL MASTER'S

DISCOVERY RULING NO. 6 with the Court using the Court's CM/ECF system, which will

send a copy thereof by email to all counsel of record.

<u>/s/Fred B. Westfall, Jr.</u>
Fred B. Westfall, Jr. (W.Va. State Bar No. 3992)
Assistant U.S. Attorney, Civil Chief
300 Virginia Street East, Room 4000
Charleston, WV 25301
(304) 345-2200
(304) 347-5443 (facsimile)
E-mail:   fred.westfall@usdoj.gov

18