UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

| | |
|---|---|
| **CITY OF HUNTINGTON, WEST VIRGINIA,**<br><br>  Plaintiff,<br><br>v.<br><br>**AMERISOURCEBERGEN DRUG CORPORATION, et al.**<br><br>  Defendants. | **CASE NO. 3:17-CV-01362**<br>**Judge David A. Faber** |
| **CABELL COUNTY COMMISSION,**<br><br>  Plaintiff,<br><br>v.<br><br>**AMERISOURCEBERGEN DRUG CORPORATION, et al.**<br><br>  Defendants. | **CASE NO. 3:17-CV-01665**<br>**Judge David A. Faber** |

**DEFENDANT MCKESSON CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL THE DEPOSITIONS OF JOHN H. HAMMERGREN (MCKESSON) AND STEVEN H. COLLIS (AMERISOURCEBERGEN)**

Plaintiffs' Motion to Compel the deposition of McKesson Corporation's ("McKesson's") former CEO John Hammergren is knowingly improper. Mr. Hammergren is a retired employee who is represented by his own counsel, he is not within McKesson's control, and he does not reside in this jurisdiction. Plaintiffs know this because they unsuccessfully attempted to negotiate a voluntary deposition with Mr. Hammergren's counsel. When his counsel instead agreed to accept service of a subpoena for Mr. Hammergren subject to a reasonable motion to quash schedule, Plaintiffs improperly moved to compel as to McKesson. If Plaintiffs want to compel Mr. Hammergren to attend a deposition, they must comply with the non-party subpoena provisions of Federal Rule of Civil Procedure 45. There is no proper procedure to compel *McKesson* to make a former employee available for a deposition.

Nor is a deposition of Mr. Hammergren appropriate on its merits. McKesson has produced a massive volume of documents and made available for deposition dozens of witnesses with far more direct involvement in the facts relevant to this case. Plaintiffs themselves represented to this Court mere months ago that "no more discovery needs to be done." Ex. A, January 27, 2020 Transcript of Status Conference ("Transcript") at 19.

Plaintiffs' request should therefore be denied.

## BACKGROUND

These cases were transferred for pretrial discovery to the Multidistrict Litigation in the Northern District of Ohio ("MDL 2804") on December 12, 2017. Transfer Order, ECF No. 45. Plaintiffs' counsel took leadership positions on the MDL Executive Committee and played a central role in seeking and taking depositions of defendants and non-parties. Pls. Renewed Motion to Approve Co-Leads, Co-Liaisons, and Exec. Comm. at 10, In Re: Nat'l Opiate Litig., No. 1:17-md-02804-DAP (N.D. Ohio Dec. 12, 2017), ECF No. 34.

Following the close of extensive fact discovery in MDL 2804 Track One, McKesson continued to produce documents in the opioids proceedings pending in multiple state courts. To date, McKesson has produced over 515,000 documents from 70 custodians, including numerous members of McKesson's Regulatory Affairs team as well as other custodians familiar with McKesson's distribution operations and sales. The productions include documents previously produced in the action brought against McKesson by the State of West Virginia. And McKesson is also providing productions requested by Plaintiffs from witnesses who are familiar with McKesson's distribution of controlled substances and other products to customers in West Virginia. Additionally, McKesson agreed in April to produce a limited set of Mr. Hammergren's custodial documents from his tenure as CEO.

McKesson's productions also include the following types of documents, which provide extensive information on the topics for which Plaintiffs claim to need Mr. Hammergren's deposition: (1) a comprehensive set of policies and procedures for McKesson's Controlled Substances Monitoring Program ("CSMP") and its predecessor programs; (2) documents and information provided to the House Energy and Commerce Committee's Subcommittee on Oversight and Investigations ("HOC") both before and after Mr. Hammergren's May 8, 2018 testimony; (3) communications with the DEA and U.S. Attorneys General relating to, among other issues, distribution of opioids to pharmacies in West Virginia and McKesson's settlements with the United States; and (4) minutes and related materials for meetings of McKesson's Board of Directors ("BOD") and the BOD Audit Committee.

In addition to the broad production of documents, McKesson has produced transcripts of all of the depositions taken in the MDL and other state litigations. These materials, which cover a wide range of subject matters, consist of transcripts from the interviews and depositions of 62

McKesson witnesses, including 23 corporate designee depositions (from 14 corporate designee witnesses) consisting of more than 80 hours of testimony. For example, Joseph Ganley, McKesson's Vice President of Federal Government Affairs, has given three corporate depositions on the topics of government affairs and lobbying: a 30(b)(6) deposition in the MDL, a 30(b)(7) deposition in the West Virginia Attorney General litigation, and a 30(b)(5) deposition in the Ohio Attorney General litigation.

