## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON, | |
| Plaintiff, | |
| v. | Civil Action No. 3:17-01362 |
| | Hon. David A. Faber |
| AMERISOURCEBERGEN DRUG CORPORATION, *et al.*, | |
| Defendants. | |
| | |
| CABELL COUNTY COMMISSION, | |
| Plaintiff, | |
| v. | Civil Action No. 3:17-01665 |
| | Hon. David A. Faber |
| AMERISOURCEBERGEN DRUG CORPORATION, *et al.*, | |
| Defendants. | |

## AMERISOURCEBERGEN DRUG CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL THE DEPOSITION OF STEVEN H. COLLIS

AmerisourceBergen Drug Corporation ("ABDC") respectfully files this Response in Opposition to Plaintiffs' Motion to Compel the Deposition of John H. Hammergren (McKesson) and Steven H. Collis (AmerisourceBergen) ("Plaintiffs' Motion") (ECF No. 517).  For the reasons set forth below, Plaintiffs' request to depose ABDC's current Chief Executive Officer, Mr. Collis, should be denied.

## I.      INTRODUCTION

A party seeking to depose a high-ranking corporate official must show that the executive has unique personal knowledge of relevant facts and that the information sought is not obtainable

by less intrusive means. *In re C. R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, No. MDL 2187, 2014 WL 12703776, at \*3-4 (S.D.W. Va. June 30, 2014). Plaintiffs acknowledge both that they have a burden to show why they should be permitted to take a deposition of AmerisourceBergen CEO Steve Collis and what the burden entails. Plaintiffs cannot meet their burden to show either that (1) Mr. Collis has unique, personal knowledge, or that (2) the information they seek cannot be obtained through a less burdensome means.

As for the first factor of what sometimes is called the "apex" analysis, Plaintiffs do nothing more than identify several topics on which they say they need Mr. Collis's testimony. While Plaintiffs' motion is filled with citations to the documentary record, the cited documents do nothing to support Plaintiffs' position—indeed, they undercut it. In certain instances, Plaintiffs outright misrepresent the documents. For example, they incorrectly assert Mr. Collis is copied on an email chain when he is not, and contend other documents show his involvement with an issue where in reality he was just one of 50 or more people simply copied on an email chain. As for many other documents, Plaintiffs significantly exaggerate their importance. Therefore, in the end, even a passing review of the documents Plaintiffs cite shows that Mr. Collis **does not** have personal, unique knowledge on these topics. A review of the documents, in fact, defeats Plaintiffs' motion, showing that many other individuals—including lower ranking employers, several of whom previously have been deposed—have the same if not superior knowledge on these topics.

The record also defeats Plaintiffs' efforts on the second factor of the apex analysis— whether the information is available through less burdensome means. There has been extensive discovery in this litigation, including more than 30 depositions of ABDC employees. None of the depositions demonstrate any need for Mr. Collis's testimony. It therefore is not surprising that

Plaintiffs do not even address this factor in their Motion. Nor do they point to any steps they have taken to attempt to obtain this discovery through less burdensome means.

Courts impose a higher burden on a party seeking to depose a high-ranking corporate executive—and for good reason. "The rationale behind the apex doctrine is that, without the required showing, high-level executives will be exposed to repetitive, abusive, and harassing depositions." *In re C. R. Bard*, 2014 WL 12703776, at *4. Plaintiffs acknowledge that they have this higher burden, but fail to meet it. Their Motion to Compel a deposition of Mr. Collis therefore should be denied.

