## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

THE CITY OF HUNTINGTON,
     Plaintiff,

v.                                        Civil Action No. 3:17-01362

AMERISOURCEBERGEN DRUG
CORPORATION, *et al.*
     Defendants.

_____

CABELL COUNTY COMMISSION,
     Plaintiff,

v.                                        Civil Action No. 3:17-01665

AMERISOURCEBERGEN DRUG
CORPORATION, *et al.*
     Defendants.

### PLAINTIFFS' OPPOSITION TO DEA'S OBJECTION TO SPECIAL MASTER'S DISCOVERY RULING NO. 6

Plaintiffs The City of Huntington and Cabell County Commission (collectively, "Plaintiffs") submit this Opposition to the U.S. Drug Enforcement Agency's ("DEA's") Objection to the Special Master's Discovery Ruling No. 6 (Doc. 519) ("DR-6"). In DR-6, Special Master Wilkes granted in part and denied in part Plaintiffs' motion to compel DEA to produce documents relating to Defendants' West Virginia pharmacy customers. He ordered DEA to produce jurisdiction-specific documents involving ten pharmacy stores located in or just outside Huntington and Cabell County.

## INTRODUCTION

"Since becoming United States Attorney, our number one priority has been a sense of urgency to fight the opioid epidemic. We fight that fight with every tool we have every day.

-Michael B. Stuart, United States Attorney, Southern District of West Virginia, April 23, 2019 Press Release

Despite public statements to the contrary, the U.S. Department of Justice (DOJ) and DEA refuse to comply with a lawful subpoena seeking disclosure of the facts and circumstances regarding notorious pill mills in Huntington, Cabell County, West Virginia. Special Master Wilkes's ruling enforcing most of Plaintiffs' subpoena requests is narrowly tailored toward jurisdiction-specific discovery directly relevant to this litigation. Plaintiffs have spent over a year jumping through procedural obstacles only to be stonewalled on crucial facts. Plaintiffs ask this Honorable Court to enforce DR-6 and order DEA to produce documents as it compels.

The Special Master's ruling requires DEA to produce documents relating to purchases and sales of prescription opioids by *ten* specific pharmacy stores located in or just outside Huntington and Cabell County. *See* DR-6 at 4-10 (Requests 1-7). These stores' purchases and sales clearly are relevant to Plaintiffs' claims that Defendants unlawfully failed to maintain effective controls against diversion of the opioids they sold to pharmacies in and around Plaintiffs' jurisdictions. *See In re Nat'l Prescr. Opiate Litig.*, 2019 U.S. Dist. LEXIS 141126, at *95 (N.D. Ohio Aug. 20, 2019) (experts' analyses of pharmacy store ordering patterns "are both relevant and helpful to resolving issues in this case, including . . . whether [Distributor] Defendants employed reasonable measures to identify potentially suspicious orders[.]").

DEA objects that the Special Master applied the wrong legal standard.  It argues that its compliance with Plaintiffs' subpoena is governed by DOJ's *Touhy* regulations and is subject to review only under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*. DEA relies upon

Fourth Circuit cases addressing subpoenas issued outside of federal court and thus not governed by Fed. R. Civ. P. 45. *See COMSTAT Corp. v. Nat'l Science Found.*, 190 F.3d 269, 271 (4th Cir. 1999) (subpoena issued by arbitrator); *Smith v. Croner*, 159 F.3d 875, 877 (4th Cir. 1998) (subpoena in state court case). Rule 45 applies to and governs these federal court actions, just as the MDL Court held in rejecting the same argument by DEA. *See In re Nat'l Prescr. Opiate Litig.*, No. 1:17-md-2804, 2018 U.S. Dist. LEXIS 90002, at *57 (N.D. Ohio April 11, 2018) ("[T]he Court examines the DEA's objections under the standard set out in Fed. R. Civ. P. 45.").

Even if the *Touhy* regulations and the APA controlled, the Special Master still correctly ordered DEA to produce the requested documents. These documents concerning Defendants' sales to pill mill pharmacies in and near Cabell County are clearly relevant to Plaintiffs' claims. Their production and disclosure also serve the public interest and the DEA's own public health protection objectives, as also recognized by the MDL Court:

> There is overwhelming need for the Plaintiffs in this case to learn the truth surrounding marketing and distribution of opioids, including what the manufacturers, distributors, retailers, and DEA knew and then they knew it . . . .
>
> The objective of the DEA is protection of the public and regulation of dangerous drugs. . . . [P]roducing the requested information will only serve to strengthen those objectives by revealing ways the system failed. . . . Therefore, the Court finds that DEA's bases for refusal to produce the requested data are arbitrary and capricious.

