**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| **CITY OF HUNTINGTON;** | : | |
| **CABELL COUNTY COMMISSION,** | | |
| | : | **Civil Action No. 3:17-01362** |
| Plaintiffs, | | **Civil Action No. 3:17-01665** |
| | : | *(Consolidated)* |
| v. | | |
| | : | |
| **AMERISOURCEBERGEN DRUG** | : | |
| **CORPORATION,** *et al.,* | | |
| | : | |
| Defendants. | | |
| | : | |

**CABELL HUNTINGTON HOSPITAL AND ST. MARY'S MEDICAL CENTER'S
RESPONSE *IN OPPOSITION* TO DEFENDANTS' MOTION TO COMPEL
AND RENEWED MOTION TO QUASH**

Cabell Huntington Hospital, Inc., ("Cabell"), and St. Mary's Medical Center, Inc., ("St. Mary's" and collectively "Hospitals"), submit herein their *Response in Opposition to Defendants' Motion to Compel* and *Renewed Petition and Motion to Quash the Defendants' Subpoenas*. For the reasons set forth below, the Hospitals respectfully request the entry of an Order denying the *Defendants' Motion to Compel* and granting the *Hospitals' Petition and Motion to Quash the Defendants' Subpoenas*, as well as any and all further relief the Court deems necessary under the present circumstances.

**I. Introduction:**

A "nonparty should not have to do the work of tailoring a subpoena to what the requesting party needs; the requesting party should have done that before serving it." This pragmatic and precedential decree arises from the recent Fourth Circuit decision of *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 188-91 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 672, 205 L. Ed. 2d 438 (Dec. 16,

2019).   Therein, the *Jordan* Court emphasized that nonparty status is given <u>special weight</u> in discovery disputes. *Id.*   And trial courts must conduct a <u>more demanding and sensitive</u> inquiry of discovery requests which have been propounded upon nonparties. *Id.* at 188-89.  While the general rule of proportionality requires the "benefits of discovery to the requesting party [to] outweigh the burdens on the recipient[,]" the protections afforded nonparties under the analysis require a heightened level of scrutiny. *Id.* (stating that nonparties are afforded a "more demanding variant" of the proportionality rule).   Under the holding in *Jordan*, the party issuing a subpoena to a nonparty bears the responsibility of narrowly tailoring that request to prevent the "<u>nonparty [from doing the work of] tailoring a subpoena to what the requesting party needs</u>." *Id.*

The Defendants' subpoenas violate the tenets set forth in *Jordan* and a myriad of similar legal authority.  They were drafted without any consideration given to the burden placed upon the nonparty Hospitals.  The subpoenas request vast and indeterminant categories of information, for the past 25 years, which 'mention or allude to' opioids.  These categories are housed in an attachment to the subpoenas which runs some eleven pages in length, including four pages of "definitions" and another three pages of "instructions."  Typical of the demands contained therein is the definition of "communications" which '<u>includes but is not limited to</u>' requests for documents of '<u>telephone conversations</u>,' '<u>face-to-face conversations</u>,' and '<u>other computer linkups</u>.'

The definition of "document" itself runs almost a page and '<u>includes but is not limited to</u>' items such as invoices, notes, manuals, photographs, microfilm, microfiche, audio recordings, and video recordings.  *Remarkably*, even the definition of opioids is '<u>not limited to</u>' opioid medications at all - but also includes any medication '<u>which produces an analgesic effect in the body</u>' - which necessarily embraces medications such as aspirin or ibuprofen.  Simply put, these subpoenas do

not survive the "more demanding and sensitive inquiry" afforded the nonparty Hospitals under the ruling in *Jordan*.

## II.    Statement of Facts:

The facts of this dispute are well known to the Court.[1]  The subpoenas issued to the Hospitals are improper and the Hospitals have objected thereto, both formally and informally. Hospitals have also requested that the subpoenas be modified for several months.  Just recently, Defendants submitted Eight (8) "Targeted Search Topics."  These "targeted" requests were submitted by email correspondence on Thursday, May 28, 2020 at 6:25 p.m.  Taking into account the Hospital's COVID-19 furlough, of which Defendants had an appreciation of, the Hospitals had only been in possession of these "targeted" requests for four (4) business days when Defendant's proceeded upon their *Motion to Compel*. (ECF No. 521).

The Hospitals were finalizing a response to these "targeted" requests when the Motion to Compel was filed.  The motion was surprising because the Hospitals had informed the Defendants of an impending production only a few days earlier.  Nevertheless, the Hospitals moved forward with their document production as agreed because it is understood that Defendants are grappling with an abbreviated timeline.  Hospitals provided approximately four thousand (4,000) pages of information responsive to the Defendants' "targeted requests."  Defendants now seek an order compelling production of documents responsive to the *original* subpoenas.

