UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

THE CITY OF HUNTINGTON,
    Plaintiff,

v.

AMERISOURCEBERGEN DRUG
CORPORATION, et al.,
    Defendants.

CIVIL ACTION NO. 3:17-01362

CABELL COUNTY COMMISSION,
    Plaintiff,

v.

AMERISOURCEBERGEN DRUG
CORPORATION, et al.,
    Defendants.

CIVIL ACTION NO. 3:17-01665

# Discovery Ruling 9

ORDER DENYING DEFENDANTS' MOTION TO COMPEL DISCOVERY RESPONSES ON OPIOID-RELATED EXPENDITURES

    Pending before the Court is *Defendants' Motion to Compel Discovery Responses on Opioid-Related Expenditures* (Doc. 422) (Filed: 05/15/20) which has been briefed, argued and submitted for adjudication. For the reasons stated herein, the motion is DENIED.

    Distributor Defendants served interrogatories and requests for production of documents on Plaintiffs on October 25, 2019, to which Plaintiffs timely served responses on December 3, 2019 (and again in an amended pleading on December 13, 2019). The parties argued over the sufficiency of the County's disclosure of historical "opioid expenditures" culminating in *Discovery Ruling 1* (ECF 248) which states, in relevant part, as follows:

> Here, the undersigned finds such supplementation reasonable, given the ongoing nature of these two discovery requests. Accordingly, the undersigned RULES as follows. Similar to other discovery requests discussed, supra, as a timeframe by which to respond, the undersigned finds it appropriate to direct Cabell County to have until April 30, 2020[1], the date of the close of discovery, by which to fully respond and supplement.

Plaintiffs supplemented its disclosures which Defendants argue is deficient in its motion (ECF 423) (ECF 494). Plaintiffs argue they have fully responded (ECF 475).

The narrow focus of this discovery dispute is summarized by Defendants as a request for "basic information regarding Plaintiffs' opioid-related actions and expenditures and requested abatement damages remedy." (ECF 463) As such, each subpart is addressed separately.

1. **Defendants' request for "basic information regarding Plaintiffs' opioid-related actions and expenditures."**

Defendants argue Plaintiffs' discovery responses to ROG10, ROG11, RFP11, RFP15 and RFP16 (as well as DR1) are insufficient. Both parties have submitted the discovery requests as well as the answers/responses. Having carefully reviewed both, the Special Master finds that Plaintiffs have satisfied their obligations and no further supplement is required.

Plaintiffs submitted extensive answers to interrogatories, produced nearly 800,000 documents and identified scores of fact witnesses which provide ripe ground for Defendants to understand, investigate and discover the "opioid related actions" the city/county has taken in response to the opioid epidemic. The City of Huntington and Cabell County Commission have produced spreadsheets specifically referencing budgets and accounting documents which provides ample reference points for further discussion during fact witness depositions. Plaintiffs proffer for

---

[1] The Court thereafter extended the "Written/Document Discovery" deadline to June 12, 2020 (Doc. 410) (Filed 05/11/20) at the request of Distributor Defendants.

the Court that fact witness depositions (including the former city finance manager, fire chief and sheriff) have been completed without evidence of any deficiencies.

The Special Master finds the Plaintiffs have fully responded to written discovery regarding its responses to ROG10, ROG11, RFP11, RFP15 and RFP16 (as well as DR1) and no further supplement is required. Defendants motion to compel "basic information regarding Plaintiffs' opioid-related actions and expenditures" is denied.

> 2. **Defendants' request for "basic information regarding Plaintiffs'…abatement damages remedy."**

Defendants argue that Plaintiffs should be compelled to disclose the components of its abatement remedy including all facts which support the same. Defendants motion appears to carry forward from CT1 some confusion regarding the nature of the remedy sought by Plaintiffs. The Special Master finds instructive the reasoning from the MDL Court on the nature of the remedy sought by the CT1 Plaintiffs:

> Having read the parties' briefs, the Court offers the following general observation on the relevance of the Challenged Experts' opinions. Defendants begin their Abatement Motion with their interpretation of "abatement law" in Ohio. In the very first paragraph, however, they appear to confuse the forward-looking, equitable remedy of abatement and the rearward-looking remedy of damages. In a traditional public nuisance case, a municipal entity who is harmed by the maintenance of a nuisance will give notice to and ask the offending party to abate the nuisance. If the offending party is unable or unwilling to abate, the harmed party can, when appropriate, abate the nuisance themselves or ask the court for the right to do so, and then seek compensation for the costs of abating the nuisance. This compensation is equitable in nature. The goal is not to compensate the harmed party for harms already caused by the nuisance. This would be an award of damages. Instead, an abatement remedy is intended to compensate the plaintiff for the costs of rectifying the nuisance, going forward.

See *Order*, Case: 1:17-md-02804-DAP (ECF 2519) (Filed: 08/26/19). The City and County stipulate they seek an ***abatement remedy*** "intended to compensate the plaintiff for the costs of rectifying the nuisance, going forward." In this vein the Special Master must consider the value of

the information sought along with the cost in determining whether to order further production. It appears undisputed that the opioid crisis continues to plague not only the Plaintiffs in this case but nationwide. It seems whatever efforts and expenses Plaintiffs have put forth in attempting to remedy the nuisance have not been successful. As recognized by Judge Polster if the Defendants are found liable the remedy will be "prospective future costs to abate the crisis". *id.* It is clear that Plaintiffs are not seeking to recoup as damages any prior amounts expended by them in their efforts to mitigate the crisis, therefore the prior expenses incurred have marginal value in determining the future costs of abatement. The Plaintiffs have provided the Defendants the preliminary abatement plan prepared by Plaintiffs' experts thereby informing them of the sorts of remedies they are seeking as damages, inquiry into the costs of these remedies would better be conducted during the questioning of the experts not by requiring historical data. Compelling the Plaintiffs to produce more than has already been provided would be disproportionate to the needs of this case.

Plaintiffs acknowledge that expert witness testimony requires a factual record but argue Defendants' motion is a premature attempt to engage in expert witness discovery. *See* DRI ("Moreover, in cases where the parties anticipate the production of 'an expert report which will touch on the very contentions at issue, the Court should normally delay contention discovery until after the expert reports have been served, which may then render moot any further contention discovery'"). The costs of rectifying the nuisance will no doubt be based on (a) the factual record developed throughout discovery and (b) expert witnesses disclosed on August 3, 2020. To the extent the factual record does not support an expert's opinion, the parties may challenge the same in motion practice in accordance with the Court's scheduling order.

RESPECTFULLY SUBMITTED,

/s/ Christopher C. Wilkes
Special Master

Dated: June 23, 2020