UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

**THE CITY OF HUNTINGTON,
WEST VIRGINIA,** *et al.*,

    Plaintiffs,

v.                                            Civil Action No. 3:17-cv-01362
                                                Hon. David A. Faber

**AMERISOURCEBERGEN DRUG
CORPORATION,** *et al.*,

    Defendants.

### RITE AID OF WEST VIRGINIA, INC.'S OPPOSITION TO
### PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DISPENSING DATA

    Severed defendant and third party Rite Aid of West Virginia, Inc. ("Rite Aid") submits this opposition to Plaintiffs' motion to compel transaction-level dispensing data for every prescription for opioids filled at a Rite Aid in the City of Huntington or Cabell County over a period of more than 20 years. Doc. 578. The subpoena the Plaintiffs' motion seeks to enforce is procedurally improper, because the MDL court has ruled that discovery of a severed defendant is not permitted in a remanded case like this one. The motion is untimely, because it was filed weeks after the deadline for motions directed at third party discovery. And in any event, Plaintiffs' requests are substantively unreasonable and not proportional to the needs of the case. The data Plaintiffs seek is not relevant under Plaintiffs' own theory of the case. Plaintiffs demand data that no court, including the MDL court, has ordered produced in a distribution case. And Plaintiffs' subpoena seeks data that includes the highly confidential and sensitive protected health information of thousands of patients. The Court should deny the motion.

1

**PROCEDURAL BACKGROUND**

The JPML remanded this case to this Court on January 22, 2020. Doc. 130. Prior to that remand, on December 16, 2019, the MDL court severed Rite Aid entities from this case. *See* 17-md-2804 (N.D. Ohio) (Doc. 2990). On January 3, 2020, the MDL court ordered that "Plaintiffs may not proceed in the Track 2 cases with discovery against any severed defendants." *Id.*, docketed in this case on Jan. 15, 2020.

Notwithstanding this order, several months later Plaintiffs sought third party discovery against Rite Aid and other pharmacies. On April 7, 2020, Plaintiff filed a notice of intent to serve a subpoena on Rite Aid. Doc. 294. That same day, Plaintiffs filed notices of intent to serve subpoenas on more than a half-dozen other pharmacies. Docs. 291-292; 295-299. Plaintiffs' subpoena to Rite Aid had a return date just 10 days later, April 17, 2020. Ex. 1, subpoena. The subpoena requested "transactional data" from each Rite Aid location in the City of Huntington or Cabell County "sufficient to determine" (i) the volume of hydrocodone, oxycodone and/or fentanyl prescriptions written by each prescriber as well as the brand name, dose, frequency and duration; (ii) the ratio of controlled substance prescriptions to non-controlled prescriptions dispensed; (iii) the ratio of controlled substance prescriptions paid for cash to those paid by a third-party payor; and (iv) communications with wholesale distributors regarding the purchase of prescription opioids regarding due diligence. *Id.* at 10. The time period for the subpoena is 1996-2019. *Id.* at 4. As Plaintiffs appear to recognize, Mot. at 3, complying with the subpoena would require Rite Aid to produce detailed data for every single opioid prescription filled at a Rite Aid in Huntington or Cabell County.

Rite Aid served objections to the subpoena on April 17, 2020. Doc. 343; Ex. 2. Among other reasons, Rite Aid objected to the subpoena on the bases that it violates the MDL court's order

prohibiting discovery from severed defendants in the Track 2 cases; that it seeks prescription-level transactional data that Rite Aid entities did not have an obligation to produce even in cases involving the distribution of opioids where Rite Aid entities are parties; that it seeks data that is not relevant because Plaintiffs have stated they intend to attempt to prove distribution claims through the use of aggregate distribution data rather than through analysis of pharmacy-level data; that it seeks information that is equally available to Plaintiffs or is available from other sources that are more convenient or less burdensome, such as the West Virginia Board of Pharmacy's Controlled Substance Monitoring Program; and that it seeks the production of information that Rite Aid does not maintain in the ordinary course of its business.

On May 11, 2020, the Court entered an order setting a deadline of May 15, 2020 for the parties to "file any necessary motions to ensure that outstanding discovery disputes, including those involving third parties," so that such disputes could be "decided prior to the 6/12/2020 deadline" to complete written and document discovery. Doc. 410. The May 15 deadline set by the Court came and went without Plaintiffs raising any issues with Rite Aid's response to the subpoena, let alone filing a motion to compel.

