UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**THE CITY OF HUNTINGTON,**
        **Plaintiff,**

**v.**                                                   **CIVIL ACTION NO. 3:17-01362**

**AMERISOURCEBERGEN DRUG**
**CORPORATION, et al.,**
        **Defendants.**
_____

**CABELL COUNTY COMMISSION,**
        **Plaintiff,**

**v.**

                                                        **CIVIL ACTION NO. 3:17-01665**

**AMERISOURCEBERGEN DRUG**
**CORPORATION, et al.,**
        **Defendants.**

**<u>DISCOVERY RULING 11</u>**
**<u>ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL DEPOSITION</u>**
**<u>OF STEVEN H. COLLIS (AMERSOURCEBERGEN)</u>**

Pending before the Special Master is Plaintiffs' motion to compel the deposition of Amerisource Bergen Drug Corporation ("ABDC") CEO Steven H. Collis (ECF 517). Plaintiff has withdrawn their Motion to Compel Deposition of John H. Hammergren. ABDC filed their response (ECF 586) to which Plaintiffs replied (ECF 606). ABDC took exception to the reply and filed a motion to strike (ECF 609) and/or requested permission to submit a sur-reply which was included (ECF 609-2). Having fully considered the issues, the Special Master **DENIES** the motion to strike (ECF 609), **GRANTS** the motion to submit a sur-reply (ECF 609-2) and **GRANTS** the motion to compel the deposition of Mr. Collis (ECF 517) as further defined herein.

**I. Relevant Background**

This case has been transferred back to West Virginia for trial as the second bellwether in MDL2804. The Sixth Circuit Court of Appeals described the "tragic backdrop" of this "potentially momentous" litigation as the "the vast oversupply of opioid drugs in the United States [which] has caused a plague on its citizens and their local and State governments." *In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 923-24 (6th Cir. 2018).

West Virginia is no stranger to the opioid epidemic nor to this litigation. The Congressional hearing on the opioid epidemic in West Virginia culminated in a 325 page report entitled: *Red Flags and Warning Signs Ignored: Opioid Distribution and Enforcement Concerns in West Virginia*. The Subcommittee on Oversight and Investigations of the United States House of Representatives Energy and Commerce Committee held a hearing on May 8, 2018, wherein it received sworn testimony from, and posed written questions[1] to ABDC Chairman, President, and CEO, Steven H. Collis. The purpose of the hearing was to "examine the role that [ABDC] may have played in contributing to the opioid epidemic as well as distribution practices specific to West Virginia." *Red Flags* Report, p. 40.

Plaintiffs filed a Notice of Video Deposition of Mr. Collis (ECF 514). ABDC refused to present its senior corporate executive for deposition citing the "apex doctrine" leading to the filing of the instant motion and this discovery dispute. The Special Master has considered ABDC's motion to strike (ECF 609) the Plaintiffs' reply and denies the same. The timing of the disclosure of the Congressional documents set forth in ABDC-WVFED_PROD023 (34 documents) is of no consequence to the pending motion. The Special Master notes there exists bilateral accusations of

---

[1] Plaintiffs proffered for the Court that Congress posed a series of written questions to Mr. Collis including, but not limited to, May 8, 2017 (ABDCMDL00367145), February 15, 2018 (ABDCMDL00367149), May 31, 2018 (ABDCMDL00451026), July 3, 2018 and October 10, 2019. ABDC produced the written responses in a series of discovery disclosures which are now of record.

misconduct which are addressed in the reply and sur-reply.  Neither impact the factual and/or legal basis for the adjudication of the motion to compel the deposition of Mr. Collis.

## II. Positions of the Parties

ABDC argues that under the "apex doctrine," Plaintiffs should not be permitted to depose Mr. Collis because (1) Mr. Collis goes not have unique, personal knowledge, and that (2) the information Plaintiffs seek can be obtained through a less burdensome means.  (ECF 586 at 2). ABDC contends that there has been extensive discovery in this litigation, including more than 30 depositions of ABDC employees and company executives responsible for diversion control, regulatory issues, government affairs, and communications.  ABDC notes it has agreed to produce Mr. Collis' custodial file and that compelling his testimony is "unduly burdensome and nothing more than an attempt to harass Mr. Collis and the Company."  (ECF 486 at 14-15). Although not dispositive Plaintiffs' note ABDC did not submit an affidavit from Mr. Collis concerning his lack of unique, personal knowledge.

