IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON, <br><br> Plaintiff, <br><br> v. <br><br> AMERISOURCEBERGEN DRUG CORPORATION, et al., <br><br> Defendants. | Civil Action No. 3:17-01362 <br> Hon. David A. Faber |
| CABELL COUNTY COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> AMERISOURCEBERGEN DRUG CORPORATION, et al., <br><br> Defendants. | Civil Action No. 3:17-01665 <br> Hon. David A. Faber |

**DEFENDANTS' OBJECTION TO SPECIAL MASTER'S
DISCOVERY RULING NO. 9**

Defendants hereby object to Discovery Ruling No. 9 ("DR9"), Dkt. 621, which denies critical discovery on Plaintiffs' *past* abatement spending that is directly relevant to Plaintiffs' claims for the *future* costs of abatement.

Plaintiffs' "abatement remedy" seeks recovery "for the costs of rectifying" the opioid abuse crisis "going forward." DR9, at 3. Thus, discovery of what Plaintiffs *have already done* to abate that crisis is essential to Defendants' defense, because that discovery provides a critical avenue to test Plaintiffs' claimed future abatement costs. The opioid abuse crisis in Cabell County and the City of Huntington is not new, and Plaintiffs have been responding to and

1

seeking to abate that crisis for a number of years, with extensive assistance from the federal and state government. Those efforts have been at least partly successful, with opioid use and overdose deaths declining.[1]

Discovery of Plaintiffs' actions *in the past* to abate opioid abuse, and the money Plaintiffs spent on *past* abatement efforts, bears directly on the plausibility of the costs Plaintiffs claim they should recover "going forward" for abating the alleged nuisance. Furthermore, if Plaintiffs' prior abatement efforts have (or have not) been successful, those facts would bear directly on any claims they now make that they need money for future abatement efforts of the same sort. And if Plaintiffs claim an entitlement for various categories of abatement damages "going forward" when they have not undertaken such abatement in the past, or have reduced spending in those categories, that also would bear directly on the plausibility of Plaintiffs' claimed abatement remedy.

Judge Wilkes, however, denied this discovery. His ruling was based, in part, on a premature and unfounded factual determination that "whatever efforts and expenses Plaintiffs have put forth in attempting to remedy the nuisance have not been successful." DR9, at 4. And

---

[1] For example, overdose deaths in Cabell County declined by 22 to 26 percent between 2017 and 2018, and West Virginia Governor Jim Justice stated that "[i]t's incredibly heartening to see that we are finally starting to make some incredible strides in our fight against the terrible drug crisis that continues to hurt the people of our state and the entire nation." Press Release, Jim Justice, Governor of West Virginia, *DHHR Data Suggests West Virginia Overdose Deaths Appear to be Declining* (Sept. 5, 2019), https://governor.wv.gov/News/press-releases/2019/Pages/Gov.-Justice-DHHR-data-suggests-West-Virginia-overdose-deaths-appear-to-be-declining.aspx. As another example, the rate of opioid prescriptions per 100 people in West Virginia in 2018 was the lowest it has been since the data first became available in 2006. *See* National Institute on Drug Abuse, *West Virginia: Opioid-Involved Deaths and Related Harms*, https://www.drugabuse.gov/drug-topics/opioids/opioid-summaries-by-state/west-virginia-opioid-involved-deaths-related-harms.

he further concluded that "the prior expenses incurred have marginal value in determining the future costs of abatement." *Id*.

With respect, Judge Wilkes was wrong on both points—and his ruling is a product of these errors and amounts to an abuse of discretion. The "prior expenses incurred" in abating the effects of opioid abuse are directly relevant to Plaintiffs' claim for future abatement relief. The most obvious, direct and effective way to test Plaintiffs' claim that they will incur various categories of abatement expense *in the future* is to look at what Plaintiffs have done *in the past*. Thus, without full discovery of the "prior expenses incurred" in abating opioid-related issues, Defendants will be left without a central factual response to Plaintiffs' claim about what they would do in the future to abate opioid-related issues.

