IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br>    Plaintiff, | |
| v. | CIVIL ACTION NO. 3:17-01362 |
| AMERISOURCEBERGEN<br>DRUG CORPORATION, et al,<br>    Defendants. | |
| CABELL COUNTY COMMISSION,<br>    Plaintiff, | |
| v. | CIVIL ACTION NO. 3:17-01665 |
| AMERISOURCEBERGEN<br>DRUG CORPORATION, et al,<br>    Defendants. | |

**AMERISOURCEBERGEN DRUG CORPORATION'S APPEAL FROM
DISCOVERY RULING 11 GRANTING PLAINTIFFS' MOTION TO COMPEL
THE DEPOSITION OF AMERISOURCEBERGEN'S CEO STEVEN H. COLLIS**

AmerisourceBergen Drug Corporation ("ABDC") appeals the Special Master's June 29, 2020 Discovery Ruling No. 11 that granted Plaintiffs' motion to compel the deposition of ABDC's CEO, Steven H. Collis. (ECF 639) This Court should reverse. Plaintiffs bear the burden to show that Mr. Collis has unique or superior knowledge that could not be obtained through less burdensome means. The Special Master did not hold Plaintiffs to their burden—indeed, the ruling does not even engage on the analysis required under the apex doctrine. Instead, the Special Master ordered the deposition of ABDC's CEO even though Plaintiffs have not yet taken a single one of their three upcoming ABDC individual fact witness depositions;

1

even though Plaintiffs have not yet taken their noticed Rule 30(b)(6) deposition of ABDC's corporate representative, during which Plaintiffs will have the opportunity to explore issues they seek to learn about from ABDC (from witnesses who are far better positioned that Mr. Collis to answer questions); and even though there is an extremely large record of depositions and documents from the Track One case that affirmatively establishes that Plaintiffs have not, and perhaps cannot, meet their apex doctrine burdens.

On top of all of this, the Special Master's ruling, if upheld, threatens to open the door to limitless efforts on the part of other plaintiffs throughout the country to try to take the deposition of Mr. Collis—a current, sitting CEO of one of the three major distributors of health products in this country—in an environment where, now in particular, he and ABDC are mobilized in helping the country through an extreme health crisis.

## INTRODUCTION

The Special Master's ruling is contrary to law. This Court should reverse to ensure that discovery in this litigation proceeds according to the well-established principles of the apex doctrine, which prohibit depositions of high-level executives like Mr. Collis unless the plaintiff can meet its burden to show that the executive (1) has unique or superior personal knowledge, that (2) cannot be obtained through some other, less burdensome source, such as Rule 30(b)(6) depositions, depositions of lower-level employees, or written interrogatories.

The very purpose of the apex doctrine is to prevent litigants from harassing or burdening a corporate adversary by taking depositions of its apex employees. What we have here is a paradigmatic example of when the deposition of a high-ranking individual should be precluded based on the apex doctrine. Unless this Court reverses and puts things back on the right track, the Special Master's ruling (despite its inherent infirmities) will be used as a lever to try to open the door to depositions elsewhere.

This is not an idle concern. There is a live dispute over a request for Mr. Collis's deposition in Pennsylvania state court—and the plaintiffs there already have provided the Special's Master's ruling to that court. There are over 2,700 cases consolidated in the federal MDL, with three cases (including this one) already remanded to federal courts for separate trials, as well as hundreds of cases pending in state courts around the country. Mr. Collis's deposition presumably will be sought in those cases as well, with the Special Master's decision put front and center. Allowing the Special Master's ruling to stand, and risking a flood of requests for apex depositions that surely will follow, is especially inappropriate on this record, which is barren of any attempt by the Plaintiffs to meet their burden, and where the Special Master did not actually apply the apex doctrine. A ruling with these ramifications requires and deserves an application of the two-pronged apex doctrine test.

