UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

THE CITY OF HUNTINGTON,
    Plaintiff,

v.

AMERISOURCEBERGEN DRUG
CORPORATION, et al.,
    Defendants.

CIVIL ACTION NO. 3:17-01362

CABELL COUNTY COMMISSION,
    Plaintiff,

v.

AMERISOURCEBERGEN DRUG
CORPORATION, et al.,
    Defendants.

CIVIL ACTION NO. 3:17-01665

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' OBJECTIONS TO SPECIAL MASTER WILKES' DISCOVERY RULING NO. 9**

COME NOW Plaintiffs, the City of Huntington and the Cabell County Commission, and respectfully respond to Distributor Defendants' Objections to Special Master Wilkes' Discovery Ruling No. 9 ("Objections"). As set forth in greater detail below, Special Master Wilkes did not abuse his discretion in reaching the conclusions stated in Discovery Ruling No. 9 ("DR9") and instead correctly resolved Defendants' motion to compel through sound reliance on the facts at issue. Accordingly, Defendants objections should be overruled and the Special Master's Order should be affirmed in its entirety.

    **I.    BACKGROUND**

In their Objections, Defendants attempt to re-characterize the justifications for DR9's findings by completely ignoring the extensive written and document discovery Plaintiffs have

already provided to Defendants on the topic of their opioid-related actions and expenditures. Rather than acknowledge that DR9 simply concluded that Plaintiffs have satisfied their discovery obligations by properly providing Defendants with information concerning "the sorts of remedies [Plaintiffs] are seeking" and that "inquiry into the costs of these remedies would be better conducted during the questioning of the experts," Defendants' Objections seek to mischaracterize DR9 as being decided on the grounds that "past abatement costs are not relevant" altogether. Def.'s Obj. to DR9, Dkt. 659 at 7.

On December 3, 2019, the City of Huntington and the Cabell County Commission responded to the Distributor Defendants' first set of interrogatories and requests for production. In their Objections to Discovery Ruling No. 9, Defendants claim that they "moved to compel Plaintiffs to provide discovery on the expenses they have incurred, and programs they have undertaken, to respond to the opioid abuse crisis" on January 31, 2020 and that, on March 24, "Judge Wilkes issued Discovery Ruling 1 ("DR1") granting that motion." *Id.* at 4. This is inaccurate.[1]

In reality, Defendants' January 31 motion asked the Court to order each Plaintiff to supplement certain, specific discovery requests, and, after considering the parties' respective positions, the Special Master entered an order that only partially granted Defendants' motion. Moreover, with respect to Distributors' motion to compel the Cabell County Commission to provide additional information concerning its efforts to address "hazards to public safety," "the amount of taxpayer dollars . . . expended to fund th[ose] efforts," and "documents that state, discuss, reflect, or suggest recommendations for programs, initiatives, or actions taken by [Cabell County] . . ." the Special Master expressly found Cabell's discovery response to be reasonable.

---

[1] In fact, with respect to the City of Huntington, Defendants' January 31 motion never even sought to compel additional information or documents relating to the City of Huntington's expenditures, initiatives or programs.

*See* DR1, Dkt. 150 at 7 (noting that Cabell was "collecting documents from relevant parties and producing them on a rolling basis," and "find[ing] such supplementation reasonable, given the ongoing nature of these two discovery requests"). As the Defendants' acknowledge in their Objections, as part of this supplementation, on June 13, Plaintiffs provided Defendants with a preliminary list of categories of abatement damages.

On May 15, 2020, Defendants filed their Motion to Compel Discovery Responses on Opioid-Related Expenditures, which sought the production of additional information[2] concerning opioid-related actions and expenditures. Dkt. 422, 423. Plaintiffs responded to this motion on May 27, 2020. Dkt. 475. Special Master Wilkes conducted a hearing on Defendants' motion on June 12, 2020 and issued DR9, denying Defendants' motion, on June 23, 2020.

