IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>　　　Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>　　　Defendants.<br><br>———————————————<br><br>CABELL COUNTY COMMISSION,<br><br>　　　Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>　　　Defendants. | Civil Action No. 3:17-01362<br><br><br><br><br><br><br><br>Civil Action No. 3:17-01665 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL
PRODUCTION OF CERTAIN CITY OF HUNTINGTON DOCUMENTS**

Pursuant to Rules 26, 34, and 37 of the Federal Rules of Civil Procedure, Defendants move to compel production of 3,464 documents that the Plaintiff City of Huntington ("Huntington") has withheld on the sole basis of "Third Party Confidentiality Restrictions" and 3,416 documents that Huntington has withheld under the "Law Enforcement" privilege. The challenged documents are identified herein and in the attached privilege logs.

**BACKGROUND**

To date, Huntington has provided four privilege logs to Defendants, identifying more than 21,000 documents that it has either withheld or redacted.[1] The vast majority of the withheld

---

[1] Huntington provided the first volume of the log on June 8, 2020, the second volume on June 17, and the fourth volume on June 22. The third volume of the log is dated June 18, but due to a technical issue, Defendants did not receive it until June 29.

1

discovery consists of law enforcement materials that will help the Defendants test Plaintiffs' allegations with information about the opioid overdose crisis in Huntington, Huntington's response to the crisis, and the actions of third parties that contributed to the crisis.

Defendants identified numerous deficiencies in each of Huntington's privilege logs—in particular, Huntington's sweeping assertions of "Third Party Confidentiality Restrictions" and "Law Enforcement" privilege. To address these deficiencies, Defendants sent three letters to Huntington requesting further explanations about the withheld documents or, alternatively, requesting that the documents be produced.[2] On June 29, the parties had a meet-and-confer session in an attempt to resolve the dispute over Huntington's privilege logs. The parties were able to identify a plan to resolve disputes related to several categories of documents on Huntington's privilege log. The parties reached an impasse with regard to Huntington's assertions of "Third Party Confidentiality Restrictions" and "Law Enforcement" privilege, necessitating this motion. The challenged documents are shaded in the attached versions of Huntington's privilege logs.[3]

As explained further below, "Third Party Confidentiality Restrictions" is not a valid, independent privilege allowing Huntington to withhold thousands of documents, particularly where the protective order in this case specifies procedures for the production of third party confidential documents designed to prevent public disclosure. Regarding the claims of "Law Enforcement" privilege, Huntington has made no showing of harms flowing from the disclosure of the law enforcement documents it has withheld. Because Huntington has not raised valid privilege claims as to these two subsets of documents, they must be produced. To facilitate the

---

[2] *See* June 12, 2020 Ltr. from L. Wu to J. Haileselassie ("June 12 letter"); June 22, 2020 Ltr. from L. Wu to J. Haileselassie ("June 22 letter"); June 26, 2020 Ltr. from L. Wu to J. Haileselassie ("June 26 letter"). These letters are attached as Exhibit A.

[3] *See* Exhibits B through E. Other than the color-coding, these privilege logs are identical to the logs Huntington provided to Defendants.

production of the "Law Enforcement" privilege documents, Defendants propose that they be produced under the Attorneys' Eyes Only ("AEO") provision of the protective order.[4]

Time is of the essence. Fact discovery closes in less than one month and many of these documents are directly relevant to upcoming depositions.

**ARGUMENT**

**I.   Legal Standard**

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding *any nonprivileged matter* that is relevant to any party's claim or defense and proportional to the needs of the case." (emphasis added). West Virginia substantive privilege law applies to this motion because "state law supplies the rule of decision" on Plaintiffs' public nuisance claim and assertion of civil conspiracy. Fed. R. Evid. 501; *see also, e.g.*, *Old White Charities, Inc. v. Bankers Ins., LLC*, 2018 WL 2211409, at *5 (S.D.W. Va. May 14, 2018) (applying West Virginia attorney-client privilege law where state law provided rule of decision on claim). The burden of establishing a privilege rests with the party asserting the privilege. *See State ex rel. United Hosp. Ctr., Inc. v. Bedell*, 484 S.E.2d 199, 208 (W. Va. 1997).

"Third Party Confidentiality Restrictions" is not a standalone privilege that can be used to withhold documents. *See Qualcomm Inc. v. Broadcom Corp.*, 2006 WL 8455382, at *4 (S.D. Cal. Aug. 14, 2006) ("As a general proposition, confidentiality alone is not an objection which unilaterally precludes discovery."). That is especially true where there is a protective order in place in the case. *See Maclay v. Jones*, 542 S.E.2d 83, 90 n.11 (W. Va. 2000) ("[T]he use of protective orders is preferential to the total non-disclosure of requested materials that are otherwise subject to discovery."); *accord* Discovery Ruling No. 5, Dkt. 474 at 3.

