IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| THE CITY OF HUNTINGTON, Plaintiff, | | |
| v. | | CIVIL ACTION NO. 3:17-01362 |
| AMERISOURCEBERGEN DRUG CORPORATION, et al, Defendants. | | |
| CABELL COUNTY COMMISSION, Plaintiff, | | |
| v. | | CIVIL ACTION NO. 3:17-01665 |
| AMERISOURCEBERGEN DRUG CORPORATION, et al, Defendants. | | |

**AMERISOURCEBERGEN DRUG CORPORATION'S REPLY
IN SUPPORT OF ITS APPEAL FROM DISCOVERY RULING 11
GRANTING PLAINTIFFS' MOTION TO COMPEL THE DEPOSITION OF
AMERISOURCEBERGEN'S CEO STEVEN H. COLLIS**

Plaintiffs' Response to the appeal by AmerisourceBergen Drug Corporation (ABDC) of Special Master Wilkes's erroneous Discovery Ruling 11 says nothing that comes close to justifying the deposition of ABDC's CEO Steven H. Collis. Plaintiffs' Motion should be denied.

**INTRODUCTION**

Plaintiffs' Response to ABDC's appeal confirms that Plaintiffs are not entitled to Mr. Collis's deposition. While Plaintiffs recite the apex doctrine—the standard that indisputably controls here—they do not address it until the end of their brief, and then barely at all. Nothing

1

Plaintiffs say shows that they have met their burden and the rest of Plaintiffs' Response is an effort to distract from this failure.  The Response is riddled with statements about the law that are simply wrong.  Plaintiffs do no better when it comes to the facts—they have not one shred of evidence showing that Mr. Collis has unique knowledge.  Plaintiffs also never explain why they cannot get the information they say they need through other, less burdensome means, as the law requires.  On top of that, Plaintiffs do not even try to address the "floodgates" effect of the Special Master's ruling, which is particularly problematic because it threatens to open the door to multiple depositions on a record that does not justify that outcome.  The Special Master's ruling should be reversed and Plaintiffs' Motion should be denied.

Plaintiffs' Response suffers from numerous critical flaws.  ABDC will emphasize the following in this Reply:  *First*, because Plaintiffs cannot meet their burden under the apex doctrine, they both ignore it and try to shift some sort of burden to ABDC.  In Plaintiffs' view, they do not need to establish that Mr. Collis (1) has unique knowledge (2) that cannot be obtained from anyone else, but instead they may thrust onto ABDC the job of disproving these two propositions.  That is wrong—ABDC bears no burden.

*Second*, Plaintiffs run from the record that *does*, in fact, show that Mr. Collis's deposition is not warranted under the apex doctrine.  The record includes extensive testimony from ABDC's diversion control team—those closest to the issues, including ABDC's senior people—who have already have been deposed in the Track One litigation and elsewhere.  Not one word in the more than 8,000 pages of deposition testimony of ABDC witnesses even intimates that Mr. Collis's knowledge is unique or superior.  Plaintiffs had this extensive record when they tried to make their case for compelling Mr. Collis's deposition, and their total silence on the record is telling.  Plaintiffs instead fixate on Mr. Collis's congressional testimony, but his testimony was far from

the extensive discussion of ABDC's diversion control efforts that Plaintiffs claim it is. Indeed, Mr. Collis's testimony accounts for only 6 pages of the hearing transcript. And the statements Mr. Collis made to Congress are on subjects that others at ABDC already have testified about, at great length and in much more detail, in this litigation. Thus, in the end, Plaintiffs' only real point is that Mr. Collis should be deposed because he testified before Congress. That, however, is not enough.

Moreover, Plaintiffs not only misinterpret the evidentiary record, they misstate actual facts. Their argument that Mr. Collis must testify because, according to Plaintiffs, he has unique knowledge of ABDC's 2007 settlement with the DEA is a stark and telling example of this. Plaintiffs simply declare—without a single cite in support—that Mr. Collis was involved in the settlement. But the objective evidence shows the contrary—Mr. Collis *did not work at ABDC* during the relevant time period. Instead, his time was devoted to another subsidiary that had nothing to do with the DEA/ABDC settlement.

