UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF
WEST VIRGINIA

| | |
|---|---|
| **THE CITY OF HUNTINGTON,**<br>    Plaintiff,<br>v.<br>**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**<br>    Defendants<br><br>**CABELL COUNTY COMMISSION,**<br>    Plaintiff,<br>v.<br>**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**<br>    Defendants | Consolidated<br>Civil Action No. 3:17-01362<br>Hon. David A. Faber |

**AMENDED NOTICE OF VIDEOTAPED 30(b)(6) DEPOSITION
OF CABELL COUNTY COMMISSION**

Defendants AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation hereby give notice that a deposition or depositions will be taken pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure of one or more officers, directors, or managing agents, or other Persons designated by Plaintiff Cabell County Commission upon the particular topics described below.  The deposition will be held on July 23, 2020, and July 27, 2020, beginning at 9:00 AM, or at such other date and time as agreed by the parties, at **Mountain Health Arena, 1 Civic Center Plaza, Huntington, WV 25701** or such other location agreed to

by the parties. The deposition will be recorded stenographically and by video by a Person authorized to administer oaths.

## DEFINITIONS

As used in this Notice of Deposition, the following terms shall have the meanings set forth below. Other terms shall have their plain meaning or as otherwise defined in the Complaint.

"Illicit Opioids" means substances comprised of or containing natural, synthetic, or semisynthetic chemicals that bind to opioid receptors in the brain or body that are not approved by FDA, including but not limited to heroin, fentanyl, carfentanil, other fentanyl-type analogs, and counterfeit opioid medications.

"Plaintiff" means each plaintiff to whom this Notice is addressed, including the executive and legislative branches, agencies, offices, departments, divisions, commissions, agents, employees, boards, instrumentalities, vendors, administrators, and other Persons or entities acting on that plaintiff's behalf or controlled by that plaintiff. When the pronouns "You" or "Your" are used, their antecedent is each Plaintiff.

"Prescription Opioid(s)" refers to FDA-approved pain-reducing medications consisting of natural, synthetic, or semisynthetic chemicals that bind to opioid receptors in a patient's brain or body to produce an analgesic effect, including, but not limited to, the Prescription Opioids referenced in the Complaint as to which Plaintiffs seek to hold the Defendants liable.

"Person" means any individual, corporation, firm, partnership, joint venture, unincorporated association, trade association, governmental entity, dealer group, council or other incorporated or unincorporated entity, business entity or group of individuals or entities, singular or plural, as the content may require.

Unless otherwise specified, the Relevant Time Period for this Notice is the time period during which Plaintiff claims any Defendant engaged in any allegedly wrongful or unlawful conduct that affected the Plaintiff for which Plaintiff seeks relief in this litigation, or such other time period as the parties may later agree or the Court determines should apply to each side's discovery in this action.

## TOPICS FOR EXAMINATION

The topics upon which the person or persons designated by the Plaintiff are asked to be prepared to testify in accordance with Rule 30(b)(6) are:

1. Diversion of Prescription Opioids in Plaintiff's geographic area that Plaintiff contends caused it harm and for which it is seeking remedies in this lawsuit.

   *This topic concerns Plaintiff's understanding of the meaning of diversion; how Prescription Opioids were diverted; who diverted Prescription Opioids; when Prescription Opioids began to be diverted; when and how Plaintiff became aware of diversion in its geographic area or that Prescription Opioids from outside of Plaintiff's geographic area were being brought into Plaintiff's geographic area; and the steps Plaintiff took to prevent the diversion of Prescription Opioids in its geographic area.*

2. Any promotion, marketing, or educational activities concerning Prescription Opioids in or concerning Plaintiff's geographic area including (a) concerns or complaints made to or by Plaintiff about any promotion, marketing, or educational activities with respect to prescription opioids within or relating to Plaintiff's geographic area; and (b) actions taken by Plaintiff or others in response to those concerns or complaints.

   *This topic includes an identification and description of the alleged false, misleading, unlawful, and/or deceptive statements, omissions, or conduct that Plaintiff contends a Defendant made or that Plaintiff seeks to attribute to a Defendant, including third-party statements, for harm to Plaintiff or in Plaintiff's geographic area. This topic also includes when and how Plaintiff became aware of or was influenced by those statements.*

3. Identification of all prescriptions of opioids that Plaintiff contends have caused it harm and for which it is seeking remedies in this lawsuit.

