IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON, <br><br>　　　Plaintiff, <br><br>v. <br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.* <br><br>　　　Defendants. <br>_____ <br><br>CABELL COUNTY COMMISSION, <br><br>　　　Plaintiff, <br><br>v. <br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.* <br><br>　　　Defendants. | Civil Action No. 3:17-01362 <br><br><br><br><br><br><br><br><br>Civil Action No. 3:17-01665 |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO
COMPEL PRODUCTION OF CERTAIN CITY OF HUNTINGTON DOCUMENTS**

　　Defendants have identified 6,880 documents[1] that the City of Huntington ("Huntington") has improperly withheld—3,464 based on "Third Party Confidentiality Restrictions" and 3,416 based on "Law Enforcement" privilege. In its response, Huntington provides no valid justification for refusing to produce these documents. Huntington appears to suggest that because it has produced *other* law-enforcement-related documents in this litigation, it need not

---

[1] Huntington asserts that the "actual number of *documents* (rather than selected pages within a document) withheld is far less than the quantity noted in Defendants' Motion." Response at 1 n.1 (emphasis in original). The numbers Defendants cite represent individual privilege log entries. Defendants recognize that some of these entries may reflect individual pages within a larger document  However, in the interest of simplicity, Defendants continue to use the term "documents" in this brief to identify the privilege log entries being challenged.

1

produce the challenged documents because they *also* relate to law enforcement. That is incorrect. Huntington bears the burden to establish that these documents are properly withheld as privileged. It has failed to do so.

For the reasons set forth below, as well as those set forth in Defendants' Motion to Compel (Dkt. No. 690) and supporting memorandum (Dkt. No. 691) (collectively, the "Motion"), Defendants respectfully request an order compelling Huntington to produce the challenged documents.

## ARGUMENT

A basic principle of privilege law is that the party asserting the privilege bears the burden to establish that the privilege applies. *See, e.g.*, *Arch Specialty Ins. Co. v. Go-Mart, Inc.*, 2009 WL 10687968, at *2 (S.D.W. Va. July 24, 2009) ("It is well-established that a party asserting a privilege has the burden of proving its existence, and must supply opposing counsel with sufficient information to assess the applicability of the privilege or protection, without revealing information which is privileged.") (internal quotations omitted); *State ex rel. United Hosp. Ctr., Inc. v. Bedell*, 484 S.E.2d 199, 208 (W. Va. 1997). Huntington has failed to meet this burden with respect to documents withheld for "Third Party Confidentiality Restrictions" and for "Law Enforcement" privilege. Thus, the documents should be produced.

**I.  Huntington Provides No Authority for Withholding Documents Based on "Third Party Confidentiality Restrictions."**

As Defendants explained in their Motion, "Third Party Confidentiality Restrictions" is not a valid, independent privilege that allows Huntington to withhold 3,464 documents.[2] *See Qualcomm Inc. v. Broadcom Corp.*, 2006 WL 8455382, at *4 (S.D. Cal. Aug. 14, 2006) ("As a

---

[2] These documents are shaded in green in the privilege logs attached to the Motion. *See* Exhibits B–E to the Motion.

general proposition, confidentiality alone is not an objection which unilaterally precludes discovery."). That is especially true when, as here, a protective order is in place governing the treatment of confidential documents. *See Maclay v. Jones*, 542 S.E.2d 83, 90 n.11 (W. Va. 2000). The protective order in this litigation sets out the procedures to be followed when a discovery request seeks documents that are subject to a third-party confidentiality agreement. *See* Dkt. No. 441 ¶ 78, *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804 (N.D. Ohio). And it bears particular emphasis that the protective order ***does not*** give the receiving party the right to unilaterally refuse to produce documents subject to a third-party-confidentiality agreement.

Huntington has failed to follow the procedures set forth in the protective order for discovery requests seeking documents governed by a third-party confidentiality agreement. Instead, Huntington accuses Defendants of attempting "to conduct derivative discovery through their demands that Plaintiffs produce documents created by third-party law enforcement agencies." Response Br. at 4. That is simply not true. Defendants are seeking discovery *from* Huntington. If Huntington possesses responsive documents that are subject to a confidentiality agreement, the protective order makes clear that Huntington ***cannot*** refuse to produce them on that basis and must instead follow the procedures of the protective order. Furthermore, law enforcement discovery—particularly documents bearing on the law enforcement response to opioid abuse in Cabell County—is critical to testing Plaintiffs' claims against Defendants. Huntington cannot use a third party's involvement in these documents to shield them from discovery.

Nowhere in its response does Huntington assert that it followed the procedures of the protective order by informing the third parties at issue of its obligation to produce the requested documents. Nor does Huntington say that it informed the third parties of their opportunity to

seek the Court's protection if they object to the production of these documents. Thus, Huntington's response concedes that it failed to follow the procedures of the protective order for documents that are subject to third-party confidentiality agreements. Furthermore, Huntington has not identified a single case that supports withholding documents based solely on "Third Party Confidentiality Restrictions."

