# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF WEST VIRGINIA
# AT HUNTINGTON

| | |
|---|---|
| THE CITY OF HUNTINGTON, W. Va., <br>     Plaintiff, <br> v. <br> AMERISOURCEBERGEN DRUG CORPORATION, *et al.*, <br>     Defendants. | CASE NO. 3:17-cv-01362 <br><br><br> THE HONORABLE DAVID A. FABER |
| CABELL COUNTY COMMISSION, <br>     Plaintiff, <br> v. <br> AMERISOURCEBERGEN DRUG CORPORATION, *et al.*, <br>     Defendants. | CASE NO. 3:17-cv-01665 <br><br><br> THE HONORABLE DAVID A. FABER |

**MOTION OF NONPARTIES UNIVERSITY PHYSICIANS & SURGEONS, INC. AND THE MARSHALL UNIVERSITY BOARD OF GOVERNORS FOR AWARD OF <u>EXPENSES INCURRED IN RESPONDING TO THIRD PARTY DISCOVERY</u>**

  COMES NOW University Physicians & Surgeons, Inc. dba Marshall Health ("Marshall Health") and the Marshall University Board of Governors ("Marshall University") (Marshall Health and Marshall University are sometimes hereinafter collectively referred to as "Marshall"), by and through counsel, Joel P. Jones, Jr. of the law firm of Campbell Woods, PLLC, and, pursuant to Rule 45(d)(2)(B)(ii) of the Federal Rules of Civil Procedure, moves this Honorable Court to award Marshall out of pocket costs, reimbursement for personnel time, lost earnings, attorneys' fees, and all other allowable costs incurred in responding to discovery issued by the parties to this case, and, in support thereof, aver and represent as follows:

## SALIENT FACTS

  1. Marshall University is a university of the State of West Virginia, and its constituent colleges include the Joan C. Edwards School of Medicine ("School of Medicine") and the School of Pharmacy.

  2. Marshall Health is a nonprofit corporation, determined to be a tax exempt corporation under §§ 501(a) and 501(c)(3) of the Internal Revenue Code, and is the faculty practice plan of the School of Medicine and School of Pharmacy.

  3. Although Marshall Health and Marshall University are distinct entities, as the faculty practice plan, many physicians and other professionals employed by Marshall Health also have faculty appointments with the School of Medicine, and, therefore, many personnel of Marshall are situate in dual academic and clinical roles within the School of Medicine and Marshall

Health, respectively.

4.     Further, as Marshall Health is the faculty practice plan, the faculty of the School of Medicine practice medicine in a clinical capacity through Marshall Health.

5.     Neither Marshall Health, Marshall University, nor any of their employees, officers, directors, or faculty are parties to this case or any other case connected to opioid litigation at either a local, State, or national level.

6.     Marshall University was served with a subpoena dated February 18, 2020, by The City of Huntington, attached hereto as "Exhibit A".

7.     Marshall Health was served with a subpoena dated February 14, 2020, by The City of Huntington, attached hereto as "Exhibit B" (Exhibits A and B are hereinafter collectively the "Plaintiffs' Initial Subpoenas").

8.     Marshall complied with Plaintiffs' Initial Subpoenas.

9.     Brian A. Gallagher, R.Ph, J.D., as former interim dean, current professor of the School of Pharmacy, and Chairman of the Governor's Advisory Council on Substance Use Disorder, was served, through Marshall counsel, with a subpoena dated April 20, 2020, by Cardinal Health, Inc. ("Cardinal Health"), attached hereto as "Exhibit C", seeking document production and deposition testimony before the then discovery deadline of June 15, 2020.

10.    Robert Hansen, as an addiction sciences professional and employee of Marshall Health and the School of Medicine, and as Director of the Department of Health and Human Resources Office of Drug Control Policy, was served, through Marshall counsel, with a subpoena dated April 20, 2020, by Cardinal Health, attached hereto as "Exhibit D", seeking document production and deposition testimony before the then discovery deadline of June 15, 2020.

11.    Messrs. Gallagher and Hansen were also served by Cardinal Health, through Marshall counsel, with Rule 30(b)(6) examination subpoenas for the Governor's Counsel on Substance Use Disorder and the Department of Health and Human Resources Office of Drug Control Policy, respectively, attached hereto as "Exhibit E" and "Exhibit F", respectively.

