EXHIBIT L

AO 88B  (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of West Virginia

| | |
|---|---|
| City of Huntington; Cabell County Commission | ) |
| *Plaintiff* | ) |
| v. | )   Civil Action No.   3:17-01362; 3:17-01665 |
| AmerisourceBergen Drug Corporation, et al. | ) |
| | ) |
| *Defendant* | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  Marshall Health, c/o Beth Hammers, Executive Director,
University Physicians & Surgeons, Inc., 1600 Medical Center Drive, Huntington, WV 25701

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

      See Attachment A.

| Place: Jackson Kelly PLLC<br>500 Lee Street East, Suite 1600<br>Charleston, WV 25301 | Date and Time:<br>04/27/2020 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____4/10/2020_____

*CLERK OF COURT*

                              OR

_____      /s/ Gretchen M. Callas
   *Signature of Clerk or Deputy Clerk*            *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   All Defendants
AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation   , who issues or requests this subpoena, are:
See Attached List of Counsel for Defendants

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  3:17-01362; 3:17-01665

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

        I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

        ☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

        ☐ I returned the subpoena unexecuted because: _____

_____ .

        Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

        $ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

        I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
(A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

## REQUESTS FOR PRODUCTION OF DOCUMENTS TO
## MARSHALL HEALTH

### DEFINITIONS

The following terms shall have the meanings set forth below.  Notwithstanding any

definition set forth below, each word, term or phrase used in these Requests is intended to have

the broadest meaning permitted under the Federal Rules of Civil Procedure and the Local Rules

of Procedure for the Southern District of West Virginia.

1.      "Communication" has the full meaning ascribed to it by Local Rule of Civil

Procedure 26.2(c)(1), and means any transmission of information (whether formal or informal) by

one or more Persons and/or between two or more Persons by means including, but not limited to,

telephone conversations, letters, faxes, electronic mail, text messages, instant messages, other

computer linkups, written memoranda, and face-to-face conversations.

2.      "Document" has the full meaning ascribed to it by Federal Rule of Civil Procedure

34(a) and Local Rule of Civil Procedure 26.2(c)(2), and means the complete original (or complete

copy where the original is unavailable) and each non-identical copy (where different from the

original because of notes made on the copy or otherwise) of any writing or record, including, but

not limited to, all written, typewritten, handwritten, printed, or graphic matter of any kind or nature,

however produced or reproduced, any form of collected data for use with electronic data

processing equipment, and any mechanical or electronic visual or sound recordings or text

messages in Your possession, custody, or control.  "Documents" include, but are not limited to,

books, papers, contracts, memoranda, invoices, correspondence, notes, studies, reports, manuals,

photographs, drawings, charts, graphs, calculations, data compilations, other writings, supporting

materials, sources, microfilm, microfiche, audio recordings, video recordings, electronic mail, and

any other information stored in electronic form, and each different version or copy of each Document, including, but not limited to, drafts.

3.      "Person" means any individual, corporation, firm, partnership, joint venture, unincorporated association, trade association, governmental entity, dealer group, council or other incorporated or unincorporated entity, business entity or group of individuals or entities, singular or plural, as the content may require.

4.      "You" or "Your" refers to Marshall Health, and all others acting or purporting to act on Your behalf, or controlled by You, including, but not limited to, Marshall University, Marshall University School of Medicine, Marshall University School of Pharmacy, Marshall Health's Division of Addiction Sciences and Marshall Clinical Research Center, Mountain Health Network, Marshall University's Healthy Connections Coalition, St. Mary's Medical Center, and any affiliates, employees, directors, agents, contractors, representatives, board members, committees, subcommittees, working groups, and task forces.

5.      "Plaintiffs" means, collectively, the plaintiffs named in this action, the City of Huntington and Cabell County, including but not limited to, its executive and legislative branches, agencies, offices, departments, divisions, commissions, committees, subcommittees, boards, directors, administrators, employees, agents, contractors, vendors, instrumentalities, representatives, counsel, and all persons and entities acting or purporting to act under their control or on their behalf.

