IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

THE CITY OF HUNTINGTON,

    Plaintiff,

v.                                                   CIVIL ACTION NO. 3:17-01362

AMERISOURCEBERGEN DRUG
CORPORATION, et al.,

    Defendants.
_____

CABELL COUNTY COMMISSION,

    Plaintiff,

v.                                                   CIVIL ACTION NO. 3:17-01665

AMERISOURCEBERGEN DRUG
CORPORATION, et al.,

    Defendants.
_____

<u>**MEMORANDUM OPINION AND ORDER**</u>

    Pending before the court are the Drug Enforcement Administration's (DEA) Objections to two different discovery rulings of Special Master Wilkes.  <u>See</u> ECF Nos. 502 and 571. Those objections are fully briefed and ready for disposition.

I.

    These two cases are related to thousands of other lawsuits that have been filed throughout the country in recent years

relating to the opioid crisis.[1]  "These cases concern the alleged improper marketing of and inappropriate distribution of various prescription opiate medications into cities, states, and towns across the country."  In re Nat'l Prescription Opiate Litig., 290 F. Supp.3d 1375, 1377 (J.P.M.L. 2017).  The Opioid MDL (MDL 2804) was created by the Judicial Panel on Multidistrict Litigation (JPML) in December of 2017 after the JPML determined that a large number of cases should be centralized for pretrial proceedings in the Northern District of Ohio to coordinate the resolution of these actions.  See id. at 1378.  Given his previous experience with multidistrict litigation, MDL 2804 was assigned to United States District Judge Dan A. Polster.  See id. at 1379.  The JPML expressed its confidence in Judge Polster's ability to manage this complex litigation, indicating that it had "no doubt that Judge Polster will steer this litigation on a prudent course." Id. at 1379-80.

Since MDL 2804's formation, well over 2,000 cases have been transferred to the MDL court.  See In re Nat'l Prescription

---

[1] On October 26, 2017, President Trump directed the Secretary of Health and Human Services to declare the opioid crisis a Public Health Emergency.  See Combatting the National Drug Demand and Opioid Crisis, 82 Fed. Reg. 50305 (Oct. 26, 2017).  According to that Presidential Memorandum, as of that date, "more than 300,000 Americans have died of an opioid overdose since 2000[,]. . . . more than 2.1 million of our fellow citizens are addicted to opioids, and in 2014 more than 1,500 people were treated each day in emergency departments for opioid-related emergencies."  Id.

<u>Opiate Litig.</u>, No. 1:17-MD-2804, 2019 WL 4686815, at *1 (N.D. Ohio Sept. 26, 2019).  In his management of the MDL, Judge Polster has, among other things, overseen "discovery involving over 450 depositions and over 160 million pages of documents" and ruled "on innumerable discovery motions, ranging from the trivial to motions to compel production of documents from the United States Drug Enforcement Agency".  <u>Id.</u> at *2.  Specifically, with respect to the DEA, Judge Polster notes that "the DEA and the parties thoroughly and vigorously negotiated the scope of MDL discovery, in light of the needs of the case and the burden on the DEA as a non-party, governmental agency.  Disputes were mediated and resolved by Special Master Cohen.  Ultimately, DEA produced thousands of pages of documents and provided several witnesses for lengthy deposition."  ECF No. 502-1.

In January, these two cases, designated in the MDL as "Track Two" cases, were remanded to this court for further proceedings.  The remanded cases were significantly narrowed, in both the number of claims and defendants.  Only plaintiffs' public nuisance claims against the "The Big Three" distributor defendants — AmerisourceBergen Drug Corporation, McKesson Corporation, and Cardinal Health, Inc. — are before this court.  According to Judge Polster's "vision", these cases were to be remanded only "after some period of discovery" and "after they

are streamlined and otherwise made more trial-ready."  ECF No.
2950 in Case No. 1:17-MD-2804.

