**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>Defendants. | Civil Action No. 3:17-01362 |
| CABELL COUNTY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>Defendants. | Civil Action No. 3:17-01665 |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF CITY OF HUNTINGTON'S OBJECTION TO SPECIAL MASTER'S JULY 27, 2020 ORDER GRANTING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF CERTAIN CITY OF HUNTINGTON DOCUMENTS**

Judge Wilkes ruled in a July 27, 2020 Order (the "July 27 Order") that the Plaintiff City of Huntington ("Huntington") must produce 3,464 documents that Huntington improperly withheld on the sole basis of "Third Party Confidentiality Restrictions" and 3,416 documents that it improperly withheld based on "Law Enforcement" privilege. Huntington now appeals that ruling as to an unspecified subset of these documents, which Huntington contends involve "records or information provided to Plaintiff by the DEA, FBI, or other federal law enforcement agencies reflecting information of a highly sensitive nature." Dkt. No. 820 at 3.

Huntington makes no attempt to identify which documents these are, let alone to provide the specific explanation of harm required to withhold these documents as privileged under West Virginia law. *See Maclay v. Jones*, 208 W. Va. 569, 577 (2000). Huntington's other contention, that the Order improperly relied on an outdated protective order, is similarly flawed. Thus, for the reasons set forth below, as well as those set forth in Defendants' Motion to Compel (Dkt. No. 690) and supporting memorandum (Dkt. No. 691) (collectively, the "Motion"), and Defendants' Reply in Support (Dkt. No. 790), this Court should affirm Judge Wilkes's July 27 Order.

## BACKGROUND

Huntington has provided four privilege logs to Defendants, identifying more than 21,000 documents that it has either withheld or redacted.[1] The vast majority of these documents were law enforcement materials necessary to help the Defendants test Plaintiffs' allegations about the opioid overdose crisis in Huntington, Huntington's response to the crisis, and the actions of third parties that contributed to the crisis.

Defendants identified numerous deficiencies in Huntington's privilege logs, including blanket assertions of "Third Party Confidentiality Restrictions" and "Law Enforcement" privilege. To address these, Defendants sent Huntington three letters requesting further explanation of the reasons for withholding these documents.[2] Through a meet and confer on June 29, 2020, the parties were able to resolve many of the disputes regarding the withheld documents, but reached

[1] Huntington provided the first volume of the log on June 8, 2020, the second volume on June 17, and the fourth volume on June 22. The third volume of the log is dated June 18, but due to a technical issue, Defendants did not receive it until June 29.

[2] *See* Dkt. 690-1 (June 12, 2020 Ltr. from L. Wu to J. Haileselassie; June 22, 2020 Ltr. from L. Wu to J. Haileselassie; June 26, 2020 Ltr. from L. Wu to J. Haileselassie).

an impasse with regard to Huntington's assertions of "Third Party Confidentiality Restrictions" and "Law Enforcement" privilege.

Consequently, on July 9, 2020, Defendants moved to compel production of 6,880 documents withheld by Huntington under claims of "Law Enforcement" privilege and "Third Party Confidentiality Restrictions." *See* Dkt. No. 691. Defendants explained in their Motion that (1) "Third Party Confidentiality Restrictions" is not a valid, independent privilege that allows Huntington to withhold thousands of documents, particularly given that the governing protective order in this case provides procedures for the production of third-party-confidential documents designed to prevent public disclosure, and (2) Huntington's assertion of "Law Enforcement" privilege fails because Huntington did not make the necessary showing under West Virginia law of harms flowing from the disclosure of the withheld law-enforcement documents.[3] *Id.* at 2.

Huntington responded on July 20, 2020, arguing, first, that despite the specific procedures in the protective order designed to preserve confidentiality, disclosing law enforcement documents would harm Huntington's future investigations and, second that documents provided by third-party law-enforcement agencies are privileged on that basis alone. Dkt. No. 775 at 2-3, 4. Huntington concluded by requesting that "should the Court not deny Defendants' Motion in its entirety, Plaintiffs suggest that the parties identify a representative subset of documents from each implicated third-party for *in camera* review and evaluation." *Id.* at 4.

On July 27, 2020, Judge Wilkes granted Defendants' Motion to Compel, ruling (1) that "Third Party Confidentiality Restrictions" is not an independent privilege under West Virginia

[3] The challenged documents were shaded blue (for "Law Enforcement" privilege) and green (for "Third Party Confidentiality Restrictions") in Huntington's privilege logs and attached as Exhibits B-E to the Motion. *See* Dkt. Nos. 690-2, 690-3, 690-4, and 690-5. Other than the color-coding, these privilege logs were identical to the logs Huntington provided to Defendants.

law, and that Huntington could and should have followed the procedure for protecting third-party-confidential information set out by the protective order, and (2) that Huntington had failed to make the "substantial threshold showing of harm" necessary under West Virginia law to justify withholding documents based on "Law Enforcement" privilege. Dkt. No. 801 at 2.

