IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

THE CITY OF HUNTINGTON,
    Plaintiff,

v.                                             CIVIL ACTION NO. 3:17-01362

AMERISOURCEBERGEN
DRUG CORPORATION, et al.,
    Defendants.

---

CABELL COUNTY COMMISSION,
    Plaintiff,

v.                                             CIVIL ACTION NO. 3:17-01665

AMERISOURCEBERGEN
DRUG CORPORATION, et al.,
    Defendants.

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
NOTICE OF SUPPLEMENTAL AUTHORITY**

Defendants respectfully submit this Response to Plaintiffs' Notice of Supplemental Authority (Dkt. 813):

1.    Plaintiffs' Motion to Strike Defendants Notices of Non-Party Fault is currently pending before the Court. (Dkt. 224). A similar motion was filed in the state court opioid litigation that is before the West Virginia Mass Litigation Panel ("the Panel").

2.    On July 29, 2020, the Panel granted the motion,[1] holding that W.Va. Code § 55-7-13d(a)(2) (the "2015 Act"), pursuant to which the notices of non-party fault were filed, did not apply. Specifically, the Panel held that the 2015 Act applies only to claims for "damages" and that

---

[1] Pursuant to the Panel's request, the parties submitted proposed findings and conclusions on July 20, 2020. The pertinent conclusions in the Panel's Order track nearly verbatim the plaintiffs' submission.

1

monetary relief sought as an abatement remedy for a public nuisance is not "damages" subject to the 2015 Act, but rather an equitable remedy.[2] For this same reason, the Panel also held that the 2015 Act's predecessor, Code § 55-7-24, did not apply.[3]

3. That same day, Plaintiffs filed their Notice of Supplemental Authority, arguing that this Court should adopt and follow the Panel's logic—adopted wholesale from the plaintiffs' proposed order in the MLP cases—with respect to Plaintiffs' pending Motion to Strike.

4. The Panel's decision should not control here for two core reasons. ***First***, it is contrary to West Virginia law. This Court should apply West Virginia law as articulated by the Supreme Court of Appeals, which contradicts the Panel's reasoning and holding. ***Second***, even assuming *arguendo* that the Panel's ruling correctly reflects West Virginia law, it states only a general and abstract principle that monetary relief to abate a public nuisance ***can be*** part of an equitable remedy. The Panel could not have considered, and did not consider, the abatement remedy actually sought by the plaintiffs in the MLP cases because that litigation has not yet progressed to the point where the plaintiffs have identified or articulated the relief they are seeking. In contrast, Plaintiffs in this case have identified the categories of "abatement" relief they are seeking, and it is clear that Plaintiffs are not seeking relief to ***abate*** the alleged public nuisance, as West Virginia courts consistently have defined "abatement," but instead are seeking a large monetary award to address the claimed ***adverse effects*** of the alleged nuisance, plus the prevention of future drug abuse having nothing to do with the distribution of prescription opioids in the 1990s or early 2000s. That is a ***damages*** concept to which the 2015 Act applies, even accepting the

---

[2] Dkt. 813-1 at 4-5.

[3] *See id*.

Panel's general ruling that a monetary award can in some circumstances be a form of abatement relief.

## I. The Panel's Order Fails to Address and Is Contrary to Controlling West Virginia Law and Creates Unworkable Distinctions Without a Difference.

5. "[A] federal court sitting in diversity is not bound by a state trial court's decision on matters of state law." *Twin City Fire Ins. Co. v. Ben Arnold–Sunbelt Beverage Co. of S.C.*, 433 F.3d 365, 370 (4th Cir. 2005).

6. Instead, "[i]t is axiomatic that in determining state law a federal court must look first and foremost to the law of the state's highest court, giving appropriate effect to all its implications." *Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1002 (4th Cir. 1998). "A state's highest court need not have previously decided a case with identical facts for state law to be clear. It is enough that a fair reading of a decision by a state's highest court directs one to a particular conclusion." *Id*.

