IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>   Plaintiff,<br><br>   v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, et al.,<br><br>   Defendants. | Civil Action No. 3:17-01362<br><br>Hon. David A. Faber |
| CABELL COUNTY COMMISSION,<br><br>   Plaintiff,<br><br>   v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, et al.,<br><br>   Defendants. | Civil Action No. 3:17-01665<br><br>Hon. David A. Faber |

**MOTION OF THE FBI AND DEA FOR A PROTECTIVE ORDER**

The United States moves this Court for an order to prevent disclosure of certain documents that contain extremely sensitive federal law enforcement information from the U.S. Drug Enforcement Administration (DEA) and the Federal Bureau of Investigation (FBI) that are subject to the Special Master's July 27, 2020 Order (ECF No. 801) (the SM Order) directing Plaintiffs produce such documents in the possession, custody, or control of the City of Huntington under an Attorneys-Eyes-Only (AEO) designation.

Many of the documents subject to the SM Order contain highly confidential federal law enforcement information, including but not limited to applications that remain under court seal, material related to ongoing criminal investigations, identities of undercover agents, information

that could reveal the identities and activities of confidential informants, detailed operational plans, and information that would reveal specific sensitive law enforcement investigative techniques used in certain types of cases. Court intervention is required to prevent disclosure of this extraordinarily sensitive federal law enforcement material, disclosure of which would jeopardize DEA's and FBI's abilities to investigate and combat criminal activity in this region and would pose a significant public safety risk. The protection offered by an AEO designation—in a case with dozens of attorneys and that the media follows closely—is simply insufficient to offset the serious repercussions that would ensue should these documents be disclosed.[1]

## I.  Background

Like many federal law enforcement agencies, DEA and FBI regularly partner with state and local law enforcement agencies to coordinate, share information, and jointly investigate crime. These partnerships are vital to combat opioid-related offenses, as well as other types of crime. In connection with these relationships, state and local law enforcement partners agree to maintain the confidentiality of federal law enforcement information that is shared.

FBI and DEA maintained such a relationship with the Huntington Police Department (HPD) and other law enforcement agencies in Cabell County, West Virginia, including but not limited to through task forces comprised of FBI agents, DEA agents, members of the HPD, and others. Through these task forces and other federal-state-local coordination, DEA and FBI, and

---

[1] In addition, compelling production of highly sensitive federal law enforcement information possessed by state and local law enforcement partners constitutes an end-run around the *Touhy* process and undermines the federal government's prerogative to safeguard its sensitive information. Indeed, DOJ's *Touhy* regulations explicitly prohibit the disclosure of information that would reveal the identities of confidential informants, that is subject to grand jury secrecy, or disclose investigative techniques. *See* 28 C.F.R. § 16.26(b)(1), (4)-(5). Therefore, the documents at issue in this application would be subject to a *Touhy* denial if sought by the parties from the FBI or DEA.

possibly other federal agencies such as the Department of Homeland Security (DHS), shared confidential federal law enforcement information with HPD. Further, HPD members actively partnered with FBI and DEA agents in joint investigations, some of which utilized federal undercover agents and confidential informants. In certain instances where a member of the HPD served as an affiant on search warrants and other applications, confidential federal law enforcement information was included in the supporting affidavits.

On July 29, 2020, counsel for Plaintiffs informed counsel for the United States that, pursuant to the SM Order, Plaintiffs were directed to produce certain documents possessed by Plaintiff City of Huntington, which includes HPD. On the same date, Plaintiffs made available thousands of documents to the United States that are subject to the SM Order that contain federal law enforcement information.

FBI and DEA have begun reviewing these documents. After reviewing a sample of the documents, the United States is deeply concerned that production of these documents will reveal highly confidential federal law enforcement information that was accessible to HPD during the course of federal-state-local joint investigations and initiatives. FBI's and DEA's preliminary reviews of the documents in this sample confirm that these concerns cannot be sufficiently addressed even through an AEO designation. *See* McCormick Decl. (FBI); Lehnhoff Decl. (DEA).

In the nine business days that the United States, including DEA and FBI, have had to review these documents, the United States has identified:

1. Applications for court-ordered electronic surveillance and other applications that are currently under court seal,[2] including supporting affidavits. These applications also include information furnished by confidential informants, information that could reveal the identities of confidential informants, and the details of ongoing operations unknown to the targets of criminal investigations;

2. Documents that reveal the identity of at least one undercover federal agent, as well as that agent's cell phone number, and investigative techniques used by federal law enforcement that could imperil future operations; and

3. FBI and DEA operational plans, the disclosure of which would further reveal sensitive and confidential law enforcement techniques used by these agencies when they conduct law enforcement operations, as well as information furnished by confidential informants and intelligence gathered on targets of criminal investigations.

