# Exhibit A

## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON, <br><br> Plaintiff, <br><br> v. <br><br> AMERISOURCEBERGEN DRUG CORPORATION, et al., <br><br> Defendants. | Civil Action No. 3:17-01362 <br><br> Hon. David A. Faber |
| CABELL COUNTY COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> AMERISOURCEBERGEN DRUG CORPORATION, et al., <br><br> Defendants. | Civil Action No. 3:17-01665 <br><br> Hon. David A. Faber |

## **DECLARATION OF JEFFREY S. MCCORMICK**

I, Jeffrey S. McCormick, do hereby solemnly swear (or affirm) the following:

1. I am the Supervisory Senior Resident Agent (SSRA) of the Charleston, West Virginia Resident Agency, Pittsburgh Division, Federal Bureau of Investigation (FBI). I have served in that capacity since July 21, 2019. In addition, I served as Acting Assistant Special Agent in Charge of the Pittsburgh Division from April 23, 2020 through August 1, 2020. In that capacity, I had supervisory responsibility over all FBI investigative programs within West Virginia, to include oversight over the Huntington, West Virginia Resident Agency and its operations.

1

2.      The statements contained in this declaration are based upon my personal knowledge, review and consideration of documents available to me in my official capacity, and on information obtained from other FBI employees.

3.      The purpose of this declaration is to explain the various law enforcement sensitivities contained in a sampling of documents that have been the subject of an Order for the Plaintiff, the City of Huntington, to produce to the Defendants in the above-captioned lawsuit.

4.      I have read Special Master Christopher Wilkes's July 27, 2020 Order directing Plaintiff to produce thousands of documents under an "Attorneys Eyes' Only" designation.  These documents had previously been withheld by Plaintiff due to "Third Party Confidentiality Restrictions" or the "Law Enforcement Privilege."

5.      Based on this Order, I have reviewed a sampling of the nearly 3,500 documents that are subject to this Order.  Specifically, I reviewed approximately 400 documents.  Given the volume of documents at issue, I expect that it would take at least six weeks for the FBI to thoroughly review the entire group of documents to identify law enforcement sensitivities.  Evaluating the documents for privilege and law enforcement sensitivity will entail significant effort. Meaningful review of these documents may require the FBI to determine the status of individual investigations and cases referenced in the documents; identify which law enforcement officers and entities were involved in the investigations and cases; confer with the U.S. Attorney's Office, FBI field offices, and other federal agencies regarding which documents, even if redacted, could reveal FBI investigative techniques and sources if disclosed to anyone outside law enforcement; and make a judgment about whether release of that document could harm the FBI's law enforcement mission.  Drafting an explanation of the FBI's rationale for withholding

individual documents will take time, as will the process of redacting and designating the appropriate level of confidentiality for each document.

6.       From this sampling of documents, I found over 150 FBI Operations Plans.  Each one discusses details of the particular operation and the methods being employed by the targets to carry out their crimes, according to FBI intelligence.  In addition, each plan lists the names and assignments of all law enforcement partners assisting in the operation, along with phone numbers for some.  In the "Background" section of each Operations Plan, there is a detailed description of the intelligence that was used in the particular investigation and what that intelligence uncovered.  In most cases, the intelligence included the use of confidential sources and there is a description of precisely what role any such source played.

7.       Release of these Operations Plans without substantial redactions would significantly harm FBI operations in this area.  For instance, release of information as to all law enforcement personnel taking part in a particular operation, along with the phone numbers for some of them, could put those individuals and their families at risk of harm or harassment by criminals or other members of the public.  In addition, release of this list would inform criminals to the resources that law enforcement tends to employ in response to a particular mission.  This could allow criminal organizations to plan for such a response.

8.       Release of information concerning the intelligence used by the FBI with respect to a given investigation will educate criminals about the methods employed by the FBI to investigate particular crimes and could aid them in avoiding detection and utilizing methods to counteract such law enforcement techniques.

9.       If the information related to the FBI's use of confidential sources in a given operation was released, it would provide criminals a better understanding of exactly when such methods

are used by the FBI and could make it easier for such criminals to avoid detection. In addition, even the mention of the use of a confidential source, along with a description of the role the individual played in the investigation could put that source along with his or her family at extreme risk or harm, as it could provide criminals with sufficient information to identify the particular source that was used. Further, if this type of information is subject to release, it could have an adverse impact on the FBI's ability to gain cooperation of future individuals to serve as confidential sources.

10.     In addition to the Operational Plans, the sample of documents that I reviewed included an FBI Detroit Division Situational Information Report, Activity Alert. This document contained intelligence information that appeared to be based on confidential source reporting. For the same reasons discussed in paragraph 9 concerning release of information related to the FBI's use of confidential sources in a given operation, it is critical that this information not be released.

11.     While I recognize that Special Master Wilkes' Order provides for this information to be released under an Attorney Eyes' Only designation, these materials should not be released in any manner, to anyone not authorized to receive such sensitive information. Operations plans go to the heart of the FBI's mission and operations. Even an inadvertent disclosure of these plans could lead to the numerous adverse consequences described above. Similarly, the release of the Situational Information Report could result in substantial harm to a source and his or her family as well as harm to the FBI's future use of confidential sources in its investigative activities. Based on this sample of documents, it is very likely that the approximately 3,500 documents that Special Master Wilkes ordered to be produced contain other similar and extremely sensitive, privileged documents, the release of which would seriously jeopardize the FBI's ability to fight crime in this district and the surrounding geographic area.

I have read this entire statement, consisting of 11 numbered paragraphs. The entire statement is true and accurate to the best of my knowledge and belief. I therefore declare under penalty of perjury that the foregoing is true and correct.

Executed on this 7th day of August 2020.

*Jeffrey S. McCormick*

Jeffrey S. McCormick
Supervisory Senior Resident Agent
Charleston, West Virginia Resident Agency
Pittsburgh Division
Federal Bureau of Investigation