# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

THE CITY OF HUNTINGTON,
    Plaintiff,

v.

AMERISOURCEBERGEN DRUG
CORPORATION, et. al.
    Defendants.

Civil Action No. 3:17-01362
Hon. David A. Faber

CABELL COUNTY COMMISSION,
    Plaintiff,

v.

AMERISOURCEBERGEN DRUG
CORPORATION, et. al.
    Defendants.

Civil Action No. 3:17-01665
Hon. David A. Faber

## DECLARATION OF LANCE R. LEHNHOFF

I, Lance R. Lehnhoff, hereby make this declaration pursuant to 28 U.S.C. § 1746. I declare as follows:

1. I make the factual statements herein based on my personal knowledge and on information provided to me in my capacity as an employee of the United States Department of Justice (DOJ), Drug Enforcement Administration (DEA). Should I be called as a witness, I would competently testify to the factual statements herein.

2. I am the Group Supervisor (GS) of DEA's Charleston, West Virginia HIDTA Group located in the Charleston, West Virginia District Office ("Charleston Office"). I have served in that capacity since April 2020. Prior to this position, I was the Group Supervisor of DEA'S Tacoma HIDTA Group located in DEA's Tacoma, Washington Resident Office from December 2016 through April 2020.

1

3. As the DEA Group Supervisor in the Charleston Office, I have supervisory responsibility over all DEA Charleston HIDTA programs, including leading and directing HIDTA Task Force Officers. DEA's Charleston Office has primary responsibility for DEA's mission in the City of Huntington and Cabell County.

4. The purpose of this declaration is to explain the various law enforcement sensitivities contained in a sampling of documents that have been the subject of an Order for the Plaintiff, the City of Huntington, to produce to the Defendants in the above-captioned lawsuit.

5. I have been briefed on the Special Master Christopher Wilkes's July 27, 2020 Order directing Plaintiff to produce thousands of documents under an "Attorneys Eyes' Only" designation ("Order"). These documents had previously been withheld by Plaintiff due to "Third Party Confidentiality Restrictions" or the "Law Enforcement Privilege."

6. Based on this Order, I have reviewed a sampling of the nearly 3,500 documents that are subject to this Order. Specifically, I reviewed approximately sixteen documents, including three DEA Operational Plans, which I understand are subject to this Order.

7. Given the volume of documents at issue, I expect that it would take at least four weeks for the DEA to thoroughly review the entire group of documents to identify law enforcement sensitivities. Evaluating the documents for privilege and law enforcement sensitivity will entail significant effort. Meaningful review of these documents will require DEA to determine the status of individual investigations and cases referenced in the documents; identify which law enforcement officers and entities were involved in the investigations and cases; confer with the U.S. Attorney's Office, DEA field offices, and other federal agencies regarding which documents, even if redacted, could reveal DEA investigative techniques and sources if disclosed to anyone outside law enforcement; and make a judgment about whether release of that

document could harm the DEA's law enforcement mission. Drafting an explanation of the DEA's rationale for withholding individual documents will take time, as will the process of redacting and designating the appropriate level of confidentiality for each document.

8.   In my role as Group Supervisor, I review and approve DEA Operational Plans regularly and I am familiar with the information that is generally included in DEA Operational Plans. DEA Operational Plans in the sample that I reviewed discuss details of the particular operation and the methods being employed by the targets to carry out their crimes, according to DEA intelligence. In addition, each plan lists the names and assignments of all law enforcement partners assisting in the operation, including the names of undercover agents, along with phone numbers for most. The Operational Plans contains a detailed description of the intelligence that was used in the particular investigation and what that intelligence uncovered. In most cases, the intelligence included the use of confidential sources and undercover agents, and there is a description of precisely what role any such source or agent played.

9.   Release of these Operational Plans without substantial redactions would significantly harm DEA operations in this area. For instance, release of information as to all law enforcement personnel taking part in a particular operation, along with the phone numbers for some of them, could put those individuals and their families at risk of harm or harassment by criminals or other members of the public. In addition, release of these lists would inform criminals to the resources that law enforcement tends to employ in response to a particular mission. This could allow criminal organizations to plan for such a response.

10.  Release of information concerning the intelligence used by the DEA with respect to a given investigation will educate criminals about the methods employed by the DEA to

investigate particular crimes and could aid them in avoiding detection and utilizing methods to counteract such law enforcement techniques.

11. If the information related to the DEA's use of confidential sources in a given operation was released, it would give criminals a better understanding of exactly when such methods are used by the DEA and could make it easier for such criminals to avoid detection. In addition, even the mention of the use of a confidential source, along with a description of the role the individual played in the investigation could put that source along with his or her family at extreme risk or harm, as it could provide criminals with sufficient information to identify the particular source that was used. Further, if this type of information is subject to release, it could have an adverse impact on DEA's ability to gain cooperation from future individuals to serve as confidential sources.

12. While I recognize that Special Master Wilkes' Order provides for this information to be released under an Attorney Eyes' Only designation, these materials should not be released in any manner, to anyone not authorized to receive such sensitive information. Operational plans go to the heart of the DEA's mission and operations. Even an inadvertent disclosure of these plans could lead to the numerous adverse consequences described above. Based on this sample of documents, it is very likely that the approximately 3,500 documents that Special Master Wilkes ordered to be produced contain other similar and extremely sensitive, privileged documents, the release of which would seriously jeopardize the DEA's ability to fight crime in this district and the surrounding geographic area.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information and belief.

Executed on this 7th day of August 2020 at Charleston, West Virginia.

Lance R. Lehnhoff,
Group Supervisor
Charleston, West Virginia District Office
Drug Enforcement Administration

5