IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

THE CITY OF HUNTINGTON,

Plaintiff,

v. CIVIL ACTION NO. 3:17-01362

AMERISOURCEBERGEN DRUG CORPORATION, et al.,

Defendants.

---

CABELL COUNTY COMMISSION,

Plaintiff,

v. CIVIL ACTION NO. 3:17-01665

AMERISOURCEBERGEN DRUG CORPORATION, et al.,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is defendants' objection to the Special Master's Discovery Ruling No. 9. (ECF No. 659.) On June 23, 2020, the Special Master entered an order denying defendants' motion to compel discovery responses on opioid-related expenditures. (ECF No. 621.) This matter has been fully briefed and is ripe for review by this court. For the following reasons, defendants' objection, (ECF No. 659), is **OVERRULED**, and defendants' motion to compel discovery responses on opioid-related expenditures, (ECF No. 423), is **DENIED**.

## I. Factual and Procedural Background

These two cases are related to thousands of other lawsuits that have been filed throughout the country in recent years relating to the opioid crisis.[1] "These cases concern the alleged improper marketing of and inappropriate distribution of various prescription opiate medications into cities, states, and towns across the country." In re Nat'l Prescription Opiate Litig., 290 F. Supp. 3d 1375, 1377 (J.P.M.L. 2017). The Opioid MDL (MDL 2804) was created by the Judicial Panel on Multidistrict Litigation (JPML) in December of 2017 after the JPML determined that a large number of cases should be centralized for pretrial proceedings in the Northern District of Ohio to coordinate the resolution of these actions. See id. at 1378. Given his previous experience with multidistrict litigation, MDL 2804 was assigned to United States District Judge Dan A. Polster. See id. at 1379. The JPML expressed its confidence in Judge Polster's ability to manage this complex litigation, indicating

[1] On October 26, 2017, President Trump directed the Secretary of Health and Human Services to declare the opioid crisis a Public Health Emergency. See *Combatting the National Drug Demand and Opioid Crisis*, 82 Fed. Reg. 50305 (Oct. 26, 2017). According to that Presidential Memorandum, as of that date, "more than 300,000 Americans have died of an opioid overdose since 2000[,] . . . more than 2.1 million of our fellow citizens are addicted to opioids, and in 2014 more than 1,500 people were treated each day in emergency departments for opioid-related emergencies." Id.

that it had "no doubt that Judge Polster will steer this litigation on a prudent course." Id. at 1379-80.

Since MDL 2804's formation, well over 2,000 cases have been transferred to the MDL court. See In re Nat'l Prescription Opiate Litig., No. 1:17-MD-2804, 2019 WL 4686815, at *1 (N.D. Ohio Sept. 26, 2019). In his management of the MDL, Judge Polster has, among other things, overseen "discovery involving over 450 depositions and over 160 million pages of documents" and ruled "on innumerable discovery motions, ranging from the trivial to motions to compel production of documents from the United States Drug Enforcement Agency". Id. at *2.

In January, these two cases, designated in the MDL as "Track Two" cases, were remanded to this court for further proceedings. The remanded cases were significantly narrowed, in both the number of claims and defendants. Only plaintiffs' public nuisance claims against the "The Big Three" distributor defendants — AmerisourceBergen Drug Corporation, McKesson Corporation, and Cardinal Health, Inc. — are before this court. On March 9, 2020, this court entered an Order of Appointment, pursuant to Fed. R. Civ. P. 53(a)(1)(A), which appointed the Honorable Christopher C. Wilkes as Special Master to aid with discovery matters and/or disputes. (ECF No. 200.) Pursuant to Rule 53(f)(2), any party may file an objection to an order,

finding, report, ruling, or recommendation by the Special Master within 7 calendar days of the date it was filed.

***A. Defendants' Motion to Compel***

On May 15, 2020, defendants filed a motion to compel discovery, seeking information regarding plaintiffs' opioid-related actions and expenditures, and information regarding plaintiffs' requested abatement damages remedy. (ECF No. 423.) Defendants argued that plaintiffs had not delivered sufficient information or documents regarding "(a) how much money they seek, (b) what the separate components of the "abatement damages" are, or (c) how the dollar amounts of the components or the overall amount were calculated," (ECF No. 494), and that this information was necessary because "predicting what abatement costs may be incurred in the future likely requires determining what abatement costs have been incurred in the past." (ECF No. 423.) Defendants also argue that Special Master Wilkes' order in Discovery Ruling No. 1 ("DR1"), (ECF No. 248), required plaintiffs to give defendants this information when DR1 ordered compliance with interrogatories 10 and 11 and request for production 16. (See ECF No. 423.) Plaintiffs filed their response opposing the motion on May 27, 2020. (ECF No. 475.) Plaintiffs argue that they have satisfied their discovery

obligations under DR1[2] as to interrogatories 10 and 11 and request for production 16, and will disclose additional abatement information through expert witness testimony. (See id.)

