IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,     Plaintiff, v. AMERISOURCEBERGEN DRUG CORPORATION, *et al.*     Defendants. | Civil Action No. 3:17-01362 |
| CABELL COUNTY COMMISSION,     Plaintiff, v. AMERISOURCEBERGEN DRUG CORPORATION, *et al.*     Defendants. | Civil Action No. 3:17-01665 |

**DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION OF THE FBI AND <u>DEA FOR A PROTECTIVE ORDER</u>**

This Court ruled in a July 27, 2020 Order (the "July 27 Order") that Plaintiff the City of Huntington ("Huntington") must produce under a Highly Confidential–Attorneys' Eyes Only ("AEO") designation 6,880 documents that Huntington improperly withheld on the sole basis of "Third Party Confidentiality Restrictions" or "Law Enforcement" privilege. The Drug Enforcement Administration ("DEA") and the Federal Bureau of Investigation ("FBI")—collectively, the "Agencies"—now move this Court for an order preventing disclosure of approximately 3,500 unspecified documents subject to the July 27 Order and permitting the United States 45 days to review the documents at issue. Dkt. No. 847.

1

The Agencies do not specify which 3,500 of the 6,880 documents included in the July 27 Order are at issue here. In fact, the Agencies have not even reviewed those 3,500 documents, but instead argue that the Court should order they be withheld based on conclusory, boilerplate allegations derived from the Agencies' review of a small fraction of the thousands of documents at issue. Dkt. No. 847 at 3. The Agencies also ignore the fact that Defendants expressly excluded from their Motion documents pertaining to ongoing investigations and information revealing confidential informants.

Simply put, the Agencies' conclusory allegations of harm, generalized to thousands of documents, do not satisfy the standard for withholding documents as law enforcement privileged under West Virginia law. Further, any concerns the Agencies may have with disclosure of these documents are sufficiently answered by the fact that any documents are to be disclosed under the Highly Confidential–AEO designation. That designation has already been deemed sufficient to protect federal law enforcement sensitive documents elsewhere in the opioid litigation, and it is sufficient here. Thus, for the reasons set forth below, the Agencies' motion for a protective order should be denied.

**BACKGROUND**

Beginning in early June, Huntington provided to Defendants four privilege logs identifying documents that Huntington had either withheld or redacted, the vast majority of which were law enforcement materials necessary to help the Defendants test Plaintiffs' allegations about the opioid overdose crisis and response in Huntington.[1] As relevant here, Defendants identified two particular groups of documents as improperly withheld by Huntington: 6,880 documents withheld

---

[1] Huntington provided the first volume of the log on June 8, 2020, the second volume on June 17, and the fourth volume on June 22. The third volume of the log is dated June 18, but due to a technical issue, Defendants did not receive it until June 29.

under blanket assertions of "Third Party Confidentiality Restrictions" and "Law Enforcement" privilege. Defendants and Huntington attempted to resolve the dispute via letters and a June 29, 2020 meet and confer, but ultimately reached an impasse with regard to the 6,880 documents. Although Huntington continued to assert that these documents could not be disclosed because of generalized law enforcement concerns and the documents' claimed relation to third-party law enforcement agencies, including the DEA and FBI, at no point did Huntington include either the DEA or FBI in the parties' discussions.

On July 9, 2020, Defendants moved to compel production of the 6,880 documents withheld by Huntington under claims of "Law Enforcement" privilege and "Third Party Confidentiality Restrictions." *See* Dkt. No. 691. On July 27, 2020, Judge Wilkes granted Defendants' Motion to Compel, ruling (1) that "Third Party Confidentiality Restrictions" is not an independent privilege under West Virginia law, and that Huntington could and should have followed the procedure for protecting third-party-confidential information set out by the protective order, and (2) that Huntington had failed to make the "substantial threshold showing of harm" necessary under West Virginia law to justify withholding documents based on "Law Enforcement" privilege. Dkt. No. 801 at 2.

