IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

THE CITY OF HUNTINGTON
and CABELL COUNTY
COMMISSION,

    Plaintiffs,

v.                                              CIVIL ACTION NO. 3:17-01362

AMERISOURCEBERGEN
DRUG CORPORATION, et al.,

    Defendants.

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO ALLOW
LIVE TESTIMONY THROUGH CONTEMPORANEOUS TRANSMISSION (DKT. 794)**

       Plaintiffs now reply in further support of their "Motion to Allow Live Trial Testimony Through Contemporaneous Transmission" (dkt. 794). McKesson's opposition brief misses the mark on the law, and McKesson does not put the full facts in front of the Court, either. Plaintiffs take this opportunity to correct those deficiencies.

       First, Plaintiffs now specify the witness whom they seek to compel contemporaneous video testimony from: Michael Oriente, a high-ranking employee of McKesson whose testimony is fully under McKesson's control. Second, Plaintiffs correct McKesson's errors of law; McKesson is simply wrong that a subpoena cannot be used to compel testimony by video link under Rule 43(a). Finally, Plaintiffs inform the Court of the full facts and circumstances that support an order compelling Mr. Oriente to provide testimony at the trial by video link.

1

# ARGUMENT

I. **Plaintiffs seek to compel the live video testimony of McKesson employee Michael Oriente.**

Plaintiffs acknowledge that, in their motion, they named no specific witness they are seeking to elicit testimony from during trial. The witness from whom Plaintiffs seek to compel the contemporaneous video testimony is Michael Oriente.

Mr. Oriente is a central witness in this case who possesses highly relevant testimony. He is a current McKesson employee, and he works in Trenton, New Jersey. Since 2008, Mr. Oriente has been a Director of Regulatory Affairs and during that same time period he has been responsible for ensuring compliance with the Controlled Substances Act as it relates to specific customers McKesson has assigned to him—one of the largest being Rite-Aid. Rite-Aid is, of course, a national pharmacy chain with multiple stores located within and around Cabell County and the City of Huntington. In fact, in Cabell County, McKesson's largest non-government customer has been Rite Aid.

Plaintiffs seek to compel Mr. Oriente's appearance in a location convenient to him—certainly, at a location "within 100 miles of where [he] resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c). That location could be his home, his office, an office of McKesson's lawyers, or even a federal courthouse—all of which have been approved by other district courts considering video testimony. As explained further below, this Court has the power under Rule 45 to compel his attendance, and Plaintiffs can show the requisite circumstances under Rule 43(a) for the Court to allow his testimony to be presented by video link.

This should not come as a surprise to McKesson. Plaintiffs and McKesson have been negotiating to have the testimony of witnesses, including Mr. Oriente, for nearly a month. These

negotiations are continuing even now. The other defendants, AmerisourceBergen and Cardinal Health, have agreed to produce their witnesses for trial, leaving only McKesson as the holdout.

McKesson's arguments also focus on its claim that the need for Mr. Oriente's testimony is not "unexpected," and that Plaintiffs have made the "strategic, voluntary decision to forego routine pretrial depositions" after "only one deposition of a McKesson witness in these Huntington and Cabell County cases." (McKesson Opp. at 9.) Neither of these statements is correct.

Mr. Oriente has been deposed in both the National Prescription Opiates Litigation and the Ohio Attorney General action on his involvement with McKesson Corporation—but not on topics specific to *this* action. McKesson's statement that Plaintiffs have made the "strategic, voluntary decision to forego routine pretrial depositions" is inaccurate. Plaintiffs have, in fact, attempted to depose Mr. Oriente in CT2, and were refused by McKesson's counsel. (Ex. A, Email from Dale Rice to Brandon Bogle (Jul. 24, 2020).) However, rather than continuing to debate the issue of Mr. Oriente's deposition with McKesson, Plaintiffs have taken the affirmative steps of filing this motion to compel his testimony at trial in West Virginia in the manner Plaintiffs believe is most appropriate—live video testimony that will allow the Court to view the witness during questioning and weigh his credibility in real time.

McKesson cannot and does not demonstrate any burden on McKesson, or its high-ranking employee, if the Court were to permit Mr. Oriente's trial testimony. He would not have to travel anywhere for the testimony. He and his counsel would likely do the same amount of work in preparing for his testimony as they would if he gave a videotaped deposition instead of live testimony. He is undoubtedly under McKesson's control and in possession of highly relevant testimony. And most significantly, McKesson has the choice to call him itself; if McKesson did

so, the Court can be assured that McKesson would present him live or—just like this—by video link.

