```
 1                                                                    1

 2        SUPREME COURT OF THE STATE OF NEW YORK
          COUNTY OF SUFFOLK: PART 48
 3        ----------------------------------------------------x

 4        IN RE: OPIOID LITIGATION

 5
                                        INDEX NO.:400000/2017
 6
          ----------------------------------------------------x
 7
                                        August 19, 2020
 8                                      Central Islip, New York

 9
                        MINUTES OF FRYE HEARING
10                      (Testimony of James Rafalski

11        B E F O R E:       HON. JERRY GARGUILO
                             Supreme Court Justice
12
          A P P E A R A N C E S:
13
          SIMMONS HANLY CONROY, LLC
14        Attorneys for Suffolk County
          112 Madison Avenue
15        New York, New York 10016
          BY:   PAUL J. HANLY, JR., ESQ.
16              JAYNE CONROY, ESQ,
                (212) 784-6401
17              phanly@simmonsfirm.com
                jconroy@simmonsfirm.com
18

19        NAPOLI SHKOLNIK, PLLC
          Attorneys for Nassau County
20        400 Broadhollow Road, Suite 305
          Melville, New York 11747
21        BY:   HUNTER SKOLNICK, ESQ.
                SALVATORE C. BADALA, ESQ.
22              JOSEPH L. CIACCIO, ESQ.
                (212)397-1000
23              pnapoli@napolilaw.com
                sbadala@napolilaw.com
24              jciaccio@napolilaw.com

25
```

EXHIBIT 4

```
 1                    Direct/Dr. McCann                    29
 2    think any of the news websites like the Washington
 3    Post are using our data, that's correct.
 4         Q.   And just so it's clear, and I apologize
 5    for being redundant, the processing, the validating,
 6    the augmenting or as you used I think you said
 7    sometimes cleaning up the ARCOS data, you utilized
 8    generally accepted practices?  They would be
 9    considered, you know, a consensus would say that was
10    the processes that should be followed, and they were
11    reliable, were they not?
12         A    Yes.
13         Q.   And to your knowledge, would you know,
14    have any of the Defendants actually utilized your
15    process, validated and augmented ARCOS transactional
16    data in the work they did in this case, having read
17    any of their opinions or reports of their experts?
18         A    I believe they have, yes.  I believe
19    they accept the results of the first two steps that
20    we've been discussing here as being reliable.
21         Q.   Now, Dr. McCann, in terms of the
22    summarizing shipments in the ARCOS data, in that
23    step of the processes, did you utilize generally
24    accepted methodology in your field?
25         A    Yes.
```

```
 1                    Direct/Dr. McCann                    30
 2           Q.   And on the third part, it says, Report
 3      the algorithms -- report the results of applying
 4      certain algorithms to the ARCOS data.  What does
 5      that mean, just generally speaking, because we're
 6      going to get into that in a little bit more detail
 7      to discuss your methodology?
 8           A    Well, after the data has been processed
 9      and largely limited to New York State, first, these
10      two counties, Nassau and Suffolk, but more broadly
11      New York State, there is some national data that is
12      used, but primarily data from shipments to New York
13      State, we then narrowed the focus of the data to
14      shipments to pharmacies and identified where those
15      shipments were coming from, which distributors were
16      shipping to the pharmacies.
17                Once the data has been narrowed to that
18      -- those subsets, shipments from primarily
19      distributors to pharmacies, we then applied formulas
20      that would identify when a shipment exceeded some
21      threshold and would mark that.
22                We call that identified or flagged, but
23      think of it as just marking that shipment and
24      subsequent shipments.  So it's all done with a
25      computer.  It's not done visually.  It's done with
```

```
 1                   Direct/Dr. McCann                    31
 2    computer codes, but basically what it's doing, what
 3    the algorithm is doing is taking a subset of that
 4    ARCOS data and further subsetting that, what I call
 5    flagging or identifying certain transactions from
 6    manufacturers and distributors to pharmacies.
 7         Q.   And this work that you described in
 8    applying this or doing this assignment one, two and
 9    three -- I'm not going to repeat them all -- did you
10    do all that yourself?
11         A    Well, no.  I have a staff that supports
12    me.
13         Q.   I don't need you to tell us all the
14    staff, but generally speaking, give us a brief
15    rundown of the key people and their level of
16    expertise in crunching data of this magnitude.
17         A    Well, the two primary people working on
18    this with me are both math Ph.D.s, Mike Yan and
19    Chuan Qin.  So C-H-U-A-N is his first name, and
20    Q-I-N is his last name.  The two of them have math
21    Ph.D.s.
22              Mike has worked for me for nine years,
23    and Chuan has worked for me for three or four years.
24    And then working under them -- so they would be the
25    people who would have primarily done the first step,
```

```
 1                      Direct/Dr. McCann                    57
 2            We'll double check it.
 3                   THE COURT:  If it wasn't for mistakes,
 4            none of us would have jobs.
 5                   MR. SHKOLNIK:  Thank you.
 6     BY MR. SHKOLNIK:
 7            Q.    Now, the Judge mentioned a very
 8     important point, the reliability of the data and the
 9     work you did.
10                   Could you talk to us about that a little
11     bit further?  How do you know that the crunching and
12     the cleaning or -- I'm going to use your
13     phraseology.  I don't want to use the wrong words.
14                   THE COURT:  I'm okay with crunching.
15     BY MR. SHKOLNIK:
16            Q.    Crunching or validating. How do we know
17     that what you did was reliable, you know, with what
18     you did, because it was -- you basically crunched a
19     whole bunch of numbers here.
20            A     Yes, well, up to this point in the
21     discussion so that processing and supplementing and
22     validating the data, the crunching of the data and
23     producing summary tables is not disputed by the
24     defense in this case by their expert witnesses or in
25     the submission that I read that addressed the
```

```
 1                    Direct/Dr. McCann                    58
 2     reliability of my work.
 3              It seems like there is no dispute about
 4     that.  So we've obviously worked very hard in this
 5     data to determine that it is ultimately reliable.
 6              It's been vetted in the MDL and Summit
 7     and Cuyahoga Counties, and it's been vetted again by
 8     the Defendants in this case.
 9              So up to this point I don't think that
10     there's any dispute that the data is reliable.
11          Q.   And, in fact, I'm just going to read
12     from a footnote in the motion papers filed, and I
13     believe it was Docket -- I shouldn't say Docket.
14     ECF Docket Number 4421 at page 6 of 29 in footnote
15     number 6 it says, Plaintiffs also asked McCann,
16     Dr. McCann, to offer certain opinions relating to
17     the reliability of the DEA's ARCOS data, which are
18     not addressed in this motion, meaning the Defendants
19     didn't even challenge the reliability of the work
20     you did on the data scrubbing and crunching.  Is
21     that a fair understanding of this?
22          A    Yes.
23          Q.   There's discussion regarding what
24     algorithms are applied that were brought up by the
25     defense in terms of challenging your opinions,
```