**EXPERT REPORT OF THEODORE F. MARTENS**

August 27, 2020

In re: Opioid Litigation, West Virginia Cases No. 3:17-01362 and 3:17-01665

Confidential
Subject to Protective Order

EXHIBIT 7

Highly Confidential
Subject to Protective Order

## I. Qualifications and Background

1. I am a retired PricewaterhouseCoopers LLP ("PwC") partner and have been retained by Reed Smith LLP ("ReedSmith") to provide expert services and testimony in connection with pending opioid litigation, West Virginia Cases No. 3:17-01362 and 3:17-01665. All work in connection with this matter was performed under my review and supervision.

2. I have been a Certified Public Accountant since 1981, and I also possess the American Institute of Certified Public Accountants ("AICPA") Financial Forensics Certificate. During the course of my professional career, I have audited many public and private companies including tobacco and food manufacturers, insurance companies, private and trust banks, securities brokerages and options dealers, and law firms. I have worked on a variety of forensic accounting assignments involving fraud, business revenue losses, asset valuation and damages analysis, including for the State Department before the Iran–United States Claims Tribunal, the Thomas Petters Ponzi scheme, the Bernard Madoff BLMIS Westport Bank Custody account matter, insurance claims arising out of the 9/11 attacks, the BP oil spill, and numerous business disputes. In addition, PwC was retained as the independent auditor of the Tobacco Master Settlement Agreement ("MSA") in 2000. While an active partner, I led the MSA engagement team from inception of the firm's retention through 2012. I continued to work on the MSA engagement in a client service arrangement with PwC through 2019. I have provided expert testimony in Federal and State courts, as well as, International and Domestic arbitrations.

3. I am a member of The AICPA and serve as a member of the AICPA's Relations with Judiciary Committee. In that capacity, I am a member of the faculty of the National Judicial College ("NJC") teaching Federal and State Court Judges various accounting, auditing, and valuation topics in a program entitled "Financial Statements in the Courtroom." I have served on the NJC Faculty since 1994. I am also a member of The New York State Society of Certified Public Accountants.

4. A copy of my curriculum vitae is attached as Exhibit A.

## II. Assignment

5. I have been retained by ReedSmith and its client, AmerisourceBergen Drug Corporation ("ABDC"), to provide analyses in connection with claims against ABDC relating to its distribution of prescription opioids. My opinions set forth in this report are stated to a reasonable degree of professional certainty. My work was limited to the procedures and analyses described herein and was based on information made available through August 27, 2020. I reserve the right to supplement or amend this report upon review of additional materials or information provided to me by the parties in this case, any other

Highly Confidential
Subject to Protective Order

    materials or information that may become available, and/or at the request of counsel. I further reserve the right to offer opinions within my area of expertise in response to additional opinions and/or subjects offered or addressed by other experts on behalf of the Plaintiffs. If asked to more fully explain my opinions as expressed in this report, I reserve the right to rely on various other portions of the documents that I have cited, relied upon, or discussed or that I have not already explicitly used in this report. At trial, I may rely on visual aids concerning my opinions in this report. My work has been performed in accordance with the Consulting Standards promulgated by the AICPA.

6. My hourly billing rate for professional services related to this case is $625 and the billing rates of PwC staff supporting me on this engagement range from $100 to $750. My compensation is not based on the outcome of this litigation.

### III. Information Considered

7. The list of documents, data and other information considered is attached as Exhibit B.

### IV. Procedures and Analyses Performed[1]

8. I used the ARCOS data that was processed, cleansed, and corrected by Craig J. McCann ("McCann USA Processed Data") as described in his August 3, 2020 Expert Report ("McCann WV Report"). I further limited this data solely to transactions in the State of West Virginia by filtering the Buyer_State field to "WV" (the "Processed WV Data").

9. I performed market share analyses on the Processed WV Data for the State of West Virginia, Cabell County, the City of Huntington, as well as all other counties in West Virginia, from 2006 to 2014.

10. I also analyzed the change in ABDC's distribution of all products, including opioids and non-opioid substances to compare the distribution changes over the period from 2006 to 2018.

11. An analysis was also performed on the Aggregate Production Quota History for Selected Substances files (the "DEA Aggregate Production Quota Data") that was obtained from the U.S. Department of Justice, Drug Enforcement Agency, Diversion Control Division website.[2] The DEA Aggregate Production Quota Data was analyzed and compared to the CDC Prescribing rates of opioids in the State of West Virginia and Cabell County.

---

[1] To the extent additional data becomes available, I reserve the right to update analyses and supplement this report.

[2] DEA Diversion Control Division. Aggregate Production Quota History for Selected Substances. https://www.deadiversion.usdoj.gov/quotas/quota_history.pdf (last accessed on July 10, 2020) and https://www.deadiversion.usdoj.gov/fed_regs/index.html (last accessed on July 13, 2020)