IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>    Defendants. | Civil Action No. 3:17-01362 |
| CABELL COUNTY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>    Defendants. | Civil Action No. 3:17-01665 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE EXPERT TESTIMONY REGARDING DEFENDANTS' CORPORATE CONDUCT**

Numerous of Plaintiffs' expert reports are replete with "opinions" that are simply not within the realm of proper expert testimony. This Court has held that a Defendant's "knowledge, state of mind, alleged bad acts, failures to act, or other matters related to corporate conduct and ethics are not appropriate subjects of expert testimony because opinions on these matters will not assist the jury." *In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 611 (S.D.W. Va. 2013) (Goodwin, J.). And yet Plaintiffs' experts seem prepared to do exactly that, reflected in expert reports purporting to state their views of Defendants' "bad acts" or "knowledge," or their views on whether Defendants' conduct was "proper" or complied with "business ethics." *Bard* establishes that this is not proper expert testimony. Defendants accordingly seek a ruling excluding expert testimony

stating opinions about (1) Defendants' alleged "bad acts" or failures to act, (2) Defendants' knowledge, intent, or state of mind, and (3) Defendants' corporate ethics and corporate responsibility.

I.   **Background**[1]

On August 3, Plaintiffs disclosed twenty expert reports, totaling over 2,000 pages.  Some of these expert reports are appropriately tailored to the experts' areas of expertise—Dr. Ellen Thompson, for example, is a cardiologist whose report describes the characteristics of Infectious Endocarditis.  However, a number of experts engage in broad-scale characterizations of Defendants' supposed "bad acts," knowledge and state of mind, and responsibilities as a matter of corporate ethics and corporate social responsibility.  The experts who offer opinions in these areas, far outside the scope of their expertise and any legitimate scope of expert testimony, include:

- Andrew Kolodny, M.D., a physician specializing in addiction treatment (Ex. 2, Expert Report of Andrew Kolodny);

- Anna Lembke, M.D., a physician specializing in addiction treatment (Ex. 3, Expert Report of Anna Lembke);

- Jakki Mohr, Ph.D., a marketing professor (Ex. 4, Expert Report of Jakki Mohr);

- Michael Siegel, M.D.,[2] a physician and professor of public health (Ex. 5, Expert Report of Michael Siegel);

---

[1] Anna Lembke was the subject of a *Daubert* motion filed in the MDL Court regarding her marketing causation opinions.  Judge Polster granted the *Daubert* motion in part.  Ex. 1, *In re: National Prescription Opiate Litig.*, MDL 2804, Case No. 1:17-md-2804, Doc. 2549 at 1 (N.D. Ohio Aug. 28, 2019).  The portions of Lembke's report addressed by this motion were not part of her MDL report and were not included in the MDL motion.

[2] Due to extenuating circumstances, Dr. Siegel's deposition was postponed until October 6, and the deadline for any *Daubert* motion regarding Dr. Siegel was extended to October 16.  ECF No. 1021.  Defendants reserve the right to file an additional *Daubert* motion regarding the remainder of Dr. Siegel's opinions.

- Gordon Smith, CH.B. (M.D. Equivalent), a physician and epidemiologist (Ex. 6, Expert Report of Gordon Smith); and

- David Courtwright, Ph.D., a history professor (Ex. 7, Expert Report of David Courtwright).

Defendants have also filed separate *Daubert* motions to preclude Dr. Kolodny's testimony on other subjects, and to preclude marketing-based testimony proffered by Drs. Kolodny, Lembke, and Mohr.

## II.     Argument

Beyond the requirement that an expert must be qualified and use reliable methods, expert opinion testimony must "help the trier of fact" in order to be admissible. Fed. R. Evid. 702. *See also Koger v. Norfolk S. Ry. Co.*, No. 1:08-0909, 2010 WL 692842, at *1 (S.D.W. Va. Feb. 23, 2010) (Faber, J.) ("Helpfulness to the trier of fact is the touchstone of Rule 702.").

