**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF WEST VIRGINIA**

THE CITY OF HUNTINGTON,

Plaintiff,

v.

AMERISOURCEBERGEN DRUG CORPORATION, *et al.*

Defendants.

Civil Action No. 3:17-01362
Honorable David A. Faber

---

CABELL COUNTY COMMISSION,

Plaintiff,

v.

AMERISOURCEBERGEN DRUG CORPORATION, *et al.*

Defendants.

Civil Action No. 3:17-01665
Honorable David A. Faber

**DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF DR. RAHUL GUPTA**

Plaintiffs are too clever by half. They designated Dr. Rahul Gupta, a former commissioner and state health officer for West Virginia, as a non-retained expert and therefore did not submit the expert report required for retained experts by Federal Rule of Civil Procedure 26(a)(2)(B). At his deposition, however, Dr. Gupta testified that he has been retained by the Fitzsimmons Law Firm in the West Virginia Mass Litigation Panel opioid litigation and is being paid $500 per hour as an expert consultant. The Fitzsimmons firm is also counsel to Plaintiffs in these cases. According to Plaintiffs' counsel, Dr. Gupta's retention was "sometime ago."

Notwithstanding that he is a retained expert for Plaintiffs' counsel in the West Virginia opioid litigation (although purportedly not in this case), counsel did not provide an expert report for Dr. Gupta. In the deposition, counsel instructed him not to answer whether the opinions he has provided to Plaintiffs' counsel as a retained expert are the same opinions he will offer (and did offer in a direct examination conducted by Plaintiffs' counsel in the deposition) at trial as a supposedly non-retained expert. In fact, Dr. Gupta offered opinions about abatement, which Plaintiffs' counsel admit is the subject about which he has been retained as an expert consultant.

The plain fact is that Dr. Gupta is not a neutral, third-party witness "whose testimony, while factual in nature, may include information that may be considered 'expert testimony.'"[1] He has been retained as an expert by counsel for Plaintiffs, and on the very subject matter about which they propose to offer his testimony in this case. Accordingly, the Court should exclude Dr. Gupta's testimony because Plaintiffs failed to provide the expert report required for retained experts by Rule 26(a)(2)(B)—failed even to provide the summary of facts and opinions required for non-retained experts by Rule 26(a)(2)(C). In the alternative, the Court should require Plaintiffs to comply with Rule 26(a)(2)(B) and permit Defendants to depose Dr. Gupta again regarding his opinions.

## THE FACTS

### Disclosure of Dr. Gupta

1. On August 3, 2020, Plaintiffs disclosed their expert witnesses. That filing listed 20 retained experts for whom Plaintiffs provided reports as required by Rule 26(a)(2)(B). It also included a list of 21 witnesses "who are not retained experts and are not required to provide

---

[1] Pl. Certificate of Service of Plaintiffs' Expert Reports and Disclosure of Plaintiffs Experts (Dkt. 825), p. 3.

written reports, but whose testimony, while factual in nature, may include information that may be considered "'expert testimony.'" Plaintiffs included Dr. Rahul Gupta in that list of non-retained experts.[2]

2. Plaintiffs did not provide a written expert report for Dr. Gupta, nor did they provide a disclosure of (i) the subject matter about which he would testify or (ii) a summary of the facts and opinions about which he would testify, as required by Rule 26(a)(2)(C).[3]

**Mr. Colantonio's Role**

3. Defendants deposed Dr. Gupta on September 11, 2020. Counsel introduced themselves for the record at the outset. Mr. Colantonio said, "Mark Colantonio, Bob Fitzsimmons representing Doctor Gupta for purposes of this deposition."[4] Mr. Farrell said, "Paul Farrell, Jr. and Anne Kearse for Plaintiffs."

3. Two months earlier, on July 14, 2020, Mr. Colantonio had entered an appearance "as counsel for Plaintiffs" in this action.[5]

4. After the lunch break, by prior agreement, Defendants passed the witness to Plaintiffs to conduct a direct examination, to be followed by a resumption of Defendants' questioning. Although he had introduced himself as Dr. Gupta's personal counsel, Mr. Colantonio conducted the direct examination, saying again, "I'm counsel for Doctor Gupta. I was actually going to ask Dr. Gupta questions now if that's okay with everybody."[6]

---

[2] *Id*.

[3] That failure was true for all 21 non-retained experts and is the subject of Defendants' Motion to Exclude Undisclosed Expert Testimony from Non-Retained Expert Witnesses, also filed this day.

[4] Appendix ("App.") 5 (Deposition ("Dep.") of Dr. Rahul Gupta (Sept. 11, 2020), p. 8).

[5] Notice of Appearance (Dkt. 729).

[6] App. 32 (Gupta Dep. at 115).

