# EXHIBIT 7

1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK: PART 48
-------------------------------------------------x

IN RE: OPIOID LITIGATION

                              INDEX NO.:400000/2017

-------------------------------------------------x

                              August 19, 2020
                              Central Islip, New York


            MINUTES OF FRYE HEARING
            (Testimony of James Rafalski

B E F O R E:       HON. JERRY GARGUILO
                   Supreme Court Justice

A P P E A R A N C E S:

SIMMONS HANLY CONROY, LLC
**Attorneys for Suffolk County**
112 Madison Avenue
New York, New York 10016
BY:   PAUL J. HANLY, JR., ESQ.
      JAYNE CONROY, ESQ,
      (212) 784-6401
      phanly@simmonsfirm.com
      jconroy@simmonsfirm.com


NAPOLI SHKOLNIK, PLLC
**Attorneys for Nassau County**
400 Broadhollow Road, Suite 305
Melville, New York 11747
BY:   HUNTER SKOLNICK, ESQ.
      SALVATORE C. BADALA, ESQ.
      JOSEPH L. CIACCIO, ESQ.
      (212)397-1000
      pnapoli@napolilaw.com
      sbadala@napolilaw.com
      jciaccio@napolilaw.com

```
 1                       Cross/Dr. McCann                      91
 2          A    Yes.
 3          Q    In your analysis, your computers look to
 4    see whether any orders for prescription opioids
 5    shipped to certain chain or retail pharmacies
 6    exceeded the thresholds set by each of the five
 7    flagging methods; is that generally right?
 8          A    Yes.
 9          Q    When an order is flagged by one of your
10    flagging methods, all that means is that the order
11    exceeded the threshold set by the method, right?
12          A    Correct.
13          Q    You're not saying that a flagged order
14    is suspicious, right, sir?
15          A    Correct.
16          Q    You're not saying that a flagged order
17    should not have been shipped?
18          A    Correct.
19          Q    You're not saying that order, if it was
20    flagged, you're not saying it was diverted?
21          A    Correct.
22          Q    Dr. McCann, you are not an expert in
23    suspicious order monitoring, correct?
24          A    Correct.
25          Q    You didn't review the suspicious order
```

```
 1                    Cross/Dr. McCann                    92
 2     monitoring programs for any Defendant in this case,
 3     correct?
 4              A    Correct.
 5              Q.   And you have no opinion on any
 6     Defendants' suspicious order monitoring system,
 7     correct, sir?
 8              A    Correct.
 9              Q.   You don't know whether any Defendant has
10     ever used any of the five flagging methods that you
11     used?  You didn't look at that, right?
12              A    Correct.
13              Q.   You also don't know whether the DEA has
14     endorsed any of the five flagging methods that you
15     used, right, sir?
16              A    Correct.
17              Q.   You don't know whether the New York
18     Bureau of Narcotics Enforcement has endorsed any of
19     the five flagging methods that you used?
20              A    Correct.
21              Q.   You have no opinion whether any of the
22     five flagging methods that you used are legally
23     required, right, sir?
24              A    Correct.
25              Q.   You have no opinion on whether any of
```

```
 1                    Cross/Dr. McCann                    93
 2    the five flagging methods you applied are
 3    appropriate for identifying suspicious orders,
 4    right?
 5         A    Correct.
 6         Q.   There may be other appropriate methods
 7    for flagging the suspicious orders besides the five
 8    that you used, isn't that right?
 9         A    Yes.
10         Q.   And, in fact, the methods that you
11    applied may not be appropriate, right?
12         A    Correct.
13         Q.   You know that the Plaintiffs have
14    retained a consultant in this case named Jim
15    Rafalski, right, sir?
16         A    Yes.
17         Q.   Did you watch or listen to Mr.
18    Rafalski's testimony on Monday or Tuesday of this
19    week?
20         A    No.
21              THE COURT:  What was the answer?
22              THE WITNESS:  No.
23              THE COURT:  Thank you.
24    BY MS. SWIFT:
25         Q.   So you're not aware that Mr. Rafalski
```

```
 1                    Cross/Dr. McCann                    97
 2   antitrust, the pharmaceuticals.  Do you remember
 3   that?
 4          A    Yes.
 5          Q.   You're not aware of any peer reviewed
 6   articles on any of the flagging methods that you
 7   applied in this case, right, sir?
 8          A    Correct.
 9          Q.   And you don't have an opinion on whether
10   any of your five flagging methods is appropriate for
11   suspicious order monitoring, right, sir?
12          A    Correct.
13          Q.   You don't have an opinion on whether any
14   of the five flagging methods you used is generally
15   accepted in the industry, correct, sir?
16          A    Correct.
17          Q.   You have no opinion whether there is any
18   consensus in the industry about using any of the
19   five flagging methods that you used, right?
20          A    Yes.
21          Q.   Dr. McCann, now I'd like to ask you some
22   questions about key assumption that you used in
23   applying all five of your methods, okay?
24          A    Yes.
25          Q.   You used the five flagging methods only
```

```
 1                  Cross/Dr. McCann                    114
 2    office interacting with any of the Plaintiffs'
 3    consultants for purposes of preparing your report,
 4    correct?
 5         A    I'm sorry, correct.
 6         Q.   You never talked to Mr. Rafalski to get
 7    an understanding of how the five flagging methods
 8    were supposed to be applied?
 9              I can't hear your answer, sir.
10         A    I'm sorry, correct.  I may be speaking
11    too quickly as you are finishing your question and
12    it may not be coming through.  I apologize.
13         Q.   That's okay.  I'll ask it again so we
14    have a clear record.
15              You never talked to Mr. Rafalski to get
16    an understanding of how the five flagging methods
17    were supposed to be applied, correct?
