# EXHIBIT 8

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
 2

 3     ***********************************************

       THE CITY OF HUNTINGTON,
 4

                    Plaintiff,
 5

       v.                         CIVIL ACTION NO. 3:17-01362
 6

       AMERISOURCEBERGEN DRUG
 7     CORPORATION, et al,

 8                  Defendants.

 9
10     CABELL COUNTY COMMISSION,
11                  Plaintiff,
12     vs.
13
       AMERISOURCEBERGEN DRUG
14     CORPORATION, et al,
15                  Defendants.
16     ***********************************************
17
18         Videotaped and videoconference deposition of
19     NANCY YOUNG, PH.D., taken by the Defendants pursuant to
20     the West Virginia Federal Rules of Civil Procedure, in the
21     above-entitled action, pursuant to notice, conducted
22     virtually via Zoom, before Twyla Donathan, Registered
23     Professional Reporter and Notary Public, on the 15th day
24     of September, 2020.
```

Page 137

1  4:07.  Why don't we just plan on coming back at 4:40,
2  Eastern time, 1:40 your time.
3              THE DEPONENT:  4:40.  Got it.
4              VIDEOGRAPHER:  The time is 4:08.
5  We're now going off the record.
6              (A recess was taken.)
7              VIDEOGRAPHER:  The time is 4:54.
8  We're now back on the record.
9  BY MS. GEIST:
10      Q   Did you have a nice lunch, Dr. Young?
11      A   I did.  I did my traditional get outside of
12  the house and walk around the yard for at least ten
13  minutes.  So that was good.
14      Q   Good for you.  I'm jealous.
15      A   Beautiful day outside.
16      Q   I'm glad.  Okay.  So before the break, I
17  had indicated to you that I wanted to shift now and
18  talk to you about the cost estimates that you did in
19  connection with your report.  So it probably makes
20  sense for us to start with page 8, and this is the
21  chart, if you will, for Population 1, Pregnant Women
22  With Opioid Use Disorder.
23              And then you have specific cost estimates
24  for each of the five populations for which you are

Page 138

1  suggesting interventions and programs; is that a fair
2  overall summary?
3       A    Yes, it is.
4       Q    Okay.  Now, in calculating the cost
5  estimates for the interventions or programs you talk
6  about for the five main populations, am I correct as
7  I read your report that you did not attempt to review
8  or determine the responsibility for Cabell County, if
9  any, to pay for any of those interventions or
10 programs?
11      A    I looked at some of the budget data, but I
12 did not.  That was not what I was asked to do.
13      Q    Okay.  So just so I'm clear, you have cost
14 estimates for each of the five populations in your
15 report.  You are not in any way providing opinions or
16 making a determination as to what cost may be borne
17 or shouldered by Cabell County-Huntington should any
18 of these implementations occur; is that correct?
19      A    That's correct.
20      Q    And in calculating the cost estimates that
21 are in your report, you did not take into account the
22 current federal, state, other grant funding or
23 existing programs paid by third parties and not
24 Cabell County-Huntington; is that also correct?

Page 139

1       A     That is true.
2       Q     Okay.  And we had looked earlier at the
3    City of Solutions document, A Guide to What Works and
4    What Does Not, which has been marked as Exhibit 22,
5    and you told me that you did not read this report and
6    consider it in reaching your opinions, correct?
7       A     Correct.
8       Q     Are you aware that the City of Solutions
9    Guide contains quite an extensive discussion of
10   program costs, you know, per program that is and has
11   been available to the five populations in your report
12   in Cabell County?
13      A     I did not look at that specifically.
14      Q     Would that have been -- If you were aware
15   that that information was there, would that have been
16   important in forming your opinions with respect to
17   cost estimates in Cabell County-Huntington, actually
18   look at what the programs have cost and who has paid
19   for them as outlined in the City of Solutions?
20              MR. ARNOLD:  Objection.  Form.
21      A     Is the question would that have been
22   important, or would that have been -- What was the
23   question part of that?
24      Q     If you had known that there were actual

Page 140

1   cost figures, data, reported in the City of Solutions
2   document outlining the various programs, and from the
3   City of Huntington's perspective, the success of
4   those programs, if you had known that that included a
5   discussion of costs, meaning how these programs have
6   been paid and whether or not there is any
7   out-of-pocket expense borne by Cabell
8   County-Huntington, would that have been important in
9   your opinions with respect to cost estimates?
10       A    I definitely would have looked at those.
11  But, again, in context of these programs have been
12  put in place by federal grants that won't continue.
13       Q    Well, we went over that earlier.  So now
14  I'm going to have to ask you another question.
15  Federal grants that won't continue.  You cannot say
16  with certainty -- and again, you understand you're
17  providing expert opinions in this case on behalf of
18  Plaintiffs, correct?
19       A    That's correct.
20       Q    You understand you need to give your
21  opinions with the requisite, you know, reasonable --
22  strike that.  You understand that you need to testify
23  to your opinions with a reasonable degree of
24  professional or scientific certainty?  Do you