# EXHIBIT 9

```
                                                            Page 1

 1         IN THE UNITED STATES DISTRICT COURT
        FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
 2
 3
      * * * * * * * * * * * * * * * * * * * * *
 4
      THE CITY OF HUNTINGTON,
 5
               Plaintiff,
 6
      vs.                                  CIVIL ACTION
 7                                         NO. 3:17-01362

      AMERISOURCEBERGEN DRUG
 8    CORPORATION, et al.,
 9             Defendants.
10    _____
11    CABELL COUNTY COMMISSION,
12             Plaintiff,
13    vs.                                  CIVIL ACTION
                                           NO. 3:17-01665
14    AMERISOURCEBERGEN DRUG
      CORPORATION, et al.,
15
               Defendants.
16
      * * * * * * * * * * * * * * * * * * * * *
17
18
19         Videotaped and videoconference deposition
      of DR. G. CALEB ALEXANDER taken by the Defendants
20    under the Federal Rules of Civil Procedure in the
      above-entitled action, pursuant to notice, before
21    Teresa S. Evans, a Registered Merit Reporter, all
      parties located remotely, on the 18th day of
22    September, 2020.
23
24
```

Page 222

1  A.  I am --
2          MR. BURNETT:  Objection.
3  A.  I'm sorry.  I am aware of St. Mary's; I'm
4  not -- you know, I don't know the formal sort of
5  corporate relationship or flow of money or
6  resources between this project and St. Mary's or
7  the corporation that it represents.
8  Q.  And you're not aware or offering any
9  opinion that the City or the County needs to spend
10 any funds, spend any money, relating to Project
11 Engage.  Is that correct?
12 A.  I wasn't asked to identify who pays the
13 bills.  I was -- I was simply asked to identify
14 what I thought would be an evidence-based abatement
15 program for this community.
16 Q.  And in terms of what you just said, Doctor
17 Alexander, so just to confirm, you don't have any
18 opinion in this case that the City of Huntington or
19 Cabell County generally has been responsible for
20 funding any of the programs that they have had in
21 place to date.  Is that correct?
22 A.  And here you --
23         MR. BURNETT:  Objection.
24 A.  Here you mean beliefs or legal opinions?

Page 223

1  Q. You're not offering opinions in the case,
2  as an expert, that Cabell County or the City of
3  Huntington has had to fund any of the programs that
4  they have decided to put in place to address the
5  opioid epidemic.
6          MR. BURNETT: Objection.
7  A. No. No, I'm not.
8  Q. Okay. And in terms of future payments,
9  you're not offering any opinions that should your
10 plan for abatement be put in place in Cabell
11 County/Huntington that any aspect of the plan would
12 need to be paid for or funded by the City or
13 County. You're not offering opinions as to that;
14 is that correct?
15 A. Yeah, that's for the judge to decide,
16 you're correct.
17 Q. Okay.
18 A. Or somebody -- it's not for me to decide,
19 let me put it that way.
20 Q. Not for you to decide who pays, correct?
21 A. Correct.
22 Q. You have a plan in place, hopefully a very
23 comprehensive plan - hopefully we'll get through
24 that - but you don't have any opinions as to the

Page 224

1    allocation of funds:  Who will pay, who should pay,
2    how it's divvied up; is that fair?
3        A.   Yes, that's fair.
4        Q.   Okay.  Now, back to what the community has
5    done in terms of prevention and early intervention,
6    I assume you are very familiar with the Quick
7    Response Team?
8        A.   Yes, I am.
9        Q.   And if you look at The City of Solutions
10   guidebook, you can read about the Quick Response
11   Team on page 18 and the pages following after.  And
12   who makes up the Quick Response Team, Doctor
13   Alexander?
14       A.   Well, generally this is a team -- I mean,
15   it varies place to place and community to
16   community, but in general, this includes some sort
17   of health care professional or addiction expert,
18   often a -- at times, it can include a faith-based
19   leader or someone from a faith community.
20                It can have a peer recovery coach, can
21   sometimes participate in these teams.  The teams
22   may or may not include a law enforcement officer.
23   At times, there's concern that that may, you know,
24   scare people off, for lack of a better word.