# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**THE CITY OF HUNTINGTON,**
  **Plaintiff,**

**v.**           **CIVIL ACTION NO. 3:17-01362**

**AMERISOURCEBERGEN DRUG
CORPORATION, et al.,**
  **Defendants.**

_____

**CABELL COUNTY COMMISSION,**
  **Plaintiff,**

**v.**           **CIVIL ACTION NO. 3:17-01665**

**AMERISOURCEBERGEN DRUG
CORPORATION, et al.,**
  **Defendants.**

### PLAINTIFF CITY OF HUNTINGTON, WEST VIRGINIA'S
### SUPPLEMENTAL RESPONSES AND OBJECTIONS TO
### DISTRIBUTOR DEFENDANTS' FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, the Case Management

Order in *In re National Prescription Opiate Litigation* (Dkt. No. 232 in No.:17-cv-2804), ESI

Protocol entered in this matter and Discovery Orders issued by this Court, the City of Huntington,

West Virginia ("Plaintiff") hereby responds to Distributor Defendants'[1] First Set of Interrogatories

(the "Interrogatories" and, each individually, an "Interrogatory"), as follows:

---

[1] For purposes of these Responses, "Distributor Defendants" or "Distributors" refers to the following entities who served collective requests on October 25, 2019: AmerisourceBergen Drug Corporation, Cardinal Health, Inc., H.D. Smith Corporation, and McKesson Corporation.

## PRELIMINARY STATEMENT AND OBJECTIONS

Plaintiff objects to each Interrogatory to the extent that it seeks information that is proprietary or confidential or that is protected from discovery as attorney work product and attorney-client communication, information gathered or prepared in anticipation of litigation, the public interest privilege, law enforcement privilege, public official privilege, and/or by any other privilege or immunity from disclosure (collectively, "Privileged Information").  As discovery is ongoing, these responses are necessarily limited in nature, and reflect only that information known to Plaintiff at this time.  Plaintiff reserves the right to supplement, revise, correct, or clarify its responses and objections consistent with further investigation and discovery and in the event that additional information becomes available.  Plaintiff is willing to meet and confer regarding its responses to Defendants' Interrogatories.  Plaintiff's responses are made without waiving its right to object (on the grounds of relevancy, hearsay, materiality, competency or any other ground) to the use of its responses in any subsequent stage or proceeding in this action or any other action.

## SPECIFIC RESPONSES AND OBJECTIONS

### Interrogatory 1

Identify every Person likely to have discoverable information related to Your claims, including, but not limited to, every Person upon whom You intend to rely in proving Your claims on summary judgment or at trial, and every Person likely to have discoverable information that supports or contradicts a position or claim that You have taken or intend to take in this action. For each Person named in response to this Interrogatory, state the subject matter of the information possessed by that Person, identify his or her current and, if relevant, former employment and job title(s), and identify any statements and/or declarations by that Person of which You are aware.

**Response 1**

Plaintiff objects to this interrogatory as overly-broad as drafted.  Plaintiff objects in that this Interrogatory asks for witness lists in advance of the completion of discovery in that it asks for the identification of "every Person" that has discoverable information about Plaintiffs claims. Read literally, this Interrogatory could include every employee of each of the Defendants and numerous third parties around the country.   The following responses include persons with discoverable information applicable to Plaintiff's claims.  At the completion of fact discovery and expert discovery, Plaintiff anticipates, in accordance to a scheduling order and pre-trial deadlines, it will provide final witness and expert lists.  Subject to and without waiving all objections, Plaintiff answers as follows: The following Persons are likely to have discoverable information:

| Name | Relevant Position |
|---|---|
| Bryan Chambers | City of Huntington Communications Director |
| Kathy Moore | City of Huntington Finance Director |
| Jan Rader | City of Huntington Fire Chief; former member of Mayor's Office of Drug Control Policy |
| Justin Antle | City of Huntington Fire Deputy Chief |
| Ray Canafax | City of Huntington Fire Deputy Chief |
| Jim Johnson | City of Huntington Former Director of Mayor's Office of Drug Control Policy |
| Brandon White | City of Huntington Former IT Director |
| Krishawna Harless | City of Huntington Former Mental Health Liaison/LEAD Coordinator; Wayne County Board of Education Former First Responder (HPD and HFD) and Former LEAD (Law Enforcement Assistant Diversion) Wellness Coordinator; Currently Wayne County Board of Education Itinerant School Based Social Worker |
| Rocky Johnson | City of Huntington Former Police Captain |

| Name | Relevant Position |
|------|-------------------|
| Sherry Lewis | City of Huntington Human Resources Director |
| Kohson Perkins | City of Huntington IT Director |
| Steve Williams | City of Huntington Mayor |
| Scott Lemley | City of Huntington Planning and Development Director; former member of Mayor's Office of Drug Control Policy |
| Breanna Shell | City of Huntington Planning Director |
| Paul Hunter | City of Huntington Police Captain and Supervisor of Drug Task Force |
| Ray Cornwell | City of Huntington Police Captain |
| Dan Underwood | City of Huntington Police Captain, Administrative Bureau |
| Hank Dial | City of Huntington Police Chief |
| Stephanie Coffey | City of Huntington Police Corporal; QRT member |
| Craig Preece | City of Huntington Police Detective |
| Ernie Blackburn | City of Huntington Police Detective |
| Paul Minigh | City of Huntington Police Sergeant |
| Jim Insco | City of Huntington Public Works Director |
| Kim Bailey | City of Huntington Purchasing Director |
| Ryan Saxe | City of Huntington Superintendent of Cabell County Board of Education |
| Cathy Burns | Huntington Municipal Development Authority Executive Director; Former/Acting City Manager, City of Huntington |
| Patricia Keller | Cabell County 6th Circuit Family Court Judge, Drug Court Founder |
| Josh Parlier | Cabell County Drug Court Drug Court Coordinator |

| Name | Relevant Position |
|------|-------------------|
| Gordon Merry | Cabell County Emergency Medical Services (CCEMS) Director, Cabell County Emergency Medical Services (CCEMS) |
| Connie Priddy | Cabell County EMS Compliance Officer/QRT Coordinator |
| Timothy Hazelett | Cabell County Health Department Administrator |
| Sara Murray | Cabell Huntington Hospital Nurse Manager for the NeoNatal Therapeutic Unit |
| Jessica Auffant | Cabell Huntington Hospital Nurse Practitioner and Coordinator of MOMS Program |
| Vanessa Bartholomew | Cabell Huntington Hospital Project Engage Addiction Treatment Specialist |
| Michelle Perdue | Cabell-Huntington Health Department Harm Reduction Coordinator |
| Elizabeth Adkins | Cabell-Huntington Health Department Health and Wellness Director, Public Info Officer & Public Health Educator, Cabell-Huntington Health Department |
| Michael Kilkenny | Cabell-Huntington Health Department Physician Director, Cabell-Health Health Department |
| Matt Boggs | Alermes, former Executive Director of Recovery Point |
| Thomas Prevoznik | DEA Associate Section Chief for Pharmaceutical Investigations Section of Diversion Control Division |
| Demetra Ashley | DEA Former Acting Assistant Administrator |
| Michael Mapes | DEA Former Diversion Investigator |
| Joseph Rannazzisi | DEA Former Head of Office of Diversion Control |
| Ronald Buzzeo | DEA Independent Consultant & Former Deputy Office of Diversion Control |
| Stacy Harper-Avilia | DEA Section Chief on Quotes |
| Matthew Strait | DEA Senior Policy Advisor |
| Kyle Wright | DEA Staff Coordinator Regulatory Section |

