# Plaintiffs' Memorandum in Opposition to Joint Motion for Summary Judgment for Failure to Prove Fault Element of Public Nuisance Claims

# Ex 57 – Marshall County WV Order Denying MTD

IN THE CIRCUIT COURT OF
MARSHALL COUNTY, WEST VIRGINIA

FILED

2018 DEC 28 AM 11: 11

BROOKE COUNTY COMMISSION,
HANCOCK COUNTY COMMISSION,
HARRISON COUNTY COMMISSION, LEWIS
COUNTY COMMISSION, MARSHALL
COUNTY COMMISSION, OHIO COUNTY
COMMISSION, TYLER COUNTY
COMMISSION, and WETZEL COUNTY
COMMISSION,

        Plaintiffs,

vs.

PURDUE PHARMA L.P.; PURDUE PHARMA
INC.; THE PURDUE FREDERICK COMPANY,
INC.; MARK RADCLIFFE; MARK ROSS;
PATTY CARNES; TEVA
PHARMACEUTICALS USA, INC.;
CEPHALON, INC.; JANSSEN
PHARMACEUTICALS, INC.; ORTHO-
MCNEIL-JANSSEN PHARMACEUTICALS,
INC. n/k/a Janssen Pharmaceuticals, Inc.; JANSSEN
PHARMACEUTICA, INC. n/k/a Janssen
Pharmaceuticals, Inc.; JOHNSON & JOHNSON;
ENDO HEALTH SOLUTIONS INC.; ENDO
PHARMACEUTICALS, INC.; ALLERGAN plc;
ACTAVIS plc; ACTAVIS, INC.; ACTAVIS
LLC; ACTAVIS PHARMA, INC.; WATSON
PHARMACEUTICALS, INC.; WATSON
PHARMA, INC.; WATSON LABORATORIES,
INC.; MCKESSON CORPORATION;
CARDINAL HEALTH, INC.;
AMERISOURCEBERGEN DRUG
CORPORATION; RITE AID OF MARYLAND,
INC.; KROGER LIMITED PARTNERSHIP II;
CVS INDIANA, L.L.C.; WAL-MART STORES
EAST, LP; GOODWIN DRUG COMPANY;
WEST VIRGINIA BOARD OF PHARMACY;
DAVID POTTERS; EDITA P. MILAN, M.D.;
TRESSIE MONTENE DUFFY, M.D.; EUGENIO
ALDEA MENEZ, M.D.; SCOTT JAMES
FEATHERS, D.P.M.; and AMY LYNN BEAVER,
P.A.-C,

        Defendants.

Civil Action No. 17-C-248

The Honorable David W. Hummel, Jr.

**ORDER DENYING AMERISOURCEBERGEN DRUG CORPORATION,
CARDINAL HEALTH, INC., AND MCKESSON CORPORATION'S
<u>MOTION TO DISMISS</u>**

JAN 04 2019

On November 7, 2018, Plaintiffs and Defendants AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation appeared for a hearing on Defendants' Motion to Dismiss. Having considered the pleadings, the parties' arguments and authorities in support of as well in opposition to the instant motion, the applicable law, other materials filed by the parties, and the entire court record herein, the Court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. Plaintiffs filed their Complaint in the above Civil Action on December 13, 2017, asserting claims related to the manufacturing, marketing, sale, and/or distribution of opioids in the Plaintiff counties and in the areas surrounding the counties.

2. The Plaintiffs' Complaint asserts the following causes of action against Defendants: Public Nuisance (Count I, Compl., ¶¶ 673-90); Unjust Enrichment (Count II, *id.* ¶¶ 691-99); Fraud by Concealment (Count III, *id.* ¶¶ 700-02); and Negligence (Count IX, *id.* ¶¶ 755-75).

