# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF WEST VIRGINIA

CITY OF HUNTINGTON,

                  Plaintiff,

v.

AMERISOURCEBERGEN DRUG
CORPORATION, *et al.*,

                  Defendants.

CABELL COUNTY COMMISSION,

                  Plaintiff,

v.

AMERISOURCEBERGEN DRUG
CORPORATION, *et al.*,

                  Defendants.

Civil Action No. 3:17-cv-01362

*Consolidated case:*
Civil Action No. 3:17-01665

Hon. David A. Faber

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE NUISANCE

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................. 1

II.    LEGAL STANDARD ............................................................................................ 2

III.   ARGUMENT ........................................................................................................ 2

      A.    Defendants' Conduct Interfered with a Public Right .......................................... 2

      B.    West Virginia Law Encompasses Plaintiffs' Public Nuisance
          Claims .................................................................................................................. 9

           1.    Public nuisance law is not limited to interference with
               public property or resources ..................................................................... 9

           2.    Plaintiffs' claims are not excluded from nuisance law
               because they arise from the distribution of products............................. 10

IV.   CONCLUSION ................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**                                                                                                      **Page(s)**

*AmerisourceBergen Drug Corp. v. Hummel*,
    No. 19-0210 (W. Va. June 4, 2019) ........................................................................... 1, 8, 11

*In re: Opioid Litig.*,
    No. 19-C-09000 (Kanawha Cty. Cir. Ct. Oct. 9, 2019) (adopting and applying
    the reasoning and rulings from *Brooke County Commission*), *writ denied*,
    *State ex rel. AmerisourceBergen Drug Corp. v. Moats*, No. 19-1051 (W. Va.
    Jan. 30, 2020) .......................................................................................................................1

*State ex rel. AmerisourceBergen Drug Corp. v. Moats*,
    No. 19-1051 (W. Va. Jan. 30, 2020) .....................................................................................11

*State ex. rel. AmerisourceBergen Drug Corp. v. Thompson*,
    No. 15-1026 (W. Va. Jan. 5, 2016) .......................................................................................11

*Backus v. City of Parkersburg*,
    980 F. Supp. 2d 741 (S.D. W. Va. 2013).................................................................................2

*Ballengee v. CBS Broad., Inc.*,
    968 F.3d 344 (4th Cir. 2020) ..................................................................................................2

*Brooke Cty. Comm'n v. Purdue Pharma, L.P.*,
    No. 17-C-248 ............................................................................................................. 1, 8, 10, 11

*City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*,
    No. 3:18-CV-07591-CRB, 2020 WL 5816488 (N.D. Cal. Sept. 30, 2020) .............................1

*City of Boston v. Purdue Pharma, L.P.*,
    No. 1884CV02860, 2020 WL 977056 (Mass. Super. Ct. Jan. 31, 2020)...............................12

*City of Cincinnati v. Beretta U.S.A. Corp.*,
    768 N.E.2d 1136 (Ohio 2002)...............................................................................................12

*City of New York v. Beretta U.S.A. Corp.*,
    315 F. Supp. 2d 256 (E.D.N.Y. 2004)...................................................................................12

*City of Wyoming v. Procter & Gamble Co.*,
    210 F. Supp. 3d 1137 (D. Minn. 2016) .................................................................................12

*Comm'r v. Estate of Bosch*,
    387 U.S. 456 (1967)...............................................................................................................11

*Commonwealth v. Barnes & Tucker Co.*,
    319 A.2d 871 (Pa. 1974)........................................................................................................12

*Delaney v. Deere and Co.*,
    268 Kan. 769, 999 P.2d 930 (2000) ...................................................................13

*Duff v. Morgantown Energy Assocs. (M.E.A.)*,
    187 W. Va. 712, 421 S.E.2d 253 (1992) ......................................................... 3, 14

*People ex rel. Gallo v. Acuna*,
    929 P.2d 596 (Cal. 1997)....................................................................................12

*Gov't of U.S. Virgin Islands v. Takata Corp.*,
    No. ST-16-CV-286, 2017 WL 3390594 (V.I. Super. Ct. June 19, 2017) .............12

*Handeen v. Lemaire*,
    112 F.3d 1339 (8th Cir. 1997) ............................................................................2

*Ileto v. Glock Inc.*,
    349 F.3d 1191 (9th Cir. 2003) ...........................................................................12

*City of Gary ex rel. King v. Smith & Wesson Corp.*,
    801 N.E.2d 1222 (Ind. 2003) .............................................................................12

*Lemongello v. Will Co.*,
    No. CIV.A. 02-C-2952, 2003 WL 21488208 (W. Va. Cir. Ct. June 19, 2003)............... 10, 11

*State ex rel. Morrisey v. AmerisourceBergen Drug Corp.*,
    No. 12-C-141, 2014 WL 12814021 (W. Va. Boone Cty. Cir. Ct. Dec. 12,
    2014), *writ denied*, *State ex rel. AmerisourceBergen Drug Corp. v. Thompson*,
    No. 15-1026 (W. Va. Jan. 5, 2016) ..................................................... 1, 8, 10, 11

