Ex 16 - CAH_MDL_PRIORPROD_DEA12_00013056-3103

Plaintiffs' Opposition to Defendants' Motion for Summary Judgment on Proximate Causation Grounds

90950406.1

# APPENDIX E

CONFIDENTIAL

**U. S. Department of Justice**

Drug Enforcement Administration

---

*www.dea.gov*  Washington, D.C. 20537

JAN 3 0 2008

**IN THE MATTER OF**

Cardinal Health
13651 Dublin Court
Stafford, Texas 77477

### ORDER TO SHOW CAUSE

**PURSUANT** to Sections 303 and 304 of the Controlled Substances Act, Title 21, United States Code, Sections 823 and 824,

**NOTICE** is hereby given to afford Cardinal Health ("Registrant") an opportunity to show cause before the Drug Enforcement Administration ("DEA"), at DEA Headquarters located at 600 Army Navy Drive, Arlington, Virginia, at a place and time to be determined, (if Registrant requests such a hearing), as to why DEA should not revoke DEA Certificate of Registration, RC0333524, pursuant to 21 U.S.C. § 824(a)(4), and deny any pending applications for renewal or modification of such registration pursuant to 21 U.S.C. §§ 823(b) and (e), because Registrant's continued registration is inconsistent with the public interest. DEA Certificate of Registration RC0333524 is assigned to Cardinal Health's Stafford, Texas Distribution Center. The basis for this Order to Show Cause is set forth in the following non-exhaustive summary of facts.

1. Registrant is registered with DEA as a distributor in Schedules II-V under DEA number RC0333524 at 13651 Dublin Court, Stafford, Texas 77477. DEA number RC0333524 will expire on May 31, 2008.

2. Registrant distributed massive amounts of particular controlled substances to retail pharmacy customers without maintaining adequate controls to detect and prevent the diversion of controlled substances. For example, from January 2007 through September 2007, Registrant distributed nearly 21 million dosage units of hydrocodone to its retail pharmacy customers. Despite distributing such a large quantity of hydrocodone – a highly addictive and widely abused schedule III controlled substance – Registrant did not have sufficient policies and procedures in place to detect and prevent diversion; did not execute those policies and procedures that were in effect; and failed to provide its employees with the necessary training and resources to detect and prevent diversion.

3. Registrant's distributions of controlled substances to Richmond Pharmacy, AK Pharmacy, and others, were under circumstances that clearly indicated that the pharmacies were engaged in the widespread diversion of controlled substances.

2

4. Notwithstanding the large quantities of controlled substances ordered by these pharmacies, Registrant failed to conduct meaningful due diligence to ensure that the controlled substances were not diverted into other than legitimate channels. Moreover, Registrant continued to supply the pharmacies with controlled substances without conducting due diligence, notwithstanding that the pharmacies were ordering controlled substances in quantities that far exceeded what traditional retail pharmacies order; that the pharmacies were ordering controlled substances on a more frequent basis than Registrant's traditional retail pharmacy customers; and that Registrant was supplying an inordinate amount of controlled substances versus non-controlled substances to these pharmacies.

5. The direct and foreseeable consequence of Registrant's failure to conduct appropriate due diligence was the likely diversion of millions of dosage units of particular controlled substances.

6. Despite Registrant's policy limiting a retail pharmacy customer's purchases of hydrocodone products to 800 dosage units a day, Registrant frequently distributed hydrocodone in quantities that greatly exceeded this limit. Registrant, however, rarely scrutinized these purchases, and in the few instances where Registrant investigated a particular order, it was frequently done by employees with little or no training in the prevention and detection of diversion and/or by employees with a direct financial interest in the successful completion of the transaction.

7. From January 2, 2007 through September 11, 2007, Registrant distributed approximately 1,381,500 dosage units of hydrocodone to Richmond Pharmacy, or approximately 160,000 dosage units each month. During that period, Registrant distributed hydrocodone to Richmond on 142 days. On each of those days, Richmond's purchase of hydrocodone exceeded the daily limit set by Registrant for its retail pharmacy customers. More recently, on each of the eight days in September in which Registrant shipped hydrocodone to Richmond, Richmond grossly exceeded Registrant's threshold of hydrocodone distributions without scrutiny by Registrant's employees. Registrant distributed 66,000 dosage units of hydrocodone to Richmond on September 4, 2007; 6,000 dosage units on September 5, 2007; 12,000 dosage units on September 6, 2007; 18,000 dosage units on September 7, 2007; 48,000 dosage units on September 10, 2007; 24,000 dosage units on September 11, 2007; and 12,000 dosage units on September 12, 2007. Additionally, on September 17, 2007, Registrant shipped 12,000 dosage units of hydrocodone to Richmond, despite having been notified on September 14, 2007, that Richmond surrendered its DEA registration on September 13, 2007, and was no longer authorized to order or dispense controlled substances.

