UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CITY OF HUNTINGTON
    Plaintiff,
v.
AMERISOURCEBERGEN DRUG
CORPORATION, et al.,
    Defendants.

———————————————————

Civil Action No. 3:17-cv-01362

CABELL COUNTY COMMISSION,
    Plaintiff,
v.
AMERISOURCEBERGEN DRUG
CORPORATION, et al.,
    Defendants.

———————————————————

*Consolidated Case*:
Civil Action No. 3:17-cv-01665

PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT ON PLAINTIFF CABELL COUNTY
COMMISSION'S RIGHT TO ABATEMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................ii

INTRODUCTION..............................................................................................1

LEGAL STANDARD.........................................................................................3

ARGUMENT.....................................................................................................4

      A.     Defendants' Legal Arguments are Incorrect....................................4

           1.     Cabell County Permissibly Seeks an Affirmative Injunction to Abate.................................................................4

           2.     The WVCSA Does Not Preempt Cabell County's Claim.............8

      B.     Defendants' Public Policy Argument is Contrary to West Virginia Law...................................................................10

      C.     Defendants' Purportedly Fact-Based Arguments are Incorrect as to Both Fact and Law....................................................12

CONCLUSION.................................................................................................16

## TABLE OF AUTHORITIES

### Cases

*Al-Tamimi v. Adelson*, 916 F.3d 1 (D.C. Cir. 2019)........................................2-3, 13

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988).....................................11

*Cisson v. C.R. Bard, Inc.*, 948 F. Supp. 2d 589 (S.D. W. Va. 2013)........................14

*City of San Mateo v. Peabody Energy Corp.*, 958 F.3d 717 (8th Cir. 2020)..............6

*Duff v. Morgantown Energy Assocs.*, 187 W. Va. 712, 421 S.E.2d 253 (1992)........5, 7

*EQT Prod. Co. v. Wender*, 191 F. Supp. 3d 593 (S.D. W. Va. 2016)...................9-10

*Fox v. Norfolk S. Corp.*, 802 S.E.2d 319 (Ga. Ct. App. 2017)...............................6

*Hendricks v. Stalnaker*, 181 W. Va. 31, 380 S.E.2d 198 (1989).............................7

*Hutton v. School City of Hammond*, 142 N.E. 427 (Ind. 1924)...........................6-7

*In re Nat'l Prescr. Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio Aug. 25, 2019)
    (Doc. 2519) (Ex. 4) ..............................................................................7-8

*In re Nat'l Prescr. Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio Aug. 6, 2020)
    (Doc. 3403) (Ex. 6)..................................................................................9

*In re Opioid Litig.*, Civil Action No. 19-C-9000 (W. Va. Cir. Ct. of Kanawha
Cty. July 29, 2020) (Order re Plaintiffs' Motion to Strike Defendants'
Notices of Non-Party Fault) (Ex. 3)...................................................................6

*In re Opioid Litig.: Monongalia Cty. Comm'n v. Purdue Pharma L.P.*,
    Civil Action No. 19-C-9000 (W. Va. Cir. Ct. of Kanawha Cty.
    Oct. 31, 2019) (Order Denying Distributor Defendants' Motion
    to Dismiss Plaintiffs' Complaint) ("*Distributors Order*") (Ex. 1) .............2, 8-9

*Jones v. Owens-Corning Fiberglas Corp.*, 69 F.3d 712 (4th Cir. 1995)...................3

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019)...........................................................11

*O'Brien v. Office of Personnel Mgmt.*, 144 F.3d 1458 (Fed. Cir. 1998)...................14

*People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51 (2017)........................6

*Pillars v. GM LLC*, 957 F.3d 357 (2d Cir. 2020)..................................................14

*Pitcairn v. Am. Refrig. Transit Co.*, 101 F.2d 929 (8th Cir. 1939)........................14

*Sennett v. U.S.*, 667 F.3d 531 (4th Cir. 2012).......................................................3

*S.P. v. City of Takoma Park, Md.*, 134 F.3d 260 (4th Cir. 1998)...........................3

*State of West Virginia ex rel. Morrisey v. AmerisourceBergen Drug Corp.*,
    No. 12-C-141, 2014 WL 12814021 (W. Va. Cir. Ct. of Boone Cty.
    Dec. 12, 2014) (Ex. 5).......................................................................9

