Exhibit 3 – *In re Opioid Litig.*, Civil Action No. 19-C-9000 (W. Va. Cir. Ct. of Kanawha Cty. July 29, 2020) (Order re Plaintiffs' Motion to Strike Defendants' Notices of Non-Party Fault)

Plaintiffs' Opposition to Defendants' Motion for Summary Judgment on Plaintiff Cabell County Commission's Right to Abatement

## IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

**IN RE: OPIOID LITIGATION**                    **CIVIL ACTION NO. 19-C-9000**

### THIS DOCUMENT RELATES TO ALL CASES

### ORDER REGARDING PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' NOTICES OF NON-PARTY FAULT

Pending before the Mass Litigation Panel is *Plaintiffs'*[1] *Motion to Strike the Defendants' Notices of Non-Party Fault* (Transaction ID 65695012) ("Motion"), which has been fully briefed by the parties.  Having reviewed the Motion, Defendants' Response (Transaction ID 65729181) and Plaintiffs' Reply (Transaction ID 65747508), the Presiding Judges **GRANT** the motion, in part, based upon the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1.      The Defendants in this litigation have filed numerous notices of non-party fault ("Notices"), purportedly pursuant to W.Va. Code § 55-7-13d(a)(2) ("2015 Act"), which Defendants contend permits this Court to consider the fault of the non-parties identified in the Notices.[2]

---

[1] The Motion was filed on behalf of all City, County, and Hospital Plaintiffs.

[2] *E.g.,* Transaction ID 65644591, at 1; Transaction ID 65652901 (ABDC Notice filed on 5/22/2020 in *City of Grafton*, *et al. v. Purdue Pharma L.P., et al.*, Civil Action Nos. 19-C-151 and 19-C-152); Transaction ID 65644591 (Mallinckrodt LLC's Notice filed on 5/19/2020 in *City of Grafton*); Transaction ID 65665884 (Defendant Allergan Finance, LLC's Notice filed on 5/29/2020 in *City of Grafton*); Transaction ID 65656871(Cardinal Defendants' Notice filed on 5/26/2020 in *City of Grafton*), Transaction ID 65641667 (Rite Aid Defendants' Notice filed on 5/18/2020 in *City of Clarksburg, et al v. Allergan, PLC,* Civil Action No. 19-C-259 – 19-C-266); Transaction ID 65666356 (Allergan Finance, LLC Notice filed on 5/29/2020 in *Roane County Commission v. Mylan Pharmaceuticals, Inc.*, Civil Action No. 19-C-96 – 19-C-108); Transaction ID 64513201 (CVS Defendants' Notice filed on 12/10/2019 in *West Virginia University Hospitals, Inc., et al v. Purdue Pharma, L.P., et al.*, Civil Action Nos. 19-C-69 – 19-C-88 and Civil Action Nos. 19-C-134 – 19-C-139); Transaction ID 64516582 (ABDC's Notice filed on 12/11/2019 in *West Virginia University Hospitals, Inc., et al v. Purdue Pharma, L.P., et al.*, Civil Action Nos.

2.     The Notices generically list categories of non-parties alleged to be at fault in these cases.[3]

3.     Defendants contend their Notices are authorized by the 2015 Act, which provides that the fault of a nonparty shall be considered "if a defending party gives notice no later than one hundred eighty days after service of process upon said defendant that a nonparty was wholly or partially at fault."[4]

4.     Plaintiffs contend the 2015 Act and its predecessor, W.Va. Code § 55-7-24 ("2005 Act") (collectively the "Apportionment Statutes"), are inapplicable to Plaintiffs' public nuisance claims, which are scheduled for a non-jury liability trial on March 22, 2021, for two reasons.  First, Plaintiffs contend the 2015 Act is inapplicable because it is not retroactive; it explicitly applies only to causes of action which accrue on or after its effective date, May 25, 2015; and Plaintiffs' public nuisance claims arose prior to May 25, 2015.  Motion, p. 2, pp. 5-6.  Second, Plaintiffs contend that, to the extent a Phase II trial occurs regarding remedies, the Apportionment Statutes do not apply to Plaintiffs' equitable claims for abatement.  *Id.*, pp. 7-12.  Plaintiffs assert that claims seeking abatement as an equitable remedy are not tort actions for compensatory damages. Id. pp. 7-9.  Furthermore, the Apportionment Statutes relate to damage remedies and do not apply

---

19-C-69 to 19-C-88 and Civil Action Nos. 19-C-134 to 19-C-139); Transaction ID 64528599 (Cardinal Health Inc.'s Notice filed on 12/16/2019).

