UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CITY OF HUNTINGTON**

    **Plaintiff,**

v.

**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**

    **Defendants.**

_____

Civil Action No. 3:17-cv-01362

**CABELL COUNTY COMMISSION,**

    **Plaintiff,**

v.

**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**

    **Defendants.**

_____

*Consolidated Case*:
Civil Action No. 3:17-cv-01665

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION FOR A TRIAL CONTINUANCE**

The upcoming opioid bellwether trial will address the largest man-made public health crisis of our lifetime: the scourge of death and addiction in West Virginia caused by Defendants' improper sales and supply of prescription opioids. As Judge Polster aptly observed in the MDL: "It is accurate to describe the opioid epidemic as a man-made plague, twenty years in the making. The pain, death, and heartache it has wrought cannot be overstated . . . ." *In re: Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, ECF No. 1203 at 38 (Dec. 19, 2018). Unlike the Covid-19 pandemic, which has shown signs of stabilizing and subsiding in West Virginia, the opioid

epidemic continues to worsen with no end in sight. The isolation, social distress, and economic hardships associated with social distancing in 2020 have served only to increase opioid use and overdoses, making it even more imperative this trial go forward as scheduled.[1]

No doubt Covid 19 is a significant public health issue that has greatly impacted our country including West Virginia, but Defendants paint an exaggerated picture of the current status of Covid-19 in West Virginia and the ability to implement safety measures to reduce the risks of a trial. West Virginia and Kanawha County are among the safer places in America. As of Monday, Governor Justice reported that West Virginia had the *second lowest* rate of COVID-19 transmission in the nation, an Rt of only 0.86,[2] which indicates the rate of infection is slowing.[3] West Virginia

---

[1] Jon Kamp & Arian Campo-Flores, *The Opioid Crisis, Already Serious, Has Intensified During Coronavirus Pandemic*, THE WALL STREET J. (Sept. 8, 2020), https://www.wsj.com/articles/the-opioid-crisis-already-serious-has-intensified-during-coronavirus-pandemic-11599557401; Brian Mann, *U.S. Sees Deadly Drug Overdose Spike During Pandemic*, NPR (Aug. 13, 2020), https://www.npr.org/sections/coronavirus-live-updates/2020/08/13/901627189/u-s-sees-deadly-drug-overdose-spike-during-pandemic; *Opioids and the COVID-19 Pandemic*, U.S. Dep't of Health and Human Services, Indian Health Service, https://www.ihs.gov/opioids/covid19/ ("The opioid crisis and COVID-19 pandemic are intersecting with each other and presenting unprecedented challenges for families and communities. Opioid use affects respiratory and pulmonary health which may make those with opioid use disorders more susceptible to COVID-19.") (last visited Oct. 7, 2020).

[2] https://governor.wv.gov/News/press-releases/2020/Pages/COVID-19-UPDATE-Gov.-Justice-allows-certain-types-of-music-performances-to-resume-with-limitations.aspx?fbclid=IwAR2UZeRNlurwe_AEhiGgeCx4B4ONEfWaiauvdznQ_5kGMlL_xoeVQk0xuRU.

[3] The Rt is "West Virginia's statewide rate of COVID-19 transmission." https://governor.wv.gov/News/press-releases/2020/Pages/COVID-19-UPDATE-Gov.-Justice,-Vice-President-Mike-Pence-hold-joint-briefing-on-West-Virginia-COVID-19-

currently ranks 35th among the states in new COVID-19 cases per capita over the past seven days, with only 69 new cases per 100,000 people.[4] This is consistent with West Virginia's generally low overall rate of COVID-19 infection; fewer than 1% of the State's citizens have ever contracted COVID, a lower infection rate than all but five other states.[5] Over the last week, Kanawha County's test positivity rate has fallen from 5.65% on September 30 to 3.86% on October 6, moving the County from orange to gold to yellow on the State's color-coded COVID-19 risk map.

