IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*,<br><br>    Defendants. | Civil Action No. 3:17-01362<br>Hon. David A. Faber |
| CABELL COUNTY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*,<br><br>    Defendants. | Civil Action No. 3:17-01665<br>Hon. David A. Faber |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A
TRIAL CONTINUANCE DUE TO THE COVID-19 PANDEMIC
<u>AND REQUEST FOR EXPEDITED CONSIDERATION</u>**

There is no reason for this Court to gamble with the health and lives of scores of participants in this trial—witnesses, courthouse personnel and staff, and counsel—when other courts around the country prudently are continuing large, lengthy trials, many in areas with lower rates of infection.[1] Defendants share Plaintiffs' desire to see this case move forward, but not at

---

[1] For example, the First Judicial District Court in Santa Fe, New Mexico recently observed that a September 2021 opioid trial date in a case brought by the New Mexico Attorney General was not realistic in light of the Covid-related docket backlog in that court, limitations on physical space where a trial of this magnitude could proceed safely, and the practical problems of social distancing during the trial of such a large, complex case. The judge moved that trial date

the expense of anyone's safety. Plaintiffs' demand that trial proceed because there have been *only* 364 deaths in West Virginia during six months of widespread pandemic is as cynical as it is macabre. Pls.' Resp. 14. The Court should not risk the addition of a single person involved in this trial (or any other unlucky soul who comes into contact with a trial participant) to that terrible number.

**I.   Covid-19 is a deadly pandemic, and Kanawha County's infection rate is high.**

Plaintiffs' response is a work of wishful thinking disconnected from the harsh reality of Covid-19. Covid is a once-in-a-century pandemic that has killed more than 212,000 Americans and infected 7.6 million. It is wildly contagious, a fact vividly demonstrated in its recent spread through the White House. Plaintiffs' suggestion that Defendants are exaggerating or posturing[2] by seeking to protect the health of their employees, counsel, and staff is, frankly, inappropriate, irresponsible, and dangerous.

At the time Plaintiffs filed their response, Kanawha County's seven-day average of new cases per 100,000 residents—the statistic that the Harvard Global Health Institute's experts have concluded best measures local risk—was 18.1, ***more than 35% higher*** than the national average.[3] That places Kanawha County firmly in the orange category, the lower threshold of which is an average of 10.0 new cases per 100,000 residents. For all localities in the orange category, the Harvard Institute experts recommend a ***lockdown order***—the polar opposite of a

---

to September 2022. Courts in Alaska, Missouri, Washington State, and Texas have also postponed trial dates in opioid cases by 9, 8, 7, and 5 months respectively, for similar reasons.

[2] *See* Pls.' Resp. 8 (calling Defendants' position "pretextual").

[3] Harvard Global Health Initiative, *How severe is the pandemic where you live?*, https://globalepidemics.org/key-metrics-for-covid-suppression (last accessed Oct. 8, 2020) (hereinafter "Harvard Map").

12-week trial in which more than a hundred participants will shuttle in and out from points around the country.[4]

Plaintiffs' claim that Kanawha has a low infection rate verges on the bizarre. The infection rate here is roughly double the rates in our neighboring states of Virginia and Maryland, more than double the rate in Pennsylvania, and nearly triple the rate in the District of Columbia—all locations from which out-of-state counsel will come for trial.[5] And Plaintiffs' attempt to conflate Kanawha County's rate with that of West Virginia as a whole is badly misleading; the statewide rate includes counties like Pocahontas, Wood, Preston, and Clay, all with a rate of 1.7 cases per 100,000 residents, and others like Braxton, Pendleton, Richie, and Wirt, whose current new-case rate is zero.[6] The rates in those counties have no bearing whatsoever on the Covid risk in Kanawha County. And Plaintiffs offer no rebuttal to the fact that a name partner in one of their own law firms recently requested field hospitals for Kanawha in his role as President of the Kanawha County Commission.[7]

Plaintiffs' reliance on West Virginia's homemade color-coded Covid map is disingenuous. The many modifications made to relax that map's standards have been chronicled exhaustively: All Covid-positive residents of a nursing home are counted fictionally as a single person; the same goes for all infected inmates in a prison or jail, and all quarantining students at

---

[4] Harvard Global Health Institute, *Key Metrics for COVID Supression*, https://globalepidemics.org/key-metrics-for-covid-suppression (last accessed Oct. 8, 2020).

[5] Harvard Map, *supra* note 3.

