UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br>    Plaintiff,<br><br>                    v.<br><br>AMERISOUCEBERGEN DRUG CORPORATION, *et al.*<br>    Defendants | Civil Action No. 3:17-01362 |
| CABELL COUNTY COMMISSION,<br>    Plaintiff,<br><br>                    v.<br><br>AMERISOUCEBERGEN DRUG CORPORATION, *et al.*<br>    Defendants | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE THE OPINIONS OF JAMES GELDHOF

October 23, 2020

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES..................................................................................................... II

INTRODUCTION ................................................................................................................... 1

LEGAL STANDARD ............................................................................................................. 1

ARGUMENT ........................................................................................................................ 4

I.     MR. GELDHOF IS A QUALIFIED EXPERT WITH UNIQUE EDUCATION, TRAINING, AND EXPERIENCE THAT WILL ASSIST THE COURT IN THIS BENCH TRIAL. ....................... 4

     A.    Mr. Geldhof has specialized knowledge about the laws and regulations that govern the pharmaceutical industry and the enforcement by the DEA of the laws and regulations that apply to distributors. ............................................................................................ 4

     B.    The Court will benefit from Mr. Geldhof's testimony applying knowledge and experience and his testimony does not unduly prejudice the Defendants.............................................................. 7

II.     MR. GELDHOF'S TESTIMONY DOES NOT PRESENT AN IMPROPER NARRATIVE ........ 8

     A.    Experts May Summarize the Facts and Evidence on Which They Rely and May Do So in Narrative Form ...................................... 8

     B.    The Court Should Permit Mr. Geldhof to Testify at Trial About the Laws and Regulations that Govern The Pharmaceutical Industry and the Enforcement By the DEA of Those Laws and Regulations as They Apply to Distributors. .................................................... 11

III.    MR. GELDHOF DOES NOT INTEND TO OFFER OPINIONS ABOUT SPECIFIC DEFENDANTS ............................................................................. 12

CONCLUSION.................................................................................................................... 13

i

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Cooper v. Lab. Corp. of Am. Holdings*,
   150 F.3d 376, 380 (4th Cir. 1998) ......................................................... 5

Daubert v. Merrell Dow Pharmaceuticals, Inc.,
   509 U.S. 579 (1993) .............................................................................. 1, 2, 3

*Freeman v. Case Corp.*,
   118 F.3d 1011, 1016 n. 6 (4th Cir.1997) ............................................... 3

*Grant Thornton LLP v. Fed. Deposit Ins. Corp.,*
   No. CIV.A. 1:00-0655, 2007 WL 4591412, at *1 (Faber, J.) (S.D.W. Va. May 6, 2007) . 1, 4, 7

*Grant Thornton, LLP v. F.D.I.C.*,
   No. CIV.A. 1:00-0655, 2004 WL 5524092, at *1 (S.D.W. Va. May 6, 2004).......................... 4

*Grant Thornton, LLP v. F.D.I.C.*,
   No. CIV.A. 1:00-0655, 2004 WL 6033093, at *1 (S.D.W. Va. May 6, 2004).......................... 4

*In re C.R. Bard, Inc.*,
   948 F. Supp. 2d 589 (S.D.W. Va. 2013) .............................................. 5, 10

*In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*,
   No. 3:11-MD-2244-K, 2014 WL 3557345 (N.D. Tex. July 18, 2014)...................... 9

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig. (No II) MDL*
   *2502*, 892 F.3d 624, 631 (4th Cir. 2018) .............................................. 2

*In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*,
   No. 2:14-MN-02502-RMG, 2016 WL 2940784 (D.S.C. May 6, 2016) .............................. 9, 11

*In re Welding Fume Product Liability Litigation*,
   2005 WL 1868046 (N.D. Ohio Aug. 8, 2005) .......................................... 9

*In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*,
   No. 3:09-MD-02100-DRH, 2011 WL 6302287 (S.D. Ill. Dec. 16, 2011)................................ 9

*Kopf v. Skyrm*,
   993 F.2d 374, 377 (4th Cir. 1993) ......................................................... 3

