U.S. Department of Justice
Drug Enforcement Administration

Chemical Handler's Manual
January 2004

## Appendix E-1
## Suspicious Orders Task Force

**All Levels / All Chemicals**   (* indicates that criterion may not apply to all retail settings)

New customer or unfamiliar representative or established customer who begins ordering listed chemicals.*

Customers who don't seem to know industry practice or who fail to provide reasons for an order at variance with accepted legitimate industry practice.

Customer whose communications are not prepared or conducted in a professional business manner.*

Customer who provides evasive responses to any questions or is unable to supply information as to whether chemicals are for domestic use or for export.

Customer who has difficulty pronouncing chemical names.

New customers who don't seem to know Federal or state government regulations.*

Customer whose stated use of listed chemicals is incompatible with destination country's commercial activities or consignee's line of business.*

Customers who want predominantly or only regulated chemicals.

Customers who want multiple regulated or surveillance list (see Appendix G for Special Surveillance List) products, particularly if in contrast to customary use and practice.

Customer who is vague or resists providing information about firm's address, telephone number, and reason for seeking that chemical.*

Customer who provides false or suspicious addresses, telephone numbers or references.

Customer who is vague or will not furnish references for credit purposes.*

Customer who refuses or is reluctant to establish a credit account or provide purchase order information.*

Customer who prefers to pay by cashiers check, postal money order, etc.

Customer who desires to pay cash.*

Customer who wants to pick up the chemicals outside of normal practice in the supplier's experience.

Customer with little or no business background available.*

An established customer who deviates from previous orders or ordering methods.

Customers who want airfreight or express delivery.

Customers who want chemicals shipped to a PO Box or an address other than usual business address. (e.g., residence address)

Customer using a freight forwarder as ultimate consignee.

Customer who requests unusual methods of delivery or routes of shipment.

Customer who provides unusual shipping, labeling, or packaging instructions.

Customer who requests the use of intermediate consignees whose location or business is incompatible with the purported end user's nature of business or location.

Above threshold hydrochloride gas or iodine sales to a non-commercial customer.

38

CONFIDENTIAL

WAGMDL00396007

U.S. Department of Justice                          Chemical Handler's Manual
Drug Enforcement Administration                                January 2004

**Appendix E-1**
**Suspicious Orders Task Force**

### Distributor (Non-retail) of Regulated OTC Products

Customers who don't want to tell you what area they will resell into.
Customers who don't want to tell you in what volumes they will resell.
Customers who refuse to tell you who their customers are.
Customers who don't have limits on resales.
Customers who push to buy more than your sales limit.
Customers who repeatedly buy your sales limit at the shortest interval you set.
Customers who don't know customers' limits on individual resales.
Customers who resell to non-traditional outlets for regulated OTC products, e.g., hair salons, head shops, drug paraphernalia stores, liquor stores, record stores, video shops, auto parts stores.
Customers who resell large volumes into the "independent convenience store" market.
Any customer who asks for large bottle sizes, 60 count or higher.
Customers who buy only the largest size available.
Customers that don't sell other pharmaceutical products or appear to sell those other products in token amounts.
Any customer that resells multiple cases that flow through to individual retail outlets.
New customers who want to sell regulated OTC products into California, Arizona, Nevada, Oregon, Utah, Washington, New Mexico, Texas, Kansas, Missouri, Arkansas.
Any customer who wants to sell to an outlet relocated from California, Missouri, or Kansas to any of the states identified in the prior sentence.
Any customer who wants to export, particularly to Mexico, Canada, or Southeast Asia.
Customers who will not provide you with evidence of registration with DEA.
(Or having applied by the following deadlines: Nov 13, 1995 for single entity ephedrine; July 12, 1997 for ephedrine combination products; Dec 3, 1997 for pseudoephedrine and phenylpropanolamine products.)
Customers who will not provide you with evidence of applicable state registrations/licenses.
Customers who sell mail order and who don't report sales to DEA monthly.
(Note they must also be registered.)
Nominal retail customers who sell above the Federal, "Retail," 9 Gm individual sale limits
[Editor's Note: The Task Force's original 24 gram limits were superseded by the 9 gram limit established by the Methamphetamine Anti-Proliferation Act of 2000 on October 17, 2001]

### Wholesale Drug Distribution Indicators

Individual pharmacies that intend to export.
Individual pharmacies or chains that won't set a voluntary limit for individual sales at some fraction of the Federal limit to qualify as a retail outlet.
Pharmacies that stock large shelf volumes in stores that have repeated thefts or other sales problems.

39

CONFIDENTIAL

WAGMDL00396008

Case 3:13-cv-01362   Document 1108-4   Filed 10/23/20   Page 3 of 23 PageID #: 38920

U.S. Department of Justice
Drug Enforcement Administration

Chemical Handler's Manual
January 2004

**Appendix E-2**

# Factors Which May Suggest a Suspicious Transaction

**Retail Level - Regulated Products and/or Combination Purchases**

OTC customers who ask for more than the transaction limit in effect.

Customers who are part of a group, each of whom buys the transaction limit.

Customers who buy the transaction limit on the same day and/or repeatedly within a few days.

Customers who buy only the largest size available at the transaction limit.

Customers who buy other methamphetamine processing products at the same time as the regulated products (alcohol, Coleman fuel, acetone, road flares, drain cleaners, iodine, muriatic acid, rock salt, starting fluid (ether), dry gas (alcohol), coffee filters, large amounts of matches, etc.)

Customers who indicate they will resell or export.

Iodine customers who don't have a legitimate reason for the purchase or who don't have an articulate reason for the volume requested.

Customers who purchase iodine crystals or pellets with any other item from the surveillance list.

