# Exhibit 14

Page 1

```
 1            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
 2
 3
     * * * * * * * * * * * * * * * * * * * * *
 4
     THE CITY OF HUNTINGTON,
 5
              Plaintiff,
 6
     vs.                               CIVIL ACTION
 7                                     NO. 3:17-01362

     AMERISOURCEBERGEN DRUG
 8   CORPORATION, et al.,
 9            Defendants.
10   _____
11   CABELL COUNTY COMMISSION,
12            Plaintiff,
13   vs.                               CIVIL ACTION
                                       NO. 3:17-01665
14   AMERISOURCEBERGEN DRUG
     CORPORATION, et al.,
15
              Defendants.
16
     * * * * * * * * * * * * * * * * * * * * *
17
18
19         Videotaped and Zoom video conference
     deposition of JAMES RAFALSKI taken by the Defendants
20   under the Federal Rules of Civil Procedure in the
     above-entitled action, pursuant to notice, before
21   Jennifer Vail-Kirkbride, a Registered Merit
     Reporter, on the 11th day of September, 2020.
22
23
24
```

Page 88

1  millions you've actually reviewed?
2      A.  Yes, I have not reviewed any of them.
3      Q.  None of the initial orders, none of the
4  follow-up orders; correct?
5      A.  No, sir.
6      Q.  So you did not personally determine whether
7  any of the flagged orders when you look at them, you
8  actually consider them to be suspicious; correct?
9      A.  Well, I think the fact that they are
10 identified by the trigger, the algorithm, makes --
11 makes them not a suspicious order.
12     Q.  Okay.  Did you individually review any of
13 them to see if you just looked at the order on its
14 face whether you would consider it to be suspicious?
15     A.  No, sir.
16     Q.  Did you individually look at any of them to
17 consider just based on the information you had about
18 the actual order whether you would consider it to be
19 likely to be diverted?
20     A.  Can you say that one more time, please.
21     Q.  Sure.  Did you look at the individual
22 orders to consider whether based on the information
23 actually reflected in the individual orders, you
24 would make the judgment that there were likely to be

1  diverted?
2      A.  If -- just so I understand what you're
3  asking, if you are definitively asking me to tell
4  you a specific order was diverted, uhm, I cannot do
5  that.  And that -- that was not part of how the
6  evaluation done and it was -- it was, basically, you
7  know, outside of -- of what I -- what I would
8  do.  You know, the volume of orders and the totality
9  of the lack of due diligence didn't require me to
10 look at a specific order one by one.
11           That would have been in my time with
12 the DEA, that would not have ever been something I
13 did at the DEA.  So, no, I didn't -- I didn't go in
14 and look at each specific order.  I relied on the
15 trigger, the methodology, to identify those orders
16 when ran against the transactional data.
17     Q.  My question is actually much simpler.  Did
18 you look at any of the individual flagged orders to
19 come to a judgment in your view as to whether when
20 you actually look at the order and the details of
21 the order, you believe that it was likely to be
22 diverted?
23     A.  I don't want to be argumentative, but I
24 think you're asking two different questions, so --

Page 90

1  or two -- it's kind of a compound question.  First,
2  the algorithm's applied to the data and that's what
3  triggers the order.  That's what brings it to my
4  report or triggers it and identifies it.  Then
5  subsequent to that would -- you're asking about the
6  evaluation of that specific order.
7     Q.  No, I am asking actually what's intended to
8  be a really simple question so maybe I can reframe
9  it.
10         You've got tens of millions of orders
11 you identify here; right?
12    A.  I do.
13    Q.  Did you look at any of those tens of
14 millions of orders in terms of the actual facts of
15 those orders to make a judgment that as to any one
16 of those tens of millions of orders, looking at the
17 order itself you believe that order is likely to be
18 diverted?
19    A.  There -- I cannot definitively look at one
20 specific order and tell you that specific order was
21 diverted, if that's your question.  I did not do
22 that and I couldn't -- I did not do that and I could
23 not do that.
24    Q.  That's not my question.  What I'm asking is

