**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*,<br><br>Defendants. | Civil Action No. 3:17-01362<br>Hon. David A. Faber |
| CABELL COUNTY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*,<br><br>Defendants. | Civil Action No. 3:17-01665<br>Hon. David A. Faber |

**REPLY IN SUPPORT OF**
**DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT:**
**NO RIGHT TO ABATEMENT**

Candor is not the hallmark of the Commission's Opposition.[1]

**Thompson's Testimony**

It is not true that the County Commission's designated representative, Ms. Thompson, only "purportedly admitted that [the Commission] lacks authority to abate the public nuisance."[2]

---

1 Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment on Plaintiff Cabell County Commission's Right to Abatement [*sic*] ("Opp.") (Dkt. No. 1083).

2 *Id.* at 12.

Nor is it true that she explained the Commission's record of inaction in terms of budget constraints. In answer to almost every question about actions the Commission might have taken to mitigate the opioid-abuse problem, she testified, "That's not part of our function," or "The Commission doesn't have those kind of functions and roles."[3] Asked whether the Commission ever considered providing addiction treatment—the centerpiece of Plaintiffs' abatement plan[4]—she testified, "No. It's not a part of county commission government."[5] Asked whether the Commission ever provided funding for treatment programs (or considered doing so), she testified, "No. It's not a function of county commission government."[6] Asked whether the Commission ever took action to limit the number of opioid prescriptions, she again testified, "No. It's not a function of county commission government."[7] And asked whether "in the view of the Commission" there was "anything that the Commission could have done to try to abate the opioid problem in Cabell County besides filing this lawsuit," Ms. Thompson answered, "No."[8] Defendants did not "mischaracterize" her testimony—indeed, did not characterize it at all, but simply quoted it, and at length. Ten times Ms. Thompson testified in one or another way that the

---

3 Appendix to Defendants' Motion for Summary Judgment: No Right to Abatement ("App"). 42–43 (Dkt. No. 1005-3) (Thompson Dep. at 40–41).

4 Plaintiffs seeks approximately $2.5 billion in total for their abatement plan. Defendants' Motion to Exclude Testimony of George Barrett Exhibit 3 at 3 ("Barrett Exhibit") (Dkt. No. 1059-3). Of that amount, $2 billion is for treatment. *Id.* at 2–3.

5 App. 51 (Thompson Dep. at 133–34).

6 *Id*. (Thompson Dep. at 134).

7 *Id*.

8 Supplemental Appendix ("Supp. App.") 2 (Thompson Dep. at 87).

Commission's "function" does not permit it to do anything to abate the alleged nuisance.[9] She did not once qualify that testimony in terms of County budget constraints.[10]

The Commission's counsel did not object to these deposition questions as seeking a legal conclusion or as irrelevant. He did not conduct a direct examination to clarify that she meant to say that "Cabell County did not take these actions in the face of budget constraints."[11] Nor did he question her to clarify that she did not really know what the limits of Commission authority are. To the contrary, the Commission's counsel questioned her to establish that:

- She was aware that the Commission had formally designated her as its 30(b)(6) witness.[12]
- She had served in that capacity in verifying pleadings and discovery responses.
- She was "intimately involved in every aspect of this lawsuit."[13]
- She made a determination as to which 30(b)(6) topics the Commission had institutional knowledge and made that determination, not on guesswork, but based "on a reasonable understanding of the function of county government."[14]

---

9 Plainly, budget constraints cannot explain why, as Ms. Thompson admitted, the Commission did not take even cost-free actions—e.g., passing an ordinance to address the opioid-abuse problem, limiting the opioid prescriptions the County would pay for, exercising its appointments to the health department board or Cabell Huntington board with an eye toward addressing the problem.

10 The passage quoted in the Opposition—"Well, there is only so much money there for each office to operate on"—was not offered as an excuse for inaction, but as an explanation for her answer two questions earlier that the Commission does not control the sheriff's budget because "[i]t sets the budget, yes. Once it sets it, it doesn't have any control of what he does with it." App. 39 (Thompson Dep. at 26).

