IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON, <br><br> Plaintiff, <br><br> v. <br><br> AMERISOURCEBERGEN DRUG CORPORATION, *et al.*, <br><br> Defendants. | Civil Action No. 3:17-01362 <br> Hon. David A. Faber |
| CABELL COUNTY COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> AMERISOURCEBERGEN DRUG CORPORATION, *et al.*, <br><br> Defendants. | Civil Action No. 3:17-01665 <br> Hon. David A. Faber |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT RE NUISANCE**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii
INTRODUCTION ............................................................................................................................. 1
ARGUMENT .................................................................................................................................... 2
    I.    West Virginia Has Not Extended Public Nuisance Law to Products-Based Claims ........... 2
    II.   Defendants' Alleged Conduct Did Not Interfere with a Public Right ................................ 4
CONCLUSION .................................................................................................................................. 9

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415 (3d Cir. 2002) .................................... 7

*Maryland Cas. Co. v. Burley*, 345 F.2d 138 (4th Cir. 1965) .......................................................... 3

**STATE CASES**

*D.C. v. Beretta, U.S.A., Corp.*, 872 A.2d 633 (D.C. 2005) ............................................................ 7

*Delaney v. Deere & Co.*, 999 P.2d 930 (2000) .............................................................................. 3

*Lemongello v. Will Co.*, No. 02-C-2952, 2003 WL 21488208 (W. Va. Cir. Ct. June 19, 2003) ............................................................................................................................ 3

*People ex rel. Spitzer v. Sturm, Ruger & Co.*, 761 N.Y.S.2d 192 (2003) ....................................... 7

*Potter v. Chicago Pneumatic Tool Co.*, 694 A.2d 1319 (Conn. 1997) ............................................ 3

*Sharon Steel Corp. v. Fairmont*, 334 S.E.2d 616 (W.V. 1985) ...................................................... 2

*Sills v. Smith & Wesson Corp.*, 2000 WL 33113806 (Del. Super. Ct.) .......................................... 7

*State ex rel. Miller v. Stone*, 216 W.Va. 379 (2004) ..................................................................... 4

*State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 488 S.E.2d 901 (1997) ............... 3

*State v. Lead Indus., Ass'n, Inc.*, 951 A.2d 428 (R.I. 2008) .................................................. 5, 6, 7

**OTHER AUTHORITIES**

Restatement of the Law 2d, Torts (1965) ................................................................................ 3, 4, 7

Restatement (Third) of Torts ..................................................................................................... 3, 4, 8

# INTRODUCTION

Plaintiffs urge the Court to "apply West Virginia's law as it finds it." Opp. 14 (Dkt. 1077). We concur. That, after all, is what the *Erie* doctrine requires. Yet Plaintiffs ask this Court to expand public nuisance law to cover a category of alleged conduct to which the Supreme Court never has applied it. The West Virginia Supreme Court has never recognized a public nuisance claim based on the distribution and subsequent misuse of a product. Thus, Plaintiffs ask this Court not to apply West Virginia law as it finds it, but to undertake a dramatic expansion of that law. This Court should not do so—indeed, under *Erie*, it cannot do so.

Plaintiffs also distort public nuisance law by contending that they can satisfy the "public right" element of their claims merely by showing the widespread effects of the opioid epidemic. That is wrong for two reasons. First, the question is not how widespread are the effects of the opioid abuse crisis, or how great its impact; rather, the question is the ***nature of the right*** implicated by Defendants' alleged conduct. Plaintiffs fail to come to terms with the distinction between public rights, which can provide the basis for public nuisance claims, and rights that are private in nature, which cannot. They ignore the Restatement's explanation of the distinction— i.e., that the individual right not to be defamed or defrauded or injured is a private right. That distinction is plain here. Defendants allegedly caused certain City and County residents to become addicted to opioids or to overdose. Addiction and death, however, are personal injuries and implicate *private* rights.

