IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, et al.,<br><br>    Defendants. | Civil Action No. 3:17-01362<br>Hon. David A. Faber |
| CABELL COUNTY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, et al.,<br><br>    Defendants. | Civil Action No. 3:17-01665<br>Hon. David A. Faber |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO EXCLUDE EXPERT TESTIMONY FROM G. CALEB ALEXANDER
<u>PURPORTING TO RELATE TO ABATEMENT COSTS AND EFFORTS</u>**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1
ARGUMENT ........................................................................................................................ 2
    A.    Alexander's Proposed Abatement Plan Is Neither Customized Nor Tailored To The Needs And Circumstances In Cabell County And Huntington. ................................................................................................ 2
    B.    Failure to Account For or Allocate Costs .............................................. 4
    C.    Failure to Distinguish Between the Effects of Prescription Opioid Medications and Illegal Street Drugs ....................................................... 6
    D.    This Court Should Not Adopt Judge Polster's Opinion As It Relates To Alexander .................................................................................................. 6
CONCLUSION .................................................................................................................... 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bourne v. E.I. DuPont De Nemours & Co.*,
   189 F. Supp. 2d 482 (S.D. W. Va. 2002)..................................................................................2

*In re: National Prescription Opiate Litigation*,
   No. 1:17-MD-2804, 2019 WL 4043938 (N.D. Ohio August 26, 2019) ....................................7

*Osborne v. Robinette*,
   No. Civ. No. 05-0106, 2006 WL 5309949 (S.D. W. Va. Oct. 4, 2006) ....................................4

**INTRODUCTION**

As Defendants explained in their opening brief, the everything-but-the-kitchen-sink abatement plan offered by Dr. Caleb Alexander is neither helpful to the Court nor does it fit the facts of this case. That is because Alexander's plan does not answer the question this Court must answer if abatement is found to be an appropriate remedy: What, if anything, needs to be done now—*that is not already being done*—to abate a public nuisance *in Cabell County and the City of Huntington* allegedly caused by *Defendants'* wrongful conduct. Alexander's laundry list of programs—many of which are already in place and wholly funded by third-party government agencies and entities—fails to fit the facts on the ground in both Cabell County and Huntington. Nor does it make any attempt to identify which programs are necessary to abate Defendants' alleged misconduct, as opposed to the misconduct of other actors that Plaintiffs do not dispute contributed to the opioid abuse problem in Cabell County and Huntington. It thus will be entirely unhelpful to the Court.

Plaintiffs' opposition fails to address the central problems with Alexander's plan. First, they insist that it is "customized" to fit the situation in Cabell County and Huntington, but that assertion is flat wrong and contradicted by Alexander himself, who readily admitted during his deposition that he was *never asked* to do such "customizing" and that he *never considered* the specific, unmet needs of Cabell County and Huntington—all of which undermine the plan's reliability. Second, Plaintiffs insist that Alexander's plan is "comprehensive." But that "comprehensiveness" actually supports Defendants' motion, because Alexander's plan is an exhaustive laundry list and the product of a methodology that ignored the needs of Cabell County and Huntington. Given this, Alexander's plan is anything but helpful—as is required at the *Daubert* stage—because the actual work of "customizing" his plan to fit the facts of this case remains undone due to his complete failure to analyze unmet needs. *Bourne v. E.I. DuPont De*

1

*Nemours & Co.*, 189 F. Supp. 2d 482, 495 (S.D. W. Va. 2002) (recognizing that part of the *Daubert* analysis "focuses on whether the expert's testimony will be helpful to the trier of fact in deciding a fact in issue."). Third, Plaintiffs improperly try to flip the burden ***onto Defendants*** to prove that Plaintiffs will not have to pay certain costs associated with Alexander's proposed plan, even though it is Plaintiffs' obligation to present evidence that they are entitled to the relief that they seek.

Because Alexander's purported abatement plan is not in any way tailored to addressing Plaintiffs' alleged injury or Defendants' alleged wrongful conduct, his testimony lacks fit and should be excluded from this case.

