UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br>    Plaintiff, | |
| v. | Civil Action No. 3:17-01362 |
| AMERISOURCEBERGEN DRUG<br>CORPORATION, *et al.*<br>    Defendants. | |
| CABELL COUNTY COMMISSION,<br>    Plaintiff, | |
| v. | Civil Action No. 3:17-01665 |
| AMERISOURCEBERGEN DRUG<br>CORPORATION, *et al.*<br>    Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MCKESSON CORPORATION'S MOTION IN LIMINE TO EXCLUDE EVIDENCE REGARDING DAVID GUSTIN'S CRIMINAL PROSECUTION AND PLEA**

Plaintiffs, the City of Huntington and the Cabell County Commission ("Plaintiffs"), hereby submit this memorandum of law in opposition to Defendant McKesson Corporation's (hereinafter "McKesson") motion in limine to exclude evidence regarding the criminal prosecution and plea of its former Director of Regulatory Affairs, David Gustin, for violations of the Controlled Substances Act (hereinafter "CSA").

On January 3, 2020, Judge Polster issued an evidentiary order memorializing his rulings as to certain pretrial motions *in limine* and other evidentiary motions.[1] As part of that order, Judge Polster directly addressed – and **DENIED**[2] – a *motion in limine* filed by McKesson seeking to

---

[1] *See* Dkt. # 3058; attached as Ex. "A" hereto.
[2] The only portion of McKesson's motion *in limine* that was granted related to the use of Mr. Gustin's 2019 indictment. Judge Polster concluded that the indictment itself would be excluded "absent proof of a corresponding

1

exclude evidence as to Mr. Gustin's criminal prosecution for CSA violations.[3]  In describing his rulings, Judge Polster stated that "as a general matter, these rulings apply to remanded cases tried by transferor courts" and that the "[d]ecisions that have been made in the case continue to apply unless circumstances change warranting their modification."[4]  "In the future," Judge Polster counseled, "the parties should generally not file in any MDL case a motion (including a motion for reconsideration) addressing an evidentiary issue already addressed below."[5]

Notwithstanding Judge Polster's clear instructions, McKesson has now filed a motion *in limine* that attempts to revisit the very same evidentiary issues encompassed within the January 3, 2020 Evidentiary Order.  Because McKesson cannot show that the particular circumstances of these cases warrant a revision of Judge Polster's prior ruling, the motion *in limine* described below should be denied in accordance with the CT1 Evidentiary Order.

Moreover, even if the CT1 Evidentiary Order were not applicable (which it is), McKesson still should not prevail on any of its legal or factual arguments.  In short, McKesson's motion simply does not (and cannot) demonstrate that the evidence it seeks to exclude is inadmissible. Thus, for these reasons explained in greater detail below, Plaintiffs respectfully request that the Court deny McKesson's motion.

## BACKGROUND

David Gustin, former Director of Regulatory Affairs ("DRA") for McKesson's North

---

final judgment or conviction." Ex. "A" at 19.  However, a final judgment and conviction has now been entered as to Mr. Gustin, thereby rendering the underlying Information filed in 2020 sufficiently reliable to be admissible.  *United States v. Gustin*, 20-cr-00038, Dkt. No. 19 (E.D. Ky.).  This conclusion also logically flows from the prior positions taken by McKesson on this evidence as part of its briefing of this issue with Judge Polster.  There, McKesson argued that "the only relevance of an indictment depends on the truth of its allegation." Dkt. # 2666 at 10.  The truth of the statements contained in the 2020 Information has now been established based on Mr. Gustin's guilty plea and subsequent conviction.

[3] Ex. A at 19.
[4] Ex. A at 1.
[5] Ex. A at 2.

