Page 1

1           IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
2
3
    * * * * * * * * * * * * * * * * * * * * * *
4
    THE CITY OF HUNTINGTON,
5
              Plaintiff,
6
    vs.                                    CIVIL ACTION
7                                          NO. 3:17-01362

    AMERISOURCEBERGEN DRUG
8   CORPORATION, et al.,
9             Defendants.
10  _____
11  CABELL COUNTY COMMISSION,
12            Plaintiff,
13  vs.                                    CIVIL ACTION
                                           NO. 3:17-01665
14  AMERISOURCEBERGEN DRUG
    CORPORATION, et al.,
15
              Defendants.
16
    * * * * * * * * * * * * * * * * * * * * * *
17
18
19         Videotaped and videoconference deposition
    of KATHERINE KEYES taken by the Defendants under
20  the Federal Rules of Civil Procedure in the above-
    entitled action, pursuant to notice, before Teresa
21  S. Evans, a Registered Merit Reporter, all parties
    located remotely, on the 15th day of September,
22  2020.
23
24

```
 1                    APPEARANCES:
 2
    APPEARING FOR THE PLAINTIFFS:
 3
             Don Arbitblit, Esquire
 4           Paulina do Amaral, Esquire
             Britt Cibulka, Esquire
 5           Kelly McNabb, Esquire
             LIEFF CABRASER HEIMAN & BERNSTEIN
 6           250 Hudson Street
             8th Floor
 7           New York, NY  10013-1413
             Christina Smith, Esquire
 8           POWELL & MAJESTRO
 9           405 Capitol Street, Suite P1200
             Charleston, WV  25301
10
11  APPEARING FOR THE DEFENDANT CARDINAL HEALTH:
12           Carl Metz, Esquire
             WILLIAMS & CONNOLLY
13           725 Twelfth Street, N.W.
             Washington, DC 20005
14
             Steven R. Ruby, Esquire
15           Raymond S. Franks, II, Esquire
              CAREY, DOUGLAS, KESSLER & RUBY
16            901 Chase Tower
              707 Virginia Street, East
17            Charleston, WV  25323
18
    APPEARING FOR THE DEFENDANT AMERISOURCEBERGEN:
19
             Molly Campbell, Esquire
20           REED SMITH
             Three Logan Square
21           1717 Arch Street, Suite 3100
             Philadelphia, PA, 19103
22
23
24
```

```
 1              APPEARANCES (Contd.):
 2
    APPEARING FOR THE DEFENDANT McKESSON CORPORATION:
 3
             Tim Hester, Esquire
 4           Stephen Petkis, Esquire
             Paul Schmidt, Esquire
 5           COVINGTON & BURLING
             One City Center
 6           850 Tenth Street NW
             Washington, DC  20001
 7
 8  ALSO PRESENT:
 9            Adam Hager, Videographer
              Justin Taylor, Esquire
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

```
                                                   Page 115
 1    that distributors would do that, but I -- I'm not
 2    aware -- I don't offer an opinion either way.  I
 3    just wouldn't make the blanket statement that
 4    distributors can and cannot prevent any activity.
 5         Q.   You understand that prescription opioids
 6    can't leave a pharmacy unless the doctor writes a
 7    prescription?
 8         A.   There are other ways that opioids could
 9    leave a pharmacy.
10         Q.   Are you thinking of theft from the
11    pharmacy?
12         A.   For example.
13         Q.   What other ways?
14         A.   Other sources of diversion, you know,
15    selling, illegal selling, for example.
16         Q.   So I -- just to be clear, the -- when pills
17    are at a pharmacy, one way pills leave the pharmacy
18    and reach the community is through prescriptions
19    written by doctors, right?
20         A.   That's correct.
21         Q.   Another way is if pills were sold illegally
22    out of a pharmacy; is that right?
23         A.   That is another way, yes.
24         Q.   And another way would be theft from
```

Page 116

1  pharmacies?
2      A.   That's another way.
3      Q.   Are there others that occur to you that --
4  ways that pills leave pharmacies and get into the
5  community?
6      A.   None come to mind.
7      Q.   And do you have any evidence of any theft
8  from pharmacies occurring in Cabell/Huntington?
9      A.   I haven't reviewed that type of data for
10 this report.
11     Q.   And do you have any evidence of pills being
12 sold illegally from pharmacies in
13 Cabell/Huntington?
14     A.   Again, I'm -- I haven't reviewed that
15 evidence.
16     Q.   You agree that -- that doctors decide on
17 the prescriptions that they believe are warranted
18 for the treatment of pain?
19     A.   I wouldn't make that as a blanket
20 statement.
21     Q.   Do you have an understanding that when a
22 doctor writes a prescription for a medical purpose
23 for prescription opioids, the doctor's exercising
24 his or her judgment that the medical use is