IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CITY OF HUNTINGTON,**
    Plaintiff,
v.
**AMERISOURCE BERGEN DRUG CORPORATION, et al.,**
    Defendants.

Civil Action No. 3:17-cv-01362

**CABELL COUNTY COMMISSION,**
    Plaintiff,
v.
**AMERISOURCE BERGEN DRUG CORPORATION, et al.,**
    Defendants.

*Consolidated case:*
Civil Action No. 3:17-cv-01665

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF DR. RAHUL GUPTA**

Plaintiffs the City of Huntington and Cabell County Commission ("Plaintiffs") respectfully submit this memorandum of law in opposition to Defendants' Motion to Exclude the Testimony of Dr. Rahul Gupta (ECF No. 1051).[1]

## INTRODUCTION

Dr. Rahul Gupta served as the West Virginia Department of Health and Human Resources Health Commissioner from 2015 to 2018, having previously served as the Executive Director of the Kanawha-Charleston Health Department from 2009 to 2014. One of Dr. Gupta's first acts as Health Commissioner was to order "a historical perspective report . . . of West Virginia's opioid

---

[1] References to "Mot. _" are to the pages of Defendants' Motion to Exclude the Testimony of Dr. Rahul Gupta. References to "Gupta Tr. _" are to the transcript of the September 11, 2020 deposition of Dr. Gupta, located at pages 4-91 of the Appendix to Defendants' Motion.

crisis from 2000 to 2015." Gupta Tr. 96:6-10.[2]  In addition, Dr. Gupta is the author of numerous publications that relate to opioids in West Virginia, including the *Opioid Response Plan for the State of West Virginia*[3] in January 2018 and *Overcoming America's Opioid Epidemic Will Need Action Not Words*, an article in the Marshall Journal of Medicine that same year.[4]  In 2018, Dr. Gupta was named Public Official of the Year by Governing Magazine[5] and was the subject of *The Immigrant Doctor Who's Saving West Virginia's Opioid Crisis* in Politico Magazine.[6]  It is little wonder Defendants do not want Dr. Gupta to testify in this case.

During the course of his employment, Dr. Gupta witnessed first-hand the opioid epidemic and its effects in West Virginia, including in Plaintiffs' communities.  He also saw the role that diversion and over-supply of these dangerous drugs played (and continues to play) in that crisis.  For this reason, his proposed testimony will be highly relevant to the issues in this case and helpful to the trier of fact.

Defendants argue that Dr. Gupta should be excluded from testifying because he did not provide an expert report, which, according to Defendants, was required because he serves as

---

[2]     It was Plaintiffs' Counsel, not Mr. Colantonio, who entered this report into evidence during Dr. Gupta's deposition. *See* Gupta Tr. 182:7-16.  Dr. Gupta testified during his deposition that he would be prepared to testify at trial as to that report.  *See id.* at 185:6-10.

[3]     Rahul Gupta, MD, MPH, MBA, FACP, *Opioid Response Plan for the State of West Virginia* (Jan. 2018), https://dhhr.wv.gov/bph/Documents/ODCP%20Response%20Plan%20Recs/Opioid%20Response%20Plan%20for%20the%20State%20of%20West%20Virginia%20January%202018.pdf.

[4]     Rahul Gupta, *Overcoming America's Opioid Epidemic Will Need Action Not Words*, 4 Marshall J. Med., no. 1, art. 2, 2018, https://mds.marshall.edu/cgi/viewcontent.cgi?article=1171&context=mjm.

[5]     Mattie Quinn, *Public Officials of the Year, Rahul Gupta, 2018 Honoree*, Governing Magazine, https://www.governing.com/poy/gov-rahul-gupta.html.

[6]     Brianna Ehley, *The Immigrant Doctor Who's Solving West Virginia's Opioids Crisis*, Politico Magazine (May 2, 2018), https://www.politico.com/magazine/story/2018/05/02/west-virginia-opioids-immigrant-doctor-solution-218118.

retained expert in another case, brought in another court, by different plaintiffs. This argument fails for the simple reason that an individual may testify as an expert in one case and a fact expert in another, regardless of whether or not there may be some overlap in counsel between the two actions. Defendants also take issue with the fact that Dr. Gupta was questioned, in part, by his personal counsel during his deposition, but it was Defendants, themselves, who invited those questions and they were specifically approved by Plaintiffs' counsel. The nature of one of the examining attorneys at Dr. Gupta's deposition – as Dr. Gupta's attorney or as lead counsel for Plaintiffs – is, at best, a red herring.

