# EXHIBIT 1

```
                                                            Page 1

 1          IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
 2
 3
     * * * * * * * * * * * * * * * * * * * * *
 4
     THE CITY OF HUNTINGTON,
 5
              Plaintiff,
 6
     vs.                                    CIVIL ACTION
 7                                         NO. 3:17-01362

     AMERISOURCEBERGEN DRUG
 8   CORPORATION, et al.,
 9            Defendants.
10   _____
11   CABELL COUNTY COMMISSION,
12            Plaintiff,
13   vs.                                    CIVIL ACTION
                                           NO. 3:17-01665
14   AMERISOURCEBERGEN DRUG
     CORPORATION, et al.,
15
              Defendants.
16
     * * * * * * * * * * * * * * * * * * * * *
17
18
19        Videotaped and videoconference deposition
     of KATHERINE KEYES taken by the Defendants under
20   the Federal Rules of Civil Procedure in the above-
     entitled action, pursuant to notice, before Teresa
21   S. Evans, a Registered Merit Reporter, all parties
     located remotely, on the 15th day of September,
22   2020.
23
24
```

Page 115

1  that distributors would do that, but I -- I'm not
2  aware -- I don't offer an opinion either way.  I
3  just wouldn't make the blanket statement that
4  distributors can and cannot prevent any activity.
5      Q.    You understand that prescription opioids
6  can't leave a pharmacy unless the doctor writes a
7  prescription?
8      A.    There are other ways that opioids could
9  leave a pharmacy.
10     Q.    Are you thinking of theft from the
11 pharmacy?
12     A.    For example.
13     Q.    What other ways?
14     A.    Other sources of diversion, you know,
15 selling, illegal selling, for example.
16     Q.    So I -- just to be clear, the -- when pills
17 are at a pharmacy, one way pills leave the pharmacy
18 and reach the community is through prescriptions
19 written by doctors, right?
20     A.    That's correct.
21     Q.    Another way is if pills were sold illegally
22 out of a pharmacy; is that right?
23     A.    That is another way, yes.
24     Q.    And another way would be theft from

Page 116

1  pharmacies?
2      A.   That's another way.
3      Q.   Are there others that occur to you that --
4  ways that pills leave pharmacies and get into the
5  community?
6      A.   None come to mind.
7      Q.   And do you have any evidence of any theft
8  from pharmacies occurring in Cabell/Huntington?
9      A.   I haven't reviewed that type of data for
10 this report.
11     Q.   And do you have any evidence of pills being
12 sold illegally from pharmacies in
13 Cabell/Huntington?
14     A.   Again, I'm -- I haven't reviewed that
15 evidence.
16     Q.   You agree that -- that doctors decide on
17 the prescriptions that they believe are warranted
18 for the treatment of pain?
19     A.   I wouldn't make that as a blanket
20 statement.
21     Q.   Do you have an understanding that when a
22 doctor writes a prescription for a medical purpose
23 for prescription opioids, the doctor's exercising
24 his or her judgment that the medical use is

```
                                                       Page 300
 1   literature with regard to opioid policy.  So to the
 2   extent that the policies have been evaluated in the
 3   epidemiological literature, I have expertise in
 4   that.
 5        Q.   Do you have any particular expertise on
 6   suspicious order monitoring activities?
 7        A.   I do not.
 8        Q.   Have you reviewed any of the orders that
 9   were submitted by pharmacies in Cabell/Huntington
10   for prescription opioids?
11        A.   No.
12        Q.   Have you reviewed any of the diligence
13   files or investigative documents prepared by
14   distributors with respect to customers in
15   Cabell/Huntington?
16        A.   I have not.
17        Q.   Just looking here at my notes, Doctor
18   Keyes.  I may be done.
19             Doctor Keyes, I take it you -- that you
20   have not focused your opinions on any of the
21   individual specific distributors who are defendants
22   in this case?
23        A.   My opinions apply to all of the
24   distributors in the case.
```

Page 301

1  Q.  But you've not reviewed specific documents
2  related to their individual activities?
3  A.  Generally, no.
4  Q.  Okay.
5           MR. HESTER:  I think that's all I
6  have, so I will pass -- pass you along to my
7  colleagues.  Thank you, Doctor Keyes.
8           THE DEPONENT:  Thank you very much.
9           MR. ARBITBLIT:  So to the extent
10 others plan on inquiring, the protocol requires a
11 video feed, which we don't see.  Perhaps you have
12 video feed that's not turned on, but to the extent
13 that there is no video feed, we would object that
14 that's not permitted under the protocol.
15          MR. METZ:  I've had my video off for
16 most of the day, but it's on now.
17          MR. HESTER:  Actually, before you
18 start, Carl, I do -- I did want to state one thing
19 for the record -- and I know that we have a
20 difference of agreement, but -- difference of view
21 on this point.
22          But we -- we have been surprised today
23 by the position taken by the plaintiffs that we
24 could not inquire fully into all aspects of Doctor

```
                                                    Page 371
 1   STATE OF WEST VIRGINIA,
 2   COUNTY OF JACKSON, to wit;
 3
 4            I, Teresa S. Evans, a Notary Public within
     and for the County and State aforesaid, duly
 5   commissioned and qualified, do hereby certify that
     the foregoing deposition of KATHERINE KEYES was
 6   duly taken by me and before me at the time and
     place and for the purpose specified in the caption
 7   hereof, the said witness having been by me first
     duly sworn.
 8
              I do further certify that the said
 9   deposition was correctly taken by me in shorthand
     notes, and that the same were accurately written
10   out in full and reduced to typewriting and that the
     witness did request to read his transcript.
11
              I further certify that I am neither
12   attorney or counsel for, nor related to or employed
     by, any of the parties to the action in which this
13   deposition is taken, and further that I am not a
     relative or employee of any attorney or counsel
14   employed by the parties or financially interested
     in the action and that the attached transcript
15   meets the requirements set forth within article
     twenty-seven, chapter forty-seven of the West
16   Virginia Code.
17            My commission expires October 25, 2020.
     Given under my hand this 18th day of September,
18   2020.
19
     <%10538,Signature%>
20   Teresa S. Evans
     RMR, CRR, RPR, WV-CCR
21
22
23
24
```