# EXHIBIT 3

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

* * * * * * * * * * * * * * * * * * * * * *

THE CITY OF HUNTINGTON,

        Plaintiff,

vs.                                CIVIL ACTION
                                  NO. 3:17-01362

AMERISOURCEBERGEN DRUG
CORPORATION, et al.,
        Defendants.
_____
CABELL COUNTY COMMISSION,
        Plaintiff,
vs.                                CIVIL ACTION
                                  NO. 3:17-01665
AMERISOURCEBERGEN DRUG
CORPORATION, et al.,

        Defendants.

* * * * * * * * * * * * * * * * * * * * * *


       Videotaped and Zoom video conference
deposition of JAMES RAFALSKI taken by the Defendants
under the Federal Rules of Civil Procedure in the
above-entitled action, pursuant to notice, before
Jennifer Vail-Kirkbride, a Registered Merit
Reporter, on the 11th day of September, 2020.

1  matter and then you had questions to clarify with
2  him?
3      A.  I believe that's the sequence; yes, sir.
4      Q.  And what were those questions?  What were
5  the points you wanted to clarify?
6      A.  Uh, the one point I remember is on the
7  Masters Methodology B, or we'll call it maybe
8  Masters B, I was -- wanted to make sure on the
9  triggering order that he was -- his calculation on
10 dosage units was the whole order and not the amount
11 that just was above the triggering amount, if that
12 hopefully makes sense to you.
13     Q.  It does, yes.  And you weren't sure of that
14 before you reached out to him? [overtalking]
15     A.  Well, no, that's why I reached out, if I
16 was sure, then I wouldn't have done it.
17     Q.  That's why that was an easy
18 question.  Collectively your different methods flag
19 tens of millions of orders; correct?
20     A.  They do.
21     Q.  You've not reviewed each of those flagged
22 orders; correct?
23     A.  No, sir.
24     Q.  Do you know how many of the tens of

Page 88

1   millions you've actually reviewed?
2       A.   Yes, I have not reviewed any of them.
3       Q.   None of the initial orders, none of the
4   follow-up orders; correct?
5       A.   No, sir.
6       Q.   So you did not personally determine whether
7   any of the flagged orders when you look at them, you
8   actually consider them to be suspicious; correct?
9       A.   Well, I think the fact that they are
10  identified by the trigger, the algorithm, makes --
11  makes them not a suspicious order.
12      Q.   Okay.  Did you individually review any of
13  them to see if you just looked at the order on its
14  face whether you would consider it to be suspicious?
15      A.   No, sir.
16      Q.   Did you individually look at any of them to
17  consider just based on the information you had about
18  the actual order whether you would consider it to be
19  likely to be diverted?
20      A.   Can you say that one more time, please.
21      Q.   Sure.  Did you look at the individual
22  orders to consider whether based on the information
23  actually reflected in the individual orders, you
24  would make the judgment that there were likely to be

Page 90

1   or two -- it's kind of a compound question.  First,
2   the algorithm's applied to the data and that's what
3   triggers the order.  That's what brings it to my
4   report or triggers it and identifies it.  Then
5   subsequent to that would -- you're asking about the
6   evaluation of that specific order.
7        Q.   No, I am asking actually what's intended to
8   be a really simple question so maybe I can reframe
9   it.
10            You've got tens of millions of orders
11  you identify here; right?
12       A.   I do.
13       Q.   Did you look at any of those tens of
14  millions of orders in terms of the actual facts of
15  those orders to make a judgment that as to any one
16  of those tens of millions of orders, looking at the
17  order itself you believe that order is likely to be
18  diverted?
19       A.   There -- I cannot definitively look at one
20  specific order and tell you that specific order was
21  diverted, if that's your question.  I did not do
22  that and I couldn't -- I did not do that and I could
23  not do that.
24       Q.   That's not my question.  What I'm asking is

Page 91

1  did you actually evaluate any single order and make
2  a judgment, "This order is likely to be diverted,"
3  based on the facts of looking at this order,
4  separate and apart from your flagging exercise.  Did
5  you look at any orders to see "Based on the facts of
6  this order I can come to a judgment that it's likely
7  to be diverted"?
8       A.   I think my opinion is that more likely than
9  not all of those orders are diverted.
10      Q.   Well, that's what I'm going to come to.  My
11 question is did you actually look at any of the
12 individual ones to say, "When I look at this
13 individual one, this looks like it's likely to be
14 diverted"?
15      A.   No, sir, not individually.
16      Q.   Okay.  Did you review the diligence files
17 for every one of these tens of millions of flagged
18 orders?
19      A.   There -- that wouldn't be possible.
20      Q.   For example, you can't say you reviewed the
21 complete diligence files for McKesson in Cabell
22 County; correct?
23      A.   Well, that's a different question, is that
24 outside of discussing the trigger orders?

Page 405

5   STATE OF WEST VIRGINIA

6   COUNTY OF BROOKE, to wit;

9       I, Jennifer Vail-Kirkbride, a Notary Public and
10  Commissioner within and for the County and State
11  aforesaid, duly commissioned and qualified, do
12  hereby certify that the attached deposition
13  transcript of JAMES RAFALSKI meets the requirements
14  set forth within article twenty-seven, chapter
15  forty-seven of the West Virginia Code to the best of
16  my ability at the time I submitted the same to
17  Realtime Reporters, LLC, 713 Lee Street, Charleston,
18  West Virginia on September 15, 2020, for
19  distribution.  Said transcript was duly taken by me
20  and before me at the time and place and for the
21  purpose specified in the caption hereof, the said
22  witness having been by me first duly sworn remotely
23  during the pandemic.
24      I do further certify that the said deposition

Page 406

1  consisting of 409 pages was correctly taken by me in
2  stenotype notes, and that the same were accurately
3  written out in full and reduced to typewriting and
4  that the witness did request to read his transcript.
5
6
7  My Notary Public commission expires:  August 26,
8  2023.
9  My West Virginia Commissioner commission expires:
10 February 15, 2022.
11 Given under my hand this 15th day of September,
12 2023.
13
14
15
16                        *Jennifer Vail-Kirkbride* (signature)
17                        Registered Professional
                          Reporter
18                        RMR, CRR, FCRR, RPR, WV-CCR
19
20
21
22
23
24