# EXHIBIT 5

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

***********************************************************

THE CITY OF HUNTINGTON,

        Plaintiff,

v.                             CIVIL ACTION NO. 3:17-01362

AMERISOURCEBERGEN DRUG
CORPORATION, et al,

        Defendants.

CABELL COUNTY COMMISSION,

        Plaintiff,

vs.

AMERISOURCEBERGEN DRUG
CORPORATION, et al,

        Defendants.

***********************************************************

   Videotaped and videoconference deposition of
LACEY R. KELLER, MA, taken by the Defendants pursuant to
the  West Virginia Federal Rules of Civil Procedure, in
the above-entitled action, pursuant to notice, conducted
virtually via Zoom, before Twyla Donathan, Registered
Professional Reporter and Notary Public, on the 18th day
of September, 2020.

Page 48

1   order monitoring --
2                  MR. LEDLIE:  Let's get through this
3   one area --
4                  MR. METZ:  Two or three questions.
5                  MR. LEDLIE:  Let's do that.  Let's do
6   that.
7                  MR. METZ:  Okay.  We're back on the
8   record, I believe.
9   BY MR. METZ:
10       Q    Exhibit 4, page 148.
11       A    Yes.  I'm there.
12       Q    And do you see beginning -- if you want, I
13  can read the full thing, instead of halting and
14  stopping, but (audio distortion), since you have a
15  question:
16            Quote:  "You do not intend to offer any
17  opinions that these are, in fact, suspicious orders
18  or suspicious purchases by buyers that is beyond what
19  you were able to do and beyond your expertise,
20  correct?"
21            And you answered:  "Correct."
22            Do you see that?
23       A    Yes.
24       Q    And that was truthful testimony, correct?

Page 49

1    A    Yes.
2    Q    And at this deposition with the MDL Track
3 One, that is one of the prior matters you referenced
4 in answer to my earlier question about your
5 qualifications to opine on whether orders, in fact,
6 were suspicious orders, correct?
7              MR. LEDLIE:  Object to the form.
8    A    I did reference previous reports, yes,
9 where we had implemented compliance metrics, yes.
10   Q    And this is one of those engagements, yes?
11   A    Yes.
12   Q    Okay.  Now, would you open Exhibit 6 for
13 me, please.
14   A    I have it.  I'm sorry.  What did you ask?
15   Q    Could you identify for the record what
16 Exhibit 6 is?
17   A    It's from Veritext Legal Solutions,
18 January 23rd, 2020, 09:20 a.m.  Deposition of me in
19 the Matter of County of Nassau, New York, versus
20 Purdue Pharma, case No. 40008/217.
21   Q    And that is what we variously referred to
22 as the New York matter in earlier testimony today,
23 correct?
24   A    Right.

Page 54

1  which was your report in this matter.
2      A    Okay.
3      Q    In paragraph 24 of that report, you state
4  certain statistics about the relative share of opioid
5  pain medications prescribed by the top 1 percent of
6  opioid prescribers in Cabell County.  Do you see
7  that?
8      A    Yes, I see that.
9      Q    And I take it you don't have an opinion
10 that those statistics, without more, mean that those
11 prescribers were doing anything wrong?
12     A    Correct.  It's just math.
13     Q    And that's because you lack the expertise
14 to say whether their volume of prescribing relative
15 to other prescribers in the case, that they did
16 anything wrong?
17          MR. LEDLIE:  Object to the form.
18     A    Correct.
19     Q    It is outside of your expertise to know
20 whether a prescriber who was reported to law
21 enforcement or to a pharmacy would, for that reason,
22 stop prescribing opioid pain medications, correct?
23     A    I'm thinking about that.  So I can say that
24 I've seen documents or examples of prescribers that

Page 154

1  done that and applied analyses to determine what
2  levels various pain medicine practitioners had
3  prescribed opioids, would they at that point know
4  whether any of those doctors had engaged in improper
5  prescribing?
6      A   I don't know.  I can't --
7          MR. LEDLIE:  Objection.
8          No, I was delayed.  Object to the form
9  of the question.  You may answer.
10         THE DEPONENT:  I don't know.  I don't
11 know the expertise contained within there.  I'm
12 merely showing what could be shown from the data, the
13 exemplar position, and the prescribing over time.  I
14 don't know what distributors would have known about
15 proper or improper prescribing.
16     Q   What type of expert would a prescriber --
17 excuse me.  What type of expert would a wholesale
18 distributor have needed to hire in order to interpret
19 that analysis and decide whether or not the
20 prescribers were engaged in proper or improper
21 prescribing?  Who would they get to do such a thing?
22     A   I don't know.
23     Q   And certainly you acknowledge you don't
24 have the expertise to do that, correct?

