# EXHIBIT 8

```
 1            IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF OHIO
 2                      EASTERN DIVISION
 3

         _____
 4

         IN RE:  NATIONAL PRESCRIPTION    MDL No. 2804
 5       OPIATE LITIGATION                Case No. 17-md-2804
 6
         This document relates to:        Judge Dan
 7                                        Aaron Polster
 8       The County of Cuyahoga v. Purdue
         Pharma, L.P., et al.
 9       Case No. 17-OP-45005
10       City of Cleveland, Ohio vs. Purdue
         Pharma, L.P., et al.
11       Case No. 18-OP-45132
12       The County of Summit, Ohio,
         et al. v. Purdue Pharma, L.P.,
13       et al.
         Case No. 18-OP-45090
14       _____
15
16
17
18         Videotaped Deposition of Joseph Rannazzisi
19                     Washington, D.C.
20                      April 26, 2019
21                        8:37 a.m.
22
23
24       Reported by:  Bonnie L. Russo
25       Job No. 3301876
```

Page 57

1   counsel.  And the agency made a decision that
2   ARCOS data was not -- was business proprietary
3   and was not going to be released in that
4   manner.
5           BY MR. EPPICH:
6       Q.  Would you give registrants any more
7   information or guidance about suspicious order
8   monitoring programs and suspicious orders?
9           MR. BENNETT:  Objection.
10  Speculation.  Objection.  Incomplete
11  hypothetical.
12          MR. UTTER:  Go ahead.
13          MR. BENNETT:  And objection.  Scope.
14          Sorry.
15          THE WITNESS:  I think that the
16  suspicious order monitoring regulation
17  1301.74(b) was -- the definition of suspicious
18  order is very straightforward.
19          I don't know what other information
20  I could provide to them to clarify what a
21  suspicious orders is without making a business
22  decision for them, which the regulations would
23  not allow me to do.
24          BY MR. EPPICH:
25      Q.  Would you change the regulations --

Page 58

1            MS. SINGER:  Objection.
2            BY MR. EPPICH:
3       Q.   -- if you were to go back?
4            MS. SINGER:  Objection.  Scope.
5            MR. BENNETT:  Object --
6            THE WITNESS:  I --
7            MR. BENNETT:  Hold on.
8            Objection.  Scope.  Objection.
9    Calls for speculation.  Objection.  Incomplete
10   hypothetical.
11            I will also instruct the witness
12   that, to the extent there were internal
13   deliberations that were not made public by the
14   DEA during your time there, you are not
15   authorized to disclose those internal
16   deliberations.
17            MR. UTTER:  Same objection.
18            Go ahead.
19            THE WITNESS:  The problem is -- is
20   the regulation change was not under my
21   authority.  The regulation change would be
22   under the authority of the administrator of the
23   Drug Enforcement Administration and Department
24   of Justice.
25            That's -- so whether I make that

Page 59

1    decision or not, the final decision is the
2    Department of Justice and the Drug Enforcement
3    Administration leadership.  So I -- I couldn't
4    answer that.
5            BY MR. EPPICH:
6        Q.    And you have no role in that
7    process?  You can't suggests a change?
8            MS. SINGER:  Objection.  Scope.
9            MR. BENNETT:  Objection.  Scope.
10           You are not authorized to disclose
11   internal deliberative process of the agency.
12   To the extent you can answer without disclosing
13   the internal deliberative process of the
14   agency, you may answer.
15           THE WITNESS:  I can't -- I can't
16   answer that question.
17           BY MR. EPPICH:
18       Q.    You've been criticized for your
19   actions by head of Office of Diversion Control.
20           MR. BENNETT:  Objection.
21           BY MR. EPPICH:
22       Q.    That's true, correct?
23           MS. SINGER:  Objection.  Vague.
24           MR. BENNETT:  Objection.  Vague.
25           THE WITNESS:  Do you have any

Page 64

1    on the record.  This is the start of Media Unit
2    No. 2.  The time is 9:37.
3            You may proceed, Counsel.
4            BY MR. EPPICH:
5       Q.   Mr. Rannazzisi, earlier today you
6    testified that the suspicious order monitoring
7    regulation is straightforward; is that correct?
8       A.   Yes, sir.
9       Q.   In your opinion, was the -- no
10   update is needed to that statute or regulation,
11   correct?
12           MR. BENNETT:  Objection.
13           MS. SINGER:  Objection.  Foundation.
14   Scope.
15           MR. BENNETT:  Objection.
16           I will instruct the witness that you
17   are not authorized to disclose any internal
18   deliberations that you had within the agency.
19           To the extent you can answer that
20   question without disclosing internal
21   deliberations that you had in the agency, you
22   may answer.
23           THE WITNESS:  I can't answer that
24   question, it's based on.
25           BY MR. EPPICH:

Page 76

1  MR. UTTER:  Same instruction not to
2  answer.
3  SPECIAL MASTER COHEN:  I think you
4  need to answer that question yes or no.
5  MR. UTTER:  Go ahead.
6  THE WITNESS:  Yes.
7  BY MR. EPPICH:
8  Q.  Which cases are you a paid
9  consultant for plaintiffs' lawyers in the
10  opioid litigation?
11  MR. UTTER:  I instruct you not to
12  answer.  Work product privilege, other cases
13  besides this one.
14  SPECIAL MASTER COHEN:  That one I
15  don't think you need to.
16  BY MR. EPPICH:
17  Q.  When did you start becoming a
18  consultant to plaintiffs' lawyers?
19  MS. SINGER:  Objection.  Scope.
20  MR. UTTER:  Go ahead.  You can
21  answer that.
22  THE WITNESS:  Yeah.  I am just
23  trying -- it was sometime I believe in --
24  sometime during 2016.
25  BY MR. EPPICH:

Page 97

1    scope.
2            MR. UTTER:  Same objection.
3            Go ahead.
4            THE WITNESS:  I -- I can't answer
5    that.  Because there's -- there's processes in
6    place to review and make a determination that
7    has other -- there's other components involved,
8    not just the Office of Diversion Control.
9            BY MR. O'CONNOR:
10       Q.   Was there ever a time at DEA that
11   the DEA granted a procurement quota to a
12   manufacturer it knew was diverting products?
13           MR. BENNETT:  Objection.  Scope.
14           You're not authorized to disclose
15   information regarding any specific nonpublic
16   DEA investigations or activities.
17           To the extent that there's public
18   information that allows you to answer this
19   question, you may.  But you may not disclose
20   any specific DEA investigations or activities
21   that are nonpublic.
22           THE WITNESS:  I can't answer that
23   question.
24           BY MR. O'CONNOR:
25       Q.   Mr. Rannazzisi, would you agree with