IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>    Defendants. | Civil Action No. 3:17-01362 |
| CABELL COUNTY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>    Defendants. | Civil Action No. 3:17-01665 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO EXCLUDE THE EXPERT TESTIMONY OF GEORGE BARRETT**

"[L]ike an oversized coat, [Mr. Barrett's] expert opinion cover[s] too much." *See Boca Raton Cmty. Hosp., Inc. v. Tenet Health Care Corp.*, 582 F.3d 1227, 1233 (11th Cir. 2009).

Mr. Barrett estimates the aggregate future costs over a fifteen-year period necessary to respond to or "abate" the opioid abuse crisis, projected to be incurred, without differentiation, by all federal government agencies, state government agencies, local government agencies, non-profit and private healthcare providers, public insurers such as Medicaid, employer and union health plans, private insurers, non-profit organizations, and more. Yet he makes absolutely no effort, and provides no guidance that would assist the Court, to disaggregate and pull out from these combined figures the minor costs that would be borne by the County and City Plaintiffs in this case.

Consequently, Mr. Barrett's testimony is too broad for the present case, does not "fit" and is unhelpful to the Court, and, therefore, should be excluded.

I. **Mr. Barrett's Testimony Should Be Excluded Because It Does Not "Fit" With the Facts of the Case, and Is Not Helpful to the Court.**

Mr. Barrett's testimony bears little connection to the possible remedial inquiry before this Court: if Defendants are found liable, what are the response or "abatement" costs that the County and City Plaintiffs will incur? The opinion Mr. Barrett offers does not help the Court answer that question. Indeed, Plaintiffs openly acknowledge that Mr. Barrett's testimony does not address the efforts that Plaintiffs can reasonably be expected to undertake to "abate" the alleged nuisance, offering, by way of explanation, the perverse justification that this inquiry—the *only* relevant inquiry—was outside the scope of Mr. Barrett's assignment. *See, e.g.*, Mem. in Opp. to Mot. to Exclude Barrett ("Plaintiffs' Opp'n") at 4-6.

"The relevance inquiry assures that the expert's proposed testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue,'" as required by Federal Rule of Evidence 702. *Garlinger v. Hardee's Food Systems, Inc.*, 16 F. App'x 232, 235 (4th Cir. 2001). "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* Therefore "a valid . . . connection between the expert's testimony and the pertinent inquiry [is] a precondition to admissibility." *Id.*

Mr. Barrett's testimony does not "fit" because he calculates, in the aggregate, the cost of Dr. Alexander's proposed "Abatement Plan" without offering the Court any path to understanding which of those costs the County and City Plaintiffs are likely to bear. Mr. Barrett acknowledges that there are existing programs directed to address the opioid abuse crisis, acknowledges that the most critical programs are run by other government, non-profit or private actors, and acknowledges that outside sources provide almost all of the funding for those programs. *See, e.g.*, Mem. Supp.

2

Defs.' Mot. to Exclude Barrett ("Defs.' Mot.") Ex. 2, Barrett Rep. ¶ 25.  But Mr. Barrett makes no effort to quantify the contributions of those outside programs and funding sources.  Conversely, he makes no effort to identify for the Court any incremental additional programs and resources, *within the area of responsibility of local government*, that will be necessary to address the opioid abuse crisis in the Cabell/Huntington Community.  And he makes no effort to assist the Court in determining the cost of those incremental programs and resources which the Court may order if liability is established.  Without such an offering, Mr. Barrett's opinion is utterly irrelevant to the Court.

Based on the generalized information and calculations that Mr. Barrett provides, the Court will not be able to identify the remedies it might consider if liability is established or what those remedies would cost.  For instance, Mr. Barrett calculates the future cost of treating OUD and other alleged co-morbidities to exceed $2 billion.  And he acknowledges that the bulk of these costs will be covered by Medicaid, which in turn is funded by the federal and state governments. Defs.' Mot. Ex. 1, Barrett Dep. 162:22-163:10.  However, there is absolutely no legal basis in this case, nor any logic, by which the County and City plaintiffs would have any claim to recover $2 billion in funds projected to be paid by non-party payors like Medicaid to non-party healthcare providers.  Consequently, Mr. Barrett's opinion that treatment of OUD and related conditions will cost various non-parties more than $2 billion over the course of the next fifteen years is of absolutely no relevance to the case and no help to the Court.

We are confident that the Court does not envision a remedy, if there were liability, by which the Court would dismantle Medicaid and other insurance programs within the County and City, to replace them with a Court-managed or county-managed, single-payor, public healthcare system for the treatment of OUD and other related conditions, funded by the $2 billion Plaintiffs seek for

3

treatment. The County and City do not provide nor pay for OUD or any other treatment, and will not start doing so. *Id.* 162:18-163:10. Similarly, foster care programs in West Virginia are run and funded by the West Virginia Department of Health and Human Resources, as Mr. Barrett concedes, not by county and city governments. *Id.* 236:3-10. Yet his "abatement costs" include projected costs for foster care services. Nor is there a viable scenario by which the local governments in the Cabell/Huntington Community will take over and begin funding the special education programs that are currently administered and paid for by the state and federal governments. *Id.* 224:13-21. And so on. Mr. Barrett's report is replete with such programs that are paid for by entities other than the County and City Plaintiffs, yet the costs for these programs are aggregated into the costs he says Plaintiffs are entitled to recover.

