# EXHIBIT 12

```
 1                                                                    1

 2       SUPREME COURT OF THE STATE OF NEW YORK
         COUNTY OF SUFFOLK: PART 48
 3       ----------------------------------------------------x

 4       IN RE: OPIOID LITIGATION

 5
                                      INDEX NO.:400000/2017
 6
         ----------------------------------------------------x
 7
                                      August 18, 2020
 8                                    Central Islip, New York

 9
                      MINUTES OF FRYE HEARING
10                    (Testimony of James Rafalski

11       B E F O R E:      HON. JERRY GARGUILO
                           Supreme Court Justice
12
         A P P E A R A N C E S:
13
         SIMMONS HANLY CONROY, LLC
14       Attorneys for Suffolk County
         112 Madison Avenue
15       New York, New York 10016
         BY:   PAUL J. HANLY, JR., ESQ.
16             JAYNE CONROY, ESQ,
               (212) 784-6401
17             phanly@simmonsfirm.com
               jconroy@simmonsfirm.com
18

19       NAPOLI SHKOLNIK, PLLC
         Attorneys for Nassau County
20       400 Broadhollow Road, Suite 305
         Melville, New York 11747
21       BY:   HUNTER SKOLNICK, ESQ.
               SALVATORE C. BADALA, ESQ.
22             JOSEPH L. CIACCIO, ESQ.
               (212)397-1000
23             pnapoli@napolilaw.com
               sbadala@napolilaw.com
24             jciaccio@napolilaw.com

25
```

```
 1                    Opioid Frye Hearing                    66
 2    but that the integrity of the system.  The person
 3    who designs -- the company that designs the system
 4    designs it, a trigger.
 5              So the 100 is the trigger.  The
 6    resolution of a 100 pill bottle would probably be an
 7    easy resolution, an easy due diligence.
 8    Hypothetically, that August number could be 30,000.
 9    So -- but the answer is yes, the system would stop
10    that order and it should.
11         Q.   Would it automatically report it
12    regardless of what that, what the company finds
13    looking at that order?
14         A    The system would report it.  No, sir.
15    That's up to the registrant.
16         Q.   Okay.  Now, your methodology, the six
17    months does not build in slight increases from month
18    to month in the threshold to account for the fact
19    that there are time periods in which prescribing
20    levels were increasing, correct?
21         A    Again, I don't want to correct you.
22    This isn't my methodology.  This was the methodology
23    that was used by Masters, and they elected not to
24    build that component into this system.
25              I just used the system as it was
```

```
 1                     Opioid Frye Hearing                    67
 2      designed.
 3            Q.   Sir, this methodology, Methodology A
 4      does not build in slight increases from month to
 5      month to account for time periods in which doctors
 6      were making the medical judgment to prescribe more
 7      opioids, right?
 8            A    It does not build that in, that's
 9      correct.
10            Q.   It doesn't adjust threshold levels at
11      all based on whether doctors are making the judgment
12      to prescribe more legitimate prescription opioids or
13      less, correct?
14            A    There's no components for doctors.  It's
15      up to the company that designed it to make the
16      decision on whether or not to ship increasing
17      amounts of that drug.
18            Q.   Should a suspicious order monitoring
19      program take into account changes in medical
20      practices such as whether doctors were prescribing
21      more or fewer prescription opioids?  Yes or no.
22            A    There's not a yes-or-no answer to that
23      because of the qualifications.
24            Q.   Okay.  Do you know of any generally
25      accepted methodology for detecting suspicious orders
```