# EXHIBIT 14

```
                                                          Page 1
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF SUFFOLK
 2
     - - - - - - - - - - - - - - - - - - - - - - -x
 3
     IN RE OPIOID LITIGATION
 4                                  Index No: 400000/2017
 5   _____
 6   This document relates to:
 7   The County of Nassau, New York v.
     Purdue Pharma L.P.,
 8   Case No. 400001/2017

     _____
 9   The County of Suffolk, New York v.
     Purdue Pharma L.P.,
10   Case No. 400008/2017

     _____
11   The People of the State of New York v.
     Purdue Pharma L.P.,
12   Case No. 400016/2018
13   - - - - - - - - - - - - - - - - - - - - - -x
14                        February 7, 2020
                          8:02 a.m.
15
16             Videotaped Deposition of
17   JAMES RAFALSKI, taken by Defendant,
18   pursuant to Notice, held at the Offices of
19   Napoli Shkolnik PLLC, 400 Broadhollow
20   Road, Melville, New York, before
21   Sharon Pearce, RMR, CRR, CRC, NYRCR, a
22   Registered Merit Reporter, Certified
23   Realtime Reporter, and Notary Public of
24   the State of New York.
```

1     Q.    A?

2     A.    A.

3     Q.    Okay.  Would any much them be
4  appropriate in your view for detecting
5  suspicious orders?  Would all five?  Any
6  of the five?

7           MS. KENDRICK:  Objection to
8     form.

9     A.    The first one is the only one
10 that I think would be plausible.

11    Q.    Okay.  You would not use the
12 other four.

13    A.    I would not.

14    Q.    And why is that?

15    A.    Well, when we talk about B and
16 C, to set a threshold amount for a company
17 and then to ship it two or three times, I
18 just don't think that that's feasible when
19 you're saying what's the usual.  The
20 methodology on the maximum 8,000 dosage
21 units monthly, just setting an arbitrary
22 maximum amount without knowing what the
23 needs of the customer are, I can't see any
24 rational use for that.

Page 332

1  reasonable person to believe that
2  controlled substances possibly are being
3  diverted.
4           Do you agree with that?
5      A.   Yes.
6      Q.   Okay.  So you get a suspicious
7  order, and if you continue to see those,
8  quote, over extended period of time, that
9  would lead a reasonable person to believe
10 that controlled substances possibly are
11 being diverted.
12          You agree with that?
13     A.   I don't think this is the best
14 language, but I agree that's what it's
15 saying.  Yes, sir.
16     Q.   Do you agree with the idea that
17 if you get --
18     A.   No.  I don't think it should
19 continue over an extended period of time
20 to come to that conclusion.
21     Q.   Okay.  So you disagree with this
22 part of the diversion investigators
23 manual.
24     A.   Yes, sir.

Page 333

1  Q. Yes? Okay.
2  You agree with me that what the
3  investigators manual is saying is you look
4  for suspicious order, and if you see that
5  repeat over time, that's when a reasonable
6  person would believe that controlled
7  substances possibly are being diverted;
8  correct?
9  A. Yes.
10  MS. KENDRICK: Objection to
11  form.
12  A. And so -- which means it
13  continues to ship after it continues to be
14  viewed as suspicious.
15  Q. Right.
16  A. And that would be the reason why
17  I don't agree with it.
18  Q. Okay. And this manual that you
19  are quoting from is from 1996; correct?
20  A. Yes.
21  Q. Do you know if that language
22  that we've been looking at was changed in
23  the 2011 version of the manual?
24  A. I believe it was.