# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, et al.,<br><br>    Defendants. | Civil Action No. 3:17-01362<br>Hon. David A. Faber |
| CABELL COUNTY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, et al.,<br><br>    Defendants. | Civil Action No. 3:17-01665<br>Hon. David A. Faber |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE
THE IMPROPER ERRATA OF JAMES RAFALSKI**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................. 1

II.  BACKGROUND ON MR. RAFALSKI'S ERRATA ......................................................... 1

    A.   Plaintiffs Attempt to Use Errata to Reverse Testimony on Whether Flagged Orders Should Be Reported. ....................................................................... 1

    B.   Plaintiffs Attempt to Use Errata to Correct Mr. Rafalski's Misunderstanding of His Own Methodology. ......................................................... 5

III. ARGUMENT ........................................................................................................................ 5

IV.  CONCLUSION .................................................................................................................... 9

i

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*EBC, Inc. v. Clark Bldg. Sys., Inc.*,
   618 F.3d 253 (3d Cir. 2010)..................................................................................................6

*E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
   277 F.R.D. 286 (E.D. Va. 2011) .........................................................................................6, 7

*Foutz v. Town of Vinton, Virginia*,
   211 F.R.D. 293 (W.D. Va. 2002)........................................................................................6, 7

*Holland v. Cedar Creek Mining, Inc.*,
   198 F.R.D. 651 (S.D. W. Va. 2001).......................................................................................7

*Lee v. Henrico County,*
   No. 3:18-cv-508, 2019 WL 1233850 (E.D. Va. Mar. 15, 2019)..............................................6

*Thorn v. Sundstrand Aerospace Corp.*,
   207 F.3d 383 (7th Cir. 2000) ..................................................................................................6

*Touchcom, Inc. v. Bereskin & Parr*,
   790 F. Supp. 2d 435 (E.D. Va. 2011) .....................................................................................6

*William L. Thorp Revocable Trust v. Ameritas Investment Corp.*,
   57 F. Supp. 3d 508 (E.D.N.C. 2014).......................................................................................6

*Wyeth v. Lupin Ltd.*,
   252 F.R.D. 295 (D. Md. 2008)............................................................................................6, 8

## I.      INTRODUCTION

Plaintiffs' proposed DEA expert, James Rafalski, made substantial concessions in his deposition about the limitations of and basis for his made-for-litigation order "flagging" methodology. Plaintiffs have since sought to undo some of those concessions through improper errata sheet changes that alter the substance of his testimony.

This motion seeks to strike two of the substantive changes made through that errata sheet: one that effectively changes a "No" concession to its opposite on an issue central to the pending *Daubert* motion regarding Mr. Rafalski; and another that eliminates a statement showing that Mr. Rafalski does not understand a fundamental component of his flagging methods. The changes should be stricken.[1]

## II.     BACKGROUND ON MR. RAFALSKI'S ERRATA

Defendants deposed Mr. Rafalski on September 11, 2020. On October 16, 2020, Plaintiffs submitted an errata sheet proposing nine changes to Mr. Rafalski's transcript.[2] Five of these changes plainly are substantive, and two of these changes are particularly material.[3]

### A.     Plaintiffs Attempt to Use Errata to Reverse Testimony on Whether Flagged Orders Should Be Reported.

Mr. Rafalski's preferred flagging methodology purports to show that more than 80% of each Defendant's orders in Cabell County were likely to be diverted.[4] Mr. Rafalski offers this

---

[1] Other witnesses have undertaken errata sheet changes to their testimony, but Defendants seek this relief as to Mr. Rafalski given his potentially critical role in this case, the nature of his changes, and the bearing these changes have on the pending *Daubert* motion regarding Mr. Rafalski.

[2] Ex. 1 (Rafalski Errata Sheet).

