Ex 2 – Evidentiary Order, In re: Nat'l Prescription Opiate Litigation, 1:17-md-02804, Doc No. 3052

Plaintiffs' Reply in Support of Motion for Partial Summary Judgment Concerning Defendants' Statutory and Regulatory Duties

Case 3:17-cv-01362 Document #: 1045-2 Filed 12/30/20 Page 2 of 6 PageID #: 39495

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| | ) | JUDGE POLSTER |
| THIS DOCUMENT RELATES TO: *All Cases* | ) ) ) | |
| | ) | **EVIDENTIARY ORDER** |

Shortly before the start of the first bellwether trial in this MDL, the Court delivered oral rulings on a number of pretrial motions in limine ("MIL") and other evidentiary motions. *See* Doc. #: 2828 (transcript Oct. 15, 2019). The Court now memorializes those evidentiary rulings in summary form. These rulings will apply to all future cases in this MDL that are tried by this Court. Additionally, as a general matter, these rulings apply to remanded cases tried by transferor courts. *See* David F. Herr, *Multidistrict Litigation Manual* §10:5 (May 2019 update) ("The transferor court (court to which the actions are remanded) receives the cases in the condition they are in at the time of remand. Decisions that have been made in the case continue to apply unless circumstances change warranting their modification. The decisions made by the transferee court are considered 'law of the case.'") (footnotes omitted). *See also Manual for Complex Litigation, Fourth* § 20.132 at 224-25 (2004) (before remand of cases to transferor courts, the transferee court should enter "a pretrial order that fully chronicles the proceedings, summarizes the rulings that will affect further proceedings, outlines the issues remaining for discovery and trial, and indicates the nature and expected duration of further pretrial proceedings"); *In re Welding Fume Prods. Liab. Litig.*, MDL No. 1535, 2010 WL 7699456 (N.D. Ohio June 4, 2010) (entering this type of order).

CSA Requirements.

- Plaintiffs MIL No. 13[48] (seeking to preclude arguments that the CSA and its implementing regulations do not impose, or have not always imposed, duties on registrants to identify, report, and not ship suspicious orders) – GRANTED.

The Court agrees with Plaintiffs that Defendants may not argue or suggest that the CSA and its implementing regulations have not always imposed the duties that this Court has already determined, *i.e.* that registrants must identify, report, and not ship suspicious orders (unless due diligence reasonably dispels the suspicion). The Court rejects Defendants' contention that whether the CSA has "always imposed" these duties is a question of fact for the jury.[49] However, this ruling does *not* preclude Defendants from presenting evidence that the DEA's guidance has been inconsistent or shifted over time, to the extent such evidence may be relevant to determining issues regarding Defendants' intent or state of mind, or whether Defendants substantially complied with their duties under the CSA.

---

[48] Pls. Mtn. at 10-11 (Doc. #: 2652); Dfs. Opp. at 13-14 (Doc. #: 2725); Pls. Reply at 8-10 (Doc. #: 2805).

[49] Defendants mistakenly assert that, in ruling on Plaintiffs' motions for summary judgment regarding CSA duties, this Court found that whether the CSA has "always imposed" such duties presents "material facts in dispute that must be resolved by a jury." Dfs. Opp. at 13 (Doc. #: 2725). In fact, the Court held that material issues of fact existed as to whether Defendants had violated or not substantially complied with their duties under the CSA – not whether the duties themselves had always existed or changed over time. *See* SJ Order on CSA Duties at 28-29 (Doc. #: 2483).

CSA Violations.

- Defendants MIL No. 7[50] (seeking to exclude evidence that Defendants violated their duties under the CSA or its implementing regulations) – DENIED.

Defendants argue evidence of whether they violated their CSA duties is irrelevant to Plaintiffs' claims. As previously discussed, the Court has found that evidence of the Defendants' alleged CSA violations is relevant to the RICO, civil conspiracy, and public nuisance claims. Accordingly, the Court denies this motion.

- Cardinal MIL No. 1[51] (Doc. #: 2653) (seeking to exclude evidence of 14,000 suspicious orders that Cardinal Health did not report or ship) – DENIED.

Cardinal seeks to exclude evidence of approximately 14,000 suspicious orders from 2012 to 2015 that it did not report to the DEA and also did not ship. This evidence is relevant to Plaintiffs' claims that Cardinal failed to maintain effective controls against the diversion of prescription opioids, including that Cardinal failed to establish an effective SOMS even after it was subject to DEA actions in 2008 and 2012. That Cardinal did not ship the orders does not make irrelevant the fact that it violated the "reporting requirement," which is a central issue in this case. The Court rejects Cardinal's arguments that this evidence is irrelevant because Cardinal did not actually ship the orders and the DEA did not take any enforcement action when it learned of the omission. These are matters for the jury's determination.

