# EXHIBIT 21

Highly Confidential - Subject to Further Confidentiality Review

```
 1              IN THE UNITED STATES DISTRICT COURT
 2              FOR THE NORTHERN DISTRICT OF OHIO
 3                        EASTERN DIVISION
 4                            - - -
 5

    IN RE:  NATIONAL                :    MDL NO. 2804
 6  PRESCRIPTION OPIATE             :
    LITIGATION                      :
 7                                  :
    ---------------------------------------------------
 8  THIS DOCUMENT RELATES TO        :    CASE NO.
    ALL CASES                       :    1:17-MD-2804
 9                                  :
                                    :    Hon. Dan A.
10                                  :    Polster
11                            - - -
12                      February 8, 2019
13                            - - -

            HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
14                    CONFIDENTIALITY REVIEW
15
16              Continued videotaped deposition
    of STEPHEN MAYS taken pursuant to notice, was
17  held at the law offices of Reed Smith LLP, Three
    Logan Square, 1717 Arch Street, Suite 3100,
18  Philadelphia, Pennsylvania, beginning at 11:12
    a.m., on the above date, before Ann Marie
19  Mitchell, a Federally Approved Certified Realtime
    Reporter, Registered Diplomate Reporter,
20  Registered Merit Reporter and Notary Public.
21
                              - - -
22
                  GOLKOW LITIGATION SERVICES
23          877.370.3377 ph | 917.591.5672 fax
                      deps@golkow.com
24
```

Golkow Litigation Services                                    Page 1

Highly Confidential - Subject to Further Confidentiality Review

```
 1    Justice they were wrong.  Correct?
 2                MS. McCLURE:  Objection to form.
 3                THE WITNESS:  I don't know.
 4    BY MR. PIFKO:
 5         Q.   Sitting here today, you're not
 6    aware of anyone responding to the Department of
 7    Justice in connection with this and saying the
 8    sales figures you're providing in your letter are
 9    incorrect.
10                Would you agree with that?
11                MS. McCLURE:  Objection to form.
12                THE WITNESS:  Again, I don't know
13         what was said.
14    BY MR. PIFKO:
15         Q.   What was your title at this time?
16         A.   2007, I would have -- I believe I
17    was director of regulatory affairs.
18         Q.   Were the policies and procedures
19    at the Orlando facility consistent with the
20    company's policies around the country?
21                MS. McCLURE:  Objection to form.
22                THE WITNESS:  Yes, they were.
23    BY MR. PIFKO:
24         Q.   So with respect to diversion
```

```
 1                    MS. McCLURE:  Objection, asked
 2         and answered.
 3                    THE WITNESS:  Would that be prior
 4         to the suspension?
 5   BY MR. PIFKO:
 6         Q.    Yes.
 7         A.    Is that what you're asking?
 8         Q.    Yes.
 9         A.    As I recall, it would be the same
10   as any of the other facilities.
11         Q.    Okay.  So at the time this letter
12   was sent, AmerisourceBergen's diversion control
13   systems were the same at all of its distribution
14   centers.  Correct?
15                    MS. McCLURE:  Objection to form.
16                    THE WITNESS:  That's what I
17         recall, yes.
18   BY MR. PIFKO:
19         Q.    So anything occurring at this
20   Orlando facility could be occurring at any other
21   distribution center.  Correct?
22                    MS. McCLURE:  Objection, form.
23                    THE WITNESS:  I disagree.
24   BY MR. PIFKO:
```

```
 1          Q.     What do you disagree?
 2          A.     Because they're a different
 3   customer base, different region of the country.
 4          Q.     But with respect to
 5   AmerisourceBergen's procedures, the same things
 6   that are occurring at this facility are the same
 7   thing that are occurring at other facilities.
 8   Correct?
 9                 MS. McCLURE:  Objection to form.
10                 THE WITNESS:  As far as our
11          procedures and how -- our policies and
12          procedures, yes, they're -- they would be
13          the same for all of the distribution
14          centers.
15   BY MR. PIFKO:
16          Q.     Okay.  Did AmerisourceBergen
17   employ any sort of different system to monitor
18   internet pharmacies as opposed to retail
19   pharmacies or chain pharmacies?
20                 MS. McCLURE:  Objection, form.
21                 THE WITNESS:  No.  As far as a
22          system itself, no.
23   BY MR. PIFKO:
24          Q.     So AmerisourceBergen's system
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1   used to monitor internet pharmacies was the same
 2   system that it used to monitor retail and chain
 3   pharmacies.  Correct?
 4                MS. McCLURE:  Objection, form.
 5                THE WITNESS:  Well, we weren't
 6         specifically monitoring internet
 7         pharmacies.  We were monitoring our
 8         customers, our pharmacy customers.
 9   BY MR. PIFKO:
10         Q.    And that system that was used was
11   the same for all customers, regardless of the
12   type of customers.  Correct?
13                MS. McCLURE:  Objection to form,
14         asked and answered.
15                THE WITNESS:  As I recall, yes.
16   BY MR. PIFKO:
17         Q.    Let's go to page 2 of Exhibit 1.
18         A.    Okay.
19         Q.    So looking at paragraph 4, it
20   says, the bottom of paragraph 4, "Respondent
21   distributed hydrocodone under the following
22   circumstances that should have alerted Respondent
23   that the pharmacies were diverting hydrocodone."
24                Do you see that?
```