IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*,<br><br>    Defendants. | Civil Action No. 3:17-01362<br>Hon. David A. Faber |
| CABELL COUNTY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*,<br><br>    Defendants. | Civil Action No. 3:17-01665<br>Hon. David A. Faber |

**REPLY IN SUPPORT OF
DEFENDANTS' MOTION TO EXCLUDE THE
<u>TESTIMONY OF DR. RAHUL GUPTA</u>**

Plaintiffs' Opposition rests on a technical, legalistic argument that ignores the reality of what is happening. Plaintiffs' counsel retained Dr. Gupta in the MLP litigation at a rate of $500 per hour to opine about abatement and testify about his work as Department of Health and Human Resources Health Commissioner and Executive Director of the Kanawha-Charleston Health Department. The same lawyers present him in this case to testify on the same topics, but seek to pass him off as a neutral expert, beholden to no one and with no financial interest in his

testimony. He is, in reality, a retained expert, and Plaintiffs should have provided a Rule 26(a)(2)(B) report. Because they did not do so, the Court should exclude his testimony.

Even if Dr. Gupta is deemed a non-retained expert, Plaintiffs failed to provide the summary of facts and opinions required for such experts by Rule 26(a)(2)(C).

## ARGUMENT

### A.   The Court Should Bar Any Expert Testimony by Dr. Gupta

Plaintiffs argue that, because they have not formally retained Dr. Gupta in this case, they were under no obligation to provide an expert report under Rule 26(a)(2)(B). "It is of no moment," they say, "that 'Dr. Gupta testified in this case about the subject matter for which Plaintiffs' counsel are paying him as a retained expert in the MLP litigation.'"[1] This argument elevates form over substance. Plaintiffs acknowledge both that Dr. Gupta has been retained by their counsel in the MLP cases and that the subject matter of his testimony is the same.[2] Thus, plainly, he is being paid by the same persons to provide the same opinions against the same defendants. What matters, Plaintiffs argue, is that Cabell and Huntington are not paying him, other counties are. But, as a practical matter, that distinction is a fiction. Plaintiffs' counsel (the Fitzsimmons Law Firm) retained Dr. Gupta, and it is almost certainly the paymaster. The other counties represented by the Fitzsimmons Law Firm will never see an invoice from Dr. Gupta.

In these circumstances, the failure to provide an expert report for Dr. Gupta disserves the purpose of Rule 26. Courts look below surface compliance with the Rule to prevent

---

[1]   Plaintiffs' Memorandum in Opposition to Defendants' Motion to Exclude Expert Testimony of Dr. Rahul Gupta ("Opp.") 10 (Dkt. No. 1131).

[2]   Opp. 8 (noting that Dr. Gupta has been retained in the MLP cases "to provide similar testimony"). If his testimony in the MLP litigation is "similar," not the "same," it can only be because there is some slight variance from county to county in how he believes the problem should be abated—otherwise his testimony in those cases and here would be inconsistent.

gamesmanship.  In *Christopher v. DePuy Orthopaedics, Inc.*, 888 F.3d 753 (5th Cir. 2018), the plaintiff's counsel argued that one medical expert who testified at trial was not a retained expert because he declined direct compensation.  He did, however, accept the offer of a charitable contribution to his alma mater.  *Id.* at 788.  Counsel also argued that a second expert was not a retained expert because counsel did not know that the expert expected to be paid.  *Id.* at 789.  After the trial, however, counsel sent the expert "generous checks."  *Id*. at 789–90.  Neither expert, then, was formally retained and neither had been paid as of the time they testified.  The Fifth Circuit reversed the jury verdict in the plaintiff's favor.  *Id*. at 792.  "[L]et us speak plainly," the court said, "Lawyers *cannot* engage with a favorable expert, pay him 'for his time,' then invite him to testify as a purportedly 'non-retained' neutral party."  *Id*. at 791 (emphasis in original).  Although that case involved deception, which is not present here, it illustrates that literal compliance does not put an end to a court's obligation to examine whether, in fact, the expert should be treated as a retained expert.

