UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CITY OF HUNTINGTON**
   Plaintiff,
v.
**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**
   Defendants.

Civil Action No. 3:17-cv-01362

**CABELL COUNTY COMMISSION,**
   Plaintiff,
v.
**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**
   Defendants.

*Consolidated Case*:
Civil Action No. 3:17-cv-01665

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* FOR AN ORDER RULING IQVIA DATA ADMISSIBLE**

Plaintiffs, the City of Huntington and Cabell County Commission, submit this reply memorandum in further support of their Motion *in Limine* for an Order Ruling IQVIA Data Admissible (Doc. 1066) and in response to Defendants' Opposition (Doc. 1124). Plaintiffs state in reply as follows:

**INTRODUCTION**

Plaintiffs moved the Court to rule that two datasets owned and maintained by IQVIA, a healthcare information company, are admissible evidence. The two datasets—IQVIA's XPONENT and XPONENT PLANKTRAK—are part of the National Prescription Audit ("NPA") and are referred to as "the industry standard for measuring the retail outflow of prescriptions through the front door into the hands of

1

consumers."[1] As Plaintiffs demonstrated in their moving papers, these datasets are directly relevant to the issues of (1) Defendants' notice or constructive knowledge of physicians' opioid prescribing patterns in Cabell County and Huntington, and (2) these opioid prescribing patterns themselves.

Defendants argue in opposition that the IQVIA datasets are inadmissible hearsay. They are not for two reasons. First, they are not hearsay to the extent Plaintiffs may use them to show that Defendants had notice or constructive knowledge of opioid prescribing patterns in Cabell County and Huntington. Plaintiffs have shown constructive knowledge through their experts and through IQVIA's own public representations about the reach and reliability of its datasets. Second, even if the datasets otherwise are hearsay, they are admissible under the hearsay exception for "[m]arket quotations, lists, directories, or other compilations that are generally relied on by the public or by persons in particular occupations." FED. R. EVID. 803(17). Defendants argue that the IQVIA datasets constitute opinion rather than facts, but this contention is belied by the datasets themselves, which are list-type documents of the type courts routinely admit into evidence.

Defendants separately argue that the IQVIA datasets must be excluded, even if they are evidential, because their sheer volume would make their introduction wasteful of the Court's time. This should not be grounds for exclusion because the Court can readily avoid any wasted time by allowing Plaintiffs to use more easily

---

[1] Plaintiffs' Ex. 2, Expert Report of Lacey R. Keller (Doc. 1066-2) at 5, ¶ 8 (internal quotation marks and citation omitted).

accessible summaries of the IQVIA data as permitted under FED. R. EVID. 611(a)(2) and 1006. The Court therefore should grant Plaintiffs' motion *in limine* and order that the IQVIA datasets are admissible.

## ARGUMENT

### A. The IQVIA Datasets are Admissible Evidence.

Defendants do not dispute or even address Plaintiffs' showing that the IQVIA datasets are authentic. *See* Motion at 5-6. The Court thus may rule on their authenticity as undisputed.

Defendants instead devote nearly all of their opposition to arguing that the IQVIA datasets are inadmissible hearsay. They are not. Rather, they are admissible both as non-hearsay evidence of constructive knowledge and also under the Rule 803(17) hearsay exception for market quotations, lists, directories, or other compilations generally relied on by the public or persons in particular occupations. Defendants' arguments on each of these points are addressed below.

First, Defendants err in arguing that the IQVIA datasets cannot be non-hearsay evidence of notice unless Plaintiffs prove that Defendants had *actual knowledge* of the data. As Defendants see this, "the first step to securing admission would be to demonstrate that Defendants possessed the data during a relevant time period." Opposition at 7-8. They cite as authority for this proposition the Fourth Circuit's decision in *Gardner v. Q.H.S., Inc.,* 448 F.2d 238 (4th Cir. 1971). That decision, however, addressed the permissibility of questioning a witness about a publication at a deposition, not whether the publication may otherwise have been

admissible as evidence of a party's constructive knowledge.[2] While the Fourth Circuit did not face an issue concerning non-hearsay evidence of constructive knowledge or notice, numerous other courts that have addressed this issue have held that documents or reports are admissible where it is shown that defendants *should have known* of them, whether or not they actually did.[3] Plaintiffs show exactly this here.[4] The IQVIA datasets thus are admissible as non-hearsay evidence of Defendants'

---

[2] *See id.* at 244-45 ("[The witness] should have been permitted to be cross-examined as to the article in Consumers Report provided that the article had been published and was read by him before the time of the fire in this case. If the president had not read the article, the jury should be cautioned that the question of counsel on cross-examination did not constitute evidence, and whether he admitted reading it or not, the jury should be cautioned that they might not rely upon the article for the truth of the legal or factual conclusions it contained.").

