## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON, | |
| Plaintiff, | |
| v. | Civil Action No. 3:17-01362 |
| AMERISOURCEBERGEN DRUG CORPORATION, *et al.* | |
| Defendants. | |
| | |
| CABELL COUNTY COMMISSION, | |
| Plaintiff, | |
| v. | Civil Action No. 3:17-01665 |
| AMERISOURCEBERGEN DRUG CORPORATION, *et al.* | |
| Defendants. | |

## REPLY IN SUPPORT OF DEFENDANTS' MOTIONS *IN LIMINE*

Plaintiffs make two threshold arguments as to why the Court should deny Defendants'

four motions *in limine*.  First, they claim that Judge Polster's rulings in the Track One cases

govern here.  Not so.  Pretrial rulings are not binding in actions remanded to transferor courts,

both because pretrial orders do not qualify for the law of the case doctrine and because the

doctrine applies only to the ***same*** case brought before the ***same*** court.[1]  Furthermore, the

---

[1] *See Gander Mountain Co. v. Cabela's, Inc.*, 540 F.3d 827, 830 (8th Cir. 2008) (while law of the case "applies to decisions made by appellate courts and final decisions made by district courts that have not been appealed … [t]he doctrine does not apply to interlocutory orders"); *GMAC Mortg., LLC v. McKeever*, 651 F. App'x 332, 338–39 (6th Cir. 2016); *accord* 1B Charles Alan Wright et al., *Federal Practice & Procedure: Jurisdiction & Related Matters* § 4478 (4th ed. 2015) ("Law-of-the-case rules ... [apply] during the course of a single continuing lawsuit.  They do not apply between separate actions."); *City and County of San Francisco v. Purdue Pharma*

arguments raised here necessarily turn on the extensive record in ***this*** case, a record that was not before Judge Polster when he made his rulings.  For example, Plaintiffs in this case specifically disavowed using certain of this evidence and should be held to those representations.  Nor did Judge Polster weigh the benefits of pretrial rulings ***in this case*** that will streamline the evidence and avoid wasting time ***in this trial***.

Second, although they themselves filed two such motions, Plaintiffs contend that motions *in limine* are not proper in a bench trial.  Again, not so.  The Federal Rules of Evidence apply with full force to bench trials.  *See* Fed. R. Evid. 1101(b); 9 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2411, at 587 (2d ed. 1995) ("In theory, the Federal Rules of Evidence apply equally in court trials and jury trials.").  And even though the risk of unfair prejudice may be of less concern in a bench trial, this Court has recognized the importance of pretrial exclusionary orders where the evidence would "prolong[]… the trial" and where there is "a lack of sufficient similarity between the additional litigation and the issues and factual circumstances presented in the present case."  *Grant Thornton, LLP v. Fed. Deposit Ins. Corp.*, CIV A 100-655, 2007 WL 518421, at *1 (S.D.W. Va. Feb. 13, 2007) (Faber, J.).

Plaintiffs' cases are not to the contrary.  In *Multi-Medical Convalescent & Nursing Ctr. of Towson v. N. L. R. B.*, 550 F.2d 974, 977 (4th Cir. 1977), the Fourth Circuit commented that an administrative law judge should not have limited "competent and relevant" testimony during trial out of a "mechanistic application of an exclusionary rule."  But Defendants' motions *in limine* seek to exclude evidence that is not competent or relevant under the Federal Rules of Evidence.  In two other cases, the courts affirmed the district court's exclusion of evidence at

---

*L.P., et al.*, No. 3:18-cv-07591-CRB, 2020 WL 5816488, at *2–3 (N.D. Cal. Sept. 30, 2020) (noting that the opioid MDL court's rulings are not "law of the case" in remanded cases and the transferor court will "independently review" Defendants' motions).

trial.  *See In re Unisys Savings Plan Litigation*, 173 F.3d 145, 157 (3d Cir. 1999) ("We would be hard pressed to require a District Court judge sitting in a non-jury case who credibly and with reason found that he could not believe a witness to nevertheless hear the witness's direct examination, cross-examination, and rebuttal examination in an extended trial when he knew that he would only reject it as unbelievable."); *Van Alen v. Dominick & Dominick, Inc.,* 560 F.2d 547, 552 (2d Cir. 1977) (district court in bench trial did not abuse his discretion in excluding evidence where the "probative value was 'substantially outweighed' by considerations of confusion, delay, or waste of time").

