UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| CITY OF HUNTINGTON,<br>    Plaintiff,<br>v.<br>AMERISOURCE BERGEN DRUG CORPORATION, et al.,<br>    Defendants. | Civil Action No. 3:17-cv-01362 |
| CABELL COUNTY COMMISSION,<br>    Plaintiff,<br>v.<br>AMERISOURCE BERGEN DRUG CORPORATION, et al.,<br>    Defendants. | *Consolidated case:*<br>Civil Action No. 3:17-cv-01665 |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION *IN LIMINE* TO PRECLUDE EVIDENCE, TESTIMONY, STATEMENTS, OR ARGUMENTS PERTAINING TO ANY PAYMENTS THE PLAINTIFFS RECEIVED FROM COLLATERAL SOURCES**

**INTRODUCTION**

In West Virginia, as a matter of substantive law, the collateral source rule prevents evidence of payments from sources other than the culpable defendants. *Kenney v. Liston*, 233 W. Va. 620, 626, 760 S.E.2d 434, 440 (2014). Even a cursory review of the opinion in *Liston* leads to the clear conclusion that, as a matter of public policy, West Virginia has adopted a broad ranging collateral source rule. In their response, Defendants improperly seek to graft exceptions and limitations onto the

broad rule confirmed in *Liston* that are inconsistent with the rule and the public policies the rule advances.

Defendants have caused and/or contributed to a public nuisance that will take over two billion dollars to abate. Defendants continue to deny liability for the havoc they have wrecked on Plaintiffs' communities. That Plaintiffs have turned to others in the past to lessen the harms of the opioid epidemic does not relieve Defendants of their responsibility to abate this public nuisance. As a matter of substantive West Virginia law, Defendants are precluded from introducing any evidence, testimony, statements, or arguments pertaining to any payments Plaintiffs received from collateral sources because those payments (along with any anticipated future payments) cannot be used to reduce Defendants' liability. This Court should so rule *in limine* and grant Plaintiffs' motion.

## ARGUMENT

**I.     The Collateral Source Rule Applies to the Past and Potential Future Provision of Portions of Plaintiffs' Abatement Plan by Parties Unconnected to Defendants.**

Defendants seek to avoid the application of the collateral source rule by claiming that the payments at issue here were made to non-parties for injuries to non-parties. The argument rests on a misstatement of both Plaintiffs' claims and the collateral source rule and should be rejected.

This case is a public nuisance action brought by governmental plaintiffs seeking to abate a public nuisance. As Plaintiffs have noted elsewhere, this case

involves Defendants' interference with the public right to health and safety.[1] As Plaintiffs' experts and witnesses have opined, the abatement of this nuisance requires programs to treat opioid use disorder, HIV, neonatal abstinence syndrome, hepatitis B and C, infective endocarditis, and other co-morbidities resulting from the opioid epidemic Defendants caused.[2] Abatement of this nuisance also requires supply reduction measures, treatment and support for addicted individuals, enhanced public safety programs, and programs to address the needs of special populations affected by the opioid crisis.[3] Evidence that third-party entities may have contributed in the past to partially abate the nuisance (or that they may contribute in the future) constitutes collateral source evidence that is clearly subject to the rule.

Defendants first argue that the partial funding of these programs in the past (and the purported availability of these funds in the future) are not collateral sources because the payments are not made to Plaintiffs. Defendants are wrong as a matter of law.

There is no requirement that collateral sources involve direct payments to a plaintiff. Many examples of collateral sources offered by the Supreme Court of Appeals in *Liston* do not involve direct payments. Several examples, such as remarriage, tax savings, gratuitous nursing care by a relative, and veteran's and military hospital benefits do not involve payment to anyone. 233 W. Va. at 628-30,

---

[1] *See* Doc. 1097, Plaintiffs' Appendix of Expert Reports (sealed), Ex. 1-a, ¶¶ 20-30.
[2] *Id.* at ¶¶ 33-218.
[3] *Id.*

3

760 S.E.2d at 442-44. Many other examples include payments of medical expenses made directly to an entity other than the plaintiff. *Id.* (listing health insurance, workers' compensation, Medicare, and Medicaid as collateral sources). Indeed, the collateral source at issue in *Liston* was not a payment at all; rather at issue was the admissibility of discounted rates for medical expenses negotiated by the plaintiff's health insurer. *Id.* at 630, 444. Defendants' cramped interpretation of the collateral source rule as applying only to payments made directly to plaintiffs finds no support in West Virginia law.

