IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, et al.,<br><br>    Defendants. | Civil Action No. 3:17-01362<br>Hon. David A. Faber |
| CABELL COUNTY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, et al.,<br><br>    Defendants. | Civil Action No. 3:17-01665<br>Hon. David A. Faber |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE
THE IMPROPER ERRATA OF JAMES RAFALSKI**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 1

    A. Mr. Rafalski's Errata Undermines the Purpose of Expert Depositions Under the Federal Rules ................................................................................................ 1

    B. Plaintiffs' Attempt to Back-fill Mr. Rafalski's Inconsistent Testimony on Suspicious Orders Should Be Rejected ..................................................................... 4

    C. The Court Should Reject Plaintiffs' Attempt to Rewrite Concessions Establishing Rafalski Misunderstands His Own Methodologies ............................. 7

    D. Plaintiffs' Attempt to Rewrite Mr. Rafalski's Testimony by an Improper Errata Is Highly Prejudicial to Defendants ............................................................... 9

III. CONCLUSION .................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*,
 277 F.R.D. 286 (E.D. Va. 2011) ..................................................................................1, 2, 3

*Foutz v. Town of Vinton, Virginia*,
 211 F.R.D. 293 (W.D. Va. 2002) ..............................................................................................3

*Holland v. Cedar Creek Mining, Inc.*,
 198 F.R.D. 651 (S.D. W. Va. 2001) .........................................................................................3

*Huggins v. Prince George's County*,
 No. AW-07-825, 2009 WL 10685425 (D. Md. May 27, 2009) ...........................................3, 9

*Kellington v. Bayer Healthcare Pharms. Inc.*,
 No. 5:14-cv-2, 2016 WL 4535056 (W.D. Va. Aug. 30, 2016) .................................................3

*Wellin v. Farace*,
 No. 2:16-cv-00414, 2018 WL 7247056 (D.S.C. Dec. 5, 2018) ................................................5

*Wyeth v. Lupin Ltd.*,
 252 F.R.D. 295 (D. Md. 2008) ..................................................................................................2

**I.     INTRODUCTION**

Plaintiffs' opposition confirms that Plaintiffs served Mr. Rafalski's errata to accomplish two goals: (1) eliminate certain concessions obtained by Defendants; and (2) back-fill "incomplete" and inconsistent testimony to mirror statements made in Mr. Rafalski's expert report.  Errata sheets can be a useful tool to correct transcription errors inadvertently introduced by a skilled court reporter.  But allowing an expert to use the errata process to substantively change his testimony undermines the purpose of taking expert depositions.  This is particularly true here, where Plaintiffs' justifications for the changes rely almost entirely on statements made by Plaintiffs' own lawyers during the deposition—not testimony provided by Mr. Rafalski.  To allow Mr. Rafalski to make substantive changes to his deposition testimony through errata would be highly prejudicial to Defendants, inconsistent with the Federal Rules, and should be stricken.

**II.     ARGUMENT**

    **A.     Mr. Rafalski's Errata Undermines the Purpose of Expert Depositions Under the Federal Rules**

Plaintiffs contend that Mr. Rafalski's errata is appropriate because the changes are consistent with his expert report and prior opinions.[1]  Plaintiffs' argument ignores the purpose of expert depositions under the Federal Rules.  Under Plaintiffs' argument, fatal admissions elicited at deposition can be subsequently rewritten by the expert in consultation with attorneys after the deposition.  Plaintiffs seek to turn a deposition into a take home examination—the exact scenario rejected by courts in the Fourth Circuit.  *See E.I. Du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 277 F.R.D. 286, 297 (E.D. Va. 2011) ("The Rule cannot be interpreted to allow one to alter what was said under oath.  If that were the case, one could merely answer the questions with no

---

[1] Plaintiffs' Memorandum in Opposition to Defendants' Motion to Strike Errata of James E. Rafalski, Dkt. No. 1162 ("Opp.") at 3.

thought at all then return home and plan artful responses. . . . A deposition is not a take home examination."); *Wyeth v. Lupin Ltd.*, 252 F.R.D. 295, 296 (D. Md. 2008) ("The errata sheet 'clarifications' in this case are akin to a student who takes her in-class examination home, but submits new answers only after realizing a month later that the import of her original answers could possibly result in a failing grade.").

