## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>     Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG<br>CORPORATION, *et al.*,<br><br>     Defendants. | Civil Action No. 3:17-01362<br>Hon. David A. Faber |
| CABELL COUNTY COMMISSION,<br><br>     Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG<br>CORPORATION, *et al.*,<br><br>     Defendants. | Civil Action No. 3:17-01665<br>Hon. David A. Faber |

## <u>DEFENDANTS' MOTION FOR A TRIAL CONTINUANCE</u>

Since October 9, when the Court continued the previously set October trial date, the Covid-19 pandemic—the reason for the continuance—has exploded, entering a new and tragic phase in both West Virginia and around the country. The national rate of daily new cases has nearly quadrupled and continues to climb.[1] The nation now has reported more than 13 million cases—nearly double the number when Defendants moved for a continuance in early October.[2]

---

[1] *See* Harvard Global Health Institute, KEY METRICS FOR COVID SUPPRESSION (last updated Nov. 30, 2020), https://globalepidemics.org/key-metrics-for-covid-suppression.

[2] The country reached 7 million cases in late September, approximately seven months into the pandemic. *See* Anurag Maan & Roshan Abraham, *U.S. records over 7 million COVID-*

Kanawha County's new-case rate has nearly doubled, moving the county far into the red category, which denotes the highest Covid risk and a need for the most stringent protective measures.[3] The State as a whole is in the red, as well, along with 44 other states, compared to just 11 in October.[4] The CDC has recommended that people stay home and spend the holidays only with their immediate families.

Defendants understand and appreciate that the Court wants to move this case forward to trial. And Defendants are not proposing that the litigation of this case should cease altogether due to Covid. But, while court business should not stop altogether because of the pandemic, nor can it continue as usual. These are extraordinary times that call for the Court and parties to act as responsibly as possible to avoid contributing unnecessarily to the pandemic. Thankfully, the end of the pandemic's worst phase is now in sight. In recent weeks, a much clearer picture has emerged of when large events—including major trials—may be able to resume safely. Two new Covid-19 vaccines have demonstrated 95% efficacy. Vaccinations are expected to be available this month and expected to be widely administered between April and early summer 2021.

With the pandemic raging today but some good measure of relief likely in the spring to early summer, there simply is no compelling reason to risk lives by conducting a large, complex, lengthy civil trial this winter. Few courts, if any, will attempt it. To protect the health and lives of trial participants and their families, as well as the greater community with whom those

---

*19 cases as Midwest outbreak surges* (Sept. 25, 2020), https://www.reuters.com/article/health-coronavirus-usa-cases/u-s-records-over-7-million-covid-19-cases-as-midwest-outbreak-surges-idUSKCN26G04V. That number has nearly doubled to more than 13 million cases in just the past two months. *See* Harvard Global Health Institute, KEY METRICS FOR COVID SUPPRESSION (last updated Nov. 30, 2020), https://globalepidemics.org/key-metrics-for-covid-suppression/.

[3] *See* Harvard Global Health Institute, KEY METRICS FOR COVID SUPPRESSION (last updated Nov. 30, 2020), https://globalepidemics.org/key-metrics-for-covid-suppression.

[4] *See id.*

individuals will interact in West Virginia and elsewhere, Defendants move that trial be set for April 19, 2021, with the hope of large-scale vaccination by then and a reduction in the pace of the pandemic, and that pretrial dates be reset accordingly.

### I.     The pandemic is far worse than in October and will continue to worsen this winter.

The pandemic was bad in October when Defendants moved for a continuance. Defendants proposed a January trial at that time in the hope that a few months' delay might make a positive difference, and to provide the parties with a concrete trial date and avoid an indeterminate delay. But the situation has dramatically worsened in the intervening months. Covid-19 infection rates at the national, state, and local levels all are at their highest levels of the pandemic. Since October 9, Kanawha County's new-case rate has soared from 19 cases per 100,000 residents to *36* per 100,000.[5] (Anything above 25 cases per 100,000 qualifies for the red category, in which the Harvard Global Health Institute says lockdown orders are necessary.) Charleston Area Medical Center has more hospitalized Covid patients than it did when county officials requested field hospitals in mid-September, and Covid hospitalizations statewide are at record highs.[6] State hospital officials fear they will soon exhaust their capacity to treat Covid

---

[5] This figure reached 43 cases per 100,000 before a testing slowdown over Thanksgiving weekend. *Id.*

