September 30, 2018

This ruling addresses Plaintiffs' request for reconsideration of certain topics addressed in *Discovery Rulings Nos. 2 and 3*.

Among other matters, *Discovery Rulings Nos. 2 and 3* held that defendants must produce: (a) transactional data and Suspicious Order Reports dating back to **January 1, 1996**, and (b) all other relevant discovery dating back to **January 1, 2006**. Plaintiffs now ask that exceptions be made to the second of these rulings, thereby making it more permissive. Specifically, Plaintiffs ask for discovery stretching back to **1996**, instead of **2006**, for: (1) controlled substance monitoring policies and procedures and related presentations, educational and training documents; (2) customer due diligence files for Cuyahoga and Summit County customers; and (3) various DEA files.

Defendants have responded that plaintiffs' request: (1) is procedurally barred, because it seeks reconsideration of the *Discovery Rulings* after the applicable deadline; and (2) should be denied in any event, because plaintiffs' request would be to allow discovery that is not proportional to the needs of the case.

Without addressing whether plaintiffs' request is procedurally barred, the Special Master concludes defendants' proportionality argument is well-taken *at this juncture in the MDL proceedings*. Accordingly, except as clarified below, the Special Master concludes plaintiffs are not entitled at this juncture to discovery of the three species of pre-2006 information listed above.

The Special Master's reasoning is as follows. *Discovery Ruling No. 3* set temporal limits that were generous/arduous (to plaintiffs/defendants, respectively), allowing plaintiffs to discover decades-old information over defendants' objections. The Special Master concluded that these temporal limits (as well as the stated geographic, subject matter, and other discovery limits) allowed plaintiffs to "pursu[e] only the discovery that is absolutely necessary and appropriate for the bellwether trial cases." *Discovery Ruling No. 3* at 3 n.1 (docket no. 762). In other words, the Special Master concluded that the 2006 date-limit on "Category One" information struck a balance whereby the allowed discovery was "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Discovery Ruling No. 3* at 3 (quoting Fed. R. Civ. P. 26(b)(1)). The Court affirmed, *see* docket no. 868.

The Special Master has read and carefully considered plaintiffs' arguments asking for more leniency regarding certain types of discovery, and concludes the circumstances presented do not justify changing the existing proportionality balance *at this time*. Plaintiffs assert that: (1) although defendants are producing their Suspicious Orders **Reports** dating back to 1996, they are producing discovery related to their Suspicious Order **Monitoring Systems** dating back only to 2006, so plaintiffs cannot determine whether defendants adhered to their own pre-2006 reporting rules, nor what those rules were; (2) defendants have claimed they shipped opioid orders (including pre-2006 orders) flagged as possibly suspicious only after doing "due diligence," so plaintiffs are entitled to discover what was the "due diligence" that defendants undertook; and (3) defendants have averred

in deposition that they designed their Suspicious Order Monitoring Systems with "guidance" from, and even approval of, the DEA dating back to 1998, and plaintiffs must be allowed to discover the alleged DEA guidance/approval if defendants intend to rely on it.

All of plaintiffs' arguments are reasonable, and rely at least in part on information that became available only after *Discovery Ruling No. 3* issued.  But defendants offer credible assertions in response that a ruling adding to their existing, heavy discovery burden is unfair and disproportionate.  Indeed, had *Discovery Ruling No. 3* set later dates (e.g., 2010 and 2000 instead of 2006 and 1996, which would also have been reasonable for the first bellwether trial), plaintiffs would surely now be making the same arguments for more and earlier discovery, even though they actually have most of it.  To borrow a phrase from *Discovery Ruling No. 3* used in a similar context, "[a]lthough the Special Master [is] convinced that . . . the [additional] evidence [plaintiffs now request] . . . would have some relevance to the bellwether trial, this scope is not proportional to the greatest needs and burdens of the parties preparing for that trial, especially in light of the Court's tight trial schedule."  *Id.* at 3-4 (footnote omitted).  This conclusion remains true even though the Court has since extended the time for discovery.  *See Order* at 2 (docket no. 868) (upholding the Special Master's temporal limit rulings because discovery deadlines were extended).

Having so ruled, the Special Master adds three caveats.  First, this ruling is entered at this particular juncture within the span of the MDL.  The parties are spending terrific amounts of time and resources preparing for the first bellwether trial.  At some future juncture (e.g. after the first trial), the balance the Court must weigh under Rule 26(b)(1) may well shift, making plaintiffs' additional requested discovery appropriate.  Accordingly, the Special Master makes clear here that defendants have no present obligation to *produce* the requested discovery, but they do have an obligation to *preserve* it.

Second, plaintiffs note that, if their motion for reconsideration is "denied, we intend to request the Court to exclude the Defendants from introducing evidence regarding these subject matters (pre-2006) at the trial of this matter."  Email from Paul Farrell to Special Master Cohen (Sept. 23, 2018).  Any such request would likely be well-taken.  As a general rule, no party may rely at trial on documents they have not produced in discovery.  Accordingly, while the Special Master will not order defendants to produce pre-2006 controlled substance monitoring policies, customer due diligence files, or DEA files, defendants should consider producing them anyway if they intend to rely on them at trial.

Finally, the Special Master makes clear that defendants must produce document discovery related to Suspicious Order Monitoring Systems ("SOMS") that were *in place* in 2006 or thereafter, even if the documents are older than that.  In other words, if a defendant had in place a SOMS in 2006, but the SOMS was created in 2005, defendants are already obligated under *Discovery Ruling No. 3* to produce documents related to the 2005 SOMS (but not any prior iterations of SOMS, if there were any earlier ones).  This clarification applies only to SOMS.