# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: NATIONAL PRESCRIPTION OPIATE LITIGATION | ) ) ) | CASE NO. 1:17-MD-2804 |
| THIS DOCUMENT RELATES TO: "*Track Three Cases*" | ) ) ) ) ) ) | SPECIAL MASTER COHEN <br><br> **ORDER REGARDING GEOGRAPHIC SCOPE OF DISCOVERY** |

## INTRODUCTION

During a teleconference on June 11, 2020, the undersigned discussed with the parties numerous discovery issues related to both the Track One-B and Track Three cases. One of these issues was the geographic scope of "Category Two Discovery," defined in Section I, below. This geographic scope issue was high on the minds of all parties because, among other things: (1) the Sixth Circuit had recently addressed the geographic scope of discovery of dispensing data in Track One-B pursuant to an emergency motion;[1] (2) the Plaintiffs' Executive Committee ("PEC") had recently moved to take discovery of nationwide dispensing data across the entire MDL;[2] (3) the question of geographic scope was germane to other issues raised by the parties in Track One-B, such

---

[1] *See In re: CVS Pharmacy, Inc.*, case no. 20-3075, docket no. 42-2 (6th Cir. Feb. 12, 2020).

[2] *See* docket no. 3301 (May 24, 2020).

as a request that defendant Walmart be ordered to produce additional documents;[3] and (4) the parties' had recently submitted proposals for the Track Three case management order, including provisions regarding geographic scope of transactional dispensing data.

During this June 12, 2020 teleconference, the undersigned stated: "it seems to me the geographic scope for Category Two discovery in Track Three should be all of Ohio, especially because we're already doing dispensing data for all of Ohio." Transcript at 41. The Special Master solicited the parties' positions, *id.*, and eventually agreed to defendants' suggestion that the parties submit formal position papers, *id.* at 52-53.[4]

On the same day the parties engaged in this teleconference (June 11, 2020), plaintiffs served requests for production and interrogatories in Track Three. Some of these discovery requests sought information only from the Track Three counties; some sought information from all of Ohio; and some sought information without any limitation. Moreover, underscoring the shifting nature of this issue: (1) shortly before the teleconference, the Court entered a Track Three case management order including a provision jointly proposed by the parties that defendants would produce "transactional dispensing data for stores located ***within Lake and Trumbull Counties, Ohio***;"[5] and (2) shortly after the teleconference, the Court entered an order that modified this scope, concluding "that production of transactional dispensing data for ***all of Ohio*** is relevant and proportional to Track Three and must

---

[3] *See generally* Hearing Transcript (June 11, 2020) (discussing discovery agenda items 175 and 261).

[4] *See* letter from Paul Hynes, Jr. to Special Master (June 19, 2020) (defendants' position); letter from Peter Weinberger to Special master (June 26, 2020) (plaintiffs' position). The Special Master also received a few follow-up letters and emails.

[5] *See* docket no. 3325 at 3 (June 5, 2020) (emphasis added).

be produced."[6] From the start of the MDL, Plaintiffs had argued they were entitled to Category Two Discovery from a multi-state area, so they seized upon the occurrences above to argue that the scope of many of their recently-issued Track Three discovery requests should be broadened. Thus, it was clear the question of the parties' obligations regarding geographic scope for Track Three discovery needed to be addressed as soon as possible.

After the parties submitted their position papers, the undersigned held two additional discovery conferences to discuss plaintiffs' Track Three discovery requests. As a general matter, defendants assert Category Two Discovery (and even some Category One Discovery) should largely be limited to the Track Three jurisdictions only – that is, Ohio's Lake and Trumbull Counties. Plaintiffs generally assert discovery should be more broad, reaching at least to Ohio's borders and possibly also encompassing other States.

As recapitulated below in Sections I and II of this Order, the Court has already ruled on geographic scope regarding certain types of discovery. Regarding other types of discovery, the Special Master now rules in Section III of this Order, and offers some additional observations in Section IV.

