IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*,<br><br>    Defendants. | Civil Action No. 3:17-01362<br>Hon. David A. Faber |
| CABELL COUNTY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*,<br><br>    Defendants. | Civil Action No. 3:17-01665<br>Hon. David A. Faber |

## **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR A TRIAL CONTINUANCE**

The parties appear to agree that an in-person trial in January is an impossibility in light of current Covid conditions and predictions about conditions in the near term. Instead of a brief continuance, however, Plaintiffs offer an amorphous proposal in which the parties would present opening statements and "some testimonial evidence" through Zoom or similar means while giving the Court depositions to watch or read. That proposal raises more problems than it solves. As a threshold matter, the proposal will not result in a fair trial. Defendants are entitled to present a full and complete defense *in person*, not a stilted, stymied defense by videoconference. Given the amount of money Plaintiffs are seeking and the bellwether nature of these proceedings,

nothing less will suffice to provide due process of law. Plaintiffs cite no other opioid trial—or *any* trial nearly as long and complex and consequential as this one—that has been done by video.

At a practical level, moreover, Plaintiffs' proposal is unworkable. The parties cannot simply dump several boxes of deposition testimony on the Court for it to read or watch out of order, removed from all context. And depositions cannot, under the Rules, be offered as substitutes for the testimony of witnesses who are available to testify at trial and thus required to be presented live.[1] Plaintiffs' proposal to offer "some testimon[y]" by video seems to concede that a trial of this size and magnitude cannot proceed *entirely* by video—that in-person testimony also would be required at some stage. But an orderly and coherent trial requires that witnesses be presented in a logical sequence that effectively communicates the evidence to the finder of fact—not one in which some witnesses appear in January by Zoom and then the rest in April or May in person.

While a bench trial may permit certain flexibilities not available in a jury trial, the parties still must be permitted to present their case to the Court as a *whole*, not through a jumble of evidentiary fragments to be pieced together later like a jigsaw puzzle.[2] This is not just a matter of theme or coherence. Presenting witnesses out of order can materially affect the testimony and evidence. For example, what Plaintiffs propose could foreclose the opportunity to adjust examinations based on recent trial testimony, or require the parties to recall witnesses later in the case to address testimony or evidence that was introduced out of order.

---

[1] *See* Fed. R. Civ. P. 32.

[2] Earlier this year, the Court rejected a similar proposal to conduct a piecemeal trial. Status Conf. Tr. 30-31 (Mar. 5, 2020).

There is no reason, in any event, to attempt the hodge-podge approach Plaintiffs suggest. Plaintiffs are not seeking injunctive relief; they do not assert that Defendants need to change anything they are doing *today*. Rather, Plaintiffs want money that they say would fund various long-term programs over a span of *decades*. Discovery has confirmed that they have no need for any money immediately. On the contrary, the state has tens of millions of dollars in unspent federal funds to address the opioid problem, for which Plaintiffs are eligible. Huntington says it gets all the opioid abatement money it needs from grant funding. A relatively brief continuance to permit a trial that is both safe and fundamentally fair will not impair Plaintiffs' long-term aims.

If the trial is continued, next week's pretrial conference logically should be continued, as well. It goes without saying that travel to Charleston next week for an in-person conference would be needlessly risky. And there is no obvious reason to attempt a video pretrial conference involving dozens of attorneys months in advance of trial.

**I.     Defendants cannot effectively present their defense by video or deposition dumps.**

Internet videoconferencing is inadequate to present any substantial part of the defense in a case of this magnitude. Zoom and similar services have their uses, but they are no substitute for trying a case in the courtroom, in the presence of the Court and of witnesses—especially where the Plaintiffs seek potentially billions of dollars. It scarcely seems necessary to catalogue the limitations of videoconferencing as a communication tool, but here are some:

- It depends entirely on the availability of a high-speed internet connection, which in many locations can fluctuate.

- It gives the Court no control over witnesses—no way to monitor who is in the room with them or what they may be viewing as they testify.

- It sharply limits counsel's ability to work with exhibits during witness testimony and let the Court see both the exhibit and the witness simultaneously, at least at a useful size.

- In all likelihood, it would cause the trial to take *longer*, due both to the inevitable technological disruptions and the unavoidable loss of efficiency as compared to in-person proceedings.

