IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

Docket No. _____

STATE of West Virginia, ex rel.
AMERISOURCEBERGEN DRUG CORPORATION;
CARDINAL HEALTH, INC.; H.D. SMITH LLC f/k/a
H.D. SMITH WHOLESALE DRUG COMPANY;
ENDO PHARMACEUTICALS INC.;
ENDO HEALTH SOLUTIONS INC.;
PAR PHARMACEUTICAL COMPANIES, INC.;
PAR PHARMACEUTICAL INC.; WATSON LABORATORIES, INC.;
WARNER CHILCOTT COMPANY, LLC; ACTAVIS PHARMA, INC. f/k/a
WATSON PHARMA, INC.; ACTAVIS SOUTH ATLANTIC LLC;
ACTAVIS ELIZABETH LLC; ACTAVIS MID ATLANTIC LLC;
ACTAVIS TOTOWA LLC; ACTAVIS LLC; ACTAVIS KADIAN LLC;
ACTAVIS LABORATORIES UT, INC.; ACTAVIS LABORATORIES FL, INC. f/k/a
WATSON LABORATORIES, INC. – FLORIDA; ALLERGAN FINANCE, LLC f/k/a
ACTAVIS, INC. f/k/a WATSON PHARMACEUTICALS, INC.; ALLERGAN SALES, LLC;
ALLERGAN USA, INC.; WATERN CHILCOTT SALES (US) LLC;  TEVA
PHARMACEUTICALS USA, INC.; CEPHALON, INC.; MYLAN PHARMACEUTICALS
INC.; THE KROGER CO; KROGER LIMITED PARTNERSHIP I; KROGER LIMITED
PATNERSHIP II; NORAMCO, INC.; ANDA, INC.; HENRY SCHEIN, INC.;
WALMART INC.; WALMART STORES EAST, LP; WALGREE CO.; WALGREENS BOOTS
ALLIANCE, INC.; CVS INDIANA L.L.C; CVS RX SERVICES, INC.;
CVS TN DISTRIBUTION, L.L.C.; CVS PHARMACY, INC.; WEST VIRGINIA CVS
PHARMACY, L.L.C;  AMNEAL PHARMACEUTICALS LLC; AMNEAL
PHARMACEUTICALS OF NEW YORK, LLC; IMPAX LABORATORIES, LLC;
MALLINCKRODT LLC; MALLINCKRODT BRAND PHARMACEUTICALS, INC.;
MALLINCKRODT ENTERPRISES LLC;  SPECGX LLC; JANSSEN PHARMACEUTICALS,
INC.; ORTHO-MCNEIL-JANSSEN PHARMACEUTICALS, INC. n/k/a JANSSEN
PHARMACEUTICALS, INC.; JANSSEN PHARMACEUTICA, INC. n/k/a JANSSEN
PHARMACEUTICALS, INC.;  JOHNSON & JOHNSON; ABBOTT LABORATORIES;
ABBOTT LABORATORIES, INC.; and FRUTH PHARMACY, INC.,
Petitioners,
v.

The Honorable Alan D. MOATS, Lead Presiding Judge,
Opioid Litigation, Mass Litigation Panel

Respondent.

*From the Circuit Court of Kanawha County, West Virginia*
*In re: Opioid Litigation Civil Action No. 19-C-9000*

## VERIFIED PETITION FOR WRIT OF PROHIBITION

# TABLE OF CONTENTS

Page

QUESTIONS PRESENTED..................................................................................... 1

INTRODUCTION ................................................................................................ 1

STATEMENT OF THE CASE.............................................................................. 3

    A.   THE PANEL DENIES DEFENDANTS' RIGHT TO A JURY TRIAL. .................. 4

    B.   THE PANEL STRIKES DEFENDANTS' NOTICES OF NON-PARTY FAULT. ..... 6

SUMMARY OF ARGUMENT ............................................................................. 6

STATEMENT REGARDING ORAL ARGUMENT AND DECISION ..................... 8

ARGUMENT..................................................................................................... 8

I.    The Panel Exceeded Its Legitimate Powers When It Erroneously Denied  Defendants'
Constitutional Right to a Trial by Jury. ......................................................... 11

    A.   A Constitutional Right to a Jury Trial Exists Where the Plaintiff Seeks a
Monetary Recovery.................................................................................. 11

    B.   Even Assuming, *Arguendo*, Plaintiffs' Public Nuisance Claims Seek Equitable
Relief, the Panel's Order Still Violates Defendants' Right to a Jury Trial by
Failing to First Submit Related Legal Claims to a Jury...................................... 22

II.   The Panel Committed Clear Legal Error When It Held the Monetary Relief Sought on
Plaintiffs' Public Nuisance Claims Is Equitable and Does Not Constitute "Damages"
Under the 2015 Act..................................................................................... 24

    A.   The Panel's Clear Error is Derivative of Its Erroneous Jury Trial Decision. ....... 25

    B.   The Panel's Order Misinterprets West Virginia Law. ..................................... 26

    C.   The Panel's Order Misinterprets Federal and Out-of-State Authorities. .............. 28

    D.   The Panel's Order Creates Arbitrary Distinctions Between Damages and
Equitable Relief. .................................................................................... 32

CONCLUSION................................................................................................. 34

i

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Beacon Theaters, Inc. v. Westover*,
  359 U.S. 500 (1959)..................................................................................................21, 23

*Bennett v. Bennett*,
  92 W.Va. 391, 115 S.E. 436 (1922)......................................................................34

*Bishop Coal Co. v. Salyers*,
  181 W.Va. 71, 380 S.E. 2d 238 (1989)..................................................................21

*Bowen v. Massachusetts*,
  487 U.S. 879 (1988).......................................................................15, 28, 29, 30

*Burch v. Nedpower Mount Storm, LLC*,
  220 W.Va. 443, 647 S.E. 2d 879 (2007)................................................................19

*Camden-Clark Memorial Hospital Corp. v. Turner,*,
  212 W.Va. 752, 575 S.E. 2d 362 (2002)................................................................23

*Clovis v. J.B. Hunt Transport, Inc.*,
  No. 1:18-cv-147, 2019 WL 4580045 (2019) ......................................................25

*Dairy Queen, Inc. v. Wood*,
  369 U.S. 469 (1962)...............................................................................................21

*Duff v. Morgantown Energy Assocs.*,
  187 W.Va. 712, 421 S.E. 2d 253 (1992)................................................................19

*Dunn v. Rockwell*,
  225 W.Va. 43, 689 S.E. 2d 255 (2009)..................................................................33

*Ellard v. Harvey*,
  159 W.Va. 871, 231 S.E 2d 339 (1976).................................................................33

*Farley v. Crystal Coal & Coke Co.*
  85 W.Va. 595, 102 S.E. 265 (1920)................................................................26, 27

*Granfinanciera S.A. v. Nordberg*,
  492 U.S. 33, 49 n.7 (1989)....................................................................................15

*Great-West Life & Annuity Insurance Co. v. Knudson*,
  534 U.S. 204 (2002).......................................................15, 16, 18, 19, 29, 30

*Hinkle v. Black*,
  164 W.Va. 112, 262 S.E. 2d 744 (1979).........................................................11, 35

*In re Nat'. Prescription Opiate Litig.*,
   No. 1:17-MD-2804, 2019 WL 41942762 (ND *Ohio September 4, 2019)* ..............................20

*Jackson v. Stockert*,
   75 W.Va. 482, 84 S.E. 919 (1915) ............................................................................13, 14, 18

*Jaffee v. U.S.*,
   592 F. 2d 712 (3d Cir. 1979) ...................................................................................30, 31, 33

*Jenkins v. McCoy*,
   35 F. 3d 556 (4th Cir. 1944) ...............................................................................................33

*Little v. Little*,
   184 W.Va. 360, 400 S.E. 2d 604 (1990) ..............................................................................11

*Mahoney v. Walter*,
   157 W.Va. 882, 305 S.E. 2d 692 (1974) ..............................................................................19

*Mankin v. Davis*,
   82 W.Va. 575, 97 S.E. 296 (1918) ......................................................................................13

*Martin v. Williams*,
   141 W.Va. 595, 93 S.E. 2d 835 (1956) ................................................................................19

*Matheny v. Greider*,
   115 W.Va. 763, 177 S.E. 769 (1934) ..............................................................................10, 24

*McMechen v. Hitchman-Glendale Consolidated Coal Co.*,
   88 W.Va. 633, 107 S.E. 480 (1921) ..............................................................20, 22, 26, 27

*Mertens v. Hewitt Assocs.*,
   508 U.S. 248 (1993) ...................................................................................................15, 19

*Modular Bldg. Consultants of West Virginia, Inc. v. Poerio, Inc.*,
   235 W.Va. 474, 774 S.E. 2d 555 (2015) ..............................................................................25

*Montanile v. Bd. Of Trs. Of Nat. Elevator Indus. Health Benefit Plan*,
   136 S. Ct. 651 (2016) ..........................................................................................................15

*New Gauley Coal Corp. v. Herndon*,
   101 W.Va. 449, 132 S.E. 879 (1926) ..................................................................................10

*People v. ConAgra Grocery Products Co.*,
   17 Cal. App. 5th 51, 132, 227 Cal. Rptr. 499, 569 (Cal. Ct. App. 2017) .........................31, 32

*Peterson v. Putnam County*,
   No. M2005-02222-COA-R3-CV, 2006 WL 3007516 (Tenn. Ct. App. Oct.
   2006) ...................................................................................................................................31

*Realmark Developments, Inc. v. Ranson,*
    214 W.Va. 161, 588 S.E. 2d 150 (2003)............................1, 5, 7, 12, 13, 15, 17, 18, 19, 22, 26

*Sereboff v. Mid Atlantic Medical Services, Inc.,*
    547 U.S. 356 (2006)...........................................................................16

*State v. Navy,*
    123 W.Va. 722, 17 S.E. 2d 625 (1941)..................................................19

*State ex rel. Ball v. Cummings,*
    208 W.Va. 393, 540 S.E. 2d 917 (1999).............................................28, 31

*State ex rel. City of Huntington v. Lombardo,*
    149 W.Va. 671, 143 S.E. 2d 535 (1965)................................................10

*State ex rel. Dunlap v. Berger,*
    211 W.Va. 549, 567 S.E. 2d 265 (2002)..............................................1, 11

*State ex rel. Frazier v. Hrko,*
    203 W.Va. 652, 510 S.E. 2d 486 (1998)..............................................2, 35

*State ex rel. Hoover v. Berger,*
    199 W.Va. at 12, 483 S.E. 2d at 12......................................................9

*State ex rel. Peacher v. Sencindiver*
    160 W.Va. 314, 233 S.E. 2d 425 (1977)................................................8

*State ex rel. Thornhill Group, Inc. v. King,*
    233 W.Va. 564, 759 S.E. 2d 795 (2014)...............................................11

*State ex rel. West Virginia Regional Jail Authority v. Webster,*
    242 W.Va. 543, 836 S.E. 2d 510 (2019)................................................9

*State ex rel. West Virginia Truck Stops, Inc. v. McHugh*
    160 W.Va. 294, 233 S.E. 2d 729 (1977)............................................9, 10, 24

*Stephenson v. Ashburn,*
    137 W.Va. 141, 70 S.E. 2d 585 (1952)...................................................1

*Swarthmore Lumber Co. v. Parks,*
    72 W.Va. 625, 79 S.E. 723 (1913).....................................................13, 18

*Thompson v. Town of Alderson,*
    215 W.Va. 578, 600 S.E. 2d 290 (2004)................................................13

*Town of Weston v. Ralston,*
    48 W.Va. 170, 36 S.E. 446 (1900).......................................................18

iv

*Turner ex rel. Turner v. Turner,*
    223 W.Va. 106,672 S.E. 2d 242 (2008)..................................................................16

*United States v. Price,*
    688 F. 2d 204 (3d Cir. 1982)......................................................................30, 31

*Warner v. Kittle,*
    167 W.Va. 719, 280 S.E. 2d 276 (1981).............................................................11

*West Virginia Human Rights Commission v. Tenpin Lounge, Inc.,*
    158 W. Va. 349, 211 S.E.2d 349 (1975)............................................................. 23

*Wilt v. Crim,*
    87 W.Va. 626, 105 S.E. 812 (1921).............................................................14, 18

*Witteried v. City of Charles Town,*
    No. 17-0310, 2018 WL 2175820 (W.Va. May 11, 2018) Mem. Dec.) ............................19, 20

*Wolfe v. Shaw,*
    113 W.Va. 735, 169 S.E. 325 (1933)..................................................................10


**Statutes**

W.Va. Code § 55-7-13d(a)(2) ..............................................................1, 3, 6, 25

W.Va. Code § 55-7-13a through 13d..........................................................1, 3, 6, 25


**Other Authorities**

Rule 18(a) of the West Virginia Rules of Appellate Procedure Restatement
    (Second) of Torts § 821B..........................................................................8

50A C.J.S. *Juries* § 50 (1997)...........................................................................12

66 C.J.S. Nuisances § 149................................................................................19

Dobbs, Handbook On the Law of Remedies at 2 (1973) .....................................................19

Prosser and Keeton, *The Law of Torts*, 631 ............................................................19

Rule 2, West Virginia Rules of Civil Procedure ..........................................................11

Const. Art. 3 § 13 .......................................................................................9

Joseph Story, *Commentaries on Equity Jurisprudence, as Administered in England and America* § 923, at 203 (1st ed. 1836). ................................................................17

3B Fed. Prac. And Proc. § 873 (4th ed.) ........................................................................23

## QUESTIONS PRESENTED

1.      Whether the Mass Litigation Panel exceeded its legitimate powers by committing a clear error of law when it denied Defendants' right to a jury trial on Plaintiffs' public nuisance claims.

