**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

Docket No. 20-0694

STATE OF WEST VIRGINIA EX REL.
AMERISOURCEBERGEN DRUG CORPORATION, ET AL.,

       Petitioners,

v.

HONORABLE ALAN D. MOATS, LEAD PRESIDING JUDGE,
OPIOID LITIGATION, MASS LITIGATION PANEL, ET AL.,

       Respondents.

-and-

Docket No. 20-0751

STATE OF WEST VIRGINIA EX REL.
JOHNSON & JOHNSON, ET AL.,

       Petitioners,

v.

HONORABLE ALAN D. MOATS, LEAD PRESIDING JUDGE,
OPIOID LITIGATION, MASS LITIGATION PANEL, ET AL., AND
STATE OF WEST VIRGINIA EX REL. PATRICK MORRISEY, ATTORNEY GENERAL,

       Respondents.

**JOINT RESPONSE TO VERIFIED PETITIONS FOR WRIT OF PROHIBITION**

**(Counsel listed on signature page)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

QUESTIONS PRESENTED ................................................................................................ 2

STATEMENT OF THE CASE ............................................................................................. 2

    I.    THE PHASE I PUBLIC NUISANCE LIABILITY TRIAL ........................................................ 2

    II.    DEFENDANTS' NOTICES OF NON-PARTY FAULT ........................................................... 4

SUMMARY OF ARGUMENT ............................................................................................ 5

ARGUMENT ...................................................................................................................... 5

    I.    LEGAL STANDARD ......................................................................................................... 5

    II.    THE PANEL DID NOT COMMIT ANY ERROR OF LAW, LET ALONE A CLEAR
        ERROR, IN DENYING DEFENDANTS' REQUEST FOR A JURY TRIAL ON
        PLAINTIFFS' PUBLIC NUISANCE CLAIMS .................................................................... 7

        A.    Defendants do not have a constitutional right to a jury trial because
               any monetary relief is incidental to Plaintiffs' equitable claim. ......................... 7

        B.    The Panel was not required to submit Plaintiffs' related legal claims
               to a jury before trying the liability phase of the public nuisance
               claim. ......................................................................................................... 12

    III.    THE PANEL DID NOT COMMIT CLEAR LEGAL ERROR WHEN IT STRUCK
        DEFENDANTS' NOTICES OF NON-PARTY FAULT RELATED TO PLAINTIFFS'
        PUBLIC NUISANCE CLAIMS .......................................................................................... 14

        A.    The Apportionment Statutes apply only to claims for damages. .................... 14

        B.    Plaintiffs' public nuisance claims first accrued before the enactment
               of the 2015 Act. ......................................................................................... 19

CONCLUSION ................................................................................................................. 21

# TABLE OF AUTHORITIES

CASES

Albright v. White,
    202 W. Va. 292, 503 S.E.2d 860 (1998) ........................................................................20

Atlas Roofing Co. v. Occupational Safety & Health Review Commission,
    430 U.S. 442 (1977) ........................................................................................................11

Balch v. State ex rel. Grigsby, County Attorney,
    65 Okla. 146, 164 Pac. 776 (1917) ................................................................................10

Beacon Theatres, Inc. v. Westover,
    359 U.S. 500 (1959) ..................................................................................................13, 14

Bishop Coal Co. v. Salyers,
    181 W. Va. 71, 380 S.E.2d 238 (1989) ..........................................................................11

Bowen v. Massachusetts,
    487 U.S. 879 (1988) ....................................................................................................8, 17

California v. ConAgra Grocery Products Co.,
    227 Cal. Rep. 3d 499 (Cal. App. 2017) .........................................................................18

Camden-Clark Memorial Hospital Corp. v. Turner,
    212 W. Va. 752, 575 S.E.2d 362 (2002) ..........................................................................2

Cart v. Marcum,
    188 W. Va. 241, 423 S.E.2d 644 (1992) ........................................................................20

Citizens for Alternatives to Radioactive Dumping v. CAST Transportation, Inc.,
    No. CV 99-321 MCA/ACT, 2004 WL 7338006 (D.N.M. Sept. 30, 2004)...................10

Conner v. City of Santa Ana,
    897 F.2d 1487 (9th Cir. 1990)........................................................................................10

Cooey v. Strickland,
    479 F.3d 412 (6th Cir. 2007)..........................................................................................20

Duff v. Morgantown Energy Associates (M.E.A.),
    187 W. Va. 712, 421 S.E.2d 253 (1992) ........................................................................17

Ellett Bros. v. United States Fidelity & Guaranty Co.,
    275 F.3d 384 (4th Cir. 2001)..........................................................................................19

Fujimaki v. Ichikawa,
    No. 324173, 2015 WL 7288054 (Mich. Ct. App. Nov. 17, 2015) ..............................21

In re National Prescription Opiate Litigation,
    No. 1:17-MD-2804, 2019 WL 4043938 (N.D. Ohio Aug. 26, 2019) ..............9, 12, 17

In re National Prescription Opiate Litigation,
    No. 1:17-MD-2804, 2019 WL 4194272 (N.D. Ohio Sept. 4, 2019) ...............9, 12, 17

In re National Prescription Opiate Litigation,
    No. 1:17-MD-2804, 2019 WL 4621690 (N.D. Ohio Sept. 24, 2019) ...........................9

*In re: Tobacco Litigation*,
    218 W. Va. 301, 624 S.E.2d 738 (2005) ................................................................7

*King v. Commonwealth*,
    194 Ky. 143, 238 S.W. 373 (1922)......................................................................10

*Kisner v. Fiori*,
    151 W. Va. 850, 157 S.E.2d 238 (1967) ............................................................19

*Massachusetts v. United Food Corp.*,
    374 Mass. 765, 374 N.E.2d 1331 (1978)............................................................10

*McMechen v. Hitchman-Glendale Consolidated Coal Co.*,
    88 W. Va. 633, 107 S.E. 480 (1921) .............................................................11, 17

*Minnesota ex rel. Wilcox v. Ryder*,
    126 Minn. 95, 147 N.W. 953 (1914) ..................................................................10

*National Ass'n for Advancement of Colored People (NAACP) v. Acusport Corp.*,
    226 F. Supp. 2d 391 (E.D.N.Y. 2002) ...............................................................10

*New Jersey ex rel. State Board of Milk Control v. Newark Milk Co.*,
    118 N.J. Eq. 504, 179 A. 116 (1935)..................................................................10

*Ohio ex rel. Miller v. Anthony*,
    72 Ohio St. 3d 132, 647 N.E.2d 1368 (1995) .....................................................10

*Pennsylvania v. Dietz*,
    285 Pa. 511, 132 A. 572 (1926).........................................................................10

*Realmark Developments, Inc. v. Ranson*,
    214 W. Va. 161, 588 S.E.2d 150 (2003) .......................................................11, 12

*San Diego Unified Port District v. Monsanto Co.*,
    No. 15cv578-WQH-JLB, 2018 WL 4185428 (S.D. Cal. Aug. 30, 2018) ...............18

*Sitzes v. Anchor Motor Freight, Inc.*,
    169 W. Va. 698, 289 S.E.2d 679 (1982) ............................................................14

*Town of Superior v. Asarco, Inc.*,
    874 F. Supp. 2d 937 (D. Mont. 2004) ................................................................18

*Town of Weston v. Ralston*,
    48 W. Va. 170, 36 S.E. 446 (1900) ..................................................................8, 12

