IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON, <br><br> Plaintiff, <br><br> v. <br><br> AMERISOURCEBERGEN DRUG CORPORATION, et al., <br><br> Defendants. | Civil Action No. 3:17-01362 <br> Hon. David A. Faber |
| CABELL COUNTY COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> AMERISOURCEBERGEN DRUG CORPORATION, et al., <br><br> Defendants. | Civil Action No. 3:17-01655 <br> Hon. David A. Faber |

**DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR LEAVE TO FILE SUR-REPLY**

Plaintiffs' proposed sur-reply (Dkt. 1204-1)—filed two weeks after the hearing on the admissibility of IQVIA Xponent data—does not change anything. It addresses so-called "evidence" that could have been submitted and addressed in their opening motion, in reply, or at the hearing. Even now, Plaintiffs did not attach any of the five documents they cite, and far from "correcting" any alleged inaccuracies by Defendants, Plaintiffs mischaracterize the contents of those documents. The Court should reject the belated proposed sur-reply.

Plaintiffs are correct that Defendants did not file a *Daubert* challenge to exclude Lacey Keller's opinions. Regrettably, defense counsel misspoke during the hearing, for which she apologizes. But that does not alter the reasons why the IQVIA Xponent data is inadmissible.

1

First, it does not matter whether Dr. Keller relied on and testified about the data because an expert's reliance on hearsay does not make the hearsay admissible.[1]

Second, Defendants correctly noted that they did not possess the Xponent IQVIA data, they have not used it in operating their suspicious order monitoring systems, and the data is not intended for such purposes. Defendants repeatedly noted those facts in their opposition to Plaintiffs' motion,[2] and, if Plaintiffs had any basis to challenge those facts, they could and should have addressed them in reply or at the hearing. Plaintiffs' own expert admitted that she is aware of no evidence that Defendants ever possessed the data. She said simply that they "could have" purchased the data.[3] Plaintiffs did not contest in their reply or at the hearing the admission by their expert, nor did they cite any additional "evidence" that Defendants ever purchased or possessed the data.[4]

---

[1] Fed. R. Evid. 703, Advisory Cmte. Notes, 2000 Amend. ("Rule 703 has been amended to emphasize that when an expert reasonably relies on inadmissible information to form an opinion or inference, the underlying information is not admissible simply because the opinion or inference is admitted."); Dkt. 1124 at 4; Ex. 1 at 62:8–25 ("[THE COURT] [I]f Keller testifies that this information was relied upon to support the expert opinions, does that make the data admissible? [MS. HARDIN] No, sir, it does not…. [I]f she is permitted to testify, she could testify only to what she's already said, of course, which is that this data exists and could be purchased. She will, of course, be locked into her testimony, her admissions that we didn't buy it, we didn't have it, and she has no opinions about whether or not we should have gotten it. But experts often rely on—or are permitted to rely on evidence that is otherwise hearsay, as Your Honor well knows. That does not give the underlying evidence independent evidentiary value.").

[2] *See* Dkt. 1124 at 1 ("[T]here is no evidence that any Defendant ever purchased or considered purchasing the IQVIA Xponent data series that Plaintiffs seek to have admitted."); *id.* at 2 ("Nothing in IQVIA's marketing material for Xponent holds the data out as providing useful information for wholesale distributors' suspicious order monitoring ('SOM') systems."); *id.* at 8 ("There is not a shred of evidence that any Defendant ever possessed Xponent data.").

[3] *Id.* at 3; Dkt. 1124-2 at 12, 15.

[4] Dkt. 1152 at 2 ("Plaintiffs have shown *constructive* knowledge through their experts ….") (emphasis added); *id.* at 4 n.4 ("the information … *could have been* gleaned [by] distributors") (emphasis added).

Their belated contention that five documents render inaccurate anything said by Defendants is not true.

1. Plaintiffs cite a 2013 IMS slide deck presentation given to Cardinal Health. That presentation is not about Xponent data, opioids, or uses of data for suspicious order monitoring programs. The presentation is about how a different set of IMS data—not Xponent—could be used █████████████████████████████████████████████████ ████████████████████████████████████████. Nothing in that deck suggests that Xponent is marketed to distributors or that any of the three Defendants ever possessed or used the data. Plaintiffs cite in particular four slides from the 66-slide deck:

- The first slide is about ██████████████████████████████████ ██████████████.[5] The slide and the data discussed have nothing to do with suspicious order monitoring systems or Xponent data.

