# EXHIBIT   1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

TRANSCRIPT OF PROCEEDINGS

```
----------------------------x
                            :
THE CITY OF HUNTINGTON,     :        CIVIL ACTION
                            :        NO. 3:17-cv-01362
        Plaintiff,          :
vs.                         :
                            :
AMERISOURCEBERGEN DRUG      :
CORPORATION, et al.,        :
                            :
        Defendants.         :
                            :
----------------------------x
                            :
CABELL COUNTY COMMISSION,   :        CIVIL ACTION
                            :        NO. 3:17-cv-01665
        Plaintiff,          :
                            :
vs.                         :
                            :
AMERISOURCEBERGEN DRUG      :
CORPORATION, et al.,        :
                            :
        Defendants.         :
                            :
----------------------------x
```

VIDEO PRE-TRIAL CONFERENCE

BEFORE THE HONORABLE DAVID A. FABER
SENIOR UNITED STATES DISTRICT JUDGE

JANUARY 6, 2021

1 　　　First, plaintiffs argue that this is admissible for the

2 non-hearsay purpose of notice, but that is incorrect.  The

3 standard -- Mr. Majestro kept saying that it can be for

4 notice because of what the defendants could have known, Your

5 Honor.  That is not the standard for notice.

6 　　　The standard for notice is what you knew or should have

7 known.  There is no dispute that the defendants did not have

8 this IQVIA Xponent data that the plaintiffs want to admit.

9 Their expert, Dr. Keller, admits that we didn't have the

10 data.

11 　　　So when Mr. Majestro says there's evidence that

12 distributors used this data, that is incorrect.  There

13 certainly is not evidence that these --

14 　　　　　THE COURT:  That's a concern I have.  What's the

15 link between this, this data and the, and the, and the

16 defendants in the case?  I mean, it seems to me --

17 　　　　　MS. HARDIN:  None, none.  There is no link, Your

18 Honor, because not only did we not purchase the data, Dr.

19 Keller was asked the very specific questions at her

20 deposition:  Should the defendants have gotten the data?

21 Should they have known about it even if they didn't?

22 　　　And I'll refer you, Your Honor, to her deposition on

23 September 18th of 2020.  It's Pages 156 and 157.  And here

24 are the questions she was asked.  And she, she admitted no

25 less than three times she has no basis to link this data to

1    this case.

2        She's asked:  "Is it a requirement of designing and

3    operating a suspicious order monitoring system to purchase

4    third-party data of any kind?"

5        Her answer:  "I don't know."

6        Then she's asked the very particular question:  "Is it

7    a requirement of operating and maintaining a suspicious

8    order monitoring system to purchase IQVIA Xponent data

9    specifically?"

10       Her answer:  "I don't know."

11       Then she goes on to say she doesn't know what the

12   requirements specifically say with regard to suspicious

13   order monitoring systems.  And she says twice on Pages 157

14   that she is not offering an opinion on the requirements.

15       So we don't have the data, no dispute about that.  And

16   there's not a shred of evidence in this case that we should

17   have gotten the data.  All we have is their expert making

18   the offhand remark that we could have gotten it, that we

19   could have purchased it for millions of dollars.

20       But if that was the standard for notice, Your Honor,

21   then anyone would be required to take notice of anything

22   because what you can do and what you should be required to

23   do are two very different things.

24       And it's not surprising that Dr. Keller was not able to

25   make a statement that distributors, wholesale distributors

1   should buy this data because this data isn't intended for

2   them.

3        This is data that is compiled by IQVIA for the purpose

4   of primarily pharmaceutical manufacturers.  And the

5   manufacturers use the data to determine market trends.  They

6   use it to determine compensation, where they need to

7   incentivize, and generally to determine the demand for their

8   product so that they can sell more of it.

9        Distributors don't use this data.  It's not marketed to

10  them by IQVIA and they don't typically buy it, and we didn't

11  typically buy it.

12       And the reason for that is, Your Honor, -- I mean, the

13  plaintiffs say that what we should have done -- what we

14  could have done -- excuse me -- what we could have done was

15  get this data in order to monitor physicians' prescribing.

16       But that is not what wholesale distributors do.  It is

17  not our obligation to police prescribers.  We do not

18  regulate the practice of medicine.  We have no ability to do

19  that.  And we have no authority to do that.

20       What distributors do is monitor wholesale prescription

21  orders placed by their pharmacy customers.  We do that on an

22  order-by-order basis.  We do not do that on a

23  prescription-by-prescription basis.

24       And there is no testimony, no evidence whatsoever that

25  this data, this IQVIA data is ever used by anyone in order

1    to maintain, set up, or operate a suspicious order

2    monitoring system.

3         So the answer to your question, Your Honor, is none.

4    There is no linkage between this data and, and this case and

5    these defendants and what the plaintiffs want to do with it.

6    So notice is not a sufficient basis on which to override a

7    hearsay objection.

8              THE COURT:  If, if Keller testifies that this

9    information was relied upon to support the expert opinions,

10   does that make the data admissible?

11             MS. HARDIN:  No, sir, it does not.  Her

12   opinions -- again, Dr. Keller's opinions are subject to

13   *Daubert* challenges, so I'll just put that out there on the

14   record just for Your Honor's knowledge.

15        But if, if she is permitted to testify, she could

16   testify only to what she's already said, of course, which is

17   that this data exists and could be purchased.

18        She will, of course, be locked into her testimony, her

19   admissions that we didn't buy it, we didn't have it, and she

20   has no opinions about whether or not we should have gotten

21   it.

22        But experts often rely on -- or are permitted to rely

23   on evidence that is otherwise hearsay, as Your Honor well

24   knows.  That does not give the underlying evidence

25   independent evidentiary value.

```
 1              I, Lisa A. Cook, Official Reporter of the United
 2    States District Court for the Southern District of West
 3    Virginia, do hereby certify that the foregoing is a true and
 4    correct transcript, to the best of my ability, from the
 5    record of proceedings in the above-entitled matter.
 6
 7
 8              s\Lisa A. Cook                    January 14, 2021
 9                  Reporter                              Date
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```