IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

THE CITY OF HUNTINGTON,

Plaintiff,

v.                              Civil Action No. 3:17-01362

AMERISOURCEBERGEN DRUG
CORPORATION, et al.,

Defendants.

v.                              Civil Action No. 3:17-01665

CABELL COUNTY COMMISSION,

Plaintiff,

v.

AMERISOURCEBERGEN DRUG
CORPORATION, et al.,

Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendants' motion for summary judgment on the ground that plaintiffs lack standing.  (ECF No. 238.)  For the reasons that follow, the motion is **DENIED**.

## I.   Background

Plaintiffs, a West Virginia city and a West Virginia county, proceed in this case on a single cause of action against defendants, three prescription drug distribution companies. That cause of action is public nuisance.  Defendants say that

the court should grant summary judgment because plaintiffs lack standing under West Virginia law to sue for the public nuisance plaintiffs allege.  Defendants say that for over one hundred years, courtroom doors have been shut to West Virginia municipalities that seek abatement of public nuisances, except for public nuisances that are (1) nuisances per se or (2) nuisances as defined pursuant to formal ordinances.  Plaintiffs disagree.  Plaintiffs say that defendants are mistaken about West Virginia law and that, even if defendants were correct, plaintiffs would still have standing.[1]

## II.  **Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The moving party has the burden of establishing that there is no genuine issue as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  This burden can be met by showing that the nonmoving party has failed to prove an essential element of the nonmoving party's case for which the nonmoving party will bear the burden of proof at trial.  Id. at

---

[1] Standing under Article III of the United States Constitution is not at issue in this motion.

2

322.  This is so because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.

Once there is a proper challenge to the sufficiency of the nonmoving party's evidence on an essential element, the burden shifts to the nonmoving party to produce sufficient evidence for a jury to return a verdict for the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find, by a preponderance of the evidence, that the plaintiff is entitled to a verdict . . . .

Id. at 252.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Id. at 250-51.  All reasonable inferences are to be drawn in the nonmoving party's favor.  See id. at 255.

## III.  Discussion

Defendants cast the analysis as straightforward:  A West Virginia municipality has no standing to sue to abate an alleged nuisance unless it is (1) a nuisance per se or (2) a nuisance per ordinance.[2]  Because neither exists here, defendants say,

---

[2] The court will refer to a nuisance created by conduct that violates an ordinance with the shorthand "nuisance per ordinance."

3

plaintiffs have no standing.  On the nuisance per se analysis, defendants frame the relevant activity broadly:  distribution of pharmaceutical drugs in general.  From this bird's-eye view, there cannot be a nuisance per se because plaintiffs cannot show that the drug distribution business is <u>always</u> a nuisance, as they must to show nuisance per se.  On the nuisance per ordinance analysis, defendants contend that because plaintiffs passed mere resolutions, not formal ordinances, there is no nuisance per ordinance here.[3]

Plaintiffs contest defendants' framing of both the rule and of the relevant activity.  The rule that plaintiffs put forward is that municipalities have standing to sue to abate common law public nuisances; they just do not have the power to make up nuisance law out of whole cloth and then summarily enforce it (as the municipalities in cases that defendants rely on sought to do).  Plaintiffs also frame the conduct at issue more narrowly, focusing on defendants' alleged violations of the law in connection with their drug distribution businesses. Plaintiffs say that they are trying to abate a public nuisance arising from defendants' failure to follow applicable drug

---

[3] Defendants also contend that even if plaintiffs had passed such ordinances, they would function as ex post facto laws or bills of attainder (if they purported to apply retroactively) and would very likely be preempted by federal law.

distribution laws, not shutter defendants' entire drug
distribution operations.

### a.   Applicable West Virginia Law

#### i.   Limitations on Municipalities' Nuisance Abatement Power

The standing rule that defendants set forth comes primarily
from Parker v. City of Fairmont, 79 S.E. 660 (W. Va. 1913).  The
Parker syllabus states,

> Under the provision of the charter of the city of
> Fairmont, same as Code 1906, ch. 47, sec. 28, that
> "the council shall have power to abate or cause to be
> abated anything which, in the opinion of a majority of
> the whole council, shall be a nuisance," the council
> may abate only that as a nuisance which is recognized
> as such per se, or branded as such by lawful statute
> or ordinance.

