## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>       Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG<br>CORPORATION, et al.,<br><br>       Defendants. | Civil Action No. 3:17-01362<br>Hon. David A. Faber |
| CABELL COUNTY COMMISSION,<br><br>       Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG<br>CORPORATION, et al.,<br><br>       Defendants. | Civil Action No. 3:17-01655<br>Hon. David A. Faber |

## DEFENDANTS' RULE 26(C) MOTION FOR A PROTECTIVE ORDER REGARDING
## RULE 45 DEPOSITION SUBPOENA TO NON-PARTY IQVIA

On March 16, 2021—***nearly eight months after fact discovery closed***—Plaintiffs filed a

notice of deposition of third-party IQVIA for a deposition on April 9, 2021.  Dkt. 1238.  IQVIA

accepted service of a subpoena for the deposition on March 19, 2021.  The Court should enter a

Rule 26(c) protective order quashing the deposition subpoena because it is untimely.[1]  In

---

[1] *See* Fed. R. Civ. P. 26(c)(1) ("A party or any person from whom discovery is sought may move
for a protective order in the court where the action is pending …, [and] [t]he court may, for good
cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or
undue burden or expense, including … forbidding the disclosure or discovery"); *Harvey
Trucking, Inc. v. Wells Fargo Ins. Servs. of W. Va., Inc.*, No. 2:09-cv-00007, 2010 WL
11565436, at *4–5 (S.D.W.Va. Aug. 25, 2010) (granting protective order to defendant where
plaintiff served untimely notice of deposition).

addition, Plaintiffs seek the deposition to bolster their motion *in limine* to admit IQVIA data—a motion that has been fully briefed and was argued to the Court months ago—but testimony from IQVIA on the requested topics cannot improve the record in Plaintiffs' favor on that issue.

## BACKGROUND

Plaintiffs' counsel have had access to the IQVIA Xponent data that is the subject of their requested deposition since September 2018.[2]  In Track One before Judge Polster, their clients relied on the data in the report of their expert, Lacey Keller, which was served on April 15, 2019.[3]  The Xponent data was deemed produced in this case as of the date of remand—January 14, 2020.[4]  Dr. Keller is Plaintiffs' expert here, as well, and she relied on the Xponent data in her report, which Plaintiffs served on August 3, 2020.[5]  Plaintiffs never sought to depose IQVIA during the sixth-month discovery period.  Nor did the Track One plaintiffs depose IQVIA.

Plaintiffs filed a "motion *in limine*" to admit the Xponent data series, which Defendants opposed because there is no evidence that any Defendant ever purchased or possessed the IQVIA Xponent data series, and it is hearsay to which no exception applies.[6]  The parties argued Plaintiffs' motion before the Court on January 6, 2021.

---

[2] Dkt. 1066 at 5, Dkt. 1066-6.  Xponent is a database that IQVIA—a company, formed after the merger of IMS Health and Quintiles, that sells healthcare-related data—markets as providing information useful to pharmaceutical manufacturers and financial analysts "to measure market and product demand."  Dkt. 1124 at 1–2 and n.1.

[3] Dkt. 119.

[4] Dkt. 120, 124, 125.

[5] Dkt. 1066-2.

[6] Dkt. 1066, 1124, 1152, 1204-1, 1208.

Inexplicably, on March 16, 2021—nearly eight months after discovery closed, nearly five months after Defendants opposed Plaintiffs' motion to admit the Xponent data, and more than two months after the parties argued the motion—Plaintiffs filed a notice of deposition of IQVIA. The notice indicates the following purported purposes of the deposition: (1) "[v]alidation and authentication of the 'IQVIA … XPONENT and XPONENT PLANTRAK'" data; (2) "[e]xplanation of the contents of the IQVIA Data"; (3) "[e]xplanation of the methods in which the IQVIA Data is maintained"; (4) "[e]xplanation of whether IQVIA maintains the IQVIA Data in the regular course of its business"; (5) "[e]xplanation of the purposes for which IQVIA uses the IQVIA Data"; and (6) "[w]hether AmerisourceBergen Drug Corporation, Cardinal Health, Inc. or McKesson Drug Corporation have or had access to databases containing the IQVIA Data."[7]

Plaintiffs' counsel separately informed IQVIA's counsel that the purpose of the deposition is to "lay a proper foundation" because "the defendants will not stipulate to the foundation and reliability of the IQVIA data."[8]  Plaintiffs offered no explanation for why they waited so long to issue the deposition subpoena.  IQVIA accepted service of a deposition subpoena on March 19, 2021, reserving all rights to object.  IQVIA served objections and responses to the subpoena on April 7, 2021[9] and has indicated that it intends to move to quash.[10]

---

[7] Dkt. 1238.

