# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

THE CITY OF HUNTINGTON,

     Plaintiff,

v.

Civil Action No. 3:17-01362
Hon. David A. Faber

AMERISOURCEBERGEN DRUG
CORPORATION, *et al.*,

     Defendants.

---

CABELL COUNTY COMMISSION,

     Plaintiff,

v.

Civil Action No. 3:17-01665
Hon. David A. Faber

AMERISOURCEBERGEN DRUG
CORPORATION, *et al.*,

     Defendants.

**SUR-REPLY IN FURTHER SUPPORT OF PLAINTIFFS' *MOTION IN LIMINE* FOR AN ORDER RULING IQVIA DATA ADMISSIBLE**

Plaintiffs, the City of Huntington and the Cabell County Commission, hereby submit this sur-reply in further support of Plaintiffs' Motion *in Limine* for an Order Ruling IQVIA Data Admissible. During the Parties' January 6, 2021, Pre-trial Conference, Counsel for Defendants made several statements contrary to the factual record in this case. Plaintiffs respectfully submit this sur-reply in order to bring these inaccuracies to the Court's attention.

**I.     Defendants Have Not Challenged the Admissibility of Ms. Keller's Expert Testimony in this Litigation.**

During the January 6 hearing, Defendants repeatedly argued that the IQVIA data relied upon by Plaintiff's expert, Lacey Keller, would only be admissible if Ms. Keller's opinions survived

Defendants' *Daubert* challenges. *See, e.g.,* Jan. 6, 2021 Pretrial Hearing Tr. at 58:6-9 ("If the plaintiffs have an expert who relies on this data and that expert survives the defendants' Daubert challenge and is allowed to testify, then they'll be allowed to testify about, about their opinions regarding the data."); *Id.* at 62:11-14 ("Her opinions – again, Dr. Keller's opinions are subject to Daubert challenges, so I'll just put that out there on the record just for Your Honor's knowledge."). However, Defendants never filed any *Daubert* motions challenging the admissibility of Ms. Keller's expert testimony in this litigation.[1]

## II.    Despite their Representations to the Contrary, Defendants had Direct Access to the IQVIA Data in Question

Defendants further argued that the IQVIA Xponent data at issue in Plaintiffs' Motion was relevant to pharmaceutical manufacturers, rather than distributors, claiming: "Distributors don't use this data.  It's not marketed to them by IQVIA and they don't typically buy it, and we didn't typically buy it." *Id.* at 61:9-11.  However, discovery produced by Defendants demonstrates this is patently false.  For example, internal documents produced by Cardinal include a presentation dated May 21, 2013 that was authored by IMS Health[2] and titled "Partnering with Cardinal – IMS Capabilities."[3]  The presentation explains that using IMS market data and IMS metrics can assist Cardinal's sales team[4] and notes that IMS offerings include "compliance reporting" which could provide customer-level information[5] as well as data used to identify "high opportunity prescribers."[6]  Notably, the presentation also reveals that Cardinal had access to IMS's "National

---

[1] During Case Track One ("CT1") of this litigation, Judge Polster denied Defendants' Motion to Exclude Lacey Keller's Opinions and Proposed Testimony.  *See* Opinion and Order *In re Nat'l Prescription Opiate Litig*., MDL No. 2804, Doc. No. 2492 (N.D. Ohio Aug. 20, 2019).
[2] IMS Health was IQVIA's predecessor organization.
[3] CAH_NYConsolidated-0852853 (IMS Health Presentation, *Partnering with Cardinal – IMS Capabilities*, May 21, 2013).
[4] *Id.* at 2878.
[5] *Id.* at 2881.
[6] *Id.* at 2893.

Prescription Audit,"[7] which is later described as **including Xponent information**.[8]  Relatedly, a

Work Order between IMS Health and McKesson dated May 1, 2013 shows that IMS contracted to

provide McKesson with information at both the product and customer level to facilitate

McKesson's promotional campaigns.[9]  That fact that Defendants used this information for sales,

rather than compliance functions, only supports Plaintiffs' argument regarding the deficiencies of

Defendants' programs.

### III.    Distributors Had Access to Prescription-Level Data and Knew this Data Could Improve their Suspicious Order Monitoring

Defendants also argued that there was no link between the IQVIA data in question and the

Defendants' suspicious order monitoring efforts, arguing:

> What distributors do is monitor wholesale prescription orders placed
> by their pharmacy customers.  We do that on an order-by-order
> basis.  We do not do that on a prescription-by-prescription basis.
> And there is no testimony, no evidence whatsoever that this data,
> this IQVIA data is ever used by anyone in order to maintain, set up,
> or operate a suspicious order monitoring system. . . . There is no
> linkage between this data and, and this case and these defendants
> and what the plaintiffs want to do with it.

Pretrial Hearing Tr. at 61:20-62:5.

