# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON, <br><br> Plaintiff, <br><br> v. <br><br> AMERISOURCEBERGEN DRUG CORPORATION, et al., <br><br> Defendants. | Civil Action No. 3:17-01362 <br> Hon. David A. Faber |
| CABELL COUNTY COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> AMERISOURCEBERGEN DRUG CORPORATION, et al., <br><br> Defendants. | Civil Action No. 3:17-01655 <br> Hon. David A. Faber |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' OMNIBUS MOTION REGARDING IQVIA TRIAL TESTIMONY

Three weeks before trial and more than eight months after fact discovery closed, Plaintiffs filed a motion seeking to re-open discovery to "permit a limited evidentiary deposition of" third-party IQVIA.[1] Plaintiffs purport to need this deposition in order "to secure testimony which establishes the evidentiary foundation necessary at trial for the admission of the IQVIA [Xponent] Data."[2] Plaintiffs have shown no cause at all for their request to re-open discovery, much less the required good cause. The Court therefore should summarily deny Plaintiffs' request to re-open discovery to conduct a deposition of IQVIA, or for any other reason. As for

---

[1] Dkt. 1264.

[2] *Id.* at 1.

Plaintiffs' request for an order permitting them to serve a "trial subpoena" on IQVIA requiring IQVIA to appear at the trial via remote video streaming, the Court lacks authority to issue such an order because IQVIA is located beyond the subpoena power of this Court.

## BACKGROUND

Plaintiffs' counsel have had access to the IQVIA Xponent data that is the subject of their motion since September 2018.[3] In Track One before Judge Polster, their clients relied on the data in the report of their expert, Lacey Keller, which was served on April 15, 2019.[4] The Xponent data was deemed produced in this case as of the date of remand—January 14, 2020.[5] Dr. Keller is Plaintiffs' expert here, as well, and she relied on the Xponent data in her report, which Plaintiffs served on August 3, 2020.[6] Plaintiffs never sought to depose IQVIA during the sixth-month discovery period. Nor did the Track One plaintiffs depose IQVIA.

Plaintiffs filed a "motion *in limine*" to admit the Xponent data series, which the Court denied.[7] The Court held that "there is no evidence that defendants had purchased the two datasets at issue here" and that the data is inadmissible hearsay.[8]

---

[3] Dkt. 1066 at 5, Dkt. 1066-6. Xponent is a database that IQVIA—a company, formed after the merger of IMS Health and Quintiles, that sells healthcare-related data—markets as providing information useful to pharmaceutical manufacturers and financial analysts "to measure market and product demand." Dkt. 1124 at 1–2 and n.1.

[4] Dkt. 119.

[5] Dkt. 120, 124, 125.

[6] Dkt. 1066-2.

[7] Dkt. 1266.

[8] *Id.* at 6, 12.

On March 16, months after filing their motion to admit the evidence, Plaintiffs filed a notice of deposition of IQVIA. On April 8, Defendants filed a motion for a Rule 26(c) protective order to quash the untimely deposition notice.[9] On April 9, Special Master Wilkes conducted a meet-and-confer regarding the deposition between the parties and IQVIA. At the conclusion of that conference, Plaintiffs indicated that they would withdraw the deposition subpoena and move the Court to re-open discovery.[10]

Both in their deposition notice and their motion to re-open discovery, Plaintiffs indicate the following purposes of the IQVIA deposition: (1) "[v]alidation and authentication of the 'IQVIA … XPONENT and XPONENT PLANTRAK'" data; (2) "[e]xplanation of the contents of the IQVIA Data"; (3) "[e]xplanation of the methods in which the IQVIA Data is maintained"; (4) "[e]xplanation of whether IQVIA maintains the IQVIA Data in the regular course of its business"; (5) "[e]xplanation of the purposes for which IQVIA uses the IQVIA Data"; and (6) "[w]hether AmerisourceBergen Drug Corporation, Cardinal Health, Inc. or McKesson Drug Corporation have or had access to databases containing the IQVIA Data."[11]

Neither in their March 16 deposition notice, at the April 9 meet-and-confer, or in their motion to re-open discovery have Plaintiffs offered any explanation for why they waited so long to seek IQVIA's testimony. They do not claim to have been unable to take the deposition during the discovery period and do not describe any diligence on their part to secure this testimony within the discovery period.

