IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**THE CITY OF HUNTINGTON,**

    Plaintiff,

v.                                                  CIVIL ACTION NO. 3:17-01362

**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**

    Defendants.

_____

**CABELL COUNTY COMMISSION,**

    Plaintiff,

v.                                                  CIVIL ACTION NO. 3:17-01665

**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**

    Defendants.

_____

## MEMORANDUM OPINION AND ORDER

Pending before the court is plaintiffs' motion to compel defendant Cardinal Health "to provide the complete basis for refusing to stipulate to the accuracy of plaintiffs' F.R.E. 1006 summary of Cardinal's distributions of oxycodone and hydrocodone to dispensers in each state." ECF No. 1211. That motion is fully briefed and was argued before the court on April 14, 2021.

As the court has previously explained, the Controlled Substances Act of 1970 requires manufacturers and distributors to report their controlled substances transactions to the Drug

Enforcement Administration (DEA). See https://www.deadiversion.usdoj.gov/arcos. (last visited March 8, 2021). The DEA maintains the Automation of Reports and Consolidated Orders System ("ARCOS"), an "automated, comprehensive drug reporting system which monitors the flow of DEA controlled substances from their point of manufacture through commercial distribution channels to point of sale or distribution at the dispensing/retail level - hospitals, retail pharmacies, practitioners, mid-level practitioners, and teaching institutions." Id.

"ARCOS accumulates these transactions which are then summarized into reports which give investigators in Federal and state government agencies information which can then be used to identify the diversion of controlled substances into illicit channels of distribution." Id. The ARCOS database "includes supplier name, registration number, address and business activity; buyer name, registration number and address; as well as drug code, transaction date, total dosage units, and total grams." In re Nat. Prescription Opiate Litig., 927 F.3d 919, 924 (6th Cir. 2019).

In the MDL, the DEA produced ARCOS Data reflecting transactions of drug products containing one or more of fourteen opioid drugs during the time period January 1, 2006, through December 31, 2014. See ECF No. 1008-2 at 2 (Excerpts of Expert

Report of Dr. Craig J. McCann). The DEA produced this data in stages, and Dr. McCann summarized the production in his expert report. See id. at 2-3. Dr. McCann reported that the ARCOS Data contained 500,709,803 total transaction records. See id. In the MDL, defendants, including Cardinal Health, stipulated to the accuracy of the ARCOS Data as produced by the DEA. See ECF No. 2675 in Case No. 1:17-md-02804 at 2 ("The documents produced by the United States Drug Enforcement Administration ("DEA") related to Automated Records and Consolidated Orders System ("ARCOS Data") reflecting transactions in drug products containing one or more of fourteen drugs: buprenorphine, codeine, dihydrocodeine, fentanyl, hydrocodone, hydromorphone, levorphanol, meperidine, methadone, morphine, powdered opium, oxycodone, oxymorphone, and tapentadol for the period of January 1, 2006 through December 31, 2014 shall be deemed authentic and presumed admissible for the purposes of this litigation.").

Dr. McCann adjusted the raw ARCOS data in several ways, in some cases removing certain transactions. See ECF No. 1008-2 at 5-6. He also compared the ARCOS data to Retail Drug Summary Reports produced by the DEA[1] to confirm the accuracy of the ARCOS

---

[1] The DEA publishes six ARCOS Retail Drug Summary Reports each year that summarize the weight of opioids reported in ARCOS transactions. See ECF No. 1008-2 at 6; see also ECF No. 2675 in Case No. 1:17-md-02804 at 2 ("DEA can and does use ARCOS data to create summary reports showing how many controlled substances were manufactured and distributed throughout the United States.").

data received.  See id. at 6-7.  Dr. McCann also reviewed transaction data produced in discovery by defendants and found small gaps in the data produced.  See id. at 8.  Ultimately, Dr. McCann concluded that the overlap between the ARCOS data and the transactional data from defendants demonstrated that both sets of data are reliable.  See id. at 9.[2]

