IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

THE CITY OF HUNTINGTON,

Plaintiff,

v.                                    Civil Action No. 3:17-01362

AMERISOURCEBERGEN DRUG
CORPORATION, et al.,

Defendants.

v.                                    Civil Action No. 3:17-01665

CABELL COUNTY COMMISSION,

Plaintiff,

v.

AMERISOURCEBERGEN DRUG
CORPORATION, et al.,

Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendants' motion for summary judgment on the ground that plaintiffs have no right to abatement.  (ECF No. 1005.)  For the reasons that follow, the motion is **DENIED**.

Plaintiffs, a West Virginia city and a West Virginia county, proceed in this case on a single cause of action against defendants, three prescription drug distribution companies.

That cause of action is public nuisance.  Plaintiffs seek a single remedy:  abatement of the alleged public nuisance.

In this motion, defendants challenge the authority of plaintiff Cabell County ("Cabell") to establish and administer the programs (such as addiction treatment programs) that Cabell wants the court to order defendants to fund to abate the public nuisance that Cabell alleges.[1]  Defendants say that Cabell is the wrong plaintiff to pursue the relief it seeks in this case.  In support, defendants point to Cabell's failure to take hitherto the actions it wants to take if it wins the case; they also point to testimony by Cabell's representative stating that such actions are not functions of a county government.

In opposition, Cabell says that the question of its authority is purely a legal one.  Thus, Cabell says, the testimony purportedly disavowing its authority is irrelevant, and the issue boils down to whether West Virginia Code § 7-1-3kk authorizes Cabell to seek and implement its sought-after abatement.  Cabell says the power to abate under § 7-1-3kk goes beyond the power to enjoin and that West Virginia law regulating drugs does not preempt its claim.  Cabell also disputes defendants' contention that it is the wrong plaintiff and disputes defendants' characterization of the testimony upon

---

[1] This motion does not seek summary judgment against plaintiff City of Huntington.

which defendants rely to show that Cabell admitted a lack of
authority to implement its proposed abatement plans.

I.    **Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides:

> A party may move for summary judgment, identifying
> each claim or defense—or the part of each claim or
> defense—on which summary judgment is sought.  The
> court shall grant summary judgment if the movant shows
> that there is no genuine dispute as to any material
> fact and the movant is entitled to judgment as a
> matter of law.

The moving party has the burden of establishing that there is no
genuine issue as to any material fact.  Celotex Corp. v.
Catrett, 477 U.S. 317, 323 (1986).  This burden can be met by
showing that the nonmoving party has failed to prove an
essential element of the nonmoving party's case for which the
nonmoving party will bear the burden of proof at trial.  Id. at
322.  This is so because "a complete failure of proof concerning
an essential element of the nonmoving party's case necessarily
renders all other facts immaterial."  Id. at 323.

Once there is a proper challenge to the sufficiency of the
nonmoving party's evidence on an essential element, the burden
shifts to the nonmoving party to produce sufficient evidence for
a jury to return a verdict for the nonmoving party.  See
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

> The mere existence of a scintilla of evidence in
> support of the plaintiff's position will be
> insufficient; there must be evidence on which the jury

> could reasonably find for the plaintiff.  The judge's
> inquiry, therefore, unavoidably asks whether
> reasonable jurors could find, by a preponderance of
> the evidence, that the plaintiff is entitled to a
> verdict . . . .

Id. at 252.  "If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted."  Id.

at 250-51.  All reasonable inferences are to be drawn in the

nonmoving party's favor.  See id. at 255.

## II.  Discussion

The arguments in this motion go mostly to whether the

equities favor providing the only form of relief that plaintiffs

seek (funding) and to what degree (the amount of funding).  To

grant summary judgment, the court would have to rule that, as a

matter of West Virginia law, abatement in the form of funding

for remediation efforts is never permissible.  The court is

unprepared to do so.

Defendants first argue that municipalities have no place in

the business of regulating drug distribution and that this case

is essentially an ill-advised foray into that business.

