UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**THE CITY OF HUNTINGTON,**
    Plaintiff,

v.

**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**
    Defendants.

CIVIL ACTION NO. 3:17-01362

---

**CABELL COUNTY COMMISSION,**
    Plaintiff,

v.

**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**
    Defendants.

CIVIL ACTION NO. 3:17-01665

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
NOTICE OF SECONDARY AUTHORITY**

Defendants have filed as supplemental authority a forthcoming article from Goldberg and Zipursky ("authors") entitled "Opioid Litigation and The Law of Public Nuisance: A Preliminary Assessment," ("article") as further support for Defendants' Motion for Summary Judgment Regarding Nuisance.[1]  The authors' "preliminary assessment" ignores the substantial weight of recent authority, including WV authority, upholding public nuisance claims in the opioids (and related) contexts, and the majority of court decisions they do cite disagree with their conclusions. Plaintiffs offer these observations in response.

---
[1] Doc. 1279-1.

First, the article minimizes the overwhelming contrary precedent which holds that the conduct alleged by Plaintiffs constitutes a substantial interference with a public right sufficient to support a public nuisance claim. The article, while acknowledging in passing that a majority of the opioid decisions reach a contrary result,[2] understates the overwhelming rejection of the authors' conclusion and Defendants' argument by the courts actually litigating these cases nationwide. As of this date, courts in West Virginia and twenty-six other states have rejected the Defendants' claim echoed in the article that no public rights are at issue in these opioid cases.[3] Notably, the article does not even cite forty-one contrary opioid decisions issued since 2018.[4] Nor do the authors address the West Virginia trial and appellate rulings rejecting Defendants' claims that the opioid crisis is not an interference with public rights.[5] And, the authors also fail to address recent decisions accepting similar public nuisance claims in non-opioid contexts.[6] The weight of these decisions has pushed the question of whether the opioid crisis constitutes an interference with public rights past the tipping point – with at least one state court reversing its prior rejection of a public nuisance opioid claim.[7]

---

[2] Doc 1279-1 at 19, 24.

[3] See Plaintiffs' Appendix of Decisions (attached as Exhibit A).

[4] *See* Exhibit A at tabs 1-26.

[5] Doc. 1077-0 at 8.

[6] *See, e.g., In re JUUL Labs, Inc., Mktg., Sales Practices, & Prod. Liab. Litig.,* No. 19-MD-02913-WHO, 2020 WL 6271173, *63 (N.D. Cal. Oct. 23, 2020) (claims by school boards that manufacturer of electronic cigarettes interfered with public health stated a claim for interference with public rights sufficient to support a claim for public nuisance under laws of Arizona, New York, Pennsylvania, Florida, and California).

[7] *See Michigan ex rel. Kessel v. Cardinal Health, Inc.*, No. 19-016896-NZ, slip op. (Cir. Ct. Mar. 24, 2021) (attached as Exhibit A, tab 9), *reversing on reconsideration* slip. op. (Cir. Ct. Nov. 17, 2020).

Second, the authors' state a preference for legal tools other than public nuisance to combat "the risks and harms associated with the opioid epidemic" such as government regulation and state tort claims.[8] The authors, however, recognize that courts by and large rejected their view of the viability of individual tort claims.[9] The article also largely ignores the fact that these ostensible tools existed while the opioid crisis was exploding, and failed to prevent the opioid crisis and failed to result in the abatement of current harms that continue to interfere with the public health, safety, convenience, and welfare. The failure of government regulation and individual tort remedies generated the need for these nuisance claims nationwide. Although strengthening these tools may prevent a future need for state and local governments to bring public nuisance claims, it will do nothing to abate the significant, ongoing problems caused by Defendants' conduct.

Third, the authors' criticisms of opioid public nuisance claims are based on an inaccurate characterization of both the nature and extent of the opioid epidemic's interference with public rights. Even assuming the authors' cramped limitation of public rights to those activities that "interfere unduly with the ability of members of the public to use and enjoy public spaces and resources,"[10] the opioid epidemic in Cabell/Huntington easily meets this test. As noted in Plaintiffs' opposition, the opioid epidemic has led to devastation of the Plaintiffs' community

---

[8] Doc. 1279-1 at 19.

[9] Doc. 1279-1 at 24 ("One can only wonder *if courts had been a bit more thoughtful* and receptive in their handling of personal injury claims . . . they might have been able to offer victims meaningful redress in a far less adventurous manner than by embracing an open-ended conception of the tort of public nuisance.") (emphasis added).

[10] Doc. 1279-1 at 20. The impact of the opioid epidemic is undeniable. Less than a week ago, the Center for Disease Control released a report entitled "Economic Costs of Opioid Use Disorder and Fatal Opioid Overdose — United States, 2017." Morbidity and Mortality Weekly Report, Vol 70, No. 15 (April 16, 2021) (attached as Exhibit B). In West Virginia, those costs are estimated to be $13,159,100,000. *Id.* On a per capita basis, the costs are the highest in the United States. *Id.*

including an increase in crime, communicable diseases, and an interference with the ability to enjoy public neighborhoods, public parks, public transportation, public schools, and other local public services.[11] Plaintiffs have established that the Defendants' distribution of opioids "actually did result in [community] members being regularly hindered in their ability to occupy, use, and enjoy public spaces," and the abatement remedy Plaintiffs seek "aims to eliminate such hindrances."[12]

Finally, the authors' "defendant intrusion" requirement[13] has no application to Plaintiffs' claims here. Initially, the authors cite no basis in the case law for this supposed requirement. The principal example cited is a bar that attracts too many college students and serves them too much alcohol:

> Suppose several bars in a college town each Thursday night hold an event called "Devil 'n Dune Night," at which they sell a wildly popular drink that mixes locally crafted whiskey and beer. Suppose further that a tradition develops among local fraternity members that calls for them to descend *en masse* on the bars, consume the drink in copious amounts, then unceremoniously relieve themselves in a tributary of a local river.[14]

The authors posit that the bar owner is not liable for creating public nuisance under those facts. In West Virginia, however, such conduct would likely be considered a public nuisance.[15] Moreover, the authors' premise that the Defendants' distribution of opioids was "in an otherwise lawful

---

[11] Doc. 1077-0 at pp. 4-7 (citing testimony and expert reports).

