2019 WL 1590064 (Ark.Cir.) (Trial Order)
Circuit Court of Arkansas.
Sixteenth Division
Pulaski County

STATE of Arkansas,

v.

PURDUE PHARMA L.P., et al.

No. CV2018002018.
April 5, 2019.

**Ruling on Motions to Dismiss and Motion to Strike**

Morgan E. Welch, Judge.

***1** This case is brought by the Arkansas Attorney General on behalf of the public, seeking injunctive relief and disgorgement of profits from certain manufacturers of opioids. The complaint asserts violations of the Arkansas Deceptive Trade Practices Act (ADTPA), violations of the Medicaid Fraud False Claims Act (MFFCA), creation of a public nuisance by the Defendants, unjust enrichment of the Defendants, and civil conspiracy. Defendants seek dismissal, arguing that the claims fail because of federal preemption, because there is neither interference with a public right nor adequate causation alleged to support the nuisance claim, because the State neither plead any actionable conduct by the Defendants nor adequately alleged proximate causation, because there is not adequate causation alleged for the ADTPA claim, because there is neither adequate causation alleged for the MFFCA claim nor did the State adequately plead pursuant to Rule 9(b) of the Arkansas Rules of Civil Procedure the MFFCA claim, because the civil conspiracy claim is derivative and therefore inadequately plead, and that the municipal cost recovery rule bars the claims. The Court requested argument on the pending Motions to Dismiss and Motion to Strike, which was heard on March 25, 2019.

*Discussion*

In deciding motions to dismiss such as those before this Court, our Supreme Court has stated that the court "must look only to the complaint" *Malone v. Trans-States Lines, Inc.*, 325 Ark. 383, 926 S.W.2d 659 (1996). Further, in testing the sufficiency of the complaint on a morion to dismiss, "all reasonable inferences must be resolved in favor of the complaint, and pleadings are to be liberally construed." *Fitzgiven v. Dorey*, 2013 Ark. 346, 429 S.W.3d 234.

Arkansas requires fact pleading: "a pleading which sets forth a claim for relief … shall contain (1) a statement in ordinary and concise language of facts showing that the pleader is entitled to relief …" ARCP 8(a)(1). ARCP 12(b)(6) provides for the dismissal of a complaint for "failure to state facts upon which relief can be granted." Our Supreme Court has stated that these two rules must be read together in testing the sufficiency of the complaint; facts, not mere conclusions, must be alleged. *Rabalaias v. Barnett*, 284 Ark. 527, 683 S.W.2d 919 (1985).

In order to properly dismiss the complaint, the court must find that the plaintiff either (1) failed to state general facts upon which relief could have been granted or (2) failed to include specific facts pertaining to one or more of the elements of one of the claims after accepting all facts contained in the complaint as true and in the light most favorable to the non-moving party. *Thomas v. Pierce*, 87 Ark. App. 26, 28, 184 S.W.3d 489, 490 (2004).

Ex. A - Tab 4 - Arkansas

*Oral Motion to Defer Ruling*

1. At the outset of oral argument, Defendants Purdue Pharma L.P., Purdue Pharma, Inc., and The Purdue Frederick Company, Inc. (collectively "Purdue Pharma") made an oral Morion to Defer Ruling in anticipation of a possible decision by the Supreme Court of the United States in the pending preemption issue case of *Merck v. Albrecht*. The oral Motion to Defer Ruling is DENIED. The Court has reviewed the opinion of the Court of Appeals below in *Merck, Sharpe & Dohme v. Albrecht*, 852 F.3d 268 (3d Cir. 2017). *Merck* involves preemption as relates to the drug Fosamax. The Court has also reviewed the existing, settled standard in *Wyeth v. Levine*, 555 U.S. 555 (2009), as it pertains to the when and under what circumstances preemption applies to FDA labeling in a products case and is satisfied no delay is warranted.

