| STATE OF MINNESOTA | DISTRICT COURT |
|---|---|
| COUNTY OF HENNEPIN | FOURTH JUDICIAL DISTRICT |

| | |
|---|---|
| State of Minnesota by its Attorney General Lori Swanson,<br>　　　　　Plaintiff,<br><br>v.<br><br>Purdue Pharma L.P., Purdue Pharma, Inc., and The Purdue Frederick Company, Inc.,<br>　　　　　Defendants. | Court File No. 27-CV-18-10788<br><br>**ORDER DENYING<br>MOTION TO DISMISS** |

This case came on for hearing before Judge Kevin S. Burke on October 17, 2018.

Eric Maloney and Evan Romanoff, Assistant Minnesota Attorney Generals, appeared on behalf of Plaintiff State of Minnesota by its Attorney General Lori Swanson.

Erik Snapp and Peter Gregory, Esqs., appeared on behalf of Defendants Purdue Pharma L.P., Purdue Pharma, Inc., and The Purdue Frederick Company, Inc.

Based upon the record and arguments,

**IT IS HEREBY ORDERED that:**

1. Defendants Purdue Pharma L.P., Purdue Pharma, Inc., and The Purdue Frederick Company, Inc.'s Motion to Dismiss is **DENIED**.

2. The attached Memorandum is incorporated.

Ex. A - Tab 10 - Minnesota

BY THE COURT:

Date: January 4, 2019

_Kevin S. Burke_
Kevin S. Burke
District Court Judge

## MEMORANDUM

It is common knowledge there is an opioid epidemic in this nation. News reports regularly showcase the devastating impact opioid overdoses have on families and communities across the country. Opioids alone cause more deaths than drunk driving. While there are many causes for this tragedy, the forum to address this crisis is not merely a courtroom and this lawsuit. The decision to deny the motions to dismiss should not be misconstrued. There is no presumption of innocence in civil actions but there is also no presumption of guilt. Purdue vigorously denies liability in this matter. Purdue may or may not have done something wrong. This decision is driven by the Minnesota Rules of Civil Procedure and no one should read anything deeper into this decision.

Minnesota state courts have a vastly different approach to civil justice than the federal courts. Over the past decade, the U.S. Supreme Court has made it much harder for plaintiffs to proceed with lawsuits in our federal courts. How much detail should be required in a complaint is not any easy analysis. Notice pleading for decades was the standard in the Federal Rules of Civil Procedure.

In *Conley v. Gibson*, the U.S. Supreme Court held that a complaint should not be dismissed unless there were no set of facts upon which relief could be

granted. 355 U.S. 41 (1957). *Bell Atlantic Corp. v. Twombly*, changed that. 550 U.S. 544 (2007). The U.S. Supreme Court abandoned the "no set of facts" language from *Conley v. Gibson*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly* at 570).

The catch phrase of federal pleading is "plausibility." Federal law requires a plaintiff to allege enough facts that a court can find it plausible for the plaintiff to recover. Justice Kennedy's majority opinion in *Ashcroft v. Iqbal* said that courts should decide what is plausible based on the context. "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679.

In a dissent joined by Justice Ginsburg, Justice Stevens objected to the Court's overruling of the *Conley v. Gibson* test.

> Consistent with the design of the Federal Rules, *Conley's* "no set of facts" formulation permits outright dismissal only when proceeding to discovery or beyond would be futile. Once it is clear that a plaintiff has stated a claim that, if true, would entitle him to relief, matters of proof are appropriately relegated to other stages of the trial process. Today, however, in its explanation of a decision to dismiss a complaint that it regards as a fishing expedition, the Court scraps *Conley's* "no set of facts" language…. That exact language . . . has been cited as authority in a dozen opinions of this Court and four separate writings. In not one of those 16 opinions was the language "questioned," "criticized," or "explained away." Indeed, today's opinion is the first by any Member of this Court to express *any* doubt as to the adequacy of the *Conley* formulation. Taking their cues from the federal courts, 26 States and the District of Columbia utilize as their standard for dismissal of a complaint the very language the

>  majority repudiates: whether it appears "beyond doubt" that "no set of facts" in support of the claim would entitle the plaintiff to relief. Petitioners have not requested that the *Conley* formulation be retired, nor have any of the six *amici* who filed briefs in support of petitioners.

*Bell Atl. Corp. v. Twombly*, at 577–79 (internal citations omitted).

