

STATE OF MISSOURI  )
                   ) SS
CITY OF ST. LOUIS  )

## MISSOURI CIRCUIT COURT
## TWENTY-SECOND JUDICIAL CIRCUIT
### (City of St. Louis)

| | | |
|---|---|---|
| STATE OF MISSOURI, ex rel. ERIC S. SCHMITT, in his Official Capacity as Missouri Attorney General, | ) ) ) ) ) | No. 1722-CC10626 |
| Plaintiff, | ) ) | Division No. 6 |
| vs. | ) ) ) | **ENTERED** |
| PURDUE PHARMA, L.P., et al., | ) ) ) | APR 0 6 2020 |
| Defendants. | ) ) | **M S** |

### ORDER

The Court has before it Defendants Endo Health Solutions, Inc., Endo Pharmaceuticals, Inc., Janssen Pharmaceuticals, Inc., and Johnson & Johnson's (collectively "Defendants") Joint Motion to Dismiss Plaintiff's First Amended Petition for Failure to State a Claim Upon Which Relief Can Be Granted. The Court now rules as follows.

Plaintiff the State of Missouri ("the State") alleges that Defendants engaged in a fraudulent scheme to promote opioids for long-term treatment of chronic non-cancer pain, which the State argues is unsafe and ineffective. Eight of Plaintiff's claims allege violations of the Missouri Merchandising Practices Act ("MMPA")(Counts I-VIII). The State also alleges a claim brought under the Missouri Health Care Payment Fraud and Abuse Act ("HCPFAA")(Count IX), public nuisance (Count X), and two unjust enrichment claims (Counts XI & XII). The State alleges Defendants

Ex. A - Tab 12 - Missouri

individually and jointly disseminated false and misleading information about opioid treatment, minimizing its risks. The State specifically alleges the misrepresentations made by Defendants include:

- Defendants falsely represented that opioids pose a low risk of addiction and that patients who had not previously experienced addiction would become addicted to opioids;
- Defendants falsely represented that many individuals who exhibit signs of addiction are actually experiencing "pseudoaddiction" and doctors should treat this "pseudoaddiction" by increasing the patient's opioid use;
- Defendants misrepresented the signs of addiction and ease of preventing it;
- Defendants represented that opioids effectively produce positive long-term outcomes in cases of chronic pain;
- Defendants falsely represented the relative risks associated with non-opioid pain-relief and pain-treatment strategies; and
- Defendants targeted vulnerable populations, including senior citizens and veterans.

On August 26, 2019, Defendants along with Purdue Pharma, L.P., Purdue Pharma, Inc., and Purdue Frederick Company, Inc. ("Purdue Defendants") filed their Joint Motion to Dismiss the State's First Amended Petition. On September 16, 2019, Purdue Pharma L.P. filed a Notice of Suggestion of Bankruptcy and Automatic Stay of Proceedings with this Court, stating Purdue Pharma L.P. and affiliated debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On December 10, 2019, Purdue Defendants filed in this case a Notice of Third Amended Preliminary Injunction Order stating that on November 6, 2019, Judge Robert D. Drain of the U.S. Bankruptcy Court for the Southern District of New York entered an order enjoining all opioid-related litigation

against the Purdue Debtors and Purdue Debtors-Related Parties (including Purdue Frederick Company) through April 8, 2020. Therefore, Defendants here agree Purdue Pharma, L.P., Purdue Pharma, Inc., and the Purdue Frederick Company, Inc., are no longer parties to this Motion to Dismiss.

A motion to dismiss for failure to state a claim is solely a test of the adequacy of the plaintiff's petition. The Court assumes that all of Plaintiff's averments are true, and liberally grants to Plaintiff all reasonable inferences therefrom. Bosch v. St. Louis Healthcare Network, 41 S.W.3d 462, 464 (Mo. banc 2001). No attempt is made to weigh any facts as to whether they are credible or persuasive. Instead, the petition is reviewed to see whether the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case. State ex rel. Henley v. Bickel, 285 S.W.3d 327, 329 (Mo. banc 2009).

**I. Federal Preemption.**

First, Defendants move to dismiss all counts of the State's First Amended Petition based on impossibility preemption. Defendants argue that all of the State's claims are preempted because they conflict with the FDA's regulatory determinations about the proper uses and labeling for Defendants' opioid medications. Defendants argue the State's claims would improperly hold Defendants liable for selling their medications pursuant to an FDA approved indication.

