## STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

**PROVIDENCE, SC.**                                              **SUPERIOR COURT**

[FILED:  August 16, 2019]

| | | |
|---|---|---|
| **STATE OF RHODE ISLAND,** | : | |
| **by and through,** | : | |
| **PETER NERONHA,** | : | |
| **Attorney General,** | : | |
| *Plaintiff,* | : | |
| **v.** | : | **C.A. No. PC-2018-4555** |
| | : | |
| **PURDUE PHARMA L.P.; PURDUE** | : | |
| **PHARMA INC.; THE PURDUE** | : | |
| **FREDERICK COMPANY, INC.;** | : | |
| **RHODES PHARMACEUTICALS L.P.;** | : | |
| **RHODES TECHNOLOGIES; RHODES** | : | |
| **TECHNOLOGIES INC.; RICHARD S.** | : | |
| **SACKLER; INSYS THERAPEUTICS,** | : | |
| **INC.;[1] JOHN N. KAPOOR;[2] TEVA** | : | |
| **PHARMACEUTICALS USA, INC.;** | : | |
| **CEPHALON, INC.;  MALLINCKRODT** | : | |
| **PLC; MALLINCKRODT, LLC;** | : | |
| **SPECGX, LLC; CARDINAL HEALTH,** | : | |
| **INC.; MCKESSON CORPORATION** | : | |
| **d/b/a MCKESSON DRUG COMPANY;** | : | |
| **and AMERISOURCEBERGEN DRUG** | : | |
| **CORPORATION,** | : | |
| *Defendants.* | : | |

SUPERIOR COURT
FILED
HENRY S. KINCH, JR.
19 AUG 16  AM 9: 33

## DECISION

**GIBNEY, P.J.**  Before this Court are motions by Defendants Purdue Pharma L.P.; Purdue Pharma

Inc.; The Purdue Frederick Company, Inc. (collectively Purdue or Purdue Defendants);[3] Rhodes

---

[1] On June 11, 2019, the State voluntarily dismissed all its claims asserted against Defendant Insys Therapeutics, Inc., pursuant to Super. R. Civ. P. 41(a)(1)(A).

[2] On June 17, 2019, the State voluntarily dismissed all its claims asserted against Defendant John N. Kapoor.

[3] In the Amended Complaint, the State defines "Purdue Defendants" as Purdue Pharma L.P.; Purdue Pharma Inc.; The Purdue Frederick Company, Inc.; as well as Rhodes Pharmaceuticals L.P.; Rhodes Technologies; Rhodes Technologies Inc.; and Richard S. Sackler.  For the sake of clarity, this Court defines "Purdue" or "Purdue Defendants" as Purdue Pharma L.P.; Purdue

**Ex. A - Tab 21 - Rhode Island**

Pharmaceuticals L.P.; Rhodes Technologies; Rhodes Technologies Inc. (Rhodes Technologies Inc. with Rhodes Pharmaceuticals L.P. and Rhodes Technologies, Rhodes or Rhodes Defendants); Insys Therapeutics Inc. (Insys); Teva Pharmaceuticals USA, Inc. (Teva); Cephalon, Inc. (Cephalon); Mallinckrodt plc; Mallinckrodt, LLC (Mallinckrodt, LLC with Mallinckrodt plc, Mallinckrodt or Mallinckrodt Defendants); SpecGx, LLC (SpecGx)[4] (SpecGx with Purdue Defendants, Rhodes Defendants, Mallinckrodt Defendants, Insys, Teva, Cephalon, Richard S. Sackler (Sackler); and John N. Kapoor (Kapoor) (collectively Manufacturer Defendants, Marketing Defendants, or Manufacturers); Cardinal Health, Inc. (Cardinal); McKesson Corporation d/b/a McKesson Drug Company (McKesson); and AmerisourceBergen Drug Corporation (AmerisourceBergen) (AmerisourceBergen collectively with Cardinal and McKesson, Distributor Defendants or Distributors) (collectively Defendants) to dismiss the Amended Complaint of the State of Rhode Island (Plaintiff or the State). Defendants argue that the State has failed to state a claim upon which relief can be granted under Super. R. Civ. P. 12(b)(6). Sackler, Kapoor,[5] and Mallinckrodt plc move to dismiss for lack of personal jurisdiction under Super. R. Civ. P. 12(b)(2). In addition to its 12(b)(6) motion, Rhodes moves to dismiss the claims against it pursuant to Super. R. Civ. P. 8 and 9, and alternately moves for a more definite statement under Super. R. Civ. P. 12(e). The State objects to all Defendants' motions. Jurisdiction is pursuant to G.L. 1956 § 8-2-14.

---

Pharma Inc.; and The Purdue Frederick Company, Inc. only. The Court will refer to the additional, aforementioned entities separately, as defined below.

[4] The State defines "Mallinckrodt Defendants" as Mallinckrodt plc; Mallinckrodt, LLC; and SpecGx, LLC in the Amended Complaint. This Court shall refer to SpecGx separately herein.

[5] As discussed *supra*, in footnote 2, the State voluntarily dismissed Kapoor without prejudice subsequent to Kapoor's motion to dismiss.

# I

## Facts and Travel

This matter arises from a public health crisis in Rhode Island, and across the country, brought on by unprecedented levels of addiction, overdose, and death associated with the use and abuse of prescription opioid pharmaceutical products.  On June 25, 2018, the State, by and through its Attorney General, filed a Complaint against manufacturers and distributors of pharmaceutical opioids in response to this epidemic.   Defendants named in the Complaint included Purdue and Insys, manufacturers of prescription opioids; along with Cardinal, McKesson, and AmerisourceBergen, distributors of opioids.  In the Complaint, the State brought counts of public nuisance; violations of the Rhode Island State False Claims Act (the State False Claims Act), G.L. 1956 §§ 9-1.1-1 *et seq.*; fraud and fraudulent misrepresentation; negligence, negligence *per se*, gross negligence, and negligent misrepresentation; and unjust enrichment.  Plaintiff alleged that these defendants conducted a campaign to unlawfully promote and distribute opioids in Rhode Island and sought to recover for the resulting damages.

On September 28, 2018, the defendants named in the Complaint moved to dismiss.  The manufacturers (Purdue Defendants and Insys) argued that the Complaint failed due to (1) federal preemption of all claims; (2) lack of an adequate chain of causation; (3) Rhode Island Supreme Court precedent contrary to the public nuisance claim; (4) failure of the State's fraud allegations due to lack of particularity; (5) lack of a duty required for the negligence claim; and (6) improper pleading of unjust enrichment.  In a separate motion to dismiss and supporting memorandum, the distributors (Cardinal, McKesson, and AmerisourceBergen) moved to dismiss arguing that (1) the public nuisance claim should be dismissed because the State fails to plead the requisite public right and control over the instrumentality at the time of injury; (2) the negligence claims should be

3

dismissed for lack of a duty or breach of duty; (3) the unjust enrichment claim should be dismissed; and (4) all claims fail for additional reasons including lack of proximate causation, the derivative injury rule, the free public services doctrine, and the economic loss doctrine. The State objected to these motions to dismiss.

On November 19, 2018, the State filed an Amended Complaint with the same five counts brought in the Complaint. Most significantly, the State joined ten additional defendants including the Rhodes Defendants, the Mallinckrodt Defendants, SpecGx, Teva, Cephalon, Sackler, and Kapoor. Rhodes, Teva, Cephalon, Mallinckrodt, and SpecGx are manufacturers of prescription opioid pharmaceutical products. Sackler is a board member and the former President and Co-Chairman of Purdue. Kapoor is the former Chairman of Insys.

In the Amended Complaint, the State brings Counts IV (Negligence, Negligence Per Se, Gross Negligence, and Negligent Misrepresentation) and V (Unjust Enrichment) against all named Defendants. The State brings the remaining counts against select Defendants, only. The State brings Count I, Public Nuisance, against Purdue Defendants, Rhodes, Sackler, Mallinckrodt, SpecGx, Teva, Cephalon, and Distributor Defendants. The State brings Count II, Violations of the State False Claims Act, against Purdue Defendants, Rhodes, Sackler, Insys, and Kapoor. Lastly, the State brings Count III, Fraud and Fraudulent Misrepresentation, against Purdue Defendants, Rhodes, Insys, Mallinckrodt, SpecGx, Teva, Cephalon, Sackler, and Kapoor.

On January 15, 2019, all Defendants moved to dismiss the Amended Complaint. Manufacturer and Distributor Defendants argue that the State has failed to state a claim upon which relief can be granted pursuant to Super. R. Civ. P. 12(b)(6). Sackler, Kapoor, and Mallinckrodt

4

plc move to dismiss for lack of personal jurisdiction under Super. R. Civ. P. 12(b)(2).[6]  Rhodes

Defendants argue that Plaintiff has failed to state a claim under Super. R. Civ. P. 8 and Super. R.

Civ. P. 9, and alternately move for a more definite statement under Super. R. Civ. P. 12(e) if the

State's claims against them are not dismissed.

The State objects to all Defendants' motions.  This Court heard argument on March 6,

2019; March 7, 2019; and April 25, 2019.[7]

## II

### Standard of Review

It is well-settled that the sole function of a motion to dismiss is to test the sufficiency of

the complaint. *Ryan v. State, Department of Transportation*, 420 A.2d 841, 842 (R.I. 1980);

*Dutson v. Nationwide Mutual Insurance Co.*, 119 R.I. 801, 803-04, 383 A.2d 597, 599 (1978).

"[D]efenses may at the option of the pleader be made by motion [including] (2) [l]ack of

jurisdiction over the person; . . . [and] (6) [f]ailure to state a claim upon which relief can be

granted." *See* Super. R. Civ. P. 12(b).

"'When ruling on a Rule 12(b)(6) motion, the trial justice must look no further than the

complaint, assume that all allegations in the complaint are true, and resolve any doubts in a

plaintiff's favor.'" *Estate of Sherman v. Almeida*, 747 A.2d 470, 473 (R.I. 2000) (quoting *Rhode

Island Affiliate, American Civil Liberties Union, Inc. v. Bernasconi*, 557 A.2d 1232 (R.I. 1989)).

