VERMONT SUPERIOR COURT
CHITTENDEN UNIT
CIVIL DIVISION

STATE OF VERMONT,
 Plaintiff

v.

PURDUE PHARMA L.P., PURDUE
PHARMA INC., and THE PURDUE
FREDERICK COMPANY,
 Defendants

VERMONT SUPERIOR COURT
FILED

Docket No. 757-9-18 Cncv   MAR 1 9 2019

CHITTENDEN UNIT

RULING ON MOTION TO DISMISS

This case is brought by the Vermont Attorney General on behalf of the public, seeking injunctive relief and disgorgement of profits from a manufacturer of opioids.  The complaint asserts violations of the Vermont Consumer Protection Act and creation of a public nuisance. Defendants seek dismissal, arguing that the claims fail because of federal preemption, because the remedies the State seeks are not available, and because there is neither interference with a public right nor adequate causation alleged to support the nuisance claim. At Purdue's request, the court heard oral argument on the motion on March 14.

Discussion

As Purdue's counsel acknowledged at oral argument, Purdue has an uphill battle here in seeking dismissal. The question on a motion such as this is whether "it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." Skaskiw v. Vermont Agency of Agric., 2014 VT 133, ¶ 6, 198 Vt. 187(citation omitted). A court must "assume as true all facts as pleaded in the complaint, accept as true all reasonable inferences that may be derived

Ex. A - Tab 25 - Vermont

from the plaintiff's pleadings, and assume as false all contravening assertions in the defendant's pleadings." Id. The question is "whether the bare allegations of the complaint are sufficient to state a claim." Id.

The gist of the complaint is that over a period of years Defendants (jointly Purdue) have aggressively and misleadingly marketed opioids such as Oxycontin  in Vermont, leading to massive addiction and the resulting societal costs. The State alleges that even after a 2007 consent judgment these acts have continued, and that they have included marketing not just to medical professionals but also to consumers. The complaint seeks injunctive relief to require the termination of such marketing efforts, and disgorgement of profits associated with sales of opioids in Vermont.

The Statute of Limitations Argument

This case was filed in 2018. The parties agree that the statute of limitations is six years, and that the claims were subject to a two-year tolling agreement. The applicable time frame therefore begins in 2010. 12 V.S.A. § 511. Purdue argues that the claims are based on events that occurred prior to 2010 and are therefore barred. Purdue is correct that much of the complaint recites historical information that predates 2010. Nonetheless, it does allege that Purdue has continued to act wrongfully since 2010. *See, e.g.*, Complaint ¶¶ 119-26, 132, 135. It is not time-barred.[1]

Consumer Protection Claims

The complaint asserts, in sum, that Purdue has made material misrepresentations and omissions, engaged in deceptive marketing, and targeted vulnerable patients in the face of

---

[1] Purdue asks that the court order Plaintiff to amend the complaint to drop the pre-2010 allegations. The court sees no need to do so. Recovery at trial will, of course, be limited to 2010 and later, and the evidence at trial can be limited in scope. At least some of the pre-2010 allegations are necessary background to understanding the later claims.

heightened risks to those patients, in violation of the Vermont Consumer Protection Act (CPA), 9 V.S.A. §2453(a). Complaint, Counts I and II.

<u>Preemption</u>

Purdue argues first that these claims are preempted by the federal Food, Drug and Cosmetic Act (FDCA), 21 U.S.C. §§ 301 *et seq.* That argument is based upon the claim that what the State is asserting here is a violation of federal law regarding advertising of medications. Motion at 6. There is a provision in the CPA providing for state law claims based upon violations of the FDCA. *See* 9 V.S.A. § 2466a(c)(1)(It is a violation of the law to advertise in Vermont "if that advertisement does not comply with the requirements concerning . . . prescription drug advertising in federal law and regulations"). Advertisement is broadly defined to include conveying "commercial messages" to health care providers through mail or at conferences or meetings. <u>Id</u>. § 2466a(c)(2)((B). However, a violation of federal law is not what is alleged here: the State does not assert a claim under section 2466a of the CPA. Nor has Purdue presented anything to suggest that by regulating advertising of medications Congress intended to restrict states from enforcing consumer fraud statutes.[2]

The primary case upon which Purdue relies here is <u>Buckman Co. v. Plaintiffs' Legal Comm.</u>, 531 U.S. 341 (2001), and cases following it. However, that case involved a tort claim that a medical device manufacturer's consultant had made false statements to the Federal Food and Drug Administration, and that but for that fraud upon the federal agency the plaintiffs would not have been injured by the device. The Court noted that "the fraud claims exist solely by virtue of

