# EXHIBIT B
## EXCERPT FROM PLAINTIFFS' SUPPLEMENTAL FEDERAL RULE CIVIL PROCEDURE 26(a)(2)(C) DISCLOSURES

Ex 1 – Plaintiffs' Supplemental Federal Rule Civil Procedure 26(a)(2)(C) Disclosures

Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Exclude Undisclosed Expert Testimony from Non-Retained Expert Witnesses

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| CITY OF HUNTINGTON,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*,<br><br>    Defendants. | Civil Action No. 3:17-cv-01362 |
| CABELL COUNTY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*,<br><br>    Defendants. | *Consolidated case:*<br>Civil Action No. 3:17-01665<br><br>Hon. David A. Faber |

**PLAINTIFFS' SUPPLEMENTAL FEDERAL RULE CIVIL
PROCEDURE 26(a)(2)(C) DISCLOSURES**

Pursuant to Federal Rule of Civil Procedure 26, the City of Huntington and the Cabell County Commission, "Plaintiffs," hereby supplement their Federal Rule Civil Procedure 26(a)(2)(C) disclosures [*See* Dkt. 825]. As previously disclosed, the following witnesses are expected to testify as to their respective backgrounds, training and professional observations and experiences; these witnesses may offer both fact and expert testimony in accordance with the facts and opinions set forth in

their deposition testimony.[1] By providing this supplemental disclosure, Plaintiffs do not concede that the summary of the testimony implicates opinions required to be disclosed under Rule 26(a)(2)(A) as opposed to opinions governed by Federal Rule of Evidence 701.[2] The opinions are summarized as follows:

---

[1] These witnesses were initially disclosed on Plaintiffs' Preliminary Witness list filed on June 3, 2020 (Dkt. 503). Furthermore, the Defendants served subpoenas regarding all of these witnesses, either directly or through their employers. See e.g. Dkt. 340.1, 354.1, 449.1, 450.1, 903.1. Additionally, these witnesses were identified in the Plaintiffs' previous disclosures as witnesses that might be called as Fed. R. Civ. Pr. 26(a)(2)(C) witnesses. (See Dkt. 825 and 1055.1).

[2] Plaintiffs withdraw their identification of the following witness as Rule 26(a)(2)(C) witnesses: Hank Dial; Skip Holbrook; Robert Hansen, MS; Zachary Hansen, M.D.; Rocky Johnson; Scott Lemley; Jan Rader; Gordon Merry; Steve Murray; Connie Priddy; Chuck Zerkle; Allen Mock and Mitzi Payne. Plaintiffs may call these witnesses as fact witnesses and may seek opinion testimony from them that falls within Federal Rule of Evidence 701.

## C. Rahul Gupta, M.D., MPH, MBA, FACP

Dr. Rahul Gupta served as the commissioner and state health officer for West Virginia from 2015-2018.[27] Under his tenure and at his direction, Dr. Gupta ordered a number of reports, including a historical overview report tracking West Virginia's opioid crisis from 2000 to 2015 and a 2016 overdose fatality analysis in West Virginia.[28] Dr. Gupta will present evidence and provide testimony on the subject matter of opioid addiction, diversion, the nature of the opioid epidemic and its effects in Cabell County and the City of Huntington, based on his personal knowledge and experience, and in conformance with the facts and opinions expressed during his deposition, as summarized below:

- Opiate prescription drugs, their volume, and the consequential addiction and other diseases associated with OUD rose by thousands of percent over a decade[29];

- The amount of appropriate prescriptions was dwarfed by the amount of inappropriate prescriptions that were being diverted[30];

---

[27] *See* Dkt. 1055-1, at 6. Dr. Gupta is a practicing internist with 25 years of clinical experience. *Id.* Dr. Gupta has authored more than 125 peer-reviewed scientific publications in medicine and public health and served as a principal investigator for numerous well-known clinical trials. *Id.* Dr. Gupta is a national and global leader in transforming public health practice to advance health equity and create healthier communities. *Id.* at 7. In 2017, Dr. Gupta was named West Virginian of the Year for his work towards battling the opioid epidemic by the Pulitzer prize-winning Charleston Gazette-Mail. *Id.*

[28] Gupta Depo. Tr. at 96:6-10, attached as Ex. C. *See also id.* at 182:7-183:14 (introducing the West Virginia Drug Overdose Deaths Historical Overview 2001-2015 report as exhibit); *See id* at 183:22-184:17 (introducing the 2016 West Virginia Overdose Fatality Analysis report as exhibit).

[29] *Id.* at 324:17-325:2.

