IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>    Defendants. | Civil Action No. 3:17-01362 |
| CABELL COUNTY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>    Defendants. | Civil Action No. 3:17-01665 |

**MCKESSON CORPORATION'S MOTION
TO PROHIBIT PLAINTIFFS' IMPROPER USE OF TESTIMONY
<u>OF MCKESSON WITNESS NATHAN HARTLE</u>**

Plaintiffs have designated over an hour of Nathan Hartle's deposition testimony to present at trial as the binding Rule 30(b)(6) testimony of McKesson. The designated testimony consists almost entirely of impermissible questioning by counsel asking Mr. Hartle to (i) opine on questions of law, (ii) offer impermissible lay expert testimony, or (iii) offer opinions based on speculation, hearsay, or both. Further, although Mr. Hartle was deposed on certain topics as McKesson's corporate representative in the federal multidistrict litigation ("MDL"), MDL Plaintiffs' counsel (led by Mr. Farrell) spent the majority of the deposition badgering the witness and asking questions well outside the scope of Mr. Hartle's agreed-upon Rule 30(b)(6) topics.

Accordingly, McKesson hereby requests that the Court enter an order excluding Mr. Hartle's testimony to the extent described below.[1] At minimum, because the vast majority of Mr. Hartle's testimony was far outside the scope of the topics on which he was designated as McKesson's corporate representative, Plaintiffs should be prohibited from presenting the testimony as the testimony of McKesson.

## BACKGROUND

As part of the litigation brought by two Ohio counties (Summit County and, together with Cuyahoga County, the "MDL Plaintiffs") in the federal MDL, McKesson designated Mr. Hartle as its corporate representative for a limited number of deposition topics. Each of those topics, as well as McKesson's responses and objections thereto, is set forth verbatim in Appendix A. As that Appendix makes clear, the scope of Mr. Hartle's testimony was limited to information concerning McKesson's regulatory affairs program (*i.e.*, its Controlled Substance Monitoring Program) and/or orders placed by pharmacies in Summit and Cuyahoga Counties during the period from "1995 to the present." *See* Appx. A; *see also* Ex. 1 (MDL Plaintiffs' First 30(b)(6) Deposition Notice) at 5; Ex. 2 (MDL Plaintiffs' Second 30(b)(6) Deposition Notice) at 4.[2]

Rather than seek testimony on these topics, counsel for MDL Plaintiffs (who also represents Plaintiff Cabell County in this action) badgered Mr. Hartle with numerous wasteful, abusive, and out-of-scope questions that required specialized information far outside Mr. Hartle's

---

[1] A chart setting forth McKesson's objections to Plaintiffs' Hartle designations, and the grounds therefore, is attached hereto as Appendix B. It does not list the portions of Plaintiffs' Hartle designations to which McKesson does not object.

[2] McKesson designated Mr. Nathan Hartle as the corporate designee for Topic 1 of the MDL Plaintiffs' First 30(b)(6) Deposition Notice and for Topics 9, 14, and 16–22 of MDL Plaintiffs' Second 30(b)(6) Deposition Notice. *See* Ex. 3 (N. Hartle July 31, 2018 Tr.) at 16:16–17:25 (identifying topics of designation).

personal knowledge. For example, Mr. Farrell repeatedly asked Mr. Hartle to offer legal conclusions, including asking whether McKesson "acknowledge[s] that the shipping requirement is a duty it owes under the United States Code and the Code of Federal Regulations." Ex. 3 (N. Hartle July 31, 2018 Tr.) at 38:14–17.[3] Mr. Farrell also asked Mr. Hartle to "acknowledge that abuse of prescription opium pills is a gateway to the initiation of heroin," *id.* at 320:14–17—a complex topic that is the subject of heated expert debate in this litigation.[4] And counsel asked Mr. Hartle repetitive and abusive questions about whether "McKesson Corporation accept[s] partial responsibility for the societal costs of prescription drug abuse in America." *E.g.*, *id.* at 285:12–15. Indeed, Mr. Farrell asked Mr. Hartle this question at least six times, badgering Mr. Hartle to change his answer despite the out-of-scope questioning.[5]

In short, Plaintiffs' deposition designations consist almost entirely of the inadmissible questioning like that described above. All such testimony should be excluded.

