Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE NATIONAL PRESCRIPTION OPIATE LITIGATION<br><br>This document relates to: | MDL No. 2804<br><br>Case No. 17-md-2804<br><br>Judge Dan Aaron Polster |

**AMENDED SECOND NOTICE OF DEPOSITION PURSUANT TO RULE 30(B)(6) AND DOCUMENT REQUEST PURSUANT TO RULE 30(B)(2) AND RULE 34 TO DEFENDANTMCKESSON CORPORATION**

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that, pursuant to Rules 26 and 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs will take the deposition of McKesson Corporation (hereinafter "McKesson") on a date, time and location to be determined at the mutual convenience of the parties. The deposition will be recorded stenographically, by video, and through instant visual display of testimony by means of LiveNote or other similar technology, before a notary public or other person authorized to administer oaths pursuant to Fed. R. Civ. P. 28(a). The deposition will be conducted in accordance with the protocol(s) established by the Court.

Pursuant to Fed. R. Civ. P. 30(b)(6), McKesson shall designate and produce a representative or representatives, as may be required, who are knowledgeable and prepared to testify fully on behalf of McKesson concerning the topics identified in **Schedule A** below.

Pursuant to Fed. R. Civ. P. 30(b)(2) and 34 McKesson shall produce all documents identified in **Schedule B**, for the purposes of inspection and/or photocopying by the earlier of June 25 or seven days (7 days) prior to the deposition.

EXHIBIT 2
WIT: McKesson-Hartle
DATE: 7-31-18
C. Campbell, RDR CRR CSR #13921

Plaintiff requests that McKesson produce at each deposition a copy of the designated representative's current curriculum vitae or résumé for the purposes of inspection and/or photocopying.

**Duty to Designate**

By designating a representative, McKesson indicates its representative has authority to speak on its behalf on the matters listed in this notice – not only to facts, but also to subject beliefs and opinions.

**Duty to Substitute**

If it becomes clear that the chosen representative is unable to respond to questions on the matters for which he or she has been designated, McKesson must immediately provide a substitute knowledgeable witness. This is required even if the initial designation was made in good faith.

**Duty to Prepare**

The testimony elicited in the deposition represents McKesson's knowledge, not the individual deponent's knowledge. McKesson must conduct a thorough investigation in response to the deposition notice and must prepare a witness to testify to all matters "known or reasonably available to the organization." Therefore, if McKesson's designee is not knowledgeable about the matters specified in the deposition notice, it must nonetheless prepare such designee to give knowledgeable, binding answers.

"Reasonably available" information includes all documents that the organization has the authority, legal right, or practical ability to obtain. An inadequately prepared designated witness will amount to an impermissible refusal to answer and a sanctionable failure to appear.

## SCHEDULE A
### (McKesson)

**I. DEFINITIONS**

This section sets forth specific definitions applicable to certain words and terms used herein. Unless words or terms have been given a specific definition in this section or in a specific request, each word or term shall be given its usual and customary dictionary definition, except where a word or term has a specific customary and usage definition in your trade and industry. In that case, the word or term shall be interpreted in accordance with the specific customary and usage definition.

1. "Action" refers to *In re National Prescription Opiate Litigation*, No. 17-md-2804.

2. "Concerning," "Concerns," "Relating To" and "Referring To" and derivations thereof each mean reflecting, concerning, relating to, referring to, describing, discussing, evidencing, addressing or constituting in any way.

3. "Controlled Substance(s)" has the definition provided by the CSA (defined below), 21 U.S.C. §802(6).

4. "CSA" means Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §801, *et seq.*, inclusive of all regulations adopted thereunder.

5. "DEA" means Drug Enforcement Administration.

6. "Defendant(s)" means the named Defendants in the above-captioned Action.

7. "Diversion" means the unlawful channeling of a licit Controlled Substance for an illicit purpose or use.

8.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of the phrase "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate Document within the meaning of this term. In all events, the definition of "Document" shall include "Communications" as defined below.

9.      "Suspicious Order" shall be as defined by the DEA and shall include, but not be limited to, orders for Opioids or Opioid Products of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency.

10.     "Data Mining" shall be defined to include, but not be limited to, any process of finding anomalies, patterns, or correlations within large data sets.

