IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

TRANSCRIPT OF PROCEEDINGS

```
----------------------------x
                            :
THE CITY OF HUNTINGTON,      :        CIVIL ACTION
                            :        NO. 3:17-cv-01362
        Plaintiff,          :
vs.                         :
                            :
AMERISOURCEBERGEN DRUG       :
CORPORATION, et al.,        :
                            :
        Defendants.         :
                            :
----------------------------x
                            :
CABELL COUNTY COMMISSION,    :        CIVIL ACTION
                            :        NO. 3:17-cv-01665
        Plaintiff,          :
                            :
vs.                         :
                            :
AMERISOURCEBERGEN DRUG       :
CORPORATION, et al.,        :
                            :
        Defendants.         :
                            :
----------------------------x
```

PRE-TRIAL CONFERENCE

BEFORE THE HONORABLE DAVID A. FABER
SENIOR UNITED STATES DISTRICT JUDGE

April 29, 2021

**APPEARANCES:**


**For the Plaintiff,**
**Cabell County Commission:**


**MR. PAUL T. FARRELL, JR.**
Greene Ketchum Farrell Bailey & Tweel
P.O. Box 2389
Huntington, WV  25724


**MR. ANTHONY J. MAJESTRO**
Powell & Majestro
Suite P-1200
405 Capitol Street
Charleston, WV  25301


**MR. DAVID I. ACKERMAN**
Motley Rice
Suite 1001
401 9th Street NW
Washington, DC  20004


**MR. PETER J. MOUGEY**
Levin Papantonio Thomas Mitchell Rafferty & Proctor
Suite 600
316 South Baylen Street
Pensacola, FL  32502


**For the Plaintiff,**
**City of Huntington:**


**MS. ANNE MCGINNESS KEARSE**
Motley Rice
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464

```
 1    APPEARANCES (Continued):

 2

 3    For the Plaintiff,
      City of Huntington:

 4

 5    MR. MICHAEL J. FULLER, JR.
      McHugh Fuller Law Group

 6    97 Elias Whiddon Road
      Hattiesburg, MS  39402

 7

 8

 9    For the Defendant,
      Cardinal Health:

10

11    MS. ENU MAINIGI
      MS. JENNIFER WICHT

12    Williams & Connolly
      725 Twelfth Street, NW

13    Washington, DC  20005

14

15    MR. STEVEN R. RUBY
      Carey Douglas Kessler & Ruby

16    901 Chase Tower
      707 Virginia Street, East

17    Charleston, WV  25301

18

19    MS. ASHLEY W. HARDIN
      Williams & Connolly

20    725 Twelfth Street, NW
      Washington, DC  20005

21

22

23

24

25
```

1    **APPEARANCES (Continued):**

2

3    **For the Defendant,**
     **McKesson:**

4

5

6    **MR. TIMOTHY C. HESTER**
     **MR. PAUL W. SCHMIDT**
7    **MS. LAURA M. FLAHIVE WU**
     **MR. ANDREW STANNER**
8    Covington & Burling
     One City Center
9    850 Tenth Street NW
     Washington, DC  20001
10

11   **MR. CHRISTOPHER K. EPPICH**
     Covington & Burling
12   Suite 3500
     1999 Avenue of the Stars
13   Los Angeles, CA  90067

14

15   **For the Defendant,**
     **AmerisourceBergen Drug Corporation:**

16

17   **MS. SHANNON E. MCCLURE**
     **MR. JOSEPH J. MAHADY**
18   Reed Smith
     Three Logan Square
19   Suite 3100
     1717 Arch Street
20   Philadelphia, PA  19103

21

22   **MS. GRETCHEN M. CALLAS**
     Jackson Kelly
23   P.O. Box 553
     Charleston, WV  25322

24

25

1  **APPEARANCES (Continued):**

2

3  **For the Defendant**
   **AmerisourceBergen Drug Corporation:**

4

5

6  **MR. ROBERT A. NICHOLAS**
   Reed Smith
7  Suite 3100
   Three Logan Square
8  1717 Arch Street
   Philadelphia, PA  19103

