# Exhibit 7

# COVINGTON

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 6000

**By Electronic Mail**  February 21, 2020

Mr. Michael B. Stuart
United States Attorney
Robert C. Byrd US Courthouse
300 Virginia Street
Charleston, WV 25301
Email: mike.stuart@usdoj.gov

> Re: *Touhy* Requests in *City of Huntington v. AmerisourceBergen Drug Corporation*, 3:17-01362 (S.D. W. Va.), and *Cabell County Commission v. AmerisourceBergen Drug Corporation*, 3:17-01665 (S.D. W. Va.)

Dear Mr. Stuart:

      I write on behalf of Defendants in the matters of *City of Huntington v. AmerisourceBergen Drug Corporation*, 3:17-01362, and *Cabell County Commission v. AmerisourceBergen Drug Corporation*, 3:17-01665, pending in the United States District Court for the Southern District of West Virginia. In connection with those lawsuits, we will subpoena documents and testimony from the Drug Enforcement Administration ("DEA"). Copies of the subpoenas and accompanying correspondence are attached for your reference as Exhibit 1 and Exhibit 2.

      This letter is submitted pursuant to 28 C.F.R. § 16.21 *et seq.*, the Department of Justice *Touhy* regulations. Because these subpoenas are directed at DEA, compliance is subject to the *Touhy* process, and, for that reason, we have not effected formal service of process and hope that it will be unnecessary. The basis for this request is set forth below with reference to the requirements imposed by the *Touhy* regulations.

## I. Summary of Information Sought and its Relevance to the Proceeding

      These cases, recently remanded from *In re: National Prescription Opiate Litigation*, MDL No. 2804 (N.D. Ohio), involve claims by the City of Huntington and Cabell County Commission against DEA-registered pharmaceutical distributors. Plaintiffs allege, among other things, that the distributors violated the federal Controlled Substances Act ("CSA") and accompanying DEA regulations.

      Given DEA's role in investigating and combatting prescription drug abuse in the Appalachian region, the discovery Defendants seek from DEA is crucial to Defendants' ability to defend against Plaintiffs' allegations. For example, discovery concerning DEA's investigation of

COVINGTON

Robert C. Byrd US Courthouse
February 21, 2020
Page 2

unlawful diversion and communications regarding the source of any increase is crucial to responding to Plaintiffs' allegations regarding causation as well as assessing the reasonableness of Defendants' conduct. Likewise, discovery concerning DEA's use of suspicious order reports, ARCOS data, or any other communications from Defendants to combat the diversion or misuse of prescription opioids is critical to assessing the reasonableness of Defendants' conduct.

As summarized below, we request documents and testimony relating to Plaintiffs' allegations that Defendants violated duties arising under the CSA. Plaintiffs' allegations span a broad timeframe throughout which various DEA personnel interacted with Defendants and developed specialized knowledge of DEA practice and procedure.

### A. Information Sought from DEA

Defendants request documents and testimony pursuant to Federal Rule of Civil Procedure 30(b)(6) from DEA relating, but not limited to, the following topics:

- Documents submitted by DEA to the House Energy and Commerce Committee as part of its investigation that resulted in the report *Red Flags and Warning Signs Ignored: Opioid Distribution and Enforcement Concerns in West Virginia*;

- The determination of estimates of diversion for Prescription Opioids during the Relevant Time Period pursuant to the Substance Use-Disorder Prevention that Promotes Opioid Recovery and Treatment for Patients and Communities Act (SUPPORT Act);

- Efforts to utilize ARCOS data, suspicious order reports, or the West Virginia Controlled Substance Automated Prescription Program data to combat the diversion or misuse of Prescription Opioids in the City of Huntington, Cabell County, or any town, village, or city within Cabell County;

- The unlawful use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, and/or trafficking of Prescription or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County;

- Any arrests, investigations, and indictments for crimes relating to the unlawful use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, and/or trafficking of Prescription or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County;

- Efforts to combat the unlawful use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, and/or trafficking of Prescription or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County;

- Individuals or entities suspected or known to have unlawfully produced, transported, diverted, sold, and/or trafficked Prescription or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County;

**COVINGTON**

Robert C. Byrd US Courthouse
February 21, 2020
Page 3

- Efforts to suspend, revoke, or seek the suspension or revocation of registrations or licenses of, or fine or otherwise sanction any distributors, doctors, pharmacies, pharmacists, healthcare providers or other persons or entities because of the alleged diversion or trafficking of Prescription Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County;

- Recommendations for actions to be taken by DEA or any federal, state, or local agency within the City of Huntington, Cabell County, or any town, village, or city within Cabell County, to combat the use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, and/or trafficking of Prescription or Illicit Opioids;

- The structure and operation of the DEA within West Virginia, including but not limited to organizational charts and all Documents discussing the operation of DEA within West Virginia and DEA's staffing in West Virginia.

