IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

THE CITY OF HUNTINGTON,
     Plaintiff,

v.

AMERISOURCEBERGEN DRUG                         CIVIL ACTION NO. 3:17-01362
CORPORATION, et al.,
     Defendants.

_____

CABELL COUNTY COMMISSION,
     Plaintiff,

v.

AMERISOURCEBERGEN DRUG                         CIVIL ACTION NO. 3:17-01665
CORPORATION, et al.,
     Defendants.

**RESPONSE TO MCKESSON CORPORATION'S MOTION
TO PROHIBIT PLAINTIFFS' IMPROPER USE OF TESTIMONY
OF MCKESSON WITNESS NATHAN HARTLE**

**INTRODUCTION**

McKesson Corporation's motion (Doc. 1298) to prohibit the testimony of witness Nathan

Hartle should be stricken as it clearly violates the Order Establishing Procedure for Designation

and Use of Deposition Testimony at Trial ("deposition designation stipulation").[1]  Even if the

Court finds that the motion is proper for this Court's consideration, McKesson has not met its

burden of establishing that the evidence sought to be excluded is clearly inadmissible on all

grounds. Any evidentiary ruling should be deferred until trial so that questions of relevancy and

potential prejudice may be resolved in proper context.

---

[1] Doc. 996 (9/21/20).

## LEGAL STANDARD

A motion in limine to exclude evidence "should be granted only when the evidence is clearly inadmissible on all potential grounds." *United States v. Verges,* No. 1:13CR222 JCC, 2014 WL 559573, at *3 (E.D. Va. Feb. 12, 2014).

## ARGUMENT

### I.    McKesson's Motion Should be Stricken Because it is Untimely and Violates the Deposition Designation Stipulation

McKesson Corporation's improperly filed motion to prohibit testimony of McKesson's own 30(b)(6) witness, Nathan Hartle, violates the deposition designation stipulation procedure. In the deposition designation stipulation, this Court approved an agreed-to process for resolving objections to designations.[2]  Without following this already in-place process, McKesson filed the instant motion setting forth 461 separate objections to the Plaintiffs' designation of Mr. Hartle's testimony.[3]  The motion also violates this Court's scheduling order as it was served seven months past the October 2, 2020 deadline for filing motions in limine.[4]

Mr. Hartle's deposition was taken almost three years ago, on July 31, 2018.  A prior attempt to strike this testimony in its entirety was rejected by Judge Polster prior to the CT1 trial.[5] McKesson objects on the basis that Mr. Hartle's testimony contains impermissible opinions on questions of law; impermissible lay expert testimony; opinions based on speculation, hearsay, or both, and that Plaintiffs' counsel "badgered the witness" and asked questions allegedly outside the

---

[2]  *See id.*

[3]  *See* Doc. 1298-2, Appendix B to McKesson's Motion.

[4]  The original agreed to deadline was October 30, 2020.   By agreement, the motion in limine deadline was extended to October 2, 2020.

[5]  MDL Doc. 3052 at p. 34.

scope of the agreed-upon Rule 30(b)(6) topics.[6]  These are the same objections that were raised in CT1.  Since McKesson did not timely file a motion in limine, it should be limited to following the deposition stipulation procedure.  Because McKesson's motion is untimely and in violation of the deposition stipulation procedure, Plaintiffs request that the motion be stricken.

## II.    Even if the Court Considers McKesson's Untimely Motion, the Testimony is Admissible

Although McKesson's motion to prohibit the use of Mr. Hartle's testimony is untimely, Plaintiffs have replied to each of the 461 specific objections, which Plaintiffs have attached as Exhibit A. McKesson improperly raises the following categories of issues with Mr. Hartle's testimony: 1) whether Mr. Hartle's testimony includes opinions on issues of law; 2) whether Plaintiffs' questions called for expert testimony from a lay witness; and 3) whether Plaintiffs' questioning calls for  speculation, inadmissible hearsay, or both.  Further, McKesson improperly asserts that Mr. Hartle's testimony was outside the scope of the Rule 30(b)(6) deposition. For the reasons more fully set forth below, McKesson's motion to strike Mr. Hartle's testimony on these grounds should be denied.

### 1.    Plaintiffs' Questions Did Not Call for Mr. Hartle to Improperly Opine on Issues of Law

McKesson's first group of objections alleges improper opinions on issues of law.[7] For example, McKesson seeks to exclude the following testimony:

Q: My question is: Does McKesson acknowledge the reporting requirement, as you just read aloud, is a duty owed by McKesson under the federal regulations and United States Code?

A: And it's our responsibility to report suspicious orders.

