UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

THE CITY OF HUNTINGTON,
    Plaintiff,

v.                                    CIVIL ACTION NO. 3:17-01362

AMERISOURCEBERGEN DRUG
CORPORATION, et al.,
    Defendants.

CABELL COUNTY COMMISSION,
    Plaintiff,

v.                                    CIVIL ACTION NO. 3:17-01665

AMERISOURCEBERGEN DRUG
CORPORATION, et al.,
    Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE HOUSE ENERGY & COMMERCE COMMITTEE REPORT**

    Plaintiffs the City of Huntington and Cabell County Commission ("Plaintiffs") respectfully submit this memorandum of law in opposition to Defendants' Motion to Exclude the House Energy & Commerce Committee Report (ECF No. 1307).

**INTRODUCTION**

    In the MDL Court's Evidentiary Order, Judge Polster denied a motion in limine by Defendant McKesson Corporation to exclude evidence about the U.S. House of Representatives Energy and Commerce Committee's investigation and report—*Red Flags and Warning Signs Ignored: Opioid Distribution and Enforcement Concerns in West Virginia*. *See* MDL Evidentiary Order (MDL ECF No. 3052) at 20-21. He found that this evidence is both relevant to claims against distributor defendants concerning the opioid epidemic, and that the Report itself is

admissible under Fed. R. Evid. 803(8) as a public record subject to the rule's hearsay exception. *Id.* at 20. He separately addressed whether the Report's "'source of information or other circumstances indicate a lack of trustworthiness,'" *id.* at 20-21 (quoting Fed. R. Evid. 803(8)(b)), and held that McKesson had not shown the Report to be unreliable. *Id.* at 21. Judge Polster further stated with respect to this and the other rulings in the Evidentiary Order that, "as a general matter, these rulings apply to remanded cases tried by transferor courts." *Id.* at 1.

Defendants provide no reason for this Court to deviate from Judge Polster's ruling on this evidence. The House Report has even greater relevance here than in most other MDL cases because this action concerns the opioid distribution practices in West Virginia that are one of the Report's primary focuses. The Report itself is an "in-depth investigative report," which is "the standard example of a public record containing factual findings from a legally authorized investigation under Rule 803(8)(A)(iii)[.]" *Davis v. City of New York*, 959 F. Supp. 2d 427, 435 (S.D.N.Y. 2013). Moreover, Defendants' argument that the sources of information presented to the House Committee were inappropriately biased against them was considered and rejected by Judge Polster, and rightfully so since Committee members heard from a wide array of information sources including Defendants themselves before, during, and after its hearing.

Finally, the Court also should reject Defendants' separate argument that the House Committee Report and investigation evidence is unfairly prejudicial to them and thus subject to exclusion under Fed. R. Evid. 403. As the Fourth Circuit has held, "in the context of a bench trial, evidence should not be excluded under [Rule] 403 on the ground that it is unfairly prejudicial" because the "court can hear relevant evidence, weigh its probative value and reject any improper inference." *Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994).

For all of these reasons, the Court should deny Defendants' motion to exclude.

**LEGAL STANDARD**

Rule 803 excludes from the rule against hearsay "[p]ublic records," which it defines in relevant part as a "record or statement of a public office if it sets out . . . in a civil case . . . factual findings from a legally authorized investigation;" and "the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(A)(iii)-(B).

Rule 803(8) is premised upon "the assumption that a public official will perform his duty properly . . . ." Fed. R. Evid. 803 advisory committee's note to Exception (8) ("Advisory Committee Note"). The rule thus "assumes admissibility in the first instance," while permitting exclusion "if sufficient negative factors are present." *Id.*; *see also Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167 (1988) (quoting advisory committee note).

