# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>    Defendants. | Civil Action No. 3:17-01362 |
| CABELL COUNTY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>    Defendants. | Civil Action No. 3:17-01665 |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE THE
HOUSE ENERGY & COMMERCE COMMITTEE
MAJORITY STAFF REPORT**

**I.      INTRODUCTION**

The Energy & Commerce Report is inadmissible hearsay. It also is unfairly prejudicial, cumulative, and contains unnecessary and unhelpful legal and factual recitations. Plaintiffs' Opposition is primarily an exercise in misdirection. Plaintiffs ignore most of Defendants' arguments, and get it wrong on those they do address. The Report should be excluded for three primary reasons.

*First*, Plaintiffs have not met—and cannot meet—their burden to establish that the Report qualifies as a public record under Rule 803(8)(A). As Defendants' Motion explained, the Report was prepared and issued by the Committee's majority staff—not the Committee itself. The Report therefore is not a "record or statement of a public office." And, as shown below, this is confirmed by an examination of Congress's requirements for the identification and publication of official congressional committee reports and by a comparison of the Report with other reports actually issued by House committees. This is further confirmed by Congress's official website and the Energy & Commerce Committee's official report to Congress on its activities—neither of which list or mention the majority staff report. That alone is reason enough to exclude the Report.

*Second*, Defendants have shown that the Report is not sufficiently trustworthy within the meaning of Rule 803(B). Plaintiffs' Opposition touches on only one of the reasons the Report is not adequately trustworthy—Plaintiffs' counsel's own efforts to influence the Report to benefit this litigation. Even there, Plaintiffs come up short, to say nothing of Defendants' other arguments that stand wholly unrebutted.

*Third*, the Report also should be excluded because it contains (1) unfairly prejudicial, one-sided summaries of DEA documents that Defendants do not have, (2) a cumulative presentation of evidence that should be introduced in this case directly, if at all, and (3) inadmissible and unhelpful legal and factual recitations. On these points, too, Plaintiffs fail meaningfully to engage

1

with Defendants' arguments, seemingly believing that the Rules of Evidence do not need to be applied in a bench trial. Plaintiffs are mistaken. They must make their case based on *admissible* evidence, not inadmissible hearsay. Defendants are entitled to have access to, and cross-examine, the evidence being offered against them. And the Court—not a Congressional committee and certainly not that Committee's staff—will apply the law to the facts presented and reach a judgment.

## II.     ARGUMENT

### A.     The Energy & Commerce Report Is Not Admissible Under Rule 803(8)

The hearsay exception contained in Rule 803(8) applies to public records that do not indicate a lack of trustworthiness. The Energy & Commerce Report is not a public record, and is steeped with indicia of untrustworthiness. It should be excluded.

#### 1.     The Energy & Commerce Report is not a committee report

The Report unambiguously states on the cover page that it was prepared by the majority staff. Yet Plaintiffs insist that the Report actually is a committee report, offering only the following two points in support: (1) the Report includes the Energy & Commerce insignia on the cover page; and (2) the Report references findings made by "the Committee." Opp. at 5-6 (Dkt. 1316). Neither point satisfies Plaintiffs' burden to show that the Report is a "record of statement of a public office." *See* Fed. R. Evid 803(A).[1]

The Report's cover page, including the use of the insignia, actually shows that it is ***not*** a committee report. Congress has explained that "Committee reports are uniquely identified by a

---

[1] While Defendants have the burden to show lack of trustworthiness, Plaintiffs have the burden to show that the Report qualifies for Rule 803(8) in the first instance. *See* Fed. R. Evid. 803 Advisory Committee Notes, 2014 Amendments, [Subdivision (8)] ("The Rule has been amended to clarify that *if the proponent has established that the record meets the stated requirements of the exception*—prepared by a public office and setting out information as specified in the Rule—then the burden is on the opponent to show that the source of information or other circumstances indicate a lack of trustworthiness." (emphasis added)).

