# Exhibit 3

# Union Calendar No. 893

115th Congress, 2d Session – – – – – – – – – – – – House Report 115–1126

ACTIVITY REPORT

OF THE

COMMITTEE ON ENERGY AND COMMERCE

OF THE

HOUSE OF REPRESENTATIVES

FOR THE

ONE HUNDRED FIFTEENTH CONGRESS



JANUARY 2, 2019.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

———

U.S. GOVERNMENT PUBLISHING OFFICE

33–970                    WASHINGTON : 2019

## LETTER OF TRANSMITTAL

––––––––––

HOUSE OF REPRESENTATIVES,
COMMITTEE ON ENERGY AND COMMERCE,
*Washington, DC, January 2, 2019.*

Hon. KAREN L. HAAS,
*Clerk, House of Representatives,*
*Washington, DC.*

DEAR MS. HAAS: Pursuant to clause 1(d) of Rule XI of the Rules of the House of Representatives, I present herewith a report on the activities of the Committee on Energy and Commerce for the 115th Congress.

Sincerely,

GREG WALDEN,
*Chairman.*

# C O N T E N T S

_____

|  | Page |
|---|---|
| Jurisdiction | 1 |
| Rules | 3 |
| Membership and Organization | 11 |
| Legislative and Oversight Activity | 19 |
| Summary of Committee Activities | 19 |
| Full Committee | 20 |
| Subcommittee on Communications and Technology | 21 |
| Subcommittee on Digital Commerce and Consumer Protection | 57 |
| Subcommittee on Energy | 69 |
| Subcommittee on Environment | 111 |
| Subcommittee on Health | 131 |
| Subcommittee on Oversight and Investigations | 249 |
| Authorization and Oversight Plan | 258 |
| Public Laws | 271 |
| Printed Hearings | 272 |
| Hearings Held Pursuant to Clauses 2(n), (o), or (p) of Rule XI | 277 |

# Union Calendar No. 893

| 115TH CONGRESS<br>*2d Session* | HOUSE OF REPRESENTATIVES | REPORT<br>115–1126 |
|---|---|---|

ACTIVITY REPORT OF THE COMMITTEE ON ENERGY AND COMMERCE OF THE HOUSE OF REPRESENTATIVES FOR THE ONE HUNDRED FIFTEENTH CONGRESS

———————

JANUARY 2, 2019.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

———————

Mr. UPTON, from the Committee on Energy and Commerce, submitted the following

# R E P O R T

### JURISDICTION

The jurisdiction of the Committee on Energy and Commerce, as prescribed by Clause 1(f) of Rule X of the Rules of the House of Representatives, is as follows:

(1) Biomedical research and development.

(2) Consumer affairs and consumer protection.

(3) Health and health facilities (except health care supported by payroll deductions).

(4) Interstate energy compacts.

(5) Interstate and foreign commerce generally.

(6) Exploration, production, storage, supply, marketing, pricing, and regulation of energy resources, including all fossil fuels, solar energy, and other unconventional or renewable energy resources.

(7) Conservation of energy resources.

(8) Energy information generally.

(9) The generation and marketing of power (except by Federally chartered or Federal regional power marketing authorities); reliability and interstate transmission of, and ratemaking for, all power; and siting of generation facilities (except the installation of interconnections between Government waterpower projects).

(10) General management of the Department of Energy and management and all functions of the Federal Energy Regulatory Commission.

(11) National energy policy generally.

(12) Public health and quarantine.

2

(13) Regulation of the domestic nuclear energy industry, including regulation of research and development reactors and nuclear regulatory research.

(14) Regulation of interstate and foreign communications.

(15) Travel and tourism.

The committee shall have the same jurisdiction with respect to regulation of nuclear facilities and of use of nuclear energy as it has with respect to regulation of nonnuclear facilities and of use of nonnuclear energy.

In addition, clause 3(e) of Rule X of the Rules of the House of Representatives provides that the Committee on Energy and Commerce shall review and study on a continuing basis laws, programs, and Government activities relating to nuclear and other energy and nonmilitary nuclear energy research and development including the disposal of nuclear waste.

3

RULES

(Adopted January 25, 2017)

*Rule 1. General Provisions.*

(a) Rules of the Committee. The Rules of the House are the rules of the Committee on Energy and Commerce (the "Committee") and its subcommittees so far as is applicable.

(b) Rules of the Subcommittees. Each subcommittee of the Committee is part of the Committee and is subject to the authority and direction of the Committee and to its rules so far as is applicable. Written rules adopted by the Committee, not inconsistent with the Rules of the House, shall be binding on each subcommittee of the Committee.

*Rule 2. Meetings.*

(a) Regular Meeting Days. The Committee shall meet on the fourth Tuesday of each month at 10 a.m., for the consideration of bills, resolutions, and other business, if the House is in session on that day. If the House is not in session on that day and the Committee has not met during such month, the Committee shall meet at the earliest practicable opportunity when the House is again in session. The chairman of the Committee may, at his discretion, cancel, delay, or defer any meeting required under this section, after consultation with the ranking minority member.

(b) Additional Meetings. The chairman may call and convene, as he considers necessary, additional meetings of the Committee for the consideration of any bill or resolution pending before the Committee or for the conduct of other Committee business. The Committee shall meet for such purposes pursuant to that call of the chairman.

(c) Notice. The date, time, place, and subject matter of any meeting of the Committee scheduled on a Tuesday, Wednesday, or Thursday when the House will be in session shall be announced at least 36 hours (exclusive of Saturdays, Sundays, and legal holidays except when the House is in session on such days) in advance of the commencement of such meeting. The date, time, place, and subject matter of other meetings when the House is in session shall be announced to allow Members to have at least three days notice (exclusive of Saturdays, Sundays, and legal holidays except when the House is in session on such days) of such meeting. The date, time, place, and subject matter of all other meetings shall be announced at least 72 hours in advance of the commencement of such meeting.

(d) Agenda. The agenda for each Committee meeting, setting out all items of business to be considered, shall be provided to each member of the Committee at least 36 hours in advance of such meeting.

(e) Availability of Texts. No bill, recommendation, or other matter shall be considered by the Committee unless the text of the matter, together with an explanation, has been available to members of the Committee for three days (or 24 hours in the case of a substitute for introduced legislation). Such explanation shall include a summary of the major provisions of the legislation, an ex-

4

planation of the relationship of the matter to present law, and a summary of the need for the legislation.

(f) Waiver. The requirements of subsections (c), (d), and (e) may be waived by a majority of those present and voting (a majority being present) of the Committee or by the chairman with the concurrence of the ranking member, as the case may be.

*Rule 3. Hearings.*

(a) Notice. The date, time, place, and subject matter of any hearing of the Committee shall be announced at least one week in advance of the commencement of such hearing, unless a determination is made in accordance with clause 2(g)(3) of Rule XI of the Rules of the House that there is good cause to begin the hearing sooner.

(b) Memorandum. Each member of the Committee shall be provided, except in the case of unusual circumstances, with a memorandum at least 48 hours before each hearing explaining (1) the purpose of the hearing and (2) the names of any witnesses.

(c) Witnesses. (1) Each witness who is to appear before the Committee shall file with the clerk of the Committee, at least two working days in advance of his or her appearance, sufficient copies, as determined by the chairman of the Committee of a written statement of his or her proposed testimony to provide to members and staff of the Committee, the news media, and the general public. Each witness shall, to the greatest extent practicable, also provide a copy of such written testimony in an electronic format prescribed by the chairman. Each witness shall limit his or her oral presentation to a brief summary of the argument. The chairman of the Committee or the presiding member may waive the requirements of this paragraph or any part thereof.

(2) To the greatest extent practicable, the written testimony of each witness appearing in a nongovernmental capacity shall include a curriculum vitae and a disclosure of any Federal grant or contract or foreign government contracts and payments related to the subject matter of the hearing received during the current calendar year or either of the two preceding calendar years by the witness or by an entity represented by the witness. The disclosure shall include (i) the amount and source of each Federal grant (or subgrant thereof) or contract (or subcontract thereof) related to the subject matter of the hearing; and (ii) the amount and country of origin of any payment or contract related to the subject matter of the hearing originating with a foreign government.

(d) Questioning. (1) The right to interrogate the witnesses before the Committee shall alternate between majority and minority members. Each member shall be limited to 5 minutes in the interrogation of witnesses until such time as each member who so desires has had an opportunity to question witnesses. No member shall be recognized for a second period of 5 minutes to interrogate a witness until each member of the Committee present has been recognized once for that purpose. The chairman shall recognize in order of appearance members who were not present when the meeting was called to order after all members who were present when the meeting was called to order have been recognized in the order of seniority on the Committee.

5

(2) The chairman, with the concurrence of the ranking minority member, or the Committee by motion, may permit an equal number of majority and minority members to question a witness for a specified, total period that is equal for each side and not longer than thirty minutes for each side. The chairman with the concurrence of the ranking minority member, or the Committee by motion, may also permit committee staff of the majority and minority to question a witness for a specified, total period that is equal for each side and not longer than thirty minutes for each side.

(3) Each member may submit to the chairman of the Committee additional questions for the record, to be answered by the witnesses who have appeared. Each member shall provide a copy of the questions in an electronic format to the clerk of the Committee no later than ten business days following a hearing. The chairman shall transmit all questions received from members of the Committee to the appropriate witness and include the transmittal letter and the responses from the witnesses in the hearing record. After consultation with the ranking minority member, the chairman is authorized to close the hearing record no earlier than 120 days from the date the questions were transmitted to the appropriate witness.

*Rule 4. Vice Chairmen; Presiding Member.*

The chairman shall designate a member of the majority party to serve as vice chairman of the Committee, and shall designate a majority member of each subcommittee to serve as vice chairman of each subcommittee. The vice chairman of the Committee or subcommittee, as the case may be, shall preside at any meeting or hearing during the temporary absence of the chairman. If the chairman and vice chairman of the Committee or subcommittee are not present at any meeting or hearing, the ranking member of the majority party who is present shall preside at the meeting or hearing.

*Rule 5. Open Proceedings.*

Except as provided by the Rules of the House, each meeting and hearing of the Committee for the transaction of business, including the markup of legislation, and each hearing, shall be open to the public, including to radio, television, and still photography coverage, consistent with the provisions of Rule XI of the Rules of the House.

*Rule 6. Quorum.*

Testimony may be taken and evidence received at any hearing at which there are present not fewer than two members of the Committee in question. A majority of the members of the Committee shall constitute a quorum for those actions for which the House Rules require a majority quorum. For the purposes of taking any other action, one-third of the members of the Committee shall constitute a quorum.

*Rule 7. Official Committee Records.*

(a)(1) Documents reflecting the proceedings of the Committee shall be made publicly available in electronic form on the Commit-

6

tee's website and in the Committee office for inspection by the public, as provided in Rule XI, clause 2(e) of the Rules of the House not more than 24 hours after each meeting has adjourned, including a record showing those present at each meeting; and a record of the vote on any question on which a record vote is demanded, including a description of the amendment, motion, order, or other proposition, the name of each member voting for and each member voting against such amendment, motion, order, or proposition, and the names of those members of the committee present but not voting.

(2) Record Votes. A record vote may be demanded by one-fifth of the members present or, in the apparent absence of a quorum, by any one member. No demand for a record vote shall be made or obtained except for the purpose of procuring a record vote or in the apparent absence of a quorum.

(b) Postponement of Votes. In accordance with clause 2(h)(4) of Rule XI of the Rules of the House, the Chairman of the Committee or a subcommittee, after consultation with the ranking minority member of the Committee or subcommittee, may (A) postpone further proceedings when a record vote is ordered on the question of approving a measure or matter or on adopting an amendment; and (B) resume proceedings on a postponed question at any time after reasonable notice. When proceedings resume on a postponed question, notwithstanding any intervening order for the previous question, an underlying proposition shall remain subject to further debate or amendment to the same extent as when the question was postponed.

(c) Archived Records. The records of the Committee at the National Archives and Records Administration shall be made available for public use in accordance with Rule VII of the Rules of the House. The chairman shall notify the ranking minority member of any decision, pursuant to clause 3 (b)(3) or clause 4 (b) of the Rule, to withhold a record otherwise available, and the matter shall be presented to the Committee for a determination on the written request of any member of the Committee. The chairman shall consult with the ranking minority member on any communication from the Archivist of the United States or the Clerk of the House concerning the disposition of noncurrent records pursuant to clause 3(b) of the Rule.

*Rule 8. Subcommittees.*

(a) Establishment. There shall be such standing subcommittees with such jurisdiction and size as determined by the majority party caucus of the Committee. The jurisdiction, number, and size of the subcommittees shall be determined by the majority party caucus prior to the start of the process for establishing subcommittee chairmanships and assignments.

(b) Powers and Duties. Each subcommittee is authorized to meet, hold hearings, receive testimony, mark up legislation, and report to the Committee on all matters referred to it. Subcommittee chairmen shall set hearing and meeting dates only with the approval of the chairman of the Committee with a view toward assuring the availability of meeting rooms and avoiding simultaneous sched-

7

uling of Committee and subcommittee meetings or hearings whenever possible.

(c) Ratio of Subcommittees. The majority caucus of the Committee shall determine an appropriate ratio of majority to minority party members for each subcommittee and the chairman shall negotiate that ratio with the minority party, provided that the ratio of party members on each subcommittee shall be no less favorable to the majority than that of the full Committee, nor shall such ratio provide for a majority of less than two majority members.

(d) Selection of Subcommittee Members. Prior to any organizational meeting held by the Committee, the majority and minority caucuses shall select their respective members of the standing subcommittees.

(e) Ex Officio Members. The chairman and ranking minority member of the Committee shall be ex officio members with voting privileges of each subcommittee of which they are not assigned as members and may be counted for purposes of establishing a quorum in such subcommittees.

*Rule 9. Opening Statements.*

(a) Written Statements. All written opening statements at hearings and business meetings conducted by the committee shall be made part of the permanent record.

(b) Length. (1) At full committee hearings, the chairman and ranking minority member shall be limited to 5 minutes each for an opening statement, and may designate another member to give an opening statement of not more than 5 minutes. At subcommittee hearings, the subcommittee chairman and ranking minority member of the subcommittee shall be limited to 5 minutes each for an opening statement. In addition, the full committee chairman and ranking minority member shall each be allocated 5 minutes for an opening statement for themselves or their designees.

(2) At any business meeting of the Committee, statements shall be limited to 5 minutes each for the chairman and ranking minority member (or their respective designee) of the Committee or subcommittee, as applicable, and 3 minutes each for all other members. The chairman may further limit opening statements for Members (including, at the discretion of the Chairman, the chairman and ranking minority member) to one minute.

*Rule 10. Reference of Legislation and Other Matters.*

All legislation and other matters referred to the Committee shall be referred to the subcommittee of appropriate jurisdiction within two weeks of the date of receipt by the Committee unless action is taken by the full Committee within those two weeks, or by majority vote of the members of the Committee, consideration is to be by the full Committee. In the case of legislation or other matter within the jurisdiction of more than one subcommittee, the chairman of the Committee may, in his discretion, refer the matter simultaneously to two or more subcommittees for concurrent consideration, or may designate a subcommittee of primary jurisdiction and also refer the matter to one or more additional subcommittees for consideration in sequence (subject to appropriate time limitations), either on its initial referral or after the matter has been reported by the sub-

8

committee of primary jurisdiction. Such authority shall include the authority to refer such legislation or matter to an ad hoc subcommittee appointed by the chairman, with the approval of the Committee, from the members of the subcommittees having legislative or oversight jurisdiction.

*Rule 11. Managing Legislation on the House Floor.*

The chairman, in his discretion, shall designate which member shall manage legislation reported by the Committee to the House.

*Rule 12. Committee Professional and Clerical Staff Appointments.*

(a) Delegation of Staff. Whenever the chairman of the Committee determines that any professional staff member appointed pursuant to the provisions of clause 9 of Rule X of the House of Representatives, who is assigned to such chairman and not to the ranking minority member, by reason of such professional staff member's expertise or qualifications will be of assistance to one or more subcommittees in carrying out their assigned responsibilities, he may delegate such member to such subcommittees for such purpose. A delegation of a member of the professional staff pursuant to this subsection shall be made after consultation with subcommittee chairmen and with the approval of the subcommittee chairman or chairmen involved.

(b) Minority Professional Staff. Professional staff members appointed pursuant to clause 9 of Rule X of the House of Representatives, who are assigned to the ranking minority member of the Committee and not to the chairman of the Committee, shall be assigned to such Committee business as the minority party members of the Committee consider advisable.

(c) Additional Staff Appointments. In addition to the professional staff appointed pursuant to clause 9 of Rule X of the House of Representatives, the chairman of the Committee shall be entitled to make such appointments to the professional and clerical staff of the Committee as may be provided within the budget approved for such purposes by the Committee. Such appointee shall be assigned to such business of the full Committee as the chairman of the Committee considers advisable.

(d) Sufficient Staff. The chairman shall ensure that sufficient staff is made available to each subcommittee to carry out its responsibilities under the rules of the Committee.

(e) Fair Treatment of Minority Members in Appointment of Committee Staff. The chairman shall ensure that the minority members of the Committee are treated fairly in appointment of Committee staff.

(f) Contracts for Temporary or Intermittent Services. Any contract for the temporary services or intermittent service of individual consultants or organizations to make studies or advise the Committee or its subcommittees with respect to any matter within their jurisdiction shall be deemed to have been approved by a majority of the members of the Committee if approved by the chairman and ranking minority member of the Committee. Such approval shall not be deemed to have been given if at least one-third of the members of the Committee request in writing that the Committee formally act on such a contract, if the request is made with-

9

in 10 days after the latest date on which such chairman or chairmen, and such ranking minority member or members, approve such contract.

*Rule 13. Supervision, Duties of Staff.*

(a) Supervision of Majority Staff. The professional and clerical staff of the Committee not assigned to the minority shall be under the supervision and direction of the chairman who, in consultation with the chairmen of the subcommittees, shall establish and assign the duties and responsibilities of such staff members and delegate such authority as he determines appropriate.

(b) Supervision of Minority Staff. The professional and clerical staff assigned to the minority shall be under the supervision and direction of the minority members of the Committee, who may delegate such authority as they determine appropriate.

*Rule 14. Committee Budget.*

(a) Administration of Committee Budget. The chairman of the Committee, in consultation with the ranking minority member, shall for the 114th Congress attempt to ensure that the Committee receives necessary amounts for professional and clerical staff, travel, investigations, equipment and miscellaneous expenses of the Committee and the subcommittees, which shall be adequate to fully discharge the Committee's responsibilities for legislation and oversight.

(b) Monthly Expenditures Report. Committee members shall be furnished a copy of each monthly report, prepared by the chairman for the Committee on House Administration, which shows expenditures made during the reporting period and cumulative for the year by the Committee and subcommittees, anticipated expenditures for the projected Committee program, and detailed information on travel.

*Rule 15. Broadcasting of Committee Hearings.*

Any meeting or hearing that is open to the public may be covered in whole or in part by radio or television or still photography, subject to the requirements of clause 4 of Rule XI of the Rules of the House. The coverage of any hearing or other proceeding of the Committee or any subcommittee thereof by television, radio, or still photography shall be under the direct supervision of the chairman of the Committee, the subcommittee chairman, or other member of the Committee presiding at such hearing or other proceeding and may be terminated by such member in accordance with the Rules of the House.

*Rule 16. Subpoenas Power.*

The power to authorize and issue subpoenas is delegated to the Chair of the full Committee, as provided for under clause 2(m)(3)(A)(i) of Rule XI of the Rules of the House of Representatives. The Chair shall notify the ranking minority member prior to issuing any subpoena under such authority. To the extent practicable, the Chair shall consult with the ranking minority member at least 72 hours in advance of a subpoena being issued under such authority. The chairman shall report to the members of the Com-

10

mittee on the issuance of a subpoena as soon as practicable but in no event later than one week after issuance of such subpoena.

*Rule 17. Travel of Members and Staff.*

(a) Approval of Travel. Consistent with the primary expense resolution and such additional expense resolutions as may have been approved, travel to be reimbursed from funds set aside for the Committee for any member or any staff member shall be paid only upon the prior authorization of the chairman. Travel may be authorized by the chairman for any member and any staff member in connection with the attendance of hearings conducted by the Committee or any subcommittee thereof and meetings, conferences, and investigations which involve activities or subject matter under the general jurisdiction of the Committee. Before such authorization is given there shall be submitted to the chairman in writing the following: (1) the purpose of the travel; (2) the dates during which the travel is to be made and the date or dates of the event for which the travel is being made; (3) the location of the event for which the travel is to be made; and (4) the names of members and staff seeking authorization.

(b) Approval of Travel by Minority Members and Staff. In the case of travel by minority party members and minority party professional staff for the purpose set out in (a), the prior approval, not only of the chairman but also of the ranking minority member, shall be required. Such prior authorization shall be given by the chairman only upon the representation by the ranking minority member in writing setting forth those items enumerated in (1), (2), (3), and (4) of paragraph (a).

*Rule 18. Website.*

The chairman shall maintain an official Committee website for the purposes of furthering the Committee's legislative and oversight responsibilities, including communicating information about the Committee's activities to Committee members and other members of the House. The ranking minority member may maintain an official website for the purpose of carrying out official responsibilities, including communicating information about the activities of the minority members of the Committee to Committee members and other members of the House.

*Rule 19. Conferences.*

The chairman of the Committee is directed to offer a motion under clause 1 of Rule XXII of the Rules of the House whenever the chairman considers it appropriate.

Membership and Organization

ONE HUNDRED FIFTEENTH CONGRESS

## COMMITTEE ON ENERGY AND COMMERCE

(Ratio 31–24)

GREG WALDEN, Oregon, *Chairman*

JOE BARTON, Texas, *Vice Chairman*
FRED UPTON, Michigan
JOHN SHIMKUS, Illinois
MICHAEL C. BURGESS, Texas
MARSHA BLACKBURN, Tennessee
STEVE SCALISE, Louisiana
ROBERT E. LATTA, Ohio
CATHY McMORRIS RODGERS,
    Washington
GREGG HARPER, Mississippi
LEONARD LANCE, New Jersey
BRETT GUTHRIE, Kentucky
PETE OLSON, Texas
DAVID McKINLEY, West Virginia
ADAM KINZINGER, Illinois
H. MORGAN GRIFFITH, Virginia
GUS M. BILIRAKIS, Florida
BILL JOHNSON, Ohio
BILLY LONG, Missouri
LARRY BUCSHON, Indiana
BILL FLORES, Texas
SUSAN W. BROOKS, Indiana
MARKWAYNE MULLIN, Oklahoma
RICHARD HUDSON, North Carolina
KEVIN CRAMER, North Dakota
TIM WALBERG, Michigan
MIMI WALTERS, California
RYAN A. COSTELLO, Pennsylvania
JOHN R. CARTER, Georgia
JEFF DUNCAN, South Carolina*
VACANCY**

FRANK PALLONE, Jr., New Jersey,
    *Ranking Member*
BOBBY L. RUSH, Illinois
ANNA G. ESHOO, California
ELIOT L. ENGEL, New York
GENE GREEN, Texas
DIANA DeGETTE, Colorado
MICHAEL F. DOYLE, Pennsylvania
JANICE D. SCHAKOWSKY, Illinois
G.K. BUTTERFIELD, North Carolina
DORIS O. MATSUI, California
KATHY CASTOR, Florida
JOHN P. SARBANES, Maryland
JERRY McNERNEY, California
PETER WELCH, Vermont
BEN RAY LUJÁN, New Mexico
PAUL TONKO, New York
YVETTE D. CLARKE, New York
DAVID LOEBSACK, Iowa
KURT SCHRADER, Oregon
JOSEPH P. KENNEDY, Massachusetts
TONY CÁRDENAS, California
RAUL RUIZ, California
SCOTT H. PETERS, California
DEBBIE DINGELL, Michigan

*Tim Murphy, Pennsylvania, resigned from the Committee on Energy and Commerce on October 21, 2017. JEFF DUNCAN, South Carolina, was elected to the Committee on Energy and Commerce on October 24, 2017, pursuant to H.Res. 579.
**Chris Collins, New York, resigned from the Committee on Energy and Commerce on August 10, 2018. A vacancy exists on the Committee and subcommittees for which he was a member.

(11)

## Subcommittee Memberships and Jurisdiction

### Subcommittee on Communications and Technology

#### (Ratio 18–13)

MARSHA BLACKBURN, Tennessee, *Chairman*

LEONARD LANCE, New Jersey,
   *Vice Chairman*
JOHN SHIMKUS, Illinois
STEVE SCALISE, Louisiana
ROBERT E. LATTA, Ohio
BRETT GUTHRIE, Kentucky
PETE OLSON, Texas
ADAM KINZINGER, Illinois
GUS M. BILIRAKIS, Florida
BILL JOHNSON, Ohio
BILLY LONG, Missouri
BILL FLORES, Texas
SUSAN W. BROOKS, Indiana
KEVIN CRAMER, North Dakota
MIMI WALTERS, California
RYAN A. COSTELLO, Pennsylvania
VACANCY
GREG WALDEN, Oregon
   *(Ex Officio)*

MICHAEL F. DOYLE, Pennsylvania
   *Ranking Member*
PETER WELCH, Vermont
YVETTE D. CLARKE, New York
DAVID LOEBSACK, Iowa
RAUL RUIZ, California
DEBBIE DINGELL, Michigan
BOBBY L. RUSH, Illinois
ANNA G. ESHOO, California
ELIOT L. ENGEL, New York
G.K. BUTTERFIELD, North Carolina
DORIS O. MATSUI, California
JERRY McNERNEY, California
FRANK PALLONE, JR., New Jersey
   *(Ex Officio)*

*Jurisdiction:* Electronic communications, both Interstate and foreign, including voice, video, audio and data, whether transmitted by wire or wirelessly, and whether transmitted by telecommunications, commercial or private mobile service, broadcast, cable, satellite, microwave, or other mode; technology generally; emergency and public safety communications; cybersecurity, privacy, and data security; the Federal Communications Commission, the National Telecommunications and Information Administration, the Office of Emergency Communications in the Department of Homeland Security; and all aspects of the above-referenced jurisdiction related to the Department of Homeland Security.

### Subcommittee on Digital Commerce and Consumer Protection

#### (Ratio 14–10)

ROBERT E. LATTA, Ohio, *Chairman*

ADAM KINZINGER, Illinois,
   *Vice Chairman*
FRED UPTON, Michigan
MICHAEL C. BURGESS, Texas
LEONARD LANCE, New Jersey
BRETT GUTHRIE, Kentucky
DAVID McKINLEY, West Virginia
GUS M. BILIRAKIS, Florida
LARRY BUCSHON, Indiana
MARKWAYNE MULLIN, Oklahoma
MIMI WALTERS, California
RYAN A. COSTELLO, Pennsylvania
JEFF DUNCAN, South Carolina
GREG WALDEN, Oregon
   *(Ex Officio)*

JANICE D. SCHAKOWSKY, Illinois,
   *Ranking Member*
BEN RAY LUJAN, New Mexico
YVETTE D. CLARKE, New York
TONY CÁRDENAS, California
DEBBIE DINGELL, Michigan
DORIS O. MATSUI, California
PETER WELCH, Vermont
JOSEPH P. KENNEDY, Massachusetts
GENE GREEN, Texas
FRANK PALLONE, JR., New Jersey
   *(Ex Officio)*

*Jurisdiction:* Interstate and foreign commerce, including all trade matters within the jurisdiction of the full committee; regulation of commercial practices (the Federal Trade Commission), including sports-related matters; consumer affairs and consumer protection, including privacy matters generally; data security; consumer product safety (the Consumer Product Safety Commission); product liability; motor vehicle safety; and regulation of travel, tourism, and time.

13

## SUBCOMMITTEE ON ENERGY

### (Ratio 19–14)

FRED UPTON, Michigan, *Chairman*

PETE OLSON, Texas,
  *Vice Chairman*
JOE BARTON, Texas, *Vice Chairman*
JOHN SHIMKUS, Illinois
ROBERT E. LATTA, Ohio
GREGG HARPER, Mississippi
DAVID McKINLEY, West Virginia
ADAM KINZINGER, Illinois
H. MORGAN GRIFFITH, Virginia
BILL JOHNSON, Ohio
BILLY LONG, Missouri
LARRY BUCSHON, Indiana
BILL FLORES, Texas
MARKWAYNE MULLIN, Oklahoma
RICHARD HUDSON, North Carolina
KEVIN CRAMER, North Dakota
TIM WALBERG, Michigan
JEFF DUNCAN, South Carolina
GREG WALDEN, Oregon
  *(Ex Officio)*

BOBBY L. RUSH, Illinois,
  *Ranking Member*
JERRY McNERNEY, California
SCOTT H. PETERS, California
GENE GREEN, Texas
MICHAEL F. DOYLE, Pennsylvania
KATHY CASTOR, Florida
JOHN P. SARBANES, Maryland
PETER WELCH, Vermont
PAUL TONKO, New York
DAVID LOEBSACK, Iowa
KURT SCHRADER, Oregon
JOSEPH P. KENNEDY, Massachusetts
G.K. BUTTERFIELD, North Carolina
FRANK PALLONE JR., New Jersey
  *(Ex Officio)*

*Jurisdiction:* National energy policy; fossil energy; renewable energy; nuclear energy; nuclear facilities; the Department of Energy; the Nuclear Regulatory Commission; the Federal Energy Regulatory Commission; synthetic and alternative fuels; energy conservation; energy information; utility issues; interstate energy compacts; energy generation, marketing, reliability, transmission, siting, exploration, production, efficiency, cybersecurity, and ratemaking for all generated power; pipelines; all laws, programs, and government activities affecting energy matters, including all aspects of the above-referenced jurisdiction related to the Department of Homeland Security.

## SUBCOMMITTEE ON ENVIRONMENT

### (Ratio 14–10)

JOHN SHIMKUS, Illinois, *Chairman*

DAVID McKINLEY, West Virginia,
  *Vice Chairman*
JOE BARTON, Texas
MARSHA BLACKBURN, Tennessee
GREGG HARPER, Mississippi
PETE OLSON, Texas
BILL JOHNSON, Ohio
BILL FLORES, Texas
RICHARD HUDSON, North Carolina
KEVIN CRAMER, North Dakota
TIM WALBERG, Michigan
EARL L. "BUDDY" CARTER, Georgia
JEFF DUNCAN, South Carolina
GREG WALDEN, Oregon
  *(Ex Officio)*

PAUL TONKO, New York,
  Ranking Member
RAUL RUIZ, California
SCOTT H. PETERS, California
GENE GREEN, Texas
DIANA DeGETTE, Colorado
JERRY McNERNEY, California
TONY CARDENAS, California
DEBBIE DINGELL, Michigan
DORIS O. MATSUI, California
FRANK PALLONE, JR., New Jersey
  *(Ex Officio)*

*Jurisdiction:* All matters related to soil, air, and water contamination, including Superfund and the Resource Conservation and Recovery Act; the regulation of solid, hazardous, and nuclear wastes, including mining, nuclear, oil, gas, and coal combustion waste; the Clean Air Act and air emissions; emergency environmental response; industrial plant security, including cybersecurity; the regulation of drinking water (Safe Drinking Water Act), including underground injection of fluids (e.g., deep well injection or hydrofracking); toxic substances (Toxic Substances Control Act); noise; and all aspects of the above-referenced jurisdiction related to the Department of Homeland Security.

14

SUBCOMMITTEE ON HEALTH

(Ratio 19–14)

MICHAEL C. BURGESS, Texas, *Chairman*

BRETT GUTHRIE, Kentucky,
  *Vice Chairman*
JOE BARTON, Texas, *Vice Chairman*
FRED UPTON, Michigan
JOHN SHIMKUS, Illinois
MARSHA BLACKBURN, Tennessee
ROBERT E. LATTA, Ohio
CATHY McMORRIS RODGERS, Washington
LEONARD LANCE, New Jersey
H. MORGAN GRIFFITH, Virginia
GUS M. BILIRAKIS, Florida
BILLY LONG, Missouri
LARRY BUCSHON, Indiana
SUSAN W. BROOKS, Indiana
MARKWAYNE MULLIN, Oklahoma
RICHARD HUDSON, North Carolina
EARL L. "BUDDY" CARTER, Georgia
VACANCY
GREG WALDEN, Oregon
  *(Ex Officio)*

GENE GREEN, Texas,
  *Ranking Member*
ELIOT L. ENGEL, New York
JANICE D. SCHAKOWSKY, Illinois
G.K. BUTTERFIELD, North Carolina
DORIS O. MATSUI, California
KATHY CASTOR, Florida
JOHN P. SARBANES, Maryland
BEN RAY LUJAN, New Mexico
KURT SCHRADER, Oregon
JOSEPH P. KENNEDY, Massachusetts
TONY CARDENAS, California
ANNA G. ESHOO, California
DIANA DeGETTE, Colorado
FRANK PALLONE, Jr., New Jersey
  *(Ex Officio)*

*Jurisdiction:* Public health and quarantine; hospital construction; mental health; biomedical research and development; health information technology, privacy, and cybersecurity; public health insurance (Medicare, Medicaid) and private health insurance; medical malpractice and medical malpractice insurance; the regulation of food, drugs, and cosmetics; drug abuse; the Department of Health and Human Services; the National Institutes of Health; the Centers for Disease Control; Indian Health Service; and all aspects of the above-referenced jurisdiction related to the Department of Homeland Security.

SUBCOMMITTEE ON OVERSIGHT AND INVESTIGATIONS

(Ratio 11–8)

GREGG HARPER, Mississippi, *Chairman*

H. MORGAN GRIFFITH, Virginia,
  *Vice Chairman*
JOE BARTON, Texas, *Vice Chairman*
MICHAEL C. BURGESS, Texas
SUSAN W. BROOKS, Indiana
TIM WALBERG, Michigan
MIMI WALTERS, California
RYAN A. COSTELLO, Pennsylvania
VACANCY
GREG WALDEN, Oregon
  *(Ex Officio)*

DIANA DeGETTE, Colorado,
  *Ranking Member*
JANICE D. SCHAKOWSKY, Illinois
KATHY CASTOR, Florida
PAUL TONKO, New York
YVETTE D. CLARKE, New York
RAUL RUIZ, California
SCOTT H. PETERS, California
EARL L. "BUDDY" CARTER, Georgia
FRANK PALLONE, Jr., New Jersey
  *(Ex Officio)*

*Jurisdiction:* Responsibility for oversight of agencies, departments, and programs related to the jurisdiction of the full committee, and for conducting investigations.

15

## COMMITTEE STAFF

### MAJORITY COMMITTEE STAFF

MICHAEL BLOOMQUIST, *Staff Director*
KAREN CHRISTIAN, *General Counsel*
RYAN LONG, *Deputy Staff Director*
JORDAN DAVIS, *Senior Advisor*
ZACHARY HUNTER, *Communications Director*
JENNIFER BARBLAN, *Chief Counsel, Oversight and Investigations*
ROBIN COLWELL, *Chief Counsel, Communications and Technology*
MELISSA FROELICH, *Chief Counsel, Digital Commerce and Consumer Protection*
MARY MARTIN, *Chief Counsel, Energy and Environment*
JOSHUA TRENT, *Chief Counsel, Health*
JON ADAME, *Policy Coordinator, Communications and Technology*
SAMANTHA BOPP, *Staff Assistant*
ADAM "BUCK" BUCKALEW, *Professional Staff Member*
DANIEL BUTLER, *Legislative Clerk*
KELLY COLLINS, *Legislative Clerk*
SEAN CORCORAN, *Financial and Administrative Coordinator*
GERALD COURI, II, *Deputy Chief Counsel for Environment*
DAVID DEMARCO, *Information Technology Staff*
JORDAN DOWNS, *Policy Coordinator, Oversight and Investigations*
LAMAR ECHOLS, *Counsel*
WYATT ELLERTSON, *Professional Staff Member*
SEAN FARRELL, *Professional Staff Member*
CHUCK FLINT, *Policy Coordinator, Communications and Technology*
MARGARET TUCKER FOGARTY, *Staff Assistant*
ADAM FROMM, *Director of Coalitions and Outreach*
ALI FULLING, *Legislative Clerk*
THERESA GAMBO, *Human Resources and Office Administrator*
CALEB GRAFF, *Professional Staff Member*
JAY GULSHEN, *Legislative Associate*
BRIGHTON HASLETT, *Counsel*
BRITTANY HAVENS, *Professional Staff Member*
JORDAN HAVERLY, *Policy Coordinator, Environment*
ELENA HERNANDEZ, *Press Secretary*
PAUL JACKSON, *Professional Staff Member*
PETER E. KIELTY, *Deputy General Counsel*
ED KIM, *Policy Coordinator, Health*
BIJAN KOOHMARAIE, *Counsel*
TIM KURTH, *Deputy Chief Counsel, Communications and Technology*
SARAH MATTHEWS, *Press Secretary*
LAUREN MCCARTY, *Counsel*
BRANDON MOONEY, *Deputy Chief Counsel for Energy*
ANDREA NOBLE, *Fellow, Oversight and Investigations*
JAMES "JP" PALUSKIEWICZ, *Professional Staff Member*
BRANNON RAINS, *Staff Assistant*
MARK RATNER, *Policy Coordinator, Energy*
TINA RICHARDS, *Counsel*
ANNELISE RICKERT, *Counsel*
CHRISTOPHER SANTINI, *Counsel*
KRISTEN SHATYNSKI, *Professional Staff Member*
ALAN SLOBODIN, *Chief Investigative Counsel, Oversight and Investigations*
PETER SPENCER, *Senior Professional Staff Member*
DANIELLE STEELE, *Counsel*
AUSTIN STONEBRAKER, *Press Assistant*
NATALIE TURNER, *Counsel*
MADELINE VEY, *Policy Coordinator, Digital Commerce and Consumer Protection*
EVAN VIAU, *Legislative Clerk*
HAMLIN WADE, III, *Special Advisor for External Affairs*
JESSICA WILKERSON, *Professional Staff Member*
EVERETT WINNICK, *Director of Information Technology*
GREGORY ZERZAN, *Counsel*

16

Detailees

Kristine Fargotstein, *FCC*
Wayne Laufert, *GPO*
Christopher Wells, *GPO*

17

## Minority Committee Staff

Jeff Carroll, *Staff Director*
Tiffany Guarascio, *Deputy Staff Director and Chief Health Advisor*
Rick Kessler, *Staff Director, Energy and Environment and Senior Policy Advisor*
Chris Knauer, *Staff Director, Oversight and Investigations*
Michelle Ash, *Chief Counsel, Commerce, Manufacturing, Trade*
David Goldman, *Chief Counsel, Communications and Technology*
Lee Una, *Chief Counsel, Oversight and Investigations*
Tim Robinson, *Chief Counsel*
Andrew Souvall, *Director of Communications, Outreach and Member Services*
Jennifer Berenholz, *Chief Clerk*
Jacqueline Cohen, *Senior Counsel*
Ryan Skukowski, *Senior Policy Analyst*
Lisa Goldman, *Counsel*
Jerry Leverich, *Counsel*
Arielle Woronoff, *Counsel, Health*
Waverly Gordon, *Professional Staff Member*
Caitlin Haberman, *Professional Staff Member*
Elizabeth Letter, *Professional Staff Member*
Jean Fruci, *Policy Advisor, Energy and Environment*
Rachel Pryor, *Policy Advisor, Health*
Kimberlee Trzeciak, *Policy Advisor, Health*
Tuley Wright, *Policy Advisor, Energy and Environment*
John Marshall, *Policy Coordinator*
Caroline Paris-Behr, *Policy Analyst*
Alexander Ratner, *Policy Analyst*
Samantha Satchell, *Policy Analyst*
C.J. Young, *Press Secretary*
Matt Schumacher, *Press Assistant*
Jessica Martinez, *Outreach and Member Services Coordinator*
David Cwiertny, *Fellow, Energy and Environment*
Alexandrine Debianchi, *Fellow, Communications and Technology*
Olivia Pham, *Fellow, Health*
Elizabeth Ertel, *Deputy Clerk*
Edward Walker, *Technology Director*
Miles Lichtman, *Staff Assistant*
Dan Miller, *Staff Assistant*

### Detailees

Ryan Gottschall, *GAO*
Lori Maarbjerg, *FCC*
Megan Velez, *FDA*

18

**IN MEMORIAM**



"The fun never stops."

Ray Baum
(August 18, 1955 - February 9, 2018)

On February 9, 2018, the Committee lost Staff Director, Ray Baum.  Ray served as the Staff Director from 2017 to 2018 and previously served as Senior Policy Advisor from 2011 to 2016.

Ray dedicated his life to public service, as a member of the Oregon State Legislature, as a commissioner and chairman of the Oregon Public Utility Commission, and as an advisor on Capitol Hill.  He shared his wisdom, guidance, and humor with the members and staff lucky enough to work with him every day.

The Committee and our country are better off because of Ray's selfless service.  Ray will be deeply missed.

LEGISLATIVE AND OVERSIGHT ACTIVITY

SUMMARY OF COMMITTEE ACTIVITIES

Total Bills and Resolutions Referred to Committee .............................................. 1,728
Public Laws ....................................................................................................... 54
Bills and Resolutions Reported to the House .................................................... 95
Hearings Held:
    Days of Hearings ......................................................................................... 179
        Full Committee ....................................................................................... 3
        Subcommittee on Communications and Technology ............................. 26
        Subcommittee on Digital Commerce and Consumer Protection ............ 27
        Subcommittee on Energy ........................................................................ 34
        Subcommittee on Environment .............................................................. 27
        Subcommittee on Health ........................................................................ 37
        Subcommittee on Oversight and Investigations ..................................... 28
    Hours of Sitting .......................................................................................... 412:59
        Full Committee ....................................................................................... 13:38
        Subcommittee on Communications and Technology ............................. 58:09
        Subcommittee on Digital Commerce and Consumer Protection ............ 52:06
        Subcommittee on Energy ........................................................................ 83:48
        Subcommittee on Environment .............................................................. 59:21
        Subcommittee on Health ........................................................................ 95:48
        Subcommittee on Oversight and Investigations ..................................... 57:14
Legislative Markups:
    Days of Markups ......................................................................................... 36
        Full Committee ....................................................................................... 13
        Subcommittee on Communications and Technology ............................. 2
        Subcommittee on Digital Commerce and Consumer Protection ............ 2
        Subcommittee on Energy ........................................................................ 6
        Subcommittee on Environment .............................................................. 5
        Subcommittee on Health ........................................................................ 8
    Hours of Sitting .......................................................................................... 93:14
        Full Committee ....................................................................................... 63:12
        Subcommittee on Communications and Technology ............................. 01:13
        Subcommittee on Digital Commerce and Consumer Protection ............ 03:13
        Subcommittee on Energy ........................................................................ 04:23
        Subcommittee on Environment .............................................................. 04:35
        Subcommittee on Health ........................................................................ 16:38
Business Meetings:
    Days of Meetings ......................................................................................... 1
        Full Committee ....................................................................................... 1
    Hours of Sitting .......................................................................................... 01:16
        Full Committee ....................................................................................... 01:16

20

# Full Committee

OVERSIGHT ACTIVITIES

FEDERAL EFFORTS TO COMBAT THE OPIOID CRISIS: A STATUS
UPDATE ON CARA AND OTHER INITIATIVES

On October 25, 2017, the full Committee on Energy and Commerce held a hearing entitled "Federal Efforts to Combat the Opioid Crisis: A Status Update on CARA and Other Initiatives." The purpose of the hearing was to provide a status update and review implementation of existing legislation and review other Federal efforts to address the opioid crisis and additional steps Congress can take to augment those efforts, and address new and emerging issues in the fight against opioid abuse. The Committee received testimony from Scott Gottlieb, Commissioner, Food and Drug Administration; Elinore McCance-Katz, Assistant Secretary for Mental Health and Substance Use, Substance Abuse and Mental Health Services Administration; Anne Schuchat, Principal Deputy Director, Centers for Disease Control and Prevention; Nora Volkow, Director, National Institute on Drug Abuse, National Institutes of Health; and Neil Doherty, Deputy Assistant Administrator, Office of Diversion Control, Drug Enforcement Administration.

FACEBOOK: TRANSPARENCY AND USE OF CONSUMER DATA

On April 11, 2018, the full Committee on Energy and Commerce held a hearing entitled "Facebook: Transparency and Use of Consumer Data." The purpose of the hearing was to discuss Facebook's business model and policies regarding the use of consumer data. The Committee received testimony from Mark Zuckerberg, Co-Founder, Chairman, and CEO, Facebook, Inc.

TWITTER: TRANSPARENCY AND ACCOUNTABILITY

On September 5, 2018, the full Committee on Energy and Commerce held a hearing entitled "Twitter: Transparency and Accountability." The purpose of the hearing was to discuss Twitter's business model and their policies regarding user-generated content. The Committee received testimony from Jack Dorsey, Co-Founder, Chairman, and CEO, Twitter, Inc.

SUBCOMMITTEE ON COMMUNICATIONS AND TECHNOLOGY

## LEGISLATIVE ACTIVITIES

PROVIDING FOR CONGRESSIONAL DISAPPROVAL UNDER CHAPTER 8 OF TITLE 5, UNITED STATES CODE, OF THE RULE SUBMITTED BY THE FEDERAL COMMUNICATIONS COMMISSION RELATING TO "PROTECTING THE PRIVACY OF CUSTOMERS OF BROADBAND AND OTHER TELECOMMUNICATIONS SERVICES"

PUBLIC LAW 115–22 (S.J. RES. 34)

Providing for congressional disapproval under chapter 8 of title 5, United States Code, of the rule submitted by the Federal Communications Commission relating to "Protecting the Privacy of Customers of Broadband and Other Telecommunications Services."

### Summary

S.J. Res. 34 would provide that Congress disapproves the rule submitted by the Federal Communications Commission relating to "Protecting the Privacy of Customers of Broadband and Other Telecommunications Services" (81 Fed. Reg. 87274 (December 2, 2016)), and such rule shall have no force or effect.

### Legislative History

S.J. Res. 34 was introduced by Senator Jeff Flake (AZ) on March 7, 2017, and referred to the Committee on Commerce, Science, and Transportation.

On March 15, 2017, S.J. Res. 34 was discharged by petition, pursuant to 5 U.S.C. 802(c), and placed on the Senate Legislative Calendar under General Orders (Calendar No. 16).

On March 23, 2017, S.J. Res. 34, was considered in the Senate, and the resolution, without amendment, was passed by a recorded vote of 50 yeas and 48 nays (Roll Call No. 94).

On March 28, 2017, S.J. Res. 34 was considered in the House pursuant to the provisions of H.Res. 230, and the joint resolution, without amendment, was passed by a recorded vote of 215 yeas and 205 nays (Roll Call No. 202).

On March 30, 2017, S.J. Res. 34 was presented to the President, and the President signed the bill on April 3, 2017 (Public Law 115–22).

## KARI'S LAW ACT OF 2017

PUBLIC LAW 115–127 (H.R. 582)

To amend the Communications Act of 1934 to require multi-line telephone systems to have a configuration that permits users to directly initiate a call to 9-1-1 without dialing any additional digit, code, prefix, or post-fix, and for other purposes.

22

*Summary*

H.R. 582 would require new telephone systems that have multiple lines to allow callers to access 9-1-1 services directly, without needing to dial any other numbers or codes. This requirement would apply to entities that manufacture, sell, lease, or install multi-line telephone systems, beginning two years after the date of enactment. However, phones installed before that effective date would not have to be changed if the upgrade would require improving the system's hardware or software.

*Legislative History*

H.R. 582 was introduced by Representative Louie Gohmert (TX–01) on January 17, 2017, and referred to the Committee on Energy and Commerce.

On January 23, 2017, H.R. 582 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a recorded vote of 408 yeas and 0 nays (Roll Call No. 61).

On January 24, 2017, H.R. 582 was received in the Senate, read twice, and referred to the Committee on Commerce, Science, and Transportation.

On February 5, 2017, H.R. 582 was considered in the Senate, and the bill, as amended, was passed by unanimous consent.

On February 8 and 9, 2018, H.R. 582 was considered in the House under a motion to suspend the Rules and concur in the Senate amendment to H.R. 582, and the bill, without further amendment, was passed by a voice vote.

On February 9, 2018, H.R. 582 was presented to the President, and the President signed the bill on February 16, 2018 (Public Law 115–127).

IMPROVING RURAL CALL QUALITY AND RELIABILITY ACT OF 2017

PUBLIC LAW 115–129 (S. 96, H.R. 460)

To amend the Communications Act of 1934 to ensure the integrity of voice communications and to prevent unjust or unreasonable discrimination among areas of the United States in the delivery of such communications.

*Summary*

H.R. 460 would require intermediate providers of covered voice communications to register with the Federal Communications Commission and comply with service quality standards set by the Commission. H.R. 460 also would require that covered providers not use any intermediate provider that does not register and meet such standards.

*Legislative History*

H.R. 460 was introduced by Representative David Young (IA–03) on January 11, 2017, and referred to the Committee on Energy and Commerce.

On January 23, 2017, H.R. 460 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

23

On January 24, 2017, H.R. 460 was received in the Senate, read twice, and referred to the Committee on Commerce, Science, and Transportation.

No further action was taken on the bill.

S. 96 was introduced by Senator Amy Klobuchar (MN) on January 11, 2017, and referred to the Committee on Commerce, Science, and Transportation. S. 96 was the Senate companion bill to H.R. 460.

On March 21, 2017, Senator John Thune (SD) reported S. 96, without amendment, to the Senate with a written report (Report 115–6), and the bill was placed on the Senate Legislative Calendar under General Orders (Calendar No. 19).

On August 3, 2017, S. 96 was considered in the Senate, and the bill, without amendment, was passed by unanimous consent.

On February 8 and 9, 2018, S. 96 was considered in the House under a motion to suspend the Rules, and the bill, without further amendment, was passed by a voice vote.

On February 14, 2018, S. 96 was presented to the President, and the President signed the bill on February 26, 2018 (Public Law 115–129).

CONSOLIDATED APPROPRIATIONS ACT, 2018

PUBLIC LAW 115–141 (DIVISION P OF H.R. 1625, H.R. 4986, H.R. 423, H.R. 588, H.R. 599, H.R. 1340, H.R. 1546, H.R. 1581, H.R. 2546, H.R. 2636, H.R. 3347, H.R. 3995, H.R. 5236, H.R. 6394, AND POLICIES FROM H.R. 1814, H.R. 3685, H.R. 4109, H.R. 4795, H.R. 4798, H.R. 4839, H.R. 4800, H.R. 4847)

To amend the State Department Basic Authorities Act of 1956 to include severe forms of trafficking in persons within the definition of transnational organized crime for purposes of the rewards program of the Department of State, and for other purposes.

*Summary*

Division P of H.R. 1625 would reauthorize the Federal Communications Commission (FCC). The bill would maintain the FCC's section 9 authority to assess regulatory fees and would direct the agency to review and adjust its fee schedule every two years. The bill also would amend title I of the Communications Act to include several agency process reforms, including consolidation and streamlining of redundant FCC reports. Division P would include provisions to address spoofing, broadband access for veterans, data collection for mobile service coverage, 9-1-1 location accuracy, improving access to communications during times of emergency, and improving broadband coverage in Indian country. The bill also would establish funds in the Treasury to pay broadcaster relocation costs associated with the reorganization of broadcast television spectrum under section 6402 of the Middle Class Tax Relief and Job Creation Act of 2012 (47 U.S.C. 1452). Finally, the bill would identify licensed and unlicensed spectrum to be made commercially available, facilitating broadband deployment on Federal property, and ensuring the timely consideration of streamlined broadband facility applications.

24

*Legislative History*

H.R. 1625 was introduced by Representative Edward R. Royce (CA–39) on March 20, 2018, and referred to the Committee on Foreign Affairs.

On May 22, 2017, H.R. 1625 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On May 23, 2017, H.R. 1625 was received in the Senate, read twice, and referred to the Committee on Foreign Relations.

On February 12, 2018, Senator Bob Corker (TN) reported H.R. 1625, as amended, to the Senate without a written report, and the bill was placed on the Senate Legislative Calendar under General Orders (Calendar No. 311).

On February 28, 2018, H.R. 1625 was considered in the Senate, and the bill, as amended, was passed by unanimous consent.

On March 22, 2018, H.R. 1625 was considered in the House pursuant to the provisions of H.Res. 796, and the bill, with a House amendment to the Senate amendment thereto, was passed by a recorded vote of 256 yeas and 167 nays (Roll Call No. 127).

On March 22 and 23, 2018, H.R. 1625 was received and considered in the Senate, and the bill, without further amendment, was passed by a recorded vote of 65 yeas and 32 nays (Roll Call No. 63).

On March 23, 2018, H.R. 1625 was presented to the President, and the President signed the bill (Public Law 115–141).

NATIONAL SUICIDE HOTLINE IMPROVEMENT ACT OF 2018

PUBLIC LAW 115–233 (H.R. 2345)

To require the Federal Communications Commission to study the feasibility of designating a simple, easy-to-remember dialing code to be used for a national suicide prevention and mental health crisis hotline system.

*Summary*

H.R. 2345 would require the Federal Communications Commission to coordinate with the Department of Veterans Affairs and the Substance Abuse and Mental Health Services Administration to study and report on the feasibility of designating a N11 dialing code as a national suicide prevention and mental health crises hotline system.

*Legislative History*

H.R. 2345 was introduced by Representative Chris Stewart (UT–03) on May 3, 2017, and referred to the Committee on Energy and Commerce. H.R. 2345 was referred to the Subcommittee on Communications and Technology on May 5, 2017.

On March 22, 2018, the Subcommittee on Communications and Technology held a hearing on H.R. 2345.

On June 13, 2018, the Subcommittee on Communications and Technology met in open markup session to consider H.R. 2345 and forwarded the bill, as amended, to the full Committee by a voice vote.

25

On July 12, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 2345 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On July 18, 2018, the Committee on Energy and Commerce reported H.R. 2345, as amended, to the House (H.Rept. 115–836), and the bill was placed on the Union Calendar (Calendar No. 646).

On July 23, 2018, H.R. 2345 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a recorded vote of 379 yeas and 1 nay (Roll Call No. 366).

On July 24, 2018, H.R. 2345 was received in the Senate and read twice.

On August 1, 2018, H.R. 2345 was considered in the Senate, and the bill, without amendment, was passed by unanimous consent.

On August 3, 2018, H.R. 2345 was presented to the President, and the President signed the bill on August 14, 2018 (Public Law 115–233).

### AGRICULTURE IMPROVEMENT ACT OF 2018

#### PUBLIC LAW 115–334 (H.R. 2)

To provide for the reform and continuation of agricultural and other programs of the Department of Agriculture through fiscal year 2023, and for other purposes.

*Summary*

H.R. 2 would improve coordination of funding by the Rural Utilities Service (RUS) with the Federal Communications Commission (FCC) and the National Telecommunications and Information Administration (NTIA), providing further Congressional oversight to ensure that Federal dollars are provided to communities that are most in need. These agencies would report to Congress on the bandwidth challenges facing rural providers in the modern content delivery marketplace.

H.R. 2 also would include provisions of H.R. 4881, the Precision Agriculture Connectivity Act, which would require the FCC, working with the Department of Agriculture, to increase broadband deployment and adoption in rural areas so ranchers and farmers are able to improve their yields with increased connectivity.

*Legislative History*

H.R. 2 was introduced by Representative Michael K. Conaway (TX–11) on April 12, 2018, and referred to the Committee on Agriculture.

On May 15, 16, 17, and 18, 2018, H.R. 2 was considered in the House pursuant to the provisions of H.Res. 891, and the bill, as amended, was defeated by a recorded vote of 198 yeas and 213 nays (Roll Call No. 205).

On June 21, 2018, the motion to reconsider was agreed to by a recorded vote of 233 yeas and 191 nays (Roll Call No. 283), and the bill, as amended, was passed by a recorded vote of 213 yeas and 211 nays (Roll Call No. 284).

26

On June 21, 2018, H.R. 2 was received in the Senate, read twice, and placed on the Senate Legislative Calendar under General Orders (Calendar No. 483).

On June 28, 2018, H.R. 2 was considered in the Senate, and the bill, as amended, was passed by a recorded vote of 86 yeas and 11 nays (Roll Call No. 143).

On July 18, 2018, the House agreed to a motion that the House disagree to the Senate amendment to H.R. 2 and request a conference with the Senate thereon by unanimous consent.

On July 18, 2018, the Speaker appointed conferees. From the Committee on Energy and Commerce, the Speaker appointed Representative John Shimkus (IL–15), Representative Kevin Cramer (ND–AL), and Representative Paul Tonko (NY–20) for consideration of subtitles A and B of title VI, sections 6202, 6203, 6401, 6406, 6407, 6409, 6603, 7301, 7605, 8106, 8507, 9119, 9121, and 11101 of the House bill, and sections 6116, 6117, 6202, 6206, 6207, 6208, 6209, 6301, 6303, 7412, 9102, 9104, 9106, 9111, 9112, 9113, 12408, 12627, and 12628 of the Senate amendment, and modifications committed to conference.

On July 31, 2018, the Senate insisted on its amendment, agreed to the request for a conference, and authorized the Presiding Officer to appoint conferees agreed to in Senate by a voice vote.

On August 1, 2018, the Senate appointed the following conferees, Senator Pat Roberts (KS), Senator Mitch McConnell (KY), Senator John Boozman (AR), Senator John Hoeven (ND), Senator Joni Ernst (IA), Senator Debbie Stabenow (MI), Senator Patrick J. Leahy (VT), Senator Sherrod Brown (OH), and Senator Heidi Heitkamp (ND).

The conference met on September 5, 2018. The conference report (H. Rept. 115–1072) was filed on December 10, 2018.

On December 11, 2018, the Senate agreed to the conference report by a roll call vote of 87 yeas and 13 nays (Roll Call No. 259).

On December 12, 2018, the conference report was considered in the House pursuant to the provisions of H. Res. 1176, and the conference report was agreed to by a roll call vote of 369 yeas and 47 nays (Roll Call No. 434).

On December 19, 2018, H.R. 2 was presented to the President, and the President signed the bill on December 20, 2018 (Public Law 115–334).

MAKING OPPORTUNITIES FOR BROADBAND INVESTMENT AND LIMITING EXCESSIVE AND NEEDLESS OBSTACLES TO WIRELESS ACT

S. 19

To provide opportunities for broadband investment, and for other purposes.

*Summary*

S. 19 would authorize Federal agencies to implement various programs and measures related to management of the electromagnetic spectrum. It would direct Federal agencies to prepare reports, develop information for firms that provide telecommunications services, award prizes for advanced technologies, and en-

sure that certain radio frequencies are made available for commercial uses.

*Legislative History*

S. 19 was introduced by Senator John Thune (SD) on January 3, 2017, and referred to the Committee on Commerce, Science, and Transportation.

On March 21, 2017, Senator Thune reported S. 19 to the Senate with a written report (Report 115–4), and the bill was placed on the Senate Legislative Calendar under General Orders (Calendar No. 17).

On April 5, 2017, the Subcommittee on Communications and Technology held a hearing on S. 19.

On August 4, 2017, S. 19 was considered in the Senate, and the bill, as amended, was passed by unanimous consent.

No further action was taken on the bill.

#### Small Business Broadband Deployment Act

##### H.R. 288

To ensure that small business providers of broadband Internet access service can devote resources to broadband deployment rather than compliance with cumbersome regulatory requirements.

*Summary*

H.R. 288 would modify certain regulatory policies adopted by the Federal Communications Commission (FCC) regarding the obligation of small broadband providers to give consumers information about the performance and cost of their services. Under the FCC's current rules, broadband providers with 100,000 or fewer subscribers are exempt from certain reporting requirements until December 16, 2016, at which time the Commission plans to adopt final regulations on those requirements. H.R. 288 would apply the exemption to providers with 250,000 or fewer subscribers and would keep the exemption in place for five years after the date of enactment. H.R. 288 also would direct the FCC to submit recommendations to Congress on those policies.

*Legislative History*

H.R. 288 was introduced by Representative Greg Walden (OR–02) on January 4, 2017, and referred to the Committee on Energy and Commerce.

On January 10, 2017, H.R. 288 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On January 11, 2017, H.R. 288 was received in the Senate, read twice, and referred to the Committee on Commerce, Science, and Transportation.

No further action was taken on the bill.

28

FEDERAL COMMUNICATIONS COMMISSION PROCESS REFORM ACT OF 2017

H.R. 290

To amend the Communications Act of 1934 to provide for greater transparency and efficiency in the procedures followed by the Federal Communications Commission, and for other purposes.

*Summary*

H.R. 290 would make a number of changes to the Federal Communications Commission's (FCC) rulemaking procedures. H.R. 290 also would require the FCC to create a public database of information about complaints made by consumers of telecommunications services. Finally, H.R. 290 would exempt the Universal Service Fund from provisions of the Antideficiency Act through December 31, 2020.

*Legislative History*

H.R. 290 was introduced by Representative Greg Walden (OR–02) on January 4, 2017, and referred to the Committee on Energy and Commerce.

On January 23, 2017, H.R. 290 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On January 24, 2017, H.R. 290 was received in the Senate, read twice, and referred to the Committee on Commerce, Science, and Transportation.

No further action was taken on the bill.

ANTI-SPOOFING ACT OF 2017

H.R. 423

To amend the Communications Act of 1934 to expand and clarify the prohibition on provision of misleading or inaccurate caller identification information, and for other purposes.

*Summary*

H.R. 423 expands the prohibition against knowingly transmitting misleading or inaccurate caller identification information to apply to both persons outside the United States if the recipient is within the United States, and text messages. H.R. 423 also would apply existing caller identification requirements for calls made using a telecommunications service or IP-enabled voice service to services interconnected with the public switched telephone network and that furnish voice communications using resources from the North American Numbering Plan; and transmissions from a telephone facsimile machine, computer, or other device to a telephone facsimile machine.

H.R. 423 would require the Federal Communications Commission (FCC) to coordinate with the Federal Trade Commission (FTC) to update education materials that help consumers identify scams and fraudulent activity that rely upon misleading or inaccurate caller identification information, and existing technologies that consumers can use to protect against such fraud. Finally, H.R. 423 re-

29

quires the Government Accountability Office to report on FCC and FTC action taken to combat the fraudulent provision of misleading or inaccurate caller identification information and any recommendations to combat the fraudulent provision of such information.

*Legislative History*

H.R. 423 was introduced by Representative Grace Meng (NY–06) on January 10, 2017, and referred to the Committee on Energy and Commerce.

On January 23, 2017, H.R. 423 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a recorded vote of 398 yeas and 5 nays (Roll Call No. 24).

On January 24, 2017, H.R. 423 was received in the Senate, read twice, and referred to the Committee on Commerce, Science, and Transportation.

No further action was taken on the bill. The provisions of H.R. 423 were included in H.R. 1625, which is discussed elsewhere in this report.

### AMATEUR RADIO PARITY ACT OF 2017

#### H.R. 555

To direct the Federal Communications Commission to amend its rules so as to prohibit the application to amateur stations of certain private land use restrictions, and for other purposes.

*Summary*

H.R. 555 directs the Federal Communications Commission to amend station antenna structure regulations to prohibit a private land use restriction from applying to amateur radio stations if the restriction precludes communications in an amateur radio service, fails to permit a licensee of amateur radio service to install and maintain an effective outdoor antenna on property under its exclusive use or control, or is not the minimum practicable restriction to accomplish the lawful purposes of a community association seeking to enforce the restriction.

*Legislative History*

H.R. 555 was introduced by Representative Adam Kinzinger (IL–16) on January 13, 2017, and referred to the Committee on Energy and Commerce.

On January 23, 2017, H.R. 555 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On January 24, 2017, H.R. 555 was received in the Senate, read twice, and referred to the Committee on Commerce, Science, and Transportation.

No further action was taken on the bill.

SECURING ACCESS TO NETWORKS IN DISASTERS ACT

H.R. 588

To direct the Federal Communications Commission to conduct a study on network resiliency during times of emergency, and for other purposes.

*Summary*

H.R. 588 would direct the Federal Communications Commission to study ways to enhance access to telecommunications services during emergencies when mobile service is unavailable. The bill also would redefine the term "essential service provider" explicitly to include certain telecommunication mediums, such as Internet and cable services, in a list of entities that provide essential services.

*Legislative History*

H.R. 588 was introduced by Representative Frank Pallone, Jr. (NJ–06) on January 17, 2017, and referred to the Committee on Transportation and Infrastructure, and in addition to the Committee on Energy and Commerce.

On January 23, 2017, H.R. 588 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On January 24, 2017, H.R. 588 was received in the Senate, read twice, and referred to the Committee on Commerce, Science, and Transportation.

No further action was taken on the bill. The provisions of H.R. 588 were included in H.R. 1625, which is discussed elsewhere in this report.

FEDERAL COMMUNICATIONS COMMISSION CONSOLIDATED REPORTING ACT OF 2017

H.R. 599

To amend the Communications Act of 1934 to consolidate the reporting obligations of the Federal Communications Commission in order to improve congressional oversight and reduce reporting burdens.

*Summary*

H.R. 599 consolidates eight separate reports of the Federal Communications Commission (FCC) into a single comprehensive report with a focus on intermodal competition, deploying communications capabilities to unserved communities, and eliminating regulatory barriers. By consolidating these reports, the bill would reduce the reporting burdens on the FCC while encouraging the agency to analyze competition in the marketplace. H.R. 599 also eliminates twelve outdated reports, including references to reports repealed more than a decade ago and a report on competition between telegraph companies and telephone companies.

31

*Legislative History*

H.R. 599 was introduced by Representative Steve Scalise (LA–01) on January 23, 2017, and referred to the Committee on Energy and Commerce.

On January 23, 2017, H.R. 599 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On January 24, 2017, H.R. 599 was received in the Senate, read twice, and referred to the Committee on Commerce, Science, and Transportation.

No further action was taken on the bill. The provisions of H.R. 599 were included in H.R. 1625, which is discussed elsewhere in this report.

### LEADING INFRASTRUCTURE FOR TOMORROW'S AMERICA ACT

#### H.R. 2479

To rebuild and modernize the Nation's infrastructure to expand access to broadband internet, rehabilitate drinking water infrastructure, modernize the electric grid and energy supply infrastructure, redevelop brownfields, strengthen health care infrastructure, create jobs, protect public health and the environment, and for other purposes.

*Summary*

H.R. 2479 would establish a program at the National Telecommunications and Information Administration to expand access to broadband for communities throughout the United States that protects consumer privacy and promotes network security. The bill also would authorize $40 billion for broadband deployment; of which 75 percent would be distributed to private entities to deploy broadband in unserved areas through a reverse auction mechanism. The remaining 25 percent would be distributed to States for distribution to private entities through a statewide reverse auction for broadband deployment in unserved and underserved areas and for the deployment of Next Generation 911.

*Legislative History*

H.R. 2479 was introduced by Representative Frank Pallone, Jr. (NJ–06) on May 17, 2017, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Science, Space, and Technology, Committee on Transportation and Infrastructure, Committee on Ways and Means, and Committee on Natural Resources.

On January 30, 2018, the Subcommittee on Communications and Technology held a hearing on H.R. 2479.

No further action was taken on the bill.

### RURAL REASONABLE AND COMPARABLE WIRELESS ACCESS ACT OF 2017

#### H.R. 2903

To direct the Federal Communications Commission to promulgate regulations that establish a national standard for determining

32

whether mobile and broadband services available in rural areas are reasonably comparable to those services provided in urban areas.

*Summary*

H.R. 2903 would direct the Federal Communications Commission (FCC) to promulgate rules to establish a national standard for determining whether rural areas have reasonably comparable wireless and broadband services to services provided in urban areas. To determine whether rural areas have reasonably comparable coverage, H.R. 2903 would require the FCC to gather data on the average signal strengths and speeds of commercial mobile service and commercial mobile data service, and broadband Internet access services in the twenty most populous metropolitan statistical areas. The FCC would test whether the service in rural areas meets or exceeds these averages as the basis of whether they are underserved.

*Legislative History*

H.R. 2903 was introduced by Representative David B. McKinley (WV–01) on June 15, 2017, and referred to the Committee on Energy and Commerce. H.R. 2903 was referred to the Subcommittee on Communications and Technology on June 16, 2017.

On March 22, 2018, the Subcommittee on Communications and Technology held a hearing on H.R. 2903.

No further action was taken on the bill.

SMALL ENTITY REGULATORY RELIEF OPPORTUNITY ACT OF 2017

H.R. 3787

To amend the Communications Act of 1934 to provide for streamlined procedures for waiver petitions seeking relief for small entities from regulations issued by the Federal Communications Commission, to require the Commission to defer the application of new regulations to small entities, and for other purposes.

*Summary*

H.R. 3787 would direct the Federal Communications Commission (FCC) to complete a rulemaking to establish streamlined procedures for small entities regarding filing, consideration, and resolution of a petition before the Commission within six months. The bill also would direct the FCC to review all its regulations to determine whether there is good cause to grant relief to some or all small entities.

*Legislative History*

H.R. 3787 was introduced by Representative Robert E. Latta (OH–05) on September 14, 2017, and referred to the Committee on Energy and Commerce. H.R. 3787 was referred to the Subcommittee on Communications and Technology on September 15, 2017.

On March 22, 2018, the Subcommittee on Communications and Technology held a hearing on H.R. 3787.

No further action was taken on the bill.

33

ADVANCING CRITICAL CONNECTIVITY EXPANDS SERVICE, SMALL
BUSINESS RESOURCES, OPPORTUNITIES, ACCESS, AND DATA BASED
ON ASSESSED NEED AND DEMAND ACT OR THE ACCESS
BROADBAND ACT

H.R. 3994

To establish the Office of Internet Connectivity and Growth, and
for other purposes.

*Summary*

H.R. 3994 would establish an Office of Internet Connectivity and
Growth at the National Telecommunications and Information Ad-
ministration. The Office of Internet Connectivity and Growth would
coordinate and track Federal funding for broadband across all
agencies. This office would streamline the process of applying for
Federal funding for projects that expand broadband access.

*Legislative History*

H.R. 3994 was introduced by Representative Paul Tonko (NY–20)
on October 6, 2017, and referred to the Committee on Energy and
Commerce. H.R. 3994 was referred to the Subcommittee on Com-
munications and Technology on October 13, 2017.

On January 30, 2018, the Subcommittee on Communications and
Technology held a hearing on H.R. 3994.

On June 13, 2018, the Subcommittee on Communications and
Technology met in open markup session to consider H.R. 3994 and
forwarded the bill, as amended, to the full committee by a voice
vote.

On July 12, 2018, the full Committee on Energy and Commerce
met in open markup session to consider H.R. 3994 and ordered the
bill, as amended, favorably reported to the House by a voice vote.

On July 18, 2018, the Committee on Energy and Commerce re-
ported H.R. 2345, as amended, to the House (H. Rept. 115–841),
and the bill was placed on the Union Calendar (Calendar No. 650).

On July 23, 2018, H.R. 3994 was considered in the House under
a motion to suspend the Rules, and the bill, as amended, was
passed by a voice vote.

On July 24, 2018, H.R. 3994 was received in the Senate, read
twice, and referred to the Committee on Commerce, Science, and
Transportation.

No further action was taken on the bill.

BROADBAND INFRASTRUCTURE FINANCE AND INNOVATION ACT OF
2017

H.R. 4287

To establish a broadband infrastructure finance and innovation
program to make available loans, loan guarantees, and lines of
credit for the construction and deployment of broadband infrastruc-
ture, and for other purposes.

*Summary*

H.R. 4287 would create a Broadband Infrastructure Finance and
Innovation program at the National Telecommunications and Infor-

34

mation Administration (NTIA) to provide loans to State and local entities for broadband infrastructure projects. The bill would require the NTIA Administrator to report to Congress on the financial performance of projects funded under the program every two years.

*Legislative History*

H.R. 4287 was introduced by Representative Ben Ray Luján (NM–03) on November 7, 2017, and referred to the Committee on Energy and Commerce. H.R. 4287 was referred to the Subcommittee on Communications and Technology on November 10, 2017.

On January 30, 2018, the Subcommittee on Communications and Technology held a hearing on H.R. 4287.

No further action was taken on the bill.

COMMUNICATIONS FACILITIES DEPLOYMENT ON FEDERAL PROPERTY ACT OF 2018

H.R. 4795

To amend the Middle Class Tax Relief and Job Creation Act of 2012 to promote communications facilities deployment on Federal property, and for other purposes.

*Summary*

H.R. 4795 would require executive agencies to use common application forms and cost-based application fees for easements, rights-of-way, and lease requests, and master contracts for placement of communications facility installations on Federal property.

*Legislative History*

H.R. 4795 was introduced by Representative Mimi Walters (CA–45) on January 16, 2018, and referred to the Committee on Transportation and Infrastructure, and in addition to the Committee on Energy and Commerce. H.R. 4795 was referred to the Subcommittee on Communications and Technology on January 19, 2018.

On January 30, 2018, the Subcommittee on Communications and Technology held a hearing on H.R. 4795.

No further action was taken on the bill.

INVENTORY OF ASSETS FOR COMMUNICATIONS FACILITIES ACT OF 2018

H.R. 4798

To provide for an inventory of Federal assets on which a communications facility could be constructed or that could otherwise be made available for use in connection with the construction or operation of a communications facility or provision of communications service.

*Summary*

H.R. 4798 would require the General Services Administration to coordinate with the National Telecommunications and Information

35

Administration to ensure Federal agencies include an inventory of assets that can be used to attach or install broadband infrastructure. This inventory would be available to communications providers and include a description of assets, their locations, and a point of contact from each agency for more information on a given asset.

*Legislative History*

H.R. 4798 was introduced by Representative Chris Collins (NY–27) on January 16, 2018, and referred to the Committee on Transportation and Infrastructure, and in addition to the Committee on Energy and Commerce. H.R. 4798 was referred to the Subcommittee on Communications and Technology on January 19, 2018.

On January 30, 2018, the Subcommittee on Communications and Technology held a hearing on H.R. 4798.

No further action was taken on the bill.

### STREAMLINING AND EXPEDITING APPROVAL FOR COMMUNICATIONS TECHNOLOGIES ACT

#### H.R. 4802

To track applications to locate or modify communications facilities on Federal real property, and for other purposes.

*Summary*

H.R. 4802 would require the senior real property officer of covered agencies to track, record, and report on specified data on the applications to locate or modify communications facilities on covered Federal assets. This data would include the number of applications submitted, the number of applications approved or denied (including the reason for any denial), and the amount of time and money spent by an agency reviewing applications. Each agency's senior real property officer would be required to report annually to the National Telecommunications and Information Administration (NTIA) on its progress, and NTIA would report to Congress.

*Legislative History*

H.R. 4802 was introduced by Representative Adam Kinzinger (IL–16) on January 16, 2018, and referred to the Committee on Transportation and Infrastructure, and in addition to the Committee on Oversight and Reform and Committee on Energy and Commerce. H.R. 4802 was referred to the Subcommittee on Communications and Technology on January 19, 2018.

On January 30, 2018, the Subcommittee on Communications and Technology held a hearing on H.R. 4802.

No further action was taken on the bill.

36

MAKING AVAILABLE PLANS TO PROMOTE INVESTMENT IN NEXT GEN-
ERATION NETWORKS WITHOUT OVERBUILDING AND WASTE ACT OF
2018

### H.R. 4810

To direct the Assistant Secretary of Commerce for Communica-
tions and Information to carry out activities relating to the develop-
ment and maintenance of a broadband inventory map through the
National Telecommunications and Information Administration and
not through an agreement with any other agency.

*Summary*

H.R. 4810 would direct the Assistant Secretary of Commerce for
Communications and Information to conduct a national broadband
map and reaffirm the National Telecommunications and Informa-
tion Administration's authority to conduct the national broadband
map, which was established in the American Recovery and Rein-
vestment Act of 2009.

*Legislative History*

H.R. 4810 was introduced by Representative Bill Johnson (OH–
06) on January 17, 2018, and referred to the Committee on Energy
and Commerce. H.R. 4810 was referred to the Subcommittee on
Communications and Technology on January 19, 2018.

On January 30, 2018, the Subcommittee on Communications and
Technology held a hearing on H.R. 4810.

No further action was taken on the bill.

WIRELESS INTERNET FOCUS ON INNOVATION IN SPECTRUM TECH-
NOLOGY FOR UNLICENSED DEPLOYMENT ACT OR THE WIFI STUDY
ACT

### H.R. 4813

To direct the Comptroller General of the United States to con-
duct a study to evaluate the role of unlicensed spectrum in off-
loading broadband traffic, and for other purposes.

*Summary*

H.R. 4813 would direct the Government Accountability Office to
conduct a study on the complementary role of unlicensed spectrum
in assisting with internet traffic management, and the potential for
Gigabit Wi-Fi service in spectrum bands below 6 GHz.

*Legislative History*

H.R. 4813 was introduced by Representative Ryan A. Costello
(PA–22) on January 17, 2018, and referred to the Committee on
Energy and Commerce. H.R. 4813 was referred to the Sub-
committee on Communications and Technology on January 19,
2018.

On January 30, 2018, the Subcommittee on Communications and
Technology held a hearing on H.R. 4813.

No further action was taken on the bill.

37

COMMUNITY BROADBAND ACT OF 2018

H.R. 4814

To amend the Telecommunications Act of 1996 to preserve and protect the ability of local governments to provide broadband capability and services.

*Summary*

H.R. 4814 would provide that no State statute, regulation, or other legal requirement may prohibit a local government from being a public provider of advanced telecommunications services and would require public providers that regulate competing private providers of advanced telecommunications services to do so without discrimination.

*Legislative History*

H.R. 4814 was introduced by Representative Anna G. Eshoo (CA–18) on January 17, 2018, and referred to the Committee on Energy and Commerce. H.R. 4814 was referred to the Subcommittee on Communications and Technology on January 19, 2018.

On January 30, 2018, the Subcommittee on Communications and Technology held a hearing on H.R. 4814.

No further action was taken on the bill.

PROMOTING EXCHANGES FOR ENHANCED ROUTING OF INFORMATION SO NETWORKS ARE GREAT ACT OF 2018 OR THE PEERING ACT OF 2018

H.R. 4817

To direct the Assistant Secretary of Commerce for Communications and Information to make grants for the establishment or expansion of internet exchange facilities, and for other purposes.

*Summary*

H.R. 4817 would authorize a matching grant program through the National Telecommunications and Information Administration to promote peering centers where none exist, or to help an existing center expand if it is the only such facility in a core-based statistical era. The legislation also would authorize eligible recipients under the Universal Service Fund's E–Rate program and Tele-health program to use such funds to contract with a broadband provider to obtain a connection to a peering facility, or to pay costs of maintaining a point of presence at a peering facility.

*Legislative History*

H.R. 4817 was introduced by Representative Billy Long (MO–07) on January 17, 2018, and referred to the Committee on Energy and Commerce. H.R. 4817 was referred to the Subcommittee on Communications and Technology on January 19, 2018.

On January 30, 2018, the Subcommittee on Communications and Technology held a hearing on H.R. 4817.

No further action was taken on the bill.

38

RESTORING ECONOMIC STRENGTH AND TELECOMMUNICATIONS OPER-
ATIONS BY RELEASING EXPECTED DOLLARS ACT OF 2018 OR THE
RESTORED ACT OF 2018

H.R. 4832

To amend the Communications Act of 1934 to clarify that an eli-
gible telecommunications carrier may use high cost universal serv-
ice support to aid in the restoration of telecommunications capabili-
ties in an area in which the President has declared a major dis-
aster or emergency and may elect to receive an advance payment
of such support.

*Summary*

H.R. 4832 would permit companies eligible for funds under the
Universal Service Fund's High Cost program to elect up to a 7-
month advance payment of such funds to aid in the restoration of
services in Presidentially declared disaster areas.

*Legislative History*

H.R. 4832 was introduced by Representative Kevin Cramer (ND)
on January 18, 2018, and referred to the Committee on Energy and
Commerce. H.R. 4832 was referred to the Subcommittee on Com-
munications and Technology on January 19, 2018.

On January 30, 2018, the Subcommittee on Communications and
Technology held a hearing on H.R. 4832.

No further action was taken on the bill.

STREAMLINING PERMITTING TO ENABLE EFFICIENT DEPLOYMENT OF
BROADBAND INFRASTRUCTURE ACT OF 2018

H.R. 4842

To amend the Communications Act of 1934 to provide that the
Federal Communications Commission is not required to perform
any review under the National Environmental Policy Act of 1969
or division A of subtitle III of Title 54, United States Code, as a
condition of permitting the placement and installation of a commu-
nications facility, and for other purposes.

*Summary*

H.R. 4842 would exempt broadband facilities from environmental
and historic preservation reviews on Federal property that have al-
ready granted another communications facility on the same prop-
erty. The legislation also would exempt broadband facilities that
meet certain parameters from environmental and historic preserva-
tion reviews in existing rights of way. The legislation would exempt
expansion of broadband facilities from environmental and historic
preservation reviews if the expansion of the broadband facility is
no more than 30 feet in any direction.

*Legislative History*

H.R. 4842 was introduced by Representative John Shimkus (IL–
18) on January 18, 2018, and referred to the Committee on Energy
and Commerce, and in addition to the Committee on Natural Re-

39

sources. H.R. 4842 was referred to the Subcommittee on Communications and Technology on January 19, 2018.

On January 30, 2018, the Subcommittee on Communications and Technology held a hearing on H.R. 4842.

No further action was taken on the bill.

CONNECTING COMMUNITIES POST DISASTERS ACT OF 2018

H.R. 4845

To provide that the Federal Communications Commission and communications service providers regulated by the Commission under the Communications Act of 1934 shall not be subject to certain provisions of the National Environmental Policy Act of 1969 and the National Historic Preservation Act with respect to the construction, rebuilding, or hardening of communications facilities following a major disaster or an emergency declared by the President, and for other purposes.

*Summary*

H.R. 4845 would provide a 5-year categorical exclusion from environmental and historical reviews for communications facilities in Presidentially declared disaster areas to aid the replacement and improvements to such facilities.

*Legislative History*

H.R. 4845 was introduced by Representative Peter Olson (TX–22) on January 19, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Natural Resources. H.R. 4845 was referred to the Subcommittee on Communications and Technology on January 26, 2018.

On January 30, 2018, the Subcommittee on Communications and Technology held a hearing on H.R. 4845.

No further action was taken on the bill.

BROADBAND DEPLOYMENT STREAMLINING ACT

H.R. 4847

To streamline the process for consideration of applications for the placement of communications facilities on certain Federal lands, and for other purposes.

*Summary*

H.R. 4847 would direct the Secretaries of Interior and Agriculture to issue regulations within one year to streamline applications processes to locate or modify communications facilities on public lands. The legislation also would amend section 6409 of the Middle Class Tax Relief and Job Creation Act (47 U.S.C. 1455) to institute a shot clock by which applications must be granted or denied. An application would be deemed granted if the agency fails to grant or deny within the allotted time. Additionally, the legislation would require a Government Accountability Office report evaluating accuracy and reliability data collected for the national broadband map.

40

*Legislative History*

H.R. 4847 was introduced by Representative Susan W. Brooks (IN–05) on January 19, 2018, and referred to the Committee on Transportation and Infrastructure, and in addition to the Committee on Agriculture, Committee on Natural Resources, and Committee on Energy and Commerce. H.R. 4847 was referred to the Subcommittee on Communications and Technology on January 26, 2018.

On January 30, 2018, the Subcommittee on Communications and Technology held a hearing on H.R. 4847.

No further action was taken on the bill.

### CLEARING LOCAL IMPEDIMENTS MAKES BROADBAND OPEN TO NEW COMPETITION AND ENHANCEMENTS

#### H.R. 4858

To clarify section 224 of the Communications Act of 1934 as not limiting the ability of a State to adopt a one touch make ready policy for pole attachments, and for other purposes.

*Summary*

H.R. 4858 would clarify that neither section 224 of the Communications Act nor rules promulgated by the Federal Communications Commission (FCC) limit the ability of a State to adopt a one touch make ready policy with respect to pole attachments. The legislation would require the FCC to publish model language and recommended best practices.

*Legislative History*

H.R. 4858 was introduced by Representative Anna G. Eshoo (CA–18) on January 19, 2018, and referred to the Committee on Energy and Commerce. H.R. 4858 was referred to the Subcommittee on Communications and Technology on January 26, 2018.

On January 30, 2018, the Subcommittee on Communications and Technology held a hearing on H.R. 4858.

No further action was taken on the bill.

### PRECISION AGRICULTURE CONNECTIVITY ACT OF 2018

#### H.R. 4881

To require the Federal Communications Commission to establish a task force for reviewing the connectivity and technology needs of precision agriculture in the United States.

*Summary*

H.R. 4881 would direct the Federal Communications Commission (FCC) to establish the Task Force for Reviewing the Connectivity and Technology Needs of Precision Agriculture in the United States to recommend rules and steps the FCC should take to expand broadband Internet access to unserved agricultural land and to report annually to the FCC. The task force would terminate on January 1, 2025.

41

*Legislative History*

H.R. 4881 was introduced by Representative Robert E. Latta (OH–05) on January 25, 2018, and referred to the Committee on Energy and Commerce. H.R. 4881 was referred to the Subcommittee on Communications and Technology on January 26, 2018.

On January 30, 2018, the Subcommittee on Communications and Technology held a hearing on H.R. 4881.

On June 13, 2018, the Subcommittee on Communications and Technology met in open markup session to consider H.R. 4881 and forwarded the bill, as amended, to the full Committee by a voice vote.

On July 12, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 4881 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On July 18, 2018, the Committee on Energy and Commerce reported H.R. 4881, as amended, to the House (H. Rept. 115–837), and the bill was placed on the Union Calendar (Calendar No. 647).

On July 23, 2018, H.R. 4881 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a recorded vote of 378 yeas and 4 nays (Roll Call No. 367).

On July 24, 2018, H.R. 4881 was received in the Senate, read twice, and referred to the Committee on Commerce, Science, and Transportation.

No further action was taken on the bill. The provisions of H.R. 4881 were included in H.R. 2, which is discussed elsewhere in this report.

REPACK AIRWAVES YIELDING BETTER ACCESS FOR USERS OF MODERN SERVICES ACT OF 2018 OR THE RAY BAUM'S ACT OF 2018

H.R. 4986

To amend the Communications Act of 1934 to reauthorize appropriations for the Federal Communications Commission, and for other purposes.

*Summary*

H.R. 4986 would reauthorize the Federal Communications Commission (FCC). The bill would maintain the FCC's section 9 authority to assess regulatory fees and would direct the agency to review and adjust, as necessary, its fee schedule every two years. The bill also would amend title I of the Communications Act to include several agency process reforms. H.R. 4986 would include provisions to address spoofing, broadband access for veterans, data collection for mobile service coverage, 9-1-1 location accuracy, improving access to communications during times of emergency, and improving broadband coverage in Indian country. The bill would consolidate and streamlines redundant FCC reports. The bill also would establish funds in the Treasury to pay broadcaster relocation costs associated with the reorganization of broadcast television spectrum under section 6402 of the Middle Class Tax Relief and Job Creation Act of 2012 (47 U.S.C. 1452).

42

*Legislative History*

On July 25, 2017, the Subcommittee on Communications and Technology held a hearing on a discussion draft entitled "To amend the Communications Act of 1934 to reauthorize appropriations for the Federal Communications Commission, to provide for certain procedural changes to the rules of the Commission to maximize opportunities for public participation and efficient decision-making, and for other purposes."

On October 11, 2017, the Subcommittee on Communications and Technology met in open markup session to consider the discussion draft and forwarded the bill, as amended, to the full committee by a voice vote.

H.R. 4986 was introduced by Representative Marsha Blackburn (TN–07) on February 8, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Transportation and Infrastructure and Committee on Oversight and Government Reform. H.R. 4986 was similar to the discussion draft.

On February 14, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 4986 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On March 6, 2018, the Committee on Energy and Commerce reported H.R. 4986, as amended, to the House (H. Rept. 115–587, Part 1), and the bill was placed on the Union Calendar (Calendar No. 445).

On March 6, 2018, H.R. 4986 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On March 7, 2018, H.R. 4986 was received in the Senate, read twice and referred to the Committee on Commerce, Science, and Transportation.

No further action was taken on the bill. Provisions similar to H.R. 4986 were included in H.R. 1625 as division P, which is discussed elsewhere in this report.

### NATIONAL NON-EMERGENCY MOBILE NUMBER ACT

#### H.R. 5700

To amend the Communications Act of 1934 to direct the Federal Communications Commission to designate a national dialing short code for users of mobile voice service to reach public safety personnel in critical, but non-emergency, circumstances.

*Summary*

H.R. 5700 would require the Federal Communications Commission (FCC) to designate a national dialing short code for users of mobile voice service to reach public safety personnel in critical, but non-emergency, circumstances. The FCC must consult with State departments of transportation, mobile voice service providers, and public safety representatives.

*Legislative History*

H.R. 5700 was introduced by Representative Susan W. Brooks (IN–05) on May 8, 2018, and referred to the Committee on Energy

43

and Commerce. H.R. 5700 was referred to the Subcommittee on Communications and Technology on May 11, 2018.

On September 26, 2018, the Subcommittee on Communications and Technology held a hearing on H.R. 5700.

No further action was taken on the bill.

### PREVENTING ILLEGAL RADIO ABUSE THROUGH ENFORCEMENT (PIRATE) ACT

#### H.R. 5709

To amend the Communications Act of 1934 to provide for enhanced penalties for pirate radio, and for other purposes.

*Summary*

H.R. 5709 would give the Federal Communications Commission (FCC) additional authority to issue fines on any person who willfully and knowingly broadcasts radio transmissions over AM or FM frequencies without a license from the FCC or without complying with unlicensed operations rules defined by the Commission. The bill would give the FCC additional tools to enforce penalties against pirate stations by raising the fine for rule violations to $100,000 dollars per day per violation, up to a maximum of $2,000,000 dollars.

*Legislative History*

On March 22, 2018, the Subcommittee on Communications and Technology held a hearing on a discussion draft entitled "Preventing Illegal Radio Abuse Through Enforcement (PIRATE) Act."

H.R. 5709 was introduced by Representative Leonard Lance (NJ–07) on May 8, 2018, and referred to the Committee on Energy and Commerce. H.R. 5709 was referred to the Subcommittee on Communications and Technology on May 11, 2018. H.R. 5709 was similar to the discussion draft.

On June 13, 2018, the Subcommittee on Communications and Technology met in open markup session to consider H.R. 5709 and forwarded the bill, as amended, to the full committee by a voice vote.

On July 12, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5709 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On July 18, 2018, the Committee on Energy and Commerce reported H.R. 5709, as amended, to the House (H. Rept. 115–843), and the bill was placed on the Union Calendar (Calendar No. 652).

On July 23, 2018, H.R. 5709 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On July 23, 2018, H.R. 5709 was received in the Senate, read twice, and referred to the Committee on Commerce, Science, and Transportation.

No further action was taken on the bill.

## ANTI-SWATTING ACT OF 2018

### H.R. 6003

To amend the Communications Act of 1934 to provide for enhanced penalties for the transmission of misleading or inaccurate caller identification information with the intent to trigger an emergency response.

*Summary*

H.R. 6003 would increase criminal penalties against those who intentionally transmit false or misleading caller ID information to Public Safety Answering Points with an intent to trigger an emergency response from law enforcement and first responders when there is no threat to life, health, or property. The bill also would direct a court to order anyone convicted of such a violation to reimburse law enforcement, government agencies, and any private organization that responds to such a call with emergency services for any expenses incurred.

*Legislative History*

H.R. 6003 was introduced by Representative Eliot L. Engel (NY–16) on June 5, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on the Judiciary. H.R. 6003 was referred to the Subcommittee on Communications and Technology on June 8, 2018.

On September 26, 2018, the Subcommittee on Communications and Technology held a hearing on H.R. 6003.

No further action was taken on the bill.

## 9-1-1 FEE INTEGRITY ACT

### H.R. 6424

To amend the Wireless Communications and Public Safety Act of 1999, to clarify acceptable 9-1-1 obligations or expenditures, and for other purposes.

*Summary*

H.R. 6424 would direct the Federal Communications Commission to issue final rules to prevent States from diverting 9–1–1 taxes, fees, or charges from purposes and functions related to 9–1–1 services and operational expenses.

*Legislative History*

H.R. 6424 was introduced by Representative Chris Collins (NY–27) on July 18, 2018, and referred to the Committee on Energy and Commerce. H.R. 6424 was referred to the Subcommittee on Communications and Technology on July 20, 2018.

On September 26, 2018, the Subcommittee on Communications and Technology held a hearing on H.R. 6424.

No further action was taken on the bill.

45

EXPRESSING THE SENSE OF THE HOUSE OF REPRESENTATIVES THAT FEDERAL, STATE, AND LOCAL TAXES, FEES, REGULATIONS, AND PERMITTING POLICIES SHOULD BE COORDINATED AND RECONCILED TO MAXIMIZE THE BENEFITS OF BROADBAND INVESTMENT

H. RES. 687

Expressing the sense of the U.S. House of Representatives that Federal, State, and local taxes, fees, regulations, and permitting policies should be coordinated and reconciled to maximize the benefits of broadband investment.

*Summary*

H. Res. 687 would express the sense of the U.S. House of Representatives that Federal, State, and local taxes, fees, regulations, and permitting policies should be coordinated and reconciled to maximize the benefits of broadband investment.

*Legislative History*

H. Res. 687 was introduced by Representative Gus M. Bilirakis (FL–12) on January 11, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means. H. Res. 687 was referred to the Subcommittee on Communications and Technology on January 12, 2018.

On January 30, 2018, the Subcommittee on Communications and Technology held a hearing on H. Res. 687.

No further action was taken on the resolution.

EXPRESSING THE SENSE OF THE HOUSE OF REPRESENTATIVES THAT ANY INFRASTRUCTURE LEGISLATION THAT PROVIDES FEDERAL FUNDS TO WIRELESS BROADBAND PROVIDERS TO PROMOTE WIRELESS BROADBAND DEPLOYMENT SHOULD PRIORITIZE FUNDS FOR WIRELESS BROADBAND PROVIDERS IN STATES THAT HAVE ENACTED STREAMLINED SITING REQUIREMENTS FOR SMALL CELLS

H. RES. 689

Expressing the sense of the U.S. House of Representatives that any infrastructure legislation that provides Federal funds to wireless broadband providers to promote wireless broadband deployment should prioritize funds for wireless broadband providers in States that have enacted streamlined siting requirements for small cells.

*Summary*

H. Res. 689 would express the sense of the U.S. House of Representatives that any infrastructure legislation that provides Federal funds to wireless broadband providers to promote wireless broadband deployment should prioritize funds for wireless broadband providers in States that have enacted streamlined siting requirements for small cells.

*Legislative History*

H. Res. 689 was introduced by Representative Richard Hudson (NC–08) on January 11, 2018, and referred to the Committee on Energy and Commerce. H. Res. 689 was referred to the Sub-

committee on Communications and Technology on January 12, 2018.

On January 30, 2018, the Subcommittee on Communications and Technology held a hearing on H. Res. 689.

No further action was taken on the resolution.

EXPRESSING THE SENSE OF THE HOUSE OF REPRESENTATIVES THAT NO FEDERAL FUNDS GRANTED, AWARDED, OR LOANED PURSUANT TO ANY LEGISLATION, INFRASTRUCTURE-SPECIFIC OR OTHERWISE, SHOULD BE USED TO FUND THE CONSTRUCTION, IMPROVEMENT, OR ACQUISITION OF BROADBAND FACILITIES OR SERVICE IN AREAS WHERE THERE IS AN EXISTING BROADBAND PROVIDER THAT MEETS CERTAIN MINIMUM STANDARDS

H. RES. 690

Expressing the sense of the House of Representatives that no Federal funds granted, awarded, or loaned pursuant to any legislation, infrastructure-specific or otherwise, should be used to fund the construction, improvement, or acquisition of broadband facilities or service in areas where there is an existing broadband provider that meets certain minimum standards.

*Summary*

H. Res. 690 would express the sense of the U.S. House of Representatives that no Federal funds granted, awarded, or loaned pursuant to any legislation, infrastructure-specific or otherwise, should be used to fund the construction, improvement, or acquisition of broadband facilities or service in areas where there is an existing broadband provider that meets certain minimum standards.

*Legislative History*

H. Res. 690 was introduced by Representative Leonard Lance (NJ–07) on January 11, 2018, and referred to the Committee on Energy and Commerce. H. Res. 690 was referred to the Subcommittee on Communications and Technology on January 12, 2018.

On January 30, 2018, the Subcommittee on Communications and Technology held a hearing on H. Res. 690.

No further action was taken on the resolution.

EXPRESSING THE SENSE OF THE HOUSE OF REPRESENTATIVES THAT ANY INFRASTRUCTURE LEGISLATION TO PROMOTE BROADBAND INTERNET ACCESS OR COMMUNICATIONS FACILITIES DEPLOYMENT SHOULD TREAT ALL BROADBAND AND COMMUNICATIONS FACILITIES IN A COMPETITIVELY AND TECHNOLOGICALLY NEUTRAL MANNER

H. RES. 691

Expressing the sense of the House of Representatives that any infrastructure legislation to promote broadband internet access or communications facilities deployment should treat all broadband and communications facilities in a competitively and technologically neutral manner.

*Summary*

H. Res. 691 would express the sense of the U.S. House of Representatives that infrastructure legislation for broadband internet access or communications facilities deployment should treat all broadband and communications facilities in a competitively and technologically neutral manner.

*Legislative History*

H. Res. 691 was introduced by Representative Robert E. Latta (OH–05) on January 11, 2018, and referred to the Committee on Energy and Commerce. H. Res. 691 was referred to the Subcommittee on Communications and Technology on January 12, 2018.

On January 30, 2018, the Subcommittee on Communications and Technology held a hearing on H. Res. 691.

No further action was taken on the resolution.

EXPRESSING THE SENSE OF THE HOUSE OF REPRESENTATIVES THAT WITH RESPECT TO ANY STUDY REQUIRED TO BE CONDUCTED BY THE FEDERAL COMMUNICATIONS COMMISSION, OR ANY ENTITY REGULATED BY THE COMMISSION UNDER THE FEDERAL COMMUNICATIONS ACT OF 1934, UNDER THE NATIONAL ENVIRONMENTAL POLICY ACT OF 1969 OR DIVISION A OF SUBTITLE III OF TITLE 54, UNITED STATES CODE (FORMERLY KNOWN AS THE NATIONAL HISTORIC PRESERVATION ACT), FOR THE PROVISION OF BROADBAND INFRASTRUCTURE, THE AREA TO BE STUDIED SHOULD BE LIMITED TO THE AREA OF IMPACT

H. RES. 701

Expressing the sense of the U.S. House of Representatives that with respect to any study required to be conducted by the Federal Communications Commission, or any entity regulated by the Commission under the Federal Communications Act of 1934, under the National Environmental Policy Act of 1969 or division A of subtitle III of title 54, United States Code (formerly known as the National Historic Preservation Act), for the provision of broadband infrastructure, the area to be studied should be limited to the area of impact.

*Summary*

H. Res. 701 would express the sense of the U.S. House of Representatives that with respect to any study required to be conducted by the Federal Communications Commission, or any entity regulated by the Commission under the Federal Communications Act of 1934, under the National Environmental Policy Act of 1969 or division A of subtitle III of title 54, United States Code (formerly known as the National Historic Preservation Act), for the provision of broadband infrastructure, the area to be studied should be limited to the area of impact.

*Legislative History*

H. Res. 701 was introduced by Representative Bill Flores (TX–17) on January 18, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Natural Re-

48

sources. H. Res. 701 was referred to the Subcommittee on Communications and Technology on January 19, 2018.

On January 30, 2018, the Subcommittee on Communications and Technology held a hearing on H. Res. 701.

No further action was taken on the resolution.

### NATIONAL TELECOMMUNICATIONS AND INFORMATION ADMINISTRATION REAUTHORIZATION ACT OF 2018

#### DISCUSSION DRAFT

To amend the National Telecommunications and Information Administration Organization Act to reauthorize appropriations for the National Telecommunications and Information Administration, and for other purposes.

*Summary*

The discussion draft would include a sense of Congress stating that National Telecommunications and Information Administration (NTIA) should work to ensure that the multistakeholder model of Internet governance maintains the security, stability, and resiliency of the Internet Domain Name System (DNS), and that new laws and regulations around the world do not undermine the WHOIS service.

The discussion draft also would require the Government Accountability Office to study the capabilities of mobile devices to provide more accurate location information to better serve the needs of first responders and 9-1-1 call centers and identify the capabilities and limitations of current location technologies. The discussion draft also would reaffirm NTIA's authority over broadband mapping and the need for NTIA funding to facilitate more accurate, granular maps of broadband coverage with input from the Federal Communications Commission (FCC) and other Federal resources.

Additionally, the discussion draft would incorporate provisions from H.R. 3994, the ACCESS BROADBAND Act, which would establish the Office of Internet Connectivity and Growth to streamline and track Federal funding for broadband programs at the FCC and across the Federal Government.

Finally, the bill would include a sense of Congress stating that NTIA should coordinate a forward-looking response to supply chain vulnerabilities existing in our communications networks.

*Legislative History*

On June 26, 2018, the Subcommittee on Communications and Technology held a hearing on a discussion draft entitled "National Telecommunications and Information Administration Reauthorization Act of 2018."

No further action was taken on the bill.

49

TO AMEND THE COMMUNICATIONS ACT OF 1934 TO REAUTHORIZE AP-
PROPRIATIONS FOR THE FEDERAL COMMUNICATIONS COMMISSION,
TO PROVIDE FOR CERTAIN PROCEDURAL CHANGES TO THE RULES OF
THE COMMISSION TO MAXIMIZE OPPORTUNITIES FOR PUBLIC PAR-
TICIPATION AND EFFICIENT DECISIONMAKING, AND FOR OTHER PUR-
POSES

DISCUSSION DRAFT

To amend the Communications Act of 1934 to reauthorize appro-
priations for the Federal Communications Commission, to provide
for certain procedural changes to the rules of the Commission to
maximize opportunities for public participation and efficient deci-
sionmaking, and for other purposes.

*Summary*

The discussion draft would reauthorize the Federal Communica-
tions Commission (FCC) and include a number of reforms to im-
prove the agency's process and fee structure. The discussion draft
would amend the FCC's fee collection authority to reflect today's
communications marketplace, creating parity between the agency's
application fee and regulatory fee structure and allowing additional
flexibility to amend the fee schedule.

The discussion draft also would require the Commission to estab-
lish rules and procedures governing FCC process to enhance agency
transparency and provide more accurate agency performance meas-
ures. Finally, the discussion draft would establish the independ-
ence of the FCC's Inspector General and elevate the agency's Chief
Information Officer.

*Legislative History*

On July 25, 2017, the Subcommittee on Communications and
Technology held a hearing on a discussion draft entitled "To amend
the Communications Act of 1934 to reauthorize appropriations for
the Federal Communications Commission, to provide for certain
procedural changes to the rules of the Commission to maximize op-
portunities for public participation and efficient decisionmaking,
and for other purposes."

On October 11, 2017, the Subcommittee on Communications and
Technology met in open markup session to consider the discussion
draft and forwarded the bill, as amended, to the full committee by
a voice vote.

No further action was taken on the bill.

TO FACILITATE THE DEPLOYMENT OF COMMUNICATIONS INFRASTRUC-
TURE BY PROVIDING FOR AN INVENTORY OF FEDERAL ASSETS FOR
USE IN CONNECTION WITH SUCH DEPLOYMENT, TO STREAMLINE
CERTAIN FEDERAL APPROVALS OF COMMUNICATIONS FACILITIES,
AND FOR OTHER PURPOSES

DISCUSSION DRAFT

To facilitate the deployment of communications infrastructure by
providing for an inventory of Federal assets for use in connection
with such deployment, to streamline certain Federal approvals of
communications facilities, and for other purposes.

50

*Summary*

The discussion draft would create an inventory of Federal assets that can be used to attach or install broadband infrastructure, require landholding agencies to use common templates when leasing space for wireless broadband attachments, and streamline processes for communications facilities location applications at the Department of Interior and the Forest Service.

*Legislative History*

On March 21, 2017, the Subcommittee on Communications and Technology held a hearing on a discussion draft entitled "to facilitate the deployment of communications infrastructure by providing for an inventory of Federal assets for use in connection with such deployment, to streamline certain Federal approvals of communications facilities, and for other purposes."

No further action was taken on the bill.

### BROADBAND CONDUIT DEPLOYMENT ACT OF 2017

#### DISCUSSION DRAFT

To amend title 23, United States Code, to provide for the inclusion of broadband conduit installation in certain highway construction projects, and for other purposes.

*Summary*

The discussion draft would require the Department of Transportation, in conjunction with the National Telecommunications and Information Administration and the Federal Communications Commission, to evaluate whether broadband conduits should be installed in any highway construction project using Federal funds. If the evaluation indicates that additional broadband capacity would be needed in the next 15 years, the project must include the deployment of broadband conduit. Further, the broadband conduit must be made available by the States to any broadband provider at cost-based rates and the availability of the broadband conduit must be published in the National Broadband Map.

*Legislative History*

On March 21, 2017, the Subcommittee on Communications and Technology held a hearing on a discussion draft entitled "Broadband Conduit Deployment Act of 2017." The discussion draft was similar to H.R. 3805, Broadband Conduit Deployment Act of 2015, introduced by Anna G. Eshoo (CA–18) during the 114th Congress.

No further action was taken on the bill.

### OVERSIGHT ACTIVITIES

#### REAUTHORIZATION OF NTIA

On February 2, 2017, the Subcommittee on Communications and Technology held a hearing entitled "Reauthorization of NTIA." The purpose of the hearing was to review the mission and priorities of the U.S. National Telecommunications and Information Adminis-

51

tration. The Subcommittee received testimony from Meredith Attwell Baker, President and CEO, CTIA; Anna M. Gomez, Partner, Wiley Rein; and John M.R. Kneuer, President and Founder, JKC Consulting.

### Broadband: Deploying America's 21st Century Infrastructure

On March 21, 2017, the Subcommittee on Communications and Technology held a hearing entitled "Broadband: Deploying America's 21st Century Infrastructure." The purpose of the hearing was to examine the challenges of broadband deployment and how siting and permitting reforms may help close the digital divide. The Subcommittee received testimony from Steven Berry, President and CEO, Competitive Carriers Association; LeRoy T. Carlson Jr., CEO, Telephone and Data Systems, Inc.; Michael Connors, Sub-Chief, Saint Regis Mohawk Tribe; Bryan Darr, CEO, Mosaik Solutions; Joanne S. Hovis, President, CTC Technology and Energy; Thomas A. Murray, Founding and Managing Member, Community Wireless Structures; and James W. Stegeman, President, CostQuest Associates, Inc.

### Realizing Nationwide Next-Generation 911

On March 29, 2017, the Subcommittee on Communications and Technology held a hearing entitled "Realizing Nationwide Next-Generation 911." The purpose of the hearing was to review the transition to next generation 911 and the barriers to completing that transition. The Subcommittee received testimony from Mary Boyd, Vice-President, Regulatory Policy and External Affairs, West Safety Services; Trey Forgety, Director of Governmental Affairs, National Emergency Number Association; Walt Magnussen, Director, Internet2 Technology Evaluation Center, Texas A&M University; Barry Ritter, Executive Director, Statewide 911 Board, Indiana; and Steve Souder, Former Director, Fairfax County 911, Maryland Emergency Number Systems Board.

### Facilitating the 21st Century Wireless Economy

On April 5, 2017, the Subcommittee on Communications and Technology held a hearing entitled "Facilitating the 21st Century Wireless Economy." The purpose of the hearing was to examine the impact of wireless services on economic growth and to identify measures to facilitate further growth. The Subcommittee received testimony from Scott Bergmann, Vice President, Regulatory Affairs, CTIA; Jared Carlson, Vice President, Government Affairs and Public Policy, Ericsson; Jennifer Manner, Senior Vice President, Regulatory Affairs, EchoStar Corporation and Hughes Network Systems; and Dave Wright, Director, Regulatory Affairs and Network Standards, Ruckus Wireless.

### Future of Emergency Alerting

On May 17, 2017, the Subcommittee on Communications and Technology held a hearing entitled "Future of Emergency Alerting." The purpose of the hearing was to review current emergency alert-

52

ing systems and identify future improvements to these systems. The Subcommittee received testimony from Christopher Guttman-McCabe, CEO, CGM Advisors, LLC; Farrokh Khatibi, Director of Engineering, Qualcomm Technology; and Sam Matheny, Chief Technology Officer, National Association of Broadcasters.

### Promoting Security in Wireless Technology

On June 13, 2017, the Subcommittee on Communications and Technology held a hearing entitled "Promoting Security in Wireless Technology." The purpose of the hearing was to examine security threats to wireless devices and networks. The Subcommittee received testimony from Charles Clancy, Director and Professor, Hume Center for National Security and Technology, Virginia Tech; Kiersten Todt, Managing Partner, Liberty Group Ventures, LLC; Bill Wright, Director, Government Affairs and Senior Policy Counsel, Symantec; and Amit Yoran, Chairman and CEO, Tenable Network Security.

### Defining and Mapping Broadband Coverage in America

On June 21, 2017, the Subcommittee on Communications and Technology held a hearing entitled "Defining and Mapping Broadband Coverage in America." The purpose of the hearing was to examine the mapping and collection of broadband access data to identify broadband deployment needs. The Subcommittee received testimony from Doug Brake, Senior Telecommunications Policy Analyst, Information Technology and Innovation Foundation; Bryan Darr, CEO, Mosaik Solutions; Brent Legg, Vice President, Government Affairs, Connected Nation; Carol Mattey, Principal, Mattey Consulting, LLC; and Robert Wack, President, Westminster City Council, Westminster, Maryland.

### Oversight and Reauthorization of the Federal Communications Commission

On July 25, 2017, the Subcommittee on Communications and Technology held a hearing entitled "Oversight and Reauthorization of the Federal Communications Commission." The purpose of the hearing was to conduct oversight of the Federal Communications Commission and review proposed legislation to reauthorize the Commission. The Subcommittee received testimony from Ajit Pai, Chairman, Federal Communications Commission; Mignon Clyburn, Commissioner, Federal Communications Commission; Michael O'Rielly, Commissioner, Federal Communications Commission.

### The Broadcast Incentive Auction: Update on Repacking Opportunities and Challenges

On September 7, 2017, the Subcommittee on Communications and Technology held a hearing entitled "The Broadcast Incentive Auction: Update on Repacking Opportunities and Challenges." The purpose of the hearing was to receive an update on the status of the broadcast incentive auction repacking process. The Subcommittee received testimony from Scott Bergmann, Vice President, Regulatory Affairs, CTIA; Patrick Butler, CEO, America's

53

Public Television Stations; Rick Kaplan, Executive Vice President and General Counsel, National Association of Broadcasters; Rebecca Murphy Thompson, Executive Vice President and General Counsel, Competitive Carriers Association; Lyn Plantinga, Vice President and General Manager, NewsChannel5 Network; and Jim Tracy, Chairman, National Association of Tower Erectors.

### OVERSIGHT OF THE FEDERAL COMMUNICATIONS COMMISSION

On October 25, 2017, the Subcommittee on Communications and Technology held a hearing entitled "Oversight of the Federal Communications Commission." The purpose of the hearing was to conduct oversight of the Federal Communications Commission. The Subcommittee received testimony from Ajit Pai, Chairman, Federal Communications Commission; Mignon Clyburn, Commissioner, Federal Communications Commission; Michael O'Rielly, Commissioner, Federal Communications Commission; Brendan Carr, Commissioner, Federal Communications Commission; and Jessica Rosenworcel, Commissioner, Federal Communications Commission.

### OVERSIGHT OF FIRSTNET: STATE PERSPECTIVES

On November 1, 2017, the Subcommittee on Communications and Technology held a hearing entitled "Oversight of FirstNet: State Perspectives." The purpose of the hearing was to conduct oversight of the First Responder Network Authority. The Subcommittee received testimony from Robert LeGrande, II, Founder, the Digital Decision, LLC; Brian Moran, Secretary of Public Safety and Homeland Security, Virginia; Michael Poth, CEO, First Responder Network Authority; Christopher Sambar, Senior Vice President, AT&T; and John Stevens, Statewide Interoperability Coordinator, New Hampshire.

### THE RACE TO 5G AND ITS POTENTIAL TO REVOLUTIONIZE AMERICAN COMPETITIVENESS

On November 16, 2017, the Subcommittee on Communications and Technology held a hearing entitled "The Race to 5G and its Potential to Revolutionize American Competitiveness." The purpose of the hearing was to examine the barriers to 5G deployment and the impact 5G will have when it is deployed. The Subcommittee received testimony from Jonathan Adelstein, President and CEO, Wireless Infrastructure Association; Coleman Bazelon, Principal, The Brattle Group; David Broecker, CEO, Indiana Biosciences Research Institute; Chris Pearson, President, 5G Americas; and Shireen Santosham, Chief Innovation Officer, San Jose, California.

### ALGORITHMS: HOW COMPANIES' DECISIONS ABOUT DATA AND CONTENT IMPACT CONSUMERS

On November 29, 2017, the Subcommittee on Communications and Technology and the Subcommittee on Digital Commerce and Consumer Protection held a joint hearing entitled "Algorithms, How Companies' Decisions About Data and Content Impact Consumers." The purpose of the hearing was to examine how algorithms are used by companies to collect user data and how con-

54

sumers are impacted by its use of algorithms. The Subcommittees received testimony from Omri Ben-Shahar, Professor, University of Chicago Law School; Michael Kerns, Professor and National Center Chair, Department of Computer and Information Science, University of Pennsylvania; Kate Klonick, Resident Fellow, Information Society Project, Yale Law School; Laura Moy, Deputy Director, Privacy and Technology, Georgetown University Law Center; Frank Pasquale, Professor, Francis King Carey School of Law, University of Maryland; and Catherine Tucker, Professor, Sloane School of Management, MIT.

LATEST DEVELOPMENTS IN COMBATING ONLINE SEX TRAFFICKING

On November 30, 2017, the Subcommittee on Communications and Technology held a hearing entitled "Latest Developments in Combating Online Sex Trafficking." The purpose of the hearing was to examine tools available to help law enforcement combat online sex trafficking. The Subcommittee received testimony from Eric Goldman, Professor, School of Law, Santa Clara University; Derri Smith, CEO, End Slavery Tennessee; Yiota Souras, Senior Vice President and General Counsel, National Center for Missing and Exploited Children; Russ Winkler, Assistant Special Agent in Charge, Tennessee Bureau of Investigation; and Ann Wagner, Member, U.S. House of Representatives.

CLOSING THE DIGITAL DIVIDE: BROADBAND INFRASTRUCTURE SOLUTIONS

On January 30, 2018, the Subcommittee on Communications and Technology held a hearing entitled "Closing the Digital Divide: Broadband Infrastructure Solutions." The purpose of the hearing was to examine challenges and potential solutions to promoting broadband infrastructure deployment. The Subcommittee received testimony from Jonathan Spalter, President and CEO, USTelecom; Brad Gillen, Executive Vice President, CTIA; Matthew Polka, President and CEO, American Cable Association; Shirley Bloomfield, CEO, NTCA The Rural Broadband Association; Scott Slesinger, Legislative Director, National Resources Defense Council; Joanne S. Hovis, President, CTC Technology and Energy; and Elin Swanson Katz, Connecticut Consumer Counsel.

OVERSIGHT OF THE NATIONAL TELECOMMUNICATIONS AND INFORMATION ADMINISTRATION

On March 6, 2018, the Subcommittee on Communications and Technology held a hearing entitled "Oversight of the National Telecommunications and Information Administration." The purpose of the hearing was to review the management and budget of the National Telecommunications and Information Administration. The Subcommittee received testimony from David Redl, Assistant Secretary for Communications and Information, Department of Commerce, and Administrator, National Telecommunications and Information Administration.

55

#### FROM CORE TO EDGE: PERSPECTIVE ON INTERNET PRIORITIZATION

On April 17, 2018, the Subcommittee on Communications and Technology held a hearing entitled "From Core to Edge: Perspective on Internet Prioritization." The purpose of the hearing was to examine how traffic is prioritized over communications networks and the benefits of such prioritization. The Subcommittee received testimony from Richard Bennett, Founder, High Tech Forum; Peter Rysavy, President, Rysavy Research, LLC; Paul Schroeder, Director, Public Policy and Strategic Alliances, Aira Tech Corporation; and Matt Wood, Policy Director, Free Press.

#### TELECOMMUNICATIONS, GLOBAL COMPETITIVENESS, AND NATIONAL SECURITY

On May 16, 2018, the Subcommittee on Communications and Technology held a hearing entitled "Telecommunications, Global Competitiveness, and National Security." The purpose of the hearing was to examine vulnerabilities in domestic communications supply chains and threats to global competitiveness of vendors providing equipment that make up such networks. The Subcommittee received testimony from Charles Clancy, Director and Professor, Hume Center for National Security and Technology, Virginia Tech; Samm Sacks, Senior Fellow, Technology Policy Program, Center for Strategic and International Studies; and Clete Johnson, Partner, Wilkinson Barker Knauer, LLP.

#### PROTECTING CUSTOMER PROPRIETARY NETWORK INFORMATION IN THE INTERNET AGE

On July 11, 2018, the Subcommittee on Communications and Technology held a hearing entitled "Protecting Customer Proprietary Network Information in the Internet Age." The purpose of the hearing was to examine the provisions of section 222 of the Communications Act in light of changes to the communications marketplace. The Subcommittee received testimony from Hance Haney, Senior Fellow, Discovery Institute; Robert McDowell, Senior Fellow, Hudson Institute and former Commissioner, Federal Communications Commission; and Laura Moy, Deputy Director, Privacy and Technology, Georgetown Law Center.

#### REALIZING THE BENEFITS OF RURAL BROADBAND: CHALLENGES AND SOLUTIONS

On July 17, 2018, the Subcommittee on Communications and Technology held a hearing entitled "Realizing the Benefits of Rural Broadband: Challenges and Solutions." The purpose of the hearing was to examine broadband deployment and the opportunities that come with broadband access. The Subcommittee received testimony from Justin Forde, Senior Director of Government Relations, Midco; Tom Stroup, President, Satellite Industry Association; John C. May, President, Ag Solutions and Chief Information Officer, Deere & Company; Jenni Word, Associate Administrator and Chief Nursing Officer, Wallowa Memorial Hospital; Claude Aiken, President and CEO, Wireless Internet Service Providers Association;

56

and Suzanne Coker Craig, former Commissioner, Town of Pinetops and Managing Partner, CuriosiTees of Pinetops.

### OVERSIGHT OF THE FEDERAL COMMUNICATIONS COMMISSION

On July 25, 2018, the Subcommittee on Communications and Technology held a hearing entitled "Oversight of the Federal Communications Commission." The purpose of the hearing was to conduct oversight of the Federal Communications Commission. The Subcommittee received testimony from Ajit Pai, Chairman, Federal Communications Commission; Michael O'Rielly, Commissioner, Federal Communications Commission; Brendan Carr, Commissioner, Federal Communications Commission; and Jessica Rosenworcel, Commissioner, Federal Communications Commission.

### STATE OF THE MEDIA MARKETPLACE

On September 27, 2018, the Subcommittee on Communications and Technology held a hearing entitled "State of the Media Marketplace." The purpose of the hearing was to examine media investment, content delivery, and consumer media consumption trends. The Subcommittee received testimony from Craig Moffett, Founder and Senior Research Analyst, MoffettNathanson; Ian Olgeirson, Research Director, S&P Global Market Intelligence; and Jeff Corwin, Wildlife Biologist; Executive Producer and Host, Ocean Treks.

### RAY BAUM'S ACT: A BIPARTISAN FOUNDATION FOR BRIDGING THE DIGITAL DIVIDE

On December 11, 2018, the Subcommittee on Communications and Technology held a hearing entitled "RAY BAUM'S Act: A Bipartisan Foundation for Bridging the Digital Divide." The purpose of the hearing was to examine the progress made in implementing RAY BAUM'S Act. The Subcommittee received testimony from Curtis LeGeyt, Executive Vice President, Government Relations, National Association of Broadcasters; Tim Donovan, Senior Vice President, Legislative Affairs, Competitive Carriers Association; Jeff Cohen, Chief Counsel, APCO International; and Bohdan Zachary, General Manager, Milwaukee Public Broadcast Station.

SUBCOMMITTEE ON DIGITAL COMMERCE AND CONSUMER
PROTECTION

## LEGISLATIVE ACTIVITIES

### FAA REAUTHORIZATION ACT OF 2018

[Concrete Masonry Products Research, Education, and Promotion
Act of 2018]

PUBLIC LAW 115–254 (DIVISION E OF H.R. 302, H. RES. 1082)

To provide protections for certain sports medicine professionals, to reauthorize Federal aviation programs, to improve aircraft safety certification processes, and for other purposes.

*Summary*

Division E of H.R. 302 would establish a Concrete Masonry Products Board upon approval of a referendum by producers of masonry products made from concrete (CMP). Funding for the board's activities would be derived from revenues collected from CMP manufacturers based on the number of masonry units sold each year.

*Legislative History*

H.R. 302 was introduced by Representative Brett Guthrie (KY–02) on January 5, 2017, and referred to the Committee on Energy and Commerce.

On January 9, 2017, H.R. 302 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On January 10, 2017, H.R. 302 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

On September 6, 2018, H.R. 302 was considered in the Senate, and the bill, as amended, was passed by unanimous consent.

On September 6, 2018, H. Res. 1082 was considered in the House under a motion to suspend the Rules, and the resolution was passed, without amendment, by a recorded vote of 398 yeas and 23 nays (Roll Call No. 407).

Upon the adoption of H. Res. 1082, the House was considered to have taken from the Speaker's table H.R. 302, with the Senate amendment thereto, and to have concurred in the Senate amendment with an amendment.

On October 3, 2018, H.R. 302 was considered in the Senate, and the bill, without further amendment, was passed by a recorded vote of 93 yeas and 6 nays (Roll Call No. 320).

On October 4, 2018, H.R. 302 was presented to the President, and the President signed the bill on October 5, 2018 (Public Law 115–254).

58

HORSERACING INTEGRITY ACT OF 2017

H.R. 2651

To improve the integrity and safety of horseracing by requiring a uniform anti-doping and medication control program to be developed and enforced by an independent Horseracing Anti-Doping and Medication Control Authority.

*Summary*

H.R. 2651 would establish the Horseracing Anti-Doping and Medication Control Authority as an independent non-profit corporation with responsibility for developing and administering an anti-doping and medication control program for: (1) Thoroughbred, Quarter, and Standardbred horses that participate in horse races that have a substantial relation to interstate commerce, (2) such horse races, and (3) the personnel engaged in the care, training, or racing of such horses. H.R. 2651 would vest the Federal Trade Commission (FTC) with exclusive jurisdiction over all horse racing anti-doping and medication control matters. The Authority and FTC's jurisdiction would terminate if an interstate compact providing for services consistent with such program is established within five years after the program takes effect. The activities established by the bill would be funded by an assessment placed on State racing commissions.

*Legislative History*

H.R. 2651 was introduced by Representative Andy Barr (KY–06) on May 25, 2017, and referred to the Committee on Energy and Commerce. H.R. 2651 was referred to the Subcommittee on Digital Commerce and Consumer Protection on May 26, 2017.

On June 22, 2018, the Subcommittee on Digital Commerce and Consumer Protection held a hearing on H.R. 2651.

No further action was taken on the bill.

SAFELY ENSURING LIVES FUTURE DEPLOYMENT AND RESEARCH IN VEHICLE EVOLUTION ACT OR THE SELF DRIVE ACT

H.R. 3388, H.R. 3405, H.R. 3406, H.R. 3408, H.R. 3411, H.R. 3412, H.R. 3413, H.R. 3414, H.R. 3416, H.R. 3421, H.R. 3430, DISCUSSION DRAFT ENTITLED "RENEWING OPPORTUNITIES FOR AUTOMATED VEHICLE DEVELOPMENT ACT (ROAD)," DISCUSSION DRAFT ENTITLED "MAXIMIZING OPPORTUNITIES FOR RESEARCH AND THE ENHANCEMENT OF AUTOMATED VEHICLES ACT (MORE)," DISCUSSION DRAFT ENTITLED "DISABILITY MOBILITY ADVISORY COUNCIL ACT," DISCUSSION DRAFT ENTITLED "IMPROVING MOBILITY ACCESS FOR UNDERSERVED POPULATIONS AND SENIOR ADVISORY COUNCIL ACT," DISCUSSION DRAFT ENTITLED "HIGHLY AUTOMATED VEHICLE PRE-MARKET APPROVAL REDUCES OPPORTUNITIES FOR MORE PEOPLE TO TRAVEL SAFELY ACT," DISCUSSION DRAFT ENTITLED "GUARDING AUTOMAKERS AGAINST UNFAIR ADVANTAGES REPORTED IN PUBLIC DOCUMENTS ACT," DISCUSSION DRAFT ENTITLED "MANAGING GOVERNMENT EFFORTS TO MINIMIZE AUTONOMOUS VEHICLE OBSTRUCTION ACT"

To amend title 49, United States Code, regarding the authority of the National Highway Traffic Safety Administration over highly

59

automated vehicles, to provide safety measures for such vehicles, and for other purposes.

*Summary*

H.R. 3388 would clarify the Federal role in regulating vehicles that can drive without a person controlling the vehicle. Those vehicles are defined in the bill as Highly Automated Vehicles (HAVs). The bill would require the National Highway Traffic Safety Administration to complete several rulemakings, establish an advisory council on HAVs, and create a publicly available database about manufacturers that receive exemptions from current law. The bill would require vehicle manufacturers to comply with cybersecurity plans and would make manufacturers that fail to comply subject to civil penalties.

*Legislative History*

On June 23, 2018, the Subcommittee on Digital Commerce and Consumer Protection held a hearing on fourteen discussion drafts regarding Highly Automated Vehicles.

H.R. 3388 was introduced by Representative Robert E. Latta (OH–05) on July 25, 2017, and referred to the Committee on Energy and Commerce. H.R. 3388 was not referred to a subcommittee.

On July 19, 2018, the Subcommittee on Digital Commerce and Consumer Protection met in open markup session to consider the discussion draft entitled "Highly Automated Vehicle Testing and Deployment Act of 2017" and forwarded the bill, as amended, to the full committee by a voice vote.

On July 27, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 3388 and ordered the bill, as amended, favorably reported to the House by a recorded vote of 54 yeas and 0 nays.

On September 5, 2017, the Committee on Energy and Commerce reported H.R. 3388, as amended, to the House (H. Rept. 115–294), and the bill was placed on the Union Calendar (Calendar No. 212).

On September 6, 2017, H.R. 3388 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On September 7, 2017, H.R. 3388 was received in the Senate, read twice, and referred to the Committee on Commerce, Science, and Transportation.

No further action was taken on the bill.

FOREIGN INVESTMENT RISK REVIEW MODERNIZATION ACT OF 2017

H.R. 4311

To modernize and strengthen the Committee on Foreign Investment in the United States to more effectively guard against the risk to the national security of the United States posed by certain types of foreign investment, and for other purposes.

*Summary*

H.R. 4311 would expand the scope of transactions potentially reviewable by Committee on Foreign Investment in the United States (CFIUS), including certain non-passive, non-controlling invest-

60

ments in U.S. critical technology or critical infrastructure companies, real estate purchases near sensitive military installations, and transactions structured to evade CFIUS review. The legislation also would allow CFIUS review of any transaction whereby a U.S. critical technology company would lend intellectual property and associated support to any foreign person, such as in the case of a joint venture.

The bill would require parties to a transaction to submit a notice to CFIUS if the transaction would allow a foreign person in which a foreign government owns a voting interest of 25 percent or more, to obtain a voting interest of 25 percent or more in a U.S. corporation (25/25 review), and additionally, in such other circumstances as the Committee determines by rule.

The legislation also would add a host of new matters to the list of national security concerns CFIUS is to consider, such as the effect of the transaction on cybersecurity, whether the transaction is likely to expose sensitive data about U.S. citizens to foreign persons or governments (e.g. ID numbers or genomic information), and whether the transaction could facilitate fraudulent or criminal activity affecting U.S. security. The legislation would allow CFIUS to exclude reviews of certain transactions, such as those where other authorities, such as export control requirements, are deemed adequate to address national security concerns. The bill also would allow CFIUS to exempt transactions involving U.S. allies. The legislation also would establish a fund at the U.S. Treasury to pay for CFIUS, authorize appropriations for such fund, and allow CFIUS to charge user fees to companies in the proposed transaction equal to the lesser of $300,000 or 1 percent of the transaction's value.

*Legislative History*

H.R. 4311 was introduced by Representative Robert Pittenger (NC–09) on November 8, 2017, and referred to the Committee on Financial Services, and in addition to the Committee on Energy and Commerce, Committee on Foreign Affairs, Committee on Intelligence, Committee on Armed Services, and Committee on the Budget. H.R. 4311 was referred to the Subcommittee on Digital Commerce and Consumer Protection on April 26, 2017.

On June 22, 2018, the Subcommittee on Digital Commerce and Consumer Protection held a hearing on H.R. 4311.

No further action was taken on the bill.

STATE OF MODERN APPLICATION, RESEARCH, AND TRENDS OF IoT ACT OR THE SMART IoT ACT

H.R. 6032

To direct the Secretary of Commerce to conduct a study and submit to Congress a report on the state of the internet-connected devices industry in the United States.

*Summary*

H.R. 6032 would direct the Department of Commerce to study and report on the state of the industry for internet-connected devices. The study would include a survey of industry sectors that develop internet-connected devices, the status of industry-based

61

standards, and a description of the ways entities develop, use, and promote those devices. The study also would include a list of Federal agencies with jurisdiction over the industry and all Federal and industry-based regulations, guidelines, and policies on internet-connected devices that have been implemented. Finally, the report would include recommendations for growing the economy through advancing internet-connected devices.

*Legislative History*

On May 22, 2018, the Subcommittee on Digital Commerce and Consumer Protection held a hearing on a discussion draft entitled "State of Modern Application, Research, and Trends of IoT Act" or the "SMART IoT Act."

H.R. 6032 was introduced by Representative Robert E. Latta (OH–05) on June 7, 2018, and referred to the Committee on Energy and Commerce. H.R. 6032 was referred to the Subcommittee on Digital Commerce and Consumer Protection on June 8, 2018. H.R. 6032 was similar to the discussion draft.

On June 13, 2018, the Subcommittee on Digital Commerce and Consumer Protection met in open markup session to consider H.R. 6032 and forwarded the bill, without amendment, to the full committee by a voice vote.

On July 12, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 6032 and ordered the bill, without amendment, favorably reported to the House by a voice vote.

On November 2, 2018, the Committee on Energy and Commerce reported H.R. 6032, without amendment, to the House (H. Rept. 115–1003), and the bill was placed on the Union Calendar (Calendar No. 784).

On November 28, 2018, H.R. 6032 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On November 29, 2018, H.R. 6032 was received in the Senate, read twice, and referred to the Committee on Commerce, Science, and Transportation.

No further action was taken on the bill.

## OVERSIGHT ACTIVITIES

### SELF-DRIVING CARS: ROAD TO DEPLOYMENT

On February 14, 2017, the Subcommittee on Digital Commerce and Consumer Protection held a hearing entitled "Self-Driving Cars: Road to Deployment." The purpose of the hearing was to discuss the testing and deployment of self-driving cars. The Subcommittee received testimony from Mike Abelson, Vice President of Global Strategy, General Motors; Joseph Okpaku, Vice President of Public Policy, Lyft; Gill Pratt, Executive Technical Advisor and CEO, Toyota Research Institute; and Nidhi Kalra, Senior Information Scientist, RAND; Co-Director, Center for Decision Making under Uncertainty; Professor, Pardee RAND Graduate School.

### Disrupter Series: Advanced Materials and Production

On March 15, 2017, the Subcommittee on Digital Commerce and Consumer Protection held a hearing entitled "Disrupter Series: Advanced Materials and Production." The purpose of the hearing was to learn how new materials and advanced production methods are affecting U.S. industries. The Subcommittee received testimony from James M. Tour, Smalley Institute for Nanoscale Science and Technology, Rice University; Kevin Murphy, Chairman and CEO, Organovo Holdings Inc.; Shane Weyant, CEO and President, Creative Pultrusions, Inc.; Hota GangaRao, Director, Constructed Facilities Center, Director, Center for Integration of Composites into Infrastructure, Professor, West Virginia University; and Afsaneh Rabiei, Professor, Department of Mechanical and Aerospace Engineering, North Carolina State University.

### Disrupter Series: Smart Communities

On March 16, 2017, the Subcommittee on Digital Commerce and Consumer Protection held a hearing entitled "Disrupter Series: Smart Communities." The purpose of the hearing was to learn how local governments are using new technology to address community issues. The Subcommittee received testimony from Kyle Chiseck, Director of Bureau Relations, Office of the Mayor, Portland, Oregon; Jennifer Clark, Director, Center for Urban Innovation, Associate Professor, School of Public Policy, Georgia Institute of Technology; Jennifer Gallagher, Director, Department of Public Service Columbus, Ohio; Alexander Pazuchanics, Policy Advisor, Office of the Mayor, Pittsburgh, Pennsylvania; Kurt J. Gruendling, Vice President of Marketing and Business Development, Waitsfield and Champlain Valley Telecom; and Brenna Berman, Commissioner and Chief Information Officer, Chicago Department of Innovation and Technology.

### Self-Driving Cars: Levels of Automation

On March 28, 2017, the Subcommittee on Digital Commerce and Consumer Protection held a hearing entitled "Self-Driving Cars: Levels of Automation." The purpose of the hearing was to examine the levels of automation of self-driving cars. The Subcommittee received testimony from Jeff Klei, President, North America Automotive Divisions, Continental AG; Kay Stepper, Vice President for Automated Driving and Driver Assistance Systems, Robert Bosch LLC; Bill Gouse, Director of Federal Programs, SAE International; and David Zuby, Executive Vice President and Chief Research Officer, Insurance Institute for Highway Safety.

### Outdoor Recreation: Vast Impact of the Great Outdoors

On April 27, 2017, the Subcommittee on Digital Commerce and Consumer Protection held a hearing entitled "Outdoor Recreation: Vast Impact of the Great Outdoors." The purpose of the hearing was to examine the social and economic impact of outdoor recreation in the U.S. The Subcommittee received testimony from Amy Roberts, Executive Director, Outdoor Industry Association; Marc Berejka, Director of Government and Community Affairs, REI;

63

James Landers, Vice President of Government Affairs, Recreation Vehicle Industry Association; Jeremy Jones, Founder and President, Protect Our Winters; Ginger Mihalik, Executive Director, Baltimore Chesapeake Bay Outward Bound School, Outward Bound; Jeffrey Tooze, Vice President, Global Customs and Trade, Columbia Sportswear.

### DISRUPTER SERIES: DELIVERING TO CONSUMERS

On May 23, 2017, the Subcommittee on Digital Commerce and Consumer Protection held a hearing entitled "Disrupter Series: Delivering to Consumers." The purpose of the hearing was to examine how new technologies have impacted delivery services. The Subcommittee received testimony from Brian Wynne, President and CEO, Association for Unmanned Vehicle Systems International; Bastian Lehmann, Founder and CEO, Postmates; Shyam Chidamber, Chief Evangelist and Senior Advisory, Flirty; and Harry J. Holzer, Professor, McCourt School of Public Policy, Georgetown University.

### DISRUPTER SERIES: IMPROVING CONSUMER'S FINANCIAL OPTIONS WITH FINTECH

On June 8, 2017, the Subcommittee on Digital Commerce and Consumer Protection held a hearing entitled "Disrupter Series: Improving Consumer's Financial Options With FinTech." The purpose of the hearing was to examine how new technologies impact financial services offerings available to consumers and businesses. The Subcommittee received testimony from Jeanne Hogarth, Vice President, Center for Financial Services Innovation; Javier Saade, Managing Director, Fenway Summer Ventures; Christina Tetreault, Staff Attorney, Consumer Union; and Peter Van Valkenburgh, Research Director, Coin Center.

### DISRUPTER SERIES: UPDATE ON IOT OPPORTUNITIES AND CHALLENGES

On June 13, 2017, the Subcommittee on Digital Commerce and Consumer Protection held a hearing entitled "Disrupter Series: Update on IOT Opportunities and Challenges." The purpose of the hearing was to examine the opportunities and challenges the Internet of Things offers businesses and consumers. The Subcommittee received testimony from William S. Marras, Executive Director and Scientific Director, Spine Research Institute, Ohio State University; Gary D. Butler, Founder, Chairman and CEO, Camgian Microsystems Corporation; Mark Bachman, CTO and Co-Founder, Integra Devices; Peter B. Kosak, Executive Director, Urban Active Solutions, General Motors North America; Cameron Javdani, Director of Sales and Marketing, Louroe Electronics; and Bill Kuhns, President, Vermont Energy Control Systems LLC.

### OVERSIGHT OF THE EQUIFAX DATA BREACH: ANSWERS FOR CONSUMERS

On October 3, 2017, the Subcommittee on Digital Commerce and Consumer Protection held a hearing entitled "Oversight of the

64

Equifax Data Breach: Answers for Consumers." The purpose of the hearing was to investigate the breach of consumer data at Equifax, Inc. and discuss remedies for consumers. The Subcommittee received testimony from Richard F. Smith, former Chairman and CEO, Equifax, Inc.

### 21st Century Trade Barriers: Protectionist Cross-Border Data Flow Policies' Impact on U.S. Jobs

On October 12, 2017, the Subcommittee on Digital Commerce and Consumer Protection held a hearing entitled "21st Century Trade Barriers: Protectionist Cross-Border Data Flow Policies' Impact on U.S. Jobs." The purpose of the hearing was to discuss the global digital economy's effect on the U.S. job market and the potential challenges of cross-border data flows. The Subcommittee received testimony from Victoria A. Espinel, President and CEO, BSA—The Software Alliance; Dean C. Garfield, President and CEO, Information Technology Industry Council; Morgan Reed, President, ACT—The App Association; and Jennifer Daskal, Associate Professor, Washington College of Law, American University.

### Securing Consumers' Credit Data in the Age of Digital Commerce

On November 1, 2017, the Subcommittee on Digital Commerce and Consumer Protection held a hearing entitled "Securing Consumers' Credit Data in the Age of Digital Commerce." The purpose of the hearing was to discuss Federal regulations and private company best practices that help protect consumer credit data. The Subcommittee received testimony from Francis Creighton, President and CEO, Consumer Data Industry Association; James Norton, Adjunct Lecturer, Zanvyll Krieger School of Arts and Sciences, Johns Hopkins University; Anne P. Fortney, Partner Emeritus, Hudson Cook; and Bruce Schneier, Adjunct Lecturer, Kennedy School of Government, Harvard University.

### Perspectives on Mixed Martial Arts

On November 9, 2017, the Subcommittee on Digital Commerce and Consumer Protection held a hearing entitled "Perspectives on Mixed Martial Arts." The purpose of the hearing was to discuss the Federal and State regulation of mixed martial arts and H.R. 44, the "Muhamad Ali Expansion Act." The Subcommittee received testimony from Randy Couture, President, Xtreme Couture; Marc Ratner, Vice President of Regulatory Affairs, UFC; Greg Sirb, Executive Director, Pennsylvania State Athletic Commission; and Kristen Dams-O'Connor, Director, Brain Injury Research Center, Icahn School of Medicine at Mount Sinai.

### Algorithms, How Companies' Decisions About Data and Content Impact Consumers

On November 29, 2017, the Subcommittee on Digital Commerce and Consumer Protection and the Subcommittee on Communications and Technology held a joint hearing entitled "Algorithms, How Companies' Decisions About Data and Content Impact Con-

sumers." The purpose of the hearing was to examine how algorithms are used by companies to collect user data and how consumers are impacted by its use of algorithms. The Subcommittees received testimony from Omri Ben-Shahar, Professor, University of Chicago Law School; Michael Kerns, Professor and National Center Chair, Department of Computer and Information Science, University of Pennsylvania; Kate Klonick, Resident Fellow, Information Society Project, Yale Law School; Laura Moy, Deputy Director, Privacy and Technology, Georgetown University Law Center; Frank Pasquale, Professor, Francis King Carey School of Law, University of Maryland; and Catherine Tucker, Professor, Sloane School of Management, MIT.

UPDATE ON THE CORPORATE AVERAGE FUEL ECONOMY PROGRAM (CAFE) AND GREENHOUSE GAS EMISSIONS STANDARDS FOR MOTOR VEHICLES

On December 12, 2017, the Subcommittee on Digital Commerce and Consumer Protection and the Subcommittee on Environment held a joint hearing entitled "Update on the Corporate Average Fuel Economy Program (CAFE) and Greenhouse Gas Emissions Standards for Motor Vehicles." The purpose of the hearing was to discuss the updates on the CAFE program and Greenhouse Gas Emissions standards for motor vehicles. The Subcommittee received testimony from Mitch Bainwol, President and CEO, Alliance of Automobile Manufacturers; John Bozzella, President and CEO, Global Automakers; Forrest McConnell, III, President, McConnell Honda and Acura, Montgomery, Alabama, on behalf of the National Automobile Dealers Association; and Dave Cooke, Senior Vehicle Analyst, Union of Concerned Scientists.

DISRUPTER SERIES: THE INTERNET OF THINGS, MANUFACTURING AND INNOVATION

On January 18, 2018, the Subcommittee on Digital Commerce and Consumer Protection held a hearing entitled "Disrupter Series: The Internet of Things, Manufacturing and Innovation." The purpose of the hearing was to discuss the use of Internet of Things devices in manufacturing. The Subcommittee received testimony from Rodney Masney, Vice President, Technology Service Delivery, Information Technology, Owens-Illinois; Sanjay Poonen, Chief Operating Officer, VMWare; Thomas D. Bianculli, Chief Technology Officer, Zebra Technology; and Thomas R. Kurfess, Professor, George W. Woodruff School of Mechanical Engineering, Georgia Institute of Technology.

OVERSIGHT OF THE NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION

On February 14, 2018, the Subcommittee on Digital Commerce and Consumer Protection held a hearing entitled "Oversight of the National Highway Traffic Safety Administration." The purpose of the hearing was to conduct oversight of the National Highway Traffic Safety Administration. The Subcommittee received testimony from Heidi King, Deputy Administrator, National Highway Traffic Safety Administration.

66

REVIEW OF EMERGING TECH'S IMPACT ON RETAIL OPERATIONS AND
LOGISTICS

On March 7, 2018, the Subcommittee on Digital Commerce and
Consumer Protection held a hearing entitled "Review of Emerging
Tech's Impact on Retail Operations and Logistics." The purpose of
the hearing was to examine how the e-commerce industry has
changed the retail sector, with impacts on supply chain operations,
delivery, and consumer expectations. The Subcommittee received
testimony from David Borris, Founder, Hel's Kitchen; Jonathan
Johnson, Board of Directors, Overstock.com, and President, Medici
Ventures; Dan Sanker, Founder, President, and CEO, Casestack,
Inc.; and Rob Taylor, CEO, Convey.

PERSPECTIVES ON REFORM OF THE CFIUS REVIEW PROCESS

On April 26, 2018, the Subcommittee on Digital Commerce and
Consumer Protection held a hearing entitled "Perspectives on Re-
form of the CFIUS Review Process." The purpose of the hearing
was to discuss potential changes to the Committee on Foreign In-
vestment in the United States review process. The Subcommittee
received testimony from Heath P. Tarbert, Assistant Secretary,
International Markets and Investment Policy, Department of the
Treasury; Richard E. Ashooh, Assistant Secretary, Export Adminis-
tration, Department of Commerce; Clay Lowery, Managing Direc-
tor, Rock Creek Global Advisors, and former Assistant Secretary,
International Affairs, Department of the Treasury; Derek Scissors,
Resident Scholar, American Enterprise Institute; Kevin J. Wolf,
Partner, Akin Gump Strauss Hauer and Feld, LLP, and former As-
sistant Secretary, Export Administration, Department of Com-
merce; and Celeste Drake, Trade and Globalization Policy Spe-
cialist, AFL–CIO.

DO NOT CALL: COMBATING ROBOCALLS AND CALLER ID SPOOFING

On April 27, 2018, the Subcommittee on Digital Commerce and
Consumer Protection held a hearing entitled "Do Not Call: Com-
bating Robocalls and Caller ID Spoofing." The purpose of the hear-
ing was to examine the tactics behind robocalls and caller ID spoof-
ing and to review the tools and strategies available for consumers
to protect themselves from such practices. The Subcommittee re-
ceived testimony from Aaron Foss, Founder, Nomorobo; Scott
Hambuchen, Executive Vice President, Technology and Solution
Development, FirstOrion; Ethan Garr, Chief Product Officer,
RoboKiller; and Maureen Mahoney, Policy Analyst, Consumers
Union.

DISRUPTER SERIES: QUANTUM COMPUTING

On May 18, 2018, the Subcommittee on Digital Commerce and
Consumer Protection held a hearing entitled "Disrupter Series:
Quantum Computing." The purpose of the hearing was to discuss
the possible applications of and barriers to developing a commer-
cially available quantum computer. The Subcommittee received tes-
timony from Michael Brett, CEO, QxBranch; Christopher Monroe,
Chief Scientist and Founder, IonQ, Inc., and Professor, University

67

of Maryland; Matthew Putman, CEO, Nanotronics. Inc.; and Diana Franklin, Director of Computer Science Education, University of Chicago.

### Understanding the Digital Advertising Ecosystem

On June 14, 2018, the Subcommittee on Digital Commerce and Consumer Protection held a hearing entitled "Understanding the Digital Advertising Ecosystem." The purpose of the hearing was to examine the use of consumer-related data in the digital advertising marketplace and discuss the self-regulatory policies and practices in place to safeguard this data. The Subcommittee received testimony from Howard Beales, Professor, George Washington University; Rachel Glasser, Global Chief Privacy Officer, Wunderman; Michael Zaneis, President and CEO, Trustworthy Accountability Group; and Justin Brookman, Director, Privacy and Technology Policy, Consumers Union.

### Examining Drug-Impaired Driving

On July 11, 2018, the Subcommittee on Digital Commerce and Consumer Protection held a hearing entitled "Examining Drug-Impaired Driving." The purpose of the hearing was to examine the public safety risks posed by drug-impaired driving. The Subcommittee received testimony from Robert L. DuPont, President, Institute for Behavior and Health; Jennifer Harmon, Assistant Director, Forensic Chemistry, Orange County Crime Lab; Erin Holmes, Director, Traffic Safety Programs and Technical Writer, Foundation for Advancing Alcohol Responsibility; and Colleen Sheehey-Church, National President, Mothers Against Drunk Driving.

### Oversight of the Federal Trade Commission

On July 18, 2018, the Subcommittee on Digital Commerce and Consumer Protection held a hearing entitled "Oversight of the Federal Trade Commission." The purpose of the hearing was to conduct oversight of the Federal Trade Commission. The Subcommittee received testimony from Joseph Simons, Chairman, Federal Trade Commission; Maureen Ohlhausen, Commissioner, Federal Trade Commission; Noah Phillips, Commissioner, Federal Trade Commission; Rohit Chopra, Commissioner, Federal Trade Commission; and Rebecca Slaughter, Commissioner, Federal Trade Commission.

### Built in America: Jobs and Growth in the Manufacturing Sector

On September 26, 2018, the Subcommittee on Digital Commerce and Consumer Protection held a hearing entitled "Built in America: Jobs and Growth in the Manufacturing Sector." The purpose of the hearing was to examine the state of the manufacturing sector in the United States. The Subcommittee received testimony from Edward F. Paradowski, President, Apache Stainless Equipment Corporation; Nikki Moyers, Vice President of Operations, Jerl Ma-

68

chine, Inc.; Eric R. Anderberg, Vice President, Dial Machine, Inc.; and, Andrew Stettner, Senior Fellow, The Century Foundation.

SUBCOMMITTEE ON ENERGY

LEGISLATIVE ACTIVITIES

POWER AND SECURITY SYSTEMS (PASS) ACT

PUBLIC LAW 115–78 (S. 190, H.R. 511)

Providing for congressional disapproval under chapter 8 of title 5, United States Code, of the final rule submitted by Secretary of Health and Human Services relating to compliance with title X requirements by project recipients in selecting subrecipients.

*Summary*

The Department of Energy (DOE) sets energy efficiency standards for external power supplies (EPS), which convert power drawn from a wall outlet into lower voltage power that can be used directly by certain electronic devices. Under current law, EPS designed to provide power to some types of alarms and surveillance systems for security or safety are exempt from such standards until July 1, 2017. S. 190 would permanently exclude such EPS from those standards and authorize the Secretary of Energy to treat some or all of those devices as a separate product class.

*Legislative History*

H.R. 511 was introduced by Representative Peter Welch (VT) on January 12, 2017, and referred to the Committee on Energy and Commerce.

On January 23, 2017, H.R. 511 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On January 24, 2017, H.R. 511 was received in the Senate, read twice, and referred to the Committee on Energy and Natural Resources.

No further action was taken on the bill.

S. 190 was introduced by Senator Cory Gardner (CO) on January 23, 2017, and referred to the Committee on Energy and Natural Resources. S. 190 was the Senate companion bill to H.R. 511.

On May 24, 2017, Senator Lisa Murkowski (AK) reported S. 190 to the Senate with a written report (Report 115–76), and the bill was placed on the Senate Legislative Calendar under General Orders (Calendar No. 95).

On August 1, 2017, S. 190 was considered in the Senate, and the bill, without amendment, was passed by unanimous consent.

On October 11, 2017, S. 190 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On October 24, 2017, S. 190 was presented to the President, and the President signed the bill on November 2, 2017 (Public Law 115–78).

## EPS Improvement Act of 2017

### Public Law 115–115 (H.R. 518)

To amend the Energy Policy and Conservation Act to exclude power supply circuits, drivers, and devices designed to be connected to, and power, light-emitting diodes or organic light-emitting diodes providing illumination from energy conservation standards for external power supplies, and for other purposes.

*Summary*

H.R. 518 would amend the Energy Policy and Conservation Act to exclude from energy conservation standards for external power supplies any power supply circuit, driver, or device designed to power light-emitting diodes or to power ceiling fans using direct current motors. The Department of Energy may prescribe new energy conservation standards for such equipment no earlier than one year after the date on which a test procedure has been prescribed.

*Legislative History*

H.R. 518 was introduced by Representative Diana DeGette (CO–01) on January 13, 2017, and referred to the Committee on Energy and Commerce.

On January 23, 2017, H.R. 518 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On January 24, 2017, H.R. 518 was received in the Senate, read twice, and referred to the Committee on Energy and Natural Resources.

On December 21, 2017, H.R. 518 was considered in the Senate, and the bill, without amendment, was passed by unanimous consent.

On January 2, 2018, H.R. 518 was presented to the President, and the President signed the bill on January 12, 2018 (Public Law 115–115).

## Ceiling Fan Energy Conservation Harmonization Act

### Public Law 115–161 (S. 2030, H.R. 3477)

To deem the compliance date for amended energy conservation standards for ceiling fan light kits to be January 21, 2020.

*Summary*

S. 2030 would extend the compliance date for the amended energy conservation standards for ceiling fan light kits, which is also the compliance date for the ceiling fan standard, from January 7, 2019, to January 21, 2020.

*Legislative History*

H.R. 3477 was introduced by Representative Richard Hudson (NC–08) on July 27, 2017, and referred to the Committee on En-

71

ergy and Commerce. H.R. 3477 was referred to the Subcommittee on Energy on July 28, 2017.

On November 7, 2017, the Subcommittee on Energy held a hearing on H.R. 3477.

On January 30, 2018, the Subcommittee on Health met in open markup session to consider H.R. 3477 and forwarded the bill, without amendment, to the full committee by a voice vote.

S. 2030 was introduced by Senator Thom Tillis (NC) on October 30, 2017, read twice, and referred to the Committee on Energy and Natural Resources. S. 2030 was the Senate companion bill to H.R. 3477.

On December 21, 2017, S. 2030 was considered in the Senate, and the bill, without amendment, was passed by unanimous consent.

On March 19, 2018, S. 2030 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On March 22, 2018, S. 2030 was presented to the President, and the President signed the bill on April 3, 2018 (Public Law 115–161).

### TO EXTEND THE DEADLINE FOR COMMENCEMENT OF CONSTRUCTION OF A HYDROELECTRIC PROJECT

#### PUBLIC LAW 115–202 (H.R. 446)

To extend the deadline for commencement of construction of a hydroelectric project.

*Summary*

H.R. 446 would authorize the Federal Energy Regulatory Commission to extend the time period during which the licensee is required to commence the construction of Commission project number 12737 for up to three consecutive two-year periods.

*Legislative History*

H.R. 446 was introduced by Representative H. Morgan Griffith (VA–09) on January 11, 2017, and referred to the Committee on Energy and Commerce. H.R. 446 was referred to the Subcommittee on Energy on January 25, 2017.

On May 3, 2017, the Subcommittee on Energy held a hearing on H.R. 446.

On June 7, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 446 and ordered the bill, without amendment, favorably reported to the House by unanimous consent.

On June 12, 2017, the Committee on Energy and Commerce reported H.R. 446, without amendment, to the House (H. Rept. 115–169), and the bill was placed on the Union Calendar (Calendar No. 113).

On June 12, 2017, H.R. 446 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

72

On June 13, 2017, H.R. 446 was received in the Senate, read twice, and placed on the Senate Legislative Calendar under General Orders (Calendar No. 136).

On June 28, 2018, H.R. 446 was considered in the Senate, and the bill, without amendment, was passed by unanimous consent.

On July 12, 2018, H.R. 446 was presented to the President, and the President signed the bill on July 23, 2018 (Public Law 115–202).

## TO EXTEND THE DEADLINE FOR COMMENCEMENT OF CONSTRUCTION OF A HYDROELECTRIC PROJECT

### PUBLIC LAW 115–203 (H.R. 447)

To extend the deadline for commencement of construction of a hydroelectric project.

*Summary*

H.R. 447 would authorize the Federal Energy Regulatory Commission to extend the time period during which the licensee is required to commence the construction of Commission project number 12740 for up to three consecutive two-year periods.

*Legislative History*

H.R. 447 was introduced by Representative H. Morgan Griffith (VA–09) on January 11, 2017, and referred to the Committee on Energy and Commerce. H.R. 447 was referred to the Subcommittee on Energy on January 25, 2017.

On May 3, 2017, the Subcommittee on Energy held a hearing on H.R. 447.

On June 7, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 447 and ordered the bill, without amendment, favorably reported to the House by unanimous consent.

On June 12, 2017, the Committee on Energy and Commerce reported H.R. 447, without amendment, to the House (H.Rept. 115–170), and the bill was placed on the Union Calendar (Calendar No. 114).

On June 12, 2017, H.R. 447 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On June 13, 2017, H.R. 447 was received in the Senate, read twice, and placed on the Senate Legislative Calendar under General Orders (Calendar No. 137).

On June 28, 2018, H.R. 447 was considered in the Senate, and the bill, without amendment, was passed by unanimous consent.

On July 12, 2018, H.R. 447 was presented to the President, and the President signed the bill on July 23, 2018 (Public Law 115–203).

73

TO EXTEND THE DEADLINE FOR COMMENCEMENT OF CONSTRUCTION
OF A HYDROELECTRIC PROJECT

PUBLIC LAW 115–204 (H.R. 951)

To extend the deadline for commencement of construction of a hydroelectric project.

*Summary*

H.R. 951 would authorize the Federal Energy Regulatory Commission to extend the time period during which the licensee is required to commence the construction of Commission project number 12642 for up to three consecutive two-year periods.

*Legislative History*

H.R. 951 was introduced by Representative Virginia Foxx (NC–05) on February 7, 2017, and referred to the Committee on Energy and Commerce. H.R. 951 was referred to the Subcommittee on Energy on February 10, 2017.

On June 7, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 951 and ordered the bill, without amendment, favorably reported to the House by unanimous consent.

On June 12, 2017, the Committee on Energy and Commerce reported H.R. 951, without amendment, to the House (H.Rept. 115–172), and the bill was placed on the Union Calendar (Calendar No. 116).

On June 12, 2017, H.R. 951 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On June 13, 2017, H.R. 951 was received in the Senate, read twice, and placed on the Senate Legislative Calendar under General Orders (Calendar No. 144).

On June 28, 2017, H.R. 951 was considered in the Senate, and the bill, without amendment, was passed by unanimous consent.

On July 12, 2018, H.R. 951 was presented to the President, and the President signed the bill on July 23, 2018 (Public Law 115–204).

TO REINSTATE AND EXTEND THE DEADLINE FOR COMMENCEMENT OF CONSTRUCTION OF A HYDROELECTRIC PROJECT INVOLVING JENNINGS RANDOLPH DAM

PUBLIC LAW 115–205 (H.R. 2122)

To reinstate and extend the deadline for commencement of construction of a hydroelectric project involving Jennings Randolph Dam.

*Summary*

H.R. 2122 authorizes the Federal Energy Regulatory Commission to extend the time period during which the licensee is required to commence the construction of Commission project number 12715 (Jennings Randolph Dam) for up to three consecutive two-year periods.

74

*Legislative History*

H.R. 2122 was introduced by Representative David B. McKinley (WV–01) on April 25, 2017, and referred to the Committee on Energy and Commerce. H.R. 2122 was referred to the Subcommittee on Energy on April 28, 2017.

On May 3, 2017, the Subcommittee on Energy held a hearing on H.R. 2122.

On June 7, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 2122 and ordered the bill, without amendment, favorably reported to the House by unanimous consent.

On June 12, 2017, the Committee on Energy and Commerce reported H.R. 2122, without amendment, to the House (H.Rept. 115–175), and the bill was placed on the Union Calendar (Calendar No. 119).

On June 12, 2017, H.R. 2122 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On June 13, 2017, H.R. 2122 was received in the Senate, read twice, and placed on the Senate Legislative Calendar under General Orders (Calendar No. 138).

On June 28, 2017, H.R. 2122 was considered in the Senate, and the bill, without amendment, was passed by unanimous consent.

On July 12, 2018, H.R. 2122 was presented to the President, and the President signed the bill on July 23, 2018 (Public Law 115–205).

TO EXTEND A PROJECT OF THE FEDERAL ENERGY REGULATORY
COMMISSION INVOLVING THE CANNONSVILLE DAM

PUBLIC LAW 115–206 (H.R. 2292)

To extend a project of the Federal Energy Regulatory Commission involving the Cannonsville Dam.

*Summary*

H.R. 2292 authorizes the Federal Energy Regulatory Commission (FERC) to issue a preliminary permit to a hydropower construction license applicant for up to four years instead of three. In addition, the FERC would be authorized to extend the period of a preliminary permit once for not more than four additional years, instead of two, beyond the initial four-year period. The FERC may further extend the period a preliminary permit once for not more than four additional years if it determines that there are extraordinary circumstances that warrant such additional extension.

*Legislative History*

H.R. 2292 was introduced by Representative John J. Faso (NY–19) on May 2, 2017, and referred to the Committee on Energy and Commerce. H.R. 2292 was referred to the Subcommittee on Energy on May 5, 2017.

On June 7, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 2292 and ordered the bill, without amendment, favorably reported to the House by unanimous consent.

75

On June 12, 2017, the Committee on Energy and Commerce reported H.R. 2292, without amendment, to the House (H.Rept. 115–174), and the bill was placed on the Union Calendar (Calendar No. 118).

On June 12, 2017, H.R. 2292 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a recorded vote of 400 yeas and 1 nay (Roll Call No. 300).

On June 13, 2017, H.R. 2292 was received in the Senate, read twice, and placed on the Senate Legislative Calendar under General Orders (Calendar No. 139).

On June 28, 2017, H.R. 2292 was considered in the Senate, and the bill, without amendment, was passed by unanimous consent.

On July 12, 2018, H.R. 2292 was presented to the President, and the President signed the bill on July 23, 2018 (Public Law 115–206).

TO REINSTATE AND EXTEND THE DEADLINE FOR COMMENCEMENT OF CONSTRUCTION OF A HYDROELECTRIC PROJECT INVOLVING THE GIBSON DAM

PUBLIC LAW 115–219 (S. 490)

To reinstate and extend the deadline for commencement of construction of a hydroelectric project involving the Gibson Dam.

*Summary*

The bill would authorize the Federal Energy Regulatory Commission to extend the deadline for beginning construction of a hydroelectric project (number 12478–003) involving the Gibson Dam in Montana.

*Legislative History*

S. 490 was introduced by Senator Steve Daines (MT) on March 2, 2017, and referred to the Committee on Energy and Natural Resources.

On June 8, 2017, Senator Lisa Murkowski (AK) reported S. 490, as amended, to the Senate with a written report (Report 115–100), and the bill was placed on the Senate Legislative Calendar under General Orders (Calendar No. 130).

On June 28, 2018, S. 490 was considered in the Senate, and the bill, as amended, was passed by unanimous consent.

On July 3, 2018, S. 490 was received in the House and referred to the Committee on Energy and Commerce.

On July 16, 2018, S. 490 was considered in the House under a motion to suspend the Rules, and the bill, without further amendment, was passed by a voice vote.

On July 19, 2018, S. 490 was presented to the President, and the President signed the bill on July 27, 2018 (Public Law 115–219).

TO AMEND SECTION 203 OF THE FEDERAL POWER ACT

PUBLIC LAW 115–247 (H.R. 1109)

To amend section 203 of the Federal Power Act.

76

*Summary*

Under current law, public utilities are prohibited from merging or consolidating facilities with those of any other person without first having secured an order of the Federal Energy Regulatory Commission (FERC) authorizing them to do so. H.R. 1109 would amend the Federal Power Act to exempt facilities of a value of $10,000,000 or less from this prohibition. The bill also directs the FERC to issue a rule requiring certain public utilities seeking to merge or consolidate to notify FERC of the transaction within 30 days of the completion of the merger or consolidation.

*Legislative History*

H.R. 1109 was introduced by Representative Tim Walberg (MI–07) on February 16, 2017, and referred to the Committee on Energy and Commerce. H.R. 1109 was referred to the Subcommittee on Energy on February 17, 2017.

On June 7, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 1109 and ordered the bill, without amendment, favorably reported to the House by unanimous consent.

On June 12, 2017, the Committee on Energy and Commerce reported H.R. 1109, without amendment, to the House (H.Rept. 115–167), and the bill was placed on the Union Calendar (Calendar No. 112).

On June 12, 2017, H.R. 1109 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On June 13, 2017, H.R. 1109 was received in the Senate, read twice, and referred to the Committee on Energy and Natural Resources.

On May 21, 2018, Senator Lisa Murkowski (AK) reported H.R. 1109, as amended, to the Senate with a written report (Report 115–253), and the bill was placed on the Senate Legislative Calendar under General Orders (Calendar No. 420).

On September 4, 2018, H.R. 1109 was considered in the Senate, and the bill, as amended, was passed by a voice vote.

On September 13, 2018, Representative Walberg asked unanimous consent to take from the Speaker's table H.R. 1109 and to agree to the Senate amendment. The bill, as amended, was passed by unanimous consent.

On September 18, 2018, H.R. 1109 was presented to the President, and the President signed the bill on September 28, 2018 (Public Law 115–247).

### AMERICA'S WATER INFRASTRUCTURE ACT OF 2018

PUBLIC LAW 115–270 (S. 3021, H.R. 587, H.R. 2786, H.R. 2872, H.R. 2880, H.R. 3043)

To provide for improvements to the rivers and harbors of the United States, to provide for the conservation and development of water and related resources, to provide for water pollution control activities, and for other purposes.

77

*Summary*

S. 3021 includes provisions that would modernizing the nation's drinking water infrastructure by reauthorizing the Drinking Water State Revolving Loan Fund program; aiding States and utilities with compliance and asset management; updating antiterrorism and resilience measures at public water systems; improving transparency for consumers about the quality of their drinking water; and authorizing funds for areas affected by natural disasters that need help repairing their drinking water systems or hooking up to other ones to obtain potable drinking water.

Provisions of S. 3021 also would promote hydropower development by streamlining the regulatory permitting process; getting new hydropower projects to market faster, saving time and money; and removing barriers to investments in hydropower.

Finally, S. 3021 includes a provision that would strengthen consumers' participation in the Federal Energy Regulatory Commission rate process by increasing transparency.

*Legislative History*

S. 3021 was introduced by Senator Amy Klobuchar (MN) on June 7, 2018, and referred to the Committee on Environment and Public Works.

On August 1, 2018, Senator John Barrasso (WY) reported S. 3021, without amendment, to the Senate without a written report, and the bill was placed on the Senate Legislative Calendar under General Orders (Calendar No. 550).

On September 4, 2018, S. 3021 was considered in the Senate, and the bill, without amendment, was passed by unanimous consent.

On September 5, 2018, S. 3021 was received in the House and referred to the Committee on Transportation and Infrastructure.

On September 13, 2018, S. 3021 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On October 10, 2018, the House amendments to S. 3021 were considered in the Senate, and the bill, without further amendment, was passed by a recorded vote of 99 yeas and 1 nay (Roll Call No. 225).

On October 12, 2018, S. 3021 was presented to the President, and the President signed the bill on October 23, 2018 (Public Law 115–270).

## AGRICULTURE IMPROVEMENT ACT OF 2018

### PUBLIC LAW 115–334 (SECTION 12531 OF H.R. 2)

To provide for the reform and continuation of agricultural and other programs of the Department of Agriculture through fiscal year 2023, and for other purposes.

*Summary*

Section 12531 of H.R. 2 would reauthorization of the National Oilheat Research Alliance (NORA) for 10 years, which would provide more efficient and more reliable heat and hot water to American consumers.

78

*Legislative History*

H.R. 2 was introduced by Representative Michael K. Conaway (TX–11) on April 12, 2018, and referred to the Committee on Agriculture.

On May 15, 16, 17, and 18, 2018, H.R. 2 was considered in the House pursuant to the provisions of H.Res. 891, and the bill, as amended, was defeated by a recorded vote of 198 yeas and 213 nays (Roll Call No. 205).

On June 21, 2018, the motion to reconsider was agreed to by a recorded vote of 233 yeas and 191 nays (Roll Call No. 283), and the bill, as amended, was passed by a recorded vote of 213 yeas and 211 nays (Roll Call No. 284).

On June 21, 2018, H.R. 2 was received in the Senate, read twice, and placed on the Senate Legislative Calendar under General Orders (Calendar No. 483).

On June 28, 2018, H.R. 2 was considered in the Senate, and the bill, as amended, was passed by a recorded vote of 86 yeas and 11 nays (Roll Call No. 143).

On July 18, 2018, the House agreed to a motion that the House disagree to the Senate amendment to H.R. 2 and request a conference with the Senate thereon by unanimous consent.

On July 18, 2018, the Speaker appointed conferees. From the Committee on Energy and Commerce, the Speaker appointed Representative John Shimkus (IL–15), Representative Kevin Cramer (ND–AL), and Representative Paul Tonko (NY–20) for consideration of subtitles A and B of title VI, sections 6202, 6203, 6401, 6406, 6407, 6409, 6603, 7301, 7605, 8106, 8507, 9119, 9121, and 11101 of the House bill, and sections 6116, 6117, 6202, 6206, 6207, 6208, 6209, 6301, 6303, 7412, 9102, 9104, 9106, 9111, 9112, 9113, 12408, 12627, and 12628 of the Senate amendment, and modifications committed to conference.

On July 31, 2018, the Senate insisted on its amendment, agreed to the request for a conference, and authorized the Presiding Officer to appoint conferees agreed to in Senate by a voice vote.

On August 1, 2018, the Senate appointed the following conferees, Senator Pat Roberts (KS), Senator Mitch McConnell (KY), Senator John Boozman (AR), Senator John Hoeven (SD), Senator Joni Ernst (IA), Senator Debbie Stabenow (MI), Senator Patrick J. Leahy (VT), Senator Sherrod Brown (OH), and Senator Heidi Heitkamp (ND).

The conference met on September 5, 2018. The conference report (H. Rept. 115–1072) was filed on December 10, 2018.

On December 11, 2018, the Senate agreed to the conference report by a roll call vote of 87 yeas and 13 nays (Roll Call No. 259).

On December 12, 2018, the conference report was considered in the House pursuant to the provisions of H. Res. 1176, and the conference report was agreed to by a roll call vote of 369 yeas and 47 nays (Roll Call No. 434).

On December 4, 2018, H.R. 2 was presented to and signed by the President (Public Law 115–334).

79

## Nuclear Energy Innovation and Modernization Act

### PUBLIC LAW 115–XX (S. 512)

To modernize the regulation of nuclear energy.

*Summary*

S. 512 would direct the Nuclear Regulatory Commission (NRC), which licenses and regulates the use of radioactive materials at civilian facilities such as nuclear reactors, to undertake certain activities related to establishing a regulatory framework for licensing nuclear reactors that use advanced technologies for either commercial or research-related purposes. The bill also would modify the NRC's underlying authority to charge fees to entities that the agency regulates and would authorize the Department of Energy (DOE) to provide grants to developers of advanced nuclear technologies to help pay for the costs of developing and licensing such technologies. Finally, S. 512 would amend existing law regarding the disposition of excess uranium materials managed by DOE.

*Legislative History*

S. 512 was introduced by Senator John Barrasso (WY) on March 2, 2017, and referred to the Committee on Environment and Public Works.

On May 25, 2018, Senator John Barrasso (WY) reported S. 512, as amended, to the Senate with a written report (Report 115–86), and the bill was placed on the Senate Legislative Calendar under General Orders (Calendar No. 108).

On December 20, 2018, S. 512 was considered in the Senate, and the bill, as amended, was passed by a voice vote.

On December 20, 2018, S. 512 was received in the House and held at the desk.

On December 21, 2018, S. 512 was considered in the House under a motion to suspend the Rules, and the bill, without further amendment, was passed by a recorded vote of 361 yeas and 10 nays (Roll Call No. 493).

S. 512, as approved by the House and the Senate, was awaiting action by the President when this report was filed (Public Law 115–____).

## Energy Efficient Government Technology Act

### H.R. 306

To amend the Energy Independence and Security Act of 2007 to promote energy efficiency via information and computing technologies, and for other purposes.

*Summary*

H.R. 306 would require Federal agencies to coordinate with the Office of Management and Budget (OMB), Department of Energy (DOE), and the Environmental Protection Agency (EPA) to develop an implementation strategy—including best practices and measurement and verification techniques—for the maintenance, purchase, and use of energy-efficient and energy saving information technologies. OMB would be required to track and report on the

80

progress of each agency. In addition, H.R. 306 would improve the energy efficiency of Federal data centers by, among other items, requiring DOE to update a 2007 report on data center energy efficiency and maintain a data center energy practitioner certification program. DOE also would be required to establish an open data initiative to help share best practices and support further innovation, and develop a metric that measures data center energy efficiency.

*Legislative History*

H.R. 306 was introduced by Representative Anna G. Eshoo (CA–18) on January 5, 2017, and referred to the Committee on Energy and Commerce.

On January 10, 2017, H.R. 306 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On January 11, 2017, H.R. 306 was received in the Senate, read twice, and referred to the Committee on Energy and Natural Resources.

No further action was taken on the bill.

### TO PROMOTE A 21ST CENTURY ENERGY AND MANUFACTURING WORKFORCE

#### H.R. 338

To promote a 21st century energy and manufacturing workforce.

*Summary*

H.R. 338 would direct the Secretary of the Energy to prioritize education and training for energy and manufacturing-related jobs in order to increase the number of skilled workers trained to work in energy and manufacturing-related fields when considering awards for existing grant programs.

*Legislative History*

H.R. 338 was introduced by Representative Robby L. Rush (IL–01) on January 5, 2017, and referred to the Committee on Education and the Workforce, and in addition to the Committee on Energy and Commerce. H.R. 338 was referred to the Subcommittee on Energy on January 25, 2017.

On June 7, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 338 and ordered the bill, without amendment, favorably reported to the House by unanimous consent.

On June 12, 2017, the Committee on Energy and Commerce reported H.R. 338, without amendment, to the House (H.Rept. 115–168, Part 1). The bill was not placed on the Union Calendar.

On June 12, 2017, H.R. 338 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On June 13, 2017, H.R. 338 was received in the Senate, read twice, and referred to the Committee on Energy and Natural Resources.

No further action was taken on the bill.

81

FAIR RATEPAYER ACCOUNTABILITY, TRANSPARENCY, AND EFFICIENCY STANDARDS ACT

H.R. 587

To amend the Federal Power Act to provide that any inaction by the Federal Energy Regulatory Commission that allows a rate change to go into effect shall be treated as an order by the Commission for purposes of rehearing and court review.

*Summary*

H.R. 587 would amend section 205 of the Federal Power Act to clarify that if a lack of action by Federal Energy Regulatory Commission (FERC) allows a rate change to take effect, including if FERC allows the 60-day notice period to expire, such lack of action would be treated as if FERC had issued an order accepting the change, thereby allowing any affected party to apply for rehearing within 30 days.

*Legislative History*

H.R. 587 was introduced by Representative Joseph P. Kennedy, III (MA–04) on January 17, 2017, and referred to the Committee on Energy and Commerce.

On January 23, 2017, H.R. 587 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On January 24, 2017, H.R. 587 was received in the Senate, read twice, and referred to the Committee on Energy and Natural Resources.

No further action was taken on the bill. The provisions of H.R. 587 were included in S. 3021, which is discussed elsewhere in this report.

ADVANCED NUCLEAR TECHNOLOGY DEVELOPMENT ACT OF 2017

H.R. 590

To foster civilian research and development of advanced nuclear energy technologies and enhance the licensing and commercial deployment of such technologies.

*Summary*

H.R. 590 addresses the need to develop, license, and regulate advanced nuclear technologies and commercial deployment of such technologies. H.R. 590 would require the Department of Energy (DOE) and the Nuclear Regulatory Commission (NRC or Commission) to enter into a Memorandum of Understanding (MOU) to assure technical expertise is maintained, modeling and simulation is utilized, and DOE facilities are available to NRC as needed; require the NRC develop a plan to implement an efficient, risk-informed, technology-neutral regulatory framework for advanced nuclear technologies; and authorize the appropriations of amounts to the NRC for the development of a regulatory infrastructure for advanced nuclear reactor technologies is not subject to statutory "fee recovery" requirements.

82

*Legislative History*

H.R. 590 was introduced by Representative Robert E. Latta (OH–05) on January 20, 2017, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Science, Space, and Technology.

On January 23, 2017, H.R. 590 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On January 24, 2017, H.R. 590 was received in the Senate, read twice, and referred to the Committee on Commerce, Science, and Transportation.

On February 10, 2017, H.R. 590 was discharged from the Committee on Commerce, Science, and Transportation and referred to the Committee on Environment and Public Works.

No further action was taken on the bill.

STREAMLINING ENERGY EFFICIENCY FOR SCHOOLS ACT OF 2017

H.R. 627

To amend the Energy Policy and Conservation Act to provide for the dissemination of information regarding available Federal programs relating to energy efficiency projects for schools, and for other purposes.

*Summary*

H.R. 627 would amend the Energy Policy and Conservation Act to direct the Secretary of Energy, acting through the Office of Energy Efficiency and Renewable Energy, to establish a clearinghouse for disseminating information regarding available Federal programs and financing mechanisms that may be used to help initiate, develop, and finance energy efficiency, distributed generation, and energy retrofitting projects for schools.

*Legislative History*

H.R. 627 was introduced by Representative Matt Cartwright (PA–17) on January 24, 2017, and referred to the Committee on Energy and Commerce. H.R. 627 was referred to the Subcommittee on Energy on January 27, 2017.

On June 7, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 627 and ordered the bill, without amendment, favorably reported to the House by unanimous consent.

On June 12, 2017, the Committee on Energy and Commerce reported H.R. 627, without amendment, to the House (H.Rept. 115–171), and the bill was placed on the Union Calendar (Calendar No. 115).

On June 12, 2017, H.R. 627 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On June 13, 2017, H.R. 627 was received in the Senate, read twice, and referred to the Committee on Energy and Natural Resources.

No further action was taken on the bill.

### Energy Savings Through Public-Private Partnerships Act of 2017

#### H.R. 723

To amend the National Energy Conservation Policy Act to encourage the increased use of performance contracting in Federal facilities, and for other purposes.

*Summary*

H.R. 723 would amend the Energy Policy and Conservation Act to direct the Secretary of Energy, acting through the Office of Energy Efficiency and Renewable Energy, to establish a clearinghouse for disseminating information regarding available Federal programs and financing mechanisms that may be used to help initiate, develop, and finance energy efficiency, distributed generation, and energy retrofitting projects for schools.

*Legislative History*

H.R. 723 was introduced by Representative Adam Kinzinger (IL–16) on January 30, 2017, and referred to the Committee on Energy and Commerce. H.R. 723 was referred to the Subcommittee on Energy on February 3, 2017.

On June 7, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 723 and ordered the bill, without amendment, favorably reported to the House by unanimous consent.

On February 23, 2018, the Committee on Energy and Commerce reported H.R. 723, as amended, to the House (H.Rept. 115–575), and the bill was placed on the Union Calendar (Calendar No. 435).

No further action was taken on the bill.

### Nuclear Utilization of Keynote Energy Act

#### H.R. 1320

To amend the Omnibus Budget Reconciliation Act of 1990 related to Nuclear Regulatory Commission user fees and annual charges, and for other purposes.

*Summary*

The Nuclear Regulatory Commission (NRC) licenses and regulates commercial nuclear power plants and other facilities that use radioactive materials. Under current law, the agency is required to recover most of its funding through fees charged to entities it regulates. H.R. 1320 would modify the formula used to determine the amount of those fees. The bill also would modify procedures related to NRC's review of applications for certain permits and licenses and allow the agency to conduct, on an informal basis, any type of hearing requested to review the agency's actions or decisions. H.R. 1320 also would require the NRC and the Government Accountability Office to complete a variety of studies and reports on nuclear-related issues.

84

*Legislative History*

H.R. 1320 was introduced by Representative Adam Kinzinger (IL–16) on March 2, 2017, and referred to the Committee on Energy and Commerce. H.R. 1320 was referred to the Subcommittee on Energy on March 17, 2017.

On May 22, 2018, the Subcommittee on Energy held a hearing on H.R. 1320.

On June 21, 2018, the Subcommittee on Energy met in open markup session to consider H.R. 1320 and forwarded the bill, as amended, to the full committee by a voice vote.

On July 12, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 1320 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On September 7, 2018, the Committee on Energy and Commerce reported H.R. 1320, as amended, to the House (H.Rept. 115–924), and the bill was placed on the Union Calendar (Calendar No. 717).

On September 25, 2018, H.R. 1320 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On September 26, 2018, H.R. 1320 was received in the Senate, read twice, and referred to the Committee on Environment and Public Works.

No further action was taken on the bill.

SUPPORTING HOME OWNER RIGHTS ENFORCEMENT ACT

H.R. 1538

To amend the Federal Power Act to require the Federal Energy Regulatory Commission to minimize infringement on the exercise and enjoyment of property rights in issuing hydropower licenses, and for other purposes.

*Summary*

H.R. 1538 would require the Federal Energy Regulatory Commission to give equal consideration to minimizing infringement on the useful exercise and enjoyment of property rights held by non-licensees when considering hydropower licenses.

*Legislative History*

H.R. 1538 was introduced by Representative H. Morgan Griffith (VA–09) on March 15, 2017, and referred to the Committee on Energy and Commerce. H.R. 1538 was referred to the Subcommittee on Energy on March 17, 2017.

On May 3, 2017, the Subcommittee on Energy held a hearing on H.R. 1538.

No further action was taken on the bill.

85

TO DIRECT THE SECRETARY OF ENERGY TO REVIEW AND UPDATE A REPORT ON THE ENERGY AND ENVIRONMENTAL BENEFITS OF THE RE-REFINING OF USED LUBRICATING OIL

H.R. 1733

To direct the Secretary of Energy to review and update a report on the energy and environmental benefits of the re-refining of used lubricating oil.

*Summary*

H.R. 1733 would require the Secretary of Energy, in cooperation with the Administrator of the Environmental Protection Agency and the Director of the Office of Management and Budget, to review and update a report on the environmental and energy-related benefits of re-refining used lubricating oil. The bill also would direct the Secretary to develop a strategy for increasing the beneficial recycling of such oils.

*Legislative History*

H.R. 1733 was introduced by Representative Susan W. Brooks (IN–05) on March 27, 2017, and referred to the Committee on Energy and Commerce. H.R. 1733 was referred to the Subcommittee on Energy on March 31, 2017.

On October 26, 2017, the Subcommittee on Energy met in open markup session to consider H.R. 1733 and forwarded the bill, without amendment, to the full committee by a voice vote.

On December 6, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 1733 and ordered the bill, without amendment, favorably reported to the House by a voice vote.

On December 11, 2017, the Committee on Energy and Commerce reported H.R. 1733, without amendment, to the House (H.Rept. 115–457), and the bill was placed on the Union Calendar (Calendar No. 339).

On December 12, 2017, H.R. 1733 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On December 13, 2017, H.R. 1733 was received in the Senate, read twice, and referred to the Committee on Energy and Natural Resources.

No further action was taken on the bill.

HYDROPOWER PERMIT EXTENSION ACT

H.R. 2274

To amend the Federal Power Act to provide for extended periods relating to preliminary permits and commencement of construction, and for other purposes.

*Summary*

H.R. 2274 would authorize the Federal Energy Regulatory Commission (FERC) to issue a preliminary permit to a hydropower construction license applicant for up to four years instead of three. In addition, the FERC would be authorized to extend the period of a

86

preliminary permit once for not more than four additional years, instead of two, beyond the initial four-year period. The FERC may further extend the period a preliminary permit once for not more than four additional years if it determines that there are extraordinary circumstances that warrant such additional extension.

*Legislative History*

H.R. 2274 was introduced by Representative Scott H. Peters (CA–52) on May 1, 2017, and referred to the Committee on Energy and Commerce. H.R. 2274 was referred to the Subcommittee on Energy on May 5, 2017.

On June 7, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 2274 and ordered the bill, without amendment, favorably reported to the House by unanimous consent.

On June 12, 2017, the Committee on Energy and Commerce reported H.R. 2274, without amendment, to the House (H.Rept. 115–173), and the bill was placed on the Union Calendar (Calendar No. 117).

On June 12, 2017, H.R. 2274 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On June 13, 2017, H.R. 2274 was received in the Senate, read twice, and placed on the Senate Legislative Calendar under General Orders (Calendar No. 135).

No further action was taken on the bill.

## J. Bennett Johnston Waterway Hydropower Extension Act of 2017

### H.R. 2457

To extend the deadline for commencement of construction of certain hydroelectric projects.

*Summary*

H.R. 2457 would authorize the Federal Energy Regulatory Commission to extend the time period during which a licensee is required to commence the construction of Commission project numbers 12756, 12757, and 12758 for up to three consecutive two-year periods.

*Legislative History*

H.R. 2457 was introduced by Representative Mike Johnson (LA–04) on May 16, 2017, and referred to the Committee on Energy and Commerce. H.R. 2457 was referred to the Subcommittee on Energy on May 19, 2017.

On June 7, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 2457 and ordered the bill, as amended, favorably reported to the House by unanimous consent.

On June 12, 2017, the Committee on Energy and Commerce reported H.R. 2457, as amended, to the House (H.Rept. 115–176), and the bill was placed on the Union Calendar (Calendar No. 120).

On June 12, 2017, H.R. 2457 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a recorded vote of 402 yeas and 1 nay (Roll Call No. 301).

On June 13, 2017, H.R. 2457 was received in the Senate, read twice, and referred to the Committee on Energy and Natural Resources.

No further action was taken on the bill.

To amend the Federal Power Act with Respect to the Criteria and Process to Qualify as a Qualifying Conduit Hydropower Facility

H.R. 2786

To amend the Federal Power Act with respect to the criteria and process to qualify as a qualifying conduit hydropower facility.

*Summary*

Under the Federal Power Act, the Federal Energy Regulatory Commission (FERC) licenses and regulates most non-Federal hydroelectric facilities. Under current law, hydroelectric projects with a capacity of less than five megawatts that generate power using water flowing through agricultural, municipal, or industrial conduits are exempt from FERC's licensing requirements. H.R. 2786 would exempt all hydropower facilities that use water from conduits from FERC's licensing requirements and would modify procedures for determining whether proposed facilities qualify for that exemption.

*Legislative History*

On May 3, 2017, the Subcommittee on Energy held a hearing on a discussion draft entitled "Promoting Small Conduit Hydropower Facilities Act of 2017."

H.R. 2786 was introduced by Representative Richard Hudson (NC–08) on June 6, 2017, and referred to the Committee on Energy and Commerce. H.R. 2786 was referred to the Subcommittee on Energy on June 9, 2017. H.R. 2786 was similar to the discussion draft.

On June 22, 2017, the Subcommittee on Energy met in open markup session to consider H.R. 2786 and forwarded the bill, as amended, to the full committee by a voice vote.

On June 28, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 2786 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On July 12, 2017, the Committee on Energy and Commerce reported H.R. 2786, as amended, to the House (H.Rept. 115–213), and the bill was placed on the Union Calendar (Calendar No. 149).

On July 18, 2017, H.R. 2786 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a recorded vote of 420 yeas and 2 nays (Roll Call No. 384).

On July 19, 2017, H.R. 2786 was received in the Senate, read twice, and referred to the Committee on Energy and Natural Resources.

88

On July 11, 2018, Senator Lisa Murkowski (AK) reported H.R. 2786, as amended, to the Senate with a written report (Report 115–297), and the bill was placed on the Senate Legislative Calendar under General Orders (Calendar No. 511).

No further action was taken on the bill. The provisions of H.R. 2786 were included in S. 3021, which is discussed elsewhere in this report.

### To Extend the Deadline for Commencement of Construction of a Hydroelectric Project

#### H.R. 2828

To extend the deadline for commencement of construction of a hydroelectric project.

*Summary*

H.R. 2828 would authorize the Federal Energy Regulatory Commission (FERC), upon the request of the licensee for FERC project number 12569 (Enloe Dam), to extend the time period during which the licensee is required to commence the construction of the project for up to three consecutive two-year periods from the date of the expiration of the extension originally issued by FERC.

*Legislative History*

H.R. 2828 was introduced by Representative Dan Newhouse (WA–04) on June 8, 2017, and referred to the Committee on Energy and Commerce. H.R. 2828 was referred to the Subcommittee on Energy on June 9, 2017.

On July 18, 2017, H.R. 2828 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On July 19, 2017, H.R. 2828 was received in the Senate, read twice, and referred to the Committee on Energy and Natural Resources.

No further action was taken on the bill.

### Promoting Hydropower Development at Existing Nonpowered Dams Act

#### H.R. 2872

To amend the Federal Power Act to promote hydropower development at existing nonpowered dams, and for other purposes.

*Summary*

H.R. 2872 would promote hydropower development at existing nonpowered dams by establishing an expedited licensing process that will result in a final decision on an application in two years or less. The legislation also would require the Federal Energy Regulatory Commission, U.S. Army Corps of Engineers, and Department of Interior, to develop a list of existing nonpowered Federal dams that have the greatest potential for non-Federal hydropower development.

89

*Legislative History*

On May 3, 2017, the Subcommittee on Energy held a hearing on a discussion draft entitled "Promoting Hydropower Development at Existing Non-Powered Dams Act."

H.R. 2872 was introduced by Representative Larry Bucshon (IN–08) on June 12, 2017, and referred to the Committee on Energy and Commerce. H.R. 2872 was similar to the discussion draft.

H.R. 2872 was referred to the Subcommittee on Energy on June 16, 2017.

On October 26, 2017, the Subcommittee on Energy met in open markup session to consider H.R. 2872 and forwarded the bill, as amended, to the full committee by a voice vote.

On December 6, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 2872 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On December 12, 2017, the Committee on Energy and Commerce reported H.R. 2872, as amended, to the House (H. Rept. 115–461, Part 1), the bill was referred jointly and sequentially to the Committee on Natural Resources and the Committee on Transportation and Infrastructure, the committees were discharged from further consideration of the bill, and the bill was placed on the Union Calendar (Calendar No. 160).

On December 12, 2017, H.R. 2872 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On December 13, 2017, H.R. 2872 was received in the Senate, read twice, and referred to the Committee on Energy and Natural Resources.

No further action was taken on the bill. The provisions of H.R. 2872 were included in S. 3021, which is discussed elsewhere in this report.

PROMOTING CLOSED-LOOP PUMPED STORAGE HYDROPOWER ACT

H.R. 2880

To amend the Federal Power Act to promote closed-loop pumped storage hydropower, and for other purposes.

*Summary*

H.R. 2880 would promote closed-loop pumped storage hydropower development by establishing an expedited licensing process that will result in a final decision on an application in two years or less. The legislation also would require the Federal Energy Regulatory Commission to hold a workshop to explore potential opportunities for development of closed-loop pumped storage projects at abandoned mine sites.

*Legislative History*

On May 3, 2017, the Subcommittee on Energy held a hearing on a discussion draft entitled "Promoting Closed Loop Pumped Storage Hydropower Act."

H.R. 2880 was introduced by Representative H. Morgan Griffith (VA–09) on June 12, 2017, and referred to the Committee on Energy and Commerce. H.R. 2880 was similar to the discussion draft.

On October 26, 2017, the Subcommittee on Energy met in open markup session to consider H.R. 2880 and forwarded the bill, without amendment, to the full committee by a voice vote.

On December 6, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 2880 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On December 11, 2017, the Committee on Energy and Commerce reported H.R. 2880, as amended, to the House (H. Rept. 115–458), and the bill was placed on the Union Calendar (Calendar No. 340).

On December 12, 2017, H.R. 2880 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On December 13, 2017, H.R. 2880 was received in the Senate, read twice, and referred to the Committee on Energy and Natural Resources.

No further action was taken on the bill. The provisions of H.R. 2880 were included in S. 3021, which is discussed elsewhere in this report.

### PROMOTING CROSS-BORDER ENERGY INFRASTRUCTURE ACT

#### H.R. 2883

To establish a more uniform, transparent, and modern process to authorize the construction, connection, operation, and maintenance of international border-crossing facilities for the import and export of oil and natural gas and the transmission of electricity.

*Summary*

H.R. 2883 would establish coordinated procedures to authorize the construction, connection, operation, and maintenance of international border-crossing facilities for the import and export of oil and natural gas and the transmission of electricity. The legislation would replace the requirements established under Executive Order that persons obtain a Presidential Permit before constructing an oil and gas pipeline or electric transmission facility that crosses the U.S. border between Canada or Mexico.

*Legislative History*

On May 3, 2017, the Subcommittee on Energy held a hearing on a discussion draft entitled "Promoting Cross-Border Energy Infrastructure Act."

H.R. 2883 was introduced by Representative Markwayne Mullin (OK–02) on June 12, 2017, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Transportation and Infrastructure and Committee on Natural Resources. H.R. 2883 was similar to the discussion draft.

On June 22, 2017, the Subcommittee on Energy met in open markup session to consider H.R. 2883 and forwarded the bill, without amendment, to the full committee by a recorded vote of 18 yeas and 12 nays.

On June 28, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 2883 and ordered the bill, as amended, favorably reported to the House by a recorded vote of 31 yeas and 20 nays.

On July 17, 2017, the Committee on Energy and Commerce reported H.R. 2883, as amended, to the House (H. Rept. 115–225, Part 1), and the bill was placed on the Union Calendar (Calendar No. 160).

On July 19, 2017, H.R. 2883 was considered in the House pursuant to the provisions of H. Res. 454, and the bill, as amended, was passed by a recorded vote of 254 yeas and 175 nays (Roll Call No. 398).

On July 20, 2017, H.R. 2883 was received in the Senate, read twice, and referred to the Committee on Energy and Natural Resources.

No further action was taken on the bill.

PROMOTING INTERAGENCY COORDINATION FOR REVIEW OF NATURAL GAS PIPELINES ACT

H.R. 2910

To provide for Federal and State agency coordination in the approval of certain authorizations under the Natural Gas Act, and for other purposes.

*Summary*

Under the Natural Gas Act, the Federal Energy Regulatory Commission (FERC) is the lead Federal agency involved in approving and regulating interstate pipelines that carry natural gas. Such projects are subject to a variety of Federal and nonfederal permits and authorizations related to a range of issues. Under current law, FERC coordinates those efforts and is ultimately responsible for granting the certificate of public convenience and necessity required to construct or expand interstate natural gas pipelines. H.R. 2910 would specify timeframes and procedures for FERC and other affected agencies to follow in conducting environmental reviews related to natural gas pipelines.

*Legislative History*

On May 3, 2017, the Subcommittee on Energy held a hearing on a discussion draft entitled "Promoting Interagency Coordination for Review of Natural Gas Pipelines Act."

H.R. 2910 was introduced by Representative Bill Flores (TX–17) on June 15, 2017, and referred to the Committee on Energy and Commerce. H.R. 2910 was referred to the Subcommittee on Energy on June 16, 2017. H.R. 2910 was similar to the discussion draft.

On June 22, 2017, the Subcommittee on Energy met in open markup session to consider H.R. 2910 and forwarded the bill, without amendment, to the full committee by a recorded vote of 17 yeas and 14 nays.

On June 28, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 2910 and ordered the bill, without amendment, favorably reported to the House by a recorded vote of 30 yeas and 23 nays.

92

On July 17, 2017, the Committee on Energy and Commerce reported H.R. 2910, without amendment, to the House (H. Rept. 115–223), and the bill was placed on the Union Calendar (Calendar No. 158).

On July 19, 2017, H.R. 2910 was considered in the House pursuant to the provisions of H. Res. 454, and the bill, as amended, was passed by a recorded vote of 248 yeas and 179 nays (Roll Call No. 401).

On July 20, 2017, H.R. 2910 was received in the Senate, read twice, and referred to the Committee on Commerce, Science, and Transportation.

No further action was taken on the bill.

## HYDROPOWER POLICY MODERNIZATION ACT OF 2017

### H.R. 3043

To modernize hydropower policy, and for other purposes.

*Summary*

H.R. 3043 would modernize the regulatory permitting process and encourage the expansion of hydropower generation by improving administrative efficiency, accountability, and transparency; promoting new hydropower infrastructure; requiring balanced, timely decision making; and reducing duplicative oversight.

*Legislative History*

On May 3, 2017, the Subcommittee on Energy held a hearing on a discussion draft entitled "Hydropower Policy Modernization Act of 2017."

On June 22, 2017, the Subcommittee on Energy met in open markup session to consider the discussion draft and forwarded the bill, as amended, to the full committee by a voice vote.

H.R. 3043 was introduced by Representative Cathy McMorris Rodgers (WA–05) on June 23, 2017, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Oversight and Government Reform. H.R. 3043 was similar to the discussion draft.

On June 28, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 3043 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On October 31, 2017, the Committee on Energy and Commerce reported H.R. 3043, as amended, to the House (H. Rept. 115–377, Part 1), and the bill was placed on the Union Calendar (Calendar No. 277).

On November 8, 2017, H.R. 3043 was considered in the House pursuant to the provisions of H. Res. 607, and the bill, as amended, was passed by a recorded vote of 257 yeas and 166 nays (Roll Call No. 620).

On November 9, 2017, H.R. 3043 was received in the Senate, read twice, and referred to the Committee on Energy and Natural Resources.

No further action was taken on the bill. Some provisions of H.R. 3043 were included in S. 3021, which is discussed elsewhere in this report.

93

ENHANCING STATE ENERGY SECURITY PLANNING AND EMERGENCY
PREPAREDNESS ACT OF 2017

H.R. 3050

To amend the Energy Policy and Conservation Act to provide Federal financial assistance to States to implement, review, and revise State energy security plans, and for other purposes.

*Summary*

H.R. 3050 would authorize the appropriation of $90 million in each of fiscal years 2018 through 2022 for the Department of Energy to provide financial and technical assistance to States for purposes of developing and implementing plans related to energy conservation. The bill would require that States' plans specify strategies for safeguarding energy-related infrastructure from physical and cybersecurity threats, mitigating the risk of disruptions to the supply of energy, and ensuring energy reliability.

*Legislative History*

On June 22, 2017, the Subcommittee on Energy met in open markup session to consider a discussion draft entitled "Enhancing State Energy Security Planning and Emergency Preparedness Act of 2017" and forwarded the bill, without amendment, to the full committee by a voice vote.

H.R. 3050 was introduced by Representative Fred Upton (MI–06) on June 23, 2017, and referred to the Committee on Energy and Commerce. H.R. 3050 was not referred to a subcommittee. H.R. 3050 was similar to the discussion draft.

On June 28, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 3050 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On July 17, 2017, the Committee on Energy and Commerce reported H.R. 3050, as amended, to the House (H. Rept. 115–224, Part 1), and the bill was placed on the Union Calendar (Calendar No. 159).

On July 18, 2017, H.R. 3050 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On July 19, 2017, H.R. 3050 was received in the Senate, read twice, and referred to the Committee on Energy and Natural Resources.

No further action was taken on the bill.

PURPA MODERNIZATION ACT OF 2017

H.R. 4476

To modernize the Public Utility Regulatory Policies Act of 1978, and for other purposes.

*Summary*

H.R. 4476 would create a rebuttable presumption that small power production facilities located one mile or more away from each other are deemed not to be located at the same site, and that facilities located within one mile of each other are deemed to be lo-

94

cated at the same site. If an attempt is made to rebut the presumption by an interested person or party, the legislation provides a list of factors that the Federal Energy Regulatory Commission (FERC) must consider when determining whether a facility is located at the same site as another. The factors are designed to evaluate the nature and relationship between the facilities, as well as the relationship between the owners and operators of the facilities.

H.R. 4476 also would create a new capacity threshold, finding that a qualifying small power production facility with an installed generation capacity of 2.5 megawatts or greater is presumed to have nondiscriminatory access to transmission and interconnection services and wholesale markets, as these services and markets are described in section 210(m)(1) Public Utility Regulatory Policy Act (PURPA).

Finally, H.R. 4476 would allow an electric utility to be relieved of its mandatory purchase obligation if the appropriate State regulatory agency determines that the electric utility: (1) has no need to purchase the output of a small power production facility; or (2) uses integrated resource planning and conducts a competitive resource procurement process that provides an opportunity for qualifying small power production facilities to supply its output to the utility. Under this provision, if relief is granted by the State regulatory agency, the agency must submit a copy of its written determination to FERC.

### Legislative History

H.R. 4476 was introduced by Representative Tim Walberg (MI–07) on November 29, 2017, and referred to the Committee on Energy and Commerce. H.R. 4476 was referred to the Subcommittee on Energy on December 1, 2017.

On January 19, 2018, the Subcommittee on Energy held a hearing on H.R. 4476.

No further action was taken on the bill.

### UNLOCKING OUR DOMESTIC LNG POTENTIAL ACT

#### H.R. 4605

To repeal restrictions on the export and import of natural gas.

### Summary

H.R. 4605 would repeal restrictions on the export and import of natural gas and provide exclusive authority to the Federal Energy Regulatory Commission to approve or deny an application for the siting, construction, expansion, or operation of a facility to export natural gas from the United States to a foreign country or import natural gas from a foreign country, including an LNG terminal.

### Legislative History

H.R. 4605 was introduced by Representative Bill Johnson (OH–06) on December 11, 2017, and referred to the Committee on Energy and Commerce. H.R. 4605 was referred to the Subcommittee on Energy on December 15, 2017.

On January 19, 2018, the Subcommittee on Energy held a hearing on H.R. 4605.

95

No further action was taken on the bill.

## Ensuring Small Scale LNG Certainty and Access Act

### H.R. 4606

To provide that applications under the Natural Gas Act for the importation or exportation of small volumes of natural gas shall be granted without modification or delay.

*Summary*

H.R. 4606 would provide that applications under the Natural Gas Act for the importation or exportation of small volumes of natural gas shall be granted without modification or delay.

*Legislative History*

H.R. 4606 was introduced by Representative Bill Johnson (OH–06) on December 11, 2017, and referred to the Committee on Energy and Commerce. H.R. 4606 was referred to the Subcommittee on Energy on December 15, 2017.

On January 19, 2018, the Subcommittee on Energy held a hearing on H.R. 4606.

On April 18, 2018, the Subcommittee on Health met in open markup session to consider H.R. 4606 and forwarded the bill, without amendment, to the full committee by a recorded vote of 19 yeas and 14 nays.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 4606 and ordered the bill, as amended, favorably reported to the House by a recorded vote of 35 yeas and 15 nays.

On July 18, 2018, the Committee on Energy and Commerce reported H.R. 4606, as amended, to the House (H. Rept. 115–842), and the bill was placed on the Union Calendar (Calendar No. 651).

On September 6, 2018, H.R. 4606 was considered in the House pursuant to the provisions of H. Res. 1049, and the bill, as amended, was passed by a recorded vote of 260 yeas and 146 nays (Roll Call No. 392).

On September 6, 2018, H.R. 4606 was received in the Senate, read twice, and referred to the Committee on Energy and Natural Resources.

No further action was taken on the bill.

## Energy Emergency Leadership Act

### H.R. 5174

To amend the Department of Energy Organization Act with respect to functions assigned to Assistant Secretaries, and for other purposes.

*Summary*

H.R. 5174 would amend the Department of Energy Organization Act to include energy emergency and energy security among the functions that the Secretary shall assign to an Assistant Secretary; provide that these functions include responsibilities with respect to infrastructure, cybersecurity, emerging threats, supply and emer-

96

gency planning, coordination, response, and restoration; and provide that these functions also include the provision of technical assistance, support, and response capabilities with respect to energy security threats, risks, and incidents to State, local, and tribal governments and the energy sector.

*Legislative History*

H.R. 5174 was introduced by Representative Tim Walberg (MI–07) on March 6, 2018, and referred to the Committee on Energy and Commerce. H.R. 5174 was referred to the Subcommittee on Energy on March 9, 2018.

On March 14, 2018, the Subcommittee on Energy held a hearing on H.R. 5174.

On April 18, 2018, the Subcommittee on Energy met in open markup session to consider H.R. 5174 and forwarded the bill, without amendment, to the full committee by a voice vote.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5174 and ordered the bill, without amendment, favorably reported to the House by a voice vote.

On June 18, 2018, the Committee on Energy and Commerce reported H.R. 5174, as amended, to the House (H. Rept. 115–793), and the bill was placed on the Union Calendar (Calendar No. 613).

No further action was taken on the bill.

PIPELINE AND LNG FACILITY CYBERSECURITY PREPAREDNESS ACT

H.R. 5175

To require the Secretary of Energy to carry out a program relating to physical security and cybersecurity for pipelines and liquefied natural gas facilities.

*Summary*

H.R. 5175 would require the Secretary of Energy to carry out a program to coordinate Federal agencies, States, and the energy sector to ensure the security, resiliency, and survivability of natural gas pipelines, hazardous liquid pipelines, and liquefied natural gas facilities. The bill also would require the Secretary to coordinate response and recovery to physical and cyber incidents impacting the energy sector, develop advanced cybersecurity applications and technologies, perform pilot demonstration projects, develop workforce development curricula relating to physical and cybersecurity, and provide mechanisms to help the energy sector evaluate, prioritize, and improve physical and cybersecurity capabilities.

*Legislative History*

H.R. 5175 was introduced by Representative Fred Upton (MI–06) on March 6, 2018, and referred to the Committee on Energy and Commerce. H.R. 5175 was referred to the Subcommittee on Energy on March 9, 2018.

On March 14, 2018, the Subcommittee on Energy held a hearing on H.R. 5175.

97

On April 18, 2018, the Subcommittee on Energy met in open markup session to consider H.R. 5175 and forwarded the bill, as amended, to the full committee by a voice vote.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5175 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On September 13, 2018, the Committee on Energy and Commerce reported H.R. 5175, as amended, to the House (H. Rept. 115–951, Part 1), and the bill was referred sequentially to the Committee on Transportation and Infrastructure.

On September 28, 2018, the Committee on Transportation and Infrastructure was discharged from further consideration of the bill, and the bill was placed on the Union Calendar (Calendar No. 770).

No further action was taken on the bill.

### CYBER SENSE ACT OF 2018

#### H.R. 5239

To require the Secretary of Energy to establish a voluntary Cyber Sense program to identify and promote cyber-secure products intended for use in the bulk-power system, and for other purposes.

*Summary*

H.R. 5239 would direct the Department of Energy to establish a program to identify and promote products and technologies to mitigate the threat of cyber-related disruptions to the bulk power system.

*Legislative History*

H.R. 5239 was introduced by Representative Robert E. Latta (OH–05) on March 9, 2018, and referred to the Committee on Energy and Commerce. H.R. 5239 was referred to the Subcommittee on Energy on March 16, 2018.

On March 14, 2018, the Subcommittee on Energy held a hearing on H.R. 5239.

On April 18, 2018, the Subcommittee on Energy met in open markup session to consider H.R. 5239 and forwarded the bill, as amended, to the full committee by a voice vote.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5239 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 28, 2018, the Committee on Energy and Commerce reported H.R. 5239, as amended, to the House (H. Rept. 115–794), and the bill was placed on the Union Calendar (Calendar No. 614).

No further action was taken on the bill.

98

ENHANCING GRID SECURITY THROUGH PUBLIC-PRIVATE
PARTNERSHIPS ACT

H.R. 5240

To provide for certain programs and developments in the Department of Energy concerning the cybersecurity and vulnerabilities of, and physical threats to, the electric grid, and for other purposes.

*Summary*

H.R. 5240 would direct the Department of Energy (DOE) to establish a program to promote collaborative efforts—among Federal, State, and private stakeholders of the electricity sector—to assess and improve the physical security and cybersecurity of electric utilities. The bill would authorize DOE to provide guidance, training, and technical assistance to utilities and specify other reporting and administrative requirements.

*Legislative History*

H.R. 5240 was introduced by Representative Jerry McNerney (CA–09) on March 9, 2018, and referred to the Committee on Energy and Commerce. H.R. 5240 was referred to the Subcommittee on Energy on March 16, 2018.

On March 14, 2018, the Subcommittee on Energy held a hearing on H.R. 5240.

On April 18, 2018, the Subcommittee on Energy met in open markup session to consider H.R. 5240 and forwarded the bill, as amended, to the full committee by a voice vote.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5240 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 28, 2018, the Committee on Energy and Commerce reported H.R. 5240, as amended, to the House (H.Rept. 115–795), and the bill was placed on the Union Calendar (Calendar No. 615).

No further action was taken on the bill.

ADVANCED NUCLEAR FUEL AVAILABILITY ACT

H.R. 6140

To require the Secretary of Energy to establish and carry out a program to support the availability of HA–LEU for domestic commercial use, and for other purposes.

*Summary*

H.R. 6140 would require the Secretary of Energy to establish a program to make high-assay low enriched uranium (HA–LEU) available for Domestic commercial use and would require the Nuclear Regulatory Commission to report on a list of regulations, certifications, and other regulatory policies necessary for HA–LEU to be commercially available and include a description and timeline to complete such updates.

99

*Legislative History*

On May 22, 2018, the Subcommittee on Energy held a hearing on a discussion draft entitled "Advanced Nuclear Fuel Availability Act."

H.R. 6140 was introduced by Representative Bill Flores (TX–17) on June 19, 2018, and referred to the Committee on Energy and Commerce. H.R. 6140 was similar to the discussion draft. H.R. 6140 was referred to the Subcommittee on Energy on June 21, 2018.

On June 21, 2018, the Subcommittee on Energy met in open markup session to consider H.R. 6140 and forwarded the bill, without amendment, to the full committee by a voice vote.

On July 12, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 6140 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On November 29, 2018, the Committee on Energy and Commerce reported H.R. 6140, as amended, to the House (H.Rept. 115–1056), and the bill was placed on the Union Calendar (Calendar No. 822).

On December 11, 2018, H.R. 6140 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On December 12, 2018, H.R. 6140 was received in the Senate, read twice, and referred to the Committee on Energy and Natural Resources.

No further action was taken on the bill.

TO REQUIRE THE SECRETARY OF ENERGY TO DEVELOP A REPORT ON A PILOT PROGRAM TO SITE, CONSTRUCT, AND OPERATE MICRO-REACTORS AT CRITICAL NATIONAL SECURITY LOCATIONS, AND FOR OTHER PURPOSES

H.R. 6141

To require the Secretary of Energy to develop a report on a pilot program to site, construct, and operate micro-reactors at critical national security locations, and for other purposes.

*Summary*

H.R. 6141 would require the Department of Energy (DOE) to develop a report to assess components of a pilot program to ensure the resilience of critical national security infrastructure by contracting to site, construct, and operate a micro reactor at the Department of Defense (DOD) or DOE sites. The report would include (1) potential DOD or DOE locations to site, construct, and operate a micro-reactor; (2) assessments of different nuclear technologies; (3) a survey of potential nuclear commercial vendors to contract to construct and operate a micro-reactor; (4) options to enter into long-term contracting to finance the pilot program; (5) technology requirements to provide energy resilience to mission-critical functions; (6) cost estimates for a pilot program; (7) a timeline to implement a pilot program; (8) an analysis of DOE and DOD authorities to conduct a pilot program; and, (9) recommendations for any additional or modified authorities.

100

*Legislative History*

On May 22, 2018, the Subcommittee on Energy held a hearing on a discussion draft entitled "To require the Secretary of Energy to develop a report on a pilot program to site, construct, and operate micro-reactors at critical national security locations, and for other purposes."

H.R. 6141 was introduced by Representative Joe Wilson (SC–02) on June 19, 2018, and referred to the Committee on Armed Services. H.R. 6141 was similar to the discussion draft.

On June 21, 2018, the Subcommittee on Energy met in open markup session to consider H.R. 6141 and forwarded the bill, without amendment, to the full Committee by a voice vote.

No further action was taken on the bill.

ADVANCING U.S. CIVIL NUCLEAR COMPETITIVENESS AND JOBS ACT

H.R. 6351

To amend the Atomic Energy Act of 1954 to improve the process by which the Secretary of Energy authorizes the transfer of civilian nuclear commerce technology and assistance, and for other purposes.

*Summary*

H.R. 6351 would require the Secretary of Energy to identify regulatory, policy, legal, and commercial practices impacting civil nuclear commerce, compare those practices to foreign governments, and make recommendations to improve the competitiveness of the U.S. civil nuclear industry, and would direct the Secretary to establish procedures for authorizations of low-proliferation risk reactor activities.

*Legislative History*

On May 22, 2018, the Subcommittee on Energy held a hearing on a discussion draft entitled "To amend the Atomic Energy Act of 1954 to improve the process by which the Secretary of Energy authorizes the transfer of civilian nuclear commerce technology and assistance, and for other purposes."

On June 21, 2018, the Subcommittee on Energy met in open markup session to consider a discussion draft entitled "Advancing U.S. Civil Nuclear Competitiveness and Jobs Act" and forwarded the bill, without amendment, to the full committee by a voice vote.

The discussion draft reviewed by the Subcommittee during the May 22, 2018 hearing was similar to the discussion draft considered by the Subcommittee during the June 21, 2018 markup.

H.R. 6351 was introduced by Representative Bill Johnson (OH–06) on July 12, 2018, and referred to the Committee on Foreign Affairs, and in addition to the Committee on Energy and Commerce. H.R. 6351 was similar to the discussion draft. H.R. 6351 was referred to the Subcommittee on Energy on July 13, 2018.

On July 18, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 6351 and ordered the bill, as amended, favorably reported to the House by a recorded vote of 33 yeas and 16 nays.

No further action was taken on the bill.

## Strategic Petroleum Reserve Reform Act

### H.R. 6511

To authorize the Secretary of Energy to carry out a program to lease underutilized Strategic Petroleum Reserve facilities, and for other purposes.

*Summary*

H.R. 6511 would require the Secretary of Energy to carry out a pilot program to lease underutilized caverns and other facilities of the Strategic Petroleum Reserve.

*Legislative History*

On July 24, 2018, the Subcommittee on Energy held a hearing on a discussion draft entitled "To authorize the Secretary of Energy to carry out a program to lease underutilized Strategic Petroleum Reserve facilities, and for other purposes."

H.R. 6511 was introduced by Representative Joe Barton (TX–06) on July 25, 2018, and referred to the Committee on Energy and Commerce. H.R. 6511 was similar to the discussion draft. H.R. 6511 was referred to the Subcommittee on Energy on July 17, 2018.

On September 6, 2018, the Subcommittee on Energy met in open markup session to consider H.R. 6511 and forwarded the bill, without amendment, to the full committee by a voice vote.

On September 13, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 6511 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On September 25, 2018, the Committee on Energy and Commerce reported H.R. 6511, as amended, to the House (H.Rept. 115–965), and the bill was placed on the Union Calendar (Calendar No. 753).

On September 25, 2018, H.R. 6511 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On September 26, 2018, H.R. 6511 was received in the Senate, read twice, and referred to the Committee on Energy and Natural Resources.

No further action was taken on the bill.

## Energy Star Reform Act of 2017

### DISCUSSION DRAFT

To amend the Energy Policy and Conservation Act to provide for limitation on warranty and revision of certification requirements under the Energy Star program, and for other purposes.

*Summary*

The discussion draft would amend the Energy Star program by establishing the Department of Energy as the permanent lead agency, but allowing the Secretary to delegate responsibilities to the Environmental Protection Agency. It also would subject the program to the requirements of the Administrative Procedure Act.

102

The discussion draft also would create limited liability protections for program participants. Participating companies whose products are found to be out of compliance would be subject to all corrective measures and penalties, but would not be subject to litigation related to the noncompliance.

The discussion draft also would provide limited exceptions from the requirement that all products participating in Energy Star be tested by a third-party certification body. This provision would allow self-certification for makers of electronics products that are in good standing under the program. In addition, it would require that specifications be tailored to all available sizes of products included in the program.

*Legislative History*

On November 7, 2017, the Subcommittee on Energy held a hearing on a discussion draft entitled "Energy Star Reform Act of 2017."

No further action was taken on the bill.

## OVERSIGHT ACTIVITIES

### THE ELECTRICITY SECTOR'S EFFORTS TO RESPOND TO CYBERSECURITY THREATS

On February 1, 2017, the Subcommittee on Energy held a hearing entitled "The Electricity Sector's Efforts to Respond to Cybersecurity Threats." The purpose of the hearing was to examine practices that have been deployed across the electric power sector to address cybersecurity risks and is the steps necessary to ensure the reliability and resilience of the nation's electricity transmission systems. The Subcommittee received testimony from Jerry W. Cauley, President and CEO, North American Electric Reliability Corporation; Scott L. Aaronson, Executive Director, Security and Business Continuity, Edison Electric Institute, on behalf of the Electricity Subsector Coordinating Council; Barbara Sugg, Vice President for IT and Chief Security Officer, Southwest Power Pool, on behalf of ISO/RTO Council; and Chris Beck, Chief Scientist and Vice President for Policy, The Electric Infrastructure Council.

### MODERNIZING ENERGY AND ELECTRICITY DELIVERY SYSTEMS: CHALLENGES AND OPPORTUNITIES TO PROMOTE INFRASTRUCTURE IMPROVEMENT AND EXPANSION

On February 15, 2017, the Subcommittee on Energy held a hearing entitled "Modernizing Energy and Electricity Delivery Systems: Challenges and Opportunities to Promote Infrastructure Improvement and Expansion." The purpose of the hearing was to explore opportunities to improve our nation's economic competitiveness by examining the state of America's energy infrastructure and barriers to innovation, modernization, job creation, and economic growth. The Subcommittee received testimony from Lonnie Stephenson, International President, International Brotherhood of Electrical Workers; Ganesh Bell, Chief Digital Officer and General Manger, Software and Analytics, General Electric; Michael Howard, President and CEO, Electric Power Research Institute; Steve

103

Hauser, CEO, GridWise Alliance; Terry O'Sullivan, General President, Laborers' International Union of North America; Rex Ferry, Owner and CEO, VEC Inc., on behalf of the National Electric Contractors Association; Kim Kann, Citizen; Chad Harrison, Councilman at Large, Standing Rock Sioux Tribe; and Joey Mahmoud, Project Director, Dakota Access Pipeline.

MODERNIZING ENERGY INFRASTRUCTURE: CHALLENGES AND
OPPORTUNITIES TO EXPANDING HYDROPOWER GENERATION

On March 15, 2017, the Subcommittee on Energy held a hearing entitled "Modernizing Energy Infrastructure: Challenges and Opportunities to Expanding Hydropower Generation." The purpose of the hearing was to examine the challenges in modernizing energy infrastructure and the opportunities for expanding hydropower generation. The Subcommittee received testimony from Chuck Hookham, Director of NBD Services, CMS Energy, on behalf of the American Society of Civil Engineers; Kieran Connolly, Vice President of Generation and Asset Management, Bonneville Power Administration; Ramya Swaminathan, CEO, Rye Development, on behalf of the National Hydropower Association; and Dave Steindorf, California Stewardship Director, American Whitewater, on behalf of the Hydropower Reform Coalition.

FEDERAL ENERGY-RELATED TAX POLICY AND ITS EFFECTS ON
MARKETS, PRICES, AND CONSUMERS

On March 29, 2017, the Subcommittee on Energy held a hearing entitled "Federal Energy-Related Tax Policy and its Effects on Markets, Prices, and Consumers." The purpose of the hearing was to examine the Federal energy-related tax policy and how it may affect markets, prices, and consumers. The Subcommittee received testimony from Terry Dinan, Senior Advisor, Congressional Budget Office; Ben Zycher, Resident Scholar and Chair, American Enterprise Institute; Robert Murphy, Senior Economist, Institute for Energy Research; Devin Hartman, Electricity Policy Manager, R Street Institute; Joseph E. Aldy, Associate Professor, Kennedy School of Government, Harvard University; and Steve Clemmer, Director of Energy Research and Analysis, Union of Concerned Scientists.

POWERING AMERICA: EXAMINING THE STATE OF THE ELECTRIC
INDUSTRY THROUGH MARKET PARTICIPANT PERSPECTIVES

On July 18, 2017, the Subcommittee on Energy held a hearing entitled "Powering America: Examining the State of the Electric Industry through Market Participant Perspectives." The purpose of the hearing was to solicit the views of industry stakeholders regarding current issues and developments across the electricity sector. The Subcommittee received testimony from Joseph T. Kelliher, Executive Vice President, Federal Regulatory Affairs, NextEra Energy, Inc; Lisa G. McAlister, Senior Vice President and General Counsel for Regulatory Affairs, American Municipal Power, Inc; Steven Schleimer, Senior Vice President of Government and Regulatory Affairs, Calpine; Jackson E. Reasor, CEO, Old Dominion Electric Cooperative; Tamara Linde, Executive Vice President and

104

General Counsel, Public Service Enterprise Group, Inc.; Kenneth D. Schisler, Vice President of Regulatory and Government Affairs, EnerNOC; and R. Alexander Glenn, Senior Vice President of State and Federal Regulatory Legal Support, Duke Energy.

POWERING AMERICA: A REVIEW OF THE OPERATION AND EFFECTIVE-
NESS OF THE NATION'S WHOLESALE ELECTRICITY MARKETS

On July 26, 2017, the Subcommittee on Energy held a hearing entitled "Powering America: A Review of the Operation and Effectiveness of the Nation's Wholesale Electricity Markets." The purpose of the hearing was to evaluate the nation's wholesale electricity markets. The Subcommittee received testimony from Gordon van Welie, President and CEO, ISO New England; Nick Brown, President and CEO, Southwest Power Pool; Bradley C. Jones, President and CEO, New York ISO; Richard Doying, Executive Vice President, Midcontinent ISO; Cheryl Mele, Senior Vice President and Chief Operating Officer, ERCOT; Keith Casey, Vice President, Market and Infrastructure Development, California ISO; and Craig Glazer, Vice President, Federal Government Policy, PJM Interconnection, LLC.

POWERING AMERICA: REEVALUATING PURPA'S OBJECTIVES AND ITS
EFFECTS ON TODAY'S CONSUMERS

On September 6, 2017, the Subcommittee on Energy held a hearing entitled "Powering America: Reevaluating PURPA's Objectives and its Effects on Today's Consumers." The purpose of the hearing was to solicit the views of industry stakeholders, explore the statute's current effects on consumers, and consider whether reforms to modernize the Public Utilities Regulatory Policies Act of 1978 are appropriate due to changes in the power generation sector. The Subcommittee received testimony from Frank Prager, Vice President of Policy and Federal Affairs, Xcel Energy; Todd G. Glass, Counsel, Solar Energy Industries Association; Kristine Raper, Commissioner, Idaho Public Utilities Commission; Stephan Thomas, Senior Manager, Energy Contracts, Domtar Corporation; Terry Kouba, Vice President of Iowa Operations, Alliant Energy; and Darwin Baas, Director, Department of Public Works for Kent County, Michigan.

POWERING AMERICA: DEFINING RELIABILITY IN A TRANSFORMING
ELECTRICITY INDUSTRY (PART 1)

On September 14, 2017, the Subcommittee on Energy held a hearing entitled "Powering America: Defining Reliability in a Transforming Electricity Industry (Part 1)." The purpose of the hearing was to examine how regulators and the industry are addressing reliability in the United States electricity system. The Subcommittee received testimony from Neil Chatterjee, Chairman, Federal Energy Regulatory Commission; Patricia Hoffman, Acting Under Secretary for Science, Acting Assistant Secretary for the Office of Electricity, Department of Energy; and Gerry Cauley, President and CEO, North American Electric Reliability Corporation.

105

POWERING AMERICA: TECHNOLOGY'S ROLE IN EMPOWERING
CONSUMERS

On September 26, 2017, the Subcommittee on Energy held a
hearing entitled "Powering America: Technology's Role in Empow-
ering Consumers." The purpose of the hearing was to explore the
role advanced energy technologies play in empowering the nation's
electricity consumers. The Subcommittee received testimony from
Arvin Ganesan, Vice President, Federal Policy, Advanced Energy
Economy; Karen Butterfield, Chief Commercial Officer, STEM;
Monica Lamb, Director, Regulated Markets, LO3 Energy; Bryan
Hannegan, President and CEO, Holy Cross Energy; Val Jensen,
Senior Vice President, Customer Operations, ComEd; and Todd
Sandford, Senior Vice President, North America Distributed En-
ergy and Power, Direct Energy.

POWERING AMERICA: DEFINING RELIABILITY IN A TRANSFORMING
ELECTRICITY INDUSTRY (PART 2)

On October 3, 2017, the Subcommittee on Energy held a hearing
entitled "Powering America: Defining Reliability in a Transforming
Electricity Industry (Part 2)." The purpose of the hearing was to
examine how regulators and the industry are addressing the reli-
ability of the United States electricity system. The Subcommittee
received testimony from Marty Durbin, Executive Vice President
and Chief Strategy Officer, American Petroleum Institute; Paul
Bailey, President and CEO, American Coalition for Clean Coal
Electricity; Maria G. Korsnick, President and CEO, Nuclear Energy
Institute; Tom Kiernan, CEO, American Wind Energy Association;
Steve Wright, General Manager, Chelan Public Utility District, on
behalf of National Hydropower Association; Abigail Ross Hopper,
President and CEO, Solar Energy Industries Association; Kelly
Speakes-Backman, CEO, Energy Storage Association; and John
Moore, Director, Sustainable FERC Project, Energy and Transpor-
tation Program, Natural Resource Defense Council.

POWERING AMERICA: CONSUMER-ORIENTED PERSPECTIVES ON
IMPROVING THE NATION'S ELECTRICITY MARKETS

On October 5, 2017, the Subcommittee on Energy held a hearing
entitled "Powering America: Consumer-Oriented Perspectives on
Improving the Nation's Electricity Markets." The purpose of the
hearing was to examine consumer issues, needs, and concerns re-
lated to the nation's electric power systems, and the ability of con-
sumers to participate in the decision-making processes. The Sub-
committee received testimony from Joe Bowring, President, Moni-
toring Analytics, Independent Market Monitor, PJM; Rebecca
Tepper, Chairman, Consumer Liaison Group, ISO–New England
Region; Mark Vanderhelm, Vice President of Energy, Walmart;
John Hughes, President and CEO, Electricity Consumers Resource
Council; Stefanie Brand, Director, New Jersey Division of Rate
Counsel; and Tyson Slocum, Director, Energy Program, Public Cit-
izen.

106

### Department of Energy Missions and Management Priorities

On October 12, 2017, the Subcommittee on Energy held a hearing entitled "Department of Energy Missions and Management Priorities." The purpose of the hearing was to examine the Secretary of Energy's priorities for the Department of Energy. The Subcommittee received testimony from Rick Perry, Secretary, Department of Energy.

### The 2017 Hurricane Season: A Review of Emergency Response and Energy Infrastructure Recovery Efforts

On November 2, 2017, the Subcommittee on Energy held a hearing entitled "The 2017 Hurricane Season: A Review of Emergency Response and Energy Infrastructure Recovery Efforts." The purpose of the hearing was to assess energy infrastructure response and recovery efforts associated with the recent hurricanes in Texas, the Gulf Coast, Florida, Puerto Rico, and the U.S. Virgin Islands. The Subcommittee received testimony from Patricia Hoffman, Acting Under Secretary for Science and Energy, Principal Deputy Assistant Secretary for the Office of Electricity Delivery and Energy Reliability, Department of Energy; Ray Alexander, Director of Contingency Operations, U.S. Army Corps of Engineers; DeAnn Walker, Chairman, Public Utility Commission of Texas; Robert Corbin, Deputy Assistant Secretary for the Office of Petroleum Reserves, Department of Energy; Frank Rusco, Director, Natural Resources and Environment, Government Accountability Office; Thomas Fanning, President and CEO, Southern Company, on behalf of the Electricity Subsector Coordinating Council; Chet Thompson, President and CEO, American Fuel and Petrochemical Manufacturers; Max McBrayer, Chief Supply Officer, RaceTrac Petroleum, Inc.; Ramon Luis Nieves, former Member, Senate of Puerto Rico; Cathy Kennedy, Vice-President, National Nurses United; and Julio Rhymer, Executive Director, Virgin Islands Water and Power Authority.

### Powering America: Examining The Role of Financial Trading in the Electricity Markets

On November 29, 2017, the Subcommittee on Energy held a hearing entitled "Powering America: Examining the Role of Financial Trading in the Electricity Markets." The purpose of the hearing was to examine the impact of financial trading in the nation's wholesale electricity markets and whether market design changes are necessary to ensure the efficiency of financial transactions and to protect against improper trading activity. The Subcommittee received testimony from Wesley Allen, CEO, Red Wolf Energy Trading, on behalf of the Financial Marketers Coalition; Eric Hildebrandt, Director of Market Monitoring, California ISO; Max Minzner, Partner, Jenner and Block LLP; Noha Sidhom, CEO, TPC Energy, on behalf of the Power Trading Institute; Vince Duane, Senior Vice President and General Counsel, PJM Interconnection; Chris Moser, Senior Vice President of Operations, NRG.

### THE IMPACTS AND FUTURE OF NORTH AMERICAN ENERGY TRADE

On December 13, 2017, the Subcommittee on Energy held a hearing entitled "The Impacts and Future of North American Energy Trade." The purpose of the hearing was to examine North American trade and the potential for continued economic growth and job creation in the energy sector. The Subcommittee received testimony from Karen Harbert, President and CEO, Global Energy Institute, U.S. Chamber of Commerce; Chet Thompson, President, American Fuel and Petrochemical Manufacturers; Allen Burchett, Global Head of Strategic Projects, ABB, on behalf of the National Association of Manufacturers; and Alan Krupnick, Senior Fellow, Resources for the Future.

### DOE MODERNIZATION: ADVANCING DOE'S MISSION FOR NATIONAL, ECONOMIC, AND ENERGY SECURITY OF THE UNITED STATES

On January 9, 2018, the Subcommittee on Energy held a hearing entitled "DOE Modernization: Advancing DOE's Mission for National, Economic, and Energy Security of the United States." The purpose of the hearing was to examine plans for modernizing and realigning the Department of Energy to better execute its various missions. The Subcommittee received testimony from Dan Brouillette, Deputy Under Secretary, Department of Energy; Mark Menezes, Under Secretary of Energy, Department of Energy; Paul Dubbar, Under Secretary for Science, Department of Energy; Frank Klotz, Administrator, National Nuclear Security Administration, Under Secretary for Nuclear Security, Department of Energy, Thomas Zacharia, Director, Oak Ridge National Laboratory; Steve Wasserman, Director, Lilly Research Laboratories Collaborative Access Team, Advanced Photon Source, Argonne National Laboratory, on behalf of the Society for Science at User Research Facilities; Donald Levy, Professor Emeritus, University of Chicago and Co-Chair, Panel to Track and Assess Governance and Management Reforms in the Nuclear Security Enterprise; Sarah Lindlaw, Director of Energy and National Security Program, Center for Strategic and International Studies; Rich Powell, Executive Director, ClearPath Foundation; and Dan Reicher, Executive Director, Stanford University Steyer-Taylor Center for Energy Policy and Finance and Senior Fellow, Brookings Institution.

### DOE MODERNIZATION: ADVANCING THE ECONOMIC AND NATIONAL SECURITY BENEFITS OF AMERICA'S

On February 6, 2018, the Subcommittee on Energy held a hearing entitled "DOE Modernization: Advancing the Economic and National Security Benefits of America's Nuclear Infrastructure." The purpose of the hearing was to examine issues associated with the current domestic nuclear supply chain, international nuclear market opportunities, nuclear regulatory and policy matters, and options for future development and deployment of nuclear technologies. The Subcommittee received testimony from Ed McGinnis, Principal Deputy Assistant Secretary, Office of Nuclear Energy, Department of Energy; Art Atkins, Associate Deputy Administrator for Global Material Security, National Nuclear Security Administration; James Owendoff, Principal Deputy Assistant Secretary, Of-

108

fice of Environmental Management, Department of Energy; Victor McCree, Executive Director of Operations, Nuclear Regulatory Commission; Bill Ostendorff, Visiting Professor, U.S. Naval Academy; Mark Peters, Director, Idaho National Laboratory; Maria Korsnick, President and CEO, Nuclear Energy Institute; David Trimble, Director, Natural Resources and Environment, Government Accountability Office; and Ashley Finan, Policy Director, Nuclear Innovation Alliance.

### STATE OF THE NATION'S ENERGY INFRASTRUCTURE

On February 27, 2018, the Subcommittee on Energy held a hearing entitled "State of the Nation's Energy Infrastructure." The purpose of the hearing was to explore challenges and opportunities related to the maintenance, modernization, and development of energy infrastructure. The Subcommittee received testimony from Brian Slocum, Vice President of Operations, ITC Holdings Corporation; Jim Ross, Director, International Brotherhood of Electrical Workers; Brenda Hellyer, Chancellor, San Jacinto College; John Devine, Senior Vice President, HDR Incorporated; Jennifer Chen, Sustainable FERC Project Attorney, Natural Resources Defense Council; and Gary McCarthy, Mayor, City of Schenectady.

### FISCAL YEAR 2019 NUCLEAR REGULATORY COMMISSION BUDGET

On March 20, 2018, the Subcommittee on Energy and the Subcommittee on Environment held a joint hearing entitled "Fiscal Year 2019 Nuclear Regulatory Commission Budget." The purpose of the hearing was to discuss the Nuclear Regulatory Commission's budget proposal for fiscal year 2019, ongoing financial, organizational, management initiatives, NRC rulemakings and regulatory issues, and policy issues associated with advanced nuclear technology licensing. The Subcommittees received testimony from Kristine Svinicki, Chairman, Nuclear Regulatory Commission; Stephen Burns, Commissioner, Nuclear Regulatory Commission; and Jeff Baran, Commissioner, Nuclear Regulatory Commission.

### THE FISCAL YEAR 2019 DEPARTMENT OF ENERGY BUDGET

On April 12, 2018, the Subcommittee on Energy held a hearing entitled "The Fiscal Year 2019 Department of Energy Budget." The purpose of the hearing was to discuss the agency's budget requests for Fiscal Year 2019. The Subcommittee received testimony from Rick Perry, Secretary, Department of Energy.

### OVERSIGHT OF THE FEDERAL ENERGY REGULATORY COMMISSION AND THE FY 2019 BUDGET

On April 17, 2018, the Subcommittee on Energy held a hearing entitled "Oversight of the Federal Energy Regulatory Commission and the FY 2019 Budget." The purpose of the hearing was to review the current priorities of the Federal Energy Regulatory Commission and the laws within the Commission's jurisdiction. The Subcommittee received testimony from Kevin McIntyre, Chairman, Federal Energy Regulatory Commission; Cheryl LaFleur, Commissioner, Federal Energy Regulatory Commission, Neil Chatterjee,

109

Commissioner, Federal Energy Regulatory Commission; and Robert Powelson, Commissioner, Federal Energy Regulatory Commission.

EXAMINING THE STATE OF ELECTRIC TRANSMISSION INFRASTRUCTURE: INVESTMENT, PLANNING, CONSTRUCTION, AND ALTERNATIVES

On May 10, 2018, the Subcommittee on Energy held a hearing entitled "Examining the State of Electric Transmission Infrastructure: Investment, Planning, Construction, and Alternatives." The purpose of the hearing was to review the activities of the electric transmission sector. The Subcommittee received testimony from Tony Clark, Senior Advisor, Wilkinson Barker Knauer, LLP; Edward Krapels, CEO, Anbaric Development Partners; Jennifer Curran, Vice President of System Planning, Midcontinent ISO; Ralph Izzo, CEO, Public Service Enterprise Group, Inc.; John Twitty, Executive Director, Transmission Access Policy Study Group; and Rob Gramlich, President, Grid Strategies, LLC.

IMPROVING THE HYDROPOWER LICENSING PROCESS

On June 7, 2018, the Subcommittee on Energy held a hearing entitled "Improving the Hydropower Licensing Process." The purpose of the hearing was to review progress toward improving interagency coordination for the timely processing of environmental reviews and authorizations for non-Federal hydropower projects. The Subcommittee received testimony from Terry Turpin, Director, Office of Energy Projects, Federal Energy Regulatory Commission; Chris Oliver, Assistant Administrator for Fisheries, National Oceanic and Atmospheric Administration; John Goodin, Acting Director for the Office of Wetlands, Ocean, and Watersheds, Environmental Protection Agency; Greg Sheehan, Principal Deputy Director, Fish and Wildlife Service; and Ryan Fisher, Principal Deputy Assistant Secretary of the Army (Civil Works), Department of Energy.

THE BENEFITS OF TAX REFORM ON THE ENERGY SECTOR AND CONSUMERS

On June 20, 2018, the Subcommittee on Energy held a hearing entitled "The Benefits of Tax Reform on the Energy Sector and Consumers." The purpose of the hearing was to explore the economic impacts of the Tax Cuts and Jobs Act of 2017 on the energy sector. The Subcommittee received testimony from Holly Wade, Director of Research and Policy Analysis, National Federation of Independent Business; Tom Ferguson, CEO, AZZ, Incorporated; Sam McCammon, President, Anamet Electrical, Inc.; and Seth Hanlon, Senior Fellow, Center for American Progress.

THE SHIFTING GEOPOLITICS OF OIL AND GAS

On June 26, 2018, the Subcommittee on Energy held a hearing entitled "The Shifting Politics of Oil and Gas." The purpose of the hearing was to examine the current state of U.S. oil and gas development and production and the associated geopolitical, security, and economic impacts. The Subcommittee received testimony from

110

Daniel Yergin, Vice Chairman, HIS Markit; Harold Hamm, CEO, Continental Resources; Dennis Arriola, Chief Strategy Officer, Sempra Energy; and Kevin Kennedy, Deputy Director of U.S. Climate Initiative, World Resources Institute.

### POWERING AMERICA: THE ROLE OF ENERGY STORAGE IN THE NATION'S ELECTRICITY SYSTEM

On July 18, 2018, the Subcommittee on Energy held a hearing entitled "Powering America: The Role of Energy Storage in the Nation's Electricity System." The purpose of the hearing was to examine the growth of large-scale energy storage in the United States, the unique reliability attributes energy storage provides for the electric grid, and the use and impacts of energy storage within wholesale electricity markets. The Subcommittee received testimony from Zachary Kuznar, Director of CHP Microgrid and Energy Storage Development, Duke Energy; Keith Casey, Vice President of Market and Infrastructure Development, California Independent System Operator; Kiran Kumaraswamy, Director of Market Applications, Fluence; Mark Frigo, Vice President and Head of Energy Storage, E.ON North America; and Kushal Patel, Partner, Energy and Environmental Economics, Inc.

### DOE MODERNIZATION: THE OFFICE OF CYBERSECURITY, ENERGY SECURITY, AND EMERGENCY RESPONSE

On September 27, 2018, the Subcommittee on Energy held a hearing entitled "DOE Modernization: The Office of Cybersecurity, Energy Security, and Emergency Response." The purpose of the hearing was to discuss the Department of Energy's newly established Office of Cybersecurity, Energy Security, and Emergency Response. The Subcommittee received testimony from Karen Evans, Assistant Secretary, Office of Cybersecurity, Energy Security, and Emergency Response, Department of Energy.

### PUBLIC PRIVATE PARTNERSHIPS FOR FEDERAL ENERGY MANAGEMENT

On December 12, 2018, the Subcommittee on Energy held a hearing entitled "Public Private Partnerships for Federal Energy Management." The purpose of the hearing was to examine the status, challenges, and opportunities for increasing energy efficiency savings and energy conservation in Federal facilities and programs through Energy Savings Performance Contracts and Utility Energy Service Contracts. The Subcommittee received testimony from Jack Surash, Acting Deputy Assistant Secretary for Energy and Sustainability, Department of the Army; Kevin Kampschroer, Chief Sustainability Officer and Director, Office of Federal High-Performance Buildings, General Services Administration; Edward Bradley, Executive Director, Office of Asset Enterprise Management, Department of Veterans Affairs; and Leslie Nicholls, Strategic Director of Federal Energy Management Program, Department of Energy.

Subcommittee on Environment

LEGISLATIVE ACTIVITIES

Consolidated Appropriations Act, 2018

PUBLIC LAW 115–141 (DIVISION N AND TITLE XI OF DIVISION S OF H.R. 1625, H.R. 3017)

To amend the State Department Basic Authorities Act of 1956 to include severe forms of trafficking in persons within the definition of transnational organized crime for purposes of the rewards program of the Department of State, and for other purposes.

*Summary*

Division N of H.R. 1625 would amend the brownfields law and would authorize the appropriation of $250 million annually for fiscal years 2019 to 2023 period for the Environmental Protection Agency to provide grants in support of the program. Title XI of division S of H.R. 1625 would address air emissions from animal waste at farms.

*Legislative History*

H.R. 1625 was introduced by Representative Edward R. Royce (CA–39) on March 20, 2018, and referred to the Committee on Foreign Affairs.

On May 22, 2017, H.R. 1625 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On May 23, 2017, H.R. 1625 was received in the Senate, read twice, and referred to the Committee on Foreign Relations.

On February 12, 2018, Senator Bob Corker (TN) reported H.R. 1625, as amended, to the Senate without a written report, and the bill was placed on the Senate Legislative Calendar under General Orders (Calendar No. 311).

On February 28, 2018, H.R. 1625 was considered in the Senate, and the bill, as amended, was passed by unanimous consent.

On March 22, 2018, H.R. 1625 was considered in the House pursuant to the provisions of H.Res. 796, and the bill, with a House amendment to the Senate amendment thereto, was passed by a recorded vote of 256 yeas and 167 nays (Roll Call No. 127).

On March 22 and 23, 2018, H.R. 1625 was received and considered in the Senate, and the bill, without further amendment, was passed by a recorded vote of 65 yeas and 32 nays (Roll Call No. 63).

On March 23, 2018, H.R. 1625 was presented to the President, and the President signed the bill (Public Law 115–141).

112

RECOGNIZING THE PROTECTION OF MOTORSPORTS ACT OF 2017

H.R. 350

To exclude vehicles used solely for competition from certain provisions of the Clean Air Act, and for other purposes.

*Summary*

H.R. 350 would amend the Clean Air Act to allow the modification of a vehicle's air emission controls if the vehicle is used solely for competition.

*Legislative History*

H.R. 350 was introduced by Representative Patrick T. McHenry (NC–10) on January 6, 2017, and referred to the Committee on Energy and Commerce. H.R. 350 was referred to the Subcommittee on Environment on January 25, 2017.

On September 13, 2017, the Subcommittee on Environment held a hearing on H.R. 350.

On November 15, 2017, the Subcommittee on Environment met in open markup session to consider H.R. 350 and forwarded the bill, without amendment, to the full committee by a recorded vote of 13 yeas and 9 nays.

On December 6, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 350 and ordered the bill, without amendment, favorably reported to the House by a recorded vote of 30 yeas and 20 nays.

On December 11, 2018, the Committee on Energy and Commerce reported H.R. 350, without amendment, to the House (H.Rept. 115–1073), and the bill was placed on the Union Calendar (Calendar No. 833).

No further action was taken on the bill.

RELIEF FROM NEW SOURCE PERFORMANCE STANDARDS ACT OF 2017

H.R. 453

To deem the Step 2 compliance date for standards of performance for new residential wood heaters, new residential hydronic heaters, and forced-air furnaces to be May 15, 2023.

*Summary*

H.R. 453 would delay the requirement for compliance with the Environmental Protection Agency's performance standards for new residential wood heaters, hydronic heaters, and forced-air furnaces from 2020 until 2023.

*Legislative History*

H.R. 453 was introduced by Representative Collin C. Peterson (MN–07) on January 11, 2017, and referred to the Committee on Energy and Commerce. H.R. 453 was referred to the Subcommittee on Environment on January 25, 2017.

On September 13, 2017, the Subcommittee on Environment held a hearing on H.R. 453.

On November 15, 2017, the Subcommittee on Environment met in open markup session to consider H.R. 453 and forwarded the

113

bill, without amendment, to the full committee by a recorded vote of 12 yeas and 10 nays.

On December 6, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 453 and ordered the bill, without amendment, favorably reported to the House by a recorded vote of 32 yeas and 21 nays.

On January 10, 2018, the Committee on Energy and Commerce reported H.R. 453, without amendment, to the House (H.Rept. 115–508), and the bill was placed on the Union Calendar (Calendar No. 378).

No further action was taken on the bill. The provisions of H.R. 453 were included in H.R. 1917, which is discussed elsewhere in this report.

Ozone Standards Implementation Act of 2017

H.R. 806

To facilitate efficient State implementation of ground-level ozone standards, and for other purposes.

*Summary*

H.R. 806 would delay the implementation of a final rule promulgated by the Environmental Protection Agency (EPA) in 2015 related to ambient-air-quality standards for ozone emissions. That rule, published in the Federal Register on October 26, 2015, requires States to determine whether different geographical areas in the States are in compliance with Federal limits on ozone pollution and to submit plans to reduce ozone emissions to the EPA starting in 2020. The bill would delay the requirement for States to submit those plans until 2026.

H.R. 806 also would require the EPA to make several changes to its process for reviewing National Ambient Air Quality Standards for ozone and other pollutants. The bill would extend the review cycle for certain pollutants from five years to ten years and would authorize the EPA to consider the technological feasibility of pollution controls when setting standards for safe levels of those pollutants.

Finally, H.R. 806 would require the EPA to conduct a study on the formation of atmospheric ozone and to submit a report to the Congress describing the extent to which foreign sources of air pollution affect the ability of States to comply with Federal pollution limits under the Clean Air Act.

*Legislative History*

H.R. 806 was introduced by Representative Peter Olson (TX–22) on February 1, 2017, and referred to the Committee on Energy and Commerce. H.R. 806 was referred to the Subcommittee on Environment on February 3, 2017.

On March 22, 2017, the Subcommittee on Environment held a hearing on H.R. 806.

On June 15, 2017, the Subcommittee on Environment met in open markup session to consider H.R. 806 and forwarded the bill, without amendment, to the full committee by a recorded vote of 12 yeas and 8 nays.

On June 28, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 806 and ordered the bill, as amended, favorably reported to the House by a recorded vote of 29 yeas and 24 nays.

On July 14, 2017, the Committee on Energy and Commerce reported H.R. 806, as amended, to the House (H.Rept. 115–222), and the bill was placed on the Union Calendar (Calendar No. 157).

On July 18, 2017, H.R. 806 was considered in the House pursuant to the provisions of H.Res. 451, and the bill, as amended, was passed by a recorded vote of 229 yeas and 199 nays (Roll Call No. 390).

On July 19, 2017, H.R. 806 was received in the Senate, read twice, and referred to the Committee on Environment and Public Works.

No further action was taken on the bill.

FARM REGULATORY CERTAINTY ACT

H.R. 848

To amend the Solid Waste Disposal Act to clarify the citizen suit provisions of such Act with respect to manure, or crop residue, that is stored or returned to the soil as fertilizer or soil conditioner by an agricultural operation, and for other purposes.

*Summary*

H.R. 848 would prohibit action against an agricultural operation if the Environmental Protection Agency or a State has commenced and is diligently conducting a civil, criminal, or administrative proceeding against the agricultural operation in order to seek compliance with any applicable permits, standards, regulations, conditions, requirements, prohibitions, or orders related to the storage of manure or crop residue that is to be returned to the soil as fertilizer or the return of manure or crop residue to the soil as fertilizer or soil conditioner.

*Legislative History*

On November 9, 2017, the Subcommittee on Environment held a hearing on a discussion draft entitled "Farm Regulatory Certainty Act."

H.R. 848 was introduced by Representative Dan Newhouse (WA–04) on February 3, 2017, and referred to the Committee on Energy and Commerce. H.R. 848 was referred to the Subcommittee on Environment on February 10, 2017. H.R. 848 was similar to the discussion draft.

No further action was taken on the bill.

PESTICIDE REGISTRATION IMPROVEMENT EXTENSION ACT OF 2018

H.R. 1029

To amend the Federal Insecticide, Fungicide, and Rodenticide Act to improve pesticide registration and other activities under the Act, to extend and modify fee authorities, and for other purposes.

115

## Summary

H.R. 1029 would modify the Federal Insecticide, Fungicide, and Rodenticide Act, which requires the Environmental Protection Agency (EPA) to evaluate the safety of new pesticides entering the market by conducting risk assessments and periodically re-evaluate the health and environmental effects of pesticides. The EPA charges fees to pesticide manufacturers and distributors to cover the cost of performing such registration and reregistration activities. H.R. 1029 would extend the agency's authority to charge those fees.

## Legislative History

H.R. 1029 was introduced by Representative Rodney Davis (IL–13) on February 14, 2017, and referred to the Committee on Agriculture, and in addition to the Committee on Energy and Commerce. H.R. 1029 was referred to the Subcommittee on Environment on February 17, 2017.

On March 20, 2017, the Committee on Agriculture reported H.R. 1029, as amended, to the House (H.Rept. 115–49, Part 1), the Committee on Energy and Commerce was discharged from further consideration, and the bill was placed on the Union Calendar (Calendar No. 29).

On March 20, 2017, H.R. 1029 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On March 21, 2017, H.R. 1029 was received in the Senate, read twice, and referred to the Committee on Agriculture, Nutrition, and Forestry.

On June 29, 2017, Senator Pat Roberts (KS) reported H.R. 1029, as amended, to the Senate without a written report, and the bill was placed on the Senate Legislative Calendar under General Orders (Calendar No. 163).

On June 28, 2018, H.R. 1029 was considered in the Senate, and the bill, as amended, was passed by a voice vote.

No further action was taken on the bill.

## SATISFYING ENERGY NEEDS AND SAVING THE ENVIRONMENT ACT

### H.R. 1119

To establish the bases by which the Administrator of the Environmental Protection Agency shall issue, implement, and enforce certain emission limitations and allocations for existing electric utility steam generating units that convert coal refuse into energy.

## Summary

H.R. 1119 would require the Environmental Protection Agency (EPA) to amend an air emissions standard for certain power plants that are subject to emissions limitations under the agency's Mercury and Air Toxics Standards (MATS). The bill would affect power plants that generate electricity by burning coal refuse (a waste by-product of coal) as their primary fuel source. Specifically, the bill would require the EPA to permit operators of such plants to comply with an alternative emissions standard for controlling acid gases that is less stringent than the current MATS.

116

*Legislative History*

H.R. 1119 was introduced by Representative Keith J. Rothfus (PA–12) on February 16, 2017, and referred to the Committee on Energy and Commerce. H.R. 1119 was referred to the Subcommittee on Environment on February 17, 2017.

On September 13, 2017, the Subcommittee on Environment held a hearing on H.R. 1119.

On November 15, 2017, the Subcommittee on Environment met in open markup session to consider H.R. 1119 and forwarded the bill, as amended, to the full committee by a recorded vote of 13 yeas and 10 nays.

On December 6, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 1119 and ordered the bill, as amended, favorably reported to the House by a recorded vote of 31 yeas and 23 nays.

On January 12, 2018, the Committee on Energy and Commerce reported H.R. 1119, as amended, to the House (H.Rept. 115–514), and the bill was placed on the Union Calendar (Calendar No. 384).

On March 8, 2018, H.R. 1119 was received in the Senate, read twice, and referred to the Committee on Environment and Public Works.

No further action was taken on the bill.

BLOCKING REGULATORY INTERFERENCE FROM CLOSING KILNS ACT OF 2017

H.R. 1917, H.R. 453

To allow for judicial review of any final rule addressing national emission standards for hazardous air pollutants for brick and structural clay products or for clay ceramics manufacturing before requiring compliance with such rule.

*Summary*

H.R. 1917 would extend compliance dates for entities affected by any final rule addressing national emission standards for hazardous air pollutants (NESHAP) under the Clean Air Act for brick, structural clay, and ceramic products manufactured in kilns.

The rules that would be affected are (1) NESHAP for Brick and Structural Clay Products Manufacturing and NESHAP for Clay Ceramics Manufacturing, published in the Federal Register on October 26, 2015; (2) NESHAP for Brick and Structural Clay Products Manufacturing and NESHAP for Clay Ceramics Manufacturing: Correction, published in the Federal Register on December 4, 2015; and (3) any final rule that succeeds or amends those rules.

The NESHAP rule published on October 26, 2015, requires manufacturers of brick, structural clay, and ceramic products to reduce emissions of hazardous air pollutants from kilns.

The bill would extend compliance dates for manufacturers to allow for resolution of the judicial review process. Manufacturers would not need to comply with the rule until a specified period after a judgment becomes final for all legal actions filed during the 60 days after the final rule is published in the Federal Register.

*Legislative History*

H.R. 1917 was introduced by Representative Bill Johnson (OH–06) on April 5, 2017, and referred to the Committee on Energy and Commerce. H.R. 1917 was referred to the Subcommittee on Environment on April 7, 2017.

On September 13, 2017, the Subcommittee on Environment held a hearing on H.R. 1917.

On November 15, 2017, the Subcommittee on Environment met in open markup session to consider H.R. 1917 and forwarded the bill, without amendment, to the full committee by a recorded vote of 12 yeas and 10 nays.

On December 6, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 1917 and ordered the bill, without amendment, favorably reported to the House by a recorded vote of 31 yeas and 23 nays.

On January 10, 2018, the Committee on Energy and Commerce reported H.R. 1917, without amendment, to the House (H.Rept. 115–509), and the bill was placed on the Union Calendar (Calendar No. 379).

On March 7, 2018, H.R. 1917 was considered in the House pursuant to the provisions of H.Res. 762, and the bill, as amended, was passed by a recorded vote of 234 yeas, 180 nays, and 1 present (Roll Call No. 99).

On March 8, 2018, H.R. 1917 was received in the Senate, read twice, and referred to the Committee on Environment and Public Works.

The provisions of H.R. 453, which is discussed elsewhere in this report, were included in H.R. 1917 pursuant to H.Res. 762. No further action was taken on the bill.

### RESPONSIBLE DISPOSAL REAUTHORIZATION ACT OF 2017

#### H.R. 2278

To extend the authorization of the Uranium Mill Tailing Radiation Control Act of 1978 relating to the disposal site in Mesa County, Colorado.

*Summary*

H.R. 2278 would amend the Uranium Mill Tailings Radiation Control Act of 1978 to extend, through September 30, 2048, the government's authority to operate the Cheney disposal cell in Mesa County, Colorado. That facility, administered by the Department of Energy, serves as a repository for mill tailings—radioactive waste generated during the conversion of uranium into fuel for nuclear reactors.

*Legislative History*

H.R. 2278 was introduced by Representative Scott R. Tipton (CO–03) on May 1, 2018, and referred to the Committee on Energy and Commerce. H.R. 2278 was referred to the Subcommittee on Environment on May 5, 2017.

On May 18, 2018, the Subcommittee on Environment held a hearing on H.R. 2278.

118

On June 27, 2018, the Subcommittee on Environment met in open markup session to consider H.R. 2278 and forwarded the bill, as amended, to the full committee by a voice vote.

On July 12, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 2278 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On September 7, 2018, the Committee on Energy and Commerce reported H.R. 2278, as amended, to the House (H.Rept. 115–925), and the bill was placed on the Union Calendar (Calendar No. 718).

On September 25, 2018, H.R. 2278 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On September 26, 2018, H.R. 2278 was received in the Senate, read twice, and placed on the Senate Legislative Calendar under General Orders (Calendar No. 584).

No further action was taken on the bill.

### TO REAUTHORIZE THE WEST VALLEY DEMONSTRATION PROJECT, AND FOR OTHER PURPOSES

H.R. 2389

To reauthorize the West Valley demonstration project, and for other purposes.

*Summary*

H.R. 2389 would amend the West Valley Demonstration Project Act to authorize $75 million for each of fiscal years 2019 through 2028 for a high level radioactive waste management demonstration project at the Western New York Service Center in West Valley, New York.

*Legislative History*

H.R. 2389 was introduced by Representative Tom Reed (NY–23) on May 4, 2017, and referred to the Committee on Energy and Commerce. H.R. 2389 was referred to the Subcommittee on Environment on May 5, 2017.

On May 18, 2018, the Subcommittee on Environment held a hearing on H.R. 2389.

On June 27, 2018, the Subcommittee on Environment met in open markup session to consider H.R. 2389 and forwarded the bill, as amended, to the full committee by a voice vote.

On July 12, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 2389 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On September 7, 2018, the Committee on Energy and Commerce reported H.R. 2389, as amended, to the House (H.Rept. 115–926), and the bill was placed on the Union Calendar (Calendar No. 719).

On September 25, 2018, H.R. 2389 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On September 26, 2018, H.R. 2389 was received in the Senate. No further action was taken on the bill.

119

BROWNFIELDS ENHANCEMENT, ECONOMIC REDEVELOPMENT, AND
REAUTHORIZATION ACT OF 2017

H.R. 3017

To amend the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 to reauthorize and improve the brownfields program, and for other purposes.

*Summary*

H.R. 3017 would authorize the appropriation of $250 million annually over the 2017 to 2021 period for the Environmental Protection Agency to provide grants to clean up brownfields and support State brownfield programs.

*Legislative History*

On April 4, 2017, the Subcommittee on Environment held a hearing on an untitled discussion draft regarding the reauthorization of the Brownfields program.

On June 15, 2017, the Subcommittee on Environment met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full committee by a voice vote.

H.R. 3017 was introduced by Representative David B. McKinley (WV–01) on June 22, 2017, and referred to the Committee on Energy and Commerce and the Committee on Transportation and Infrastructure. H.R. 3017 was referred to the Subcommittee on Environment on March 23, 2017. H.R. 3017 was similar to the discussion draft.

On June 28, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 3017 and ordered the bill, without amendment, favorably reported to the House by a voice vote.

On July 14, 2017, the Committee on Energy and Commerce reported H.R. 3017, without amendment, to the House (H.Rept. 115–303, Part 1). On November 9, 2017, the bill was placed on the Union Calendar (Calendar No. 298).

On November 30, 2017, H.R. 3017 was considered in the House pursuant to the provisions of H.Res. 631, and the bill, as amended, was passed by a recorded vote of 409 yeas and 8 nays (Roll Call No. 649).

On December 1, 2017, H.R. 3017 was received in the Senate.

No further action was taken on the bill.

NUCLEAR WASTE POLICY AMENDMENTS ACT OF 2018

H.R. 3053

To amend the Nuclear Waste Policy Act of 1982, and for other purposes.

*Summary*

Under the Nuclear Waste Policy Act, the Federal government, through the Department of Energy (DOE), is responsible for permanently disposing of the nation's nuclear waste in a geologic repository at Yucca Mountain, Nevada. H.R. 3053 would not change that

120

fundamental requirement, but would temporarily limit DOE's authority to collect certain fees charged to utilities with nuclear plants to cover the costs of disposing of the waste they generate and would authorize DOE to enter into agreements to provide benefits to State, local, and tribal governments that might host or be affected by facilities related to the waste management program.

*Legislative History*

On April 26, 2017, the Subcommittee on Environment held a hearing on a discussion draft entitled "Nuclear Waste Policy Amendments Act of 2017."

On June 15, 2017, the Subcommittee on Environment met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full committee by a voice vote.

H.R. 3053 was introduced by Representative John Shimkus (WV–01) on June 26, 2017, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Natural Resources and Committee on Armed Services. H.R. 3053 was not referred to a subcommittee. H.R. 3017 was similar to the discussion draft.

On June 28, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 3053 and ordered the bill, as amended, favorably reported to the House by a recorded vote of 49 yeas and 4 nays.

On October 19, 2017, the Committee on Energy and Commerce reported H.R. 3053, as amended, to the House (H.Rept. 115–355, Part 1), and the bill was placed on the Union Calendar (Calendar No. 259).

On May 10, 2018, H.R. 3053 was considered in the House pursuant to the provisions of H. Res. 879, and the bill, as amended, was passed by a recorded vote of 340 yeas and 72 nays (Roll Call No. 179).

On May 14, 2018, H.R. 3053 was received in the Senate, read twice, and referred to the Committee on Environment and Public Works.

No further action was taken on the bill.

TO AMEND SECTION 111 OF THE CLEAN AIR ACT TO CLARIFY WHEN A PHYSICAL CHANGE IN, OR CHANGE IN THE METHOD OF OPERATION OF, A STATIONARY SOURCE CONSTITUTES A MODIFICATION, AND FOR OTHER PURPOSES

H.R. 3128

To amend section 111 of the Clean Air Act to clarify when a physical change in, or change in the method of operation of, a stationary source constitutes a modification, and for other purposes.

*Summary*

H.R. 3128 amends the definition of "modification" in section 111 of the Clean Air Act to clarify that a change at an existing source constitutes a modification only when the change increases the source's maximum achievable hourly emission rate of an air pollutant.

121

*Legislative History*

On May 16, 2018, the Subcommittee on Environment held a hearing on a discussion draft entitled "To amend sections 111, 169, and 171 of the Clean Air Act to clarify when a physical change in, or change in the method of operation of, a stationary source constitutes a modification or construction, and for other purposes."

H.R. 3128 was introduced by Representative H. Morgan Griffith (VA–09) on June 29, 2017, and referred to the Committee on Energy and Commerce. H.R. 3128 was referred to the Subcommittee on Environment on June 30, 2017. H.R. 3128 was similar to the discussion draft.

On July 17, 2018, the Subcommittee on Environment met in open markup session to consider H.R. 3128 and forwarded the bill, as amended, to the full committee by a recorded vote of 13 yeas and 9 nays.

No further action was taken on the bill.

DRINKING WATER SYSTEM IMPROVEMENT ACT OF 2017

H.R. 3387

To amend the Safe Drinking Water Act to improve public water systems and enhance compliance with such Act, and for other purposes.

*Summary*

H.R. 3387 would amend the Safe Drinking Water Act (SDWA) to reauthorize $8 billion in capitalization grants for fiscal years 2018 through 2022. H.R. 3387 also would amend the SDWA to improve accuracy and availability of compliance data; enhance asset management practices used by public water systems; expand how States may use Drinking Water State Revolving Funds; provide additional assistance and reforms for disadvantaged communities; enhance the readability of consumer confidence reports; and expand the use of new methods, means, and technology to ensure the integrity of community water systems.

*Legislative History*

On May 19, 2017, the Subcommittee on Energy held a hearing on a discussion draft entitled "Drinking Water System Improvement Act."

On July 13, 2017, the Subcommittee on Environment met in open markup session to consider the discussion draft and forwarded the bill, as amended, to the full committee by a voice vote.

H.R. 3387 was introduced by Gregg Harper (MS–03) on July 25, 2017, and referred to the Committee on Energy and Commerce. H.R. 3387 was similar to the discussion draft.

On July 27, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 3387 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On November 1, 2017, the Committee on Energy and Commerce reported H.R. 3387, as amended, to the House (H. Rept. 115–380), and the bill was placed on the Union Calendar (Calendar No. 279).

No further action was taken on the bill.

122

### Alaska Remote Generator Reliability and Protection Act

S. 1934

To prevent catastrophic failure or shutdown of remote diesel power engines due to emission control devices, and for other purposes.

*Summary*

S. 1934 would require the Environmental Protection Agency (EPA) to revise regulations for certain internal combustion engines used in remote areas of Alaska to allow those engines to emit higher levels of particulate matter compared to current standards. The bill also would require EPA to report to the Congress on options for the federal government to assist remote areas in Alaska with meeting their energy needs in an affordable and reliable manner.

*Legislative History*

S. 1934 was introduced by Senator Dan Sullivan (AK) on October 5, 2017, and referred to the Committee on Environment and Public Works.

On September 18, 2018, Senator John Barrasso (WY) reported S. 1934, as amended, to the Senate without a written report, and the bill was placed on the Senate Legislative Calendar under General Orders (Calendar No. 576).

On November 26, 2018, Senator Barrasso filed a written report (Report 115–379).

On December 4, 2018, S. 1934 was considered in the Senate, and the bill, as amended, was passed by unanimous consent.

S. 2322 was received in the House on December 6, 2018, and held at the desk.

On December 21, 2018, S. 1934 was considered in the House under a motion to suspend the Rules, and the bill, without further amendment, was defeated by a recorded vote of 202 yeas and 171 nays (Roll Call No. 494) (pursuant to clause 1(a) of Rule XV of the Rules of the House, a motion to suspend the Rules requires a vote of two-thirds of the Members voting.).

No further action was taken on the bill.

### 21st Century Transportation Fuels Act

DISCUSSION DRAFT

To amend title II of the Clean Air Act and title II of the Petroleum Marketing Practices Act with respect to high-octane fuels, and for other purposes.

*Summary*

The discussion draft would amend title II of the Clean Air Act and title II of the Petroleum Marketing Practices Act to boost the octane content of the nation's transportation fuels for light duty vehicles and light duty trucks beginning in 2023. The discussion draft also would amend Federal vehicle fuel economy requirements in title 49 of the United States Code and reform the Environmental Protection Agency's Renewable Fuel Standard.

123

*Legislative History*

On December 11, 2018, the Subcommittee on Environment held a hearing on a discussion draft entitled "21st Century Transportation Fuels Act."

No further action was taken on the bill.

## OVERSIGHT ACTIVITIES

### MODERNIZING ENVIRONMENTAL LAWS: CHALLENGES AND OPPORTUNITIES FOR EXPANDING INFRASTRUCTURE AND PROMOTING DEVELOPMENT AND MANUFACTURING

On February 16, 2017, the Subcommittee on Environment held a hearing entitled "Modernizing Environmental Laws: Challenges and Opportunities for Expanding Infrastructure and Promoting Development and Manufacturing." The purpose of the hearing was to examine challenges and opportunities for expanding infrastructure, economic redevelopment, and manufacturing by modernizing certain environmental statutes in the Subcommittee's jurisdiction, including the Clean Air Act, and the Brownfields provisions of the Comprehensive Environmental Response, Compensation, and Liability Act. The Subcommittee received testimony from Ross E. Eisenberg, Vice President, Energy and Resources Policy, National Association of Manufacturers; Jonathan F. Mitchell, Mayor, New Bedford, Massachusetts; Thomas M. Sullivan, Vice President, Small Business Policy, U.S. Chamber of Commerce; Kevin Sunday, Director, Government Affairs, Pennsylvania Chamber of Business and Industry; Melissa Mays, Founder, Water You Fighting For?; and Emily Hammond, George Washington University Law School, on behalf of Center for Progressive Reform.

### REINVESTMENT AND REHABILITATION OF OUR NATION'S SAFE DRINKING WATER DELIVERY SYSTEMS

On March 16, 2017, the Subcommittee on Environment held a hearing entitled "Reinvestment and Rehabilitation of Our Nation's Safe Drinking Water Delivery Systems." The purpose of the hearing was to examine the Nation's drinking water delivery systems and discuss reinvestment and rehabilitation. The Subcommittee received testimony from Randy Ellingboe, Minnesota Department of Health, on behalf of the Association of State Drinking Water Administrators; John Donahue, CEO, North Park Public Water District, Machesney Park, Illinois, on behalf of the American Water Works Association; Rudolph S. Chow, Director, Department of Public Works, Baltimore, Maryland, on behalf of the American Municipal Water Association; Martin A. Kropelnicki, President and CEO, California Water Service Group, on behalf of the National Association of Water Companies; Greg DiLoreto, Chairman, Committee for America's Infrastructure, American Society of Civil Engineers; and Erik Olson, Director, Health and Environment Program, Natural Resources Defense Council.

124

H.R. __, Drinking Water System Improvement Act and Related Issues of Funding, Management, and Compliance Assistance under the Safe Drinking Water Act

On May 19, 2017, the Subcommittee on Environment held a hearing entitled "H.R. __, Drinking Water System Improvement Act and Related Issues of Funding, Management, and Compliance Assistance under the Safe Drinking Water Act." The purpose of the hearing was to examine funding, management, and compliance issues related to drinking water infrastructure. The Subcommittee received testimony from Lisa Daniels, Director, Bureau of Safe Drinking Water, Pennsylvania Department of Environmental Protection, on behalf of the Association of State Drinking Water Administrators; Kurt Vause, Special Projects Director, Anchorage Water and Wastewater Utility, on behalf of the American Water Works Association; Scott Potter, Director of Nashville Metro Water Services, Nashville, Tennessee, on behalf of the Association of Metropolitan Water Agencies; Martin A. Kropelnicki, President and CEO, California Water Service Group, on behalf of the National Association of Water Companies; Steve Fletcher, Manager, Washington County Water Company, Nashville, Illinois, on behalf of the National Rural Water Association; Lynn Thorp, National Campaigns Director, Clean Water Action; and James Proctor, Senior Vice President and General Counsel, McWane, Inc.

Air Quality Impacts of Wildfires: Perspectives of Key Stakeholders

On October 4, 2017, the Subcommittee on Environment held a hearing entitled "Air Quality Impacts of Wildfires: Perspectives of Key Stakeholders." The purpose of the hearing was to explore the impacts of wildfires on air quality and air emissions. The Subcommittee received testimony from John Bailey, Professor, College of Forestry, Oregon State University; Jim Karels, State Forester, Florida; Knox Marshall, Vice President of Resources, Murphy Company; and Christopher Topik, Director, Restoring America's Forest, The Nature Conservancy.

Response and Recovery to Environmental Concerns from the 2017 Hurricane Season

On November 14, 2017, the Subcommittee on Environment held a hearing entitled "Response and Recovery to Environmental Concerns from the 2017 Hurricane Season." The purpose of the hearing was to examine Federal, State, local, and private responses to and recovery efforts from environmental concerns associated with the recent hurricanes in Texas, the Gulf Coast, Florida, Puerto Rico, and the U.S. Virgin Islands. The Subcommittee received testimony from Peter Lopez, Regional Administrator, Region 2, U.S. Environmental Protection Agency; Trey Glenn, Regional Administrator, Region 4, U.S. Environmental Protection Agency; Sam Coleman, Acting Regional Administrator, Region 6, U.S. Environmental Protection Agency; Bryan Shaw, Chairman, Texas Department of Environmental Quality; Mark Lichtenstein, Chief of Staff and Chief Sustainability Officer, College of Environmental Science and Forestry, SUNY; Lyvia N. Rodríguez Del Valle, Executive Director,

125

Corporación del Proyecto ENLACE del Caño Martín Peña; Trent Epperson, Assistant City Manager, City of Pearland, Texas; Garett Thomas Sansom, Associate Director, Institute for Sustainable Communities, Texas A&M University; and Mike Howe, Executive Director, Texas Section of American Water Works Association, on behalf of the American Water Works Association.

### THE MISSION OF THE U.S. ENVIRONMENTAL PROTECTION AGENCY

On December 7, 2017, the Subcommittee on Environment held a hearing entitled "The Mission of the U.S. Environmental Protection Agency." The purpose of the hearing was to discuss the missions of the U.S. Environmental Protection Agency. The Subcommittee received testimony from E. Scott Pruitt, Administrator, U.S. Environmental Protection Agency.

### UPDATE ON THE CORPORATE AVERAGE FUEL ECONOMY PROGRAM (CAFE) AND GREENHOUSE GAS EMISSIONS STANDARDS FOR MOTOR VEHICLES

On December 12, 2017, the Subcommittee on Environment and the Subcommittee on Digital Commerce and Consumer Protection held a joint hearing entitled "Update on the Corporate Average Fuel Economy Program (CAFE) and Greenhouse Gas Emissions Standards for Motor Vehicles." The purpose of the hearing was to discuss the updates on the CAFE program and Greenhouse Gas Emissions standards for motor vehicles. The Subcommittee received testimony from Mitch Bainwol, President and CEO, Alliance of Automobile Manufacturers; John Bozzella, President and CEO, Global Automakers; Forrest McConnell, III, President, McConnell Honda and Acura, Montgomery, Alabama, on behalf of the National Automobile Dealers Association; and Dave Cooke, Senior Vehicle Analyst, Union of Concerned Scientists.

### MODERNIZING THE SUPERFUND CLEANUP PROGRAM

On January 18, 2018, the Subcommittee on Environment held a hearing entitled "Modernizing the Superfund Cleanup Program." The purpose of the hearing was to review the Comprehensive Environmental Response, Compensation, and Liability Act. The Subcommittee received testimony from Barry Breen, Principal Deputy Assistant Administrator of the Office of Land and Emergency Management, Environmental Protection Agency; Steve Cobb, Chief of Land Division, Alabama Department of Environmental Management, on behalf of the Association of State and Territorial Solid Waste Management Officials; J. Winston Porter, Environmental and Energy Consultant; James McKenna, Portland Harbor Policy Analyst, Office of the Governor, State of Oregon; Debbie Mans, Executive Director and Baykeeper, NY/NJ Baykeeper; and Katherine Probst, Independent Consultant.

### NEW SOURCE REVIEW PERMITTING CHALLENGES FOR MANUFACTURING AND INFRASTRUCTURE

On February 14, 2018, the Subcommittee on Environment held a hearing entitled "New Source Review Permitting Challenges for

126

Manufacturing and Infrastructure." The purpose of the hearing was to examine the impact of the Environmental Protection Agency's New Source Review air permitting requirements on manufacturing and infrastructure expansions in the United States. The Subcommittee received testimony from Kevin Sunday, Director of Government Affairs, Pennsylvania Chamber of Business and Industry; Paul Noe, Vice President Public Policy, American Forest and Paper Association and American Wood Council; Stuart Spencer, Associate Director of Office of Air Quality, Arkansas Department of Environmental Quality, on behalf of the Association of Air Pollution Control Agencies; Jeffrey Holmstead, Partner, Bracewell LLP; John Walke, Clean Air Director, Natural Resources Defense Council; and Emily Hammond, Professor, the George Washington University Law School.

### THE FUTURE OF TRANSPORTATION FUELS AND VEHICLES

On March 7, 2018, the Subcommittee on Environment held a hearing entitled "The Future of Transportation Fuels and Vehicles." The purpose of the hearing was to examine how transportation fuel and vehicle choices are likely to change, research on alternative fuels and vehicles and improving the gasoline-powered internal combustion engine and fueling infrastructure, and discuss the impact on consumers of a changing fuels and vehicles marketplace. The Subcommittee received testimony from John Maples, Senior Transportation Analyst, Energy Information Administration; John Farrell, Laboratory Program Manager of Vehicles Technologies, National Renewable Energy Laboratory; Joshua Linn, Senior Fellow, Resources for the Future; Jeremy Martin, Senior Scientist and Fuels Lead of Clean Vehicles Program, Union of Concerned Scientists; and John Eichberger, Executive Director, Fuels Institute.

### FISCAL YEAR 2019 NUCLEAR REGULATORY COMMISSION BUDGET

On March 20, 2018, the Subcommittee on Environment and the Subcommittee on Energy held a joint hearing entitled "Fiscal Year 2019 Nuclear Regulatory Commission Budget." The purpose of the hearing was to discuss the Nuclear Regulatory Commission's budget proposal for fiscal year 2019, ongoing financial, organizational, management initiatives, rulemakings and regulatory issues, and policy issues associated with advanced nuclear technology licensing. The Subcommittees received testimony from Kristine Svinicki, Chairman, Nuclear Regulatory Commission; Stephen Burns, Commissioner, Nuclear Regulatory Commission; and Jeff Baran, Commissioner, Nuclear Regulatory Commission.

### HIGH OCTANE FUELS AND HIGH EFFICIENCY VEHICLES: CHALLENGES AND OPPORTUNITIES

On April 13, 2018, the Subcommittee on Environment held a hearing entitled "High Octane Fuels and High Efficiency Vehicles: Challenges and Opportunities." The purpose of the hearing was to examine the potential for high octane fuels and vehicles, the impacts of a transition to high octane fuels and vehicles on refiners, biofuel, producers, automakers, fuel retailers, and consumers, and

127

the legal and regulatory steps necessary to bring about a transition to high octane fuels and vehicles. The Subcommittee received testimony from Chet Thompson, President, American Fuel and Petrochemicals Manufacturers; Dan Nicholson, Vice President of Global Propulsion Systems, General Motors, on behalf of the United States Council for Automotive Research; Tim Columbus, General Counsel, Society of Gasoline Marketers of America and National Association of Convenience Stores; Paul Jeschke, on behalf of the Illinois Corn Growers Association; and Emily Skor, CEO, Growth Energy.

### THE FISCAL YEAR 2019 ENVIRONMENTAL PROTECTION AGENCY BUDGET

On April 26, 2018, the Subcommittee on Environment held a hearing entitled "The Fiscal Year 2019 Environmental Protection Agency Budget." The purpose of the hearing was to examine the Environmental Protection Agency's budget proposal for fiscal year 2019, rulemakings and regulatory issues, and management and operations reform. The Subcommittee received testimony from Scott Pruitt, Administrator, Environmental Protection Agency.

### SHARING THE ROAD: POLICY IMPLICATIONS OF ELECTRIC AND CONVENTIONAL VEHICLES IN THE YEARS AHEAD

On May 8, 2018, the Subcommittee on Environment held a hearing entitled "Sharing the Road: Policy Implications of Electric and Conventional Vehicles in the Years Ahead." The purpose of the hearing was to examine the implications of the growth in the electric vehicles (EV) sector. The Subcommittee received testimony from Megan McKernan, Manager of Automotive Engineering, Automobile Club of Southern California, on behalf of the American Automobile Association; Mitch Bainwol, President and CEO, Alliance of Automobile Manufacturers; Genevieve Cullen, President, Electric Drive Transportation Association; Bob Dinneen, President and CEO, Renewable Fuels Association; Geisha Williams, President and CEO, Pacific Gas and Electric Company, on behalf of the Edison Electric Institute; Frank Macchiarola, Group Director of Downstream and Industry Operations, American Petroleum Institute; David Reichmuth, Senior Engineer of Clean Vehicles Program, Union of Concerned Scientists; and Dylan Remley, Senior Vice President, Global Partners LP, on behalf of the National Association of Convenience Stores and Society of Gasoline Marketers of America.

### THE CHEMICAL FACILITIES ANTI-TERRORISM STANDARDS PROGRAM (CFATS)—A PROGRESS REPORT

On June 14, 2018, the Subcommittee on Environment held a hearing entitled "The Chemical Facilities Anti-Terrorism Standards Program (CFATS) A Progress Report." The purpose of the hearing was to examine the implementation of the CFATS program by the Department of Homeland Security. The Subcommittee received testimony from David Wulf, Acting Deputy Assistant Secretary for Infrastructure Protection, Department of Homeland Security; Chris Currie, Director of Emergency Management, National Preparedness, and Critical Infrastructure Protection, Homeland Security

128

and Justice Team, Government Accountability Office; Steve Roberts, Principal, Chemical Security Group, LLC; Doug Brown, President and COO, Brown Chemical Company; Mike Wilson, National Director for Occupational and Environmental Health, BlueGreen Alliance; James Conrad, Principal, Conrad Law and Policy Counsel, on behalf of the Society of Chemical Manufacturers and Affiliates; and Yvette Arellano, Policy Research and Grassroots Advocate, Texas Environmental Justices Advocacy Services.

### ADVANCED BIOFUELS UNDER THE RENEWABLE FUEL STANDARD: CURRENT STATUS AND FUTURE PROSPECTS

On June 22, 2018, the Subcommittee on Environment held a hearing entitled "Advanced Biofuels Under the Renewable Fuel Standard: Current Status and Future Prospects." The purpose of the hearing was to examine the advanced biofuels component of the Renewable Fuel Standard. The Subcommittee received testimony from Mike McAdams, President, Advanced Biofuels Association; Derrick Morgan, Senior Vice President, American Fuel and Petrochemical Manufacturers; Robin Puthusseril, Vice President, Greater Chicago Truck Plaza, on behalf of the National Association of Truck Stop Operators; Randy Howard, CEO, Renewable Energy Group, on behalf of the National Biodiesel Board; Brooke Coleman, Executive Director, Advanced Biofuels Business Council; Collin O'Mara, President, National Wildlife Federation; and Luke Morrow, Managing Director, Morrow Energy, on behalf of the Coalition for Renewable Natural Gas.

### EXAMINING RENEWABLE IDENTIFICATION NUMBERS UNDER THE RENEWABLE FUEL STANDARD

On July 25, 2018, the Subcommittee on Environment held a hearing entitled "Examining Renewable Identification Numbers under the Renewable Fuel Standard." The purpose of the hearing was to review how Renewable Identification Numbers (RINs) work and their place within the Renewable Fuel Standard. The Subcommittee received testimony from Brent Yacobucci, Energy and Minerals Manager, Congressional Research Services; Sandra Dunphy, Energy Compliance Director, Weaver and Tidwell, LLP; Paul Niznik, Consultant, Argus Consulting Services; Gabriel Lade, Assistant Professor of Economics, Iowa State University; and Corey Lavinsky, Director of Global Biofuels, S&P Global Platts Analytics.

### PERFLUORINATED CHEMICALS IN THE ENVIRONMENT: AN UPDATE ON THE RESPONSE TO CONTAMINATION AND CHALLENGES PRESENTED

On September 6, 2018, the Subcommittee on Environment held a hearing entitled "Perfluorinated Chemicals in the Environment: An Update on the Response to Contamination and Challenges Presented." The purpose of the hearing was to receive an update on per- and polyfluoroalkyl substances and the effects on the environment. The Subcommittee received testimony from Peter Grevatt, Director, Office of Groundwater and Drinking Water, Environmental Protection Agency; Maureen Sullivan, Deputy Assistant Secretary for Environment, Department of Defense; Lisa Daniels, Director, Bureau of Safe Drinking Water, Pennsylvania Depart-

129

ment of Environmental Protection, on behalf of the Association of State Drinking Water Administrators; Sandeep Burman, Manager, Site Remediation and Redevelopment, Minnesota Pollution Control Agency, on behalf of the Association of State and Territorial Solid Waste Management Officials; Carol Isaacs, Director, Michigan PFAS Action Response Team; Emily Donovan, Co-Founder, Clean Cape Fear; and Erik Olson, Senior Director, Health and Food, Healthy People and Thriving Communities Program, Natural Resources Defense Council.

### AIR QUALITY IMPACTS OF WILDFIRES: MITIGATION AND MANAGEMENT STRATEGIES

On September 13, 2018, the Subcommittee on Environment held a hearing entitled "Air Quality Impacts of Wildfires: Mitigation and Management Strategies." The purpose of the hearing was to explore the available tools and best practices to reduce and manage the air quality impacts of wildfires. The Subcommittee received testimony from Herman Baertschiger, Jr., Senator, Oregon State Senate; Mary Anderson, Mobile and Area Source Program Manager, Air Quality Division, Idaho Department of Environmental Quality; Sonya Germann, State Forester, Montana Department of Natural Resources and Conservation, Forestry Division, on behalf of the National Association of State Foresters; Collin O'Mara, President and CEO, National Wildlife Federation; and Tom Boggus, State Forester and Director, Texas A&M Forest Service, on behalf of the National Association of State Foresters.

SUBCOMMITTEE ON HEALTH

LEGISLATIVE ACTIVITIES

PROVIDING FOR CONGRESSIONAL DISAPPROVAL UNDER CHAPTER 8 OF TITLE 5, UNITED STATES CODE, OF THE FINAL RULE SUBMITTED BY SECRETARY OF HEALTH AND HUMAN SERVICES RELATING TO COMPLIANCE WITH TITLE X REQUIREMENTS BY PROJECT RECIPIENTS IN SELECTING SUBRECIPIENTS

PUBLIC LAW 115–23 (H.J.RES. 43)

Providing for congressional disapproval under chapter 8 of title 5, United States Code, of the final rule submitted by Secretary of Health and Human Services relating to compliance with title X requirements by project recipients in selecting subrecipients.

*Summary*

H.J. Res. 43 would provide that Congress disapproves the rule submitted by the Secretary of Health and Human Services relating to compliance with title X requirements by project recipients in selecting subrecipients (81 Fed. Reg. 91852; December 19, 2016), and such rule shall have no force or effect.

*Legislative History*

H.J. Res. 43 was introduced by Representative Diane Black (TN–06) on January 30, 2017, and referred to the Committee on Energy and Commerce.

On February 16, 2017, H.J. Res. 43 was considered in the House pursuant to the provisions of H. Res. 123, and the resolution, without amendment, by was passed a recorded vote of 230 yeas and 188 nays (Roll Call No. 99).

On February 17, 2017, H.J. Res. 43 was received in the Senate and read twice.

On March 30, 2017, H.J. Res. 43 was considered in the Senate, and the resolution, without amendment, was passed by a recorded vote of 51 yeas and 50 nays (Roll Call No. 101).

On April 5, 2017, H.J. Res. 43 was presented to the President, and the President signed the bill on April 13, 2017 (Public Law 115–23).

FDA REAUTHORIZATION ACT OF 2017

PUBLIC LAW 115–52 (H.R. 2430)

To amend the Federal Food, Drug, and Cosmetic Act to revise and extend the user-fee programs for prescription drugs, medical devices, generic drugs, and biosimilar biological products, and for other purposes.

(131)

132

*Summary*

H.R. 2430 would authorize the Food and Drug Administration (FDA) to continue collecting user fees from regulated industry to supplement Congressional appropriations. Specifically, the bill would revise and reauthorize the Prescription Drug User Fee Act, the Medical Device User Fee Amendments, the Generic Drug User Fee Amendments, and the Biosimilars User Fee Act through 2022. In addition, the bill would make a number of changes to the regulation of medical products, support the development of pediatric drugs and medical devices, and encourage increased generic competition.

*Legislative History*

H.R. 2430 was introduced by Representative Greg Walden (OR–02) on May 16, 2017, and referred to the Committee on Energy and Commerce. H.R. 2430 was referred to the Subcommittee on Health on May 16, 2017.

On May 18, 2017, the Subcommittee on Health met in open markup session to consider H.R. 2430 and forwarded the bill, as amended, to the full committee by a voice vote.

On June 7, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 2430 and ordered the bill, as amended, favorably reported to the House by a recorded vote of 54 yeas and 0 nays.

On July 11, 2017, the Committee on Energy and Commerce reported H.R. 2430, as amended, to the House (H.Rept. 115–201), and the bill was placed on the Union Calendar (Calendar No. 138).

On July 12, 2017, H.R. 2430 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On July 13, 2017, H.R. 2430 was received in the Senate, read the first time, and placed on the Senate Legislative Calendar under Read the First Time.

On July 18, 2017, H.R. 2430 was read the second time and placed on the Senate Legislative Calendar under General Orders (Calendar No. 174).

On August 3, 2017, H.R. 2430 was considered in the Senate, and the bill, without amendment, was passed by a recorded vote of 94 yeas and 1 nay (Roll Call No. 187).

On August 7, 2017, H.R. 2430 was presented to the President, and the President signed the bill on August 18, 2017 (Public Law 115–52).

## EARLY HEARING DETECTION AND INTERVENTION ACT OF 2017

### PUBLIC LAW 115–71 (S. 652, H.R. 1539)

To amend the Public Health Service Act to reauthorize a program for early detection, diagnosis, and treatment regarding deaf and hard-of-hearing newborns, infants, and young children.

*Summary*

S. 652 would amend the Public Health Service Act to reauthorize research and public health activities conducted by the Health Resources and Services Administration and the Centers for Disease

133

Control and Prevention. Those activities are related to early detection, diagnosis, and treatment of hearing loss in newborns, infants, and young children.

*Legislative History*

H.R. 1539 was introduced by Representative Brett Guthrie (KY–02) on March 15, 2017, and referred to the Committee on Energy and Commerce. H.R. 1539 was referred to the Subcommittee on Health on March 17, 2017.

No further action was taken on the bill.

S. 652 was introduced by Senator Rob Portman (OH) on March 15, 2017, read twice, and referred to the Committee on Health, Education, Labor, and Pensions. S. 652 was the Senate companion bill to H.R. 1539.

On May 1, 2017, Senator Lamar Alexander (TN) reported S. 652, as amended, to the Senate without a written report, and the bill was placed on the Senate Legislative Calendar under General Orders (Calendar No. 44).

On September 6, 2017, S. 652 was considered in the Senate, and the bill, as amended, was passed by unanimous consent.

On October 3, 2017, S. 652 was considered in the House under a motion to suspend the Rules, and the bill, without further amendment, was passed by a voice vote.

On October 6, 2017, S. 652 was presented to the President, and the President signed the bill on October 18, 2017 (Public Law 115–71).

NATIONAL CLINICAL CARE COMMISSION ACT

PUBLIC LAW 115–80 (S. 920, H.R. 309)

To establish a National Clinical Care Commission.

*Summary*

S. 920 would establish a National Clinical Care Commission within the Department of Health and Human Services (HHS) to evaluate Federal programs related to clinical care for individuals with a complex metabolic or autoimmune disease such as diabetes. Commission members would include medical professionals, advocates, and representatives from many agencies within HHS, the Department of Veterans Affairs, the Department of Defense, and the Department of Agriculture. Within three years of convening, the Commission would be required to issue a report on its findings, including suggested improvements for Federally-funded clinical and educational initiatives focused on the targeted populations.

*Legislative History*

H.R. 309 was introduced by Representative Anna G. Eshoo (CA–18) on January 5, 2017, and referred to the Committee on Energy and Commerce.

On January 9, 2017, H.R. 309 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On January 10, 2017, H.R. 309 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill.

S. 920 was introduced by Senator Jeanne Shaheen (NH) on April 24, 2017, read twice, and referred to the Committee on Health, Education, Labor, and Pensions. S. 920 was the Senate companion bill to H.R. 309.

On May 1, 2017, Senator Lamar Alexander (TN) reported S. 920 to the Senate without a written report, and the bill was placed on the Senate Legislative Calendar under General Orders (Calendar No. 47).

On September 6, 2017, S. 920 was considered in the Senate, and the bill, as amended, was passed by unanimous consent.

On October 11, 2017, S. 920 was considered in the House under a motion to suspend the Rules, and the bill, without further amendment was passed by a voice vote.

On October 24, 2017, S. 920 was presented to the President, and the President signed the bill on November 2, 2017 (Public Law 115–80).

PROTECTING PATIENT ACCESS TO EMERGENCY MEDICATIONS ACT OF 2017

PUBLIC LAW 115–83 (H.R. 304)

To amend the Controlled Substances Act with regard to the provision of emergency medical services.

*Summary*

H.R. 304 would authorize the Department of Justice to register and collect additional registration fees from certain providers of emergency medical services to dispense controlled substances. H.R. 304 also would require the Government Accountability Office to report to Congress on the potential abuse of certain controlled substances.

*Legislative History*

H.R. 304 was introduced by Representative Richard Hudson (NC–08) on January 5, 2017, and referred to the Committee on Energy and Commerce, and in addition to the Committee on the Judiciary.

On January 9, 2017, H.R. 304 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a recorded vote of 404 yeas and 0 nays (Roll Call No. 25).

On January 10, 2017, H.R. 304 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

On October 24, 2017, H.R. 304 was considered in the Senate, and the bill, as amended, was passed by unanimous consent.

On November 2, 2017, Representative Hudson asked unanimous consent to take from the Speaker's table H.R. 304 and to agree to the Senate amendment. The bill, as amended, was passed by unanimous consent.

135

On November 7, 2017, H.R. 304 was presented to the President, and the President signed the bill on November 17, 2017 (Public Law 115–83).

TO AMEND THE FEDERAL FOOD, DRUG, AND COSMETIC ACT TO AUTHORIZE ADDITIONAL EMERGENCY USES FOR MEDICAL PRODUCTS TO REDUCE DEATHS AND SEVERITY OF INJURIES CAUSED BY AGENTS OF WAR, AND FOR OTHER PURPOSES

PUBLIC LAW 115–92 (H.R. 4374)

To amend the Federal Food, Drug, and Cosmetic Act to authorize additional emergency uses for medical products to reduce deaths and severity of injuries caused by agents of war, and for other purposes.

*Summary*

Section 716 ("Additional emergency uses for medical products to reduce deaths and severity of injuries caused by agents of war") of H.R. 2810, National Defense Authorization Act for Fiscal Year 2018 (Public Law 115–91), amended 10 U.S.C. 1107a to authorize the Secretary of Defense to approve the emergency use of medical products, outside the United States, in situations in which an emergency use of an unapproved product or an emergency unapproved use of an approved product cannot be authorized under section 564 of the Federal Food, Drug, and Cosmetic Act (FFDCA, 21 U.S.C. 360bbb-3) because the emergency does not involve an actual or threatened attack with a biological, chemical, radiological, or nuclear agent.

As noted in the conference report to that bill (H.Rept. 115–404), this provision was included in the Senate amendment to H.R. 2810. The House bill contained no similar provision, and the House receded to the Senate position.

As a result, the Committee on Energy and Commerce was not given an opportunity to address this matter through regular order. The conference report to H.R. 2810 stated that:

> The conferees agree that traditional pathways to the Food and Drug Administration's approval and licensure of critical medical products for combat casualty care are too slow to allow for rapid insertion and use of these products on the battlefield. The conferees believe this provision could lead to even higher survival rates from severe combat wounds and injuries suffered by servicemembers. (p. 851)

However, as conferees to this provision, the Committee on Energy and Commerce believes that the provision would expose servicemembers to unnecessary risks.

The Food and Drug Administration (FDA) oversees the world's preeminent regulatory process for the approval of medical products. By contrast, the Department of Defense (DOD) has no experience in evaluating and approving medical products. The Committee on Energy and Commerce believes that, given DOD's inexperience, DOD could approve medical products that harm servicemembers.

136

After the conference report to H.R. 2810 was finalized, but before it was considered by the House, the Committee on Energy and Commerce introduced H.R. 4374, which would repeal section 716 and authorize the emergency use of an otherwise unapproved medical product if DOD determines that there is a military emergency involving an agent that may cause imminently life-threatening and specific risk to U.S. forces. If a military emergency is determined to exist, the bill would allow DOD to request that the FDA expedite certain procedures for approving medical products that would be reasonably likely to diagnose, prevent, treat, or mitigate such risk. The FDA must take specified actions to facilitate such a request by DOD.

H.R. 4374 is a commonsense approach to protect servicemembers by leveraging the FDA's over 100 years of experience in evaluating and approving medical products.

*Legislative History*

H.R. 4374 was introduced by Representative Greg Walden (OR–02) on November 13, 2017, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Armed Services. H.R. 4374 was not referred to a subcommittee.

On November 15, 2017, H.R. 4374 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On November 16, 2017, H.R. 4374 was considered in the Senate, and the bill, without amendment, was passed by unanimous consent.

On December 12, 2017, H.R. 4374 was presented to the President, and the President signed the bill on December 12, 2017 (Public Law 115–92).

HELPING ENSURE ACCESS FOR LITTLE ONES, TODDLERS, AND HOPEFUL YOUTH BY KEEPING INSURANCE DELIVERY STABLE ACT OR THE HEALTHY KIDS ACT

(Making further continuing appropriations for the fiscal year ending September 30, 2018, and for other purposes)

PUBLIC LAW 115–120 (DIVISION C OF H.R. 195, S.CON.RES. 33, H.R. 3921, DIVISION B OF H.R. 3922)

To extend funding for the Children's Health Insurance Program, and for other purposes.

*Summary*

Division C of H.R. 195 would extend Federal funding for the Children's Health Insurance Program for six years, extend funding for the Childhood Obesity Demonstration Project and the Pediatric Quality Measures Program; extend funding through for specified outreach and enrollment grants and make eligible for such grants "parent-mentors" trained to assist families with children who have no health-insurance coverage; maintain enhanced Federal Matching Assistance Percentage for child-health assistance at a reduced percentage-point increase; and direct the Centers for Medicare and

137

Medicaid Services shall make additional funding available to States for specified activities related to mechanized claims systems.

*Legislative History*

H.R. 3921 was introduced by Representative Michael C. Burgess (TX–26) on October 3, 2017, and referred to the Committee on Energy and Commerce, and in addition to Committee on Ways and Means. H.R. 3921 was not referred to a subcommittee.

On October 4, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 3921 and ordered the bill, as amended, favorably reported to the House by a recorded vote of 28 yeas and 23 nays.

On October 19, 2017, the Committee on Energy and Commerce reported H.R. 3921, as amended, to the House (H.Rept. 115–358, Part 1), and the bill was placed on the Union Calendar (Calendar No. 263).

No further action was taken on the bill. Provisions similar to H.R. 3921 were included in H.R. 3922 as division B, which is discussed elsewhere in this report.

H.R. 195 was introduced by Representative Steve Russell (OK–05) on January 3, 2017, and referred to the Committee on Oversight and Government Reform, and in addition to the Committee on House Administration.

On October 19, 2017, the Committee on Oversight and Government Reform reported H.R. 195, without amendment, to the House (H.Rept. 115–128, Part 1), was discharged from further consideration of the bill, and the bill was placed on the Union Calendar (Calendar No. 78).

On May 17, 2017, H.R. 195 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On May 18, 2017, H.R. 195 was received in the Senate, read twice, and referred to the Committee on the Homeland Security and Governmental Affairs.

On November 8, 2017, Senator Ron Johnson (WI) reported H.R. 195, without amendment, to the Senate with a written report (Report 115–184), and the bill was placed on the Senate Legislative Calendar under General Orders (Calendar No. 261).

On December 21, 2018, H.R. 195 was considered in the Senate, and the bill, as amended, was passed by unanimous consent.

On January 18, 2018, H.R. 195 was considered in the House pursuant to the provisions of H.Res. 696, and the bill, with an amendment to the Senate amendment, was passed by a recorded vote of 230 yeas and 197 nays (Roll Call No. 33). (Pursuant to the provisions of H.Res. 696, H.R. 3921, as reported by the Committee on Energy and Commerce, was incorporated in to H.R. 195 as division C.).

On January 22, 2018, H.R. 195 was considered in the Senate, and the bill, with an amendment to the House amendment to the Senate amendment, was passed by a recorded vote of 81 yeas and 18 nays (Roll Call No. 16).

On January 22, 2018, H.R. 195 was considered in the House pursuant to a unanimous consent request made by Representative Pete Sessions (TX–32), and the bill was passed, with the Senate

138

amendment to the House amendment to the Senate amendment thereto, by a recorded vote of 266 yeas and 150 nays (Roll Call No. 44).

On January 22, 2018, H.R. 195 was presented to the President, and the President signed the bill (Public Law 115–120).

BIPARTISAN BUDGET ACT OF 2018

PUBLIC LAW 115–123 (DIVISION E OF H.R. 1892, H.R. 829, H.R. 938, H.R. 1148, H.R. 2465, H.R. 3120, H.R. 3163, H.R. 3245, H.R. 3263, H.R. 3271, H.R. 3394, H.R. 3900, H.R. 3917, H.R. 3922, H.R. 3924, H.R. 3926, H.R. 3935, H.R. 4430)

To amend title 4, United States Code, to provide for the flying of the flag at half-staff in the event of the death of a first responder in the line of duty.

*Summary*

Division E of H.R. 1892 would provide $7.8 billion to fully fund Community Health Centers for two years. The act also would provide $6 billion to combat the opioid crisis and improve mental health care—$3 billion for fiscal year 2018 and $3 billion for fiscal year 2019—to combat the substance abuse epidemic, including enhanced State grants (with additional assistance for those States with the highest mortality rates and tribes), public prevention programs, and law enforcement activities related to substance abuse and mental health programs. In addition, $2 billion would be directed to the National Institutes of Health—$1 billion for fiscal year 2018 and $1 billion for fiscal year 2019—to support additional scientific research. Additional provisions would repeal the Independent Payment Advisory Board, delay reductions in Medicaid Disproportionate Share Hospital payments, permanently repeal Medicare therapy caps, extend the Children's Health Insurance Program from six to ten years, extend the Maternal, Infant, and Early Childhood Home Visiting Program for five years, and increase Medicaid caps for Puerto Rico and U.S. Virgin Islands for two years.

*Legislative History*

H.R. 1892 was introduced by Representative John B. Larson (CT–01) on April 4, 2017, and referred to the Committee on the Judiciary.

On May 15, 2017, the Committee on the Judiciary reported H.R. 1892, without amendment, to the House (H.Rept. 115–119), and the bill was placed on the Union Calendar (Calendar No. 72).

On May 16 and 18, 2017, H.R. 1892 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a recorded vote of 411 yeas and 1 nay (Roll Call No. 266).

On May 22, 2017, H.R. 1892 was received in the Senate, read twice, and referred to the Committee on the Judiciary.

On November 28, 2018, H.R. 1892 was considered in the Senate, and the bill, as amended, was passed by unanimous consent.

On February 6, 2018, H.R. 1892 was considered in the House pursuant to the provisions of H.Res. 727, and the bill was passed,

139

with an amendment to the Senate amendment, by a recorded vote of 245 yeas and 182 nays (Roll Call No. 60).

On February 9, 2018, H.R. 1892 was considered in the Senate, and the bill, with an amendment to the House amendment to the Senate amendment, was passed by a recorded vote of 71 yeas and 28 nays (Roll Call No. 31). (The Senate amendment to the House amendment to the Senate amendment incorporated provisions within the jurisdiction of the Committee on Energy and Commerce in to H.R. 1892 as division E).

On February 9, 2018, H.R. 1892 was considered in the House pursuant to the provisions of H.Res. 734, and the bill, with the Senate amendment to the House amendment to the Senate amendment thereto, was passed by a recorded vote of 240 yeas and 186 nays (Roll Call No. 69).

On February 9, 2018, H.R. 1892 was presented to the President, and the President signed the bill (Public Law 115–123).

TRICKETT WENDLER, FRANK MONGIELLO, JORDAN MCLINN, AND MATTHEW BELLINA RIGHT TO TRY ACT OF 2018

PUBLIC LAW 115–176 (S. 204, H.R. 5247)

To authorize the use of unapproved medical products by patients diagnosed with a terminal illness in accordance with State law, and for other purposes.

*Summary*

H.R. 5247 would amend the Federal Food, Drug, and Cosmetic Act to exempt from specified requirements and restrictions, the provision of certain unapproved, investigational drugs to a terminally ill patient who has exhausted approved treatment options and is unable to participate in a clinical trial involving the drugs. The manufacturer or sponsor of an eligible investigational drug would be required to report annually to the Food and Drug Administration on any use of the drug in accordance with these provisions.

The bill would limit the liability of a sponsor, manufacturer, prescriber, or dispenser that provides or declines to provide, an eligible investigational drug to an eligible patient in accordance with the bill.

*Legislative History*

H.R. 5247 was introduced by Representative Brian K. Fitzpatrick (PA–08) on March 13, 2018, and referred to the Committee on Energy and Commerce.

On March 13, 2018, H.R. 5247 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was defeated by a recorded vote of 259 yeas and 140 nays (Roll Call No. 102) (pursuant to clause 1(a) of Rule XV of the Rules of the House, a motion to suspend the Rules requires a vote of two-thirds of the Members voting.).

On March 21, 2018, H.R. 5247 was considered in the House pursuant to the provisions of H.Res. 787, and the bill, without amendment, was passed by a recorded vote of 267 yeas and 149 nays (Roll Call No. 121).

140

On March 22, 2018, H.R. 5247 was received in the Senate. On March 23, 2018, H.R. 5247 was read the first time and placed on the Senate Legislative Calendar under Read the First Time. On April 9, 2018, H.R. 5247 was read the second time and placed on the Senate Legislative Calendar under General Orders (Calendar No. 367).

No further action was taken on the bill.

S. 204 was introduced by Senator Ron Johnson (WI) on January 24, 2017, and referred to the Committee on Health, Education, Labor, and Pensions.

On August 3, 2017, S. 204 was considered in the Senate, and the bill, as amended, was passed by unanimous consent.

S. 204 was received in the House on August 4, 2017, and referred to the Committee on Energy and Commerce. S. 204 was referred to the Subcommittee on Health on August 11, 2017.

On October 3, 2017, the Subcommittee on Health held a hearing on S. 204.

On May 22, 2018, S. 204 was considered in the House pursuant to the provisions of H.Res. 905, and the bill, without further amendment, was passed by a recorded vote of 250 yeas and 169 nays (Roll Call No. 214).

On May 24, 2018, S. 204 was presented to the President, and the President signed the bill on May 30, 2018 (Public Law 115–176).

CHILDHOOD CANCER SURVIVORSHIP, TREATMENT, ACCESS, AND RESEARCH ACT OF 2018 OR THE CHILDHOOD CANCER STAR ACT

PUBLIC LAW 115–180 (S. 292)

To maximize discovery, and accelerate development and availability, of promising childhood cancer treatments, and for other purposes.

*Summary*

S. 292 would amend the Public Health Service Act to authorize the Director of the National Institutes of Health to support the collection of donated biospecimens from children, adolescents, and young adults with cancer. The bill would allow the Secretary of Health and Human Services (HHS) to establish pilot programs that develop or evaluate systems for monitoring and caring for childhood cancer survivors. S. 292 also would direct the Secretary of HHS, through the Centers for Disease Control and Prevention, to award grants to States to update and improve childhood cancer registries.

*Legislative History*

S. 292 was introduced by Senator Jack Reed (RI) on February 2, 2017, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

On March 12, 2018, Senator Lamar Alexander (TN) reported S. 292, as amended, to the Senate without a written report, and the bill was placed on the Senate Legislative Calendar under General Orders (Calendar No. 342).

On March 22, 2018, S. 292 was considered in the Senate, and the bill, as amended, was passed by unanimous consent.

141

On March 26, 2018, S. 292 was received in the House and referred to the Committee on Energy and Commerce. S. 292 was referred to the Subcommittee on Health on March 30, 2018.

On May 22, 2018, S. 292 was considered in the House under a motion to suspend the Rules, and the bill, without further amendment, was passed by a voice vote.

On May 24, 2018, S. 292 was presented to the President, and the President signed the bill on June 5, 2018 (Public Law 115–180).

FIREFIGHTER CANCER REGISTRY ACT OF 2017

PUBLIC LAW 115–194 (H.R. 931)

To require the Secretary of Health and Human Services to develop a voluntary registry to collect data on cancer incidence among firefighters.

*Summary*

H.R. 931 would require the Secretary of Health and Human Services, through the Centers for Disease Control and Prevention, to develop and maintain a voluntary registry to monitor cancer incidence among firefighters. The registry would incorporate relevant information—including demographic characteristics, number and type of fire incidents attended, and health information relevant to cancer incidence—that would be linked to State cancer registries.

*Legislative History*

H.R. 931 was introduced by Representative Chris Collins (NY–27) on February 7, 2017, and referred to the Committee on Energy and Commerce. H.R. 931 was referred to the Subcommittee on Health on February 10, 2017.

On May 10, 2017, the Subcommittee on Health held a hearing on H.R. 931.

On June 29, 2017, the Subcommittee on Health met in open markup session to consider H.R. 931 and forwarded the bill, as amended, to the full committee by a voice vote.

On July 27, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 931 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On September 8, 2017, the Committee on Energy and Commerce reported H.R. 931, as amended, to the House (H.Rept. 115–301), and the bill was placed on the Union Calendar (Calendar No. 215).

On September 12, 2017, H.R. 931 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On September 13, 2017, H.R. 931 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

On May 10, 2018, H.R. 931 was considered in the Senate, and the bill, as amended, was passed by unanimous consent.

On June 22, 2018, Representative Collins (NY) asked unanimous consent to take from the Speaker's table H.R. 931 and to agree to the Senate amendment. The bill, as amended, was passed by unanimous consent.

On June 27, 2018, H.R. 931 was presented to the President, and the President signed the bill on July 7, 2018 (Public Law 115–194).

TO AMEND TITLE XIX OF THE SOCIAL SECURITY ACT TO DELAY THE REDUCTION IN FEDERAL MEDICAL ASSISTANCE PERCENTAGE FOR MEDICAID PERSONAL CARE SERVICES FURNISHED WITHOUT AN ELECTRONIC VISIT VERIFICATION SYSTEM, AND FOR OTHER PURPOSES

PUBLIC LAW 115–222 (H.R. 6042)

To amend title XIX of the Social Security Act to delay the reduction in Federal medical assistance percentage for Medicaid personal care services furnished without an electronic visit verification system, and for other purposes.

*Summary*

H.R. 6042 would delay by one year the Medicaid Federal matching rate reduction that is scheduled to take effect for States that fail to require an electronic visit verification system for personal care services. The bill also would exclude specified services from such verification system requirements, including inpatient hospital services and 24-hour residential group home services.

*Legislative History*

H.R. 6042 was introduced by Representative Brett Guthrie (KY–02) on June 7, 2018, and referred to the Committee on Energy and Commerce.

On June 19, 2018, H.R. 6042 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 20, 2018, H.R. 6042 was received in the Senate, read twice, and referred to the Committee on Finance.

On July 17, 2018, H.R. 6042 was considered in the Senate, and the bill, without amendment, was passed by unanimous consent.

On July 19, 2018, H.R. 6042 was presented to the President, and the President signed the bill on July 30, 2018 (Public Law 115–222).

ANIMAL DRUG AND ANIMAL GENERIC DRUG USER FEE AMENDMENTS OF 2018

PUBLIC LAW 115–234 (H.R. 5554)

To amend the Federal Food, Drug, and Cosmetic Act to reauthorize user fee programs relating to new animal drugs and generic new animal drugs.

*Summary*

H.R. 5554 would authorize the Food and Drug Administration (FDA) to collect and spend fees to cover the cost of expedited approval for the development and marketing of certain drugs for use in animals. H.R. 5554 also would extend through fiscal year 2023 the FDA's existing approval processes and fee programs for brand-name and generic veterinary drugs.

143

*Legislative History*

On March 14, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "Animal Drug and Animal Generic Drug User Fee Amendments of 2018."

H.R. 5554 was introduced by Representative Markwayne Mullin (OK–02) on April 18, 2018, and referred to the Committee on Energy and Commerce. H.R. 5554 was similar to the discussion draft. H.R. 5554 was referred to the Subcommittee on Health on April 25, 2018.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider H.R. 5554 and forwarded the bill, as amended, to the full Committee by a voice vote.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5554 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On July 16, 2018, H.R. 5554 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On July 17, 2018, H.R. 5554 was received in the Senate and read twice.

On July 31, 2018, H.R. 5554 was considered in the Senate, and the bill, without amendment, was passed by unanimous consent.

On August 3, 2018, H.R. 5554 was presented to the President, and the President signed the bill on August 14, 2018 (Public Law 115–234).

### DR. BENJY FRANCES BROOKS CHILDREN'S HOSPITAL GME SUPPORT REAUTHORIZATION ACT OF 2018

#### PUBLIC LAW 115–241 (H.R. 5385)

To amend the Public Health Service Act to reauthorize the program of payments to children's hospitals that operate graduate medical education programs, and for other purposes.

*Summary*

H.R. 5385 would amend the Public Health Service Act to authorize payments to children's hospitals for operating training programs that provide graduate medical education.

*Legislative History*

H.R. 5385 was introduced by Representative Gene Green (TX–29) on March 22, 2018, and referred to the Committee on Energy and Commerce. H.R. 5385 was referred to the Subcommittee on Health on March 23, 2018.

On May 23, 2018, the Subcommittee on Health held a hearing on H.R. 5385.

On June 27, 2018, the Subcommittee on Health met in open markup session to consider H.R. 5385 and forwarded the bill, as amended, to the full Committee by a voice vote.

On July 12, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5385 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On July 23, 2018, H.R. 5385 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On July 24, 2018, H.R. 5385 was received in the Senate and read twice.

On September 4, 2018, H.R. 5385 was considered in the Senate, and the bill, without amendment, was passed by unanimous consent.

On September 6, 2018, H.R. 5385 was presented to the President, and the President signed the bill on September 18, 2018 (Public Law 115–241).

## FAA REAUTHORIZATION ACT OF 2018

### [Sports Medicine Licensure Clarity Act of 2018]

#### PUBLIC LAW 115–254 (DIVISION A OF H.R. 302, H.RES. 1082)

To provide protections for certain sports medicine professionals, to reauthorize Federal aviation programs, to improve aircraft safety certification processes, and for other purposes.

*Summary*

Division A of H.R. 302 would allow licensed athletic trainers and other sports medicine professionals to provide medical services when traveling with athletic teams without obtaining licenses to practice in other States. H.R. 302 also would require insurers to cover the liability of those professionals when they provide medical services for their athletes outside of their home State.

*Legislative History*

H.R. 302 was introduced by Representative Brett Guthrie (KY–02) on January 5, 2017, and referred to the Committee on Energy and Commerce.

On January 9, 2017, H.R. 302 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On January 10, 2017, H.R. 302 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

On September 6, 2018, H.R. 302 was considered in the Senate, and the bill, as amended, was passed by unanimous consent.

On September 6, 2018, H.Res. 1082 was considered in the House under a motion to suspend the Rules, and the resolution was passed, without amendment, by a recorded vote of 398 yeas and 23 nays (Roll Call No. 407).

Upon the adoption of H.Res. 1082, the House was considered to have taken from the Speaker's table H.R. 302, with the Senate amendment thereto, and to have concurred in the Senate amendment with an amendment.

On October 3, 2018, H.R. 302 was considered in the Senate, and the bill, without further amendment, was passed by a recorded vote of 93 yeas and 6 nays (Roll Call No. 320).

145

On October 4, 2018, H.R. 302 was presented to the President, and the President signed the bill on October 5, 2018 (Public Law 115–254).

SUBSTANCE USE-DISORDER PREVENTION THAT PROMOTES OPIOID RECOVERY AND TREATMENT FOR PATIENTS AND COMMUNITIES ACT OR THE SUPPORT FOR PATIENTS AND COMMUNITIES ACT

PUBLIC LAW 115–271 (H.R. 6, H.RES. 1099, H.R. 449, H.R. 1925, H.R. 2851, H.R. 3192, H.R. 3331, H.R. 3528, H.R. 3692, H.R. 4005, H.R. 4275, H.R. 4284, H.R. 4684, H.R. 4998, H.R. 5002, H.R. 5009, H.R. 5041, H.R. 5102, H.R. 5176, H.R. 5197, H.R. 5228, H.R. 5261, H.R. 5272, H.R. 5327, H.R. 5329, H.R. 5353, H.R. 5473, H.R. 5477, H.R. 5483, H.R. 5580, H.R. 5582, H.R. 5583, H.R. 5587, H.R. 5590, H.R. 5603, H.R. 5605, H.R. 5675, H.R. 5685, H.R. 5687, H.R. 5752, SECTION 2 OF H.R. 5776, H.R. 5789, H.R. 5796, H.R. 5797, H.R. 5798, H.R. 5799, H.R. 5800, H.R. 5801, H.R. 5804, H.R. 5806, H.R. 5808, H.R. 5809, H.R. 5810, H.R. 5811, H.R. 5812, S. 916)

To provide for opioid use disorder prevention, recovery, and treatment, and for other purposes.

*Summary*

H.R. 6 would help in Federal and State efforts to advance treatment and recovery initiatives, improve prevention, protect communities, and bolster efforts to fight deadly illicit synthetic drugs like fentanyl.

*Legislative History*

H.R. 6 was introduced by Representative Greg Walden (OR–02) on June 13, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means and Committee on the Judiciary.

On June 19, 2018, H.R. 6 was considered in the House pursuant to the provisions of H.Res. 949, and the bill, as amended, was passed by a recorded vote of 396 yeas and 14 nays (Roll Call No. 288).

On June 25, 2018, H.R. 6 was received in the Senate, read the first time, and placed on the Senate Legislative Calendar under Read the First Time. On June 26, 2018, H.R. 6 was read the second time and placed on the Senate Legislative Calendar under General Orders (Calendar No. 485).

On September 17, 2018, H.R. 6 was considered in the Senate, and the bill, as amended, was passed by a recorded vote of 99 yeas and 1 nay (Roll Call No. 210).

On September 28, 2018, H.Res. 1099 was considered in the House under a motion to suspend the Rules, and the resolution was passed, without amendment, by a recorded vote of 393 yeas and 8 nays (Roll Call No. 415).

Upon the adoption of H.Res. 1099, the House was considered to have taken from the Speaker's table H.R. 6, with the Senate amendment thereto, and to have concurred in the Senate amendment with an amendment.

On October 3, 2018, H.R. 6 was considered in the Senate, and the bill, without further amendment, was passed by a recorded vote of 98 yeas and 1 nay (Roll Call No. 221).

146

On October 16, 2018, H.R. 6 was presented to the President, and the President signed the bill on October 24, 2018 (Public Law 115–271).

## KNOW THE LOWEST PRICE ACT OF 2018

### PUBLIC LAW 115–262 (S. 2553, H.R. 6733)

To amend title XVIII of the Social Security Act to prohibit Medicare Part D plans from restricting pharmacies from informing individuals regarding the prices for certain drugs and biologicals.

*Summary*

S. 2553 prohibits a prescription drug plan under Medicare or Medicare Advantage from restricting a pharmacy from informing an enrollee of any difference between the price, copayment, or coinsurance of a drug under the plan and a lower price of the drug without health-insurance coverage.

*Legislative History*

On September 5, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend title XXVII of the Public Health Service Act and title XVIII of the Social Security Act to prohibit group health plans, health insurance issuers, prescription drug plan sponsors, and Medicare Advantage organizations from limiting certain information on drug prices."

On September 7, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full committee by a voice vote.

H.R. 6733 was introduced by Representative Earl L. "Buddy" Carter (GA–01) on September 7, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means. H.R. 6733 was similar to the discussion draft.

No further action was taken on the bill.

S. 2553 was introduced by Senator Debbie Stabenow (MI) on March 14, 2018, read twice, and referred to the Committee on Finance. S. 2553 was the Senate companion bill to H.R. 6733.

On September 4, 2018, S. 2553 was considered in the Senate, and the bill, as amended, was passed by unanimous consent.

On September 4, 2018, S. 2553 was received in the House and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means.

On September 25, 2018, S. 2553 was considered in the House under a motion to suspend the Rules, and the bill, without further amendment, was passed by a voice vote.

October 4, 2018, S. 2553 was presented to the President, and the President signed the bill on October 10, 2018 (Public Law 115–262).

## PATIENT RIGHT TO KNOW DRUG PRICES ACT

### PUBLIC LAW 115–263 (S. 2554, H.R. 6733)

To ensure that health insurance issuers and group health plans do not prohibit pharmacy providers from providing certain information to enrollees.

147

*Summary*

S. 2554 would prohibit certain insurers from restricting pharmacists' ability to share information about drug prices and require certain patent agreements to be filed with the Federal government.

*Legislative History*

On September 5, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend title XXVII of the Public Health Service Act and title XVIII of the Social Security Act to prohibit group health plans, health insurance issuers, prescription drug plan sponsors, and Medicare Advantage organizations from limiting certain information on drug prices."

On September 7, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full committee by a voice vote.

H.R. 6733 was introduced by Representative Earl L. "Buddy" Carter (GA–01) on September 7, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means. H.R. 6733 was similar to the discussion draft. No further action was taken on the bill.

S. 2554 was introduced by Senator Susan M. Collins (ME) on March 14, 2018, read twice, and referred to the Committee on Health, Education, Labor, and Pensions. S. 2554 was the Senate companion bill to H.R. 6733.

On July 31, 2018, Senator Lamar Alexander (TN) reported S. 2554, as amended, to the Senate without a written report, and the bill was placed on the Senate Legislative Calendar under General Orders (Calendar No. 549).

On September 17, 2017, S. 2554 was considered in the Senate, and the bill, as amended, was passed by a recorded vote of 98 yeas and 2 nays (Roll Call No. 209).

On September 25, 2018, S. 2554 was considered in the House under a motion to suspend the Rules, and the bill, without further amendment, was passed by a voice vote.

October 1, 2018, S. 2554 was presented to the President, and the President signed the bill on October 10, 2018 (Public Law 115–263).

### ACTION FOR DENTAL HEALTH ACT OF 2017

#### PUBLIC LAW 115–302 (H.R. 2422)

To amend the Public Health Service Act to improve essential oral health care for low-income and other underserved individuals by breaking down barriers to care, and for other purposes.

*Summary*

H.R. 2422 would amend the Public Health Service Act to reauthorize and amend grant programs conducted by the Health Resources and Services Administration and the Centers for Disease Control and Prevention to provide assistance to States and tribal governments to increase access to oral health care services.

148

*Legislative History*

On May 17, 2017, the Subcommittee on Health held a hearing on a discussion draft entitled "Action for Dental Health Act of 2017."

H.R. 2422 was introduced by Representative Robin L. Kelly (IL–02) on May 15, 2017, and referred to the Committee on Energy and Commerce. H.R. 2422 was referred to the Subcommittee on Health on May 19, 2017. H.R. 2422 was similar to the discussion draft.

On June 29, 2017, the Subcommittee on Health met in open markup session to consider H.R. 2422 and forwarded the bill, as amended, to the full committee by a voice vote.

On July 27, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 2422 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On September 25, 2017, the Committee on Energy and Commerce reported H.R. 2422, as amended, to the House (H.Rept. 115–328), and the bill was placed on the Union Calendar (Calendar No. 238).

On February 26, 2018, H.R. 2422 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a recorded vote of 387 yeas and 13 nays (Roll Call No. 82).

On February 27, 2018, H.R. 2422 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

On October 11, 2018, H.R. 2422 was considered in the Senate, and the bill, as amended, was passed by a voice vote.

On November 28, 2018, H.R. 2422 was considered in the House under a motion to suspend the Rules and concur in the Senate amendment to H.R. 2422, and the bill, without further amendment, was passed by a voice vote.

On November 29, 2018, H.R. 2422 was presented to the President, and the President signed the bill on December 11, 2018 (Public Law 115–302).

### IMPROVING ACCESS TO MATERNITY CARE ACT

#### PUBLIC LAW 115–320 (H.R. 315)

To amend the Public Health Service Act to distribute maternity care health professionals to health professional shortage areas identified as in need of maternity care health services.

*Summary*

Under current law, maternity health care professionals may participate in the National Health Service Corps (NHSC) Loan Repayment Program, in which eligible licensed health care providers may earn up to $50,000 toward student loans in exchange for a two-year commitment at a NHSC approved site in a Health Professional Shortage Area (HPSA). They also can participate in the NHSC Scholarship Program while in medical school. The NHSC Scholarship Program pays tuition, fees, other educational costs, and provides a living stipend in return for at least a two-year commitment at NHSC approved site in a HPSA. Maternity health care professionals participate in the NHSC under the primary care designa-

149

tion. H.R. 315 would improve data collection under the existing HPSA to improve maternity health care professional placement in areas with the greatest need for their services.

*Legislative History*

H.R. 315 was introduced by Representative Michael C. Burgess (TX–26) on January 5, 2017, and referred to the Committee on Energy and Commerce.

On January 9, 2017, H.R. 315 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a recorded vote of 405 yeas and 0 nays (Roll Call No. 24).

On January 10, 2017, H.R. 315 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

On December 6, 2018, H.R. 315 was considered in the Senate, and the bill, without amendment, was passed by unanimous consent.

On December 11, 2018, H.R. 315 was presented to the President, and the President signed the bill on December 17, 2018 (Public Law 115–320).

SICKLE CELL DISEASE RESEARCH, SURVEILLANCE, PREVENTION, AND TREATMENT ACT OF 2017

PUBLIC LAW 115–327 (S. 2465, H.R. 2410)

To amend the Public Health Service Act to reauthorize a sickle cell disease prevention and treatment demonstration program and to provide for sickle cell disease research, surveillance, prevention, and treatment.

*Summary*

S. 2465 would authorize the Secretary of Health and Human Services, through the Centers for Disease Control and Prevention, to conduct research, surveillance, and public health activities related to sickle cell disease and other heritable blood disorders. In addition, the bill would authorize grants for the prevention and treatment of complications from sickle cell disease.

*Legislative History*

H.R. 2410 was introduced by Representative Danny K. Davis (IL–07) on May 11, 2017, and referred to the Committee on Energy and Commerce. H.R. 2410 was referred to the Subcommittee on Health on May 12, 2017.

On May 18, 2017, the Subcommittee on Health met in open markup session to consider H.R. 2410 and forwarded the bill, without amendment, to the full committee by a voice vote.

On June 7, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 2410 and ordered the bill, without amendment, favorably reported to the House by a voice vote.

On October 19, 2017, the Committee on Energy and Commerce reported H.R. 2410, without amendment, to the House (H.Rept.

150

115–354), and the bill was placed on the Union Calendar (Calendar No. 258).

On February 27, 2018, H.R. 2410 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill.

S. 2465 was introduced by Senator Tim Scott (SC) on February 28, 2018, read twice, and referred to the Committee on Health, Education, Labor, and Pensions. S. 2465 was the Senate companion bill to H.R. 2410.

On August 15, 2018, Senator Lamar Alexander (TN) reported S. 2465, as amended, to the Senate without a written report, and the bill was placed on the Senate Legislative Calendar under General Orders (Calendar No. 553).

On October 11, 2018, S. 2456 was considered in the Senate, and the bill, as amended, was passed by unanimous consent.

On October 16, 2018, S. 2456 was received in the House and held at the desk.

On December 11, 2018, S. 2456 was considered in the House under a motion to suspend the Rules, and the bill, without further amendment, was passed by a voice vote.

December 13, 2018, S. 2456 was presented to the President, and the President signed the bill on December 18, 2018 (Public Law 115–327).

PREMATURITY RESEARCH EXPANSION AND EDUCATION FOR MOTHERS WHO DELIVER INFANTS EARLY (PREEMIE) REAUTHORIZATION ACT OF 2018

PUBLIC LAW 115–328 (S. 3029)

To revise and extend the Prematurity Research Expansion and Education for Mothers who deliver Infants Early Act (PREEMIE Act).

*Summary*

S. 3029 would amend provisions of the Public Health Service Act that authorize the Centers for Disease Control and Prevention to conduct research and education activities relating to preterm labor and delivery and infant mortality. The bill also would authorize several reports and an interagency working group to improve coordination of and provide recommendations for programs and activities relating to preterm birth and infant mortality.

*Legislative History*

S. 3029 was introduced by Senator Lamar Alexander (TN) on June 7, 2018, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

On July 9, 2018, Senator Lamar Alexander (TN) reported S. 3029, as amended, to the Senate without a written report, and the bill was placed on the Senate Legislative Calendar under General Orders (Calendar No. 503).

On September 12, 2018, S. 3029 was considered in the Senate, and the bill, as amended, was passed by unanimous consent.

151

On September 17, 2018, S. 3029 was received in the House and referred to the Committee on Energy and Commerce.

On December 11, 2018, S. 3029 was considered in the House under a motion to suspend the Rules, and the bill, without further amendment, was passed by a recorded vote of 406 yeas and 3 nays (Roll Call No. 429).

December 13, 2018, S. 3029 was presented to the President, and the President signed the bill on December 18, 2018 (Public Law 115–328).

CONGENITAL HEART FUTURES REAUTHORIZATION ACT OF 2017

PUBLIC LAW 115–XX (H.R. 1222)

To amend the Public Health Service Act to coordinate Federal congenital heart disease research efforts and to improve public education and awareness of congenital heart disease, and for other purposes.

*Summary*

H.R. 1222 would reauthorize research and surveillance efforts to study and track congenital heart disease (CHD), enhance activities at the Centers for Disease Control and Prevention, award grants to study CHD further, and direct the National Institutes of Health to report on their ongoing research efforts in this space.

*Legislative History*

H.R. 1222 was introduced by Representative Gus M. Bilirakis (FL–12) on February 27, 2017, and referred to the Committee on Energy and Commerce. H.R. 1222 was referred to the Subcommittee on Health on March 3, 2017.

On May 18, 2017, the Subcommittee on Health met in open markup session to consider H.R. 1222 and forwarded the bill, as amended, to the full committee by a voice vote.

On June 7, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 1222 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On September 25, 2017, the Committee on Energy and Commerce reported H.R. 1222, as amended, to the House (H. Rept. 115–329), and the bill was placed on the Union Calendar (Calendar No. 239).

On February 26, 2018, H.R. 1222 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a recorded vote of 394 yeas and 7 nays (Roll Call No. 81).

On February 27, 2018, H.R. 1222 was received in the Senate, read twice, and referred to the Committee on the Health, Education, Labor, and Pensions.

On August 15, 2018, Senator Lamar Alexander (TN) reported H.R. 1222, as amended, to the Senate without a written report, and the bill was placed on the Senate Legislative Calendar under General Orders (Calendar No. 555).

On December 12, 2018, H.R. 1222 was considered in the Senate, and the bill, as amended, was passed by unanimous consent.

152

On December 19, 2018, H.R. 1222 was considered in the House under a motion to suspend the Rules and concur in the Senate amendment to H.R. 1222, and the bill, without further amendment, was passed by a recorded vote of 355 yeas and 7 nays (Roll Call No. 436).

December 21, 2018, H.R. 1222 was presented to the President, and the President signed the bill (Public Law 115–____).

## PREVENTING MATERNAL DEATHS ACT OF 2017

### PUBLIC LAW 115–XX (H.R. 1318)

To support States in their work to save and sustain the health of mothers during pregnancy, childbirth, and in the postpartum period, to eliminate disparities in maternal health outcomes for pregnancy-related and pregnancy-associated deaths, to identify solutions to improve health care quality and health outcomes for mothers, and for other purposes.

*Summary*

H.R. 1318 would reauthorize programs at the Centers for Disease Control and Prevention that promote safe motherhood, and authorize support for States and tribes in establishing or operating maternal mortality review committees. These committees would be tasked with identifying the trends and risk factors that contribute to deaths in new or expectant mothers, and developing recommendations for appropriate interventions to reduce maternal deaths in the future.

*Legislative History*

H.R. 1318 was introduced by Representative Jaime Herrera Beutler (WA–03) on March 2, 2017, and referred to the Committee on Energy and Commerce.

On December 11, 2018, H.R. 1318 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On December 12, 2018, H.R. 1318 was received in the Senate, and read twice. On December 13, 2018, H.R. 1318 was considered in the Senate, and the bill, without amendment, was passed by unanimous consent.

On December 19, 2018, H.R. 1318 was presented to the President, and the President signed the bill on December 21, 2018 (Public Law 115–____).

## TRAUMATIC BRAIN INJURY PROGRAM REAUTHORIZATION ACT OF 2018

### PUBLIC LAW 115–XX (H.R. 6615)

To reauthorize the Traumatic Brain Injury program.

*Summary*

H.R. 6615 would reauthorize the Centers for Disease Control and Prevention's Traumatic Brain Injury (TBI) Program. It also would authorize resources to launch a National Concussion Surveillance System to collect and disseminate information about TBI.

*Legislative History*

H.R. 6615 was introduced by Representative Bill Pascrell, Jr. (NJ–09) on July 26, 2018, and referred to the Committee on Energy and Commerce.

On December 11, 2018, H.R. 6615 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On December 12, 2018, H.R. 6615 was received in the Senate, read twice, and placed on the Senate Legislative Calendar under General Orders (Calendar No. 730).

On December 18, 2018, H.R. 6615 was considered in the Senate, and the bill, as amended, was passed by unanimous consent.

On December 19, 2018, H.R. 6615 was considered in the House under a motion to suspend the Rules and concur in the Senate amendment to H.R. 6615, and the bill, without further amendment, was passed by a recorded vote of 352 yeas and 6 nays (Roll Call No. 437).

December 21, 2018, H.R. 6615 was presented to the President, and the President signed the bill on December 21, 2018 (Public Law 115–____).

## SOAR TO HEALTH AND WELLNESS ACT OF 2017

### PUBLIC LAW 115–XX (H.R. 767)

To establish the Stop, Observe, Ask, and Respond to Health and Wellness Training pilot program to address human trafficking in the health care system.

*Summary*

H.R. 767 would expand and codify the Stop, Observe, Ask, and Respond (SOAR) training program at the Administration for Children and Families, Office on Trafficking in Persons, which provides health care professionals training on how to identify and appropriately treat human trafficking victims.

*Legislative History*

H.R. 767 was introduced by Representative Steve Cohen (TN–09) on January 31, 2017, and referred to the Committee on Energy and Commerce.

On May 17, 2017, the Subcommittee on Health held a hearing on H.R. 767.

On June 29, 2017, the Subcommittee on Health met in open markup session to consider H.R. 767 and forwarded the bill, as amended, to the full Committee by a voice vote.

On July 27, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 767 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On September 25, 2017, the Committee on Energy and Commerce reported H.R. 767, as amended, to the House (H.Rept. 115–327), and the bill was placed on the Union Calendar (Calendar No. 237).

On February 26, 2018, H.R. 767 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

154

On February 27, 2018, H.R. 767 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

On December 20, 2018, H.R. 767 was considered in the Senate, and the bill, as amended, was passed by voice vote.

On December 20, 2018, H.R. 767 was considered in the House under a motion to suspend the Rules and concur in the Senate amendment to H.R. 767, and the bill, without further amendment, was passed by a recorded vote of 386 yeas and 6 nays (Roll Call No. 462).

December 21, 2018, H.R. 767 was presented to the President, and the President signed the bill on December 31, 2018 (Public Law 115–____).

### INFRASTRUCTURE FOR ALZHEIMER'S ACT

#### PUBLIC LAW 115–XX (S. 2076, H.R. 4256)

To amend the Public Health Service Act to authorize the expansion of activities related to Alzheimer's disease, cognitive decline, and brain health under the Alzheimer's Disease and Healthy Aging Program, and for other purposes.

*Summary*

S. 2076 would authorize grants to support public health awareness and evidence-based practices related to Alzheimer's disease and related dementia.

*Legislative History*

S. 2076 was introduced by Senator Susan M. Collins (ME) on November 6, 2017, and referred to the Committee on Health, Education, Labor, and Pensions.

On November 29, 2018, Senator Lamar Alexander (TN) reported S. 2076, as amended, to the Senate without a written report, and the bill was placed on the Senate Legislative Calendar under General Orders (Calendar No. 694).

On December 12, 2018, S. 2076 was considered in the Senate, and the bill, as amended, was passed by a voice vote.

On December 13, 2018, S. 2076 was received in the House and held at the desk.

On December 19, 2018, S. 2076 was considered in the House under a motion to suspend the Rules, and the bill, without further amendment, was passed by a recorded vote of 361 yeas and 3 nays (Roll Call No. 438).

December 27, 2018, S. 2076 was presented to the President, and the President signed the bill on December 31, 2018 (Public Law 115–____).

### STATE OFFICES OF RURAL HEALTH REAUTHORIZATION ACT OF 2018

#### PUBLIC LAW 115–XX (S. 2278, H.R. 5641)

To amend the Public Health Service Act to provide grants to improve health care in rural areas.

155

*Summary*

S. 2278 would reauthorize a program to provide $12.5 million annually through fiscal year 2022 in grants to state offices of rural health.

*Legislative History*

S. 2278 was introduced by Senator Pat Roberts (KS) on January 4, 2018, and referred to the Committee on Health, Education, Labor, and Pensions.

On March 23, 2018, Senator Lamar Alexander (TN) reported S. 2278, as amended, to the Senate without a written report, and the bill was placed on the Senate Legislative Calendar under General Orders (Calendar No. 344).

On July 24, 2018, S. 2278 was considered in the Senate, and the bill, as amended, was passed by unanimous consent.

On July 25, 2018, S. 2278 was received in the House and referred to the Committee on Energy and Commerce. S. 2278 was not referred to a subcommittee.

On December 19, 2018, S. 2278 was considered in the House under a motion to suspend the Rules, and the bill, without further amendment, was passed by a recorded vote of 357 yeas and 4 nays (Roll Call No. 439).

December 27, 2018, S. 2076 was presented to the President, and the President signed the bill on December 31, 2018 (Public Law 115–____).

### RECOGNIZING THE IMPORTANCE AND EFFECTIVENESS OF TRAUMA-INFORMED CARE

#### H. RES. 443

Recognizing the importance and effectiveness of trauma-informed care.

*Summary*

H. Res. 443 would recognize the importance, effectiveness, and need for trauma-informed care among existing programs and agencies at the Federal level; and the resolution would encourage the use and practice of trauma-informed care within the Federal Government, its agencies, and the United States Congress.

*Legislative History*

H. Res. 443 was introduced by Representative Mike Gallagher (WI–08) on July 13, 2017, and referred to the Committee on Energy and Commerce. H. Res. 443 was referred to the Subcommittee on Health on July 14, 2017.

On February 26, 2018, H. Res. 443 was considered in the House under a motion to suspend the Rules, and the resolution, as amended, was passed by a voice vote.

### NO TAXPAYER FUNDING FOR ABORTION AND ABORTION INSURANCE FULL DISCLOSURE ACT OF 2017

#### H.R. 7

To prohibit taxpayer funded abortions.

## Summary

H.R. 7 would prohibit the use of Federal funds, including funds in the budget of the District of Columbia, for abortion or health coverage that includes abortion. The prohibitions do not apply to abortions in cases of rape or incest, or where a physical condition endangers a woman's life unless an abortion is performed. In addition, abortions may not be provided in a Federal health care facility or by a Federal employee.

## Legislative History

H.R. 7 was introduced by Representative Christopher H. Smith (NJ–04) on January 13, 2017, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means and Committee on the Judiciary.

On January 13, 2017, H.R. 7 was considered in the House pursuant to the provisions of H. Res. 55, and the bill, without amendment, was passed by a recorded vote of 238 yeas and 183 nays (Roll Call No. 65).

On January 30, 2017, H.R. 7 was received in the Senate, read twice, and referred to the Committee on Finance.

No further action was taken on the bill.

TO AMEND TITLE XIX OF THE SOCIAL SECURITY ACT TO COUNT PORTIONS OF INCOME FROM ANNUITIES OF A COMMUNITY SPOUSE AS INCOME AVAILABLE TO INSTITUTIONALIZED SPOUSES FOR PURPOSES OF ELIGIBILITY FOR MEDICAL ASSISTANCE, AND FOR OTHER PURPOSES

### H.R. 181

To amend title XIX of the Social Security Act to count portions of income from annuities of a community spouse as income available to institutionalized spouses for purposes of eligibility for medical assistance, and for other purposes.

## Summary

H.R. 181 would provide that, for purposes of determining the Medicaid eligibility of an institutionalized individual, portions of certain annuity income made in the name of the individual's spouse to count as available income.

## Legislative History

H.R. 181 was introduced by Representative Markwayne Mullin (OK–02) on January 3, 2017, and referred to the Committee on Energy and Commerce. H.R. 181 was referred to the Subcommittee on Health on January 25, 2017.

On February 1, 2017, the Subcommittee on Health held a hearing on H.R. 181.

On February 7, 2017, the Subcommittee on Health met in open markup session to consider H.R. 181 and forwarded the bill, without amendment, to the full committee by a recorded vote of 19 yeas and 13 nays.

No further action was taken on the bill.

157

### SYNTHETIC DRUG AWARENESS ACT OF 2018

#### H.R. 449

To require the Surgeon General of the Public Health Service to submit to Congress a report on the health effects of new psychoactive substances (including synthetic drugs) use.

*Summary*

H.R. 449 would require the Surgeon General to report to the Congress on the health effects of synthetic psychoactive drugs on children between the ages of 12 and 18.

*Legislative History*

H.R. 449 was introduced by Representative Hakeem S. Jeffries (NY–08) on January 11, 2017, and referred to the Committee on Energy and Commerce. H.R. 449 was referred to the Subcommittee on Health on January 25, 2018.

On March 21 and 22, 2018, the Subcommittee on Health held a hearing on H.R. 449.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider H.R. 449 and forwarded the bill, as amended, to the full Committee by unanimous consent.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 449 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, H.R. 449 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 13, 2018, H.R. 449 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill. The provisions of H.R. 449 were included in H.R. 6, which is discussed elsewhere in this report.

### VERIFY ELIGIBILITY COVERAGE ACT

#### H.R. 705

To amend titles XI and XIX of the Social Security Act to promote program integrity with respect to the enrollment of certain immigrants in State plans under Medicaid, and for other purposes.

*Summary*

H.R. 705 would require individuals to provide documentation of citizenship or lawful presence before obtaining Medicaid coverage.

*Legislative History*

H.R. 705 was introduced by Representative Bill Flores (TX–17) on January 27, 2017, and referred to the Committee on Energy and Commerce. H.R. 705 was referred to the Subcommittee on Health on February 1, 2017.

On February 1, 2017, the Subcommittee on Health held a hearing on H.R. 705.

No further action was taken on the bill.

158

### PLAN VERIFICATION AND FAIRNESS ACT OF 2017

#### H.R. 706

To amend title I of the Patient Protection and Affordable Care Act to require verification for eligibility for enrollment during special enrollment periods in PPACA insurance plans, and for other purposes.

*Summary*

H.R. 706 would amend the Patient Protection and Affordable Care Act to require health insurance exchanges to verify an individual's eligibility for a special enrollment period before coverage is made effective.

*Legislative History*

H.R. 706 was introduced by Representative Marsha Blackburn (TN–07) on January 27, 2017, and referred to the Committee on Energy and Commerce. H.R. 706 was referred to the Subcommittee on Health on February 3, 2017.

On February 2, 2017, the Subcommittee Health held a hearing on H.R. 706.

No further action was taken on the bill.

### STATE AGE RATING FLEXIBILITY ACT OF 2017

#### H.R. 708

To amend title I of the Patient Protection and Affordable Care Act to require verification for eligibility for enrollment during special enrollment periods in PPACA insurance plans, and for other purposes.

*Summary*

H.R. 708 would amend the Public Health Service Act to increase the permissible variation based on age for health insurance premiums for coverage offered in the individual or small group market from a factor of three to a factor of five, or to a factor determined by the State.

*Legislative History*

H.R. 708 was introduced by Representative Larry Bucshon (IN–08) on January 27, 2017, and referred to the Committee on Energy and Commerce. H.R. 708 was referred to the Subcommittee on Health on February 2, 2017.

On February 2, 2017, the Subcommittee on Health held a hearing on H.R. 708.

No further action was taken on the bill.

### COMMON SENSE NUTRITION DISCLOSURE ACT OF 2017

#### H.R. 772

To amend the Federal Food, Drug, and Cosmetic Act to improve and clarify certain disclosure requirements for restaurants and similar retail food establishments, and to amend the authority to bring proceedings under section 403A.

159

*Summary*

H.R. 772 would address the Food and Drug Administration's final menu labeling regulations. H.R. 772 would provide a flexible approach to nutrition disclosures by allowing establishments to provide consumers with information in a workable and helpful format, such as online or on a digital table rather than a traditional menu board.

Additionally, H.R. 772 would eliminate the criminal penalties and allows restaurants and retailers to take corrective action, and preempt civil litigation for violations of the Federal menu labeling law and any State laws that may exist. Employees would no longer be penalized for inadvertent human error while preparing foods.

*Legislative History*

H.R. 772 was introduced by Representative Cathy McMorris Rodgers (WA–05) on January 31, 2017, and referred to the Committee on Energy and Commerce. H.R. 772 was referred to the Subcommittee on Health on February 3, 2017.

On July 27, 2017, the Committee on Energy and Commerce met in open markup session to consider H.R. 772 and ordered the bill, as amended, favorably reported to the House by a recorded vote of 37 yeas and 14 nays.

On January 8, 2017, the Committee on Energy and Commerce reported H.R. 772, as amended, to the House (H. Rept. 115–486), and the bill was placed on the Union Calendar (Calendar No. 360).

On February 6, 2018, H.R. 772 was considered in the House pursuant to the provisions of H. Res. 725, and the bill, as amended, was passed by a recorded vote of 266 yeas, 157 nays, and 1 present (Roll Call No. 56).

On February 7, 2018, H.R. 772 was received in the Senate.

No further action was taken on the bill.

PRIORITIZING THE MOST VULNERABLE OVER LOTTERY WINNERS ACT OF 2017

H.R. 829

To amend title XIX of the Social Security Act to clarify the treatment of lottery winnings and other lump sum income for purposes of income eligibility under the Medicaid program, and for other purposes.

*Summary*

H.R. 829 would require States, for purposes of determining Modified Adjusted Gross Income for Medicaid and CHIP eligibility, to consider monetary winnings from lotteries (and other lump sum payments) as if they were obtained over multiple months, even if obtained in a single month. The bill would allow States to continue to provide Medicaid coverage for an individual if the denial of coverage would cause an undue medical or financial hardship on the basis of criteria established by the Secretary of Health and Human Services.

160

*Legislative History*

On February 1, 2017, the Subcommittee on Health held a hearing on a discussion draft entitled "Prioritizing the Most Vulnerable Over Lottery Winners Act of 2017."

H.R. 829 was introduced by Representative Fred Upton (MI–06) on February 2, 2017, and referred to the Committee on Energy and Commerce. H.R. 829 was referred to the Subcommittee on Health on February 3, 2017. H.R. 829 was similar to the discussion draft.

On February 7, 2017, the Subcommittee on Health met in open markup session to consider H.R. 829 and forwarded the bill, as amended, to the full committee by a recorded vote of 20 yeas and 11 nays.

No further action was taken on the bill. The provisions of H.R. 829 were included in H.R. 1892, which is discussed elsewhere in this report.

PROTECTING SENIORS ACCESS TO MEDICARE ACT

H.R. 849

To repeal the provisions of the Patient Protection and Affordable Care Act providing for the Independent Payment Advisory Board.

*Summary*

H.R. 849 would repeal the provisions of the Affordable Care Act that established the Independent Payment Advisory Board and that created a process by which the Board (or the Secretary of the Department of Health and Human Services) would be required under certain circumstances to modify the Medicare program to achieve specified savings.

*Legislative History*

H.R. 849 was introduced by Representative David P. Roe (TN–01) on February 3, 2017, and referred to the Committee on Ways and Means, and in addition to the Committee on Energy and Commerce and Committee on Rules. H.R. 849 was referred to the Subcommittee on Health on February 10, 2017.

On July 20, 2017, the Subcommittee on Health held a hearing on H.R. 849.

On October 31, 2017, the Committee on Ways and Means reported H.R. 849, as amended, to the House (H. Rept. 115–373, Part 1), the Committee on Energy and Commerce was discharged from further consideration, and the bill was placed on the Union Calendar (Calendar No. 273).

On November 2, 2017, H.R. 849 was considered in the House pursuant to the provisions of H. Res. 600, and the bill was passed, as amended, by a recorded vote of 307 yeas and 111 nays (Roll Call No. 604).

On November 6, 2017, H.R. 849 was received in the Senate, read twice, and referred to the Committee on Finance.

No further action was taken on the bill.

161

MILITARY INJURY SURGICAL SYSTEMS INTEGRATED OPERATIONALLY
NATIONWIDE TO ACHIEVE ZERO PREVENTABLE DEATHS ACT

H.R. 880

To amend the Public Health Service Act to facilitate assignment of military trauma care providers to civilian trauma centers in order to maintain military trauma readiness and to support such centers, and for other purposes.

*Summary*

H.R. 880 would establish a grant program for qualified military personnel to provide trauma care in civilian trauma centers. The bill would provide a total of $15 million annually for grants to eligible trauma centers through fiscal year 2022.

*Legislative History*

H.R. 880 was introduced by Representative Michael C. Burgess (TX–26) on February 6, 2017, and referred to the Committee on Energy and Commerce. H.R. 880 was referred to the Subcommittee on Health on February 10, 2017.

On June 29, 2017, the Subcommittee on Health met in open markup session to consider H.R. 880 and forwarded the bill, as amended, to the full committee by a voice vote.

On July 27, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 880 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On September 25, 2017, the Committee on Energy and Commerce reported H.R. 880, as amended, to the House (H. Rept. 115–330), and the bill was placed on the Union Calendar (Calendar No. 240).

On February 26, 2018, H.R. 880 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On February 27, 2018, H.R. 880 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill.

TITLE VIII NURSING WORKFORCE REAUTHORIZATION ACT OF 2017

H.R. 959

To amend title VIII of the Public Health Service Act to extend advanced education nursing grants to support clinical nurse specialist programs, and for other purposes.

*Summary*

H.R. 959 would amend title VIII of the Public Health Service Act to reauthorize nursing workforce development programs, which support the recruitment, retention, and advanced education of skilled nursing professionals.

*Legislative History*

H.R. 959 was introduced by Representative David P. Joyce (OH–14) on February 7, 2017, and referred to the Committee on Energy

162

and Commerce. H.R. 959 was referred to the Subcommittee on Health on February 10, 2017.

On September 13, 2017, the Subcommittee on Health held a hearing on H.R. 959.

On July 2, 2018, the Subcommittee on Health met in open mark-up session to consider H.R. 959 and forwarded the bill, without amendment, to the full committee by a voice vote.

On July 12, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 959 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On July 23, 2018, H.R. 959 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On July 24, 2018, H.R. 959 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill.

### COMPASSIONATE FREEDOM OF CHOICE ACT OF 2017

#### H.R. 1020

To allow the manufacture, importation, distribution, and sale of investigational drugs and devices intended for use by terminally ill patients who execute an informed consent document, and for other purposes.

*Summary*

H.R. 1020 would provide that the Food and Drug Administration (FDA) may not prevent or restrict the manufacture, importation, distribution, or sale of drugs or medical devices that are intended for terminally ill patients, have been the subject of a clinical trial, and have not been approved by the FDA.

*Legislative History*

H.R. 1020 was introduced by Representative H. Morgan Griffith (VA–09) on February 13, 2017, and referred to the Committee on Energy and Commerce. H.R. 1020 was referred to the Subcommittee on Health on February 17, 2017.

On October 3, 2017, the Subcommittee on Health held a hearing on H.R. 1020.

No further action was taken on the bill.

### PRE-EXISTING CONDITIONS PROTECTION ACT OF 2017

#### H.R. 1121

To amend the Public Health Service Act to prohibit application of pre-existing condition exclusions and to guarantee availability of health insurance coverage in the individual and group market, contingent on the enactment of legislation repealing the Patient Protection and Affordable Care Act, and for other purposes.

*Summary*

H.R. 1121 would set forth amendments that would take effect in the event of the repeal of the Patient Protection and Affordable

163

Care Act (PPACA) and the health care provisions of the Health Care and Education Reconciliation Act of 2010 and the restoration of the provisions amended by those provisions.

The amendments of H.R. 1121 would revise the Public Health Service Act, the Employee Retirement Income Security Act of 1974, and Internal Revenue Code to maintain PPACA consumer protections, including the requirement for health insurance to cover preexisting conditions; the requirement for health insurers to accept every employer and every individual applying for coverage; the prohibition against health insurers discriminating against individuals based on health status factors; the prohibition against collecting genetic information in connection with issuing health insurance; and requirements for workplace wellness programs connected to health insurance.

*Legislative History*

On February 2, 2017, the Subcommittee on Health held a hearing on a discussion draft entitled "Pre-existing Conditions Protection and Continuous Coverage Incentive Act of 2017."

H.R. 1121 was introduced by Representative Greg Walden (OR–02) on February 16, 2017, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Education and the Workforce and Committee on Ways and Means. H.R. 1121 was similar to the discussion draft.

No further action was taken on the bill.

### Furthering Access to Stroke Telemedicine (FAST) Act of 2017

#### H.R. 1148

To amend title XVIII of the Social Security Act to expand access to telehealth-eligible stroke services under the Medicare program.

*Summary*

H.R. 1148 would expand the use of remote (telehealth) services for Medicare stroke patients located in non-rural areas.

*Legislative History*

H.R. 1148 was introduced by Representative H. Morgan Griffith (VA–09) on February 16, 2017, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means. H.R. 1148 was referred to the Subcommittee on Health on February 17, 2017.

On July 20, 2017, the Subcommittee on Health held a hearing on H.R. 1148.

On September 13, 2017, the Subcommittee on Health met in open markup session to consider H.R. 1148 and forwarded the bill, as amended, to the full committee by a voice vote.

On October 4, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 1148 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On December 6, 2017, the Committee on Energy and Commerce reported H.R. 1148, as amended, to the House (H. Rept. 115–444,

164

Part 1), and the bill was placed on the Union Calendar (Calendar No. 328).

No further action was taken on the bill. The provisions of H.R. 1148 were included in H.R. 1892, which is discussed elsewhere in this report.

### MEDICAL CONTROLLED SUBSTANCES TRANSPORTATION ACT OF 2017

#### H.R. 1492

To amend the Controlled Substances Act to direct the Attorney General to register practitioners to transport controlled substances to States in which the practitioner is not registered under the Act for the purpose of administering the substances (under applicable State law) at locations other than principal places of business or professional practice.

*Summary*

H.R. 1492 would amend the Controlled Substances Act (CSA) to authorize a practitioner registered under section 303(f) of the CSA, to transport and administer controlled substances to patients outside of the State in which they are registered under subsection (f) at locations other than a principal place of business or professional practice. The practitioner would need to have a separate registration issued by the Drug Enforcement Administration pursuant to section 303(k), as added by this bill, and meet a number of conditions.

*Legislative History*

H.R. 1492 was introduced by Representative Peter Sessions (TX–32) on March 10, 2017, and referred to the Committee on Energy and Commerce, and in addition to the Committee on the Judiciary. H.R. 1492 was referred to the Subcommittee on Health on March 17, 2017.

On June 7, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 1495 and ordered the bill, without amendment, favorably reported to the House by a voice vote.

On June 23, 2017, the Committee on Energy and Commerce reported H.R. 1492, without amendment, to the House (H. Rept. 115–192, Part 1), and the bill was placed on the Union Calendar (Calendar No. 131).

On July 12, 2017, H.R. 1492 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a recorded vote of 416 yeas and 2 nays (Roll Call No. 349).

On July 13, 2017, H.R. 1492 was received in the Senate, read twice, and referred to the Committee on the Judiciary.

No further action was taken on the bill.

### AMERICAN HEALTH CARE ACT OF 2017

#### TITLE I OF H.R. 1628

To provide for reconciliation pursuant to title II of the concurrent resolution on the budget for fiscal year 2017.

165

*Summary*

Title I of H.R. 1628 would repeal and replace portions of the Patient Protection and Affordable Care Act. Among other provisions, the bill would redirect money from the Prevention and Public Health Fund to Federally Qualified Health Centers; transition the Medicaid expansion to a per-capita payment model for each enrolled individual; eliminate the Medicaid Disproportionate Share Hospital cuts for non-expansion States in 2018; establish a Patient and State Stability Fund, designed to lower patient costs and stabilize State markets; provide a continuous coverage incentive to limit adverse selection in health care markets; increase plan options by eliminating actuarial value standards; and, allow States to loosen their age variation ratio to five-to-one.

*Legislative History*

On March 8 and March 9, 2017, the full Committee on Energy and Commerce met in open markup session to consider Committee Print, Budget Reconciliation Legislative Recommendations Relating to Repeal and Replace of the Patient Protection and Affordable Care Act and approved and transmitted the recommendations, as amended, and all appropriate accompanying material, including additional, supplemental or dissenting views, to the Committee on the Budget by a recorded vote of 31 yeas and 23 nays.

On March 13, 2017, the Committee on Energy and transmitted the Committee Print, Budget Reconciliation Legislative Recommendations Relating to Repeal and Replace of the Patient Protection and Affordable Care Act and the appropriate accompanying material to the Committee on the Budget.

The Committee Print was included in H.R. 1628, American Health Care Act of 2017, as title I—Energy and Commerce.

On March 20, 2017, Representative Diane Black (TN–06) reported H.R. 1628 to the House (H. Rept. 115–52), and the bill was placed on the Union Calendar (Calendar No. 30).

On March 24, 2017, H.R. 1628 was considered in the House pursuant to the provisions of H. Res. 228.

On May 4, 2017, H.R. 1628 was considered in the House pursuant to the provisions of H. Res. 308, and the bill, as amended, was passed by a recorded vote of 217 yeas and 213 nays (Roll Call No. 256).

On June 7, 2017, H.R. 1628 was received in the Senate, read the first time, and placed on the Senate Legislative Calendar under Read the First Time. On June 8, 2017, H.R. 1628 was read the second time and placed on the Senate Legislative Calendar under General Orders (Calendar No. 120).

On July 26 and July 27, 2017, H.R. 1628 was considered in the Senate.

On July 28, 2017, H.R. 1628 was returned to the calendar (Calendar No. 120).

No further action was taken on the bill.

OVER-THE-COUNTER HEARING AID ACT OF 2017

H.R. 1652

To provide for the regulation of over-the-counter hearing aids.

*Summary*

H.R. 1652 would require the Food and Drug Administration to promulgate regulations to establish a category of over-the-counter hearing aids intended to be used by adults to compensate for perceived mild to moderate hearing impairment.

*Legislative History*

H.R. 1652 was introduced by Representative Joseph P. Kennedy, III (MA–04) on March 21, 2017, and referred to the Committee on Energy and Commerce. H.R. 1652 was referred to the Subcommittee on Health on March 24, 2017.

On May 2, 2017, the Subcommittee on Health held a hearing on H.R. 1652.

No further action was taken on the bill.

PALLIATIVE CARE AND HOSPICE EDUCATION AND TRAINING ACT

H.R. 1676

To amend the Public Health Service Act to increase the number of permanent faculty in palliative care at accredited allopathic and osteopathic medical schools, nursing schools, social work schools, and other programs, including physician assistant education programs, to promote education and research in palliative care and hospice, and to support the development of faculty careers in academic palliative medicine.

*Summary*

H.R. 1676 would amend the Public Health Service Act to authorize initiatives that support the delivery of palliative care and hospice services. The bill would authorize several grant programs for the education and training of the palliative care workforce. In addition, H.R. 1676 would authorize the Director of the Agency for Healthcare Research and Quality to disseminate information about palliative care to patients, family members, and health professionals. Finally, the bill would direct the National Institutes of Health to develop a strategy for expanding research in palliative care.

*Legislative History*

H.R. 1676 was introduced by Representative Eliot L. Engel (NY–16) on March 22, 2017, and referred to the Committee on Energy and Commerce. H.R. 1676 was referred to the Subcommittee on Health on March 24, 2017.

On June 27, 2018, the Subcommittee on Health met in open markup session to consider H.R. 1676 and forwarded the bill, as amended, to the full committee by a voice vote.

On July 12, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 1676 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On July 23, 2018, H.R. 1676 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

167

On July 24, 2018, H.R. 1676 was received in the Senate, read twice, and referred to the Committee on the Health, Education, Labor, and Pensions.

No further action was taken on the bill.

MEDICAL PRODUCT COMMUNICATIONS ACT OF 2017

H.R. 1703

To amend the Federal Food, Drug, and Cosmetic Act with respect to determining the intended use of drugs and devices.

*Summary*

H.R. 1703 would clarify that a new intended use of a drug may not be determined by reference to actual or constructive knowledge that a product is being used in a manner that varies from the approved labeling, non-public statements to that effect, or communications that fall within a scientific exchange safe harbor established by the legislation. To qualify for the scientific exchange safe harbor, the communication may not be advertising or otherwise promotional in nature; it must be supported by competent and reliable scientific evidence; it must clearly disclose appropriate contextual information about the data presented, including limitations with the data and any contradictory data or information; must include a conspicuous and prominent statement about such information not being contained in the labeling; and must not make any representation that an unapproved use has been demonstrated to be safe and effective.

*Legislative History*

H.R. 1703 was introduced by Representative H. Morgan Griffith (VA–07) on March 23, 2017, and referred to the Committee on Energy and Commerce. H.R. 1703 was referred to the Subcommittee on Health on March 24, 2017.

On July 12, 2017, the Subcommittee on Health held a hearing on H.R. 1703.

No further action was taken on the bill.

TO AMEND THE FEDERAL FOOD, DRUG, AND COSMETIC ACT TO IMPROVE THE PROCESS FOR INSPECTIONS OF DEVICE ESTABLISHMENTS AND FOR GRANTING EXPORT CERTIFICATIONS

H.R. 1736

To amend the Federal Food, Drug, and Cosmetic Act to improve the process for inspections of device establishments and for granting export certifications.

*Summary*

H.R. 1736 would modernize the Food and Drug Administration's inspection of establishments that manufacture or process medical devices and certification of medical devices for export.

*Legislative History*

H.R. 1736 was introduced by Representative Larry Bucshon (IN–08) on March 27, 2017, and referred to the Committee on Energy

168

and Commerce. H.R. 1736 was referred to the Subcommittee on Health on March 31, 2017.

On May 2, 2017, the Subcommittee on Health held a hearing on H.R. 1736.

No further action was taken on the bill.

GOOD SAMARITAN HEALTH PROFESSIONALS ACT OF 2017

H.R. 1876

To amend the Public Health Service Act to limit the liability of health care professionals who volunteer to provide health care services in response to a disaster.

*Summary*

H.R. 1876 would shield a health care professional from liability for harm caused by any act or omission if: (1) the professional is serving as a volunteer in response to a disaster and (2) the act or omission occurs during the period of the disaster, in the professional's capacity as a volunteer, and in a good faith belief that the individual being treated is in need of health care services.

*Legislative History*

H.R. 1876 was introduced by Representative Marsha Blackburn (TN–07) on April 4, 2017, and referred to the Committee on Energy and Commerce, and in addition to the Committee on the Judiciary. H.R. 1876 was referred to the Subcommittee on Health on April 7, 2017.

On May 17, 2017, the Subcommittee on Health held a hearing on H.R. 1876.

On January 17, 2018, the Subcommittee on Health met in open markup session to consider H.R. 1876 and forwarded the bill, as amended, to the full committee by a voice vote.

On February 14, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 1876 and ordered the bill, as amended, favorably reported to the House by a voice vote.

No further action was taken on the bill.

AT-RISK YOUTH MEDICAID PROTECTION ACT OF 2018

H.R. 1925

To amend title XIX of the Social Security Act to protect at-risk youth against termination of Medicaid eligibility while an inmate of a public institution.

*Summary*

H.R. 1925 would require States to suspend, rather than terminate, Medicaid eligibility for juvenile enrollees (generally under 21 years of age) who become inmates of public correctional institutions. States also would have to redetermine those enrollees' Medicaid eligibility before their release and restore their coverage upon release if they qualify for the program. States would be required to process Medicaid applications submitted by or on behalf of juveniles in public correctional institutions who were not enrolled in

Medicaid before becoming inmates and ensure that Medicaid coverage is provided when they are released if they are found to be eligible.

*Legislative History*

H.R. 1925 was introduced by Representative Tony Cárdenas (CA–29) on April 5, 2017, and referred to the Committee on Energy and Commerce. H.R. 1925 was referred to the Subcommittee on Health on April 7, 2017.

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on H.R. 1925.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider H.R. 1925 and forwarded the bill, as amended, to the full committee by a voice vote.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 1925 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 1925, as amended, to the House (H. Rept. 115–738), and the bill was placed on the Union Calendar (Calendar No. 572).

No further action was taken on the bill. The provisions of H.R. 1925 were included in H.R. 6, which is discussed elsewhere in this report.

## FOSTERING INNOVATION IN MEDICAL IMAGING ACT OF 2017

### H.R. 2009

To amend the Federal Food, Drug, and Cosmetic Act to provide clarity with respect to the regulation of diagnostic imaging devices intended for use with contrast agents.

*Summary*

H.R. 2009 would clarify the Food and Drug Administration's review process for medical imaging devices intended to be used in conjunction with contrast agents, which are drugs that enhance the contrast between the targeted tissue of a patient and the surrounding areas.

*Legislative History*

H.R. 2009 was introduced by Representative Ryan A. Costello (PA–06) on April 6, 2017, and referred to the Committee on Energy and Commerce. H.R. 2009 was referred to the Subcommittee on Health on April 7, 2017.

On May 2, 2017, the Subcommittee on Health held a hearing on H.R. 2009.

No further action was taken on the bill.

## PHARMACEUTICAL INFORMATION EXCHANGE ACT

### H.R. 2026

To improve patient access to emerging medication therapies by clarifying the scope of permitted health care economic and scientific information communications between biopharmaceutical manufacturers and population health decision makers.

170

*Summary*

H.R. 2026 would clarify how drug and medical device companies can share health care economic or scientific information with the previously described entities if the information is based on competent and reliable scientific evidence and relates to an investigational use of a drug or device.

*Legislative History*

H.R. 2026 was introduced by Representative Brett Guthrie (KY–02) on April 6, 2017, and referred to the Committee on Energy and Commerce. H.R. 2026 was referred to the Subcommittee on Health on April 7, 2017.

On July 12, 2017, the Subcommittee on Health held a hearing on H.R. 2026.

On January 17, 2018, the Subcommittee on Health met in open markup session to consider H.R. 2026 and forwarded the bill, as amended, to the full committee by a recorded vote of 18 yeas and 14 nays.

No further action was taken on the bill.

### Opioid Preventing Abuse through Continuing Education Act of 2017 or the Opioid PACE Act of 2017

H.R. 2063

To amend the Controlled Substances Act to require certain training as a condition of registration to prescribe or dispense opioids for the treatment of pain or pain management, and for other purposes.

*Summary*

H.R. 2063 would amend the Controlled Substances Act to require a practitioner to comply with a training requirement as a condition of obtaining or renewing a registration to prescribe or dispense opioids for the treatment of pain or pain management.

*Legislative History*

H.R. 2063 was introduced by Representative Bradley Scott Schneider (IL–10) on April 6, 2017, and referred to the Committee on Energy and Commerce, and in addition to the Committee on the Judiciary. H.R. 2063 was referred to the Subcommittee on Health on April 7, 2017.

On February 28, 2018, the Subcommittee on Health held a hearing on H.R. 2063.

No further action was taken on the bill.

### Medical Device Servicing Safety and Accountability Act

H.R. 2118

To amend the Federal Food, Drug, and Cosmetic Act to require the registration of establishments that service devices, and for other purposes.

171

*Summary*

H.R. 2118 would require medical device servicers to register with the Food and Drug Administration, maintain records, and ensure the safety and effectiveness of service devices.

*Legislative History*

H.R. 2118 was introduced by Representative Ryan A. Costello (PA–06) on April 25, 2017, and referred to the Committee on Energy and Commerce. H.R. 2118 was referred to the Subcommittee on Health on April 28, 2017.

On May 2, 2017, the Subcommittee on Health held a hearing on H.R. 2118.

No further action was taken on the bill.

To amend the Public Health Service Act to eliminate the non-application of certain State waiver provisions to Members of Congress and congressional staff

H.R. 2192

To amend the Public Health Service Act to eliminate the non-application of certain State waiver provisions to Members of Congress and congressional staff.

*Summary*

H.R. 2192 amends the Public Health Service Act, if the American Health Care Act (H.R. 1628) is enacted, to make plans made available by the Federal government to Members of Congress and congressional staff subject to State waivers of the Patient Protection and Affordable Care Act (PPACA) requirement for health insurance to cover the essential health benefits and PPACA restrictions on premium variation by age and health status.

*Legislative History*

H.R. 2192 was introduced by Representative Martha McSally (AZ–02) on April 27, 2017, and referred to the Committee on Energy and Commerce, and in addition to the Committee on House Administration. H.R. 2192 was referred to the Subcommittee on Health on April 28, 2017.

On May 4, 2017, H.R. 2192 was considered in the House pursuant to the provisions of H. Res. 308, and the bill, without amendment, was passed by a recorded vote of 429 yeas and 0 nays (Roll Call No. 255).

On June 7, 2017, H.R. 2192 was received in the Senate, read twice, and referred to the Committee on Homeland Security and Governmental Affairs.

No further action was taken on the bill.

Steve Gleason Enduring Voices Act of 2017

H.R. 2465

To amend title XVIII of the Social Security Act to make permanent the removal of the rental cap for durable medical equipment under the Medicare program with respect to speech generating devices.

172

*Summary*

H.R. 2465 would modify Medicare coverage and payment rules for speech-generating devices.

*Legislative History*

H.R. 2465 was introduced by Representative Cathy McMorris Rodgers (WA–05) on May 16, 2017, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means. H.R. 2465 was referred to the Subcommittee on Health on May 19, 2017.

On July 20, 2017, the Subcommittee on Health held a hearing on H.R. 2465.

On September 13, 2017, the Subcommittee on Health met in open markup session to consider H.R. 2465 and forwarded the bill, without amendment, to the full committee by a voice vote.

On October 4, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 2465 and ordered the bill, without amendment, favorably reported to the House by a voice vote.

On December 18, 2017, the Committee on Energy and Commerce reported H.R. 2465, without amendment, to the House (H. Rept. 115–469, Part 1), and the bill was placed on the Union Calendar (Calendar No. 348).

No further action was taken on the bill. The provisions of H.R. 2465 were included in H.R. 1892, which is discussed elsewhere in this report.

PROSTATE CANCER MISDIAGNOSIS ELIMINATION ACT OF 2017

H.R. 2557

To amend title XVIII of the Social Security Act to provide for coverage under the Medicare program of certain DNA Specimen Provenance Assay clinical diagnostic laboratory tests.

*Summary*

H.R. 2557 would require the Medicare program to cover a certain type of laboratory test for beneficiaries who test positive for prostate cancer.

*Legislative History*

H.R. 2557 was introduced by Representative Larry Bucshon (IN–08) on May 19, 2017, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means. H.R. 2557 was referred to the Subcommittee on Health on May 26, 2017.

On July 20, 2017, the Subcommittee on Health held a hearing on H.R. 2557.

On September 13, 2017, the Subcommittee on Health met in open markup session to consider H.R. 2557 and forwarded the bill, without amendment, to the full committee by a voice vote.

On October 4, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 2557 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On December 6, 2017, the Committee on Energy and Commerce reported H.R. 2557, as amended, to the House (H.Rept. 115–449, Part 1), and the bill was placed on the Union Calendar (Calendar No. 331).

No further action was taken on the bill. The provisions of H.R. 2557 were included in H.R. 6886, which is discussed elsewhere in this report.

### Stop the Importation and Trafficking of Synthetic Analogues Act of 2017 or the SITSA Act

#### H.R. 2851

To amend the Controlled Substances Act to clarify how controlled substance analogues are to be regulated, and for other purposes.

*Summary*

H.R. 2851 would classify certain drugs as controlled substances. Individuals who wish to handle those substances would have to register with the Drug Enforcement Administration and pay a fee.

*Legislative History*

H.R. 2851 was introduced by Representative John Katko (NY–24) on June 8, 2017, and referred to the Committee on Energy and Commerce, and in addition to the Committee on the Judiciary. H.R. 2851 was referred to the Subcommittee on Health on June 9, 2017.

On June 8, 2018, the Committee on the Judiciary reported H.R. 2851, as amended, to the House (H.Rept. 115–713, Part 1).

On June 12, 2018, H.R. 2851 was considered in the House pursuant to the provisions of H.Res. 934, and the bill, as amended, was passed by a recorded vote of 239 yeas and 142 nays (Roll Call No. 268).

On July 12, 2017, H.R. 2851 was received in the Senate, read twice, and referred to the Committee on the Judiciary.

No further action was taken on the bill. Pursuant to the provisions of H.Res. 949, in the engrossment of H.R. 6, H.R. 2851, as passed by the House, was added as new matter at the end H.R. 6. However, H.R. 2851 was a matter of disagreement between the House and the Senate and was not included in P.L. 115–271.

### Closing Loopholes for Orphan Drugs Act

#### H.R. 2889

To amend title III of the Public Health Service Act to limit the orphan drug exclusion under the drug discount program under section 340B of such title.

*Summary*

H.R. 2889 would amend the Public Health Service Act to revise the 340B Drug Pricing Program, which requires drug manufacturers to discount orphan drugs (drugs for rare conditions) for certain entities covered by the program. The bill would discount orphan drugs that are not used to treat rare conditions for all entities covered by the program.

*Legislative History*

H.R. 2889 was introduced by Representative Peter Welch (VT) on June 13, 2017, and referred to the Committee on Energy and Commerce. H.R. 2889 was referred to the Subcommittee on Health on June 16, 2017.

On July 11, 2018, the Subcommittee on Health held a hearing on H.R. 2889.

No further action was taken on the bill.

PROSTATE CANCER MISDIAGNOSIS ELIMINATION ACT OF 2017

H.R. 3120

To amend title XVIII of the Social Security Act to reduce the volume of future electronic health record-related significant hardship requests.

*Summary*

H.R. 3120 would eliminate a requirement that, over time, the Secretary of Health and Human Services must make the criteria more stringent for physicians and hospitals to achieve "meaningful use" of electronic technology for health records. Under current law, some Medicaid providers may be eligible for bonus payments if they achieve meaningful use, and some Medicare providers may be subject to penalties if they fail to achieve meaningful use.

*Legislative History*

H.R. 3120 was introduced by Representative Michael C. Burgess (TX–26) on June 29, 2017, and referred to the Committee on Ways and Means, and in addition to the Committee on Energy and Commerce. H.R. 3120 was referred to the Subcommittee on Health on June 30, 2017.

On July 20, 2017, the Subcommittee on Health held a hearing on H.R. 3120.

On September 13, 2017, the Subcommittee on Health met in open markup session to consider H.R. 3120 and forwarded the bill, without amendment, to the full committee by a voice vote.

On October 4, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 3120 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On December 6, 2017, the Committee on Energy and Commerce reported H.R. 3120, as amended, to the House (H.Rept. 115–445, Part 1).

No further action was taken on the bill. The provisions of H.R. 3120 were included in H.R. 1892, which is discussed elsewhere in this report.

CHIP MENTAL HEALTH PARITY ACT

H.R. 3192

To amend title XXI of the Social Security Act to ensure access to mental health services for children under the Children's Health Insurance Program, and for other purposes.

*Summary*

H.R. 3192 would require all Children's Health Insurance Program plans to cover mental health and substance abuse treatment. In addition, States would not be allowed to impose financial or utilization limits on mental health treatment that are lower than limits placed on physical health treatment.

*Legislative History*

H.R. 3192 was introduced by Representative Joseph P. Kennedy (MA–04) on July 12, 2017, and referred to the Committee on Energy and Commerce. H.R. 3192 was referred to the Subcommittee on Health on July 14, 2017.

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on H.R. 3192.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider H.R. 3192 and forwarded the bill, without amendment, to the full committee by a voice vote.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 3192 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 3192, as amended, to the House (H.Rept. 115–734), and the bill was placed on the Union Calendar (Calendar No. 569).

On June 19, 2018, H.R. 3192 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 20, 2018, H.R. 3192 was received in the Senate, read twice, and referred to the Committee on Finance.

No further action was taken on the bill. The provisions of H.R. 3192 were included in H.R. 6, which is discussed elsewhere in this report.

MEDICARE CIVIL AND CRIMINAL PENALTIES UPDATE ACT

H.R. 3245

To amend title XI of the Social Security Act to increase civil money penalties and criminal fines for Federal health care program fraud and abuse, and for other purposes.

*Summary*

H.R. 3245 would modify certain civil and criminal monetary penalties for violations of Federal law related to health care programs.

*Legislative History*

H.R. 3245 was introduced by Representative Gus M. Bilirakis (FL–12) on July 14, 2017, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means. H.R. 3245 was referred to the Subcommittee on Health on July 20, 2017.

On July 20, 2017, the Subcommittee on Health held a hearing on H.R. 3245.

On September 13, 2017, the Subcommittee on Health met in open markup session to consider H.R. 3245 and forwarded the bill, without amendment, to the full committee by a voice vote.

176

On October 4, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 3245 and ordered the bill, without amendment, favorably reported to the House by a voice vote.

On December 6, 2017, the Committee on Energy and Commerce reported H.R. 3245, without amendment, to the House (H.Rept. 115–448, Part 1), and the bill was placed on the Union Calendar (Calendar No. 330).

No further action was taken on the bill. The provisions of H.R. 3245 were included in H.R. 1892, which is discussed elsewhere in this report.

To amend title XVIII of the Social Security Act to extend the Medicare independence at home medical practice demonstration program

### H.R. 3263

To amend title XVIII of the Social Security Act to extend the Medicare independence at home medical practice demonstration program.

*Summary*

H.R. 3263 would extend the Independence at Home program for two years, through late fiscal year 2019, and would increase the aggregate cap on the number of Medicare beneficiaries served by participating providers from 10,000 to 15,000.

*Legislative History*

H.R. 3263 was introduced by Representative Michael C. Burgess (TX–26) on July 17, 2017, and referred to the Committee on Ways and Means, and in addition to the Committee on Energy and Commerce. H.R. 3263 was referred to the Subcommittee on Health on July 20, 2017.

On July 20, 2017, the Subcommittee on Health held a hearing on H.R. 3263.

On September 13, 2017, the Subcommittee on Health met in open markup session to consider H.R. 3263 and forwarded the bill, without amendment, to the full committee by a voice vote.

On October 4, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 3263 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On December 6, 2017, the Committee on Energy and Commerce reported H.R. 3263, as amended, to the House (H.Rept. 115–446, Part 1).

No further action was taken on the bill. The provisions of H.R. 3263 were included in H.R. 1892, which is discussed elsewhere in this report.

PROTECTING ACCESS TO DIABETES SUPPLIES ACT OF 2017

H.R. 3271

To amend title XVIII of the Social Security Act in order to strengthen rules in case of competition for diabetic testing strips, and for other purposes.

*Summary*

H.R. 3271 would codify certain requirements with respect to Medicare coverage of diabetic testing supplies.

*Legislative History*

H.R. 3271 was introduced by Representative Diana DeGette (CO–01) on July 17, 2017, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means. H.R. 3271 was referred to the Subcommittee on Health on July 20, 2017.

On July 20, 2017, the Subcommittee on Health held a hearing on H.R. 3271.

On September 13, 2017, the Subcommittee on Health met in open markup session to consider H.R. 3271 and forwarded the bill, as amended, to the full committee by a voice vote.

On October 4, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 3271 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On December 6, 2017, the Committee on Energy and Commerce reported H.R. 3271, as amended, to the House (H.Rept. 115–447, Part 1), and the bill was placed on the Union Calendar (Calendar No. 329).

No further action was taken on the bill. The provisions of H.R. 3271 were included in H.R. 1892, which is discussed elsewhere in this report.

ADVANCING CARE FOR EXCEPTIONAL KIDS ACT OR THE ACE KIDS ACT

H.R. 3325

To amend title XIX of the Social Security Act to provide States with the option of providing coordinated care for children with complex medical conditions through a health home, and for other purposes.

*Summary*

H.R. 3325 would create a new option for State Medicaid programs by allowing States to utilize a Health Home model to coordinate care for children with medically complex conditions.

*Legislative History*

H.R. 3325 was introduced by Representative Joe Barton (TX–06) on July 20, 2017, and referred to the Committee on Energy and Commerce. H.R. 3325 was referred to the Subcommittee on Health on July 21, 2017.

On September 5, 2018, the Subcommittee on Health held a hearing on H.R. 3325.

On September 7, 2018, the Subcommittee on Health met in open markup session to consider H.R. 3325 and forwarded the bill, as amended, to the full committee by a voice vote.

On September 13, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 3325 and ordered the bill, as amended, favorably reported to the House by a voice vote.

No further action was taken on the bill. The provisions of H.R. 3325 were included in H.R. 7217, which is discussed elsewhere in this report.

To amend title XI of the Social Security Act to promote testing of incentive payments for behavioral health providers for adoption and use of certified electronic health record technology

H.R. 3331

To amend title XI of the Social Security Act to promote testing of incentive payments for behavioral health providers for adoption and use of certified electronic health record technology.

*Summary*

H.R. 3331 would authorize the Center for Medicare and Medicaid Innovation to test a program offering incentive payments to behavioral health providers that adopt and use certified electronic health record technology.

*Legislative History*

H.R. 3331 was introduced by Representative Lynn Jenkins (KS–02) on July 20, 2017, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means. H.R. 3331 was referred to the Subcommittee on Health on July 21, 2017.

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on H.R. 3331.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider H.R. 3331 and forwarded the bill, without amendment, to the full committee by a voice vote.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 3331 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 8, 2018, the Committee on Energy and Commerce reported H.R. 3331, as amended, to the House (H.Rept. 115–720, Part 1), and the bill was placed on the Union Calendar (Calendar No. 555).

On June 12, 2018, H.R. 3331 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 13, 2018, H.R. 3331 was received in the Senate. On June 14, 2018, H.R. 3331 was read twice and referred to the Committee on Finance.

179

No further action was taken on the bill. The provisions of H.R. 3331 were included in H.R. 6, which is discussed elsewhere in this report.

## EVERY PRESCRIPTION CONVEYED SECURELY ACT

### H.R. 3528

To amend title XVIII of the Social Security Act to require e-prescribing for coverage under Part D of the Medicare program of prescription drugs that are controlled substances.

*Summary*

H.R. 3528 would require prescriptions for controlled substances covered under Medicare Part D to be transmitted electronically starting on January 1, 2021.

*Legislative History*

H.R. 3528 was introduced by Representative Katherine M. Clark (MA–05) on July 28, 2017, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means. H.R. 3528 was referred to the Subcommittee on Health on August 4, 2017.

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on H.R. 3528.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider H.R. 3528 and forwarded the bill, as amended, to the full committee by a voice vote.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 3528 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 3528, as amended, to the House (H.Rept. 115–748, Part 1), and the bill was placed on the Union Calendar (Calendar No. 582).

No further action was taken on the bill. The provisions of H.R. 3528 were included in H.R. 6, which is discussed elsewhere in this report.

## EDUCATING MEDICAL PROFESSIONALS AND OPTIMIZING WORKFORCE EFFICIENCY AND READINESS ACT OF 2017

### H.R. 3728

To amend title VII of the Public Health Service Act to reauthorize certain programs relating to the health professions workforce, and for other purposes.

*Summary*

H.R. 3728 would amend title VII of the Public Health Service Act to reauthorize a number of programs to support loan repayment and provider training experiences in primary care, dentistry, rural or underserved areas, and in community-based settings.

180

*Legislative History*

H.R. 3728 was introduced by Representative Michael C. Burgess (TX–26) on September 11, 2017, and referred to the Committee on Energy and Commerce. H.R. 3728 was referred to the Subcommittee on Health on September 13, 2017.

On September 14, 2017, the Subcommittee on Health held a hearing on H.R. 3728.

On June 27, 2018, the Subcommittee on Health met in open markup session to consider H.R. 3728 and forwarded the bill, as amended, to the full Committee by a voice vote.

On July 12, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 3728 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On July 23, 2018, H.R. 3728 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On July 24, 2018, H.R. 3728 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill.

TO AMEND TITLE XIX OF THE SOCIAL SECURITY ACT TO CLARIFY THE AUTHORITY OF STATE MEDICAID FRAUD AND ABUSE CONTROL UNITS TO INVESTIGATE AND PROSECUTE CASES OF MEDICAID PATIENT ABUSE AND NEGLECT IN ANY SETTING, AND FOR OTHER PURPOSES

H.R. 3891

To amend title XIX of the Social Security Act to clarify the authority of State Medicaid fraud and abuse control units to investigate and prosecute cases of Medicaid patient abuse and neglect in any setting, and for other purposes.

*Summary*

H.R. 3891 would improve the authority of Medicaid Fraud Control Units (MFCUs) that investigate and prosecute Medicaid provider fraud as well as patient abuse or neglect in health care facilities and board and care facilities. Under current law, MFCUs are allowed only to investigate cases of provider fraud and patient abuse in health care facilities or board and care facilities. H.R. 3891 would broaden the authority of these units to investigate and prosecute abuse and neglect of Medicaid beneficiaries in non-institutional or other settings.

*Legislative History*

H.R. 3891 was introduced by Representative Tim Walberg (MI–07) on September 28, 2017, and referred to the Committee on Energy and Commerce. H.R. 3891 was referred to the Subcommittee on Health on September 29, 2017.

On September 5, 2018, the Subcommittee on Health held a hearing on H.R. 3891.

On September 7, 2018, the Subcommittee on Health met in open markup session to consider H.R. 3891 and forwarded the bill, without amendment, to the full committee by a voice vote.

181

On September 13, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 3891 and ordered the bill, without amendment, favorably reported to the House by a voice vote.

No further action was taken on the bill.

COMMUNITY HEALTH AND MEDICAL PROFESSIONALS IMPROVE OUR NATION ACT OF 2017 OR THE CHAMPIONING HEALTHY KIDS ACT

H.R. 3922, H.R. 3921

To extend funding for certain public health programs, and for other purposes.

*Summary*

Division A of H.R. 3922 would extend funding for Community Health Centers and several other public health programs for two years, through 2019. It also would shorten the grace period for repaying delinquent premiums for people receiving subsidies for nongroup health insurance coverage and reduce funding available for the Prevention and Public Health Fund.

Division B (from H.R. 3921) would extend Federal funding for the Children's Health Insurance Program for five years, increase Medicaid funding for Puerto Rico and the Virgin Islands, and change policies that require other sources of health insurance coverage, or third parties, to pay claims before the Medicaid program. It also would modify payments to hospitals that treat a disproportionate share of uninsured and Medicaid patients and require States to count lottery winnings as income for purposes of determining Medicaid eligibility.

*Legislative History*

H.R. 3921 was introduced by Representative Michael C. Burgess (TX–26) on October 3, 2017, and referred to the Committee on Energy and Commerce, and in addition to Committee on Ways and Means. H.R. 3921 was not referred to a subcommittee.

On October 4, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 3921 and ordered the bill, as amended, favorably reported to the House by a recorded vote of 28 yeas and 23 nays.

On October 19, 2017, the Committee on Energy and Commerce reported H.R. 3921, as amended, to the House (H.Rept. 115–358, Part 1), and the bill was placed on the Union Calendar (Calendar No. 263).

No further action was taken on the bill.

H.R. 3922 was introduced by Representative Greg Walden (OR–02) on October 3, 2017, and referred to the Committee on Energy and Commerce, and in addition to Committee on Ways and Means. H.R. 3922 was not referred to a subcommittee.

On October 4, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.R. 3922 and ordered the bill, as amended, favorably reported to the House by a recorded vote of 28 yeas and 23 nays.

182

On October 19, 2017, the Committee on Energy and Commerce reported H.R. 3922, as amended, to the House (H.Rept. 115–359, Part 1), and the bill was placed on the Union Calendar (Calendar No. 262).

On November 3, 2017, H.R. 3922 was considered in the House pursuant to the provisions of H.Res. 601, and the bill, as amended, was passed by a recorded vote of 242 yeas and 174 nays (Roll Call No. 606). (Pursuant to the provisions of H.Res. 601, H.R. 3922 and H.R. 3921, both as reported by the Committee on Energy and Commerce, were incorporated in to H.R. 3922 as divisions A and B respectively.)

On November 6, 2017, H.R. 3922 was received in the Senate, read twice, and referred to the Committee on Finance.

No further action was taken on the bill. The provisions of H.R. 3922 were included in H.R. 1892, which is discussed elsewhere in this report.

MEDICAID REENTRY ACT

H.R. 4005

To promote State innovations to ease transitions to the community for individuals who are inmates of a public institution and eligible for medical assistance under the Medicaid program.

*Summary*

H.R. 4005 would direct the Secretary of Health and Human Services to convene a group of stakeholders to develop and report to the Congress on best practices for addressing issues related to health care faced by those returning from incarceration to their communities. The bill also would require the Secretary to issue a letter to State Medicaid directors about relevant demonstration projects.

*Legislative History*

H.R. 4005 was introduced by Representative Paul Tonko (NY–20) on October 10, 2017, and referred to the Committee on Energy and Commerce. H.R. 4005 was referred to the Subcommittee on Health on October 13, 2017.

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on H.R. 4005.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 4005 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 4005, as amended, to the House (H. Rept. 115–733), and the bill was placed on the Union Calendar (Calendar No. 568).

On June 19, 2018, H.R. 4005 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 20, 2018, H.R. 4005 was received in the Senate, read twice, and referred to the Committee on Finance.

No further action was taken on the bill. The provisions of H.R. 4005 were included in H.R. 6, which is discussed elsewhere in this report.

183

EMPOWERING PHARMACISTS IN THE FIGHT AGAINST OPIOID ABUSE
ACT

H.R. 4275

To provide for the development and dissemination of programs and materials for training pharmacists, health care providers, and patients on indicators that a prescription is fraudulent, forged, or otherwise indicative of abuse or diversion, and for other purposes.

*Summary*

H.R. 4275 would require the Secretary of Health and Human Services to develop and disseminate materials for training pharmacists, health care practitioners, and the public about the circumstances under which a pharmacist may decline to fill a prescription.

*Legislative History*

H.R. 4275 was introduced by Representative Mark DeSaulnier (CA–11) on November 7, 2017, and referred to the Committee on Energy and Commerce. H.R. 4275 was referred to the Subcommittee on Health on November 10, 2017.

On February 28, 2018, the Subcommittee on Health held a hearing on H.R. 4275.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider H.R. 4275 and forwarded the bill, as amended, to the full committee by a voice vote.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 4275 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, H.R. 4275 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 13, 2018, H.R. 4275 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill. The provisions of H.R. 4275 were included in H.R. 6, which is discussed elsewhere in this report.

INDEXING NARCOTICS, FENTANYL, AND OPIOIDS ACT OF 2018

H.R. 4284

To establish a substance use disorder information dashboard within the Department of Health and Human Services, and for other purposes.

*Summary*

H.R. 4284 would direct the Department of Health and Human Services to create a public and easily accessible electronic dashboard linking to all of the nationwide efforts and strategies to combat the opioid crisis.

184

*Legislative History*

H.R. 4284 was introduced by Representative Robert E. Latta (OH–05) on November 7, 2017, and referred to the Committee on Energy and Commerce. H.R. 4284 was referred to the Subcommittee on Health on November 10, 2017.

On March 21 and 22, 2018, the Subcommittee on Health held a hearing on H.R. 4284.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider H.R. 4284 and forwarded the bill, as amended, to the full committee by a voice vote.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 4284 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, H.R. 4284 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 13, 2018, H.R. 4284 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill. The provisions of H.R. 4284 were included in H.R. 6, which is discussed elsewhere in this report.

TO PROVIDE THAT THE PROVISION OF THE MEDICARE PROGRAM: HOSPITAL OUTPATIENT PROSPECTIVE PAYMENT AND AMBULATORY SURGICAL CENTER PAYMENT SYSTEMS AND QUALITY REPORTING PROGRAMS FINAL REGULATION RELATING TO CHANGES IN THE PAYMENT AMOUNT FOR CERTAIN DRUGS AND BIOLOGICALS PURCHASED UNDER THE 340B DRUG DISCOUNT PROGRAM SHALL HAVE NO FORCE OR EFFECT, AND FOR OTHER PURPOSES

H.R. 4392

To provide that the provision of the Medicare Program: Hospital Outpatient Prospective Payment and Ambulatory Surgical Center Payment Systems and Quality Reporting Programs final regulation relating to changes in the payment amount for certain drugs and biologicals purchased under the 340B drug discount program shall have no force or effect, and for other purposes.

*Summary*

H.R. 4392 would prohibit the Department of Health and Human Services from taking any action to implement, administer, or enforce the provision of the final regulation entitled "Medicare Program: Hospital Outpatient Prospective Payment and Ambulatory Surgical Center Payment Systems and Quality Reporting Programs," published on November 13, 2017, that would change the payment amount under the Prospective Payment System for Hospital Outpatient Department Services under section 1833(t) of the Social Security Act for separately payable, nonpass-through drugs and biologicals purchased under the drug discount program under section 340B of the Public Health Service Act.

185

*Legislative History*

H.R. 4392 was introduced by Representative David B. McKinley (WV–01) on November 14, 2017, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means. H.R. 4392 was referred to the Subcommittee on Health on November 17, 2017.

On July 11, 2018, the Subcommittee on Health held a hearing on H.R. 4392.

No further action was taken on the bill.

ENSURING ACCESS TO QUALITY SOBER LIVING ACT OF 2018

H.R. 4684

To direct the Secretary of Health and Human Services to identify or facilitate the development of best practices for operating recovery housing, and for other purposes.

*Summary*

H.R. 4684 would direct the Secretary of Health and Human Services to develop and disseminate best practices for organizations that operate housing designed for people recovering from substance use disorders.

*Legislative History*

H.R. 4684 was introduced by Representative Judy Chu (CA–27) on December 19, 2017, and referred to the Committee on Energy and Commerce. H.R. 4684 was referred to the Subcommittee on Health on December 22, 2017.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider H.R. 4684 and forwarded the bill, as amended, to the full Committee by a voice vote.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 4684 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, H.R. 4684 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 13, 2018, H.R. 4684 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill. The provisions of H.R. 4684 were included in H.R. 6, which is discussed elsewhere in this report.

340B PROTECTING ACCESS FOR THE UNDERSERVED AND SAFETY-NET ENTITIES ACT OR THE 340B PAUSE ACT

H.R. 4710

To amend the Public Health Service Act to establish a moratorium on the registration of certain new 340B hospitals and associated sites, and for other purposes.

*Summary*

H.R. 4710 would prohibit the registration of any new 340B covered entities into the program for two years.

*Legislative History*

H.R. 4710 was introduced by Representative Larry Bucshon (IN–08) on December 21, 2017, and referred to the Committee on Energy and Commerce. H.R. 4710 was referred to the Subcommittee on Health on December 22, 2017.

On July 11, 2018, the Subcommittee on Health held a hearing on H.R. 4710.

No further action was taken on the bill.

### STANDARDIZING ELECTRONIC PRIOR AUTHORIZATION FOR SAFE PRESCRIBING ACT OF 2018

#### H.R. 4841

To amend title XVIII of the Social Security Act to provide for electronic prior authorization under Medicare Part D for covered Part D drugs, and for other purposes.

*Summary*

H.R. 4841 would require health care professionals to submit prior authorization requests electronically, starting on January 1, 2021, for drugs covered under Medicare Part D.

*Legislative History*

H.R. 4841 was introduced by Representative David Schweikert (AZ–06) on January 18, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means. H.R. 4841 was referred to the Subcommittee on Health on January 19, 2018.

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on H.R. 4841.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider H.R. 4841 and forwarded the bill, without amendment, to the full Committee by unanimous consent.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 4841 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 4841, as amended, to the House (H. Rept. 115–747, Part 1), and the bill was placed on the Union Calendar (Calendar No. 581).

No further action was taken on the bill. The provisions of H.R. 4841 were included in H.R. 6, which is discussed elsewhere in this report.

### HEALTH INSURANCE FOR FORMER FOSTER YOUTH ACT

#### H.R. 4998

To amend title XIX of the Social Security Act to ensure health insurance coverage continuity for former foster youth.

*Summary*

H.R. 4998 would require States to provide Medicaid coverage to adults up to age 25 who had aged out of foster care in any State. Under current law, such coverage is mandatory only if the former foster care youth has aged out in the State in which the individual applies for coverage. The policy also would apply to former foster children who had been in foster care upon turning 14 years of age, but subsequently left foster care to enter into a legal guardianship with a kinship caregiver. The provisions would take effect respect for foster youth who turn 18 on or after January 1, 2023.

*Legislative History*

H.R. 4998 was introduced by Representative Karen Bass (CA–37) on February 13, 2018, and referred to the Committee on Energy and Commerce. H.R. 4998 was referred to the Subcommittee on Health on February 16, 2018.

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on H.R. 4998.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 4998 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 4998, as amended, to the House (H. Rept. 115–732), and the bill was placed on the Union Calendar (Calendar No. 567).

No further action was taken on the bill. The provisions of H.R. 4998 were included in H.R. 6, which is discussed elsewhere in this report.

### ADVANCING CUTTING EDGE RESEARCH ACT OR THE ACE RESEARCH ACT

H.R. 5002

To expand the unique research initiatives authority of the National Institutes of Health.

*Summary*

H.R. 5002 would amend the Public Health Service Act to expand the National Institutes of Health's research initiatives to include cutting-edge research that (1) fosters scientific creativity and increases fundamental biological understanding leading to the prevention, diagnosis, or treatment of diseases and disorders; or (2) is urgently required to respond to a public health threat.

*Legislative History*

H.R. 5002 was introduced by Representative Debbie Dingell (MI–12) on February 13, 2018, and referred to the Committee on Energy and Commerce. H.R. 5002 was referred to the Subcommittee on Health on February 16, 2018.

On March 21 and 22, 2018, the Subcommittee on Health held a hearing on H.R. 5002.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider H.R. 5002 and forwarded the bill, without amendment, to the full Committee by unanimous consent.

188

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5002 and ordered the bill, without amendment, favorably reported to the House by a voice vote.

On June 12, 2018, H.R. 5002 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On June 13, 2018, H.R. 5002 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill. The provisions of H.R. 5002 were included in H.R. 6, which is discussed elsewhere in this report.

<div align="center">JESSIE'S LAW</div>

<div align="center">H.R. 5009</div>

To include information concerning a patient's opioid addiction in certain medical records.

*Summary*

H.R. 5009 would require the Department of Health and Human Services (HHS), in collaboration with outside experts, to develop best practices for displaying information about opioid use disorder in a patient's medical record. HHS also would be required to develop and disseminate written materials annually to health care providers about what disclosures could be made while still complying with Federal laws that govern health care privacy.

*Legislative History*

H.R. 5009 was introduced by Representative Tim Walberg (MI–07) on February 13, 2018, and referred to the Committee on Energy and Commerce. H.R. 5009 was referred to the Subcommittee on Health on February 16, 2018.

On March 21 and 22, 2018, the Subcommittee on Health held a hearing on H.R. 5009.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider H.R. 5009 and forwarded the bill, without amendment, to the full Committee by unanimous consent.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5009 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, H.R. 5009 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 13, 2018, H.R. 5009 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill. The provisions of H.R. 5009 were included in H.R. 6, which is discussed elsewhere in this report.

SAFE DISPOSAL OF UNUSED MEDICATION ACT

H.R. 5041

To include information concerning a patient's opioid addiction in certain medical records.

*Summary*

H.R. 5041 would require hospice programs to have written policies and procedures for the disposal of controlled substances after a patient's death. Certain licensed employees of hospice programs would be permitted to assist in the disposal of controlled substances that were lawfully dispensed.

*Legislative History*

H.R. 5041 was introduced by Representative Tim Walberg (MI–07) on February 15, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on the Judiciary. H.R. 5041 was referred to the Subcommittee on Health on February 16, 2018.

On February 28, 2018, the Subcommittee on Health held a hearing on H.R. 5041.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider H.R. 5041 and forwarded the bill, as amended, to the full Committee by a voice vote.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5041 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, H.R. 5041 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a recorded vote of 398 yeas and 0 nays (Roll Call No. 259).

On June 13, 2018, H.R. 5041 was received in the Senate, read twice, and referred to the Committee on the Judiciary.

No further action was taken on the bill. The provisions of H.R. 5041 were included in H.R. 6, which is discussed elsewhere in this report.

SUBSTANCE USE DISORDER WORKFORCE LOAN REPAYMENT ACT OF 2018

H.R. 5102

To amend the Public Health Service Act to authorize a loan repayment program for substance use disorder treatment employees, and for other purposes.

*Summary*

H.R. 5102 would establish a loan repayment program for mental health professionals who practice in areas with few mental health providers or with high rates of death from overdose.

*Legislative History*

H.R. 5102 was introduced by Representative Katherine M. Clark (MA–05) on February 27, 2018, and referred to the Committee on

190

Energy and Commerce. H.R. 5102 was referred to the Subcommittee on Health on March 2, 2018.

On March 21 and 22, 2018, the Subcommittee on Health held a hearing on H.R. 5102.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider H.R. 5102 and forwarded the bill, without amendment, to the full Committee by unanimous consent.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5102 and ordered the bill, without amendment, favorably reported to the House by a voice vote.

On June 12, 2018, H.R. 5102 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On June 13, 2018, H.R. 5102 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill. The provisions of H.R. 5102 were included in H.R. 6, which is discussed elsewhere in this report.

TRIBAL ADDICTION AND RECOVERY ACT OF 2018 OR THE TARA ACT

H.R. 5140

To make improvements to the Account For the State Response to the Opioid Abuse Crisis to improve tribal health.

*Summary*

H.R. 5140 would authorize tribes to participate in the opioid grant program established in section 1003 of the 21st Century Cures Act (42 U.S.C. 290ee–3 note), and include prevention and treatment of prescription drug abuse and the use of other addictive substances (such as alcohol, heroin, and methamphetamine), including by providing mental health services among the permissible uses of such grant program.

*Legislative History*

H.R. 5140 was introduced by Representative Markwayne Mullin (OK–01) on March 1, 2018, and referred to the Committee on Energy and Commerce. H.R. 5140 was referred to the Subcommittee on Health on March 2, 2018.

On March 21 and 22, 2018, the Subcommittee on Health held a hearing on H.R. 5140.

No further action was taken on the bill.

PREVENTING OVERDOSES WHILE IN EMERGENCY ROOMS ACT OF 2018

H.R. 5176

To require the Secretary of Health and Human Services to provide coordinated care to patients who have experienced a non-fatal overdose after emergency room discharge, and for other purposes.

## Summary

H.R. 5176 would require the Secretary of Health and Human Services to develop protocols and a grant program for health care providers to address the needs of people who survive a drug overdose.

## Legislative History

H.R. 5176 was introduced by Representative David B. McKinley (WV–01) on March 6, 2018, and referred to the Committee on Energy and Commerce. H.R. 5176 was referred to the Subcommittee on Health on March 9, 2018.

On March 21 and 22, 2018, the Subcommittee on Health held a hearing on H.R. 5176.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider H.R. 5176 and forwarded the bill, as amended, to the full Committee by a voice vote.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5176 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, H.R. 5176 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 13, 2018, H.R. 5176 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill. The provisions of H.R. 5176 were included in H.R. 6, which is discussed elsewhere in this report.

## ALTERNATIVES TO OPIOIDS IN THE EMERGENCY DEPARTMENT ACT OR THE ALTO ACT

### H.R. 5197

To direct the Secretary of Health and Human Services to conduct a demonstration program to test alternative pain management protocols to limit the use of opioids in emergency departments.

## Summary

H.R. 5197 would direct the Secretary of Health and Human Services to carry out a demonstration program for hospitals and emergency departments to develop alternative protocols for pain management that limit the use of opioids.

## Legislative History

H.R. 5197 was introduced by Representative Bill Pascrell, Jr. (NJ–09) on March 7, 2018, and referred to the Committee on Energy and Commerce. H.R. 5197 was referred to the Subcommittee on Health on March 9, 2018.

On March 21 and 22, 2018, the Subcommittee on Health held a hearing on H.R. 5197.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider H.R. 5197 and forwarded the bill, as amended, to the full Committee by a voice vote.

192

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5197 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, H.R. 5197 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 13, 2018, H.R. 5197 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill. The provisions of H.R. 5197 were included in H.R. 6, which is discussed elsewhere in this report.

### ENSURING PATIENT ACCESS TO SUBSTANCE USE DISORDER TREATMENTS ACT OF 2018

#### H.R. 5202, S. 916

To amend the Controlled Substances Act to provide for the delivery of a controlled substance by a pharmacy to an administering practitioner.

*Summary*

H.R. 5202 would clarify the authority of pharmacists to deliver controlled substances to providers under certain circumstances.

*Legislative History*

H.R. 5202 was introduced by Representative Ryan A. Costello (PA–06) on March 7, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on the Judiciary. H.R. 5202 was referred to the Subcommittee on Health on March 9, 2018.

On February 28, 2018, the Subcommittee on Health held a hearing on H.R. 5202.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider H.R. 5202 and forwarded the bill, without amendment, to the full Committee by a voice vote.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5202 and ordered the bill, without amendment, favorably reported to the House by a voice vote.

No further action was taken on the bill.

S. 916 was introduced by Senator Bill Cassidy (LA) on April 24, 2017, and referred to the Committee on Health, Education, Labor, and Pensions. S. 916 was the Senate companion bill to H.R. 5202.

On March 21, 2017, Senator Lamar Alexander (TN) reported S. 916, as amended, to the Senate without a written report, and the bill was placed on the Senate Legislative Calendar under General Orders (Calendar No. 46).

On May 23, 2018, S. 916 was considered in the Senate, and the bill, as amended, was passed by unanimous consent.

No further action was taken on the bill. The provisions of S. 916 were included in H.R. 6, which is discussed elsewhere in this report.

193

STOP COUNTERFEIT DRUGS BY REGULATING AND ENHANCING
ENFORCEMENT NOW ACT OR THE SCREEN ACT

H.R. 5228

To strengthen the authorities of the Food and Drug Administration to address counterfeit drugs, illegal and synthetic opioids, and opioid-like substances, and for other purposes.

*Summary*

H.R. 5228 would require drug distributors to cease distributing any drug that the Secretary of Health and Human Services determines might present an imminent or substantial hazard to public health.

*Legislative History*

H.R. 5228 was introduced by Representative Frank Pallone, Jr. (NJ–06) on March 8, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on the Budget. H.R. 5228 was referred to the Subcommittee on Health on March 9, 2018.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider H.R. 5228 and forwarded the bill, as amended, to the full Committee by a voice vote.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5228 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, H.R. 5228 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 13, 2018, H.R. 5228 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill. The provisions of H.R. 5228 were included in H.R. 6, which is discussed elsewhere in this report.

TREATMENT, EDUCATION, AND COMMUNITY HELP TO COMBAT ADDICTION ACT OF 2018 OR THE TEACH TO COMBAT ADDICTION ACT OF 2018

H.R. 5261

To amend the Public Health Service Act to provide for regional centers of excellence in substance use disorder education, and for other purposes.

*Summary*

H.R. 5261 would direct the Secretary of Health and Human Services to designate regional centers of excellence to improve the training of health professionals who treat substance use disorders.

*Legislative History*

H.R. 5261 was introduced by Representative Bill Johnson (OH–06) on March 13, 2018, and referred to the Committee on Energy

194

and Commerce. H.R. 5261 was referred to the Subcommittee on Health on March 16, 2018.

On March 21 and 22, 2018, the Subcommittee on Health held a hearing on H.R. 5261.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider H.R. 5261 and forwarded the bill, as amended, to the full Committee by unanimous consent.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5261 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, H.R. 5261 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 13, 2018, H.R. 5261 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill. The provisions of H.R. 5261 were included in H.R. 6, which is discussed elsewhere in this report.

TO PROVIDE ADDITIONAL GUIDANCE TO GRANTEES SEEKING FUNDING TO TREAT OR PREVENT MENTAL HEALTH OR SUBSTANCE USE DISORDERS

H.R. 5272

To provide additional guidance to grantees seeking funding to treat or prevent mental health or substance use disorders.

*Summary*

H.R. 5272 would require the newly established National Mental Health and Substance Use Policy Laboratory to issue guidance to applicants for Substance Abuse and Mental Health Services Administration grants that support evidence-based practices.

*Legislative History*

H.R. 5272 was introduced by Representative Steve Stivers (OH–15) on March 14, 2018, and referred to the Committee on Energy and Commerce. H.R. 5272 was referred to the Subcommittee on Health on March 16, 2018.

On March 21 and 22, 2018, the Subcommittee on Health held a hearing on H.R. 5272.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider H.R. 5272 and forwarded the bill, as amended, to the full Committee by a voice vote.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5272 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, H.R. 5272 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 13, 2018, H.R. 5272 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill. The provisions of H.R. 5272 were included in H.R. 6, which is discussed elsewhere in this report.

ENSURING MEDICAID PROVIDES OPPORTUNITIES FOR WIDESPREAD EQUITY, RESOURCES, AND CARE ACT OR THE EMPOWER CARE ACT

H.R. 5306

To reauthorize the Money Follows the Person Demonstration Program.

*Summary*

H.R. 5306 would extend funding for the Money Follows the Person Demonstration Program (MFP demonstration) for an additional year. The MFP demonstration provides additional resources for State Medicaid programs to help ensure Medicaid patients needing long term care are served in their communities.

*Legislative History*

H.R. 5306 was introduced by Representative Brett Guthrie (KY–02) on March 15, 2018, and referred to the Committee on Energy and Commerce. H.R. 5306 was referred to the Subcommittee on Health on March 16, 2018.

On September 5, 2018, the Subcommittee on Health held a hearing on H.R. 5306.

On September 7, 2018, the Subcommittee on Health met in open markup session to consider H.R. 5306 and forwarded the bill, as amended, to the full Committee by a voice vote.

On September 13, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5306 and ordered the bill, as amended, favorably reported to the House by a voice vote.

No further action was taken on the bill.

COMPREHENSIVE OPIOID RECOVERY CENTERS ACT OF 2018

H.R. 5327

To amend title V of the Public Health Service Act to establish a grant program to create comprehensive opioid recovery centers, and for other purposes.

*Summary*

H.R. 5327 would direct the Secretary of Health and Human Services to award grants to at least ten providers that offer treatment services for people with opioid use disorder.

*Legislative History*

H.R. 5327 was introduced by Representative Brett Guthrie (KY–02) on March 19, 2018, and referred to the Committee on Energy and Commerce. H.R. 5327 was referred to the Subcommittee on Health on April 25, 2018.

On March 21 and 22, 2018, the Subcommittee on Health held a hearing on H.R. 5327.

197

OVER-THE-COUNTER MONOGRAPH SAFETY, INNOVATION, AND
REFORM ACT OF 2018

H.R. 5333

To amend the Federal Food, Drug, and Cosmetic Act to clarify the regulatory framework with respect to certain nonprescription drugs that are marketed without an approved new drug application, and for other purposes.

*Summary*

H.R. 5333 would amend the Federal Food, Drug, and Cosmetic Act to reform the over-the-counter monograph framework.

*Legislative History*

On September 13, 2017, the Subcommittee on Health held a hearing on a discussion draft entitled "Over-the-Counter Monograph Safety, Innovation, and Reform Act of 2017."

On January 17, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full committee by a voice vote.

H.R. 5333 was introduced by Representative Robert E. Latta (OH–05) on March 19, 2018, and referred to the Committee on Energy and Commerce. H.R. 5333 was referred to the Subcommittee on Health on March 23, 2018. H.R. 5333 was similar to the discussion draft.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5333 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On July 16, 2018, the Committee on Energy and Commerce reported H.R. 5333, as amended, to the House (H.Rept. 115–827), and the bill was placed on the Union Calendar (Calendar No. 640).

On July 16, 2018, H.R. 5333 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On July 17, 2018, H.R. 5333 was received in the Senate, read twice, and placed on the Senate Legislative Calendar under General Orders (Calendar No. 518). The provisions of H.R. 5333 were included in H.R. 7328 and H.R. 6378, which are discussed elsewhere in this report.

ELIMINATING OPIOID RELATED INFECTIOUS DISEASES ACT OF 2018

H.R. 5353

To amend the Public Health Service Act to reauthorize and expand a program of surveillance and education, carried out by the Centers for Disease Control and Prevention, regarding infections associated with injection drug use.

*Summary*

H.R. 5353 would amend the Public Health Service Act by broadening the focus of surveillance and education programs from preventing and treating hepatitis C virus to preventing and treating infections associated with injection drug use.

198

*Legislative History*

H.R. 5353 was introduced by Representative Leonard Lance (NJ–07) on March 20, 2018, and referred to the Committee on Energy and Commerce. H.R. 5353 was referred to the Subcommittee on Health on April 25, 2018.

On March 21 and 22, 2018, the Subcommittee on Health held a hearing on H.R. 5353.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider H.R. 5353 and forwarded the bill, as amended, to the full Committee by a voice vote.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5353 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, H.R. 5353 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 13, 2018, H.R. 5353 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill. The provisions of H.R. 5353 were included in H.R. 6, which is discussed elsewhere in this report.

BETTER PAIN MANAGEMENT THROUGH BETTER DATA ACT OF 2018

H.R. 5473

To direct the Secretary of Health and Human Services to update or issue one or more guidances addressing alternative methods for data collection on opioid sparing and inclusion of such data in product labeling, and for other purposes.

*Summary*

H.R. 5473 would require that the Food and Drug Administration conduct a public meeting and issue guidance to industry addressing data collection and labeling for medical products that reduce pain while enabling the reduction, replacement, or avoidance of oral opioids.

*Legislative History*

On March 21 and 22, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To direct the Secretary of Health and Human Services to update or issue guidance addressing alternative methods for data collection on opioid sparing and inclusion of such data in product labeling, and for other purposes."

H.R. 5473 was introduced by Representative Barbara Comstock (VA–10) on April 11, 2018, and referred to the Committee on Energy and Commerce. H.R. 5473 was referred to the Subcommittee on Health on April 13, 2018.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by a voice vote.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5473 and ordered the

199

bill, without amendment, favorably reported to the House by a voice vote.

On June 12, 2018, H.R. 5473 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 13, 2018, H.R. 5473 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill. The provisions of H.R. 5473 were included in H.R. 6, which is discussed elsewhere in this report.

### Rural Development of Opioid Capacity Services Act

#### H.R. 5477

To amend title XIX of the Social Security Act to provide for a demonstration project to increase substance use provider capacity under the Medicaid program.

*Summary*

H.R. 5477 would direct the Secretary of Health and Human Services to conduct a five-year demonstration to increase the number and ability of providers participating in Medicaid to provide treatment for substance use disorders.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend title XIX of the Social Security Act to provide for a demonstration project to increase substance use provider capacity under the Medicaid program."

H.R. 5477 was introduced by Representative Tom O'Halleran (AZ–01) on April 11, 2018, and referred to the Committee on Energy and Commerce. H.R. 5477 was referred to the Subcommittee on Health on April 25, 2018. H.R. 5477 was similar to the discussion draft.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5477 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 5477, as amended, to the House (H.Rept. 115–731), and the bill was placed on the Union Calendar (Calendar No. 566).

No further action was taken on the bill. The provisions of H.R. 5477 were included in H.R. 6, which is discussed elsewhere in this report.

### Special Registration for Telemedicine Clarification Act of 2018

#### H.R. 5483

To impose a deadline for the promulgation of interim final regulations in accordance with section 311(h) of the Controlled Substances Act (21 U.S.C. 831(h)) specifying the circumstances in

200

which a special registration may be issued to a practitioner to engage in the practice of telemedicine, and for other purposes.

*Summary*

H.R. 5483 would direct the Department of Justice, within one year of the bill's enactment, to issue regulations concerning the practice of telemedicine (for remote diagnosis and treatment of patients).

*Legislative History*

On February 28, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "Special Registration for Telemedicine Clarification Act of 2018."

H.R. 5483 was introduced by Representative Earl L. "Buddy" Carter (GA–01) on April 12, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on the Judiciary. H.R. 5483 was similar to the discussion draft. H.R. 5483 was referred to the Subcommittee on Health on April 25, 2018.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider H.R. 5483 and forwarded the bill, as amended, to the full Committee by a voice vote.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5483 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, H.R. 5483 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 13, 2018, H.R. 5483 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill. The provisions of H.R. 5483 were included in H.R. 6, which is discussed elsewhere in this report.

PROTECTING NEONATAL ABSTINENCE SYNDROME BABIES ACT OR THE PROTECTING NAS BABIES ACT

H.R. 5562

To require the Secretary of Health and Human Services to develop a strategy implementing certain recommendations relating to the Protecting Our Infants Act of 2015, and for other purposes.

*Summary*

H.R. 5562 would direct the Department of Health and Human Services (HHS) to submit to Congress a strategy for implementing recommendations under the "child" categories in the HHS Behavioral Health Coordinating Council report entitled "Protecting Our Infants Act: Final Strategy." The strategy would (1) include a timeline for the implementation of each such recommendation; (2) provide for the dissemination of information to State health agencies on best practices and available resources and data with respect to implementing each such recommendation; and (3) include recommendations for any statutory change, including providing for ad-

ditional authorities, that would help the HHS implement the strategy.

*Legislative History*

H.R. 5562 was introduced by Representative Evan H. Jenkins (WV–03) on April 18, 2018, and referred to the Committee on Energy and Commerce. H.R. 5562 was referred to the Subcommittee on Health on April 25, 2018.

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on H.R. 5562.

No further action was taken on the bill.

SURVEILLANCE AND TESTING OF OPIOIDS TO PREVENT FENTANYL DEATHS ACT OF 2018 OR THE STOP FENTANYL DEATHS ACT OF 2018

H.R. 5580

To authorize the Secretary of Health and Human Services to conduct programs to address the usage of illicit drugs, particularly fentanyl, and for other purposes.

*Summary*

H.R. 5580 would establish a grant program for public health laboratories that conduct testing for fentanyl and other synthetic opioids. It also would direct the Centers for Disease Control and Prevention to expand its drug surveillance program, with a particular focus on collecting data on fentanyl.

*Legislative History*

On March 21 and 22, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To authorize the Secretary of Health and Human Services to conduct programs to address the usage of illicit drugs, particularly fentanyl, and for other purposes."

H.R. 5580 was introduced by Representative Ann M. Kuster (NH–02) on April 23, 2018, and referred to the Committee on Energy and Commerce. H.R. 5580 was similar to the discussion draft. H.R. 5580 was referred to the Subcommittee on Health on April 27, 2018.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by unanimous consent.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5580 and ordered the bill, without amendment, favorably reported to the House by a voice vote.

No further action was taken on the bill. The provisions of H.R. 5580 were included in H.R. 6, which is discussed elsewhere in this report.

202

### ABUSE DETERRENT ACCESS ACT OF 2018

#### H.R. 5582

To direct the Secretary of Health and Human Services to conduct a study and submit a report on barriers to accessing abuse-deterrent opioid formulations for individuals enrolled in a plan under Part C or D of the Medicare program.

*Summary*

H.R. 5582 would require the Secretary of Health and Human Services to report to the Congress on existing barriers to access to "abuse-deterrent opioid formulations" by Medicare Part C and D beneficiaries.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To direct the Secretary of Health and Human Services to conduct a study on barriers to accessing abuse-deterrent opioid formulations for individuals enrolled in a plan under Part C or D of the Medicare program."

H.R. 5582 was introduced by Representative Earl L. "Buddy" Carter (GA–01) on April 23, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means. H.R. 5582 was referred to the Subcommittee on Health on April 27, 2018. H.R. 5582 was similar to the discussion draft.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by a voice vote.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5582 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 5582, as amended, to the House (H.Rept. 115–721, Part 1), and the bill was placed on the Union Calendar (Calendar No. 556).

On June 12, 2018, H.R. 5582 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 13, 2018, H.R. 5582 was received in the Senate, and read twice, referred to the Committee on Finance.

No further action was taken on the bill. The provisions of H.R. 5582 were included in H.R. 6, which is discussed elsewhere in this report.

### TO AMEND TITLE XI OF THE SOCIAL SECURITY ACT TO REQUIRE STATES TO ANNUALLY REPORT ON CERTAIN ADULT HEALTH QUALITY MEASURES, AND FOR OTHER PURPOSES

#### H.R. 5583

To amend title XI of the Social Security Act to require States to annually report on certain adult health quality measures, and for other purposes.

203

*Summary*

H.R. 5583 would require States to include behavioral health indicators in their annual reports on the quality of care under Medicaid.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend title XI of the Social Security Act to require States to annually report on certain adult health quality measures, and for other purposes."

H.R. 5583 was introduced by Representative Yvette D. Clarke (NY–09) on April 23, 2018, and referred to the Committee on Energy and Commerce. H.R. 5583 was referred to the Subcommittee on Health on April 27, 2018. H.R. 5583 was similar to the discussion draft.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by a voice vote.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5583 and ordered the bill, without amendment, favorably reported to the House by a voice vote.

On June 8, 2018, the Committee on Energy and Commerce reported H.R. 5583, without amendment, to the House (H.Rept. 115–716), and the bill was placed on the Union Calendar (Calendar No. 551).

On June 12, 2018, H.R. 5583 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On June 13, 2018, H.R. 5583 was received in the Senate, read twice, and referred to the Committee on Finance.

No further action was taken on the bill. The provisions of H.R. 5583 were included in H.R. 6, which is discussed elsewhere in this report.

PEER SUPPORT COMMUNITIES OF RECOVERY ACT

H.R. 5587

To amend the Public Health Service Act to authorize certain recovery services grants to be used to establish regional technical assistance centers.

*Summary*

H.R. 5587 would direct the Secretary of Health and Human Services to award grants to nonprofit organizations that support community-based, peer-delivered support, including technical support for the establishment of recovery community organizations, independent, nonprofit groups led by people in recovery and their families.

*Legislative History*

On March 21 and 22, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend the Public Health

204

Service Act to authorize certain recovery services grants to be used to establish regional technical assistance centers."

H.R. 5587 was introduced by Representative Ben Ray Luján (NM–03) on April 23, 2018, and referred to the Committee on Energy and Commerce. H.R. 5587 was referred to the Subcommittee on Health on April 27, 2018. H.R. 5587 was similar to the discussion draft.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by a voice vote.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5587 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, H.R. 5587 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On June 13, 2018, H.R. 5587 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill. The provisions of H.R. 5587 were included in H.R. 6, which is discussed elsewhere in this report.

OPIOID ADDICTION ACTION PLAN ACT

H.R. 5590

To require the Secretary of Health and Human Services to provide for an action plan on recommendations for changes under Medicare and Medicaid to prevent opioids addictions and enhance access to medication-assisted treatment, and for other purposes.

*Summary*

H.R. 5590 would require the Secretary of Health and Human Services (HHS) to develop an action plan by January 1, 2019, for increasing access to medication-assisted treatment among Medicare and Medicaid enrollees. The bill also would require HHS to convene a stakeholder meeting and issue a request for information within three months of enactment, and to submit a report to the Congress by June 1, 2019.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To require the Secretary of Health and Human Services to provide for an action plan on recommendations for changes under Medicare and Medicaid to prevent opioids addictions and enhance access to medication-assisted treatment, and for other purposes."

H.R. 5590 was introduced by Representative Adam Kinzinger (IL–16) on April 24, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means. H.R. 5590 was referred to the Subcommittee on Health on April 27, 2018. H.R. 5590 was similar to the discussion draft.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the

205

bill, without amendment, to the full Committee by unanimous consent.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5590 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 5590, as amended, to the House (H.Rept. 115–746, Part 1), and the bill was placed on the Union Calendar (Calendar No. 580).

On June 19, 2018, H.R. 5590 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 20, 2018, H.R. 5590 was received in the Senate, read twice, and referred to the Committee on Finance.

No further action was taken on the bill. The provisions of H.R. 5590 were included in H.R. 6, which is discussed elsewhere in this report.

IMPROVING ACCESS TO REMOTE BEHAVIORAL HEALTH TREATMENT ACT OF 2018

H.R. 5594

To amend the Controlled Substances Act to clarify the eligibility of certain community mental health centers to register for purposes of the practice of telemedicine, and for other purposes.

*Summary*

H.R. 5594 would expand access for patients in rural and underserved communities who may live near community mental health or addiction treatment centers, but not a hospital or State-licensed clinic. Without a Drug Enforcement Administration (DEA) registration, these health facilities do not qualify for the Ryan Haight Act's telemedicine exception and are unable to provide care to patients in need. The bill would direct the Attorney General, with the Secretary of Health and Human Services, to promulgate interim final regulations for these treatment facilities to register with the DEA to engage in the practice of telemedicine.

*Legislative History*

On February 28, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "Improving Access to Remote Behavioral Health Treatment Act of 2018."

H.R. 5594 was introduced by Representative Gregg Harper (MS–03) on April 24, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on the Judiciary. H.R. 5594 was referred to the Subcommittee on Health on April 27, 2018. H.R. 5594 was similar to the discussion draft.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by a voice vote.

No further action was taken on the bill.

206

### 340B Optimization Act

H.R. 5598

To amend the Public Health Service Act to require certain disproportionate share hospital covered entities under the 340B drug discount program to submit to the Secretary of Health and Human Services reports on low-income utilization rates of outpatient hospital services furnished by such entities.

*Summary*

H.R. 5598 would require certain disproportionate share hospitals covered entities under the 340B program to submit reports to the Secretary of Health and Human Services on the low-income utilization rates of outpatient hospital services furnished by such entities, including both parent and child sites.

*Legislative History*

H.R. 5598 was introduced by Representative Earl L. "Buddy" Carter (GA–01) on April 24, 2018, and referred to the Committee on Energy and Commerce. H.R. 5598 was referred to the Subcommittee on Health on April 27, 2018.

On July 11, 2018, the Subcommittee on Health held a hearing on H.R. 5598.

No further action was taken on the bill.

### Access to Telehealth Services for Substance Use Disorders Act

H.R. 5603

To amend title XVIII of the Social Security Act to provide the Secretary of Health and Human Services authority to waive certain Medicare telehealth requirements in the case of certain treatment of an opioid use disorder or co-occurring mental health disorder.

*Summary*

H.R. 5603 would permit the Secretary of Health and Human Services to lift current geographic and other restrictions on coverage of telehealth services under Medicare for treatment of substance use disorders or co-occurring mental health disorders. Under the bill, the Secretary would be directed to encourage other payers to coordinate payments for opioid use disorder treatments and to evaluate the extent to which the demonstration reduces hospitalizations, increases the use of medication-assisted treatments, and improves the health outcomes of individuals with opioid use disorders during and after the demonstration.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend title XVIII of the Social Security Act to provide the Secretary of Health and Human Services authority to waive certain Medicare telehealth requirements in the case of certain treatment of an opioid use disorder or co-occurring mental health disorder."

H.R. 5603 was introduced by Representative Doris O. Matsui (CA–06) on April 24, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means. H.R. 5603 was referred to the Subcommittee on Health on April 27, 2018. H.R. 5603 was similar to the discussion draft.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by a voice vote.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5603 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 5603, as amended, to the House (H.Rept. 115–745, Part 1), and the bill was placed on the Union Calendar (Calendar No. 579).

No further action was taken on the bill. The provisions of H.R. 5603 were included in H.R. 6, which is discussed elsewhere in this report.

### ADVANCING HIGH QUALITY TREATMENT FOR OPIOID USE DISORDERS IN MEDICARE ACT

#### H.R. 5605

To amend title XVIII of the Social Security Act to provide for an opioid use disorder treatment demonstration program, and for other purposes.

*Summary*

H.R. 5605 would establish a five-year demonstration program to increase access to treatment for opioid use disorder. The demonstration would provide incentive payments and funding for care management services based on criteria such as patient engagement, use of evidence-based treatments, and treatment length and intensity. Under the bill, the Secretary of Health and Human Services would be directed to encourage other payers to coordinate payments for opioid use disorder treatments and to evaluate the extent to which the demonstration reduces hospitalizations, increases the use of medication-assisted treatments, and improves the health outcomes of individuals with opioid use disorders during and after the demonstration.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "Advancing High Quality Treatment for Opioid Use Disorders in Medicare Act."

H.R. 5605 was introduced by Representative Raul Ruiz (CA–36) on April 24, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means. H.R. 5605 was referred to the Subcommittee on Health on April 27, 2018. H.R. 5605 was similar to the discussion draft.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by a voice vote.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5605 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 5605, as amended, to the House (H.Rept. 115–744, Part 1), and the bill was placed on the Union Calendar (Calendar No. 578).

On June 19, 2018, H.R. 5605 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 20, 2018, H.R. 5605 was received in the Senate, read twice, and referred to the Committee on Finance.

No further action was taken on the bill. The provisions of H.R. 5605 were included in H.R. 6, which is discussed elsewhere in this report.

To amend title XVIII of the Social Security Act to require prescription drug plan sponsors under the Medicare program to establish drug management programs for at-risk beneficiaries

H.R. 5675

To amend title XVIII of the Social Security Act to require prescription drug plan sponsors under the Medicare program to establish drug management programs for at-risk beneficiaries.

*Summary*

H.R. 5675 would require Part D prescription drug plans to provide drug management programs for Medicare beneficiaries who are at risk for prescription drug abuse.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend title XVIII of the Social Security Act to require prescription drug plan sponsors under the Medicare program to establish drug management programs for at-risk beneficiaries."

H.R. 5675 was introduced by Representative Gus M. Bilirakis (FL–12) on May 3, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means. H.R. 5675 was referred to the Subcommittee on Health on May 4, 2018. H.R. 5675 was similar to the discussion draft.

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by a voice vote.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5675 and ordered the bill, without amendment, favorably reported to the House by a voice vote.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 5675, as amended, to the House (H.Rept. 115–743, Part 1), and the bill was placed on the Union Calendar (Calendar No. 577).

209

No further action was taken on the bill. The provisions of H.R. 5675 were included in H.R. 6, which is discussed elsewhere in this report.

### PROTECTING SENIORS FROM OPIOID ABUSE ACT

#### H.R. 5684

To amend title XVIII of the Social Security Act to expand eligibility for medication therapy management programs established under Part D of the Medicare program to include certain individuals who are at risk for prescription drug abuse.

*Summary*

H.R. 5684 would expand medication therapy management programs under Medicare Part D to include beneficiaries who are at risk for prescription drug abuse.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend title XVIII of the Social Security Act to expand eligibility for medication therapy management programs established under Part D of the Medicare program to include certain individuals who are at risk for prescription drug abuse."

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by unanimous consent.

H.R. 5684 was introduced by Representative Mike Kelly (PA–03) on May 7, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means. H.R. 5684 was referred to the Subcommittee on Health on May 4, 2018. H.R. 5684 was similar to the discussion draft.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5684 and ordered the bill, without amendment, favorably reported to the House by a voice vote.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 5684, as amended, to the House (H.Rept. 115–742, Part 1), and the bill was placed on the Union Calendar (Calendar No. 576).

No further action was taken on the bill. The provisions of H.R. 5684 were included in H.R. 6, which is discussed elsewhere in this report.

### MEDICARE OPIOID SAFETY EDUCATION ACT OF 2018

#### H.R. 5685

To amend title XVIII of the Social Security Act to provide educational resources regarding opioid use and pain management as part of the Medicare & You handbook.

210

*Summary*

H.R. 5685 would require the Secretary of Health and Human Services to include information on opioid use, pain management, and nonpioid pain management treatments in future editions of Medicare & You, the program's handbook for beneficiaries, starting on January 1, 2019.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend title XVIII of the Social Security Act to provide educational resources regarding opioid use and pain management as part of the Medicare & You handbook."

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by unanimous consent.

H.R. 5685 was introduced by Representative John J. Faso (NY–19) on May 7, 2018, and referred to the Committee on Ways and Means, and in addition to the Committee on Energy and Commerce. H.R. 5685 was similar to the discussion draft.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5685 and ordered the bill, without amendment, favorably reported to the House by a voice vote.

On June 8, 2018, the Committee on Energy and Commerce reported H.R. 5685, without amendment, to the House (H.Rept. 115–715, Part 1).

On June 12, 2018, H.R. 5685 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On June 13, 2018, H.R. 5685 was received in the Senate, read twice, and referred to the Committee on Finance.

No further action was taken on the bill. The provisions of H.R. 5685 were included in H.R. 6, which is discussed elsewhere in this report.

## Medicare CHOICE Act of 2018

### H.R. 5686

To amend title XVIII of the Social Security Act to require prescription drug plans under Medicare Part D to include information on the adverse effects of opioid overutilization and of coverage of nonpharmacological therapies and nonopioid medications or devices used to treat pain.

*Summary*

H.R. 5686 would require prescription drug plans that provide coverage under Medicare Part D to furnish information to beneficiaries about the risks of opioid use and the availability of alternative treatments for pain.

211

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend title XVIII of the Social Security Act to require prescription drug plans under Medicare Part D to include information on the adverse effects of opioid overutilization and of coverage of nonpharmacological therapies and nonopioid medications or devices used to treat pain."

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by a voice vote.

H.R. 5686 was introduced by Representative Erik Paulsen (MN–03) on May 7, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means. H.R. 5686 was similar to the discussion draft.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5686 and ordered the bill, without amendment, favorably reported to the House by a voice vote.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 5686, without amendment, to the House (H.Rept. 115–741, Part 1), and the bill was placed on the Union Calendar (Calendar No. 575).

No further action was taken on the bill. The provisions of H.R. 5686 were included in H.R. 6, which is discussed elsewhere in this report.

SECURING OPIOIDS AND UNUSED NARCOTICS WITH DELIBERATE DISPOSAL AND PACKAGING ACT OF 2018 OR THE SOUND DISPOSAL AND PACKAGING ACT

H.R. 5687

To amend the Federal Food, Drug, and Cosmetic Act to require improved packaging and disposal methods with respect to certain drugs, and for other purposes.

*Summary*

H.R. 5687 would permit the Food and Drug Administration to require certain packaging and disposal technologies, controls, or measures to mitigate the risk of abuse and misuse of drugs.

*Legislative History*

On March 21 and 22, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend the Federal Food, Drug, and Cosmetic Act to require improved packaging and disposal methods with respect to certain drugs, and for other purposes."

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by a voice vote.

H.R. 5687 was introduced by Representative Richard Hudson (NC–08) on May 7, 2018, and referred to the Committee on Energy and Commerce. H.R. 5687 was similar to the discussion draft.

On May 9, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5687 and ordered the

212

bill, without amendment, favorably reported to the House by a voice vote.

On June 19, 2018, H.R. 5687 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a recorded vote of 342 yeas and 13 nays (Roll Call No. 269).

On June 20, 2018, H.R. 5687 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill. The provisions of H.R. 5687 were included in H.R. 6, which is discussed elsewhere in this report.

### STRENGTHENING PARTNERSHIPS TO PREVENT OPIOID ABUSE ACT

#### H.R. 5715

To amend title XVIII of the Social Security Act to provide for certain program integrity transparency measures under Medicare Parts C and D.

*Summary*

H.R. 5715 would require the Secretary of Health and Human Services (HHS) to establish a secure Internet portal to allow HHS, Medicare Advantage plans, and Medicare Part D plans to exchange information about fraud, waste, and abuse among providers and suppliers no later than two years after enactment. H.R. 5715 also would require organizations with Medicare Advantage contracts to submit information on investigations related to providers suspected of prescribing large volumes of opioids through a process established by the Secretary no later than January 2021.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend title XVIII of the Social Security Act to provide for certain program integrity transparency measures under Medicare Parts C and D."

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by unanimous consent.

H.R. 5715 was introduced by Representative James B. Renacci (OH–16) on May 9, 2018, and referred to the Committee on Ways and Means, and in addition to the Committee on Energy and Commerce. H.R. 5715 was referred to the Subcommittee on Health on May 11, 2018. H.R. 5715 was similar to the discussion draft.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5715 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 5715, without amendment, to the House (H.Rept. 115–737, Part 1).

No further action was taken on the bill. The provisions of H.R. 5715 were included in H.R. 6, which is discussed elsewhere in this report.

## Commit to Opioid Medical Prescriber Accountability and Safety For Seniors Act or the COMPASS Act

### H.R. 5716

To amend title XVIII of the Social Security Act to require the Secretary of Health and Human Services to provide notifications under the Medicare program to outlier prescribers of opioids.

*Summary*

H.R. 5716 would require the Secretary of Health and Human Services on an annual basis to identify high prescribers of opioids and furnish them with information about proper prescribing methods.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend title XVIII of the Social Security Act to require the Secretary of Health and Human Services to provide notifications under the Medicare program to outlier prescribers of opioids."

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by unanimous consent.

H.R. 5716 was introduced by Representative Peter J. Roskam (IL–06) on May 9, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means. H.R. 5716 was similar to the discussion draft.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5716 and ordered the bill, without amendment, favorably reported to the House by a voice vote.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 5716, without amendment, to the House (H.Rept. 115–740, Part 1), and the bill was placed on the Union Calendar (Calendar No. 574).

No further action was taken on the bill. The provisions of H.R. 5716 were included in H.R. 6, which is discussed elsewhere in this report.

## Stop Illicit Drug Importation Act of 2018

### H.R. 5752

To amend the Federal Food, Drug, and Cosmetic Act with respect to the importation of certain drugs, and for other purposes.

*Summary*

H.R. 5752 would amend the Federal, Food, Drug, and Cosmetic Act to strengthen the Food and Drug Administration's seizure powers and enhance its authority to detain, refuse, seize, or destroy illegal products offered for import.

*Legislative History*

On March 21 and 22, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend the Federal Food, Drug, and Cosmetic Act with respect to the importation of certain drugs, and for other purposes."

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, as amended, to the full Committee by a voice vote.

H.R. 5752 was introduced by Representative Marsha Blackburn (TN–07) on May 10, 2018, and referred to the Committee on Energy and Commerce. H.R. 5752 was referred to the Subcommittee on Health on May 11, 2018. H.R. 5752 was similar to the discussion draft.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5752 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 13, 2018, H.R. 5752 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 14, 2018, H.R. 5752 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill. The provisions of H.R. 5752 were included in H.R. 6, which is discussed elsewhere in this report.

TO AMEND TITLE XIX OF THE SOCIAL SECURITY ACT TO PROVIDE FOR MEDICAID COVERAGE PROTECTIONS FOR PREGNANT AND POST-PARTUM WOMEN WHILE RECEIVING INPATIENT TREATMENT FOR A SUBSTANCE USE DISORDER, AND FOR OTHER PURPOSES

H.R. 5789

To amend title XIX of the Social Security Act to provide for Medicaid coverage protections for pregnant and post-partum women while receiving inpatient treatment for a substance use disorder, and for other purposes.

*Summary*

H.R. 5789 would direct the Secretary of Health and Human Services to issue guidance to States on best practices under Medicaid and the Children's Health Insurance Program for treating infants with neonatal abstinence syndrome. H.R. 5789 also would direct the Government Accountability Office to study Medicaid coverage for pregnant and postpartum women with substance use disorders.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend title XIX of the Social Security Act to provide for Medicaid coverage protections for pregnant and postpartum women while receiving inpatient treatment for a substance use disorder."

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by a voice vote.

215

H.R. 5789 was introduced by Representative Bill Foster (IL–11) on May 15, 2018, and referred to the Committee on Energy and Commerce. H.R. 5789 was similar to the discussion draft.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5789 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 5789, as amended, to the House (H.Rept. 115–730), and the bill was placed on the Union Calendar (Calendar No. 565).

No further action was taken on the bill. The provisions of H.R. 5789 were included in H.R. 6, which is discussed elsewhere in this report.

RESPONSIBLE EDUCATION ACHIEVES CARE AND HEALTHY OUTCOMES FOR USERS' TREATMENT ACT OF 2018 OR THE REACH OUT ACT OF 2018

H.R. 5796

To require the Secretary of Health and Human Services to provide grants for eligible entities to provide technical assistance to outlier prescribers of opioids, and for other purposes.

*Summary*

H.R. 5796 would allow the Secretary of Health and Human Services to award grants to certain organizations that provide technical assistance and education to high-volume prescribers of opioids.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To require the Secretary of Health and Human Services to provide grants for eligible entities to provide technical assistance to outlier prescribers of opioids."

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by unanimous consent.

H.R. 5796 was introduced by Representative Brian K. Fitzpatrick (PA–08) on May 15, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means. H.R. 5796 was similar to the discussion draft.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5796 and ordered the bill, without amendment, favorably reported to the House by a voice vote.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 5796, without amendment, to the House (H.Rept. 115–729, Part 1), and the bill was placed on the Union Calendar (Calendar No. 564).

On June 19, 2018, H.R. 5796 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 20, 2018, H.R. 5796 was received in the Senate, read twice, and referred to the Committee on Finance.

No further action was taken on the bill. The provisions of H.R. 5796 were included in H.R. 6, which is discussed elsewhere in this report.

### INDIVIDUALS IN MEDICAID DESERVE CARE THAT IS APPROPRIATE AND RESPONSIBLE IN ITS EXECUTION ACT OR THE IMD CARE ACT

#### H.R. 5797

To amend title XIX of the Social Security Act to allow States to provide under Medicaid services for certain individuals with opioid use disorders in institutions for mental diseases.

*Summary*

H.R. 5797 would expand Medicaid coverage for people with opioid use disorder who are in institutions for mental disease for up to 30 days per year.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "Limited repeal of the IMD Exclusion for adult Medicaid beneficiaries with substance use disorder."

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by a recorded vote of 16 yeas and 10 nays.

H.R. 5797 was introduced by Representative Mimi Walters (CA–45) on May 15, 2018, and referred to the Committee on Energy and Commerce. H.R. 5797 was similar to the discussion draft.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5797 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 5797, as amended, to the House (H.Rept. 115–723), and the bill was placed on the Union Calendar (Calendar No. 558).

On June 13, 2018, H.R. 5797 was considered in the House pursuant to the provisions of H.Res. 949, and the bill, as amended, was passed by a recorded vote of 261 yeas and 155 nays (Roll Call No. 276).

On June 21, 2018, H.R. 5797 was received in the Senate, read twice, and referred to the Committee on Finance.

No further action was taken on the bill. The provisions of H.R. 5797 were included in H.R. 6, which is discussed elsewhere in this report.

### OPIOID SCREENING AND CHRONIC PAIN MANAGEMENT ALTERNATIVES FOR SENIORS ACT

#### H.R. 5798

To amend title XVIII of the Social Security Act to require a review of current opioid prescriptions for chronic pain and screening for opioid use disorder to be included in the Welcome to Medicare initial preventive physical examination.

217

*Summary*

H.R. 5798 would add an assessment of current opioid prescriptions and screening for opioid use disorder to the Welcome to Medicare Initial Preventive Physical Examination.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "Welcome to Medicare."

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by a voice vote.

H.R. 5798 was introduced by Representative Larry Bucshon (IN–08) on May 15, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means. H.R. 5798 was similar to the discussion draft.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5798 and ordered the bill, without amendment, favorably reported to the House by a voice vote.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 5798, without amendment, to the House (H.Rept. 115–739, Part 1), and the bill was placed on the Union Calendar (Calendar No. 573).

No further action was taken on the bill. The provisions of H.R. 5798 were included in H.R. 6, which is discussed elsewhere in this report.

MEDICAID DRUG REVIEW, UTILIZATION, GOOD GOVERNANCE IMPROVEMENT ACT OR THE MEDICAID DRUG IMPROVEMENT ACT

H.R. 5799

To amend title XIX of the Social Security Act to require as a condition of receipt of full Federal medical assistance percentage under Medicaid that State Medicaid plans have in place certain drug utilization review activities.

*Summary*

H.R. 5799 would require State Medicaid programs to implement additional reviews of opioid prescriptions, monitor concurrent prescribing of opioids and certain other drugs, and monitor use of antipsychotic drugs by children.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "Medicaid Drug Review, Utilization, Good Governance Improvement Act" or the "Medicaid DRUG Improvement Act."

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by a recorded vote of 18 yeas and 9 nays.

H.R. 5799 was introduced by Representative Marsha Blackburn (TN–07) on May 15, 2018, and referred to the Committee on Energy and Commerce. H.R. 5799 was similar to the discussion draft.

218

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5799 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 5799, as amended, to the House (H.Rept. 115–728), and the bill was placed on the Union Calendar (Calendar No. 563).

No further action was taken on the bill. The provisions of H.R. 5799 were included in H.R. 6, which is discussed elsewhere in this report.

MEDICAID INSTITUTES FOR MENTAL DISEASE ARE DECISIVE IN DELIVERING INPATIENT TREATMENT FOR INDIVIDUALS BUT OPPORTUNITIES FOR NEEDED ACCESS ARE LIMITED WITHOUT INFORMATION NEEDED ABOUT FACILITY OBLIGATIONS ACT OR THE MEDICAID IMD ADDITIONAL INFO ACT

H.R. 5800

To require the Medicaid and CHIP Payment and Access Commission to conduct an exploratory study and report on requirements applicable to and practices of institutions for mental diseases under the Medicaid program.

*Summary*

H.R. 5800 would direct the Medicaid and CHIP Payment and Access Commission to study institutions for mental diseases in a representative sample of States.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "Medicaid Institutes for Mental Disease Are Decisive in Delivering Inpatient Treatment for Individuals but Opportunities for Needed Access are Limited without Information Needed about Facility Obligations Act" or the "Medicaid IMD ADDITIONAL INFO Act."

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by a voice vote.

H.R. 5800 was introduced by Representative Fred Upton (MI–06) on May 15, 2018, and referred to the Committee on Energy and Commerce. H.R. 5800 was similar to the discussion draft.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5800 and ordered the bill, without amendment, favorably reported to the House by a voice vote.

On June 8, 2018, the Committee on Energy and Commerce reported H.R. 5800, without amendment, to the House (H.Rept. 115–717), and the bill was placed on the Union Calendar (Calendar No. 552).

On June 12, 2018, H.R. 5800 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a voice vote.

On June 13, 2018, H.R. 5800 was received in the Senate, read twice, and referred to the Committee on Finance.

No further action was taken on the bill. The provisions of H.R. 5800 were included in H.R. 6, which is discussed elsewhere in this report.

### MEDICAID PROVIDERS ARE REQUIRED TO NOTE EXPERIENCES IN RECORD SYSTEMS TO HELP IN-NEED PATIENTS ACT OR THE MEDICAID PARTNERSHIP ACT

#### H.R. 5801

To amend title XIX of the Social Security Act to provide for requirements under the Medicaid program relating to the use of qualified prescription drug monitoring programs and prescribing certain controlled substances.

*Summary*

H.R. 5801 would require providers who are permitted to prescribe controlled substances and who participate in Medicaid to query prescription drug monitoring programs (PDMPs) before prescribing controlled substances to Medicaid patients. PDMPs are statewide electronic databases that collect data on controlled substances dispensed in the State. The bill also would require PDMPs to comply with certain data and system criteria, and it would provide additional Federal matching funds to certain States to help cover administrative costs.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "Medicaid Providers and Pharmacists Required to Note Experiences in Record Systems to Help In-need Patients Act" or the "Medicaid PARTNERSHIP Act."

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by a recorded vote of 18 yeas and 9 nays.

H.R. 5801 was introduced by Representative Morgan Griffith (VA–09) on May 15, 2018, and referred to the Committee on Energy and Commerce. H.R. 5801 was similar to the discussion draft.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5801 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 5801, as amended, to the House (H.Rept. 115–725), and the bill was placed on the Union Calendar (Calendar No. 560).

On June 19, 2018, H.R. 5801 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 20, 2018, H.R. 5801 was received in the Senate, read twice, and referred to the Committee on Finance.

No further action was taken on the bill. The provisions of H.R. 5801 were included in H.R. 6, which is discussed elsewhere in this report.

SAVING AMERICAN FAMILIES THROUGH EFFICACY AND TRUSTED
WAYS ACT OF 2018 OR THE SAFETY ACT OF 2018

H.R. 5803

To amend the Federal Food, Drug, and Cosmetic Act to authorize
the Secretary of Health and Human Services to consider the poten-
tial for misuse and abuse when determining whether to approve
certain drugs, and for other purposes.

*Summary*

H.R. 5803 would strengthen the Food and Drug Administration's
authority to consider the misuse and abuse of a controlled sub-
stance when determining if its overall benefits outweigh the risks.

*Legislative History*

On March 21 and 22, 2018, the Subcommittee on Health held a
hearing on a discussion draft entitled "To amend the Federal Food,
Drug, and Cosmetic Act to authorize the Secretary of Health and
Human Services to consider the potential for misuse and abuse
when determining whether to approve certain drugs, and for other
purposes."

On April 25, 2018, the Subcommittee on Health met in open
markup session to consider the discussion draft and forwarded the
bill, without amendment, to the full Committee by a voice vote.

H.R. 5803 was introduced by Representative Gene Green (TX–29)
on May 15, 2018, and referred to the Committee on Energy and
Commerce. H.R. 5803 was referred to the Subcommittee on Health
on May 18, 2018. H.R. 5803 was similar to the discussion draft.

No further action was taken on the bill.

POST-SURGICAL INJECTIONS AS AN OPIOID ALTERNATIVE ACT

H.R. 5804

To amend title XVIII of the Social Security Act to provide for
modifications in payment for certain outpatient surgical services.

*Summary*

H.R. 5804 would freeze the Medicare payment rate for certain
analgesic injections provided in ambulatory surgical centers.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a
hearing on a discussion draft entitled "To amend title XVIII of the
Social Security Act to provide for modifications in payment for cer-
tain outpatient surgical services."

On April 25, 2018, the Subcommittee on Health met in open
markup session to consider the discussion draft and forwarded the
bill, without amendment, to the full Committee by a recorded vote
of 17 yeas and 10 nays.

H.R. 5804 was introduced by Representative John Shimkus (IL–
15) on May 15, 2018, and referred to the Committee on Energy and
Commerce, and in addition to the Committee on Ways and Means.
H.R. 5804 was similar to the discussion draft.

221

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5804 and ordered the bill, without amendment, favorably reported to the House by a recorded vote of 36 yeas and 14 nays.

On June 13, 2018, the Committee on Energy and Commerce reported H.R. 5804, without amendment, to the House (H.Rept. 115–752, Part 1), and the bill was placed on the Union Calendar (Calendar No. 585).

No further action was taken on the bill. The provisions of H.R. 5804 were included in H.R. 6, which is discussed elsewhere in this report.

### 21ST CENTURY TOOLS FOR PAIN AND ADDICTION TREATMENT ACT

#### H.R. 5806

To require the Secretary of Health and Human Services to issue guidance with respect to the expedited approval of certain drugs, and for other purposes.

*Summary*

H.R. 5806 would direct the Food and Drug Administration to issue or update existing guidance on ways these existing pathways can be used to bring novel non-addictive treatments for pain and addiction to patients.

*Legislative History*

On April 25, 2018, the Subcommittee on Health met in open markup session to consider a discussion draft entitled "21st Century Tools for Pain and Addiction Treatment Act" and forwarded the bill, without amendment, to the full Committee by a recorded vote of 19 yeas and 10 nays.

H.R. 5806 was introduced by Representative Michael C. Burgess (TX–26) on May 15, 2018, and referred to the Committee on Energy and Commerce. H.R. 5806 was similar to the discussion draft.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5806 and ordered the bill, without amendment, favorably reported to the House by a recorded vote of 31 yeas and 23 nays.

No further action was taken on the bill. The provisions of H.R. 5806 were included in H.R. 6, which is discussed elsewhere in this report.

### MEDICAID PHARMACEUTICAL HOME ACT OF 2018

#### H.R. 5808

To amend title XIX of the Social Security Act to require States to operate drug management programs for at-risk beneficiaries, and for other purposes.

*Summary*

H.R. 5808 would require State Medicaid programs to operate pharmacy programs that would identify people at high risk of abusing controlled substances and require those patients to use a limited number of providers and pharmacies.

222

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "Medicaid Pharmaceutical Home Act of 2018."

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by a recorded vote of 18 yeas and 14 nays.

H.R. 5808 was introduced by Representative Gus M. Bilirakis (FL–12) on May 15, 2018, and referred to the Committee on Energy and Commerce. H.R. 5808 was similar to the discussion draft.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5808 and ordered the bill, without amendment, favorably reported to the House by a voice vote.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 5808, without amendment, to the House (H.Rept. 115–726), and the bill was placed on the Union Calendar (Calendar No. 561).

No further action was taken on the bill. The provisions of H.R. 5808 were included in H.R. 6, which is discussed elsewhere in this report.

## POSTOPERATIVE OPIOID PREVENTION ACT OF 2018

### H.R. 5809

To amend title XVIII of the Social Security Act to encourage the use of non-opioid analgesics for the management of post-surgical pain under the Medicare program, and for other purposes.

*Summary*

H.R. 5809 would create an additional payment under Medicare for nonopioid analgesics. Under current law, certain new drugs and devices may receive an additional payment separate from the bundled payment for a surgical procedure in outpatient hospital departments and ambulatory surgical centers. The bill would allow nonopioid analgesics to qualify for a five-year period of additional payments.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "Postoperative Opioid Prevention Act of 2018."

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by a recorded vote of 18 yeas and 11 nays.

H.R. 5809 was introduced by Representative Scott H. Peters (CA–52) on May 15, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means. H.R. 5809 was similar to the discussion draft.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5809 and ordered the

223

bill, without amendment, favorably reported to the House by a recorded vote of 34 yeas and 17 nays.

On June 13, 2018, the Committee on Energy and Commerce reported H.R. 5809, without amendment, to the House (H.Rept. 115–753, Part 1), and the bill was placed on the Union Calendar (Calendar No. 586).

No further action was taken on the bill. The provisions of H.R. 5809 were included in H.R. 6, which is discussed elsewhere in this report.

MEDICAID HEALTH HOMES FOR OPIOID-USE-DISORDER MEDICAID ENROLLEES ENCOURAGED ACT OR THE MEDICAID HEALTH HOME ACT

H.R. 5810

To amend title XIX of the Social Security Act to provide for an extension of the enhanced FMAP for certain Medicaid health homes for individuals with substance use disorders.

*Summary*

H.R. 5810 would allow States to receive six months of enhanced Federal Medicaid funding for programs that coordinate care for people with substance use disorders. The bill also would require States to cover all Food and Drug Administration-approved drugs used in medication-assisted treatment for five years, although States could seek a waiver from that requirement.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend title XIX of the Social Security Act to provide for an extension of the enhanced FMAP for certain Medicaid health homes for individuals with substance use disorders."

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full Committee by a voice vote.

H.R. 5810 was introduced by Representative Leonard Lance (NJ–07) on May 15, 2018, and referred to the Committee on Energy and Commerce. H.R. 5810 was similar to the discussion draft.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5810 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 5810, without amendment, to the House (H.Rept. 115–727), and the bill was placed on the Union Calendar (Calendar No. 562).

No further action was taken on the bill. The provisions of H.R. 5810 were included in H.R. 6, which is discussed elsewhere in this report.

224

To amend the Federal Food, Drug, and Cosmetic Act with respect to postapproval study requirements for certain controlled substances, and for other purposes

H.R. 5811

To amend the Federal Food, Drug, and Cosmetic Act with respect to postapproval study requirements for certain controlled substances, and for other purposes.

*Summary*

H.R. 5811 would allow the Food and Drug Administration (FDA) to require that pharmaceutical manufacturers study certain drugs after they are approved to assess any potential reduction in those drugs' effectiveness for the conditions of use prescribed, recommended, or suggested in labeling. H.R. 5811 also would require drug developers to conduct postapproval studies or clinical trials for certain drugs. Under current law, in certain instances, the FDA can require studies or clinical trials after a drug has been approved. H.R. 5811 would permit the FDA to use that authority if the reduction in a drug's effectiveness meant that its benefits no longer outweighed its costs.

*Legislative History*

On March 21 and 22, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend the Federal Food, Drug, and Cosmetic Act with respect to postapproval study requirements for certain controlled substances, and for other purposes."

H.R. 5811 was introduced by Representative Jerry McNerney (CA–09) on May 15, 2018, and referred to the Committee on Energy and Commerce. H.R. 5811 was similar to the discussion draft.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5811 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On June 19, 2018, H.R. 5811 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 20, 2018, H.R. 5811 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill. The provisions of H.R. 5811 were included in H.R. 6, which is discussed elsewhere in this report.

Creating Opportunities that Necessitate New and Enhanced Connections That Improve Opioid Navigation Strategies Act of 2018 or the CONNECTIONS Act

H.R. 5812

To amend the Public Health Service Act to authorize the Director of the Centers for Disease Control and Prevention to carry out certain activities to prevent controlled substances overdoses, and for other purposes.

225

*Summary*

H.R. 5812 would improve current Federal support for State-run prescription drug monitoring programs. The bill also would authorize the Centers for Disease Control and Prevention to carry out certain controlled substances overdose prevention and surveillance activities in order to improve data collection and integration into physician clinical workflow so that timely, complete, and accurate information will get into the hands of providers and dispensers so that they can make the best clinical decisions for their patients.

*Legislative History*

H.R. 5812 was introduced by Representative H. Morgan Griffith (VA–09) on May 15, 2018, and referred to the Committee on Energy and Commerce.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5812 and ordered the bill, without amendment, favorably reported to the House by a voice vote.

On June 12, 2018, H.R. 5812 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On June 13, 2018, H.R. 5812 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill. The provisions of H.R. 5812 were included in H.R. 6, which is discussed elsewhere in this report.

STRETCHING ENTITY RESOURCES FOR VULNERABLE COMMUNITIES ACT OR THE SERV COMMUNITIES ACT

H.R. 6071

To amend the Public Health Service Act to clarify the intent of the 340B program and provide for enhanced 340B program integrity, and for other purposes.

*Summary*

H.R. 6071 would codify the 340B definition of a patient as described in the 1996 Federal Register. The bill also would prohibit covered entities from discriminating against a patient's choice of drugs received and pharmacies from discriminating against covered entities in the reimbursement for drugs. The bill would direct the Department of Health and Human Services (HHS) to publish 340B ceiling prices so that covered entities can verify that they are being charged the correct amount. If there is a discrepancy between the price paid by the covered entity and the 340B published ceiling price, then Health Resources and Services Administration (HRSA) would enforce civil monetary penalties on manufacturers in the amount of $5,000 or 200 percent of the overcharged amount. The bill also would require parity in HRSA's audits of hospitals and pharmaceutical manufacturers; formalize penny pricing; and prevent HHS from making the Medicare hospital outpatient payment change as described in the November 2017 HHS regulation.

226

*Legislative History*

H.R. 6071 was introduced by Representative Doris O. Masui (CA–06) on June 12, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means. H.R. 6071 was referred to the Subcommittee on Health on June 15, 2018.

On July 11, 2018, the Subcommittee on Health held a hearing on H.R. 6071.

No further action was taken on the bill.

OVERDOSE PREVENTION AND PATIENT SAFETY ACT

H.R. 6082, H.R. 5795, H.R. 3545

To amend the Public Health Service Act to protect the confidentiality of substance use disorder patient records.

*Summary*

H.R. 6082 would amend the Public Health Service Act so that requirements pertaining to the confidentiality and disclosure of medical records relating to substance use disorders align with the provisions of the Health Insurance Portability and Accountability Act of 1996. The bill would require the Office of the Secretary of Health and Human Services to issue regulations prohibiting discrimination based on data disclosed from such medical records, to issue regulations requiring covered entities to provide written notice of privacy practices, and to develop model training programs and materials for health care providers and patients and their families.

*Legislative History*

H.R. 3545 was introduced by Representative Tim Murphy (PA–18) on July 28, 2017, and referred to the Committee on Energy and Commerce. H.R. 3545 was referred to the Subcommittee on Health on August 4, 2017.

On May 5, 2018, the Subcommittee on Health held a hearing on H.R. 3545.

H.R. 3545 was scheduled for consideration by the Subcommittee on Health on April 25, 2018, but was not considered.

No further action was taken on the bill.

H.R. 5795 was introduced by Representative Earl Blumenauer (OR–03) on May 15, 2018, and referred to the Committee on Energy and Commerce. H.R. 5795 was similar to H.R. 3545.

On May 17, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 5795 and ordered the bill, as amended, favorably reported to the House by a recorded vote of 35 yeas and 17 nays.

On June 12, 2018, the Committee on Energy and Commerce reported H.R. 5795, as amended, to the House (H.Rept. 115–724), and the bill was placed on the Union Calendar (Calendar No. 559).

No further action was taken on the bill.

H.R. 6082 was introduced by Representative Markwayne Mullin (OK–02) on June 13, 2018, and referred to the Committee on Energy and Commerce. H.R. 6082 was similar to H.R. 5795 and H.R. 3545.

On June 13, 2018, H.R. 6082 was considered in the House pursuant to the provisions of H.Res. 949, and the bill, as amended, was passed by a recorded vote of 357 yeas and 57 nays (Roll Call No. 278).

On June 21, 2018, H.R. 6082 was received in the Senate, read twice, and referred to the Committee on Health, Education, Labor, and Pensions.

No further action was taken on the bill.

## DRUG DISCOUNT ACCOUNTABILITY ACT

### H.R. 6240

To amend the Public Health Service Act to provide for certain user fees under the 340B drug discount program.

*Summary*

H.R. 6240 would direct the Health Resources and Services Administration to assess and collect user fees from covered entities. The Secretary of Health and Human Services would have 180 days to determine the fee amount, which shall not exceed 0.1 percent of the total paid during the previous year by a covered entity to manufacturers. The bill also would require user fees to be used to finance the administration and oversight of the program.

*Legislative History*

H.R. 6240 was introduced by Representative Chris Collins (NY–27) on June 27, 2018, and referred to the Committee on Energy and Commerce. H.R. 6240 was referred to the Subcommittee on Health on June 29, 2018.

On July 11, 2018, the Subcommittee on Health held a hearing on H.R. 6240.

No further action was taken on the bill.

## TO AMEND THE PUBLIC HEALTH SERVICE ACT TO ENSURE APPROPRIATE CARE BY CERTAIN 340B COVERED ENTITIES FOR VICTIMS OF SEXUAL ASSAULT, AND FOR OTHER PURPOSES

### H.R. 6273

To amend the Public Health Service Act to ensure appropriate care by certain 340B covered entities for victims of sexual assault, and for other purposes.

*Summary*

H.R. 6273 would require 340B Disproportionate Share Hospitals with an emergency department to enact a plan to transfer victims of sexual assault to the nearest Sexual Assault Forensic Examiner (SAFE)-certified facility using official hospital transportation at no charge to the victim. Within two years of enactment, such hospitals must become SAFE-certified, meaning the entity employs or contracts with a Sexual Assault Nurse Examiner (SANE) program such that a SANE is available or on call 24 hours a day. The bill also would require the Department of Health and Human Services (HHS) to publish a list of 340B SAFE-certified entities on the HHS website, and update such list annually.

228

*Legislative History*

H.R. 6273 was introduced by Representative Mimi Walters (CA–45) on June 28, 2018, and referred to the Committee on Energy and Commerce. H.R. 6273 was referred to the Subcommittee on Health on June 29, 2018.

On July 11, 2018, the Subcommittee on Health held a hearing on H.R. 6273.

No further action was taken on the bill.

### STRENGTHENING THE HEALTH CARE FRAUD PREVENTION TASK FORCE ACT OF 2018

#### H.R. 6753

To amend title XI of the Social Security Act to direct the Secretary of Health and Human Services to establish a public-private partnership for purposes of identifying health care waste, fraud, and abuse.

*Summary*

H.R. 6753 would codify the Healthcare Fraud Prevention Partnership (HFPP), a voluntary public-private partnership between the Federal government, State agencies, law enforcement, private health insurance plans, and health care anti-fraud associations. The HFPP is operated by the Centers for Medicare and Medicaid Services to detect and prevent health care fraud through public-private information sharing, streamlining analytical tools and data, and providing a forum for government and industry experts to exchange successful anti-fraud practices.

*Legislative History*

On September 5, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "Strengthening the Health Care Fraud Prevention Task Force Act of 2018."

On September 9, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, as amended, to the full Committee by a voice vote.

H.R. 6753 was introduced by Representative Greg Walden (OR–02) on September 7, 2018, and referred to the Committee on Energy and Commerce. H.R. 6753 was similar to the discussion draft.

On September 13, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 6753 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On November 28, 2018, H.R. 6753 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

On November 29, 2018, H.R. 6753 was received in the Senate, read twice, and referred to the Committee on Finance.

No further action was taken on the bill.

Case 3:17-cv-01362   Document 1330-3   Filed 05/09/21   Page 236 of 287 PageID #: 50934

HEALTH EQUITY AND ACCESS FOR RETURNING TROOPS AND
SERVICEMEMBERS ACT OF 2018

H.R. 6886, H.R. 2557, H.R. 2243

To amend title 10, United States Code, to modify the requirement for certain former members of the Armed Forces to enroll in Medicare Part B to be eligible for TRICARE for Life, and to amend title XVIII of the Social Security Act to provide for coverage of certain DNA specimen provenance assay tests under the Medicare program.

*Summary*

H.R. 6886 would extend TRICARE eligibility to certain former members of the Armed Forces regardless of whether they enroll in Medicare's supplementary medical insurance program. The bill also would require the Medicare program to cover a certain type of laboratory test for beneficiaries who test positive for prostate cancer.

*Legislative History*

H.R. 6886 was introduced by Representative Sam Johnson (TX–03) on September 25, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Ways and Means and Committee on the Judiciary.

On September 28, 2018, Representative Johnson asked unanimous consent that the Committee on Energy and Commerce, Committee on Ways and Means, and Committee on Armed Services be discharged from further consideration of H.R. 6886, and asked for its immediate consideration in the House. The bill was passed, without amendment, by unanimous consent.

On October 1, 2018, H.R. 6886 was received in the Senate, read twice, and referred to the Committee on Finance.

No further action was taken on the bill.

IMPROVING MEDICAID PROGRAMS AND OPPORTUNITIES FOR ELIGIBLE
BENEFICIARIES ACT OR THE IMPROVE ACT

H.R. 7217, H.R. 3325, H.R. 5306, H.R. 7149

To amend title XIX of the Social Security Act to provide States with the option of providing coordinated care for children with complex medical conditions through a health home, and for other purposes.

*Summary*

H.R. 7217 would authorize funding or maintain current rules for two programs in Medicaid and allow States to create Health Home care for children with medically complex conditions. The two other programs are the Money Follows the Person (MFP) demonstration, and rules protecting the income of seniors from Spousal Impoverishment. For health homes, the bill would create a new option and limited incentive for States to utilize a Health Home model to coordinate care for children. Under current law, States can only use this model for adults. The extension of the MFP demonstration and spousal impoverishment rules would help equalize the incentives in Medicaid between long-term institutional care and long-term care

230

in a home or community-based setting. The bill also would be fully offset by ensuring that State Medicaid programs have an Asset Verification system in place, only cover medically necessary procedures regarding vacuum erection devices and penile prosthetic implants, and authorize the Centers for Medicare and Medicaid Services to impose civil monetary penalties on drug companies that provide inaccurate rebate dollars to the Medicaid program. Finally, the bill would amend Medicare to prohibit the inclusion of manual Complex Rehabilitative (CRT) wheelchairs from the Competitive Acquisition Program and to delay the use of competitive bid pricing with CRT wheelchair accessories.

*Legislative History*

H.R. 7217 was introduced by Representative Joe Barton (TX–06) on December 6, 2018, and referred to the Committee on Energy and Commerce.

On December 11, 2018, H.R. 7217 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a recorded vote of 400 yeas and 11 nays (Roll Call No. 428).

No further action was taken on the bill. The provisions of H.R. 3325, H.R. 5306, and H.R. 7149 were included in H.R. 7217. H.R. 3325 is discussed elsewhere in this report.

### PANDEMIC AND ALL-HAZARDS PREPAREDNESS AND ADVANCING INNOVATION ACT OF 2018

#### H.R. 7328, H.R. 6378, H.R. 1876

To reauthorize certain programs under the Public Health Service Act and the Federal Food, Drug, and Cosmetic Act with respect to public health security and all-hazards preparedness and response, to clarify the regulatory framework with respect to certain nonprescription drugs that are marketed without an approved drug application, and for other purposes.

*Summary*

H.R. 7328, the Pandemic and All-Hazards Preparedness and Advancing Innovation Act of 2018, would reauthorize key preparedness and response programs such as the Hospital Preparedness Program/Healthcare Preparedness and Response Program, Temporary Reassignment of Federally Funded Personnel, the National Advisory Committee on Children and Disasters, and the Emergency System for Advance Registration of Volunteer Health Professionals. The bill would clarify the use of the Public Health Emergency Fund and codify the Public Health Emergency Medical Countermeasures Enterprise. H.R. 7328 also would improve the ability of the Secretary of the Department of Health and Human Services to fill intermittent Federal employee vacancies in National Disaster Medical System personnel to support preparedness for and response to threats and provides Public Safety Officer Benefit Act coverage for NDMS Employees. In addition, the legislation would provide resources for the development of medical countermeasures for pandemic influenza within the Biomedical Advanced Research and Development Authority. In addition, the legislation would

amend the Federal Food, Drug, and Cosmetic Act to reform the over-the-counter monograph framework and establish a user fee program for over-the-counter drugs.

*Legislative History*

On June 6, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "Pandemic and All-Hazards Preparedness Reauthorization Act of 2018."

On June 27, 2017, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, as amended, to the full Committee by a voice vote.

H.R. 6378 was introduced by Representative Susan W. Brooks (IN–05) on July 16, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on the Judiciary, Committee on Veterans' Affairs, and Committee on Homeland Security.

On July 18, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.R. 6378 and ordered the bill, as amended, favorably reported to the House by a voice vote.

On September 25, 2018, H.R. 6378 was considered in the House under a motion to suspend the Rules, and the bill, as amended, was passed by a voice vote.

No further action was taken on the bill.

H.R. 7328 was introduced by Representative Susan W. Brooks (IN–05) on December 19, 2018, and referred to the Committee on Energy and Commerce, and in addition to the Committee on Veterans' Affairs, Committee on the Judiciary, and Committee on Homeland Security. H.R. 7328 was similar to H.R. 6378.

On December 20, 2018, H.R. 7328 was considered in the House under a motion to suspend the Rules, and the bill, without amendment, was passed by a recorded vote of 367 yeas and 9 nays (Roll Call No. 449).

No further action was taken on the bill.

RESOLUTION OF INQUIRY REQUESTING THE PRESIDENT OF THE UNITED STATES AND DIRECTING THE SECRETARY OF HEALTH AND HUMAN SERVICES TO TRANSMIT CERTAIN INFORMATION TO THE HOUSE OF REPRESENTATIVES RELATING TO PLANS TO REPEAL OR REPLACE THE PATIENT PROTECTION AND AFFORDABLE CARE ACT AND THE HEALTH-RELATED MEASURES OF THE HEALTH CARE AND EDUCATION RECONCILIATION ACT OF 2010

H. RES. 154

Resolution of inquiry requesting the President of the United States and directing the Secretary of Health and Human Services to transmit certain information to the House of Representatives relating to plans to repeal or replace the Patient Protection and Affordable Care Act and the health-related measures of the Health Care and Education Reconciliation Act of 2010.

*Summary*

H. Res. 154 requests the President and directs the Secretary of the Department of Health and Human Services to transmit to the House of Representatives, not later than 14 days after the adoption

232

of the resolution, all documents, memoranda, and advisory legal opinions, including notes from meetings, memos, and telephone and electronic mail records, relating to plans to repeal or replace the Patient Protection and Affordable Care Act (Public Law 111–148) and the health-related measures of the Health Care and Education Reconciliation Act of 2010 (Public Law 111–152).

*Legislative History*

H. Res. 154 was introduced by Representative Joseph P. Kennedy, III (MA–04) on February 27, 2017, and referred to the Committee on Energy and Commerce.

On March 8 and March 9, 2017, the full Committee on Energy and Commerce met in open markup session to consider H.Res. 154 and ordered the resolution, without amendment, to be adversely reported to the House by a recorded vote of 29 yeas and 20 nays.

On March 21, 2017, the Committee on Energy and Commerce reported H.Res. 154, without amendment, to the House (H.Rept. 115–54), and the resolution was placed on the Union Calendar (Calendar No. 24).

No further action was taken on the resolution.

RESOLUTION OF INQUIRY REQUESTING THE PRESIDENT, AND DIRECTING THE SECRETARY OF HEALTH AND HUMAN SERVICES, TO TRANSMIT, RESPECTIVELY, CERTAIN INFORMATION TO THE HOUSE OF REPRESENTATIVES REFERRING TO THE SEPARATION OF CHILDREN FROM THEIR PARENTS OR GUARDIANS AS A RESULT OF THE PRESIDENT'S "ZERO TOLERANCE" POLICY

H. RES. 982

Resolution of inquiry requesting the President, and directing the Secretary of Health and Human Services, to transmit, respectively, certain information to the House of Representatives referring to the separation of children from their parents or guardians as a result of the President's "zero tolerance" policy.

*Summary*

H. Res. 982 requests the President and directs the Secretary of Health and Human Services, to transmit to the House of Representatives copies of all documents, memoranda, advisory legal opinions, notes from meetings, audio recordings, records (including telephone and electronic mail records), correspondence, and other communications, or any portion of any such communications, to the extent that any such one or more items are within the possession of the President or the Secretary, and refer to the health and welfare of children forcibly separated from their parents or guardians as a result of the President's "zero tolerance" policy, and the long-term implications of the President's "zero tolerance" policy on the health of such children.

*Legislative History*

H. Res. 982 was introduced by Representative Frank Pallone, Jr. (NJ–06) on July 3, 2018, and referred to the Committee on Energy and Commerce.

On July 12, 2018, the full Committee on Energy and Commerce met in open markup session to consider H.Res. 982 and ordered the resolution, without amendment, to be without recommendation reported to the House by a recorded vote of 52 yeas and 0 nays.

On July 18, 2018, the Committee on Energy and Commerce reported H.Res. 982, without amendment, to the House (H.Rept. 115–835), and the resolution was placed on the Union Calendar (Calendar No. 170).

No further action was taken on the resolution.

### CODIFYING USEFUL REGULATORY DEFINITIONS ACT

#### S. 2322, H.R. 4828

To amend the Federal Food, Drug, and Cosmetic Act to define the term natural cheese.

*Summary*

S. 2322 would amend the Federal Food, Drug, and Cosmetic Act to include a definition for the term "natural cheese."

*Legislative History*

S. 2322 was introduced by Senator Ron Johnson (WI) on January 18, 2018, and referred to the Committee on Health, Education, Labor, and Pensions.

On December 13, 2018, S. 2322 was considered in the Senate, and the bill, as amended, was passed by a voice vote.

S. 2322 was received in the House on December 19, 2018, and held at the desk.

On December 13, 2018, S. 2322 was considered in the House under a motion to suspend the Rules, and the bill, without further amendment, was defeated by a recorded vote of 230 yeas and 162 nays (Roll Call No. 463) (pursuant to clause 1(a) of Rule XV of the Rules of the House, a motion to suspend the Rules requires a vote of two-thirds of the Members voting.).

No further action was taken on the bill.

### TO REQUIRE THE SECRETARY OF HEALTH AND HUMAN SERVICES TO IMPLEMENT THE GOVERNMENT ACCOUNTABILITY OFFICE RECOMMENDATIONS FOR THE HEALTH RESOURCES AND SERVICES ADMINISTRATION RELATING TO 340B CONTRACT PHARMACIES

#### DISCUSSION DRAFT

To require the Secretary of Health and Human Services to implement the Government Accountability Office recommendations for the Health Resources and Services Administration relating to 340B contract pharmacies.

*Summary*

The discussion draft would require the Health Resources and Services Administration to implement all the recommendations in the Government Accountability Office's 2018 report on contract pharmacies within three years.

234

*Legislative History*

On July 11, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To require the Secretary of Health and Human Services to implement the Government Accountability Office recommendations for the Health Resources and Services Administration relating to 340B contract pharmacies."

No further action was taken on the bill.

TO AMEND THE PUBLIC HEALTH SERVICE ACT TO REQUIRE CERTAIN COVERED ENTITIES UNDER THE 340B DRUG DISCOUNT PROGRAM TO ESTABLISH CERTAIN FEE AMOUNTS CHARGED TO CERTAIN LOW-INCOME PATIENTS FOR 340B DRUGS

DISCUSSION DRAFT

To amend the Public Health Service Act to require certain covered entities under the 340B drug discount program to establish certain fee amounts charged to certain low-income patients for 340B drugs.

*Summary*

The discussion draft would prohibit 340B covered entities from charging low-income and uninsured patients the full price for 340B drugs. The discussion draft does not mandate a specific discount for covered entities for such patients, but would require certain covered entities to pass on a discount (at or below the 340B ceiling price) and that covered entities have documentation of this process.

*Legislative History*

On July 11, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend the Public Health Service Act to require certain covered entities under the 340B drug discount program to establish certain fee amounts charged to certain low-income patients for 340B drugs."

No further action was taken on the bill.

TO AMEND THE PUBLIC HEALTH SERVICE ACT TO REQUIRE THE SECRETARY OF HEALTH AND HUMAN SERVICES TO CONDUCT AUDITS UNDER THE 340B DRUG DISCOUNT PROGRAM IN ACCORDANCE WITH GENERALLY ACCEPTED GOVERNMENT AUDITING STANDARDS, AND FOR OTHER PURPOSES

DISCUSSION DRAFT

To amend the Public Health Service Act to require the Secretary of Health and Human Services to conduct audits under the 340B drug discount program in accordance with generally accepted government auditing standards, and for other purposes.

*Summary*

The discussion draft would require the Health Resources and Services Administration to perform audits utilizing auditing standards recognized by the Government Accountability Office.

235

*Legislative History*

On July 11, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend the Public Health Service Act to require the Secretary of Health and Human Services to conduct audits under the 340B drug discount program in accordance with generally accepted government auditing standards, and for other purposes."

No further action was taken on the bill.

HELPING UNITE MANAGERS WHO HAVE ABILITIES WITH NOVEL CHANCES TO ACTIVATE THE POSSIBILITIES OF INNOVATION, TRANSFORMATION, AND LEADERSHIP IN MEDICAID ACT OR THE HUMAN CAPITAL IN MEDICAID ACT

DISCUSSION DRAFT

To amend title XIX of the Social Security Act to provide for an increased Federal medical assistance percentage for the compensation of qualified officers of State agencies, and for other purposes.

*Summary*

The discussion draft would provide enhanced Federal medical assistance percentage to use toward recruiting and retaining individuals to serve as a chief financial officer, chief information officer, or State Medicaid director.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "HUMAN CAPITAL in Medicaid Act."

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full committee by a recorded vote of 18 yeas and 12 nays.

No further action was taken on the bill.

MEDICAID GRADUATE MEDICAL EDUCATION TRANSPARENCY ACT

DISCUSSION DRAFT

To amend title XIX of the Social Security Act to provide for reporting requirements relating to graduate medical education.

*Summary*

The discussion draft would improve transparency in the graduate medical education (GME) program by requiring State Medicaid programs to report data and information to the Centers for Medicare and Medicaid Services on how GME funds are used to support physician training. The discussion draft also would require State Medicaid programs to report specific information on how physicians are trained in specialties that are essential in the opioid crisis (i.e., psychiatry, addiction medicine, etc.) and how GME recipients are using Medicaid funds to train physicians on substance use disorder.

236

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "Medicaid Graduate Medical Education Transparency Act."

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full committee by a recorded vote of 18 yeas and 10 nays.

No further action was taken on the bill.

TO AMEND THE FEDERAL FOOD, DRUG, AND COSMETIC ACT TO RE-QUIRE THE SECRETARY OF HEALTH AND HUMAN SERVICES TO ISSUE GUIDANCE WITH RESPECT TO THE ACCELERATED APPROVAL OF CERTAIN DRUGS, AND FOR OTHER PURPOSES

DISCUSSION DRAFT

To amend the Federal Food, Drug, and Cosmetic Act to require the Secretary of Health and Human Services to issue guidance with respect to the accelerated approval of certain drugs, and for other purposes.

*Summary*

The discussion draft would amend the Federal Food, Drug, and Cosmetic Act to direct the Department of Health and Human Services to issue draft guidance, clarifying how and when the Food and Drug Administration will provide expedited treatment for drugs developed to treat pain or addiction.

*Legislative History*

On March 21 and 22, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend the Federal Food, Drug, and Cosmetic Act to require the Secretary of Health and Human Services to issue guidance with respect to the accelerated approval of certain drugs, and for other purposes."

No further action was taken on the bill.

TO AMEND TITLE XI OF THE SOCIAL SECURITY ACT TO PROVIDE FOR A ONE-YEAR CLAIMS FILING PERIOD FOR STATE MEDICAID CLAIMS, AND FOR OTHER PURPOSES

DISCUSSION DRAFT

To amend title XI of the Social Security Act to provide for a one-year claims filing period for State Medicaid claims, and for other purposes.

*Summary*

The discussion draft would reduce the Medicaid filing window from two years to one year.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend title XI of the Social Security Act to provide for a one-year claims filing period for State Medicaid claims, and for other purposes."

237

No further action was taken on the bill.

To amend title XVIII of the Social Security Act to require an evaluation and management of chronic pain to be included in the Welcome to Medicare initial preventive physical examination

DISCUSSION DRAFT

To amend title XVIII of the Social Security Act to require an evaluation and management of chronic pain to be included in the Welcome to Medicare initial preventive physical examination.

*Summary*

The discussion draft would add a pain assessment as part of the Welcome to Medicare initial examination, and provide intervention about non-opioid alternatives, as appropriate.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend title XVIII of the Social Security Act to require an evaluation and management of chronic pain to be included in the Welcome to Medicare initial preventive physical examination."

No further action was taken on the bill.

Tabeling and Encapsulating Machine Regulation Act of 2018

DISCUSSION DRAFT

To amend the Controlled Substances Act to apply provisions relating to certain controlled substances to tableting machines and encapsulating machines, and for other purposes.

*Summary*

The discussion draft would give the Drug Enforcement Administration the authority to regulate the use of tableting and encapsulating machines with requirements for the maintenance of records, inspections for verifying location and stated use, and security provisions.

*Legislative History*

On February 28, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "Tableting and Encapsulating Machine Regulation Act of 2018."

No further action was taken on the bill.

To amend the Public Health Service Act to authorize the Director of the Centers for Disease Control and Prevention to carry out certain activities to prevent controlled substances overdoses, and for other purposes

DISCUSSION DRAFT

To amend the Public Health Service Act to authorize the Director of the Centers for Disease Control and Prevention to carry out cer-

238

tain activities to prevent controlled substances overdoses, and for other purposes.

*Summary*

The discussion draft would authorize the Centers for Disease Control and Prevention to carry out certain controlled substances overdose prevention and surveillance activities in order to improve data collection and integration into physician clinical workflow so that timely, complete, and accurate information will get into the hands of providers and dispensers so that they can make the best clinical decisions for their patients.

*Legislative History*

On March 21 and 22, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend the Public Health Service Act to authorize the Director of the Centers for Disease Control and Prevention to carry out certain activities to prevent controlled substances overdoses, and for other purposes."

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full committee by a voice vote.

No further action was taken on the bill.

### Medicaid Pharmacy Home Act of 2018

#### DISCUSSION DRAFT

To amend title XIX of the Social Security Act to require States to operate drug management programs for at-risk beneficiaries, and for other purposes.

*Summary*

The discussion draft would require all State Medicaid programs to have a provider and pharmacist assignment program that identifies Medicaid beneficiaries at-risk for substance use disorder and assigns them to a pharmacy home program. The pharmacy home program must set reasonable limits on the number of prescribers and dispensers that beneficiaries may utilize, whether under a fee-for-service or managed care arrangement. The bill also codifies a requirement that requires Medicaid managed care plans have a similar program.

*Legislative History*

On April 11 and 12, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend title XIX of the Social Security Act to require States to operate drug management programs for at-risk beneficiaries, and for other purposes."

On April 25, 2018, the Subcommittee on Health met in open markup session to consider the discussion draft and forwarded the bill, without amendment, to the full committee by a recorded vote of 18 yeas and 14 nays.

No further action was taken on the bill.

239

To amend the Public Health Service Act to require under the 340B drug discount program reports by covered entities regarding certain information on savings to covered entities from discounted prices under the program and the relationship between such savings and charity care expenditures of such covered entities

DISCUSSION DRAFT

To amend the Public Health Service Act to require under the 340B drug discount program reports by covered entities regarding certain information on savings to covered entities from discounted prices under the program and the relationship between such savings and charity care expenditures of such covered entities.

*Summary*

The discussion draft would require covered entities to report to the Health Resources and Services Administration every 12 months on 340B total savings, total amount of revenue generated from the sale of 340B outpatient drugs, payor mix, and total uncompensated costs (including charity care, net loss or income, bad debt, unreimbursed costs).

*Legislative History*

On July 11, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend the Public Health Service Act to require under the 340B drug discount program reports by covered entities regarding certain information on savings to covered entities from discounted prices under the program and the relationship between such savings and charity care expenditures of such covered entities."

No further action was taken on the bill.

To amend the Public Health Service Act to allow the Secretary of Health and Human Services to prescribe regulations as necessary or appropriate to carry out the 340B drug discount program, and for other purposes

DISCUSSION DRAFT

To amend the Public Health Service Act to allow the Secretary of Health and Human Services to prescribe regulations as necessary or appropriate to carry out the 340B drug discount program, and for other purposes.

*Summary*

The discussion draft would authorize the Health Resources and Services Administration to enforce specific regulations regarding all aspects of the 340B program.

*Legislative History*

On July 11, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend the Public Health Service Act to allow the Secretary of Health and Human Services to prescribe regulations as necessary or appropriate to carry out the 340B drug discount program, and for other purposes."

240

No further action was taken on the bill.

PROTECTING SAFETY-NET 340B HOSPITALS ACT

DISCUSSION DRAFT

To amend the Public Health Service Act to raise the minimum disproportionate share adjustment percentage required of certain hospitals as a condition of qualifying for the 340B drug discount program, and for other purposes.

*Summary*

The discussion draft would increase the rate for Disproportionate Share Hospital (DSH) programs from 11.75 percent to 18 percent. The discussion draft also would increase the 340B discount for all covered entity types, other than DSH hospitals and critical access hospitals, by five percent.

*Legislative History*

On July 11, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "Protecting Safety-Net 340B Hospitals Act."

No further action was taken on the bill.

BETTERING OPERATIONS AND OVERSIGHT THROUGH SENATE-PROCESS TRANSPARENCY IN 340B ACT OR THE BOOST 340B ACT

DISCUSSION DRAFT

To amend the Public Health Service Act to provide for an Administrator for the 340B Drug Discount Program, and for other purposes.

*Summary*

The discussion draft would require the administrator of the 340B program to be an Assistant Secretary and Senate-confirmed, with the goal of increasing the oversight of the program and accountability of the administrator.

*Legislative History*

On July 11, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "BOOST 340B ACT."

No further action was taken on the bill.

TO AMEND THE PUBLIC HEALTH SERVICE ACT TO DEFINE THE TERM PATIENT FOR PURPOSES OF THE 340B DRUG DISCOUNT PROGRAM

DISCUSSION DRAFT

To amend the Public Health Service Act to define the term patient for purposes of the 340B drug discount program.

*Summary*

The discussion draft would establish a new definition of a patient for purposes of the 340B program.

241

*Legislative History*

On July 11, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "To amend the Public Health Service Act to define the term patient for purposes of the 340B drug discount program."

No further action was taken on the bill.

PREVENTING MATERNAL DEATHS ACT OF 2018

DISCUSSION DRAFT

To support States in their work to save and sustain the health of mothers during pregnancy, childbirth, and in the postpartum period, to eliminate disparities in maternal health outcomes for pregnancy-related and pregnancy-associated deaths, to identify solutions to improve health care quality and health outcomes for mothers, and for other purposes.

*Summary*

The discussion draft would improve Federal efforts to support State maternal mortality review committees in order to improve data collection and reporting around maternal mortality, and to develop or support surveillance systems at the local, State, and national level in order to better understand the burden of maternal complications. These surveillance efforts include identifying groups of women with disproportionately high rates of maternal mortality and identifying the determinants of disparities in maternal care, health risks, and health outcomes.

*Legislative History*

On September 27, 2018, the Subcommittee on Health held a hearing on a discussion draft entitled "Preventing Maternal Deaths Act of 2018."

No further action was taken on the bill.

TO AMEND TITLE XIX OF THE SOCIAL SECURITY ACT TO PROVIDE THE MEDICARE PAYMENT ADVISORY COMMISSION WITH ACCESS TO CERTAIN DRUG REBATE INFORMATION

DISCUSSION DRAFT

To amend title XIX of the Social Security Act to provide the Medicare Payment Advisory Commission with access to certain drug rebate information.

*Summary*

The discussion draft would authorize the Centers for Medicare and Medicaid Services to provide information regarding drug rebate data to the Medicare Payment Advisory Commission and the Medicaid and CHIP Payment Advisory Commission.

*Legislative History*

On September 7, 2018, the Subcommittee on Health met in open markup session to consider a discussion draft entitled "To amend title XIX of the Social Security Act to provide the Medicare Payment Advisory Commission with access to certain drug rebate in-

formation," and forwarded the bill, without amendment, to the full
committee by a voice vote.

No further action was taken on the bill.

## OVERSIGHT ACTIVITIES

### STRENGTHENING MEDICAID AND PRIORITIZING THE MOST VULNERABLE

On February 1, 2017, the Subcommittee on Health held a hear-
ing entitled "Strengthening Medicaid and Prioritizing the Most
Vulnerable." The purpose of the hearing was to examine ways to
improve the Medicaid program. The Subcommittee received testi-
mony from Avik Roy, President, The Foundation for Research on
Equal Opportunity; John McCarthy, former Director, Ohio Depart-
ment of Medicaid, former Deputy Director, District of Columbia De-
partment of Health Care Finance; and Judith Solomon, Vice Presi-
dent for Health Policy, The Center on Budget and Policy Priorities.

### EXAMINING FDA'S GENERIC DRUG AND BIOSIMILAR USER FEE PROGRAMS

On March 2, 2017, the Subcommittee on Health held a hearing
entitled "Examining FDA's Generic Drug and Biosimilar User Fee
Programs." The purpose of the hearing was to review the user fee
programs. The Subcommittee received testimony from Janet
Woodcock, Director, Center for Drug Evaluation and Research,
Food and Drug Administration; David Gaugh, Senior Vice Presi-
dent of Sciences and Regulatory Sciences, Association for Accessible
Medicines; Bruce A. Leicher, Senior Vice President and General
Counsel, Momenta Pharmaceuticals, Inc., Chair, The Biosimilars
Council, a Division of the Association for Accessible Medicines; Ju-
liana Reed, Vice President of Government Affairs, Coherus Bio-
Sciences, Immediate Past President, The Biosimilars Forum; Kay
Holcombe, Senior Vice President of Science Policy, Biotechnology
Industry Organization; and Allan Coukell, Senior Director, Health
Programs, The Pew Charitable Trusts.

### EXAMINING FDA'S PRESCRIPTION DRUG USER FEE PROGRAM

On March 22, 2017, the Subcommittee on Health held a hearing
entitled "Examining FDA's Prescription Drug User Fee Program."
The purpose of the hearing was to hear from shareholders on how
the prescription drug user fee program. The Subcommittee received
testimony from Janet Woodcock, Director, Center for Drug Evalua-
tion and Research, Food and Drug Administration; Jeff Allen,
President and CEO, Friends of Cancer Research; Kay Holcombe,
Senior Vice President of Science Policy, Biotechnology Industry Or-
ganization; and Anne Pritchett, Vice President of Policy and Re-
search, Pharmaceutical Research and Manufacturers of America.

### EXAMINING FDA'S MEDICAL DEVICE USER FEE PROGRAM

On March 28, 2017, the Subcommittee on Health held a hearing
entitled "Examining FDA's Medical Device User Fee Program." The
purpose of the hearing was to hear from stakeholders on how the
medical device user fee program. The Subcommittee received testi-

243

mony from Jeffrey Shuren, Director, Center for Devices and Radio-logical Health, Food and Drug Administration; Cynthia Bens, Vice President of Public Policy, Alliance for Aging Research; Robert Kieval, Founder and Chief Development Officer, CVRx; Patrick Daly, President and CEO, Cohera Medical; and Diane Wurzburger, Executive, Regulatory Affairs U.S. and Canada, Global Strategic Policy and Programs, GE Healthcare.

### EXAMINING THE EXTENSION OF SAFETY NET HEALTH PROGRAMS

On June 23, 2017, the Subcommittee on Health held a hearing entitled "Examining the Extension of Safety Net Health Programs." The purpose of the hearing was to examine funding for Federal safety net health programs that provide health care and coverage for low-income adults and children. The Subcommittee received testimony from Michael Holmes, CEO, Cook Arena Health Services; Jami Snyder, Associate Commissioner for Medicaid/SCHIP Services, Health and Human Services Commission, State of Texas; and Cindy Mann, Partner, Manatt Health.

### EXAMINING MEDICAL PRODUCT MANUFACTURER COMMUNICATIONS

On July 12, 2017, the Subcommittee on Health held a hearing entitled "Examining Medical Product Manufacturer Communications." The purpose of the hearing was to examine how medical products are prescribed and administered for uses that are not included in the labeling approved by the Food and Drug Administration, as well as how product manufacturers are limited in their ability to communicate about such "off-label" uses. The Subcommittee received testimony from Coleen Klasmeier, Partner, Sidley Austin LLP; R. Alta Charo, Professor, University of Wisconsin Law School; George F. Van Hare, Division Chief, Pediatric Cardiology, Professor, Washington University School of Pediatrics, Co-Director, St. Louis Children's and Washington University Heart Center; Aaron Kesselheim, Associate Professor, Harvard Medical School, Director, Program on Regulation, Therapeutics and Law, Division of Pharmacoepidemiology and Pharmacoeconomics, Brigham and Women's Hospital; Linda House, President, Cancer Support Community; and Kat Wolf Khachatourian, Vice President, Delegation Oversight, Pharmacy Services and Strategy, Qualchoice Health Plan Services.

### EXAMINING THE EXTENSION OF SPECIAL NEEDS PLAN

On July 26, 2017, the Subcommittee on Health held a hearing entitled "Examining the Extension of Special Needs Plans." The purpose of the hearing was to examine Special Needs Plans under the Medicare Advantage program, and their interactions with other programs. The Subcommittee received testimony from Chris Wing, CEO, SCAN Health Plan; Larry Atkins, President, National MLTSS Health Plan Association; and Melanie Bella, Consultant and former Director, Federal Coordinated Health Care Office, Centers for Medicare and Medicaid Services.

244

MODERNIZING FDA'S REGULATION OF OVER-THE-COUNTER DRUGS

On September 13, 2017, the Subcommittee on Health held a hearing entitled "Modernizing FDA's Regulation of Over-the-Counter Drugs." The purpose of the hearing was to examine the regulatory framework for over-the-counter drug products and to consider a proposal to improve the over-the-counter drug monograph process. The Subcommittee received testimony from Janet Woodcock, Director, Center for Drug Evaluation and Research, Food and Drug Administration; Scott Melville, President and CEO, Consumer Health Products Association; Kirsten Moore, Project Director, Health Care Products, The Pew Charitable Trusts; Michael Werner, Partner, Holland and Knight, on behalf of the Public Access to SunScreens Coalition; Bridgette Jones, Chair, American Academy of Pediatrics; and Gil Roth, President, Pharma and Biopharma Outsourcing Association.

SUPPORTING TOMORROW'S HEALTH PROVIDERS: EXAMINING
WORKFORCE PROGRAMS UNDER THE PUBLIC HEALTH SERVICE ACT

On September 14, 2017, the Subcommittee on Health held a hearing entitled "Supporting Tomorrow's Health Providers: Examining Workforce Programs Under the Public Health Service Act." The purpose of the hearing was to examine two primary care workforce programs, the National Health Service Corps and the Teaching Health Center Graduate Medical Education program. The Subcommittee received testimony from Neil S. Calman, President and CEO, Institute for Family Health, Chair, Department of Family Medicine and Community Health, Icahn School of Medicine at Mount Sinai/Mount Sinai Hospital, President, American Association of Teaching Health Centers; Adrian Billings, Chief Medical Officer, Preventative Care Health Services, Associate Professor, Department of Family and Community Medicine, Texas Tech University Health Sciences; Janice A. Knebl, Chair and Professor, Geriatrics, University of North Texas Health Science Center, Medical Director, James L. West Presbyterian Special Care Center; and Juliann G. Sebastian, Dean and Professor, College of Nursing, University of Nebraska Medical Center.

EXAMINING PATIENT ACCESS TO INVESTIGATIONAL DRUGS

On October 3, 2017, the Subcommittee on Health held a hearing entitled "Examining Patient Access to Investigational Drugs." The purpose of the hearing was to examine patient access to investigational drugs and devices under the Food and Drug Administration's expanded access program, and to examine proposals for "Right to Try" laws. The Subcommittee received testimony from Brian Fitzpatrick, Member, U.S. Representatives; Andy Biggs, Member, U.S. Representatives; Scott Gottlieb, Commissioner, Food and Drug Administration; John Dicken, Director, Health Care, Government Accountability Office; Naomi Lopez-Bauman, Director of Healthcare Policy, Goldwater Institute; Matthew Bellina, U.S. Navy (Retired); Kenneth I. Moch, President and CEO, Cognition Therapeutics, Inc.; Alison Bateman-House, Assistant Professor, Department of Population Health, New York University Langone

245

Health; and Ellen V. Sigal, Chairperson and Founder, Friends of Cancer Research.

MEMBER DAY: TESTIMONY AND PROPOSALS ON THE OPIOID CRISIS

On October 11, 2017, the Subcommittee on Health held a hearing entitled "Member Day: Testimony and Proposals on the Opioid Crisis." The purpose of the hearing was to solicit Member input on potential ways to complement existing law and administrative action to combat the opioid epidemic and address acute emerging issues. The Subcommittee received testimony from the following Members of the U.S. Representatives: Gus Bilirakis, Earl Blumenauer, Lisa Blunt Rochester, Susan W. Brooks, Larry Bucshon, Cheri Bustos, G.K. Butterfield, Early L. "Buddy" Carter, Judy Chu, Katherine M. Clark, Ryan A. Costello, Charlie Crist, Daniel M. Donovan, Elizabeth H. Esty, John J. Faso, Brian K. Fitzpatrick, Bob Goodlatte, Karen Handel, Vicky Hartzler, Richard Hudson, Hakeem S. Jeffries, Evan H. Jenkins, Bill Johnson, John Katko, William R. Keating, Leonard Lance, Robert E. Latta, Mia B. Love, Ben Ray Luján, Thomas MacArthur, Roger W. Marshall, Doris O. Matsui, Markwayne Mullin, Tom O'Halleran, Frank Pallone, Bill Pascrell, Erik Paulsen, Nancy Pelosi, Bruce Poliquin, Harold Rogers, Keith J. Rothfus, David Rouzer, Bradley Scott Schneider, Steve Stivers, Paul Tonko, Niki Tsongas, Michael R. Turner, Fred Upton, Tim Walberg, Greg Walden, Jackie Walorski, Peter Welch, Brad Wenstrup; and David Young.

MACRA AND ALTERNATIVE PAYMENT MODELS: DEVELOPING OPTIONS FOR VALUE-BASED CARE

On November 8, 2017, the Subcommittee on Health held a hearing entitled "MACRA and Alternative Payment Models: Developing Options for Value-based Care." The purpose of the hearing was to examine the implementation of one of the two tracks eligible professionals can be reimbursed under the Medicare Access and CHIP Reauthorization Act of 2015. The Subcommittee received testimony from Jeffrey Bailet, Chairperson, Physician-Focused Payment Model Technical Advisory Committee; Elizabeth Mitchell, Vice Chairperson, Physician-Focused Payment Model Technical Advisory Committee; Frank Opelka, Medical Director, Quality and Health Policy, American College of Surgeons; Bill Wulf, Central Ohio Primary Care Physicians, CAPG; Colin Edgerton, American College of Rheumatology; Daniel Varga, Chief Clinical Officer, Texas Health Resources, Premier, Inc.; Brian Kavanagh, Chair, American Society for Radiation Oncology; and Louis Friedman, American College of Physicians.

IMPLEMENTING THE 21ST CENTURY CURES ACT: AN UPDATE FROM FDA AND NIH

On November 30, 2017, the Subcommittee on Health held a hearing entitled, "Implementing the 21st Century Cures Act: An Update from FDA and NIH." The purpose of the hearing was to provide a status update on the 21st Century Cures Act and receive testimony from agency officials charged with implementing the drug development and biomedical research provisions included in

246

the law. The Subcommittee received testimony from Francis S. Collins, Director, National Institutes of Health; and Scott Gottlieb, Commissioner, Food and Drug Administration.

EXAMINING THE DRUG SUPPLY CHAIN

On December 13, 2017, the Subcommittee on Health held a hearing entitled "Examining the Drug Supply Chain." The purpose of the hearing was to examine the role of each player in the drug supply chain that brings medicines from manufacturers to consumers, and how this impacts pricing and access. The Subcommittee received testimony from Chip Davis, President and CEO, Association for Accessible Medicines; Tom DiLenge, President, Advocacy, Law, and Public Policy, Biotechnology Innovation Organization; Matt Eyles, Senior Executive Vice President and Chief Operating Officer for Policy and Regulatory Affairs, America's Health Insurance Plans; Elizabeth Gallenagh, Senior Vice President, Government Affairs and General Counsel, Healthcare Distribution Alliance; Gerald Harmon, Chair, Board of Trustees, American Medical Association; B. Douglas Hoey, CEO, National Community Pharmacists Association; Mark Merritt, President and CEO, Pharmaceutical Care Management Association; David Mitchell, Founder and President, Patients for Affordable Drugs; Tom Nickels, Executive Vice President for Government Relations and Public Policy, American Hospital Association; and Lori Reilly, Executive Vice President for Policy, Research and Membership, Pharmaceutical Research and Manufacturers of America.

EXAMINING IMPLEMENTATION OF THE COMPOUNDING QUALITY ACT

On January 30, 2018, the Subcommittee on Health held a hearing entitled "Examining Implementation of the Compounding Quality Act." The purpose of the hearing was to examine implementation of the Compounding Quality Act as it pertains to patient specific compounding, interstate distribution, pharmacy inspections, and the duplication of existing products. The Subcommittee received testimony from Scott Gottlieb, Commissioner, Food and Drug Administration; Jenn Adams, Senior Vice President, Clinical Product Solutions, PharMEDium; Bruce Brod, Chair, Congressional Policy Committee, American Academy of Dermatology Association; Nancy Dargan; Shawn Hodges, Vice President, International Academy of Compounding Pharmacists; Elizabeth Jungman, Director, Public Health, The Pew Charitable Trusts; Jacob Olson, President and CEO, Skywalk Pharmacy, on behalf of National Community Pharmacists Association; Molly Ventrelli, Vice President, Regulatory Affairs, Fresenius Kabi; and George Williams, President Elect, American Academy of Ophthalmology.

OVERSIGHT OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES

On February 15, 2018, the Subcommittee on Health held a hearing entitled "Oversight of the Department of Health and Human Services." The purpose of the hearing was to review the Fiscal Year 2019 budget request for the Department of Health and Human Services. The Subcommittee received testimony from Alex Azar, Secretary, Department of Health and Human Services.

247

### COMBATING THE OPIOID CRISIS: HELPING COMMUNITIES BALANCE ENFORCEMENT AND PATIENT SAFETY

On February 28, 2018, the Subcommittee on Health held a hearing entitled "Combating the Opioid Crisis: Helping Communities Balance Enforcement and Patient Safety." The purpose of the hearing was to examine efforts to combat the opioid crisis through enforcement. The Subcommittee received testimony from Susan Gibson, Deputy Assistant Attorney, Diversion Control Division, Drug Enforcement Administration; Frank Fowler, Chief of Police, Syracuse Police Department; Patrick Beardsley, Professor, Department of Pharmacology and Toxicology, Virginia Commonwealth University; John Mulder, Director, Trillium Institute; Ponni Subbiah, Chief Medical Officer, Indivior PLC; David Kan, President, California Society of Addiction Medicine; Richard Nance, Director, Utah County Department of Drug and Alcohol Prevention and Treatment; Thomas Cosgrove, Partner, Covington and Burling LLP; Andrew Kolodny, Co-Director, Opioid Policy Research, Brandeis University; and Richard Logan, Owner, L&S Pharmacy.

### 21ST CENTURY CURES IMPLEMENTATION: EXAMINING MENTAL HEALTH INITIATIVES

On July 19, 2018, the Subcommittee on Health held a hearing entitled "21st Century Cures Implementation: Examining Mental Health Initiatives." The purpose of the hearing was to receive a status update on the 21st Century Cures Act and its provisions furthering substance abuse and mental health treatment. The Subcommittee received testimony from Elinore McCance-Katz, Assistant Secretary, Substance Abuse and Mental Health Services Administration.

### 21ST CURES IMPLEMENTATION: UPDATES FROM FDA AND NIH

On July 25, 2018, the Subcommittee on Health held a hearing entitled "21st Cures Implementation: Updates from FDA and NIH." The purpose of the hearing was to receive a status update on the 21st Century Cures Act and its provisions furthering drug development and biomedical research. The Subcommittee received testimony from Francis Collins, Director, National Institutes of Health; and Scott Gottlieb, Commissioner, Food and Drug Administration.

### MACRA AND MIPS: AN UPDATE ON THE MERIT-BASED INCENTIVE PAYMENT SYSTEM

On July 26, 2018, the Subcommittee on Health held a hearing entitled "MACRA and MIPS: An Update on the Merit-based Incentive Payment System." The purpose of the hearing was to receive an update from industry professionals on the implementation of one of the two tracks eligible professionals can be reimbursed under the Medicare Access and CHIP Reauthorization Act of 2015, specifically the "Merit-based Incentive Payment System" quality program. The Subcommittee received testimony from David Barbe, Immediate Past President, American Medical Association; Frank Opelka, Medical Director of Quality and Health Policy, American College of Surgeon; Parag Parekh, Chair, Government Relations

Committee, American Society of Cataract and Refractive Surgery; Ashok Rai, Chairman of the Board, American Medical Group Association; and Kurt Ransohoff, Chairman of the Board, America's Physicians Groups.

### EXAMINING BARRIERS TO EXPANDING INNOVATIVE VALUE-BASED CARE IN MEDICARE

On September 13, 2018, the Subcommittee on Health held a hearing entitled "Examining Barriers to Expanding Innovative Value-Based Care in Medicare." The purpose of the hearing was to examine the ongoing efforts to transition the Medicare program away from fee-for-service and toward various arrangements that enable better care delivery and the integration of new technologies, and the potential need to update Federal law in response to this change. The Subcommittee received testimony from Michael Robertson, Chief Medical Officer, Covenant Health Partners; Michael Weinstein, President, Digestive Health Physicians Association; Morgan Reed, President, The App Association; Nishant Anand, Chief Medical Officer, Adventist Health System; Timothy Peck, CEO, Call9; and Mary Grealy, President, Healthcare Leadership Council.

249

## MEDICAID OVERSIGHT: EXISTING PROBLEMS AND WAYS TO STRENGTHEN THE PROGRAM

On January 31, 2017, the Subcommittee on Oversight and Investigations held a hearing entitled "Medicaid Oversight: Existing Problems and Ways to Strengthen the Program." The purpose of the hearing was to conduct oversight of the Medicaid program. The Subcommittee received testimony from Carolyn L. Yocom, Director, Health Care, Government Accountability Office; Ann Maxwell, Assistant Inspector General, Office of Evaluation and Inspections, Office of Inspector General, Department of Health and Human Services; Paul Howard, Senior Fellow, Director, Health Policy, The Manhattan Institute; Josh Archambault, Senior Fellow, The Foundation for Government Accountability; and Timothy M. Westmoreland, Professor from Practice, Senior Scholar in Health Law, Georgetown University Law Center.

## WAYS TO IMPROVE AND STRENGTHEN THE INTERNATIONAL ANTI-DOPING SYSTEM

On February 28, 2017, the Subcommittee on Oversight and Investigations held a hearing entitled "Ways to Improve and Strengthen the International Anti-Doping System." The purpose of the hearing was to examine the global anti-doping system following the Summer 2016 Olympic Games. The Subcommittee received testimony from Richard Budgett, Medical and Scientific Director, International Olympic Committee; Rob Koehler, Deputy Director General, World Anti-Doping Agency; Travis Tygart, CEO, U.S. Anti-Doping Agency; Adam Nelson, U.S. Olympic Gold Medalist, Shot Put; and Michael Phelps, U.S. Olympic Gold Medalist, Swimming.

## FENTANYL: THE NEXT WAVE OF THE OPIOID CRISIS

On March 21, 2017, the Subcommittee on Oversight and Investigations held a hearing entitled "Fentanyl: The Next Wave of the Opioid Crisis." The purpose of the hearing was to discuss the emerging threat of the synthetic drug Fentanyl and Federal strategy for and response to the crisis. The Subcommittee received testimony from Kemp Chester, Acting Deputy Director, Office of National Drug Control Policy; Louis Milione, Assistant Administrator, Diversion Control Division, Drug Enforcement Administration; William Brownfield, Assistant Secretary of State, International Narcotics and Law Enforcement Affairs, Department of State; Matthew Allen, Assistant Director, Homeland Security Investigative Programs, Homeland Security Investigations, Immigration and Customs Enforcement, Department of Homeland Security; Debra Houry, Director, National Center for Injury Prevention and Control, Centers for Disease Control and Prevention; and Wilson Compton, Deputy Director, National Institute on Drug Abuse.

250

### CYBERSECURITY IN THE HEALTH CARE SECTOR: STRENGTHENING PUBLIC-PRIVATE PARTNERSHIPS

On April 4, 2017, the Subcommittee on Oversight and Investigations held a hearing entitled "Cybersecurity in the Health Care Sector: Strengthening Public-Private Partnerships." The purpose of the hearing was to discuss the current state of public-private partnerships for cybersecurity in health care. The Subcommittee received testimony from Denise Anderson, President, National Health Information Sharing and Analysis Center; Michael McNeil, Global Product Security and Services Officer, Royal Philips; and Terry Rice, Vice President, IT Risk Management and Chief Information Security Officer, Merck and Co., Inc.

### COMBATING WASTE, FRAUD, AND ABUSE IN MEDICAID'S PERSONAL CARE SERVICES PROGRAM

On May 2, 2017, the Subcommittee on Oversight and Investigations held a hearing entitled "Combating Waste, Fraud, and Abuse in Medicaid's Personal Care Services Program." The purpose of the hearing was to discuss areas of concern in Medicaid's Personal Care Services Program. The Subcommittee received testimony from Timothy Hill, Deputy Director, Medicaid and CHIP Services, Centers for Medicare and Medicaid Services; Christi Grimm, Chief of Staff, Office of Inspector General, Department of Health and Human Services; and Katherine Iritani, Director, Health Care, Government Accountability Office.

### U.S. PUBLIC HEALTH RESPONSE TO THE ZIKA VIRUS: CONTINUING CHALLENGES

On May 23, 2017, the Subcommittee on Oversight and Investigations held a hearing entitled "U.S. Public Health Response to the Zika Virus: Continuing Challenges." The purpose of the hearing was to examine the findings and recommendations of a Government Accountability Office report on the Zika virus and discuss challenges of the crisis. The Subcommittee received testimony from Timothy Persons, Chief Scientist, Government Accountability Office; Lyle R. Petersen, Director, Division of Vector-Borne Diseases, National Center for Emerging and Zoonotic Infectious Diseases, Centers for Disease Control and Prevention; Luciana Borio, Acting Chief Scientist, Food and Drug Administration; Anthony Fauci, Director, National Institute of Allergy and Infectious Diseases, National Institutes of Health; and Rick A. Bright, Director, Biomedical Advanced Research and Development Authority; Deputy Assistant Secretary, Office of the Assistant Secretary for Preparedness and Response, Department of Health and Human Services.

### EXAMINING THE ROLE OF THE DEPARTMENT OF HEALTH AND HUMAN SERVICES IN HEALTH CARE CYBERSECURITY

On June 8, 2017, the Subcommittee on Oversight and Investigations held a hearing entitled "Examining the Role of the Department of Health and Human Services in Health Care Cybersecurity." The purpose of the hearing was to discuss the role of the Department of Health and Human Services in health care cybersecu-

rity. The Subcommittee received testimony from Steve Curren, Director, Division of Resilience, Office of Emergency Management, Office of the Assistant Secretary for Preparedness and Response, Department of Health and Human Services; Leo Scanlon, Deputy Chief Information Security Officer, Department of Health and Human Services; and Emery Csulak, Chief Information Security Officer and Senior Privacy Official, Centers for Medicare and Medicaid Services; Co-Chair, Health Care Industry Cybersecurity Task Force.

### Combating the Opioid Crisis: Battles in the States

On July 12, 2017, the Subcommittee on Oversight and Investigations held a hearing entitled "Combating the Opioid Crisis: Battles in the States." The purpose of the hearing was to learn how some States are battling the opioid crisis and what State policies can improve the Federal response. The Subcommittee received testimony from Boyd K. Rutherford, Lieutenant Governor, Maryland; Brian J. Moran, Secretary of Public Safety and Homeland Security, Virginia; Rebecca Boss, Director, Rhode Island Department of Behavioral Healthcare, Developmental Disabilities and Hospitals; and John Tilley, Secretary, Justice and Public Safety Cabinet, Kentucky.

### Examining HRSA's Oversight of the 340B Drug Pricing Program

On July 18, 2017, the Subcommittee on Oversight and Investigations held a hearing entitled "Examining HRSA's Oversight of the 340B Drug Pricing Program." The purpose of the hearing was to examine the Health Resources and Services Administration's oversight of the 340B drug pricing program. The Subcommittee received testimony from Krista M. Pedley, Director, Office of Pharmacy Affairs, Health Resources and Services Administration, Department of Health and Human Services; Debra Draper, Director, Health Care, Government Accountability Office; and Erin Bliss, Assistant Inspector General, Office of Evaluation and Inspections, Office of Inspector General, Department of Health and Human Services.

### EPA Oversight: Unimplemented Inspector General and GAO Recommendations

On September 6, 2017, the Subcommittee on Oversight and Investigations held a hearing entitled "EPA Oversight: Unimplemented Inspector General and GAO Recommendations." The purpose of the hearing was to allow the Environmental Protection Agency (EPA) Office of Inspector General and the Government Accountability Office to discuss open and unimplemented recommendations at the EPA. The Subcommittee received testimony from Alan Larsen, Counsel to the Inspector General, Office of Inspector General, Environmental Protection Agency; and Alfredo Gómez, Director, Natural Resources and Environment, Government Accountability Office.

252

### Examining How Covered Entities Utilize the 340B Drug Pricing Program

On October 11, 2017, the Subcommittee on Oversight and Investigations held a hearing entitled "Examining How Covered Entities Utilize the 340B Drug Pricing Program." The purpose of the hearing was to examine how covered entities utilize and track the 340B drug pricing program. The Subcommittee received testimony from Sue Veer, President and CEO, Carolina Health Centers; Michael J. Gifford, President and CEO, AIDS Resource Center of Wisconsin; Ronald A. Paulus, President and CEO, Mission Health; Charles Reuland, Executive Vice President and COO, Johns Hopkins Hospital; and Shannon A. Banna, Director of Finance and System Controller, Northside Hospital, Inc.

### Examining HHS's Public Health Preparedness for and Response to the 2017 Hurricane Season

On October 24, 2017, the Subcommittee on Oversight and Investigations held a hearing entitled "Examining HHS's Public Health Preparedness for and Response to the 2017 Hurricane Season." The purpose of the hearing was to examine the Department of Health and Human Services' preparedness for and response to the 2017 hurricane season. The Subcommittee received testimony from Robert P. Kadlec, Assistant Secretary for Preparedness and Response, Department of Health and Human Services; Scott Gottlieb, Commissioner, Food and Drug Administration; Kimberly Brandt, Principal Deputy Administrator for Operations, Centers for Medicare and Medicaid Services; and Stephen C. Redd, Director of the Office of Public Health Preparedness and Response, Centers for Disease Control and Prevention.

### Concerns Over Federal Select Agent Program Oversight of Dangerous Pathogens

On November 2, 2017, the Subcommittee on Oversight and Investigations held a hearing entitled "Concerns over Federal Select Agent Program Oversight of Dangerous Pathogens." The purpose of the hearing was to discuss concerns over the Federal Select Agent Program's oversight of hazardous pathogens. The Subcommittee received testimony from Mary Denigan-Macauley, Acting Director, Health Care, Government Accountability Office; Samuel S. Edwin, Director, Division of Select Agents and Toxins, Centers for Disease Control and Prevention; and Freeda E. Isaac, Director, Agriculture Select Agent Services, Animal and Plant Health Inspection Service, Department of Agriculture.

### Identity Verification in a Post-Breach World

On November 30, 2017, the Subcommittee on Oversight and Investigations held a hearing entitled "Identity Verification in a Post-Breach World." The purpose of the hearing was to examine the challenges that large-scale data breaches create for identity verification and personal security. The Subcommittee received testimony from Troy Hunt, Information Security Author and Instructor, Pluralsight; Jeremy Grant, Managing Director of Technology

253

Business Strategy, Venable, LLP; and Ed Mierzwinski, Consumer Program Director, U.S. PIRG.

### EXAMINING CONCERNS OF PATIENT BROKERING AND ADDICTION TREATMENT FRAUD

On December 12, 2017, the Subcommittee on Oversight and Investigations held a hearing entitled "Examining Concerns of Patient Brokering and Addiction Treatment Fraud." The purpose of the hearing was to investigate patient brokering and fraud in the treatment of substance abuse disorders. The Subcommittee received testimony from Douglas Tieman, President and CEO, Caron Treatment Centers; Pete Nielsen, CEO, California Consortium of Addiction Programs and Professionals; Dave Aronberg, State Attorney, 15th Judicial Circuit, Palm Beach County, Florida; Alan S. Johnson, Chief Assistant State Attorney, 15th Judicial Circuit, Palm Beach County, Florida; Head, Palm Beach County Sober Homes Task Force; and Eric Gold, Assistant Attorney General, Chief, Health Care Division, Office of the Attorney General, Massachusetts.

### SAFETY OF THE U.S. FOOD SUPPLY: CONTINUING CONCERNS OVER THE FOOD AND DRUG ADMINISTRATION'S FOOD-RECALL PROCESS

On January 19, 2018, the Subcommittee on Oversight and Investigations held a hearing entitled "Safety of the U.S. Food Supply: Continuing Concerns Over the Food and Drug Administration's Food-Recall Process." The purpose of the hearing was to examine a December 2017 report by the Department of Health and Human Services' Office of Inspector General on the Food and Drug Administration's food recall process. The Subcommittee received testimony from Gloria Jarmon, Deputy Inspector General for Audit Services, Office of Inspector General, Department of Health and Human Services; and Douglas Stearn, Office of Regulatory Affairs, Director, Office of Enforcement and Import Operations, Food and Drug Administration.

### EXAMINING THE IMPACT OF HEALTH CARE CONSOLIDATION

On February 14, 2018, the Subcommittee on Oversight and Investigations held a hearing entitled "Examining the Impact of Health Care Consolidation." The purpose of the hearing was to examine consolidation trends in the health care sector, the reasons behind those trends, and the effects they have on the cost and quality of care. The Subcommittee received testimony from Martin Gaynor, Professor, Heinz College, Carnegie Mellon University; Leemore Dafny, Professor, Harvard Business School; and Kevin A. Schulman, Professor, Duke University, and Visiting Scholar, Harvard Business School.

### EXAMINING THE U.S. PUBLIC HEALTH PREPAREDNESS FOR AND RESPONSE EFFORTS TO SEASONAL INFLUENZA

On March 8, 2018, the Subcommittee on Oversight and Investigations held a hearing entitled "Examining the U.S. Public Health Preparedness for and Response Efforts to Seasonal Influ-

254

enza." The purpose of the hearing was to examine the Department of Health and Human Services' efforts to combat seasonal influenza, develop an effective influenza vaccine, and prepare a long-term strategy to improve seasonal influenza preparedness. The Subcommittee received testimony from Anne Schuchat, Acting Director, Centers for Disease Control and Prevention; Anthony S. Fauci, Director, National Institute of Allergy and Infectious Diseases, National Institutes of Health; Rick A. Bright, Director, Biomedical Advanced Research and Development Authority, and Deputy Assistant Secretary, Office of the Assistant Secretary for Preparedness and Response, Department of Health and Human Services; and Scott Gottlieb, Commissioner, Food and Drug Administration.

### THE DRUG ENFORCEMENT ADMINISTRATION'S ROLE IN COMBATING THE OPIOID EPIDEMIC

On March 20, 2018, the Subcommittee on Oversight and Investigations held a hearing entitled "The Drug Enforcement Administration's Role in Combating the Opioid Epidemic." The purpose of the hearing was to discuss the response of the Drug Enforcement Administration to the opioid crisis, including the detection and investigation of suspicious orders of opioids. The Subcommittee received testimony from Robert W. Patterson, Acting Administrator, Drug Enforcement Administration.

### UPDATE ON THE RESTORATION OF PUERTO RICO'S ELECTRIC INFRASTRUCTURE

On April 11, 2018, the Subcommittee on Oversight and Investigations held a hearing entitled "Update on the Restoration of Puerto Rico's Electric Infrastructure." The purpose of the hearing was to hear updates on the efforts to rebuild Puerto Rico's electrical infrastructure following the Fall 2017 Hurricane Season. The Subcommittee received testimony from Bruce J. Walker, Assistant Secretary, Office of Electricity Delivery and Energy Reliability, Department of Energy; Jeffrey Byard, Associate Administrator, Office of Response and Recovery, Federal Emergency Management Agency; Charles R. Alexander, Jr., Director, Contingency Operations and Homeland Security Headquarters, Army Corps of Engineers; Carlos D. Torres, Power Restoration Coordinator, Edison Electric Institute; and Gene Shlatz, Director, Navigant Consulting.

### COMBATING THE OPIOID EPIDEMIC: EXAMINING CONCERNS ABOUT DISTRIBUTION AND DIVERSION

On May 8, 2018, the Subcommittee on Oversight and Investigations held a hearing entitled "Combating the Opioid Epidemic: Examining Concerns About Distribution and Diversion." The purpose of the hearing was to investigate the role of wholesale drug distribution and diversion in the opioid epidemic. The Subcommittee received testimony from George S. Barrett, Executive Chairman of the Board, Cardinal Health, Inc.; Steven H. Collis, Chairman, President and CEO, AmerisourceBergen Corporation; John H. Hammergren, Chairman, President and CEO, McKesson Corporation; Joseph Mastandrea, Chairman of the Board, Miami-Luken,

Inc.; and J. Christopher Smith, former President and CEO, H.D. Smith Wholesale Drug Co.

### EXAMINING THE OLYMPIC COMMUNITY'S ABILITY TO PROTECT ATHLETES FROM SEXUAL ABUSE

On May 23, 2018, the Subcommittee on Oversight and Investigations held a hearing entitled "Examining the Olympic Community's Ability to Protect Athletes from Sexual Abuse." The purpose of the hearing was to examine the pervasiveness of sexual misconduct within the U.S. Olympic community and whether there are adequate policies and procedures in place to protect athletes at all levels of sport. The Subcommittee received testimony from Susanne Lyons, acting CEO, U.S. Olympic Committee; Kerry Perry, President and CEO, USA Gymnastics; Tim Hinchey, President and CEO, USA Swimming; Steve McNally, Executive Director, USA Taekwondo; Jamie Davis, CEO, USA Volleyball; and Shellie Pfohl, President and CEO, U.S. Center for SafeSport.

### THE STATE OF U.S. PUBLIC HEALTH BIOPREPAREDNESS: RESPONDING TO BIOLOGICAL ATTACKS, PANDEMICS, AND EMERGING DISEASE OUTBREAKS

On June 15, 2018, the Subcommittee on Oversight and Investigations held a hearing entitled "The State of U.S. Public Health Biopreparedness: Responding to Biological Attacks, Pandemics, and Emerging Disease Outbreaks." The purpose of the hearing was to follow up on the past biopreparedness oversight issues examined by the Subcommittee, and to receive updates from the agencies on current assessments and strategies. The Subcommittee received testimony from Rick A. Bright, Director, Biomedical Advanced Research and Development Authority, and Deputy Assistant Secretary, Office of the Assistant Secretary for Preparedness and Response, Department of Health and Human Services; Anne Schuchat, Principal Deputy Director, Centers for Disease Control and Prevention; Anthony Fauci, Director, National Institute of Allergy and Infectious Diseases, National Institutes of Health; and Denise Hinton, Chief Scientist, Food and Drug Administration.

### EXAMINATION OF THE GAO AUDIT SERIES OF HHS CYBERSECURITY

On June 20, 2018, the Subcommittee on Oversight and Investigations held a hearing entitled "Examination of the GAO Audit Series of HHS Cybersecurity." The purpose of the hearing was to examine a series of audits that the Committee on Energy and Commerce requested that the Government Accountability Office perform on the Department of Health and Human Services and its component agencies' cybersecurity programs. The Subcommittee received testimony from Sherri Berger, Chief Operating Officer, Centers for Disease Control and Prevention; Suzi Connor, Chief Information Officer, Centers for Disease Control and Prevention; Beth Killoran, Chief Information Officer, Department of Health and Human Services; and Greg Wilshusen, Director, Information Security Issues, Government Accountability Office. The Subcommittee recessed at the conclusion of Member opening statements and reconvened in executive session to receive testimony from and question witnesses.

256

EXAMINING STATE EFFORTS TO IMPROVE TRANSPARENCY OF HEALTH
CARE COSTS FOR CONSUMERS

On July 17, 2018, the Subcommittee on Oversight and Investigations held a hearing entitled "Examining State Efforts to Improve Transparency of Health Care Costs for Consumers." The purpose of the hearing was to examine State laws and policies that improve transparency of health care costs for consumers. The Subcommittee received testimony from Jaime King, Professor, UC Hastings College of the Law, and Associate Dean and Co-Director, UCSF/UC Hastings Consortium on Law, Science, and Health Policy; Michael Chernew, Professor, and Director, Healthcare Markets and Regulation Lab, Harvard Medical School; and Kavita Patel, Associate Chief Medical Officer, Johns Hopkins Medicine.

EXAMINING ADVERTISING AND MARKETING PRACTICES WITHIN THE
SUBSTANCE USE TREATMENT INDUSTRY

On July 24, 2018, the Subcommittee on Oversight and Investigations held a hearing entitled "Examining Advertising and Marketing Practices within the Substance Use Treatment Industry." The purpose of the hearing was to examine practices within the substance use treatment industry, including advertising and marketing and quality of care. The Subcommittee received testimony from Jason Brian, Founder and Owner, Redwood Recovery Solutions and TreatmentCalls.com; Michael T. Cartwright, Chairman and CEO, American Addiction Centers; Mark Mishek, President and CEO, Hazelden Betty Ford Foundation; Robert Niznik, CEO, Addiction Recovery Now and Niznik Behavioral Health, Inc.; Kenneth Stoller, Director, Johns Hopkins Hospital Broadway Center for Addiction; and Marvin Ventrell, Executive Director, National Association of Addiction Treatment Providers.

EXAMINING FEDERAL EFFORTS TO ENSURE QUALITY OF CARE AND
RESIDENT SAFETY IN NURSING HOMES

On September 6, 2018, the Subcommittee on Oversight and Investigations held a hearing entitled "Examining Federal Efforts to Ensure Quality of Care and Resident Safety in Nursing Homes." The purpose of the hearing was to review the roles of the Centers for Medicare and Medicaid Services and the Office of Inspector General at the Department of Health and Human Services (HHS OIG) relating to the management and safety of nursing home facilities. The Subcommittee received testimony from Kate Goodrich, Director, Center for Clinical Standards and Quality and Chief Medical Officer, Centers for Medicare and Medicaid Services; Ruth Ann Dorrill, Regional Inspector General, Department of Health and Human Services; and John Dicken, Director, Health Care, Government Accountability Office.

EXAMINING THE AVAILABILITY OF SAFE KITS AT HOSPITALS IN THE
UNITED STATES

On December 12, 2018, the Subcommittee on Oversight and Investigations held a hearing entitled "Examining the Availability of SAFE Kits at Hospitals in the United States." The purpose of the

257

hearing was to examine the availability of nurses and medical professionals trained to conduct rape kits and the challenges hospitals face in providing access to rape kits. The Subcommittee received testimony from Nicole Clowers, Managing Director, Health Care, U.S. Government Accountability Office; Sara Jennings, President-elect, International Association of Forensic Nurses; Lynn M. Frederick Hawley, Executive Director, SAVI Program, Mount Sinai Hospital; and Kiersten Stewart, Director, Public Policy, Futures Without Violence.

258

AUTHORIZATION AND OVERSIGHT PLAN

(Adopted January 25, 2017)

During the 115th Congress, the Committee on Energy and Commerce will hold hearings and conduct rigorous oversight over matters within its jurisdiction. The Committee will conduct thorough oversight, reach conclusions based on an objective review of the facts, and treat witnesses fairly. The Committee will request information in a responsible manner that is calculated to be helpful to the Committee in its oversight responsibilities. The Committee's oversight functions will focus on: 1) cutting government spending through the elimination of waste, fraud, and abuse and 2) ensuring laws are adequate to protect the public interest or are being implemented in a manner that protects the public interest, without stifling economic growth. The Committee will use the information it collects through its oversight to inform the reauthorization of certain lapsed programs within its jurisdiction.

## HEALTH AND HEALTHCARE ISSUES

### PATIENT PROTECTION AND AFFORDABLE CARE ACT

To aid in legislative efforts to replace the Patient Protection and Affordable Care Act (PPACA), the Committee will continue to examine issues related to the Department of Health and Human Services (HHS) implementation of PPACA, Public Law 111–148, and the related Health Care and Education Reconciliation Act of 2010, Public Law 111–152. It is critical that the Committee understand decisions made in drafting and implementing PPACA so that it can replace PPACA with better solutions focused on helping consumers. The Committee will examine the continuing impact of PPACA and its implementing regulations on the economy, consumers, and the health care industry. The Committee will also examine the status and future of employer-sponsored health care plans as well as the effects of PPACA's enactment on the States. The Committee will continue to monitor the law's effects on individuals as well as the regulations and requirements imposed on small and large businesses.

### CENTERS FOR MEDICARE AND MEDICAID SERVICES

The Committee will review the management, operations, and activity of the Centers for Medicare and Medicaid Services (CMS) and the programs it administers. The Committee will examine and review Medicare and Medicaid management and activity as it relates to ongoing Committee efforts to prevent bias, waste, fraud, and abuse in Federal health care programs. The Committee will investigate the process by which CMS implements statutory formulas to set prices for Medicare payment, as well as the effectiveness of those formulas. The Committee will investigate the processes by which CMS prevents bias, waste, fraud, and abuse in the award of government contracts.

## FOOD AND DRUG ADMINISTRATION AND DRUG SAFETY

The Committee will review whether the Food and Drug Administration (FDA) is ensuring that regulated drugs and medical devices are safe, effective, and available to American patients in an expeditious fashion. The Committee will also explore the interplay between these policies and drug and medical device innovation, both in the United States and abroad. Further, the Committee will examine FDA's enforcement of current drug safety laws and the issues involved in protecting the nation's supply chains against economically motivated and other forms of adulteration, including those posed by illegal drug supply chains and economically-motivated adulteration. The Committee will examine whether FDA's reorganization efforts are improving the effectiveness of product reviews, or worsening delays and inefficiency in decision-making. The Committee will review FDA's efforts to improve and modernize import-safety screening, and the management of its foreign inspection program.

## PUBLIC HEALTH AND PANDEMIC PREPAREDNESS

The Committee will examine the roles of various Federal agencies involved in insuring and protecting the public health, including the implementation and management of these programs. In particular, the Committee will review Federal efforts on the opioid epidemic, pandemic preparedness, including influenza preparedness, the United States' response to the spread of the Zika virus, and other emerging infectious disease threats from abroad. The Committee will continue to evaluate the Federal response to the opioid epidemic, the Zika virus, and other public health emergencies to better understand the operation and efficacy of key public health programs and to address broader concerns about national all-hazards preparedness and response capacity. Further, the Committee will monitor related spending to ensure the appropriate and efficient use of Federal tax dollars.

## 21ST CENTURY CURES AND MENTAL HEALTH REFORMS

In the 115th Congress, the Committee will examine implementation of the 21st Century Cures Act, landmark legislation that will expedite the discovery, development, and delivery of new treatments and cures. The legislation also included meaningful mental health reforms. The Committee will ensure that HHS and its component agencies, including FDA and the National Institutes of Health, and other relevant agencies implement the legislation in a manner that will quickly deliver the benefits provided by the law. The Committee will conduct oversight of the implementation of and work done by the newly-created Assistant Secretary for Mental Health and Substance Use, an office which will be responsible for HHS mental health programs and policies. The Committee will also examine regulations drafted to implement the 21st Century Cures Act to ensure they comport with the intent of Congress, and will monitor funding provided by the legislation to ensure that it is appropriately spent.

260

## ENERGY AND ENVIRONMENT ISSUES

### National Energy Policy

During the 115th Congress, the Committee will examine issues relating to national energy policy, including U.S. policies that relate to the exploration, production, distribution, and consumption of electricity, oil and natural gas, coal, hydroelectric power, nuclear power, and renewable energy. The Committee will examine the impact of government policies and programs on the efficient exploration, production, storage, supply, marketing, pricing, and regulation of domestic energy resources, including issues relating to the nation's energy infrastructure. The Committee will continue to examine safety and security issues relating to energy exploration, production, and distribution.

### Electricity System and Electric Utility Markets

During the 115th Congress, the Committee will undertake a comprehensive review of the nation's electricity system. This effort will include a review of the Federal electricity policies of the Department of Energy (DOE) and the Federal Energy Regulatory Commission (FERC) to ensure that those policies promote competitive wholesale power markets, transmission, generation infrastructure upgrades, and compliance with relevant statutes. It will also examine the activities of the DOE and FERC relating to electric industry restructuring, protection of consumers, and the development of efficient and vigorous wholesale markets for electricity. It will also continue to examine the activities of the DOE and FERC with respect to Environmental Protection Agency (EPA) regulations affecting the electricity sector, including regulatory requirements that may impact consumer prices and reliability of the electricity grid.

### Energy Efficiency

The Committee will continue to assess Federal programs setting energy efficiency standards for motor vehicles, crafted by EPA and the National Highway Traffic Safety Administration (NHTSA), and home appliances, crafted by DOE, to ensure that the programs are implemented in a manner that maximizes the benefit to consumers. In the case of motor vehicle standards, the Committee will also assess the merit of having two Federal agencies operating parallel efficiency programs. The Committee will continue to promote energy efficiency initiatives in order to create jobs, save businesses and consumers money, and improve our nation's energy security. This may include Federal programs setting energy efficiency standards for motor vehicles and appliances, to ensure that the programs are implemented in a manner that rewards innovation, ensures benefits for consumers and businesses, enhances U.S. energy security, and protects the environment.

### Management of the Department of Energy and its National Laboratories

The Committee will continue to oversee the governance, management, and operations issues at DOE, including oversight, manage-

261

ment, and operations of the National Nuclear Security Administration (NNSA) and the national laboratories. The Committee's oversight work will include review of the implementation of security and safety reforms at NNSA and DOE facilities, ongoing safety and security matters, and the Office of Environmental Management's cleanup program. This work will also include the Committee's special oversight functions over programs and activities relating to nonmilitary energy research and development.

The Committee will also continue to examine the findings and the recommendations made by the final report of the Congressional Advisory Panel on the Governance of the National Nuclear Security Enterprise as established by Section 3166 of the FY 2013 NDAA.

### YUCCA MOUNTAIN

The Committee will continue to examine the actions of DOE and the NRC in connection with obligations of these agencies under the Nuclear Waste Policy Act, including licensing activities for the Yucca Mountain repository.

### DOE ENERGY GRANT AND LOAN PROGRAMS

The Committee will continue to review management and implementation of clean energy and advanced technology grant and loan programs authorized under the Energy Policy Act of 2005 and other statutes; the development of new technologies, products, and businesses including clean energy, advanced coal, nuclear, and other technologies; and the impact of DOE grant, cost-sharing, and loan spending on the domestic supply, manufacture and commercial deployment of clean and advanced energy products and other technologies.

### THE NUCLEAR REGULATORY COMMISSION

The Committee will continue to review the activities of the Nuclear Regulatory Commission (NRC). The Committee will examine NRC's budget requests and conduct oversight of the manner in which the Commission discharges its various responsibilities, including licensing activity, the safety and security of nuclear power facilities and nuclear materials licensees, and the Commission's regulatory actions.

### CLEAN AIR ACT

The Committee will continue to review significant rulemakings under the Clean Air Act and the potential economic and job impacts of those rulemakings on the energy, manufacturing, industrial, and construction industries, and other critical sectors of the U.S. economy, as well as any public health and environmental benefits of the regulations. The Committee's review will include oversight of the EPA's decisions, strategies, and actions to meet Clean Air Act standards, and the current role of cost, employment and feasibility considerations in Clean Air Act rulemakings. The Committee will also continue to review EPA's implementation of the Renewable Fuel Standard.

262

### Climate Change

The Committee will continue to monitor international negotiations on efforts to control greenhouse gas emissions in connection with concerns about global climate change. In addition, the Committee will examine the EPA's efforts to regulate domestic greenhouse gas emissions under the Clean Air Act based on its endangerment findings. The Committee will consider whether such agreements and regulatory efforts are scientifically well grounded. The Committee will also review the activities undertaken in this area by DOE, HHS, and other agencies within the Committee's jurisdiction, including efforts to prepare for and respond to weather events and natural disasters in the future.

### EPA Management and Operations

The Committee will conduct general oversight of the EPA, including review of the agency's funding decisions, resource allocation, grants, research activities, enforcement actions, relations with State and local governments, public transparency, and respect for economic, procedural, public health, and environmental standards in regulatory actions. In addition, the Committee will review the government's activities in hydraulic fracturing research and regulation.

### Assessment and Management of Chemical Substances

The Committee will monitor EPA implementation of reforms made to title I of the Toxic Substances Control Act. These efforts will include program management and the use of chemical risk analysis in environmental assessment programs. The Committee will also review deadline management and consistency of implementation, ensure that confidential business information is protected from unwarranted disclosure, and make certain that EPA provides the appropriate consideration of risks and their trade-offs during the evaluation and regulatory process.

### Drinking Water Infrastructure and Regulation

The Committee will conduct oversight of the operation of the Drinking Water State Revolving Loan Fund program authorized under section 1452 of the Safe Drinking Water Act. Included will be an examination of State funding uses, efficiencies that could be realized in managing this funding that maximize its effectiveness, and the use of this funding for leveraging other investments. In addition, the Committee will conduct oversight of EPA regulatory actions under section 1412 of the Safe Drinking Water Act and the protocol it uses to issue health advisories under the same section of law.

### Solid and Hazardous Waste Management

The Committee will review EPA implementation of various regulatory programs established under the most recent administration, including regulations regarding the definition of solid waste and coal ash.

263

### CERCLA (Superfund) and Brownfields

The Committee will monitor EPA implementation of the Comprehensive Environmental Response Compensation & Liability Act (CERCLA). These efforts will include an examination of State cleanup programs and a comprehensive analysis regarding whether cleanup under State programs would result in greater efficiency in the process. The Committee will also conduct oversight of EPA regulatory actions under CERCLA, in particular the current rule making for financial assurance under CERCLA section 108(b). The Committee will also examine the EPA brownfields program, including statutory implementation, the challenges of program operation, and whether changes to the program would result in more effective and efficient cleanup and redevelopment of abandoned and blighted properties.

## COMMUNICATIONS AND TECHNOLOGY ISSUES

### A Modern Communications Framework for the Innovation Age

The Committee will continue to exercise its jurisdiction over wired and wireless communications to ensure our nation's policies governing voice, video, audio, and data services are promoting investment, innovation, and job creation. The country's current regulatory regime takes a siloed approach in which different technological platforms—such as wireline, wireless, broadcast, cable, and satellite—are regulated differently based on regulations that may be decades old. As we move deeper into the Internet era, however, providers are increasingly using these platforms to offer the same or similar services. The Committee will examine whether these regulations should be updated to better meet the communications needs of the country and to ensure its citizens enjoy cutting edge services and the economic benefits they bring.

### Federal Communications Commission

During the 115th Congress, the Committee will conduct oversight of the Federal Communications Commission (FCC), including the efforts to reverse the reclassification of Broadband Internet Access Service as a telecommunications service subject to title II of the Communications Act of 1934 and efforts to bring transparency and accountability to the Commission's processes. The Committee will also continue to conduct oversight of the FCC's decisions and their impact on innovation and the U.S. economy. Among other things, the Committee will evaluate the impact generally of FCC actions on voice, video, audio, and data services, and on public safety. The Committee will pay particular attention to whether the FCC conducts cost-benefit and market analyses before imposing regulations.

### Spectrum Management

The Committee will conduct oversight of the Federal Communications Commission's and the National Telecommunications and Information Administration's (NTIA) management and allocation of

264

the nation's spectrum for commercial and government use. Spectrum is increasingly being used to provide voice, video, audio, and data services to consumers and to serve the needs of our nation's government agencies. The Committee will evaluate spectrum-management policies to ensure efficient use of the public airwaves for innovative communications services. The Committee will also examine whether plans for allocating spectrum maximizes broadband deployment and encourages investment. The Committee will pay particular attention to FCC and NTIA implementation of the Middle Class Tax Relief and Job Creation Act of 2012 and the Bipartisan Budget Act of 2015, which included provisions intended to make more spectrum available for mobile broadband services, as well as raise billions in spectrum auction proceeds.

### Availability of Broadband

The Committee will investigate whether regulatory policies are helping or hindering broadband deployment. In particular, the Committee will examine the need for reforms to State and Federal permitting processes to speed the deployment of fiber optic systems and 5G wireless services. Additionally, the Committee will conduct oversight of funding mechanisms for broadband deployment and adoption, including the $9 billion per year Universal Service Fund. Specifically, the Committee will examine what procedures are in place to control waste, fraud, and abuse, whether the funds are appropriately targeted, and the impact of the funding on jobs and the economy.

### Internet

The Committee will exercise its jurisdiction over wired and wireless communications to ensure continued growth and investment in the Internet. In particular, the Committee will monitor efforts to employ the multi-stakeholder model of Internet governance—in which governmental and non-governmental entities develop best practices for the management of Internet networks and content. The Committee will also monitor international efforts to replace multistakeholder governance with domestic regulation and international multilateral institutions.

### Public Safety Communications

The Committee will examine whether the communications needs of first responders are being met. The Committee will examine the progress being made to ensure that first responders have interoperable communications capabilities with local, State, and Federal public safety officials. The Committee will also examine the progress being made by the First Responder Network Authority (FirstNet) in carrying out the mandates of the Middle Class Tax Relief and Job Creation Act of 2012. Specifically, the progress made in finding private sector partners to develop an interoperable public safety broadband network and implementation of the network. In addition, the Committee will conduct oversight regarding the implementation of legacy 911 and Next Generation 911 (NG911) services. The Committee will review efforts to promote deployment of

265

these advanced systems and challenges to realizing ubiquitous NG911.

## DIGITAL COMMERCE AND CONSUMER PROTECTION

### PRIVACY AND SECURITY

In the 115th Congress, the Committee will examine issues relating to the privacy and security of methods, information and data collected by businesses about consumers and the potential for improving protection without undercutting innovative uses that benefit consumers and the economy. Further, the Committee will continue to review the manner in which fraud and other criminal activities affect e-commerce. The Committee will also explore how privacy and cybersecurity policies should treat the burgeoning Internet of Things.

### SELF-DRIVING VEHICLES

The Committee will examine the policy framework being put into place for self-driving vehicles. Self-driving vehicles hold the promise to greatly reduce traffic fatalities, while at the same time expanding mobility to additional subsets of Americans and doing so with less impact on the environment. It is critical that this technology is encouraged through smart approaches and to ensure that the potential of revolutionary change to the industry is not curtailed by unnecessary regulation.

### MANUFACTURING

The Committee will explore the state of manufacturing in the United States to identify factors that are hampering or furthering U.S. competitiveness. The Committee will review the issues presented by the globalization of production and manufacturing networks, including the integrity of products and components assembled overseas and the impact on national security.

### TRADE

The Committee will examine trade negotiations to ensure that foreign governments are not imposing non-tariff trade barriers, such as regulations or requirements, that harm U.S. businesses, their competitiveness and their ability to support jobs in the United States, especially as it relates to the flow of data across borders.

### DEPARTMENT OF COMMERCE MANAGEMENT AND OPERATIONS

The Committee will conduct oversight of the Commerce Department and complementary or conflicting Federal efforts to promote U.S. manufacturing, exports, and trade, including efforts to lower or eliminate non-tariff barriers and harmonize regulation of products sold internationally where other countries share our health, safety, and consumer protection goals.

266

### CONSUMER PRODUCT SAFETY COMMISSION MANAGEMENT AND OPERATIONS

The Committee will continue oversight of the Consumer Product Safety Commission and its implementation and enforcement of laws and regulations relating to the safety of consumer products, including the agency's implementation of Public Law 112–28 and determination of priorities to ensure that it is efficiently and effectively protecting consumers.

### NHTSA MANAGEMENT AND OPERATIONS

The Committee intends to continue oversight of the National Highway Traffic Safety Administration (NHTSA), including the effectiveness of the agency's structure, regulations, research activities, investigations, and enforcement actions pertaining to motor vehicle safety. The committee will be particularly concerned with the way the Administration processes information and its ability to effectively oversee ever advancing safety technologies.

### FEDERAL TRADE COMMISSION MANAGEMENT AND OPERATIONS

The Committee will conduct oversight of the Federal Trade Commission's management and operations, including the impact of its decisions and actions on the general public and the business community, its determination of priorities and the need, if any, for refinement of its authorities. In particular, the Committee will explore the FTC's role relative to emerging sectors of the economy and its jurisdiction relative to new technologies.

## MISCELLANEOUS

### CYBERSECURITY

The Committee will exercise its jurisdiction over cybersecurity to ensure the country is well protected while at the same time avoiding one-size-fits all approaches that hinder the flexibility of commercial and governmental actors to combat the rapidly evolving threats. The Committee will also review the efforts of agencies within its jurisdiction to secure their networks consistent with the Homeland Security Act of 2002. In doing so, the Committee will explore current cybersecurity threats and strategies to address those threats. The Committee will also examine government initiatives to improve cybersecurity both in the public and private sectors, and review efforts at agencies within the Committee's jurisdiction to regulate cybersecurity. The Committee will also examine the security of the Internet of Things, discovery and disclosure of cybersecurity vulnerabilities, the National Institute of Standards and Technology (NIST) Cybersecurity Framework, and the recently released report from the Presidential Commission on Enhancing Cybersecurity.

### BIOTERRORISM PREPAREDNESS AND RESPONSE

The Committee will continue its examination of the roles of HHS agencies in assisting the nation's detection, warning capability, and response to potential biological attacks. In addition, the Committee

267

will evaluate the potential impact and preparedness of the nation's public health system. The Committee will continue to review the implementation of the Public Health Security and Bioterrorism Preparedness and Response Act of 2002 by HHS, and the extent of the coordination between HHS and the Department of Homeland Security (DHS), especially as it relates to Project Bioshield.

### FEDERAL OVERSIGHT OF HIGH-CONTAINMENT BIO LABORATORIES

The Committee will examine issues related to high-containment bio laboratories, which handle some of the world's most exotic and dangerous diseases, including anthrax, smallpox, foot and mouth disease, and Ebola virus. Among the issues under review are the adequacy of the security and practices of high-containment bio laboratories, Federal efforts to oversee the laboratories, and whether some of these efforts are duplicative and overlapping. The Committee will continue its oversight into issues raised by the improper storage and handling of Federal select agents at CDC, NIH, and FDA labs.

### ANTI-TERRORISM SECURITY FOR CHEMICAL FACILITIES

The Committee will continue its oversight of DHS's implementation of the Chemical Facilities Anti-Terrorism Program, originally authorized in Section 550 of Public Law 109–295, the Homeland Security Appropriations Act of 2007. The Committee will continue to examine whether taxpayer funds are spent prudently and the extent to which DHS is advancing the purpose of securing chemical facilities against terrorist threats.

### GOVERNMENT SCIENTIFIC AND RISK ASSESSMENT PROGRAMS

During the 115th Congress, the Committee will examine issues relating to the numerous Federal science programs assessing public health risks, including the Integrated Risk Information System at the EPA, the Report on Carcinogens produced by the National Toxicology Program at HHS, and assessments proposed or ongoing in other Federal departments and agencies. The Committee will review programs to assess the objectives, transparency, and integrity of scientific assessments that inform regulatory and public health policies.

### CONTROLLING SPENDING

The Committee will examine Departments and agencies under its jurisdiction to assure adequate and prompt implementation of recommendations from the Administration, the Offices of Inspectors General, the Government Accountability Office, and other sources to achieve cost savings or eliminate wasteful spending.

### CRITICAL INFRASTRUCTURE

In June 2006, the Bush Administration issued a National Infrastructure Protection Plan. This plan created a process by which DHS is to identify critical assets and assess their vulnerabilities and risks due to loss or natural disaster. During the 115th Congress, the Committee will review the Department's activities with

268

respect to identifying high-priority assets and implementing plans to protect these assets in areas within the Committee's jurisdiction. The Committee will also examine the activities of DOE, FERC, and other Federal agencies related to the physical and cybersecurity of the nation's energy infrastructure. Further, the Committee will examine the roles and responsibilities of the private sector, which owns and operates the bulk of the nation's critical infrastructure assets.

### NUCLEAR SMUGGLING

The Committee will continue to monitor Federal government and private sector efforts at border crossings, seaports, and mail facilities. The Committee's review will analyze and assess U.S. Customs and Border Protection and the Department of Energy's efforts, including international efforts, aimed at detecting and preventing the smuggling of dangerous commerce, particularly nuclear and radiological weapons of mass destruction.

### AUTHORIZATION OF PROGRAMS WITHIN THE JURISDICTION OF THE COMMITTEE ON ENERGY AND COMMERCE

During the 115th Congress, as part of both its oversight and legislative agenda, the Committee on Energy and Commerce will review the authorizations of agencies and programs within its jurisdiction and, specifically with regard to lapsed authorizations, determine whether the program should be reauthorized or terminated. Each subcommittee will conduct oversight of these programs and offices, including hearings, outreach to the Executive Branch, and requests for information in order to gather the necessary information to support these determinations.

The Committee plans to dedicate considerable time in the 115th Congress to examining the policies of the Patient Protection and Affordable Care Act (PPACA) and then developing legislation to improve health care delivery and treatment and lower costs for families. When the PPACA was enacted in 2010, it authorized dozens of individual programs. Some of these programs received indefinite, or "such sums" authorizations, and others were authorized at a specific level. Since 2010, the authorizations for most of these programs have expired; some have continued to receive appropriations while others have not. The Committee expects to consider the now-lapsed programs that the law authorized and determine which ones should be reauthorized. The Committee's oversight of the PPACA, as described previously in this document, will necessarily inform how the Committee will advance alternative solutions to the PPACA and either the reauthorize or terminate the programs first authorized by the that law. The Committee plans to work closely with the Department of Health and Human Services and the Executive Branch when making decisions about individual programs.

In addition to examining the lapsed authorizations contained within the ACA, the Committee in the first session of the 115th Congress will work on the reauthorization of two key programs before they expire: the State Children's Health Insurance Program (SCHIP), last authorized in the Medicare Access and CHIP Reauthorization Act of 2015 and expiring in 2017, and the Food and

269

Drug Administration (FDA) User Fees, including the Prescription Drug User Fee Act (PDUFA) and Generic Drug User Fee Amendments (GDUFA). The reauthorization of both programs will require multiple hearings and may involve extensive negotiations.

With regard to the Committee's jurisdiction over energy and the environment, a number of the energy and environment programs within the Committee's jurisdiction have lapsed but continue to receive appropriations. The bulk of the lapsed programs are within the Committee's energy jurisdiction, including the Energy Policy Act of 2005 (P.L. 109–58) and the Energy Independence and Security Act of 2007 (P.L. 110–140). In addition, there are various lapsed programs within the Clean Air Act; the Safe Drinking Water Act; the Toxic Substances Control Act; the Nuclear Waste Policy Act; the Solid Waste Disposal Act, also referred to as the Resource Conservation and Recovery Act (RCRA); the Comprehensive Environmental Response, Compensation, and Liability Act of 1980; the Superfund Amendments and Reauthorization Act of 1986; the Energy Act of 2000; the Small Business Liability Relief and Brownfields Revitalization Act; the Pollution Prevention Act; the Department of Energy Organization Act; and the Energy Policy and Conservation Act of 1975.

As many of the programs related to energy and environmental matters have lapsed for more than a decade, and as part of the Committee's ongoing work to modernize energy policy, it is an appropriate time to consider whether these programs should continue, be updated, or be terminated. The Committee plans to collect information as appropriate and to evaluate the relevant programs within the Department of Energy, the Environmental Protection Agency, the Nuclear Regulatory Commission, the Energy Information Administration, the Federal Energy Regulatory Commission, the Department of Homeland Security, and other relevant agencies. Such reauthorization activity will include consideration of programs in relation to current and projected U.S. economic, energy, and environmental conditions.

In addition to the reauthorization work described previously in the health, environment, and energy jurisdictions of the Committee, and as explained in the oversight plan, the Committee plans to lay the groundwork for other reauthorizations in this Congress. Within the jurisdiction of the Subcommittee on Communications and Technology, the oversight of the Federal Communications Commission (FCC) and the NTIA that the Committee pursued in the 114th Congress will continue in the 115th Congress, including the examination of the Federal Communications Commission Authorization Act of 1990 and the NTIA Organization Act. Finally, within the jurisdiction of the Subcommittee on Digital Commerce and Consumer Protection, the Federal Trade Commission was last reauthorized in 1996, with the authorization expiring at the end of Fiscal Year 1998. The Subcommittee on Digital Commerce and Consumer Protection plans to conduct continued oversight of how the FTC carries out its authorities relating to unfair or deceptive acts or practices, specifically the agency's actions with respect to disruptive and technology-driven markets, innovative products, and services that benefit consumers. The purpose of this oversight work is to clarify the FTC's consumer protection authority in areas

270

where observed harms have plagued consumers and better under-
stand the legal and economic basis for the agency's enforcement ac-
tions.

The reauthorization work will require extensive Committee re-
sources and member participation, particularly of the members of
the Subcommittee on Health and Subcommittee on Energy. While
the Committee expects that the repeal and replacement of the
PPACA will be accomplished by the end of the 115th Congress, it
is possible that the Committee's work to reauthorize the energy
and environment-related programs and agencies will continue into
the next Congress.

271

PUBLIC LAWS

This list includes: (1) legislation on which the Committee on Energy and Commerce acted directly, (2) legislation developed through Committee participation in House-Senate conferences, and (3) legislation which included provisions within the Committee's jurisdiction, including legislation enacted by reference as part of other legislation.

| Serial No. | Bill | Title |
|---|---|---|
| 115–22 | S.J.Res. 34 | Providing for congressional disapproval under chapter 8 of title 5, United States Code, of the rule submitted by the Federal Communications Commission relating to "Protecting the Privacy of Customers of Broadband and Other Telecommunications Services". |
| 115–23 | H.J.Res. 43 | Providing for congressional disapproval under chapter 8 of title 5, United States Code, of the final rule submitted by Secretary of Health and Human Services relating to compliance with title X requirements by project recipients in selecting subrecipients. |
| 115–43 | H.R. 1238 | Securing our Agriculture and Food Act. |
| 115–52 | H.R. 2430 | FDA Reauthorization Act of 2017. |
| 115–63 | H.R. 3823 | Disaster Tax Relief and Airport and Airway Extension Act of 2017. |
| 115–70 | S. 178 | Elder Abuse Prevention and Prosecution Act |
| 115–71 | S. 652, H.R. 1539 | Early Hearing Detection and Intervention Act of 2017. |
| 115–78 | S. 190, H.R. 511 | Power And Security Systems (PASS) Act. |
| 115–80 | S. 920, H.R. 309 | National Clinical Care Commission Act. |
| 115–83 | H.R. 304 | Protecting Patient Access to Emergency Medications Act of 2017. |
| 115–92 | H.R. 4374 | To amend the Federal Food, Drug, and Cosmetic Act to authorize additional emergency uses for medical products to reduce deaths and severity of injuries caused by agents of war, and for other purposes. |
| 115–115 | H.R. 518 | EPS Improvement Act of 2017. |
| 115–120 | H.R. 195 | Making further continuing appropriations for the fiscal year ending September 30, 2018, and for other purposes (P.L. 115–120 included H.R. 3921). |
| 115–123 | H.R. 1892 | Bipartisan Budget Act of 2018 (P.L. 115–123 included the following bills: H.R. 829, H.R. 938, H.R. 1148, H.R. 2465, H.R. 3120, H.R. 3163, H.R. 3245, H.R. 3263, H.R. 3271, H.R. 3394, H.R. 3900, H.R. 3917, H.R. 3922, H.R. 3924, H.R. 3926, H.R. 3935, H.R. 4430, H.R. 4987). |
| 115–127 | H.R. 582 | Kari's Law Act of 2017 |
| 115–129 | S. 96, H.R. 460 | Improving Rural Call Quality and Reliability Act of 2017. |
| 115–141 | H.R. 1625 | Consolidated Appropriations Act, 2018 [P.L. 115–141 included the following bills: H.R. 3017, H.R. 4986, H.R. 423, H.R. 588, H.R. 599, H.R. 1340, H.R. 1546, H.R. 1581, H.R. 2546, H.R. 2636, H.R. 3347, H.R. 3995, H.R. 5236, H.R. 6394, H.R. 1814, H.R. 3685, H.R. 4109, H.R. 4795, H.R. 4798, H.R. 4839, H.R. 4800, H.R. 4847]. |
| 115–161 | S. 2030, H.R. 3477 | Ceiling Fan Energy Conservation Harmonization Act. |
| 115–164 | H.R. 1865 | Allow States and Victims to Fight Online Sex Trafficking Act of 2017. |
| 115–176 | S. 204, H.R. 5247 | Trickett Wendler, Frank Mongiello, Jordan McLinn, and Matthew Bellina Right to Try Act of 2018. |
| 115–180 | S. 292 | Childhood Cancer Survivorship, Treatment, Access, and Research Act of 2018. |
| 115–194 | H.R. 931 | Firefighter Cancer Registry Act of 2017. |
| 115–196 | S. 1091 | Supporting Grandparents Raising Grandchildren Act. |
| 115–202 | H.R. 446 | To extend the deadline for commencement of construction of a hydroelectric project. |
| 115–203 | H.R. 447 | To extend the deadline for commencement of construction of a hydroelectric project. |
| 115–204 | H.R. 951 | To extend the deadline for commencement of construction of a hydroelectric project. |
| 115–205 | H.R. 2122 | To extend the deadline for commencement of construction of a hydroelectric project involving Jennings Randolph Dam. |
| 115–206 | H.R. 2292 | To extend a project of the Federal Energy Regulatory Commission involving the Cannonsville Dam. |
| 115–219 | S. 490, H.R. 3872 | To reinstate and extend the deadline for commencement of construction of a hydroelectric project involving the Gibson Dam. |
| 115–222 | H.R. 6042 | To amend title XIX of the Social Security Act to delay the reduction in Federal medical assistance percentage for Medicaid personal care services furnished without an electronic visit verification system, and for other purposes. |
| 115–328 | S. 3029 | Prematurity Research Expansion and Education for Mothers who deliver Infants Early (PREEMIE) Reauthorization Act of 2018 |
| 115–233 | H.R. 2345 | National Suicide Hotline Improvement Act of 2017. |
| 115–234 | H.R. 5554 | Animal Drug and Animal Generic Drug User Fee Amendments of 2018. |

| Serial No. | Bill | Title |
|---|---|---|
| 115–241 | H.R. 5385 | Dr. Benjy Frances Brooks Children's Hospital GME Support Reauthorization Act of 2018. |
| 115–247 | H.R. 1109 | To amend section 203 of the Federal Power Act. |
| 115–254 | H.R. 302 | FAA Reauthorization Act of 2018 (Division A, Sports Medicine Licensure Clarity Act of 2018; Division E, Concrete Masonry Products Research, Education, and Promotion Act of 2018). |
| 115–262 | S.2553, H.R. 6733 | Know the Lowest Price Act of 2018. |
| 115–263 | S.2554, H.R. 6733 | Patient Right to Know Drug Prices Act. |
| 115–270 | S. 3021, H.R. 587, H.R. 2786, H.R. 2872, H.R. 2880, H.R. 3043. | America's Water Infrastructure Act of 2018. |
| 115–271 | H.R. 6 | Substance Use-Disorder Prevention that Promotes Opioid Recovery and Treatment for Patients and Communities Act. |
| 115–278 | H.R. 3359 | Cybersecurity and Infrastructure Security Agency Act of 2018. |
| 115–302 | H.R. 2422 | Action for Dental Health Act of 2018. |
| 115–320 | H.R. 315 | Improving Access to Maternity Care Act. |
| 115–327 | S. 2465, H.R. 2410 | Sickle Cell Disease and Other Heritable Blood Disorders Research, Surveillance, Prevention, and Treatment Act of 2018. |
| 115– | H.R.–7213 | Countering Weapons of Mass Destruction Act of 2018. |
| 115– | S. 1311 | Abolish Human Trafficking Act of 2017. |
| 115–334 | H.R. 2, H.R. 4881 | Agriculture Improvement Act of 2018. |
| 115– | H.R. 1318 | Preventing Maternal Deaths Act of 2018. |
| 115– | H.R. 6615 | Traumatic Brain Injury Program Reauthorization Act of 2018. |
| 115– | H.R. 1222 | Congenital Heart Futures Reauthorization Act of 2017. |
| 115– | S. 2076, H.R. 4256 | BOLD Infrastructure for Alzheimer's Act. |
| 115– | S. 2278, H.R. 5641 | State Offices of Rural Health Reauthorization Act of 2018. |
| 115– | H.R. 767 | SOAR to Health and Wellness Act of 2018. |
| 115– | S. 512 | Nuclear Energy Innovation and Modernization Act. |

## PRINTED HEARINGS

| Serial No. | Hearing Title | Hearing Date(s) |
|---|---|---|
| 115–1 | Medicaid Oversight: Existing Problems and Ways to Strengthen the Program. (Subcommittee on Oversight and Investigations). | January 31, 2017 |
| 115–2 | Strengthening Medicaid and Prioritizing the Most Vulnerable. (Subcommittee on Health). | February 1, 2017 |
| 115–3 | The Electricity Sector's Efforts to Respond to Cybersecurity Threats. (Subcommittee on Energy). | February 1, 2017 |
| 115–4 | Patient Relief from Collapsing Health Markets. (Subcommittee on Health) | February 2, 2017 |
| 115–5 | Reauthorization of NTIA. (Subcommittee on Communications and Technology) | February 2, 2017 |
| 115–6 | Self-Driving Cars: Road to Deployment. (Subcommittee on Digital Commerce and Consumer Protection). | February 14, 2017 |
| 115–7 | Modernizing Energy and Electricity Delivery Systems—Challenges and Opportunities to Promote Infrastructure Improvement and Expansion. (Subcommittee on Energy). | February 15, 2017 |
| 115–8 | Modernizing Environmental Laws: Challenges and Opportunities for Expanding Infrastructure and Promoting Development and Manufacturing. (Subcommittee on Environment). | February 16, 2017 |
| 115–9 | Ways to Improve and Strengthen the International Anti-Doping System. (Subcommittee on Oversight and Investigations). | February 28, 2017 |
| 115–10 | Examining FDA's Generic Drug and Biosimilar User Fee Programs. (Subcommittee on Health). | March 2, 2017 |
| 115–11 | Disrupter Series: Advanced Materials and Production. (Subcommittee on Digital Commerce and Consumer Protection). | March 15, 2017 |
| 115–12 | Modernizing Energy Infrastructure: Challenges and Opportunities to Expanding Hydropower Generation. (Subcommittee on Energy). | March 15, 2017 |
| 115–13 | Reinvestment and Rehabilitation of Our Nation's Safe Drinking Water Delivery Systems. (Subcommittee on Environment). | March 16, 2017 |
| 115–14 | Disrupter Series: Smart Communities. (Subcommittee on Digital Commerce and Consumer Protection). | March 16, 2017 |
| 115–15 | Broadband: Deploying America's 21st Century Infrastructure. (Subcommittee on Communications and Technology). | March 21, 2017 |
| 115–16 | Fentanyl: The Next Wave of the Opioid Crisis. (Subcommittee on Oversight and Investigations). | March 21, 2017 |

273

PRINTED HEARINGS—Continued

| Serial No. | Hearing Title | Hearing Date(s) |
|---|---|---|
| 115–17 ........ | H.R. 806, Ozone Standards Implementation Act of 2017. (Subcommittee on Environment). | March 22, 2017 |
| 115–18 ........ | Examining FDA's Prescription Drug User Fee Program. (Subcommittee on Health) ..... | March 22, 2017 |
| 115–19 ........ | Self-Driving Cars: Levels of Automation. (Subcommittee on Digital Commerce and Consumer Protection). | March 28, 2017 |
| 115–20 ........ | Examining FDA's Medical Device User Fee Program. (Subcommittee on Health) ........ | March 28, 2017 |
| 115–21 ........ | Realizing Nationwide Next-Generation 911. (Subcommittee on Communications and Technology). | March 29, 2017 |
| 115–22 ........ | Federal Energy Related Tax Policy and its Effects on Markets, Prices, and Consumers. (Subcommittee on Energy). | March 29, 2017 |
| 115–23 ........ | Discussion Draft: Brownfields Reauthorization. (Subcommittee on Environment) ........ | April 4, 2017 |
| 115–24 ........ | Cybersecurity in the Heath Care Sector: Strengthening Public-Private Partnerships. (Subcommittee on Oversight and Investigations). | April 4, 2017 |
| 115–25 ........ | Facilitating the 21st Century Wireless Economy. (Subcommittee on Communications and Technology). | April 5, 2017 |
| 115–26 ........ | H.R. _____, the Nuclear Waste Policy Amendments Act of 2017. (Subcommittee on Environment). | April 26, 2017 |
| 115–27 ........ | Outdoor Recreation: Vast Impact of the Great Outdoors. (Subcommittee on Digital Commerce and Consumer Protection). | April 27, 2017 |
| 115–28 ........ | Examining Improvements to the Regulation of Medical Technologies. (Subcommittee on Health). | May 2, 2017 |
| 115–29 ........ | Combating Waste, Fraud, and Abuse in Medicaid's Personal Care Services Program. (Subcommittee on Oversight and Investigations). | May 2, 2017 |
| 115–30 ........ | Legislation Addressing Pipeline and Hydropower Infrastructure Modernization. (Subcommittee on Energy). | May 3, 2017 |
| 115–31 ........ | Future of Emergency Alerting. (Subcommittee on Communications and Technology) .. | May 17, 2017 |
| 115–32 ........ | Examining Initiatives to Advance Public Health. (Subcommittee on Health) ............. | May 17, 2017 |
| 115–33 ........ | H.R. _____, Drinking Water System Improvement Act and related issues of funding, management, and compliance assistance under the Safe Drinking Water Act. (Subcommittee on Environment). | May 19, 2017 |
| 115–35 ........ | Disrupter Series: Delivering to Consumers. (Subcommittee on Digital Commerce and Consumer Protection). | May 23, 2017 |
| 115–34 ........ | U.S. Public Health Response to the Zika Virus: Continuing Challenges. (Subcommittee on Oversight and Investigations). | May 23, 2017 |
| 115–36 ........ | Disrupter Series: Improving Consumer's Financial Options With FinTech. (Subcommittee on Digital Commerce and Consumer Protection). | June 8, 2017 |
| 115–37 ........ | Examining the Role of the Department of Health and Human Services in Health Care Cybersecurity. (Subcommittee on Oversight and Investigations). | June 8, 2017 |
| 115–38 ........ | Promoting Security in Wireless Technology. (Subcommittee on Communications and Technology). | June 13, 2017 |
| 115–39 ........ | Disrupter Series: Update on IOT Opportunities and Challenges. (Subcommittee on Digital Commerce and Consumer Protection). | June 13, 2017 |
| 115–40 ........ | Defining and Mapping Broadband Coverage in America. (Subcommittee on Communications and Technology). | June 21, 2017 |
| 115–41 ........ | Examining the Extension of Safety Net Health Programs. (Subcommittee on Health) | June 23, 2017 |
| 115–42 ........ | Self-Driving Vehicle Legislation. (Subcommittee on Digital Commerce and Consumer Protection). | June 27, 2017 |
| 115–43 ........ | Examining Medical Product Manufacturer Communications. (Subcommittee on Health). | July 12, 2017 |
| 115–44 ........ | Combating the Opioid Crisis: Battles in the States. (Subcommittee on Oversight and Investigations). | July 12, 2017 |
| 115–45 ........ | Powering America: Examining the State of the Electric Industry through Market Participant Perspectives. (Subcommittee on Energy). | July 18, 2017 |
| 115–46 ........ | Examining HRSA's Oversight of the 340B Drug Pricing Program. (Subcommittee on Oversight and Investigations). | July 18, 2017 |
| 115–47 ........ | Examining Bipartisan Legislation to Improve the Medicare Program. (Subcommittee on Health). | July 20, 2017 |
| 115–48 ........ | Oversight and Reauthorization of the Federal Communications Commission. (Subcommittee on Communications and Technology). | July 25, 2017 |
| 115–49 ........ | Powering America: A Review of the Operation and Effectiveness of the Nation's Wholesale Electricity Markets. (Subcommittee on Energy). | July 26, 2017 |
| 115–50 ........ | Examining the Extension of Special Needs Plans. (Subcommittee on Health) ............. | July 2, 2017 |
| 115–51 ........ | Powering America: Reevaluating PURPA's Objectives and its Effects on Today's Consumers. (Subcommittee on Energy). | September 6, 2017 |

274

PRINTED HEARINGS—Continued

| Serial No. | Hearing Title | Hearing Date(s) |
|---|---|---|
| 115–52 ........ | EPA Oversight: Unimplemented Inspector General and GAO Recommendations. (Subcommittee on Oversight and Investigations). | September 6, 2017 |
| 115–53 ........ | The Broadcast Incentive Auction: Update on Repacking Opportunities and Challenges. (Subcommittee on Communications and Technology). | September 7, 2017 |
| 115–54 ........ | Big Relief for Small Business: Legislation Reducing Regulatory Burdens on Small Manufacturers and Other Job Creators. (Subcommittee on Environment). | September 13, 2017 |
| 115–55 ........ | Modernizing FDA's Regulation of Over-the-Counter Drugs. (Subcommittee on Health) | September 13, 2017 |
| 115–56 ........ | Powering America: Defining Reliability in a Transforming Electricity Industry (Part 1). (Subcommittee on Energy). | September 14, 2017 |
| 115–57 ........ | Supporting Tomorrow's Health Providers: Examining Workforce Programs Under the Public Health Service Act. (Subcommittee on Health). | September 14, 2017 |
| 115–58 ........ | Powering America: Technology's Role in Empowering Consumers. (Subcommittee on Energy). | September 26, 2017 |
| 115–56 ........ | Powering America: Defining Reliability in a Transforming Electricity Industry (Part 2). (Subcommittee on Energy). | October 3, 2017 |
| 115–59 ........ | Oversight of the Equifax Data Breach: Answers for Consumers. (Subcommittee on Digital Commerce and Consumer Protection). | October 3, 2017 |
| 115–60 ........ | Examining Patient Access to Investigational Drugs. (Subcommittee on Health) ......... | October 3, 2017 |
| 115–61 ........ | Air Quality Impacts of Wildfires: Perspectives of Key Stakeholders. (Subcommittee on Environment). | October 4, 2017 |
| 115–62 ........ | Powering America: Consumer-Oriented Perspectives on Improving the Nation's Electricity Markets. (Subcommittee on Energy). | October 5, 2017 |
| 115–63 ........ | Examining How Covered Entities Utilize the 340B Drug Pricing Program. (Subcommittee on Oversight and Investigations). | October 11, 2017 |
| 115–64 ........ | Member Day: Testimony and Proposals on the Opioid Crisis. (Subcommittee on Health). | October 11, 2017 |
| 115–65 ........ | Department of Energy Missions and Management Priorities. (Subcommittee on Energy). | October 12, 2017 |
| 115–66 ........ | 21st Century Trade Barriers: Protectionist Cross Border Data Flow Policies Impact on U.S. Jobs. (Subcommittee on Digital Commerce and Consumer Protection). | October 12, 2017 |
| 115–67 ........ | Examining HHS's Public Health Preparedness for and Response to the 2017 Hurricane Season. (Subcommittee on Oversight and Investigations). | October 24, 2017 |
| 115–68 ........ | Federal Efforts to Combat the Opioid Crisis: A Status Update on CARA and Other Initiatives. (Full Committee). | October 25, 2017 |
| 115–69 ........ | Oversight of the Federal Communications Commission. (Subcommittee on Communications and Technology). | October 25, 2017 |
| 115–70 ........ | Securing Consumers' Credit Data in the Age of Digital Commerce. (Subcommittee on Digital Commerce and Consumer Protection). | November 1, 2017 |
| 115–71 ........ | Oversight of FirstNet—State Perspectives. (Subcommittee on Communications and Technology). | November 1, 2017 |
| 115–72 ........ | The 2017 Hurricane Season: A Review of Emergency Response and Energy Infrastructure Recovery Efforts. (Subcommittee on Energy). | November 2, 2017 |
| 115–73 ........ | Concerns over Federal Select Agent Program Oversight of Dangerous Pathogens. (Subcommittee on Oversight and Investigations). | November 2, 2017 |
| 115–74 ........ | Discussion Draft, Energy Star Reform Act of 2017 and H.R. 3477, Ceiling Fan Energy Conservation Harmonization Act. (Subcommittee on Energy). | November 7, 2017 |
| 115–75 ........ | MACRA and Alternative Payment Models: Developing Options for Value-based Care. (Subcommittee on Health). | November 8, 2017 |
| 115–76 ........ | Perspectives on Mixed Martial Arts. (Subcommittee on Digital Commerce and Consumer Protection). | November 9, 2017 |
| 115–77 ........ | H.R. ____, Farm Regulatory Certainty Act. (Subcommittee on Environment) ............ | November 9, 2017 |
| 115–78 ........ | Response and Recovery to Environmental Concerns from the 2017 Hurricane Season. (Subcommittee on Environment). | November 14, 2017 |
| 115–79 ........ | The Race to 5G and its Potential to Revolutionize American Competitiveness. (Subcommittee on Communications and Technology). | November 16, 2017 |
| 115–80 ........ | Algorithms: How Companies' Decisions About Data and Content Impact Consumers. (Subcommittee on Communications and Technology and Subcommittee on Digital Commerce and Consumer Protection). | November 29, 2017 |
| 115–81 ........ | Powering America: Examining the Role of Financial Trading in the Electricity Markets. (Subcommittee on Energy). | November 29, 2017 |
| 115–82 ........ | Implementing the 21st Century Cures Act: An Update from FDA and NIH. (Subcommittee on Health). | November 30, 2017 |
| 115–83 ........ | Identity Verification in a Post-Breach World. (Subcommittee on Oversight and Investigations). | November 30, 2017 |

275

PRINTED HEARINGS—Continued

| Serial No. | Hearing Title | Hearing Date(s) |
|---|---|---|
| 115–84 ........ | Latest Developments in Combating Online Sex Trafficking. (Subcommittee on Communications and Technology). | November 30, 2017 |
| 115–85 ........ | The Mission of the U.S. Environmental Protection Agency. (Subcommittee on Environment). | December 12, 2017 |
| 115–86 ........ | Update on the Corporate Average Fuel Economy Program (CAFE) and Greenhouse Gas Emissions Standards for Motor Vehicles. (Subcommittee on Digital Commerce and Consumer Protection and Subcommittee on Environment). | December 12, 2017 |
| 115–87 ........ | Examining Concerns of Patient Brokering and Addiction Treatment Fraud. (Subcommittee on Oversight and Investigations). | December 2, 2017 |
| 115–88 ........ | Examining the Drug Supply Chain. (Subcommittee on Health) ..................................... | December 13, 2017 |
| 115–89 ........ | The Impacts and Future of North American Energy Trade. (Subcommittee on Energy) | December 13, 2017 |
| 115–90 ........ | DOE Modernization: Advancing DOE's Mission for National, Economic, and Energy Security of the United States. (Subcommittee on Energy). | January 9, 2018 |
| 115–91 ........ | Disrupter Series: The Internet of Things, Manufacturing and Innovation. (Subcommittee on Digital Commerce and Consumer Protection). | January 18, 2018 |
| 115–92 ........ | Modernizing the Superfund Cleanup Program. (Subcommittee on Environment) ......... | January 18, 2018 |
| 115–93 ........ | Safety of the U.S. Food Supply: Continuing Concerns Over the Food and Drug Administration's Food-Recall Process. (Subcommittee on Oversight and Investigations). | January 19, 2018 |
| 115–94 ........ | Legislation Addressing LNG Exports and PURPA Modernization. (Subcommittee on Energy). | January 19, 2018 |
| 115–95 ........ | Closing the Digital Divide—Broadband Infrastructure Solutions. (Subcommittee on Communications and Technology). | January 30, 2018 |
| 115–96 ........ | Examining Implementation of the Compounding Quality Act. (Subcommittee on Health). | January 30, 2018 |
| 115–97 ........ | DOE Modernization: Advancing the Economic and National Security Benefits of America's Nuclear Infrastructure. (Subcommittee on Energy). | February 6, 2018 |
| 115–100 ...... | New Source Review Permitting Challenges for Manufacturing and Infrastructure. (Subcommittee on Environment). | February 14, 2018 |
| 115–98 ........ | Oversight of the National Highway Traffic Safety Administration. (Subcommittee on Digital Commerce and Consumer Protection). | February 14, 2018 |
| 115–99 ........ | Examining the Impact of Health Care Consolidation. (Subcommittee on Oversight and Investigations). | February 14, 2018 |
| 115–101 ...... | Oversight of the Department of Health and Human Services. (Subcommittee on Health). | February 15, 2018 |
| 115–102 ...... | State of the Nation's Energy Infrastructure. (Subcommittee on Energy) ...................... | February 27, 2018 |
| 115–103 ...... | Combating the Opioid Crisis: Helping Communities Balance Enforcement and Patient Safety. (Subcommittee on Health). | February 28, 2018 |
| 115–104 ...... | Oversight of the National Telecommunications and Information Administration. (Subcommittee on Communications and Technology). | March 6, 2018 |
| 115–105 ...... | Review of Emerging Tech's Impact on Retail Operations and Logistics. (Subcommittee on Digital Commerce and Consumer Protection). | March 7, 2018 |
| 115–106 ...... | The Future of Transportation Fuels and Vehicles. (Subcommittee on Environment) .... | March 7, 2018 |
| 115–107 ...... | Examining U.S. Public Health Preparedness for and Response Efforts to Seasonal Influenza. (Subcommittee on Oversight and Investigations). | March 8, 2018 |
| 115–108 ...... | DOE Modernization: Legislation Addressing Cybersecurity and Emergency Response. (Subcommittee on Energy). | March 14, 2018 |
| 115–109 ...... | Reauthorization of Animal Drug User Fees: ADUFA and AGDUFA. (Subcommittee on Health). | March 14, 2018 |
| 115–110 ...... | The Drug Enforcement Administration's Role in Combating the Opioid Epidemic. (Subcommittee on Oversight and Investigations). | March 20, 2018 |
| 115–111 ...... | Fiscal Year 2019 Nuclear Regulatory Commission Budget. (Subcommittee on Energy and Subcommittee on Environment). | March 20, 2018 |
| 115–112 ...... | Combating the Opioid Crisis—Prevention and Public Health Solutions. (Subcommittee on Health). | March 22, 2018 |
| 115–113 ...... | Legislative Hearing on Four Communications Bills. (Subcommittee on Communications and Technology). | March 22, 2018 |
| 115–114 ...... | Facebook: Transparency and Use of Consumer Data. (Full Committee) ...................... | April 11, 2018 |
| 115–115 ...... | Update on the Restoration of Puerto Rico's Electric Infrastructure. (Subcommittee on Oversight and Investigations). | February 11, 2018 |
| 115–116 ...... | Combating the Opioid Crisis: Improving the Ability of Medicare and Medicaid to Provide Care for Patients. (Subcommittee on Health). | April 11, 2018, April 12, 2018 |
| 115–117 ...... | The Fiscal Year 2019 Department of Energy Budget. (Subcommittee on Energy) ....... | April 12, 2018 |

276

PRINTED HEARINGS—Continued

| Serial No. | Hearing Title | Hearing Date(s) |
|---|---|---|
| 115–118 ...... | High Octane Fuels and High Efficiency Vehicles: Challenges and Opportunities. (Subcommittee on Environment). | April 13, 2018 |
| 115–119 ...... | Oversight of the Federal Energy Regulatory Commission and the FY2019 Budget. (Subcommittee on Energy). | April 17, 2018 |
| 115–120 ...... | From Core to Edge: Perspective on Internet Prioritization. (Subcommittee on Communications and Technology). | April 17, 2018 |
| 115–121 ...... | Oversight of the FY2019 EPA Budget. (Subcommittee on Environment) ...................... | April 26, 2018 |
| 115–122 ...... | Perspectives on Reform of the CFIUS Review Process. (Subcommittee on Digital Commerce and Consumer Protection). | April 26, 2018 |
| 115–123 ...... | Do Not Call: Combating Robocalls and Caller ID Spoofing. (Subcommittee on Digital Commerce and Consumer Protection). | April 27, 2018 |
| 115–124 ...... | Combating the Opioid Epidemic: Examining Concerns About Distribution and Diversion. (Subcommittee on Oversight and Investigations). | May 8, 2018 |
| 115–125 ...... | Sharing the Road—Policy Implications of Electric and Conventional Vehicles in the Years Ahead. (Subcommittee on Environment). | May 8, 2018 |
| 115–126 ...... | Improving the Coordination and Quality of Substance Use Disorder Treatment. (Subcommittee on Health). | May 8, 2018 |
| 115–127 ...... | Examining the State of Electric Transmission Infrastructure—Investment, Planning, Construction, and Alternatives. (Subcommittee on Energy). | May 10, 2018 |
| 115–128 ...... | Telecommunications, Global Competitiveness, and National Security. (Subcommittee on Communications and Technology). | May 16, 2018 |
| 115–129 ...... | Legislation Addressing New Source Review Permitting Reform. (Subcommittee on Environment). | May 16, 2018 |
| 115–130 ...... | Legislative Hearing on H.R. 2278, the Responsible Disposal Reauthorization Act of 2017, and H.R. 2389, to reauthorize the West Valley demonstration project and for other purposes. (Subcommittee on Environment). | May 18, 2018 |
| 115–131 ...... | Disrupter Series: Quantum Computing. (Subcommittee on Digital Commerce and Consumer Protection). | May 18, 2018 |
| 115–132 ...... | DOE Modernization: Legislation Addressing Development, Regulation, and Competitiveness of Advanced Nuclear Energy Technologies. (Subcommittee on Energy). | May 22, 2018 |
| 115–133 ...... | Internet of Things Legislation. (Subcommittee on Digital Commerce and Consumer Protection). | May 22, 2018 |
| 115–134 ...... | Examining the Olympic Community's Ability to Protect Athletes from Sexual Abuse. (Subcommittee on Oversight and Investigations). | May 23, 2018 |
| 115–135 ...... | Reauthorization of the Children's Hospital Graduate Medical Education Program. (Subcommittee on Health). | May 23, 2018 |
| 115–136 ...... | Examining the Reauthorization of the Pandemic and All-Hazards Preparedness Act. (Subcommittee on Health). | June 6, 2018 |
| 115–137 ...... | Improving the Hydropower Licensing Process. (Subcommittee on Energy) ................... | June 7, 2018 |
| 115–138 ...... | Understanding the Digital Advertising Ecosystem. (Subcommittee on Digital Commerce and Consumer Protection). | June 14, 2018 |
| 115–139 ...... | The Chemical Facilities Anti-Terrorism Standards Program (CFATS)—A Progress Report. (Subcommittee on Environment). | June 14, 2018 |
| 115–140 ...... | The State of U.S. Public Health Biopreparedness: Responding to Biological Attacks, Pandemics, and Emerging Infectious Disease Outbreaks. (Subcommittee on Oversight and Investigations). | June 15, 2018 |
| 115–141 ...... | The Benefits of Tax Reform on the Energy Sector and Consumers. (Subcommittee on Energy). | June 20, 2018 |
| 115–142 ...... | Examination of the GAO Audit Series of HHS Cybersecurity. (Subcommittee on Oversight and Investigations). | June 20, 2018 |
| 115–143 ...... | H.R. 2651, the Horseracing Integrity Act of 2017. (Subcommittee on Digital Commerce and Consumer Protection). | June 22, 2018 |
| 115–144 ...... | Advanced Biofuels Under the Renewable Fuel Standard: Current Status and Future Prospects. (Subcommittee on Environment). | June 22, 2018 |
| 115–145 ...... | The Shifting Geopolitics of Oil and Gas. (Subcommittee on Energy) .......................... | June 26, 2018 |
| 115–146 ...... | Discussion Draft: National Telecommunications and Information Administration Reauthorization Act of 2018. (Subcommittee on Communications and Technology). | June 26, 2018 |
| 115–147 ...... | Opportunities to Improve the 340B Drug Pricing Program. (Subcommittee on Health) | July 11, 2018 |
| 115–148 ...... | Protecting Customer Proprietary Network Information in the Internet Age. (Subcommittee on Communications and Technology). | July 11, 2018 |
| 115–149 ...... | Examining Drug-Impaired Driving. (Subcommittee on Digital Commerce and Consumer Protection). | July 11, 2018 |
| 115–150 ...... | Realizing the Benefits of Rural Broadband: Challenges and Solutions. (Subcommittee on Communications and Technology). | July 17, 2018 |

277

PRINTED HEARINGS—Continued

| Serial No. | Hearing Title | Hearing Date(s) |
|---|---|---|
| 115–151 ...... | Examining State Efforts to Improve Transparency of Health Care Costs for Consumers. (Subcommittee on Oversight and Investigations). | July 17, 2018 |
| 115–152 ...... | Powering America: The Role of Energy Storage in the Nation's Electricity System. (Subcommittee on Energy). | July 18, 2018 |
| 115–153 ...... | Oversight of the Federal Trade Commission. (Subcommittee on Digital Commerce and Consumer Protection). | July 18, 2018 |
| 115–154 ...... | 21st Century Cures Implementation: Examining Mental Health Initiatives. (Subcommittee on Health). | July 19, 2018 |
| 115–155 ...... | Examining Advertising and Marketing Practices within the Substance Use Treatment Industry. (Subcommittee on Oversight and Investigations). | July 24, 2018 |
| 115–156 ...... | DOE Modernization: Legislation to Authorize a Pilot Project to Commercialize the Strategic Petroleum Reserve. (Subcommittee on Energy). | July 24, 2018 |
| 115–157 ...... | 21st Century Cures Implementation: Updates from FDA and NIH. (Subcommittee on Health). | July 25, 2018 |
| 115–158 ...... | Background on Renewable Identification Numbers under the Renewable Fuel Standard. (Subcommittee on Environment). | July 25, 2018 |
| 115–159 ...... | Oversight of the Federal Communications Commission. (Subcommittee on Communications and Technology). | July 25, 2018 |
| 115–160 ...... | MACRA and MIPS: An Update on the Merit-based Incentive Payment System. (Subcommittee on Health). | July 26, 2018 |
| 115–161 ...... | Opportunities to Improve Health Care. (Subcommittee on Health) ...................................... | September 5, 2018 |
| 115–162 ...... | Twitter: Transparency and Accountability. (Full Committee) .......................................... | September 5, 2018 |
| 115–163 ...... | Perfluorinated Chemicals in the Environment: An Update on the Response to Contamination and Challenges Presented. (Subcommittee on Environment). | September 6, 2018 |
| 115–164 ...... | Examining Federal Efforts to Ensure Quality of Care and Resident Safety in Nursing Homes. (Subcommittee on Oversight and Investigation). | September 6, 2018 |
| 115–165 ...... | Air Quality Impacts of Wildfires: Mitigation and Management Strategies. (Subcommittee on Environment). | September 13, 2018 |
| 115–166 ...... | Examining Barriers to Expanding Innovative, Value-Based Care in Medicare. (Subcommittee on Health). | September 13, 2018 |
| 115–167 ...... | Built in America: Jobs and Growth in the Manufacturing Sector. (Subcommittee on Digital Commerce and Consumer Protection). | September 26, 2018 |
| 115–168 ...... | Solutions to Strengthen U.S. Public Safety Communications. (Subcommittee on Communications and Technology). | September 26, 2018 |
| 115–169 ...... | Better Data and Better Outcomes: Reducing Maternal Mortality in the U.S. (Subcommittee on Health). | September 27, 2018 |
| 115–170 ...... | DOE Modernization—The Office of Cybersecurity, Energy Security, and Emergency Response. (Subcommittee on Energy). | September 27, 2018 |
| 115–171 ...... | State of the Media Marketplace. (Subcommittee on Communications and Technology). | September 27, 2018 |
| 115–172 ...... | Discussion Draft: The 21st Century Transportation Fuels Act. (Subcommittee on Environment). | December 11, 2018 |
| 115–173 ...... | Implementing the 21st Century Cures Act: An Update from the Office of the National Coordinator. (Subcommittee on Health). | December 11, 2018 |
| 115–174 ...... | RAY BAUM'S Act: A Bipartisan Foundation for Bridging the Digital Divide. (Subcommittee on Communications and Technology). | December 11, 2018 |
| 115–175 ...... | Examining the Availability of SAFE Kits at Hospitals in the United States. (Subcommittee on Oversight and Investigations). | December 12, 2018 |
| 115–176 ...... | Public-Private Partnerships for Federal Energy Management. (Subcommittee on Energy). | December 12, 2018 |

## HEARINGS HELD PURSUANT TO CLAUSES 2(n), (o), OR (p) OF RULE XI

| Serial No. | Hearing Title | Hearing Date(s) |
|---|---|---|
| 115–1 ......... | Medicaid Oversight: Existing Problems and Ways to Strengthen the Program. (Subcommittee on Oversight and Investigations). | January 31, 2017 |
| 115–2 ......... | Strengthening Medicaid and Prioritizing the Most Vulnerable. (Subcommittee on Health). | February 1, 2017 |
| 115–3 ......... | The Electricity Sector's Efforts to Respond to Cybersecurity Threats. (Subcommittee on Energy). | February 1, 2017 |
| 115–4 ........... | Patient Relief from Collapsing Health Markets. (Subcommittee on Health) ................. | February 2, 2017 |

278

HEARINGS HELD PURSUANT TO CLAUSES 2(n), (o), OR (p) OF RULE XI—Continued

| Serial No. | Hearing Title | Hearing Date(s) |
|---|---|---|
| 115–10 ........ | Examining FDA's Generic Drug and Biosimilar User Fee Programs. (Subcommittee on Health). | March 2, 2017 |
| 115–18 ........ | Examining FDA's Prescription Drug User Fee Program. (Subcommittee on Health) ..... | March 22, 2017 |
| 115–20 ........ | Examining FDA's Medical Device User Fee Program. (Subcommittee on Health) ......... | March 28, 2017 |
| 115–24 ........ | Cybersecurity in the Heath Care Sector: Strengthening Public-Private Partnerships. (Subcommittee on Oversight and Investigations). | April 4, 2017 |
| 115–28 ........ | Examining Improvements to the Regulation of Medical Technologies. (Subcommittee on Health). | May 2, 2017 |
| 115–29 ........ | Combating Waste, Fraud, and Abuse in Medicaid's Personal Care Services Program. (Subcommittee on Oversight and Investigations). | May 2, 2017 |
| 115–31 ........ | Future of Emergency Alerting. (Subcommittee on Communications and Technology) .. | May 17, 2017 |
| 115–34 ........ | U.S. Public Health Response to the Zika Virus: Continuing Challenges. (Subcommittee on Oversight and Investigations). | May 23, 2017 |
| 115–37 ........ | Examining the Role of the Department of Health and Human Services in Health Care Cybersecurity. (Subcommittee on Oversight and Investigations). | June 8, 2017 |
| 115–38 ........ | Promoting Security in Wireless Technology. (Subcommittee on Communications and Technology). | June 13, 2017 |
| 115–41 ........ | Examining the Extension of Safety Net Health Programs. (Subcommittee on Health) | June 23, 2017 |
| 115–43 ........ | Examining Medical Product Manufacturer Communications. (Subcommittee on Health). | July 12, 2017 |
| 115–44 ........ | Combating the Opioid Crisis: Battles in the States. (Subcommittee on Oversight and Investigations). | July 12, 2017 |
| 115–46 ........ | Examining HRSA's Oversight of the 340B Drug Pricing Program. (Subcommittee on Oversight and Investigations). | July 18, 2017 |
| 115–47 ........ | Examining Bipartisan Legislation to Improve the Medicare Program. (Subcommittee on Health). | July 20, 2017 |
| 115–48 ........ | Oversight and Reauthorization of the Federal Communications Commission. (Subcommittee on Communications and Technology). | July 25, 2017 |
| 115–50 ........ | Examining the Extension of Special Needs Plans. (Subcommittee on Health) ............ | July 2, 2017 |
| 115–52 ........ | EPA Oversight: Unimplemented Inspector General and GAO Recommendations. (Subcommittee on Oversight and Investigations). | September 6, 2017 |
| 115–55 ........ | Modernizing FDA's Regulation of Over-the-Counter Drugs. (Subcommittee on Health) | September 13, 2017 |
| 115–63 ........ | Examining How Covered Entities Utilize the 340B Drug Pricing Program. (Subcommittee on Oversight and Investigations). | October 11, 2017 |
| 115–64 ........ | Member Day: Testimony and Proposals on the Opioid Crisis. (Subcommittee on Health). | October 11, 2017 |
| 115–65 ........ | Department of Energy Missions and Management Priorities. (Subcommittee on Energy). | October 12, 2017 |
| 115–67 ........ | Examining HHS's Public Health Preparedness for and Response to the 2017 Hurricane Season. (Subcommittee on Oversight and Investigations). | October 24, 2017 |
| 115–68 ........ | Federal Efforts to Combat the Opioid Crisis: A Status Update on CARA and Other Initiatives. (Full Committee). | October 25, 2017 |
| 115–69 ........ | Oversight of the Federal Communications Commission. (Subcommittee on Communications and Technology). | October 25, 2017 |
| 115–71 ........ | Oversight of FirstNet—State Perspectives. (Subcommittee on Communications and Technology). | November 1, 2017 |
| 115–72 ........ | The 2017 Hurricane Season: A Review of Emergency Response and Energy Infrastructure Recovery Efforts. (Subcommittee on Energy). | November 2, 2017 |
| 115–73 ........ | Concerns over Federal Select Agent Program Oversight of Dangerous Pathogens. (Subcommittee on Oversight and Investigations). | November 2, 2017 |
| 115–78 ........ | Response and Recovery to Environmental Concerns from the 2017 Hurricane Season. (Subcommittee on Environment). | November 14, 2017 |
| 115–88 ........ | Examining the Drug Supply Chain. (Subcommittee on Health) .................................... | December 13, 2017 |
| 115–90 ........ | DOE Modernization: Advancing DOE's Mission for National, Economic, and Energy Security of the United States. (Subcommittee on Energy). | January 9, 2018 |
| 115–93 ........ | Safety of the U.S. Food Supply: Continuing Concerns Over the Food and Drug Administration's Food-Recall Process. (Subcommittee on Oversight and Investigations). | January 19, 2018 |
| 115–97 ........ | DOE Modernization: Advancing the Economic and National Security Benefits of America's Nuclear Infrastructure. (Subcommittee on Energy). | February 6, 2018 |
| 115–98 ........ | Oversight of the National Highway Traffic Safety Administration. (Subcommittee on Digital Commerce and Consumer Protection). | February 14, 2018 |
| 115–101 ........ | Oversight of the Department of Health and Human Services. (Subcommittee on Health). | February 15, 2018 |

279

HEARINGS HELD PURSUANT TO CLAUSES 2(n), (o), OR (p) OF RULE XI—Continued

| Serial No. | Hearing Title | Hearing Date(s) |
|---|---|---|
| 115–103 ...... | Combating the Opioid Crisis: Helping Communities Balance Enforcement and Patient Safety. (Subcommittee on Health). | February 28, 201 |
| 115–104 ...... | Oversight of the National Telecommunications and Information Administration. (Subcommittee on Communications and Technology). | March 6, 2018 |
| 115–107 ...... | Examining U.S. Public Health Preparedness for and Response Efforts to Seasonal Influenza. (Subcommittee on Oversight and Investigations). | March 8, 2018 |
| 115–108 ...... | DOE Modernization: Legislation Addressing Cybersecurity and Emergency Response. (Subcommittee on Energy). | March 14, 2018 |
| 115–109 ...... | Reauthorization of Animal Drug User Fees: ADUFA and AGDUFA. (Subcommittee on Health). | March 14, 2018 |
| 115–110 ...... | The Drug Enforcement Administration's Role in Combating the Opioid Epidemic. (Subcommittee on Oversight and Investigations). | March 20, 2018 |
| 115–111 ...... | Fiscal Year 2019 Nuclear Regulatory Commission Budget. (Subcommittee on Energy and Subcommittee on Environment). | March 20, 2018 |
| 115–112 ...... | Combating the Opioid Crisis—Prevention and Public Health Solutions. (Subcommittee on Health). | March 21, 2018, March 22, 2018 |
| 115–115 ...... | Update on the Restoration of Puerto Rico's Electric Infrastructure. (Subcommittee on Oversight and Investigations). | February 11, 2018 |
| 115–116 ...... | Combating the Opioid Crisis: Improving the Ability of Medicare and Medicaid to Provide Care for Patients. (Subcommittee on Health). | April 11, 2018, April 12, 2018 |
| 115–117 ...... | The Fiscal Year 2019 Department of Energy Budget. (Subcommittee on Energy) ....... | April 12, 2018 |
| 115–119 ...... | Oversight of the Federal Energy Regulatory Commission and the FY2019 Budget. (Subcommittee on Energy). | April 17, 2018 |
| 115–120 ...... | From Core to Edge: Perspective on Internet Prioritization. (Subcommittee on Communications and Technology). | April 17, 2018 |
| 115–121 ...... | Oversight of the FY2019 EPA Budget. (Subcommittee on Environment) ...................... | April 26, 2018 |
| 115–124 ...... | Combating the Opioid Epidemic: Examining Concerns About Distribution and Diversion. (Subcommittee on Oversight and Investigations). | May 8, 2018 |
| 115–126 ...... | Improving the Coordination and Quality of Substance Use Disorder Treatment. (Subcommittee on Health). | May 8, 2018 |
| 115–128 ...... | Telecommunications, Global Competitiveness, and National Security. (Subcommittee on Communications and Technology). | May 16, 2018 |
| 115–132 ...... | DOE Modernization: Legislation Addressing Development, Regulation, and Competitiveness of Advanced Nuclear Energy Technologies. (Subcommittee on Energy). | May 22, 2018 |
| 115–134 ...... | Examining the Olympic Community's Ability to Protect Athletes from Sexual Abuse. (Subcommittee on Oversight and Investigations). | May 23, 2018 |
| 115–135 ...... | Reauthorization of the Children's Hospital Graduate Medical Education Program. (Subcommittee on Health). | May 23, 2018 |
| 115–136 ...... | Examining the Reauthorization of the Pandemic and All-Hazards Preparedness Act. (Subcommittee on Health). | June 6, 2018 |
| 115–139 ...... | The Chemical Facilities Anti-Terrorism Standards Program (CFATS)—A Progress Report. (Subcommittee on Environment). | June 14, 2018 |
| 115–140 ...... | The State of U.S. Public Health Biopreparedness: Responding to Biological Attacks, Pandemics, and Emerging Infectious Disease Outbreaks. (Subcommittee on Oversight and Investigations). | June 15, 2018 |
| 115–142 ...... | Examination of the GAO Audit Series of HHS Cybersecurity. (Subcommittee on Oversight and Investigations). | June 20, 2018 |
| 115–147 ...... | Opportunities to Improve the 340B Drug Pricing Program. (Subcommittee on Health) | July 11, 2018 |
| 115–151 ...... | Examining State Efforts to Improve Transparency of Health Care Costs for Consumers. (Subcommittee on Oversight and Investigations). | July 17, 2018 |
| 115–153 ...... | Oversight of the Federal Trade Commission. (Subcommittee on Digital Commerce and Consumer Protection). | July 18, 2018 |
| 115–155 ...... | Examining Advertising and Marketing Practices within the Substance Use Treatment Industry. (Subcommittee on Oversight and Investigations). | July 24, 2018 |
| 115–159 ...... | Oversight of the Federal Communications Commission. (Subcommittee on Communications and Technology). | July 25, 2018 |
| 115–160 ...... | MACRA and MIPS: An Update on the Merit-based Incentive Payment System. (Subcommittee on Health). | July 26, 2018 |
| 115–161 ...... | Opportunities to Improve Health Care. (Subcommittee on Health) ................................. | September 5, 2018 |
| 115–163 ...... | Perfluorinated Chemicals in the Environment: An Update on the Response to Contamination and Challenges Presented. (Subcommittee on Environment). | September 6, 2018 |
| 115–164 ...... | Examining Federal Efforts to Ensure Quality of Care and Resident Safety in Nursing Homes. (Subcommittee on Oversight and Investigation). | September 6, 2018 |

280

HEARINGS HELD PURSUANT TO CLAUSES 2(n), (o), OR (p) OF RULE XI—Continued

| Serial No. | Hearing Title | Hearing Date(s) |
|---|---|---|
| 115–166 ...... | Examining Barriers to Expanding Innovative, Value-Based Care in Medicare. (Subcommittee on Health). | September 13, 2018 |
| 115–170 ...... | DOE Modernization—The Office of Cybersecurity, Energy Security, and Emergency Response. (Subcommittee on Energy). | September 27, 2018 |

○