IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON, | Civil Action No. 3:17-01362 |
| Plaintiff, | |
| v. | |
| AMERISOURCEBERGEN DRUG CORPORATION, *et al.* | Civil Action No. 3:17-01665 |
| Defendants. | |
| CABELL COUNTY COMMISSION, | |
| Plaintiff, | |
| v. | |
| AMERISOURCEBERGEN DRUG CORPORATION, *et al.* | |
| Defendants. | |

**DEFENDANTS' MOTION *IN LIMINE* TO PRECLUDE IRRELEVANT EVIDENCE OF FIRST AMENDMENT IMMUNIZED SPEECH AND ASSOCIATION CONDUCT**

In their opening statement, Plaintiffs made perfectly clear that they intend to argue and present evidence purportedly establishing that Defendants acted in concert because they filed an amicus brief, sought a declaration of their rights in federal court, lobbied Congress regarding legislation, and conducted a public relations campaign in support of their lobbying efforts. Plaintiffs confirmed this intention by their designation of nearly five hours of testimony from two third-party witnesses, John Gray and Patrick Kelly, of the wholesale distributor trade group, HDA

(f/k/a HDMA).[1] The Constitution precludes the imposition of liability based on such First Amendment petitioning activity. Because evidence of Defendants' petitioning activity cannot be used to establish liability, and because such evidence is not relevant to any other issue in the case, it should be excluded under Federal Rule of Evidence 401.[2] A ruling on this issue now would be more efficient because otherwise Plaintiffs and, as a consequence, Defendants will be forced to devote significant time to irrelevant issues that cannot form a basis for liability.

Litigation, lobbying, and other efforts to influence government action are protected by the First Amendment. *See United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965); *Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *A Fisherman Best, Inc. v. Recreational Fishing All.*, 310 F.3d 183, 189-92 (4th Cir. 2002); *Smith v. Chestnut Ridge Storage*, LLC, 855 S.E.2d 332, 342-43 (W. Va. 2021). To secure and effectuate First Amendment rights, the long-established *Noerr–Pennington* doctrine prohibits the imposition of liability based on speech and association that petitions the government. *See Fisherman's Best*, 310 F.3d at 189; *Smith*, 855 S.E.2d at 342. This protection extends to litigation, legislative lobbying, and administrative lobbying, *see BE & K Constr. Co. v. Nat'l Labor Relations Bd.*, 536 U.S. 516, 524-25 (2002), as well as to "publicity campaign[s] designed to influence governmental action," *Noerr*, 365 U.S. at 140. Although the *Noerr-Pennington* doctrine arose in the context of antitrust

---

[1] Defendants have provided to Plaintiffs, and will submit to the Court, their objections (including on *Noerr-Pennington*/relevance grounds) to the deposition testimony of Mr. Gray, who is the former president of HDA, and Mr. Kelly, who is its Executive Vice President of Government Affairs. *See infra* nn.3-8.

[2] In the MDL, Defendants moved *in limine* to preclude evidence concerning lobbying and other protected petitioning activity. Although that motion was denied without prejudice, the MDL Court agreed that such evidence was *inadmissible* on the question of liability. *See* Ex. A (Oct. 15, 2019 MDL Tr.) at 16:7-14 (stating "[o]bviously, everyone is free to lobby state, local, federal officials" and "there's nothing wrong about that"); Ex. B (Jan. 3, 2020 MDL Order) at 52 (concluding that evidence concerning Defendants' protected First Amendment speech is admissible only for "other purposes" besides liability); *see also infra* pp.7-9 & n.11.

2

litigation, it "is not limited to federal antitrust actions, and may be invoked in actions under state and federal law." *Smith*, 855 S.E.2d at 342.

The doctrine applies with full force to concerted action directed toward influencing the government. *See Noerr*, 365 U.S. at 136 (doctrine applies to "associating together in an attempt to persuade the legislature or executive to take particular action"); *Fisherman's Best*, 310 F.3d at 189 ("competitors may join together to lobby government because antitrust violations cannot be predicated on attempts to influence the passage or enforcement of laws"). And that principle extends to the use of a trade association to petition the government. *See Merck-Medco Managed Care, Inc. v. Rite Aid Corp.*, 22 F. Supp. 2d 447, 472 (D. Md. 1998) (competitors "enjoy an absolute right to band together in trade associations to lobby the government"); *Horsemen's Benevolent & Protective Ass'n, Inc. v. Pa. Horse Racing Comm'n*, 530 F. Supp. 1098, 1109 (E.D. Pa. 1982) ("concerted action by trade associations for the purpose of influencing or promoting legislative, judicial or administrative action" is protected by the First Amendment); *see also Consol. Metal Prod., Inc. v. Am. Petroleum Inst.*, 846 F.2d 284, 293–94 (5th Cir. 1988) ("a trade association is not by its nature a 'walking conspiracy'").

