# EXHIBIT C

Highly Confidential - Subject to Further Confidentiality Review

```
 1           UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
 2
 3   THE CITY OF HUNTINGTON,
 4            Plaintiff,
                               Civil Action No.
 5   v.                        3:17-01362
 6   AMERISOURCEBERGEN DRUG
     CORPORATION, et al.,
 7
              Defendants.
 8
     --------------------------------x
 9   CABELL COUNTY COMMISSION,
10            Plaintiff,
                               Civil Action No.
11   v.                        3:17-01665
12   AMERISOURCEBERGEN DRUG
     CORPORATION, et al.,
13
              Defendants.
14   --------------------------------x
15     CROSS-NOTICED CAPTIONS ON FOLLOWING PAGES
16
17            Thursday, July 30, 2020
18     HIGHLY CONFIDENTIAL - SUBJECT TO FURTHER
               CONFIDENTIALITY REVIEW
19
20        Remote Oral/Videotaped Deposition of
     JOHN M. GRAY, held at the location of the
21   witness, commencing at 9:38 a.m. EDT on the
     above date, before Michael E. Miller,
22   Certified Court Reporter, Registered
     Diplomate Reporter, Certified Realtime
23   Reporter and Notary Public.
24          GOLKOW LITIGATION SERVICES
        877.370.3377 ph | 917.591.5672 fax
25             deps@golkow.com
```

Highly Confidential - Subject to Further Confidentiality Review

```
 1    STATE OF RHODE ISLAND      )    SUPERIOR COURT
      PROVIDENCE, SC             )
 2                               )    C.A. NO.
      STATE OF RHODE ISLAND by   )    PC-2018-4555
 3    and through PETER          )
      NERONHA, ATTORNEY          )
 4    GENERAL, Plaintiff,        )
                                 )
 5    v.                         )
                                 )
 6    PURDUE PHARMA, LP, et      )
      al, Defendants.            )
 7                               )
      ------------------------
 8
 9    --------------------------------------------------
10           IN THE CIRCUIT COURT FOR
             KANAWHA COUNTY, WEST VIRGINIA
11
      IN RE: OPIOID LITIGATION )    Civil Action No.
12                             )    19-C9000
                               )
13    ------------------------
14    --------------------------------------------------
15
16
17
18
19
20
21
22
23
24
25
```

Highly Confidential - Subject to Further Confidentiality Review

1       Q.      How many times have you

2    testified in front of Congress on behalf of

3    the HDMA?

4       A.      How many times did I testify

5    when?

6       Q.      In your career, how many times

7    have you presented to Congress, sir, or the

8    Senate?

9       A.      Probably 10 or 12 times at

10   least.

11      Q.      Sir, the message, the public

12   relations message to Congress, to the Senate,

13   to state legislatures, to governors, to the

14   media, was that the distributors were

15   committed, were committed to stopping

16   diversion and abuse and addiction.  That was

17   the message, true?

18      A.      I have to go back and look at

19   all those.  It's been many years since I

20   looked through all those proposals.  And most

21   of these proposal items were never used.

22      Q.      I'm not talking about the --

23   sir, I'm not talking about proposals.  I'm

24   talking the actual message at the end of the

25   day, the message that you're delivering to

Highly Confidential - Subject to Further Confidentiality Review

1          Q.    Do you remember when we looked

2     back and we talked about it earlier, we

3     talked about the Crisis Playbook, where your

4     PR firm said, hey, if anybody ever asks, make

5     sure you tell them that the distributors

6     always put safety over money?  Do you

7     remember that, sir, we talked about that?

8          A.    No, not really.

9          Q.    Always put safety over money.

10              So what we have here -- and

11    again, you can correct me if I'm wrong, but

12    the RAND study that was going to look for

13    answers and save lives never went forward,

14    the partnership study that was going to look

15    for answers to try to save lives was never

16    funded, and now the task force summit in

17    West Virginia is canceled the day before it's

18    supposed to get off the ground because you're

19    worried about a lawsuit?

