**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

| | |
|---|---|
| THE CITY OF HUNTINGTON, | |
| Plaintiff, | |
| v. | Civil Action No. 3:17-01362 |
| AMERISOURCEBERGEN DRUG CORPORATION, *et al.* | |
| Defendants. | |
| _____ | |
| CABELL COUNTY COMMISSION, | |
| Plaintiff, | |
| v. | Civil Action No. 3:17-01665 |
| AMERISOURCEBERGEN DRUG CORPORATION, *et al.* | |
| Defendants. | |

**DEFENDANTS' BENCH BRIEF REGARDING THE INADMISSIBILITY OF
DR. CRAIG J. MCCANN'S DEMONSTRATIVE CHARTS**

## I.   INTRODUCTION

The question before the Court is specific and narrow.  It is not whether Dr. Craig McCann may provide expert ***testimony*** regarding his analysis of the ARCOS data or the reliability or weight of that testimony.  Instead, the question is whether the charts and other material depicting his analysis are separately and independently admissible as ***documentary evidence***.  The answer to ***that*** question is ***no***.  The question also is not whether McCann's ***cleaned and processed*** ARCOS ***data*** are admissible as evidence under FRE 1006.  Instead, it is whether the charts depicting Dr. McCann's expert ***analysis*** of that data are admissible under FRE 1006.  The answer to ***that*** question, too, is ***no***.

While experts may testify about their analyses and opinions, they cannot create documentary evidence that is separately and independently admissible.  Yet that is exactly what Plaintiffs seek to admit:  charts that Dr. McCann created depicting his analysis that supplemented, filtered, and analyzed the ARCOS data.  Contrary to Plaintiffs' assertion, those charts are not ***summaries*** of voluminous data.

Two settled principles of law preclude the admission of Dr. McCann's charts as Rule 1006 summaries.  *First*, under Rule 1006, "[c]harts and summaries are . . . ***inadmissible*** if they contain information not present in the original or duplicate materials on which they are based."  *Universal Furniture Int'l, Inc. v. Collezione Europa, USA, Inc.*, 599 F. Supp. 2d 648, 656 (M.D.N.C. 2009) (quoting *United States v. Drougas*, 748 F.2d 8, 25 (1st Cir. 1984)), *aff'd,* 618 F.3d 417 (4th Cir. 2010) (emphasis added) (citation omitted).  *Second*, Rule 1006 summaries must be comprised of "***objectively accurate summarization***[*s*] of the underlying documents, not a skewed selection of ***some*** of the documents to further the proponent's theory of the case."  *United States v. Oloyede*, 933 F.3d 302, 311 (4th Cir. 2019) (emphasis in original).  After nearly thirteen hours of testimony

from Dr. McCann, it is clear that the charts he sponsored cannot meet these standards and do not qualify as Rule 1006 summaries.

The materials Plaintiffs seek to admit as evidence do not "summarize" voluminous ARCOS data.  Instead, Dr. McCann supplemented the ARCOS data with other data and metrics (*e.g.*, shipments per capita and MME) from other sources (*e.g.*, the Census Bureau and the Centers for Disease Control and Prevention) that are not part of the ARCOS database.  Further, Dr. McCann did not simply take the data as it appears in ARCOS and summarize it.  Instead, by his own admission, he made relevancy determinations and "adjusted" the data—*i.e.*, by excluding certain data fields and entries that he considered erroneous or irrelevant.  Thus, Dr. McCann's summaries are not admissible under Rule 1006 because they "contain information not present in the original . . . materials on which they are based," *Universal Furniture*, 599 F. Supp. 2d at 656 (quoting *Drougas*, 748 F.2d at 25), and are "embellished by or annotated with the conclusions of or inferences drawn by the proponent," *Krakauer v. Dish Network L.L.C.*, 2016 WL 6775859, at *5 (M.D.N.C. Sept. 19, 2016) (quoting *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998)).

Moreover, the material Plaintiffs proffer does exactly what the case law construing Rule 1006 prohibits:  it presents a skewed selection of data from pharmacies (the majority of which lack any geographic proximity or "demonstrable [evidentiary] nexus," to the City of Huntington or Cabell County, Dkt. No. 1297), that were selected by Plaintiffs' counsel **not** to be representative of Defendants' distribution activity, but instead to serve as "illustrative examples" of Defendants' alleged "bad behavior."  5/12/21 Trial Tr. at 55:20–56:25; *id.* at 18:16–20 ("I don't think they were intended to reflect average pharmacies").  Fourth Circuit case law could not be more clear:  Rule 1006 does not authorize the admission of selectively-excised charts that are not "objectively accurate summarization[s] of the underlying documents."  *Oloyede*, 933 F.3d at 311.

