IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**THE CITY OF HUNTINGTON,**
    Plaintiff,

v.

**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**
    Defendants.

CIVIL ACTION NO. 3:17-01362

---

**CABELL COUNTY COMMISSION,**
    Plaintiff,

v.

**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**
    Defendants.

CIVIL ACTION NO. 3:17-01665

**RESPONSE TO DEFENDANTS' MOTION TO EXCLUDE THE RULE 30(b)(6)
DEPOSITION TESTIMONY OF THOMAS PREVOZNIK**

**INTRODUCTION**

The City of Huntington and Cabell County Commission submit this memorandum of law in opposition to Defendants' Motion to Exclude the Rule 30(b)(6) Deposition Testimony of Thomas Prevoznik (Doc. 1310).

These very Defendants jointly noticed and took Mr. Prevoznik's deposition as the DEA's 30(b)(6) representative "for use at trial."[1] The deposition was taken after extensive negotiations between the parties and the DEA over times and topics.[2] The deposition was taken with the understanding with the DEA that subsequent depositions would not be permitted and pursuant to an MDL case management order prohibiting redeposition of witnesses.[3] The importance of the deposition was underscored by the fact that MDL Special Master, David Cohen personally presided over the deposition.[4] Defendants now argue that the Court should "exclude any designated testimony that is not based on Mr. Prevoznik's personal knowledge."[5] They are legally and factually wrong.

Defendants' premise that personal knowledge is required to admit Rule 30(b)(6) testimony at trial is based on an interpretation of the rules that would vitiate the purpose of a Rule 30(b)(6)

---

[1] *See* Exhibit 1 (Notice of Videotaped 30(b)(6) Deposition of Thomas Prevoznik dated April 11, 2019 at 2).

[2] *See infra* n.1 at Exhibit A (Letter to DEA from Enu Mainigi regarding subpoenas in MDL 2804 dated July 10, 2018) and Exhibit B (Letter to Enu Mainigi and Linda Singer from Ava Rotell Dustin, Executive Assistant United States Attorney dated March 22, 2019).

[3] *See* Exhibit 2 (Case Management Order One, MDL 2804 Doc. No. 232 at 13 (April 11, 2018), No. 9 Preliminary Discovery Plan and Procedures, section (f) "Deposition Protocol")); Exhibit 3 (Letter to Special Master Cohen from Assistant United States Attorney James Bennett II dated Feb. 20, 2019 at p. 2); Exhibit 4 (Discovery Ruling No. 16 Regarding DEA Depositions, MDL 2804 Doc. No. 1386 at 2).

[4] *See infra* n.3 at Exhibit 4.

[5] Defendants' Motion, Doc. 1310 at 2.

deposition. Even if the personal knowledge requirement exists, the requirement is not strictly applied to witness testimony by an organization, and it is clear that Mr. Prevoznik, who is currently the DEA's Deputy Assistant Administrator of Diversion Control and a 28-year veteran of the agency, meets that standard. Finally, if the Court excludes this important testimony, the DEA will not agree to provide a live witness at trial, depriving the Court and Plaintiffs of this important testimony.

## PROCEDURAL AND FACTUAL BACKGROUND

The deposition at issue was taken in the MDL over three days beginning on April 17, 2019. Getting to that point, however, involved extensive negotiations between the parties and the DEA. First, on July 1, 2018, these Defendants requested permission from the United States Department of Justice to designate a Rule 30(b)(6) witness to testify on behalf of the DEA pursuant to the applicable *Touhy* regulations, 28 C.F.R. § 16.22(b).[6] On December 11, 2018, the Plaintiffs requested a Rule 30(b)(6) witness from the DEA to testify on five designated topics.[7]

The DOJ made clear prior to the deposition that time should be allocated fairly among the parties because it believed that the DEA witnesses should not be required to sit for more than one deposition.[8] And, the applicable case management order provides that "absent agreement or court order, a witness will not be deposed more than once across any state or federal cases."[9]

---

[6] Ex. 1 (Exhibit A Mainigi *Touhy* Letter to DEA dated July 10, 2018).

[7] Ex. 1 (Exhibit B Letter to Enu Mainigi and Linda Singer from Ava Rotell Dustin, Executive Assistant United States Attorney dated March 22, 2019 at pp. 1, 9-10).

[8] Ex. 3 (Letter to Special Master Cohen from Assistant United States Attorney James Bennett II dated Feb. 20, 2019 at p. 2)("The United States does not take a position on the division of those hours between the parties and/or party groups, but agrees that there should only be one deposition of a witness and there needs to be a fair allocation of the time among the interested parties.").

