IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**THE CITY OF HUNTINGTON,**

    **Plaintiff,**

**v.**                                                           **CIVIL ACTION NO. 3:17-01362**

**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**

    **Defendants.**

_____

**CABELL COUNTY COMMISSION,**

    **Plaintiff,**

**v.**                                                          **CIVIL ACTION NO. 3:17-01665**

**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**

    **Defendants.**

_____

## MEMORANDUM OPINION AND ORDER

Pending before the court is defendants' Motion in Limine to Preclude Irrelevant Evidence of First Amendment Immunized Speech and Association Conduct. See ECF No. 1331. Specifically, defendants seek to bar plaintiff from putting on evidence of "(1) litigation filed by Cardinal Health, (2) amicus briefs filed by HDA, (3) lobbying done by HDA, and (4) a publicity campaign conducted by HDA in support of its lobbying efforts." ECF No. 1341 at 2. According to them, under the Noerr-Pennington doctrine, liability cannot be imposed based on First Amendment

activity and, therefore, evidence of such activity should be excluded.  Defendants also argue that  evidence of defendants' petitioning activity is not relevant to any other issue in the case, it should be excluded under Federal Rule of Evidence 401.

"The Noerr-Pennington doctrine derives from the Petition Clause of the First Amendment and provides that `those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct.'" Kearney v. Foley & Lardner, LLP, 590 F.3d 638, 643-44 (9th Cir. 2009) (quoting Sosa v. DIRECTV, Inc., 437 F.3d 923, 929 (9th Cir. 2006)); see also North Carolina Elec. Membership Corp. v. Carolina Power & Light, 666 F.2d 50, 52 (4th Cir.1981) (stating the Noerr-Pennington doctrine "exempts from anti-trust liability any petitioning activity designed to influence legislative bodies or governmental agencies.").  "This immunity extends to persons who petition all types of government agencies—legislatures, administrative agencies, and courts." Cheminor Drugs, Ltd. v. Ethyl Corp., 168 F.3d 119, 122 (3d Cir. 1999); see also Merck-Medco Managed Care, Inc. v. Rite Aid Corp., 22 F. Supp.2d 447, 470 (D. Md. 1998) ("The Noerr-Pennington doctrine protects joint efforts at lobbying all branches of government, including administrative agencies and courts."). Furthermore, although the doctrine emerged in the antitrust context, the Court has "held that Noerr-Pennington principles

`apply with full force in other statutory contexts' outside antitrust." Kearney, 590 F.3d at 644 (quoting Sosa, 437 F.3d at 930).

Although the Noerr-Pennington doctrine has been extended beyond the antitrust context, it has not been applied to bar otherwise admissible evidence. The Noerr-Pennington doctrine does not operate in this manner. As one court explained:

> Secondarily, New GM's Eighth Motion in Limine also seeks to exclude evidence of its "lobbying" of NHTSA on the theory that such conduct is "protected under the First Amendment." (New GM's Eighth Mem. 10). More specifically, New GM contends that such conduct is off limits under the Noerr-Pennington doctrine, which derives its name from two antitrust decisions, Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), and United Mine Workers of America v. Pennington, 381 U.S. 657 (1965), but has evolved to stand for the more general proposition that "lobbying alone cannot form the basis of liability," Hamilton v. Accu-tek, 935 F. Supp. 1307, 1321 (E.D.N.Y. 1996). New GM's argument, however, fails for the same reason its Buckman argument failed: Under the Noerr-Pennington doctrine, a defendant may not be held liable based solely on conduct that is protected by the First Amendment, but that does not mean that such conduct is altogether inadmissible or necessarily lacking in evidentiary value. In fact the Pennington Court itself acknowledged that "[i]t would of course still be within the province of the trial judge to admit this evidence, if he deemed it probative and not unduly prejudicial, under the established judicial rule of evidence that testimony of prior or subsequent transactions, which for some reason are barred from forming the basis for a suit, may nevertheless be introduced if it tends reasonably to show the purpose and character of the particular transactions under scrutiny." Pennington, 381 U.S. at 670 n.3 (emphasis added) (internal quotation marks omitted); see also Hamilton, 935 F. Supp. at 1321 ("A core principle of the Noerr-Pennington doctrine is that lobbying alone cannot form

3

>    the basis of liability, although such activity may have some evidentiary value." (emphasis added)).
>
>    At bottom, New GM's Buckman and Noerr-Pennington arguments (and its related arguments under Rule 403 of the Federal Rules of Evidence) are premised on a concern that a jury could base a finding of liability on an inappropriate ground—either a ground that is preempted by federal law or a ground that is protected by the First Amendment. In the final analysis, however, the proper remedy for those concerns is care in instructing the jury with respect to what it must find in order to hold New GM liable and, if New GM requests it, perhaps also curative instructions making clear to the jury on what it may not base its verdict. See Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 136 (2d Cir. 2008). The proper remedy is not exclusion of evidence that is otherwise relevant and admissible in connection with Plaintiff's claims.

In re: General Motors LLC Ignition Switch Litig., 14-CV-8176, 14-MD-2543 (JMF), 2015 WL 8130449, *2 (S.D.N.Y. Dec. 3, 2015); see also North Carolina Elec. Membership Corp., 666 F.2d at 53 (acknowledging that evidence arguably covered by Noerr-Pennington might nevertheless be admissible if relevant); Merck-Medco Managed Care, Inc., 22 F. Supp.2d at 470 n.55 ("Unless the evidence is unduly prejudicial to the defendants, activities covered by the Noerr-Pennington doctrine are nevertheless admissible to prove matters such as motive, opportunity, and intent.").

Plaintiffs and defendants are in agreement that Noerr-Pennington precludes the imposition of liability for engaging in activity protected by the First Amendment. They also agree that the Noerr-Pennington doctrine does not compel the exclusion of

First Amendment activity if otherwise admissible. That is where any agreement ends. Defendants maintain the aforementioned First Amendment activity is not relevant to any issue in this case while plaintiffs argue otherwise.

Plaintiffs contend that the evidence is relevant to defendants' knowledge of their duties under the CSA and/or what the DEA required. According to plaintiffs, defendants have contended that they had no duty and/or they did not know what their duties were. See ECF No. 1348 at 115. Therefore, plaintiffs contend that the evidence of lobbying, filing an amicus brief, and other protected conduct shows that, contrary to their assertions, defendants recognized what the law required because they tried to change it. From this, plaintiffs argue it can be inferred that defendants' alleged violations of the CSA were intentional. Judge Polster agreed and, in November, concluded that with respect to the Pharmacy defendants in the Track One-B cases, "intentional conduct is a way in which Plaintiffs can prove public nuisance . . . [and] evidence of their lobbying and petitioning activity in isolation may not be relevant, but Plaintiffs may show that such activity goes to issues that are relevant, such as knowledge of the DEA's position regarding SOMS." In re Nat'l Prescription Opiate Litig., No. 1:17-MD-2804, 2020 WL 6450290, at *20 (N.D. Ohio Nov. 3, 2020). The court agrees with plaintiffs and Judge Polster that the

evidence is relevant for these purposes.  Furthermore, the court concludes that the probative value of this evidence is not outweighed by any prejudice to defendants.

For all these reasons, the motion in limine is **DENIED**.

The Clerk is directed to send copies of this Memorandum Opinion and Order to those counsel of record who have registered to receive an electronic NEF.

**IT IS SO ORDERED** this 18th day of May, 2021.

ENTER:

*David A. Faber* (signature)

David A. Faber
Senior United States District Judge