## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

THE CITY OF HUNTINGTON,

      Plaintiff,

v.

AMERISOURCEBERGEN DRUG
CORPORATION, *et al.*

      Defendants.

Civil Action No. 3:17-01362

---

CABELL COUNTY COMMISSION,

      Plaintiff,

v.

AMERISOURCEBERGEN DRUG
CORPORATION, *et al.*

      Defendants.

Civil Action No. 3:17-01665

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE
## THE RULE 30(b)(6) DEPOSITION TESTIMONY OF THOMAS PREVOZNIK

It is Plaintiffs' burden to show that Thomas Prevoznik has personal knowledge to testify about the matters which they designated. Plaintiffs concede, however, that Mr. Prevoznik lacks personal knowledge of the correspondence, meetings, and events identified by Defendants that occurred before he moved to DEA Headquarters in 2012. Nevertheless, Plaintiffs ask this Court to allow Plaintiffs to admit Mr. Prevoznik's ***non-party*** 30(b)(6) deposition testimony based on the flimsy protestation that he read certain historical documents and spoke with other employees prior to being deposed. Whatever exceptions the Rules of Evidence make for Rule 30(b)(6) deposition testimony by ***parties***, there is no end-run around Rule 602's personal knowledge requirement for ***non-parties***. Defendants' motion to exclude Prevoznik's testimony should be granted.

I.   **TESTIMONY OF A NON-PARTY'S RULE 30(B)(6) DESIGNEE MAY NOT BE USED AT TRIAL IN THE ABSENCE OF PERSONAL KNOWLEDGE.**

Rule of Evidence 602 instructs that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.  While there is an exception to this rule related to the use of a party's Rule 30(b)(6) deposition testimony, *see* Fed. R. Civ. P. 32(a)(3), no such exception exists for a use of **non-party** Rule 30(b)(6) deposition testimony at trial.  *See Indus. Eng'g & Dev., Inc. v. Static Control Components, Inc.*, No. 8:12-cv-691-T-24-MAP, 2014 WL 4983912, at *4 (M.D. Fla. Oct. 6, 2014); *Stryker Corp. v. Ridgeway*, No. 1:14-cv-889, 2016 WL 6585007, at *2-3 (W.D. Mich. Feb. 1, 2016).[1]  The cases Plaintiffs rely on do not say otherwise.

The principal authority on which Plaintiffs rely is a Fifth Circuit case that concerned the admissibility of Rule 30(b)(6) testimony of a party-defendant.  *See Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416 (5th Cir. 2006).  That decision  states the unremarkable—and undisputed—proposition that testimony from **a party's** Rule 30(b)(6) designee is admissible at trial, notwithstanding the designee's lack of personal knowledge. *See id.* at 434 & n.20 ("This conclusion rests on the consideration that . . . Federal Rule of Civil Procedure 32(a)(2) [subsequently renumbered 32(a)(3)] permits a party to introduce the deposition of an adversary as part of his substantive proof." (internal citations omitted)).  *Cf. Union Pump Co. v. Centrifugal*

---

[1] *TIG Ins. Co. v. Tyco Int'l Ltd.*, 919 F. Supp. 2d 439, 454 (M.D. Pa. 2013), *as amended* (Apr. 8, 2013) ("Although Rule 30(b)(6) allows a corporate designee to testify to matters within the corporation's knowledge during deposition, at trial the designee  'may not testify to matters outside his own knowledge . . . .'"); *Cooley v. Lincoln Elec. Co.*, 693 F. Supp. 2d 767, 791 (N.D. Ohio 2010) (Rule 30(b)(6) permits "designated persons without personal knowledge to testify on behalf of a corporation," but "do[es] not change the rule that a 30(b)(6) designee cannot 'offer any testimony . . . at trial . . . to the extent that information was hearsay not falling within one of the authorized exceptions." (alterations in original)).

