IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>   Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, et al.,<br><br>   Defendants. | Civil Action No. 3:17-01362<br>Hon. David A. Faber |
| CABELL COUNTY COMMISSION,<br><br>   Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, et al.,<br><br>   Defendants. | Civil Action No. 3:17-01665<br>Hon. David A. Faber |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANTS' RENEWED
<u>*DAUBERT*</u> MOTION TO EXCLUDE THE OPINIONS OF JAMES E. RAFALSKI**

Defendants submit this supplemental memorandum to bring to the Court's attention two additional developments—both of which occurred after Defendants submitted their reply brief—that each independently supports the exclusion of Mr. Rafalski's testimony.

*First*, the testimony of Joseph Rannazzisi fatally undermined the methodology that Mr. Rafalski used to arrive at his 90% figure. According to Mr. Rannazzisi, it is not appropriate to identify a "suspicious order" by applying an overly mechanical numerical threshold that is entirely untethered from real-world events. 6/8 Tr. at 111:11–24, 183:22–184:2; 6/9 Tr. at 81:11–13 ("A suspicious order is not just, oh, it's over the threshold. It could be over threshold because it's next

1

to a cancer center or palliative care center, a hospital."). Yet that is precisely how Mr. Rafalski's flagging methodologies all work: they exclude all orders above different numerical thresholds (and, in the case of Method A, all subsequent orders irrespective of whether they exceed the thresholds) without regard to any real-world events. 5/26 Tr. at 84:12–95:21, 96:10–16, 97:7–12, 231:9–14.[1]

Mr. Rannazzisi's testimony also critically undermined the already facially implausible outcome of Mr. Rafalski's methodology—i.e., that upwards of 90% of all orders received by Defendants were "suspicious." In particular, Mr. Rannazzisi testified that, if there is proper reporting, "the volume of suspicious orders that should come in is ***not a huge quantity of orders***. It shouldn't be like boxes of orders." 6/7 Tr. at 219:15–17 (emphasis added). That testimony is flatly inconsistent with Mr. Rafalski's flagging methodologies, which purported to identify literally ***millions of orders*** as suspicious. 5/26 Tr. at 96:17–97:6.[2] For these additional reasons, the Court should exclude Mr. Rafalski's unreliable flagging methodologies and related opinions.

*Second*, in recent representations to both Defendants and the Court, Plaintiffs reversed their prior representations and disavowed re-calling Dr. McCann as a witness. *See* Ex. 1 (Email from D. Ackerman to Defense Counsel (June 7, 2021)); 6/8 Tr. at 122:8–124:25. Because Dr. McCann

---

[1] Notably, the record shows that Defendants' post-2007 systems and policies all functioned in a manner consistent with Mr. Rannazzisi's testimony: Defendants in the first instance blocked all orders that exceeded thresholds, but did not identify orders as "suspicious" until after they conducted further due diligence on the customer placing the order. *See, e.g.*, 5/12 Tr. at 203:11–17; 5/20 Tr. at 230:10–14; 5/25 Tr. at 9:2–12, 55:12–17, 77:12–19, 78:3–7, 79:25–80:9, 80:17–25, 81:1–3, 81:12–18.

[2] As described in Defendants' prior briefing, Mr. Rafalski at times claimed that his flagging methodologies identified suspicious orders and at other times disavowed that assertion. *See* Memorandum of Law in Support of Defendants' Renewed *Daubert* Motion to Exclude the Opinions of James E. Rafalski ("Def. Mem."), ECF No. 1386 at 29–30. But, as Defendants also previously explained, if Mr. Rafalski's flagged orders were *not* meant to identify "suspicious orders" within the meaning of the applicable regulations, there is no basis for the assertion that Defendants should have blocked the orders. *See id.*

provides the critical underpinnings of Mr. Rafalski's methodologies, and because it is now clear that Dr. McCann will not provide the necessary foundation for those methodologies at trial, Mr. Rafalski's analyses must be excluded.

