IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON, <br><br> Plaintiff, <br><br> v. <br><br> AMERISOURCEBERGEN DRUG CORPORATION, *et al.* <br><br> Defendants. | Civil Action No. 3:17-01362 |
| CABELL COUNTY COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> AMERISOURCEBERGEN DRUG CORPORATION, *et al.* <br><br> Defendants. | Civil Action No. 3:17-01665 |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF EXCLUSION OF DECLARATION OF DEFENDANT CARDINAL HEALTH, INC. ON CONFIDENTIAL TRADE SECRET STATUS OF ITS ARCOS DATA**

Plaintiffs urge this Court to reconsider its decision to exclude from evidence (i) the 2016 declaration of a Cardinal Health employee (ii) in an unrelated District of Minnesota case (iii) opposing public disclosure of ARCOS information identifying Cardinal Health's distribution of certain controlled substances (iv) to specific customers in Georgia (the "*Madel* Declaration"). Plaintiffs do not even attempt to argue that the *Madel* Declaration is probative of whether Defendants caused a public nuisance in Cabell County and Huntington. Plainly, it is not.

Plaintiffs contend the declaration is relevant because "Defendants have affirmatively brought into issue whether and why the United States Drug Enforcement Agency [sic] ('DEA')

granted or denied Defendants access to one another's ARCOS data" to aid in their monitoring of distributions to their customers. Mot. 1–2. But the *Madel* Declaration does not concern that question. It concerns a different question that no one in this trial has asked—whether the public (including Cardinal Health's business competitors) should gain unfettered access to a limited set of ARCOS data that would tie specific distributors to specific customers. Cardinal Health did not then—and does not now—oppose disclosure of ***anonymized*** ARCOS data that does not tie a specific distributor to specific customers, but reflects aggregate distributions to its customers. Such disclosure would aid the identification and reporting of suspicious orders ***without*** implicating competitive concerns. The *Madel* Declaration therefore "is of [no] consequence in determining the action" and should remain excluded under Federal Rule of Evidence 401.

## Background Facts

In *Madel v. U.S. Dep't of Justice*, No. 0:13-cv-2832-PAM-FLN (D. Minn.), Christopher Madel filed a Freedom of Information Act ("FOIA") request to DEA seeking ARCOS data related to oxycodone transactions in Georgia by Cardinal Health, CVS Caremark, Walgreen Co., ABDC, and McKesson. Madel's requests sought data that would tie specific distributions from each of the five distributors to the "the identity of each person [i.e., pharmacy] in the State of Georgia that [each of the five distributors] distributed the oxycodone to." *Madel v. U.S. Dep't of Justice*, 784 F.3d 448, 451 & n.1 (8th Cir. 2015). The "*Madel* Declaration" was submitted by Cardinal Health to the District Court in support of its opposition to the FOIA request. In that Declaration, Cardinal Health's Vice President of Sales Operations, Tina Lantz, explained that competitive harms could arise from public disclosure of ARCOS data that tied specific distributors to specific customers:

> The ARCOS information reveals Cardinal Health's distribution of certain controlled substances to the registrants in the state of Georgia. ***Disclosure of the information***

2

> *would enable Cardinal Health's competitors to identify every pharmacy in Georgia with which Cardinal Health has conducted business since 2006, which would in turn allow competitors to easily target existing Cardinal Health customers and attempt to take away business.* Disclosing the information would also reveal sensitive and confidential data regarding Cardinal Health's operations, which could be used by competitors to gain insight into Cardinal Health's inventory management and distribution patterns relating to size and frequency of its shipments.
>
> …
>
> Data fields that identify Cardinal Health's customers, many of whom may be current customers, would allow our competitors to expand their customer base to more accurately target Cardinal Health's customers. This is one of the reasons that Cardinal Health does not make public its list of customers. *Revealing the identity of the customer alone is likely to cause competitive harm to Cardinal Health*.
>
> …
>
> The ARCOS information identifies historical orders which *can easily be analyzed by competitors to determine ordering patterns of Cardinal Health's customers*. Competitors who know the historical volumes ordered by certain customers can use the data to make predictions regarding which customers to pursue and what types of pricing deals to offer to those customers. *Releasing older data would permit competitors to analyze distribution trends, and target Cardinal Health's customers by offering a pricing deal that is informed by the prior purchases from Cardinal Health.*

Mot. 4 (quoting P-16704 at ¶¶ 7–8, 10).[1]

## Argument

The *Madel* Declaration described the competitive risk associated with public disclosure of ARCOS data tying specific distributors to specific customers. That risk was all the greater because the FOIA request sought disclosure of ARCOS data relating only to Cardinal Health and the other four distributors. There are scores of registered distributors nationwide, however, plus a number of regional distributors that serve the Georgia market, and public disclosure of the data relating only to Cardinal Health, CVS Caremark, Walgreen Co., ABDC, and McKesson would enable those regional distributors and others to use that data to their competitive advantage while keeping their own distribution data confidential. It is therefore unsurprising that Cardinal Health would oppose public disclosure of that detailed data set.

---

[1] All emphases are added unless otherwise indicated.

That data set, in any event, was limited to Georgia customers and has no connection to Cabell County or the City of Huntington.  More importantly, it is irrelevant to the question of whether Cardinal Health and the other distributors sought and were denied access by the DEA to *anonymized* ARCOS data for use in their anti-diversion efforts.

