**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

THE CITY OF HUNTINGTON,

       Plaintiff,

v.

AMERISOURCEBERGEN DRUG
CORPORATION, *et al.*

       Defendants.

_____

CABELL COUNTY COMMISSION,

       Plaintiff,

v.

AMERISOURCEBERGEN DRUG
CORPORATION, *et al.*

       Defendants.

Civil Action No. 3:17-01362

Civil Action No. 3:17-01665

**DEFENDANTS' BENCH BRIEF REGARDING THE INADMISSIBILITY
OF DR. ALEXANDER'S EXPERT WORK PRODUCT**

## INTRODUCTION

The issue before the Court is a simple one:  may Plaintiffs introduce into evidence the core of Dr. G. Caleb Alexander's expert opinion not through his testimony, but instead through his written report—in particular, a complex, 47-page "redress model" that includes hundreds of data inputs and pulls on countless hearsay sources.  The answer is "no."  Dr. Alexander's redress model is not a summary of his report or analysis (as even Plaintiffs' counsel conceded), but instead constitutes 47 pages pulled verbatim from the heart of his expert report, presented to the Court in precisely the form it was disclosed to Defendants under Federal Rule of Civil Procedure 26.  To admit the redress model into evidence is to admit Dr. Alexander's report into evidence—something the Rules of Evidence forbid.

Defendants did not object to limited use of the redress model as a demonstrative during Dr. Alexander's testimony, but the law is clear that Plaintiffs cannot separately admit Dr. Alexander's expert report into evidence—especially where the document contains information on which Dr. Alexander provided no testimony at all.  And this is so despite Plaintiffs' desire to streamline the presentation of the evidence or save time.  Put simply, Dr. Alexander's expert report is ***not evidence***, and no rule of evidence permits its admission.

## ARGUMENT

It is well-established that expert reports are inadmissible hearsay and may not be admitted as evidence.[1]  For that reason, this Court has on multiple occasions held that the out-of-court work

---

[1] *See, e.g.*, *Jones ex rel. United States v. Mass. Gen. Hosp.*, 780 F.3d 479, 494 (1st Cir. 2015) (affirming exclusion of expert report appendix from evidence because the report was "a quintessential example of hearsay"); *Hunt v. City of Portland*, 599 F. App'x 620, 621 (9th Cir. 2013) ("With respect to the expert's written report, we conclude that the report is hearsay to which no hearsay exception applies."); *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728 (6th Cir. 1994) (concluding the admission of expert reports under Rules 702 and 703 was improper and

product generated by Plaintiffs' experts—including exhibits to written reports—is not independently admissible evidence.[2]  And Plaintiffs agree, having previously conceded that "expert reports are ordinarily not admitted into evidence."[3]  Dr. Alexander's redress model is expert work product—indeed, it is the key component of Dr. Alexander's report that sets forth all of the analyses and calculations described in the body of his report.  It therefore implicates all of the concerns inherent in hearsay evidence (*e.g.*, it depends on hundreds of unreliable and unexplained hearsay sources) and cannot be admitted.

In attempting to circumvent this simple proposition, Plaintiffs cite Rule 611(a) and 703. But those rules—which speak to (1) the Court's "control over the mode and order of examining witnesses and presenting ***evidence***," *see* Fed. R. Evid. 611(a), and (2) the types of materials that

---

holding that Rules 702 and 703 do not "permit the admission of materials, relied on by an expert witness, for the truth of the matters they contain if the materials are otherwise inadmissible"); *Murphy v. Cambridge Integrated Servs. Grp., Inc.*, 2010 WL 2998790, at *12 (D. Md. July 27, 2010) ("it is settled law in this jurisdiction that expert reports are inadmissible hearsay"); *Rawers v. United States*, 488 F. Supp. 3d 1059, 1104 (D.N.M. 2020) (concluding that "[e]xpert reports, as the Court has consistently concluded, are inadmissible hearsay" and collecting cases); *Page v. Va. State Bd. Of Elections*, 2015 WL 3604029, at *30 & n.42 (E.D. Va. Jun. 5, 2015) ("expert reports are hearsay and hence not admissible usually"); *SMD Software, Inc. v. Emove, Inc.*, 2014 WL 12634915, at *3 (E.D.N.C. May 5, 2014) ("[T]he great weight of authority appears to hold that expert reports are generally inadmissible hearsay absent a contrary stipulation by the parties."); *Bianco v. Globus Med., Inc.*, 30 F. Supp. 3d 565, 570 (E.D. Tex. 2014) ("As the Court previously advised the parties in this case, expert … are hearsay and, absent agreement to their admission, are inadmissible. … Such reports are out-of-court statements by witnesses offered for their truth, and therefore fall within the definition of hearsay in Federal Rule of Evidence 801(c)."); *In re Quigley Co., Inc.*, 437 B.R. 102, 151 (Bankr. S.D.N.Y. 2010) ("As a rule, expert reports are hearsay."); *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 328–329 (N.D. Ill. 2008) (holding that expert report "would not be admissible at trial even if it were not stricken, for it is hearsay in its most pristine form" and collecting cases that "generally hold that expert reports may not be received in evidence without violating the hearsay rule or Rule 403").

