UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| **CITY OF HUNTINGTON**<br>    **Plaintiff,**<br>v.<br>**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**<br>    **Defendants.** | Civil Action No. 3:17-cv-01362 |
| **CABELL COUNTY COMMISSION,**<br>    **Plaintiff,**<br>v.<br>**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**<br>    **Defendants.** | *Consolidated Case*:<br>Civil Action No. 3:17-cv-01665 |

**PLAINTIFFS' TRIAL MEMORANDUM REGARDING ADMISSIBILITY OF P-00045, THE CEGEDIM DENDRITE AUDIT OF CARDINAL HEALTH'S SUSPICIOUS ORDER MONITORING SYSTEM**

Plaintiffs respectfully submit this trial memorandum in support of the admissibility into evidence of Exhibit P-00045, a 2008 audit setting forth "findings and recommendations" concerning Cardinal Health, Inc.'s suspicious order monitoring system. The Court initially sustained objections to this motion but, following argument, announced its intention to "take another look at it and see if it ought to be reversed." 5/20/21 Tr. at 132:17-20.

The audit memorandum is unquestionably relevant. The disputed exhibit consists of a transmittal letter and report from "Cegedim Dendrite," a third-party consulting company hired by Cardinal through its outside counsel to provide regulatory advice. The transmittal letter, dated January 23, 2008, confirms that

1

"[f]rom our initial review, it does not appear that implementation of Cardinal's Phase I SOM[1] system procedures will meet the regulatory requirements without additional realtime monitoring capabilities[,]" and the Executive Summary of the audit confirms that "issues continue to emerge which will have to be resolved before the system will be in compliance with the regulations (21 CFR 1301.74(b)) and the Drug Enforcement Administration's (DEA's) guidance." Exh. A at pp. 1, 2. Further, Defendant Cardinal has stipulated to both the document's authenticity and "to presentation of the[] document[] without the use of a sponsoring witness at trial, while preserving all other evidentiary objections." Dkt. 1305 at ¶¶ 1, 2 & Line Item 130 (specifically identifying the document at P-00045).

At trial, Cardinal offered two objections to admission of the audit memorandum: privilege and hearsay. For the reasons set forth below, neither argument renders the document inadmissible.

1. **The MDL Court Has Already Rejected Cardinal's Privilege Claim and It Has Been Publicly Available For Nearly Two Years.**

Both the MDL Special Master overseeing discovery and Judge Polster (overseeing the MDL) have rejected Cardinal's privilege claim over the January 2008 Cardinal-Dendrite Audit Report at issue. Following that decision, the Audit Report was filed on the public docket and has been publicly available on various Court dockets, including the MDL docket, for approximately two years. *See e.g.*, MDL Doc. No. 1964-7.

---

[1] The acronym "SOM" is generally used to refer to "Suspicious Order Monitoring."

On March 31, 2019, the MDL Special Master issued Discovery Ruling No. 14, Part 5 ("DR 14-5"), a 19-page opinion finding, in relevant part, that for two different and independent reasons, the Audit Report was not privileged.[2] First, the Special Master concluded that the Audit Report was primarily conducted for business rather than legal purposes, and therefore not entitled to attorney-client protection. After reviewing *in camera* submissions from Cardinal, including the engagement agreement concerning this audit, the Special Master specifically found that "[t]he overwhelming nature of Dendrite's activities were to provide **business** analysis and advice to Cardinal so that it could meet its regulatory obligations – not to assist [Cardinal's outside counsel] in providing **legal** analysis and advice to Cardinal." Exh. B at 13. The Special Master further concluded that the "circumstances" concerning Cardinal's retention of Cegedim Dendrite "combine to create a clear picture that the work and advice Dendrite was providing was not 'legal' and Dendrite's primary function was not to support the giving of legal advice by [outside counsel]." (*Id.* at 14.)

Second (and separately), the Special Master concluded Cardinal had waived any potential privilege or work product assertions over the Audit Report by affirmatively claiming that its SOMS complied with the applicable regulatory requirements. *See* Exh. B at pp. 16-19. The Special Master's ruling noted that "Cardinal has made numerous affirmative statements regarding the extent to which its SOM system complied with DEA regulatory requirements," and found that "the

---

[2] A copy of that ruling is attached hereto as Exhibit B.

