UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| **CITY OF HUNTINGTON**<br>    Plaintiff,<br>v.<br>**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**<br>    Defendants. | Civil Action No. 3:17-cv-01362 |
| **CABELL COUNTY COMMISSION,**<br>    Plaintiff,<br>v.<br>**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**<br>    Defendants. | *Consolidated Case*:<br>Civil Action No. 3:17-cv-01665 |

**PLAINTIFFS' TRIAL MEMORANDUM REGARDING ADMISSIBILITY OF LETTERS FROM THE DOJ/DEA TO MCKESSON**

Plaintiffs submit this trial memorandum in support of the admissibility into evidence of four (4) letters sent from representatives of the DOJ and/or DEA to McKesson (through counsel) in 2013 and 2014. The documents are:

P-00118: 11/6/2013 letter from the U.S. Attorney's Office for the Northern District of West Virginia to counsel for McKesson (Exh. A attached hereto);

P-00119: 3/20/2014 letter from the U.S. Attorney's Office for the Northern District of West Virginia to counsel for McKesson (Exh. B attached hereto);

P-00121: 8/13/2014 letter from the U.S. Attorney's Office for the District of Colorado to counsel for McKesson (Exh. C attached hereto); and

P-00122: 11/4/2014 letter from the DOJ/DEA to counsel for McKesson (Exh. D attached hereto).

Defendant McKesson has stipulated to the "authenticity of these documents pursuant to FRE 901 and 902 at trial" and "to presentation of these documents

1

without the use of a sponsoring witness at trial, while preserving all other evidentiary objections." *See* Dkt. 1166 at pp. 1, 4 (MCKMDL00409048-049, MCKMDL00409174-179, MCKMDL00409224-246, and MCKMDL00409453-458). As set forth herein, admission of each exhibit is consistent with Fed. R. Evid. 408.

## Background

On May 24, 2021, while questioning a McKesson employee (Michael Oriente), Plaintiffs attempted to admit into evidence a November 4, 2014 letter from the DEA/DOJ to McKesson (P-00122). *See* 5/4/2021 Trial Tr. at 100:9-10. Defendants objected and the Court preliminarily refused admission pursuant to Fed. R. Evid. 408. *Id.* at 105:11-14 ("I'm going to sustain the objection. In my opinion, this is covered by 408 and should not come in and I'm not going to admit it."). Thereafter, Plaintiffs requested the opportunity to brief the admissibility of this exhibit (as well as three other letters from the DOJ/DEA to McKesson - P-00118, P-00119, P-00121), and the Court agreed to wait to rule until the matter is fully briefed. *Id.* at 230:16-231:19. ("I'll hold in abeyance my ruling on these until I read your papers, Mr. Majestro.").

The exhibits at issue are 2013 and 2014 letters sent to McKesson from the DOJ/DEA. The letters have certain commonalities (e.g., all are written from the government to McKesson, all involve allegations of McKesson's violations of the CSA, etc.) and they have certain distinctions (e.g., some relate to "potential claims" by the government against McKesson, and some relate to "settlement discussions").

While the distinctions between the letters make some more clearly admissible, all of the letters are in fact admissible.

## Legal Standard

Federal Rule of Evidence 408 generally prohibits the use of evidence of statements or conduct to compromise a claim "to prove or disprove the validity or amount of a disputed claim." *See* Fed. R. Evid. 408(a). However, "Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim." *Uforma/Shelby Bus. Forms, Inc. v. N.L.R.B.*, 111 F.3d 1284, 1293–94 (6th Cir. 1997) (citing Wright, et al., FEDERAL PRACTICE & PROCEDURE: EVIDENCE § 5314, 5308 (1st ed. 1980) (internal citations omitted, emphasis added). *See also, 1616 Reminc Ltd. Ptshp. v. Com. Land Title Ins.*, 778 F.2d 183, 188 n. 5 (4th Cir.1985) ("The documents are not inadmissible as offers of compromise because they are not offered to prove liability on the claims extinguished by the settlement."); *Wyatt v. Security Inn Food & Beverage, Inc.*, 819 F.2d 69, 71 (4th Cir.1987) (Rule 408, "which generally forbids testimony regarding compromises or offers to compromise, need not prevent a litigant from offering such evidence when he does not seek to show the validity or invalidity of the compromised claim."). This is also plain from the language of the rule, which repeatedly references "prov[ing] or disprov[ing] the validity or amount of a disputed claim" by offering evidence of conduct that occurred while attempting to resolve "the claim." *See* Fed. R. Evid. 408(a)(1) and (2) (emphasis added).

