# TAB 11B

```
              IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                        AT CHARLESTON

_____x
                              :
THE CITY OF HUNTINGTON,       :    Civil Action
                              :
              Plaintiff,      :    No.  3:17-cv-01362
                              :
v.                            :
                              :
AMERISOURCEBERGEN DRUG        :
CORPORATION, et al.,          :
                              :
              Defendants.     :
_____x
                              :
CABELL COUNTY COMMISSION,     :    Civil Action
                              :
              Plaintiff,      :    No. 3:17-cv-01665
                              :
v.                            :
                              :
AMERISOURCEBERGEN DRUG        :
CORPORATION, et al.,          :
                              :
              Defendants.     :
_____x


               BENCH TRIAL - VOLUME 19
    BEFORE THE HONORABLE DAVID A. FABER, SENIOR STATUS JUDGE
             UNITED STATES DISTRICT COURT
              IN CHARLESTON, WEST VIRGINIA


                    MAY 27, 2021
```

*Ayme A. Cochran, RMR, CRR (304) 347-3128*

1    BY MR. FARRELL:
2    **Q.**   One final area of inquiry.
3        You testified yesterday -- you were being asked about a
4    particular provision in the C.F.R.  You were asked about
5    whether or not there was a duty on the manufacturers, a duty
6    on the pharmacists, a duty on the pharmacies, a duty on the
7    doctors.  And they made reference to a particular C.F.R.
8    provision relating to corresponding responsibility.
9        Do you recall that?
10   **A.**   I do.
11   **Q.**   I think I have the actual testimony.  You were asked
12   about specific DEA rules, or a specific DEA regulation and
13   you made the comment that that rule specifically says
14   pharmacist.  Do you recall that?
15   **A.**   I do.
16   **Q.**   Now, aside from the fact that that regulation says
17   pharmacist, you are aware, are you not, that the DEA has
18   taken the position since as early as 2012 in the *Holiday CVS*
19   case that that corresponding responsibility also extends to
20   the pharmacy?
21   **A.**   I'm aware of that.
22   **Q.**   And that the DEA has routinely -- not routinely -- has
23   regularly revoked the registration of pharmacies across the
24   United States for failing to maintain effective control and
25   failing to abide by its corresponding responsibility.

1  **A.**  That's a correct statement. The, the pharmacist is the
2  person who evaluates the prescription. And the actual DEA
3  registration is held by the pharmacy. So that's why the,
4  the administrative action is against the DEA registration.
5  **Q.**  And, in fact, it's the pharmacy that pays the fine?
6  **A.**  That's correct.
7  **Q.**  The pharmacist can go to jail?
8  **A.**  Yes. And -- yes.
9  **Q.**  And then, finally, -- I don't have the transcript
10 directly in front of me. But there was a discussion briefly
11 yesterday where they were asked whether or not the failure
12 to report suspicious orders could result in diversion. And
13 I wanted to revisit that to make sure the record is
14 perfectly clear.
15      If a registrant reports an order and still ships it, do
16 you believe that more likely than not that diversion will
17 occur?
18 **A.**  I do.
19           MS. MAINIGI: Objection, Your Honor. This is a
20 causation opinion and calls for a legal conclusion.
21           MR. SCHMIDT: We join, and foundation. There's no
22 methodology supporting this.
23           MR. NICHOLAS: We join as well.
24           THE COURT: I'll sustain the objection.
25 BY MR. FARRELL:

1   **Q.**   I believe you were asked yesterday whether or not
2   you believe that failure to report a suspicious order is
3   a, is a cause of diversion.  Do you recall that
4   testimony?
5   **A.**   If we're talking exact language, I don't -- I'm sorry,
6   I don't want to say I recall that exactly.
7   **Q.**   What's the purpose of identifying, blocking, and
8   reporting suspicious orders?
9   **A.**   Prevent diversion.
10  **Q.**   And if you fail to identify, block, and report
11  suspicious orders, what do you believe is the, is the likely
12  result?
13              MR. SCHMIDT:  Same objection, Your Honor.  There's
14  no foundation for that.
15              MS. MAINIGI:  Join.
16              MR. NICHOLAS:  Join.
17              THE COURT:  Well, I'll sustain the objection.  I
18  think -- well, sustained.
19              MR. FARRELL:  Yes.  And so to be clear, Judge, I
20  don't want there to be a particular question on cross that
21  winds up in a directed verdict motion that is based on an
22  area where the defendants have laid objections to the
23  inquiry.
24              MS. MAINIGI:  Your Honor, I believe this Court was
25  quite generous in the direct in allowing a huge number of

*Ayme A. Cochran, RMR, CRR (304) 347-3128*

1  questions in this particular area.  I think there was some
2  cleanup on cross on that.  But I think Mr. Farrell covered
3  these areas adequately.
4        THE COURT:  Yeah, I agree.  I think we've been
5  over this at great length and it's a very simple point and I
6  understand it, Mr. Farrell.
7        MR. FARRELL:  Thank you, Judge.
8     May I confer for a moment?
9        THE COURT:  Yes.
10    (Pause)
11       MR. FARRELL:  Judge, I know it's early.  Can we
12 have five minutes because not only do I need to confer, but
13 I need to make some phone calls?
14       THE COURT:  Yes.  Let's, let's come back at
15 10:00 o'clock.
16    (Recess taken from 9:54 a.m. until 10:02 a.m.)
17       THE COURT:  All right, Mr. Farrell.
18 BY MR. FARRELL:
19 **Q.**  Mr. Rafalski, you were asked this morning about the
20 DU45s.  And you were asked about the ILRs the day
21 before.
22 **A.**  That's correct.
23 **Q.**  And just for framing purposes, these were the excessive
24 order reports that were used by the distributors pre-2008;
25 correct?