# TAB 18

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE DAVID A. FABER
SENIOR UNITED STATES DISTRICT JUDGE

June 20, 2017

```
------------------------------x
                              :
KANAWHA COUNTY COMMISSION,    :        CIVIL ACTION
                              :        NO.  2:17-cv-01666
        Plaintiff,            :
                              :
vs.                           :
                              :
RITE AID OF MARYLAND,         :
INC., et al.,                 :
                              :
        Defendants.           :
                              :
------------------------------x
                              :
CABELL COUNTY COMMISSION,     :        CIVIL ACTION
                              :        NO. 3:17-cv-01665
        Plaintiff,            :
                              :
vs.                           :
                              :
AMERISOURCEBERGEN DRUG        :
CORPORATION, et al.,          :
                              :
        Defendants.           :
                              :
------------------------------x
```

1                     P R O C E E D I N G S

2          THE COURT:  Good morning.

3      This is the hearing on the motions to dismiss in the

4  seven opioid cases filed originally in this court.  I

5  believe there are seven of them.

6      If anybody's curious, I have an opinion in draft and

7  expect to rule on the remand motions in the two additional

8  cases that were removed before the end of the week.

9      Let me ask counsel to note their appearances, please.

10          MR. FARRELL:  Paul Farrell, Jr., on behalf of the

11  seven counties.

12          MR. MAJESTRO:  Anthony Majestro on behalf of six

13  of the seven counties, all but Wyoming.

14          MR. MAINIGI:  Enu Mainigi, Williams & Connolly, on

15  behalf of Cardinal Health, Your Honor.

16          MR. HEARD:  Lane Heard, Your Honor, also from

17  Williams & Connolly for Cardinal Health.

18          MR. JESSEE:  Russell Jessee, Your Honor, for

19  McKesson in four of the counties, and the three other

20  counties Jeff Wakefield with me.

21          THE COURT:  All right.

22          MR. EMCH:  Your Honor, Al Emch, Jackson Kelly here

23  in Charleston for AmerisourceBergen.  And I have with me

24  Meredith Auten from Morgan Lewis & Bockus in Philadelphia,

25  and my associate Adam Schwendeman here also with Jackson

1   from the Second Restatement on Page, Page 37.

2       The breach of that duty is their actions in selling

3   these drugs in the quantities in which they're doing without

4   providing -- without stopping suspicious transactions,

5   without notifying the government of suspicious transactions.

6   And --

7           THE COURT:  But, but if I understood Mr. Emch

8   correctly, they had a closed system where they were given a

9   number of pills that they could, they could market over, I

10  guess, yearly or over some period of time.  And as long as

11  they did that, couldn't they take comfort in the fact that

12  they were within those limits and it was somebody else's

13  problem if the drugs were abused?

14          MR. MAJESTRO:  Well, the limits Mr. Emch is

15  telling you, showing you on this chart, that's not the, the

16  DEA -- that's nationwide for the entire industry.  And the

17  limits they are permitted to sell does not say they are

18  allowed to sell them in a manner in which they know they're

19  going to be diverted.

20      And what's interesting about the chart is they go up

21  for a while because I guess the DEA rightfully assumes --

22  again, we're way out of the record -- out of the pleadings

23  and into, you know, maybe a jury argument.

24      But, but they go up and then they go down.  And what

25  happens is that after 2012 when they started getting called

1   out both by the DEA and by, you know, people filing lawsuits

2   like the Attorney General in the case, is that they, the

3   numbers go down because they're starting to actually report

4   the suspicious orders and do their jobs.

5        The DEA never -- and they've cited no law that says

6   they have to sell all these drugs they're authorized to

7   sell.  There's no law that says because you're authorized to

8   sell a certain quantity of drugs that you can't stop

9   transactions that are suspicious.  I mean, that's completely

10  contrary to the closed system.

11       What that is is an overall cap on how much.  It's

12  another check in the system.  But it's not a, a defense to

13  say, "Oh, we were allowed to sell all these drugs so,

14  therefore, we could ignore the red flags of suspicious

15  conduct that were right in front of our face."

