# TAB 21

**The Legal Test for Fault for Public Nuisance**

Whether the legal test for fault is unreasonable conduct, without more, or the tri-partite test set forth by the Restatement (Second) of Torts, § 821B, Plaintiffs have failed to meet their burden of proof.

We respectfully submit, however, that (i) the Restatement test for fault is the proper one and (ii) the Court misread *Hendricks v. Stalnaker* in its Memorandum Opinion and Order denying Defendants' motion for summary judgment regarding fault. Dkt. 1294.

Section 821B defines a public nuisance as "an unreasonable interference with a right common to the general public." Comment (e) ("Unreasonable interference") explains what the "unreasonable" element of the definition means. While the common law defined the ***criminal*** offense of public nuisance with no more precision than as "an interference with a right common to the general public," Comment e explains that, as public nuisance came to be treated as a ***tort***, the courts applied the same analysis to public and private nuisance claims, "both criminal and civil," holding "a defendant liable for a public nuisance if his interference with the public right was [1] intentional, … [2] otherwise actionable under the principles controlling liability for negligent or reckless conduct, or [3] for abnormally dangerous activities." Cmt. (e).

Plaintiffs have taken the position that "[c]ourts in West Virginia have adopted the definition of 'public nuisance' set forth in § 821B of the Restatement (Second) of Torts."[1] But they run away from the Restatement's own explanation of the definition, asserting that Comment (e) is "simply describing the historical development of public nuisance law generally."[2] To say that, however, is to recognize that Comment (e) is describing the development of the common

---

[1] Plaintiffs' Mem. in Opposition to Joint Motion for Summary Judgment for Failure to Prove Fault Element of Public Nuisance Claims, Dkt. 1075, at 1.

[2] *Id*. at 2 n.2.

1

law up to the present day. Thus, it states, "[i]f a defendant's conduct in interfering with a public right does not come within one of the traditional categories of the common law crime of public nuisance or is not prohibited by a legislative act, *the court is acting without an established and recognized standard*."

In *Henricks v. Stalnaker*, 380 S.E. 2d 198, 200 (W.Va. 1989), the Supreme Court of Appeals adopted and applied the Restatement's tripartite test of "unreasonable interference," describing it as "conduct that is [1] intentional and unreasonable, [2] negligent or reckless, or that [3] results in abnormally dangerous conditions or activities in an inappropriate place." This Court observed that *Hendricks* is a private nuisance case. Dkt. 1294 at 5. And it is. But it is noteworthy that *Hendricks* defined a private nuisance in the same terms as a public nuisance—i.e., "as a substantial and unreasonable interference"—the only difference being that the "substantial and unreasonable interference" was with regard to "the private use and enjoyment of another's land," rather than with regard to a public right. *Id*. There is no reason to believe that the Supreme Court meant the term, "substantial and unreasonable interference," to mean one thing for public nuisance and something else for private nuisance.

With regard to what constitutes *intentional* conduct, this Court said:

> [T]he *Hendricks* opinion contradicts defendants' definition of intentional conduct. Defendants argue that intent, in this context, means intent to create the alleged harms resulting from oversupply of prescription opioids. … *Hendricks*, however, noted that it was sufficient to show the defendant intentionally dug the well with no *mens rea*: "The record indicates that the installation of the water well *was intentional*, but there was no evidence that the installation was done so as maliciously to deprive the Hendrickes of a septic system."

Dkt. 1294 at 5-6. With respect, this reading of the *Hendricks* opinion is mistaken. First, it overlooks the Supreme Court's express definition of "intentional" interference just a few paragraphs earlier. Noting that "the present case concerns conduct that is not a negligent,

2

reckless, or abnormally dangerous activity," the *Hendricks* Court limited its discussion "to conduct that is intentional and unreasonable." And, in the next sentence, the Court stated: "An interference is intentional when the actor ***knows or should know that the conduct is causing a substantial and unreasonable interference***." *Hendricks*, 380 S.E.2d at 201. The Court then went on to explain that malicious or indecent conduct bears on whether the actor's conduct is unreasonable, not whether it is intentional. *Id.* (stating that the balancing of harm and social value that determines whether an interference is unreasonable "is not absolute," but includes consideration of "the malicious or indecent conduct of the actor").

Second, this Court's reading of *Hendricks* overlooked the Supreme Court's recitation of the facts, which established that the defendant, Stalnaker, acted with knowledge that drilling a water well on his property would block his neighbors, the Hendrickes, from building a septic system on their property. Namely, when Stalnaker learned that the Hendrickes had taken steps to apply for a septic system permit, he hurriedly obtained a permit and drilled a water well, but having drilled it, did nothing to connect it to his house for a year.

Thus, when the Supreme Court said,

> … the Henrickes inability to operate a septic system on their property is clearly a substantial interference with the use and enjoyment of their land. The record indicates that the installation of the water well was intentional, but there was no evidence that the installation was done maliciously to deprive the Hendrickes of a septic system. Mr. Stalnaker wanted to ensure himself of an adequate water supply …,

the Court was ticking off three factors bearing on whether drilling the well constituted a substantial and unreasonable interference with the Hendrickes' enjoyment of their land. The Court said: (1) yes, it was a substantial interference; (2) yes, it was intentional (Stalnaker drilled his well only after he learned the Hendrickes were applying to install a septic system that, once in place, would prevent him from drilling the water well on his own property); but (3) no, it was

3

not malicious. This left the Court to deal with the fourth factor—the "critical question" whether the water well was unreasonable, based on "balancing the competing landholders' interests." *Id*. at 202.

As in *Hendricks*, there is no question in this case of abnormally dangerous conduct. Plaintiffs have never claimed, nor could they, that the distribution of prescription opioids by licensed distributors to licensed pharmacies is abnormally dangerous, else distribution of these FDA-approved medications would stop.

Nor can Plaintiffs base their nuisance claim on negligent/reckless conduct. *See* Dkt. 1007.3 (Part II).

Accordingly, Plaintiffs must prove conduct that was "intentional and unreasonable." *Id*. at 200.