IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>    Defendants. | Civil Action No. 3:17-01362 |
| CABELL COUNTY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>    Defendants. | Civil Action No. 3:17-01665 |

**CARDINAL HEALTH'S OPPOSITION TO PLAINTIFFS' MOTION
FOR RECONSIDERATION OF COURT'S RULINGS EXCLUDING P-00045**

Less than an hour before the close of their final witness's testimony and six weeks after they twice tried—and failed—to admit P-00045 into evidence, Plaintiffs filed a motion for reconsideration of the Court's order excluding the document from evidence in this trial. Dkt. 1435.[1] The Court has already heard extensive argument about the admissibility of this

---

[1] Plaintiffs style their submission as a "trial memorandum regarding admissibility of P-00045," Dkt. 1435, but the Court already twice denied their effort to move the document into evidence, so their submission is effectively a motion for reconsideration.

1

document, and the Court was twice correct that P-00045 is inadmissible hearsay. The document should not be admitted into evidence.

## BACKGROUND

*The Report.* P-00045 is a January 2008 report (the "Report") (i) prepared by the consulting group Cegedim Dendrite ("Dendrite") (ii) at the request and direction of outside counsel for Cardinal Health, Cadwalader, Wickersham, & Taft, LLP ("Cadwalader"), which had been retained (iii) to defend Cardinal Health in connection with an imminent DEA enforcement action. The Report (iv) was addressed to Cadwalader, which (v) shared it solely with Cardinal Health's General Counsel and senior in-house counsel.[2]

In November and December 2007, and again in January 2008, the DEA issued Administrative Inspection Warrants, Orders to Show Cause, and Immediate Suspensions of Registrations ("ISOs") to Cardinal Health, which culminated in a settlement with DEA in September 2008. The ISOs prohibited Cardinal Health from shipping controlled substances from three regional distribution centers—Auburn, Washington; Lakeland, Florida; and Swedesboro, New Jersey.[3] The distribution center that ships to Cabell-Huntington, the Wheeling, West Virginia distribution center, was *not* involved.[4] Cardinal Health retained Cadwalader to defend it.[5] One of Cadwalader's first actions was to retain the services of Dendrite, a firm with expert regulatory consultants, to advise it about the compliance systems challenged by the DEA. The Letter Agreement between Cadwalader and Dendrite provided that Dendrite would "assist with

---

[2] Plaintiffs refer to the Report as an "audit." The Report is not labelled as such and references a "review" of Cardinal Health's SOM System.

[3] Tr. (May 20) at 165:20–166:12 (excerpts of May 20 Tr. attached as Ex. 1).

[4] *Id.* at 167:10–20.

[5] The MDL Special Master held that Cardinal Health reasonably anticipated litigation with the DEA when it issued these ISOs, as well as potential shareholder litigation. MDL Dkt. 1380.

regulatory compliance consulting to Cardinal Health" in furtherance of Cadwalader's efforts to "'provide[] legal advice to its client Cardinal Health … in preparation of its pending regulatory action'" by DEA.[6]  Dendrite also agreed to provide consulting services to Cardinal Health.

Dendrite went to work in December 2007, gathering information about Cardinal Health's Suspicious Order Monitoring ("SOM") system through on-site interviews and other communications with the company's employees.  Dendrite submitted its report to Cadwalader on January 23, 2008—less than one month after the last Order to Show Cause and ISO was issued.  It was marked as **ATTORNEY CLIENT PRIVILEGED/CONFIDENTIAL** and was addressed only to Cadwalader.  Cadwalader shared the Report only with Cardinal Health's then General Counsel, Steve Falk, and senior in-house counsel.[7]  The Report gave Dendrite's professional opinion regarding Cardinal Health's compliance with its suspicious-order reporting obligations in light of DEA's new guidance, as articulated in letters issued to registrants in September 2006, February 2007, and December 2007, and provided recommendations.

As counsel informed the Court,[8] the MDL Special Master overruled Cardinal Health's claim of privilege over the Report, and Judge Polster affirmed the Special Master's ruling, but neither disputed the facts that establish the privileged status of the Report—i.e., that (1) Cadwalader, not Cardinal Health, engaged Dendrite to assist it in defending against a DEA enforcement action; (2) Dendrite interrogated the client about its compliance with DEA's

---

[6]   Cardinal Health will provide the Letter Agreement to the Court *in camera*, if that would be useful to the Court.

