# EXHIBIT 1

```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                       AT CHARLESTON

_____x
                              :
THE CITY OF HUNTINGTON,       :     Civil Action
                              :
            Plaintiff,        :     No.  3:17-cv-01362
                              :
v.                            :
                              :
AMERISOURCEBERGEN DRUG        :
CORPORATION, et al.,          :
                              :
            Defendants.       :
_____x
                              :
CABELL COUNTY COMMISSION,     :     Civil Action
                              :
            Plaintiff,        :     No. 3:17-cv-01665
                              :
v.                            :
                              :
AMERISOURCEBERGEN DRUG        :
CORPORATION, et al.,          :
                              :
            Defendants.       :
_____x


                 BENCH TRIAL - VOLUME 14
   BEFORE THE HONORABLE DAVID A. FABER, SENIOR STATUS JUDGE
              UNITED STATES DISTRICT COURT
              IN CHARLESTON, WEST VIRGINIA


                     MAY 20, 2021
```

1    were you aware of Dendrite being hired to do an evaluation
2    of the system, Mr. Ron Buzzeo?
3    **A.**   The, the work that Ron Buzzeo's group did with my team
4    was that they provided additional resources for
5    investigations.
6    **Q.**   Do you remember being interviewed by Mr. Buzzeo related
7    to the functioning of that system?
8    **A.**   I don't remember -- I don't remember an interview by
9    Ron.  I know that Ron and I had talked, but I don't have any
10   specific recollection of an interview.
11              MR. FULLER:  May I approach, Judge?
12              THE COURT:  Yes.
13   BY MR. FULLER:
14   **Q.**   Mr. Mone, do you recognize this document?
15   **A.**   I do not.
16              MS. MAINIGI:  Your Honor, I have an objection to
17   the use of this document which is P-45.  There are multiple
18   objections.
19        I think the witness has indicated he doesn't recognize
20   the document.  The document is hearsay.  And there was a
21   privilege objection in the MDL court related to this
22   document.  That privilege objection was ultimately overruled
23   by Special Master Cohen.
24        But just for the purpose of the record, we continue to
25   assert our privilege objection to this -- for the purpose of

1   the record here.  But foundationally I don't think that they
2   can cover this document with this witness.
3           THE COURT:  Well, he said he didn't recognize it.
4       Go ahead, Mr. Fuller.
5           MR. FULLER:  Thank you, Judge.
6   BY MR. FULLER:
7   Q.   Mr. Mone, if you'll turn to the second page of this
8   document --
9           MS. MAINIGI:  Objection, foundation.
10          THE COURT:  Well, yeah.  How -- just address her
11  objection and --
12          MR. FULLER:  Sure, Your Honor.  Quite frankly,
13  I'll just move it into evidence, Your Honor.  This is one of
14  the stipulated documents.  I don't necessarily need to ask
15  the witness about it.  He's referenced in it and there's
16  emails from him attached to it.
17          THE COURT:  Can I admit it as one of the
18  stipulated documents if he's not questioned about it?
19          MR. FULLER:  We would submit it only for notice
20  and knowledge, Judge.
21          MS. MAINIGI:  Your Honor, we have stipulated to
22  authenticity and no sponsoring witness, but we still have a
23  hearsay objection related to it, as well as lack of
24  knowledge and the previously stated 403.  But we maintain a
25  hearsay objection in addition to the others.

1      THE COURT: Well, he's saying he's not admitting
2 it for the hearsay, only to knowledge and notice. Can I
3 admit it for that limited purpose?
4      MS. MAINIGI: I don't think so, Your Honor,
5 because this particular witness did not get this document.
6 So if he's the head of the Anti-Diversion and he did not get
7 this document, I don't know what kind of notice it serves
8 as, and it is otherwise hearsay.
9      THE COURT: Okay. I'll sustain the objection for
10 now. Maybe you can get it in some other way.
11 BY MR. FULLER:
12 **Q.** All right. 9809. Mr. Mone, do you recognize this
13 document which is Plaintiffs' 9809?
14 **A.** I do not.
15      MR. FULLER: Judge, I would move this one in for
16 the record. This is, again, another stipulated document.
17 It's by Cardinal's counsel to DOJ and it revolves around the
18 Valencia distribution center and promises made by Cardinal.
19      MS. MAINIGI: Your Honor, I object. I disagree
20 that this is a stipulated document. I do not believe it is.
21 Perhaps I'm wrong and Mr. Fuller can show me that. But our
22 records do not indicate this is a stipulated document.
23   We've already established there's no personal knowledge
24 related to this document. And, more significant than that,
25 Your Honor, is that it's completely irrelevant to

