IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>    Defendants. | Civil Action No. 3:17-01362 |
| CABELL COUNTY COMMISSION,<br><br>    Plaintiff,<br><br>v.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, *et al.*<br><br>    Defendants. | Civil Action No. 3:17-01665 |

**MCKESSON'S TRIAL BRIEF IN OPPOSITION TO PLAINTIFFS' TRIAL MEMORANDUM REGARDING ADMISSIBILITY OF LETTERS FROM THE DOJ/DEA TO MCKESSON**

1

**INTRODUCTION**

Plaintiffs seek reconsideration of this Court's May 24, 2021 ruling that letters sent by the U.S. Department of Justice, Drug Enforcement Agency ("DOJ/DEA") to McKesson's outside counsel, Covington and Burling, LLP, are inadmissible. There is no factual basis or legal basis for Plaintiffs' motion for reconsideration. And granting reconsideration now, after the close of evidence, would be unfairly prejudicial to McKesson.

Each of the four letters sets out the DOJ/DEA's unproven, hearsay *allegations* regarding McKesson's alleged conduct. Each, moreover, was made in the context of negotiations about the potential settlement of DOJ/DEA's claims against McKesson. The letters—several of which bear explicit captions such as "***Confidential and Subject to Federal Rules of Evidence 408***"—on their face make plain that they fall within the heartland of Federal Rule of Evidence 408's ("Rule 408") prohibition on use of settlement negotiations and related communications. For this reason, the Court correctly excluded the only one of the four letters that Plaintiffs actually attempted to introduce at trial as "covered by [FRE] 408," noting that its admission would violate "a long-standing rule that the Court's rulings should not inhibit the efforts of the parties to settle cases." 5/24 Tr. at 105:11–106:1.

Nothing in Plaintiffs' brief offers a reasoned basis for the Court to second-guess its prior ruling. Plaintiffs' argument that Rule 408 is not implicated by these letters because this litigation is separate from the potential litigation discussed in the DEA/DOJ letters is contrary to binding Fourth Circuit precedent. As a matter of law, Rule 408 applies not just to communications sent in the same action but also to communications in related actions. And, as a factual matter, the letters concern the same alleged but unproven conduct that now forms the crux of Plaintiffs' claim in this case. The reason why Rule 408 forbids use of such communications is evident: absent a prohibition on use, a plaintiff is subsequent litigation could always point to unproven allegations

2

made by the plaintiff in prior litigation, and try (as Plaintiffs do here) to transform what were mere allegations in the earlier litigation into evidence of wrongdoing in the latter litigation. Such bootstrapping is not permitted.

While Plaintiffs pay lip service to the claim that they are seeking to use the letter for "another purpose" under Rule 408—*i.e.*, "notice and/or knowledge of" McKesson's alleged failure "to report suspicious orders" and "issues with McKesson's suspicious order monitoring program," Br. at 7—their own statements belie that claim. Plaintiffs' brief makes clear that they are seeking to use the letters as evidence that McKesson was on "notice" that it acted in violation of the law, and then to use those alleged legal violations to prove liability in this action. That is precisely what Rule 408 forbids. Because Plaintiffs have identified no valid purpose for using the letters other than as evidence that the allegations therein were true, the letters are also inadmissible for the separate, independent reason that they constitute inadmissible hearsay.

In addition to these fundamental defects, (1) Plaintiffs unreasonably delayed in bringing the motion and (2) the letters are irrelevant to Plaintiffs' public nuisance claim. For all these reasons, the Court should reaffirm its prior order and deny Plaintiffs' belated motion for reconsideration.

