# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| THE CITY OF HUNTINGTON,<br>    Plaintiff, | |
| v. | CIVIL ACTION NO. 3:17-01362 |
| AMERISOURCEBERGEN<br>DRUG CORPORATION, et al.,<br>    Defendants. | |
| CABELL COUNTY COMMISSION,<br>    Plaintiff, | |
| v. | CIVIL ACTION NO. 3:17-01665 |
| AMERISOURCEBERGEN<br>DRUG CORPORATION, et al.,<br>    Defendants. | |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION TO TAKE JUDICIAL NOTICE**

**I.      INTRODUCTION**

Judicial notice serves a specific and narrow purpose: the admission of "a fact that is not subject to reasonable dispute" because it either is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid 201. "Courts thus typically take judicial notice of commonplace matters like the timing of a sunrise, geographical boundaries, or matters of political history." *Simon v. Taylor*, 794 F. App'x 703, 720 (10th Cir. 2019). Plaintiffs' request that the Court take judicial notice of 19 documents (more than 500 pages) ignores the purpose of, and guardrails established by, Federal Rule of

Evidence 201. With a small number of exceptions discussed below, Plaintiffs do not seek to admit undisputed "facts" at all. Instead, they seek admission of hundreds of pages of evidence unmoored from the Rules of Evidence, including the rules related to relevance and hearsay. And they seek admission of these documents without laying any foundation, utilizing any sponsoring witness, or providing opportunity for cross-examination. The time to seek admission of this evidence was before the close of Plaintiffs' case. Plaintiffs should not be permitted to now circumvent the orderly admission of evidence and to smuggle untimely and inadmissible evidence into the trial record through their thinly-veiled request for "judicial notice."

## II.     RELEVANT LEGAL AUTHORITY

The watchwords for judicial notice are caution, facts, and undisputed. Judicial notice is "an adjudicative device that substitutes the acceptance of *a universal truth* for the conventional method of introducing evidence." *General Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1081 (7th Cir. 1997) (emphasis added). Thus, judicial notice "merits the traditional caution it is given, and courts should strictly adhere to the criteria established by the Federal Rules of Evidence before taking judicial notice of pertinent facts." *Id*. The analysis cannot be divorced from context: "whether information is the proper subject of judicial notice depends on the use to which it is put." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 558 (4th Cir. 2013), *abrogated on other grounds by Reed v. Town of Gilbert*, 576 U.S. 155 (2015).

Judicial notice can be used only to admit *facts*. "[T]he taking of judicial notice of facts is, as a matter of evidence law, a highly limited process." *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997). A fact is not the same thing as the source of a fact. Indeed, the rule itself distinguishes between taking judicial notice of a fact and the source from which the fact is "accurately and readily determined." *See* Fed. R. Evid. 201(b). To give a common-sense example, while the court may elect to take judicial notice of a stock price reported in the New York Times, the court need

not admit the full business section or the entire newspaper for the day. *See, e.g.*, *Loftus v. F.D.I.C.*, 989 F. Supp. 2d 483, 490 (D.S.C. 2013) (declining to take judicial notice of "six documents in their entirety" as opposed to "merely … certain facts that may be shown to be beyond reasonable dispute by the specific documents"). "Facts" also do not include things like conclusions or scientific theories. *See, e.g.*, *United States v. Mitchell*, 365 F.3d 215, 252 n. 30 (3d Cir. 2004) ("Matters like 'February 7, 1977 was a Monday' (a fact) are suitable for judicial notice, while propositions like 'daily exercise reduces the likelihood of heart disease' (a scientific conclusion) are not.").

And not all facts are subject to judicial notice. Instead, judicial notice is appropriate only for facts ***not subject to reasonable dispute***. Fed. R. Evid. 201. The inclusion of a disputed fact in an otherwise admissible public record does not make that disputed fact the proper subject of judicial notice. *Lustgraaf v. Behrens*, 619 F3d 867, 885-886 (8th Cir. 2010) (district court properly took judicial notice to decide what statements were contained in public records but improperly took judicial notice to prove truth of contents).

