## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CITY OF HUNTINGTON**
    **Plaintiff,**
**v.**                                 **Civil Action No. 3:17-cv-01362**
**AMERISOURCEBERGEN DRUG**
**CORPORATION, et al.,**
    **Defendants.**

_____

**CABELL COUNTY COMMISSION,**
    **Plaintiff,**                          ***Consolidated Case*:**
**v.**                               **Civil Action No. 3:17-cv-01665**
**AMERISOURCEBERGEN DRUG**
**CORPORATION, et al.,**
    **Defendants.**

_____

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF ADMISSIBILITY OF P-00045, THE CEGEDIM DENDRITE AUDIT OF CARDINAL HEALTH'S SUSPICIOUS ORDER MONITORING SYSTEM

Exhibit P-00045, the 2008 Cardinal-Dendrite Audit report ("2008 Audit Report"), is currently available on the internet to parties and their attorneys around the country, to the press and to the public, and has been available on various Court dockets, including the MDL docket, for the last two years. *See e.g.*, MDL Doc. No. 1964-7. Simply put, this 2008 audit is neither privileged nor confidential. Cardinal has failed to address this fact and has provided no legal basis for maintaining a privilege or work product claim over a document which is in the public domain.

Moreover, the reason why the 2008 Audit Report has been publicly available is because both the MDL Discovery Special Master and the MDL Court have, for *two* different and independent reasons, rejected Cardinal's privilege and work

1

product claims over the document.  *See* Plaintiffs' Memorandum (Dkt. 1435) at pp. 3-4; MDL Doc. No. 1498; MDL Doc. No. 1553.  With these facts in mind, Cardinal has also failed to provide legal support for rejecting the "law of the case" doctrine, and overturning the MDL Court's discovery orders regarding the very document at issue herein.  It is not surprising that Cardinal is unable to refute these principles. Extensive jurisprudence exists confirming that an MDL transferee court's rulings should not be overturned since they are governed by law-of-the-case principles upon remand to the original transferor court.[1]

Additionally, even if one were to ignore the undisputed facts that the 2008 Audit Report is publicly available and that the MDL Court has conclusively determined that the document is not privileged or entitled to work product

---

[1] *See e.g., Royster v. Food Lion, Inc.*, 73 F.3d 528, 531 (4th Cir. 1996) ("'If transferor judges were permitted to upset rulings of transferee judges, the result would be an undermining of the purposes and usefulness of transfer under Section 1407…'") (quoting Hon. Stanley A. Weigel, *The Judicial Panel on Multidistrict Litigation, Transferor Courts and Transferee Courts*, 78 F.R.D. 575, 577 (1978)); *United States ex rel. Staley v. Columbia/HCA Healthcare Corp.*, 587 F. Supp. 2d 757, 761 (W.D. Va. 2008) ("Reconsideration of the D.C. District Court's decision would not only impair the multidistrict litigation scheme, but it would also conflict with the well-settled doctrine of law of the case."); *In re Ford Motor Co.*, 591 F.3d 406, 411 (5th Cir. 2009) ("The law of the case doctrine 'requires attention to the special authority granted to the multidistrict transferee judge' and ensures that transferor courts respect the transferee court's decisions.") (quoting *In re Multi-Piece Rim Prods. Liab. Litig.*, 653 F.2d 671, 678 (D.C. Cir. 1981)); *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 n.5 (7th Cir. 1996) ("It would vitiate much of the purpose of consolidating litigation if, after remand, parties could simply re-visit the transferee court's pre-trial rulings . . ."); *Deutsch v. Novartis Pharm. Corp.*, 768 F. Supp. 2d 420, 428 (E.D.N.Y. 2011) ("This is a mischaracterization of the law of the case doctrine, which, as set forth below, is equally applicable, if not more so, to decisions by an MDL transferee court.").

protection, Cardinal still has not met its burden of proving its privilege and work product claims.

