UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CITY OF HUNTINGTON**
   **Plaintiff,**
v.
**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**
   **Defendants.**

Civil Action No. 3:17-cv-01362

**CABELL COUNTY COMMISSION,**
   **Plaintiff,**
v.
**AMERISOURCEBERGEN DRUG CORPORATION, et al.,**
   **Defendants.**

*Consolidated Case*:
Civil Action No. 3:17-cv-01665

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF ADMISSIBILITY OF LETTERS FROM THE DOJ/DEA TO MCKESSON**

The four (4) letters[1] from the DOJ-DEA to McKesson are not subject to Fed. R. Evid. 408(a) or hearsay. As detailed in Plaintiffs' Trial Memorandum (Dkt. 1436), a primary reason is because they are offered not to prove or disprove the validity or amount of a disputed claim or for the truth of the matter, but rather to prove notice to McKesson of various issues. The notice provided in the letters is not only independently relevant, but also addresses various theories asserted by McKesson during trial. Examples of McKesson's theories, as well as the corresponding notice provided in the letters at issue, include the following:

---

[1] P-00118 (Dkt. 1436-1), P-00119 (Dkt. 1436-2), P-00121 (Dkt. 1436-3), and P-00122 (Dkt. 1436-4).

1

<u>McKesson's Theory</u>: The DEA's opioid quotas led McKesson to believe its volumes of opioid distributions were acceptable.[2]

● ***Notice to McKesson from DOJ-DEA Letters***: "In recent years, prescriptions for certain prescription drugs like oxycodone have soared. . . . And so have deaths due to use of these drugs." *See* P-00121 (Dkt. 1436-3) at pp. 1-2. "[C]ustomers were able to engage in conduct that led to the diversion of massive quantities of Schedule II and III controlled substances". *See* P-00119 (Dkt. 1436-2) at p. 5.

<u>McKesson's Theory</u>: The DEA did not notify McKesson regarding problems with how it was reporting suspicious orders.[3]

● ***Notice to McKesson from DOJ-DEA Letters***: "McKesson's failure to design and operate a system to identify suspicious orders for controlled substances and, more importantly, the failure to report suspicious orders in violation of 21 C.P.R.§ 1301.74(b). *See* P-00118 (Dkt. 1436-1) at p. 1. "[A]ll parties expected McKesson to report suspicious orders, in compliance with § 1301.74(b) . . . [and in 2008 McKesson assured the DEA] that the order will not be filled until an investigation has been completed". *See* P-00119 (Dkt. 1436-2) at p. 2.

<u>McKesson's Theory</u>: McKesson believed that it was conducting suspicious order monitoring according to how the DEA wanted.[4]

● ***Notice to McKesson from DOJ-DEA Letter***: "[C]ustomers were able to engage in conduct that led to the diversion of massive quantities of Schedule II and III controlled substances". *See* P-00119 (Dkt. 1436-2) at p. 5. "McKesson fails to appreciate the serious and systemic nature of the CSA-related problems . . . McKesson's systemic failures were also evident at its

---

[2] 5/2/2021 Trial Tr. at 177:24-178:3 ("If a company like McKesson is looking at that kind of chart that the Court was shown and sees raising levels and wants to know is that appropriate in terms of what's medically, scientifically appropriate, the DEA is saying, yes, we need more prescription opioids every year".).

[3] 5/2/2021 Trial Tr. at 187:1-3 ("[McKesson] expected if the DEA had concerns when they got those [excessive purchase] reports, they'd tell the company or they'd tell the pharmacy".).

[4] 5/25/2021 Trial Tr. at 126:15-21 ("It was McKesson's understanding that we were [doing what the DEA wanted]".).

2

distribution center at 3000 Kenskill Avenue, Washington Court House, Ohio". *See* P-00122 (Dkt. 1436-4) at pp. 2-3.

Although the relevance of the notice provided in the four (4) letters independently warrants admission, that relevance is magnified due to the theories advanced by McKesson. Moreover, admitting the letters to prove such notice is consistent with "another purpose" as allowed pursuant to Fed. R. Evid. 408(b) as well as the extensive jurisprudence regarding same,[5] and is not hearsay because they are not offered for the truth of the matter. Fed. R. Evid. 801(c)(2).

McKesson ignores these points and attempts to distort the notice for which Plaintiffs offer the letters. McKesson claims that "there is no need to prove that McKesson was on 'notice' that the DEA/DOJ opened an investigation in 2013. That fact is both undisputed and already abundantly clear in the record." *See* McKesson Opposition (Dkt. 1465) at p. 9. However, as highlighted by the above examples, the notice which Plaintiffs seek to prove goes well beyond the fact that DEA/DOJ opened an investigation.

While all of the letters are admissible for notice (and separately because they do not involve the claim that was the subject of the compromise or even the same parties),[6] two of the letters (P-00118 (Dkt. 1436-1) and P-00121 (Dkt. 1436-3)) also do not meet the basic elements of Fed. R. Evid. 408, and should not be considered for exclusion. McKesson attempts to engraft into these letters "negotiations and settlement discussions". For example, with respect to P-00118 (Dkt. 1436-1),

---

[5] Plaintiffs' Trial Memorandum (Dkt. 1436) at p. 4.

