# TAB 11

```
              IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                        AT CHARLESTON

_____x
                                :
THE CITY OF HUNTINGTON,         :      Civil Action
                                :
            Plaintiff,          :      No.  3:17-cv-01362
                                :
v.                              :
                                :
AMERISOURCEBERGEN DRUG          :
CORPORATION, et al.,            :
                                :
            Defendants.         :
_____x
                                :
CABELL COUNTY COMMISSION,       :      Civil Action
                                :
            Plaintiff,          :      No. 3:17-cv-01665
                                :
v.                              :
                                :
AMERISOURCEBERGEN DRUG          :
CORPORATION, et al.,            :
                                :
            Defendants.         :
_____x


             BENCH TRIAL - VOLUME 14
   BEFORE THE HONORABLE DAVID A. FABER, SENIOR STATUS JUDGE
            UNITED STATES DISTRICT COURT
            IN CHARLESTON, WEST VIRGINIA


                    MAY 20, 2021
```

*Ayme A. Cochran, RMR, CRR (304) 347-3128*

1    system, correct?
2    **A.**   I guess that's fair to say, the investigation that was
3    done, yeah.
4    **Q.**   And the finding that you made is inconsistent oversight
5    of field QRA, right?
6    **A.**   That is the statement that is made.
7    **Q.**   And for the Court's benefit, field QRA is Quality
8    Regulatory Affairs, correct?
9    **A.**   That is correct.
10   **Q.**   And did you -- Cardinal operated with compliance
11   officers at the different distribution centers it had across
12   the country; is that correct?
13   **A.**   That is correct.
14   **Q.**   Next, you find that inconsistent QRA participation and
15   direction both in selection of personnel and training of
16   personnel.  So, some other of your concerns about the system
17   that was being operated, correct?
18   **A.**   I wouldn't call them concerns.  They were
19   identifications of areas for continuous improvement.
20   **Q.**   Okay.  And then skipping down a little bit, you find
21   that there are communication gaps between QRA, Quality
22   Regulatory Affairs, and the sales force, unclear decision
23   rights, right?
24   **A.**   That is stated on the form.
25   **Q.**   You also noticed over the time there at Cardinal that

1    there was some contention or conflict between Sales and QRA
2    at times, correct?
3    **A.**   I did not notice any conflict between Sales and QRA.
4    **Q.**   Never any issues between Sales and QRA in your mind?
5    **A.**   Not with regard to what we were doing.
6    **Q.**   Then in the resource section, the last bullet point
7    that you have under resources is budgetary constraints and
8    limited resources.  That was another finding that you made,
9    right?
10   **A.**   It was another observation.
11   **Q.**   And when you came to Cardinal and you met with Mr.
12   Reardon, you had three staff members, didn't you?
13   **A.**   I did.
14   **Q.**   And that's excluding Mr. Reardon, correct?
15   **A.**   That is correct.
16   **Q.**   And it was Eric Brantley, Tim Dunham and Nick Rausch;
17   is that right?
18   **A.**   That is correct.
19   **Q.**   Okay.  And you felt that to properly operate the
20   Anti-Diversion System at Cardinal you needed more help than
21   just those three individuals, didn't you?
22   **A.**   I did.
23   **Q.**   If we turn the next page, Page 4 of the document, you
24   talk about key action and people.  Do you see that?
25   **A.**   I do.

1   he will revisit the pharmacies mentioned and respond to
2   Doug's concern.
3   **Q.**   So some pharmacies were identified and Mr. Quintero
4   said that there would be follow-up done at these pharmacies.
5   Is that fair?
6   **A.**   That's correct.  We'll revisit the pharmacies mentioned
7   in the email.
8   **Q.**   Now, was it your understanding that, in fact, the store
9   was visited after this email?
10  **A.**   I have no recollection as to whether or not the
11  pharmacy was visited after this email.
12  **Q.**   Do you have any reason to believe that it was not
13  visited?
14  **A.**   I have no reason to believe either way that it was or
15  it was not.
16          MS. MAINIGI:  Your Honor, at this time I would
17  like to move for the admission of P-2020.
18          THE COURT:  Any objection to 2020?
19          MR. ACKERMAN:  No objection, Your Honor.
20          MR. FULLER:  No, Your Honor.
21          THE COURT:  It's admitted.
22  BY MS. MAINIGI:
23  **Q.**   Now, with respect to 2020, the timing of this email
24  chain is approximately June, 2012; is that right?
25  **A.**   That is correct.

*Ayme A. Cochran, RMR, CRR (304) 347-3128*

| | | |
|---|---|---|
| 1 | Q. | All right.  Let's take a look at Cardinal 770. |
| 2 | | Can you identify Cardinal 770, Mr. Mone, after you've |
| 3 | had a chance to review it? | |
| 4 | A. | It is the, the -- it is the, the representation of the |
| 5 | computer investigator site visit report. | |
| 6 | Q. | And the investigator site visit report for where? |
| 7 | A. | T & J Enterprises. |
| 8 | Q. | And is that the T & J Enterprises in Huntington, West |
| 9 | Virginia? | |
| 10 | A. | Yes, it is.  It's the same, it's the same address that |
| 11 | we've been talking about. | |
| 12 | Q. | And what was the date of the visit? |
| 13 | A. | The 20th of August of 2012. |
| 14 | Q. | And when were -- when was that discussion internally at |
| 15 | Cardinal about T & J? | |
| 16 | A. | June 12th. |
| 17 | Q. | 2012? |
| 18 | A. | 2012, yes. |
| 19 | Q. | So within two months, the visit had been made? |
| 20 | A. | Yes. |
| 21 | Q. | Okay. |
| 22 | | MS. MAINIGI:  Your Honor, at this point I'd like |
| 23 | to move for the admission of Cardinal 770. | |
| 24 | | THE COURT:  Any objection to 770? |
| 25 | | MR. FULLER:  No, Your Honor. |