# TAB 12

1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

```
_____x
                              :
THE CITY OF HUNTINGTON,       :    Civil Action
                              :
            Plaintiff,        :    No.  3:17-cv-01362
                              :
v.                            :
                              :
AMERISOURCEBERGEN DRUG        :
CORPORATION, et al.,          :
                              :
            Defendants.       :
_____x
                              :
CABELL COUNTY COMMISSION,     :    Civil Action
                              :
            Plaintiff,        :    No. 3:17-cv-01665
                              :
v.                            :
                              :
AMERISOURCEBERGEN DRUG        :
CORPORATION, et al.,          :
                              :
            Defendants.       :
_____x
```

BENCH TRIAL - VOLUME 18
BEFORE THE HONORABLE DAVID A. FABER, SENIOR STATUS JUDGE
UNITED STATES DISTRICT COURT
IN CHARLESTON, WEST VIRGINIA

MAY 26, 2021

*Ayme A. Cochran, RMR, CRR (304) 347-3128*

1    require the suspension of all orders or sales of other
2    controlled substances to that customer?
3    **A.**    If the question is all, the answer would be no.
4    **Q.**    And, in fact, you testified to that very point when you
5    were a government official, didn't you?
6    **A.**    Yes.
7    **Q.**    You're not aware of any company or regulator who has
8    ever run Masters Exhibit A with a due diligence assumption
9    to any set of data at any point in time, correct?
10   **A.**    That's a correct estimate, Your Honor.  I'm not aware
11   if someone did not.
12   **Q.**    There's no general acceptance you can point me to for
13   Method A with its due diligence assumption, whether it's by
14   distributors, regulators or academics, correct?
15   **A.**    That is a correct statement, Your Honor.
16   **Q.**    The DEA has never conducted this exercise of applying
17   your Method A to identify diversion, correct?
18   **A.**    That's a correct statement, Your Honor.
19   **Q.**    In fact, you've told me it wouldn't be a valid exercise
20   for the DEA to attempt to use your Masters A to identify
21   diversion, correct?
22   **A.**    And apply the assumption, that would be a correct
23   statement.  I believe I testified before that if, after the
24   ruling by the DC appellate court, I may be tempted to use
25   the Masters six-month evaluation if I was still working.  I

*Ayme A. Cochran, RMR, CRR (304) 347-3128*

1   **Q.**   And you can't point me to any generally accepted
2   methodology for identifying and reporting suspicious orders
3   that ignores entirely what the medical community is doing in
4   terms of increased legitimate prescriptions, true?
5   **A.**   That's a correct statement.
6   **Q.**   Okay.  Are you -- are you aware that doctors in
7   Huntington and Cabell County were making the decision to
8   prescribe more and more?  I'm going to write doctors on
9   here.  More and more prescription opioids?
10  **A.**   Yes.  The charts that were used today would indicate
11  that.
12  **Q.**   How would they indicate that?
13  **A.**   Well, the more drugs that are being dispensed are
14  pursuant to a prescription.
15  **Q.**   You get the prescription, that goes up, and then the
16  distribution goes up, correct?
17  **A.**   That's correct.  No other way for those charts to
18  increase without prescriptions.
19  **Q.**   No other way, right?
20  **A.**   That's correct.
21  **Q.**   Okay.  And so -- I apologize.  I don't think I asked
22  this, but let me be sure I did.  Method B does not adjust
23  threshold levels at all based on whether doctors are making
24  the judgment to legitimately prescribe more or less
25  prescription opioids, correct?

*Ayme A. Cochran, RMR, CRR (304) 347-3128*

1 **A.** That's correct.

2 **Q.** So, this pre-dates that Southwood decision we just

3 talked about that the Masters decision says was the first

4 articulation of the do not ship requirement, correct?

5 **A.** I'd agree with that statement, Your Honor.

6 **Q.** All right.  Let's look at this letter predating that

7 first articulation of the do not ship requirement.  Would

8 you go with me to the second page, please?  If we look at

9 the second paragraph, Mr. Rannazzisi writes, DEA recognizes

10 that the overwhelming majority of registered distributors

11 act lawfully and take appropriate measures to prevent

12 diversion.  Did I read that correctly?

13 **A.** You read it correctly.

14 **Q.** Here's my question, sir.  At this time, when Mr.

15 Rannazzisi said that the overwhelming majority of registered

16 distributors act lawfully and take appropriate measures to

17 prevent diversion from before this time period, before 2006,

18 is there any distributor you can point me to that blocked

19 every order it reported to the DEA?

20 **A.** I'm not aware of that, Your Honor.

21 **Q.** Switching gears.  There's not a specific record

22 retention requirement under law for federal diligence files,

23 correct?

24 **A.** It doesn't -- in the Federal Register, it doesn't

25 specifically speak to due diligence files.

*Ayme A. Cochran, RMR, CRR (304) 347-3128*

1  **Q.**  It doesn't say how long they need to be maintained,
2  correct?
3  **A.**  No.  I believe that's one of the areas of the
4  maintenance of effective control is to prevent diversion to
5  keep those records to document your decisions and your
6  actions, but it doesn't specifically say that, Your Honor,
7  anywhere in the federal regulations.
8  **Q.**  There are specific recordkeeping requirements for some
9  types of documents, right?
10 **A.**  Yes, there are.  They are a part of what's used to
11 control and to guide the -- keep the closed system intact,
12 required records.
13 **Q.**  Just not for diligence files, correct?
14 **A.**  There is not -- doesn't speak to due diligence files.
15         MR. SCHMIDT:  Okay.  Let's -- I have one more
16 small topic I can start.  I'm not done.  I've got more to
17 ask, but I can do one more small topic, Your Honor, or I can
18 --
19         THE COURT:  We've got seven minutes before your
20 sand runs out of the glass here.
21         MR. SCHMIDT:  I think I can get it done in the
22 seven minutes.  If not, I'll pick up tomorrow.
23     Could we put back up the demonstrative?  And could we
24 go to Page 7?
25         BY MR. SCHMIDT: