# TAB 17

```
                IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                          AT CHARLESTON


_____x
                              :
THE CITY OF HUNTINGTON,       :      Civil Action
                              :
            Plaintiff,        :      No.  3:17-cv-01362
                              :
v.                            :
                              :
AMERISOURCEBERGEN DRUG        :
CORPORATION, et al.,          :
                              :
            Defendants.  :
_____x
                              :
CABELL COUNTY COMMISSION,     :      Civil Action
                              :
            Plaintiff,        :      No. 3:17-cv-01665
                              :
v.                            :
                              :
AMERISOURCEBERGEN DRUG        :
CORPORATION, et al.,          :
                              :
            Defendants.  :
_____x
```

BENCH TRIAL - VOLUME 28
BEFORE THE HONORABLE DAVID A. FABER, SENIOR STATUS JUDGE
UNITED STATES DISTRICT COURT
IN CHARLESTON, WEST VIRGINIA


JUNE 16, 2021

1        (Proceedings resumed at 3:42 p.m. as follows:)

2            THE COURT:  Before you resume, Ms. Wu, I've

3    been asked to make clear what the schedule as it now

4    stands is.

5        I understand Dr. Gilligan who is the defendants'

6    witness is available on July 2nd.  That's Friday.  And so

7    we'll start the defendants' case on that day, and then not

8    come back until July the 7th which I believe is a Wednesday.

9            Is that consistent with what I've told everybody

10   before?

11           MR. SCHMIDT:  I think so, Your Honor.  And as to

12   Dr. Gilligan, what we've agreed to with the plaintiffs is

13   he'll go on and off in a single day because he's got

14   vacation after that.  And I think as a condition of doing

15   that, we've agreed to wrap him up by noon so that plaintiffs

16   have time to cross.

17           MR. FARRELL:  I'm sorry.  You said you would be

18   done by noon?

19           MR. SCHMIDT:  By the noon break, yes.

20           MR. FARRELL:  Then we definitely will be done.

21           THE COURT:  Okay.  Well, all right.

22       You may proceed, Ms. Wu.

23           MS. WU:  Thank you, Your Honor.

24   BY MS. WU:

25   **Q.**   Dr. Yingling, welcome back.  Do you still have in

*Ayme A. Cochran, RMR, CRR (304) 347-3128*

```
1    Q.    I think you may have been anticipating the question

2    that I was going to ask which is that this reflects that you

3    and the other healthcare professionals on the Coalition had

4    made a finding that there were pharmacists whom the Opioid

5    Reduction Act, Senate Bill 573, had dissuaded from

6    dispensing necessary medication to patients who were in

7    pain; correct?

8    A.    Correct, one of the reasons.

9    Q.    You agree that there are patients for whom prescription

10   opioids are necessary medical care; is that right?

11   A.    State it again.

12   Q.    You agree that there are patients for whom prescription

13   opioid medication is necessary medical care?

14   A.    Yes.

15   Q.    That's part of what's reflected in the Coalition's

16   findings here; correct?

17   A.    Sure.

18   Q.    I want to go back to the first page of the report.

19         And, again, in the overview paragraph, we touched on

20   this just a moment ago, the sentence about balance.

21         It says that one of the Coalition's jobs is to attempt

22   to strike a balance between regulation, patient needs, and

23   clinical judgment of physicians.

24         You agree that that balance is important; correct?

25   A.    I agree.
```

1    **Q.**    And that includes the ability of physicians to exercise

2    their clinical judgment in deciding how to treat patients

3    who are suffering from pain.  That's important; right?

4    **A.**    I agree.

5    **Q.**    And part of what this report reflects is that that

6    balance is difficult to strike; correct?

7    **A.**    There are struggles, yes.

8    **Q.**    And, in particular, that limits on the prescribing of

9    opioid pain medications here in West Virginia have had in

10   some cases the unintended consequence of depriving patients

11   of necessary medical care; correct?

12   **A.**    Counsel, my answer needs to be framed in, in the

13   consideration of the population of patients, the population

14   of citizens we're talking about here.

15        Yes, we are trying to strike a balance for a small

16   population of individuals in our state who have chronic

17   pain.  That's what our attempt was.

18        So I don't want to be found generalizing outside of

19   this very specific population.  For that specific

20   population, my answer is "yes."

21   **Q.**    And part of what this report reflects, and the findings

22   that are included in here reflect, is that doctors and

23   healthcare professionals, including the folks on this

24   Coalition, with decades of experience in pain management are

25   still sorting out the right way to strike that balance; is