# TAB 18

1

```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                       AT CHARLESTON

_____x
                              :
THE CITY OF HUNTINGTON,       :      Civil Action
                              :
            Plaintiff,        :      No.  3:17-cv-01362
                              :
v.                            :
                              :
AMERISOURCEBERGEN DRUG        :
CORPORATION, et al.,          :
                              :
            Defendants.       :
_____x
                              :
CABELL COUNTY COMMISSION,     :      Civil Action
                              :
            Plaintiff,        :      No. 3:17-cv-01665
                              :
v.                            :
                              :
AMERISOURCEBERGEN DRUG        :
CORPORATION, et al.,          :
                              :
            Defendants.       :
_____x
```

BENCH TRIAL - VOLUME 39
BEFORE THE HONORABLE DAVID A. FABER, SENIOR STATUS JUDGE
UNITED STATES DISTRICT COURT
IN CHARLESTON, WEST VIRGINIA

JULY 27, 2021

*Ayme A. Cochran, RMR, CRR (304) 347-3128*

1    safety of the community has been significantly interfered
2    with the rise of this public nuisance.
3         And the City of Huntington and Cabell County are well
4    positioned to implement an opioid abatement plan and a
5    response to the public nuisance, address the crisis in the
6    community.
7         Your Honor, today, as an advocate but also a voice in
8    the community, I want to go through some of the testimony
9    today because it's important for Cabell County and City of
10   Huntington that their testimony was heard in this courtroom
11   and the record is made for your Court's consideration.
12        Simply put, we believe the evidence presented
13   demonstrates that the fact that the health, safety, and the
14   welfare of these communities are at stake, but we believe
15   there's a pathway to recovery.
16        Mr. Farrell went over some of the expert testimony
17   there, but I want to start with the exposure of prescription
18   opioids as the driving force of the public nuisance.  The
19   accessibility and over-supply that is in the record of
20   prescription pills have ravaged this community and it's
21   undisputed that the more pills that are out there, the more
22   potential there is for diversion.
23        Mr. Farrell played clips today for Your Honor so
24   they -- the first one and the third one were actually played
25   for you by video deposition and the designations that you'll

1     Dr. McGuire -- you haven't heard much about him today.
2  Dr. McGuire also in his studies and research of the harms
3  associated with Cabell County as he put a dollar sign just
4  to demonstrate for Your Honor the harm that opioids has, has
5  put on the county and city, the high potential for abuse
6  which can lead users to substitute more lethal opioids
7  without accepted medical uses such as heroin or fentanyl.
8     Dr. Alexander we touched about and, again, Dr. Gilligan
9  and Dr. Murphy.  I don't know if we mentioned Dr. Murphy
10 yet, defendants' health economist expert, also testified if
11 you focus on abuse of prescription opioids and abuse of
12 heroin, they're probably closer to substitutes like Coke or
13 Pepsi.
14    Mr. Farrell touched on the abatement plan.  I'm just
15 going to touch on a couple things with this.  And -- but,
16 Your Honor, what we presented to you was well documented
17 within the medical literature best practices of bringing
18 together what is needed for the community.
19    Dr. Alexander specializes as an epidemiologist and
20 works in the abatement.  Each one of these have been
21 actually utilized within the community, not all of them,
22 some of them.  And we went through that in the, the
23 testimony and we'll have more in the findings of fact.
24    Sustainability is an issue.  Whether there is capacity
25 is an issue, and also just ensuring that we have the ability

1  for the funding to put these together.

2  There was some reference to the one epidemic and, and
3  do you treat a prescription epidemic or a heroin epidemic
4  any differently.  It's one epidemic and that's why we've
5  seen throughout this trial, throughout the witnesses there
6  the intertwining of the two of opioids on that too.

7  But each have testified, again Dr. Keyes and Dr.
8  Alexander and Chief Holbrook, that the epidemic is an opioid
9  epidemic, not one particular type of opioid or another.
10 It's an opioid epidemic.  It's had a direct result and a
11 predominant prescription drug threat in Appalachia.

12 Again, Dr. Alexander testified prescription opioids and
13 heroin and fentanyl are two sides of the same coin.

14 I think it's important for our, our abatement plan that
15 we're asking Your Honor the funding for it to demonstrate
16 that there's still an on-going crisis.  And the witnesses
17 both that Mr. Farrell mentioned and that came into this
18 courtroom and as documented in the documents, it's not going
19 away tomorrow.  It's going to take some time and we're still
20 in it.  It's a generational problem, so we will be dealing
21 with it for quite some time.

