**Designation Run Report**

# Prevoznik, Thomas - Plaintiffs' Submission

---

**Prevoznik, Thomas 04-17-2019**
**Prevoznik, Thomas 04-18-2019**
**Prevoznik, Thomas 05-17-2019**

---

**Plaintiff Affirmatives  02:05:49**

**Defense Completeness Counters  00:02:38**

**Total Time  02:08:28**



**TP01-Prevoznik, Thomas - Plaintiffs' Submission**

| Page/Line | Source | ID |
|---|---|---|
| 41:21 - 42:04 | **Prevoznik, Thomas 04-17-2019 (00:00:14)** | TP01.1 |

41:21   Q. As I understand it, you
41:22 currently work for DEA; is that correct?
41:23   A. Yes.
41:24   Q. And what is your position?
42:1   A. I am currently the acting
42:2 section chief of the pharmaceutical
42:3 investigations in the diversion control
42:4 division.

| | | |
|---|---|---|
| 42:11 - 43:18 | **Prevoznik, Thomas 04-17-2019 (00:01:36)** | TP01.2 |

42:11 And in -- how long have you
42:12 had that position?
42:13   A. I've been acting since
42:14 mid-January of this year.
42:15   Q. How long have you been at
42:16 DEA overall?
42:17   A. Over 28 years.
42:18   Q. And is it fair to say that
42:19 part of the time that you were at DEA,
42:20 you were in the field, one of the field
42:21 offices, or several field offices, and
42:22 part of the time you've been at DEA
42:23 you've been at corporate headquarters?
42:24   A. I've been in the field.
43:1 I've been in our training academy as an
43:2 instructor, and I've also went back to
43:3 the field, and then to headquarters.
43:4   Q. Your current position is at
43:5 headquarters, correct?
43:6   A. Correct.
43:7   Q. And what -- in that
43:8 position, do you have any oversight or
43:9 responsibility related to suspicious
43:10 order monitoring or reporting?
43:11   A. Yes.  My -- well, they just
43:12 split our unit, our section to a -- so
43:13 that analytics side, which was ARCOS,
43:14 which includes drug theft loss, and SORs
43:15 data, the output side.  They've been
43:16 moved to another section.  That was like

| Page/Line | Source | ID |
|---|---|---|

**TP01-Prevoznik, Thomas - Plaintiffs' Submission**

|  |  |  |
|---|---|---|
|  | 43:17 two weeks ago.  But prior to that it'd | |
|  | 43:18 been under -- under me. | |
| 59:07 - 59:19 | **Prevoznik, Thomas 04-17-2019 (00:00:28)** | TP01.3 |
|  | 59:7  Q. Now, prior to your current | |
|  | 59:8 title, which is section chief of | |
|  | 59:9 pharmaceutical investigations, you were | |
|  | 59:10 the unit chief in the same section; is | |
|  | 59:11 that right? | |
|  | 59:12  A. No.  So in January 2017, I | |
|  | 59:13 got promoted to the associate section | |
|  | 59:14 chief up in pharmaceutical | |
|  | 59:15 investigations. | |
|  | 59:16 Prior to that I was the unit | |
|  | 59:17 chief down in our policy and liaison | |
|  | 59:18 section.  But I was the unit chief over | |
|  | 59:19 liaison. | |
| 59:24 - 60:19 | **Prevoznik, Thomas 04-17-2019 (00:00:53)** | TP01.4 |
|  | 59:24 Can you just again describe | |
|  | 60:1 for me at a high level what the purpose | |
|  | 60:2 of the unit is or the primary goals of | |
|  | 60:3 the unit? | |
|  | 60:4  A. Well, I mean, what I did was | |
|  | 60:5 I coordinated conferences, whether it was | |
|  | 60:6 the pharmacy diversion awareness | |
|  | 60:7 conferences.  I gave a lot of | |
|  | 60:8 presentations.  We would have to -- we | |
|  | 60:9 would coordinate with various entities to | |
|  | 60:10 try to get continuing education credits | |
|  | 60:11 for the pharmacists, and the techs.  We | |
|  | 60:12 would do the DEA general conference -- | |
|  | 60:13 conferences.  You know, the distributor | |
|  | 60:14 conference.  We would help our quota unit | |
|  | 60:15 with setting up the manufacturing | |
|  | 60:16 training that they would do. | |
|  | 60:17 I mean, we were like the | |
|  | 60:18 spokespeople, as well as coordinating the | |
|  | 60:19 events themselves. | |
| 62:07 - 62:17 | **Prevoznik, Thomas 04-17-2019 (00:00:33)** | TP01.5 |
|  | 62:7  Q. Let me ask it this way. | |
|  | 62:8 The liaison unit, what | |

| | | |
|---|---|---|
| **TP01-Prevoznik, Thomas - Plaintiffs' Submission** | | |
| **Page/Line** | **Source** | **ID** |

62:9 interaction did the liaison unit have
62:10 with suspicious order monitoring or
62:11 reporting?
62:12   A. I mean, at the conferences,
62:13 I mean, I gave presentations in 2013 and
62:14 '15 to the distributor -- at the
62:15 distributor conferences.  So, I mean, I
62:16 know I talked about suspicious orders.  I
62:17 talked about thresholds.

**63:21 - 64:06   Prevoznik, Thomas 04-17-2019 (00:00:18)        TP01.6**

63:21   Q. And did you present at the
63:22 most recent one?
63:23   A. No.  I did the '13 and '15.
63:24   Q. You presented at the '13 and
64:1 '15.
64:2 Now, prior to -- as part of
64:3 your preparation, did you come to learn
64:4 of prior distributor conferences that
64:5 took place?
64:6   A. Yes.  Mm-hmm.

**64:07 - 64:18   Prevoznik, Thomas 04-17-2019 (00:00:28)        TP01.7**

64:7   Q. Do you recall just
64:8 approximately what years the other
64:9 distributor conferences were, just
64:10 approximately?
64:11   A. No.  The distributor
64:12 conference became more unique around the
64:13 time that we did it.  But before that it
64:14 was when they were actually together.  It
64:15 was like an industry conference.  And
64:16 that was -- that was more frequent, I
64:17 believe.  I don't have a time frame for
64:18 you.

**71:04 - 71:08   Prevoznik, Thomas 04-17-2019 (00:00:13)        TP01.8**

71:4 Unless I say otherwise, when
71:5 I say you, or the DEA, or the
71:6 administration, I'm generally referring
71:7 to the entity that is the Drug
71:8 Enforcement Administration.

**84:02 - 84:21   Prevoznik, Thomas 04-17-2019 (00:00:38)        TP01.9**

| Page/Line | Source | ID |
|---|---|---|

**TP01-Prevoznik, Thomas - Plaintiffs' Submission**

84:2   Q. You're always a diversion
84:3 investigator?
84:4   A. Yes, I've been one for
84:5 28 years.
84:6   Q. Okay.  Your primary
84:7 responsibilities, you were no longer
84:8 primarily operating as a diversion
84:9 investigator after December 2008, fair?
84:10   A. When I became the
84:11 supervisor?
84:12   Q. Yes.  As a supervisor, did
84:13 you continue to function as a diversion
84:14 investigator as a primary part of what
84:15 you were doing?
84:16   A. Not as primary.
84:17   Q. But sometimes as a
84:18 general -- in terms of the supervision of
84:19 investigators, you would provide advice
84:20 and guidance on what they ought to do?
84:21   A. Correct.

| 86:16 - 87:02 | **Prevoznik, Thomas 04-17-2019 (00:00:17)** | TP01.10 |

86:16 What areas did you train in,
86:17 was it primarily diversion control?
86:18   A. It was all diversion
86:19 control.
86:20   Q. All diversion control?
86:21   A. Yeah, I mean I would assist
86:22 with some of the special agent stuff,
86:23 but...
86:24   Q. How much training do
87:1 diversion investigators as a general
87:2 matter get?

| 87:05 - 87:06 | **Prevoznik, Thomas 04-17-2019 (00:00:03)** | TP01.11 |

87:5 THE WITNESS:  It's 12 weeks.
87:6 The training at Quantico.

| 87:08 - 87:11 | **Prevoznik, Thomas 04-17-2019 (00:00:09)** | TP01.12 |

87:8   Q. All on diversion control?
87:9   A. Correct.
87:10   Q. And what are the components
87:11 of that training at a high level?

| Page/Line | Source | ID |
|---|---|---|
| | **TP01-Prevoznik, Thomas - Plaintiffs' Submission** | |

| Page/Line | Source | ID |
|---|---|---|
| 87:16 - 88:21 | **Prevoznik, Thomas 04-17-2019 (00:01:24)** | TP01.13 |

87:16 THE WITNESS:  So it would be
87:17 the -- the law, we would have law.
87:18 You would have the record
87:19 requirements.  It would be
87:20 interviewing.  It would be audits.
87:21 Like reviewing records for
87:22 pharmacy audit.  Reviewing records
87:23 for distributor audit.  Reviewing
87:24 records for a manufacturing audit.
88:1 Ethics training.  Just a lot of
88:2 interviewing, practicals.  We did
88:3 various practicals as well, just
88:4 to give them like a real life --
88:5 try to give them a real life
88:6 experience as best we could.
88:7 BY MS. MAINIGI:
88:8   Q. And after the initial
88:9 12-week training, are there any refresher
88:10 courses that are -- or refresher training
88:11 that is provided to diversion
88:12 investigators?
88:13   A. Yes, there is --
88:14   Q. How often is that?
88:15   A. It depends.  Each -- it --
88:16 it's typically within three to
88:17 five years.
88:18   Q. And how long is the
88:19 refresher training?
88:20   A. I believe it was about a
88:21 week.

| Page/Line | Source | ID |
|---|---|---|
| 597:06 - 598:10 | **Prevoznik, Thomas 04-18-2019 (00:01:11)** | TP01.14 |

597:6   Q. Will you state your name,
597:7 rank, and title?
597:8   A. Thomas Prevoznik.  I am the
597:9 acting section chief of pharmaceutical
597:10 investigations for the DEA's diversion
597:11 control division.
597:12   Q. Mr. Prevoznik, my name is
597:13 Paul Farrell, and I am one of the lawyers

| TP01-Prevoznik, Thomas - Plaintiffs' Submission | | |
| --- | --- | --- |
| **Page/Line** | **Source** | **ID** |

| | 597:14 representing the plaintiffs.  And so I | |
| | 597:15 thank you for coming here today.  And I | |
| | 597:16 just wanted to set for the record, we | |
| | 597:17 sent a list of subject matters to the | |
| | 597:18 United States Drug Enforcement Agency and | |
| | 597:19 asked for somebody to be designated to | |
| | 597:20 testify on its behalf. | |
| | 597:21 You understand that the | |
| | 597:22 questions that I ask you today are not in | |
| | 597:23 your individual capacity, but we're | |
| | 597:24 asking for answers as if it was coming | |
| | 598:1 from the DEA itself. | |
| | 598:2   A. Correct. | |
| | 598:3   Q. So the million-dollar | |
| | 598:4 question right out of the gate is, why | |
| | 598:5 didn't the DEA do more? | |
| | 598:6 So what I want to do is, I | |
| | 598:7 have the testimony from the former acting | |
| | 598:8 administrator, Robert Patterson.  And I'm | |
| | 598:9 going to show you a video clip and then | |
| | 598:10 ask some follow-up questions.  Okay? | |
| 598:12 - 599:06 | **Prevoznik, Thomas 04-18-2019 (00:00:35)** | **TP01.15** |
| | 598:12 THE WITNESS:  Okay. | |
| | 598:13 MR. FARRELL:  523. | |
| | 598:14 BY MR. FARRELL: | |
| | 598:15   Q. This is Mr. Patterson's | |
| | 598:16 opening statement I believe his testimony | |
| | 598:17 before Congress on March 20, 2018, in | |
| | 598:18 front of the subcommittee on oversight | |
| | 598:19 and investigations, the committee on | |
| | 598:20 Energy and Commerce. | |
| | 598:21 You're aware that | |
| | 598:22 Mr. Patterson testified? | |
| | 598:23   A. Yes. | |
| | 598:24   Q. And he testified on behalf | |
| | 599:1 of the DEA? | |
| | 599:2   A. Yes. | |
| | 599:3   Q. To Congress under oath? | |
| | 599:4   A. Yes. | |
| | 599:5 MR. FARRELL:  Show the first | |

| | TP01-Prevoznik, Thomas - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| | | |
|---|---|---|
| | 599:6 clip, please. | |
| 599:07 - 601:20 | **Prevoznik, Thomas 04-18-2019 (00:02:06)** | **TP01.16** |
| | 599:7 (Video clip played as | |
| | 599:8 follows:) | |
| | 599:9 MR. PATTERSON:  Where | |
| | 599:10 license revocation is not | |
| | 599:11 necessary, we've aggressively | |
| | 599:12 pursued civil actions and MOUs | |
| | 599:13 designed to ensure compliance. | |
| | 599:14 Over the last decade, DEA has | |
| | 599:15 levied fines totalling nearly | |
| | 599:16 $390 million against opioid | |
| | 599:17 distributors nationwide and | |
| | 599:18 entered into MOUs with each. | |
| | 599:19 (Video concluded.) | |
| | 599:20 BY MR. FARRELL: | |
| | 599:21   Q. Mr. Prevoznik, can you | |
| | 599:22 verify the accuracy of that statement? | |
| | 599:23   A. Yes. | |
| | 599:24   Q. So the DEA has in fact | |
| | 600:1 attempted to impose civil penalties and | |
| | 600:2 conducted investigations into opioid | |
| | 600:3 distribution and diversion? | |
| | 600:4   A. Correct. | |
| | 600:5   Q. I'm going to go to the next | |
| | 600:6 clip.  This is where the follow-up really | |
| | 600:7 begins. | |
| | 600:8 (Video clip played as | |
| | 600:9 follows:) | |
| | 600:10 MR. PATTERSON: | |
| | 600:11 Administrative actions, civil | |
| | 600:12 fines, and criminal cases are all | |
| | 600:13 important steps.  Where we have | |
| | 600:14 fallen short in the past, it is by | |
| | 600:15 not proactively leveraging the | |
| | 600:16 data that has been available to | |
| | 600:17 us. | |
| | 600:18 (Video concluded.) | |
| | 600:19 BY MR. FARRELL: | |
| | 600:20   Q. Mr. Prevoznik, are you | |

| Page/Line | Source | ID |
|---|---|---|

**TP01-Prevoznik, Thomas - Plaintiffs' Submission**

600:21 familiar with that complaint?

600:22   A. Yes.

600:23   Q. I'm also going to show you

600:24 what has been previously referenced in

601:1 this trial, the jury has heard probably

601:2 several times, is the Energy and

601:3 Commerce's report following the testimony

601:4 of Mr. Patterson as well as the testimony

601:5 from numerous others.

601:6 Are you familiar with this

601:7 report?

601:8   A. Yes, I am.

601:9   Q. And this is on one

601:10 particular page, one of the findings and

601:11 the markings up are the lawyers, not from

601:12 Congress.  You'll see where I put the

601:13 Star.  And it basically says, "Had

601:14 HDA" -- "Had DEA more proactively used

601:15 ARCOS data, it could have discovered, in

601:16 a period of time at a place called

601:17 Sav-Rite Pharmacy Number 1 that there

601:18 were a lot of pills that were shipped."

601:19 Are you familiar with this

601:20 finding from Congress?

**601:22 - 601:22**   **Prevoznik, Thomas 04-18-2019 (00:00:01)**   **TP01.17**

601:22 THE WITNESS:  Yes.

**601:23 - 603:15**   **Prevoznik, Thomas 04-18-2019 (00:01:48)**   **TP01.18**

601:23 BY MR. FARRELL:

601:24   Q. So when you and I walk

602:1 through the ARCOS data, what we're

602:2 talking about is this dataset of

602:3 information that you had, correct?

602:4   A. Correct.

602:5   Q. And these are transactions

602:6 between manufacturers and distributors,

602:7 between distributors and pharmacies, that

602:8 are stored in a large database maintained

602:9 by the DEA?

602:10   A. Correct.

602:11   Q. Okay.  So what -- what does

| Page/Line | Source | ID |
|---|---|---|

TP01-Prevoznik, Thomas - Plaintiffs' Submission

602:12 it mean when the DEA's position is that
602:13 you are not proactively using the ARCOS
602:14 data during this time frame?
602:15   A. Well, back during that time
602:16 frame, we were on what we called the
602:17 mainframe.  So the process was slower of
602:18 ARCOS data, so when it would be uploaded
602:19 and processed.  And so we were months
602:20 behind on getting that data up into the
602:21 system.
602:22 It was -- we were restricted
602:23 to a million transactions of upload per
602:24 night.  And we received millions of
603:1 transactions.  So that took a while.
603:2 In addition to that, you
603:3 also had, when they uploaded, there would
603:4 be errors, the most typical errors would
603:5 be wrong NDC code, wrong DEA number, or
603:6 the wrong DEA 222 order form number.
603:7   Q. It's my understanding that
603:8 today these transactions are stored
603:9 digitally with the DEA ARCOS database; is
603:10 that correct?
603:11   A. Correct.
603:12   Q. And now we are able to
603:13 presently and retrospectively look back
603:14 and figure out what happened.  Is that
603:15 fair?

**603:21 - 604:08**   **Prevoznik, Thomas 04-18-2019 (00:00:28)**   **TP01.19**

603:21 THE WITNESS:  Yes.
603:22 BY MR. FARRELL:
603:23   Q. Okay.  Now, this may be a
603:24 terrible analogy, but my mind, what I'm
604:1 thinking is, just like -- let's say if
604:2 the NSA keeps a log of everybody's cell
604:3 phone calls in the country, they're not
604:4 actively listening to everyone's call,
604:5 but they have the ability to go backwards
604:6 and piece together what happened.  Is
604:7 that similar to what the DEA was doing

| | TP01-Prevoznik, Thomas - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

604:8 with ARCOS?

**604:11 - 604:11**    **Prevoznik, Thomas 04-18-2019 (00:00:01)**    **TP01.20**

604:11 THE WITNESS:  Yes.

**604:13 - 604:21**    **Prevoznik, Thomas 04-18-2019 (00:00:22)**    **TP01.21**

604:13   Q. Same thing with the SEC.
604:14 There are billions of trades that happen
604:15 on Wall Street, but the SEC isn't
604:16 necessarily the clearinghouse for these
604:17 trades, but it has the capacity to look
604:18 on a computer backwards and figure out
604:19 what happened if somebody broke the law.
604:20 Is that akin to what is going on with the
604:21 DEA and ARCOS during this time frame?

**605:01 - 605:24**    **Prevoznik, Thomas 04-18-2019 (00:00:55)**    **TP01.22**

605:1 THE WITNESS:  Yes.
605:2 BY MR. FARRELL:
605:3   Q. So going back and looking
605:4 backwards from this very same energy and
605:5 commerce report, I happened to be
605:6 familiar with it because of the West --
605:7 because of West Virginia.  The Sav-Rite
605:8 Pharmacy from Page 125, Congress went
605:9 back and looked at the old ARCOS data.
605:10 And from it, what it's determined was
605:11 that McKesson Corporation -- are you
605:12 familiar with the company called
605:13 McKesson?
605:14   A. Yes, I am.
605:15   Q. And who are they?
605:16   A. They are a wholesaler,
605:17 distributor.
605:18   Q. McKesson Corporation sold
605:19 five million doses in 2006 and 2007 of
605:20 opium pills to a pharmacy in Kermit, West
605:21 Virginia.  Can you, by looking at this
605:22 exhibit, tell me how many people,
605:23 according to Congress, live in Kermit,
605:24 West Virginia?

**606:06 - 606:06**    **Prevoznik, Thomas 04-18-2019 (00:00:02)**    **TP01.23**

606:6 THE WITNESS:  406.

| | TP01-Prevoznik, Thomas - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| Page/Line | Source | ID |
|---|---|---|
| 607:01 - 607:05 | **Prevoznik, Thomas 04-18-2019 (00:00:14)** | TP01.24 |
| | 607:1   Q. Is there any basis | |
| | 607:2 that you can make up in reality or | |
| | 607:3 otherwise where a town of 400 people have | |
| | 607:4 a medical need for five million pills of | |
| | 607:5 opium in a span of 24 months? | |
| 607:09 - 607:13 | **Prevoznik, Thomas 04-18-2019 (00:00:05)** | TP01.25 |
| | 607:9 THE WITNESS:  Correct. | |
| | 607:10 There isn't.  There isn't. | |
| | 607:11 BY MR. FARRELL: | |
| | 607:12   Q. There is absolutely no way, | |
| | 607:13 is there? | |
| 607:16 - 607:16 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | TP01.26 |
| | 607:16 THE WITNESS:  No. | |
| 609:14 - 610:17 | **Prevoznik, Thomas 04-18-2019 (00:01:01)** | TP01.27 |
| | 609:14   Q. Beyond the opening statement | |
| | 609:15 from the DEA to Congress through | |
| | 609:16 Mr. Patterson here, there were also | |
| | 609:17 questions and answers. | |
| | 609:18 So one of the questions | |
| | 609:19 Congress asked the DEA was:  Why did the | |
| | 609:20 DEA communications with industry fail to | |
| | 609:21 prevent the kinds of major breakdowns | |
| | 609:22 apparent in West Virginia? | |
| | 609:23 I'm going to play for you | |
| | 609:24 Mr. Patterson's response. | |
| | 610:1 (Video clip played as | |
| | 610:2 follows:) | |
| | 610:3 ROBERT PATTERSON:  I think | |
| | 610:4 when you go back to that time | |
| | 610:5 frame on the suspicious orders | |
| | 610:6 reports, there was two major | |
| | 610:7 failures.  One was either a lack | |
| | 610:8 of information contained therein, | |
| | 610:9 or not filing them in -- in this | |
| | 610:10 instance that they had.  I think | |
| | 610:11 that started the problem, quite | |
| | 610:12 frankly, and a lot of the | |
| | 610:13 frustration came from chasing down | |
| | 610:14 the registrants and ultimately | |

| TP01-Prevoznik, Thomas - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

|  | 610:15 reminding them of their | |
|  | 610:16 responsibility in this regulated | |
|  | 610:17 area. | |
| 612:20 - 613:03 | **Prevoznik, Thomas 04-18-2019 (00:00:15)** | **TP01.28** |
|  | 612:20   Q.  Okay.  Back on -- back on | |
|  | 612:21 the questions. | |
|  | 612:22 My question to you is, who | |
|  | 612:23 is the DEA referencing when they are | |
|  | 612:24 talking about chasing down registrants. | |
|  | 613:1 Are we talking about the | |
|  | 613:2 wholesale distributors? | |
|  | 613:3   A.  Yes. | |
| 613:07 - 613:14 | **Prevoznik, Thomas 04-18-2019 (00:00:14)** | **TP01.29** |
|  | 613:7   Q.  And then it says that the | |
|  | 613:8 DEA was -- part of their frustration was | |
|  | 613:9 having to chase down the registrants and | |
|  | 613:10 remind them of their responsibilities. | |
|  | 613:11 Can you explain what that | |
|  | 613:12 means? | |
|  | 613:13 What does the DEA mean when | |
|  | 613:14 it says this to Congress? | |
| 613:17 - 613:24 | **Prevoznik, Thomas 04-18-2019 (00:00:20)** | **TP01.30** |
|  | 613:17 THE WITNESS:  It means that | |
|  | 613:18 we, with our letters in 2006, we | |
|  | 613:19 were reiterating what their | |
|  | 613:20 responsibility was to report | |
|  | 613:21 suspicious orders.  They may | |
|  | 613:22 needed to -- that the registrants | |
|  | 613:23 needed to meet effective controls | |
|  | 613:24 to guard against diversion. | |
| 615:01 - 615:05 | **Prevoznik, Thomas 04-18-2019 (00:00:14)** | **TP01.31** |
|  | 615:1   Q.  Was it the DEA's assessment | |
|  | 615:2 during the time frame of 2006 and 2007 | |
|  | 615:3 that the wholesale distributors, as an | |
|  | 615:4 industry, were not complying with their | |
|  | 615:5 regulatory duties? | |
| 615:08 - 616:14 | **Prevoznik, Thomas 04-18-2019 (00:01:01)** | **TP01.32** |
|  | 615:8 THE WITNESS:  Correct. | |
|  | 615:9 BY MR. FARRELL: | |
|  | 615:10   Q.  Now, we're going to go to | |

| | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

615:11 the next clip.

615:12 The follow-up with the DEA

615:13 is that a congressman asked the DEA about

615:14 the settlements with industry in the

615:15 past.  And asked them why the past

615:16 settlements were not effective in

615:17 achieving compliance.

615:18 Here is Mr. Patterson's

615:19 response on behalf of the DEA.

615:20 (Video clip played as

615:21 follows:)

615:22 ROBERT PATTERSON:  And

615:23 again, this goes back to the

615:24 frustration of the day.  And I

616:1 know that the -- the folks that

616:2 were in diversion back in 2010 and

616:3 2012 struggled with the fact that

616:4 these MOU or MOAs had been put in

616:5 place with these companies and

616:6 they blatantly violated them

616:7 again.

616:8 (Video concluded.)

616:9 BY MR. FARRELL:

616:10   Q. So my question to you is, is

616:11 what can the DEA do if the civil

616:12 penalties that they are imposing are not

616:13 prohibitive or do not cause the wholesale

616:14 distributors to change their conduct?

| 616:19 - 617:04 | **Prevoznik, Thomas 04-18-2019 (00:00:21)** | TP01.33 |

616:19 THE WITNESS:  Okay.  We

616:20 could take -- we could file an

616:21 order to show cause on them.  If

616:22 we could show imminent danger to

616:23 the public, we could file an ISO

616:24 against them.  We could perhaps

617:1 take other civil action or an

617:2 injunctive action against the

617:3 company, or we could criminally

617:4 prosecute.

| 621:05 - 621:20 | **Prevoznik, Thomas 04-18-2019 (00:00:38)** | TP01.34 |

| | TP01-Prevoznik, Thomas - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

|  |  |  |
|---|---|---|
| | 621:5 So the last question that | |
| | 621:6 was pending and answered, I asked:  "Was | |
| | 621:7 the DEA in fact frustrated that | |
| | 621:8 registrants were blatantly violating the | |
| | 621:9 MOUs from prior administrative actions?" | |
| | 621:10 And your answer was:  "Yes." | |
| | 621:11 There were appropriate | |
| | 621:12 objections that were made that will be | |
| | 621:13 resolved one day in the future.  So | |
| | 621:14 here's where my follow-up questions | |
| | 621:15 comes. | |
| | 621:16   A. Okay. | |
| | 621:17   Q. Does that include Cardinal | |
| | 621:18 Health's 2008 MOU and settlement which | |
| | 621:19 resulted in a second DEA fine? | |
| | 621:20   A. Yes. | |
| 624:13 - 624:15 | **Prevoznik, Thomas 04-18-2019 (00:00:08)** | **TP01.35** |
| | 624:13   Q. Does that include McKesson's | |
| | 624:14 2008 MOU and settlement which resulted in | |
| | 624:15 a second DEA fine? | |
| 624:18 - 624:18 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | **TP01.36** |
| | 624:18 THE WITNESS:  Yes. | |
| 625:02 - 625:05 | **Prevoznik, Thomas 04-18-2019 (00:00:13)** | **TP01.37** |
| | 625:2   Q. Acting Administrator Robert | |
| | 625:3 Patterson testified that the DEA has | |
| | 625:4 1,500 people to monitor 1.73 million | |
| | 625:5 registrants.  Is that an accurate number? | |
| 625:08 - 625:08 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | **TP01.38** |
| | 625:8 THE WITNESS:  Yes. | |
| 628:12 - 629:07 | **Prevoznik, Thomas 04-18-2019 (00:00:59)** | **TP01.39** |
| | 628:12   Q. So specifically what | |
| | 628:13 I'm referencing is Cardinal Health's | |
| | 628:14 reply brief, in Cardinal Health versus | |
| | 628:15 Eric Holder, which was a preliminary | |
| | 628:16 injunction filed by Cardinal Health in a | |
| | 628:17 DC District Court.  And in it -- in the | |
| | 628:18 reply brief there's a provision in here | |
| | 628:19 that I read to you.  And in essence what | |
| | 628:20 it says is that if you get a suspicious | |
| | 628:21 order, and you block it, that Cardinal | |

| Page/Line | Source | ID |
|---|---|---|

**TP01-Prevoznik, Thomas - Plaintiffs' Submission**

628:22 Health would terminate that customer and
628:23 not sell to it anymore.
628:24 Do you agree that if a
629:1 wholesale distributor gets a flag of a
629:2 suspicious order, that they've determined
629:3 to be a suspicious order, and that they
629:4 block that shipment, that they should
629:5 terminate all future sales to that same
629:6 customer until they can rule out that
629:7 diversion is occurring?

