**Designation Run Report**

# CT2 Edward Hazewski - Plaintiffs' Submission

_____

**Hazewski, Edward 10-25-2018**
_____

**Plaintiffs Affirmative Designations　00:34:58**

**Defense Completeness Counters　00:03:32**

**Our Completeness Counters　00:00:44**

**Total Time　00:39:14**



ID:HE05

| HE05-CT2 Edward Hazewski - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| | | |
|---|---|---|
| 14:4 - 14:15 | **Hazewski, Edward 10-25-2018 (00:00:21)** | HE05.1 |
| | 14:4 BY MR. PIFKO: | |
| | 14:5   Q. Good morning. | |
| | 14:6   A. Good morning. | |
| | 14:7   Q. My name is Mark Pifko, I | |
| | 14:8 represent the plaintiffs in the case that | |
| | 14:9 we're here for, and I'm going to be | |
| | 14:10 asking you some questions today. | |
| | 14:11 Let's start by -- can you | |
| | 14:12 please state and spell your name for the | |
| | 14:13 record. | |
| | 14:14   A. Yes.  First name is Edward. | |
| | 14:15 Last name Hazewski, H-A-Z-E-W-S-K-I. | |
| 17:14 - 18:13 | **Hazewski, Edward 10-25-2018 (00:00:36)** | HE05.2 |
| | 17:14   Q. You understand that the | |
| | 17:15 court reporter just administered the oath | |
| | 17:16 to you.  Yes? | |
| | 17:17   A. Yes. | |
| | 17:18   Q. Okay.  And that means that | |
| | 17:19 if you are untruthful or intentionally | |
| | 17:20 misleading or dishonest, you can be | |
| | 17:21 subject to penalties from the court.  Do | |
| | 17:22 you understand that? | |
| | 17:23   A. Understood. | |
| | 17:24   Q. Okay.  Is there any reason | |
| | 18:1 why you think this deposition should not | |
| | 18:2 proceed today? | |
| | 18:3   A. No. | |
| | 18:4   Q. Are you taking any | |
| | 18:5 medications or undergoing any treatment | |
| | 18:6 that would impair your ability to tell | |
| | 18:7 the truth? | |
| | 18:8   A. No. | |
| | 18:9   Q. Are you -- same thing, are | |
| | 18:10 you taking the medications or undergoing | |
| | 18:11 the treatment that would impair your | |
| | 18:12 memory? | |
| | 18:13   A. No. | |
| 19:4 - 19:9 | **Hazewski, Edward 10-25-2018 (00:00:12)** | HE05.3 |
| | 19:4   Q. So you are currently | |

| | | |
|---|---|---|
| **HE05-CT2 Edward Hazewski - Plaintiffs' Submission** | | |

| Page/Line | Source | ID |
|---|---|---|

19:5 employed by AmerisourceBergen, correct?

19:6   A. Correct.

19:7   Q. What's your current title?

19:8   A. Director diversion control

19:9 and security.

**19:10 - 20:5**　　**Hazewski, Edward 10-25-2018 (00:01:08)**　　**HE05.91**

19:10   Q. Who do you report to?

19:11   A. David May.

19:12   Q. Where are you physically

19:13 located?  Here in Pennsylvania?

19:14   A. Yes.  In Valley Forge,

19:15 Pennsylvania.

19:16   Q. When did you first become

19:17 employed by AmerisourceBergen?

19:18   A. June of 2007.

19:19   Q. What was the position that

19:20 you took when you were first hired?

19:21   A. I believe the title was

19:22 corporate investigator.

19:23   Q. How long did you hold that

19:24 position?

20:1   A. Roughly a year.

20:2   Q. And then what -- what was

20:3 your next role?

20:4   A. My next role was as manager

20:5 of the diversion control program.

**20:19 - 21:18**　　**Hazewski, Edward 10-25-2018 (00:01:22)**　　**HE05.4**

20:19   Q. So you said you are director

20:20 of diversion control.  What is your area

20:21 of focus currently?

20:22   A. Currently it's special

20:23 projects as identified by David May.

20:24   Q. How long have you been in

21:1 that role?

21:2   A. Probably since March of this

21:3 year.

21:4   Q. Okay.  Going back.  So

21:5 corporate investigator, and then manager

21:6 of diversion and control.  Who did you

21:7 report to when you were manager of

| HE05-CT2 Edward Hazewski - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

21:8 diversion control?
21:9   A. Chris Zimmerman.
21:10   Q. How long were you in that
21:11 position?
21:12   A. From 2008 until 2014.  I
21:13 can't be more specific in terms of --
21:14   Q. Okay.  In 2014, what role
21:15 did you move into?
21:16   A. I -- I moved into the role
21:17 as -- with corporate investigations,
21:18 working along with Bruce Gundy.

| 21:19 - 21:22 | **Hazewski, Edward 10-25-2018 (00:00:08)** | **HE05.87** |

21:19   Q. And how long were you in
21:20 that role?
21:21   A. I would say approximately
21:22 two years.

| 25:8 - 25:21 | **Hazewski, Edward 10-25-2018 (00:00:37)** | **HE05.5** |

25:8   Q. So you joined as an
25:9 investigator.  And you were in the CSRA
25:10 division, correct?
25:11   A. Correct.
25:12   Q. What -- what was your job as
25:13 an investigator at that time?  What were
25:14 your duties?
25:15   A. Well, I would be assigned
25:16 cases by Bruce Gundy, obviously to
25:17 investigate.  It ran the gamut.  There
25:18 was no specific area that -- that I
25:19 concentrated on.  It was, again, whatever
25:20 required some sort of investigative work,
25:21 it would be assigned.

| 49:8 - 49:9 | **Hazewski, Edward 10-25-2018 (00:00:05)** | **HE05.6** |

49:8   Q. I'm handing you what are
49:9 marked as Exhibits 1 and 2.