On January 14, 2020, the MDL remanded Plaintiffs' actions to this Court. Remand Orders, ECF No. 119 (3:17-cv-01665); ECF No. 48 (3:17-cv-01362). Plaintiffs thereafter urged the Court to adopt an aggressive schedule, based on their representations that their discovery was largely complete. *See* Ex. A, Transcript at 19 ("We can put in substantial aspects of our liability case against each of The Big 3, and ***no more discovery needs to be done***. The only thing that I need from them is a list of the suspicious orders . . . .") (emphasis added).

On March 30, 2020, Plaintiffs requested deposition dates for three apex witnesses: Steven Collis (ABDC), George Barrett (Cardinal), and John Hammergren (McKesson). On April 14, counsel for McKesson responded that McKesson did not believe a basis existed for deposing Mr. Hammergren, but that "[i]f Plaintiffs nonetheless intend[ed] to seek Mr. Hammergren's testimony, [Plaintiffs] w[ould] need to contact counsel for Mr. Hammergren." Ex. B, Email from D. Rice (Apr. 14, 2020). In that same communication, McKesson provided contact information for Mr. Hammergren's counsel, John Spiegel of Munger, Tolles, & Olson LLP. *Id.*

Thereafter, Plaintiffs contacted Mr. Spiegel. On May 22, 2020, Mr. Spiegel wrote Plaintiffs, stating that Mr. Hammergren's counsel did not believe there was a basis for taking Mr. Hammergren's deposition and referenced "the extensive deposition and document discovery provided to plaintiffs in this case for McKesson employees who were directly involved in the

4

activities at issue in your litigation." Ex. C, Email from J. Spiegel (May 22, 2020) ("Spiegel Response"). Mr. Spiegel also noted that Mr. Hammergren lives in New Hampshire, and further offered to accept service of a proper deposition subpoena so that resolution of any dispute over Mr. Hammergren's deposition could be resolved efficiently:

> "If, notwithstanding the above, you still wish to seek Mr. Hammergren's deposition now, we will work with you to obtain a resolution as promptly and efficiently as reasonably possible. You will of course need to serve a subpoena for the deposition of an out-of-state, nonparty witness under the Federal Rules of Civil Procedure. We will accept service of a properly issued out-of-state subpoena subject to agreement on a reasonable schedule and procedure for the hearing of our motion to quash."

*Id.* Rather than serve a Rule 45 subpoena on Mr. Hammergren's counsel, Plaintiffs on June 4, 2020 noticed Mr. Hammergren's deposition (using a deposition notice for parties, rather than a subpoena pursuant to Rule 45) and simultaneously filed a Motion to Compel Mr. Hammergren's deposition *against McKesson*, rather than Mr. Hammergren. ECF Nos. 516, 517. Neither Mr. Hammergren nor his personal counsel has received a subpoena pursuant to Rule 45.

## ARGUMENT

### I. McKesson Does Not Control Mr. Hammergren and Cannot Produce Him for Deposition

A former employee of a corporation must be treated as a non-party for the purposes of a deposition and must be served with a subpoena under Federal Rule of Civil Procedure 45. *E.E.O.C. v. Honda of Am. Mfg., Inc.*, No. 2:06-CV-0233, 2007 WL 682088, at *1 (S.D. Ohio Feb. 28, 2007); *Schindler Elevator Corp. v. Otis Elevator Co.*, No. 06 CIV.5377CMTHK, 2007 WL 1771509, at *2 (S.D.N.Y. June 18, 2007). Further, corporate defendants cannot be compelled to produce former employees whom they do not control. *Miami-Dade Cty. v. Schindler Elevator Corp.*, No. 10-21469-CIV, 2011 WL 765961, at *2 (S.D. Fla. Feb. 25, 2011); *Boss Mfg. Co. v. Hugo Boss AG*, No. 97CIV.8495(SHS)(MHD), 1999 WL 20828, at *2 (S.D.N.Y. Jan. 13, 1999).

5

That is true even where there is cooperation, as is the case here,[1] between a corporate defendant and a former employee. Such cooperation does not mean that the defendant controls or can be compelled to produce that former employee. *Peltier v. Norfolk S. Ry. Co.*, No. CV 06-46-DLB, 2008 WL 11472174, at *3 (E.D. Ky. Oct. 17, 2008) ("Despite the apparent cooperation of the former employees, [the corporate defendant] persuasively argues that it cannot be compelled to produce the retired employees, because it has no control over former employees who reside outside this jurisdiction.").