## II.    PRIOR RELEVANT DISCOVERY AND PROCEDURAL HISTORY

As this Court is aware, substantial discovery efforts have been ongoing in the opioid litigation for over two years, in both Track One of the MDL and related state court litigation. These efforts have provided Plaintiffs in this case with an enormous volume of discovery from ABDC, including custodial files and depositions of dozens of current and former ABDC employees. Plaintiffs have access to 19 deposition transcripts of ABDC witnesses taken in Track One of the MDL, including company executives responsible for diversion control, regulatory issues, government affairs, and communications. Several additional ABDC witnesses were deposed in state court cases in New York and Ohio. Plaintiffs have access to those transcripts too. Thus, in total, Plaintiffs have access to 34 deposition transcripts and more than 8,000 pages of testimony from ABDC witnesses. On top of that, Plaintiffs are represented by the same lawyers who deposed most of these witnesses in other litigation.[1]

---

[1]    Plaintiff Cabell County Commission is represented by, among others, the law firm of Baron & Budd, P.C., which not only is part of the Plaintiffs' Executive Committee in the MDL, but which also was specifically assigned to handle discovery issues related to ABDC and took the lead in most, if not all, of the ABDC depositions in Track One.

In this case, while ABDC did agree to produce documents from Mr. Collis's custodial file based on three very specific discovery requests and following an extensive negotiation on search terms, ABDC consistently has taken the position—in this case as well as in others—that Plaintiffs cannot satisfy the requirements to take Mr. Collis's deposition.  And contrary to the incorrect recitation of the meet-and-confer process contained in Plaintiffs' Motion, ABDC has responded to many of Plaintiffs' emails on this issue, including via email and/or telephone, on April 9-10, 2020, April 30, 2020, and May 22, 2020.

## III.    ARGUMENT

"The prerequisites to an apex deposition are simple." *In re C. R. Bard*, 2014 WL 12703776, at *4.  First, the "executive must have unique personal knowledge of relevant facts." *Id.*  And second, "the information known to the executive must not be obtainable by an easier, less intrusive method of discovery than taking his or her deposition." *Id.*; *see also, e.g.*, *United States ex rel. Galmines v. Novartis Pharm. Corp.*, No. 06-3213, 2015 WL 4973626, at *4 (E.D. Pa. Aug. 20, 2015) ("[T]he apex doctrine instructs courts to consider whether the high-level official has personal or superior unique knowledge of the facts alleged and whether the information could be obtained from lower level employees or through less burdensome means."); *Cross by & Through Steele v. XPO Express, Inc.*, No. CV 4:15-2480-BHH, 2017 WL 10544634, at *1-2 & n.1 (D.S.C. May 8, 2017) (applying the apex doctrine and collecting cases from other cases from district courts in the Fourth Circuit).[2]

---

[2]    This test has come to be known as the "apex doctrine," but it is simply an application of settled principles limiting discovery that is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.  *See In re C. R. Bard*, 2014 WL 12703776, at *2-3 (enumerating the various ways that the Federal Rules allow courts to limit discovery consistent with these principles).

Plaintiffs do not dispute the relevant legal standard governing a party's efforts to depose a high-ranking corporate official.  Plaintiffs' Motion at 3-4.  Yet, despite this, Plaintiffs' Motion both fails to apply that standard or show that they have met their burden.  Plaintiffs have not shown that Mr. Collis has any unique, personal knowledge that is relevant to this litigation.  And they do not even try to show that this evidence cannot be obtained through less burdensome means.

> A.    **Plaintiffs' Cannot Establish that Mr. Collis Has Unique, Personal Knowledge**

Plaintiffs identify four topics on which they claim a need for Mr. Collis's deposition testimony:  (1) Mr. Collis's testimony before Congress and other public statements; (2) ABDC's diversion control program and, specifically Mr. Collis's purported involvement in "setting thresholds;" (3) issues related to government affairs; and (4) prior litigation filed against ABDC in West Virginia.  *Id.* at 4-5, 11-15.

Plaintiffs' Motion is flawed because the mere identification of a topic on which Mr. Collis might have knowledge, without showing that his knowledge is unique, does not satisfy Plaintiff's burden.  The documentary record Plaintiffs point to does not help them either.  Even a cursory review of the cited documents shows that Plaintiffs' argument is based on exaggerations, obfuscations, and outright misrepresentations and that numerous other individuals have knowledge on these topics.