*Id.*, at *74; *see also HD Media Co., LLC v. U.S. Dep't of Justice*, 927 F.3d 919, 934 (6th Cir. 2019) ("The [DEA's] ARCOS data will aid us in understanding the full enormity of the opioid epidemic and might thereby aid us in ending it."). The same reasoning applies here.

The pharmacy stores at issue present stark examples of high-volume diversion of prescription opioids in Plaintiffs' communities. For example, SafeScript Pharmacy in Huntington diverted more than 180,000 Hydrocodone pills between May 2007 and May 2011. The vast

majority of SafeScript's opioid dosage units were distributed by Defendant AmerisourceBergen

Drug Corporation ("ABDC"). A full accounting of the facts that would have been evident to

Defendants in supplying these pharmacies is important both to establishing their liability and to

the public interest in understanding and abating the opioid epidemic in these jurisdictions. The

Court therefore should deny DEA's objection and enforce DR-6.

## **PROCEDURAL HISTORY**

On March 19, 2020, Plaintiffs served a *Touhy* letter and subpoena to produce documents

upon DEA.  *See* DEA Ex. E (Doc. 573) (3/19/20 Letter and Notice of Service of Subpoena).

Plaintiffs' subpoena contained nine requests for production of documents.

Plaintiffs' first six requests identified six specific pharmacy stores in or near Plaintiffs'

jurisdictions:

- Safe Script Pharmacy No. 6, located in Huntington;

- A+ Care Pharmacy, located in Barboursville;

- McCloud Family Pharmacy, located in Huntington;

- Drug Emporium, located in Barboursville;

- S & F Pharmacy, d/b/a Fruth Pharmacy Store #12; and

- Fruth Pharmacy of Milton, Inc.;

and for these six stores, asked DEA to produce:

> All documents relating to [pharmacy store], include, but not limited to, all
> documents relating to or reflecting the purchase, sale, distribution or dispensing of
> opioids or other controlled substances by [pharmacy store] or the investigation or
> prosecution of [pharmacy store] related to opioids.

*Id.*, Subpoena-Schedule A, Requests 1-6.

Plaintiffs' seventh request sought the same types of information for four CVS Pharmacy

and/or West Virginia CVS Pharmacy, LLC stores, all located in Huntington:

- CVS store operating with DEA # BR4365486, located at 2901 Fifth Ave.;

- CVS store operating with DEA # BR4301545, located at 505 Twentieth St.;

- CVS store operating with DEA # BR4321787, located at 447 W. Washington Ave.;

- CVS store operating with DEA # AR6055025, located at 5179 U.S. Rte. 60E.

*Id.*, Subpoena-Schedule A, Request 7.[1]

DEA refused to produce any of these documents.  *See* DEA Ex. F (Doc. 573) (DEA, April 24, 2020 Letter) at 8.  Instead, it rested upon its objections that Plaintiffs' document requests:

- were unreasonably cumulative and duplicative under Fed. R. Civ. P. 26(b)(2)(C), *id.* at 3-4;

- failed to provide a summary of information sought or statement or relevance, as required by 28 C.F.R. § 16.22(c)-(d), *id.* at 4-6;

- were overly broad and unduly burdensome under Fed. R. Civ. P. 26 and 45, *id.* at 6;

- sought law enforcement-sensitive information that was privileged under 28 C.F.R. § 1626(b)(5), *id.* at 7; and

- sought information that is available from other sources, including defendants, *id.* at 7-8.

After meet and confer efforts failed, Plaintiffs moved to compel DEA to produce the requested documents on May 1, 2020. *See* Plaintiffs' Motion to Compel (Doc. 385). DEA opposed the motion on May 12, 2020. *See* DEA Memorandum in Response (Doc. 415).

---

[1] Plaintiffs' eighth and ninth requests sought the same types of information for all CVS Pharmacy and/or West Virginia CVS Pharmacy, LLC and Rite Aid Pharmacy, Inc. stores operating within the State of West Virginia.  *See id.*, Subpoena-Schedule A, Requests 8-9. The Special Master denied these two requests. *See* DR-6 at 10-11. Even so, Plaintiffs' nine document requests related to specific West Virginia pharmacy stores were far more tailored to this case than Defendants' DEA subpoena, also currently before the Court, which requested 36 categories of documents, some covering subjects national in scope and not limited to these jurisdictions or to West Virginia.  *See* DR-5 (Doc. 474) (addressing Defendants' DEA requests).