Despite the representations contained in the Defendants' motion, they never limited or modified the original subpoenas.  Hospitals would very much like to report otherwise, but it simply is not accurate.  In reality, Defendants just 'prioritized' purported sections of their subpoenas using

---

[1]  By way of reference and for the sake of brevity, Hospitals incorporate herein the facts set forth in their *Petition and Motion to Quash* (ECF No. 309), *Memorandum of Law in Support* (ECF No. 310), and *Joint Response to Defendants' Motion to Compel Third-Party Discovery* (ECF No. 471).

language which more closely resembled something that complied with the Federal Rules of Civil Procedure.  But nothing can remedy the flaws contained in these subpoenas.

The Hospitals recognize that Defendants are in the unenviable position of gathering 'jurisdictional discovery' while preparing for trial.  But that does not alleviate the need to narrowly tailor document requests or state with reasonable particularity the information being requested.  As already mentioned herein, this is especially true when propounding document requests to nonparties.  *Jordan*, 921 F.3d at 188, *cert. denied*, 140 S. Ct. 672.  It should not be forgotten that the Hospitals are also under the strain from a national emergency, and Defendants should have done the work of tailoring their subpoenas before they were submitted to the nonparty Hospitals.

The Hospitals respectfully renew their *Petition and Motion to Quash* (ECF No. 309), *Memorandum of Law in Support* (ECF No. 310), and *Joint Response to Defendants' Motion to Compel Third-Party Discovery* (ECF No. 471).  Hospitals attach hereto the "Cabell Subpoena" as **Exhibit A**, and the "St. Mary's Subpoena" as **Exhibit B**.  The Hospitals further submit this *Response in Opposition to Defendants' Motion to Compel*, as follows:

**III.    Statement of Law and Legal Argument:**

      *A.*    *Introduction:*

The Fourth Circuit recently issued a detailed analysis of the scrutiny required of document requests to nonparties in *Jordan*, 921 F.3d at 188, *cert. denied*, 140 S. Ct. 672.  Therein, the Court emphasized the distinction between a court's review of "party discovery," *i.e.,* document requests issued amongst parties to the litigation, and the "more demanding and sensitive" inquiry required by the courts of discovery sought from nonparties to the litigation. *Id.* at 188-89.  The *Jordan* Court explained, generally, that party discovery must be proportional to the needs of the case. *Id.*  And when a dispute arises from party discovery, courts should consider "whether the burden or expense

of the proposed discovery outweighs its likely benefit." *Id.* This limitation to party discovery - known as proportionality - "relieves <u>parties</u> from the burden of taking unreasonable steps to ferret out every relevant document." *Id.* at 189 (emphasis added).

The analysis is much different when discovery is sought from <u>nonparties</u>. When applying the general rule of proportionality to nonparties, "<u>its scope must be limited even more</u>." *Id.* at 189 (emphasis added). The Court explained that "[n]onparties are strangers to the litigation, and since they have no dog in [the] fight, they have a different set of expectations from the parties themselves." *Id.* (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)) (internal citations omitted). Such "[b]ystanders should not be drawn into the parties' dispute without some good reason, <u>even if they have information that falls within the scope of party discovery</u>." *Id.* (emphasis added).

The Court in *Jordan* emphasized that a "<u>more demanding variant</u>" of the proportionality rule arises when a subpoena issued against a nonparty "subjects a person to undue burden." *Id.* (citing Fed. R. Civ. P. 45(d)(3)(A)(iv)). In those instances, the "ultimate question is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient..." and the "recipient's nonparty status is afforded '**special weight**,' leading to an even more '**demanding and sensitive**' inquiry than the one governing discovery generally." *Id.* (quoting *Weinman v. Cable*, 427 F.3d 49, 53 (1st Cir. 2005)).

The Court in *Jordan* set forth several "important considerations" for undertaking this inquiry. *Id.* While not exhaustive, the Court held that the following factors should be evaluated to determine the extent of the burden placed on the nonparty recipient of a discovery request:

1.  Whether the requests are overbroad and seek information beyond what the requesting party reasonably requires.

2.      Whether and to what extent the requests invade privacy or confidentiality interests.

3.      Whether the interest of other nonparties are affected by the requests.

4.      And the extent of the monetary costs associated with production.

*Id.* (internal citations omitted).

Turning to the "benefits side of the ledger," courts should consider the following factors in determining whether the discovery provides "likely benefits" to the requesting party:

1.      Whether the information sought is relevant and the extent of the requesting party's need for it.

2.      Whether the information sought "likely - not just theoretically" offers some value to the requesting party over and above what the requesting party already has in its possession.

3.      Whether the information is available to the requesting party from other sources.

4.      And whether the requesting party can explain why it cannot obtain the same information, or comparable information, from a party to the litigation or a different nonparty.