On Sunday, June 7, 2020, more than seven weeks after Rite Aid served its objections and more than three weeks after the Court's deadline for filing motions to compel related to written discovery, Plaintiffs' counsel sent an e-mail to Rite Aid demanding immediate compliance with the subpoena. Ex. 3. The e-mail bore the subject line "Last meet and confer on ECF 343 (Rite Aid)," even though there had never been a "first" meet and confer, because Plaintiffs had never raised any issues with Rite Aid's response. According to Plaintiffs' counsel, the e-mail was prompted by a topic in the Rule 30(b)(6) deposition notice served on Plaintiffs by the Distributor Defendants in this case. That topic required testimony on "[i]dentification of all prescriptions of

opioids that Plaintiff contends have caused it harm and for which it is seeking remedies in this lawsuit." *Id.* Plaintiffs' counsel claimed that Rite Aid's dispensing data was necessary to respond to this topic. *Id.* Although the Rule 30(b)(6) topic requires Plaintiffs to identify "all" prescriptions that allegedly caused them harm, Plaintiffs did not demand that any other pharmacy—none of which, with one apparent exception, have produced data—comply with the subpoena. Nor did Plaintiff file a motion to compel against any other pharmacy.

Although the time for bringing disputes about written and document discovery to the Court has passed, Rite Aid promptly met and conferred with Plaintiffs' counsel on June 9, 2020. The parties were not able to resolve their dispute.

## Argument

### I. The Court Should Deny the Motion to Compel Because it is Procedurally Improper.

The Court should deny the motion to compel because it is procedurally improper for two independent reasons. The motion violates the MDL court's order that severed defendants like Rite Aid are not subject to discovery in this remanded case. And even if Plaintiffs' attempt to obtain discovery from Rite Aid were permissible, the motion was filed weeks after the deadline for such motions.

#### A. The motion violates the MDL court's bar on discovery from severed defendants.

Plaintiffs' motion should be denied because the subpoena Plaintiffs seek to enforce violates the MDL court's order that "Plaintiffs may not proceed in the Track 2 cases with discovery against any severed defendants." Jan. 3, 2020 Order, docketed in this case on Jan. 15, 2020. Plaintiffs have done precisely what the MDL court's order prevents: they have served discovery on a severed defendant in the Track 2 cases.

4

That Plaintiffs have sought this data by subpoena rather than party discovery makes no difference: if Plaintiffs could avoid the MDL court's order merely by treating severed defendants as third parties subject to subpoena, the MDL court's order would be meaningless. And in any event, a subpoena issued under Rule 45 "constitutes a discovery device." *Wei-Ping Zeng v. Marshall Univ.*, No. 17-cv-3008, 2019 WL 164813, at *3 (S.D. W.Va. Jan. 10, 2019). Nor can Plaintiffs disregard this order by pointing to a potential change in their strategy after consistently maintaining in the Track 1 cases that pharmacy-level dispensing data was irrelevant to claims against distributors. The MDL court's order forbidding discovery against severed defendants remains in effect regardless of Plaintiffs' strategic about-face.

In previous discovery rulings, the special master has recognized that it is inappropriate for Plaintiffs to seek discovery from severed defendants. *See, e.g.*, Discovery Ruling No. 6 (Doc. 519), at 11 (denying motion to compel documents related to Rite Aid from DEA and noting that "[i]n making this determination, the Special Master also considers that this request seeks information from entities that have been dismissed in this action by Plaintiffs."). The motion to compel should be denied for this reason.

> **B.     The motion is untimely, and there is no valid reason for Plaintiffs' delay.**

Even if the subpoena were valid, and it is not, the Court should deny the motion to compel because Plaintiffs filed it in blatant disregard of the May 15, 2020 deadline the Court set for filing any motions related to written discovery disputes, including those involving non-parties. Doc. 410. Rite Aid served its objections to the subpoena on April 17, four weeks before this deadline, so Plaintiffs had ample time before the deadline to review the objections and to meet and confer with Rite Aid if they thought it necessary. Plaintiffs did not do so, first contacting Rite Aid regarding the subpoena on June 7. Plaintiffs' failure to comply with the Court's scheduling order

5

is sufficient ground to deny the motion. *See CSS, Inc. v. Herrington*, No. 16-cv-01762, 2018 WL 7108115, at *2 (S.D. W.Va. Jan. 9, 2018) (denying motion for leave to file a motion to compel outside of the schedule set by the court).

Plaintiffs' motion to compel also violates Local Rule 37.1(c), which requires that "[m]otions to compel or other motions in aid of discovery not filed within 30 days after the discovery response or disclosure requirement was due are waived" absent an order for good cause shown. S.D. W.Va. L.R. 37.1(c). Plaintiffs filed their motion to compel on June 12, **eight weeks** after Rite Aid served its objections. The motion should be denied on this basis as well. *CSS, Inc.*, 2018 WL 7108115, at *2 ("Defendants have failed to explain why they did not pursue these matters in a timely fashion within 30 days following Plaintiff's discovery responses").