Plaintiffs argue that the United States Court of Appeals for the Fourth Circuit has not adopted the apex doctrine, nor commented on its validity. Moreover, Plaintiff correctly cites *In re C. R. Bard, Inc.*, 2014 U.S. Dist. LEXIS 89147 (S.D. W.Va. June 30, 2014) as the most recent consideration of the apex doctrine by the U.S. District Court for the Southern District of West Virginia.  Plaintiffs ask the Court to apply the same standard, reasoning and conclusion.  Plaintiffs argue that the importance of this litigation, coupled with Mr. Collis' voluntary Congressional testimony, justify an order compelling his testimony with or without consideration of the apex doctrine.

## III. Relevant Legal Principles

The Special Master finds instructive the legal principles set forth in *In re C. R. Bard, Inc.* which are summarized herein.  In general, a party is entitled to discovery which is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. Rule 26(b)(1). The recent amendment to Rule 26(b)(1) reminds parties that discovery must also be proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  This rule "cautions that all permissible discovery must be measured against the yardstick of proportionality." *In re C. R. Bard, Inc.* at *454 (citations omitted).

Under Federal Rule of Civil Procedure 26(c), discovery may be restricted or prohibited when necessary to protect a person or party from annoyance, embarrassment, oppression, or undue burden or expense. An order under Rule 26(c) issues upon a showing of good cause made in relation to a motion asserted by the person or party opposing the discovery. The moving party carries the burden of demonstrating the need for protection. To prevail on the grounds of burdensomeness, oppression, or breadth, the opposing party "must do more to carry its burden than simply make conclusory and unsubstantiated arguments." *In re C. R. Bard, Inc.* at *455 (citations omitted).

The "apex doctrine" applies to a specific subset of deposition notices that demand the appearance of high-level executives or high-ranking government officials. Developed to prevent a litigant from harassing or burdening a corporate or government adversary by taking depositions of its apex employees, the apex doctrine is both an expression of the proportionality requirement and a presumption of good cause for a protective order under Federal Rule of Civil Procedure 26(c).

Under the apex doctrine, before proceeding with the deposition of a high-level executive, a party must show that the executive (1) possesses special or unique information relevant to the issues being litigated, and (2) the information cannot be obtained by a less intrusive method, such as through written discovery or by deposing lower-ranking employees. *In re C. R. Bard, Inc.* at *458 (citations omitted).

Although the apex doctrine does not grant free passes to corporate executives to escape deposition testimony, it plainly deviates from the long-standing rule that "[a] witness ordinarily cannot escape examination by denying knowledge of any relevant facts, since the party seeking to take the deposition is entitled to test the witness's lack of knowledge." *In re C. R. Bard, Inc.* at *459 (citations omitted).  Application of the apex doctrine is also significant because it reallocates the burden that accompanies a motion for protective order. To show good cause under the apex doctrine, the moving party need only submit an affidavit from the executive stating that he or she lacks superior or unique knowledge of the relevant facts, and the burden then shifts to the proponent of the deposition to demonstrate the executive's likely knowledge and to show that less burdensome discovery methods have been or will be unsatisfactory, insufficient, or inadequate. *Id.*

## IV. Discussion

As generally noted by this Court in *Bard*, the apex doctrine ensures that there are good faith reasons for requiring an employee at the peak of corporate management to take time out of his or her busy schedule to testify. The prerequisites to an apex deposition are simple. The executive must have unique personal knowledge of relevant facts, and the information known to the executive must not be obtainable by an easier, less intrusive method of discovery than taking his or her deposition.

The difficulty in applying the apex doctrine can often lie in determining what qualifies as "unique" personal knowledge. *In re C. R. Bard, Inc.* at *461. Such is not the case in this instance. Unlike the apex deponent in *Bard*, ABDC did not submit an affidavit from Mr. Collis denying unique, personal knowledge of relevant facts. Nor does ABDC attest that deposing its CEO will be difficult from the standpoint of "convenience and burdensomeness"; nor that his position "places extraordinary demands on his time" which impairs his ability to "sit for a full day of testimony"; nor that while Collis is "participating in the deposition, it is unlikely that another employee will be capable of covering his duties and obligations." Id. at *462. None of these factors are implicated in the present discovery dispute.

Borrowing from the reasoning in *Bard*, this Court assessed the alleged burden of a deposition of a senior executive (C.R. Bard President and CEO John Weiland) in a mass tort multidistrict litigation as follows:

> The rationale behind the apex doctrine is that, without the required showing, high-level executives will be exposed to repetitive, abusive, and harassing depositions. That concern is not present here. To the contrary, Plaintiffs propose to take Weiland's deposition just once for use in approximately 10,000 cases currently pending in this MDL and in state courts. Accordingly, the burden is minimal when viewed in the context of the MDL. The extraordinary number of cases and the astronomical amount in controversy clearly weigh against the application of a rigid apex deposition rule better suited to an individual personal injury, employment, or contract dispute in which the 'apex' official had no personal knowledge.