Likewise, Judge Wilkes's observation that "whatever efforts and expenses Plaintiffs have put forth in attempting to remedy" opioid-related issues "have not been successful" was legal error, and an abuse of discretion. It is a disputed fact question whether prior abatement efforts have succeeded, and it was error for Judge Wilkes to make any such factual determination—without any supporting evidence—as a basis to deny discovery. Furthermore, even if "efforts and expenses" *already* "put forth" by Plaintiffs "have not been successful," that would be directly relevant information if Plaintiffs now seek recovery for *future* "efforts and expenses" that are comparable, or if Plaintiffs claim that future abatement costs will succeed when prior efforts have not. Furthermore, if (contrary to Judge Wilkes's unfounded fact-finding) Plaintiffs' prior abatement efforts have succeeded in whole or in part—and there is evidence they have, *see supra* p. 2 n. 1—that also bears directly on whether *additional* abatement is warranted (and how much it will cost).

Nor does the availability of expert discovery solve the problem, contrary to Judge Wilkes's reasoning. *See* DR9, at 4. Defendants are entitled to discover ***facts*** that could ***contradict*** an expert's opinion on abatement remedies or could be used to challenge an expert's opinion.

Accordingly, Defendants object to Discovery Ruling 9, and respectfully request that the Court set aside that ruling and enter an order granting Defendants' Motion to Compel. *See* Dkt. 200.

**BACKGROUND**

On January 31, 2020, Defendants moved to compel Plaintiffs to provide discovery on expenses they have incurred, and programs they have undertaken, to respond to the opioid abuse crisis. Dkt. 150. On March 24, 2020, Judge Wilkes issued Discovery Ruling 1 ("DR1") granting that motion. Dkt. 248.

On April 3, 2020, Defendants sent a letter to Plaintiffs clarifying the information, data, and documents they expected Plaintiffs would produce pursuant to DR1 and Defendants' discovery requests. Dkt. 423, 475, 494. The letter explained that Defendants expected to receive a complete list of categories of abatement damages Plaintiffs seek; accounting data on opioid-related expenditures; annual reports; operational data showing opioid-related actions; FTE counts and salary, wage, and benefits data for Plaintiffs' employees; and documents and data regarding Plaintiffs' funding of hospitals, clinics or treatment centers. *Id.*

After several rounds of back-and-forth, Plaintiffs provided on June 13 a non-exhaustive listing of preliminary categories of the abatement damages they are seeking, but declined to provide any further response to DR1. Ex. A (June 13, 2020 email from P. Farrell to Judge Wilkes). In particular, Plaintiffs declined to provide the accounting data and documents reflecting historic spending and grant revenue for those abatement categories. Moreover, many

4

of the preliminary categories on Plaintiffs' list were so vague (such as "Community Prevention and Resiliency") as to provide almost no information about the nature of the relief sought.

Defendants then filed their motion to compel. Dkt. 422, 423. Defendants' proposed order sought to require Plaintiffs to produce the following supplemental information:

1. A complete list of the categories of abatement damages that each Plaintiff seeks in this litigation, including those categories "proffered" by counsel on June 13, 2020, as well as a summary of the proposed abatement programs that are included in each category.

2. All documents reflecting the money spent within each of those categories by Huntington or Cabell County.

3. All accounting data, from at least 2009-2019, both revenue and expense, for any and all agencies, divisions or departments that have incurred, or are expected to incur in the future, any opioid-related expenditures. This must include at least accounting data for the Huntington Police Department, Huntington Fire Department, Cabell County Sheriff's Department, Cabell County Prosecuting Authority's Office, and Cabell County Emergency Medical Services. This should include annual reports and operational datasets reflecting all spending in the categories identified in response to Paragraph 1 above.

4. All documents and data reflecting or describing funding that Plaintiffs provided to hospitals, clinics, or treatment facilities engaged in providing treatment or other services in relation to opioid abuse disorder or other opioid-related issues.

Judge Wilkes denied the motion to compel in DR9, issued on June 23, 2020. Dkt. 621.

### ARGUMENT

Plaintiffs seek to recover money from Defendants. *See, e.g.*, Plaintiffs' Opposition to Defendants' Motion for Summary Judgment Regarding Statute of Limitations, at 2, Dkt. 288 ("Plaintiffs are seeking money from Defendants"). In particular, Plaintiffs seek an "abatement remedy," which Judge Wilkes described as money "intended to compensate the plaintiff for the costs of rectifying the [alleged] nuisance, going forward." DR9, at 3.