That did not happen here. While the Special Master recited the legal standard under the apex doctrine, he did not faithfully apply it. The Special Master erroneously concluded that the deposition could move forward simply because Mr. Collis might have some knowledge on the topics Plaintiffs wanted to explore. That was the wrong approach. Under the apex doctrine, the question posed by the first element is not whether Mr. Collis has *some knowledge*—instead it is whether he has *unique or superior knowledge*. Compounding the problem, the Special Master turned the apex doctrine on its head by improperly requiring ABDC to prove a negative—that is, that Mr. Collis has no unique personal knowledge—despite the controlling law that places the burden firmly on Plaintiffs and places no burden on ABDC to show anything at all and despite that the extensive record that already showed that Plaintiffs' burden was *not* met.

Aside from noting that the second element exists, the Special Master's ruling says nothing about it. Plaintiffs, for their part, did not even try to make a showing that the

information sought could not be obtained through less burdensome means. Nor could they make any such as showing on this record. Indeed, Plaintiffs—and the Special Master too—have jumped the gun when it comes to Mr. Collis's deposition. Under the apex doctrine, the deposition of a high-level employee is the last resort after all other avenues to obtain information have been exhausted. That has not happened here. These Plaintiffs have not yet taken a single deposition of any ABDC witness or ABDC's corporate representative. And if the topics identified in Plaintiffs' Rule 30(b)(6) notice to ABDC do not cover all the topics Plaintiffs believe they need to explore, that is a problem of their own making but one that is easily remedied by expanding the topics.

So why did the Special Master conclude that Plaintiffs may take Mr. Collis's deposition? In place of an apex analysis, the ruling engages in a discussion of broader (and irrelevant) proportionality principles, focusing on the "importance of the issues at stake," the "amount in controversy;" and the "parties' relative access to relevant information." That was the wrong approach. The apex doctrine is the beginning of the analysis—proportionality does not even come into play unless the doctrine's requirements are met. Nor is there any exception to the apex doctrine for "important" litigation.

In sum, the Special Master's ruling—and the reasoning used to reach it—is contrary to the apex doctrine's settled requirements, undermines the doctrine's purpose, and risks opening the floodgates to unnecessary, burdensome, and harassing depositions in this case and others across the country. Reversal is therefore required.

### FACTUAL AND PROCEDURAL BACKGROUND

***Plaintiffs' motion to compel.*** Plaintiffs moved to compel the deposition of Mr. Collis, attaching hundreds of pages of exhibits to their motion (drawn from the millions of pages of discovery available to them). (ECF 517-1) None of that material showed that (1) Mr. Collis

4

possesses unique personal knowledge about the facts at issue; or that (2) the information is not available through another, less burdensome, means. Instead, Plaintiffs simply pointed to various public statements Mr. Collis made at a Congressional hearing on the opioid crisis in May 2018 and ABDC's written responses to questions associated with that hearing, Mr. Collis's knowledge of ABDC's diversion control program, Mr. Collis's involvement in government affairs and lobbying-related issues, and Mr. Collis's knowledge of litigation concerning distribution in West Virginia—but without even trying to establish Mr. Collis's unique knowledge on these subjects. (ECF 517-1 at 6-7, 11-15, 20-24)

*ABDC's response.* ABDC responded by explaining that nothing in Plaintiffs' motion or its myriad attachments met their burden under the apex doctrine. (ECF 586) On the first element, ABDC explained that the materials Plaintiffs attached to their motion did not show that Mr. Collis has unique or superior knowledge, and in fact showed the opposite—that others at ABDC have knowledge on the topics at hand. ABDC further explained that discovery already conducted showed that Mr. Collis is not, in fact, the only one at ABDC with personal knowledge of the topics on which Plaintiffs sought information. (*Id.* at 4-12) Far from it—not a single ABDC employee indicated that Mr. Collis was the only (much less a better) source for the information Plaintiffs want to ask about. (*Id.* at 13). The record, in fact, showed that many others were involved—indeed, more involved—in the topics on which Plaintiffs sought information. (*Id.*) As for the second element, ABDC pointed out that Plaintiffs had made no effort at all to show that the information they wanted from Mr. Collis could not be obtained through less burdensome means. (*Id.* at 12-13)