## II.  ARGUMENT

### A. Plaintiffs have Not Withheld Responsive Information or Documents Pertaining to their Past Opioid-Related Actions or Expenditures

Defendants' Objections to Discovery Ruling No. 9, like Defendants' Motion to Compel, are premised on the inaccurate claim that Plaintiffs have withheld responsive information and/or documents concerning Plaintiffs' opioid-related expenditures and/or the opioid-related actions Plaintiffs have taken. However, as explained in Plaintiffs' Response to Defendants' Motion to Compel (Dkt. 475), Plaintiffs have fully answered Defendants' Interrogatories on this issue and have provided Defendants with all responsive documents that they were able to identify.

a. Plaintiffs have Fully Responded to Defendants' Interrogatories Nos. 10 and 11

Plaintiffs have provided Defendants with detailed written responses as to their opioid-related actions and expenditures. For example, in response to Interrogatory No. 10, the City of

---

[2] In particular, Defendants' Motion sought additional information in response to Defendants' Interrogatories Nos. 10 and 11 and Request for Production No. 16. *See* Dkt. 423 at 3.

3

Huntington outlined at least four pages worth of initiatives that it undertook in an effort to address the hazards to public health and safety arising from Defendants' wrongful conduct, including, for example, community partnerships, public health programs, and law enforcement initiatives intended to address and combat the opioid crisis in Plaintiffs' community. Relatedly, in its Supplemental Response to Interrogatory No. 10, the Cabell County Commission explained that it was fiscally responsible for several departments that have had to dedicate resources to responding to the opioid epidemic, including the Office of the Prosecuting Attorney, the Sherriff's Department, and Emergency Medical Services and specifically identified the budget and expense information it had produced for each of these departments.[3] *See e.g.,* Fed. R. Civ. P. 33(d) (allowing a party to answer interrogatory by reference to documents in certain circumstances).

      b. <u>Plaintiffs have Fully Produced all Non-Privileged Documents Responsive to Defendants' Request for Production No. 16</u>

Request for Production No. 16 asked Plaintiffs to produce "All documents that state, discuss, reflect, or suggest recommendations for programs, initiatives, or actions to be taken by You, any agency of the State of West Virginia, or any agency of the federal government (or any programs sponsored or funded by any such entity) to prevent, interdict, redress, treat, or otherwise ameliorate wrongful importation or distribution, abuse, misuse of, or addiction to, opioids."[4]

The Cabell County Commission has fully disclosed all of the records it believes to be responsive to this Request, including records related to: (a) criminal investigations by the Sheriff; (b) felony prosecutions by the Prosecutor; (c) run sheets from Emergency Medical Services; and

---

[3] *See* Plaintiff Cabell County Commission's Supplemental Responses to Interrogatory No. 10 and Request for Production No. 15, Pursuant to Discovery Ruling No. 1 and corresponding Appendix, served on May 21, 2020, attached hereto as Exhibits 1 and 2, respectively.

[4] As previously noted, nothing in DR 1 instructed the City of Huntington to produce additional documents concerning this particular discovery request. The City of Huntington has not indicated an intention to withhold documents pertaining to past costs on the grounds that it is not seeking costs relating to past damages.

(d) budgets and expenditures from each of the county services for which the Commission has fiscal responsibility. The documents related to budgets and expenditures have been harvested, identified by title, assigned Bates numbers, organized, summarized in a table and produced to Defendants.

Similarly, the City of Huntington has produced numerous documents that reflect programs, actions, and initiatives taken to deal with opioid epidemic, including, but not limited to documents pertaining to the Mayor's Office of Drug Control Policy Strategic Plan, the City of Solutions and the Resiliency Plan. In the past five months, the City has produced thousands of documents that speak to law enforcement initiatives, community partnerships, grant information, proposed solutions and plans, presentations, conferences and meetings.[5] Specific to expenditures, the City of Huntington has also produced, among other responsive documents, annual reports from the police department and fire department, wage and benefit agreements, salary and payroll information, grant materials, City of Huntington budgets and departmental-specific budgets.[6]

Finally, even if Defendants' contention that Plaintiffs have only provided "sporadic," "summary" statistics were true – which it is not – Plaintiffs can only provide Defendants with the information they have. As Special Master Wilkes explained when he directed Plaintiffs to produce "lists, reports, or other compilation of statistics" pursuant to DR1: "In the interests of the discovery

---

[5] Given the breadth and volume of the documents produced on this topic, it is not feasible for the City of Huntington to provide an exhaustive list of Bates ranges for these documents. Accordingly, the City of Huntington previously directed Defendants to specific custodial files that speak to these documents, including that: Jan Rader (Current Chief of Fire), Scott Lemley (Former Statistical Analyst in the Huntington Police Department), Steve Williams (Current Mayor), Angie Bracey (Executive Assistant to the Mayor), Bryan Chambers (Communications Director), Hank Dial (Former Police Chief), Cathy Burns (Former City Manager), Kim Bailey (Purchasing Director) and Barbara Miller (City Clerk).