West Virginia has "never adopted an all-encompassing law enforcement privilege." *Maclay*, 542 S.E.2d at 86; *accord* Discovery Ruling No. 5, Dkt. No. 474 at 3. If a party seeks to

---

[4] Dkt. No. 1357, *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804 (N.D. Ohio).

withhold documents based on the qualified law enforcement privilege, the party must first make "a substantial threshold showing of harm" that will result from disclosing the documents. *Maclay*, 542 S.E.2d at 91. The showing "must be sufficiently specific to permit the trial judge to be fully apprised as to the significance of the disclosure concerns." *Id.* If and only if the party makes such a threshold showing, the Court performs *in camera* inspection of the documents in question to determine whether the requesting party's need for the material outweighs the public interest in non-disclosure. *See id.* at 90-91. The Court is to balance a number of non-exclusive factors, including whether the materials pertain to an open or closed investigation, the importance of the information to the requesting party's case, and whether any adverse effects of disclosure can be remedied by a properly crafted protective order. *See id.* at 86-87, 90 & n.11.

## II. Huntington Must Produce Documents Withheld for "Third Party Confidentiality Restrictions"

This motion challenges Huntington's erroneous withholding of 3,464 documents on the sole basis of "Third Party Confidentiality Restrictions."[5] These documents are shaded in green in the attached privilege logs. *See* Exhibits B–E. "Third Party Confidentiality Restrictions" is not a valid basis for withholding these documents, particularly in light of the protective order in place in this case. These documents must be produced.

West Virginia law favors the disclosure of documents subject to a protective order over the total non-disclosure of documents. *See Maclay*, 542 S.E.2d at 90 n.11 ("[T]he use of protective orders is preferential to the total non-disclosure of requested materials that are otherwise subject to discovery."). The protective order in this litigation—to which all parties agreed—anticipates

---

[5] This number include four documents listed as "Potentially Privileged; Third Party Confidentiality Restrictions." On July 7, Huntington informed the Defendants that it was withdrawing its claim of "Third Party Confidentiality Restrictions" as to 51 documents on Huntington's first privilege log (Exhibit B to this motion). Huntington will produce those documents and accordingly, those documents are not part of this motion.

that parties may seek documents that are subject to a confidentiality agreement with a third party. When that occurs, the protective order sets out a procedure that the party receiving the request and the third party are to follow. This procedure specifically allows the third party an opportunity to seek relief from the Court.[6] Further, to the extent documents contain sensitive law enforcement materials, the protective order allows such documents to be produced AEO.[7] The protective order *does not* permit the party receiving the discovery request to unilaterally determine that the requested documents will not be disclosed based on "Third Party Confidentiality Restrictions." Huntington has done precisely that. It may not disregard the provisions of the protective order to which it agreed, and must produce these challenged documents erroneously withheld based on "Third Party Confidentiality Restrictions."

What is more, even if "Third Party Confidentiality Restrictions" were a valid privilege claim (it is not), some of Huntington's privilege log entries provide insufficient information to allow Defendants to assess what these documents are and why they might be withheld. For instance, some documents simply indicate they are from the Huntington West Virginia Police Department and are withheld because the "[d]ocument [was] created by a third-party law enforcement agency." *See, e.g.*, Exhibit B, Documents 11–12, 18–21. The burden of establishing a privilege rests with the party asserting it (here, Huntington). *Bedell*, 484 S.E.2d at 208. Even if Huntington had raised a valid privilege claim as to these documents, its generalized, vague explanations would be insufficient to establish the claim.

Following the parties' conference efforts, on July 1, Huntington provided a list of non-parties involved in the withheld communications. The additional information is constructive, but does not resolve the parties' dispute. Instead, it underscores the relevance of the withheld discovery because it reveals that many of the non-parties, including the Cabell County Prosecuting

---

[6] *See* Dkt. No. 441 ¶ 78, *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804 (N.D. Ohio).

[7] *See* Dkt. No. 1357, *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804 (N.D. Ohio).

Attorney's Office and Dep't of Veteran Affairs/VA Police, are themselves producing documents in this litigation in response to subpoenas from the parties.

Accordingly, Defendants request that Huntington be ordered to produce the 3,464 documents, shaded in green, that it has erroneously withheld as "Third Party Confidentiality Restrictions."