***Third***, Plaintiffs ignore that there is more discovery to come, which itself should be dispositive of the apex analysis. Plaintiffs are utterly silent about the fact that depositions of ABDC witnesses in this case have not even started, and that Plaintiffs will soon have the opportunity to depose ABDC's corporate representative in a Rule 30(b)(6) deposition during which they can inquire on the very matters they seek to explore with Mr. Collis. That, on top of the extensive national discovery (more than 30 depositions of ABDC witnesses) that Plaintiffs have taken in the MDL and in other jurisdictions, renders their request for Mr. Collis' deposition both premature and entirely unwarranted.

***Fourth***, Plaintiffs entirely ignore the critical inquiry on burdensomeness. The apex doctrine is based on the presumption that it highly burdensome for a top-level executive to be

3

deposed. Indeed, avoidance of that unnecessary burden is the very reason the doctrine exists. ABDC is not required to prove that an apex deposition would be unnecessarily burdensome. But there is ample proof that it would be—especially given the discovery already available to Plaintiffs and the additional discovery that will occur in this case. Mr. Collis is the CEO of one of the three major distributors of healthcare products in this country. Allowing Plaintiffs to depose Mr. Collis when the controlling legal requirements have not been met will have adverse consequences beyond this case. It surely will lead to multiple efforts all over the country to obtain his deposition with the plaintiffs in the scores of other cases simply asserting that if the "record" was good enough here, it should be good enough there. That is an untenable outcome. Plaintiffs have nothing to say about this either.

In sum, Plaintiffs' Response confirms that there is no legal or factual basis to justify Mr. Collis's deposition. The apex doctrine begins with the presumption that depositions of high-ranking corporate executives are unwarranted. On this record, the analysis ends there too. Reversal is required.

## ARGUMENT

**I. Plaintiffs Cannot Meet Their Burden Under The Apex Doctrine, So They Try To Shift It To ABDC**

Tucked at the end of their Response (on page 11 of 14), Plaintiffs purport to address what they call ABDC's "alternative" argument "that Plaintiffs did not show that [Mr.] Collis has unique or superior personal knowledge or that the information they seek is not available from other sources." Plaintiffs' Response at 11 (ECF No. 725). This is not an alternative argument—it is *the central point*. Plaintiffs are seeking an apex deposition, so the apex doctrine standard controls. Yet, Plaintiffs consistently have done nothing more than recite the apex doctrine

4

standard, without actually applying it. *See* ABDC's Appeal at 9-13 (ECF No. 674). And the Special Master erred because he followed that same course.

Unable to prove what the apex doctrine requires, Plaintiffs ask the Court to make a string of assumptions: because Mr. Collis has *some* knowledge, it must be "unique," and because it is "unique," it cannot possibly be obtained through any other means. *See* Plaintiffs' Response at 12. This is wrong—both factually, because Plaintiffs have not established that Mr. Collis has unique knowledge and *some* knowledge is not the same as *superior or unique* knowledge, and legally, because under the apex doctrine, Plaintiffs must prove *both* that Mr. Collis has unique knowledge *and* that it can't be obtained through a less-intrusive source.

Plaintiffs' other tactic to avoid their burden is to try to impose one on ABDC. They say, for instance, that ABDC cannot "identify any other source of the foregoing information on which Collis testified." *Id.* at 13. This assertion is wrong as matter of law and fact. *Bard* places the apex burden on the party seeking the apex deposition. *See In re C.R. Bard, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, No. MDL 2187, 2014 WL 12703776, at *4 (S.D. W. Va. June 30, 2014). And yet Plaintiffs point to *Bard* to try avoid this burden and instead shift the burden to ABDC. For example, Plaintiffs cite *Bard* to support their fixation on the absence of an affidavit from Mr. Collis. But that fixation is unfounded in this case where there is already an extensive evidentiary record, rendering an affidavit unnecessary.