   *This topic concerns the circumstances around the decision to prescribe Prescription Opioids: the date of the prescription, the medication prescribed, the doctor who wrote the prescription, the patient for whom the prescription was written, the condition for which the prescription was written, whether the prescription was medically necessary and/or appropriate, who was responsible for determining whether the prescription was medically necessary and/or appropriate, any other treatments that were given and/or*

3

*available for the condition, either in conjunction with or as alternatives to the prescription opioid, whether the patient took the Prescription Opioids as intended and instructed by the prescription, the harm (if any) suffered by the patient as a result of the prescription, and all costs that Plaintiff contends it suffered as a result of the prescription.*

4. For each prescription identified in response to Topic No. 3, whether the prescription was reimbursed on Plaintiff's behalf and if so, the circumstances surrounding the coverage decision.

    *This topic concerns the length of time that Plaintiff provided payment or reimbursement for the opioid prescription, the circumstances under which Plaintiff provided such payment or reimbursement, any contracts or other sources of obligation that led Plaintiff to provide such payment or reimbursement, and all communications concerning such payment or reimbursement.*

5. Opioid prescriptions written by Your physicians or health care providers.

    *This topic concerns prescriptions for Prescription Opioids that were written or dispensed by health care providers or pharmacists employed by You or who practiced at facilities owned, operated, or fully or partially funded by, or affiliated with You, including the circumstances around the decision to prescribe Prescription Opioids.*

6. Your understanding and awareness of the proper prescribing and use of Prescription Opioids, including patient and population characteristics that may increase the rate of proper prescribing and use of Prescription Opioids.

    *This topic concerns the standard of care for prescribing Prescription Opioids, including how the standard of care for prescribing Prescription Opioids has changed over time, who is responsible for setting or influencing the standard of care for prescribing Prescription Opioids, and those circumstances under which You believe the prescription of such medications is or is not appropriate and when You developed that understanding.*

7. Your understanding and awareness of the standard of care with respect to treatment of pain, including the factors that you, as a non-expert, believe affected prescribing practices for Prescription Opioids in Your community.

    *This topic concerns the medical standard of care for treating pain, including treatment with Prescription Opioids, including how the standard of care for the treatment of pain has changed over time and who is responsible for setting or influencing the standard of care for the treatment of pain.*

8. The harm(s) that Plaintiff has incurred or expects it will incur from the promotion, marketing, distribution, dispensing, and/or diversion of Prescription Opioids.

    *This topic concerns identification of each alleged harm that Plaintiff has incurred or expects it will incur from the promotion, marketing, distribution, dispensing, or diversion of Prescription Opioids; when Plaintiff incurred each harm it claims to have suffered;*

*when Plaintiff became aware it was incurring that harm; and how that harm is allegedly connected to the actions of each Defendant, if at all.*

9. All expenditures made in response to or caused by the opioid epidemic.

   *This topic concerns expenditures or moneys expended in Plaintiff's geographic area relating to or caused by the opioid epidemic, including expenditures or moneys expended in the adoption or expansion of programs addressing or intended to address the opioid epidemic; the categories of Plaintiff's expenditures and the factual basis for the claim that such expenditures relate to the opioid epidemic in Plaintiff's geographic area; any impact that such expenditures had on the budgets or accounts for any of Your agencies or political subdivisions; the facts, documents, and accounting data through which such expenditures may be ascertained; the process and methodology by which the amounts have been or can be calculated; any information connecting each category of expenditure and the amount(s) to the specific conduct of each Defendant that Plaintiff challenges in this litigation.*

10. All programs instituted to mitigate, abate, or otherwise address the impact of opioid prescribing, promotion, marketing, distribution, diversion, use, or abuse in Your geographic area.

    *This topic concerns your knowledge of and actions taken (including through task forces) to mitigate, abate, or otherwise address the opioid epidemic, including actions (contemplated or taken) to prevent opioid diversion; to ensure the proper prescribing of prescription opioids; to address opioid promotion, marketing, distribution, or diversion; to prevent or treat opioid abuse, to prevent the entry of illegal opioids or other illegal substances into your geographic area; and to prosecute or otherwise sanction Persons contributing to the problem. This topic includes the origin, composition, function, and operations of any relevant task force, program, working group, committee, or other organization.*

11. The facts and evidence that connect any Defendant to any incident of opioid diversion, abuse, misuse, addiction, or overdose in Your geographic area for which Plaintiff is seeking remedies in this lawsuit.

    *This topic concerns Plaintiff's factual basis for connecting a Defendant's alleged conduct to an opioid prescription that Plaintiff contends was medically improper or diverted, or any Prescription Opioid or Illicit Opioid that led to an incident of opioid abuse, misuse, addiction, or overdose in Your geographic area. This topic also concerns Plaintiff's factual basis for alleging that a Defendant could have taken specific, identifiable steps to prevent the alleged harm caused by any prescription or incident of diversion, abuse, misuse, addiction, or overdose identified in response to this topic.*

12. The suspicious orders in Plaintiff's geographic area, and any harm caused by such suspicious orders for which Plaintiffs is seeking remedies in this lawsuit.