In short, the protective order governs the situation here, and Huntington has not followed its requirements. *See Maclay*, 542 S.E.2d at 90 n.11 ("[T]he use of protective orders is preferential to the total non-disclosure of requested materials that are otherwise subject to discovery."). Huntington has not satisfied its burden to withhold the green-shaded documents, and they should be produced, subject to the requirements of the protective order.[3]

## II. Huntington's General Claims of Harm Are Insufficient to Invoke Law Enforcement Privilege.

Huntington also fails to offer sufficient justification for its withholding of 3,416 documents based on "Law Enforcement" privilege.[4] West Virginia law requires a party withholding documents based on a "Law Enforcement" privilege to make a "substantial threshold showing of harm" that will result from disclosing the challenged documents. *See Maclay*, 542 S.E.2d at 91. "[G]eneral claim[s] of harm" are insufficient. *See id.* Instead, the showing "must be sufficiently specific to permit the trial judge to be fully apprised as to the significance of the disclosure concerns." *Id.*; *see also Aguilar v. Immigration & Customs Enforcement Div. of the U.S. Dept. of Homeland Sec.*, 259 F.R.D. 51, 56–57 (S.D.N.Y. 2009) (a

---

[3] Defendants' position is that all green-shaded documents should be produced. While Defendants appreciate Huntington's suggestion that a subset of documents be subject to *in camera* review, the timeline of this case will not allow for that.

[4] These documents are shaded in blue in the privilege logs attached to the Motion. *See* Exhibits B–E to the Motion.

4

court "need not defer blindly" to assertions of law enforcement privilege and the party opposing disclosure must make a "clear and specific evidentiary showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted").

Despite withholding 3,416 documents based on "Law Enforcement" privilege, Huntington makes only one general claim of harm applicable to all documents: that disclosure of "documents detailing highly sensitive law enforcement techniques" "would fundamentally hinder Plaintiff's ability to safely conduct similar, future operations." Response Br. at 3. Huntington makes no effort to identify any individual documents or explain how disclosure of these individual documents will lead to these alleged harms.[5] Thus, Huntington fails to meet the standards for this privilege. As Huntington itself acknowledges, West Virginia law "recognizes a law enforcement privilege in those instances *where specific harms are likely to result from disclosure*." Response Br. at 2 (emphasis added). Yet Defendants and the Court are left to guess what "specific harms" might result from disclosure here. Huntington bears the burden of establishing this privilege, and its general claim of harm is insufficient to invoke the "Law Enforcement" privilege under West Virginia law. *See Maclay*, 542 S.E.2d at 91.

Huntington also argues that it has already produced "voluminous law-enforcement records in this case" and that therefore, Defendants' need for these documents is outweighed "by the factors weighing against disclosure of the documents." Response Br. at 3. Again, Huntington has provided only general information about the challenged documents, making it impossible for Defendants to assess them in any meaningful way. As discussed above, law

---

[5] By Huntington's own admission, "the actual number of *documents* (rather than selected pages within a document) withheld is far less than the quantity noted in Defendants' Motion." Response Br. at 1 n.1 (emphasis in original). Given the smaller number of documents withheld, Huntington could have provided more specific explanations about the harms flowing from the disclosure of individual documents. Instead, it chose to rely on a blanket, general claim of harm.

5

enforcement discovery is critical to Defendants' case, and the fact that Huntington has already produced law enforcement records does not diminish the importance of the challenged documents. Finally, Huntington does not identify what "factors" weigh against disclosure here, other than to say that disclosure could affect future investigations. This argument also fails.

Simply put, Huntington expects Defendants and the Court to take its word that these law enforcement documents are privileged. But Defendants and the Court need not "defer blindly" to Huntington's claims of "Law Enforcement" privilege. *See Aguilar*, 259 F.R.D. at 56–57. Huntington is required to identify specific harms flowing from the disclosure of the documents to allow Defendants and the Court to properly assess the privilege claims. *See Maclay*, 542 S.E.2d at 91. It has not done so here, and therefore fails its burden to show that the privilege applies. The blue-shaded documents should be produced. Defendants remain willing to accept these law enforcement documents under the Attorneys' Eyes Only ("AEO") designation of the protective order.

## III.   Conclusion

For the reasons set forth above and in the Defendants' Motion, Defendants respectfully request an order compelling production of the challenged documents. In the interest of expediency, Huntington may produce the blue-shaded documents as AEO.

Dated: July 24, 2020

Respectfully Submitted,

*McKesson Corporation*
By Counsel:

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*/s/ Carol Dan Browning*
Carol Dan Browning
Stites & Harbison, PLLC
400 West Market Street
Suite 1800
Louisville, Kentucky  40202
Telephone:  (502) 587-3400
Facsimile:  (502) 587-6391
cbrowning@stites.com

*/s/ Timothy C. Hester*
Timothy C. Hester
Mark H. Lynch
Christian J. Pistilli
Laura Flahive Wu
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
mlynch@cov.com
cpistilli@cov.com
lflahivewu@cov.com

*AmerisourceBergen Drug Corporation*
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Cardinal Health, Inc.*
By Counsel:

*/s/ Steven R. Ruby*
Michael W. Carey (WVSB No. 635)
Steven R. Ruby (WVSB No. 10752)
David R. Pogue (WVSB No. 10806)
Raymond S. Franks II (WVSB No. 6523)
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
drpogue@csdlawfirm.com
rfranks@cdkrlaw.com

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III

Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard @wc.com
ahardin@wc.com

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 24th day of July, the foregoing **"**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PRODUCTION OF CERTAIN CITY OF HUNTINGTON DOCUMENTS" was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)