12.    Stephen Petrany, M.D., as a physician and chair of the Marshall Health and School of Medicine Department of Family Medicine, was served, through Marshall Counsel, with a subpoena dated April 20, 2020, by Cardinal Health, attached hereto as "Exhibit G", seeking document production and deposition testimony before the then discovery deadline of June 15, 2020.

13.    The subpoenas to Messrs. Gallagher and Hansen and Dr. Petrany were withdrawn and re-issued by nearly identical subpoenas dated May 19, 2020, attached hereto as "Exhibit H", "Exhibit I", and "Exhibit J", respectively (Exhibits C through J are hereinafter collectively the "Cardinal Subpoenas").

14. By letter dated May 28, 2020, attached hereto as "Exhibit K", Marshall, through counsel, made timely objection to the Cardinal Subpoenas for reason that, *inter alia*, the subpoenas were overly broad and unduly burdensome, and, in light of such burden, Marshall requested financial compensation from Cardinal Health in responding to the subpoenas.

15. Marshall Health was served with a subpoena dated April 10, 2020, by AmerisourceBergen Drug Corporation ("AmerisourceBergen"), attached hereto as "Exhibit L", seeking document production from Marshall Health.

16. Marshall University was served with a subpoena dated April 10, 2020, by AmerisourceBergen, attached hereto as "Exhibit M", seeking voluminous document production from Marshall Health.

17. By letters dated April 27, 2020, attached hereto as "Exhibit N" and "Exhibit O", Marshall, through counsel, made timely objection to the AmerisourceBergen subpoena of April 10, 2020, for reason that, *inter alia*, the subpoenas were overly broad and unduly burdensome, and, in light of such burden, Marshall requested financial compensation from AmerisourceBergen in responding to the subpoena.

18. Thereafter, Marshall Health and Marshall University were served, through counsel, with subpoenas dated June 1, 2020, attached hereto as "Exhibit P" and "Exhibit Q", seeking Rule 30(b)(6) examinations.

19. Lyn O'Connell, Ph.D., as the associate director of addiction sciences at Marshall Health and Marshall University, was served, through Marshall counsel, with a subpoena dated June 1, 2020, and an amended subpoena dated July 23, 2020, collectively attached hereto as "Exhibit R", by AmerisourceBergen, seeking deposition testimony.

20. Marshall has always cooperated fully with discovery efforts, but has maintained its objections to the scope and burden of the requests, which objections have included several requests for reimbursement in responding the subpoenas.  Further, counsel for Marshall has made several oral requests for compensation.  Generally, these requests were met amicably, but counsel for Marshall was instructed that counsel for the Defendants would need to survey what was happening in cases around the country to ensure some level of consistency among the cases.  Pending these requests for reimbursement, Marshall continued to undertake its best efforts comply with the subpoenas, and, in fact, has complied and continues to comply with the Subpoenas.

21. Counsel for Cardinal Health, after request from counsel for Marshall Health, provided suggested search terms for the electronic mail accounts of Mr. Gallagher, the results of which yielded over three thousand (3,000) electronic messages.

22. Counsel for Marshall was also provided with proposed third party "search terms" to be used in conducting its searches of custodial electronic mail accounts in response to the AmerisourceBergen subpoena, attached hereto as "Exhibit S".

23. AmerisourceBergen's subpoena initially nominated twenty-one (21) individual custodians, and, using the provided search terms, resulted in (by software estimates) nearly half a million electronic message results. Thereafter, counsel for the Defendants agreed to reduce the number of custodians to eight (8) custodians and to slightly refine the proposed search terms. However, e-mail searches using these custodians and refined terms still resulted in (by software estimates) nearly eighty-five thousand (85,000) electronic mail messages. Of course, this did not include custodial documents to be compiled by the identified custodians.

24. On June 25, 2020, counsel for Marshall participated in a supervised meet and confer conference before the Master Commissioner, the Honorable Christopher Wilkes, during which it was suggested by counsel for Defendants that Marshall be required to produce large volumes of documents and e-mail correspondence without review, but to be marked provisionally confidential. Counsel for Marshall expressed concerns regarding, *inter alia*, patient confidential information protected under Part 2 of Title 42 of the Code of Federal Regulations and other sensitive information. Counsel for Marshall also expressed to the Master Commissioner that request had been made for reimbursement for Marshall's efforts, but that such request, while not having been refused, had to date not been fruitful. Ultimately, the Master Commissioner strongly encouraged Marshall to produce the documents and communications being requested according to the proposal of counsel for the Defendants, to wit, to produce documents without full review provided they were all deemed provisionally confidential.