6.      "Defendants" means, collectively, all defendants named in *City of Huntington v. AmerisourceBergen Drug Corp., et al.*, Civil Action No. 3:17-01362, and *Cabell County Commission v. AmerisourceBergen Drug Corp., et al.*, Civil Action No. 3:17-01665, as of the date of this notice.  Such Defendants include, but are not limited to, AmerisourceBergen Drug

Corporation; Cardinal Health, Inc.; and McKesson Corporation, the named defendants in this action, and their present or former officers, directors, shareholders, employees, agents, representatives, counsel and all persons and entities acting or purporting to act under their control or on their behalf.

7.     The "Litigation" means *City of Huntington v. AmerisourceBergen Drug Corp., et al.*, Civil Action No. 3:17-01362, and *Cabell County Commission v. AmerisourceBergen Drug Corp., et al.*, Civil Action No. 3:17-01665, currently pending in the United States District Court for the Southern District of West Virginia.

8.     "Prescription Opioid(s)" means FDA-approved pain-reducing medications that consist of natural, synthetic, or semisynthetic chemicals that bind to opioid receptors in the brain or body to produce an analgesic effect, including but not limited to, prescription medications containing hydrocodone, oxycodone, fentanyl, and hydromorphone, that may be obtained by patients in the state of West Virginia only through prescriptions filled by dispensers duly licensed and regulated.

9.     "Illicit Opioid(s)" means substances comprised of or containing natural, synthetic, or semisynthetic chemicals that bind to opioid receptors in the brain or body that are not approved by the FDA, including but not limited to heroin, fentanyl, carfentanil, other fentanyl-type analogs, and counterfeit opioid medications.

10.     "Legitimate Opioid Use" means use of Prescription Opioids according to a prescription made in accordance with the respective FDA-approved warning labels by the person to whom the prescription was provided.

11.     "Licensed Medical Professional" means any individual prescriber employed by the Hospital, including, but not limited to, physicians, podiatric physicians, osteopathic physicians,

dentists, physician assistants, licensed practical nurses, advanced practice registered nurses, and registered nurses.

12.     "Controlled Substance" means any substance identified as a Schedule I-V substance pursuant to 21 U.S.C. § 812.

13.     "Opiate Task Force" means a temporary or permanent grouping created, administered, and/or funded by You in response to the opioid abuse epidemic in the City of Huntington, Cabell County, or any town, village or city within Cabell County.

14.     The words "and" as well as "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of these requests any information that might otherwise be construed as falling outside the scope of these requests.

15.     Words used in the singular shall, when the context permits, be deemed to include the plural, and words used in the plural shall, when the context permits, be deemed to include the singular. The masculine gender shall, when the context permits, be deemed to include the feminine or neuter genders.

## INSTRUCTIONS

1.     Unless otherwise agreed in writing, all Documents are to be produced to the attention of AmerisourceBergen Drug Corporation, c/o Gretchen Callas, Jackson Kelly PLLC, 500 Lee Street East Suite 1600, Charleston, WV 25301.

2.     Unless otherwise indicated, the Relevant Time Period applicable to these requests is 1996 to the present.[1]

---

[1] Should the Court issue a ruling establishing a different time period for discovery, Defendants will revise the Relevant Time Period accordingly.

3.      To the extent a geographic scope applies to a request herein, that scope, whether expressly stated or not, is defined as the City of Huntington, Cabell County, or any town, village or city within Cabell County.

4.      With respect to any of the Documents requested below for which a claim of privilege or work product is made, indicate the nature of the Document; identify by name, address, title, and business affiliation the writer, the addressee, and all recipients thereof; and set forth the general subject matter to which the Document relates and its date.

5.      All Documents produced in response to these Requests shall be produced in toto, notwithstanding the fact that portions thereof may contain information not requested.

6.      These Requests shall be deemed continuing to the fullest extent permitted by the Federal Rules of Civil Procedure so as to require further and supplemental production if You locate or obtain additional documents falling within the scope of these Requests after the time of initial production.

7.      If any Documents requested herein are no longer in Your control or have been lost, discarded, or destroyed, those Documents shall be identified by author, date, subject matter, and, if applicable, current custodian.

8.      For any data provided, all relevant characteristics/fields and codes should be produced, along with data dictionaries.