Both plaintiffs and defendants have requested additional
discovery from DEA.  On February 21, 2020, defendants filed their
Notice of Subpoenas for Testimony and Production of Documents to
the U.S. Drug Enforcement Administration.  See ECF No. 502-2.
Their request seeks the production of 36 categories of documents
from 1996 to the present.  See id.  The following are
representative of the nature of these oftentimes broad requests:

> 7.   All Documents and Communications identifying,
>      discussing, or relating to the individuals or
>      entities You suspect or know have unlawfully
>      produced, transported, diverted, sold, and/or
>      trafficked Prescription or Illicit Opioids within
>      or into the City of Huntington, Cabell County, or
>      any town, village, or city within Cabell County.
>
> 8.   All Documents referring or relating to Your
>      efforts to suspend, revoke, or seek the suspension
>      or revocation of registrations or licenses of, or
>      fine or otherwise sanction any distributors,
>      doctors, pharmacies, pharmacists, healthcare
>      providers or other persons or entities because of
>      the alleged diversion or trafficking of
>      Prescription Opioids within or into the City of
>      Huntington, Cabell County, or any town, village,
>      or city within Cabell County.
>
> 18.  All Documents related to any investigation of
>      suspicious orders reported by Defendants for West
>      Virginia pharmacies, hospitals, or other
>      dispensers for the Relevant Time Period.

Id.  Defendants' Touhy letter of February 21, 2020, makes clear
that defendants were requesting "documents and testimony pursuant

4

to Federal Rule of Civil Procedure 30(b)(6) from DEA relating, but not limited to," thirty categories.   Id.

On April 24, 2020, Michael B. Stuart, the United States Attorney for the Southern District of West Virginia responded to defendants' discovery requests.   See ECF No. 502-3.   Because the DEA is an agency under the Department of Justice (DOJ), defendants' Touhy requests were evaluated under DOJ regulations. See id.   According to DOJ's regulations, DEA employees are prohibited from disclosing official information absent express authorization from DOJ.   See 28 C.F.R. § 16.22(a).[2]   In

---

[2] That regulation reads in full:

§ 16.22 General prohibition of production or disclosure in Federal and State proceedings in which the United States is not a party.

    (a) In any federal or state case or matter in which the United States is not a party, no employee or former employee of the Department of Justice shall, in response to a demand, produce any material contained in the files of the Department, or disclose any information relating to or based upon material contained in the files of the Department, or disclose any information or produce any material acquired as part of the performance of that person's official duties or because of that person's official status without prior approval of the proper Department official in accordance with §§ 16.24 and 16.25 of this part.

    (b) Whenever a demand is made upon an employee or former employee as described in paragraph (a) of this section, the employee shall immediately notify the U.S. Attorney for the district where the issuing authority is located.   The responsible United States Attorney shall follow the procedures set forth in § 16.24 of this part.

determining whether production or disclosure should be authorized, the regulations dictate that department officials consider: "(1) Whether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose, and (2) Whether disclosure is appropriate under the relevant substantive law concerning privilege." 28 C.F.R. § 16.26(a). Disclosure is prohibited if any of the following exist:

>(1) Disclosure would violate a statute, . . . or a rule of procedure, such as the grand jury secrecy rule, F.R. Cr. P., Rule 6(e),

>(2) Disclosure would violate a specific regulation,

>(3) Disclosure would reveal classified information, unless appropriately declassified by the originating agency,

---

>(c) If oral testimony is sought by a demand in any case or matter in which the United States is not a party, an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or by his attorney, setting forth a summary of the testimony sought and its relevance to the proceeding, must be furnished to the responsible U.S. Attorney. Any authorization for testimony by a present or former employee of the Department shall be limited to the scope of the demand as summarized in such statement.

>(d) When information other than oral testimony is sought by a demand, the responsible U.S. Attorney shall request a summary of the information sought and its relevance to the proceeding.