Following Judge Wilkes's ruling, on July 28, 2020, Huntington sought to have the July 27 Order held in abeyance subject to *in camera* review of a sampling of the withheld documents, again relying on the blanket assertion that "there is a minimal likelihood that the documents at issue will provide Defendants with meaningful information, and, at the same time, these documents implicate significant sensitive law enforcement information that may pertain to ongoing investigations." Exhibit A at 1 (July 28, 2020 Ltr. from N. Deyneka to Judge Wilkes). On July 29, 2020, Judge Wilkes responded and declined to hold the order in abeyance, explaining that, in light of discovery deadlines, "in camera review would unjustly delay the disclosure," and that the safeguards provided by the protective order would protect the sensitive nature of any documents. Exhibit B (July 29, 2020 Email from Judge Wilkes to N. Deyneka).

Huntington filed its objection to the Special Master's July 27 Order on August 1, 2020. *See* Dkt. No. 820.

## ARGUMENT

As the party asserting the privilege to withhold documents, Huntington bears the burden to establish that the privilege applies. *See, e.g., Arch Specialty Ins. Co. v. Go-Mart, Inc.*, 2009 WL 10687968, at *2 (S.D.W. Va. July 24, 2009) ("It is well-established that a party asserting a privilege has the burden of proving its existence, and must supply opposing counsel with sufficient information to assess the applicability of the privilege or protection, without revealing information which is privileged.") (internal quotations omitted); *State ex rel. United Hosp. Ctr.*,

*Inc. v. Bedell*, 484 S.E.2d 199, 208 (W. Va. 1997). Huntington failed to meet this burden with respect to documents withheld either for "Third Party Confidentiality Restrictions" or for "Law Enforcement" privilege. Further, Judge Wilkes correctly ruled that the governing protective order provided a process to protect third-party-confidentiality concerns, which Huntington did not follow. Because Huntington failed to follow that process or to make the requisite privilege showing, there was no need for *in camera* review.

This Court reviews Judge Wilkes's July 27 Order for an abuse of discretion. Fed. R. Civ. P. 53(f)(5). Judge Wilkes acted well within his discretion in granting the motion to compel where Huntington (1) failed entirely to make any showing that would support its conclusory claims of a "law enforcement privilege," and (2) improperly asserted a "third party confidentiality" privilege that does not constitute a permissible basis for withholding documents and failed to adhere to the procedures of the protective order governing the treatment of documents subject to a third-party claim of confidentiality.

## I. The July 27 Order Correctly Rules that Huntington's General Claims of Harm Are Insufficient to Invoke Law Enforcement Privilege.

Huntington first argues that Judge Wilkes erred by failing to "balance the importance of protecting law enforcement techniques and confidential informants and sources" and therefore this Court should order *in camera* review of the documents that Huntington withheld on account of "Law Enforcement" privilege.[4] Dkt. No. 820 at 5.

---

[4] These documents are shaded in blue in the privilege logs attached to the Motion. *See* Dkt. Nos. 690-2-5.

Huntington misstates the applicable law, and tries to shift its own burden onto Defendants. West Virginia has "never adopted an all-encompassing law enforcement privilege."[5] *Maclay*, 542 S.E.2d at 86. Instead, a party seeking to withhold documents based on the qualified law enforcement privilege must first make "a substantial threshold showing of harm" that will result from disclosing the documents. *Maclay*, 542 S.E.2d at 91. That showing "must be sufficiently specific to permit the trial judge to be fully apprised as to the significance of the disclosure concerns." *Id.*; *see also Aguilar v. Immigration & Customs Enforcement Div. of the U.S. Dept. of Homeland Sec.*, 259 F.R.D. 51, 56–57 (S.D.N.Y. 2009) (a court "need not defer blindly" to assertions of law enforcement privilege and the party opposing disclosure must make a "clear and specific evidentiary showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted"). If and only if the party makes such a threshold showing, the Court performs *in camera* inspection of the documents in question to determine whether the requesting party's need for the material outweighs the public interest in non-disclosure. *See id.* at 90-91.