7. *Realmark Developments, Inc. v. Ranson*[4] is the leading West Virginia case that controls when determining whether an action is one seeking legal or equitable relief. In *Realmark*, the issue was whether there was a right to a jury trial on an unjust enrichment claim seeking restitution—and the key question was whether the claim was legal or equitable. The circuit court had denied the request for a jury trial, concluding that the unjust enrichment claim was equitable in nature. The Supreme Court of Appeals disagreed.[5] Although the right to recover for unjust enrichment is based on principles of equity, the court held that the plaintiff was seeking a ***monetary recovery***, which is a legal remedy:

---

[4] 214 W.Va. 161, 588 S.E.2d 150 (2003).

[5] *Id.* 164, 588 S.E.2d at 153.

3

> Clearly, the right to recover for unjust enrichment is based on the principles of equity. However, ***the remedy sought in this case is a money judgment and, thus, is governed by law***. In other words, unjust enrichment . . . is but the equitable *reason* for requiring payment for value of goods and services received.
>
> \* \* \*
>
> Accordingly, we now hold that a suit seeking monetary recovery under a theory of unjust enrichment is an action at law and therefore, can be tried before a jury.[6]

8. The Supreme Court of Appeals confirmed *Realmark* in *Thompson v. Town of Alderson*.[7] Applying the same rationale, the court held that the historical characterization of the claim is not what controls, but instead whether relief the plaintiff seeks is an award of money, stating: "***Where relief to be awarded is money damages***, even though the underlying claim is historically one in equity, ***then the ordinary characterization of the monetary award is as a legal remedy***."[8]

9. The Panel's Order does not mention *Realmark*, much less attempt to distinguish it.[9] This Court, sitting in diversity, should not give weight to a state trial court decision that does not mention or distinguish an apparently controlling decision of the state's highest court.[10]

---

[6] *Id.* at 164–65, 588 S.E.2d at 153–54 (emphasis added); *id.* ("By contrast, a 'right to trial by jury generally applies to an action for the recovery of money or damages, or a legal action for the recovery of money only, or an action in which only a money judgment is sought.'") (quoting 50A C.J.S. *Juries* § 50 (1997); *see also id.* at syl. pt. 1 ("A suit seeking monetary recovery under a theory of unjust enrichment is an action at law and therefore, can be tried before a jury.").

[7] 215 W.Va. 578, 600 S.E.2d 290 (2004).

[8] *Id.* at 581 n.5, 600 S.E.2d at 293 n.5 (emphasis added).

[9] In response to plaintiffs' motion to strike in the MLP proceeding, Defendants argued that *Realmark* is controlling authority. Even so, the plaintiffs' reply did not address the decision. Likewise, here, Defendants argued that *Realmark* is controlling, and Plaintiffs' reply makes no mention of it.

[10] *See Twin City Fire*, 433 F.3d at 370; *Assicurazioni Generali*, 160 F.3d at 1002.

10. The Panel's Order also misreads *McMechen v. Hitchman-Glendale Consol. Coal Co.*[11] The Panel cites *McMechen* for the premise that "[a]s early as 1936, the Supreme Court of Appeals recognized that defendants who were concurrently at fault in creating a nuisance were subject to joint liability."[12] The Panel's Order then quotes *McMechen* as follows:

> Upon the state of facts here disclosed, the law courts could only give damages for the wrong, and, if the defendants are not jointly liable, they could not be jointly sued at law. *Farley v. Crystal Coal & Coke Co.*, cited. Their creation or maintenance of nuisances, or both, is an entirely different thing . . . Although brought into existence or maintained by the separate acts of a number of persons, a nuisance, considered in all of its aspects and elements, may be an entire thing. Limited in its functions to a mere matter of compensation for damages, a court of law could not, under all circumstances, treat it as an entirety, but a court of equity can do so, because of its more extensive remedial powers.[13]

11. But the language omitted in the Panel's Order is critically important. What the Supreme Court of Appeals said in *McMechen*, quoted in full is:

> Upon the state of facts here disclosed, the law courts could only give damages for the wrong, and, if the defendants are not jointly liable, they could not be jointly sued at law. *Farley v. Crystal Coal & Coke Co.*, cited. Their creation or maintenance of nuisances, or both, is an entirely different thing. ***As to that, they could be sued in equity before any damage had occurred. They could be enjoined by way of prevention of the contemplated injury***. Although brought into existence or maintained by the separate acts of a number of persons, a nuisance, considered in all of its aspects and elements, may be an entire thing. Limited in its functions to a mere matter of compensation for damages, a court of law could not, under all circumstances, treat it as an entirety, but a court of equity can do so, because of its more extensive remedial powers.