As established through the Declaration of Jeffrey S. McCormick, FBI Supervisory Senior Resident Agent, submitted herewith, disclosure of these materials "would have a significantly harmful impact on FBI operations," "could allow criminal organizations to plan for such a response" and "avoid detection" upon learning FBI investigative techniques and ongoing investigations, substantially hamper FBI's ability to recruit and protect confidential informants, and "could result in substantial harm to a source and his or her family." McCormick Decl. at ¶¶ 6-11 (attached as Exhibit A).

---

[2] Even if the seal on one or more applications and orders was lifted, those materials would only be made available to a small subset of individuals and informed by criminal defendants' constitutional rights, not a standard under civil discovery.

Similarly, as established through the declaration of Lance Lehnhoff, DEA Group Supervisor, submitted herewith, disclosure of the documents subject to the SM Order "would significantly harm DEA operations," "could aid [criminals] in avoiding detection," reveal confidential law enforcement techniques, "seriously jeopardize the DEA's ability to fight crime in this district and the surrounding geographic area," and could result in the identification of confidential informants and undercover federal agents. Lehnhoff Decl. at ¶¶ 7-12 (attached as Exhibit B).

Although the United States' preliminary review has already identified some documents that contain the extraordinarily sensitive information above, this review is ongoing and more time is needed for DEA and FBI to fully review all documents subject to the SM Order, coordinate with other federal law enforcement agencies, and determine which documents (if any) may be suitable for production under an AEO designation and those where production in any manner would be harmful to the United States, federal law enforcement personnel, ongoing investigations, and the safety of confidential informants.

**II.     Argument**

Courts within the Fourth Circuit have held that the law enforcement privilege may bar disclosure of certain types of law enforcement material even where material to a criminal defendant's case; this analysis is made without reference to any such privilege that may exist under state law. *See U.S. v. McLamb*, 220 F. Supp.3d 663 (E.D. Va. 2016). The identities of undercover agents and confidential informants, the existence of electronic surveillance, and information related to ongoing investigations are exactly the kinds of materials the law enforcement privilege is designed to protect. *See U.S. v. Matish*, 193 F. Supp.3d 585, 597 (E.D. Va. 2016) (describing the law enforcement privilege as shielding disclosure of "information

pertaining to law enforcement techniques and procedures, information that would undermine the confidentiality of sources, information that would endanger witness and law enforcement personnel or the privacy of individuals involved in an investigation, and information that would otherwise interfere with an investigation.") (internal quotations and punctuation omitted); *see also U.S. v. Smith*, 780 F.2d 1102, 1108 (4th Cir. 1985) ("The government has a substantial interest in protecting sensitive sources and methods of gathering information. The gathering of such information and the methods used resemble closely the gathering of law enforcement information. *The confidentiality of sources and the methods used in both instances are critical.*") (emphasis added).

Furthermore, reports and documents that detail law enforcement operations are also covered by the law enforcement privilege. *See In re City of New York*, 607 F.3d 923, 944 (2d Cir. 2010) (field reports containing information about law enforcement operations held to be protected from disclosure by law enforcement privilege because "[t]his information clearly relates to 'law enforcement techniques and procedures.'"). The law enforcement privilege applies in these situations even when an investigation is no longer ongoing. *Id.* at 607 F.3d at 944 ("An investigation, however, need not be ongoing for the law enforcement privilege to apply as the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed to the public." (internal quotations omitted)).

Moreover, any AEO designation is not sufficient to protect law enforcement techniques and operations. Accidental disclosure of such information can undermine investigatory procedures and endanger the safety of law enforcement personnel and residents cooperating in drug investigations. If such information is disclosed, law enforcement personnel "may never know if their undercover operations have been compromised by an unauthorized disclosure of

6

that information." *Id*. at 936; *see also U.S. v. Smith*, 780 F.2d at 1108 (release of information concerning sources of information and law enforcement methods used in investigations could place the safety of sources of information and law enforcement personnel in jeopardy).

While the Special Master conceded "that many of the documents subject to a third-party confidentiality agreement appear to also contain information of a sensitive nature and relate to law enforcement techniques," he decided that making those documents subject to an AEO designation was sufficient to protect their confidentiality. *See* ECF No. 801 at 2. However, that is simply not the case. As federal courts have held, an AEO designation is not sufficient to protect the confidential law enforcement information contained in documents such as those at issue in this motion. *In re City of New York*, 607 F.3d at 936-37 ("For these reasons, we hold that, in the circumstances of this case, allowing the disclosure of the Field Reports on an 'attorneys' eyes only' basis would provide insufficient protection for the confidential law enforcement information at issue. Accordingly, the 'attorneys' eyes only' procedure does not adequately mitigate the harm that could be caused by requiring the City to wait for a final judgment before appealing the District Court's order."). Furthermore, even requiring that such information be kept or maintained under seal does not afford sufficient protection for such information. *Id*. at 937-38.