On June 23, 2020, Special Master Wilkes entered Discovery Ruling 9 ("DR9"), denying defendants' motion. (ECF No. 621.) Special Master Wilkes denied the motion because he found that plaintiffs satisfied their discovery obligations:

> "Plaintiffs submitted extensive answers to interrogatories, produced nearly 800,000 documents and identified scores of fact witnesses which provide ripe ground for Defendants to understand, investigate and discover the "opioid related actions" the city/county has taken in response to the opioid epidemic. The City of Huntington and Cabell County Commission have produced spreadsheets specifically referencing budgets and accounting documents which provides ample reference points for further discussion during fact witness depositions."

Special Master Wilkes also ruled that because plaintiffs are seeking an abatement remedy, which consists of "prospective future costs to abate the [opioid] crisis," In re Nat'l Prescription Opiate Litig., No. 1:17-md-2804, ECF No. 2519 (Aug. 26, 2019), any prior amounts and/or allocation of abatement spending have only marginal value in determining the future costs of abatement.

[2] Plaintiffs also note that only plaintiff Cabell County Commission's responses to interrogatories 10 and 11 and request for production 16 were the subject of DR1.

Defendants timely filed objections to DR9 on July 1, 2020, arguing that discovery of past abatement expenditures is necessary for defendants because such information bears directly on the plausibility of any future abatement costs that plaintiffs seek as their remedy. (ECF No. 659.) Defendants object that the availability of expert discovery does not solve the problem because they are entitled to discover facts that could contradict an expert's opinion on an abatement remedy, and that under the court's scheduling order, the period for expert discovery is highly truncated, as defendants' expert reports are due only ten days after they receive plaintiffs' expert reports. (See id.) Defendants also contend that Special Master Wilkes's observation in DR9 that "whatever efforts and expenses Plaintiffs have put forth in attempting to remedy [opioid-related issues] have not been successful" was legal error, and an abuse of discretion. (Id.) Plaintiffs responded on July 6, 2020, explaining that Special Master Wilkes in DR9 did not deny defendants' motion because plaintiffs' past abatement costs were totally irrelevant, but he so ruled because plaintiffs' discovery responses to interrogatories 10 and 11 and request for production 16 were reasonable and sufficient. (ECF No. 675.) Additionally, plaintiffs note they provided defendants with a preliminary list of categories of abatement damages on June 13, 2020. (See ECF No. 659-1.) Plaintiffs further argue that they

are entitled to rely upon expert witness testimony because "an abatement remedy – unlike an award of compensatory damages – cannot be computed before trial and the scope of the remedy will depend on evidence and testimony offered by expert witnesses at trial." (ECF No. 675.)

## II. Standard of Review

As provided in Rule 53(f)(4) and (5), the court shall decide de novo all objections to conclusions of law made or recommended by the Special Master; and the court shall set aside a ruling by the Special Master on a procedural matter only for an abuse of discretion. To the extent the Special Master enters an order, finding, report, ruling, or recommendation regarding an issue of fact, the court shall review such issue de novo, if any party timely objects pursuant to the Rules and within the 7 calendar day time period set forth herein. See Rule 53(f)(3).

## III. Analysis

Ordinarily, Federal Rule of Civil Procedure 26(a) requires plaintiffs to provide, at the outset of discovery, "a computation of each category of damages claimed" and to produce "the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed R. Civ. P. 26(a)(1)(A)(iii). However, because abatement is as an equitable remedy within the court's

discretion to fashion, abatement is not subject to the computation requirements of Rule 26. See, e.g., Scott v. City of Phoenix, No. CV-09-0875-PHX-JAT, 2011 WL 1085992, at *4 (D. Ariz. Mar. 24, 2011) ("Plaintiff's request for declaratory judgment, injunctive relief, and nominal damages is not waived by Plaintiff's failure to include computations of these equitable remedies in Plaintiff's Second Amended Disclosure Statement. These forms of relief are not capable of the "computation" required for the Rule 26(a)(1)(iii) initial disclosure."). Thus, plaintiffs are not required to compute their precise abatement remedy at this stage in the litigation. Plaintiffs correctly assert that an abatement remedy will depend on evidence and testimony offered by expert witnesses at trial. Cf. In re Nat'l Prescription Opiate Litig., No. 1:17-MD-2804, 2019 WL 4043938, at *2-3 (N.D. Ohio Aug. 26, 2019) (explaining that the court will rely on expert testimony to help fairly construct a future abatement remedy award).