Following the Court's ruling, on July 28, 2020, Huntington sought to have the July 27 Order held in abeyance, subject to *in camera* review of a sampling of the withheld documents. Dkt. No. 837-1 (July 28, 2020 Ltr. from N. Deyneka to Judge Wilkes). On July 29, 2020, the Court responded, declining to hold the order in abeyance. Dkt. No. 837-2 (July 29, 2020 Email from Judge Wilkes to N. Deyneka).

3

On July 29, 2020, Huntington apparently informed the DEA and FBI of the documents at issue in Defendants' motion for the first time. *See* Dkt No. 847 at 3. The DEA and FBI filed the instant motion for a protective order on August 7, 2020. *See* Dkt. No. 847.

## ARGUMENT

The FBI and DEA, like Huntington, have failed to articulate valid law enforcement privilege claims. Contrary to the Agencies' assertion, West Virginia "has never adopted an all-encompassing law enforcement privilege." *Maclay v. Jones*, 542 S.E.2d 83, 86 (2000). And, also contrary to the Agencies' assertion, this privilege analysis *is* made with reference to state law. West Virginia substantive privilege law applies to this motion because "state law supplies the rule of decision" on Plaintiffs' public nuisance claim. Fed. R. Evid. 501; *see also, e.g.*, *Old White Charities, Inc. v. Bankers Ins., LLC*, 2018 WL 2211409, at *5 (S.D.W. Va. May 14, 2018) (applying West Virginia attorney-client privilege law where state law provided rule of decision). The Agencies' citation to *United States v. McLamb*, 220 F. Supp. 3d 663, 674 (E.D. Va. 2016), does not support their contrary position, because that case involved a federal criminal prosecution and (unlike here) federal law provided the rule of decision. *See id.* at 668.

The Agencies have failed to make the necessary "substantial threshold showing of harm" that will result from disclosing the documents. *Maclay*, 542 S.E.2d at 91. That showing "must be sufficiently specific to permit the trial judge to be fully apprised as to the significance of the disclosure concerns." *Id.*; *see also Aguilar v. Immigration & Customs Enforcement Div. of the U.S. Dept. of Homeland Sec.*, 259 F.R.D. 51, 56–57 (S.D.N.Y. 2009) (a court "need not defer blindly" to assertions of law enforcement privilege, and the party opposing disclosure must make a "clear and specific evidentiary showing of the nature and extent of the harm that is likely to be encountered if disclosure is permitted"). If and only if the Agencies make such a threshold showing, then *Maclay* mandates that the Court (following *in camera* review) balance Defendants'

need for the documents and the public interest in non-disclosure. *Maclay*, 542 S.E.2d at 91-92. The Agencies do not satisfy either *Maclay* requirement. Furthermore, since these documents will be treated as Highly Confidential and disclosed AEO, the Agencies' claims about the risk of public disclosure are unfounded.

I.     **The DEA and FBI Do Not Make Out the Threshold Showing for Law Enforcement Privilege.**

The DEA and FBI have failed to make the requisite "substantial threshold showing" that disclosure of the requested documents will be harmful under *Maclay*. 542 S.E.2d at 91. That entirely resolves the issue, and their motion for protective should be denied on that basis alone.

The Agencies make the conclusory, blanket assertion that approximately 3,500 unspecified documents need to be withheld, but admit that they have reviewed only "a sampling" of those documents. *See* Dkt No. 847-2 ¶ 6 ("Specifically, I reviewed sixteen documents); *see also* Dkt. No. 847 at 3 ("After reviewing a sample of the documents"); Dkt. No. 847-1 ¶ 5 ("I have reviewed a sampling of the nearly 3,500 documents that are subject to this Order. Specifically, I reviewed approximately 400 documents"). The Agencies' confidentiality claims thus fail the threshold test of *Maclay* ***because they are not even based on a specific review of the withheld documents***. Without even reviewing all of the withheld documents, the Agencies cannot possibly make a showing of harm "sufficiently specific to permit the trial judge to be fully apprised as to the significance of the disclosure concerns" with these documents, *Maclay*, 542 S.E.2d at 91.[2]  *See*