## II. Subpoenas under Rule 45 may be used to command testimony by video link under Rule 43.

McKesson is wrong about the law in contending that Rule 45 does not provide this Court with the discretion to allow Mr. Oriente's trial testimony. Rule 45 was amended in 2013, but not "to prohibit trial courts from compelling trial appearances and testimony from remote party witnesses." (McKesson Opp. at 6.) The amendments were part of a broad package of rule changes intended to simplify, streamline, and modernize subpoena practice. Far from barring Plaintiffs' attempt to use Rule 45 to compel McKesson's witnesses' appearance at trial by video, the advisory committee reports from that time *expressly confirm* that such testimony can be compelled, if otherwise authorized by the Court under Rule 43(a). Plaintiffs respectfully suggest that McKesson's legal position is simply without merit.

The Supreme Court transmitted the 2013 rule changes to Congress on April 16, 2013. (Ex. B, House Doc. 113-29, Communication from the Chief Justice to the U.S. House of Representatives.) In that package, the Court will find excerpts from the Jan. 22, 2013 report of the Judicial Conference's Committee on Rules of Practice and Procedure, *id.* at 22−28, followed by the May 8, 2012 Report of the Civil Rules Advisory Committee, which it adopted, *id.* at 29−35.

Under the old rule, the issuing court was required to quash any subpoena that "requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person." Old Rule 45(d)(3)(A). (Greater travel within a state could also be compelled in some circumstances not relevant here.) This old language was moved to Rule 45(c), but it says the same thing: a subpoena may

4

command a person to attend trial "within 100 miles of where the person resides, is employed, or regularly transacts business in person," or in some cases within the same State.

So, this was not a substantive change. Rule 45(c) was added simply to reorganize scattered parts of Rule 45 into a single place. (Ex. B at 30 ("combining all provisions on place of compliance").) Rule 45(c) was *not* amended, as McKesson grossly overreaches in arguing, with the intent of barring video-link testimony under subpoena.

McKesson hangs its entire textual argument on a thin reed—the word "only" in new Rule 45(c) ("a subpoena may command a person . . . *only* as follows"). This "only" is not some grand rejection of video testimony under subpoena. It is simply the grammatical consequence of recasting old Rule 45's negatory prohibition ("the issuing court *must* quash") into new Rule 45(c)'s positive, authorizing language ("[a] subpoena *may* command"). (All emphases added.)

McKesson is correct that in propounding this rule change, the rules committees were contemplating the result in *In re Vioxx Prod. Liab. Litig.*, 439 F. Supp. 2d 640 (E.D. La. 2006), where the district court in Louisiana had permitted a subpoena to command a New Jersey resident to attend trial in Louisiana. To that end, the 2013 rule change does address what the reports call "the *Vioxx* issue." (Ex. B at 32−33, 26.)

However, both committee reports expressly *authorize* subpoenas compelling testimony under Rule 45 that is offered by video link at trial under Rule 43(a). It could not be clearer: "**when the issuing court has made an order for remote testimony under Rule 43(a), a subpoena may be used to command the distant witness to attend and testify within the geographical limits of Rule 45(c).**" (Ex. B at 26−27 (Committee on Rules of Practice and Procedure report) (emphasis added).)

That was a reference to this passage in the Civil Rules Advisory Committee's report:

5

> "Moreover, with large organizations it will often be true that best witnesses are not officers but other employees. To the extent testimony of such party witnesses is important there are alternatives to attending trial. **See, e.g., Rule 30(b)(3) (authorizing audiovisual recording of deposition testimony) and 43(a) (permitting the court to order testimony by contemporaneous transmission.**")

(Ex. B at 33 (emphasis added).) In other words, the Civil Rules Advisory Committee put videotaped depositions on the same level as Rule 43(a) video-link testimony—two ways for parties to get testimony, without compelling a witness to fly across the country in person, as happened in *Vioxx*. These two rules committee reports are consistent: the 100-mile limit of Rule 45(c) *does* apply to Rule 43(a) orders—but the limit refers to the distance the witness must travel in order to give the testimony.

Thus, McKesson is wrong to argue that the 100-mile limit is drawn around this West Virginia courthouse, and that only witnesses *within* that limit may be compelled to appear by video. The two rules committee reports amplify what is already clear enough in Rule 45's text: "a subpoena may command a person to attend a trial" "within 100 miles of where the person resides," works, or regularly does business.