Under that standard, this Court has held that a Defendant's "knowledge, state of mind, alleged bad acts, failures to act, or other matters related to corporate conduct and ethics are not appropriate subjects of expert testimony" because they "will not assist" the trier of fact. *Bard*, 948 F. Supp. 2d at 611; *see also In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004) ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony.").

Like Plaintiffs' experts in this case, the experts in *Bard* sought to present inferences drawn from their review of internal company documents. *Bard*, 948 F. Supp. 2d at 628. The Court found that these "documents and testimony should be presented directly to the jury, not through an expert." *Id.* The point is well established in this District. *See, e.g.*, *Hershberger v. Ethicon Endo-Surgery, Inc.*, No. 2:10-CV-00837, 2012 WL 524442, at *8 (S.D.W. Va. Feb. 15, 2012) (excluding expert's opinion that was not based on his experience or education, but rather was based on other

3

experts' testimony and the defendant's corporate documents); *Hines v. Wyeth*, No. 2:04-0690, 2011 WL 2680842, at *5 (S.D.W. Va. July 8, 2011) (excluding expert testimony in part because it "merely regurgitates factual information that is better presented directly to the jury rather than through the testimony of an expert witness").

### A. Opinions Describing or Characterizing Defendants' Conduct

An expert witness may not "merely regurgitate factual information." *Hines*, 2011 WL 2680842, at *5. This is particularly true when an expert's proposed testimony is based merely on a review of company documents, because the trier of fact "is more than capable of reading and summarizing the documents on its own." *Id.* at *7. In *Bard*, for example, the Court excluded proposed testimony that "Bard did not inform doctors of safety concerns." *Bard*, 948 F. Supp. 2d at 610. In the same vein here, Plaintiffs' experts offer a wide range of opinions that simply characterize Defendants' conduct based on their reading of documents. These should be excluded under the standard of *Bard*.

Dr. Kolodny, for example, spends four pages of his Report simply quoting from a 2018 congressional report, without additional analysis. Ex. 2, Kolodny Report at 84–87. He similarly copies and pastes statistics on distributors' distribution numbers directly from the report of Plaintiffs' expert Dr. Craig McCann without further analysis (*id.* at 24–30), and offers lengthy narrative summaries of selected internal company documents regarding promotional materials. *Id.* at 40–48. He "opines" that distributors sell to the nation's largest chain pharmacies, without any indication as to why that is relevant. *Id.* at 70–77. And he claims that Defendants were "cited for breaking the law" by quoting and referencing civil settlement agreements. *Id.* at 78, 80–81.

Dr. Siegel offers an extensive narrative summary of internal company documents, without further analysis, for the purely factual proposition that "information was available" to Defendants regarding opioid abuse. Ex. 5, Siegel Report at 82–99. Siegel similarly opines about and

summarizes DEA communications with Defendants. *See, e.g.*, *id.* at 100. In so doing, Siegel does not offer any expert opinion but simply describes these as "allegations against the company." *Id.* at 100 n.178. Summarizing and quoting from documents for the proposition that there were "allegations" is not proper expert testimony.

Dr. Lembke spends nearly ten pages summarizing and quoting from Defendants' internal documents regarding promotional materials sent to pharmacies. Ex. 3, Lembke Report at 53–62.

Dr. Mohr likewise spends four pages of her report summarizing documents produced by the Health Care Distribution Association ("HDA"), a distributor trade group. Ex. 4, Mohr Report at 59–62. For example, she regurgitates facts regarding HDA's budget (*id.* at 59), the contents of an HDA-filed amicus brief (*id.* at 60), and the recommendations provided in a presentation given to HDA by a third-party consultant (*id.* at 61). Mohr also spends two pages describing the actions of the American Pain Foundation ("APF"). *Id.* at 63–64. Mohr acknowledges that Defendants were not involved in this foundation, Ex. 9, Mohr Dep., Sept. 21, 2020 at 187:23–188:2, but nonetheless suggests that they are "implicated" in all of APF's actions through Defendant's involvement with the HDA. Ex. 4, Mohr Report at 64.