5. Counsel for McKesson immediately objected: "the good doctor is not a party, so he's not entitled to be run through a direct examination by his personal counsel." Counsel for Cardinal Health sought clarification: "you are counsel for Cabell County and the City of Huntington in the cases before Judge Faber …. [Y]our position is that you are questioning Doctor Gupta today as his counsel … not on behalf of the plaintiffs in this case?"[7]

6. Mr. Colantonio acknowledged that he had entered an appearance in this case as counsel for Plaintiffs; also acknowledged that he had introduced himself as personal counsel for Dr. Gupta; and stated that "[t]here's no question that … myself and Mr. Fitzsimmons represent both Dr. Gupta as a witness in this case, and we have—and still do—represent Huntington and Cabell County in connection with the litigation."[8]

7. Ms. Kearse said, "Mr. Colantonio's firm does not represent the City of Huntington."[9] (This was inaccurate; in addition to entering appearances on the docket for "Plaintiffs," the Fitzsimmons firm has repeatedly appeared on behalf of the City of Huntington in other depositions.[10])

8. In answer to questions from Defendants' counsel about on whose behalf he intended to question Dr. Gupta, Mr. Colantonio said, "Well, I would take the position that we're

---

7 App. 33 (*id*. at 117).

8 App. 33 (*id*. at 117-18).

9 App. 63 (*id*. at 239).

10 *See, e.g.*, App. 94 (Deposition of David Potters, (Aug. 14, 2020), p. 8) ("MR. ROBERT FITZSIMMONS: Bob Fitzsimmons on behalf of the Plaintiff, Huntington and Cabell County. MR. CLAYTON FITZSIMMONS: Clayton Fitzsimmons on behalf of the Plaintiff, City of Huntington."); App. 3 (Deposition of Karen Bowling (Aug. 20, 2020), p. 6) ("MR. COLANTONIO: Mark Colantonio and Clayton Fitzsimmons, representing City of Huntington and Cabell County Commission.").

questioning at this time on behalf of both."[11] He added, "He's not a party; you're right about that. … I don't believe he's a retained expert."[12]

9. When Mr. Colantonio completed his questioning, he volunteered, "So just to be clear, we have appeared in this case in specific instances in deposition, so our role in this case as counsel has been … limited to depositions, and today we are appearing as counsel to Doctor Gupta … his personal counsel. So that's our role today, as his personal counsel."[13] Asked whether that statement "amend[s] your … statement at the outset of the questioning that you were questioning him on behalf of the County," Mr. Colantonio answered, "Yes. We're representing him today. That's our role."[14]

**Dr. Gupta's Expert Role**

10. When first asked whether he had been retained as an expert consultant for the West Virginia opioid litigation, Dr. Gupta answered, "So, yes for MLP and, yes."[15] He testified that Mr. Colantonio's firm and the Napoli Shkolnik firm had both retained him and that he was being paid $500 per hour.[16] Mr. Colantonio confirmed that his firm had done so.[17]

11. Mr. Colantonio represented that he has not paid Dr. Gupta in this case.[18]

---

[11] App. 33 (Gupta Dep. at 118).

[12] App. 33 (*id*. at 119).

[13] App. 50 (*id*. at 185-86).

[14] App. 50 (*id*. at 186-87) ("Ruby: [I]t's now not on behalf of the County or the City; is that right? … Colantonio: Yea, we're representing him personally.").

[15] App. 60 (*id*. at 228).

[16] App. 61 (*id*. at 229).

[17] App. 61 (*id*. at 229) ("Colantonio: Yes. And by Napoli Shkolnik as well."); App. 61 (*id.* at 231, 287) ("we retained in the MLP"); App. 75 (*id.* at 288) ("we have engaged him as a consulting expert in the MLP litigation"). Mr. Shkolnik said, however, ""he's not retained by any firm other than ours …." App. 62 (*id*. at 236).

[18] App. 62 (*id*. at 233).

12. Ms. Kearse stated that "his testimony will be very factual in nature."[19]

13. Mr. Colantonio and Mr. Shkolnik objected and instructed Dr. Gupta not to answer whether the opinions given in his deposition were the same opinions provided as a retained expert in the MLP cases.[20]

14. After twelve pages of colloquy between counsel—including a break requested by Plaintiffs' counsel for them to talk to Dr. Gupta off the record—he returned to testify that the opinions expressed in his deposition testimony were not the opinions provided to Mr. Colantonio as an expert consultant.[21] And despite his testimony twelve pages earlier that Mr. Colantonio and the Napoli Shkolnik firm had retained him and were paying him $500 per hour, he now testified that no one from Mr. Colantonio's firm approached him to serve as an expert, that he was not sure he had been approached to serve as an expert consultant at all, and he had just had "a good discussion" with Mr. Shkolnik and would "just, you know, make a decision based on being available and time and other things."[22]

15. Defendants' counsel asked Mr. Colantonio what the subject matter of Dr. Gupta's expert consulting is. He answered that "[t]he scope of his retention was just to talk about abatement."[23]

---

[19] App. 62 (*id*. at 234).