18         A    Correct.
19         Q.   Mr. Rafalski did not review the computer
20    code written for your five flagging methods,
21    correct, sir?
22         A    I found out one way or another.
23         Q.   I'm going to show you your same
24    transcript from May of 2019.
25              MR. SHKOLNIK:  Which date, please,
```

```
 1                    Cross/Dr. McCann                    117
 2        recall, not whether you're truthful or not.
 3        You were placed under oath that day, Doctor?
 4             THE WITNESS:  Yes.
 5             THE COURT:  Yes?
 6             THE WITNESS:  Yes.
 7             THE COURT:  Okay.  And you answered all
 8        the questions that were put to you as best
 9        you could, correct?
10             THE WITNESS:  Yes.
11             THE COURT:  And the question is, was
12        that question and answer put to you as a
13        question form and your answer, correct; is
14        that accurate?
15             THE WITNESS:  Yes -- well, I don't
16        remember the question and answer.  All I can
17        do is read the transcript and see it.
18        Q.   Do you take issue with the question and
19   answer that you see on the screen right now?
20        A    No.
21        Q.   Thank you, sir.
22             You never asked Mr. Rafalski to check
23   your work to make sure that you had applied the five
24   flagging methods the way he intended, correct, sir?
25        A    Correct.
```

```
 1                  Cross/Dr. McCann                    122
 2    Daubert motions there?  I'll blow it up on the
 3    screen.  Do you see that?  It says both Plaintiffs
 4    and Defendants move to exclude the expert testimony
 5    and other evidence presented by the other party; do
 6    you see that?
 7          A     I see it.
 8          Q.    Now I'm going to show you page 8 of the
 9    Freddie Mac opinion.
10               MS. SWIFT:  My computer appears to have
11          frozen.  If we have Danny Nagretty (phonetic)
12          on the line.  Danny, could you pull up X5.8,
13          please.
14          Q.    And the part that I'd like to call out
15    is on the left-hand side of the page, it's a
16    paragraph in the middle that says (READING:)  After
17    listening to -- if you can call that paragraph out
18    for us Danny.  Thank you very much.
19               It reads (READING:)  McCann's analysis
20    changed so many times in important ways and was so
21    internally inconsistent that I found it unreliable
22    and unpersuasive.
23               After listening carefully to all of his
24    testimony about his two inconsistent event studies,
25    I could not credit his testimony, and I have serious
```

```
1                    Cross/Dr. McCann                    123
2    reservations about the admissibility of such poorly
3    supported opinions.
4              The McCann being discussed in that
5    paragraph is you, sir, correct?
6         A    Correct.
7              MS. SWIFT:  You can take that down,
8         Danny.  Thanks very much for your help.
9              THE COURT:  Miss Swift, how does that
10        translate in the hearing, our hearing?
11             MS. SWIFT:  Your Honor, it goes to show
12        that Mr. McCann's methods of analyzing data,
13        large data sets, as he did in this case, have
14        been deemed unreliable by other courts.
15             THE COURT:  I noted, I think yesterday
16        or the day before yesterday, I don't mean to
17        be devil's advocate, but I did note that each
18        of you, I think all sides, had submitted, in
19        connection with all these Frye applications,
20        copies of decisions from the MDL Court,
21        particularly from docket -- I think it was
22        docket Number 2494, all right.
23             MS. SWIFT:  Yes, your Honor.
24             THE COURT:  I have that.  And I
25        mentioned it yesterday or the day before --
```

```
 1                     Cross/Dr. McCann                    163
 2      the pharmacy counter, correct, sir?
 3              A    Correct.
 4              Q.   You did not perform any analysis at all
 5      of prescriptions filled at any of those pharmacies?
 6              A    Correct.
 7              Q.   You didn't do any work to examine
 8      whether the medications reflected in the flagged
 9      orders, whether those medications were dispensed to
10      patients pursuant to lawfully written prescriptions,
11      right?
12              A    Correct.
13              Q.   So you don't know whether any of the
14      flagged orders you identified led to a single
15      prescription that should not have been filled,
16      right?
17              A    Correct.
18              Q.   You also have no opinion that any order
19      that you flagged was diverted for an unlawful use,
20      correct?
21              A    Correct.
22              Q.   You have no opinion that any flagged
23      order was even likely to be diverted, correct, sir?
24              A    Correct.
25              Q.   You have no opinion that any of your
```

```
 1                    Cross/Dr. McCann                    164
 2     flagged orders was suspicious in any way, correct?
 3          A    Correct.
 4          Q.   You have no opinion that any Defendants'
 5     failure to comply with any one of your five flagging
 6     methods means that Defendants did anything wrong,
 7     right?
 8          A    I'm sorry, could you ask that again,
 9     please.
10          Q.   Sure.  You're not offering any opinion
11     that any Defendants' failure to comply with one of
12     your five flagging methods means that Defendants did
13     anything wrong, correct?
14          A    Correct.
15          Q.   You don't even have an opinion that any
16     Defendant actually did fail to comply with your
17     flagging methods, right?
18          A    Correct.
19          Q.   You have no opinion that any Defendant
20     oversupplied opioids?
21          A    I don't have an expert opinion on that.
22          Q.   You're not offering an opinion that any
23     Defendant oversupplied opioids, correct, sir?
24          A    Correct.
25          Q.   You're not offering an opinion that any
```