| Name | Relevant Position |
|---|---|
| Patrick Kelly | HDA/HDMA Executive Vice President of Governmental Affairs |
| Perry Fri | HDA/HDMA Executive Vice President of Industry Relations |
| Anita Ducca | HDA/HDMA Senior Vice President of Regulatory Affairs |
| John Parker | HDA/HDMA Senior Vice President, Communications |
| Rhonda Edmunds, RN | Lily's Place Director of Nursing |
| Rebecca Crowder | Lily's Place Executive Director |
| Sean Loudin | Lily's Place Associate Professor, Neonatal-Perinatal Medicine; Medical Director of Lily's Place, a Neonatal Abstinence Syndrome Center |
| Sarah Setran, PSYD | Marsahll University Clinical Psychologist; Maternal Opiate Management Support (MOMS) Program Developer |
| Robert Hanson | Marshall Health Director of Addiction Services |
| Conrae Lucas-Adkins | Marshall University Assistant Professor for the School of Psychology |
| Kelly Cummings, MD, FACOG | Marshall University Assistant Professor Maternal Fetal Medicine Specialist |
| Stephen M. Petrany | Marshall University Chair of Family & Community Health, MU School of Medicine |
| Ashley Shaw | Marshall University CORE Project Director |
| Amy Saunders | Marshall University Director of Marshall University Center of Excellence for Recovery |
| Amanda Patrick | Marshall University Family Navigator for Healthy Connections |
| Tina Ramirez | Marshall University Great Rivers Regional System for Addiction Care Director |
| Charles "CK" Babcock | Marshall University Harm Reduction Naloxone Education |
| Kevin Yingling | Marshall University Internal Medicine,  Joan C. Edwards School of Medicine; Former Dean of MU School of Pharmacy |
| Mitzi Payne | Marshall University Pediatric Neurologist |

| Name | Relevant Position |
|------|-------------------|
| Michael Haney | Marshall University PROACT Director |
| Beth Welsh | Marshall University PROACT Manager |
| David Chaffin, MD, FACOG | Marshall University Professor Maternal Fetal Medicine Specialist |
| Lyn O'Connell | Marshall University Project Hope Associate Director of Community Services |
| Jessica Tackett | Marshall University Project Hope Program Director |
| Jodi Maiolo | Marshall University Special Projects Coordinator, MU Health: Division of Addiction Sciences |
| Unnamed Employees | National Association of Chain Drug Stores ("NACDS") |
| David Wolfe | PROACT and Valley Health Systems, Inc Lead Addiction Psychologist |
| Zach Hansen | PROACT Medication Assisted Treatment (MAT) Medical Director at PROACT (Provider Response Organization for Addiction Care and Treatment) and Valley Health Systems' family practice |
| Crystal Welch | Quality Insights Media and Marketing for Healthy Connections |
| Greg Perry | Recovery Point West Virginia Recovery Point of Huntington Director of Recovery Support Services |
| Taucha Miller | St. Mary's Medical Center Addiction Specialist and Opioid Addiction Program Coordinator |
| Allen Mock | State of West Virginia Chief Medical Examiner |
| Carol Bailey | United Way of the River Cities Executive Director |
| Angie Saunders | United Way of the River Cities Prevention Empowerment Partnership (CCSAPP) Director |
| April Baisden, MD | Valley Health Psychiatrist |
| Steven Little | WV Dept. Health & Human Resources Preaching Pastor at City Church, Huntington WV; State Office of Drug Control Policy, WV Dept. Health & Human Resources |
| Clay Saunders | AmerisourceBergen Corporation Buyer |

| Name | Relevant Position |
|------|-------------------|
| Debbi Kranz | AmerisourceBergen Corporation Compliance Manager |
| Edward Hazewski | AmerisourceBergen Corporation Corporate Security & Regulatory Affairs |
| Eric Cherveny | AmerisourceBergen Corporation Director of Diversion Control & Security |
| Rick Salazar | AmerisourceBergen Corporation Director, Brand Development and Director, Strategic Purchasing |
| Nathan Elkins | AmerisourceBergen Corporation District Director |
| Marcelino Guerreiro | AmerisourceBergen Corporation Diversion Control Analyst |
| Elizabeth Garcia | AmerisourceBergen Corporation Former Corporate Investigator |
| Jill Jackson | AmerisourceBergen Corporation Sales for Cabell County |
| Mike Dailey | AmerisourceBergen Corporation Sales for Cabell County |
| Rita Norton | AmerisourceBergen Corporation Senior Vice President Government Affairs |
| Chris Zimmerman | AmerisourceBergen Corporation Senior Vice President, Corporate Security and Regulatory Affairs |
| David May | AmerisourceBergen Corporation Vice President, Corporate Security and Diversion Control |
| Steve Mays | AmerisourceBergen Corporation Vice President, Regulatory Affairs |
| Richard Metzger | AmerisourceBergen Director of Sales Operations |
| James Jackson, Jr. | AmerisourceBergen  Corporation Sales Department and Customer Operations |
| Michael Perry | AmerisourceBergen  Corporation Sales for Cabell County |
| Craig Morford | Cardinal Health Chief Legal & Compliance Officer |
| Gilberto Quintero | Cardinal Health Chief Quality & Regulatory Affairs Officer |
| Linden Barber | Cardinal Health Chief Regulatory Counsel and Senior Vice President at Cardinal Health |

| Name | Relevant Position |
|---|---|
| Melissa Schrebe | Cardinal Health Compliance Officer for the Wheeling Distribution Center. |
| Mike Kauffman | Cardinal Health Current CEO and Former CFO |
| Eric Brantley | Cardinal Health Director of Compliance/Compliance Officer |
| Craig Baranski | Cardinal Health Director of Operations |
| Christopher Forst | Cardinal Health Director of Quality Regulatory Assurance |
| George Barrett | Cardinal Health Former Chief Executive Officer |
| Douglas Emma | Cardinal Health Manager, QRA Supply Chain Integrity |
| Steve Morse | Cardinal Health Quality & Regulatory Manager |
| Steve Lawrence | Cardinal Health Senior Vice President Independent Sales |
| Mart Hartman | Cardinal Health Senior Vice President of Supply Chain Integrity |
| Robert Giacalone | Cardinal Health Senior Vice President Regulatory Affairs at Cardinal Health |
| Jennifer Norris | Cardinal Health Vice President Associate General Counsel |
| Michael Mone | Cardinal Health Vice President Associate General Counsel |
| Nick Rausch | Cardinal Health Vice President of  Strategic Sourcing |
| Todd Cameron | Cardinal Health Vice President of Quality Regulatory Assurance, Supply Chain Integrity |
| Steve Reardon | Cardinal Health Vice President of Quality Regulatory Assurance; currently self-employed as consultant |
| Sid Geller | Cardinal Health VP of Strategic Purchasing |
| John Hammergren | McKesson Chief Executive Officer |
| Ashley Clayborne | McKesson Director of Corporate Financial Planning and Analysis |

| Name | Relevant Position |
| --- | --- |
| Tracy Jonas | McKesson Director of Operational Excellence and former Director of Regulatory Affairs |
| Jim Klimek | McKesson Director of Operations |
| David Gustin | McKesson Director of Regulatory Affairs |
| Michael Oriente | McKesson Director of Regulatory Affairs |
| William Mahoney | McKesson Director of Regulatory Affairs |
| Gary Hillard | McKesson Director of Regulatory Affairs (former) |
| Kirsti Lawson | McKesson Director of Risk Management for Claims |
| Blaine Snider | McKesson Distribution Center Manager. |
| Michael Bishop | McKesson Former Implementation Consultant Contractor |
| Donald Walker | McKesson Former Senior Vice President of Distribution Operations. |
| David Graziano | McKesson Regional Director of New Business Development and Strategic Accounts |
| Karen Lewis | McKesson Regulatory Affairs Manager |
| Robert Iuzzolino | McKesson Regulatory Affairs Manager |
| John Kuczynski | McKesson Retail Sales Manager |
| Gene Cavacini | McKesson Senior Vice President and Chief Operating Officer for Pharmaceutical Distribution business |
| Peter Slone | McKesson Senior Vice President of Public Affairs |
| Jennifer Towsley | McKesson Vice President of Credit and Accounts Receivable Operations |
| Joseph Ganley | McKesson Vice President of Federal Government Affairs |
| Matt Collett | McKesson Vice President of Generics Sell Side |

| Name | Relevant Position |
|------|-------------------|
| Nate Hartle | McKesson Vice President of Regulatory Affairs & Compliance |
| Gary Boggs | McKesson Vice President of Regulatory Affairs and Compliance at McKesson and former DEA official. |
| Tim Ashworth | McKesson West Virginia Sales Manager |

This list is not intended to be an exhaustive description of all persons with knowledge or all knowledge held by a particular individual or type of individual regarding issues involved in the case. City of Huntington also incorporates Cabell County Commission's response to this interrogatory.  Plaintiff specifically reserves the right to rely on other individuals for testimony in any trial in this action and is not limited to the individuals listed herein. Plaintiff reserves its right to amend, supplement or modify this response based on facts learned in discovery to date. Plaintiff will supplement this response once the information becomes available to Plaintiff, pursuant to the schedule laid out by the Court.