3. On April 24, 2018, Defendants' filed a Motion to Dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure.

4. In their Motion, Defendants argue that Plaintiffs' claims should be dismissed for the following reasons: Plaintiffs' negligence claim is deficient because they do not have standing to sue for violations of West Virginia's Controlled Substances Act ("WVCSA") and Defendants do not owe Plaintiffs a duty of care; Plaintiffs lack standing to bring their claims; the free-public services doctrine (a/k/a the municipal cost recovery rule) precludes Plaintiffs from recovering damages; the economic loss rule bars Plaintiffs' claims; West Virginia Code § 30-5-21(a) provides Defendants with immunity; Plaintiffs fail to adequately allege causation, including that the acts of third parties break the causal chain; Plaintiffs' claim for public nuisance is deficient because that

cause of action is limited to property or environmental claims, Defendants have not interfered with a public right, Plaintiffs have not properly alleged causation, and Plaintiffs may not recover damages for this claim; Plaintiffs' unjust enrichment claim fails because they did not make any direct payments to Defendants; and Plaintiffs have not adequately alleged fraudulent concealment.

5. Plaintiffs oppose Defendants' arguments as follows: Plaintiffs are not seeking to assert a private right of action under the WVCSA, but are relying on the WVCSA to help establish a standard of care, and Defendants also owe Plaintiffs a common-law duty of reasonable care; Plaintiffs have standing because they have shown that their injuries fairly can be traced to the actions of Defendants; no court in West Virginia has applied the free public services doctrine to preclude the recovery of damages by a municipality; the economic loss rule does not bar Plaintiffs from recovering because Plaintiffs' damages do not result from any "interruption in commerce"; West Virginia Code § 30-5-21(a) applies only to claims related to drug quality; Plaintiffs sufficiently allege the requisite casual connection between Defendants' actions and Plaintiffs' harms; the acts of third parties (even criminals) did not break the causal chain because they were foreseeable and did not create a new effective cause or operate independently; public nuisance is not limited to property disputes, Defendants interfered with a public right, including the public health, and damages are recoverable for public nuisance; Plaintiffs are not required to establish a direct transactional relationship in order to recover for unjust enrichment; Plaintiffs have pled fraudulent concealment with sufficient particularity.

### Legal Standard

6. A motion to dismiss for failure to state a claim "should be viewed with disfavor and rarely granted." *John W. Lodge Distrib. Co. v. Texaco, Inc.*, 161 W. Va. 603, 606, 245 S.E.2d 157, 159 (1978). "The purpose of a motion under Rule 12(b)(6) of the West Virginia Rules of Civil

Procedure is to test the sufficiency of the complaint." *Cantley v. Lincoln Cty. Comm'n*, 221 W. Va. 468, 470, 655 S.E.2d 490, 492 (2007). To that end, a "trial court considering a motion to dismiss under Rule 12(b)(6) must liberally construe the complaint so as to do substantial justice." *Id.* See also W.Va. R. Civ. P. 8(f). The trial court's consideration begins, therefore, with the proposition that "[f]or purposes of the motion to dismiss, the complaint is construed in the light most favorable to plaintiff, and its allegations are to be taken as true." *John W. Lodge Distributing Co., Inc. v. Texaco, Inc.*, 161 W.Va. 603, 605, 245 S.E.2d 157, 158 (1978). The policy of Rule 8(f) is to decide cases upon their merits, and if the complaint states a claim upon which relief can be granted under any legal theory, a motion under Rule 12(b)(6) must be denied. *Id.* at 158-59.

**A.     Negligence**

7.      A "[v]iolation of a statute is *prima facie* evidence of negligence." *Marcus v. Staubs*, 736 S.E.2d 360, 368 (W.Va. 2012) (quoting *Anderson v. Moulder*, 183 W. Va. 77, 83, 394 S.E.2d 61, 66-67 (W. Va. 1990)) (quotation marks omitted). "The same is true for violations of regulations." *Morrisey v AmerisourceBergen Drug Corp.*, No. 12-cv-141, 2014 WL 12814021, at *7 n.6 (W. Va. Cir. Ct., Boone County Dec. 12, 2014) (citing *Hersh v. E T Enterprises, Ltd. P'ship*, 232 W.Va. 305, 752 S.E.2d 336 (2013)); *Miller v. Warren*, 182 W.Va. 560, 390 S.E.2d 207 (1990).