*In re Nat'l Prescription Opiate Litig.*,
    406 F. Supp. 3d 672 (N.D. Ohio 2019) ............................................................1, 7

*In re Nat'l Prescription Opiate Litig.*,
    No. 1:17-MD-02804, 2019 WL 2468267 (N.D. Ohio Apr. 1, 2019).....................1

*In re Nat'l Prescription Opiate Litig.*,
    No. 1:17-MD-2804, 2019 WL 3737023 (N.D. Ohio June 13, 2019).....................1

*In re Opioid Litig.*,
    2018 WL 3115102 (N.Y. Sup. Ct. June 18, 2018).............................................12

*In re: Opioid Litigation*,
    No. 19-C-19000 (Kanawha Cty. Cir. Ct. Oct. 9, 2019).......................................11

*People v. ConAgra Grocery Prods. Co.*,
    17 Cal. App. 5th 51, 227 Cal. Rptr. 3d 499 (Cal. Ct. App. 2017)..........................12

*Potter v. Chicago Pneumatic Tool Co.*,
   694 A.2d 1319 (Conn. 1997) ...........................................................13

*Rhodes v. E.I. du Pont de Nemours & Co.*,
   636 F.3d 88 (4th Cir. 2011) .........................................................7, 14

*Rhodes v. E.I. du Pont de Nemours and Co.*,
   657 F.Supp.2d 751 (S.D. W. Va. 2009) .........................................3

*Ritter v. Dalton*,
   129 F.3d 117 (4th Cir. 1997) .........................................................2

*Sharon Steel Corp. v. City of Fairmont*,
   175 W. Va. 479, 334 S.E.2d 616 (1985) ......................................9, 10

*State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*,
   200 W. Va. 221, 488 S.E.2d 901 (1997) ......................................3, 9

*State of Maryland v. Exxon Mobil Corp.*,
   406 F. Supp. 3d 420 (D. Md. 2019) ...............................................12

*Tincher v. Omega Flex, Inc.*,
   104 A.3d 328 (Pa. 2014) ................................................................13

*Wells v. Liddy*,
   186 F.3d 505 (4th Cir. 1999) .........................................................11

**Statutes**

W.Va. Code § 7-1-3kk .........................................................................2

W.Va. Code § 8-12-5-23 .....................................................................2

**Other Authorities**

19 Fed. Prac. & Proc. Juris. § 4507, n.48 (3d ed.).........................11

Restatement (Second) of Torts .................................................. 3, 7, 13, 14

Restatement (Third) of Torts: Liab. for Econ. Harm. ....................9, 13, 14

William L. Prosser, *Handbook of the Law of Torts* § 87 (4th ed. 1971).....................12

## I.     INTRODUCTION

In their Motion for Summary Judgment Re Nuisance, Dkt. 1004 (referred to herein as "Nuisance MSJ"), Defendants argue that Plaintiffs do not have a valid public nuisance claim for two reasons. First, Defendants mischaracterize the harms at issue to argue that only individual, private rights are implicated by the devastation of the opioid epidemic, such that there is no interference with a public right, as required for a public nuisance claim. The evidence in this case shows exactly the opposite: the effects of the opioid epidemic are far-reaching, sparing no member of Plaintiffs' communities, and giving rise to a substantial interference with public health and safety—rights common to the general public, as both the MDL court and multiple West Virginia courts have already recognized.[1] Second, Defendants contend that public nuisance law in West Virginia is narrow and does not extend to public nuisances involving products, relying primarily on decisions from other jurisdictions and a provision of the Restatement (Third) of Torts that the West Virginia Supreme Court of Appeals has not adopted. The current definition of public nuisance under West Virginia law, however, supports a broad application of public nuisance, and West Virginia courts have repeatedly upheld public nuisance claims against these same Defendants for their excessive distribution of opioids in West Virginia communities.