8. Registrant likewise failed to scrutinize the ordering practices of other retail pharmacy customers who exceeded their monthly limit of hydrocodone purchases and other controlled substances, and continued to distribute massive amounts of controlled substances to these customers despite the fact that these customers routinely exceeded, by huge margins, their monthly limit for purchases of particular controlled substances.

3

**THE** following procedures are available to Registrant in this matter:

1. Within 30 days after the date of receipt of this Order to Show Cause Registrant may file with the Deputy Administrator of the DEA a written request for a hearing in the form set forth in 21 C.F.R. § 1316.47. (*See* 21 C.F.R. § 1301.43(a)). If Registrant fails to file such a request, the hearing shall be cancelled in accordance with paragraph 3, below.

2. Within 30 days after the date of receipt of this Order to Show Cause, Registrant may file with the Deputy Administrator a waiver of hearing together with a written statement regarding Registrant's respective positions on the matters of fact and law involved. (*See* 21 C.F.R. §1301.43(c)).

3. Should Registrant decline to file a request for a hearing or, should Registrant request a hearing and then fail to appear at the designated hearing, Registrant shall be deemed to have waived the right to a hearing and the Deputy Administrator may cancel such hearing, and may enter her final order in this matter without a hearing and based upon the investigative file and the record of this proceeding as it may then appear. (*See* 21 C.F.R. §§ 1301.43(d), 1301.43(e)).

Correspondence concerning this matter, including requests referenced in paragraphs 1 and 2 above, should be addressed to the Hearing Clerk, Office of Administrative Law Judges, Drug Enforcement Administration, Washington, D.C. 20537. Matters are deemed filed upon receipt by the Hearing Clerk. (*See* 21 C.F.R. § 1316.45).

Joseph T. Rannazzisi
Deputy Assistant Administrator
Office of Diversion Control

cc: Hearing Clerk
 Office of Administrative Law Judges

DOJ 00133

CONFIDENTIAL                                                      CAH_MDL_PRIORPROD_DEA12_00013087

# APPENDIX F

DOJ 00134

CONFIDENTIAL

CAH_MDL_PRIORPROD_DEA12_00013088

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into by and between the United States Department of Justice, through the United States Attorney's Offices for the Districts of New Jersey, Middle Florida, Southern Texas, Western Washington, Colorado, Northern Georgia, and Central California ("United States") and Cardinal Health, Inc., for itself and on behalf of its subsidiary entities which hold the registrations listed in Attachment A to this agreement (collectively "Cardinal") (each a "Party" and collectively the "Parties").

## RECITALS

1. Cardinal is in the business of distributing branded and generic prescription drugs, as well as over-the-counter medications, to retail pharmacies throughout the United States. In furtherance of this business objective, Cardinal operates numerous distribution facilities in the United States, including the seven facilities more fully described in Attachment B to this Agreement ("the Seven Facilities").

2. As described in Attachment A, Cardinal holds Certificates of Registration issued by the Drug Enforcement Administration ("DEA") authorizing it to distribute controlled substances from each of its distribution facilities that handle controlled substances, including the Seven Facilities described in Attachment B.

3. Cardinal is required to operate the Seven Facilities in accordance with the statutory and regulatory provisions of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* ("the CSA").

4. Each of the Seven Facilities supplies prescription medications, including controlled substances, to retail pharmacies and other health care providers within the respective jurisdictions as stated in Paragraph 8.

1 of 10

5. DEA is the Department of Justice component agency primarily responsible for administering the CSA and is vested with the responsibility of investigating CSA violations.

6. The Attorney General, through the United States Attorneys, has primary authority to bring civil actions to enforce the CSA in the Districts noted above. *See* 21 U.S.C. § 871 *and* 28 C.F.R. § 0.55(c).

7. Hydrocodone is a medication whose manufacture, distribution, sale and possession is regulated by DEA under the CSA. This includes a requirement to report customer orders for controlled substances that are suspicious as the term is defined under 21 C.F.R. §1301.74(b).