*State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*,
    200 W. Va. 221, 488 S.E.2d 901 (1997)........................................5

*Sullivan v. Glenn*, 502 B.R. 516 (Bankr. N.D. Ill. 2013)....................................14

*Taylor v. U.S.*, 711 F.2d 1199 (3d Cir. 1983)......................................................13

*U.S. v. Doe*, 934 F.2d 353 (D.C. Cir. 1991).......................................................13

*U.S. v. Kelley*, 956 F.2d 748 (8th Cir. 1992)......................................................13

*U.S. v. McIver*, 470 F.3d 550 (4th Cir. 2006)....................................................14

*U.S. v. Price*, 688 F.2d 204 (3d Cir. 1982).........................................................6

*U.S. West Comms. Servs., Inc. v. U.S.*, 940 F.2d 622 (Fed. Cir. 1991)...............3, 13

*Weston v. Ralston*, 48 W. Va. 170, 36 S.E. 446 (1900).........................................5

**Statutes**

21 U.S.C. § 903...................................................................................................10

W. Va. Code § 7-1-3kk...................................................................................*passim*

W. Va. Code § 22-6-2(c)(12)...............................................................................10

W. Va. Code §§ 60A *et seq.*.................................................................................8

W. Va. Code § 60A-5-501...................................................................................10

W. Va. Code § 60A-5-503(a)...........................................................................10

### Miscellaneous

*Restatement (Second) of Torts* § 821B(1) (1979) .................................................6

*Restatement (Second) of Torts* § 821D (1979) ...................................................7

*Restatement (Second) of Torts* § 821F (1979) ....................................................7

*Restatement (Second) of Torts* § 822 (1979) .....................................................7

*Restatement (Second) of Torts* § 8214(b) (1979) ................................................7

Plaintiffs the City of Huntington and Cabell County Commission hereby submit this Memorandum of Law in Opposition to Defendants' Joint Motion for Summary Judgment re Abatement (Doc. 1005).  Plaintiffs state in opposition to the motion as follows.

## INTRODUCTION

Plaintiffs filed this action alleging that Defendants created a public nuisance by distributing or dumping tens of millions of prescription opioid pills into their jurisdictions, causing an epidemic of opioid use and abuse that is an immediate, immense, and ongoing public health and safety hazard.  *See* Corrected Joint and Third Amended Complaint (3AC) (Doc. 80), ¶¶ 1-12.  Plaintiffs seek through this action to abate the public nuisance harms in their communities.  *See*, *e.g.*, *id.*, ¶¶ 13, 29, 1450, 1603(a).

Defendants moved for summary judgment against Plaintiff Cabell County Commission ("Cabell County") on the ground that it "lacks the authority to engage in any such abatement."  Defendants' Memorandum ("Memo of Law") (Doc. 1005-1) at 1.[1]  Defendants are incorrect.

The West Virginia Legislature clearly and unambiguously granted Cabell County, and all County Commissions in West Virginia, the power and authority to take "appropriate and necessary actions for the elimination of hazards to public

---

[1] Defendants raise this argument only against Plaintiff Cabell County, and not against Plaintiff City of Huntington.  *See* Joint Motion ("[T]he record evidence establishes that the Cabell County Commission admittedly lacks the power to abate the alleged public nuisance."); Memo of Law at 16 ("Accordingly, Defendants are entitled to summary judgment against the Cabell County Commission.").  Since the motion does not address City of Huntington, Plaintiffs' opposition focuses solely on Cabell County.

1

health and safety and to abate or cause to be abated anything which the commission determines to be a public nuisance." W. Va. Code § 7-1-3kk. The West Virginia State Court Mass Litigation Panel ("MLP") has held that this statute specifically authorizes County Commissions to bring an action to abate a public nuisance. *See In re Opioid Litig.: Monongalia Cty. Comm'n v. Purdue Pharma L.P.*, Civil Action No. 19-C-9000 (W. Va. Cir. Ct. of Kanawha Cty. Oct. 31, 2019) (Order Denying Distributor Defendants' Motion to Dismiss Plaintiffs' Complaint) ("*Distributors Order*") (Ex. 1) at 2-3 (incorporating as "law of the case" prior Circuit Court ruling attached thereto as Ex. A); *id.* at Ex. A p. 14 ("Finally, under West Virginia law, Plaintiffs are specifically authorized to bring an action to 'abate or cause to be abated' a public nuisance.") (quoting W. Va. Code § 7-1-3kk). The statute thus is determinative of Cabell County's authority to abate and compels denial of Defendants' motion.[2]