[3] *See, e.g.,* Transaction ID 65644591 (identifying by category:  persons engaged in criminal or other wrongful conduct; pharmacies and pharmacists; nonparty prescribing practitioners; nonparty pharmaceutical manufacturers; nonparty pharmaceutical distributors; health insurers; pharmacy benefit managers; and nonparty federal, state, and local government entities and officials). Plaintiffs suggest the Notices are insufficient to comply with the provisions of W.Va. Code § 55-7-13d(a)(2) because they do not contain sufficient identification of the alleged third-party at fault or they are untimely. Motion at 2, n.4. Plaintiffs do not ask the Court to resolve these potential challenges now. *Id.*

[4] *Id.* at § 55-7-13d(a)(2).

to equitable public nuisance claims seeking abatement as a remedy. *Id.* pp. 9-12. Plaintiffs contend that, by their very terms, the 2015 Act applies only to actions at law seeking damages; and the limited liability under the 2005 Act only applies to damage claims. *Id.*, pp. 2-3.

5. Defendants argue Plaintiffs' motion to strike is based on an inaccurate statement of the record because it only references and is limited to Plaintiffs' public nuisance claims. However, with the exception of McKesson, Plaintiffs' pending claims against the Defendants are not limited to public nuisance. Response, pp. 3-4. Furthermore, the equitable remedy of abatement is a monetary recovery that constitutes damages regardless of how Plaintiffs wish to label it. *Id.*, p. 4. Defendants contend that, either Plaintiffs' public nuisance claims accrued after May 25, 2015, and the 2015 Act applies, or Plaintiffs' nuisance claims are completely barred by the statute of limitations. Response, pp. 4-8. Defendants further contend the 2015 Act applies because Plaintiffs' nuisance claims are tort claims that seek damages. *Id.* pp. 8-14.

## CONCLUSIONS OF LAW

1. Prior to 2005, West Virginia was "committed to the concept of joint and several liability among joint tortfeasors" permitting a plaintiff to sue "any or all of those responsible . . .and collect his damages from whomever is able to pay, irrespective of their percentage of fault."[5]

2. In 2005, the Legislature limited joint liability in damage actions sounding in tort to parties found greater than 30% at fault.[6] The 2005 Act applies "only to causes of action that

---

[5] *Sitzes v. Anchor Motor Freight, Inc.*, 169 W. Va. 698, 698, 289 S.E.2d 679, 681 (1982).

[6] W.Va. Code § 55-7-24(a) (repealed 2015). The 2005 Act included exceptions that applied "the rules of joint and several liability" to "[a]ny party who acted with the intention of inflicting injury or damage," or in the in case of "[a]ny party who acted in concert with another person as part of a common plan or design resulting in harm." *Id.* at § 55-7-24(b)(1), (2).

accrued on or after the first day of July, two thousand five."[7]  Apportionment under the 2005 Act

is appropriate only between "the parties in the litigation at the time the verdict is rendered."[8]

3.      The 2005 Act was repealed in 2015.[9] The 2015 Act provides that "[i]n any *action*

*for damages*, the liability of each defendant *for compensatory damages* shall be several only and

may not be joint."[10] Like the 2005 Act, the 2015 Act contains exceptions.[11]  However, unlike the

2005 Act's focus on the parties "in the litigation at the time of verdict," the 2015 Act requires that

the trier of fact "consider the fault of all persons who contributed to the alleged *damages* regardless

of whether the person was or could have been named as a party to the suit."[12]

4.      As previously determined by the Panel, the Phase I non-jury trial of Defendants'

liability for public nuisance is an equitable matter.[13]  The Supreme Court of Appeals of West

Virginia ("Supreme Court") has recognized that the "distinction between abatement of nuisances

---

[7] *Id.* at § 55-7-24(g).