With these facts as a backdrop, none of Defendants' arguments warrant a continuance to January 4, 2021:

(1) Defendants significantly overstate the Covid-19 rate in Kanawha County by relying on statistics that were outdated even before Defendants filed their "emergency" motion to continue; indeed, as noted, the most recent evidence shows Covid-19 subsiding in West Virginia, not increasing.

(2) Although Defendants ask for a continuance until January 4, 2021, they have presented absolutely no evidence why January would be a better time for trial than October; instead, Defendants' preference for January appears to be motivated by tactical considerations.

(3) The parties are undertaking every reasonable precaution to manage and mitigate the risks associated with Covid-19 to protect everyone involved in the trial.

---

response.aspx "If a given state's Rt value is above 1.0, it means the virus will spread quickly, while values under 1.0 mean infections are slowing." *Id.*

[4] https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html.

[5] *Id.*

To the extent Defendants profess that some of their lawyers or employees nevertheless worry about attending trial in October, the solution is simple: Defendants should respect those concerns and not force anyone to attend trial who is not ready to attend. And, because this is a bench trial, this Court has flexibility to address any issues that arise because of Covid-19.

(4) Most importantly, any risks associated with conducting this non-jury trial during Covid-19 must be weighed against the urgency of the opioid crisis itself. The sad reality is that the opioid epidemic continues to kill West Virginians at a faster rate than Covid-19. And unlike the coronavirus, there is no vaccine in development to help the West Virginians addicted to opioids. People will continue to die until Defendants are held responsible for abating the nuisance they created. That is exactly what this trial is about.

The parties have spent months successfully preparing this case for the scheduled October 19, 2020 trial. Defendants' predictions last spring and this summer that it would not be possible to prepare for trial in the time allotted have been proven wrong. Indeed, the defendants have not argued that they are *not* ready for trial. The parties are ready to try this case, and it can be done safely. The Defendants' motion for a continuance should be denied.

## ARGUMENT

### A.  Legal standard.

Rule 16 instructs that a trial schedule should not be modified except upon a showing of good cause. *See* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). In making the good cause

determination, "courts may consider whether the moving party acted in good faith, the length of the delay and its effects, and whether the delay will prejudice the non-moving party." *See Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012) (per curiam) (internal quotation marks and brackets omitted). Notably, courts have found that the "good cause" and "diligence" considerations under Rule 16 apply even in cases involving Covid-19.[6] Moreover, the specific question of "good cause" to be decided in this case is not whether conducting a trial in October carries no risks, but rather whether continuing the trial until January 4, 2021 will result in a significant reduction in those risks.

### B. Defendants rely on outdated and inaccurate data regarding the prevalence of Covid-19 in Kanawha County.

No one disputes the profound impact of the coronavirus. But its risks should not be exaggerated nor manipulated for self-serving purposes. Defendants' key argument in their "emergency" motion to continue the trial is that Covid-19 rates have recently spiked in Kanawha County, allegedly justifying an immediate postponement of trial until next year. Specifically, Defendants have cited "7-day rolling average" data from the Harvard Global Health Institute website for the proposition that there are now 29.75 Covid-19 cases per 100,000 people in Kanawha

---

[6] *See, e.g., Oglesby v. Masse Contracting, Inc.*, No. CV 19-2360-WBV-JCW, 2020 WL 3063849, at *2 (E.D. La. June 9, 2020) ("Plaintiff does not mention Rule 16(b)(4) or the four factors of the good cause analysis in the Motion to Continue Trial. Instead, Plaintiff merely asserts that, 'the unforeseen delays that have resulted in the discovery process due to the unprecedented COVID-19 pandemic constitute good cause for a continuance.' The Court, however, finds that a majority of the factors weigh against finding good cause exists to modify the Scheduling Order with respect to the remaining pre-trial deadlines and the August 24, 2020 jury trial.").