[6] *Id.*

[7] Moriah Davis, *Kanawha County requests two field hospitals to help fight COVID-19*, WOWK TV, Sept. 17, 2020, https://www.wowktv.com/news/kanawha-county-requests-two-field-hospitals-to-help-fight-covid-19.

a college or university.[8] The nationally accepted metric of new cases per 100,000 residents has been replaced with the percentage of positive cases, a figure subject to manipulation by people taking repeated tests to drive down the positive rate artificially.[9] The thresholds for the color-coded categories have been changed.[10] A new "gold" category has been added.[11] Public health experts are dismissive of the resulting scheme—a fact that Plaintiffs' response makes no attempt to address.[12]

## II. Plaintiffs' arguments are not unique to this case, and other courts have chosen safety over haste.

Plaintiffs are not, of course, the first parties to suggest that a trial can go forward on the basis of honor-system reporting of Covid symptoms and subsequent testing of people who make such reports. But the recent White House outbreak provides a painful demonstration of the inadequacy of a system based on testing symptomatic people. Individuals newly infected with Covid-19 may be contagious without experiencing symptoms for up to 14 days, and many

---

[8] Phil Kabler, *Statehouse Beat: Metrics tweaking alters risk measure, but makes us feel better*, Charleston Gazette-Mail, Aug. 22, 2020, https://www.wvgazettemail.com/news/columnists/phil_kabler/statehouse-beat-metrics-tweaking-alters-risk-measure-but-makes-us-feel-better/article_069d4ac2-7336-5a1b-8d4f-ac4daf961dae.html; Phil Kabler, *Latest tweak to state COVID-19 risk map affects colleges*, Charleston Gazette-Mail, Sept. 16, 2020, https://www.wvgazettemail.com/news/education/latest-tweak-to-state-covid-19-risk-map-affects-colleges/article_63298564-eb02-5ed9-ba0a-d50ffd993d50.html;

[9] Brad McElhinny, *Justice urges more covid testing, but says that's not because it would affect school map*, wvmetronews.com, Sept. 28, 2020, https://wvmetronews.com/2020/09/28/justice-urges-more-covid-testing-but-says-thats-not-because-it-would-affect-school-map/.

[10] *Id.*

[11] *Id.*

[12] Lucas Manfield & Gabriella Brown, *Harvard experts say state map is flawed*, Beckley Register-Herald, Sept. 19, 2020, https://www.register-herald.com/health/harvard-experts-say-state-map-is-flawed/article_24033edb-0696-5be3-8b1b-d0e79d72ad07.html.

experience no symptoms at all.[13] And false negatives are the norm in people with new infections; Johns Hopkins has found that "in the days immediately after exposure, the false negative rate is anywhere from **50% to 100%**."[14] The rapid tests that Plaintiffs tout are the same ones that abjectly failed to prevent the spread of Covid among the President and White House staff.

Other courts have also considered and rejected the argument that the opioid cases, specifically, are so important that witnesses, counsel, and court staff must risk their lives to have trials. This includes, of course, Judge Polster, who oversees the entire opiate multidistrict litigation and earlier this week continued indefinitely an opioid trial set to begin just weeks after this one, concluding that the safety of trial participants was worth waiting until May for his next bellwether trial.[15] Only one of the other remanded federal opioid cases has had a trial set at all—the case pending in the Northern District of California, where the parties understand that the current June 2021 trial date will be pushed back (last week, the court there revised the discovery schedule so that discovery will continue until July 2021).[16]

Plaintiffs cite a number of cases that have been tried in this district since the beginning of the Covid-19 pandemic. Those cases could not be more different from this one. The longest of

---

[13] Centers for Disease Control and Prevention, *Notification of Exposure: A Contact Tracer's Guide for COVID-19*, Aug, 27, 2020, https://www.cdc.gov/coronavirus/2019-ncov/php/notification-of-exposure.html.

[14] *See* Gabrielle Redford, *Your COVID-19 testing questions — answered*, Am. Ass'n of Med. Colleges, Oct. 5, 2020, https://www.aamc.org/news-insights/your-covid-19-testing-questions-answered (emphasis added).

[15] *See In Re: National Prescription Opiate Litigation*, Case No. 1:17-md-2804 (N.D. Ohio Oct. 5, 2020) (minute order). The Northern District of Ohio has entered a general order, to which Judge Polster referred, precluding jury trials of longer than a week without the parties' consent, and the Track One-B defendants did not consent to a lengthy trial during the pandemic. *See In Re: Coronavirus (Covid-19) Phased-In Recovery Plan*, Order No. 2020-08-2 (N.D. Ohio Aug. 25, 2020).

[16] *City & County of San Francisco v. Purdue Pharma L.P.*, Case No. 18-cv-07591-CRB (JSC) (N.D. Cal. Oct. 2, 2020) (Dkt. No. 296) (Order Re: Discovery Case Management Deadlines).