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S. 137, 149 (1999)........................................................................ 1

*Larosa v. Pecora*,

No. CIV.A. 1:07CV78, 2009 WL 3460101, at *3 (N.D.W. Va. Mar. 2, 2009)..........................4

*Maryland Cas. Co. v. Therm-O-Disc, Inc.*,
    137 F.3d 780, 783 (4th Cir. 1998). ..........................................................................................3

*Oglesby v. General Motors Corp.*,
    190 F.3d 244, 250 (4th Cir. 1999) ..........................................................................................2

*State v. Wasanyi*,
    241 W. Va. 220, 228, 821 S.E.2d 1, 9 (2018)..........................................................................6

*TFWS, Inc. v. Schaefer*,
    325 F.3d 234, 240 (4th Cir. 2003) ..........................................................................................3

*United States v. Barrie*,
    No. CRIM. PWG-14-0006, 2014 WL 7014485 (D. Md. Dec. 10, 2014), *aff'd*, 629 F. App'x
    541 (4th Cir. 2015).................................................................................................................8

*United States v. Crisp*,
    324 F.3d 261, 266 (4th Cir. 2003) ..........................................................................................2

*United States v. Duarte*,
    581 F. App'x 254 (4th Cir. 2014).....................................................................................8, 11

*United States v. Janati*,
    374 F.3d 263 (4th Cir. 2004) ..................................................................................................8

*United States v. Offill*,
    666 F.3d 168 (4th Cir. 2011) ..................................................................................................8

*United States v. Osum*,
    943 F.2d 1394 (5th Cir.1991) ...............................................................................................11

*United States v. Pree*,
    408 F.3d 855 (7th Cir. 2005) ..................................................................................................8

*United States v. Rollack*,
    570 F. App'x 267 (4th Cir. 2014).............................................................................................8

*Walden v. City of Chicago*,
    755 F. Supp. 2d 942 (N.D. Ill. 2010) ...................................................................................10

*Waterhouse v. R.J. Reynolds Tobacco Co.*,
    368 F. Supp. 2d 432 (D. Md. 2005), *aff'd*, 162 F. App'x 231 (4th Cir. 2006).......................10

*Wells v. Allergan, Inc.*,
    No. CIV-12-973-C, 2013 WL 7208221 (W.D. Okla. Feb. 4, 2013).......................................10

*Westberry v. Gislaved Gummi AB*,

iii

178 F.3d 257, 261 (4th Cir.1999) ................................................................................................ 2

**Rules**

Fed. R. Evid. 611(a) ............................................................................................................ 9

Fed. R. Evid. 702 ........................................................................................................... 1, 6

## INTRODUCTION

Defendants seek to exclude in its entirety the testimony of James Geldhof, a retired Drug Enforcement Administration ("DEA") agent with invaluable experience relating to the legal regime governing opioid distributors and the DEA's role in the enforcement of that regime. Mr. Geldhof's expert testimony,[1] however, will be both informative and helpful to the Court, and make the trial more efficient. Further, in this bench trial, the Court is qualified to weigh Mr. Geldhof's testimony appropriately and need not exclude his evidence out of fear it would improperly influence a jury. *See Grant Thornton LLP v. Fed. Deposit Ins. Corp.,* No. CIV.A. 1:00-0655, 2007 WL 4591412, at *1 (Faber, J.) (S.D.W. Va. May 6, 2007). Because Mr. Geldhof is qualified, and his testimony is helpful, the Court should deny Defendants' motion to exclude his testimony.

## LEGAL STANDARD

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court provides an analytical framework for determining whether expert testimony is admissible under Rule 702 of the Federal Rules of Evidence. 509 U.S. 579 (1993). Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Thus, pursuant to Federal Rule of Evidence 702, the district court functions as a gatekeeper, ensuring that the expert is qualified, and his or her testimony is both relevant and reliable. *Daubert*, 509 U.S. at 589, 590-91, 592-93; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149

---

[1] *See* Report of James Geldhof at Doc. 1097-15.