Customers who want to pay cash when other forms of payment would be customary.

There may be a legitimate explanation for a purchase that represents one or more of these factors. The list is presented as a guide to instruct retailers and their employees as to which transactions may be suspicious.

CONFIDENTIAL

WAGMDL00396009

**U.S. Department of Justice**
Drug Enforcement Administration

**Chemical Handler's Manual**
January 2004

**Appendix E-3**

# Suspicious Order Reporting System for Use in Automated Tracking Systems

### Terms & Definitions

This voluntary formula is for use by distributors to wholesale and retail levels. The formula calculates the quantity which, if exceeded in one month, constitutes an order which **may** be considered excessive or suspicious and therefore require reporting to DEA.

1) Add purchase quantities for the last 12 months for all customers within same Distribution Center and for customer type (Hospital, Pharmacy or Other) for any List I chemical containing item stocked by the Distribution Center.

2) Add Customer months for every record used in above total. (Months within the last 12 that customer purchases of the item were not zero.)

3) Divide total quantity purchases by the total customer months.

4) Then multiply by the factor below to give the maximum amount that the customer can order per month before showing up on the suspicious order report.

Note: Factor equals 3 for C-II and C-III Controlled Substances Containing List I Chemicals and 8 for C-III-IV-V Controlled Substances and non-Controlled OTC products containing List I chemical items.

5) At the end of each month, a report will be transmitted to DEA (separate reports for List I Chemicals and Schedule II-V Controlled Substances) of all purchases of List I Chemicals and/or C-II-V Controlled Substances and List I containing OTC items by any customer whose purchase quantities exceed the parameters (above) any (2) consecutive months or in three (3) of any moving six (6) month period.

Using a computer to manage and report on high volume transaction business activities with extremely short order cycle times (receipt to delivery) is the only viable, cost effective methodology for the reporting of orders which may be considered excessive or suspicious.

41

CONFIDENTIAL

WAGMDL00396010

U.S. Department of Justice
Drug Enforcement Administration

Chemical Handler's Manual
January 2004

Appendix F

# Export of Chemicals from the United States to Colombia; Policy Statement

Federal Register: March 28, 1996 (Volume 61, Number 61)
[Rules and Regulations]
[Page 13759-13760]
From the Federal Register Online via GPO Access [wais.access.gpo.gov]
[DOCID:fr28mr96-8]

DEPARTMENT OF JUSTICE
21 CFR 1313
[DEA Number 145N]
**Export of Chemicals From the United States to Colombia; Policy Statement**
AGENCY: Drug Enforcement Administration (DEA), Justice.
ACTION: Policy statement.

SUMMARY: Notice is hereby given that regular customer status for Colombian customers is being revoked under Section 1018(c)(1) of the Controlled Substance Import Export Act (CSIE) (21 U.S.C. 971(c)(1)). Each U.S. exporter is being informed by letter that they must notify DEA at least 15 days in advance of shipment of certain chemicals listed in 21 CFR 1310.04, if the shipment is from the United States with an ultimate destination of Colombia. Moreover, in view of the danger that chemical shipments may be diverted into the illicit manufacture of cocaine, a heightened review process will be instituted for such exports and for transshipments. The exception under Title 21, Code of Federal Regulations (21 CFR), Section 1313.24, allowing exporters to notify DEA as late as the day of shipment for transactions between a "regulated person" and a "regular customer" will not apply to shipments of certain chemicals to Colombia until further notice.
**EFFECTIVE DATE:** March 28, 1996.
**FOR FURTHER INFORMATION CONTACT:** William Wolf, Chief, Chemical Operations Section, Office of Diversion Control, Drug Enforcement Administration, Washington, D.C. 20537, Telephone (202) 307-7204.
**SUPPLEMENTARY INFORMATION:** The following is a statement of policy by the Drug Enforcement Administration (DEA) under the Controlled Substances Act, as amended by the Chemical Diversion and Trafficking Act of 1988 (CDTA), regarding exports of certain listed chemicals from the United States to Colombia.

On March 1, 1996, the President of the United States, under the Annual Certification Procedures Act (22 U.S.C. Section 2291j), moved to decertify Colombia's status as a nation actively cooperating with the United States to stem the clandestine manufacture and trafficking of illegal drugs. This action was taken in response to overwhelming evidence of rampant drug-related corruption at the highest levels of the Colombian government. In direct contravention of efforts by Colombian law enforcement officials and the judicial sector to root out drug-related corruption, elements of the Colombian government have systematically undermined and publicly attacked these efforts while failing to support the efforts of Colombian law enforcement to strengthen the nation's institutions to combat the destructive effects of narcotics traffickers.

These problems have also adversely affected the ability of the Colombian Government to insure that listed chemicals imported from the U.S. and other sources are not diverted into the illicit manufacture of cocaine.

At a time when the Colombian government's commitment to combating narcotic

CONFIDENTIAL

WAGMDL00396011

trafficking has deteriorated, as evidenced by shifting the import permit approvals outside the existing infrastructure for chemical control, DEA data reveals a 57% increase between 1990 and 1995 in the sales to Colombia of List II solvents that are used in the clandestine manufacture of cocaine. These sales by U.S. chemical firms, which were based primarily upon Colombian authorization, are estimated by the Colombian Director of Customs to comprise 59% of the listed chemicals now imported into Colombia and, unfortunately, coincide with continued large scale illicit cocaine production within Colombia. DEA has concluded, therefore, that all shipments to Colombia of certain chemicals may be diverted to the clandestine manufacture of a controlled substance.

The CDTA, the Domestic Chemical Diversion Control Act (DCDCA) and the implementing regulations have established a system of recordkeeping and reporting requirements that provide DEA with a mechanism to track domestic and international movement of listed chemicals in order to prevent their being diverted for use in the clandestine manufacture of controlled substances.