Page 285

1  understand one aspect of your flagging methodology,
2  please.  Exhibit A identifies tens of millions of
3  orders; correct?
4       A.  Yes.
5       Q.  And do I have your testimony correct that
6  you believe every single one of those orders are
7  likely to be diverted?
8       A.  I guess, I think I answered this
9  earlier.  If you -- if that question means that you
10 are asking me to definitively -- to tell you
11 definitively that every one of those orders,
12 individual orders were diverted, I don't -- I can't
13 do that, but my opinion is based on the lack of due
14 diligence, the systemic lack of due diligence, that
15 more likely than not they were.
16      Q.  All of them?
17      A.  More likely --
18      Q.  -- all of the millions were likely
19 diverted?
20      A.  More likely than not; yes, sir.
21      Q.  And where is that diversion occurring?
22      A.  I don't understand that question.  In a
23 geographic area of my evaluation of the -- the
24 distributors' distributions.

Page 286

1  Q. Where in the distribution process is that
2  diversion occurring?
3  A. Uhm, from the distributor to the pharmacy.
4  Q. So it's your testimony that there's
5  diversion of tens of minimums of pills between ABDC,
6  Cardinal, and McKesson and their pharmacies. That's
7  where the diversion is occurring?
8  A. I'm saying more likely than not. Those --
9  so -- just so we're clear on this, those, the
10 flagging mechanism or the algorithm that flags those
11 orders, those are orders that were -- were sent from
12 each distributor to pharmacies in Cabell and
13 Huntington. The first order based on the total lack
14 of due diligence, the totality of all the due
15 diligence, that it's more likely than not that those
16 orders were diverted; yes, sir.
17            MR. SCHMIDT: Move to strike as
18 nonresponsive.
19  Q. My question is where in the distribution
20 chain is the diversion occurring or is the diversion
21 more likely than not occurring? Is it at the
22 pharmacy level? Is it at the level once the
23 prescriptions have been dispensed? Is it between
24 McKesson and the pharmacy they're getting diverted?

1  Where is it?
2      A.  Well, the diversion would occur without
3  the -- with the absence of due diligence, a
4  diversion would occur through the dispensing at the
5  pharmacy and then subsequently on the street.
6      Q.  Okay.  And do you know of these tens of
7  millions of orders that you say are reasonably
8  likely to be -- that are likely to be diverted, do
9  you know how many of them you believe the diversion
10 is occurring on the street versus at the time of
11 dispensation?
12     A.  No, sir.
13     Q.  Do you know if it's 100 percent on the
14 street or less?
15     A.  I do not know, sir.
16     Q.  And when you say you believe they're likely
17 to be diverted, you keep using -- sounds to me like
18 a legalistic phrase, "more likely than not," what
19 does that mean?
20     A.  It's a -- it's a probability.  It's -- you
21 know, there's more likely than not [audio
22 distortion] something greater -- something greater
23 than -- than percentage-wise, it's more likely than
24 not that it's going to occur.  I don't know that it

Page 288

1  is defined by any specific percentage, but it's just
2  a statement if -- to look at something, would it be
3  diverted or not.  My opinion would be more likely
4  that it would than it wouldn't, based on my review.
5      Q.  And are you literally saying at some level
6  greater than 50 percent?
7      A.  I don't apply a percentage to it.
8      Q.  Is there any math you did to say more
9  likely than not 51 percent chance they're going to
10 be diverted versus 49 percent versus something else?
11     A.  No, my opinion is based on my review of the
12 conduct of the three distributors and the fact that
13 they conducted no due diligence or very limited due
14 diligence.  The policies, email communications,
15 their conduct.
16             Further -- further, when I reviewed
17 the actual suspicious orders that they identified
18 with using their own systems, I didn't see, uhm,
19 sufficient due diligence.  In many cases I saw no
20 due diligence.  So in a totality of all of those
21 circumstances, I make -- I draw to the opinion that
22 it was more likely than not that those orders were
23 diverted.
24             MR. SCHMIDT:  Move to strike