11 *See* Opp. 15–16.

12 Supp. App. 3 (Thompson Dep. at 151) ("MR. FARRELL: She is the County Commission by the way.").

13 Supp. App. 6 (Thompson Dep. at 415).

14 *Id.* (Thompson Dep. at 416).

- She responded "in good faith to every single question that was posed in the 30(b)(6) topics."[15]
- And she had "a reasonable basis to respond to the institutional knowledge of the Cabell County Commission to the subject matters identified in the 30(b)(6) Notice."[16]

The Commission had a 30-day window to submit errata. It has done so for other witnesses,[17] but not for Ms. Thompson. In sum, even if Ms. Thompson had not been the Commission's designated representative, (i) by not objecting, (ii) by conducting a direct examination that underscored her authority, knowledge and good faith, and (iii) by declining the opportunity to clarify or correct her testimony, the Commission endorsed and adopted the testimony it now disclaims.

**The Commission's Lack of Legal Authority to Abate the Alleged Nuisance**

Ms. Thompson's testimony confirms the limited authority granted the Commission by W. Va. Code § 7-1-3kk. That provision authorizes the Commission "to abate or cause to be abated anything which the Commission determines to be a public nuisance"—i.e., to abate itself, or cause to be abated by the offending party, the nuisance. For two reasons, that provision cannot save the Commission's claims here.

First, as explained in Defendants' companion motion for summary judgment,[18] the Commission has never satisfied the precondition for itself abating, or causing Defendants to abate, the alleged nuisance. That is, the Commission has never enacted an ordinance pursuant to

---

15 *Id.*

16 Supp. App. 6–7 (Thompson Dep. at 416–17).

17 James Rafalski, Anna Lembke, and David Courtwright have all submitted errata.

18 *See* Defendants' Memorandum in Support of Motion for Summary Judgment: Standing (Dkt. No. 238).

§ 7-1-3kk that defines the nuisance-causing conduct. Absent an ordinance, the Commission effectively concedes that the State comprehensively regulates the sale and distribution of pharmaceuticals and preempts the field.[19]

Second, it is not true that the Commission "[s]eeks an [a]ffirmative [i]njunction to [a]bate."[20] It does not seek an injunction of any kind. In moving to sever all claims but the public nuisance claim, the Commission declared its intention "to seek ***only*** money damages for the 'elimination of hazards to public health and safety and to abate or cause to be abated … a public nuisance.'"[21] Nine months later, the Commission's experts have made good on that statement of intent. They offer no opinions in support of enjoining Defendants to do, or refrain from doing, anything, but instead opine that Defendants should pay the Commission $2.5 billion.[22]

Thus, when the Commission argues that the "West Virginia Supreme Court of Appeals long has held that an injunction to abate a public nuisance may take the form of either a

---

[19] The Commission contends that the State cannot be said to comprehensively regulate drug distribution and sale only because of "*W. Va. Code § 7-1-3kk's conferral of authority* on Cabell County and other County Commissions to abate the public nuisance harms of the opioid epidemic in their communities." Opp. 10 (emphasis added).

It is plain that the State's regulation is comprehensive because the Legislature has not delegated to county commissions any authority to register or license wholesale distribution, to control which medications they distribute or in what amount, to impose safeguards for ensuring the physical security of the medications, or to require reporting of any kind. The State alone exercises that authority. Accordingly, even had the commission enacted an ordinance pursuant to § 7-1-3kk that defines the nuisance-causing conduct (it has not), the ordinance would be preempted by the State's comprehensive regulation of the sale and distribution of pharmaceuticals.

[20] Opp. 4.

[21] Plaintiffs' Motion to Sever at 2, *In re Nat'l Prescription Opiate Litig.* ("MDL"), 1:17-md-02804-DAP, Dkt. No. 2989 (N.D. Ohio Dec. 13, 2019) (emphasis in original).