Second, and relatedly, Plaintiffs define "public right" in a way that leaves no room for private rights. If Plaintiffs' approach were accepted, then every products liability claim—every claim that a badly designed product or product with inadequate warnings harmed a large number of users—would be a public nuisance claim. That is not the law. The fact that the private rights of many persons are affected by a defendant's conduct does not make for a public nuisance.

Courts therefore almost uniformly have rejected claims that the "over-supply" of lead paint to residential customers or guns to urban buyers constituted interferences with public rights, no matter how many residences contained lead paint residue or how many city residents were adversely affected by gun violence. And no West Virginia court has ever held that a defendant's conduct interfered with a public right because the broader community was indirectly affected or suffered "collateral damage." Opp. 4. This Court should not be the first to do so.

## ARGUMENT

**I.        West Virginia Has Not Extended Public Nuisance Law to Products-Based Claims**

Defendants demonstrated in their opening brief that, for more than 150 years, the West Virginia Supreme Court has limited nuisance law to cases involving interference with public property or resources. Br. 3–4 (Dkt. 1004). A comprehensive list of West Virginia public nuisance cases can be found in *Sharon Steel Corp. v. Fairmont*, 334 S.E.2d 616, 621 (W.V. 1985). Every single one of those cases involves public property or resources. Not a single one involves distribution of a product.

Plaintiffs nevertheless contend that West Virginia law "fully encompasses Plaintiffs' claims here" for three reasons. Opp. 14. None withstands scrutiny. First, they urge the Court to ignore 150 years of precedent because "Defendants do not … cite any authority agreeing with their interpretation of *Sharon Steel*." Opp. 9. But Defendants are not "interpreting" *Sharon Steel*—they are making the factual point, set forth by *Sharon Steel*'s catalogue of prior public nuisance cases, that the West Virginia Supreme Court never has recognized a public nuisance claim based on products. The precedent speaks for itself.[1]

---

[1]   As Defendants explained in their opening brief, West Virginia is not alone. Most courts across the country have refused to extend public nuisance law to cover products-based claims. Br. 5–6 and n.6 (collecting cases).

2

Second, Plaintiffs fall back on the "flexible" definition of public nuisance set forth in *Sharon Steel* and cite *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 488 S.E.2d 901 (1997), for the proposition that a public nuisance can be ***anything*** that injures the health, safety, or morals of the public. Opp. 9. But *Kermit Lumber* was a hazardous-waste dumping case that involved pollution of land and a public river. *Id.* at 906. Nothing in that case supports a claim that the West Virginia Supreme Court would recognize a products-based public nuisance claim. The state trial court opinions in the opioid litigation that have relied on that decision to conclude that West Virginia nuisance law extends to product-based claims (1) are largely devoid of analysis, (2) in one case, was adopted verbatim from a proposed order submitted by plaintiffs' counsel, and (3) are neither binding on this Court nor deserving of deference. *See Maryland Cas. Co. v. Burley*, 345 F.2d 138 (4th Cir. 1965) (federal court sitting in diversity not bound by decisions of a state trial court).[2]

Third, Plaintiffs contend that the Court should ignore Section 8 of the Restatement (Third) of Torts and its explanation that public nuisance does not encompass products-based claims because the West Virginia Supreme Court has not adopted the Third Restatement.[3] Opp. 13. Plaintiffs acknowledge, however, that West Virginia has cited the Restatement (Second) of Torts approvingly. *Id.* at 14. The Third Restatement does not set forth a new principle of public

---

[2] The state trial court opinion in *Lemongello v. Will Co.*, No. 02-C-2952, 2003 WL 21488208, at *2 (W. Va. Cir. Ct. June 19, 2003)—the only non-opioid West Virginia case cited by Plaintiffs—contains no analysis whatsoever for its holding that a public nuisance claim could lie for negligent distribution of handguns and never mentions, much less reconciles its holding with, West Virginia precedent limiting public nuisance to property and public resources.