## ARGUMENT

**A.  Alexander's Proposed Abatement Plan Is Neither Customized Nor Tailored To The Needs And Circumstances In Cabell County And Huntington.**

Alexander's report and deposition testimony acknowledge that "[t]here are literally dozens or hundreds of different programs that have been deployed over time in the City of Huntington and Cabell County." Ex. B, Alexander Dep. Tr. ("Tr.") 284:1-10. But Alexander fails to address the critical question the Court will face if it determines that Defendants are liable and that abatement is an appropriate remedy for Defendants' alleged wrongful conduct—specifically, what are the *unmet* needs in Cabell County and Huntington, how might those unmet needs be addressed in the future, and to what extent, if any, would or could the costs associated with addressing those unmet needs be paid for by Cabell County and Huntington. Alexander admits that he has ***not*** done this. *See* Tr. 256:11-18 ("Generally would you agree with me that virtually every aspect of your proposed abatement, the programs and interventions you have in the plan, there is some aspect of that already in place in [the Communities]? That's true, isn't it? A. Yes. … I believe that's the case."); *see also* Tr. 329:12-16; Tr. 329:2-330:4.

To be clear, while Alexander's report identifies a number of existing programs in Cabell County and Huntington, it is little more than a recitation of what is already in place without any analysis of whether those programs are inadequate or insufficient in any way.[1]  *See* Mot. at 9-12. Specifically, Alexander conceded that he did not account for the existing capacity in some of the most critical programs in Cabell County and Huntington, including those for treatment, addiction helplines, coordination, and housing.  *See* Mot. at 11.  And despite his acknowledgment that considering unmet needs is an important part of any abatement plan, he did not undertake that analysis in this case: "Q.  … Isn't it a good idea when you're formulating and proposing an abatement plan to see whether or not there's an unmet need in that particular community?  And you haven't done that here.  Isn't that true? … A.  Yeah, I did not perform a comprehensive needs assessment that included collecting primary data from individuals residing within the County …." Tr. at 327:5-16.

Plaintiffs completely disregard these shortcomings—which Alexander himself acknowledges—and instead try to distract the Court with pronouncements that Alexander's "plan is filled with references to local and state abatement programs," and "is … grounded in local sources and data."  Resp. at 11.  Those statements may be true, but they only tell the Court something that is the proper subject of fact—not expert—testimony; *i.e.*, that certain programs are offered in the City and County.  This recitation will not help the Court actually identify any ***additional*** programs and interventions necessary to abate the alleged public nuisance.  Nor will it

---

[1] Despite Plaintiffs' assertion that Alexander engaged in careful study of the existing programs, on several occasions he was unable to articulate what those programs did or how they performed. *See, e.g.,* Tr. at  212:17- ("I did not conduct any comprehensive sort of program evaluation of the performance of the interventions to date."); Tr. 229:10-16 (admitting lack of familiarity with the Great Rivers Regional System for Addiction Care); Tr. 283:3-19; 284:11-24 (admitting lack of familiarity with the Prevention First program).

3

help to identify whether programs already in place require additional capacity beyond that already being provided. Alexander's so-called "comprehensive" abatement plan does neither, and as a result, it must be excluded. *See, e.g.*, *Osborne v. Robinette*, No. Civ. No. 05-0106, 2006 WL 5309949, at *5 (S.D. W. Va. Oct. 4, 2006) (admitting in part expert testimony where it was clear that the expert had studied and applied the specific circumstances of the case when rendering his opinion).

B.     **Failure to Account For or Allocate Costs**

Plaintiffs' response simply ignores the fact that Alexander's abatement testimony does not address the central, $2.5 billion question at issue—who should bear the costs of any abatement interventions, if ordered by the Court, going forward? Alexander's opinions do not address this issue at all—and like Plaintiffs' response, wholly ignore the federal government funding sources (Medicare and Medicaid, for example), state government funding sources, and other third-party funding sources that already are in place and pay for the vast majority of the costs of existing programs available to address opioid abuse and addiction in Cabell County and Huntington. *See* Mot. at 12-15. Should this Court ultimately determine a need, any abatement plan must account for these sources of funding.