Central region, was in charge of overseeing the company's regulatory processes for a territory spanning 15 states.[6] Within the North Central region, Mr. Gustin was responsible for McKesson's distribution center located in Washington Court House, Ohio, among others.[7] This specific distribution center, at issue in both this pending litigation and Mr. Gustin's criminal case, was and is responsible for distributing to an area that encompasses West Virginia (including Cabell County), Kentucky, and Ohio. Mr. Gustin held this regulatory position from 2008 until 2014 and subsequently retired from McKesson in 2016.[8] Following an investigation by the U.S. Attorney's Office (hereinafter "USAO"), Mr. Gustin was indicted on March 21, 2019 for "conspir[ing] with others to knowingly and intentionally distribute and dispense a quantity of pills containing controlled substances, to include oxycodone, . . . hydrocodone, . . . and alprazolam." *See United States v. Gustin*, 19-cr-00014, Dkt. No. 1 (E.D. Ky.).

Subsequent to the filing of this indictment, Mr. Gustin and the USAO reached a plea agreement under which Mr. Gustin pled guilty to a lesser charge and, in exchange, the USAO agreed to dismiss the above mentioned charge. Therefore, on July 7, 2020, the USAO filed a new criminal information which stated that Mr. Gustin "knowingly failed to make, keep, and furnish a record, report, notification, declaration, order and order form, statement, invoice, and information required by the Controlled Substances Act and its implementing regulations" and further stated that Mr. Gustin "knowingly failed to disclose suspicious orders of controlled substances to the Drug Enforcement Administration as required by 21 C.F.R. § 1301.74(b)." *See United States v. Gustin*, 20-cr-00038, Dkt. No. 4 (E.D. Ky.). As McKesson states in its motion, Mr. Gustin did in fact enter a plea agreement to the charges contained in the new criminal information on the same

---

[6] Gustin 8/17/18 Depo at 29:12-29:23; attached as Ex. "B" hereto.
[7] Ex. B at 165:10-165:17.
[8] Ex. B at 18:13-18:21.

day it was filed. *See United States v. Gustin*, 20-cr-00038, Dkt. No. 7 (E.D. Ky.). The court also accepted Mr. Gustin's plea agreement the same day the criminal information was filed. The court scheduled sentencing for October 15, 2020, where, pursuant to the plea agreement, the government agreed to dismiss the 2019 indictment and Mr. Gustin was sentenced on the new criminal information. *See United States v. Gustin*, 20-cr-00038, Dkt. No. 19 (E.D. Ky.).

## ARGUMENT

Mr. Gustin's 2020 criminal information[9], plea agreement, judgment and sentence are admissible as they are all relevant, the probative value of each substantially outweighs any potential prejudice, and the foregoing is admissible under the Federal Rules of Evidence and prior rulings from the MDL Court.

### I. Evidence Regarding Mr. Gustin's 2020 Criminal Information and Plea Agreement Is Admissible.

McKesson's argument that Mr. Gustin's 2020 criminal information and plea are inadmissible hearsay should fail. (McKesson Mem. at 4-5). McKesson improperly attempts to pigeonhole these documents into the limited hearsay exception of FED. R. EVID. 803(22). However, these documents are clearly admissible pursuant to the hearsay exception contained in FED. R. EVID. 803(8). Rule 803(8) applies to "factual findings resulting from an investigation made pursuant to authority granted by law." *See Nipper v. Snipe*, 7 F.3d 415, 417 (4th Cir. 1993). As explained in *Nipper*, "a review of the advisory committee note to Rule 803 makes plain that the drafters intended this portion of the rule to relate to findings of agencies and offices of the executive branch." *Id*.

The Fourth Circuit Court of Appeals has further utilized the ruling in *Nipper* to conclude that an administrative law judge's (appointed by the National Transportation Safety Board)

---

[9] Plaintiffs do not currently seek to introduce evidence related to Mr. Gustin's 2019 indictment.

4

systematic and detailed opinion met the "investigations" requirement of Rule 803(8)(c). *See Zeus Enterprises, Inc. v. Alphin Aircraft, Inc.*, 190 F.3d 238, 242 (4th Cir. 1999) (citing *Nipper v. Snipe*, 7 F.3d 415(4th Cir. 1993)). In *Zeus*, the Fourth Circuit held that "Rule 803(8) is grounded on the assumption 'that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record.'" *Id*. at 241. Certainly, considering the Fourth Circuit's rulings in *Nipper* and *Zeus*, the 2020 criminal information and the related plea agreement are a result of investigations and findings by an agency of the executive branch, the U.S. Attorney's Office. The accuracy of the investigations and findings are further verified by Mr. Gustin's acceptance of the plea agreement and the court's adjudication of Mr. Gustin on the charges that spawned from that investigation.