Put simply, Defendants' Motion is nothing more than an attempt to prevent the Court from hearing a first-hand account from someone on the front lines of the opioid epidemic in West Virginia. Defendants' Motion should be denied in its entirety.

## FACTUAL BACKGROUND

On October 25, 2019, Defendants served interrogatories on Plaintiffs asking them to, among other things, identify persons who were likely to have discoverable information and may be called at trial. On April 30, 2020, Plaintiffs listed Dr. Gupta among those persons with knowledge. On April 17, 2020, May 19, 2020, June 22, 2020, and August 31, 2020, Defendants served subpoenas and notices of deposition and document requests on Dr. Gupta. *See* ECF Nos. 340, 450-1, 610-1, 901.[7] On June 3, 2020, Plaintiffs filed their Notice of Plaintiffs' Preliminary Witness List, which included Dr. Gupta. *See* ECF No. 503. On July 10, 2020, Plaintiffs cross-noticed Dr. Gupta's deposition, having previously informed Defendants that they intended to take Dr. Gupta's deposition. *See* ECF No. 706. On August 3, 2020, Plaintiffs disclosed Dr. Gupta as a potential non-retained expert for whom no expert report was required

---

[7] In response to Defendants' document requests, Dr. Gupta produced 67 documents.

under Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure. *See* ECF No. 825 at 6-7. In that disclosure, Plaintiffs stated Dr. Gupta was expected to testify as to his "background[], training, and professional observations and experiences," and that his opinion testimony may include, among other things, "the subject matter discussed in [his] deposition; the impact and harms that the opioid epidemic has had on health and safety in Plaintiffs' community; the extent and effectiveness of the community's opioid response, past and future; matters relating to causation; and addiction, morbidity, and mortality within the community." *Id.* at 4. Defendants made no objection to the disclosure provided for Dr. Gupta.

On September 11, 2020, Defendants took Dr. Gupta's deposition, coordinating the deposition proceedings through Mr. Colantonio.[8] At his deposition, Dr. Gupta was personally represented by Mr. Colantonio, who has appeared in this litigation for Cabell County and who has retained Dr. Gupta as an expert witness in other litigation. Defendants examined Dr. Gupta at the deposition and then passed the witness to Plaintiffs' counsel for examination. With the agreement of Plaintiffs' lead counsel for Cabell County and the City of Huntington, Mr. Colantonio conducted some of the examination on behalf of the Plaintiffs. On October 2, 2020, Defendants moved to exclude Dr. Gupta's testimony, arguing (a) that Mr. Colantonio's examination at the

---

[8] Defendants served their June 22, 2020 and August 31, 2020 subpoenas on Dr. Gupta through Mr. Colantonio, with whom they continued to communicated directly about the deposition.

deposition was improper; and (b) that Dr. Gupta ought to have provided an expert report. Neither argument has merit.[9]

## ARGUMENT

### A. There Is No Basis to Exclude the Direct Examination Testimony of Dr. Gupta

Defendants first argue that Dr. Gupta's direct examination testimony should be excluded because it was conducted by Mr. Colantonio, who appeared as personal counsel for Dr. Gupta. *See* Mot. 8 (arguing Mr. Colantonio's direct examination of Dr. Gupta was "impermissible" because "[o]nly parties can examine the witness; counsel for a third-party witness has no such right"). As a preliminary matter, Defendants had known of Mr. Colantonio's role for weeks before the deposition, having communicated with him about the logistics of the deposition and knowing he had attended other depositions on behalf of Plaintiffs. Not once did Defendants complain or object.

During Dr. Gupta's deposition, Defendants took the unusual step of breaking for lunch and allowing Plaintiffs' counsel to conduct a direct examination. *See* Gupta Tr. 114:14-18 ("Okay, Doctor, I think we're almost at noon now. Why don't we go ahead and take that lunch break for about, say, until 12:30 and then we can come back and opposing counsel can take their -- do their questioning?"); *see also id.* at 115:6-10 ("And I'll just explain -- we are going to pass the witness to counsel for Cabell County and City of Huntington for an opportunity for them to ask their

---

[9] Defendants' Motion contains three point headings, but Point C simply reiterates Point B in urging the Court to preclude Dr. Gupta's testimony because he has not provided an expert report. Curiously, Defendants obliquely suggest, but then reject, a possible alternative relief: that Dr. Gupta provide an expert report now as a condition of the Court's permitting him to testify. But because Defendants do not request this relief and, in fact, declare it to be inappropriate, and because no expert report is required here given Dr. Gupta's extensive deposition testimony, Plaintiffs will not further address Defendants' non-request for alternative relief.