Page 155

1  A   To decide whether a prescription is
2  improper or proper?  Correct.  I don't have that
3  expertise.
4  Q   And more so to describe -- to decide
5  whether or not a level of prescribing from a
6  practitioner is proper or improper, correct?
7  A   Correct.
8  Q   Do you expect that the West Virginia Board
9  of Medicine has experts available with the
10 perspective on whether or not a level of prescribing
11 is proper or improper?
12             MR. LEDLIE:  Object to the form.
13 A   I don't know.
14 Q   Do you expect that the West Virginia Board
15 of Pharmacy has experts available to it with the
16 perspective on whether a level of pain medication
17 dispensing was proper or improper?
18 A   I don't know.
19 Q   Do you expect that the CSMP of
20 West Virginia has in its employ experts with a
21 perspective on whether or not a level of prescribing
22 or dispensing was improper or proper?
23             MR. LEDLIE:  Form.
24 A   I don't know.

Page 168

1  report.
2     Q   Are you offering the opinion in this matter
3  that any of the prescriptions written by any of the
4  individual doctors identified in your report were
5  medically improper?
6     A   No.
7     Q   Are you offering the opinion that any of
8  the prescriptions of any of the individual doctors
9  referenced in your report were medically unnecessary?
10    A   I'm not offering that opinion.
11    Q   Are you offering the opinion that any of
12 the prescriptions -- prescription opioid medications
13 reflected in any of your analyses were diverted?
14    A   No, I'm not offering that opinion.
15    Q   Are you aware that many of the doctors who
16 are included in the analyses you performed in here,
17 but continues to be licensed practitioners in
18 West Virginia?
19    A   Yes.
20    Q   Are you aware that many of them have no
21 disciplinary -- no discipline on their records?
22    A   I think many of them do not.  Yes.  Do not
23 have discipline on their records.  One or two might
24 have a dismissed malpractice case, but, yes, many of

```
 1  STATE OF WEST VIRGINIA,

 2  COUNTY OF KANAWHA, to-wit:

 3

 4              I, Twyla Donathan, RPR, a duly commissioned
     Notary Public for the County and State herein, do hereby
 5   certify that the foregoing deposition of LACEY R. KELLER
     was duly taken by and before me via Zoom video
 6   conferencing  at the time and for the purpose specified
     in the caption hereof, the said witness having been by me
 7   first duly sworn.
                 That the foregoing is a true, correct, and
 8   full transcript of the testimony adduced to the best of my
     ability, given the challenges of Zoom video-conferencing
 9   audio/sound distortions, as taken by me in shorthand notes
     and thereafter accurately transcribed;
10              I further certify that I am neither attorney
     or counsel for, nor related to or employed by, any of the
11   parties to the action in which this deposition is taken;
     and further, that I am not a relative or employee of any
12   attorney or counsel employed by the parties or financially
     interested in the action; and that the attached transcript
13   meets the requirements set forth within Article 27,
     Chapter 47 of the West Virginia Code.
14

15              IN WITNESS WHEREOF, I have hereunto set

16  my hand this 22nd day of September, 2020.

17  _____

18                      TWYLA DONATHAN
                  Registered Professional Reporter
19            My commission expires September 11, 2022.

20

21                     OFFICIAL SEAL
                Notary Public, State of West Virginia
                       TWYLA DONATHAN
22          W. Supreme Court of Appeals, 13th Judicial Circuit
                 Judicial Annex 111 Court St. Rm. 425
                       Charleston, WV 25305
23           My commission expires September 11, 2022

24
```