Plaintiffs attempt to deflect this critical issue by arguing that the Court can consider "offsets" or "credits" for programs they do not fund against the aggregate costs they are seeking. But costs that Plaintiffs have never paid in the past and will never pay in the future are not mere "offsets" or "credits" that must be deducted from some amorphous total cost—they are *irrelevant* to the Court's task and do not belong in the calculations in the first place. And, in any case, Plaintiffs' suggestion that the Court apply "offsets" or "credits" is a diversion because Mr. Barrett gives the Court no guidance to do so. All of Plaintiffs' expert reports have been served, and none make any effort to distinguish between costs paid by others and the very minor costs paid by Plaintiffs. An obvious impression is left that Plaintiffs have no intention to do so, but rather intend to throw up a $2.5 billion number stuffed with amounts paid by non-parties, to offer no help to disaggregate that number, and to see what sticks. Mr. Barrett certainly could have attempted to assist the Court by quantifying incremental treatment or other programmatic costs that Plaintiffs are likely to bear, if any, but he chose not to do so.

In an environmental ground pollution case brought by a public municipal landowner to recover clean-up costs, it would not be helpful to the court for the landowner's expert to opine as to the total clean-up costs incurred by the EPA and by all affected landowners combined. That total number would not help the court determine the recoverable clean-up costs incurred by the plaintiff municipality. The same is true here: Mr. Barrett's aggregate figures do not help this Court, if liability were found, determine the recoverable clean-up costs to be incurred by the County and City plaintiffs.

The remedial question in this case, if liability were to be found, is not one of "credits" or "offsets" against an amorphous amount of spending paid by non-parties, but rather of the narrow role and responsibility of these local governments. Mr. Barrett's opinion does not assist the Court in answering that question, and should therefore be excluded.

**II.     Judge Polster's Track One Decision Concerning Dr. Alexander's Different Opinion in That Case Does Not Counsel Denial of This Motion Concerning Mr. Barrett.**

Plaintiffs' suggestion that Judge Polster's decision in Track One concerning Dr. Alexander's testimony bars this *Daubert* motion against Mr. Barrett is misguided. Mr. Barrett was not as an proffered expert in Track One, and therefore obviously was not the subject of a *Daubert* motion there. Moreover, even Dr. Alexander's opinion in Track One, which estimated the cost of a national abatement plan and asserted that Cuyahoga and Summit Counties in Ohio would account for 1.5% of those national costs, was different from his opinion here. In any event, Judge Polster's decision concerning Dr. Alexander's different opinion in Track One cannot cure the lack of fit, and lack of helpfulness, of Mr. Barrett's opinion here. The only fit and help that Plaintiffs can possibly claim here comes after unspecified and unquantified deductions for costs paid by others, which would reduce Mr. Barrett's costs by nearly, but not quite, 100 percent.

### III. The Collateral Source Rule Is Inapplicable To This Case.

Plaintiffs' reliance on the collateral source rule is just the latest example of Plaintiffs taking an *a la carte* approach to tort law: asserting what they characterize as an equitable claim for abatement, but seeking to raise, when advantageous, principles only potentially available in damages actions. The collateral source rule is not available in this purportedly equitable action, and even if it were available would not apply.

Both the Restatement (Second) of Torts and *Kenny v. Liston*, 760 S.E.2d 434 (W.Va. 2014), which Plaintiffs cite liberally in their papers, confirm that the collateral source rule is a damages doctrine, and therefore inapplicable in this case. Indeed, the Restatement (Second) of Torts § 920A, rep. note (1979) states that the collateral source rule "has become a very significant aspect of the law of *damages*" and thus merits its own section. And in *Kenny*, the seminal case Plaintiffs repeatedly invoke, the only remedy sought was compensatory and punitive damages.

As discussed further in our opposition to Plaintiff's Motion *in Limine* to exclude evidence of collateral sources, the collateral source doctrine is particularly inapplicable where, as here, the vast majority of the funds Plaintiffs seek were paid by non-party insurers to non-party healthcare providers, and never were in the Plaintiffs' possession or intended to inure to Plaintiffs' benefit. Defendants refer to and incorporate points made in their opposition to the *in Limine* motion.

IV. **Conclusion**

For the reasons stated above, Defendants request that this Court exclude the testimony of George Barrett.

Dated: October 30, 2020

Respectfully submitted,

*/s/ Timothy C. Hester*
Timothy C. Hester (DC 370707)
Laura Flahive Wu
Andrew P. Stanner
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
lflahivewu@cov.com
astanner@cov.com

*/s/ Paul W. Schmidt*
Paul W. Schmidt
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: (212) 841-1000
pschmidt@cov.com

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*Counsel for McKesson Corporation*

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC

Post Office Box 553
Charleston, WV 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com


*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Drug Corporation*

*/s/ Steven R. Ruby*
Michael W. Carey (WVSB No. 635)
Steven R. Ruby (WVSB No. 10752)
David R. Pogue (WVSB No. 10806)
Raymond S. Franks II (WVSB No. 6523)
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
drpogue@cdkrlaw.com
rsfranks@cdkrlaw.com

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
Jennifer G. Wicht
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Tel: (202) 434-5000

Fax: (202) 434-5029
emainigi@wc.com
lheard @wc.com
ahardin@wc.com
jwicht@wc.com

*Counsel for Cardinal Health, Inc.*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 30th day of October 2020, the foregoing **Reply Memorandum of Law in Support of Defendants' Motion to Exclude the Expert Testimony of George Barrett** was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

<i>/s/ Timothy C. Hester</i><br>
Timothy C. Hester