[3] *See* Ex. 1 (Rafalski Errata Sheet) (changes to Tr. at 41:19; 49:10; 88:11; 101:13; and 105:11); Ex. 2 (Rafalski Dep., Sept. 11, 2020) at 41:16-19; 49:7-10; 88:6-11; 101:10-13; and 105:7-11).

[4] Ex. 3 (Rafalski Expert Report) at 48-49 (providing results from Method A. Maximum Monthly, Trailing Six-Month Threshold).

view despite never reviewing the actual orders[5] and not knowing the assumptions that went into generating these calculations.[6]

At his deposition, Defendants asked Mr. Rafalski whether these tens of millions of orders all should have been reported to DEA as suspicious. Mr. Rafalski unequivocally answered "No."

> Q. Should they – should all of these tens of millions of orders that you flagged in Method A have been reported to the DEA as suspicious? Yes or no?
>
> A. ***No***.[7]

Plaintiffs subsequently attempted, through a 37-word errata correction, to undo Mr. Rafalski's straightforward, one-word answer that Defendants should ***not*** have reported every flagged order into a statement that Defendants ***should*** have reported ***every*** flagged order:

> No, ***I can't tell what realistically should have been reported*** because the due diligence conducted by the defendants was insufficient. Because of this failure on their part, ***defendants would have no option but to report every flagged order***.[8]

But his concession in the deposition was no mistake, as the answers that he gave immediately following the admission he now seeks to change make clear:

---

[5] Ex. 2 (Rafalski Dep., Sept. 11, 2020) at 87:21-23 ("Q. You've not reviewed each of those flagged orders; correct? A. No, sir."); *id*. at 87:24-88:2 ("Q. Do you know how many of the tens of millions you've actually reviewed? A. Yes, I have not reviewed any of them."); *id*. at 88:12-15 ("Q. Okay. Did you individually review any of [the flagged orders] to see if you just looked at the order on its face whether you would consider it to be suspicious? A. No, sir."); *id*. at 91:10-15 ("Q. …[D]id you actually look at any of the individual ones to say, 'When I look at this individual one, this looks like it's likely to be diverted'? A. No, sir, not individually.").

[6] Ex. 2 (Rafalski Dep., Sept. 11, 2020) at 85:9-18; *id*. at 306:24-307:9 ("…Q. Okay. Tell me the ten assumptions he made in coming up with his code that he testified about under oath. A. I do not know all ten; no, sir."); *see also* Ex. 4 (Aug. 18 *Frye* Tr.) at 61:18-22 ("Q. Okay. Do you know what the 5 to 10 decisions he had to make to be able to perform his Method A calculation that you relied on? Do you know what those 5 to 10 decisions were? A No, sir."); Ex. 5 (Aug. 19 *Frye* Tr.) at 117:22-25 (McCann admitting that he never asked Mr. Rafalski to check his work).

[7] Ex. 2 (Rafalski Dep., Sept. 11, 2020) at 101:10-13.

[8] Ex. 1 (Rafalski Errata Sheet) (emphasis added).

> Q. Should they – should all of these tens of millions of orders that you flagged in Method A have been reported to the DEA as suspicious? Yes or no?
>
> A. *No*.[9]
>
> Q. Okay. How many should have been reported to the DEA as suspicious?
>
> A. *The nature of my application of the methodology, the algorithm, wasn't for the purpose to identify orders that would be reported to DEA*. It was just a triggering mechanism to identify orders from the transaction data from the defendants. It – it would – it's a much – it's broader, it's a broader requirement for the defendants than – than just to – for me to apply an algorithm to their transactional data and then say they should have reported them. That's – I mean, that's outside of what occurred here.
>
> Q. Okay. So these tens of millions of orders, can you give me any definition as to whether any of them, and if so how many, should have been reported to the DEA as suspicious?
>
> A. *I – I didn't do that kind of evaluations. No, I can't give you a number, sir*.[10]

Thus, the "No" answer that Plaintiffs seek effectively to change to a "Yes" is directly at odds with the subsequent answers that Mr. Rafalski gave in his deposition.