- **Witness Testimony.**

---

[50] Defs. Mtn. at 18-22 (Doc. #: 2661); Pls. Opp. at 34-41 (Doc. #: 2727); Defs. Reply at 18-21 (Doc. #: 2800).

[51] Cardinal Mem. at 1-4 (Doc. #: 2653-1); Pls. Opp. at 87-89 (Doc. #: 2727); Cardinal Reply at 1-2 (Doc. #: 2803).

26

motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1). Absent an adequate opportunity to develop the former testimony, it should not be admitted.[54]

The Court declines to provide a blanket exclusion of testimonial evidence that was: (1) taken in parallel litigation in which Plaintiffs did not participate, and (2) not produced to Plaintiffs during the MDL discovery period. The Court will address the admissibility of such testimony in the context of the specific evidence offered at trial, applying the analysis as instructed by the Sixth Circuit in *Dykes v. Raymark Indus., Inc.*, 801 F.2d 810, 816 (6th Cir. 1986).[55] In other words, as the party seeking to exclude prior testimonial evidence of unavailable witnesses, Plaintiffs must explain "as clearly as possible to the [Court] precisely why the motive and opportunity of the [plaintiff] in the first case was not adequate to develop the cross-examination which the instant [Plaintiffs] would have presented to the witness." *Dykes*, 801 F.2d at 816. Prior to offering the testimony of an unavailable witness, the proponent must seek an admissibility ruling from the Court outside the

---

[54] *See In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 WL 12747961, at *14 (N.D. Ohio Mar. 6, 2015) (deposition testimony in companion case was not admissible where plaintiffs showed they had no opportunity to examine the witnesses and the parties who deposed them had different motives and interests); *Guthrie v. Ball*, No. 1:11-cv-333-SKL, 2014 WL 11581410, at *16 (E.D. Tenn. Oct. 10, 2014) (excluding deposition testimony taken in unrelated cases where defendant was not a party, except for impeachment purposes if the deponent testified at trial).

[55] In *Dykes*, the Sixth Circuit explained that, under "the preferred approach" for determining the admissibility of former testimony, attorneys must present the circumstances under which the original deposition was taken "so that a full understanding of the motives in the first case can be obtained." *Id.* The Sixth Circuit noted that, in light of the potential prejudice that can accrue to a party against whom a deposition is introduced, where that party never had an opportunity to adequately respond, it is incumbent upon counsel – when objecting to the admissibility of such proof – "to explain as clearly as possible" precisely why the motive and opportunity of the party in the first case was not adequate to develop the examination which the instant party would have presented to the witness. *Id.* at 817. This includes informing the Court of "precisely what lines of questioning [the instant party] would have pursued." *Id.*

jury's presence to avoid potential prejudice. *See id.* at 817 (stressing the importance of analyzing potential prejudice where the party seeking exclusion lacked an opportunity to refute the proffered testimony).

Lay Testimony Regarding the Gateway Theory.

- Defendants MIL No. 4[56] (seeking to exclude lay testimony that prescription opioids create a "Gateway" to illicit opioid use) – DENIED as to factual testimony; GRANTED as to "expert" opinion.

Defendants seek to preclude testimony by Dr. Thomas Gilson, Medical Examiner for Cuyahoga County, about the "Gateway theory," *i.e.* that people who suffer prescription opioid addiction tend to evolve toward illicit opioid (heroin) addiction.[57] The crux of this motion depends on whether Gilson's testimony is *factual*, as opposed to *expert* opinion. A witness who happens to be an expert but is presenting non-opinion testimony not need to be disclosed as an expert. *See Jones v. Pramstaller*, No. 1:09-CV-392, 2013 WL 12249827, at *1 (W.D. Mich. Jan. 14, 2013) (if a witness presents only eyewitness testimony, it is not necessary to disclose him as an expert). However, if the witness also intends to express opinions regarding "scientific, technical, or other specialized knowledge," he must be disclosed as an expert witness under Rule 26(a)(2). *See id.*

Here, it appears that much of Gilson's testimony is *factually based*, including his investigation of data as County Medical Examiner that revealed a link between prescription opioid use and deaths caused by heroin/fetanyl. To the extent Gilson's testimony is factually based – that

---

[56] Defs. Mtn. at 11-13 (Doc. #: 2661); Pls. Opp. at 17-21 (Doc. #: 2727); Defs. Reply at 9-12 (Doc. #: 2800).

[57] The Court previously overruled Defendants' motion to exclude Gateway testimony by Plaintiffs' experts. *See Daubert* Order re: Keyes, Lembke, and Gruber (Doc. #: 2518).