Plaintiffs' fallback argument is that Dr. Gupta is only a percipient fact witness for whom no report is required.[3]  But, first of all, Plaintiffs are not offering Dr. Gupta as just a percipient witness.  At his deposition, Mr. Colantonio asked Dr. Gupta about "the most important question—potentially how to fix it or abate" the opioid problem.[4]  That is not a matter of observation of historical facts; it is a matter of expert opinion about the efficacy of actions not

---

[3] Opp. 9 (citing Judge Goodwin's opinion in *In re Ethicon, Inc., Pelvic Repair System Product Liability Litigation*, 2014 WL 186872 (S.D. W.Va. Jan. 15, 2014)).  In that case, the defendants argued that the expert's opinions went beyond the facts as to which he was a percipient witness.  Judge Goodwin did not decide that question because "[r]egardless of whether the plaintiffs violated Rule 26(a)(2)(B), the violation was harmless"—the expert had both been deposed and recently testified at trial.  *In re Ethicon, Inc*., 2014 WL 186872, at *9–*10.

[4] Appendix to Defendants' Motion to Exclude Expert Testimony of Dr. Rahul Gupta ("App.") 38 (Dkt. No. 1051-2) (Gupta Dep. at 140).

yet taken. Notably, when Plaintiffs argue that "the facts and opinions as to which he will testify *all* derive from [his] experience" as Executive Director of the Kanawha-Charleston Health Department and Health Commissioner for the State, they cite his testimony that one of his first acts as Commissioner was to order the creation of "a **historical perspective report** … of West Virginia's opioid crisis from 2000 to 2015."[5] Any such backward-looking testimony about that report is different in kind from expert testimony about what a future abatement remedy should involve.

Second, this situation is not like that in *In re Ethicon*. Dr. Gupta had not been previously deposed nor had he given trial testimony. Plaintiffs' other abatement experts have submitted reports that run from 45 to 80 pages. Without a comparable disclosure of Dr. Gupta's opinions about abatement, Defendants could not adequately prepare to examine him about those opinions—particularly when Defendants did not learn that Dr. Gupta would offer opinions about abatement until Mr. Colantonio conducted his direct examination.[6] The Disclosure of Plaintiffs Experts said nothing about the subject of Dr. Gupta's testimony.[7]

Even if he were not a retained expert, Plaintiffs failed to make the disclosure required for non-retained experts by Rule 26(a)(2)(C).[8] Plaintiffs' defense of that failure is found in their Opposition to Defendants' Motion to Exclude Undisclosed Expert Testimony From Non-Retained Experts ("Opp. to Mot. to Excl.") (Dkt. No. 1146). That Opposition withdraws thirteen

---

[5]   Opp. 10. All emphases are added unless otherwise indicated.

[6]   Defendants accommodated Plaintiffs' request to conduct a direct examination of Dr. Gupta before Defendants had completed their questioning. Mr. Colantonio did not complete that examination until 2:00 pm. Thus, not until the day was more than half spent did Defendants know the subject matter and scope of Dr. Gupta's expert opinions.

[7]   *See* Plaintiffs' Certificate of Service of Expert Reports and Disclosure of Experts ("Disclosure of Pls.' Experts") 3 (Dkt. No. 825).

[8]   *See id.* at 3.

witnesses as experts, but Dr. Gupta is not in that group. About the eight remaining non-retained experts, including Dr. Gupta, the Opposition mentions only one, arguing that Dr. David Chaffin is "illustrative."[9] About him, Plaintiffs say that they "identified the potential subject matters" of his testimony and stated that his expert testimony would correspond to his deposition testimony. *Id.* at 7. But while Plaintiffs provided a skeletal disclosure about the subject matter of Dr. Chaffin's testimony,[10] they provided no similar statement for Dr. Gupta.[11] And while Plaintiffs' disclosure for Dr. Chaffin could adopt his deposition testimony as his opinion, because he had been deposed six days earlier, the same is not true for Dr. Gupta, who was not deposed until five weeks later. Plaintiffs' failure to provide even a Rule 26(a)(2)(C) disclosure was not harmless. Without it, Defendants could not possibly conduct a thorough deposition of Dr. Gupta. Not until 2:00 p.m., when Mr. Colantonio completed his direct examination, did Defendants even know—in generalities—what subjects Dr. Gupta would address. The whole purpose of Rule 26(a)(2) is to prevent such hide-the-ball tactics.