[3] *See, e.g.*, *Franchina v. City of Providence*, 881 F.3d 32, 50 (1st Cir. 2018) ("The transcript, then, was admissible as non-hearsay if, as Franchina argues, it was offered for the purpose of establishing that the City was, *or should have been*, on notice of Franchina's alleged workplace harassment.") (emphasis added); *George v. Celotex Corp.*, 914 F.2d 26, 30 (2d Cir. 1990) ("Philip Carey could not have been put on notice by the Hemeon Report because there was no proof at trial . . . that it reasonably should have seen it as part of the published literature in the industry."); *Kershaw v. Sterling Drug, Inc.*, 415 F.2d 1009, 1011 (5th Cir. 1969) ("While Sterling is correct in arguing that the articles were hearsay as to the existence and nature of the disease, they were properly introduced to show that Sterling reasonably should have known of the existence and nature of the disease."); *Webb v. Fuller Brush Co.*, 378 F.2d 500, 502 (3d Cir. 1967) ("The publication of such articles was presented not to establish that the assertions therein were true, but rather that they should have alerted the appellee to possible hazards.").

[4] *See* Defendants' Appendix (Doc. 1124-2) at 12 (Tr. of Dep. of Lacey R. Keller, MA) ("IQVIA was widely available for purchase by the pharmaceutical industry. . . . And what we're trying to demonstrate here is the information that could have been gleaned from distributors, had they accessed the IQVIA Xponent data or some other similar dataset."); *id.* ("We're saying based off what we have seen in the IQVIA data, there was – you could understand the prescribing trends in Cabell County.").

4

constructive knowledge of physicians' opioid prescribing patterns in Cabell County and Huntington.

Second, Defendants also dispute Plaintiffs' separate ground for introducing the IQVIA datasets as admissible hearsay under Rule 803(17). This exception makes admissible "[m]arket quotations, lists, directories, or other compilations that are generally relied on by the public or by persons in particular occupations." FED. R. EVID. 803(17). The Fourth Circuit has held that this covers "items that recite established factual information." *Cisson v. C.R. Bard, Inc.*, 810 F.3d 913, 924 (4th Cir. 2016). Defendants argue that the IQVIA datasets "fail this threshold requirement" because IQVIA itself asserted at the time it produced these datasets in the MDL that the data therein represents "an estimate" and a "reasonable approximation" and is the product of "independent judgment, expertise and opinion of IQVIA representatives." Opposition at 5 (quoting Defendants' Appendix at 31— Ltr. from IQVIA dated July 25, 2018). Defendants contend that this means the IQVIA data is inadmissible hearsay "***opinion***" under the Fourth Circuit's *Cisson* opinion. Opposition at 5-6 (emphasis in original). It is not. In *Cisson*, the court held that Rule 803(17) did not apply to the part of a product's Material Safety Data Sheet (MSDS) that "operated as a warning and disclaimer of liability" because the warning "was an opinion the company issued within the MSDS for self-interested reasons, and it therefore bears no resemblance to the factual, list-type documents enumerated in Rule 803(17)." 810 F.3d at 924. Under this analysis, the IQVIA datasets are admissible under Rule 803(17) because they do not express opinions. Rather, they

5

are exactly the "list-type documents" (listing physicians' opioid prescriptions in Cabell County and Huntington) that the Rule envisions.

Defendants also argue that the IQVIA datasets are not admissible under Rule 803(17) because they are not reliable. This, too, is incorrect. The Fourth Circuit in *Cisson* held that "'the basis of trustworthiness' for evidence admitted under the [Rule 803(17)] exception should be 'the motivation of the compiler to foster reliance by being accurate.'" 810 F.3d at 924 (quoting FED. R. EVID. 803(17), advisory comm. note (1972)). Defendants ignore this standard altogether. They also ignore Plaintiffs' evidence demonstrating IQVIA's motivation for accuracy in the million-dollar-plus price tag of these datasets. *See* Motion at 4, n.12; *see also Avondale Mills, Inc. v. Norfolk S. Corp.*, No. C/A/ 1:05-2817-MBS, 2008 WL 6953956, at *4 (D.S.C. Feb. 21, 2008) ("In this case, the authors of the reports 'know that their work will be consulted; if it is inaccurate, the public or the trade will cease consulting their product.'") (quoting *Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 575 n.53 (D. Md. 2007)).