To be sure, some courts decide—in both jury and non-jury trials—to defer rulings on certain evidentiary issues until the trial, but there is no reason for the Court to defer ruling on the four evidentiary issues raised below.  Defendants do not question the Court's ability to parse relevant evidence from irrelevant evidence, but the categories of evidence addressed below are not proper bases on which this Court could base a finding of liability, and there is no need to waste judicial time and resources in presenting evidence that is barred by the Federal Rules of Evidence.  Rulings on these issues in advance of trial will be of significant benefit to the parties because they will clarify the appropriate scope of evidence and will avoid wasting pretrial preparation and trial time on matters that should not come into evidence.  Pretrial rulings on these focused issues thus will ultimately save time at trial for both the Court and the parties and make the process more efficient.

### No. 1: The Court Should Preclude Plaintiffs from Presenting Individualized Evidence of Opioid Misuse and Diversion

Plaintiffs should be precluded from introducing individual evidence of opioid use and misuse for three separate reasons—each of which is independently dispositive.  First, Plaintiffs cannot dispute their prior representation that they would not rely at trial on individualized

evidence of prescriptions (that is, evidence that specific prescriptions were wrongfully dispensed, diverted, or obtained).  Second, they do not dispute that none of the individualized evidence Plaintiffs intend to offer can be linked to Defendants.  Third, this evidence is inadmissible hearsay.

      *1.*     ***Plaintiffs have disavowed individualized evidence.***  Plaintiffs do not dispute that they represented in interrogatory responses that individualized evidence of prescriptions would not be part of their case at trial: "Plaintiffs will not contend at trial that specific prescriptions were wrongfully dispensed or prescribed, or that specific individuals wrongfully obtained opioids."  *See* Dkt. 1067 ("Br."), Exs. 1 & 2.  Plaintiffs also cannot dispute that Defendants relied on this representation when conducting discovery in this case.

Instead of addressing these points head-on, Plaintiffs spend four pages describing examples of individualized evidence that came out in documents and depositions.  *See* Dkt. 1149 ("Opp.") 5–8.  But that misses the point entirely.  The fact that ***some*** individualized evidence was disclosed during discovery does not change the fact that Plaintiffs disavowed using it at trial and that Defendants shaped their discovery strategy based on that disavowal.  It also does not show that Defendants received ***all*** the evidence that would be necessary to defend against Plaintiffs' use of individualized proof.  Had Plaintiffs properly disclosed that they would rely on individualized evidence, Defendants would have taken further steps to test that evidence.  For this same reason, Judge Polster's decision in the MDL is inapposite here.  *See* Opp. 8.  Defendants' discovery in this case proceeded separately from discovery in the MDL, and Plaintiffs in this case specifically disavowed using individualized evidence at trial.  It would be unfair and unduly prejudicial for Plaintiffs now to be permitted to backtrack on that representation.

   2.    ***Plaintiffs cannot link individualized evidence to Defendants.***  Plaintiffs cannot link Defendants' distribution of opioids to any specific instance of misuse or diversion. Plaintiffs instead argue that individualized evidence of misuse and diversion ***unlinked to Defendants*** (1) is relevant to the question of "whether a nuisance exists" and (2) can be useful to "supplement" Plaintiffs' statistical evidence.  Both arguments fail.  Defendants can be held liable for opioid misuse and addiction only if that misuse and addiction was caused by Defendants.  For this reason, evidence that some individual may have suffered some opioid-related harm, unlinked to Defendants, is not probative of whether ***Defendants' conduct*** constituted a public nuisance or whether that nuisance caused any harm.  By analogy, before a plaintiff in a nuisance action involving pollution can present evidence that an individual was injured as a result of drinking water from a particular well, the plaintiff must first show the defendant's conduct had some connection to that well.  Here, before presenting evidence that a particular person was injured by opioids, Plaintiffs must first show that Defendants had some connection to those opioids.