Nor is the collateral source rule limited to past payments. *See, e.g., Molzof v. United States,* 6 F.3d 461, 464 (7th Cir. 1993) (future medical expenses were recoverable, pursuant to collateral source rule, in spite of fact that patient was entitled to free medical care from government as veteran); *Amlotte v. United States*, 292 F. Supp. 2d 922, 932 (E.D. Mich. 2003) (government's future payments under Medicare Part A and Part B could not be offset against damages for the cost of minor plaintiff's future medical care under Michigan's collateral source statutory scheme since future Medicare payments were more properly characterized as coming from a collateral, rather than a direct, source).

Defendants next argue that the collateral source rule does not apply here because the payments were supposedly for injuries to someone other than the Plaintiffs. This argument, which is a continuation of Defendants' challenge to Plaintiffs' claim of interference with a public right to health and safety, fails for the

4

same reason it does there.[4] The injury here is to Plaintiffs' public right to the health and safety of their communities. As Plaintiffs' witnesses will testify, abating that injury requires the provision of services to members of the public in Plaintiffs' communities. The provision of addiction treatment and other components of the abatement plan are clearly to redress the interference with Plaintiffs' public rights to health and safety.

The court in *Town of E. Troy v. Soo Line R. Co.,* 653 F.2d 1123, 1132 (7th Cir. 1980), rejected the argument that a municipality bringing a public nuisance action arising out of a chemical spill could not recover damages other than to its property when federal grants were paid to abate the nuisance, noting "if the Town has obtained a windfall, such is the routine result of application of the collateral source rule." The court rejected a claim of double recovery like the one advanced by Defendants here. *Id.* ("There is no question that Wisconsin law prefers double recovery for a plaintiff to allowing a defendant to avoid paying for the consequences of his or her wrongful acts."). The result should be no different under West Virginia law which has the same preference for "double recovery" over allowing a defendant to avoid paying for the consequences of his or her wrongful acts. *Liston, supra.*

Defendants claim that they should be permitted to offer evidence to establish that Plaintiffs are supposedly "the wrong government entit[ies] to implement

---

[4] *See* Memorandum in Support of Defendants' Motion for Summary Judgment Regarding Nuisance, Doc. 1004 at 8-13 (September 22, 2020) and Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment Regarding Nuisance, Doc. 1077 at 2-10 (October 6, 2020).

addiction treatment programs, to demonstrate that Plaintiffs are not entitled to any 'abatement remedy,' and to cross-examine Plaintiffs' experts about the breadth, scope, and amount of the 'abatement plan' they have proposed." Opp. at p.5. Neither argument is persuasive.

Defendants fail to explain how evidence that other entities have partially paid in the past for some of the items in Plaintiffs' abatement plan has any bearing on the breadth, scope, or amount of any abatement plan now necessary. In any event, such questions are clearly separate and apart from whether Defendants are entitled to use those payments to reduce their liability – a result specifically foreclosed by the collateral source rule's substantive components. *Liston,* 626, 440. Finally, to the extent that Defendants are challenging Plaintiffs' standing to seek abatement of the public nuisance that Defendants have caused, that issue involves a question of law which is fully briefed and pending before the Court.[5] *See* Docs. 239, 287, 357.

## II. West Virginia's Broad Collateral Source Rule Applies to Actions Seeking the Equitable Remedy of Abatement in a Bench Trial.

Defendants argue that the broad collateral source rule announced in *Liston* has no application to this action because this is a bench trial sounding in equity seeking abatement rather than damages. This argument lacks any direct authority supporting it. It is also incorrect because it ignores both the public policy basis of the collateral source rule and its substantive nature.

---

[5] Plaintiffs agree that the collateral source rule does not apply to payments by Defendants in settlement of the WVAG actions against these Defendants, "*to the extent that* the State passed on any of that money to Plaintiffs for the abatement of the opioid abuse crisis." *See* Opp. at p. 6 (emphasis added).