Courts in this circuit recognize "that a deponent must give honest and complete answers at the deposition." *Kolon Indus., Inc.*, 277 F.R.D. at 297. "It makes no sense to allow a deponent to change sworn testimony merely because after the deposition he wishes that he had said something other than what was said." *Id*. But this is exactly what Plaintiffs hope to accomplish through Mr. Rafalski's errata. Plaintiffs concede in their Response that Mr. Rafalski gave what they characterize as an "incomplete answer" at his deposition that they did not like, and that the errata is intended to "render[] his complete answer consistent with his opinions."[2] Plaintiffs assert that they are simply "completing" the answer, but their completion is an after-the-fact rewrite of the deposition responses to reflect the testimony Plaintiffs wished Mr. Rafalski provided, not his actual testimony.

Courts within the Fourth Circuit also recognize that an errata should not be used for "post-deposition revision of testimony to conform a witness' testimony to enhance a party's case." *Kolon Indus., Inc.*, 277 F.R.D. at 297. "That too would undermine the purpose for which depositions are allowed under the federal rule." *Id*. Here, Plaintiffs seek to use an errata to undo testimony from Mr. Rafalski directly undermining their theory of the case, namely Mr. Rafalski's concession that his methodologies do not identify suspicious orders. Mr. Rafalski's unaltered testimony further undercuts arguments advanced by Plaintiffs in their opposition to Defendants'

---

[2] Opp. at 5.

*Daubert* challenge to Mr. Rafalski's opinions. In their *Daubert* opposition, Plaintiffs contend that "Mr. Rafalski provides an estimate of the suspicious orders that Defendants would have identified had they employed a reliable methodology"[3]—an argument contrary to Mr. Rafalski's original testimony that his methods do not identify suspicious orders reportable to DEA.

The Court should adopt a strict reading of Rule 30(e) here because Plaintiffs' attempts to rewrite Mr. Rafalski's deposition responses undermine the purpose of an expert deposition. Expert depositions offer counsel the opportunity to explore the bases for an expert's opinion and challenge any inconsistencies or inaccuracies within the opinion. *See Kellington v. Bayer Healthcare Pharms., Inc.*, No. 5:14-cv-2, 2016 WL 4535056, at *5 (W.D. Va. Aug. 30, 2016) (explaining expert's "testimony was supposed to be finalized before his deposition, so it could be tested or examined there by [opposing] counsel"). Allowing a witness to rewrite testimony obtained while being challenged on his opinions by opposing counsel frustrates the very purpose of a deposition under the Federal Rules. *See Huggins v. Prince George's County*, No. AW-07-825, 2009 WL 10685425, at *2 (D. Md. May 27, 2009) ("[P]ermitting such breathtaking alterations to deposition testimony defeats the purpose of a deposition, *i.e.*, spontaneous answers under oath and the opportunity to ask follow-up questions.").[4]

---

[3] Plaintiffs' Memorandum in Opposition to Defendants' *Daubert* Motion to Exclude the Opinions of James E. Rafalski, Dkt. No. 1108, at 15.

[4] While not all trial courts in the Fourth Circuit interpret Rule 30(e) strictly, even those courts that interpret Rule 30(e) broadly and allow substantive changes through errata require ***both*** the testimony taken at deposition ***and*** the changed errata testimony to remain in evidence. *See Kolon Indus. Inc.*, 277 F.R.D. at 296 (instructing that under the traditional approach, "both versions of the testimony must remain in evidence"); *Foutz v. Town of Vinton, Va.*, 211 F.R.D. 293, 295 (W.D. Va. 2002) (explaining that courts adopting the broad reading of Rule 30(e) point to "the fact that the other party can admit into evidence both the original and corrected answers; by which then a witness may be impeached with his contradictory answers"); *Holland v. Cedar Creek Mining, Inc.*, 198 F.R.D. 651, 653 (S.D. W. Va. 2001) (noting that "[t]he witness who changes his testimony on a material matter between the giving of his deposition and his appearance at trial may be impeached by his former answers"). Should the Court decline to

3

### B.   Plaintiffs' Attempt to Back-fill Mr. Rafalski's Inconsistent Testimony on Suspicious Orders Should Be Rejected

Plaintiffs offer two justifications supporting Mr. Rafalski's errata to Defendants' straightforward "Yes/No" question of whether distributors should have reported orders flagged by Mr. Rafalski's methodologies to DEA.  Neither supports the errata.