[6] *See* Jeff Jenkins, *DHHR: COVID-19 Hospitalizations Top 500, Highest Since Pandemic Began* (Nov. 25, 2020), https://wvmetronews.com/2020/11/25/dhhr-covid-19-hospitalizations-top-500-highest-since-pandemic-began; Brad McElhinny, *With covid rates spiking, Justice aims to curtail some elective procedures and might target specific countie*s (Nov. 30, 2020), https://wvmetronews.com/2020/11/30/with-covid-rates-spiking-justice-aims-to-curtail-some-elective-procedures-and-might-target-specific-counties (hereinafter "Nov. 30, 2020 MetroNews Report").

patients.[7] Restrictions are tightening nationwide as governments battle the virus.[8]

Courts around the country remain under strict precautions, because anything more than the briefest of trials with minimal attendees poses serious risks. In the Eastern District of Texas, a recent civil trial became a super-spreader event, ending in a mistrial when no fewer than *15* trial participants tested positive for Covid.[9] In the Southern District of West Virginia, jury trials remain suspended until further notice.[10] As the Court has observed, this trial, though a bench trial, would implicate the same concerns given its length and size.[11]

In the opiate MDL, Judge Polster rescheduled his November 2020 pharmacy jury trial for May 2021.[12]  During a recent telephone conference, Judge Polster stated: "No one can try complex cases now safely and effectively. So at some point, we will be able to, but I don't think anyone can really say for sure."[13]

The situation likely will grow only grimmer over the winter. Dr. Ashish Jha, Dean of Brown University's School of Public Health and one of the nation's top coronavirus experts,

---

[7] *See* Nov. 30, 2020 MetroNews Report, *supra*.

[8] *See* New York Times, Covid-19: Pandemic Shatters More Records in U.S., as States and Cities Tighten Restrictions (last updated Nov. 15, 2020), https://www.nytimes.com/live/2020/11/12/world/covid-19-coronavirus-updates.

[9] *See* Katie Buehler, *COVID-19 Outbreak Leads to Mistrial in EDTX* (Nov. 17, 2020), https://www.law360.com/articles/1329617/covid-19-outbreak-leads-to-mistrial-in-edtx.

[10] *See* General Order # 9 entered in *In Re: Court Operations Under the Exigent Circumstances Created by the COVID-19 Pandemic*, No. 2:20-mc-00052 (S.D.W. Va. September 18, 2020) (Johnston, C.J.)

[11] Mem. Op. & Order at 3 (Nov. 19, 2020) (Dkt. No. 1170) (setting forth reasons for continuance) (hereinafter "Continuance Op.").

[12] *See* Track Three Case Management Order Nunc Pro Tunc, ECF No. 3329, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (S.D. Ohio June 8, 2020).

[13] *See* Transcript of Proceedings of Telephone Status Hearing, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804 (S.D. Ohio Nov. 4, 2020).

recently said, "We are entering the hardest time of the pandemic. I think the next two or three months are going to be awful across the country."[14] A highly regarded Covid-19 model from Washington University in St. Louis predicts nearly as many new cases *over just the next two months* as there have been from March 2020 until now.[15] And a CDC composite forecast combining data from 25 separate Covid models reaches a similar conclusion, predicting continued rapid spread in the coming weeks.[16]

## II.    A much safer trial—and a more normal one—is more realistic by late spring.

The news, however, is not all bad. The major positive development since the Court's October continuance order is the revelation that highly effective vaccines should be generally available by spring. Two new vaccines have demonstrated 95% efficacy in trials.[17] Dr. Anthony Fauci and Health and Human Services Secretary Alex Azar, among others, anticipate widespread vaccination between April and early summer.[18] If the trial is deferred until vaccinations have

---

[14] *See* Dialynn Dwyer, *What Dr. Ashish Jha Had to Say about the Moderna COVID-19 Vaccine News* (Nov. 16, 2020), https://www.boston.com/news/coronavirus/2020/11/16/ashish-jha-moderna-coronavirus-vaccine.

[15] *See* Sara Savat, *COVID-19 Cases Could Nearly Double Before Biden Takes Office* (Nov. 23, 2020), https://source.wustl.edu/2020/11/covid-19-cases-could-nearly-double-before-biden-takes-office/.

[16] *See* Centers for Disease Control and Prevention, COVID-19 FORECASTS:  DEATHS (last updated Nov. 19, 2020), https://www.cdc.gov/coronavirus/2019-ncov/covid-data/forecasting-us.html.

[17] *See* Katie Thomas, *New Pfizer Results: Coronavirus Vaccine Is Safe and 95% Effective* (updated Nov. 20, 2020),  https://www.nytimes.com/2020/11/18/health/pfizer-covid-vaccine.html; Joe Palca, *Moderna's COVID-19 Vaccine Shines In Clinical Trial*, (Nov. 16, 2020),  https://www.npr.org/sections/health-shots/2020/11/16/935239294/modernas-covid-19-vaccine-shines-in-clinical-trial.