I. **Suspicious Order Reports ("SORs").**[7]

Early in the course of this MDL, the undersigned defined two types of discovery: "Category One Discovery," which defendants had to produce on a national basis; and "Category Two

---

[6] *See* docket no. 3341 at 3 n.4 (June 17, 2020) (emphasis added).

[7] As used in this Order, the term "Suspicious Order Reports" ("SORs") refers to reports sent by a registrant to the DEA, pursuant to 21 C.F.R. §1301.74(b). This is also what the Court meant when it used this term in *Discovery Ruling No. 2*.

Discovery," which defendants had to produce on a more limited geographic basis. Specifically, at the beginning of the Track One bellwether case discovery period, the Special Master described Category One Discovery as follows:

> Defendants must produce on a national basis documents related to marketing and promotion, brand planning and strategy, sales training and sales bulletins, prescriber educational materials, distribution monitoring, advocacy groups, speakers bureau programs, continuing medical education, diversion, ***suspicious order reports***, adverse event reports, and regulatory activity. The defendants' policies and actions regarding all of these subjects are (and were) primarily centralized and over-arching, applying broadly to their opioid products. This discovery is referred to . . . as Category One Discovery.

*Discovery Ruling No. 2* at 4 (docket no. 693) (emphasis added).

In contrast, "documents related to decentralized, customer-specific materials, such as sales call notes and transactional data," "is referred to . . . as Category Two Discovery." *Id.* Regarding the geographic scope of Category Two Discovery, the undersigned, on reconsideration, narrowed the requirement from a seven-State region to instead "include only Cuyahoga and Summit Counties." *Id.* at 4.[8]

Various defendants, including the Pharmacy Defendants, filed objections to *Discovery Rulings No. 2* and *No. 3*, but the Court overruled them. *See* docket no. 785 (Pharmacy Defendants' Objections to *Discovery Rulings No. 2* and *No. 3*); docket no. 868 (Order overruling objections). Thereafter, some, but not all, of the Track One defendants did produce SORs on a national basis

---

[8] The undersigned also set the temporal scope for different types of discovery: "The distributor defendants shall produce transactional data and Suspicious Order Reports with a cut-off date of January 1, 1996. The discovery cut-off for all other discovery is January 1, 2006." *Discovery Ruling No. 2* at 11; *see also Discovery Ruling No. 3* at 4 (docket no. 762) ("declin[ing] to impose different discovery obligations on the pharmacy defendants than on the other distributor defendants").

4

before the Track One-A trial date.

As noted by the language highlighted in **bold** on page 1 above, "suspicious order reports" fall into Category One Discovery. Accordingly, Defendants are and have for some time been obligated to produce this information "on a national basis," *Discovery Ruling No. 2* at 4, "with a cut-off date of January 1, 1996," *id.* at 11.

In their Track Three position paper, the Pharmacy Defendants "oppose . . . the production of ***nationwide*** suspicious order reports." Letter from Paul Hynes to Special Master at 1 (June 19, 2020) (emphasis added) ("Hynes Letter"); *see id.* at 5 ("production of SORs . . . should be limited to Plaintiffs' counties"). But this opposition comes nearly two years too late. On July 27, 2018, in *Discovery Ruling No. 3*, the undersigned reaffirmed on reconsideration the ***national*** scope of Category One Discovery. The Court overruled the Pharmacy Defendants' objections. The fact that the Pharmacy Defendants have not yet complied with their obligation regarding Suspicious Order Reports provides no basis for additional reconsideration or late objection.[9] Moreover, only weeks ago, the Court explicitly reaffirmed the Pharmacy Defendants' obligation: "in Track One, Defendants were required to produce on a nationwide basis documents related to suspicious order reports." *Order* at 1-2 (docket no. 3343) (June 17, 2020) (citing *Discovery Ruling No. 3*).