And most fundamentally, a trial by videoconference would drastically diminish the force and immediacy of counsel's arguments to the Court and their questioning of witnesses, along with the Court's ability to evaluate arguments and testimony. An opening statement or cross-examination viewed over a computer screen can never be more than a pale substitute for the real thing. Defendants should not be forced to trial, with the stakes that exist in this case, without the ability to present the strongest possible defense.

The parties' real-world experience with Zoom depositions in this case serves to underscore the point. Connectivity problems arose often. Forceful, probing examinations were far harder to conduct than they would have been in person. Witnesses' demeanors and reactions were difficult to gauge. Handling exhibits was unwieldy. Zoom depositions were a Band-Aid to move the case through discovery. While it might fairly be said that the Zoom depositions were better than nothing, and a way to keep the case from grinding to a halt during the pandemic, "better than nothing" is not the standard for due process in a trial this momentous.

The idea of beginning trial by dumping a load of depositions on the Court is no more helpful. Viewed out of order, and without the context of live testimony—including cross-examination—of witnesses who are available and thus must appear at trial, *see* Fed. R. Civ. P. 32, a deposition dump would sow only confusion. It would accomplish little if anything, because the Court would need to re-read or re-watch the depositions again after hearing the other trial evidence needed to contextualize them.

**II. The video proceedings that Plaintiffs cite are not like this trial.**

Plaintiffs cite a number of cases in which courts have authorized videoconference trials during the Covid pandemic. But even a cursory review of the cited cases reveals the weakness of

Plaintiff's proposal. In *Sunoco Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC*, in the District of Delaware, trial has in fact been continued until June 2021.[3] *Guerra v. Rodas*, in the Western District of Oklahoma, was a three-hour evidentiary hearing.[4] *Chambers v. Russell*, in the Middle District of North Carolina, was a one-day trial.[5] *Petersen Energia Inversora S.A.U. v. Argentine Republic*, in the Southern District of New York, involved an abstract discussion of the possibility of a remote trial in the context of a *forum non conveniens* analysis—not an actual remote trial.[6] *Argonaut Ins. Co. v. Manetta Enterprises, Inc.*, in the Eastern District of New York, was a two-day trial.[7] *Xcoal Energy & Resources v. Bluestone Energy Sales Corp.*, in the District of Delaware, lasted six days. Two of Plaintiffs' examples were somewhat longer, but neither approaches the length of this trial.[8] And *none* of the cases that Plaintiffs cite used the piecemeal approach that Plaintiffs offer here—video openings, then a deposition dump, then "some" unspecified video testimony, and then, presumably, a wait followed by the presentation of other pieces of evidence in person.

---

[3] *Sunoco Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC* (D. Del. Nov. 24, 2020) (Dkt. No. 619) (order continuing trial).

[4] *Guerra v. Rodas*, No. 5:20-cv-00096-SLP (W.D. Okla. June 1, 2020) (Dkt. No. 43) (minute entry).

[5] *Chambers v. Russell*, No. 1:20-cv-00498 (M.D.N.C. Aug. 26, 2020) (Dkt. No. 24) (minute entry).

[6] *Petersen Energia Inversora S.A.U. v. Argentine Republic*, No. 1:15-cv-2739 (LAP), 2020 WL 3034824, at *9–11 (S.D.N.Y. June 5, 2020).

[7] *Argonaut Ins. Co. v. Manetta Enters., Inc.*, No. 1:19-cv-00482 (E.D.N.Y. Aug. 24-25, 2020) (unnumbered docket minute entries for trial days).

[8] *Vitamins Online, Inc. v. HeartWise, Inc.*, No. 2:13-cv-00982-DAK (D. Utah June 24, 2020); *Centripetal Networks, Inc., v. Cisco Sys., Inc.*, No. 2:18-cv-00094 (E.D. Va. Apr. 23, 2020).

### III. Plaintiffs are pursuing long-term claims for monetary damages, not for injunctive relief—and discovery showed that current abatement needs are met.