2.      Whether the Mass Litigation Panel committed clear legal error when it struck Defendants' notices of non-party fault based on its conclusion that the monetary recovery Plaintiffs seek on their public nuisance claims does not qualify as "damages" under W.Va. Code § 55-7-13d(a)(2).

## INTRODUCTION

The Mass Litigation Panel (the "Panel") exceeded its legitimate powers by committing two clear and related legal errors, both of which warrant granting Defendants' petition. Both of these rulings are based on the Panel's incorrect conclusion that the monetary relief Plaintiffs seek on their public nuisance claims is equitable and not legal.  This conclusion contravenes foundational West Virginia law and neither ruling can stand.

Based on its incorrect conclusion that Plaintiffs seek equitable relief, the Panel deprived Defendants of two basic rights.  First, the Panel erroneously deprived Defendants of their right to a jury trial on Plaintiffs' public nuisance claims.  The right to trial by jury is "fundamental in the State of West Virginia."[1]  This Court's precedents instruct that a jury trial exists for causes of action seeking the recovery of money regardless of how the plaintiff labels its claims.[2]  Plaintiffs here admittedly seek a monetary recovery on all of their causes of actions, including their public

---

[1] *State ex rel. Dunlap v. Berger*, 211 W.Va. 549, 560, 567 S.E.2d 265, 276 (2002); *see also Stephenson v. Ashburn*, 137 W.Va. 141, 145, 70 S.E.2d 585, 588 (1952).

[2] *See Realmark Developments, Inc. v. Ranson*, 214 W.Va. 161, 588 S.E.2d 150 (2003).

nuisance claims.  Thus, Defendants have a right to a trial by jury on Plaintiffs' public nuisance claims.  The Panel justified its contrary ruling by placing form over substance—treating Plaintiffs' requests for damages as equitable relief simply because they arise in the context of a public nuisance claim.  This ruling is unprecedented and contravenes West Virginia law.  This decision also is inconsistent with the rulings of other courts that have addressed the right to a jury trial for public nuisance claims seeking an opioid abatement fund, including the judge presiding over the federal MDL and the judge presiding over actions in the State of New York.[3]

The Panel's wrongful denial of Defendants' jury trial rights is an error tailor-made for prohibition because it goes to the very jurisdiction of the trial court and, absent immediate relief, will work irreparable harm on Defendants.  Indeed, this Court repeatedly has recognized that an appeal is inadequate, and prohibition is warranted, when the parties would be compelled to go through an expensive, complex trial only to have any judgment reversed on appeal due to a trial court's erroneous legal rulings.[4]  That is exactly what would happen here, and so this Court should grant the petition.

Second, the Panel also erred by striking, based on similar reasoning, Defendants' notices of non-party fault with respect to Plaintiffs' public nuisance claims.  This clearly erroneous legal ruling derives from the Panel's view that any claim seeking abatement of a public nuisance—no matter the form of the relief actually sought—is equitable and therefore outside the protections that ordinarily apply to an action for damages.  Chief among those protections is West Virginia

---

[3] JA000830-842.

[4] *See State ex rel. Frazier v. Hrko*, 203 W.Va. 652, 658 510 S.E.2d 486, 492 (1998) ("As a result of the trial court's ruling, both parties would be compelled to go through an expensive, complex trial and appeal from a final judgment, and we determine there is a high likelihood of reversal on appeal.  The unreasonableness of the delay and expense is apparent … The remedy of appeal is usually deemed inadequate in these situations, and prohibition is allowed.").

Code § 55-7-13d(a)(2), which addresses apportionment of fault and entitles Defendants to attribute fault to non-parties. In ruling that the monetary relief Plaintiffs seek does not constitute "damages" under the statute, the Panel's order potentially saddles Defendants with the burden of paying to remedy harms they did not cause by taking away Defendants' right to seek apportionment of fault to non-parties. This result overrides the clear intent of the Legislature by disallowing the attribution of non-party fault any time a plaintiff artfully labels a request for relief that actually amounts to legal damages as part of a historically equitable claim. And the ruling would be just as wrong even if the monetary relief Plaintiffs seek could be characterized as "equitable" because basic principles of equity dating back decades (if not centuries) plainly require equity to follow the law when, as here, the Legislature has limited the availability of legal remedies. The Panel's ruling on non-party fault, too, should be addressed through prohibition.

In sum, this Court's immediate review is needed to address important issues of law and to avoid the repeated error and persistent prejudice that will arise in the multitude of cases in this consolidated proceeding, which an appeal cannot remedy.

## STATEMENT OF THE CASE

In late 2017, various West Virginia counties, municipalities, and hospitals (collectively "Plaintiffs") began filing actions against Defendants arising out of their purported involvement in the manufacture, distribution, and/or dispensing of FDA-approved prescription opioid medications. Plaintiffs assert various causes of action against Defendants, including public nuisance, negligence, fraud, and strict liability. JA000001-269. On June 7, 2019, pursuant to Trial Court Rule 26.06(b), the Chief Justice entered an Administrative Order referring the litigation to the Panel. JA000270-272.

### A.   THE PANEL DENIES DEFENDANTS' RIGHT TO A JURY TRIAL.

At a December 6, 2019 status conference, the Panel inquired whether the parties would agree to hold a non-jury trial on the issue of public nuisance liability, indicating that the waiver of jury trial rights would be a decision for the parties.[5]   By Order entered December 12, 2019, the Panel asked the parties to meet and confer "regarding whether they are in agreement with the Court's proposal to conduct a non-jury trial." JA000356-357.  The Order directed all Plaintiffs to file one joint memorandum of law stating their position on the issue, and all Defendants to do the same. JA000357.  The Panel's Order did not ask for briefing on the issue of whether there was a right to a jury trial for public nuisance claims, but only whether the parties agreed to waive their right to a jury trial.

As directed, Defendants filed a short joint memorandum stating they would not agree to a non-jury trial on public nuisance liability.   Adhering to the scope of the Panel's directive, Defendants did not explain why they are entitled to a jury trial. JA000384.  For their part, Plaintiffs stated that they agreed with the Panel's proposal to conduct a non-jury trial on public nuisance liability, but then also went on to argue that Defendants had no right to a jury trial on the public nuisance claims.  JA000359-365.   While Plaintiffs readily admitted that their public nuisance claims "seek[] monetary damages for abatement," JA000378,[6] they argued the remedy was equitable and therefore no jury trial right existed.

---

[5] *See* JA000332 ("You-all don't have to try it.  You say "Hey, we waive that.  We want this to be decided.'"); JA000333-334 ("But we can do that if you-all want to.  I can't force you to do anything you don't want to do."); JA000334 ("You need to tell us if you are willing to do that or not.").

[6] *See also* JA000376 ("The County Plaintiffs are seeking monetary relief for the 'elimination of hazards to public health and safety and to abate or cause to be abated . . . a public nuisance.'"); JA000286 (stating the hospitals plaintiffs assert their public nuisance claims "to recover their pecuniary loss caused by the nuisance" arising from "uncompensated medical care"); JA000235 ("The Plaintiff Counties have declared the opioid epidemic . . . to be a public nuisance and file this lawsuit seeking redress for their damages."); JA000286-287 ("As a direct and proximate result of the nuisance, [Hospital] Plaintiffs have sustained

Although the Panel had indicated that it would let the parties decide whether they would waive a jury trial, it entered an Order Regarding Trial of Liability for Public Nuisance on February 19, 2020, JA000387-396, ruling that because "Plaintiffs' claims for abatement of [a] public nuisance are equitable claims to which a right to jury trial does not attach," it therefore would proceed with a Phase I non-jury trial on public nuisance liability. JA000395. On March 11, 2020, certain Defendants moved for reconsideration of the Panel's Order, arguing that Defendants had a right to a jury trial on Plaintiffs' public nuisance claims for two reasons. JA000397. First, in accordance with *Realmark Developments, Inc. v. Ranson*,[7] Plaintiffs' public nuisance claims are actions at law, not equity, to which a jury trial right attaches because Plaintiffs are seeking affirmative monetary recovery on those claims. JA000408-411. Second, even assuming the relief is equitable, there are other pending legal claims—with issues of fact and law common with the public nuisance claim—that must be tried to a jury before the Panel may conduct a non-jury trial on the public nuisance claims. JA000402-406.[8]

On July 23, 2020, the Panel entered an order denying Defendants' motion for reconsideration, again holding that Plaintiffs' public nuisance claims were equitable and thus Defendants have no right to a jury trial. JA000807. The Panel's Order did not reference *Realmark* and did not explain why Plaintiffs' public nuisance claims are equitable when Plaintiffs, by their own admission, seek to recover money.

---

economic harm by spending a substantial amount of money trying to remedy the harms caused by Defendants' nuisance-causing activity" and seeking "damages in an amount to be determined by a jury").

[7] 214 W.Va. 161, 588 S.E.2d 150 (2003).

[8] The Panel entered an order allowing time for supplemental briefing on the motion for reconsideration, and on May 5, 2020, Defendants filed a supplemental brief regarding the motion for reconsideration and the Panel's public nuisance trial plan.  JA000431.  On May 20, 2020, Plaintiffs filed a consolidated memorandum in opposition to, *inter alia*, the motion for reconsideration.  JA000504.  On June 16, 2020, Defendants filed their reply brief.  JA000574.

**B.    THE PANEL STRIKES DEFENDANTS' NOTICES OF NON-PARTY FAULT.**

The Panel compounded its error regarding the public nuisance claims by granting Plaintiffs' Motion to Strike Defendants' Notices of Non-Party Fault.  Certain Defendants filed notices of non-party fault pursuant to W.Va. Code § 55-7-13d(a)(2) (the "2015 Act")[9] identifying categories of non-parties alleged to be at fault. JA000471-000503.[10]  On June 12, 2020, Plaintiffs moved to strike Defendants' notices insofar as they pertain to their public nuisance claims. JA000558.  Even though Plaintiffs were seeking an affirmative monetary award, which they themselves describe as "monetary damages for abatement," JA000378, Plaintiffs argued that their public nuisance claims sought equitable relief, not damages, and thus the 2015 Act did not apply. JA000564-569.  Over Defendants' objection, JA000716, the Panel granted Plaintiffs' motion on July 29, 2020 as it pertained to Plaintiffs' public nuisance claims.  JA000819.[11]  Referencing its prior ruling that Defendants had no right to a jury trial, the Panel held that the monetary relief Plaintiffs sought on their public nuisance claims is not "damages" within the meaning of the 2015 Act.  JA000822-829.

## SUMMARY OF ARGUMENT

The Panel committed two clear legal errors for which an appeal is an inadequate remedy and prohibition is necessary.

---

[9] While the non-party fault designations were made under Section 55-7-13d(a)(2) of the Code, this is but one part of the Legislature's 2015 comprehensive rewriting of the law regarding comparative fault, which is now set forth in Sections 55-7-13a through 55-7-13d of the Code.  Thus, the reference to the 2015 Act encompasses all of these provisions.

[10] For brevity, the appendix contains examples of three notices of non-party fault that were filed below.

[11] In addition to arguing their public nuisance claims were not seeking "damages" under the 2015 Act, Plaintiffs argued the 2015 Act does not apply because their public nuisance claims accrued prior to its effective date of May 25, 2015.  Because the Panel based its ruling that the 2015 Act did not apply based on its finding that Plaintiffs are seeking equitable relief and not "damages," it did not address Plaintiffs' argument that their claims accrued prior to the 2015 Act's effective date.

First, the Panel exceeded its legitimate powers when it denied Defendants' right to a jury trial on Plaintiffs' public nuisance claims. In *Realmark Developments, Inc. v. Ranson*,[12] this Court held that when the action seeks monetary relief as a remedy, it is an action at law for which a right to a jury trial exists, even if the cause of action has been historically characterized as equitable.[13] Monetary relief is exactly what Plaintiffs seek on their public nuisance claims, regardless of whether they label it an "abatement" remedy. Plaintiffs admittedly seek to impose liability upon Defendants for large sums of affirmative monetary relief. Nonetheless, the Panel held that Plaintiffs seek equitable relief on their public nuisance claims and denied Defendants their fundamental constitutional right to a jury trial. The Panel's decision is contrary to established West Virginia law.

Next, relying on the same erroneous rationale—that Plaintiffs' public nuisance claims are equitable—the Panel held that the 2015 Act does not apply and struck Defendants' notices of non-party fault as to those claims. The Panel was wrong because the monetary relief those claims seek is legal, not equitable, and clearly falls within the 2015 Act's definition of damages.