*Tull v. United States*,
    481 U.S. 412 (1987) ............................................................................................9

*United States v. Wade*,
    653 F. Supp. 11 (E.D. Pa. 1984)........................................................................10

*Vanderbilt Mortgage & Finance, Inc. v. Cole*,
    230 W. Va. 505, 740 S.E.2d 562 (2013) ............................................................19

*Warner v. Kittle*,
    167 W. Va. 719, 280 S.E.2d 276 (1981) ..............................................................7

*West Virginia ex rel. Appalachian Power Co. v. MacQueen,*
   198 W. Va. 1, 479 S.E.2d 300 (1996) .................................................................7, 13

*West Virginia ex rel. Ball v. Cummings,*
   208 W. Va. 393, 540 S.E.2d 917 (1999) ...................................................................18

*West Virginia ex rel. Hoover v. Berger,*
   199 W. Va. 12, 483 S.E.2d 12 (1997) .........................................................................6

*West Virginia ex rel. Mobil Corp. v. Gaughan,*
   211 W. Va. 106, 563 S.E.2d 419 (2002) .....................................................................7

*West Virginia ex rel. Smith v. Kermit Lumber & Pressure Treating Co.,*
   200 W. Va. 221, 488 S.E.2d 901 (1997) ..............................................................11, 20

*West Virginia ex rel. Suriano v. Gaughan,*
   198 W. Va. 339, 480 S.E.2d 548 (1996) .....................................................................6

*West Virginia ex rel. Vanderra Resources, LLC v. Hummel,*
   242 W. Va. 35, 829 S.E.2d 35 (2019) .........................................................................6

*West Virginia ex rel. West Virginia Division of Natural Resources v. Cline,*
   200 W. Va. 101, 488 S.E.2d 376 (1997) .....................................................................6

*West Virginia Human Rights Commission v. Tenpin Lounge, Inc.,*
   158 W. Va. 349, 211 S.E.2d 349 (1975) ...................................................................13

S<small>TATUTES</small>

W. Va. Code § 53-1-1 ..........................................................................................................10

W. Va. Code § 55-7-13a(a) ..................................................................................................21

W. Va. Code § 55-7-13a(b) ..................................................................................................21

W. Va. Code § 55-7-13b .......................................................................................................21

W. Va. Code § 55-7-13c(a) .............................................................................................20, 21

W. Va. Code § 55-7-13c(h)(2) ..............................................................................................20

W. Va. Code § 55-7-13d(a)(1) ..............................................................................................20

W. Va. Code § 55-7-13d(a)(2) ................................................................................................9

W. Va. Code § 55-7-13d(b) ..................................................................................................20

W. Va. Code § 55-7-13d(e) ..................................................................................................21

W. Va. Code § 55-7-13d(h) .............................................................................................21, 24

W. Va. Code § 55-7-24(a) ....................................................................................................20

W. Va. Code § 55-7-24(a)(1) ................................................................................................20

W. Va. Code § 55-7-24(a)(2) ................................................................................................21

W. Va. Code § 55-7-24(b)(1) ................................................................................................20

W. Va. Code § 55-7-24(b)(2) ................................................................................................20

**OTHER AUTHORITIES**

Black's Law Dictionary.................................................................................................25

**TREATISES**

Restatement (Second) of Torts § 821B (1979)..............................................................23

## INTRODUCTION

The City, County, and Hospital Plaintiffs (Respondents in No. 20-0694), and the State of West Virginia, by its Attorney General, Patrick Morrisey (Respondent in No. 20-0751), respectfully submit this omnibus Response to Petitioners' Verified Writs of Prohibition.[1]  For the reasons set forth below, the writs should be denied.

These are the sixth and seventh writs of prohibition by Defendants seeking to derail this litigation, which currently involves numerous cases and parties.  The litigation arises out of the opioid crisis, which has been called the worst man-made epidemic in history.  The crisis has also generated the most complex litigation in modern history.  Recognizing this, Defendants successfully sought transfer of these cases to the Mass Litigation Panel (the "Panel"), where, as noted below, the Panel is charged with developing creative, innovative techniques designed to achieve an orderly, reasonably swift, and efficient disposition in a manner that does not trespass upon the procedural due process rights of all of the parties.

Faced with this complex litigation, the Panel chose to set a liability-only bench trial on Plaintiffs' public nuisance claims.  JA000387-396.  The Panel did so after determining that "it is imperative to conduct a trial on the issue of liability for public nuisance in West Virginia as soon as the parties have conducted reasonable discovery on this issue."  JA000393-394.  The orders now being challenged relate only to that proceeding and those claims and not the Panel's bifurcation decision.  The writs, however, effectively seek to frustrate that decision by removing the flexibility of a bench trial and allowing Defendants to introduce improperly the purported fault

---

[1]     On November 4, 2020, the Court ordered that Docket Nos. 20-0694 and 20-0751 be consolidated and that Respondents were permitted to file a single consolidated response. References to "Pet. 0694 at _" and "Pet. 0751 at _" are to those petitions, respectively.

of hundreds of third parties at trial regarding claims that are not at issue in the Panel's Phase I Trial.

After extensive briefing, the Panel correctly concluded that neither Defendants' right to a jury trial nor their right to allocate fault to non-parties attaches to Plaintiffs' equitable claims that are being tried in the Phase I trial.  This Court should refuse the writs.

## QUESTIONS PRESENTED

1.       Whether a constitutional right to a jury trial exists with respect to an equitable claim for public nuisance where any monetary relief sought is incidental to the equitable claim.

2.       Whether West Virginia's apportionment statute, W. Va. Code § 55-7-13d(a)(2), and its predecessor, which is expressly limited to claims for damages, applies to public nuisance claims sounding in equity and seeking the remedy of abatement.

## STATEMENT OF THE CASE

### I.    THE PHASE I PUBLIC NUISANCE LIABILITY TRIAL

On December 6, 2019, the Panel held a status conference during which it proposed that it would conduct a non-jury, Phase I trial solely on the issue of whether there is liability for public nuisance under West Virginia law, JA000293-354, and then ordered the parties to file memoranda on their positions, JA000357.

Plaintiffs consented to the Panel's proposed non-jury, Phase I trial on the issue of liability for public nuisance.  JA000359.  Defendants did not, contending that "they have the right to refuse a liability-only trial on the equitable issues, pursuant to Syllabus Point 6 of *Camden-Clark Mem. Hosp. Corp. v. Turner*, 212 W. Va. 752, 575 S.E.2d 362 (2002)" and that, instead, the first step should be to "test[] and resolv[e] the legal basis for Plaintiffs bringing those claims." JA00384.[2]

---

[2]       McKesson Corp. has stipulated to a non-jury trial.  *See* JA000524-525 at n.13 ("Plaintiffs have agreed with at least one Defendant to limit their claims to public nuisance, and the City and

On February 19, 2020, the Panel found that a Phase I, non-jury trial on the issue of liability for public nuisance was appropriate under Rule 39(a) of the West Virginia Rules of Civil Procedure based, among other things, on "the complexity of the Opioid Litigation, the number of parties involved, and the magnitude of the public health emergency recognized in West Virginia and the United States." JA000393. In so ruling, the Panel held that "[a] Phase I, non-jury trial on the issue of liability for public nuisance will not only maximize the Court's and the parties' resources, but will also promote judicial economy, allow a relatively speedy trial on this issue, and unlike a jury trial, will allow the Presiding Judges to take breaks in order to accommodate their circuit court trial dockets." JA000394.