- The second is about ███████████████████████████████████ ████████████████████████████████. It is plain from the face of the document that it is not about "compliance reporting" related to suspicious order monitoring systems or "high prescribers" of opioids.[6]

- The third slide presents ████████████████████████████████████ ████████████████████.[7] The slide and the data discussed have nothing to do with controlled substances, suspicious order monitoring systems, or Xponent data.

---

[5] Ex. 2 (CAH_NYConsolidated-0852878).

[6] *Id.* (CAH_NYConsolidated-0852881).

[7] *Id.* (CAH_NYConsolidated-0852893).

- The last slide says only that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉."[8] Plaintiffs' suggestion that that slide indicates that Defendants possessed the Xponent data is, to quote them, "***patently false***." Dkt. 1204-1 at 2 (emphasis added).

2. The second document is a work order for IMS to provide Defendant McKesson with ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉."[9] The document has nothing to do with Xponent or suspicious order monitoring programs, and the ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.[10]

3. The third and fourth documents concern Defendant AmerisourceBergen's usage ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉.[11] That one Defendant received a ***different data set*** on a three-month-trial basis ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ does not render inaccurate Defendants' representations at the hearing and in their opposition that "distributors … monitor wholesale prescription orders placed by their pharmacy customers … on an order-by-order basis … [and] not … on a prescription-by-prescription basis" or that "there is no testimony, no evidence whatsoever that ***this data, this IQVIA data*** is ever used by anyone in

---

[8] *Id.* (CAH_NYConsolidated-0852887).

[9] Ex. 3 (MCKMDL00694704).

[10] *Id.* at MCKMDL00694706.

[11] Ex. 4, 5 (ABDCMDL05797143, ABDCMDL05797146).

order to maintain, set up, or operate a suspicious order monitoring system. . . ."[12]  Further, ▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓.[14]

AmerisourceBergen's receipt of a different data set (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓) on a limited basis does not have any bearing on the admissibility of the Xponent data series, which Defendants indisputably did not possess.

    4.    The fifth and final document is a 2004 Cardinal Health/IMS Information Services Agreement ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓"[15]—none of which have to do with suspicious order monitoring.

As Defendants noted in their opposition, while there is evidence that Defendants purchased, or considered purchasing, ***different*** data series sold by IQVIA or its predecessors, that is irrelevant to the question before the Court: the admissibility of the specific Xponent data



---

[12] Ex. 1 at 61:20–62:2 (emphasis added).

[13] Ex. 6 (ABDCDL00316441).

[14] *Id.* ("▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓." (emphasis added)).

[15] *******************_03192237).

series. Dkt. 1124 at 2. Whether or not Defendants "had and used [other] data sold by IQVIA," there is no dispute that Defendants did not possess or use Xponent data. Dkt. 1204-1 at 4.

* * *

The Court rightly questioned: "What's the link between this, this data and … the defendants in the case?" The answer remains: "***None***, ***none***. There is no link … because not only did [Defendants] not purchase the data," Plaintiffs' expert admitted that she has no opinion that Defendants *should have* purchased the data.[16]

The Court should reject Plaintiffs' untimely, inappropriate motion for leave to file the sur-reply and deny their motion to admit IQVIA Xponent data.

Dated: January 22, 2021

Respectfully submitted,

/s/ Steven R. Ruby
Michael W. Carey (WVSB No. 635)
Steven R. Ruby (WVSB No. 10752)
David R. Pogue (WVSB No. 10806)
Raymond S. Franks II (WVSB No. 6523)
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
drpogue@cdkrlaw.com
rsfranks@cdkrlaw.com

/s/ Ashley W. Hardin
Enu Mainigi
F. Lane Heard III
Jennifer G. Wicht
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP

---

[16] Ex. 1 at 59:14–60:23.

6

725 Twelfth Street NW
Washington, DC 20005
Tel:  (202) 434-5000
Fax:  (202) 434-5029
emainigi@wc.com
lheard @wc.com
jwicht@wc.com
ahardin@wc.com

*Counsel for Cardinal Health, Inc.*

*/s/ Timothy C. Hester*
Timothy C. Hester (DC 370707)
Laura Flahive Wu
Andrew P. Stanner
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
lflahivewu@cov.com
astanner@cov.com

*/s/ Paul W. Schmidt*
Paul W. Schmidt
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: (212) 841-1000
pschmidt@cov.com

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*Counsel for McKesson Corporation*

*/s/ Gretchen M. Callas*

7

Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, WV 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Drug Corporation*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 22nd day of January, 2021, the foregoing **redacted** *Defendants' Opposition to Plaintiffs' Motion for Leave to File Sur-Reply* was filed using the Court's CM/ECF system which will send notice of such filing to all counsel of record.

*/s/ Steven R. Ruby*
Steven R. Ruby (WVSB No. 10752)