Id. at 660.  In that case, the City of Fairmont's charter
authorized it "to abate or cause to be abated anything which, in
the opinion of a majority of the whole [city] council, shall be
a nuisance."  Id. at 661.  Further, a Fairmont ordinance
provided that, upon a majority vote, the city council could
order the abatement of "any out-house, privy, hog-pen, stable or
other building."  Id.  If the owner did not comply with the
abatement order, the mayor could "direct the proper officer of
the city" to abate the nuisance by force.  See id.

The city ordered that a dye works be torn down.  Id.
Notably, the city did not involve the courts before seeking to

5

tear down this private property.  See id.  The lack of due
process and judicial oversight was a particular problem because
the charter provision essentially allowed the opinion of the
city council to determine what nuisance law was.  See id. at
661-62.  As the Supreme Court of Appeals of West Virginia
observed, the power that the Fairmont city council claimed was
essentially to "make the law and enforce it at the same time in
individual cases."  Id. at 662.  The court did not confront a
situation where a municipality was using the judicial process to
seek relief against what the law already held to be a nuisance.

Instead, the court confronted a situation where a
municipality was making up its own law and then applying that
law to "arbitrarily singl[e] out a lawful business of one
individual and mak[e] the law applicable to him alone."  Id.
This system was untenable because it made everyone in the city
subject not to law but to "the uncontrolled will of temporary
local authorities."  Id.  Because the nuisance determination was
based solely on the opinion of the city council, in this
instance the city was functioning as a government of men, not
laws.[4]  It was trying to use its "police power of abatement" to
create law and call something a nuisance "which by no law [was]

---

[4] Cf. Morrison v. Olson, 487 U.S. 654, 697 (1988) (Scalia, J.,
dissenting) ("It is the proud boast of our democracy that we
have 'a government of laws and not of men.'").

known to be such." See id. at 661.  Parker thus holds that a
city may not act as a legislative, executive, and judicial
branch all in one to suddenly decide that private property is a
nuisance and tear it down by force.

Donohoe v. Fredlock, 79 S.E. 736 (W. Va. 1913), upon which
defendants also rely, likewise presented a situation where a
city attempted to tear down private property without court
involvement on the purported power of its just-made-up law (the
"law" of the opinion of the city council).  There, the city
council of the City of Elkins decided a certain fence was a
nuisance, gave the owner "a few hours" to remove it, and, when
that time expired, directed the police to remove it and bill the
property owner for the cost of doing so.  Id. at 736.  Citing
Parker, the court disapproved of these "summary proceedings."
Id. at 736-38.  The city did not claim that the fence was a
nuisance under a statute or the common law, but, as in Parker,
only under the law of "because I said so."

### ii.  Nuisance Per Se

"A nuisance per se has been generally defined as an act,
occupation, or structure which is a nuisance at all times and
under any circumstances, regardless of location or
surroundings."  Duff v. Morgantown Energy Assocs., 421 S.E.2d
253, 257 n.8 (W. Va. 1992); Harless v. Workman, 114 S.E.2d 548,
548 (W. Va. 1960).  "[A] lawful business or a business

authorized to be conducted by the government cannot constitute a nuisance *per se*."  Burch v. Nedpower Mount Storm, LLC, 647 S.E.2d 879, 892 (W. Va. 2007).  There are varying degrees of strictness with which the term "nuisance per se" may be used. See Frye v. McCrory Stores Corp., 107 S.E.2d 378, 382 (W. Va. 1959) (quoting 66 C.J.S. Nuisances § 9 as follows:  "The lawful and proper use of property or conduct of business does not ordinarily create an actionable nuisance, and is never a 'nuisance per se' in the strict sense of that term.").  "[A]n act involving culpable and unlawful conduct causing unintentional harm" constitutes an "absolute nuisance," which is generally synonymous with a nuisance per se.  See 66 C.J.S. Nuisances § 3.