[8] Ex. 1 (Mar. 17, 2021 e-mail from P. Farrell to P. Oot).

[9] Ex. 2.

[10] Ex. 1 (Mar. 30 e-mail from P. Oot to D. Ackerman).

3

IQVIA objected to the subpoena on the bases, *inter alia*, that it is untimely, overbroad, and unduly burdensome.[11]

## ARGUMENT

### I.    The Subpoena Is Untimely.

Plaintiffs' Rule 45 deposition subpoena to IQVIA is nearly eight months too late.  Rule 45 subpoenas are a form of discovery, and they must be served in accordance with the court-ordered case schedule.[12]

Discovery closed on July 27, 2020.[13]  Through their subpoena to IQVIA, however, Plaintiffs seek to re-open discovery in order to take a deposition to support their motion *in limine* and to fill in gaps in the opinion of their expert, Lacey Keller.  Through this subpoena, Plaintiffs seek "explanations" of various aspects of the Xponent data, including "the contents of the IQVIA data," "the methods in which the IQVIA Data is maintained," how it is maintained, the "purposes for which IQVIA uses the IQVIA Data," and whether Defendants "have or had access to databases containing the IQVIA Data."[14]  Plaintiffs therefore plainly seek an untimely discovery deposition, and they have not shown good cause—or any cause—for re-opening discovery less than a month before trial.  Plaintiffs had the Xponent data in their possession for six months

---

[11] Ex. 2.

[12] *See Dent v. Siegelbaum*, No. DKC 08–0886, 2012 WL 718835, at *12 (D. Md. Mar. 5, 2012) (non-party subpoenas issued pursuant to Rule 45 are treated as a form of discovery); *Mortgage Information Servs., Inc. v. Kitchens*, 210 F.R.D. 562, 567–78 (W.D.N.C. 2002) (quashing Rule 45 subpoena issued after the close of discovery); *Rice v. United States*, 164 F.R.D. 556, 558 (N.D. Okla. 1995) (granting plaintiff's motion to quash defendant's third party subpoena duces tecum issued after the close of discovery).

[13] Dkt. 410.

[14] Dkt. 1238.

before discovery closed, and they could have noticed the IQVIA deposition at any time during that period to get the answers they seek and to support their motion for admissibility of the IQVIA data.  Indeed, Plaintiffs should not have relied on the data for any purpose before understanding the contents of the data, the purposes for which it is used, and whether Defendants had access to it.

Permitting Plaintiffs to re-open discovery at the eleventh hour to enable them to secure discovery that they easily could have, and should have, taken during the discovery period is prejudicial to Defendants.[15]  The Court has rejected as untimely multiple attempts by Plaintiffs to seek discovery that they could have sought within the discovery period[16] and should do so again

---

[15] Defendants have "standing to challenge [third-party] subpoenas … under Rule 26, regardless of whether they have standing to bring a motion to quash under Rule 45." *Singletary v. Sterling Transport Co., Inc.*, 289 F.R.D. 237, 240 n.2 (E.D. Va. 2012); *see also Phipps v. Adams*, No. 11-147, 2012 WL 3074047, at *2–3 (S.D. Ill. July 30, 2012) (finding that plaintiff had standing to quash a third-party subpoena served after close of discovery because plaintiff had interest in enforcing the court's scheduling order); *Constellium Rolled Prods. Ravenswood, LLC v. Rogers*, No. 2:15-cv-13438, 2016 WL 10789857, at *2 (S.D. W. Va. Dec. 6, 2016) ("[A] subpoena used for discovery must comply with the scope and limits of discovery set forth in Rule 26, and may be quashed or modified for the same reasons that would support a protective order under Rule 26").

The Court also may exercise its own discretion to quash the subpoena in the exercise of its authority to enforce its own scheduling orders.  *See Cook v. Howard*, 484 F. App'x 805, 812 (4th Cir. 2012) ("As with discovery generally, district courts 'are afforded broad discretion' in determining whether to quash a subpoena."); *Revander v. Denman*, No. 00-1810, 2004 WL 97693, at *1 (S.D.N.Y. Jan. 21, 2004) ("Although a party generally does not have standing to challenge a subpoena issued to a third-party witness unless a personal privacy right or privilege is implicated, the Court, in the exercise of its discretion, may deny a subpoena request when it finds that there is no reason why the subpoena could not have been brought during the discovery period."); *Jefferson v. Biogen IDEC Inc.*, No. 11-0237, 2012 WL 1150415, at *2 (E.D.N.C. Apr. 5, 2012) (ruling that although defendant had not asserted sufficient standing to quash subpoenas issued to non-party, the court would quash the subpoenas upon its own motion because the subpoenas were served weeks after the completion of discovery and thus were untimely).