This, too, is inaccurate.  Not only did Defendants have direct access to the prescription-

level data, but also, they were well-aware that such data could be a critical tool in their suspicious

order monitoring efforts. For example, internal AmerisourceBergen correspondence reveals that

in 2014, AmerisourceBergen's Corporate Security & Regulatory Affairs division, the division

responsible for AmerisourceBergen's regulatory compliance, subscribed to an "IMS Pharmacy

---

[7] *Id.* at 2861.

[8] *Id.* at 2887.  IQVIA's website describes its "National Prescription Audit" as providing "the fastest insights into weekly prescription dispensing."  *See* IQVIA, *Prescription Information*, *available at* https://www.iqvia.com/locations/united-states/solutions/commercial-operations/essential-information/prescription-information.

[9] MCKMDL00694702 at 704 (Work Order between IMS Health Incorporated and McKesson Corporation dated May 1, 2013).

Data Trial,"[10] which incorporated **physician-level prescription data**.[11]  Similarly, an Information Services Agreement between IMS Health and Cardinal reveals that Cardinal expressly engaged IMS to provide it with certain datasets reflecting prescription-level information and shows that Cardinal could also readily obtain detailed prescriber information from IMS.[12]

These and many other examples from Defendants' internal documents demonstrate that, contrary to the representations made during the Parties' January 6, 2021 Pretrial Conference, Defendants had and used data sold by IQVIA.

Dated: January 19, 2021                        Respectfully submitted,

THE CITY OF HUNTINGTON                         CABELL COUNTY COMMISSION

/s/ *Anne McGinness Kearse*                    /s/ *Paul T. Farrell, Jr.*
Anne McGinness Kearse (WVSB No. 12547)         Paul T. Farrell, Jr., Esq. (WVSB No. 7443)
Joseph F. Rice                                 **FARRELL LAW**
**MOTLEY RICE LLC**                            P.O. Box 1180
28 Bridgeside Blvd.                            Huntington, WV 25714-1180
Mount Pleasant, South Carolina 29464           422 Ninth Street, 3rd Floor
Tel.: (843) 216-9000                           Huntington, West Virginia 25701
Fax: (843) 216-9450                            office: 304.523.7285
akearse@motleyrice.com                         cell: 304.654.8281
jrice@motleyrice.com                           email: paul@farrell.law

Linda Singer                                   Anthony J. Majestro (WVSB No. 5165)
David I. Ackerman                              **POWELL & MAJESTRO, PLLC**
**MOTLEY RICE LLC**                            405 Capitol Street, P-1200
401 9th Street NW, Suite 1001                  Charleston, West Virginia 25301
Washington, DC 20004                           Tel.: (304) 346-2889
Tel: 202-232-5504                              Fax: (304) 346-2895
Fax: 202-386-9622                              amajestro@powellmajestro.com
lsinger@motleyrice.com
dackerman@motleyrice.com

---

[10] ABDCMDL05797143 (reflecting internal AmerisourceBergen email correspondence dated July 23, 2014 regarding "IMS Data Projects")

[11] ABDCMDL05797146 (letter dated May 21, 2014 from IMS Health to AmerisourceBergen describing the paid trial for IMS CS Ratings and explaining that this application can be used to identify outlets and prescribers who may warrant additional attention based on their controlled substance purchasing, dispensing and/or consumption patterns.).

[12] CAH_MDL2804_03192237 (executed Information Services Agreement between IMS Health and Cardinal, effective as of July 1, 2004, reflecting Cardinal's engagement of IMS to provide data, software, and services).

5

Charles R. "Rusty" Webb (WVSB No. 4782)
**THE WEBB LAW CENTRE**
716 Lee Street, East
Charleston, West Virginia 25301
Tel.: (304) 344-9322
Fax: (304) 344-1157
rusty@rustywebb.com

Michael A. Woelfel (WVSB No. 4106)
**WOELFEL AND WOELFEL, LLP**
801 Eighth Street
Huntington, West Virginia 25701
Tel.: (304) 522-6249
Fax: (304) 522-9282
mikewoelfel3@gmail.com

On Brief:

/s/ *Monique Christenson*
Monique Christenson (SC Bar No. 104063)
Natalie Deyneka
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, South Carolina 29464
Tel.: (843) 216-9000
Fax: (843) 216-9450
mchristenson@motleyrice.com
ndeyneka@motleyrice.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certifies that on this 19th day of January, 2021, the foregoing *Sur-Reply in Further Support of Plaintiffs' Motion in Limine for an Order Ruling IQVIA Data Admissible* was filed electronically via the CM/ECF electronic filing system and served on all counsel registered in the system as well as on all counsel via email to plaintiffs' listserv at mdl2804discovery@motleyrice.com and defendants' listservs at track2opioiddefendants@reedsmith.com.

/s/ *Monique Christenson*
Monique Christenson (SC Bar No. 104063)
**MOTLEY RICE LLC**