---

[9] Dkt. 1261.

[10] To Defendants' knowledge, Plaintiffs have not formally withdrawn the original deposition notice. Accordingly, Defendants' Motion for Protective Order is still pending briefing and decision by this Court.

[11] Dkt. 1238, Dkt. 1264.

Third-party IQVIA is located in Durham, North Carolina and resides more than 100 miles from the courthouse.[12]

## ARGUMENT

I.  **Plaintiffs Have Not Established Good Cause To Re-Open Discovery.**

   A.  **Plaintiffs Have Not Provided Any Reason, Much Less a Good Reason, Why They Did Not Timely Seek This Discovery.**

A party seeking to re-open discovery must show "good cause." *McMillan v. Cumberland Cnty. Bd. of Ed.*, 734 F. App'x 836, 845 (4th Cir. 2018) ("Once a district court enters a scheduling order it may be modified only for good cause."); *Sweatman v. Coloplast Corp.*, No. 3:19-cv-02745-SAL, 2020 WL 2391285, at *3 (D.S.C. May 5, 2020) (denying plaintiffs' motion to re-open discovery to take deposition of witness where plaintiff was aware of the witness before the close of discovery). "Good cause requires the party seeking relief [to] show that the deadlines cannot reasonably be met despite the party's diligence, and whatever other factors are also considered, the good-cause standard will not be satisfied if the [district] court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule." *McMillan*, 734 F. App'x at 846 (citing *Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012) (unpublished opinion) (citations omitted)). The "primary consideration ... in [determin]ing whether 'good cause' has been shown under Rule 16(b)" is "the movant's diligence." *Sweatman*, 2020 WL 2391285, at *2 (citation omitted). "Lack of diligence and carelessness are the 'hallmarks of failure to meet the good cause standard.'" *Id.* (citation omitted). "If the movant has not been diligent in meeting the scheduling order's deadlines, then

---

[12] Dkt. 1264 at 2 n.1.

4

other factors—including the presence or absence of prejudice to the other party—generally will not be considered." *Id.* (citation omitted).

Plaintiffs do not offer any cause whatsoever for their belated request to re-open discovery to depose IQVIA.[13] They certainly have not offered "good cause" for their delay, and they have not demonstrated any diligence in pursuing the evidence they needed from IQVIA during the discovery period, or in the nearly nine months since.

Discovery closed on July 27, 2020.[14] Plaintiffs had the Xponent data in their possession for six months before discovery closed, and they could have noticed the IQVIA deposition at any time during that period to get the answers they seek and to support their bid to admit the IQVIA data. Indeed, Plaintiffs should not have relied on the data for any purpose before understanding the contents of the data, the purposes for which it is used, and whether Defendants had access to it. Plaintiffs recite why they think the Xponent data is important,[15] but they do not say that they were unaware of the data until recently—nor could they, given that their expert relied on the data. They do not say that they could not have noticed a discovery deposition of IQVIA during the discovery period, and they do not explain any steps they took during discovery "to secure testimony which establishes the evidentiary foundation necessary at trial for the admission of the IQVIA [Xponent] Data."[16] Nor can Plaintiffs claim that they did not know that Defendants

---

[13] Highlighting their inability to show "good cause," Plaintiffs' brief ignores entirely Rule 16's standard and instead seeks leave to take untimely discovery under Federal Rule of Evidence 611. FRE 611, however, sets forth the Court's inherent authority to manage the order and method of questioning witnesses at trial. *See* Fed. R. Evid. 611. The rule is inapplicable to Plaintiffs' request to take a late "evidentiary deposition."

[14] Dkt. 410.

[15] Dkt. 1264 at 3.