Dr. McCann used his processed data and prepared two charts reflecting his calculations on the amount of oxycodone and hydrocodone shipped by Cardinal to all fifty states and the District of Columbia for each year from 2006 to 2014.  Plaintiffs ask the court to compel Cardinal Health to stipulate to the accuracy of Dr. McCann's work or, in the alternative, order Cardinal to tell plaintiffs why it is wrong.  Plaintiffs also ask the court to order Cardinal to designate a Rule 30(b) witness who can provide accurate distribution numbers by state.  According to plaintiffs, such relief is warranted because of a stipulation wherein the parties agreed to "work in good faith to address specific issues relating to authenticity between now and trial"

---

[2] Plaintiffs previously filed a motion for partial summary judgment asking the court to hold that the ARCOS data received by the DEA and processed by Dr. McCann accurately reflects the shipments of opioid products reported to the DEA by DEA licensed wholesale distributors ("Processed ARCOS Data").  According to plaintiffs, because there was no dispute regarding the accuracy of the Processed ARCOS Data, the parties and the court should not waste trial time on proof of this undisputed fact.  By Memorandum Opinion and Order dated March 15, 2021, the court denied the motion for partial summary judgment holding that it was not proper under Rule 56 because it did not actually seek a judgment.

and that "Plaintiffs will be provided an opportunity to cure all unresolved issues relating to authenticity and foundation, including the ability to depose and/or call a custodial witness at trial." ECF No. 1228 at 2.

At the pretrial conference, plaintiffs confirmed that resolution of this dispute hinges on the terms of the parties' stipulation. <u>See</u> ECF No. 1277 at 9 (Court: "The problem I have with this is what authority do I have to order the parties to do something that's within their discretionary management of their case? Do you have any authority that says I can do this?" A: Well, Judge, I'm relying on the stipulation.").[3] The operative part of the stipulation reads:

> 6. Cardinal Health and the CT2 Plaintiffs will begin a process for reviewing the authenticity and foundation <u>for Cardinal Health-produced documents</u> that Plaintiffs identify between now and trial. The Plaintiffs have expressed a desire to, as much as possible, negate the need for Plaintiffs to bring multiple Cardinal Health witnesses to trial for the sole purpose of authenticating and establishing the proper foundation for use of the identified documents at trial. The parties will work in good faith to address specific issues relating to authenticity and foundation between now and trial. Plaintiffs will be provided an opportunity to cure all unresolved issues relating to authenticity

---

[3] As counsel conceded, the court cannot compel Cardinal Health to stipulate to the accuracy of the exhibits. <u>See, e.g.</u>, <u>Pagan Colon v. Walgreens de San Patricio, Inc.</u>, 269 F.R.D. 165, 169 (D. Puerto Rico 2010) (district court may not compel the parties to stipulate to facts).

>       and foundation, including the ability to
>       depose and/or call a custodial witness at
>       trial.

ECF No. 835 (emphasis added).  Dr. McCann's charts do not fall under the stipulation for the simple reason that they are not "Cardinal Health-produced documents."  Rather, as explained above, the charts reflect the numbers Cardinal provided to the DEA through ARCOS, which the DEA then produced in this case, and Dr. McCann processed.  The only numbers that Dr. McCann used that arguably fall under the stipulation would be the "transaction data produced in discovery by defendants."[4]  The court cannot force Cardinal Health to double check Dr. McCann's work.  For this reason, the motion to compel is **DENIED**.

The Clerk is directed to send copies of this Memorandum Opinion and Order to those counsel of record who have registered to receive an electronic NEF.

**IT IS SO ORDERED** this 22nd day of April, 2021.

>                ENTER:
>
>                [signature: David A. Faber]
>                David A. Faber
>                Senior United States District Judge

---

[4] And, according to counsel for Cardinal, Cardinal Health did not produce nationwide distribution data in this case because it was never asked to do so.  See ECF No. 1277 at 15.  Any attempt to obtain that discovery now, through a Rule 30(b)(6) deposition or otherwise, is untimely.