Defendants point out that many state governments have expressed

the sentiment that municipalities' claims tend to hinder the

resolution of the opioid litigation on a grand scale.

Regardless of whether defendants are correct, the court cannot

grant summary judgment on that basis alone.

Building upon their first argument, defendants next state that Cabell (1) has not previously engaged in substantive attempts to address the alleged public nuisance; and (2) acknowledges that, as a county government, its function is not to engage in such attempts.  Specifically, defendants cite deposition testimony by Cabell's designated representative stating that preventive or remedial actions to address the alleged public nuisance are not Cabell functions.  Defendants consider this testimony conclusive on the issue of Cabell's authority to create or fund their desired abatement programs. They conclude that because Cabell is legally powerless to spend the billions in funding that it seeks, and because Cabell does not seek an injunction, there is no abatement remedy that the court can provide.

The court agrees with Cabell that defendants cannot rely on deposition testimony to establish a lack of authority because the scope of Cabell's authority is a legal question.  Cabell has the statutory authority to take "appropriate and necessary actions for the elimination of hazards to public health and safety and to abate or cause to be abated anything which [it] determines to be a public nuisance."  See W. Va. Code Ann. § 7-1-3kk.  Defendants raise the important question of whether this grant of abatement authority includes the power to seek funding alone and to administer the programs that plaintiffs seek to

5

fund, even if such programs are outside the ordinary realm of
county functions.

Defendants are correct that there is no precedent from the
Supreme Court of Appeals of West Virginia providing that
abatement may take the form of an award solely of funding for a
remediation plan.  But neither is there a holding to the
contrary.  In most public nuisance cases requiring remediation
efforts, an injunction requiring the defendant to undertake such
remediation is feasible.  As Judge Polster has pointed out,
however, such an order would not be feasible here because
defendants "do not have the requisite infrastructure."  See In
re Nat'l Prescription Opiate Litig., No. 1:17-MD-2804, 2019 WL
4043938, at *2 (N.D. Ohio Aug. 26, 2019).[2]

To say that West Virginia law never permits funding of a
remediation plan as a form of abatement is to draw too great an
inference from the case law.  If the facts prove that an
injunction requiring remediation would not be feasible, it is
unclear why the court could not order funding as the functional
equivalent.[3]  While such a scenario has never reached the Supreme

---

[2] To the extent defendants wish to challenge the sufficiency of
Cabell's infrastructure to carry out its proposed abatement
plan, they may do so at trial.  This motion challenges
plaintiffs' authority, not their infrastructure.

[3] The court will not attempt to set forth other potential
limitations on an order of funding, and defendants are free to
argue for such limitations.  The court merely rejects the

Court of Appeals of West Virginia, this court considers a holding by that court that abatement-by-funding is <u>always impermissible</u> unlikely.

Defendants' state-law field preemption argument is also unavailing. Defendants rely on <u>EQT Prod. Co. v. Wender</u>, 191 F. Supp. 3d 583 (S.D.W. Va. 2016). On review of that case, the Fourth Circuit Court of Appeals affirmed that the municipality there could not "override the state's licensing decisions by imposing a blanket ban on" underground injection control wells. <u>EQT Prod. Co. v. Wender</u>, 870 F.3d 322, 335 (4th Cir. 2017). The appeals court expressly left the door open, however, for the municipality to pursue a public nuisance action. <u>See</u> <u>id.</u> It also distinguished between state-licensed activity that is being carried out <u>properly</u> and that which is being carried out <u>improperly</u>, distancing the reach of its opinion from the latter category. <u>See</u> <u>id.</u> Thus, while state law sometimes preempts municipal action, it does not stop Cabell's lawsuit in its tracks.

### III. <u>Conclusion</u>

For the reasons expressed above, defendants' motion for summary judgment (ECF No. 1005) is **DENIED**.

---

contention that such relief is utterly prohibited under West Virginia law in the context of a public nuisance case brought by a county commission.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to those counsel of record who have registered to receive an electronic NEF.

**IT IS SO ORDERED** this 26th day of April, 2021.

ENTER:

David A. Faber
Senior United States District Judge