[12] Doc. 1279-1 at 20.

[13] Doc. 1279-1 at 20-21.

[14] *Id.* at 21.

[15] *See* W. Va. Code Ann. § 60-6-16 (declaring any place where alcoholic liquor is sold, contrary to law shall be deemed a common and public nuisance); W. Va. Code Ann. § 60-3A-25(3) (making illegal the sale to any person visibly intoxicated).

manner"[16] is false.[17] At trial, Plaintiffs will prove that Defendants violated state and federal law by failing to design and operate a system to identify suspicious orders, failing to report those suspicious orders to the Drug Enforcement Administration and the Board of Pharmacy, and failing to stop the shipment of suspicious orders pending investigation.[18] Indeed, as this Court has recognized, the violation of these statutes constitutes a per se nuisance.[19] Such a finding is appropriate when the resulting interference with public rights is the foreseeable consequence of Defendants' actions.[20] The article's premise that the actions of the opioid distributors were lawful is simply false, and the argument that because Defendants' conduct was sometimes lawful it cannot constitute a nuisance has been rejected by this Court.[21]

\* \* \* \*

The article is not well grounded in nuisance law in general or West Virginia law in particular. The authors ignore or minimize the nature of the unabated opioid crisis caused by Defendants, their culpability in causing it, and the overwhelming caselaw approving of public nuisance opioid claims. Finally, even adopting the tests for interference with a public right the authors advocate, the factual record here easily meets the authors' tests.

---

[16] Doc. 1279-1 at 22.

[17] *See City and County of San Francisco v. Purdue Pharma L.P.*, 2020 WL 5816488, at \*44 (N.D. Cal. Sept. 30, 2020) (rejecting Distributors' argument that authority addressing lawful product distribution applies to their failure to maintain effective controls against diversion) (attached as Exhibit A, tab 5).

[18] Doc. 1011-0; Doc. 1079-0.

[19] Doc. 1248 at 18 ("the alleged illegal acts in relation to defendants' prescription drug distribution, if proved, may constitute a nuisance per se"), *id.* at 17 (rejecting argument that statute must declare action both illegal and a nuisance for actions to constitute a nuisance per se).

[20] Doc. 1080 at 11-12. Plaintiffs submit that the authors' concerns about the public impacts being too remote from Defendants' conduct are adequately addressed by the law of proximate cause, an issue where a large body of West Virginia law already exists. *See id.* at 5-21.

[21] Doc. 1248 at 17-18.

Dated: April 26, 2021

Respectfully submitted,

| THE CITY OF HUNTINGTON | CABELL COUNTY COMMISSION |
|---|---|
| /s/ *Anne McGinness Kearse* | /s/ *Paul T. Farrell Jr.* |
| Anne McGinness Kearse (WVSB No 12547) | Paul T. Farrell, Jr. (WVSB Bar No. 7443) |
| Joseph F. Rice | **FARRELL & FULLER LLC** |
| **MOTLEY RICE LLC** | 1311 Ponce de Leon Ave., Suite 202 |
| 28 Bridgeside Blvd. | San Jaun, Puerto Rico 00907 |
| Mount Pleasant, SC 29464 | Mobile: 304-654-8281 |
| Tel: 843-216-9000 | paul@farrell.law |
| Fax: 843-216-9450 | |
| akearse@motleyrice.com | /s/ *Anthony J. Majestro* |
| jrice@motleyrice.com | Anthony J. Majestro (WVSB No. 5165) |
| | **POWELL & MAJESTRO, PLLC** |
| Linda Singer | 405 Capitol Street, Suite P-1200 |
| David I. Ackerman | Charleston, WV 25301 |
| **MOTLEY RICE LLC** | 304-346-2889 / 304-346-2895 (f) |
| 401 9th Street NW, Suite 1001 | amajestro@powellmajestro.com |
| Washington, DC 20004 | |
| Tel:  202-232-5504 | Michael A. Woelfel (WVSB No. 4106) |
| Fax:  202-386-9622 | **WOELFEL AND WOELFEL, LLP** |
| lsinger@motleyrice.com | 801 Eighth Street |
| dackerman@motleyrice.com | Huntington, West Virginia 25701 |
| | Tel. 304.522.6249 |
| Charles R. "Rusty" Webb (WVSB No. 4782) | Fax. 304.522.9282 |
| **The Webb Law Centre, PLLC** | mikewoelfel3@gmail.com |
| 716 Lee Street, East | |
| Charleston, West Virginia 25301 | |
| Telephone: (304) 344-9322 | |
| Facsimile: (304) 344-1157 | |
| rusty@rustywebb.com | |

## CERTIFICATE OF SERVICE

I certify that on April 26, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Anthony J. Majestro*