*Motion to Strike Reference to Endo Settlement in New York*

**\*2** 2. The motion to strike Paragraphs 5, 61, 64, and 75 of the Complaint by Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals, Inc. (collectively "Endo") is GRANTED without prejudice to the Plaintiff to move its admission for a limited purpose (e.g., to show notice or the date thereof) if the facts asserted in the above numbered portions of the Complaint are not otherwise established or stipulated.

3. The Court notes the information stricken from each respective Paragraph is limited to references to the settlement agreement and any portion remaining is not stricken. The Court further observes the striking of these portions of the Complaint do not affect the Plaintiff's claims against Endo at this stage of the proceeding.

*Preemption*

4. After preliminary motions, Purdue first argued the claim contained in the Defendants' Joint Motion to Dismiss, Purdue Pharma's Motion to Dismiss, and Johnson & Johnson (J&J) and Janssen Pharmaceuticals, Inc.'s (Janssen) Motion to Dismiss: that the claims asserted by the Plaintiff are preempted by the federal Food, Drug and Cosmetic Act (FDCA), 21 U.S.C. §§ 301, *et seq.*

5. In considering the issue of preemption, there are two main principles by which the Court is guided: first, that "the purpose of Congress is the ultimate touchstone in every preemption case," *Wyeth v. Levine*, 555 U.S. 555 (2009) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (internal quotation marks omitted)); and secondly, that "[i]n all preemption cases, and particularly in those in which Congress has 'legislated…in a field which the States have traditionally occupied,'…we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" U.S. CONST. art. 6, cl. 2; *id.* at 1194-95 (citing *Lohr*, 518 U.S. at 485, 116 S.Ct. 2240).

6. In arguing the issue of preemption, the Defendants assert "the federal [FDCA], 21 U.S.C. §§ 301, *et seq.*, impliedly preempts claims seeking to impose a duty to alter FDA-approved labeling or otherwise market FDA-approved prescription medications in a way that conflicts with federal law." Brief in Support of Defendants' Joint Motion to Dismiss at 5 (citing *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472, 488-89 (2013); *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617-19 (2011)).

7. While the above recitation on the law of preemption is accurate, in the Plaintiff's Complaint, the State is not asserting the Defendants failed to comply with the FDA labeling requirements, nor that the FDA-approved labeling should be altered, but rather that in spite of the information contained within the FDA-approved labeling, each individual Defendant perpetrated fraud in marketing the prescription drugs in contravention to the FDA-approved labeling.

8. Thus, the claim asserted by the Plaintiff with any regard to FDA labeling is one of fraud. Fraud falls squarely within the realm of historic police powers of the state. *See, e.g., Reserve Vault Corp. v. Jones*, 234 Ark. 1011, 356 S.W.2d 225 (1962)("The enactment of statutes for the purpose of prevention of fraud is within the police power of the state."); *Stuart v. Elk Horn Bank & Trust Co.*, 123 Ark. 285, 185 S.W. 263 (1916)("[T]his legislation is a valid exercise of the police power, in that it is intended to protect…from fraud[] ....").

9. Accordingly, the Defendants' contention that the claims are preempted by the FDCA, 21 U.S.C §§ 301, *et seq.*, is DENIED.

*Public Nuisance*

**\*3**  10. Plaintiff's public nuisance claim alleges that the "Defendants, individually and in concert with each other, have engaged in improper and unlawful conduct that is injurious to public health and safety and has caused material discomfort and annoyance to the public at large." Complaint at 131. Specifically, Plaintiff alleges the "Defendants' actions were, at the least, a substantial factor in opioids becoming widely available and widely used." *Id.* at 134. And that "[w]ithout Defendants' actions, opioid use would not have become so widespread, and the enormous public health hazard of opioid overuse, abuse, and addiction that now exists would have been averted." *Id.*

11. The Defendants' rebuttal is four-fold: 1) that the State fails to plead unreasonable interference with a public right, 2) that the State fails to adequately plead causation, 3) that the State does not adequately plead facts as to each Defendant; and 4) that the municipal cost recovery rule bars the State's public nuisance claim.