Reasonable minds may differ about which approach is better, but the current state of the law in Minnesota state courts is clear. A motion to dismiss pursuant to Rule 12.02(e) of the Minnesota Rules of Civil Procedure requires the Court to determine whether the complaint sets forth a legally sufficient claim for relief. *Bahr v. Cappella University*, 788 N.W.2d 76, 80 (Minn. 2010). "A pleading must 'contain a short plain statement of the claim showing that the pleader is entitled to relief and a demand for judgment for the relief sought.'" *Id.* (citing Minn. R. Civ. P. 8.01). The Court must "consider only the facts alleged in the complaint, accepting those facts as true and must construe all reasonable inferences in favor of the nonmoving party." *Id.* (citation omitted).

A pleading will be dismissed only if it appears to a certainty that no facts exist which could be introduced, consistent with the pleading, which would support granting the relief demanded. *Id.* The law in Minnesota dictates that this Court view the evidence in the light most favorable to the State for purposes of deciding the motion to dismiss. This case contains a very detailed Complaint put forth by the State.

Purdue argues that this case is an attempt to impose liability for Purdue's "lawful promotion of FDA approved medications for an FDA approved us." The Supremacy Clause of the United States Constitution states that the laws of the

4

United States "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby." U.S. Const. art. VI, cl. 2. "The Supremacy Clause enables Congress, in the exercise of its legislative authority, to preempt state law." *All. Ins. Co. v. Wilson*, 384 F.3d 547, 551 (8th Cir. 2004) (citation omitted); *Angell v. Angell*, 791 N.W.2d 530, 534 (Minn. 2010) (stating that "a federal law prevails over a conflicting state law"). The Supremacy Clause applies with equal force to federal regulations promulgated pursuant to an agency's statutory authority. *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 139, 153, (1982).

Federal law supersedes state law where (1) Congress is empowered to preempt state law pursuant to express language (express preemption); (2) "the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation" (field preemption); or (3) state law actually conflicts with federal law (conflict preemption).*California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 280-81 (1987) (citations omitted); *Hous. & Redevelopment Auth. of Duluth v. Lee*, 852 N.W.2d 683, 687 (Minn. 2014). Although vigorously and effectively argued by the defendants this case – particularly at this procedural stage – is not preempted by federal law.

Federal preemption of state law begins with an "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine,* 555 U.S. 555, 565 (2009). The State has alleged Purdue Pharma L.P., Purdue

5

Pharma, Inc., and The Purdue Frederick Company, Inc. (collectively "Purdue") engaged in conduct both governed, at least in part, by the FDCA and conduct outside of the purview of the FDCA. While Purdue correctly states that state law is preempted when it "stands as an obstacle," viewing the evidence in the light most favorable to the plaintiff no such obstacle between federal and state law is established here to satisfy a motion to dismiss. The State's claims are not preempted by federal law.

## Causation

The State alleges that Purdue engaged in deceptive marketing schemes that "contributed to a rising tide of widespread opioid prescribing in Minnesota." Compl. ¶ 5. Further, the State alleges those deceptive practices engaged in by Purdue injured Minnesotans. Compl. ¶¶ 245, 257, 265, 273, 280. The State further alleges injury, including overdose deaths, resulted from Purdue's conduct. Compl. ¶¶ 212-13, 218. By denying this motion, Purdue will incur far more significant legal fees and costs then the firm has thus far incurred. If Purdue prevails that will be unfortunate. But even though this may not be an easy case for the State to prove causation, at this procedural stage, dismissing the State's claims would be improper.

The recent decisions by the Minnesota Supreme Court illustrate that the trend in Minnesota law is to be conservative in deciding cases on summary judgment when there are disputed facts. *Fenrich v. The Blake School*, No. A17-0063, 2018 WL 6072429, at *1 (Minn. Nov. 21, 2018); *Montemayor v. Sebright Products, Inc. v. VZ Hogs, LLP*, 898 N.W.2d 623 (Minn. 2017); *Senogles v. Carlson*,

6

902 N.W.2d 38 (Minn. 2017). This is not a summary judgment, but if the trend in Minnesota law is to be conservative with respect to summary judgment, it would be illogical for a court to apply the heightened standard that Purdue asks for at this procedural stage.

## Requisite Particularity for Claim
## (Consumer Protection Claims, False Claim Act, Essential Elements)

The Minnesota Supreme Court has applied Rule 8.01 when reviewing Consumer Protection Claims. *See Welfare Fund A v. CVS Caremark Corp.,* 850 N.W.2d 682, 692-93 (Minn. 2014). Rule 8.01 states, in part, that a claim requires "a short and plain statement of the claim." Minn. R. Civ. P. 8.01. In applying Rule 8.01 to Consumer Protection cases, courts have not applied the heightened pleading standard of "particularity" required under Rule 9.02. Minn. R. Civ. P. 9.02. Even if a heightened pleading standard, as required under Rule 9.02, was applicable in this case, the State's lengthy complaint sufficiently alleges violations to survive a Motion to Dismiss. For example, the State alleges Purdue made misrepresentations of the Unlawful Trade Practices Act and details the who, what, when, where, and how. *See* Compl. ¶¶ 242-43, 251-56, 263-64, 278-279).