The State argues preemption is not a valid basis for a motion to dismiss, and it cannot be determined from the face of the First Amended Petition that preemption is applicable. The State argues Defendants rely on materials outside the pleadings to make their preemption arguments.

3

Defendants have brought this motion pursuant to Rule 55.27(a)(6). Federal preemption is an affirmative defense. See Jones v. Union Pac. R.R. Co., 508 S.W.3d 159, 160 (Mo. App. S.D. 2016). "Where an affirmative defense is asserted in a motion to dismiss, a trial court may dismiss the petition only if the petition clearly establishes on its face and without exception that the defense applies and the claim is barred." Nguyen v. Grain Valley R-5 Sch. Dist., 353 S.W.3d 725, 729 (Mo. App. W.D. 2011)(internal citations omitted); see also Allen v. Titan Propane, LLC, 484 S.W.3d 902, 905 (Mo. App. S.D. 2016). "If the court considers matters outside the pleadings, Rule 55.27(a) allows a motion to dismiss to be converted into a motion for summary judgment if certain procedures are followed." State ex rel. Cmty. Treatment, Inc. v. Missouri Comm'n on Human Rights, 561 S.W.3d 107, 112 (Mo. App. W.D. 2018).

Here, Defendants' arguments based on federal preemption rely on documents outside of the First Amended Petition, specifically the labels for Druagesic, Opana ER, Nucynta ER, Butrans, Hysingla ER, and documents relating to a citizen petition and a FDA Risk Evaluation and Mitigation Strategies (REMS). Defendants cite to case law, arguing that because the documents outside of the pleadings are on the FDA's website they are common knowledge and of public record. Therefore, Defendants argue the Court can take judicial notice of the exhibits. However, the cases cited by Defendants do not support that proposition. In any event, it is not clear under Missouri law the Court can consider those documents on a motion to dismiss even if the Court could take judicial notice of them as they are outside of the First Amended Petition.

Accordingly, it is clear that the Court must convert Defendant's Motion to Dismiss based on federal preemption into a

4

Motion for Summary Judgment. The Parties will be given opportunity to comply with Rule 74.04.

## II. Municipal Cost Recovery Rule.

Next, Defendants contend the municipal cost recovery rule bars all of the State's claims. Defendants argue the State's claims seek recoupment of costs for the basic services the State ordinarily provides and is obligated to provide to its citizens. However, without specific authority from the legislature to recover such costs, the State is precluded from doing so under the municipal cost recovery rule.

The State argues that Missouri has never adopted what Defendants refer to as the municipal cost recovery rule. The State contends Defendants caused significant unplanned costs, and there is no State operating budget to account for these expenses, as there would be for typical government services like putting out fires.

The Court finds the case relied on by Defendants does not support a finding the municipal cost recovery rule applies in this case. In <u>Montgomery County v. Gupton</u>, 39 S.W. 447, 448 (Mo. 1897), the issue was whether the county could recover, from the estate of a deceased person, money spent by the county in maintaining that person during her lifetime in a state facility as a patient. The Court found it was well settled at common law that the provision made by law for the support of the poor is a charitable provision, from which no implication of a promise to repay arises, and moneys so expended cannot be recovered from the person, in the absence of fraud, without a special contract for repayment. <u>Id</u>. It is clear the court's finding has no bearing on this case based on the facts alleged by the State. In addition, <u>Montgomery County</u> was a probate case.

Further, while not binding in this case, it is worth noting that other state court judges around the country have ruled the municipal cost recovery rule does not apply "when, as alleged here, an ongoing and persistent course of intentional misconduct creates an unprecedented, man-made crisis that a governmental entity plaintiff could not have reasonably anticipated as part of its normal operating budget." In re Nat'l Prescription Opiate Litig., 1:17-MD-2804, 2019 WL 3737023, at *8 (N.D. Ohio June 13, 2019). This Court finds the same has been alleged here, an ongoing and persistent course of intentional misconduct creating a crisis that the State could not have reasonably anticipated as part of its normal operating budget. Accordingly, Defendants' Motion to Dismiss based on the municipal cost recovery rule is denied.