"A motion to dismiss under Rule 12(b)(6) will only be granted 'when it is clear beyond a

reasonable doubt that the plaintiff would not be entitled to relief from the defendant under any set

---

[6] Sackler and Kapoor also move to dismiss for failure to state a claim upon which relief can be granted pursuant to Super. R. Civ. P. 12(b)(6).

[7] On April 25, 2019, this Court heard Mallinckrodt plc regarding its motion to dismiss for lack of personal jurisdiction pursuant to Super. R. Civ. P. 12(b)(2).  The Court heard all other arguments discussed herein on March 6, 2019 and March 7, 2019.

of facts that could be proven in support of the plaintiff's claim.'" *Bruno v. Criterion Holdings, Inc.*, 736 A.2d 99 (R.I. 1999) (quoting *Folan v. State/Department of Children, Youth and Families*, 723 A.2d 287, 289 (R.I. 1999)).  On the other hand, "[i]n order to withstand a defendant's Rule 12(b)(2) motion to dismiss a complaint for lack of in personam jurisdiction, a plaintiff must allege sufficient facts to make out a prima facie case of jurisdiction." *Bendick v. Picillo*, 525 A.2d 1310, 1311-12 (R.I. 1987) (citing *Ben's Marine Sales v. Sleek Craft Boats*, 502 A.2d 808, 809 (R.I. 1985)).

### III

### Analysis

In the Amended Complaint, the State brings five counts, including Count I, Public Nuisance; Count II, Violations of the State False Claims Act; Count III, Fraud and Fraudulent Misrepresentation; Count IV, Negligence, Negligence Per Se, Gross Negligence, and Negligent Misrepresentation; and Count V, Unjust Enrichment, against seventeen Defendants. However, the State does not bring all counts against all Defendants.  Therefore, the Defendants have submitted joint memoranda—including a motion by Manufacturer Defendants and another from Distributor Defendants—in support of their motions to dismiss while supplementing the arguments therein with individual memoranda.  Accordingly, the Court will address both individual and joint arguments in its analysis and may reference previous sections due to the significant overlap between Defendants' arguments and the State's counts against them.

First, Manufacturer Defendants argue that Plaintiff failed to state a claim upon which relief may be granted because (1) the State does not adequately plead causation, (2) the public nuisance claim fails under Rhode Island law, (3) the State does not support fraud based claims with particularity, (4) the State does not plead actionable negligence claims, and (5) the State does not

plead an actionable claim for unjust enrichment.   Distributor Defendants incorporate their

arguments from their September 28, 2018 motion to dismiss,[8] while supplementing these

arguments with three recent decisions including *City of New Haven v. Purdue Pharma, L.P.* (the

*New Haven Decision*); *Floyd v. Feygin;* and *State of Rhode Island v. Atlantic Richfield Co. See*

No. X07-HHD-CV-17-608134-S (Conn. Super. Ct. Jan. 8, 2019); 2018 WL 6528728 (N.Y. Sup.

Ct. Dec. 6, 2018); 357 F. Supp. 3d 129 (D.R.I. 2018).   Distributor Defendants argue that these

persuasive cases support this Court's dismissal of all counts against them.

Teva and Cephalon submit a joint memorandum to supplement Manufacturer Defendants'

memorandum.   Therein, Teva and Cephalon argue (1) that the State has not pled any

misrepresentation or omission by Teva or Cephalon; (2) the State has not pled facts to show that

Teva or Cephalon caused the State any harm; (3) claims against Teva and Cephalon fail for lack

of injury; (4) the State's failure to prevent diversion theory fails; and (5) the State has not alleged

any misconduct by Teva.

Mallinckrodt, LLC and SpecGx present further arguments in support of Manufacturer

Defendants' motion to dismiss.[9]   Mallinckrodt, LLC and SpecGx argue that (1) they cannot be

held liable for alleged statements by third parties based on allegations of funding alone or alleged

unactionable marketing statements, and (2) Plaintiff's diversion theory fails to state a claim against

---

[8] In their September 28, 2018 motion to dismiss, Distributor Defendants argued that (1) the public nuisance claim should be dismissed because the State fails to plead a public right and control over the instrumentality at the time of injury; (2) the negligence claims should be dismissed for lack of a duty or breach of duty; (3) the unjust enrichment claim should be dismissed because the State failed to properly plead any of the requisite elements; and (4) all claims fail for additional reasons including lack of proximate causation, the derivative injury rule, the free public services doctrine, and the economic loss doctrine.

[9] Mallinckrodt plc submitted an individual motion to dismiss for lack of personal jurisdiction.  It does not move to dismiss pursuant to Super. R. Civ. P. 12(b)(6) or join the arguments of Mallinckrodt LLC and SpecGx.

Mallinckrodt because the State has not adequately alleged facts of proximate causation and that the State's group pleading fails to allege diversion claims against Mallinckrodt.

Sackler moves to dismiss based on lack of personal jurisdiction and failure to state a claim upon which relief can be granted.   Sackler argues that the State fails to establish jurisdiction over him because the State has not properly pled general or specific personal jurisdiction.  He further asserts that the State has failed to state a claim upon which relief can be granted because (1) Sackler has no personal liability for alleged corporate conduct, (2) the State's fraud-based claims are flawed, (3) negligence claims against Sackler are inadequate, (4) the public nuisance claim should be dismissed because Sackler did not participate in the alleged misconduct that resulted in the nuisance, (5) the State's unjust enrichment claim should be dismissed because the State has failed to make allegations with respect to this count against Sackler and cannot seek to hold him liable for unjust enrichment on behalf of Purdue, and (6) the State has failed to adequately plead causation.

In their individual memorandum supplementing Manufacturer Defendants' motion to dismiss, Rhodes Defendants argue that (1) Plaintiff has failed to state a claim under Super. R. Civ. P. 8—because the State fails to give Rhodes adequate notice of the claims against them—and Super. R. Civ. P. 9—because (1) the State fails to plead fraud-based claims with particularity; and (2) the State's claims against Rhodes involving generic medications are preempted by federal law. Alternately, if the State's claims against Rhodes are not dismissed, Rhodes moves for a more definite statement under Super. R. Civ. P. 12(e).

As a threshold matter, the Court will address personal jurisdiction with respect to Sackler and Mallinckrodt plc.  The Court will move on to Defendants' arguments with respect to Super. R. Civ. P. 12(b)(6).  Finally, the Court will review Rhodes Defendants' motion to dismiss under

8

Super. R. Civ. P. 8 and 9, and their motion for a more definite statement under Super R. Civ. P.

12(e).

## A

### Personal Jurisdiction over Sackler and Mallinckrodt plc

In support of his motion to dismiss under Super. R. Civ. P. 12(b)(2), Sackler submits that

the Amended Complaint lacks allegations that form any basis for personal jurisdiction in Rhode

Island, as Sackler is not subject to general jurisdiction in the state, and none of Plaintiff's claims

against Sackler are based on his personal conduct in, or directed to, Rhode Island.  Specifically,

Sackler submits that despite the State's allegations, he never served on the board of Rhodes

Technologies or any other Rhodes board.  Contrary to the State's further allegations, Sackler

argues he never assigned any patents to Rhodes.  Finally, Sackler argues that the State's allegations

that Sackler "directed" a campaign to market opioids "nationwide," including in Rhode Island, are

insufficient for this Court to establish specific personal jurisdiction over Sackler.

Mallinckrodt plc likewise argues that this Court lacks both general and specific personal

jurisdiction over it.  First, Mallinckrodt plc submits that it is not "at home" in Rhode Island and

that this Court therefore cannot exercise general jurisdiction over it.   More importantly,

Mallinckrodt plc argues that there is no specific jurisdiction for several reasons.  According to

Mallinckrodt plc, the State has erroneously aggregated allegations against it with those the State

makes against its subsidiaries, Mallinckrodt, LLC and SpecGx.  Mallinckrodt plc explains that

notwithstanding the validity of counts against Mallinckrodt, LLC and SpecGx, the State has

improperly included Mallinckrodt plc in these allegations because the State has no basis for

personal jurisdiction over it.  While Mallinckrodt, LLC and SpecGx are incorporated in the United

States, Mallinckrodt plc—their parent and corporate shareholder—is an Irish company with its

9

principal place of business in the United Kingdom. Mallinckrodt plc asserts that it has never had any contact with Rhode Island, or with the United States more generally, and argues that stock ownership alone is not enough to satisfy the minimum contacts required to establish personal jurisdiction under Rhode Island law. Finally, Mallinckrodt plc argues that Plaintiff has not alleged that the Court should "pierce the corporate veil" to make a finding of personal jurisdiction, maintaining that this is not a proper situation for the Court to do so.

The State objects to all arguments with respect to personal jurisdiction. In response to Sackler, the State argues that its allegations that he "personally directed deceptive marketing, promotion, and sales strategies to Rhode Island" are sufficient to establish a *prima facie* case for personal jurisdiction over Sackler. The State further urges the Court to consider the Gestalt factors, which the State argues support this Court's finding of personal jurisdiction over Sackler. Alternately, in the event the Court finds that the State has failed to make out a *prima facie* case of jurisdiction over Sackler, the State requests that the Court allow additional jurisdictional discovery.

The State opposes Mallinckrodt plc's motion to dismiss for lack of personal jurisdiction. Specifically, the State argues that Mallinckrodt, LLC acted as an agent of Mallinckrodt plc, thereby allowing this Court to invoke personal jurisdiction upon Mallinckrodt plc based on the actions of Mallinckrodt, LLC, its subsidiary. The State notes that the two companies share the same logo, that they referred to themselves as a single company in a 2017 Annual Report, that the two companies entered into a joint agreement with the federal Drug Enforcement Administration (DEA) in 2017, and that the two companies are indistinguishable from each other in a 2014 press release. These factors, when considered as a whole, are enough to establish personal jurisdiction over Mallinckrodt plc according to the State. The State moves for jurisdictional discovery in the alternative.