---

[2] Purdue suggests that the general provisions of the CPA cannot apply because they apply only when the deceptive acts are directed at consumers. The court does not read the provisions allowing suit by the Attorney General, as opposed to private parties, to be so narrow. *See* 9 V.S.A. § 2458 and 2453(a)(allowing Attorney General to sue to restrain "unfair or deceptive acts or practices in commerce" when such suit is in the public interest). Moreover, there are allegations that Purdue took acts directed at consumers, such as offering "savings cards" to sell more OxyContin. Complaint ¶¶ 119-126.

the FDCA disclosure requirements," and that "the existence of these federal enactments is a critical element in [Plaintiffs'] case." Id. at 353. That is entirely distinguishable from the claims in this case, which do not rely upon violations of federal law.

Purdue also cites 21 U.S.C. § 337, a section of the FDCA, as a basis for preemption. However, that section says that "all such proceedings for the enforcement, or to restrain violations, of this chapter" must be filed by the United States. This case does not seek enforcement of federal law, or restraint of violations of federal law.

What Purdue argues is that the claims here are really ones under § 2466a(c)(1) of the CPA, even though that is not what the complaint alleges. However, on a motion to dismiss it is what the complaint alleges that matters. The fact that the federal government imposes restrictions on drug advertising does not necessarily mean that the states may not regulate deceptive acts by drug manufacturers and distributors. At least at this stage of the proceedings, the court is not persuaded that federal preemption applies here.

### CPA Remedies

Purdue next argues that the CPA does not provide for the remedies the State seeks here: disgorgement and injunctive relief. To the contrary, the statute grants broad power to fashion relief in consumer protection cases. The statute provides that "the Attorney General . . . may request and the court is authorized to render any . . . temporary or permanent relief . . . as may be in the public interest . . . " 9 V.S.A. § 2458(b). While the statute lists several specific modes of relief, the list is expressly non-exclusive. Id.

### Public Nuisance Claims

The public nuisance claim alleges that Purdue has created, or was a substantial factor in creating, a public nuisance by harming "the health, safety, peace, comfort, or convenience of the

general community." Complaint Count III, ¶ 248. For example, the complaint cites a distortion of the medical standard of care for treatment of chronic pain, high rates of opioid abuse and overdoses, the impact of those events upon Vermont families and communities, and increased costs for health care, emergency services and law enforcement across the state. Id. ¶ 252. It further alleges that these impacts were foreseeable, and could be abated by steps such as education, honest marketing, and addiction treatment. Id. ¶¶ 254-55. Purdue contends that the claim fails because it does not allege interference with any public right, and fails to plead causation.

As to the "public right" argument, Purdue describes the complaint as merely alleging "private injuries to some individuals and subsequent costs to the State." Motion at 14. It points to a recent trial court opinion in which Judge Teachout rejected a public nuisance claim brought in connection with contaminated groundwater. State v. Atlantic Richfield Co., No. 340-6-14 Wncv (July 31, 2018). That decision, says Purdue, stands for the widely-accepted proposition that products liability claims cannot be brought against manufacturers in the guise of public nuisance claims. It may, but this is not a products liability case, and no damages are sought for injuries to individual patients from Purdue's products. More to the point, what the court was concerned with in Atlantic Richfield was the expansion of the statute of limitations, as the State sought to raise claims dating back to 1985 by relying upon the continuing nuisance doctrine. Id. 14-16. It was also concerned that the relief sought by the State would require entry onto private lands of non-parties. Id. at 16-17. Those are not concerns in this case. The court does not find that case to be useful here.

Purdue also argues that nuisance claims should be limited to those relating to land use issues. Some courts have so limited nuisance claims. See, e.g., State ex rel. Jennings v. Purdue Pharma L.P., No. CVN18C01223MMJCCLD, 2019 WL 446382, at *12 (Del. Super. Ct. Feb. 4, 2019) ("There is a clear national trend to limit public nuisance to land use."). Vermont, however,

has not done so, and the Restatement expressly says that "a public nuisance does not necessarily involve interference with use and enjoyment of land." Restatement (Second) of Torts § 821B cmt. h (Westlaw, Oct. 2018 update). Because it is an open issue in Vermont, dismissal on this basis is not appropriate. The court cannot say that "there exist no facts or circumstances that would entitle the plaintiff to relief." Skaskiw, 2014 VT 133, ¶ 6.