[30] *Id.* at 150:12-151:5.

7

(3) • There is a direct correlation between diverted prescription pills and the transition to using street drugs such as heroin, fentanyl, methamphetamine, etc.[31];

(4) • Once an addiction is formed, an individual struggling with addition will obtain the addictive substance by any means necessary, which often results in illegal activity and the use of illegal substances[32];

(5) • The IV drug use problem in Cabell County and the City of Huntington is an evolution of the prescription drug problem[33];

(6) • The HIV outbreak in Cabell County, as a result of IV drug use, is the second largest in the nation's history[34];

(7) • In Cabell County and the City of Huntington, the consequences of the oversupply and over-availability of prescription opioids has led to overdose deaths, and, more generally, communal suffering and devastating carnage[35];

(8) • The opioid epidemic has led to an increase in the number of children entering the foster care system, rapidly increasing child welfare costs to the state[36];

(9) • The opioid epidemic is a transgenerational crisis[37];

(10) • Because of the overwhelming number of overdose deaths in 2015, there was a need in West Virginia for air-conditioned trailers to house the bodies of those who had overdosed[38];

(11) • Although there was a 15-20% reduction in opioid prescriptions in 2015 and 2016, there was no reduction in overdose deaths because the addiction had already been formed, and people with opioid use disorder

---

[31] *Id.* at 166:4-13.

[32] *Id.* at 105:1-18.

[33] *Id.* at 161:14-165:18.

[34] *Id.* at 97:2-13.

[35] *Id.* at 22:5-24.

[36] *Id.* at 45:3-11.

[37] *Id.* at 44:22-45:24.

[38] *Id.* at 131:1-21.

8

were turning to illicit, more lethal forms to feed their addictions that was initially formed by prescription opioids[39];

(12) • The increase in overdose deaths in West Virginia during that time was caused by the large volume of opioid pills that were originally deposited or delivered to West Virginia[40];

(13) • In 2016, a significant amount of the people who died from an overdose had filled a prescription within 30 days prior to their death[41];

(14) • Of the people who were incarcerated, released and subsequently died, the majority died of an overdose[42];

(15) • In 2016, it was found that those overdose decedents who went to three or more pharmacies to fill prescriptions were 70 times more likely to have died[43];

(16) • Three out of the four people that died of an overdose in 2016 tried to seek help within the year before their time of death[44];

(17) • NAS babies are a causative issue in terms of the opioid epidemic[45];

(18) • The overwhelming volume that was reaching the people of West Virginia was plainly involved in the killing of West Virginians every 12 hours around the clock[46];

(19) • Addiction tells people to seek opioids in one form, shape or other[47];

---

[39] *Id.* at 162:1-165:18.

[40] *Id.* at 167:24-168:8.

[41] *Id.* at 126:3-8.

[42] *Id.* at 126:3-14.

[43] *Id.* at 248:12-21.

[44] *Id.* at 126:9-14.

[45] *Id.* at 168:8-11.

[46] *Id.* at 43:6-11.

[47] *Id.* at 154:14-22.

9

- Chemically speaking, synthetic opioids, semi-synthetic opioids and prescription opioids work through the same receptors and feed the same need to the body[48];

- Children diagnosed with at birth have noticeable difficulties learning and paying attention[49]; and

- As children with NAS enter the classroom, there will be noticeable, interruptive and impulsive behavioral issues.[50]

### D. Michael Kilkenny, M.D., MS

Dr. Michael Kilkenny is Board Certified in Family Practice and has worked in academic, hospital, and private practice settings.[51] Dr. Kilkenny has 16 years of experience as a medical director in the Community Health Center system and is currently the Physician Director of the Cabell-Huntington Health Department, serving Cabell County and the city of Huntington, WV.[52] Dr. Kilkenny was instrumental in the development of West Virginia's first local health sponsored harm reduction and syringe exchange program in 2015.[53] He has also published various articles concerning opioid injection use in West Virginia.

Dr. Kilkenny will present evidence and provide testimony on the subject matter of opioid addiction and the opioid epidemic in Cabell County and the City of

---

[48] *Id.* at 176:18-177:19.

[49] *Id.* at 168:13- 172:22.

[50] *Id.* at 171:7-18.

[51] *See* 1055.1 at 11.

[52] *Id.*

[53] *Id.* Dr. Kilkenny currently serves on several advisory panels for the West Virginia Department of Health and Human Resources, Bureau for Public Health. *Id.* He is a member of the Harm Reduction Coalition and serves on the advisory panels for the Governor's Advisory Council on Substance Abuse, Prevention and Treatment. *Id.*

10