---

[3] A copy of Mr. Hartle's July 31, 2018 deposition transcript is attached as Exhibit 3. Plaintiffs' designations are marked in red and the portions to which McKesson objects are highlighted in yellow. *See* Ex. 3.

[4] *See also* Ex. 3 at 320:25–321:6 ("If you abuse prescription opiates, the CDC says that you're 40 times more likely to initiate heroin use. Does McKesson acknowledge that—that prescription opiate pill abuse is a driving factor in the heroin epidemic we're also experiencing?").

[5] *See* Ex. 3 at 280:21–283:6 (repeatedly answering that it would "depend[]"); *id.* at 283:25–284:4 ("You're sitting here today. You have the opportunity to look in the camera and tell the jury whether or not you accept partial responsibility for the societal costs of prescription drug abuse in America."); *id.* at 284:8–17 ("I'd ask you to answer yes or no. A. I'm not sure how to answer that – that question specifically. Q. Well, you can say yes or … you can say no."); *id.* at 285:6–15 ("Well, back to McKesson Corporation, which is you sitting in the chair today. Knowing what you know as the 30(b)(6) representative, the corporate designee, knowing about your past conduct, knowing about the past interactions with the DEA, I'm going to ask you again: Does McKesson Corporation accept partial responsibility for the societal costs of prescription drug abuse in America?"); *id.* at 286:5–12 ("Sir, we're not going to parse our percentages. …. So I don't want to put words in your mouth because it's got to come out of your mouth. So the answer is yes or no."). Although Plaintiffs did not designate Mr. Hartle's multiple initial responses of "it depends" or counsel's badgering follow-up questions, they *have* designated Mr. Hartle's eventual response capitulating to counsel's badgering questioning.

Moreover, Plaintiffs' counsel have indicated that they intend to offer this testimony as the binding testimony of McKesson, despite the fact that the vast majority of the questioning was well outside the scope of the agreed-upon 30(b)(6) topics. Even if such testimony were admissible (and little of it is), the Court should preclude Plaintiffs from offering it as the testimony of McKesson's corporate representative.

## ARGUMENT

### I. The Court Should Exclude Mr. Hartle's Testimony That Calls for Lay Expert Testimony or Legal Conclusions or Was Based on Speculation or Hearsay.

The majority of Plaintiffs' deposition designations for Mr. Hartle consists of questioning that is impermissible and objectionable on multiple grounds. In particular, Plaintiffs' counsel asked Mr. Hartle to (i) opine on legal conclusions reserved for the Court's determination, (ii) offer impermissible lay expert testimony, and (iii) opine based on speculation, hearsay, or both. For these reasons, the vast majority of Mr. Hartle's designated testimony is inadmissible. *See* Appx. B.

***MDL Plaintiffs' questioning called for Mr. Hartle improperly to opine on issues of law.*** The deposition testimony designated by Plaintiffs features Mr. Farrell repeatedly calling for Mr. Hartle to offer impermissible legal conclusions, including on the requirements of the Controlled Substances Act and the existence of legal duties. Such "opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006); *see also United States v. Purpera*, No. 19-4158, 2021 WL 406305, at *8 (4th Cir. Feb. 5, 2021) ("It is generally an abuse of discretion for the district court to admit 'opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts.'"). A question calls for an improper legal conclusion if the question's terms "have a separate, distinct and specialized meaning in the law different from that present in the vernacular." *McIver*, 470 F.3d at 562.