11.     "You" or "Your" means Defendants McKesson and McKesson's officers, directors, employees, partners, representatives, agents, corporate parent, subsidiaries, affiliates, divisions, predecessors or successors-in-interest, and other persons or entities acting on its behalf or controlled by McKesson.

12.     The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the 30(b)(6) topic all subject matters that might otherwise be construed to be outside of its scope.

13.     The terms "all," "any" and "each" shall be construed as encompassing "any and all."

## II. RELEVANT TIME PERIOD

Except as otherwise specified, the Relevant Time Period applicable to the Subject Matters for Testimony is 1995 to the present, inclusive.

## III. SUBJECT MATTERS FOR TESTIMONY

**Internal Record Keeping & Data Storage**

1. Defendant's document retention policy for hard copy and electronic documents, including but not limited to:

    a. Defendant's policies and procedures for preserving documents in connection with litigation;

    b. Defendant's filing system for both hard copies of documents and electronic copies of documents;

    c. The identification and description of all files identified and/or searched for purposes of responding to plaintiffs' requests for production;

    d. The current and any prior system(s) used for purposes of creating, transmitting, storing, backing up, retrieving, and deleting E-mail and/or electronic records, including but not limited to, the name and version, installation dates, number of users, and location of users' mail files;

    e. Defendant's retention of records related to reporting information to the ARCOS system maintained by the DEA;

    f. Defendant's retention of records related to reporting of suspicious orders to the DEA; and

    g. Defendant's storage and retention of all sales transactions of all controlled substances (opioid products).

**Corporate Structure**

2. Your current and historical corporate organizational structure, both legal and operational, including but not limited to the names and roles of the following:

    a. Your Board of Directors and Board of Directors for each subsidiary and related entity;

    b. Officers including those designated with the functional equivalent of:

        i. Chief Executive Officer;
        ii. Chief Financial Officer;
        iii. Chief Operating Officer;
        iv. General Counsel;

    v.  Director of Sales;
    vi.  Director of Marketing;
    vii.  Director of Regulatory Compliance;
    viii.  Director of Government Affairs; and
    ix.  Director of Distribution.

  c.  All committees and sub-committees of Your Board of Directors and Board of Directors for each subsidiary and/or entity;

  d.  Employees (and compensation structure) related to servicing clients in Case Track 1 ("CT1") jurisdictions;

  e.  Ownership and control of distribution operations;

  f.  Departments, subsidiaries, committees, including but not limited to those related to the following: sales, marketing, regulatory compliance, internal or external audits, government affairs, distribution, and compensation;

  g.  Chain of command;

    i.  Legal chain of command; and
    ii.  Operational chain of command.

  h.  Wholly owned subsidiaries, affiliates and DEA registrations;

  i.  Employees knowledgeable about any marketing services You have offered to manufacturers of prescription opiates.

  j.  Mergers, acquisitions and other corporate restructuring.

**Compensation**

3. Policies and procedures related to all compensation provided to any employee that had oversight or control over the marketing, sales or distribution of prescription opiates into any CT1 jurisdiction.

4. Detail concerning any compensation incentive program related to the marketing, sales or distribution of opioids. This includes, but is not limited to, compensation incentive programs available to sales representatives.

5. Detail concerning any and all compensation provided to any employee that had oversight or control over the marketing, sales or distribution of prescription opiates into any CT1 jurisdiction. This includes, but is not limited to, marketing representatives, sales representatives, regional oversight, and executives.

**Audit and/or Investigational Committees**

6. Your efforts to conduct audits and/or investigations relating to Your Suspicious Order Monitoring System (SOMS) to review past practices and ensure compliance your legal responsibilities.

**Administrative Actions**

7. Your interactions with the DEA regarding distribution of controlled substances including compliance, regulatory and administrative actions, communications and penalties.

8. Your interaction with the DEA/FDA related to the scheduling of controlled substances and setting of quotas.

**Data Mining**

9. The scope of data you obtained about each pharmacy in a CT1 jurisdiction from internal sources or external sources (e.g., IMS Health, QuintilesIMS, IQVIA, Pharmaceutical Data Services, Source Healthcare Analytics, NDS Health Information Services, Verispan, Quintiles, SDI Health, ArcLight, Scriptline, Wolters Kluwer, PRA Health Science, Value Centric and/or other data mining vendor) related to the pharmacy's purchase of controlled substances from any source.