9

10

11

12

13

14

15

16

17

18

19

20

21

22  Court Reporter:              Lisa A. Cook, RPR-RMR-CRR-FCRR

23

24  Proceedings recorded by mechanical stenography; transcript
    produced by computer.

25

```
 1                    P R O C E E D I N G S

 2          THE COURT:  It's certainly nice to see a courtroom

 3   full of people.

 4       This is the final pre-trial conference in the City of

 5   Huntington and Cabell County against AmerisourceBergen

 6   Corporation and others.

 7       I'll ask the attorneys to note their appearances,

 8   please.

 9          MR. FARRELL:  Paul Farrell, Jr., on behalf of

10   plaintiffs.

11          MS. KEARSE:  Anne Kearse on behalf of the

12   plaintiffs, Your Honor.

13          MR. MAJESTRO:  Anthony Majestro on behalf of the

14   plaintiffs.

15          MR. ACKERMAN:  David Ackerman for the plaintiffs.

16          MR. FULLER:  Mike Fuller on behalf of the

17   plaintiffs.

18          MR. MOUGEY:  Peter Mougey on behalf of the

19   plaintiffs.

20          MS. MAINIGI:  Enu Mainigi on behalf of Cardinal

21   Health, Your Honor.

22          MR. RUBY:  Steve Ruby for Cardinal Health, Your

23   Honor.

24          MS. WICHT:  Jennifer Wicht for Cardinal Health.

25          MS. HARDIN:  Ashley Hardin for Cardinal Health.
```

```
 1              MR. HESTER:  Timothy Hester on behalf of McKesson
 2     Corporation.
 3              MR. SCHMIDT:  Good morning, Your Honor.  Paul
 4     Schmidt for McKesson.
 5              MS. FLAHIVE WU:  Good morning.  Laura Flahive Wu
 6     for McKesson.
 7              MR. STANNER:  Andrew Stanner for McKesson.
 8              MR. EPPICH:  Chris Eppich for McKesson.
 9              MR. NICHOLAS:  Bob Nicholas for AmerisourceBergen.
10              MS. MCCLURE:  Shannon McClure for
11     AmerisourceBergen.
12              MS. CALLAS:  Gretchen Callas for
13     AmerisourceBergen.
14              MR. MAHADY:  Joe Mahady for AmerisourceBergen.
15              THE COURT:  Thank you.
16          This is the final pre-trial conference.  We're going to
17     start the trial on Monday at 9:30 with opening statements,
18     allowing three hours a side.  After Monday I'd like to start
19     at 9:00 and do a 9:00 to 12:00 and 2:00 to 5:00 schedule
20     with a break in the morning and a break in the evening.
21          The plaintiffs, as I understand, will have two -- well,
22     there are two plaintiffs, so they'll have two people
23     arguing.  So that makes it easy to break halfway through the
24     plaintiffs' opening.  It's going to be more difficult for
25     the defendants since there are three.
```

1     So the normal thing to do would be break at the

2     one-and-a-half-hour period, but that's going to hit right in

3     the middle of one of the, one of the opening statements.  So

4     if the lawyers are uncomfortable with that, you can decide

5     what you want to do and let me know and we'll take the break

6     where it best fits with, with your plans.

7     I have the proposed Pre-Trial Order.  Are there any

8     changes to it?  Hopefully the answer is "no."  I hesitate to

9     ask.

10          MR. FARRELL:  No, Your Honor.

11          MS. MAINIGI:  We don't think so, Your Honor.  I

12    think a lot of the motions are, are decided at this point.

13          MR. MAJESTRO:  Your Honor, I think we've

14    supplemented exhibit lists.  The Pre-Trial Order with the

15    attachments, the exhibit lists, were supplemented by both

16    sides on Monday.

17          THE COURT:  All right.  We've had at least one

18    request for a limited appearance by an attorney who's

19    representing a witness in the case.  And I understand that

20    there's been no objection to the motion and I'm going to

21    grant it.

22    I think that involves the Government witness Joseph

23    Rannazzisi.  There's no need to -- if that situation comes

24    up with regard to other witnesses, there's no need to file a

25    motion.  Unless there is an objection, I'm going to allow a

1   witness who has counsel to appear with one lawyer in tow.

2         We have endeavored to go over all pending motions, even

3   though we haven't completed our opinions.  We've filed some

4   of the orders.  We expect to rule on all of the rest of the

5   pending motions today except the recently filed motion to

6   exclude the testimony of Dr. Gupta and we're waiting for a

7   response to that motion before we can consider it.

8         So hopefully you'll know where you stand with regard to

9   all of the pending motions before you make the openings on

10  Monday.

11            MS. MAINIGI:  Your Honor?

12            THE COURT:  Yes.

13            MS. MAINIGI:  Enu Mainigi for Cardinal.

14            THE COURT:  I'm going to ask you to remove your

15  mask.  It will make it easier for me to understand you, Ms.

16  Mainigi.

17            MS. MAINIGI:  Absolutely, Your Honor.  We're fine

18  with that.

19        Dr. Gupta, as we understand it, may testify as early as

20  Wednesday.  And, so, we were hoping we could work out some

21  sort of briefing schedule so that Your Honor has enough time

22  to rule on that motion as you see fit prior to that time.

23        It's, it's our view that given the scope of the

24  exclusion we are seeking for Dr. Gupta that it would be good

25  for both sides to know that before we put him up on the

 1    stand.

 2              THE COURT:  Let me ask the plaintiffs, can you

 3    respond to that motion right way?  Do you want to respond to

 4    it in writing?

 5              MR. MAJESTRO:  Yes, Your Honor.  I have a response

 6    in the works that I think we can get to the other side and

 7    the Court Sunday.  I don't think anybody's taking the

 8    weekend off.

 9              THE COURT:  That will take care of it, won't it?

10              MS. MAINIGI:  That's fine, Your Honor.  And if

11    Your Honor wants argument, we could figure out a time on

12    that.

13              THE COURT:  Well, let me look at the motions and

14    the response and hopefully -- well, if we need argument,

15    we'll just have to take the time to do it.

16              MS. MAINIGI:  That's fine, Your Honor.

17              MR. SCHMIDT:  Your Honor, may I raise -- Paul

18    Schmidt from McKesson.  May I raise a similar issue?

19        We have a witness of ours where there's going to be

20    video played next week, Nate Hartle.  Right now, the

21    schedule -- we have the plaintiffs' designations and we know

22    what we're going to object to and they're pretty basic;

23    scope of a 30(b)(6) witness and legal conclusions and things

24    like that.