- The use, misuse, abuse, sale, diversion, production, transportation, distribution, purchase, and/or trafficking of Prescription or Illicit Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County;

- Efforts to combat drug-related crime, respond to the opioid epidemic, or form a joint task force to combat the opioid epidemic;

- The inspection, audit, or investigation conducted by DEA of any Defendant located in or distributing to pharmacies in West Virginia, including inspections, audits, and investigations that did not lead to any further investigation or enforcement action;

- DEA's policies and procedures and training with respect to inspections, audits and/or investigations of registrations in West Virginia, and summary information of completed inspections, audits and/or investigations of licensees by year;

- DEA's use of the Suspicious Order Reporting System (SORS), ARCOS data, or any other communications from Defendants to combat the diversion or misuse of Prescription Opioids within or into the City of Huntington, Cabell County, or any town, village, or city within Cabell County;

- DEA's policies and procedures and training with respect to inspections, audits and/or investigations of registrations in West Virginia, and summary information of completed inspections, audits and/or investigations of licensees by year;

- The investigation of suspicious orders reported by Defendants for West Virginia pharmacies, hospitals, or other dispensers for the Relevant Time Period;

- DEA's use of ARCOS data to investigate West Virginia pharmacies, pharmacists, or health care providers for the Relevant Time Period;

**COVINGTON**

Robert C. Byrd US Courthouse
February 21, 2020
Page 4

- Any action DEA took in response to the U.S. Department of Justice Office of the Inspector General's report entitled *Review of the Drug Enforcement Administration's Regulatory and Enforcement Efforts to Control the Diversion of Opioids* (September 2019);

- DEA's decision to establish only one Tactical Diversion Squad for West Virginia until 2016;

- The search and seizure warrant executed on Safescript Pharmacy #6 in the United States District Court for the Southern District of West Virginia, Huntington Division (3:12-mj-00010) (February 15, 2012);

- DEA's investigation of and decision to not prosecute Wendell Kent Freeman;

- Suspicious order reports for West Virginia pharmacies, hospitals, and other dispensers that were submitted directly to DEA field offices in West Virginia;

- DEA's efforts relating to diversion or misuse of prescription opioids in West Virginia;

- DEA's communications with any federal, state, or local agency regarding access to Suspicious Order Reporting System (SORs) and/or the ARCOS database;

- DEA's communications with or about the Healthcare Distribution Alliance (HDA) or Healthcare Distribution Management Association (HDMA);

- DEA's efforts to investigate any pharmacists, pharmacy interns, doctors or other prescribers in the City of Huntington, Cabell County, or any township, village, or city within Cabell County, prior to registering them or renewing their registration to lawfully prescribe or dispense controlled substances;

- The determination of Aggregate Production Quotas for Prescription Opioids;

- DEA's communications concerning Government Accountability Office (GAO) relating to the following report: *Drug Control: Actions Needed to Ensure Usefulness of Data on Suspicious Opioid Orders*, GAO-20-118 (Washington, D.C.: January 2020); and

- DEA's instructions regarding the submission of suspicious order reports, including any and all Documents or Communications in which the DEA told a manufacturer or distributor to stop submitting suspicious order reports and/or excessive purchase reports.

## II. Disclosure is Warranted Under 28 C.F.R. § 16.26

Pursuant to DOJ's *Touhy* regulations, the Deputy or Associate Attorney General assesses the following considerations in determining whether disclosure is warranted:

COVINGTON

Robert C. Byrd US Courthouse
February 21, 2020
Page 5

> (1) Whether such disclosure is appropriate under the rules of procedure governing the case or matter in which the demand arose, and
>
> (2) Whether disclosure is appropriate under the relevant substantive law concerning privilege.

28 C.F.R. § 16.26(a).

This request satisfies both of these considerations. As explained previously, the requested documents and testimony directly concern the allegations in this lawsuit. Plaintiffs allege Distributors violated regulatory duties arising under the CSA, and the requested information is relevant to determining the nature of the alleged regulatory duties, the reasonableness of Defendants' conduct, and the role of Defendants in causing the injuries alleged by Plaintiffs. Moreover, Defendants do not request privileged documents.

Additionally, DOJ's *Touhy* regulations prohibit disclosure, subject to certain exceptions, if any of the following factors exist:

> (1) Disclosure would violate a statute, such as the income tax laws, 26 U.S.C. 6103 and 7213, or a rule of procedure, such as the grand jury secrecy rule, F.R.Cr.P., Rule 6(e),
>
> (2) Disclosure would violate a specific regulation;
>
> (3) Disclosure would reveal classified information, unless appropriately declassified by the originating agency,
>
> (4) Disclosure would reveal a confidential source or informant, unless the investigative agency and the source or informant have no objection,
>
> (5) Disclosure would reveal investigatory records compiled for law enforcement purposes, and would interfere with enforcement proceedings or disclose investigative techniques and procedures the effectiveness of which would thereby be impaired,
>
> (6) Disclosure would improperly reveal trade secrets without the owner's consent.

28 C.F.R. § 16.26(b).

This request is not intended to implicate any of these considerations. To the extent DOJ or DEA believe any of the requested information does implicate these considerations, Defendants are willing to work with DOJ, if possible, to narrow the scope of the request. The requested information is within the scope of ordinary subpoena practice and does not seek disclosure of information prohibited by statute or regulation, nor information that is classified

COVINGTON

Robert C. Byrd US Courthouse
February 21, 2020
Page 6

or that would reveal the source of an informant.  To the extent Defendants request investigatory records compiled for law enforcement purposes, Defendants do not request investigatory records that would interfere with ongoing enforcement proceedings.  Further, in abundance of caution and to avoid any concern that disclosure of investigatory records would reveal "investigative techniques and procedures the effectiveness of which would thereby be impaired," Defendants request that the information be provided as highly confidential pursuant to the protective order governing this matter.

### III.     Expedited Response

We ask that you work with Defendants to establish a reasonable schedule for disclosure of the requested documents and completion of testimony prior to that date.

Please contact me directly at 202-662-5982 or lflahivewu@cov.com if you have any questions concerning this subpoena or require additional information.

Sincerely,

*/s/Laura Flahive Wu*
Laura Flahive Wu

*Counsel for Defendant McKesson Corporation*

Attachments