---

[6] McKesson's Motion, p. 1.

[7] McKesson has withdrawn its objection to the settlement agreements pursuant to the Court's determination that "evidence regarding prior settlements is not barred by either Federal Rule of Evidence 408 or 403." *See* Doc. 1297 (4/29/21).

Q: So the answer to my question is yes—

A: Yes.

Q: --no, or I don't know.

A: It is our—yes.[8]

****

Q: Does McKesson acknowledge that the shipping requirement is a duty it owes under the United States Code and the Code of Federal Regulations?

A: Yes.[9]

As is evident from this example, the testimony that McKesson challenges as improper legal opinions are not legal opinions; rather, they constitute factual information regarding McKesson's knowledge and/or notice of applicable regulations (such as the reporting requirement and shipping requirement).  Knowledge and/or notice of regulatory obligations do not constitute legal conclusions.

### 2.  Plaintiffs' Questions Did Not Call for Expert Testimony from a Lay Witness

McKesson's second group of objections alleges that Plaintiffs' questions call for expert testimony from a lay witness.[10] For example, McKesson seeks to exclude the following testimony:

Q: As the McKesson corporate representative, do you acknowledge that abuse of prescription opium pills is a gateway to the initiation of heroin?

A: Based on everything that I've read and in the media and statistics and discussion, I would agree—agree to that.[11]

---

[8] (N. Hartle July 31, 2018 Tr.) at 36:14-18, 20-22, 36:24-37:2, 37:4.

[9] *Id.* at 38:14-17, 19.

[10] McKesson's Motion at pp. 6-8.

[11] (N. Hartle July 31, 2018 Tr) at 320:14-17, 20-23.

McKesson asserts that questions regarding the "gateway theory" require specialized medical and public health knowledge[12] and involve a "complex topic that is subject of heated expert debate in this litigation."[13]

      As an expert in controlled substances generally, and opioids specifically, McKesson should have such specialized knowledge to be able to answer questions on this topic. Thus, McKesson alone had the ability and responsibility to select the appropriate person to address this inquiry. Moreover, Mr. Hartle had no problem answering questions posed of him on this subject because, in fact, he does possess such specialized knowledge himself.[14] Mr. Hartle has presented data on opioids being a gateway to heroin use to various McKesson pharmacy customers and to McKesson employees in his capacity as Vice President of Regulatory Affairs and Compliance for McKesson.[15] The fact that McKesson trusted Mr. Hartle's expertise to discuss opioids being a gateway to heroin use in presentations to its own customers and its own employees alone completely undercuts the validity of McKesson's argument that Mr. Hartle lacks the requisite knowledge on this subject now.

### 3. Plaintiffs' Questioning Did Not Call for Speculation, Inadmissible Hearsay, or Both.

      McKesson's third group of objections alleges that Plaintiffs' questions called for speculation, inadmissible hearsay, or both. For example, McKesson seeks to exclude the following testimony:

      Q: Now, read paragraph C, please.

---

[12] McKesson's Motion at 7. Further, McKesson asserts that questions by Plaintiffs' counsel regarding Mr. Hartle's testimony as to whether "the prescription opiate pill abuse is a driving factor in the heroin epidemic" required Mr. Hartle to draw inappropriate legal conclusions. To the contrary, this testimony relates to McKesson's duties under the CSA and why those duties are important.

[13] *Id.* at 3.

[14] (N. Hartle July 31, 2018 Tr) at 320:14-321:13.

[15] (N. Hartle July 31, 2018 Tr.) 15:14-24; Exhibits B and C.

A: "Abuse of a drug or other substances may lead to severe psychological or physical dependence."

Q: Does McKesson agree and acknowledge this finding?

A: Yes[16]

****

Q: Is there a relationship between the number of pills that get sold and the number of pills that get diverted?

A: It's hard to say, but you could assume that the –you know—

Q: I don't want you to assume.

A: Yeah.

Q: I want you to use common sense.

A: Yeah. Using common sense and basic logic, you could assume the more pills that are out there, the more potential for diversion there could be.[17]

****

Q: If you abuse prescription opiates, the CDC says that you're 40 times more likely to initiate heroin use. Does McKesson acknowledge that – the prescription opiate pill abuse is a driving factor in the heroin epidemic we're also experiencing?

A: Yeah, it's a factor.[18]

McKesson asserts that "much of the designated questioning is entirely speculative" and required him to opine on issues for which he lacked personal knowledge.[19] Mr. Hartle's testimony regarding substance abuse leading to severe psychological or physical dependence and the gateway

---

[16] *Id.* at 47:6-11,13.