The party opposing admission of public investigatory reports thus bears the burden to demonstrate that circumstances render them unreliable. *See*, *e.g.*, *Zeus Enterprises, Inc. v. Alphin Aircraft, Inc.*, 190 F.3d 238, 241 (4th Cir. 1999) ("The party opposing admission [under Rule 803(8)] has the burden to establish unreliability."); *McCoy v. Norfolk So. Railway Co.*, No. 2:11-cv-00427, 2013 WL 12240463, at *6 n.7 (S.D. W. Va. July 8, 2013) ("The court should presume such records admissible unless the party seeking exclusion of the documents establishes their unreliability.").

**ARGUMENT**

**A.  The House Report is Admissible Under Rule 803(8) as Factual Findings From a Legally Authorized Investigation With No Indicia of Untrustworthiness.**

The U.S. House of Representatives, Committee on Energy and Commerce Report, *Red Flags and Warning Signs Ignored: Opioid Distribution and Enforcement Concerns in West Virginia* (the "House Report") (Ex. A) is admissible under Rule 803(8). The rule is intended to

encompass investigative or "evaluative reports" generated in the course of a public agency's duties. *Beech Aircraft*, 488 U.S. at 166. Examples of the types of agency investigative reports admissible under Rule 803(8) include accident reports prepared by specialized agencies, consumer safety studies, diagnostic studies relating to issues of public health, and legislative committee reports investigating executive branch agency and/or private sector conduct.[1] A report's conclusions and opinions, as well as its facts, are admissible under Rule 803(8) as long they are based on a factual investigation and satisfy the Rule's trustworthiness requirement. *Beech Aircraft*, 488 U.S. at 170.

In light of this presumption of admissibility, the party opposing admission of a public investigative report bears the burden to prove that the report is not trustworthy. *Zeus Enterprises*, 190 F.3d at 241. To determine whether a report is trustworthy, courts consider factors including: "(1) the timeliness of the investigation; (2) the special skill or experience of the official; (3) whether a hearing was held and the level at which conducted; [and] (4) possible motivation problems . . . ." Advisory Committee Note (citations omitted); *see also Beech Aircraft*, 488 U.S. at167 n.11 (citing Advisory Committee Note factors). Defendants try, but fail, to show that the House Report lacks trustworthiness based on these factors.

---

[1] *See, e.g., Beech Aircraft*, 488 U.S. at 170 (U.S. Navy accident report on cause of plane crash in training exercise); *Zeus Enterprises*, 190 F.3d at 243 (National Transportation Safety Board Administrative Law Judge's findings and conclusions after investigation of airworthiness of airplane damaged in crash landing); *United States v. Midwest Fireworks Mfg. Co.*, 248 F.3d 563, 566-67 (6th Cir. 2001) (reports of Consumer Product Safety Commission); *O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1204-06 (8th Cir. 1990) (Centers for Disease Control report on health risks from environmental exposure to dioxin); *Goodman v. Pennsylvania Turnpike Comm'n*, 293 F.3d 655, 669 and n.10 (3d Cir. 2002) (state legislative committee report on operations of executive branch agency); *Hobson v. Wilson*, 556 F. Supp. 1157, 1181 (D.D.C. 1982) (U.S. Senate select committee report on executive branch agency counter-intelligence activity); *Barry v. Trustees*, 467 F. Supp. 2d 91, 100-01 (D.D.C. 2006) (U.S. Senate committee report on corporate malfeasance and possible director misconduct at life insurance company); *but see id.* at 101-02 (disallowing admission of House committee report).

The House Report was the result of an in-depth, bipartisan investigation into the distribution of prescription opioids by wholesale distributors, which was undertaken as part of the Committee's legislative responsibilities. *See* Ex. A (House Report) at 36-44. The Report contains factual findings. *Id.* at 10-20. The Subcommittee on Oversight and Investigations held hearings and received sworn testimony from, and posed questions to, each of the five wholesale drug distributors involved in the investigation—the three Defendants herein plus Miami-Luken and H.D. Smith. *Id.* at 40. In addition, the five distributors provided thousands of pages of documents to the Committee, including due diligence files, suspicious order reports, and policy manuals. *Id.* at 36-41. In all, the Committee, through its members and staff, sent twelve letters requesting documents and information, reviewed more than 20,000 pages of material obtained from the DEA and wholesale distributors, participated in numerous briefings with the DEA and wholesale distributors, and held two hearings. *Id.* at 43-44.