2

standardized citation that includes the Congress, chamber (House or Senate), and report number."[2] Committee reports are published by the Government Publishing Office (GPO) and available on Congress.gov.[3] The Energy & Commerce Report does not include the standardized citation, it was not published by the GPO, and it is not available on Congress.gov.

      A recent House committee report provides an example of what a report issued by a Committee actually looks like—and reveals the significant differences between an actual committee report and the Energy & Commerce Report. In December 2020, the House Committee on Veterans' Affairs issued a Report titled "Hijacking Our Heroes: Exploiting Veterans Through Disinformation on Social Media."[4] Issued by the 116th Congress, the report is numbered 116-657. *Id.* The cover page has a formal and standardized appearance, including the report citation, and notes that the report contains dissenting views. *See id.* The report is prefaced with a "Letter of Transmittal" from the Committee Chairman to the Clerk of the House of Representatives, which notes that the Chairman was directed by voice vote of the Committee to submit the report:

---

[2] *See About Committee Reports of the U.S. Congress*, CONGRESS.COV, https://www.congress.gov/help/committee-reports (last visited May 9, 2021) (attached as **Exhibit 1**).

[3] *See id.*; *see also House Reports*, CONGRESS.GOV, https://www.congress.gov/house-reports/117th-congress (repository of all committee reports organized by session of Congress) (last visited May 9, 2021); *Legislative Search Results* (narrowed to search for "Committee Reports"), CONGRESS.COV, https://www.congress.gov/search?q={%22source%22:%22comreports%22}&searchResultViewType=expanded (providing a searchable repository of committee reports) (last visited May 9, 2021).

[4] *Hijacking Our Heroes: Exploiting Veterans Through Disinformation on Social Media*, H.R. Rep. No. 116-657 (2020), *available at* https://www.congress.gov/116/crpt/hrpt657/CRPT-116hrpt657.pdf (attached as **Exhibit 2**).



*See id.* Other committee reports likewise use this same standardized format and citation, were printed by the GPO, and are available on Congress.gov.[5]

The difference between these official committee reports and the Energy & Commerce Report is stark:

---

[5] *See, e.g.*, *House Permanent Select Committee On Intelligence On The Trump-Ukraine Impeachment Inquiry Report*, H.R. Rep. No. 116-335 (2019), *available at* https://www.congress.gov/116/crpt/hrpt335/CRPT-116hrpt335.pdf; *United States Secret Service: An Agency In Crisis*, H.R. Rep. No. 114-385 (2015), *available at* https://www.congress.gov/114/crpt/hrpt385/CRPT-114hrpt385.pdf.

4



Further, pursuant to the Rules of the House of Representatives, the Energy & Commerce Committee for the 115th Congress issued an official report on its activities on January 2, 2019—one month after the majority staff issued the Energy & Commerce Report.[6] The Committee's Activity Report references the numerous committee reports it filed during the term.[7] While the Activity Report notes the hearings the Committee held related to opioid distribution in West Virginia,[8] it does not mention the Energy & Commerce Report issued by majority staff.

Plaintiffs therefore have not met their burden to establish that the Energy & Commerce Report is a "record of statement of a public office." The Report was prepared and issued by

---

[6] *See Activity Report Of The Committee On Energy And Commerce Of The House Of Representatives For The One Hundred Fifteenth Congress*, H.R. Rep. No. 115-1126 (2019), *available at* https://www.congress.gov/115/crpt/hrpt1126/CRPT-115hrpt1126.pdf (attached as **Exhibit 3**).

[7] *See e.g. id.* at 25 (citing H.R. Rep. No. 115-836); *id.* at 33 (citing H.R. Rep. No. 115-841); *id.* at 41 (citing H.R. Rep. No. 115-837).

[8] *See id.* at 20, 254.

5

majority staff. It is not a committee report. It is not a public record. And it is not admissible under Rule 803(8).