The limited exception to *Noerr-Pennington* immunity in the litigation context is not applicable here. *Noerr-Pennington* immunity is lost only if the concerted action to petition the government—and, in particular, to petition the government by filing a lawsuit—is a "sham." *Prof. Real Estate Inv., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 57-58 (1993). Under the two-part test established by the Supreme Court, a party seeking to overcome the immunity afforded by the First Amendment must show that a lawsuit was both (1) "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits" and (2) subjectively intended to "interfere *directly*" with another party through the "use [of] the

3

governmental *process*—as opposed to the *outcome* of that process." *Id*. at 60-61 (emphasis in original). The sham exception thus has nothing to do with whether the communication contains untruths or otherwise employed "improper means," nor even whether the defendant's conduct is found to be "deceitful, underhanded, and morally wrong." *Balt. Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 398, 402 (4th Cir. 2001) ("In achieving an overall public benefit like the right to petition, any immunity will shield individual instances of conduct that might otherwise be actionable."). It applies only if the defendant does not genuinely seek the *result* it advocates. *See City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 380 (1991) (liability permitted only where lobbying is "'not genuinely aimed at procuring favorable government action' at all"); *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 791 F.2d 288, 292 (4th Cir. 1986) (exception applies only where defendant did "not truly s[eek] to influence a governmental decision").

Plaintiffs cannot establish that the "sham" exception applies here. They do not claim that Defendants did not truly seek the alleged object of HDA's lobbying—modifications to DEA's injunctive authority. On the contrary, Plaintiffs complain that the lobbying efforts succeeded. Nor do Plaintiffs claim that Cardinal Health did not really want the declaratory relief for which it sued; rather, they argue that it was improper to "fight back" (5/3 Tr. at 43:3) when DEA served an inspection warrant for a Florida facility while still refusing to provide guidance regarding suspicious-order reporting. And it would make no sense to claim that Defendants did not genuinely seek judicial vindication of the legal position argued in an amicus brief filed by their trade association; Plaintiffs say, after all, that Defendants continue to assert that very position as part of their defense in this case.

For these reasons, Plaintiffs may not introduce evidence of petitioning activity, including evidence that:

4

- Cardinal Health filed a declaratory judgment action against the government, (5/3 Tr. at 42:22-25);

- HDA filed an amicus brief in that litigation (5/3 Tr. at 43:5-15) and other litigation involving distributors[3];

- Distributors allegedly "act[ed] in concert asserting their defenses and fighting back," (5/3 Tr. at 43:20-24)[4];

- HDA, in litigation, allegedly "took a position fighting the DEA," which position was "validated and endorsed by AmerisourceBergen, McKesson and Cardinal Health," (5/3 Tr. at 44:19-22)[5];

- HDA members allegedly "plot[ted] a course" that included "fund[ing] and direct[ing] a media campaign beginning in 2012," (5/3 Tr. at 47:4-13)[6];

- HDA authored a "crisis playbook" that allegedly discussed "opportunit[ies] for HDMA to proactively push its message of mis-directed DEA enforcement with national media," (5/3 Tr. at 47:23-48:10)[7]; and

- HDA advocated for "the passage of a Marino bill," which allegedly took "away the ability of the DEA to revoke licenses," (5/3 Tr. at 49:19-25).[8]

---

[3] *See also* Ex. C, Gray Dep. Tr. at 269:11-15 ("So you're asking the executive committee to review the Cardinal amicus brief that the HDA has paid to have written, and you're saying take a look at it and see if this is okay for us to file.").

[4] *See also* Ex. C, Gray Dep. Tr. at 199:20-200:2 ("McKesson, Cardinal, AmerisourceBergen, you folks wrote this amicus brief because it was your intention and it was your expectation that the Court in Masters was going to stop the enforcement actions by the DEA. That was your expectation, was it not, sir?"); *supra* n.3.

[5] *See also* Ex. C, Gray Dep. Tr. at 202:3-14 ("[It] was the intention of the HDA all along, starting with the PR program back in 2012, [to] stymie enforcement actions by the DEA. And you finally thought you had with the *Masters* case, did you not?).

[6] *See also* Ex. C, Gray Dep. Tr. at 80:11-17 ("[T]he public relations message to Congress, to the Senate, to state legislatures, to governors, to the media, was that the distributors were committed … to stopping diversion and abuse and addiction ….?); *see id.* at 257:1-5 ("And when you told Congress that [only DEA has the complete picture of all distribution], sir, that was simply not true?"); *supra* n.5.

[7] *See also* Ex. C, Gray Dep. Tr. at 171:1-7 ("Do you remember when we looked back and we talked about it earlier, we talked about the Crisis Playbook, where your PR firm said, hey, if anybody ever asks, make sure you tell them that the distributors always put safety over money? Do you remember that, sir, we talked about that?").