20          A.    No.

21              MR. WEINSTEIN:  Wait for the

22          question, John.  Wait for a question.

23              THE WITNESS:  Yeah.

24    BY MR. KENNEDY:

25          Q.    Let me ask you, sir.  Is

Highly Confidential - Subject to Further Confidentiality Review

1      A.      Yep.

2      Q.      The HDMA played a significant

3   role in getting that legislation passed.

4   Would that be true?

5              MR. WEINSTEIN:  Objection to

6       form.

7      A.      True.

8   BY MR. KENNEDY:

9      Q.      Yes, sir?

10     A.      I said true.

11     Q.      All right.  I'm sorry.  In

12  fact, you folks hired a third-party outside

13  lobbyist group to work directly on that

14  legislation, did you not?

15     A.      Well, we have a number of them.

16  I don't know if they're hired just for that,

17  but they might have worked on it, I'm sure.

18     Q.      Do you remember interviewing

19  different lobbyist organizations and trying

20  to find the lobbyist group that had the

21  strongest relationship with Congressman

22  Marino?

23     A.      Well, I didn't personally.  My

24  staff may have.

25     Q.      When originally drafted, the

Highly Confidential - Subject to Further Confidentiality Review

1    BY MR. KENNEDY:

2         Q.    Did you realize that, sir?

3         A.    I can't say I did or I didn't.

4         Q.    Nine years before you wrote

5    this brief, the DEA had a personal meeting

6    with you folks and said we can't do the job

7    ourselves.  There's too many pharmacies.

8    They told you that, did they not?

9              MR. WEINSTEIN:  Objection to

10        form.

11        A.    Again, I wasn't in the room

12   when these comments were made, so I don't

13   know if this is exactly how they pressed it.

14   The only thing I heard was that they expected

15   truck drivers, which are commercial truck

16   drivers, to sit in parking lots and watch

17   customers going into a pharmacy.  That's the

18   only thing I heard.

19   BY MR. KENNEDY:

20        Q.    Sir, you folks -- you, your

21   executive committee, your board, McKesson,

22   Cardinal, AmerisourceBergen, you folks wrote

23   this amicus brief because it was your

24   intention and it was your expectation that

25   the Court in Masters was going to stop the

Highly Confidential - Subject to Further Confidentiality Review

1    enforcement actions by the DEA.  That was

2    your expectation, was it not, sir?

3              MR. WEINSTEIN:  Objection to

4         form.

5         A.    No, the expectation was --

6    yeah, the expectation was on a particular

7    point of administrative law, which I couldn't

8    get into with you right now, but I do

9    remember at the time it was a specific issue,

10   and that's what it was all about.  It had

11   nothing to do with Masters, per se.  It had

12   nothing to do with even the DEA.  It was an

13   interpretation of administrative law.

14   BY MR. KENNEDY:

15        Q.    Look at Exhibit 55.

16              (Whereupon, Deposition Exhibit

17        Gray-55, E-mail(s), HDA_MDL_000088021-

18        HDA_MDL_000088025, was marked for

19        identification.)

20        A.    55.  Okay.

21   BY MR. KENNEDY:

22        Q.    This is 55.  You see the second

23   e-mail down where -- this is the e-mail from

24   you to Pat Kelly.

25        A.    Uh-huh.  Yep.

Highly Confidential - Subject to Further Confidentiality Review

1                    That's the Masters case, right?

2          A.      Correct.

3          Q.      Then you state:  I think the

4    Masters case will stymie the DEA in pursuing

5    much enforcement since that outcome will

6    really dictate how the DEA can enforce.

7                    Is that what you stated, sir?

8          A.      Right.  That's what it says.

9          Q.      And that was the intention of

10   the HDA all along, starting with the PR

11   program back in 2012, let's stymie

12   enforcement actions by the DEA.  And you

13   finally thought you had with the Masters

14   case, did you not?