Plaintiffs *could* have created materials that fit with the scope of Rule 1006 and align with its purpose—that is, documents that summarized the ARCOS data. They did not. Instead, they skipped over the Rule 1006 requirement that a summary must "prove the content" of a voluminous database and proffered charts and graphs that reflect Dr. McCann's expert analyses of the ARCOS database and his adjustments to that data (which selectively pulled pieces from the data rather than objectively summarizing it). Dr. McCann in effect presented demonstratives derived *in part* from ARCOS that illustrated his conclusions, not admissible Rule 1006 summaries of the ARCOS data.[1]

## II.   BACKGROUND

Dr. McCann "process[ed]" and "correct[ed]" the DEA-produced ARCOS data, a procedure that resulted in the exclusion of 61,085,141 transactions and correction of 285,891 transactions. 5/11/21 Trial Tr. at 94:17–23; 5/12/21 Trial Tr. at 41:3–20; *see also City of Huntington v. AmerisourceBergen Drug Corp.*, 2021 WL 1596360, at *1 (S.D. W. Va. Apr. 22, 2021) (Faber, J.) (noting that Dr. McCann "adjusted the raw ARCOS data in several ways" and then "used his processed data" to populate the purported Rule 1006 materials).[2]

Once his adjustments were complete, Dr. McCann made relevancy determinations. 5/10/21 Trial Tr. at 18:5–9 ("Some of that data was relevant to—was—touched on the issues in this case. Some of it did not."). He narrowed his data "down to the subset of that data that [Plaintiffs] were interested in" and selected *subsets* of the data to present to the Court—*e.g.*,

---

[1] Excluding Dr. McCann's summaries of his processed and augmented ARCOS data would not keep ARCOS data entirely out of the case. The parties have stipulated that the raw ARCOS data produced by the DEA "shall be deemed authentic for the purposes of this litigation." Dkt. No. 1332, at 2. Plaintiffs are free to use the DEA-produced ARCOS data to examine any witness with whom they are able to lay a proper foundation. Plaintiffs may do the same with the distribution data produced by each Defendant.

[2] Dr. McCann supplemented the DEA-produced ARCOS data with Defendants' transactional data, which covers a broader time period. *See* 5/10/21 Trial Tr. at 32:7–15.

distributions by a particular distributor to a particular pharmacy or region. *Id.* at 54:2–5. Plaintiffs and Dr. McCann were apparently "interested in" maximizing Defendants' overall shipment volume because, for all the data he presented, Dr. McCann "consciously made the decision" to ignore customers' return shipments to Defendants.  5/11/21 Trial Tr. at 95:10–25, 97:19–22, 100:16–25.  This decision by Dr. McCann overstated Defendants' distribution.  As just one example, Dr. McCann's analysis of ABDC's shipments of hydrocodone to McCloud Family Pharmacy does not include 15,200 dosage units of returns in October 2011.  5/12/21 Trial Tr. at 117:2–4.  By doing so, Dr. McCann ***overstates ABDC's shipments of hydrocodone by 26.5%*** in a single month by ignoring customer returns reported to ARCOS.  5/11/21 Trial Tr. at 108:1–111:16. Dr. McCann agreed that, "if there were returns," pharmacy-specific charts "***may not reflect the net shipments*** that went from [a] particular distributor to that particular pharmacy in a particular month."  5/12/21 Trial Tr. at 120:10–15.  Dr. McCann agreed that this omission—just one of many where Dr. McCann consciously omitted returns—is ***material***.  5/11/21 Trial Tr. at 111:7–16; *see also id.* at 110:11–17 (admitting that he also excluded 7,000 dosage units of hydrocodone returns for the same pharmacy in the very next month).