[9] Ex. 2, Case Management Order One, Doc. No. 232 at 13 (April 11, 2018), No. 9 Preliminary Discovery Plan and Procedures, section (f) "Deposition Protocol"); Ex. 5, MDL Deposition

Recognizing this would be a "one and done", the parties and the DEA engaged in negotiations regarding the total time available, the order of questioning, the scope of document production, and the Rule 30(b)(6) topics.[10] For its part the DEA was appropriately concerned with the diversion of "critical resources and manpower from the work of the agency."[11] After numerous discussions between the Plaintiffs, Defendants, DEA and DOJ officials, and Special Master Cohen, the DEA agreed to designate four Rule 30(b)(6) witnesses to testify regarding nine topics including five of the topics requested by Defendants.[12]

Special Master Cohen ultimately resolved the parties' disagreement over time allocation, allocating 28.0 hours of deposition with 17.0 hours reserved for Defendants who were permitted to question first and allocating 11.0 hours for Plaintiffs.[13] His resolution of the disagreement over time allocation was "designed with the intention of allowing the parties only as much time as is absolutely necessary, while also ensuring as much as possible that these witnesses will not have to testify again involuntarily in this MDL."[14]

The DEA understood the importance of this deposition. Indeed, "the witnesses identified by the DEA are high ranking officials who are engaged in mission critical work for the agency."[15] In choosing witnesses, the DEA "elected to provide [Rule 30(b)(6)] witnesses who are already

---

Protocol, Doc. 643 at p.4, ¶ I(f)(2) ("Depositions taken in this MDL pursuant to this Order shall not be retaken in this MDL without further order of the court upon good cause shown or an agreement of the parties.").

[10] Ex. 3 (Bennett Letter dated Feb. 20, 2019); Ex. 6, (Letter to Special Master Cohen from Enu Mainigi dated Feb 18, 2019).

[11] Ex. 3 (Bennett Letter dated Feb. 20, 2019, at p. 2).

[12] Ex. 1 (Notice of Videotaped Deposition at p. 2).

[13] Ex. 4 (DR-16, MDL 2804 Doc. No. 1386, February 22, 2019, at p. 2).

[14] *Id.*

[15] Ex. 3 (Bennett Letter dated February 20, 2019, at p. 2).

knowledgeable and could provide the greatest assistance to the parties."[16] Mr. Prevoznik, who was the Deputy Assistant Administrator for Diversion Control, was authorized to testify regarding nine topics including DEA's interpretation and enforcement of 21 U.S.C. Section 823 and 21 C.F.R. Section 1301.74, obligations to monitor third party registrants; guidance provided by DEA regarding what makes an order for controlled substances "suspicious" under 21 C.F.R. Section 1301.74; and DEA's practice of notifying distributors when another distributor terminated its relationship with a customer due to the risk of diversion.[17]

Mr. Prevoznik was an appropriate choice to serve as a Rule 30(b)(6) witness for the DEA on these topics. He has been employed by the DEA for over 28 years, including positions both in the field and at headquarters.[18] His responsibilities included, among other things, presentations at industry conferences on behalf of the DEA.[19] He testified that he had been a "diversion investigator" for the entirety of his 28-year tenure at DEA, including as a supervisor.[20] His job responsibilities also included a 12-week DEA training course and "refresher" courses every 3-5 years.[21] His positions and tenure at the DEA are sufficient to give him personal knowledge of DEA practices and procedures that predate his appointment as Deputy Assistant Administrator for Diversion Control.

Mr. Prevoznik also took the obligation of serving as DEA's Rule 30(b)(6) witness seriously. Mr. Prevoznik spent more than one hundred (100+) hours over a period of four (4)

---

[16] *Id.*

[17] Ex. 1 (Exhibit B, Letter to Mainigi and Singer from Dustin, Executive Assistant United States Attorney dated March 22, 2019 at pp. 2-10).

[18] Tr. p. 42:11-43:18; Ex. 7. (Thomas W. Prevoznik Summary of Experience).

[19] Tr. p. 59:24-60:19, 62:7-17, 63:21-23.

[20] Tr. p. 84:2-21.