*Tech. Inc.*, 404 F. App'x 899, 907 (5th Cir. 2010) (outside of the exception of Rule 32(a)(3), "a corporate representative may not testify [at trial] to matters outside his own personal knowledge").[2]

Plaintiffs identify only a single, out-of-circuit instance in which a district court has admitted non-party Rule 30(b)(6) testimony notwithstanding the witness's lack of personal knowledge. *Sara Lee Corp. v. Kraft Foods Inc.*, 276 F.R.D. 500, 503 (N.D. Ill. 2011). But the *Sara Lee* court relied on *Brazos River*—without taking account of the fact that it involved the testimony of a ***party-defendant***. It also acknowledged that it was not "strictly" complying with Rule 602, and in so doing, warned of the "real dangers of admitting [30(b)(6)] testimony based on hearsay," which are "multipl[ied] where the Rule 30(b)(6) witness is a third party rather than an opposing party." *Id.* It is not the role of a court to rewrite the Rules of Evidence, and this isolated departure from Rule 602 runs headlong into the robust case law properly interpreting the personal knowledge requirement cited in Defendants' motion.

The drafters of the Rules consciously chose not to include the exception that *Sara Lee* attempts to graft onto Rule 30(b)(6). The Advisory Committee expressly considered the interplay between Rules 30(b)(6) and 32(a)(3) and extended the scope of the latter Rule's exception ***only*** to testimony of an "organization which is ***a party***." Fed. R. Civ. P. 32, advisory committee notes to the 1970 amendments (emphasis added) ("[Rule 32(a)(3)] complements . . . Rule[] 30(b)(6) . . . . The addition [of Rule 32(a)(3)] is appropriate, since the deposition is in substance and effect that of the corporation or other organization which is a party."). Moreover, Rule 602's drafters clearly

---

[2] Plaintiffs' other cases are no more helpful. *PPM Financial, Inc. v. Norandal USA, Inc.*, permitted the introduction of testimony because the non-party corporate designee "directly participated" in the events he testified about. 392 F.3d 889, 894-95 (7th Cir. 2004). *University Healthsystems Consortium v. Unitedhealth Group, Inc.*, found that the 30(b)(6) deposition testimony of ***a party*** could be used to support a summary judgment motion. 68 F. Supp. 3d 917, 920-22 (N.D. Ill. 2014). Neither case addresses the issue at hand.

knew how to create an exception to the personal-knowledge requirement, *see, e.g.*, Fed. R. Evid. 602 ("This rule does not apply to a witness's expert testimony under Rule 703."), but created no such exception for the testimony of a non-party's corporate designee.

Rather than engaging with the relevant evidentiary rules that require the exclusion of Mr. Prevoznik's testimony, Plaintiffs instead recount at length the irrelevant negotiations between counsel that preceded Mr. Prevoznik's deposition. Of course, the parties and DEA understood that Mr. Prevoznik's deposition would be ***available for use*** during future trials, *see* ECF No. 1355 at 2-4, but tellingly, neither party made any agreement regarding the ***admissibility*** of that testimony in whole or part. Indeed, only a month ago the parties entered a stipulation confirming that they "reserve[d] their rights to object to the admissibility of [relevant DEA documents] or to ***any witness's testimony*** about them." *See* ECF No. 1270 (emphasis added). Plaintiffs fail to offer any explanation why the parties' negotiations—which did not even address the issues raised in Defendants' Motion—are relevant to the question now before this Court.

As the cases cited in Defendants' Motion explain, there is an important difference between the rules governing discovery and the rules governing the admission of trial evidence. *See* ECF No. 1310 at 5-6. At trial, the applicable standard is clear: testimony—including a non-party's 30(b)(6) testimony—must be based in personal knowledge. *See* Fed. R. Evid. 602; *Indus. Eng'g & Dev., Inc.*, 2014 WL 4983912, at *4.

## II.   MR. PREVOZNIK LACKS PERSONAL KNOWLEDGE ABOUT THE TOPICS HE TESTIFIED TO DURING HIS DEPOSITION.

At his deposition, Mr. Prevoznik ***admitted*** that he lacks personal knowledge on many of the matters for which Plaintiffs designated his testimony. He testified that he did not attend the 2005 or 2006 meetings with distributors or speak to the individuals who did (who were deposed in this litigation). *See* App'x C (Prevoznik Dep.) at 76:1-8; 175:7-16. He stated that he was not

4

familiar with the April 27, 1984 letter from Thomas Gitchel.  *See* App'x C (Prevoznik Dep.) at 668:22-24.  And he testified that he did not recall a meeting between the DEA and HDMA in 2011. *See* App'x C (Prevoznik Dep.) at 956:3-7.  This is unsurprising, given that Mr. Prevoznik joined the DEA's Philadelphia field office in the 1990s and was not transferred to the Office of Diversion Control at DEA Headquarters until 2012.  *See* App'x D (Prevoznik Dep. Ex. 2).