Under Rule 702, this Court has the obligation to ensure that Mr. Rafalski's testimony "rests on a **reliable foundation** and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) (emphasis added). "Reports stating an expert opinion 'are not admissible without the preparer being present in court to testify as to his qualifications as an expert and to be cross-examined on the substance.'" *Tokio Marine & Fire Ins. Co., LTD. v. Norfolk & W. Ry. Co.*, 172 F.3d 44 (4th Cir. 1999) (unpublished) (quoting *Forward Commc'ns. Corp. v. U.S.*, 608 F.2d 485, 511 (Ct. Cl. 1979)). While an "expert is of course permitted to testify to an opinion formed on the basis of information that is handed to rather than developed by him," the Court must nonetheless "make sure that the expert isn't being used as a vehicle for circumventing the rules of evidence." *Matter of James Wilson Assocs.*, 965 F.2d 160, 172–73 (7th Cir. 1992).

Here, Plaintiffs are attempting to circumvent the rules of evidence in precisely that impermissible manner. Mr. Rafalski admitted that he did not personally prepare his flagging analyses; Dr. McCann did. *See* 5/26 Tr. at 210:12–15 ("Q. In terms of how your methodologies were implemented, each of the six methodologies were performed by Dr. McCann; true? A. Yes."). And Mr. Rafalski further admitted that, in attempting to implement the flagging methodologies, Dr. McCann had to "make certain design choices to operationalize the methodologies," and that Mr. Rafalski was not familiar with all of those design choices. *Id.* at 213:8-11; *see also id.* at 213:21–24 ("Q. When we talked in your deposition, you weren't able to tell me all the assumptions he made, correct? A. That's correct. And I wouldn't be able to tell you right now either."). Thus, without establishing the reliability of Dr. McCann's calculations

***through testimony from Dr. McCann that is subject to cross-examination***, there is no reliable foundation for Mr. Rafalski's flagging methodologies in the record.

Plaintiffs themselves admitted that, without a proper foundation being laid by Dr. McCann, Mr. Rafalski's testimony would not be admissible. When Defendants objected to Mr. Rafalski offering testimony based on Dr. McCann's analyses because those analyses were not in the record, Plaintiffs' counsel argued that Mr. Rafalski's testimony was "***conditionally relevant***":

> THE COURT: Well, how -- if [Mr. Rafalski]'s relying on Dr. McCann and Dr. McCann's testimony is … not in the record, how are you going to get around that problem?
>
> MR. FARRELL: I think it's conditional relevancy. … So I think Mr. Rafalski is going to say these are the results of the tests [Dr. McCann] is going to put on.

5/19 Tr. at 231:22–232:5. Accordingly, and as Plaintiffs' counsel have conceded, the admissibility of Mr. Rafalski's testimony is dependent on a proper foundation being established by Dr. McCann; because it is now clear that Dr. McCann will not actually lay that foundation, Mr. Rafalski's testimony should be excluded.

*Matter of James Wilson Associates* is instructive. There, a party's architect retained a consulting engineer to assess the state of repair of a building. As the court explained, the "architect could use what the engineer told him to offer an opinion within the architect's domain of expertise, but he could not testify for the purpose of vouching for the truth of what the engineer had told him." 965 F.2d at 173. On that basis, the trial court excluded the expert's testimony relating to matters within the engineer's domain of expertise, and the circuit court affirmed. *See id.* (explaining that it is "improper to use an expert witness as a screen against cross-examination"); *see also Tokio Marine & Fire Ins. Co., Ltd.*, 172 F.3d 44 (excluding "valuation opinion" of non-testifying expert that was sponsored by a testifying expert because "the cross-examination of [the

4

testifying expert] could reveal nothing about the mental processes by which [the non-testifying expert] reached his opinion").

The same is true here. Plaintiffs cannot shield Dr. McCann from cross-examination regarding his analyses by running them through Mr. Rafalski. Even assuming that Mr. Rafalski could offer opinions about how a valid flagging methodology should be designed, he avowedly could not testify that the analyses spit out by Dr. McCann's computer code properly implement that methodology because that is Dr. McCann's domain. *See, e.g.*, 5/26 Tr. at 210:21–211:1 ("Q. Dr. McCann did not provide you with a copy of his computer code for you to review; correct? A. He did not, but if he did, Your Honor, I probably wouldn't have known -- it wouldn't have been usable to me.").