The very testimony Plaintiffs cite in support of reconsideration illustrates the distinction between data that identifies distributor and customer and anonymized data.  David May (ABDC), Michael Oriente (McKesson), and Michael Mone (Cardinal Health) each testified that, until recently, distributors did not have access to ARCOS data that would show whether the company's pharmacy customers had more than one supplier and, if so, what amounts of certain controlled substances that pharmacy customer was obtaining from other suppliers.  *See* Mot. 2–3.  They did not speak to whether DEA should disclose (to distributors or to the public) *which* distributors supply *which* amounts to *which* customers.  Mr. Mone's testimony makes clear that Defendants asked DEA only for *de-identified* distribution data for its own customers to see the total volumes they were receiving across all suppliers—not data that would allow anyone, including competitors, to see what each distributor was supplying:

> Q. Did Cardinal Health request ARCOS information from the DEA?
>
> A. Yes, we did.
>
> Q. Why?
>
> A. Well, if you go back to the question you asked about who can see all of the data when there are multiple suppliers, there is a point in time when *we requested the ARCOS data so that we would know not, not the 'who' of the other suppliers, just the 'what' and the volume of the 'what' so we could add that into our evaluation about the customer*.
>
> Q. Cardinal Health wanted to integrate into its evaluation process *how much other distributors were sending to a particular pharmacy*.  Is that fair?
>
> A. Yeah, *the rest of the story.*

4

Mot. 2–3 (quoting Trial Tr. (May 20, 2021) at 218:2-24 (Michael Mone)).  Similarly, Mr. Oriente testified that McKesson would have found it useful to have access to ARCOS data because "[i]t would have given us a full picture of the purchases by the pharmacy registrant.  Prior to having access to that information, McKesson could only see what McKesson sold to that customer."  Trial Tr. (May 25, 2021) at 37:14-21.

Plaintiffs' own witnesses, including DEA's former head of the Office of Diversion Control Joseph Rannazzisi, acknowledged that distributors asked for, and DEA refused to provide, ARCOS aggregate order information.  *See* Trial Tr. (June 8, 2021) at 168:18-25 ("Q. … Did defendants ask for access to ARCOS data that would show them what other distributors shipped? A.  I believe defendants did at one time ask for that data.  Q. And did DEA provide that data to them?  A. No, we did not.");  *see also* Trial Tr. (June 9, 2021) at 156:20-25 (confirming that Ranazzisi never took any steps to grant distributors greater access to ARCOS data while at DEA).  Plaintiffs' expert James Rafalski likewise testified that DEA refused to allow distributors any access to ARCOS data until 2018, citing competitive concerns:

> THE COURT: Do you know why DEA did not permit disclosure before 2018?
>
> THE WITNESS: For a while, Your Honor, they used to say it was proprietary.  But then I, I think also they felt there, **there was input from distributors and manufacturers, that they would use the data as a tool to go in and try to see what market share was and then try to take—fight each other on, you know, where they knew that they could market a product and where it was being distributed**.  I think there was that visibility that was a problem.

Trial Tr. (May 26, 2021) at 177:4-178:23;  Trial Tr. (May 20, 2021) at 218:2-24 (Michael Mone: "Q. Did the DEA provide that information? A. They did not.  Q. Why not?  A. To the best of my recollection, they claimed it was proprietary information.").  Thus, the question of whether "the United States Drug Enforcement Agency [sic] ('DEA') granted or denied Defendants access to one another's ARCOS data," Mot. 1–2, has already been answered:  It undisputedly denied

access.  Nor is there any dispute that part of the reason DEA did not provide complete ARCOS data (including identifying information) to the public was because of concerns about the release of proprietary customer information.  But, again, that is irrelevant here because Defendants never claimed to have sought the public release of non-anonymized ARCOS data.  Tellingly, when distributors finally gained access to ARCOS data by an act of Congress in 2018, it was aggregated by customer, and thereby *anonymized*—exactly as distributors had requested.[2]

## CONCLUSION

In sum, the *Madel* Declaration is entirely consistent with Defendants' repeated requests—requests which were consistently denied by DEA—for *de-identified* ARCOS data.  For these reasons, the Court should not reconsider its prior ruling, and the irrelevant *Madel* Declaration should not be admitted into evidence.

---

[2] *See* 21 U.S.C. § 827 ("The Attorney General shall, not less frequently than quarterly, make the following information available to manufacturer and distributor registrants through [ARCOS]: (A) The total number of distributor registrants that distribute controlled substances to a pharmacy or practitioner registrant, aggregated by the name and address of each pharmacy and practitioner registrant; (B) The total quantity and type of opioids distributed, listed by Administration Controlled Substances Code Number, to each pharmacy and practitioner registrant described in subparagraph (A).").

Dated: June 10, 2021

Respectfully submitted,
*/s/ Steven R. Ruby*
Michael W. Carey (WVSB No. 635)
Steven R. Ruby (WVSB No. 10752)
David R. Pogue (WVSB No. 10806)
Raymond S. Franks II (WVSB No. 6523)
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
drpogue@cdkrlaw.com
rsfranks@cdkrlaw.com

*/s/ Ashley W. Hardin*
Enu Mainigi
F. Lane Heard III
Jennifer G. Wicht
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
lheard @wc.com
jwicht@wc.com
ahardin@wc.com

*Counsel for Cardinal Health, Inc.*

*/s/ Timothy C. Hester*
Timothy C. Hester (DC 370707)
Laura Flahive Wu
Andrew P. Stanner
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
lflahivewu@cov.com
astanner@cov.com

7

*/s/ Paul W. Schmidt*
Paul W. Schmidt
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: (212) 841-1000
pschmidt@cov.com

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*Counsel for McKesson Corporation*

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, WV 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com
*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com

*Counsel for AmerisourceBergen Drug Corporation*

8

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 10th day of June, 2021, the foregoing "Defendants' Opposition to Plaintiffs' Motion for Reconsideration of Exclusion of Declaration of Defendant Cardinal Health, Inc. on Confidential Trade Secret Status of Its ARCOS Data" was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Steven R. Ruby*
Steven R. Ruby (WVSB #10752)