[2] *See, e.g.*, 5/4 Tr. at 169:13–170:6 (Court denying admission of Dr. Corey Waller's expert report); 6/10 Tr. at 224:23–226:6 (Court denying admission of exhibits to Dr. Gordon Smith's expert report and concluding "[h]is report's not admissible in and of itself").

[3] *See* Pls.' Trial Mem. Regarding Admissibility of Summaries of Voluminous Data Under Fed. R. Evid. 1006 (ECF No. 1346) at 11.

experts may rely on in forming their opinions, *see* Fed. R. Evid. 703—do not provide an end-run around the simple rule prohibiting admission of expert reports at trial.

*First*, as for Rule 703, while experts are "entitled to *testify* as to their opinion, and rely on inadmissible evidence," "[n]either their written opinions nor the materials on which they relied were admissible under Rules 702 and 703." *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 729 (6th Cir. 1994) (emphasis in original).

*Second*, as for Rule 611(a)(2), it states that "[t]he Court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: … (2) avoid wasting time." Fed. R. Evid. 611(a)(2). The Rule thus comes into play only with respect to "evidence" and "witnesses"—it provides no independent grounds for admissibility. *See, e.g.*, *United States v. Colomb*, 419 F.3d 292, 297 (5th Cir. 2005) ("Unlike the vast majority of the other Evidence Rules, Rule 611 does not purport to regulate the admissibility of evidence. Instead, the rule gives trial courts broad powers to control the 'mode and order. of what is otherwise admissible evidence." (quoting 28 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* 6162, at 338 (1993)). Dr. Alexander's redress model is not "evidence." And because expert reports are not evidence, rules concerning how "***evidence***" may be presented during trial do nothing to answer the question whether an expert report is proper admissible evidence in the first place.

To the extent Rule 611(a) permits anything, it is the introduction of a "***summary chart*** … of evidence ***already in the record***." *See, e.g.*, *United States v. Simmons*, 2021 WL 2176575, at *11 (4th Cir. May 28, 2021); *United States v. Janati*, 374 F.3d 263, 273 (4th Cir. 2004) (concluding that summary charts prepared under Rule 611(a) may be displayed to assist the understanding of evidence but "are not evidence themselves"); *United States v. Goldberg*, 401 F.2d 644, 647 (2d

Cir. 1968) (permitting introduction of a summary chart that was "constructed **exclusively** from the testimony of the government's witnesses and …. business records, which had been previously admitted into evidence" (emphasis added)).[4]  Here, the redress model plainly does not summarize evidence already in the record.  Instead, Plaintiffs are attempting to introduce Dr. Alexander's expert report **in lieu of** his testimony.  This is not permitted under any reading of Rule 611(a).

To be sure, Rule 1006 sometimes permits the introduction of summary exhibits "as a surrogate for underlying voluminous records."  *Simmons*, 2021 WL 2176575, at *11 (distinguishing between the permissible use of summary charts under Rules 611(a) and 1006); *see also* Defs.' Bench Brief Regarding the Inadmissibility of Dr. Craig J. McCann's Demonstrative Charts (ECF No. 1347) (detailing the substantial limitations on use of summary charts under Rule 1006).  But as Plaintiffs' counsel representing the City of Huntington said regarding the admissibility of Dr. Alexander's "redress model," Plaintiffs **explicitly disavow** reliance on Rule 1006 and did not move for admission on that ground.