3

Audit reflects directly and clearly on the truth of" Cardinal's assertions concerning the sufficiency of its SOM system. Exh. B at 18. The order observed that "Cardinal offer[ed] no argument in response" to Plaintiffs' assertion that Cardinal's arguments had waived privilege with respect to this argument and ordered the Audit produced on these grounds as well. *Id.*

On April 8, 2019, Cardinal filed its objection to the Special Master's ruling directly with the MDL Judge. On April 16, 2019, the MDL Court overruled Cardinal's objection and affirmed DR 14-5. *See* Exh. C (MDL Doc. #: 1553). The MDL Court specifically determined as follows:

> The Court finds that Special Master Cohen properly reviewed the relevant facts, correctly applied the relevant law, and achieved the right result. After a thorough review of the parties' briefs, the Court comes to the same conclusion as Special Master Cohen. *Id.* at p. 2.

Cardinal then produced the Audit in the MDL.

Subsequent use of the Audit confirms the dubious nature of Cardinal's privilege claims. The MDL Court's rejection of Cardinal's privilege claim has already resulted in the use of the Audit Report in connection with several expert reports and at various depositions, including in the MDL and throughout multiple jurisdictions.[3] Moreover, the Audit Report has been publicly available on various Court dockets, including the MDL docket, for approximately two years. *See e.g.*, MDL Doc. No. 1964-7. Additionally, the MDL Court's finding of waiver provides

---

[3] For example, in addition to several other depositions, the Audit Report was used at the following depositions: 5/17/2019 MDL deposition of DEA/Prevoznik, Plaintiffs' Exh. 27; 8/2/2019 M. Mone deposition (Ohio State litigation), Exh. 31; 2/26/2020 Stogniew deposition (Rhode Island State litigation), Exh. 12.

another basis for rejecting any privileged treatment of the Audit Report. "Once a party waives the attorney-client privilege, it relinquishes the privilege for all purposes and circumstances thereafter." *In re G-I Holdings Inc.*, 218 F.R.D. 428, 432 (D.N.J. 2003).

**2.      The Audit Report is Not Hearsay.**

Cardinal's second argument—that the Audit report constitutes inadmissible hearsay—also fails. Two separate provisions of Federal Rule of Evidence 801 confirm that the Audit report does not qualify as hearsay. Rule 801(d)(2)(C) exempts from hearsay documents "offered against an opposing party" that were "made by a person whom the party authorized to make a statement on the subject." Rule 801(d)(2)(D) exempts from hearsay documents "offered against an opposing party" that were "made by the party's agent or employee on a matter within the scope of that relationship and while it existed." The Audit report satisfies both exceptions.

There is no serious dispute that Cardinal retained Cegedim Dendrite through its outside counsel in order to provide consulting services to Cardinal. Notably, the Special Master found that "documents show it was Cardinal that paid Dendrite, not [its outside counsel]" and that "Cardinal designated these payments as regulatory expenses, not legal expenses." Exh. B at 3 n.3. The transmittal letter confirms that Ronald Buzzeo is relaying "our initial findings and recommendations on Cardinal Healthcare's Suspicious Order Monitoring (SOM) System" and that "work will

continue with Cardinal to develop a computer system that is compliant with" federal regulations. Exh. A at 1. The Executive Summary further confirms that "[f]rom approximately December 6, 2007 through the present, Cegedim Dendrite staff, including Chief Regulatory Officer Ronald W. Buzzeo, R.Ph., have been working with Cardinal Healthcare's . . . executive management on numerous regulatory issues, including suspicious order monitoring . . ." Exh. A at 2. Mr. Mone further confirmed that "the work that Ron Buzzeo's group did with my team was that they provided additional resources for investigations." 5/20 Tr. at 68:3-5.

In these circumstances, the document itself confirms that Cardinal "authorized" Cegedim Dendrite "to make a statement on" the SOM system it had been hired to evaluate (FRE 801(d)(2)(C)) and that Cegedim Dendrite was acting as Cardinal's "agent" and furnished the report concerning "a matter within the scope of that relationship and while it existed" (FRE 801(d)(2)(D)). The Court already has made analogous findings when admitting the report of Defendant AmerisourceBergen's consultant, concluding that the ABDC report was "not hearsay because it comes within . . . [Rule] 801(d)(2) as an opposing party's statement – subsection (C), was made by a person whom the party authorized to make a statement on the subject." 5/14 Tr. at 71:10-15. At the time, Defendants agreed with the Court's ruling. *Id.* at 71:16-19 ("Mr. Hester, does that come within that? . . . Sounds right, Your Honor.").