Additionally, Rule 408 permits a court to admit evidence of a settlement "for another purpose." Fed. R. Evid. 408(b). Courts rountinely recognize other permissible purposes to include "notice" of harms and/or obligations. *Johnson v. Hugo's Skateway*, 949 F.2d 1338, 1345 (4th Cir.1991) (prior consent decree was properly admitted to prove that defendant had notice of required actions to be taken for equal access); *Spell v. McDaniel*, 824 F.2d 1380, 1400 (4th Cir. 1987) (prior settlement by the City of another brutality claim was properly admitted to prove that the City was on notice of aggressive behavior by police officers). *See also, e.g., Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 136 (2d Cir. 2008) (holding that the district court had properly admitted a consent decree between the Equal Opportunity Employment Commission and the defendant to demonstrate that the defendant "was aware of its legal obligations"); *U.S. v. Austin*, 54 F.3d 394 (7th Cir. 1995) (no error to admit evidence of the defendant's settlement with the FTC, because it was offered to prove that the defendant was on notice that subsequent similar conduct was wrongful); *CFTC v. Co Petro Marketing Group, Inc.*, 680 F.2d 573, 584 (9th Cir.1982) (admission of prior consent decrees proper to show defendant's familiarity with commodities laws).

Consistent with Rule 408, including the other purposes for which settlement evidence is allowed, the MDL Court previously rejected Defendants' prior settlement-related arguments. Specifically, the Court stated:

> Here, Plaintiffs assert that evidence of prior enforcement actions and settlements establish a pattern of conduct that demonstrates: (1) Defendants knew their SOM systems were inadequate and likely to cause harm; and (2) Defendants' conduct was intentional and persisted

4

> over a lengthy period of time. The Court agrees this evidence is relevant and permissible and therefore denies these motions.

*See* 1/3/2020 Order (MDL Doc. #3058) at p. 13; *see also id*. at pp. 12, 14-15. Morover, the MDL Court specifically denied McKesson's prior objections to the very letters at issue herein, and found that "the letters are relevant to show McKesson's knowledge of the investigation and the statements contained therein." *Id*. at p. 22.

## Argument

Each of the letters/exhibits at issue are admissible and not precluded by Fed. R. Evid. 408, for either of two different reasons. First, the letters involve cases separate from the instant litigaton, and they are not being offered to prove "the validity or amount" of Cabell's and Huntington's claims. Second, as explicitly permitted by FRE 408, the letters are being offered for "another purpose" – namely to prove McKesson's notice and/or knowledge of problems with its suspicious order monitoring program, DEA interpretation and/or guidance regarding applicable regulations, opioid harms, and other related concerns. Additionally, specific to P-00118 and P-00121, these were neither settlement offers nor settlement discussions, and are not even subject to Fed. R. Evid. 408.

As a preliminary and an overarching matter, the purpose for admission of these letters/exhibits is to show *notice* to McKesson regarding the matters addressed therein (e.g., diversion, opioid harms, systemic problems with McKesson's suspicious order monitoring systems, etc.). Moreover, aside from the obvious relevance, the importance of this notice is magnified by McKesson's claims and defenses presented thus far in this case. Among other things, McKesson has alleged

5

that: the DEA's opioid quotas led McKesson to believe its volumes of opioid distributions were acceptable; the DEA did not provide proper guidance regarding the applicable regulations; McKesson believed that it was doing what the DEA wanted; and McKesson made changes to its suspicious order monitoring system based on a new understanding of what the DEA wanted.[1] However, the notices provided to McKesson in the letters/exhibits at issue directly contradict these McKesson claims.