16       So that's, that's the duty on the, on the nuisance

17  claim.

18       With respect to the tort claim, you know, I think we

19  have an argument as to whether these kinds of statutes, the

20  state statute and the federal statute, are the kind of

21  statutes that could create a negligence duty.

22       However, they totally ignore the third claim of our, of

23  a duty that we pled in the complaint.  And that is industry

24  practice, custom standards which unquestionably under West

25  Virginia law can create a tort duty.

1          So that's the duty.  Breach is very simple.  The

2    complaint pled they did not report suspicious orders.  The

3    complaint pled they did not stop suspicious orders.  They

4    did not have procedures to determine suspicious orders.

5    That's the breach -- that's the breach of the duty.  And

6    that would go both with respect to -- so that's -- that

7    breach would apply both for the negligence and nuisance.

8          Excuse me, Your Honor.  I'll grab some water.

9          (Pause)

10          MR. MAJESTRO:  With respect to causation, you

11   know, we pled causation in the complaint, cited the studies.

12   I think we've gone well beyond what we need to do on a

13   pleading stage to prove causation.

14          And their challenges to causation based on remoteness

15   and based on illegal conduct, those sorts of challenges I've

16   gone through, Your Honor.  And as we've cited the cases in

17   the brief, those are dealing with situations where you don't

18   have foreseeability.

19          And we, and we would contend in this case that

20   statutorily Congress has found foreseeability for Your Honor

21   almost as a matter of law that when you don't take these

22   actions, it's foreseeable that diversion will occur.

23          And, you know, the other -- and the flip is, the point

24   I just made before, once the actions changed, once they

25   started to be reported, we have a decrease in the amount of

1    this illegal diversion.

2         But what we do have now is -- and we go to damages.

3    What we do have now is a bunch of people who are addicted to

4    drugs.  And they no longer can get the legal drugs because

5    the defendants are finally doing their job.

6         So because they no longer can get the legal drugs and

7    because the nuisance and the damages to them making them

8    addicts, what they've done is they've gone -- and the

9    studies that we've cited in the complaint show the

10   relationship -- they've gone to the illegal market.

11        And, so, the reason people are dying -- you know, early

12   on we pled the facts in the complaint -- are overdoses from

13   these legal drugs.  We still have some of those.

14        But what we have now is overdoses and problems from the

15   illegal drugs because of the actual -- what the defendants

16   have done is they've taken away the supply of the legal

17   drugs and forced the, the, the victims of their conduct to

18   turn to the illegal market.

19        So -- and those are the damages.  And, again, as I

20   said, as I explained, those are damages that can be abated

21   and there are damages that can be proven and recovered.

22        You know, Mr. Heard talked about some of the, what he

23   called the back door claims.  And, you know, I want to hit

24   some of those.

25        First is this free public services doctrine.  We've

1   cited the statutes and -- not statutes, the *Law Review*

2   articles and case law that this is a doctrine that the trend

3   is going the other way.  I think it's pretty clear that, as

4   the commentators have explained, this idea that, that

5   defendants' conduct that causes municipalities extensive

6   damages, especially when it is a continuing conduct, is not

7   subject to this free public services defense.

8       Now, there are a couple of exceptions to this doctrine

9   anyway.  One of them is a nuisance claim.  We cited case law

10  for that.

11      The second exception is statutory authorization which

12  we would contend that the counties' statutory authorization

13  to abate nuisances constitutes the authorization -- and to

14  do the other things that are set forth in that provision

15  constitute the statutory authorization that is an exception

16  to the free public services doctrine.

17      Mr. Heard talked about the *St. Clair* case.  And I

18  think, you know, facially that's, that's an argument that

19  has, has some appeal.  But I think if you look at the case,

20  you see that it is not as broad as he would read it.

21      The *St. Clair* case was dealing with a person that was

22  in jail trying to get out on, on probation.  And the -- what

23  the Court said was you couldn't have probation until court

24  costs were paid.  And that included the costs -- those court

25  costs included the cost of putting you in jail.