[7]   The only copy of the Report that Cardinal Health has been able to locate in its files was found in the closed files of Mr. Falk.  No copies were found in the files of the custodians whose documents have been produced in the litigation, further confirming that this work was done at the direction of counsel and for the purpose of legal advice by counsel.

[8]   Tr. (May 20) at 68:16–69:1, 130:20–131:6.

3

regulations (and DEA's letters regarding those regulations); and (3) the Report described Dendrite's investigation, and interpreted its regulatory significance for Cadwalader's determination of a defense strategy. MDL Dkt. No. 1498 at 3–4; Dkt. 1435-3. And neither the Special Master nor the district court disputed that (4) apart from Cadwalader, only Cardinal Health's General Counsel and senior in-house counsel received a copy of the report. MDL Dkt. No. 1498 at 7; Dkt. 1435-3.

*Plaintiffs' attempts to move the Report into evidence.* The parties argued the admissibility of the Report (P-00045) two times on May 20, 2021, during the testimony of Cardinal Health witness Michael Mone, and the Court twice ruled that the document was inadmissible. When Plaintiffs' counsel first attempted to admit the document during the morning session, Cardinal Health's counsel objected to admission of the Report as privileged and inadmissible hearsay and objected to questioning Mr. Mone about the Report, who testified that he had not previously seen it.[9] The Court sustained the hearsay objection.[10]

After the lunch break, the parties again took up the admissibility of P-00045, and Cardinal Health's counsel again asserted that the document is inadmissible hearsay.[11] Plaintiffs' counsel asked to make a record on the hearsay objection, and the Court permitted counsel for both the City and County to do so.[12] After a lengthy back-and-forth between the parties, the Court then affirmed its prior ruling and held, "I'm going to stick with my original ruling, but I

---

[9]  Tr. (May 20) at 68:16–70:8.

[10] *Id.* at 70:9–10 ("Okay. I'll sustain the objection for now…"); *id.* at 126:23–127:4 ("We objected to the admissibility of P-45 on hearsay grounds and … we understood that that was the objection that Your Honor sustained and why that document is not admissible.").

[11] *Id.* at 127:24–128:2 ("[T]he document is not independently admissible because it is hearsay and the plaintiffs have not overcome the hearsay objection. Your Honor sustained that objection.").

[12] *Id.* at 128:3–130:18.

will take another look at it and if it ought to be reversed, but I know what the arguments are here. And I will consider your arguments, Mr. Ackerman."[13] Plaintiffs' counsel did not request to brief the issue, nor did the Court request any briefing, having made clear that it understood the parties' arguments. The Court did not reverse its ruling at any point during the 18 trial days of Plaintiffs' case that followed.[14]

## ARGUMENT

As the Court has twice recognized, P-00045 is inadmissible hearsay. It is also a privileged communication and attorney work product. Plaintiffs agree that Dendrite was hired by Cardinal Health's outside legal counsel in 2007 for the purposes of giving "advice" to counsel in connection with its defense of the company in a DEA enforcement proceeding. Dkt. 1435 at 1. Prepared at the law firm's request, essential to its understanding of the allegations being made by the DEA, and ultimately shared only with a small number of lawyers at Cardinal Health, the Report's sole purpose was to inform Cadwalader's strategy vis-à-vis the DEA threatened enforcement action. The Report therefore was a privileged communication, privileged work product, and is not the type of statement that is admissible as a statement of a party opponent under Federal Rule of Evidence 801(d)(2).

---

[13] *Id.* at 132:17–21.

[14] The Court has *sua sponte* reversed itself when it later determined that it made an incorrect ruling. *See* Tr. (June 28) at 7:9–15 ("Before I start, Mr. Mahady, I went back and checked the testimony of Mr. Zerkle, I believe it was, based on your objection and you were right. So what I'm going to do is I'm going to strike those portions of Mr. [Holbrook's] testimony, but I'm going to admit the two documents, 415271 and 413741 under 803(8). So that's how I'm going to handle that.").

5

### A. The Report Was a Privileged Communication Between an Outside Consultant and Cardinal Health's Outside Legal Counsel To Aid the Law Firm's Advice to Cardinal Health.