1   my fault because I didn't perfectly understand the
2   stipulations.  I've read them now and I think that I do.
3       So, Mr. Majestro, I think we can just deal with it as
4   it comes up.
5           MR. MAJESTRO:  Okay.  So, we'll put them on the
6   list and we'll see what happens.
7           THE COURT:  Mr. Farrell?
8           MR. FARRELL:  I think that cures everything except
9   for P-45.  P-45 is the audit and, this morning, there was an
10  objection on foundation, which you sustained.
11      So, we're perfectly willing and able and encourage a
12  discussion on hearsay grounds, but the objection that was
13  sustained -- that was made and sustained, according to my
14  learned co-counsel, was on foundation.  So, the problem that
15  we have is that if, in fact, we're going to have foundation
16  arguments, then we only have a finite number of Cardinal
17  Health witnesses in order to present it through.
18          THE COURT:  Well, doesn't the stipulations take
19  care of the foundation argument?  And that may -- I don't
20  remember that specific document.
21          MR. FARRELL:  Yes, Your Honor.
22          THE COURT:  But --
23          MS. HARDIN:  Your Honor, I think we are perhaps
24  confusing -- can you hear me -- confusing two issues.
25      We objected to the admissibility of P-45 on hearsay

1    grounds and it's certain we don't have access to the
2    transcript at this point in time, but we understood that
3    that was the objection that Your Honor sustained and why
4    that document is not admissible.
5         We made a foundation objection to whether or not Mr.
6    Mone is capable of testifying about that document, whether
7    or not it comes in.  The answer to that is lack of
8    foundation because he testified that he -- I believe he
9    testified that he had never seen it.  So, that was the
10   foundation objection.  No custodial deposition could cure
11   that.
12             THE COURT:  So, you're saying that the stipulation
13   makes it admissible, but there's no foundation for Mr. Mone
14   to testify?
15             MS. HARDIN:  No, sir.  We don't believe the
16   stipulation makes P-45 admissible.  We -- the stipulation
17   says we're not going to object to P-45 on the ground of
18   authenticity, so we don't contend that it's not authentic,
19   and we don't contend that they have to put up a sponsoring
20   witness.
21        So, if P-45 were independently admissible, then it
22   could come in theoretically through Mr. Mone, but Mr. Mone
23   cannot testify about it because he has no foundation from
24   which to do so.  And here, in this particular instance, the
25   document is not independently admissible because it is

1  hearsay and the plaintiffs have not overcome the hearsay
2  objection.  Your Honor sustained that objection.
3        MR. ACKERMAN:  Your Honor, may we make a record on
4  the hearsay objection because I don't believe a record has
5  been made on that objection.
6        MR. FARRELL:  That's my point, Judge.  The
7  stipulation isn't limited to a sponsoring witness.  The
8  stipulation says foundation.  We were prevented from asking
9  any questions on foundation and that was the objection.
10       So, to be clear, what we're suggesting is that Mr. Mone
11 says he's never seen this document before.  We agree that
12 precludes us from asking him questions on a document he has
13 no knowledge of.  It does not preclude us from tendering
14 that document to the Court for admission.
15       What we're suggesting is that this process could be
16 expedited and the witness testimony truncated if we come up
17 with a procedure where we can take documents that we believe
18 are subject to stipulation and tender them to the Court as
19 if this were an appellate case submitted on the briefs.
20       There are documents we can submit on their face that
21 will save us a tremendous amount of time and argument having
22 to present it during an individual witness's testimony.
23       That being said, we have a pretty good argument of why
24 this document, which was prepared at the request of, in the
25 custodial file of, argued and briefed and even subject to