## PROCEDURAL HISTORY

On May 24, 2021, during the testimony of McKesson Director of Regulatory Affairs, Michael Oriente, the Court sustained McKesson's objection to the introduction of a November 4, 2014 letter from the DOJ/DEA to McKesson's outside counsel at Covington and Burling, LLP. 5/24 Tr. at 107:2–3 ("It's out, Mr. Rafferty. Go on to your next point."). This letter includes a caption reading "Confidential and Subject to Federal Rule of Evidence 408," and discusses "DEA's participation in a potential global settlement." P-00122 at 1 (Dkt. No. 1436-4). The Court observed that the letter's contents "were made in the context of negotiations and they're the

position of the … lawyers on one side." 5/24 Tr. at 105:21–23. Accordingly, the Court found that the letter was "covered by [Rule] 408 and should not come in." 5/24 Tr. at 105:11–13.

After completing their questioning of the Mr. Oriente, Plaintiffs asked the Court for leave to file a brief seeking reconsideration of the ruling excluding the DEA/DOJ's letter (P-00122), as well as three equivalent letters also sent from the DEA/DOJ to Covington and Burling that Plaintiffs never attempted to put in evidence through Mr. Oriente or any other witness who appeared at trial (P-00118, P-00119, and P-00121).[1] 5/24 Tr. at 231:6–19. Like the letter that the Court excluded, these three additional letters were sent in the context of negotiations and settlement discussions:

- **P-00118 at 1 (Dkt. No. 1436-1):** Letter from the DEA/DOJ indicating that "it seems prudent for McKesson to have a better understanding of the potential claims [against it] prior to any discussions with the U.S. Attorney's Office," and asserting that "[y]ou are, no doubt, aware that McKesson [previously] entered into a Settlement Agreement … [that] covered the same type of conduct."

- **P-00119 at 1 (Dkt. No. 1436-2):** Letter from the DEA/DOJ captioned "Re: McKesson Matter – Ongoing Settlement Discussions."

- **P-00121 at 22 (Dkt. No. 1436-3)**: Letter from the DEA/DOJ stating that "[b]efore we pursue litigation, I am willing to meet with you to discuss the allegations outlined in this letter. … I am also open to discussing settlement prior to initiating a civil action in a federal district court."

Plaintiffs did not move for reconsideration of the Court's May 24 ruling until June 30. As a result of their unreasonable delay in seeking reconsideration, admission of these previously excluded materials now, after the close of evidence, would be highly prejudicial to McKesson.

---

[1] Plaintiffs have sought to admit these documents in connection with their outstanding designations of deposition testimony from former McKesson employees Gary Boggs, Nathan Hartle, and David Gustin, to which McKesson has objected. *See, e.g.*, 6/29 Tr. at 122:5–8 ("[A]ll of the defense objections are included in the submissions."). The designated testimony confirms that Plaintiffs seek to use these letters for the impermissible purpose of establishing the truth of the allegations made therein. *See, e.g.*, Ex. A, Boggs Dep. Tr. at 326:4–8 ("Q…. [P-00122] would indicate a systemic and nationwide failure on McKesson's part …. You would agree with that, right?").

**ARGUMENT**

I.  **The Letters Are Inadmissible Under Rule 408(a).**

It is clear from their face that the four letters at issue are "statements [that] were made in the context of negotiations," 5/24 Tr. at 105:21–22, and represent the position of a party in compromise discussions. As such, they are inadmissible under Rule 408, *see Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 654 (4th Cir. 1988), and Plaintiffs' arguments to the contrary are unavailing.

"Federal Rule of Evidence 408 is broader than the common law exclusionary rule in many jurisdictions and excludes from evidence ***all statements*** made in the course of settlement negotiations." *Id.* As the Court has already recognized, *see* 5/24 Tr. at 105:11–13; 105:19–106:1, the four letters Plaintiffs seek to admit are inadmissible under a straightforward application of Rule 408. *See Fiberglass Insulators*, 856 F.2d at 654; *Johnson v. Robinson*, 987 F.2d 1043, 1048 (4th Cir. 1993) (explaining that timetable "generated in the course of settlement negotiations" would be inadmissible under Rule 408); *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 306 (4th Cir. 2012) ("Rule 408 provides that evidence of conduct or a statement made during compromise negotiations about the claim 'is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach….'").