Nor is judicial notice a trump card: it does not serve to undermine or render inapplicable the remaining Rules of Evidence, such as those related to relevancy, foundation, or hearsay. Thus, courts should not use Rule 201 to admit documents that contain statements and other material that either are inadmissible or should otherwise be tested through cross-examination or established by expert testimony. *See, e.g.*, *Am. Prairie Const. Co. v. Hoich*, 560 F.3d 780, 797 (8th Cir. 2009) ("Caution must … be taken to avoid admitting evidence, through the use of judicial notice, in contravention of the relevancy, foundation, and hearsay rules."). And when a court does elect to take judicial notice of documents, it is limited to taking notice of only the fact of the records' existence, and not statements within the documents that are otherwise considered hearsay. *See Lustgraaf*, 619 F.3d at 885-886.

This is true even when the source of the evidence may seem reliable. For example, in *Mays v. Dart*, 974 F.3d 810, 824 (7th Cir. 2020), the court declined to take judicial notice of the proffered CDC report—entitled "Outbreak of COVID-19 and Interventions in One of the Largest Jails in the United States—Cook County, IL, 2020." The court concluded that the contents of the report—the Sheriff's COVID-19 interventions and their purported impact—were not "'generally known,' at least to us[,]" and because the contents were not "incontrovertible," as its authors "were not subject to *Daubert* challenges, cross-examined, or tested with competing expert testimony." *Id.*

With a few exceptions, Plaintiffs' requests violate these ground rules.

### III. DEFENDANTS' OBJECTIONS TO PLAINTIFFS' REQUESTS FOR JUDICIAL NOTICE

Plaintiffs framed their motion around the ***type*** and ***source*** of documents they seek to admit through judicial notice—for example, Federal Register documents, press releases, and so forth. But that, of course, is not the proper inquiry. Judicial notice turns instead on the specific ***facts*** Plaintiffs seek to admit and the ***purposes*** for which Plaintiffs seek to admit them. Thus, this responsive brief focuses on the facts to be admitted and the purported purpose for admitting them.

#### A. Registration Revocations and Settlements Regarding "Notice" of DEA Regulatory Interpretation and Enforcement

Plaintiffs request judicial notice of three documents relating to revocations of registrations or settlements with wholesale distributors that are not parties to this case, in order to establish "notice":

- **Exhibit 1**: *Novelty Distributors, Inc., Revocation of Registration*, 73 Fed. Reg. 52689 (Drug Enf't Admin. Sept. 10, 2008);

- **Exhibit 9**: April 18, 2011 DEA Press Release: *Michigan Based Pharmaceutical Wholesaler Harvard Drug Group To Pay U.S. $8,000,000 In Settlement*;

- **Exhibit 10**: June 10, 2011 DEA Press Release: *Cincinnati Pharmaceutical Supplier's DEA License Suspended*.

There are no facts in these documents that are properly the subject of judicial notice. And, while the Court may take judicial notice of the fact that these documents exist, it should not do so because they are irrelevant: none concern any Defendant, and one of them, *Novelty Distributors*, does not even concern opioids.

To begin with, Plaintiffs seek to use these documents to establish a disputed matter—namely, "notice." *See* Pl. Mem. at 3, 10, 11. Rule 201 does not authorize this. Plaintiffs say that revocation of Novelty Distributors' registration establishes that Defendants had "notice" of "DEA's interpretation and enforcement of CSA requirements regarding, among other things, identifying suspicious orders and actions to take relative to shipping/not shipping." *Id*. at 3. But the DEA's "interpretation and enforcement of CSA requirements"—as well as "notice" to any Defendant of such interpretation and enforcement—are disputed matters. Indeed, this topic has been the subject of extensive testimony (subject to cross-examination) of numerous witnesses, including Defendant-company witnesses and Joseph Rannazzisi, as well as documents that actually have been entered into evidence at trial in the normal course, *i.e.*, after an opportunity for full vetting of the admissibility of the documents in light of the purpose for which they were offered. Nor has any foundation been laid that these administrative actions involving other distributors provided any notice to Defendants because there is no evidence that any Defendant was aware of them or should have been aware of them.