"A party asserting privilege has the burden of demonstrating its applicability." *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 501 (4th Cir.2011). Similarly, "[t]he burden of proving the applicability of the work product doctrine rests with the party asserting it." *Westfield Ins. Co. v. Carpenter Reclamation, Inc.*, 301 F.R.D. 235, 249 (S.D.W. Va. 2014). Because the privilege "is in derogation of the public's right to every man's evidence," it is "not favored by the federal courts" and "is to be strictly confined within the narrowest possible limits consistent with the logic of its principle." *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir.1984). Accordingly, "application of the privilege will be rejected where the only basis for the claim is an affidavit containing conclusory statements." *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 381 (6th Cir.2009) (quoting *U.S. v. Roxworthy*, 457 F.3d 590, 597 (6th Cir. 2006)). Moreover, the proponent of the privilege must submit "specific and detailed evidentiary material" such as "affidavits made on personal knowledge, depositions, or answers to interrogatories." *Id*. at 381-382.

Here, Cardinal has submitted no affidavit, no depositions, no answers to interrogatories, and no specific and detailed evidence to carry the burden of proving its privilege and work product claim. Rather, Cardinal has merely mischaracterized facts and findings from the applicable MDL orders and added its own conclusory statements and argument. For example, Cardinal represents that the MDL

3

"Special Master's finding that Cardinal Health had waived the privilege simply by denying plaintiffs' allegations in the MDL litigation".  *See* Cardinal Brief (Dkt. 1461) at p. 8.  However, as Cardinal is well aware, the MDL Special Master based his waiver finding upon several different *affirmative* claims made by Cardinal (about the sufficiency of its SOMS and its compliance with regulatory obligations) "in pleadings and discovery responses" (including affirmative defenses, answers to interrogatories, and 30(b)(6) deposition testimony), as well as how "the Audit reflects directly and clearly on the truth of" these affirmative assertions made by Cardinal.[2]   Cardinal's method of mischaracterizing the MDL Court rulings does not satisfy its burden of proof.

   With respect to Cardinal's second argument, that the 2008 Audit Report constitutes inadmissible hearsay, it is noteworthy that Cardinal fails to cite a single case in support of its position.  Rather, because this Court has previously ruled that another third-party consultant audit was admissible under FRE 801(d)(2),[3] and because Plaintiffs have cited numerous cases which "have concluded that a consultant was a company's agent under FRE 801(d)(2), such that the consultant's

---

[2] *See* March 31, 2019 MDL Discovery Ruling No. 14, Part 5 (MDL Doc. No. 1498) at p. 18 ("Cardinal has made numerous affirmative statements regarding the extent to which its SOM system complied with DEA regulatory requirements [listing 3 examples and stating that the waiver is based upon] these and numerous other affirmative statements made by Cardinal in pleadings and discovery responses" and "the Audit reflects directly and clearly on the truth of the above-quoted factual assertions").

[3] *See* 5/14/2021 Trial Tr. at 71:10-19.

4

statements were admissible as statements of a party-opponent",[4] Cardinal attempts
to re-work the facts regarding the 2008 Audit Report.  Most notably, Cardinal
continues with the fiction that the 2008 Audit Report was prepared by Dendrite
solely for Cardinal's outside counsel and that Cardinal did not substantively use the
2008 Audit Report.

    While there were many factual findings by the MDL Court which contradict
Cardinal's current claims,[5] the following findings thoroughly illustrate same:

> Cardinal asserts that the Dendrite Audit 'contains a privileged
> analysis prepared by Dendrite at the request and direction of outside
> counsel for Cardinal Health for the purpose of (a) assisting outside
> counsel in providing legal advice to Cardinal Health in connection with
> then-ongoing regulatory actions by DEA and (b) in anticipation of
> litigation related to those actions.' This assertion however, is simply not
> an accurate characterization of how Dendrite served Cardinal and
> Cadwalader.
> The overwhelming nature of Dendrite's activities were to provide
> ***business*** analysis and advice to Cardinal so that it could meet its
> regulatory obligations – not to assist Cadwalader in providing ***legal***
> analysis and advice to Cardinal.  The facts set out in Section I above
> show Dendrite understood from the start that it would 'provide
> ***regulatory compliance consulting*** as it relates to the Controlled
> Substances Act, and implementing regulations.' Cardinal, not
> Cadwalader, paid Dendrite directly for its services, and designated those
> payments as regulatory expenses.  Dendrite's 'primary objective' was to
> 'provide ***Cardinal***' – not Cadwalader – 'with recommendation[s] on any
> corrective actions that may be required to have a more compliant SOM
> system,' as required by DEA regulations. . . . The insertion of