[6] *Id.* at pp. 3 & 6-7.

McKesson asserts that the mere mention of the 2008 settlement agreement provides the basis for its claim that the letter was "sent in the context of "negotiations and settlement discussions". *See* McKesson Opposition (Dkt. 1465) at p. 4. However, the letter was sent in the context of notice to McKesson of the issues identified by the DEA/DOJ, and as the letter indicates, the reference to the 2008 settlement agreement was to alert McKesson that the perceived issues involve "the same type of conduct". *See* Dkt. 1436-1 at p. 1. Further, McKesson fails to acknowledge the clear distinctions between these two sets of letters - P-00118 (Dkt. 1436-1) and P-00121 (Dkt. 1436-3) versus P-00119 (Dkt. 1436-2) and P-00122 (Dkt. 1436-4). *See* Plaintiffs' Trial Memorandum (Dkt. 1436) at pp. 8-9.

As for the cases cited by McKesson, they are distinguishable from the instant matter for several reasons. Defendant's cases involved: settlement discussions amongst the same parties; settlement discussions involving the same or similar case being litigated; and/or a jury trial.[7] In fact, while another of the cases is similarly

---

[7] *See e.g.*, *Stevens v. Baltimore & Ohio R. Co.*, 915 F.2d 1565 (4th Cir. 1990) (unpublished) (On appeal from a jury trial, "the appellant argues that the district judge improperly excluded a statement made by the plaintiff . . . within the realm of statements made in settlement negotiations [between the same parties regarding the case at issue where] . . . the plaintiff allegedly stated that 'If it will help my case, I am going to have [back] surgery.'"); *Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 653 (4th Cir. 1988) ("In this interlocutory appeal, plaintiffs challenge the order of the district court which prevents them from offering evidence, at trial, of statements made by attorneys in the course of settling prior related litigation between the same parties."); *Macsherry v. Sparrows Point, LLC*, 973 F.3d 212, 224 (4th Cir. 2020) (During a jury trial, "the [district] court allowed [compromise statements between the parties] to be used for one of the very purposes foreclosed thereunder: to prove the validity of the claim that the compromise offer was meant to settle.") (internal quotation marks and citations omitted).

distinguishable, it actually supports Plaintiffs' positions.[8] Moreover, and most importantly, none of McKesson's cited cases involved the issue here where the information is being used to prove notice and to counter the other party's theories relative to same.

## CONCLUSION

For all of the reasons set forth, the Court should rule that P-00118, P-00119, P-00121, and P-00122 are admissible.

---

[8] *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 306 (4th Cir. 2012) ("The district court reasoned that the evidence that Clear Channel stopped using Tennessee Agrinet for one year was not appropriate for consideration on summary judgment because 'this cessation was for settlement purposes, statements regarding its effect would not be admissible in court.' This reasoning is untenable.") (citations omitted).

Dated: August 2, 2021                                             Respectfully submitted,

| THE CITY OF HUNTINGTON | CABELL COUNTY COMMISSION |
|---|---|
| /s/ *Anne McGinness Kearse* | /s/ *Paul T. Farrell, Jr.* |
| Anne McGinness Kearse | Paul T. Farrell, Jr. |
| WVSB No. 12547 | WVSB Bar No. 7443 |
| Joseph F. Rice | **FARRELL & FULLER LLC** |
| **MOTLEY RICE LLC** | 1311 Ponce de Leon Ave., Suite 202 |
| 28 Bridgeside Blvd. | San Juan, Puerto Rico 00907 |
| Mount Pleasant, SC 29464 | Mobile: 304-654-8281 |
| Tel: 843-216-9000 | paul@farrell.law |
| Fax: 843-216-9450 | |
| akearse@motleyrice.com | /s/ *Anthony J. Majestro* |
| jrice@motleyrice.com | Anthony J. Majestro |
| | WVSB No. 5165 |
| Linda Singer | **POWELL & MAJESTRO, PLLC** |
| David I. Ackerman | 405 Capitol Street, Suite P-1200 |
| **MOTLEY RICE LLC** | Charleston, WV 25301 |
| 401 9th Street NW, Suite 1001 | 304-346-2889 / 304-346-2895 (f) |
| Washington, DC 20004 | amajestro@powellmajestro.com |
| Tel:  202-232-5504 | |
| Fax:  202-386-9622 | Michael A. Woelfel |
| lsinger@motleyrice.com | WVSB No. 4106 |
| dackerman@motleyrice.com | **WOELFEL AND WOELFEL, LLP** |
| | 801 Eighth Street |
| | Huntington, West Virginia 25701 |
| Charles R. "Rusty" Webb | Tel. 304.522.6249 |
| WV No. 4782 | Fax. 304.522.9282 |
| **THE WEBB LAW CENTRE** | mikewoelfel3@gmail.com |
| 716 Lee Street, East | |
| Charleston, West Virginia 25301 | |
| Telephone: (304) 344-9322 | |
| Facsimile: (304) 344-1157 | |
| rusty@rustywebb.com | |

## CERTIFICATE OF SERVICE

I certify that on August 2, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ <u>*Anthony J. Majestro*</u>