22 Mayor Williams testified, "We fight it every day."

23 Dr. Alexander testified about the multi-faceted plan
24 and treatment of opioid addiction is an important part of
25 it.  Mr. Farrell touched about this as well.  And we've seen

1   it through just the, the experts in the case that if you're
2   going to deal with the opioid addiction, you're going to
3   have to deal with the, the treatment and the other areas of
4   abatement that we're asking for on that.
5   　　　　You'll recall Dr. Waller, first witness, and he was
6   actually asked about MAT.  He actually has testified before
7   U.S. Congress on MAT and has actually written the, the
8   diagnostic book on medically assisted treatment.
9   　　　　He had a long conversation about it.  But he also
10  brought it back to the fact that the MAT is a -- evidence is
11  so strong.  It's been greater than half a century.  Hundreds
12  of thousands of publications have backed it up.
13  　　　　And it is a treatment for a community.  It's a
14  treatment for individuals.  It's a treatment that ensures
15  that the social networks and stabilize the communities.
16  　　　　We thought that was important to remind Your Honor
17  that, that early testimony in the first day as we get to the
18  last day that we're asking for an abatement plan on that
19  too.
20  　　　　But, again, Dr. Alexander testified about the reviewing
21  materials he's reviewed and speaking from the individuals,
22  there's still an existential threat to the county and city
23  and we need to scale up our programs.  We need new programs
24  and we need the funding to support it.
25  　　　　The cost of doing nothing is nothing.  If we don't

1  address it, we just get into more enormous social and
2  psychological and economic cost of inaction.
3      You heard, Your Honor -- just to, to remind you about
4  some of the sustainability. We had witnesses on the stand
5  who talked about the various grants they get. And, and I
6  think every one of our local witnesses talked about the, the
7  time that they take in getting grants to actually work
8  through a lot of these programs with that. Most everything
9  is written out as grant money. If you knew -- it is
10 reliable funding that we need. Sustainability is what it's
11 looking for. We can't do it all as piecemeal. The experts
12 agreed grant money is not guaranteed. Funding is unstable.
13     Mr. Farrell went over the abatement cost plan on that
14 too. All necessary elements of the plan that Dr. Alexander
15 went through, his working with the community and working on
16 his -- looking at what are the best practices and what are
17 the known practices to alleviate an opioid crisis such as in
18 Huntington and Cabell County.
19     I think it's important that we get this program -- as
20 Jan Rader testified, addiction and substance use disorder is
21 something that people live through, live throughout their
22 lives. We've taken the plan out to 15 years to accompany
23 that. It's not an overnight thing that we can work through.
24 We need to take the time and it takes the funding to get to
25 that plan.

1  We saw it during the pandemic. You heard from various
2  experts of the rising number of overdoses that happened and
3  the fragility of addiction. And part of that is the ability
4  to have treatment available, have the resources available,
5  have the tools available for people who are addicted.
6  I showed this in, in opening, Your Honor, and I think
7  it's, it's a good way to, to wrap up my comments in addition
8  to what Mr. Farrell covered is that the addiction in Cabell
9  County and City of Huntington has been a community-wide
10 health problem.
11 Addiction of opioids and the other harms associated
12 with that has spread out the ripple effect in the community.
13 And I think it's important with this and we've talked
14 about -- Dr. Gilligan actually was presented with the fact
15 that for every one overdose, for every one death, there are
16 10 treatments of admissions for abuse. This is from the CDC
17 that he testified about. 32 admissions emergency
18 department. 130 people die who abused -- people who abuse
19 are, are dependent and addicted. And 825 non-medical users.
20 So it just goes to show that the fact that it's not an
21 individual issue. It's a community-wide issue. And I think
22 Your Honor has asked questions about this, why is this not
23 individual issues versus a community issue.
24 I think the evidence has been clear from our experts,
25 from our witnesses that the opioid epidemic has been a

1    community issue.  They have treated it as a community issue.
2    They've worked together as a community to deal with the
3    issues and look for Your Honor to empower them to do more
4    with that.
5         Your Honor, we submit our case to you to empower the
6    City of Huntington and Cabell County to work with the opioid
7    crisis that they have, to work together as they have in the
8    past, and award sustainable funding so that they can deal
9    with their opioid addiction.
10        We also submit to Your Honor that the county and city
11   have an infrastructure within the community to be able to do
12   what they need to do with sustainable funding, funding that
13   we believe that we have proven to your court that we have
14   the need, we have the means, at least to implement it, and
15   we've proven the liability for the responsibility of these
16   companies to fund a program for City of Huntington and
17   Cabell County.
18        Your Honor, thank you for your time.
19             THE COURT:  Thank you, Ms. Kearse.
20        Well, we're way ahead of schedule.  It's 20 till 12:00.
21        Can we come back at 1:00?  Is that too soon, Mr.
22   Nicholas?
23             MR. NICHOLAS:  Whatever is best for the Court.
24   That's perfectly fine.
25             THE COURT:  That will give you enough time to warm