**629:14 - 630:13    Prevoznik, Thomas 04-18-2019 (00:01:14)    TP01.40**

629:14 THE WITNESS:  Yes, I would
629:15 agree.
629:16 BY MR. FARRELL:
629:17   Q. The same thing applies to a
629:18 document involving McKesson.
629:19 On August 13, 2014, the
629:20 United States Department of Justice was
629:21 communicating with the lawyer for
629:22 McKesson which ended up resulting in a
629:23 $150 million fine.
629:24 And in this discussion, the
630:1 DEA notes, and I'm reading from Bates
630:2 Stamp MCKMDL 00409224, that the McKesson
630:3 operations manual says the following
630:4 quote:
630:5 "Once McKesson deems an
630:6 order and/or a customer suspicious,
630:7 McKesson is required to act.  This means
630:8 all controlled substance sales to that
630:9 customer must cease and the DEA must be
630:10 notified."
630:11 Does the DEA agree with
630:12 those duties?
630:13   A. Yes.

**632:05 - 632:14    Prevoznik, Thomas 04-18-2019 (00:00:23)    TP01.41**

632:5   Q. So, cleaning up a couple of
632:6 other things.
632:7 There was some testimony
632:8 yesterday, or today actually, from my

| | TP01-Prevoznik, Thomas - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| | | |
|---|---|---|
| | 632:9 learned colleague, that 1.2 million | |
| | 632:10 suspicious orders were reported to the | |
| | 632:11 DEA between 2007 and 2018. | |
| | 632:12 Do you recall that | |
| | 632:13 testimony? | |
| | 632:14   A. Yes. | |
| 632:17 - 632:19 | **Prevoznik, Thomas 04-18-2019 (00:00:05)** | TP01.42 |
| | 632:17   Q. If those suspicious orders | |
| | 632:18 were filled, is that a, per se, violation | |
| | 632:19 of federal law? | |
| 632:22 - 632:22 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | TP01.43 |
| | 632:22 THE WITNESS:  Yes. | |
| 633:04 - 633:08 | **Prevoznik, Thomas 04-18-2019 (00:00:11)** | TP01.44 |
| | 633:4   Q. The foundation of our | |
| | 633:5 democracy arises out of the U.S. code. | |
| | 633:6 So I'm going to ask a couple of general | |
| | 633:7 questions about some code provisions that | |
| | 633:8 I'm sure you're very familiar with. | |
| 633:12 - 633:14 | **Prevoznik, Thomas 04-18-2019 (00:00:09)** | TP01.45 |
| | 633:12   Q. The first one is the statute | |
| | 633:13 of United States Code Section 801.  And I | |
| | 633:14 ask for it to be shown on the screen. | |
| 633:15 - 634:01 | **Prevoznik, Thomas 04-18-2019 (00:00:26)** | TP01.46 |
| | 633:15 So you've been asked in the | |
| | 633:16 past, with the focus on Subparagraph 1, | |
| | 633:17 that many of the controlled substances | |
| | 633:18 that are distributed in America, | |
| | 633:19 prescribed and dispensed, have a useful | |
| | 633:20 and legitimate medical purpose and that | |
| | 633:21 they are necessary to maintain the health | |
| | 633:22 and general welfare of the American | |
| | 633:23 people. | |
| | 633:24 That's a true statement, is | |
| | 634:1 it not? | |
| 634:09 - 634:12 | **Prevoznik, Thomas 04-18-2019 (00:00:07)** | TP01.47 |
| | 634:9   Q. So we're going to skip down | |
| | 634:10 to the part they omitted, which is | |
| | 634:11 Subparagraph 2, and I'd ask for you to | |
| | 634:12 read that into the record. | |
| 634:14 - 635:01 | **Prevoznik, Thomas 04-18-2019 (00:00:20)** | TP01.48 |

| Page/Line | Source | ID |
|---|---|---|

**TP01-Prevoznik, Thomas - Plaintiffs' Submission**

634:14 THE WITNESS:  "The illegal
634:15 importation, manufacture,
634:16 distribution and possession and
634:17 improper use of controlled
634:18 substances have a substantial and
634:19 detrimental effect on the health
634:20 and general welfare of the
634:21 American people."
634:22 BY MR. FARRELL:
634:23   Q. Is this consistent with the
634:24 guidance provided by the DEA to
635:1 registrants?

| | | |
|---|---|---|
| 635:04 - 635:04 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | TP01.49 |

635:4 THE WITNESS:  Yes.

| | | |
|---|---|---|
| 636:22 - 637:12 | **Prevoznik, Thomas 04-18-2019 (00:00:39)** | TP01.50 |

636:22   Q. Go to the next slide.  And
636:23 this is the United States Code Section,
636:24 which has a registration requirement.
637:1 And it includes a duty imposed upon the
637:2 registrants to comply with Paragraph 1.
637:3 Will you please read that into the
637:4 record?
637:5   A. "Maintenance of effective
637:6 control against diversion of particular
637:7 controlled substances into other than
637:8 legitimate medical, scientific, and
637:9 industrial channels."
637:10   Q. And is this consistent with
637:11 the guidance provided by the DEA to
637:12 registrants?

| | | |
|---|---|---|
| 637:15 - 637:15 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | TP01.51 |

637:15 THE WITNESS:  Yes.  Yes.

| | | |
|---|---|---|
| 638:10 - 638:20 | **Prevoznik, Thomas 04-18-2019 (00:00:28)** | TP01.52 |

638:10   Q. Title II, Control
638:11 Enforcement, states, "This bill provides
638:12 for control by the Justice Department of
638:13 problems related to drug abuse through
638:14 registration of manufacturers,
638:15 wholesalers, retailers, and all others in
638:16 the legitimate distribution chain, and

| Page/Line | Source | ID |
|---|---|---|
| | 638:17 makes transactions outside the legitimate | |
| | 638:18 distribution chain illegal." | |
| | 638:19 Is this consistent with the | |
| | 638:20 guidance the DEA provided to registrants? | |
| 638:24 - 638:24 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | TP01.53 |
| | 638:24 THE WITNESS:  Yes. | |
| 639:02 - 639:07 | **Prevoznik, Thomas 04-18-2019 (00:00:20)** | TP01.54 |
| | 639:2   Q. If you violate Section 823, | |
| | 639:3 or the provisions, the regulations | |
| | 639:4 enacted by the DEA related to the | |
| | 639:5 distribution of controlled substances, | |
| | 639:6 those acts are illegal.  Agreed or | |
| | 639:7 disagree? | |
| 639:10 - 639:10 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | TP01.55 |
| | 639:10 THE WITNESS:  Agreed. | |
| 639:22 - 640:17 | **Prevoznik, Thomas 04-18-2019 (00:00:42)** | TP01.56 |
| | 639:22   Q. The quote from the | |
| | 639:23 congressional record is, "The bill is | |
| | 639:24 designed to improve the administration | |
| | 640:1 and regulation by the manufacturer" -- | |
| | 640:2 "by the manufacturing, distribution and | |
| | 640:3 dispensing of controlled substances by | |
| | 640:4 providing a quote-unquote closed system | |
| | 640:5 of drug distribution for legitimate | |
| | 640:6 handlers of such drugs. | |
| | 640:7 "Such a closed system should | |
| | 640:8 significantly reduce the widespread | |
| | 640:9 diversion of these drugs out of | |
| | 640:10 legitimate channels into the illicit | |
| | 640:11 market, while at the same time providing | |
| | 640:12 the legitimate drug industry with a | |
| | 640:13 unified approach to narcotic and | |
| | 640:14 dangerous drug control." | |
| | 640:15 Is this consistent with the | |
| | 640:16 guidance provided by the DEA to | |
| | 640:17 registrants? | |
| 640:20 - 640:20 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | TP01.57 |
| | 640:20 THE WITNESS:  Yes. | |
| 641:14 - 641:18 | **Prevoznik, Thomas 04-18-2019 (00:00:13)** | TP01.58 |
| | 641:14 Does the DEA take the | |

| | TP01-Prevoznik, Thomas - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| | | |
|---|---|---|
| | 641:15 position that the purpose of the | |
| | 641:16 Controlled Substances Act and its federal | |
| | 641:17 regulations is to prevent diversion? | |
| | 641:18  A. Yes. | |
| 642:03 - 642:05 | **Prevoznik, Thomas 04-18-2019 (00:00:08)** | TP01.59 |
| | 642:3  Q. Does the DEA agree that | |
| | 642:4 diversion is foreseeable if registrants | |
| | 642:5 fail to comply with federal law? | |
| 642:10 - 642:14 | **Prevoznik, Thomas 04-18-2019 (00:00:09)** | TP01.60 |
| | 642:10 THE WITNESS:  Correct. | |
| | 642:11 BY MR. FARRELL: | |
| | 642:12  Q. And failure to comply | |
| | 642:13 enables more diversion.  Does the DEA | |
| | 642:14 agree with that? | |
| 643:01 - 643:05 | **Prevoznik, Thomas 04-18-2019 (00:00:10)** | TP01.61 |
| | 643:1 THE WITNESS:  Yes. | |
| | 643:2 BY MR. FARRELL: | |
| | 643:3  Q. Does the DEA believe that | |
| | 643:4 more diversion is detrimental to public | |
| | 643:5 health and safety? | |
| 643:08 - 643:12 | **Prevoznik, Thomas 04-18-2019 (00:00:13)** | TP01.62 |
| | 643:8 THE WITNESS:  Yes. | |
| | 643:9 BY MR. FARRELL: | |
| | 643:10  Q. Does the DEA agree that the | |
| | 643:11 more pills which unlawfully enter the | |
| | 643:12 market results in more diversion? | |
| 643:15 - 643:15 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | TP01.63 |
| | 643:15 THE WITNESS:  Yes. | |
| 643:16 - 643:17 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | TP01.64 |
| | 643:16 MR. FARRELL:  Go to the next | |
| | 643:17 slide. | |
| 643:19 - 643:23 | **Prevoznik, Thomas 04-18-2019 (00:00:11)** | TP01.65 |
| | 643:19  Q. This is a provision about | |
| | 643:20 penalties.  Does the DEA agree that the | |
| | 643:21 price for participation in illegal | |
| | 643:22 traffic of controlled substances should | |
| | 643:23 be prohibitive? | |
| 644:11 - 644:11 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | TP01.66 |
| | 644:11 THE WITNESS:  Yes. | |
| 644:11 - 644:16 | **Prevoznik, Thomas 04-18-2019 (00:00:10)** | TP01.67 |

| Page/Line | Source | ID |
|---|---|---|
| | 644:11 THE WITNESS:  Yes. | |
| | 644:12 BY MR. FARRELL: | |
| | 644:13   Q. Is this one of the reasons | |
| | 644:14 that the DEA has escalated the amount of | |
| | 644:15 fines that it has levied against | |
| | 644:16 registrants that are repeated violators? | |
| 644:22 - 644:22 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | **TP01.68** |
| | 644:22 THE WITNESS:  Yes. | |
| 661:19 - 663:09 | **Prevoznik, Thomas 04-18-2019 (00:01:52)** | **TP01.69** |
| | 661:19   Q. All right.  The next | |
| | 661:20 document that I'm going to show you comes | |
| | 661:21 from discovery in this case.  And it's | |
| | 661:22 the NWDA suspicious order monitoring | |
| | 661:23 system. | |
| | 661:24 And I believe that the | |
| | 662:1 government has it included in its folder, | |
| | 662:2 its materials file. | |
| | 662:3 Have you seen this document | |
| | 662:4 before? | |
| | 662:5   A. Can I see more than that? | |
| | 662:6   Q. I think it's under -- it's | |
| | 662:7 in one -- | |
| | 662:8   A. In my tabs, my folder? | |
| | 662:9   Q. Yeah. | |
| | 662:10   A. Yes. | |
| | 662:11   Q. I'll give you a second if | |
| | 662:12 you want to flip through it. | |
| | 662:13   A. That's all I see. | |
| | 662:14 I'm familiar with this. | |
| | 662:15   Q. This is a document that was | |
| | 662:16 in the files of Cardinal Health.  And | |
| | 662:17 it's stamped as received in 1993, but | |
| | 662:18 I'll represent to you that it contains | |
| | 662:19 some older 1984 references later on. | |
| | 662:20 I'm going just to ask you a | |
| | 662:21 few basic questions about it.  And I'll | |
| | 662:22 represent to you that the NWDA is a trade | |
| | 662:23 group for the wholesale distributors at | |
| | 662:24 some point in time. | |
| | 663:1 Go to Page 3. | |

| Page/Line | Source | ID |
|---|---|---|

**TP01-Prevoznik, Thomas - Plaintiffs' Submission**

663:2 MR. FARRELL:  Take that down
663:3 first if you don't mind.  I'm
663:4 sorry.  I was talking to John.
663:5 Take out the blowup.
663:6 Go ahead.  Put it back up.
663:7 BY MR. FARRELL:
663:8   Q. So this is something very
663:9 specific that I want to ask the DEA.

| 665:14 - 665:18 | **Prevoznik, Thomas 04-18-2019 (00:00:17)** | **TP01.70** |

665:14   Q. Go all the way to Page 7.
665:15 In the middle of the page in Paragraph 9,
665:16 "Single suspicious orders."  For purposes
665:17 of context I'd like you to read this
665:18 aloud.

| 665:21 - 666:12 | **Prevoznik, Thomas 04-18-2019 (00:00:28)** | **TP01.71** |

665:21 THE WITNESS:  "Single orders
665:22 of unusual size or deviation must
665:23 be reported immediately.  The
665:24 submission of a monthly printout
666:1 of after-the-fact sales will not
666:2 relieve a registrant from the
666:3 responsibility of reporting these
666:4 single excessive or suspicious
666:5 orders.
666:6 "DEA has interpreted orders
666:7 to mean prior to shipment."
666:8 BY MR. FARRELL:
666:9   Q. Is this statement consistent
666:10 with the guidance provided by the DEA to
666:11 registrants?
666:12   A. Yes.

| 666:22 - 667:02 | **Prevoznik, Thomas 04-18-2019 (00:00:10)** | **TP01.72** |

666:22   Q. I'm not asking you to
666:23 speculate.  As a matter of fact, is this
666:24 consistent with what the DEA has told its
667:1 registrants is required to comply with
667:2 federal law?

| 667:10 - 667:10 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | **TP01.73** |

667:10 THE WITNESS:  Yes.

| 667:23 - 668:07 | **Prevoznik, Thomas 04-18-2019 (00:00:21)** | **TP01.74** |

| TP01-Prevoznik, Thomas - Plaintiffs' Submission | |
| --- | --- |

| Page/Line | Source | ID |
| --- | --- | --- |
| | 667:23 The next thing I'm going to<br>667:24 do is I'm going to show you from Page 8,<br>668:1 attached to this in the Cardinal Health<br>668:2 files, is a cover sheet that says letters<br>668:3 from DEA approving the format.<br>668:4 And if you look, the first<br>668:5 letter is dated April 27, 1984.<br>668:6 Are you familiar with this<br>668:7 correspondence? | |
| 668:22 - 668:24 | **Prevoznik, Thomas 04-18-2019 (00:00:03)**<br>668:22   Q. Are you familiar with this<br>668:23 document?<br>668:24   A. No. | **TP01.75** |
| 669:09 - 669:15 | **Prevoznik, Thomas 04-18-2019 (00:00:16)**<br>669:9   Q. Okay.  So what I'm going to<br>669:10 ask you is, is to flip to Page 2 and see<br>669:11 Mr. Thomas Gitchell, acting chief<br>669:12 diversion of operations section.  Are you<br>669:13 familiar with Mr. Gitchell?<br>669:14   A. Yes, I know who he -- I know<br>669:15 who he is. | **TP01.76** |
| 671:04 - 671:07 | **Prevoznik, Thomas 04-18-2019 (00:00:10)**<br>671:4   Q. The date is April 27, 1984.<br>671:5 You'll see in the bottom right-hand<br>671:6 corner this is a document that is in the<br>671:7 Cardinal Health files. | **TP01.77** |
| 671:11 - 672:04 | **Prevoznik, Thomas 04-18-2019 (00:00:46)**<br>671:11   Q. And so I'm going to ask that<br>671:12 the -- that the main paragraph be blown<br>671:13 up so we can read it.<br>671:14 So the NWDA policy that<br>671:15 was -- that we just walked through, is<br>671:16 what this reference is to.<br>671:17 And I'd ask for you to read<br>671:18 it, the portion that's highlighted.<br>671:19   A. "The NWDA's draft format for<br>671:20 a suspicious order" -- "order monitoring<br>671:21 system provides an excellent framework<br>671:22 for distributor registrants to design and<br>671:23 operate a system to disclose to the | **TP01.78** |

| Page/Line | Source | ID |
|---|---|---|
| | 671:24 registrant suspicious orders of | |
| | 672:1 controlled substances." | |
| | 672:2   Q. Very good. | |
| | 672:3 Now I'd like you to read the | |
| | 672:4 next sentence. | |
| 672:07 - 672:18 | **Prevoznik, Thomas 04-18-2019 (00:00:21)** | TP01.79 |
| | 672:7 THE WITNESS:  "However, I am | |
| | 672:8 compelled to note, as I have in | |
| | 672:9 our previous discussions, that any | |
| | 672:10 automated data processing system | |
| | 672:11 may provide the means and | |
| | 672:12 mechanism for compliance when the | |
| | 672:13 data is carefully reviewed and | |
| | 672:14 monitored by the wholesaler." | |
| | 672:15 BY MR. FARRELL: | |
| | 672:16   Q. Is this statement consistent | |
| | 672:17 with guidance provided by the DEA to | |
| | 672:18 registrants? | |
| 673:02 - 673:16 | **Prevoznik, Thomas 04-18-2019 (00:00:28)** | TP01.80 |
| | 673:2 THE WITNESS:  Yes. | |
| | 673:3 BY MR. FARRELL: | |
| | 673:4   Q. Now, go to the final | |
| | 673:5 sentence.  Will you please read this | |
| | 673:6 aloud? | |
| | 673:7   A. "As previously discussed, an | |
| | 673:8 after-the-fact computer printout of sales | |
| | 673:9 data does not relieve a registrant of its | |
| | 673:10 responsibility to report excessive or | |
| | 673:11 suspicious orders when discovered.  I am | |
| | 673:12 enclosing a copy of your draft with my | |
| | 673:13 pen and ink changes." | |
| | 673:14   Q. Is this consistent with the | |
| | 673:15 guidance provided by the DEA to | |
| | 673:16 registrants? | |
| 673:19 - 673:19 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | TP01.81 |
| | 673:19 THE WITNESS:  Yes. | |
| 674:08 - 674:13 | **Prevoznik, Thomas 04-18-2019 (00:00:17)** | TP01.82 |
| | 674:8   Q. Has after the fact reporting | |
| | 674:9 of suspicious orders ever been in | |
| | 674:10 compliance with federal law according to | |

| Page/Line | Source | ID |
|---|---|---|

**TP01-Prevoznik, Thomas - Plaintiffs' Submission**

674:11 the DEA's guidance provided to
674:12 registrants?
674:13   A. No.

| 675:03 - 675:07 | **Prevoznik, Thomas 04-18-2019 (00:00:16)** | TP01.83 |

675:3   Q. So from the Cardinal Health
675:4 files comes a second letter from the DEA.
675:5 And it's dated approximately three weeks
675:6 later, May 16, 1984.  And it's again from
675:7 the DEA.

| 679:18 - 680:05 | **Prevoznik, Thomas 04-18-2019 (00:00:26)** | TP01.84 |

679:18   Q. Would you please read the
679:19 highlighted section.
679:20   A. "However, I want to make it
679:21 clear that the submission of a monthly
679:22 printout of after-the-fact sales will not
679:23 relieve a registrant from the
679:24 responsibility of reporting excessive or
680:1 suspicious orders.  DEA has interpreted
680:2 orders to mean prior to shipment."
680:3   Q. Is this statement consistent
680:4 with the guidance the DEA has always
680:5 provided to registrants?

| 680:08 - 680:08 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | TP01.85 |

680:8 THE WITNESS:  Yes.

| 692:10 - 692:18 | **Prevoznik, Thomas 04-18-2019 (00:00:20)** | TP01.86 |

692:10   Q. Mr. Prevoznik, the next
692:11 document I'm going to reference is
692:12 actually in your notebook.
692:13   A. Okay.
692:14   Q. In the reliance materials
692:15 that you disclosed yesterday.
692:16 And it's the -- from the
692:17 1996 diversion investigators manual.
692:18 Section 5126.

| 693:01 - 694:13 | **Prevoznik, Thomas 04-18-2019 (00:01:32)** | TP01.87 |

693:1   Q. On behalf of the DEA, do you
693:2 recognize this document?
693:3   A. Yes, I do.
693:4   Q. What is it?
693:5   A. It is part of our diversion

| Page/Line | Source | ID |
|---|---|---|

693:6 investigators manual.

693:7   Q. What does that mean?

693:8 What -- what is a diversion

693:9 investigators manual?

693:10   A. It's a manual that breaks

693:11 down our responsibilities, our job.

693:12 It -- it covers the whole gambit of what

693:13 registration is -- what a registrant is,

693:14 down to record reports, requirements.  It

693:15 goes through our scheduled

693:16 investigations, pre-registration

693:17 investigations, how to -- conducting

693:18 audits when we do the scheduled

693:19 investigation, what topics, what areas to

693:20 cover.

693:21 It covers controlled

693:22 substances -- controlled substances.  It

693:23 also covers the chemicals, List I

693:24 chemicals, the requirements of that, as

694:1 well as preregistration investigations of

694:2 chemicals, applicants.

694:3 It covers the -- the gambit

694:4 of exactly what our job is.

694:5   Q. Are these -- in this page

694:6 that we're showing here, the bottom

694:7 right-hand corner is a Bates stamp.  Can

694:8 you read that Bates stamp?

694:9   A. 00025231.

694:10   Q. Okay.  Is this a document

694:11 produced by the DEA in this litigation at

694:12 the request of counsel for the diversion

694:13 investigators manual from 1996?

| 694:15 - 695:15 | **Prevoznik, Thomas 04-18-2019 (00:00:46)** | **TP01.88** |

694:15 We'll stipulate that we

694:16 produced it.

694:17 MR. FARRELL:  Thank you.

694:18 BY MR. FARRELL:

694:19   Q. So the title of Section 5126

694:20 says what?