| 49:10 - 49:16 | **Hazewski, Edward 10-25-2018 (00:00:33)** | **HE05.88** |

49:10 Exhibit 1 is a document
49:11 Bates-labeled ABDCMDL00265457 and
49:12 Exhibit 2 is a PowerPoint presentation
49:13 Bates-labeled ABDCMDL00265458.  I believe
49:14 that was produced natively.  So it only

| | HE05-CT2 Edward Hazewski - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| Page/Line | Source | ID |
|---|---|---|
| | 49:15 has one Bates number for the entire | |
| | 49:16 document. | |
| 50:6 - 50:13 | **Hazewski, Edward 10-25-2018 (00:00:20)** | HE05.7 |
| | 50:6   Q. The first document is an | |
| | 50:7 e-mail from you to several people | |
| | 50:8 attaching the second document. | |
| | 50:9 Have you seen this document | |
| | 50:10 before? | |
| | 50:11   A. I have no specific | |
| | 50:12 recollection, but my name is on it.  So I | |
| | 50:13 would assume I have at some point. | |
| 50:14 - 50:19 | **Hazewski, Edward 10-25-2018 (00:00:11)** | HE05.8 |
| | 50:14   Q. How about the presentation? | |
| | 50:15 Do you remember putting this presentation | |
| | 50:16 together, Exhibit 2? | |
| | 50:17   A. Again, not specifically, but | |
| | 50:18 it looks like something that I would have | |
| | 50:19 done. | |
| 50:20 - 51:16 | **Hazewski, Edward 10-25-2018 (00:00:44)** | HE05.9 |
| | 50:20   Q. It says here on Exhibit 1, | |
| | 50:21 "Attached is a draft of the presentation | |
| | 50:22 that I'm planning to have put on the | |
| | 50:23 learning management system." | |
| | 50:24 Do you see that? | |
| | 51:1   A. Yes. | |
| | 51:2   Q. "Keep in mind that there | |
| | 51:3 will be dialogue associated with each | |
| | 51:4 slide.  The training is aimed at sales | |
| | 51:5 associates, inside sales, and customer | |
| | 51:6 service reps in addition to any | |
| | 51:7 distribution center associates with an | |
| | 51:8 OMP function or those who handle | |
| | 51:9 controlled substances." | |
| | 51:10 Do you see that? | |
| | 51:11   A. Yes. | |
| | 51:12   Q. Okay.  Does that refresh | |
| | 51:13 your recollection about who this training | |
| | 51:14 was intended to be for? | |
| | 51:15   A. Well, I think it spells it | |
| | 51:16 out, yes. | |

| HE05-CT2 Edward Hazewski - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| 51:24 - 52:3 | **Hazewski, Edward 10-25-2018 (00:00:09)** | HE05.10 |

51:24   Q. This particular training,
52:1 this e-mail is dated April 16th, 2012.
52:2 Do you see that on the e-mail?
52:3   A. Yeah.

| 53:13 - 53:21 | **Hazewski, Edward 10-25-2018 (00:00:18)** | HE05.11 |

53:13   Q. Okay.  What I'm trying to
53:14 get at is, is the idea of recognizing a
53:15 red flag or looking for a red flag of
53:16 diversion something that, as far as you
53:17 know, was always part of the idea of
53:18 preventing diversion?
53:19   A. As far as I know.
53:20   Q. Yes?
53:21   A. Yes.

| 59:14 - 60:1 | **Hazewski, Edward 10-25-2018 (00:00:45)** | HE05.12 |

59:14   Q. Let's go a few pages into
59:15 your PowerPoint presentation.
59:16 There's a page that says red
59:17 flags.  It's on the screen in front of
59:18 you to help you find it.
59:19   A. I got it.
59:20   Q. Okay.  Do you know what a
59:21 red flag is in the context of this
59:22 presentation?
59:23   A. A red flag is something that
59:24 could possibly involve closer scrutiny or
60:1 further investigation if identified.

| 60:2 - 60:4 | **Hazewski, Edward 10-25-2018 (00:00:07)** | HE05.13 |

60:2   Q. Why would these things lead
60:3 you to want to conduct closer scrutiny,
60:4 something that's a red flag?

| 60:7 - 60:18 | **Hazewski, Edward 10-25-2018 (00:00:32)** | HE05.14 |

60:7 THE WITNESS:  Well, it's --
60:8 it's information that comes to
60:9 light that prompts more questions.
60:10 And in order to thoroughly
60:11 investigate suspicious orders or
60:12 indicators of potential diversion,
60:13 it's necessary to identify the

| Page/Line | Source | ID |
|---|---|---|

**HE05-CT2 Edward Hazewski - Plaintiffs' Submission**

60:14 flag and -- and try to determine
60:15 the reasons behind that red flag.
60:16 Perhaps there's reasonable -- a
60:17 reasonable explanation for
60:18 something, perhaps not.

**60:20 - 61:6**   **Hazewski, Edward 10-25-2018 (00:00:23)**   **HE05.15**

60:20   Q. Well, let's go through
60:21 the -- the next -- some of these red
60:22 flags that you put in your presentation
60:23 here.
60:24 The first one is,
61:1 "Dispensing large quantities of Oxycodone
61:2 prescriptions, (greater than 12 to
61:3 15 percent) when compared with total
61:4 number of prescriptions."
61:5 Do you see that?
61:6   A. Yes.

**61:18 - 62:8**   **Hazewski, Edward 10-25-2018 (00:00:56)**   **HE05.16**

61:18   Q. Why is dispensing a
61:19 large quantity, something that's 12 to
61:20 15 percent more of Oxycodone when --
61:21 sorry, let me just rephrase that.
61:22 Why would dispensing a large
61:23 quantity of Oxycodone in comparison with
61:24 the total number of prescriptions at a
62:1 pharmacy be a red flag?
62:2   A. Well, based on information
62:3 from the DEA and other industry sources,
62:4 Oxycodone was a high risk for potential
62:5 diversion, so that particular product was
62:6 scrutinized more closely than -- and
62:7 higher concentrations are cause for
62:8 concern without a reasonable explanation.

**62:9 - 62:12**   **Hazewski, Edward 10-25-2018 (00:00:10)**   **HE05.17**

62:9   Q. Why is it a concern if a
62:10 pharmacy has got something 12 to
62:11 15 percent or more of its total sales are
62:12 Oxycodone, why is that a concern?

**62:15 - 62:24**   **Hazewski, Edward 10-25-2018 (00:00:27)**   **HE05.18**

62:15 THE WITNESS:  It's a concern

| Page/Line | Source | ID |
|---|---|---|

**HE05-CT2 Edward Hazewski - Plaintiffs' Submission**

62:16 because, again, Oxycodone is at
62:17 high risk for potential diversion.
62:18 And a customer dispensing larger
62:19 quantities is cause to ask further
62:20 questions as to why they are
62:21 following -- you know, following
62:22 that particular business model.
62:23 There may be explanations.
62:24 There may not.