It is undisputed that Mr. Hammergren is no longer an employee of McKesson and has not been one since he retired last year. Pls. Mot. to Compel, ECF No. 517 at 5. Mr. Hammergren therefore cannot be compelled to testify pursuant to a Rule 30 deposition notice, which seeks discovery from parties. McKesson will work with Mr. Hammergren, as it has done with other former employees throughout discovery. But ultimately the manner in which Mr. Hammergren chooses to respond to a subpoena, appear for testimony, and prepare ahead of time, is his choice. *See*, *Peltier*, 2008 WL 11472174 at *3 (holding that "cooperation" of former employees did not imply "control.").

Rather, the proper mechanism would have been to serve Mr. Hammergren with a subpoena for non-party discovery pursuant to Rule 45 of the Federal Rules of Civil Procedure. Indeed, Plaintiffs' own conduct concedes as much: once Plaintiffs learned that Mr. Hammergren was represented by his own counsel, they communicated with Mr. Hammergren's counsel regarding Mr. Hammergren's proposed deposition. Pls. Mot. at 19; ex. D, Email from P. Farrell (Apr. 29,

---

[1] Given Mr. Hammergren's prior role at McKesson and the evident use Plaintiffs seek to make of his testimony against McKesson, counsel for McKesson anticipate coordinating with Mr. Hammergren's counsel regarding a deposition if it occurs. But that does not give McKesson control over a former employee who has separate counsel.

2020). Any deposition, therefore, could only occur pursuant to a Rule 45 subpoena—a point that Mr. Hammergren's counsel also made clear. Ex. C, Spiegel Response.

After Mr. Hammergren's counsel informed Plaintiffs in April that he lives in New Hampshire (*id.*), Plaintiffs should have issued a subpoena out of this Court, requesting that Mr. Hammergren appear for a deposition within 100 miles of, or within the state where the deponent "resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1). And if Mr. Hammergren refused to sit for a deposition pursuant to a Rule 45 deposition subpoena, the proper place for Plaintiffs to enforce that subpoena, or for Mr. Hammergren to move to quash it, is in "the court for the district where compliance is required," in this case the District Court of New Hampshire. Fed. R. Civ. P. 45(d)(1), (3)(A). Plaintiffs simply ignored this requirement.

## II. Plaintiffs' Request for Mr. Hammergren's Deposition is Unreasonable Given the Volume of Discovery and His Limited Relevance to this Litigation

For the reasons set forth above, Plaintiffs' motion as to Mr. Hammergren is procedurally improper. The Court should not reach the merits of whether Mr. Hammergren's deposition is proper until Plaintiffs follow Rule 45 and allow Mr. Hammergren's counsel the chance to lodge their objections in response. Nevertheless, because Plaintiffs have attempted to put the merits of this issue before the Court, McKesson feels compelled to assert its responses on the merits, reserving its right to reassert those responses in the context of a dispute over a properly-served Rule 45 subpoena.

Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure requires this Court to "limit the frequency or extent of discovery otherwise allowed" when the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or the proposed discovery is outside the scope permitted

7

by Rule 26(b)(1)." The "simple fact that requested information is discoverable under Rule 26(a) does not mean that discovery must be had." *Nicholas v. Wyndham Intern.*, 373 F.3d 537, 543 (4th Cir. 2004). Rule 26 "cautions that all permissible discovery must be measured against the yardstick of proportionality." *Wilshire v. Love*, No. 3:14-CV-08374, 2015 WL 1482251, at *3 (S.D. W.Va. Mar. 31, 2015).

Under the apex doctrine, which Plaintiffs concede applies to Mr. Hammergren, "before proceeding with the deposition of a high-level executive, a party must show that the executive (1) possesses special or unique information relevant to the issues being litigated, and (2) the information cannot be obtained by a less intrusive method, such as through written discovery or by deposing lower-ranking employees." *In re C. R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, No. MDL 2187, 2014 WL 12703776, at *3 (S.D. W.Va. June 30, 2014). While the apex doctrine protects the individual current or former executive,[2] it was also "[d]eveloped to prevent a litigant from harassing or burdening a corporate or government adversary by taking depositions of its apex employees . . . ." *Id.*

Mr. Hammergren illustrates the concerns that animate the apex doctrine. He oversaw a very large company with a range of operations that included several business lines, work inside and outside the United States, distribution of all forms of prescription drugs, and distribution of various other medical and pharmacy products such as over-the-counter medicines, surgical supplies, and other health-care related products. Ex. E, McKesson Corp., Annual Report (Form 10-K) at 3, 4, 7 (May 24, 2018). Prescription opioids are an important part of McKesson's work, and McKesson's obligations regarding prescription opioids are important obligations. But

---

[2] McKesson's arguments and observations are not a substitute for any arguments that may be raised by Mr. Hammergren in a motion to quash after service of a subpoena, including but not limited to any arguments regarding the burden to him personally.

prescription opioids account for a small minority of the products that McKesson distributes (ex. F, Deposition of Donald Walker (Jan. 30, 2020) at 130:15-24), and in order to meet its obligations regarding prescription opioids, McKesson employs a dedicated Regulatory Affairs Department (of which Mr. Hammergren has never been a part). Ex. G, MCKMDL00456036 at 043-45.