> 1.    **Mr. Collis Does Not Have Unique, Personal Knowledge Related to the Congressional Hearing or Other Public Statements**

Plaintiffs' primary justification for their request for Mr. Collis's deposition is his prior testimony before the House Energy & Commerce Committee hearing in May 2018.  Plaintiffs describe this testimony as relating to "the application (or lack thereof) of [each] companies' Suspicious Order Monitoring systems ("SOMs") in West Virginia."  *Id.* at 3.  But the act of having made public statements about ABDC's diversion control efforts in West Virginia does not make

Mr. Collis **uniquely suited** to discuss those efforts.  *See Naylor Farms, Inc. v. Anadarko OGC Co.*, No. 11-cv-01528, 2011 WL 2535067, at *3 (D. Colo. June 27, 2011) ("Isolated general statements [made by an executive] do not defeat the application of the apex doctrine.") (internal quotation marks omitted).  Indeed, Plaintiffs themselves acknowledge that the requested deposition "relate[s] to **the facts** presented by each witness to Congress."  Plaintiffs' Motion at 4 (emphasis added).

Plaintiffs already have extensive discovery on **the facts** related to ABDC's diversion control program that form the basis of Mr. Collis's congressional testimony, including deposition testimony from other high-ranking executives, such as Chris Zimmerman (Senior Vice President, Corporate Security & Regulatory Affairs (CSRA)).  During his decades of employment with the company, Mr. Zimmerman has been involved in the day-to-day operations of the diversion control program at ABDC, and he has been deposed three times in opioid-related litigation.  Plaintiffs also have twice deposed David May (Vice President, CSRA), along with numerous other individuals involved in diversion control efforts.  This extensive record surely provides Plaintiffs with what they need on ABDC's diversion control efforts in West Virginia.  And it dwarfs the "over two pages" of Mr. Collis's written statement to Congress—that was not personally or solely drafted by Mr. Collis—that Plaintiffs tout as relating to ABDC's diversion control program.  And no witnesses ever have indicated that only Mr. Collis could speak to any particular topic related to diversion control.

The documents Plaintiffs cite in their Motion do not establish the need to depose Mr. Collis.  To the contrary, the documents undercut Plaintiffs' position.  For example, Plaintiffs note that "Mr. Collis signed follow-up letters to the Energy & Commerce Committee."  *Id.* at 7 & n.13 (citing Ex. 10).  But the primary purpose of the two-paragraph letter sent on Mr. Collis's letterhead was to briefly highlight the importance of cooperation with DEA and to attach a much more

detailed letter sent to DEA *by David May*.[3]  Plaintiffs likewise claim that Mr. Collis "exchanged emails discussing communication strategies around the hearing," but the one email chain they cite does not include any emails sent to, from, or even copying Mr. Collis.  Plaintiffs' Motion at 7 & n.15 (citing Ex. 11).

For similar reasons, Plaintiffs' citations to Mr. Collis's other written and public statements do not help them.  Contrary to Plaintiffs' unsupported assertion, Mr. Collis has not "held himself out as an active and uniquely informed advocate for ABDC"—let alone on "multiple occasions." *See id.* at 11.  Plaintiffs first cite an internal email—which did not include Mr. Collis—discussing an article about Mr. Collis's speech to the Philadelphia Chamber of Commerce that touched upon diversion control issues.  *Id.* at 12 & n.35 (citing Ex. 33).  Plaintiffs' logic here suffers from its consistent flaw.  The mere fact that Mr. Collis has discussed high-level diversion control issues does not make him ***uniquely*** situated to provide deposition testimony on that topic.

Plaintiffs also point to an article published under Mr. Collis's byline on LinkedIn.  *Id.* at 12 & n.36 (citing Ex. 34).  But the fact that this article was published under Mr. Collis's name does mean that he exclusively authored it (chief executives often do not), and does not mean that he is the only person who can testify about the article or the topics discussed in the article.  Indeed, Mr. Weissman testified that he participated in the drafting of this article.[4]  And, Mr. Weissman has never indicated that ***only*** Mr. Collis could provide testimony on the article or the issues discussed therein.