Special Master Wilkes issued DR-6 granting Plaintiffs' motion in part and denying it in part on June 5, 2020. He found initially that Plaintiffs complied with the *Touhy* regulations by providing detailed statements of relevancy in their request letter and that their requests "do not seek disclosure of information prohibited from disclosure." DR-6 at 2. He next held that Plaintiffs' subpoena is governed by Fed. R. Civ. P. 45, and not the APA. *See id.* at 3.

In applying Rule 45, the Special Master held that Plaintiffs' Requests 1-7 seek information relevant to Defendants' conduct at issue and ordered DEA to produce responsive documents. *See id.* at 3-10.[2] However, the Special Master denied Plaintiffs' Requests 8-9 seeking information concerning Defendants' sales to chain pharmacies in West Virginia outside of Plaintiffs' jurisdictions. He found these requests to be unduly burdensome on DEA based upon DEA's affidavit of its Acting Diversion Group Supervisor in its Charleston, West Virginia District Office. *See id.* at 10-11 (citing Affidavit of Heather Wehrle (Doc. 415-6)).

On June 12, 2020, DEA filed its Objection to DR-6 seeking to avoid producing any of the foregoing documents to Plaintiffs. *See* Objection (Doc. 571).

## ARGUMENT

### A. The Special Master Properly Applied Rule 45.

DEA's primary objection is that Plaintiffs' motion to compel it to produce documents should not be governed by Rule 45, but by the APA instead. *See* Objection at 1, 6-9. The Special Master correctly rejected this argument.

The case law on which DEA relies for this argument addressed actions filed outside of federal court to which Rule 45 did not apply. In *COMSTAT Corp. v. Nat'l Science Found.*, 190

---

[2] The Special Master narrowed the scope of documents to be produced for each Request by eliminating the phrase "including but not limited to" from each Request and narrowing the relevant time period from 1996-present to 2000-2018. *See id.*

F.3d 269 (4th Cir. 1999), the Fourth Circuit addressed an agency's appeal from an order requiring it to comply with deposition subpoenas issued by an arbitrator in a private party dispute. *See id.* at 272-74. The Court held that the arbitrator lacked authority under the Federal Arbitration Act to compel non-parties to appear at depositions. *Id.* at 275-76. In *Boron Oil Co. v. Downie*, 873 F.2d 67 (4th Cir. 1989), the Court addressed a federal agency's removal of a state court action to which it was not a party but in which the state court had compelled an agency employee to testify, *id.* at 68, and held that the district court lacked removal jurisdiction because the state court itself lacked jurisdiction to proceed against the federal employee. *Id.* at 70. In neither case did the Fourth Circuit rule upon the relationship between the APA and Rule 45, nor could it, since both cases addressed orders issued by authorities other than a federal court.

The MDL Court, by contrast, directly addressed the relationship between Rule 45 and the APA as applied to document requests to the DEA. This decision involved MDL plaintiffs' requests for data contained in DEA's Automated Records and Consolidated Orders System ("ARCOS"). *See* 2018 U.S. Dist. LEXIS 90002, at *46. The MDL Court noted authority under which "'[a] federal-court litigant . . . can seek to obtain the production of documents from a federal agency by means of a federal subpoena.'" *Id.* at *55 (quoting *Houston Bus. Journal, Inc. v. OCC*, 86 F.3d 1208, 1212 (D.C. Cir. 1996)). After also noting divided authority over whether Rule 45 or the APA governs review of an agency's refusal to comply, the MDL Court agreed with authority holding that "Federal Rule of Civil Procedure 45 and various available privilege rules provide sufficient limitations on discovery to adequately address legitimate governmental interests in objecting to a motion to compel compliance *with a valid federal court subpoena*." *Id.* at *56 (emphasis added); *see also id.* at *57 ("Accordingly, the Court examines the DEA's objections under the standard set out in Fed. R. Civ. P. 45(b).").

The Special Master thus ruled correctly in applying the same Rule 45 standard here that would apply to Plaintiffs' discovery requests if made when this case was before the MDL Court. *Cf.* 18B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (2d ed. 1987), § 4478.4 (Law of the Case-Coordinate Courts) (the "very purpose of the initial consolidation is to resolve common matters consistently *across the consolidated cases.*") (emphasis added).