*Id.* (internal citations omitted).  In the present case and affording Hospitals the "special weight" of nonparties, the subpoenas clearly fail the "more demanding and sensitive inquiry" espoused by *Jordan*:

  B.      <u>Factor One in Support of Burden; The Requests Are Overbroad</u>:

The first factor set forth under the rationale in *Jordan* looks to whether "the requests are overbroad [and] seek information beyond what the requesting party reasonably requires." *Id.* (citing *Wiwa*, 392 F.3d at 818).  Following the rationale of *Jordan*, requests for production of documents issued amongst <u>parties</u> to a lawsuit are governed by Fed. R. Civ. P. 34.[2]  Such requests

---

  [2]  All "civil discovery, whether sought from parties or nonparties, is limited in scope by" Fed. R. Civ. P. 26. *Jordan,* at 188.  Rule 45(c) was "not intended to diminish rights conferred by Rules 26-37."  *See* Fed. R. Civ. P. 45, (Adv. Comm. note to 1991 Amendment; *see also Heat & Control, Inc. v.*

must "describe with <u>reasonable particularity</u> each item or category of items to be inspected." Fed. R. Civ. P. 34(a)(1)(A).  A request meets the "reasonable particularity" requirement if it "places the party upon reasonable notice of <u>what is called for and what is not</u>." *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193, 202 (N.D.W.V. 2000) (emphasis added).

As to <u>nonparties</u>, this "reasonable particularity" test is necessarily applied with more '<u>demanding and sensitive</u>' inquiry. *Jordan*, at 188-91, *cert. denied*, 140 S. Ct. 672 (quoting *Weinman*, 427 F.3d 49, 53).  Under *Jordan*, requests issued to <u>nonparties</u> must be narrowly tailored by the requesting party before they are served on nonparties. *Id.*  If requests are not narrowly tailored or fail to provide the nonparty with reasonable notice of 'what is called for and what is not,' then the requests are overly broad and unduly burdensome. *See Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 241 (E.D. Va. 2012) (stating that a "subpoena imposes an undue burden on a party when [it] is overbroad").

The requests at issue herein fail judicial scrutiny under the cited case law.  They arise from two competing subpoenas which Defendants issued to a single medical facility.  The subpoena to Cabell contains 19 requests and the subpoena to St. Mary's contains 34 requests.  Both subpoenas seek 25 years of various materials and information roughly conflated into the definitions of "documents" and "communications."  The subpoenas purportedly apply to multiple unrelated groups and individuals cobbled together under the definitions of "Cabell," "St. Mary's," and "Plaintiffs," respectively.  And the subpoenas seek production of anything from the last 25 years that "mentions or alludes to" opioids – **from nonparty <u>medical facilities.</u>**

---

*Hester Indus., Inc.*, 785 F. 2d 1017, 1023 (Fed. Cir. 1986) (noting that Rule 45 must be read in light of Rule 26(b)); 9A Wright & Miller, Federal Practice and Procedure: Civil 2d § 2452 (1995).

Request No. 1 is the prototypical example of the nature and scope of the Defendants' subpoenas.  It states:

### DOCUMENTS TO BE PRODUCED

1. All Communications between You and Plaintiffs discussing, referring, or relating to the prescribing, dispensing, use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, theft or trafficking of Prescription Opioids or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

A cursory review of this request demonstrates that no attempt was made to place the nonparty Hospitals on "reasonable notice of what is called for and what is not." *Kidwiler*, 192 F.R.D. at 202.  Distilled down into its basic form, the request seeks "all communications – relating to – the use – of opioids."  Emphatically, these subpoenas were served on two regional medical facilities.  Requesting a hospital to produce 25 years of communications relating to the use of opioids is not narrowly tailored.

Moreover, this request invokes **seven** defined terms which must be incorporated into the request before the recipient can plausibly attempt to formulate a response.  The terms 'documents,' 'communications,' 'you,' 'Plaintiffs,' 'relating to,' 'Prescription Opioids,' and 'Illicit Opioids' are all "defined" terms under the subpoenas.  As Request No. 1 appears to center upon purported interactions between the Hospitals and the Plaintiffs, those definitions are set forth herein for review:

1. "You" and "Your" refers to the Cabell Huntington Hospital ("Hospital") and all others acting on the Hospital's behalf, including any affiliates, programs, employees, directors, agents, contractors, representatives, board members, committees, subcommittees, working groups, and task forces.

2.    "Plaintiffs" means, collectively, the plaintiffs named in this action, the City of Huntington and Cabell County, including but not limited to its executive and legislative branches, agencies, offices, departments, divisions, commissions, committees, subcommittees, boards, directors, administrators, employees, agents, contractors, vendors, instrumentalities, representatives, counsel, and all persons and entities acting or purporting to act under their control or on their behalf.