Plaintiffs make no attempt to justify their delay in raising issues with Rite Aid's response and in moving to compel. Their motion mentions neither the Court's deadline for discovery motions nor Local Rule 37.1(c). In their June 7 e-mail and later in their motion to compel, Plaintiffs argue that they are seeking dispensing data from Rite Aid to respond to a topic in a Rule 30(b)(6) deposition notice that was served on June 3. Ex. 3; Mot. at 1. However, Plaintiffs contradict this argument on the very next page of their motion, admitting that they served the subpoena in April "in anticipation of" this issue, and therefore were aware of the issue months before June 3. Mot. at 2. Plaintiffs concede that the voluminous data they seek from Rite Aid is not relevant under their own theory of the case. *Id.* But they claim that they need dispensing data in case the Court declines to accept the MDL court's rulings on certain issues. *Id*. The parties' dispute on that issue, however, has been pending before the Court since March, *see* doc. 189. This also cannot explain, much less excuse, Plaintiffs' delay in bringing their motion.

Plaintiffs failed to pursue this discovery diligently. Their motion to compel violates both the Court's scheduling order and the local rules. The motion should be denied on this basis.

## II. The Court Should Deny the Motion Because it is Seeks Data that is Irrelevant and Disproportionate.

Even if Plaintiffs' subpoena were procedurally proper—and it is not—the Court should still deny the motion to compel because the subpoena demands data that is irrelevant under Plaintiffs' own theory of the case, and even if it were relevant, would not help Plaintiffs prove any claim. The subpoena is also disproportionate. The transaction-level dispensing data it seeks goes beyond what any court has ordered in a case involving only claims about distribution of opioids. Plaintiffs offer no convincing reason why the Court should order production in this case.

### A. The subpoena requests data that is not relevant and is in any event not sufficient for Plaintiffs' expressed need.

Throughout the opioid litigation in many different courts, Plaintiffs have taken the position that transaction-level dispensing data is irrelevant to claims that distributors violated legal duties. Plaintiffs take that position in this case. Mot. at 2. At the same time, Plaintiffs now claim they need dispensing data in case this Court determines it is relevant to their claims. *Id.* As an initial matter, Rite Aid notes that plaintiffs in the Track 1 cases never sought dispensing data from the Pharmacy Defendants in aid of their claims against the Distributor Defendants, even though the rulings endorsing Plaintiffs' position that this data is irrelevant were not made until August 2019 and later, after the close of discovery in Track 1. Plaintiffs' current position that dispensing data may be relevant to their claims thus represents a fundamental shift in their position.

But even if this Court determines that dispensing data may be relevant to Plaintiffs' claims against the Distributor Defendants, Plaintiffs do not explain why the relevant data would be the transactional-level data from Rite Aid Plaintiffs seek in the subpoena. Plaintiffs say the Distributor

Defendants must perform due diligence "to dispel suspicion following a 'red flag.'" Mot. at 2. The "red flags" Plaintiffs cite are specific to individual prescriptions, *e.g.*, patients that pay in cash for prescriptions; patients that enter the pharmacy in groups with the same prescription written by the same physician; or patients that drive long distances to visit physicians or fill prescriptions. *Id.* Even if Plaintiffs were correct that distributors have a duty to investigate prescription-level red flags—and they are not—Plaintiffs never explain why data that is in **Rite Aid's** possession, and not the Distributor Defendants', is relevant to any red flag analysis Plaintiffs claim the Distributor Defendants were supposedly obligated to conduct.

Plaintiffs nevertheless argue that Rite Aid's dispensing data may reveal prescriptions that are "problematic." Mot. at 3. Even if this data were in the Distributor Defendants' possession, however, aggregate transactional data on thousands of prescriptions says nothing about whether any particular prescription is valid. Making that determination would require analysis of the facts and circumstances surrounding each prescription. Thus, even if dispensing data were relevant to Plaintiffs' claims, and even if it were proper for Plaintiffs to obtain this data from Rite Aid, the aggregate data Plaintiffs seek would not establish that *any* prescription was invalid or should not have been filled.

Finally, even if Rite Aid were to produce the dispensing data called for in the subpoena, Plaintiffs could not possibly use it to identify "all prescriptions of opioids" that allegedly caused them harm, as the 30(b)(6) topic for which they supposedly need this data requires them to do. Mot. at 1. As noted, Plaintiffs served more than a half-dozen subpoenas on pharmacies. According to Plaintiffs, one pharmacy has produced data, and the others have objected. *Id.* Yet Plaintiffs have chosen to attempt to enforce the subpoena only against Rite Aid. Plaintiffs characterize their motion to compel as a "bellwether motion," Mot. at 1, but there is no such thing—each subpoena

recipient is entitled to raise its own objections to Plaintiffs' subpoenas. Even if Plaintiffs obtain dispensing data from Rite Aid, therefore, they will have only a small percentage of prescriptions filled in Huntington and Cabell County. And the approach they have chosen will only result in more delay, consistent with their dilatory approach to the Rite Aid subpoena. The Court should not countenance these tactics.