Id. at *464. This is not a case where the "apex" official has no personal knowledge. Plaintiffs proffered for the record numerous examples from Mr. Collis' written and verbal answers to Congress which demonstrate core competence, personal involvement and direct knowledge of the factual issues the Court must decide during the bench trial. Mr. Collis has demonstrated that he possesses "special or unique information relevant to the issues being litigated" through a wide range of subject matters addressed during the Congressional inquiry.

Regardless of whether or not the apex doctrine is adopted in the Fourth Circuit, the issues surrounding Plaintiffs' notice to depose Mr. Collis can be resolved by considering the proportionality principles of Rule 26(b)(1).

The "importance of the issues at stake" in this case are paramount and unparalleled. The opioid epidemic in West Virginia is documented in a Pulitzer Prize winning newspaper series, triggered a Congressional investigation, spawned lawsuits brought by all 55 counties in West Virginia (including the Attorney General) in federal and state court.

The "amount in controversy" in this action is potentially in the hundreds of millions of dollars. Plaintiffs seek an abatement remedy for conduct they allege caused or contributed to the opioid epidemic in The City of Huntington and Cabell County, West Virginia. The amount in controversy is unquestionably significant.

The parties' "relative access to relevant information" weighs heavily in favor of compelling the deposition. The voluminous discovery record in this case demonstrates the complex and difficult burden of proof necessary for Plaintiffs to prevail at trial. Much, if not all, of the relevant information is exclusively in the possession of ABDC. Mr. Collis voluntarily testified before Congress on behalf of ABDC on the very same factual issues pending before the Court. Portions of this testimony were relevant and unique to conduct that may have impacted or occurred in this jurisdiction. Plaintiffs argue, and the Special Master agrees, that Plaintiffs should be permitted to test the validity, transparency and completeness of the Congressional testimony.

The parties' resources, or the lack thereof, is not a decisive factor. Both the Plaintiffs and ABDC have expended significant resources during this litigation. Deposing Mr. Collis is not such a financial burden as to justify a protective order.

The Special Master finds the deposition of Mr. Collis is important to resolving the issues pending before the Court.  His testimony will directly address many of the cornerstone factual issues the Court must decide as the trier of fact in this stipulated bench trial.  Mr. Collis' position on ABDC's role in the opioid epidemic during his Congressional testimony underscores the scope and depth of his knowledge of the factual issue pending before the Court. The Special Master concludes the Court will find the testimony of Mr. Collis important to the resolution of this matter.

The burden or expense of Mr. Collis deposition does not outweigh its likely benefit.  His testimony may streamline and advance the evidence presented at trial and significantly benefit the Court.  Moreover, his deposition has been cross-noticed by the Plaintiffs in the West Virginia Mass Litigation Panel.  Together with the West Virginia plaintiffs in MDL2804, all 55 counties and numerous municipalities in the State are presently engaged in litigation against ABDC. Compelling a single deposition, with appropriate safeguards and limitations, will significantly advance the discovery record for all the West Virginia cases pending in federal and state court.

Finally, when the scales of justice are balanced, the "tragic backdrop" of this "potentially momentous" litigation justifies the deposition of ABDC's chief executive officer regarding "the vast oversupply of opioid drugs in the United States [which] has caused a plague on its citizens and their local and State governments." *In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 923-24 (6th Cir. 2018).

It is hereby **ORDERED** that AmerisourceBergen Drug Corporation shall produce Steven H. Collis for deposition within thirty (30) days of entry of this Order on a date and location mutually agreed upon by the parties.  Plaintiffs may elect to conduct the deposition live and/or remotely in accordance with the deposition protocols established by the Court.  Plaintiffs shall have seven (7) hours on the record for questioning and must coordinate with the cross-noticing

WVMLP plaintiffs to allocate time accordingly.  The subject matters are limited to those addressed during the Congressional hearing and the written responses produced by ABDC. Upon request the Special Master will make himself available to attend (live or remotely) the deposition to resolve any discovery disputes and ensure the deposition is conducted efficiently and properly. Counsel shall confer with the Special Master regarding the deposition date as soon as a date has been agreed upon to ensure availability.

**RESPECTFULLY SUBMITTED,**

/s/ Christopher C. Wilkes
Christopher C. Wilkes
Special Master

Dated: June 28, 2020