The crisis of opioid abuse and addiction has been an ongoing issue in Huntington and Cabell County for at least the past decade, if not longer. And during that time, the local, state

5

and federal governments have been involved in extensive efforts to abate the opioid crisis. *See*, *e.g.*, Compl. ¶¶ 1149-97; *supra* p. 2 n.1.

Since Plaintiffs are seeking an "abatement remedy" for the ***future*** "costs of rectifying" the opioid crisis, information about the costs ***already incurred*** to rectify the opioid crisis is directly relevant evidence that would allow Defendants to test and respond to Plaintiffs' claims. For instance, if Plaintiffs claim a large category of "future costs," but have spent zero or little money in that category in the past, this would be highly relevant evidence that contradicts the claim for future abatement costs. Likewise, if Plaintiffs claim substantial "future costs" in an area in which Plaintiffs have been ***reducing*** their historic spending, that would also be highly relevant as a defense to Plaintiffs' claimed abatement remedy. Furthermore, if Plaintiffs have spent a certain amount of money ***in the past*** in a given abatement category, and now claim they would spend vastly larger amounts ***in the future*** in that category, the historic spending would be directly relevant to refuting that claim.

Judge Wilkes, however, denied further discovery of Plaintiffs' past abatement spending, based on his conclusion that "the prior expenses incurred have marginal value in determining the future costs of abatement." DR9, at 4. That was legal error, and an abuse of discretion. Contrary to Judge Wilkes's conclusion, information on Plaintiffs' historic spending in different abatement categories is directly relevant to their claims for "future abatement" and highly probative of Defendants' defenses to those claims. Because Plaintiffs are claiming costs for what they ***will do in the future*** to abate opioid-related issues, the single most relevant factual information for Defendants' response is what Plaintiffs ***have done in the past***.

Furthermore, Judge Wilkes erred as a matter of law in concluding that past abatement costs are not relevant because "whatever efforts and expenses Plaintiffs have put forth in

6

attempting to remedy the [alleged] nuisance have not been successful." *Id.* It is a disputed fact question whether prior "efforts and expenses Plaintiffs have put forth" in abating the opioid abuse crisis have succeeded. Judge Wilkes, without any evidence, made a factual determination that those prior efforts "have not been successful." There is clearly evidence to the contrary. *See supra* p.2 n.1. And it was legal error, and an abuse of discretion, to deny discovery based on a fact-finding—unsupported by any evidence—that prior abatement efforts "have not been successful." *See Boyer v. Riverhead Cent. Sch. Dist.*, 2007 WL 749676, at *4 (E.D.N.Y. Mar. 7, 2007) (denying motion for protective order limiting discovery that "would be tantamount to an impermissible finding of facts that have yet to be tested"); *see also Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716 (6th Cir. 1999) (an abuse of discretion is "a clear error of judgment" that may result in "substantial unfair prejudice"); *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 255 F. Supp. 3d 700, 705 n.1 (E.D. Mich. 2017) (it is an abuse of discretion "when the court . . . relies on clearly erroneous findings of fact").

Furthermore, whatever the success of prior abatement efforts, the steps already taken by Plaintiffs to abate the opioid abuse crisis are directly relevant to their claimed abatement remedy. To illustrate, if Plaintiffs claim a ***future*** abatement remedy based on a category of abatement efforts that have "not been successful" in the past, that would refute and undermine Plaintiffs' claim for those future costs. Alternatively, if prior abatement efforts have succeeded (in whole or in part), as recent developments strongly suggest, *see supra* p.2 n.1, that would bear directly on the need for ***additional*** abatement costs beyond what is already being expended. It was thus legal error, and an abuse of discretion, to dismiss the relevance of prior abatement efforts, whether or not they have been successful.

Judge Wilkes seemingly envisioned that expert discovery can be a substitute for fact discovery on Plaintiffs' past abatement activities. *See* DR9, at 4 ("To the extent the factual record does not support an expert's opinion, the parties may challenge the same in motion practice in accordance with the Court's scheduling order."). Not so. First of all, Defendants are entitled to discover ***facts*** that could ***contradict*** an expert's opinion on an abatement remedy. Thus, the question is not merely whether the record "support[s] an expert's opinion," but rather whether Defendants are entitled to fact discovery that would allow them to challenge and disprove expert testimony opining on large categories of abatement damages that could be contradicted by the historic record.