*Plaintiffs' reply.* Plaintiffs' reply said nothing more on their ability to satisfy the apex analysis. Instead, they made a plea for Mr. Collis's deposition based on the importance of this

case. (ECF 606 at 8-10) Plaintiffs' reply also tried to distract by falsely accusing ABDC of failing to "disclos[e] a document, long sought by Plaintiffs in the MDL, but produced only last week." (*Id.* at 6) The document Plaintiffs claimed was hidden was ABDC's June 14, 2018 written response to questions following the May 2018 Congressional hearing. What Plaintiffs either missed or chose not to mention, however, was that the exact same document was produced more than a year earlier in Track One of the MDL, to the same lawyers who are Plaintiffs' counsel in this case. (ECF 609 at 2-3) ABDC moved to strike Plaintiffs' reply on the basis that it contained false statements that were made either knowingly or recklessly, as shown by the fact that Plaintiffs themselves had attached the very same earlier-produced document to their opening motion. (*Id.* at 1-3) ABDC also moved (alternatively) to file a sur-reply; the Special Master denied the motion to strike and granted leave for the sur-reply.

*The Special Master's ruling.* The Special Master granted Plaintiffs' motion to compel, ruling that Mr. Collis must appear for a 7-hour deposition within 30 days—allowing Plaintiffs to decide whether it would be live or in person—limited to "those [topics] addressed during the Congressional hearing and the written responses produced by ABDC." (ECF 639) The Special Master's decision, which adopted Plaintiffs' proposed order almost verbatim, recited the apex doctrine—but without applying its elements—and then pivoted to a discussion of broader (and irrelevant) "proportionality principles of Rule 26(b)(1)." (*Id.* at 7) That discussion focused on the "importance of the issues at stake," the "amount in controversy;" and the "parties' relative access to relevant information." (*Id.* (internal quotation marks omitted)) Notably, the Special Master's discussion of these considerations did not address whether—much less show that— Mr. Collis possesses unique personal knowledge or that the information Plaintiffs sought could not be obtained through other, less burdensome, means. Moreover, rather than holding Plaintiffs

to *their* burden under the apex doctrine, the Special Master improperly imposed a burden on *ABDC* by suggesting that it should have submitted an affidavit from Mr. Collis "denying unique, personal knowledge of relevant facts." (*Id.* at 6). No case law, however, compels the filing of an affidavit to give rise to the presumption against apex depositions, and the extensive record here—ABDC's document productions and depositions so far—shows that Mr. Collis does not have unique, personal knowledge.

*The current discovery posture.* Plaintiffs have access to significant discovery from Track One. Specifically, they have 19 deposition transcripts of ABDC witnesses, including company executives responsible for diversion control, regulatory issues, government affairs, and communications. Several additional ABDC witnesses were deposed in state court cases in New York and Ohio. Those transcripts too are available to Plaintiffs. Thus, in total, Plaintiffs have access to 34 deposition transcripts consisting of more than 8,000 pages of testimony from ABDC witnesses. Plaintiffs here are represented by the same lawyers who deposed most of these witnesses in other litigation. As for this case, the parties already have agreed to the depositions of three ABDC fact witnesses, and Plaintiffs have issued a Rule 30(b)(6) notice for the deposition of ABDC's corporate representative(s). Document discovery is ongoing, and ABDC is producing documents based on requests for the production of document productions and negotiated custodians and search terms.

## STANDARD OF REVIEW

This Court must decide this issue de novo, including all findings of fact, conclusions about the legal standard to be applied, legal conclusions, and application of law to facts. Fed. R. Civ. P. 53(f)(3) (district courts "must decide de novo all objections to findings of fact made or recommended by a master" unless the parties stipulate to a clear-error standard of review); Committee Notes on Rules – 2003 Amendment (noting that the amendment "changes the

standard of review for findings of fact made or recommended by a master"); Fed. R. Civ. P. 53(f)(4) (a special master's legal conclusions and application of law to the facts always are reviewed de novo); *Gilbane Bldg. Co. v. FRB*, 80 F.3d 895, 902 (4th Cir. 1996) (application of law to facts); *Delco Store #152, Inc. v. Woodward*, No. 97-2694, 1999 U.S. App. LEXIS 5743, *7 (4th Cir. Mar. 29, 1999) (legal conclusions).