[6] Such documents are primarily found in the custodial files of Scott Arthur (Current Budget Director), Darla Bentley (former budget director), Deron Runyon (former finance director), Pamela Chandler (former finance director), Cathy Burns (former city manager), Kathy Moore (current finance director), Sherry Lewis (director of human resources), Jan Rader (Chief of Fire) and Dan Underwood (Administrative Bureau Captain).

deadline in place in this civil action, this direction applies *to information that is already in Plaintiffs' possession or readily accessible*." (emphasis added).

### B. <u>Plaintiffs are Entitled to Rely Upon Expert Witness Testimony for Abatement-Related Calculations</u>

In their Motion to Compel, Defendants maintained they were entitled to additional "details" pertaining to Plaintiffs' "opioid-related expenditures and abatement damages," notwithstanding Plaintiffs' assertion that this would be a topic for expert testimony, arguing:

> The importance of damages-related discovery is highlighted in the federal rules, which generally require plaintiffs to provide, at the outset of discovery, "a computation of each category of damages claimed" and to produce "the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed R. Civ. P. 26(a)(1)(A)(iii).

Dkt. 423 at 2.

Notably, however, the costs of abating the public nuisance are not subject to the damages computation requirements of Rule 26. As Judge Polster explained in ruling on Defendants' Motion to Exclude Expert Testimony Purporting to Relate to Abatement Costs and Efforts in the MDL, a fund established to abate a public nuisance brought by a public entity in its representative capacity is an equitable remedy, not a damages award:

> Defendants begin their Abatement Motion with their interpretation of "abatement law" in Ohio. In the very first paragraph, however, they appear to confuse the forward-looking, equitable remedy of abatement and the rearward-looking remedy of damages. In a traditional public nuisance case, a municipal entity who is harmed by the maintenance of a nuisance will give notice to and ask the offending party to abate the nuisance . . . . . This compensation is equitable in nature. ***The goal is not to compensate the harmed party for harms already caused by the nuisance. This would be an award of damages. Instead, an abatement remedy is intended to compensate the plaintiff for the costs of rectifying the nuisance, going forward***.

*In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 4043938, at *1 (N.D. Ohio Aug. 26, 2019). Thus, an abatement remedy – unlike an award of compensatory damages – cannot be computed before trial and the scope of the remedy will depend on evidence and testimony offered by expert witnesses at trial. Moreover, as an equitable remedy within the Court's discretion to fashion, abatement is not subject to the computation requirements of Rule 26. *See, e.g., Scott v. City of Phoenix,* No. CV-09-0875-PHX-JAT, 2011 WL 1085992, at *4 (D. Ariz. Mar. 24, 2011) ("Plaintiff's request for declaratory judgment, injunctive relief, and nominal damages is not waived by Plaintiff's failure to include computations of these equitable remedies in Plaintiff's Second Amended Disclosure Statement. These forms of relief are not capable of the "computation" required for the Rule 26(a)(1)(iii) initial disclosure.").

Here, as in Case Track One of the Multi-District Litigation, additional information concerning calculations relating to Plaintiffs' abatement remedies will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with scheduling order in this case and the Federal Rules of Civil Procedure. Plaintiffs are under no obligation to provide defendants with "quantifications of its costs" prior to this time.

### C. The Special Master's Findings in DR9 were Plainly Correct

Pursuant to the Court's March 9, 2020 Order of Appointment and as provided in Fed. R. Civ. P 53(f)(4) and (5):

> [T]he court shall decide de novo all objections to conclusions of law made or recommended by the Special Master; and the court shall set aside a ruling by the Special Master on a procedural matter only for an abuse of discretion. The court shall retain sole authority to issue final rulings on matters formally submitted for adjudication, unless otherwise agreed by the parties, and subject to waiver of objection to written orders or recommendations as noted above. To the extent the Special Master enters an order, finding, report, ruling, or recommendation regarding an issue of fact, the court shall review such issue de novo, if any party timely objects pursuant to the Rules

>and within the 7 calendar day time period set forth herein. *See* Rule 53(f)(3).