### III. Huntington Should Produce Documents Withheld for "Law Enforcement" Privilege Under the AEO Provision of the Protective Order

Defendants also challenge Huntington's withholding of 3,416 documents based on "Law Enforcement" privilege.[8] These documents are shaded in blue in the attached privilege logs. *See* Exhibits B–E. Simply put, Huntington has not made the required "substantial threshold showing of harm" that will result from disclosing the challenged documents, and they must be produced. *See Maclay*, 542 S.E.2d at 91. To facilitate efficient production under the tight discovery timeframe in this case, Defendants request that the documents be produced AEO under the protective order.

Huntington has not made *any* showing of harm that it would suffer from disclosing the challenged documents. Indeed, its privilege log explanations are vague, overbroad, and boilerplate. For example, the privilege basis for some documents is simply "Law enforcement operational plans." *See, e.g.*, Exhibit B, Documents 4353–4354, 4367–4368. For others, Huntington's log states "Operational plan revealing law enforcement techniques, methods, and strategies." *See, e.g.*, Exhibit B, Documents 478–481. Even explanations with more detail do not demonstrate *how* disclosure of the documents would be harmful. *See, e.g.*, Exhibit E, Documents 56–60 ("Email and attachments regarding a Huntington Police Department Operational Plan including members of the HPD, Huntington Violent Crimes Drug Task Force, and SWAT

---

[8] These documents include those with a standalone claim of "Law Enforcement" privilege and those with a claim of both "Law Enforcement" privilege and "Third Party Confidentiality Restrictions."

6

teams."). These explanations are insufficient to allow Defendants or the Court "to be fully apprised as to the significance of the disclosure concerns." *Maclay*, 542 S.E.2d at 91. Further, the Special Master has already ruled that "general claims of privilege" like these are "too broad." Discovery Ruling No. 3, Dkt. No. 366 at 4. Because Huntington has failed to demonstrate any harm from the disclosure of the challenged documents, they must be produced.

Even if Huntington had satisfied its threshold burden to show harm from disclosure of the challenged documents (it has not), disclosure is still warranted under the *Maclay* balancing test. *See Maclay*, 542 S.E.2d at 86-87, 90 & n.11. First, Defendants *are not* seeking documents that pertain to ongoing law enforcement investigations, and have excluded documents described as involving open or ongoing investigations from this motion. Second, these law enforcement documents could provide critical information related to Defendants' defense, including the identities of third parties involved in drug diversion and trafficking. Finally, Defendants request that the documents be produced under the AEO provision of the protective order, which will ensure that the documents are not widely disseminated. *See id.* at 90 n.11 ("The trial court. . .should consider whether any perceived adverse effects to the public interest in maintaining confidentiality can either be eliminated or reduced through the use of an appropriately drawn protective order, which carefully constricts the manner in which such information is disseminated and the parties to whom it is provided."). These factors all counsel towards disclosure of the challenged documents, and Huntington has provided no factors suggesting otherwise. Thus, even if the Court reaches the *Maclay* balancing test (which it need not do), the challenged documents should be produced.

For these reasons, Defendants request that Huntington be compelled to produce the challenged law enforcement documents under the AEO provision of the protective order. Prompt production of these disputed materials is particularly important given the July 27 deadline for the close of fact discovery and the ongoing fact depositions in this case.

## IV.     Conclusion

For the foregoing reasons, Defendants respectfully request an order compelling production of the challenged documents. In the interest of expediency, Defendants request that the blue-shaded documents in the attached logs be produced AEO.

Dated: July 9, 2020

Respectfully Submitted,

*McKesson Corporation*
By Counsel:

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*/s/ Carol Dan Browning*
Carol Dan Browning
Stites & Harbison, PLLC
400 West Market Street
Suite 1800
Louisville, Kentucky  40202
Telephone:  (502) 587-3400
Facsimile:  (502) 587-6391
cbrowning@stites.com

*/s/ Timothy C. Hester*
Timothy C. Hester
Mark H. Lynch
Christian J. Pistilli
Laura Flahive Wu
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
mlynch@cov.com
cpistilli@cov.com
lflahivewu@cov.com

8

*AmerisourceBergen Drug Corporation*
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Cardinal Health, Inc.*
By Counsel:

*/s/ Steven R. Ruby*
Michael W. Carey (WVSB No. 635)
Steven R. Ruby (WVSB No. 10752)
David R. Pogue (WVSB No. 10806)
Raymond S. Franks II (WVSB No. 6523)
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
drpogue@csdlawfirm.com
rfranks@cdkrlaw.com

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC  20005

Tel:  (202) 434-5000
Fax:  (202) 434-5029
emainigi@wc.com
lheard @wc.com
ahardin@wc.com