ABDC (although it was under no obligation to do so) has pointed to more than sufficient record evidence demonstrating that Mr. Collis lacks any superior personal knowledge of these matters, and that others are more than capable of providing all of the information Plaintiffs seek. *See infra* Section II; ABDC's Appeal at 16-17. In *Bard*, by contrast, the Court relied on an affidavit from the party opposing the apex deposition without explaining why, yet in the same

breath cited to another case in which an affidavit was *not* needed as part of the apex doctrine analysis. *See Performance Sales & Marketing LLP v. Lowe's Companies, Inc.* No. 07-CV-140, 2012 WL 4061680, at *3-4, 9-10 (W.D.N.C. Sept. 14, 2012) (cited in *Bard*).[1]

Finally, Plaintiffs contend that the Special Master placed "a *lighter* burden on ABDC than would courts in other circuits that assess executive depositions strictly under Rule 26(c)(1)." Plaintiffs' Response at 10. This is a nonstarter in every respect. The law does not impose a burden on ABDC in this context. Moreover, Plaintiffs and the Special Master both agree that the apex doctrine *does* apply—thus rendering it irrelevant what other courts have done or hypothetically might do. And regardless, ABDC has gone above and beyond what could be required under any possible burden to demonstrate that the factual record does not support the need for an apex deposition of Mr. Collis.

## II. The Extensive Record Shows That Mr. Collis's Deposition Is Not Warranted And, Indeed, Plaintiffs' Request For His Deposition Is Based On Unsupported And Demonstrably False Statements Of Fact

Pointing to Mr. Collis's congressional testimony, Plaintiffs identify three topics on which they argue he should be required testify in this case: (1) the development and functioning of ABDC's diversion control program, including related policies and procedures; (2) ABDC's 2007 settlement with the DEA; and (3) ambiguity in the DEA's definition of a "suspicious order." Plaintiffs' Response at 2-6. Standing alone, Mr. Collis's congressional testimony does not support Plaintiffs' request for his deposition. This conclusion is further confirmed by the extensive discovery record.

---

[1] As in *Performance Sales & Marketing*, many other courts have denied requests for apex depositions without affidavits from the corporate party. *See, e.g., United States ex rel. Galmines v. Novartis Pharm. Corp.*, No. 06-3213, 2015 WL 4973626, at *1-3 (E.D. Pa. Aug. 20, 2015) (granting a motion to quash without requiring a supporting affidavit); *Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, No. 12-cv-282, 2014 WL 547078, at *2 (E.D.N.C. Feb. 10, 2014) (same). Additionally, a New York court recently denied plaintiffs' request for Mr. Collis's trial testimony under the apex doctrine without requiring an affidavit. *See* ECF No. 586 Ex. D.

Plaintiffs' argument essentially boils down to the assertion that because Mr. Collis gave congressional testimony and written responses to follow-up questions, then he *must* have unique knowledge. But simply calling knowledge unique (as Plaintiffs repeatedly do) does not make it so. It bears emphasis that Congress did not ask ABDC (and other distributors) to present the witness most knowledgeable on diversion control issues. Rather, Congress asked Mr. Collis to appear because they specifically wanted to hear from the distributors' CEOs. ABDC's compliance with Congress's request does not demonstrate that Mr. Collis has personal, superior, unique knowledge. Indeed, the portions of testimony Plaintiffs cite in their response confirm that Mr. Collis does not have that type of knowledge—he was speaking as ABDC's CEO and imparting information that others in the company also knew.[2]

A critical flaw in Plaintiffs reasoning is that Plaintiffs fail to distinguish between the *facts* on which they are seeking Mr. Collis's deposition and the *medium* through which those facts have been conveyed. By fixating on the *event* of Mr. Collis's congressional testimony, Plaintiffs ignore the purpose of the apex inquiry: to determine whether Mr. Collis is the only source for the *facts* on which they seek deposition testimony. Plaintiffs have acknowledged that the requested deposition "relate[s] to *the facts* presented by each witness to Congress." ECF No. 517 at 4 (emphasis added). But the gist of Plaintiffs' argument is that because Congress decided to ask Mr. Collis questions about particular topics, he must be the best witness on those same topics. This is wrong as a matter of law, logic, and the factual record in this case.