*This topic concerns Your understanding of the meaning of the term "suspicious order"; how a specific suspicious order was determined to be "suspicious"; facts bearing on whether or how the suspicious order caused harm to Plaintiff; the links in the causal chain that led to such harm; and the specific Persons and entities involved. This topic also concerns identification of the pharmacy and wholesale drug distributor that then supplied Prescription Opioids in response to the suspicious order from each such pharmacy; identification of the patients to whom each such pharmacy then dispensed Prescription Opioids from inventory supplied by each such wholesale drug distributor pursuant to each such suspicious order; and identification of what acts or conduct each such patient then engaged in that caused You harm.*

13. All actors and acts that caused any harm that You suffered from Prescription Opioids or Illicit Opioids for which You are seeking remedies in this lawsuit.

    *This topic concerns the role of Defendants in the supply chain for FDA-approved prescription opioids, the distinct roles of other actors involved in the supply chain, and other actors' lawful distribution of opioids or diversion of opioids that caused any harm You suffered.*

14. The investigation of doctors, pharmacists, pharmacies, clinics, "pill mills," or hospitals in Plaintiff's geographic area for diversion of Prescription Opioids or the improper prescribing of opioids.

    *This topic concerns those Persons—whether located within or outside of Plaintiff's geographic area—that You identified, investigated, or suspected of prescribing or dispensing Prescription Opioids that You allege caused harm in Your geographic area, were medically unnecessary, and/or were diverted in or into Your geographic area; the actions You took to identify, investigate, discipline, report, arrest, or prosecute such Persons; and the facts and evidence that connect the Person or entity who may have caused harm to an allegedly wrongful act by a Defendant.*

15. The identification of instances in which Plaintiff, or any agency or board within its geographic boundaries, disciplined or prosecuted, or chose not to discipline or prosecute, Persons for the theft, diversion, illegal sale, or improper prescribing of Prescription Opioids.

16. Rules, ordinances, policies, or guidelines (and changes thereto over time) related to opioids.

    *This topic concerns rules, ordinances, policies, or guidelines concerning arrest, prosecution, or punishment of entities or individuals diverting, unlawfully prescribing or dispensing, or unlawfully possessing or using Prescription Opioids, and the prescribing of opioids by doctors or other healthcare providers in Plaintiff's community.*

17. The use and abuse of Illicit Opioids and controlled or regulated substances other than Prescription Opioids, and the trafficking of such substances, in Plaintiff's geographic area.

*This topic concerns the diversion, overprescribing, abuse, addiction, overdose, or death from Illicit Opioids or controlled or regulated substances other than Prescription Opioids in Plaintiff's geographic area, including Plaintiff's expenditures related to the use and abuse of those substances.* The identification of individuals who overdosed on, or became addicted to, Prescription or Illicit Opioids in Plaintiff's geographic area.

18. The identification of individuals who overdosed on, or became addicted to, Prescription or Illicit Opioids in Plaintiff's geographic area.

    *This topic concerns individuals for whom Plaintiff provided treatment or other services for Prescription Opioid or Illicit Opioid addiction, abuse, or overdose (including death); and Plaintiff's knowledge of each individual's medical, addiction, or law enforcement history, or history of misconduct involving Prescription Opioids or Illicit Opioids, such as illegal sale, diversion, doctor-shopping, or pharmacy-shopping.* Plaintiff's budgets and sources of revenue.

19. Plaintiff's budgets and sources of revenue.

    *This topic concerns Plaintiff's budgets for every year in the Relevant Time Period, including the portion of each year's budget attributable to costs allegedly caused by Prescription Opioids or Illicit Opioids and the portion of each year's budget attributable to preventing or mitigating the "Opioid Crisis" (as that term is used in Plaintiff's Complaint). This topic further includes the source of funds used to pay for any expenditures Plaintiff claims resulted from opioid use and abuse and any reimbursement or grants Plaintiff sought or obtained for any such expenditures.*

20. Communications between Plaintiff and any member of Plaintiff's community regarding opioid abuse.

    *This topic concerns Your communications with residents about the use, abuse, addiction to, promotion, marketing, overprescribing, and/or diversion of Prescription Opioids and other opioids that caused the expenditures for which You seek remedies.*

21. Communications between Plaintiff and other governmental entities regarding opioid abuse.

    *This topic concerns Your communications concerning the use, abuse, misuse, addiction to, promotion, marketing, and/or diversion of Prescription Opioids and other opioids with other state, local, or federal governmental entities.*

22. Communications between Plaintiff and any prescriber or third-party insurer, payor, or pharmacy benefits manager related to Prescription Opioids.

23. Plaintiff's knowledge of and access to data concerning Prescription Opioid manufacturing, prescribing, distribution, or dispensing.