25. Thereafter, in light of the said Master Commissioner's support for the proposition, counsel for Marshall and counsel for the Defendants submitted an "Agreed Discovery Ruling", entered by the said Master Commissioner, whereby the Court addressed the concerns of Marshall as to the issue of patient identifying information protected by the aforesaid regulations. The *sole* purpose of Marshall and the Defendants agreeing to a discovery ruling was to facility production of documents that may potentially contain sensitive information to balance the needs of the Defendants to receive the information in sufficient time to conclude their discovery and the needs of Marshall to protect sensitive information.

26. Of course, even with this order in place, Counsel for Marshall had to conduct privilege review as well as review for proprietary or confidential information not responsive to the subpoenas. The proposed search terms were so broad that many nonresponsive electronic messages and documents were contained in the results. As a consequence, even under the aforesaid order of the court, a targeted search and limited review of communications and documents within the search results was necessary.

27. Thereafter, Kevin W. Yingling, M.D., was, upon information and belief, improperly served with a subpoena in his capacity as a director of the Cabell-Huntington Health Department, a subpoena dated July 13, 2020, attached hereto as "Exhibit T", by AmerisourceBergen, seeking deposition testimony in that capacity, but the undersigned counsel has now been alerted that AmerisourceBergen will also seek testimony relating to Dr. Yingling's role at Marshall Health and Marshall University.

28. By letter dated July 22, 2020, attached hereto as "Exhibit U", Marshall, through counsel, made timely objection to the AmerisourceBergen subpoena of July 13, 2020, for reason

that, *inter alia*, the subpoena purported to elicit testimony relating to the Cabell-Huntington Health Department, but testimony was anticipated to exceed that scope and include Dr. Yingling's role at Marshall and the time during his tenure at Marshall.

29. Drs. Lyn O'Connell, David Chaffin, Stephen Petrany, and Todd Davies, and Mr. Robert Hansen were served, through Marshall Counsel, with subpoenas dated July 10, 2020, from the Plaintiffs, seeking deposition testimony, collectively attached hereto as "Exhibit V".

30. By letter dated July 22, 2020, attached hereto as "Exhibit W", Marshall, through counsel, made timely objection to the Plaintiffs' subpoena of July 10, 2020, for reason that, *inter alia*, the cumulative effect of the subpoenas in this case are posing an undue burden and significant expense on Marshall.

31. Marshall agreed to accept service of yet two more subpoenas for deposition testimony and document production of two more Marshall physicians and faculty members, Dr. Joseph Werthammer and Dr. Joseph Shapiro, Dean of the School of Medicine, attached hereto as "Exhibit X" and "Exhibit Y", respectively.

32. By letter dated July 27, 2020, attached hereto as "Exhibit Z", Marshall, through counsel, made timely objection to the AmerisourceBergen subpoenas of July 23, 2020, for reason that, *inter alia*, the subpoenas, and the cumulative effect of all subpoenas, are posing an undue burden and a significant expense on Marshall.

33. Subpoenas that were voluntarily served upon counsel for Marshall were accepted to reduce risk of Marshall personnel being exposed to the coronavirus, not because Marshall desired to participate in the discovery process in this litigation.

34. To be fair, counsel for the Defendants has been willing to make certain limited compromises to accommodate an expeditious document production, including entering into the said agreed discovery ruling and agreeing to reduce the number of nominated custodians in the AmerisourceBergen subpoena from twenty-one (21) to eight (8), but the fact remains that Marshall has been bombarded by subpoenas and discovery requests, and the AmerisourceBergen subpoena, and for that matter the cumulative effect of all of the subpoenas, has posed, and continues to pose, an undue burden and an unreasonable and significant expense upon Marshall.

35. To date, including the supervised conference before the said Master Commissioner, counsel for Marshall estimates that it has participated in at least ten (10) "meet and confer" conferences, as well as several other less formal telephone conversations, and, of course, substantial electronic mail correspondence with counsel for the Defendants, not to mention correspondence and communications with counsel for the Plaintiffs. Further, Marshall and its personnel have received or had to respond to or participate in, and have presented or will have to present for deposition testimony, in response to more than ten (10) non-duplicative (that is, excluding amended or revised subpoenas) subpoenas.

36. To date, Marshall has produced nearly one hundred thousand (100,000) electronic messages from nine (9) custodians and many thousands more pages of documents, which does not

include the messages or documents anticipated to be produced in connection with the most recent subpoenas.