9.      Each page of every Document must be marked with a unique identifier or "Bates stamp."

10.     Requested format for Documents produced electronically in response to this Request:

Form: Documents produced in response to this Request should be provided in Group 4 compression single-page "TIFF" format. Extracted text shall be included in the manner

provided herein. To the extent that extracted text does not exist, these images will be processed through Optical Character Recognition ("OCR") so that they are fully searchable. Extracted text and OCR should be provided in separate document level text files. "Load Files" shall be produced to accompany the images and shall facilitate the use of the litigation support database systems to review the produced images.

Document Unitization: Each page of a document shall be electronically converted into an image as described above. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be produced using logical document breaks when creating the image file and appropriately designated in the load files. The corresponding parent/attachment relationships, to the extent possible, shall be provided in the load files furnished with each production. Document productions that are not unitized or that do not capture parent/attachment relationships will not be accepted. Distributor Defendants will seek reimbursement by court order for any costs associated with unitizing document productions.

Filing Naming Conventions: File Naming Conventions. Each document image file shall be named with the unique Bates Number of the page of the document in the case of single-page TIFFs, followed by the extension "TIF." Each document shall be named with a unique document identifier. Attachments shall have their own unique document identifiers.

Production Media: The documents should be produced on CD-ROM, DVD, or external hard drive (with standard Windows PC compatible interface), (the "Production Media"). Each piece of Production Media shall identify a production number corresponding to the production "wave" the documents on the Production Media are associated with (e.g., "V001," "V002"), as well as the volume of the material in that production wave (e.g., "001," "-002"). For example, if the first production wave comprises document images on three hard drives, the Respondent shall label each hard drive in the following manner "V001-002," "V001-003." Additional information that shall be identified on the physical Production Medial shall include: (1) text referencing that it was produced in [Case Docket No.], (2) the producing party's name, (3) the production date, and (4) the Bates Number range of the materials contained on the Production Media.

Objective Coding/Extracting Meta Data: Respondent shall produce with each production of documents with extracted metadata for each document (the "Objective Coding") included in the load file. The data file shall include the following fields and type of content: "Custodian", the date the document was created, sent or last modified (e.g., "Date Created", "File Created Date", "Date Sent", and "Last Modified Date"; the filename (e.g.,"File Name") or, for emails, the "Subject" line and the individuals or entities listed in the "To" "From" "CC" and "BCC" fields. In addition, the following fields shall also be provided, if available, "Confidentiality_filepath, MD5 Hash, and file extension. Objective Coding shall be labeled and produced on Production Media in accordance with the provisions set forth above.

<u>Native format for PowerPoint Presentations, Spreadsheets (Excel), audio-visual files and databases</u>: PowerPoints, spreadsheets (Excel), audio-visual files and databases shall be produced in native format along with the extracted text and relevant metadata.

11.     Documents that are in paper form or that constitute other physical objects from which recorded information may be visually read, as well as audio or video tapes or text messages and similar recordings, should be produced in their original form or in copies that are exact duplicates of the originals.  Computer files and similar electronic records should be produced in a readable form.

12.     Please produce password-protected Documents with any applicable passwords.

13.     Should You consider any of the Documents requested to be confidential such that they should not be generally disseminated to the public or released to the press, please designate these Documents as such under the operative Protective Order in this case.

14.     Should You determine that any of the Documents requested contain personal health information that may not be disclosed pursuant to HIPAA or analogous state law, please redact that information and assign in its place a unique identifier.

## **DOCUMENTS TO BE PRODUCED**

1.     All Communications between You and Plaintiffs discussing, referring, or relating to the prescribing, dispensing, use, misuse, abuse, sale, diversion, production, distribution, or trafficking of Prescription Opioids or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

2.     All Documents discussing, referring, or relating to Your or Plaintiffs' knowledge or investigation of the prescribing, dispensing, use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, theft, or trafficking of Prescription Opioids or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village or city within Cabell County.