6

(4) Disclosure would reveal a confidential source or informant, unless the investigative agency and the source or informant have no objection,

(5) Disclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired,

(6) Disclosure would improperly reveal trade secrets without the owner's consent.

28 C.F.R. § 16.26.

United States Attorney Stuart declined to authorize the disclosure of the information sought "[a]fter carefully considering [defendants'] request, consulting with the DEA, applying all of the above [Touhy] factors, and reviewing the relevant procedural and substantive law".  ECF No. 502-3.  In so doing, Stuart concluded that defendants' "requests are not appropriate under the procedural rules governing the case" and "that releasing the requested information would not be appropriate under the law concerning privilege; nor would it be appropriate under 28 C.F.R. § 16.26(b)."  Id.  Stuart then went on to outline a number of specific objections as reasons for the nondisclosure, including:

    1.  Your Document and Testimony Requests Are Unreasonably Cumulative and Duplicative.

    2.  Your Request Fails to Provide a Summary of Information Sought.

    3.  Your Request Fails to Provide a Statement of Relevance.

7

4.   Your Document and Testimony Requests Are Overly
     Broad and Unduly Burdensome.

5.   Your Testimony Request Fails to Describe 30(b)(6)
     Topics with Reasonable Particularity.

6.   Your Document and Testimony Requests Seek Law-
     Enforcement Sensitive Information.

7.   Your Requests Violate the Privacy Act, 5 U.S.C. §
     552a.

8.   Your Requests Seek Information Available from
     Other Sources, Including Defendants.

Id. Stuart's letter gave specific examples of how DEA had made these determinations as to each objection listed above. See id.

On April 14, 2020, defendants filed a motion to compel the DEA to respond to its discovery requests. See ECF No. 320. After that motion was fully briefed, Special Master Wilkes, granted defendants' motion. See ECF No. 374.

Plaintiffs' requests of the DEA were contained in three Touhy letters dated October 28, 2019, February 3, 2020, and March 19, 2020. See ECF Nos. 573, 573-2, and 573-4. DEA did provide documents in connection with the two earlier requests. See ECF Nos. 573-1, 573-3, and 386-2. However, by letter dated April 24, 2020, U.S. Attorney Stuart refused to authorize disclosure of material responsive to a number of plaintiffs' requests. See ECF No. 386-2. According to Stuart, plaintiffs' requests "are unreasonably burdensome, cumulative, duplicative, and improper under the applicable substantive and procedural requirements."

8

Id.  Stuart then went on to outline a number of specific objections as reasons for the nondisclosure, including:

> 1.  Your Document Requests Are Unreasonably Cumulative and Duplicative.
>
> 2.  Your Request Fails to Provide a Summary of Information Sought.
>
> 3.  Your Request Fails to Provide a Statement of Relevance.
>
> 4.  Your Document Requests Are Overly Broad and Unduly Burdensome.
>
> 5.  Your Document Requests Seek Law Enforcement Sensitive Information.
>
> 6.  Your Document Requests Seek Information Available from Other Sources, Including Defendants.

Id.  As with his letter to defendants, Stuart provided specific examples of each objection raised.  See id.

On May 1, 2020, plaintiffs filed a motion to compel the DEA to respond to its discovery requests.  See ECF No. 385.  After that motion was fully briefed, Special Master Wilkes, granted in part and denied in part plaintiffs' motion.  See ECF No. 519.

In its response to the motions to compel, the DEA provided declarations from Heather Wehrle, Acting Diversion Group Supervisor in DEA's Charleston Office.  See ECF Nos. 502-4 and 573-5.  The Wehrle declarations explain in great detail the significant time and resources that the DEA would have to expend in complying with the parties' requests.  See id.

II.

The court reviews objections to factual and legal findings of a special master de novo and rulings on procedural matters for abuse of discretion.  See Fed. R. Civ. P. 53(f)(3)-(5); see also ECF No. 200 (Order of Appointment).