As the proponent of the privilege, Huntington bore the burden of demonstrating that there was a "substantial threshold showing of harm" that would result from disclosure of the relevant documents. It did not, and does not, do so. Huntington makes no effort to identify any individual documents or explain how disclosure of these individual documents will lead to any specific harms. The explanations it provides in its privilege log are vague, overbroad, and boilerplate. For example, the only basis Huntington provides for asserting the privilege over some documents is that they are "Law enforcement operational plans" or "Operational plan revealing law enforcement

[5] West Virginia substantive privilege law applies to this motion because "state law supplies the rule of decision" on Plaintiffs' public nuisance claim and assertion of civil conspiracy. Fed. R. Evid. 501; *see also, e.g.*, *Old White Charities, Inc. v. Bankers Ins.*, LLC, 2018 WL 2211409, at *5 (S.D.W. Va. May 14, 2018) (applying West Virginia attorney-client privilege law where state law provided rule of decision).

techniques, methods, and strategies." *See, e.g.*, Dkt. No. 690-2, Documents 478–481, 4353–4354, 4367–4368. Even explanations with more detail do not demonstrate how disclosure of the documents would be harmful. *See, e.g.*, *id.*, Documents 5062-5069 ("Document regarding an FBI Operational Plan Form including members of the Huntington FBI Task Force, Huntington Police Department SIB and SWAT Team.").

Huntington offered no further explanation for its privilege claim—or the supposed harms that would result from disclosure of the withheld documents—in its opposition before Judge Wilkes, nor does it offer any concrete basis for its privilege claims on appeal. Instead, Huntington makes the conclusory, generalized assertion, without any specificity or elaboration, that "[d]isclosure of documents relating to the law enforcement efforts of federal agencies could fundamentally hinder the ability of the Huntington Police Department and other local law enforcement agencies to safely conduct highly confidential, undercover operations." Dkt. No. 820 at 7; *see also* Dkt. No. 775 at 3. This explanation is insufficient to allow Defendants or the Court "to be fully apprised as to the significance of the disclosure concerns," and fails to meet the standard set out in *Maclay*.[6] 542 S.E.2d at 91.

---

[6] Even the out-of-jurisdiction cases to which Huntington cites demonstrate the insufficiency of Huntington's own explanations of potential harm. For example, Huntington cites to *United States v. Green*, a D.C. Circuit case applying "a qualified privilege protecting police surveillance locations from disclosure," which held that disclosure of the Police Department's surveillance location used to surveil the criminal defendant in the case *could* be privileged because "the identification of a hidden observation post will likely destroy the future value of that location for police surveillance." 670 F.2d 1148, 1155 1156 (D.C. Cir. 1981); *see* Dkt. No. 820 at 6. That is a far more specific explanation than any proffered by Huntington, which merely asserts that production of large swaths of law-enforcement documents will "hinder the ability of the Huntington Police Department and other local law enforcement agencies to safely conduct highly confidential, undercover operations." Dkt. No. 820.

Huntington's assertion of harms flowing from disclosure is thus impermissibly broad and conclusory. This is only underscored by the fact that Huntington has not even specified which documents—from among the 3,416 documents for which it asserted Law Enforcement privilege—are even subject to this appeal. Nor does Huntington ever identify which documents, from among the 3,464 documents it withheld on the basis of "Third Party Confidentiality Restrictions," are encompassed in this appeal. *See* Dkt. No. 820 at 4 ("Plaintiff objects to the July 27, 2020 Order to the extent it seeks the production of records or information provided to Plaintiff by the DEA, FBI, or other federal law enforcement agencies reflecting information of a highly sensitive nature that has otherwise consistently been withheld in other litigation."). Without identifying the documents at issue—let alone providing concrete explanation as to why confidential disclosure under the protective order would cause harm—Huntington's privilege claims are, by definition, deficient. *See Maclay*, 542 S.E.2d at 91 ("The party opposing disclosure must first make a substantial threshold showing that specific harms are likely to result from the disclosure of the requested materials."). Accordingly, because Huntington failed to make that threshold showing, there was nothing for Judge Wilkes to balance. For the same reason, Huntington's conclusory assertions of privilege are entirely insufficient to show that Judge Wilkes abused his discretion.