A look at what *McMechen* actually said—and in full—makes clear that the court was referring to the different rules governing joinder between courts of law and those of equity. As the court

---

[11] 88 W. Va. 633, 107 S.E. 480 (1921).

[12] Dkt. 813-1 at 6.

[13] *Id*. (quoting *McMechen*, 88 W. Va. 633, 107 S.E. at 483).

had held in *Farley v. Crystal Coal & Coke Co.*,[14] in an action at law, "[f]ailure of a declaration against several tort–feasors, joined in one action, to show any ground of joint liability, is good cause of demurrer thereto for misjoinder of parties."[15] *McMechen*'s citation to *Farley* for this proposition makes clear that the court was simply saying that this rule does not apply in a court of equity when granting injunctive relief to enjoin a prospective nuisance. However, Plaintiffs here are not seeking an injunction.

12. Not only does the Panel's Order fail to address controlling West Virginia law—and indeed contravenes it—but it also contravenes federal law.

13. The Panel's Order cites *Bowen v. Massachusetts*[16] as supporting its decision. It does not. The question in *Bowen* was whether a federal district court had jurisdiction to review a final order of the Secretary of Health and Human Services disallowing reimbursement to Massachusetts for a category of expenditures under its Medicaid program.[17] Section 702 of the Administrative Procedure Act authorized judicial review of agency actions "seeking relief other than money damages."[18] The Secretary of HHS contended that Massachusetts was seeking money damages and therefore jurisdiction lay exclusively in the United States Claims Court.[19]

14. The Supreme Court held that judicial review was not foreclosed for two reasons. "First, insofar as the complaints sought declaratory and injunctive relief, they were certainly not actions for money damages."[20] Second, while HHS's disallowance decision had monetary

---

[14] 85 W. Va. 595, 102 S. E. 265 (1920).

[15] *Id*. at syl. pt. 5.

[16] 487 U.S. 879 (1988).

[17] *Id*. at 882.

[18] *Id*. at 891 (quoting 5 U.S.C. § 702).

[19] *Id*. at 890-91.

[20] *Id*. at 893.

consequences, "[n]either a disallowance decision, nor the reversal of a disallowance decision, [was] properly characterized as an award of 'damages.'"[21] The Court explained as follows:

> The first order … simply "reversed" the "decision of the Department Grant Appeals Board …." It is true that it describes Decision No. 438 as one that had disallowed reimbursement of $6,414,964 to the State, ***but it did not order that amount to be paid***, and it did not purport to be based on a finding that the Federal Government owed Massachusetts that amount, or indeed, any amount of money. Granted, the judgment tells the United States that it may not disallow the reimbursement on the grounds given, and thus it is likely that the Government will abide by this declaration and reimburse Massachusetts the requested sum. But to the extent that the District Court's judgment engenders this result, ***this outcome is a mere by-product of that court's primary function of reviewing the Secretary's interpretation of federal law***.[22]

15. Subsequently, and importantly, the Court revisited the issue in *Great-West Life & Annuity*[23]—an action for specific performance and to compel an ERISA plan beneficiary to make restitution to the plan for benefits that it had paid. The question was whether the ERISA provision authorizing plan participants and fiduciaries to bring civil actions to obtain "appropriate equitable relief" authorized the suit. The Court held that the relief sought was not equitable.

16. Citing Justice Scalia's dissent in *Bowen*, the Court held that the suit was not for equitable relief because it sought to impose personal monetary liability on the beneficiary. Distinguishing *Bowen*, the Court stated: "Almost invariably, however, suits seeking (whether by judgment, injunction, or declaration) to compel the defendant ***to pay a sum of money to the***

---

[21] *Id*.