Given that the United States' preliminary review of a sample of the documents subject to the SM Order demonstrates that the documents contain the very types of law enforcement materials the privilege is intended to shield, the United States requires sufficient time to review

all of the documents, assess which documents should be shielded from any disclosure, and determine whether some documents may be produced under an AEO designation.

It is not hyperbole that shielding the actual identities of undercover agents and confidential informants is a life-or-death matter.[3] Additionally, any disclosure of ongoing investigations and electronic surveillance that is currently under court seal would imperil the success of those investigations, as well as endanger the lives of undercover agents and informants involved. The United States respectfully requests an order prohibiting disclosure of highly sensitive law enforcement matters until the United States has an opportunity to (1) review all of the documents subject to the SM Order, and (2) file a supplemental brief, possibly with a portion or exhibits thereto submitted for *in camera* review, after that review is complete. The United States requests a period of at least 45 days after the Court issues an order prohibiting disclosure to complete this review and submit its supplemental brief.

### III.     Conclusion

For the foregoing reasons, the United States respectfully requests that this Court issue an order preventing the distribution of highly sensitive and confidential law enforcement information and permit the United States to submit a supplemental filing once it has completed a

---

[3] For example, the U.S. Attorney's Office for the Southern District of West Virginia successfully prosecuted a drug dealer who killed a confidential informant who was working with the Charleston Police Department. *See* https://www.justice.gov/usao-sdwv/pr/charleston-drug-dealer-sentenced-life-federal-prison-murdering-witness (last visited Aug. 5, 2020). The U.S. Attorney's Office for the Southern District of West Virginia has also prosecuted another drug dealer who was found guilty of witness tampering and retaliation by murder of a confidential DEA informant. *See United States v. Lecco*, 2010 WL 7508421 (S.D.W.Va. Sep. 15, 2010), *aff'd*, 438 Fed. Appx. 187, 2011 WL 2708416 (4th Cir. July 11, 2011), *cert. denied*, 565 U.S. 1100 (2011).

8

review of the documents at issue in the SM Order, at least 45 days after an order preventing such release. A proposed order is attached to this motion as Exhibit C.

        Respectfully submitted,

        MICHAEL D. GRANSTON
        Deputy Assistant Attorney General

        MICHAEL B. STUART
        United States Attorney
        Attorney for the United States
        Acting Under Authority Conferred by 28 U.S.C. § 515

By:  **/s/Fred B. Westfall, Jr**
        FRED B. WESTFALL, JR.
        W.Va. State Bar No. 3992
        Assistant U.S. Attorney, Civil Chief
        300 Virginia Street East, Room 4000
        Charleston, WV 25301
        (304) 345-2200
        (304) 347-5443 (facsimile)
        Fred.Westfall@usdoj.gov

        JAMIE ANN YAVELBERG
        NATALIE A. WAITES
        JONATHAN K. HOERNER
        J. ANDREW JACO
        KELLY E. PHIPPS
        DAVID M. SOBOTKIN
        United States Department of Justice
        Civil Division/Fraud Section
        175 N Street, N.E., Room 10.222
        Washington, D.C. 20002
        (202) 616-2964
        Natalie.A.Waites@usdoj.gov

        GUSTAV W. EYLER
        LISA K. HSIAO
        JOCELYN C. HINES
        United States Department of Justice
        Consumer Protection Branch

450 5th Street, N.W. Ste. 6400-South  
Washington, D.C. 20001  
(202) 532-4892  
Lisa.K.Hsiao@usdoj.gov

Attorneys for U.S. Department of Justice  
Federal Bureau of Investigation  
Drug Enforcement Administration

## CERTIFICATE OF SERVICE

I, Fred B. Westfall, Jr., Assistant United States Attorney, hereby certify that that on August 7, 2020, the foregoing **MOTION OF THE FBI AND DEA FOR A PROTECTIVE ORDER** with the Court using the Court's CM/ECF system, which will send a copy thereof by email to all counsel of record.

/s/Fred B. Westfall, Jr.
Fred B. Westfall, Jr. (W.Va. State Bar No. 3992)
Assistant U.S. Attorney, Civil Chief
300 Virginia Street East, Room 4000
Charleston, WV 25301
(304) 345-2200
(304) 347-5443 (facsimile)
E-mail:  fred.westfall@usdoj.gov