This does not absolve plaintiffs of the need to provide defendants with some basic information and factual basis upon which plaintiffs will build their abatement remedy, and to provide defendants some information about past abatement measures taken and expenditures made. Defendants have an interest in obtaining this information generally to be able to question plaintiffs' experts and to prepare their own experts to

respond to and counter plaintiffs' proposed abatement remedy. Special Master Wilkes ordered as much in DR1, when he ordered Cabell County to supplement its responses to interrogatories 10 and 11 and request for production 16. (See ECF No. 248.)

The court has reviewed the record and finds that plaintiffs have sufficiently complied with their discovery responsibilities as to interrogatories 10 and 11 and request for production 16. The court notes that plaintiffs have produced spreadsheets specifically referencing budgets and accounting documents containing expenses and programming to abate the opioid crisis. For example, plaintiff City of Huntington has outlined at least four pages worth of initiatives – including community partnerships, public health programs, law enforcement initiatives, grant information, and proposed solutions and plans – that it undertook in an effort to address the hazards to public health and safety arising from the opioid crisis. Specific to expenditures, the City of Huntington produced annual reports from the police department and fire department, wage and benefit agreements, salary and payroll information, grant materials, City of Huntington budgets, and departmental-specific budgets. Plaintiff Cabell County Commission has identified and produced budget and expense information for the Office of the Prosecuting Attorney, the Sherriff's Department, and Emergency

Medical Services, each of which dedicated resources to responding to the opioid epidemic.

Furthermore, on June 13, 2020, plaintiffs provided defendants with a preliminary list of categories of abatement damages that plaintiffs' experts had prepared. (See ECF No. 659-1.) While these categories were not detailed, they properly inform defendants of the scope of the abatement remedy sought. Combined with the budgetary documentation already disclosed by plaintiffs, these disclosures provide ample reference points for further discussion during fact witness and expert depositions. Plaintiffs are entitled to rely upon expert testimony for any further abatement-related strategy and calculation inquiries.[3]

Lastly, the court will not opine whether Special Master Wilkes's observation in DR9 that "whatever efforts and expenses Plaintiffs have put forth in attempting to remedy [opioid-related issues] have not been successful" was legal error or an abuse of discretion.[4] (See ECF No. 621.) The court finds that

---

[3] Moreover, this court on August 6, 2020 granted defendants' motion to modify expert discovery deadlines. (ECF No. 834.) Defendants now have sufficient time to review plaintiffs' experts' reports and complete their own.

[4] The court does note there is a general factual basis to support Special Master Wilkes' statement. For example, on October 26, 2017, President Trump directed the Secretary of Health and Human Services to declare the opioid crisis a Public Health Emergency. See Combatting the National Drug Demand and Opioid Crisis, 82 Fed. Reg. 50305 (Oct. 26, 2017). According to that Presidential Memorandum, as of that date, "more than 300,000 Americans have

the comment was not central to his ruling in DR9. Furthermore, the court has reviewed DR9 de novo, and finds in favor of the plaintiffs on entirely separate grounds from the issue of whether prior abatement efforts have or have not been successful.

## IV. Conclusion

For the reasons discussed above, defendants' objection to Discovery Ruling 9, (ECF No. 659), is **OVERRULED.** Defendants' motion to compel discovery responses on opioid-related expenditures, (ECF No. 423), is likewise **DENIED.**

The Clerk is directed to send copies of this Memorandum Opinion and Order to counsel of record and interested parties.

**IT IS SO ORDERED** this 10th day of August, 2020.

ENTER:

David A. Faber
Senior United States District Judge

died of an opioid overdose since 2000[,] . . . more than 2.1 million of our fellow citizens are addicted to opioids, and in 2014 more than 1,500 people were treated each day in emergency departments for opioid-related emergencies." Id. However, the court makes no findings at this juncture as to the specific effectiveness, or lack thereof, of plaintiffs' specific past attempts to abate the opioid crisis.