---

[2] To the extent that the Agencies contend that their limited review is due to the fact that they were apparently unaware of the documents until July 29, 2020, that fact does not alter the Agencies' burden under *Maclay*. Further, allowing a delay of, at minimum, 45 days to produce these documents would unfairly prejudice Defendants. Huntington has been aware of these documents for months, and has repeatedly made empty assertions of law enforcement privilege with respect to these documents. The governing protective order in this case in fact sets out a specific process for informing third parties of potentially confidential information sought in

*also Arch Specialty Ins. Co. v. Go-Mart, Inc.*, 2009 WL 10687968, at *2 (S.D.W. Va. July 24, 2009) ("It is well-established that a party asserting a privilege has the burden of proving its existence, and must supply opposing counsel with sufficient information to assess the applicability of the privilege or protection, without revealing information which is privileged.").

In any event, the explanations the Agencies provide for the few documents they *have* reviewed are so vague, overbroad and conclusory that they cannot satisfy the *Maclay* standard even as to those documents. For example, the FBI contends that release of "Operations Plans" generally would "inform criminals to the resources that law enforcement tends to employ in response to a particular mission." Dkt. No. 847-1 ¶ 7. But these documents are not being disclosed to "criminals" but to outside counsel on Attorneys' Eyes Only basis. Furthermore, that boilerplate language is far too vague to satisfy *Maclay*. These are broad, generic allegations that could apply to almost any law enforcement document.

Importantly, many of the Agencies' proffered explanations also hinge on the allegation that disclosure of these documents could expose "undercover agents and confidential informants" or "information related to ongoing investigations." Dkt. No. 847 at 5, 8 (alleging that "any disclosure of ongoing investigations and electronic surveillance" would be harmful). But Defendants have expressly excluded from their motion to compel any documents pertaining to ongoing or open law enforcement investigations. Dkt. No. 691 at 7; Dkt. No. 837 at 8. Additionally, Defendants excluded information related to the identities of confidential informants. *See, e.g.*, Dkt. No. 690-1 at 10. The Agencies' explanations of harm flatly ignore these carve-outs, and their allegations of harm therefore ring hollow.

---

discovery. Yet Huntington apparently waited until the eleventh hour on July 29, 2020—after the close of discovery and after Defendants' motion had been resolved—to first alert the DEA and FBI as to these documents. *See* Dkt. No. 847 at 3.

6

Consequently, the Agencies' broad and conclusory assertion of harms flowing from disclosure are insufficient to allow Defendants or the Court "to be fully apprised as to the significance of the disclosure concerns." *Maclay*, 542 S.E.2d at 91. Accordingly, because the Agencies have failed to make that threshold showing, their motion for protective order should be denied. *Id.* at 90-91.

## II. Even if the FBI and DEA Have Made the Requisite Threshold Showing, Disclosure Subject to AEO Protections Would Be Warranted.

Even if the DEA and FBI had satisfied their threshold burden to show harm from disclosure (and they have not), Defendants' need for the requested documents outweighs any purported public interest in withholding them. *See Maclay*, 542 S.E.2d at 86-87, 90 & n.11. First, as explained above, Defendants are not seeking documents that pertain to ongoing law enforcement investigations or that identify confidential informants. *See* Dkt. No. 837 at 8. Second, the law enforcement documents sought are likely to provide critical information related to multiple of Defendants' defenses. Finally, per the July 27 Order (and at Defendants' request), the documents are to be produced under the Attorneys' Eyes Only ("AEO") provision of the protective order. *See* Dkt. No. 801 at 3. This designation will ensure that the documents are held in confidence and are disclosed only to counsel, thereby protecting any sensitive law enforcement information. The protections of this strict AEO confidentiality designation weigh strongly against withholding.