Under the circumstances of a Rule 43(a) video link, the place of attendance is the chair where the witness will be sitting. So long as that chair is within 100 miles of his home and the Court authorizes the testimony under Rule 43(a), then Rule 45(c) permits the Plaintiffs to command him to sit there.

The committee reports' views on current Rule 45 are consistent with Rule 45's longtime concern for the solace and convenience of distant, non-party witnesses. Rule 45 has *always* embodied a judicial balance between protecting non-parties from harassment, and the centuries-old truism that "the public has a right to every man's evidence." *Trump v. Vance*, 140 S. Ct. 2412, 2420 (2020). But here, the balance is in favor of Plaintiffs' need for the testimony. Mr.

Oriente will not have to travel even *one* mile from his home or workplace to testify at this trial. Technology has greatly lessened any burden on him.

The committee reports' views also make sense in light of society's increasing mobility and technological advances. They are nothing more than a straightforward read of the Rules, which the committees have continuously modernized to keep up with societal developments. After all, the former 40-mile limit in Rule 45 was increased to a 100-mile limit in 1985. Rule 43(a), permitting testimony by video link, was enacted in 1996. The 2013 changes to Rule 45, likewise, were made to do away with the "'three-ring circuses' of challenges for the lawyer seeking to use a subpoena" by simplifying procedures. (Ex. B at 30.) The thrust of all these changes has been to enhance the power of cross-district subpoenas, not to constrict their use. There is no bar on compelling Mr. Oriente or other witnesses to appear by video link, providing there is good cause under Rule 43(a).

### III. Plaintiffs have shown good cause for the Court to order video testimony under Rule 43(a).

McKesson's arguments concerning the "good cause" requirement from Rule 43(a) also continue to miss the mark. The decision to permit video-link testimony under this rule sits in the Court's sole discretion, and Plaintiffs have demonstrated that it would be appropriate in this case.

First of all, as the rule states, testimony by video link can be ordered for "good cause in compelling circumstances and with appropriate safeguards." Fed. R. Civ. P. 43(a). Specifically how to establish those circumstances is somewhat of an open question, because "[t]he Fourth Circuit Court of Appeals has not stated a test for determining what constitutes 'good cause' or 'compelling circumstances'[.]" *Humbert v. O'Malley*, 303 F.R.D. 465, 464 (D. Md. 2014). McKesson does not come forward with a specific test either. The Court may properly rely on persuasive precedent from other federal courts to make its ruling on this motion. In particular,

the test set out in *In re Vioxx* is such precedent. In the *Vioxx* litigation, the court listed the following factors to be considered to allow testimony by contemporaneous transmission: (1) the control exerted over the witness by the defendant; (2) the complex multi-party, multi-state nature of the litigation; (3) the apparent tactical advantage, as opposed to any real inconvenience to the witness, that the defendant is seeking by not producing the witness voluntarily; (4) the lack of any true prejudice to the defendant; and (5) the flexibility needed to manage a complex multi-district litigation. *In re Vioxx Prods. Liab. Litig.*, 439 F. Supp. 2d 640, 643 (E.D. La. 2006).

Plaintiffs have met each of the *Vioxx* factors to allow Mr. Oriente's testimony by video transmission as follows: (1) Mr. Oriente is still under the control of McKesson as he is a current employee; (2) as discussed throughout this reply, the Cabell County and the City of Huntington trial will have a substantial effect on thousands of opioid cases still pending in the opioid multi-district litigation; (3) any objection by McKesson is purely tactical as there is no actual inconvenience for Mr. Oriente to appear at trial via videoconferencing technology; rather, it would be *more* convenient than traveling to testify in Charleston; (4) McKesson will not be prejudiced by having a friendly witness under its own control testifying here; and (5) for a trial of such importance as this and in consideration of the current health crisis the country is facing, now is the precise time for courts to have flexibility to manage the conduct of their trials in this manner.

McKesson fails to demonstrate how Plaintiffs have not met any of these factors showing good cause for testimony by contemporaneous transmission. What Plaintiffs seek is not extraordinary: the other two defendants have, in fact, agreed to each produce multiple live witnesses, among other negotiated terms, for the upcoming October trial. (Dkt. 828, 835.) If the other defendants and their witnesses can do this, so can McKesson.

This testimony is important. The upcoming CT2 trial will provide guidance and information in thousands of cases still within the opioid multi-district litigation—not to mention, justice for the people of the City of Huntington and Cabell County. As such, the Court would benefit from the best available testimonial evidence from all parties. Live witness testimony, either in person or through video link, would allow the Court to assess the witness's demeanor and credibility more accurately than would be possible with deposition cuts and transcripts.