Dr. Courtwright does not even bother to cite to underlying documents, simply claiming that unnamed "[j]ournalistic and government investigators" have "accused opioid distributors of undermining safeguards" against diversion. Ex. 7, Courtwright Report at 103. He similarly claims without citation that "opioid manufacturers and distributors built a sophisticated campaign" to promote the use of prescription opioids for long-term pain. *Id.* at 78. Without even the veneer of carefully selected internal company documents as support, Dr. Courtwright appears to be *assuming* factual conclusions. That cannot possibly be presented as expert testimony.

All of these are examples of purely factual testimony that do not require any expert analysis. The Court is more than capable of making factual determinations from the underlying evidence itself. Testimony that merely describes the contents of Defendants' documents or public reports, or that characterizes Defendants' conduct, is not proper expert testimony and should be excluded. *Hines*, 2011 WL 2680842, at *5.

### B. Opinions Regarding Defendants' Knowledge, Intent, or State of Mind

"Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony." *In re: Rezulin*, 309 F. Supp. 2d at 547. Instead, the trier of fact "should hear and / or see first-hand any relevant evidence pertaining to the Defendant's intent. Then the jury, not the witnesses, should consider the facts and make its own determination regarding Defendants' intent." *Smith v. Wyeth-Ayerst Labs. Co.*, 278 F. Supp. 2d 684, 700 (W.D.N.C. 2003); *see also DePaepe v. General Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998) (holding that an expert "lacked any scientific basis for an opinion about the motives of [the defendant's] designers"). In *Bard*, for example, the Court excluded proposed testimony that "Bard seem[ed] to lack concern for individual woman's health and safety, focusing instead simply on sales," and that "Bard also knew that the amount of mesh . . . would be an issue with their products." *Bard*, 948 F. Supp. 2d at 610. For the same reasons, testimony by Plaintiffs' experts about Defendants' knowledge, state of mind or motives should be excluded.

Dr. Kolodny is a particularly clear example of expert opinion that improperly purports to impute knowledge and intent to Defendants. He concludes from reading internal documents that McKesson "was more interested in profits than in having meaningful systems in place to prevent diversion." Ex. 2, Kolodny Report at 62. He opines that "Defendants chose to ignore Purdue's greed and recklessness." *Id.* at 70. Based on reading another internal document, he claims that Defendants decided to "team up with known criminals to break the law." *Id.* at 72. He opines that

6

Defendants "turned a blind eye to the overt wrongdoing and criminal behavior of their partners in the supply chain." *Id.* 78. He claims that "numerous internal documents evidence how Defendants made conscious decisions to ignore the law." *Id.* at 83. He asserts from reading documents that "McKesson knew all along that its representations about improvements to its anti-diversion program were false." *Id.* at 92. He asserts from reading documents that, "[a]pparently, Defendants believe their expensive PR campaigns have worked." *Id.* at 104.

There is no factual basis for these unsubstantiated allegations. But for present purposes, the central point is that it is not proper for Dr. Kolodny or other experts to offer opinions on Defendants' knowledge, state of mind or intent. *In re: Rezulin*, 309 F. Supp. 2d at 547. These conclusions about Defendants' knowledge or state of mind or motivations are not proper expert opinions. Any such determinations are well within the fact-finding capabilities of the Court, and expert testimony is not appropriate under *Bard*.

### C. Opinions Regarding Defendants' Corporate Ethics or Responsibility

"Personal views on corporate ethics and morality are not expert opinions." *In re: Baycol Prods. Litig.*, 495 F. Supp. 2d 977, 1001 (D. Minn. 2007). The issue in this litigation is not whether Defendants are "liable in the court of public opinion, or before a divine authority for any ethical lapses." *In re: Rezulin*, 309 F. Supp. 2d at 543–45.

Nor may Plaintiffs' experts opine about what Defendants "should have done" differently based on personal ethical or moral views. *Bard*, 948 F. Supp. 2d 589, 611. In *Bard*, the court excluded proposed testimony that "patient safety should have been the highest priority for Bard, not the first to be cut," and that "Bard acted irresponsibly in the recruitment, training, and monitoring of surgeons." *Id.* at 610, 611. Similar opinions by Plaintiffs' experts should be excluded for the same reasons.