[20] App. 61-63 (*id*. at 230-31, 236, 238).

[21] App. 64 (*id*. at 241).

[22] App. 64 (*id*. at 241-42).

[23] App. 75-76 (*id*. at 288, 289) ("[I]t was only abatement. That's all it was."); App. 76 (*id.* at 290) ("We retained him sometime ago … in the MLP to talk about abatement. … It was about abatement and that's it.")

**Dr. Gupta's Testimony**

16. In his direct examination of Dr. Gupta, Mr. Colantonio questioned Dr. Gupta about abatement.

17. Before starting his questioning, Mr. Colantonio explained his intention to ask the Dr. Gupta "what conclusions you have been able to reach concerning what you've done in West Virginia and hopefully ***to give us some ideas about or opinions about how we might be able to potentially fix the problem***."[24]

18. Mr. Colantonio asked Dr. Gupta whether he had "a high degree of understanding" about not only the timeline, causes and consequences of the opioid epidemic in West Virginia, but also "the most important question—potentially ***how to fix it or abate it***."[25] Dr. Gupta said he did.

19. And Mr. Colantonio asked, "You believe that that addiction can be—I don't want to use the word 'cured, fixed.' Can it be abated, can … that problem be solved?" Dr. Gupta answered that "it could be solved basically two ways"—and proceeded to explain at length just how.[26]

20. Mr. Colantonio also asked Dr. Gupta whether he could "quantify the cost of the effects on NAS babies or a single NAS baby."[27] Dr. Gupta testified that the "cost we calculated was a little over a million dollars per baby."[28]

---

[24] App. 32 (*id*. at 116). All emphases are added unless otherwise indicated.

[25] App. 38 (*id*. at 139-40).

[26] App. 43-44 (*id*. at 158-161).

[27] App. 46-47 (*id*. at 172-73).

[28] App. 47 (*id*. at 174).

21. Mr. Colantonio also elicited Dr. Gupta's opinion that he and everyone in West Virginia government did what they could with available resources to abate the epidemic.[29]

## ARGUMENT

### A. The Court Should Exclude the Direct-Examination Deposition Testimony of Dr. Gupta

Mr. Colantonio conducted a direct examination of Dr. Gupta that runs to 66 pages. If the Court takes Mr. Colantonio at his word that he appeared at the deposition only in his capacity as personal counsel to Dr. Gupta—the position he took in (i) identifying himself for the record, (ii) commencing the direct examination, and (iii) clarifying his role after completion of the examination—then the direct examination was impermissible. Only parties can examine the witness; counsel for a third-party witness has no such right. Counsel for McKesson made an immediate, standing objection to the questioning on just this ground, and counsel for Cardinal Health followed suit.[30]

---

[29] App. 47 (*id*. at 175-76).

[30] App. 33 (*id*. at 117) ("I just want to interpose a -- I'll call it a standing objection, that as far as I know, the doctor -- the good doctor is not a party, so he's not entitled to be run through a direct examination by his personal counsel. I won't object to every question as we go along, but I do want the record to have my objection on it. Thank you."). Counsel for Cardinal Health pressed for clarification, at which point Mr. Colantonio back-pedaled and said he was conducting the examination both as personal counsel for Dr. Gupta and counsel for Plaintiffs. App. 33 (*id.* at 118).

Upon completion of the direct examination, when Mr. Colantonio reverted to the position that he was acting as counsel only for Dr. Gupta, counsel for Cardinal Health objected. App. 50 (*id*. at 186) ("[W]e would certainly preserve any … objection that might relate to it. But Mark, just so I'm clear on your position, does that amend your -- MR. COLANTONIO: Yes. MR. RUBY: -- statement at the outset of the questioning that you were questioning him on behalf of the County -- MR. COLANTONIO: Yes. We're representing him today. That's our role.").

**B. The Court Should Bar Any Expert Testimony by Dr. Gupta**

Once counsel enters an appearance on behalf of a party, of course, he represents that party in that case for all purposes unless and until he obtains the court's permission to withdraw. Counsel is not free to treat his appearance like a hat that he can put on or take off from deposition to deposition or from hearing to hearing. Say what he might—and what he said certainly changed from moment to moment—Mr. Colantonio entered an appearance for both the City of Huntington and Cabell County on July 14, 2020, and he therefore represented both Plaintiffs at Dr. Gupta's September 11, 2020 deposition.