**Supplemental Response to Interrogatory 1**

Plaintiff incorporates by reference its objections and response to this request as stated above. Subject to and without waiving all objections: See Appendix A.1.

**Interrogatory 2**

Identify each of Your past or present departments, agencies, subdivisions or other constituent entities, officials, employees, and representatives that possesses documents, data, or other information relating to the allegations of the Joint Third Amended Complaint, Dkt. No. 2595 ("TAC"), including, without limitation, the use, abuse, misuse, prescribing, dispensing, sale, distribution, addiction to, and/or diversion of Prescription Opioids and/or other opioids, any harms

that You claim to have suffered, and/or the substantiation or quantification of any damages that You claim.

**Response 2**

Plaintiff objects to this Interrogatory as overly broad and unduly burdensome to the extent that it requires Plaintiff to identify "each" of its "past or present departments, agencies, subdivisions or other constituent entities, officials, employees, and representatives that possesses documents, data, or other information relating to the allegations of the Joint Third Amended Complaint, Dkt. No. 2595 ("TAC")." Subject to and without waiving all objections, Plaintiff answers as follows:

| Department | Employees |
|---|---|
| Mayor's Office | Steve Williams – Mayor<br>Bryan Chambers – Communications Director<br>Angie Bracey – Executive Assistant to the Mayor |
| Finance Division | Kathy Moore – Director |
| Legal Department | Scott Damron - City Attorney |
| Police Department | Hank Dial – Police Chief<br>Captain Dan Underwood – Administrative Bureau<br>Captain Rocky Johnson - Special Investigations Bureau<br>Captain Ray Cornwell - Patrol Bureau<br>Jim Johnson - Former Director of Mayor's Office of Drug Control Policy |
| Fire Department | Jan Rader - Fire Chief |
| Human Resources | Sherry Lewis – Director |
| Planning and Development | Scott Lemley – Director<br>Breanna Shell - Planning Director |
| Information Technology | Kohson Perkins – Director<br>Brandon White - Former IT Director |
| Purchasing Department | Kim Bailey – Director |

| Department | Employees |
|---|---|
| Public Works Department | Jim Insco - Director |

## Supplemental Response to Interrogatory 2

Plaintiff incorporates by reference its objections and response to this request as stated above. Subject to and without waiving all objections:

| Department | Employees |
|---|---|
| Mayor's Office | - Steve Williams – Mayor  (2013- Present)<br>- Bryan Chambers – Communications Director (2014- Present)<br>- Angie Bracey – Executive Assistant to the Mayor (2012-Present)<br>- Cathy Burns – Huntington Municipal Development Authority Executive Director; Former City Manager (2016-2019) |
| Finance Division | - Kathy Moore – Finance Director (2017-Present)<br>- Pam Chandler, Former Finance Director (2015-2017)<br>- Deron Runyon, Former Finance Director( 2009-2015)<br>- Darla Bentley, Former Budget Director (2003-2016)<br>- Scott Arthur, Budget Director (2017- Present) |
| Police Department | - Hank Dial – City Manager (2019-Present); Former Police Chief (2018-2019)<br>- Captain Dan Underwood – Administrative Bureau (1994-Present)<br>- Captain Rocky Johnson - Special Investigations Bureau, Former Head of Drug Unit (2012-2019)<br>- Captain Ray Cornwell - Police Captain; Chief (2020)<br>- Jim Johnson – Former Acting Chief of Police (2014); Former Director of Mayor's Office of Drug Control Policy (2014-2017)<br>- Skip Holbrook- Former Police Chief (2007-2014)<br>- Joe Ciccarelli – Former Police Chief ( 2014-2018)<br>- Paul Hunter – Special Investigations Bureau, Head of Drug Unit,  Police Sergeant, (1996-Present)<br>- Craig Preece – Huntington Police Department, Police Sergeant, (1998- Present)<br>- Paul Minigh – Huntington Police Department Police Sergeant (1999-Present) |
| Fire Department | - Jan Rader - Fire Chief (2017- Present); HFD (1994- Present) |

13

| Department | Employees |
|---|---|
|  | - Carl Eastham- Former Fire Chief (2013-2016)<br>- Ray Canafax- Huntington Fire Department, Deputy Chief (1999- Present, Deputy Chief since 2018) |
| Human Resources | - Sherry Lewis – Director (2001-Present) |
| Planning and Development | - Scott Lemley –Planning and Development, Director (2017-Present); former member of the MODCP (2014-2017) |
| Purchasing Department | - Kim Bailey – Director (2016-Present) |

**Interrogatory 3**

Identify each Person in Your entity, for each year of the Timeframe, who held the following positions or their equivalents: mayor, city manager, city clerk, city council member, county commissioner, county administrator, chief health officer, health department physician director, health department nursing director, health department administrator, county sheriff, chief of police, head of the city or county law enforcement narcotics unit, district attorney or other chief prosecutor, chief prosecutor for drug crimes, court clerk, drug court coordinator or administrator, emergency medical services director, 9-1-1 director, medical examiner, coroner, county assessor, county clerk, finance director, budget director, planning and development director, city or county attorney, correctional facility warden or supervisor, fire chief, director of family and/or children's services, director of substance abuse treatment services, human resources director, members of any task forces or other entities former or used to address opioid abuse, and any other person whose work or other activities have concerned opioid use and abuse and/or any element of the damages that You allege. Include as part of Your response each Person's name, position, and period of time during which he or she held the position.

**Response 3**

Plaintiff objects to this Interrogatory as overly broad and unduly burdensome to the extent that it requires Plaintiff to identify "each" of the subject Persons. Subject to and without waiving its objections, Plaintiff answers as follows:

| Position | Names/Years |
|---|---|
| Mayor | Steve Williams (2013-present)<br>Roger Kim Wolfe (2009-2012)<br>David Felinton (2001-2008)<br>Jean Dean (1993-2000) |
| City Manager/Director of Administration and Finance | Cathy Burns (2016-2019)<br>Margaret Mary Layne (2014-2016)<br>Brandi-Jacobs Jones (2007-2014)<br>Jack Thornburg (2001-2007)<br>David Harrington (1993-2001) |
| City Clerk | Barbara Miller |
| City Council Members | Term: 01/01/05 through 12/31/08<br>Mr. James Ritter<br>Teresa Loudermilk<br>Frances Jackson<br>Mary Neely<br>Sandra M. Clements<br>Cal Kent<br>Scott Caserta<br>Kirk S. Gillenwater<br>Jim Insco<br>AT-LARGE<br>Garry Black<br>Paul Farrell<br><br>Term: 01/01/09 through 12/31/12<br>Mr. James Ritter<br>Teresa Loudermilk<br>Frances Jackson<br>Nate Randolph<br>Sandra M. Clements<br>Mark A. Bates<br>Scott Caserta<br>Russell "Russ" Houck |