8.      The Court finds and concludes that Plaintiffs are not attempting to assert a private right of action under the WVCSA. Instead, the Court finds and concludes that Plaintiffs rely on the WVCSA to help establish a standard of care for their common-law negligence claims, which is permissible under the law. *See, e.g., Morrisey*, 2014 WL 12814021, at *7 ("A violation of a statute or ordinance can constitute actionable negligence.") (citing *State Rd. Comm'n v. Ball*, 138 W. Va. 349, 350 (W. Va. 1953)); *In re Opioid Litigation*, No. 400000/2017, at 20 (Sup. Ct. Suffolk Co. July 17, 2018) ("The distributor defendants also contend that the cause of action for negligence

4

must be dismissed, because the plaintiffs may not enforce the New York State Controlled Substances Act. This argument is rejected, as the cause of action is not predicated solely on a violation of the statute[.]")

9. The Court further finds and concludes that Defendants owe a common-law duty of reasonable care.

10. In West Virginia, foreseeability of risk is a primary consideration in determining the scope of a duty an actor owes to another. In addition, the existence of duty also involves policy considerations underlying the core issue of the scope of the legal system's protection which include the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on the defendant. *Robertson v. LeMaster*, 171 W.Va. 607, 301 S.E.2d 563 (1983).

11. In the present case, Plaintiffs allege that the Distributor Defendants were aware of the potentially dangerous situation involving opioids, including but not limited to the addiction, abuse and diversion that was occurring, and had actual knowledge that opioid drugs were being misused, abused, and diverted within the Counties and surrounding areas. Plaintiffs further allege that Distributor Defendants knew that opioids were unreasonably dangerous and highly addictive and were highly susceptible to abuse and diversion. Plaintiffs allege the Distributor Defendants knew or should have known that the opioid drugs they distributed were highly susceptible to addiction, misuse, abuse and/or diversion; opioid drug addiction, misuse, abuse and/or diversion bore a direct relationship to the amount and volume of opioids being distributed within the Counties; and that the opioid drugs they distributed were being misused, abused and diverted across the country, including in the Counties. Plaintiffs also allege that the Distributor Defendants knew or should have known that opioid addiction and its related consequences would injure and

damage communities across the country, including the Counties. As discussed herein, applicable West Virginia laws, and the industry standards applicable to the distribution and sale of opioid drugs exist to control addiction, abuse and/or diversion associated with these dangerous drugs. Moreover, the Distributor Defendants were repeatedly warned and/or put on notice concerning their actions and the effects their actions were having in communities across the country, including the Counties. The escalating amounts of highly addictive drugs being distributed, and the sheer volume of these prescription opioids, further alerted the Distributor Defendants that addiction was fueling increased addiction, abuse and diversion, and that legitimate medical purposes were not being served.

12. Under the circumstances alleged in Plaintiffs' Complaint, and described hereinabove, it was foreseeable that the Distributor Defendants' actions and inactions would result in harm to Plaintiffs and, therefore, Defendants owed a duty of care to Plaintiffs as alleged in Plaintiffs' Complaint.

13. Furthermore, public policy considerations support the imposition of a duty of care here considering, without limitation, the likelihood and risk of injury caused by highly addictive opioids, the minimal burden imposed on the Distributor Defendants to guard against injury and damage, and the absence of adverse consequences of placing the burden on the Distributor Defendants to guard against the likely injury. *See Robertson v. LeMaster*, 171 W. Va. 607, 612, 301 S.E.2d 563, 568 (1983).