---

[1] *In re Nat'l Prescription Opiate Litig.*, 406 F. Supp. 3d 672, 674 (N.D. Ohio 2019) (Exhibit 1); *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 3737023, at *10 (N.D. Ohio June 13, 2019) (rejecting defendants' argument that "the urgent public health crisis they allegedly created is a collection of individual rights and that 'public health' and 'public right' are not synonymous" and adopting report and recommendation's "thoughtful analysis on the issue of public rights") (Exhibit 2); *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-02804, 2019 WL 2468267, at *30-32 (N.D. Ohio Apr. 1, 2019) (report and recommendation) (Exhibit 3); *City and County of San Francisco, et al. v. Purdue Pharma L.P., et al.*, No. 3:18-CV-07591-CRB, 2020 WL 5816488, at *34-*45 (N.D. Cal. Sept. 30, 2020) (denying motion to dismiss public nuisance claim); *Brooke Cty. Comm'n v. Purdue Pharma, L.P.*, No. 17-C-248, p. 13 (W. Va. Marshall Cty. Cir. Ct. Dec. 28, 2018) (Exhibit 4), *writ denied*, *State ex rel. AmerisourceBergen Drug Corp. v. Hummel*, No. 19-0210 (W. Va. June 4, 2019) (Exhibit 5); *State ex rel. Morrisey v. AmerisourceBergen Drug Corp.*, No. 12-C-141, 2014 WL 12814021, at *10 (W. Va. Boone Cty. Cir. Ct. Dec. 12, 2014) (Exhibit 6), *writ denied*, *State ex rel. AmerisourceBergen Drug Corp. v. Thompson*, No. 15-1026 (W. Va. Jan. 5, 2016) (Exhibit 7); *In re: Opioid Litig.*, No. 19-C-09000 (Kanawha Cty. Cir. Ct. Oct. 9, 2019) (Exhibit 8) (adopting and applying the reasoning and rulings from *Brooke County Commission*), *writ denied*, *State ex rel. AmerisourceBergen Drug Corp. v. Moats*, No. 19-1051 (W. Va. Jan. 30, 2020) (Exhibit 9).

The public nuisance is the hazard to public health and safety in Huntington and Cabell County arising out of the misconduct of those in the chain of distribution of prescription opioids. The City of Huntington and the Cabell County Commission have statutory standing to eliminate the hazards to public health and safety to abate or, cause to abate, the public nuisance. W.Va. Code § 7-1-3kk; W.Va. Code § 8-12-5-23. Defendants' motion for summary judgment should be denied.

## II.    LEGAL STANDARD

Summary judgment is warranted only when the movant can show that the parties have "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Ballengee v. CBS Broad., Inc.*, 968 F.3d 344, 349 (4th Cir. 2020) (citing Fed. R. Civ. P. 56(a)). On a motion for summary judgment for failure to state a claim, where the moving party fails to make "meaningful reference to affidavits, depositions, or interrogatories" in its motion for summary judgment, the court uses the Rule 12(b)(6) standard to evaluate the motion. *Handeen v. Lemaire*, 112 F.3d 1339, 1346 (8th Cir. 1997); *see also Ritter v. Dalton*, 129 F.3d 117 (4th Cir. 1997). On any motion for summary judgment, the court must draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Backus v. City of Parkersburg*, 980 F. Supp. 2d 741, 743 (S.D. W. Va. 2013) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986)).

## III.    ARGUMENT

### A.    Defendants' Conduct Interfered with a Public Right.

Defendants mischaracterize Plaintiffs' claims to argue that the harms Plaintiffs seek to abate are based on a private right: "the inherently private right that each individual has not to be injured by a product," Nuisance MSJ at 8, or, more specifically, "a right not to become addicted to prescription opioids by reason of allegedly deceptive marketing or claimed over-distribution." Nuisance MSJ at 13. Plaintiffs' claims, however, are based on harms to public health and public

safety. The opioid epidemic in Cabell County has affected the general public; no one in Huntington or Cabell County has been left untouched. The burden of the opioid epidemic is borne by the community as a whole—including law enforcement, first responders, healthcare workers, the courts, employers, teachers, and families—and by local governments like Plaintiffs that are responsible for serving their citizens.

As Defendants acknowledge, *see* Nuisance MSJ at 8 n. 10, the West Virginia Supreme Court of Appeals has defined a public nuisance as "an act or condition that unlawfully operates to hurt or inconvenience an indefinite number of persons" and noted that "this definition is consistent with the Restatement (Second) of Torts § 821B(1) (1979), which defines a public nuisance as 'an unreasonable interference with a right common to the general public.'" *Duff v. Morgantown Energy Assocs. (M.E.A.)*, 187 W. Va. 712, 716, 421 S.E.2d 253, 257 and n.6 (1992). The Restatement (Second) of Torts identifies as one example of an unreasonable interference with public rights conduct that "involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience." Restatement (Second) of Torts § 821B(2)(a) (1979). West Virginia case law confirms the role of public nuisance actions in addressing harms to the public health and safety. *See, e.g.*, *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 200 W. Va. 221, 245, 488 S.E.2d 901, 925 (1997) ("A public nuisance action usually seeks to have some harm which affects the public health and safety abated."); *see also Rhodes v. E.I. du Pont de Nemours and Co.*, 657 F.Supp.2d 751, 768 (S.D. W. Va. 2009) (citing Restatement (Second) of Torts § 821B cmt. b for the point that "conduct interfering with the public health constitutes a public nuisance").