8. The "Covered Conduct" shall mean the following alleged conduct:

   A. <u>Within the District of New Jersey:</u> From January 2005 through August 2007, Cardinal-Swedesboro sold more than 4.5 million dosage units of hydrocodone to three pharmacies (IVRx Pharmacy in Springfield, New Jersey; Newcare Home Health Services in Baltimore, Maryland; and Phamily Pharmacy in Washington, D.C.), and failed to report these sales as suspicious orders to DEA when discovered, as required by and in violation of 21 C.F.R. § 1301.74(b) and 21 U.S.C. § 842(a)(5);

   B. <u>Within the Middle District of Florida:</u> From August 2005 through October 2007, Cardinal-Lakeland sold more than 8 million dosage units of hydrocodone to ten pharmacies in the Tampa area (Medipharm-Rx, Inc., DRM Enterprises, Inc., Jen-Mar Pharmacy Services, Inc., Armenia Pharmacy, Inc., National Pharmacy, Inc., Parulmed Corporation, Q-R-G-, Inc., RKR Holdings, Inc., United Prescription Services, Inc., and Satellite Drug and Pharmacy) and failed to report these sales as suspicious orders to DEA when discovered, as required by and in violation of 21 C.F.R. § 1301.74(b) and 21 U.S.C. § 842(a)(5);

   C. <u>Within the Southern District of Texas:</u> From March 2006 through September 2007, Cardinal-Stafford sold more than 7.5 million dosage units of hydrocodone to fifteen pharmacies in the Houston area (Richmond Pharmacy, AK Pharmacy, Farmacia de Medica, Parkway Pharmacy, Farmacia del Pueblo, Magnum Road Pharmacy, Mastery Pharmacy, Amex Pharmacy #3, Local Pharmacy, HP Pharmacy, I-10 East Pharmacy, Xavier Pharmacy, TXRX Pharmacy, Park Place Pharmacy, and King's Pharmacy) and failed to report these sales as suspicious orders to DEA when discovered, as required by and in violation of 21 C.F.R. § 1301.74(b) and 21 U.S.C. § 842(a)(5);

   D. <u>Within the Western District of Washington:</u> From March 2007 through November

DOJ 00136

CONFIDENTIAL                                                                    CAH_MDL_PRIORPROD_DEA12_00013090

2007, Cardinal-Auburn sold more than 900,000 dosage units of hydrocodone to Horen's Drugstore, Inc., in Burlington Washington and failed to report these sales as suspicious orders to DEA when discovered, as required by and in violation of 21 C.F.R. § 1301.74(b) and 21 U.S.C. § 842(a)(5);

E. <u>Within the District of Colorado:</u>  From January 2006 through February 2006, Cardinal-Denver sold large quantities of hydrocodone to Hometown Pharmacy in Trinidad, Colorado, and failed to report these sales as suspicious orders to DEA when discovered, as required by and in violation of 21 C.F.R. § 1301.74(b) and 21 U.S.C. § 842(a)(5);

F. <u>Within the Northern District of Georgia:</u>  From April 2007 through October 2007, Cardinal-McDonough sold large quantities of hydrocodone to Poly-Plex Pharmacy in Atlanta, Georgia, and failed to report these sales as suspicious orders to DEA when discovered, as required by and in violation of 21 C.F.R. § 1301.74(b) and 21 U.S.C. § 842(a)(5);

G. <u>Within the Central District of California:</u>  From September 2006 through January 2007, Cardinal-Valencia sold large quantities of hydrocodone to Boulevard Pharmacy in Sun Valley, California, and failed to report these sales as suspicious orders to DEA when discovered, as required by and in violation of 21 C.F.R. § 1301.74(b) and 21 U.S.C. § 842(a)(5).

9. By entering into this Agreement, Cardinal does not admit to the violations alleged as a result of any DEA investigation, or to any violation of law, liability, fault, misconduct, or wrongdoing.

10. At all times relevant to the activity alleged in these Recitals and Attachments, the CSA (21 U.S.C. § 842(c)(1)) authorized the imposition of a civil penalty of up to $25,000 for most violations of Section 842, but, violations of § 842(a)(5) (record keeping and reporting violations) are subject to a civil penalty of up to $10,000 for each violation.

11. To avoid the delay, expense, inconvenience, and uncertainty of litigation of these claims, the Parties agree to settle, compromise, and resolve all existing or potential claims for civil penalties the United States may have against Cardinal under § 842 of the CSA based on the Covered Conduct as further described in Paragraphs 13 and 14 below.

DOJ 00137

CONFIDENTIAL

CAH_MDL_PRIORPROD_DEA12_00013091

12. This Agreement is neither an admission of liability by Cardinal nor a concession by the United States that its claims are not well founded. In consideration of the mutual promises, covenants, and obligations set forth in this Agreement, the Parties agree as follows:

## TERMS AND CONDITIONS

13. Cardinal shall pay to the United States the sum of Thirty-Four Million Dollars ($34,000,000) (the "Settlement Amount") within thirty (30) days of the effective date of this Agreement, payable as follows:

> A. For Conduct Alleged to have Occurred within the District of New Jersey: Cardinal shall pay the sum of Three Million Dollars ($3,000,000). Payment shall be by electronic funds transfer to the United States Attorney's Office, District of New Jersey, pursuant to instructions provided by the United States.
>
> B. For Conduct Alleged to have Occurred within the Middle District of Florida: Cardinal shall pay the sum of Sixteen Million Dollars ($16,000,000). Payment shall be by electronic funds transfer to the United States Attorney's Office, Middle District of Florida, pursuant to instructions provided by the United States.
>
> C. For Conduct Alleged to have Occurred within the Southern District of Texas: Cardinal shall pay the sum of Eight Million Dollars ($8,000,000). Payment shall be by electronic funds transfer to the United States Attorney's Office, Southern District of Texas, pursuant to instructions provided by the United States.
>
> D. For Conduct Alleged to have Occurred within the Western District of Washington: Cardinal shall pay the sum of Three Million Five Hundred Thousand Dollars ($3,500,000). Payment shall be by electronic funds transfer to the United States Attorney's Office, Western District of Washington, pursuant to instructions provided by the United States.
>
> E. For Conduct Alleged to have Occurred within the District of Colorado: Cardinal shall pay the sum of One Million Dollars ($1,000,000). Payment shall be by electronic funds transfer to the United States Attorney's Office, District of Colorado, pursuant to instructions provided by the United States.
>
> F. For Conduct Alleged to have Occurred within the Northern District of Georgia: Cardinal shall pay the sum of One Million Five Hundred Thousand Dollars ($1,500,000). Payment shall be by electronic funds transfer to the United States Attorney's Office, Northern District of Georgia, pursuant to instructions provided by the United States.

DOJ 00138

CONFIDENTIAL

CAH_MDL_PRIORPROD_DEA12_00013092

G. <u>For Conduct Alleged to have Occurred within the Central District of California:</u> Cardinal shall pay the sum of One Million Dollars ($1,000,000). Payment shall be by electronic funds transfer to the United States Attorney's Office, Central District of California, pursuant to instructions provided by the United States.

14. In consideration of the undertakings by Cardinal, the United States agrees to settle and relinquish all claims for civil penalties it may have under 21 U.S.C. § 842 against Cardinal, its officers, directors, and employees for possible violations of the CSA, and the regulations promulgated thereunder, based on the Covered Conduct.

15. Cardinal fully and finally releases the United States, its agencies, employees, servants, and agents from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) which it has asserted, could have asserted, or may assert in the future against the United States, its agencies, employees, servants, and agents, related to the investigation, prosecution and settlement of this matter.

16. Notwithstanding any term of this Agreement, specifically reserved and excluded from its scope and terms as to any entity or person are the following:

A. Any potential criminal liability;

B. Any criminal, civil or administrative claims arising under Title 26, U.S. Code (Internal Revenue Service);

C. Any administrative liability, including mandatory exclusion from any federal programs;

D. Any liability to the United States for any conduct other than that covered by the release in Paragraph 14; and

E. Any claims based on such obligations as are created by this Agreement.

17. Cardinal acknowledges that each of its DEA registered facilities is required to comply

DOJ 00139

CONFIDENTIAL

CAH_MDL_PRIORPROD_DEA12_00013093

with the controlled substance record keeping and reporting requirements of the CSA. Cardinal represents that it has taken good-faith actions to detect and prevent diversion including agreeing to implement the policies and procedures that are the subject of an administrative settlement agreement between it and DEA.

18. Cardinal agrees that any and all costs it has or will incur in connection with this matter -- including payment of the Settlement Amount under this Agreement, attorney's fees, costs of investigation, negotiation, and remedial action -- shall be unallowable costs for government contract accounting and for Medicare, Medicaid, TriCare, and FEHBP reimbursement purposes.

19. This Agreement is not intended by the Parties to be, and shall not be interpreted to constitute, a release of any person or entity not identified or referred to herein.

20. This Agreement shall be governed by the laws of the United States. If a dispute arises under this Agreement between Cardinal and an Office of the United States Attorney signing this Agreement, exclusive jurisdiction and venue shall lie in the federal judicial district of the Office with whom the dispute arose, and to the extent that state law applies to the dispute, the law of the State within the jurisdictional district shall apply. If a dispute arises under this Agreement between Cardinal and more than one of the United States Attorney's Office signing this Agreement, exclusive jurisdiction and venue shall lie in the District of New Jersey and to the extent that state law applies to the dispute, the law of the state of New Jersey shall apply.

21. The Parties agree that this Agreement does not constitute evidence or an admission by any person or entity, and shall not be construed as an admission by any person or entity, with respect to any issue of law or fact.

22. This Agreement constitutes the entire agreement between the Parties and cannot be

DOJ 00140

CONFIDENTIAL

CAH_MDL_PRIORPROD_DEA12_00013094