Defendants misconstrue the statute or else try to ignore it altogether in seeking summary judgment on this question. They raise a number of legal, policy, and purportedly fact-based arguments for why Cabell County lacks authority to abate a public nuisance, whether the abatement is in the form Plaintiffs seek or otherwise. None of these arguments has merit. Whether Cabell County, or any government entity, has authority to take a particular action is a pure question of law. *See, e.g., Al-Tamimi v. Adelson*, 916 F.3d 1, 11 (D.C. Cir. 2019) (addressing

---

[2] Plaintiffs fully briefed this issue in their Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment Based on Standing (Doc. 287), and hereby incorporate by reference the arguments made therein.

"claims presenting purely legal issues such as whether the government had legal authority to act") (internal quotation marks and citations omitted); *U.S. West Comms. Servs., Inc. v. U.S.*, 940 F.2d 622, 625 (Fed. Cir. 1991) ("The question of whether the board has statutory authority to consider the protest of a potential subcontractor in a procurement of ADPE by a government prime contractor involves a pure legal issue."). The plain language of § 7-1-3kk thus is controlling—Cabell County has authority to abate a public nuisance, and Defendants' motion for summary judgment on this question should be denied.

## LEGAL STANDARD

Whether Cabell County has authority to abate a public nuisance is a pure question of law. *See, e.g., Al-Tamimi*, 916 F.3d at 11; *U.S West*, 940 F.2d at 622. This Court decides a "'purely legal question . . . de novo . . . .'" *Sennett v. U.S.*, 667 F.3d 531, 537 (4th Cir. 2012) (quoting *S.P. v. City of Takoma Park, Md.*, 134 F.3d 260, 272 (4th Cir. 1998)). Thus, no party bears any evidentiary burden on this motion. *See, e.g., Jones v. Owens-Corning Fiberglas Corp.*, 69 F.3d 712, 719 n.6 (4th Cir. 1995) ("[W]e find that this summary judgment ruling involves purely a question of law, and therefore, OCF was under no obligation at the summary judgment stage to come forward with factual material to support that aspect of its contributory negligence defense. We therefore have no occasion to review the summary judgment record to determine whether this defense is factually supported.") (citation omitted).

3

## ARGUMENT

Defendants' motion is based entirely on their argument that Cabell County "lacks the authority to engage in [public nuisance] abatement."  Memo of Law at 1. Since W. Va. Code § 7-1-3kk clearly provides this authority, Defendants' motion rests on a legally incorrect premise and for that reason alone should be denied. None of the legal, public policy, or purportedly fact-based arguments that Defendants raise establishes otherwise.  Each of these is addressed in turn.

### A.   Defendants' Legal Arguments Are Incorrect.

Defendants raise two legal arguments against holding that Cabell County has authority under § 7-1-3kk to abate the public nuisance harms in its communities as sought herein.  Both arguments are incorrect as a matter of law.

### 1.   Cabell County Permissibly Seeks an Affirmative Injunction to Abate.

First, Defendants contend that § 7-1-3kk does not permit the abatement relief that Cabell County seeks.  Plaintiffs seek funding of an abatement program that includes affirmative measures to improve opioid prescribing and pain treatment practices, identify and treat persons with Opioid Use Disorder (OUD), and create customized remedies for specific community subpopulations, such as pregnant women, new mothers and infants, adolescents and young adults, families and children, the homeless, and the housing insecure.  *See* Ex. 2 (excerpts of Expert Witness Report of G. Caleb Alexander, MD, MS), ¶¶ 33, 36.  Defendants argue that Cabell County lacks authority to obtain this abatement relief because, under § 7-1-3kk and West Virginia law generally, "the power to abate is the power to enjoin"

and, based on the foregoing, Cabell County "does not seek an injunction."  Memo of Law at 15; *see also id.* at 13 ("No code provision, however, authorizes county commissions to provide or pay for treatment or recovery services for substance abuse.").  This argument misconstrues and unduly narrows the scope of nuisance abatement under West Virginia law.