[8] *Id.* at § 55-7-24(a)(1). Thus, for purposes of allocation, the liability of absent, settling, immune, or bankrupt defendants was ignored. *Halcomb v. Smith*, 230 W. Va. 258, 260, 737 S.E.2d 286, 288, n.1 (2012).

[9] H.B.2002, 2015 Leg. 82nd Sess. (W.Va.2015) (codified at W. Va. Code §§ 55–7–13a through 13d) ("2015 Act").

[10] W.Va. Code § 55-7-13c(a) (emphasis added).

[11] *See* W.Va. Code § 55-7-13c(a) (joint liability imposed "on two or more defendants who consciously conspire and deliberately pursue a common plan or design to commit a tortious act or omission"); *id.* at § 55-7-13c(h)(2) (joint and several liability imposed when defendant's "acts or omissions constitute criminal conduct"); *id.* W. Va. Code Ann. § 55-7-13d(b) (person may be "held liable for the portion of comparative fault assessed against another person who was acting as an agent or servant of such person, or if the fault of the other person is otherwise imputed or attributed to such person by statute or common law").

[12] W. Va. Code § 55-7-13d(a)(1) (emphasis added).

[13] *See Order Regarding Rulings Issued During March 13, 2020 Status Conference* (Transaction ID 64846125) at 1. ("The Court is not incline to re-visit its *Order Regarding Trial of Liability for Public Nuisance* (Transaction ID 64739341), because Plaintiffs' claims for abatement of public nuisance are equitable claims to which a right to jury trial does not attach.")  *See also Order Denying Certain Defendants' Motions for Reconsideration* (Transaction ID 65792140).

and recovery of damages for injuries occasioned by wrongful acts constituting nuisances" is both "apparent" and "vast."[14]

5.    Because the Panel concludes that the Apportionment Statutes (both the 2005 Act and 2015 Act) do not apply to Plaintiffs' equitable claims of public nuisance, there is no need to address Defendants' other arguments regarding application of the Apportionment Statutes.

6.    The plain language of the Apportionment Statutes supports this conclusion.  The statutes only expressly apply only to claims for damages and do not refer to abatement or other equitable relief.  Under the 2005 Act, the fact finder must determine, "the total amount of *damages* sustained by the claimant" and the limited several liability under the Act is imposed only with respect to "the *damages* attributable" to a defendant found less than 30% at fault.[15]  Similarly, the 2015 Act, applies "[i]n any *action for damages*," and requires "the liability of each defendant *for compensatory damages*" be several only.[16]  And, the trier of fact is directed to apportion by considering "the fault of all persons who contributed to the alleged *damages*."[17]  Finally, the definition of "damages" does not include equitable relief.[18]

---

[14] *McMechen v. Hitchman-Glendale Consol. Coal Co.*, 88 W. Va. 633, 107 S.E. 480, 482 (1921); *see Duff v. Morgantown Energy Assocs. (M.E.A.*), 187 W. Va. 712, 717, 421 S.E.2d 253, 258 (1992) (internal quotations omitted) (upon establishing nuisance party entitled to "relief therefrom by the abatement of the nuisance *and* the defendants will be held liable for damages." (emphasis added)); *State ex rel. Ball v. Cummings,* 208 W. Va. 393, 402, 540 S.E.2d 917, 926 (1999) (severing claims after finding issues involved in action for monetary damages distinct from claim seeing abatement of pollution); *see also* Restatement (Second) of Torts § 821B, com. i (1979) ("There are numerous differences between an action for tort damages and an action for an injunction or abatement, and precedents for the two are by no means interchangeable.").