County.[7] But this data was old even before Defendants filed their motion. Indeed, the numbers from October 4, 2020 showed that the 7-day rolling average in Kanawha County had in fact already decreased to 17.9 cases per 100,000 people. In other words, Defendants overstate the most accurate public health data regarding Kanawha County by nearly two-thirds.[8] As of October 6, 2020, the rate has further decreased to 17.8 cases per 100,000 people.[9]

Defendants can try to cherry-pick or manipulate the data to fit their argument however they wish. But what matters for purposes of the emergency motion is that it cannot be disputed that Covid-19 infection rates in West Virginia are low and are at present on a downward trajectory in Kanawha County. Kanawha County was not listed as a heightened risk last spring, and it is not listed as a heightened risk today. *See* https://dhhr.wv.gov/COVID-19/Pages/default.aspx (showing Kanawha County in the "Yellow" zone) (last access October 6, 2020). As Defendants' acknowledge in their motion, the county's "Gold" rating—which further improved to "Yellow" as of October 6—means schools in the county are reopening. And just Monday Governor Justice

---

[7] *See* Harvard Global Health Institute, Risk Levels Downloadable Data, https://globalepidemics.org/key-metrics-for-covid-suppression (last visited October 6, 2020) ("Harvard Data Spreadsheet").

[8] Defendants also filed a supplemental brief on the afternoon of October 5 which specifically referenced accessing the Harvard website on October 5. But Defendants didn't update the information they previously submitted to the Court. *See* ECF 1072, at 2, n.2.

[9] Harvard Data Spreadsheet, *supra,* n. 7. The West Virginia Department of Health and Human Resources uses slightly different metrics. Those numbers also show a lower seven-day average infection rate (15.4%) which has steadily decreased over the past week from 20.13%. https://dhhr.wv.gov/COVID-19/Pages/default.aspx (County Alert tab for Kanawha).

announced that West Virginia's statewide rate of Covid-19 transmission has continued to improve week over week, and now ranked second best of any state in the country. [10] Indeed, West Virginia continues to outperform the national average—as well as the rates of all of its bordering states—in percentage of population tested, percentage of population positive, and percentage of positive test results. *Id.*

In sum, the risk level in Kanawha County is low and declining. Beginning trial in October is not the "doomsday" scenario that Defendants portray in their motion.

**C.   Defendants' "emergency" motion appears to be primarily for tactical reasons, and therefore does not constitute good cause.**

The lynchpin of Defendants' request for continuance is the alleged recent uptick in reported Covid-19 case rates in Kanawha County. However, as described above, the incidence rate in Kanawha County is actually decreasing, after having remained relatively stable throughout the month of September. *See* Harvard Database. There are simply no recent developments that would justify a trial

---

[10] Press Release, *COVID-19 UPDATE: Gov. Justice Allows Certain Types of Music Performances to Resume with Limitations; WV Transmission Rate Nearing Nation's Best*, OFFICE OF GOV. JIM JUSTICE (Oct. 5, 2020), https://governor.wv.gov/News/press-releases/2020/Pages/COVID-19-UPDATE-Gov.-Justice-allows-certain-types-of-music-performances-to-resume-with-limitations.aspx?fbclid=IwAR2UZeRNlurwe_AEhiGgeCx4B4ONEfWaiauvdznQ_5kGMlL_xoeVQk0xuRU. While certain activities are restricted by gubernatorial degree due the Covid-19 virus, employees of the United States, judicial officers and their employees, and attorneys providing professional services always have been exempt from these restrictions as "essential employees". Executive Order No. 9-20 at ¶¶ 3(d), 3(u) https://governor.wv.gov/Documents/ 2020%20Executive%20Orders/STAY-AT-HOME-ORDER-MARCH-23-2020.pdf.

postponement, especially this close to trial when Plaintiffs are already well underway in preparing and staffing the trial site.