Plaintiffs' cited trials lasted six days.[17] The shortest lasted six hours.[18] The Court and parties in this case are about to embark upon a trial of *sixty* in-trial days involving scores of witnesses and attorneys who will crisscross the country as they come in and out of Charleston (and spend holiday breaks with family members). It was a stroke of good fortune to conduct a six-day trial in the summer with no one developing symptoms that could be indicative of Covid. It is not possible to do the same thing in a sixty-day trial beginning in October. Judge Goodwin's trial late last month that was aborted on its second day is the more realistic comparison.[19]

That this is a bench trial rather than a jury trial confers no magical immunity. Protecting jurors from a deadly virus is of course important, but so is protecting witnesses, counsel, staff, the Court, and courthouse personnel. Where courts, including in this district, have drawn a distinction between bench trials and jury trials, it is largely because jury trials normally involve more people.[20] Not so here, of course—*this* bench trial will involve many more people than a typical jury trial and inevitably will be that much more dangerous.

Finally, Plaintiffs' suggestion that Defendants can staff this trial only with counsel who are unconcerned about Covid is absurd. Every rational person in America is concerned about Covid and is taking every available precaution to remain safe and healthy. If Plaintiffs' opt-out proposal is taken seriously, then Defendants' motion necessarily must be granted, because there is no member of Defendants' teams—local or otherwise—who would prefer to go to trial in the

---

[17] *United States v. Houdersheldt*, No. 3:19-cr-00239 (S.D. W. Va.).

[18] *United States v. Eaton*, No. 2:17-cv-01220 (S.D. W. Va.).

[19] *See Sutphin v. Ethicon, Inc.*, Civil Action No. 2:14-cv-01379, ECF No. 405 (S.D. W. Va. Sept. 18, 2020).

[20] *See* General Order #9, at 2 (S.D. W. Va. Sept. 18, 2020) ("Petit jury trials and grand jury meetings, in particular require large groups of individuals from throughout the district to travel and assemble indoors, often in close proximity to each other.")

midst of Kanawha County's current outbreak. It is unreasonable, moreover, to demand that counsel choose between their safety and their obligations to their clients—or that clients forgo their right to counsel of their choosing and instead accept whoever is willing to ignore the dangers of Covid. And it is fanciful to suppose that Defendants possess a cadre of replacement attorneys waiting in the wings to be substituted into the case at this late date like so many interchangeable cogs.

### III. A continuance until January provides an opportunity for Kanawha County to control its Covid outbreak.

Plaintiffs assert that there will be no difference between beginning trial in October and beginning in January. But they have no way to know that. With Covid, much can change in three months. Case in point: Three months ago, Kanawha County's new-case rate was 3.29 per 100,000 residents—***one-sixth*** the rate now.[21] Continuing the trial until January will provide an opportunity for the county to contain its current outbreak and for the country to learn more about effective testing, prevention, treatment, and—possibly—vaccination.[22]

### IV. The evidence—and Plaintiffs' own inaction—belie their claims of urgency.

Plaintiffs' insistence that the opioid crisis requires trial to proceed even in the teeth of a pandemic rings hollow. In discovery, it emerged that West Virginia has already received so much federal money to address the opioid problem that it cannot begin to spend it. A year ago, the state Department of Health and Human Resources was forced to admit to Congress that it had not even *allocated*—much less spent—more than $81 million of the $147 million it received

---

[21] *See* Harvard Global Health Institute, Risk Levels Downloadable Data (Microsoft Excel spreadsheet), https://globalepidemics.org/key-metrics-for-covid-suppression (last accessed Oct. 8, 2020).

[22] If one accepts Plaintiffs' implicit conclusion that things are "relatively good" now but only going to get worse, then there is even more reason to delay this trial until it can be safely conducted.

from Washington for that purpose in the previous three fiscal years.[23] Huntington's mayor testified that his city does not need to spend its own money on opioid abatement because it can already get the money it needs from grants.[24] The Cabell County Commission testified that it has done not a single thing to abate the opioid problem other than filing this lawsuit—and that, astoundingly, with the exception of discussions of this case, it is unaware of any occasion on which it has *even discussed* the opioid problem at one of its meetings.[25] West Virginia's health secretary testified that the state's inpatient opioid treatment facilities are 25% to 30% empty; supply far exceeds demand.[26] Both the city and the county were well aware of the Attorney General's action against these same defendants in 2012, yet both waited until 2017 to file these cases.[27]

Against that backdrop of inaction, and with tens of millions of dollars available to address the opioid crisis but as yet unspent, there is no good reason to force this case to trial when many of its participants genuinely fear for their own health and the health of those around them.