(1999).

In *Daubert*, the Supreme Court identified four factors that a court may use in making its gatekeeping determination of reliability: (1) "whether a theory or technique. . . can be (and has been) tested," (2) "whether the theory or technique has been subjected to peer review and publication," (3) whether, "in the case of a particular scientific technique," there is a high "known or potential rate of error" and there are "standards controlling the technique's operation," and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." 509 U.S. at 593-94. However, the *Daubert* factors are not definitive or exhaustive. *See United States v. Crisp*, 324 F.3d 261, 266 (4th Cir. 2003). ("Rather than providing a definitive or exhaustive list, *Daubert* merely illustrates the types of factors that will bear on the inquiry.") "[A]t bottom, the court's evaluation is always a flexible one, and the court's conclusions necessarily amount to an exercise of broad discretion guided by the overarching criteria of relevance and reliability." *Belville v. Ford Motor Co*., 919 F.3d 224, 233 (4th Cir. 2019) (*quoting Oglesby v. General Motors Corp*., 190 F.3d 244, 250 (4th Cir. 1999). Thus, "the trial court has 'broad latitude' in determining whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case." *Belville*, 919 F.3d at 233; *accord Westberry v. Gislaved Gummi AB,* 178 F.3d 257, 261 (4th Cir.1999) ("In making its initial determination of whether proffered testimony is sufficiently reliable, the court has broad latitude to consider whatever factors bearing on validity that the court finds to be useful; the particular factors will depend upon the unique circumstances of the expert testimony involved.")

Moreover, as the Fourth Circuit has reminded, "[t]he trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system, and consequently, the rejection of expert testimony is the exception rather than the rule." *In re Lipitor (Atorvastatin Calcium) Mktg.,*

*Sales Practices & Prod. Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 631 (4th Cir. 2018). Indeed, *Daubert* itself stressed the importance of the "conventional devices" of "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" (rather than wholesale exclusion by the trial judge) as "the traditional and appropriate means of attacking shaky but admissible evidence." 509 U.S. at 596. "All *Daubert* demands is that the trial judge make a 'preliminary assessment' of whether the proffered testimony is both reliable and helpful." *Maryland Cas. Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998). In evaluating whether the testimony is helpful, "[t]estimony from an expert is presumed to be helpful unless it concerns matters within the everyday knowledge and experience of a lay juror." *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) (internal citations omitted).

The Supreme Court in *Daubert* was careful to emphasize that it is the expert's methodology, not her conclusion, that is the subject of the Rule 702 inquiry. Noting that the "overarching subject" of the Rule 702 inquiry "is the scientific validity and thus the evidentiary relevance and reliability of the principles that underlie a proposed submission," 509 U.S. at 594-95, the Court went on to hold:

> The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

*Id.* at 595. The Fourth Circuit has echoed this caution. *See TFWS, Inc. v. Schaefer*, 325 F.3d 234, 240 (4th Cir. 2003) (*citing Freeman v. Case Corp.*, 118 F.3d 1011, 1016 n. 6 (4th Cir.1997)) *see also Maryland Cas.*, 137 F.3d at 783 (plaintiffs "do not have to demonstrate to the judge . . . that the assessments of their experts are *correct*, they only have to demonstrate by a preponderance of evidence that their opinions are reliable.")

Finally, as this Court has recognized numerous times, *Daubert* applies differently in a bench trial:

[T]he "better approach in this bench trial is to admit the testimony of all of the recognized experts that it permitted to testify and, in the words of the Supreme Court, allow vigorous cross-examination, presentation of contrary evidence and careful weighing of the burden of proof to test shaky but admissible evidence. Further, the court's concerns about the usefulness of various portions of the scientific testimony more appropriately can be addressed through determination of the weight to be accorded the testimony, rather than through the threshold determination of admissibility.