Section 1018(a) of the CSIE (21 U.S.C. 971(a)), as amended by the CDTA, provides that "each regulated person who imports or exports a listed chemical shall notify the Attorney General of the importation or exportation not later than 15 days before the transaction is to take place." In accordance with Section 1018(b) (21 U.S.C. 971(b)), this requirement is modified by 21 CFR 1313.24 where the transaction is between a "regulated person" and a "regular customer." Under normal circumstances, exporters are allowed to ship listed chemicals to regular customers with notification as late as the day of shipment.

A person located in the United States who is a broker or trader for an international transaction of a listed chemical is subject to all of the notification, reporting, recordkeeping, and other requirements placed upon exporters of listed chemicals. No waiver of the 15-day advance notice is permitted under Section 1313.31 for importations and exportations for transshipment purposes of threshold quantities of listed chemicals.

Regardless of whether the shipment is a direct export or a transshipment, DEA has the obligation to examine the notification in order to determine if the shipment is legitimate and that the chemical will not be diverted to the illicit manufacture of controlled substances. Due to the distribution network within Colombian, where large quantities of the chemicals used in the clandestine manufacture of illegal controlled substances are redistributed by the importing customer, bestowing "regular customer" status on the importer is ineffective in assuring legitimate usage.

As underscored by the President's action to decertify Colombia as a cooperating nation due to widespread corruption, DEA is unable to determine the legitimacy of shipments of the specified chemicals or to rely on import permits and other documentation issued by the Colombian Government that the above chemicals are not being diverted for use in the clandestine manufacture of controlled substances. Although the Colombian National Police have been diligent and constructive in their efforts to monitor the legitimacy of chemicals imported into Colombia, its efforts have been handicapped by inadequate political and resource support. DEA has no confidence that those customers previously submitted as regular customers, nor those who would become regular customers in the future, as specified in 21 CFR 1313.24, are not diverting the above chemicals to the illicit drug traffic. Therefore, in the absence of a way to determine with any reasonable degree of certainty that chemical shipments will not be diverted, pursuant to Section 1018(c)(1) of the CSIE (21 U.S.C. 971(c)(1)), DEA will act to disqualify regular customer status for Colombian importers of MEK, MIBK, acetone, toluene, potassium permanganate, and ethyl ether. Accordingly, each U.S. exporter is being informed by letter that for all shipments of these chemicals to Colombia, the exporter must now file a Chemical [[Page 13760]] Export Declaration (DEA Form 486) at least 15 days in advance of the shipment date in accordance with 21 CFR 1313.21 for every shipment of a threshold amount of the above listed chemicals to Colombia. All subsequent

CONFIDENTIAL

WAGMDL00396012

**U.S. Department of Justice**
Drug Enforcement Administration

**Chemical Handler's Manual**
January 2004

shipments of any of the identified chemicals to the same customer will continue to require 15 day advance notice and evidence of a documented legitimate need.

Furthermore, because DEA has concluded that all shipments to Colombia of the above chemicals may be diverted to the clandestine manufacture of a controlled substance, pursuant to 21 CFR 1313.41, it is DEA's intent to suspend such exports and imports for transshipment in the absence of documented proof of ultimate legitimate use. Shipments of these chemicals will be closely monitored by DEA to determine whether the exporters have presented sufficiently detailed documentation for DEA to conclude that the ultimate users have the specific, legitimate need for the type and quantity of the chemical being purchased and, that the chemical will not be used for the clandestine production of controlled substances. Export declarations and Notices of Importation for Transshipment for the specified chemicals will be reviewed utilizing the following criteria:

A. Whether the U.S. exporter, broker, or foreign exporter for transshipment has shown that the end use for all of the chemical will be for a legitimate purpose;

B. If the importer is not the end user, whether all users or distributors through to the end users are identified to DEA with sufficient documentation to confirm the legitimacy of their chemical needs; and

C. Whether the quantity and type of chemical is consistent with the nature and size of each end user's business. A person who knowingly or intentionally exports a listed chemical in violation of section 1018 shall be fined in accordance with Title 18, imprisoned not more than 10 years, or both (21 U.S.C. 960(d) (5) and (6)).

U.S. and foreign exporters, and brokers are cautioned to view every order of these or substitute chemicals from Colombia and other countries in the region with extreme caution. In view of the existing evidence that all shipments to Colombia of the above chemicals may be diverted to the clandestine manufacture of a controlled substance, firms should recognize that export declarations and Notices of Importation for Transshipment will be subjected to the heightened standard of review set forth herein with respect to the identity of the end users and the documented legitimacy of usage. Failure to meet this standard will result in the suspension of the shipment pursuant to 21 CFR 1313.41.

Dated: March 22, 1996.

Stephen H. Greene,
Deputy Administrator, Drug Enforcement Administration.
[FR Doc. 96-7546 Filed 3-27-96; 8:45 am]
BILLING CODE 4410-09-M

CONFIDENTIAL

WAGMDL00396013

**U.S. Department of Justice**
Drug Enforcement Administration

**Chemical Handler's Manual**
January 2004

## Appendix G

# Special Surveillance List of Chemicals, Products, Materials and Equipment Used in the Clandestine Production of Controlled Substances or Listed Chemicals

### Background

The Comprehensive Methamphetamine Control Act of 1996 (MCA) makes it unlawful for any person to distribute a laboratory supply to a person who uses, or attempts to use, that laboratory supply to manufacture a controlled substance or a listed chemical, with reckless disregard for the illegal uses to which such laboratory supply will be put. Individuals who violate this provision are subject to a civil penalty of not more than $25,000; businesses which violate this provision are subject to a civil penalty of not more than $250,000. The term "laboratory supply" is defined as "a listed chemical or any chemical, substance, or item on a special surveillance list published by the Attorney General, which contains chemicals, products, materials, or equipment used in the manufacture of controlled substances and listed chemicals."