Page 289

1  everything after no as completely nonresponsive.
2           Let me ask you respectfully, sir, just
3  to focus on my questions because I don't want to
4  have to ask for more time.
5       Q.  Is there any kind of special analysis you
6  did of these orders that lets you say there's a 50
7  percent chance they are going to be diverted,
8  there's 25 percent chance, there's a 75 percent
9  chance?
10      A.  Well, my special analysis was the review I
11  did of all of the records and all of the documents
12  to draw my conclusion.  I didn't do any specific
13  analysis to put a percent on it, if that's your
14  question.
15      Q.  That's my question.  Thank you.  Did you
16  make any effort to trace these orders into the
17  Cabell County market to see if there was actual
18  diversion corresponding to these orders?
19      A.  To -- to actually -- as I -- as I stated
20  earlier, I didn't -- I can't definitively say that
21  any specific order was diverted.  I did not conduct
22  any type of an investigation or review to try to
23  identify any specific orders.  Back to my DEA
24  experience in the cases that I worked and the

Page 300

1   circumstances, community circumstances, DEA quota
2   levels, changes in prescribing practices, anything
3   like that; correct?
4       A.   Correct.
5       Q.   And so if Doctor McCann were given just
6   this example, August and everything after August
7   would be flagged; correct?
8       A.   Yes, sir.
9       Q.   And you would say that August and
10  everything after August would be likely to be
11  diverted; correct?  Under your 51 percent, more
12  likely than not rationale; correct?
13      A.   Well, it's -- I didn't say 51 percent.  And
14  if I'm using Methodology A with the due diligence
15  assumption, if the 10,100 was not investigated, if
16  there was no due diligence, the trigger is --
17  identifies the order.
18              The size, it could be 100, we settled
19  on because we don't do it a pill at a time or it
20  could be a million would stop the order, and if
21  there is no due diligence to clear that, more likely
22  than not independent of the size, any of those
23  subsequent orders could be subject to diversion
24  because the -- the -- there was no investigation to

Page 301

1   rule out they could be diverted.
2         MR. SCHMIDT:  Move to strike as
3   totally nonresponsive.
4     Q.  Let me just break down what I'm trying to
5   ask you and ask you to focus on my question.
6         Under Method A, August would be
7   flagged; correct?
8     A.  Yes.
9     Q.  And every month after August would be
10  flagged; correct?
11    A.  Yes.
12    Q.  Every month after August would be flagged
13  without looking at the diligence files; correct?
14  Just based on the assumption.
15    A.  There would be -- there would be no
16  diligence.  So I don't -- I don't anticipate --
17    Q.  Will you answer my question.
18    A.  I cannot answer that question because it --
19    Q.  Do you know that Doctor McCann did not
20  review diligence files?
21    A.  I do not believe he did.
22    Q.  Okay.  So when he flagged September,
23  October, November, December, and into Year 2, that's
24  not based on diligence file review; correct?

Page 302

1    A.  No, that's based on his running of the
2    algorithm as directed by me or requested by me.
3    Q.  Okay.  And under the algorithm, once an
4    order is flagged, everything is flagged; correct?
5    Because of an assumption; correct?
6    A.  That Doctor McCann ran; yes, sir.
7    Q.  Okay.  When you look at just this data, can
8    you tell me that the August order is more likely
9    than not, likely to be diverted?
10   A.  Yes.
11   Q.  Okay.  Can you tell me that the September
12   order is more likely than not, likely to be
13   diverted?
14   A.  Applying my standard, which is based on my
15   review of the due diligence records and the totality
16   of records, August 1st-- this August order would be
17   not cleared, no due diligence, then every subsequent
18   order would be more likely than not diverted.
19              MR. SCHMIDT:  Move to strike as
20   nonresponsive.
21   Q.  I'm asking you, sir, just based on these
22   numbers, just look at the same thing Doctor McCann
23   looked at, just these numbers, can you tell me just
24   based on these numbers that August Year 1 is more