[22] Barrett Exhibit at 3.

restraining injunction to prevent a prospective nuisance or … an affirmative injunction to effectuate remediation of an existing or continuing nuisance,"[23] the Commission begs the question of whether the Supreme Court has ever held that, in the absence of any injunction, a county commission can seek payment of a pot of money as "abatement." The Court never has.

None of the three West Virginia cases cited by the Commission—*Duff v. Morgantown Energy Assoc.*, *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, and *Weston v. Ralston*[24]—considers, much less endorses, the creation of a fund, payable to a county commission, for nuisance abatement. While the Commission claims that the costs for its abatement plan are "akin to the environmental cleanup costs sought and found recoverable to abate the public nuisance in *Kermit Lumber*,"[25] that is not true. The Department of Environmental Protection's lawsuit did not seek payment of monies in the guise of "abatement," but rather "to compel [Kermit Lumber] to clean up the hazardous waste at their business site and" to impose "civil penalties and damages …." *Kermit Lumber*, 488 S.E.2d 901, 906 (W. Va 1997). The Commission, in contrast, (i) does not seek to have Defendants do anything, (ii) lacks the authority to impose penalties, and (iii) has disclaimed damages.[26] Thus, the Commission is unable to cite even a single example of a court awarding the relief it seeks in West Virginia's 150 years of nuisance jurisprudence.

---

[23] Opp. 5.

[24] *Id.*

[25] *Id.*

[26] The Supreme Court in *Kermit Lumber*, moreover, did not hold that cleanup costs were recoverable; it held only that the Department of Environmental Protection's claims were not time-barred and remanded for further proceedings consistent with that ruling. *See* 488 S.E.2d at 926.

It also is not true that "[f]ederal and state courts long have recognized that an injunction to abate a public nuisance … ***very often*** *must* direct the liable party to fund or undertake affirmative remedial measures to abate an existing and continuing nuisance."[27] In fact, the Commission points to just ***one*** case—a California intermediate appellate court decision, *People v. ConAgra Grocery Products*—where a court has directed a defendant to fund remedial measures to be undertaken by a plaintiff. The federal court in *City of San Mateo v. Peabody Energy Corp.* merely acknowledged that that was the law "[i]in California," citing the *ConAgra* decision. 958 F.3d 717, 724 (8th Cir. 2020). Likewise, in *United States v. Price*, 688 F.2d 204, 213 (3d Cir. 1982), the court did not discuss the creation of a fund that could be spent by the government; it simply recognized that when ***a defendant*** is ordered "to obey or perform the act mandated by an injunction," it may have to spend money.[28] And the Georgia and Indiana decisions cited by the Commission note only that ***a defendant*** may be enjoined to take affirmative action—which is not the relief the Commission seeks here.[29] As for the MDL decision cited by the Commission, it was *dicta* offered in ruling on the defendants' *Daubert* motions ("the Court offers the following general observations on the relevance of the Challenged

---

[27] Opp. 6 (italics in original; bold italics added).

[28] Notably, the court affirmed the district court's *denial* of a preliminary injunction that would have required the defendant to fund a diagnostic study and stated in *dicta* that funding a study "may" be appropriate "if the traditional balancing process tips decidedly in favor of plaintiff." 688 F.2d at 213.

[29] Opp. 6–7 (citing *Hutton v. School of Hammond*, 142 N.E. 427 (Ind. 1924), and *Fox v. Norfolk S. Corp.*, 802 S.E.2d 319 (Ga. Ct. App. 2017). The Commission miscites the Restatement (Second) of Torts § 824(b), which does not define "abatement," but rather the conduct that can constitute a nuisance (i.e., both an affirmative act and a failure to act). *See* Opp. 7.

Experts' opinions").[30]  The MDL court cited no federal or state case ordering payments to an abatement fund.