[3] Plaintiffs generally criticize the Third Restatement, Opp. 13, but none of the cases they cite involve public nuisance claims. And some of them were decided many years before Section 8 was even drafted in 2014. *See, e.g.*, *Delaney v. Deere & Co.*, 999 P.2d 930 (2000), *Potter v. Chicago Pneumatic Tool Co.*, 694 A.2d 1319 (Conn. 1997).

nuisance law. Br. 7 n.8. Instead, it explains that the Second Restatement was never meant to permit product-based nuisance claims, and should not be so interpreted. To the extent that courts or parties have relied on the Second Restatement to support such claims, that was error.[4] Thus, the very provisions of the Second Restatement that Plaintiffs say controls are properly interpreted as rejecting product-based nuisance claims. Br. 3, 7.[5]

In sum, there is no basis in West Virginia precedent to extend public nuisance claims to the type asserted by Plaintiffs—one based on the alleged "oversupply" of an FDA-approved medication by DEA-registered and state-licensed wholesale distributors. This Court must take West Virginia law as it finds it and decline to expand state law in the manner requested by Plaintiffs. Br. 2–7 and n.3.

## II. Defendants' Alleged Conduct Did Not Interfere with a Public Right

Plaintiffs contend that they have alleged that Defendants interfered with a public right because "the effects of the opioid epidemic are far-reaching." Opp. 1. But that is not the question. The legal question before the Court instead is whether Defendants' "conduct involves a significant interference" with a public right. Restatement (Second) Torts § 821B.[6] Plaintiffs allege that Defendants failed to follow federal regulations and shipped too many prescription

---

[4] Plaintiffs are wrong in asserting that the West Virginia Supreme Court of Appeals' refusal to undertake discretionary review of interlocutory trial court rulings can be considered a blessing of those rulings. The Supreme Court of Appeals' "rejection of an application for appeal or a petition for an extraordinary writ generally is not an indication that [it] find[s] the lower court's judgment correct unless [it] specifically state[s] as much"—which it has not done in the opioid cases. *State ex rel. Miller v. Stone*, 216 W.Va. 379, 382 n.3 (2004).

[5] Plaintiffs observe that Section 8 does not apply to statutory public nuisance claims brought by public officials, Opp. 14 n.8, but that is irrelevant here because Plaintiffs do not assert any statutory public nuisance claims. Section 8 clearly is intended to govern common law claims like the ones asserted by Plaintiffs. Third Am. Compl. ¶¶ 1401–1450.

[6] All emphasis herein has been added and internal citations omitted.

opioid medications to pharmacies and hospitals in Cabell/Huntington, and that the "oversupply" of pills caused individual users to become addicted to opioids. Thus, the claim is that individuals were exposed to too many medications and were injured (became addicted) as a result. These allegations implicate only private rights—the "individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured." *Id.*, cmt. g.

The fact that Defendants' conduct is alleged to have interfered with many people's individual rights does not change the character of the right. *State v. Lead Indus., Ass'n, Inc.*, 951 A.2d 428, 453 (R.I. 2008) ("a public right is more than an aggregate of private rights by a large number of injured people"). Nor does the fact that the injuries to these individuals had significant impact on the broader community change the character of the right. For example, many individuals in a community might be injured by defectively designed airbags in vehicles. And those injuries could have substantial adverse health, economic, and mental impact not only on those injured, but by others in the community. But a vehicle occupant's claim that he or she was injured by a defective airbag is a quintessential personal injury claim involving an interference with private rights, even if there are adverse effects on the public and mental health and economic well-being of a broad swath of the community as a result of such injuries. Thus, the individual injuries caused by the defective airbag can have "far reaching" consequences for others, not just the person directly injured. But that does not establish that the airbag manufacturer interfered with a public right. And that is true whether one person suffers injury or if thousands of individuals are injured due to defective airbags. The invasion remains only to private rights.