Nevertheless, the reality is that Cabell County and Huntington actually fund little, if any, of the costs associated with combatting the opioid crisis. This is most notable in the context of estimated treatment costs for opioid use disorder (OUD), HIV, neonatal abstinence syndrome (NAS), Hepatitis C (HCV), and other purported OUD co-morbidities, which accounts for approximately $2.1 billion (more than 80%) of the costs associated with Alexander's proposed abatement plan. And while Plaintiffs seek these funds via an abatement award, both Alexander and another of Plaintiffs' experts, George Barrett, admit that neither Cabell County nor Huntington has *ever* paid treatment costs, Tr. at 223:1-16; Ex. E, Barrett Dep. 162:18-21 Put

4

another way, the reason for Plaintiffs' silence on this issue is simple: Plaintiffs are seeking funding to provide for programs that they have never had to pay for in the past and never will have to pay for in the future. *See* Mot. at 13-15.[2] Alexander's proposed plan is silent on this issue, too, and nowhere addresses the actual costs Plaintiffs would incur should the Court find liability and order a form of abatement as a remedy. The critical question, therefore, is whether Alexander's opinions will assist the Court in fashioning an equitable remedy (if one is granted). Since his plan fails to account for what funds, if any, may be needed **by Cabell County and the City of Huntington** to pay for abatement, the answer to that question is no.[3]

Plaintiffs' failure to account for what is already being spent to abate the opioid crisis is perhaps the clearest example of the lengths to which they will go to avoid the only relevant

---

[2] Plaintiffs do not refute the undisputed facts demonstrating that they have never, and will never, have to pay for those services. *See* Tr. at 223:1-16 ("Q. You're not offering opinions in the case as an expert, that [the Cabell-Huntington Communities] has had to fund any of the programs that they have decided to put in place to address the opioid epidemic. A. No. No I'm not. Q. Okay. And in terms of future payments, you're not offering any opinions that should your plan for abatement be put in place in [the Communities] that any aspect of the plan would need to be paid for or funded by [Huntington and Cabell County]. ... A. Yeah, that's for the judge to decide, you're correct.").

[3] Unable to justify the more-than-two-billion-dollar windfall they seek through Alexander's plan, Plaintiffs argue that it is Defendants' burden to "prove ... that a discount is justified and the amount of any discount." Resp. at 15. This argument fails. Defendants have no obligation at the *Daubert* stage to prove the precise amount by which Alexander's unreliable abatement plan must be reduced; rather, the question before the Court is whether Alexander's opinion is reliable and fits the issues of this case. Plaintiffs similarly suggest (incorrectly) that Defendants "have not disclosed any epidemiologists or physicians to challenge Dr. Alexander's abatement plan or to offer a competing plan." Resp. at 10-11. Plaintiffs are wrong once again. Alexander's opinion should be excluded because it is unreliable and irrelevant, regardless of whether Defendants offer expert testimony challenging his plan. But, in any event, Defendants' expert Stephenie Colston specifically addresses Alexander's plan as well as the availability of federal funding for the various programs that Alexander proposes, including the funding available for the most significant cost attached to the Alexander plan (treatment). *See* Ex. L, Expert Report of Stephenie Colston. Finally, Plaintiffs' assertion that any reduction in the amount of abatement costs can be addressed at trial (Resp. at 13-15) also ignores the question before the Court right now, which is whether Alexander's opinions provide tools to the Court that *will be helpful at trial* in making such a reduction. They do not.

5

question before the Court at this point: what will the City and the County's actual costs be to abate the public nuisance allegedly caused by Defendants' wrongful conduct going forward? On this, Plaintiffs merely distract from the windfall reflected in Alexander's opinions.

### C.   Failure to Distinguish Between the Effects of Prescription Opioid Medications and Illegal Street Drugs

There can be no question that Defendants are not responsible for all of the opioid-related harms in Cabell County and Huntington. Therefore, any abatement plan in this case ordered against Defendants must be tailored to address the opioid-related harms allegedly attributable to Defendants. Alexander's abatement plan is not. Plaintiffs attempt to dodge Alexander's failure to identify the abatement programs needed to address Defendants' alleged misconduct (as opposed to the harms for which Defendants bear no conceivable responsibility) by arguing that this is merely a question of "causation" and arguing that "there would be no practical way to differentiate abatement programs between prescription and illicit opioids." Resp. at 16. This merely confirms Defendants' argument. If Alexander is unable to separate those out (which Plaintiffs admit he cannot), then his opinion will not be helpful to the Court in determining the appropriate abatement remedy against *Defendants*, and must be excluded.