Further, as mentioned above, Judge Polster, in the Opioid MDL, found the following specifically as to Mr. Gustin's criminal prosecution and related materials: "[a]s to criminal investigations . . . a properly-prepared investigative report is admissible so long as 'the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.' *See* FED. R. EVID. 803(8)." *See Evidentiary Order*, 1:17-md-02804, Dkt. No. 3052 (N.D. Ohio). The USAO's criminal investigation directly resulted in and is commemorated by the 2020 criminal information and related plea agreement that ultimately culminated in Mr. Gustin being adjudicated and sentenced on the underlying criminal offense. McKesson has not sufficiently raised the issue of trustworthiness as to the contents of either document, nor could it given that Mr. Gustin has expressly agreed to the accuracy of these very allegations and has been adjudicated and sentenced based upon them.

These admissions are further supported by findings of Congress in its investigation to the opioid epidemic in West Virginia. As detailed by Congress, McKesson reported no suspicious

5

orders for any pharmacies in the entire state of West Virginia from May 2008 to July 31, 2013.[10] Similarly, McKesson admitted to failing to report suspicious controlled substance orders in violation of the CSA as part of its 2017 settlement with Drug Enforcement Administration (hereinafter "DEA"), further supporting the trustworthiness of the statements contained in Mr. Gustin's plea agreement.[11]

Mr. Gustin's 2020 criminal information and plea agreement are also admissible under FED. R. EVID. 807. Rule 807, referred to as the residual hearsay exception, allows for a hearsay statement to be admitted even if it does not fall under any of the exceptions found in Rule 803 if the statement is supported by sufficient guarantees of trustworthiness and is more probative on the point for which it is offered than other evidence the proponent can obtain. *See* FED. R. EVID. 807. The Ninth Circuit has also ruled on this issue finding that a plea agreement is admissible under Rule 807. *See In re Slatkin*, 525 F.3d 805, 812 (9th Cir. 2008).

In this case, Plaintiffs have established the sufficient guarantees of trustworthiness surrounding Mr. Gustin's 2020 criminal information and plea agreement through Mr. Gustin's admissions against his own interest, the congressional findings, and McKesson's own admissions of CSA violations. Additionally, the plea agreement satisfies the second prong of Rule 807 because it is highly probative evidence on the points in which it is offered and because Plaintiffs have not been able to obtain additional testimony concerning these events from Mr. Gustin himself.[12]

---

[10] *Red Flags and Warning Signs Ignored: Opioid Distribution and Enforcement Concerns in West Virginia* at p. 240-241; attached as Ex. "C" hereto.

[11] In January 2017, McKesson entered into a $150 million settlement agreement with the DEA for systemic CSA violations at various distribution centers nationwide including the Washington Court House distribution center. As part of the 2017 settlement agreement, McKesson accepted responsibility for not identifying and reporting suspicious orders as required by the CSA and the 2008 settlement agreement with DEA. (MCKMDL00355350; attached as Ex. "D" hereto).

[12] During Mr. Gustin's only deposition after being indicted in 2019, Mr. Gustin invoked his right against self-incrimination to every question other than his name. (*See generally* Gustin 10/14/19 Depo; attached as Ex. "E"

Finally, this Court is more than capable of sorting out what evidence should or should not be admitted along with giving that evidence the proper weight upon its admission. The Fourth Circuit has held that, during a bench trial, an "experienced trial judge [is] able to separate the emotional impact from the probative value of potentially prejudicial evidence." *U.S. v. Hassanzadeh*, 271 F.3d 574, 578 (4th Cir. 2001); *see, e.g., Schultz v. Butcher*, 24 F.3d 626, 632 (4th. Cir 1994). A district court within this circuit has also held that "a general inclination on the judge's part to let in as much of the proffered evidence as possible, without seriously prejudicing a party, would seem to be a reasonable guiding principle." *In re Sanctuary Belize Litig.*, 2020 WL 2467280, at *2 (D. Md. May 13, 2020). Thus, this Court is in the best position to listen to the evidence of Mr. Gustin's 2020 criminal information and plea agreement and give it the appropriate weight without undue prejudice to McKesson.