5

questions, and then they will pass the witness back."). Mr. Colantonio then proceeded to conduct the direct examination, confirming that doing so was acceptable to Defendants. *See id.* at 115:12-15 ("This is Mark Colantonio, and I'm counsel for Doctor Gupta. I was actually going to ask Doctor Gupta questions now if that's okay with everybody."). Counsel for Defendants responded in the affirmative. *See id.* at 115:16-17 ("Sure. I'm sorry. I -- that's fine."). By agreeing to allow Mr. Colantonio to conduct a direct examination, Defendants waived their subsequent objections.[10]

Regardless of whether Defendants waived their objections to Mr. Colantonio's questioning, neither the Federal Rules of Civil Procedure nor this Court's Local Rules prohibit multiple attorneys from asking questions during a deposition. Moreover, regardless of any purported "concerns" about Mr. Colantonio's role during Dr. Gupta's deposition, his direct examination questioning was expressly permitted by lead counsel for Plaintiffs and expressly adopted by Plaintiffs. *See* Gupta Tr. 187:3-8 ("MS. KEARSE: But Steve [Ruby, Counsel for Cardinal Health], to the extent then that any of the testimony that Doctor Gupta has given is the testimony on -- that applies also to the City of Huntington and Cabell County, Paul Farrell and Anne Kearse are both here in that capacity, as well as Mark Colantonio"); *id.* at 187:15-18 ("Dr. Gupta's testimony today's [sic] is also applicable to the City of Huntington and Cabell County, which is what this case is being taken for."). Unsurprisingly, Defendants fail to identify *any* statute, rule, or case law that states this was improper.

Accordingly, because Mr. Colantonio's questions – and the direct evidence that flowed from them – were authorized by counsel for Plaintiffs, Dr. Gupta's testimony should not be excluded.

---

[10] Counsel for Defendants objected *after* Mr. Colantonio started his questions; therefore, Defendants' representation that "Counsel for McKesson *immediately* objected" is demonstrably false. Mot. 4 (emphasis added).

### B. The Court Should Not Bar Any "Expert Testimony" by Dr. Gupta

Defendants seek to bar opinion testimony from Dr. Gupta on the ground that he ought to have provided an expert report. Not so. Rule 26 governs expert disclosures and sets forth the criteria for the requirement of an expert report. The rule specifically provides that an expert who has not been "retained or specially employed to provide expert testimony *in the case*" need not provide an expert report. Fed. R. Civ. P. 26(a)(2)(B) (emphasis added); *see also Drennen v. United States*, 375 F. App'x 299, 306 (4th Cir. 2010) (expert who was not retained or specially employed to provide expert testimony in the case was not required to provide a report). Dr. Gupta clearly falls outside the requirement for expert reporting as he was neither retained nor specially employed to give testimony here and his opinions derive from his own observations and involvement in the facts of this case.[11]

First, Dr. Gupta testified that he has not been "retained or specifically employed" to provide expert testimony in this case, *see* Gupta Tr. 33:11-18 (testifying that he has not been retained in this action), which Dr. Gupta's counsel confirmed, *see* Mot. 5 ("Mr. Colantonio represented that he has not paid Dr. Gupta in this case.").

Defendants argue that Dr. Gupta should nonetheless have provided a report because he "has been retained as an expert for counsel for Plaintiffs, and on the very subject matter about which they propose to offer his testimony in this case." Mot. 2. They contend that "[i]t defies common sense to credit the argument that Dr. Gupta is a retained expert solely for the MLP litigation . . . but in this case is a neutral, non-retained factual witness who just happens to have

---

[11] In addition to the arguments herein, Plaintiffs incorporate by reference the arguments made in their Memorandum of Law in Opposition to Defendants' Motion to Exclude Undisclosed Expert Testimony from Non-Retained Expert Witnesses.