Plaintiffs' opposition to Defendants' *Daubert* motion regarding Mr. Rafalski underscores why this after-the-fact attempt to change Mr. Rafalski's testimony is significant.[11] That opposition depends on the proposition that Mr. Rafalski's methodologies flag orders that are

---

[9] As noted, Plaintiffs seek to change this "No" answer through errata to: "No, I can't tell what realistically should have been reported because the due diligence conducted by the defendants was insufficient. Because of this failure on their part, defendants would have no option but to report every flagged order." *See* Ex. 1 (Rafalski Errata Sheet).

[10] Ex. 2 (Rafalski Dep, Sept. 11, 2020) at 101:10-102:8 (emphasis added).

[11] *See* Plaintiffs' Memorandum in Opposition to Defendants' *Daubert* Motion to Exclude the Opinions of James E. Rafalski, Dkt. No. 1108.

3

"suspicious" and therefore must be reported—the very proposition he disavowed at deposition.[12] Indeed, Plaintiffs defend the defects in Mr. Rafalski's methodology—such as his failure to review any actual orders—by characterizing his methodology in a way that is directly opposite to his sworn deposition testimony and only supported—arguably—by his errata reversal:

> Given the focus of his opinion – Defendants' systemic failure to identify suspicious orders and conduct adequate due diligence in the first place – there was no reason for Mr. Rafalski to review each order separately to determine whether a specific order was in fact suspicious and should not have been shipped.[13]

Similarly, Plaintiffs defend Mr. Rafalski's opinion that his flagged orders were "likely to be diverted" almost entirely by reference to this proposition that Mr. Rafalski disavowed at his deposition. Plaintiffs argue that *suspicious orders* "that were routinely shipped without due diligence were likely to be diverted" (an unsupported, faulty premise to begin with), notwithstanding Mr. Rafalski's clear admission that the orders he flagged may not have been suspicious at all.[14] And, even the errata cannot overcome the admission that Mr. Rafalski does not know which orders should have been reported. He continues to say, "***I can't tell what realistically should have been reported* . . . .**" His new fallback position requiring every flagged order to be reported to DEA is baseless.

---

[12] *See id.* at 15 ("Mr. Rafalski provides an estimate of the suspicious orders that Defendants would have identified had they employed a reliable methodology, including, for example, Methods A and/or B."); *id.* at 2, 4, 5, 6, 12, 13, 15, 16, 21 (same).

[13] *Id.* at 21.

[14] *See id.* at 22 (discussing Mr. Rafalski's supposed "opinion that suspicious opioid orders that were routinely shipped without due diligence were likely to be diverted").

4

### B. Plaintiffs Attempt to Use Errata to Correct Mr. Rafalski's Misunderstanding of His Own Methodology.

Mr. Rafalski's methodology assumes that, once an individual order to a pharmacy is flagged, every subsequent order to that specific pharmacy is flagged.[15] At his deposition, however, Mr. Rafalski fundamentally misstated his methodology. He erroneously stated that his methodology assumed that, once an individual order at *any* pharmacy is flagged, all subsequent orders at *all* subsequent pharmacies are flagged.

> Q. Like, let's take an example of the 11.6 million oxycodone orders for ABDC, how many of those 11.6 million were initial orders and how many of them just came along due to the assumption?
>
> A. One initial order.[16]

The errata sheet attempts to correct this answer to "One initial order ***per pharmacy***."[17] Notably, the errata does not seek to correct Mr. Rafalski's same misunderstanding on the very next page of his testimony:

> Q. Okay. And so am I correct that for Method A, ***for each defendant there is one, single order that drives the remaining millions of orders that you have flagged***?
>
> A. ***Yes, sir***.[18]

## III. ARGUMENT

The Court should strike Mr. Rafalski's errata sheet because it makes improper substantive changes to Mr. Rafalski's testimony. While the Fourth Circuit has not yet defined the scope of permissible changes on an errata sheet, many district courts in the circuit that have

---

[15] Ex. 3 (Rafalski Expert Report) at 47.