> **B.** **The Court Should Exclude the Direct-Examination Deposition Testimony of Dr. Gupta**

Apart from whether Dr. Gupta is a retained expert, the Court should exclude any use of the 66-page direct examination conducted by Mr. Colantonio. In the end, Mr. Colantonio insisted that he was appearing at the deposition solely in his role as Dr. Gupta's personal counsel and that his direct examination was conducted in that capacity. If so, then Mr. Colantonio lacked

---

[9] Opp. to Mot. to Excl. 5.

[10] Disclosure of Pls.' Experts 4 ("Dr. Chaffin is specially trained to provide treatment for high-risk pregnancies and has published on the prevalence of drug use among pregnant West Virginian patients.").

[11] *Id.* at 6–7.

any right to question the witness. Defense counsel so noted and timely and repeatedly objected. Almost everything Plaintiffs say in response is inaccurate or off-the-mark.

First, the issue is not whether the Federal Rules of Civil Procedure or the Local Rules "prohibit multiple attorneys from asking questions during a deposition."[12] The issue is whether personal counsel for a non-party witness can ask any questions at all. Surprisingly, Plaintiffs argue that "Defendants fail to identify *any* statute, rule, or case law that states this was improper,"[13]—as if to suggest there is no such prohibition. But Federal Rule of Civil Procedure 30 is clear that it operates solely at the instance, and for the benefit of, a "party." *See* Fed. R. Civ. P. 30(a)(1), (a)(2), (a)(2)(A), (b)(1), (b)(3)(A), (b)(3)(B), (b)(4), (b)(6).[14] Clearest of all, Rule 30(c)(1) provides that the "examination and cross-examination of a deponent proceed ***as they would at trial*** under the Federal Rules of Evidence …." At trial, non-parties do not question witnesses.

Second, Defendants did not waive their objection to Mr. Colantonio's direct examination of Dr. Gupta in his capacity as personal counsel. Mr. Colantonio had asked Dr. Gupta just two non-substantive questions before McKesson's counsel interposed a "standing objection" on the ground that "the good doctor is not a party, so he's not entitled to be run through a direct

---

[12] Opp. 6.

[13] *Id.* (emphasis in original)

[14] *See, e.g.*, *Estate of Samuelson v. ArcelorMittal USA, LLC*, 2016 WL 11605340, at *1–*2 (N.D. Ind. June 2, 2016) (barring "nonparty counsel" from, among other things, "ask[ing] questions of the deposition witness"); *Carrillo v. Schneider Logistics, Inc.*, 2013 WL 140214, at *4 (C.D. Cal. Jan. 7, 2013) ("Judge Bristow observed that, as a non-party, Walmart had no right to participate in the deposition, and that plaintiffs' faced potential prejudice if Walmart were allowed to participate."); *Enhanced Software Prod., Inc. v. Oregon Cent. Credit Union*, 2006 WL 2038274, at *1 (E.D. Wash. July 20, 2006) (forbidding nonparties from, among other things, "ask[ing] questions"); *Carmona v. Snow*, 2005 WL 8168422, at *2 (D.D.C. Nov. 21, 2005) (forbidding "a non-attorney third party" from "speak[ing] or participat[ing] in the deposition").

examination by his personal counsel."[15]  At that point, Mr. Colantonio replied, "Well, I would take the position that we're questioning at this time on behalf of **both** [Dr. Gupta and Plaintiffs]."[16]  So the deposition continued, as Rule 30 requires.[17]  When at the close of his direct examination of the witness Mr. Colantonio expressly reversed course, declaring, "today we are appearing as counsel to Doctor Gupta … his personal counsel. So that's our role today, as his personal counsel,"[18] Defendants then renewed their objection.[19]