Defendants argue instead that the IQVIA datasets are reliable only for the expressly stated purposes to "support sales, marketing and research applications." Opposition at 6-7 (quoting Defendants' Appendix at 31—Ltr. from IQVIA dated July 25, 2018); *see also id.* at 2 ("In other words, the data help ***manufacturers*** sell more medication. Nothing in IQVIA's marketing material for Xponent holds the data out as providing useful information for wholesale distributors' suspicious order monitoring ('SOM') systems.") (emphasis in original). This argument—based solely upon IQVIA's representations made in its cover letter producing the Xponent dataset

6

documents in this litigation—cannot be reconciled with IQVIA's representation to the rest of the world that its Xponent data "'is the industry standard for measuring the retail outflow of prescriptions through the 'front door' into the hands of consumers.'"[5]

Based on the fact that the IQVIA data "reflects the prescribing history of physicians," Plaintiffs' expert could conclude that:

> the dataset could allow anyone who purchases it to determine how frequently a physician prescribed particular drugs, as well as what formulations and in what dosages, and how prescribers ranked among other prescribers. The data also allows for the identification of opioid prescribing patterns of individual physicians compared to their cohorts based on specialty, geography, (e.g., city, county, zip code, state), and time period.[6]

This validation by Plaintiffs' expert of the IQVIA datasets further demonstrates their reliability as to the factual information they compile.[7] Moreover, Defendants do not and cannot explain how the IQVIA datasets could possibly be deemed to provide reliable data on physicians' prescribing patterns to opioid *manufacturers* for purposes of assessing their *future* sales, but not to provide reliable data to opioid *distributors* for purposes of assessing their *present* sales of the same drugs.

For each of the foregoing reasons, the IQVIA Xponent datasets are both admissible non-hearsay evidence of Defendants' constructive knowledge of

---

[5] Pltfs' Ex. 2 (Keller Rpt) at 5, ¶ 8 (quoting "National Sales Perspectives & National Prescription Audit Overview." *IQVIA*, 2017.

[6] *Id.* at 6, ¶ 10.

[7] *See, e.g.*, *BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.*, 881 F.3d 293, 314 (4th Cit. 2018) ("Given that BMG's expert, Dr. William Lehr, testified that the two studies 'were widely cited in the industry' and were 'the most substantial published publicly available studies' on the issue, the court did not abuse its discretion" in admitting the studies).

physicians' opioid prescribing patterns in Cabell County and Huntington, and admissible hearsay evidence of the prescribing patterns themselves under FED. R. EVID. 803(17).

### B. The IQVIA Datasets Should Not Be Excluded Under Rule 403.

Defendants' final argument in opposition is that even if the IQVIA datasets are evidential under Rules 801 and/or 803(17) (which they are), they still should be excluded under Rule 403 for two distinct reasons, both of which are incorrect.

First, Defendants contend that "the probative value of the data is outweighed by the substantial risks of undue prejudice . . . ." Opposition at 9. The Court should reject this argument out of hand because the risk of "unfair prejudice, confusing the issues, [or] misleading the jury,"[8] is non-existent in a bench trial, as the Fourth Circuit and other courts have squarely held.[9]

Second, Defendants contend that the sheer volume of the IQVIA data sets renders them *per se* inadmissible for being wasteful of the Court's time. *See* Opposition at 10 ("[A]ny in-court exercise that calls for direct review of data so voluminous that it has to be submitted separately on a hard drive is bound to be wasteful . . . ."). The Court likewise should reject this argument. Although undue

---

[8] Fed. R. Evid. 403.