   Without this connection, individualized evidence is not useful for "supplementing" or "animating" Plaintiffs' statistical findings.  *See* Opp. 9 (citing *Brown v. Nucor Corp.*, 785 F.3d 895, 908 (4th Cir. 2015)).  The *Brown* decision Plaintiffs cite illustrates why.  There, alongside statistical data showing that black workers were less likely to be promoted, plaintiffs supplemented that proof with anecdotal evidence of discrimination against those same workers. *Id.* at 908.  That was appropriate because both the statistical data and anecdotal evidence were tied to defendants' conduct and concerned the same set of workers.  By contrast, Plaintiffs are attempting to couple statistical evidence about Defendants' aggregate distribution of opioids with anecdotal evidence that has ***nothing to do*** with Defendants.

**3.**      *The individualized evidence Plaintiffs seek to present is hearsay.*  In their

opening brief, Defendants provided one example of how Plaintiffs' individualized evidence is

hearsay: Commissioner Kelli Sobonya's testimony about how her friends have become addicted

to opioids.  Plaintiffs do not dispute that Commissioner Sobonya's testimony is based on out-of-

court conversations with her friends and is being introduced to prove the truth of the matter

asserted.  *See* Br. 3–4.  It thus should be excluded.  For that same reason, the Court should

exclude the other examples of testimony that Plaintiffs cite in their opposition:  Fire Chief Jan

Rader's testimony was based on the fact that she "talk[s] to a lot of people."  Opp. 6.  Chief Skip

Holbrook's testimony was based on "conversations—you know, with addicts."  Opp., Ex. 3 at

79:1–18.  Darla Bentley's testimony was not based on her personal knowledge.  *See* Opp., Ex. 5.

Defendants will have not have an opportunity to cross-examine these declarants—a core reason

for the rule against the admission of hearsay.  An *in limine* ruling now, precluding this obvious

hearsay, will save time at trial and will allow the parties and the Court to focus on admissible

evidence.

**No. 2: The Court Should Preclude Plaintiffs from Presenting Lay Testimony About
Prescription Opioids Being a "Gateway" to Illicit Drug Use**

Plaintiffs have no effective response to Defendants' argument that lay testimony about

gateway theories is barred by Federal Rule of Evidence 701 and fail to provide ***any*** response to

Defendants' argument that this evidence is hearsay.

**1.**      *Rule 701 prohibits lay testimony about gateway theories.*  Plaintiffs' Opposition

entirely misses the point of Rule 701.  Plaintiffs argue that an "across-the-board exclusion" of lay

testimony about gateway theories would be improper because certain of their witnesses (health

professionals and first responders) have "specialized knowledge" that can inform their testimony.

Opp. 11.  But the plain language of Rule 701 precludes ***all*** lay witness testimony based on

6

"specialized knowledge."  *See* Fed. R. Evid. 701, Committee Notes on Rules—2000 Amendment

("The amendment makes clear that any part of a witness's testimony that is based upon

scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by

the standards of Rule 702 and the corresponding disclosure requirements of the Civil and

Criminal Rules.").  For that reason, Plaintiffs cannot offer lay testimony based on the specialized

knowledge of health care workers.  Instead, any such testimony must be offered under Rule 702

and must have been properly disclosed under Federal Rule of Civil Procedure 26(a)(2).  *See id.*

It was not.

Plaintiffs also contend that lay testimony about gateway theories is permissible because it

is "essentially observational" and "based on the witness's own perception."  Opp. 12.  But

testimony about the ***percentage*** of people who switch from prescription to illicit opioids is not

mere "observation."  That testimony is instead an opinion that requires aggregating out-of-court

data and conversations with many people and applying statistical principles to ensure the

reliability of that opinion.  Plaintiffs have proffered three experts to opine on this "Gateway

Theory" and have disclosed expert reports for those witnesses under Rule 26(a)(2), as required

by Rule 702.  Plaintiffs had the opportunity to disclose expert reports for the lay witnesses they

now seek to offer as well.  But they did not, and so cannot now, "proffer[] an expert in lay

witness clothing."  *Id.*

The cases Plaintiffs cite are not to the contrary.  None suggests that a lay witness can

provide a statistical analysis, much less a statistical analysis based on out-of-court conversations

the witness had with others.  *See United States v. Agyemang*, 2000 WL 1335286, at *1 (4th Cir.