6

Defendants cite no authority, from West Virginia or elsewhere, rejecting the collateral source rule in an abatement action sounding in equity. This is not surprising because the rule itself is "an equitable doctrine." *Renner v. Progressive N. Ins. Co.*, No. 2:12-CV-2570-CDJ, 2014 WL 1091359, at *2 (E.D. Pa. Mar. 18, 2014); *see also Estate of Kriefall v. Sizzler USA Franchise, Inc.,* 2012 WI 70, ¶ 69, 342 Wis. 2d 29, 68, 816 N.W.2d 853, 871-872 (2012) (same).

Nor do Defendants cite any case limiting the application of the collateral source rule to claims for damages and disallowing it in an action seeking abatement. West Virginia law is not so limited. Indeed, *Liston's* illustrative listing of fourteen examples of collateral sources cannot be read as adopting a narrow interpretation of the rule in West Virginia. 233 W. Va. at 628-630, 760 S.E.2d at 442-444; *see also id.* at 627, n. 25, 760 S.E.2d at 441, n.25 ("This list is not absolute."). The Supreme Court of Appeals explicitly choose to adopt an expansive version of the rule.[6] The Court's broad definition is underscored by its conclusion:

> The cases from this jurisdiction and others are clear: *Only benefits received from the original tortfeasor, the tortfeasor's agent, or a joint tortfeasor reduce a tort defendant's liability.*

---

[6] *Compare Liston,* 233 W.Va. at 631, 760 S.E.2d at 760 (collateral source rule protects the amounts discounted from a plaintiff's medical bill or written off by the medical provider) *with Plank v. Summers,* 203 Md. 552, 562, 102 A.2d 262, 267 (1954) (the value of medical and hospital services furnished gratuitously by a naval hospital to plaintiffs as members of the United States Navy were proper items for the jury's consideration in determining the amount of damages to be paid by defendants); *Banks v. Crowner,* 694 P.2d 101, 105 (Wyo.1985) ("hospital bills from the Veteran's Administration (V.A.) were properly submitted to the jury for consideration").

*Liston*, 233 W. Va. at 630, 760 S.E.2d at 444 (internal quotation omitted)(emphasis added). The *Liston* court's conclusion is determinative here as the limitations to the collateral source advanced by Defendants are not benefits received from the original tortfeasor, the tortfeasor's agent, or a joint tortfeasor.[7]

Defendants' supposed equitable justification – that Plaintiffs seek funds for an abatement program that in the past has been partially paid for by others – is essentially a plea not to allow double recovery. The claim that the specter of double recovery should relieve a culpable party in whole or in part of his liability to avoid a supposed windfall to the plaintiff is the very equitable argument rejected by the collateral source rule as a matter of substantive law. *Liston,* 233 W. Va. at 631, 760 S.E.2d at 445 (as a matter of public policy it is better for plaintiffs to receive the benefit of collateral sources than for defendants to be able to limit their liability). As the *Liston* court recognized, allowing a defendant relief from liability based on collateral sources also creates a windfall. *Id*. Thus, *"*[b]*ecause the law must sanction one windfall and deny the other, it favors the victim of the wrong rather than the wrongdoer."* *Id.* (emphasis in original) (internal quotation omitted); *see also id.* ("The collateral source rule requires the injured party to be made whole exclusively by the tortfeasor and not by a combination of compensation from the tortfeasor and collateral sources." (internal quotation omitted)).

---

[7] Indeed, Defendants argue that this Court should be conservative in expanding West Virginia law absent direction from the Supreme Court of Appeals. Opp. at 2, fn. 1. Given the expansive definition of the rule set forth in *Liston,* adding *exceptions* to the broad collateral source rule not explicitly recognized by the Supreme Court of Appeals, would certainly violate this principle.

While a court sitting in equity may have discretion in fashioning remedies, that discretion is cabined by substantive West Virginia law which broadly recognizes the equitable doctrine known as the collateral source rule. Defendants do not even attempt to explain why the public policy that underlies the collateral source rule is not equally applicable in an equitable action seeking abatement. The applicable public policy basis for the rule provides no basis to distinguish equitable claims from damage actions.