First, Plaintiffs argue that the "yes or no" nature of the relevant question justified the errata's rewrite of Mr. Rafalski's testimony.[5]  Not so.  "Yes/No" questions are appropriate in numerous instances, providing a reasonable safeguard against abusive question-answering.[6] Indeed, one of Mr. Rafalski's proposed errata changes proves this point, as he literally seeks to take a responsive answer to a yes/no question and make it non-responsive.  *Compare* Ex. 2 (Rafalski Dep., Sept. 11, 2020) at 101:10-13 *with* Ex. 1 (Rafalski Errata Sheet). If Mr. Rafalski felt the question could not be answered at the time with a simple yes or no, he could have said so and expounded on his answer, as he did many other times during the deposition.[7]   Instead, Mr.

---

strike Mr. Rafalski's errata, the Court should admit both the original testimony and the changed errata into evidence.

[5] *See* Opp. at 4 ("However, upon review of the testimony, it became evident that, due to the Defendants' request for a 'yes or no' answer, the response was so incomplete as to potentially be confusing.").

[6] Mr. Rafalski is familiar with "Yes/No" questions, having recently been instructed by the New York state Judge at the opioids *Frye* hearing in that case to answer "Yes/No" questions with an appropriate yes or no response.  *See* Ex. 6 (Aug. 18, 2020 *Frye* Hearing Tr.) at 18:13-14 ("THE COURT:  Just yes or no, Mr. Rafalski."); *id.* at 131:5-7 ("THE COURT:  Time out.  Is this a consistent method you employed while at the DEA; yes or no?").

[7] Ex. 7 (Rafalski Dep., Sept. 11, 2020) at 34:1-11 ("Q. Would reports written by West Virginia Board of Pharmacy inspectors detailing their on-site inspections of West Virginia pharmacies, including West Virginia pharmacies you talked about, be useful and relevant for you to review in assessing those pharmacies?  Yes or no?  A.  I – it's more complicated than a yes or no.  It's a possibility – [overtalking] it's a possibility they could be relevant, depending on how the assessment or the inspection was done."); *id.* at 110:9-12 ("Q. That's a yes or no question.  A.  I don't think it is, Mr. Schmidt, because you're asking me to give a hypothetical answer to a hypothetical question, and –."); *id.* at 36:14-37:5 ("Q.  Well, would you want to know if one of the pharmacies you talked about, the West Virginia Board of Pharmacy, went there and said

4

Rafalski's "no" was an admission—pure and simple—and now Plaintiffs' lawyers want to walk it back through an improper errata. The Court should reject that attempt.

Second, Plaintiffs argue that the changed testimony in the errata is consistent with other testimony Mr. Rafalski provided at deposition.[8] However, to do so, Plaintiffs are forced to cobble together a patchwork of phrases from 13 pages of testimony, ***including "testimony" from Plaintiffs' lawyer representing Mr. Rafalski at the deposition***. Specifically, Plaintiffs' opposition contends that Mr. Rafalski "testified" that his methodology "'was to set out the triggers' for flagged orders through the use of algorithms and 'then[,] with the assumption [sufficient due diligence was not performed, to] identify the orders that should have been reported."[9] But this "testimony" is not from Mr. Rafalski; it is a leading question asked by Plaintiffs' lawyer on redirect.[10] There is no precedent that allows Plaintiffs to erase Mr. Rafalski's unequivocal "No" using words from improper leading questions by Plaintiffs' lawyers. *See Wellin v. Farace*, No. 2:16-cv-00414, 2018 WL 7247056, at *10 (D.S.C. Dec. 5, 2018) (warning against "lawyers coaching or bending the witness's words to mold a legally convenient record. It is the witness – not the lawyer – who is the witness.").

---

'There is no improper dispensing here,' or, 'There are no illegal sales here' or 'The prescriptions are for a legitimate medical purpose here,' would you want to know that, yes or no? . . . A. It's not just a simple yes or no. . . .").

[8] *See* Opp. at 5 ("Mr. Rafalksi's [sic] erratum renders his incomplete answer consistent with his opinions offered through his expert report and testimony in this matter.").

[9] Opp. at 6 (brackets and quotation marks in original).

[10] Ex. 7 (Rafalski Dep., Sept. 11, 2020) at 393:18-24; *see also id.* at 384:4-9 (defense counsel making running objection to leading deposition questions: "MR. SCHMIDT: . . . Could I just have a running objection to all of the leading of your witness so I don't have to keep – MR. FULLER: Absolutely, sure. Sure, no problem. MR. SCHMIDT: Thank you.").