[18] *See* Adrianna Rodriguez, *Fauci Says the Average American Could Get Vaccinated Against COVID-19 as Soon as April* (Nov. 18, 2020), https://www.usatoday.com/story/news/health/2020/11/18/fauci-covid-vaccine-may-available-april-says-he-would-take/3764262001/; Tim Fitzsimons, *HHS Secretary: Coronavirus "General*

commenced and are, as is predicted, widely available, and the pace of the pandemic is subsiding, it can be conducted far more safely. The probability that any trial participant becomes infected would go from quite high (in January) to much lower (once vaccination has commenced), and the risk of a super-spreader trial would significantly decrease.

Another benefit would accrue as well: avoiding the trial-management nightmare that inevitably will unfold if this case is tried in January. With the current spike in the pandemic, trial almost certainly would have to proceed in fits and starts, with recesses and temporary quarantines of all participants every time someone develops Covid-like symptoms, and mass prolonged quarantines when a participant tests positive.[19] Odds are good that the trial could not be completed, at least not until the current spike subsides and substantial progress is made with vaccinations. Trial participants could be sidelined by illness (even those who are infected but asymptomatic), forcing parties to scramble as lawyers and staff are pressed into unexpected duties and witnesses are rescheduled or scratched altogether. Witness examinations would be hindered and potentially rendered unintelligible by the masks that are now mandatory in all indoor locations in West Virginia.[20] The resulting inefficiencies and risk of significant prejudice would far exceed whatever benefit might be imagined from maintaining the current date.

---

*Vaccination" Programs by Spring* (Nov. 10, 2020), https://www.nbcnews.com/news/us-news/hhs-secretary-coronavirus-general-vaccination-programs-spring-n1247232.

[19] *See* Centers for Disease Control and Prevention, WHEN TO QUARANTINE (last updated Oct. 27, 2020), https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/quarantine.html (recommending a 14-day quarantine after last contact with a person who has COVID-19).

[20] *See* Executive Order No. 77-20, at 3-4 (Nov. 13, 2020).

### III.   The reasons for the Court's previous continuance order support a further brief continuance.

The October continuance provided the Court and the parties with an opportunity to see if Kanawha County's (and the country's) outbreak could be contained. What happened next, unfortunately, was not containment but instead alarming and increasing spread across the country. It is now clear that a January trial would be profoundly risky—especially with the increased logistical and health complications that come with winter. The considerations that motivated the Court's October continuance order now counsel even more strongly in favor of another brief continuance.

**A.   Rise in infection rates.** The Court cited the rise in coronavirus infections in explaining its reasoning for the continuance.[21] Infection rates have since risen far above October's levels. Plaintiffs "argued that Defendants' statistics were both outdated and misleading,"[22] but today, even more than then, Covid's relentless and intensifying growth is a matter of ubiquitous public record. There is simply no denying it.

**B.   The size and complexity of the trial.** The Court correctly observed that "[t]his bench trial involves a significant number of individuals."[23] Indeed, it will be the longest trial and will include the most witnesses and attorneys of any trial in this district in recent memory. Even if some jury trials resume after the new year, a trial of this size and complexity presents entirely different challenges than smaller trials and would pose an extreme risk of Covid transmission.  And while the Court has limited in-court trial teams to five individuals, each party

---

[21] Continuance Op. at 2.

[22] *Id.* at 2.

[23] *Id.* at 4.

unavoidably will have much larger legal and support teams on the ground in Charleston, to say nothing of the scores of witnesses who will need to travel in and out over the course of the trial.

C.  **CDC guidance.** The Court noted the CDC's October guidance that Covid-19 can be transmitted through droplets that can remain airborne for *hours*, even after an infected person has left the room.[24] That guidance remains in effect, and with many more people now infected, the potential for airborne spread in the confined spaces of a courtroom and courthouse are far higher. Additionally, recent CDC guidance now states that "asymptomatic or presymptomatic" individuals "are estimated to account for *more than 50% of transmissions*."[25] In other words, precautions like masks, social distancing, and even careful, daily symptom monitoring are not enough to keep people safe in the context of prolonged, indoor exposure for a large group of people.

D.  **Travel.** As the Court observed, many attorneys, staff, and witnesses will be traveling to West Virginia for trial, "further heightening the opportunities for transmission of the virus."[26] Nor will trial participants simply arrive in West Virginia and stay for the duration. Given the length of trial, it is a near certainty that participants will return home to see family during the course of trial, further elevating the overall risk. That risk, too, is greatly intensified

---

[24] *Id.* at 4; Centers for Disease Control & Prevention, *How COVID-19 Spreads*, last updated Oct. 28, 2020, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html ("Some infections can be spread by exposure to virus in small droplets and particles that can linger in the air for minutes *to hours*. These viruses may be able to infect people who are *further than 6 feet away* from the person who is infected or *after that person has left the space*." (emphases added)).