In sum, the geographic and temporal scope of the Pharmacy Defendants' obligation regarding Suspicious Order Reports was settled long ago and recently reiterated. To the extent they have not already done so, the Pharmacy Defendants' are directed to comply with their long-standing

---

[9] The reason this issue did not come to a head earlier is that the PEC focused its attention on obtaining SORs from the Manufacturer and Distributor Defendants that were scheduled to go to trial in Track One-A, and on obtaining their SORs connected to the Track One jurisdictions in particular before that trial. Now that the Pharmacy Defendants are scheduled to go to trial in Track One-B and Track Three, the broader issue of production by other Defendants has become ripe.

obligation without delay, and should do so on a rolling basis – that is, first produce SORs from Lake and Trumbull Counties, then from the rest of Ohio, then regionally,[10] and then nationally.[11]

To repeat footnote 1 above, each Pharmacy Defendant's obligation to produce SORs on a nationwide basis refers only to reports sent by a registrant to the DEA, pursuant to 21 C.F.R. §1301.74(b). A Pharmacy Defendant's obligation to produce other reports related to suspicious orders, or related to its suspicious order monitoring system, that were *not* sent to the DEA are discussed in Section IV, below.

## II. Dispensing Data.

In their position paper, Defendants state: "The Sixth Circuit's refusal to issue a stay on the production of [Ohio] statewide dispensing data did not endorse that geographic scope as appropriate." Hynes Letter at 3. It is unclear whether Defendants are asserting that: (a) the geographic scope of the *dispensing data* they must produce in Track Three should not extend to include all of Ohio, even though the Sixth Circuit allowed exactly that scope of discovery in Track One-B (before the dispensing claims were stricken); or, instead, only that (b) the scope of *other*

---

[10] "Regionally" includes, at a minimum, all SORs related to orders filled by each Defendant's distribution center(s) that served Lake and Trumbull Counties. If they have not already done so, each Defendant must also promptly produce all SORs related to orders filled by each Defendant's distribution center(s) that served the Track One Counties.

[11] Plaintiffs have suggested that, for at least some of the Pharmacy Defendants, there may be few SORs to produce, because Defendants did not actually identify their suspicious orders as required. Of course, the ***absence*** of SORs is also extremely relevant, as Defendants' policies and procedures for identifying and reporting SORs were national in scope. Indeed, any differences in a Defendant's SORs identification across the State of Ohio or the country may also be highly relevant; for example, low SORs reporting in Ohio compared to high SORs reporting in Illinois, for similar types of orders, may reflect a procedural failure in Ohio that is relevant to causation.

6

types of discovery should not be coextensive with Ohio-wide dispensing data discovery.

To remove any doubt, the undersigned notes that the Court recently ruled on the required scope of dispensing data: "Thus, as it was for Track One-B, transactional dispensing data for Ohio is likewise relevant and proportional to the needs of Track Three. Furthermore, it has already been produced, and if the Track Three Plaintiffs' dispensing claims survive motions to dismiss, Plaintiffs may use that data to try to prove their claims." *Order* at 3 (footnotes omitted) (docket no. 3341); *see also id.* at 3 n.4 ("To be clear, this order confirms that production of transactional dispensing data for **all of Ohio** is relevant and proportional to Track Three and must be produced.") (emphasis in original).[12]

### III. Other "Category Two Discovery."

As noted above, in Track One, the Special Master initially ordered Defendants to produce Category Two Discovery from a seven-state area – Ohio, Pennsylvania, West Virginia, Kentucky, Illinois, Georgia, and Florida. *Discovery Ruling No. 2* at 5. Subsequently, the Special Master dramatically reduced this scope to include only the Plaintiff jurisdictions of Ohio's Cuyahoga and Summit Counties. *See Discovery Ruling No. 3* at 2-3. The reason for this narrowing "reflect[ed] a much-sharper focus on pursuing only the discovery that [was] absolutely necessary and appropriate for the bellwether trial cases." *Id.* at 3 n.1. The Special Master explained that, "[a]lthough [he] remain[ed] convinced that all of the evidence defendants would produce within the seven named States would have some relevance to the bellwether trial, this scope is not proportional to the

---

[12] *See also id.* at 4-5 (noting the Court was not yet reaching the question of whether production of dispensing data from other States beyond Ohio is appropriate).