Plaintiffs' opposition to a continuance might have more force if they were seeking injunctive relief against some conduct that they claim is ongoing today. They are not. On the contrary, they have abandoned all their claims except one for money damages to fund an abatement plan that they say would take decades to unfold. Even if Plaintiffs were to prevail at trial, a relatively brief delay in the interest of Covid safety will have no material impact on that plan.

Discovery revealed other reasons to discount Plaintiffs' insistence on haste. It emerged, for example, that West Virginia has already received so much federal money to address the opioid problem that it cannot begin to spend it. A year ago, the state Department of Health and Human Resources was forced to admit to Congress that it had not even *allocated*—much less spent—more than $81 million of the $147 million it received from Washington for that purpose in the previous three fiscal years.[9] Plaintiffs are eligible for those funds. And Huntington's mayor testified that his city does not need to spend its own money on opioid abatement because it can already get the money it needs from grants.[10] West Virginia's health secretary testified, moreover, that the state's inpatient opioid treatment facilities are 25% to 30% empty; supply far exceeds demand.[11]

---

[9] Letter from Christina R. Mullins, Commissioner, West Virginia Bureau for Behavioral Health, to Hon. Frank Pallone, Jr., Chairman, United States House of Representatives Committee on Energy and Commerce, at 3, 5 (Oct. 18, 2019) (Dkt. No. 1092-1 at 4, 6).

[10] Steve Williams Dep. 210:17-20 (June 30, 2020) (Dkt. No. 1092-1 at 33).

[11] Sec'y Bill Crouch Dep. 143:16-144:2 (Dkt. No. 1092-1 at 42–43).

### IV. A safe, live trial promises to be possible relatively soon.

Plaintiffs' bid to scramble the trial format might gain more purchase were there no end in sight to the pandemic's worst phase. But as Defendants' motion details, efficacious vaccines already have been developed and are on their way to approval and widespread administration. Just today, the United Kingdom approved use of a vaccine in that country. The question now is one of months, not years, and the relatively brief continuance that Defendants seek correctly balances the goals of safety, fundamental fairness in the presentation of the defense, and the need to reach a resolution of the case.

### V. Conclusion

It is apparent to both sides that an in-person January trial is out of the question. Plaintiffs' alternative proposal, however, is neither fair to the defense nor workable in practice. Nor is it necessary, since their requested relief in this case is for a future abatement program (and an extremely long-term one, at that) rather than to enjoin ongoing conduct. Soon, the Court will be able to hold a trial that is safe, fair, and orderly. For now, it should follow the lead of the vast majority of courts around the country and wait—relatively briefly—until such a trial is possible. The pretrial hearing scheduled for next week, along with the other pretrial deadlines, should be continued accordingly.

Dated:  December 2, 2020

Respectfully submitted,

**CARDINAL HEALTH, INC.**

| | |
|---|---|
| */s/ Steven R. Ruby* | */s/ Enu Mainigi* |
| Michael W. Carey (WVSB No. 635) | Enu Mainigi |
| Steven R. Ruby (WVSB No. 10752) | F. Lane Heard III |
| David R. Pogue (WVSB No. 10806) | Ashley W. Hardin |

7

Raymond S. Franks II (WVSB No. 6523)
**CAREY DOUGLAS KESSLER & RUBY PLLC**
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
drpogue@cdkrlaw.com
rsfranks@cdkrlaw.com

Jennifer G. Wicht
**WILLIAMS & CONNOLLY LLP**
725 Twelfth Street NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard@wc.com
ahardin@wc.com
jwicht@wc.com

**AMERISOURCEBERGEN DRUG CORPORATION**

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
**REED SMITH LLP**
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
**JACKSON KELLY PLLC**
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

**MCKESSON CORPORATION**

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
**FLAHERTY SENSABAUGH BONASSO PLLC**
P.O. Box 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*/s/ Timothy C. Hester*
Timothy C. Hester
Paul W. Schmidt
Christian J. Pistilli
Laura Flahive Wu
**COVINGTON & BURLING LLP**
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
pschmidt@cov.com
cpistilli@cov.com
lflahivewu@cov.com

8

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 2nd day of December, 2020, the foregoing ***Defendants' Reply in Support of Motion for a Trial Continuance*** was served upon counsel of record electronically.

*/s/ Steven R. Ruby*
Steven R. Ruby (WVSB No. 10752)