Both errors require immediate correction. The Panel's denial of Defendants' right to a jury trial is a paradigmatic example of overreach. By depriving Defendants of their jury trial right in a damages case, the Panel has improperly expanded its authority. Second, the Panel's striking of Defendants' notices of non-party fault means that Defendants face potential liability for harms they did not cause. The West Virginia Legislature clearly intended non-party fault to be part of the State's laws; the Panel's ruling undermines that legislative choice and deprives Defendants of the protections to which they are entitled. This Court's immediate intervention is necessary both

---

[12] 214 W.Va. at 161, 588 S.E.2d at 150.

[13] *Id.* at 164–65, 588 S.E.2d at 153–54; *see also id.* at syl. pt. 1 ("A suit seeking monetary recovery under a theory of unjust enrichment is an action at law and therefore, can be tried before a jury.").

to ensure that these high-stakes cases proceed on a constitutionally sound footing, and to avoid the waste of judicial and litigant resources that will otherwise ensue.

## STATEMENT REGARDING ORAL ARGUMENT AND DECISION

Oral argument is appropriate pursuant to Rule 18(a) of the West Virginia Rules of Appellate Procedure to aid in the Court's consideration of the important legal issues in this case. The matter should be set for oral argument under Rule 20, as the Panel's decision involves issues of fundamental public importance, constitutional issues regarding the validity of a court ruling, and matters of first impression.

## ARGUMENT

Under Section 53-1-1 of the Code, "[t]he writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has no jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers."[14]   When a petitioner contends that the trial court has exceeded its legitimate powers, this Court considers five factors:

1.  Whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief;

2.  Whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal;

3.  Whether the lower tribunal's order is clearly erroneous as a matter of law;

4.  Whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and

---

[14] W. Va. Code § 53-1-1; syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W.Va. 314, 233 S.E.2d 425 (1977).

5. Whether the lower tribunal's order raises new and important issues
of law of first impression.[15]

"[A]ll five factors need not be satisfied, [and] it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight."[16]  A court "commits clear legal error when it incorrectly chooses, interprets, or applies the law."[17]

A writ of prohibition is warranted on the Panel's two rulings—both of which are based on the same foundational and clear legal error and correction of which through an appeal after final judgment would be inadequate.

First, the Panel exceeded its legitimate powers by denying Defendants their fundamental right to a jury trial.  This Court has expressly recognized that prohibition is an appropriate vehicle to challenge the denial of jury trial rights.  In granting a writ in *State ex rel. West Virginia Truck Stops, Inc. v. McHugh*,[18] this Court held that "[a] trial court exceeds its legitimate powers when it denies a jury trial to one entitled thereto who makes a proper demand therefor."[19]  In reaching that conclusion, the Court held that the denial of a right to a jury trial is the equivalent of the trial court proceeding without subject matter jurisdiction:

> [T]he trial court denied the relator a right to a trial by jury, to which, under W. Va. Const. Art. III, s 13, it was clearly entitled.  This constitutes, in our opinion, an abuse demonstrating that the court has exceeded its legitimate powers.  That is a ground for prohibition equal to that wherein the court acts without jurisdiction over the subject matter in controversy.  The trial court has denied a fundamental constitutional right [citation omitted] thereby

---

[15] Syl. pt. 4, *Berger*, 199 W.Va. at 12, 483 S.E.2d at 12.

[16] *Id.*

[17] *State ex rel. West Virginia Regional Jail Authority v. Webster*, 242 W.Va. 543, 836 S.E.2d 510, 518 (2019) (internal quotations and citation omitted).

[18] 160 W.Va. 294, 233 S.E.2d 729 (1977).

[19] *Id.* at syl. pt. 2.

exceeding its legitimate powers.[20]

In issuing the writ in *West Virginia Truck Stops*, this Court rejected the argument that prohibition could not be used as a substitute for appeal in these circumstances. When a court wrongly denies a party a trial by jury, the resulting bench trial "would be futile, because any judgment rendered against [the petitioner] would ultimately have to fall if challenged on a writ of error."[21] Prohibition therefore is a "quick, inexpensive, and adequate method of stopping litigation where there is no jurisdiction": It avoids needlessly spending the court's and parties' resources when the judgment is invalid and the trial court acting outside the law.[22] That is why when "the court or tribunal to be prohibited lacks jurisdiction to take any valid action or to enter any valid judgment, the writ of prohibition *will* issue against further proceedings by it, regardless of the existence and availability of other remedies."[23] Accordingly, the "impaneling of a jury to try the issue is a jurisdictional requirement, and a judgment rendered without complying with it is void."[24]

Second, a writ is warranted too on the Panel's order striking Defendants' notices of non-party fault, which was based on the same rationale as its order denying Defendants' jury trial rights. The Panel held that the relief sought on Plaintiffs' public nuisance claims is equitable and not "damages" and therefore the 2015 Act does not apply. That ruling constitutes a "substantial, clear-cut, legal error[] plainly in contravention of a clear statutory … mandate which may be resolved

---

[20] *Id.* at 302, 233 S.E.2d at 734.

[21] *Id.* at 303, 233 S.E.2d at 734 (quoting *Wolfe v. Shaw, Judge*, 113 W.Va. 735, 169 S.E. 325 (1933) (granting writ).

[22] *New Gauley Coal Corp. v. Herndon*, 101 W.Va. 449, 132 S.E. 879 (1926).

[23] *State ex re. b v. Lombardo*, 149 W.Va. 671, 679, 143 S.E.2d 535, 541 (1965) (emphasis added) (collecting cases).

[24] Syl. pt. 3, *Matheny v. Greider*, 115 W.Va. 763, 177 S.E. 769 (1934) ("the impaneling of a jury to try the issue is a jurisdictional requirement, and a judgment rendered without complying with it is void'"); *see McHugh*, 160 W.Va. at 294, 233 S.E.2d at 729 (quoting syl. pt. 2, *Matheny*, 115 W.Va. at 763, 177 S.E. at 769).

independently of any disputed facts … where there is a high probability that the trial will be completely reversed if the error is not corrected in advance."[25]

I.    **THE PANEL EXCEEDED ITS LEGITIMATE POWERS WHEN IT ERRONEOUSLY DENIED DEFENDANTS' CONSTITUTIONAL RIGHT TO A TRIAL BY JURY.**

    A.    **A Constitutional Right to a Jury Trial Exists Where the Plaintiff Seeks a Monetary Recovery.**

The right to trial by jury is "fundamental in the State of West Virginia."[26]  This Court's precedents instruct that a jury trial exists for causes of actions seeking the recovery of money. Plaintiffs indisputably seek the recovery of money on all of their causes of actions—including their public nuisance claims.  Thus, as a matter of settled law, Defendants have a right to a trial by jury on Plaintiffs' public nuisance claims.  The Panel's denial of a jury trial in this civil suit seeking a money judgment disregards the clear commands of West Virginia law—and amounts to a legal error that can only be adequately corrected through prohibition.

The West Virginia Constitution provides, in relevant part, that "[i]n suits at common law, where the value in controversy exceeds twenty dollars exclusive of interest and costs, the right of trial by jury, if required by either party, shall be preserved."[27]  "Prior to the introduction of the Rules of Civil Procedure, a right to a jury trial existed in an action at law.  In an equitable dispute, however, the right to a jury trial did not exist."[28]  While the distinction between law and equity was abolished by Rule 2 of the West Virginia Rules of Civil Procedure, "the right to a jury trial depends upon whether one had that right prior to the adoption of the Rules."[29]

---

[25] Syl. pt. 1, *Hinkle v. Black,* 164 W.Va. 112, 262 S.E.2d 744 (1979), *superseded by statute on other grounds as stated in State ex rel. Thornhill Group., Inc. v. King,* 233 W.Va. 564, 759 S.E.2d 795 (2014).

[26] *Berger*, 211 W.Va. at 560, 567 S.E.2d at 276.

[27] Const. Art. 3, § 13.

[28] *Little v. Little,* 184 W.Va. 360, 362, 400 S.E.2d 604, 606 (1990).

[29] *Warner v. Kittle,* 167 W.Va. 719, 725, 280 S.E.2d 276, 280 (1981).

In *Realmark Developments, Inc. v. Ranson*[30]—the leading case on this issue—this Court explained that "[i]n determining whether an action is legal or equitable in nature, both the issues involved and the remedy sought are examined" and held that a "'right to trial by jury generally applies to an action for the recovery of money or damages, or a legal action for the recovery of money only, or an action in which only a money judgment is sought.'"[31] This Court then applied these principles in addressing whether a jury was required to decide an unjust enrichment claim seeking restitution. The circuit court had denied the request for a jury trial, concluding that the unjust enrichment claim was equitable in nature. This Court reversed, explaining that while the right to recover for unjust enrichment historically was based upon principles of equity, the *Realmark* plaintiff sought a monetary recovery, which is a legal remedy creating a right to a jury trial—and what matters is not a plaintiff's characterization of its case, but the remedy actually sought.[32] As this Court explained:

> Clearly, the right to recover for unjust enrichment is based on the principles of equity. However, *the remedy sought in this case is a money judgment and, thus, is governed by law.* In other words, unjust enrichment . . . is but the equitable *reason* for requiring payment for value of goods and services received.
>
> * * *
>
> Accordingly, we now hold that *a suit seeking monetary recovery* under a theory of unjust enrichment is an action at law and therefore, can be tried before a jury.[33]

---

[30] 214 W.Va. at 161, 588 S.E.2d at 150.

[31] *Id.* at 164, 588 S.E.2d at 153.

[32] *See id.* ("By contrast, a 'right to trial by jury generally applies to an action for the recovery of money or damages, or a legal action for the recovery of money only, or an action in which only a money judgment is sought.'" (quoting 50A C.J.S. *Juries* § 50 (1997)).

[33] *Id.* at 164–65, 588 S.E.2d at 153–54 (emphasis added); *see also id.* at syl. pt. 1 ("A suit seeking monetary recovery under a theory of unjust enrichment is an action at law and therefore, can be tried before a jury.").

*Realmark's* directive thus is clear—the right to a jury trial exists where the plaintiffs seek monetary recovery, even if labelled as equitable relief.

This Court consistently has adhered to this directive and found that a jury trial right exists on "equitable" claims seeking monetary recovery. In *Thompson v. Town of Alderson,*[34] for example, this Court cited *Realmark* and reaffirmed the principle that a jury trial right exists when the relief sought is a monetary recovery, regardless of whether the underlying claim was one historically in equity. This Court stated, "Where relief to be awarded is money damages, even though the underlying claim is historically one in equity, then the ordinary characterization of the monetary award is as a legal remedy, to which the right to trial by jury attaches."[35]

Cases involving a cause of action based on fraud also illustrate *Realmark's* directive that "[i]n determining whether an action is legal or equitable in nature, both the issues involved ***and the remedy sought*** are examined."[36] As this Court has explained, while it is sometimes said that "[f]raud constitutes a distinct ground of equity jurisdiction,"[37] "the statement of this principle is often made without limitation, but it has its limitations nevertheless."[38] In other words, a court's determination of whether a claim is considered equitable or legal cannot be divorced from an examination of the remedy actually sought. Otherwise, a plaintiff always could circumvent a defendant's right to a jury trial through artful pleading. In *Jackson v. Stockert,*[39] for example, the plaintiff, who had purchased shares of stock, brought suit to rescind the sale, alleging he was

---

[34] 215 W.Va. 578, 600 S.E.2d 290 (2004).

[35] *Id.* at 581 n.5, 600 S.E.2d at 293 n.5.

[36] *Realmark*, 214 W.Va. at 164, 588 S.E.2d at 153 (emphasis added).

[37] *Mankin v. Davis*, 82 W.Va. 757, 760, 97 S.E. 296, 298 (1918).

[38] *Swarthmore Lumber Co. v. Parks*, 72 W.Va. 625, 628, 79 S.E. 723, 724 (1913).

[39] 75 W.Va. 482, 84 S.E. 919 (1915).

fraudulently induced to buy the stock. This Court held that "[e]quity has jurisdiction to cancel a sale of shares of stock in a corporation fraudulently procured."[40] And, as this Court went on to say, "equity jurisdiction exists in all cases where fraud is properly charged as the grounds for relief, is too well established to require argument, or citation of authorities."[41] This statement could lead one to conclude that any case alleging fraud, regardless of the nature of the remedy sought, is equitable. Not so—as this Court made clear six years later, in *Wilt v. Crim*.[42]

In *Wilt*, the plaintiffs alleged they were induced to buy stock in a corporation based upon the defendant's fraudulent representations.[43] The plaintiffs, however, did not ask that the contract be canceled, but instead for a decree against the defendant for the amount the plaintiffs paid for the stock they purchased.[44] The plaintiffs relied on *Jackson* to argue that their claim was equitable.[45] This Court disagreed—concluding that *Jackson* had little to no application because the plaintiff in *Jackson* sought to cancel the contract because of fraud,[46] but the plaintiffs in *Wilt* sought and were awarded a decree for the payment of money due to the defendant's conduct.[47] As such, this Court held the claim was not equitable and a right to a jury trial existed.[48] The same is true here.

---

[40] *Id.* at syl. pt. 1.

[41] *Id.* at 919.

[42] 87 W.Va. 626, 105 S.E.812 (1921).