On March 11, 2020, Defendants moved for reconsideration of the Panel's ruling. JA000397-425. On March 13, 2020, the Panel conducted a status conference during which it scheduled the Phase I, non-jury trial of liability for public nuisance to begin on March 22, 2021, giving the parties one year to conduct discovery regarding liability for public nuisance. Certain Defendants then filed a supplemental brief in support of their motion for reconsideration on May 5, 2020. JA000431-470. On July 23, 2020, the Panel denied the motion for reconsideration, holding, in part, that Defendants did not have the right to a jury trial on Plaintiffs' public nuisance claims and that "West Virginia has long held that courts of equity have jurisdiction to prevent or abate public nuisance" and that because Plaintiffs "are seeking abatement of a public nuisance, their cases are in equity, to which the right of a jury trial does not attach." JA000814-815.

---

County plaintiffs have agreed to limit the relief sought to abatement in exchange for McKesson's consent to a bench trial.").

## II.   DEFENDANTS' NOTICES OF NON-PARTY FAULT

On May 22, 26, and 29, 2020, respectively, AmerisourceBergen Drug Corporation; Cardinal Health 102, Inc. and Cardinal Health 110, LLC; and Allergan Finance, LLC filed notices of non-party fault purportedly pursuant to the West Virginia apportionment statute, W. Va. Code § 55-7-13d(a)(2) (the "2015 Act"), in which they asserted that the Panel may consider the fault of (largely unidentified) non-parties listed in the notices.   JA000471-503.   Each of the notices generically listed categories of non-parties alleged to be at fault, namely (i) prescribing practitioners; (ii) individuals involved in illegal drug sales; (iii) patients who failed to use medicines as directed; (iv) hospitals; (v) pharmacies and pharmacists; (vi) pharmacy benefit managers; (vii) federal, state, and local government entities; (viii) health insurers; (ix) wholesale pharmaceutical distributors; and (x) nonparty pharmaceutical manufacturers.  *Id.*

In response, Plaintiffs moved to strike the notices of non-party fault.  JA000558-573. Plaintiffs argued that Defendants' notices were insufficient to comply with the 2015 Act because they do not contain sufficient identification of the alleged non-parties at fault.  *See* W. Va. Code § 55-7-13d(a)(2) (requiring party to "set[] forth the nonparty's name and last known address, or the best identification of the nonparty which is possible under the circumstances, together with a brief statement of the basis for believing such nonparty to be at fault").  Plaintiffs further argued that neither the 2015 Act nor its predecessor, W. Va. Code § 55-7-24 (the "2005 Act"), is applicable to their claims, which are limited to equitable claims for abatement of a public nuisance and claims for equitable relief and, as to the State-only, civil penalties for violations of the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-1-101, *et seq.*[3]

---

[3]      Together, the 2015 Act and the 2005 Act are referred to as the "Apportionment Statutes."

On July 29, 2020, the Panel granted Plaintiffs' motions to strike the notices of non-party fault as they applied to their public nuisance claims. *See* JA000829 ("[T]he Panel concludes the Apportionment Statutes (both the 2005 Act and the 2015 Act) have no application to Plaintiffs' claims for equitable abatement of public nuisance.").

## SUMMARY OF ARGUMENT

The Panel's rulings are confined to Plaintiffs' public nuisance claims – claims that seek the equitable remedy of abatement. While a judgment may require Defendants to pay money or create a fund to help abate the existing public nuisance they created, it is well-established law that such payments do not transform Plaintiffs' equitable claims into legal claims and remove them from the Panel's equitable jurisdiction. Accordingly, the first Question Presented must be answered in the negative.

Second, and relatedly, Defendants argue that the Panel's striking of the notices of non-party fault under the 2015 Act was error because Plaintiffs seek damages. Again, neither the 2015 Act nor its predecessor, the 2005 Act, apply to Plaintiffs claims that seek the equitable remedy of abatement. Furthermore, the 2015 Act does not apply to claims that accrued before its effective date. Here, Plaintiffs' claim for the abatement of a public nuisance first accrued before the 2015 Act's effective date on May 25, 2015, taking those claims out of the statute's reach. Once again, the Question Presented should be answered in the negative.

## ARGUMENT

### I.   LEGAL STANDARD

"The writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." W. Va. Code § 53-1-1. This Court has made clear that it will use the writ of prohibition in limited circumstances, namely "to correct only

substantial, clear-cut, legal errors plainly in contravention of a clear statutory, constitutional, or

common law mandate which may be resolved independently of any disputed facts and only in

cases where there is a high probability that the trial will be completely reversed if the error is not

corrected in advance." *State ex rel. Vanderra Res., LLC v. Hummel*, 242 W. Va. 35, 40, 829 S.E.2d

35, 40 (2019).

> In determining whether to entertain and issue the writ of prohibition for cases not
> involving an absence of jurisdiction but only where it is claimed that the lower
> tribunal exceeded its legitimate powers, this Court will examine five factors:
> (1) whether the party seeking the writ has no other adequate means, such as direct
> appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or
> prejudiced in a way that is not correctable on appeal; (3) whether the lower
> tribunal's order is clearly erroneous as a matter of law; (4) whether the lower
> tribunal's order is an oft repeated error or manifests persistent disregard for either
> procedural or substantive law; and (5) whether the lower tribunal's order raises new
> and important problems or issues of law of first impression. These factors are
> general guidelines that serve as a useful starting point for determining whether a
> discretionary writ of prohibition should issue. Although all five factors need not
> be satisfied, it is clear that the third factor, the existence of clear error as a matter
> of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1997).

In considering these factors, the Court has made clear that, "[t]ypically, we limit our

exercise of original jurisdiction through prohibition because '[m]andamus, prohibition and

injunction against judges are drastic and extraordinary remedies. . . . As extraordinary remedies,

they are reserved for really extraordinary causes.'" *State ex rel. W. Va. Div. of Nat. Res. v. Cline*,

200 W. Va. 101, 105, 488 S.E.2d 376, 380 (1997) (second alteration and ellipsis in original)

(quoting *State ex rel. Suriano v. Gaughan*, 198 W. Va. 339, 345, 480 S.E.2d 548, 554 (1996)).

"Accordingly, in order '[t]o justify this extraordinary remedy, the petitioner has the burden of

showing that the lower court's jurisdictional usurpation was clear and indisputable and, because

there is no adequate relief at law, the extraordinary writ provides the only available and adequate

remedy.'" *Id.* at 105, 488 S.E.2d at 380 (alteration in original) (citation omitted).