In Harless, the "operation by the defendant of a coal loading tipple and a coal crusher" was not a nuisance per se. 114 S.E.2d at 549, 556.  The court stated,

> Such business enterprise was not unlawful in itself, it did not constitute a nuisance per se, and the resultant injuries of which plaintiffs complain were not inflicted unlawfully, wilfully or wantonly.  The business was not concerned with a substance or product inherently dangerous or deleterious to the health of human beings.

Id. at 556.

In State ex rel. Ammerman v. City of Philippi, the court noted that a tire recapping business is not a nuisance per se: "No doubt some noises and some odors obnoxious to some

8

individuals result therefrom.  This is not sufficient, however, to constitute a business a nuisance per se."  65 S.E.2d 713, 713–16 (W. Va. 1951).  The city there had an ordinance making the ability to "erect or operate" any of several enumerated businesses "or shop of a like kind" subject to the approval of the city council on a case-by-case basis in the city council's discretion.  Id. at 714-15.  The lack of meaningful standards bounding the city council's discretion allowed for the exercise of power unmoored from any actual law:

> Sole discretion is attempted to be vested in the city council, which it may exercise in the interest of a favored applicant or against the interest of an unfavored one.  The value of the property of one citizen could be diminished or destroyed to the advantage of another property owner.  Power granted a municipality to regulate is not power to destroy. Such power does not accord with due process of law.

Id. at 715 (emphasis added).

The court there looked to Donohoe as a similar case of a municipality claiming the power to abate as a nuisance anything it deemed to be one in its sole discretion and noted that, as in Donohoe, there was no statute or ordinance to support the nuisance determination.  See id. at 716.  Importantly, the relevant conduct at issue was the tire capping business as a whole because the city council's denial of the permit prohibited the construction of the building for the business.  See id. at 713-14.

9

At issue in Duff was an alleged prospective nuisance involving a Morgantown power plant that "was constructed to produce steam for West Virginia University and electricity for Monongahela Power Company." Id. at 255.  There was a plan in place "to transport coal, gob, limestone and ash by truck into and out of the power plant facility." Id.  Plaintiffs sought an injunction against that plan. Id.  The court noted that "the heart of th[at] case" was "the prospective or anticipatory nature of the alleged nuisance." Id. at 257.  Because the alleged nuisance was anticipatory in nature, plaintiffs had to prove that the execution of the trucking plan would be a nuisance "beyond all ground of fair questioning." Id. (citing Syl. Pt. 3, Chambers v. Cramer, 38 S.E. 691 (W. Va. 1901)).  In holding that plaintiffs had not met their burden, the court noted, "Clearly, trucking is not a nuisance per se." Id. at 260.

Similarly, Burch involved prospective relief.  Homeowners sought "to permanently enjoin [the defendants] from constructing and operating [a] wind power facility." Burch, 647 S.E.2d at 885.  After noting that "a lawful business or a business authorized to be conducted by the government cannot constitute a nuisance per se," the court concluded that the "wind power facility cannot be considered a nuisance per se." Id. at 892-93.  It was the operation of a wind facility as a whole that was

10

alleged to be a nuisance, and the remedy sought was to stop the business before it even started.  Because the business as a whole was lawful and government-authorized, it could not be a nuisance per se.

### b.   More Than Two Paths to Municipal Standing

Having carefully reviewed the West Virginia case law upon which defendants rely, the court disagrees with the rule that defendants synthesize.  Specifically, the court disagrees that West Virginia municipalities lack standing to sue to abate a public nuisance unless it is (1) a nuisance per se or (2) a nuisance per ordinance.  West Virginia law leaves courtroom doors open to municipalities to seek relief in a manner consistent with due process for that which constitutes a public nuisance under law.  What West Virginia law forbids is summary municipal abatement of a purported nuisance that is not such under any law or is only a private nuisance.[5]

Parker is the anchor for the case law upon which defendants rely.  In contrast with this case, the municipality in Parker sought to abate a nuisance summarily and on the exclusive strength of its own declaration that something constituted a nuisance (in other words, on the strength no actual law).  To

---

[5] The dye works and the fence in Parker and Donohoe, respectively, would seem to be private nuisances, if nuisances at all.

the extent that plaintiffs here rely on applicable nuisance law
other than their own declaration that defendants' conduct
constitutes a nuisance (such as the common law), <u>Parker</u> does not
apply.