[16] Dkt. 686 (denying plaintiffs' motion to compel as untimely, finding "the circumstances for considering a late filed motion must truly be extraordinary" and "[n]o such circumstances exist here" where "Plaintiffs[] were aware of" the subject matter "well in advance of the Court's filing

here.  Defendants are entitled to rely on the deadlines set by this Court, and they are now busy

preparing for trial.[17]  Having to prepare for and attend depositions at this time is burdensome and

an unnecessary expense for Defendants.  If the Court permits this deposition, Plaintiffs may

serve other untimely third-party subpoenas and attempt to further end-run the Court's schedule

and inflict even further burden on Defendants.  Plaintiffs' tactics should not be rewarded.  The

Court should enter a protective order quashing the subpoena.[18]

---

deadline yet failed to file the instant motion prior to the deadline"); Dkt. 738 (same); Dkt. 818 (same).

[17] On March 11—a week before Plaintiffs served the IQVIA subpoena—the Court excluded certain opinion testimony Plaintiffs had failed to disclose in a timely manner, concluding that taking new depositions of those witnesses at this juncture "would certainly disrupt" the trial date. Dkt. 1234 at 11.

[18] *See AIDS Counseling and Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000, 1006 (4th Cir. 1990) (affirming district court's quashing of subpoenas for hearing testimony issued after the close of discovery; "Having failed to properly prosecute their case, the plaintiffs may not now look to this court to remedy the problem that is entirely of their own making."); *Mayhew v. Loved Ones in Home Health Care, LLC*, No. 2:17-cv-03844, 2020 WL 132192, at *1–2 (S.D. W. Va. Jan. 10, 2020) (quashing third party subpoena issued after the close of discovery that was issued for "the purpose of conducting additional discovery after the discovery deadline"); *McAfee v. Boczar*, No. 3:11cv646, 2012 WL 2499420, at *2 (E.D. Va. June 27, 2012) (quashing third party subpoena issued 13 days after the close of discovery); *Garvin v. Southern States Ins. Exchange Co.*, No. 1:04cv73, 2007 WL 2463282, at *3–4 (N.D. W.Va. Aug. 28, 2007) (granting defendant's motion to quash third-party subpoena issued after close of discovery that "unequivocally establishe[d] the intent [of the subpoena] as 'discovery'"); *McKay v. Triborough Bridge & Tunnel Auth.*, No. 05-8936, 2007 WL 3275918, at *2 (S.D.N.Y. Nov. 5, 2007) (collecting cases that stand for the proposition that parties may not issue subpoenas "as a means to engage in discovery after the discovery deadline has passed"); *Playboy Enters. Int'l Inc. v. On Line Entm't, Inc.*, No. 00-6618, 2003 WL 1567120, at *1 (E.D.N.Y. Mar.13, 2003) (granting motion to quash where "plaintiffs took it upon themselves to serve subpoenas, without prior application to the Court, months after discovery closed, little more than a month before trial, upon a non-party from whom discovery was never before sought"); *Mortgage Information Servs.*, 210 F.R.D. at 567–78 (W.D.N.C. 2002) ("[W]hen a plaintiff ... is aware of the existence of documents before the discovery cutoff date and issues discovery requests including subpoenas after the discovery deadline has passed, then the subpoenas and discovery requests should be denied.") (citation omitted).

## II.     The Deposition Cannot Establish the Admissibility of the Xponent Data.

Plaintiffs admittedly seek the deposition of IQVIA to "lay a foundation" for admissibility of the Xponent data.  Plaintiffs moved months ago to have the Xponent data admitted at trial, but their deposition subpoena is an admission that they did not have a sufficient record to establish the admissibility of the data.  The problem for Plaintiffs is that the deposition—even were it timely—could not establish the admissibility of the data.

As Defendants explained in their opposition to Plaintiffs' motion to admit the data, Dkt. 1124, at the January 6 hearing, and in their response to Plaintiffs' motion to file a sur-reply on the issue, Dkt. 1208, the Xponent data is inadmissible because it is irrelevant hearsay.  The data is irrelevant because no Defendant ever purchased or possessed it, and IQVIA could not testify otherwise.[19]

The data is hearsay because it is an out-of-court statement that Plaintiffs intend to offer for the truth of "the opioid prescribing habits of physicians in Cabell County and Huntington."[20] There is no exception that applies to permit this hearsay evidence.  First, the evidence cannot be used to establish "notice" to Defendants.  Plaintiffs have offered no evidence that Defendants "should" have purchased it—their expert expressly disclaimed such an opinion[21]—and IQVIA cannot offer any opinion testimony about what Defendants should have done.  Second, the evidence is not admissible pursuant to Federal Rule of Evidence 803(17) because it is not

---

[19] Dkt. 1124 at 2–3, Dkt. 1208 at 2–6.  *See also* Ex. 2 ("Defendants, not IQVIA, are the best source for this information.").