[16] *Id.* at 1.

would object to the admission of the IQVIA data because Defendants filed their formal opposition with the Court five months ago, and the parties argued the issue to the Court three months ago.

Plaintiffs failed to seek discovery of basic facts that would be necessary to admit evidence that they claim is important to their case. Their lack of diligence and carelessness is not good cause. It is the opposite. The Court therefore should deny their motion to re-open discovery to take a third-party deposition that could have—and should have—been taken during discovery.[17]

Because Plaintiffs' lack of diligence is dispositive, the Court should not consider any other factors. But, for the record, Defendants note that Plaintiffs are incorrect that "Defendants will not be prejudiced" by their untimely request.[18] Trial is two weeks away, and Defendants are consumed with trial preparations.[19] Having to prepare for and attend depositions at this time,

---

[17] *Dent v. Montgomery County Police Dept.*, No. DKC 08-0886, 2011 WL 232034, at *2 (D. Md. Jan. 24, 2011) ("The standard for permitting modifications to the scheduling order is not whether the discovery sought is relevant and would aid resolution of the factual issues at trial. The question before the court is whether Plaintiff has shown that despite her counsel's diligence and good faith efforts the discovery deadlines could not be met and that there is a good cause to permit additional discovery at this late stage in the litigation…. Plaintiff has not even attempted to argue that her former counsel was diligent in pursuing discovery or put forth any reason why the discovery she now seeks could not have been obtained during the twelve months the parties had to complete discovery.").

[18] Dkt. 1264 at 3.

[19] On March 11—a week before Plaintiffs served the original IQVIA subpoena—the Court excluded certain opinion testimony Plaintiffs had failed to disclose in a timely manner, concluding that taking new depositions of those witnesses at this juncture "would certainly disrupt" the trial date. Dkt. 1234 at 11.

6

whether remote or not, is burdensome and an unnecessary expense for Defendants. Plaintiffs' tactics should not be rewarded. The Court should deny Plaintiffs' motion.[20]

### B. A Deposition of IQVIA Will Not Establish the Admissibility of the Data.

In addition to their lack of diligence in timely seeking a deposition of IQVIA, Plaintiffs cannot show good cause for re-opening discovery to take this deposition because the deposition will not aid Plaintiffs in their quest to admit the Xponent data. The hurdles to admissibility that the Court already identified will not be cured by IQVIA's testimony.

First, as the Court has found, no Defendant ever purchased or possessed the Xponent data, and therefore the data is not relevant to any "notice" to Defendants.[21] A deposition of IQVIA will not change that fact.

---

[20] *See AIDS Counseling and Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000, 1006 (4th Cir. 1990) (affirming district court's quashing of subpoenas for hearing testimony issued after the close of discovery; "Having failed to properly prosecute their case, the plaintiffs may not now look to this court to remedy the problem that is entirely of their own making."); *Mayhew v. Loved Ones in Home Health Care, LLC*, No. 2:17-cv-03844, 2020 WL 132192, at *1–2 (S.D. W. Va. Jan. 10, 2020) (quashing third party subpoena issued after the close of discovery that was issued for "the purpose of conducting additional discovery after the discovery deadline"); *McAfee v. Boczar*, No. 3:11cv646, 2012 WL 2499420, at *2 (E.D. Va. June 27, 2012) (quashing third party subpoena issued 13 days after the close of discovery); *Garvin v. Southern States Ins. Exchange Co.*, No. 1:04cv73, 2007 WL 2463282, at *3–4 (N.D. W.Va. Aug. 28, 2007) (granting defendant's motion to quash third-party subpoena issued after close of discovery that "unequivocally establishe[d] the intent [of the subpoena] as 'discovery'"); *McKay v. Triborough Bridge & Tunnel Auth.*, No. 05-8936, 2007 WL 3275918, at *2 (S.D.N.Y. Nov. 5, 2007) (collecting cases that stand for the proposition that parties may not issue subpoenas "as a means to engage in discovery after the discovery deadline has passed"); *Playboy Enters. Int'l Inc. v. On Line Entm't, Inc.*, No. 00-6618, 2003 WL 1567120, at *1 (E.D.N.Y. Mar.13, 2003) (granting motion to quash where "plaintiffs took it upon themselves to serve subpoenas, without prior application to the Court, months after discovery closed, little more than a month before trial, upon a non-party from whom discovery was never before sought"); *Mortgage Information Servs.*, 210 F.R.D. at 567–78 (W.D.N.C. 2002) ("[W]hen a plaintiff ... is aware of the existence of documents before the discovery cutoff date and issues discovery requests including subpoenas after the discovery deadline has passed, then the subpoenas and discovery requests should be denied.") (citation omitted).