12. Under Arkansas law, a public nuisance is any improper, indecent, or unlawful conduct that injures the public and produces material annoyance, inconvenience, and discomfort. *Lonoke v. Chicago, R.I. & P.R. Co.*, 92 Ark. 546, 123 S.W. 395, 398 (1909).

13. The first point of Defendants' rebuttal argument contends the Plaintiff has failed to allege facts sufficient to show the violation of "a public right held in common by the community as a whole." Defendants' Joint Brief at II.A. (citing *Ozark Poultry Prods., Inc. v. Garman*, 251 Ark. 389, 390-91 (1971). Defendants also cite to the Restatement of Torts for the proposition that public rights are "collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured." *Id.* (citing Restatement (Second) of Torts § 821B cmt. g (1979)). The Restatement also notes as an example of a public nuisance "conduct [that] involves a significant interference with the public health," and offers as an example the spread of smallpox, risking an epidemic. Restatement (Second) of Torts § 821B cmt. g (1979). Defendants cannot seriously contend that the impacts of opiate addiction in Arkansas have not affected the general public.

14. The Defendants' second argument on public nuisance, that the State fails to adequately plead causation, relies on two similar cases: *Ashley County v. Pfizer, Inc.*, 552 F.3d 659 (2009) and *Independence Cty. v. Pfizer, Inc.*, 534 F. Supp. 2d 882 (E.D. Ark. 2008). Defendants' cite these cases for the proposition that the "remoteness doctrine" bars the Plaintiff's claims, such that Plaintiff failed to "plead a 'direct link' between the alleged malfeasance and the purported injury." Defendants' Joint Brief at II (citing *Independence Cty.*, 534 F. Supp. 2d at 888-89).

15. Both the *Ashley County* and *Independence County* cases are distinguishable from the present matter. The first and most obvious is the State's role in administering Medicaid claims for Defendants' products. Secondly, no third party intervening cause (criminal or otherwise) is alleged.

16. In each of the cases advanced by Defendants, the plaintiff counties' allegations that drug manufacturers knew its products would be used to create methamphetamines did not demonstrate proximate cause because "there is no direct link in between Defendants' products and Plaintiffs' damages." *Independence Cty.*, 534 F. Supp. 2d at 888-89. In each of those cases, however, the Defendant established an intervening cause that was the actual creation of the relevant injury independent of their conduct (i.e., the illegal actions in the manufacture and distribution of the methamphetamine).

**\*4**  17. The allegations by the Plaintiff herein are that Defendants not only knowingly put potentially harmful medication on the market (such as with *Ashley County*), but that the Defendants, individually and in concert with one another, intentionally spread false and deceptive statements through direct marketing of their branded opioids, including such examples as patently misleading advertisements, sales representatives who visited individual doctors and promoted the use of opioids for chronic pain, and doctors who were hired by the Defendants to speak at programs in order to give the false impression that they were providing unbiased and medically accurate presentations.

18. While causation may prove to be an arguable obstacle to Plaintiff at trial, even there, Defendants have the burden of proving an intervening cause created the relevant injury independent of their conduct. *Belz-Burrows, L.P. v. Cameron Const. Co.*, 78 Ark. App. 84, 90, 78 S.W.3d 126, 130 (2002). Defendants have failed to adequately show an alleged intervening cause at this stage of the litigation.

19. Defendants' third point of rebuttal on the public nuisance claim, that the State does not adequately plead facts as to each Defendant, alleges the Plaintiff impermissibly engaged in "group pleading." This Court does not agree. There are ample specific allegations against each Defendant so as to allow each Defendant to meaningfully respond and defend themselves.

20. Defendants' last point of rebuttal with regard to public nuisance is mat the Municipal Cost Recovery Rule, which provides the rule that governments cannot recover in tort for the costs of public services, bars the State's public nuisance claim. *See, e.g., United States v. Standard Oil Co. of Cal.*, 332 U.S. 301 (1947). While this Court is not convinced of the application of the Municipal Cost Recovery Rule in this situation, in either event, no court in Arkansas has recognized the Municipal Cost Recovery Rule and this Court is not inclined to do so now.