## Standing

The State contends that the plain language of the Deceptive Trade Practices Act does not require, as Purdue alleges, that a plaintiff be a business competitor for a Deceptive Trade Practices Act claim. Authority is given to the Attorney General to "investigate violations of the law of this state respecting

7

unfair, discriminatory, and other unlawful practices in business, commerce, or trade." Minn. Stat. § 8.31. Purdue has misconstrued the Deceptive Trade Practices Act. There is a history of the Minnesota Attorney General's Office bringing cases like this. While there are no doubt other alternatives, such as allowing parties bring a "private attorney general" action cases *Ly v. Nystrom*, 615 N.W.2d 302 (Minn. 2000) discourages – if not destroys – that option. Minnesota law gives the Minnesota Attorney General's Office wide birth in enforcing our state's consumer protection statutes. A plain language reading of the statute does not prohibit the State's standing as Purdue alleges.

## Unjust Enrichment

Unjust Enrichment is established when a party "knowingly receive[s] something of value, not being entitled to the benefit, and under circumstances that would make it unjust to permit its retention. *Southtown Plumbing, Inc. v. Har-Ned Lumber Co., Inc.,* 493 N.W.2d. 137, 140 (Minn. Ct. App. 1992). The State claims that Purdue accepted value, through payment for its opioid products, for which Purdue was not entitled to because the payments were a result of misleading and deceptive marketing practices. (Compl. ¶¶ 283-84). Again, this may be a case where there are so "many intervening actions and events that break the causal chain" as Purdue argues, but this is unquestionably a case where proceeding through the discovery process is appropriate.

## Special Duty

The State has plead a special-duty claim and alleges Purdue violated that duty. The State claims Purdue had "(1) the existence of a duty of care, (2) a

8

breach of that duty, (3) an injury, and (4) the breach of the duty being the proximate cause of the injury." *Gradjelick v. Hance,* 646 N.W.2d 225, 230 (Minn. 2002). The State contends that Purdue undertook a duty of care to health care providers, the public, and the State. The State alleges Purdue breached that duty by misrepresenting the danger of opioids causing harm to both the State and the public at large. *See* Compl. ¶¶ 21, 212-37, 242-43, 251-56, 263-64, 278-79.

## Public Nuisance

The State alleges that Purdue created a public nuisance by an "act or failure to perform a legal duty" has resulted in the "maint[enance] or [permission of] a condition which unreasonably annoys, injures or endangers the safety, health, morals, comfort, or repose of any considerable number of members of the public." Minn. Stat. § 609.74. The State alleges Purdue's marketing deceived health care providers and patients about the dangers associated with opiods and was a "substantial factor in opioids becoming widely available and widely used in Minnesota." (Compl. ¶ 301). The State alleges in detail throughout the Complaint that Purdue's marketing "misconduct" impacted opioid overdose deaths, increases in hospitalization, substance abuse treatment rates, money spent by government health care programs as a result of opioids, and criminal justice and societal costs related to opioids. (Compl. ¶¶ 5-6, 212, 219-21, 228, 233-37).

Purdue cites *State v. Red Owl Stores, Inc.,* 115 N.W.2d 643 (Minn. 1962). While many trial judges may view a public nuisance theory of recovery with a jaundice eye, *Red Owl* does not preclude this claim. The opinion states:

9

> We think the record as a whole supports the conclusion of the trial court that the state and the association have failed to establish that there is any greater danger to the public when these drugs are sold at self-service counters in supermarkets than when sold by a clerk in a drugstore. The public receives no greater protection in one case than in the other. Moreover, the record supports the trial court's conclusion that there is no causal relationship between injuries sustained by the excessive use of these drugs and the place where they are purchased. The injury may result as well from the excessive use when purchased at a licensed pharmacy. The trial court found that all control over the usage or dosage of the medicines ceased with completion of the purchase and delivery to the customer. We must also agree with the findings of the trial court on the record before us that the sale of these drugs in nonlicensed outlets did not constitute a nuisance nor did such sales affect or endanger the public health to the point where injunctive relief is required.

*Id.* at 651. The State's theory in this case, unlike *Red Owl*, is the drugs Purdue sold were the problem, not whether they had a license to sell drugs.