### III. Failure to State Public Nuisance.

Next, Defendants argue that State's public nuisance claim (Count X) should be dismissed for failure to state a claim for several reasons.

#### a. Interference with a Public Right.

Defendants first argue the State fails to allege interference with a public right as part of its nuisance claim. Comparing this case to City of St. Louis v. Benjamin Moore & Co., 226 S.W.3d 110 (Mo. banc 2007), Defendants argue the State seeks to recoup costs it has allegedly incurred to address the use or misuse of opioids by certain individuals rather than to enforce any right belonging to the community as a whole.

The State argues the Missouri public has a common right to be free from unwarranted injuries, addictions, diseases and sicknesses caused by Defendants' misleading marketing of opioids. The State contends the alleged misconduct and harm in this case are the misrepresentations made by Defendants. The State contends

6

that in Benjamin Moore & Co., the harm was the actual product. Here, the harm is the Defendants' widespread deceptive marketing campaign.

"A public nuisance is any unreasonable interference with the rights common to all members of the community in general and encompasses the public health, safety, peace, morals or convenience." Benjamin Moore & Co., 226 S.W.3d at 116. "A public nuisance annoys, injures, endangers, renders insecure, interferes with, or obstructs the rights or property of the whole community." City of Lee's Summit v. Browning, 722 S.W.2d 114, 115 (Mo. App. W.D. 1986). "[A] public nuisance does not necessarily involve interference with the use and enjoyment of land." City of St. Louis v. Varahi, Inc., 39 S.W.3d 531, 536 (Mo. App. E.D. 2001). "A public nuisance that impinges upon a public right is not necessarily converted into a private nuisance because the nuisance disproportionately affects certain members of the community." City of Greenwood v. Martin Marietta Materials, Inc., 299 S.W.3d 606, 619 (Mo. App. W.D. 2009).

Here, the State has sufficiently alleged interference with the rights common to all members of the community. The State alleges that the public rights impacted in this case include the Missouri residents' right to an honest marketplace for healthcare treatment, right to public safety and order unburdened by the introduction of foreseeable dangers, such as the over-prescription and over-supply of opioids. The State alleges the repeated unlawful and unreasonable acts and omissions of the Defendants significantly interfered with the lives, health and safety of substantial numbers of Missouri residents, ruining the lives and damaging the public order and economy of Missouri. The State further alleges Defendants' campaign of deceptive marketing led to

7

long-lasting injury to the State and public. The State further alleges that the injury to the State and public include: opioid dependence, addiction, overdose, and death; increased or unwarranted health costs; increased public service costs to manage the harm, such as foster care and first responder costs; and lost productivity and economic harm due to increased addiction and incarceration.

In Benjamin Moore & Co., the Missouri Supreme Court found that although the City of St. Louis characterized the lawsuit as one of injury to public health, the City's damages sought were in the nature of a private tort action for costs the City allegedly incurred abating and remediating lead paint in certain properties. Benjamin Moore & Co., 226 S.W.3d at 116. The Missouri Supreme Court therefore found the City's claims to be like those of any plaintiff seeking particularized damages allegedly resulting from public nuisance. Id. Here, the damages sought by the State are for widespread public injury. The State does not seek payment for damages distinctive in kind from those suffered by the general community. In addition, the State does not simply allege the conduct impacts rights and interests of opioid users only, but rather rights and interests of the entire community.

### b. Causation.

#### i. Actual and Proximate Cause.

Defendants also argue the State fails to allege facts showing that the nuisance was the natural and proximate cause of its alleged injury. Defendants contend the State's First Amended Petition is devoid of facts showing that Defendants' alleged marketing caused any physician to write medically unnecessary opioid prescriptions, and does not identify a single prescriber.

8

Defendants contend the State must identify the specific product that caused the State's injury, citing to Benjamin Moore & Co.

The State contends the nuisance in this case is the Defendants' misconduct. The State argues Defendants interfered with Missourians' public health and safety when they created and perpetuated a campaign of deceptive marketing. Therefore, the claim differs from those in Benjamin Moore & Co.