"It is well established that to withstand a defendant's Rule 12(b)(2) motion to dismiss a complaint for lack of *in personam* jurisdiction, a plaintiff must allege sufficient facts to make out a *prima facie* case of jurisdiction." *Cerberus Partners, L.P. v. Gadsby & Hannah, LLP*, 836 A.2d 1113, 1118 (R.I. 2003) (citing *Ben's Marine Sales*, 502 A.2d at 809).   To do so, a plaintiff must satisfy the requirements of Rhode Island's long-arm statute, which states that:

> "[e]very foreign corporation [and] every individual not a resident of this state . . . that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island, and the courts of this state shall hold such foreign corporations and such nonresident individuals or their executors or administrators, and such partnerships or associations amenable to suit in Rhode Island in every case not contrary to the provisions of the constitution or laws of the United States." G.L. 1956 § 9-5-33(a); *see also id.*

The Supreme Court has interpreted this statute to allow Rhode Island courts to exercise personal "jurisdiction over nonresident defendants to the fullest extent allowed by the United States Constitution." *Rose v. Firstar Bank*, 819 A.2d 1247, 1250 (R.I. 2003) (citing *McKenney v. Kenyon Piece Dye Works, Inc.*, 582 A.2d 107, 108 (R.I. 1990)).

"To ensure constitutional due process to a nonresident defendant, certain minimum contacts with the forum state are required 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *Cerberus Partners, L.P*, 836 A.2d at 1118 (quoting *Kalooski v. Albert-Frankenthal AG*, 770 A.2d 831, 832-33 (R.I. 2001)) (internal citation omitted).   This requirement lessens the potential burden upon a defendant of litigating a case in an inconvenient forum, while maintaining the sanctity of the federal system by preventing states from exceeding their equal powers. *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).   Notably, the minimum contacts analysis is fact-specific and depends on the unique circumstances of each case. *Ben's Marine Sales*, 502 A.2d at 810 (citing *Roger Williams General Hospital v. Fall River Trust Co.*, 423 A.2d 1384, 1386 (R.I. 1981)).   Most importantly,

courts must consider "whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Cerberus Partners, L.P.*, 836 A.2d at 1118 (quoting *Bendick*, 525 A.2d at 1312) (internal citation omitted).

A plaintiff may establish personal jurisdiction by proving either general or specific personal jurisdiction. *Cerberus Partners, L.P.*, 836 A.2d at 1118. A court may exercise general personal jurisdiction over a defendant based on domicile; in the case of an individual, residence in the forum state typically constitutes domicile for the purposes of general personal jurisdiction. In the case of a corporation, "[t]he paradigm forums in which a corporate defendant is at home are the corporation's place of incorporation and its principal place of business." 21 C.J.S. Courts § 49 (June 2019 Update). However, "[w]hen its contacts with a state are continuous, purposeful, and systematic, a nonresident defendant will subject itself to the general jurisdiction of that forum's courts with respect to all claims, regardless of whether they relate to or arise out of the nonresident's contacts with the forum." *Rose*, 819 A.2d at 1250 (citing *International Shoe Co. v. State of Washington, Office of Unemployment Compensation & Placement*, 326 U.S. 310, 318 (1945)). Alternately, "[w]hen a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising 'specific jurisdiction' over the defendant." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

Here, neither Sackler nor Mallinckrodt plc is at home in Rhode Island. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("[a] court may assert general jurisdiction over foreign [plaintiffs] . . . to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State"). Sackler does not live in this state—he is domiciled in Florida—and

12

Mallinckrodt plc is an Irish company headquartered in the United Kingdom. Nor does the State allege that these Defendants have contacts with Rhode Island that they are essentially "at home" here.   Therefore, the Court does not have general jurisdiction over these two Defendants.

The Court turns to the question of whether it may properly exercise specific jurisdiction over Sackler and Mallinckrodt plc.   With respect to Sackler, the State has alleged that he "personally directed a course of conduct aimed at deceptively marketing and selling opioids to Rhode Island providers," directed "Purdue's employment of a substantial number of sales representatives [in] Rhode Island . . . to visit doctors in their local offices for the purpose of delivering marketing messages and encouraging such doctors to write prescriptions for Purdue opioids," and "caused the dissemination of numerous deceptive marketing materials to Rhode Island providers."   Considering these actions, which the Court must assume to be true for the purpose of the motion to dismiss, it is not unreasonable for Sackler to be haled into court in Rhode Island as he could reasonably anticipate being subject to suit here. *See Cerberus Partners, L.P.*, 836 A.2d at 1118.   More importantly, this Court finds that these actions constitute a purposeful availment of the privilege of conducting business in Rhode Island. *Casey v. Treasure Island at Mirage*, 745 A.2d 743, 744 (R.I. 2000) ("'[i]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws'") (quoting *Ben's Marine Sales*, 502 A.2d at 810).

Moreover, after considering the Gestalt factors, the Court finds personal jurisdiction over Sackler is reasonable.   "These factors include the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most effective resolution of the controversy, and the shared interest of the several states in furthering fundamental

substantive social policies." *Cerebus Partners, L.P.*, 836 A.2d at 1121 (citing *World-Wide Volskwagen Corp.*, 444 U.S. at 292).  Here, Rhode Island has a strong interest in protecting its citizens from deceptive marketing practices that can lead to an overabundance of dangerous prescription medications, while the burden upon Sackler, who conducts business for Purdue in Connecticut, just one state away from Rhode Island, is not insurmountable.  Accordingly, this Court finds that personal jurisdiction over Sackler is proper.

The Court turns to the question of whether it may properly exercise jurisdiction over Mallinckrodt plc.  Rather than availing itself of the advantages of doing business in Rhode Island, Mallinckrodt plc has acted through its subsidiary, creating an agency relationship and thereby subjecting itself to Rhode Island laws. *See Daimler AG v. Bauman*, 571 U.S. 117, 135 n.13 (2014) ("[a]gency relationships, we have recognized, may be relevant to the existence of *specific* jurisdiction") (emphasis in original); *International Shoe Co.*, 326 U.S. at 318 (explaining that certain acts by a corporate agent, "because of their nature and quality and the circumstances of their commission, may be deemed sufficient to render the corporation liable to suit").  According to the State, in its 2017 Annual Report to the Securities and Exchange Commission, Mallinckrodt plc referred to itself and its subsidiaries as "us," "we" or "Mallinckrodt," generally; also in 2017, it entered into an Administrative Memorandum of Agreement and paid $35 million to settle allegations by the DEA, jointly with Mallinckrodt, LLC (Mallinckrodt plc and Mallinckrodt, LLC were collectively defined in the agreement as "Mallinckrodt"); both Mallinckrodt plc and Mallinckrodt, LLC use the exact same logo; and the companies have demonstrated a further lack of distinction in a 2014 press release, in which contact phone numbers listed as Mallinckrodt plc actually constituted the phone numbers of Mallinckrodt, LLC.

14

The Court finds these allegations that Mallinckrodt, LLC acted on behalf of Mallinckrodt plc sufficient to establish personal jurisdiction over Mallinckrodt plc, for the purposes of this motion to dismiss. As the First Circuit has explained, "[e]ven if the defendants' relationship were to fall slightly outside of the confines of [the doctrine of agency], the question before us is whether a sufficient relationship exists under the Due Process Clause to permit the exercise of jurisdiction, not whether . . . [an] agency relationship between the two defendants exists." *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 56-57 (1st Cir. 2002); *see also Alex & Ani LLC v. Elite Level Consulting, LLC*, 31 F. Supp. 3d 365, 376 (D.R.I. 2014) ("[a]n alleged tortfeasor cannot reasonably expect to escape liability merely because he engaged an agent to liaise with the victim on his behalf"). Accordingly, the State has properly pled facts sufficient to make out a *prima facie* case for specific personal jurisdiction over Mallinckrodt plc and to survive a 12(b)(2) motion to dismiss.

### B

### COUNT I

### Public Nuisance

In the Amended Complaint, the State first brings a count of public nuisance against Purdue, Rhodes, Mallinckrodt, SpecGx, Teva, Cephalon, Sackler, and the Distributor Defendants. Manufacturer Defendants collectively move to dismiss the claim, arguing that it is precluded by Supreme Court precedent. Citing *State v. Lead Industries Association, Inc. (Lead Industries)*, 951 A.2d 428 (2008), Manufacturers argue that the State fails to adequately plead the elements of public nuisance as required under Rhode Island law. Specifically, Manufacturer Defendants argue that the Amended Complaint fails to plead interference with a public right, defined in *Lead Industries* as an "interest common to the general public, rather than peculiar to one individual, or

15

several." *Id.* at 447. Manufacturer Defendants further assert that the State has not pled the requisite element of control required to support a public nuisance claim. *Id.* at 449 ("a public nuisance . . . is related to conduct, performed in a location within the actor's control"). Finally, Manufacturer Defendants argue that the State has not adequately pled causation, a required element of a public nuisance claim. *See id.* at 450.

Mallinckrodt, SpecGx, Teva, and Cephalon adopt the arguments set forth in the Manufacturer Defendants' motion to dismiss, while submitting individual, supplemental memoranda. Therein, Mallinckrodt, LLC and SpecGx argue that the State's claims fail because the State has not properly pled its marketing or diversion theories against them. More specifically, Mallinckrodt, LLC and SpecGx submit that the State's marketing theory improperly relies upon third party statements, and that the State fails to establish an agency relationship between Mallinckrodt, LLC, SpecGx, and these third parties. Mallinckrodt, LLC and SpecGx additionally oppose the State's diversion theory, arguing that it constitutes an improper attempt to enforce the federal Controlled Substances Act, which is the sole responsibility of the United States DEA. Teva and Cephalon also adopt the arguments of Manufacturer Defendants and add that (1) the State has failed to allege causation, (2) all claims fail for lack of injury, and (3) the Amended Complaint fails to allege any misconduct by Teva.

Distributor Defendants also jointly move to dismiss the State's public nuisance claim. Distributor Defendants incorporate the arguments made in their September 28, 2018 motion to dismiss the Complaint, then supplement those arguments with three additional cases. In their original motion to dismiss, Distributors argued that the State failed to allege a public right with which Distributor Defendants interfered. Additionally, Distributor Defendants argued that they were not in control of the prescription opioids at the time of injury. Finally, in their motion to

16

dismiss the Complaint, Distributor Defendants maintained that the State cannot circumvent product liability law by bringing a public nuisance claim.