A public nuisance is one that affects the general public, rather than solely private parties. State v. Howe Cleaners, 2010 VT 70, ¶¶ 48-52, 188 Vt. 303. The Restatement notes as an example of a public nuisance "conduct [that] involves a significant interference with the public health," and offers as an example the spread of smallpox, risking an epidemic. Restatement (Second) of Torts § 821B and cmt. g. It cannot seriously be argued that the impacts of opiate addiction in Vermont have not affected the general public. If the State can ultimately prove its allegations as to Purdue's responsibility for the widespread nature of this scourge, it will meet the "public" aspect of such a nuisance claim.

As to the issue of causation, Purdue argues that there are too many other factors that contribute to a person becoming addicted to establish that Purdue is responsible for the widespread addiction in Vermont. That may well present a challenge as to the proof at trial, but the only question before the court today is whether the complaint sufficiently alleges causation. It does. It alleges, for example, that Purdue's misrepresentations resulted in a dramatic increase in prescriptions, that those led to increased addiction, that the majority of opioid deaths in Vermont are causally linked to opioid prescriptions, that Purdue created or was a substantial factor in creating the alleged public nuisance, and that all of this was foreseeable to Purdue. Complaint ¶¶ 12-13, 15, 18, 34, 251, 252, 254.

<u>Order</u>

The motion to dismiss is denied. Defendants are directed to file their answers within 14 days, and the parties are directed to submit a discovery schedule within thirty days thereafter or, if agreement cannot be reached, to request a discovery conference.

Dated at Burlington this 18th day of March, 2019.

Helen M. Toor
Superior Court Judge

STATE OF VERMONT

SUPERIOR COURT
Chittenden Unit

CIVIL DIVISION
Docket No. 279-3-19 Cncv

State of Vermont vs. Cardinal Health, Inc. et al

**ENTRY REGARDING MOTION TO DISMISS**

Count 1, Duty to Prevent Misuse, Abuse & Diversion (279-3-19 Cncv)

VERMONT SUPERIOR COURT
FILED

| | |
|---|---|
| Title: | Motion to Dismiss (Motion 4) |
| Filer: | Defendants |
| Attorney: | Jonathan A. Lax et al. |
| Filed Date: | June 17, 2019 |

MAY 1 2 2020

CHITTENDEN UNIT

Opposition filed on 08/01/2019 by Attorney Jill S. Abrams et al. for Plaintiff State of Vermont;
Reply filed on 09/16/2019 by Attorney Jonathan A. Lax et al. for Defendants;
Defendants' Supplemental Brief filed 01/14/2020;
State's Supplemental Brief filed 01/29/2020;
Defendants' Supplemental Reply filed 02/05/2020;
State's Notice of Supplemental Authority filed 02/21/2020

The State brings this case seeking damages and injunctive relief for defendants'
role in distributing opioids in Vermont. Defendants move to dismiss. Oral argument took
place on the motion in December, and post-trial memoranda were complete in February.

Discussion

The complaint asserts four causes of action: two counts of Consumer Protection
Act violations, negligence, and public nuisance. Defendants Cardinal Health, Inc. and
McKesson Corporation (jointly "Distributors") are alleged to be two pharmaceutical
wholesalers that distribute opioids in Vermont. Their motion seeks dismissal of all four
counts of the complaint.

Grant of a motion to dismiss for failure to state a claim "is proper only when it is
beyond doubt that there exist no facts or circumstances[] consistent with the complaint

that would entitle the plaintiff to relief. . . [T]he threshold a plaintiff must cross in order to meet our notice-pleading standard is exceedingly low." Bock v. Gold, 2008 VT 81, ¶ 4, 184 Vt. 575 (quotation and citations omitted). Such motions "are disfavored and should be rarely granted." Id. In analyzing the motion, the court must "assume as true all factual allegations pleaded by the nonmoving party." Amiot v. Ames, 166 Vt. 288, 291 (1997)(citation omitted). In other words, the question is whether Plaintiff could win at trial if the allegations were proved.

## Negligence

The negligence claim is, in sum, that Distributors breached common law and statutory duties to "prevent the diversion of controlled substances into illegitimate channels." Complaint ¶ 386. They are alleged to have breached these duties by creating ineffective monitoring systems, failing to implement adequate anti-diversion programs, failing to report suspicious orders, and failing to prevent shipment of suspicious orders. Id. ¶ 389. This allegedly "fueled the widespread circulation of opioids into illegitimate channels in Vermont," causing or substantially contributing to "the abuse, misuse and diversion" of opioids, leading to widespread addiction and increased costs to the State to address that epidemic. Id. ¶ 390.