As Plaintiffs themselves previously explained, impermissible questioning of this type should be excluded. Because McKesson's alleged legal duties and obligations "[are] pure question[s] of law, [Mr. Hartle's] testimony on this issue—whether as [McKesson's] Rule 30(b)(6) designee or otherwise—is neither relevant nor admissible evidence."[6] Indeed, the Court has already found that testimony purporting to opine on the law is inadmissible because "the court is capable of understanding the law at issue" without assistance from witnesses. Mem. Op. and Order (Dkt. No. 1269) at 5.[7] The reasoning behind this prohibition on *expert* legal opinion applies with equal or greater force to questions posed to a lay witness unqualified to opine on legal issues— particularly where, as here, counsel repeatedly called for the witness to speculate on legal opinions outside the witness's knowledge and badgered him until he would do so.[8]

Throughout Mr. Hartle's deposition, counsel repeatedly and abusively sought his opinion regarding questions of law. Some of the many examples of such improper questioning that Plaintiffs have designated for use at trial include:

- "Does McKesson acknowledge that the shipping requirement is a duty it owes under the United States Code and the Code of Federal Regulations?" Ex. 3 at 38:14–17.

---

[6] Plaintiffs' Opp. to Defendants' Mot. for Summary Judgment (Dkt. No. 1083) at 13–14.

[7] See also *see also* Mem. Op. and Order (Dkt. No. 1285) at 5 ("The court agrees with Cabell that defendants cannot rely on deposition testimony to establish a lack of authority because the scope of Cabell's authority is a legal question.").

[8] Counsel's questioning was repeatedly followed by argumentative and badgering commentary towards the witness prior to permitting him and opportunity to respond. *See, e.g.* Ex. 3 at 325:5– 11 ("Haven't we agreed that it's been a duty since 1971? . . . . *Tough position to defend, isn't it?*") (emphasis added); *id.* at 329:10–15 ("So your position today is McKesson does not have a duty to investigate and halt suspicious orders? . . . . *You're in a tough spot here.*") (emphasis added); *id.* at 331:12–332:1 ("This appears to say that McKesson does not have a duty to engage in due diligence, nor does it need to avoid filling suspicious orders. Is that your position sitting here today? . . . *You can't make me,' is that the position McKesson is taking? . . . I promise I'll quit if you just simply say that this position here is nonsense.*") (emphasis added). Although Plaintiffs have not designated these sections, this badgering and harassing questioning poisoned the other aspects of Mr. Hartle's testimony.

- "[I]s this an accurate statement of the law?" *Id.* at 165:18–19.

- "This is an accurate statement of federal law from the DEA to McKesson, agreed?" *Id.* at 251:3–5.

- "'A distributor has a statutory responsibility to exercise due diligence to avoid filling suspicious orders.' Agreed?" *Id.* at 197:14–18.

- "That is the law?" *Id.* at 198:13.

- "The shipping requirement and the reporting requirement as outlined in the Masters Pharmaceutical case is and always has been the law in the United States of America?" *Id.* at 201:15–18.

- "If you ship more than 8,000 pills without conducting due diligence, McKesson is engaging in unlawful conduct according to federal law?" *Id.* at 213:16–19.

- "This is the same thing the DC Circuit Court of Appeals said in 2017, agreed?" *Id.* at 251:9–11.

All such questioning, which necessarily requires the witness to opine on legal questions, is inadmissible. And that remains so even if the witness is testifying as a corporate representative. *See, e.g.*, *United States v. Ancient Coin Collectors Guild*, 899 F.3d 295, 324 (4th Cir. 2018) (questions seeking a legal conclusion are "beyond the scope of a proper [Rule] 30(b)(6) deposition").

***MDL Plaintiffs' questioning called for expert testimony from a lay witness.*** Much of the testimony designated by Plaintiffs includes questioning impermissibly calling for Mr. Hartle to give expert opinion testimony. This testimony should be excluded.

Lay opinion testimony is admissible ***only*** if it is (a) "based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) ***not*** based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701 (emphasis added). Therefore, if opinion testimony draws on "scientific, technical, or other specialized knowledge," then its admissibility is assessed under Rule 702, not Rule 701. *Lord &*

6

*Taylor, LLC v. White Flint, L.P.*, 849 F.3d 567, 575 (4th Cir. 2017), *as amended* (Mar. 7, 2017) (testimony admissible under Rule 701 only if it is "not based on the same 'scientific, technical, or other specialized knowledge' covered by Rule 702"); *see also Kilpatrick*, 798 F.3d 365, 381 (6th Cir. 2015) (same).