10. All information you provided or received from 867 or 852 sales data whether via internal or external sources related to the sale or distribution of control substances.

**Rebate Programs**

11. Any incentive program, rebate program or other contractual agreement with any pharmacy in a CT1 jurisdiction and/or manufacturer of controlled substances distributed in a CT1 jurisdiction.

**Trade Organizations**

12. Your participation, relationship or association with any trade organization, including, but not limited to, Healthcare Distribution Alliance (HDA) (and its predecessors), National Association of Chain Drug Stores (NACDS) and Pharmaceutical Research and Manufacturers of America (PhRMA) including the submission of amicus briefs.

13. Any financial payments made to any trade organization, including, but not limited to, Healthcare Distribution Alliance (HDA) (and its predecessors), National Association of Chain Drug Stores (NACDS) and Pharmaceutical Research and Manufacturers of America (PhRMA).

**CT1 specific topics**

14. The volume, manufacturer, type, size, dosage, buyer and date of each order of prescription opiate sold into the CT1 jurisdictions from 1995 to the present.

15. For each such transaction, the cost of your purchase and the price of your resale.

16. Each suspicious order you received between January 1, 1995 to the present arising out of the CT1 jurisdictions and whether each was declined, shipped and/or reported as well as the due diligence performed arising out of each suspicious order reported to the DEA.

17. Whether you have conducted any retrospective analysis of past orders of controlled substances arising from a buyer in a CT1 jurisdiction to identify unreported and/or undetected "suspicious orders" and the results of the same.

18. Each application for, and/or change of, any threshold for prescription opiates in a CT1 jurisdiction.

19. Each order of a prescription opiate from an online pharmacy in the United States from 1995 to the present and whether each was declined, shipped and/or reported as well as the due diligence performed arising out of each suspicious order reported to the DEA.

20. Whether you failed to detect suspicious orders arising out of the CT1 jurisdictions.

21. Whether you failed to report suspicious orders to the DEA arising out of the CT1 jurisdictions.

22. Whether you shipped suspicious orders to buyers in the CT1 jurisdictions without conducting due diligence.

23. Whether you caused and/or contributed to the opioid epidemic in the City of Cleveland, Cuyahoga County and/or Summit County, Ohio.

## SCHEDULE B

1. All documents which deponent has consulted or reviewed or plans to consult in preparation for his or her deposition and has relied upon or will rely upon for testimony on the above deposition topics.

Dated: June 18, 2018

*s/Troy A. Rafferty*
Troy A. Rafferty
**Levin, Papantonio, Thomas, Mitchell, Rafferty & Proctor, P.A.**
316 South Baylen Street, Ste. 600
Pensacola, Florida 32502
Phone: (850) 435-7043
Fax: (850) 435-7020
Email: trafferty@levinlaw.com
Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this 18th day of June 2018, the foregoing has been served via email only to the following defense liaison counsel:

Mark Cheffo, Esq.
Dechert LLP
Three Bryant Park
1095 Avenue of the Americas
New York, NY  10036
mark.cheffo@dechert.com

Carol Rendon, Esq.
Baker Hostetler
Key Tower, 127 Public Square
Cleveland, OH  44114
crendon@bakerlaw.com

Enu Mainigi, Esq.
Williams & Connolly
725 Twelfth Street, NW.
Washington, DC  20005
emainigi@wc.com

Shannon McClure, Esq.
ReedSmith
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA  19103
smcclure@reedsmith.com

Geoffrey E. Hobart, Esq.
Covington & Burling
One CityCenter
850 Tenth Street, NW.
Washington, DC  20001
ghobart@cov.com

Kaspar Stoffelmayr, Esq.
Bartlit Beck
54 West Hubbard Street, Ste 300
Chicago, IL  60654
Kaspar.stoffelmayr@bartlit-beck.com

Tina Tabacchi, Esq.
Jones Day
77 West Wacker Drive
Chicago, IL  60601
tmtabacchi@jonesday.com

Tyler Tarney, Esq.
Gordon & Rees
41 S. High Street, Suite 2495
Columbus, OH  43215
ttarney@grsm.com

*s/Troy A. Rafferty*
Troy A. Rafferty
Counsel for Plaintiffs