25        The meet-and-confer process doesn't run out until

1   Saturday.  So we were going to file a motion Saturday.  But

2   if it's easier for the plaintiffs in terms of responding,

3   easier for the Court to understand, we can probably file it

4   today.  We just don't want to trip over the schedule.  We're

5   just mindful that he's someone who I think is coming up next

6   week in, in your case.

7            THE COURT:  Well, I encourage you to file it as

8   soon as you can.

9            MR. SCHMIDT:  Okay.  That's what we'll do, Your

10  Honor.  Thank you.

11           THE COURT:  Anything else?

12       We have one motion set for argument.  That's the

13  plaintiffs' motion concerning the IQVIA trial testimony.

14  And when I previously ruled on this motion, I left the door

15  open and the parties have walked through it and the motion

16  is back on the plate.

17       So, Mr. Majestro, do you want to proceed here?

18           MR. MAJESTRO:  Yes, Your Honor.  Thank you, Your

19  Honor.

20       May it please the Court, we think this is a pretty

21  simple motion.  It's essentially a motion to allow trial

22  testimony -- a trial deposition for the purpose of laying an

23  evidentiary foundation.

24       Now as Your Honor is aware, the courts in this

25  district -- while the rule doesn't, doesn't differentiate

1  between evidentiary depositions and discovery depositions,

2  as a matter of practice, the courts in this district have

3  done so.

4       This morning I just looked on Westlaw real quick.  And

5  although we didn't cite it in the brief, Judge Goodwin wrote

6  a really good opinion in 2020 in *Murray* vs. *Lilly*, 2020

7  Westlaw 625194.

8       In that opinion he said, "Even though the Federal Rules

9  of Civil Procedure provide no distinctions as between

10  discovery and trial depositions, courts have recognized as a

11  practical matter that, in fact, differences exist.

12  Discovery depositions are taken for the purpose of

13  discovering evidence while trial or evidentiary depositions

14  are taken for the primary purpose of preserving testimony

15  for trial.  Several courts have allowed trial depositions

16  after discovery deadlines have passed."

17       That's been the practice in this district and in state

18  courts of West Virginia for as long as I've been practicing

19  law.  When you've got a witness -- and what we're talking

20  about here is maybe five minutes of evidence to lay the

21  foundation that Your Honor allowed us to do in reserving

22  that right in denying the motion without, without prejudice.

23       We don't think that the defendants will, will be

24  prejudiced by this.  First of all, we're happy to take the

25  deposition remotely, as we've taken the majority of the

1   depositions in this case during COVID.  We're quite good at

2   that.  No one has to travel anywhere.  We'll have -- provide

3   the witness with the appropriate Zoom log-in.  His counsel

4   can do that.  And it will not be a matter that will

5   prejudice anybody.

6        As I said before, it's likely to be short.  If they're

7   willing to cooperate with us, we'll cooperate with them on

8   the time for it.

9        But finally and most importantly on the issue of

10  prejudice --

11           THE COURT:  Are you saying the 100-mile rule

12  doesn't apply?  I don't understand how you're going to get

13  around the fact that this person lives wherever he lives.

14           MR. MAJESTRO:  They're in North Carolina.  There's

15  two ways for that.

16       The first way, and I think the easiest way, we are

17  crossing-noticing this deposition with three other MDL cases

18  which have on-going discovery.  And, so, we're going to have

19  the subpoena -- we've had the subpoenas issued out of the

20  court in North Carolina.

21       Can you pull up Exhibit 3 for me?  Let me just show

22  Your Honor.

23       So, you know, this is the, the *Cherokee Nation* case.

24  It's one of the cases that was pending before Judge Polster.

25  This is --

1        THE COURT:  Let me interrupt a second.  So you

2   have a deposition subpoena pending --

3        MR. MAJESTRO:  Yes.

4        THE COURT:  -- in another case --

5        MR. MAJESTRO:  Yes, sir, to which the defendants

6   are parties to.

7        THE COURT:  Well, my memory is sometimes

8   inaccurate, but I recall the way to get around your problem

9   here was to file a miscellaneous proceeding in the other

10  court and go through that court, which you obviously don't

11  have time to do that.

12     Does the fact that this subpoena has been served in the

13  other case, does that get you around that problem?

14        MR. MAJESTRO:  Yes, Your Honor, because the

15  witness is going to be compelled to show up.  The

16  defendants, who are the defendants in that case, are going

17  to be compelled to show up to defend it.

18        THE COURT:  And when is that going to happen?

19        MR. MAJESTRO:  Well, we had actually had it set

20  for yesterday.  The, the witness's lawyers raised some

21  objections and we're in a meet-and-confer on that.  But I'm

22  fairly confident we can get it done before we rest our case.

23     And, you know, the other, the other issue is, you know,

24  under Rule 43 we could issue subpoenas in this case.  If

25  you, if you go back to the Advisory Committee notes that

1  were, where Congress specifically said that the reason we're

2  amending this is to allow this precise situation to happen

3  where you have a remote witness, where you then issue the

4  subpoena from the issuing court where the remote witness is

5  under Rule 45.  And the notes specifically allow that.