[17] *Id.* at 268: 1-3, 5-7, 9-15.

[18] Id. at 320:25-321:6, 9-10.

[19] McKesson's Motion at 8.

theory is not speculative because Mr. Hartle is testifying on behalf of McKesson, with the knowledge of McKesson. As a company with vast experience and expertise in controlled substances generally, and opioids specifically, McKesson should have had, and did have, the knowledge to answer questions on this topic.

Moreover, the testimony does not indicate that Mr. Hartle was guessing or speculating. In fact, McKesson has produced and given PowerPoint presentations surrounding the gateway theory[20] and, as testified, McKesson affirmatively agreed with the information at issue.

While McKesson asserts that the testimony regarding the gateway theory also constitutes inadmissible hearsay, hearsay is inapplicable because Rule 30(b)(6) deposition testimony of an adverse party is admissible under Fed. R. Civ. P. 32(a)(3) which permits an adverse party to use a *party's* Rule 30(b)(6) deposition for any purpose and is excluded from the definition of hearsay under Fed. R. Evid. 801(d)(2) as it was a statement of an opposing party.

### III.   Mr. Hartle's 30(b)(6) Testimony Was Not Outside the Scope of the Notice and Should Properly Bind McKesson

McKesson requests that the Court exclude the deposition testimony of Mr. Hartle on the grounds that Plaintiffs' counsel exceeded the scope of the 30(b)(6) designation and "badgered" Mr. Hartle about inappropriate topics, such as whether he believes McKesson is responsible for the opioid epidemic.[21] For example, McKesson contends that the following testimony was beyond the scope of the 30(b)(6) deposition:[22]

> Q: Well, back to McKesson Corporation, which is you sitting in the chair today. Knowing what you know as the 30(b)(6) representative, the corporate designee, knowing about your past conduct, knowing about the past interactions with the DEA, I'm going to ask you again: Does McKesson Corporation accept partial responsibility for the societal costs of prescription drug abuse in America?

---

[20] *See* Exhibits B and C.

[21] McKesson's Motion at 9-11.

[22] *See also id.* at n.4.

A: Again, you know, I –we're part of the closed system, so we're responsible for preventing diversion.

Q: So the answer is?

A: Again, I think we're responsible for something. I don't know what—how you define all the societal costs and – I still believe it depends on different circumstances."

Q: Sir, we're not going to parse out percentages.

A: Yeah.

Q: Let's just talk globally for McKesson Corporation. So I don't want to put words in your mouth because it's got to come out of your mouth. So the answer is yes or no.

A: I would say yes, partially.[23]

The testimony at issue addresses one or more topics contained within Plaintiffs' amended first notice of 30(b)(6) deposition. *See* Hartle 7/31/2018 Dep. Ex. 1 at 6-7 (e.g., topic (c) "Your past/present interpretation, compliance, agreement and/or disagreement with the "Dear Registrant" letters from the DEA outlining the duties imposed on a distributor under federal law" (which addressed responsibility of distributors), (n.) "Your past/present interpretation, agreement or disagreement with the positions and arguments asserted in the Brief for Healthcare Distribution Management Association and National Association of Chain Drug Stores as Amici Curiae in Support of Either Party filed in *Masters Pharm., Inc. v. Drug Enft. Admin.,* 861 F.3d 206 (D.C Cir. 2017)" (which confirmed the opioid epidemic and addressed responsibility of distributors)).

McKesson asserts that Mr. Hartle was "badgered" by Plaintiffs' counsel regarding McKesson's role in contributing to the opioid epidemic.[24] Given that Mr. Hartle was designated

---

[23] (N. Hartle July 31, 2018 Tr) 285:6-15, 17-20, 22, 285:24-286:12, 14-15.

[24] McKesson's Motion at 2-3.

by McKesson to broadly speak regarding the company's compliance, or lack thereof, with its regulatory and societal responsibilities concerning opioid distribution, this testimony is well within the scope of topics Mr. Hartle could reasonably be expected to discuss.