In light of the thoroughness of the Committee's process followed in generating the Report, Defendants base their challenge to its admissibility on alleged motivation problems. They first contend that the Report is not a "record or statement of a public office" under Rule 803(8) because it "was not issued by the Energy & Commerce ***Committee***; it was issued by the Committee's ***majority staff***." Motion at 11 (emphasis in original). This is incorrect. Although the Report's cover page states that it was "*prepared by*" the Committee majority staff, *see* Ex. A (House Report) cover page (italics in original), the Report is issued under the insignia of the Committee and its content makes clear that it is a report of the Committee and constitutes the Committee's findings:

- "[T]he Committee found the distributors continued to ship large volumes of opioids into West Virginia." *Id.* at 6 (Executive Summary);

- "Among the Committee's findings, distributors suffered a series of breakdowns or had a lack of follow through in their due diligence evaluations of prospective pharmacy customers." *Id.* at 7;

- "As demonstrated in the report, the Committee found instances of insufficient due diligence by distributors who merely required pharmacies to compete new customer applications." *Id.*;

- "The Committee found instances in which distributors set thresholds but failed to enforce them, assigned artificially high hydrocodone threshold limits with little to no documented justification, or continued to raise threshold levels without thoroughly investigating or documenting the justifications presented by a customer pharmacy." *Id.*;

- "Another critical failure identified by the Committee involved instances in which distributors appeared to turn a blind eye to red flags of possible drug diversion. Despite available information, distributors, at times, took only minimal steps to investigate possible warning signs of diversion and continued to ship controlled substances to suspect pharmacies." *Id.*;

- "Taken together, the Committee's report outlines a series of missteps and missed opportunities that contributed to the worsening of the opioid epidemic in West Virginia." *Id.* at 9;

- "This investigation has revealed that neither the DEA nor the distributors rose to the occasion to help mitigate the opioid epidemic. The Committee will continue its bipartisan work to examine the causes and effects of the opioid epidemic." *Id.* at 322 (Conclusion).

Defendants' attempt to diminish the House Committee Report through comparisons to cases involving *draft* reports[2] or reports of committees riven by partisanship[3] thus is factually incorrect. The Court should reject the argument that the House Committee Report is anything other than that.

The Court likewise should reject Defendants' separate argument that the involvement of certain plaintiffs' lawyers in helping to prepare Committee members for hearing questioning

---

[2] *See* Motion at 10 (citing *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 264 (4th Cir. 2005) (exclusion of draft report)).
[3] *See* Motion at 13 (citing *Barry*, *supra*, 467 F. Supp. 2d at 98 (addressing "whether members of both parties joined in the report, *or whether the report was filed over the dissent of the minority party*") (emphasis added)). Notably, Defendants make no reference to there being any dissent from *this* Committee Report. *Cf. id.* at 101 ("The Senate Report, in short, is not beset by either of the reliability problems that courts have identified with respect to other Congressional reports. Hence, this Court concludes that the Senate Report is trustworthy and admissible . . . .").

renders the Committee Report unreliable and untrustworthy. *See* Motion at 15 ("A further concern related to motivational problems and bias is the influence of litigation. Plaintiffs' counsel—specifically counsel of record in this case—successfully exerted influence over the Committee's proceedings.") (citation omitted). This argument fails because the fact that Committee members would consult with persons with knowledge of the subject matter of the investigation can just as readily be deemed to demonstrate the thoroughness of their preparation. Indeed, this sense is reinforced by the fact that *Defendants too* had input into the Committee's investigations, including by briefing congressional staff and providing them with potential questions for its hearings. *See* Ex. B (HDA_MDL_000029706-710); Ex. C (MCKMDL00661483-85).