### 2. The Energy & Commerce Report also is not sufficiently trustworthy

Defendants' Motion set forth numerous reasons why the Energy & Commerce Report is not sufficiently trustworthy to be admissible under Rule 803(8). Mot. at 11-16 (Dkt. 1307). Plaintiffs' Opposition addresses just one: their own successful efforts to influence the Committee and its staff. Plaintiffs' attempt to deflect attention from these efforts is unavailing, and their complete lack of response as to the other trustworthiness factors is telling.

***Plaintiffs' efforts to influence the Committee.*** Plaintiffs first try to minimize their involvement, writing that "certain plaintiffs' lawyers" were merely "helping to prepare Committee members for hearing questioning." Opp. at 6. The facts show otherwise. Plaintiffs' counsel of record in this case hosted a briefing for Committee staff where they circulated materials that were both inflammatory and obviously designed to elicit testimony that would be helpful to them in this lawsuit. Mot. at 4-5 & Ex.3. The questions Plaintiffs' counsel proposed focused on legal topics relevant to tort causes of action, and which would not otherwise be relevant to a Congressional investigation, such as duty, foreseeability, proximate cause, and public nuisance. *Id.* at 5 & Ex. 4. On the very day of the briefing, Plaintiffs' counsel described the briefing on Twitter as providing "a roadmap to use during next week's hearing ***on how distributors should be liable to the cities and counties*** who have been financially impacted." *Id.* at 5 & Ex. 7. A photo accompanying Plaintiffs' counsel's tweet shows Plaintiffs' counsel presenting to a large group of staffers with the inflammatory materials distributed as handouts and blown up on an easel. *Id.*

This does not demonstrate "the thoroughness of [the Committee's] preparation," as Plaintiffs suggest. Opp. at 7. Instead, it demonstrates the type of improper litigation-related bias

6

and influence that courts have concluded render a report untrustworthy.[9] First, Plaintiffs' suggestion that they are "persons with knowledge of the subject matter of the investigation" is incorrect. Opp. at 7. The relevant Plaintiffs' lawyers are not percipient witnesses to "the subject matter of the investigation," nor are they experts on any relevant topic. They are lawyers from Florida. Second, Plaintiffs' suggestion that their involvement is somehow tempered by Defendants' "input into the Committee's investigation" is absurd. Defendants participated and provided information because Congress formally requested that they do so. Plaintiffs, by contrast, injected themselves into the proceedings. And regardless of who else may have been involved, Plaintiffs' involvement undercuts the trustworthiness of the Report.

***All other factors demonstrating lack of trustworthiness.*** The influence of litigation is just one of several factors courts consider in assessing trustworthiness. *See* Mot. at 11-16. The others that are relevant here include: the lengthy passage of time between the underlying events and the Committee's investigation; the Committee's lack of specialized skill and expertise on these issues; the admittedly narrow and incomplete focus of the investigation and its hearings; and the inherently political and partisan nature of Congress. Each of these cut against admission of the Report. Plaintiffs did not address any of these points in their Opposition.

### B. The Energy & Commerce Report Is Prejudicial, Cumulative, and Unhelpful

Defendants' Motion set forth other reasons the Court should exclude the Report, including because admission of the Report would be unfairly prejudicial to Defendants, the Report is

---

[9] Plaintiffs vastly overstate Judge Polster's ruling on McKesson's motion *in limine* from Track 1. *See* Opp. at 1-2. Defendants' Motion here presents a more developed record on all of the trustworthiness factors, not just on Plaintiffs' counsel's efforts to influence Congress. And even on that factor, Defendants' Motion presents additional evidence, including evidence showing that Plaintiffs' counsel's specific purpose was to influence the litigation and that members of the Committee used Plaintiffs' counsel's proposed questioning. Defendants' Motion also advances additional legal arguments, including that the Report is not a public record as defined in Rule 803(A), as well as other specific arguments related to Rule 403.

cumulative, and the Report contains unhelpful and inadmissible legal and factual recitations. Plaintiffs' Opposition misses the mark on these points as well.