[8] *See also* Ex. C, Gray Dep. Tr. at 183:18-22 ("Do you remember interviewing different lobbyist organizations and trying to find the lobbyist group that had the strongest relationship with

Liability cannot be based on these activities because they fall within the heartland of the speech and association that *Noerr-Pennington* protects. *See, e.g.*, *Balt. Scrap*, 237 F.3d at 401 (amicus brief subject to *Noerr-Pennington*); *Noerr*, 365 U.S. at 129 (publicity campaign designed to "foster the adoption and retention of laws and law enforcement practices" favorable to the defendants could not give rise to liability); *Fisherman's Best*, 310 F.3d at 189-94 (efforts to lobby city officials protected). And because liability may not be imposed based on these alleged activities, the evidence proffered by Plaintiffs is irrelevant. *See* Fed. R. Evid. 401.[9]

Plaintiffs deny that they seek to introduce evidence of Defendants' petitioning activity in order to establish liability, but that denial is belied by their counsel's own opening statement. Plaintiffs' avowed purpose in introducing evidence of Defendants' (and their trade association's) lobbying and other activities is to establish a purported "conspiracy" among Defendants.[10]

---

    Congressman Marino?"); Ex. D, Kelly Dep. Tr. at 224:19-225:3 ("[A]s part of your lobbying efforts … you would have your staff members meet with lawmakers' staff members and that's when you would discuss your views and provide potential questions?").

[9] Setting aside the evidentiary issue that is the focus of this motion, Plaintiffs' attempt to establish a conspiracy based on this conduct fails because the conduct is entirely lawful. "[A] civil conspiracy is a combination of two or more persons by concerted action to accomplish an *unlawful purpose* or to accomplish some purpose, not in itself unlawful, by *unlawful means*." *Dixon v. American Indus. Leasing Co.*, 253 S.E.2d 150 (W.V. 1979) (emphasis added); *see also O'Dell v. Stegall*, 703 S.E.2d 561, 596 (W.V. 2010) ("[A] civil conspiracy must be based on some underlying tort or wrong."). Plaintiffs have no evidence of coordination among Defendants for unlawful purposes (or using unlawful means)—certainly, none of the petitioning conduct referenced in Plaintiffs' opening was wrongful.

[10] *See* 5/3 Tr. at 31:19-22 ("[T]his is HDA. This is the documents from their trade group where we're going to establish at various times this worked in concert with each other."); *see also* Dkt. No. 1084 [Pls.' Mem. in Opp. to McKesson Corporation's Motion to Dismiss on Derivative Sovereign Immunity Grounds], at 14-15 n.3 (asserting that Mr. Gray's deposition testimony is "evidence [that] supports [Plaintiffs'] conspiracy allegations"); Ex. E, MDL Dkt. No. 3024, at 1-2 & n.2 (asserting that Plaintiffs intend to invoke against Defendants purported doctrine "under which *liability* for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrator(s)" (emphasis added)).

Accordingly, Plaintiffs seek to establish concerted action—and thus impose joint and several liability—based on Defendants' protected speech and association. That is precisely what the *Noerr-Pennington* doctrine prohibits.

Plaintiffs' disapproval of the policies and legal positions for which Defendants (and non-party HDA) have advocated does not alter this conclusion. *See, e.g.*, *Hamilton v. Accu-tek*, 935 F. Supp. 1307, 1321 (E.D.N.Y. 1996) (concluding that lobbying federal officials to prevent handgun regulations cannot form basis of a tort claim in action against handgun manufacturers); *McAlonan v. Tracy,* 2011 WL 6125, at *13 (N.J. App. Div. Mar. 16, 2010) (holding that car manufacturer's objections to proposed NHTSA crash-test regulations were "exempt from liability under the *Noerr-Pennington* doctrine"); *Senart v. Mobay Chem. Corp.*, 597 F. Supp. 502, 506 (D. Minn. 1984) (dismissing claim that was premised on defendant chemical manufacturers' efforts to persuade OSHA to reject proposal for more stringent exposure standards); *Lampley v. Bridgestone Firestone, Inc.*, 1992 WL 12666661, at *1-2 (M.D. Ala. Mar. 31, 1992) (dismissing civil conspiracy claim based on tire companies' alleged conspiracy "to force passage of OSHA regulations" favorable to them). And the fact that a litigation position was unsuccessful does not, standing alone, make the underlying petitioning activity a "sham" under the Supreme Court's test. *Prof. Real Est. Invs., Inc.*, 508 U.S. at 67 ("an objectively reasonable effort to litigate cannot be sham regardless of subjective intent").