15                  MR. WEINSTEIN:  Objection to

16        form.

17         A.      That's your -- oh, I'm sorry.

18   That's your opinion, your interpretation.

19   It's not ours.

20   BY MR. KENNEDY:

21         Q.      Those are your words.

22                  MR. WEINSTEIN:  Objection to

23        form.

24   BY MR. KENNEDY:

25         Q.      Stymied.  Correct, sir?

```
 1         Q.     You say:  Only the DEA has the
 2    complete picture.  Correct?
 3         A.     That's correct.
 4         Q.     And when you told Congress
 5    that, sir, that was simply not true.
 6              MR. WEINSTEIN:  Objection to
 7         form.
 8    BY MR. KENNEDY:
 9         Q.     Right?
10              MR. WEINSTEIN:  Objection to
11         form.
12    BY MR. KENNEDY:
13         Q.     That was not true?
14              MR. WEINSTEIN:  Objection to
15         form.
16         A.     No, we did not know that to be
17    not true.
18    BY MR. KENNEDY:
19         Q.     Your talking points, look at
20    Exhibit 29.
21              (Whereupon, Deposition Exhibit
22         Gray-29, 10/17/16 HDA Talking Points
23         on Resources on Prescription Drug
24         Abuse, HDA_MDL_000032191 -
25         HDA_MDL_000032203, was marked for
```

1    to review the amicus brief before it gets

2    filed with the Court.

3              Do you see that?

4        A.    I see it.

5        Q.    And at the bottom it says:

6    Please let me know as soon as possible

7    whether or not you support filing this brief.

8              Do you see that?  Maybe -- it's

9    the final paragraph.  You see that?

10       A.    Yeah, got it.

11       Q.    So you're asking the executive

12   committee to review the Cardinal amicus brief

13   that the HDA has paid to have written, and

14   you're saying take a look at it and see if

15   this is okay for us to file.

16             So --

17             MS. WADHWANI:  Objection to

18        form.

19   BY MR. KENNEDY:

20       Q.    -- go back to the first page,

21   go back -- go back to the first page now.

22       A.    Right.

23       Q.    And you'll see now the response

24   from Dale Smith of HD Smith, starts with --

25   it's March 5, 2012, Dale Smith is writing you

Highly Confidential - Subject to Further Confidentiality Review

```
 1                    CERTIFICATE
 2            I, MICHAEL E. MILLER, Fellow of
      the Academy of Professional Reporters,
 3    Registered Diplomate Reporter, Certified
      Realtime Reporter, Certified Court Reporter
 4    and Notary Public, do hereby certify that
      prior to the commencement of the examination,
 5    JOHN M. GRAY was duly sworn by me to testify
      to the truth, the whole truth and nothing but
 6    the truth.
 7            I DO FURTHER CERTIFY that the
      foregoing is a verbatim transcript of the
 8    testimony as taken stenographically by and
      before me at the time, place and on the date
 9    hereinbefore set forth, to the best of my
      ability.
10
              I DO FURTHER CERTIFY that pursuant
11    to FRCP Rule 30, signature of the witness was
      not requested by the witness or other party
12    before the conclusion of the deposition.
13            I DO FURTHER CERTIFY that I am
      neither a relative nor employee nor attorney
14    nor counsel of any of the parties to this
      action, and that I am neither a relative nor
15    employee of such attorney or counsel, and
      that I am not financially interested in the
16    action.
17
18    _____
      MICHAEL E. MILLER, FAPR, RDR, CRR
19    Fellow of the Academy of Professional Reporters
      NCRA Registered Diplomate Reporter
20    NCRA Certified Realtime Reporter
      Certified Court Reporter
21
      Notary Public
22    My Commission Expires:  7/9/2024
23    Dated: July 31, 2020
24
25
```