Dr. McCann also presented a skewed selection of ARCOS data from pharmacies across West Virginia, rather than an objective summary of the entirety of the database (or even an objective summary of West Virginia data).  Dr. McCann's purported summaries include 66 pharmacies (out of "certainly tens of thousands" for one Defendant alone), only twenty (30.3%) of which are within the City of Huntington and Cabell County.  5/12/21 Trial Tr. at 22:4–14; Ex. P-43225; *see also, e.g.*, 5/12/21 Trial Tr. at 19:2–11 ("Q.  Do you know of any geographic commonality between those pharmacies and Huntington/Cabell other than some of them are in the State of West Virginia, some of them are close to West Virginia?  A.  No."); *id.* at 21:25–22:3

4

("Q. And for any of those pharmacies that are outside Huntington/Cabell did you identify any patients from Huntington/Cabell who went to one of those pharmacies?  A.  No.  We don't have data on that.").  By Dr. McCann's own admission, the 66 pharmacies were *selected by Plaintiffs' counsel* and were *not intended to be representative* of Defendants' distribution of opioid medications to Huntington, Cabell, or anywhere else.  5/12/21 Trial Tr. at 18:16–20, 56:20–25.  Instead, they purport to be "illustrative choices by counsel of illustrative *examples of bad behavior* on the part of distributors."  *Id.* at 55:20–56:16 (emphasis added).  Dr. McCann then presented "pharmacy report" summaries for some of these counsel-selected pharmacies that ignore data for twelve of the fourteen opioid medications and, in some cases, omit information regarding the relative contributions of Defendant and non-Defendant distributors to the pharmacy's overall supply.  5/11/21 Trial Tr. at 185:11–189:15 ("You're right.  It's not on that demonstrative."); *id.* at 192:22–193:2 ("I don't see it spelled out specifically").

Finally, Dr. McCann "augment[ed]" the processed data for Plaintiff counsel's chosen subsets with information that appears nowhere in the ARCOS database and instead is derived from at least four other sources, *i.e.*, the Centers for Disease Control and Prevention, the Census Bureau, the Centers for Medicare & Medicaid Services, and the Food and Drug Administration.  5/12/21 Trial Tr. at 39:10–15; *see also* 5/11/21 Trial Tr. at 91:10–17.  *First*, Dr. McCann presents numerous tables and graphs depicting Defendants' shipments in Morphine Milligram Equivalents ("MME"), which Dr. McCann calculated using information that "comes from the CDC" and that "is not in the ARCOS data produced by the DEA."  5/10/21 Trial Tr. at 43:17–20; 5/11/21 Trial Tr. at 82:13–17; *see also* 5/12/21 Trial Tr. at 118:16–23.  *Second*, Dr. McCann presents tables and graphs depicting per capita averages that he calculated using U.S. Census data that does not reside anywhere within ARCOS.  *See* 5/11/21 Trial Tr. at 92:6–12 (agreeing that "those population

figures, you cannot find that in the ARCOS database"); 5/12/21 Trial Tr. at 117:9–18 ("[T]o the extent that there were per capita numbers, those are based on—including the Census data numbers."). *Third*, Dr. McCann uses CMS's "NPI Dictionary" to "narrow the subset of data that we were going to summarize to only those retail and chain pharmacies that have walk-in business." 5/10/21 Trial Tr. at 46:16–19. *Fourth*, Dr. McCann uses "an FDA document" to translate the NDC code shown in the ARCOS database to reflect the manufacturer of the medicine. *Id.* at 38:5–8.

## III.    ARGUMENT

Dr. McCann ***added*** calculations and relied on data that are not contained in the ARCOS database, while presenting a skewed summary of a ***subset*** of the ARCOS data to present information about outlier pharmacies in furtherance of Plaintiffs' trial themes.  Dr. McCann's charts are classic demonstratives to aid in the trial presentation of his opinions.  They are not admissible evidence under Rule 1006.

### A.    Dr. McCann's Charts Are Inadmissible Under Rule 1006 Because They Include Information that Does Not Exist Anywhere in the ARCOS Database.