[21] Tr. 86:16-88:21.

months (from December 2018 through April 2019) reviewing DEA policies and documents and preparing for the deposition, including fifty (50) hours of document review.[22] Mr. Prevoznik testified, generally, that in preparation for providing testimony on DEA's interpretation and enforcement of and practices related to 21 U.S.C. Section 823 and 21 C.F.R. Section 1301.74, he met with twenty DEA colleagues about DEA's policies and practices regarding suspicious orders.[23] Mr. Prevoznik explained:

> I've been on the job 28 years. So I know quite a few people. I reached out to the main people that I knew would have information, and based on discussing with them, there were suggestions made to reach out to other people. Some of the people I worked with in headquarters and I worked closely with them, so I – they knew information that could help me prepare.[24]

Mr. Prevoznik had weekly meetings with these individuals with knowledge.[25]

Mr. Prevoznik also reviewed DEA records to understand the policies and procedures that DEA has articulated to its registrants.[26] Mr. Prevoznik testified that he reviewed DEA business records dating back to the 1980s.[27]

In the end, Mr. Prevoznik testified over the course of three days in a deposition supervised by Special Master Cohen which the Defendants had ample opportunity to lodge objections and vigorously cross examine him. Plaintiffs have inquired whether Mr. Prevoznik would be able to appear live at trial should the Court grant this motion.[28] DOJ responded:

---

[22] Exhibit 8 (Prevoznik Deposition Preparation).

[23] Tr. 21:7-22:19.

[24] *Id.* at 26:13-24.

[25] *Id.* at 28:11-29:1; 39:13-24.

[26] *Id.* at 28:11-29:1; 39:13-24.

[27] Tr. May 17, 2019 at 1221:11-1222:14

[28] *See* Ex. 9 (Letter to DOJ from Singer dated May 13, 2021).

> Mr. Prevoznik is a senior DEA official with significant responsibilities, and it would be disruptive to DEA's operations for the DEA to make Mr. Prevoznik available for live testimony at each opioid-related trial. For this reason, and pursuant to the Special Master's order [DR-16], the DEA agreed to make Mr. Prevoznik available in the MDL, and he provided detailed deposition testimony for three days in April and May 2019. Accordingly, the DEA has serious concerns about authorizing his testimony in this matter.[29]

The DOJ also noted that "the Court is not within 100 miles of where Mr. Prevoznik lives or regularly transacts business."[30]

Both parties designated Mr. Prevoznik's deposition testimony (and the testimony of other DEA designees) in both CT1 and this track of the MDL, suggesting the parties' expectation that this testimony would be admissible.[31] Until the filing of this motion, Defendants failed to make any objection to Plaintiffs' listing of Mr. Prevoznik on its witness list, always by deposition designation, in October 2020 and April 2021.

## ARGUMENT

### I. RULE 30(b)(6) TESTIMONY NEED NOT BE BASED ON PERSONAL KNOWLEDGE TO BE ADMISSIBLE AT TRIAL.

Defendants argue that Rule 30(b)(6) testimony not based on personal knowledge is not admissible at trial. Defendants' interpretation of the Rules would render Rule 30(b)(6) depositions practically meaningless. This Court should reject this cramped interpretation of the rules.

The Fifth Circuit recognized that a Rule 30(b)(6) witness "testifies 'vicariously,' for the corporation, as to its knowledge and perceptions."[32] The Fifth Circuit further determined that if a Rule 30(b)(6) witness is made available at trial, he should be allowed to testify as to matters within

---

[29] *See* Ex. 10 (Letter to Singer from Waites dated May 14, 2021).

[30] *Id.* (citing Fed. R. Civ. Proc. 45(c)).

[31] Ex. 4, DR-16 at p. 1.

[32] *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 434 (5th Cir. 2006).

corporate knowledge to which he testified at the deposition.[33] Similarly, in *Sara Lee Corp. v. Kraft Foods Inc.,* the court determined that it was improper to limit a nonparty's testimony strictly to matters within his personal knowledge.[34] The *Sara Lee* court held that "a Rule 30(b)(6) witness may 'testify not only to matters within his personal knowledge but also to matters known or reasonably available to the organization.'"[35]

    The court in *Sara Lee* further recognized that, "[w]hen it comes to using Rule 30(b)(6) depositions at trial, strictly imposing the personal knowledge requirement would only recreate the problems that Rule 30(b)(6) was created to solve. For example, a party might force a corporation to 'take a position' on multiple issues through a Rule 30(b)(6) deposition, only to be left with the daunting task of identifying which individual employees and former employees will have to be called at trial to establish the same facts."[36] *Sara Lee* recognized that while the "purposes underlying Rule 30(b)(6) must be balanced against the real dangers of admitting testimony based on hearsay,"[37] the court approved the admission of testimony based on corporate knowledge when they were topics that are particularly suitable for Rule 30(b)(6) testimony such as matters about which the corporation's official position is relevant, such as corporate policies and procedures.[38]

---

[33] *Id.*

[34] 276 F.R.D. 500, 503 (N.D. Ill. 2011),

[35] *Id.* at 503; *see also PPM Fin., Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 895 (7th Cir. 2004) (holding district court properly considered deposition testimony of Rule 30(b)(6) deponent on summary judgment, who "was free to testify to matters outside his personal knowledge as long as they were within the corporate rubric"); *Univ. Healthsys. Consortium v. Unitedhealth Grp., Inc.*, 68 F. Supp. 3d 917, 921–22 (N.D. Ill. 2014) (same).