Mr. Prevoznik's lack of personal knowledge is exemplified by inconsistencies in his deposition testimony.  He testified that DEA never approved suspicious order monitoring programs, but also admitted that DEA did approve a program implemented by ABDC in 1998.[3] He initially testified that distributors should terminate all sales to a customer who places a suspicious order.[4]  But when Defendants cross-examined Mr. Prevoznik, he gave the opposite testimony—that registrants are ***not*** required to withhold all future orders for controlled substances simply because a distributor identified a single order of unusual size, frequency, or pattern.[5]  This wavering testimony about DEA's policy on shipping suspicious orders—an issue that is central to the case—is a clear indication that Mr. Prevoznik lacks personal knowledge about DEA's

---

[3] *Compare* App'x C (Prevoznik Dep.) at 103:6-104:4 ("Q. Is it fair to say then, there was in fact at this point in time, in 1998, a DEA-approved suspicious order monitoring system for controlled substances?  A. I would say no, because there was never a -- DEA never had an approved system. . . .") *with* App'x C (Prevoznik Dep.) at 1139:10-16 ("Q. Okay. Mr. Prevoznik, the DEA approved for implementation nationwide a suspicious order monitoring system that reported suspicious orders to the DEA on a daily basis after the report -- after the orders had already been shipped, correct? A. Yes.").

[4] App'x C (Prevoznik Dep.) at 628:12-629:15 ("Q. . . . Do you agree that if a wholesale distributor gets a flag of a suspicious order, that they've determined to be a suspicious order, and that they block that shipment, that they should terminate all future sales to that same customer until they can rule out that diversion is occurring? . . . THE WITNESS: Yes, I would agree.").

[5] App'x C (Prevoznik Dep.) at 1238:6-20 ("Q. Are [distributors] required to hold the other orders that they don't view to be suspicious, or is it okay for the distributor in that instance to exercise their business judgment and send those nonsuspicious orders out? . . . A. Yes. Q. Yes what? A. They can. Q. Okay. They can ship those other orders out?  A. Yes."); *id*. at 1239:17-23 ("Q. . . . Is it fair to say that DEA has no internal policy defining the circumstances under which a distributor is required to terminate the distribution of controlled substances to a pharmacy? A. Yes.").

interpretation of the CSA and other relevant issues.  Such varying testimony further underscores the wisdom of Rule 602's personal knowledge requirement and the "real danger[]" of admitting testimony at trial in contravention of Rule 602—even if the testimony comes from a Rule 30(b)(6) deponent.  *Sara Lee Corp.*, 276 F.R.D. at 503.

On this record, Plaintiffs cannot establish that Mr. Prevoznik possesses the personal knowledge required to testify as to the deposition testimony that is the subject of this motion.  Instead, they offer two arguments aimed at circumventing the personal-knowledge requirement.

First, Plaintiffs contend that Mr. Prevoznik's "long-tenured experience" at DEA somehow imbues him with sufficient personal knowledge of events that predate his tenure and that he did not participate in.  ECF No. 1355 at 13.  This proposition strains credulity.  Experience gained during employment does not bestow personal knowledge of historical policies that were adopted, implemented, and changed before that employment began.  *See Sovereign Mil. Hospitaller Ord. of Saint John of Jerusalem of Rhodes and of Malta v. Fl. Priory of the Knights Hospitallers of the Sovereign Ord. of Saint John of Jerusalem*, 702 F.3d 1279, 1295 (11th Cir. 2012) (admission of testimony from an organization's director about historical matters on which he had no personal knowledge was an abuse of discretion).  Nor does being an employee in a satellite office of DEA automatically bestow on a deponent personal knowledge about policies, practices, and conduct of high-ranking policy officials within DEA headquarters.  Because Mr. Prevoznik's policy experience began in 2012, his ability to testify based on that experience is similarly time-bound.