It would be particularly improper to allow Mr. Rafalski to rely on Dr. McCann's out-of-court analyses in this case, given Plaintiffs' repeated representations to the Court and Defendants that Dr. McCann would be called twice, and given Plaintiffs' use of those representations to limit Defendants' questioning of Dr. McCann. Specifically, Plaintiffs asked for leave to call Dr. McCann twice, under the stipulated representation that his opinions in Phase 1 would be limited to specific topics and that he would later be recalled to testify about the flagging methodologies in Phase 2. *See* ECF No. 1263. Then, during Dr. McCann's first examination, Plaintiffs invoked their promise to recall Dr. McCann as a basis for objecting to Defendants' examining Dr. McCann about those methodologies when he was on the stand, and Defendants agreed to limit the scope of their examination:

> MR. MOUGEY: Objection, Your Honor. The parties have stipulated that the **SOMS and the suspicious order flagging is in phase two of Dr. McCann's testimony**. We bifurcated it. I didn't mention it once during our entire day, day and a half. Mr. Schmidt does not get a free testimony or deposition at this point onto what's going to occur in two weeks. **We all know Dr. McCann is coming**

5

> ***back to finish the rest of his testimony. It's appropriate to only question him on that part by agreement of the parties.***
>
> MR. SCHMIDT: Mr. Mougey is accurate as to us acquiescing in the request to bring him twice on those terms. All I'm asking -- I'm not going to -- this is literally my last question on the subject. It's a foundational question.

5/11 Tr. at 171:2–16 (emphasis added).

After Dr. McCann's first phase of testimony, when Defendants asked that Dr. McCann be recalled to provide his flagging methodology testimony ***before*** Dr. Rafalski could testify about that methodology, Plaintiffs successfully opposed that request by representing to the Court that Mr. Rafalski could give his testimony under the doctrine of conditional relevance because Plaintiffs would be recalling Dr. McCann. *See* 5/19 Tr. at 231:3–6 (explaining that Dr. McCann would be recalled after Dr. Rafalski); 5/20 Tr. at 7:21–22 ("[T]he order of presentation is left to the discretion of the party himself"), *id.* at 8:9–12 ("So, what we're proposing here is that -- is that the expert rely on data that is not only admissible, but that will be admitted later in the trial."). In doing so, they expressly conceded that Dr. McCann had to be recalled:

> MR. MAJESTRO: …. [T]he testimony is interrelated. So, Dr. McCann is relying on Mr. Rafalski's methods. Mr. Rafalski is relying on Dr. McCann's calculations. ***For us to get that testimony in, both -- we have to have both of the testimonies.***

5/20 Tr. at 10:7–10 (emphasis added). Especially where Plaintiffs objected to the questioning of Dr. McCann about his flagging methodologies and represented to the Court that he would be "coming back" to testify about those methodologies, Mr. Rafalski cannot rely on Dr. McCann's analyses now that we know Dr. McCann will not be coming back.

In short, because it is now clear that Dr. McCann will not provide the necessary foundation for Mr. Rafalski's flagging opinions, those opinions are not "conditionally relevant." Instead, they lack a reliable foundation and must be excluded. *See* Fed. R. Evid. 702, 705.

6

Dated: June 10, 2021               Respectfully Submitted,

**McKesson Corporation**
By Counsel:

*/s/ Timothy C. Hester*
Timothy C. Hester
Christian J. Pistilli
Laura Flahive Wu
Andrew P. Stanner
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
cpistilli@cov.com
lflahivewu@cov.com
astanner@cov.com

*/s/ Paul W. Schmidt*
Paul W. Schmidt
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York
Tel: (212) 841-1000
pschmidt@cov.com

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

**AmerisourceBergen Drug Corporation**
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553

7

Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
Joseph J. Mahady
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
nicholas@reedsmith.com
smcclure@reedsmith.com
jmahady@reedsmith.com

**Cardinal Health, Inc.**
By Counsel:

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Jennifer G. Wicht
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
emainigi@wc.com
lheard@wc.com
jwicht@wc.com
ahardin@wc.com

Michael W. Carey (WVSB #635)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
David R. Pogue (WVSB #10806)
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234

8

Facsimile: (304) 342-1105
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
rfranks@cdkrlaw.com
drpogue@cdkrlaw.com

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 10th day of June, 2021, the foregoing "SUPPLEMENTAL MEMORANDUM IN SUPPORT OF DEFENDANTS' RENEWED DAUBERT MOTION TO EXCLUDE THE OPINIONS OF JAMES E. RAFALSKI" was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Timothy C. Hester*
Timothy C. Hester (DC 370707)