In any event, Dr. Alexander's redress model cannot be admitted under Rule 1006 because it is not a "summary" of anything.[5]  Instead, it is a verbatim copy of the entirety of the key, 47-

---

[4]  Even in the narrow circumstance described in *Simmons*, the finder of fact is prohibited from "relying on that [summary] chart as 'independent' evidence."  *United States v. Johnson*, 54 F.3d 1150, 1159 (4th Cir. 1995) (cited by *Simmons*, 2021 WL 2176575, at *11); *see also Goldberg*, 401 F.2d at 647 ("The court carefully charged the jury that these resumes were not themselves independent evidence, but only 'visual representations of information or data as set forth in the testimony of a witness or in documents that are exhibits in evidence.'").

[5] In support of their argument on Dr. McCann's summary charts, Plaintiffs stated that "[w]hile expert reports are ordinarily not admitted into evidence, summaries relied upon by experts *that comply with Rule 1006* are admissible."  *See* Pls.' Trial Mem. Regarding Admissibility of Summaries of Voluminous Data Under Fed. R. Evid. 1006 (ECF No. 1346) at 11 (emphasis added).  As evidenced by Plaintiffs' disavowal of Rule 1006 here, Dr. Alexander's redress model is plainly the former, and not the latter.  As such, cases addressing the admissibility of Rule 1006 summaries are not relevant to the question currently before the Court.

page exhibit to Dr. Alexander's expert report. It represents the core of his expert opinion on supposed abatement needs in Cabell/Huntington—and, critically, is the **only portion** of Alexander's analysis relied on by Plaintiffs' expert George Barrett to calculate the total cost of Plaintiffs' proposed "abatement" plan. *See* Ex. A (Barrett Dep. Tr.) at 46:6–9 ("[T]he scope of my work was limited to calculating the future value of the costs which had been identified in Doctor Alexander's redress model.").[6]

## CONCLUSION

By asking to admit the redress model as evidence, Plaintiffs are trying to introduce the core of Dr. Alexander's expert report as substantive evidence. That is forbidden. This Court, accordingly, should deny Plaintiffs request to admit the redress model as evidence.

---

[6] Plaintiffs' attempt to introduce Dr. Alexander's expert report into the record, uncoupled from any testimony from Dr. Alexander about the inputs, assumptions, and data therein, will also implicate the issue that Plaintiffs have created by their failure to bring Dr. McCann back to testify as to the basis for his opinions on which Mr. Rafalski relies. *See* Suppl. Mem. in Supp. Of Defs.' Renewed *Daubert* Mot. to Exclude the Opinions of James E. Rafalski (ECF No. 1405) at 2–6. To the extent that Mr. Barrett intends to assign cost values to Dr. Alexanders estimates, he has no independent basis to testify as to the assumptions made in Dr. Alexander's expert report. *See Tokio Marine & Fire Ins. Co., Ltd. v. Norfolk & W. Ry. Co.*, 172 F.3d 44 (4th Cir. 1999) (excluding "valuation opinion" of non-testifying expert that was sponsored by a testifying expert because "the cross-examination of [the testifying expert] could reveal nothing about the mental processes by which [the non-testifying expert] reached his opinion"). This problem is particularly acute for the medical costs that Mr. Barrett relies on, which were "given to [him] by Doctor Alexander," and for which Mr. Barrett did not "make any effort to determine whether the City or County had ever previously paid for any similar type medical-related costs." Ex. A (Barrett Dep. Tr.) at 52:13–19.

Dated:  June 28, 2021

Respectfully Submitted,

***McKesson Corporation***
By Counsel:

*/s/ Timothy C. Hester*
Timothy C. Hester
Laura Flahive Wu
Andrew P. Stanner
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
lflahivewu@cov.com
astanner@cov.com

*/s/ Paul W. Schmidt*
Paul W. Schmidt
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: (212) 841-1000
pschmidt@cov.com

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

***AmerisourceBergen Drug Corporation***
By Counsel:
*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com
*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
Joseph J. Mahady
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com
jmahady@reedsmith.com

***Cardinal Health, Inc.***
By Counsel:

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Ashley W. Hardin
Jennifer G. Wicht
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
emainigi@wc.com
lheard@wc.com
ahardin@wc.com
jwicht@wc.com

Michael W. Carey (WVSB #635)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
David R. Pogue (WVSB #10806)

CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
rfranks@cdkrlaw.com
drpogue@cdkrlaw.com

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 28th day of June, 2021, the foregoing Memorandum was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Timothy C. Hester*