The Court's conclusion finds ample support in caselaw admitting consultant reports pursuant to these hearsay exceptions. Numerous courts have held that

6

consultant reports are admissible as statements authorized by the party retaining the consultant and/or made by the consultant as the party's agent. For example, in *Walden v. Seaworld Parks & Entertainment, Inc.*, No. 4:11cv113, 2012 WL 4050176 (E.D. Va. May 31, 2012), the court found that an audit conducted by the defendant's "outside consultant . . . is simply not hearsay" because "it is clear this document constitutes an admission of a party opponent, expressly excluded from the definition of hearsay under Rule 801(d)(2) of the Federal Rules of Evidence." *Id.* at **1-2. The *Walden* court is not alone. "Multiple courts . . . have concluded that a consultant was a company's agent under FRE 801(d)(2), such that the consultant's statements were admissible as statements of a party-opponent." *FTC v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2018 WL 6576029, at *2 (N.D. Cal. Dec. 13, 2018); *see also Eramo v. Rolling Stone, LLC*, No. 3:15-CV-00023, 2016 WL 6024415, at *2 (W.D. Va. Oct. 13, 2016); *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, 262 F. Supp. 2d 251, 260 (S.D.N.Y. 2003); *Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1306-07 (9th Cir. 1983); *Rollins v. Bd. of Governors for Higher Educ.*, 761 F. Supp. 939, 942-43 (D.R.I. 1991).

The Cegedim Dendrite Audit does not warrant different treatment, and the Court should similarly deem it the statement of a party opponent pursuant to FRE 801(d)(2).

## CONCLUSION

For all of the reasons set forth, the Court should admit P-00045.

Dated: June 30, 2021                                              Respectfully submitted,

| | |
|---|---|
| **THE CITY OF HUNTINGTON**<br>/s/ *Anne McGinness Kearse*<br>Anne McGinness Kearse<br>WVSB No. 12547<br>Joseph F. Rice<br>**MOTLEY RICE LLC**<br>28 Bridgeside Blvd.<br>Mount Pleasant, SC 29464<br>Tel: 843-216-9000<br>Fax: 843-216-9450<br>akearse@motleyrice.com<br>jrice@motleyrice.com<br><br>Linda Singer<br>David I. Ackerman<br>**MOTLEY RICE LLC**<br>401 9th Street NW, Suite 1001<br>Washington, DC 20004<br>Tel:  202-232-5504<br>Fax:  202-386-9622<br>lsinger@motleyrice.com<br>dackerman@motleyrice.com<br><br>Charles R. "Rusty" Webb<br>WV No. 4782<br>**THE WEBB LAW CENTRE**<br>716 Lee Street, East<br>Charleston, West Virginia 25301<br>Telephone: (304) 344-9322<br>Facsimile: (304) 344-1157<br>rusty@rustywebb.com | **CABELL COUNTY COMMISSION**<br>/s/ *Paul T. Farrell, Jr.*<br>Paul T. Farrell, Jr.<br>WVSB Bar No. 7443<br>**FARRELL & FULLER LLC**<br>1311 Ponce de Leon Ave., Suite 202<br>San Juan, Puerto Rico 00907<br>Mobile: 304-654-8281<br>paul@farrell.law<br><br>/s/ *Anthony J. Majestro*<br>Anthony J. Majestro<br>WVSB No. 5165<br>**POWELL & MAJESTRO, PLLC**<br>405 Capitol Street, Suite P-1200<br>Charleston, WV 25301<br>304-346-2889 / 304-346-2895 (f)<br>amajestro@powellmajestro.com<br><br>Michael A. Woelfel<br>WVSB No. 4106<br>**WOELFEL AND WOELFEL, LLP**<br>801 Eighth Street<br>Huntington, West Virginia 25701<br>Tel. 304.522.6249<br>Fax. 304.522.9282<br>mikewoelfel3@gmail.com |

## CERTIFICATE OF SERVICE

I certify that on June 30, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ *Anthony J. Majestro*