### A. The Letters Involve Compromise of Other Cases, not this Litigation

Traditionally, courts have construed Rule 408 to exclude "evidence of settlement and settlement offers only where the evidence is offered to prove liability for or invalidity [or amount] of the claim under negotiation." *See Armstrong v. HRB Royalty, Inc.*, 392 F.Supp.2d 1302, 1304 (S.D.Ala.2005) (quoting *Vulcan Hart Corp. v. Nat'l Labor Relations Bd.*, 718 F.2d 269, 277 (8th Cir.1983)) (quotation marks omitted). *See also, 1616 Reminc*, 778 F.2d at 188 n. 5; *Wyatt*, 819 F.2d at 71. Here, two of the letters (P-00118 and P-00121) do not even address settlement offers,

---

[1] *See e.g.*, 5/2/2021 Trial Tr. at 177:24-178:3 ("If a company like McKesson is looking at that kind of chart that the Court was shown and sees raising levels and wants to know is that appropriate in terms of what's medically, scientifically appropriate, the DEA is saying, yes, we need more prescription opioids every year"); 187:1-3 ("they expected if the DEA had concerns when they got those [excessive purchase] reports, they'd tell the company or they'd tell the pharmacy"). *See also*, 5/25/2021 Trial Tr. (testimony of M. Oriente-McKesson) at 122:20-21 ("No, [McKesson's regulatory department] didn't wait until it was settled [in 2017]. They made the changes as soon as they were identified."); 126:15-21 ("It was McKesson's understanding that we were [doing what the DEA wanted]"); 127:1-12 (McKesson made changes to its suspicious order monitoring system because it had "a new understanding of what the DEA wanted" since "[t]here was change in the guidance.").

negotiatons or discussons, and it is clear that none of the letters involve settlement or potential settlement of *the current litigation.* Thus, Rule 408 does not apply to the letters at issue, as these letters do not in any way attempt to negotiate or settle the specific claims asserted by Cabell/Huntington in this case.

### B. The Letters are Admissible for "Another Purpose" – Proof of Notice

Rule 408 explicitly permits a court to admit evidence of settlement offers, negotiations and discussions "for another purpose." Fed. R. Evid. 408(b). *See also*, *Hugo's Skateway*, 949 F.2d at 1345 (4th Cir.1991); *Spell*, 824 F.2d at 1400. The other purpose for admission of the letters includes McKesson's notice and/or knowledge of various matters, including but not limited to: the DEA's interpretation and enforcement of applicable regulations, the existence and contents of DEA/DOJ guidance, the presence or absence of systemic issues with McKesson's suspicious order monitoring program, the systemic failure of McKesson to report suspicious orders, opioid diversion, the opioid epidemic, and opioid harms.[2] While this notice

---

[2] *See e.g.*, P-00118 at p. 1 ("The claims for penalties under 21 U.S.C. § 842(a)(5) arise from McKesson's failure to design and operate a system to identify suspicious orders for controlled substances and, more importantly, the failure to report suspicious orders in violation of 21 C.P.R.§ 1301.74(b) . . . Between May 2008 and November 15, 2011, McKesson did not submit any suspicious order reports ("SORs") relating to orders filled by the Landover facility."); P-00119 at p. 2 ("all parties expected McKesson to report suspicious orders, in compliance with § 1301.74(b) . . . [and in 2008 McKesson assured the DEA] that the order will not be filled until an investigation has been completed"), at p. 5 ("McKesson's CSMP was not being employed properly at the Landover facility. Consequently, numerous McKesson Landover's customers were able to engage in conduct that led to the diversion of massive quantities of Schedule II and III controlled substances."; P-00121 at pp. 1-2 ("In recent years, prescriptions for certain prescription drugs like oxycodone have soared. . . . And so have deaths due to use of these drugs."), p. 2 ("Many of the compliance controls in place to detect suspicious orders - such as site visits to

7

to and/or knowledge of McKesson is enough on its own to warrant admissibility as "another purpose" under Fed. R. Evid. 408, it is further strengthened by the assertions and defenses claimed by McKesson as detailed above.[3]

### C. P-00118 and P-00121 are Not Settlement Offers or Negotiations

Fed. R. Evid. 408 prevents introduction of evidence of "furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim" and "conduct or a statement made during compromise negotiations". *See* Fed. R. Evid. 408(a)(1) and (2) (emphasis added). P-00118 and P-00121 were not sent during or as part of any ongoing compromise negotiations, and they do not even contain settlement offers or statements relating to same. Indeed, unlike P-00119 (with a subject line of "McKesson Matter - Ongoing Settlement Discussions" and which addresses "amicable resolution of the government's claims" and "differences over the potential penalty amounts"), and P-00122 (with a header of "Confidential and Subject to Federal Rule of Evidence 408" and which addresses "DEA's participation in a potential global settlement – a resolution to include a release of both civil claims and administrative claims"), P-00118 and P-00121 contain no such subject