As outside counsel retained to defend Cardinal Health in anticipated litigation with DEA, Cadwalader retained Dendrite and had the client explain its SOM system "in the first instance" to Dendrite so that the law firm, in turn, could "interpret [the information] so that [Cadwalader] may better give legal advice." *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961). The Report evaluated Cardinal Health's compliance measures, did so separately as to the regulations and the statute, explained how DEA's December 2007 letter changed the industry's understanding of what had been approved, and made recommendations (taking into account changes already being implemented). That understanding and determination were essential predicates to Cadwalader's formulation of a defense strategy to the three ISOs. After receiving the Report and using it to prepare a defense strategy on behalf of Cardinal Health, Cadwalader provided the Report only to Cardinal Health's General Counsel and senior in-house counsel.

These facts establish that the Report is a privileged communication. *See Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981) (attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable him to give sound and informed advice"); *Kovel*, 296 F.2d at 922 (there is a privilege "where the client in the first instance consults a lawyer who retains an accountant [or consultant]"; "if the lawyer has directed the client, either in the specific case or generally, to tell his story in the first instance to an accountant engaged by the lawyer, who is then to interpret it so that the lawyer may better give legal advice, communications by the client reasonably related to that purpose ought fall within the privilege"); *Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 951 F. Supp. 679, 685–86 (W.D. Mich. 1996)) ("The mere fact that business considerations are weighed in the rendering of legal advice does not vitiate the attorney-client

privilege." (quoting *Zigler v. Allstate Ins. Co.*, 2007 WL 1087607, at *1 (N.D. Ohio Apr. 9, 2007) (holding "'documents prepared for the purpose of obtaining or rendering legal advice are protected even though the documents also reflect or include business issues'" (quoting *In re OM Sec. Litig.*, 226 F.R.D. 579, 587 (N.D. Ohio 2005)))); *United States ex rel. Robinson v. Northrop Grumman Corp.*, 2002 WL 31478259, at *5 (N.D. Ill. Nov. 5, 2002) (report prepared by consultant for legal department in anticipation of a wide-scale government audit was privileged, even where consultant performed other non-privileged work); Fed. R. Civ. P. 26(b)(3) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, **consultant**, surety, indemnitor, insurer, or agent.") (emphasis added).

The MDL Special Master (and the district court in affirming the ruling) erred in finding that the Report is not privileged. MDL Dkt. No. 1530. Because the company (not Cadwalader) also retained Dendrite to provide non-privileged business consulting services, the Special Master erroneously focused on the primary purpose of Dendrite's overall work for Cardinal Health, not the purpose of the Report, which was commissioned solely by Cadwalader. *Id.* In so doing, he employed the "primary purpose" test, which was not the proper test where the communication is between lawyer and consultant. *Upjohn* and *Kovel* supply the proper legal test in that circumstance. Those decisions recognized that a lawyer may delegate to an expert consultant "in the first instance" the interrogation of the client in order to elicit the client's "story," where that story involves a specialized field, like accounting or regulatory compliance. A fair reading of the Report reflects that Dendrite did just that. The Special Master appeared to conclude, however, that such reporting could never be legal in nature because the subject of the reporting (regulatory

compliance) was an essential element of Cardinal Health's business. The cases hold otherwise. *See, e.g.*, *Robinson*, 2002 WL 31478259, at *5.

Plaintiffs' contention that Cardinal Health waived privilege is without merit. Dkt. 1435 at 3–5. Cardinal Health asserted privilege over the Report in Track One of the MDL and litigated that privilege claim before the Special Master and then before the district court. Cardinal Health lost that claim and was forced to produce the document. Under those circumstances, there has been no waiver.[15]

The Special Master's finding that Cardinal Health had waived the privilege simply by denying plaintiffs' allegations in the MDL litigation that its SOM system was not in compliance with the law is equally without merit. Before being ordered to produce the document by Judge Polster, Cardinal Health had not publicly released the Report, provided it to any government agency, or made representations about the report—let alone statements contained therein—in furtherance of its claims or defenses in any legal forum. A mere denial of liability, without putting the contents of the Report itself at issue, does not constitute a waiver of a privilege. If it did, then every criminal defendant who pleads not guilty, and every civil defendant who denies liability, will have waived privilege. That is not the law. *See, e.g.*, *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) ("[a] mere indication of a claim or defense certainly is insufficient to place legal advice at issue…. [A] party must rely on privileged advice from his counsel to