1  deposition testimony is not hearsay.
2         Now, one real quick side-bar.  The defendants have also
3  gone and made the argument that this document is subject to
4  attorney-client privilege and I would like to proffer for
5  the record that in the MDL 2804, ECF 1498, discovery ruling
6  14.5, it specifically rejects attorney-client privilege and
7  that it was affirmed by Judge Polster at ECF 1553.
8         So, to the extent that the defendants are trying to
9  preserve for the record that this document is covered by
10 attorney-client privilege, we believe there's been an
11 insufficient showing to invoke the privilege.
12             THE COURT:  Okay.  Which one is it?  What's the
13 number on it?  I will try and find it here.
14             MR. ACKERMAN:  P-45.
15             THE COURT:  P-45?
16             MR. ACKERMAN:  Yes, sir.
17             MS. HARDIN:  Your Honor --
18             THE COURT:  Let me --
19             MS. HARDIN:  Sure.  Certainly.
20             THE COURT:  Okay, I've got it now.
21             MR. ACKERMAN:  So, Your Honor, with respect to the
22 hearsay objection, this is a document that states on it --
23 the first line of the letter says, "I have attached for your
24 information and review our initial findings and
25 recommendations on Cardinal Healthcare's Suspicious Order

1  Monitoring System."  It is similar, if not identical, at
2  least in analysis, to the FTI report that Your Honor ruled
3  was not hearsay with regard to ABDC.
4      The reason that it is not hearsay, Your Honor, is
5  because it falls within an opposing party's prior statement
6  within Rule 801(d)(2) and, specifically, it is 801(d)(2)(C),
7  a statement made by a person whom the party authorized to
8  make a statement on the subject.  Cardinal Health hired
9  Cegedim Dendrite and authorized them to investigate and
10 report their findings on its Suspicious Order Monitoring
11 System.
12     It also is not hearsay pursuant to Rule 801(d)(2)(D),
13 as in Delta, because it is a statement made by the party's
14 agent on a matter within the scope of that relationship and
15 while it existed.  And I do believe that you stated with
16 respect to ABDC that FTI was their consultant and their
17 agent for purposes of this review.  The same analysis
18 applies with respect to this document.
19          THE COURT:  Ms. Hardin?
20          MS. HARDIN:  Your Honor, we disagree on both
21 counts.  One, Ms. Mainigi was clear this morning that this
22 document was subject to an adverse privilege ruling against
23 us in the MDL.  We fought tooth and nail to have to produce
24 this document.  We lost that battle.
25     But now, here we are at the moment of truth.  This is

1  the trial. And it's now wanting to be offered against us
2  and admitted against us. And so, we do not waive our
3  privilege objection. We have never waived that objection.
4  And we assert it here again to the extent that this is the
5  first time this document is ever being utilized against us
6  in a court. So, that's point one.
7  Point two, this document does not fall within the
8  hearsay exception. 801(2)(d)(C) -- I don't know if I'm
9  getting all the letters confused -- is a statement of an
10 agent.
11 In the -- the Fourth Circuit has addressed two times
12 whether or not a party's lawyer's statement can be admitted
13 against them under this exception and both times both
14 statements involved a statement that the lawyer made to
15 someone else in the outside world.
16 This report is legal advice. It is Cardinal Health's
17 lawyer talking to it in a privileged attorney-client
18 communication. They are not acting as our agent in that
19 situation in terms of making statements on our behalf, nor
20 did we authorize them to make any statements on our behalf
21 to anyone else.
22 And so, if the exception is going to be that legal
23 advice given within the confines of the attorney-client
24 communication can then be entered against that party at
25 trial, then I submit that is beyond anything that we have

1    seen in the case law in the Fourth Circuit and it's not what
2    is contemplated by that exception, nor is this our own
3    statement that we have adopted in any sense.
4         I mean, again, this is legal advice.  And the legal
5    advice was given to us just the same as if I call my client
6    this afternoon and I give them my opinion about how this
7    trial is going.  That is not an admission of my -- that will
8    not be an admission of my client.  That will not be my
9    client's statement.  That would be my statement to my
10   client.
11        So, it is hearsay.  It's an out-of-court statement that
12   they want to offer for the truth and they haven't yet given
13   a proper hearsay objection, anything to override the hearsay
14   objection, in our opinion, Your Honor.
15             MR. ACKERMAN:  So, Your Honor, let me address that
16   briefly.  First of all --
17             THE COURT:  I've heard enough of this.  I'm going
18   to stick with my original ruling, but I will take another
19   look at it and see if it ought to be reversed, but I know
20   what the arguments are here.
21        And I will consider your arguments, Mr. Ackerman.
22             MR. ACKERMAN:  Okay.
23             THE COURT:  And we've spent a half-hour almost on
24   this and we need to get rolling.
25        Mr. Mone, are you here?