*First,* Plaintiffs' assertion that Rule 408 does not apply here because the letters "involve compromise of other cases, not this Litigation," Br. at 6, is contrary to Fourth Circuit precedent. In *Fiberglass Insulators*, the plaintiff similarly argued that Rule 408 did not bar the admission of statements made by an attorney within the context of settlement negotiations because the statements concerned a distinct legal claim and were made in a separate, although related, litigation. 856 F.2d at 654–55. The Fourth Circuit disagreed, reasoning that the "spectre of a subsequent use" of compromise communications that would "prejudice a ***separate and discrete***

*claim* is a disincentive which Rule 408 seeks to prevent." *Id.* at 654 (quoting *Branch v. Fidelity & Cas. Co. of New York*, 783 F.2d 1289, 1294 (5th Cir. 1986)) (emphasis added). Accordingly, the Fourth Circuit held that use of settlement communications was prohibited in a related action—even though that action was brought under a distinct legal theory by a different party—because the claims arose from the same transaction as "the claims pursued in the prior lawsuits." *Id.* at 655 ("[I]t is the general practice of the federal courts to hold inadmissible the attempted use of a completed compromise of a claim arising out of the same transaction between a third party and a party to the suit being litigated."). Numerous courts have similarly held that settlement negotiations from a "separate, but closely related dispute" are protected from disclosure under Rule 408. *Emcor Grp., Inc. v. Great Am. Ins. Co.*, 2013 WL 1315029, at *26 (D. Md. Mar. 27, 2013); *see also, e.g.*, *Hobart Corp. v. Dayton Power & Light Co.*, No. 3:13-cv-115, 2017 WL 5956911, at *21 (S.D. Ohio Nov. 30, 2017) ("[M]aking the content of prior settlement agreements available for use in *related* litigation contravenes the very purpose of Rule 408." (emphasis added)).[2]

*Second*, Plaintiffs' assertion that two of the four letters (P-00118 and P-00121) are not compromise negotiations under Rule 408 is inaccurate.[3] Plaintiffs incorrectly contend that, because the letters do not include explicit references to Rule 408, they do not fall within Rule 408. Br. at 8. This faulty assertion ignores Fourth Circuit law making clear that statements fall within

---

[2] Plaintiffs' reliance on *Wyatt v. Security Inn Food & Beverage, Inc.*, 819 F.2d 69, 71 (4th Cir. 1987) to argue that Rule 408 cannot apply to negotiations from another case is misplaced. *Wyatt*'s statement concerning the scope of Rule 408 was only "dictum," *Fiberglass Insulators*, 856 F.2d at 655, and contrary to the Fourth Circuit's on-point holding in *Fiberglass Insulators*.

[3] Plaintiffs do not dispute that the other two letters (P-00119 and P-00122) were sent in the context of the sort of formal settlement negotiations that form the heartland of Rule 408's protections. Both bear captions that expressly reference Rule 408 and "ongoing settlement discussions." P-00119 at 1 (Dkt. No. 1346-2); *see also* P-00122 at 1 (Dkt. No. 1346-4).

Rule 408 whenever they were "'intended to be part of the negotiations for compromise.'" *Fiberglass Insulators*, 856 F.2d at 654. The fact that no formal claim had been brought is irrelevant, as "a dispute need not crystallize to the point of threatened litigation to implicate [Rule 408(a)]." *Macsherry v. Sparrows Point, LLC*, 973 F.3d 212, 222 (4th Cir. 2020).

Both letters clearly satisfy this standard. The November 6, 2013 letter from DEA/DOJ to McKesson's outside litigation counsel (P-00118) refers to McKesson's interest "in meeting to discuss the government's potential claims against McKesson," followed closely by reference to an earlier-in-time settlement. P-00118 at 1 (Dkt. No. 1436-1). And the August 13, 2014 letter from the DEA/DOJ to McKesson's outside litigation counsel (P-00121) specifically refers to the possibility of "settlement prior to initiating a civil action in federal district court." P-00121 at 22 (Dkt. No. 1436-3). As evidenced by these statements, both letters relate directly to negotiations to resolve a disputed claim between McKesson and the DEA/DOJ. Accordingly, these letters are part of the parties' compromise negotiations and fall within the scope of Rule 408's protections. To hold otherwise and admit these documents would be contrary to the "public policy of favoring and encouraging settlements" that undergirds Rule 408. *Fiberglass Insulators*, 856 F.2d at 654, Accordingly, both these and the other letters are inadmissible under Rule 408.