As for the two press releases, Plaintiffs highlight statements in the documents that are classic hearsay. *See, e.g.*, *id*. at 10 ("In this case, a DEA investigation revealed that between March, 2009 and May, 2010, Harvard received over 1,000 suspicious orders for Schedule II narcotics – primarily oxycodone – that should have triggered further investigation by the company and reporting to the DEA."); *id.* at 11 ("Pharmaceutical companies have a responsibility to ensure that

the drugs they sell don't end up in the hands of drug traffickers or businesses that are conducting their business illegally[.]"). The Court already has rejected generalized proffers of this kind. Apparently recognizing this, Plaintiffs argue that the press releases show notice to the "public" regarding the DEA actions—actions, again, that concern non-parties—but notice to the "public" writ large is irrelevant, and Plaintiffs have laid no foundation showing that any Defendant in fact had notice of the press releases. *See* Tr. 7/9 64:16-66:6 (the Court declined to admit document offered to show "notice to the entire country" for lack of foundation, among other things).

> B. **DOJ and CDC Documents Regarding Generalized "Notice to the Public"**

Plaintiffs request judicial notice of two documents to establish generalized "notice to the public":

- **Exhibit 8**: January 2001 U.S. Department of Justice, Information Bulletin Warning: *OxyContin Diversion and Abuse*;

- **Exhibit 11**: February 20, 2013 Centers for Disease Control and Prevention Press Release: *Opioids drive continued increase in overdose deaths*.

The Court can take judicial notice of the fact that these documents exist, but Plaintiffs' request sweeps far more broadly than that. Plaintiffs seek admission of these documents for the purpose of showing notice to "the public of various issues" regarding Oxycontin, diversion, and "statistics involving opioids," but without identifying which of the myriad statements—all of which are hearsay and most of which are disputed—they believe are subject to judicial notice. Pl. Mem. at 9-11. That is not authorized by the rules of evidence.

First, the documents are replete with hearsay. For example, *Oxycontin Diversion and Abuse* contains the following anecdote: "West Virginia, Hancock-Brooke-Weirton Drug Task Force reports that a local couple, recently sentenced for conspiracy to sell heroin, turned to heroin after their doctor refused to continue prescribing OxyContin and they could not afford the street

price of the pharmaceutical." *Id*. Ex. 8.  This single sentence includes multiple levels of hearsay, all of which would need to be subject to a hearsay exception prior to admission.

Second, the documents cannot be admitted for purposes of notice because Plaintiffs have not (and could not) lay a foundation that any Defendant actually had notice of them, and "notice to the public" is irrelevant and illusory.  *See supra* at 6.

### C. Reports from Which Plaintiffs Seek to Admit Disputed Facts

Plaintiffs request judicial notice of four executive agency reports in order to establish disputed facts:

- **Exhibit 14**:  October 2002 DOJ Office of the Inspector General Review of the Drug Enforcement Administration's Efforts to Control the Diversion of Controlled Pharmaceuticals, Report Number I-2002-010;

- **Exhibit 15**:  July 2006 DOJ Office of the Inspector General Follow-Up Review of the Drug Enforcement Administration's Efforts to Control the Diversion of Controlled Pharmaceuticals, Report Number I-2006-004;

- **Exhibit 17**:  May 2014 DOJ Office of the Inspector General Report: *The Drug Enforcement Administration's Adjudication of Registrant Actions*, Report Number I-2014-003;

- **Exhibit 16**:  September 2013 U.S. Department of Health and Human Services Report: *Addressing Prescription Drug Abuse in the United States - Current Activities and Future Opportunities*.