---

[4] *FTC v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2018 WL 6576029, at *2 (N.D. Cal.
Dec. 13, 2018).  *See also*, Plaintiffs' Memorandum (Dkt. 1435) at p. 7 (listing cases).
[5] *See* MDL Doc. No. 1498 at pp. 3-4 (""Dendrite stated its 'primary objectives
associated with the SOM [Suspicious Order Monitoring] review' were to 'assist
Cardinal in an onsite review of its beta release of its suspicious order monitoring
program/system and corresponding operating procedures. Cegedim Dendrite will
provide Cardinal with recommendation[s] on any corrective actions that may be
required to have a more compliant SOM system (i.e., disclos[ur]e of suspicious orders
of controlled substances before they are shipped)."").

Cadwalader between Dendrite and Cardinal did not transform Dendrite from a business advisor to a legal advisor.[6]

The Dendrite audit was conducted to "'provide Cardinal' – not Cadwalader – 'with recommendation[s] on any corrective actions that may be required to have a more compliant SOM system,'"[7] and as such, the 2008 Audit Report does not qualify as hearsay pursuant to FRE 801(d)(2)(C) and/or 801(d)(2)(D).

## CONCLUSION

For all of the reasons set forth, the Court should admit P-00045.

Dated: August 2, 2021                                    Respectfully submitted,

**THE CITY OF HUNTINGTON**                    **CABELL COUNTY COMMISSION**
/s/ *Anne McGinness Kearse*                      /s/ *Paul T. Farrell, Jr.*
Anne McGinness Kearse (WVSB 12547)        Paul T. Farrell, Jr. (WVSB 7443)
Joseph F. Rice                                  **FARRELL & FULLER LLC**
**MOTLEY RICE LLC**                          1311 Ponce de Leon Ave., Suite 202
28 Bridgeside Blvd.                             San Juan, Puerto Rico 00907
Mount Pleasant, SC 29464                        Mobile: 304-654-8281
Tel: 843-216-9000                               paul@farrell.law
Fax: 843-216-9450
akearse@motleyrice.com
jrice@motleyrice.com                            /s/ *Anthony J. Majestro*
                                                Anthony J. Majestro (WVSB 5165)
                                                **POWELL & MAJESTRO, PLLC**
Linda Singer                                    405 Capitol Street, Suite P-1200
David I. Ackerman                               Charleston, WV 25301
**MOTLEY RICE LLC**                          304-346-2889 / 304-346-2895 (f)
401 9th Street NW, Suite 1001                   amajestro@powellmajestro.com
Washington, DC 20004
Tel:  202-232-5504
Fax:  202-386-9622
lsinger@motleyrice.com
dackerman@motleyrice.com

---

[6] *Id.* at p. 13 (emphasis in original) (citations omitted).

[7] *Id.*

Charles R. "Rusty" Webb
WV No. 4782
**THE WEBB LAW CENTRE**
716 Lee Street, East
Charleston, West Virginia 25301
Telephone: (304) 344-9322
Facsimile: (304) 344-1157
rusty@rustywebb.com

Michael A. Woelfel
WVSB No. 4106
**WOELFEL AND WOELFEL, LLP**
801 Eighth Street
Huntington, West Virginia 25701
Tel. 304.522.6249
Fax. 304.522.9282
mikewoelfel3@gmail.com

## CERTIFICATE OF SERVICE

I certify that on August 2, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ *Anthony J. Majestro*