694:21   A. Requirement to report

| Page/Line | Source | ID |
|---|---|---|
| | 694:22 suspicious orders. | |
| | 694:23   Q. Would you read the first | |
| | 694:24 sentence of the first paragraph aloud? | |
| | 695:1   A. "Registrants are required to | |
| | 695:2 inform DEA of suspicious orders in | |
| | 695:3 accordance with 21 C.F.R. 1301.74(b). | |
| | 695:4 DEA field offices are not to approve or | |
| | 695:5 disapprove supplier shipments of | |
| | 695:6 controlled substances.  The | |
| | 695:7 responsibility for making the decision to | |
| | 695:8 ship rests with the supplier.  No (sic) | |
| | 695:9 exception to this occurs when a supplier | |
| | 695:10 complies with a DEA field office's | |
| | 695:11 request to initiate a controlled delivery | |
| | 695:12 of controlled substances." | |
| | 695:13   Q. Is this consistent with the | |
| | 695:14 guidance provided by the DEA to | |
| | 695:15 registrants? | |
| 695:17 - 696:10 | **Prevoznik, Thomas 04-18-2019 (00:00:36)** | **TP01.89** |
| | 695:17 THE WITNESS:  Yes. | |
| | 695:18 MR. FARRELL:  Now, if you'll | |
| | 695:19 go down to -- keep going. | |
| | 695:20 BY MR. FARRELL: | |
| | 695:21   Q. Beginning with | |
| | 695:22 "registrants," could you begin reading, | |
| | 695:23 please. | |
| | 695:24   A. "Registrants who routinely | |
| | 696:1 report suspicious orders, yet fill these | |
| | 696:2 orders, with reason to believe they are | |
| | 696:3 destined for the illicit market, are | |
| | 696:4 expressing an attitude of | |
| | 696:5 irresponsibility that is detriment to the | |
| | 696:6 public health and safety as set forth in | |
| | 696:7 21 U.S.C. 823 and 824." | |
| | 696:8   Q. Thank you.  Is this | |
| | 696:9 consistent with the guidance provided by | |
| | 696:10 the DEA to registrants? | |
| 696:15 - 696:24 | **Prevoznik, Thomas 04-18-2019 (00:00:23)** | **TP01.90** |
| | 696:15 THE WITNESS:  Yes. | |
| | 696:16 BY MR. FARRELL: | |

| | TP01-Prevoznik, Thomas - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| | 696:17   Q. So this is the official | |
| | 696:18 policy of the DEA as of 1996, agreed? | |
| | 696:19   A. Yes. | |
| | 696:20   Q. Is this the position that | |
| | 696:21 the DEA was instructing its diversion | |
| | 696:22 investigators to take when looking into | |
| | 696:23 cases involving the distribution of | |
| | 696:24 controlled substances? | |
| 697:06 - 697:10 | **Prevoznik, Thomas 04-18-2019 (00:00:12)** | **TP01.91** |
| | 697:6   Q. In 1996. | |
| | 697:7   A. Yes. | |
| | 697:8   Q. Are you aware of any | |
| | 697:9 deviation or change from that position by | |
| | 697:10 the DEA since 1996? | |
| 697:12 - 698:09 | **Prevoznik, Thomas 04-18-2019 (00:00:43)** | **TP01.92** |
| | 697:12 THE WITNESS:  No. | |
| | 697:13 BY MR. FARRELL: | |
| | 697:14   Q. So the next sentence is just | |
| | 697:15 a recitation of the suspicious order | |
| | 697:16 definition.  What I'd like you to do is | |
| | 697:17 go down to where it starts, "The supplier | |
| | 697:18 can determine," and begin reading aloud. | |
| | 697:19   A. "The supplier can determine | |
| | 697:20 whether the order is excessive by | |
| | 697:21 checking their own sales and establishing | |
| | 697:22 the average amount of controlled | |
| | 697:23 substances shipped to registrants of the | |
| | 697:24 same apparent size in a particular | |
| | 698:1 geographic area." | |
| | 698:2   Q. Read the next sentence, | |
| | 698:3 please. | |
| | 698:4   A. "If the customer exceeds | |
| | 698:5 this threshold, the request should be | |
| | 698:6 viewed as suspicious." | |
| | 698:7   Q. Is this consistent with the | |
| | 698:8 guidance that the DEA provided to | |
| | 698:9 registrants since at least 1996? | |
| 698:12 - 698:12 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | **TP01.93** |
| | 698:12 THE WITNESS: Yes. | |
| 700:04 - 700:09 | **Prevoznik, Thomas 04-18-2019 (00:00:17)** | **TP01.94** |

**TP01-Prevoznik, Thomas - Plaintiffs' Submission**

| Page/Line | Source | ID |
|---|---|---|
| | 700:4   Q. So if you take an average of 700:5 the registrants in the area and you 700:6 calculate that, if a customer exceeds 700:7 that average, is that a red flag for a 700:8 wholesale distributor that the order may 700:9 be suspicious? | |
| 700:13 - 700:13 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** 700:13 THE WITNESS:  Yes. | **TP01.95** |
| 700:15 - 700:17 | **Prevoznik, Thomas 04-18-2019 (00:00:09)** 700:15   Q. And is that consistent with 700:16 the directives the DEA has given to 700:17 registrants since at least 1996? | **TP01.96** |
| 700:20 - 700:24 | **Prevoznik, Thomas 04-18-2019 (00:00:09)** 700:20 THE WITNESS:  Yes. 700:21 BY MR. FARRELL: 700:22   Q. The next sentence, would you 700:23 read, please. 700:24   A. I forgot where I stopped. | **TP01.97** |
| 701:02 - 701:11 | **Prevoznik, Thomas 04-18-2019 (00:00:22)** 701:2   A. "This activity, over 701:3 extended periods of time, would lead a 701:4 reasonable person to believe that 701:5 controlled substances possibly are being 701:6 diverted. 701:7   Q. Now, so what I'm asking you 701:8 is, when you read this, is it fair to 701:9 assume that this is consistent with the 701:10 DEA's guidance to industry since at least 701:11 1996? | **TP01.98** |
| 701:16 - 702:08 | **Prevoznik, Thomas 04-18-2019 (00:00:38)** 701:16 THE WITNESS:  Yes. 701:17 BY MR. FARRELL: 701:18   Q. Would you read the next 701:19 sentence, please. 701:20   A. "An investigation will be 701:21 conducted for possible violation of the 701:22 CSA and regulations upon determining that 701:23 the reporting registrant, as a general 701:24 practice, does not voluntarily halt 702:1 shipments of controlled substances to | **TP01.99** |

| Page/Line | Source | ID |
|---|---|---|
| | 702:2 registrants involved in suspected | |
| | 702:3 diversion or to registrants against whom | |
| | 702:4 previous action has been taken." | |
| | 702:5   Q. Is this consistent with the | |
| | 702:6 guidance provided by the DEA to | |
| | 702:7 registrants since at least 1996? | |
| | 702:8   A. Yes. | |
| 702:24 - 703:08 | **Prevoznik, Thomas 04-18-2019 (00:00:26)** | **TP01.100** |
| | 702:24 Based upon this 1996 | |
| | 703:1 document, was it the DEA's position that | |
| | 703:2 a registrant should halt shipments of | |
| | 703:3 controlled substances that are involved | |
| | 703:4 in suspected diversion? | |
| | 703:5   A. Yes. | |
| | 703:6   Q. And does that include when a | |
| | 703:7 registrant has placed orders repeatedly | |
| | 703:8 in excess of the regional average? | |
| 703:13 - 703:13 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | **TP01.101** |
| | 703:13 THE WITNESS:  Yes. | |
| 709:02 - 709:06 | **Prevoznik, Thomas 04-18-2019 (00:00:14)** | **TP01.102** |
| | 709:2   Q. Is it fair to reach the | |
| | 709:3 conclusion that the DEA disclosed to | |
| | 709:4 Cardinal Health in the year 2003 | |
| | 709:5 Section 5126 of the 1996 diversion | |
| | 709:6 investigators manual? | |
| 709:10 - 709:10 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | **TP01.103** |
| | 709:10 THE WITNESS:  Yes. | |
| 710:12 - 711:08 | **Prevoznik, Thomas 04-18-2019 (00:00:41)** | **TP01.104** |
| | 710:12   Q. Mr. Prevoznik, do you | |
| | 710:13 recognize this document? | |
| | 710:14   A. Yes. | |
| | 710:15   Q. What is it? | |
| | 710:16   A. It's a report to the U.S. | |
| | 710:17 attorneys -- Attorney General.  It's a | |
| | 710:18 report by the suspicious orders task | |
| | 710:19 force that was mandated to convene, and | |
| | 710:20 it's their report based on the | |
| | 710:21 Comprehensive Methamphetamine Control Act | |
| | 710:22 in 1996. | |
| | 710:23   Q. To the best of your | |

| | TP01-Prevoznik, Thomas - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

710:24 knowledge, is this a true and accurate
711:1 copy of the report provided by the United
711:2 States Drug Enforcement Administration to
711:3 Attorney General Janet Reno?
711:4   A. To the best of my knowledge,
711:5 yes.
711:6   Q. What is the date of the
711:7 document?
711:8   A. October 1998.

712:07 - 712:17 **Prevoznik, Thomas 04-18-2019 (00:00:23)**     TP01.105

712:7   Q. Can you tell me in general,
712:8 do you -- does the DEA have an
712:9 understanding of what the purpose was of
712:10 this report that it generated for the
712:11 Attorney General?
712:12   A. It is our understanding that
712:13 this report was to discuss how to put a
712:14 suspicious ordering system forward to
712:15 handle the listed chemicals because of
712:16 the methamphetamine problem that we were
712:17 having in the United States.

712:18 - 713:04 **Prevoznik, Thomas 04-18-2019 (00:00:32)**     TP01.106

712:18   Q. Now, this is also from the
712:19 executive summary.  And it says that "the
712:20 charter required the establishment of a
712:21 task force to prepare recommendations
712:22 concerning additional guidelines to be
712:23 used by the chemical industry in
712:24 complying with 21 U.S.C. 830(b)(1)(A)."
713:1 Did I read that accurately?
713:2   A. Yes.
713:3   Q. Are you familiar with
713:4 21 U.S.C. 830(b)(1)(A)?

713:20 - 714:01 **Prevoznik, Thomas 04-18-2019 (00:00:24)**     TP01.107

713:20 This provision that we're
713:21 looking at, and the distinction that I
713:22 want to make, what is the DEA's
713:23 understanding of the types of
713:24 transactions that should be reported as
714:1 suspicious pursuant to 21 U.S.C. 830?

| Page/Line | Source | ID |
|---|---|---|
| | **TP01-Prevoznik, Thomas - Plaintiffs' Submission** | |

| Page/Line | Source | ID |
|---|---|---|
| 714:05 - 714:14 | **Prevoznik, Thomas 04-18-2019 (00:00:15)** | TP01.108 |

714:5 THE WITNESS:  To regulate
714:6 a -- regulated transactions, a
714:7 transaction for -- in this
714:8 particular section, regarding
714:9 chemicals.
714:10 BY MR. FARRELL:
714:11   Q. So we are talking about
714:12 List I chemicals, not controlled
714:13 substances?
714:14   A. Correct.

| Page/Line | Source | ID |
|---|---|---|
| 715:04 - 715:11 | **Prevoznik, Thomas 04-18-2019 (00:00:26)** | TP01.109 |

715:4 So under this report, it's
715:5 my understanding, is that the DEA was
715:6 complying with Section 21 U.S.C. 830,
715:7 which, if you read Paragraph 1(a) out
715:8 loud, requires what?  Reports to the
715:9 Attorney General.  It says, "Each
715:10 regulated person shall report to the
715:11 Attorney General."  And what does A say?

| Page/Line | Source | ID |
|---|---|---|
| 715:14 - 716:03 | **Prevoznik, Thomas 04-18-2019 (00:00:29)** | TP01.110 |

715:14 THE WITNESS:  "Any regulated
715:15 transaction involving an
715:16 extraordinary quantity of a listed
715:17 chemical, an uncommon method of
715:18 payment or delivery, or any other
715:19 circumstance that the regulated
715:20 person believes may indicate that
715:21 the listed chemical will be used
715:22 in violation of this subchapter."
715:23 BY MR. FARRELL:
715:24   Q. So, I'm asking the DEA, the
716:1 Reno report from 1998, its authority
716:2 arises out of the Methamphetamine Act; is
716:3 that right?

| Page/Line | Source | ID |
|---|---|---|
| 716:09 - 716:09 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | TP01.111 |

716:9 THE WITNESS:  Yes.

| Page/Line | Source | ID |
|---|---|---|
| 716:11 - 716:20 | **Prevoznik, Thomas 04-18-2019 (00:00:23)** | TP01.112 |

716:11   Q. And the definition of a
716:12 suspicious order under the

| Page/Line | Source | ID |
|---|---|---|
| | 716:13 Methamphetamine Act is what?  What size | |
| | 716:14 transaction? | |
| | 716:15   A. The extraordinary quantity. | |
| | 716:16   Q. All right.  Now, controlled | |
| | 716:17 substances are not governed by the | |
| | 716:18 methamphetamine act unless they contain | |
| | 716:19 ephedrine or pseudoephedrine; is that | |
| | 716:20 right? | |
| 716:24 - 717:02 | **Prevoznik, Thomas 04-18-2019 (00:00:03)** | **TP01.113** |
| | 716:24   Q. I'm asking you, the DEA? | |
| | 717:1   A. Yeah.  I'm waiting to make | |
| | 717:2 sure -- | |
| 717:06 - 717:06 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | **TP01.114** |
| | 717:6 THE WITNESS:  Yes. | |
| 720:08 - 720:11 | **Prevoznik, Thomas 04-18-2019 (00:00:08)** | **TP01.115** |
| | 720:8   Q. Because it -- comparing a | |
| | 720:9 List I chemical to a controlled | |
| | 720:10 substance, is comparing apples to | |
| | 720:11 oranges; is that fair? | |
| 720:14 - 720:14 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | **TP01.116** |
| | 720:14 THE WITNESS:  Yes. | |
| 722:11 - 722:17 | **Prevoznik, Thomas 04-18-2019 (00:00:22)** | **TP01.117** |
| | 722:11 Okay.  So this was discussed | |
| | 722:12 yesterday.  I'm just trying to find | |
| | 722:13 clarification. | |
| | 722:14 This Reno report, according | |
| | 722:15 to this note, applies to List I | |
| | 722:16 chemicals, agreed? | |
| | 722:17   A. Yes. | |
| 722:24 - 723:03 | **Prevoznik, Thomas 04-18-2019 (00:00:15)** | **TP01.118** |
| | 722:24   Q. Second -- secondly, it can | |
| | 723:1 apply to Control II and Control III | |
| | 723:2 controlled substances that contain List I | |
| | 723:3 chemicals.  Agreed or disagree? | |
| 723:08 - 723:08 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | **TP01.119** |
| | 723:8 THE WITNESS:  Agreed. | |
| 724:12 - 724:20 | **Prevoznik, Thomas 04-18-2019 (00:00:24)** | **TP01.120** |
| | 724:12   Q. We agree that this | |
| | 724:13 document we're looking at from the Reno | |
| | 724:14 report is guidance from the DEA to | |

| TP01-Prevoznik, Thomas - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

|  | 724:15 registrants under the Methamphetamine Act | |
|  | 724:16 regarding looking for orders of | |
|  | 724:17 extraordinary size involving List I | |
|  | 724:18 chemicals.  That's been established.  And | |
|  | 724:19 I'm asking you whether or not you agree | |
|  | 724:20 with it. | |
| 725:01 - 725:01 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | TP01.121 |
|  | 725:1 THE WITNESS:  Yes. | |
| 734:19 - 735:06 | **Prevoznik, Thomas 04-18-2019 (00:00:33)** | TP01.122 |
|  | 734:19  Q. Will you continue reading? | |
|  | 734:20  A. "Cardinal Health understood | |
|  | 734:21 DEA to want orders for opioids reported | |
|  | 734:22 that exceeded a calculation endorsed by | |
|  | 734:23 DEA or that a wholesale distributor | |
|  | 734:24 otherwise identified as unusual in size, | |
|  | 735:1 pattern or frequency." | |
|  | 735:2  Q. Are you aware of the DEA | |
|  | 735:3 ever endorsing a calculation for opioids | |
|  | 735:4 to identify orders of unusual size, | |
|  | 735:5 pattern, or frequency? | |
|  | 735:6  A. No. | |
| 737:12 - 737:18 | **Prevoznik, Thomas 04-18-2019 (00:00:25)** | TP01.123 |
|  | 737:12  Q. So my question to the DEA, | |
|  | 737:13 is, did the DEA ever provide guidance to | |
|  | 737:14 Cardinal Health that it could use the | |
|  | 737:15 Reno report's definition of suspicious, | |
|  | 737:16 which is extraordinary size, as the | |
|  | 737:17 algorithm for measuring unusual orders of | |
|  | 737:18 controlled substances? | |
| 737:22 - 737:23 | **Prevoznik, Thomas 04-18-2019 (00:00:02)** | TP01.124 |
|  | 737:22 THE WITNESS:  Not to my | |
|  | 737:23 knowledge. | |
| 738:14 - 738:23 | **Prevoznik, Thomas 04-18-2019 (00:00:37)** | TP01.125 |
|  | 738:14  Q. Cardinal Health is stating | |
|  | 738:15 in its discovery responses to the court | |
|  | 738:16 that the DEA provided guidance to them, | |
|  | 738:17 that they could use the Reno report and | |
|  | 738:18 its algorithm for orders of extraordinary | |
|  | 738:19 size to identify unusual orders of | |
|  | 738:20 controlled substances. | |

| Page/Line | Source | ID |
|---|---|---|

**TP01-Prevoznik, Thomas - Plaintiffs' Submission**

738:21 Are you aware of the DEA
738:22 providing such guidance to Cardinal
738:23 Health?

| 739:04 - 739:11 | **Prevoznik, Thomas 04-18-2019 (00:00:21)** | **TP01.126** |

739:4 THE WITNESS:  I am not
739:5 aware.
739:6 BY MR. FARRELL:
739:7   Q. Is it the DEA's position
739:8 that using an algorithm for extraordinary
739:9 size is an appropriate measurement of
739:10 orders of unusual size for controlled
739:11 substances?

| 739:17 - 739:24 | **Prevoznik, Thomas 04-18-2019 (00:00:23)** | **TP01.127** |

739:17 THE WITNESS:  No.
739:18 BY MR. FARRELL:
739:19   Q. In fact, in the Reno report,
739:20 the DEA provided recommendation and
739:21 guidance to registrants that it could
739:22 look for orders of extraordinary size of
739:23 List I chemicals using a factor of three.
739:24 Is that correct?

| 740:05 - 740:05 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | **TP01.128** |

740:5 THE WITNESS:  Yes.

| 747:09 - 747:14 | **Prevoznik, Thomas 04-18-2019 (00:00:22)** | **TP01.129** |

747:9   Q. Has the DEA provided
747:10 guidance to registrants of controlled
747:11 substances that don't include List I
747:12 chemicals that it can multiply the
747:13 monthly average by three to identify
747:14 orders that are merely unusual?

| 747:19 - 747:20 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | **TP01.130** |

747:19 THE WITNESS:  Not to my
747:20 knowledge.

| 749:06 - 749:12 | **Prevoznik, Thomas 04-18-2019 (00:00:21)** | **TP01.131** |

749:6 Has the DEA ever provided
749:7 industrywide guidance that it could use
749:8 the definition of suspicious order for
749:9 the List I chemicals under the
749:10 methamphetamine act for orders of
749:11 controlled substances that do not include

**TP01-Prevoznik, Thomas - Plaintiffs' Submission**

| Page/Line | Source | ID |
|---|---|---|
| | 749:12 List I chemicals? | |
| 749:13 - 749:13 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | **TP01.132** |
| | 749:13   A. Not to my knowledge. | |
| 749:20 - 749:20 | **Prevoznik, Thomas 04-18-2019 (00:00:03)** | **TP01.133** |
| | 749:20 In the context of the first | |
| 749:21 - 750:03 | **Prevoznik, Thomas 04-18-2019 (00:00:30)** | **TP01.134** |
| | 749:21 sentence, has the DEA ever provided | |
| | 749:22 guidance to registrants, which are, in | |
| | 749:23 this case, distributors of Control II | |
| | 749:24 prescription opioids, that it satisfies | |
| | 750:1 its compliance obligations under federal | |
| | 750:2 law by submitting after-the-fact | |
| | 750:3 ingredient limit reports? | |
| 750:07 - 750:08 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | **TP01.135** |
| | 750:7 THE WITNESS:  Not to my | |
| | 750:8 knowledge. | |
| 750:10 - 750:13 | **Prevoznik, Thomas 04-18-2019 (00:00:09)** | **TP01.136** |
| | 750:10   Q. Now, you'll recall from the | |
| | 750:11 1996 diversion investigators manual, if | |
| | 750:12 you'll flip back to it, which is | |
| | 750:13 Exhibit 11. | |
| 750:14 - 750:19 | **Prevoznik, Thomas 04-18-2019 (00:00:21)** | **TP01.137** |
| | 750:14   A. I'll use mine.  The '96 one? | |
| | 750:15   Q. The '96 one. | |
| | 750:16 Is there any reference to | |
| | 750:17 an -- an approved factor to be used by a | |
| | 750:18 registrant to identify unusual orders of | |
| | 750:19 controlled substances? | |
| 750:22 - 750:22 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | **TP01.138** |
| | 750:22 THE WITNESS:  No. | |
| 752:06 - 752:09 | **Prevoznik, Thomas 04-18-2019 (00:00:17)** | **TP01.139** |
| | 752:6   Q. Would the DEA ever endorse a | |
| | 752:7 methodology for use by a registrant that | |
| | 752:8 multiplied a monthly average by four to | |
| | 752:9 determine orders of unusual size? | |
| 752:14 - 752:15 | **Prevoznik, Thomas 04-18-2019 (00:00:05)** | **TP01.140** |
| | 752:14 THE WITNESS:  DEA doesn't | |
| | 752:15 endorse the systems. | |
| 752:17 - 752:20 | **Prevoznik, Thomas 04-18-2019 (00:00:10)** | **TP01.141** |
| | 752:17   Q. Is using a factor of four | |

| Page/Line | Source | ID |
|---|---|---|

**TP01-Prevoznik, Thomas - Plaintiffs' Submission**

752:18 when calculating orders of unusual size
752:19 compliant with federal regulations
752:20 according to the DEA?

| 752:24 - 753:01 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | TP01.142 |

752:24 THE WITNESS:  Not to my
753:1 knowledge.

| 755:02 - 755:04 | **Prevoznik, Thomas 04-18-2019 (00:00:07)** | TP01.143 |

755:2   Q. And is this a true and
755:3 accurate version of the 2004 chemical
755:4 handler's manual published by the DEA?

| 755:08 - 755:08 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | TP01.144 |

755:8 THE WITNESS:  Yes.

| 755:09 - 755:15 | **Prevoznik, Thomas 04-18-2019 (00:00:15)** | TP01.145 |

755:9 BY MR. FARRELL:
755:10   Q. Again, is this a document
755:11 that applies to List I chemicals,
755:12 including ephedrine and pseudoephedrine
755:13 and the chemicals used to make
755:14 methamphetamine?
755:15   A. Yes.

| 755:20 - 756:01 | **Prevoznik, Thomas 04-18-2019 (00:00:17)** | TP01.146 |

755:20   Q. Does the DEA provide
755:21 guidance that this document is an
755:22 appropriate reference point for
755:23 monitoring suspicious orders of
755:24 controlled substances that do not include
756:1 List I chemicals?

| 756:06 - 756:06 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | TP01.147 |

756:6 THE WITNESS:  No.

| 759:19 - 760:02 | **Prevoznik, Thomas 04-18-2019 (00:00:25)** | TP01.148 |

759:19   Q. If a registrant that is a
759:20 wholesale distributor of controlled
759:21 substances, excluding those that contain
759:22 List I chemicals, is using E-3 to
759:23 identify suspicious orders of unusual
759:24 size, frequency or pattern, is that
760:1 compliant with federal law, according to
760:2 the DEA?

| 760:07 - 760:07 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | TP01.149 |

760:7 THE WITNESS:  No.

| Page/Line | Source | ID |
|---|---|---|
| | **TP01-Prevoznik, Thomas - Plaintiffs' Submission** | |

| Page/Line | Source | ID |
|---|---|---|
| 761:01 - 761:14 | **Prevoznik, Thomas 04-18-2019 (00:00:52)** | **TP01.150** |
| | 761:1 And tell me if you | |
| | 761:2 recognize this document. | |
| | 761:3   A. Yes. | |
| | 761:4   Q. What is it? | |
| | 761:5   A. It's a letter that DEA sent | |
| | 761:6 to the distributors, registrants, by | |
| | 761:7 Joe -- by Joe Rannazzisi who was the head | |
| | 761:8 of the diversion program of DEA, it's | |
| | 761:9 dated September 27th, 2006. | |
| | 761:10   Q. Is this a true and accurate | |
| | 761:11 copy of the letter sent by the DEA to all | |
| | 761:12 registrants in the chain of distribution | |
| | 761:13 of controlled substances? | |
| | 761:14   A. Yes. | |
| 764:01 - 764:04 | **Prevoznik, Thomas 04-18-2019 (00:00:15)** | **TP01.151** |
| | 764:1   Q. So without belaboring the | |
| | 764:2 point in going through this, is it the | |
| | 764:3 DEA's position that anything in that | |
| | 764:4 letter is a new rule? | |
| 764:08 - 764:08 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | **TP01.152** |
| | 764:8 THE WITNESS:  No. | |
| 765:19 - 766:03 | **Prevoznik, Thomas 04-18-2019 (00:00:21)** | **TP01.153** |
| | 765:19 Is this a true and accurate | |
| | 765:20 copy of the second Rannazzisi letter sent | |
| | 765:21 by the DEA to wholesale distributors of | |
| | 765:22 prescription opioids dated December 27, | |
| | 765:23 2007? | |
| | 765:24   A. It went to manufacturers and | |
| | 766:1 distributors. | |
| | 766:2   Q. This one did? | |
| | 766:3   A. Yes. | |
| 766:07 - 766:10 | **Prevoznik, Thomas 04-18-2019 (00:00:11)** | **TP01.154** |
| | 766:7   Q. Does the DEA believe that | |
| | 766:8 there's anything in this letter that | |
| | 766:9 constitutes a new rule? | |
| | 766:10   A. No. | |
| 768:14 - 768:21 | **Prevoznik, Thomas 04-18-2019 (00:00:10)** | **TP01.155** |
| | 768:14 (Video clip played as | |
| | 768:15 follows:) | |

| Page/Line | Source | ID |
|---|---|---|
| | 768:16 MR. FARRELL:  During this | |
| | 768:17 time frame prior to 2007, did | |
| | 768:18 Cardinal report orders as | |
| | 768:19 potentially suspicious or | |
| | 768:20 suspicious orders, and then still | |
| | 768:21 send the shipments out? | |
| 768:24 - 769:04 | **Prevoznik, Thomas 04-18-2019 (00:00:07)** | **TP01.156** |
| | 768:24 THE WITNESS:  Yes, that is | |
| | 769:1 the direction we received from the | |
| | 769:2 DEA.  We made the reports as | |
| | 769:3 required and there was not a | |
| | 769:4 shipping requirement. | |
| 770:06 - 770:11 | **Prevoznik, Thomas 04-18-2019 (00:00:13)** | **TP01.157** |
| | 770:6 Cardinal Health claims that | |
| | 770:7 it received direction from the DEA that | |
| | 770:8 it could report suspicious orders and | |
| | 770:9 then still ship it. | |
| | 770:10 Is the DEA aware of | |
| | 770:11 providing such guidance? | |
| 770:17 - 770:18 | **Prevoznik, Thomas 04-18-2019 (00:00:02)** | **TP01.158** |
| | 770:17 THE WITNESS:  Not to my | |
| | 770:18 knowledge. | |
| 771:07 - 771:10 | **Prevoznik, Thomas 04-18-2019 (00:00:08)** | **TP01.159** |
| | 771:7   Q. Does the DEA take the | |
| | 771:8 position that a registrant of controlled | |
| | 771:9 substances has a duty to block shipments | |
| | 771:10 of suspicious orders? | |
| 771:14 - 771:17 | **Prevoznik, Thomas 04-18-2019 (00:00:06)** | **TP01.160** |
| | 771:14 THE WITNESS:  Yes. | |
| | 771:15 BY MR. FARRELL: | |
| | 771:16   Q. Is that now and always been | |
| | 771:17 the law in the United States of America? | |
| 771:20 - 771:20 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | **TP01.161** |
| | 771:20 THE WITNESS:  Yes. | |
| 772:10 - 772:13 | **Prevoznik, Thomas 04-18-2019 (00:00:06)** | **TP01.162** |
| | 772:10   Q. Okay.  You saw the testimony | |
| | 772:11 from Cardinal Health. | |
| | 772:12 Do you believe the testimony | |
| | 772:13 is accurate? | |
| 772:18 - 772:18 | **Prevoznik, Thomas 04-18-2019 (00:00:01)** | **TP01.163** |