**63:11 - 64:1**   **Hazewski, Edward 10-25-2018 (00:00:49)**   **HE05.19**

63:11   Q. Do you recall any reasons
63:12 that any pharmacy might have provided to
63:13 you for having that ratio of Oxycodone
63:14 to -- as compared to their total number
63:15 of prescriptions?
63:16   A. Yes.
63:17   Q. Can you provide some of the
63:18 reasons you recall?
63:19   A. Well, the -- probably the
63:20 primary reason is they are servicing a
63:21 demographic usually classified as pain
63:22 management that -- I'm not a doctor, but
63:23 I -- I'm assuming the Oxycodone is
63:24 generally a regimen that pain doctors
64:1 would prescribe.

**66:23 - 67:3**   **Hazewski, Edward 10-25-2018 (00:00:14)**   **HE05.20**

66:23   Q. At any time during your
66:24 tenure at AmerisourceBergen, did the
67:1 company ever examine the legitimacy of
67:2 physicians as part of its diversion
67:3 control functions?

**67:6 - 67:11**   **Hazewski, Edward 10-25-2018 (00:00:13)**   **HE05.21**

67:6 THE WITNESS:  We would
67:7 request information from customers
67:8 concerning their top prescribing
67:9 physicians and check available
67:10 public records.  But beyond that,
67:11 no.

**69:16 - 70:1**   **Hazewski, Edward 10-25-2018 (00:00:19)**   **HE05.22**

69:16   Q. Let's go back to Exhibit 2.

| HE05-CT2 Edward Hazewski - Plaintiffs' Submission | | |
| --- | --- | --- |
| **Page/Line** | **Source** | **ID** |

69:17 We've got the slide that I was going to
69:18 ask you about up in front of you.
69:19 Another red flag of diversion is
69:20 dispensing a high percentage of oxycodone
69:21 30-milligram prescriptions versus all
69:22 other oxycodone strengths being
69:23 dispensed.
69:24 Do you see that?
70:1 You just had it, right

**70:2 - 70:12**   **Hazewski, Edward 10-25-2018 (00:00:32)**   **HE05.92**

70:2 there, with your left hand.  Keep going.
70:3   A. Gotcha.
70:4   Q. One more.  There you go.
70:5   A. Yes, I see it.
70:6   Q. Okay.  Why is that a red
70:7 flag of diversion.
70:8   A. For reasons that are unclear
70:9 to me, that particular strength of
70:10 oxycodone seemed to be considered to be
70:11 more highly abused than other -- other
70:12 strengths of the same product.

**70:22 - 71:3**   **Hazewski, Edward 10-25-2018 (00:00:21)**   **HE05.23**

70:22   Q. And why would it be a
70:23 concern if a pharmacy was dispensing more
70:24 of this than other types of oxycodone?
71:1   A. Well, knowing that it's more
71:2 prone to abuse, that would become a
71:3 concern for -- for us.

**71:17 - 71:23**   **Hazewski, Edward 10-25-2018 (00:00:16)**   **HE05.94**

71:17 Have you heard of the idea
71:18 that people would travel to places like
71:19 Florida and bring pills back into other
71:20 areas like West Virginia and Ohio, among
71:21 other states?
71:22   A. I've heard of that.
71:23   Q. Where did you hear that?

**71:24 - 72:10**   **Hazewski, Edward 10-25-2018 (00:00:32)**   **HE05.95**

71:24   A. I can't -- I couldn't say
72:1 who specifically I heard it from.  But it
72:2 was generally discussed information in

| | HE05-CT2 Edward Hazewski - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

72:3 the industry.

72:4   Q. When do you believe was the

72:5 first time you heard that?

72:6   A. My best recollection would

72:7 have probably been when I took -- became

72:8 manager of the diversion control team.

72:9   Q. When was that?

72:10   A. 2008.

**72:11 - 74:2**   **Hazewski, Edward 10-25-2018 (00:02:11)**                          **HE05.93**

72:11   Q. So looking at this slide --

72:12 I know we're going out of order, but it

72:13 was relevant to the area that we were

72:14 discussing.  Why is dispensing

72:15 prescriptions to patients or from

72:16 physicians not from the local area a red

72:17 flag?

72:18   A. Well, it suggests that they

72:19 can't get the prescriptions they want

72:20 locally, so they branch out, would be my

72:21 best guess.

72:22   Q. Right.  That the idea that

72:23 someone who has a legitimate medical need

72:24 for a prescription probably wouldn't be

73:1 driving out of the area to get their

73:2 prescription, correct?

73:3   A. I would agree with that.

73:4   Q. Let's go back to, a few

73:5 pages earlier, this page with the money

73:6 and the pills on it.  The other way.  The

73:7 other way, towards the beginning.

73:8 So you see another red flag

73:9 is accepting an unusually large

73:10 percentage of cash transactions for

73:11 prescriptions.

73:12 Do you see that?

73:13   A. I do.

73:14   Q. Why is that a red flag of

73:15 diversion?

73:16   A. Cash payments were generally

73:17 looked at as being subject to trying to

| | | |
|---|---|---|
| **HE05-CT2 Edward Hazewski - Plaintiffs' Submission** | | |
| **Page/Line** | **Source** | **ID** |

73:18 determine more information on those
73:19 transactions because of not being able to
73:20 track that information as you would
73:21 that's being paid by a third-party payor.
73:22   Q. Is it also the idea that
73:23 again a legitimate prescription, not
73:24 always but most likely, would have some
74:1 sort of insurance coverage associated
74:2 with it?

74:5 - 74:5 **Hazewski, Edward 10-25-2018 (00:00:01)**   HE05.25

74:5 THE WITNESS:  Yes.

77:24 - 77:24 **Hazewski, Edward 10-25-2018 (00:00:03)**   HE05.97

77:24   Q. Let's go to this slide here.

78:1 - 78:14 **Hazewski, Edward 10-25-2018 (00:00:39)**   HE05.96

78:1 You're there.  It says, "Dispensing
78:2 controlled substance cocktails consisting
78:3 of multiple prescriptions for oxycodone,
78:4 Xanax and Soma for a single patient."
78:5 Do you see that?
78:6   A. Yes, I do.
78:7   Q. Why is that a red flag of
78:8 diversion?
78:9   A. Okay.  Not being a
78:10 pharmacist or a doctor, it's my lay
78:11 understanding that cocktails similar to
78:12 what are described in this slide may not
78:13 conform to the medical -- a legitimate
78:14 medical purpose.