Although Plaintiffs make the conclusory claim that "the executives' personal knowledge is both relevant and unique" (Pls. Mot. at 23), it is unclear to what knowledge they are referring. Plaintiffs state that Mr. Hammergren is "knowledgeable" about McKesson's "Suspicious Order Monitoring systems and lobbying efforts" (*id.*), but not how that knowledge differs from that of previously deposed regulatory affairs and government affairs employees. Plaintiffs cite an article discussing potential causes of opioid abuse, which they readily characterize as "personal opinions" (*id.*)—not unique factual knowledge, or even the subject of proper testimony from a fact witness under the Federal Rules of Evidence. And they claim that Mr. Hammergren had "personal involvement in setting threshold levels for their companies compliance programs" (*id.* at 22), but that claim is simply false, as evidenced by the documents they cite in support of it.[3]

Plaintiffs do not point to any *unique* or particularized knowledge that Mr. Hammergren possesses concerning the day-to-day operation of McKesson's CSMP or its distribution of opioids and other products to customers in West Virginia. While Mr. Hammergren is familiar with McKesson's suspicious order monitoring system (the CSMP) and its distribution operations from his former role as CEO, he is not the best source of information on those issues. The persons most knowledgeable about McKesson's CSMP are the individuals who developed it and who applied it

---

[3] Plaintiffs cite Exhibits 17 and 18 to their motion. Exhibit 17 is an internal audit report, which shows Mr. Hammergren on the distribution list for the two-page "Executive Summary" for the 32-page report. Pls. Ex. 17 at 2. Exhibit 18 is a high-level all-employee email summarizing its upcoming FY15 financial statements and an upcoming settlement with the DEA. Pls. Ex. 18. Neither shows "personal involvement in setting threshold levels." Pls. Mot. at 22.

on a daily basis—members of McKesson's regulatory affairs team—and not the company's former CEO who did not have individual responsibility for creating or daily applying those policies. As to those with that relevant experience, Plaintiffs already have depositions from a broad swath of McKesson's regulatory affairs team: 33 depositions of 19 employees. More broadly, they have testimony from more than 62 McKesson witnesses and corporate designees, including 23 corporate designee depositions[4] covering such topics as McKesson's CSMP, regulatory compliance, government affairs, and distribution operations.

Plaintiffs also incorrectly invoke Mr. Hammergren's congressional testimony to claim unique knowledge key to this litigation. Pls. Mot. at 4-5. First, although Plaintiffs suggest that this testimony provides a jurisdiction-specific justification for Mr. Hammergren's deposition, *none* of the McKesson customers mentioned during the hearing or in the subsequent report were located in Huntington or Cabell County. Furthermore, insofar as the subjects covered in that testimony are relevant here, others within McKesson are far more knowledgeable about those specific subjects—and have in fact already been deposed on those subjects. Plaintiffs already have the single most relevant aspect of his congressional testimony—the testimony itself. Ex. H, MCKMDL01387750. Finally, Mr. Hammergren testified on behalf of the company because Congress specifically requested his CEO-level testimony. Ex. I, Ltr. from G. Harper (May 1, 2018). Because there is so little of consequence that Plaintiffs could fairly want to gather from Mr. Hammergren, and given their previous admission that they do not need any further testimony (ex. A, Transcript at 19), the only conceivable rationale for deposing Mr. Hammergren would be improper harassment and grandstanding. *See*, *C.R. Bard,* 2014 WL 12703776 at *4 ("As a general

---

[4] Some of those depositions were taken pursuant to state-court equivalents of Federal Rule of Civil Procedure 30(b)(6).

rule, an effective way to harass and abuse a large multinational corporation in litigation is to notice the deposition of one of it high-level executives.").