Plaintiff's contention that certain of Mr. Collis's statements "evidence a unique understanding and deep level of personal involvement with ABDC's compliance measures" is an exaggeration.  *See* Plaintiffs' Motion at 12.  Indeed, the fact that ABDC operates secure

---

[3]   This enclosed letter from Mr. May to DEA was omitted from the exhibits to Plaintiffs' Motion.  *See* ABDCMDL00269435 to 36.

[4]   Excerpt from Gabe Weissman Dep. at 83:5-20, attached hereto as Exhibit A.

warehouses, ships controlled substances only to appropriately licensed entities, reports suspicious orders, and employs teams of experts to do so—as touted in note 37 of Plaintiffs' Motion—is basic information available on the Company's website, in numerous press releases, and through many existing deposition transcripts.

Finally, contrary to Plaintiffs' misrepresentations, ample discovery already has covered the well-documented view of the entire distribution industry that DEA's definition of a suspicious order is vague. For example, Chris Zimmerman testified about this very issue, explaining that while certain DEA regulations are "black-and-white," the definition of a suspicious order is "very open-ended," "not very specific at all," and "a gray area."[5] Indeed, HDA, on behalf of the industry, has been pursuing this issue with DEA for years.[6]

### 2. Mr. Collis Does Not Have Unique, Personal Knowledge Related to ABDC's Diversion Control Program

Plaintiffs next claim that Mr. Collis was "actively and directly involved in ABDC's compliance program, including by personally interacting with ABDC's customers concerning their thresholds." Plaintiffs' Motion at 13; *see also id.* at 5 (claiming that documents show each executive's "personal involvement in setting threshold levels"). This is false.

Indeed, the materials Plaintiffs cite show that Mr. Collis *was not involved* in the day-to-day operation of the company's diversion control efforts. Plaintiffs first point to a customer—located in California, no less—who contacted Mr. Collis with a question about his account. *Id.* at 13 & n.39 (citing Ex. 36). But this document is unremarkable in the context of a business with a customer-service component: customers sometimes unilaterally escalate complaints to company

---

[5]   Excerpt from Chris Zimmerman Dep. (Aug, 3, 2018) at 180:24-182:16, attached hereto as Exhibit B.

[6]   *See, e.g.*, June 1, 2011 Letter from HDMA to DEA with enclosure (ABDCMDL00284393 to 408, at ABDCMDL00284394) (summarizing a meeting between HDMA and DEA where HDMA explained that the suspicious order definition has limited practical value and is "very subjective").

management.  Plaintiffs state that this email resulted in a call to discuss the customer, but failed to note is that this call ***did not include Mr. Collis***.  *Id.* (Ex. 36).  Indeed, the document shows that Mr. Collis forwarded the email, without comment, to Mr. Zimmerman, who then scheduled a call with his team, not including Mr. Collis.  This makes sense as Mr. Collis is not a member of the Diversion Control team.

None of the other documents Plaintiffs cite show Mr. Collis's involvement in any day-to-day diversion control efforts.  For example, in Exhibit 37, Mr. Collis forwards a customer inquiry to other employees who then remove Mr. Collis from the email chain and proceed to discuss it further.  Exhibit 38 (related to the same California customer) does not show any additional involvement by Mr. Collis.  And Exhibit 39 demonstrates Mr. Collis's ***lack*** of knowledge and involvement.  In that document, Mr. Collis forwards an inquiry from that same customer to Mr. Zimmerman, explaining: "I am just forwarding this to you as [I] don't know who at CSRA or the region is handling these controlled substances issues for [t]his customer."  *Id.* (Ex. 39).

Plaintiffs' citation to a 2010 California licensing document is similarly unavailing.  *Id.* at 13 & n.42 (citing Ex. 40).  Beyond having no relevance to West Virginia, this document relates to specific California regulatory requirements for corporate "officer" information.  And the affidavit signed by Mr. Collis, which relates only to corporate compliance information and does not include any information known only by Mr. Collis, states that any questions regarding the information should be directed to Mr. Zimmerman or the Company's General Counsel, John Chou.  *Id.* Ex. 40 at ABDCMDL03902334.