The Court thus should deny DEA's objection to the extent it is based upon the APA's application and should enforce the Special Master's ruling as a correct application of Rule 45.[3]

**B.      The Special Master's Discovery Ruling is Correct Even if the APA Applies.**

DEA seeks application of the APA's standard for reviewing executive agency action. *See* Objection at 10; *see also* 5 U.S.C. § 706 (2)(A) ("The reviewing court shall . . . hold unlawful and set aside agency action . . . found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"); *COMSTAT*, 190 F.3d at 277 ("[C]ourts may reverse an agency's decision not to comply only when the agency has acted unreasonably."). Even under this standard, however, the Special Master correctly ordered DEA to produce documents on the ordering and sales practices of pharmacy stores in Plaintiffs' jurisdictions.

The U.S. Department of Justice's ("DOJ's") *Touhy* regulations direct Department officials and attorneys to consider, in responding to a demand, "[w]hether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose." 28 C.F.R. § 16.26(a)(1). The scope of production under Rule 45 thus is relevant to DEA's duty to produce. Disclosure is permitted if "the administration of justice requires" it, including if "disclosure is necessary to pursue a civil . . . prosecution" based upon consideration of:

(1) The seriousness of the violation . . . involved,

---

[3] DEA does not argue that the Special Master's ruling was erroneous if Rule 45 applies.

(2) The past history . . . of the violator . . . ,

(3) The importance of the relief sought,

(4) The importance of the legal issues presented,

(5) Other matters brought to the attention of the Deputy or Associate Attorney General.

28. C.F.R. § 1626(c).

These are the same factors the MDL Court addressed when it overruled DEA's objections to producing its ARCOS data at the outset of the litigation. Although the MDL Court held that Rule 45 governed, *see* 2018 U.S. Dist. LEXIS 90002, at *57, it also found that production would be required under the APA and DOJ's *Touhy* regulations in any event. It did so based upon the MDL Plaintiffs' compelling litigation needs, the strong public interest in production of this data, and the strong public health considerations that underpin the DEA's own activity in this area:

> There is overwhelming need for the Plaintiffs in this case to learn the truth surrounding marketing and distribution of opioids, including what the manufacturers, distributors, retailers, and DEA knew and when they knew it; what, if anything, was kept, intentionally or unintentionally, away from the DEA and the public by defendants, and what, if anything, the DEA kept, intentionally or unintentionally, from the States, counties, and cities that have filed the MDL lawsuits.
>
> Moreover, disclosure of the years-old ARCOS data will further the objectives of the DEA without damaging its ability to continue to pursue those objectives. The objective of the DEA is protection of the public and regulation of dangerous drugs. . . . [P]roducing the requested information will only serve to strengthen those objectives . . . .

*Id.* at *74-75; *see also HD Media*, 927 F.3d at 933 ("The ARCOS data will aid us in understanding the full enormity of the opioid epidemic and might thereby aid us in ending it."). Based upon these findings of litigation necessity and strong public health interests, the MDL Court concluded that "DEA's bases for refusal to produce the requested data are arbitrary and capricious." 2018 U.S. Dist. LEXIS 90002 at *75-6.

These considerations likewise support the Special Master's ruling here compelling DEA to produce documents responsive to Plaintiffs' far narrower requests related to ***ten*** pharmacy stores located in or around Huntington and Cabell County. *See* DEA Ex. E (Doc. 573) (3/19/20 Letter and Notice of Service of Subpoena), Subpoena-Schedule A, Requests 1-7. These stores appear to present stark examples of the large-scale diversion of prescription opioids that Defendants should have identified but utterly failed to prevent.

As discussed, DEA has alleged that SafeScript Pharmacy in the City of Huntington (Request No. 1) ordered 860,000 doses of Hydrocodone between May 2007 and May 2011, while it dispensed only 677,000 doses during this period. *See* Ironton Tribune, South Point Man at center of Huntington drug probe, Feb. 22, 2012.[4] Most of SafeScript's opioid dosage units were distributed by Defendant ABDC. Similarly, McCloud Family Pharmacy in Huntington (Request No. 3) dispensed almost 4.5 million hydrocodone and oxycodone pills from 2006 to 2014, while S&F Pharmacy (Fruth) (Request No. 6) dispensed almost 5 million hydrocodone and oxycodone pills during the same time period.  The requested documents thus are highly relevant and the Special Master ruled correctly that DEA should produce them.