Needless to say, these definitions do nothing to clarify for the nonparty Hospitals 'what is called for and what is not.' *Kidwiler*, at 202.  For instance, the definition of Cabell is far afield from any indicia of reasonableness.  It includes the terms 'affiliates,' 'programs,' "employees,' 'agents,' 'contractors,' 'representatives,' and 'working groups.'  Similarly, the definition of Plaintiffs 'includes but is not limited to' 'employees,' 'agents,' 'contractors,' 'vendors,' 'representatives,' and 'persons or entities purporting to act' for Plaintiffs.  Efforts to narrowly tailor these defined terms are not readily apparent.  The definitions, standing alone and taken in conjunction with all requests which rely thereupon, utterly fail the heightened judicial scrutiny afforded a nonparty under the holding in *Jordan*.

Several of these categories would not even satisfy the basic elements of agency law and would not impart knowledge upon a principal. *See*, *ex., CX Reinsurance Co. v. Leader Realty Co*., 252 F. Supp. 3d 439 (2017) (stating that a principal is affected by an agent's knowledge, only if the agent in failing to impart the knowledge has failed to act properly within the scope of his authority).  Thus, any claim of relevance would seem dubious.  Further, the purported scope of the defined terms certainly "seeks information beyond what the requesting party reasonably requires." *Jordan*, at 188-91.

This request and incorporated definitions, taken as worded, would also seeming require a nonparty recipient such as the Hospitals to conduct an investigation encompassing, for example,

the telephones of the nursing staff and the computers of any 'contractors' to determine whether the word "opioid" was mentioned therein.  Then, the recipient would somehow have to identify anyone – including 'vendors' and 'representatives' – who not only could be identified as acting on behalf of Plaintiffs but who also may be 'purporting to act' on behalf of Plaintiffs.  And the recipient would have to conduct such an investigation in a manner that spanned *the last 24 years.*

Even assuming that such a mix of individuals and groups could somehow cohere to form a narrowly tailored set of particularly identified persons or groups, the "likely benefit" of any information would be greatly outweighed by the burden upon the nonparty recipient in performing the search.  More fundamentally, both the request and the definitions fail the heightened judicial scrutiny afforded a nonparty under *Jordan*.  The nonparty Hospitals have not been provided with any notice – let alone reasonable notice – of <u>what is called for and what is not</u>." *Kidwiler,* 192 F.R.D. at 202.

The remaining definitions invoked by Request No. 1 are equally confusing:

> 5.    "Communication" has the full meaning ascribed to it by Local Rule of Civil Procedure 26.2(c)(1), and means any transmission of information (whether formal or informal) by one or more Persons and/or between two or more Persons by means including, but not limited to, telephone conversations, letters, faxes, electronic mail, text messages, instant messages, other computer linkups, written memoranda, and face-to-face conversations.

> 13.    "Relating to," "Referring to," or "Concerning," when referring to any given subject matter, means any Document that constitutes, comprises, involves, contains, embodies, reflects, identifies, states, mentions, alludes to, or refers directly or indirectly to the particular subject matter identified.

6.    "Document" has the full meaning ascribed to it by Federal Rule of Civil Procedure 34(a) and Local Rule of Civil Procedure 26.2(c)(2), and means the complete original (or complete copy where the original is unavailable) and each non-identical copy (where different from the original because of notes made on the copy or otherwise) of any writing or record, including, but not limited to, all written, typewritten, handwritten, printed, or graphic matter of any kind or nature, however produced or reproduced, any form of collected data for use with electronic data processing equipment, and any mechanical or electronic visual or sound recordings or text messages in Your possession, custody, or control. "Documents" include, but are not limited to, Communications (as defined above), books, papers, contracts, memoranda, invoices, correspondence, notes, studies, reports, manuals, photographs, drawings, charts, graphs, data compilations, other writings, microfilm, microfiche, audio recordings, video recordings, electronic mail, and any other information stored in electronic form, and each different version or copy of each Document, including, but not limited to, drafts.

As set forth above, the requests seek production of "communications" which 'include but is not limited to' 'telephone conversations,' 'face-to-face conversations,' and 'other computer linkups.'   The definition of Documents include 'invoices,' 'notes,' 'manuals,' 'photographs,' 'microfilm,' 'microfiche,' 'audio recordings,' and 'video recordings.'   And the phrase "relating to" is even subjected to further definition.   It includes terms such as 'reflects,' 'mentions,' and 'refers to.'

With consideration given to these defined terms, the nonparty Hospitals have no idea what the Defendants are truly requesting.   This request cannot plausibly embrace the plain meaning of the words used in the definitions.   Otherwise, a construction worker's (*contractor*) Facebook post (*other computer linkup*) from 12 years ago (*relevant time*) to an individual that is also a city employee (*agent of plaintiff*) mentioning "opioids" would necessarily be responsive.   This request,

and these definitions, are simply not narrowly tailored and provide no reasonable particularity as to the information sought.