      **B.**    **The subpoena's data requests are not proportional.**

Plaintiffs say the "dispensing data is readily available at the push of a button" because "[t]he severed Pharmacy Defendants are in the midst of additional bellwether discovery in MDL 2804." Mot. at 4. This is inaccurate in several respects. First, there is no "additional bellwether discovery" in MDL 2804 that covers this West Virginia data. Rite Aid and other Pharmacy Defendants were ordered to produce, and did produce, dispensing data for the state of Ohio. By order of the Sixth Circuit, however, the Pharmacy Defendants were *not* required to produce dispensing data for states outside of Ohio. *See* Order, *In re CVS Pharm. Inc.*, No. 20-3075 (6th Cir. Feb. 12, 2020) (Doc. 42). And the MDL court recently denied the plaintiffs' renewed request that Rite Aid and other Pharmacy Defendants produce dispensing data from outside of the state of Ohio. *See* 17-md-2804 (N.D. Ohio) (Doc. 3341) (June 17, 2020).

Moreover, and importantly, the MDL court required the Pharmacy Defendants to produce dispensing data because it was relevant to the plaintiffs' bellwether claims against the Pharmacy Defendants in their capacities as *dispensers* of opioids. No court, including the MDL court, has required pharmacies to produce broad dispensing data of the kind requested by the subpoena in case like this one that involve only the *distribution* of opioids. Indeed, in the Track 1b trial against the Pharmacy Defendants solely in their capacity as distributors, the MDL court ordered production only of narrow categories of dispensing information relevant to pharmacists who would

9

testify at trial. *See Id.* (Doc. 3308). The MDL court did not order that dispensing data for the entire bellwether jurisdictions, as Plaintiffs request here, was relevant to claims for improper distribution. Plaintiffs' subpoena thus goes beyond discovery ordered by any court in a distribution case.

Plaintiffs' request is also disproportionate because the transaction-level dispensing records at issue contain the private and highly sensitive medical information of thousands of members of the public.[1] In short, the idea that Rite Aid can simply be ordered to "push a button" and produce the extensive, confidential, and sensitive data requested by the subpoena is quite wrong.

## Conclusion

For these reasons, Plaintiffs' motion to compel should be denied.

Dated: June 23, 2020

Respectfully submitted:

By: */s/ Webster J. Arceneaux, III*

Webster J. Arceneaux, III, State Bar #155
LEWIS GLASSER PLLC
Post Office Box 1746
Charleston, WV 25326
(304) 345-2000
wjarceneaux@lewisglasser.com

Kelly A. Moore
MORGAN LEWIS & BOCKIUS LLP
101 Park Avenue
New York, NY 10178
(Tel): (212) 309-6612
(Fax): (212) 309-6001
kelly.moore@morganlewis.com

---

[1] Plaintiffs say the subpoena "strips away all patient identifying information." Mot. at 4. However, even properly de-identified data sets may be susceptible to re-identification if they fall into the wrong hands. *See* Br. of *amicus curiae* ACLU at 12-13, 15, No. 20-3075 (6th Cir. Jan. 24, 2020) (Doc. 27)("the academic and popular literature is replete with examples of large sets of de-identified records being re-identified by cross-referencing them with other, publicly available data sets"). This is another reason to deny Plaintiffs' motion, particularly in a case where Rite Aid is not a party and the data sought is of marginal relevance at best.

        John P. Lavelle, Jr.
        MORGAN LEWIS & BOCKIUS LLP
        1701 Market Street
        Philadelphia, PA 19103
        (Tel): (215) 963-4824
        (Fax): (215) 963-5001
        john.lavelle@morganlewis.com

*Attorneys for Rite Aid of West Virginia, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

**THE CITY OF HUNTINGTON,
WEST VIRGINIA,** *et al.,*

    **Plaintiffs,**

v.                                                                    Civil Action No. 3:17-cv-01362
                                                                                                        Hon. David A. Faber

**AMERISOURCEBERGEN DRUG
CORPORATION,** *et al.,*

    **Defendants,**

## CERTIFICATE OF SERVICE

I, Webster J. Arceneaux, certify that, on June 23, 2020, I caused the foregoing **RITE AID OF WEST VIRGINIA, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DISPENSING DATA** to be filed via the Court's ecf system and served on counsel of record for plaintiffs and defendants.

                                                                                                     */s/ Webster J. Arceneaux*