Furthermore, under the Court's scheduling order, the period for expert discovery is highly truncated, and Defendants' expert reports are due a mere ten days after Plaintiffs' expert reports. There simply will not be time for motions practice or follow-up fact discovery at that late stage. Fact discovery on central evidence needed to respond to Plaintiffs' claimed abatement remedy should proceed now, in advance of expert reports. *See, e.g.*, *Balt. Aircoil Co. v. SPX Cooling Techs.*, 2016 WL 4426681, at *19 (D. Md. Aug. 22, 2016) (belated document production until "after all fact depositions were concluded" was not cured by giving experts "ample time to review" the documents); *Bengelsdorf v. Lumenis, Inc.*, 2011 WL 617118, at *2 (M.D. Tenn. Feb. 11, 2011) (plaintiffs' "decision to employ an expert witness at trial does not entitle plaintiffs to defer responding to [damages] discovery until the deadline for disclosing opinions of expert witnesses").

In short, Defendants are entitled to full discovery of Plaintiffs' ***prior and historic*** abatement-related activities and spending in order to respond to Plaintiffs' claims for recovery of the cost of ***future*** abatement-related spending. Without this discovery, Defendants will be

deprived of directly pertinent evidence that would permit them to refute and respond to Plaintiffs' claim for abatement relief. That outcome would be contrary to the Rules of Civil Procedure, and principles of fairness and due process. And it also would amount to trial by ambush if Plaintiffs are permitted to present expert testimony claiming large amounts of money as an "abatement remedy" while denying discovery of their historic abatement spending that could be used to challenge the experts' opinions and analysis.

## CONCLUSION

For the foregoing reasons and those stated in Defendants' motion to compel, Defendants respectfully request that this Court set aside DR9 and issue an order directing Plaintiffs to provide the following categories of discovery related to their claim for abatement:

1. A complete list of the categories of abatement damages that each Plaintiff seeks in this litigation, including those categories "proffered" by counsel on June 13, 2020, as well as a summary of the proposed abatement programs that are included in each category.

2. All documents reflecting the money spent within each of those categories by Huntington or Cabell County.

3. All accounting data, from at least 2009-2019, both revenue and expense, for any and all agencies, divisions or departments that have incurred, or are expected to incur in the future, any opioid-related expenditures. This must include at least accounting data for the Huntington Police Department, Huntington Fire Department, Cabell County Sheriff's Department, Cabell County Prosecuting Authority's Office, and Cabell County Emergency Medical Services. This should include annual reports and operational datasets reflecting all spending in the categories identified in response to Paragraph 1 above.

4. All documents and data reflecting or describing funding that Plaintiffs provided to hospitals, clinics, or treatment facilities engaged in providing treatment or other services in relation to opioid abuse disorder or other opioid-related issues.

Respectfully submitted,

*McKesson Corporation*
By Counsel:

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
Jason L. Holliday (WVSB #12749)
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Tel: (304) 345-0200
jwakefield@flahertylegal.com
jholliday@flahertylegal.com

*/s/ Carol Dan Browning*
Carol Dan Browning
Stites & Harbison, PLLC
400 West Market Street, Suite 1800
Louisville, Kentucky 40202
Tel: (502) 587-3400
cbrowning@stites.com

*/s/ Timothy C. Hester*
Timothy C. Hester
Mark H. Lynch
Christian J. Pistilli
Laura Flahive Wu
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
mlynch@cov.com
cpistilli@cov.com
lflahivewu@cov.com

***AmerisourceBergen Drug Corporation***
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

***Cardinal Health, Inc.***
By Counsel:

*/s/ Brian A. Glasser*
Brian A. Glasser (WVSB #6597)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
BAILEY GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
*Counsel in Cabell County action*

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard@wc.com
ahardin@wc.com

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 1st day of July, 2020, the foregoing **"Defendants' Objection to Special Master's Discovery Ruling No. 9"** was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