## ARGUMENT

"The prerequisites to an apex deposition are simple." *In re C.R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, No. MDL 2187, 2014 WL 12703776, at *4 (S.D. W. Va. June 30, 2014). "[B]efore proceeding with the deposition of a high-level executive, a party must show that the executive (1) possesses special or unique information relevant to the issues being litigated, and (2) the information cannot be obtained by a less intrusive method, such as through written discovery or by deposing lower-ranking employees." *Id.* at *3.[1] It is equally clear that the party seeking the deposition of an apex witness bears the burden to make these showings. *Id.*; *see also Reif v. CNA*, 248 F.R.D. 448, 453 (E.D. Pa. 2008).

Neither the Special Master nor Plaintiffs dispute that the apex doctrine applies to individuals like Mr. Collis. Nor do they dispute that the proponent of an apex deposition bears the burden of overcoming the presumption against such depositions or that an apex individual cannot be ordered to sit for a deposition unless the party seeking the deposition shows that the would-be deponent has unique or superior personal knowledge that cannot be obtained by less burdensome means. Yet, the Special Master's ruling paid only lip service to the legal standard,

---

[1] *See also, e.g., United States ex rel. Galmines v. Novartis Pharm. Corp.*, No. 06-3213, 2015 WL 4973626, at *4 (E.D. Pa. Aug. 20, 2015) ("[T]he apex doctrine instructs courts to consider whether the high-level official has personal or superior unique knowledge of the facts alleged and whether the information could be obtained from lower employees or through less burdensome means."); *Cross by & Through Steele v. XPO Express, Inc.*, No. CV 4:15-2480-BHH, 2017 WL 10544634, at *1-2, n.1 (D.S.C. May 8, 2017) (applying the apex doctrine and collecting cases from other district courts in the Fourth Circuit).

failed to hold Plaintiffs to their burden (or even address how they supposedly met it), and ignored the overwhelming evidence ABDC presented (even though it had no burden to do so) showing that Mr. Collis does *not* have unique or superior personal knowledge of the subjects at issue, and that other individuals easily could provide the discovery in a less burdensome way.

**I.   THIS COURT SHOULD DENY PLAINTIFFS' MOTION TO COMPEL A DEPOSITION OF ABDC'S CEO STEVEN COLLIS**

**A.   Plaintiffs Did Not Meet Their Apex Doctrine Burden**

The apex doctrine exists to prevent burdensome and harassing depositions of a party's CEO who possesses no unique personal knowledge that cannot be obtained through other, less burdensome, means. Ordering Mr. Collis's deposition contravenes the doctrine and its purpose.

**1.   Plaintiffs Did Not Meet Their Burden To Show That Mr. Collis Has Unique Or Superior Personal Knowledge**

Plaintiffs did not show that Mr. Collis has unique knowledge even though they had ample means to attempt to do so given the extensive discovery they already have. Plaintiffs have taken extensive discovery related to the topics at issue, including depositions of more than 30 ABDC witnesses. *None* of these deponents testified that Mr. Collis is the *only* person who would be able to testify as to *any* particular topic relevant to this litigation. In the parlance of the apex doctrine, not one witness testified or even suggested or implied that Mr. Collis has unique or superior knowledge on any topic or issue.