Dkt. 200 at 5.

In their Objections, Defendants argue that Special Master Wilkes' ruling was an "abuse of discretion" on the grounds that it "was based, in part, on a premature and unfounded factual determination that 'whatever efforts and expenses Plaintiffs have put forth in attempting to remedy the nuisance have not been successful.'" Dkt. 659 at 4. This argument misses the mark. To the contrary, the Special Master's finding simply underscores the fact that Plaintiffs have alleged an *ongoing* nuisance and are seeking an abatement remedy, rather than a recovery of past costs (since no amount of "past costs" have abated the public health crisis created by the opioid epidemic).

Here, whether reviewed de novo or under an abuse of discretion standard, the Special Master's determination was plainly correct. Specifically, in rendering his decision, Special Master Wilkes conducted a Rule 26(b)(1) proportionality analysis and properly concluded that, given the amount of discovery Plaintiffs had already provided to Defendants, as well as the significant burden for Plaintiffs to prematurely produce information anticipated to be the subject of expert testimony, "[c]ompelling the Plaintiffs to produce more than has already been provided would be disproportionate to the needs of this case." DR9, Dkt. 621 at 4.

## IV. CONCLUSION

For all the foregoing reasons, Defendants' Objections should be overruled and Special Master Wilkes' Discovery Ruling No. 9 should be affirmed.

Dated: July 6, 2020                  Respectfully submitted,

| THE CITY OF HUNTINGTON | CABELL COUNTY COMMISSION |
|---|---|
| /s/ *Anne McGinness Kearse* | /s/ *Paul T. Farrell, Jr.* |
| Anne McGinness Kearse (WVSB No. 12547) | Paul T. Farrell, Jr. (WVSB Bar No. 7443) |
| Joseph F. Rice | |
| **MOTLEY RICE LLC** | **FARRELL LAW** |
| 28 Bridgeside Blvd. | 422 Ninth Street, 3rd Floor (25701) |
| Mount Pleasant, SC 29464 | PO Box 1180 |
| Tel: 843-216-9000 | Huntington, West Virginia 25714-1180 |
| Fax: 843-216-9450 | Mobile: 304-654-8281 |
| akearse@motleyrice.com | paul@farrell.law |
| jrice@motleyrice.com | |
| | /s/ *Anthony J. Majestro* |
| Linda Singer | Anthony J. Majestro (WVSB No. 5165) |
| David I. Ackerman | **POWELL & MAJESTRO, PLLC** |
| **MOTLEY RICE LLC** | 405 Capitol Street, Suite P-1200 |
| 401 9th Street NW, Suite 1001 | Charleston, West Virginia 25301 |
| Washington, DC 20004 | 304-346-2889 / 304-346-2895 (f) |
| Tel: 202-232-5504 | amajestro@powellmajestro.com |
| Fax: 202-386-9622 | |
| lsinger@motleyrice.com | Michael A. Woelfel (WVSB No. 4106) |
| dackerman@motleyrice.com | **WOELFEL AND WOELFEL, LLP** |
| | 801 Eighth Street |
| Charles R. "Rusty" Webb (WVSB No. 4782) | Huntington, West Virginia 25701 |
| **THE WEBB LAW CENTRE, PLLC** | Tel. 304.522.6249 |
| 716 Lee Street, East | Fax. 304.522.9282 |
| Charleston, West Virginia 25301 | mikewoelfel3@gmail.com |
| Telephone: (304) 344-9322 | |
| Facsimile: (304) 344-1157 | |
| rusty@rustywebb.com | |

## **CERTIFICATE OF SERVICE**

I hereby certify that service of the foregoing was filed electronically via the CM/ECF electronic filing system on July 6, 2020 and served on all counsel registered in the system.

/s/ *Natalie Deyneka*
Natalia Deyneka (WVSB No. 12978)
**MOTLEY RICE LLC**