Moreover, nearly every assertion Plaintiffs make about Mr. Collis's congressional testimony is false. It is a fiction to suggest that Mr. Collis's oral and written testimony was

---

[2] *See* Plaintiffs' Response at 12 ("Well in 2007, *we* had a lot of discussion with [DEA], and *we* developed our current controlled substance monitoring program with the understanding that this was where they wanted the industry to go;" "*We* would like more feedback. *We'd* also like [off mic] the rules, for example, on what constitutes a suspicious order.") (internal quotation marks omitted) (emphasis added).

solely the product of his own knowledge. Common sense dictates that when a busy CEO testifies before Congress on a discrete aspect of the company's business, that testimony is based on the efforts of and preparation by many other individuals. And, as explained below, Mr. Collis's testimony related to topics on which many others are more knowledgeable.

***First, the development and functioning of ABDC's diversion control program, including related policies and procedures***. ABDC has pointed to many individuals who have already testified on this topic, including Chris Zimmerman, the Senior Vice President of Corporate Security & Regulatory Affairs, who testified three times about the day-to-day operations of the diversion control program at ABDC, and David May, Vice President of Corporate Security & Regulatory Affairs, who testified twice. *See* ABDC's Appeal at 11. Both Mr. Zimmerman and Mr. May have superior knowledge on these issues. Mr. Collis's congressional testimony bears this out. Indeed, he testified to his lack of specific knowledge on certain issues. *See* ECF No. 517 Ex. 3 at 95 ("We ship 100,000 orders a day. It's not feasible that I would know about all the orders."). He also testified that he relies on many others in his role as CEO. *Id.* ("I have a team, some of them are behind me. We trust them. I think that we – I have never heard of this pharmacy before. But we're committed to continuous learning.").

Plaintiffs badly exaggerate when that say that Mr. Collis gave "extensive testimony" and testified "at length" regarding ABDC's diversion control program. Plaintiffs' Response at 3. The factual record does not support Plaintiffs' assertions. Mr. Collis's testimony amounts to only six pages of the 130-page transcript of the May 2018 congressional hearing. *See* ECF No. 517 Ex. 3. When combined with the "over two pages" of Mr. Collis's written testimony Plaintiffs identify as relevant, this still results in a grand total of fewer than ten pages of

8

information. And Plaintiffs quote only two sentences from his testimony on this issue—neither of which demonstrates unique or superior personal knowledge.[3]

***Second, ABDC's 2007 settlement with the DEA.*** Plaintiffs baldly declare that Mr. Collis has unique personal knowledge about the 2007 settlement with the DEA. Plaintiffs are wrong. For starters, Plaintiffs have no support for that assertion. They have identified no testimony or document—nor can they—indicating that Mr. Collis was actually involved in these events. Plaintiffs point to Mr. Collis's statement to Congress that "in 2007, we had a lot of discussion with them, and we developed our current controlled substance monitoring program with the understanding that this was where they wanted the industry to go." Plaintiffs' Response at 4. But that is simply a statement of historical fact—and Mr. Collis's recitation of that fact does not mean that he has unique personal knowledge of the 2007 negotiations and settlement.

Indeed, Mr. Collis *could not* have had personal knowledge of those events because he did not hold any position at ABDC in 2007—instead, he was the Executive Vice President and President of AmerisourceBergen Specialty Group from September 2007 to September 2009 and, before that, was President of AmerisourceBergen Specialty Group from August 2001 to September 2007.[4] This is a different company. As such, Mr. Collis played no role in ABDC's negotiations with DEA and did not sign the settlement agreement between ABDC and DEA. *See* Settlement and Release Agreement at 8 (attached hereto as Exhibit A). However, Mr. Zimmerman, who has been deposed, was heavily involved in the settlement discussions. *See* Zimmerman MDL Dep.