*This topic concerns Your knowledge of, access to, data requests of, and use of data from the DEA's ARCOS database, the West Virginia Controlled Substance Automated Prescription Program (CSAPP) database, or other sources of relevant data.*

24. The policies regarding the West Virginia CSAPP database.

    *This topic concerns any policies, procedures, or communications that require doctors and pharmacies to consult the West Virginia CSAPP database prior to prescribing or dispensing Prescription Opioids and/or report any data concerning Prescription Opioids.*

25. DEA's quotas for Prescription Opioids.

    *This topic concerns DEA's statutory responsibility to set quotas for the lawful manufacture and/or procurement of Prescription Opioids, the quotas that DEA set, and any role that You allege Defendants played in the process of setting those quotas.*

26. Consideration by Plaintiff of limiting the prescribing, distribution, or dispensing of Prescription Opioids.

    *This topic concerns any research, analysis, meetings, studies or discussions known to or participated in by You at any time regarding whether the quantity of any Prescription Opioid prescribed, distributed, or dispensed in Your jurisdiction could or should be limited.*

27. The coverage of, or reimbursement of Prescription Opioids on Plaintiff's behalf, including on behalf of Plaintiff's employees, their dependents, incarcerated Persons, or pension beneficiaries and/or through an insurance program or pharmacy benefit program.

    *This topic concerns how and when You (or any of Your agencies, offices, departments, pharmacy benefit managers, third party administrators, and/or other third-party contractors) determine to pay for opioid medications (or alternative medications), including placing opioid medications on formularies.*

28. Prescribing or administration of Prescription Opioids at Plaintiff-affiliated institutions including, but not limited to, hospitals, clinics, nursing homes, hospices, universities, and correctional facilities.

    *This topic includes the policies, processes, and actions regarding the prescription or administration of Prescription Opioids at Plaintiff-affiliated institutions.*

29. Identification of entities, individuals, and factors other than Defendants whom you, as a non-expert, believe caused and/or contributed to the "Opioid Crisis" (as that term is used in Plaintiff's Complaint) in Plaintiff's geographic area.

    *This topic includes identification of, among others, any prescription opioid manufacturer, any prescriber, any pharmacist, and/or any criminals. The topic includes any alleged false, misleading, unlawful, and/or deceptive statements, omissions, or conduct that Plaintiff contends any individual or entity made, including third-party statements, for*

*harm to Plaintiff or in Plaintiff's geographic area. This topic includes identification of factors (including socioeconomic factors) that may have contributed to the "opioid crisis."*

30. Your organizational structure.

   *This topic concerns Plaintiff's agencies, reporting lines, officials, other sub-organizations or sub-divisions and their relationship to other West Virginia government entities.*

31. Plaintiff's document maintenance and retention policies and practices.

   *This topic concerns the existence, location, storage, retention and destruction of Your documents related to Prescription Opioids and to the facts relating to Prescription Opioids on which Your claims are based.*

Dated: July 17, 2020

          Respectfully submitted,

          ***AmerisourceBergen Drug Corporation***
          By Counsel:

          */s/ Gretchen M. Callas*
          Gretchen M. Callas (WVSB #7136)
          JACKSON KELLY PLLC
          Post Office Box 553
          Charleston, West Virginia 25322
          Tel: (304) 340-1000
          Fax: (304) 340-1050
          gcallas@jacksonkelly.com

          Robert A. Nicholas
          Shannon E. McClure
          REED SMITH LLP
          Three Logan Square
          1717 Arch Street, Suite 3100
          Philadelphia, PA 19103
          Tel: (215) 851-8100
          Fax: (215) 851-1420
          nicholas@reedsmith.com
          smcclure@reedsmith.com

*Cardinal Health, Inc.*
By Counsel:

*/s/ Michael W. Carey*
Michael W. Carey (WVSB #635)
David R. Pogue (WVSB #10806)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
Carey, Scott, Douglas & Kessler, PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
mwcarey@csdlawfirm.com
drpogue@csdlawfirm.com
sruby@cdkrlaw.com
rfranks@cdkrlaw.com


*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard @wc.com
ahardin@wc.com

*McKesson Corporation*
By Counsel:

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*/s/ Geoffrey E. Hobart*
Geoffrey E. Hobart
Mark H. Lynch
Christian J. Pistilli
Laura Flahive Wu
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
cpistilli@cov.com
lflahivewu@cov.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2020, the foregoing ***Amended Notice of Videotaped 30(b)(6) Deposition of Cabell County Commission*** was sent to Counsel for the Plaintiffs and Defendants using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

                                              */s/ Gretchen M. Callas*
                                              Gretchen M. Callas (WVSB # 7136)