37. To date, Marshall Health and Marshall University have incurred more than $34,660.00 in attorney's fees responding to the various subpoenas issued in this case and in connection with deposition preparation and attendance. The vast majority of this expense is in responding to Defendants' subpoenas. Of course, considering the depositions that have taken place since the 24th of July, and the forthcoming depositions in the coming weeks, these fees will only continue to be incurred by Marshall.

38. Further, as of the tendering of this motion, Marshall personnel have spent more than 266 hours in connection with discovery in this case, all while combatting and dealing with both the opioid epidemic and the coronavirus epidemic.

39. All said told, Marshall has incurred more than $34,660.00 dollars in out of pocket expenses and allocated $20,638.81 worth of personnel time to this matter to date, and these figures do not even include the preparation for and conduct of the coming depositions and Rule 30(b)(6) examinations of several more personnel, nor do they include the costs and expenses to be uncured in pending productions.

40. A Summary of the time and expense incurred by Marshall in connection with discovery in this case is attached hereto as "Exhibit AA".

## LAW AND ARGUMENT

41. Recognizing the potential for nonparties to unfairly bear the burden of litigation, the Federal Rules of Civil procedure provide two related, though distinct, mechanisms by which nonparties may be protected from the costs of compliance with third party subpoenas and discovery requests, Rule 45(d)(1) and Rule 45(d)(2)(B)(ii).

42. The first is Rule 45(d)(1), which permits the court to award sanctions for issuing discovery that is overly broad and unduly burdensome and provides:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The [court] must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply.

43. The second is Rule 45(d)(2)(B)(ii), which provides that the court "*must* protect a person who is neither a party nor a party's officer from significant expense resulting from compliance [with a subpoena]." (emphasis supplied)  The ruling heretofore made by the said Master Commissioner, eventually agreed to by the parties, was left silent on the issue to permit discovery to continue on the parties' tight schedule, to permit Marshall to make productions with adequate protections, and to permit Marshall and the parties to work amicably towards voluntary reimbursement. Voluntary reimbursement, unfortunately, has not happened.

44. Marshall made timely objections to the most burdensome subpoenas as provided by Rule 45(d)(2)(B), and, therefore, all rights with respect to the Subpoenas of Marshall have been preserved.

45. The Fourth Circuit Court of Appeals has upheld a magistrate's award of attorneys' fees incurred directly in assisting a nonparty in responding to third party discovery requests, as well as the expense of the production itself. *See Hinterberger v. Am. Nurses Ass'n*, 643 Fed. Appx. 310 (4th Cir. 2016) (unpublished opinion). Importantly, in *Hinterberger*, the Fourth Circuit concluded that attorneys' fees incurred by nonparties may be shifted under Rule 45(d)(2)(B)(ii). *Id.* at 314 (remanding the case for, *inter alia*, a determination by the lower court as to the amount of attorneys' fees that were actually necessary to the nonparty in complying with the subpoena at issue).

46. Although counsel for Marshall has not identified a published Fourth Circuit Court of Appeals opinion directly on point, other Circuits have identified and adjudicated relevant third party discovery disputes consistently with the holding in *Hinterberger*. In *Legal Voice v. Stormans, Inc.*, 738 F.3d 1178 (9th Cir. 2013) (citing the leading case of *Linder v. Calero-Portocarrero*, 251 F.3d 178 (D.C.Cir. 2001)) the Ninth Circuit Court of Appeals concluded that only two considerations are relevant under Rule 45(d)(2)(B)(ii): "(1) whether the subpoena imposes expenses on the non-party, and (2) whether those expenses are 'significant'. If these two requirements are satisfied, the court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder "non-significant." *Legal Voice*, 738 F.3d. at 1184 (internal citations and quotations omitted). The Ninth Circuit went on to observe the *non-discretionary* nature of Rule 45(d)(2)(B)(ii), stating that the *only inquiry* before the court in considering whether to shift costs to a third party is whether the subpoena imposes significant expense. *Id.*

47. Critically, the Ninth Circuit disagreed with the lower court's refusal to award costs to the non-party for reason that the discovery request was not overly burdensome and sufficiently limited. Rather, the Ninth Circuit reiterated that, unlike a request for sanctions pursuant to Rule 45(d)(1), under Rule 45(d)(2)(B)(ii) the *only* consideration is whether the cost of compliance with the subpoena was significant, *not* whether the request was overly burdensome. *Id.* at 1185. Under the facts of *Legal Voice*, the Ninth Circuit had "no trouble concluding that $20,000.00 is 'significant.'" *Id.* (citing *Linder*, 251 F.3d at 182, which noted that $9,000 may be sufficiently significant to justify cost shifting).