3.      All Documents discussing, referring, or relating to Your or Plaintiffs' efforts, including, but not limited to, any programs or task forces that You or Plaintiffs have developed to combat or address the unlawful prescribing, dispensing, use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, theft, or trafficking of Prescription Opioids or Illicit Opioids within the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

4.      All Documents discussing, referring, or relating to Your or Plaintiffs' collaborations or partnerships with any local, state, or federal agency, organization, or task force, including the West Virginia Attorney General and DEA, to address or combat the unlawful prescribing, dispensing, use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, theft, or trafficking of Prescription Opioids or Illicit Opioids within the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

5.      All Documents discussing, referring, or relating to any Defendant, including but not limited to, all Communications or transactions between You or Plaintiffs and any Defendant, manufacturer, distributor, or dispenser of Prescription and Illicit Opioids.

6.      Any Documents relating to statistics, records, or compilations of data that contain information about the improper prescribing, dispensing, use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, theft or trafficking of Prescription Opioids or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

7.      Any Documents relating to the policies and procedures that You take during intake, treatment, or discharge of a patient who receives treatment from You for an opioid related illness or incident that arises from the improper prescribing, dispensing, use, misuse, abuse, sale,

diversion, production, transportation, distribution, purchase, theft or trafficking of Prescription Opioids or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

8.      Any statistics, records, or compilations of data related to opioid drug overdoses, overdose deaths, that have become known to You in relation to Your operation of a health care facility and/or the treatment of patients as it relates to the improper prescribing, dispensing, use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, theft or trafficking of Prescription Opioids or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

9.      Any Documents relating the mandatory and/or the voluntary reporting of information to state agencies, federal agencies, medical boards, professional medical societies, or any other agency, entity, program or group, related to the improper prescribing, dispensing, use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, theft or trafficking of Prescription Opioids or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

10.     All Documents discussing, referring, or relating to the responsibilities and obligations of Licensed Medical Professionals to treat pain.

11.     Any Documents discussing, referring, or relating to standards, guidelines, or policies related to the prescribing of Prescription Opioids that You have adopted or that You have been asked to adopt.

12.     Any Documents discussing, referring, or relating to standards, guidelines, or policies related to the treatment of pain that You have adopted or that You have been asked to adopt.

13.     Any Documents relating to your involvement with the Joint Commission (formerly known as the Joint Commission on Accreditation of Healthcare Organizations) or with any other institution that provides accreditations or certificates, as it relates to the treatment of pain and/or the prescribing of prescription opioids for the purposes of gaining and/or maintaining accreditations or a certificate.

14.     All Documents discussing, referring, or relating to the West Virginia Controlled Substances Monitoring Program ("CSMP"), including, but not limited to, Your or Plaintiffs' use of the CSMP to combat the unlawful prescribing, dispensing, use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, theft or trafficking of Prescription Opioids or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

15.     All Documents discussing, referring, or relating to Your or Plaintiffs' involvement in drafting, assessing, introducing, lobbying for, implementing, administering, and/or monitoring compliance with legislation, statutes, rules, regulations, or guidelines relating to Opioids, including, but not limited to, the Intractable Pain Act (West Virginia Code § 0-3A-1 et seq.), Senate Bill 437 (2012) (amending several articles of West Virginia Code related to the Controlled Substance Monitoring Program database), Senate Bill 339 (2017) (West Virginia Code § 16-52-1 et seq.) (creating the Coalition for Responsible Chronic Pain Management), the Opioid Reduction Act (West Virginia Code § 16-54-1 et seq.), and the requirement of Licensed Medical Professionals to register for and access the CSMP database.

16.     All Documents discussing, referring, or relating to Your use of the CSMP to identify and act upon Licensed Medical Professionals who were writing a high volume of Prescription Opioids.

17.     Documents sufficient to reflect Your participation in the preparation, planning, and implementation of the Generation Rx program in Cabell County or Huntington, including but not limited to the program described here: http://www.marshall.edu/ucomm/2017/02/17/school-pharmacy-students-plan-community-outreach-cabell-county-schools/.

18.     All documents (including communications and documents concerning communications with, and contributions by, Cabell County and the City of Huntington and their respective divisions and agencies) relating to Your participation in the preparation, planning, drafting and publication of "Resiliency Plan: Cabell County, WV," and the initiatives contained therein, as found here: https://jcesom.marshall.edu/media/58477/2020_cabell-county-resiliency-plan_final.pdf, or relating to any draft of such Plan including the items on the table labeled "Allocation of Funds" contained in CHHD_0036217 at -6247 (*see* Exhibit 1).