III.

"In United States ex rel. Touhy v. Ragen, 340 U.S. 462 (1951), the Supreme Court held that a head of a federal agency may make the determination on his or her sole authority to produce documents and authorize employee's testimony in response to a subpoena or other demand for information." RLI Ins. Co. v. Nexus Services, Inc., Civil Action No. 5:18-CV-00066, 2020 WL 1496466, at *1 n.1 (W.D. Va. Jan. 17, 2020).  "[All these] years later, Touhy is yet recognized in this circuit and elsewhere as the legal source for the right of a federal agency to exercise control over its resources, including its employees sought by others for litigation purposes." United States v. Lecco, 495 F. Supp.2d 581, 583 (S.D.W. Va. 2007) (Copenhaver, J.).  Therefore, with Touhy in mind, our appeals court has held that:

> if the non-party recipient of a subpoena is a
> government agency, principles of sovereign immunity
> apply.  The decision whether to provide documents or
> employee testimony in response to a third-party
> subpoena is committed to agency discretion.
> Accordingly, we review the government's refusal to
> comply with such a subpoena under the APA's "arbitrary
> and capricious" standard for final agency actions.

COMSAT Corp. v. National Science Found., 190 F.3d 269, 278 (4th Cir. 1999).

The COMSAT court elaborated on the role that Touhy regulations and the federal rules play in a court's evaluation of the propriety of a non-party federal agency's refusal to comply with a subpoena:

> [W]e examine whether the NSF's refusal to comply with the COMSAT subpoenas was an arbitrary and capricious agency action taken in violation of the APA.  We apply the APA's deferential standard of review in full recognition of the fact that one of our sister circuits has decided otherwise.  In Exxon Shipping Co. v. U.S. Dept. of Interior the Ninth Circuit held that non-party federal agencies must produce evidence in response to the subpoenas of private litigants, subject only to the court's discretionary right to limit burdensome discovery under Rules 26 and 45 of the Federal Rules of Civil Procedure.  34 F.3d 774, 778-779 (9th Cir. 1994). We decline to follow this holding.
>
> COMSTAT does not contest the underlying validity of NSF's Touhy regulations.  Instead, COMSTAT maintains that such housekeeping regulations do not "immunize" an agency from the duty to comply with a federal subpoena. We agree, but only in the following respect: it is sovereign immunity, not housekeeping regulations, that gives rise to the Government's power to refuse compliance with a subpoena.  As we have acknowledged, "subpoena proceedings fall within the protection of sovereign immunity even though they are technically against the federal employee and not against the sovereign," Boron Oil Co. v. Downie, 873 F.2d 67, 71 (4th Cir. 1989); thus, in the context of an agency's response to a third-party subpoena, "the proper method for judicial review of the agency's final decision pursuant to its regulations is through the Administrative Procedure Act."  United States v. Williams, 170 F.3d 431, 434 (4th Cir. 1999).  The APA waives sovereign immunity and permits a federal court to order a nonparty agency to comply with a subpoena if the government has refused production in an arbitrary,

11

capricious, or otherwise unlawful manner.  See id. . .
.

> The Ninth Circuit's Exxon decision abrogates the
> doctrine of sovereign immunity to a significant degree.
> Although the decision acknowledges the APA as the
> source of the congressional waiver of sovereign
> immunity permitting review of a non-party agency's
> refusal to comply with a subpoena, see 34 F.3d at 779
> n.9, Exxon overlooks an important limitation upon this
> waiver:  courts may reverse an agency's decision not to
> comply only when the agency has acted unreasonably.

Id. at 277.