Even if Huntington had satisfied its threshold burden to show harm from disclosure, which it has not, disclosure is still warranted under the *Maclay* balancing test. *See Maclay*, 542 S.E.2d at 86-87, 90 & n.11. First, Defendants are not seeking documents that pertain to ongoing law enforcement investigations, and have explicitly excluded documents described as involving open or ongoing investigations from this motion, as Huntington itself has recognized. *See* Dkt. No. 775 at 2. Second, the law enforcement documents sought are likely to provide critical information related to multiple of Defendants' defenses, including the identities of third parties involved in

drug diversion and trafficking, the nature of cross-agency investigations of drug trafficking in the area, the extent of drug trafficking operations in Huntington, and law enforcement's response (or lack thereof) to that criminal conduct. And Huntington's production of other law enforcement records does not diminish the importance of the challenged documents, particularly given that—because Huntington has not provided any concrete information about the challenged documents—Defendants do not know what information they include. Finally, per the July 27 Order (and at Defendants' request), the documents are to be produced under the Attorneys' Eyes Only ("AEO") provision of the protective order. *See* Dkt. No. 801 at 3. This designation will ensure that the documents are held in confidence and are disclosed only to counsel, thereby protecting any sensitive law-enforcement information. The protections of this strict AEO confidentiality designation weigh strongly against withholding.

Huntington's attempt to argue that the AEO designation is insufficient to protect these documents' confidentiality is unavailing. *See* Dkt. No. 820 at 7-8. As an initial matter, *Maclay* explicitly contemplates that law enforcement documents, such as these, may be produced under confidentiality designations such as AEO. *See Maclay*, 208 W. Va. at 576. And the out-of-jurisdiction case to which Huntington cites at great length, *In re The City of New York*, 607 F.3d 923, 937 (2d Cir. 2010), involved a vastly different situation: a plaintiff seeking disclosure of undercover police reports in a civil rights action. *Id.* Defendants, by contrast, do not seek to reach into the records of an otherwise uninvolved law-enforcement agency. They seek these records only because Plaintiffs, in bringing suit alleging harms from alleged criminal activity flowing from opioid use and resulting costs to law enforcement, have put them at issue. The AEO designation has proved sufficient for numerous other productions in this case. There is no reason it would not do so here, especially where the universe of documents at issue *excludes* active and ongoing law

enforcement investigations. Thus, even if the Court reaches the *Maclay* balancing test (which it need not do), Judge Wilkes did not abuse his discretion in ordering that these documents be produced.

**II. The July 27 Order Correctly Applies the Relevant Protective Orders.**

Huntington also contends that Judge Wilkes's Order compelling the production of documents withheld on "Third Party Confidentiality Grounds" was error because it "ignores that the documents were withheld because of law enforcement sensitive information they contained;" "relied upon . . . an earlier version of the operative protective order in this case;" and "the governing protective order in this matter expressly permits the withholding of certain protected law enforcement information." Dkt. No. 820 at 4. This argument is also unavailing, and does not establish an abuse of discretion.

First of all, Huntington raises the latter argument about the terms of the governing protective order for the first time on appeal, and it should be rejected on that basis alone. In any event, Huntington misstates Judge Wilkes's ruling and relies on a misreading of the protective order. The September 29, 2019 amendment to the governing protective order, CMO-2, provides that, for Third Party Confidential Information:

> [T]he Producing Party may redact or de-identify: . . .
>
> (iii) Third Party Confidential Information. ***If agreed to by the Parties or ordered by the Court under Paragraph 78***, information that is protected pursuant to confidentiality agreements between Designating Parties and third parties, as long as the agreements require Designating Parties to redact such information in order to produce documents in litigation.
>
> Plaintiffs may withhold or redact the following specific protected information: (a) records of ongoing criminal investigations, and (b) records or information provided to the party by DEA, FBI, or other state or federal law enforcement agency ***that such agency designates is of a sensitive nature***. The fact of redacting or withholding does not create a presumption that the redaction or withholding is valid, and Receiving Parties can challenge redactions freely after providing appropriate notice to the Producing Party and (if applicable) the agency asserting the privilege or confidentiality redaction.

Dkt. No. 2688 ¶ 29, *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804 (N.D. Ohio) (emphasis added). Thus, although the amendment to CMO-2 specifically identifies information that a third-party law enforcement agency "designates is of a sensitive nature," the amendment to CMO-2 still establishes that any such documents can only be withheld as permitted under paragraph 78, which provides that:

> In the event that a Party is required by a valid discovery request to produce any information held by it subject to an obligation of confidentiality in favor of a third party, the Party shall, promptly upon recognizing that such third party's rights are implicated, provide the third party with a copy of this Protective Order and (i) inform the third party in writing of the Party's obligation to produce such information in connection with this Litigation and of its intention to do so, subject to the protections of this Protective Order; (ii) inform the third party in writing of the third party's right within fourteen (14) days to seek further protection or other relief from the Court if, in good faith, it believes such information to be confidential under the said obligation and either objects to the Party's production of such information or regards the provisions of this Protective Order to be inadequate; and (iii) seek the third party's consent to such disclosure if that third party does not plan to object.