[22] *Id*. at 909–10 (emphasis added).

[23] 534 U.S. 204 (2002).

*plaintiff are suits for 'money damages*,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty."[24]

17. The Panel's reliance upon *Bowen* was misplaced because the only relief Plaintiffs seek is *money* that clearly falls within the holding of *Great-West Life*. Through their public nuisance claims, Plaintiffs are seeking to impose liability upon Defendants for the payment of money. This, as *Great-West Life* holds, is not an equitable remedy, but invariably one for money damages, which is "the classic form of *legal* relief."[25]

18. The Panel's Order also misstates the issue when it states that "Defendants also incorrectly contend that abatement is limited to injunctive relief."[26] The issue is not whether abatement is limited to injunctive relief or also can include the compelled payment of monies. Instead, the point is that, where an abatement remedy seeks to impose personal liability upon Defendants for the payment of money, this constitutes money damages, as held in *Realmark* and *Great-West Life*.

19. Aside from the Panel's failure to address controlling West Virginia law and its misapplication of federal law, its ruling also cannot control here because it creates and relies on arbitrary, unsupported distinctions between "damages" and equitable relief.

20. The Panel creates a distinction between past and future expenditures. The Panel agrees that a city or county seeking to recover amounts spent in the past in responding to a public nuisance is seeking damages and thus would be subject to the 2015 Act.[27] However, if a city or county seeks to recover for those *same* types of expenditures in the future, the Panel finds that the

---

[24] *Id*. at 210 (quoting *Bowen*, 487 U.S. at 918–19 (Scalia, J., dissenting)).

[25] *Mertens v. Hewitt Associates*, 508 U.S. 248, 255 (1993).

[26] Dkt. 813-1 at 9.

[27] *Id*. at 9-10.

8

relief somehow is transformed and is no longer "damages."[28] That distinction has no basis in the law or logic.

21. The Panel recognized that monetary relief "for injuries or losses, such as an individual's reduced future earnings due to opioid addiction or death, would be future compensatory damages."[29] But, inexplicably, the Panel suggested that a monetary award for an addict's future treatment does not constitute damages.[30] The ruling not only is inexplicable, but it is wrong as a matter of law. West Virginia law is clear that payment for future treatment and services is a form of compensatory damages.[31] Thus, the distinctions that the Panel draws in its Order are not supportable, and the test that it articulates cannot be sustained.

## II. Plaintiffs Are Seeking Compensation for Harms Arising from the Alleged Nuisance, Which Is Damages.

22. Even assuming, *arguendo*, that the Panel is correct as a matter of West Virginia law on the general principle that that monetary relief, when awarded to abate a public nuisance, does not constitute "damages," the relief Plaintiffs seek ***here*** constitutes damages. Plaintiffs are not seeking money to ***abate*** (i.e., stop or prevent) the alleged nuisance-causing conduct, but instead

---

[28] *See id*.

[29] *Id*. at 9.

[30] *See id*. (stating that "prospective costs for additional treatment and services" can be considered equitable relief to abate the alleged public nuisance).

[31] *See, e.g.*, syl. pt. 1, *Ellard v. Harvey*, 159 W.Va. 871, 231 S.E.2d 339 (1976) ("A plaintiff may recover the cost of reasonable and necessary future medical and hospital services and for future pain and suffering where the evidence shows it is reasonably certain that such future expenses will be incurred and are proximately related to the negligence of the defendant."); *Jenkins v. McCoy*, 35 F.3d 556 (4th Cir. 1994) (unpublished) (damages for necessary future psychological treatment); *Jaffee v. U.S.*, 592 F.2d 712, 715 (3d. Cir. 1979) ("We agree with the Government that the request for prompt medical examinations and all medical care and necessary treatment, in fact, is a claim for money damages. *A plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money.* Jaffee requests a traditional form of damages in tort compensation for medical expenses to be incurred in the future." (citations omitted)).