The Agencies, as did Huntington, argue that the AEO designation is insufficient to protect these documents' confidentiality. *See* Dkt. No. 820 at 7-8. This argument can be readily rejected. *Maclay* explicitly contemplates that law enforcement documents, such as these, may be produced under confidentiality designations such as AEO. *See Maclay*, 542 S.E.2d at 90. The cases on which the Agencies rely do not mandate otherwise. For example the Second Circuit's decision not to allow production under an AEO designation in *In re The City of New York*, 607 F.3d 923,

7

937 (2d Cir. 2010), was "limited to the circumstances of this case," and involved a vastly different situation: a plaintiff seeking disclosure of undercover police reports in a civil rights action. *Id.* at 936-37; *see also Heffernan v. City of Chicago*, 286 F.R.D. 332, 336 (N.D. Ill. 2012) ("The opinion even cited its own prior decisions approving such [AEO] orders and made clear that the holding was based on the unique 'circumstances presented.'"). That the Second Circuit ruled against disclosure under an AEO designation in a civil rights action seeking evidence for plaintiffs' claims does not mean that an AEO is insufficient to protect the confidentiality of the documents at issue here.

In fact, the DEA itself has previously agreed in the opioid litigation to produce "documents that could include highly sensitive DEA information and reveal, for example, confidential informants, undercover officers, or other investigative tools or strategies" under a Confidential–AEO designation. *See* Exhibit A (April 2, 2020 letter in Rhode Island case stating that documents with DEA-sensitive materials could be produced under an AEO designation). Accordingly, the AEO designation has proved sufficient for numerous other productions in the opioid litigation, including productions by the DEA itself. There is no reason it is not sufficient here, especially where the universe of documents at issue *excludes* active and ongoing law enforcement investigations. "The panoply of projected horrors" that the DEA and FBI forecast can therefore be avoided through the use of "carefully crafted protective orders" and production on an AEO basis. *Maclay*, 542 S.E.2d at 90.

## CONCLUSION

For the reasons set forth above, and based on the considerations set out previously by the Court in its July 27 Order, Defendants respectfully request that this Court deny the DEA's and FBI's Motion for a Protective Order.

8

Dated: August 12, 2020

    Respectfully Submitted,

*McKesson Corporation*
By Counsel:

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*/s/ Carol Dan Browning*
Carol Dan Browning
Stites & Harbison, PLLC
400 West Market Street
Suite 1800
Louisville, Kentucky 40202
Telephone: (502) 587-3400
Facsimile: (502) 587-6391
cbrowning@stites.com

*/s/ Timothy C. Hester*
Timothy C. Hester
Mark H. Lynch
Christian J. Pistilli
Laura Flahive Wu
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
mlynch@cov.com
cpistilli@cov.com
lflahivewu@cov.com

*AmerisourceBergen Drug Corporation*
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Cardinal Health, Inc.*
By Counsel:

*/s/ Steven R. Ruby*
Michael W. Carey (WVSB No. 635)
Steven R. Ruby (WVSB No. 10752)
David R. Pogue (WVSB No. 10806)
Raymond S. Franks II (WVSB No. 6523)
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
drpogue@csdlawfirm.com
rfranks@cdkrlaw.com

*/s/ Enu Mainigi*
Enu Mainigi

              F. Lane Heard III
              Ashley W. Hardin
              WILLIAMS & CONNOLLY LLP
              725 Twelfth Street NW
              Washington, DC 20005
              Tel: (202) 434-5000
              Fax: (202) 434-5029
              emainigi@wc.com
              lheard @wc.com
              ahardin@wc.com

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 12th day of August, the foregoing "DEFENDANTS' RESPONSE IN OPPOSITION TO MOTION OF THE FBI AND DEA FOR A PROTECTIVE ORDER" was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)