Other district courts have found good reasons to conduct trials in this manner. One court noted that "[b]oth the Federal Rule of Civil Procedure 43(a) and recent cases from the Ninth Circuit support contemporaneous transmission of testimony provided good cause is shown and appropriate safeguards used." *FTC v. Swedish Match North America Inc.*, 197 F.R.D. 1, 2 (D.D.C. 2000). In *Swedish Match*, the court found "the use of live video transmission will not prejudice the defendants because adequate safeguards exist to protect the procedure." *Id*. (citations omitted). The *Swedish Match* court actually preferred video-link testimony over video depositions—because "the court will have a greater opportunity through the use of live video transmission to assess the credibility of the witness than through the use of deposition testimony." *Id.*

Another court, seeking to conclude a bench trial during the covid-19 pandemic, found that having witnesses appear at distant federal courthouses is a good procedure that provides an additional safeguard. *In re RFC and ResCap Liquidating Trust Action*, ___ F. Supp. 3d ____ 2020 WL 1280931 (D. Minn. 2020). That court was "advised by IT staff in this District that the most reliable, secure video link may be obtained at other federal courthouses." *Id.* at 4. Having Mr. Oriente appear in a courtroom in the District of New Jersey, if that court will oblige, may be an appropriate procedure for this court to consider.

The covid-19 pandemic itself provides further compelling circumstances under Fed. R. Civ. P. 43(a). This Court has already recognized the need to take unusual, concrete steps to safeguard against the health concerns arising from the ongoing pandemic. *See* General Order #4 (S.D. W. Va. Mar. 30, 2020) (Chief Judge Johnston ordering videoconferencing to be authorized for various criminal proceedings in the Southern District of West Virginia in order to protect the health and well-being of court employees, litigants, witnesses, jurors, attorneys, and the general public). If cases where liberty is at stake may fairly be handled by video, then surely video testimony is appropriate for Mr. Oriente.

Additionally, many district courts have found that the pandemic is a compelling circumstance and that it calls for flexibility in adapting typical litigation procedures in response. *In re RFC and ResCap Liquidating Trust Action*, ___ F. Supp. 3d ____, 2020 WL 1280931, at *2 (D. Minn. 2020) (holding "[t]he Court's discretion on this question is supplemented by its 'wide latitude in determining the manner in which evidence is to be presented' under the Federal Rules of Evidence."); *Argonaut Ins. Co. v. Manetta Enterprises, Inc.*, No. 19CV00482PKCRLM, 2020 WL 3104033, at *1–2 (E.D.N.Y. Jun. 11, 2020) (holding that it is "absolutely preferable" to conduct the bench trial via such "contemporaneous transmission," as permitted by Fed. R. Civ. P. 43(a), rather than to delay the trial indefinitely); *see also United States v. Klawitter*, No. 19-MJ-800 (TNL), 2020 WL 2512841, at *1–2 (D. Minn. May 15, 2020) (covid-19 constituted good cause criminal case for defendants' absence from sentencing hearing). This Court should consider following suit, recognizing that the present circumstances call for flexibility in trial procedures.

## CONCLUSION

Plaintiffs have provided good cause and compelling circumstances to allow contemporaneous transmission of testimony under Rule 43(a) and Rule 45(c). Plaintiffs ask the

Court to compel the live trial testimony of Michael Oriente from a suitable location, consistent with law.

In the alternative, Plaintiffs would ask the Court to permit them to take the video deposition of Mr. Oriente at a suitable location, under subpoena if necessary.

Dated: August 14, 2020 　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　　　　*/s/ Brandon L. Bogle*
　　　　　　　　　　　　　　　　　　　　　　　　　Brandon L. Bogle (WV PHV-40313)
　　　　　　　　　　　　　　　　　　　　　　　　　**LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY, AND PROCTOR, P.A.**
　　　　　　　　　　　　　　　　　　　　　　　　　316 S. Baylen St., Ste. 600
　　　　　　　　　　　　　　　　　　　　　　　　　Pensacola, FL 32502
　　　　　　　　　　　　　　　　　　　　　　　　　(P) 850-435-7043
　　　　　　　　　　　　　　　　　　　　　　　　　(F) 850-436-6043
　　　　　　　　　　　　　　　　　　　　　　　　　bbogle@levinlaw.com