Dr. Kolodny, for example, opines that Defendants were "reckless and irresponsible" (Ex. 2, Kolodny Report at 39), "recklessly ignored" information (*id*. at 59), possessed "blatant disregard for public health and safety" (*id.* at 102), "refused to take responsibility for the epidemic" (*id.*), and "tried to shift the blame to others." *Id*. He opines that it was wrong for Defendants to "continu[e] to conduct business with companies that were cited for illegal or improper conduct (*id*. at 3, 37), and that it was "utterly reckless and unreasonable for Defendants to continue supplying opioid products" (*id*. at 65). He articulates his own view of what Defendants "should have done," asserting that they should have "made clear to the industry that improper marketing and retailing of narcotics would not be tolerated." *Id.* at 78. He offers his own view of corporate conduct, opining that Defendants "refused to take responsibility." *Id.* at 102.

Dr. Siegel devotes numerous pages to a largely undefined "public health responsibility to generally and specifically protect the health of the public" that he attributes to distributors. Ex. 5, Siegel Report at 19. This includes a responsibility to "ensure the products they sell are being prescribed and used legitimately." *Id.* at 20. Siegel then references various company statements related to "responsibility" generally. *Id.* at 19–32. Siegel explicitly acknowledges that his amorphous standard of "responsibility" goes well beyond Defendants' legal responsibilities relevant to this case. *Id.* at 31–32.

Dr. Smith, referring to a task force report he was not involved with, opines that "the industry's credibility is near zero." Ex. 6, Smith Report at 17–18. As a basis, Smith cites the report that he quotes from, and testified that distributors had a duty that "probably wasn't done." Ex. 8, Smith Dep., Sept. 22, 2020 at 102:1–10.

Dr. Mohr provides opinions on her view of corporate ethics, unmoored from any legal requirements, stating that "[a]ny company that participates in marketing a product . . . has a duty

to do so without causing harm." Ex. 4, Mohr Report 6. She asserts a "basic duty" to "avoi[d] situations where one's professional interests conflict with society's interests" (*id.* at 13) and opines there is a "higher duty" in selling "potentially harmful products to a vulnerable population" (*id*. at 15).

These opinions on "corporate ethics and morality" are not proper subjects for expert testimony. *In re: Baycol Prods. Litig.*, 495 F. Supp. 2d at 1001. Nor is it proper for these experts to offer opinions on what Defendants "should have done" differently. *Bard*, 948 F. Supp. 2d at 611.

### III. Conclusion

For the foregoing reasons, Defendants request that the Court exclude all expert testimony in three areas:

1. Testimony that merely restates factual information found in documents.
2. Testimony regarding Defendants' knowledge, intent or state of mind.
3. Testimony regarding Defendants' corporate ethics or responsibilities or duties.

Dated: October 2, 2020

Respectfully submitted,

*/s/ Timothy C. Hester*
Timothy C. Hester (DC 370707)
Laura Flahive Wu
Andrew P. Stanner
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
lflahivewu@cov.com
astanner@cov.com

*/s/ Paul W. Schmidt*
Paul W. Schmidt

COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: (212) 841-1000
pschmidt@cov.com

/s/ *Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*Counsel for McKesson Corporation*

/s/ *Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, WV 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

/s/ *Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Drug Corporation*

/s/ *Steven R. Ruby*
Michael W. Carey (WVSB No. 635)
Steven R. Ruby (WVSB No. 10752)
David R. Pogue (WVSB No. 10806)

10

Raymond S. Franks II (WVSB No. 6523)
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
drpogue@cdkrlaw.com
rsfranks@cdkrlaw.com

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
Jennifer G. Wicht
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard @wc.com
ahardin@wc.com
jwicht@wc.com

*Counsel for Cardinal Health, Inc.*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 2nd day of October, the foregoing **Memorandum of Law in Support of Defendants' Motion to Exclude Expert Testimony Regarding Defendants' Corporate Conduct** was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Timothy C. Hester*
Timothy C. Hester