Why, then, Mr. Colantonio's dance—"I'm counsel for Doctor Gupta"; then "I would take the position that we're questioning at this time on behalf of both"; then, later, "we are appearing as counsel to Doctor Gupta … his personal counsel. So that's our role today, as his personal counsel"? The answer appears plain enough. Plaintiffs recognized the inconsistency and implausibility of acknowledging, on the one hand, that they have retained Dr. Gupta in the MLP opioid litigation—litigation also brought by West Virginia cities and counties that asserts the same public nuisance claim and seeks the same remedy of abatement—and arguing, on the other hand, that he is not a retained expert in this case but nevertheless may offer opinion testimony. The Court cannot blink the reality that Dr. Gupta, who is admittedly an expert retained and paid by Mr. Colantonio in the copycat state litigation is also retained for all practical purposes in this case. It defies common sense to credit the argument that Dr. Gupta is a retained expert solely for the MLP litigation, where state court rules do not require expert reports, but in this case is a neutral, non-retained factual witness who just happens to have coextensive opinions "that may be considered 'expert testimony.'"[31]

---

31 *See* n. 1, *supra*.

It is no answer that "his testimony will be very factual in nature" (per Ms. Kearse), because the direct examination conducted by Mr. Colantonio repeatedly and expressly asked for Dr. Gupta's opinions.[32] Nor is it an answer that "[t]he scope of his retention [in the MLP cases] was just to talk about abatement" (per Mr. Colantonio), because Mr. Colantonio questioned Dr. Gupta for purposes of this case about abatement. In short, Dr. Gupta testified in this case about the subject matter for which Plaintiffs' counsel are paying him as a retained expert in the MLP litigation.

Accordingly, Plaintiffs were required to submit an expert report for Dr. Gupta. Because they did not do so, the Court should bar his testimony.

### C. The Court Should Not Permit Dr. Gupta to Testify Without Submitting an Expert Report

Because Dr. Gupta is, in fact, a retained expert, the Court should not permit him to testify absent compliance with Rule 26(a)(2)(B). The alternative relief that the Court might consider under other circumstances—e.g., requiring Plaintiffs belatedly to submit an expert report and present Dr. Gupta for a further deposition about the report—is now impractical and prejudicial to Defendants. The parties have just completed 36 expert depositions in 25 days. We are two weeks away from the beginning of trial and focused on trial preparation. It is far too late in the day to be submitting an additional expert report and scheduling an additional expert deposition—particularly when Plaintiffs have identified 20 retained experts and another 20 non-retained experts (not counting Dr. Gupta).

Enough is enough: enough experts and enough gamesmanship.

Dated: October 2, 2020

---

32 *See e.g.*, App. 36, 38, 39, 40, 42, 45 (Gupta Dep. at 129, 140, 143-44, 148, 154-55, 165-66).

Respectfully submitted,

**CARDINAL HEALTH 110, LLC**

By: */s/ Steven R. Ruby*
Steven R. Ruby (WVSB #10752)
sruby@cdkrlaw.com
CAREY DOUGLAS KESSLER &
RUBY PLLC
901 Chase Tower
707 Virginia Street, East
Charleston, WV 25301
Telephone: (304) 345-1234
Facsimile: (304) 342-1105
*Counsel for Cardinal Health 110, LLC, in all cases except Kanawha v. Rite Aid of Maryland, et al.*

Enu Mainigi (visiting attorney)
emainigi@wc.com
F. Lane Heard (visiting attorney)
lheard@wc.com
Steven M. Pyser (visiting attorney)
spyser@wc.com
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000
*Counsel for Cardinal Health 110, LLC*

**AMERISOURCEBERGEN DRUG CORPORATION**

By: */s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, WV 25322
Telephone: (304) 340-1000
Facsimile: (304) 340-1050
gcallas@jacksonkelly.com
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Telephone: (215) 851-8100
Facsimile: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com
*Counsel for Defendant AmerisourceBergen Drug Corporation*

**McKESSON CORPORATION**

By: */s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

By: */s/ Carol Dan Browning*
Carol Dan Browning
Stites & Harbison, PLLC
400 West Market Street
Suite 1800
Louisville, Kentucky 40202
Telephone: (502) 587-3400
Facsimile: (502) 587-6391
cbrowning@stites.com

By: */s/ Timothy C. Hester*
Timothy C. Hester
Mark H. Lynch
Christian J. Pistilli
Laura Flahive Wu
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
mlynch@cov.com
cpistilli@cov.com
lflahivewu@cov.com

*Counsel for McKesson Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2020, the foregoing ***Defendants' Motion to Exclude Testimony of Dr. Rahul Gupta*** was filed using the Court's CM/ECF system, which will serve notification of such filing on all counsel of record.

*/s/ Steven R. Ruby*
Steven R. Ruby (WVSB #10752)