| Position | Names/Years |
|---|---|
| | Jim Insco<br>AT-LARGE<br>Steve Williams<br>Rebecca Thacker<br><br>Term: 01/01/2013 through 12/31/2016<br>Joyce Clark<br>Bill Rosenberger<br>Frances Jackson<br>Gary L. Bunn<br>Sandra M. Clements<br>Mark A. Bates<br>Scott Caserta<br>Tom McGuffin<br>John David Short<br>AT LARGE<br>Rebecca Thacker<br>David G. Ball<br><br>Term: 01/01/2017 through 12/31/2020<br>Joyce Clark<br>Charlie McComas<br>Alex Vence<br>Jennifer Wheeler<br>Tonia Kay Page<br>Mark A. Bates<br>Mike Shockley<br>Tom McGuffin<br>Tina Brooks<br>AT LARGE<br>Rebecca Thacker<br>Carol Polan |
| Chief of Police | Hank Dial<br>Joe Ciccarelli<br>Skip Holbrook<br>Gene Baumgardner |
| Head of City Law Enforcement Narcotics Unit | Sergeant Paul Hunter |
| Finance Director | Kathy Moore (2017-present)<br>Pam Chandler (2015-2017)<br>Deron Runyon (2009-2015) |

| Position | Names/Years |
|---|---|
| | Robert Wilhelm (2001-2008)<br>Glenn White (1987-2001) |
| Budget Director | Scott Arthur (2017-present)<br>Rick Montgomery (2017-2017)<br>Kathy Moore (2016-2017)<br>Darla Bentley (2003- 2016) |
| Planning and Development Director | Scott Lemley |
| City Attorney | Scott Damron |
| Fire Chief | Jan Rader<br>Carl Eastham<br>C. Moore Craig<br>Greg Fuller |
| Human Resources Director | Sherry Lewis (2001-present)<br>James Bumgardner (Interim 2001)<br>John Queen (2001)<br>Russell Houck (1995-2001) |
| Task Force Members (Mayor's Office of Drug Control Policy) | Jim Johnson, Director (2014-2017)<br>Jan Rader (2014-2017)<br>Scott Lemley (2014-2017) |

To the extent all positions and identities are not noted, Plaintiff will conduct a reasonable and diligent search for and, if such information is in Plaintiff's possession, custody, or control, will identify such individuals. Plaintiff reserves the right to supplement, amend or modify this response as discovery proceeds.

**Supplemental Response to Interrogatory 3**

Plaintiff incorporates by reference its objections and response to this request as stated above. Subject to and without waiving all objections, Plaintiff answers as follows:

| Position | Names/Years |
|---|---|
| Mayor | -    Steve Williams (2013-present) |

| Position | Names/Years |
|---|---|
| | - Roger Kim Wolfe (2009-2012)<br>- David Felinton (2001-2008)<br>- Jean Dean (1993-2000) |
| City Manager/Director of Administration and Finance | - Cathy Burns (2016-2019)<br>- Margaret Mary Layne (2014-2016)<br>- Brandi-Jacobs Jones (2007-2014)<br>- Jack Thornburg (2001-2007)<br>- David Harrington (1993-2001) |
| City Clerk | - Barbara Miller (2001- Present) |
| City Council Members | Term: 01/01/05 through 12/31/08<br>Mr. James Ritter<br>Teresa Loudermilk<br>Frances Jackson<br>Mary Neely<br>Sandra M. Clements<br>Cal Kent<br>Scott Caserta<br>Kirk S. Gillenwater<br>Jim Insco<br>AT-LARGE<br>Garry Black<br>Paul Farrell<br><br>Term: 01/01/09 through 12/31/12<br>Mr. James Ritter<br>Teresa Loudermilk<br>Frances Jackson<br>Nate Randolph<br>Sandra M. Clements<br>Mark A. Bates<br>Scott Caserta<br>Russell "Russ" Houck<br>Jim Insco<br>AT-LARGE<br>Steve Williams<br>Rebecca Thacker<br><br>Term: 01/01/2013 through 12/31/2016<br>Joyce Clark<br>Bill Rosenberger<br>Frances Jackson |

| Position | Names/Years |
|---|---|
| | Gary L. Bunn<br>Sandra M. Clements<br>Mark A. Bates<br>Scott Caserta<br>Tom McGuffin<br>John David Short<br>AT LARGE<br>Rebecca Thacker<br>David G. Ball<br><br>Term: 01/01/2017 through 12/31/2020<br>Joyce Clark<br>Charlie McComas<br>Alex Vence<br>Jennifer Wheeler<br>Tonia Kay Page<br>Mark A. Bates<br>Mike Shockley<br>Tom McGuffin<br>Tina Brooks<br>AT LARGE<br>Rebecca Thacker (Howe)<br>Carol Polan<br>Charles Shaw<br>Ted Kluemper |
| Chief of Police | - Ray Cornwell (2019- Present)<br>- Hank Dial (2018-2019)<br>- Joe Ciccarelli (2014-2018)<br>- Skip Holbrook (2007-2014)<br>- Gene Baumgardner (2004-2007) |
| Head of City Law Enforcement Narcotics Unit | - Sergeant Paul Hunter (2019- Present; 1998-Present with HPD)<br>- Captain Rocky Johnson (2012-2019) |
| Huntington Violent Crime and Drug Task Force / FBI Task Force | - Sergeant Paul Hunter (2019- Present)<br>- Cpl. Paul Matovich (2005- Present)<br>- Cpl. Stephen Maniskas<br>- Det. Adrian Rosario<br>- Sgt. Greg Moore<br>- Pfc. Sid Hinchman |
| DEA Heroin Task Force | - Craig Preece (1998-Present) |

| Position | Names/Years |
|---|---|
|  | - Cpl Paul Matovich (2005- Present)<br>- |
| Finance Director | - Kathy Moore (2017- Present)<br>- Pam Chandler (2015-2017)<br>- Deron Runyon (2009-2015)<br>- Robert Wilhelm (2001-2008)<br>- Glenn White (1987-2001) |
| Budget Director | - Scott Arthur (2017-Present)<br>- Rick Montgomery (2017-2017)<br>- Kathy Moore (2016-2017)<br>- Darla Bentley (2003- 2016) |
| Planning and Development Director | - Scott Lemley (2017-Present); Member of MODCP (2014-2017) |
| City Attorney | - Scott Damron (2015 – Present)<br>- Ericka Hernandez (Acting City Attorney, October -2014 - March 2, 2015)<br>- Scott McClure (2005- 2014). |
| Fire Chief | - Jan Rader (2017- Present)<br>- Carl Eastham (2013-2017)<br>- Randy Ellis (2012-2013)<br>- Deputy Chief Ralph Rider ( Interim, 2011- 2012)<br>- C. Creig Moore (2009-2011)<br>- Greg Fuller (1999-2009) |
| Human Resources Director | - Sherry Lewis (2001- Present)<br>- James Bumgardner (Interim 2001)<br>- John Queen (2001)<br>- Russell Houck (1995-2001) |
| Task Force Members (Mayor's Office of Drug Control Policy) | - Jim Johnson, Director (2014-2017)<br>- Jan Rader (2014-2017)<br>- Scott Lemley (2014-2017) |

## **Interrogatory 4**

State the years during which You claim each Distributor Defendant engaged in conduct for

which You seek damages or injunctive relief.

**<u>Response 4</u>**

Plaintiff incorporates by reference the allegations in its Joint Third Amended Complaint, Dkt. No. 2595 ("TAC").  Plaintiff's investigation of its damages caused by each Distributor Defendant is ongoing and will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with the Case Management Order and the Federal Rules of Civil Procedure.  Subject to and without waiving its objections, Plaintiff responds that every year each Distributor Defendant distributed opioids is relevant, including but not limited to 2006 to 2014, the years for which the DEA has produced ARCOS transactional data.  Plaintiff further responds that Distributors' conduct was ongoing and continues to affect Plaintiff.  Each Distributor's misconduct with respect to its marketing and distribution practices is alleged with specificity in Plaintiff's Joint Third Amended Complaint, Dkt. No. 2595 ("TAC"), which is incorporated herein by reference.  To summarize upon information and belief, each of the Distributor Defendants failed to satisfy their duties pursuant to West Virginia and federal law by failing to implement adequate systems, policies and procedures that would track, identify, report, and stop shipment of suspicious orders for opioid prescription drugs.  As a result, each Distributor Defendant fueled the opioid epidemic in the City of Huntington by pumping millions of opioids into Plaintiffs' Community.  Plaintiff reserves the right to supplement, amend or modify this response as discovery proceeds, including but not limited to the production of Defendants' transactional data and due diligence files.