14. Moreover, under West Virginia law, "[t]he liability to make reparation for an injury, by negligence, is founded upon an original moral duty, enjoined upon every person, so to conduct himself, or exercise his own rights, as not to injure another." *Syl. Pt. 1, Robertson v. LeMaster*, 171 W. Va. 607, 607, 301 S.E.2d 563, 563 (1983) (quotation marks omitted). *See also In re Opioid*

*Litigation*, No. 400000/2017, at 19 ("Here, the plaintiffs have adequately pled the existence of a duty owed by the distributor defendants by alleging that societal expectations required different behaviors on their part, including, but not limited to, refusing to fill suspicious orders for opioids[.]"). In addition, "one who engages in affirmative conduct, and thereafter realizes or should realize that such conduct has created an unreasonable risk of harm to another, is under a duty to exercise reasonable care to prevent the threatened harm." *Stevens v. MTR Gaming Grp., Inc.*, 237 W. Va. 531, 534, 788 S.E.2d 59, 62 (2016). Here, Plaintiffs have alleged that Defendants were engaged in a dangerous activity that created an unreasonable risk of harm. (*See, e.g.*, Compl. ¶¶ 637, 639, 758-60.)

### B.  Standing

15. Standing is established when a plaintiff alleges that it suffered "injury in fact" that is "fairly traceable" to the defendant's conduct and "that is likely to be redressed by a favorable judicial decision." *Bank of Am. Corp. v. City of Miami*, 137 S. Ct. 1296, 1302 (2017). An injury in fact is one that is concrete and particularized as well as actual or imminent. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). At the pleading stage, general factual allegations of injury resulting from the defendants' conduct are sufficient to meet the requirement of standing. *Id.*

16. Causation sufficient to satisfy Article III need not be proximate or direct. *See United States v. Students Challenging Regulatory Agency Procs. (SCRAP)*, 412 U.S. 669, 688 (1973) ("attenuated line of causation to the eventual injury" sufficient to establish standing).

17. The Court finds and concludes that Plaintiffs have sufficiently shown that their injuries fairly can be traced to the actions of Defendants as required by Article III.

18. The Court further finds and concludes that Plaintiffs are not suing in a *parens patriae* capacity. Instead, they are seeking to recover their own direct damages. (*See, e.g.*, Compl.

7

¶ 44 ("Plaintiffs directly and foreseeably sustained all economic damages alleged herein.").) Thus, Plaintiffs are not seeking to recover for indirect injuries.

### C. The Free Public Services Doctrine

19. No court in West Virginia has applied the free public services doctrine to preclude the recovery of damages by a municipality. On the contrary, in *Morrisey v. AmerisourceBergen Drug, Co.*, the court held that it did not apply to bar recovery for substantially similar claims:

> Even in the case of municipalities, no court in West Virginia has ever recognized the "municipal cost recovery doctrine" or applied it to bar claims by a municipality. Finding this common law doctrine to be misguided, the Indiana Supreme Court and New Jersey Appellate Court have rejected the application of this doctrine altogether—even to municipalities. *City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1243 (Ind. 2003) (citing, *inter alia, James v. Arms Tech., Inc.*, 359 N.J. Super. 291, 820 A.2d 27, 49 (N.J. App.Div.2003)).
>
> Moreover, when the municipal cost recovery doctrine has been applied, it has, by and large, been applied only to discrete, one-time events and not to ongoing public problems such as the facts alleged here. *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St 3d 416, 428, 768 N.E.2d 1136, 1149 50 (Ohio 2002) (refusing to apply doctrine to gun violence problem); *James*, 820 A.2d at 49 (same); *City of Boston v. Smith & Wesson Corp.*, 199902590, 2000 WL 1473568 (Mass. Super, July 13, 2000) (same); *Cf In re Oil Spill by The Amoco Cadiz*, 954 F.2d 1279, 1310 (7th Cir. 1992) (*per curiam*) (oil spill); *District of Columbia v. Air Fla, Inc.*, 750 F.2d 1077, 1080 (D.C. Cir. 1984) (plane crash); *County of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 150-51 (2d Cir. 2013) (plane crash); *City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*, 719 F.2d 322, 323 (9th Cir. 1983) (train derailment); *Walker v. Tri-County Crematory*, 643 S.E.2d 324, 327-28 (Ga. Ct. App. 2007) (unburied human remains found at crematorium). The Amended Complaint alleges an ongoing problem.
>
> Based on the foregoing, the Court concludes the "municipal cost recovery doctrine" does not bar any of the State's claims as alleged.