Plaintiffs' witnesses testified extensively to the impact of the opioid epidemic on every member of the Cabell Huntington Community. For example, Jan Rader, Fire Chief for the City

of Huntington, testified, "There's not one person in this area that I know that has not been touched or had collateral damage to them, themselves from the … opioid epidemic. It is horrendous." Deposition of Jan Rader, June 17, 2020, at 78:23-79:3 (attached as Exhibit 10). Rader described the effect of the opioid epidemic on the community as the equivalent of growing up in a war zone: "This is a war zone. This is a war zone for first responders. It's a war zone for children. That's all they know growing up, is death and destruction." *Id.* at 201:16-19. Similarly, Scott Lemley, former member of the City's Office of Drug Control Policy for the Huntington Police Department, testified that the opioid epidemic "has affected every aspect of what we do in Huntington from social—It's socioeconomic. It affects the University; it affects our medical community; it affects our quality of life and our parks; it affects our first responders; it affects our property values." Deposition of Scott Lemley, July 3, 2020, at 303:15-20 (attached as Exhibit 11).

Although Defendants attempt to frame the harms of the opioid epidemic as only affecting individuals struggling with addiction or those who have overdosed, all members of the community are affected by the devastation. Law enforcement and first responders, in particular, have been exposed to trauma above and beyond the normal experience of their already demanding jobs. Gordon Merry, Director of Cabell County EMS, testified to the toll the opioid epidemic has taken on his staff, describing it as "a very, very horrible experience. I wouldn't wish this on anybody. Medics have left. Going into houses where the mothers overdose and the kids are sitting their [sic] crying, wanting to know what's wrong with their mother. It's mentally—and it's definitely taken its toll on the staff, turnovers, horrible. And it's not just EMS. It's police, fire, EMS, and hospitals. It's answering the same call or answering a call for the same person two or three times a day. It was a revolving door, on top of their normal calls that they

4

had to answer. And the stress level was very high." Deposition of Gordon Merry, at 36:9-20 (attached as Exhibit 12). Mr. Merry further testified that Cabell County and the City of Huntington "have gone above and beyond trying to save our community. Because it absolutely destroyed this community. I grew up here. I've been here 67 years. It's been devastating. My partner's daughter is dead because she overdosed. As I said, one of my employees. It's been devastating to us, to this community, to have this happen." *Id.* at 92:10-16. The increased need to respond to opioid-related emergencies also means that first responders are less able to address other needs in the community.

Plaintiffs' experts will also testify to the impact of the opioid epidemic on the Cabell Huntington Community at large. For example, Plaintiffs' expert Thomas McGuire, Ph.D., has described the impact of the opioid epidemic as "affecting virtually all residents in the Community" and creating a "general loss of well-being in this Community":

> It is difficult to overstate the impact of the opioid epidemic on the Cabell Huntington Community. West Virginia, and Cabell County in particular, is near the top of the nation on opioid overdose rates (fatal and non-fatal), number of babies born with neonatal abstinence syndrome (NAS), and the number of prescription opioids dispensed (both in absolute number and per capita). The opioid epidemic has contributed to outbreaks of other diseases, such as Hepatitis C and HIV, and led to burnout and trauma amongst police officers, fire fighters, emergency medical technicians, and other first responders. The unprecedented numbers of babies born with NAS will have long-lasting effects. The ravages of the opioid epidemic are far reaching, affecting virtually all residents in the Community, much of it documented via media coverage on the different facets of the epidemic. The opioid epidemic has increased criminal activity, reduced housing values, and imposed a general loss of well-being in this Community.

Expert Report of Thomas McGuire, Ph.D., at 11-12 ("McGuire Report," attached as Exhibit 13).

In addition, as Dr. McGuire explained, the opioid epidemic has increased the rate of crime, decreased property values, and adversely affected neighborhoods throughout Plaintiffs' community:

> One pernicious and impossible-to-miss harm from the opioid epidemic is neighborhood blight, the degradation of neighborhoods contaminated by drug sellers, drug users, and crime.  The association between crime, empty homes, and neighborhood decline is widely documented. Homes and neighborhoods in the Cabell Huntington Community have been severely adversely affected by the opioid epidemic, with hundreds of homes demolished due to abandonment, crime, and uninhabitability. . . . The opioid epidemic degrades neighborhoods along many dimensions.  Risk of crime, loss of safe public space, loss of connection with neighbors and other harms interfere with residents' ability to appreciate where they live.  Degradation lowers home property values and lowers residents' valuation of parks, public transportation, schools, and other local public services.

McGuire Report at 51-53.

Moreover, the effects of the opioid epidemic on the Cabell Huntington Community will be long-lasting, as a generation of children carry its burdens for years, with corresponding impact on educators and caregivers. Plaintiffs' expert Dr. Katherine Keyes will testify that "[c]hildren in the Cabell Huntington Community are expected to experience a large burden of psychiatric disorders and learning disorders throughout pre-school and school-age developmental periods due to in utero exposure to opioids as well as parental opioid use during development." Expert Report of Katherine Keyes, Ph.D., at 45 (attached as Exhibit 14). Dr. Keyes also identified several local officials "who confirm experience in the community indicating that the burden of parental and caregiver opioid use to children in the Cabell Huntington Community is ongoing and significant, disrupting the home as well as the learning environment." *Id.* at 46.