The West Virginia Supreme Court of Appeals long has held that an injunction to abate a public nuisance may take the form of either a restraining injunction to prevent a prospective nuisance or, far more commonly, an affirmative injunction to effectuate remediation of an existing or continuing nuisance.  *See Duff v. Morgantown Energy Assocs.*, 187 W. Va. 712, 716, 421 S.E.2d 253, 257 (1992) ("While courts generally grant injunctions to abate existing nuisances, there is also authority for courts to enjoin prospective or anticipatory nuisances."); *see also State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 200 W. Va. 221, 245, 488 S.E.2d 901, 925 (1997) ("A public nuisance action usually seeks to have some harm which affects the public health and safety abated.  Thus, until such harm is abated, the public nuisance is continuing . . . .");  *Weston v. Ralston*, 48 W. Va. 170, 194, 36 S.E. 446, 456 (1900) ("Courts of equity interfere to restrain and prevent public nuisances threatened or in progress, as well as to abate those already existing.") (internal quotation marks and citation omitted).

The prospective costs for addiction treatment and services Plaintiffs seek are akin to the environmental cleanup costs sought and found recoverable to abate the public nuisance in *Kermit Lumber.  See* 200 W. Va. at 245; 488 S.E.2d at 925.  This,

in effect, is what the State Court Mass Litigation Panel has held in opioid litigation. *See In re Opioid Litig.*, Civil Action No. 19-C-9000 (W. Va. Cir. Ct. of Kanawha Cty. July 29, 2020) (Order re Plaintiffs' Motion to Strike Defendants' Notices of Non-Party Fault) (Ex. 3) at 9 ("[T]he cost of providing opioid education programs or treatment centers might be part of the equitable relief to abate Plaintiffs' alleged public nuisance – the opioid crisis . . . .").

Authority elsewhere holds the same.  Federal and state courts long have recognized that an injunction to abate a public nuisance may, and very often *must*, direct the liable party to fund or undertake affirmative remedial measures to abate an existing and continuing nuisance.  *See*, *e.g.*, *City of San Mateo v. Peabody Energy Corp.*, 958 F.3d 717, 724 (8th Cir. 2020) ("In California, a party who commits a public nuisance can be ordered to pay into a fund, overseen by a receiver, to remedy or eliminate the hazard complained of rather than being ordered to clean up the nuisance themselves."); *U.S. v. Price*, 688 F.2d 204, 213 (3d Cir. 1982) ("It is not unusual for a defendant in equity to expend money in order to obey or perform the act mandated by an injunction."); *People v. ConAgra Grocery Prods. Co.*, 17 Cal. App. 5th 51, 134 (2017) ("The abatement fund ordered by the trial court was a reasonable method of prefunding the remediation that is required to abate the public nuisance created by defendants."); *Fox v. Norfolk S. Corp.*, 802 S.E.2d 319, 335 (Ga. Ct. App. 2017) ("Furthermore, a continuing nuisance claim . . . allows the plaintiff to obtain injunctive relief requiring the defendant to take affirmative action to abate the nuisance."); *Hutton v. School City of Hammond*, 142 N.E. 427,

6

429 (Ind. 1924) ("[C]ourts have sometimes interfered by making interlocutory orders commanding that the nuisance be abated by doing affirmative acts to restore the conditions which existence before the alleged wrong was done.").

So, too, does the *Restatement (Second) of Torts*, which West Virginia courts have followed on questions related to public nuisance. *See*, *e.g.*, *Duff*, 187 W. Va. at 716 n.6, 421 S.E.2d 257 n.6 ("We believe this definition is consistent with the *Restatement (Second) of Torts* § 821B(1) (1979), which defines a public nuisance as an unreasonable interference with a right common to the general public."); *Hendricks v. Stalnaker*, 181 W. Va. 31, 34, 380 S.E.2d 198, 200 (1989) (citing *Restatement* §§ 821D, 821F, and 822 in delineating boundary between public and private nuisance). In assessing liability for public (or private) nuisance, the *Restatement* explains that the "conduct necessary to make the actor liable for either a public or a private nuisance may consist of . . . a failure to act under circumstances in which the actor is under a *duty to take positive action to prevent or abate* the interference with the public interest or the invasion of the private interest." *Restatement (Second) of Torts*, § 824(b) (1979) (emphasis added).