[15] W.Va. Code § 55-7-24(a)(1), (2) (emphasis added); W. Va. Code Ann. § 55-7-13a(b) (article applies to any action "seeking *damages* for personal injury, property damage, or wrongful death" (emphasis added)).

[16] W.Va. Code § 55-7-13c(a).

[17] W. Va. Code § 55-7-13d(a)(1) (emphasis added).

[18] W.Va. Code § 55-7-13d(e) ("[f]or purposes of this section, 'damages' includes all damages which may be recoverable for personal injury, death, or loss of or damage to property, including those recoverable in a wrongful death action").

7.     Defendants' interpretation of the Apportionment Statutes to apply to equitable claims is contrary to established common law.  As early as 1936, the Supreme Court recognized that defendants who were concurrently at fault in creating a nuisance were subject to joint liability.[19] And, joint liability is subject to a different and more liberal standard in equity:

> Upon the state of facts here disclosed, the law courts could only give damages for the wrong, and, if the defendants are not jointly liable, they could not be jointly sued at law. Their creation or maintenance of nuisances, or both, is an entirely different thing. . . . Although brought into existence or maintained by the separate acts of a number of persons, a nuisance, considered in all of its aspects and elements, may be an entire thing. Limited in its functions to a mere matter of compensation for damages, a court of law could not, under all circumstances, treat it as an entirety, but a court of equity can do so, because of its more extensive remedial powers.[20]

8.     If the Legislature intends to alter or supersede the common law, it must do so clearly and without equivocation. Our "common law is not to be construed as altered or changed by statute, unless legislative intent to do so be plainly manifested."[21]

9.     The Legislature understands the difference between damages and abatement as it expressly includes abatement or injunctive remedies when it intends laws to apply to both remedies.[22] Given the established jurisprudence marking the difference between damages and

---

[19] *Baker v. City of Wheeling*, 117 W. Va. 362, 185 S.E. 842, 844 (1936) (Court holding in nuisance action that "[t]he concurrent neglect of each . . . allegedly resulted in plaintiff's injuries. Hence she could sue them jointly.").

[20] *McMechen,* 88 W. Va. 633, 107 S.E. at 482.

[21] *State ex rel. Van Nguyen v. Berger,* 199 W. Va. 71, 75, 483 S.E.2d 71, 75 (1996).

[22] W. Va. Code § 61-13-4 (limiting political subdivision actions from bringing actions seeking "damages, abatement or injunctive relief" relating to firearms); W. Va. Code § 22-11-27 (Water Pollution Control Act provision preserving "rights to suppress nuisances or to abate any pollution now or hereafter existing, or to recover damages"); W. Va. Code § 22-10-11 (Abandoned Well Act; same); W. Va. Code Ann. § 22-12-13 (Groundwater Protection Act; same); W. Va. Code Ann. § 47-2-14 (Trademark Act expressly providing for injunctions and damages); W. Va. Code §§ 47-18-8, 9 (Antitrust Act providing separate remedies for injunctions and damages); W. Va. Code Ann. § 47-11A-9 (Unfair Trade Practices Act; same); W.Va. Code § 46A-6-106 (Consumer Protection Act providing for damages and equitable relief).

equitable remedies like abatement, the Panel concludes the absence of statutory language expressly including equitable remedies is both telling and determinative.[23]

10.     West Virginia law has long made clear the equitable nature of an action to abate a public nuisance.   In 1900, the Supreme Court held: "Courts of equity have an ancient and unquestionable jurisdiction to prevent or abate public nuisance, and this alone would give jurisdiction."[24] Other courts and commentators agree that the aim of an abatement action is to reduce or eliminate a nuisance prospectively as contrasted with an action for damages which seeks to compensate for prior harm.[25]  As the California Court of Appeals noted:

> An equitable remedy's sole purpose is to eliminate the hazard that is causing prospective harm to the plaintiff. An equitable remedy provides no compensation to a plaintiff for prior harm. Damages, on the other hand, are directed at compensating the plaintiff for prior accrued harm that has resulted from the