Many of the Defendants' asserted justifications for postponing the trial until January 4, 2021 are obviously pretextual. *See, e.g.*, Mot. at 3-4. Covid-19 is not disappearing in the next 2.5 months. Indeed, infections may spike over the winter—with February and March predicted to be potentially worst of all.[11] And the virus will likely persist until there is widespread vaccination. Thus, so far as it appears, the true significance of the 2.5-month continuance is not about improved health conditions in January. It is about Defendants' desire to delay their date of legal reckoning[12] and hope for some intervening event that will improve the legal landscape of opioid litigation. Defendants' own comments in their motion confirm this—for example, where they state the continuance may allow the Court to resolve "various legal issues pending before the Court [which] may streamline the case," Mot. at 18, and that "[i]f the Court rules on pending motions regarding summary judgment or other issues [between now and January], the scope of the case could be narrowed or adjusted to respond to those rulings," Mot. at 17. And, during that time the Defendants assuredly will bombard the Plaintiffs and the Court with additional

---

[11] *See* Lena H. Sun, *Covid-19: A bad flu season colliding with the pandemic could be overwhelming*, Wash. Post, Sept. 5, 2020, https://www.washingtonpost.com/health/covid-flu-season-collide/2020/09/04/23254d68-eb98-11ea-99a1-71343d03bc29_story.html. (noting that peak flu season is January through March).

[12] It should be noted that defendants made similar attempts to derail the Opioids trial on its eve in early October 2019. *See In re: Nat'l Prescription Opiate Lit., In re: AmerisourceBergen Drug Corp.,* No. 19-3935, at 1 (6th Cir. Oct. 10, 2019) (denying AmerisourceBergen's petition to disqualify Judge Polster filed October 1, 2019 and for emergency review).

motions. Those points have nothing to do with Covid-19, and instead show that Defendants are just holding out for positive case developments, which does not justify pushing off the trial date.

Most of the other arguments in favor of waiting until January are simply irrelevant. For example, Defendants fill their motion with several pages of bullet-point propositions that: People can spread the virus without knowing they are sick; the virus can spread through respiratory droplets; that people may confuse common colds with the virus, and so on. *See* Motion at. 5-6. These facts will still be true in January; they do not justify moving the trial date. Defendants similarly ask a series of rhetorical questions which not only fail to show good cause to postpone the trial to January, but also cut strongly *against* waiting until January. For example, Defendants ask: *"Is Covid-19 becoming more contagious? Possibly."*; *"Will there be a 'second wave' in the fall and winter? Likely yes."*; *"How will the Covid-19 pandemic overlap with the seasonal flu? Poorly."* Mot. at 8. Needless to say, none of these arguments support starting a trial in January when conditions might be worse, as opposed to October when things are relatively good.

The reason Defendants fail to make a cogent argument for waiting until January, Plaintiffs suspect, is that Defendants request is not really just a request to postpone the trial until January. When January comes, Defendants will ask for another continuance—and will keep doing so again and again for as long as the Court will allow in order to avoid going to trial. But the issue before the Court is only whether there is good cause to begin trial on January 4, 2021—as Defendants now

propose—rather than in late October, as the Court's scheduling order provides. Defendants have provided no evidentiary basis for a finding of good cause; to the contrary, the Defendants' arguments tend to confirm the wisdom of adhering to the October start date.

**D.     Any risks associated with trial can be effectively managed and mitigated, as this Court has previously recognized.**

Plaintiffs, Defendants, and the Court have already discussed safety precautions to comply with best practices for conducting a trial amid the coronavirus pandemic. These will include wearing facemasks and practicing social distancing inside and outside the courtroom; limiting the number of lawyers and witnesses in the courtroom; installing safety features in the courtrooms and "war rooms" as needed, such as Plexiglas dividers, disinfectant, and air purification devices.[13] This Court's Clerk of Court, Rory Perry, has been on the forefront of researching and implementing protocols for a safe trial. Safe trials, both bench and jury trials, have been conducted in this district and Kanawha County without incident. [14]

---

[13] The Motion's suggestion, Doc. 1071 at 12, that the parties would be required to remove their masks when speaking is incorrect. And Plaintiffs believe that wireless microphones exist that will permit the parties to speak and be understood while wearing masks.