V.    **Conclusion**

No other court has rolled the dice on conducting an opioid trial, with the length and complexity that such a trial entails, in the midst of a Covid outbreak like the one in Kanawha

---

[23] Letter from Christina R. Mullins, Commissioner, West Virginia Bureau for Behavioral Health, to Hon. Frank Pallone, Jr., Chairman, United States House of Representatives Committee on Energy and Commerce, at 3, 5 (Oct. 18, 2019) (attached as Exhibit 1).

[24] Steve Williams Dep. 210:17-20 (June 30, 2020) (excerpt attached as Exhibit 2).

[25] Beth Thompson (Comm'n Rule 30(b)(6)) Dep. 133:12-18, 139:21-140:2 (excerpts attached as Exhibit 3).

[26] Sec'y Bill Crouch Dep. 143:16-144:2 (exerpt attached as Exhibit 4).

[27] Robert Bailey Dep. 81:22-82:14 (excerpt attached as Exhibit 5); Williams Dep., *supra* note 24, at 112:16-113:19.

County, let alone at the onset of flu season. On the contrary, the other courts that have faced this question have uniformly prioritized health and safety over haste in litigation. It would be a dire and unwarranted risk if this Court chose to become the outlier. Defendants' request for a modest continuance until January 4, 2021, should be granted.

Dated: October 9, 2020                                          Respectfully submitted,

**CARDINAL HEALTH, INC.**

| | |
|---|---|
| */s/ Steven R. Ruby* | */s/ Enu Mainigi* |
| Michael W. Carey (WVSB No. 635) | Enu Mainigi |
| Steven R. Ruby (WVSB No. 10752) | F. Lane Heard III |
| David R. Pogue (WVSB No. 10806) | Ashley W. Hardin |
| Raymond S. Franks II (WVSB No. 6523) | Jennifer G. Wicht |
| **CAREY DOUGLAS KESSLER & RUBY PLLC** | **WILLIAMS & CONNOLLY LLP** |
| 901 Chase Tower, 707 Virginia Street, East | 725 Twelfth Street NW |
| P.O. Box 913 | Washington, DC 20005 |
| Charleston, WV 25323 | Tel: (202) 434-5000 |
| Telephone: (304) 345-1234 | Fax: (202) 434-5029 |
| Facsimile: (304) 342-1105 | emainigi@wc.com |
| mwcarey@csdlawfirm.com | lheard @wc.com |
| sruby@cdkrlaw.com | ahardin@wc.com |
| drpogue@cdkrlaw.com | jwicht@wc.com |
| rsfranks@cdkrlaw.com | |

**AMERISOURCEBERGEN DRUG CORPORATION**

| | |
|---|---|
| */s/ Robert A. Nicholas* | */s/ Gretchen M. Callas* |
| Robert A. Nicholas | Gretchen M. Callas (WVSB #7136) |
| Shannon E. McClure | **JACKSON KELLY PLLC** |
| **REED SMITH LLP** | Post Office Box 553 |
| Three Logan Square | Charleston, West Virginia 25322 |
| 1717 Arch Street, Suite 3100 | Tel: (304) 340-1000 |
| Philadelphia, PA 19103 | Fax: (304) 340-1050 |
| Tel: (215) 851-8100 | gcallas@jacksonkelly.com |
| Fax: (215) 851-1420 | |
| rnicholas@reedsmith.com | |
| smcclure@reedsmith.com | |

**MCKESSON CORPORATION**

| | |
|---|---|
| */s/ Jeffrey M. Wakefield* <br> Jeffrey M. Wakefield (WVSB #3894) <br> jwakefield@flahertylegal.com <br> Jason L. Holliday (WVSB #12749) <br> jholliday@flahertylegal.com <br> **FLAHERTY SENSABAUGH BONASSO PLLC** <br> P.O. Box. 3843 <br> Charleston, WV 25338-3843 <br> Telephone: (304) 345-0200 | */s/ Timothy C. Hester* <br> Timothy C. Hester <br> Paul W. Schmidt <br> Christian J. Pistilli <br> Laura Flahive Wu <br> **COVINGTON & BURLING LLP** <br> One CityCenter <br> 850 Tenth Street NW <br> Washington, DC 20001 <br> Tel: (202) 662-5324 <br> thester@cov.com <br> pschmidt@cov.com <br> cpistilli@cov.com <br> lflahivewu@cov.com |

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this __th day of October, 2020, the foregoing *Reply in Support of Defendants' Motion for a Trial Continuance Due to the Covid-19 Pandemic and Request for Expedited Consideration* was served upon counsel of record electronically.

*/s/ Steven R. Ruby*
Steven R. Ruby (WVSB #10752)