*Grant Thornton LLP v. Fed. Deposit Ins. Corp.,* No. CIV.A. 1:00-0655, 2007 WL 4591412, at *1 (Faber, J.) (S.D.W. Va. May 6, 2007) (citation and internal quotation omitted); *Grant Thornton, LLP v. F.D.I.C.,* No. CIV.A. 1:00-0655, 2004 WL 5524092, at *1 (S.D.W. Va. May 6, 2004) (same); *Grant Thornton, LLP v. F.D.I.C.,* No. CIV.A. 1:00-0655, 2004 WL 6033093, at *1 (S.D.W. Va. May 6, 2004); *see also Larosa v. Pecora,* No. CIV.A. 1:07CV78, 2009 WL 3460101, at *3 (N.D.W. Va. Mar. 2, 2009) ("There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." (citation and internal quotation omitted)).

## ARGUMENT

### I.  MR. GELDHOF IS A QUALIFIED EXPERT WITH UNIQUE EDUCATION, TRAINING, AND EXPERIENCE THAT WILL ASSIST THE COURT IN THIS BENCH TRIAL.

This Court should admit Mr. Geldhof's testimony to assist in its bench trial of this case. Mr. Geldhof is well qualified to testify as to his knowledge of the laws and regulations that govern the pharmaceutical industry, as well as the DEA's enforcement of these laws. His testimony will assist the court in its understanding of the issues in this case and will not unduly prejudice the Defendants. Therefore, the Court should deny Defendants' motion to exclude the testimony of Mr. Geldhof.

### A.  Mr. Geldhof has specialized knowledge about the laws and regulations that govern the pharmaceutical industry and the enforcement by the DEA of the laws and regulations that apply to distributors.

Mr. Geldhof has over 40 years of experience with the Drug Enforcement Administration ("DEA"). Starting in 1972, Mr. Geldhof worked for the DEA in a number of different roles. First,

he worked as a DEA Diversion Investigator, then as a Staff Assistant, and then Diversion Group Supervisor, and finally Acting (and later Permanent) DEA Diversion Program Manager.[2] These roles involved work conducting investigation of DEA registrants, meeting with various pharmaceutical companies regarding their responsibilities under the Controlled Substances Act, lead groups tasked with investigations of regulator, criminal, civil and administrative cases aimed at preventing diversion of controlled substances.[3] He has also acted as a consultant for members of the pharmaceutical and healthcare industries, evaluating and assessing their compliance with the laws and regulations governing the handling of controlled substances under the Controlled Substances Act.[4]

An expert witness may   be qualified by   "knowledge, skill, experience,   training,   or education." Fed. R. Evid. 702. It is not necessary that an expert witness be qualified in all of these ways to testify about a given subject. *See Cooper v. Lab. Corp. of Am. Holdings*, 150 F.3d 376, 380 (4th Cir. 1998) ("These are disjunctive; an expert can qualify to testify on any one of the grounds"); *see also In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 624 (S.D.W. Va. 2013), *on reconsideration in part* (June 14, 2013) (finding doctor qualified to opine as to safety of product based on knowledge, despite his lack of experience using the product at issue.)

Here, Mr. Geldhof's experience allows him to testify as to the "DEA's role within the closed system of distribution." [5]He is extremely familiar with that role, as he worked at the DEA, in matters related to the system of distribution, for over 40 years.[6] He has participated in a number

---

[2] Geldhof Rep., Doc. 1097-15, at 1.

[3] Geldhof Rep., Doc. 1097-15, at 1.

[4] Geldhof Rep., Doc. 1097-15, at 2.

[5] *See* Exhibit 1, Geldhof Dep., at 11:3-4.

[6] Geldof Rep. at 1.

of enforcement actions against pharmaceutical and healthcare companies.[7] Defendants' main complaint relating to Mr. Geldhof's qualifications is that his over 40 years of experience were not physically located in West Virginia. Defendants point to no case law indicating that an expert's experience, training, or education, must take place in, or relate specifically to, the forum state. Such a requirement would make even less sense where, as here, the witness intends to testify about his knowledge of a federal agency enforcing federal law. For example, Defendants take issue with the fact that Mr. Geldhof "has never reviewed the West Virginia Uniform Controlled Substances Act," but fail to identify any material differences between the West Virginia Uniform Controlled Substances Act and the Federal Controlled Substances Act, with which Mr. Geldhof is extremely familiar.[8] In fact, such material differences would be hard to identify considering that "the Uniform Controlled Substances Act of 1970 'was drafted to achieve uniformity between the laws of the several States and those of the Federal government.'" *State v. Wasanyi*, 241 W. Va. 220, 228, 821 S.E.2d 1, 9 (2018) (quoting Uniform Controlled Substances Act of 1970 prefatory note, vol. 9, part II, *U.L.A.* 2 (1988)).