### Special Surveillance List

### Chemicals

All listed chemicals as specified in 21 CFR § 1310.02 (a) or (b) or 21 U.S.C. § 802 (34) or (35). This includes all chemical mixtures and all over-the-counter (OTC) products and dietary supplements which contain a listed chemical, regardless of their dosage form or packaging and regardless of whether the chemical mixture, drug product or dietary supplement is exempt from regulatory controls.

Ammonia Gas
Ammonium Formate
Bromobenzene
1,1-Carbonyldiimidazole
Cyclohexanone
1,1-Dichloro-1-fluoroethane(eg, Freon141B)
Diethylamine and its salts
2,5-Dimethoxyphenethylamine and its salts
Formamide
Formic Acid
Hypophosphorous Acid
Lithium Metal
Lithium Aluminum Hydride
Magnesium Metal (Turnings)
Mercuric Chloride
N-Methylformamide
Organomagnesium Halides (Grignard Reagents) (e.g., ethylmagnesium bromide and phenyl-magnesium bromide)

Phenylethanolamine and its salts
Phosphorus Pentachloride
Potassium Dichromate
Pyridine and its salts
Red Phosphorus
Sodium Dichromate
Sodium Metal
Thionyl Chloride
ortho-Toluidine
Trichloromonofluoromethane (e.g., Freon-11, Carrene-2)
Trichlorotrifluoroethane (e.g., Freon 113)

### Equipment

Hydrogenators
Tableting Machines
Encapsulating Machines
22 Liter Heating Mantels

**Additional Information** The Special Surveillance List appeared as a Final Notice in the Federal Register on May 13, 1999. A Correction to the Final Notice appeared in the Federal Register on September 17, 1999.

CONFIDENTIAL

WAGMDL00396014

U.S. Department of Justice
Drug Enforcement Administration

Chemical Handler's Manual
January 2004

## Appendix H

# DEA Diversion Field Offices

The following information was correct at the time of publication.
To find the updated Field Office information, please view our Field Division page.