## CONCLUSION

The Commission is the wrong plaintiff pursuing the wrong relief.  As West Virginia law has required for more than a century, and as § 7-1-3kk provides, the Commission must define the nuisance by ordinance before it can seek abatement.  The Commission has not done so.  West Virginia law is also clear that abatement is synonymous with injunctive relief.  The Commission, however, does not seek injunctive relief; it seeks "***only*** money damages for the 'elimination of hazards to public health and safety and to abate or cause to be abated … a public nuisance.'"  It is the State itself that comprehensively regulates drug distribution and sale, such that if a county commission does not act by ordinance to define the nuisance, disclaims the recovery of damages, and does not seek to enjoin nuisance-causing conduct—as is true of the Cabell County Commission—it lacks any legal basis to abate an alleged nuisance.  Ms. Thompson was right all along.

October 30, 2020                                                      Respectfully submitted,

---

[30] Order Denying Defendants' Motion to Exclude Expert Testimony Purporting to Relate to Abatement Costs and Efforts  at 2–3 MDL Dkt. No. 2519 (N.D. Ohio Aug. 26, 2019) (cited at Opp. 7–8).

**CARDINAL HEALTH, INC.**

*/s/ Steven R. Ruby*  
Michael W. Carey (WVSB No. 635)  
Steven R. Ruby (WVSB No. 10752)  
David R. Pogue (WVSB No. 10806)  
Raymond S. Franks II (WVSB No. 6523)  
**CAREY DOUGLAS KESSLER & RUBY PLLC**  
901 Chase Tower, 707 Virginia Street, East  
P.O. Box 913  
Charleston, WV 25323  
Telephone: (304) 345-1234  
Facsimile: (304) 342-1105  
mwcarey@csdlawfirm.com  
sruby@cdkrlaw.com  
dpogue@cdkrlaw.com  
rfranks@cdkrlaw.com  

*/s/ Enu Mainigi*  
Enu Mainigi  
F. Lane Heard III  
Ashley W. Hardin  
Jennifer G. Wicht  
**WILLIAMS & CONNOLLY LLP**  
725 Twelfth Street NW  
Washington, DC 20005  
Tel: (202) 434-5000  
Fax: (202) 434-5029  
emainigi@wc.com  
lheard @wc.com  
ahardin@wc.com  
jwicht@wc.com  


**AMERISOURCEBERGEN DRUG CORPORATION**

*/s/ Robert A. Nicholas*  
Robert A. Nicholas  
Shannon E. McClure  
**REED SMITH LLP**  
Three Logan Square  
1717 Arch Street, Suite 3100  
Philadelphia, PA 19103  
Tel: (215) 851-8100  
Fax: (215) 851-1420  
rnicholas@reedsmith.com  
smcclure@reedsmith.com  

*/s/ Gretchen M. Callas*  
Gretchen M. Callas (WVSB #7136)  
**JACKSON KELLY PLLC**  
Post Office Box 553  
Charleston, West Virginia 25322  
Tel: (304) 340-1000  
Fax: (304) 340-1050  
gcallas@jacksonkelly.com

**MCKESSON CORPORATION**

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
**FLAHERTY SENSABAUGH BONASSO PLLC**
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*/s/ Timothy C. Hester*
Timothy C. Hester
Paul W. Schmidt
Christian J. Pistilli
Laura Flahive Wu
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
pschmidt@cov.com
cpistilli@cov.com
lflahivewu@cov.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*,<br><br>Defendants. | Civil Action No. 3:17-01362<br>Hon. David A. Faber |
| CABELL COUNTY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*,<br><br>Defendants. | Civil Action No. 3:17-01665<br>Hon. David A. Faber |

**CERTIFICATE OF SERVICE**

I, Steven R. Ruby, counsel for Defendant Cardinal Health, Inc., do hereby certify that on this 30th day of October 2020, **Reply In Support Of Defendants' Joint Motion For Summary Judgment: No Right To Abatement** was served electronically upon all counsel of record.

/s/ Steven R. Ruby
Steven R. Ruby (WVSB No. 10752)