So, too, here. If Defendants shipped too many pills and individuals became injured (addicted) as a result, then (at most) Defendants have interfered with those individuals' private

5

rights not to be injured—but no public right has been implicated. The *Lead Industries* and *City of Chicago* cases make this very point. In *City of Chicago*, the plaintiffs alleged the exact same type of widespread public harm as Plaintiffs here allege—"a higher level of crime, death, and injuries to Chicago citizens, a higher level of fear, discomfort, and inconvenience to the residents of Chicago, and increased costs to the [city] to investigate and prosecute crimes caused by the illegal possession and use of the firearms brought into Chicago." 821 N.E.2d at 1115–16; Opp. 4 (describing the harm from the opioid crisis as a "war zone"). But the Illinois Supreme Court rejected the notion that the breadth of the impact of gun violence on the community as a whole was sufficient to establish that gun manufacturers or distributors had interfered with any public right in over-supplying or mis-marketing handguns:

> [W]e do not intend to minimize the very real problem of violent crime and the difficult tasks facing law enforcement and other public officials. Nor do we intend to dismiss the concerns of citizens who live in areas where gun crimes are particularly frequent. Rather, we are reluctant to state that there is a public right to be free from the threat that some individuals may use an otherwise legal product (be it a gun, liquor, a car, a cell phone, or some other instrumentality) in a manner that may create a risk of harm to another.

*Id.* at 1116.

The Rhode Island Supreme Court held the same with respect to lead paint. The widespread poisoning of children from lead paint in houses no doubt had far-reaching impact on more than just the injured children and their families, but that did not change the essential character of the rights at issue from private to public. *Lead Indus.*, 951 A.2d 428, 436, 453 (R.I. 2008). As the court explained, it was "undisputed that lead poisoning constitutes ***a public health crisis*** that has plagued and continues to plague this country, particularly its children," but "[t]he state's allegation that defendants have interfered with the 'health, safety, peace, comfort or convenience of the residents of the [s]tate' standing alone does not constitute an allegation of interference with a public right." *Id.* at 453. Rather, "[t]he term public right is reserved more

6

appropriately for those indivisible resources shared by the public at large, such as air, water, or public rights of way." *Id.*

Plaintiffs assert that these two cases are "unpersuasive" because they are from outside West Virginia, but both Rhode Island and Illinois follow the Restatement with respect to their common law of public nuisance, just as does West Virginia. Moreover, Illinois follows the exact definition of nuisance quoted by Plaintiffs from *Kermit Lumber*—"the doing of or the failure to do something that injuriously affects the safety, health or morals of the public, or works some substantial annoyance, inconvenience or injury to the public." *City of Chicago*, 821 N.E.2d at 1113; Opp. 9. Rhode Island uses a similar definition: "public nuisance is an act or omission which obstructs or causes inconvenience or damage to the public in the exercise of rights common to al." *Lead Indus.*, 951 A.2d at 446. Accordingly, there is nothing peculiar about the law of either Illinois or Rhode Island with respect to public nuisance that renders the careful, detailed analysis of its courts "unpersuasive" in this case.[7]

By contrast, the MDL court's decisions purportedly applying Ohio law are unpersuasive. Both Plaintiffs and the MDL court relied on language in the Second Restatement indicating that an "unreasonable interference" includes acts that "significantly interfere with public health, safety, peace, comfort or convenience." Opp. 7; *see* 4 Restatement of the Law 2d, Torts (1965), § 821B(1)-(2). But that analysis confuses the separate questions of (1) whether a public right

---

[7] Plaintiffs also point to a small number of cases that committed the analytical error identified in the Third Restatement and allowed public nuisance claims to proceed against handgun manufacturers. Opp. 12. But, even before the Third Restatement was published, the better-reasoned cases have consistently rejected such claims. *See, e.g.*, *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 421 (3d Cir. 2002); *D.C. v. Beretta, U.S.A., Corp.*, 872 A.2d 633, 651 (D.C. 2005); *People ex rel. Spitzer v. Sturm, Ruger & Co.*, 761 N.Y.S.2d 192, 196 (2003); *Sills v. Smith & Wesson Corp.*, 2000 WL 33113806, at *7 (Del. Super. Ct.); *Penelas v. Arms Tech.*, Inc., 1999 WL 1204353, at *4 (Fla. Cir. Ct. Dec. 13, 1999), *aff'd*, 778 So. 2d 1042 (Fla. App. 2001).