### D.   This Court Should Not Adopt Judge Polster's Opinion As It Relates To Alexander

As a final matter, Plaintiffs argue that this Court should adopt Judge Polster's decision in the Track One case denying defendants' motion to exclude Alexander's testimony. Resp. at 9.[4] Contrary to Plaintiffs' contention, however, Judge Polster's decision *did not* "reject[] the same arguments" presented in this case brought before the Court by a City and County. *See* Mot. at 1 n.1.

---

[4] As Defendants have argued previously, Judge Polster's rulings in the MDL are not binding on this Court. *See* Mot. at 1 n.1.

Defendants here present three principal reasons for why Alexander's abatement plan is irrelevant and unreliable: (1) it fails to account for the myriad programs already in place in Cabell County and Huntington and the degree to which those programs and interventions address existing need; (2) it includes programs that Plaintiffs do not now (and could not in the future) implement or pay for; and (3) it fails to distinguish between harms that Defendants are alleged to have wrongfully caused related to prescription opioids and harms Defendants are not alleged to have caused. As to the first two arguments, Judge Polster's decision in the Track One case contained no substantive discussion or reasoning under a *Daubert* analysis. As to the third argument, Judge Polster's opinion does not address Defendants' core argument. Instead, his decision merely reframed the MDL defendants' arguments as a question about proving causation before trial and denied their motion on that basis. *See* Ex. *, *In re: National Prescription Opiate Litigation*, No. 1:17-MD-2804, 2019 WL 4043938, at *2-3 (N.D. Ohio August 26, 2019). But Defendants' argument here is not that Alexander must prove causation, but rather that Alexander must make some attempt to identify which abatement costs could be properly assessed against Defendants should the Court determine an abatement remedy is appropriate.

Additionally, Judge Polster's decision arose in a very different context, which makes it distinguishable in two important respects. ***First***, the plaintiffs in the MDL were seeking damages, not just abatement (like Plaintiffs here). This is a critical distinction, because it gave Judge Polster a need to "understand the scope of what it will take to *remedy* the opioid crisis." *See* Ex. * at 5 (emphasis added). In that context, Judge Poslter apparently believed that generic testimony about abstract abatement remedies could assist the Court in understanding the scope of potential remedies. No such need exists here. ***Second***, Judge Polster addressed Alexander's "national abatement plan," which was what he was asked to design (according to the MDL

7

Plaintiffs) in the context of a nationwide MDL, and the attendant need to potentially abate the opioid crisis across the country. *Id.* at 4. Here, by stark contrast, the Court may be responsible for crafting an abatement plan that is limited only to Cabell County and Huntington, and the specific needs of only those two Plaintiffs. Alexander's plan does not assist with that because a recitation of any and all potential abatement interventions has no fit to this case.

Moreover, Judge Polster's decision, which essentially punted the question of admissibility to trial, was incorrect as a matter of law. It both misconstrued the proper abatement remedy[5] and the *Daubert*'s reliability and fit requirements. Unlike Judge Polster, this Court should conduct a complete *Daubert* inquiry here and exclude Alexander's unreliable and irrelevant testimony.

## CONCLUSION

For the foregoing reasons, this Court should exclude the testimony of Plaintiffs' abatement expert Dr. Caleb Alexander.

Dated: October 30, 2020

Respectfully Submitted,

***AmerisourceBergen Drug Corporation***
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

---

[5] *See* Mot. at 1 & n.2; *see also* Opp. to Pls.' Mot. to Strike Defs.' Notices of Non-Party Fault, ECF No. 256 at 7-8 & n.13, and sources cited therein.

8

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*McKesson Corporation*
By Counsel:

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*/s/ Timothy C. Hester*
Timothy C. Hester
Laura Flahive Wu
Andrew P. Stanner
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
lflahivewu@cov.com
astanner@cov.com

*/s/ Paul W. Schmidt*
Paul W. Schmidt
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: (212) 841-1000

9

pschmidt@cov.com

*Cardinal Health, Inc.*
By Counsel:

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
Jennifer G. Wicht
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
emainigi@wc.com
lheard@wc.com
ahardin@wc.com
jwicht@wc.com

Michael W. Carey (WVSB #635)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
David R. Pogue (WVSB #10806)
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
rfranks@cdkrlaw.com
drpogue@cdkrlaw.com

10

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 30th day of October, the foregoing **Reply Memorandum of Law in Support of Defendants' Motion to Exclude Expert Testimony from G. Caleb Alexander Purporting to Relate to Abatement Costs and Efforts** was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)