## II. Evidence Regarding Mr. Gustin's 2020 Criminal Information and Plea Agreement Is Relevant.

McKesson's contention that "[t]he 2020 Information and plea agreement should also be excluded because they lack probative value" is flatly incorrect. (McKesson Mem. at 5). In fact, the information contained within these documents has exceedingly high probative value to the issues in this litigation. Additionally, the facts alleged in the criminal information have been confirmed by Mr. Gustin himself through his plea agreement and by McKesson's own internal documents.

The allegations set forth in the 2020 criminal information are described above and allege Mr. Gustin, in short, violated the CSA by failing to report suspicious orders to the DEA. *See United States v. Gustin*, 20-cr-00038, Dkt. No. 4 (E.D. Ky.). Indeed, the plea agreement signed by Mr. Gustin **admits these allegations**.

For greater context, Mr. Gustin admitted in his plea agreement that while he was a DRA

---

hereto).

7

for McKesson he "was responsible for identifying suspicious orders of controlled substances in his region." *See Gustin* at Dkt. No. 7, para. 3(b). However, at the directive of McKesson, Mr. Gustin was "specifically instructed to '[r]efrain from using the word 'suspicious' in communications.'" *Id*. Importantly, these admissions are completely consistent with the policies created and enforced by McKesson. McKesson's own Controlled Substances Monitoring Program ("CSMP"), which began in 2008, instructed employees to "refrain from using the word 'suspicious' in communications."[13] Mr. Gustin simply followed this directive as did his other colleagues around the country.

These instructions were clearly followed as evidenced by the DEA's investigation into McKesson distribution centers nationally, including the Washington Court House distribution center that was supervised by Mr. Gustin and which distributed opioids into Cabell County. Specifically, as to the Washington Court House distribution center, in its November 4, 2014 letter DEA noted "McKesson did not report any orders as suspicious for years after the 2008 settlement with DOJ and DEA. When DEA began to investigate this silence, McKesson's Regional Director of Regulatory Affairs [David Gustin] told DEA investigators that he did not know what a suspicious order was."[14]

In his plea agreement, Mr. Gustin admitted to unlawful conduct related to Community Drug of Manchester, a Kentucky pharmacy. Among his admissions in the plea agreement, Mr. Gustin details letters sent to the DEA in 2012 reporting that McKesson "had ceased selling all controlled substances to Community Drug as of [May 1, 2012]." *See Gustin* at Dkt. No. 7, para. 3(f). In another letter sent twenty days later on May 21, 2012, Mr. Gustin informed the DEA "that McKesson had 'conducted additional review' and resumed sales [to Community Drug] on May

---

[13] MCKMDL00000021; attached as Ex. "F" hereto.
[14] MCKMDL00409453; attached as Ex. "G" hereto.

8

18, 2012." *Id*. Mr. Gustin also admitted that the "subsequent letter [of May 21, 2012] did not disclose to the DEA that Community Drug had been filling high volumes of out-of-state prescriptions for oxycodone or that [Mr. Gustin's] 'additional review' did not find any legitimate justification for Community Drug's suspicious ordering." *Id.*

McKesson erroneously argues that this plea agreement and the admitted conduct is not relevant because "Mr. Gustin pleaded to a charge that he failed to report to the DEA certain orders place by a pharmacy in Kentucky in 2011 and 2012." (McKesson Mem. at 5). When considering Mr. Gustin's role as DRA over McKesson's Washington Court House distribution center, which distributes opioids to Kentucky and West Virginia alike, this information is probative to not only show nationwide and systemic failures by McKesson, but also to demonstrate failures in Cabell County and the City of Huntington, an area approximately 100 miles away from Manchester, Kentucky.