7

coextensive opinions 'that may be considered "expert testimony."'"[12] *Id.* at 9.  But of course, it is the parties, not counsel, who put forward experts; that Dr. Gupta has been retained by other parties – even parties represented by the same counsel – to provide similar testimony does not mean that he has been retained here.  This is especially true because Rule 26 specifically limits the definition of a reporting expert to one who has been retained or specially employed to provide expert testimony "in the case." Fed. R. Civ. P. 26(a)(2)(B).  There is simply no argument to be made that Dr. Gupta has been retained *in this case*.

Speculative alleged bias of an expert is a matter for cross-examination, not exclusion.  *See vonRosenberg v. Lawrence*, 413 F. Supp. 3d 437, 450 (D.S.C. 2019) ("[I]t is well-established that an expert's bias is not a proper basis to bar testimony under Daubert."); *Grant Thornton, LLP. v. Fed. Deposit Ins. Corp.*, 297 F. Supp. 2d 880, 883 n.3 (S.D.W. Va. 2004) ("[I]t is well-settled that '[a]n expert witness's bias goes to the weight, not the admissibility of the testimony.'" (second alteration in original)).  And under Rule 26, such alleged bias provides no basis to require an expert report.  Therefore, to the extent that the gravamen of Defendants' complaint is that Dr. Gupta's role as a retained expert in a *different* case will affect his ability to testify truthfully in this case, they are free to cross-examine Dr. Gupta with respect to any potential bias.

Second, not only is Dr. Gupta not retained or specially employed as an expert in this case, but his knowledge derives from his own observations and involvement in the opioid epidemic in West Virginia.  *See, e.g.*, Gupta Tr. 22:17-23 (testifying that his "understanding of this case" is based on "my work as the Commissioner for the Bureau of Public Health as well as the State's

---

[12]  As discussed below, Dr. Gupta does not "just happen[] to have coextensive opinions that may be considered 'expert testimony.'"  Rather, his opinions derive from his actual experience with the opioid epidemic in West Virginia.  It is not mere happenstance, then, that Dr. Gupta's fact and opinion testimony are intertwined or that they are similar to testimony he is providing elsewhere.

8

chief health officer, having worked in this area, having read the reports as well as public records and accounts and have been deposed and involved in the workings of the Department of Health and Human Resources of West Virginia"); *id.* at 136:22-137:9 ("Q. All right. So do you believe from your background trending experience – especially in West Virginia – that you had a firsthand seat viewing the causes and effects of this opioid problem in West Virginia? A. Unfortunately, I did. And I had to see firsthand what was happening on a daily basis, going to the practitioner, as somebody who lived in the community, had children going to school in the community and seeing those consequences as part of being in the community, as well as being one that was trusted to find solutions to this.").

As the court explained in *In re Ethicon, Inc., Pelvic Repair System Products Liability Litigation*:

> Where an expert is also a percipient fact witness, courts distinguish between "a percipient witness who happens to be an expert and an expert who without prior knowledge of the facts giving rise to litigation is recruited to provide expert opinion testimony." "The distinguishing characteristic between expert opinions that require a report and those that do not is whether the opinion is based on information the expert witness acquired through percipient observations or whether, as in the case of retained experts, the opinion is based on information provided by others or in a manner other than by being a percipient witness to the events in issue."

2014 WL 186872, at *9 (S.D.W. Va. Jan. 15, 2014) (quoting *Downey v. Bob's Disc. Furniture Holdings, Inc.*, 633 F.3d 1, 6 (1st Cir. 2011), *United States v. Sierra Pac. Indus.*, 2011 WL 2119078, at *4 (E.D. Cal. May 26, 2011)). Detailed written reports are required only when experts are "retained or specifically employed" for that role. *See Downey*, 633 F.3d at 7 ("[C]onsistent with their plain meaning, we conclude that as long as an expert was not retained or specially employed in connection with the litigation, and his opinion about causation is premised on personal knowledge and observations made in the course of treatment, no report is required under the terms of Rule 26(a)(2)(B)."); *see also Tolan v. Cotton*, 2015 WL 5332171, at *7 (S.D. Tex. Sept. 14,

9

2015) (defining "specially employed" expert as one who "has no personal involvement in the facts giving rise to a case and is instead engaged specifically . . . to provide opinions and testimony . . . without monetary payment for those services"); *Desrosiers v. MAG Indus. Automation Sys., LLC*, 2010 WL 2132826, at *2 (D. Md. May 25, 2010) ("[W]hen an unretained, non-party with some expert knowledge is appearing as a fact witness, an expert report is not required.").