[16] Ex. 2 (Rafalski Dep, Sept. 11, 2020) at 105:7-11.

[17] Ex. 1 (Rafalski Errata Sheet) (emphasis added).

[18] Ex. 2 (Rafalski Dep., Sept. 11, 2020) at 106:5-9 (emphasis added).

5

addressed the issue hold that Rule 30(e) of the Federal Rules of Civil Procedure permits only corrections to transcription errors made by the court reporter: "[T]he purpose of an errata sheet is to *correct alleged inaccuracies* in what the deponent *said* at his deposition, not to modify what the deponent said for tactical reasons or to reflect what he wishes that he had said." *Touchcom, Inc. v. Bereskin & Parr*, 790 F. Supp. 2d 435, 465 (E.D. Va. 2011) (condemning an errata sheet that made "tactical adjustment[s]" to the witness's testimony); *see also Lee v. Henrico County*, No. 3:18-cv-508, 2019 WL 1233850, at *2 (E.D. Va. Mar. 15, 2019) (striking substantive changes that contradict the witness's deposition testimony); *William L. Thorp Revocable Trust v. Ameritas Investment Corp.*, 57 F. Supp. 3d 508, 517-18 (E.D.N.C. 2014) (striking plaintiffs' errata sheet which made "significant, material changes that modify and contradict [the witness's] original testimony regarding material issues in the litigation"); *E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 277 F.R.D. 286, 298 (E.D. Va. 2011) (following the "more restrictive approach to applying Rule 30(e)" and allowing only the correction of demonstrated errors made by the court reporter); *Wyeth v. Lupin Ltd.*, 252 F.R.D. 295, 297 (D. Md. 2008) (holding that the defendant could not "change testimony in a material way" through an errata sheet).[19]

By contrast, some courts in the Fourth Circuit have taken a more liberal approach to errata sheets, under which a deponent may make substantive changes to his prior testimony through an errata sheet. *See Foutz v. Town of Vinton, Virginia*, 211 F.R.D. 293, 295 (W.D. Va.

---

[19] *Accord EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 268 (3d Cir. 2010) ("Where proposed changes squarely contradict earlier testimony materially bearing on the case, preserving the original testimony or reopening the deposition may often prove to be insufficient remedies . . . [and] could risk the defeat of summary judgment in a large swath of cases for which a Rule 56 disposition otherwise would be appropriate."); *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000) ("[A] change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not.'").

2002); *Holland v. Cedar Creek Mining, Inc.*, 198 F.R.D. 651, 653 (S.D. W. Va. 2001).  Under this approach, however, the court will either re-open the witness's deposition or ensure that both versions of the deponent's testimony remain in the record for purposes of cross examination at trial.  *See id.*

As the other line of cases explain, however, "[i]t makes no sense to allow a deponent to change sworn testimony merely because after the deposition he wishes that he had said something other than what was said." *Kolon Indus.*, 277 F.R.D. at 297.  As these cases observe, substantive errata changes, like Mr. Rafalski's, are not allowed because a contrary rule would undermine the basic purpose of taking depositions:

> The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.

*Id.*  The basic purpose of a deposition—to elicit facts before trial and memorialize witness testimony before his recollection has been altered by suggestions of lawyers—is "disserved" by allowing deponents and their lawyers "later to craft answers that better serve the deponent's cause." *Id*.  Allowing a deponent to make substantive changes in an errata sheet "makes a mockery of the serious and important role that depositions play in the litigation process" and "would be to set at naught the efficacy of the deposition process." *Id*.  Moreover, it leads to "substantial additional litigation expenses" by making it necessary to reopen the deposition or prolong cross examination at trial to address the changes.  *Id*. at 297-98.