Third, Plaintiffs are mistaken that they can remedy this situation after the fact by simply asserting that Plaintiffs' counsel "authorized" Mr. Colantonio's questions.[20]  Mr. Colantonio, who is counsel for Cabell County, disclaimed asking questions in that role.  No Plaintiffs' counsel who was present at the time contradicted him.  Assuming that Mr. Farrell, as the other Cabell County counsel who was present, could have "authorized" Mr. Colantonio to ask questions for the County (although quite how he could have done so when Mr. Colantonio was disclaiming that role is hard to see), the fact is that (i) Mr. Farrell did not authorize Mr. Colantonio to proceed on behalf of the County, nor (ii) did he adopt Mr. Colantonio's

---

[15]  App. 33 (Gupta Dep. at 117).

[16]  *Id.* (Gupta Dep. at 118).

[17]  Plaintiffs argue that Defendants "allow[ed] Mr. Colantonio to conduct a direct examination," Opp. 6, as if it were in their power to stop him.  Rule 30(c)(2) provides that "[a]n objection at the time of the examination—whether to evidence, to a party's conduct, …, to the manner of taking the deposition, or to any other aspect of the deposition—must be noted on the record, **but the examination still proceeds** …."

[18]  App. 50 (Gupta Dep. at 185–86).  Immediately following this statement, Defendants asked whether that statement "amend[s] your … statement at the outset of the questioning that you were questioning him on behalf of the County," and Mr. Colantonio answered, "Yes" and said again, "Yea, we're representing him personally."  *Id.* (Gupta Dep. at 186–87).

[19]  *Id.* (Gupta Dep. at 186) ("we would certainly preserve any … objection that might relate to it").

[20]  Opp. 6.

questioning when objection was made again at the close of the direct examination, nor (iii) did he question Dr. Gupta himself. Ms. Kearse, as counsel for Huntington, could not have authorized the examination on behalf of the County. And, on behalf of her own client, she never said she was authorizing Mr. Colantonio to ask questions on behalf of the City. Rather, when counsel for McKesson first objected, she said, "I'm appearing on behalf of the City of Huntington, so—if there's any issue with that,"[21] indicating that she could step in and question the witness, which she did.

Accordingly, because non-parties may not question witnesses and Defendants' maintained their objection, Dr. Gupta's direct examination testimony should be excluded. Plaintiffs should not be permitted three months later to disavow Mr. Colantonio's calculated representation that he was acting solely as Dr. Gupta's personal counsel.

## Conclusion

For these reasons, the Court should exclude Dr. Gupta's expert testimony and his direct examination deposition testimony.

Dated: November 6, 2020                                        Respectfully submitted,

---

[21] App. 33 (Gupta Dep. at 118).

**CARDINAL HEALTH, INC.**

*/s/ Steven R. Ruby*
Michael W. Carey (WVSB No. 635)
Steven R. Ruby (WVSB No. 10752)
David R. Pogue (WVSB No. 10806)
Raymond S. Franks II (WVSB No. 6523)
**CAREY DOUGLAS KESSLER & RUBY PLLC**
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
dpogue@cdkrlaw.com
rfranks@cdkrlaw.com

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
Jennifer G. Wicht
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard @wc.com
ahardin@wc.com
jwicht@wc.com

**AMERISOURCEBERGEN DRUG CORPORATION**

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
**JACKSON KELLY PLLC**
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

**MCKESSON CORPORATION**

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
**FLAHERTY SENSABAUGH BONASSO PLLC**
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*/s/ Timothy C. Hester*
Timothy C. Hester
Paul W. Schmidt
Christian J. Pistilli
Laura Flahive Wu
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
pschmidt@cov.com
cpistilli@cov.com
lflahivewu@cov.com

**CERTIFICATE OF SERVICE**

I, Steven R. Ruby, counsel for Defendant Cardinal Health, Inc., do hereby certify that on this 6th day of November, 2020, the foregoing **"Reply in Support of Defendants' Motion to Exclude the Testimony of Dr. Rahul Gupta"** was filed electronically via the CM/ECF electronic filing system and served on all counsel registered in the system.

/s/ Steven R. Ruby
Steven R. Ruby (WVSB #10752)