[9] *See Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) ("[W]e hold that in the context of a bench trial, evidence should not be excluded under [Rule] 403 on the ground that it is unfairly prejudicial."); *see also Gulf State Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981) ("The exclusion of this evidence under Rule 403's weighing of probative value against prejudice was improper. This portion of Rule 403 has no logical application to bench trials.").

delay or wasting time are grounds for excluding evidence,[10] the Court can and should admit voluminous probative evidence where, as here, it can be distilled through, for example, summary charts as permitted under FED. R. EVID. 611(a) and 1006.[11]

In sum, Defendants' arguments for exclusion under Rule 403, like their hearsay arguments, have no merit and should be rejected, and Plaintiffs' motion *in limine* should be granted.

## CONCLUSION

For all of the reasons set forth, the Court should grant Plaintiffs' Motion *in Limine* for an Order Ruling IQVIA Data Admissible.

---

[10] *See, e.g., Gulf State*, 635 F.2d at 519 ("Excluding relevant evidence in a bench trial because it is cumulative or a waste of time is clearly a proper exercise of the judge's power, but excluding relevant evidence on the basis of 'unfair prejudice' is a useless procedure.").

[11] *See, e.g., U.S. v. Anekwu*, 695 F.3d 967, 981 (9th Cir. 2012) (district court admitted "summary charts and the underlying bank records for the purpose of assisting the jury in evaluating voluminous evidence"); *id.* at 982 (based on circumstances showing reliability of summary charts, "we cannot conclude that the district court abused its discretion in admitting both the summary chart and underlying records into evidence").

Dated: November 6, 2020                      Respectfully submitted,

| THE CITY OF HUNTINGTON | CABELL COUNTY COMMISSION |
|---|---|
| /s/ *Anne McGinness Kearse* | /s/ *Paul T. Farrell, Jr.* |
| Anne McGinness Kearse | Paul T. Farrell, Jr. |
| WVSB No. 12547 | WVSB Bar No. 7443 |
| Joseph F. Rice | **FARRELL LAW** |
| **MOTLEY RICE LLC** | 422 Ninth Street, 3rd Floor (25701) |
| 28 Bridgeside Blvd. | PO Box 1180 |
| Mount Pleasant, SC 29464 | Huntington, West Virginia 25714-1180 |
| Tel: 843-216-9000 | Mobile: 304-654-8281 |
| Fax: 843-216-9450 | paul@farrell.law |
| akearse@motleyrice.com | |
| jrice@motleyrice.com | /s/ *Anthony J. Majestro* |
| | Anthony J. Majestro |
| Linda Singer | WVSB No. 5165 |
| David I. Ackerman | **POWELL & MAJESTRO, PLLC** |
| **MOTLEY RICE LLC** | 405 Capitol Street, Suite P-1200 |
| 401 9th Street NW, Suite 1001 | Charleston, WV 25301 |
| Washington, DC 20004 | 304-346-2889 / 304-346-2895 (f) |
| Tel: 202-232-5504 | amajestro@powellmajestro.com |
| Fax: 202-386-9622 | |
| lsinger@motleyrice.com | Michael A. Woelfel |
| dackerman@motleyrice.com | WVSB No. 4106 |
| | **WOELFEL AND WOELFEL, LLP** |
| Charles R. "Rusty" Webb | 801 Eighth Street |
| WV No. 4782 | Huntington, West Virginia 25701 |
| **THE WEBB LAW CENTRE** | Tel. 304.522.6249 |
| 716 Lee Street, East | Fax. 304.522.9282 |
| Charleston, West Virginia 25301 | mikewoelfel3@gmail.com |
| Telephone: (304) 344-9322 | |
| Facsimile: (304) 344-1157 | |
| rusty@rustywebb.com | |

On Brief:

Anthony J. Majestro
WVSB No. 5165
**POWELL & MAJESTRO, PLLC**
405 Capitol Street, Suite P-1200
Charleston, WV 25301
304-346-2889 / 304-346-2895 (f)
amajestro@powellmajestro.com

Paulina do Amaral
**LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLC**
250 Hudson Street, 8th Floor
New York, NY 10013
Tel:  212-355-9500 / 212-355-9592(f)
pdoamaral@LCHB.com

Michael J. Quirk
**MOTLEY RICE LLC**
40 West Evergreen Avenue, Suite 104
Philadelphia, PA 19118
Tel:  610-679-9932 / 856-667-5133 (f)
mquirk@motleyrice.com

## CERTIFICATE OF SERVICE

I certify that on November 6, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. This filing will also be served on all parties by email to: Track2OpioidDefendants@ReedSmith.com and CT2_Opioid_Team@mail-list.com.

/s/ *Anthony J. Majestro*