2000) (INS employee testified about the circumstances under which she would deny an

immigration application); *United States v. Smith*, 962 F.3d 755, 767 (4th Cir. 2020) (police

7

officer testified that he had previously seen drug dealers use certain size bags to store drugs and use scales to weigh drugs); *United States v. Perkins*, 470 F.3d 150, 153 (4th Cir. 2006) (police officer who witnessed other officer repeatedly kick civilian testified that he did not see "any law enforcement reason for those kicks"); *United States v. VonWillie*, 59 F.3d 922, 929 (9th Cir. 1995) (police officer testified that he had seen drug dealers possess and use weapons for intimidation, that an MK-11 is a particularly intimidating gun, and that drug traffickers keep weapons near their drugs); *United States v. Vega*, 813 F.3d 386 (1st Cir. 2016) (Secret Service agent interpreted the meaning of chart he found during execution of search warrant).

Lastly, as noted in Defendants' opening brief, Judge Polster's order does not support Plaintiffs' position. That order prohibited plaintiffs in the MDL from introducing testimony about gateway theories that is not "factual." Here, none of the testimony Plaintiffs intend to offer fits into the "factual" category—the testimony instead consists of opinions based on out-of-court conversations with others.

**2.     *Evidence about gateway theories is hearsay.*** Plaintiffs do not deny that opinion testimony about gateway theories is hearsay. In fact, they curiously provide examples demonstrating that such testimony *is* hearsay. The opinion testimony Plaintiffs cite from Coordinator Connie Priddy is based on "information that has been told to [her] by people on the Quick Response Team." Opp. Ex. 6 at 93:22–94:24. Captain Rocky Johnson's opinion was based on "formal and informal interviews with members of the community over the years." Opp. 13. And Chief Skip Holbrook's opinion was based on "conversations—you know, with addicts." Opp. Ex. 3 at 79:1–18.

Although Plaintiffs contend in other sections of their brief that decisions about hearsay are "highly-context specific" (Opp. 10), Plaintiffs' own examples demonstrate that the testimony

they seek to offer about gateway theories is hearsay. The opinions Plaintiffs seek to offer about the percentage of people who switched from one drug to another are based on out-of-court conversations with those people (or, in the case of Connie Priddy, out-of-court conversations with others who spoke with those people) that are being offered for the truth of the matter asserted. While a properly qualified expert may rely on hearsay testimony under certain circumstances (*see* Fed. R. Evid. 703), a lay witness cannot. For that reason, a blanket exclusion of Plaintiffs' lay testimony about gateway theories is warranted. Further, resolving this issue in advance of trial will save time and clarify the scope of evidence on an issue that is likely to recur throughout Plaintiffs' case.

### No. 3: The Court Should Bar Plaintiffs from Introducing Evidence of Defendants' Prescription Opioid Shipments to Places Outside Cabell County and the City of Huntington

Plaintiffs' Opposition makes clear that they want to use evidence of Defendants' out-of-state shipments to prove that Defendants made wrongful shipments to Cabell/Huntington. Opp. 14–15. That is a classic "if it happened there, it must have happened here" theory that is prohibited by Federal Rule of Evidence 404(b). Fed. R. Evid. 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). Were Plaintiffs able to tie any of Defendants' shipments outside of Cabell/Huntington to harm within Cabell/Huntington, such evidence might be relevant. But they cannot do that. There is no such evidence. It is not sufficient, as Plaintiffs claim, for them to simply show that Defendants

somehow failed to comply with the alleged provisions of the CSA or its implementing regulations in some other part of the country.[2]  Opp. 15.

1.       ***Plaintiffs' Opposition Fails to Demonstrate the Relevance of Defendants' Shipments Outside of Cabell/Huntington.***  Plaintiffs fail to identify ***any*** evidence that ***any*** shipment made by ***any*** Defendant to any location outside Cabell/Huntington was diverted and found its way to either plaintiff jurisdiction.  Absent such a showing, shipments made elsewhere—even if allegedly wrongful—plainly are irrelevant.

Plaintiffs claim that there is "abundant evidence in the record in this case showing that the opioids Defendants shipped migrated beyond the borders of the areas to which the shipments were made, including from surrounding cities, counties, and even states such as Florida." Opp. 16.  That claim is not accurate.  There is no such evidence.[3]  There may be evidence that criminals trafficked in the drugs, but that is not evidence that ***Defendants***' shipments were the source of that trafficking or that ***Defendants***' shipments to Florida (for example) made their way through criminal channels to Cabell/Huntington.