Finally, while *one* purpose of the collateral source rule is to avoid jury confusion, the collateral source rule is not just a rule of evidence. The rule is *both* a rule of evidence and a rule of damages. *Liston,* 233 W. Va. at 626, 760 S.E.2d at 440; *Ilosky v. Michelin Tire Corp.*, 172 W.Va. 435, 446, 307 S.E.2d 603, 614 (1983) ("[T]he collateral source rule excludes payments from other sources to plaintiffs from being used to reduce damage awards imposed upon culpable defendants."). In any event, federal courts conducting bench trials regularly apply the collateral source rule and substantively refuse setoffs of collateral sources. *United States v. Price*, 288 F.2d 448, 449 (4th Cir. 1961) (trial judge in FTCA bench trial correctly refused to set-off annuity payable to the plaintiff under the Civil Service Retirement Act); *see also Aretz v. United States*, 456 F. Supp. 397, 408 (S.D. Ga. 1978), *aff'd*, 604 F.2d 417 (5th Cir. 1979), *on reh'g*, 635 F.2d 485 (5th Cir. 1981) (applying the collateral source rule to workers compensation payments in bench trial of FTCA case); *Titchnell v. United States*, 681 F.2d 165, 174 (3d Cir. 1982) (Medicare payments constituted "collateral source" under the law of Pennsylvania in FTCA bench trial).

9

The very confusion that the evidentiary basis for the collateral source rule seeks to avoid is the fear that juries will ignore the *substantive rule* that the defendants are not entitled to reduce their liability based on collateral sources. *Id.* Plaintiffs agree that this Court is unlikely to be confused, but this substantively irrelevant evidence should not be admitted or permitted to be used as a basis to reduce Defendants' liability.

## CONCLUSION

The Court should grant Plaintiffs' Motion *in Limine* to preclude evidence, testimony, statements, or arguments pertaining to any payments Plaintiffs received, or may in the future receive, from collateral sources.

Dated: November 6, 2020

Respectfully submitted,

| THE CITY OF HUNTINGTON | CABELL COUNTY COMMISSION |
|---|---|
| /s/ *Anne McGinness Kearse* <br> Anne McGinness Kearse <br> WVSB No 12547 <br> Joseph F. Rice <br> **MOTLEY RICE LLC** <br> 28 Bridgeside Blvd. <br> Mount Pleasant, SC 29464 <br> Tel: 843-216-9000 <br> Fax: 843-216-9450 <br> akearse@motleyrice.com <br> jrice@motleyrice.com <br><br> Linda Singer <br> David I. Ackerman <br> **MOTLEY RICE LLC** <br> 401 9th Street NW, Suite 1001 <br> Washington, DC 20004 <br> Tel:  202-232-5504 <br> Fax:  202-386-9622 <br> lsinger@motleyrice.com <br> dackerman@motleyrice.com <br><br> Charles R. "Rusty" Webb <br> WVSB No. 4782 <br> **The Webb Law Centre, PLLC** <br> 716 Lee Street, East <br> Charleston, West Virginia 25301 <br> Telephone: (304) 344-9322 <br> Facsimile: (304) 344-1157 <br> rusty@rustywebb.com | /s/ *Paul T. Farrell, Jr.* <br> Paul T. Farrell, Jr. <br> WVSB Bar No. 7443 <br> **FARRELL LAW** <br> 422 Ninth Street, 3rd Floor (25701) <br> PO Box 1180 <br> Huntington, West Virginia 25714-1180 <br> Mobile: 304-654-8281 <br> paul@farrell.law <br><br> */s/ Anthony J. Majestro* <br> Anthony J. Majestro <br> WVSB No. 5165 <br> **POWELL & MAJESTRO, PLLC** <br> 405 Capitol Street, Suite P-1200 <br> Charleston, WV 25301 <br> 304-346-2889 / 304-346-2895 (f) <br> amajestro@powellmajestro.com <br><br> Michael A. Woelfel (WVSB No. 4106) <br> **WOELFEL AND WOELFEL, LLP** <br> 801 Eighth Street <br> Huntington, West Virginia 25701 <br> Tel. 304.522.6249 <br> Fax. 304.522.9282 <br> mikewoelfel3@gmail.com |

**CERTIFICATE OF SERVICE**

I certify that on November 6, 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system. This filing will also be served on all parties by email to Track2OpioidDefendants@ReedSmith.com, MDL2804Discovery@motleyrice.com, and CT2_Opioid_Team@mail-list.com.

/s/ *Anthony J. Majestro*