The other excerpts relied on by Plaintiffs are no better. Plaintiffs contend that Mr. Rafalski "testified" that "where a flagged 'order is determined to be suspicious . . . it [] should be reported to the DEA.'"[11] Plaintiffs' response again quotes the Plaintiffs' lawyer asking Mr. Rafalski leading questions on redirect, and not Mr. Rafalski's actual testimony.[12]

Plaintiffs' patchwork of "supporting" testimony only highlights that Mr. Rafalski's errata is inconsistent with his subsequent, unchanged answers at deposition. The answers Mr. Rafalski gave immediately following the concession he now seeks to change make clear his original response was no mistake:

> Q. Okay. How many should have been reported to the DEA as suspicious?
>
> A. ***The nature of my application of the methodology, the algorithm, wasn't for the purpose to identify orders that would be reported to DEA.*** It was just a triggering mechanism to identify orders from the transactional data from the defendants. It – it would – it's a much – it's broader, it's a broader requirement for the defendants than – than just to – for me to apply an algorithm to their transactional data and then say they should have reported them. That's – I mean, that's outside of what occurred here.
>
> Q. Okay. So these tens of millions of orders, can you give me any definition as to whether any of them, and if so how many, should have been reported to the DEA as suspicious?
>
> A. ***I – I didn't do that kind of evaluations. No, I can't give you a number, sir.***[13]

---

[11] Opp. at 5-6 (brackets and ellipses in original).

[12] Ex. 7 (Rafalski Dep., Sept. 11, 2020) at 383:12-19 ("Q. Now, let's talk about what your opinion is and has been related to obligations under the CSA. If an order is determined to be suspicious, it's your opinion that it should be halted; correct? A. Yes, sir. Q. And that it also should be reported to the DEA; is that right? A. Yes, sir.").

[13] Ex. 2 (Rafalski Dep., Sept. 11, 2020) at 101:14-102:8 (emphasis added).

Instead of curing inconsistencies within Mr. Rafalski's testimony, Plaintiffs' errata injects further inconsistencies into Mr. Rafalski's responses.

### C. The Court Should Reject Plaintiffs' Attempt to Rewrite Concessions Establishing Rafalski Misunderstands His Own Methodologies

Plaintiffs contend that revisions to Mr. Rafalski's testimony concerning his methodology are justified because they are "implicit" in his original testimony.[14] Remarkably, Plaintiffs argue that the original transcript included "a tacit, but unspoken, understanding that the flagging analysis was done on a pharmacy-by-pharmacy, and not Defendant-wide, basis," which Mr. Rafalski subsequently "clarified" through his errata.[15] This is simply not true.

A review of Mr. Rafalski's original testimony shows that "per pharmacy" is not implied in his response or the surrounding testimony. On the contrary, Plaintiffs' argument is undermined by Mr. Rafalski's own words immediately preceding the testimony Plaintiffs seek to change:

> Q. Do you know how many of the first ones there are, as opposed to the later ones, that are brought along based on your assumption?
>
> A. ***For each defendant*** there is one first order and every subsequent one is flagged if we are talking about Masters A?
>
> Q. Yes, how many first orders?
>
> \*\*\*
>
> Q. Like, let's take an example of the 11.6 million oxycodone orders for ABDC, how many of those 11.6 million were the initial orders and how many of them just came along due to the assumption?
>
> A. One initial order.[16]

---

[14] *See* Opp. at 7 ("While Mr. Rafalski answered 'one initial order,' implicit in his response was the understanding that he meant one initial order 'per pharmacy,' which were the two words his erratum added to clarify the response.").

[15] Opp. at 7.

[16] Ex. 7 (Rafalski Dep., Sept. 11, 2020) at 104:23-105:11 (emphasis added).

7

Mr. Rafalski's own words confirm that he understood his flagging methodology to include one initial flagged order *per defendant, not per pharmacy*. Mr. Rafalski's testimony moments later further confirms Mr. Rafalski's concession: "Q. Okay. And so am I correct that for Method A, for each defendant there is one, single order that drives the remaining millions of orders that you have flagged? A. Yes, sir."[17] Again, Mr. Rafalski's errata injects new inconsistencies with the original testimony Plaintiffs left unchanged.