[25] Centers for Disease Control & Prevention, *Scientific Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2*, last updated Nov. 20, 2020, https://www.cdc.gov/coronavirus/2019-ncov/more/masking-science-sars-cov2.html (emphasis added).

[26] Continuance Op. at 4.

by the rampant spread of Covid around the country. Importantly, that risk would not just be borne by trial participants and others with business in the courthouse, but also the Charleston community at large, as out-of-town visitors necessarily will be staying in hotels, working in office buildings, and encountering local residents while purchasing food and other necessities.

> E.    **Protection of trial participants and courthouse occupants.** The ultimate purpose of the Court's continuance order, it is clear, was to protect the health and safety of participants in the trial and occupants of the courthouse.[27] Given what we know today, the only sensible way to serve that objective is to accept the thankfully short wait that will be required for a vaccine and/or substantially improved case rates.

## IV.    Conclusion

If the Covid pandemic had eased after the October continuance, the case could have proceeded to trial in January. Instead, the pandemic surged, and it has become clear that the entire country, including West Virginia and Kanawha County, will remain at grave risk until broad vaccination occurs or until the current spike in the pandemic subsides. If the health risks were too severe to try this case in October—and the Court correctly concluded that they were— we now know that they certainly will be too severe to try it in January. Defendants thus seek a further brief continuance of trial until April 19, 2021,[28] when there is reason to believe it can be tried safely. Pretrial dates—including the pretrial conference, which would require 30 people to

---

[27] *Id.*

[28] Defendants have selected this date because it falls during a time when health experts have advised that mass vaccinations should be underway and to provide the parties a date certain to avoid an indeterminate delay of the trial.  If mass vaccinations do not become available by that date, or circumstances otherwise materially change, the Court and parties can reassess the sensibility of proceeding at that time.

gather in a courtroom for several hours, many of them after having traveled to West Virginia

from elsewhere—should be continued accordingly.

Dated:  November 30, 2020

Respectfully submitted,

**CARDINAL HEALTH, INC.**

*/s/ Steven R. Ruby*                                          */s/ Enu Mainigi*
Michael W. Carey (WVSB No. 635)                Enu Mainigi
Steven R. Ruby (WVSB No. 10752)              F. Lane Heard III
David R. Pogue (WVSB No. 10806)             Ashley W. Hardin
Raymond S. Franks II (WVSB No. 6523)      Jennifer G. Wicht
**CAREY DOUGLAS KESSLER & RUBY**      **WILLIAMS & CONNOLLY LLP**
**PLLC**                                                         725 Twelfth Street NW
901 Chase Tower, 707 Virginia Street, East    Washington, DC 20005
P.O. Box 913                                                   Tel: (202) 434-5000
Charleston, WV 25323                                  Fax: (202) 434-5029
Telephone: (304) 345-1234                           emainigi@wc.com
Facsimile: (304) 342-1105                            lheard @wc.com
mwcarey@csdlawfirm.com                          ahardin@wc.com
sruby@cdkrlaw.com                                      jwicht@wc.com
drpogue@cdkrlaw.com
rsfranks@cdkrlaw.com

**AMERISOURCEBERGEN DRUG CORPORATION**
*/s/ Robert A. Nicholas*                                  */s/ Gretchen M. Callas*
Robert A. Nicholas                                        Gretchen M. Callas (WVSB #7136)
Shannon E. McClure                                      **JACKSON KELLY PLLC**
**REED SMITH LLP**                                    Post Office Box 553
Three Logan Square                                       Charleston, West Virginia 25322
1717 Arch Street, Suite 3100                         Tel: (304) 340-1000
Philadelphia, PA 19103                                 Fax: (304) 340-1050
Tel: (215) 851-8100                                       gcallas@jacksonkelly.com
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

**MCKESSON CORPORATION**
*/s/ Jeffrey M. Wakefield*                               */s/ Timothy C. Hester*
Jeffrey M. Wakefield (WVSB #3894)           Timothy C. Hester

jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
**FLAHERTY SENSABAUGH BONASSO
PLLC**
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

Paul W. Schmidt
Christian J. Pistilli
Laura Flahive Wu
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
pschmidt@cov.com
cpistilli@cov.com
lflahivewu@cov.com

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 30th day of November, 2020, the foregoing ***Defendants' Motion for a Trial Continuance*** was served upon counsel of record electronically.

/s/ Steven R. Ruby
Steven R. Ruby (WVSB No. 10752)