7

greatest needs and burdens of the parties preparing for that trial, especially in light of the Court's tight trial schedule." *Id.* at 3-4.

The Special Master has also been careful to repeatedly observe, however, that discovery rulings entered during the first bellwether case do not automatically limit discovery scope in subsequent cases. *See, e.g., Discovery Ruling No. 8* at 5 (docket no. 1055) ("At some future juncture (e.g. after the first trial), the balance the Court must weigh under Fed. R. Civ. P. Rule 26(b)(1) may well shift, making plaintiffs' additional requested discovery appropriate.").[13] This is because there is naturally a change over the course of an MDL in the factors recited in Rule 26(b)(1) for each successive bellwether case, including: (i) the relevance of the requested discovery (which may rise or fall as the parties' arguments change focus and their theories become more clear); (ii) the amount of new discovery and the amount of time to produce that new discovery before the next bellwether trial (which goes to burden); and (iii) the importance of the discovery in resolving the issues (which successive trials and dispositive motions elucidate).

Plaintiffs have served discovery in Track Three and assert Defendants must answer some of their requests for Category Two Discovery on at least an Ohio-wide basis.[14] Defendants respond

---

[13] *See also* email ruling denying Plaintiffs' motion for reconsideration of *Discovery Rulings No. 2 & No. 3* (Sept. 30, 2018) ("[T]his ruling is entered at this particular juncture within the span of the MDL. The parties are spending terrific amounts of time and resources preparing for the first bellwether trial. At some future juncture (e.g. after the first trial), the balance the Court must weigh under Rule 26(b)(1) may well shift, making plaintiffs' additional requested discovery appropriate. Accordingly, the Special Master makes clear here that defendants have no present obligation to *produce* the requested discovery, but they do have an *obligation* to preserve it.") (emphasis in original).

[14] Plaintiffs continue to insist Defendants should also produce information from other States, as they have from the beginning of the MDL, but Plaintiffs do not currently press for a ruling to that effect.

8

that virtually all Category Two Discovery should be limited to Lake and Trumbull Counties. In order to take a careful approach, the undersigned had two teleconferences with the parties after receiving their position papers, seeking explanation of their views with regard to *specific* interrogatories and requests for production. The Special Master believes a reasonably surgical response to the parties' dispute over the geographic scope of Category Two Discovery, rather than a single, blunt ruling, more closely adheres to the dictates of Rule 26(b)(1).

During these teleconferences, the Special Master offered suggestions and observations regarding the appropriate geographic scope for specific discovery requests, and the parties identified ways that some requests could be amended or narrowed that might allow agreement. Accordingly, the Special Master directed the parties to confer and, in short order: (1) Defendants should identify specific requests where they did not oppose answering on an Ohio-wide basis, or are willing to answer on an Ohio-wide basis if allowed to limit their response in some way (e.g. by producing documents only from centralized locations and not from too many individual custodians); (2) Plaintiffs should identify specific requests where they are willing to accept responses based only on Lake and Trumbull Counties, or are willing to accept County-specific responses if Defendants expand their response in some way (e.g., by producing documents related to in-County pharmacies even if those documents are located elsewhere); and (3) the parties should try to come to agreement on geographic scope for as many requests as possible.