[43] *Id.* at 813.

[44] *Id.*

[45] *Id.* at 814.

[46] *Id.*

[47] *Id.* at 814.

[48] *See id.* ("We are clearly of the opinion in this case that there is no jurisdiction in equity to afford plaintiffs any relief. The various questions of controversy between the parties are peculiarly ones to be passed upon by a jury.").

Federal court decisions align with *Realmark* and *Wilt*, holding as a general rule that claims seeking a monetary recovery—no matter the label the plaintiff might affix to its remedy—arise at law, not in equity. The United States Supreme Court's decision in *Granfinanciera, S.A. v. Nordberg* illustrates this. There, the Court stated that "any distinction that might exist between 'damages' and monetary relief under a different label is purely semantic."[49] The Court's later decision in *Great-West Life & Annuity Insurance Co. v. Knudson*[50] underscored this point:

> Almost invariably . . . **suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages**, as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.[51]

That case involved an action for specific performance of a reimbursement provision of an Employee Retirement Income Security Act ("ERISA") plan, and to compel the plan beneficiary who had recovered from a third-party tortfeasor to make restitution to the plan for benefits that it had paid.[52] The question was whether the ERISA provision authorizing plan participants and fiduciaries to bring civil actions to obtain "appropriate equitable relief" authorized the suit—that is, whether the relief sought was legal or equitable. The Court first recognized, as did this Court in *Realmark*, that "whether it is legal or equitable depends on the basis for the plaintiff's claim and

---

[49] 492 U.S. 33, 49 n.7 (1989).

[50] 534 U.S. 204 (2002).

[51] *Id.* at 210 (emphasis added) (quoting *Bowen v. Massachusetts,* 487 U.S. 879, 918–19 (1988) (Scalia, J., dissenting)); *see also Montanile v. Bd. of Trs. of Nat. Elevator Indus. Health Benefit Plan,* 136 S. Ct. 651, 658–59 (2016) ("Equitable remedies 'are, as a general rule, directed against some specific thing; they give or enforce a right to or over some particular thing ... rather than a right to recover a sum of money generally out of defendant's assets.' ") (citation omitted)); *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 255 (1993) ("Money damages are, of course, the classic form of *legal* relief.") (emphasis in original).

[52] *Id.* at 207-08.

the nature of the underlying remedies sought."[53]   Restitution, the Supreme Court explained, involves situations "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession."[54] "Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."[55]   In contrast, when the plaintiff seeks to impose personal liability for the payment of money that did not belong to the plaintiff, the claim is legal.[56]

Both the New York state court and the federal MDL court presiding over public nuisance claims seeking monetary "abatement" have adhered to these principles and concluded that defendants have a jury trial right.  For example, the judge presiding over actions in New York concluded that a jury trial right existed in a phase 1 public nuisance liability trial there because, as here:

---

[53] *Id.* at 213 (internal quotations and citation omitted).

[54] *Id.* (citation omitted).

[55] *Id.* at 214.

[56] *See id.* ("The kind of restitution that petitioners seek, therefore, is not equitable—the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that they conferred upon respondents."). After *Great-West Life*, the Court again addressed the issue of whether the ERISA fiduciary's suit was seeking equitable relief in *Sereboff v. Mid Atlantic Medical Services, Inc.,* 547 U.S. 356 (2006). In that case, the fiduciary sought reimbursement from the beneficiary's third-party settlement. In holding the relief was equitable, the Court distinguished *Great-West Life*. As the Court explained, the relief sought in *Great-West Life* was legal because the fiduciary was seeking to impose a personal liability on the beneficiary for the payment of money from his general assets. *See Sereboff,* 547 U.S. at 362-64. By contrast, in *Sereboff,* "[the fiduciary] alleged breach of contract and sought money, to be sure, but it sought its recovery through a constructive trust or equitable lien on a specifically identified fund, not from the Sereboffs' assets generally . . . ." *Id.* at 363; *see also Turner ex rel. Turner v. Turner,* 223 W.Va. 106, 115, 672 S.E.2d 242, 251 (2008) ("In contrast to *Great–West,* the fiduciary in *Sereboff* sought specifically identifiable funds that were in the possession and control of the beneficiaries-the portion of the settlement proceeds collected from the tortfeasors-in contrast to the beneficiaries' general assets. Therefore, the Court in *Sereboff* concluded that the relief sought by the fiduciary was equitable in nature."). This is not a case where Plaintiffs are seeking to recover through a constructive trust or lien upon a specifically identifiable fund as in *Sereboff*. Like in *Great-West Life*, Plaintiffs seek to impose a personal monetary judgment upon Defendants' payable from their general assets.

> [t]he gravamen of the remedies sought in Plaintiffs' claims for
> public nuisance is for money, however denominated. Plaintiffs do
> not seek to abate the alleged nuisance by barring Defendants from
> manufacturing, distributing, or dispensing prescription opioids.
> They seek money, whether it is for out-of-pocket expenses or
> abatement.[57]

Similarly, in the federal MDL, the court ruled that the parties had a jury trial right in a phase 1 public nuisance liability trial because:

> historically, nuisance actions had a legal component. … Treatises
> of the time instructed that 'the question of nuisance or not must, in
> cases of doubt, be tried by a jury.' See 2 Joseph Story,
> *Commentaries on Equity Jurisprudence, as Administered in
> England and America* § 923, at 203 (1st ed. 1836). Moreover, to the
> extent there is reasonable doubt regarding whether nuisance liability
> is an issue for a jury or for the Court, case law counsels in favor of
> permitting a jury trial.[58]

A straightforward application of these settled legal principles to Plaintiffs' public nuisance claims points in one direction only—those claims arise at law and thus a jury trial right exists. Indeed, Plaintiffs readily admit their public nuisance claims seek to impose a personal liability on Defendants for the payment of money. As Plaintiffs themselves have stated, they are "seeking ***monetary damages*** for abatement." JA000376 (emphasis added).[59] Yet, making no effort to account for Plaintiffs' statements or controlling authority, the Panel concluded that Plaintiffs' public nuisance claims were equitable, and thus denied Defendants' right to a jury trial out of hand. In doing so, the Panel ignored *Realmark's* directive and failed to examine "both the issues involved

---

[57] JA000831.

[58] JA000836. The District Court of Cleveland County, Oklahoma concluded that the State of Oklahoma's public nuisance claim could be tried by the court, but did so in a one-page, handwritten order that contained no analysis or reference to any authority. JA000843.

[59] *See also* JA000376 ("The County Plaintiffs are seeking monetary relief for the 'elimination of hazards to public health and safety and to abate or cause to be abated . . . a public nuisance.'").

*and the remedy sought.*"[60]   This is exactly the type of superficial analysis this Court rejected in *Realmark*, as well as cases decided long before *Realmark* such as *Wilt*.

Instead of adhering to *Realmark*, the Panel tried to support its holding based on a statement from the 1900 decision in *Town of Weston v. Ralston*[61] that "[c]ourts of equity have an ancient and unquestionable jurisdiction to prevent or abate public nuisance."  JA000389.  But that does not justify the Panel's decision to deprive Defendants of their constitutional jury trial right.  As explained, a court must look at the remedy actually sought, no matter the characterization of the underlying claim—just like this Court did in *Realmark* and *Wilt* and the United States Supreme Court did in *Great-West Life*.

Indeed, this Court's precedents show that broad statements like the one in *Ralston* relied upon by the Panel provide no basis to deny a jury trial right.  When it comes to fraud claims, for instance, the same type of broad statement can be found in older, pre-merger case law such as *Jackson*, where this Court stated "[t]hat equity jurisdiction exists in all cases where fraud is properly charged as the grounds for relief, is too well established to require argument, or citation of authorities."[62]  Yet, this Court recognized that although "the statement of this principle is often made without limitation . . . it has its limitations nevertheless."[63]  In other words, not all fraud claims are equitable.  Those that seek to impose personal liability for the affirmative payment of money are legal.[64]  To be sure, one can find statements in older case law that "[c]ourts of equity have an ancient and unquestionable jurisdiction to prevent or abate public nuisance."  JA000389.

---

[60] *Realmark*, 214 W.Va. at 164, 588 S.E.2d at 153 (emphasis added).

[61] 48 W.Va. 170, 36 S.E. 446 (1900).

[62] 75 W.Va. 482, 84 S.E. at 919.

[63] *Swarthmore Lumber Co. v. Parks*, 72 W.Va. 625, 628, 79 S.E. 723, 724 (1913).

[64] *See Wilt*, 87 W.Va. at 626, 105 S.E. at 814.

But those cases make clear that as an equitable remedy, abatement always has been associated with one thing in West Virginia and elsewhere—the issuance of an ***injunction*** to halt the offending conduct.[65]  But, in accordance with West Virginia controlling law, when the "abatement" sought is the imposition of personal liability for the payment of a monetary award,[66] abatement is a legal remedy to which a right to a jury trial exists.[67]

Not surprisingly, the Panel did not cite any West Virginia authority holding that a claim is equitable where the remedy the plaintiff sought under an "abatement" label actually took the form of affirmative monetary relief.[68]  Nor could it. As this Court held in *Realmark*, "the remedy sought

---

[65] *See, e.g.*, 66 C.J.S. Nuisances § 149 ("A nuisance abatement action is an equitable action arising from the state's police power in which injunctive relief is sought, and it is governed by the same equitable principles that apply to injunctive actions generally. Likewise, the granting of an injunction to abate a nuisance is an equitable remedy."); Dobbs, *Handbook On the Law of Remedies* at 2 (1973) ("The injunction is a personal command to the defendant to act or to avoid acting in a certain way."); Prosser and Keeton, *The Law of Torts*, 631 (referring to the "fundamental distinction between entitlement to damages and entitlement to abatement of the nuisance"); *Burch v. Nedpower Mount Storm, LLC*, 220 W.Va. 443, 456-58, 647 S.E.2d 879, 892–94 (2007) (using abatement and injunctive relief interchangeably, and holding that "an unsightly activity may be abated when it occurs in a residential area and is accompanied by other nuisances"); *Duff v. Morgantown Energy Assocs.*, 187 W.Va. 712, 716, 421 S.E.2d 253, 257 (1992) ("While courts generally grant injunctions to abate existing nuisances, there is also authority for courts to enjoin prospective or anticipatory nuisances."); *Mahoney v. Walter*, 157 W.Va. 882, 305 S.E.2d 692 (1974) (holding that an automobile salvage yard was a nuisance that could be abated by injunction); *Martin v. Williams*, 141 W.Va. 595, 605, 93 S.E.2d 835, 841 (1956) ("Mandatory injunctions are awarded for the abatement of nuisances more frequently than for any other purposes."); syl. pt. 5, *State v. Navy*, 123 W.Va. 722, 17 S.E.2d 626 (1941) ("A bawdy house is a public nuisance *per se* that may be abated by injunction.").

[66] *See Mertens v. Hewitt Associates*, 508 U.S. 248, 255 (1993) ("Money damages are, of course, the classic form of *legal* relief.") (emphasis in original).

[67] The Panel's Order states, "Defendants also incorrectly contend that abatement is limited to injunctive relief."  JA000827.  This misstates Defendants' argument.  Defendants never took the position that an abatement remedy never can include the recovery of money.  The point instead is that when abatement is referred to as an equitable remedy, it is associated with the issuance of an injunction.  In contrast, where an abatement remedy seeks to impose personal liability on the defendant for the payment of money, this constitutes legal, not equitable relief, as *Realmark* and *Great-West Life* hold.  Just as restitution can be classified as equitable or legal relief depending upon the nature of the relief sought, there is no logical reason an abatement remedy should be treated any different.

[68] The Panel's Order cites *Witteried v. City of Charles Town*, No. 17-0310, 2018 WL 2175820 (W.Va. May 11, 2018) (Mem. Dec.), as support for the conclusion that there is no right to a jury trial on Plaintiffs' public nuisance claims.  JA000394-395.  However, the principle for which the Panel cites *Witteried* has no

in this case is a money judgment and, thus, is governed by law."[69]  This case is no different and the Panel's denial of Defendants' fundamental right to a jury trial must be corrected through prohibition.

The Panel also invokes the 1921 case of *McMechen v. Hitchman-Glendale Consolidated Coal Co.*[70] to justify its denial of Defendants' jury trial rights.  According to the Panel, Plaintiffs' public nuisance claims are equitable, and thus Defendants are not entitled to a trial by jury, because any monetary relief here would be "merely incidental to the exercise of the [equitable] jurisdiction to abate the nuisance."  JA000390.  The Panel's reliance on *McMechen* is misplaced.

*McMechen* is a relic of the pre-merger era.  And as the United States Supreme Court and multiple other courts have long noted, pre-merger cases are of little probative value on both the general question of whether a cause of action is equitable or legal for jury trial right purposes and the specific question of whether a jury trial right may be lost simply because the plaintiff (or the

---

relevance here.  In *Witteried*, the city brought suit seeking permanent injunctive relief.  The petitioner argued that before the circuit court could order injunctive relief as to alleged nuisance on the petitioners' property, a jury had to find that a nuisance exists. 2018 W 2175820 at *5.  The Court rejected the argument, finding that because the suit for a permanent injunction sought only equitable relief, the circuit court did not err in denying petitioner a jury trial on the suit.  *Id*.  *Witteried*, in fact, illustrates Defendants' point and supports their argument—as an equitable remedy, abatement is associated with issuance of an **injunction** to halt the offending conduct.  *Witteried* does not stand for the proposition that an affirmative monetary award for abatement is an equitable, not a legal, remedy.