6

II.   **THE PANEL DID NOT COMMIT ANY ERROR OF LAW, LET ALONE A CLEAR ERROR, IN DENYING DEFENDANTS' REQUEST FOR A JURY TRIAL ON PLAINTIFFS' PUBLIC NUISANCE CLAIMS**

A.   **Defendants do not have a constitutional right to a jury trial because any monetary relief is incidental to Plaintiffs' equitable claim.**

The Panel is charged with developing and implementing "case management and trial methodologies to fairly and expeditiously resolve Mass Litigation referred to the Panel by the Chief Justice." TCR 26.05(a). The Presiding Judge is authorized, "after considering the due process rights of the parties, to adopt any procedures deemed appropriate to fairly and efficiently manage and resolve Mass Litigation." TCR 26.08(d). This Court has made clear that a "creative, innovative trial management plan developed by a trial court which is designed to achieve an orderly, reasonably swift and efficient disposition of mass liability cases will be approved so long as the plan does not trespass upon the procedural due process rights of the parties." Syl. Pt. 3, *State ex rel. Appalachian Power Co. v. MacQueen*, 198 W. Va. 1, 479 S.E.2d 300 (1996). Indeed, the "management of [mass tort] cases cannot be accomplished without granting the trial courts assigned these matters significant flexibility and leeway with regard to their handling of these cases." *In re: Tobacco Litig.*, 218 W. Va. 301, 306, 624 S.E.2d 738, 743 (2005) (alteration in original) (quoting *State ex rel. Mobil Corp. v. Gaughan*, 211 W. Va. 106, 111, 563 S.E.2d 419, 424 (2002)). This is precisely what the Panel did in ordering a non-jury trial on the Phase I public nuisance liability trial.

Nor did the Panel err in holding there was no right to a jury trial in these circumstances. Rather, the Panel held that under this Court's precedent, "the right to a jury trial still depends on whether one had the right to a jury trial prior to adoption of the Rules." JA000389 (citing *Warner v. Kittle*, 167 W. Va. 719, 725, 280 S.E.2d 276, 280 (1981)). The Panel went on to hold that "West

Virginia has long held that courts of equity have jurisdiction to prevent or abate public nuisance." *Id.*

Despite this, Defendants contend that the Panel erred in denying them a right to a jury trial on Plaintiffs' public nuisance claims. *See* Pet. 0694 at 11-22. According to Defendants, they are entitled to a jury trial on Plaintiffs' public nuisance claims because Plaintiffs seek monetary recovery. This simplistic reading – which effectively stands for the proposition that all monetary payments must be considered "damages" – is contrary to well-established law. This Court has long made clear the equitable nature of an action to abate a public nuisance. In 1900, the Court held that "[c]ourts of equity have an ancient and unquestionable jurisdiction to prevent or abate public nuisance, and this alone would give jurisdiction." *Town of Weston v. Ralston*, 48 W. Va. 170, 36 S.E. 446, 456 (1900). Furthermore, the Panel correctly recognized "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" JA000826 ¶ 11 (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) (internal quotation marks omitted)). This is because "[p]ayment of money constitutes damages only if it compensates the plaintiff for an injury or loss" and not the kind of forward-looking abatement remedies sought by Plaintiffs. *Id.* Accordingly, the Panel did not err when it "disagree[d] with Defendants['] contention that, because Plaintiffs' action seeks money, the action is for damages." JA000826.

In support, the Panel cited to the federal Multidistrict Litigation (the "MDL"). *See* JA000826 ¶ 12 ("The Panel agrees that payment of costs incurred to abate a public nuisance is equitable relief, rather than damages, as numerous courts, including the federal MDL court, have recognized."). There, Judge Polster correctly concluded that

> the fact that "nuisance" is sometimes characterized as a variety of "tort" does not change the fact that an equitable claim to abate a nuisance is not a tort claim seeking compensatory damages. Defendants also argue that what Plaintiffs' label as a claim

for "abatement costs" is in fact a "claim for damages." . . . Unlike tort damages that compensate an injured party for past harm, abatement is equitable in nature and provides a prospective remedy that compensates a plaintiff for the costs of rectifying the nuisance.

*In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 4194272, at *3 (N.D. Ohio Sept. 4, 2019).[4]

As Judge Polster and other courts discussed below have repeatedly recognized, this is not a controversial proposition and these holdings are in accord with the U.S. Supreme Court's ruling in *Tull v. United States*, 481 U.S. 412 (1987).  In deciding whether the Seventh Amendment guaranteed a jury trial for a government action seeking civil penalties and injunctive relief under the Clean Water Act, the U.S. Supreme Court characterized injunctive relief provided to abate a public nuisance as equitable and not subject to the right to a trial by jury.  *See id.* at 423 ("A public nuisance action was a classic example of the kind of suit that relied on the injunctive relief provided by courts in equity.").  A number of federal courts applying the Seventh Amendment have concluded that a public nuisance abatement action is an equitable action that does not implicate

---

[4]     Judge Polster has repeatedly held as much.  *See In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 4686815, at *4 (N.D. Ohio Sept. 26, 219) ("[I]t is settled law that, if a defendant is found liable for creating a public nuisance, the decision of whether to impose an abatement remedy (and if so, what that remedy should be) is one that must be decided by the Court, not the jury"); *In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 4043938, at *1 (N.D. Ohio Aug. 26, 2019) ("[T]he harmed party can, when appropriate, abate the nuisance themselves or ask the court for the right to do so, and then seek compensation for the costs of abating the nuisance.  This compensation is equitable in nature.  The goal is not to compensate the harmed party for harms already caused by the nuisance.  This would be an award of damages. Instead, an abatement remedy is intended to compensate the plaintiff for the costs of rectifying the nuisance, going forward.").  While Judge Polster ultimately found that the right to a jury trial existed in the proceeding before him, this was largely because Plaintiffs were still pursuing state and federal racketeering claims for which the right to a jury trial unquestionably attached.  *See In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 4621690, at *3 (N.D. Ohio Sept. 24, 2019) ("[T]he great majority of facts the jury will need to find to decide plaintiffs' legal claims (federal RICO, Ohio Corrupt Practices Act, and civil conspiracy) are the same as those any finder of fact would have to determine to decide the nuisance claims.").

the right to a jury trial.[5]  Similarly, in the course of interpreting similar state constitutional provisions, numerous state courts have refused to find a right to a jury trial in public nuisance actions seeking abatement.[6]

---

[5]      *See, e.g.*, *Nat'l Ass'n for Advancement of Colored People (NAACP) v. Acusport Corp.*, 226 F. Supp. 2d 391, 397 (E.D.N.Y. 2002) (noting public nuisance actions challenging proliferation of firearm sales and seeking "recovery of costs incurred in abatement are equitable" and therefore do not require trial by jury) (citing authorities); *United States v. Wade*, 653 F. Supp. 11, 13 (E.D. Pa. 1984) ("[T]he Commonwealth has elected to seek recovery only of its costs incurred in abating the nuisance . . . relief [that] is in the nature of equitable restitution.  The non-generator defendants therefore have no right to a trial by jury of the issues presented in the nuisance count."); *Conner v. City of Santa Ana*, 897 F.2d 1487, 1493 (9th Cir. 1990) ("The City was proceeding to abate a nuisance; it was not proceeding under a criminal forfeiture statute.  Therefore, a jury was not required to determine whether the Conners' automobiles constituted a nuisance. . . ."); *Citizens for Alternatives to Radioactive Dumping v. CAST Transp., Inc.*, No. CV 99-321 MCA/ACT, 2004 WL 7338006, at *15 (D.N.M. Sept. 30, 2004) (court in public nuisance abatement action concluding "both the nature of the cause of action and the remedy sought here compel the conclusion that this action is one in equity to which no constitutional right to a jury trial attaches").