This case does not present the same concerns animating the
<u>Parker</u> decision.  The municipalities here are not attempting to

1. "make the law and enforce it at the same time in
   individual cases," <u>Parker</u>, 79 S.E. at 662;

2. bypass the courts and deny defendants due process;

3. "arbitrarily singl[e] out a lawful business . . .
   and mak[e] the law applicable to [it] alone," <u>id.</u>;
   or

4. subject defendants to "the uncontrolled will of
   temporary local authorities," <u>id.</u>

Extending <u>Parker</u> to the facts here stretches <u>Parker</u> too far.
The Supreme Court of Appeals of West Virginia has apparently not
had occasion to address a challenge to municipal standing like
this one, which challenges <u>not</u> the right of municipalities to
act peremptorily on their councilmembers' opinions of what a
nuisance is and order its abatement, but rather, the right of
municipalities to seek judicial redress to abate something
alleged to be a common law public nuisance.  The <u>Parker</u> court
acknowledged that the City of Fairmont had the power to "abate
what the law holds to be a nuisance."  <u>See</u> <u>id.</u> at 661-62.  That

12

is what plaintiffs seek to do here.  Even if <u>Parker</u> meant only nuisances per se, such a limitation should not be read to apply beyond cases like <u>Parker</u>.[6]

<u>Parker</u> had less to do with a municipality's power to seek judicial redress for a violation of existing law than it had to do with a municipality's power to make up nuisance law and then immediately issue an abatement order, bypassing the courts.  If localities truly do not have standing to sue to abate nuisances unless they are nuisances per se (under defendants' definition[7]) or nuisances pursuant to an ordinance, it would seem that localities could not sue to abate the following without an applicable ordinance:

1. a ranch where cattle are allowed to roam across public roads 99% of the time;

2. a hotel with a bed bug infestation 99% of the time; or

3. a driving range with a faulty net that allows golf balls to escape and hit pedestrians 99% of the time.

---

[6] For similar reasons, this case contrasts sharply with <u>Donohoe</u>.
[7] Defendants suggest that in order to be a nuisance per se, acts not only must be unlawful, but specifically declared a nuisance under the law.  The court's opinion is that illegal actions can be nuisances per se without such a specific declaration, but for purposes of the following examples, adopts defendants' nuisance per se rule.

None of these would qualify as nuisances per se under defendants' definition because they are generally lawful businesses and do not constitute a nuisance at all times (1% of the time, they are not a nuisance).  So, even if these conditions constitute a public nuisance under West Virginia law, municipalities cannot sue to abate them under defendants' municipal standing rule unless there is a statute or ordinance specifically declaring them to be a nuisance.

### c.   Illegal Acts As Public Nuisance Per Se

Even if defendants are correct that municipalities have no standing to sue in the absence of a nuisance per se or a nuisance per ordinance, plaintiffs still have standing because their claims arise from alleged illegal conduct that, if proved, may constitute a nuisance per se.[8]  The court finds plaintiffs' framing the relevant conduct for the nuisance per se analysis more persuasive than defendants' framing.  Thus, the relevant conduct is the alleged violations of law in connection with defendants' distribution of pharmaceutical drugs, not the lawful business of pharmaceutical drug distribution in general.

The cases suggest that the scope of the activity sought to be abated defines the relevant conduct.  In <u>Burch</u>, the main case

---

[8] As to nuisance per ordinance, defendants are correct (and plaintiffs appear to concede) that plaintiffs did not pass an ordinance of general applicability to serve as the law grounding their nuisance claim.

upon which defendants rely to conclude that the lawfulness of a
business precludes its ability to create a nuisance per se, the
"remedy sought" was "an injunction against the construction and
operation of [a] wind power facility."  647 S.E.2d at 892.  It
was the facility itself that the court determined not to be a
nuisance per se.  Id. at 893 ("[A]ppellees' wind power facility
cannot be considered a nuisance per se.").  The court in Burch
had occasion to discuss nuisances per se only by reference to
the remedy sought, which was to stop the entire wind turbine
project before it even started.