[20] Dkt. 1124 at 4 (quoting Dkt. 1066 at 7).

[21] Dkt. 1208 at 6.

"established factual information."[22]  IQVIA already submitted a letter in this litigation

confirming that the data is not established factual information.  That letter—which Plaintiffs

attach to their deposition notice—explains clearly and unambiguously that the Xponent data

> represents [only] an estimate of measured activity and should be
> treated accordingly."  The data "reflects projections, estimates,
> [and] forecasts that are the result of a combination of confidential
> and proprietary technologies, statistical methodologies and a
> significant number of sources.  These estimates reflect the
> independent judgment, expertise and opinion of IQVIA
> representatives to arrive at a reasonable approximation of market
> activity…. The IQVIA information … is susceptible to error or
> variance, and is not intended to be used as direct evidence or to
> establish any fact.[23]

IQVIA has informed Plaintiffs that, if it testified, it would testify in conformance with its

already-submitted letter.[24]  And in IQVIA's objections to the subpoena, it reiterated that the

Xponent data "represents 'an estimate of measured activity and should be treated accordingly,'"

the "'numbers are prepared using judgment and skill, not simply arithmetic,' … the data is not

intended to be used as direct evidence or to establish any fact[, and] [f]or these reasons,

validation of this data as fact is not possible."[25]  Thus, the deposition could not, and would not,

help Plaintiffs establish the admissibility of the Xponent data.

Lastly, Plaintiffs indicate that they want to depose IQVIA to "authenticate" the data, but

Allergan Finance, LLC—the MDL defendant that produced the data in the litigation—already

[22] Dkt. 1124 at 5–7.

[23] Dkt. 1238-1.

[24] Ex. 1 (Mar. 19, 2021 e-mail from P. Oot to D. Ackerman and P. Farrell).

[25] Ex. 2.

stipulated to the authenticity of the Xponent data in this case,[26] and Defendants have not contested authenticity.  Plaintiffs therefore do not need a deposition for that purpose.

Thus, even if Plaintiffs' deposition subpoena were not grossly out of time, and even if Plaintiffs had taken the correct procedural step to move the Court to allow the deposition, they could not show good cause for taking the deposition.  A deposition of IQVIA cannot and will not help establish the admissibility of the Xponent data, and there is no need to permit the deposition.

## CONCLUSION

For the foregoing reasons, the Court should enter a protective order pursuant to Federal Rule of Civil Procedure 26(c) and forbid Plaintiffs from taking the deposition of IQVIA in this case.

## CERTIFICATION PURSUANT TO FED. R. CIV. P. 26(C)(1)

Defendants certify that they have in good faith conferred with Plaintiffs about this motion, and the parties were unable to resolve their dispute without court action.

---

[26] Dkt. 1066-7.

Dated: April 8, 2021                Respectfully submitted,

*/s/ Steven R. Ruby*
Michael W. Carey (WVSB No. 635)
Steven R. Ruby (WVSB No. 10752)
David R. Pogue (WVSB No. 10806)
Raymond S. Franks II (WVSB No. 6523)
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
drpogue@cdkrlaw.com
rsfranks@cdkrlaw.com

*/s/ Ashley W. Hardin*
Enu Mainigi
F. Lane Heard III
Jennifer G. Wicht
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Tel:  (202) 434-5000
Fax:  (202) 434-5029
emainigi@wc.com
lheard @wc.com
jwicht@wc.com
ahardin@wc.com
*Counsel for Cardinal Health, Inc.*

*/s/ Timothy C. Hester*
Timothy C. Hester (DC 370707)
Laura Flahive Wu
Andrew P. Stanner
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
lflahivewu@cov.com
astanner@cov.com

*/s/ Paul W. Schmidt*
Paul W. Schmidt
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: (212) 841-1000
pschmidt@cov.com

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200
*Counsel for McKesson Corporation*

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, WV 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com
*Counsel for AmerisourceBergen Drug Corporation*

11

**CERTIFICATE OF SERVICE**

I, Steven R. Ruby, counsel for Defendant Cardinal Health, Inc., do hereby certify that on this 8th day of April, 2021, the foregoing "Defendants' Rule 26(C) Motion for a Protective Order Regarding Rule 45 Deposition Subpoena to Non-Party IQVIA" was filed electronically via the CM/ECF electronic filing system and served on all counsel registered in the system.

/s/ Steven R. Ruby
Steven R. Ruby (WVSB #10752)