[21] Dkt. 1266 at 6.

Second, the Court held that the data is hearsay and does not fall within the exception in Federal Rule of Evidence 803(17) because the data is not "established factual information."[22] The Court relied for its ruling on the "disclaimer" that IQVIA provided, which confirms that the data is not established factual information. That letter—which Plaintiffs attached to their original IQVIA deposition notice—explains clearly and unambiguously that the Xponent data

> represents [only] an estimate of measured activity and should be treated accordingly." The data "reflects projections, estimates, [and] forecasts that are the result of a combination of confidential and proprietary technologies, statistical methodologies and a significant number of sources. These estimates reflect the independent judgment, expertise and opinion of IQVIA representatives to arrive at a reasonable approximation of market activity…. The IQVIA information … is susceptible to error or variance, and is not intended to be used as direct evidence or to establish any fact.[23]

IQVIA has informed Plaintiffs that, if it testified, it would testify in conformance with its already-submitted letter.[24] And in IQVIA's objections to the original subpoena, it reiterated that the Xponent data "represents 'an estimate of measured activity and should be treated accordingly,'" the "'numbers are prepared using judgment and skill, not simply arithmetic,' … the data is not intended to be used as direct evidence or to establish any fact[, and] [f]or these reasons, validation of this data as fact is not possible."[25] Thus, the deposition could not, and would not, help Plaintiffs establish the admissibility of the Xponent data.

---

[22] *Id.* at 12.

[23] Dkt. 1238-1.

[24] Ex. 1 (Mar. 19, 2021 e-mail from P. Oot to D. Ackerman and P. Farrell).

[25] Ex. 2.

8

Lastly, Plaintiffs indicate that they want to depose IQVIA to "authenticate" the data, but Allergan Finance, LLC—the MDL defendant that produced the data in the litigation—already stipulated to the authenticity of the Xponent data in this case,[26] and Defendants have not contested authenticity. Plaintiffs therefore do not need a deposition for that purpose.

A deposition of IQVIA therefore cannot and will not help establish the admissibility of the Xponent data, and there is no good cause to permit the deposition.

## II. The Court Lacks Authority to Issue a Trial Subpoena to IQVIA.

In the alternative to re-opening discovery to take an "evidentiary deposition of IQVIA," Plaintiffs move this Court for an order permitting them to issue a "trial subpoena for a representative of IQVIA … to testify live by remote video streaming."[27] This path is equally unavailing, however. As Plaintiffs acknowledge, IQVIA is located outside the subpoena power of this Court. The Court therefore has no authority to order IQVIA to appear at this trial, either in person or by video testimony.[28]

Plaintiffs suggest that Rule 43 provides an end-run around Rule 45 and permits the Court to order a remote trial appearance by a witness who resides outside the Court's subpoena power.[29] That is incorrect. While Rule 43(a) permits remote testimony from an otherwise available witness in exceptional circumstances not present here, it does not expand a court's power to compel such testimony in the first place. Courts across the country have rejected Plaintiffs' exact argument—that Rule 43(a) eviscerates Rule 45(c)'s geographical limits and

---

[26] Dkt. 1066-7.

[27] Dkt. 1264 at 1.

[28] Fed. R. Civ. P. 45(c)(1)(A)-(B), (d)(3)(A)(iii).