### ADTPA

21. The sole basis on which the Defendants seek to dismiss Plaintiff's ADTPA claim is an assertion the Plaintiff insufficiently alleged causation.

22. At this stage of trial, Plaintiff has sufficiently alleged causation; thus Defendants' Motion to Dismiss Plaintiff's ADTPA claim is DENIED.

### MFFCA

23. To state a claim under Arkansas's MFFCA a person must allege facts sufficient to show the Defendant: "1) Knowingly ma[de] or cause[d] to be made any false statement or representation of a material fact in any claim, request for payment, or application for any benefit or payment under the Arkansas Medicaid Program;" or "2) [k]nowingly ma[de] or cause[d] to be made any omission or false statement or representation of a material fact for use in determining rights to a benefit or payment under the Arkansas Medicaid Program." Ark. Code Ann. § 20-77-902(1)-(2).

24. Plaintiff's allegations contained in its Complaint are that the Defendants' alleged deceptive marketing practices made or caused to be made fake statements, omissions or misrepresentations of material fact in the application for benefits or payments under the Arkansas Medicaid Program in that at the time of making or causing false or misleading statements or omissions in marketing that doctors would write prescriptions for opioids to treat chronic pain and that the Arkansas Medicaid Program would approve and pay such claims.

25. By comparison to pleading requirements for federal False Claims Act claims, the Defendants argue in their Joint Brief the Plaintiff fails to plead with the particularity required for asserting a claim of fraud pursuant to Arkansas Rules of Civil Procedure 9(b).

**\*5** 26. There is no authority in Arkansas to establish that claims made under the MFFCA require the stringent pleading requirements of Arkansas Rules of Civil Procedure 9(b).

27. This Court does not agree with the Defendants' assertion Arkansas was required to plead in its Complaint, on a claim-by-claim basis, to identify the false statement made, the person who made it, the doctor who wrote a prescription based on a false statement, the resulting medication prescribed, the person who filled the prescription, and when it was submitted.

28. Regardless, the Plaintiff's Complaint alleges sufficient facts to assert a claim under the MFFCA; the Defendant's motion to dismiss Plaintiff's MFFCA claim is therefore DENIED.

*Unjust Enrichment*

29. Defendants' Joint Motion to Dismiss alleges that Arkansas's claim for unjust enrichment should be dismissed because there was no implied contract between Arkansas and Defendants.

30. In support of their argument, they rely on *Ashley County*, but this matter is distinguishable from *Ashley County* with regard to unjust enrichment. In *Ashley County*, the Plaintiff counties sought to have the defendants, manufacturers and distributors of products containing pseudoephedrine, pay for "law enforcement, inmate housing, social services, and treatment." 552 F.3d at 666.

31. In contrast, Arkansas's claim for unjust enrichment alleges "the State has overpaid for opioid prescriptions and permitting Defendants to retain overpayments [they] fraudulently procured would be unjust and inequitable." Complaint at 139. Here the State provided services (Medicaid), which rendered services with the clear expectation of being reimbursed for any amounts overpaid, and Defendants clearly marketed and sold their opioids for chronic pain with "a reasonable expectation of their payment" by Arkansas Medicaid. *Ashley County*, 552 F.3d at 666; *Dews*, 288 Ark. at 536, 708 S.W.2d at 69 ("Courts … will only imply a promise to pay for services where they were rendered in such circumstances as authorized the party performing them to entertain a reasonable expectation of their payment by the party beneficiary.").

*Conspiracy*

32. Plaintiff alleges a civil conspiracy to deceive the State, physicians and consumers, in that the Defendants coordinated their efforts pursuant to a shared plan and common agreement to deceptively market opioids for chronic pain in Arkansas.

33. Specifically, Plaintiff alleges Defendants violated, "…at a minimum, the Medicaid Fraud False Claims Act, Ark. Code Ann. §§ 20-77-901, *et seq.*, the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101, *et seq.*, and Arkansas common law…" Complaint at 144; *see also*, AMI 713, 714.