A plaintiff must show a causal link between the defendant and the alleged nuisance. Benjamin Moore & Co., 226 S.W.3d at 115. "{T]he evidence must show that defendant's acts were the proximate and efficient cause of the creation of a public nuisance." Varahi, 39 S.W.3d at 537. "It is essential to liability in either a public or private nuisance case that the defendant's acts have set in motion a force or chain of events resulting in the invasion." Id.

Here, the State alleges, in addition to those allegations already discussed above as to nuisance, Defendants, acting both individually and in concert, created and perpetuated a campaign of deceptive marketing, misleading doctors and consumers about opioids. The State alleges Defendants' actions have interfered with the health and safety of Missouri residents, ruining lives and damaging the public order and economy. The State alleges these actions led directly to an epidemic of opioid addiction and dependence, and substantial long-lasting injury to the State and the public. The State alleges at all times Defendants knew or had reason to know of the public nuisance created by their ongoing conduct. Accordingly, the Court finds that the State has sufficiently alleged causation.

This case is distinguishable from Benjamin Moore & Co. on the issue of causation as well. In Benjamin Moore & Co., the Court held that in that case, as in Zafft v. Eli Lilly & Co., 676 S.W.2d

241 (Mo. banc 1984), "where a plaintiff claims injury from a product, actual causation can be established only by identifying the defendant who made or sold that product." Benjamin Moore & Co., 226 S.W.3d at 115. Here, the alleged injury is not from the product alone. The alleged injury stems from Defendants' deceptive marketing campaign. Assuming all of Plaintiff's averments are true, and liberally granting the State all reasonable inferences therefrom, the State has alleged causation for its public nuisance claim. In addition, the damages sought by the State are not in the nature of a private tort action like those sought in Benjamin Moore & Co., as discussed above.

### ii. Intervening Cause.

Next, Defendants, relying largely on the learned intermediary doctrine, contend intervening events and actors break the causal chain in this case. Defendants argue as a matter of law physicians prescribing opioid medications are presumed to have knowledge of, and to heed, warnings on these medications' product labeling. Defendants argue the State has failed to allege facts sufficient to establish that any prescriber was in fact unaware of the risks plainly described in Defendants' FDA-approved labeling, such that any alleged marketing could have deceived any doctor about the risks of prescription opioid medications. Defendants also argue any connection between Defendants' alleged marketing of FDA approved medications and the State's injuries is broken by each patient's decisions and treatment preference, the prescriber's independent judgment, and the dispenser's decision.

The State argues, in part, that the learned-intermediary doctrine does not apply because it is a defense to "failure to warn" claims, not public nuisance claims. In addition, the State argues that to the extent Defendants suggest that there were other

10

intermediaries that break the causal chain, Defendants raise fact-driven evidentiary issues that are not appropriate at this stage.

"The learned intermediary doctrine is a corollary to the rule that a manufacturer of prescription drugs or products discharges its duty to warn by providing the physician with information about risks associated with those products." Doe v. Alpha Therapeutic Corp., 3 S.W.3d 404, 419 (Mo. App. E.D. 1999). "The learned intermediary doctrine provides that the failure of a drug manufacturer to provide the physician with an adequate warning of the risks associated with a prescription product is not the proximate cause of a patient's injury if the prescribing physician had independent knowledge of the risk that the adequate warnings should have communicated." Id. at 420, (internal quotations omitted). "Thus, the causal link between a patient's injury and the alleged failure to warn is broken when the prescribing physician had substantially the same knowledge as an adequate warning from the manufacturer that should have been communicated to him." Id.

The Court finds the learned intermediary doctrine does not apply to this case based on the allegations in the First Amended Petition. The cases cited by Defendants apply the doctrine in the "failure to warn" context. Here, the State has not alleged Defendants failed to warn consumers of risks inherent in their products. Rather, at issue are Defendants' alleged misrepresentations and deceptive marketing campaigns.

Defendants also rely on Ashley Cty., Ark. v. Pfizer, Inc., 552 F.3d 659 (8th Cir. 2009) in support of their intervening cause argument. In Ashley County, the relevant issue was whether the intervening causes were the "natural and probable consequences of the Defendants' sales of cold medicine to retail stores and whether

11

the Counties' expenditures for government services to deal with the methamphetamine epidemic 'might reasonably have been foreseen [to the cold medication manufacturers] as probable.'" Ashley Cty., 552 F.3d at 668. In this case, the conduct at issue is not simply the selling of the product. Again, the State alleges numerous facts relating to the unlawful practices of Defendants, including misrepresentations which caused physicians to prescribe the opioids when they otherwise would not have, and patients to request and obtain opioids when they otherwise would not have. On the face of the First Amended Petition, there is not an intervening cause that breaks the causal chain.