Distributor Defendants incorporate these arguments into their motion to dismiss the Amended Complaint, then ask the Court to consider three additional decisions: (1) *City of New Haven v. Purdue Pharma, L.P.*, No. X07-HHD-CV-17-608134-S (Conn. Super. Ct. Jan. 8, 2019); (2) *Floyd v. Feygin*, 2018 WL 6528728 (N.Y. Sup. Ct. Dec. 6, 2018); and (3) *State of Rhode Island v. Atlantic Richfield Co.* (*Atlantic Richfield*), 357 F. Supp. 3d 129 (D.R.I. 2018). Distributors argue that these decisions support this Court's dismissal of the State's claims against them.

The State objects to all Defendants' arguments with respect to its public nuisance claim. In response to Manufacturer Defendants, the State argues it has properly pled its claim for public nuisance because interference with health and safety of the general community can constitute a public right under *Lead Industries*. The State adds that under Rhode Island law, it has pled the requisite control and causation for a public nuisance claim. In response to Mallinckrodt, LLC and SpecGx, the State argues that its marketing and diversion theories are well-pleaded, that Mallinckrodt, LLC is liable for certain statements of third parties as well as its own statements, that the State's proximate causation allegations are proper, and that Mallinckrodt, LLC's group pleading argument is without merit. In response to Teva and Cephalon, the State asserts that it has adequately pled causation, that its claims do not fail for lack of injury, that it has sufficiently pleaded diversion as to Teva and Cephalon and has sufficiently alleged misconduct by Teva.

In response to Distributor Defendants' motion to dismiss the Complaint, the State argued that its public nuisance claim was proper. First, Plaintiff argued that it properly pled interference with a right common to the general public because interference with health and safety of the general community can constitute a public right, a proposition the State argued is supported by

*Lead Industries*. The State further argued that it properly pled the requisite control as required under Rhode Island law. Lastly, the State argued that its public nuisance claim against Distributors does not sound in product liability law.

With respect to the Distributor's motion to dismiss the Amended Complaint, the State argues that neither *City of New Haven, Floyd*, nor *Atlantic Richfield* supports the Court's dismissal of the State's public nuisance claim. First, the State argues that *City of New Haven* was dismissed based on grounds inconsistent with the laws of Rhode Island, that it is an outlier in governmental entity opioid litigation, and that it provides no persuasive value for the issue at bar. The State also argues that *Floyd*, in which the court dismissed an action by an individual harmed by opioids against multiple defendants including those involved in the production and sale of opioid pharmaceuticals, does not support this Court's dismissal of the claims against Distributors. The State argues that rather than an improper attempt to improperly enforce the federal Controlled Substances Act, as the court held in *Floyd*, this case is based upon common law principles including public nuisance and negligence. Finally, the State maintains that in *Atlantic Richfield*, the District Court denied the motion to dismiss the State's public nuisance after finding that the State had properly alleged control over the instrumentality that caused the public nuisance, adding that nothing in *Atlantic Richfield* supports a different outcome here.

In *Lead Industries*, the Supreme Court recognized the elements of public nuisance as, "(1) an unreasonable interference; (2) with a right common to the general public; (3) by a person or people with control over the instrumentality alleged to have created the nuisance when the damage occurred." 951 A.2d at 446-47 (noting that "[a]fter establishing the presence of the three elements of public nuisance, one must then determine whether the defendant caused the public nuisance"). The Supreme Court stressed the importance of the public right, identifying it as "the *sine qua non*

of a cause of action for public nuisance." *Id.* at 447 (quoting 58 Am. Jur. 2d *Nuisances* § 39 at 698-99 (2002).

The Supreme Court explained in *Lead Industries* that for the purpose of public nuisance law, "a public right is the right to a public good, such as 'an indivisible resource shared by the public at large, like air, water, or public rights of way.'" 951 A.2d at 448 (quoting *City of Chicago v. American Cyanamid Company*, 823 N.E.2d 126, 131 (Ill. App. Ct. Jan. 14, 2005)). Notably, the court further explained that public health has been historically recognized as a right common to the general public. *Id.* at 444 ("[b]y the fourteenth century, courts began to apply public nuisance principles to protect rights common to the public, including "roadway safety, air and water pollution, disorderly conduct, and *public health*") (quoting Faulk & Gray, 2007 Mich. St. L. Rev. at 951) (emphasis added). The Restatement (Second) of *Torts* likewise identifies conduct creating a public nuisance, in relevant part, as "conduct [that] involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience." *Id.* (quoting 4 Restatement (Second) of *Torts* § 821B(2)(a) (1979)).

Having considered the State's allegations set forth in the Amended Complaint and viewing these allegations to be true for the purposes of this motion, the Court is satisfied that the State has properly alleged the violation of a public right. *Gagnon v. State*, 570 A.2d 656, 657 (R.I. 1990) (explaining that, on a motion to dismiss, the court must assume all allegations "contained in . . . complaint are true and are to be viewed in the light most favorable to" the plaintiff). As the Supreme Court recognized in *Lead Industries*, "The Restatement (Second) [of *Torts*] provides much guidance in ascertaining the fine distinction between a public right and an aggregation of private rights." 951 A.2d at 453; 4 Restatement (Second) of *Torts* § 821B cmt. g. According to the Restatement,

"[i]t is not . . . necessary that the entire community be affected by a public nuisance, so long as the nuisance will interfere with those who come in contact with it in the exercise of a public right or it otherwise affects the interests of the community at large . . . . In many cases the interests of the entire community may be affected by a danger to even one individual. Thus the threat of communication of smallpox to a single person may be enough to constitute a public nuisance *because of the possibility of an epidemic*; and a fire hazard to one adjoining landowner may be a public nuisance because of the danger of a conflagration." *Id.* (emphasis added).02.

Indeed, as the State has acknowledged, the opioid crisis has been defined as an epidemic by both public health experts and the federal government. *See* Am. Compl. ¶ 17 ("the nation is now swept up in what the CDC called a 'public health epidemic'"). Accordingly, the Court finds that the State has properly identified the opioid crisis as a public right under Rhode Island law, and more specifically, the Court agrees that freedom from an overabundance of prescription opioids is a public right.

The Court now turns to the next disputed element, control. Under *Lead Industries*, "a defendant must have control over the instrumentality causing the alleged nuisance at the time the damage occurs." 951 A.2d at 449 (explaining that the "[o]ne who controls a nuisance is liable for damages caused by that nuisance"). According to the Manufacturers, they were not in control of the opioids at the time they were taken; therefore, the State cannot bring a public nuisance claim against them. Similarly, Distributors argue that they have no control over the opioids after Distributors deliver them to pharmacies. Therefore, Distributor Defendants argue they lack control over the instrumentality of the public nuisance at the time of injury.

The State, however, frames the nuisance as the opioid epidemic itself, rather than specific instances of individuals being harmed by use or misuse of opioid pharmaceuticals. State's Mem. Opp'n to Manufacturer Defs.' Mot. Dismiss at 23 ("[t]he nuisance condition alleged in the Complaint . . . is the unreasonable overabundance of highly addictive prescription opioids in the

20

community"). The State alleges that the nuisance was ongoing as Manufacturers and Distributors continued to misrepresent the risks and benefits of opioids, funnel excessive amounts of medicines into Rhode Island communities, and falsely promote and distribute these medicines generally. *Id.* at 23-24. In reviewing a motion to dismiss, the Court "examine[s] the pleadings, accept[s] the facts alleged by the plaintiff as true, and view[s] disputed facts in the light most favorable to the plaintiff." *Cassidy v. Lonquist Management Co., LLC*, 920 A.2d 228, 232 (R.I. 2007) (citing *Cerberus Partners, L.P.*, 836 A.2d at 1117). Accordingly, the Court finds that Manufacturers and Distributors were in control of the instrumentality of the nuisance at the time of its occurrence. *Lead Industries*, 951 A.2d at 449.

Lastly, Manufacturers and Distributors argue that the State has not properly pled causation with respect to the public nuisance claim against them. However, the State correctly notes that causation is typically a question of fact for the jury. Indeed, "[w]hen reasonable minds could infer that causation exists, the question [of causation] must be submitted to the jury." *Hill v. State*, 121 R.I. 353, 355, 398 A.2d 1130, 1131 (1979) (specifically noting that "the issue of causation is almost always a question for the jury"). Viewing the allegations of causation in the Amended Complaint in the light most favorable to the State, the Court finds that reasonable minds could infer that the actions of Manufacturers and Distributors could have caused the current opioid crisis that plagues Rhode Island. *See, e.g.*, Am. Compl. ¶ 12 ("The Purdue Defendants' scheme was resoundingly successful. Chronic opioid therapy . . . has become a commonplace, and often first-line, treatment. Deceptive marketing caused prescribing not only of their opioids, but also of opioids as a class, to skyrocket."); *see also* Am. Compl. ¶¶ 283-85 ("The high . . . volume of opioids . . . distributed in Rhode Island should have raised a red flag that not all of the prescriptions being ordered could be for legitimate medical uses . . . [and] it can be fairly inferred that Distributors . . . failed to exercise

21

due diligence before filling orders"). Therefore, the element of causation is a question for the jury. *Hill*, 398 A.2d at 1131.[10]

Having determined that the State has properly set forth the elements of public nuisance, for the purpose of this stage in the pleadings, the Court denies the motions to dismiss by all Defendants named in this Count. *Lead Industries*, 951 A.2d at 446-47; *Ryan*, 420 A.2d at 842 ("the sole function of a motion filed pursuant to Super. R. Civ. P. 12(b)(6) is to test the sufficiency of the complaint") (citing *Dutson*, 119 R.I. at 803-04, 383 A.2d at 599). The Court is satisfied that the State has properly alleged that Defendants committed an unreasonable interference with a right common to the general public, that the Defendants were in control of the instrumentality at the time the nuisance occurred, and that Defendants' conduct caused the public nuisance. *Lead Industries*, 951 A.2d at 446-47.