The economic loss doctrine bars the State's claim here. With some exceptions, that doctrine "prohibits recovery in tort for purely economic losses." Sutton v. Vermont Reg'l Ctr., 2019 VT 71, ¶ 30. The State argues that the doctrine applies only when there was a contract between the parties. At least one other court has accepted such an argument in a similar case. City of Boston v. Purdue Pharma, LP, No. 1884CV02860, 2020 WL 416406, at *9 (Mass. Super. Jan. 3, 2020)(rejecting economic loss theory because "the claims are not contract-related"). The doctrine, however, is not so limited in Vermont. That is clear

from the Court's recent decision in Sutton. First, the Court quoted an earlier decision for the proposition that "negligence law does not generally recognize a duty to exercise reasonable care to avoid intangible economic loss to another unless one's conduct has inflicted some accompanying physical harm, which does not include economic loss." Sutton, 2019 VT 71, ¶ 30 (quoting Gus' Catering, Inc. v. Menusoft Sys., 171 Vt. 556, 558 (2000) (mem.)). Next, the Court explained that one of the reasons for the doctrine is the very fact that economic injuries can be widespread, "causing economic loss to thousands of people" without a direct connection to the defendant. Sutton, 2019 VT 71, ¶ 32 (quoting Restatement (Third) of Torts § 1 cmt. (c)(1))(noting distinction between impact of badly driven car, causing physical harm only to others nearby, and potential impact of single negligent utterance, causing economic loss to many people who rely on it). As another court has explained, the doctrine "bars recovery for economic loss even if the loss does not arise from a commercial relationship between the parties—even if for example a negligent accident in the Holland Tunnel backs up traffic for hours, imposing cumulatively enormous and readily monetizable costs of delay." Rardin v. T & D Mach. Handling, Inc., 890 F.2d 24, 28 (7th Cir. 1989). Thus, the Court has rejected the argument that the doctrine only applies when the parties have a contract. Long Trail House Condo. Ass'n v. Engelberth Const., Inc., 2012 VT 80, ¶¶ 13-15, 192 Vt. 322 (doctrine does not turn on "whether the parties had the opportunity to allocate risks"); *accord* Aetna Inc. v. Insys Therapeutics, Inc., 324 F. Supp. 3d 541, 556 (E.D. Pa. 2018) under Pennsylvania law, "contractual privity is not a prerequisite for the application of the doctrine").

The State argues that its injuries are not economic losses, but "social losses." Opp. at 21-22. The court is not persuaded. The court has found no cases creating a special legal category of "social loss" distinct from physical or economic damages in tort law. The

quotation the State provides from Dobbs is misleading, as it leaves out a crucial part of the sentence: the quotation is merely a view attributed to Judge Posner,[1] not a statement of the current state of the law or even Dobbs' view of what the law should be. The absence of physical injury here is what matters. The fact that the State's claimed damages are for increased health care costs, law enforcement costs, and addiction treatment costs does not change the analysis. *Accord* Springfield Hydroelectric Co. v. Copp, 172 Vt. 311, 315 (2001)("compensation for the damages [Plaintiffs] were forced to pay to third parties," were barred as solely economic damages.)

There can be exceptions to the economic loss rule when there is a special relationship between the parties. Sutton, 2019 VT 71, ¶ 31. The State argues that it has a "special relationship" with Distributors justifying an exception here. However, the sorts of special professional relationships that are considered as exceptions to this rule are not analogous to the situation here. Such exceptions apply when the defendant is a "provider of a specialized professional service." EBWS, LLC v. Britly Corp., 2007 VT 37, ¶ 32, 181 Vt. 513. Examples are a lawyer-client, investor-recruiter, or doctor-patient relationship. *See* Sachs v. Downs Rachlin Martin PLLC, 2017 VT 100 n. 5, 206 Vt. 157; Sutton, 2019 VT 71, ¶ 33; Walsh v. Cluba, 2015 VT 2, ¶ 30, 198 Vt. 453. The fact that Distributors shipped their product into Vermont, or were subject to statutory requirements, does not create such a special relationship. Although the State argues that its interests are not "disappointed business expectations," but something more important, it is not the magnitude of the harm that determines whether the doctrine applies. Since the injuries alleged by the State are purely economic harms, a negligence claim cannot succeed.

---

[1] Despite the fact that the undersigned was once his student, his views are not always persuasive.

### Public Nuisance

The public nuisance claim is that the defendants' actions contributed to the opioid crisis in Vermont, thereby interfering with the public's right "to be free from [a] substantial injury to public health, safety, peace, comfort, and convenience." Complaint ¶ 396. The State asserts that the public has been harmed in various ways, including increased diversion of opiates, escalating sales of street drugs, higher rates of opioid misuse and addiction, overdose deaths, neonatal abstinence syndrome, increased health care costs and greater demand for law enforcement and treatment of addicted prisoners. Distributors argue that the claim fails because there are insufficient allegations as to any public right, control of the instrumentality, or interference with land, and because the law of public nuisance does not encompass this sort of claim.