Many of Plaintiffs' deposition designations run afoul of this rule.[9] For example, counsel repeatedly asked Mr. Hartle to "acknowledge" the veracity of Plaintiffs' "gateway" theory. Ex. 3 at 320:14–23, 321:3–10; *see also supra* n.4. Answering this question would require specialized medical and public health knowledge—as amply demonstrated by the parties' multiple expert submissions on this topic.[10] Lay opinion testimony on this and similar topics is precluded under Rule 701, even if the witness is testifying as a corporate representative. *See, e.g., Boyer v. Reed Smith, LLP*, No. C12-5815 RJB, 2013 WL 5724046, at *4 (W.D. Wash. Oct. 21, 2013) (question calling for expert opinion is "the type of inquiry found to be beyond the scope of a Rule 30(b)(6) deposition"); *see also Certain Underwriters at Lloyd's, London v. Sinkovich*, 232 F.3d 200, 203 (4th Cir. 2000) (excluding witness testimony because a "lay witness [may not] express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness." (quoting *Randolph v. Collectramatic, Inc.*, 590 F.2d

---

[9] *See, e.g.*, Ex. 3 at 293:16–18 ("What is the correlation between opioid sales and opioid deaths? Are they related or unrelated?"); *id.* at 51:4–9 "And that's why the unlawful distribution of these opium pills, relating back to page 1, has a substantial and detrimental effect on the health and general welfare of the American people. Does McKesson acknowledge that?"); *id.* at 271:14–17 ("So in general, the more pills that gets diverted, the more abuse and addiction we find with prescription opium pills?"); *id.* at 47:6–11 ("'Abuse of a drug or other substances may lead to severe psychological or physical dependence.' . . . Does McKesson agree and acknowledge this finding?").

[10] *See, e.g.*, Plaintiffs' expert reports of Anna Lembke, M.D., Katherine Keyes, Ph.D, and Daniel Ciccarone.

844, 846 (10th Cir. 1979)); *Worldwide Network Servs., LLC v. Dyncorp Int'l, LLC*, 365 F. App'x 432, 444 (4th Cir. 2010) (same).

***MDL Plaintiffs' questioning called for unbridled speculation, inadmissible hearsay, or both.*** MDL Plaintiffs' objectionable questioning also called on Mr. Hartle to speculate, opine on issues on which he lacked personal knowledge, or rely on inadmissible hearsay. Plaintiffs have designated much of this impermissible questioning for use at trial. This testimony, too, should be excluded. *See* Fed. R. Evid. 602, 801(c), 802.

Much of the designated questioning is entirely speculative. For example, counsel asked Mr. Hartle whether "there [is] a relationship between the number of pills that get sold and the number of pills that get diverted." Ex. 3 at 268:1–3. Aside from being in the province of expert testimony, this line of questioning also strayed far outside Mr. Hartle's job responsibilities and personal knowledge. Accordingly, it is unsurprising that his response—that "you could assume" a relationship between the two, *id.* at 268:5–15—was based on pure speculation.[11]

Other of counsel's questions were based on inadmissible hearsay. For example, Mr. Farrell repeatedly asked Mr. Hartle to speculate about conclusions from a document prepared by Rudy Giuliani that Mr. Hartle had never seen nor heard of before. *See id.* at 153:8–155:2.[12] Similarly, Mr. Hartle's responses to questions regarding the gateway theory—"[b]ased on everything that I've read and in the media and statistics and discussion, I would agree," Ex. 3 at 320:20–23—were

---

[11] Other questioning called for similar speculation. *See, e.g.*, Ex. 3 at 47:7–11 ("'Abuse of a drug or other substances may lead to severe psychological or physical dependence.' Does McKesson agree and acknowledge this finding?"); *id.* at 51:4–8 ("And that's why the unlawful distribution of these opium pills, relating back to page 1, has a substantial and detrimental effect on the health and general welfare of the American people[?]").