6      But, you know, it's our understanding -- we understand

7  your practice.  You don't want to have live remote

8  testimony.  We're okay with that.

9      The easiest thing to do is let us go do these

10  depositions and we'll get the testimony -- you know, you're

11  going to read it in five minutes.  That will provide the

12  underlying, the underlying foundation.

13      And I, I think finally I just want to say that I think

14  we have established good cause to do this.  From the very

15  beginning of this case, we have noticed our intent to, to

16  try to get this evidence in, this evidence into the record

17  in this trial.

18      And the, you know, in all the other cases where this

19  issue comes up -- and, for example, in -- there's a trial

20  going on right now in State Court in California in Orange

21  County.  The parties have stipulated to the admissibility.

22      There's a trial going on -- not a trial, but there's

23  on-going discovery going on in the *City of Chicago* case

24  which is one of the first opioid cases to be filed.  The

25  defendants there stipulated to the admissibility of this

1    evidence.

2         We don't understand why the defendants have a beef with

3    this.  They're entitled to make those objections and require

4    us to, to prove the admissibility of the evidence.  But in

5    the end, we want the right to do that.

6         The ability to just take this deposition we believe

7    will solve that problem.  And then, Your Honor, we'll have

8    laid forth a record the foundation and Your Honor can

9    make the final ruling as to whether or not it's admissible

10   or not.

11             THE COURT:  Specifically, what do you expect to

12   get from this deposition that will later be admissible into

13   evidence?

14             MR. MAJESTRO:  I think we're going to get the

15   evidence as to how the IQVIA data was gathered from all of

16   the pharmacies in terms of the reliability, and maybe

17   additional evidence in terms of the defendants' access to

18   that.

19        We have some evidence that -- in the documents we found

20   recently that Cardinal may have had access to it.  But

21   that's a question of the ultimate admissibility.

22        What we would like, with permission to do, is to take

23   the short deposition so we can put the full record of the

24   foundation for the admission before Your Honor.

25        Thank you.

1          THE COURT:  Taking the deposition in another case,

2    does that get you around the problem you have with the

3    discovery cutoff deadline?

4          MR. MAJESTRO:  That deposition -- we have listed

5    IQVIA as a witness in this case and we would -- and however

6    the deposition gets taken, if it gets taken, we would be

7    submitting the deposition pursuant to the parties'

8    stipulation regarding designation of depositions.

9          THE COURT:  Okay.  Do you have anything further?

10          MR. MAJESTRO:  Not unless you have any questions,

11    Your Honor.

12          THE COURT:  All right.

13      Ms. Hardin, are you going to respond to this?

14          MS. HARDIN:  Yes, sir.

15      Good morning, Your Honor.  Ashley Hardin on behalf of

16    the defendants.

17      Your question, Your Honor, is:  Are you saying the

18    100-mile rule doesn't apply to a trial subpoena?  It

19    absolutely applies, and this Court has no authority to issue

20    a trial subpoena to IQVIA who resides in Durham, North

21    Carolina, which is not, obviously, within the State of West

22    Virginia and it is more than 100 miles from the courthouse.

23      Rule 35 has been amended to address the very argument

24    that the plaintiffs make, which is some notion that Rule 43

25    works an end run around Rule 45.  It does not.

1          And the Advisory Committee notes actually say the

2     opposite of what Mr. Majestro just told you.  They say they

3     are being -- that the rule is being amended to overrule the

4     *Vioxx* line of cases, which was a ruling from Judge Fallon in

5     the *Vioxx* litigation that allowed a defendant's CEO, I

6     believe was his title, to appear even though he was more

7     than 100 miles from the courthouse.

8          But even if that line of cases that the plaintiffs cite

9     had not been overruled by the amendments, which it has,

10    every single one of the cases that they cite has to do with

11    compelling a witness who is either a current or former

12    employee of the defendants in the case and, therefore, under

13    their control, or arguably under their control.

14         There is no case that the plaintiffs have cited that

15    gives this Court the authority to issue a trial subpoena to

16    a non-party, a third party who resides more than 100 miles

17    from the courthouse and outside of the state.

18              THE COURT:  Well, what about what just came up,

19    and was a bit of a surprise to me, that there's going to be

20    a deposition taken of this person in another case?  If that

21    happens, couldn't I be able to consider that?

22              MS. HARDIN:  Well, I think it's unclear so far

23    whether that deposition is going to go forward or when it's

24    going to go forward.  They certainly have issued a subpoena

25    in the *Cherokee Nation* case.  But that gets to a level of

1   prejudice, Your Honor, to the defendants.

2       If the defendants -- I mean, excuse me -- if the

3   plaintiffs are able to co-opt another case that happens to

4   be pending in this country and that -- where discovery is

5   still open and we happen to be defendants, then the

6   plaintiffs are going to work an end run around this Court's

7   schedule.  And they're going to be able to take discovery,

8   according to them, perhaps all the way up until the closing

9   arguments.  That would be one-sided discovery.  Plaintiffs

10  are not parties to any other case.

11          THE COURT:  Well, I wouldn't allow that to happen

12  but I might allow this to happen.  I'm -- this would be a

13  one-time thing and, and I don't -- I wouldn't permit them to

14  take depositions in other cases and bring them here in this

15  trial.