Moreover, McKesson is undoubtedly in an excellent position to judge its own culpability in contributing to the opioid epidemic, and as the company's designated spokesperson on those topics, Mr. Hartle is precisely the person that should be expected to answer this central question. *See e.g., Hilton Hotels Corp. v. Dunnet,* No. 00-2852-GV, 2002 WL 1482543, *2 (W.D. Tenn. Mar. 15, 2002)(30(b)(6) "deponents are expected to speak as to the knowledge of the corporation and the corporation's subjective beliefs and opinions and interpretation of documents and events"); *Robinson v. Quicken Loans, Inc.,* No. 3:12-CV-00981, 2013 WL 1776100, at *3 (S.D.W. Va. Apr. 25, 2013)("The Rule 30(b)(6) witness speaks for the entity. As such, the witness is not presented to provide his personal knowledge and opinions, but, instead, must be prepared to testify to the corporation's knowledge, its position on the depositions topics, its 'subjective beliefs and opinions,' and its 'interpretation of documents and events.'"). While McKesson, no doubt, dislikes the testimony Mr. Hartle offered on this point, that distaste does not justify the exclusion of this relevant testimony.

Despite the fact that Plaintiffs' examination was tailored to the confines of the 30(b)(6) notices, Plaintiffs were not necessarily limited to questioning Mr. Hartle on matters specifically in those notices. *See Harris v. Goins,* No. CV 6: 15-151-DCR, 2017 WL 4080692, at *2 (E.D. Ky. Sept. 14, 2017) ("Rule 30(b)(6) does not limit what can be asked at a deposition, nor does it confer a special privilege on a deponent responding to this type of notice").

As outlined in *King v. Pratt & Winery, a Div. of Technologies Corp.,* 161 F.R.D. 475, 476 (S.D. Fla. 1995):

Rule 30(b)(6) should not be read to confer some special privilege on a corporate deponent responding to this type of notice….Rather, the Rule is best read as follows:

1) Rule 30(b)(6) obligates the responding corporation to provide a witness who can answer questions regarding the subject matter listed in the notice.
2) If the designated deponent cannot answer those questions, then the corporation has failed to comply with its Rule 30(b)(6) obligations and may be subject to sanctions, etc. The corporation has an affirmative duty to produce a representative who can answer questions that are both within the scope of the matters described in the notice and are "known or reasonably available" to the corporation. Rule 30(b)(6) delineates this affirmative duty.
3) If the examining party asks questions outside the scope of the matters described in the notice, the general deposition rules govern (i.e. Fed.R.Civ.P. 26(b)(1), so that relevant questions may be asked and no special protection is conferred on a deponent by virtue of the fact that the deposition was noticed under 30(b)(6).
4) However, if the deponent does not know the answer to questions outside the scope of the matters described in the notice, then that is the examining party's problem.

Thus, McKesson's contention that Plaintiffs somehow strayed from the 30(b)(6) topics is immaterial, as the notices themselves did not serve to limit the topical areas that could be addressed with Mr. Hartle.

## CONCLUSION

For the foregoing reasons, McKesson's motion to preclude Plaintiffs from offering testimony from Mr. Hartle at trial should be stricken as untimely or otherwise denied.

Dated: May 3, 2021

Respectfully submitted,

**THE CITY OF HUNTINGTON**

/s/ *Anne McGinness Kearse*
Anne McGinness Kearse (WVSB No 12547)
Joseph F. Rice
**MOTLEY RICE LLC**
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel: 843-216-9000
Fax: 843-216-9450
akearse@motleyrice.com
jrice@motleyrice.com

Linda Singer
David I. Ackerman
**MOTLEY RICE LLC**
401 9th Street NW, Suite 1001
Washington, DC 20004
Tel:  202-232-5504
Fax:  202-386-9622
lsinger@motleyrice.com
dackerman@motleyrice.com

Charles R. "Rusty" Webb (WVSB No. 4782)
**The Webb Law Centre, PLLC**
716 Lee Street, East
Charleston, West Virginia 25301
Telephone: (304) 344-9322
Facsimile: (304) 344-1157
rusty@rustywebb.com

**CABELL COUNTY COMMISSION**

/s/ *Paul T. Farrell Jr.*
Paul T. Farrell, Jr. (WVSB Bar No. 7443)
**FARRELL & FULLER LLC**
1311 Ponce de Leon Ave., Suite 202
San Jaun, Puerto Rico 00907
Mobile: 304-654-8281
paul@farrell.law

/s/ *Anthony J. Majestro*
Anthony J. Majestro (WVSB No. 5165)
**POWELL & MAJESTRO, PLLC**
405 Capitol Street, Suite P-1200
Charleston, WV 25301
304-346-2889 / 304-346-2895 (f)
amajestro@powellmajestro.com

Michael A. Woelfel (WVSB No. 4106)
**WOELFEL AND WOELFEL, LLP**
801 Eighth Street
Huntington, West Virginia 25701
Tel. 304.522.6249
Fax. 304.522.9282
mikewoelfel3@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on May 3, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Anthony J. Majestro*

Anthony J. Majestro (WVSB 5165)