At bottom, the House Report's reliability should turn not on who provided Committee members with suggested questions to ask, but on what the *answers* to those questions were and how they support the Committee's findings on opioid distribution in and beyond West Virginia. The following examples illustrate how the hearing questions and answers undergird the Committee's findings:

- "FINDING: Distributors can obtain dispensing data from pharmacies that shows the total volume of controlled substances dispensed by a pharmacy, including the method of payment and physician associated with each prescription." Ex. A (House Report) at 112-113 (citing hearing answers of AmerisourceBergen Corp. CEO, President and Board Chairman Steven H. Collis);

- "FINDING: McKesson's due diligence file for SavRite No. 1 contained only one document, a November 2007 written declaration from the pharmacy's owner representing that the pharmacy sells only legitimate prescriptions." *Id.* at 128-130 (citing hearing answers of McKesson CEO and Board Chair John Hammergren);

- "FINDING: McKesson continued to supply Sav-Rite No. 1 with massive quantities of opioids for five months after representing to the DEA that it had reviewed all customers pursuant to the Lifestyle Drug Monitoring Program." *Id.* at 226-27 (citing hearing answers of Mr. Hammergren).

In sum, Defendants provide no reason for the Court to depart from the MDL Court's Evidentiary Order holding that the House Report and related investigation materials are both relevant and admissible. The Court should deny Defendants' motion to exclude this evidence.

> B. **The House Report is Admissible Under Rule 403 Because Concerns About Unfair Prejudice, Confusion, or Misleading the Jury are Diminished or Absent in a Bench Trial.**

Although the MDL Court's Evidentiary Order addressed the House Report only through the lens of Rule 803(8), Defendants' separate argument here based on Rule 403, *see* Motion at 16-20, likewise provides no reason for this Court to depart from Judge Polster's ruling.

Since this is a bench trial, Rule 403's concerns of "unfair prejudice, confusing the issues, [and] misleading the jury" have no application. As the Fourth Circuit has explained:

> Rule 403 was designed to keep evidence not germane to any issue outside the purview of the jury's consideration. For a bench trial, we are confident that the district court can hear relevant evidence, weigh its probative value and reject any improper inferences.

*Schultz*, 24 F.3d at 632; *see also Hassanzadeh*, 271 F.3d at 578 ("Moreover, we have confidence that at the bench trial, the experienced district judge was able to separate the emotional impact from the probative value of this potentially prejudicial evidence."). Thus, "in the context of a bench trial, evidence should not be excluded under [Rule] 403 on the ground that it is unfairly prejudicial." *Schultz*, 24 F.3d at 632.

Defendants nonetheless claim unfair prejudice under Rule 403 based upon the Court's denial of their motion to compel third-party U.S. Drug Enforcement Agency ("DEA") to produce documents it provided to the House Committee. *See* Motion at 6-8, 18-19. The Court's ruling is not unfairly prejudicial to Defendants inasmuch as it denied motions by both Plaintiffs and Defendants alike to compel production of DEA documents on grounds of undue burden. *See* Memorandum and Opinion on DEA Objections (ECF No. 832) at 4-8 (Defendants' subpoena

8

requests); *id.* at 8-9 (Plaintiffs' subpoena requests); *id.* at 13-14 (undue burden finding as to both sets of requests). Moreover, and as illustrated above, the House Committee's findings as to Defendants are based largely on Defendants' own testimony and documents, plus DEA documents that are available to the public and/or known to and readily accessible by each Defendant. *See*, *e.g.*, Ex. A (House Report) at 100 n.369 (citing "DEA Distributor Conference Presentation" dated May 11, 2016 and posted on U.S. Department of Justice website); *id.* at 101 n.370-73 (citing ARCOS data). Admitting the House Report into evidence thus does not unfairly prejudice Defendants.