***The Report is unfairly prejudicial.***  Plaintiffs' argument that there is no risk of prejudice here because this is a bench trial misunderstands the nature of the prejudice.  Opp. at 8.  The issue is not that the Report is unflattering or confusing.  The issue is that the Report is based on, and selectively quotes, DEA documents that Defendants do not have, along with ex parte meetings that Defendants were not allowed to attend.  The Court previously ruled that DEA did not have to produce these exact documents.  Having so ruled, it would be unfairly prejudicial to admit a one-sided, incomplete presentation of these same documents now—without any safeguard of cross-examination.  That the Court also denied Plaintiffs' motions to compel DEA documents does not change this.  *See id.*  Plaintiffs are trying to use ***this*** DEA-related evidence against Defendants.  Plaintiffs' own access or non-access to other DEA documents is irrelevant.

***The Report is cumulative.***  Plaintiffs do not meaningfully respond to Defendants' argument that the Report is cumulative and that Plaintiffs should rely on the underlying evidence itself, to the extent it is relevant and admissible—and not the Report's summary of the evidence.  The only case Plaintiffs cite on this point, *Schultz v. Butcher*, says nothing about cumulative evidence.  In fact, the only use of the word "cumulative" in the entire opinion is in the block quote Plaintiffs excerpted.  24 F.3d 626, 632 (4th Cir. 1994) (citation omitted).  And the evidence excluded in *Schultz* (of consumption of alcohol in advance of a boating accident) was excluded in its entirety because it was prejudicial, not because it was cumulative.  *Id.* at 629-32.

***The Report contains inadmissible legal conclusions and unhelpful factual recitations.*** Defendants' Motion explained that the Report should be excluded for the additional reason that it includes legal conclusions and lengthy factual recitations—both of which this Court already has

indicated are unhelpful and not admissible. Mot. at 18-20. Plaintiffs again try to sidestep these issues. Plaintiffs suggest that the Court's rulings simply indicate that a "straight recitation of the law would not be helpful." Opp. at 10. But legal conclusions are not just unhelpful, they are inadmissible. Mot. at 18-19. Plaintiffs try to minimize the issue by claiming that the Report "consists primarily of factual analysis." Opp. at 10. But the Court already has explained that "[e]xpert testimony which 'merely regurgitates factual information . . .' is properly excluded." Dkt. 1262 at 4. The same reasoning should apply with even greater force to the Report, which lacks any of the standards or safeguards for expert testimony.

Simply put, the Energy & Commerce Report is not helpful or necessary. Plaintiffs assert that the Report's "findings as to Defendants are based largely on Defendants' own testimony and documents." Opp. at 9. This trial also should be based on Defendants' testimony and documents, and not filtered through the lens of the Energy & Commerce majority staff. The Court does not need the Report to apprehend the facts or apply the law.

## III.  CONCLUSION

The Energy & Commerce Report is inadmissible hearsay. It also is cumulative, prejudicial, unhelpful, and unnecessary. For the reasons set forth herein and in Defendants' Motion, the Court should exclude the Energy & Commerce Report.

Dated: May 9, 2021

Respectfully submitted,

***AmerisourceBergen Drug Corporation***
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000

9

Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
Joseph J. Mahady
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com
jmahady@reedsmith.com

**McKesson Corporation**
By Counsel:

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*/s/ Timothy C. Hester`*
Timothy C. Hester
Laura Flahive Wu
Andrew P. Stanner
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
lflahivewu@cov.com
astanner@cov.com

10

/s/ Paul W. Schmidt
Paul W. Schmidt
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: (212) 841-1000
pschmidt@cov.com

**Cardinal Health, Inc.**
By Counsel:

/s/ Enu Mainigi
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
Jennifer G. Wicht
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
emainigi@wc.com
lheard@wc.com
ahardin@wc.com
jwicht@wc.com

Michael W. Carey (WVSB #635)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
David R. Pogue (WVSB #10806)
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
rfranks@cdkrlaw.com
drpogue@cdkrlaw.com

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 9th day of May, 2021, the foregoing ***Defendants' Reply in Support Of Motion to Exclude the House Energy & Commerce Committee Majority Staff Report*** was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Gretchen M. Callas*