Plaintiffs' suggestion that evidence of Defendants' (and non-party HDA's) litigation and lobbying activities are relevant to show the "purpose and character" of Defendants' "wrongful activities"—or their "motive and intent"—also does not hang together. To be sure, evidence of petitioning activity may be admitted if it is relevant to some issue *other than* the defendants' liability. *See, e.g.*, *Pennington*, 381 U.S. at 670 n.3 (noting that evidence of petitioning activity

7

might be admissible "if it tends reasonably to show the purpose and character of the particular transactions under scrutiny").[11] But it is not enough for Plaintiffs merely to parrot language from other cases recognizing that evidence of petitioning activity may be relevant to issues like intent depending on the particular facts of those cases. Instead, it is incumbent on Plaintiffs to identify a permissible purpose for introducing evidence of a non-party trade association's filing of amicus briefs and lobbying in this case—which they have not done and could not do. Even assuming Plaintiffs are right that Defendants intended to weaken DEA's enforcement authority through First Amendment protected litigation and lobbying (they are not), that intent is not relevant to the question whether there is a public nuisance in Cabell/Huntington for which Defendants may be held legally responsible.

There are ample reasons why Judge Polster's *Noerr-Pennington* ruling is not relevant to the outcome of this motion. To begin with, it does not really address the issue here. In the context of the MDL Track 1 trial—which included conspiracy and RICO causes of action—Judge Polster ruled that evidence of petitioning activity was inadmissible to establish liability, but could be admissible to show "purpose, character, motive, or intent." Ex. B (Jan. 3, 2020 MDL Order) at 52. On that basis, he denied defendants' motion *in limine* without prejudice, and expressly deferred until trial rulings on the ultimate admissibility of specific evidence.

Here, there is no RICO claim. Moreover, Plaintiffs have made no showing that

---

[11] Evidence of protected petitioning activity, however, may be introduced only to show the "purpose" or "character" of conduct *that is not itself protected by the First Amendment*. *See, e.g., City of Cleveland v. Cleveland Elec. Illuminating Co.*, 734 F.2d 1157, 1163 (6th Cir. 1984) (rejecting plaintiff's argument that it could introduce petitioning-related evidence to show the "'purpose' or the 'character' of [defendant's] action" because the underlying conduct itself was shielded); *see also Snyder v. Phelps*, 562 U.S. 443, 460 (2011) (holding that where allegedly tortious conduct is protected by the First Amendment, a plaintiff "cannot recover for civil conspiracy based on those torts").

Defendants' (or HDA's) petitioning activity is relevant to any issue of "purpose, character, motive, or intent." Rather, Plaintiffs avowedly seek to use evidence of Defendants' litigation, lobbying, public relations campaigns, and other efforts to influence government action, in order to establish liability. Given the specific evidence Plaintiffs intend to introduce—and their specific purpose for doing so—exclusion is required even under the terms of Judge Polster's order. *See id.* In addition, Defendants respectfully submit that Judge Polster's ruling was erroneous. It was not accompanied by case citations or significant reasoning and is not consistent with the Fourth Circuit case law discussed above.

Furthermore, Judge Polster's ruling does not address the practical ramifications for this trial if the evidence of Defendants' petitioning activity is admitted (or if the Court defers ruling on that admissibility question). If Plaintiffs are permitted to introduce evidence of Defendants' filing of an amicus brief, or participation in lobbying or legislative activities, the consequence will be a lengthy detour into an entirely irrelevant subject area that ultimately cannot serve as a basis for a liability finding as a matter of law. Defendants will have no choice but to present responsive evidence (even provisionally), which will surely consume meaningful time at trial. In a trial of this length and complexity, Defendants respectfully submit that it would be vastly more efficient to exclude this evidence at the outset so that valuable trial time is not diverted to a subject that cannot form a basis for liability under *Noerr-Pennington*. *See* Fed. R. Evid. 403.

Dated:  May 9, 2021

Respectfully submitted,

***McKesson Corporation***

By Counsel:

*/s/ Timothy C. Hester*
Timothy C. Hester
Christian J. Pistilli
Laura Flahive Wu

9

Andrew P. Stanner
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
lflahivewu@cov.com
cpistilli@cov.com
astanner@cov.com

*/s/ Paul W. Schmidt*
Paul W. Schmidt
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
(212) 841-1000
pschmidt@cov.com

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

***AmerisourceBergen Drug Corporation***

By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

10

/s/ *Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
Joseph J. Mahady
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com
jmahady@reedsmith.com

**Cardinal Health, Inc.**

By Counsel:

/s/ *Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
Jennifer G. Wicht
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
emainigi@wc.com
lheard@wc.com
ahardin@wc.com
jwicht@wc.com

Michael W. Carey (WVSB #635)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
David R. Pogue (WVSB #10806)
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105

mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
rfranks@cdkrlaw.com
drpogue@cdkrlaw.com

12

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 9th day of May, 2021, the foregoing Motion was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

<u>/s/ Timothy C. Hester</u>
Timothy C. Hester