Rule 1006 permits the use of "a summary, chart, or calculation" solely "***to prove the content of*** voluminous writings."  Fed. R. Evid. 1006 (emphasis added).  Accordingly, "[c]harts and summaries are . . . inadmissible if they contain information not present in the original or duplicate materials on which they are based." *Universal Furniture*, 599 F. Supp. 2d at 656 (quoting *Drougas*, 748 F.2d at 25); *see also Gomez v. Great Lakes Steel Div., Nat. Steel Corp.*, 803 F.2d 250, 257 (6th Cir. 1986) ("Contents of charts or summaries admitted as evidence under Rule 1006 must fairly represent and be taken from underlying documentary proof . . . ."); *Pritchard v. Liggett & Myers Tobacco Co.*, 295 F.2d 292, 301 (3d Cir. 1961) ("[I]t must be shown that the summation accurately summarizes the materials involved by not referring to information not contained in the original.").  Nor can a chart be "embellished by or annotated with the conclusions of or inferences

drawn by the proponent." *Krakauer*, 2016 WL 6775859, at *5 (quoting *Bray*, 139 F.3d at 1110). Summary charts also cannot be used to admit arguments or conclusions. *See Bluiett v. Pierre M. Sprey, Inc.*, 2009 WL 10685350, at *5 (D. Md. Jan. 27, 2009) (striking purported summaries because they "are not mere factual summaries; they are arguments and conclusions that Bluiett is attempting to present as evidence").

 Dr. McCann's tables and graphs depart from the ARCOS database in two critical respects that render them inadmissible under Rule 1006.

 *First*, Dr. McCann's so-called summaries impermissibly "contain information not present in the original," *Universal Furniture*, 599 F. Supp. 2d at 656, and are not taken exclusively from the "underlying documentary proof," *Gomez*, 803 F.2d at 257.  The tables and graphs created by Dr. McCann do not merely summarize the ARCOS database; they are embellished with additional information, including MME and per capita calculations, that was introduced by Dr. McCann and appears nowhere in that database.  Indeed, *all* of Dr. McCann's "pharmacy report" summaries include MME data, which is wholly absent from the ARCOS database.  The inclusion of additional information that concededly goes beyond the four corners of the ARCOS database renders the charts and tables inadmissible as 1006 summaries.  It does not matter whether Dr. McCann or Plaintiffs believe that his embellishments were relatively minor or well-supported; a proper 1006 summary may not go beyond the materials it purports to summarize.

 *Second*, in processing the database, Dr. McCann adjusted, excluded, and corrected millions of transactions.  Even if Dr. McCann deems these changes *de minimis* in the aggregate, they may not be *de minimis* with respect to a particular pharmacy or a particular month's orders—a critical fact when Plaintiffs intend to use Dr. McCann's charts as evidence not only of aggregate shipments, but also of the volume of particular shipments by particular Defendants to particular

pharmacies.   More importantly, a Rule 1006 summary must summarize the underlying data "accurately" and "correctly"; "[*n*]*othing* should be lost in the translation." *Bray*, 139 F.3d at 1110 (emphasis added).   Dr. McCann's charts summarize his own processed dataset—*i.e.*, his own expert work product—not "the content of" the ARCOS dataset that the DEA produced to the litigants.

Properly understood, Dr. McCann's MME and per capita calculations are ***expert opinion and conclusions***—namely, that Defendants shipped more pills per capita to Huntington and Cabell than to West Virginia, other states, or the United States as a whole.   *See United States v. Shulick*, 994 F.3d 123 (3d Cir. 2021) (rejecting "characterization of [expert's] sophisticated analysis as a mere summary" because the "testimony would have involved him explaining his analytical assumptions and professional opinion, based on his accounting expertise"); *United States v. Dish Network LLC*, 75 F. Supp. 3d 916, 933 (C.D. Ill. 2014) (holding that summary was inadmissible because the expert's efforts to make the document "required him to use his expertise in statistical analysis and was not a mere compilation of data").   Accordingly, the charts Plaintiffs proffer are classic expert demonstratives—not evidence that can be admitted under Rule 1006.

**B.     Dr. McCann's Charts Are Inadmissible Under Rule 1006 Because They Present a Skewed Selection of a Subset of the ARCOS Data.**

Rule 1006 exists to "reduce the volume of written documents that are introduced into evidence by allowing in evidence ***accurate*** derivatives from the voluminous documents." *Janati*, 374 F.3d at 272 (emphasis added).   As the Fourth Circuit has emphasized, because a chart summarizing records admitted under Rule 1006 is a "***surrogate*** for underlying voluminous records," it "must be an ***objectively accurate*** summarization of the underlying documents, ***not a skewed selection of some of the documents*** to further the proponent's theory of the case." *Oloyede*, 933 F.3d at 310, 311 (emphasis added).

8

Rule 1006's express language and purpose establish that only objective, non-skewed summaries or compilations may be admitted under the Rule. This limiting principle distinguishes Rule 1006 summaries "from other charts and summaries that may be presented" as demonstratives "to facilitate the presentation and comprehension of evidence already in the record" but that "are not admitted as evidence." *Janati*, 374 F.3d at 273.