[36] 276 F.R.D. at 503.

[37] *Id.* (citation omitted).

[38] *Id.*

The testimony designated here fits within the *Sara Lee* test as the majority of the designations assigned to Mr. Prevoznik explicitly reference the DEA's policies and procedures.[39]

Applying these rulings here would be consistent with the purpose of a Rule 30(b)(6) deposition. The Defendants' interpretation, on the other hand, would vitiate Rule 30(b)(6) as it would exclude much of the corporate knowledge testimony contained in the deposition and deprive the Court of highly relevant testimony.  Here, both parties sought the 30(b)(6) testimony of the DEA on numerous, often overlapping, topics related to the DEA's policies, procedures, and activities with respect to the Controlled Substances Act, including DEA's guidance to registrants, DEA's enforcement activities, DEA's implementation of quota, government examinations of the DEA, and similar topics.

Defendants' nonbinding caselaw to the contrary is not persuasive.  *Mountain Valley Pipeline, LLC v. 1.23 Acres of Land owned by Eagle's Nest Ministries, Inc.,* recognized that the caselaw was conflicting.[40]  Moreover, all of the cases cited by Defendants involved live trial testimony by someone who had been designated to testify as a corporate representative at the request of the party offering the testimony rather than the use of Rule 30(b)(6) deposition

---

[39] Ex. 1 (Exhibit B Letter to Mainigi and Singer from Dustin, Executive Assistant United States Attorney dated March 22, 2019 at pp. 2-10)(Interpretation and enforcement of, and practices related to 21 U.S.C. § 823 and 21 C.F.R. § 1301.74; criteria regarding what makes an order for controlled substances "suspicious" under 21 C.F.R. § 1301.74; procedures and practices relating to obtaining, processing, analyzing, and taking formal or informal actions based upon ARCOS Data, Suspicious Order Reports, or other Communications from DEA Registrants to identify and stop sources of diversion; DEA's guidance to registrants and requests for guidance from registrants with respect to any of the topics in this subpoena, including, but not limited to, all guidance and communications related to DEA's Distributor Initiative; and DEA's interaction with the Healthcare Distribution Management Association ("HDMA," now known as the Healthcare Distribution Alliance ("HDA")) regarding best practices, guidance, or enforcement related to registrants' obligations under the CSA and its implementing regulations).

[40] No. 7:18-CV-00610, 2019 WL 8920215, at *6 (W.D. Va. July 12, 2019).

testimony.[41] In any event, these cases are not persuasive – especially when the testimony sought to be admitted is from an federal regulatory agency.

Absent allowing Rule 30(b)(6) testimony to be admitted, the parties would have to attempt to obtain this information through the depositions and/or trial testimony of numerous current and former DEA employees. Here, a contrary interpretation would result in requests for the DEA to send someone to testify in every opioid-related litigation in federal court (where four additional cases are in active litigation, another five are to be remanded, and more than 3,000 are lined up behind them) and in multiple state court proceedings.

However, as noted above, the DOJ has repeatedly expressed concerns over disruption of the DEA's operations and mission.[42] These are government witness which the DOJ contends it has the ability to block or limit testimony.[43] Thus, when the testimony sought is from a governmental regulatory agency, permitting Rule 30(b)(6) testimony to be used at trial is not only the most efficient way to determine the position of the governmental agency, it may be the only

---

[41] *Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC,* 72 F. Supp. 3d 131, 146 (D.D.C. 2014) ("Torres cites a number of cases recognizing that, at a deposition conducted pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, the corporate designee need not have personal knowledge of the matters on which he or she testifies. However, each of these cases involved testimony given at a deposition; none pertained to the introduction of live testimony at a jury trial."); *Mountain Valley Pipeline, LLC, supra* (live trial testimony sought); *Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, 907 (5th Cir. 2010) (same); *Brooks v. Caterpillar Glob. Mining Am., LLC*, No. 4:14CV-00022-JHM, 2017 WL 3426043, at *5 (W.D. Ky. Aug. 8, 2017) (same).

[42] *See, supra* n.8.