In arguing otherwise, Plaintiffs rely on a series of out-of-circuit cases that, on their facts, do not support Plaintiffs' position.  These cases either (1) do not relate to Rule 602 at all, and instead address the separate question of whether a witness must be qualified as an expert under

Rule 702[6] or (2) simply permit a witness to testify as to the general policies in place ***during the course of their employment***, even if they did not participate directly in applying that policy in a particular instance.[7]   None of these cases suggests that current job experience can overcome an absence of personal knowledge about events and policies predating employment.

Second, Plaintiffs contend that Mr. Prevoznik developed personal knowledge by reviewing DEA documents and records.   ECF No. 1355 at 13.   But reviewing a limited set of documents produced in litigation for the purpose of preparing for a Rule 30(b)(6) deposition is not sufficient to establish ***personal*** knowledge; otherwise counsel in this case, who have reviewed more documents than anyone else, could testify based on personal knowledge.   *See Sutton v. Roth, LLC*, 361 F. App'x 543, 550 n.7 (4th Cir. 2010) (noting that sworn statements are of "questionable value" when "based on a review of files rather than direct, personal knowledge of the underlying facts").[8]

_____

[6] *See United States v. Oldrock*, 867 F.3d 934, 940-41 (8th Cir. 2017) (ruling that witness could testify as to her "lay perceptions" of a forensic interview she watched without being certified as an expert); *United States v. STABL, Inc.*, 800 F.3d 476, 487 (8th Cir. 2015) (holding that an EPA compliance officer's testimony about EPA sampling data and permit limitations qualified as lay testimony under Rule 701).

[7] *See First National Bank of Louisville v. Lustig*, 96 F.3d 1554, 1575-76 (5th Cir. 1996) (allowing a bank employee who was "intimately familiar" with lending policies to testify about the approval of a loan during her term of employment); *United States v. Quezada*, 754 F.2d 1190, 1195-96 (5th Cir. 1985) (permitting a border patrol agent to testify about the "'normal processes'" followed in executing a warrant during the time he worked as an officer); *Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 606 (D.N.J. 2004) (admitting plaintiff's declaration about the company's procedures in place while he was Managing Director and COO).

[8] The cases Plaintiffs cite are again distinguishable.   *Agfa-Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518 (7th Cir. 1989), found that witnesses could testify about the inferences they drew from third-party reviews about a product's quality.   *Id.* at 1523.   The court distinguished between personal knowledge gained through perception and/or inferences, which are the subject of admissible testimony, and mere repetition of the statements of others, which is not.   *Id.*   Here, Mr. Prevoznik does not have any personal knowledge (gained through inference or otherwise) about the topics he testified about that predate his employment.   Instead, he testified based only on his after-the-fact review of records and statements made by others during his deposition preparation.   Similarly, the

Plaintiffs spend several pages of their brief describing documents that Mr. Prevoznik reviewed in preparation for his deposition.  ECF No. 1355 at 14-18.  Not only are Plaintiffs' descriptions irrelevant to the question of whether Mr. Prevoznik had personal knowledge, but these one-sided descriptions of various documents omit key details and, significantly, overlook testimony from Mr. Prevoznik confirming his lack of personal knowledge on these subjects.  In particular:

- **1987 Seminar Report:**  There is no evidence Mr. Prevoznik attended this seminar.  Indeed, Mr. Prevoznik was not even employed by DEA at the time of this seminar in 1987.  The Seminar Report includes no statement that distributors must not ship orders determined to be suspicious orders under 21 C.F.R. § 1301.74(b).  ECF No. 1355, Ex. 12.

- **National Wholesale Druggists' Association ("NWDA") Suspicious Order Monitoring System:**  Mr. Prevoznik was not employed by DEA when this system was developed in the 1980s and did not testify that he possessed any sort of personal knowledge about the system.  The NWDA system was approved by DEA and called for distributors to submit a monthly summary report identifying pharmacy customers with variances in ordering.  ECF No. 1355, Ex. 13 at US-DEA-00026143.  The DEA-approved system did not require distributors to block shipment of orders flagged in the monthly report.