---

pharmacies and pharmacy questionnaires - were either ignored or were treated by McKesson-Aurora personnel as perfunctory."); P-00122 at p. 2 ("McKesson fails to appreciate the serious and systemic nature of the CSA-related problems"); p. 3 ("McKesson's systemic failures were also evident at its distribution center at 3000 Kenskill Avenue, Washington Court House, Ohio"); p. 4 ("McKesson Lakeland failed to report and suspicious orders to DEA for a five-year period."); p. 5 ("DEA believes that the failings at McKesson were as systemic as they were serious.").
[3] *See* fn. 1.

lines, headers, settlement offers or discussions. Accordingly, P-00118 and P-00121 do not meet the basic elements of Fed. R. Evid. 408, and should not be considered for exclusion.

### The Exhibits Are Not Hearsay and Are Not Unfairly Prejudicial

The letters are not hearsay because Fed. R. Evid. 801(c)(2) is not satisfied. As explained above,[4] Plaintiffs offer the letters to establish McKesson's notice and/or knowledge of various matters as set forth in the letters and therefore do not offer the letters for the truth of the matters asserted therein. Accordingly, any objection based upon alleged hearsay is properly overruled.

The information at issue has already been determined by this Court and the MDL Court to be relevant. However, to the extent there is any argument or concern regarding unfair prejudice, the fact that this is a bench trial and not a jury trial should put any question of unfair prejudice under Rule 403 to rest. *See generally Schultz v. Butcher*, 24 F.3d 626, 632 (4th Cir. 1994) ("[W]e hold that in the context of a bench trial, evidence should not be excluded on the ground that it is unfairly prejudicial."). Although the letters at issue would be admissible even in a jury trial, especially with a limiting instruction, no such instruction is necessary here because the Court itself is the finder of fact and there is thus no risk of confusion as to the appropriate evidentiary weight to be given.

---

[4] *See* Section B and fn. 2.

## CONCLUSION

For all of the reasons set forth, the Court should rule that P-00118, P-00119, P-00121, and P-00122 are admissible.

Dated: June 30, 2021　　　　　　　　　　　　　　Respectfully submitted,

| | |
|---|---|
| **THE CITY OF HUNTINGTON** | **CABELL COUNTY COMMISSION** |
| /s/ *Anne McGinness Kearse* | /s/ *Paul T. Farrell, Jr.* |
| Anne McGinness Kearse | Paul T. Farrell, Jr. |
| WVSB No. 12547 | WVSB Bar No. 7443 |
| Joseph F. Rice | **FARRELL & FULLER LLC** |
| **MOTLEY RICE LLC** | 1311 Ponce de Leon Ave., Suite 202 |
| 28 Bridgeside Blvd. | San Juan, Puerto Rico 00907 |
| Mount Pleasant, SC 29464 | Mobile: 304-654-8281 |
| Tel: 843-216-9000 | paul@farrell.law |
| Fax: 843-216-9450 | |
| akearse@motleyrice.com | /s/ *Anthony J. Majestro* |
| jrice@motleyrice.com | Anthony J. Majestro |
| | WVSB No. 5165 |
| Linda Singer | **POWELL & MAJESTRO, PLLC** |
| David I. Ackerman | 405 Capitol Street, Suite P-1200 |
| **MOTLEY RICE LLC** | Charleston, WV 25301 |
| 401 9th Street NW, Suite 1001 | 304-346-2889 / 304-346-2895 (f) |
| Washington, DC 20004 | amajestro@powellmajestro.com |
| Tel: 202-232-5504 | |
| Fax: 202-386-9622 | Michael A. Woelfel |
| lsinger@motleyrice.com | WVSB No. 4106 |
| dackerman@motleyrice.com | **WOELFEL AND WOELFEL, LLP** |
| | 801 Eighth Street |
| | Huntington, West Virginia 25701 |
| Charles R. "Rusty" Webb | Tel. 304.522.6249 |
| WV No. 4782 | Fax. 304.522.9282 |
| **THE WEBB LAW CENTRE** | mikewoelfel3@gmail.com |
| 716 Lee Street, East | |
| Charleston, West Virginia 25301 | |
| Telephone: (304) 344-9322 | |
| Facsimile: (304) 344-1157 | |
| rusty@rustywebb.com | |

## CERTIFICATE OF SERVICE

I certify that on June 30, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ *Anthony J. Majestro*