---

[15] During the cross-examination of Mayor Williams, Plaintiffs took the position, and this Court endorsed it, that they could assert an attorney-client privilege objection over certain testimony *for the first time at trial*, having *failed* to previously assert such a privilege when the same testimony was elicited at a deposition. Tr. (June 30) at 155:9–16 ("MS. KEARSE: … [A]nything we've discussed, obviously, is privileged, but it's outside the scope— THE COURT: I'll sustain the objection to the question the way you asked it, Mr. Ruby. MR. RUBY: Judge, I'll just note that this was testified to without objection in the witness's deposition. THE COURT: Well, it's objected to now, so I'll sustain it now.").

make his claim or defense."); *cf. First Am. Title Ins. Co. v. Bowles Rice, LLP*, No. 1:16-cv-219, 2017 WL 6329953, at *7 (N.D.W.V. Dec. 11, 2017) ("advice does not become 'in issue' unless a client takes affirmative action to rely on his or her attorney's advice in subsequent litigation").

### B. The Report Is the Privileged Work Product of Cardinal Health's Outside Counsel.

There is no dispute that the Report contains an analysis prepared by Dendrite at the request and direction of outside counsel for Cardinal Health for the purpose of (i) assisting outside counsel in providing legal advice to Cardinal Health in connection with then-ongoing regulatory actions by DEA and (ii) in anticipation of litigation related to those actions. MDL Dkt. No. 1380. The Report therefore constitutes privileged attorney work product. *See, e.g.*, *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, (4th Cir. 2019) ("Although the work-product doctrine does not trace as far into history as the attorney-client privilege, it is no less important…. [P]roper preparation of a client's case demands that [a lawyer] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.'" (quoting *Hickman v. Taylor*, 329 U.S. 495, 511 (1947))).

### C. The Report Is Not Admissible Pursuant to FRE 801(d)(2).

The Report is a privileged communication and attorney work product. But even if the Court concludes otherwise, the Report remains inadmissible hearsay. Plaintiffs contend that the Report is admissible under Federal Rules of Evidence 801(d)(2)(C) and (D), but neither applies here.

The issue of whether a statement made by an attorney or a consultant working at the direction of an attorney is admissible under Federal Rule of Evidence 801(d)(2) has not arisen very often in the Fourth Circuit, undoubtedly because, in most circumstances, such statements

9

would not have been produced to the opposing party. Of the three cases counsel located that involve admissions of attorney statements, all involve statements made by attorneys to third parties, not statements made between consultant and attorney or between attorney and client.[16] Counsel is not aware of any case in the Fourth Circuit in which a court admitted a statement of the type at issue here—between consultant and attorney—under Federal Rule of Evidence 801(d)(2).

Plaintiffs cite several cases holding that a consultant's report is admissible as a party admission, but none of those cases involve the factual scenario at issue here, where the consultant was hired by an outside attorney for the purposes of rendering legal advice in anticipation of litigation. And all of those cases involve documents that were provided to the party and that the party affirmatively adopted in some way. For example, in *Walden v. Seaworld Parks & Entertainment, Inc.*, No. 4:11CV113, 2012 WL 4050176, at *2 (E.D. Va. May 31, 2012), the document admitted under Rule 801(d)(2) was a spreadsheet that the ***defendant's employee*** prepared. It included portions of the outside consultant's work, but "added additional data on the status of the defendant's efforts to address the … issues identified by the consultant." *Id.* Where the party itself prepared the document, and added information of its own, of course it was an admission. Similarly, in *Eramo v. Rolling Stone, LLC*, No. 3:15-CV-00023, 2016 WL 6024415, at *2 (W.D. Va. Oct. 13, 2016), the court admitted a consultant's report as a statement of a party opponent where the defendant published the report on its website, noting that it would

---

[16] *United States v. Gordon*, 754 Fed. Appx. 171, 177 (4th Cir. 2018) (bankruptcy petition prepared by attorney was admissible against client as non-hearsay); *United States v. Gregory*, 871 F.2d 1239, 1242–43 (4th Cir. 1989) (sheriff's attorney's statement to equal opportunity specialist investigating complaints against sheriff admissible against sheriff); *United States v. Martin*, 773 F.2d 579, 583–84 (4th Cir. 1985) (attorney's statements to the IRS made during the course of attorney's representation of defendant were admissible against defendant).

change its practices based on report.[17] Again, the party affirmatively adopted the consultant's work.