*Ayme A. Cochran, RMR, CRR (304) 347-3128*

1    **Q.**    Now, do you recall Mr. Fuller asking you some questions
2    about this 2008 settlement with the DEA?
3    **A.**    I -- I vaguely recall them, yes.
4           MS. MAINIGI: Your Honor, as you know, we have
5    objected to a discussion of that based on geographic scope
6    and we retain our objection to that, but I am going to ask a
7    few questions since Mr. Fuller was allowed to ask questions
8    and we don't waive --
9           THE COURT: You may ask questions without waiving
10   the objection.
11           MS. MAINIGI: Yes, Your Honor. Thank you.
12           THE COURT: That's fine. The objection will be
13   preserved.
14           BY MS. MAINIGI:
15   **Q.**    Around the same time that you took your position at
16   Anti-Diversion at the end of 2007, did the DEA begin
17   enforcement actions related to certain Cardinal Health
18   Distribution Centers?
19   **A.**    Yes.
20   **Q.**    Now, in terms of timeline, if I represent to you that
21   the ABDC Conference was September 2007, do you recall when
22   the first immediate suspension order against a Cardinal
23   Health Distribution Center occurred?
24           MR. FULLER: Objection, foundation, Judge.
25           THE COURT: Overruled. If he remembers, he can

1  answer.
2              THE WITNESS: To the best of my recollection, it
3  was -- it was towards the end of November of 2007.
4              BY MS. MAINIGI:
5  **Q.** And was that the Auburn-Washington State facility?
6  **A.** Auburn was the first one, yes.
7  **Q.** And then were there two more in December, the month
8  that you arrived?
9  **A.** Yes.
10 **Q.** And were those Lakeland, Florida and Swedesboro, New
11 Jersey?
12 **A.** Yes. Swedesboro on my 50th birthday.
13 **Q.** Happy birthday.
14 **A.** Thank you.
15 **Q.** Was there also an Order to Show Cause in January, 2008?
16 **A.** I do not recall whether it was December or January, but
17 I do recall an Order to Show Cause.
18 **Q.** And do you recall that was Stafford, Texas?
19 **A.** It was Texas.
20 **Q.** And each of those four distribution centers, Mr. Mone,
21 had a separate registration with the DEA; is that correct?
22 **A.** They did, yes.
23 **Q.** And do you recall generally what type of pharmacies
24 were involved in the 2008 DEA action?
25 **A.** They were predominantly what in the literature and the

*Ayme A. Cochran, RMR, CRR (304) 347-3128*

1   DEA language were called internet pharmacies.
2   **Q.**   To your recollection by this point in time, had
3   Cardinal Health taken measures to ensure that none of its
4   customers were acting as internet pharmacies?
5   **A.**   Yes.
6   **Q.**   Now, do you recall around that time how many
7   distribution centers Cardinal Health had approximately?
8   **A.**   I know that there were more than 20.  I don't recall
9   the specific number.
10  **Q.**   And do you recall any allegation in this point in time,
11  the end of 2007, beginning of 2008, against the Wheeling,
12  West Virginia Cardinal Health Distribution Center?
13  **A.**   No.  I don't believe there was anything ever about
14  Wheeling.
15  **Q.**   And, to your knowledge, did any of the distribution
16  centers at issue in the 2008 enforcement actions ship
17  controlled substances to West Virginia?
18  **A.**   To pharmacies in West Virginia?
19  **Q.**   Correct.
20  **A.**   No.
21  **Q.**   And I think you've already testified that by the time
22  you got some of these enforcement actions, Cardinal Health
23  had already begun to make changes to its Suspicious Order
24  Monitoring System?
25  **A.**   Yes, it had.

*Ayme A. Cochran, RMR, CRR (304) 347-3128*