## II. The Letters Are Not Admissible For "Another Purpose" Under Rule 408(b).

Contrary to Plaintiffs' contention, the four letters are not admissible for "another purpose" under Rule 408(b). *See* Br. at 7–8. Although Rule 408(b) provides that compromise statements may be admissible for certain limited purposes such as "providing a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution," Plaintiffs' purported justification does not fall within those exceptions.

Plaintiffs contend that the letters should be admitted to establish McKesson's notice and knowledge of the "presence or absence of systemic issues with McKesson's suspicious order

7

monitoring program," and "the systemic failure of McKesson to report suspicious orders, opioid diversion, the opioid epidemic, and opioid harms." Br. at 7. But Plaintiffs' explanation simply demonstrates that Plaintiffs intend to use the letters to *validate their claims* regarding McKesson's alleged conduct—namely, McKesson's alleged "systemic failure" to report supicious orders. *Id.*; *see also* 5/24 Tr. at 101:9–10 (Plaintiffs' counsel stating that "[the letter is] being offered for notice of [McKesson's] systemic and nationwide failures.").

Where a party's claimed purpose "is 'inseparable' from [a purpose] foreclosed under Rule 408(a)," *Macsherry*, 973 F.3d at 224–25, the evidence must be excluded because its true intent is to "validate [a party's] claim." *Accident Ins. Co. v. U.S. Bank Nat'l Ass'n*, 2019 WL 2566950, at *3–4 (D.S.C. June 21, 2019); *see also Stevens v. Baltimore & Ohio R. Co.*, 915 F.2d 1565 (4th Cir. 1990) ("[Rule 408's] protection is not lost simply because the statement could conceivably be twisted into fitting another evidentiary purpose."). That is precisely the case here. Plaintiffs do not claim to use the letters to show notice of DEA/DOJ's *allegations*—which in any event would not be relevant to this action—but rather to show notice of McKesson's alleged *failures* to comply with obligations purportedly arising under federal law. *See* Br. at 8. That is precisely what Rule 408 prohibits. *Accident Ins. Co.*, 2019 WL 2566950, at *3–4 (rejecting plaintiff's argument that a document was being introduced for the alternative purpose to show that the Defendant "*knew* its monitoring program was deficient" and excluding the document under Rule 408) (emphasis added)).[4]

---

[4] Plaintiffs' reliance on Judge Polster's "Nunc Pro Tunc Evidentiary Order," filed after settlement of the MDL Track 1 litigation, does not alter this conclusion. Br. at 4–5. In that decision, Judge Polster ruled in the abstract that the letters could be relevant for another purpose, and therefore denied McKesson's motion for a pretrial *in limine* ruling. *See* MDL Dkt. No. 3058 at 13. However, because of the settlement no trial ever occurred in MDL Track 1 and Judge Polster never ruled that any of these letters was admissible for the purpose that Plaintiffs actually sought to use it at trial. *See Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) ("*[I]in limine* rulings are not

8

Even assuming that Plaintiffs' proffered justifications for the letters was permissible under Rule 408(b), the probative value of the letters as to the limited purpose of "notice" must be balanced against the policy of encouraging settlements furthered by Rule 408(a). As the Fourth Circuit has recognized, the limited-purpose exception to Rule 408 should not "eviscerate Rule 408's protection and undermine its clear purpose." *Macsherry*, 973 F.3d at 225; *see also Onyx Films LLC v. Koch,* 2021 WL 1137252, at *2 (E.D. Va. Mar. 4, 2021) ("[W]hen the issue of admissibility of settlement negotiations is in doubt, the better practice is to exclude evidence of compromises or compromise offers under Rule 408."). Accordingly, where "notice could be effectively proved by means less in conflict with the policy behind [R]ule 408," settlement negotiations and communications should excluded in favor of using alternate evidence. *Ramada Development Co. v. Rauch*, 644 F.2d 1097, 1107 (5th Cir. 1981).