Plaintiffs seek to admit the 2002 and 2006 DOJ Office of the Inspector General Reviews of the Drug Enforcement Administration's Efforts to Control the Diversion of Controlled Pharmaceuticals, asserting that they provide "factual background ***and analysis*** of the DEA's Diversion Control Program organization, staffing, responsibilities, and funding." *Id.* at 13-14 (emphasis added).  Similarly, Plaintiffs seek to admit the 2014 DOJ Office of the Inspector General Report: *The Drug Enforcement Administration's Adjudication of Registrant Actions* in order to provide, "factual background regarding the types of registrants required to register with the DEA, the process by which the DEA adjudicates registrant actions, the number of cases adjudicated by

the DEA between 2008 and 2012, and the federal laws and regulations and DEA policy governing the process." *Id.* at 16.

Judicial notice is not proper here for several reasons. First, the documents do not contain indisputable facts. They are a compendium of information—much of which is subject to dispute or interpretation. The information is entirely unlike, say, "the timing of a sunrise." Second, the documents contain numerous layers of hearsay, as they describe interviews with and surveys of DEA investigators and officials and discuss various different memoranda and documents. *See, e.g., id.* Ex. 14, at 1; *id.* Ex. 15, at 12.[1] Third, Defendants cannot test the reliability of the information contained within the reports through cross-examination or otherwise—a problem of Plaintiffs' own making. Plaintiffs called former DEA officials, including Mr. Rannazzisi, as witnesses at trial. If Plaintiffs wished to introduce this evidence, they should have attempted to do so at trial—and afforded Defendants their right to test the admissibility of the documents and subject them to cross-examination.

Similarly, Plaintiffs want to use *Addressing Prescription Drug Abuse in the United States - Current Activities and Future Opportunities* to establish "facts" that are in dispute, such as the "public health consequences, including factors and economic burden related to same," of prescription drug abuse. *Id.* at 15; *see also id.* Ex. 16. That is not a proper use of judicial notice. The "facts" Plaintiffs want to establish have been the subject the testimony of numerous experts,

---

[1] Plaintiffs may argue that this Court admitted two different OIG reports into evidence during trial, and thus should take judicial notice of these OIG reports now. Such an argument would be entirely mistaken. The issue of whether a document may be admitted under a hearsay exception (such as Rule 803(8)'s public records exception) is entirely different than the question of whether the court may take judicial notice of the contents of documents (some of which relates to disputed matters) pursuant to Rule 201. And admitting a document into evidence, subject to cross-examination and the fact finder's consideration among the rest of the trial record, is an entirely different matter than taking judicial notice of facts after the close of evidence.

such as Katherine Keyes, Caleb Alexander, George Barret, and Stephenie Colston.  For example, an entire section of the report is devoted exclusively to "Epidemiology and Drivers of Prescription Drug Abuse in the United States," a topic on which Dr. Keyes testified and was cross-examined for almost three days.  *Id*. Ex. 16, at 8.  This document too is replete with multiple layers of hearsay.

      **D.**    **Cabell/Huntington Resolutions Regarding the Effects of Opioid Use**

Plaintiffs request judicial notice of two public nuisance resolutions to establish contested facts:

- **Exhibit 24**:  January 26, 2017 Cabell County Resolution Declaring Distribution of Pain Medications a Public Nuisance;

- **Exhibit 19**:  April 13, 2020 City of Huntington Resolution and Declaration of Public Nuisance.

The Court may take judicial notice of the fact of the *existence* of these documents.  Again, however, Plaintiffs impermissibly seek to use these documents as *evidence* on contested matters such as the "background about opioid distribution into Cabell County, the impact of same, Cabell County's official recognition of these matters, the resulting actions taken by Cabell County, and the bases for same."  *Id.* at 17-18.  As explained, this is not the appropriate use of judicial notice—and that is especially so when Plaintiffs easily could have offered these documents into evidence when Cabell and Huntington witnesses were on the stand subject to cross examination.  Plaintiffs may regret having failed to do so, but they cannot cure that apparent error through an improper request for judicial notice.