TP01-Prevoznik, Thomas - Plaintiffs' Submission

| | TP01-Prevoznik, Thomas - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| | 772:18 THE WITNESS:  No. | |
| 807:02 - 807:19 | **Prevoznik, Thomas 05-17-2019 (00:00:48)** | **TP01.164** |
| | 807:2 And again, building on the | |
| | 807:3 testimony from the previous two days without | |
| | 807:4 repeating it, I'm going to show you the | |
| | 807:5 bottom right-hand corner is US-DEA-00026146, | |
| | 807:6 and I'd ask you to read Roman Numeral IX into | |
| | 807:7 the record. | |
| | 807:8   A. "Single suspicious orders. | |
| | 807:9 Single orders of unusual size or deviation | |
| | 807:10 must be reported immediately.  The submission | |
| | 807:11 of a monthly printout of after-the-fact sales | |
| | 807:12 will not relieve a registrant from the | |
| | 807:13 responsibility of reporting these single | |
| | 807:14 excessive or suspicious orders.  DEA has | |
| | 807:15 interpreted 'orders' to mean prior to | |
| | 807:16 shipment." | |
| | 807:17   Q. So my question to you is, is | |
| | 807:18 this consistent with the guidance provided by | |
| | 807:19 the DEA to wholesalers and distributors? | |
| 807:24 - 807:24 | **Prevoznik, Thomas 05-17-2019 (00:00:02)** | **TP01.165** |
| | 807:24 THE WITNESS:  Yes. | |
| 809:14 - 810:03 | **Prevoznik, Thomas 05-17-2019 (00:00:32)** | **TP01.166** |
| | 809:14   Q. Okay.  And I've highlighted | |
| | 809:15 down -- a particular provision for emphasis | |
| | 809:16 to build on the previous two days' testimony. | |
| | 809:17 Beginning with "As previously discussed," | |
| | 809:18 could you read that provision into the | |
| | 809:19 record? | |
| | 809:20   A. "An after-the-fact computer | |
| | 809:21 printout of sales data does not relieve a | |
| | 809:22 registrant of its responsibility to report | |
| | 809:23 excessive or suspicious orders when | |
| | 809:24 discovered." | |
| | 809:25   Q. Is this consistent with the | |
| | 810:1 guidance the DEA has provided to the | |
| | 810:2 wholesalers and manufacturers of prescription | |
| | 810:3 opioids? | |
| 810:05 - 810:05 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.167** |
| | 810:5 THE WITNESS:  Yes. | |

| TP01-Prevoznik, Thomas - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| | | |
|---|---|---|
| 810:07 - 810:11 | **Prevoznik, Thomas 05-17-2019 (00:00:15)** | TP01.168 |
| | 810:7   Q. I'm going to show you -- which | |
| | 810:8 is the last page of this document.  And | |
| | 810:9 you'll see in the bottom right-hand corner is | |
| | 810:10 US-DEA-00026150.  It has the stamp of May 16, | |
| | 810:11 1984. | |
| 810:16 - 810:18 | **Prevoznik, Thomas 05-17-2019 (00:00:09)** | TP01.169 |
| | 810:16   A. It's a letter from Mr. Gitchel, | |
| | 810:17 again, from DEA to the National Wholesales | |
| | 810:18 Druggists' Association. | |
| 810:22 - 811:08 | **Prevoznik, Thomas 05-17-2019 (00:00:28)** | TP01.170 |
| | 810:22 and I'd ask for you to read it | |
| | 810:23 into the record. | |
| | 810:24   A. "However, I want to make it | |
| | 810:25 clear that the submission of a monthly | |
| | 811:1 printout of after-the-fact sales will not | |
| | 811:2 relieve a registrant from the responsibility | |
| | 811:3 of reporting excessive or suspicious orders. | |
| | 811:4 DEA has interpreted 'orders' to mean prior to | |
| | 811:5 shipment." | |
| | 811:6   Q. Is this consistent with the | |
| | 811:7 guidance the DEA has provided to wholesalers | |
| | 811:8 and manufacturers of prescription opioids? | |
| 811:11 - 811:11 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | TP01.171 |
| | 811:11 THE WITNESS:  Yes. | |
| 815:09 - 815:14 | **Prevoznik, Thomas 05-17-2019 (00:00:28)** | TP01.172 |
| | 815:9   Q. If any distributor of | |
| | 815:10 prescription opioids relies upon | |
| | 815:11 after-the-fact sales reporting as the full | |
| | 815:12 scope of its compliance with 1301.74(b), does | |
| | 815:13 the DEA believe that it's sufficient to | |
| | 815:14 satisfy the obligations under federal law? | |
| 815:18 - 815:18 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | TP01.173 |
| | 815:18 THE WITNESS:  No. | |
| 816:10 - 816:21 | **Prevoznik, Thomas 05-17-2019 (00:00:30)** | TP01.174 |
| | 816:10 And I'll direct your attention | |
| | 816:11 to the bottom right-hand corner with the | |
| | 816:12 Bates stamp US-DEA-00026154.  It has the | |
| | 816:13 stamp of December 8, 1993, and I'm going to | |
| | 816:14 ask you if you recognize this document. | |

| TP01-Prevoznik, Thomas - Plaintiffs' Submission | | |
| --- | --- | --- |
| **Page/Line** | **Source** | **ID** |

| | 816:15   A. Yes. | |
| | 816:16   Q. What is this document? | |
| | 816:17   A. This is an internal document | |
| | 816:18 from Gene Haislip, our director of Office and | |
| | 816:19 Diversion Control DEA, to the SAC, or special | |
| | 816:20 agent in charge, of our Dallas field | |
| | 816:21 division. | |
| 820:07 - 820:23 | **Prevoznik, Thomas 05-17-2019 (00:00:47)** | **TP01.175** |
| | 820:7 "Section 1301.74(b)," could you read the next | |
| | 820:8 sentence? | |
| | 820:9   A. "1301.74(b) of Title 21 of the | |
| | 820:10 Code of Federal Regulations clearly places | |
| | 820:11 the responsibility for designing and | |
| | 820:12 operating a system to identify suspicious | |
| | 820:13 orders of controlled substances on the | |
| | 820:14 registrant.  Implicit in this regulation is | |
| | 820:15 the idea that the registrant should not | |
| | 820:16 merely be accumulating data on what appear to | |
| | 820:17 be excessive purchases for eventual | |
| | 820:18 submission to DEA but rather that the system | |
| | 820:19 be monitored so that any such orders will be | |
| | 820:20 apparent to the registrant so that they -- so | |
| | 820:21 that they can be reported to DEA upon | |
| | 820:22 discovery and, whenever possible, before the | |
| | 820:23 order is shipped." | |
| 822:15 - 823:24 | **Prevoznik, Thomas 05-17-2019 (00:01:44)** | **TP01.176** |
| | 822:15   Q. Now, at the very bottom, there | |
| | 822:16 is a discussion from the director beginning | |
| | 822:17 with the last paragraph on the bottom of the | |
| | 822:18 page beginning "what is -- what is of | |
| | 822:19 particular concern." | |
| | 822:20 Can you please read that into | |
| | 822:21 the record? | |
| | 822:22   A. "What is of particular concern | |
| | 822:23 to me is the statement that appears on the | |
| | 822:24 report submitted by the McKesson Corporation | |
| | 822:25 in Fort Worth, Texas.  For example, 'With the | |
| | 823:1 submission of this report, we are leaving to | |
| | 823:2 the DEA the final determination of whether | |
| | 823:3 they are suspicious or unusual.'  This | |

| TP01-Prevoznik, Thomas - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

823:4 position is unacceptable and clearly in
823:5 contravention to the requirements of 21 CFR
823:6 1301.74(b).
823:7 "A registrant whose own
823:8 personnel are in the best position to
823:9 determine what is excessive or unusual based
823:10 on knowledge of their customers and usual
823:11 purchasing practices may not abrogate its
823:12 responsibility to identify suspicious orders
823:13 and to determine whether to ship or refuse to
823:14 ship the controlled substance order.
823:15 "The registrant must also
823:16 report any suspicious orders as soon as
823:17 possible to the DEA.  This has been conveyed
823:18 to the McKesson national management in San
823:19 Francisco, and they have agreed to remove the
823:20 statement from reports."
823:21   Q. So on behalf of the DEA, can
823:22 you validate that this is a true and accurate
823:23 summary of the conversation between the DEA
823:24 and McKesson?

| 824:02 - 824:08 | **Prevoznik, Thomas 05-17-2019 (00:00:15)** | **TP01.177** |

824:2 THE WITNESS:  Yes.
824:3 QUESTIONS BY MR. FARRELL:
824:4   Q. Is this consistent with the
824:5 guidance that DEA provided not only to
824:6 McKesson but to every other wholesale
824:7 distributor and manufacturer of prescription
824:8 opioids?

| 824:13 - 824:13 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.178** |

824:13 THE WITNESS:  Yes.

| 834:21 - 834:24 | **Prevoznik, Thomas 05-17-2019 (00:00:13)** | **TP01.179** |

834:21 So it should go
834:22 AmerisourceBergen first.  The top
834:23 right is August 16, 2005, Bates stamp
834:24 US-DEA-00000147.

| 840:10 - 840:12 | **Prevoznik, Thomas 05-17-2019 (00:00:07)** | **TP01.180** |

840:10 What I'd ask you to do is I'd
840:11 ask you to turn to page 7 of the PowerPoint
840:12 presentation with AmerisourceBergen.

| Page/Line | Source | ID |
|---|---|---|

**TP01-Prevoznik, Thomas - Plaintiffs' Submission**

| Page/Line | Source | ID |
|---|---|---|
| 840:23 - 841:18 | **Prevoznik, Thomas 05-17-2019 (00:00:56)** | **TP01.181** |

840:23   Q. And if you look at the next
840:24 slide, it states, "Reporting a suspicious
840:25 order to the DEA does not relieve the
841:1 distributor of the responsibility to maintain
841:2 effective controls against diversion."
841:3 Did I read that accurately?
841:4   A. Yes.
841:5   Q. Okay.  Why did the DEA put the
841:6 word "not" in all caps?
841:7   A. To emphasize that they had to
841:8 provide the suspicious order, not just -- not
841:9 just after-sales reports.
841:10   Q. The next slide, it says, "The
841:11 DEA cannot tell a distributor if an order is
841:12 legitimate or not" and that "the distributor
841:13 must determine which orders are suspicious
841:14 and make a sales decision."
841:15 Is this similar to all of the
841:16 other slide shows the DEA provided to the
841:17 distributors back in the 2000 -- 2005, 2006
841:18 time frame?

| Page/Line | Source | ID |
|---|---|---|
| 841:21 - 841:21 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.182** |

841:21 THE WITNESS:  Yes.

| Page/Line | Source | ID |
|---|---|---|
| 841:23 - 842:04 | **Prevoznik, Thomas 05-17-2019 (00:00:10)** | **TP01.183** |

841:23   Q. In other words, this PowerPoint
841:24 presentation, was it a stock PowerPoint
841:25 presentation that was shown to Cardinal
842:1 Health?
842:2   A. Yes.
842:3   Q. Was it shown to McKesson?
842:4   A. Yes.

| Page/Line | Source | ID |
|---|---|---|
| 842:18 - 842:25 | **Prevoznik, Thomas 05-17-2019 (00:00:18)** | **TP01.184** |

842:18   Q. So I'm also going to have you
842:19 flip to page 12.
842:20 In the summary slides, the very
842:21 last bullet point, can you read what that
842:22 says?
842:23   A. "Not limited to Internet
842:24 pharmacies."

| Page/Line | Source | ID |
|---|---|---|
| | **TP01-Prevoznik, Thomas - Plaintiffs' Submission** | |

842:25   Q. What does that mean?

**843:05 - 843:17**   **Prevoznik, Thomas 05-17-2019 (00:00:32)**   **TP01.185**

843:5   A. It's not just the -- what the
843:6 Internet pharmacies was, but it would be any
843:7 pharmacy, retail.
843:8   Q. The very next slide, it says,
843:9 "A pattern of drugs being distributed to
843:10 pharmacies who are diverting controlled
843:11 substances demonstrates the lack of effective
843:12 controls against diversion by the
843:13 distributor."
843:14 This PowerPoint presentation in
843:15 the distributor initiative meeting, it was
843:16 not just limited to rogue Internet
843:17 pharmacies, was it?

**843:20 - 843:23**   **Prevoznik, Thomas 05-17-2019 (00:00:09)**   **TP01.186**

843:20 THE WITNESS:  No.  The emphasis
843:21 was regarding the Internet, but it was
843:22 for the totality of their
843:23 responsibilities as a registrant.

**845:18 - 846:04**   **Prevoznik, Thomas 05-17-2019 (00:00:33)**   **TP01.187**

845:18   Q. So the next plaintiff's exhibit
845:19 has the Bates stamp at the bottom corner of
845:20 US-DEA-00000371, and you'll see that it's
845:21 dated January 23, 2006, but it's referencing
845:22 a January 3, 2006 meeting.
845:23 Do you see that?
845:24   A. Yes.
845:25   Q. And in it you can see where it
846:1 looks like it contains -- this is the
846:2 memorandum of the meeting between McKesson
846:3 and the DEA as a result of the distributor
846:4 initiative.  Agreed?

**846:07 - 847:04**   **Prevoznik, Thomas 05-17-2019 (00:01:06)**   **TP01.188**

846:7 THE WITNESS:  Yes.
846:8 QUESTIONS BY MR. FARRELL:
846:9   Q. Now, what I'm going to ask you
846:10 to do is I'm going to ask you to go to the
846:11 end of page 2.  And at the bottom, starting
846:12 with the word "after," the very last

| Page/Line | Source | ID |
|---|---|---|
| | 846:13 paragraph, I'd ask you to read that into the | |
| | 846:14 record. | |
| | 846:15   A. "After the conclusion of this | |
| | 846:16 meeting, it was learned from Gary Hilliard of | |
| | 846:17 McKesson Corp that one of the reasons they | |
| | 846:18 were not able to realize the full volume of | |
| | 846:19 hydrocodone product going out to the Florida | |
| | 846:20 pharmacies was that their reports only | |
| | 846:21 included the name brand hydrocodone products | |
| | 846:22 distributed and was leaving out the generic | |
| | 846:23 products." | |
| | 846:24   Q. The next sentence. | |
| | 846:25   A. "It was only after realizing | |
| | 847:1 that the generic were not being reported was | |
| | 847:2 McKesson Corp then able to see the large | |
| | 847:3 quantities that DEA was bringing to | |
| | 847:4 McKesson's attention." | |
| 847:17 - 847:22 | **Prevoznik, Thomas 05-17-2019 (00:00:20)** | **TP01.189** |
| | 847:17   Q. This document, following the | |
| | 847:18 distributor initiative meeting between the | |
| | 847:19 DEA and McKesson, appears to present the fact | |
| | 847:20 that the DEA discovered McKesson was only | |
| | 847:21 tracking brand name prescription opiates. | |
| | 847:22   A. Correct. | |
| 848:03 - 848:06 | **Prevoznik, Thomas 05-17-2019 (00:00:15)** | **TP01.190** |
| | 848:3   Q. If, in fact, McKesson was only | |
| | 848:4 tracking brand name prescription opiates and | |
| | 848:5 leaving out the generic products, is that a | |
| | 848:6 violation of federal law? | |
| 848:10 - 848:10 | **Prevoznik, Thomas 05-17-2019 (00:00:02)** | **TP01.191** |
| | 848:10 THE WITNESS:  Yes. | |
| 849:12 - 849:14 | **Prevoznik, Thomas 05-17-2019 (00:00:07)** | **TP01.192** |
| | 849:12   Q. All right.  On a scale of 0 of | |
| | 849:13 10 of screw-ups, how big of a screw-up is | |
| | 849:14 this? | |
| 849:22 - 850:01 | **Prevoznik, Thomas 05-17-2019 (00:00:05)** | **TP01.193** |
| | 849:22 THE WITNESS:  In my personal | |
| | 849:23 capacity, a big one, a really big one. | |
| | 849:24 QUESTIONS BY MR. FARRELL: | |
| | 849:25   Q. Epic? | |

| Page/Line | Source | ID |
|---|---|---|

850:1   A. Yes.

| | | |
|---|---|---|
| 850:18 - 851:09 | **Prevoznik, Thomas 05-17-2019 (00:01:10)** | **TP01.194** |

850:18   Q. Now, without having to go
850:19 through all of the nuances, what I'm going to
850:20 ask you to do is I'm going to make a
850:21 reference now.  At the bottom right-hand
850:22 corner is Bates stamp CAH_MDL2804_01376799.
850:23 Do you see that?  799 are the
850:24 last three numbers.
850:25   A. Yes, I have it.
851:1   Q. Now, in it, in this letter,
851:2 Larry -- to Larry Cote from Cardinal Health's
851:3 lawyers, it seems to indicate that controlled
851:4 substances that are sold by Cardinal Health
851:5 to CVS, Walgreens, Kroger, Kmart and Winn
851:6 Dixie, which are large, national or regional
851:7 chains, pose no threat of diversion due to
851:8 their sophisticated anti-diversion systems
851:9 and historical record of compliance.

| | | |
|---|---|---|
| 851:13 - 851:16 | **Prevoznik, Thomas 05-17-2019 (00:00:03)** | **TP01.195** |

851:13 THE WITNESS:  Yes.
851:14 QUESTIONS BY MR. FARRELL:
851:15   Q. Did I read that accurately?
851:16   A. Yes.

| | | |
|---|---|---|
| 851:20 - 851:23 | **Prevoznik, Thomas 05-17-2019 (00:00:12)** | **TP01.196** |

851:20   Q. Aside from me reading that
851:21 accurately, is it true that large, national,
851:22 regional chains of pharmacies pose no threat
851:23 of diversion of prescription opioids?

| | | |
|---|---|---|
| 852:01 - 852:06 | **Prevoznik, Thomas 05-17-2019 (00:00:12)** | **TP01.197** |

852:1 THE WITNESS:  It's not true.
852:2 QUESTIONS BY MR. FARRELL:
852:3   Q. In fact, the DEA has
852:4 investigated and prosecuted many of the large
852:5 national or regional chains, including CVS
852:6 and Walgreens?

| | | |
|---|---|---|
| 852:14 - 852:14 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.198** |

852:14 THE WITNESS:  Yes.

| | | |
|---|---|---|
| 853:04 - 853:10 | **Prevoznik, Thomas 05-17-2019 (00:00:32)** | **TP01.199** |

853:4   Q. Does the DEA consider -- if a

| TP01-Prevoznik, Thomas - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

853:5 wholesale distributor came to the DEA and
853:6 said, "I've got a new customer and it's CVS,
853:7 which is a national chain store, and because
853:8 they have such swell security, I don't want
853:9 to monitor them for suspicious orders.  Is
853:10 that okay?"

| 853:19 - 853:20 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | TP01.200 |

853:19 THE WITNESS:  They can't do
853:20 that.

| 854:19 - 854:25 | **Prevoznik, Thomas 05-17-2019 (00:00:17)** | TP01.201 |

854:19   Q. All right.  Would the DEA
854:20 provide guidance to such a wholesale
854:21 distributor, that regardless of whether its
854:22 customer is a national chain pharmacy, the
854:23 distributor still must comply with
854:24 1301.74(b)?
854:25   A. Yes.

| 863:05 - 863:10 | **Prevoznik, Thomas 05-17-2019 (00:00:13)** | TP01.202 |

863:5 So here you'll see the NWDA
863:6 suspicious order monitoring system, which we
863:7 were shown as Exhibit 18.
863:8 Is that familiar to you?
863:9   A. Yes.
863:10   Q. Okay.  So in 1984 --

| 863:16 - 863:19 | **Prevoznik, Thomas 05-17-2019 (00:00:07)** | TP01.203 |

863:16 MS. SINGER:  I'm sorry.  Oh,
863:17 I'm sorry, the new exhibit is 29.  The
863:18 backup of the whole policy is
863:19 Exhibit 18.

| 863:22 - 864:23 | **Prevoznik, Thomas 05-17-2019 (00:01:05)** | TP01.204 |

863:22   Q. Okay.  And just directing your
863:23 attention very quickly to 2, sub 2, on your
863:24 monitor -- I'm sorry, 9 on your monitor,
863:25 single suspicious orders, is it correct that
864:1 this suspicious order monitoring system
864:2 publication from 1984 established that
864:3 "single orders of unusual size or deviation
864:4 must be reported immediately, the submission
864:5 of monthly printout of after-the-fact sales
864:6 will not relieve a registrant from the

| | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

864:7 responsibility of reporting these single

864:8 excessive or suspicious orders.  DEA has

864:9 interpreted orders to mean prior to

864:10 shipment"?

864:11 Does that accurately reflect

864:12 the policy of the DEA?

864:13   A. Yes.

864:14   Q. And that's as of 1984, correct?

864:15   A. Correct.

864:16   Q. All right.  Turning next to

864:17 1987 is our next marker in the timeline.

864:18 And I'm sorry, just to be

864:19 perfectly clear, from 1971 to the present,

864:20 when the Controlled Substances Act was first

864:21 enacted in '71, has it been the DEA's

864:22 position that ILRs are not suspicious order

864:23 reports?

**864:25 - 865:05**    **Prevoznik, Thomas 05-17-2019 (00:00:10)**    **TP01.205**

864:25 THE WITNESS:  Yes.

865:1 QUESTIONS BY MS. SINGER:

865:2   Q. And do ILRs relieve a

865:3 registrant -- does submitting ILRs relieve a

865:4 registrant of the obligation to report

865:5 suspicious orders?

**865:07 - 866:01**    **Prevoznik, Thomas 05-17-2019 (00:00:49)**    **TP01.206**

865:7 THE WITNESS:  No.

865:8 QUESTIONS BY MS. SINGER:

865:9   Q. All right.  The next marker,

865:10 1987, is that seminar report which was

865:11 Prevoznik 17, and that established any system

865:12 must be capable of both detecting individual

865:13 orders or -- which are suspicious orders,

865:14 which become suspicious over time due to

865:15 frequency, quantity or pattern.

865:16 Is that consistent with the

865:17 DEA's policy?

865:18   A. Yes.

865:19   Q. And the DEA pointed out that

865:20 the company is still responsible under their

865:21 registrations for acting in the public

| TP01-Prevoznik, Thomas - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

|  | 865:22 interest, reporting the order does not in any | |
|  | 865:23 way relieve the firm from the responsibility | |
|  | 865:24 for the shipment. | |
|  | 865:25 Does that also reflect the | |
|  | 866:1 DEA's policy consistently over time? | |
| 866:04 - 866:04 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.207** |
|  | 866:4 THE WITNESS:  Yes. | |
| 868:17 - 870:21 | **Prevoznik, Thomas 05-17-2019 (00:02:00)** | **TP01.208** |
|  | 868:17   Q. All right.  I'd like to | |
|  | 868:18 turn your attention to Section 5126, which is | |
|  | 868:19 Bates number ending 301. | |
|  | 868:20 And I'm sorry, the Bates number | |
|  | 868:21 for this document is CAH_MDL_PRIOR | |
|  | 868:22 PRODUCTION_DEA07_01176247. | |
|  | 868:23 All right.  So turning to 301, | |
|  | 868:24 which I think has been tabbed in your copy, | |
|  | 868:25 Mr. Prevoznik. | |
|  | 869:1   A. Yep. | |
|  | 869:2   Q. All right.  Can you read the | |
|  | 869:3 third paragraph beginning "registrants"? | |
|  | 869:4   A. "Registrants who routinely | |
|  | 869:5 report suspicious orders, yet fill these | |
|  | 869:6 orders with reason to believe they are | |
|  | 869:7 destined for the illicit market, are | |
|  | 869:8 expressing an attitude of irresponsibility | |
|  | 869:9 that is a detriment to the public health and | |
|  | 869:10 safety as set forth in 21 USC 823 and 824." | |
|  | 869:11   Q. And 21 USC 823 and 824 the | |
|  | 869:12 Controlled Substances Act? | |
|  | 869:13   A. Yes. | |
|  | 869:14   Q. Okay.  And does that statement | |
|  | 869:15 that you just read accurately reflect the | |
|  | 869:16 policy of the DEA in 1990? | |
|  | 869:17   A. Yes. | |
|  | 869:18   Q. And has that remained true | |
|  | 869:19 since then? | |
|  | 869:20   A. Yes. | |
|  | 869:21   Q. Okay.  And then read from there | |
|  | 869:22 "suspicious orders"? | |
|  | 869:23   A. "Suspicious orders include | |

| TP01-Prevoznik, Thomas - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| | 869:24 those which are in excess of legitimate | |
| | 869:25 medical use or exhibit characteristics | |
| | 870:1 leading to possible diversion, such as orders | |
| | 870:2 of unusual size, unusual frequency, or those | |
| | 870:3 deviating substantially from the -- from a | |
| | 870:4 normal pattern." | |
| | 870:5   Q. And keep going. | |
| | 870:6   A. "The supplier can determine | |
| | 870:7 whether the order is excessive by checking | |
| | 870:8 their own sales and establishing the average | |
| | 870:9 amount of controlled substances shipped to | |
| | 870:10 registrants of the same apparent size in a | |
| | 870:11 particular geographic area.  If the customer | |
| | 870:12 exceeds this threshold, the request should be | |
| | 870:13 viewed as suspicious." | |
| | 870:14   Q. One more sentence. | |
| | 870:15   A. "This activity over extended | |
| | 870:16 periods of time would lead a reasonable | |
| | 870:17 person to believe that controlled substances | |
| | 870:18 possibly are being diverted." | |
| | 870:19   Q. And does the passage you just | |
| | 870:20 read again reflect the DEA's policy? | |
| | 870:21   A. Yes. | |
| 875:13 - 875:17 | **Prevoznik, Thomas 05-17-2019 (00:00:14)** | TP01.209 |
| | 875:13   Q. All right.  So Exhibit 35 is | |
| | 875:14 the NWDA Controlled Substances Manual, Bates | |
| | 875:15 number HDA_MDL_000219360. | |
| | 875:16 Mr. Prevoznik, have you seen | |
| | 875:17 that document before? | |
| 875:18 - 875:18 | **Prevoznik, Thomas 05-17-2019 (00:00:02)** | TP01.210 |
| | 875:18   A. It looks familiar. | |
| 878:07 - 878:18 | **Prevoznik, Thomas 05-17-2019 (00:00:21)** | TP01.211 |
| | 878:7   Q. It says there, "Distributors | |
| | 878:8 are responsible for designing and operating a | |
| | 878:9 system that will disclose to the distributor | |
| | 878:10 suspicious orders." | |
| | 878:11 Do you agree that that is the | |
| | 878:12 distributor's responsibility? | |
| | 878:13   A. Yes. | |
| | 878:14   Q. Okay.  And then the note, "Many | |

| TP01-Prevoznik, Thomas - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

|  | 878:15 distributors have been cited for failing to |  |
|  | 878:16 establish and maintain such a system." |  |
|  | 878:17 Is that also accurate? |  |
|  | 878:18   A. Yes. |  |
| 878:22 - 879:09 | **Prevoznik, Thomas 05-17-2019 (00:00:31)** | TP01.212 |
|  | 878:22   Q. Move to the next paragraph. |  |
|  | 878:23 "Distributor establishing suspicious order |  |
|  | 878:24 criteria.  Distributors should establish |  |
|  | 878:25 written criteria of what constitutes a |  |
|  | 879:1 suspicious order.  DEA leaves it to the |  |
|  | 879:2 distributor to make this determination.  The |  |
|  | 879:3 key for the distributor is to establish |  |
|  | 879:4 reasonable criteria based upon customer |  |
|  | 879:5 purchasing patterns and then to adhere to |  |
|  | 879:6 them in monitoring orders." |  |
|  | 879:7 Does that several-step passage |  |
|  | 879:8 that I just read accurately reflect a |  |
|  | 879:9 distributor's duties under the CSA? |  |
| 879:13 - 879:13 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | TP01.213 |
|  | 879:13 THE WITNESS:  Yes. |  |
| 879:15 - 879:18 | **Prevoznik, Thomas 05-17-2019 (00:00:10)** | TP01.214 |
|  | 879:15   Q. And do you see in this |  |
|  | 879:16 description of suspicious order criteria any |  |
|  | 879:17 expression of confusion or lack of clarity |  |
|  | 879:18 about what a suspicious order is? |  |
| 879:22 - 879:22 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | TP01.215 |
|  | 879:22 THE WITNESS:  No. |  |
| 880:04 - 880:15 | **Prevoznik, Thomas 05-17-2019 (00:00:26)** | TP01.216 |
|  | 880:4   Q. Okay.  So it says here, |  |
|  | 880:5 "Establish trigger levels, close quote, that |  |
|  | 880:6 only kick out purchasers buying substantially |  |
|  | 880:7 above the average for an item.  The trigger |  |
|  | 880:8 level is established by multiplying the |  |
|  | 880:9 calculated average by an arbitrary factor. |  |
|  | 880:10 It is recommended that at the outset three |  |
|  | 880:11 times the average be used for ARCOS items and |  |
|  | 880:12 four times the average for non-ARCOS items." |  |
|  | 880:13 Do you see where I've just |  |
|  | 880:14 read? |  |
|  | 880:15   A. Yes. |  |

**TP01-Prevoznik, Thomas - Plaintiffs' Submission**

| Page/Line | Source | ID |
|---|---|---|
| 881:01 - 881:04 | **Prevoznik, Thomas 05-17-2019 (00:00:10)** | **TP01.217** |

881:1   Q. Is it DEA's position that a
881:2 fixed multiplier of order levels is
881:3 sufficient as a system to identify suspicious
881:4 orders?

| | | |
|---|---|---|
| 881:06 - 881:08 | **Prevoznik, Thomas 05-17-2019 (00:00:03)** | **TP01.218** |

881:6 THE WITNESS:  It could be one
881:7 criteria, but it can't be the only
881:8 one.

| | | |
|---|---|---|
| 881:10 - 881:18 | **Prevoznik, Thomas 05-17-2019 (00:00:22)** | **TP01.219** |

881:10   Q. Okay.  And it says here, if you
881:11 keep reading on, "After the monitoring
881:12 program has been tested with live data and
881:13 the results analyzed, it may be necessary to
881:14 revise the factors."
881:15 Is it DEA's position that
881:16 distributors have an obligation to make sure
881:17 that any trigger or threshold they use
881:18 actually identifies suspicious orders?

| | | |
|---|---|---|
| 881:23 - 881:23 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.220** |

881:23 THE WITNESS:  Yes.

| | | |
|---|---|---|
| 882:10 - 882:17 | **Prevoznik, Thomas 05-17-2019 (00:00:17)** | **TP01.221** |

882:10   Q. Keep going.
882:11   A. "In these situations, DEA
882:12 should be notified before the order is
882:13 shipped, and a copy of all such orders should
882:14 be maintained in the distributor's suspicious
882:15 orders file, with a notation reflecting the
882:16 date and person contacted at DEA as well as
882:17 any guidance received."

| | | |
|---|---|---|
| 882:18 - 882:23 | **Prevoznik, Thomas 05-17-2019 (00:00:10)** | **TP01.222** |

882:18   Q. Go ahead and finish the
882:19 paragraph, please.
882:20   A. "The file also should indicate
882:21 whether the order was shipped.  DEA usually
882:22 leaves the responsibility for determining
882:23 whether to ship to the distributor."

| | | |
|---|---|---|
| 882:24 - 883:03 | **Prevoznik, Thomas 05-17-2019 (00:00:13)** | **TP01.223** |

882:24   Q. And does this statement that
882:25 you just read from the NWDA manual of 1997

| Page/Line | Source | ID |
|---|---|---|

TP01-Prevoznik, Thomas - Plaintiffs' Submission

883:1 accurately describe the DEA's position on
883:2 what distributors should be -- or what
883:3 registrants should be doing?