79:24 - 80:10 **Hazewski, Edward 10-25-2018 (00:00:27)**   HE05.27

79:24   Q. Have you heard of "The Holy
80:1 Trinity"?
80:2   A. I have.
80:3   Q. What is that?
80:4   A. A combination of an opioid,
80:5 a benzodiazepine, and a muscle relaxant
80:6 prescribed together to one patient.
80:7   Q. Is that something of
80:8 potential concern?
80:9   A. It is of potential concern,
80:10 yes.

| HE05-CT2 Edward Hazewski - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| 112:22 - 113:8 | **Hazewski, Edward 10-25-2018 (00:00:35)** | HE05.28 |
| | 112:22   Q. Have you heard of the idea | |
| | 112:23 of a threshold? | |
| | 112:24   A. Yes. | |
| | 113:1   Q. What's a threshold? | |
| | 113:2   A. A threshold is an internally | |
| | 113:3 generated number that is going to trigger | |
| | 113:4 further review of a customer's order. | |
| | 113:5   Q. Did AmerisourceBergen use | |
| | 113:6 thresholds as part of its order | |
| | 113:7 monitoring program? | |
| | 113:8   A. Yes. | |
| 116:21 - 117:10 | **Hazewski, Edward 10-25-2018 (00:00:29)** | HE05.29 |
| | 116:21   Q. Were customers informed of | |
| | 116:22 what their thresholds were? | |
| | 116:23   A. It was not our policy to | |
| | 116:24 tell customers their thresholds. | |
| | 117:1   Q. Do you know why it was your | |
| | 117:2 policy not to tell your customers their | |
| | 117:3 thresholds? | |
| | 117:4   A. Well, it would give the | |
| | 117:5 customer the opportunity to try to | |
| | 117:6 manipulate the system to their advantage. | |
| | 117:7   Q. And you would not want | |
| | 117:8 customers to manipulate the system to | |
| | 117:9 their advantage, correct? | |
| | 117:10   A. Correct. | |
| 123:14 - 123:16 | **Hazewski, Edward 10-25-2018 (00:00:13)** | HE05.30 |
| | 123:14   Q. I'm going to hand you two | |
| | 123:15 exhibits, what's marked as Exhibit 6 and | |
| | 123:16 Exhibit 7. | |
| 123:17 - 123:22 | **Hazewski, Edward 10-25-2018 (00:00:31)** | HE05.89 |
| | 123:17 For the record, Exhibit 6 is | |
| | 123:18 a one-page e-mail Bates labeled | |
| | 123:19 ABDCMDL00282490. | |
| | 123:20 And Exhibit 7 is a document | |
| | 123:21 that was attached to that, was produced | |
| | 123:22 in native, Bates labeled ABDCMDL00282491. | |
| 124:2 - 125:13 | **Hazewski, Edward 10-25-2018 (00:01:33)** | HE05.31 |
| | 124:2   Q. Do you recall sending | |

| HE05-CT2 Edward Hazewski - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

124:3 e-mails to Walgreens people?

124:4  A. Yes.

124:5  Q. Okay.  This is an e-mail

124:6 dated April 8, 2014, from you to a whole

124:7 host of people at Walgreens.  Do you see

124:8 that?

124:9  A. Yes.

124:10  Q. Okay.  And you say, "Team

124:11 WAG, find attached some data that I

124:12 believe could be the basis for part of

124:13 our discussion.  Briefly, the first tab

124:14 is all Walgreens locations that had

124:15 Schedule II controlled substance order

124:16 lines flagged by the order monitoring

124:17 program, sorted largest (most lines) to

124:18 smallest.  We can discuss further

124:19 tomorrow."

124:20 Do you see that?

124:21  A. Yes.

124:22  Q. Do you agree that you sent

124:23 them the attached spreadsheet?

124:24  A. Yes.

125:1  Q. If you look at that

125:2 spreadsheet, among, in addition to

125:3 disclosing the information that you

125:4 discuss in your e-mail.  If you look, one

125:5 of the columns is the threshold.

125:6 Do you see that?

125:7  A. Yes.

125:8  Q. And then it lists the

125:9 threshold for each location.  Do you see

125:10 that?

125:11  A. Yes.

125:12  Q. Is that correct?

125:13  A. That's correct.

**125:14 - 126:19**  **Hazewski, Edward 10-25-2018 (00:01:45)**     **HE05.32**

125:14  Q. If it was against the

125:15 company's policy and the DEA told you not

125:16 to share thresholds, why were you sending

125:17 them to Walgreens?

| HE05-CT2 Edward Hazewski - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

125:18   A. Well, the information that
125:19 was sent, and I believe the basis for
125:20 this message, was a request received from
125:21 Walgreens' pharmacy integrity unit, which
125:22 that unit are the people who are listed
125:23 on this e-mail.
125:24 Their pharmacy integrity
126:1 group are their version of our diversion
126:2 control team.  So they monitored their
126:3 internal customer orders.  And we worked
126:4 on a regular basis hand in hand with that
126:5 group with the -- obviously, the goal
126:6 jointly to help monitor the customer
126:7 orders generated by their stores.
126:8 They had made a request at
126:9 some point that orders submitted by their
126:10 stores that breach a threshold just be
126:11 canceled and not reviewed any further,
126:12 that they would not like those orders to
126:13 be filled.
126:14 So this -- I can't say this
126:15 for certain.  But I believe the sending
126:16 of this information was in furtherance of
126:17 their request and our joint efforts to
126:18 work together to try to, you know,
126:19 achieve our goals.

| 128:1 - 128:6 | **Hazewski, Edward 10-25-2018 (00:00:31)** | **HE05.33** |

128:1   Q. I'm handing you what's
128:2 marked as Exhibit 8.  For the record,
128:3 it's multiple page e-mail Bates-labeled
128:4 ABDCMDL00280818 through 822.  Take a
128:5 minute to review that and let me know
128:6 when you're done.

| 138:9 - 138:20 | **Hazewski, Edward 10-25-2018 (00:00:40)** | **HE05.34** |

138:9   Q. The next sentence here --
138:10 we're on Page 280820 -- Steve is saying
138:11 to Chris:  "I'm trying to think of
138:12 everything we can do to prevent having a
138:13 bunch of orders reported to DEA and
138:14 held."