This apparent improper purpose is only highlighted by the fact that Plaintiffs moved for Mr. Hammergren's deposition on June 4 without even taking the time to wait for Defendants to produce the agreed-upon production set of Mr. Hammergren's documents, which occurred on June 12.  *See*, Pls. Mot. at 8.  Plaintiffs previously represented that "documents obtained through discovery can be critical to determining whether an apex deposition will be allowed," and that Plaintiffs would "await production of their documents" before seeking Mr. Hammergren's deposition.  Pls. Mot. to Compel ESI Disc., ECF No. 322 at 2, n.2.  Any legitimate showing of need would necessarily take into account what those documents reflect.  The fact that Plaintiffs obtained McKesson's agreement to produce those documents and then filed this motion without waiting to see what the documents reflect instead indicates an improper desire to harass a witness not based on his knowledge but because of his role as an apex employee of the company.

The case on which Plaintiffs rely extensively only reinforces how far removed they are from justifying Mr. Hammergren's deposition here.  *C.R. Bard* permitted only a *limited* apex deposition of the defendant's CEO, based on a specific showing of need and the fact that "Plaintiffs propose to take Weiland's deposition just once for use in approximately 10,000 cases currently pending in this MDL and in state courts."  *C.R. Bard,* 2014 WL 12703776 at *5.  This case, by contrast, involves only two municipalities, rather than thousands in an MDL.  And notably, Plaintiffs' counsel forsook Mr. Hammergren's deposition before the MDL Court, where it would have applied to thousands of lawsuits rather than the two municipalities at issue here:  Plaintiffs' counsel initially demanded his deposition before the MDL court, only to abandon that effort and ultimately have their request denied by the MDL Discovery Master.  *See* Ex. J, Email from D.

11

Cohen (Jan. 18, 2019).[5] Ordering a deposition now in this individual action would expose Mr. Hammergren to the "repetitive, abusive, and harassing depositions" that the court in *C.R. Bard* sought to avoid, and may require extensive cross-noticing to mitigate the harm. *C.R. Bard,* 2014 WL 12703776 at *5.

## CONCLUSION

For the foregoing reasons, McKesson respectfully requests that the Court deny Plaintiffs' motion to compel McKesson to make Mr. Hammergren available for a deposition.

Dated: June 15, 2020

                                                                **McKesson Corporation**
                                                                By Counsel:

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
Jason L. Holliday (WVSB #12749)
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box 3843
Charleston, WV 25338-3843
Tel: (304) 345-0200
jwakefield@flahertylegal.com
jholliday@flahertylegal.com

*/s/ Carol Dan Browning*
Carol Dan Browning
Stites & Harbison, PLLC
400 West Market Street, Suite 1800
Louisville, Kentucky 40202
Tel: (502) 587-3400
Fax: (502) 587-6391
cbrowning@stites.com

---

[5] At least one other non-MDL judge has decided not to order testimony from Defendant apex witnesses in individual cases. In March, the Court in the New York Litigation granted a motion to quash the trial subpoena of AmerisourceBergen CEO Steven Collis "without prejudice to an offer of proof from Plaintiffs at trial, after the other 20 ABDC subpoenaed witnesses have testified, as to why the testimony is needed and not cumulative . . . ." Ex. K, Order Concerning Service of Trial Subpoenas, *In re Opioid Litigation*, No. 400000/2017 (N.Y. Sup. Ct. March 3, 2020), NYSCEF Doc. No. 5380.

                    */s/ Timothy C. Hester*
                    Timothy C. Hester
                    Mark H. Lynch
                    Christian J. Pistilli
                    Laura Flahive Wu
                    COVINGTON & BURLING LLP
                    One CityCenter
                    850 Tenth Street NW
                    Washington, DC 20001
                    Tel: (202) 662-5324
                    thester@cov.com
                    mlynch@cov.com
                    cpistilli@cov.com
                    lflahivewu@cov.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

| | |
|---|---|
| **CITY OF HUNTINGTON, WEST VIRGINIA,**<br><br>    Plaintiff,<br><br>v.<br><br>**AMERISOURCEBERGEN DRUG CORPORATION, et al.**<br><br>    Defendants. | **CASE NO. 3:17-CV-01362** |
| **CABELL COUNTY COMMISSION,**<br><br>    Plaintiff,<br><br>v.<br><br>**AMERISOURCEBERGEN DRUG CORPORATION, et al.**<br><br>    Defendants. | **CASE NO. 3:17-CV-01665** |

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this the 15th day of June, 2020, the foregoing "Defendant McKesson Corporation's Response to Plaintiffs' Motion to Compel Depositions of John H. Hammergren (McKesson) and Steven H. Collis (AmerisourceBergen)" was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

                                                                              */s/ Jeffrey M. Wakefield*
                                                                              Jeffrey M. Wakefield (WVSB #3894)