In short:  Mr. Collis has never been involved in "setting thresholds," no documents show he has, and it is an outright misstatement to say otherwise.  He also does not have any unique information related to the company's diversion control program.  Indeed, the documents Plaintiffs

have cited show that others are better suited to testify on this topic, including Mr. Zimmerman and Mr. May—both of whom have already done so, at great length.

Finally, to the extent Plaintiffs believe they need additional discovery on the operation of ABDC's diversion control program in this case, they have already sought such discovery through their Notice for additional 30(b)(6) testimony, which includes ten proposed topics related to the operation of ABDC's diversion control program.  While ABDC has separately objected to that Notice on various grounds, including overbreadth and burden, the parties have started a productive meet-and-confer process and ABDC expects to provide a corporate designee once the parties reach agreement on a reasonable set and scope of topics.

### 3.    Mr. Collis Does Not Have Unique, Personal Knowledge Related to Government Affairs

Plaintiffs next attempt to justify their request for Mr. Collis's apex deposition by pointing to his involvement in government affairs and lobbying-related issues.  *Id.* at 14-15.  Here again, the documents Plaintiffs cite defeat their motion because they show that many other individuals were involved in these topics and that Mr. Collis does not have unique, person knowledge.

For example, Plaintiffs claim that Mr. Collis "reviewed requests for HDA to provide testimony in support of it, as well as actual drafts of the testimony that HDA would offer." *Id.* at 14 & n.44 (citing Exs. 41 & 42).  But the documents Plaintiff cite show only that Mr. Collis—and several others—***received emails*** on this topic.  Neither of these documents includes any response from Mr. Collis.  The mere ***receipt*** of emails on a topic surely does not justify an apex deposition. *See Conforto v. Mabus*, No. 12cv1316, 2014 WL 12560881, at *7 (S.D. Cal. Sept. 24, 2014) (recognizing that discovery was not warranted from certain apex individuals who had merely received emails about the issue in the litigation).  Indeed, by its very nature, receipt of an email indicates that another individual could testify—namely, the sender.

Other documents Plaintiffs cite demonstrate that several other individuals were involved in lobbying activities.  Those individuals include Rita Norton (Senior Vice President, Government Affairs), who was deposed in the MDL, and others who also have been deposed.  Indeed, Plaintiffs' assertion that Exhibit 45 "confirm[s] that Mr. Collis, *among others*, was a critical part of ABDC's lobbying" itself makes ABDC's point.  *See id.* at 14 n.45 (emphasis added).  Indeed, that document recognizes the "dedicated guidance and support of Chris Zimmerman, Steve Mays, and David May," all of whom "made countless trips to Washington over the past 3 years to educate policymakers."  *Id.* Ex. 45.[7]  Plaintiffs' description of Exhibit 46—stating that "Mr. Collis was *a part of* ABDC's lobbying"—also makes ABDC's point.  *Id.* at 14 n.45 (emphasis added).

Finally, Plaintiffs are wrong again when they Plaintiffs write that following *60 Minutes* coverage, Mr. Collis "was again involved in ABDC's attempts to address the bill."  *Id.* at 14.  The documents they cite to support that statement are media update emails sent to *over 50 people*, with no emails sent by Mr. Collis.  *Id.* at 14 & n.46 (citing Exs. 48 & 49).

### 4.  Mr. Collis Does Not Have Unique, Personal Knowledge Related to Litigation Concerning Distribution in West Virginia

Plaintiffs' final attempt to show that they can meet their burden to show they need Mr. Collis's deposition—by claiming that he "was involved in ABDC's response concerning distribution litigation in West Virginia"—is similarly unsuccessful.  *See id.* at 15.

Plaintiffs first point to the entirely unremarkable fact that Mr. Collis was "*informed of* news" that the West Virginia Attorney General had filed a lawsuit and then "*informed of* rumors" relating to a potential subsequent lawsuit.  *Id.* (emphasis added).  Suffice to say, being "informed" that your company has been or may be sued is not a basis to obtain an apex deposition.[8]  It also,

---

[7]   *See also id.* Ex. 50 (noting that Chris Zimmerman had met with legislators).