## C.    DEA's Remaining Objections Have No Merit

DEA's remaining objections to the Special Master's ruling are likewise unreasonable and thus are not grounds for refusing Plaintiffs' requests under either the APA or Rule 45.

### 1.    Cumulative Burden

DEA contends that the "cumulative burden imposed on DEA by Opioid-related litigation requests" justifies its refusal of Plaintiffs' requests regardless of their relevance. Objection at 11. It does not. Another MDL court considered the same type of argument made by the Food and

---

[4] Available at https://www.irontontribune.com/2012/02/22/south-point-man-at-center-of-huntington-drug-probe/.

Drug Administration (FDA) and held that courts must assess each request on a case-by-case basis, and not deny an appropriate request based solely on what another party has requested. *See In re Vioxx Prods. Liab. Litig.*, 235 F.R.D. 334, 345 (E.D. La. 2006) ("The FDA need not go sleepless fearing endless depositions. This ruling is not a blank check written to the PSC, Merck, or any other litigant. To the extent that Merck may seek its own depositions and to the extent that future litigants may seek depositions in different cases, the FDA is not powerless. It will be able to file a motion to quash. At that time, this Court, or whichever court the motion is filed in, must make its own determination as to the merits of each individual case."). This has to be correct, lest any party's right to discovery of clearly relevant information be constrained or abrogated by the fortuity of what some other party has requested. *Cf  Yetiv v. U.S Dep't of Housing and Urban Devel.*, 503 F.3d 1087, 1091 (9th Cir. 2007) ("Relying on irrelevant factors renders an agency adjudication arbitrary and capricious.").

## 2.      Law Enforcement Considerations

The Court also should reject DEA's objection that the "additional burden on DEA to identify and redact law enforcement sensitive information" justifies wholesale denial of Plaintiffs' document requests. Objection at 14. By this reasoning, DEA would never have to produce relevant evidence for a company it has investigated since even a request *excluding* such documents still would burden DEA with determining what is and is not "law enforcement sensitive information." The Department of Justice's regulations, however, require DEA to do exactly this.  *See* 28 C.F.R. § 16.26(a)(2) ("In deciding whether to make disclosures pursuant to a demand, Department officials and attorneys should consider . . . [w]hether disclosure is appropriate under the relevant substantive law concerning privilege."). DEA's argument here, if accepted, would relieve the agency from having to comply with its own regulation.

Even as to law enforcement-related materials, the Department's regulations do not provide for a blanket exclusion from discovery. Instead, they permit withholding if "[d]isclosure would reveal investigatory records compiled for law enforcement purposes, *and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired.*"  28 C.F.R. § 16.26(b)(5) (emphasis added). Thus, Plaintiffs' inclusion of documents "relating to . . . investigation or prosecution" within their requests is not *per se* prohibited.

This is what the MDL Special Master recently found in rejecting a similar argument by DEA. In ruling upon DEA's (and the FBI's) refusal to produce audit documents sought by one or more defendant, Special Master Cohen noted that "DOJ asserts that DEA's audit documents 'reveal investigative methods,' including . . . 'key investigative decisions' made by DEA . . . ." *In re Nat'l Prescr. Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio April 10, 2020) (Doc. 3258) at 7. He then rejected DOJ's privilege assertion as "clearly hyperbolic" because, for example, "it is hard to imagine that a distributor can somehow avoid detection of its bad acts because it knows that unannounced investigations begin at 9:00 a.m., or last for eight hours, or focus on opioids." *Id.* Moreover, he conducted an *in camera* inspection of the DEA audit documents at issue and concluded that "production of the audits will not lead to 'disclosure of law enforcement techniques and procedures, [undermine] the confidentiality of sources, [endanger] witness and law enforcement personnel, [invade] the privacy of individuals involved in an investigation, [or] otherwise . . . interfere[e] with an[y] investigation.'"  *Id.* (quoting *MacNamara v. City of New York*, 249 F.R.D. 70, 78 (S.D.N.Y. 2008)) (alterations in citing opinion).