It is further unclear how video recordings or photographs 'mentioning opioids' would arise or exist, or how such materials should be investigated, as pertaining to interactions between these groups and individuals. It is equally unclear what documents Defendants believe would exist or could arise from face-to-face conversations or telephone conversations 'mentioning opioids' between these groups and individuals. The most likely conclusion is, quite simply, that Defendants seek to have these nonparty Hospitals "<u>do the work of tailoring a subpoena to what</u>" the Defendants need. That is not proper, and these definitions fail the heightened judicial scrutiny entitled nonparties under *Jordan*.

The definitions even manage to confuse the otherwise plain meaning of the word opioid:

> 8.    "Prescription Opioids" means FDA-approved pain-reducing medications that consist of natural, synthetic, or semisynthetic chemicals that bind to opioid receptors in the brain or body to produce an analgesic effect, including but not limited to prescription medications containing hydrocodone, oxycodone, fentanyl, and hydromorphone, that may be obtained by patients in West Virginia only through prescriptions written by duly licensed and DEA registered prescribers.

> 9.    "Illicit Opioids" means substances comprised of or containing natural, synthetic, or semisynthetic chemicals that bind to opioid receptors in the brain or body that are not approved by FDA, including, but not limited to, heroin, fentanyl, carfentanil, other fentanyl-type analogs, and counterfeit opioid medications.

Under these definitions, "opioids" are "<u>not limited to</u>" opioid medications at all. Instead, the term "opioid" may also include any medication "<u>which produces an analgesic effect</u>." Under this permeation of the term, the scope of information must be broadened to capture anything that

mention aspirin or ibuprofen.  These subpoenas are fatally flawed due to this definition alone.  The incorporated definitions are the antithesis of narrowly tailored.

In summary, Request No. 1 is *facially* overbroad and unduly burdensome. *See Linder v. Calero-Portocarrero,* 183 F.R.D. 314, 316, *citing Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998) (holding that undue burden can be found when a subpoena is facially overbroad").  Request No. 1 serves as a typical example of the type of requests propounded upon the nonparty Hospitals herein.  To emphasize this point, nonparty Hospitals briefly set forth a truncated analysis of Request No. 2.  It states:

> 2.  All Documents discussing, referring, or relating to Your or Plaintiffs' knowledge or investigation of the prescribing, dispensing, use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, theft or trafficking of Prescription Opioids or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

This request, distilled down to its basic form, literally seeks production of information and materials "which mention – the Hospitals' – knowledge of – the use of opioids."  This is not the type of "reasonable particularity" envisioned by Rule 34.  Instead, this is nothing more than a blanket demand.  Rule 34 envisions a requirement "that such categories be reasonably particularized" from the standpoint of the nonparty. *See Calcor Space Facility v. Superior Court*, 53 Cal. App. 4th 216 (1997).

Simply stated, the intent of the Defendants subpoenas is evident in the design of this request alone – Defendants wants the nonparty Hospitals "do the work of tailoring a subpoena to what" the Defendants need.  That is simply not proper, and these definitions and requests fail the heightened judicial scrutiny entitled nonparties under *Jordan*.

Second, the nonparty Hospitals should not be required to search for "documents" – as that term is defined – which allude *solely* to some knowledge or investigation undertaken by the "Plaintiffs" alone.  Any document requests directed at some undertaking of the "Plaintiffs," *separate and apart from* any related undertaken of the nonparty Hospitals, is wildly improper. Under the nomenclature of these subpoenas, the nonparty hospitals would seemingly have to produce newspapers and web articles from every police investigation mentioning analgesic pain medications which was deemed newsworthy in the past 25 years.  For this reason as well, the request again fails the heightened judicial scrutiny entitled nonparties under *Jordan*.  Request No. 2 is *facially* overbroad and unduly burdensome.

Moreover, the information purportedly sought herein should, and likely has, been directed to the actual Plaintiffs in this lawsuit, and the nonparty Hospitals have no understanding of what information has previously been produced.  Pursuant to Fed. R. Civ. P. 26(b)(2)(C), on motion or its own volition, the court may limit the frequency or extent of discovery:

> [I]f it determines that (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or, (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

Due to failures set forth herein, standing alone and in conjunction with remaining requests, the nonparty Hospitals further object to Cabell Subpoena Request Nos. 3 through 19 and St. Mary's Subpoena Requests 1-34 as facially overbroad and unduly burdensome.  The initial *Jordan* factor weight heavily in favor of the nonparty Hospitals.

C.      *Factor Two in Support of Burden; The Requests Invade Privacy and Confidentiality Interests:*

The second factor for inquiry, under *Jordan*, looks to determine whether and to what extent the requests invade the realm of protected materials.   Document requests become more burdensome – and therefore balance in favor of the nonparty recipient – if they "invade privacy or confidentiality interests." *Id.* (citing *Modern Plastics*, 890 F.3d at 251-52; *In re Missouri Dep't of Corr.*, 839 F.3d 732, 736-37 (8th Cir. 2016)).  In the present case, this factor also balances in favor of the nonparty Hospitals.  The Defendants' subpoenas expressly disregard statutory privileges.