As for the subjects the Special Master identified as fair game for Mr. Collis's deposition—the May 2018 Congressional hearing related to opioid distribution, and the written responses produced by ABDC as part of that hearing—Mr. Collis does not have unique personal knowledge about either of them. ABDC does not dispute that Mr. Collis, as CEO, certainly has *some knowledge* about these subjects, but that is not the relevant question. Instead, the question is whether Mr. Collis has "*unique* personal knowledge," *In re C.R. Bard*, 2014 WL 12703776, at

9

\*4 (emphasis added), or "*superior* unique knowledge," *Galmines*, 2015 WL 4973626, at \*4 (emphasis added), on the subjects at issue. Plaintiffs did not show—and the Special Master did not find—that he does.

Plaintiffs ultimately want information about ABDC's diversion control policies—and to be sure, that issue lies at the heart of their case. But Plaintiffs' efforts to relate their search for information on this issue to the Congressional hearing is strained. Specifically, Plaintiffs contend that Mr. Collis should be subjected to a deposition because he made public statements about ABDC's diversion control efforts in West Virginia during the hearing. But the mere fact that diversion control was discussed during Mr. Collis's testimony by no means makes him uniquely situated or places him in a superior position to discuss diversion control efforts. *See Naylor Farms, Inc. v. Anadarko OGC Co.*, No. 11-cv-01528, 2011 WL 2535067, at \*3 (D. Colo. June 27, 2011) ("Isolated general statements [made by an executive] do not defeat the application of the apex doctrine.") (internal quotation marks omitted).[2]

Moreover, Mr. Collis's knowledge in this regard is far from unique—as shown by the extensive discovery Plaintiffs already have on *the facts* related to ABDC's diversion control program that formed the basis of Mr. Collis's congressional testimony. (*See* ECF 517 at 4 (Plaintiffs acknowledging that the requested deposition "relate[s] to *the facts* presented by each witness to Congress") (emphasis added). In particular, Plaintiffs have deposition testimony from other high-ranking ABDC executives, such as Chris Zimmerman, who is the Senior Vice President of Corporate Security & Regulatory Affairs (CSRA). During his decades of

---

[2] The fact that Mr. Collis testified before Congress does not alone justify the deposition. For purposes of the apex analysis, it does not matter that Mr. Collis "voluntarily" testified before Congress. Providing requested testimony at a Congressional hearing and providing deposition testimony in civil litigation are two entirely different things. The concerns underlying the apex doctrine—and hurdles that must be cleared before an apex deposition may be conducted—do not exist when it comes to Congressional testimony.

employment with the company, Mr. Zimmerman has been involved in the day-to-day operations of the diversion control program at ABDC, and he has been deposed three times in opioid-related litigation. Plaintiffs also have twice deposed David May (Vice President, CSRA), along with numerous other individuals involved in diversion control efforts. This extensive record certainly provides Plaintiffs with ample information about ABDC's diversion control efforts in West Virginia. And this extensive discovery certainly dwarfs the "over two pages" of Mr. Collis's written statement to Congress—which, in any event, was not personally or solely drafted by Mr. Collis.

Perhaps more importantly, none of the dozens of witnesses who have testified on behalf of ABDC ever indicated that *only* Mr. Collis could speak to any particular topic related to diversion control—or any topic at all for that matter. And none of the documents Plaintiffs cited in their motion come even close to establishing establish the need to depose Mr. Collis—in fact, they actually undercut Plaintiffs' position. For example, Plaintiffs note that "Mr. Collis signed follow-up letters to the Energy & Commerce Committee." (ECF 517 at 7 & n.13) But the primary purpose of the two-paragraph letter sent on Mr. Collis's letterhead was to briefly highlight the importance of cooperation with DEA and to attach a much more detailed letter sent to DEA by David May. (*See* ECF 586 at 7 n.3) Plaintiffs likewise argued that a deposition of Mr. Collis is fair game because he "exchanged emails discussing communication strategies around the hearing." (ECF 517-1 at 7 & n.15). But the one email chain they cite does not include any emails sent to, from, or even copying Mr. Collis.