---

[3] Plaintiffs' Reply at 3 (quoting Mr. Collis as having testified how ABDC's "best-in-class diversion control team endeavors to track patterns and behavior beyond just individual suspicious orders that have led us to refuse service or terminate service to pharmacies we've identified as problematic, including several of the pharmacies we have all heard about today in West Virginia," and "I wouldn't say we don't make mistakes, but I will tell you one of [the] pharmacies that's been mentioned several times, we had them on service for 38 days, and we reported them 26 of the 38 days. And on the 38th day we stopped servicing them.").

[4] *See* AmerisourceBergen Corporation September 30, 2009 Form 10-K at 18, *available at* https://investor.amerisourcebergen.com/financials/annual-reports/default.aspx.

(Feb. 8, 2019) at 22:13-29:24 (discussing the negotiations in detail) (excerpts attached hereto as Exhibit B); *see also, e.g., id.* at 13:4-16:15; Zimmerman MDL Dep. (Aug. 3, 2008) at 138:3-140:13, 189:14-192:12, 480:1-481:4 (excerpts attached hereto as Exhibit C). Neither Mr. Zimmerman nor anyone else has indicated that Mr. Collis was involved (which is not surprising, because he was not). *See* ECF No. 586 at 13 (cataloging the handful of brief references to Mr. Collis in deposition testimony, none of which relates to the 2007 DEA settlement).

***Third, ambiguity in the DEA's definition of a "suspicious order.*** Plaintiffs are wrong when they contend that Mr. Collis has superior or unique personal knowledge about the meaning of "suspicious order." Plaintiffs' Response at 4-5. Plaintiffs quote Mr. Collis's testimony that that "[w]e would like more feedback. We'd also ask like ... the rules, for example, on what constitutes a suspicious order." *Id.* at 4. There are several witnesses who are plainly better suited to testify about what "ABDC did not know or understand in carrying out its duties to identify, report, and stop suspicious orders in and before 2018." *Id.* at 5. This includes Mr. Zimmerman, who has already testified on that topic. *See* ECF No. 586 at 8 (noting that Mr. Zimmerman testified "that while certain DEA regulations are 'black-and-white,' the definition of a suspicious order is 'very open-ended,' 'not very specific at all,' and 'a gray area.'"). Others, too, are able to testify to this point, including Mr. May, along with the Rule 30(b)(6) witness in this case that Plaintiffs have yet to depose.

It bears emphasis that the three topics Plaintiffs claim they want to explore with Mr. Collis have been at the very center of this litigation and have received extensive attention in discovery efforts to date. These are not newly discovered or niche issues. And yet, nothing in the millions of pages of document discovery or the thousands of pages of ABDC witness

testimony even suggests that Mr. Collis is the sole—or even the best—person to ask about any of these subjects.[5]

### III. Plaintiffs' Request For Mr. Collis's Deposition Also Is Premature

Plaintiffs' request for Mr. Collis's deposition also is premature because discovery in this case is still ongoing. Plaintiffs have requested and ABDC has agreed to provide additional fact and 30(b)(6) witnesses. For instance, ABDC's diversion control program, and specifically as related to West Virginia, is one of the topics that will be covered in ABDC's upcoming 30(b)(6) testimony. Indeed, Plaintiffs highlight the statement in Mr. Collis's written testimony to Congress regarding "over 800 orders that ABDC reported and refused to ship to West Virginia while it simultaneously refused to do further business with customers on its 'Do Not Ship' list." *Id.* at 3-4. Beyond the fact that this statement does not reflect any information that is unique to Mr. Collis, this is exactly the type of information Plaintiffs are seeking in ABDC's upcoming 30(b)(6) deposition.

The apex doctrine requires, at a bare minimum, that Plaintiffs pursue this less burdensome discovery *before* seeking to take Mr. Collis's deposition.