48. Marshall's attorneys fees alone in connection with responding to discovery in this case currently exceed $34,660.00, and will continue to increase. Personnel time in responding exceeds 266 hours, equating to $20,638.81 of personnel time. Unquestionably, this cost to a nonparty is "significant".

49. Although the Defendants would emphasize a purported expected benefit to Marshall if there is to be a settlement or a verdict favorable to the Plaintiffs, it cannot be understated or sufficiently reiterated that neither Marshall Health, Marshall University, nor any of

their personnel or faculty are parties to this case or any related case, and none of them have any assurance of any benefit as a result of settlement or verdict for the Plaintiffs in this case, nor is any such settlement or verdict assured.

50. Counsel for the Defendants have argued to counsel for Marshall, *inter alia*, that because one or both of the Plaintiffs may seek to fund opioid addiction programs operated or to be operated by Marshall, that the discovery process has not posed an undue burden on Marshall. This argument, however, is not only entirely misplaced, but also irrelevant. First, Marshall has no stake in this litigation and has no guarantee that any benefit from proceeds that might be allocated to it to fund its addiction programs.

51. The digressions of the previous two paragraphs, however, together with the arguments of the Defendants, stand as superfluous, because the *only* consideration currently before the court is whether the costs to Marshall are "significant" such that Marshall is entitled to cost shifting under Rule 45(d)(2)(B)(ii). The costs to Marshall are, unquestionably, significant, and Marshall is entitled to compensation for its significant efforts and expenses.

52. Although Rule 45(d)(2)(B)(ii) does not purport to impose any sort of deadline or time-frame upon Marshall to make this request for cost shifting, to the extent the court would identify such a deadline or time-frame, Marshall would also move the court for an extension of such time. Any delay that could be identified by the court is reasonable in light of the ongoing negotiations between Marshall and the parties to this case to participate in discovery and agree to reimbursement, the level of cooperation and number of documents and communications that Marshall has provided, and, further, the parties to this case would in no way be prejudiced by extending such a deadline.

53. Marshall expressly reserves the right to request relief under Rule 45(d)(1) and any other means which may be available at either law or equity, and further reserves the right to make further or renewed objections to any discovery issued in this case.

## DEMAND AND PRAYER FOR RELEIF

**WHEREFORE**, University Physicians & Surgeons, Inc. and the Marshall University Board of Governors pray that this Honorable Court grant the following relief:

(A) Enter an Order compelling the parties to this case to pay to University Physicians & Surgeons, Inc. and to the Marshall University Board of Governors the sum of $55,298.81, and providing for the payment by the parties to University Physicians & Surgeons, Inc. and Marshall University their costs and expenses on an ongoing basis, requiring the parties to pay these expenses on a monthly basis; and

(B) Such other relief as law or equity may require and as this Honorable Courts may deem just and appropriate.

UNIVERSITY PHYSICIANS & SURGEONS, INC., and
MARSHALL UNIVERSITY BOARD OF GOVERNORS

By:  /s/ Joel P. Jones, Jr.

Joel P. Jones, Jr.
Campbell Woods, PLLC
1002 Third Avenue
Huntington, West Virginia  25701
Telephone (304) 529-2391
Facsimile (304) 529-1832
joeljones@campbellwoods.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

| | |
|---|---|
| THE CITY OF HUNTINGTON, W. Va.,<br>        Plaintiff,<br>v.<br>AMERISOURCEBERGEN DRUG<br>CORPORATION, *et al.*,<br>        Defendants. | CASE NO. 3:17-cv-01362<br><br>THE HONORABLE DAVID A. FABER |
| CABELL COUNTY COMMISSION,<br>        Plaintiff,<br>v.<br>AMERISOURCEBERGEN DRUG<br>CORPORATION, *et al.*,<br>        Defendants. | CASE NO. 3:17-cv-01665<br><br>THE HONORABLE DAVID A. FABER |

**CERTIFIATE OF SERVICE**

I, the undersigned, do hereby certify that I have caused to be served a true and correct copy of the forgoing upon all counsel listed to receive notice by the Court's electronic filing system for the above styled case.

Given under my hand this 29th day of July, 2020.

/s/ Joel P. Jones, Jr.