19.     All documents relating to Your participation in the preparation, planning, drafting and publication of "Prescription Opioid and Heroin Awareness Toolkit: A Prevention Guide," as found here: https://www.marshallhealth.org/media/2085/cabell-county-prescription-opioid-and-heroin-awareness-toolkit.pdf.

20.     All documents relating to Your monitoring and assessment support in connection with the Quick Response Team, as described here:  https://jcesom.marshall.edu/news/musom-news/marshall-university-providing-monitoring-and-assessment-support-to-opioid-epidemic-qrt/.

21.     All Communications between You and any person or entity that are responsive to any request listed above (Nos. 2 through 20), including, but not limited to, all Communications regarding Illicit Opioids, Prescription Opioids, diversion, and the opioid epidemic.

22.     All transactional data and databases You use to track, record, or otherwise account for Your annual revenue and expenses.

23. All transactional data and databases You use or Documents you have that track, record, or otherwise account for the services that You provide or the number of patients you treat per year.

24. All transactional data and databases You use or Documents you have that track, record, or otherwise account for the services that You provide or the number of patients you treat per year due to the improper prescribing, dispensing, use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, theft or trafficking of Prescription or Illicit Opioids.

25. All Documents reflecting, describing, or referring to the reason or root cause for any increases or decreases in the number of patients You are currently treating or have treated in the past.

26. All Documents and Communications referring to or relating to any assistance, grants, subgrants, or funding that You sought and/or obtained to combat drug-related issues with respect to the opioid epidemic.

27. If not already produced in response to the requests herein, all custodial records of the following past and present employees:

- **Robert Hansen** – Marshall Health Director of Addiction Services
- **Conrae Lucas-Adkins** – Marshall University Assistant Profess for the School of Psychology
- **Stephen M. Petrany, MD** – Chair of Family and Community Health, Marshall University School of Medicine and Marshall Health
- **Lyn M. O'Connell, Ph.D.** – Associate Director of Addiction Services, Marshall University School of Medicine and Marshall Health
- **Conrae Lucas-Adkins** – Marshall University Assistant Professor for the School of Psychology
- **Kelly Cummings, MD, FACOG** – Marshall University Assistant Professor Maternal Fetal Medicine Specialist
- **Stephen M. Petrany** – Marshall University Chair of Family & Community Health, MU School of Medicine
- **Ashley Shaw** – Marshall University CORE Project Director

- **Amy Saunders** – Marshall University Director of Marshall University Center of Excellence for Recovery
- **Amanda Patrick** – Marshall University Family Navigator for Healthy Connections
- **Tina Ramirez** – Marshall University Great Rivers Regional System for Addiction Care Director
- **Charles "CK" Babcock** – Marshall University Harm Reduction Naloxone Education
- **Kevin Yingling** – Marshall University Internal Medicine, Joan C. Edwards School of Medicine; Former Dean of MU School of Pharmacy
- **Mitzi Payne** – Marshall University Pediatric Neurologist
- **Michael Haney** – Marshall University PROACT Director
- **Beth Welsh** – Marshall University PROACT Manager
- **David Chaffin, MD, FACOG** – Marshall University Professor Maternal Fetal Medicine Specialist
- **Jessica Tackett** – Marshall University Project Hope Program Director
- **Jodi Maiolo** – Marshall University Special Projects Coordinator, MU Health: Division of Addiction Sciences
- **Sean Loudin, MD** – School of Medicine, Neonatal-Perinatal Medicine
- **Todd Davies, PhD** – MU School of Medicine, Department of Clinical and Translational Science

28.     All Documents containing data or analysis relating to the abuse, misuse, or diversion of Prescription Opioids, broken down by product or chemical substance.

29.     All Documents reflecting direct, indirect, and monetary costs and expenses You or any Plaintiff has incurred that You attribute to the opioid abuse epidemic or the use, misuse or abuse of Prescription Opioids or Illicit Opioids in the City of Huntington, Cabell County, or any town, village or city within Cabell County.