Therefore, under the law of this circuit, the court may

order a nonparty federal agency to comply with a subpoena only if

the refusal to do so was arbitrary, capricious, or otherwise

unlawful.  "An agency decision is arbitrary and capricious 'if

the agency has relied on factors which Congress has not intended

it to consider, entirely failed to consider an important aspect

of the problem, offered an explanation for its decision that runs

counter to the evidence before the agency, or is so implausible

that it could not be ascribed to a difference in view or the

product of agency expertise.'"  Spence v. NCI Info. Sys., Inc.,

530 F. Supp.2d 739, 743-44 (D. Md. 2008) (quoting Motor Vehicle

Mfrs. Ass's of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463

U.S. 29, 44 (1983)).

As noted above, per § 16.26(a)(1) of DOJ's Touhy

regulations, one factor the agency must consider "is whether

disclosure is appropriate under the rules of procedure that

govern the issue at hand—in this instance, the Federal Rules of

12

Civil Procedure . . . ."  Donald v. Outlaw, CAUSE NO.: 2:17-CV-32-TLS-JPK, 2020 WL 2899689, at *11 (N.D. Ind. June 2, 2020). Under Federal Rule of Civil Procedure 26, the court must limit discovery when a party seeks discovery that is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."  Fed. R. Civ. P. 26(b)(2)(C).  Likewise, pursuant to Federal Rule of Civil Procedure 45(d)(1), the party or attorney responsible for issuing and serving a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  The Rule goes on to require a court to quash or modify a subpoena if it "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv).

For the reasons stated by United States Attorney Stuart in his letters of April 24, 2020, the court finds that DOJ's refusal to comply with the subpoenas herein was reasonable and did not run afoul of its own regulations.  According to Stuart's letters and the Declarations of Heather Wehrle, compliance with the parties' subpoenas would impose an undue burden by taking significant time and resources from DEA and would disrupt the agency's mission to prevent the diversion of controlled substances.  The parties' subpoenas at issue herein must also be viewed against the backdrop of the ongoing MDL, as well as the numerous lawsuits pending across the country.  With respect to

13

the MDL, in remanding these cases, Judge Polster "did not believe additional discovery from the DEA was necessary or appropriate for a fair trial, applying the standards set out in Rules 26, 30, and 45 of the Federal Rules of Civil Procedure."  ECF 502-1. Likewise, there was nothing improper in the government's consideration of the cumulative effects of similar discovery requests in other opioid cases or the precedential effects of complying with the subpoenas in this case.  As discussed earlier, there are thousand of these cases pending in federal and state courts across the country and DEA was not required to view the subpoenas in this case in a vacuum.

> Spence further argues that AFO-SI was not entitled to consider the cumulative effects of similar discovery requests in determining whether his demand was unduly burdensome.  This is a misstatement of the law.  The Fourth Circuit has recognized on multiple occasions that federal agencies have a compelling interest in "conserv[ing] governmental resources where the United States is not a party to a suit, and to minimize governmental involvement in controversial matters unrelated to official business."  Boron Oil Co. v. Downie, 873 F.2d 67, 70 (4th Cir. 1989); see also COMSAT Corp. v. Nat'l Sci. Found., 190 F.3d 269 (4th Cir. 1999).  To effectively further this interest, federal agencies must be permitted to consider the precedential effects of granting individual discovery requests.  Indeed, in both Boron Oil and COMSAT, the Fourth Circuit considered the "potential cumulative burden upon the agency" in evaluating the propriety of a refusal to provide testimony under the APA. Accordingly, we reject the argument that AFOSI was required to limit its inquiry to whether Spence's particular request was unduly burdensome.  As the case law makes clear, the Air Force was entitled to consider the cumulative effect of granting similar requests.

14

Spence v. NCI Info. Sys., Inc., 530 F. Supp.2d 739, 745-46 (D. Md. 2008).