Dkt. No. 441 ¶ 78, *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804 (N.D. Ohio). As Judge Wilkes found, Huntington did not follow that procedure. Accordingly, there is no basis to withhold the documents simply because they involve information provided by third-party law enforcement agencies.

Notably, even under Huntington's erroneous view of Dkt. No. 2688's provision, Huntington did not purport to withhold these documents on the basis that they included "records or information provided to the party by DEA, FBI, or other state or federal law enforcement agency ***that such agency designates is of a sensitive nature***." Dkt. No. 2688 ¶ 29, *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804 (N.D. Ohio) (emphasis added). Instead, Huntington designated swaths of documents as "privileged" because they were purportedly subject to "Third Party Confidentiality Restrictions," and included as explanation vague statements such as "Document references information supplied by a third party law enforcement agency," and "Document created

by a third party law enforcement agency." Dkt. No. 690-2, Document No. 524, Document Nos. 4333-4336. Nowhere in Huntington's privilege logs did it allege that the DEA, FBI, or any other relevant third-party law enforcement had designated the information as sensitive to Huntington, or requested it be withheld. Instead, as Judge Wilkes ruled, Huntington withheld documents of its own initiative, on the sole basis that they were provided by a third-party law enforcement agency—and without making any attempt to engage in the process set forth by the protective order, Dkt. No. 441 ¶ 78, *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804 (N.D. Ohio).[7]

Nor did Huntington, at any point prior to this appeal, identify this paragraph as the source of the privilege. Instead, Huntington alleged that these documents were privileged on account of a nebulous, unrecognized "Third Party Confidentiality Restriction," which Judge Wilkes correctly held is not a valid privilege under West Virginia law. Thus, the July 27 Order did not reflect legal error and was not an abuse of discretion, and should be affirmed.

## III. Conclusion

For the reasons set forth above and in the Defendants' Motion to Compel and Reply, Dkt. Nos. 690, 691 and 790, this Court should affirm Judge Wilkes's July 27 Order.

[7] Notably, the only provision of the protective order to which the July 27 Order actually cites is Dkt. No. 1357, *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804 (N.D. Ohio), because that is the amendment to the privilege order that allows for documents to be produced Highly Confidential—Attorney's Eyes Only Information. *See* Dkt. No. 801 at 2 ("A review of the Exhibits attached to the motion indicate that many of the documents subject to a third-party confidentiality agreement appear to also contain information of a sensitive nature and relate to law enforcement techniques therefore Huntington shall produce these documents under the "Attorneys' Eyes Only" provision of the protective order. Dkt. No. 1357, *In re Nat'l Prescription Opiate Litig.*, 1:17-md-02804 (N.D. Ohio).").

Dated: August 6, 2020

Respectfully Submitted,

***McKesson Corporation***
By Counsel:

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*/s/ Carol Dan Browning*
Carol Dan Browning
Stites & Harbison, PLLC
400 West Market Street
Suite 1800
Louisville, Kentucky 40202
Telephone: (502) 587-3400
Facsimile: (502) 587-6391
cbrowning@stites.com

*/s/ Timothy C. Hester*
Timothy C. Hester
Mark H. Lynch
Christian J. Pistilli
Laura Flahive Wu
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
mlynch@cov.com
cpistilli@cov.com
lflahivewu@cov.com

***AmerisourceBergen Drug Corporation***
By Counsel:

*<u>/s/ Gretchen M. Callas</u>*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*<u>/s/ Robert A. Nicholas</u>*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

***Cardinal Health, Inc.***
By Counsel:

*<u>/s/ Steven R. Ruby</u>*
Michael W. Carey (WVSB No. 635)
Steven R. Ruby (WVSB No. 10752)
David R. Pogue (WVSB No. 10806)
Raymond S. Franks II (WVSB No. 6523)
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
drpogue@csdlawfirm.com
rfranks@cdkrlaw.com

*<u>/s/ Enu Mainigi</u>*
Enu Mainigi

                    F. Lane Heard III
                    Ashley W. Hardin
                    WILLIAMS & CONNOLLY LLP
                    725 Twelfth Street NW
                    Washington, DC 20005
                    Tel:  (202) 434-5000
                    Fax:  (202) 434-5029
                    emainigi@wc.com
                    lheard @wc.com
                    ahardin@wc.com

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on this 6th day of August, the foregoing "RESPONSE IN OPPOSITION TO PLAINTIFF CITY OF HUNTINGTON'S OBJECTION TO SPECIAL MASTER'S JULY 27, 2020 ORDER GRANTING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF CERTAIN CITY OF HUNTINGTON DOCUMENTS" was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)