9

are seeking an award of money to address the *adverse effects* of the alleged nuisance (plus the prevention of addiction unrelated to the past nuisance-causing conduct). That is a damages principle, whether or not it would be possible in some other case to seek money needed to abate a public nuisance.

23. The Panel's Order states that "an abatement order in a public nuisance case could include a requirement that the defendants expend the money *necessary to abate the nuisance*."[32] That does not support the ruling there or adoption of the ruling here. First, the Panel's point is that defendants can be *enjoined* to abate the nuisance-causing conduct (given that spending money is incidental to almost any action). Again, however, Plaintiffs are not seeking to enjoin Defendants. Second, Plaintiffs are not seeking money to abate *the nuisance* (i.e., the conduct that allegedly caused the opioid crisis). Rather, they are seeking monetary relief to deal with the adverse effects of that conduct, which are damages and not a form of abatement.[33]

24. The cases of *Jaffee v. U.S.*[34] and *United States v. Price*[35]—the latter heavily relied upon by the Panel—provide a good illustration of the difference between relief for harms from past conduct, which amounts to money damages, and relief to prevent future harms from future conduct.

---

[32] Dkt. 813-1, at p. 8 n.27 (quoting *Commonwealth v. Purdue Pharma, L.P.*, No. 1884CV01808, 2019 WL 5495716, at *5 (Mass Super. Oct. 8, 2019)) (emphasis added).

[33] In an email to Judge Wilkes dated June 13, 2020, attached hereto as Exhibit A, Plaintiffs listed four general categories of "abatement relief" they are seeking. Category 2 was for "Treatment -- Supporting Individuals with Opioid Use Disorder." Category 3 was for "Recovery -- Law Enforcement Reintegration and Jobs." Category 4 was for "Addressing Needs of Special Populations." These are all focused directly on addressing *adverse effects and harms* flowing from the alleged nuisance, rather than to abate the nuisance.

[34] 592 F.2d 712 (3d. Cir. 1979).

[35] 688 F.2d 204 (3d Cir. 1982).

25. In *Jaffee*, the plaintiff had developed cancer and sought an injunction compelling the government to provide future medical care and treatment to himself and a class of other individuals exposed to radiation during government nuclear testing. The Third Circuit held that the request seeking future medical care and treatment was a claim for money damages and could not be transformed into an equitable action by the plaintiff simply seeking an injunction ordering the payment of money.[36] *A fortiori*, seeking money to pay for future treatment and opioid-related services—where Plaintiffs do not even pretend to be seeking an injunction—is a claim for money damages.

26. Then, in *Price*, the plaintiff requested an injunction requiring the defendants to fund a diagnostic study of the threat to Atlantic City's public water supply posed by toxins emanating from a landfill. While performing the diagnostic study would cost money, the court held the relief was equitable and not money damages. Unlike *Jaffee*, where the plaintiff sought money to pay for future care necessitated by past injury, in *Price* the purpose of the diagnostic study was not to undo or redress past harm, but to prevent future harm.[37]

27. Indeed, at an initial hearing before this Court, Plaintiffs readily acknowledged the remedy sought was not to abate the alleged nuisance-causing conduct, but to recover for past harms caused by the claimed nuisance:

> THE COURT: I don't see how you could ever possibly put a dollar number on that under the facts and circumstances of this case. I mean, how would you go about abating the facts of this, if this is a nuisance, because you've got streets full of heroin addicts?

---

[36] *Jaffee*, 592 F.2d at 715 ("We agree with the Government that the request for prompt medical examinations and all medical care and necessary treatment, in fact, is a claim for money damages. A plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money. Jaffee requests a traditional form of damages in tort compensation for medical expenses to be incurred in the future.") (citation omitted).

[37] *See* 688 F.2d at 212 ("A preliminary injunction designed to prevent an irreparable injury is conceptually distinct from a claim for damages.").

11

> MR. MAJESTRO: Well, … you treat people …. [T]here are costs of treatment. [*Y]ou undo the harm to the communities that … the defendants' actions caused*.[38]

In Plaintiffs' own words, they are seeking a monetary recovery for harm caused by Defendants' alleged actions. That remedy falls under *Jaffee*, not *Price*.