**<u>Interrogatory 5</u>**

State the date(s) and the manner in which You first became aware that Prescription Opioids were being abused within Your geographic boundaries, that Prescription Opioids were being

diverted within Your geographic boundaries and/or by Your residents, and/or that addiction to Prescription Opioids was occurring and/or increasing within Your geographic boundaries.

**Response 5**

Plaintiff objects to this Interrogatory as vague and overbroad. It is unclear what information Defendants seek concerning knowledge of abuse, diversion and/or addiction.  Moreover, it would be unduly burdensome and disproportionate to the needs of the case for Plaintiff to state a single date or date(s) and "the manner" in which each and every instance of "abuse," "diversion" or "addiction" of opioids occurred or occurring within Plaintiff's geographic boundaries became known to Plaintiff. Plaintiff also objects to this Interrogatory as vague and ambiguous as to the term "being abused." Plaintiff further objects to the term "awareness" as requiring speculation on the state of mind of the City of Huntington.

Subject to and without waiver of the foregoing objections, Plaintiff responds that, it has been made aware of individual instances of diversion and substance use disorder relating to opioids within its jurisdiction at different times, for example, through formal and informal reports to Plaintiff's employees.  In 2009, the Cabell County Drug court designed a specialized model providing treatment for all ages.  In November 2014 The Mayor's Office of Drug Control Policy (ODCP) was established by Mayor Steve Williams in response to the rising numbers of opioid overdoses a happening in Huntington, West Virginia.  In the first six months of 2015, there were 474 overdoses In Huntington with 34 of them being fatal.  In August 2015 the Mayor's office of Drug Control Policy published its Strategic Plan after reviewing data and conducting meetings with law enforcement, health care professionals, social service administrators, and educators, elected officials, clergy, community activists, recovering addicts and neighborhood groups.

As a result of Defendants' knowing and active concealment of the true nature of their conduct, Plaintiff lacked knowledge linking such instances to Defendants' improper distribution practices, including but not limited to the gross over-supply and flooding of Plaintiffs' Community with opioid pills, the nature of Defendants' conduct in its marketing and distribution practices, and Defendants' failure to report suspicious orders and/or monitor their distribution of opioids, despite holding themselves out to the public as being in compliance with their duties.

**Interrogatory 6**

State the maximum number of pills or other dosage units of Prescription Opioids that should properly have been distributed within Your geographic boundaries for legitimate medical purposes during each year of the Timeframe, and explain how You calculated that number. If You are unable to provide a number, explain how the number should be calculated and identify the input information that would needed to calculate it and the source(s) from which that information may be obtained.

**Response 6**

Plaintiff objects to this Interrogatory to the extent the terms "legitimate medical purpose," and "other dosage units" is vague, ambiguous, and subject to varying interpretations. This Interrogatory is contention discovery more appropriately answered once discovery is complete. *See* Fed. R. Civ. P. 33(a)(2). Plaintiff objects to the extent that this Interrogatory seeks information already in the possession of Defendants and third parties. Plaintiff states that it would be unduly burdensome and wholly disproportionate to the needs of the case for Plaintiff to identify the "maximum number" of individual opioid pills or other dosage units of prescription opioids that "should properly" have been distributed in its geographic boundaries for "legitimate medical purposes" during the Timeframe. Plaintiff will not speculate or opine on the maximum number of

pills that should have been distributed "for legitimate medical purposes" and this is not anticipated to be the subject of expert testimony.

As discovery is ongoing, should this information be deemed relevant, it could be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with this case's Case Management Orders and the Federal Rules of Civil Procedure.

### Supplemental Response to No. 6

Plaintiff incorporates by reference its objections and response to this request as stated above.  See Judge Wilkes Discovery Ruling No.1.

### Interrogatory 7

State the number of pills or other dosage units of Prescription Opioids that were diverted from legitimate purposes within Your geographic boundaries, and the number of pills or other dosage units of Prescription Opioids that were dispensed for other than legitimate medical purposes within Your geographic boundaries for each year during the Timeframe, and describe how each number was calculated. If You are unable to provide a number, explain how the number should be calculated and identify the input information that would be needed to calculate it and the source(s) from which that information may be obtained.

### Response 7

Plaintiff objects to this Interrogatory because the phrases "other dosage units" and "legitimate purposes" are vague, ambiguous, and subject to varying interpretations.  Plaintiff also objects to this Interrogatory as it purports to require Plaintiff to create documents or gather data that it does not maintain in the ordinary course of business.  Plaintiff further responds that this is a contention interrogatory more appropriately answered, if at all, once discovery is complete. Plaintiff reserves the right to amend, supplement or modify this response as discovery proceeds.

Subject to and without waiving all objections, Plaintiff responds as follows: the Controlled Substances Act ("CSA") requires distributors of Schedule II substances like opioids to maintain effective controls against diversion of controlled substances and to design and operate a system to identify suspicious orders of controlled substances, halt such unlawful sales, and report them to the appropriate regulatory authorities, including the DEA.  Distributors must stop shipment of any suspicious orders and only ship those orders that are not likely to be diverted into illegal channels. Distributor Defendants have a unique insight into the ordering patterns and activities of their dispensing customers and Defendants' active and knowing concealment of the true nature of their conduct puts Plaintiff at a significant disadvantage in identifying and calculating the impact of the suspicious orders that Defendants shipped into Plaintiffs' Community.  Additionally, Plaintiff directs Defendants to its production of ARCOS data and corresponding suspicious order analysis for the City of Huntington and Cabell County.

**Supplemental Response to Interrogatory 7.**

Plaintiff incorporates by reference its objections and response to this request as stated above. Subject to and without waiting its objections: See Supplemental Response to Interrogatory 1.

**Interrogatory 8**

Identify each pharmacy, doctor, healthcare provider, or other drug retailer that diverted or wrongfully dispensed Prescription Opioids that You contend caused You injury.

**Response 8**

Plaintiff objects that this Interrogatory is unduly burdensome to the extent it requests Plaintiff to identify each such pharmacy, doctor, healthcare provider, or other drug retailer. Plaintiff objects to this Interrogatory to the extent that it calls for disclosure of Privileged

Information. Plaintiff further objects to this request to the extent it calls for information in the Distributors' possession or control, or just as available to Distributors from third-party sources as it may be available to Plaintiff, and thus places an undue burden on Plaintiff to gather. Further objecting, the Interrogatory contains a reference to undefined terms, namely, "wrongfully dispensed." Plaintiff's investigation of the wrongful conduct of Defendants including the identification of wrongful diversion of prescription opioids within Plaintiff's Community will be the subject of fully-supported and detailed expert witness opinion(s) that will be disclosed in accordance with this case's Case Management Orders the Federal Rules of Civil Procedure. Plaintiff reserves the right to supplement, amend or modify this response as discovery proceeds. Subject to and without waiving all objections, Plaintiff identifies the following:

- Safescript Pharmacy #6 (DEA# BS8246349) formerly located at 335 Fourth Avenue in Huntington, Cabell County, West Virginia

- Anita T. Dawson, DO (CSL# OD0926, WV MD license #918, IMS ID #679852) formerly practicing medicine at 1798 Midland Trail, Milton, Cabell County, West Virginia.

- Ronald Brownfield (WV MD license #1045, IMS ID #859776) formerly practicing medicine at 401 Camden Rd, Huntington, Cabell County, West Virginia.

- Deleno Webb (WV MD license #9413, WV CS Dispensing License #550, IMS ID #204271) formerly practicing medicine at 220 13th St, Huntington, Cabell County, West Virginia.