*Morrisey v AmerisourceBergen Drug Corp.*, No. 12-cv-141, 2014 WL 12814021, at *19 (W. Va. Cir. Ct., Boone County Dec. 12, 2014). *See also, In re Opioid Litigation*, No. 400000/2017, at 6 (refusing to apply the free public services doctrine under similar circumstances).

8

20. "Recovery has also been allowed where the acts of a private party create a public nuisance which the government seeks to abate." *City of Flagstaff*, 719 F.2d at 324. *See also City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 420 n.4 (3rd Cir. 2002); *James*, 820 A.2d at 49 ("the Municipal Cost Recovery Rule does not apply to cases, as here, where a municipality seeks to recover damages for the cost of abating a nuisance"); *State v. Lead Ind. Assn., Inc.*, No. 99-5226, 2001 WL 345830, at *5 (R.I. Super. Apr. 2, 2001) (refusing to apply free public services doctrine to nuisance claims by Attorney General arising out of the use of lead paint).

21. Furthermore, courts have rejected the application of the free public services doctrine where the municipality "claims a repeated course of conduct on defendants' part, requiring [it] to expend substantial governmental funds on a continuous basis." *James*, 820 A.2d at 48-49. *See also Cincinnati*, 768 N.E.2d at 1149; *City of Boston*, 2000 WL 1473568, at *8.

22. Thus, the Court finds and concludes that the free public services doctrine does not preclude Plaintiffs' recovery of damages in this case.

**D.  The Economic Loss Rule**

23. In contending that the economic loss rule bars Plaintiffs' claims, Defendants rely on *Aikens v. Debow*, where a motel and restaurant operator sued a truck driver and his employer seeking damages for loss of income, which the operator claimed was the result of a bridge closure caused by repairs after it was struck by the defendants' truck. 208 W. Va. 486, 490, 541 S.E.2d 576, 580 (2000). The court rejected the operator's claims, holding that under the economic loss rule "[a]n individual who sustains economic loss from an *interruption in commerce* caused by another's negligence may not recover damages in the absence of physical harm to that individual's person or property, a contractual relationship with the alleged tortfeasor, or some other special relationship between the alleged tortfeasor and the individual." *Id.* at Syl. Pt. 9 (emphasis added).

9

"In *Aikens*, the Supreme Court of Appeals emphasized that the holding only applies strictly to plaintiffs alleging purely economic loss from an interruption in commerce caused by another's negligence." *Morrisey v AmerisourceBergen Drug Corp.*, No. 12-cv-141, 2014 WL 12814021, at *20 (W. Va. Cir. Ct., Boone County Dec. 12, 2014) (quotation marks omitted).

24. Here, the Court finds and concludes that the economic loss rule does not bar Plaintiffs' negligence claims because Plaintiffs' damages do not result from any "interruption in commerce." Moreover, the economic loss rule "does not bar recovery in tort where the defendant had a duty imposed by law rather than by contract and where the defendant's intentional breach of that duty caused purely monetary harm to the plaintiff." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 879 (9th Cir. 2007).

25. Notably, a similar argument advanced by Defendants here relating to the economic loss rule has been rejected by other courts in similar opioid litigations. *See In re Opioid Litigation*, No. 400000/2017, 2018 WL 3115102, at *27 (Sup Ct., Suffolk County June 18, 2018); *Morrisey*, 2014 WL 12814021, at *19.