As the above-cited testimony demonstrates, Plaintiffs are not seeking to vindicate private rights, nor are they arguing that the opioid epidemic interferes with a public right simply because it affects a large number of individuals (though it does). The opioid epidemic in Huntington and Cabell County has affected the right to public health, safety, and comfort belonging to the entire community. As Defendants acknowledge, "it is the inherent nature of the right, not the number of persons affected, that defines a public right for purposes of public nuisance law."  Nuisance MSJ at 8. Plaintiffs' claims are based on a significant interference with rights common to the general

public: the rights to the health and safety of the community at large. If the interest invaded "is an interest shared equally by members of the public, then the alleged nuisance is public in nature." *Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 96 (4th Cir. 2011). The fact that an interference with a public right will invariably affect individual members of the public does not change the nature of the right. *Id.* (explaining that, where the defendant's conduct "interfered with the general public's access to clean drinking water," "[t]he fact that the water eventually was pumped into private homes did not transform the right interfered with from a public right to a private right").

In the MDL, Judge Polster has repeatedly rejected the same arguments by defendants that the rights at issue in this litigation are individual rights rather than rights common to the general public. *In re Nat'l Prescription Opiate Litig.*, 406 F. Supp. 3d 672, 674 (N.D. Ohio 2019) ("The Court has previously rejected arguments that: (i) Plaintiffs' claims rely on an aggregation of individual rights, as opposed to rights commonly held by the public; and (ii) none of the allegedly interfered-with rights constitute public rights."). Noting the plaintiffs' evidence of increased opioid-related overdoses, hospital admissions, foster-care placements, and arrests, Judge Polster held that "[a] factfinder could reasonably conclude that this evidence demonstrates an interference with public health and public safety rights." *Id.* In so holding, Judge Polster applied Ohio law which, like the law in West Virginia, follows Section 821B of the Restatement (Second) of Torts. *See id.* (quoting *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1142 (Ohio 2002) ("'A public nuisance is an unreasonable interference with a right common to the general public,' and unreasonable interference includes acts that 'significantly interfere with public health, safety, peace, comfort or convenience'") (quoting 4 Restatement of the Law 2d, Torts (1965), § 821B(1)-(2)).

Consistent with this reasoning, West Virginia state courts considering similar allegations have repeatedly concluded that the plaintiffs adequately alleged an interference with a public right based on the impact of the opioid epidemic on West Virginia communities. *See Brooke Cty. Comm'n v. Purdue Pharma, L.P.*, No. 17-C-248, p. 13 (W. Va. Marshall Cty. Cir. Ct. Dec. 28, 2018) (Exhibit 4) ("The Court further finds and concludes that Plaintiffs have adequately alleged that Defendants interfered with a public right."), *writ denied*, *State ex rel. Cardinal Health, Inc. v. Hummel*, No. 19-0210 (W. Va. June 4, 2019) (Exhibit 5); *State ex rel. Morrisey v. AmerisourceBergen Drug Corp.*, No. 12-C-141, 2014 WL 12814021, at *10 (W. Va. Boone Cty. Cir. Ct. Dec. 12, 2014) (Exhibit 6), (concluding that "the State's public nuisance claim sufficiently alleges the safety and health and morals of the people of West Virginia has been compromised due to Defendants' alleged wrongful influx of addictive, controlled substances into West Virginia, thereby causing substantial injury to West Virginia citizens and taxpayers"), *writ denied*, *State ex. rel. AmerisourceBergen Drug Corp. v. Thompson*, No. 15-1026 (W. Va. Jan. 5, 2016) (Exhibit 7).

In contrast to these West Virginia cases and the evidence of the harm to the Cabell Huntington Community's right to public health and safety, Defendants' reliance on out-of-state authorities is unpersuasive. *See* Nuisance MSJ at 11 (citing *State v. Lead Industries Association*, 951 A.2d 428 (R.I. 2008) and *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099 (Ill. 2004)). Defendants' assertion that the harm Plaintiffs seek to abate "is the addiction of individual city and county residents," *id.* at 13, ignores the reality of how the opioid epidemic has changed life for every member of the Cabell Huntington Community, and their argument that public health and safety are not public rights is inconsistent with West Virginia law.

**B.    West Virginia Law Encompasses Plaintiffs' Public Nuisance Claims**

Defendants' motion repeatedly asks this Court to impose limitations that have no basis in West Virginia law. Relying primarily on a provision in the Restatement (Third) of Torts that West Virginia has not adopted, Defendants seek a narrow and rigid application of public nuisance that is directly contrary to the Supreme Court of Appeal's interpretation and guidance. This Court should reject this attempt to redefine West Virginia law.

**1.    Public nuisance law is not limited to interference with public property or resources.**

Defendants argue that West Virginia public nuisance law is limited to interference with public property or resources. Nuisance MSJ at 3-4. They base this argument on the list of cases involving public nuisance claims discussed in *Sharon Steel Corp. v. City of Fairmont*, 175 W. Va. 479, 483-84, 334 S.E.2d 616, 621 (1985)—notwithstanding that this list of cases follows, and illustrates, the Supreme Court of Appeals' statement that "nuisance is a flexible area of the law that is adaptable to a wide variety of factual situations." *Id.* at 483. Defendants argue that this statement of flexibility and the illustrative list of cases should be interpreted as showing that "this flexibility is confined to a category of injury involving public property or resources." Nuisance MSJ at 5. Defendants do not, however, cite any authority agreeing with their interpretation of *Sharon Steel*.