The Multidistrict Litigation Court (MDL Court) likewise has recognized exactly this point—that its equitable powers include the discretion to direct opioid manufacturer and distributor defendants in this litigation to "pay the prospective costs that will allow Plaintiffs to abate the opioid crisis" in their communities. *In re Nat'l Prescr. Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio Aug. 26, 2019) (Doc. 2519)

(Ex. 4) at 3.  This Court has the same equitable powers and may, at the appropriate time, order the same abatement relief for Plaintiffs here.

It is thus clear that Cabell County's authority to abate a public nuisance under W. Va. Code § 7-1-3kk, as under West Virginia law generally, includes the right to an injunction like that sought herein directing affirmative remediating actions by Defendants.

### 2.  The WVCSA Does Not Preempt Cabell County's Claim.

Defendants also argue that the West Virginia Controlled Substances Act (WVCSA), W. Va. Code §§ 60A *et seq.*, preempts Cabell County's public nuisance abatement authority as it applies to prescription opioid distribution.  *See* Memo of Law at 15-16 ("The state also comprehensively regulates the distribution of prescription drugs, including controlled substances, thereby preempting the field and leaving no room for local control by the Cabell Commission.") (internal quotation marks omitted).  It does not.

The State Court MLP has considered and rejected this argument as made by Defendants and other opioid distributors.  In the *Distributors Order*, the MLP held that West Virginia County Commissions asserted actionable negligence and public nuisance claims against opioid distributors based in part on unlawful conduct violating the WVCSA.  *See* Ex. 1 (*Distributors Order*) at Ex. A pp. 4-7 (negligence), pp. 13-14 (public nuisance).  In so ruling, the MLP held that it was consistent with the WVCSA for the County Plaintiffs to assert common law claims for which the statute provided an applicable standard of care.  *See id.* at Ex. A p. 4 ("The Court

8

finds and concludes that Plaintiffs are not attempting to assert a private right of action under the WVCSA.  Instead, the Court finds and concludes that Plaintiffs rely on the WVCSA to help establish a standard of care for their common-law negligence claims, which is permissible under the law.").  Another West Virginia Court has held the same with respect to common law claims by the State.  *See State of West Virginia ex rel. Morrisey v. AmerisourceBergen Drug Corp.*, No. 12-C-141, 2014 WL 12814021, at *7 (W. Va. Cir. Ct. of Boone Cty. Dec. 12, 2014) (Ex. 5) ("A violation of a statute or ordinance can constitute actionable negligence); *see also id.* at *9 (rejecting argument that the Legislature intended through the WVCSA to prohibit public nuisance action based on distribution conduct).

The MDL Court likewise recently rejected the argument by national pharmacy defendants that Ohio's Controlled Substances Act creates a comprehensive regulatory scheme that preempts state common law claims based on distribution or dispensing conduct.  As the Court explained:

> Using an argument analogous to field preemption, Defendants also assert the specificity and comprehensive nature of Ohio's regulatory scheme governing distribution and dispensing of controlled substances implies an intent by the General Assembly to displace the common law . . . .  Nothing . . . indicates an intent by the General Assembly that comprehensive statutory language should work to abolish common law *causes of action* or available remedies.

*In re Nat'l Prescr. Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio Aug. 6, 2020) (Doc. 3403) (Ex. 6) at 8-9.  This Court should hold the same here.

Defendants' citation to *EQT Prod. Co. v. Wender*, 191 F. Supp. 3d 593 (S.D. W. Va. 2016), *see* Memo of Law at 15-16, does not support a contrary conclusion.  In

9

*EQT*, the Court held that the Department of Environmental Protection (DEP) had exclusive authority to regulate gas and oil exploitation in West Virginia based on an express statutory provision.  *See id.* at 598 (citing W. Va. Code § 22-6-2(c)(12), which provides that the DEP Secretary shall "[p]erform *all duties* as the permit issuing authority for the state *in all matters* pertaining to the exploration, development, production, storage and recovery of this state's oil and gas[.]") (emphasis added). The WVCSA, by contrast, affords State officers enforcement powers, *see* W. Va. Code § 60A-5-501, and authorizes actions for injunctions, *see* W. Va. Code § 60A-5-503(a), without expressing the intent to make State enforcement the sole means of addressing unlawful controlled substances distribution conduct.[3]

For all of these reasons, the WVCSA does not preempt W. Va. Code § 7-1-3kk's conferral of authority on Cabell County and other County Commissions to abate the public nuisance harms of the opioid epidemic in their communities.