---

[23] *Phillips v. Larry's Drive-In Pharmacy, Inc.,* 220 W. Va. 484, 492, 647 S.E.2d 920, 928 (2007) (recognizing and applying doctrine of *expressio unius est exclusio alterius*, the express mention of one thing implies the exclusion of another).  Jurisprudence from other jurisdictions similarly differentiates between compensatory damages and nuisance abatement, holding that state statutes limiting the availability of the former (like the Apportionment Statutes) have no impact whatsoever on the availability of the latter remedy. *See*, *e.g.*, *Cobbley v. City of Challis*, 59 P.3d 959, 963 (Idaho 2002) ("Had the court allowed the Cobbleys to amend their complaint, they could have specifically alleged a claim for abatement of a nuisance, which would not be an action to recover damages and subject to the constraints of the notice requirements under the [Idaho] Tort Claims Act."); *Peterson v. Putnam County*, 2006 Tenn. App. LEXIS 677, at *32-33 (Tenn. Ct. App. Oct. 19, 2006) ("In Tennessee, a nuisance-type claim that seeks *damages* against a governmental entity must be brought under the terms of the [Governmental Tort Liability Act]. . . . Our courts have held, however, that an *equitable action to abate* a nuisance created by a governmental entity is permitted outside of [the] terms of the GTLA.") (emphasis in original); *Bostco LLC v. Milwaukee Metro. Sewerage Dist.*, 835 N.W.2d 160, 178 (Wis. 2013) ("Accordingly, we conclude that the plain meaning of Wis. Stat. § 890.80(3) is to limit the dollar amount of recovery to be paid for damages. . . but that the plain meaning of that provision has no bearing on the availability of equitable relief such as abatement.").

[24] *Town of Weston v. Ralston*, 48 W. Va. 170, 36 S.E. 446, 456 (1900).

[25] *See San Diego Unified Port Dist. v. Monsanto Co.*, No. 15cv578, 2018 U.S. Dist. LEXIS 149485, at *14 (S.D. Cal. Aug. 30, 2018) (recognizing "stark" distinction between abatement as equitable remedy for prospective relief and damages which compensate for "'prior accrued harm'"); *Town of Superior, Mont. v. Asarco, Inc.*, 874 F. Supp. 2d 937, 948–49 (D. Mont. 2004) (award of damages in nuisance case "is retroactive, applying to past conduct, while an injunction applies only to the future"); Restatement (Second) of Torts § 821B,  com. i (1979) ("On the other hand an award of damages is retroactive, applying to past conduct, while an injunction applies only to the future.").

defendant's wrongful conduct. The distinction between these two types of remedies frequently arises in nuisance actions.[26]

11.    The Panel disagrees with Defendants contention that, because Plaintiffs' action seeks money, the action is for damages.  Response, p. 4.  "The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) (holding that the State's request for a return of funds was for specific relief, rather than damages).  Payment of money constitutes damages only if it compensates the plaintiff for an injury or loss.

12.    The Panel agrees that payment of costs incurred to abate a public nuisance is equitable relief, rather than damages, as numerous courts, including the federal MDL court, have recognized.[27]

---

[26] *People v. ConAgra Grocery Products Co*., 227 Cal.Rptr.3d 499, 569 (Cal.App.2017); *see also Mugler v. Kansas*, 123 U.S. 623, 673, 8 S.Ct.  273, 303 (1887) ("[Courts of equity] cannot only prevent nuisances that are threatened, and before  irreparable mischief ensues, but arrest or abate those in progress, and, by perpetual injunction, protect  the public against them in the future; whereas courts of law can only reach existing nuisances, leaving  future acts to be the subject of new prosecutions or proceedings. This is a salutary jurisdiction, especially where a nuisance affects the health, morals, or safety of the community."); *United States v.  Price*, 688 F.2d 204, 212 (3d Cir.1982) ("Damages are awarded as a form of substitutional redress. They are intended to compensate a party for an injury suffered or other loss. A request for funds for a diagnostic study of the public health threat posed by the continuing contamination and its abatement is not, in any sense, a traditional form of damages.").