[14] Seven trials successfully have been conducted in this district in the face of Covid-19 restrictions.   Five were jury trials. *See United States of America v. Weathington,* No. 2:19-cr-00174 (Copenhaver, J.); *Morgan v. Logan County Commission et al,* No. 2:18-cv-01450 (Johnston, C.J.); *United States of America v. Houdersheldt,* No. 3:19-cr-00239 (Chambers, J.); *United States of America v. McCallister,* No. 3:19-cr-00153 (Chambers, J.); *United States of America v. Rose,* No. 3:19-cr-00298 (Chambers, J.).   Two were civil bench trials.   *United States of America v. Eaton,* No. 2:17-cv-01220 (Tinsley, M.J.); *Nelson et al v. Warner et al,* No. 3:19-cv-00898 (Chambers, J.). *Houdersheldt* involved attorneys from five states.  In *Nelson* Judge Chambers permitted an expert witness to appear by remote video over the

Plaintiffs have also acquired "rapid" Covid-19 testing kits that can be easily deployed upon any person's suspected exposure to the virus, on any side. If necessary, members of trial teams can quarantine themselves until any concerns are resolved. As far as it can be achieved, the parties will endeavor to effectively form a "bubble" around the trial teams for the trial periods, reducing unnecessary travel or other interactions.

Defendants do not directly challenge the efficacy of these safety precautions—in fact, Defendants say they will be implementing similar measures, based on guidance from their Covid-19 experts. *See* Mot. at 14. Defendants' primary critique is interposing various "What if?" scenarios about things that might occur during trial. The answer to all of these scenarios is that the parties (in combination with the Court) will deal with any challenges that may arise cooperatively and in good faith—and if necessary, in consultation with Covid-19 experts—when they arise. These "What if" scenarios cannot, however, be the basis for postponing trial before they occur. There will always be some measure of uncertainty until there is a vaccine, which is too long to wait for this trial of vital importance.

Separately, Defendants object to their own employees and lawyers allegedly being forced to "choose between their own and their families' health and safety, on the one hand, and the defense of their employer or client in this large, important matter on the other." Mot. at 16. The answer to this is simple: Anyone who perceives

---

course of two days. July 13, 2020 Order, Doc. 83. The Kanawha County Circuit Court successfully conducted a criminal jury trial in September. *State v. Gatewood,* No. 19-F-55 (Tabit, J.).

11

him or herself to be in that predicament should not attend trial, period. Defendants should make it absolutely clear that attendance is not a command performance. Everyone participating at trial should be willing to be there—which would obviate many of Defendants' professed concerns. There are numerous other experienced trial lawyers working for these defendants, and therefore no particular attorney is indispensable.[15] Defendants, who are represented by some of the largest law firms in this state, and indeed the country, have 76 attorneys who have appeared in this case and many others who are working on the case across the country. Both sides have deep benches in this case.

In terms of witnesses or experts whom Defendants suggest are concerned about appearing in person for trial (although no such witness or expert has been identified by name), those concerns can be addressed on a case-by-case basis. Plaintiffs have no objection to accommodating witnesses with video depositions, as the Court has previously mentioned. In addition, if the circumstances warrant remote testimony under Rule 43 for certain witnesses, the Court can consider that, too. Federal courts

---

[15] *See United States v. Bradshaw,* 955 F.3d 699, 703–04 (8th Cir. 2020), reh'g denied (June 5, 2020) (finding no abuse of discretion in district court's denial of a motion to continue trial where defendant sought new appointed counsel because the "right to choose counsel must not obstruct orderly judicial procedure or deprive courts of their inherent power to control the administration of justice" (internal quotation marks omitted))*; see also In re BellSouth Corp.,* 334 F.3d 941, 955–56 (11th Cir. 2003) (holding in a civil case that "a litigant's freedom to hire the lawyer of his choice can be overridden if a court finds that the choice would interfere with the orderly administration of justice"); *Giacalone v. Lucas*, 445 F.2d 1238, 1243–44 (6th Cir. 1971) (finding that where a defense attorney was unavailable for trial due to hospitalization, but his partner and an associate were available, prepared, and proceeded to competently try the case, the denial of a request for a continuance was not an abuse of discretion).

across the country successfully have used these and other tools to adapt to the Covid-19 crisis.[16] Indeed, as the Court in *Petersen Energia, supra,* recognized, "sure to be one of the enduring lessons of the ongoing COVID-19 pandemic is that we can accomplish far more remotely than we had assumed previously."