Similarly, Defendants have not pointed to any reason that the DEA would conduct its operations and investigations in West Virginia in any way materially different from the way that it conducts operations in Michigan, Washington, DC, New York, New Jersey, Ohio, or Kentucky.[9] Considering that a single federal office or manager can oversee DEA operations in multiple states, the logical conclusion is that DEA operations are conducted in substantially the same way no matter what state they take place in.[10] Mr. Geldhof is well qualified to testify on the subjects

---

[7] Geldhof Rep., Doc. 1097-15, at 1.

[8] Def. Br. at 2.

[9] Geldhof Rep., Doc. 1097-15, at 1.

[10] Geldhof Rep., Doc. 1097-15, at 1 (noting that as Diversion Program Manager in Detroit, Michigan he was "responsible for oversight of Diversion Groups throughout Michigan, Ohio, and Kentucky.")

discussed in his expert report and to "assist the court in giving an inside look or basically DEA's role within the closed system of distribution" and "to provide [] opinions regarding the history of the laws and regulations governing the pharmaceutical industry and the enforcement by the DEA of the laws and regulations as they apply to distributors."[11] These subjects do not require state-specific expertise. Instead Mr. Geldhof's knowledge, experience, and training in federal law and DEA operations qualify him to testify in this case.

### B. The Court will benefit from Mr. Geldhof's testimony applying knowledge and experience and his testimony does not unduly prejudice the Defendants.

Allowing Mr. Geldhof to testify based on his expertise will benefit the Court during the bench trial for this case. Mr. Geldhof's testimony provides his "opinions regarding the history of the law and regulations governing the pharmaceutical industry and the enforcement of by the DEA of the laws and regulations as they apply to distributors."[12] For example, he will testify about the DEA's role in enforcement including inspection, oversight, and license revocation or suspension and about the Controlled Substances Act and its application to distributors like Defendants.[13] Allowing Mr. Geldhof to testify as to his knowledge about these topics, will be far more helpful to the Court than counsel simply presenting, one by one, the documents that Mr. Geldhof relied on with little to no context.

Additionally, Mr. Geldhof's testimony would not unfairly prejudice the Defendants. Defendants' main argument is that Mr. Geldhof's testimony does not assist the trier of fact. To this end, the main concern in much of the case law relied on by Defendants is the idea that expert witnesses can easily mislead, or usurp the role of, a jury. However, in a bench trial, there is little

---

[11] *See* Exhibit 1, Geldhof Dep. at 11:2-4 *and* Geldhof Rep., Doc. 1097-15, at 2.

[12] Geldhof Rep., Doc. 1097-15, at 2.

[13] Geldhof Rep., Doc. 1097-15, at 2-3.

risk of misleading or usurping the role of the judge. Therefore, concerns about the usefulness of Mr. Geldhof's testimony need not be addressed by excluding his testimony. Rather, the Court can determine the weight to give to Mr. Geldhof's testimony at trial. *Grant Thornton LLP v. Fed. Deposit Ins. Corp.,* No. CIV.A. 1:00-0655, 2007 WL 4591412, at *1 (Faber, J.) (S.D.W. Va. May 6, 2007) noting that "the court's concerns about the usefulness of various portions of the scientific testimony more appropriately can be addressed through determination of the weight to be accorded the testimony, rather than through the threshold determination of admissibility") (citation and internal quotation omitted). Therefore, because Mr. Geldhof's testimony will assist the Court in its bench trial, and because there is little risk of misleading or usurping the role of the factfinder, the Court should deny Defendants' motion.