**ALABAMA Northern**
Birmingham DEA
234 Goodwin Crest
Birmingham, AL 35209
205-290-7150

**ALABAMA Southern**
Mobile DEA
900 Western America Circle
Mobile, AL 36609
251-441-5831

**ALASKA**
Seattle DEA
400 2nd Avenue West
Seattle, WA 98119
206-553-5990

**ARIZONA Northern Central**
Phoenix DEA
3010 N. 2nd St.
Phoenix, AZ 85012
602-664-5600

**ARIZONA Southern**
Tucson DEA
3285 E. Hemisphere Loop
Tucson, AZ 85706
520-573-5500

**ARKANSAS**
Little Rock DEA
10825 Financial Pkwy.
Little Rock, AR 72211-3557
501-312-8602

**CALIFORNIA Central**
Fresno DEA
2444 Main St.
Fresno, CA 93721
559-487-5402

**CALIFORNIA South**
Los Angeles DEA
255 E. Temple St.
Los Angeles, CA 90012
213-621-6942

**CALIFORNIA Northern**
Oakland DEA
P.O. Box 70301
Oakland, CA 94612
510-637-5600

**CALIFORNIA South Central**
Riverside DEA
4470 Olivewood Ave.
Riverside, CA 92501
909-328-6000

**CALIFORNIA South Central**
Sacramento DEA
4328 Watt Avenue
North Highlands, CA 95660
916-480-7250

**CALIFORNIA Southern**
San Diego
4560 Viewridge Ave.
San Diego, CA 92123-1637
858-616-4100

**CALIFORNIA Central Coastal**
San Francisco DEA
P.O. Box 36035
San Francisco, CA 94102
415-436-7854

**CALIFORNIA Central**
San Jose DEA
One N. First St.
San Jose, CA 95113
408-291-7235

46

CONFIDENTIAL

WAGMDL00396015

U.S. Department of Justice
Drug Enforcement Administration

Chemical Handler's Manual
January 2004

**CARIBBEAN**
San Juan DEA
P.O. Box 2167
San Juan, PR 00922-2167
787-775-1877

**COLORADO**
Denver DEA
115 Inverness Dr., E.
Englewood, CO 80112
303-705-7300

**COLORADO Southern**
Colorado Springs DEA
111 S. Tejon
Colorado Springs, CO 80903
719-866-6100

**CONNECTICUT**
Hartford DEA
450 Main St.
Hartford, CT 06103
860-240-3700

**DELAWARE**
Philadelphia DEA
600 Arch St.
Philadelphia, PA 19106
215-597-9540

**DISTRICT OF COLUMBIA**
Washington DEA
800 K St., NW
Washington, D.C. 20001
Metro Area 202-305-8800

**FLORIDA Southeastern**
Miami DEA
8400 NW 53rd St.
Miami, FL 33166
305-590-4980

**FLORIDA Central**

Orlando DEA
300 Internationl Pkwy.
Heathrow, FL 32746
407-333-7046

**FLORIDA Northern**
Tallahassee DEA
3384 Capital Circle NE
Tallahassee, FL 32308
850-942-8417

**FLORIDA West Central**
Tampa DEA
4950 W. Kennedy Blvd.
Tampa, FL 33609
813-288-1290

**GEORGIA**
Atlanta DEA
75 Spring St., SW
Atlanta, GA 30303
404-893-7165

**GEORGIA Eastern**
Savannah DEA
56 Park of Commerce #A
Savannah, GA 31405
912-447-1035

**HAWAII Guam Saipan**
Honolulu DEA
P.O. Box 50163
Honolulu, HI 96850
808-541-1930

**IDAHO Northern**
Seattle DEA
400 2nd Avenue West
Seattle, WA 98119
206-553-5990

**IDAHO Southern**
Boise DEA

47

CONFIDENTIAL

WAGMDL00396016

**U.S. Department of Justice**
Drug Enforcement Administration

**Chemical Handler's Manual**
January 2004

607 N. 8th St.
Boise, ID 83702-5518
208-334-1620

**ILLINOIS Northern**
Chicago DEA
230 S. Dearborn St.
Chicago, IL 60604
312-353-7875

**ILLINOIS Central**
Springfield DEA
2875 Via Verde St.
Springfield, IL 62703
217-241-6750

**INDIANA**
Indianapolis DEA
575 N. Pennsylvania
Indianapolis, IN 46204
317-226-7977

**INDIANA Northern**
Merrillville DEA
1571 E. 85th Ave.
Merrillville, IN 46410
219-681-7000

**IOWA**
Des Moines DEA
210 Walnut St.
Des Moines, IA 50309
515-284-4709

**KANSAS**
Kansas City DEA
8600 Farley
Overland Park, KS 66212
913-652-9127

Louisville, KY 40202
502-582-5908

**KENTUCKY Southeastern**
London DEA
P.O. Box 5065
London, KY 40741
606-862-4500

**LOUISIANA**
New Orleans DEA
3838 N. Causeway Blvd.
Metairie, LA 70002
504-840-1100

**MAINE**
Boston DEA
15 New Sudbury St.
Boston, MA 02203-0402
617-557-2191

**MARYLAND**
Baltimore DEA
200 St. Paul Pl.
Baltimore, MD 21202-2004
410-962-7580

**MASSACHUSETTS**
Boston DEA
15 New Sudbury St.
Boston, MA 02203-0402
617-557-2191

**MICHIGAN**
Detroit DEA
431 Howard St.
Detroit, MI 48226
313-234-4000

**KENTUCKY Northern**
Louisville DEA
600 Martin Luther King Jr. Pl.

**MINNESOTA**
Minneapolis/St. Paul DEA
330 Second Ave., S.
Minneapolis, MN 55401

48

U.S. Department of Justice
Drug Enforcement Administration

Chemical Handler's Manual
January 2004

612-348-1729

**MISSISSIPPI**
Jackson DEA
100 W. Capitol St.
Jackson, MS 39269
601-965-4400

**MISSOURI Eastern**
St. Louis DEA
317 South 16th Street
St. Louis, MO 63103
314-538-4600

**MISSOURI Western**
Kansas City DEA
8600 Farley
Overland Park, KS 66212
913-652-9127

**MONTANA**
Billings DEA
303 N. Broadway St., Ste. 302
Billings, MT 59101
406 657-6020

**NEBRASKA**
Des Moines DEA
210 Walnut St.
Des Moines, IA 50309
515-284-4709

**NEVADA**
Las Vegas DEA
550 S. Main St.
Las Vegas, NV 89101
702-759-8030

**NEW JERSEY Northern Central**
Newark DEA
80 Mulberry St.
Newark, NJ 07102
973-273-5060/5080

**NEW JERSEY Southern**
Camden DEA
211 Boulevard Avenue
Maple Shade, NJ 08052
856 321-2440

**NEW MEXICO**
Albuquerque DEA
301 Martin L King Ave., NE
Albuquerque, NM 87102
505-346-7419

**NEW YORK Central Western**
Buffalo DEA
28 Church St.
Buffalo, NY 14202
716-551-3391

Long Island DEA
175 Pinelawn Rd.
Melville, NY 11747
631- 420-4540

New York DEA
99 Tenth Ave.
New York, NY 10011
212-337-1575

**NORTH CAROLINA**
Greensboro DEA
1801 Stanley Rd.
Greensboro, NC 27407
336-547-4219

**NEW HAMPSHIRE**
Boston DEA
15 New Sudbury St.
Boston, MA 02203-0402
617-557-2191

**NORTH DAKOTA**
Minneapolis/St. Paul DEA
330 Second Ave., S.
Minneapolis, MN 55401
612-348-1729

49

CONFIDENTIAL

WAGMDL00396018

U.S. Department of Justice                     **Chemical Handler's Manual**
Drug Enforcement Administration                              January 2004