7

exists in the first place and (2) whether an unreasonable interference has occurred. Defendants do not dispute that one way in which a public nuisance can occur is through impacts on public health, such as when pollution affects a community's drinking water supply. But other public health issues, such as obesity or alcohol abuse, are not public nuisances and do not implicate public rights. Thus, contrary to Plaintiffs' and the MDL's court's suggestion, an impact on the public health does not itself establish a claim for public nuisance—a public right is also required. In essence, the MDL court fell into the trap recognized by the Third Restatement when it observed that many acts could "be described as invading the rights of the public," but that this expansive view is "unsound" and strays "outside the traditional ambit of the tort." Restatement (Third) of Torts: Liab. for Econ. Harm § 8 (2020), cmt. b.

In sum, no one disputes that the crisis of drug addiction and misuse has had significant impact on the Cabell-Huntington community. But even if Defendants' conduct could be said to be a cause of that harm (it cannot), that harm does not implicate any public right.[8] No West Virginia case holds that a public right is implicated merely because an injury to an individual, or to many individuals, creates a wide circle of collateral damage. If that were the case, then public nuisance claims could be brought against any maker or seller of a product for harms caused by those products. The West Virginia Supreme Court has given no indication that it would sanction such an unprecedented expansion of public nuisance law, and it is not this Court's role, sitting in diversity, to expand West Virginia law in this way.

---

[8] Plaintiffs claim that they are seeking to abate harm to the entire community, but of the total abatement costs sought by Plaintiffs, more than 81 percent is comprised of costs to treat individual injuries such as opioid use disorder, HIV, neonatal abstinence syndrome, hepatitis B and C, infective endocarditis, and other purported addiction co-morbidities. Dkt. 1069.

8

## CONCLUSION

For the reasons given herein, and those in Defendants' opening brief, Dkt. 1004, the Court should grant summary judgment to Defendants because Plaintiffs' public nuisance claim is not recognized under West Virginia law.

Dated: October 30, 2020                                      Respectfully submitted,

**CARDINAL HEALTH, INC.**

*/s/ Steven R. Ruby*
Michael W. Carey (WVSB No. 635)
Steven R. Ruby (WVSB No. 10752)
David R. Pogue (WVSB No. 10806)
Raymond S. Franks II (WVSB No. 6523)
**CAREY DOUGLAS KESSLER & RUBY PLLC**
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
dpogue@cdkrlaw.com
rfranks@cdkrlaw.com

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
Jennifer G. Wicht
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard @wc.com
ahardin@wc.com
jwicht@wc.com

**AMERISOURCEBERGEN DRUG CORPORATION**

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
**JACKSON KELLY PLLC**
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

**MCKESSON CORPORATION**

<table>
<tr><td>

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
**FLAHERTY SENSABAUGH BONASSO PLLC**
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

</td><td>

*/s/ Timothy C. Hester*
Timothy C. Hester
Paul W. Schmidt
Christian J. Pistilli
Laura Flahive Wu
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
pschmidt@cov.com
cpistilli@cov.com
lflahivewu@cov.com

</td></tr>
</table>

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*,<br><br>    Defendants. | Civil Action No. 3:17-01362<br>Hon. David A. Faber |
| CABELL COUNTY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*,<br><br>    Defendants. | Civil Action No. 3:17-01665<br>Hon. David A. Faber |

**CERTIFICATE OF SERVICE**

I, Steven R. Ruby, counsel for Defendant Cardinal Health, Inc., do hereby certify that on this 30th day of October 2020, **Reply In Support Of Defendants' Motion For Summary Judgment Re Nuisance** was served electronically upon all counsel of record.

　　　　　　　　　　　　　　　　　　　　  /s/ Steven R. Ruby  
　　　　　　　　　　　　　　　　　　　　Steven R. Ruby (WVSB No. 10752)