Further, McKesson's argument that pills distributed by its Washington Court House distribution center to pharmacies within Kentucky are not relevant also fails to consider the well-established principle of pill migration, which McKesson has acknowledged on many occasions. In fact, one of the reasons for the influx of pills and harm into Cabell County was the "Oxy Express" or "Blue Highway" by which opioid pills migrated from at least as far away as Florida. McKesson's own internal documents and employees readily acknowledge this migration of opioids into places like West Virginia.[15] Similarly, McKesson's own DEA expert, Lydia Bagley, has conceded familiarity with the concepts of pill migration and the "Oxy Express."[16] If pills distributed to pharmacies in Florida migrated to West Virginia – which they did – pills distributed

---

[15] MCKMDL00407451; attached as Ex. "H" hereto; Hartle 8/1/18 Depo at 318:24-319:10; attached as Ex. "I" hereto.
[16] 9/25/20 Lydia Bagley Depo at 94:18-95:23; attached as Ex. "J" hereto.

9

to a pharmacy 100 miles away from Cabell County certainly shared that same propensity.

Even more directly, as part of his plea agreement, Mr. Gustin readily acknowledged that the pills being sold by Community Drug migrated out of that community. To this point, the plea agreement states:

> Community Drug dispensing data provided to [Mr. Gustin] in the subsequent months showed that drugs Community Drug was ordering from McKesson continued to be *dispensed for prescriptions from outside the immediate vicinity, including out-of-state doctors . . .* [Mr. Gustin] did not report any of this ordering to DEA as suspicious.

*See Gustin* at Dkt. No. 7, para. 3(g) (emphasis added).

The probative value of the 2020 criminal information and the related plea agreement clearly outweighs any prejudice. In its motion, McKesson incorrectly argues it is unfairly prejudiced by the admission of Mr. Gustin's plea agreement because it is inconsistent with its CSMP and because it had no ability to negotiate the terms of the agreement. (McKesson Mem. at 5). As discussed earlier in this brief, the admissions within Mr. Gustin's plea agreement are the same admissions McKesson made in its 2017 settlement agreement with the DEA. Not only does McKesson fail to point out inaccuracies within Mr. Gustin's admissions, its actual *agreement* with the admitted facts is established through its own internal documents and the 2017 settlement agreement with DOJ. In the event any prejudice does exist, this Court is well qualified to weigh the evidence associated with the plea agreement along with other evidence concerning McKesson's CSMP and provide the plea agreement the weight it deserves based on the totality of the evidence presented at trial.

## CONCLUSION

The evidence stemming from Mr. Gustin's 2020 criminal information, related plea agreement, and final judgment are relevant and admissible in this case. Thus, Plaintiffs respectfully request that the Court deny McKesson's motion in limine and permit Plaintiffs to present this

evidence at the upcoming trial.

       Dated: October 30, 2020       Respectfully submitted,

*/s/ Paul T. Farrell, Jr.* .
Paul T. Farrell, Jr., Esq. (W.Va Bar No. 7443)
FARRELL LAW
P.O. Box 1180
Huntington, WV  25714-1180
422 Ninth Street, 3rd Floor
Huntington, WV  25701
Office: 304.523.7285
Cell: 304.654.8281
Email: paul@farrell.law

Anne McGinness Kearse, Esquire
MOTLEY RICE
28 Bridgeside Boulevard
Mt. Pleasant, SC 29464
843-216-9000
Fax: 843-216-9450
Email: akearse@motleyrice.com

Brandon L. Bogle (WV PHV-40313)
LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY, AND PROCTOR, P.A.
316 S. Baylen St., Ste. 600
Pensacola, FL 32502
850-435-7043
Fax: 850-436-6043
Email: bbogle@levinlaw.com

## CERTIFICATE OF SERVICE

I certify that on October 30, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. This filing will also be served on all parties by email to: Track2OpioidDefendants@ReedSmith.com and mdl2804discovery@motleyrice.com.

/s/ *Moniqúe Christenson*
Monique Christenson (SC Bar No. 104063)
**MOTLEY RICE LLC**