Finally, Dr. Gupta was exposed to the opioid epidemic in West Virginia in his capacity as the Executive Director of the Kanawha-Charleston Health Department and, later, as the Commissioner for the West Virginia Department of Health and Human Resources. Given this, it is easy to understand how the facts and opinions as to which he will testify all derive from that experience. *See, e.g.*, Gupta Tr. 35:16-19 ("My role as the State Health Commissioner and public health officer, I have a broad bird's eye view of the understanding of the system of distribution."); *id.* at 139:4-7 (testifying as to knowledge based on background, training, and experience); *id.* at 139:16-18 (testifying regarding his high degree of understanding of the opioid crisis/epidemic in West Virginia); *id.* at 96:6-10 (testifying that "one of the first acts" he ordered as Health Commissioner was the creation of "a historical perspective report . . . of West Virginia's opioid crisis from 2000 to 2015").

In sum, because he has not been retained and is not being paid, and because he gained his knowledge, and formed his opinions, through his own direct involvement, Dr. Gupta is not required to provide an expert report. Contrary to Defendants' arguments, it is of no moment that "Dr. Gupta testified in this case about the subject matter for which Plaintiffs' counsel are paying him as a retained expert in the MLP litigation." Mot. 10. Rule 26 determines which experts must provide reports, and it clearly excludes Dr. Gupta from that category.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Exclude the Testimony of Dr. Rahul Gupta.

Dated: October 30, 2020                                   Respectfully submitted,

| | |
|---|---|
| **THE CITY OF HUNTINGTON**<br>/s/ *Anne McGinness Kearse*<br>Anne McGinness Kearse<br>WVSB No. 12547<br>Joseph F. Rice<br>**MOTLEY RICE LLC**<br>28 Bridgeside Blvd.<br>Mount Pleasant, SC 29464<br>Tel: 843-216-9000<br>Fax: 843-216-9450<br>akearse@motleyrice.com<br>jrice@motleyrice.com<br><br>Linda Singer<br>David I. Ackerman<br>**MOTLEY RICE LLC**<br>401 9th Street NW, Suite 1001<br>Washington, DC 20004<br>Tel:  202-232-5504<br>Fax:  202-386-9622<br>lsinger@motleyrice.com<br>dackerman@motleyrice.com<br><br>Charles R. "Rusty" Webb<br>WV No. 4782<br>**THE WEBB LAW CENTRE**<br>716 Lee Street, East<br>Charleston, West Virginia 25301<br>Telephone: (304) 344-9322<br>Facsimile: (304) 344-1157<br>rusty@rustywebb.com | **CABELL COUNTY COMMISSION**<br>/s/ *Paul T. Farrell, Jr.*<br>Paul T. Farrell, Jr.<br>WVSB Bar No. 7443<br>**FARRELL LAW**<br>422 Ninth Street, 3rd Floor (25701)<br>PO Box 1180<br>Huntington, West Virginia 25714-1180<br>Mobile: 304-654-8281<br>paul@farrell.law<br><br>/s/ *Anthony J. Majestro*<br>Anthony J. Majestro<br>WVSB No. 5165<br>**POWELL & MAJESTRO, PLLC**<br>405 Capitol Street, Suite P-1200<br>Charleston, WV 25301<br>304-346-2889 / 304-346-2895 (f)<br>amajestro@powellmajestro.com<br><br>Michael A. Woelfel<br>WVSB No. 4106<br>**WOELFEL AND WOELFEL, LLP**<br>801 Eighth Street<br>Huntington, West Virginia 25701<br>Tel. 304.522.6249<br>Fax. 304.522.9282<br>mikewoelfel3@gmail.com |

On Brief:
/s/ *Christopher F. Moriarty*
Christopher F. Moriarty
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: 843-216-9000
Fax: 843-216-9450
cmoriarty@motleyrice.com

Andrea Bierstein
**SIMMONS HANLY CONROY**
112 Madison Avenue, 7th Floor
New York, NY 10016
212-257-8482
abierstein@simmons.com

Paulina do Amaral
**LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLC**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel:  212-355-9500
Fax:  212-355-9592
pdoamaral@LCHB.com

## CERTIFICATE OF SERVICE

      I certify that on October 30, 2020, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.  This filing will also be served on all parties by email to:  Track2OpioidDefendants@ReedSmith.com and mdl2804discovery@motleyrice.com.

/s/ *Moniqúe Christenson*
Monique Christenson (SC Bar No. 104063)
**MOTLEY RICE LLC**