Like the errata in *Kolon Industries*, the changes on Mr. Rafalski's errata sheet do not result from transcriptional or typographical errors made by the court reporter, but are substantive changes to testimony concerning issues central to the case.  The first errata change seeks to remove a concession about the arbitrariness of his methodology:  Mr. Rafalski cannot even say if

7

the orders he flagged met the definition of suspicious orders such that they should have been reported to DEA. In addition to being material to Mr. Rafalski's deposition testimony, Plaintiffs are trying to use the errata to defeat Defendants' *Daubert* motion. Mr. Rafalski's original concession refutes the core point animating Plaintiffs' *Daubert* Opposition: that Mr. Rafalski's flagging methods identified actual reportable suspicious orders.[20]

In addition, the concession specifically refutes Plaintiffs' attempts to justify two core defects in his methodology. First, Plaintiffs seek to excuse his failure to review any actual orders by claiming that was unnecessary because the flagged orders all met the regulatory definition of being reportable suspicious orders.[21] Second, Plaintiffs seek to justify Mr. Rafalski's completely unsupported opinion that nearly every shipped order was "likely to be diverted" by claiming that he was identifying reportable suspicious orders, and orders that are suspicious are by definition "likely to be diverted."[22] Both attempts to defend Mr. Rafalski's methodology crumble if his substantive errata sheet change is stricken.

The second errata change seeks to allow Mr. Rafalski to conceal the fact that, even though he affirmed at the start of his deposition that he was "ready to testify fully regarding the opinions in [his] report,"[23] he had not done the work necessary to understand the methodology he was employing. An expert's fundamental misunderstanding of his own methodology is relevant both at trial and at *Daubert* and cannot be erased through a substantive errata change.

Both of these changes are precisely the type of "lawyerly fixing of potentially problematic testimony" that courts in the Fourth Circuit reject. *Wyeth*, 252 F.R.D. at 297. And it

---

[20] *See* Dkt. No. 1108 at 2, 4, 5, 6, 12, 13, 15, 16, 21.

[21] *See id*. at 21.

[22] *See id.* at 22.

[23] Ex. 2 (Rafalski Dep, Sept. 11, 2020) at 10:5-7.

is particularly appropriate to strike the errata sheet given that Plaintiffs' counsel had and took the opportunity to ask Mr. Rafalski questions at his deposition, but simply chose not to question on these errata points. Had Plaintiffs' counsel questioned at deposition on these errata points, Defendants could have then asked full follow-up questions. But Plaintiffs cannot now substantively change sworn testimony simply because they do not like the testimony. Such gamesmanship should be rejected by this Court.

## IV. CONCLUSION

For these reasons, the Court should strike the errata sheet of James Rafalski.

Dated: October 30, 2020    Respectfully submitted,

*/s/ Timothy C. Hester*
Timothy C. Hester (DC 370707)
Laura Flahive Wu
Andrew P. Stanner
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
lflahivewu@cov.com
astanner@cov.com

*/s/ Paul W. Schmidt*
Paul W. Schmidt
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: (212) 841-1000
pschmidt@cov.com

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*Counsel for McKesson Corporation*

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, WV 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

10


/s/ Robert A. Nicholas
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Drug Corporation*

/s/ Steven R. Ruby
Michael W. Carey (WVSB No. 635)
Steven R. Ruby (WVSB No. 10752)
David R. Pogue (WVSB No. 10806)
Raymond S. Franks II (WVSB No. 6523)
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
drpogue@cdkrlaw.com
rsfranks@cdkrlaw.com

/s/ Enu Mainigi
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
Jennifer G. Wicht
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Tel:  (202) 434-5000
Fax:  (202) 434-5029
emainigi@wc.com
lheard @wc.com
ahardin@wc.com
jwicht@wc.com

*Counsel for Cardinal Health, Inc.*

11

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on October 30, 2020, the foregoing *Memorandum in Support of Defendants' Motion to Strike the Improper Errata of James Rafalski* was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: October 30, 2020                    */s/ Timothy C. Hester*
                                            Timothy C. Hester