The only evidence that truly relates to Cabell/Huntington is a 2009 arrest report concerning two Tennessee residents who purchased pills from unidentified pain clinics in Florida and thereafter sold them "in Cabell County and the Tri-State area."  Opp. 17.  That evidence has

---

[2] For the reasons given in Defendants' reply to their motion for summary judgment on the element of fault, Dkt. 1130, Plaintiffs are wrong that all they must show to establish nuisance liability is a violation of the CSA or its implementing regulations.  Opp. 15.  They certainly cannot prove a nuisance in Cabell/Huntington by demonstrating regulatory non-compliance regarding orders from or shipments to another state.

[3] Plaintiffs contend that Defendants' prior settlements with the DEA prove that they shipped too many pills to Florida.  But, for the reasons given in Defendants' motion to exclude evidence of those settlements, *see* Dkt. 1067 and *infra* Part IV, that evidence is not admissible.  In any event, the shipment of too many pills to Florida is not sufficient to show that Defendants' wrongful shipments made their way to Huntington/Cabell.

nothing to do with *Defendants*' conduct.[4]  The fact that criminal diversion took place or that Defendants (and law enforcement agencies) were "aware" of such illegal activity does not establish that (i) *Defendants* were responsible for any diversion, or even that (ii) *Defendants* distributed the diverted pills, or (iii) the pills were diverted to Cabell/ Huntington.[5]  The arrest report makes clear that the attempted diversion referenced by Plaintiffs was caused by the criminal acts of two out-of-state individuals.

Plaintiffs' reliance on Judge Polster's rulings in the MDL is unavailing.  *See* Opp. 14–15. Those rulings are not law of the case, *see supra* at 1–2, and could not have taken into account the evidentiary record in this case.  Moreover, Judge Polster himself recently clarified his prior decision on extraterritorial conduct, and that more recent ruling only *confirms* that this evidence is inadmissible.  In that order, the Court noted it would permit (i) "broad-scope aggregate evidence" related to things like "nation-wide trends and shipments," and (ii) extraterritorial evidence that "has some demonstrable nexus" to the plaintiffs, such as the fact that "a distribution center located outside the Plaintiff Counties distributes prescription opioids into

---

[4] Nor do Plaintiffs offer any evidence that those pills were misused or abused in Cabell/Huntington; they were purchased (and presumably disposed of) by an undercover officer. *See* Pl. Ex. 19 (sealed).

[5] For example, Plaintiffs cite two 2013 DEA presentations that noted that many patients visiting Florida pain clinics came from out of state, including West Virginia writ large.  Opp. Exs. 8, 18 (Dkt. 1149-6–10, 1149-26).  The presentations do not establish that the patients were from Cabell/Huntington or that, even if they were, any patients visited pain clinics that were serviced by pharmacies that were customers of Defendants, or that any pills caused any harm in Cabell/Huntington.  Exhibit 9 makes the same general point.  Dkt. 1149-11.  Exhibits 10 and 11 do not mention migration to West Virginia at all.  Dkt. 1149-12, 14.  Exhibits 16 and 17 are a newspaper article that mentions flights from the Huntington Tri-State airport to Florida for obtaining prescription opioids, but the article does not implicate Defendants in any way; it is all about criminal drug dealers and drug "tourists."  Dkt. 1149-19–20.

11

them." *In re: Nat'l Prescrip. Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio Nov. 3, 2020), Dkt. 3546.

Here, Plaintiffs are attempting to introduce specific evidence of extraterritorial conduct in places like Florida that has ***nothing*** to do with Cabell or Huntington.  That is exactly what the MDL Court counseled against admitting: "[E]vidence that is specific in nature and does not have a nexus to the Plaintiff Counties, without more, will *generally* not be permitted."  *Id.*  Simply put, Defendants' out-of-jurisdiction shipments are not relevant because Plaintiffs cannot tie them to any harm in Cabell/Huntington.  Plaintiffs' claims that Defendants' out-of-state shipments "posed a risk" to "localities throughout the nation" is not sufficient without evidence of actual harm in Cabell/Huntington.[6]

> **2.      *Plaintiffs' Opposition Identifies No Basis to Admit Out-of-Jurisdiction Shipments Under Rule 404(b).***  Plaintiffs recognize that evidence of alleged prior bad acts is not admissible under Rule 404(b), but then assert that Defendants' out-of-jurisdiction shipments "*may* still be admissible to demonstrate, among other things, Defendants' knowledge and intent."  Opp. 18 (emphasis added).  But Plaintiffs make no attempt to show that evidence about shipments outside of the relevant jurisdictions could satisfy the Fourth Circuit's four-part test for the admission of prior "bad acts": "(1) the prior-act evidence must be relevant to an issue other than character, such as intent; (2) it must be necessary to prove an element of the [claim]; (3) it must be reliable; and (4) its probative value must not be substantially outweighed by its prejudicial nature." *Biers v. Cline*, 724 F. App'x. 189, 191 (4th Cir. 2018).