Plaintiffs further contend that testimony from later in the deposition "clarified" Mr. Rafalski's earlier admissions: "Mr. Rafalski testified that when he said 'one initial order,' he meant 'one triggering order for each of [the Defendant's] customers' – *i.e.*, one triggering order per pharmacy."[18] Again, Plaintiffs are not quoting Mr. Rafalski, but the words of Plaintiffs' lawyer attempting to salvage Mr. Rafalski's opinion on redirect:

> Q. There's one thing I want to clear up, too, earlier. When you and Mr. Schmidt were going back and forth about the methodologies and how they worked, I think you indicated for each defendant there may be one triggering order. It would actually be one triggering order for each of their customers; is that right?
>
> A. Yes, sir.[19]

Plaintiffs' reliance on the words of their lawyer prompting Mr. Rafalski to change his testimony confirms they are attempting to rewrite, through errata, testimony establishing that Mr. Rafalski misunderstands his own methodologies.

---

[17] Ex. 7 (Rafalski Dep., Sept. 11, 2020) at 106:5-9.

[18] Opp. at 7 (brackets and quotation marks in original).

[19] Ex. 7 (Rafalski Dep., Sept. 11, 2020) at 395:9-16; *see also id.* at 395:17-20 (defense counsel objecting: "MR. SCHMIDT: Objection. Leading. And I'm just going to note for the record that directly changing the witness's testimony through a leading question is improper.").

8

### D. Plaintiffs' Attempt to Rewrite Mr. Rafalski's Testimony by an Improper Errata Is Highly Prejudicial to Defendants

Plaintiffs claim there is no prejudice to Defendants from the errata's "corrections and clarifications" to Mr. Rafalski's deposition testimony because he is merely making his testimony and expert report "consistent."[20]  But allowing Plaintiffs' lawyers to change admissions made during Defendants examination is deeply prejudicial to Defendants.  *See Huggins*, 2009 WL 10685425 at *2 (noting "the prejudice to the opposing party if artful answers, word-smithing and lawyer-crafted parsing is allowed").

During their examination of Mr. Rafalski, Defendants obtained admissions that directly undercut Plaintiffs' case, namely that Mr. Rafalski's methodologies do not identify suspicious orders that Defendants failed to report to DEA.  Inconsistencies within an expert's analysis are a central element of a trial cross-examination.  Allowing lawyerly rewriting of Mr. Rafalski's inconsistent testimony undermines Defendants' ability to examine Mr. Rafalski on these inconsistencies at trial.  And this concession is also relevant to Defendants' *Daubert* challenge of Mr. Rafalski.  An attempt to change this testimony in hopes of sidestepping such a challenge inflicts further prejudice on Defendants.

Defendants also obtained admissions establishing that Mr. Rafalski misunderstands the methodologies he purportedly developed.  An expert's misunderstanding of his own methodologies speaks directly to his credibility and undercuts the reliability of his analysis. Defendants are entitled to examine Mr. Rafalski on these issues, and an attempt to rewrite his testimony to undercut this examination prejudices Defendants.

---

[20] Opp. at 7.

## III.     CONCLUSION

For these reasons, the Court should strike the errata sheet of James Rafalski.

Dated: November 20, 2020 		Respectfully submitted,

*/s/ Timothy C. Hester*
Timothy C. Hester (DC 370707)
Laura Flahive Wu
Andrew P. Stanner
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
lflahivewu@cov.com
astanner@cov.com

*/s/ Paul W. Schmidt*
Paul W. Schmidt
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: (212) 841-1000
pschmidt@cov.com

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*Counsel for McKesson Corporation*

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, WV 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

11

/s/ Robert A. Nicholas
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Drug Corporation*

/s/ Steven R. Ruby
Michael W. Carey (WVSB No. 635)
Steven R. Ruby (WVSB No. 10752)
David R. Pogue (WVSB No. 10806)
Raymond S. Franks II (WVSB No. 6523)
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
drpogue@cdkrlaw.com
rsfranks@cdkrlaw.com

/s/ Enu Mainigi
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
Jennifer G. Wicht
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard @wc.com
ahardin@wc.com
jwicht@wc.com

*Counsel for Cardinal Health, Inc.*

12

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on November 20, 2020, the foregoing *Reply in Support of Defendants' Motion to Strike the Improper Errata of James Rafalski* was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: November 20, 2020                             */s/ Timothy C. Hester*
                                                                                   Timothy C. Hester