Unfortunately, the parties' meet-and-confer did not lead to much additional agreement. Accordingly, the Special Master now rules as follows. The undersigned has weighed the parties' arguments regarding burden, relevance, access to information, and all other factors recited in Fed. R. Civ. P. 26(b)(1), and has applied these factors independently to each specific Track Three request

9

for Category Two Discovery. Having weighed the parties' arguments and the relevant factors, the Special Master now rules as shown below for each such request. Some requests must be answered for Lake and Trumbull Counties only; some must be answered for the entire State of Ohio; and others must be answered nationwide. Although the undersigned has done his best to be "surgical," it is likely the parties will still have some disputes regarding precise aspects of each discovery request. The parties are encouraged to resolve these disputes on their own, and are free to agree amongst themselves to contours different from those set out below.[15, 16]

**Plaintiffs (First) Combined Track Three Interrogatories to Chain Pharmacy Defendants**

- Interrogatory 1 – Ohio (replace "Lake and Trumbull Counties" with "Ohio").

- Interrogatory 2 – Ohio (replace no geographic limitation with "Ohio"). Note that this

---

[15] Some of the Track Three written discovery requests are virtually identical to Track One-B written discovery requests. The Special Master does not believe there are pending any disputes regarding geographic scope of the latter; if so, however, similar requests must be treated analogously.

[16] The Track Three Case Management Order includes an agreed provision stating: "All discovery propounded or produced in Track 1 ('CT1') shall be deemed propounded and/or produced in Track 3." Order at 1 (docket no. 3325). As discussed during a teleconference with the parties on July 7, 2020 (transcript not yet available), it makes sense that all Track One *discovery* be deemed *produced* in Track Three. But there are logistical problems with deeming all Track One *discovery requests* be deemed *propounded* in Track Three – taken literally, that would require both Plaintiffs and Defendants to respond to Track One discovery requests that do not "fit" the Track Three case.

Accordingly, the undersigned ordered (and the parties agreed) that: (1) if a party seeks discovery in Track Three that was *not produced* in Track One, they will propound discovery requests in Track Three asking for it (and not rely on Track One discovery requests); (2) a party should not ask for discovery in Track Three that *was produced* already in Track One; and (3) a party may ask again in Track Three for discovery that was requested but not produced in Track One. (The latter rule is an exception to the provision that "New discovery propounded in Track 3 will not be duplicative of discovery previously propounded." *Id.*)

Put more simply: a party may seek discovery in Track Three of information not produced in Track One, including information that was requested in Track One but not produced.

10

interrogatory asks about due diligence performed on *orders* (at the distribution level), not *prescriptions* (at the pharmacy dispensing level).

- Interrogatory 3 – Ohio (replace "Lake and Trumbull Counties" with "Ohio"). Note that this interrogatory addresses Suspicious Order Reports, and footnote 1 above applies to define the suspicious orders regarding which defendants must respond. *See also* Section IV, below.

- Interrogatory 4 – Lake and Trumbull Counties (answer the Interrogatory as written).

- Interrogatory 6 – Ohio (replace "Track Three" with "Ohio").

- Interrogatory 7 – Lake and Trumbull Counties (answer the Interrogatory as written).

- Interrogatory 8 – subparts (a)-(d), Ohio (replace "Lake and Trumbull Counties" with "Ohio"); subpart (e), Lake and Trumbull Counties (answer the Interrogatory as written).

- Interrogatory 10 – Lake and Trumbull Counties (answer the Interrogatory as written).

- Interrogatory 11 – Lake and Trumbull Counties (answer the Interrogatory as written).

**Plaintiffs (First) Combined Track Three Requests for Production to Chain Pharmacy Defendants**

- Request 4 – Ohio (replace no geographic limitation with "Ohio").

- Request 5 – Lake and Trumbull Counties (replace no geographic limitation with "Lake and Trumbull Counties").

- Request 6 – Ohio (replace "Track 3" with "Ohio")

- Request 7 – Ohio (answer the Request as written).

- Request 8 – Ohio (replace "Lake and Trumbull Counties" with "Ohio").

- Request 10 – Ohio (replace no geographic limitation with "Ohio").

- Request 13 – Lake and Trumbull Counties (replace no geographic limitation with "Lake and

11

Trumbull Counties").