The Panel Order also cites an opinion in the federal opioid MDL in which the court stated that "[u]nlike tort damages that compensate an injured party for past harm, abatement is equitable in nature and provides a prospective remedy that compensates a plaintiff for the costs of rectifying the nuisance."  JA000390 (quoting *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 4194272, at *3 (N.D. Ohio Sept. 4, 2019)).  The Panel's reliance on that order is misplaced.  First, that order did not address whether a jury trial was required—instead, it was addressing whether joint and several liability could be imposed with respect to the plaintiffs' public nuisance claim seeking abatement under Ohio law. 2019 WL 4194272, at *3.  Second, when the MDL court actually confronted the jury trial issue, it ruled that Defendants **did have** a right to a jury trial on public nuisance liability.  *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, Opinion and Order Regarding Adjudication of Plaintiffs' Public Nuisance Claims, Docket No. 2629.

[69] 214 W.Va. at 164, 588 S.E.2d at 153.

[70] 88 W.Va. 633, 107 S.E. 480 (1921).

court) deems the monetary relief sought incidental.  The canonical example is *Dairy Queen, Inc. v. Wood*,[71] in which the United States Supreme Court summarily disposed of the argument that a right to a jury trial is lost because legal issues are merely incidental to those characterized as equitable:

> At the outset, we may dispose of one of the grounds upon which the trial court acted in striking the demand for trial by jury—that based upon the view that the right to trial by jury may be lost as to legal issues where those issues are characterized as 'incidental' to equitable issues—for our previous decisions make it plain that no such rule may be applied in the federal courts.[72]

This Court's caselaw is entirely in accord.  For instance, in *Bishop Coal Co. v. Salyers*,[73] this Court cited the United States Supreme Court's holdings in *Dairy Queen* and *Beacon Theatres, Inc. v. Westover*, in which that Court held that "only under the most imperative circumstances, circumstances which in view of the flexible procedures of the Federal Rules we cannot now anticipate, can the right to a jury trial of legal issues be lost through prior determination of equitable claims,"[74] as support for an expansive view of the right to a jury trial after the merger of law and equity:

> The seventh amendment of the *U.S. Constitution* is not applicable to the states.  However, the interpretation of that amendment by the U.S. Supreme Court can certainly inform our understanding of our similar state jury trial guarantee.
>
> Both the federal and state constitutional jury trial provisions grant the right to a jury trial 'in suits at common law.' Suits in equity were tried without juries. After the merger of law and equity (in 1938 in the federal courts), many cases contain both legal and equitable elements, usually in the form of the action or the relief sought. Under

---

[71] 369 U.S. 469 (1962).

[72] *Id*. at 470.

[73] 181 W.Va. 71, 77, 380 S.E.2d 238 (1989).

[74] 359 U.S. 500, 510-11 (1959).

the circumstances, the Supreme Court has given an expansive reading of the seventh amendment.[75]

Moreover, *McMechen* simply cannot be squared with this Court's more recent holding in *Realmark*, where it plainly held a right to a jury trial exists if the plaintiff seeks monetary recovery, even if the plaintiff invokes an equitable label or contends the money judgment it seeks is incidental to equitable issues.[76] *Realmark* did not hold that the claim seeking monetary relief can be tried without a jury if it is labeled as incidental to the equitable cause of action.

It held ***exactly the opposite***. And that forecloses the Panel's holding. After all, the monetary relief sought here is anything but incidental. Plaintiffs have made clear that monetary relief is the primary, ***if not exclusive***, remedy they seek.[77] There is simply no way to reconcile the reality of the relief Plaintiffs seek here and the Panel's denial of Defendants' right to a jury trial with *Realmark* and its progeny.

**B.** **Even Assuming, *Arguendo*, Plaintiffs' Public Nuisance Claims Seek Equitable Relief, the Panel's Order Still Violates Defendants' Right to a Jury Trial by Failing to First Submit Related Legal Claims to a Jury.**

Even setting aside whether Defendants have a right to a jury trial on Plaintiffs' public nuisance claims (which they do), the Panel's trial plan still contravenes West Virginia law. Plaintiffs have other pending legal claims, and Defendants unquestionably retain the right to have a jury trial on the factual and legal issues that are common to all pending claims. Convening a non-jury trial on liability for public nuisance before those issues are tried will impair the jury trial right that indisputably exists as to those intertwined claims.

---

[75] 181 W.Va. at 76-77, 380 S.E.2d at 243-44 (citations omitted).

[76] *Realmark*, 214 W.Va. at 164-65, 588 S.E.2d at 153-54.

[77] *See* note 6, supra.

As this Court explained in *West Virginia Human Rights Commission v. Tenpin Lounge, Inc.*, "the ***usual practice*** is to try the legal issues to the jury and to try the equitable issues to the court.  Where there are some issues common to both the legal and equitable claims, ***the order of trial must be such that the jury first determines the common issues***.  The court may, if it chooses, submit all the issues to the jury."[78]  Similarly, in *Camden-Clark Memorial Hospital Corp. v. Turner*,[79] this Court cited the United States Supreme Court's opinion in *Beacon Theatres* for the principle that "[i]f a civil action contains both a request for injunctive relief and a legal claim that would ordinarily be tried before a jury, a court must allow a jury to hear the legal claim before ruling on the question of permanent injunctive relief."[80]

Thus, even if the relief Plaintiffs seek on their public nuisance claims is equitable (it is not), the Panel nonetheless must first submit to a jury any common factual issues.  As just one example, the facts and considerations relevant to causation are the same for Plaintiffs' negligence and public nuisance claims.  Plaintiffs will have to show that Defendants' marketing and distribution actually and proximately caused the financial harms they allege.  But under the Panel's trial plan, the trial court will decide each of these issues in the first instance.  But resolving the public nuisance claim through a bench trial conducted first would deny Defendants the right to a trial by jury on common issues with respect to Plaintiffs' legal claims.[81]  That is clear legal error under settled West Virginia law.

---

[78] 158 W. Va. 349, 354, 211 S.E.2d 349, 354–55 (1975) (emphasis added) (citing 3B Fed. Prac. and Proc. § 873 (4th ed.)).

[79] 212 W.Va. 752, 575 S.E.2d 362 (2002).

[80] *Id.* at syl. pt. 6.

[81] Indeed, the presence of overlapping and common issues between the plaintiffs' legal claims and their public nuisance claims was one of the reasons the federal MDL court held that a jury trial was required on public nuisance liability:

It is axiomatic that prohibition is appropriate to avoid needlessly spending the court's and parties' resources when a court exceeds its legitimate powers.[82] That is the case here: Because "impaneling of a jury to try the issue is a jurisdictional requirement," prohibition is the appropriate remedy for the Panel's refusal to grant Defendants a jury trial.[83]  Without a writ, the parties would have to re-litigate this matter following the ultimate reversal on appeal.[84]  That is costly, inefficient, unnecessary, and easily avoided.  To avoid wasting the parties' and Panel's resources, and correct a clear error of law, this Court should issue a writ of prohibition now.

## II.    THE PANEL COMMITTED CLEAR LEGAL ERROR WHEN IT HELD THE MONETARY RELIEF SOUGHT ON PLAINTIFFS' PUBLIC NUISANCE CLAIMS IS EQUITABLE AND DOES NOT CONSTITUTE "DAMAGES" UNDER THE 2015 ACT.

The Panel committed another legal error when it struck Defendants' notices of non-party fault.  That ruling—like the denial of Defendants' jury trial right—was based on the Panel's conclusion that Plaintiffs' public nuisance claims seek equitable relief and thus do not demand damages within the meaning of the 2015 Act.  The Panel was wrong.

---

In the first bellwether trial, the great majority of facts the jury will need to find to decide plaintiffs' legal claims . . . are the same as those any finder of fact would have to determine to decide the nuisance claims.  For example: (i) facts regarding the existence of conditions that generated the alleged extraordinary municipal costs . . . are also relevant to determining the conditions constituting the alleged nuisance; (ii) facts relating to alleged intentional or unlawful conduct resulting in liability under the legal claims also inform the decision as to whether that conduct unreasonably interferes with a commonly-held public right; and (iii) determining whether a causal link is established between the alleged conduct and injury will involve facts common to all of plaintiffs' claims.

JA000837-838.

[82] *State ex rel. West Virginia Truck Stops, Inc. v. McHugh,* 160 W.Va. 294, 233 S.E.2d 729, syl. pt. 2 (1977).

[83] Syl. pt. 3, *Matheny v. Greider*, 115 W.Va. 763, 177 S.E. 769 (1934).

[84] *Id.*

Through the passage of the 2015 Act, the Legislature intended "to fully occupy the field of comparative fault and the consideration of the fault of parties and nonparties to a civil action."[85] The statutory language is undeniably broad, stating that "the liability of each person" is to be apportioned "[i]n any action based on tort or any other legal theory seeking damages[.]"[86] Non-parties must be included in the allocation of fault.[87] The 2015 Act defines the term "compensatory damages" broadly as "damages awarded to compensate a plaintiff for economic and noneconomic loss."[88]

### A.   The Panel's Clear Error is Derivative of Its Erroneous Jury Trial Decision.

The Panel's decision to strike Defendants' notices of non-party fault as to the public nuisance claims is based on the same erroneous conclusion the Panel used to deny Defendants' right to a jury trial—that Plaintiffs' public nuisance claims seek equitable relief.  In its order on the notices of non-party fault, the Panel first pointed to its earlier ruling that Plaintiffs' public nuisance claims seek equitable relief, stating:  "As previously determined by the Panel, the Phase I non-jury trial of Defendants' liability for public nuisance is an equitable matter."  JA000822. Exacerbating that erroneous ruling, the Panel went on to hold that because the 2015 Act did not define "damages" to include equitable relief, the 2015 Act did not apply to Plaintiffs' public nuisance claims.  JA000822-829.

---

[85] *Modular Bldg. Consultants of West Virginia, Inc. v. Poerio, Inc.*, 235 W. Va. 474, 486 n.12, 774 S.E.2d 555, 567 n.12 (2015).

[86] W.Va. Code § 55-7-13a(b); *see also Clovis v. J.B. Hunt Transport, Inc.*, No. 1:18-cv-147, 2019 WL 4580045, at *3 n.4 (N.D.W. Va. Sept. 20, 2019) (referring to the 2015 Act as "sweeping statutory provisions").

[87] W.Va. Code § 55-7-13d(a)(1) ("In assessing percentages of fault, the trier of fact shall consider the fault of all persons who contributed to the alleged damages regardless of whether the person was or could have been named as a party to the suit.").

[88] *Id.* § 55-7-13b.

Thus, there can be no dispute that if the Panel erred in denying Defendants' right to a jury trial because the relief sought on Plaintiffs' public nuisance claims is legal, not equitable—which it did—then the Panel's ruling that the 2015 Act is inapplicable is necessarily also erroneous. There is no manner by which the monetary award sought could constitute legal relief to which the right to a jury trial attaches, but not constitute "damages" to which the 2015 Act applies.

**B.      The Panel's Order Misinterprets West Virginia Law.**

While the same analysis and authorities set forth above showing the Panel's clear error in denying Defendants' their right to a jury trial also demonstrate the Panel's clear legal error in striking Defendants' notices of non-party fault, a few additional points must be made.

First, in holding that the relief sought on Plaintiffs' public nuisance claims does not constitute "damages," the Panel not only failed to address or even mention *Realmark*, but it also misinterpreted outdated and off-point West Virginia case law. The Panel's Order contorted the meaning and expanded the reach of a discrete passage in *McMechen*[89] regarding obsolete distinctions between courts of law and courts of equity to stand for the proposition that "[a]s early as 1936, the Supreme Court of Appeals recognized that defendants who were concurrently at fault in creating a nuisance were subject to joint liability." JA000824. The Panel's Order quotes *McMechen* as follows:

> Upon the state of facts here disclosed, the law courts could only give damages for the wrong, and, if the defendants are not jointly liable, they could not be jointly sued at law. *Farley v. Crystal Coal & Coke Co.*, cited. Their creation or maintenance of nuisances, or both, is an entirely different thing …. Although brought into existence or maintained by the separate acts of a number of persons, a nuisance, considered in all of its aspects and elements, may be an entire thing. Limited in its functions to a mere matter of compensation for damages, a court of law could not, under all circumstances, treat it

---

[89] 88 W. Va. at 633, 107 S.E. at 480.

as an entirety, but a court of equity can do so, because of its more
extensive remedial powers.