[6]      *See, e.g.*, *Commonwealth v. United Food Corp.*, 374 Mass. 765, 778, 374 N.E.2d 1331, 1342 (1978) ("[A]n injunction against the future maintenance of a public nuisance may properly be entered without the involvement of a jury."); *State ex rel. Wilcox v. Ryder*, 126 Minn. 95, 106, 147 N.W. 953, 957 (1914) ("As to their claim of right to jury trial, even if the action be held civil in all its details, it is sufficient to say that in its main features the proceeding is unquestionably equitable, and that when a court of equity properly assumes jurisdiction of a cause for one purpose it acquires it for all and grants full relief."); *King v. Commonwealth*, 194 Ky. 143, 238 S.W. 373, 375 (1922) ("As the defendant was not anciently entitled to trial by jury in cases where the relief sought was purely equitable, as in this case, the seventh constitutional provision relied upon has no application."); *State ex rel. Miller v. Anthony*, 72 Ohio St. 3d 132, 133, 647 N.E.2d 1368, 1369 (1995) ("[T]he Ohio Constitution did not preserve the right to a jury trial in nuisance abatement actions."); *Balch v. State ex rel. Grigsby, Cnty. Atty.*, 65 Okla. 146, 164 Pac. 776 (1917) ("In an action by the state to abate a public nuisance, the defendant is not entitled to a jury trial."); *Commonwealth v. Dietz*, 285 Pa. 511, 517-518, 132 A. 572, 574 (1926) (finding "courts of equity may be given jurisdiction to abate a common nuisance which affects the public health" and noting "this has long been a subject within the sphere of equitable relief at the complaint of those entitled to act for the public"); *State ex rel. State Bd. of Milk Control v. Newark Milk Co.*, 118 N.J. Eq. 504, 512, 179 A. 116, 121 (1935) (statute authorizing state milk control board to sue in chancery in name of state, on relation of board, for injunction to prohibit habitual violations of Milk Control Act or of orders or rules issued by board held not invalid as violating constitutional guaranty of jury trial in criminal prosecutions and holding that equity has inherent power to restrain threatened nuisances dangerous to health of whole community).

To the extent that some Plaintiffs are seeking any damages in addition to abatement, that relief is incidental and does not implicate the right to a jury trial.  In *McMechen v. Hitchman-Glendale Consolidated Coal Co.*, this Court held that "[a] court of equity, having jurisdiction in such case to abate the nuisance, may assess, and enter a decree for, such damages, . . . the jurisdiction so to do [being] merely incidental to the exercise of the jurisdiction to abate the nuisance."  88 W. Va. 633, 107 S.E. 480, 481 (1921).  This also applies to prospective costs.  *See State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 200 W. Va. 221, 245, 488 S.E.2d 901, 925 (1997).  Accordingly, the Panel quite correctly recognized that "any payment of funds by Defendants would be not to compensate Plaintiffs for their past damages or expenditures, but to remediate the alleged public nuisance – the opioid crisis."  JA000828 ¶ 17.[7]

Nor does the Court's holding in *Realmark Developments, Inc. v. Ranson*, 214 W. Va. 161, 588 S.E.2d 150 (2003), which is cited repeatedly by Defendants, demand a different result.  In *Realmark*, the Court held that "[i]n determining whether an action is legal or equitable in nature, both the issues involved and the remedy sought are examined."  *Id.* at 164, 588 S.E.2d at 153.  That case concerned the unjust enrichment claims of private parties who sought a legal remedy:  money damages to compensate them for the increase in the market value of a property or, alternatively, compensation for costs associated with improvements they had made.  Because the private party plaintiffs sought traditional damages, the Court found the claim was one at law.

---

[7]     Defendants, citing *Bishop Coal Co. v. Salyers*, 181 W. Va. 71, 380 S.E.2d 238 (1989), argue that the merger of law and equity renders *McMechen*'s holdings superseded.  *See* Pet. 0694 at 21.  Defendants ignore that *Bishop Coal* recognized that "in cases in which 'public rights' are being litigated-e.g., cases in which the Government sues in its sovereign capacity to enforce public rights," adjudication without a jury is constitutionally permissible.  181 W. Va. at 77, 380 S.E.2d at 244 (quoting *Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*, 430 U.S. 442, 450 (1977)).

11

Here, by contrast, the plaintiffs asserting the equitable claim of public nuisance to enforce public rights seek the equitable remedy of abatement.  *See id.* at 164, 588 S.E.2d at 153 ("Generally, an action is one in equity if it is based on equitable rights and equitable relief is sought."); *Ralston*, 48 W. Va. 170, 36 S.E. at 456 ("Courts of equity have an ancient and unquestionable jurisdiction to prevent or abate public nuisance."); *In re Nat'l Prescription Opiate Litig.*, 2019 WL 4194272, at *3 ("Unlike tort damages that compensate an injured party for past harm, abatement is equitable in nature and provides a prospective remedy that compensates a plaintiff for the costs of rectifying the nuisance.").  Moreover, any potential monetary award associated with any abatement remedy also would be equitable, not legal.  *See In re Nat'l Prescription Opiate Litig.*, 2019 WL 4043938, at *1 ("If the offending party is unable or unwilling to abate, the harmed party can, when appropriate, abate the nuisance themselves or ask the court for the right to do so, and then seek compensation for the costs of abating the nuisance.  This compensation is equitable in nature.  The goal is not to compensate the harmed party for harms already caused by the nuisance.").  *Realmark* is thus readily distinguishable, and the Court should not expand *Realmark* – which was limited to an unjust enrichment claim brought by private plaintiffs – to equitable claims of public nuisance that seek equitable relief in the form of abatement, especially when those claims are brought by governmental plaintiffs.

**B.**     **The Panel was not required to submit Plaintiffs' related legal claims to a jury before trying the liability phase of the public nuisance claim.**

Defendants contend that because "Plaintiffs have other pending legal claims, and Defendants unquestionably retain the right to have a jury trial on the factual and legal issues that are common to all pending claims," convening a non-jury trial on the public nuisance claim "before those issues are tried will impair the jury trial right that indisputably exists as to those intertwined claims."  Pet. 0694 at 22.  Defendants go on to assert that the Panel "***must*** first submit to a jury

any common factual issues," citing to *Camden-Clark* in support.  *Id.* at 23 (emphasis added).  But the Panel previously found "Defendants' reliance on *Camden-Clark* misplaced," due to "the potential danger of letting requests for injunctive relief interfere with jury trials *in the context of employment cases,* because an employer could, in theory, always seek an injunction before taking action adverse to an employee, thereby greatly reducing the likelihood a jury would ever hear the employee's potential counterclaims," holding that "[u]nlike the employment law case in *Camden-Clark,* the Opioid Litigation concerns a national public health emergency."  JA000392-393.

Even if there is some overlap in factual issues between claims, the Panel was well within its discretion to try those issues as they relate to the public nuisance claim.  *See* Syl. Pt. 3, *Appalachian Power Co.* ("A creative, innovative trial management plan developed by a trial court which is designed to achieve an orderly, reasonably swift and efficient disposition of mass liability cases will be approved so long as the plan does not trespass upon the procedural due process rights of the parties.").  The fact that there may be claims that are proper for jury resolution does not preclude the Panel from crafting a trial plan that it sees fit because a jury will still ultimately decide any legal, as opposed to equitable, claims at a later stage.  The Panel's liability-only trial of the public nuisance claims does not divest the jury of its legal fact-finding role.