Because the remedy here is much more limited, Burch is not
on point.  Unlike the plaintiffs in Burch, plaintiffs here do
not seek to stop defendants' distribution operations in their
entirety.  The action here is much more targeted.  It seeks a
remedy for a subset of defendants' operations:  the allegedly
illegal subset.  Plaintiffs frame the nuisance per se as
defendants' alleged violations of law in connection with
prescription drug distribution.  They seek abatement of those
violations; they do not attack the very existence of defendants,
as the plaintiffs in Burch did.[9]

---

[9] Similarly, in Parker, the city sought to close the dye works
entirely.  In Ammerman, the city denied a permit for the
construction of the business (so it could not even begin to
operate).  In Harless, although it appears that plaintiffs
sought damages, not an injunction shutting down defendant's coal
crushing operation, the operation as a whole was the alleged

15

Moreover, the implications of defendants' reading of West Virginia municipal standing law are concerning.  If defendants are right, and a company's engaging in a generally legal line of business "conclusively establishes that their business activity cannot constitute a per se nuisance," (ECF No. 358, at 4), then it would seem that none of the following can be a nuisance per se:

1. a dental office that allows unlicensed staff to perform root canals when the dentist is on vacation;

2. a local restaurant's habitual service of alcohol to minors without checking identification; or

3. a local lawn maintenance company that applies illegal pesticides throughout the city.

Because the overall businesses of practicing dentistry, running a restaurant, and operating a lawn maintenance company are lawful, illegal acts that further those businesses would be shielded from the law of public nuisance regardless of the threat to public health.

---

nuisance, and a jury found that the defendant had "exercised due care and observed reasonable precautions to minimize the problem of coal dust necessarily incident to the operation of his lawful business enterprise."  114 S.E.2d at 556.  By contrast, here plaintiffs allege specific illegal conduct and seek to abate the results of that conduct.  In Duff, trucking—not operation of a power plant—was the relevant activity for the nuisance per se analysis, but that was because only that aspect of the business was at issue.

16

In the absence of West Virginia case law that is on point, the court finds instructive the case of Courtland Company v. Union Carbide Corporation, No. 2:19-CV-00894, 2020 WL 5047131, at *12 (S.D.W. Va. Aug. 26, 2020).  There, plaintiffs alleged a public nuisance per se against Union Carbide for the maintenance of a rail yard and landfill as open dumps.  Id. at *6.  The lawfulness of Union Carbide's general line of business was not in dispute.  But the court there held that the plaintiff stated a claim for public nuisance per se because it alleged illegal actions in relation to certain of Union Carbide's business operations:

> Courtland alleges, in its complaint, that UCC has operated the Filmont Landfill and the UCC Railyard as "open dumps," by collecting, processing, and disposing of both solid waste and hazardous waste without the required permit and without complying with applicable waste disposal standards, which makes both properties public nuisances per se under federal and state laws.

Id. at *12.

The West Virginia statute prohibiting open dumps does not expressly declare that an open dump is a nuisance; it simply declares the maintenance of one illegal.  See W. Va. Code Ann. § 22-15-10.  The same is true of the federal statutes.  See 42 U.S.C. §§ 6944-6945.  The court did not find such a specific declaration necessary.  Instead, the allegations of illegal conduct that "operate[d] to hurt or inconvenience an indefinite number of persons" sufficiently stated a cause of action for

17

public nuisance per se.  *Courtland*, 2020 WL 5047131, at *9.  The general lawfulness of Union Carbide's business did not preclude it from committing a nuisance per se.

Although the alleged illegal conduct here is not as obvious as the maintenance of an open dump, the same principles apply and lead the court to find that the alleged illegal acts in relation to defendants' prescription drug distribution, if proved, may constitute a nuisance per se.

## IV.  Conclusion

For the reasons expressed above, defendants' motion for summary judgment (ECF No. 238) is **DENIED.**

The Clerk is directed to send a copy of this Memorandum Opinion and Order to those counsel of record who have registered to receive an electronic NEF.

**IT IS SO ORDERED** this 31st day of March, 2021.

ENTER:

David A. Faber
Senior United States District Judge