[29] *Id.* at 3.

grants nationwide subpoena power to compel remote testimony.[30] Recent amendments to Rule 45 confirm the same. The advisory committee notes to the rule's 2013 amendments expressly reject an early line of cases that previously allowed the sort of end-run around Rule 45 that Plaintiffs now seek.[31]

And even if Rule 43 could expand the Court's subpoena power—it cannot—it is not applicable here because Rule 43(a) permits testimony by remote transmission only "[f]or good cause in compelling circumstances."[32] As explained above, Plaintiffs have not offered any cause at all for their failure to secure testimony from IQVIA during the discovery period such that they can demonstrate a compelling need now for the remote trial testimony. Nor is IQVIA suddenly and unexpectedly unavailable. Plaintiffs have known, or should have known, that IQVIA resides in North Carolina and is outside the subpoena power of this Court. Having failed—either for tactical reasons at the time or mere oversight—to have taken IQVIA's deposition during

---

[30] *See, e.g.*, *Roundtree v. Chase Bank USA, N.A.*, 2014 WL 2480259, at *2 (W.D. Wash. June 3, 2014) (application of Rule 43(a) "presupposes a witness willing or compelled to testify at trial" and does not expand geographic scope of Rule 45(c)); *Lea v. Wyeth LLC*, 2011 WL 13195950, at *1 (E.D. Tex. Nov. 22, 2011) ("There is nothing in the language of Rule 43(a) that permits this court to compel the testimony of an individual who is indisputably outside the reach of its subpoena power.").

Plaintiffs and Defendant McKesson Corp. previously fully briefed the issue of whether the Court can compel remote trial testimony from witnesses who reside outside the Court's subpoena power. Plaintiffs withdrew their motion after the parties reached agreement on certain company witnesses, but rather than re-state all the arguments contained in McKesson's opposition, Defendants incorporate that opposition as if set forth fully herein. *See* Dkt. 844.

[31] *See* Fed. R. Civ. P. 45 Advisory Comm. Notes, 2013 Amend. (noting that "these amendments resolve a split in interpreting Rule 45's provisions for subpoenaing parties and party officers" and rejecting the holding of *In re Vioxx Prod. Liab. Litig.*, 439 F. Supp. 2d 640, 642 (E.D. La. 2006), the primary case relied on by Plaintiffs in support of their overbroad reading of Rule 43).

[32] Fed. R. Civ. P. 43(a).

discovery, Plaintiffs cannot now establish the "good cause in compelling circumstances" that Rule 43(a) requires to permit remote video transmission.[33]

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Omnibus Motion Regarding IQVIA Trial Testimony, Dkt. 1264.

Dated: April 19, 2021

Respectfully submitted,

*/s/ Steven R. Ruby*
Michael W. Carey (WVSB No. 635)
Steven R. Ruby (WVSB No. 10752)
David R. Pogue (WVSB No. 10806)
Raymond S. Franks II (WVSB No. 6523)
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
drpogue@cdkrlaw.com
rsfranks@cdkrlaw.com

---

[33] *Id.* Advisory Comm. Notes, 1996 Amend. ("A party who could reasonably foresee the circumstances offered to justify transmission … will have special difficulty in showing good cause.")

*/s/ Ashley W. Hardin*
Enu Mainigi
F. Lane Heard III
Jennifer G. Wicht
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard @wc.com
jwicht@wc.com
ahardin@wc.com

*Counsel for Cardinal Health, Inc.*

*/s/ Timothy C. Hester*
Timothy C. Hester (DC 370707)
Laura Flahive Wu
Andrew P. Stanner
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
lflahivewu@cov.com
astanner@cov.com

*/s/ Paul W. Schmidt*
Paul W. Schmidt
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: (212) 841-1000
pschmidt@cov.com

12

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*Counsel for McKesson Corporation*

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, WV 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Drug Corporation*

13

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 19th day of April, 2021, the foregoing "Defendants' Opposition to Plaintiffs' Omnibus Motion Regarding IQVIA Trial Testimony" was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Steve Ruby*
Steven R. Ruby (WVSB #10752)