34. The Plaintiff further alleges that Defendants controlled the messages disseminated by Front Groups and KOLs by "funding, directing, reviewing, editing, and distributing" unbranded marketing, or advertising that does not name a specific opioid. Complaint at 34.

35. The State has sufficiently alleged facts to plead a conspiracy under Arkansas law, *i.e.* they have alleged facts sufficient to "show a combination of two or more persons to accomplish a purpose that is unlawful or oppressive...." *Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 445 (2001).

*Motion to Dismiss Johnson & Johnson*

**\*6** 36. In its Motion to Dismiss, J&J alleges the State fails to state a claim against J&J, both in that the State does not allege any wrongdoing by J&J nor does the State allege any theory of vicarious liability under which J&J could be held liable for Janssen's conduct, and secondly that the State pleads no actionable conduct against Janssen.

37. With specific regard to the argument of vicarious liability, J&J alleges Arkansas's claim fails because Arkansas has failed to establish sufficient facts to pierce the corporate veil.

38. J&J's liability does not depend upon piercing the corporate veil, however, and is instead based on principles of vicarious liability, under which a parent corporation may be held responsible for a specific act that it ordered and authorized. *See* Restatement (Second) of Agency, Section 14M cmt. a (1958); Restatement (Third) of Agency, Section 1.01, cmt. f(2) (2006).

39. Plaintiff's Complaint alleges J&J is liable under agency principles because it is the only company that owns more than 10% of Janssen's stock, corresponds with the FDA regarding Janssen's products, controlled Janssen's marketing, and retained the benefits of Janssen's fraud. Complaint at 19.

40. Accordingly, at least for purposes of a motion to dismiss, the State has alleged enough for the Court to infer that J&J had an agency relationship with Janssen and can therefore be held liable for Janssen's actions as alleged in the Complaint. *See Rounds & Porter Lumber Co. v. Burns*, 216 Ark. 288, 225 S.W.2d 1 (1949)("Degree of parent company control is a fact question."); *Black v. Valley Behavioral Health System, LLC*, 2015 WL 13655174 (W.D. Ark.)("The Court recognizes that [corporate liability] principles could possibly preclude Acadia from being held liable for the acts of VBHS; however, a final decision on this status of the separate defendant entities' relationship would be premature at this juncture, as those circumstances have not yet been fully developed."); *see also Oliver v. Bluegrass*, 284 Ark. 1 (1984); *1st National Bank of Camden v. Tracor MBA*, 851 F.2d 212 (1988).

### *Punitive and Treble Damages*

41. Defendants move to strike Arkansas's request for punitive and treble damages because the State does not allege (1) any egregious or malicious conduct by any Defendant that would support a claim for punitive damages or (2) any statutory basis for a ~~claim~~ for treble damages.

42. The Court does not agree. Under Arkansas law punitive damages are available if:
  (1) The defendant knew or ought to have known, in light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damage and that he or she continued the conduct with malice or in reckless disregard of the consequences; or

  (2) The defendant intentionally pursued a course of conduct for the purpose of causing injury or damage.

Ark. Code Ann. § 16-55-206.

43. Arkansas has pled sufficient allegations to meet this standard.

44. Further, treble damages are available to the State under the Medicaid Fraud False Claims Act. Under Arkansas Code Annotated § 20-77-902, "[a] person shall be liable to the State of Arkansas, through the Attorney General, for a civil penalty of three (3) times the amount of damages if he or she [k]nowingly makes or causes to be made any false statement or representation of a material fact in any claim, request for payment, or application for any benefit or payment under the Arkansas Medicaid Program." *See* Complaint at 122.

**\*7** 45. While the fact questions regarding Defendants' alleged deceptive statements remain for trial, at this stage of the litigation, the Plaintiff has adequately pleaded a claim for both punitive and treble damages.

IT IS SO ORDERED.

<<signature>>

HONORABLE MORGAN E. WELCH

Circuit Judge

4-5-19

DATE

---

**End of Document**  © 2021 Thomson Reuters. No claim to original U.S. Government Works.