### c. Unreasonable Interference.

Next, Defendants argue the State does not plead an unreasonable interference.

Whether a particular use is reasonable or unreasonable is an issue for the jury and does not depend on exact rules but on the circumstances of each case. City of Greenwood, 299 S.W.3d at 616-17. Here, the issue of whether the interference was reasonable is not an issue the Court will consider on a motion to dismiss. The State has sufficiently alleged an unreasonable interference with a public right in this case.

### d. Control over the Alleged Nuisance.

Next, Defendants argue the State fails to allege Defendants have control over the alleged nuisance. Once products enter the marketplace, a seller has no control over how purchasers or non-purchasers use it. Defendants argue the only means it could conceivably have to prevent or abate the nuisance is by ceasing sale of its lawful product. Defendants contend no Missouri court has extended public nuisance law to cover the use or misuse of

lawfully sold and highly regulated products like prescription medications.

Defendants again misconstrue the State's allegations. The State alleges Defendants' own misconduct interfered with public rights, and that conduct came prior to the sale of the product. Therefore, this case is unlike the cases cited by Defendants.

In sum, the State has stated a claim for public nuisance, and Defendants' Motion is denied as to the State's Count X of its First Amended Petition.

## IV. **Failure to State Unjust Enrichment**.

Defendants argue the State's two unjust enrichment claims fail to state a claim.

Unjust enrichment is a quasi-contractual action. Dailing v. Hall, 1 S.W.3d 490, 492 (Mo. App. S.D. 1999). The elements of a claim of unjust enrichment are: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of the fact of such benefit; and (3) acceptance and retention by the defendant of that benefit under circumstances in which retention without payment would be inequitable. Mays-Maune & Assoc., Inc. v. Werner Bros., Inc., 139 S.W.3d 201, 205 (Mo. App. E.D. 2004); Binkley v. Am. Equity Mortgage, Inc., 447 S.W.3d 194, 199 (Mo. banc 2014). Stated differently in other Missouri cases, the essential elements of unjust enrichment are: "(1) the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; and (3) that it would be unjust to allow the defendant to retain the benefit." Cent. Parking Sys. of Missouri, LLC v. Tucker Parking Holdings, LLC, 519 S.W.3d 485, 498 (Mo. App. E.D. 2017). The essence of a claim for unjust enrichment lies in the fact that the defendant has received a benefit which it would be inequitable for him to retain. Patrick

V. Koepke Const. v. Woodsage Const._, 844 S.W.2d 508, 515 (Mo. App. E.D. 1992). "It has long been accepted that a payor's lack of care will not diminish his right to recover, or somehow justify retention of the windfall by an unintended beneficiary." Title Partners Agency, LLC v. Devisees of Last Will & Testament of M. Sharon Dorsey, 334 S.W.3d 584, 588 n. 3 (Mo. App. E.D. 2011)(internal quotations omitted). "Unjust retention of benefits only occurs when the benefits were conferred (a) in misreliance on a right or duty; or (b) through dutiful intervention in another's affairs; or (c) under constraint." Howard v. Turnbull, 316 S.W.3d 431, 436 (Mo. App. W.D. 2010).

### a. The State's Count XI Unjust Enrichment Claim.

Defendants argue the benefit purportedly conferred by the State, payments for opioids and medical costs, was not conferred upon Defendants, but was conferred on third-party hospitals, physicians, and pharmacies. Defendants contend this claim is a repackaged Count IX, which the Court has already rejected. Defendants argue the State does not differentiate between the payments for opioids for acceptable uses and those with which the State disagrees with the FDA. In addition, Defendants argue the State cannot claim unjust enrichment because the State voluntarily made those payments for prescriptions that were allegedly improper, with no expectation of repayment by Defendants. Defendants also contend the State has not sufficiently alleged Defendants were enriched or received a benefit from the opioid crises.

The State argues the enrichment and expense need not be one direct transaction under Missouri law. The State contends countless other jurisdictions have recognized the viability of similar unjust enrichment claims in opioid-related cases.