### C

### COUNT II

### Violations of the State False Claims Act

In Count II, the State argues that Purdue Defendants, Rhodes Defendants, Sackler, Insys, and Kapoor violated the State False Claims Act.[11] Secs. 9-1.1-1 *et seq.* Specifically, the State

---

[10] The Court takes note of Distributor Defendants' arguments set forth in its Motion to Dismiss the State's Complaint, filed Sept. 28, 2018, and incorporated by reference into their Motion to Dismiss the Amended Complaint. Specifically, Distributor Defendants argue that all claims fail based on (1) the derivative injury rule, (2) the free public services doctrine, and (3) the economic loss doctrine. In reviewing the State's allegations in the Amended Complaint, however, the Court fails to find that "it is clear beyond a reasonable doubt that the [State] would not be entitled to relief from the [Distributor Defendants] under any set of facts that could be proven." *Chhun v. Mortgage Electronic Registration Systems, Inc.*, 84 A.3d 419, 422 (R.I. 2014); *see also McKenna v. Williams*, 874 A.2d 217, 225 (R.I. 2005) ("it is [the Court's] function to examine the complaint to determine if plaintiffs are entitled to relief under any conceivable set of facts").
[11] The State has voluntarily dismissed all its claims against Insys and Kapoor, including Count II, Violations of the State False Claims Act.

alleges that "Purdue [along with Rhodes and Sackler], through its deceptive marketing of opioids for chronic pain, presented or caused to be presented false or fraudulent claims and knowingly used or caused to be used a false statement to get a false or fraudulent claim for payment approved by the State." Am. Compl. ¶ 365.

In response, Manufacturer Defendants argue that in addition to the State's failure to adequately plead causation, a required element of all counts in the Amended Complaint, the State's False Claims Act allegations fail for additional reasons.[12]  First, Manufacturers submit that the State fails to plead all fraud-based claims—including Court II—with particularity as required under Super. R. Civ. P. 9(b).  Manufacturer Defendants further argue that this Count fails because the State does not specifically identify any allegedly false claims that were submitted or paid, and that the State's allegations are not material because the State has continued to pay claims of this nature after filing this action.

In response to Purdue, Plaintiff argues it has adequately pled causation as well as its claim for violation of the State False Claims Act.  The State argues that it has properly pled but-for and proximate causation but notes that "'the issue of [factual] causation is almost always a question for the jury,'" State's Mem. Opp'n to Manufacturer Defs.' Mot. Dismiss at 5-7 (quoting *Hill*, 121 R.I. at 355, 398 A.2d at 1131).  On the issue of the State False Claims Act, Plaintiff contends that it has stated its fraud-based claims with particularity but notes that the particularity rule for fraud allegations is a flexible standard that must be relaxed under certain circumstances when highly detailed pleadings are difficult, which the State argues is the case here.

---

[12] Purdue Defendants do not submit an individual supplemental memorandum of law in support of the Manufacturer Defendants' motion to dismiss.

The State False Claims Act imposes liability for false or fraudulent requests or demands for money or property from the State of Rhode Island. §§ 9-1.1-3 *et seq.* This act is directed towards

> "[a]ny person who:
> "(1) Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
> (2) Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>
> . . . .
>
> (7) Knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the state, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the state." Sec. 9-1.1-3(a).

The State False Claims Act defines a claim as "any request or demand, whether under a contract or otherwise, for money or property and whether or not the state has title to the money or property, that . . . "[i]s presented to an officer, employee, or agent of the state . . . ." Sec. 9-1.1-3(b)(1)(i). Violation of the act may result in "a civil penalty in an amount equal to the civil penalty set forth in the Federal False Claims Act, . . . plus three (3) times the amount of damages the state sustains," along with the costs of the state's civil action to recover damages. Sec. 9-1.1-3(a)(7).

It is well-settled that a plaintiff must state the circumstances of the fraud (or mistake) with particularity. Super. R. Civ. P. 9(b) (explaining that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally"). "[C]ourts, including the First Circuit, have unanimously held that Rule 9(b)'s particularity requirement applies to claims under the False Claims Act." *State v. Shaw's Supermarkets, Inc.*, No. PC20154895, 2017 WL 1806898, at *6 (R.I. Super. May 1, 2017) (citing *United States ex rel. Booker v. Pfizer, Inc.*, 847 F.3d 52, 57-58 (1st Cir. 2017)).

However, the Supreme Court has acknowledged that "[w]hat constitutes sufficient particularity necessarily depends upon the nature of the case and should always be determined in the light of the purpose of the rule to give fair notice to the adverse party and to enable him to prepare his responsive pleading." *Women's Development Corp. v. City of Central Falls*, 764 A.2d 151, 161 (R.I. 2001) (quoting 1 Kent, *Rhode Island Practice* § 9.2 at 92 (1969)). In analyzing whether a fraud claim has been stated with the proper level of detail, "[t]he basic standard remains one of fair notice to the adversary, with Rule 9(b) expressing the policy that fairness requires greater detail with respect to averments of fraud and mistake than is required generally." 1 Robert B. Kent, *Rhode Island Civil and Appellate Procedure* § 9.2 at 107 (2018-2019 ed.)). Moreover, "[t]he Supreme Court of the United States has cast some doubt on the propriety of dismissal under the Federal Rule [in the event a court finds that a fraud claim has not been pled with particularity]," favoring a dismissal with leave to amend or a motion for a more definite statement. *Id.* at 108. Persuasive precedent further indicates that "courts that have implemented a relaxation of Rule 9(b)'s particularity standard have allowed the plaintiff 'to plead generally at the outset' and amend the complaint following discovery in order to add in details of the allegedly false or misleading statements." *Metropolitan Property & Casualty Insurance Co. v. Savin Hill Family Chiropractic, Inc.*, 266 F. Supp. 3d 502, 535 (D. Mass. 2017) (citing *United States ex rel. Karvelas v. Melrose-Wakefield Hospital*, 360 F.3d 220, 228-29 (1st Cir. 2004)).

In the Amended Complaint, the State makes numerous allegations that Purdue Defendants and Sackler violated the State False Claims Act. General allegations against these Defendants include that they "knew that the doctors, pharmacists, other health care providers, and/or agents of the State Medical Assistance Program, and, upon information and belief, state-funded employee

benefits plans to which they deceptively marketed prescription opioids had treated and would

continue to treat Rhode Island Medical Assistance Patients," and that

> "Purdue Defendants [and Sackler] knew their false statements were
> material to healthcare providers' decision to prescribe opioids to
> patients included in state-funded Medical Assistance Programs and
> . . . the State employee health benefit program. Indeed, Purdue . . .
> intended such statements to be material to encourage additional
> opioid prescriptions." Am. Compl. ¶ 370.

The State makes specific allegations against these Defendants as well.  For instance, the

State alleges that Purdue and Sackler falsely portrayed the risk of addiction associated with opioids

through marketing "claims that the risk of addiction was less than 1%, a claim that appeared in

educational pamphlets and educational videos Purdue disseminated"; that they "maintained a

website from 2008 to 2015, *In the Face of Pain* that downplayed the risks of chronic opioid therapy

[and that] Purdue deactivated . . . in October 2015 following an investigation by the New York

Attorney General"; and that they advised doctors of an invented concept called "pseudoaddiction"

that "foster[ed] the misconception that signs of addiction, including shopping for doctors willing

to newly write or refill prescriptions for opioids or seeking early refills, reflected undertreated pain

that should be addressed with more opioids—the medical equivalent of fighting fire by adding

fuel." Am. Compl. ¶¶ 68, 73, 76.

For the purpose of this motion to dismiss, the Court finds these allegations sufficiently

particularized to satisfy Rule 9(b).  The State has set forth extensive details regarding alleged fraud

perpetrated by the Defendants named in this count that caused or contributed to the submission of

false claims to the Rhode Island state government healthcare systems.  Furthermore, even

considering the Defendants' arguments that the State's fraud allegations are not stated with the

particularity that Super. R. Civ. P. 9(b) requires, the Court is satisfied that given the complexity of

the alleged fraud, and the lengthy period of time over which it occurred, the State has provided

sufficient details to provide fair notice to Purdue Defendants regarding the claims against them. *See* 1 Robert B. Kent et al., *Rhode Island Civil and Appellate Procedure* § 9.2 at 107 (2018-2019 ed.)) (explaining that to satisfy Rule 9(b), a court must consider the pleadings under a standard of fair notice to the adversary).

## D

## COUNT III

### Fraud and Fraudulent Misrepresentation

In its third Count, the State brings claims of fraud and fraudulent misrepresentation against the Purdue Defendants, Rhodes Defendants, Insys, Mallinckrodt, SpecGx, Teva, Cephalon, Sackler, and Kapoor.[13]  Specifically, the State alleges that these Defendants made false representations—including understatement of the risks and lack of evidence associated with the use of opioids—with the intent that the State and its prescribers, patients, and payors would rely upon these false representations.  The State further alleges that it justifiably relied upon the false information disseminated by these Defendants, and that the resulting inevitable consequence of these false statements, such as widespread opioid addition, overdose, and death, caused economic loss to the State that would not have occurred but for these false statements.

The Manufacturer Defendants respond by repeating their arguments that the (1) State has failed to plead its fraud-based claims with particularity, and (2) the State has not adequately pled causation.  Additionally, Manufacturers argue that under Rhode Island law, the State cannot recover for indirect fraud directed at third parties.  Manufacturers characterize the State's claims as "indirect" under the theory that even if the Manufacturer Defendants perpetrated the fraud upon

---

[13] The State has voluntarily dismissed all its claims against Insys and Kapoor, including Count III, Fraud and Fraudulent Misrepresentation.

doctors, those doctors wrote improper prescriptions for patients, which the State subsequently filled, which patients misused, thereby resulting in "indirect consequences that harmed the State." Finally, Manufacturer Defendants submit that the State has not properly pled the requisite elements of indirect fraud, which include (1) third party reliance upon a misrepresentation, (2) the reliance was reasonably foreseeable, (3) the misrepresentation upon the third party was intentional, and (4) the third party relied to its detriment.

In supplemental memoranda Mallinkrodt, LLC, SpecGx, Teva, and Cephalon submit additional arguments as to why this Court should dismiss Count III against them. Mallinckrodt, LLC and SpecGx submit that the State's marketing and diversion theories against them fail; the marketing theory because the State improperly relies upon statements by third parties over which Mallinckrodt had no agency, and the diversion theory because it constitutes an improper attempt to enforce the federal Controlled Substances Act that is under the exclusive jurisdiction of the DEA. Mallinckrodt, LLC and SpecGx additionally argue that the State has improperly grouped them with the other Defendants, rather than making specific allegations as is required under Rhode Island's heightened pleading standard for fraud. Finally, Teva and Cephalon assert that the State has not pled any misrepresentation or omission by Teva or Cephalon, let alone the requisite particulars for fraud-based allegations. Teva and Cephalon further argue that the State's allegations predate Teva's affiliation with Cephalon, which began in 2011, and that other courts in persuasive jurisdictions have dismissed charges against these Defendants.[14]

---

[14] *Travelers Indemnity Co. v. Cephalon, Inc.*, 620 F. App'x 82, 86 (3d Cir. 2015); *Indiana/Kentucky/Ohio Regional Council of Carpenters Welfare Fund v. Cephalon, Inc.*, Civil Action No. 13-7167, 2014 WL 2115498 (E.D. Pa. May 21, 2014); *Central Regional Employees Benefit Fund v. Cephalon, Inc.*, Civil Action No. 09-3418 (MLC), 2009 WL 3245485 (D.N.J. Oct. 7, 2009).