First, Distributors contend that the rights at issue here are only private, not public, rights. A public nuisance is "an unreasonable interference with a right common to the general public." Restatement (Second) of Torts § 821B (1979). "Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following: (a) Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience." Id. Thus, historically "public nuisances included interference with the public health, as in the case of keeping diseased animals or the maintenance of a pond breeding malarial mosquitoes." Id. cmt b.

The allegations here include that as a result of Distributors' actions "[p]ublic resources have been, and are being, consumed in efforts to address the opioid epidemic, reducing the available resources that could be used to benefit the public at large." Complaint ¶ 398. The complaint also alleges that Distributors' actions have created

increased diversion of opiates, high rates of opioid "misuse, abuse, injury, overdose , and death, and their impact on Vermont families and communities," as well as "[i]increased health care costs for individuals, families, employers, and the State." Id. ¶ 397. While the proof of such claims may be challenging, they adequately allege "a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience." Restatement, § 821B. While the impacts upon those who became addicted to the drugs distributed by Defendants are individual, the broader effects upon the public health system, law enforcement and the prison system are impacts shared by the public at large. The State does not allege interference with the individual opiate user's right to be "free from an allegedly harmful product"—Motion at 20—but with the community's right to adequate police protection, health care, and the safety of its citizens.

Distributors argue that this is just not what nuisance law is designed to address. They point to a recently adopted Restatement provision addressing claims for harm to public resources. Restatement (Third) of Torts: Liability for Econ. Harm § 8 (2019). That provides for liability for harm to a public resource "if the claimant's losses are distinct in kind from those suffered by members of the affected community in general," and notes as follows:

> Tort suits seeking to recover for public nuisance have occasionally been brought against the makers of products that have caused harm, such as tobacco, firearms, and lead paint. These cases vary in the theory of damages on which they seek recovery, but often involve claims for economic losses the plaintiffs have suffered on account of the defendant's activities; they may include the costs of removing lead paint, for example, or of providing health care to those injured by smoking cigarettes. Liability on such theories has been rejected by most courts, and is excluded by this Section, because the common law of public nuisance is an inapt vehicle for addressing the conduct at issue. Mass harms caused by dangerous products are better addressed through the law of products liability, which has been developed and refined with

> sensitivity to the various policies at stake. Claims for
> reimbursement of expenses made necessary by a defendant's
> products might also be addressed by the law of warranty or
> restitution. If those bodies of law do not supply adequate
> remedies or deterrence, the best response is to address the
> problems at issue through legislation that can account for all
> the affected interests.

Id. cmt g. The State responds that this provision of the Restatement (which was first proposed in 2014 and only recently finalized)[2] is not binding on the court, does not adequately address claims brought by states as opposed to private entities, and overlooks developing caselaw in this area in recent years.

The State is correct that the court is not required to follow the Restatement. Although our Supreme Court has often done so with select provisions, unless and until it adopts this provision, the trial courts are not bound to do so. Restatements are, however, often persuasive authority to which this court frequently looks for guidance as to the majority view on issues not directly resolved by Vermont case law.

The State is also correct that there are a number of recent trial court cases from around the country that reach conclusions contrary to this newly adopted Restatement provision. This is unsurprising, given that the opioid epidemic has swept the country in recent years and led to a spate of lawsuits seeking to address its dire impacts. Distributors note that those are trial court decisions, not controlling higher court rulings, but that is how the law develops: from the bottom up. The question here is not whether either those decisions or the Restatement provision are controlling here: they are not. The question is how persuasive they are.

---

[2] The note on Westlaw indicating it was a tentative draft not yet adopted disappeared sometime between October and today. *See also*, The ALI Advisor, Restatement of the Law Third, Torts: Liability for Economic Harm Approved (May 21, 2018).

The point made by Section 8 of the Restatement is that there are other ways, such as product liability or breach of warranty suits, to address "[m]ass harms caused by dangerous products." Id. That analysis addresses claims by plaintiffs who purchased a product, such as tobacco smokers or opiate users, but does not account for the kinds of harms the State seeks to remedy here: losses incurred by the public as a whole, such as increased costs for public services and health care. The Restatement itself seems to recognize this, noting: "In addition to the common-law claims recognized here, public officials may bring civil or criminal actions against a defendant who creates a public nuisance. An action of that type is the most common response to a defendant's invasion of a public right." Id. cmt b; *see also*, Restatement (Second) of Torts § 821C (1979) (referring to courts' "belief that to avoid multiplicity of actions invasions of rights common to all of the public should be left to be remedied by action by public officials."). Moreover, as the State notes, it is not asserting that the product itself was unreasonably dangerous. Instead, it bases its claims on Distributors' marketing and distribution practices. A products liability or warranty claim would not address these issues.