[12] *See also* Ex. 3 at 157:13–24 ("In 2004, big pharma hired Rudy Giuliani's firm to do an evaluation of the chain of distribution of prescription medicines, and what he found was that the chain of distribution was subject to exploitation or abuse because of lack of oversight?").

8

based not on personal knowledge but on out-of-court "media and statistics." These and similar lines of questioning—involving rank speculation, inadmissible hearsay, or both—should be excluded. *See* Fed. R. Evid. 801(c), 802; *see also Mountain Valley Pipeline, LLC v. 1.23 Acres of Land owned by Eagle's Nest Ministries*, Inc., No. 7:18-CV-00610, 2019 WL 8920215, at *6 (W.D. Va. July 12, 2019) (holding corporate representative's testimony must meet evidentiary standards for admissibility, including personal knowledge and not being based on hearsay); *Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*, 72 F. Supp. 3d 131, 146 (D.D.C. 2014) ("[Rule 30(b)(6) does not govern the admissibility of testimonial evidence at trial.").

## II. At Minimum, Mr. Hartle's 30(b)(6) Testimony That is Outside the Scope of the Notice Is Not Binding on McKesson.

Even if this Court admits certain portions of Mr. Hartle's testimony, Plaintiffs should be precluded from presenting testimony outside the scope of the topics on which Mr. Hartle was designated as McKesson's corporate representative as the binding testimony of McKesson.

A 30(b)(6) deponent's "answers to questions outside the scope of the notice will not bind the organization." *E.E.O.C. v. Freeman*, 288 F.R.D. 92, 99 (D. Md. 2012) (inquiry into "mental state or intentions in formulating its policies and procedures" was "plainly outside the scope" of notice topic regarding "'identification and verification' of [the organization's] policies and regulations pertaining to the applicable legal standard"). Thus, "to the extent the questioning is beyond the scope of the notice the testimony will constitute that of the deponent in an individual capacity and not on behalf of his organization." *Green v. Wing Enterprises, Inc.*, No. 1:14–CV–01913–RDB, 2015 WL 506194, at *8 (D. Md. Feb. 5, 2015); *accord Mott v. Accenture, LLP*, No. 8:17-CV-00231-PX, 2019 WL 1934727, at *8 (D. Md. Apr. 29, 2019) (explaining that obligation "to give knowledgeable, and *binding* answers for the corporation . . . extends only to the topics in the Rule 30 (b)(6) notice." (emphasis added)); *United States v. Albemarle Corp.*, No. CIV.A. 5:11-

9

00991-JM, 2013 WL 6834597, at *4 (D.S.C. Dec. 23, 2013) (citing *E.E.O.C.*, 288 F.R.D. at 99 for proposition that "[t]he deponent's answers to questions outside the scope of the notice will not bind the organization.").[13]

Plaintiffs seek to present numerous lines of questioning that required Mr. Hartle to speculate on issues that went far beyond the topics on which he was designated as McKesson's corporate representative. For example, counsel

- asked Mr. Hartle to "acknowledge," on behalf of McKesson, the veracity of the "gateway theory" of heroin use, *see supra* n.4;

- asked a lengthy, repetitive, and abusive series of questions about whether Mr. Hartle believed McKesson was "responsible" for the "societal costs" of opioid epidemic, *see supra* n.5; and

- asked Mr. Hartle to speculate on the link between opioid sales and deaths, *see supra* n.10.

These lines of questioning plainly go far beyond the scope of the topics on which Mr. Hartle was designated as McKesson's corporate representative, which pertained to the operations of McKesson's regulatory affairs program. *See* Appx. A. Plaintiffs therefore should be precluded from presenting such testimony as the binding testimony of McKesson. *See, e.g.*, *Green*, 2015 WL 506194, at *8.