16          MS. HARDIN:  Well, I'm glad to hear that, Your

17  Honor, that you wouldn't allow that.  It's not clear to me

18  the plaintiffs won't try to do that because it seems like

19  quite a bit of a slippery slope.

20      But -- so you can't issue -- just to get back to

21  principles, Your Honor, you cannot issue the trial subpoena

22  and you do not have the authority to do so.

23      In order to reopen discovery in this case to allow them

24  to take what they are calling an evidentiary deposition

25  three days before the opening statements, they're going to

1  have to -- that extraordinary request has to be met with

2  good cause.  They've not given you any cause whatsoever,

3  much less good cause.

4      The mere fact that they would like to get this evidence

5  in at trial is not good cause.  They have to have shown

6  diligence for taking the discovery during the discovery

7  period.  And they've not told you that they did one single

8  thing to accomplish that because they didn't.

9      They didn't try to take the deposition of IQVIA.  And

10  if it was only going to be five minutes and if it was going

11  to be something so crucial to their case, there's no reason

12  why they didn't take it.  Their expert relied on it.  They

13  knew they wanted to get this into evidence and they didn't

14  even try.

15      The linchpin for assessing good cause under Rule 16 is

16  their diligence.  They haven't shown any diligence.  The

17  mere fact that they filed a motion for its admissibility is

18  not the diligence we care about.  But even so, defendants

19  opposed that motion.  They knew what the bases are.

20      And the suggestion that it's unreasonable that the

21  defendants have not stipulated to this data is a bit absurd,

22  Your Honor.  You have ruled that it is inadmissible.  You

23  have agreed with us that it is hearsay and it is irrelevant

24  because the defendants did not purchase it.

25      So the deposition of IQVIA is not going to fix that.

1   They're not going to testify that we had the data because we

2   didn't.  And insofar as the hearsay exception, we know what

3   they're going to say about that because they submitted a

4   letter that says exactly what this data is and what it

5   isn't.

6        It is not established factual information such as the

7   type that the Fourth Circuit says can be admissible under

8   the hearsay exception.  And Your Honor quoted from that

9   letter from IQVIA in Your Honor's order.  IQVIA has stated

10  that they will testify according to that letter.

11       So they haven't shown good cause because they, they

12  failed to exercise any diligence whatsoever.  They haven't

13  shown good cause -- we shouldn't even -- we don't even have

14  to get past that.  That's -- if you haven't shown diligence,

15  you're out under the case law.

16       But even getting to the other factors, they can't show

17  that this deposition is going to help them because it can't

18  override the factors that Your Honor has said are the bases

19  for your opinion excluding it.

20       And you can't issue the trial subpoena and they can't

21  work an end run around This Honor's schedule by trying to

22  co-opt discovery in other cases.  That would be an abuse of

23  the bellwether process and would allow them one-sided

24  discovery that the defendants are not entitled to.

25       So for those reasons, Your Honor, we ask that you deny

1    the plaintiffs' motion both to reopen discovery and to

2    permit a trial subpoena.

3              THE COURT:  Thank you, Ms. Hardin.

4         Mr. Majestro, what's your good cause to take the late

5    deposition?

6              MR. MAJESTRO:  The good cause is that -- that's

7    what trial depositions are.  They're depositions when you're

8    going to present the evidence with -- for witnesses that you

9    can't get to trial.  And, and Judge Goodwin has explained

10   that that is the practice here.

11        The second good cause is I think it's good cause that

12   it's reasonable to -- for us to assume that the defendants

13   were going to do what every -- what other defendants in all

14   of these cases were going to do and, you know, go back to

15   the original briefing.  Their own experts talk about the

16   reliability of this data.  It's not really in dispute.

17   They're, they're just trying to make it difficult on us.

18        And, so, it was reasonable for us to rely on the fact

19   that they would act reasonably.  We, we -- if we have to

20   take depositions of documents and other evidence that is not

21   seriously in dispute, we would, we would never be able to

22   get this case to trial.  And all we're asking for is this

23   one very short deposition.

24        Her argument that the rules don't allow the subpoena to

25   issue from this Court, none of the subpoena issues from

1    North Carolina -- under the rules, it's like a miscellaneous

2    action.  You don't have to formally open it up.  But you

3    can, you can issue the subpoena from, from North Carolina

4    just like the Court in the *Cherokee* case did.

5        And under Rule 43 you could actually -- we could

6    actually have remote video of this witness.  And I'll read

7    you the Advisory Committee notes.  It couldn't be clearer.

8        "When the issuing Court has made an order for remote

9    testimony under Rule 43(a), a subpoena may be used to

10   command a distant witness to attend and testify within the

11   geographical limit of Rule 45(c)."

12       That is, that is expressly -- an express quote from the

13   Advisory Committee.  It makes sense.  It would not make any

14   sense to have, have this process where you're going to have

15   remote testimony without the ability to compel the witnesses

16   to show up.

17       Finally, Your Honor, this whole issue about the

18   subpoena is if IQVIA was going to voluntarily show up, we

19   could -- there's no question we could have them testify in

20   court here.  We could have them sit for a deposition.

21       The issue about whether or not the subpoena is valid is

22   IQVIA's issue.  It's not -- the defendants don't have

23   standing to complain about that.  They aren't here filing

24   motions to quash a subpoena based on the grounds that

25   there's no authority to have them issue.