Defendants also argue that the House Report is "needlessly cumulative" and "contains unnecessary and unhelpful legal and factual recitations." Motion at 17, 18. This argument likewise fails. Although "excluding relevant evidence in a bench trial because it is cumulative or a waste of time is clearly a proper exercise of the judge's power,'" *Schultz*, 24 F.3d at 632 (quoting *Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981)), it is *not* proper for a court to deprive a litigant of control over which relevant evidence it chooses to rely upon within its allotted trial time. *See Schultz*, 24 F.3d at 632 ("Spirit Cruises' attorney was prevented from pursuing inquiry into the amount of alcohol consumed by Maass during lunch or while on the boat. The exclusion of this evidence was not harmless error since a party was prevented from fully developing evidence relevant to a material issue. Because the court abused its discretion in excluding this relevant evidence, we reverse its ruling and order on remand that Spirit Cruises be allowed to pursue its line of inquiry into the consumption of alcoholic beverages.").

Finally, Defendants' argument that the House Report is inadmissible under Rule 403 because it contains "unhelpful legal . . . recitations" within its 300+ pages of text likewise is incorrect. In its Memorandum Opinion and Order granting exclusion of Plaintiffs' expert James

9

Geldhoff (ECF No. 1269), the Court held that exclusion was appropriate in part because "Geldhof's report is devoid of *expert* legal analysis," *id.* at 6 (emphasis added), so that what the Court found to be a straight recitation of the law would not be helpful to it. The House Report, by contrast, consists primarily of factual analysis that may assist the Court, while the setting of this being "a bench trial allays fears of undue influence," *id.* at 5, as to the appearance of what are clearly labeled as statements of law. *See* Ex. A (House Report) at 26-30 (section titled "Statutory and Regulatory Framework").

At bottom, Defendants' arguments under Rule 403 likewise provide no reason for the Court to depart from the MDL Court's Evidentiary Order holding that the House Report and related investigation materials are both relevant and admissible. The Court should deny Defendants' motion to exclude this evidence.

## CONCLUSION

For all of the reasons set forth, the Court should deny Defendants' Motion to Exclude the House Energy & Commerce Committee Report.

Dated: May 4, 2021                                             Respectfully submitted,

**THE CITY OF HUNTINGTON**                       **CABELL COUNTY COMMISSION**

/s/ *Anne McGinness Kearse*                              /s/ *Paul T. Farrell Jr.*
Anne McGinness Kearse (WVSB No 12547)       Paul T. Farrell, Jr. (WVSB Bar No. 7443)
Joseph F. Rice                                                    **FARRELL LAW**
**MOTLEY RICE LLC**                                       422 Ninth Street, 3rd Floor (25701)
28 Bridgeside Blvd.                                             PO Box 1180
Mount Pleasant, SC 29464                                  Huntington, West Virginia 25714-1180
Tel: 843-216-9000                                               Mobile: 304-654-8281
Fax: 843-216-9450                                               paul@farrell.law
akearse@motleyrice.com
jrice@motleyrice.com                                          /s/ *Anthony J. Majestro*
                                                                          Anthony J. Majestro (WVSB No. 5165)
Linda Singer                                                       **POWELL & MAJESTRO, PLLC**
David I. Ackerman                                              405 Capitol Street, Suite P-1200
**MOTLEY RICE LLC**                                       Charleston, WV 25301

10

401 9th Street NW, Suite 1001
Washington, DC 20004
Tel:  202-232-5504
Fax:  202-386-9622
lsinger@motleyrice.com
dackerman@motleyrice.com

Charles R. "Rusty" Webb (WVSB No. 4782)
**The Webb Law Centre, PLLC**
716 Lee Street, East
Charleston, West Virginia 25301
Telephone: (304) 344-9322
Facsimile: (304) 344-1157
rusty@rustywebb.com

304-346-2889 / 304-346-2895 (f)
amajestro@powellmajestro.com

Michael A. Woelfel (WVSB No. 4106)
**WOELFEL AND WOELFEL, LLP**
801 Eighth Street
Huntington, West Virginia 25701
Tel. 304.522.6249
Fax. 304.522.9282
mikewoelfel3@gmail.com

11

## CERTIFICATE OF SERVICE

I certify that on May 4, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Anthony J. Majestro*