*Oloyede* is particularly instructive. In a case involving a widespread online fraud scheme, the government sought to admit summaries prepared by the FBI's forensic accountant of "selected deposits that had been made into the [defendants'] bank accounts." 933 F.3d at 310. The Fourth Circuit held that such summaries "did not ***fully*** represent the accounts that they were purportedly summarizing" and "failed to comport with Rule of Evidence 1006 ***because of their selectivity***." *Id.* at 311 (emphasis added). As the Fourth Circuit held:

> It is apparent that the government in this case was not using the charts as surrogate evidence offered in lieu of voluminous underlying bank records, but rather was seeking to help the jury understand how various related records demonstrated a pattern of suspicious activity engaged in by the defendants. Thus, while the charts could have been shown to the jury under Rule 611(a), it was improper to have admitted them into evidence under Rule 1006.

*Id.* Dr. McCann's tables and graphs do not objectively summarize the ARCOS data for at least two reasons.

*First*, Dr. McCann's charts present a skewed summary of a ***portion*** of Defendants' pharmacy customers—including a cherry-picked set of non-representative pharmacies that have no geographic nexus to the City of Huntington or Cabell County.[3] As Dr. McCann admitted, and

---

[3] As to the McCann charts and tables concerning pharmacies outside Cabell/Huntington, Defendants also maintain their separate objection under the Court's order excluding evidence lacking a "demonstrable nexus to Cabell County or the City of Huntington." *See* Dkt. No. 1297, at 4. Dr. McCann admitted that he could not establish the requisite nexus. 5/12/21 Trial Tr. at 19:2–11, 21:25–22:3. Moreover, a selection of 46 pharmacies—cherry-picked by Plaintiffs'

contrary to *Oloyede*'s instruction that 1006 summaries cannot be used to try to show a "pattern of suspicious activity engaged in by the defendants," Dr. McCann's summaries feature pharmacies that Plaintiffs' counsel selected to show Defendants' alleged "bad behavior." 5/12/21 Trial Tr. at 55:20–56:25.[4]

*Second*, even as to the pharmacies that Plaintiffs' counsel elected to present, Dr. McCann excluded all transactions other than sales to customers. Dr. McCann admitted that this conscious choice can result in his charts "not reflect[ing] the net shipments that went from [a] particular distributor to that particular pharmacy in a particular month." *Id.* at 120:10–15.

In short, Plaintiffs are "not using the charts as surrogate evidence offered in lieu of voluminous underlying . . . records," but rather to put forward their theory of Defendants' alleged wrongdoing. *Oloyede*, 933 F.3d at 311. Yet "[s]ummary exhibits and expert opinions are two distinct forms of evidence," and "[a] litigant cannot selectively combine portions of the rules governing each in order to circumvent the core principles governing admissibility." *United States*

---

counsel in an effort to illustrate Defendants' alleged "bad behavior"—out of the tens of thousands of pharmacies serviced by Defendants could not possibly serve to establish any "trends" or "systemic failures" that are "national in scope." *See* Dkt. No. 1297, at 4.

Defendants additionally maintain their objections that admission of information about extraterritorial pharmacies is prejudicial because Plaintiffs did not identify those pharmacies in their Complaint, discovery responses, or discovery requests, *see* Dkt. 1297 at 6 ("[I]f Plaintiffs offer evidence that defendants believe is inconsistent with their discovery responses, defendants can and should point it out at trial."); and (ii) certain of Dr. McCann's charts were not disclosed in his expert report and appendices in this case.

[4] In argument before the Court, Plaintiffs suggested that they had provided limited information from ARCOS because they were directed to narrow the volume of the summaries presented at trial. But that is no answer to the Rule 1006 issue. Plaintiffs could have presented a full summary of all pharmacy shipments into the City of Huntington and Cabell County or West Virginia (or even nationally). But instead they made a deliberate choice to highlight only pharmacies with the highest shipments, which clearly did not fairly summarize the full range of the database and instead pulled selectively from the database in an effort to show "bad behavior."

*v. Adams*, 2014 WL 4312073, at *18 (W.D. Va. Sept. 2, 2014), *aff'd,* 638 F. App'x 189 (4th Cir. 2016).  Dr. McCann's charts are demonstratives of expert opinion, but they are not admissible evidence.