[43] *See* Ex. 1 (Exhibit B, Letter to Mainigi and Singer from Dustin, Executive Assistant United States Attorney dated March 22, 2019 at pp. 1-2). ("As you are aware, federal regulations govern the disclosure of official DEA information by federal employees. *See U.S. ex rel. Touhy v. Ragen,* 340 U.S. 462, 468 (1951)… Under these regulations, current and former DEA employees are prohibited from disclosing official information in proceeding in which the United States is not a party without express authorization from the DOJ. *See* 28 C.F.R. 16.22(a).").

way to obtain the testimony. A ruling that the bulk of Mr. Prevoznik's testimony is not admissible at trial would frustrate the parties' intent.

Finally, the testimony is extremely relevant in this case. Defendants, in particular, have hung much of their defense on the actions or inaction of the DEA, and both parties rely heavily on the DEA's interpretation of the Controlled Substances Act ("CSA") and its regulations, including 24 CFR Section 1301.74, which outlines registrants' duty to identify, report, and block suspicious orders. Defendants characterized these depositions "among the most critical in the case."[44]

Unlike the typical third party, as the administrative agency charged with interpreting and enforcing the CSA, its view of the duties of registrants is entitled to *Chevron* deference. [45] Thus, the corporate testimony of the DEA, rather than the testimony of individual employees, has heightened significance. Moreover, Plaintiffs were not party to the communications between the DEA and Defendants that took place through numerous in-person meetings, inspections, correspondence, conferences, and other briefings at which the DEA provided guidance to Defendants. The DEA's testimony regarding the content and meaning of these interactions, therefore, is critical to provide the Court with a balanced account of these critical contested issues. The prejudice to Plaintiffs if his testimony is excluded at this stage would be enormous.

---

[44] *See* Exhibit 11 Letter from Enu Mainigi to Special Master Cohen at p. 1 ("As you know, Defendants requested these depositions, which *we view as among the most critical in the case…*" (emphasis added)).

[45] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984)("A court should defer to an agency's interpretation of its own regulation…unless that interpretation is plainly erroneous or inconsistent with regulation"); *see also Plaintiffs' Reply in Support of Motion for Partial Summary Judgment Concerning Defendants' Statutory and Regulatory Duties,* Doc. 1145, Section D, pp. 14-18.

## II. MR. PREVOZNIK HAS SUFFICIENT PERSONAL KNOWLEDGE OF THE SUBJECT MATTER.

Even if personal knowledge is required to admit the testimony of a third-party Rule 30(b)(6) deponent, the testimony here meets the applicable standard for personal knowledge.

### A. The test for personal knowledge when a designated witness testifies on behalf of an entity is not strict.

Personal knowledge under Rule 602 of the Federal Rules of Evidence "may be proved by the witness's own testimony, including the witness' inferences and opinions, so long as these inferences and opinions are themselves based on personal knowledge."[46] Courts, however, do not strictly apply the personal knowledge requirement when a designated witness testifies on behalf of an entity. Courts have found that the personal knowledge requirement can be satisfied through experience alone.[47] There is no requirement that the corporate employee witness transactions firsthand.[48] And, personal knowledge can be gained from a review of corporate documents.[49] Or even knowledge gained from others.[50]

---

[46] Saltzburg, Martin, Capra, Federal Rules of Evidence Vol. 2, (2011 version) § 602.02[1].

[47] *Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 606 (D.N.J. 2004) (court rejected an objection based on the personal knowledge requirement, finding that "a person in his position would have sufficient knowledge of company operations to support the assertions"); *United States v. Oldrock,* 867 F.3d 934, 104 Fed. R. Evid. Serv. 189 (8th Cir. 2017); *U.S. v. STABL, Inc.,* 800 F.3d 476, 486, 92 Fed. R. Serv. 3d 797 (8th Cir. 2015).

[48] *First Nat'l Bank v. Lustig,* 96 F.3d 1554 (5th Cir. 1996) (bank's employee and designated representative could testify based on knowledge of bank's regular procedures, even though she wasn't present when certain loans were approved); *United States v. Quezada,* 754 F.2d 1190, 1196 (5th Cir. 1985)(INS agent has sufficient personal knowledge of normal procedure for executing deportation warrants, even though he didn't personally observe execution of particular warrant*).*

[49] *In re Tex. Eastern Transmission Corp. PCB Contamination Ins. Coverage Litig.,* 870 F. Supp. 1293, 870 F. Supp. 1293, 1304 (E.D. Pa. 1992) (testimony was based on knowledge derived from "reliance on documents" was "sufficiently based on personal knowledge and is therefore admissible evidence").