- **April 27, 1984 Letter from Thomas Gitchel**:  Mr. Prevoznik was not employed by DEA when this letter was written, and he did not speak to Mr. Gitchel when preparing for his deposition.  *See* App'x C (Prevoznik Dep.) at 1063:20-22; *id.* at 1068:11-14.  Further, Mr.

---

court in *In re Texas E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 870 F. Supp. 1293, 1304 (E.D. Pa. 1992), admitted a declaration in which the declarant "vouche[d] for the [included] statements' truth himself" instead of only repeating statements about events known to others.

Prevoznik testified that he was not familiar with this April 1984 letter from Mr. Gitchel. *Id.* at 668:22-24. In the letter, Mr. Gitchel praised the NWDA suspicious order monitoring system, noting it was an "excellent framework" for complying with 21 C.F.R. § 1301.74(b). ECF No. 1355, Ex. 13 at US-DEA-00026148.

- **May 16, 1984 Letter from Thomas Gitchel:** Mr. Prevoznik was not employed by DEA when this letter was written, and he did not speak to Mr. Gitchel about it. *See* App'x C (Prevoznik Dep.) at 1063:20-22; *id.* at 1068:11-14. Mr. Gitchel confirmed that the NWDA system "will meet the reporting requirements of 21 CFR 1301.74(b)." ECF No. 1355, Ex. 13 at US-DEA-00026150.

- **December 8, 1993 Letter from Gene Haislip:** Mr. Prevoznik did not join the Office of Diversion Control until 2012, and Plaintiffs have not met their burden to show that Mr. Prevoznik has personal knowledge of the guidance that the Office of Diversion Control provided to registrants before he joined that office in 2012. He did not testify as to any such knowledge in his deposition. In this letter from DEA's Office of Diversion Control, Mr. Haislip discussed the DU-45 suspicious order reports submitted by McKesson, and confirmed that McKesson had agreed to remove certain language from its reports at DEA's request. ECF No. 1355, Ex. 14. Mr. Haislip's comments suggest DEA accepted McKesson's DU-45 reports as compliant with the regulations, consistent with other contemporaneous DEA documents.

- **Summary of the Attorney General's 1998 Task Force on Suspicious Orders:** Plaintiffs showed Mr. Prezovnik a one-page summary in the Federal Register of the DEA's 1998 Task Force. ECF No. 1355, Ex. 15. Plaintiffs acknowledge that, in preparation for the deposition, Mr. Prevoznik's review was limited to this ***one-page public summary***. *See*

ECF No. 1355 at 14 n.53 ("Mr. Prevoznik testified that he reviewed . . . [a] public notice regarding the Task Force on Suspicious Orders . . . .").[9]  There is no evidence that Mr. Prevoznik has any personal knowledge about—or even reviewed—the actual Task Force Report or the activities of the Task Force.

- **August 16, 2005 Presentation:** Mr. Prevoznik testified that he did not attend DEA's Distributor Initiative meetings or speak to DEA personnel in attendance (who were also deposed in the multi-district litigation, *see infra* Pt. III).  *See* App'x C (Prevoznik Dep.) at 76:1-8; 175:7-16.   The focus of the Distributor Initiative meetings was combatting diversion by illegal Internet pharmacies.  ECF No. 1355, Ex. 16.  DEA did not announce "do not ship" guidance at these meetings.[10]

- **Summary of December 2011 Meeting with HDMA:** Mr. Prevoznik testified that he did not recall a meeting between the DEA and HDMA in 2011.  *See* App'x C (Prevoznik Dep.) at 956:3-7.  The summary shown to Mr. Prevoznik was prepared by HDMA and produced by ABDC.  ECF No. 1355, Ex. 17.  Reviewing a document neither written nor produced by DEA does not provide Mr. Prevoznik personal knowledge about the DEA's perspective and/or actions related to the meeting.

Plaintiffs did not establish—either at his deposition or in their Opposition—that Mr. Prevoznik has personal knowledge of the pre-2012 policy, meetings, and events underlying the testimony contained in Appendix A to Defendants' Motion. *See* ECF No. 1310-1.  The fact that

---

[9] Mr. Prevoznik further admitted that DEA's Office of Diversion Control—not the Philadelphia Field Office where Mr. Prevoznik worked—was involved in this Task Force.  *See* App'x C (Prevoznik Dep.) at 99:7-22.