There are no facts in the record establishing that Cardinal Health adopted Dendrite's Report in any way, nor is there any evidence in the record that anyone at Cardinal Health ever received a copy of the Report apart from two in-house lawyers who were working with Cadwalader. Plaintiffs therefore have not established that the Report is the type of third-party consultant report that is admissible as a party admission or statement by an agent.[18]

> **D. Cardinal Health Will Be Prejudiced if the Report is Admitted at this Time in the Trial.**

Plaintiffs tried twice to admit the Report while Michael Mone, a former employee, was on the stand. While Mr. Mone did not receive a copy of the Report and therefore could not be questioned about the document or lay the foundation for whether Cardinal Health "adopted" the Report, the Report was issued at the beginning of the time period that Mr. Mone was the head of Cardinal Health's SOM system. If the Court had admitted the document during Mr. Mone's

---

[17] *See also FTC v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2018 WL 6576029, at *2 (N.D. Cal. Dec. 13, 2018) (documents produced by third-party consulting firm were statements of party opponent and adoptive admissions where defendant "was very involved in leading the analysis" during the consulting project and defendant helped present analysis to its board); *Penguin Books U.S.A. v. New Christian Church of Full Endeavor, Ltd.*, 262 F. Supp. 2d 251, 259–61(S.D.N.Y. 2003) (book that plaintiff printed, disseminated, and profited from was admissible under FRE 801(d)(2)(C) and (D)); *Reid Bros. Logging Co. v. Ketchikan Pulp Co.*, 699 F. 2d 1292, 1306–07 (third-party report was admission of party opponent where report was presented at meeting of defendant attended by various defendant executives and, following the meeting, report was circulated to defendant officers and managers); *Rollins v. Bd. of Governors for Higher Educ.*, 761 F. Supp. 939, 942–43 (D.R.I. 1991) (investigative report was admissible under FRE 801(d)(2)(C) and (D) where report was used by Board of Governors and provided a basis for changes that were put in place).

[18] The FTI Consulting report admitted against Defendant AmerisourceBergen earlier in the trial did not involve an outside consultant hired by an attorney to assist in rendering legal advice, and Amerisource's witness, Mr. May, testified that he received a copy of the report. Tr. (May 14) at 68:10–69:5.

testimony, Cardinal Health's counsel would have had the opportunity to address any factual issues raised in the Report with Mr. Mone while he was still on the stand. Mr. Mone could have and would have confirmed that Cardinal Health's revised SOM system resolved any issues raised in the Report, in addition to the testimony that Mr. Mone already provided regarding Cardinal Health's SOM revisions. Thus, to allow this document to be entered into the record on the cusp of closings would result in a severe prejudice to Cardinal Health. *See* Fed. R. Evid. 403.

## CONCLUSION

For the foregoing reasons, and the ones already determined by the Court, P-00045 is hearsay and should not be admitted as evidence in the trial.

Dated: July 12, 2021

Respectfully submitted,

**CARDINAL HEALTH, INC.**

*/s/ Steven R. Ruby*
Michael W. Carey (WVSB No. 635)
Steven R. Ruby (WVSB No. 10752)
David R. Pogue (WVSB No. 10806)
Raymond S. Franks II (WVSB No. 6523)
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
drpogue@cdkrlaw.com
rsfranks@cdkrlaw.com

*/s/ Ashley W. Hardin*
Enu Mainigi
F. Lane Heard III
Jennifer G. Wicht
Ashley W. Hardin

        WILLIAMS & CONNOLLY LLP
        725 Twelfth Street NW
        Washington, DC 20005
        Tel:  (202) 434-5000
        Fax:  (202) 434-5029
        emainigi@wc.com
        lheard @wc.com
        jwicht@wc.com
        ahardin@wc.com
        ***Counsel for Defendant Cardinal Health, Inc.***

## CERTIFICATE OF SERVICE

I, Steven R. Ruby, counsel for Defendant Cardinal Health, do hereby certify that service of the foregoing **CARDINAL HEALTH'S OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF COURT'S RULINGS EXCLUDING P-00045** was filed electronically via the CM/ECF electronic filing system and served on all counsel registered in the system.

Dated: July 12, 2021

/s/ *Steven R. Ruby*
Steven R. Ruby