Here, there is no need to prove that McKesson was on "notice" that the DEA/DOJ opened an investigation in 2013. That fact is both undisputed and already abundantly clear in the record. In fact, McKesson affirmatively solicited evidence on this point during Mr. Oriente's examination:

> Q. …. If we look at the paragraph on the first page, do you see it references an event on March 12, 2013, where DEA executed an administrative inspection warrant at McKesson Aurora?
>
> A. Yes, I see that.
>
> …
>
> Q. Do you have any understanding of whether ***this inspection that's referenced on this first page is what ultimately led to [McKesson's 2017] settlement agreement***?
>
> A. Yes, that is my understanding.

---

binding on the trial judge, and the judge may always change his mind during the course of a trial."). Judge Polster's ruling in the abstract should be given no weight here, especially in light of clear Fourth Circuit precedent emphasizing the importance of Rule 408.

5/25 Tr. at 121:21–122:10 (emphasis added).[5]  Where, as here, the issue of "notice" is not in question, Rule 408's balancing test requires exclusion of the letters.  *See Polk v. BP Amoco Chemical Co.,* 586 F. Supp. 2d 619, 622 (D. S.C. June 16, 2008) (excluding evidence under Rule 408 where the evidence was offered for a matter that was "not being disputed," and where other evidence "offer[ed] superior and more direct proof" of the issue).

**III.    The Letters Are Hearsay And Unduly Prejudicial.**

Regardless of whether Rule 408 applies here, the Court still should not admit the letters because they (1) consist entirely of inadmissible hearsay and (2) would be unduly prejudicial.

*First*, the letters are quintessential hearsay to which no exception applies.  As this Court recognized in properly excluding these materials during trial, "[t]hese statements … they're the position of the lawyer—or lawyers on one side."  5/24 Tr. at 105:21–23.  Under Rule 801, a statement is hearsay if it is (1) made by an out-of-court declarant and (2) offered into evidence to prove the truth of the matter asserted.  *See* Fed. R. Evid. 801(c).  Both elements are satisfied here.

None of the authors of the letters appeared live at trial or were subject to cross-examination.  Moreover, as explained above, Plaintiffs plainly are trying to use the letters to prove the truth of the matters asserted—*i.e.*, that McKesson in fact had failed to report certain suspicious orders to DEA.  *See supra* pp. 4 n.1, 7–10.  Plaintiffs do not identify any hearsay exception that could justify admission of these letters, and there is none.

*Second*, the letters are unduly prejudicial.  Under Rule 403, otherwise relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of … unfair

---

[5] At the time that Plaintiffs sought to introduce P-00122 into the record, the Court asked "[c]an't you prove [notice] some other way than by offering a letter … that was part of an effort to settle a disputed situation?" 5/24 Tr.at 106:12–14.

prejudice." Fed. R. Evid. 403.  Here, as previously explained, the probative value of the factual assertions in the letters at issue is minimal, particularly since Plaintiffs claim (implausibly) to be offering the letters only for the limited purpose of notice and/or knowledge to McKesson.  On the other hand, admission of the unproven allegations contained in the letters—which did not result in any confirmatory adjudication—would prejudice McKesson.  At trial, Plaintiffs had a full and fair opportunity to put on evidence regarding the adequacy of McKesson's suspicious order monitoring systems and whether the alleged deficiencies in those systems was a substantial factor in bringing about opioid-related harms in Cabell/Huntington.  It would serve no legitimate purpose to admit into evidence the fact that DEA/DOJ made untested and unproven allegations similar to Plaintiffs regarding the first of those two questions.  (The letters, of course, have no bearing on the second question.)  The Court should therefore exclude the letters under Rule 403.