      **E.**    **Documents from Which Plaintiffs Seek to Admit Indiscriminate Statements**

Plaintiffs seek judicial notice of indiscriminate statements within the following Federal Register[2] and other Government publications:

---

[2] Plaintiffs' citation to the Federal Register Act provision stating that the contents of the Federal Register may be judicially noticed illustrates the problem with Plaintiffs' approach and the

- 9 -

- **Exhibit 2**: Interim Final Rule with Requests for Comments - Implementation of the Ryan Haight Online Pharmacy Consumer Protection Act of 2008, 74 Fed. Reg. 15596 (Dep't of Just. Apr. 6, 2009);

- **Exhibit 3**: Notice of Proposed Rulemaking - Schedules of Controlled Substances: Rescheduling of Hydrocodone Combination Products From Schedule III to Schedule II, 79 Fed. Reg. 11037 (Dep't of Just. Feb. 27, 2014);

- **Exhibit 4**: Final Rule - Schedules of Controlled Substances: Rescheduling of Hydrocodone Combination Products From Schedule III to Schedule II, 79 Fed. Reg. 49661 (Dep't of Just. Aug. 22, 2014);

- **Exhibit 13**: October 1998 Report to the U.S. Attorney General [Janet Reno] by DOJ DEA Office of Diversion Control Suspicious Orders Task Force ("Reno Report").

Plaintiffs have not specified the purpose for which they seek to have these documents admitted. Instead, they merely call out statements in the documents that are inadmissible hearsay or ask the Court to draw inferences from such documents.

Plaintiffs' justification for admission of Exhibit 2, related to the Ryan Haight Act, perfectly illustrates the problems with Plaintiffs' approach. Plaintiffs have cherry-picked three sentences to highlight in their motion:

- "[t]he unlawful use of pharmaceutical controlled substances has reached alarming levels in the United States in recent years, causing a substantial detrimental effect on the public health and safety[,]" and

- "[w]ith specific regard to pain relievers, 5.2 million respondents reported abusing these drugs, which is an 18 percent increase from 2004[,]" and

- "[a]mong persons aged 12 and older who reported using illicit drugs for the first time in 2007, abuse of pain relievers was the most common category of first-time illicit drug use."

---

impropriety of their requests. While material in the Federal Register document may be the proper subject of judicial notice, Plaintiffs may not use the contents of the Federal Register to establish conclusively a disputed matter—*e.g.*, "notice to Defendants" or a legal conclusion—or to avoid application of the evidence rules relating to relevance, foundation, and hearsay.

*Id.* at 4. The first sentence is not a statement of fact, but a conclusion or judgment, as the use of the adjectives "unlawful," "alarming," "substantial," and "detrimental" make plain. *Id.* The second includes data apparently sourced from a study, according to the footnote accompanying it, but the web address provided for that study now opens a website that reads "HTTP Error 404. The requested resource is not found." And the third contains hearsay, is properly the subject of expert testimony, and relates to a hotly disputed issue in this case.

And these three statements are not the end of it. They are simply the *examples* Plaintiffs elected to emphasize, "[a]*mong other things*." *Id.* at 4 (emphasis added). Those "other things," apparently, are the hundreds of sentences included in this 36-page document that contains 57 footnotes. That is not how judicial notice works.

## IV. DOCUMENTS TO WHICH DEFENDANTS HAVE NO OBJECTIONS TO PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

Defendants do not object to judicial notice of these documents:

- **Exhibit 5**: Notice of Proposed Rulemaking - Suspicious Orders of Controlled Substances, 85 Fed. Reg. 69282 (Dep't of Just. Nov. 2, 2020);[3]

- **Exhibit 6**: U.S. Census Bureau Annual Estimates of the Resident Population for the United States, Regions, States, and Puerto Rico: April 1, 2010 to July 1, 2019;