**883:05 - 883:05**  **Prevoznik, Thomas 05-17-2019 (00:00:01)**  TP01.224

883:5 THE WITNESS:  Yes.

**884:01 - 884:16**  **Prevoznik, Thomas 05-17-2019 (00:00:30)**  TP01.225

884:1   Q. Okay.  And there it -- the
884:2 first sentence reads, "DEA has not provided a
884:3 clear definition of what constitutes a
884:4 suspicious order."
884:5 Now that relates to a
884:6 suspicious order of List I chemicals,
884:7 correct?
884:8   A. Correct.
884:9   Q. Okay.  And there NWDA is saying
884:10 we don't have a clear definition, correct?
884:11   A. Correct.
884:12   Q. And we didn't see that earlier
884:13 in the manual, correct?
884:14   A. Correct.
884:15   Q. All right.  Then let's move to
884:16 Appendix M, which is one more page.

**884:17 - 884:18**  **Prevoznik, Thomas 05-17-2019 (00:00:05)**  TP01.226

884:17 "What does DEA
884:18 consider to be a suspicious order?"

**888:13 - 888:17**  **Prevoznik, Thomas 05-17-2019 (00:00:11)**  TP01.227

888:13   Q. And would DEA expect
888:14 that a registrant would remain -- excuse me,
888:15 would maintain copies of a suspicious order
888:16 reported to the DEA?
888:17   A. Yes.

**889:22 - 890:02**  **Prevoznik, Thomas 05-17-2019 (00:00:18)**  TP01.228

889:22 QUESTIONS BY MS. SINGER:
889:23   Q. All right.  Now, we think about
889:24 suspicious orders under CFR 1301.74, but the
889:25 registrant that ships suspicious orders also
890:1 fails to maintain effective controls to
890:2 prevent diversion; is that correct?

**890:06 - 890:06**  **Prevoznik, Thomas 05-17-2019 (00:00:01)**  TP01.229

890:6 THE WITNESS:  Correct.

| Page/Line | Source | ID |
|---|---|---|
| | **TP01-Prevoznik, Thomas - Plaintiffs' Submission** | |

| Page/Line | Source | ID |
|---|---|---|
| 890:23 - 891:02 | **Prevoznik, Thomas 05-17-2019 (00:00:13)** | TP01.230 |
| | 890:23   Q. Would it make sense to the DEA | |
| | 890:24 that a registrant could identify an order as | |
| | 890:25 suspicious, report it to the DEA, not dispel | |
| | 891:1 their suspicion, and then go ahead and ship | |
| | 891:2 it so that it could be sold or used? | |
| 891:07 - 891:08 | **Prevoznik, Thomas 05-17-2019 (00:00:02)** | TP01.231 |
| | 891:7 THE WITNESS:  No, it would not | |
| | 891:8 be correct. | |
| 891:10 - 891:12 | **Prevoznik, Thomas 05-17-2019 (00:00:04)** | TP01.232 |
| | 891:10   Q. Why? | |
| | 891:11   A. Because they're not maintaining | |
| | 891:12 effective controls over diversion. | |
| 891:15 - 891:16 | **Prevoznik, Thomas 05-17-2019 (00:00:04)** | TP01.233 |
| | 891:15   Q. And what happens if they go | |
| | 891:16 ahead and just ship that suspicious order? | |
| 891:20 - 892:15 | **Prevoznik, Thomas 05-17-2019 (00:00:45)** | TP01.234 |
| | 891:20 THE WITNESS:  Well, it's -- | |
| | 891:21 there was a -- there was a reason it | |
| | 891:22 triggered the suspicion, so the | |
| | 891:23 possibility or potential for it to be | |
| | 891:24 diverted into the illicit market is | |
| | 891:25 enhanced because it triggered a | |
| | 892:1 suspicious order within their system. | |
| | 892:2 So that being the underlying | |
| | 892:3 cause for it to be triggered, that -- | |
| | 892:4 the potential for it to be diverted, | |
| | 892:5 now it's going -- the potential now is | |
| | 892:6 greater that it's going into the | |
| | 892:7 public and is going to affect the | |
| | 892:8 public health and safety. | |
| | 892:9 QUESTIONS BY MS. SINGER: | |
| | 892:10   Q. Okay.  And would going ahead | |
| | 892:11 and shipping suspicious orders demonstrate an | |
| | 892:12 attitude of irresponsibility, which I think | |
| | 892:13 is the language of the Diversion | |
| | 892:14 Investigators Manual, to the detriment of the | |
| | 892:15 public health? | |
| 892:20 - 892:24 | **Prevoznik, Thomas 05-17-2019 (00:00:10)** | TP01.235 |
| | 892:20 THE WITNESS:  Yes. | |

| | TP01-Prevoznik, Thomas - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| | | |
|---|---|---|
| | 892:21 QUESTIONS BY MS. SINGER: | |
| | 892:22   Q. And has that always been true, | |
| | 892:23 that shipping a suspicious order is a failure | |
| | 892:24 of effective controls to prevent diversion? | |
| 893:02 - 893:02 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.236** |
| | 893:2 THE WITNESS:  Yes. | |
| 893:12 - 893:16 | **Prevoznik, Thomas 05-17-2019 (00:00:14)** | **TP01.237** |
| | 893:12 And, Mr. Prevoznik, can I | |
| | 893:13 direct you -- and this is the deposition of | |
| | 893:14 Tom Prevoznik, April 17, 2019. | |
| | 893:15 All right.  And if you could | |
| | 893:16 turn to page 171.  All right.  And I want to | |
| 893:17 - 893:22 | **Prevoznik, Thomas 05-17-2019 (00:00:16)** | **TP01.238** |
| | 893:17 direct your attention to the middle of the | |
| | 893:18 page where you testify:  "It was a business | |
| | 893:19 decision on whether to ship or not ship, that | |
| | 893:20 we, DEA, were not going to direct a | |
| | 893:21 registrant don't ship or not ship at that | |
| | 893:22 time." | |
| 894:03 - 894:14 | **Prevoznik, Thomas 05-17-2019 (00:00:23)** | **TP01.239** |
| | 894:3   Q. Okay.  And then if you turn the | |
| | 894:4 page -- I'm sorry.  At the bottom of | |
| | 894:5 page 171, because -- so in 7, it was clear | |
| | 894:6 that you were now directing registrants:  Do | |
| | 894:7 not ship. | |
| | 894:8 And you said, right, because of | |
| | 894:9 the Internet. | |
| | 894:10 And then there's a question: | |
| | 894:11 "And prior to December 2007, it was a | |
| | 894:12 business decision by each registrant | |
| | 894:13 recognizing what their own obligations were, | |
| | 894:14 correct?" | |
| 894:16 - 894:16 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.240** |
| | 894:16 THE WITNESS:  Yes. | |
| 894:20 - 894:23 | **Prevoznik, Thomas 05-17-2019 (00:00:17)** | **TP01.241** |
| | 894:20   Q. And I just want to be clear. | |
| | 894:21 Between -- before and after 2007, was it | |
| | 894:22 always the policy of the DEA that registrants | |
| | 894:23 could not ship suspicious orders? | |
| 895:02 - 895:02 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.242** |

| Page/Line | Source | ID |
|---|---|---|
| | 895:2 THE WITNESS:  Yes. | |
| 897:10 - 897:14 | **Prevoznik, Thomas 05-17-2019 (00:00:18)** | **TP01.472** |
| | 897:10   Q. Okay.  And I want to make sure | |
| | 897:11 that your testimony is clear.  When you say | |
| | 897:12 whether a suspicious order is subjective, do | |
| | 897:13 you mean that it varies from case to case, or | |
| | 897:14 it depends on who's looking at it? | |
| 897:17 - 897:23 | **Prevoznik, Thomas 05-17-2019 (00:00:14)** | **TP01.473** |
| | 897:17 THE WITNESS:  Both, really.  It | |
| | 897:18 depends who's looking at it and | |
| | 897:19 what system do they have that's | |
| | 897:20 triggering the suspicious order.  So | |
| | 897:21 it's whatever that registrant | |
| | 897:22 designed, which is specific to that | |
| | 897:23 registration. | |
| 899:21 - 899:22 | **Prevoznik, Thomas 05-17-2019 (00:00:07)** | **TP01.243** |
| | 899:21   Q. Okay.  Let's turn very quickly | |
| | 899:22 to the industry compliance guidelines. | |
| 899:23 - 900:01 | **Prevoznik, Thomas 05-17-2019 (00:00:13)** | **TP01.244** |
| | 899:23 All right.  I'm going to show | |
| | 899:24 you what's been marked as Exhibit 39. | |
| | 899:25 And this is Bates number | |
| | 900:1 CAH_MDL2804_00988458. | |
| 900:05 - 900:09 | **Prevoznik, Thomas 05-17-2019 (00:00:08)** | **TP01.245** |
| | 900:5   Q. Okay.  And do you recognize | |
| | 900:6 this to be the Healthcare Distribution | |
| | 900:7 Management Association's industry compliance | |
| | 900:8 guidelines? | |
| | 900:9   A. Yes. | |
| 900:22 - 901:08 | **Prevoznik, Thomas 05-17-2019 (00:00:24)** | **TP01.246** |
| | 900:22   Q. Okay.  And if you look at the | |
| | 900:23 first page, the third paragraph:  "At the | |
| | 900:24 center of a sophisticated supply chain, | |
| | 900:25 distributors are uniquely situated to perform | |
| | 901:1 due diligence in order to help support the | |
| | 901:2 security of the controlled substances they | |
| | 901:3 deliver to their customers." | |
| | 901:4 Do you see what I've just read? | |
| | 901:5   A. Yes. | |
| | 901:6   Q. And does the DEA agree with | |

| | TP01-Prevoznik, Thomas - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| | | |
|---|---|---|
| | 901:7 that statement? | |
| | 901:8   A. Yes. | |
| 903:05 - 903:21 | **Prevoznik, Thomas 05-17-2019 (00:00:29)** | **TP01.247** |
| | 903:5 Under the first paragraph, | |
| | 903:6 Introduction:  "Before opening an account" -- | |
| | 903:7 do you see where I am? | |
| | 903:8   A. Yes. | |
| | 903:9   Q. -- "the distributor should, | |
| | 903:10 one, obtain background information on the | |
| | 903:11 customer and the customer's business; review | |
| | 903:12 that information carefully and, where | |
| | 903:13 appropriate, verify that information; and | |
| | 903:14 independently investigate the potential | |
| | 903:15 customer." | |
| | 903:16 Do you see what I've just read? | |
| | 903:17   A. Yes. | |
| | 903:18   Q. And does the DEA agree that | |
| | 903:19 those are appropriate and necessary steps for | |
| | 903:20 a registrant to take before shipping | |
| | 903:21 controlled substances? | |
| 903:23 - 903:23 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.248** |
| | 903:23 THE WITNESS:  Yes. | |
| 904:05 - 904:10 | **Prevoznik, Thomas 05-17-2019 (00:00:09)** | **TP01.249** |
| | 904:5   Q. And that should cover the | |
| | 904:6 average number of prescriptions filled each | |
| | 904:7 day, average number of CS item prescriptions | |
| | 904:8 filled each day. | |
| | 904:9 Do you see where I am? | |
| | 904:10   A. Yes. | |
| 904:18 - 904:25 | **Prevoznik, Thomas 05-17-2019 (00:00:13)** | **TP01.250** |
| | 904:18   Q. Okay.  And then percentage of | |
| | 904:19 controlled substances purchased compared to | |
| | 904:20 overall purchases? | |
| | 904:21   A. Yes. | |
| | 904:22   Q. Would the DEA agree that those | |
| | 904:23 are things that a registrant should be | |
| | 904:24 looking at before shipping controlled | |
| | 904:25 substances to a new customer? | |
| 905:02 - 905:13 | **Prevoznik, Thomas 05-17-2019 (00:00:32)** | **TP01.251** |
| | 905:2 THE WITNESS:  Yes. | |

| TP01-Prevoznik, Thomas - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

|  | 905:3 QUESTIONS BY MS. SINGER: |  |
|  | 905:4  Q. All right.  And turning to the |  |
|  | 905:5 next page, identify -- bottom bullet: |  |
|  | 905:6 "Identification of physicians and other |  |
|  | 905:7 treatment centers that are the potential |  |
|  | 905:8 customer's most frequent prescribers or |  |
|  | 905:9 highest purchasing doctors." |  |
|  | 905:10 Do you see where I am? |  |
|  | 905:11  A. Yes. |  |
|  | 905:12  Q. And is that something that a |  |
|  | 905:13 registrant should be doing as well? |  |
| 905:15 - 905:15 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.252** |
|  | 905:15 THE WITNESS:  Yes. |  |
| 906:11 - 906:14 | **Prevoznik, Thomas 05-17-2019 (00:00:08)** | **TP01.253** |
|  | 906:11  Q. And merely checking to see |  |
|  | 906:12 whether a customer has a DEA registration, |  |
|  | 906:13 would that be sufficient due diligence or |  |
|  | 906:14 knowing your customer? |  |
| 906:17 - 907:07 | **Prevoznik, Thomas 05-17-2019 (00:00:31)** | **TP01.254** |
|  | 906:17 THE WITNESS:  No. |  |
|  | 906:18 QUESTIONS BY MS. SINGER: |  |
|  | 906:19  Q. And it says here under |  |
|  | 906:20 Additional Recommendations and Documentation, |  |
|  | 906:21 the third bullet, "The performance and |  |
|  | 906:22 results of all steps in the customer review |  |
|  | 906:23 process should be fully documented as to each |  |
|  | 906:24 potential customer, and such documentation |  |
|  | 906:25 should be retained in an appropriate file." |  |
|  | 907:1 Do you see what I've just read? |  |
|  | 907:2  A. Yes. |  |
|  | 907:3  Q. And does the DEA also agree |  |
|  | 907:4 that that is an appropriate element, that |  |
|  | 907:5 documenting due diligence or knowing your |  |
|  | 907:6 customer is an appropriate element of that |  |
|  | 907:7 program? |  |
| 907:10 - 907:10 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.255** |
|  | 907:10 THE WITNESS:  Yes. |  |
| 907:16 - 907:22 | **Prevoznik, Thomas 05-17-2019 (00:00:21)** | **TP01.256** |
|  | 907:16  Q. Okay.  So it says here that |  |
|  | 907:17 distributors -- I'm down at the second set of |  |

| Page/Line | Source | ID |
|---|---|---|
| | TP01-Prevoznik, Thomas - Plaintiffs' Submission | |

907:18 bullets, the bottom bullet:  "Thresholds for
907:19 all new customer accounts should be
907:20 established at the lowest level indicated by
907:21 information obtained during the know your
907:22 customer due diligence review."

**908:01 - 908:02    Prevoznik, Thomas 05-17-2019 (00:00:04)**                                    TP01.257

908:1   Q. And does the DEA agree that
908:2 that is appropriate?

**908:05 - 908:15    Prevoznik, Thomas 05-17-2019 (00:00:26)**                                    TP01.258

908:5 THE WITNESS:  I guess my
908:6 concern would be that if you're --
908:7 what is the lowest level?  Is it what
908:8 the customer is reporting what they
908:9 said they ordered or is it -- you
908:10 know, it could be like really a large
908:11 amount, or is the registrant saying
908:12 this is what we are going to say is
908:13 the lowest amount.
908:14 So I have a little trouble with
908:15 that one.

**908:17 - 908:20    Prevoznik, Thomas 05-17-2019 (00:00:12)**                                    TP01.259

908:17   Q. Okay.  So just making sure that
908:18 we get this clear for the jury, the amount
908:19 that a customer reports may be too high,
908:20 correct?

**908:25 - 908:25    Prevoznik, Thomas 05-17-2019 (00:00:01)**                                    TP01.260

908:25 THE WITNESS:  Yes.

**909:02 - 909:06    Prevoznik, Thomas 05-17-2019 (00:00:10)**                                    TP01.261

909:2   Q. And the registrant should be
909:3 making its own judgment about what is not
909:4 suspicious for a particular customer and not
909:5 just accepting what they've previously
909:6 ordered, correct?

**909:09 - 909:12    Prevoznik, Thomas 05-17-2019 (00:00:06)**                                    TP01.262

909:9 THE WITNESS:  Correct.
909:10 QUESTIONS BY MS. SINGER:
909:11   Q. And they shouldn't be building
909:12 in some excess above that level, correct?

**909:15 - 909:15    Prevoznik, Thomas 05-17-2019 (00:00:01)**                                    TP01.263

909:15 THE WITNESS:  Yes.

| Page/Line | Source | ID |
|---|---|---|
| | **TP01-Prevoznik, Thomas - Plaintiffs' Submission** | |
| 910:04 - 910:08 | **Prevoznik, Thomas 05-17-2019 (00:00:10)** | **TP01.264** |
| | 910:4   Q. And does the DEA agree that a | |
| | 910:5 registrant should not just be looking at a | |
| | 910:6 customer's controlled substances orders but | |
| | 910:7 their controlled substance orders relative to | |
| | 910:8 other products they're ordering? | |
| 910:11 - 910:11 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.265** |
| | 910:11 THE WITNESS:  Yes. | |
| 912:23 - 912:25 | **Prevoznik, Thomas 05-17-2019 (00:00:07)** | **TP01.266** |
| | 912:23   Q. And it -- again, that is the -- | |
| | 912:24 that is what the Controlled Substances Act | |
| | 912:25 requires, correct? | |
| 913:04 - 913:04 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.267** |
| | 913:4 THE WITNESS:  Correct. | |
| 913:13 - 913:17 | **Prevoznik, Thomas 05-17-2019 (00:00:14)** | **TP01.268** |
| | 913:13   Q. And does the DEA agree that a | |
| | 913:14 registrant should have appropriately trained | |
| | 913:15 and experienced compliance staff executing | |
| | 913:16 its suspicious order monitoring and due | |
| | 913:17 diligence process? | |
| 913:21 - 913:21 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.269** |
| | 913:21 THE WITNESS:  Yes. | |
| 913:23 - 914:08 | **Prevoznik, Thomas 05-17-2019 (00:00:31)** | **TP01.270** |
| | 913:23   Q. All right.  Bates number 468, | |
| | 913:24 subsection D, Documentation, it says under | |
| | 913:25 that, "All investigations should be fully | |
| | 914:1 documented, and all records of the | |
| | 914:2 investigation should be retained in an | |
| | 914:3 appropriate location within the firm, such as | |
| | 914:4 with other records relating to the particular | |
| | 914:5 customer." | |
| | 914:6 Does the DEA agree with that | |
| | 914:7 element of a compliant suspicious order | |
| | 914:8 monitoring program? | |
| 914:11 - 914:11 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.271** |
| | 914:11 THE WITNESS:  Yes. | |
| 916:14 - 916:18 | **Prevoznik, Thomas 05-17-2019 (00:00:13)** | **TP01.272** |
| | 916:14   Q. Now, if an order is identified | |
| | 916:15 as suspicious and not shipped but then held, | |
| | 916:16 you know, not shipped, held until the next | |

| Page/Line | Source | ID |
|---|---|---|
| | 916:17 month when a threshold resets, is that order | |
| | 916:18 still suspicious? | |
| 916:24 - 916:24 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.273** |
| | 916:24 THE WITNESS:  Yes. | |
| 917:02 - 917:03 | **Prevoznik, Thomas 05-17-2019 (00:00:03)** | **TP01.274** |
| | 917:2   Q. And should the registrant be | |
| | 917:3 shipping that the next month? | |
| 917:07 - 917:08 | **Prevoznik, Thomas 05-17-2019 (00:00:03)** | **TP01.275** |
| | 917:7   Q. Without first dispelling the | |
| | 917:8 suspicion? | |
| 917:12 - 917:14 | **Prevoznik, Thomas 05-17-2019 (00:00:05)** | **TP01.276** |
| | 917:12 THE WITNESS:  Yes, they should | |
| | 917:13 be relieving -- or ascertaining is | |
| | 917:14 there suspicion or not. | |
| 917:16 - 917:18 | **Prevoznik, Thomas 05-17-2019 (00:00:04)** | **TP01.277** |
| | 917:16   Q. And not shipping unless they | |
| | 917:17 eliminate the basis for that suspicion? | |
| | 917:18   A. Correct. | |
| 917:23 - 918:22 | **Prevoznik, Thomas 05-17-2019 (00:00:56)** | **TP01.278** |
| | 917:23   Q. 469, sub F, Future Customer | |
| | 917:24 Orders.  "In instances where a distributor | |
| | 917:25 concludes that an order is or remains | |
| | 918:1 suspicious after conducting an investigation, | |
| | 918:2 in addition to notifying DEA, it is | |
| | 918:3 recommended that the distributor evaluate its | |
| | 918:4 business relationship with the customer that | |
| | 918:5 placed that order." | |
| | 918:6 Do you see what I've just read? | |
| | 918:7   A. Yes. | |
| | 918:8   Q. "The distributor may consider | |
| | 918:9 whether to subject future orders from that | |
| | 918:10 same customer -- from that same customer for | |
| | 918:11 the same drug code product or all controlled | |
| | 918:12 substances to more rigorous scrutiny than was | |
| | 918:13 applied before the determination that the | |
| | 918:14 order is suspicious.  The distributor may | |
| | 918:15 also consider whether to cease filling all | |
| | 918:16 future orders of that drug product code or | |
| | 918:17 all controlled substances placed by that | |
| | 918:18 customer." | |

| | TP01-Prevoznik, Thomas - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

918:19 Does the DEA agree that when a
918:20 registrant identifies a suspicious order,
918:21 they should also be looking more generally at
918:22 that customer?

| 918:25 - 918:25 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | TP01.279 |

918:25 THE WITNESS:  Yes.

| 919:02 - 919:04 | **Prevoznik, Thomas 05-17-2019 (00:00:06)** | TP01.280 |

919:2   Q. And making a decision as to not
919:3 only whether to fill that order but to
919:4 continue filling orders for that customer?

| 919:07 - 919:07 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | TP01.281 |

919:7 THE WITNESS:  Yes.

| 920:13 - 920:23 | **Prevoznik, Thomas 05-17-2019 (00:00:22)** | TP01.282 |

920:13   Q. All right.  Subsection B on
920:14 Bates number 470, under Correspondence For
920:15 Reporting, "It is recommended that all
920:16 correspondence to DEA containing reports of
920:17 suspicious orders should be sent registered
920:18 mail with a return receipt requested, by
920:19 electronic mail or by another system that
920:20 creates for the distributor a permanent
920:21 record that DEA has received the
920:22 notification."
920:23 Does the DEA agree with that?

| 921:01 - 921:21 | **Prevoznik, Thomas 05-17-2019 (00:00:40)** | TP01.283 |

921:1 THE WITNESS:  Well, we have two
921:2 different things going on.  We have
921:3 those that report to the field and
921:4 those that have been under an action
921:5 that is now dictated to go through
921:6 electronically to headquarters.
921:7 So, yes, if it's going to the
921:8 office, that would be a great way to
921:9 do it, to track that.
921:10 QUESTIONS BY MS. SINGER:
921:11   Q. Okay.  And that C,
921:12 Documentation, "All additional contact with
921:13 DEA, either by telephone or in person, should
921:14 be documented, and a record of the contact
921:15 should be maintained."