| Page/Line | Source | ID |
|---|---|---|

| | 138:15 Do you see that? | |
| | 138:16   A. Yes. | |
| | 138:17   Q. Do you know why Steve is | |
| | 138:18 trying to implement practices at | |
| | 138:19 AmerisourceBergen to avoid reporting | |
| | 138:20 Walgreens orders to DEA and holding them? | |
| 138:23 - 138:24 | **Hazewski, Edward 10-25-2018 (00:00:02)** | HE05.35 |
| | 138:23 THE WITNESS:  I don't know | |
| | 138:24 why he made that statement. | |
| 139:12 - 139:15 | **Hazewski, Edward 10-25-2018 (00:00:09)** | HE05.36 |
| | 139:12   Q. Did you ever speak up upon | |
| | 139:13 receiving this e-mail and say, why, why | |
| | 139:14 are we going to try to avoid reporting | |
| | 139:15 orders to DEA for Walgreens? | |
| 139:19 - 139:20 | **Hazewski, Edward 10-25-2018 (00:00:02)** | HE05.37 |
| | 139:19 THE WITNESS:  Not to my | |
| | 139:20 recollection. | |
| 141:8 - 141:14 | **Hazewski, Edward 10-25-2018 (00:00:22)** | HE05.38 |
| | 141:8   Q. You see here the next | |
| | 141:9 sentence on that same page, 280820, it | |
| | 141:10 says:  "The more data Walgreens can share | |
| | 141:11 with us the better off we will all be." | |
| | 141:12   A. Yes, I see that. | |
| | 141:13   Q. Do you have an understanding | |
| | 141:14 about what that's about? | |
| 141:18 - 142:13 | **Hazewski, Edward 10-25-2018 (00:00:52)** | HE05.39 |
| | 141:18 THE WITNESS:  No, I can only | |
| | 141:19 suggest that it -- it's just -- | |
| | 141:20 obviously onboarding any customer, | |
| | 141:21 we want to know as much about -- | |
| | 141:22 in fact, we're mandated to know | |
| | 141:23 your customer through our due | |
| | 141:24 diligence program.  And I see this | |
| | 142:1 as being part of that. | |
| | 142:2 BY MR. PIFKO: | |
| | 142:3   Q. When you talk about being | |
| | 142:4 mandated to know your customer, what are | |
| | 142:5 you supposed to know about your customer | |
| | 142:6 through that mandate? | |
| | 142:7   A. Everything there is to know | |

| | HE05-CT2 Edward Hazewski - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

142:8 about a pharmacy customer, including
142:9 their business model, who they service,
142:10 obviously their license numbers, their --
142:11 every -- every facet of what you would
142:12 expect to know from a business partner,
142:13 you try to gather through that process.

**146:21 - 146:23**   **Hazewski, Edward 10-25-2018 (00:00:07)**   HE05.99

146:21   Q. I've handed you what's
146:22 marked as Exhibit 9.  Do you see it's a
146:23 press release from the United States

**146:24 - 147:9**   **Hazewski, Edward 10-25-2018 (00:00:20)**   HE05.98

146:24 Attorney's Office for the Southern
147:1 District of Florida announcing Walgreens'
147:2 payment of an $80 million fine for civil
147:3 penalties under the Controlled Substance
147:4 Act?
147:5 Do you see that?
147:6   A. Yes.
147:7   Q. It's dated June 11, 2013.
147:8 Do you see that?
147:9   A. Yes.

**155:4 - 155:13**   **Hazewski, Edward 10-25-2018 (00:00:16)**   HE05.41

155:4 Okay.  We're on the second
155:5 page here.
155:6 It says:  "First, the
155:7 Jupiter distribution center failed to
155:8 comply with DEA regulations that required
155:9 it to report to the DEA suspicious
155:10 prescription drug orders that it received
155:11 from Walgreens' retail pharmacies."
155:12 Do you see that?
155:13   A. Yes, I do.

**155:20 - 155:22**   **Hazewski, Edward 10-25-2018 (00:00:04)**   HE05.42

155:20   Q. Were you aware that the
155:21 Jupiter distribution center failed to
155:22 comply with DEA regulations?

**156:1 - 156:3**   **Hazewski, Edward 10-25-2018 (00:00:06)**   HE05.43

156:1 THE WITNESS:  In or around
156:2 the time this press release was
156:3 released, I became aware of it.

## HE05-CT2 Edward Hazewski - Plaintiffs' Submission

| Page/Line | Source | ID |
|---|---|---|
| 156:5 - 156:8 | **Hazewski, Edward 10-25-2018 (00:00:09)** | HE05.44 |
| | 156:5   Q. How did you become aware of | |
| | 156:6 it? | |
| | 156:7   A. Through reading similar | |
| | 156:8 press releases from various agencies. | |
| 156:23 - 157:2 | **Hazewski, Edward 10-25-2018 (00:00:08)** | HE05.45 |
| | 156:23   Q. All I'm asking you is if you | |
| | 156:24 attempted to obtain information that | |
| | 157:1 would allow you to know if Walgreens was | |
| | 157:2 complying with DEA regulations. | |
| 157:5 - 157:6 | **Hazewski, Edward 10-25-2018 (00:00:04)** | HE05.46 |
| | 157:5 THE WITNESS:  I have no | |
| | 157:6 specific recollection of that. | |
| 157:8 - 157:24 | **Hazewski, Edward 10-25-2018 (00:00:35)** | HE05.47 |
| | 157:8   Q. Let's go to the next | |
| | 157:9 paragraph, next full paragraph.  It says | |
| | 157:10 "second" on there. | |
| | 157:11 "Second, the six retail | |
| | 157:12 pharmacies in Florida that received the | |
| | 157:13 suspicious drug shipments from the | |
| | 157:14 Jupiter distribution center in turn | |
| | 157:15 filled customer prescriptions that they | |
| | 157:16 knew or should have known were not for | |
| | 157:17 legitimate medical use." | |
| | 157:18 Do you see that? | |
| | 157:19   A. Yes. | |
| | 157:20   Q. Were you aware that | |
| | 157:21 Walgreens was sending prescriptions to | |
| | 157:22 pharmacies who were then filling | |
| | 157:23 prescriptions that they knew were not for | |
| | 157:24 legitimate medical use? | |
| 158:6 - 158:9 | **Hazewski, Edward 10-25-2018 (00:00:06)** | HE05.48 |
| | 158:6 THE WITNESS:  At some point | |
| | 158:7 I became aware from reading the | |
| | 158:8 press releases concerning this | |
| | 158:9 matter. | |
| 158:11 - 158:16 | **Hazewski, Edward 10-25-2018 (00:00:11)** | HE05.49 |
| | 158:11   Q. In onboarding Walgreens as a | |
| | 158:12 customer, did you make any effort to | |
| | 158:13 learn about whether they were -- its | |

| HE05-CT2 Edward Hazewski - Plaintiffs' Submission | | |
| --- | --- | --- |
| **Page/Line** | **Source** | **ID** |

158:14 pharmacies were filling prescriptions
158:15 that they knew or should have known were
158:16 not for legitimate medical use?