[8]   Mere awareness of an issue does not render a witness uniquely suited to testify as to it.  *See HCP Laguna Creek CA, LP v. Sunrise Senior Living Mgmt., Inc.*, No. 3-10-0220, 2010 WL 890874, at *4 (M.D. Tenn.

by definition, indicates that a better-informed individual provided the information.  The letter from Senator Manchin directed to Mr. Collis's attention likewise does nothing to meet Plaintiffs' burden.  *Id.* at 15 & n.49 (citing Exs. 54 &55).  Indeed, that document shows that Mr. Collis was not invited to a subsequent discussion to formulate a plan in response to the letter.  *Id.* Ex. 55.

And Plaintiffs yet again grossly misrepresent the record when they claim that Mr. Collis was "involved in discussions to formulate ABDC's 'game plan' to address West Virginia opioid issues, made trips to Capitol Hill to meet with Senators about West Virginia, and received communications about the same."  *Id.* at 15 & n.50.  The document they cite for that proposition, Exhibit 56, is an email chain sent to 10 other people that contains only the text of a news article about the heroin epidemic in one Pennsylvania county, with no discussion whatsoever related to any other topic.  While this is no doubt a serious and important topic, it does not establish any need for Mr. Collis's deposition testimony concerning meetings on Capitol Hill.

### B. Plaintiffs Have Made No Efforts to Seek this Discovery By Less Burdensome Means

Plaintiffs have not identified any topic on which Mr. Collis has personal or unique knowledge.  But even if they had, the inquiry would not stop there.  Plaintiffs also must show that the information cannot be obtained in a less burdensome way—for example, through depositions of lower-level employees or other discovery methods like written interrogatory responses.  *In re C. R. Bard*, 2014 WL 12703776, at *4.  Plaintiffs cannot meet this second requirement and, in fact, do not even try to do so.

Plaintiffs' Motion does not point to *any* steps they took (other than their Motion itself) to demonstrate that *only* Mr. Collis can testify on any given subject.  For example, they do not point

---

Mar. 8, 2010) (recognizing that the apex doctrine applies where "an 'apex' employee . . . was only generally aware of or aware after the fact of the decision or conduct of lower level employees").

to a single witness who could not answer a relevant question or who directed them to Mr. Collis as the more appropriate source of information.  Plaintiffs' failure in this regard is even more notable given the extensive discovery record available to them.  Their failure to make the required showing is not for lack of opportunity.  As set forth above, Plaintiffs have taken extensive discovery related to the topics at issue in this motion, including transcripts from more than 30 ABDC witnesses.  *None* of these deponents testified that *only* Mr. Collis would be able to testify as to *any* particular topic—let alone any topic relevant to this litigation.

In fact, Mr. Collis's name has come up in only *two of the 19* MDL depositions:  First, Gabe Weissman (Senior Vice President, Communications) testified that he (Mr. Weissman) participated in the drafting of an article eventually published under Mr. Collis's byline.[9]  Second, Rita Norton (Senior Vice President, Government Affairs) testified that she was responsible for educating Mr. Collis (and others) on various topics, that Mr. Collis served on various industry group board and committees, and that Ms. Norton took notes during Mr. Collis's testimony before Congress.[10] Simply put, there is nothing in the voluminous deposition record that demonstrates the need for Mr. Collis's deposition testimony.

Further, while *all* of the depositions that have been taken in this litigation post-date the Congressional hearing, Plaintiffs have essentially ignored the topic until now.  Indeed, at Ms. Norton's deposition, Plaintiffs confirmed that she took notes during Mr. Collis's Congressional testimony, asked her why she did so (the answer being:  "Just in case there was any follow-up or anything."), and then moved on.[11]

---

[9]    Gabe Weissman Dep. (Ex. A) at 83:5-84:4.