The fact that the documents at issue here may include some related to investigations or prosecutions, rather than periodic audits, also does not support DEA's assertion of a blanket

preclusion or privilege. Federal courts recognize numerous circumstances, such as where an investigation is concluded or the subject is aware of an ongoing investigation, in which disclosure related to a law-enforcement investigation is permitted. *See*, *e.g.*, *U.S. ex rel. Brasher v. Pentec Health, Inc.*, 338 F. Supp. 3d 396, 402 (E.D. Pa. 2018) ("The fact that the Government conducted a criminal investigation does not support a finding of good cause to seal the case . . . . The investigation has concluded, Pentec was absolved, and no criminal charges were brought against Pentec. The Government has not pointed to a specific, concrete harm that has happened or is likely to happen to Pentec if the now closed criminal investigation is disclosed."); *Shapiro v. U.S. Dep't of Justice*, 153 F. Supp. 3d 253, 256-57 (D.D.C. 2016) (applying Freedom of Information Act) ("A law enforcement agency may rely on an exclusion only if a request is made for records that (1) implicate an ongoing criminal investigation if 'there is reason (i) to believe that the subject of the investigation is not aware of its pendency, and (ii) disclosure of the existence of the records could reasonably be expected to interfere with enforcement proceedings . . . .'") (quoting 5 U.S.C. § 552(c)(1)).

DEA's law enforcement and related burden arguments thus are not grounds for its wholesale rejection of Plaintiffs' requests for relevant and non-privileged documents.

### 3.    The MDL Court's Out-of-Context Statement

DEA also continues to contend that the MDL Court somehow precluded Plaintiffs from taking this discovery *after it remanded the case to this Court. See* Objection at 13-14. It did not, and could not. Judge Polster stated that he "did not believe additional discovery from the DEA was necessary or appropriate for a fair trial[,]" but that "limited jurisdiction-specific discovery in the West Virginia cases would be necessary after remand." *In re Nat'l Prescr. Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio April 17, 2020) (Doc. 3263 at 2-3). Plaintiffs' jurisdiction-specific

requests here thus are clearly "within the purview of the transferor court." *Id.* at 3.  In fact, this statement confirms that the requested discovery not only is within this Court's authority, but also is precisely the type of discovery that the MDL Court likewise deemed appropriate.

The Special Master thus properly considered and granted Plaintiffs' jurisdiction-specific document requests.

## **CONCLUSION**

For all of the reasons set forth, the DEA's objection should be denied and the Special Master's Discovery Ruling No. 6 should be enforced.

Dated: June 17, 2020

Respectfully submitted,

**THE CITY OF HUNTINGTON**

/s/ *Anne McGinness Kearse*
Anne McGinness Kearse (WVSB No. 12547)
Joseph F. Rice
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: 843-216-9000
Fax: 843-216-9450
akearse@motleyrice.com
jrice@motleyrice.com

Linda Singer
David I. Ackerman
**MOTLEY RICE LLC**
401 9th Street NW, Suite 1001
Washington, DC 20004
Tel: 202-232-5504
Fax: 202-386-9622
lsinger@motleyrice.com
dackerman@motleyrice.com

Charles R. "Rusty" Webb (WVSB No. 4782)
**THE WEBB LAW CENTRE, PLLC**
716 Lee Street, East
Charleston, West Virginia 25301
Telephone: (304) 344-9322
Facsimile: (304) 344-1157
rusty@rustywebb.com

**CABELL COUNTY COMMISSION**

/s/ *Paul T. Farrell, Jr.*
Paul T. Farrell, Jr. (WVSB Bar No. 7443)
**FARRELL LAW**
422 Ninth Street, 3rd Floor (25701)
PO Box 1180
Huntington, West Virginia 25714-1180
Mobile: 304-654-8281
paul@farrell.law

/s/ *Anthony J. Majestro*
Anthony J. Majestro (WVSB No. 5165)
**POWELL & MAJESTRO, PLLC**
405 Capitol Street, Suite P-1200
Charleston, West Virginia 25301
304-346-2889 / 304-346-2895 (f)
amajestro@powellmajestro.com

Michael A. Woelfel (WVSB No. 4106)
**WOELFEL AND WOELFEL, LLP**
801 Eighth Street
Huntington, West Virginia 25701
Tel. 304.522.6249
Fax. 304.522.9282
mikewoelfel3@gmail.com

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing PLAINTIFFS' OPPOSITION TO DEA'S OBJECTION TO

SPECIAL MASTER'S DISCOVERY RULING NO. 6 was filed electronically using the Court's

CM/ECF system and thereby was served upon all counsel registered in the system on June 17,

2020, and also was served by email to Plaintiffs' listserv at mdl2804discovery@motleyrice.com

and to Defendants' listserv at track2opioiddefendants@reedsmith.com.

/s/ Monique Christenson
Monique Christenson (SC Bar No. 104063)
**MOTLEY RICE LLC**