The Defendants' documents requests repeatedly attempt to infringe upon the peer review protections contained in W. Va. Code §§ 30-3C-1, *et al.*, ("Peer Review Statute" or "Statute"). The Statute specifically considers confidential and protects "[a]ny document" which was prepared for the "purpose of improving the quality, delivery, or efficiency of health care." W. Va. Code § 30-3C-3(a) (2019).  Moreover, it further protects any document prepared "for the purpose of credentialing or reviewing health care providers[.]" *Id.*  Under either scenario, such documents are "confidential and privileged" and "shall not be subject to discovery in a civil action or administrative proceeding[.]" *Id.*

Defendants' Request No. 14 to Cabell and Request No. 13 to St. Mary's specifically seeks production of "[a]ny documents relating to your involvement with the **Joint Commission**...."  For example:

> 14.     Any documents relating to your involvement with the Joint Commission (formerly known as the Joint Commission on Accreditation of Healthcare Organizations) or with any other institution that provides accreditations or certificates, as it relates to the treatment of pain and/or the prescribing of prescription opioids for the purposes of gaining and/or maintaining accreditations or a certificate.

The Joint Commission, however, is explicitly set forth <u>by name</u> in the Peer Review Statute as a "Review Organization."  *See* W. Va. Code § 30-3C-1, at "Review Organization."  And Section 30-3C-3 of the Peer Review Statute specifically excludes "Review Organization documents...without limitation." *See* W. Va. Code 30-3C-3(a)(3).  Additionally, Section 30-3C-3(b) further protects any "testimony, deliberation and opinions" arising from the proceedings with a review organization. *Id.*   Last, Section 30-3C-3(c) of the Peer Review Statute classifies all "peer review proceedings, communications, and documents of a review organization and all records developed or obtained during an investigation" as confidential, privileged and not subject to discovery in any civil action. *Id.*  These specific requests are clearly prohibited, improper and seek confidential and protected information.  The nonparty Hospitals have expressly directed the Defendants to the Peer Review Statute on multiple occasions, yet Defendants continue to flout the privilege.

Defendants' Request No. 10 to Cabell, and Request No. 9 to St. Mary's, also seek information clearly prohibited by the Peer Review Statute.  For example:

> 10.   Any Documents relating to the mandatory and/or the voluntary reporting of information to state agencies, federal agencies, medical boards, professional medical societies, or any other agency, entity, program or group, related to the improper prescribing, dispensing, use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, theft or trafficking of Prescription Opioids or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

These requests are likewise improper.  The Peer Review Statute, in addition to the language previously cited herein, further protects: Documents related to review organization proceedings for hiring, disciplining, terminating, credentialing, issuing staff privileges, renewing staff privileges, or alleged misconduct of a health care provider. W. Va. Code 30-3C-3(a)(2).  Quality

control and performance improvement documents. W. Va. Code 30-3C-3(a)(4).  Documents satisfying regulatory obligations related to quality assurance and performance improvement. W. Va. Code 30-3C-3(a)(5).  And reviews, audits, and recommendations of consultants or other persons or entities engaged in the performance of peer review. W. Va. Code 30-3C-3(a)(6). Nevertheless, these requests again seek Peer Review Protected information and materials. The requests are prohibited, improper and seek confidential and protected information. The second factor of the *Jordan* inquiry heavily balanced in favor of the nonparty Hospitals.

As evident from the requests set forth above, Defendants have no reservations against seeking production of documents and materials in clear and explicit violation of the Peer Review Statute.  And the Defendants' subpoenas are replete with language which may be broadly interpreted to seek the production of additional documents protected by the Statute.  Therefore, due to the vague "definitions" used in Defendants' subpoenas, the Defendants' wholesale failure to narrowly tailor any of their requests for production, and the attendant lack of reasonable particularity arising therefrom, the nonparty Hospitals must necessarily assert the privilege broadly to prevent against future conduct of this nature.

Upon any meaningful effort by the Defendants to clarify or explain the true nature of their request, or upon agreement that Defendants are not seeking such protected materials, the Hospitals will gladly reevaluate the potential application of the Peer Review Statute.  Until that time, the nonparty Hospitals object to and assert the Peer Review Privilege against Request Nos. 2 - 4, 6 - 17 and 19 of the Cabell subpoena, and Requests Nos. 2 - 21, 24, 25, 27, 28, 30 - 33 of the St. Mary's subpoena.