Nor do Plaintiffs' citations to Mr. Collis's other written and public statements help them. Contrary to Plaintiffs' unsupported assertion, Mr. Collis has not "held himself out as an active and uniquely informed advocate for ABDC"—much less on "multiple occasions." (*See id.* at 11)

11

Plaintiffs identify an internal email—which did not include Mr. Collis—discussing a newspaper article about Mr. Collis's speech to the Philadelphia Chamber of Commerce that touched upon diversion control issues. (*Id.* at 12 & n.35)  But the mere fact that Mr. Collis engaged in a high-level discussion of diversion control issues does not show that he has *superior* knowledge or make him *uniquely* suited to provide deposition testimony on that topic.

Plaintiffs also point to an article published under Mr. Collis's byline on LinkedIn. (*Id.* at 12 & n.36)  But the fact that this article was published under Mr. Collis's name does mean that he exclusively authored it (indeed, chief executives often do not), nor does it mean that he is the only person who can testify about the article or the topics discussed in the article.  In fact, Gabe Weissman, ABDC's Senior Vice President, Communications, testified that he (Mr. Weissman) participated in the drafting of this article.  *See* ECF 586-1 at 83:5-20.  And, Mr. Weissman has never indicated that *only* Mr. Collis could provide testimony on the article or the issues it discussed.

Plaintiff's contention that certain of Mr. Collis's statements "evidence a unique understanding and deep level of personal involvement with ABDC's compliance measures" is an exaggeration.  (*See* ECF 517-1 at 12)  Indeed, the fact that ABDC operates secure warehouses, ships controlled substances only to appropriately licensed entities, reports suspicious orders, and employs teams of experts to do so—as touted in Plaintiffs' motion—does not reflect a "deep level" of involvement; instead, it is basic information available on the Company's website, in numerous press releases, and through the many existing deposition transcripts.

In the end, Plaintiffs tried to gin up unique or superior personal knowledge on the part of Mr. Collis based on selected pieces of the discovery record taken out of context.  But, as explained, nothing they offered came close to establishing unique or superior knowledge on the

part of Mr. Collis. In fact, as also explained, the documents Plaintiffs offered showed exactly the opposite.

### 2. Plaintiffs Did Not Meet Their Burden To Show That The Information They Seek From Mr. Collis Is Not Available Through Other, Less Burdensome, Means

Plaintiffs also failed to meet the second prong of the apex doctrine. Plaintiffs, in fact, did not even *try* to show that the information they seek cannot be obtained in a less burdensome way. Indeed, Plaintiffs' request for Mr. Collis's deposition is premature—and the Special Master's ruling jumps the gun—because Plaintiffs have not yet taken a single deposition of any ABDC witness in this case (while the parties have agreed upon three). Plaintiffs also issued a Rule 30(b)(6) notice to ABDC on May 8, 2020. If that notice does not cover a topic on which Plaintiffs now claim a need to examine Mr. Collis, that is a problem of their own making. And it is a problem they easily can fix. A plaintiff cannot exclude (or forget to list) topics from its corporate deposition notice and then try to "substitute in" a deposition of the CEO.

It also needs to be said that discovery in Track One—conducted by some of the same lawyers who are representing Plaintiffs here—included multiple depositions of ABDC witnesses taken *after* Mr. Collis's congressional testimony. Thus, Plaintiffs had ample opportunity to ask questions about the testimony. They did not. Rewarding Plaintiffs for their failure to ask the questions to get the information they now say they need on the facts underlying the testimony and submissions would eviscerate the apex doctrine. Because, as explained, the doctrine requires a party to exhaust other less burdensome means to obtain information before seeking an apex deposition, Plaintiffs should not be permitted to skip straight to Mr. Collis's deposition.

In sum, this Court should not permit Plaintiffs to circumvent the orderly discovery processes by harassing ABDC's CEO without first trying to obtain the discovery by other means—the very thing the apex doctrine is intended to avoid.