### IV. Allowing Plaintiffs To Depose Mr. Collis Based On This Inadequate Record Threatens Far-Reaching Consequences That Undercut The Entire Purpose Of The Apex Doctrine

Finally, in their attempt to divert attention from the fact that neither they nor the Special Master even engaged on Plaintiffs' burden under the apex doctrine—Plaintiffs further distract by focusing on the general Rule 26 analysis, including concerns related to proportionality such as the burdensomeness of the requested deposition and "importance" of the litigation. *See*

---

[5] ABDC is not arguing that the voluminous discovery Plaintiffs already have is a *per se* reason to preclude Mr. Collis's deposition, but instead are pointing to the voluminous discovery record to show that Plaintiffs cannot meet their burden under the apex doctrine—that is, nothing in the record shows that Mr. Collis is the only person who can provide the information Plaintiffs say they need.

11

Plaintiffs' Response at 8-9, 13. That approach is flawed for multiple reasons—and would subvert the entire purpose of the apex doctrine.

Plaintiffs glibly say that "ABDC first makes the remarkable argument that the Special Master erred by applying Rule 26 to this discovery dispute." Plaintiffs' Response at 8. Far from being "remarkable," ABDC's argument points out the fundamental error in the Special Master's legal analysis. Specifically, the Rule 26 proportionality analysis is not even triggered in the first place, because the record here is clear that Plaintiffs cannot satisfy their threshold *apex* burden: Mr. Collis does not possess unique or superior personal knowledge; and what knowledge he does have is readily available from other, less burdensome, sources.[6]

And just because the Court in *Bard* seemed to punt to proportionality, finding that there was "difficulty" in applying the apex doctrine in that case, there is no reason for the Court to do the same in this case. *In re C.R. Bard*, 2014 WL 12703776, at *4. In contrast with *Bard*, no such "difficulty" exists here because Plaintiffs have unequivocally failed to meet both prongs of their burden under the apex doctrine; it is thus unnecessary for this Court to consider broader Rule 26 principles. Any other analysis would allow Rule 26 to swallow apex doctrine considerations whenever a party tries to depose a corporate adversary's CEO.

The apex doctrine begins with the presumption that it is highly burdensome for a top-level executive to be deposed. Indeed, avoidance of that unnecessary burden is the very reason the doctrine exists. This concern is particularly acute here—in a way it was not in *Bard*. Here, there is a very real concern that Mr. Collis will be subject to repeated depositions because opioid-related litigation is pending in state and federal courts around the country, in thousands of lawsuits filed

---

[6] And, to be clear, while proportionality is not the applicable legal standard here, ABDC does not concede that Mr. Collis's deposition would be permitted under a proportionality analysis. Any value that might come from a deposition of a CEO without unique or superior knowledge is far outweighed the burdens of this deposition, especially given the extensive discovery already conducted and that will be conducted on these exact issues.

by state, county, city, and tribal governments, hospitals, unions, school districts, individuals, and so on. Even the federal MDL has now resulted in three separate cases being remanded for discovery and trial in three separate courts. And each of these cases may present issues unique to their respective jurisdictions. This is entirely unlike *Bard*, where there was a single consolidated federal MDL with a single product at issue. Thus, the concern about "repetitive, abusive, and harassing depositions"—the concern at the very heart of the apex doctrine—is very much an issue here, especially if Plaintiffs' request is granted on their threadbare record. *See In re C. R. Bard*, 2014 WL 12703776, at *5. Plaintiffs, however, have nothing to say on this point.

## CONCLUSION

Both the Plaintiffs and the Special Master ignored the relevant test for seeking an apex deposition and the extensive factual record in this case, both of which compel but one result: that Plaintiffs should not be permitted to depose ABDC CEO Steven Collis. As such, this Court should reverse the Special Master's determination and deny Plaintiffs' motion to compel.

Dated: July 16, 2020                                          Respectfully submitted,

***AmerisourceBergen Drug Corporation***
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100

Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 16th day of July, 2020, the foregoing AmerisourceBergen Drug Corporation's Reply in Support of its Appeal from Discovery Ruling 11 Granting Plaintiffs' Motion to Compel the Deposition of AmerisourceBergen's CEO Steven H. Collis was served upon counsel of record electronically.

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)