30.     All Documents relating to Your identification of the opioid abuse epidemic in the City of Huntington, Cabell County, or any town, village, or city within Cabell County.

31.     All Documents relating to any investigation of the marketing, advertising, distribution, and/or promotional activities of Defendants as a potential cause of the opioid abuse epidemic in the City of Huntington, Cabell County, or any town, village or city within Cabell County.

32.     All Documents relating to any investigation of factors other than the activities of Defendants that caused or contributed to the opioid abuse epidemic in the City of Huntington, Cabell County, or any town, village or city within Cabell County.

33.     Any reports, presentations, lectures, seminars, workshops, symposia or other similar educational programs made or sponsored by You or on Your behalf related to the opioid abuse epidemic in the City of Huntington, Cabell County, or any town, village or city within Cabell County, including all data and source materials used to create those documents.

34.     All Documents produced by You in response to any subpoena which Plaintiffs served on You in the Litigation.

## ATTACHMENT B

### COUNSEL FOR DEFENDANTS

***AmerisourceBergen Drug Corporation***
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

***Cardinal Health, Inc.***
By Counsel:

*/s/ Steven R. Ruby*
Brian A. Glasser (WVSB #6597)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
BAILEY GLASSER LLP
209 Capitol Street
Charleston, West Virginia 25301
Telephone: (304) 345-6555
Facsimile: (304) 342-1110
*Counsel in Cabell County action*

*/s/ Michael W. Carey*
Michael W. Carey (WVSB #635)
David R. Pogue (WVSB #10806)
Carey, Scott, Douglas & Kessler, PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone:  (304) 345-1234
mwcarey@csdlawfirm.com
drpogue@csdlawfirm.com
*Counsel in the City of Huntington action*

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC  20005
Tel:  (202) 434-5000
Fax:  (202) 434-5029
emainigi@wc.com
lheard @wc.com
ahardin@wc.com


**McKesson Corporation**
By Counsel:

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*/s/ Geoffrey E. Hobart*
Geoffrey E. Hobart
Mark H. Lynch
Christian J. Pistilli
Laura Flahive Wu
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5281
ghobart@cov.com
mlynch@cov.com
cpistilli@cov.com
lflahivewu@cov.com

## Allocation of Funds

EXHIBIT

1

| Area of Funding | Funds* | Examples of Expenditures |
|---|---|---|
| **Addiction Science Institute** | $365,000,000 | Development, construction, administration and oversight, operations, endowed faculty positions, and community engagement |
| **Education** | $20,000,000 | Lifespan education including school-based and professional education, healthcare providers, comprehensive stigma reduction |
| **Prevention** | $50,000,000 | Prevention and volunteer coordinators; implementation of prevention initiatives in both schools and community based settings |
| **Early Intervention** | $25,000,000 | Comprehensive harm reduction services including testing, treatment, and mobile options; peer recovery; community health workers |
| **Outpatient and Inpatient/Residential Services** | $50,000,000 | Expansion of MAT providers and services offered; hospital inpatient unit for treatment during hospitalization; increased capacity for addressing effects of SUD over the lifespan; more behavioral health services |
| **Community Health/Social Supports** | $60,000,000 | Development of safe, supportive housing; method for reducing barriers to accessing social services; resources for children and families in foster or kinship care; safe childcare; transportation network; expansion of wraparound social support systems |
| **Legal/Policy** | $15,000,000 | Community re-entry; comprehensive recovery and family court; advocacy and barrier reduction |
| **Compassion Fatigue** | $20,000,000 | Services to address burn-out in first responders (police, fire, EMS, dispatch), health care professions, and others affected by compassion fatigue |
| **Data/Research** | $75,000,000 | Comprehensive database development; research agenda and staffing; longitudinal research and dissemination |
| **Workforce Readiness and Economic Development** | $120,000,000 | Ready workforce, social enterprise and start-up support; promoting a business-ready community; business infrastructure development; education and training opportunities |

**\*Each figure includes funding for the essential long-term (multi-generational) sustainability of all areas listed.**

Confidential: For Internal Use Only