As our appeals court has made clear, DEA's determination in this regard is neither arbitrary or capricious.  See COMSAT, 190 F.3d at 278.  "When an agency is not a party to an action, its choice of whether or not to comply with a third-party subpoena is essentially a policy decision about the best use of the agency's resources."  Id.  Of the burden of compliance on the government agency in that case, the COMSAT court noted:

> As an agency official must, NSF's counsel also considered whether the public interest and the agency's taxpayer-funded mission would be furthered by compliance.
>
> NSF's counsel answered this question in the negative, and we cannot quarrel with his conclusion. Compliance with the third-party subpoenas issued in this single case, where the litigant sought a tremendous number of agency documents and demanded the presence of agency employees at depositions, would measurably strain agency resources and divert NSF personnel from their official duties.  Multiply the cost of compliance by the number of NSF grantees—almost twenty thousand—who might become embroiled in similar disputes, or by the limitless number of private litigants who might seek to draw upon NSF's expertise, and the potential cumulative burden upon the agency becomes alarmingly large.

Id. at 277-78; see also Boron Oil Co. v. Downie, 873 F.2d 67, 70 (4th Cir. 1989) ("The policy behind such prohibitions on the testimony of agency employees is to conserve governmental resources where the United States is not a party to a suit, and to minimize governmental involvement in controversial matters

15

unrelated to official business."). For this reason, courts have
routinely concluded that an agency's refusal to comply with a
subpoena on the grounds of undue burden is neither arbitrary or
capricious. See Cabral v. U.S. Dep't of Justice, 587 F.3d 13,
23-24 (1st Cir. 2009) ("[T]he DOJ reasonably concluded that
further disclosures . . . would have been cumulative and unduly
burdensome."); RLI Ins. Co. v. Nexus Services, Inc., Civil Action
No. 5:18-CV-00066, 2020 WL 1496466, at *3 (W.D. Va. Jan. 17,
2020) (neither arbitrary or capricious where one stated reason
for denial of discovery request was "compliance would be unduly
burdensome"); Sauer Inc. v. Lexington Ins. Agency, Inc., No.
5:13-CV-180-F, 2014 WL 5580954, at *6 (E.D.N.C. Oct. 31, 2014)
("The Army Corps states that it had already expended significant
time and effort to comply with Defendant's earlier document
subpoena, and believed that information to be sufficient to
comply with Defendant's requests for information. . . . Here,
the Army Corps considered the burden of complying with this
additional request from Defendant, and determined that not
complying with the deposition subpoena would conserve
governmental resources where the United States is not a party to
a suit, and to minimize governmental involvement in controversial
matters unrelated to official business.") (internal quotation and
citation omitted); Spence v. NCI Info. Sys., Inc., 530 F. Supp.2d

739, 745 (D. Md. 2008) (no violation of APA where discovery request was denied "on grounds of undue burden").

In Donald, the court quashed a subpoena issued to an FBI agent finding that compliance with the terms of the subpoena would impose an undue burden on the agency.  See Donald, 2020 WL 2899689, at *12.  In so doing, the court evaluated the subpoena under both the Federal Rules of Civil Procedure and the APA.  See id. at *6-7.  In finding that the FBI's refusal to comply with the subpoena was not arbitrary or capricious, the Donald court specifically noted "the burden imposed by the subpoena requests," "the FBI resources that would be consumed by complying with the requests," plaintiff's "access to the relevant information from other sources," and "the privileged nature of the materials sought."  Id. at *11.  As in Donald, the government in this case demonstrated that it "considered the necessary factors as laid out in the Code of Federal Regulations and found they obliged the agency to deny the subpoena requests."  Id.

Based upon the foregoing, the court concludes that DEA's refusal to comply with the subpoenas in this case was reasonable and certainly not arbitrary or capricious.

IV.

For the reasons discussed above, DEA's objections to Discovery Rulings 5 and 6 are **SUSTAINED**.  Insofar as the parties'

17

motions to compel were granted in those rulings, those motions are hereby **DENIED**.

The Clerk is directed to send copies of this Memorandum Opinion and Order to counsel of record and interested parties.

**IT IS SO ORDERED** this 5th day of August, 2020.

ENTER:

David A. Faber
Senior United States District Judge