28. Another case cited in the Panel's Order, *Penn Terra Ltd. v. Department of Environmental Resources*,[39] further supports this point. The court stated:

> The cases which we have just cited suggest, albeit in other contexts, that an ***important factor in identifying a proceeding as one to enforce a money judgment is whether the remedy would compensate for past wrongful acts*** resulting in injuries already suffered, or protect against potential *future* harm. Thus, it is unlikely that any action which seeks to prevent culpable conduct *in futuro* will, in normal course, manifest itself as an action for a money judgment, or one to enforce a money judgment. This is consistent with our earlier observations, since a traditional money judgment requires *liquidated* damages, i.e. a sum certain, and one cannot liquidate damages which have not yet been suffered due to conduct not yet committed.[40]

29. Here, Plaintiffs are not seeking to recover money for "conduct not yet committed." By their own admission, they are seeking a recovery to "undo the harm" or effects from past nuisance-causing conduct. Indeed, Plaintiffs themselves referred to the relief they seek as "damages" because the nuisance-causing conduct has stopped: "But what we do have now is— and we go to damages. What we do have now is a bunch of people who are addicted to drugs. And they no longer can get the legal drugs because ***the defendants are finally doing their job***."[41]

---

[38] Ex. B, 6/20/17 Hr'g Tr. 62:15–14 (emphasis added).

[39] 735 F.2d 267 (3d Cir. 1984).

[40] *Id*. at 277 (emphasis added); *see also San Diego Unified Port Dist. v. Monsanto Co.,* 2018 U.S. Dist. LEXIS 149485, *14-15 ("An equitable remedy's sole purpose is to *eliminate the hazard* that is causing prospective harm to the plaintiff.") (emphasis added).

[41] Ex. B, 6/20/17 Hr'g Tr. 73:2-5 (emphasis added).

30. At bottom, what Plaintiffs seek here is no different than any other claim for future damages. This issue was not before the Panel because it did not have before it any specific categories of "abatement relief" the state plaintiffs were seeking. Here, by contrast, Plaintiffs have expressly stated they are seeking recovery of money for the adverse effects of the alleged nuisance. This claim for money to redress harms caused by the alleged nuisance is plainly damages. And that is true whether or not the Panel was correct, as an abstract principle, that in some circumstances an abatement remedy can include an award of money to *abate* a public nuisance.

31. For all of the above reasons, and those addressed in Defendants' Opposition, the Court should deny Plaintiffs' Motion to Strike. The Panel's Order is not a correct statement of West Virginia law, and in any event its reasoning does not control here given the nature of the monetary relief that Plaintiffs are seeking.

Dated: August 6, 2020

Respectfully submitted,

　　/s/ Gretchen M. Callas
Gretchen M. Callas (WVSB #7136), gcallas@jacksonkelly.com
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Telephone: (304) 340-1000
Facsimile: (304) 340-1050
Robert A. Nicholas, rnicholas@reedsmith.com
Shannon E. McClure, smcclure@reedsmith.com
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
***Counsel for AmerisourceBergen Drug Corporation***

/s/ Jeffrey M Wakefield
Jeffrey M. Wakefield (WVSB #3894), jwakefield@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

Mark H. Lynch
Christian J. Pistilli
Laura Flahive Wu
Megan A. Crowey
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone (202) 662-6000
***Counsel for McKesson Corporation***


/s/Steven R. Ruby
Steven R. Ruby (WVSB #10752), sruby@csdlawfirm.com
CARREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105

Enu Mainigi, emainigi@wc.com
F. Lane Heard III, lheard@wc.com
Ashley W. Hardin, ahardin@wc.com
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
***Counsel for Cardinal Health, Inc.***

## CERTIFICATE OF SERVICE

I, Gretchen M. Callas, do hereby certify that service of the foregoing ***Defendants' Response to Plaintiffs' Notice of Supplemental Authority*** was filed electronically via the CM/ECF electronic filing system and served on all counsel registered in the system.

Dated:  August 6, 2020

/s/Gretchen M. Callas
Gretchen M. Callas (WVSB #7136)