Plaintiff also incorporates by reference the allegations in its Joint Third Amended Complaint, Dkt. No. 2595 ("TAC") including all allegations relating to the conduct of the National Pharmacy Defendants as distributors and dispensers. Plaintiff will continue to conduct a reasonable

and diligent search for and, if such information is in Plaintiff's possession, custody, or control, will identify such entities in addition to the Defendants identified in the Joint Third Amended Complaint, Dkt. No. 2595 ("TAC").

**Supplemental Response to Interrogatory 8**

Plaintiff incorporates by reference its objections and response to this request as stated above. Subject to and without waiting its objections and pursuant to Judge Wilkes' Discovery Ruling No. 1, Plaintiff supplements this answer as follows:

Neither the Cabell County Commission nor the City of Huntington need prove specific instances of diversion at the dispensing level to prevail. See *Opinion And Order Regarding Defendants' Summary Judgment Motions On Causation* (Case: 1:17-md-02804-DAP) (Doc #: 2561) (Filed: 09/03/19) ("As with the SOMS claims against the Manufacturers, given the massive increases in the supply of prescription opioids into the *Track One* Counties, combined with evidence that suggests a complete failure by the Distributors and Pharmacies to maintain effective controls against diversion, a factfinder could reasonably infer these failures were a substantial factor in producing the alleged harm suffered by Plaintiffs."). This interrogatory is intended to re-litigate summary judgment issues resolved against the Big 3 Distributor Defendants in MDL 2804.

Plaintiffs previously disclosed millions of lines of transactional data which demonstrate massive increases of prescription opioids sold by the Defendants to pharmacies in Huntington, Cabell County, West Virginia. Plaintiffs disclosed suspicious orders using methodologies which survived *Daubert* in the first MDL 2804 bellwether. Plaintiffs will further disclose expert witness reports in accordance with the scheduling order entered by the Court. These expert reports will document the suspicious orders placed by pharmacies which the Defendants unlawfully failed to block and report.

Plaintiffs contend that the volume of opioids purchased in Cabell County and the City of Huntington, both by individual pharmacies and collectively, put Defendants on notice of potential diversion.  Plaintiffs will not contend at trial that specific prescriptions were wrongfully dispensed or prescribed, or that specific individuals wrongfully obtained opioids.  Instead, Plaintiffs will contend that the data available to distributors, or their own observations of pharmacies, or other information available to or used by Defendants, did, or should have, put Defendants on notice of potential diversion.

Plaintiffs reserve the right to identify pharmacies, doctors, healthcare providers, other drug retailers, and/or other applicable categories in their expert reports, based on data produced by, or to be produced by, Defendants or third parties, which require analysis by experts.  Plaintiffs reserve the right to supplement, amend, or modify this response as discovery progresses.  The response is based solely on discovery Plaintiffs have received and reviewed to date.

The discovery request is a contention interrogatory. "Contention" interrogatories seek to clarify the basis for or scope of an adversary's legal claims.  *See Pauley v. CNE Poured Walls, Inc.*, No. 3:18-CV-01508, 2019 WL 3226996, at *1 (S.D. W.Va. July 17, 2019) ("Moreover, in cases where the parties anticipate the production of 'an expert report which will touch on the very contentions at issue, the Court should normally delay contention discovery until after the expert reports have been served, which may then render moot any further contention discovery'").

To be clear, it is the position of the Plaintiffs answering herein, that the answer to this contention interrogatory does not limit Plaintiffs' experts from using different criteria to identify pharmacies, doctors, healthcare providers, other drug retailers, and/or other applicable categories in their expert reports, or from contending that there are existing additional pharmacies, doctors,

healthcare providers, other drug retailers, and/or other applicable categories that would be responsive, in addition to those identified herein.

Subject to and without waiving these clarifications, Plaintiffs refer Defendants to Appendix B, which lists health care providers or retail pharmacies whose volume or nature of their prescribing, in aggregate, put Defendants on notice or should have put Defendants on notice that they were potentially engaged in diversion[2] and required investigation.

Defendants attempt to divert attention from their role in the opioid epidemic by casting blame down the chain of distribution knowing the Plaintiffs do not have access to dispensing data. Nonetheless, Plaintiffs have identified certain public records showing pharmacies and doctors found to have "**diverted or wrongfully dispensed Prescription Opioids**" in or around the City of Huntington, Cabell County, West Virginia. See Appendix B. Plaintiffs also intend to present expert witness testimony of prescribing patterns using IQVIA data previously produced in MDL 2804. Plaintiffs do not intend to rely on dispensing data from the pharmacies nor medical records from any patient. The massive volume of pills sold by the Defendants should have placed each of them on notice that those in the chain of distribution were potentially engaged in diversion which required investigation.

### Interrogatory 9

Identify each investigation, arrest, or prosecution within Your geographical boundaries for each year of the Timeframe that involved Prescription Opioids and/or other opioids, and for each, describe the end result of the investigation, arrest, or prosecution, the connection, if any, to any defendant in this litigation, and the data sources used to track this information.

---

[2] Plaintiffs' experts will address information relating to Defendants' shipments of suspicious orders to CT2.

**Response 9**

Plaintiff objects that this Interrogatory is overly broad and unduly burdensome to the extent that it seeks information beyond Plaintiff's possession, custody, and control.  Plaintiff also objects to the extent this Interrogatory calls for disclosure of Privileged Information.  Subject to and without waiving all objections, Plaintiff will conduct a reasonable and diligent search for and, if such information is in Plaintiff's possession, custody, or control, will supplement this answer with non-privileged information and/or documents responsive to this Interrogatory.

**Supplementary Response to Interrogatory 9**

Plaintiff incorporates by reference its objections and response to this request as stated above. Plaintiff has undertaken significant time, resources and effort to identify and produce  non-privileged, responsive  information that is in Plaintiff's possession, custody, or control.  Plaintiff has produced police department incident reports, arrest records, court dispositions, drug unit investigative files and various charts and exports of incidents and offenses from case management databases with regard to criminal offenses and controlled substances, responsive to this Interrogatory.

Pursuant to Judge Wilkes' Discovery Ruling No. 1, the following produced documents are a compilation of incident offense reports and arrest reports  from the Huntington Police Department:

- SunGard system incident offenses and arrests from 2001 to 2015 via SunGard database. (HUNT_01716770)

- Compilation of Arrest Records from Dec 2015-2019 via Zuercher database. (HUNT_01718157)

- Compilation of Special Investigation Bureau Arrest Records from Dec 2015-2019 via Zuercher database. (HUNT_01718158)

**Interrogatory 10**

Identify Your efforts during each year of the Timeframe to address "hazards to public health and safety" that You attribute to the wrongful conduct of Distributor Defendants. See TAC ¶ 29. Include as part of Your response the amount of taxpayer dollars You expended to fund these efforts and, where the activity was funded in whole or in part from another source, the identity of that source and the amounts provided.

**Response 10**

The Mayor's Office of Drug Control Policy (ODCP) was established by Mayor Steve Williams in November 2014 in response to the opioid epidemic that has affected Huntington, West Virginia. Among its goals was to combat opioid addiction in Huntington and surrounding areas by creating a holistic approach involving prevention, treatment, and law enforcement. Original members were first responders (retired police chief, crime analyst and fire chief). It involved individuals on the frontlines (first responders, emergency room staff, health department, etc.) to analyze the problem and develop strategies.

The City began keeping real time data and educating key stakeholders within the community. When pills were not as readily available for various reasons, including crackdowns on pill mills in the area, surrounding states, and Florida, those suffering from addiction turned to heroin. There are several complications of IV heroin drug use including overdose, spread of blood borne pathogens such as Hepatitis B, Hepatitis C, HIV, simple and complex infections, Endocarditis, Organ transplants and Neonatal Abstinence Syndrome. The Mayor's Office of Drug

Control Policy issued strategic plans for addressing the opioid crisis in 2015 and 2017.[3] One of the numerous initiatives the Mayor's Office of Drug Control Policy helped create was a harm reduction program in the City, including a syringe exchange program at the Cabell Huntington Health Department. This program also provides screening tests for HIV and hepatitis, peer recovery coaches, education, such as naloxone training, health services, including primary care and chronic disease management, and referrals to treatment programs and support services. The ODCP has also played a crucial role in facilitating the collaboration of addiction services in the City and incorporating faith-based organizations into the effort as well.