### E. West Virginia Code § 30-5-21(a)

26. West Virginia Code § 30-5-21(a) provides that all persons "shall be responsible for the *quality* of all drugs" sold or dispensed "with the exception of those sold in or dispensed unchanged from the original retail package of the manufacturer, in which event the manufacturer shall be responsible." (emphasis added). Accordingly, claims arising out of theories other than drug "quality" are not barred by the provision. *See, e.g., Walker v. Rite Aid of W. Virginia, Inc.*, No. 2:02-cv-1208, 2003 WL 24215831 (S.D. W. Va. Oct 14, 2003) (failure to warn claim by plaintiff who alleged personal injury from use of Aleve not within statute's bar).

27. Here, the Court finds and concludes that West Virginia Code § 30-5-21(a) does not apply to the instant claims because claims against Defendants arise out of their duties to prevent diversion as distributors of controlled substances rather than the "quality" of the drugs sold at retail.

**F.   Causation**

28. Under West Virginia law, proximate cause is defined as that "which, in natural and continuous sequence, produces foreseeable injury and without which the injury would not have occurred." *Hudnall v. Mate Creek Trucking, Inc.*, 200 W.Va. 454, 459, 490 S.E.2d 56, 61 (1997).

29. A plaintiff is not required to show that the negligence of one sought to be charged with an injury was the sole proximate cause of an injury. Syl. Pt. 2, *Everly v. Columbia Gas of West Virginia, Inc.*, 171 W. Va. 534, 534–35, 301 S.E.2d 165, 165–66 (1982). Instead, a plaintiff need only show the defendants actions were a proximate cause of plaintiff's injury. *Id.*

30. Proximate cause is an elastic principle that necessarily depends on the facts of each case. *Mays v. Chang*, 213 W. Va..220, 224, 579 S.E.2d 561, 565 (2003). Therefore, questions of proximate cause are fact-based issues that should be left for jury determination. *Id. See also Aikens*, 208 W.Va. at 490, 541 S.E.2d at 580.

31. In the present case, the Court finds and concludes that Plaintiffs have sufficiently pled allegations to satisfy the requirements for causation under West Virginia law. For example, Plaintiffs alleged that Defendants' misconduct and numerous failings are a direct cause of the opioid crisis and the Plaintiffs' injuries and damages. (*See, e.g.*, Compl. ¶¶ 773 ("Plaintiffs are without fault and the injuries to the County and its residents would not have occurred in the ordinary course of events had the Distributor Defendants used due care commensurate to the dangers involved in the distribution of opioids."), 774 ("[T]he Distributor Defendants' breach of

11

duty bears a causal connection with and/or proximately resulted in the harm and damages to Plaintiffs."), 775 ("As a direct and proximate result of the Distributor Defendants' actions, as set forth herein, Plaintiffs have suffered and continue to suffer injury and damages, including but not limited to, incurring excessive costs related to diagnosis, treatment, and cure of abuse and/or addiction or risk of addiction to opioids; bearing the massive costs of these illnesses and conditions by having to provide necessary resources for care, treatment facilities, and law enforcement associated with opioid addiction, abuse and diversion; and property damage.").)

32. Notably, companion opioid cases addressing virtually identical allegations to those at issue here have held that proximate causation is sufficiently pled. *See Morrisey*, 2014 WL 12814021, at *12; *In re Opioid Litigation*, No. 400000/2017, at 20.

33. Under West Virginia law, the acts of third parties do not break the chain of causation unless they "constitute[] a new effective cause and operate[] independently of any other act, making it and it only, the proximate cause of the injury." *Syl. Pt. 12, Marcus v. Staubs*, 230 W.Va. 127, 736 S.E.2d 360, 372 (2012) (quotation marks omitted). Even third-party criminal acts do not defeat causation if they are foreseeable. *See, e.g., id.*

34. Thus, the Court further finds and concludes that Defendants' conduct was not too remote from the opioid epidemic—even considering that third party conduct may have also contributed to the opioid epidemic—and that the acts of third parties (even criminals) were foreseeable and did not create a new effective cause or operative independently. *See, e.g., Morrisey*, 2014 WL 12814021, at *12 ("In West Virginia, intervening criminal acts break the chain of causation only when they are unforeseeable. Additionally, an intervening cause, in order to relieve a person charged with negligence in connection with an injury, must be a negligent act, or omission, which constitutes a new effective cause and operates independently of any other act,

making it and it only, the proximate cause of the injury. That is not the case here. The Court concludes Defendants are unable to show any intervening cause constitutes a new effective cause and operates independently of any other act, making it and it only, the proximate cause of the injury . . . Therefore, the 'intervening causes' argument fails.") (quotation marks and citations omitted).