In *Kermit Lumber*, the Supreme Court of Appeals noted that "[t]he term 'public nuisance' does not have an exact definition[,]" but that, "[g]enerally, it has been described as 'the doing of or the failure to do something that injuriously affects the safety, health, or morals of the public, or works some substantial annoyance, inconvenience, or injury to the public[.]'" *Kermit Lumber*, 200 W. Va. at 245 n.28 (quoting 58 Am.Jur.2d Nuisances § 35 (1989)). Citing *Kermit Lumber*,

the Boone County Circuit Court held that the State of West Virginia's claims against opioid

distributors "fit squarely" within this definition of public nuisance:

> The Court concludes the Amended Complaint's allegations fit squarely within the
> definition of a public nuisance under West Virginia law. The State alleges
> Defendants "failed to do something," that is, they failed to provide effective
> controls against the diversion of controlled substances and failed to design and
> operate a system that discloses suspicious orders of controlled substances, failed
> to live up to industry standards—each one a failure that "injuriously affects the
> safety, health, or morals of the public, or works some substantial annoyance,
> inconvenience, or injury to the public."

*Morrisey*, 2014 WL 12814021 at *9 (citing *Kermit Lumber*, 200 W. Va. at 245 n. 28). Similarly,

the Marshall County Circuit Court held that "a claim for public nuisance is not limited to

property disputes and that West Virginia courts have applied the public nuisance doctrine in

numerous contexts, including in opioids cases like this." *Brooke Cty. Comm'n* at p. 13. *See also*

*Lemongello v. Will Co.*, No. CIV.A. 02-C-2952, 2003 WL 21488208, at *2 (W. Va. Cir. Ct. June

19, 2003) (holding, in case alleging that the defendants' sale of handguns supplied an illegal

handgun market, that "West Virginia law does not limit claims of public nuisance to those

dealing with real property").

These cases contradict Defendants' argument that West Virginia nuisance law is narrow

and "confined" to a single category of claims.

### 2.   Plaintiffs' claims are not excluded from nuisance law because they arise from the distribution of products.

Defendants also broadly argue that the Supreme Court of Appeals would reject public

nuisance claims "involving the distribution and subsequent use or misuse of a product."

Nuisance MSJ at 5. This sweeping assertion, however, is unsupported by West Virginia case law.

The law of public nuisance in West Virginia, as the Supreme Court of Appeals has explained, "is

adaptable to a wide variety of factual situations," *Sharon Steel Corp.*, 175 W. Va. at 483, and

West Virginia courts have upheld public nuisance claims involving the distribution and

subsequent use of products, including firearms and opioids. *See Lemongello*, 2003 WL

21488208; *Morrisey*, 2014 WL 12814021; *Brooke Cty. Comm'n*, Ex. 3. Contrary to Defendants'

argument that West Virginia's high court would reject such claims, the Supreme Court of

Appeals has on multiple occasions denied review of trial court decisions upholding public

nuisance claims based on the distribution of opioids. *See State ex. rel. AmerisourceBergen Drug*

*Corp. v. Thompson*, No. 15-1026 (W. Va. Jan. 5, 2016) (attached as Exhibit 7); *State ex rel.*

*AmerisourceBergen Drug Corp. v. Hummel*, No. 19-0210 (W. Va. June 4, 2019) (Exhibit 5). In

addition, the court in *In re: Opioid Litigation*, No. 19-C-19000 (Kanawha Cty. Cir. Ct. Oct. 9,

2019) (Exhibit 8), considering similar arguments to dismiss claims based on harms from the

opioid epidemic, adopted and applied the reasoning and rulings from *Brooke County*

*Commission*, and the Supreme Court of Appeals again denied review. *See State ex rel.*

*AmerisourceBergen Drug Corp. v. Moats*, No. 19-1051 (W. Va. Jan. 30, 2020) (Exhibit 9). The

uniformity of the trial court decisions, along with the repeated denials of review by the Supreme

Court of Appeals, provide persuasive guidance as to how the Supreme Court of Appeals would

rule on Defendants' arguments here.[2]

Simply put, there is no exception to public nuisance law for claims involving products, if

the use or distribution of those products creates an unreasonable interference with a public right.