## B.  Defendants' Public Policy Argument is Contrary to West Virginia Law.

Defendants also argue that Cabell County is the "wrong plaintiff" in this action based upon arguments made by certain States in *amicus curiae* brief filings to other courts.  Defendants contend that these States "have been vocal that cities and counties are the wrong plaintiffs—indeed, that their lawsuits impede a global

---

[3] In this regard, the WVCSA is similar to the federal CSA, which expressly preserves state authority.  *See* 21 U.S.C. § 903 ("No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.").

10

resolution with opioid manufacturers, distributors, pharmacies, and others."  Memo of Law at 9-10.  The Court should reject this argument for two reasons.

First, and foremost, it is contrary to West Virginia law.  The Legislature conferred upon Cabell County and other Commissions the power and authority to take "appropriate and necessary actions . . . to abate or cause to be abated anything which the commission determines to be a public nuisance."  W. Va. Code § 7-1-3kk. This clear legislative authorization cannot be overridden by the State, let alone *other* States, through filing *amicus* briefs in litigation.  *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988) ("Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate."); *see also Kisor v. Wilkie*, 139 S. Ct. 2400, 2417 n.6 (2019) ("The general rule, then, is not to give deference to agency interpretations advanced for the first time in legal briefs.  But we have not entirely foreclosed that practice."). The West Virginia Code provision thus is controlling, and Defendants' public policy arguments should be directed to the Legislature, not this Court.

Second, this argument also is misplaced on its own terms.  Defendants, again repeating the States, contend that while they recognize "'***the tremendous impact the opioid crisis has had on many cities and counties within our States, the' cities and counties 'lack the broad powers and duties that are necessary to effectively protect the States' citizenry as a whole.***'"  Memo of Law at 10 (quoting *Amicus Curiae* Letter Regarding Plaintiffs' Renewed and Amended Notice of Motion for Class Certification of Rule 23(b)(3) Cities/Counties Negotiation Class at 2, *In re Nat'l*

*Prescr. Opiate Litig.*, No. 1:17-md-2804, Doc. 1951 (N.D. Ohio July 23, 2019))
(emphasis in Memo). Cabell County, however, does not seek to protect the State's
citizenry *as a whole*, but rather to abate the opioid epidemic public nuisance harms
within its own community. *See* 3AC, ¶ 13 ("Plaintiffs bring this civil action to
eliminate the hazard to public health and safety [and] to abate the public nuisance
caused by the opioid epidemic in the City and County . . . ."); Ex. 2 (Alexander
Report), ¶ 33 ("There are three major categories of remedies that must be
undertaken to address the opioid epidemic in the Cabell-Huntington Community.").

The Court thus should reject Defendants' public policy argument for
summary judgment on Cabell County's claim on grounds of alleged lack of authority
to abate as both contrary to West Virginia law and mistaken on its own terms.

### C.    Defendants' Purportedly Fact-Based Arguments Are Incorrect as to Both Fact and Law.

Defendants devote much of their motion to arguing that Cabell County,
through the Rule 30(b)(6) deposition testimony of County Administrator Beth
Thompson, purportedly admitted that it lacks authority to abate the public
nuisance harms of the opioid epidemic. *See* Memo of Law at 1 ("But the
Commission—by its own admission—lacks the authority to engage in any such
abatement."); *id.* at 11 (Thompson's "testimony constitutes a frank admission that
the Commission is the wrong plaintiff."); *id.* at 12 ("[T]he Commission—by its own
admission—lacks the power to create or fund abatement programs."). It did not,
and could not.