[27] *See, e.g., In re National Prescription Opiate Litigation*, 2019 WL 4043938, at *1 (payment for costs incurred to abate the nuisance is equitable relief); *see State of Oklahoma ex rel., Hunter v. Purdue,* at 30 Conclusion of Law #23 ("the proper remedy for the public nuisance is equitable abatement" and ordering that State's abatement plan be executed, which required defendants to fund the abatement plan); *Commonwealth v. Purdue Pharma, L.P.,* No. 1884CV01808, 2019 WL 5495716, at *5 (Mass. Super. Oct. 8, 2019) ("an abatement order in a public nuisance case could include a requirement that the defendants expend the money necessary to abate the nuisance"); *NAACP v. Acusport Corp.*, 226 F. Supp. 2d 391, 397 (E.D.N.Y. 2002) (in action seeking funds "to help abate" public nuisance "recovery of costs incurred in abatement are equitable"); *United States v. Wade,* 653 F. Supp. 11, 13 (E.D. Pa. 1984) ("[T]he Commonwealth has elected to seek recovery only of its costs incurred in abating the nuisance. . . . relief [that] is in the nature of equitable restitution."); *People v. ConAgra Grocery Prod. Co.,* 17 Cal. App. 5th 51, 131–32, 227 Cal. Rptr. 3d 499, 568–69 (Ct. App. 2017) (rejecting defendants' argument that abatement order was "actually an order that they pay damages" because "[a]n abatement order is an equitable remedy … An equitable remedy's sole purpose is to eliminate the hazard that is causing prospective harm to the plaintiff. An equitable remedy provides no compensation to a plaintiff for prior harm"); *New York v. West Side,* 790 F. Supp. 2d 13, 29-30 (E.D.N.Y. 2011) (distinguishing between costs already spent to remediate

13.     Damages, whether future or past, are focused on compensation for an injury or loss to make the injured party whole.  Abatement is to rectify the nuisance itself.  *See In re National Prescription Opiate*, 2019 WL 4043938, at *1 (N.D. Oh. August. 26, 2019).  For example, the cost of providing opioid education programs or treatment centers might be part of the equitable relief to abate Plaintiffs' alleged public nuisance – the opioid crisis – while compensation for injuries or losses, such as an individual's reduced future earnings due to opioid addiction or death, would be future compensatory damages.

14.     The Court concludes and holds that such costs are in the nature of equitable relief, not past damages.  The Court further concludes that prospective costs for addiction treatment and services may be sought as part of the necessary measures to abate or remediate the alleged public nuisance of the opioid epidemic.  Such costs are akin to the "clean up" costs that were assumed to be recoverable to remediate the public nuisance in *Kermit Lumber*, 200 W. Va. 221, 245, 488 S.E. 2d 901, 925 (1997).

15.     Defendants also incorrectly contend that abatement is limited to injunctive relief.  Response, pp. 9-10.  Although injunction is one remedy historically available in an abatement action, there is no prohibition against other forms of equitable relief, such as the necessary costs to abate the nuisance.  The essence of equity is flexibility.  *See, e.g.*, *Cashcall, Inc. v. Morrisey*, No. 12-1274, 2014 WL 2404330, at *19 (W. Va. May 30, 2014) (memorandum opinion) ("Courts have broad powers to fashion equitable relief. . . . Moreover, a court's equitable powers assume an even broader, more flexible character when the public interest is involved in a proceeding in order to secure complete justice.") (citing *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)).

---

the public nuisance, which the court characterized as damages, and costs of additional, future clean-up, which were appropriate equitable relief to abate the nuisance).