Finally, since this is a non-jury trial, if something unforeseen happens midway through trial or if anyone involved has suspected problems, rapid tests can be administered, people around them can be tested, experts can be consulted if necessary, and the Court can decide how to proceed. But unlike in a jury trial, no mistrial would be necessary, and none of the trial days would have been wasted. To the contrary, during any downtime the parties can supply the Court with video testimony or other materials to keep the trial moving forward.[17] And, because the Court has agreed

---

[16] *Centripetal Networks, Inc., v. Cisco Systems, Inc.*, No. 2:18CV94, 2020 WL 3411385, at *1 (E.D. Va. Apr. 23, 2020) (concluding that, despite the defendant's objections, the court would move forward with the bench trial being done exclusively by videoconference technology in highly complex patent infringement claim lasting more than three weeks); *Vitamins Online, Inc. v. HeartWise, Inc.,* No. 2:13-CV-00982-DAK, 2020 WL 3452872, at *9 (D. Utah June 24, 2020) (court to hold entire bench trial by remote video over one party's objection); *Argonaut Ins. Co. v. Manetta Enterprises, Inc.,* No. 19CV00482PKCRLM, 2020 WL 3104033, at *1–2 (E.D.N.Y. June 11, 2020) (permitting bench trial to be conducted entirely by remote video); *Chambers v. Russell*, No. 1:20CV498, 2020 WL 5044036, at *3 (M.D.N.C. Aug. 26, 2020) (same); *Amtrust N. Am., Inc. v. KF&B, Inc.*, No. 17-CV-5340 (LJL), 2020 WL 4365280, at *1 (S.D.N.Y. July 29, 2020) (same); see also *Petersen Energia Inversora S.A.U. v. Argentine Republic*, No. 15 CIV. 2739 (LAP), 2020 WL 3034824, at *9–11 (S.D.N.Y. June 5, 2020) ("the parties can request that the Court allow trial witnesses to testify via video pursuant to the good cause exception in Fed. R. Civ. P. 43"); *Guerra v. Rodas*, No. CIV-20-96-SLP, 2020 WL 2858534, at *1–2, n.3 (W.D. Okla. June 2, 2020) (permitting plaintiff residing in Guatemala to appear at trial by remote video due to Covid-19 travel restrictions).

[17] The presence of a jury and the unavailability of rapid tests in Judge Goodwin's recent trial, *Sutphin v. Ethicon, Inc.,* 2:14-cv-01379, distinguishes that case from this one. While a continuance was agreed to in *Sutphin,* based apparently on Covid-19 like symptoms of one attorney, here rapid tests could confirm whether an actual Covid-19 infection is present and whether it has spread to other trial participants.

13

to allow the parties to stream the trial to their offsite offices, lawyers who are not in Court can assist the in-court trial teams.

**E.      The opioid crisis poses a public health threat equivalent to Covid-19.**

The final point that supports all of the foregoing points is that this opioid bellwether trial is itself necessary to preserve the public health and wellbeing of hundreds of thousands of people in West Virginia. Statistically the coronavirus remains only about half as deadly to the people of West Virginia as the opioid epidemic. For example, in 2017 and 2018 (the most recent years for which the National Institutes of Health publishes data) there were 833 and 702 opioid-related deaths, respectively, in West Virginia.[18] So far in 2020 there have been 364 due to Covid-19. West Virginia is currently experiencing two of the worst public health catastrophes of our time, one being a pandemic flu and the other being a man-made drug crisis that the Defendants caused, and the Defendants should be responsible for abating. Defendants' motion to continue the trial acknowledges the risks associated with Covid-19 but does not acknowledge that if trial—and any abatement remedy--are postponed, people will continue to become addicted and die from the consequences of the opioid epidemic.