## II.    MR. GELDHOF'S TESTIMONY DOES NOT PRESENT AN IMPROPER NARRATIVE

Defendants argue that the testimony of Mr. Geldhof must be excluded because it a "factual narrative."[14] Defendants' argument, however, is founded on the false premise that there is blanket rule against experts providing narrative summaries or explanations of evidence. There is no such rule. Because Mr. Geldhof's testimony is not an impermissible factual narrative, the Court can and should admit his testimony.

### A.    Experts May Summarize the Facts and Evidence on Which They Rely and May Do So in Narrative Form

Fed. R. Evid. 611(a)  provides, "[t]he court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth [and] (2) avoid wasting time …." Accordingly, the Fourth Circuit has held that "Rule 611(a) can be used as a basis for the admission of summary testimony when the testimony aids in ascertaining the truth. … The complexity and length of the

---

[14] *See*, e.g. Def. Br. at 7.

case as well as the numbers of witnesses and exhibits are considered in making [this] determination." *United States v. Rollack*, 570 F. App'x 267, 277 (4th Cir. 2014) (citations and internal quotation marks omitted). *See, e.g., United States v. Janati*, 374 F.3d 263, 275 (4th Cir. 2004); *United States v. Barrie*, No. CRIM. PWG-14-0006, 2014 WL 7014485, at *5 (D. Md. Dec. 10, 2014), *aff'd*, 629 F. App'x 541 (4th Cir. 2015).

Indeed, the use of summary experts is commonplace in this Circuit. "[W]hen the legal regime is complex and the judge determines that the witness' testimony would be helpful in explaining it . . . the testimony may be admitted." *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011) (securities law expert); *accord United States v. Duarte*, 581 F. App'x 254, 257 (4th Cir. 2014) (money laundering expert). *See also United States v. Pree*, 408 F.3d 855, 869-70 (7th Cir. 2005) (IRS agent testified as expert summary witness).

Nor is there any general rule that prevents experts from discussing the evidence on which their opinions are based in the form of a narrative. Expert narrative testimony is entirely permissible where, as here, the documents and other information the expert is reviewing are complicated, voluminous, or involve scientific or technical data and such narrative summary would be helpful to the trier of fact in understanding the evidence. *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prod. Liab. Litig.*, No. 2:14-MN-02502-RMG, 2016 WL 2940784, at *4 (D.S.C. May 6, 2016); *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prod. Liab. Litig.*, No. 3:11-MD-2244-K, 2014 WL 3557345, at *7 (N.D. Tex. July 18, 2014); *In re Yasmin & YAZ (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, No. 3:09-MD-02100-DRH, 2011 WL 6302287, at *8 (S.D. Ill. Dec. 16, 2011).

To describe testimony as a "narrative" is the beginning and not the end of the analysis. The distinction between a *permissible* narrative and an *impermissible* one was explained by the court

9

in *In re Welding Fume Product Liability Litigation*, 2005 WL 1868046 at *17 (N.D. Ohio Aug. 8, 2005):

> a "narrative" by an expert is not automatically inadmissible; it is only when … the narrative is purely "a repetition of the factual allegations in plaintiffs' complaint," involving "nothing technical or scientific," that a court might find the expert testimony unhelpful, because the expert is providing only "simple inferences drawn from uncomplicated facts."

*Id*. (citation omitted). Where, as here, "the great majority of the documents and articles that [the expert] is reviewing and comparing are complicated, and the inferences those documents may or may not support are not at all simple," a qualified expert can apply expertise to help "the trier of fact to better understand what the documents do (and don't) mean, and thus, what the defendants did (or didn't) know." *Id.* at *17.