**OHIO Southern**
Cincinnati DEA
36 E. 7th St.
Cincinnati, OH 45202
513-684-3671

**OHIO Northern**
Cleveland DEA
310 Lakeside Ave.
Cleveland, OH 44113
216-522-3705

**OHIO Central**
Columbus DEA
500 S. Front St.
Columbus, OH 43215
614-255-4200

**OKLAHOMA**
Oklahoma City DEA
9900 Broadway Extension
Oklahoma City, OK 73114-6323
405-475-7556

**OKLAHOMA Northeastern**
Tulsa DEA
7615 E. 63rd Pl.
Tulsa, OK 74133
918-459-9600

**OREGON**
Portland DEA
1220 SW 3rd Ave.
Portland, OR 97204
503-326-2447

**PENNSYLVANIA Western**
Pittsburgh DEA
1000 Liberty Ave.
Pittsburgh, PA 15222
412-395-4502

**PUERTO RICO**
Caribbean DEA
P.O. Box 2167
San Juan, PR 00922-2167
787-775-1877

**RHODE ISLAND**
Boston DEA
15 New Sudbury St.
Boston, MA 02203-0402
617-557-2191

**SOUTH CAROLINA**
Columbia DEA
1835 Assembly St.
Columbia, SC 29201
803-253-3441

**SOUTH DAKOTA**
Des Moines DEA
210 Walnut St.
Des Moines, IA 50309
515-284-4709

**TENNESSEE**
Nashville DEA
801 Broadway
Nashville, TN 37203
615-736-2559

**PENNSYLVANIA Eastern**
Philadelphia DEA
600 Arch St.
Philadelphia, PA 19106
215-597-9540

**TEXAS Northern**
Dallas DEA
10160 Technology Blvd., East
Dallas, TX 75220
214-366-6900

**TEXAS Western**

50

CONFIDENTIAL

WAGMDL00396019

El Paso DEA
660 S. Mesa Hills Dr.
El Paso, TX 79912
915-832-6000

**TEXAS Northern**
Ft. Worth DEA
819 Taylor St.
Ft. Worth, TX 76102
817-978-3455

**TEXAS Southern Eastern**
Houston DEA
1433 W. Loop S.
Houston, TX 77027-9506
713-693-3634

**TEXAS Central Western**
San Antonio DEA
10127 Morocco
San Antonio, TX 78216
210-442-5634

**TEXAS East**
Tyler DEA
909 East SE Loop
Tyler, TX 75701-9665
903-534-0472

**TEXAS Central**
Waco DEA
6801 Sanger
Waco, TX 76710
254-741-1920

450 Main St.
Hartford, CT 06103
860-240-3700

**VIRGINIA Central Southern**
Richmond DEA
111 Greencourt Road
Richmond, VA 23228
804-627-6300

**WASHINGTON**
Seattle DEA
400 2nd Avenue West
Seattle, WA 98119
206-553-5990

**WEST VIRGINIA**
Charleston DEA
2 Monongalia St.
Charleston, WV 25302
304-347-5209

**WISCONSIN**
Milwaukee DEA
1000 N. Water St.
Milwaukee, WI 53202
414-297-3395

**WYOMING**
Denver DEA
115 Inverness Dr., E.
Englewood, CO 80112
303-705-7300

**UTAH**
Salt Lake City DEA
348 East S.Temple
Salt Lake City, UT 84111
801-524-4156

**VERMONT**
Hartford DEA

51

WAGMDL00396020

**U.S. Department of Justice**
Drug Enforcement Administration

Chemical Handler's Manual
January 2004

**Appendix I**

# Diversion Control Information on the Internet

The DEA Office of Diversion Control website is:
**www.deadiversion.usdoj.gov**

Other useful websites:

•for Federal Register or Code of Federal Regulations, U.S. Government Printing Office at http://www.access.gpo.gov
(select "Access to Gov't. Information Products", then scroll to "Quick Links")

•California Bureau of Narcotics Enforcement at http://www.stopdrugs.org

•International Narcotics Control Board at http://www.incb.org

•United Nations Drug Control Program at http://www.undcp.org

•National Association of Boards of Pharmacy at http://www.nabp.net

NOTICE: Website addresses contained in this document were correct at the time of publication. They may no longer be valid.

CONFIDENTIAL

WAGMDL00396021

**U.S. Department of Justice**
Drug Enforcement Administration

Chemical Handler's Manual
January 2004

## Appendix J
# Chemical Diversion Notices*

### Combination Ephedrine and Pseudoephedrine Drug Products Are Being Seized at Clandestine Methamphetamine Laboratories

The Drug Enforcement Administration (DEA), the California Bureau of Narcotic Enforcement (BNE) and other state/local law enforcement authorities throughout the United States have noted an alarming trend involving illicit methamphetamine production. Shortly after DEA placed domestic record keeping and reporting requirements on ephedrine tablets, effective April 16, 1994, there was a dramatic change in the choice of precursors used by clandestine laboratory operators. Criminals are now using bulk ephedrine and pseudoephedrine and ephedrine and pseudoephedrine drug products to clandestinely manufacture methamphetamine.

This notification is being sent to all those who either manufacture, import, export, or distribute combination ephedrine and/or pseudoephedrine products. All persons engaged in these activities should be aware of the following information:

    1. Pseudoephedrine and ephedrine are List I chemicals under federal law.

    2. Pseudoephedrine and combination ephedrine drug products are List I chemicals, as defined by 21 U.S.C. § 802.

    3. Anyone who manufactures, imports, exports or distributes a listed chemical is considered a "regulated person" by definition of 21 U.S.C. § 802.

    4. "Any person who possesses or distributes a listed chemical knowing, or having reasonable cause to believe that the listed chemical will be used to manufacture a controlled substance, except as authorized by this title, shall be fined in accordance with Title 18, or imprisoned not more than 20 years, or both," 21 U.S.C. § 841 (c) (2).

Records, reports and proof of identity for customers are required for all regulated transactions in combination ephedrine and pseudoephedrine products. Distributors of these products should familiarize themselves with federal and state requirements. Law enforcement authorities are asking for your voluntary cooperation to reduce this diversion. Suspicious orders should be reported to your local DEA office immediately.

---

*The Office of Diversion Control sends chemical diversion notices to industry to provide information on emerging patterns of diversion. DEA distributes these notices to individual corporations and to associations that represent the affected industries.

CONFIDENTIAL

WAGMDL00396022

U.S. Department of Justice                                          Chemical Handler's Manual
Drug Enforcement Administration                                              January 2004

**Appendix J**

# SPECIAL NOTICE

## Cessation of marketing of phenylpropanolamine
## that may result in recalling of products

     The Food and Drug Administration has recently announced a cessation of marketing of phenylpropanolamine (PPA) that may result in recalling of products containing PPA. As you are aware, PPA is a List I chemical which is used in the illicit synthesis of amphetamine. This matter is of great concern to the Drug Enforcement Administration (DEA) because the risk of diversion of these drug products during this potential recall period represents a significant threat to the public interest. Therefore, DEA urges all firms involved in this recall to observe the following:

Accurately document all returns and all destructions of these products.