---

[6] Plaintiffs' assertion that "[e]ach shipment Defendants made in disregard of the potential for diversion is *evidence of damages* caused by Defendants to localities throughout the nation," is absurd.  Opp. 18 (emphasis added).  As discussed, there is no evidence that Defendants out-of-state shipments caused any damage in Cabell/Huntington.

Plaintiffs assert that this evidence may be admissible because Defendants' suspicious order monitoring (SOM) programs were national in scope, but that fact does not render evidence of shipments to out-of-state pharmacies relevant to any fact in this case, including knowledge or intent. The parties will be able to introduce evidence about the SOM programs and how they worked, but evidence about particular out-of-state shipments—or out-of-state shipments in the aggregate—is irrelevant to how these programs worked or to Defendants' knowledge or intent in operating those programs.

What is relevant to this trial is whether Defendants' actions with regard to *Cabell/Huntington* pharmacies caused a nuisance. Whether or not a particular order was "suspicious" is dependent on facts specific to that order and the pharmacy customer who placed the order. Whether Defendants shipped too many pills to a Florida pharmacy, for example, does not prove that Defendants shipped too many pills to any Cabell/Huntington pharmacy. Indeed, if the proposition were reversed, with Defendants offering evidence that they did *not* ship too many pills to a particular pharmacy outside of Cabell/Huntington, Plaintiffs surely would agree that proves nothing about whether Defendants shipped too many pills to Cabell/Huntington.

Plaintiffs' only other argument—that the Court should admit out-of-jurisdiction evidence under Rule 404(b) because this is a bench trial—is a weak attempt to bypass the relevant analysis. Evidence does not become relevant or admissible under the Federal Rules of Evidence simply because of who acts as fact-finder. Furthermore, excluding this out-of-jurisdiction evidence is very important to streamlining and focusing the trial. If Plaintiffs are permitted to introduce out-of-jurisdiction evidence (even if the Court later finds it not probative), it necessarily will lead to distracting mini-trials and side issues over matters far afield from Cabell/Huntington. This is a powerful reason for a pretrial ruling that will assist the parties in focusing their preparations for

trial and that will focus the evidence at trial, saving significant time for the Court and the parties and avoiding wasted time at trial.

> **3.** ***Plaintiffs' Opposition Fails to Address the Prejudice and Inefficiency of Duplicative Recovery.***  Plaintiffs' Opposition effectively ignores the unfair prejudice that would result from admitting evidence of Defendants' shipments to areas other than Cabell/Huntington.  The majority of those shipments ***already are the subject of pending litigation***.  Not only would their admission cause substantial and unnecessary delay in litigating the issues relevant to Cabell/Huntington, but it would risk duplicating the adjudication already underway in courts around the country—and the recovery that those plaintiffs seek for the very same conduct that Cabell/Huntington now ask this Court to consider.  For example, the Attorney General of Florida, as well as other entities in Florida, have brought suit against Defendants for allegedly excessive shipments in that state.

## No. 4: To Preclude Plaintiffs From Offering Evidence of, or Arguments about, Defendants' Settlements with the DEA or the Track One MDL Plaintiffs

Plaintiffs disclaim any intention to use evidence of Defendants' settlements with the DEA to prove liability, Opp. 21, but their prior briefing directly contradicts that position.  When Plaintiffs have cited the settlements in the past—including in their Opposition to Defendants' motions *in limine*—it has been as supposed evidence to argue that Defendants failed to implement effective systems to prevent diversion.  Opp. 15 (asserting that "evidence of Defendants' conduct outside of the City of Huntington and Cabell County is plainly relevant … to prove that Defendants' conduct violated the CSA, which is, by itself, an independent route to nuisance liability" in this case).  Plaintiffs go so far as to say that the settlement agreements "establish a pattern of [wrongful] conduct" and that "these settlements serve as ***direct evidence*** that Defendants' conduct in the City of Huntington and Cabell County was also ***in violation of the CSA***." Opp. 22–23 (emphases added).