- Request 16 – Lake and Trumbull Counties (answer the Request as written).
- Request 17 – Lake and Trumbull Counties and individuals listed (answer the Request as written).
- Request 18 – Lake and Trumbull Counties (answer the Request as written).
- Request 19 – Ohio (replace "Track 3" with "Ohio").
- Request 20 – Lake and Trumbull Counties (answer the Request as written).
- Request 21 – Lake and Trumbull Counties (answer the Request as written).
- Request 22 – Lake and Trumbull Counties (answer the Request as written).
- Request 24 – Ohio (answer the request as written).
- Request 26 – Ohio (replace "Lake and Trumbull Counties" with "Ohio").
- Request 30 – Ohio (replace "Lake and Trumbull Counties" with "Ohio").

### IV. Other Information Related to Suspicious Order Reports.

In a recent email to Defendants, Plaintiffs state that, in addition to seeking discovery of Suspicious Order Reports as defined above in footnote 7 – that is, reports sent by a registrant to the DEA, pursuant to 21 C.F.R. §1301.74(b) – Plaintiffs also seek discovery of other, related information. Specifically, in a recent email to Defendants, Plaintiffs sought to define "Suspicious Order Report" more broadly, thereby also asking for information related to, among other things: (1) orders that each Defendant's Suspicious Order Monitoring System flagged as suspicious or possibly suspicious, but which the Defendant did not report to the DEA; (2) the reason any such flagged order was not reported to the DEA; and (3) any due diligence the Defendant undertook to confirm or

dispel suspicion of a flagged order, or to otherwise investigate a flagged order, including orders that both were and were not reported to the DEA.[17] Defendants did not yet respond to this request.

The Special Master does not address this request at this time, except to note that: (1) as a general matter, most of what Plaintiffs seek appears relevant, and much of this information was produced by other Defendants in Track One; but (2) the geographic scope of this discovery will *not* be national. The undersigned expects the parties will meet and confer regarding this request and submit any dispute thereafter only if necessary.[18]

## V. Objections.

Given that Sections I and II of this *Ruling* merely reiterate or clarify without amendment Orders already entered by the Court, no objections to those Sections of this *Ruling* are allowed by

---

[17] *See* email from Peter Weinberger to Kate Swift (July 7, 2020). (Defining "Suspicious Order Report" as follows, for purposes of Track Three discovery requests: "[A] report or documentation of an order for Opioids or Opioid Products of unusual size, an order deviating from a normal pattern, or an order of unusual frequency including any order of interest that was flagged pursuant to any of your algorithms, formulas, or tests which you ever used to identify those orders, or orders that otherwise warranted additional review or investigation to determine whether the Order was a Suspicious Order. [This] shall include any documentation of the analysis of an order of opioids which you flagged including any Due Diligence performed on that order. [This] shall further include documentation of those orders that were reported to the DEA and those that were not.").

[18] Given the parties' statements in their position papers, it would not surprise the undersigned if Plaintiffs seek this information for at least all of Ohio, and Defendants resist producing this information for more than the Track Three jurisdictions (and perhaps resist producing some of this information at all). To help assess burden, if a Defendant refuses to produce this information for all of Ohio, that Defendant must at the very least inform Plaintiffs *how many* orders that its Suspicious Order Monitoring System flagged as suspicious or possibly suspicious, but which the Defendant did not report to the DEA, during the relevant time frame, for the Track Three jurisdictions and for all of Ohio. (Each Defendant will also provide Plaintiffs with the same information for orders it did report the DEA, pursuant to the Section I, above.)

13

Fed. R. Civ. P. 53.

As to Section III of this *Ruling*, any objection must be filed with the Court on or before July 16, 2020.

**IT IS SO ORDERED.**

/s/ *David R. Cohen*
**DAVID R. COHEN**
**SPECIAL MASTER**

**Dated:** July 8, 2020