JA000824. But in reproducing the passage it relied on for support, the Panel's Order omitted the

critically important language emphasized below. What the Court said in *McMechen*, quoted in

full is:

> Upon the state of facts here disclosed, the law courts could only give
> damages for the wrong, and, if the defendants are not jointly liable, they
> could not be jointly sued at law. *Farley v. Crystal Coal & Coke Co.*, cited.
> Their creation or maintenance of nuisances, or both, is an entirely different
> thing. ***As to that, they could be sued in equity before any damage had***
> ***occurred. They could be enjoined by way of prevention of the***
> ***contemplated injury.*** Although brought into existence or maintained by the
> separate acts of a number of persons, a nuisance, considered in all of its
> aspects and elements, may be an entire thing. Limited in its functions to a
> mere matter of compensation for damages, a court of law could not, under
> all circumstances, treat it as an entirety, but a court of equity can do so,
> because of its more extensive remedial powers. [90]

A look at what *McMechen* actually said—and in full—makes clear that this Court was referring

to the different rules governing joinder between courts of law and those of equity. This Court

had held in *Farley v. Crystal Coal & Coke Co.*[91] that in an action at law, "[f]ailure of a declaration

against several tort–feasors, joined in one action, to show any ground of joint liability, is good

cause of demurrer thereto for misjoinder of parties."[92]  *McMechen*'s citation to *Farley* for this

proposition makes plain that this Court in *McMechen* was simply saying this rule does not apply

in a court of equity when granting injunctive relief to enjoin a prospective nuisance. It was not

creating a special rule of joint liability for nuisance or otherwise singling it out as different from

any other tort.

---

[90] *McMechen*, 88 W. Va. 633, 107 S.E. at 483).

[91] 85 W. Va. 595, 102 S. E. 265 (1920).

[92] *Id.* at syl. pt. 5.

The Panel's Order also cites *State ex rel. Ball v. Cummings*[93] as an example of a decision that distinguishes between a claim for money damages and one seeking abatement of pollution. JA000823. It does not. The actual issue in *Cummings* was whether Rule 24 authorized landowners adjacent to a facility to intervene in the DEP's Water Pollution Control Act enforcement action against the facility. And, the "abatement" at issue in *Cummings* was an injunction, not the payment of money that Plaintiffs seek here.[94]

### C.   The Panel's Order Misinterprets Federal and Out-of-State Authorities.

In holding that the monetary recovery Plaintiffs seek does not constitute "damages," the Panel also misinterpreted federal and other states' case law. For example, the Panel's Order relies on the United States Supreme Court's decision *Bowen v. Massachusetts*[95] in support of its decision. It does not. *Bowen* addressed whether a federal district court had jurisdiction to review a final order of the Secretary of Health and Human Services ("HHS") disallowing reimbursement to Massachusetts for a category of expenditures under its Medicaid program.[96] Specifically, Section 702 of the Administrative Procedures Act authorized judicial review of agency actions "seeking relief other than money damages."[97] The Secretary of the HHS contended the action sought money damages and therefore jurisdiction lied exclusively in the United States Claims Court.[98] The Court held that judicial review was not foreclosed for two reasons. "First, insofar as the complaints

---

[93] 208 W.Va. 393, 540 S.E.2d 917(1999).

[94] *See Cummings*, 208 W.Va. at 400, 540 S.E.2d at 924 ("The DEP enforcement action was brought to seek *injunctive relief* and the imposition of civil penalties for discharges of pollutants into the Indian Fork which traverses the petitioners' property . . . Absent the DEP enforcement action, the petitioners could have filed an action under the federal WPPCA or an *injunction action to stop the discharges of pollutants* into the Indian Fork.") (emphasis added).

[95] 487 U.S. 879 (1988).

[96] *Id*. at 882.

[97] *Id*. at 891 (quoting 5 U.S.C. § 702).

[98] *Id*. at 890-91.

sought declaratory and injunctive relief, they were certainly not actions for money damages."[99]

Second, while the HHS Secretary's disallowance decision had monetary consequences, "[n]either

a disallowance decision, nor the reversal of a disallowance decision, [was] properly characterized

as an award of 'damages.'"[100]  The Court explained as follows:

> The first order . . . simply "reversed" the "decision of the
> Department Grant Appeals Board of the United States Department
> of Health and Human Services in Decision No. 438 (May 31,
> 1983)."  It is true that it describes Decision No. 438 as one that had
> disallowed reimbursement of $6,414,964 to the State, **but it did not
> order that amount to be paid, and it did not purport to be based on
> a finding that the Federal Government owed Massachusetts that
> amount, or indeed, any amount of money**.  Granted, the judgment
> tells the United States that it may not disallow the reimbursement on
> the grounds given, and thus it is likely that the Government will
> abide by this declaration and reimburse Massachusetts the requested
> sum.  But to the extent that the District Court's judgment engenders
> this result, **this outcome is a mere by-product of that court's
> primary function of reviewing the Secretary's interpretation of
> federal law**.[101]

Subsequently, and importantly, in *Great-West Life*,[102] discussed above, the Court revisited the

issue addressed in *Bowen*.  Citing Justice Scalia's dissent in *Bowen*, the Court held that the

plaintiff in *Great West* did not seek equitable relief because it was seeking to impose personal

monetary liability on the defendant.[103]

---

[99] *Id*. at 893.

[100] *Id*.

[101] *Id*. at 909-10 (emphasis added).

[102] 534 U.S. at 204.

[103] *Id*. at 210 ("Almost invariably, however, suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.") (quoting *Bowen*, 487 U.S. at 918-19 (Scalia, J., dissenting)).

The Panel's reliance upon *Bowen* was misplaced, as the relief sought here clearly falls within *Great-West Life's* holding. Through their public nuisance claims, Plaintiffs admittedly seek to impose a personal liability upon Defendants for the payment of money.

The Panel's Order also relies heavily upon the Third Circuit's opinion in *United States v. Price*[104] for the proposition that abatement is equitable. But *Price* does not provide support for the Panel's conclusion either, particularly in light of the Third Circuit's opinion in *Jaffee v. U.S.*[105] In *Jaffee*, the plaintiff sought an injunction compelling the government to provide future medical care and cancer treatment for individuals exposed to radiation during government nuclear testing. The Third Circuit held that the request seeking future medical care and treatment was a claim for money damages and the plaintiffs could not transform their case into an equitable action simply by asking for an injunction ordering the payment of money.[106] For these same reasons, Plaintiffs' request for money to pay for future treatment and opioid-related services—where Plaintiffs do not even pretend to be seeking an injunction—is a claim for money damages.

*Price* does not change that or contradict *Jaffee*. In that case, the plaintiff requested an injunction requiring the defendants to fund a diagnostic study of the threat to Atlantic City's public water supply posed by toxins emanating from a landfill. Although conducting the diagnostic study would cost money, the court held the relief was equitable. Yet, *Price* does not contradict *Jaffee*. Unlike *Jaffee*, where the plaintiff sought money to pay for future care necessitated by past injury,

---

[104]   688 F.2d 204 (3d Cir. 1982).

[105]   592 F.2d 712 (3d. Cir. 1979).

[106]   *Jaffee*, 592 F.2d at 715 ("We agree with the Government that the request for prompt medical examinations and all medical care and necessary treatment, in fact, is a claim for money damages. A plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money. Jaffee requests a traditional form of damages in tort compensation for medical expenses to be incurred in the future.") (citation omitted).

the purpose of the diagnostic study in *Price* was not to undo or redress past harm, but to prevent future harm.[107]  This case is like *Jaffee*, not *Price*.

The Panel's reliance on decisions from other states fares no better.  It stated that "[j]urisprudence from other jurisdictions similarly differentiates between compensatory damages and nuisance abatement, holding that the state statutes limiting the availability of the former . . . have no impact whatsoever on the availability of the latter remedy." JA000825.  That is wrong. In the cases the Panel cites for this proposition, as in *Cummings*, the "abatement" was in the form of an injunction, and when the claims sought monetary relief, the courts properly classified the suits as non-equitable.  For example, *Peterson v. Putnam County*[108] addressed whether the nuisance action against the county was one for damages subject to Tennessee's Governmental Tort Liability Act.  The court held that because the relief the plaintiffs sought for their nuisance claim was money and not an injunction, the claim was one seeking damages subject to the GTLA: "***The plaintiffs' common law nuisance cause of action seeks damages from the county.  Their petition does not seek injunctive relief or declaratory judgment***.  Thus, their nuisance remedy must have been brought under the provisions of the GTLA."[109]  Far from supporting Plaintiffs' position, *Peterson* undermines it.

The Panel's Order also relies heavily upon a decision of the California intermediate appellate court in *People v. ConAgra Grocery Products Co.*[110]  In that case, the court ordered payment of $1.15 billion dollars into a lead paint "abatement fund," while at the same time holding

---

[107]  *See* 688 F.2d at 212 ("A preliminary injunction designed to prevent an irreparable injury is conceptually distinct from a claim for damages.").

[108]  No. M2005-02222-COA-R3-CV, 2006 WL 3007516 (Tenn. Ct. App. Oct. 2006).

[109]  *Id.* at *12 (emphasis added).

[110]  17 Cal. App. 5th 51, 132, 227 Cal. Rptr. 499, 569 (Cal. Ct. App. 2017).

the defendants had no right to a jury trial because the "abatement" was equitable. That case, however, is an outlier; no court outside California has followed, or even cited, that portion of the opinion. And the California appellate court in *ConAgra*, of course did not consider West Virginia law.

That point aside, the court's rationale for the fund in *ConAgra* does not apply here. The "sole purpose" of an equitable remedy "is to eliminate the hazard that is causing prospective harm to the plaintiff."[111] The $1.15 billion fund in *ConAgra* served that purpose because its function was to pay for the removal of lead paint, the cause of prospective harm. Here, however, Plaintiffs do not seek a monetary award for any comparable purpose. Plaintiffs allege that Defendants caused or contributed to the nuisance by failing to report and halt shipment of suspicious pharmacy orders, but they do not seek one dollar for the prospective costs of reporting or halting shipment of such orders. "An equitable remedy," the *ConAgra* court said, "provides no compensation to a plaintiff for prior harm." *Id.* But Plaintiffs' so-called abatement remedy here would do just that; the greater part of the fund would pay for addiction treatment and related services for those personally injured by opioid abuse.

## D.     The Panel's Order Creates Arbitrary Distinctions Between Damages and Equitable Relief.

There are other profound flaws in the reasoning the Panel used to reach its conclusion. The Panel created arbitrary, unsupported distinctions between "damages" and equitable relief to justify its conclusion that a monetary abatement remedy does not constitute "damages." More specifically, the Panel drew a distinction between past and future expenditures. The Panel agreed that when a city or county seeks to recover amounts spent in the ***past*** in responding to a public

---

[111]  17 Cal. App. 5th at 132, 227 Cal. Rptr. at 569.

32

nuisance, it is seeking damages and thus would be subject to the 2015 Act.  JA000825-828.  Yet, according to the Panel, when a city or county seeks to recover for the *same* types of expenditures for the future, the relief sought is somehow transformed and does not constitutes "damages." JA000825-828.  That distinction has no basis in the law or logic.

Similarly, the Panel recognized that monetary relief "for injuries or losses, such as an individual's reduced future earnings due to opioid addiction or death, would be future compensatory damages."  JA000827.  But, inexplicably, the Panel suggests that a monetary award for an addict's future treatment does not constitute damages.  JA000827.  That is wrong as a matter of law.  West Virginia law is clear that payment for future treatment and services is a form of compensatory damages.[112]  Thus, the distinctions that the Panel draws in its Order are not supportable, and the test that it articulates cannot be sustained.

That holding is even more profoundly flawed because the Panel's conclusion does not follow from its premise.  Regardless of whether the substantial monetary relief Plaintiffs seek is considered equitable (it is not), longstanding West Virginia precedent is clear that equity follows the law when the Legislature has limited the availability of legal remedies.  In *Dunn v. Rockwell*,[113] for example, this Court reaffirmed a century of precedent holding that "[w]here there is concurrent jurisdiction in law and equity . . . equity will apply the statute of limitations as a bar to such claims,

---

[112] *See, e.g.*, syl. pt. 1, *Ellard v. Harvey*, 159 W.Va. 871, 231 S.E.2d 339 (1976) ("A plaintiff may recover the cost of reasonable and necessary future medical and hospital services and for future pain and suffering where the evidence shows it is reasonably certain that such future expenses will be incurred and are proximately related to the negligence of the defendant."); *Jenkins v. McCoy*, 35 F.3d 556 (4th Cir. 1994) (unpublished) (damages for necessary future psychological treatment); *Jaffee v. United States*, 592 F.2d 712, 715 (3d. Cir. 1979) ("We agree with the Government that the request for prompt medical examinations and all medical care and necessary treatment, in fact, is a claim for money damages.  *A plaintiff cannot transform a claim for damages into an equitable action by asking for an injunction that orders the payment of money.*  Jaffee requests a traditional form of damages in tort compensation for medical expenses to be incurred in the future." (citations omitted)).