Defendants cite to *West Virginia Human Rights Commission v. Tenpin Lounge, Inc.*, 158 W. Va. 349, 211 S.E.2d 349 (1975), for the premise that it is "the usual practice" to try the legal issues to the jury first and then to try the equitable issues to the court.  Pet. 0694 at 23.  However, there is no absolute requirement to do so under the West Virginia Constitution or the Trial Court Rules.  Even under Defendants' non-controlling Seventh Amendment case law, there exists some "very narrowly limited" discretion to decide what claim "should be tried first."  *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959).  Indeed, the Panel rightly held that *Beacon Theatres* "does not alter the Court's finding.  In that case, the United States Supreme Court held that 'only

13

under the most imperative circumstances can right to a jury trial of legal issues be lost through

prior determination of equitable claims.'" JA000394 (citing *Beacon Theatres*, 359 U.S. at 510).

The Panel then correctly noted that

> [h]ere, the right to a jury trial of legal issues is not lost. Rather, the Court can try
> the equitable issue of liability for public nuisance before the parties go to the
> significant expense of time, money and effort to determine their legal issues. If the
> Court finds there is no liability for public nuisance as to one or more Defendants,
> there is no need to proceed with the time and expense of Phase II discovery
> regarding the cost of abatement and damages. Only Defendants adjudged liable for
> public nuisance will proceed with Phase II discovery and trial.

*Id.*

In any event, the question of whether any determination made by the Panel in a Phase I

bench trial will be binding on the parties if other claims are later tried to a jury is not yet ripe, and

will not become ripe unless and until there is a Phase III trial on damages claims (following the

nuisance liability and abatement remedy proceedings) or other causes of action that do not sound

in equity. Put simply, as the Panel concluded, "Plaintiffs have alleged a public nuisance that affects

the health, morals and safety of communities in West Virginia. Thus, the Panel has equitable

jurisdiction to determine whether a public nuisance exists and, if so, the cost of abating such

nuisance." JA000815.

III.   **THE PANEL DID NOT COMMIT CLEAR LEGAL ERROR WHEN IT STRUCK
DEFENDANTS' NOTICES OF NON-PARTY FAULT RELATED TO PLAINTIFFS'
PUBLIC NUISANCE CLAIMS**

A.   **The Apportionment Statutes apply only to claims for damages.**

With respect to tort actions prior to 2005 (which are not implicated here), West Virginia

was "committed to the concept of joint and several liability among joint tortfeasors" permitting a

plaintiff to sue "any or all of those responsible . . . and collect his damages from whomever is able

to pay, irrespective of their percentage of fault." Syl. Pt. 2, *Sitzes v. Anchor Motor Freight, Inc.*,

169 W. Va. 698, 698, 289 S.E.2d 679, 681 (1982). In 2005, the Legislature limited joint liability

in damage actions sounding in tort to parties found greater than 30% at fault.  W. Va. Code § 55-7-24(a) (repealed 2015).[8]  Apportionment under the 2005 Act was appropriate only between "the parties in the litigation at the time the verdict is rendered."  *Id.* at § 55-7-24(a)(1).

The 2005 Act was repealed in 2015.  H.B.2002, 2015 Leg. 82nd Sess. (W. Va. 2015) (codified at W. Va. Code §§ 55-7-13a through 13d).  The 2015 Act – under which Defendants submitted their Notices of Non-Party Fault – provides that "[i]n any ***action for damages***, the liability of each defendant ***for compensatory damages*** shall be several only and may not be joint."  W. Va. Code § 55-7-13c(a) (emphases added).   Like the 2005 Act, the 2015 Act contains exceptions.  *See id.* (joint liability imposed "on two or more defendants who consciously conspire and deliberately pursue a common plan or design to commit a tortious act or omission"); *id.* at § 55-7-13c(h)(2) (joint liability imposed when defendant's "acts or omissions constitute criminal conduct"); *id.* at § 55-7-13d(b) (person may be "held liable for the portion of comparative fault assessed against another person who was acting as an agent or servant of such person, or if the fault of the other person is otherwise imputed or attributed to such person by statute or common law").  However, unlike the 2005 Act's focus on the parties "in the litigation at the time of verdict," the 2015 Act requires that the trier of fact "consider the fault of all persons who contributed to the alleged ***damages*** regardless of whether the person was or could have been named as a party to the suit."  *Id.* at § 55-7-13d(a)(1) (emphasis added).

Accordingly, by its very terms, the 2015 Act applies only to actions at law seeking damages.  *See* W. Va. Code § 55-7-13d(a)(1) (permitting trier of fact to consider the fault of "all

---

[8]     The 2005 Act did include exceptions that applied "the rules of joint and several liability" to "[a]ny party who acted in concert with another person as part of a common plan or design resulting in harm," or in the in case of "[a]ny party who acted with the intention of inflicting injury or damage."  W. Va. Code §§ 55-7-24(b)(1), (2) (repealed 2015).

persons who contributed to the alleged ***damages***" (emphasis added)); *id.* at § 55-7-13d(e)

("'Damages' includes all damages which may be recoverable for personal injury, death, or loss of

or damage to property.").[9]   The 2015 Act further provides that "[e]ach defendant shall be liable

only for the amount of compensatory damages allocated to that defendant."  *Id.* at § 55-7-13c(a).

The 2015 Act's comparative fault and apportionment provisions, therefore, expressly apply only

to "action[s] . . . seeking damages," and limit a defendant's liability to compensatory damages

allocated to that defendant.  *Id.* at § 55-7-13a(b); *see also id.* at § 55-7-13a(a) ("comparative fault"

defined with reference to "an alleged personal injury or death or damage to property"); *id.* at § 55-

7-13b (defining "defendant" "for purposes of determining an obligation to pay damages"); *id.* at

§ 55-7-13c(a) ("In any action for damages, the liability of each defendant for compensatory

damages shall be several only and may not be joint.").[10]

Despite the statute's clear limitation to damages claims, Defendants try to force its

application to Plaintiffs' equitable abatement claims here.  Defendants argue that "the State

characterizes its 'abatement' remedy as 'damages.'"  Pet. 0751 at 5.  To be clear, the State does

not seek damages for its public nuisance claim, even if Defendants will ultimately be required to

pay money as part of any judgment.  Any such payment does not transform Plaintiffs' equitable

---

[9]      Similarly, several liability under the 2005 Act also only applied to damage claims.  *See*
W. Va. Code § 55-7-24(a)(2) (repealed 2015) (in actions arising from tortious conduct liability of
defendant less than 30% at fault, liability is several and such defendant "shall be liable only for
the ***damages*** attributable to him or her" (emphasis added)).

[10]      Even if the Apportionment Statutes did apply (and they do not), the 2015 Act is not
retroactive.  It explicitly applies only to causes of action that accrued on or after its effective date,
May 25, 2015.  W. Va. Code § 55-7-13d(h).  Here, the State's claims first arose prior to May 25,
2015.  *See* JA000823 ("Because the Panel concludes that the Apportionment Statutes (both the
2005 Act and 2015 Act) do not apply to Plaintiffs' equitable claims of public nuisance, there is no
need to address Defendants' other arguments regarding application of the Apportionment
Statutes.").

claims into damages claims.  *See* JA000823 ¶ 5 (holding that the Apportionment Statutes "do not apply to Plaintiffs' equitable claims of public nuisance.").  Rather, payment of money constitutes damages only if it compensates the plaintiff for an injury or loss; payment for costs incurred to abate a public nuisance is equitable relief, as numerous courts, including the Panel, the U.S. Supreme Court, and the federal MDL court, have recognized.  *See* JA000823 ¶ 7 (Defendants' attempt to apply Apportionment Statutes "to equitable claims is contrary to established common law."); *Bowen*, 487 U.S. at 893 ("The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'"); *In re Nat'l Prescription Opiate Litig.*, 2019 WL 4043938, at *1 (noting payment for costs incurred to abate nuisance is equitable relief); *In re Nat'l Prescription Opiate Litig.*, 2019 WL 4194272, at *3 ("[T]he fact that 'nuisance' is sometimes characterized as a variety of 'tort' does not change the fact than an equitable claim to abate a nuisance is not a tort claim seeking compensatory damages. . . . Unlike tort damages that compensate an injured party for past harm, abatement is equitable in nature and provides a prospective remedy that compensates a plaintiff for the costs of rectifying the nuisance.").