14

The Court finds the State has alleged an unjust enrichment claim in Count XI. The State has alleged Defendants were enriched by the receipt of a benefit, namely the income and profits Defendants received, which they would not have received had Defendants not engaged in the alleged improper conduct. The State alleges facts regarding Defendants' deceptive marketing campaign.

In addition, the State has alleged that the enrichment was at the expense of the State. The State alleges Defendants participated in rebate programs with the MO HealthNet and/or Medicaid programs, and as a result of Defendants' misconduct, the State disbursed significant funds directly and/or indirectly to Defendants, including significant funds relating to opioid prescriptions written for purposes other than the treatment of acute post surgical pain, cancer treatment or end of life palliative care. The State further alleges Defendants' wrongful conduct caused opioids to be over-prescribed and improperly prescribed. The State further alleges it made payments for these improper prescriptions, and Defendants directly benefited from and appreciated those payments. Lastly, the State has alleged it would be unjust to allow Defendants to retain the benefit given the injury caused by Defendants' conduct.

### b. The State's Count XII Unjust Enrichment Claim.

Next, Defendants argue Count XII also fails to state a claim because the State did not provide public services related to the opioid crisis in reliance upon any reasonable expectation that Defendants would pay for those services. Defendants did not enrich themselves or receive a benefit from the opioid crisis. Defendants argue the claim still fails if the benefit alleged is Defendants' profit from the sale of opioids and the State's expense is its costs in addressing the opioid epidemic. Defendants have never

15

accepted and retained the State's costs in addressing the opioid epidemic. In addition, Defendants argue the alleged benefit has no nexus to the alleged expense.

The State argues it has incurred substantial costs in mitigating the societal harms and negative externalities of Defendants' misconduct. The State argues its efforts to mitigate the negative externalities resulting from the Defendants' windfall profits also show that the Defendants' enrichment came at the State's expense. The State claims this negative externalities theory is well established nationwide.

Granting the State all reasonable inferences, the Court finds that the State has stated a claim for unjust enrichment in Count XII. The State alleges Defendants were enriched by the receipt of a benefit, the income and profits Defendants received, which they would not have received had Defendants not engaged in the alleged improper conduct. In addition, the State alleges Defendants' wrongful conduct resulted in substantial health care and public health needs directly attributable to opioid use and addiction. The State alleges it provided extensive services and bore substantial costs in response to the crises created by Defendants. The State alleges Defendants have a duty to bear and should bear the costs borne by the State. As alleged, the Defendants' enrichment was at the State's expense, as the State has incurred substantial costs by mitigating the effects of Defendants' misrepresentations and deceptive marketing campaign regarding opioids. Lastly, the State alleges it would be unjust for Defendants to retain those substantial profits while Plaintiff incurs substantial costs to mitigate the harm caused by the State.

In sum, Defendants' Motion to Dismiss is denied as to Counts XI and XII.

16

**V. Failure to State a Claim under HCPFAA in Count IX.**

In Count IX, the State alleges violations of §§ 191.900 to 191.914 RSMo against all Defendants. This claim was dismissed by the Court upon Defendants' Motion to Dismiss in its Order entered on April 25, 2018. Count IX of the First Amended Petition is identical to Count IX of the original Petition which was dismissed. Therefore, for the reasons stated in the Court's April 25, 2018 Order, the State fails to state a claim against Defendants under the HCPFAA.

THEREFORE, it is Ordered and Decreed that Endo Health Solutions, Inc., Endo Pharmaceuticals, Inc., Janssen Pharmaceuticals, Inc., and Johnson & Johnson's Joint Motion to Dismiss Plaintiff's First Amended Petition for Failure to State a Claim Upon Which Relief Can Be Granted is hereby DENIED as to Counts I-VIII, and Counts X-XII, and is hereby GRANTED as to Count IX. As to Defendants' Motion to Dismiss based on preemption, the Court hereby grants Defendants thirty (30) days from the issuance of this Order to present all materials pertinent to a summary judgment motion to the Court. Thereafter, the State shall have thirty (30) days to respond in accordance with Rule 74.04(c)(2).

SO ORDERED:

_____
MICHAEL F. STELZER, Judge

Dated: **4/6/2020**

17