The State opposes these arguments.   In addition to asserting it has appropriately pled causation, the State responds that its fraud-base claims are properly alleged with particularity.  The State points to allegations in the Amended Complaint, including the statements that Manufacturer Defendants mischaracterized the risk of addiction associated with opioids; falsely described the risk of addiction to physicians; overstated the effectiveness of screening tools; failed to disclose the lack of evidence associated with the long-term use of opioids; and overstated the efficacy of abuse-deterrent opioid formulations.   The State further submits that it has provided specific allegations evidencing fraud including the allegations that "[a] study of 7.8 million doctor visits nationwide between 2000 and 2010 found that opioid prescriptions increased from 11.3% to 19.6% of visits while NSAID and acetaminophen prescriptions fell from 38% to 29%," that Purdue told "[o]ne prescriber . . . that Purdue's extended release opioid was preferable to short-acting drugs in July 2007 [and that prescriber went on to write] 88 prescriptions for OxyContin covered by Rhode Island Medical Assistance Program, including $66,402.32 in charges," and that a Rhode Island prescriber "reported that he was told OxyContin 'couldn't be tampered with' and that the 'people couldn't misuse it.'"  State's Mem. Opp'n to Manufacturer Defs.' Mot. Dismiss at 27.  These allegations notwithstanding, the State notes that many courts have adopted more relaxed pleading standards for fraud allegations under complex circumstances that make detailed pleadings difficult.[15]

"To establish a *prima facie* fraud claim, 'the plaintiff must prove that the defendant made a false representation intending thereby to induce [the] plaintiff to rely thereon and that the plaintiff justifiably relied thereon to his or her damage.'" *McNulty v. Chip*, 116 A.3d 173, 182-83 (R.I.

---

[15] *See Women's Development Corp.*, 764 A.2d at 161; *Metropolitan Property & Casualty Co.*, 266 F. Supp. 3d at 535; and *In re Testosterone Replacement Therapy Products Liability Litigation Coordinated Pretrial Proceedings*, 2016 SL 4091620, at *2 (N.D. Ill. Aug. 2, 2016).

2015) (quoting *Parker v. Byrne*, 996 A.2d 627, 634 (R.I. 2010)) (internal citation omitted). However, as discussed in Section C, *supra*, the requisite particularity for fraud-based allegations depends on the unique facts and circumstances of the case and the requirements may be relaxed in situations that involve complex allegations of fraud over long periods of time. *See Women's Development Corp.*, 764 A.2d at 161 (stating that for the purpose of Rule 9(b), particularity depends on the nature of the case and on whether the complaint provides fair notice to the opposing party).

Assuming the State's allegations to be true, the Court finds the State has provided ample pleading of specific incidents of fraud perpetrated by the Defendants named in this Count. *See* 1 Robert B. Kent et al., *Rhode Island Civil and Appellate Procedure* § 9:2 at 107 (2018-2019 ed.) ("Rule 9(b) requires that circumstances constituting fraud . . . shall be stated with particularity"). In the section above, *Violations of the State False Claims Act*, this Court considered the State's allegations of fraud against Purdue and Sackler, and found these allegations stated with sufficient particularity. *See supra* Section C, at 27-29. Therefore, the Court turns to the remaining Defendants not named in Count II, including Mallinckrodt, LLC, SpecGx, Teva, and Cephalon.

With respect to Mallinckrodt, LLC and SpecGx, the State alleges that these Defendants sponsored a website that published misleading information including information about "pseudoaddiction," that they promoted Exalgo and Xartemis XR as "abuse-deterrent" opioids when, in fact, "neither drug has specific approval as a drug with abuse-deterrent properties," and that Mallinckrodt, LLC funded advocacy groups that combatted efforts to restrict opioid prescribing. Am. Compl. ¶¶ 213, 220, 223. The State additionally alleges that Teva and Cephalon,

> "by promoting Actiq and Fentora as safe and appropriate for uses
> such as neck and back pain, without disclosing the lack of approval
> or evidence for such uses, and misrepresenting the appropriateness
> of Actiq and Fentora for treating those conditions, engaged in

30

misrepresentations, deception, and knowing omissions of material fact." Am. Compl. ¶ 392.

Having considered these and other allegations set forth in the Amended Complaint, the Court is satisfied that the State has properly pled its fraud allegations against these Defendants. Specifically, the Court finds that these allegations are sufficiently particularized under Super. R. Civ. P. 9(b) and satisfy Rhode Island law requiring that allegations of fraud are detailed enough to provide fair notice to the opposing parties of the charges against them. 1 Robert B. Kent et al., *Rhode Island Civil and Appellate Procedure* § 9:2 at 107 (2018-2019 ed.) ("[w]hat constitutes sufficient particularity necessarily depends upon the nature of the case and should always be determined in the light of the purpose of the rule to give fair notice to the adverse party and to enable him to prepare his responsive pleading"). Accordingly, Purdue, Sackler, Mallinckrodt, LLC, SpecGx, Teva, and Cephalon's motions to dismiss the State's fraud charges are denied.

## E

## COUNT IV

### Negligence, Negligence Per Se, Gross Negligence and Negligent Misrepresentation

In Count IV, the State brings claims of negligence, negligence per se, gross negligence, and negligent misrepresentation against all Defendants. The State specifically asserts that Defendants had a duty to exercise reasonable care in manufacturing, marketing, selling, and distributing highly dangerous opioid drugs in Rhode Island. The State further argues that as part of a limited class of registrants authorized to legally market, sell, and distribute controlled substances, Defendants are part of a limited class placed in a position of great trust by the State, and that their duties cannot be delegated. The State adds that G.L. 1956 §§ 21-28-3.04, 21-28-3.28, and 216-RICR-20-20-4.7, as well as the Federal Controlled Substances Act (CSA) created

31

duties applicable to Defendants.  The State alleges that Defendants breached these duties, and that the State sustained substantial expenses and damages as a direct and proximate result.

In response, Manufacturer Defendants argue that the State does not plead actionable claims for negligence.  Manufacturer Defendants characterize the State's negligence claims as "ill-defined," but appear to be premised upon negligent misrepresentation and negligence *per se*. Manufacturer Defendants argue that the State improperly bases these claims upon the conduct of third parties, namely doctors who have prescribed opioids, individuals who have abused opioids, and criminal opioid use and diversion.  Manufacturer Defendants argue that they have no duty to control the conduct of third parties.  Regarding the State's negligent misrepresentation theory, Manufacturers again argue that the State fails to state its claim with particularity.  Manufacturers add that Rhode Island does not recognize a claim for negligence *per se*, and that a statutory violation can only act as evidence of negligence.  Finally, Manufacturer Defendants argue that the State's diversion theory is an improper attempt to create a private right of action under the CSA.

Distributor Defendants—in their original motion to dismiss the State's Complaint, which they have incorporated into their motion to dismiss the Amended Complaint—argue that the State's negligence claim against them should be dismissed.  Distributors argue that the State fails to allege that Distributors owed a duty to the State, and that the State fails to plead sufficient facts to demonstrate a breach of duty.  Distributors further submit that the Attorney General has no right to enforce the CSA, and that neither the Rhode Island CSA nor its federal counterpart was designed to prevent harm to the State, thereby negating the State's claim of negligence based on violation of these statutes.

It is well-settled that "to 'maintain a cause of action for negligence, the plaintiff must establish four elements: (1) a legally cognizable duty owed by defendant to plaintiff; (2) breach of

that duty; (3) that the conduct proximately caused the injury; and (4) actual loss or damage.'" *Rhode Island Resource Recovery Corp. v. Restivo Monacelli LLP*, 189 A.3d 539, 546 (R.I. 2018) (quoting *Medeiros v. Sitrin*, 984 A.2d 620, 625 (R.I. 2009)). A claim for gross negligence requires intentional wrongful misconduct, rather than ordinary negligence. *Krajewski v. Bourque*, 782 A.2d 650, 652-53 (R.I. 2001).

More specifically, a claim of negligent misrepresentation requires that a plaintiff allege

> "'(1) a misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the representation under circumstances in which he [or she] ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation.'" *Cruz v. DaimlerChrysler Motors Corp.*, 66 A.3d 446, 453 (R.I. 2013) (quoting *Manchester v. Pereira*, 926 A.2d 1005, 1012 (R.I. 2007)).

Finally, according to the Supreme Court, "the violation of a statute or an ordinance is not negligence *per se* but is to be used by the trier of the fact[] merely as an aid in determining that issue on consideration of all the evidence." *Salcone v. Bottomley*, 85 R.I. 264, 267, 129 A.2d 635, 637 (1957) (citing *Audette v. New England Transportation Co.*, 71 R.I. 420, 425, 46 A.2d 570, 572-73 (1946)).

In the Amended Complaint, the State has alleged facts pertaining to each requisite element in a negligence claim as to all Defendants. Specifically, the State has identified that Defendants owed duties to the State, including "a duty to exercise reasonable care in manufacturing, marketing, selling, and distributing highly dangerous opioid drugs," as well as "a duty to exercise reasonable care . . . not to cause foreseeable harm to others." Am. Compl. ¶¶ 406, 407. The State further identified statutory duties including those set forth under §§ 21-28-3.04, 21-28-3.28, and 216-RICR-20-20-4.7. The State goes on to allege that Defendants breached these duties through

their misleading and fraudulent marketing and distribution of opioids, eventually causing damages to the State. Assuming these allegations to be true and viewing these facts in the light most favorable to the State, the Court finds that the State has properly pled its claims for negligence. *See St. James Condominium Association v. Lokey*, 676 A.2d 1343, 1346 (R.I. 1996) (explaining that when reviewing a motion to dismiss, the Supreme Court "assumes the allegations contained in the complaint to be true and views the facts in the light most favorable to the plaintiffs").