The focus of the Restatement provision appears to be on the impact of allowing a multiplicity of suits by people or entities who incurred losses as a result of a manufacturer's product. Allowing the State to bring one action does not create such a problem.

Distributors also argue that the State cannot show that they had control over the instrumentalities at the time of the harm, because they relinquished control of the drugs prior to the time the drugs were used. The complaint alleges: "Defendants controlled the instrumentalities of the nuisance: distribution channels that moved prescription opioids from manufacturers to pharmacies in the State and the systems (or lack thereof) for

monitoring and identifying suspicious orders of prescription opioids and the protocols for halting, investigating, and reporting those orders." Complaint ¶ 399. It may be that the State will not ultimately be able to prove that the distribution channels created the harm here, but that is an issue for trial or summary judgment. Under Vermont's generous pleading rules, although somewhat conclusory, this is sufficient. In any case, although Distributors cite numerous out-of-state authorities, the only Vermont case they cite is not on point. Although it discussed the idea of control, it addressed an entirely different situation in which the defendant railroad was in the hands of a receiver and thus not liable for the receiver's actions. State v. Vermont Cent. R. Co., 30 Vt. 108, 110 (1858). Moreover, the State accurately points to language in the Second Restatement suggesting that a defendant may be held liable for harm that continues after that defendant's actions have ceased, and that "substantial participation" in a chain of actions can be sufficient. Restatement (Second) of Torts § 834 (1979). For purposes of a motion to dismiss, the pleading is sufficient.

Finally, Distributors argue that "licensed distribution of a lawful product" cannot be a nuisance, that nuisance is historically a remedy for harms to property, and that the national trend is to limit such claims to impacts on land. However, the Vermont case they cite does not so limit the doctrine. Napro Dev. Corp. v. Town of Berlin, 135 Vt. 353, 357 (1977). While the Court noted that originally nuisance began "as a tort against land," it described *public* nuisance as developing as a "second similar yet distinct principal." Id. The Court went on to discuss at length whether obscenity could be a nuisance, clearly demonstrating that the question was not simply whether the harm was to land. Other authorities make clear that "a public nuisance does not necessarily involve interference with use and enjoyment of land." Restatement (Second) of Torts, § 821B (1979); *see also*

9

58 Am.Jur.2d *Nuisances* § 31, at 592 (2002)("A public nuisance, unlike a private nuisance, does not necessarily involve an interference with the use and enjoyment of land, or an invasion of another's interest in the private use and enjoyment of land, but encompasses any unreasonable interference with a right common to the general public.").

The court is also not persuaded that "distribution of a lawful product" can never be a public nuisance. Airports are lawful and regulated enterprises, but can be the source of a nuisance claim. In re Request for Jurisdictional Opinion re Changes in Physical Structures & Use at Burlington Int'l Airport for F-35A, 2015 VT 41, ¶ 36, 198 Vt. 510 (Morse, J., concurring)("Here, the right is to be free from the assault of ear-splitting noise generated by jet aircraft."); *accord* Gardiner v. Conservation Comm'n of Town of Waterford, 608 A.2d 672, 676 (Conn. 1992) (it has been clear for over 100 years that unreasonable conduct of "an otherwise lawful activity" can be a nuisance)(citation omitted); Krueger v. Mitchell, 332 N.W.2d 733, 741 (Wis. 1983)("It is well established that a business or activity may constitute a private nuisance even though it is operating in conformity with the law.").

Vermont case law does not resolve the exact scope of public nuisance law, and the State's claim here has no direct precedent. Thankfully, the opiate epidemic is somewhat sui generis. As counterintuitive as it sounds, "courts should be especially reluctant to dismiss on the basis of pleadings when the asserted theory of liability is novel or extreme." Ass'n of Haystack Prop. Owners, Inc. v. Sprague, 145 Vt. 443, 447 (1985). "The legal theory of a case should be explored in the light of facts as developed by the evidence, and, generally, not dismissed before trial because of the mere novelty of the allegations." Id. Thus, at this stage of the case, the State meets its burden.