Moreover, as explained above, counsel's questioning also impermissibly called for Mr. Hartle to offer opinion testimony. Such testimony, even if admitted, is "the type of" testimony that is "inappropriate for a Rule 30(b)(6) deposition" and therefore cannot bind McKesson. *Hund*

---

[13] This rule is widely followed. *See, e.g.*, *Falchenberg v. New York State Dep't of Educ.*, 642 F. Supp. 2d 156, 164 (S.D.N.Y. 2008), *aff'd*, 338 F. App'x 11 (2d Cir. 2009) ("Questions and answers exceeding the scope of the 30(b)(6) notice will not bind the corporation, but are merely treated as the answers of the individual deponent."); *Badger v. Wal-Mart Stores, Inc.*, No. 2:11-CV-1609-KJD-CWH, 2013 WL 3297084, at *6 (D. Nev. June 28, 2013) (same); *Wisconsin Alumni Rsch. Found. v. Apple, Inc.*, No. 14-CV-062-WMC, 2015 WL 13546432, at *1 (W.D. Wis. Oct. 12, 2015) (same); *Detoy v. City of San Francisco*, 196 F.R.D. 362, 367 (N.D. Cal. 2000) (same).

*v. Smith & Nephew, Inc.*, No. 6:10-CV-01556-JMC, 2011 WL 13217730, at *2 (D.S.C. July 28, 2011); *see also Boyer*, No. C12-5815 RJB, 2013 WL 5724046, at *4 (question calling for expert opinion is "the type of inquiry found to be beyond the scope of a Rule 30(b)(6) deposition"); *Dagdagan v. City of Vallejo*, 263 F.R.D. 632, 636 (E.D. Cal. 2009) (same). McKesson therefore cannot be bound by the opinion testimony that MDL Plaintiffs' counsel solicited from Mr. Hartle.

Similarly, questions seeking a legal conclusion are "beyond the scope of a proper [Rule] 30(b)(6) deposition." *Ancient Coin Collectors Guild*, 899 F.3d at 324. Accordingly, McKesson also cannot be bound by testimony setting forth Mr. Hartle's personal beliefs about McKesson's legal obligations. *See id.*; *see also Stowers v. Supreme Ct. of Appeals of W. Virginia*, No. 2:18-CV-00560, 2019 WL 2319305, at *1 (S.D.W. Va. May 29, 2019) (asking the witness to offer a legal opinion is an inappropriate inquiry for a Rule 30(b)(6) deposition).

Finally, MDL Plaintiffs' counsel repeatedly asked Mr. Hartle to speak on behalf of McKesson on documents and events outside the designated discovery period—indeed, counsel asked Mr. Hartle to opine on topics that pre-dated the notices' discovery period by nearly 100 years.[14] This testimony, too, was outside the scope of the Rule 30(b)(6) notice and cannot bind McKesson.

## **CONCLUSION**

For the foregoing reasons, the Court should (1) preclude Plaintiffs from offering at trial testimony from Mr. Hartle that constitutes impermissible lay opinion testimony, opines on legal questions, or was based on speculation and/or hearsay; (2) preclude Plaintiffs from presenting as the binding testimony of McKesson answers given by Mr. Hartle to questions that exceeded the

---

[14] *See, e.g.*, Ex. 3 at 86:6–24; 89:11–90:16.

scope of the topics on which he was provided as McKesson's corporate designee; and (3) sustain the objections set forth in Appendix B hereto in their entirety.

Dated:  April 29, 2021                                                          Respectfully submitted,

*McKesson Corporation*
By Counsel:

/s/ Timothy C. Hester
Timothy C. Hester
Christian J. Pistilli
Laura Flahive Wu
Andrew P. Stanner
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
lflahivewu@cov.com
cpistilli@cov.com
astanner@cov.com

/s/ Paul W. Schmidt
Paul W. Schmidt
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 841-1000
pschmidt@cov.com

/s/ Jeffrey M. Wakefield
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 29th day of April, the foregoing bench memorandum was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Timothy C. Hester*
Timothy C. Hester