1    And, finally, since this is a remote deposition, we'll

2    get the witness to show up.  You issue a subpoena; the

3    *Cherokee* case issued a subpoena; the witness shows up;

4    witness shows up; we do the deposition.

5         Instead of arguing academically about, about what the

6    Advisory Committee says on Rule 43, we think you ought to

7    let us have this deposition, consider it in evidence.  And

8    we're not -- the slippery slope she's worried about we can

9    deal with if we step off a cliff and go down that.

10   Plaintiffs are not intending to do that.  This is not an end

11   run.  It's a trial deposition.

12        THE COURT:  Is there anything that might happen at

13   trial to get around your problems like through another

14   witness or something like that that would make it

15   admissible?

16        MR. MAJESTRO:  We don't think so.

17        MR. FARRELL:  Maybe.

18        MR. MAJESTRO:  Well, maybe.  My co-counsel pops

19   up.  There's -- I mean, not that we know of.  And because

20   Your Honor has required us in the order to lay the

21   foundation, we'd like to have a witness that does that.  And

22   the witness -- the best witness to do that is the 30(b)(6)

23   representative of IQVIA.  I mean, we've already spent more

24   time arguing about this than it would take to take the

25   deposition.

1          THE COURT:  Okay.  Well, I'll rule on this before

2     the sun goes down.

3          MR. MAJESTRO:  Thank you, Your Honor.

4          THE COURT:  Is there anything else we need to

5     discuss today?  That exhausts my list.

6        Yes, sir.

7          MR. SCHMIDT:  Yes, Your Honor.

8        In the category of just flagging a possible issue for

9     Your Honor, this is something we've been discussing with the

10    plaintiffs.

11       It's our understanding that at trial they intend to

12    have a screen -- a machine that will have various data in it

13    on distribution much like those election night screens you

14    can touch and manipulate the data and everything.  And I

15    guess they've had this for half a year now.  They let us see

16    it yesterday, but we haven't been able to actually

17    understand everything it contains.

18       And, so, we do have concerns about their use of

19    underlying data in that data set that we haven't been able

20    to test.  My understanding is we do have some 1006 evidence

21    that we got from you last night that we're looking at in

22    terms of potential objections.

23       So we'll, we'll continue to confer with the plaintiffs

24    on that.  But we just want to flag that for the Court as an

25    issue that might come up early next week if we can't work it

1   out.

2           THE COURT:  If it comes up, we'll deal with it.

3           MR. SCHMIDT:  Thank you, Your Honor.

4           MS. FLAHIVE WU:  Your Honor, Laura Wu from

5   McKesson.

6       We also wanted to raise a trial management issue about

7   deposition designations.  So far, the plaintiffs have

8   identified roughly 25 hours of deposition designations.  We

9   understand there are many more hours to come.  And we wanted

10  to check with you about your preferences and the procedures

11  for dealing with deposition designations during this trial.

12      First, we wanted to confirm that you would view those

13  deposition designations all at one time consistent with an

14  order Judge Polster issued in the MDL in chronological

15  order.

16      And, in addition, given the large scale of the

17  designations that we've seen thus far from plaintiffs, we

18  wanted to confirm that the designations would count against

19  a designating party's trial time in a rough sense so that a

20  party doesn't have a chance to sludge large amounts of

21  evidence into the record.

22      We wanted to check with you also as to whether you want

23  to view designations during court time or whether you prefer

24  to do that in chambers.

25      (Pause)

1        THE COURT:  On advice of counsel, I'll answer your

2   question.

3        MS. FLAHIVE WU:  Thank you, Your Honor.

4        THE COURT:  We prefer to watch them in chambers.

5   It makes it much easier for us if we have a written

6   transcript at the same time with the objections in it and

7   then we can annotate the transcript with our rulings and

8   give it back to you.  We followed that procedure in the

9   notorious pig case in North Carolina.  It was time

10  consuming, but it, it works that way.  So that's our -- my

11  preferred procedure if that's all right with everybody.

12       MS. FLAHIVE WU:  Yes, Your Honor.  And we'll

13  provide you with the videos in chronological order so they

14  follow the order of the depositions so they make sense

15  contextually.

16       THE COURT:  Okay.  Now, how is this going to

17  impact the trial time that I've allotted?

18       MS. FLAHIVE WU:  Well, Your Honor, that is an

19  issue that we, the defendants, are concerned about.  The

20  defendants have already received nearly 25 hours of

21  deposition designations from the plaintiffs.  We've also

22  been advised that they plan to designate significantly more

23  deposition designations.

24     We believe that this is an attempt by the plaintiffs to

25  scale up their presentation in this case, and we believe

1  that's inappropriate.

2      For that reason, we ask Your Honor to give guidance as

3  to the way that the time of deposition designations would

4  count against the designating party's trial time in this

5  case to avoid that type --

6          THE COURT:  Well, I'll have to think about that.

7  The easy answer is that it, that it counts against your

8  time, period.

9          MS. FLAHIVE WU:  We agree, Your Honor.  And we,

10  the defendants, will live by that same rule of course.

11          THE COURT:  Well, let me hear from the other side

12  about this.