## IV.   CONCLUSION

Because a summary is only admissible "to prove the content" of voluminous documents, Fed. R. Evid. 1006, such a summary cannot offer selective information, include additional information not found in that dataset, or offer opinions about the contents of the summarized records.  The demonstratives that Plaintiffs seek to enter into evidence through Dr. McCann do exactly that.  For these reasons, the Court should exclude them.[5]


Dated:  May 13, 2021

Respectfully Submitted,


*McKesson Corporation*
By Counsel:

*/s/ Timothy C. Hester*
Timothy C. Hester
Laura Flahive Wu
Andrew P. Stanner
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
lflahivewu@cov.com
astanner@cov.com

---

[5] To assist the Court's review, Defendants' objections to each proposed exhibit are set forth in the accompanying Appendix.

*/s/ Paul W. Schmidt*
Paul W. Schmidt
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: (212) 841-1000
pschmidt@cov.com

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

**AmerisourceBergen Drug Corporation**
By Counsel:
*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com
*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
Joseph J. Mahady
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com
jmahady@reedsmith.com

***Cardinal Health, Inc.***
By Counsel:

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
Jennifer G. Wicht
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
emainigi@wc.com
lheard@wc.com
ahardin@wc.com
jwicht@wc.com

Michael W. Carey (WVSB #635)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
David R. Pogue (WVSB #10806)
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
rfranks@cdkrlaw.com
drpogue@cdkrlaw.com

**APPENDIX:**
**Defendants' Objections to Dr. McCann's Demonstrative Materials**

| Plaintiffs' Exhibit | Exhibit Description | Defendants' Objection(s) |
|---|---|---|
| P-42879_00001 | McKesson Shipments of Opioid Drugs in United States | Improper Rule 1006 summary<br><br>Fed. R. Civ. P. 26 (not disclosed in Dr. McCann's expert report) |
| P-43225_00001 to _00018 | Distribution to Select Pharmacies | Improper Rule 1006 summary<br><br>Geographic scope: Barbour County; Berkeley County; Boone County; Brooke County; Fayette County; Greenbrier County; Hancock County; Harrison County; Jefferson County; Kanawha County; Logan County; Marshall County; Mason County; Medowell County; Mercer County; Mingo County; Nicholas County; Ohio County; Pocahontas County; Putnam County; Raleigh County; Wyoming County; Boyd County, KY; Greenup, KY; Scioto County, OH<br><br>Fed. R. Civ. P. 26 (extraterritorial pharmacy not identified by Plaintiffs during fact discovery)<br><br>Fed. R. Civ. P. 26 (not disclosed in Dr. McCann's expert report) |
| P-44318_00001 to _00004 | Oxycodone and Hydrocodone Shipped by Cardinal Health, in Dosage Unit by State | Improper Rule 1006 summary<br><br>Geographic scope<br><br>Fed. R. Civ. P. 26 (not disclosed in Dr. McCann's expert report) |
| P-44711_00003 to _00006, _00008 to _00012, _00015 to _00029, _00034 to _00035 | All Sellers - Nationwide, WV, and Cabell County Data | Improper Rule 1006 summary<br><br>Geographic scope: Zip codes ending in 255 and 257 (Boone County, Lincoln County, Logan County, Mason County, Putman County, and Wayne County) |

| Plaintiffs' Exhibit | Exhibit Description | Defendants' Objection(s) |
|---|---|---|
| P-44723_00001 to _00002 | Hydrocodone Shipped by AmerisourceBergen Drug, in Dosage Unit by State | Improper Rule 1006 summary<br><br>Geographic scope<br><br>Fed. R. Civ. P. 26 (not disclosed in Dr. McCann's expert report) |
| P-44726_00001 to _00002 | Hydrocodone Shipped by McKesson Corporation, in Dosage Unit by State | Improper Rule 1006 summary<br><br>Geographic scope<br><br>Fed. R. Civ. P. 26 (not disclosed in Dr. McCann's expert report) |
| P-44731_00001 to _00002 | Oxycodone Shipped by AmerisourceBergen Drug, in Dosage Unit by State | Improper Rule 1006 summary<br><br>Geographic scope<br><br>Fed. R. Civ. P. 26 (not disclosed in Dr. McCann's expert report) |
| P-44734_00001 to _00002 | Oxycodone Shipped by McKesson Corporation, in Dosage Unit by State | Improper Rule 1006 summary<br><br>Geographic scope<br><br>Fed. R. Civ. P. 26 (not disclosed in Dr. McCann's expert report) |
| P-44744_00001 to _00002, _00008, _00042, _00082, _00010, _00036 | Aracoma Drug Co. Pharmacy Report | Improper Rule 1006 summary<br><br>Geographic scope: Chapmanville, WV<br><br>Fed. R. Civ. P. 26 (extraterritorial pharmacy not identified by Plaintiffs during fact discovery) |
| P-44747_00001 to _00003, _00006, _00008, _00014 | Custom Script Pharmacy Report | Improper Rule 1006 summary |
| P-44748_00001 to _00003, _00006, _00016, _00055, _00013 | CVS Pharmacy Report | Improper Rule 1006 summary |
| P-44748_00004 to _00005 | Oxycodone and Hydrocodone Shipments to Selected Pharmacies in Cabell County and the City of Huntington, WV | Improper Rule 1006 summary |