[50] *See Agfa-Gevaert,-, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1523(7th Cir. 1989)(both expert and board of directors could testify about defects in copiers where testimony was based on information

### B. Mr. Prevoznik's experience, investigation, and preparation satisfy any personal knowledge requirement.

Defendants raise objections with the following categories of testimony:1) DEA's Interpretation of the CSA and Its Related Regulations Before 2012; 2) DEA's Interpretation of a 1984 Letter; 3) U.S. Attorney General Report by the Suspicious Order Task Force in 1998; 4) 2005 and 2006 Meetings with Distributors; and 5) 2011 Meeting between the DEA and HDMA. Mr. Prevoznik has personal knowledge of this subject matter through his investigation, experience and review of DEA records relating to these topics. Indeed, Defendants themselves have now sought to introduce one or more of these documents through Mr. Prevoznik.

Mr. Prevoznik's long-tenured experience renders him sufficiently qualified to testify concerning DEA matters – including matters that predate his current position. As noted above, Courts have found that the personal knowledge requirement can be satisfied through experience alone.[51] Mr. Prevoznik's almost three decades at the DEA provide sufficient basis for the testimony. As noted above, the DEA selected Mr. Prevoznik to testify as its designee precisely because he was a high-ranking official who was "already knowledgeable and could provide the greatest assistance to the parties."[52]

Mr. Prevoznik's testimony regarding the DEA's interpretation of the CSA and related regulations constitute organizational knowledge acquired through his investigation in preparation

---

from customers, even though this was inferential, if it was the kind of inferences that businesspeople normally draw. Noting that "knowledge acquired through others may still be personal knowledge within the meaning of Fed.R.Evid. 602.").

[51] *See supra* n.48.

[52] *See supra* n.17.

for the deposition and his review of extensive DEA records.[53] These documents themselves are exempt from the hearsay rule as they constitute public records under Federal Rule of Evidence 803(8) and support a finding of personal knowledge of DEA practices and procedures on the part of the witness.

For example, Mr. Prevoznik reviewed the DEA's Office of Diversion Control's "Seminar Report Controlled Substances Manufacturers and Wholesalers Seminar" from a seminar held in San Antonio, Texas, on April 7-9, 1987, which was "designed to tap industry security expertise in certain areas of diversion control, and to open communication not only between the industry and DEA out also within industry."[54] The report indicates that during an open session on excessive order monitoring programs, DEA Deputy Director of Diversion Control Ronald Buzzeo, addressed "whether DEA would take action against a registrant which reported an order then shipped it. DEA pointed out that the company is still responsible under their registrations for acting in the public interest. Reporting the order does not in any way relieve the firm from the responsibility for shipment."[55] Review of this report is sufficient to give Mr. Prevoznik personal

---

[53] Mr. Prevoznik testified that he reviewed: DEA's Office of Diversion Control's Seminar Report from the Controlled Substances Manufacturer and Wholesalers Seminar; documents regarding the NWDA Suspicious Order Monitoring Systems; DEA letters discussing the duty of registrants under the CSA; public notice regarding the Task Force on Suspicious Orders; PowerPoint Presentation on Internet pharmacies; records of 2005 and 2006 meetings with distributors; and records of the 2011 meeting between DEA and HDMA. *See* Tr. at 802:20-806:3; 806:5-811:5; 808:13-809:24; 828:1-833:5; 829:10-833:5; and 957:4-10; 1152:16-1153:2. Although this list is not a comprehensive list of all records Mr. Prevoznik reviewed since 2012, it highlights documents that establish that he has personal knowledge through his review of numerous DEA records prior to 2012.

[54] Tr. at 802:20-806:3; Seminar Report, Controlled Substances Manufacturers and Wholesalers Seminar (April 7-9, 1987), Exhibit 12.

[55] *Id.*

knowledge of the DEA's positions in 1987 regarding registrant's obligations not to ship suspicious orders.

Similarly, Mr. Prevoznik also relied on the "NWDA Suspicious Order Monitoring Systems", which was reviewed by the DEA. The document explains that "it is the responsibility of the wholesaler to design and operate a system which will disclose to the wholesaler suspicious orders of controlled substances."[56] The report further provides that "single orders of unusual size or deviation must be reported immediately. The submission of a monthly printout of after-the-fact sales will not relieve a registrant from the responsibility of reporting these single excessive or suspicious orders. DEA has 'interpreted' orders to mean prior to shipment."[57]

Mr. Prevoznik also reviewed DEA letters, including "Letters from DEA Approving the Format" attached to the NWDA Suspicious Order Monitoring Systems report. The DEA letters are dated April 27, 1984 and May 16, 1984 from G. Thomas Gitchel, Acting Chief Diversion Operations Section to Ronald J. Streck, Vice President of Government Affairs for the National Wholesale Druggists' Association.[58] Notably, Defendants have themselves sought to introduce some, if not all, of these letters as exhibits through Mr. Prevoznik.