[10] Further, this Court already has heard testimony about this meeting from an AmerisourceBergen witness, Stephen Mays, who, unlike Mr. Prevoznik, attended this meeting and has the requisite personal knowledge to testify about it.  Trial Tr. (May 18, 2021) at 192:10-196:2.

Mr. Prevoznik read a subset of documents related to events he did not participate in, and without undertaking to speak to the relevant participants for context, cannot change this fact.  Indeed, Mr. Prevoznik does not—and cannot—have personal knowledge of meetings he did not attend or oversee, communications with registrants which he was not involved in, and policy decisions made by an office he did not work at until 2012.

## III.   ADHERING TO THE FEDERAL RULES OF EVIDENCE DOES NOT UNDULY PREJUDICE PLAINTIFFS.

Because Plaintiffs cannot overcome Mr. Prevoznik's absence of personal knowledge, they spend large portions of their Opposition explaining why excluding Mr. Prevoznik's deposition testimony would cause hardship and purportedly "frustrate the parties' intent."  ECF No. 1355 at 10-11.  In addition to being unsupported in law, Plaintiffs' claim is unsupported in fact.  The parties took ***nine*** DEA depositions in the MDL Track 1 litigation.  During these depositions, Plaintiffs had the opportunity to examine DEA fact witnesses with ***personal*** knowledge of the issues they would like Mr. Prevoznik to testify about through Rule 30(b)(b) deposition designations.  Those fact depositions could be entered into the record.  In addition, Plaintiffs intend to call Joseph Rannazzisi, formerly the head of the Office of Diversion Control, to testify live at trial.  Plaintiffs' purported hardship is a strawman designed to draw attention away from Mr. Prevoznik's inability to testify with personal knowledge.  It should be rejected.

## IV.   MR. PREVOZNIK'S INADMISSIBLE DEPOSITION TESTIMONY CANNOT BE USED TO IMPEACH OTHERS.

Similarly misguided is Plaintiffs' suggestion that because Plaintiffs were not present at certain meetings between Defendants and the DEA, they must be permitted to "impeach" witnesses for the Defendants with Mr. Prevoznik's testimony.  *See* ECF No. 1355 at 18-19.  Setting aside the fact that Plaintiffs have ample fact witness testimony from DEA witnesses with personal knowledge of the facts, *see supra* Part III, there is nothing unusual about one party to a litigation

having direct knowledge about events that the opposing party does not.  The cure for Plaintiffs'

complaint is cross-examination, not the admission of testimony in violation of Rule 602.  In any

case, a party may only impeach a witness with *that* "witness's prior inconsistent statement," not

with the hearsay-based testimony of a third party.  *See* Fed. R. Evid. 613(b).

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion and exclude

Plaintiffs' designations of Mr. Prevoznik's 30(b)(6) deposition testimony on issues about which he

lacks personal knowledge.

Dated:  May 21, 2021

Respectfully Submitted,

*AmerisourceBergen Drug Corporation*
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
Joseph J. Mahady
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com
jmahady@reedsmith.com

***McKesson Corporation***
By Counsel:

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*/s/ Timothy C. Hester*
Timothy C. Hester
Laura Flahive Wu
Andrew P. Stanner
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
lflahivewu@cov.com
astanner@cov.com

*/s/ Paul W. Schmidt*
Paul W. Schmidt
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: (212) 841-1000
pschmidt@cov.com

***Cardinal Health, Inc.***
By Counsel:

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
Jennifer G. Wicht
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
emainigi@wc.com
lheard@wc.com
ahardin@wc.com
jwicht@wc.com

Michael W. Carey (WVSB #635)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
David R. Pogue (WVSB #10806)
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
rfranks@cdkrlaw.com
drpogue@cdkrlaw.com

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on this 21st day of May, 2021, the foregoing

Memorandum was served using the Court's CM/ECF system, which will send notification of such

filing to all counsel of record.

*/s/ Gretchen M. Callas*