### IV.   The Letters Should Be Excluded For Two Additional Reasons.

There are two additional reasons for the Court to deny Plaintiffs' motion for reconsideration.

*First*, Plaintiffs unreasonably delayed in filing their motion for reconsideration.  *See* Fed. R. Civ. P. 60(b) (stating that a motion for reconsideration "must be made within a reasonable time"); *see also Howard v. W. Virginia Div. of Corr.*, No. 2:13-CV-11006, 2016 WL 1173152, at *4 (S.D.W. Va. Mar. 22, 2016) (noting that courts applying Rule 54(b) should be "guided by the general principles of Rules 59(e) and 60(b)").  Plaintiffs received leave to move for reconsideration on May 24, but did not file their brief until June 30, immediately prior to resting their case. Plaintiffs' unexplained delay of more than five weeks was not reasonable.  *See New York v. Microsoft Corp.*, 209 F. Supp. 2d 125, 131 (D.D.C. 2002) (finding a three-week delay between exclusion of an offered trial exhibit and the filing of a motion to reconsider unreasonable where "the arguments advanced in Plaintiffs' motion were available to them at the time the Court made

11

its ruling . . . and on each day thereafter, in advance of the close of evidence"). The delay, moreover, irreparably prejudiced McKesson. If the Court were to grant Plaintiffs' motion for reconsideration now, after the close of evidence, McKesson would be deprived of the opportunity to respond to the newly admitted evidence. *Id.* ("[I]t is certain that Defendant would suffer considerable prejudice if the Court were to abandon its prior ruling" and admit a previously-excluded trial exhibit after the close of evidence).

*Second*, the letters are simply not relevant to any issue in this case. The gravamen of the letters and McKesson's subsequent settlement with DEA relates to McKesson's alleged failure adequately to ***report*** certain suspicious orders to DEA in and after 2009.[6] But, as explained in Motion For Judgment On Partial Findings Regarding Actionable Conduct, there is no evidence (either in these letters or the trial record) that any of the orders McKesson allegedly failed to report was placed by one of its tiny number of customers in Cabell/Huntington. *See* Dkt. No. 1449, at p. 35. And, more fundamentally, it is undisputed that McKesson did not ship any orders it identified as suspicious during this time period, and so any regulatory shortcomings with respect to reporting could not possibly have led to diversion or harm in Cabell/Huntington. *See id.* at p. 36. Accordingly, even if it were proper for Plaintiffs to rely on these letters to establish that McKesson failed to report unspecified orders to DEA (it is not), that evidence would not be relevant to the question whether McKesson was a substantial factor in bringing about the alleged public nuisance in Cabell/Huntington. For this additional reason, Plaintiffs' motion for reconsideration should be denied. *See* Fed. R. Evid. 401, 402.

---

[6] While the letters also containing stray allegations relating to other topics, the settlement ultimately reached by the parties did not contain any admission of liability as to these unproven allegations.

## CONCLUSION

For the reasons states by the Court at the May 24, 2021 hearing and the additional reasons set forth herein, the Court should deny Plaintiffs' motion for reconsideration and exclude P-00118, P-00119, P-00121, and P-00122.

Dated: July 14, 2021

Respectfully Submitted,

*McKesson Corporation*
By Counsel:

/s/ Timothy C. Hester
Timothy C. Hester
Christian J. Pistilli
Laura Flahive Wu
Andrew P. Stanner
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
cpistilli@cov.com
lflahivewu@cov.com
astanner@cov.com

/s/ Paul W. Schmidt
Paul W. Schmidt
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York
Tel: (212) 841-1000
pschmidt@cov.com

/s/ Jeffrey M. Wakefield
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on this 14th day of July, 2021, the foregoing "MCKESSON'S' TRIAL BRIEF IN OPPOSITION TO PLAINTIFFS' TRIAL MEMORANDUM REGARDING ADMISSIBILITY OF LETTERS FROM THE DOJ/DEA TO MCKESSON" was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Timothy C. Hester*
Timothy C. Hester (DC 370707)