---

[3] While Defendants do not object to the Court taking judicial notice of this document, Defendants do object to Plaintiffs' characterization of it. Plaintiffs want to use this document to establish "notice" to Defendants that "identifying and reporting suspicious orders of controlled substances (and refusing to distribute based on such orders), has always been, and remains, the responsibility of the DEA registrant." Pl. Mem. at 6. But whether DEA always interpreted the CSA to require distributors to block suspicious orders is a disputed factual issue, and what the CSA and its implementing regulations require is a legal issue. Defendants have argued that the Proposed Rulemaking supports *Defendants'* argument that the CSA *did not* require distributors to block suspicious orders—after all, no amendment would be necessary if the CSA did so require. But, suffice it to say, it is up to this Court to make those determinations based on an examination of the entire document (and the other evidence presented at trial)—not statements Plaintiffs have cherry-picked.

- **Exhibit 7**:  U.S. Census Bureau West Virginia: 2010 Census of Population and Housing Unit Counts;

- **Exhibit 12**:  October 26, 2017 U.S. Dept. of Health and Human Services Opioid Public Health Emergency Declaration.

## CONCLUSION

While Federal Rule of Evidence 201 authorizes a court to judicially notice undisputed facts, the Court should approach a request for judicial notice with caution.  Plaintiffs seek to stretch the bounds of the rule past its breaking point by asking this Court to admit into evidence documents addressing contested issues, that are replete with inadmissible hearsay, and that cannot be tested through cross-examination.

Dated: July 19, 2021

Respectfully Submitted,

*AmerisourceBergen Drug Corporation*
By Counsel:

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, West Virginia 25322
Tel: (304) 340-1000
Fax: (304) 340-1050
gcallas@jacksonkelly.com

*/s/ Robert A. Nicholas*
Robert A. Nicholas
Shannon E. McClure
Joseph H. Mahady
REED SMITH LLP
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103
Tel: (215) 851-8100
Fax: (215) 851-1420
rnicholas@reedsmith.com
smcclure@reedsmith.com
jmahady@reedsmith.com

*McKesson Corporation*
By Counsel:

*/s/ Timothy C. Hester*
Timothy C. Hester
Christian J. Pistilli
Laura Flahive Wu
Andrew P. Stanner
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Tel: (202) 662-5324
thester@cov.com
cpistilli@cov.com
lflahivewu@cov.com
astanner@cov.com

*/s/ Paul W. Schmidt*
Paul W. Schmidt
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, New York 10018
Tel: (212) 841-1000
pschmidt@cov.com

*/s/ Jeffrey M. Wakefield*
Jeffrey M. Wakefield (WVSB #3894)
jwakefield@flahertylegal.com
Jason L. Holliday (WVSB #12749)
jholliday@flahertylegal.com
FLAHERTY SENSABAUGH BONASSO PLLC
P.O. Box. 3843
Charleston, WV 25338-3843
Telephone: (304) 345-0200

*Cardinal Health, Inc.*
By Counsel:

*/s/ Enu Mainigi*
Enu Mainigi
F. Lane Heard III
Jennifer G. Wicht
Ashley W. Hardin
WILLIAMS & CONNOLLY LLP
725 Twelfth Street NW
Washington, DC 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
emainigi@wc.com
lheard@wc.com
jwicht@wc.com
ahardin@wc.com

Michael W. Carey (WVSB #635)
Steven R. Ruby (WVSB #10752)
Raymond S. Franks II (WVSB #6523)
David R. Pogue (WVSB #10806)
CAREY DOUGLAS KESSLER & RUBY PLLC
901 Chase Tower, 707 Virginia Street, East
P.O. Box 913
Charleston, WV 25323
Telephone: (304) 345-1234
Facsimile: (304) 342-1105
mwcarey@csdlawfirm.com
sruby@cdkrlaw.com
rfranks@cdkrlaw.com
drpogue@cdkrlaw.com

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on this 19th day of July, the foregoing ***Defendants' Memorandum In Opposition To Plaintiffs' Motion To Take Judicial Notice*** was served using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Gretchen M. Callas*
Gretchen M. Callas (WVSB #7136)