| TP01-Prevoznik, Thomas - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

|  | 921:16 Does the DEA agree with that? | |
|  | 921:17   A. Yes. | |
|  | 921:18   Q. And is it fair to say that the | |
|  | 921:19 DEA would agree that a registrant should be | |
|  | 921:20 maintaining records of suspicious orders they | |
|  | 921:21 report to the DEA? | |
| 921:25 - 922:11 | **Prevoznik, Thomas 05-17-2019 (00:00:30)** | **TP01.284** |
|  | 921:25 THE WITNESS:  Yes. | |
|  | 922:1 QUESTIONS BY MS. SINGER: | |
|  | 922:2   Q. So while registrants, in going | |
|  | 922:3 through all of these different elements of | |
|  | 922:4 the industry compliance guidelines, which | |
|  | 922:5 we're now thankfully finished with, would the | |
|  | 922:6 DEA agree that whatever suspicious order | |
|  | 922:7 monitoring algorithm or system that a | |
|  | 922:8 registrant uses, that all of these elements | |
|  | 922:9 we just went through are elements of a | |
|  | 922:10 responsible and compliant program to prevent | |
|  | 922:11 diversion? | |
| 922:14 - 922:14 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.285** |
|  | 922:14 THE WITNESS:  Yes. | |
| 923:03 - 923:07 | **Prevoznik, Thomas 05-17-2019 (00:00:18)** | **TP01.286** |
|  | 923:3   Q. All right.  Mr. Prevoznik, | |
|  | 923:4 Exhibit 40 is entitled "Draft DEA Comments | |
|  | 923:5 From the 6-04-08 Meeting on Suspicious | |
|  | 923:6 Orders."  It's Bates number | |
|  | 923:7 CAH_MDL2804_03234535. | |
| 924:14 - 924:20 | **Prevoznik, Thomas 05-17-2019 (00:00:21)** | **TP01.287** |
|  | 924:14   Q. Okay.  Would the DEA agree that | |
|  | 924:15 in addition to completing a question -- | |
|  | 924:16 having a potential customer complete a | |
|  | 924:17 questionnaire before a registrant agrees to | |
|  | 924:18 ship them a controlled substance, that a | |
|  | 924:19 registrant has to verify that the answers to | |
|  | 924:20 that questionnaire are accurate and complete? | |
| 924:23 - 924:23 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.288** |
|  | 924:23 THE WITNESS:  Yes. | |
| 926:03 - 926:09 | **Prevoznik, Thomas 05-17-2019 (00:00:13)** | **TP01.289** |
|  | 926:3 Do you agree with that first | |
|  | 926:4 underlined sentence, "DEA seemed to think the | |

| | TP01-Prevoznik, Thomas - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| | 926:5 thresholds focus principally on volumes, and | |
| | 926:6 they express the view that an exclusive or | |
| | 926:7 even principal focus on volumes is | |
| | 926:8 inadequate"? | |
| | 926:9   A. Yes. | |
| 927:12 - 928:03 | **Prevoznik, Thomas 05-17-2019 (00:00:36)** | TP01.290 |
| | 927:12   Q. -- "DEA did not object to our | |
| | 927:13 recommendation that the particular drug or | |
| | 927:14 drugs that cause an order to be an order of | |
| | 927:15 interest or a suspicious order should not be | |
| | 927:16 shipped but other drugs can be.  Their point | |
| | 927:17 was that in some circumstances the connection | |
| | 927:18 between that drug and another drug in the | |
| | 927:19 order should lead the wholesaler not to ship | |
| | 927:20 the other drug as well.  Again, in their | |
| | 927:21 view, looking at a volume order drug by drug | |
| | 927:22 is not enough, and basing thresholds solely | |
| | 927:23 on volume is not enough.  Even an order for a | |
| | 927:24 drug that does not meet a volume threshold | |
| | 927:25 may be suspicious in light of other aspects | |
| | 928:1 of the order." | |
| | 928:2 Does DEA agree with that | |
| | 928:3 statement? | |
| 928:06 - 928:06 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | TP01.291 |
| | 928:6 THE WITNESS:  Yes. | |
| 928:14 - 928:18 | **Prevoznik, Thomas 05-17-2019 (00:00:09)** | TP01.292 |
| | 928:14   Q. "DEA was emphatic that if there | |
| | 928:15 were questions about an order, the order | |
| | 928:16 should not be shipped." | |
| | 928:17 Do you agree with that | |
| | 928:18 statement? | |
| 928:21 - 928:21 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | TP01.293 |
| | 928:21 THE WITNESS:  Yes. | |
| 929:13 - 929:16 | **Prevoznik, Thomas 05-17-2019 (00:00:07)** | TP01.294 |
| | 929:13 Does the DEA agree that | |
| | 929:14 registrants should be reporting all | |
| | 929:15 suspicious orders, even orders that aren't | |
| | 929:16 shipped? | |
| 929:20 - 930:01 | **Prevoznik, Thomas 05-17-2019 (00:00:14)** | TP01.295 |
| | 929:20 THE WITNESS:  Yes. | |

| Page/Line | Source | ID |
|---|---|---|

**TP01-Prevoznik, Thomas - Plaintiffs' Submission**

929:21 QUESTIONS BY MS. SINGER:
929:22   Q. "Timeliness is very important.
929:23 DEA wants us to emphasize the need for rapid,
929:24 timely reporting."
929:25 Is that a point that DEA made
930:1 clear to registrants?

930:06 - 930:08   **Prevoznik, Thomas 05-17-2019 (00:00:05)**   TP01.296

930:6 THE WITNESS:  It's also
930:7 regulation upon discovery, so it's
930:8 immediately upon discovery.

930:10 - 930:11   **Prevoznik, Thomas 05-17-2019 (00:00:01)**   TP01.297

930:10   Q. So that's a yes?
930:11   A. Yes.

933:20 - 933:23   **Prevoznik, Thomas 05-17-2019 (00:00:08)**   TP01.298

933:20 Did the Rannazzisi letters, the
933:21 2006, 2007 letters, change the obligations of
933:22 registrants?
933:23   A. No.

934:02 - 934:03   **Prevoznik, Thomas 05-17-2019 (00:00:04)**   TP01.299

934:2   Q. Did they reflect a new policy
934:3 or interpretation by DEA?

934:06 - 934:25   **Prevoznik, Thomas 05-17-2019 (00:00:40)**   TP01.300

934:6 THE WITNESS:  No, we were just
934:7 being more proactive to get the
934:8 registrants to see this was what was
934:9 going on.  That's why we did the
934:10 distributor initiatives, to show them
934:11 with their own data, these are the
934:12 anomalies that we were seeing and
934:13 explaining to them this is what we
934:14 saw, and you should be paying
934:15 attention to these as well.
934:16 So the guidance letter -- or
934:17 not the guidance.  The reiteration of
934:18 what their legal obligations were,
934:19 both statutorily and regulatory, were
934:20 in those letters, and it was to stop
934:21 what was going on at that time.
934:22 QUESTIONS BY MS. SINGER:
934:23   Q. And "stop" meaning the --

| TP01-Prevoznik, Thomas - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| Page/Line | Source | ID |
|---|---|---|
| | 934:24   A. The diversion of controlled | |
| | 934:25 substances into the illicit market. | |
| 937:23 - 938:02 | **Prevoznik, Thomas 05-17-2019 (00:00:12)** | TP01.301 |
| | 937:23   Q. And do you think, does DEA | |
| | 937:24 think, that the industry's failure to comply | |
| | 937:25 with the Controlled Substances Act was due to | |
| | 938:1 a failure to understand what the law required | |
| | 938:2 of them? | |
| 938:10 - 938:10 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | TP01.302 |
| | 938:10 THE WITNESS:  No. | |
| 942:04 - 942:08 | **Prevoznik, Thomas 05-17-2019 (00:00:12)** | TP01.303 |
| | 942:4 did the DEA, in the | |
| | 942:5 Controlled Substances Act, make clear to | |
| | 942:6 industry that the failure to prevent | |
| | 942:7 diversion was a threat to public safety and | |
| | 942:8 the public interest? | |
| 942:13 - 943:06 | **Prevoznik, Thomas 05-17-2019 (00:00:41)** | TP01.304 |
| | 942:13 part of the registrant that is | |
| | 942:14 applying to be a registrant | |
| | 942:15 understands that they have to maintain | |
| | 942:16 effective controls.  They have to | |
| | 942:17 follow the state laws.  They have to | |
| | 942:18 not be convicted of, you know, | |
| | 942:19 felonies or anything like that. | |
| | 942:20 But also they also know that | |
| | 942:21 these drugs themselves are scheduled | |
| | 942:22 controlled substances for a particular | |
| | 942:23 reason, because they're addictive, | |
| | 942:24 psychologically and physically they're | |
| | 942:25 addictive, so they know that these | |
| | 943:1 drugs have these properties within | |
| | 943:2 themselves. | |
| | 943:3 So they would understand that | |
| | 943:4 these drugs are categorized or | |
| | 943:5 scheduled in that manner because they | |
| | 943:6 have the potential to hurt. | |
| 944:05 - 944:07 | **Prevoznik, Thomas 05-17-2019 (00:00:10)** | TP01.305 |
| | 944:5   Q. Okay.  So would the DEA let a | |
| | 944:6 registrant know if it was aware of problems | |
| | 944:7 with its suspicious order monitoring system? | |

| Page/Line | Source | ID |
|---|---|---|

**TP01-Prevoznik, Thomas - Plaintiffs' Submission**

| Page/Line | Source | ID |
|---|---|---|
| 944:13 - 945:24 | **Prevoznik, Thomas 05-17-2019 (00:01:16)** | **TP01.306** |

944:13 THE WITNESS:  So how I would
944:14 respond to this particular question is
944:15 when we sit down with a registrant and
944:16 they're explaining their system to us,
944:17 we are in a listening mode.  We are
944:18 listening to what they say:  "This is
944:19 what we're going to do.  This is how
944:20 we're going to implement it.  These
944:21 are the thresholds.  These are the" --
944:22 whatever.  They're explaining the
944:23 system to us, so we listen to what
944:24 they're saying.
944:25 If we, in listening to that,
945:1 they ask -- or we hear something that
945:2 doesn't sound quite right, we would
945:3 offer and say, "Well, you might want
945:4 to look at this."
945:5 Sort of exactly like the
945:6 Rannazzisi letters in which we laid
945:7 out the foundation of these are the
945:8 things that we're seeing.  We're
945:9 having trouble trying to figure out
945:10 why this is going on.  So we're asking
945:11 you to ask the same questions of
945:12 yourselves of the data that you're
945:13 seeing.
945:14 So what we're trying to do is
945:15 we're trying to put people in
945:16 compliance so that this stops, that
945:17 the diversion stops.  So, yes, we
945:18 would -- we would offer suggestions to
945:19 them.
945:20 However, if we're into an
945:21 investigation or something where it --
945:22 where we are either investigating or
945:23 litigating, that might -- that
945:24 conversation might slow down.

| Page/Line | Source | ID |
|---|---|---|
| 947:07 - 947:10 | **Prevoznik, Thomas 05-17-2019 (00:00:08)** | **TP01.307** |

947:7   Q. Okay.  So you testified, too,

| Page/Line | Source | ID |
|---|---|---|
| | TP01-Prevoznik, Thomas - Plaintiffs' Submission | |

| Page/Line | Source | ID |
|---|---|---|
| | 947:8 that things can look good on paper or look<br>947:9 fine on paper, but what matters is how they<br>947:10 work in practice, correct? | |
| 947:13 - 947:24 | **Prevoznik, Thomas 05-17-2019 (00:00:25)**<br>947:13 THE WITNESS:  Well, the<br>947:14 regulations require two things:<br>947:15 design and operate.  So the design<br>947:16 would be this is what we propose, this<br>947:17 is what our system looks like, and<br>947:18 then becomes, well, what, in fact, did<br>947:19 you do with the operation of it.<br>947:20 QUESTIONS BY MS. SINGER:<br>947:21  Q. Okay.  And you, the DEA, can't<br>947:22 always see what distributors don't do or do<br>947:23 wrong, especially if they're trying not to be<br>947:24 caught, correct? | TP01.308 |
| 948:04 - 948:04 | **Prevoznik, Thomas 05-17-2019 (00:00:01)**<br>948:4 THE WITNESS:  Correct. | TP01.309 |
| 948:08 - 948:13 | **Prevoznik, Thomas 05-17-2019 (00:00:17)**<br>948:8  Q. Okay.  I want to turn to<br>948:9 Exhibit 42.<br>948:10 It is Exhibit Number 7 to the<br>948:11 Boggs deposition.  It's called "American<br>948:12 Pain:  The Largest US Pill Mill's Rise and<br>948:13 Fall." | TP01.310 |
| 950:01 - 950:11 | **Prevoznik, Thomas 05-17-2019 (00:00:19)**<br>950:1  Q. Okay.  So it says here, "Gary<br>950:2 Boggs, special agent with the DEA's Office of<br>950:3 Diversion Control, says the cases that the<br>950:4 DEA has brought in recent years involved<br>950:5 wholesalers knowingly making enormous sales<br>950:6 to customers that were per se in violation of<br>950:7 DEA's rules."<br>950:8 Do you see where I'm reading?<br>950:9  A. Yes.<br>950:10  Q. And does the DEA agree with<br>950:11 that statement? | TP01.311 |
| 950:14 - 950:25 | **Prevoznik, Thomas 05-17-2019 (00:00:22)**<br>950:14 THE WITNESS:  Yes.<br>950:15 QUESTIONS BY MS. SINGER: | TP01.312 |

| Page/Line | Source | ID |
|---|---|---|

TP01-Prevoznik, Thomas - Plaintiffs' Submission

950:16   Q. And then it goes on quoting
950:17 Mr. Boggs, "The notion put out by HDMA that
950:18 somehow or another the DEA is not providing
950:19 essential information to them is simply not
950:20 accurate, says Boggs.  It's a smokescreen.
950:21 It's a step out of desperation."
950:22 Do you see that statement?
950:23   A. Yes.
950:24   Q. Okay.  Do you agree with that
950:25 statement?

**951:05 - 951:05**   **Prevoznik, Thomas 05-17-2019 (00:00:01)**   **TP01.313**

951:5 THE WITNESS:  Yes.

**951:18 - 951:20**   **Prevoznik, Thomas 05-17-2019 (00:00:13)**   **TP01.314**

951:18   Q. All right.  Exhibit 43,
951:19 Mr. Prevoznik.
951:20 This is MCKMDL00661483.

**951:24 - 952:20**   **Prevoznik, Thomas 05-17-2019 (00:00:55)**   **TP01.315**

951:24   Q. All right.  And this is an
951:25 e-mail Re: Report on House Energy and
952:1 Commerce Subcommittee Hearing on DEA and FDA
952:2 Transparency.
952:3 And I'll direct you to the
952:4 middle of the e-mail from Ann Berkey.
952:5 Do you see where I am?
952:6   A. Yes.
952:7   Q. Okay.  And it's dated Tuesday,
952:8 April 8, 2014.
952:9 And if you look in the text of
952:10 that e-mail, it says, "I met today with Gary
952:11 Boggs, the new senior director of reg affairs
952:12 for US pharma for the east of the Mississippi
952:13 River, that is, who is based in Livonia.
952:14 He's a former top official with the DEA, and
952:15 we talked extensively about this bill, the
952:16 hearing, ways we can work with the Agency, et
952:17 cetera.  He outlined in some detail the
952:18 processes that the DEA has had in place for
952:19 years to, quote, collaborate with wholesalers
952:20 in the way in which our industry, CAH" --

**953:17 - 953:23**   **Prevoznik, Thomas 05-17-2019 (00:00:18)**   **TP01.316**

| Page/Line | Source | ID |
|---|---|---|

953:17   Q. -- "has blown them off to the
953:18 point that the DEA is now hammering all of
953:19 us."
953:20 Does this accurately reflect
953:21 the sense of the -- is it true that the DEA
953:22 felt that the industry did not respond to
953:23 their guidance and request for compliance?

**954:07 - 954:07**   **Prevoznik, Thomas 05-17-2019 (00:00:01)**   **TP01.317**

954:7 THE WITNESS:  Yes.

**954:09 - 954:10**   **Prevoznik, Thomas 05-17-2019 (00:00:03)**   **TP01.318**

954:9   Q. And this is as of 2014,
954:10 correct?

**954:14 - 954:15**   **Prevoznik, Thomas 05-17-2019 (00:00:04)**   **TP01.319**

954:14 THE WITNESS:  Yes, that's the
954:15 date on the e-mail.

**955:24 - 956:04**   **Prevoznik, Thomas 05-17-2019 (00:00:23)**   **TP01.320**

955:24 Okay.  Exhibit 44.  This is
955:25 ABDCMDL00139028.
956:1 It's called Summary of DEA HDMA
956:2 meeting, December 19, 2011.
956:3 Do you recall a meeting between
956:4 the DEA and HDMA in 2011?

**956:07 - 956:10**   **Prevoznik, Thomas 05-17-2019 (00:00:05)**   **TP01.321**

956:7 THE WITNESS:  I don't.
956:8 QUESTIONS BY MS. SINGER:
956:9   Q. The DEA did meet with the HDMA
956:10 periodically, correct?

**956:13 - 957:01**   **Prevoznik, Thomas 05-17-2019 (00:00:22)**   **TP01.322**

956:13 THE WITNESS:  Correct.
956:14 QUESTIONS BY MS. SINGER:
956:15   Q. Okay.  And down at the bottom
956:16 of the page here, in the last paragraph, it
956:17 says, "HDMA asked if there was any -- if
956:18 there were any noncompliance trends
956:19 throughout the wholesale distribution
956:20 industry we should inform our members about."
956:21 Do you see where I am?
956:22   A. Yes.
956:23   Q. Okay.  "Gary Boggs" --
956:24 Who we talked about just a

| Page/Line | Source | ID |
|---|---|---|
| | 956:25 minute ago, correct? | |
| | 957:1   A. Yes. | |
| 957:04 - 957:20 | **Prevoznik, Thomas 05-17-2019 (00:00:46)** | TP01.323 |
| | 957:4   Q. -- "the executive assistant to | |
| | 957:5 the deputy administrator for diversion | |
| | 957:6 control, led this response.  He stated that | |
| | 957:7 DEA's single greatest concern was their | |
| | 957:8 belief that wholesaler distributors were lax | |
| | 957:9 in analysis, review and acting on their own | |
| | 957:10 ARCOS data.  He stated that sometimes the | |
| | 957:11 data were pretty egregious.  He went on to | |
| | 957:12 explain," turning the page, "that the Agency | |
| | 957:13 had not seen changes in registrants' behavior | |
| | 957:14 that it expected after presenting its | |
| | 957:15 analysis of ARCOS data to them, so we have -- | |
| | 957:16 quote, 'so we have upped our game.'" | |
| | 957:17 Is this consistent with the | |
| | 957:18 DEA's view and your testimony that | |
| | 957:19 registrants were lax in their analysis, | |
| | 957:20 review and acting on their own ARCOS data? | |
| 957:23 - 957:23 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | TP01.324 |
| | 957:23 THE WITNESS:  Yes. | |
| 957:25 - 957:25 | **Prevoznik, Thomas 05-17-2019 (00:00:02)** | TP01.325 |
| | 957:25   Q. And was it pretty egregious? | |
| 958:04 - 958:04 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | TP01.326 |
| | 958:4 THE WITNESS:  Yes. | |
| 958:06 - 958:08 | **Prevoznik, Thomas 05-17-2019 (00:00:05)** | TP01.327 |
| | 958:6   Q. And when it says here that DEA | |
| | 958:7 had "upped its game," do you know what that's | |
| | 958:8 referring to? | |
| 958:12 - 958:18 | **Prevoznik, Thomas 05-17-2019 (00:00:13)** | TP01.328 |
| | 958:12 THE WITNESS:  At this time | |
| | 958:13 period, we were investigating and | |
| | 958:14 litigating against the wholesalers. | |
| | 958:15 QUESTIONS BY MS. SINGER: | |
| | 958:16   Q. Okay.  Prompted by DEA's sense | |
| | 958:17 that that's what they needed to do given a | |
| | 958:18 lack of voluntarily compliance, correct? | |
| 958:22 - 958:22 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | TP01.329 |
| | 958:22 THE WITNESS:  Yes. | |

| Page/Line | Source | ID |
|---|---|---|
| | **TP01-Prevoznik, Thomas - Plaintiffs' Submission** | |

| Page/Line | Source | ID |
|---|---|---|
| 962:04 - 962:08 | **Prevoznik, Thomas 05-17-2019 (00:00:11)** | **TP01.330** |
| | 962:4   Q. All right.  In your testimony | |
| | 962:5 on day one or day two, you were asked whether | |
| | 962:6 suspicious orders always lead to diversion. | |
| | 962:7 Do you remember? | |
| | 962:8   A. Yes. | |
| 962:12 - 962:15 | **Prevoznik, Thomas 05-17-2019 (00:00:06)** | **TP01.331** |
| | 962:12   Q. Okay.  And I think your answer | |
| | 962:13 to that was, no, it doesn't always lead to | |
| | 962:14 diversion. | |
| | 962:15 Does that seem right to you? | |
| 962:18 - 962:18 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.332** |
| | 962:18 THE WITNESS:  Yes. | |
| 962:20 - 962:23 | **Prevoznik, Thomas 05-17-2019 (00:00:09)** | **TP01.333** |
| | 962:20   Q. Okay.  And is that because, | |
| | 962:21 Mr. Prevoznik, not all suspicious orders turn | |
| | 962:22 out to actually be suspicious? | |
| | 962:23   A. Correct. | |
| 963:02 - 963:05 | **Prevoznik, Thomas 05-17-2019 (00:00:08)** | **TP01.334** |
| | 963:2   Q. Okay.  But if a distributor | |
| | 963:3 doesn't investigate a suspicious order, it | |
| | 963:4 wouldn't know whether that order was being | |
| | 963:5 diverted, right? | |
| 963:08 - 963:08 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.335** |
| | 963:8 THE WITNESS:  Yes. | |
| 963:10 - 963:16 | **Prevoznik, Thomas 05-17-2019 (00:00:17)** | **TP01.336** |
| | 963:10   Q. And to use the language we | |
| | 963:11 quoted earlier from the Diversion | |
| | 963:12 Investigators Manual, sending out potentially | |
| | 963:13 suspicious orders without investigating them | |
| | 963:14 reflects a, quote, attitude of | |
| | 963:15 irresponsibility. | |
| | 963:16 Does DEA agree? | |
| 963:19 - 963:19 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.337** |
| | 963:19 THE WITNESS:  Yes. | |
| 963:23 - 964:15 | **Prevoznik, Thomas 05-17-2019 (00:00:50)** | **TP01.338** |
| | 963:23   Q. Let's turn to the Energy and | |
| | 963:24 Commerce.  Since we don't have previous -- | |
| | 963:25 the exhibits from last time, we're going to | |
| | 964:1 remark the Energy and Commerce report as | |

| | TP01-Prevoznik, Thomas - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

964:2 Exhibit 46.  It's the same report that went
964:3 in earlier in your testimony.
964:4 And industry lawyers asked
964:5 you -- they showed you a piece of the report
964:6 that said that DEA could have acted earlier.
964:7 Do you remember those
964:8 questions?
964:9   A. Vaguely, but, yes.
964:10   Q. Okay.  And certainly this
964:11 Energy and Commerce report finds the DEA
964:12 could have done more than it did, correct?
964:13   A. Correct.
964:14   Q. Okay.  But it's also highly
964:15 critical of distributors, is it not?

**964:21 - 964:24**   **Prevoznik, Thomas 05-17-2019 (00:00:06)**   **TP01.339**

964:21 THE WITNESS:  Yes.
964:22 QUESTIONS BY MS. SINGER:
964:23   Q. Okay.  And just for context, I
964:24 want to direct you to page 5 of the report.

**964:25 - 965:24**   **Prevoznik, Thomas 05-17-2019 (00:01:02)**   **TP01.340**

964:25 On the bottom of the page, it
965:1 says in that last paragraph, "As the opioid
965:2 epidemic began to surge, the DEA, by 2005,
965:3 realized that traditional policing of
965:4 individual doctors and pharmacies was no
965:5 longer an effective approach against the
965:6 oncoming avalanche of opioids from rogue
965:7 Internet pharmacies and pill mills.  Instead,
965:8 DEA's focus turned to the drug wholesale
965:9 distributors, a choke point in the
965:10 pharmaceutical supply chain, who transfer
965:11 drugs from manufacturers to businesses such
965:12 as clinics, hospitals and pharmacies where
965:13 they can be dispensed to patients.
965:14 Distributors in previous years had not
965:15 received enforcement attention from the DEA.
965:16 The new focus looked for greater impact for
965:17 the highly consolidated industry given the
965:18 three -- given that the three major drug
965:19 distributors - AmerisourceBergen, Cardinal

| TP01-Prevoznik, Thomas - Plaintiffs' Submission | |
|---|---|

| Page/Line | Source | ID |
|---|---|---|

965:20 Health and McKesson - control about
965:21 85 percent of the drug supply."
965:22 Do you agree with the statement
965:23 I've just read?
965:24  A. Yes.

**966:02 - 966:24**   **Prevoznik, Thomas 05-17-2019 (00:00:50)**   TP01.341

966:2  Q. And then "Beginning in 2005,
966:3 the DEA undertook a series of initiatives
966:4 meant to educate wholesale drug distributors
966:5 about their legal obligations to prevent
966:6 controlled substance diversion.  The DEA's
966:7 distributor initiative included one-on-one
966:8 meetings with wholesale distributors in which
966:9 DEA officials provided specific examples
966:10 regarding distributors' own customers whose
966:11 ordering habits were suggestive of trends
966:12 indicating the presence of diversion and
966:13 illicit Internet pharmacies.  Of the five
966:14 distributors investigated by the committee,
966:15 AmerisourceBergen, Cardinal, HD Smith and
966:16 McKesson, each had one-on-one meetings with
966:17 DEA as part of this initiative.  In addition,
966:18 during 2006 and 2007, the DEA sent a series
966:19 of three letters, sent to all DEA-registered
966:20 distributors outlining their legal
966:21 obligations to conduct due diligence and
966:22 report suspicious orders."
966:23 Is that also an accurate
966:24 statement of what happened?

**967:02 - 967:02**   **Prevoznik, Thomas 05-17-2019 (00:00:01)**   TP01.342

967:2 THE WITNESS:  Yes.

**967:04 - 967:13**   **Prevoznik, Thomas 05-17-2019 (00:00:20)**   TP01.343

967:4  Q. "Apparently the DEA soon
967:5 realized that the largest distributors were
967:6 not taking their compliance requirements with
967:7 sufficient seriousness.  In 2007 and 2008,
967:8 the DEA took enforcement action through legal
967:9 settlements against the three largest
967:10 wholesale distributors in the US for alleged
967:11 violations of the CSA, with multi-million

| | | |
|---|---|---|
| **TP01-Prevoznik, Thomas - Plaintiffs' Submission** | | |
| **Page/Line** | **Source** | **ID** |

967:12 dollar fines involving two of them."

967:13 Is that also accurate?

**967:17 - 968:19**  **Prevoznik, Thomas 05-17-2019 (00:01:16)**    **TP01.344**

967:17 THE WITNESS:  Yes.

967:18 QUESTIONS BY MS. SINGER:

967:19  Q. Last paragraph.  "Despite these

967:20 settlement agreements and the subsequent

967:21 policy enhancements that the three

967:22 distributors made in their aftermath, the

967:23 committee found that the distributors

967:24 continued to ship large volumes of opioids

967:25 into West Virginia.  The three largest

968:1 wholesale drug distributors in the United

968:2 States - AmerisourceBergen, Cardinal Health

968:3 and McKesson - sent more than 900 million

968:4 doses of hydrocodone and oxycodone to West

968:5 Virginia between 2005 and 2016.  Cardinal

968:6 Health was the largest supplier of controlled

968:7 substances to West Virginia out of the five

968:8 companies examined as part of the Committee's

968:9 investigation, and distributed more than 366

968:10 million doses of hydrocodone and oxycodone to

968:11 West Virginia pharmacies between 2005 and

968:12 2016.  From April 2006 through 2016, McKesson

968:13 supplied 299.87 million doses of hydrocodone

968:14 and oxycodone to West Virginia pharmacies,

968:15 AmerisourceBergen distributed 248.16 million

968:16 doses of hydrocodone and oxycodone to West

968:17 Virginia pharmacies between 2005 and 2016."