**158:19 - 158:22**   **Hazewski, Edward 10-25-2018 (00:00:06)**   **HE05.50**

158:19 THE WITNESS:  I don't recall
158:20 any specific conversations
158:21 concerning that matter with
158:22 Walgreens.

**160:8 - 160:11**   **Hazewski, Edward 10-25-2018 (00:00:20)**   **HE05.51**

160:8   Q. For the record, Exhibit
160:9 Number 10 is Bates labeled
160:10 ABDCMDL00278509 through 00278513.
160:11 It is a series of e-mails.

**161:3 - 161:10**   **Hazewski, Edward 10-25-2018 (00:00:19)**   **HE05.52**

161:3   Q. Okay.  The subject is C2
161:4 hyper-accelerated Perrysburg.  Do you see
161:5 that?
161:6   A. I do.
161:7   Q. Okay.  At the very bottom of
161:8 this page it's an e-mail from John
161:9 Trippe.  Do you know who that is?
161:10   A. I know John Trippe, yes.

**161:19 - 161:22**   **Hazewski, Edward 10-25-2018 (00:00:10)**   **HE05.53**

161:19   Q. So he writes to -- a set of
161:20 e-mails that's called The Walgreens
161:21 General Distribution.  Do you see that?
161:22   A. Yes.

**162:4 - 162:18**   **Hazewski, Edward 10-25-2018 (00:00:35)**   **HE05.54**

162:4   Q. Okay.  Well, anyway he
162:5 writes to that group.  He says, "So what
162:6 would you call the Schedule II controlled
162:7 substances accelerated Walgreens
162:8 Perrysburg plan?  The C2
162:9 hyper-accelerated Perrysburg plan.  You
162:10 got it.  Walgreens called late yesterday
162:11 afternoon and wants us to take on the
162:12 attached list of 225 Walgreens accounts
162:13 next week."
162:14 Do you see that?
162:15   A. Yes.

| HE05-CT2 Edward Hazewski - Plaintiffs' Submission | | |
| --- | --- | --- |
| **Page/Line** | **Source** | **ID** |

| | 162:16   Q. Were you aware that the | |
| | 162:17 company was rushing to take on these 225 | |
| | 162:18 Walgreens accounts? | |
| 162:21 - 162:22 | **Hazewski, Edward 10-25-2018 (00:00:02)** | HE05.55 |
| | 162:21 THE WITNESS:  I was not | |
| | 162:22 aware of this communication, no. | |
| 162:24 - 163:3 | **Hazewski, Edward 10-25-2018 (00:00:08)** | HE05.56 |
| | 162:24   Q. Okay.  Well, you are -- you | |
| | 163:1 are -- through being copied on the upper | |
| | 163:2 e-mail, you did receive this, correct? | |
| | 163:3   A. Yes. | |
| 164:4 - 164:18 | **Hazewski, Edward 10-25-2018 (00:00:36)** | HE05.57 |
| | 164:4   Q. Okay.  So Steve says, "I'm | |
| | 164:5 concerned that these are the high risk | |
| | 164:6 accounts that Cardinal Health wants to | |
| | 164:7 dump ASAP, so I want to make sure that we | |
| | 164:8 have them sized properly and get the | |
| | 164:9 correct thresholds set." | |
| | 164:10 Do you see that? | |
| | 164:11   A. I do. | |
| | 164:12   Q. And then that's when Chris | |
| | 164:13 also chimes in and copies you. | |
| | 164:14 "We should also put the | |
| | 164:15 sales staff on alert in the area where | |
| | 164:16 these stores are in case we have to have | |
| | 164:17 them go in and do a 590." | |
| | 164:18 Do you see that? | |
| 165:2 - 165:2 | **Hazewski, Edward 10-25-2018 (00:00:00)** | HE05.102 |
| | 165:2   A. All right. | |
| 167:8 - 167:17 | **Hazewski, Edward 10-25-2018 (00:00:23)** | HE05.58 |
| | 167:8   Q. Okay.  So do you recall | |
| | 167:9 there being a discussion about concerns | |
| | 167:10 that these were accounts that Cardinal | |
| | 167:11 Health didn't want because they were high | |
| | 167:12 risk? | |
| | 167:13   A. No discussions that I | |
| | 167:14 participated in. | |
| | 167:15   Q. Okay.  You were a recipient | |
| | 167:16 of this e-mail, correct? | |
| | 167:17   A. Yes. | |

| HE05-CT2 Edward Hazewski - Plaintiffs' Submission | | |
| --- | --- | --- |
| **Page/Line** | **Source** | **ID** |
| 168:5 - 168:9 | **Hazewski, Edward 10-25-2018 (00:00:11)** | **HE05.59** |
| | 168:5   Q. When you received this | |
| | 168:6 e-mail, did you do any investigation into | |
| | 168:7 these accounts to determine what Steve | |
| | 168:8 was talking about, about these being high | |
| | 168:9 risk accounts? | |
| 168:12 - 168:12 | **Hazewski, Edward 10-25-2018 (00:00:02)** | **HE05.60** |
| | 168:12 THE WITNESS:  I did not. | |
| 169:16 - 169:23 | **Hazewski, Edward 10-25-2018 (00:00:15)** | **HE05.61** |
| | 169:16   Q. He says, "I'm | |
| | 169:17 concerned that these are the" -- "the | |
| | 169:18 high risk accounts that Cardinal Health | |
| | 169:19 wants to dump." | |
| | 169:20 Do you have any idea about | |
| | 169:21 why Steve might have known that there | |
| | 169:22 were high risk accounts that Cardinal | |
| | 169:23 wanted to dump? | |
| 170:2 - 170:2 | **Hazewski, Edward 10-25-2018 (00:00:01)** | **HE05.62** |
| | 170:2 THE WITNESS:  I do not know. | |
| 172:3 - 172:6 | **Hazewski, Edward 10-25-2018 (00:00:07)** | **HE05.63** |
| | 172:3   Q. So you never spoke with | |
| | 172:4 anyone at Cardinal about high risk | |
| | 172:5 Walgreens accounts? | |
| | 172:6   A. I did not. | |
| 172:16 - 172:24 | **Hazewski, Edward 10-25-2018 (00:00:24)** | **HE05.64** |
| | 172:16   Q. If you go to the first page | |
| | 172:17 of Exhibit 10, Steve talks about reaching | |
| | 172:18 out to Reardon on the bottom. | |
| | 172:19 Do you see that? | |
| | 172:20   A. Yes. | |
| | 172:21   Q. Do you remember him ever | |
| | 172:22 talking about reaching out to Steve | |
| | 172:23 Reardon? | |
| | 172:24   A. No, I don't. | |
| 214:12 - 214:14 | **Hazewski, Edward 10-25-2018 (00:00:07)** | **HE05.100** |
| | 214:12   Q. You agree a 300 percent over | |
| | 214:13 the average is a fair amount of wiggle | |
| | 214:14 room in the thresholds? | |
| 214:17 - 214:19 | **Hazewski, Edward 10-25-2018 (00:00:05)** | **HE05.101** |
| | 214:17 THE WITNESS:  That's the | |