[10]    Excerpts from Rita Norton Dep. at 21:14-22:19, 46:20-24, 51:17-54:13, 86:8-20, 320:1-17, attached hereto as Exhibit C.

[11]    *Id.* at 320:13-17.

### C.    Plaintiffs' Attempt to Take Mr. Collis's Deposition Is Designed to Burden and Harass ABDC

Given all of this, Plaintiffs' Motion also should be denied for the additional reason that it is unduly burdensome and nothing more than an attempt to harass Mr. Collis and the Company. The apex doctrine exists precisely to prevent such burdens and harassment, as *In re C.R. Bard* recognizes. While Plaintiffs cite *Bard* for the proposition that an apex deposition may be warranted in an MDL setting, its reasoning actually shows why a deposition is ***not*** warranted here.

In *Bard*, the court noted that "[t]he rationale behind the apex doctrine is that, without the required showing, high-level executives will be exposed to repetitive, abusive, and harassing depositions." 2014 WL 12703776, at *5; *see also id.* at *4 ("As a general rule, an effective way to harass and abuse a large multinational corporation in litigation is to notice the deposition of one of it high-level executives."). The court then went on to explain that "[t]hat concern is not present" because "[t]o the contrary, Plaintiffs propose to take [the executive's] deposition just once for use in approximately 10,000 cases currently pending in this MDL and in state courts." *Id.* at *5.

Here, unlike in *Bard*, there is a very real concern that Mr. Collis would be subject to repeated depositions. Indeed, plaintiffs in state court in New York sought apex trial testimony from Mr. Collis, which the court denied in response to the same general reasoning set forth in this opposition brief.[12] And there is a live dispute as to a request for Mr. Collis's deposition in Pennsylvania state court.

While this litigation includes many cases consolidated in the federal MDL, there also are three cases remanded to federal court for separate trials (including this case) and hundreds of cases pending in state courts around the country. Indeed, ABDC is involved in active discovery in 20

---

[12]   The New York Court's Order denying the request for Mr. Collis's testimony is attached hereto as Exhibit D.

different states, and counting.  And unlike a traditional mass tort case of the type at issue in *Bard*, the plaintiffs here are all seeking information about their specific jurisdictions.  For example, Plaintiffs' Motion purports to focus on West Virginia specifically.  The concerns of "repetitive, abusive, and harassing depositions" is very much an issue here, and a further reason to deny Plaintiffs' Motion. *See In re C. R. Bard*, 2014 WL 12703776, at *5.

That Mr. Collis's deposition is an attempt to burden and harass the Company is further evidence by the fact that Plaintiffs are seeking *either deposition or trial testimony* from Mr. Collis, and would be willing to forego a deposition if ABDC agrees Mr. Collis will appear at trial.  *See* Plaintiffs' Motion Ex. 66.  In other words, Plaintiffs do not need this testimony now, during discovery.  They simply want to exert undue pressure on the Company by hauling its CEO to the stand.

## IV.    CONCLUSION

Plaintiffs wholly fail to meet their burden to establish the necessity of deposition testimony from Mr. Collis.  For the reasons set forth above, ABDC respectfully requests that the Court deny Plaintiffs' Motion to Compel as it relates to Mr. Collis.


Dated:  June 15, 2020                        Respectfully submitted,

                                             **AmerisourceBergen Drug Corporation**
                                             By Counsel:

                                             */s/ Gretchen M. Callas*
                                             Gretchen M. Callas (WVSB #7136)
                                             JACKSON KELLY PLLC
                                             Post Office Box 553
                                             Charleston, West Virginia 25322
                                             Tel: (304) 340-1000
                                             Fax: (304) 340-1050
                                             gcallas@jacksonkelly.com

_/s/ Robert A. Nicholas_
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned counsel hereby certifies that on this 15th day of June, 2020, the foregoing

***Opposition To Plaintiffs' Motion To Compel The Deposition Of Steven H. Collis*** was served

upon counsel of record electronically.


<u>*/s/ Gretchen M. Callas*</u>
Gretchen M. Callas (WVSB #7136)