Defendants suggest that the nonparty Hospitals should submit a privilege log in support of the privilege.  This is absurd.  Defendants cannot be permitted to benefit from their flagrant and

egregious contempt for statutory law by demanding a privilege log.  To craft a privilege log encompassing every piece of material plausibly responsive to Defendants' discovery abuses would require the Hospitals to review every peer review proceeding, communication, or document from the last 24 years.  This would take several months and would require hundreds if not thousands of work hours.  Hospitals seek an award of costs and attorney fees from the Defendants for the creation of any such privilege log.

Rule 45 authorizes courts to quash or modify a subpoena if it "requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" *See* Fed. R. Civ. P. 45(d)(3)(A)(iii). Moreover, Rule 45(c) was "not intended to diminish rights conferred by Rules 26-37." *See* Fed. R. Civ. P. 45, (Adv. Comm. note to 1991 Amendment; *see also Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F. 2d 1017, 1023 (Fed. Cir. 1986) (noting that Rule 45 must be read in light of Rule 26(b)); 9A Wright & Miller, Federal Practice and Procedure: Civil 2d § 2452 (1995).  Thus, pursuant to Fed. R. Civ. P. 26, a "party generally may obtain discovery regarding any matter, **not privileged**, which is relevant to the subject matter involved in the pending action or which appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1) (emphasis added).  For these reasons, the nonparty Hospitals also seek an order granting their Motion to Quash the Defendants' Subpoenas.

D.     *Factor Three in Support of Burden: Interests of Other Persons*:

The third factor of the *Jordan* inquiry looks to the interest of "others who might be affected" by the requests.  The extent in which document requests infringe upon these interests of other persons can also increase the burden element, in addition to the burden placed on the recipient of the subpoena. *Id.* (citing Fed. R. Civ. P. 4545(d)(3)(A)(iv)) (explaining that the "text of Rule 45 clearly encompasses the burdens placed **on any person**, not just the recipient of the subpoena").

For example, "if a subpoena seeks information from a business about its customers, it may implicate the business's interest in protecting competitively sensitive information, as well as the customers' interest in protecting their privacy." *Id.* (citing *Modern Plastics*, 890 F.3d at 251-52).

This factor can be quickly disposed of in favor of the nonparty Hospitals. As outlined above, the definitions set forth by Defendants' subpoenas embrace a large constituency of individuals and groups of individuals. The definition of Cabell includes 'affiliates,' 'programs,' "employees,' 'agents,' 'contractors,' 'representatives,' and 'working groups.' The definition of Plaintiffs includes 'employees,' 'agents,' 'contractors,' 'vendors,' 'representatives,' and 'persons or entities purporting to act' for Plaintiffs. And the subpoenas also define "licensed medical providers" as basically any person with medical training. These individuals would experience varied degrees of burden under the Defendants' currently pending requests. This factor balances heavily in favor of the nonparty Hospitals.

> E.     *Factor Four in Support of Burden; The extent of the monetary costs associated with production:*

The last factor to consider in the *Jordan* inquiry, when evaluating the presence and extent of any burden caused by the requests, "should of course consider the dollars-and-cents costs associated with a large and demanding document production." *Id.* This dispute centers upon two subpoenas containing 19 requests and 34 requests, respectively. The requests can accurately be considered blanket requests for an inordinate amount of materials and information. The Hospitals have already produced approximately 4,000 pages of information and exhausted roughly 250 hours of labor. The costs have already risen to the level of burden under the analysis. This factor, as the last three, balances heaving in favor of the nonparty Hospitals.

F.    *Competing Factors in Support of Benefit*:

The nonparty Hospitals only vaguely understand the intricacies of the litigation.  Plaintiffs are proceeding upon a common law public nuisance claim involving some component of civil conspiracy.  Plaintiffs intend to seek certain damages for abatement of a public nuisance.  Defendants proceed upon all elemental defenses and intend to assert suggestions of non-party fault pursuant to West Virginia Code § 55-7-13d.  Defendants seek third-party discovery, in part, to further develop their defenses and to evaluate whether "other medical professionals… improperly prescribed or administered controlled substances[.]" *See Memorandum of Law in Support of Defendants' Proposed Case Management Order*. (ECF No. 158).

Plaintiffs dispute the application of West Virginia Code § 55-7-13d and this issue has been briefed.  While no ruling on this issue was apparent from a review of the docket, it was noted that the Court previously emphasized "concern with the nonparty fault" and suggested that "discovery of that has to be limited, because it could go on forever, if you get to the point where you are going to look at the doctors who prescribed these medications[.]" *See* Status Conference Transcript, filed on 1/29/2020, at p. 14, l. 12-17 (ECF No. 147).  However, since no ruling on this issue appears to have been entered, it seems reasonable to conclude that Defendants' seek the document production in order to strengthen the suggestions of non-party fault pursuant to West Virginia Code § 55-7-13d and to test their elemental defenses.  The verdict will be rendered by the bench.