### B. The Special Master's Ruling—And The Reasoning Used To Reach It—Is Wrong As A Matter Of Law

The Special Master's ruling recited the requirements of the apex doctrine, but quickly shifted to a vague discussion of inapplicable discovery principles while ignoring the inquires actually at play: (1) whether Mr. Collis possesses unique knowledge; and (2) whether the information sought can be obtained through a less burdensome means. To the extent the Special Master touched on these two elements, he got the standards wrong and relied on the type of "'conclusory and unsubstantiated arguments'" the court cautioned against in *Bard*. *In re C.R. Bard*, 2014 WL 12703776, at *3. This was legal error, and this Court should reverse the Special Master's ruling for several reasons. *See Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 195-96, 200 (4th Cir. 2000) ("[T]he district court erred when it failed to apply the appropriate legal standard.").

*First*, the Special Master erred by not actually applying the apex doctrine. The ruling does not address whether, or conclude that, Plaintiffs met their burden, and instead makes an attempt to "[b]orrow[] from the reasoning in *Bard*." *See* Disc. Ruling at 6. The Special Master's approach was flawed. Instead of borrowing from *Bard* (which was the result of the Special Master's near-verbatim adoption of Plaintiffs' proposed order), the Special Master should have conducted an independent analysis that applied the controlling legal principles to the factual record *in this case* (which is different from *Bard*'s).[3]

---

[3] The Special Master did not simply borrow from *Bard*. Instead, he adopted Plaintiffs' proposed order almost verbatim (adding only the apex standard Plaintiffs conveniently omitted). This is disfavored. *See Cuthbertson v. Biggers Bros., Inc.*, 702 F.2d 454, 458 (4th Cir. 1983) ("We have previously condemned he practice of adopting the prevailing party's proposed findings of facts and conclusions of law, and we repeat that admonition here."); *EEOC v. Federal Reserve Bank*, 698 F.2d 633, 641 ("adoption of findings proposed by one of the parties to the suit ... leaves much to be desired") (quotation omitted); *Bright v. Westmoreland Cty.*, 380 F.3d 729, 732 (3d Cir. 2004) ("When a court adopts a party's proposed opinion as its own, the court vitiates the vital purposes served by judicial opinions."); *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir. 1990) ("Judges should evaluate

And, unlike in *Bard*, there is a very real concern that Mr. Collis will be subject to repeated depositions—and the Special Master's consolidation of the deposition for purposes of the West Virginia state court actions does not avoid that concern. As noted, there a live dispute on a request for Mr. Collis's deposition in Pennsylvania state court. There also are more than 2,700 cases consolidated in the federal MDL, three of which (including this one) have been remanded to federal courts for separate trials, and hundreds of cases pending in state courts around the country. ABDC is involved in active discovery in 20 different states, and counting. And unlike a traditional mass tort case of the type at issue in *Bard*, the plaintiffs here all are seeking information about their specific jurisdictions. Thus, the concerns about "repetitive, abusive, and harassing depositions" is very much an issue here. *See In re C. R. Bard*, 2014 WL 12703776, at *5.

The Special Master's approach also led him to pivot away from Mr. Collis and whether Plaintiffs' had satisfied the apex requirements—where the focus actually belonged—and to look instead at the "proportionality principles of Rule 26(b)(1)," which the Special Master identified as the "importance of the issues at stake," the "amount in controversy," and the parties' "relative access to relevant information." *Id.* at 7. In discussing those inapplicable principles, the Special Master mentioned Mr. Collis only in passing, noting that he "voluntarily testified before Congress on behalf of ABDC on the very same factual issues pending before the Court." *Id.* None of this has anything to do with the inquiry under the apex doctrine. Nor is the ball advanced by the Special Master's observation that that "[m]uch, if not all, of the relevant information is *exclusively in the possession of ABDC*." *See id.* (emphasis added). The question

---

briefs and produce a neutral conclusion, not repeat an advocate's oratory. … We have disapproved this practice because it disguises the judge's reasoning and portrays the court as an advocate's tool, even when the judge adds some words of his own.").

15

is not whether *ABDC* exclusively possesses information, but whether *Mr. Collis* does. Indeed, the Special Master's observation cuts against requiring Mr. Collis's deposition because it amounts to an acknowledgement that others at ABDC possess the information Plaintiffs want.