The Police and Fire Departments in the City have been at the forefront in addressing the opioid public health crisis. These departments and their current personnel have been challenged to continue responding to drug overdoses as the number of overdoses increased dramatically over the years. One out of every four calls to the Huntington Fire Department involves an overdose. Furthermore, the Huntington Fire Department responded to 3,500 calls in 2015, 4,500 calls in 2016, and was on track to respond to more than 5,500 calls in 2017. Huntington Fire Chief, Jan Rader, estimates that Huntington averages 5-7 overdoses a day.  In 2016 Huntington had 1,476 overdoses, which was 10 times the national average, including a single day in August with 26 overdoses.  This increase has negatively impacted the police and fire departments as their efforts have been diverted from other calls to address the overdoses.  Furthermore, compassion fatigue and burnout impacts recruitment and retention for the Huntington Fire Department.

---

[3] Mayor's Office of Drug Control Policy, "Strategic Plan," City of Huntington, WV, August 2015;  Mayor's Office of Drug Control Policy, "Two-Year Strategic Plan for Addressing the Opioid Crisis in the City of Huntington/Cabell and Wayne Counties, West Virginia,"  City of Huntington, WV, 2017, http://www.cityofhuntington.com/city-government/mayors-office-of-drug-control-policy.

The volume and frequency of overdose calls can cause first responders to feel depleted of sympathy and doubtful in their ability to make a difference.  In addition to focusing on the community's rising number of persons addicted to opioids, the opioid crisis required a new system for first responders to ensure those saving lives and administering lifesaving assistance could maintain their ability to do so.   The City of Huntington created a website (https://compasshuntington.com/) along with a phone app.  As described in the website, the program, a self-care model for First responders, allows Huntington to fortify a sustainable frontline to the growing horrors of the opioid epidemic.

The Mayor's Office of Drug Control Policy also facilitated Community Partnerships to help with the public health crisis including:

- Other first responder agencies

- Hospitals, Medical Schools, Medical Facilities

- Faith Community

- Heath Department

- Mental Health Facilities

- Recovery Centers

- Local Schools (prevention efforts)

- Local Business Leaders

- Community Groups

As a result of these community partnerships responding to the rapidly increasing number of overdoses and public health crisis, the City of Huntington implemented a Quick Response Team. Partnered with Cabell County EMS, the Huntington Police Department, Recovery Point, Huntington Comprehensive Treatment Center, and Prestera Center, the QRT consists of one EMS

personnel (paramedic), one law enforcement officer, and one recovery coach /clinician. With the goal of reducing the number of overdoses and increasing the number of individuals engaged in post-overdose treatment, the team initiates contact with and provides treatment options and resources to individuals who have overdosed within a 24-72 hour period.

Additionally, in response to the public health crisis, the ODCP set their vision on decreasing the demand for drugs and healing the addiction as they realized that it was a major public health problem that impacted society on multiple levels. It called for the community to unite to decrease the demand and heal the addiction, which would require dynamic strategies and tactics to lead addicts to recovery. The City implemented the Law Enforcement Assisted Diversion (LEAD) program through the Huntingtin Police Department with the purpose of decreasing recidivism and conserving resources. The program operates by having a mental health professional visit people that law enforcement believes should be diverted because of a substance use disorder or mental health problem. Community partnerships also lead to harm reduction programs, drug court expansions, and prevention programs. The City facilitates and participates in many programs and organizations aimed at fighting the opioid epidemic, including but not limited to, Healthy Connections, Project Hope for Women and Children, Project Engage, PROACT, Great Rivers Regional System for Addiction Care, Faith Community United, Drug Court, Cabell County Substance Abuse Prevention Partnership (CCSAPP), Peer Recovery, Maternal Addiction Recovery Center (MARC), Maternal Opioid Medical Support (MOMS) Program, Lily's Place, First Steps, GRo Huntington, Celebrate Recovery, Loved Ones Group, Grief Recovery After Substance Passing (GRASP), and 12-Step Recovery.

The ODCP also promoted the development and expansion of services for the community by collaborating with healthcare facilities to provide a new all-encompassing treatment program

that would be an intensive outpatient recovery program, provide MAT for individuals who meet the criteria and provide in home intensive therapy based on a nursing home health model for those who meet the criteria.

Over the years, the City applied for several grants to assist them in combatting the opioid epidemic including funding for programs for overdose outreach projects, community based programs to address the opioid crisis, drug court and reentry programs, and funding to address compassion fatigue in first responders. The City received 2 grants for over $1m for a 3 year program, beginning in December 2017. The City also received a Bloomberg Mayor's Challenge Grant that focused on first responder compassion fatigue and burnout.

Plaintiff will continue to conduct a reasonable and diligent search for and, if such information is in Plaintiff's possession, custody, or control, will produce documents that identify Plaintiff's efforts and programs to address the opioid epidemic. Plaintiff reserves the right to supplement or modify its response as discovery continues.

**Supplemental Response to Interrogatory 10**

The Mayor's Office of Drug Control Policy ("ODCP") was established by Mayor Steve Williams in November 2014 in response to the opioid epidemic that has affected Huntington, West Virginia. Among its goals is to combat opioid addiction in Huntington and surrounding areas by creating a holistic approach involving prevention, treatment, and law enforcement. Original members were first responders (retired police chief, crime analyst and fire chief). It involves individuals on the frontlines (first responders, emergency room staff, health department, etc.) to analyze the problem and develop strategies.

The City began keeping real time data and educating key stakeholders within the community. When pills were not as readily available for various reasons, including crackdowns on pill mills in the area, surrounding states, and Florida, those suffering from addiction turned to heroin. There are several complications of IV heroin drug use including overdose, spread of blood borne pathogens such as Hepatitis B, Hepatitis C, HIV, simple and complex infections, Endocarditis, Organ transplants and Neonatal Abstinence Syndrome.

The Mayor's Office of Drug Control Policy issued strategic plans for addressing the opioid crisis in 2015 and 2017.[4] One of the numerous initiatives the Mayor's Office of Drug Control Policy has helped create is a harm reduction program in the City, including a syringe exchange program at the Cabell Huntington Health Department. This program also provides screening tests for HIV and hepatitis, peer recovery coaches, education, such as naloxone training, health services, including primary care and chronic disease management, and referrals to treatment programs and support services. The ODCP has also played a crucial role in facilitating the collaboration of addiction services in the City and incorporating faith-based organizations into the effort as well.

The Police and Fire Departments in the City have been at the forefront in addressing the opioid public health crisis. These departments and their current personnel have been challenged to continue responding to drug overdoses as the number of overdoses increased dramatically over the years. One out of every four calls to the Huntington Fire Department involves an overdose.

---

[4]  Mayor's Office of Drug Control Policy, "Strategic Plan," City of Huntington, WV, August 2015;  Mayor's Office of Drug Control Policy, "Two-Year Strategic Plan for Addressing the Opioid Crisis in the City of Huntington/Cabell and Wayne Counties, West Virginia,"  City of Huntington, WV, 2017, http://www.cityofhuntington.com/city-government/mayors-office-of-drug-control-policy.

Furthermore, the Huntington Fire Department responded to 3,500 calls in 2015, 4,500 calls in 2016, and was on track to respond to more than 5,500 calls in 2017.