### G. Public Nuisance

35. The Court finds and concludes that a claim for public nuisance is not limited to property disputes and that West Virginia courts have applied the public nuisance doctrine in numerous contexts, including in opioids cases like this. *See, e.g.*, *Morrisey*, 2014 WL 12814021, at *8 n.9 ("Our Supreme Court has stated that a nuisance has a 'broad definition' and that 'nuisance is a flexible area of the law that is adaptable to a wide variety of factual situations.'") (quoting *Sharon Steel Corp. v. City of Fairmont*, 334 S.E.2d 616, 621 (1985)). *See also Lemongello*, 2003 WL 21488208, at *2 ("This Court finds that West Virginia law does not limit claims of public nuisance to those dealing with real property."); Restatement (Second) of Torts § 821B cmt. H (1979) ("a public nuisance does not necessarily involve interference with use and enjoyment of land"); Restatement (Second) of Torts § 821B(2)(a) ("a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience").

36. The Court further finds and concludes that Plaintiffs have adequately alleged that Defendants interfered with a public right. (*See, e.g.*, Compl. ¶¶ 26, 34, 42, 44, 47, 51, 607, 610, 675, 678, 679, 686.) *See also Morrisey*, 2014 WL 12814021, at *9 ("An unreasonable interference includes acts that significantly interfere with public health, safety, peace, comfort, or convenience, conduct that is contrary to a statute, ordinance, or regulation, or conduct that is of a continuing nature or one which has produced a permanent or long-lasting effect upon the public right, an

13

effect of which the actor is aware or should be aware.") (citing Restatement (Second) of Torts § 821B(2)); *In re Opioid Litigation*, No. 400000/2017, at 13.

37. The Court further finds and concludes that Plaintiffs have adequately alleged causation with regard to their public nuisance claim. "The rule employed with respect to limitations on liability, whatever label is used, in public nuisance actions must be less restrictive than in individual tort actions." *NAACP v. AcuSport, Inc.*, 271 F. Supp. 2d 435, 497 (E.D.N.Y. 2003). As such, in public nuisance claims, "where the welfare and safety of an entire community is at stake, the cause need not be so proximate as in individual negligence cases." *Id.* at 497. Also, "[i]ntervening actions, even multiple or criminal actions taken by third parties, do not break the chain of causation if a defendant could reasonably have expected their nature and effect." *Id.* Thus, as in *Morrisey*, Plaintiffs have adequately pled causation.

38. Finally, under West Virginia law, Plaintiffs are specifically authorized to bring an action to "abate or cause to be abated" a public nuisance. W.Va. Code § 7-1-3kk. West Virginia caselaw recognizes broad remedies—including the recovery of costs—in abatement. *See, e.g., Witteried v. City of Charles Town*, No. 17-cv-0310, 2018 WL 2175820, at *3 (W. Va. May 11, 2018) (allowing city to recover costs of demolition of building determined to be public nuisance). Restitution is also an available remedy in public nuisance cases under the common law. *See, e.g., State v. Auer Sprayed Insulations*, No. 86-cv-458, 1987 WL 1428107 (W. Va. Cir. Ct. Sept. 4, 1987) (permitting restitution in public nuisance action by State seeking to recover costs of asbestos abatement) (citing Restatement of Restitution § 115). Thus, the Court further finds and concludes that Plaintiffs may recover damages for their public nuisance claim.