Defendants' arguments to the contrary are "based upon an entirely mistaken emphasis upon what

---

[2] Under *Erie*, this Court's task is to predict how the Supreme Court of Appeals would rule. *Wells v. Liddy*, 186 F.3d 505, 527–28 (4th Cir. 1999). In doing so this Court can consider a broad range of sources, including trial court decisions. *Id.* ("To forecast a decision of the state's highest court we can consider, *inter alia*: canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered dicta, and the state's trial court decisions."). While not binding, West Virginia Circuit Court decisions provide persuasive guidance to a federal court sitting in diversity—particularly when uniform, as here. 19 Fed. Prac. & Proc. Juris. § 4507, n.48  (3d ed.) (citing cases) ("Trial court uniformity signals how a state's highest court would rule."); *see also Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967) ("If there be no decision by [the State's highest court] then federal authorities must apply what they find to be the state law after giving proper regard to relevant rulings of other courts of the State.") (citation and internal quotations omitted).

the defendant has done rather than the result which has followed." *Commonwealth v. Barnes & Tucker Co.*, 319 A.2d 871, 883 (Pa. 1974) (quoting William L. Prosser, *Handbook of the Law of Torts* § 88 at 595 (3d ed. 1964)). The term "nuisance" refers "to the interests invaded, to the damage or harm inflicted, and not to any particular kind of act or omission which has led to the invasion." William L. Prosser, *Handbook of the Law of Torts* § 87 (4th ed. 1971). And while Defendants argue that "most high courts across the country" have not applied public nuisance law to claims involving products, Nuisance MSJ at 5, multiple state supreme courts have upheld product-based nuisance claims in the context of handguns, *see, e.g.*, *City of Cincinnati*, 768 N.E.2d 1136; *City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1229-33 (Ind. 2003); *People ex rel. Gallo v. Acuna*, 929 P.2d 596 (Cal. 1997), while numerous other courts have recognized public nuisance claims involving products including lead paint, "flushable" wipes, gasoline additives, and opioids.[3] In particular, relying on reasoning that is directly applicable here, courts have upheld public nuisance claims where the creation or maintenance of an illicit market for a product due to oversupply gives rise to a public nuisance. *See Ileto v. Glock Inc.*, 349 F.3d 1191, 1214 (9th Cir. 2003) (recognizing public nuisance claims based on the defendants "purposefully over-saturating the legal gun market in order to take advantage of re-sales to distributors that they know or should know will in turn sell to illegal buyers"); *City of New York v. Beretta U.S.A. Corp.*, 315 F. Supp. 2d 256, 276 (E.D.N.Y. 2004) ("Under New York law, a claim for public nuisance may lie against members of the gun industry

---

[3] *See, e.g.*, *People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51, 105, 227 Cal. Rptr. 3d 499, 546 (Cal. Ct. App. 2017) (lead paint); *City of Wyoming v. Procter & Gamble Co.*, 210 F. Supp. 3d 1137, 1162 (D. Minn. 2016) ("flushable" wipes); *State of Maryland v. Exxon Mobil Corp.*, 406 F. Supp. 3d 420 (D. Md. 2019) (MTBE); *City of Boston v. Purdue Pharma, L.P.*, No. 1884CV02860, 2020 WL 977056 (Mass. Super. Ct. Jan. 31, 2020) (distribution of opioids); *In re Opioid Litig.*, 2018 WL 3115102 (N.Y. Sup. Ct. June 18, 2018) (opioids); *Gov't of U.S. Virgin Islands v. Takata Corp.*, No. ST-16-CV-286, 2017 WL 3390594, at *40-44 (V.I. Super. Ct. June 19, 2017) (airbags).

12

whose marketing and sales practice lead to the diversion of large numbers of firearms into the illegal secondary gun market.").

Although Defendants argue repeatedly that this Court "is called upon only to apply West Virginia law as the Supreme Court has applied it," Nuisance MSJ at 5, they rely heavily on a provision of the Third Restatement, not West Virginia law, for their assertion that product-based claims fall outside the bounds of public nuisance law. *See id.* at 6-7 (relying on § 8 of the Restatement (Third) of Torts: Liab. for Econ. Harm (comment g)).  While West Virginia courts have cited Section 821B of the Second Restatement with approval and noted its consistency with West Virginia law, West Virginia courts have not adopted Section 8 of the Third Restatement. Defendants have not provided any examples of West Virginia state courts citing this section, or any other state courts for that matter. Generally, the Third Restatement has been viewed as a radical departure from the settled standards of tort law. *See* Restatement (Third) of Torts: Liab. for Econ. Harm, Introduction, Pg. 3 ("This Restatement is, therefore, an almost total overhaul of Restatement Second as it concerns the liability of commercial sellers of products."). Unlike its predecessor, the Third Restatement has not been widely adopted by the states. *See, e.g.*, *Delaney v. Deere and Co.*, 268 Kan. 769, 999 P.2d 930 (2000) (stating that the (Third) Restatement "goes beyond the law" and is "contrary to the law in Kansas"); *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 348 (Pa. 2014) (declining to adopt a product liability portion of the Third Restatement and discussing other courts across the country that have done the same); *Potter v. Chicago Pneumatic Tool Co.*, 694 A.2d 1319, 1331 (Conn. 1997) (observing that a provision of the Draft Restatement (Third) "has been a source of substantial controversy among commentators" and stating that rule promulgated in the Draft Restatement (Third) was inconsistent with the court's "independent review of the prevailing common law"). No state's highest court has adopted