First, Defendants' "admission" argument is wrong as a matter of law.  Even if Ms. Thompson had testified that Cabell County has no legal authority to abate a public nuisance—*which she did not*—this would not support summary judgment because a County Executive's deposition testimony can no more determine what the law is than can a State's *amicus* brief.  *See* Argument § B, *supra*.  Indeed, this testimony is even less probative on this issue.

What actions Cabell County has legal authority to take is a pure question of law.  *See, e.g., Al-Tamimi*, 916 F.3d at 11 (addressing "claims presenting purely legal issues such as whether the government had legal authority to act") (internal quotation marks and citations omitted); *U.S. v. Kelley*, 956 F.2d 748, 751 (8th Cir. 1992) ("[T]he district court's decision that it had no power to depart [from U.S. Sentencing Guidelines section 5k1.1] is a pure question of law."); *U.S. West*, 940 F.2d at 625 ("The question of whether the board has statutory authority to consider the protest of a potential subcontractor in a procurement of ADPE by a government prime contractor involves a pure legal issue."); *U.S. v. Doe*, 934 F.2d 353, 356 (D.C. Cir. 1991) ("[T]he district court's decision that it possessed authority to depart from section 5K1.1 even absent a government motion presents a pure question of law."); *Taylor v. U.S.*, 711 F.2d 1199, 1202 (3d Cir. 1983) ("[T]he government's position is that it had legal authority to extend Taylor's enlistment involuntarily.  It concedes that this issue is purely legal.").

Since whether Cabell County has authority to abate a public nuisance is a pure question of law, Ms. Thompson's testimony on this issue—whether as the

13

County's Rule 30(b)(6) designee or otherwise—is neither relevant nor admissible evidence. *See U.S. v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) ("[O]pinion testimony that states a legal standard or draws a legal conclusion by applying law to facts is generally inadmissible."); *Cisson v. C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 629 (S.D. W. Va. 2013) (same); *see also Pillars v. GM LLC*, 957 F.3d 357, 360 (2d Cir. 2020) ("To constitute a judicial admission, the statement must be one of fact—a legal conclusion does not suffice."); *Pitcairn v. Am. Refrig. Transit Co.*, 101 F.2d 929, 935 (8th Cir. 1939) ("[T]he admission of a legal conclusion is not binding on either the trial or appellate court, nor on the party by whom made.").

Thus, no matter how many times Defendants may think their lawyer got Ms. Thompson to "admit" that Cabell County has no authority to abate a public nuisance, this does not make it so. *See O'Brien v. Office of Personnel Mgmt.*, 144 F.3d 1458, 1462 (Fed. Cir. 1998) ("[T]he government flirted with the line between the presentation of probative evidence and the use of a witness simply to state a legal conclusion."); *Sullivan v. Glenn*, 502 B.R. 516, 545 n.11 (Bankr. N.D. Ill. 2013) ("Equally lacking in probative value is Sullivan's attempt to procure in direct testimony an admission from Michael that Chung was Michael's agent. What constitutes an agent for the purposes of ascribing vicarious liability is a legal conclusion. As such, it is for the court to determine.").

Second, Defendants also mischaracterize the deposition testimony on which they rely. In testifying as Cabell County's Rule 30(b)(6) designee, Ms. Thompson made a critical point, *which Defendants ignore*, that provides necessary context to

14

much of the testimony that Defendants quote and mischaracterize in their motion.

Simply put, <u>Cabell County has been resource-constrained throughout the period of</u>
<u>the opioid epidemic</u>:

> Q. So the County Commission determines how much money the sheriff's office has to operate each year; is that right?
>
> A. In a sense, yes.
>
> Q. Is there a sense in which that's incorrect?
>
> A. Well, there is only so much money there for each office to operate on.
>
> Q. Okay.  So your point is that the county has a finite budget, but within that budget, the County Commission sets the budget of the sheriff's office; is that right?
>
> A. Yes.

Thompson Dep. Tr. (Doc. 1005-3) at 26:21-27:8.