16.     Numerous courts, acting in the exercise of their equitable powers, have allowed for abatement costs regardless of whether the plaintiff sought injunctive relief.[28]

17.     This Court further finds that Defendants' attempts to distinguish *United States v. Price* and *ConAgra* are unavailing. Response, pp. 11-12.   Although *Price* affirmed the district court's exercise of discretion to deny a preliminary injunction, it pointed out that the lower court had taken an "unduly restrictive view of its remedial powers." 688 F.2d 204, 211 (3d Cir. 1982). It was in this context that it pointed out the difference between damages, which "are intended to compensate a party for an injury suffered or other loss," and an abatement remedy that would require funds. *Id.* at 212. "The funding of a diagnostic study in the present case, though it would require monetary payments, would be preventive rather than compensatory. The study is intended to be the first step in the remedial process of abating an existing but growing toxic hazard which, if left unchecked, will result in even graver future injury." *Id.* Similarly, here, any payment of funds by Defendants would be not to compensate Plaintiffs for their past damages or expenditures, but to remediate the alleged public nuisance – the opioid crisis.

18.     The Court rejects Defendants' argument that the court's decision in *ConAgra* is "aberrant".  Instead, it is merely one of numerous courts allowing for the payment of funds – whether in conjunction with an injunction or not – as part of a court's equitable remedies in abating

---

[28] *See, e.g., In re National Prescription Opiate Litigation*, 2019 WL 4043938, at *1; *Commonwealth v. Purdue,* 2019 WL 5495716, at *5; *ConAgra,* 17 Cal. App. 5th at 131–34, 227 Cal. Rptr. 3d at 568-71; *San Diego Unified Port Dist. v. Monsanto Co.,* No. 15-CV-578-WQH-AGS, 2020 WL 1479071, at *16 (S.D. Cal. Mar. 26, 2020) (allowing plaintiffs to "proceed[] to trial and attempt[] to prove that abatement is necessary and feasible and that an abatement fund is a proper remedy"); *Cty. of Santa Clara v. Atl. Richfield Co.,* 137 Cal. App. 4th 292, 311, 40 Cal. Rptr. 3d 313, 329 (2006) (allowing public nuisance claim seeking future abatement to proceed); *Ypsilanti Charter Tp. v. Kircher*, 281 Mich. App. 251, 761 N.W.2d 761, 777-78 (2008) (approving payment of expenses incurred in repairing and abating the conditions that caused the public nuisance as an appropriate exercise of the court's equitable authority); *Penn Terra Ltd. v. Dept. of Environmental Resources, Com. of Pa.*, 733 F.2d 267, 278 (3d Cir. 1984) (finding that it was not a money judgment when the state attempted to enforce an injunction to prevent future harm created by an environmental hazard, even though the action would involve the expenditure of money).

a nuisance. *See supra*, Footnotes 27, 28.  And, as in *ConAgra*, the sole purpose of the abatement fund Plaintiffs seek is to eliminate the hazard that is causing prospective harm to the Plaintiffs. 17 Cal. App. 5th at 132, 227 Cal. Rptr. 3d at 569. Here, that is the opioid crisis.

19.     The Defendants point out that some of the Plaintiffs' claims involve claims for damages. Response at p. 4.  The Panel's Order arises out of the inapplicability of the Apportionment Statutes to equitable claims for abatement of public nuisance and, therefore, the Panel's Order is limited to Plaintiffs' public nuisance claims.

For the foregoing reasons, the Panel concludes the Apportionment Statutes (both the 2005 Act and the 2015 Act) have no application to Plaintiffs' claims for equitable abatement of public nuisance. *Plaintiffs' Motion to Strike Defendants' Notices of Non-Party Fault* (Transaction ID 65695012) is **GRANTED**, in part, insofar as it applies to Plaintiffs' public nuisance claims.  Any additional Notices will not apply to Plaintiffs' public nuisance claims.

All objections and exceptions to the Panel's Order are noted and preserved for the record. A copy of this Order has this day been electronically served on all counsel of record via File & Serve*Xpress*.

It is so **ORDERED.**

ENTERED:  July 29, 2020.                           /s/ Alan D. Moats
                                                                      Lead Presiding Judge
                                                                      Opioid Litigation


                                                                      /s/ Derek C. Swope
                                                                      Presiding Judge
                                                                      Opioid Litigation