## CONCLUSION

This trial will be the first time in the national opioid litigation the Big 3 distributors must defend their conduct in a courtroom. It will also be the first time that thousands of pages of their internal documents and data—which were produced in this lawsuit stamped as "confidential" or "highly confidential"—will be placed into the public record. It is the first time the newspapers will have an opportunity to review all the evidence and report on Defendants' wrongdoing for the whole

---

[18]    National Institutes of Health "Opioid Summaries by State" https://www.drugabuse.gov/drug-topics/opioids/opioid-summaries-by-state/west-virginia-opioid-involved-deaths-related-harms (last accessed October 7, 2020).

country to see. Defendants are rightly worried about this public spotlight, and therefore have tried desperately to derail the trial for reasons having nothing to do with public health concerns. Conducting trials amid the Covid-19 pandemic will undoubtedly pose certain burdens on the process. But health concerns can be addressed and substantially eliminated in a safe and precautious manner, so that the risk level for those participating will not be significantly higher during this trial than in the preceding months. Neither the Southern District of West Virginia, nor the Fourth Circuit Court of Appeals, nor the Supreme Court has issued any administrative order preventing this trial from going forward. There is no applicable local, state, or federal regulation that restricts this trial. Defendants have presented no evidence of good cause to continue this trial until January. Therefore, Defendants' motion to continue the trial (ECF No. 1071) should be denied.

Dated: October 8, 2020

Respectfully submitted,

| | |
|---|---|
| **THE CITY OF HUNTINGTON** | **CABELL COUNTY COMMISSION** |
| /s/ *Anne McGinness Kearse* | /s/ *Paul T. Farrell, Jr.* |
| Anne McGinness Kearse | Paul T. Farrell, Jr. |
| WVSB No. 12547 | WVSB Bar No. 7443 |
| Joseph F. Rice | **FARRELL LAW** |
| **MOTLEY RICE LLC** | 422 Ninth Street, 3rd Floor (25701) |
| 28 Bridgeside Blvd. | PO Box 1180 |
| Mount Pleasant, SC 29464 | Huntington, West Virginia 25714-1180 |
| Tel: 843-216-9000 | Mobile: 304-654-8281 |
| Fax: 843-216-9450 | paul@farrell.law |
| akearse@motleyrice.com | |
| jrice@motleyrice.com | /s/ *Anthony J. Majestro* |
| | Anthony J. Majestro |
| Linda Singer | WVSB No. 5165 |
| David I. Ackerman | **POWELL & MAJESTRO, PLLC** |
| **MOTLEY RICE LLC** | 405 Capitol Street, Suite P-1200 |
| 401 9th Street NW, Suite 1001 | Charleston, WV 25301 |
| Washington, DC 20004 | 304-346-2889 / 304-346-2895 (f) |
| Tel: 202-232-5504 | amajestro@powellmajestro.com |
| Fax: 202-386-9622 | |
| lsinger@motleyrice.com | |
| dackerman@motleyrice.com | Michael A. Woelfel |
| | WVSB No. 4106 |
| | **WOELFEL AND WOELFEL, LLP** |
| Charles R. "Rusty" Webb | 801 Eighth Street |
| WV No. 4782 | Huntington, West Virginia 25701 |
| **THE WEBB LAW CENTRE** | Tel. 304.522.6249 |
| 716 Lee Street, East | Fax. 304.522.9282 |
| Charleston, West Virginia 25301 | mikewoelfel3@gmail.com |
| Telephone: (304) 344-9322 | |
| Facsimile: (304) 344-1157 | |
| rusty@rustywebb.com | |

## CERTIFICATE OF SERVICE

I, Anthony J. Majestro, counsel for Plaintiffs, hereby certify that on October 8, 2020, I served forgoing on all counsel of record using the Court's CM/ECF system.

/s/ Anthony J. Majestro
Anthony J. Majestro (WVSB 5165)