Indeed, the expertise of an historian has often been found useful to assist the trier of fact in understanding a lengthy historical record. For example, in the tobacco litigation, the defendants were allowed to offer the testimony of an historian who relied on a wide variety of documents, synthesized the documents, and opined that between 1947 and 1969 there was widespread common knowledge among ordinary people that cigarette smoking could cause serious life-threatening diseases. *Waterhouse v. R.J. Reynolds Tobacco Co*., 368 F. Supp. 2d 432, 436 (D. Md. 2005), *aff'd*, 162 F. App'x 231 (4th Cir. 2006). *See also Walden v. City of Chicago*, 755 F. Supp. 2d 942, 948-49 (N.D. Ill. 2010) ("researcher and doctoral candidate in history," who had conducted a historical study regarding the policies and practices of the Chicago Police Department, allowed to testify that "all the available evidence points to the existence of a historic pattern of coercive interrogations and illegal detentions that represented a *de facto* policy and practice of the Chicago Police Department in existence in 1952 at the time of [the plaintiff's] arrest and alleged mistreatment"). While an expert must do more than simply construct a factual narrative based on record evidence, an expert can certainly testify as to the facts relied upon in forming his opinions

10

so long as they are relevant and not cumulative. *See Wells v. Allergan, Inc.*, No. CIV-12-973-C, 2013 WL 7208221 at *2 (W.D. Okla. Feb. 4, 2013).

The extent to which the underlying evidence can or should be admitted through Plaintiffs' experts, or though other evidence, such as testimony of other witnesses or the admission of the documents cited in the reports, and the extent to which summaries of some portions of this evidence by the experts may assist the trier of fact in understanding both the evidence itself and the experts' opinions based on that evidence, does not implicate this Court's gate-keeping role under *Daubert*. It is, rather, a matter of this Court's discretion over the presentation of evidence at trial. Fed. R. Evid. 611(a) . Defendants cite Judge Goodwin's decision in *In re C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 611 (S.D.W. Va. 2013), but they neglect to mention that Judge Goodwin refused to enter an order barring narrative testimony, saying instead that he would exercise his discretion—at trial—to cut off unduly lengthy factual narrative. 948 F. Supp. at 646. *Accord In re Lipitor*, 2016 WL 2940784, at *4. *See also United States v. Osum*, 943 F.2d 1394, 1405 (5th Cir.1991). This Court should do the same and reserve until trial any ruling on objections to particular statements as improper narrative, summary, or speculation.

**B.    The Court Should Permit Mr. Geldhof to Testify at Trial About the Laws and Regulations that Govern The Pharmaceutical Industry and the Enforcement By the DEA of Those Laws and Regulations as They Apply to Distributors.**

As noted above, this Court has discretion to admit Mr. Geldhof's testimony to assist in its understanding of the DEA's enforcement of the laws and regulations as they apply to distributors. Defendants argue that Mr. Geldhof's testimony tells the Court what legal conclusions to draw.[15] However, "courts and commentators have consistently concluded that expert testimony that ordinarily might be excluded on the ground that it gives legal conclusions may nonetheless be

---

[15] Def. Br. at 6.

admitted in cases that involve highly technical legal issues." *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011). For example, in *United States v. Duarte*, 581 F. App'x 254 (4th Cir. 2014), the Fourth Circuit upheld the use of expert testimony on money laundering because "the prosecution involved a complicated drug distribution network," despite the fact that the Plaintiff contended that it was unhelpful summary testimony. *Id.* at 257. Here too, the case at hand involves a complicated drug distribution network, in which Mr. Geldhof has extensive and unique experience. Further, *Duarte* was a criminal case and the expert at issue testified in front of the jury. *Id.* That is, the risk of prejudice to defendant in that case was much higher than it is here, and the court still admitted the testimony. As noted above, in this bench trial, the Court is qualified to weigh Mr. Geldhof's testimony appropriately and need not exclude his testimony out of fear it would improperly influence a jury. *See Grant Thornton LLP v. Fed. Deposit Ins. Corp.,* No. CIV.A. 1:00-0655, 2007 WL 4591412, at *1 (Faber, J.) (S.D.W. Va. May 6, 2007). Mr. Geldhof's specialized knowledge of the complicated issues relating to opioid distributors and the legal regime governing them will assist the Court and is more efficient than presenting the evidence Mr. Geldhof relies on without context. Thus, the Court should permit Mr. Geldhof's testimony.