Receipts and distributions are regulated transactions if they meet the threshold criteria. Records of such transactions must be maintained for two years,

Closely monitor returned inventories pending destruction. Firms may wish to consider maintaining the returned products in a segregated area and/or limiting employee access to only those necessary to process the returned products.

Insure that these PPA products are destroyed beyond reclamation for use in the illicit production of amphetamine.

If transferring the products to another firm for destruction, accurately document the transfer and confirm the legitimacy of the firm.

Observing the above procedures will help to limit the diversion of these PPA products to the illegal manufacture of amphetamine. Questions regarding this issue may be directed to the Liaison and Policy Section at (202) 307-7297.

- 54 -

CONFIDENTIAL

WAGMDL00396023

U.S. Department of Justice                                    Chemical Handler's Manual
Drug Enforcement Administration                                          January 2004

**Appendix J**

# TO DISTRIBUTORS OF LIST I CHEMICALS:

## Acceptable Documentation of DEA Registration Status
March 1999

It has come to our attention that some persons are circumventing the registration system and fraudulently obtaining List I chemicals. These persons are forging registration applications (DEA Form 510), back dating them to before the applicable exemption deadlines (11/13/95 for non-exempt all List I chemicals; 7/12/97 for combination ephedrine drug products; and 2/03/97 for pseudoephedrine and phenylpropanolamine drug products). Copies of these falsified 510's are then presented to suppliers in order to obtain List I chemicals. Suppliers know that persons who submitted applications prior to the applicable deadline can continue to conduct business until the applications are acted upon by DEA. Many suppliers have been accepting these 510 copies as indication that the presenting companies are in compliance with the statute and regulations. This practice does not represent valid compliance with verification requirements.

DEA is alerting suppliers that copies of DEA Form 510 are not acceptable identification for sales of List I chemicals. Suppliers should only accept a registration certificate or, for companies with pending applications that were submitted prior to the applicable deadlines, a letter from DEA showing the firm's DEA chemical application control number and a statement authorizing the firm to continue business until the registration application is approved by DEA. If a supplier receives documentation that is questionable, contact the nearest DEA Diversion Group by telephone. Such proposed transactions should be considered suspicious and reportable.

DEA provides quarterly registration status updates to the Department of Commerce for the National Technical Information Systems (NTIS). Any interested party can purchase this information directly from NTIS at 1-800-553-6847.

- 55 -

WAGMDL00396024

**U.S. Department of Justice**
Drug Enforcement Administration

**Chemical Handler's Manual**
January 2004

**Appendix J**

# TO MANUFACTURERS AND DISTRIBUTORS OF LIST I AND LIST II CHEMICALS:

## Theft of List I and II Chemicals on the Rise

A large tablet manufacturer recently reported the theft of 4.8 million pseudoephedrine tablets. Not only did this loss cost the company thousands of dollars, it resulted in the diversion of product sufficient to produce four hundred pounds of methamphetamine.

Unfortunately, this problem has become increasingly common. Manufacturers and distributors of List I and II chemicals should be aware that theft of controlled chemicals is on the increase.

The Methamphetamine Control Act (MCA) has made it more difficult to obtain precursor chemicals through legitimate channels, and unsuspecting companies have found themselves the target of employee and outsider thefts of listed chemicals. The most common stolen chemicals are pseudoephedrine and ephedrine, but DEA has received reports of theft for most of the chemicals on the List I schedule.

You can help prevent this expensive problem before it begins. If you have not already done so, consider adopting policies to reduce risk, such as:
- random physical inventory checks,
- anti-theft security measures,
- and employee background investigations.

Working together, we can keep controlled chemicals out of the hands of criminals.

November 1998

- 56 -

CONFIDENTIAL

WAGMDL00396025

**U.S. Department of Justice**
Drug Enforcement Administration

**Chemical Handler's Manual**
January 2004

**Appendix J**

# IODINE IS BEING USED
# TO MAKE METHAMPHETAMINE

The Drug Enforcement Administration (DEA), and numerous state/local law enforcement authorities throughout the United States have noted an alarming trend involving illicit methamphetamine production. Methamphetamine (AKA speed, crank or meth) is fast becoming a major drug problem in the United States. We are asking all businesses engaged in the sale of iodine products to be aware of the use of iodine by clandestine methamphetamine laboratory operators.

Criminal elements routinely use iodine in the illicit production of methamphetamine. DEA is aware that these criminals are searching for sources of supply for iodine. In some instances, distributors have reported the theft of iodine from chemical storage facilities.

This notice is being provided to:

• Make you aware that iodine became a federally regulated List II chemical on 10/3/96 under the Comprehensive Methamphetamine Control Act of 1996.

• Make you aware that iodine is being used to clandestinely produce methamphetamine.

• Encourage all distributors of iodine to know their customer before they unwittingly become a supplier to a clandestine methamphetamine laboratory, and report all suspicious activity to your closest law enforcement agency, and

• Advise all distributors of iodine that it is unlawful for any person to knowingly or intentionally manufacture, distribute, export, or import any equipment, chemical, product, or material which may be used to manufacture a controlled substance or listed chemical or knowing, intending, or having reasonable cause to believe that it will be used to manufacture a controlled substance or listed chemical in violation of the Controlled Substances Act... 21 U.S.C. § 843 (a)(7). Persons who violate 21 U.S.C. § 843 (a)(7) may be subject to criminal or civil penalties.