14

Clearly, Plaintiffs want to use evidence of the settlements to establish liability in this case. *Id.* Federal Rule of Evidence 408—as well as Rule 404(b)—forbids the use of settlements for that purpose.[7]

Plaintiffs argue that this evidence is necessary to prove knowledge and state of mind because "Defendants have claimed that they lacked understanding of their legal duties." Opp. 22. But Defendants have not claimed a lack of understanding of their legal duties. Instead, they disagree with Plaintiffs about what those duties are, and whether any of them run to Plaintiffs, but Defendants have not claimed ignorance of the law as a defense. And, one or two settlements over a 20-year span related to allegations in other states does not establish that Defendants' conduct "was intentional and persisted over a lengthy period of time" or put them on notice of diversion in Cabell/Huntington. Opp. 23. For these same reasons, Judge Polster erred in ruling that these settlements are properly evidence of knowledge or intent—they do not properly establish either one.

Plaintiffs' other three arguments for the admissibility of these settlement agreements are likewise unavailing. First, Plaintiffs contend that Rule 408 does not apply in the first place because the subject settlements were about "some other claims" than those at issue in this trial. Opp. 21 (citing *Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.*, 11 F.3d 1284 (6th Cir. 1997).[8]

---

[7] *See Connelly v. Hyundai Motor Corp.*, 351 F.3d 535, 546–547 (1st Cir. 2003) (in a wrongful death action, evidence that driver of vehicle had been cited for failing to seatbelt his child on two prior occasions was inadmissible propensity evidence under Fed. R. Evid. 404(b), because it suggested only that father likely failed to seatbelt child on date of accident).

[8] The *Uforma/Shelby* decision (and the excerpt from Wright & Miller on which it relies) concerned a very different issue—whether Rule 408 protects a wrong committed in the course of the settlement discussions. Specifically, in *Uforma/Shelby*, the issue was whether evidence of management's threats of retaliation in the course of settlement discussions of a labor grievance could be used, apart from the grievance, to prove an unfair labor practice claim for retaliating against the union's filing of the grievance. 111 F.3d at 1293–94.

Defendants agree that the settlements were about "some other claims," but that does not help Plaintiffs—instead, it underscores that the settlements are irrelevant and any reference to them would be based on a "if it happened there, it must be happening here" premise.  Br. 14.

Plaintiffs' assertion that Rule 408 does not apply because the plaintiffs in this case are different than in the settled matters is incorrect, and their attempt to distinguish *Massachusetts Mutual Life Insurance Co. v. DLJ Mortgage Capital, Inc.*, 251 F. Supp. 3d 329 (D. Mass. 2017), on that basis fails.  *See* Opp. 21 ("Since the evidence Defendants now seek to exclude does not involve specific claims asserted by the City of Huntington or the Cabell County Commission, Rule 408 is inapplicable.").  In *Massachusetts Mutual*, the court precluded the plaintiff from relying on "certain facts set forth and acknowledged by Credit Suisse in a settlement agreement" with the Department of Justice to establish liability in the plaintiff's case.  251 F. Supp. 3d at 331.  The court expressly held:  "Rule 408 of the Federal Rules of Evidence is therefore applicable, even though MassMutual was not a party to the DOJ Settlement."  *Id.* (citing *Portugues–Santana v. Rekomdiv Int'l*, 657 F.3d 56, 63 (1st Cir. 2011) ("[Rule 408's] prohibition applies equally to settlement agreements between a defendant and a third party and between a plaintiff and a third party.")).

Second, Plaintiffs' argument that the settlements are relevant contradicts their initial argument that Rule 408 does not apply because the settlements concern "some other claim" and are offered for a purpose other than to prove liability.  *See* Opp. 21.  That argument—that the DEA settlements are relevant because Defendants' SOM systems were national in scope, Opp. 24—is the "if it happened there, it must be happening here" argument again, and it is a use of the evidence that goes to prove ***liability***.  Plaintiffs repeatedly claim that "Defendants' failures to adequately monitor sales to prevent diversion in one geographic location affects other locations," and that the "settlements serve as direct evidence that Defendants' conduct

16

in the City of Huntington and Cabell County was also in violation of the CSA." Opp. 23, 24. Thus, we are back to where we began: Rule 408 prohibits introduction of this evidence.