[113] 225 W.Va. 43, 689 S.E.2d 255 (2009).

following the law, and will recognize and apply exceptions to the running of the statute."[114]   In other words, "if a particular cause of action sounds in both equity and law, then a trial court should apply a statute of limitation to that particular cause of action."[115]

As the Panel recognized, there is no dispute that public nuisance actions sound in both law and equity.  Just as a plaintiff cannot circumvent the Legislature's limitation on the time to bring such a claim by pursuing only the equitable relief available, Plaintiffs cannot end run the Legislature's limitation on apportionment rules by styling the money they seek as equitable rather than "damages."  That is particularly true here, where Plaintiffs try to resort to equity to achieve a fundamentally inequitable result—punitive rules disallowing apportionment in cases involving a societal problem with a myriad of causes—when the Legislature has made the judgment that those punitive rules should be relaxed.  Accordingly, while the Panel's holding that Plaintiffs are not seeking damages was wrong, the non-party fault statute applies to Plaintiffs' public nuisance claim no matter how that dispute is resolved based on the long-settled principle that equity follows the law.

The Panel thus committed clear and substantial legal error when it held the monetary relief sought on Plaintiffs' public nuisance claims does not constitute damages under the 2015 Act and struck Defendants' notices of non-party fault.

## CONCLUSION

If not addressed through prohibition, the Panel's errors in denying Defendants' right to a jury trial and striking their notices of non-party fault would require complete reversal on appeal and an entirely new trial.  The parties should not be "compelled to go through an expensive,

---

[114] *Id.* at 55, 689 S.E.2d at 267 (quoting *Bennett v. Bennett*, 92 W.Va. 391, 115 S.E. 436 (1922)).

[115] *Id.*

complex trial and appeal from a final judgment"[116] when the issues presented are fundamentally important legal issues "which may be resolved independently of any disputed facts."[117] Prohibition is the only adequate means of relief, and Defendants respectfully move this Honorable Court to grant this Petition for a Writ of Prohibition, and issue a writ ordering the Mass Litigation Panel to grant Defendants' a jury trial with respect to Plaintiffs' public nuisance claims and reversing the Panel's Order Regarding Plaintiffs' Motion to Strike Defendants' Notices of Non-Party Fault.


_Albert F. Sebok_

Albert F. Sebok (WVSB#4722)
Gretchen M. Callas (WVSB#7136)
Candice M. Harlow (WVSB#12496)
JACKSON KELLY PLLC
500 Lee Street, East, Suite 1600
P.O. Box 553
Charleston, WV 25322
Telephone: (304) 340-1000
Facsimile: (304) 340-1130
asebok@jacksonkelly.com
gcallas@jacksonkelly.com
charlow@jacksonkelly.com
**_Counsel for AmerisourceBergen Drug Corporation_**

---

[116] *State ex rel. Frazier*, 203 W.Va. at 658, 510 S.E.2d at 492.

[117] Syl. pt. 1, *Hinkle,* 164 W.Va. at 112, 262 S.E.2d at 744.

*Todd A. Mount by AJS by permission*

Todd A. Mount (WVSB#6939)
SHAFFER & SHAFFER, PLLC
P.O. Box 38
Madison, WV 25130
Telephone: (304) 369-0511
Facsimile: (304) 369-5431
tmount@shafferlaw.net
***Counsel for AmerisourceBergen Drug Corporation***
***in actions filed by Ohio County Commission (Civil Action No. 17-***
***C-253), Pleasants County Commission (Civil Action No. 19-C-105),***
***WVU Hospitals, Inc., (Civil Action Nos. 19-C-69 through 19-C-88***
***and 19-C-134 through 19-C-139), City of Nitro (Civil Action No.***
***19-C-260), City of South Charleston (Civil Action No. 19-C-262),***
***City of White Sulphur Springs (Civil Action No. 19-C-263)***


*Michael W. Carey by AJS by permission*

Michael W. Carey (WVSB#635)
Steven R. Ruby (WVSB#10752)
Raymond S. Franks II (WVSB#6523)
David R. Pogue (WVSB#10806)
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone:    (304) 345-1234
Facsimile:    (304) 342-1105
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
rfranks@cdkrlaw.com
drpogue@cdkrlaw.com
***Counsel for Defendant Cardinal Health, Inc.***


*Webster J. Arceneaux by AJS by permission*

Webster J. Arceneaux III (WVSB#155)
LEWIS GLASSER, PLLC
300 Summers Street, Suite 700
Post Office Box 1746
Charleston, West Virginia 25326
wjarceneaux@lewisglasser.com
***Counsel for Rite Aid of West Virginia, Inc. and Rite Aid of Maryland, Inc. d/b/a Rite Aid Mid-***
***Atlantic Customer Support Center***

*Erik W Legg by AJ& by* Permission

Erik W. Legg (WVSB#7738)
FARRELL, WHITE & LEGG PLLC
914 5th Avenue
P.O. Box 6457
Huntington. WV  25772-6457
(304) 522-9100
(304) 522-9162 (facsimile)
ewl@farrell3.com
*Counsel for Endo Pharmaceuticals Inc.; Endo Health Solutions Inc.; Par Pharmaceutical Companies, Inc.; Par Pharmaceutical Inc.*


*Keith A Jones by AJ& by* Permission

Keith A. Jones (WVSB#1923)
JONES LAW GROUP, PLLC
P.O. Box 13395
Charleston, WV 25360
Telephone: (304) 984-9800
Facsimile: (304) 984-9801
keith@joneslawwv.com

Steven A. Luxton (WVSB#11038)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Telephone: (202) 739-3000
steven.luxton@morganlewis.com
*Counsel for Defendants Watson Laboratories, Inc.; Warner Chilcott Company, LLC; Actavis Pharma, Inc. f/k/a Watson Pharma, Inc.; Actavis South Atlantic LLC; Actavis Elizabeth LLC; Actavis Mid Atlantic LLC; Actavis Totowa LLC; Actavis LLC; Actavis Kadian LLC; Actavis Laboratories UT, Inc.; Actavis Laboratories FL, Inc. f/k/a Watson Laboratories, Inc.-Florida.; Teva Pharmaceuticals USA, Inc.; and Cephalon, Inc.*


*Michael B Hissam by AJ& by* Permission

Michael B. Hissam (WVSB#11526)
J. Zak Ritchie (WVSB#11705)
HISSAM FORMAN DONOVAN RITCHIE PLLC
P.O. Box 3983
Charleston, WV 25339
(681) 265-3802 office
(304) 982-8056 fax
mhissam@hfdrlaw.com
zritchie@hfdrlaw.com
*Counsel for Mylan Pharmaceuticals Inc.*

37

*Ronda L. Harvey by AJS by permission*

Ronda L. Harvey Esq. (WVSB#6326)
Fazal A. Shere, Esq. (WVSB#5433)
Marc E. Mignault (WVSB#12785)
Gabriele Wohl (WVSB#11132)
BOWLES RICE LLP
600 Quarrier Street
Charleston, West Virginia  25301
304-347-1100
rharvey@bowlesrice.com
fshere@bowlesrice.com
mmignault@bowlesrice.com
gwohl@bowlesrice.com
*Counsel for Defendants The Kroger Co., Kroger Limited Partnership I and Kroger Limited Partnership II*

*Jon B. Orndorff by AJS by permission*

Jon B. Orndorff (WVSB#7763)
Kelly Calder Mowen (WVSB#12220)
LITCHFIELD CAVO, LLP
99 Cracker Barrel Drive, Suite 100
Barboursville, WV 25504
Telephone:        (304) 302-0500
Facsimile:         (304) 302-0504
orndorff@litchfieldcavo.com
mowen@litchfieldcavo.com
*Counsel for Defendant Noramco, Inc.*

*Keith A. Jones by AJS by permission*

Keith A. Jones (WVSB# 1923)
JONES LAW GROUP, PLLC
P.O. Box 13395
Charleston, WV 25360
Telephone: (304) 984-9800
Facsimile: (304) 984-9801
keith@joneslawwv.com
*Counsel for Anda, Inc.*

_Rita Massie Biser_ (WVSB#7195) *by AJB by permission*
Moore & Biser PLLC
317 Fifth Avenue
South Charleston, West Virginia 25303
304.414.2300 / 304.414.4506 (fax)
rbiser@moorebiserlaw.com
**Counsel for Henry Schein, Inc.**


_Neva G. Lusk_ (WVSB#2274) *by AJB by permission*
Neva G. Lusk (WVSB#2274)
Tai Shadrick Kluemper (WVSB #12261)
SPILMAN THOMAS & BATTLE, PLLC
300 Kanawha Boulevard, East (25301)
Post Office Box 273
Charleston, WV 25321-0273
Telephone:     (304) 340-3866 (Ms. Lusk direct)
Telephone:     (304) 357-4476 (Ms. Kluemper direct)
Facsimile:     (304) 340-3801
nlusk@spilmanlaw.com
tkluemper@spilmanlaw.com
**Counsel for Walmart Inc. and Wal-Mart Stores East, LP**


_Bryant J. Spann_ (WVSB#8628) *by AJB by permission*
Bryant J. Spann (WVSB#8628)
Robert H. Akers (WVSB#9622)
THOMAS COMBS & SPANN, PLLC
300 Summers Street, Suite 1380
PO Box 3824
Charleston, WV  25338-3824
bspann@tcspllc.com
rakers@tcspllc.com
**Counsel for Walgreen Co. and Walgreens Boots Alliance, Inc.** [1]


FN:  Walgreens Boots Alliance, Inc. ("WBA") is a named defendant only in certain cases pending before the WV MLP, where its motions to dismiss based on lack of personal jurisdiction are pending. By joining this Writ, WBA does not consent to jurisdiction, nor does it intend to waive its position that the WV MLP lacks personal jurisdiction over it.

*Carte P. Goodwin By AJZ by*  *permission*
Carte P. Goodwin, Esq. (WVSB#8039)
Joseph M. Ward, Esq. (WVSB#9733)
Alex J. Zurbuch, Esq. (WVSB#12838)
FROST BROWN TODD LLC
500 Virginia Street East, Suite 1100
Charleston, WV 25301-3207
Telephone: (304) 345-0111
Facsimile: (304) 345-0115
cgoodwin@fbtlaw.com
jward@fbtlaw.com
azurbuch@fbtlaw.com
*Counsel for Defendants CVS Indiana L.L.C., CVS Rx Services, Inc., CVS TN Distribution,
L.L.C.; CVS Pharmacy, Inc., and West Virginia CVS Pharmacy, L.L.C.*

*Christopher D. Pence by AJZ by*  *permission*
Christopher D. Pence (WVSB#9095)
Wm. Scott Wickline (WVSB#6100)
Hardy Pence PLLC
10 Hale Street, 4th Floor (25301)
P. O. Box 2548
Charleston, WV 25329
Phone: (304) 345-7250/Fax: (304) 553-7227
Email: cpence@hardypence.com
scott@hardypence.com

*Sarah M. Benoit by AJZ by*  *permission*
Sarah M. Benoit (WVSB#13375)
ULMER & BERNE LLP
65 E. State Street, Suite 1100
Columbus, Ohio 43215
Phone: (614) 229-0016/Fax: (614) 229-0017
Email: sbenoit@ulmer.com
*Attorneys for Amneal Pharmaceuticals LLC; Amneal Pharmaceuticals of New York, LLC;
and Impax Laboratories, LLC*

*Stephen D. Annand by AJS by permission*

Stephen D. Annand, Esq. (WVSB#150)
Keith J. George, Esq. (WVSB#5102)
Marisa R. Brunetti, Esq. (WVSB#12992)
ROBINSON & MCELWEE, PLLC
700 Virginia Street, East, Suite 400
Charleston, WV 25301
Tel: 304-344-5800
Fax: 304-344-9566
sda@ramlaw.com
kg@ramlaw.com
mrb@ramlaw.com
*Counsel for Mallinckrodt LLC, Mallinckrodt Brand Pharmaceuticals, Inc.,
Mallinckrodt Enterprises LLC, and SpecGX LLC*

*Marc E. Williams by AJS by permission*

Marc E. Williams (WVSB#4062)
Robert L. Massie (WVSB#5743)
Jennifer W. Winkler (WVSB # 13280)
**NELSON MULLINS RILEY &
SCARBOROUGH LLP**
949 Third Avenue, Suite 200
Huntington, WV 25701
Telephone: (304) 526-3500
Facsimile: (304) 526-3599
Email: marc.williams@nelsonmullins.com
Email: bob.massie@nelsonmullins.com
Email: jennifer.winkler@nelsonmullins.com
*Counsel for Defendants Janssen
Pharmaceuticals, Inc.; Ortho-McNeil-Janssen
Pharmaceuticals, Inc. n/k/a Janssen
Pharmaceuticals, Inc.; Janssen Pharmaceutica,
Inc. n/k/a Janssen Pharmaceuticals, Inc.; and
Johnson & Johnson*

*William R. Slicer by AJS by permission*

William R. Slicer (WVSB#5177)
Shuman McCuskey Slicer PLLC
Post Office Box 3953
Charleston, WV 25339-3953
T: 304-345-1400
F: 304-343-1826
wslicer@shumanlaw.com
***Counsel for Defendants Abbott
Laboratories and Abbott Laboratories Inc.***

*John H. Mahaney II by AJS by permission*

John H. Mahaney II (WVSB#6993)
DINSMORE & SHOHL LLP
Post Office Box 2185
Huntington, West Virginia, 25722
(304) 529-6181
***Counsel for Defendant Fruth Pharmacy, Inc.***

*Todd A. Mount by AJS by permission*

Todd A. Mount (WVSB#6939)
SHAFFER & SHAFFER, PLLC
P.O. Box 38
Madison, WV 25130
Telephone: (304) 369-0511
Facsimile: (304) 369-5431
***Counsel for H.D. Smith LLC f/k/a
H.D. Smith Wholesale Drug Company***

*Tim J. Yianne by AJS by permission*

Tim J. Yianne (WVSB#8623)
Patricia M. Bello (WVSB#11500)
LEWIS BRISBOIS BISGAARD & SMITH LLP
Chase Tower, 707 Virginia Street E., Suite 1400
Charleston, WV 25301
Telephone: (304) 553-0166
Facsimile: (304) 343-1805
Email: tim.yianne@lewisbrisbois.com
Email: patricia.bello@lewisbrisbois.com
***Counsel for Allergan Finance, LLC f/k/a Actavis, Inc. f/k/a Watson Pharmaceuticals, Inc.,
Allergan Sales, LLC, Allergan USA, Inc., and Warner Chilcott Sales (US), LLC***

## VERIFICATION

**STATE OF WEST VIRGINIA,**

**COUNTY OF KANAWHA**, to wit:

I, Albert F. Sebok, counsel for Petitioner AmerisourceBergen Drug Corporation, being first duly sworn, state that I have read the foregoing Petition for Writ of Prohibition; that the factual representations contained therein are true, except insofar as they are stated to be upon information and belief; and that insofar as they are stated to be on information, I believe them to be true.