Indeed, this Court has long recognized that the "distinction between abatement of nuisances and recovery of damages for injuries occasioned by wrongful acts, constituting nuisances," is both "apparent" and "vast." *McMechen*, 88 W. Va. at 633, 107 S.E. at 482; *see also Duff v. Morgantown Energy Assocs. (M.E.A.*), 187 W. Va. 712, 717, 421 S.E.2d 253, 258 (1992) (noting party, upon establishing nuisance, "will be entitled to relief therefrom by the abatement of the nuisance **and** the defendants will be held liable for damages" (emphasis added)); *State ex rel. Ball v. Cummings*,

208 W. Va. 393, 402, 540 S.E.2d 917, 926 (1999) (severing claims after finding issues involved in action for monetary damages distinct from claim seeing abatement of pollution).[11]

Other courts and commentators agree that the aim of an abatement action is to reduce or eliminate a nuisance prospectively as contrasted with an action for damages that seeks to compensate for prior harm.  *See, e.g.*, *San Diego Unified Port Dist. v. Monsanto Co.*, No. 15cv578-WQH-JLB, 2018 WL 4185428, at *5 (S.D. Cal. Aug. 30, 2018) (recognizing "stark" distinction between abatement as equitable remedy for prospective relief and damages that compensate for "prior accrued harm"); *Town of Superior v. Asarco, Inc.*, 874 F. Supp. 2d 937, 948-49 (D. Mont. 2004) (noting award of damages in nuisance case "is retroactive, applying to past conduct, while an injunction applies only to the future"); Restatement (Second) of Torts § 821B, cmt. i ("On the other hand an award of damages is retroactive, applying to past conduct, while an injunction applies only to the future.").  As the California Court of Appeals explained:

> An equitable remedy's sole purpose is to eliminate the hazard that is causing prospective harm to the plaintiff.  An equitable remedy provides no compensation to a plaintiff for prior harm.  Damages, on the other hand, are directed at compensating the plaintiff for prior accrued harm that has resulted from the defendant's wrongful conduct.  The distinction between these two types of remedies frequently arises in nuisance actions.

*People v. ConAgra Grocery Prods. Co.*, 227 Cal. Rep. 3d 499, 569 (Dist. Ct. App. 2017).  Defendants' contention that that "the pursuit of monetary awards to compensate for past and future losses, including payment for future treatment and services, is a form of compensatory damages,"

---

[11]     These holdings are consistent with the Restatement (Second) of Torts § 821B, cmt. i (1979), which provides that "[t]here are numerous differences between an action for tort damages and an action for an injunction or abatement, and precedents for the two are by no means interchangeable."

Pet. 20-0694 at 6, is both inapplicable (as to compensation for past losses) and incorrect (as to payment for future treatment and services, i.e., abatement).[12]

### B.     Plaintiffs' public nuisance claims first accrued before the enactment of the 2015 Act.

Defendants next argue that "under the plain language of the 2015 Act, Defendants are entitled to apportion fault." Pet. 0751 at 6. The problem with this argument is that the 2015 Act expressly applies only to "causes of action arising or accruing on or after the effective date of its enactment," which was May 25, 2015. W. Va. Code § 55-7-13d(h). *See also Kisner v. Fiori*, 151 W. Va. 850, 856, 157 S.E.2d 238, 242 (1967) ("When, however, the language of the statute expressly declares . . . that the statute shall not be retroactive it is obvious that the statute must be given prospective effect."). Here, Plaintiffs' claims first arose or accrued prior to May 25, 2015, and the 2015 Act is therefore inapplicable. *See, e.g.*, JA000004 ¶ 10 (alleging that "Defendants, through a sophisticated and highly deceptive and unfair marketing campaign that began in the late 1990s, deepened around 2006, and continues to the present, set out to, and did, reverse the popular and medical understanding of opioids"); JA000227 ¶¶ 659-60 (alleging that "[be]tween the years in question, including 2007 through 2016, the Distributors Defendants have shipped and distributed millions of doses of highly addictive controlled opioid pain killers into the Counties" and that "[m]any of these orders should have been stopped, or at the very least, investigated as

---

[12]     Similarly, in the realm of civil penalties and damages, this Court has made clear, "civil penalties and . . . damages are not one and the same." *Vanderbilt Mortg. & Fin., Inc. v. Cole*, 230 W. Va. 505, 512, 740 S.E.2d 562, 569 (2013). This is consistent with the understanding of the purpose and distinction between damages and civil penalties. For example, the Fourth Circuit has held that "civil penalties, likewise, are not 'damages' payable to the victim, but fines or assessments payable to the government." *Ellett Bros. v. U.S. Fid. & Guar. Co.*, 275 F.3d 384, 388 (4th Cir. 2001). Indeed, the Panel refused to grant Defendants' notices of non-party fault with respect to Plaintiffs' West Virginia Consumer Credit and Protection Act claims. Defendants do not challenge this ruling in their writs.

potential suspicious orders").[13]  There can be no serious dispute that Defendants' conduct that first

gave rise to Plaintiffs' claims for public nuisance occurred well before May 25, 2015.[14]

Likewise, the general rule in West Virginia is that a cause of action accrues or arises when

the acts constituting breach of a duty occur resulting in an injury.  *See Albright*, 202 W. Va. at 301,

503 S.E.2d at 869 (quoting Syl. Pt. 1, in part, *Cart*, 188 W. Va. 241, 423 S.E.2d 644 (1992)).  At

that time, the claim arises or accrues because the right to bring suit then exists.  Other authorities

confirm that a claim first arises or accrues when a present enforceable demand or right exists.  *See*

Black's Law Dictionary (11th ed. 2019) ("The term 'accrue' in the context of a cause of action

means to arrive, to commence, to come into existence, or to become a present enforceable demand

or right." (internal quotation omitted));  *Cone v. Hankook Tire Co.*, No. 14-1122, 2016 WL

7383731, at *3 (W.D. Tenn. Dec. 20, 2016) (quoting Black's Law Dictionary (10th ed. 2014));

*Cooey v. Strickland*, 479 F.3d 412, 419 (6th Cir. 2007) (cause of action accrues "when the wrongful

---

[13]  The general rule in West Virginia is that a cause of action accrues or arises when the acts constituting breach of a duty occur resulting in an injury.  *See Albright v. White*, 202 W. Va. 292, 301, 503 S.E.2d 860, 869 (1998) (quoting Syl. Pt. 1, in part, *Cart*, 188 W *Cart v. Marcum*, 188 W. Va. 241, 243-44, 423 S.E.2d 644, 646-47 (1992). Va. 241, 423 S.E.2d 644 (1992)).  At that time, the claim arises or accrues because the right to bring suit then exists.