The Supreme Court "has cautioned that such a motion should not be granted 'unless it appears to a certainty that [the plaintiffs] will not be entitled to relief under any set of facts which might be proved in support of [their] claim.'" *St. James Condominium Association*, 676 A.2d at 1346 (quoting *Bragg v. Warwick Shoppers World, Inc.*, 102 R.I. 8, 12, 227 A.2d 582, 584 (1967)). Here, the Court is satisfied that the State has met its burden in the Amended Complaint, and the Defendants' motions to dismiss the State's claims for negligence are therefore denied.

**F**

**COUNT V**

**Unjust Enrichment**

The State lastly brings a claim of unjust enrichment against all Defendants. According to the State, Purdue Defendants, Rhodes, Sackler, Insys, Kapoor,[16] Mallinckrodt, SpecGx, Teva, Cephalon, and Distributors profited as an expected and intended result of their conscious wrongdoings outlined in the Amended Complaint. All Defendants move to dismiss this count.

Manufacturer Defendants submit that the State has not pled an actionable claim for unjust enrichment. First, Manufacturer Defendants argue that the State's allegations that it conferred a

---

[16] The State has voluntarily dismissed all its claims against Insys and Kapoor, including Count V, Unjust Enrichment.

34

benefit upon them for "purchases of unauthorized users of prescription opioids" and "externalities" such as health care and treatment of opioid users are not sufficient pleadings for the State's claim of unjust enrichment.   Furthermore, Manufacturers argue that the State's reimbursement of prescriptions written by physicians for the purposes of treating patients using their expertise and medical judgment is not unjust, and cite *State of New Hampshire v. Purdue Pharma L.P.*, in which the court dismissed a similar claim. No. 217-2017-CV-0042, slip op. at 28-29 (N.H. Super. Sept. 18, 2018).  Sackler argues that the State has failed to properly plead unjust enrichment against him because the State alleges it has conferred benefits upon the Manufacturers and Distributors but has not pled facts to support piercing the corporate veil to hold Sackler personally liable for a benefit allegedly conferred upon the company of which he is an owner.

Distributor Defendants also argue that the State's unjust enrichment claims should be dismissed.  Here, Distributor Defendants argue that the State conferred no actual benefit upon them, and that any "indirect" benefit they received from the State—or "externalities" Distributors generated—are not actionable under Rhode Island law.  Distributor Defendants further argue that the State's unjust enrichment claim must be dismissed because they did not have the "opportunity to decline the benefit," that the State has not alleged that it "had a reasonable expectation of payment" from the Distributors, and finally that it is the State's purpose to provide social services to its citizens, and therefore, there is no inequitable benefit that may be remedied in this Court.

In response to Manufacturer Defendants, the State argues that it has properly pled its claim for unjust enrichment against them by "clear[ing] the plausibility threshold."  Citing *Lead Industries*, the State notes that Rhode Island courts are deferential to a plaintiff's allegations of unjust enrichment at the motion to dismiss stage. *See* No. 99-5226, 2001 WL 345830, at *15 (R.I. Super. Apr. 2, 2001), *rev'd on other grounds*, 951 A.2d 428 (R.I. 2008).  Specifically, the State

submits that the court in *Lead Industries* noted that the plaintiff had properly pled its claim due to the argument that the defendants had "derive[d] economic gain from their promotion and sale of lead [paint] while, at [Rhode Island's] expense, avoiding responsibility for the damages it has caused." *Id.* According to the State, the Amended Complaint details benefits the State conferred upon Manufacturer Defendants, that Manufacturers appreciated these benefits, and that they have been unjustly enriched by not having to bear the by-products of their conduct: the enormous present and future costs of treating opioid-related disease.

In response to Distributors, the State argues that it has properly pled its claim for unjust enrichment.[17] The State reiterates its argument in response to Manufacturer Defendants that it has properly pled the elements of unjust enrichment for the purposes of this stage in the litigation, when viewing the pleadings under the deferential standard applied in *Lead Industries*. The State specifically argues that the Amended Complaint details benefits the State conferred upon Distributors (such as payment of prescription opioids that has helped sustain the Distributors' business), that Distributors were aware of and appreciated the benefit the State conferred upon them, and that Distributors have been unjustly enriched by reaping the profits of their wrongful conduct while not having to bear the by-products.

The State finally argues that it has properly pled its unjust enrichment claim against Sackler. Specifically, the State argues that it has indeed alleged that Sackler received a benefit from the State, such as its assertion that "Sackler . . . personally benefited from the success of OxyContin." *See* Am. Compl. ¶ 156. With regard to Sackler's argument against "piercing the corporate veil," the State notes that in *First Express Services Group, Inc. v. Easter*, the court

---

[17] The State made these arguments in response to Distributors' original motion to dismiss the Complaint and incorporates them into its opposition to Distributor Defendants' motion to dismiss the Amended Complaint.

distinguished between a benefit received by a corporation and a personal benefit received by its shareholder, holding that a shareholder *could* be unjustly enriched without piercing the corporate veil (although the court did not ultimately so find). 840 N.W.2d 465, 477 (Neb. 2013).

"Under Rhode Island law, unjust enrichment is not simply a remedy in contract and tort but can stand alone as a cause of action in its own right." *Dellagrotta v. Dellagrotta*, 873 A.2d 101, 113 (R.I. 2005) (citing *Toupin. v. Laverdiere*, 729 A.2d 1286 (R.I. 1999)). "[U]njust enrichment is predicated upon the equitable principle that one shall not be permitted to enrich himself at the expense of another by receiving property or benefits without making compensation for them." *Narragansett Electric Co. v. Carbone*, 898 A.2d 87, 99 (R.I. 2006) (citing *R & B Electric Co., Inc. v. Amco Construction Co., Inc.*, 471 A.2d 1351, 1355 (R.I. 1984)). To recover for a claim of unjust enrichment, a plaintiff must prove:

> "(1) that he or she conferred a benefit upon the party from whom relief is sought; (2) that the recipient appreciated the benefit; and (3) that the recipient accepted the benefit under such circumstances 'that it would be inequitable for [the recipient] to retain the benefit without paying the value thereof.'" *Dellagrotta*, 873 A.2d at 113) (quoting *Bouchard v. Price*, 694 A.2d 670, 673 (R.I. 1997)) (alterations in original).

According to the Supreme Court, "a benefit is conferred when improvements are made to property, materials are furnished, or *services are rendered without payment*." *Narragansett Electric Co.*, 898 A.2d at 99 (emphasis added). The Supreme Court has previously found unjust enrichment based on the provision of medical services. *Id.*

In reviewing this motion to dismiss, the Court must look no further than the Amended Complaint, assume all allegations therein to be true, and resolve any doubts in the State's favor. *Multi-State Restoration, Inc. v. DWS Properties, LLC*, 61 A.3d 414, 416 (R.I. 2013). Specifically, the Court must accept the State's allegation that Defendants committed conscious wrongdoings in

furtherance of their deceptive and illegal campaigns to promote, distribute, and sell opioids in Rhode Island. *See* Am. Comp. ¶¶ 432-35.  The Court must further accept the State's allegations that it "expended substantial amounts of money in an effort to remedy or mitigate the societal harms caused by Defendants' conduct." Am. Compl. ¶ 437.

Dismissal is only "appropriate 'when it is clear beyond a reasonable doubt that the plaintiff would not be entitled to relief from the defendant under any set of facts that could be proven in support of the plaintiff's claim.'" *McKenna v. Guglietta*, 185 A.3d 1248, 1251 (R.I. 2018) (quoting *Palazzo v. Alves*, 944 A.2d 144, 149 (R.I. 2008)).  While Defendants have argued they are not responsible for "externalities," and Sackler specifically argues that the State has not properly pled facts to support this Court's piercing of the corporate veil, the Court finds that these Defendants have failed to demonstrate beyond a reasonable doubt that there is no set of facts that could be proven at trial to support the State's claim of unjust enrichment. *Id.*  Indeed, "'[r]ecovery for unjust enrichment is predicated upon the equitable principle that one shall not be permitted to enrich himself at the expense of another by receiving property or benefits without making compensation for them.'" *South County Post & Beam, Inc. v. McMahon*, 116 A.3d 204, 213 (R.I. 2015) (quoting *Emond Plumbing & Heating, Inc. v. BankNewport*, 105 A.3d 85, 90 (R.I. 2014)).  Accordingly, the Court denies Defendants' motions to dismiss the State's unjust enrichment claim.

## F

### Rhodes Defendants' Motion for a More Definite Statement

Having addressed Defendants' motions to dismiss all counts in the Amended Complaint, the Court turns to Rhodes Defendants' motion for a more definite statement pursuant to Super. R. Civ. P. 12(e).  Specifically, Rhodes requests that should this Court deny its motion to dismiss, that Plaintiff issue a more definite statement with respect to its claims against Rhodes.  Rhodes argues

that it cannot ascertain the nature and extent of the charges against it because the State has

conflated its charges against Rhodes with its charges against all other Defendants.  Citing federal

precedent, including *PLIVA v. Mensing*, 564 U.S. 604 (2011) and *Mutual Pharmaceutical Co. v.*

*Bartlett*, 570 U.S. 472 (2013), Rhodes Defendants additionally argue that as manufacturers of

generic drugs, the State's claims against them are preempted by federal law; *see also Wyeth v.*

*Levine*, 555 U.S. 555 (2009).

 The State responds that Rhodes Defendants have not met their burden to demonstrate that

a more definite statement is necessary.  The State argues that the Amended Complaint provides

Rhodes Defendants with adequate notice of the charges against them as required under Super R.

Civ. P. 8.  However, should this Court find that the State's claims are indeed insufficient, and a

more definite statement is necessary, the State requests that the Court grant the State leave to take

additional discovery on the issue of the Rhodes Defendants' relationship with Purdue Defendants.

As to Rhodes Defendants' argument regarding federal preemption, the State responds that Rhodes

improperly relies upon federal precedent related to product liability claims.  The State asserts that

claims in the Amended Complaint are related to fraudulent promotion, which is neither required

to comply with nor preempted by federal law.