10

### Derivative Injury

Distributors next argue that the State's common law claims—now reduced to the nuisance claim—are barred because the State's injuries are "derivative." While this might be an issue with the negligence claim, depending upon the damages sought, the court is dismissing that claim. As to the nuisance claim, the argument fails. The cases Distributors cite involve claims to recover the medical expenses or other costs incurred by parties other than the plaintiff. The only Vermont case they cite—a colorful one, though outdated in at least some respects—said only that "a third person suffers an indirect and consequential loss because of some *contract obligation* to the injured party, the loss suffered by such third person does not constitute a cause of action." Nieberg v. Cohen, 88 Vt. 281, 287 (1914)(emphasis added). In fact, the case goes on to note that there are other claims that can be brought when an injury to one person impacts another, such as the loss of a spouse's services when they are injured. Id. Distributors cite nothing to suggest that this doctrine is relevant to a nuisance claim.

In any case, the State does not assert some consequential injury: it seeks injunctive relief and damages "as compensation for funds the State has already used to abate the nuisance." Complaint p. 124, ¶ F. That is a direct claim by the State, not a derivative one.

### Free Public Services Doctrine

The last argument Distributors raise with regard to the common law claims is that the costs of public services such as police or public health care services are "to be borne by the public as a whole, not assessed against the tortfeasor whose negligence creates the need for the service." District of Columbia v. Air Fla., Inc., 750 F. 2d 1077, 1080 (D.C. Cir. 1984). This is known as the "free public services doctrine" or the "municipal cost recovery rule." While there are numerous jurisdictions that have adopted such a doctrine, Vermont

has not. In any case, the doctrine does not appear to apply to public nuisance claims. *See,*
*e.g.,* In re Opioid Litigation, No. 400000/2017, 2018 WL 3115102, at *10 (N.Y. Sup. Ct.
June 18, 2018)("The municipal cost recovery rule, however, does not bar a cause of action
for public nuisance."); City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co., 719 F.2d
322, 324 (9th Cir. 1983)(rule does not apply "where the acts of a private party create a
public nuisance which the government seeks to abate").

Other courts in cases similar to this one have held that the doctrine is inapplicable
to a pattern of conduct rather than a one-time catastrophic event. *See, e.g.,* State ex rel.
Jennings v. Purdue Pharma L.P., No. CVN18 C01223MMJCCLD, 2019 WL 446382, at *6
(Del. Super. Ct. Feb. 4, 2019). "The current trend among state court judges ruling in
opioid-related cases around the country is that the municipal cost recovery rule does not
apply when, as alleged here, an ongoing and persistent course of intentional misconduct
creates an unprecedented, man-made crisis that a governmental entity plaintiff could not
have reasonably anticipated as part of its normal operating budget. . ." In re Nat'l
Prescription Opiate Litig., No. 1:17-MD-2804, 2019 WL 3737023, at *8 (N.D. Ohio June
13, 2019); *see also* In re Opioid Litigation, No. 400000/2017, 2018 WL 3115102, at *10
(N.Y. Sup. Ct. June 18, 2018)(quotation omitted)("[A] review of the current state of the
law revealed no case law supporting the manufacturer defendants' contention that such
rule bars recovery for municipal expenses incurred, not by reason of an accident or an
emergency situation necessitating the normal provision of police, fire and emergency
services but to remedy public harm caused by an intentional, persistent course of
deceptive conduct.").

It is far from clear that our Supreme Court would apply the doctrine here. Absent
a ruling from our Supreme Court requiring application of the municipal cost recovery

doctrine, this court cannot say that it is "beyond doubt that there exist no facts or circumstances[] consistent with the complaint that would entitle the plaintiff to relief." Bock v. Gold, 2008 VT 81, ¶ 4.

## Consumer Protection

There are two consumer protection claims asserted under the Vermont Consumer Protection Act, 9 V.S.A. § 2451 et seq (the Act). The first claim alleges unfair acts in commerce by Defendants in transporting and selling opiates while failing to comply with statutory duties to detect, prevent, and report diversion; improperly advertising and promoting opioids to increase sales; and providing "Savings Cards" to encourage long-term use of opioids. Complaint ¶ 376. The second alleges deceptive trade practices by Defendants in making and disseminating misleading statements about the risks and benefits of opioids, and in omitting or concealing material facts, thereby misleading prescribers and pharmacists. Id. ¶¶ 381-83. Distributors argue that these claims cannot succeed because they fail  to allege any act in commerce, any deceptive practice, or any unfair practice.