13      Mr. Farrell.

14          MR. FARRELL:  Good morning, Your Honor.

15          THE COURT:  Good morning.

16          MR. FARRELL:  There's three issues that were

17  raised.

18      The first is the viewing the depositions in chambers.

19  And that was our understanding as well.  And I believe that

20  our teams are figuring out how to get them in the record,

21  but that's the idea.

22      But the second issue was we agree it should count

23  against trial time.  If, if we designate 20 minutes and the

24  defendants designate two hours, or vice versa, if the

25  defendants designate 20 minutes and we designate two hours,

1    it should count against you.

2         As the Court probably knows, I've tried several of the

3    bellwether cases in the transvaginal mesh and that was the

4    general rule.  And -- but that gets to point number one that

5    I think that counsel was alluding to.  And I think there is

6    a dispute about the sequencing of it.

7         In the *Boston Scientific* case in front of Judge Berger,

8    the way it worked when we had a jury, of course, is that we

9    would stand up and we would say, "Judge, we intend to

10   present the testimony of Bob Jones and the plaintiffs are

11   going to play for you five minutes."  And then we would play

12   five minutes of like a direct witness.

13        Then the defendants would get up and they would say for

14   the cross-examination, "We're going to play 10 minutes."

15   And then they would play their 10 minutes.

16        For some of these depositions it's not going to make a

17   difference.  So there's only two designations that are

18   really teed up right now.

19        We anticipate in the first week of trial after opening

20   that we will call Dr. Corey Waller as our first witness on

21   Tuesday.  Depending on when he gets done, we intend to call

22   a historian, Dr. Courtwright, to provide a little context

23   followed by Dr. Gupta and Jan Rader.

24        We would like to introduce into the record two

25   deposition transcripts.  One is a 30(b)(6) of Nate Hartle

1   that my colleague has mentioned we need expedited rulings on

2   the designations.  And the second is the testimony of the

3   DEA's 30(b)(6), Thomas Prevoznik.

4       So question number one is:  Do you plan on watching

5   deposition videos on weekdays or would you prefer that we

6   give you the designations on Friday for you to enjoy

7   watching over the weekend?

8           THE COURT:  It's college baseball season, Mr.

9   Farrell.

10      (Laughter)

11          MR. FARRELL:  So our intentions, we thought, were

12  that you probably will have heard enough of us on weekdays.

13  And, so, what we anticipated is on Fridays we would present

14  to the Court before closing proceedings a couple of the

15  video deposition designations that we intend to actually

16  submit in the record.  That's our intention.

17      Now, to address the voluminous hours of deposition

18  designations we've given so far, I'm hoping you're not

19  exasperated initially.  But what -- the purpose of it is

20  this:  We intend to follow the rules of evidence.

21      So if we're required to call a sponsoring witness, if

22  we're required to take a document to say, "What is it?  Do

23  you recognize it?  What's the date?  Do you see the Bates

24  stamp number?  Is that your name?"  If we're required to lay

25  basic foundations, we'll do so for every exhibit in this

1    case because as Your Honor is aware, we have spent three

2    years in discovery in between the time we started and we

3    came back.  My colleagues and our side, we get along fairly

4    well because there isn't a fight we haven't already had.

5         So we are going to designate dozens and dozens of

6    10-minute designations and then see how the rulings go.  And

7    if we are able to, to follow the rules of evidence, we have

8    some stipulations in place, we don't anticipate we're going

9    to be submitting them all.  But we're prepared to if we need

10   to lay the proper foundation.

11        Secondly, and finally, this is, this is the, the main

12   beef.

13        Thomas Prevoznik, the DEA's 30(b)(6) designee, was

14   deposed over a series of three days.  There were cross

15   notices, cross *Touhys*, and lots of fights to get DEA in the

16   seat and a whole panel of DOJ lawyers.

17        The argument was who got to go first.  And, so, we got

18   into an argument of whose subpoena got served first because

19   I wanted to go first because I knew we would be calling the

20   DEA 30(b)(6) in our case-in-chief and I would like the

21   question, "Please state your name," to come from me instead

22   of from the defendants.

23        So regardless when you look at the three days, when we

24   say, "What is your name," it's the afternoon of day two.

25        What I would like to do is I would like to designate --

1   I think our number is somewhere -- let's just say it's an

2   hour.  If I designate an hour on the afternoon of day two, I

3   want you to see it first because that's our case-in-chief

4   and it's what I want you to hear.

5       The defendants have designated, and rightfully so,

6   cross designated questions and answers from day one.  So

7   they want you to listen to an hour of day one of them asking

8   questions first when it's my case-in-chief.

9       Now, the only caveat to all of this is if I ask

10  question one and then I ask question three and I leave out

11  question two, the defendants have the right under the rule

12  of completeness to say, "Hey, you've got to put two back in

13  there because it doesn't make sense to pull it out and stick

14  it."

15      And this is exactly how we tried the case in front of

16  Judge Berger.  It's how we tried the case in front of Judge

17  Goodwin.

18      So while I appreciate the desire and the wish that the

19  defendants can call witnesses in our case-in-chief, we would

20  like to be the ones to have our voices asking the questions

21  first.