| Plaintiffs' Exhibit | Exhibit Description | Defendants' Objection(s) |
|---|---|---|
| P-44749_00001 to _00003, _00006, _00010, _00012, _00018, _00028, _00034, _00041, _00015, _00047, _00057, _00063, _00070 | Drug Emporium Pharmacy Report | Improper Rule 1006 summary |
| P-44750_00001 to _00002, _00007, _00041, _00044, _00053, _00059, _00069 | Family Discount Pharmacy of Stollings Inc. Pharmacy Report | Improper Rule 1006 summary<br><br>Geographic scope:<br>Logan, WV<br><br>Fed. R. Civ. P. 26 (extraterritorial pharmacy not identified by Plaintiffs during fact discovery) |
| P-44751_00001 to _00002, _00008, _00054, _00068, _00078, _00084, _00093, _00010 | Family Discount Pharmacy Report | Improper Rule 1006 summary<br><br>Geographic scope:<br>Mount Gay, WV<br><br>Fed. R. Civ. P. 26 (extraterritorial pharmacy not identified by Plaintiffs during fact discovery) |
| P-44752_00001 to _00003, _00006 to _00007, _00013, _00015, _00021, _00028, _00034, _00044, _00018, _00062, _00069, _00075, _00084, _00094, _00093, _00103, _00109, _00118, _00124, _00131, _00137, _00146, _00167, _00169, _00176, _00182, _00191, _00197, _00204, _00210, _00219, _00240, _00242, _00249, _00255, _00264, _00270, _00277, _00283, _00292, _00313, _00315, _00322, _00328, _00337, _00343, _00350, _00356, _00366 | Fruth Pharmacy Report | Improper Rule 1006 summary |

| Plaintiffs' Exhibit | Exhibit Description | Defendants' Objection(s) |
|---|---|---|
| P-44753_00001 to _00002, _00068, _00084 | Hurley Drug Company Inc. Pharmacy Report | Improper Rule 1006 summary<br><br>Geographic scope: Williamson, WV<br><br>Fed. R. Civ. P. 26 (extraterritorial pharmacy not identified by Plaintiffs during fact discovery) |
| P-44754_00001 to _00003, _00006, _00010, _00012, _00018, _00028, _00015, _00046, _00056 | McCloud Pharmacy Report | Improper Rule 1006 summary |
| P-44755_00001 to _00003, _00006, _00013, _00015, _00034, _00050, _00018, _00080, _00096, _00106, _00108, _00124 | Medicine Shoppe Pharmacy Report | Improper Rule 1006 summary |
| P-44757_00001 to _00003, _00006 to _00007, _00012, _00017, _00060, _00072, _00014, _00031, _00043 | Rite Aid Pharmacy Report | Improper Rule 1006 summary |
| P-44758_00001 to _00003, _00006, _00010, _00012, _00021, _00027, _00030, _00039, _00045 | Safescript Pharmacy Report | Improper Rule 1006 summary |
| P-44759_00001 to _00002, _00027, _00034 | Strosnider DBA Sav-Rite Pharmacy Report | Improper Rule 1006 summary<br><br>Geographic scope: Kermit, WV<br><br>Fed. R. Civ. P. 26 (extraterritorial pharmacy not identified by Plaintiffs during fact discovery) |

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on this 13th day of May, 2021, the foregoing Memorandum was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Timothy C. Hester*