The April 27, 1984 letter indicates that the "NWDA's draft format for a suspicious order monitoring system provides an excellent framework for distributor registrants to…design and operate a system to disclose to the registrant suspicious orders of controlled substances. (21 CFR 1301.74(b)) …[A]n after-the-fact computer printout of sales data does not relieve a registrant of its responsibility to report excessive or suspicious orders when discovered."[59]

---

[56] *See* Exhibit 13 (NWDA Suspicious Order Monitoring System, June 21, 1993, at 1).

[57] Tr. at 806:5-811:5; Ex. 11 at 7.

[58] Ex. 13 (Attachments at pp. 9-11).

[59] *Id.*; 808:13-809:24.

15

In the May 16, 1984 letter challenged by Defendants, Mr. Gitchel, Acting Chief, Diversion Operations Section, states that "I want to make it clear that the submission of a monthly printout of after-the-fact sales will not relieve a registrant from the responsibility of reporting excessive or suspicious orders. DEA has interpreted 'orders' to mean prior to shipment."[60] The letter, which is a DEA record, provides further support for the DEA's position regarding the no-shipping duty and a basis for Mr. Prevoznik's corporate personal knowledge of the DEA.

In the DEA's December 8, 1993 letter from Gene Haislip, Director of the Office of Diversion Control to Phillip Jordan, Special Agent in Charge, Dallas Field Division, Mr. Haislip indicates that a DEA regulation, 21 C.F.R. § 1301.74(b), clearly places the responsibility of designing and operating a system to identify suspicious orders of controlled substances on the registrant[,]" and that "[i]mplicit in this requirement is the idea that the registrant should not merely be accumulating data on what appear to be excessive purchases for eventual submission to DEA, but rather that the system be monitored so that any such orders will be apparent to the registrant and so that they can be reported to DEA upon discovery, and whenever possible, before the order is shipped."[61]

Thus, Mr. Prevoznik's review of these DEA records support his testimony that, under long-standing federal law and agency guidance, orders must be blocked and promptly reported when discovered.[62]

In addition to the other documents reviewed, Mr. Prevoznik also reviewed documents from the Attorney General's "Task Force on Suspicious Orders."[63] A summary indicates that "[t]he Task

---

[60] *Id.* at 11; Id. at 810:7-24-811:5.

[61] Tr. at 816:8-821:5; Ex 14.

[62] Tr. at 814:11-815:18.

[63] DEA-Prevoznik-21; 62 Fed. Reg. 223, Ex. 15; Tr. at 828:1-833:5.

Force shall be responsible for providing the Attorney General with recommendations, advice, and proposals for the establishment of such guidelines that will adequately define suspicious orders of listed chemicals.[64] The Task Force was mandated by the Comprehensive Methamphetamine Control Act of 1996 and was responsible for "providing the Attorney General with recommendations, advice, and proposals for the establishment of such guidelines that will adequately define suspicious orders of listed chemicals."[65] Defendants offer no analysis why Mr. Prevoznik's experience, investigation, and document review render his testimony regarding these meetings outside his personal knowledge.  Mr. Prevoznik testified that the Task Force did not authorize registrants to apply thresholds that were three-times customers' past orders to identify suspicious orders.

With respect to the 2005 and 2006 Meetings with Distributors, Mr. Prevoznik relied on an internal memorandum to William Walker, Deputy Assistant Administrator, Office of Diversion Control, from Michael R. Mapes, Chief E-Commerce Section (ODC), dated August 16, 2005, which provides a summary of a meeting held on August 10, 2005 with Steve Mays, Director of Regulatory Affairs for AmerisourceBergen.[66] He also reviewed a meeting binder which contained a PowerPoint presentation discussing 21 CFR Section 1301.74's requirements regarding identification and reporting of suspicious orders."[67]  The presentation emphasized that "reporting a suspicious order to DEA does NOT relieve the distributor of the responsibility to maintain effective controls against diversion," which again contradicts Defendants' position that their duty

---

[64] *Id.*; Tr. at 829:10-833:5.

[65] *Id.*

[66] Internet Presentation with AmerisourceBergen, Aug. 10, 2005; DEA-Prevoznik-22; Ex. 16

[67] *Id.*

17

did not extend beyond reporting suspicious orders.[68] The fact that Mr. Prevoznik was not employed at DEA headquarters at the time of the meeting does not prevent him from reviewing the documents to obtain personal knowledge of what transpired at those meetings.