968:18 Is that also consistent with

968:19 DEA's understanding of what had occurred?

**968:22 - 968:22**  **Prevoznik, Thomas 05-17-2019 (00:00:01)**    **TP01.345**

968:22 THE WITNESS:  Yes.

**968:24 - 969:11**  **Prevoznik, Thomas 05-17-2019 (00:00:25)**    **TP01.346**

968:24  Q. Turn the page, please.  "Among

968:25 the Committee's findings, distributors

969:1 suffered a series of breakdowns or had a lack

969:2 of follow-through in their -- through in

969:3 their due diligence evaluations of

969:4 prospective pharmacy customers.  As

| | TP01-Prevoznik, Thomas - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| | 969:5 demonstrated in the report, the committee | |
| | 969:6 found instances of insufficient due diligence | |
| | 969:7 by distributors who merely required | |
| | 969:8 pharmacies to complete new customer | |
| | 969:9 applications." | |
| | 969:10 Now, we talked about that | |
| | 969:11 earlier, correct? | |
| 969:14 - 969:18 | **Prevoznik, Thomas 05-17-2019 (00:00:07)** | **TP01.347** |
| | 969:14 THE WITNESS:  Correct. | |
| | 969:15 QUESTIONS BY MS. SINGER: | |
| | 969:16   Q. And that is not sufficient to | |
| | 969:17 comply with the registrant's obligation to | |
| | 969:18 know their customers, correct? | |
| 969:23 - 969:23 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.348** |
| | 969:23 THE WITNESS:  Correct. | |
| 969:25 - 970:09 | **Prevoznik, Thomas 05-17-2019 (00:00:18)** | **TP01.349** |
| | 969:25   Q. "There were cases where data | |
| | 970:1 submitted by a new customer was not | |
| | 970:2 critically analyzed to identify any red flags | |
| | 970:3 of controlled substance diversion, for | |
| | 970:4 example, potential red flags regarding a | |
| | 970:5 pharmacy's prescribing physicians that raised | |
| | 970:6 concerns about possible diversion were not | |
| | 970:7 questioned." | |
| | 970:8 Is that consistent with DEA's | |
| | 970:9 understanding of what occurred? | |
| 970:12 - 970:12 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.350** |
| | 970:12 THE WITNESS:  Yes. | |
| 970:14 - 971:08 | **Prevoznik, Thomas 05-17-2019 (00:00:42)** | **TP01.351** |
| | 970:14   Q. Goes on to say, "The | |
| | 970:15 investigation found instances where there | |
| | 970:16 were failures to monitor the volume of | |
| | 970:17 controlled substances sold to customers. | |
| | 970:18 Some distributors used thresholds to track | |
| | 970:19 customers' purchases of controlled substances | |
| | 970:20 and flag orders as suspicious when purchases | |
| | 970:21 exceeded those limits.  But some of these | |
| | 970:22 thresholds were assigned arbitrarily and not | |
| | 970:23 effective.  Committee found instances in | |
| | 970:24 which distributors set thresholds but failed | |

| TP01-Prevoznik, Thomas - Plaintiffs' Submission | | |
| --- | --- | --- |
| **Page/Line** | **Source** | **ID** |

|  | 970:25 to enforce them, assigned artificially high |  |
|  | 971:1 hydrocodone threshold limits with little to |  |
|  | 971:2 no documented justification, or continued to |  |
|  | 971:3 raise threshold levels without thoroughly |  |
|  | 971:4 investigating or documenting the |  |
|  | 971:5 justifications presented by a customer |  |
|  | 971:6 pharmacy." |  |
|  | 971:7 Again, is that what DEA |  |
|  | 971:8 observed happened during this time period? |  |
| 971:13 - 971:13 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.352** |
|  | 971:13 THE WITNESS:  Yes. |  |
| 972:04 - 973:05 | **Prevoznik, Thomas 05-17-2019 (00:00:58)** | **TP01.353** |
|  | 972:4   Q. It goes on, "Despite efforts by |  |
|  | 972:5 DEA to educate distributors about their |  |
|  | 972:6 responsibility to report suspicious orders, |  |
|  | 972:7 the companies reviewed by the committee |  |
|  | 972:8 failed to address suspicious orders" -- I'm |  |
|  | 972:9 sorry -- "suspicious order monitoring in |  |
|  | 972:10 critical ways.  Rather than reporting |  |
|  | 972:11 individual suspicious orders as they were |  |
|  | 972:12 identified, some distributors reported a |  |
|  | 972:13 variety of other types of information to DEA |  |
|  | 972:14 over the years.  This information included |  |
|  | 972:15 excessive orders encompassing drug shipments |  |
|  | 972:16 that had already been shipped and suspicious |  |
|  | 972:17 customers such as pharmacies with which |  |
|  | 972:18 distributors had terminated business |  |
|  | 972:19 relationships.  Neither of these types of |  |
|  | 972:20 reports informed DEA about suspicious orders |  |
|  | 972:21 in realtime, nor did they guarantee the |  |
|  | 972:22 suspicious orders reported to DEA were also |  |
|  | 972:23 blocked by the distributors.  The committee |  |
|  | 972:24 also found that one distributor lacked any |  |
|  | 972:25 formal order monitoring program.  Rather, the |  |
|  | 973:1 distributor's employees relied on subjective |  |
|  | 973:2 criteria to investigate [sic] orders it |  |
|  | 973:3 considered suspicious." |  |
|  | 973:4 Does that also reflect what the |  |
|  | 973:5 DEA knew to happen during this time period? |  |
| 973:10 - 974:10 | **Prevoznik, Thomas 05-17-2019 (00:00:56)** | **TP01.354** |

| TP01-Prevoznik, Thomas - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

973:10 THE WITNESS:  Yes.
973:11 QUESTIONS BY MS. SINGER:
973:12   Q. And the last paragraph.
973:13 "Another critical failure identified by the
973:14 Committee involved instances in which
973:15 distributors appeared to turn a blind eye to
973:16 red flags of possible drug diversion.
973:17 Despite available information, distributors
973:18 at times took only minimal steps to
973:19 investigate possible warning signs of
973:20 diversion and continued to ship controlled
973:21 substances to suspect pharmacies.  In several
973:22 cases, distributors either failed to fully
973:23 investigate potentially troubling information
973:24 they obtained from customer pharmacies or
973:25 willfully ignored it.  These failures raise
974:1 substantial concern given that DEA has said
974:2 existing knowledge of a geographic area's
974:3 problem with controlled substance abuse is a
974:4 factor that distributors should take into
974:5 account when evaluating customers."
974:6 Now, is that true, that DEA had
974:7 said knowledge of a geographic area's problem
974:8 with controlled substance abuse is a factor
974:9 that should be taken into account by
974:10 registrants?

| 974:14 - 974:25 | **Prevoznik, Thomas 05-17-2019 (00:00:22)** | **TP01.355** |

974:14 THE WITNESS:  Yes.
974:15 QUESTIONS BY MS. SINGER:
974:16   Q. Okay.  "West Virginia has the
974:17 highest drug overdose rate in the country,
974:18 meaning distributors should have been
974:19 particularly attuned to any red flags
974:20 encountered when conducting due diligence on
974:21 pharmacies in that state."
974:22 Is that also an accurate
974:23 reflection of a registrant's duty when
974:24 shipping controlled substances into West
974:25 Virginia or other hotspots?

| 975:05 - 975:10 | **Prevoznik, Thomas 05-17-2019 (00:00:09)** | **TP01.356** |

| Page/Line | Source | ID |
|---|---|---|
| | 975:5 THE WITNESS:  Yes. | |
| | 975:6 QUESTIONS BY MS. SINGER: | |
| | 975:7   Q. Okay.  And this whole paragraph | |
| | 975:8 that I just read, does that also reflect the | |
| | 975:9 DEA's understanding of what happened during | |
| | 975:10 this time period? | |
| 975:16 - 975:16 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.357** |
| | 975:16 THE WITNESS:  Yes. | |
| 978:16 - 979:07 | **Prevoznik, Thomas 05-17-2019 (00:00:38)** | **TP01.358** |
| | 978:16   Q. Okay.  Turning towards the | |
| | 978:17 middle of the page, just below it, the second | |
| | 978:18 paragraph from the bottom.  "But as | |
| | 978:19 demonstrated by the Committee's | |
| | 978:20 investigation, the DEA did not always receive | |
| | 978:21 the level of compliance required under the | |
| | 978:22 CSA.  The five distributors whose actions in | |
| | 978:23 West Virginia were examined by the Committee | |
| | 978:24 each had unique failures.  The companies had | |
| | 978:25 various policies and procedures in place to | |
| | 979:1 prevent diversion but in some cases did not | |
| | 979:2 adequately follow or carry out those | |
| | 979:3 policies.  As evidenced in the case studies | |
| | 979:4 discussed in each section, distributors had | |
| | 979:5 failings on multiple fronts." | |
| | 979:6 Is that consistent with the | |
| | 979:7 DEA's conclusions? | |
| 979:12 - 979:25 | **Prevoznik, Thomas 05-17-2019 (00:00:26)** | **TP01.359** |
| | 979:12 THE WITNESS:  Yes. | |
| | 979:13 QUESTIONS BY MS. SINGER: | |
| | 979:14   Q. "For instance, it is not | |
| | 979:15 sufficient due diligence for a distributor to | |
| | 979:16 only require prospective or existing | |
| | 979:17 customers to complete pharmacy questionnaires | |
| | 979:18 or supply supplemental data.  The information | |
| | 979:19 disclosed on such questionnaires or the data | |
| | 979:20 submitted must also be critically analyzed to | |
| | 979:21 identify any red flags of controlled | |
| | 979:22 substance diversion." | |
| | 979:23 Does that accurately reflect a | |
| | 979:24 distributor's obligations or a registrant's | |

| Page/Line | Source | ID |
|---|---|---|
| | 979:25 obligations? | |
| 980:03 - 980:10 | **Prevoznik, Thomas 05-17-2019 (00:00:10)** | **TP01.360** |
| | 980:3 THE WITNESS:  Yes. | |
| | 980:4 QUESTIONS BY MS. SINGER: | |
| | 980:5   Q. "Once distributors bring | |
| | 980:6 pharmacies on board, they need to monitor the | |
| | 980:7 volume of controlled substances sold to | |
| | 980:8 customers." | |
| | 980:9 Does that also accurately | |
| | 980:10 reflect a registrant's duties? | |
| 980:13 - 980:23 | **Prevoznik, Thomas 05-17-2019 (00:00:16)** | **TP01.361** |
| | 980:13 THE WITNESS:  Yes. | |
| | 980:14 QUESTIONS BY MS. SINGER: | |
| | 980:15   Q. And the last sentence, | |
| | 980:16 "Subsequently, when distributors set | |
| | 980:17 thresholds for customers, they should be | |
| | 980:18 enforced.  In such cases where thresholds are | |
| | 980:19 adjusted, distributors should be able to | |
| | 980:20 document the justification for these | |
| | 980:21 changes." | |
| | 980:22 Does that also accurately | |
| | 980:23 reflect a registrant's obligations? | |
| 981:02 - 981:02 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.362** |
| | 981:2 THE WITNESS:  Yes. | |
| 981:15 - 982:01 | **Prevoznik, Thomas 05-17-2019 (00:00:32)** | **TP01.363** |
| | 981:15 (Prevoznik Plaintiff's Exhibit | |
| | 981:16 P47 marked for identification.) | |
| | 981:17 QUESTIONS BY MS. SINGER: | |
| | 981:18   Q. Okay.  So I want to turn to | |
| | 981:19 Exhibit 47, please. | |
| | 981:20 And that is Bates number | |
| | 981:21 PPLP0300001799742. | |
| | 981:22 If you turn to the first slide, | |
| | 981:23 it's titled "DEA/OD 11th Pharmaceutical | |
| | 981:24 Industry Conference." | |
| | 981:25 Do you recognize this | |
| | 982:1 presentation? | |
| 982:15 - 982:20 | **Prevoznik, Thomas 05-17-2019 (00:00:09)** | **TP01.364** |
| | 982:15   Q. Okay.  It does have on the | |
| | 982:16 front page DOJ, DEA logos, correct? | |

| TP01-Prevoznik, Thomas - Plaintiffs' Submission | | |
| --- | --- | --- |
| **Page/Line** | **Source** | **ID** |

982:17  A. Yes.
982:18  Q. Okay.  And does it look -- from
982:19 your knowledge, is this a presentation by the
982:20 DEA?

**982:23 - 983:19    Prevoznik, Thomas 05-17-2019 (00:00:44)**                    TP01.365

982:23 THE WITNESS:  Yes.
982:24 QUESTIONS BY MS. SINGER:
982:25  Q. Okay.  And if you turn to the
983:1 fifth page, with the slide "retail
983:2 diversion," 90 percent at doctor, pharmacy,
983:3 hospital levels.
983:4 Do you see that slide?
983:5  A. Yes.
983:6  Q. Okay.  And if you look at the
983:7 notes that are at the bottom of that slide,
983:8 do you see the bottom section that starts,
983:9 "Estimated 1.5 percent of doctors are
983:10 negligent and/or dishonest"?
983:11 Do you see where I'm reading?
983:12  A. Yes.
983:13  Q. Okay.  It says, "That portion
983:14 of DEA-registered physicians is many
983:15 thousands.  Their CS, or controlled
983:16 substance, prescribing would total hundreds
983:17 of thousands of scripts/millions of dosage
983:18 units into illicit market."
983:19 Is that accurate?

**983:25 - 984:05    Prevoznik, Thomas 05-17-2019 (00:00:09)**                    TP01.366

983:25 THE WITNESS:  Yes.
984:1 QUESTIONS BY MS. SINGER:
984:2  Q. And is it true, as it says
984:3 here, that it is impossible for DEA to
984:4 investigate and discipline that number of
984:5 professionals?

**984:09 - 984:13    Prevoznik, Thomas 05-17-2019 (00:00:05)**                    TP01.367

984:9 THE WITNESS:  I mean, we do the
984:10 best we can.
984:11 QUESTIONS BY MS. SINGER:
984:12  Q. But that's a lot of --
984:13  A. It's a lot.

| Page/Line | Source | ID |
|---|---|---|

**TP01-Prevoznik, Thomas - Plaintiffs' Submission**

| | | |
|---|---|---|
| 984:17 - 984:22 | **Prevoznik, Thomas 05-17-2019 (00:00:15)** | TP01.368 |
| | 984:17   Q. And the last line here, "Far | |
| | 984:18 more effective, address the risk at the apex | |
| | 984:19 of the distribution center [sic]." | |
| | 984:20 Is that accurate, that that is | |
| | 984:21 a more effective way of enforcing compliance | |
| | 984:22 with the Controlled Substances Act? | |
| 985:02 - 985:03 | **Prevoznik, Thomas 05-17-2019 (00:00:02)** | TP01.369 |
| | 985:2   Q. Or an important tool for the | |
| | 985:3 DEA? | |
| 985:06 - 985:12 | **Prevoznik, Thomas 05-17-2019 (00:00:16)** | TP01.370 |
| | 985:6 THE WITNESS:  Yes. | |
| | 985:7 QUESTIONS BY MS. SINGER: | |
| | 985:8   Q. Okay.  And in fact, that's part | |
| | 985:9 of the foundation of the Controlled | |
| | 985:10 Substances Act, that each participant in the | |
| | 985:11 supply chain has to police its own | |
| | 985:12 participation in that supply chain, correct? | |
| 985:16 - 985:16 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | TP01.371 |
| | 985:16 THE WITNESS:  Yes. | |
| 986:09 - 987:07 | **Prevoznik, Thomas 05-17-2019 (00:00:55)** | TP01.372 |
| | 986:9 All right.  I'm showing you | |
| | 986:10 Exhibit 48.  And the level -- and I'm sorry, | |
| | 986:11 this is CAH_MDL2804_00889528. | |
| | 986:12 Do you recognize the logo on | |
| | 986:13 the front of this presentation? | |
| | 986:14   A. Yes. | |
| | 986:15   Q. And what is it? | |
| | 986:16   A. It's our Chief Counsel's logo. | |
| | 986:17   Q. Okay.  And if you turn to the | |
| | 986:18 inside first page, How to Keep Or Lose Your | |
| | 986:19 DEA Registration, do you recognize this | |
| | 986:20 presentation? | |
| | 986:21   A. Yes. | |
| | 986:22   Q. And what do you recognize it to | |
| | 986:23 be? | |
| | 986:24   A. It was one of the -- it was -- | |
| | 986:25 it was given at a conference that we held. | |
| | 987:1   Q. A conference -- | |
| | 987:2   A. For the industry. | |

| | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

987:3  Q. Okay.  A conference that DEA
987:4 had for industry?
987:5  A. Yes.
987:6  Q. And do you know who gave this
987:7 presentation?

| | | |
|---|---|---|
| 987:08 - 987:09 | **Prevoznik, Thomas 05-17-2019 (00:00:02)** | **TP01.373** |

987:8 Do you know if would have been
987:9 Linden Barber?

| | | |
|---|---|---|
| 987:12 - 988:06 | **Prevoznik, Thomas 05-17-2019 (00:00:36)** | **TP01.374** |

987:12 THE WITNESS:  I believe it was
987:13 Linden that gave this.
987:14 QUESTIONS BY MS. SINGER:
987:15  Q. Okay.  And Linden Barber was
987:16 with the Chief Counsel's Office of DEA,
987:17 correct?
987:18  A. Yes.
987:19  Q. Okay.  And if you turn to
987:20 page 4 of the presentation, titled "Effective
987:21 Controls Against Diversion," the first point
987:22 there is what, the first bullet point?
987:23  A. "Good recordkeeping is
987:24 essential."
987:25  Q. Do you agree with that
988:1 statement?
988:2  A. Yes.
988:3  Q. In DEA's experience, is the
988:4 absence of documentation a fairly good
988:5 indication that something didn't happen in a
988:6 registrant's compliance program?

| | | |
|---|---|---|
| 988:09 - 988:09 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.375** |

988:9 THE WITNESS:  Yes.

| | | |
|---|---|---|
| 988:11 - 988:20 | **Prevoznik, Thomas 05-17-2019 (00:00:24)** | **TP01.376** |

988:11  Q. Okay.  Turning to page 9, this
988:12 is what doesn't work, or how to lose your DEA
988:13 registration.
988:14 The second bullet point, what
988:15 does that say?
988:16  A. "It is not my job to
988:17 second-guess the doctor."
988:18  Q. Okay.  And that's not an excuse

| TP01-Prevoznik, Thomas - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| 988:23 - 989:03 | 988:19 that the DEA will accept from a registrant,<br>988:20 correct?<br>**Prevoznik, Thomas 05-17-2019 (00:00:08)**<br>988:23 THE WITNESS:  Yes.<br>988:24 QUESTIONS BY MS. SINGER:<br>988:25  Q. And that's because it's a<br>989:1 registrant's responsibility to act on<br>989:2 information that points to diversion,<br>989:3 correct? | TP01.377 |
| 989:06 - 989:12 | **Prevoznik, Thomas 05-17-2019 (00:00:15)**<br>989:6 THE WITNESS:  Correct.<br>989:7 QUESTIONS BY MS. SINGER:<br>989:8  Q. And it's not that the<br>989:9 registrant is being asked to judge a<br>989:10 prescription or a patient, but to look at red<br>989:11 flags like the volume or dose or appearance<br>989:12 of a practice, et cetera, correct? | TP01.378 |
| 989:16 - 989:24 | **Prevoznik, Thomas 05-17-2019 (00:00:14)**<br>989:16 THE WITNESS:  Yes, they should<br>989:17 look into totality of everything<br>989:18 that's presented to them.<br>989:19 QUESTIONS BY MS. SINGER:<br>989:20  Q. Okay.  And the last excuse on<br>989:21 this slide, "I'm not responsible for what my<br>989:22 customer does with the drugs."<br>989:23 Is that an excuse that the DEA<br>989:24 accepts from a registrant? | TP01.379 |
| 990:02 - 990:06 | **Prevoznik, Thomas 05-17-2019 (00:00:08)**<br>990:2 THE WITNESS:  No.<br>990:3 QUESTIONS BY MS. SINGER:<br>990:4  Q. And that's because a registrant<br>990:5 is responsible to make sure that they are not<br>990:6 supplying to potential diversion, correct? | TP01.380 |
| 990:10 - 990:10 | **Prevoznik, Thomas 05-17-2019 (00:00:01)**<br>990:10 THE WITNESS:  Correct. | TP01.381 |
| 992:08 - 992:23 | **Prevoznik, Thomas 05-17-2019 (00:00:32)**<br>992:8  Q. Okay.  And then it goes on to<br>992:9 say, "Know your customers and, where<br>992:10 applicable, the prescriber's business or<br>992:11 professional practice." | TP01.382 |

| TP01-Prevoznik, Thomas - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

992:12 Is that also the DEA's guidance
992:13 to industry as to what's required?
992:14   A. Yes.
992:15   Q. And "know the statutory
992:16 factors, the DEA's final orders," and then
992:17 lastly, "act consistently with DEA's goal:
992:18 protect the public health and safety from the
992:19 harms caused by diversion."
992:20 Is that also the guidance that
992:21 DEA gave to industry about complying with the
992:22 Controlled Substances Act?
992:23   A. Yes.

| 992:25 - 993:01 | **Prevoznik, Thomas 05-17-2019 (00:00:00)** | **TP01.383** |

992:25 (Prevoznik Plaintiff's Exhibit
993:1 P49 marked for identification.)

| 997:14 - 997:16 | **Prevoznik, Thomas 05-17-2019 (00:00:06)** | **TP01.384** |

997:14   Q. Would DEA agree that a
997:15 significant increase in a prescriber's volume
997:16 is a sign of potential diversion?

| 997:19 - 997:24 | **Prevoznik, Thomas 05-17-2019 (00:00:07)** | **TP01.385** |

997:19 THE WITNESS:  Just volume
997:20 alone?
997:21 QUESTIONS BY MS. SINGER:
997:22   Q. That it is one sign of
997:23 potential diversion, yes.
997:24   A. It --

| 998:02 - 998:08 | **Prevoznik, Thomas 05-17-2019 (00:00:12)** | **TP01.386** |

998:2 THE WITNESS:  Potentially, yes.
998:3 QUESTIONS BY MS. SINGER:
998:4   Q. Okay.  And that a prescriber
998:5 who is prescribing at very high volume
998:6 relative to other practitioners, that would
998:7 also be another potential red flag of
998:8 diversion, correct?

| 998:13 - 998:24 | **Prevoznik, Thomas 05-17-2019 (00:00:16)** | **TP01.387** |

998:13 THE WITNESS:  It could be.  It
998:14 just depends on what is the
998:15 physician's practice; does he
998:16 specialize in end of life or something
998:17 like that.  I mean, you'd have to take

| | TP01-Prevoznik, Thomas - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| Page/Line | Source | ID |
|---|---|---|
| | 998:18 in other factors. | |
| | 998:19 QUESTIONS BY MS. SINGER: | |
| | 998:20  Q. Right.  You have to look at the | |
| | 998:21 whole picture. | |
| | 998:22 But that's one sign that might | |
| | 998:23 alert you to take a closer look, correct? | |
| | 998:24  A. Correct. | |
| 999:03 - 999:07 | **Prevoznik, Thomas 05-17-2019 (00:00:13)** | **TP01.388** |
| | 999:3  Q. And if the prescriber is | |
| | 999:4 prescribing at very high doses, again, one | |
| | 999:5 factor, depending on their specialty and | |
| | 999:6 patients, that might alert a registrant to | |
| | 999:7 potential diversion, correct? | |
| 999:12 - 999:12 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.389** |
| | 999:12 THE WITNESS:  Correct. | |
| 999:25 - 1000:04 | **Prevoznik, Thomas 05-17-2019 (00:00:10)** | **TP01.390** |
| | 999:25  Q. These are the kinds of | |
| | 1000:1 commonsense red flags that a registrant | |
| | 1000:2 should know to apply in looking for diversion | |
| | 1000:3 without the DEA telling them specifically to | |
| | 1000:4 look for them, correct? | |
| 1000:06 - 1000:06 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.391** |
| | 1000:6 THE WITNESS:  Yes. | |
| 1007:11 - 1007:17 | **Prevoznik, Thomas 05-17-2019 (00:00:19)** | **TP01.392** |
| | 1007:11  Q. Now, does the fact that there | |
| | 1007:12 are bad doctors who are writing illegitimate | |
| | 1007:13 prescriptions or pharmacies that are | |
| | 1007:14 dispensing illegally relieve distributors or | |
| | 1007:15 manufacturers of their duty to review their | |
| | 1007:16 own information and data for suspicious | |
| | 1007:17 orders and signs of diversion? | |
| 1007:24 - 1007:24 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.393** |
| | 1007:24 THE WITNESS:  No. | |
| 1008:02 - 1008:06 | **Prevoznik, Thomas 05-17-2019 (00:00:10)** | **TP01.394** |
| | 1008:2  Q. And in fact, in a closed | |
| | 1008:3 system, the participants in the supply chain, | |
| | 1008:4 those who are on the inside, have a duty to | |
| | 1008:5 look out for bad doctors and bad pharmacies, | |
| | 1008:6 correct? | |
| 1008:10 - 1008:10 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.395** |

| TP01-Prevoznik, Thomas - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

1008:10 THE WITNESS:  Yes.

1010:01 - 1010:09 **Prevoznik, Thomas 05-17-2019 (00:00:22)**   TP01.465

1010:1   Q. Now, you talked about the fact
1010:2 that DEA doesn't set a formula or a threshold
1010:3 for industry to apply, correct?
1010:4   A. Correct.
1010:5   Q. And is that -- is the reason
1010:6 for that because the DEA wouldn't necessarily
1010:7 be able to capture what the industry knows
1010:8 about its own customers in setting a
1010:9 threshold?

1010:12 - 1011:02 **Prevoznik, Thomas 05-17-2019 (00:00:34)**   TP01.466

1010:12 THE WITNESS:  I think it's
1010:13 part -- a part of -- certainly that's
1010:14 part of it, but the other part would
1010:15 also be we don't regulate the practice
1010:16 of medicine, so we're not interfering
1010:17 with what doctors are doing to treat
1010:18 their patients.
1010:19 So in discussions with -- when
1010:20 these thresholds and things -- it also
1010:21 affects the opposite side.  So it's
1010:22 not only the diverted side, but it's
1010:23 also legitimate patients who can't get
1010:24 them because of these thresholds that
1010:25 are in place.  So it's affecting both
1011:1 sides of the -- it's a delicate
1011:2 balance.

1011:11 - 1011:14 **Prevoznik, Thomas 05-17-2019 (00:00:08)**   TP01.396

1011:11   Q. Okay.  And the danger is if the
1011:12 DEA were to set the threshold too high, it
1011:13 wouldn't be a real check on identifying
1011:14 suspicious orders, correct?

1011:18 - 1011:22 **Prevoznik, Thomas 05-17-2019 (00:00:06)**   TP01.397

1011:18 THE WITNESS:  Yes.
1011:19 QUESTIONS BY MS. SINGER:
1011:20   Q. And if you set it too low, as
1011:21 you said, patients might not be able to get
1011:22 medicine they need, correct?