| | HE05-CT2 Edward Hazewski - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

214:18 manner in which the system was
214:19 built.  So yes, I agree with that.

| 235:14 - 235:15 | **Hazewski, Edward 10-25-2018 (00:00:04)** | **HE05.67** |

235:14   Q. I'm handing you what I've
235:15 marked as Exhibits 15 and 16.

| 235:16 - 235:21 | **Hazewski, Edward 10-25-2018 (00:00:27)** | **HE05.90** |

235:16 For the record, 15 is a
235:17 one-page e-mail attaching Exhibit 16.
235:18 It's -- 15 is Bates labeled
235:19 ABDCMDL00279103, and 16 is
235:20 ABDCMDL00279104 through 106 -- or through
235:21 107.

| 236:4 - 236:24 | **Hazewski, Edward 10-25-2018 (00:00:49)** | **HE05.68** |

236:4   Q. Exhibit 15 has an e-mail
236:5 from you, dated November 8, 2013, to
236:6 Steve Mays.  It says:  "This is the
236:7 document I put together this week."
236:8 Then Steve forwards it to
236:9 Chris Zimmerman and copies you.  And
236:10 says, "Chris, here is Ed's other list
236:11 that you asked for last week."
236:12 Do you see that?
236:13   A. I do.
236:14   Q. Okay.  And it attaches a
236:15 document called Diversion Control
236:16 Program, a Word document.  Do you see
236:17 that?
236:18   A. Yes.
236:19   Q. Okay.  Do you know what this
236:20 diversion control program document is?
236:21   A. It appears to be an
236:22 explanation of the day-to-day functions
236:23 of someone assigned to the diversion
236:24 control team.

| 237:5 - 237:10 | **Hazewski, Edward 10-25-2018 (00:00:11)** | **HE05.69** |

237:5   Q. The discussion about the
237:6 diversion control program here, do you
237:7 believe this is -- accurately describes
237:8 attributes of the program as of that
237:9 date?

| Page/Line | Source | ID |
|---|---|---|
| | HE05-CT2 Edward Hazewski - Plaintiffs' Submission | |

237:10   A. Yes.

**239:2 - 239:14**     **Hazewski, Edward 10-25-2018 (00:00:34)**     **HE05.70**

239:2   Q. The third bullet point says,

239:3 "Verify that a current (within the last

239:4 three years) CSRA Form 590 has been

239:5 completed and is on file."

239:6 Do you see that?

239:7   A. Yes.

239:8   Q. What does that mean?

239:9   A. Well, it means that we are

239:10 to verify that within the last three

239:11 years, a due diligence investigation had

239:12 been completed or the Form 590 which

239:13 is -- furthers that investigation on that

239:14 customer.

**240:5 - 240:9**     **Hazewski, Edward 10-25-2018 (00:00:07)**     **HE05.71**

240:5   Q. So it's the company's policy

240:6 that that was one of the things that they

240:7 were supposed to do when reviewing an

240:8 order?

240:9   A. Yes.

**241:24 - 242:6**     **Hazewski, Edward 10-25-2018 (00:00:11)**     **HE05.72**

241:24   Q. It says -- the third bullet

242:1 point, "As part of our due diligence

242:2 process, we routinely request

242:3 de-identified prescribing data from our

242:4 pharmacy customers."

242:5 Do you see that?

242:6   A. Yes.

**242:15 - 242:21**     **Hazewski, Edward 10-25-2018 (00:00:12)**     **HE05.73**

242:15   A. Oh, okay.  I don't know that

242:16 I would have used the word "routinely."

242:17 But it occurred, yes, that we would

242:18 request such information.

242:19   Q. During your due diligence

242:20 process?

242:21   A. Yes.

**243:15 - 244:9**     **Hazewski, Edward 10-25-2018 (00:00:48)**     **HE05.74**

243:15   Q. Well, let's just clarify.

243:16 Why would you request de-identified

| HE05-CT2 Edward Hazewski - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| | 243:17 prescribing data from your pharmacy | |
| | 243:18 customers in connection with your due | |
| | 243:19 diligence process? | |
| | 243:20   A. If their ordering quantities | |
| | 243:21 were, you know, significant, we wanted to | |
| | 243:22 make certain that the products they were | |
| | 243:23 dispensing were being done so in a | |
| | 243:24 legitimate manner. | |
| | 244:1   Q. Where would you keep that | |
| | 244:2 information when you received it? | |
| | 244:3   A. The de-identified data? | |
| | 244:4   Q. Yeah. | |
| | 244:5   A. In the file. | |
| | 244:6   Q. In the due diligence file? | |
| | 244:7   A. Due diligence file. | |
| | 244:8   Q. For the customer? | |
| | 244:9   A. Correct. | |
| 245:8 - 245:18 | **Hazewski, Edward 10-25-2018 (00:00:23)** | **HE05.75** |
| | 245:8   Q. Two more bullet | |
| | 245:9 points down, "The analysis identifies | |
| | 245:10 prescribers that are writing | |
| | 245:11 prescriptions of a questionable nature, | |
| | 245:12 e.g., drug cocktails, IR narcotics minus | |
| | 245:13 a long-acting opioid, and a high volume | |
| | 245:14 of the same prescription for every | |
| | 245:15 patient." | |
| | 245:16 Do you see that? | |
| | 245:17   A. Yes, I do. | |
| | 245:18   Q. What does that mean? | |
| 245:21 - 246:4 | **Hazewski, Edward 10-25-2018 (00:00:15)** | **HE05.76** |
| | 245:21 THE WITNESS:  What it means | |
| | 245:22 is the analysis of the | |
| | 245:23 de-identified data includes | |
| | 245:24 looking for those particular | |
| | 246:1 points that you just read off. | |
| | 246:2 BY MR. PIFKO: | |
| | 246:3   Q. And why would you look at | |
| | 246:4 those? | |
| 246:7 - 246:14 | **Hazewski, Edward 10-25-2018 (00:00:23)** | **HE05.77** |
| | 246:7 THE WITNESS:  We would look | |