In applying the *Jordan* factors supporting benefit, the Hospitals will leave that detailed inquiry to the sole and capable discretion of the Court.  Hospitals note that the peer review protected materials are neither relevant nor admissible because those materials are not embraced as appropriate scope of discovery under Fed. R. Civ. P. 26.  Moreover, as several of the requests herein seek information related to efforts and activities of the Plaintiffs, Hospitals suggest that

Defendants likely have portions of the information either "already in their possession" or "obtainable from a party to the litigation." Furthermore, the Hospitals have now made a documents production to the Defendants.  Otherwise, nonparty Hospitals simply do not appreciate or understand what information the Defendants truly seek.

>    G.    _Failure to Allow a Reasonable Time to Comply_:

The nonparty Hospitals incorporate and reassert herein **Section C** and **Statement of Facts: Undue Burden** of their _Joint Response to Defendants' Motion to Compel Third-Party Discovery_ (ECF No. 471).  In the event that this Court orders compliance with the Defendants' subpoenas, the Hospitals have not been provided with a reasonable time to comply under the relevant circumstances herein.  Reasonableness "of the time allowed for compliance seems to be judged depending on the underlying circumstances_." Freeport McMoran Sulphur, LLC v. Mike Mullen Energy Equip. Res., Inc._, 2004 WL 595236.

The circumstances herein reveal that Cabell has been in possession of its Subpoena for approximately 3 months, and that St. Mary's has been in possession of its Subpoena for approximately 2 months.  Even without the disruption of a national pandemic, these time periods would not satisfy the reasonable time requirement of Rule 45 for compliance with _these_ Subpoenas.  When considering the scope of the requested information, both by reference to the substance and time, in conjunction with the dramatic effect of the pandemic, the time for compliance with these Subpoenas simply does not satisfy the notion of reasonableness espoused by the Rule.

>    H.    _Renewal of and Supplementation to Prior Petition and Motion to Quash_:

The Hospitals previously submitted a _Petition and Motion to Quash_ (ECF No. 309), with _Memorandum of Law in Support_ (ECF No. 310), for the Court's consideration on April 10, 2020.

The Hospitals renew and reassert the Petition and Motion to Quash.  For the reasons stated herein, and through such Petition and Motion by reference, the Hospitals request and Order granting their Motion to Quash.

## IV.     Conclusion:

Wherefore, Cabell Huntington Hospital, Inc., and St. Mary's Medical Center, Inc., respectfully request the entry of an Order denying the *Defendants' Motion to Compel* and granting the *Hospitals' Petition and Motion to Quash the Defendants' Subpoenas*, as well as any and all further relief the Court deems necessary under the present circumstances.

Respectfully submitted,

**CABELL HUNTINGTON HOSPITAL, INC.
AND ST. MARY'S MEDICAL CENTER, INC.**

/s/  Ryan Q. Ashworth_____
Of Counsel

Thomas L. Craig, Esquire (WV 859)
Ryan Q. Ashworth, Esquire (WV 10451)
BAILES, CRAIG, YON & SELLARDS, PLLC
Post Office Box 1926
Huntington, West Virginia 25720-1926
(304) 697-4700 - Telephone
(304) 697-4714 – Facsimile
tlc@bcyon.com
rqa@bcyon.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | | |
|---|---|---|
| **CITY OF HUNTINGTON;** | : | |
| **CABELL COUNTY COMMISSION,** | | |
| | : | **Civil Action No. 3:17-01362** |
| Plaintiffs, | | **Civil Action No. 3:17-01665** |
| | : | *(Consolidated)* |
| v. | | |
| | : | |
| **AMERISOURCEBERGEN DRUG** | : | |
| **CORPORATION,** *et al.,* | | |
| | : | |
| Defendants. | | |
| | : | |

**CERTIFICATE OF SERVICE**

The undersigned, counsel for Cabell Huntington Hospital, Inc. and St. Mary's Medical Center, Inc., do hereby certify that the foregoing **"CABELL HUNTINGTON HOSPITAL AND ST. MARY'S MEDICAL CENTER'S RESPONSE** *IN OPPOSITION* **TO DEFENDANTS' MOTION TO COMPEL AND RENEWED MOTION TO QUASH"** has this 17th day of June, 2020 been duly served upon counsel of record by electronic transmission.

/s/   Ryan Q. Ashworth_____

Thomas L. Craig, Esquire (WV 859)
Ryan Q. Ashworth, Esquire (WV 10451)
BAILES, CRAIG, YON & SELLARDS, PLLC
401 Tenth Street, Suite 500
Post Office Box 1926
Huntington, West Virginia 25720-1926
(304) 697-4700 (telephone)
(304) 697-4714 (facsimile)
tlc@bcyon.com
rqa@bcyon.com
*Counsel for Cabell Huntington Hospital, Inc.*