***Second***, even if proportionality were a relevant consideration in the apex doctrine analysis (it is not), neither the Special Master nor the Plaintiffs offered any legal authority supporting the proposition that the importance of the issues, amount in controversy, or access to relevant information can overcome the presumption against apex depositions. *See Galmines*, 2015 WL 4973626, at *2 (recognizing, in the context of apex depositions, that the party seeking discovery must overcome a rebuttable presumption that the request "represents a significant burden upon the deponent and that this burden is undue absent the two factors set forth in the apex doctrine"). In this way, the Special Master got it wrong. The apex doctrine is the beginning of the analysis—proportionality does not even come into play unless the doctrine's requirements are met. Nor is there any exception to the apex doctrine for "important" litigation. To hold otherwise and authorize application of a proportionality analysis to the exclusion of the apex requirements will virtually guarantee that a CEO's deposition of a CEO would be permitted in any large, nationwide MDL or class-action litigation.

***Third***, the Special Master erred to the extent that he suggested that ABDC should have provided an affidavit from Mr. Collis "denying unique, personal knowledge of relevant facts." Disc. Ruling at 6. Imposing such a requirement is contrary to law. It also elevates form over substance and ignores the extensive record here—which affirmatively shows (based on the failings of Plaintiffs' own submissions to meet their burden) that Mr. Collis does not have unique or superior knowledge.

Apart from the fact that *Plaintiffs* had the burden to prove both prongs of the apex doctrine, the party defending a motion to compel an apex deposition (or seeking a protective order regarding one) is not required to submit an affidavit. The New York court did not require such an affidavit when it quashed the plaintiffs' request for Mr. Collis's trial testimony in the upcoming opioid trial in Suffolk County. *See* ECF 586-4. Likewise, in *Performance Sales & Marketing LLP v. Lowe's Companies, Inc.* (cited in *Bard*), the court refused to allow apex depositions to go forward, even though it had not received any such affidavits. *See* 2012 WL 4061680, at *3-4, 9-10; *see also, e.g., Galmines*, 2015 WL 4973626, at *1-3 (granting a motion to quash without requiring a supporting affidavit); *Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, No. 12-cv-282, 2014 WL 547078, at *2 (E.D.N.C. Feb. 10, 2014) (same). And, unlike those situations where an affidavit might be needed because of the lack of evidence, this case poses no such difficulties. Indeed, the extensive discovery record here—which includes dozens of depositions and millions of pages of documents—amply demonstrates that Mr. Collis does not have unique or superior personal knowledge on to any relevant topic that cannot be obtained through less burdensome means.[4]

## CONCLUSION

The apex doctrine precludes the deposition of a corporate executive unless certain prerequisites have been met. The doctrine provides a clear roadmap for a party seeking to obtain such a deposition—one that Plaintiffs did not traverse. Contrary to the Special Master's reasoning, the question is not whether the litigation is sufficiently important to justify Mr. Collis's deposition. Instead, it is whether Plaintiffs have satisfied their burden under the

---

[4] While ABDC could have submitted an affidavit from Mr. Collis confirming everything argued in ABDC's briefing, an affidavit was not required under the legal standard and not needed because the extensive record, including the documents Plaintiffs themselves submitted, establish that Mr. Collis does not have the unique, personal knowledge that Plaintiffs must establish, and thus an affidavit would have been superfluous.

apex doctrine. Plaintiffs did not. This Court, accordingly, should reverse and preclude Plaintiffs' from taking a burdensome and—more importantly, unnecessary—deposition of Mr. Collis, and to avoid opening the floodgates to depositions like this across the country.

Dated: July 6, 2020

Respectfully submitted,

***AmerisourceBergen Drug Corporation***
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com


*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on this 6th day of July, 2020, the foregoing AmerisourceBergen Drug Corporation's Appeal from Discovery Ruling 11 Granting Plaintiffs' Motion to Compel the Deposition of AmerisourceBergen's CEO Steven H. Collis was served upon counsel of record electronically.

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)