Huntington Fire Chief, Jan Rader, estimates that Huntington averages 5-7 overdoses a day. In 2016 Huntington had 1,476 overdoses, which was 10 times the national average, including a single day in August with 26 overdoses.  The volume and frequency of overdose calls can cause first responders to feel depleted of sympathy and doubtful in their ability to make a difference. In addition to focusing on the community's rising number of persons addicted to opioids, the opioid crisis has required a new system for first responders to ensure those saving lives and administering lifesaving assistance can continue to maintain their ability to do so. The City of Huntington created a website (https://compasshuntington.com/) along with a phone app. As described in the website, the program, a self-care model for First responders, allows Huntington to fortify a sustainable frontline to the growing horrors of the opioid epidemic. Compassion fatigue and burnout impacts recruitment and retention and necessitates ongoing recruitment for the Huntington Fire Department to be able to continue to respond to the epidemic.

The Mayor's Office of Drug Control Policy also has facilitated Community Partnerships to help with the public health crisis including:

- Other first responder agencies

- Hospitals, Medical Schools, Medical Facilities

- Faith Community

- Heath Department

- Mental Health Facilities

- Recovery Centers

- Local Schools (prevention efforts)

- Local Business Leaders

- Community Groups

As a result of these community partnerships responding to the rapidly increasing number of overdoses and public health crisis, the City of Huntington has implemented a Quick Response Team ("QRT"). Partnered with Cabell County EMS, the Huntington Police Department, Recovery Point, Huntington Comprehensive Treatment Center, and Prestera Center, the QRT consists of one EMS personnel (paramedic), one law enforcement officer, and one recovery coach /clinician. With the goal of reducing the number of overdoses and increasing the number of individuals engaged in post-overdose treatment, the team initiates contact with and provides treatment options and resources to individuals who have overdosed within a 24 to 72-hour period.

Additionally, in response to the public health crisis, the ODCP has set their vision on decreasing the demand for drugs and healing the addiction as they realized that it was a major public health problem that impacted society on multiple levels. It has called for the community to unite to decrease the demand and heal the addiction, which requires dynamic strategies and tactics to lead addicts to recovery. The City has implemented the Law Enforcement Assisted Diversion ("LEAD") program through the Huntington Police Department with the purpose of decreasing recidivism and conserving resources. The program operates by having a mental health professional visit people that law enforcement believes should be diverted because of a substance use disorder or mental health problem.

Community partnerships also lead to harm reduction programs, drug court expansions, and prevention programs. The City facilitates and participates in many programs and organizations aimed at fighting the opioid epidemic, including but not limited to, Healthy Connections, A residential treatment facility for pregnant and postpartum women and their children called "Project

Hope for Women and Children," which is a joint partnership between Marshall Health and the Huntington City Mission, Project Engage, PROACT (Provider Response Organization for Addiction Care Treatment), a comprehensive treatment and recovery service hub, Great Rivers Regional System for Addiction Care, Faith Community United, Drug Court, Cabell County Substance Abuse Prevention Partnership (CCSAPP), Peer Recovery, Maternal Addiction Recovery Center (MARC), Maternal Opioid Medical Support (MOMS) Program, Lily's Place, First Steps, GRo Huntington, Celebrate Recovery, Loved Ones Group, Grief Recovery After Substance Passing (GRASP), and 12-Step Recovery. The ODCP also has promoted the development and expansion of services for the community by collaborating with healthcare facilities to provide a new all-encompassing treatment program that would be an intensive outpatient recovery program, provide MAT for individuals who meet the criteria and provide in home intensive therapy based on a nursing home health model for those who meet the criteria.

Over the years, the City has applied for several grants to assist them in combatting the opioid epidemic including funding for programs for overdose outreach projects, community-based programs to address the opioid crisis, drug court and reentry programs, and funding to address compassion fatigue in first responders. The City of Huntington received two grant awards that simultaneously fund the start-up and implementation of the Quick Response Team program for the first three years. $100,000 per year for three years was originally awarded from the Bureau of Justice Assistance and additional award funding of $350,000 per year for three years from the Empowered Communities Initiative, beginning in December 2017. The City also received a Bloomberg Mayor's Challenge Grant that is focused on first responder compassion fatigue and burnout.

**Interrogatory 11**

Identify all efforts You have made to recover expenditures related to Prescription Opioid addiction, misuse, abuse, or overdose from any Person, including (without limitation) insurers, government entities, manufacturers, pharmacists, pharmacies, doctors, dentists, nurses, clinics, drug dealers, drug traffickers, or drug trafficking organizations. For each effort, identify the amount of expenditures, if any, that You recovered.

**Response 11**

Plaintiff objects to this Interrogatory as vague and ambiguous because the terms "drug dealers," "drug traffickers," and "drug trafficking organizations" are undefined and capable of varying interpretations and unduly burdensome to the extent it requests identification of "all" efforts. Plaintiff further objects to this Interrogatory to the extent that it seeks information that is Privileged Information and protected from disclosure by the attorney-client privilege, work-product doctrine, public interest privilege, investigatory privilege, law enforcement privilege, and relevant West Virginia law. Subject to and without waiving its objections, Plaintiff responds as follows:

Plaintiff filed the instant lawsuit in an effort to recover its expenditures relating to the opioid crisis in its community. Plaintiff also filed suit against those defendants named in *City of Huntington, West Virginia v. Express Scripts Holding Company*, 1:18-op-45984, currently pending in the Northern District of Ohio, and is a party to *City of Charleston et al. v. The Joint Commission et al.* 2:17-CV-04267, filed in the Southern District of West Virginia.

**Supplemental Response to Interrogatory 11**

Plaintiff incorporates by reference its objections and response to this request as stated above. Subject to and without waiving its objections, Plaintiff responds as follows:

Plaintiff has obtained grants for the Quick Response Team, an integrated community program to address opioid crisis with EMS, HPD, and recovery centers and a First Responder Grant to address compassion fatigue in First Responders. Plaintiff filed the instant lawsuit in an effort to recover its expenditures relating to the opioid crisis in its community.  Plaintiff also filed suit against those defendants named in City of Huntington, West Virginia v. Express Scripts Holding Company, 1:18-op-45984, currently pending in the Northern District of Ohio, and is a party to City of Charleston et al. v. The Joint Commission et al. 2:17-CV-04267, filed in the Southern District of West Virginia.


Dated April 30, 2020                          Respectfully submitted,

                                              THE CITY OF HUNTINGTON

                                              /s/ *Anne McGinness Kearse*
                                              Anne McGinness Kearse (WVSB No. 12547)
                                              Joseph F. Rice
                                              Temitope Leyimu
                                              Natalie Deyneka
                                              **MOTLEY RICE LLC**
                                              28 Bridgeside Blvd.
                                              Mount Pleasant, SC 29464
                                              Tel:  843-216-9000
                                              Fax:  843-216-9450
                                              akearse@motleyrice.com
                                              jrice@motleyrice.com
                                              tleyimu@motleyrice.com
                                              ndeyneka@motleyrice.com

                                              Linda Singer
                                              David I. Ackerman
                                              **MOTLEY RICE LLC**
                                              401 9th Street NW, Suite 1001
                                              Washington, DC 20004
                                              Tel:  202-232-5504
                                              Fax:  202-386-9622
                                              lsinger@motleyrice.com
                                              dackerman@motleyrice.com

Charles R. "Rusty" Webb (WVSB No. 4782)
**THE WEBB LAW CENTRE, PLLC**
716 Lee Street, East
Charleston, West Virginia  25301
Telephone: (304) 344-9322
Facsimile: (304) 344-1157
rusty@rustywebb.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 1, 2020, the foregoing *Plaintiff City of Huntington, West Virginia's Supplemental Responses and Objections to Distributor Defendants' First Set of Interrogatories* and corresponding *Appendix A.1* and *Corrected Appendix B* was served via email only to defense counsel at track2opioiddefendants@reedsmith.com and to plaintiffs counsel at mdl2804discovery@motleyrice.com.

*/s/ Moniqúe Christenson*
Moniqúe Christenson (SC Bar No. 104063)
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel:  843-216-9000
Fax:  843-216-9450
mchristenson@motleyrice.com