H. **Unjust Enrichment**

39. The elements of an unjust enrichment are "(1) a benefit conferred upon the [defendant], (2) an appreciation or knowledge by the defendant of such benefit, and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *Employer Teamsters-Local Nos. 175/505 Health & Welfare Tr. Fund v. Bristol Myers Squibb Co.*, 969 F. Supp. 2d 463, 471 (S.D. W. Va. 2013).

40. In the present case, Plaintiffs need not establish that they wrote a check to Defendants. "A person may be unjustly enriched not only where he receives money or property, but also where he otherwise receives a benefit. He receives a benefit . . . where he is saved expense or loss." *Prudential Ins.*, 180 W. Va. at 215, 376 S.E.2d at 109 (quotation marks and citation omitted).

41. A direct transactional relationship is not a prerequisite for unjust enrichment. *See Absure, Inc. v. Huffman*, 213 W. Va. 651, 654-55, 584 S.E.2d 507, 510-11 (2003) (improper indirect payment could be basis for unjust enrichment, and "a third party connected with a transaction may seek restitution where there is unjust enrichment which resulted from the third party satisfying an obligation of the unjustly enriched party") (citing *Prudential Ins. Co. v. Couch*, 180 W. Va. 210, 376 S.E.2d 104 (1988)); *Dunlap v. Hinkle*, 173 W. Va. 423, 426, 317 S.E.2d 508, 512 n. 2 (1984) ("unjust enrichment does not necessitate a finding of privity of contract between the parties.") (citations omitted). *Realmark Developments, Inc. v. Ranson*, 214 W. Va. 161, 164, 588 S.E.2d 150, 153 (2003) ("[I]f benefits have been received and retained under such circumstance that it would be inequitable and unconscionable to permit the party receiving them

to avoid payment therefor, the law requires the party receiving the benefits to pay their reasonable value.")(quotation marks and citation omitted).

42. The Court finds and concludes that Plaintiffs' Complaint sufficiently alleges the elements of unjust enrichment in this case. The Complaint alleges that as a result of Defendants' wrongful conduct in distributing opioids Plaintiffs have incurred increased opioid-related costs. Defendants have benefitted from Plaintiffs having paid for these costs caused by Defendants' negative externalities (*i.e.*, the cost of the harms caused by their wrongful practices). Defendants knowingly saved on expenses, thereby allowing them to distribute more opioids, and make more money, than if they had internalized the actual cost of their activities. Therefore, Defendants have received a benefit unjustly financed by Plaintiffs.

### I. Fraudulent Concealment

43. "Fraudulent concealment involves the concealment of facts by one with knowledge or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud." *Trafalgar House Const., Inc. v. ZMM, Inc.*, 211 W. Va. 578, 584, 567 S.E.2d 294, 300 (2002).

44. The Court finds and concludes that Plaintiffs have adequately alleged concealment and knowledge. (Compl. ¶ 701), a duty to disclose (*id.* ¶¶ 641, 644), and intent (*id.* ¶ 645).

## ORDER

FILED
2018 DEC 28  AM 11: 11

Based upon the foregoing Findings of Fact and Conclusions of Law, the Court, taking the allegations in the Complaint as true and construing the Complaint in the light most favorable to Plaintiffs, **FINDS** that Plaintiffs' Complaint sufficiently states claims for relief against the Defendants and the Defendants have not demonstrated beyond doubt that Plaintiffs can prove no set of facts in support of their claims (as it must do to succeed on a motion to dismiss). Accordingly, it is

**ORDERED** that Defendants' Motion to Dismiss is denied in its entirety.

It is further **ORDERED** that all exceptions and objections are noted and preserved.

It is further **ORDERED** that an attested copy of this Order shall be provided to all counsel of record.

**ENTERED** THIS 28th day of December, 2018.

_____
Honorable David W. Hummel, Jr.
Judge of the Circuit Court
Marshall County, West Virginia

A Copy Teste:
Joseph M. Rucki, Clerk
By _____ Deputy

17