Section 8, and this Court should be extremely reluctant to presume that West Virginia would if presented with the question.[4]

Instead, as discussed above, West Virginia courts, like those of almost every other state, generally follow the Restatement (Second) of Torts, *See Duff*, 187 W. Va. at 716 n.6 ("We believe this definition [of public nuisance] is consistent with the Restatement (Second) of Torts § 821B(1) (1979)"). As Defendants acknowledge, this Court, as a federal court sitting in diversity, must apply West Virginia's law as it finds it. *See Rhodes*, 636 F.3d at 96 ("a federal court should not interpret state law in a manner that may appear desirable to the federal court, but has not been approved by the state whose law is at issue"). Here, the Supreme Court of Appeals' explanation that West Virginia's definition of public nuisance is consistent with Section 821B of the Second Restatement, together with its repeated denial of review of trial court rulings upholding public nuisance claims involving the distribution and subsequent use of products, offer clear guidance on the state law. West Virginia law provides a broad and flexible definition of public nuisance—one that fully encompasses Plaintiffs' claims here.

## IV.    CONCLUSION

For the reasons set forth herein, Defendants' Motion for Summary Judgment Re Nuisance should be denied.

---

[4] In any event, by its terms, Section 8 of the Third Restatement doesn't apply to the Plaintiffs' abatement claim here. The provision applies only to claims for economic loss by a private party who has suffered an injury "distinct in kind from those suffered by members of the affected community in general." Restatement (Third) of Torts: Liab. for Econ. Harm, § 8. The comment to Section 8 makes clear that the provision is not intended to apply to public nuisance actions brought by public officials. *Id.*, § 8, com. a ("In addition to the common-law claims recognized here, public officials may bring civil or criminal actions against a defendant who creates a public nuisance. . . . The definition of 'public nuisance' for those purposes is widely a matter of statute, and tends to be considerably broader than the common-law definition recognized by this Section as a basis for a private suit.").

RESPECTFULLY SUBMITTED this 6th day of October, 2020.

**THE CITY OF HUNTINGTON**
/s/ *Anne McGinness Kearse*
Anne McGinness Kearse
WVSB No. 12547
Joseph F. Rice
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: 843-216-9000
Fax: 843-216-9450
akearse@motleyrice.com
jrice@motleyrice.com

Linda Singer
David I. Ackerman
**MOTLEY RICE LLC**
401 9th Street NW, Suite 1001
Washington, DC 20004
Tel:  202-232-5504
Fax:  202-386-9622
lsinger@motleyrice.com
dackerman@motleyrice.com

Charles R. "Rusty" Webb
WV No. 4782
**THE WEBB LAW CENTRE**
716 Lee Street, East
Charleston, West Virginia 25301
Telephone: (304) 344-9322
Facsimile: (304) 344-1157
rusty@rustywebb.com

*On The Brief:*
Derek Loeser
Dean Kawamoto
Alison Gaffney
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
(206) 623-1900
dloeser@kellerrohrback.com
dkawamoto@kellerrohrback.com
agaffney@kellerrohrback.com

**CABELL COUNTY COMMISSION**
/s/ *Paul T. Farrell, Jr.*
Paul T. Farrell, Jr.
WVSB Bar No. 7443
**FARRELL LAW**
422 Ninth Street, 3rd Floor (25701)
PO Box 1180
Huntington, West Virginia 25714-1180
Mobile: 304-654-8281
paul@farrell.law

/s/ *Anthony J. Majestro*
Anthony J. Majestro
WVSB No. 5165
**POWELL & MAJESTRO, PLLC**
405 Capitol Street, Suite P-1200
Charleston, WV 25301
304-346-2889 / 304-346-2895 (f)
amajestro@powellmajestro.com

Michael A. Woelfel
WVSB No. 4106
**WOELFEL AND WOELFEL, LLP**
801 Eighth Street
Huntington, West Virginia 25701
Tel. 304.522.6249
Fax. 304.522.9282
mikewoelfel3@gmail.com

Lou Bograd
**MOTLEY RICE LLC**
401 9th Street NW, Suite 1001
Washington, DC 20004
Tel:  202-232-5504
Fax:  202-386-9622
lbograd@motleyrice.com

Anthony J. Majestro
WVSB No. 5165
**POWELL & MAJESTRO, PLLC**
405 Capitol Street, Suite P-1200
Charleston, WV 25301
304-346-2889 / 304-346-2895 (f)
amajestro@powellmajestro.com

Paulina do Amaral
**LIEFF, CABRASER, HEIMANN &**
**BERNSTEIN, LLC**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel:  212-355-9500
Fax:  212-355-9592
pdoamaral@LCHB.com

## CERTIFICATE OF SERVICE

I certify that on October 6, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. This filing will also be served on all parties by email to:

Track2OpioidDefendants@ReedSmith.com and CT2_Opioid_Team@mail-list.com.


/s/ *Anthony J. Majestro*