This point is critical because most of Ms. Thompson's testimony that

Defendants quote or characterize reflects not a lack of *legal authority* to take action,

but a past lack of *resources* that resulted in the County not taking action.  *See*

Memo of law 2-4, items #1, 10, 13 (County did not set up sober-living homes or

Suboxone clinics or fund abuse treatment or recovery apart from grants received);

#2 (did not pass ordinance); #3 (did not limit prescribing); #4-5 (did not consider

opioids in connection with Health Department or Hospital Boards); #6 (did not

identify mis-prescribing doctors or mis-dispensing pharmacies); #7-8 (did not budget

funds to police opioid theft or dealing); #12 (did not consider any budget request for

opioid programming).  These statements that Cabell County *did not* take these

15

actions in the face of budget constraints are not an admission that the County *could not* take these actions due to a lack of legal authority.

Defendants' arguments based upon Ms. Thompson's deposition testimony thus are incorrect on their own terms and are irrelevant in any event. W. Va. Code § 7-1-3kk plainly establishes that Cabell County has power and authority to take "appropriate and necessary actions . . . to abate or cause to be abated anything which the commission determines to be a public nuisance." The existence of this authority is a pure question of law on which witness testimony is neither relevant nor admissible. Defendants' motion on this question therefore must be denied.

<u>CONCLUSION</u>

For all of the reasons set forth, the Court should deny Defendants' motion for summary judgment on Plaintiff Cabell County Commission's right to abatement.

Dated: October 6, 2020                     Respectfully submitted,

**THE CITY OF HUNTINGTON**           **CABELL COUNTY COMMISSION**
/s/ *Anne McGinness Kearse*           /s/ *Paul T. Farrell, Jr.*
Anne McGinness Kearse                 Paul T. Farrell, Jr.
WVSB No. 12547                        WVSB Bar No. 7443
Joseph F. Rice                        **FARRELL LAW**
**MOTLEY RICE LLC**                   422 Ninth Street, 3rd Floor (25701)
28 Bridgeside Blvd.                   PO Box 1180
Mount Pleasant, SC 29464             Huntington, West Virginia 25714-1180
Tel: 843-216-9000                     Mobile: 304-654-8281
Fax: 843-216-9450                     paul@farrell.law
akearse@motleyrice.com
jrice@motleyrice.com
                                      /s/ *Anthony J. Majestro*
                                      Anthony J. Majestro
Linda Singer                          WVSB No. 5165
David I. Ackerman                     **POWELL & MAJESTRO, PLLC**
**MOTLEY RICE LLC**                   405 Capitol Street, Suite P-1200
401 9th Street NW, Suite 1001        Charleston, WV 25301
Washington, DC 20004

16

Tel:  202-232-5504
Fax:  202-386-9622
lsinger@motleyrice.com
dackerman@motleyrice.com

Charles R. "Rusty" Webb
WV No. 4782
**THE WEBB LAW CENTRE**
716 Lee Street, East
Charleston, West Virginia 25301
Telephone: (304) 344-9322
Facsimile: (304) 344-1157
rusty@rustywebb.com

On Brief:
Louis Bograd
**MOTLEY RICE LLC**
401 9th Street NW, Suite 1001
Washington, DC 20004
Tel:  202-232-5504 / 202-386-9622 (f)
lbograd@motleyrice.com

Anthony J. Majestro
WVSB No. 5165
**POWELL & MAJESTRO, PLLC**
405 Capitol Street, Suite P-1200
Charleston, WV 25301
304-346-2889 / 304-346-2895 (f)
amajestro@powellmajestro.com

Paulina do Amaral
**LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLC**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel:  212-355-9500 / 212-355-9592(f)
pdoamaral@LCHB.com

Michael J. Quirk
**MOTLEY RICE LLC**
40 West Evergreen Avenue, Suite 104
Philadelphia, PA 19118
Tel:  610-679-9932 / 856-667-5133 (f)
mquirk@motleyrice.com

304-346-2889 / 304-346-2895 (f)
amajestro@powellmajestro.com

Michael A. Woelfel
WVSB No. 4106
**WOELFEL AND WOELFEL, LLP**
801 Eighth Street
Huntington, West Virginia 25701
Tel. 304.522.6249
Fax. 304.522.9282
mikewoelfel3@gmail.com

17

### CERTIFICATE OF SERVICE

I certify that on October 6, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. This filing will also be served on all parties by email to:

Track2OpioidDefendants@ReedSmith.com and CT2_Opioid_Team@mail-list.com.

/s/ *Anthony J. Majestro*