## III.   MR. GELDHOF DOES NOT INTEND TO OFFER OPINIONS ABOUT SPECIFIC DEFENDANTS

Mr. Geldhof will offer opinions to "assist the court in giving an inside look or basically DEA's role within the closed system of distribution" and "regarding the history of the laws and regulations governing the pharmaceutical industry and the enforcement by the DEA of the laws and regulations as they apply to distributors."[16] He does not intend to offer opinions about the specific defendants in this case, other than those presented in his expert report.[17]

---

[16] *See* Exhibit 1, Geldhof Dep. at 11:2-4 *and* Geldhof Rep., Doc. 1097-15, at 2.

[17] *See e.g.*, Geldhof Rep., Doc. 1097-15, at 4 (opining that "the Defendants are among those required to report the raw data available to them regarding all transactions involving Schedule I, II, and III narcotic controlled substances.")

## CONCLUSION

For the foregoing reasons, this Court should deny in its entirety Defendants' Daubert Motion to Exclude the Opinions of James Geldhof.

Dated:  October 23, 2020                     Respectfully submitted,

THE CITY OF HUNTINGTON

/s/ *Anne McGinness Kearse*
Anne McGinness Kearse
WVSB No. 12547
Joseph F. Rice
MOTLEY RICE LLC
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: 843-216-9000
Fax: 843-216-9450
akearse@motleyrice.com
jrice@motleyrice.com

/s/ *Anthony J. Majestro*
Anthony J. Majestro
WVSB No. 5165
POWELL & MAJESTRO, PLLC
405 Capitol Street, Suite P-1200
Charleston, WV 25301
304-346-2889 / 304-346-2895 (f)
amajestro@powellmajestro.com

CABELL COUNTY COMMISSION

/s/ *Peter J. Mougey*
Peter J. Mougey, Esq.
LEVIN, PAPANTONIO, THOMAS
MITCHELL, RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502-5996
Telephone: (850) 435-7068
Facsimile: (850) 436-6068
pmougey@levinlaw.com

/s/ *Paul T. Farrell, Jr.*
Paul T. Farrell, Jr.
WVSB No. 7443
FARRELL LAW
422 Ninth Street, 3rd Floor
Huntington, WV 25701
Tel: (304) 654-8281
paul@farrell.law

Michael A. Woelfel
WVSB No. 4106
WOELFEL AND WOELFEL, LLP
801 Eighth Street
Huntington, West Virginia 25701
Tel. 304.522.6249
Fax. 304.522.9282
mikewoelfel3@gmail.com

13

Linda Singer
David I. Ackerman
MOTLEY RICE LLC
401 9th Street NW, Suite 1001
Washington, DC 20004
Tel:  202-232-5504
Fax:  202-386-9622
lsinger@motleyrice.com
dackerman@motleyrice.com

Charles R. "Rusty" Webb
WVSB No. 4782
THE WEBB LAW CENTRE, PLLC
716 Lee Street, East
Charleston, West Virginia 25301
Telephone: (304) 344-9322
Facsimile: (304) 344-1157
rusty@rustywebb.com


*On the Brief:*

Page A. Poerschke, Esq.
Laura S. Dunning, Esq.
LEVIN, PAPANTONIO, THOMAS
MITCHELL, RAFFERTY & PROCTOR, P.A.
316 South Baylen Street, Suite 600
Pensacola, FL 32502-5996
Telephone: (850) 435-7068
Facsimile: (850) 436-6068
ppoerschke@levinlaw.com
ldunning@levinlaw.com

Tyler W. Hudson, Esq.
WAGSTAFF & CARTMELL, LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Telephone: (816) 701-1177
Facsimile: (816) 531-2372
THUDSON@WCLLP.COM

## CERTIFICATE OF SERVICE

I certify that on October 23, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. This filing will also be served on all parties by email to: Track2OpioidDefendants@ReedSmith.com and mdl2804discovery@motleyrice.com.


*/s/ Peter J. Mougey*