Law enforcement authorities are asking for your cooperation in this matter.
July 22, 1999

- 57 -

CONFIDENTIAL

WAGMDL00396026

**U.S. Department of Justice**
Drug Enforcement Administration

**Chemical Handler's Manual**
January 2004

**Appendix J**

# METHYL SULFONE (AKA MSM, DMS, DIMETHYL SULFONE OR DMSO2) IS BEING USED AS A CUTTING AGENT FOR METHAMPHETAMINE

The Drug Enforcement Administration (DEA), and numerous state/local law enforcement authorities throughout the United States have noted an alarming trend involving illicit methamphetamine production. Methamphetamine (AKA speed, crank or meth) is a major drug problem in the United States. We are asking all businesses engaged in the sale of methyl sulfone products to be aware of the use of methyl sulfone by methamphetamine distributors. MSM is normally used as an animal feed supplement.

Criminal elements routinely use methyl sulfone as a cutting agent or diluent in the production of methamphetamine. DEA is aware that these criminals are searching for sources of supply for methyl sulfone. In some instances, distributors have reported the theft of methyl sulfone from chemical storage facilities.

This notice is being provided to:
• Make you aware that methyl sulfone is being used as a cutting agent or diluent in the production of methamphetamine.

• Encourage all distributors of methyl sulfone to know their customer before they unwittingly become a supplier to methamphetamine manufacturers or distributors, and to report all suspicious activity to your local DEA office or closest law enforcement agency.

• Advise all distributors of methyl sulfone that it is unlawful for any person to knowingly or intentionally manufacture, distribute, export, or import any equipment, chemical, product, or material which may be used to manufacture a controlled substance or listed chemical knowing, intending, or having reasonable cause to believe that it will be used to manufacture a controlled substance or listed chemical in violation of the Controlled Substances Act — 21 U.S.C. § 843 (a)(7). Persons who violate 21 U.S.C. § 843 (a)(7) may be subject to criminal or civil penalties.

Law enforcement authorities are asking for your cooperation in this matter.

July 30, 1999

CONFIDENTIAL

WAGMDL00396027

**U.S. Department of Justice**
Drug Enforcement Administration

**Chemical Handler's Manual**
January 2004

**Appendix J**

# SUSPICIOUS PURCHASE INDICATORS FOR SALES OF ANHYDROUS AMMONIA

Efforts by the Drug Enforcement Administration (DEA), numerous state/local law enforcement authorities and an industry anti-meth task force organized by the Agricultural Retailers Association and the Alliance of State Agri-Business Associations have been focused on raising the awareness of the theft of ANHYDROUS AMMONIA from retailer facilities and farms for the illicit production of methamphetamine. In response, several states have enacted laws against the theft of anhydrous ammonia.

As increasing levels of deterrents are put into effect, there may be increased attempts to purchase anhydrous ammonia directly from businesses engaged in the sale of agricultural supplies. The following is a list of key suspicious purchase information that should alert you to such a purchase - it is being provided to make you aware that anhydrous ammonia is being used to clandestinely produce methamphetamine.

Customer cannot answer or is evasive about agricultural use questions

Customer insists on taking possession rather than having it delivered

Customer insists on using cash, money order or cashiers check

Customer is a stranger and unfamiliar to area or your business

Customer provides suspicious business or credit information

Customer is vague or resists providing personal information.

If a customer fits any of these criteria, wait until the person has left your business, write down an accurate description of the person(s), vehicle, license number, etc., and contact the DEA or local law enforcement authorities immediately.

Revised May 2003

CONFIDENTIAL

WAGMDL00396028

**Appendix J**

# Theft of Regulated Drug Products That Contain Ephedrine or Pseudoephedrine Are Increasing

Pseudoephedrine and ephedrine are highly coveted by drug traffickers who use these chemicals to manufacture methamphetamine for the illicit market. The Drug Enforcement Administration (DEA) is receiving reports of thefts and unexplained losses of large quantities of these substances from distributors.

**To prevent thefts,** DEA strongly suggests that List I chemical handlers follow these guidelines:
- Maintain a system to control your inventory and monitor for unexplained losses or disappearances.
- Prevent employee theft by requiring employee background checks and drug testing. In addition, DEA registrants must follow the guidance of U.S. Code of Federal Regulations 21 § 1309.72 in regard to employing persons with drug felony convictions and possibly limiting their access to List I chemicals.
- Improve physical security with anti-theft measures such as maintaining stock in a segregated area, limiting employee access to stock, and operating surveillance cameras.

**In the event of theft,** DEA reminds List I chemical handlers of the regulatory requirement:
- A regulated chemical handler must immediately report thefts and losses to the nearest DEA office and should also notify state/local law enforcement and regulatory agencies. A written report must be submitted to DEA within 15 days of discovery of the theft or loss. (CFR 21 §1310.05)

**To prevent recurring thefts,** DEA recommends the following:
- List I chemical handlers should treat an individual theft or significant loss seriously and should monitor occurrences so that patterns do not remain undetected.
- When improving security after a theft, extend security improvements to all locations which store or distribute listed drug products.
- The repeated loss of small quantities of listed chemicals over a period of time may indicate a significant aggregate problem that must be reported to DEA, even though the individual quantity of each occurrence does not appear to be significant.

In an environment in which traffickers are aggressively seeking pseudoephedrine and ephedrine, List I chemical handlers should view unexplained losses as likely thefts. DEA registrants must provide effective controls and procedures to guard against theft and diversion of these List I chemicals. A chemical handler who experiences thefts and/or losses must take special action. Continuing to rely on a system that has been violated is not providing effective controls.

November 2000

CONFIDENTIAL

WAGMDL00396029