As Defendants demonstrated in their opening brief, the settlements are not relevant to prove wrongdoing because none of the settlement agreements implicate distribution of opioids into Cabell County or Huntington. Br. 14. This should end the inquiry. [9] Fed. R. Evid. 401, 402. Additionally, Plaintiffs offer no response to the fact that three of the settlements with DEA and the Track One MDL settlement all expressly disclaim any admission or concession of liability, and mere hearsay allegations of wrongdoing within those documents are not probative of anything. As a result, even if Plaintiffs were correct that "failures to adequately monitor sales to prevent diversion in one geographic location affects other locations," Opp. 24, which they are not, that would not provide any basis to admit into evidence settlement agreements that expressly disclaim any admission or concession of liability.

Third, Rule 406 does not provide a backdoor to admissibility of settlement agreements. To offer evidence under Rule 406, the offering party must establish the habitual nature of the practice at issue with a "degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." *Simplex, Inc. v. Diversified Energy Sys., Inc.*, 847 F.2d 1290, 1293 (7th Cir. 1988). The rule is reserved for conduct like an organization's routine practice of automatically sending out updates to its Terms and Conditions or automatically generating invoices or receipts. *Gibbs v. Stinson*, 2019 U.S. Dist. LEXIS 170198, at *49–*51 (E.D. Va. Sept. 30, 2019). But the settlements do not show that Defendants' employees engaged in a

---

[9] As set forth in Defendants' opening brief, this motion should not be interpreted to foreclose *Defendants* from presenting evidence of DEA settlements for the purposes of defending this case, including explaining the history of and defending their suspicious monitoring programs.

"routine" practice under Defendants' suspicious order monitoring programs; instead, those programs require employees to engage in deliberations and fact-intensive decisions that are far different from automatically generating a receipt. *Compare id.*   One settlement of DEA allegations (in the case of ABDC) or two (Cardinal Health and McKesson) over a period of 20 years does not reflect that Defendants' conduct constitutes a "routine" practice, and certainly not a "semi-automatic" response.

Dated:  November 6, 2020                                  Respectfully submitted,

**CARDINAL HEALTH, INC.**

*/s/ Steven R. Ruby*                                          */s/ Enu Mainigi*
Michael W. Carey (WVSB No. 635)              Enu Mainigi
Steven R. Ruby (WVSB No. 10752)             F. Lane Heard III
David R. Pogue (WVSB No. 10806)            Ashley W. Hardin
Raymond S. Franks II (WVSB No. 6523)    Jennifer G. Wicht
**CAREY DOUGLAS KESSLER & RUBY**       **WILLIAMS & CONNOLLY LLP**
**PLLC**                                                            725 Twelfth Street NW
901 Chase Tower, 707 Virginia Street, East    Washington, DC 20005
P.O. Box 913                                                     Tel: (202) 434-5000
Charleston, WV 25323                                     Fax: (202) 434-5029
Telephone: (304) 345-1234                            emainigi@wc.com
Facsimile: (304) 342-1105                             lheard @wc.com
mwcarey@csdlawfirm.com                            ahardin@wc.com
sruby@cdkrlaw.com                                       jwicht@wc.com
dpogue@cdkrlaw.com
rfranks@cdkrlaw.com

**AMERISOURCEBERGEN DRUG CORPORATION**

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
**JACKSON KELLY PLLC**
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

**MCKESSON CORPORATION**

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
**FLAHERTY SENSABAUGH BONASSO
PLLC**
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*/s/ Timothy C. Hester*
Timothy C. Hester
Paul W. Schmidt
Christian J. Pistilli
Laura Flahive Wu
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
pschmidt@cov.com
cpistilli@cov.com
lflahivewu@cov.com

19

## CERTIFICATE OF SERVICE

I, Steven R. Ruby, counsel for Defendant Cardinal Health, Inc., do hereby certify that on this 6th day of November, 2020, the foregoing **"Reply in Support of Defendants' Motions in Limine"** was filed electronically via the CM/ECF electronic filing system and served on all counsel registered in the system.

*/s/* Steven R. Ruby
Steven R. Ruby (WVSB #10752)