_____

Albert F. Sebok (WVSB# 4722)

Taken, subscribed, and sworn to before me this 10th day of September, 2020.

My commission expires: _Sept. 30, 2023_.

Official Seal
Notary Public, State of West Virginia
Barbara A Bowling
16 Hillsdale Circle
Scott Depot, WV 25560
My Commission Expires September 30, 2023

_____

Notary Public

43

## VERIFICATION

**STATE OF WEST VIRGINIA,**

**COUNTY OF BOONE,** to wit:

I, Todd A. Mount, counsel for Petitioner AmerisourceBergen Drug Corporation, being first duly sworn, state that I have read the foregoing Petition for Writ of Prohibition; that the factual representations contained therein are true, except insofar as they are stated to be upon information and belief; and that insofar as they are stated to be on information, I believe them to be true.

Todd A. Mount (WVSB #6939)

Taken, subscribed, and sworn to before me this 10th day of September, 2020.

My commission expires: _____

Notary Public

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
DEBBIE GARRETT
PO Box 1484, Chapmanville, WV 25508
My Commission Expires January 9, 2021

4824-5857-8122.v1

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

Docket No. _____

STATE of West Virginia, ex rel.
AMERISOURCEBERGEN DRUG CORPORATION, et al.,

Petitioners,

v.

The Honorable Alan D. MOATS, Lead Presiding Judge
Opioid Litigation, Mass Litigation Panel

Respondent.

---

## CERTIFICATE OF SERVICE

---

I, Albert F. Sebok, hereby certify that true and correct copies of the foregoing *Verified Petition for Writ of Prohibition* were served upon the following via electronic mail and/or by depositing a true copy thereof in the United States mail, postage prepaid, addressed as follows (one hard copy to first-listed Plaintiffs' counsel and a copy of the Appendix being sent via email) and via email transmission to all counsel for Defendants, as indicated below, on this the 10th day of September, 2020:

**Via U.S. Mail:**

Honorable Alan D. Moats
Taylor County Courthouse
214 West Main Street
Grafton, WV 26354

4820-1437-6138.v1

Kimberley R. Fields, Esq.
1900 Kanawha Blvd., East
Building 1, Room E-100
Charleston, WV 25305

**Via Electronic and/or U.S. Mail:**[1]

Kevin C. Harris, Esq.
Eric J. Holmes, Esq.
Law Offices of Harris & Holmes, PLLC
115 North Church Street
Ripley, WV 25271

Lisa F. Ford, Esq.
217 East Main Street
Clarksburg, WV 26301

Robert L. White, Esq.
5605 Starling Drive
Charleston, WV 25306

Joseph Cappelli, Esq.
Marc J. Bern, Esq.
Carmen De Gisi, Esq.
Marc J. Bern & Partners LLP
60 E. 42th Street, Suite 950
New York, NY 10165

H. Truman Chafin, Esq.
Letitia Neese Chafin, Esq.
The Chafin Law Firm, PLLC
P.O. Box 1799
Williamson, WV 25661

Mark E. Troy, Esq.
Troy Law Firm, PLLC
222 Capitol Street, Suite 200A
Charleston, WV 25301

---

[1] To avoid voluminous reproduction of hard copies, counsel for the parties are being provided electronic copies and will be provided hard copies via mail if requested.

Harry F. Bell, Jr., Esq.
The Bell Law Firm, PLLC
P.O. Box 1723
30 Capitol Street
Charleston, WV 25326-1723

Hunter B. Mullens, Esq.
Mullens & Mullens, PLLC
P.O. Box 95
Phillippi, WV 24616

John Yanchunis, Esq.
James Young, Esq.
Morgan & Morgan Complex Litigation Group
201 N. Franklin Street
Tampa, FL 33602

Paul T. Farrell, Jr., Esq.
Farrell Law
422 Ninth Street, 3rd Floor
Huntington, WV 25701

Anthony J. Majestro, Esq.
Powell & Majestro, PLLC
405 Capitol Street, Suite P-1200
Charleston, WV 25301

Shawn P. George, Esq.
George & Lorensen PLC
1526 Kanawha Boulevard, East
Charleston, WV 25311

J. Michael Benninger, Esq.
Benninger Law PLLC
154 Pleasant Street
Morgantown, WV 26505

John D. Hurst, Esq.
Motley Rice LLC
50 Clay Street, Suite 1
Morgantown, WV 26501

Joseph F. Rice, Esq.
Anne McGinness Kearse, Esq.
Motley Rice LLC
28 Bridgeside Boulevard
Mount Pleasant, SC 29496

Charles R. "Rusty" Webb, Esq.
The Webb Law Centre, PLLC
716 Lee Street, East
Charleston, WV 25301

Robert P. Fitzsimmons, Esq.
Clayton J. Fitzsimmons, Esq.
Mark A. Colantonio, Esq.
Fitzsimmons Law Firm PLLC
1609 Warwood Avenue
Wheeling, WV 26003

Daniel J. Guida, Esq.
Guida Law Office
3374 Main Street
Weirton, WV 26062

Joseph F. Shaffer, Esq.
Samuel D. Madia, Esq.
Shaffer Madia Law PLLC
343 West Main Street
Clarksburg, WV 26301

Paul J. Napoli, Esq.
Hunter J. Shkolnik, Esq.
Joseph L. Ciaccio, Esq.
Shayna E. Sacks, Esq.
Salvatore C. Badala, Esq.
Napoli Shkolnik, LLP
360 Lexington Avenue, 11th Floor
New York, NY 10118

Stephen B. Farmer, Esq.
Farmer, Cline & Campbell PLLC
746 Myrtle Road
P.O. Box 3842
Charleston, WV 25338

Timothy R. Linkous, Esq.
Linkous Law, PLLC
179 Hanalei Drive, Suite 100
Morgantown, WV  26508

***Counsel for Plaintiffs***

**Via Email Transmission**:

Defendants in MLP via email:
xWVMLPAllDefendants@arnoldporter.com

Albert F. Sebok (WV State Bar #4722)

IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

Docket No. _____

STATE of West Virginia, ex rel.
AMERISOURCEBERGEN DRUG CORPORATION, et al.,

Petitioners,

v.

The Honorable Alan D. MOATS, Lead Presiding Judge,
Opioid Litigation, Mass Litigation Panel

Respondent.

*From the Circuit Court of Kanawha County, West Virginia*
*In re: Opioid Litigation Civil Action No. 19-C-9000*

———————————

APPENDIX

———————————

Albert F. Sebok (WVSB #4722)
asebok@jacksonkelly.com
Gretchen M. Callas (WVSB #7136)
gcallas@jacksonkelly.com
Jonathan L. Anderson (WVSB #9628)
jlanderson@jacksonkelly.com
Candice M. Harlow (WVSB# 12496)
charlow@jacksonkelly.com)
JACKSON KELLY PLLC
500 Lee Street, East, Suite 1600
P.O. Box 553
Charleston, WV 25322
Telephone: (304) 340-1000
Facsimile: (304) 340-1130
*Counsel for Petitioner AmerisourceBergen Drug Corporation*

Todd A. Mount (WVSB #6939)
tmount@shafferlaw.net
SHAFFER & SHAFFER, PLLC
P.O. Box 38
Madison, WV 25130
Telephone: (304) 369-0511
Facsimile: (304) 369-5431
*Counsel for Petitioner AmerisourceBergen Drug Corporation in actions filed by Ohio County Commission (Civil Action No. 17-C-253), Pleasants County Commission (Civil Action No. 19-C-105), WVU Hospitals, Inc., (Civil Action Nos. 19-C-69 through 19-C-88 and 19-C-134 through 19-C-139), City of Nitro (Civil Action No. 19-C-260), City of South Charleston (Civil Action No. 19-C-262), City of White Sulphur Springs (Civil Action No. 19-C-263)*

## TABLE OF CONTENTS OF APPENDIX

Monongalia County Complaint filed September 28, 2018 ............................................ JA000001

Administrative Order of Transfer entered June 7, 2019 ................................................... JA000270

WVU Hospitals Complaint filed June 7, 2019 ................................................................ JA000273

Transcript of December 6, 2019 Status Conference ....................................................... JA000293

Order on December 6, 2019 Hearing ............................................................................ JA000355

Plaintiffs' Joint Memorandum of Law Regarding Nuisance ............................................ JA000374

Plaintiffs' Memorandum of Law Regarding Non-Jury Phase 1 Nuisance Trial............... JA000359

Submission of Defendants' Liaison Counsel pursuant to December 12, 2019 Order ...... JA000384

Order on Trial of Liability for Public Nuisance, Phase 1, entered February 19, 2020 ..... JA000387

Certain Defendants' Motion for Reconsideration of Order on Trial of Liability ............. JA000397

Defendants' Supplemental Brief and Motion for Clarification or Reconsideration ......... JA000491

AmerisourceBergen Drug Corporation's Notice Regarding Non-Party Fault ................. JA000471

Cardinal Health's Notice Regarding Non-Party Fault ................................................... JA000482

All Plaintiffs' Consolidated Memorandum of Law in Opposition to
Defendants' Motion for Clarification and Reconsideration............................................... JA000504

Allergan Finance's Notice Regarding Non-Party Fault .................................................. JA000492

Plaintiffs' Motion to Strike Defendants' Notices of Non-Party Fault ............................. JA000558

Reply in Support of Defendants' Brief and Motion for Clarification or Reconsideration
................................................................................................................................. JA000574

Response to Plaintiffs' Motion to Strike Notices of Non-Party Fault ............................ JA000716

Plaintiffs' Reply Brief in Support of Motion to Strike ................................................... JA000743

Order Denying Motions to Reconsider Orders entered July 23, 2020 ............................ JA000807

Order Granting in Part Plaintiffs' Motion to Strike Defendants' Notices of Non-Party Fault
................................................................................................................................. JA000819

Decision and Order Concerning Trial by Jury (NY State Supreme Court) .................... JA000830

Opinion and Order Regarding Adjudication of Plaintiffs' Public Nuisance Claims
(USDC, NDOH, Track One Cases) ............................................................................... JA000833

Order Denying Motion for Jury Trial (State of OK) ...................................................... JA000843

## CERTIFICATION

I, Albert F. Sebok, counsel for Petitioner AmerisourceBergen Drug Corporation, hereby certify that the contents of the Appendix are true and accurate copies of items contained in the record and the appendix as a whole is sufficient to permit the Court to fairly consider the questions presented.

Dated this 10th day of September, 2020.

*[signature]*

Albert F. Sebok (WVSB #4722)
asebok@jacksonkelly.com
Gretchen M. Callas (WVSB #7136)
gcallas@jacksonkelly.com
Jonathan L. Anderson (WVSB # 9628)
jlanderson@jacksonkelly.com
Candice M. Harlow (WVSB# 12496)
charlow@jacksonkelly.com)
JACKSON KELLY PLLC
500 Lee Street, East, Suite 1600
P.O. Box 553
Charleston, WV 25322
Telephone: (304) 340-1000
Facsimile: (304) 340-1130
*Counsel for Petitioner AmerisourceBergen Drug Corporation*

Todd A. Mount (WVSB #6939)
tmount@shafferlaw.net
SHAFFER & SHAFFER, PLLC
P.O. Box 38
Madison, WV 25130
Telephone: (304) 369-0511
Facsimile: (304) 369-5431
*Counsel for Petitioner AmerisourceBergen*
*Drug Corporation in actions filed by Ohio County Commission (Civil Action No. 17-C-253), Pleasants County Commission (Civil Action No. 19-C-105), WVU Hospitals, Inc., (Civil Action Nos. 19-C-69 through 19-C-88 and 19-C-134 through 19-C-139), City of Nitro (Civil Action No. 19-C-260), City of South Charleston (Civil Action No. 19-C-262), City of White Sulphur Springs (Civil Action No. 19-C-263)*