[14]  In their writs, Defendants do not argue that Plaintiffs' claims are barred by the statute of limitations.  The Panel has repeatedly rejected such arguments.  *See* JA000747.  This is because the date of accrual of a claim is distinct from the date the statute of limitations starts to run because the statute of limitations for a claim that has arisen is still subject to tolling doctrines.  *See Albright*, 202 W. Va. at 301, 503 S.E.2d at 869 ("Having determined that Albright was under the disability of infancy at the time his cause of action against the defendants accrued, it is now necessary to determine to what date the provisions of § 55-2-15 tolled the governing statute of limitations."); *Cart*, 188 W. Va. at 243-44, 423 S.E.2d at 646-47 (noting "[t]he statute of limitations ordinarily begins to run when the right to bring an action for personal injuries accrues which is when the injury is inflicted," but recognizing tolling).  Here, there can be no argument that the statute of limitations for Plaintiffs' public nuisance claims has run because the public nuisance has not been abated.  *See Kermit Lumber*, 200 W. Va. at 245, 488 S.E.2d at 925 ("A public nuisance action usually seeks to have some harm which affects the public health and safety abated.  Thus, until such harm is abated, the public nuisance is continuing and the statute of limitations does not accrue." (footnote call number omitted))

act or omission results in damages"); *Fujimaki v. Ichikawa*, No. 324173, 2015 WL 7288054, at *3 (Mich. Ct. App. Nov. 17, 2015) (claim accrues when "all the elements of the claim have occurred").

Prior to the enactment of the 2015 Act, Defendants repeatedly engaged in unlawful and wrongful conduct that unreasonably interfered with and had a substantial impact upon the public health of Plaintiffs' communities.  Accordingly, Plaintiffs' right to bring their public nuisance pre-dates the enactment of the 2015 Act and Defendants' notices of non-party fault are thus invalid. The Court may therefore affirm the Panel's ruling on this independent basis.

## CONCLUSION

For all the reasons set forth, the Court should deny Petitioners' Verified Petitions for Writ of Prohibition.

Dated:  November 18, 2020

By:

/s/ *Ann L. Haight*
Ann L. Haight (WV State Bar No. 1527)
Deputy Attorney General
Vaughn T. Sizemore (WV State Bar No. 8231)
Deputy Attorney General
Abby G. Cunningham (WV State Bar No. 13388)
Assistant Attorney General
Consumer Protection & Antitrust Division
812 Quarrier Street, First Floor
Post Office Box 1789
Charleston, West Virginia 25326-1789
Telephone: 304-558-8986
Fax: 304-558-0184
Email: Ann.L.Haight@wvago.gov
Email: Vaughn.T.Sizemore@wvago.gov
Email: Abby.G.Cunningham@wvago.gov

Linda Singer, Esquire (*pro hac vice pending*)
Elizabeth Smith, Esquire (*pro hac vice pending*)
Motley Rice LLC
401 9th Street NW, Suite 1000
Washington, DC  20004
Telephone: 202-386-9627
Fax: 202-386-9622
Email: lsinger@motleyrice.com
Email: esmith@motleyrice.com

Charles R. "Rusty" Webb (WV Bar No. 4782)
The Webb Law Centre, PLLC
716 Lee Street, East
Charleston, West Virginia 25301
Telephone: (304) 344-9322
Facsimile: (304) 344-1157
rustrustywebb.com

*Counsel for Respondent State of West Virginia
ex rel. Patrick Morrisey, Attorney General.*

By: _____
Anthony J. Majestro, Esq. (WV Bar # 5165)
Powell & Majestro, PLLC
405 Capitol Street, Suite P-1200
Charleston, WV 25301
Telephone 304-346-2889 / 304-346-2895 (F)
amajestro@powellmajestro.com

/s/ *Paul T. Farrell*_____
Paul T. Farrell, Jr., Esq. (WV Bar # 7443)
Farrell Law
422 Ninth Street, 3rd Floor
Huntington, WV 25701
Phone: 304.654.8281
paul@farrell.law

*Counsel for Respondents in:*

*City of Beckley v. Allergan PLC, et. al., et al.,*
Marshall County Civil Action Nos. 20-C-34

*City of Fairmont v. Allergan PLC, et. al., et al.,*
Marshall County Civil Action Nos. 20- C-55

By:      /s/ *Clayton J. Fitzsimmons*
Robert P. Fitzsimmons (WV Bar # 1212)
Clayton J. Fitzsimmons (WV Bar # 10823)
Mark A. Colantonio (WV Bar #4238)
**FITZSIMMONS LAW FIRM PLLC**
1609 Warwood Avenue
Wheeling, WV 26003
Telephone: (304) 277-1700

*Counsel for Respondents in:*

*Brooke County Commission, et al. v. Purdue Pharma L.P., et al.,* Marshall County Civil Action Nos. 17-C-248 to 17-C-255

*Monongalia County Commission, et al. v. Purdue Pharma L.P., et al.*, Marshall County Civil Action Nos. 18-C-222 & 18-C-233 to 18-C-236

By:      /s/ *Stephen B. Farmer*
Stephen B. Farmer (WV Bar # 1165)
**FARMER, CLINE & CAMPBELL, PLLC**
746 Myrtle Road
P.O. Box 3842
Charleston, West Virginia 25338
Telephone: 304-346-5990

/s/ *Timothy R. Linkous*
Timothy R. Linkous (WV Bar # 8572)
**LINKOUS LAW, PLLC**
179 Hanalei Drive, Suite 100
Morgantown, WV 26508
Telephone: 304-554-2400

*Counsel for Respondents in:*

*West Virginia University Hospitals, Inc., et al. v. Purdue Pharma L.P., et al.,* Civil Action Nos. 19-C-69 to 19-C-88; and 19-C-134 to 19-C-139

*West Virginia University Hospitals, Inc., et al. v. McKesson Corporation, et al.,* Civil Action Nos. 19-C-215 to 19-C-239

23

By:    /s/ *Letitia N. Chafin*

Letitia N. Chafin (WV Bar #7207)
**THE CHAFIN LAW FIRM, PLLC**
P.O. Box 1799
Williamson, West Virginia 25661
Telephone:  304- 235-2221

*Counsel for Respondents in:*

*The County Commission of Mason County, et al. v. Purdue Pharma L.P., et al.,* Marshall County Civil Action Nos. 19-C-4 to 19-C-9

*Mayor Peggy Knotts Barney, on Behalf of City of Grafton, and Mayor Philip Bowers, on Behalf of City of Philippi v. Purdue Pharma, L.P., et al.,* Civil Action Nos. 19-C-151 and 19-C-152

By:    /s/ *Kevin C. Harris*

Kevin C. Harris (WV Bar #8814)
Eric J. Holmes (WV Bar #8557)
**LAW OFFICE OF HARRIS & HOLMES, PLLC**
115 North Church St.
Ripley, West Virginia 25271
Telephone: (304) 372-7004

*Counsel for Respondents in:*

*Roane County Commission, et al., v. Mylan Pharmaceutical Inc., et al., Civil Action Nos 19-C-96 to 19-C-108*

By:    /s/ *Anne McGinness Kearse*

Anne McGinness Kearse (WV Bar # 12547)
Natalie Deyneka (WV Bar # 12978)
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Telephone:  843-216-9000
Fax:  843-216-9450

*Counsel for Respondents in:*

*City of Clarksburg, West Virginia., v. Allergan PLC, et al.,* Civil Action Nos. 19-C-259 to 19-C-26

24