 Rule 12(e) states, in relevant part,

> "[i]f a pleading to which a responsive pleading is permitted is so
> vague or ambiguous that a party cannot reasonably be required to
> frame a responsive pleading, the party may move for a more definite
> statement before interposing a responsive pleading. The motion
> shall point out the defects complained of and the details desired."
> Super. R. Civ. P. 12(e).

"It is often said that this is a disfavored motion, and there are strong indications that many more

of such motions are denied than are granted by the federal courts." 1 Robert B. Kent et al., *Rhode*

*Island Civil and Appellate Procedure* § 12:15 at 141 (2018-2019 ed.) (citing Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure: Civil* § 1377 (3d ed. 2004)).

The function of rule 12(e) is limited.  The purpose is only to enable the defending party to respond, not to elicit information necessary to prepare for trial. *Id.*  Additionally, the Court is mindful that "Rhode Island's Rule 12(e) is substantially similar to Rule 12(e) of the Federal Rules of Civil Procedure and so, Rhode Island courts may look to the interpretation of the federal rule for guidance in interpreting the state rule." *Bristol/Warren Regional School Employees v Chafee*, Nos. PC 12-3167, PC 12-3169, PC 12-3579, 2014 WL 1743142 n.3 (R.I. Super. Apr. 25, 2014) (citing *Smith v. Johns-Manville Corp.*, 489 A.2d 336, 339 (R.I. 1985)).

Having reviewed the Amended Complaint with respect to the State's allegations against Rhodes Defendants, the Court is satisfied that the State has provided sufficient information to warrant an answer from Rhodes. *See* 1 Robert B. Kent et al., *Rhode Island Civil and Appellate Procedure* § 12:15 at 140 (2018-2019 ed.) ("[t]he purpose of the [Rule 12(e)] motion is confined to enabling the defending party to respond"); *see also Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 129-32 (5th Cir. 1959) (stating that Rule 12(e) motions are up to the careful discretion of the judge but explaining that these motions must not be granted lightly so as not to frustrate the notice-pleading standard of Rule 8) (applying federal law).  Indeed, the State has informed Rhodes of the claims against it including public nuisance (Count I); violations of the Rhode Island False Claims Act (Count II); fraud and fraudulent misrepresentation (Count III); negligence, negligence per se, gross negligence, and negligent misrepresentation (Count IV); unjust enrichment (Count V), and the allegations upon which these claims are based. *See* Am. Compl. ¶¶ 6, 14, 29, 334-44.  In reviewing these allegations, the Court is satisfied that the State's counts against Rhodes are not so vague that Rhodes cannot respond. *See Oresman v. G. D. Searle & Co.*, 321 F. Supp. 449, 458

(D.R.I. 1971) ("[i]f the complaint fairly gives notice of the claim or claims asserted therein, a motion for a more definite statement must be denied") (citing *Schaedler v. Reading Eagle Publication, Inc.*, 370 F.2d 795, 798 (3rd Cir. 1967)).

Furthermore, as the State properly points out in its opposition to Rhodes's motion for a more definite statement, "group pleading" of allegations of "common conduct" alone do not render a complaint deficient such that a motion to dismiss is necessary. *See, e.g., Zond, Inc. v. Fujitsu Semiconductor Ltd.*, 990 F. Supp. 2d 50, 53 (D. Mass. 2014) ("[a]t the motion to dismiss stage a complaint generally will only be dismissed where it is 'entirely implausible' or impossible for the grouped defendants to have acted as alleged"); *see also GMO Trust ex rel. GMO Emerging Country Debt Fund v. ICAP plc*, Civil Action No. 12-10293-DPW., 2012 WL 5197545, at *8 (D. Mass. Oct. 18, 2012) (denying the defendant's motion to dismiss based on the argument that the plaintiff's "group pleading" was overly vague, stating that it was "not so vague that [the defendant could] claim it lacks sufficient notice of the claim").

Finally, the Court is unpersuaded that the State's claims against Rhodes are preempted by federal law. Rhodes Defendants' reliance upon *Mensing* and *Bartlett* is misplaced, as these cases involve claims of products liability, including failure-to-warn and design defect, whereas the State brings common-law claims such as negligence and public nuisance in the Amended Complaint. *See* 564 U.S. at 608-09; 570 U.S. at 472. While pharmaceutical manufacturers are required to comply with FDA regulations with respect to labeling, they are under no obligation to engage in off-label promotion; therefore, courts have rejected arguments of preemption regarding misleading or fraudulent marketing. *See Rusk v. Wyeth-Ayerherst Laboratories, Inc.*, No. A-14-CV-00549-LY-ML., 2015 WL 3651434, at *5 (W.D. Tex. June 11, 2015) (finding that the fraudulent marketing at issue was not federally preempted because "[n]othing in the FDCA requires

defendants to promote their drug for an off-label use, nor is the federal law otherwise at odds with the negligence, breach of implied warranty, and fraud claims brought by plaintiffs"); *Arters v. Sandoz Inc.*, 921 F. Supp. 2d 813, 820 (S.D. Ohio 2013) (finding federal preemption of failure-to-warn claims, but not with respect to claims of negligence and fraud in the context of off-label promotion).[18]   Accordingly, Rhodes Defendants' argument—that the State's claims against Rhodes are federally preempted—fails.

Should Rhodes dispute the factual accuracy of the State's allegations against it, Rhodes may do so at a more appropriate stage of this action. *McKenna*, 874 A.2d at 225 ("[w]hen [the Supreme Court] undertakes a review of a decision granting or denying a Rule 12(b)(6) motion, 'we assume that the allegations contained in the complaint are true, and examine the facts in the light most favorable to the nonmoving party'") (quoting *Estate of Sherman v. Almeida*, 747 A.2d 470, 473 (R.I. 2000)); *see also Chartis Specialty Insurance Co. v. Tesoro Corp.*, 930 F. Supp. 2d 653, 671 (W.D. Tex. 2013) (denying plaintiff's motion for a more definite statement, explaining that the defendants' "practice of pleading collectively does not so obscure the parties' respective positions as to warrant ordering them to plead separately"). Accordingly, Rhodes's motion for a more definite statement is denied.

---

[18] On July 23, 2019, Manufacturer Defendants submitted a Notice of Supplemental Authority, drawing the Court's attention to the recent United States Supreme Court decision in *Merck Sharp & Dohme Corp. v. Albrecht* and a North Dakota court's analysis of this case in the context of a related opioid litigation. 139 S. Ct. 1668 (2019). This Court notes the *Merck* decision, but Manufacturer Defendants' reliance upon the case is misplaced as the claims herein do not arise from products liability law, as they did in *Merck*. *Id.*

## IV

### Conclusion

For the foregoing reasons, the Defendants' Motions to Dismiss the State's Amended Complaint in the above-entitled action are denied.  The Motions to Dismiss for Lack of Personal Jurisdiction under Super. R. Civ. P. 12(b)(2) by Sackler, Kapoor, and Mallinckrodt plc are denied. The Court further denies all Defendants' Motions to Dismiss for Failure to State a Claim upon which Relief can be Granted under Super. R. Civ. P. 12(b)(6), determining instead that the State has properly pled all elements of its five counts set forth in the Amended Complaint.  Lastly, the Court finds that the State has properly pled its allegations against Rhodes Defendants, and therefore denies Rhodes's Motion for a More Definite Statement under Super. R. Civ. P. 12(e).

Prevailing counsel shall present the appropriate order for entry.



**RHODE ISLAND SUPERIOR COURT**

*Decision Addendum Sheet*

---

**TITLE OF CASE:**           State of Rhode Island, by and through Peter Neronha, Attorn
                             General v.Purdue Pharma L.P., et al.

**CASE NO:**                 PC-2018-4555

**COURT:**                   Providence County Superior Court

**DATE DECISION FILED:**     August 16, 2019

**JUSTICE/MAGISTRATE:**      Gibney, P.J.

**ATTORNEYS:**

          For Plaintiff:     *SEE ATTACHED LIST

          For Defendant:     *SEE ATTACHED LIST

44

*State of Rhode Island, by and through, Peter F. Neronha, Attorney General v. Purdue Pharma L.P., et al.*
C.A. No. PC-2018-4555

## **COUNSEL OF RECORD**

**Plaintiff:**
- Peter F. Neronha, Esq.
  (401)   274-4400, ext. 2338
  pneronha@riag.ri.gov

**Defendants:**

**Amerisourcebergen Drug Corporation**
- Gerald J. Petros, Esq.
  (401)   274-2000, ext. 5212
  gpetros@hinckleyallen.com

**Cardinal Health, Inc.**
- Robert C. Corrente, Esq.
  (401)   270-4500
  rcorrente@whelancorrente.com

**Cephalon, Inc.**
- Gardner H. Palmer, Jr., Esq.
  (401)   632-0911
  ghpalmer@dioriolaw.com

**Insys Therapeutics, Inc.**
- John A. Tarantino, Esq.
  (401)   274-7200
  jtarantino@apslaw.com

**Mallinckrodt, LLC**
- Alden C. Harrington, Esq.
  (401)   273-9600
  harrington@rhf-lawri.com

**McKesson Corporation d/b/a McKesson Drug Company**
- Joseph V. Cavanagh, Jr., Esq.
  831-8900
  jvc@blishcavlaw.com

- Mary C. Dunn, Esq.
  (401)   831-8900
  mcd@blishcavlaw.com

**Purdue Pharma L.P.**
- Matthew T. Oliverio, Esq.
  (401)   861-2900
  mto@om-rilaw.com

**Rhodes, Pharmaceuticals L.P.**
**Rhodes Techologies**
**Rhodes Technologies, Inc.**
- Lawrence G. Cetrulo, Esq.
  (617)   217-5210
  lcetrulo@cetllp.com

- Bryan M. Abramoske, Esq.
  (617)   217-5256
  babramoske@cetllp.com

**Richard S. Sackler**
- Leah L. Miraldi, Esq.
  (401)   337-5700
  lmiraldi@cm-law.com

**SpecGx, LLC**
- Alden C. Harrington, Esq.
  (401)   273-9600
  harrington@rhf-lawri.com

**Teva Pharmaceuticals USA, Inc.**
- Gardner H. Palmer, Jr., Esq.
  (401)   632-0911
  ghpalmer@dioriolaw.com