The first argument is that the wholesaling of opioids to pharmacies is not covered because it does not involve marketing to consumers, and is thus not "in commerce." The Act "is designed not merely to compensate consumers for actual monetary losses resulting from fraudulent or deceptive practices in the marketplace, but more broadly to protect citizens from unfair or deceptive acts in commerce . . . and to encourage a commercial environment highlighted by integrity and fairness." Anderson v. Johnson, 2011 VT 17, ¶ 7, 189 Vt. 603 (quotations and citations omitted). It is to be interpreted broadly in favor of protecting consumers. Carter v. Gugliuzzi,  168 Vt. 48, 52 (1998). The law permits claims not only against direct sellers, but also against "other violators." 9 V.S.A. § 2461(b).

Our Supreme Court has thus allowed claims to be brought against manufacturers who had no direct contact with the consumers. Elkins v. Microsoft Corp., 174 Vt. 328, 331 (2002). There is no privity requirement. Id. Distributors cannot defeat this claim merely by saying they did not sell opioids directly to consumers. The Foti Fuels case on which they rely is not on point: it addressed a one-time business transaction the court described as a "purely private transaction" that was  not part of a "consumer marketplace." Foti Fuels, Inc. v. Kurrle Corp., 2013 VT 111, ¶ 24, 195 Vt. 524.

Distributors next argue that the "deceptive act" claim must fail because they were merely disseminating the drug companies' materials, made no false statements, and did nothing likely to mislead consumers. The complaint, however, alleges that they did more. It includes allegations that they proposed deceptive marketing tactics and strategies, and that they knew or should have known the marketing was deceptive.  Complaint ¶¶ 196, 198, 231, 237-42, 272, 381-83.  Nor is the State required to allege that specific consumers were misled. The statute allows the Attorney General to sue when a defendant "is using *or is about to use*" any deceptive or unfair practice. 9 V.S.A. § 2458(a) (emphasis added). The Act thus does not require proof of the ultimate impact on a particular consumer, just a likelihood that consumers will be misled. In any case, the complaint alleges that Distributors marketed to pharmacists for the express purpose of influencing consumers, as well as by distributing "Savings Cards" for use by consumers, and that their misrepresentations were interpreted reasonably.  Complaint, ¶¶ 194-200, 241-42, 272-80, 283, 383.

Finally, Distributors argue that the allegations are insufficient because they do not satisfy the three requirements necessary to determine whether a practice is unfair: (1) whether it "offends public policy," (2) whether it is "immoral, unethical, oppressive, or

14

unscrupulous," and (3) whether it "causes substantial injury to consumers." Christie v. Dalmig, Inc., 136 Vt. 597, 601 (1979), quoting F.T.C. v. Sperry & Hutchinson Co., 405 U.S. 233, 244 n.5 (1972). This court recently concluded that the three criteria are independent, and one is therefore sufficient. See State v. Big Brother Security Programs, No. 326-4-20 Cncv (April 26, 2020)(Toor, J.). If the allegations here are proved—transporting and selling opiates while failing to comply with statutory duties to detect, prevent, and report diversion; improperly and deceptively advertising and promoting opioids to increase sales; and providing "Savings Cards" to encourage long-term use of opioids—they would certainly be sufficient for a jury to conclude that they were immoral and unethical.

## Order

Defendants' motion to dismiss is granted as to the negligence claim, but otherwise denied. Answers shall be filed within 14 days pursuant to V.R.C.P. 12(a)(3); a discovery schedule shall be filed within 30 days thereafter pursuant to V.R.C.P. 16.3(b).

Electronically signed on May 12, 2020 at 03:36 PM pursuant to V.R.E.F. 7(d).

Helen M. Toor

Superior Court Judge

Notifications:
Jill S. Abrams (ERN 5583), Attorney for Plaintiff State of Vermont
Jonathan A. Lax (ERN 5316), Attorney for Defendant Cardinal Health, Inc.
Geoffrey J. Vitt (ERN 1787), Attorney for Defendant McKesson Corporation
Betsy A. Miller (ERN 10006), Attorney for party 1 Co-Counsel
Victoria S. Nugent (ERN 10008), Attorney for party 1 Co-Counsel
Johanna M Hickman (ERN 10007), Attorney for party 1 Co-Counsel
Maya Sequeira (ERN 10045), Attorney for party 1 Co-Counsel
Carolyn G. Anderson (ERN 9968), Attorney for party 1 Co-Counsel
June P. Hoidal (ERN 9969), Attorney for party 1 Co-Counsel

15

Behdad C. Sadeghi (ERN 10405), Attorney for party 1 Co-Counsel
Neil K. Roman (ERN 10483), Attorney for party 3 Co-Counsel
Marianne Kies (ERN 10560), Attorney for party 3 Co-Counsel
Claire C. Dean (ERN 10931), Attorney for party 3 Co-Counsel
Juli Ann Lund (ERN 10930), Attorney for party 2 Co-Counsel