22          MS. FLAHIVE WU:  Your Honor, if I may.

23      Mr. Farrell is correct.  The parties have dealt with

24  many of these issues in the past.  In fact, in the MDL Track

25  One with Judge Polster, we had the exact same debate.

1      And Judge Polster entered an order -- it's MDL Docket

2   Number 2594 -- in which he required the parties to designate

3   deposition testimony so that all testimony for a witness

4   would be presented at one time following the natural order

5   of the evidence.

6      We understand that there may be particular witnesses in

7   which Mr. Farrell has an interest to go out of order.

8   However, that makes no sense because the depositions need to

9   be viewed question by question in the context of the

10   deposition.  That allows for the orderly and logical

11   admission of evidence in this case.

12      And we believe there needs to be one rule consistent

13   with Judge Polster's order in the MDL which applies to all

14   witnesses in this case.

15           THE COURT:  So his rule was to consider the

16   witness once?

17           MS. FLAHIVE WU:  Exactly, Your Honor.

18           THE COURT:  And each side gets to designate what

19   parts of the --

20           MS. FLAHIVE WU:  Exactly.  Each deponent calls --

21   each deposition designation would be all inclusive.  So all

22   parties' designations would be put in at one time so they

23   could be viewed in an orderly way as they were presented

24   during the depositions, Your Honor.

25           THE COURT:  Mr. Farrell, do you have any problem

1   with that?

2           MR. FARRELL:  With all due respect, that's not my

3   recollection of Case Track One of Judge Polster's order

4   regarding the order of play.  I can certainly go back and

5   take a look at it.

6       I will note, a little bit of tongue-in-cheek, that the

7   defendants appear to selectively be choosing which orders

8   they would like you to enforce from Judge Polster.

9           MS. FLAHIVE WU:  Your Honor, I have a copy of the

10  order if it would be convenient to provide it.

11          MR. SCHMIDT:  Your Honor, may we just go off the

12  record for one moment?

13          THE COURT:  Yes.

14      (Off-the-record discussion after which the following

15  occurred:)

16          THE COURT:  Judge Polster's trial was a jury

17  trial, wasn't it?

18          MR. FARRELL:  Yes, Your Honor.

19          THE COURT:  Well, I think we have a little

20  different situation here since the parties have consented to

21  a bench trial.  And I think the thing to do would be to let

22  you put your parts in first, Mr. Farrell, and then have the

23  other side come back and do theirs.  We don't have the

24  problem with confusing the jury that we would have in a jury

25  trial.

1      And as far as, as far as my review of the depositions

2   and the objections and everything, just give them to us as

3   far ahead of time as you can and we'll take the time to get

4   them done.  That might be a way to fill up the Friday

5   afternoons that I thought we were going to take off.

6          MR. FARRELL:  Judge, I think what we're working

7   out is that we'll have a spreadsheet that line items the

8   objections.  But then we'll have a color-coded transcript

9   that will show the designations from one party, the

10  designations from another party, and then highlight

11  separately where the objections are.

12         THE COURT:  Well, that would be, that would be

13  very helpful and eliminate some of the danger that I might

14  get confused.

15     Okay.  Do we have anything else we need to take up this

16  morning?

17         MS. MAINIGI:  Your Honor, just with respect to

18  openings, I assume Your Honor generally wants us around the

19  podium for doing the openings.

20         THE COURT:  Well, yeah.  The -- if you speak at

21  the podium and speak directly into the microphone, that will

22  help me to understand you.  I don't have a big problem with

23  the lawyers moving around the courtroom.  In a jury trial we

24  try to put the lid on that.  But anything within reason that

25  you need to do to be comfortable --

1          MS. MAINIGI:  Thank you, Your Honor.

2          THE COURT:  -- is okay with me.

3          MS. MAINIGI:  Thank you, Your Honor.

4          THE COURT:  But the most helpful thing to me would

5    be to have you at the podium speaking directly into the

6    microphone.

7          MS. KEARSE:  Your Honor, is there any chance if we

8    have lapel mics if we saw we were going to be using the

9    screen and we had a lapel mic that would hook up?

10         THE COURT:  Oh, you want to walk over and point to

11   the screen?

12         MS. KEARSE:  Yeah, if someone --

13         THE COURT:  Oh, no, that's fine.

14         MS. KEARSE:  So we could have a lapel mic so we're

15   always mic-ed up on that as well.

16         THE COURT:  No, that's fine.

17         MS. KEARSE:  Thank you, Your Honor.

18         THE COURT:  Okay.  Going once.  All right, if

19   there's nothing further, I'll see you at 9:30 Monday morning

20   and we'll proceed with the openings.

21      I'm going to ask counsel to be here at 9:00 so if any

22   problems come up, we can deal with them without cutting into

23   the time we've already set aside for the opening statements.

24   Okay?

25         I'll see everybody on Monday.

1        (Proceedings concluded at 11:49 a.m.)

2                        *  *  *  *  *

3

4

5

6

7

8        I, Lisa A. Cook, Official Reporter of the United

9   States District Court for the Southern District of West

10  Virginia, do hereby certify that the foregoing is a true and

11  correct transcript, to the best of my ability, from the

12  record of proceedings in the above-entitled matter.

13

14

15     s\Lisa A. Cook                    April 30, 2021

16        Reporter                          Date

17

18

19

20

21

22

23

24

25