Similarly, Mr. Prevoznik reviewed documents regarding the DEA meeting on December 19, 2011 with representatives of the Healthcare Distribution Management Association.[69] Defendants offer no analysis why his DEA experience, document review and investigation of what transpired at this meeting is insufficient to constitute personal knowledge on his part on behalf of the DEA.

### III. DEFENDANTS' OWN DESIGNATIONS WOULD BE SUBJECT TO THE COURT'S RULING IF THE COURT GRANTS DEFENDANTS' MOTION.

Plaintiffs lodged a continuing objection to Defendants' introduction of selected documents relating to DEA communications with wholesalers prior to 2006.[70] Notwithstanding the continuing objection, Defendants attempt to introduce documents on this very subject matter, which should not be permitted if the Court grants Defendants' motion.[71]

### IV. IF THE COURT IS INCLINED TO GRANT DEFENDANTS' MOTION, MR. PREVOZNIK'S DEPOSITION SHOULD BE PERMITTED TO BE INTRODUCED FOR IMPEACHMENT PURPOSES

As set forth in Section I, the corporate testimony of the DEA, rather than the testimony of individual employees, has heightened significance. Because Plaintiffs were not party to the communications between the DEA and Defendants at which the DEA provided guidance to

---

[68] *Id*. at 7 (emphasis in original); Tr. at 1152:16-1153:2.

[69] Ex. 17; Tr. 957:4-10.

[70] Tr. at 1080:1-1082:16.

[71] Defendants concede that their designations would be excluded if the Court so ruled. Defendants' Motion at p. 4, n.7.

Defendants, the DEA's testimony regarding the content and meaning of these interactions, therefore, is critical to provide the Court with a balanced account of these contested issues.

The fact that Defendants could present their witnesses to testify with respect to interactions with the DEA without a DEA counter voice is troubling. If the Court grants Defendants' motion, Plaintiffs nevertheless should be permitted to introduce Mr. Prevoznik's deposition for impeachment purposes.

## CONCLUSION

For the foregoing reasons, Defendants' motion to preclude the 30(b)(6) deposition testimony of Thomas Prevoznik should be denied.

Dated: May 15, 2021

Respectfully submitted,

| THE CITY OF HUNTINGTON | CABELL COUNTY COMMISSION |
|---|---|
| /s/ *Anne McGinness Kearse* <br> Anne McGinness Kearse (WVSB No 12547) <br> Joseph F. Rice <br> **MOTLEY RICE LLC** <br> 28 Bridgeside Blvd. <br> Mount Pleasant, SC 29464 <br> Tel: 843-216-9000 <br> Fax: 843-216-9450 <br> akearse@motleyrice.com <br> jrice@motleyrice.com <br><br> Linda Singer <br> David I. Ackerman <br> **MOTLEY RICE LLC** <br> 401 9th Street NW, Suite 1001 <br> Washington, DC 20004 <br> Tel: 202-232-5504 <br> Fax: 202-386-9622 <br> lsinger@motleyrice.com <br> dackerman@motleyrice.com | /s/ *Paul T. Farrell Jr.* <br> Paul T. Farrell, Jr. (WVSB Bar No. 7443) <br> **FARRELL & FULLER LLC** <br> 1311 Ponce de Leon Ave., Suite 202 <br> San Juan, Puerto Rico 00907 <br> Mobile: 304-654-8281 <br> paul@farrell.law <br><br> /s/ *Anthony J. Majestro* <br> Anthony J. Majestro (WVSB No. 5165) <br> **POWELL & MAJESTRO, PLLC** <br> 405 Capitol Street, Suite P-1200 <br> Charleston, WV 25301 <br> 304-346-2889 / 304-346-2895 (f) <br> amajestro@powellmajestro.com |

| | |
|---|---|
| Charles R. "Rusty" Webb (WVSB No. 4782) | Michael A. Woelfel (WVSB No. 4106) |
| **The Webb Law Centre, PLLC** | **WOELFEL AND WOELFEL, LLP** |
| 716 Lee Street, East | 801 Eighth Street |
| Charleston, West Virginia 25301 | Huntington, West Virginia 25701 |
| Telephone: (304) 344-9322 | Tel. 304.522.6249 |
| Facsimile: (304) 344-1157 | Fax. 304.522.9282 |
| rusty@rustywebb.com | mikewoelfel3@gmail.com |

## CERTIFICATE OF SERVICE

I certify that on May 15, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Anthony J. Majestro*
Anthony J. Majestro (WVSB 5165)