1012:01 - 1012:01 **Prevoznik, Thomas 05-17-2019 (00:00:01)**   TP01.398

| | TP01-Prevoznik, Thomas - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| Page/Line | Source | ID |
|---|---|---|
| | 1012:1 THE WITNESS:  Yes. | |
| 1012:03 - 1012:07 | **Prevoznik, Thomas 05-17-2019 (00:00:14)** | **TP01.399** |
| | 1012:3   Q. And so it's not that the DEA | |
| | 1012:4 has some answer on what the threshold should | |
| | 1012:5 be and isn't telling industry; it's that the | |
| | 1012:6 DEA is actually saying that industry knows | |
| | 1012:7 better from its own customers, correct? | |
| 1012:10 - 1012:11 | **Prevoznik, Thomas 05-17-2019 (00:00:02)** | **TP01.400** |
| | 1012:10 THE WITNESS:  They're in a | |
| | 1012:11 better position than we are. | |
| 1012:15 - 1012:16 | **Prevoznik, Thomas 05-17-2019 (00:00:09)** | **TP01.401** |
| | 1012:15   Q. Okay.  So let's go to -- I'm | |
| | 1012:16 showing you Exhibit 54. | |
| 1012:17 - 1014:01 | **Prevoznik, Thomas 05-17-2019 (00:01:19)** | **TP01.402** |
| | 1012:17 So do you recognize | |
| | 1012:18 MNK-T1_0008504654? | |
| | 1012:19   A. I recognize the names. | |
| | 1012:20   Q. Okay.  Which names do you | |
| | 1012:21 recognize? | |
| | 1012:22   A. Mark Caverly and James | |
| | 1012:23 Crawford. | |
| | 1012:24   Q. And who are they? | |
| | 1012:25   A. Former employees of DEA. | |
| | 1013:1   Q. Okay.  And it says -- if you | |
| | 1013:2 look down this document, you see | |
| | 1013:3 Mr. Crawford, I think, three paragraphs from | |
| | 1013:4 the bottom.  Okay.  I'm sorry, let's go up | |
| | 1013:5 from that to the question. | |
| | 1013:6 "During the distributor | |
| | 1013:7 breakout session, suspicious order monitoring | |
| | 1013:8 was certainly a hotbed of discussion.  Are | |
| | 1013:9 there any plans for DEA to publicize | |
| | 1013:10 information to implement SOM, or suspicious | |
| | 1013:11 order monitoring, incorporate algorithms | |
| | 1013:12 where products are more likely to be | |
| | 1013:13 diverted?" | |
| | 1013:14 Do you see where I'm reading? | |
| | 1013:15   A. Yes. | |
| | 1013:16   Q. Okay.  And then can you read | |
| | 1013:17 Mr. Crawford's response? | |

| Page/Line | Source | ID |
|---|---|---|

TP01-Prevoznik, Thomas - Plaintiffs' Submission

1013:18   A. "Whatever we put out will be
1013:19 outdated by the time we put it out.  You're
1013:20 looking at a number.  Tell me how much --
1013:21 tell me how much that we can't exceed.  DEA
1013:22 can't do that.  It's part of your due
1013:23 diligence, knowing your customer."
1013:24   Q. And does that reflect what you
1013:25 just testified to in the guidance that DEA
1014:1 gave industry?

**1014:02 - 1014:02   Prevoznik, Thomas 05-17-2019 (00:00:01)**   TP01.403

1014:2   A. Yes.

**1015:03 - 1015:10   Prevoznik, Thomas 05-17-2019 (00:00:23)**   TP01.404

1015:3   Q. Okay.  Showing you Exhibit 55.
1015:4 My goal here is to make your pile go up and
1015:5 mine go down.
1015:6 All right.  This is
1015:7 MCKMDL00561303, executive summary regarding
1015:8 the HDMA document.
1015:9 Have you seen this document
1015:10 before, Mr. Prevoznik?

**1015:11 - 1015:23   Prevoznik, Thomas 05-17-2019 (00:00:35)**   TP01.405

1015:11   A. I'm not sure.
1015:12   Q. Okay.  Let me direct you to the
1015:13 last page, Bates number 306.  It says in that
1015:14 top bullet to question 10, "This is another
1015:15 area that we have made great strides in over
1015:16 the past few years.  Our analytical
1015:17 capabilities provide us with greater insight
1015:18 into our own customer base.  We have this
1015:19 data already and frankly are in a position to
1015:20 provide better information to DEA than they
1015:21 could provide to us."
1015:22 Does DEA agree with that
1015:23 statement?

**1016:01 - 1016:06   Prevoznik, Thomas 05-17-2019 (00:00:08)**   TP01.406

1016:1 THE WITNESS:  Yes.
1016:2 QUESTIONS BY MS. SINGER:
1016:3   Q. And it says as a sidenote, "DEA
1016:4 does not have dispensing data, nor do they
1016:5 have noncontrol data," correct?

| Page/Line | Source | ID |
|---|---|---|
| | 1016:6   A. Correct. | |
| 1017:01 - 1017:07 | **Prevoznik, Thomas 05-17-2019 (00:00:23)** | **TP01.407** |
| | 1017:1   Q. Based on your experience | |
| | 1017:2 in all of your years at DEA in management and | |
| | 1017:3 as a diversion investigator and as the | |
| | 1017:4 representative of the DEA here today, did DEA | |
| | 1017:5 make the best judgments it could at the time | |
| | 1017:6 to use your authority and resources most | |
| | 1017:7 effectively to prevent diversion? | |
| 1017:13 - 1017:14 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.408** |
| | 1017:13 THE WITNESS:  Yes, I think we | |
| | 1017:14 did. | |
| 1017:16 - 1017:20 | **Prevoznik, Thomas 05-17-2019 (00:00:13)** | **TP01.409** |
| | 1017:16   Q. Had distributors reported | |
| | 1017:17 suspicious orders to the DEA as the law | |
| | 1017:18 required would DEA have been able to use its | |
| | 1017:19 resources more effectively to identify and | |
| | 1017:20 prevent diversion? | |
| 1018:03 - 1018:03 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.410** |
| | 1018:3 THE WITNESS:  I believe so. | |
| 1018:11 - 1018:14 | **Prevoznik, Thomas 05-17-2019 (00:00:14)** | **TP01.411** |
| | 1018:11   Q. Okay.  And if registrants had | |
| | 1018:12 reported suspicious orders to the DEA, does | |
| | 1018:13 the DEA believe that there would have been | |
| | 1018:14 less diversion, less abuse and less death? | |
| 1018:21 - 1018:21 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.412** |
| | 1018:21 THE WITNESS:  Yes. | |
| 1022:13 - 1022:21 | **Prevoznik, Thomas 05-17-2019 (00:00:36)** | **TP01.413** |
| | 1022:13   Q. I'm going to show you | |
| | 1022:14 Exhibit 56. | |
| | 1022:15 Mr. Prevoznik, this is our | |
| | 1022:16 effort to put in a timeline the actions DEA | |
| | 1022:17 took against defendants in this litigation. | |
| | 1022:18 Does this capture the major | |
| | 1022:19 enforcement initiatives that DEA took against | |
| | 1022:20 distributors, manufacturers and distributors, | |
| | 1022:21 including pharmacies? | |
| 1025:24 - 1026:06 | **Prevoznik, Thomas 05-17-2019 (00:00:29)** | **TP01.414** |
| | 1025:24 THE WITNESS:  Yeah. | |
| | 1025:25 It appears to have most of the | |

Header: TP01-Prevoznik, Thomas - Plaintiffs' Submission

| TP01-Prevoznik, Thomas - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

|  | 1026:1 highlights. | |
|  | 1026:2 QUESTIONS BY MS. SINGER: | |
|  | 1026:3   Q.  Okay.  And is it fair to say | |
|  | 1026:4 that the DEA has investigated or taken action | |
|  | 1026:5 against virtually every major distributor of | |
|  | 1026:6 opioids over the last 15 years? | |
| 1026:09 - 1026:09 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.415** |
|  | 1026:9 THE WITNESS:  Yes. | |
| 1026:12 - 1026:13 | **Prevoznik, Thomas 05-17-2019 (00:00:04)** | **TP01.467** |
|  | 1026:12   Q.  And also the major pharmacy | |
|  | 1026:13 chains that distribute opioids? | |
| 1026:15 - 1026:18 | **Prevoznik, Thomas 05-17-2019 (00:00:05)** | **TP01.468** |
|  | 1026:15 THE WITNESS:  Yes. | |
|  | 1026:16 QUESTIONS BY MS. SINGER: | |
|  | 1026:17   Q.  And also manufacturers like | |
|  | 1026:18 Mallinckrodt and Purdue, correct? | |
| 1026:20 - 1026:24 | **Prevoznik, Thomas 05-17-2019 (00:00:07)** | **TP01.469** |
|  | 1026:20 THE WITNESS:  Correct. | |
|  | 1026:21 QUESTIONS BY MS. SINGER: | |
|  | 1026:22   Q.  Now, this chart doesn't reflect | |
|  | 1026:23 additional actions that the DEA took against | |
|  | 1026:24 doctors and pharmacists, correct? | |
| 1027:03 - 1027:09 | **Prevoznik, Thomas 05-17-2019 (00:00:09)** | **TP01.470** |
|  | 1027:3 THE WITNESS:  Yes. | |
|  | 1027:4 QUESTIONS BY MS. SINGER: | |
|  | 1027:5   Q. Or actions you took against | |
|  | 1027:6 independent pharmacies. | |
|  | 1027:7 And I take it the DEA also took | |
|  | 1027:8 enforcement action against non-chain | |
|  | 1027:9 pharmacies, correct? | |
| 1027:17 - 1027:22 | **Prevoznik, Thomas 05-17-2019 (00:00:08)** | **TP01.471** |
|  | 1027:17 THE WITNESS:  Yes.  In my | |
|  | 1027:18 personal capacity, yes, we would. | |
|  | 1027:19 QUESTIONS BY MS. SINGER: | |
|  | 1027:20   Q.  Okay.  So this isn't everything | |
|  | 1027:21 the DEA did in this time period, correct? | |
|  | 1027:22   A. Correct. | |
| 1028:05 - 1028:08 | **Prevoznik, Thomas 05-17-2019 (00:00:09)** | **TP01.416** |
|  | 1028:5   Q.  Okay.  Now, isn't it true that | |
|  | 1028:6 even without information on a competitor's | |

**TP01-Prevoznik, Thomas - Plaintiffs' Submission**

| Page/Line | Source | ID |
|---|---|---|

1028:7 orders, that registrants can identify
1028:8 suspicious orders and potential diversion?

**1028:11 - 1028:25**   **Prevoznik, Thomas 05-17-2019 (00:00:20)**   **TP01.417**

1028:11 THE WITNESS:  So essentially
1028:12 their own data.
1028:13 QUESTIONS BY MS. SINGER:
1028:14  Q. Yes.
1028:15  A. Yes.
1028:16  Q. Okay.  And when you've taken --
1028:17 when you, the DEA, has taken enforcement
1028:18 actions or entered into settlement agreements
1028:19 with registrants, you've looked at their own
1028:20 data, correct?
1028:21  A. Yes.
1028:22  Q. And what those registrants
1028:23 should have known or did know about their own
1028:24 customers, correct?
1028:25  A. Correct.

**1029:04 - 1029:06**   **Prevoznik, Thomas 05-17-2019 (00:00:05)**   **TP01.418**

1029:4  Q. And you haven't taken those
1029:5 actions based on data from other registrants,
1029:6 correct?

**1029:09 - 1029:09**   **Prevoznik, Thomas 05-17-2019 (00:00:00)**   **TP01.419**

1029:9 THE WITNESS:  Correct.

**1029:12 - 1029:16**   **Prevoznik, Thomas 05-17-2019 (00:00:09)**   **TP01.420**

1029:12 So just to be perfectly clear,
1029:13 you didn't expect Cardinal to know what
1029:14 McKesson or AmerisourceBergen was supplying
1029:15 to a customer, correct?
1029:16  A. Correct.

**1029:19 - 1029:23**   **Prevoznik, Thomas 05-17-2019 (00:00:10)**   **TP01.421**

1029:19  Q. Is it the DEA's experience that
1029:20 suspicious orders filled by manufacturers,
1029:21 distributors and pharmacies were suspicious
1029:22 in their own right without anybody else's
1029:23 data?

**1030:03 - 1030:08**   **Prevoznik, Thomas 05-17-2019 (00:00:10)**   **TP01.422**

1030:3 THE WITNESS:  Yes.
1030:4 QUESTIONS BY MS. SINGER:
1030:5  Q. And when distributors take on

| TP01-Prevoznik, Thomas - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

|  | 1030:6 or registrants take on a new customer, DEA |  |
|  | 1030:7 recommends that they ask whether that |  |
|  | 1030:8 customer uses other distributors, correct? |  |
| 1030:11 - 1030:11 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.423** |
|  | 1030:11 THE WITNESS:  Yes. |  |
| 1030:18 - 1030:21 | **Prevoznik, Thomas 05-17-2019 (00:00:07)** | **TP01.424** |
|  | 1030:18 DEA also recommends that a |  |
|  | 1030:19 distributor obtain dispensing data from a |  |
|  | 1030:20 pharmacy before they take them on as a |  |
|  | 1030:21 customer, correct? |  |
| 1030:24 - 1030:25 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.425** |
|  | 1030:24 THE WITNESS:  Yes, if they can |  |
|  | 1030:25 get it. |  |
| 1032:15 - 1032:19 | **Prevoznik, Thomas 05-17-2019 (00:00:12)** | **TP01.426** |
|  | 1032:15   Q. Now, if a pharmacy won't |  |
|  | 1032:16 provide dispensing information to a |  |
|  | 1032:17 distributor, would that be a red flag that |  |
|  | 1032:18 the distributor needs to look more closely at |  |
|  | 1032:19 that customer? |  |
| 1033:03 - 1033:04 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.427** |
|  | 1033:3 THE WITNESS:  Yes, they should |  |
|  | 1033:4 be. |  |
| 1033:08 - 1033:09 | **Prevoznik, Thomas 05-17-2019 (00:00:03)** | **TP01.428** |
|  | 1033:8   Q. A distributor should ask? |  |
|  | 1033:9   A. Should ask for it. |  |
| 1034:04 - 1034:07 | **Prevoznik, Thomas 05-17-2019 (00:00:07)** | **TP01.429** |
|  | 1034:4   Q. Now, distributors have |  |
|  | 1034:5 information on both controlled and |  |
|  | 1034:6 noncontrolled substances that are ordered by |  |
|  | 1034:7 a customer, correct? |  |
| 1034:10 - 1034:10 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.430** |
|  | 1034:10 THE WITNESS:  Yes. |  |
| 1034:12 - 1034:15 | **Prevoznik, Thomas 05-17-2019 (00:00:07)** | **TP01.431** |
|  | 1034:12   Q. And that lets them see where a |  |
|  | 1034:13 customer's order of controlled substances is |  |
|  | 1034:14 disproportionate to its other orders, |  |
|  | 1034:15 correct? |  |
| 1034:19 - 1034:19 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.432** |
|  | 1034:19 THE WITNESS:  Yes. |  |
| 1034:21 - 1034:25 | **Prevoznik, Thomas 05-17-2019 (00:00:11)** | **TP01.433** |

| Page/Line | Source | ID |
|---|---|---|

**TP01-Prevoznik, Thomas - Plaintiffs' Submission**

|  | 1034:21   Q. And so if a customer is | |
|  | 1034:22 ordering a lot of opioids and very little | |
|  | 1034:23 antibiotics or diabetes medicine, that would | |
|  | 1034:24 be one potential red flag of diversion, | |
|  | 1034:25 correct? | |
| 1035:04 - 1035:13 | **Prevoznik, Thomas 05-17-2019 (00:00:16)** | TP01.434 |
|  | 1035:4 THE WITNESS:  Yes, it could | |
|  | 1035:5 potentially be a red flag. | |
|  | 1035:6 QUESTIONS BY MS. SINGER: | |
|  | 1035:7   Q. A red flag? | |
|  | 1035:8   A. Yes. | |
|  | 1035:9   Q. Okay.  And it's also true that | |
|  | 1035:10 pharmacies that order a certain mix of drugs | |
|  | 1035:11 that are abused together, that that can be | |
|  | 1035:12 another red flag of potential diversion, | |
|  | 1035:13 correct? | |
| 1035:17 - 1035:21 | **Prevoznik, Thomas 05-17-2019 (00:00:08)** | TP01.435 |
|  | 1035:17 THE WITNESS:  Yes. | |
|  | 1035:18 QUESTIONS BY MS. SINGER: | |
|  | 1035:19   Q. Now, distributors have that | |
|  | 1035:20 data on other noncontrolled substance orders, | |
|  | 1035:21 correct? | |
| 1036:01 - 1036:06 | **Prevoznik, Thomas 05-17-2019 (00:00:11)** | TP01.436 |
|  | 1036:1 THE WITNESS:  Yes. | |
|  | 1036:2 QUESTIONS BY MS. SINGER: | |
|  | 1036:3   Q. But DEA doesn't get reporting | |
|  | 1036:4 from distributors on noncontrolled substances | |
|  | 1036:5 ordered by customers, correct? | |
|  | 1036:6   A. No, we do not. | |
| 1037:09 - 1037:10 | **Prevoznik, Thomas 05-17-2019 (00:00:04)** | TP01.437 |
|  | 1037:9   Q. And DEA doesn't have | |
|  | 1037:10 prescribing information in ARCOS, correct? | |
| 1037:13 - 1037:17 | **Prevoznik, Thomas 05-17-2019 (00:00:06)** | TP01.438 |
|  | 1037:13 THE WITNESS:  Correct. | |
|  | 1037:14 QUESTIONS BY MS. SINGER: | |
|  | 1037:15   Q. But that information is | |
|  | 1037:16 certainly useful in detecting suspicious | |
|  | 1037:17 orders or potential diversion, correct? | |
| 1037:20 - 1037:25 | **Prevoznik, Thomas 05-17-2019 (00:00:11)** | TP01.439 |
|  | 1037:20 THE WITNESS:  Correct. | |

| | TP01-Prevoznik, Thomas - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

1037:21 QUESTIONS BY MS. SINGER:
1037:22  Q. Is DEA aware that registrants
1037:23 have information -- have access to
1037:24 information on cash payments that are
1037:25 received by pharmacies?

1038:05 - 1038:11  **Prevoznik, Thomas 05-17-2019 (00:00:05)**  TP01.440

1038:5 THE WITNESS:  I believe we do.
1038:6 I believe they do.
1038:7 QUESTIONS BY MS. SINGER:
1038:8  Q. They do?
1038:9  A. Yeah.
1038:10  Q. And does DEA have that
1038:11 information?

1038:13 - 1039:05  **Prevoznik, Thomas 05-17-2019 (00:00:32)**  TP01.441

1038:13 THE WITNESS:  If we subpoena
1038:14 it.
1038:15 QUESTIONS BY MS. SINGER:
1038:16  Q. Okay.  But not in the regular
1038:17 course --
1038:18  A. No.
1038:19  Q. -- of identifying potential
1038:20 diversion?
1038:21  A. Right.
1038:22  Q. Now, does ARCOS data tell you
1038:23 whether a customer is near a hospital or a
1038:24 cancer center or a hospice treatment
1038:25 facility?
1039:1  A. No, it's just transactional
1039:2 data.
1039:3  Q. Okay.  But distributors and
1039:4 manufacturers would learn that information in
1039:5 their due diligence on customers, correct?

1039:08 - 1039:08  **Prevoznik, Thomas 05-17-2019 (00:00:01)**  TP01.442

1039:8 THE WITNESS:  Yes.

1039:22 - 1040:02  **Prevoznik, Thomas 05-17-2019 (00:00:11)**  TP01.443

1039:22  Q. So when you get, you know, a
1039:23 big stack of excess order reports or
1039:24 ingredient limit reports, you can't tell if a
1039:25 large order is from a customer that's near an
1040:1 oncology center or a hospital, for instance,

| | TP01-Prevoznik, Thomas - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| Page/Line | Source | ID |
|---|---|---|
| | 1040:2 correct? | |
| 1040:05 - 1040:06 | **Prevoznik, Thomas 05-17-2019 (00:00:02)** | **TP01.444** |
| | 1040:5 THE WITNESS:  Correct.  From | |
| | 1040:6 the reports, you cannot. | |
| 1043:02 - 1043:05 | **Prevoznik, Thomas 05-17-2019 (00:00:07)** | **TP01.445** |
| | 1043:2   Q. And is it the DEA's experience | |
| | 1043:3 that registrants have objected to sharing | |
| | 1043:4 ARCOS data with their competitors? | |
| | 1043:5   A. Yes. | |
| 1045:07 - 1045:11 | **Prevoznik, Thomas 05-17-2019 (00:00:09)** | **TP01.446** |
| | 1045:7   Q. And if a registrant has | |
| | 1045:8 information that would alert it to diversion, | |
| | 1045:9 it has an obligation under the Controlled | |
| | 1045:10 Substances Act to use that information to | |
| | 1045:11 prevent diversion, correct? | |
| 1045:14 - 1045:17 | **Prevoznik, Thomas 05-17-2019 (00:00:04)** | **TP01.447** |
| | 1045:14 THE WITNESS:  Correct. | |
| | 1045:15 QUESTIONS BY MS. SINGER: | |
| | 1045:16   Q. And you can't be like that | |
| | 1045:17 monkey, hiding your eyes -- | |
| 1045:19 - 1045:21 | **Prevoznik, Thomas 05-17-2019 (00:00:03)** | **TP01.448** |
| | 1045:19 QUESTIONS BY MS. SINGER: | |
| | 1045:20   Q. -- and say, "We only use that | |
| | 1045:21 data for marketing" -- | |
| 1045:23 - 1046:01 | **Prevoznik, Thomas 05-17-2019 (00:00:04)** | **TP01.449** |
| | 1045:23 QUESTIONS BY MS. SINGER: | |
| | 1045:24   Q. -- "or accounting." | |
| | 1045:25 You have to use that data for | |
| | 1046:1 compliance, too, correct? | |
| 1046:03 - 1046:03 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.450** |
| | 1046:3 THE WITNESS:  Yes. | |
| 1051:09 - 1051:14 | **Prevoznik, Thomas 05-17-2019 (00:00:11)** | **TP01.451** |
| | 1051:9   Q. In that last sentence that | |
| | 1051:10 "chain store due diligence reviews must not | |
| | 1051:11 be treated any differently than independent | |
| | 1051:12 retail pharmacy customers," does that | |
| | 1051:13 represent the view of the DEA? | |
| | 1051:14   A. Yes. | |
| 1052:05 - 1052:07 | **Prevoznik, Thomas 05-17-2019 (00:00:03)** | **TP01.452** |
| | 1052:5 That's the guidance that DEA | |

| TP01-Prevoznik, Thomas - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

1052:6 gave to registrants?
1052:7  A. Correct.

| 1052:08 - 1052:11 | **Prevoznik, Thomas 05-17-2019 (00:00:15)** | **TP01.453** |

1052:8  Q. All right.  Should distributors
1052:9 be looking at all of the volume of opioids
1052:10 they supply into a geographic area in
1052:11 determining whether orders may be suspicious?

| 1052:15 - 1052:22 | **Prevoznik, Thomas 05-17-2019 (00:00:11)** | **TP01.454** |

1052:15 THE WITNESS:  It would
1052:16 definitely help.
1052:17 QUESTIONS BY MS. SINGER:
1052:18  Q. Okay.  Meaning if they're
1052:19 supplying in ways that are very
1052:20 disproportionate to the population, that
1052:21 should be a sign that they're not supplying
1052:22 to a legitimate market, correct?

| 1052:25 - 1053:05 | **Prevoznik, Thomas 05-17-2019 (00:00:07)** | **TP01.455** |

1052:25 THE WITNESS:  Correct.
1053:1 QUESTIONS BY MS. SINGER:
1053:2  Q. And distributors may not know
1053:3 all of the pills that are going into an area,
1053:4 but they certainly know what pills they're
1053:5 sending, correct?

| 1053:11 - 1053:11 | **Prevoznik, Thomas 05-17-2019 (00:00:01)** | **TP01.456** |

1053:11 THE WITNESS:  Correct.

| 1054:16 - 1054:23 | **Prevoznik, Thomas 05-17-2019 (00:00:21)** | **TP01.457** |

1054:16  Q. Let me do it as an
1054:17 example.
1054:18 If the threshold says that an
1054:19 order of 10,000 dosage units exceeds
1054:20 threshold and a customer orders 50,000 dosage
1054:21 units, can the distributor just cut the order
1054:22 to 10,000 units and ship it without
1054:23 investigating whether it's suspicious or not?

| 1055:02 - 1055:12 | **Prevoznik, Thomas 05-17-2019 (00:00:19)** | **TP01.458** |

1055:2 THE WITNESS:  Well, in your
1055:3 hypothetical it sounded like it was
1055:4 already triggered as a suspicious
1055:5 order, so immediately upon discovery
1055:6 they were supposed to tell us anyway

| Page/Line | Source | ID |
|---|---|---|

TP01-Prevoznik, Thomas - Plaintiffs' Submission

1055:7 that this happened.
1055:8 QUESTIONS BY MS. SINGER:
1055:9   Q. And shipping less of it doesn't
1055:10 make it not suspicious anymore.  If it's a
1055:11 suspicious order, it's a suspicious order,
1055:12 correct?

**1055:15 - 1055:19**   **Prevoznik, Thomas 05-17-2019 (00:00:09)**   **TP01.459**

1055:15 THE WITNESS:  Right.  So they
1055:16 can either not ship it or they can
1055:17 investigate to determine -- to
1055:18 alleviate the suspicions that they
1055:19 have.

**1056:19 - 1056:24**   **Prevoznik, Thomas 05-17-2019 (00:00:14)**   **TP01.460**

1056:19 Under the title "Ensuring
1056:20 Patient Access and Effective Drug Enforcement
1056:21 Act," first sentence, "The United States is
1056:22 currently facing an opioid epidemic."
1056:23 Is that the view of the DEA?
1056:24   A. Yes.

**1262:07 - 1262:09**   **Prevoznik, Thomas 05-17-2019 (00:00:05)**   **TP01.461**

1262:7   Q. Okay.  You didn't want to sit
1262:8 down with HDMA to help the public?
1262:9   A. No.

**1262:13 - 1263:03**   **Prevoznik, Thomas 05-17-2019 (00:00:30)**   **TP01.462**

1262:13 THE WITNESS:  No, we sat
1262:14 with -- we did the distributor
1262:15 initiative because of what we saw, and
1262:16 we saw that the registrants needed to
1262:17 be -- have -- to sit down with the
1262:18 registrants, talk to them and go over
1262:19 their own data with them to show the
1262:20 anomalies that are going on, in the
1262:21 hope that they would stop what they
1262:22 were doing.
1262:23 They said they were going to
1262:24 fix it; they didn't fix it.  So we
1262:25 weren't going to go to a trade
1263:1 association if the registrant isn't
1263:2 going to fix their own internal system
1263:3 that they have.

| Page/Line | Source | ID |
|---|---|---|

Plaintiff Affirmatives = 02:05:49
Defense Completeness Counters = 00:02:38
**Total Time = 02:08:28**