| Page/Line | Source | ID |
|---|---|---|
| | 246:8 at those, again, triggered by what | |
| | 246:9 might perhaps be ordering that | |
| | 246:10 causes us concern, or just again, | |
| | 246:11 to verify that the products are | |
| | 246:12 being dispensed in a legitimate | |
| | 246:13 fashion for legitimate medical | |
| | 246:14 purpose. | |
| 246:16 - 246:24 | **Hazewski, Edward 10-25-2018 (00:00:14)** | **HE05.78** |
| | 246:16   Q. "The analysis may also | |
| | 246:17 identify unnamed patients that are doctor | |
| | 246:18 shopping in addition to patients | |
| | 246:19 traveling considerable distance to fill a | |
| | 246:20 prescription." | |
| | 246:21 Do you see that? | |
| | 246:22   A. Yes. | |
| | 246:23   Q. That's a true statement | |
| | 246:24 about the analysis? | |
| 247:3 - 247:4 | **Hazewski, Edward 10-25-2018 (00:00:03)** | **HE05.79** |
| | 247:3 THE WITNESS:  It's a | |
| | 247:4 component of the analysis, yes. | |
| 247:13 - 247:14 | **Hazewski, Edward 10-25-2018 (00:00:05)** | **HE05.80** |
| | 247:13   Q. Why would they be looking at | |
| | 247:14 whether a patient is doctor shopping? | |
| 247:19 - 248:2 | **Hazewski, Edward 10-25-2018 (00:00:18)** | **HE05.81** |
| | 247:19 THE WITNESS:  We want to | |
| | 247:20 make certain the products that | |
| | 247:21 we're dispensing -- or | |
| | 247:22 distributing to our pharmacy | |
| | 247:23 customers, once it leaves our | |
| | 247:24 purview, that it's being dispensed | |
| | 248:1 by the pharmacy in a legitimate | |
| | 248:2 manner. | |
| 248:17 - 249:23 | **Hazewski, Edward 10-25-2018 (00:01:49)** | **HE05.82** |
| | 248:17   Q. Let's look at Item Number 7, | |
| | 248:18 projects.  What's the low volume account | |
| | 248:19 project? | |
| | 248:20   A. We routinely reviewed, as I | |
| | 248:21 said a few minutes ago, reports that | |
| | 248:22 would generate.  One was a report which | |
| | 248:23 indicated percentage of controls versus | |

| | | |
|---|---|---|
| **HE05-CT2 Edward Hazewski - Plaintiffs' Submission** | | |
| **Page/Line** | **Source** | **ID** |

248:24 noncontrols.  We were trying to isolate
249:1 in the low volume project accounts that
249:2 were purchasing little -- little product,
249:3 and the product that they were was high
249:4 risk controlled substances.  And it was a
249:5 pattern that we wanted to try to
249:6 eliminate.
249:7   Q. Why did you want to try to
249:8 eliminate that?
249:9   A. We didn't want to be
249:10 sourcing high risk controls to the
249:11 exclusion of all of the other maintenance
249:12 products that go along with it.
249:13   Q. And why is that?
249:14   A. We're not -- we're in the
249:15 business of being a primary wholesaler.
249:16 That business was not capturing what we
249:17 considered to be data that would indicate
249:18 them as a primary customer.
249:19   Q. When you talk about primary
249:20 and secondary, you mean that there's the
249:21 potential for that customer buying other
249:22 materials from another distributor and
249:23 then buying controls from you?

| 250:3 - 250:3 | **Hazewski, Edward 10-25-2018 (00:00:00)** | **HE05.83** |

250:3 THE WITNESS:  Yes.

| 250:5 - 251:6 | **Hazewski, Edward 10-25-2018 (00:01:03)** | **HE05.84** |

250:5   Q. And that's not a practice
250:6 that you want to occur?
250:7   A. Correct.
250:8   Q. Third bullet point, "IMS
250:9 data pilot."
250:10 Do you see that?
250:11   A. I do.
250:12   Q. Do you know what that's
250:13 about?
250:14   A. I have little experience
250:15 with IMS data.  But it's -- I don't know
250:16 how it would be explained in terms of how
250:17 the data is stored.  But it was

| HE05-CT2 Edward Hazewski - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

|  | 250:18 information that was not available unless | |
|  | 250:19 you subscribed to purchasing IMS data, | |
|  | 250:20 and it could provide information that | |
|  | 250:21 wasn't readily available on other | |
|  | 250:22 sources. | |
|  | 250:23   Q. At some point, did | |
|  | 250:24 AmerisourceBergen subscribe to purchase | |
|  | 251:1 IMS data? | |
|  | 251:2   A. My recollection is we did a | |
|  | 251:3 pilot project.  I don't know if we ever | |
|  | 251:4 purchased the service. | |
|  | 251:5   Q. What did you intend to use | |
|  | 251:6 that data for?  Do you know? | |
| 251:5 - 251:6 | **Hazewski, Edward 10-25-2018 (00:00:03)** | **HE05.85** |
|  | 251:5   Q. What did you intend to use | |
|  | 251:6 that data for?  Do you know? | |
| 251:9 - 251:10 | **Hazewski, Edward 10-25-2018 (00:00:03)** | **HE05.86** |
|  | 251:9 THE WITNESS:  Specifically I | |
|  | 251:10 don't know. | |

Plaintiffs Affirmative Designations   = 00:34:58
Defense Completeness Counters = 00:03:32
Our Completeness Counters = 00:00:44
**Total Time = 00:39:14**