**Designation Run Report**

# CT2 Jennifer Norris PLaintiff Submissions

---

**Norris, Jennifer 08-07-2018**

---

| | |
|---|---|
| **Plaintiff  Designations  01:32:47** | |
| **Defense Designations  00:01:16** | |
| **Defense Completeness Counters  00:10:05** | |
| **Plaintiff Counter Counters  00:01:07** | |

**Total Time  01:45:15**



| | NJ01--CT2 Jennifer Norris PLaintiff Submissions | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| | | |
|---|---|---|
| 14:8 - 15:1 | **Norris, Jennifer 08-07-2018 (00:00:33)** | NJ01-.1 |
| | 14:8  Q. Ma'am, please state your name for the | |
| | 14:9 record. | |
| | 14:10  A. Jennifer Robison Norris. | |
| | 14:11  Q. And, Ms. Norris, where are you currently | |
| | 14:12 employed? | |
| | 14:13  A. Cardinal Health. | |
| | 14:14  Q. And how long have you been at Cardinal | |
| | 14:15 Health? | |
| | 14:16  A. Eighteen years. | |
| | 14:17  Q. And what is your current position at | |
| | 14:18 Cardinal? | |
| | 14:19  A. I'm an attorney in the legal department. | |
| | 14:20  Q. Do you have any particular title? | |
| | 14:21  A. I do.  I'm vice president, associate | |
| | 14:22 general counsel, mergers and acquisitions. | |
| | 14:23  Q. I'm sorry.  You said mergers and | |
| | 14:24 acquisitions, right? | |
| | 15:1  A. Mm-hmm, and integration. | |
| 15:2 - 16:12 | **Norris, Jennifer 08-07-2018 (00:01:42)** | NJ01-.99 |
| | 15:2  Q. And how long have you held that title? | |
| | 15:3  A. I've been in that group -- my titles | |
| | 15:4 varied, but I've been in that group for | |
| | 15:5 approximately two years. | |
| | 15:6  Q. And that's the mergers and acquisitions | |
| | 15:7 and integrations group? | |
| | 15:8  A. Yes. | |
| | 15:9  Q. How about prior to that? | |
| | 15:10  A. Prior to that, I was still a vice | |
| | 15:11 president, associate general counsel, but I was in | |
| | 15:12 our commercial group supporting our pharmacy | |
| | 15:13 distribution business primarily. | |
| | 15:14  Q. When you say supporting pharmacy | |
| | 15:15 distribution, give me an understanding of what you | |
| | 15:16 would be doing in that role. | |
| | 15:17  A. My primary role was with acute care and | |
| | 15:18 alternate care customers, working on the customer | |
| | 15:19 facing agreements and issues that came up from | |
| | 15:20 time to time with those customers. | |
| | 15:21  Q. Okay.  And how about prior to that? | |

| Page/Line | Source | ID |
|---|---|---|

NJ01--CT2 Jennifer Norris PLaintiff Submissions

15:22   A. I've always been in that group.  Again,
15:23 my title has varied, and I've supported other
15:24 groups within Cardinal Health.  I supported
16:1 sourcing at one time.  We had a corporate sales
16:2 group, sold all of the products and services
16:3 within Cardinal Health that I supported.
16:4 I supported our specialty pharmaceutical
16:5 distribution business, our specialty services
16:6 business, the 3PL, the third-party logistics
16:7 business we have, as well as working on 340B and
16:8 other matters within pharmacy distribution.
16:9   Q. I've seen 340B before.  What's 340B?
16:10   A. It's a federally mandated essentially
16:11 drug discount program for certain types of
16:12 customers.

**16:13 - 16:16      Norris, Jennifer 08-07-2018 (00:00:08)**                    **NJ01-.2**

16:13   Q. Well, you have the pleasure or
16:14 the curse of being designated today as a 30(b)
16:15 witness.  Are you aware of that?
16:16   A. I am.

**17:2 - 17:8      Norris, Jennifer 08-07-2018 (00:00:15)**                    **NJ01-.3**

17:2   Q. Well, and just so everybody is on the
17:3 same page then, that means you've been designated
17:4 as the representative for Cardinal Health.
17:5 Because Cardinal Health can't speak on its own,
17:6 you're here to speak on their behalf on certain
17:7 subject matters.  Is that your understanding?
17:8   A. That is my understanding.

**17:12 - 17:17      Norris, Jennifer 08-07-2018 (00:00:24)**                    **NJ01-.5**

17:12   Q. And I'm going to attach as Exhibit 1 --
17:13 MR. FULLER:  And, Counsel, I'll just
17:14 hand everything to you, and you can take one and
17:15 pass the extras down.
17:16 And this is Norris 1 for the record, now
17:17 marked as Plaintiff's 1.

**19:2 - 19:4      Norris, Jennifer 08-07-2018 (00:00:09)**                    **NJ01-.6**

19:2   Q. Now, Norris Number 2, which is the
19:3 second 30(b) notice, will be marked as Plaintiff's
19:4 2 for the purposes of the deposition.

**20:19 - 21:13      Norris, Jennifer 08-07-2018 (00:00:52)**                    **NJ01-.7**

| NJ01--CT2 Jennifer Norris PLaintiff Submissions | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

20:19 Speaking on behalf of Cardinal, you're
20:20 in the business of distributing prescription
20:21 medications, as well as other things, correct?
20:22   A. Yes.
20:23   Q. And that also includes controlled
20:24 substances; is that right?
21:1   A. Yes.  Those are some of the prescription
21:2 medications that we distribute.
21:3   Q. And there are certain statutes and
21:4 regulations and rules that apply to you in
21:5 distributing those medications; is that fair?
21:6   A. Yes.
21:7   Q. And one of them is the Controlled
21:8 Substances Act; is that right?
21:9   A. Yes.
21:10   Q. And we'll spend a good part of our day
21:11 talking about the Controlled Substances Act and
21:12 its various portions and parts.

| | | |
|---|---|---|
| 21:15 - 21:15 | **Norris, Jennifer 08-07-2018 (00:00:03)** | **NJ01-.114** |

21:13 MR. FULLER:  I'm going to mark as
21:15 Plaintiff's Number 4, which is Norris Number 4.

| | | |
|---|---|---|
| 21:20 - 22:16 | **Norris, Jennifer 08-07-2018 (00:01:06)** | **NJ01-.115** |

21:20   Q. And you have that document in front of
21:21 you?
21:22   A. I do.
21:23   Q. Okay.  And I'll represent to you that
21:24 this is a portion of the Controlled Substances
22:1 Act, not the entire thing.  And if you look there,
22:2 it says "United States Code Annotated.  Title 21.
22:3 Chapter 13. Drug Abuse Prevention and Control."
22:4 Do you see that?
22:5   A. I do.
22:6   Q. And do you know that to be the portion
22:7 of the U.S. Code that contains the Controlled
22:8 Substances Act?
22:9   A. I believe so, yes.
22:10   Q. And this is Subchapter 1, Part A,
22:11 Introductory Provisions.
22:12 And have you seen this before?
22:13   A. I have.

| Page/Line | Source | ID |
|---|---|---|
| | 22:14   Q. Okay.  And you're aware that in Section | |
| | 22:15 801, Congress of the United States of America made | |
| | 22:16 certain declarations and findings; is that right? | |
| 22:18 - 22:21 | **Norris, Jennifer 08-07-2018 (00:00:06)** | NJ01-.8 |
| | 22:18   A. That's what the section says, | |
| | 22:19 "Congressional Findings and Declarations." | |
| | 22:20   Q. Okay.  Particularly related to | |
| | 22:21 controlled substances -- | |
| 22:23 - 22:23 | **Norris, Jennifer 08-07-2018 (00:00:00)** | NJ01-.9 |
| | 22:23   Q. -- is that true? | |
| 23:1 - 23:10 | **Norris, Jennifer 08-07-2018 (00:00:28)** | NJ01-.10 |
| | 23:1   A. It goes on to say, colon, "Controlled | |
| | 23:2 Substances." | |
| | 23:3   Q. Yes, ma'am.  And then it says, "Congress | |
| | 23:4 makes the following findings and declarations." | |
| | 23:5 And if you would, let's start with the | |
| | 23:6 first one and read that one aloud for us, please. | |
| | 23:7   A. "Many of the drugs included within this | |
| | 23:8 subchapter have a useful and legitimate medical | |
| | 23:9 purpose and are necessary to maintain the health | |
| | 23:10 and general welfare of the American people." | |
| 24:2 - 24:2 | **Norris, Jennifer 08-07-2018 (00:00:02)** | NJ01-.11 |
| | 24:2 Does Cardinal agree with this statement? | |
| 24:7 - 24:13 | **Norris, Jennifer 08-07-2018 (00:00:19)** | NJ01-.12 |
| | 24:7   A. In my personal capacity, I agree that's | |
| | 24:8 what the words say. | |
| | 24:9   Q. You also agree that controlled | |
| | 24:10 substances have legitimate medical purposes and | |
| | 24:11 are necessary to maintain the health and welfare | |
| | 24:12 of the American people? | |
| | 24:13   A. I agree that -- | |
| 24:15 - 25:2 | **Norris, Jennifer 08-07-2018 (00:00:36)** | NJ01-.13 |
| | 24:15   A. -- that was Congress' finding. | |
| | 24:16   Q. Okay.  And read aloud Number 2 for us, | |
| | 24:17 Congress' second finding of this Controlled | |
| | 24:18 Substances Act. | |
| | 24:19   A. "The illegal importation, manufacture, | |
| | 24:20 distribution, and possession and improper use of | |
| | 24:21 controlled substances have a substantial and | |
| | 24:22 detrimental effect on the health and general | |

NJ01--CT2 Jennifer Norris PLaintiff Submissions

| Page/Line | Source | ID |
|---|---|---|

**NJ01--CT2 Jennifer Norris PLaintiff Submissions**

24:23 welfare of the American people."

24:24   Q. Does Cardinal agree and accept that that

25:1 was the United States of America Congress' finding

25:2 related to controlled substances?

| | | |
|---|---|---|
| 25:4 - 25:5 | **Norris, Jennifer 08-07-2018 (00:00:03)** | NJ01-.116 |

25:4   A. I agree that that's what the finding

25:5 says.

| | | |
|---|---|---|
| 27:2 - 27:11 | **Norris, Jennifer 08-07-2018 (00:00:30)** | NJ01-.14 |

27:2 If you turn to the next page, page 2.

27:3 You see this is another section of the Controlled

27:4 Substances Act.  Do you see that at the top, Title

27:5 21, Chapter 13. Drug Abuse and Prevention --

27:6 excuse me -- Drug Abuse Prevention and Control?

27:7   A. I see that.

27:8   Q. Okay.  And it deals with the authority

27:9 to control standards and schedules.

27:10 Do you see that?

27:11   A. I do.

| | | |
|---|---|---|
| 28:7 - 28:15 | **Norris, Jennifer 08-07-2018 (00:00:21)** | NJ01-.15 |

28:7   Q.  Ms. Norris, Cardinal is in

28:8 the business of distributing Schedule II

28:9 controlled substances, amongst other things; is

28:10 that right?

28:11   A. It is.

28:12   Q. And you are also aware, as Cardinal,

28:13 that Schedule IIs have a heightened standard when

28:14 dealing with them, heightened security standard;

28:15 is that correct?

| | | |
|---|---|---|
| 28:17 - 29:8 | **Norris, Jennifer 08-07-2018 (00:00:54)** | NJ01-.16 |

28:17   A. I know that Schedule IIs, in addition to

28:18 other controlled substances, have different

28:19 controls, for lack of a better word, that need to

28:20 be applied in the manufacture, distribution,

28:21 dispensing, prescribing, and using.

28:22   Q. Fair enough.  Now, it says Schedule II.

28:23 And read A to us, if you don't mind, please.

28:24   A. Schedule II.  A2?

29:1 Q. Yes, ma'am -- no, no.  2A.

29:2   A. 2A?

29:3 Q. Yes, ma'am.  I'm sorry.

| NJ01--CT2 Jennifer Norris PLaintiff Submissions | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

|  | 29:4   A. I'm sorry.  "Schedule II.  The drug or | |
|  | 29:5 other substance has a high potential for abuse." | |
|  | 29:6   Q. Now, as Cardinal Health, you know that | |
|  | 29:7 Schedule IIs do have a high potential for abuse; | |
|  | 29:8 is that correct? | |
| 29:10 - 29:10 | **Norris, Jennifer 08-07-2018 (00:00:02)** | **NJ01-.17** |
|  | 29:10   A. That's what the statute says here. | |
| 29:17 - 29:20 | **Norris, Jennifer 08-07-2018 (00:00:11)** | **NJ01-.171** |
|  | 29:17 Sitting here today as Cardinal Health, | |
|  | 29:18 do you agree that the U.S. Congress has determined | |
|  | 29:19 that Schedule IIs are drugs and other substances | |
|  | 29:20 that have a high potential for abuse? | |
| 29:22 - 30:2 | **Norris, Jennifer 08-07-2018 (00:00:07)** | **NJ01-.172** |
|  | 29:22   A. That is the definition that is included | |
|  | 29:23 in this statute. | |
|  | 29:24   Q. That's the definition provided by the | |
|  | 30:1 U.S. Congress, correct? | |
|  | 30:2   A. Yes, it is. | |
| 31:2 - 31:8 | **Norris, Jennifer 08-07-2018 (00:00:23)** | **NJ01-.19** |
|  | 31:2   Q. read C to us aloud, please. | |
|  | 31:3   A. "Abuse of the drug or other substances | |
|  | 31:4 may lead to severe psychological or physical | |
|  | 31:5 dependence." | |
|  | 31:6   Q. And do you agree with that finding by | |
|  | 31:7 the U.S. Congress related to Schedule II | |
|  | 31:8 controlled substances? | |
| 31:10 - 31:12 | **Norris, Jennifer 08-07-2018 (00:00:08)** | **NJ01-.20** |
|  | 31:10   A. I agree that's what the statute says. | |
|  | 31:11 I'm not a medical professional to opine on that | |
|  | 31:12 particular statement. | |
| 33:4 - 33:7 | **Norris, Jennifer 08-07-2018 (00:00:13)** | **NJ01-.21** |
|  | 33:4   Q. Okay.  And if you look down at the | |
|  | 33:5 bottom section, when does it indicate this statute | |
|  | 33:6 was created?  If you look down at the bottom, when | |
|  | 33:7 does it indicate this statute was created? | |
| 33:9 - 33:9 | **Norris, Jennifer 08-07-2018 (00:00:02)** | **NJ01-.118** |
|  | 33:9   A. The paper says October 27, 1970. | |
| 33:12 - 33:14 | **Norris, Jennifer 08-07-2018 (00:00:04)** | **NJ01-.22** |
|  | 33:12 Does Cardinal know whether the | |
|  | 33:13 Controlled Substances Act went into effect in | |

| Page/Line | Source | ID |
|---|---|---|

**NJ01--CT2 Jennifer Norris PLaintiff Submissions**

33:14 1970?

| Page/Line | | ID |
|---|---|---|
| 33:16 - 34:20 | **Norris, Jennifer 08-07-2018 (00:01:43)** | NJ01-.119 |

33:16   A. I thought it was 1971, but --

33:17   Q. Somewhere around that time frame; is

33:18 that fair?

33:19   A. The early '70s, yes.

33:20   Q. We'll go to page number 4.  And this

33:21 deals with registration requirements, Section 823.

33:22 Do you see that?

33:23   A. I see Section 823, Registration

33:24 Requirements.

34:1   Q. One of the things that the potential

34:2 distributor has to do is maintain the "maintenance

34:3 of the effective control against diversion of

34:4 particular controlled substances into other than

34:5 legitimate medical, scientific, and industrial

34:6 channels."

34:7 Did I read that correctly?

34:8   A. "Distributors of controlled substances

34:9 in Schedule I or Schedule II.  The following

34:10 factors shall be considered."

34:11 Now, I assume there are more factors.

34:12 You only listed one of them.

34:13   Q. That's correct, yes, ma'am.

34:14   A. But one of the factors in determining

34:15 whether or not the issuance of a registration is

34:16 inconsistent with the public interest is

34:17 maintaining -- maintenance of an effective control

34:18 against diversion of particular controlled

34:19 substances into other than legitimate medical,

34:20 scientific, and industrial channels.

| 35:4 - 35:9 | **Norris, Jennifer 08-07-2018 (00:00:19)** | NJ01-.122 |
|---|---|---|

35:4   Q. Now, this is going to help us, at least

35:5 to some degree, talk about when that act was

35:6 passed.

35:7 Counsel is handing you what is marked as

35:8 Norris 5 and Plaintiff's Exhibit Number 5.

35:9 Have you seen this document before?

| 35:13 - 36:3 | **Norris, Jennifer 08-07-2018 (00:00:38)** | NJ01-.120 |
|---|---|---|

35:13 MR. FULLER:   It is the

| | NJ01--CT2 Jennifer Norris PLaintiff Submissions | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

35:14 Congressional Record from the Controlled
35:15 Substances Act.
35:16   A. I have not seen this document before,
35:17 no.
35:18   Q. Okay.  And then, therefore, I will
35:19 represent to you that it is the Congressional
35:20 Record from the Controlled Substances Act.  It's
35:21 the discussion they had on the floor when they
35:22 were passing the Act.
35:23 And if you look on the second page, it
35:24 has a date of September 10, 1970.
36:1 Do you see that?
36:2   A. September 10, 1970.  I see August 12,
36:3 1970.

| 36:6 - 36:12 | **Norris, Jennifer 08-07-2018 (00:00:19)** | **NJ01-.121** |

36:6   A. Oh, you mean actually the first page?
36:7   Q. Yeah.  I'm sorry.
36:8   A. I'm sorry.  September 10, 1970, yes.
36:9   Q. Okay.  And on that same page, you see up
36:10 near the top, it's the Comprehensive Drug Abuse
36:11 Prevention and Control Act of 1970.
36:12   A. Yes, I see that title.

| 36:22 - 37:10 | **Norris, Jennifer 08-07-2018 (00:00:39)** | **NJ01-.24** |

36:22   Q. All right.  So if you go to page 5, this
36:23 is titled -- or at least on this page this is
36:24 titled Control and Enforcement.
37:1 Do you see that?
37:2   A. I see that title.
37:3   Q. And then read the first statement there.
37:4   A. "The bill provides for control by the
37:5 Justice Department of problems related to drug
37:6 abuse through registration of manufacturers,
37:7 wholesalers, retailers, and all others in the
37:8 legitimate distribution chain and makes
37:9 transactions outside the legitimate distribution
37:10 chain illegal."

| 37:13 - 37:14 | **Norris, Jennifer 08-07-2018 (00:00:05)** | **NJ01-.25** |

37:13 Does Cardinal accept that that is one of
37:14 the Congressional bases for passing this act?

| 37:16 - 37:20 | **Norris, Jennifer 08-07-2018 (00:00:16)** | **NJ01-.123** |

| | | |
|---|---|---|
| **NJ01--CT2 Jennifer Norris PLaintiff Submissions** | | |
| **Page/Line** | **Source** | **ID** |

37:16   A. I acknowledge that that's what's written
37:17 in the record here.
37:18   Q. And that they make or are attempting to
37:19 make transactions outside the legitimate
37:20 distribution chain illegal?

**37:22 - 38:7**   **Norris, Jennifer 08-07-2018 (00:00:29)**   **NJ01-.124**

37:22   A. That's the statement this language
37:23 makes.
37:24   Q. And let me ask you -- we'll get to
38:1 regulations and such further down the road.
38:2 But as Cardinal, sitting here today, is
38:3 it your understanding that if we don't comply --
38:4 well, let me ask it differently.
38:5 If we follow the regulations of the
38:6 Controlled Substances Act, then we are acting
38:7 legally.  Would you agree with that?

**38:10 - 38:10**   **Norris, Jennifer 08-07-2018 (00:00:01)**   **NJ01-.100**

38:10   A. The company's obligation is to follow

**38:11 - 38:23**   **Norris, Jennifer 08-07-2018 (00:00:33)**   **NJ01-.26**

38:11 the regulations and the guidance provided by the
38:12 DEA.
38:13   Q. And that includes the -- not just the
38:14 regulations, but also the statutes pertaining to
38:15 it, correct?
38:16   A. The statutes, the regulations, the
38:17 applicable law.
38:18   Q. All the appropriate rules?
38:19   A. The applicable law as modified or
38:20 provided and the additional guidance by the DEA.
38:21   Q. Okay.  And would you -- does Cardinal
38:22 agree that if we don't follow those rules as
38:23 you've labeled them, that we are breaking the law?

**39:2 - 39:6**   **Norris, Jennifer 08-07-2018 (00:00:11)**   **NJ01-.125**

39:2   A. A failure -- Cardinal Health's
39:3 obligations are to follow the law.
39:4   Q. And if we don't follow the law, for
39:5 example, the Controlled Substances Act, then we're
39:6 breaking the law --

**39:9 - 39:9**   **Norris, Jennifer 08-07-2018 (00:00:00)**   **NJ01-.126**

39:9   Q. -- correct?

| | NJ01--CT2 Jennifer Norris PLaintiff Submissions | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| Page/Line | Source | ID |
|---|---|---|
| 39:12 - 39:15 | **Norris, Jennifer 08-07-2018 (00:00:04)** | NJ01-.27 |
| | 39:12   A. If you don't follow the law, you're | |
| | 39:13 breaking the law. | |
| | 39:14   Q. Is that a yes? | |
| | 39:15   A. Yes. | |
| 54:7 - 54:9 | **Norris, Jennifer 08-07-2018 (00:00:06)** | NJ01-.28 |
| | 54:7   Q. You said Cardinal Health has an | |
| | 54:8 obligation to maintain effective controls against | |
| | 54:9 diversion.  Why? | |
| 54:12 - 54:15 | **Norris, Jennifer 08-07-2018 (00:00:10)** | NJ01-.127 |
| | 54:12   A. My understanding is that's the language | |
| | 54:13 of the law that applies to us. | |
| | 54:14   Q. So are they only doing that because | |
| | 54:15 that's the law that applies to them? | |
| 54:17 - 54:19 | **Norris, Jennifer 08-07-2018 (00:00:04)** | NJ01-.29 |
| | 54:17   A. Cardinal Health is a corporation that | |
| | 54:18 operates in accordance with the laws that apply to | |
| | 54:19 it. | |
| 56:6 - 56:19 | **Norris, Jennifer 08-07-2018 (00:00:54)** | NJ01-.30 |
| | 56:6   Q. Now, if you go to page 34.  And I | |
| | 56:7 promise we're getting to the end of my tabs in | |
| | 56:8 this document. | |
| | 56:9 Did you make it there? | |
| | 56:10   A. I have. | |
| | 56:11   Q. It says, "The illegal importation, | |
| | 56:12 manufacture, distribution, and possession, and | |
| | 56:13 improper use of controlled substances have a | |
| | 56:14 substantial detrimental effect on the public's | |
| | 56:15 health and general welfare." | |
| | 56:16 Do you see that? | |
| | 56:17   A. I do. | |
| | 56:18   Q. And does Cardinal agree that that's one | |
| | 56:19 of the findings by Congress? | |
| 56:21 - 57:3 | **Norris, Jennifer 08-07-2018 (00:00:23)** | NJ01-.130 |
| | 56:21   A. I believe, as we talked about before, in | |
| | 56:22 accordance with Section 801, that is a finding of | |
| | 56:23 Congress, yes. | |
| | 56:24   Q. And that's one of the goals behind this | |
| | 57:1 Controlled Substances Act, again, is to ensure the | |
| | 57:2 legitimate distribution of controlled substances | |

| Page/Line | Source | ID |
|---|---|---|

**NJ01--CT2 Jennifer Norris PLaintiff Submissions**

|  |  |  |
|---|---|---|
| 57:5 - 57:9 | 57:3 in keeping them out of the illicit market, right?<br>**Norris, Jennifer 08-07-2018 (00:00:12)**<br>57:5   A. Yes.<br>57:6   Q. And Cardinal also recognizes that<br>57:7 distributions into the illicit market have a<br>57:8 substantial and detrimental effect on the public's<br>57:9 health and general welfare? | **NJ01-.129** |
| 57:11 - 57:13 | **Norris, Jennifer 08-07-2018 (00:00:07)**<br>57:11   A. - the illegal distribution<br>57:12 has a substantial detrimental effect on the<br>57:13 public's health and general welfare. | **NJ01-.128** |
| 60:18 - 61:1 | **Norris, Jennifer 08-07-2018 (00:00:17)**<br>60:18   Q. But before we do that, you are aware<br>60:19 that there is a suspicious order reporting<br>60:20 requirement; is that correct?<br>60:21   A. I am.<br>60:22   Q. And this obligation to maintain<br>60:23 effective controls against diversion is separate<br>60:24 and distinct from that other regulation; would you<br>61:1 agree? | **NJ01-.31** |
| 61:4 - 61:13 | **Norris, Jennifer 08-07-2018 (00:00:29)**<br>61:4   A. They're in two separate places, but I<br>61:5 would argue that suspicious order reporting is<br>61:6 part of maintaining effective controls against<br>61:7 diversion.<br>61:8   Q. It may be a subset, correct?<br>61:9   A. Yes.<br>61:10   Q. You would also agree, as Cardinal, that<br>61:11 there are other things that we have to do to<br>61:12 maintain effective controls against diversion<br>61:13 other than suspicious order reporting, correct? | **NJ01-.165** |
| 61:15 - 61:15 | **Norris, Jennifer 08-07-2018 (00:00:02)**<br>61:15   A. Yes. | **NJ01-.166** |
| 62:15 - 62:22 | **Norris, Jennifer 08-07-2018 (00:00:21)**<br>62:15   Q. Okay.  And this is -- we were earlier<br>62:16 looking at the U.S. Code, correct, and now we're<br>62:17 looking at the Code of Federal Regulations, right?<br>62:18   A. Yes.<br>62:19   Q. Okay.  And this is still Title 21,<br>62:20 Chapter 2.  Do you see that?  "Drug Enforcement | **NJ01-.32** |

| Page/Line | Source | ID |
|---|---|---|
| | 62:21 Administration, Department of Justice." | |
| | 62:22   A. I see that in the title. | |
| 63:9 - 63:22 | **Norris, Jennifer 08-07-2018 (00:00:50)** | NJ01-.33 |
| | 63:9   Q. And this is -- Ms. Norris, this is Part | |
| | 63:10 1301, "Registration of Manufacturers, | |
| | 63:11 Distributors, and Dispensers of Controlled | |
| | 63:12 Substances, Security Requirements." | |
| | 63:13 Have you seen this section before or the | |
| | 63:14 complete section? | |
| | 63:15   A. I have. | |
| | 63:16   Q. And if you will read 1301.74 there to | |
| | 63:17 us, please. | |
| | 63:18   A. "Other security controls for | |
| | 63:19 non-practitioners; narcotic treatment programs and | |
| | 63:20 compounders for narcotic treatment programs." | |
| | 63:21   Q. And does Cardinal agree that this | |
| | 63:22 section applies to them? | |
| 63:24 - 64:24 | **Norris, Jennifer 08-07-2018 (00:01:23)** | NJ01-.167 |
| | 63:24   A. It's my understanding that this section | |
| | 64:1 applies to Cardinal. | |
| | 64:2   Q. Okay.  And then read the requirements | |
| | 64:3 under B to us, if you would, please. | |
| | 64:4   A. "The registrant shall design and operate | |
| | 64:5 a system to disclose to the registrant suspicious | |
| | 64:6 orders of controlled substances.  The registrant | |
| | 64:7 shall inform the field division office of the | |
| | 64:8 administration in his area of suspicious orders | |
| | 64:9 when discovered by the registrant.  Suspicious | |
| | 64:10 orders include orders of unusual size, orders | |
| | 64:11 deviating substantially from a normal pattern, and | |
| | 64:12 orders of unusual frequency." | |
| | 64:13   Q. And does Cardinal believe it fits the | |
| | 64:14 description of registrant as it relates to this | |
| | 64:15 code section -- this regulation?  I'm sorry. | |
| | 64:16   A. Yes.  Cardinal is a registrant. | |
| | 64:17   Q. And does Cardinal believe it has an | |
| | 64:18 obligation under this regulation to operate a | |
| | 64:19 system to disclose suspicious orders of controlled | |
| | 64:20 substances? | |
| | 64:21   A. Cardinal Health's obligation is to | |

**NJ01--CT2 Jennifer Norris PLaintiff Submissions**

| Page/Line | Source | ID |
|---|---|---|

64:22 comply with this section, which requires it to
64:23 design and operate a system to disclose suspicious
64:24 orders of controlled substances.

**66:7 - 66:13**     **Norris, Jennifer 08-07-2018 (00:00:14)**     NJ01-.111

66:7 Does Cardinal operate a system to
66:8 disclose suspicious orders?
66:9  A. Yes.
66:10  Q. And have they always operated or
66:11 maintained such a system?
66:12  A. Yes, in accordance with the DEA
66:13 guidance.

**77:4 - 77:7**     **Norris, Jennifer 08-07-2018 (00:00:16)**     NJ01-.34

77:4  Q. And can we agree that the rules that are
77:5 laid out are partially designed to keep the
77:6 American people safe when we're dealing with
77:7 controlled substances?

**77:9 - 77:20**     **Norris, Jennifer 08-07-2018 (00:00:35)**     NJ01-.169

77:9  A. The rules, as I understand them, are to
77:10 ensure that the participants in the distribution
77:11 system understand their obligations and operate
77:12 within that distribution -- that closed
77:13 distribution system, maintaining the security of
77:14 the pharmaceuticals we distribute, the scheduled
77:15 substances we distribute.
77:16  Q. And the rules also indicate a
77:17 Congressional finding that if we don't keep them
77:18 in their legitimate channels, that they can be
77:19 dangerous to the health and general welfare of the
77:20 American public, correct?

**77:23 - 78:3**     **Norris, Jennifer 08-07-2018 (00:00:18)**     NJ01-.173

77:23  A. Congress made a finding that the illegal
77:24 distribution -- let me make sure I read it
78:1 correctly -- "would have a substantial and
78:2 detrimental effect on the health and general
78:3 welfare of the American people."

**91:17 - 91:20**     **Norris, Jennifer 08-07-2018 (00:00:08)**     NJ01-.174

91:17  Q. But, again, Cardinal did its job in
91:18 staying informed as to what's going on in the
91:19 communities that it's distributing to around the
91:20 country, correct?

| Page/Line | Source | ID |
|---|---|---|
| NJ01--CT2 Jennifer Norris PLaintiff Submissions | | |

| Page/Line | Source | ID |
|---|---|---|
| 91:23 - 91:24 | **Norris, Jennifer 08-07-2018 (00:00:04)** | NJ01-.175 |
| | 91:23   A. Cardinal Health understands the | |
| | 91:24 customers that it is distributing to. | |
| 116:20 - 117:14 | **Norris, Jennifer 08-07-2018 (00:01:03)** | NJ01-.36 |
| | 116:20 MR. FULLER:  This is Norris 8, it's | |
| | 116:21 going to be Plaintiff's Exhibit Number 12. | |
| | 116:22 BY MR. FULLER: | |
| | 116:23   Q. And, ma'am, have you seen this case | |
| | 116:24 before? | |
| | 117:1   A. I have. | |
| | 117:2   Q. And what case is it? | |
| | 117:3   A. Masters Pharmaceutical, Inc. v. DEA. | |
| | 117:4   Q. Okay.  And you're aware this decision | |
| | 117:5 came out in June of last year; is that correct? | |
| | 117:6   A. I believe so. | |
| | 117:7   Q. And it deals with the Controlled | |
| | 117:8 Substances Act and the shipping and reporting | |
| | 117:9 requirements; is that correct? | |
| | 117:10   A. I believe it mentions the shipping | |
| | 117:11 requirement, and the reporting requirement is sort | |
| | 117:12 of the central issue. | |
| | 117:13   Q. So it discusses both; is that correct? | |
| | 117:14   A. It makes reference to both, yes. | |
| 120:21 - 121:11 | **Norris, Jennifer 08-07-2018 (00:01:00)** | NJ01-.37 |
| | 120:21   Q. All right.  So let's look at Masters | |
| | 120:22 Pharmaceutical.  And if you'll turn to page 7 for | |
| | 120:23 me. | |
| | 120:24   A. Yes, I'm there. | |
| | 121:1   Q. Okay.  And if you will read where it | |
| | 121:2 starts, "The security requirement." | |
| | 121:3   A. "The 'security requirement' at the heart | |
| | 121:4 of the case mandates that distributors 'design and | |
| | 121:5 operate a system' to identify 'suspicious orders | |
| | 121:6 of controlled substances' and report those to DEA | |
| | 121:7 (the Reporting Requirement)." | |
| | 121:8   Q. Does Cardinal Health agree that it has a | |
| | 121:9 reporting requirement to identify and report | |
| | 121:10 suspicious orders of controlled substances? | |
| | 121:11   A. Yes. | |
| 122:1 - 122:5 | **Norris, Jennifer 08-07-2018 (00:00:11)** | NJ01-.38 |

| | NJ01--CT2 Jennifer Norris PLaintiff Submissions | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

122:1 Cardinal agrees that this reporting
122:2 requirement has been the obligation since the
122:3 enactment of the regulation that we looked at
122:4 earlier in 1971 related to suspicious orders,
122:5 correct?

**122:8 - 122:12   Norris, Jennifer 08-07-2018 (00:00:11)**                        NJ01-.178

122:8   A. This reporting requirement has existed
122:9 since 1971 in the statute.
122:10   Q. And the rendition of it that we just
122:11 read is the obligation that it places on Cardinal,
122:12 correct?

**122:14 - 123:2   Norris, Jennifer 08-07-2018 (00:00:45)**                        NJ01-.177

122:14   A. That is correct, as modified by the DEA
122:15 guidance we have received over the years, yes.
122:16   Q. Well, now, that's a different
122:17 qualification now.  Okay.
122:18 I believe you've already agreed -- and
122:19 correct me if I am wrong -- that the reporting
122:20 requirement requires Cardinal to identify and
122:21 report suspicious orders of controlled substances;
122:22 is that accurate?
122:23   A. That is what the regulation requires.
122:24   Q. And that regulation has been in place
123:1 since 1971 and has always required that; is that
123:2 Cardinal's position?

**123:5 - 123:18   Norris, Jennifer 08-07-2018 (00:00:29)**                        NJ01-.176

123:5   A. The language of the statute has always
123:6 required that.  The DEA's guidance to us on how to
123:7 implement that has changed over time.
123:8   Q. And I'm not asking about implementation
123:9 right now.
123:10   A. Okay.
123:11   Q. So let's separate the two, okay?
123:12   A. Okay.
123:13   Q. As far as the reporting requirement
123:14 itself, has that been an obligation that's been on
123:15 Cardinal since the regulation was enacted in 1971
123:16 with the caveat whenever Cardinal started
123:17 distributing controlled substances?
123:18   A. Yes.  Yes.

| Page/Line | Source | ID |
|---|---|---|
| | **NJ01--CT2 Jennifer Norris PLaintiff Submissions** | |
| 124:14 - 125:1 | **Norris, Jennifer 08-07-2018 (00:00:37)** | NJ01-.39 |
| | 124:14 Ms. Norris, the case then reads, "The | |
| | 124:15 Reporting Requirement is a relatively modest one. | |
| | 124:16 It requires only that a distributor provide basic | |
| | 124:17 information about certain orders to the DEA so | |
| | 124:18 that DEA investigators in the field can aggregate | |
| | 124:19 reports from every point along the legally | |
| | 124:20 regulated supply chain and use the information to | |
| | 124:21 ferret out potential illegal activity." | |
| | 124:22 Is that correct? | |
| | 124:23   A. That is correct. | |
| | 124:24   Q. And is that Cardinal's understanding of | |
| | 125:1 the law? | |
| 125:3 - 125:9 | **Norris, Jennifer 08-07-2018 (00:00:22)** | NJ01-.183 |
| | 125:3   A. I believe so, yes. | |
| | 125:4   Q. Okay.  And let's break it down.  It says | |
| | 125:5 that it requires a distributor to provide basic | |
| | 125:6 information about certain orders to the DEA.  And | |
| | 125:7 Cardinal would agree that the basic information is | |
| | 125:8 at least to provide the order that's being | |
| | 125:9 submitted that qualifies as suspicious, correct? | |
| 125:11 - 125:17 | **Norris, Jennifer 08-07-2018 (00:00:14)** | NJ01-.182 |
| | 125:11   A. Generally, yes. | |
| | 125:12   Q. Okay.  "And this is just a further | |
| | 125:13 explanation of the reporting requirement we just | |
| | 125:14 talked about; therefore, it applies all the way | |
| | 125:15 back to 1971 when the suspicious order regulation | |
| | 125:16 was enacted." | |
| | 125:17 Does Cardinal agree with that? | |
| 125:20 - 126:4 | **Norris, Jennifer 08-07-2018 (00:00:27)** | NJ01-.181 |
| | 125:20   A. I can't opine on that.  This feels like | |
| | 125:21 more commentary about what they thought it meant | |
| | 125:22 in the case that's then referenced there. | |
| | 125:23   Q. So does -- I'm sorry.  Go ahead. | |
| | 125:24   A. But the reporting requirement went back | |
| | 126:1 to 1971. | |
| | 126:2   Q. So as it relates to what you've | |
| | 126:3 qualified as commentary, does Cardinal agree or | |
| | 126:4 disagree with that, that that is their obligation? | |
| 126:7 - 126:19 | **Norris, Jennifer 08-07-2018 (00:01:29)** | NJ01-.180 |

| NJ01--CT2 Jennifer Norris PLaintiff Submissions | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

|  | 126:7   A. I believe that that is Cardinal's |  |
|  | 126:8 obligation. |  |
|  | 126:9   Q. Now, let's go further down.  Let's go |  |
|  | 126:10 down to the next sentence.  "Once a distributor |  |
|  | 126:11 has reported a suspicious order, it must make one |  |
|  | 126:12 of two choices:  Decline to ship the order or |  |
|  | 126:13 conduct some due diligence; and if it is able to |  |
|  | 126:14 determine that the order is not likely to be |  |
|  | 126:15 diverted into legal channels, ship the order," and |  |
|  | 126:16 then in parentheses "Shipping requirement." |  |
|  | 126:17 Does Cardinal agree that based on this |  |
|  | 126:18 case, Masters Pharmaceutical, as of June of last |  |
|  | 126:19 year, Cardinal now has a shipping requirement? |  |
| 126:21 - 129:6 | **Norris, Jennifer 08-07-2018 (00:02:51)** | **NJ01-.179** |
|  | 126:21   A. In 2017, did Cardinal Health have a |  |
|  | 126:22 shipping requirement? |  |
|  | 126:23   Q. Yes, ma'am. |  |
|  | 126:24   A. Yes. |  |
|  | 127:1   Q. Prior to 2000- -- prior to the rendering |  |
|  | 127:2 of the Masters Pharmaceutical case, did Cardinal |  |
|  | 127:3 have a shipping requirement? |  |
|  | 127:4   A. Yes. |  |
|  | 127:5   Q. How far back does Cardinal take the |  |
|  | 127:6 position that this shipping -- strike that. |  |
|  | 127:7 Prior to 2017 and the rendering of this |  |
|  | 127:8 Masters Pharmaceutical opinion, does Cardinal |  |
|  | 127:9 believe its shipping requirement was the same as |  |
|  | 127:10 outlined here in the Masters Pharmaceutical case? |  |
|  | 127:11   A. Generally, yes. |  |
|  | 127:12   Q. Okay.  So as it relates to -- and we're |  |
|  | 127:13 not going to talk necessarily about how far back |  |
|  | 127:14 it goes yet. |  |
|  | 127:15 So we have an understanding, the |  |
|  | 127:16 shipping requirement gives you two choices, |  |
|  | 127:17 correct? |  |
|  | 127:18   A. As it's laid out here, yes. |  |
|  | 127:19   Q. And you agree -- Cardinal agrees with |  |
|  | 127:20 that, correct? |  |
|  | 127:21   A. Yes. |  |
|  | 127:22   Q. Okay.  The first choice is you can |  |

| NJ01--CT2 Jennifer Norris PLaintiff Submissions | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

127:23 decline the ship?  You can cut the order as
127:24 Cardinal uses the phrase, correct?
128:1   A. Yes.
128:2   Q. The other alternative is to conduct due
128:3 diligence, and if it's able to -- or if Cardinal
128:4 is able to determine that the order is not likely
128:5 to be diverted into legal channels, then ship the
128:6 order?  Is that Cardinal's understanding?
128:7   A. Correct.
128:8   Q. Prior to the enactment or the rendering
128:9 of this Masters Pharmaceutical opinion, when you
128:10 mentioned there was a shipping requirement
128:11 Cardinal believes it had, how far back did that
128:12 same shipping requirement go?
128:13   A. Back to approximately 2007.
128:14   Q. We're going to baby step this, okay?  So
128:15 bear with me.
128:16   A. Okay.
128:17   Q. So from approximately some point in
128:18 2007, Cardinal believes it had the shipping
128:19 requirement that's set out in the Masters
128:20 Pharmaceutical case applicable to them?
128:21   A. Approximately, because obviously I think
128:22 we'll get there.  The Dear Registrant letters
128:23 started coming out.  So approximately that time
128:24 period.
129:1   Q. So since 2007 or approximately that time
129:2 period, Cardinal has not shipped suspicious
129:3 orders, correct?
129:4   A. Since 2007, Cardinal Health has not
129:5 shipped an order that it has reported as
129:6 suspicious to the DEA.

| 129:7 - 130:6 | **Norris, Jennifer 08-07-2018 (00:01:38)** | NJ01-.101 |

129:7   Q. And since 2007, Cardinal has not shipped
129:8 a suspicious order that it hasn't determined --
129:9 that it hasn't done the due diligence on to
129:10 determine it's not going to be diverted, correct?
129:11 MS. MAINIGI:  Objection; form.
129:12   A. Since approximately 2007, Cardinal
129:13 Health has not shipped an order it has reported as

| NJ01--CT2 Jennifer Norris PLaintiff Submissions | | |
| --- | --- | --- |
| **Page/Line** | **Source** | **ID** |

129:14 suspicious to the DEA.
129:15   Q. Okay.  So how many orders since 2007 --
129:16 how many suspicious orders has Cardinal shipped
129:17 that it failed to report to the DEA --
129:18 MS. MAINIGI:  Objection; form.
129:19   Q. -- since 2007?
129:20   A. None to Cardinal Health's knowledge.
129:21   Q. Prior to 2007, was Cardinal shipping
129:22 suspicious orders?
129:23   A. Prior to its understanding from the DEA
129:24 of the obligation, the change, the sea change in
130:1 the obligation to suddenly -- suddenly maybe is
130:2 the wrong word -- to not --
130:3   Q. I mean, suddenly is good for you.
130:4   A. -- to not ship pursuant to the guidance
130:5 by the DEA, it was a report only period.  Cardinal
130:6 Health made the reports as required by the DEA.

**130:10 - 130:14**   **Norris, Jennifer 08-07-2018 (00:00:22)**   **NJ01-.40**

130:10 Prior to this approximate time frame of
130:11 2007, which we have yet to nail down, Cardinal was
130:12 shipping orders that it reported as suspicious?
130:13   A. During the time period prior to 2007,
130:14 Cardinal Health's obligation was to report only.

**130:20 - 130:23**   **Norris, Jennifer 08-07-2018 (00:00:09)**   **NJ01-.102**

130:20 Prior to 2007, do you know whether
130:21 Cardinal was reporting and then shipping
130:22 suspicious orders or shipping suspicious orders
130:23 and then reporting?

**131:3 - 131:16**   **Norris, Jennifer 08-07-2018 (00:00:52)**   **NJ01-.185**

131:3   A. In accordance from the guidance we
131:4 received from the DEA, Cardinal Health was making
131:5 the reports as required by the DEA, the ingredient
131:6 limit reports and the excessive order reports, and
131:7 it was shipping orders in accordance with the
131:8 guidelines from the DEA.  If pursuant to one of
131:9 those excessive order reports the DEA said "Do not
131:10 ship," we did not ship.
131:11   Q. You mentioned excessive order reports
131:12 and some other type of reports.
131:13   A. Ingredient limit reports.

| Page/Line | Source | ID |
|---|---|---|
| | 131:14   Q. Was Cardinal actually reporting<br>131:15 suspicious orders prior to this time period in<br>131:16 2007? | |
| 131:19 - 131:22 | **Norris, Jennifer 08-07-2018 (00:00:08)** | **NJ01-.184** |
| | 131:19   A. As required by the DEA, we were<br>131:20 submitting the ingredient limit reports pursuant<br>131:21 to the guidance we received, as well as the<br>131:22 excessive order reports. | |
| 132:14 - 132:16 | **Norris, Jennifer 08-07-2018 (00:00:09)** | **NJ01-.41** |
| | 132:14   Q. So my question is, did Cardinal file<br>132:15 suspicious order reports prior to approximately<br>132:16 2007? | |
| 132:18 - 132:21 | **Norris, Jennifer 08-07-2018 (00:00:13)** | **NJ01-.186** |
| | 132:18   A. I don't know that that's what they were<br>132:19 calling them at that time.  Again, we filed per<br>132:20 the DEA's guidance ingredient limit reports,<br>132:21 excessive order reports. | |
| 133:17 - 133:20 | **Norris, Jennifer 08-07-2018 (00:00:11)** | **NJ01-.103** |
| | 133:17   Q. So I'm just asking, during this time<br>133:18 frame prior to 2007, did Cardinal report orders as<br>133:19 potentially suspicious or suspicious orders and<br>133:20 then still send the shipments out? | |
| 133:22 - 133:24 | **Norris, Jennifer 08-07-2018 (00:00:06)** | **NJ01-.187** |
| | 133:22   A. Yes.  That is the direction we received<br>133:23 from the DEA.  We made the reports as required,<br>133:24 and there was not a shipping requirement. | |
| 134:1 - 136:3 | **Norris, Jennifer 08-07-2018 (00:03:21)** | **NJ01-.42** |
| | 134:1   Q. Now, just so I understand, what is an --<br>134:2 you said "an excessive order report."  What is<br>134:3 that?<br>134:4   A. Within the distribution centers, the<br>134:5 folks that are picking the orders have the ability<br>134:6 to identify an order of a new rule, size, pattern,<br>134:7 or frequency, and raise their hand, so to speak,<br>134:8 to identify that order, and in doing so, during<br>134:9 this time period, we were submitting those to the<br>134:10 DEA as excessive order reports.<br>134:11   Q. Would they be submitted order by order,<br>134:12 or was it a compilation of things that occurred<br>134:13 over a period of time? | |

| NJ01--CT2 Jennifer Norris PLaintiff Submissions | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

134:14   A. My understanding is order by order.

134:15   Q. And what's an ingredient limit report?

134:16   A. An ingredient limit report is the report

134:17 that was required pursuant to the 1998 DEA report

134:18 to, I believe, the Attorney General.  It included

134:19 the algorithm for certain pharmaceuticals, and we

134:20 on a monthly basis provided the report of the

134:21 customers who had exceeded the designated amount

134:22 that you achieve pursuant to doing the algorithm,

134:23 the math problem.

134:24   Q. And that was done by ingredient,

135:1 correct?

135:2   A. I believe so.  I'm not -- I'm actually

135:3 not positive.

135:4   Q. So does Cardinal believe -- well, let's

135:5 try to nail down this time frame in 2007 first,

135:6 okay?

135:7   A. Okay.

135:8   Q. What is its -- what is Cardinal's

135:9 position as to -- strike that.

135:10 Is it Cardinal's position or

135:11 understanding that the initial Rannazzisi letter

135:12 in 2006 informed them of a shipping requirement as

135:13 we've described it?

135:14   A. Yes.  That was the first communication

135:15 Cardinal received regarding this sea change of

135:16 adding a shipping requirement to the obligations.

135:17 MS. MAINIGI:  Can I just add a

135:18 clarification, because when you see the phrase

135:19 "shipping requirement," it suggests you should

135:20 ship.  But by "shipping requirement," you're both

135:21 saying "do not ship;" is that fair?

135:22 MR. FULLER:  I think that's fair.  Thank

135:23 you.

135:24

136:1 BY MR. FULLER:

136:2   Q. Would you agree with that?

136:3   A. I would agree with that.

| 136:11 - 136:21 | **Norris, Jennifer 08-07-2018 (00:00:36)** | **NJ01-.43** |

136:11 So it's Cardinal's position that the

| NJ01--CT2 Jennifer Norris PLaintiff Submissions | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

136:12 first time they were informed of a potential
136:13 shipping requirement was in Rannazzisi's 2006
136:14 letter that was sent to all the distributors in
136:15 the industry?
136:16   A. Yes.
136:17   Q. Cardinal also had meetings with the DEA
136:18 around this time frame as well, correct?
136:19   A. Yes.
136:20   Q. When is the first meeting that Cardinal
136:21 had with the DEA?

**136:24 - 137:12**   **Norris, Jennifer 08-07-2018 (00:00:38)**   **NJ01-.188**

136:24   Q. Any time prior to this that you're aware
137:1 of.
137:2   A. Prior to the receipt of the first
137:3 Rannazzisi letter?
137:4   Q. Yes, ma'am.
137:5   A. I know we had a meeting with the DEA
137:6 regarding Internet pharmacies in 2005, but not
137:7 with -- not the subject of what ultimately came
137:8 out in the Rannazzisi letter.
137:9   Q. Well, then let's backstep that.  There
137:10 was actually a meeting with Cardinal and the DEA
137:11 in approximately August of 2005; is that correct?
137:12   A. I believe that's the time frame, yes.

**137:13 - 137:15**   **Norris, Jennifer 08-07-2018 (00:00:08)**   **NJ01-.104**

137:13   Q. And this meeting included concerns
137:14 related to the Controlled Substances Act and the
137:15 distribution of controlled substances, correct?

**137:17 - 137:19**   **Norris, Jennifer 08-07-2018 (00:00:06)**   **NJ01-.189**

137:17   A. I know the meeting -- the topic of the
137:18 meeting was Internet pharmacies.  I don't know the
137:19 answer to that question.

**139:11 - 139:24**   **Norris, Jennifer 08-07-2018 (00:00:56)**   **NJ01-.44**

139:11   Q. Was there any further communication
139:12 between Cardinal Health and the DEA between
139:13 September of '06 and December of '07 when the
139:14 second Rannazzisi letter came out?
139:15   A. The second being the third, right?
139:16   Q. Technically, yes, ma'am.
139:17   A. Yes.

| NJ01--CT2 Jennifer Norris PLaintiff Submissions | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

|  | 139:18   Q. And what was that? | |
|  | 139:19   A. I don't know the specifics of the | |
|  | 139:20 communication, but I know that I was told by Steve | |
|  | 139:21 Reardon there were communications with the DEA | |
|  | 139:22 regarding the Rannazzisi letter, as well as | |
|  | 139:23 attendance at a meeting in, I believe it was the | |
|  | 139:24 fall of 2007, September maybe, with the DEA. | |
| 140:1 - 140:3 | **Norris, Jennifer 08-07-2018 (00:00:16)** | NJ01-.192 |
|  | 140:1 Again, I can't presently speak to every | |
|  | 140:2 single communication that Cardinal Health had. | |
|  | 140:3   Q. So is it Cardinal's position -- here. | |
| 140:4 - 140:14 | **Norris, Jennifer 08-07-2018 (00:00:41)** | NJ01-.193 |
|  | 140:4 We keep talking about it, so I'm just going to | |
|  | 140:5 give it to you. | |
|  | 140:6   A. That would be great. | |
|  | 140:7 MR. FULLER:  There you go, Counsel. | |
|  | 140:8 MS. MAINIGI:  Thank you. | |
|  | 140:9 MR. FULLER:  Sure.  And it's Norris 14, | |
|  | 140:10 and it's going to be Plaintiff's Exhibit 13 for | |
|  | 140:11 purposes of this deposition.  And for the record | |
|  | 140:12 and everybody listening in, now we finally have | |
|  | 140:13 something with a Bates number on it, and it's | |
|  | 140:14 CAH_MDL_PRIORPROD_ DEA07_00837645. | |
| 140:19 - 142:22 | **Norris, Jennifer 08-07-2018 (00:03:07)** | NJ01-.191 |
|  | 140:19   Q. And, Ms. Norris, this is, I believe, a | |
|  | 140:20 document that was provided to us by your counsel. | |
|  | 140:21 Do you see that in front of you? | |
|  | 140:22   A. I see the document, yes. | |
|  | 140:23   Q. Are you aware that this was a letter | |
|  | 140:24 that the DEA did send back in 2006, and | |
|  | 141:1 specifically September 27 -- God bless you -- | |
|  | 141:2 September 27, 2006 to Cardinal Health. | |
|  | 141:3   A. Yes. | |
|  | 141:4   Q. And in your preparation for this | |
|  | 141:5 deposition, you had this document obtained and | |
|  | 141:6 you've reviewed this document; is that correct? | |
|  | 141:7   A. I have. | |
|  | 141:8   Q. And does this copy of it appear to be | |
|  | 141:9 the same as the copy that you pulled from | |
|  | 141:10 Cardinal's files to review? | |

| NJ01--CT2 Jennifer Norris PLaintiff Submissions | | |
|---|---|---|
| Page/Line | Source | ID |

141:11   A. Yes.  It appears to be the document I've
141:12 reviewed.
141:13   Q. Now, you mentioned earlier just briefly
141:14 that there was a second and a third -- well, yeah,
141:15 a second and a third letter, right?
141:16   A. Yes.
141:17   Q. And that's because in the early part of
141:18 2007, the DEA sent another copy of this letter out
141:19 to all the wholesale distributors; is that
141:20 correct?
141:21   A. That is what I understand, yes.
141:22   Q. And you believe that letter to be a
141:23 pretty much identical copy of this one; is that
141:24 right?
142:1   A. Yes.
142:2   Q. And then when I said the second DEA
142:3 letter, that is my fault, and I apologize.  But it
142:4 was actually -- you're correct -- the third that
142:5 was sent at the end of 2007.
142:6 Is that your understanding?
142:7   A. That is my understanding.
142:8   Q. Okay.  Fair enough.  I apologize for
142:9 that confusion.  Completely on me.
142:10 So, ma'am, read the first two sentences
142:11 of this letter from the DEA to Cardinal Health.
142:12   A. "This letter is being sent to every
142:13 commercial entity in the United States registered
142:14 with the Drug Enforcement Administration to
142:15 distribute controlled substances.  The purpose of
142:16 this letter is to reiterate the responsibilities
142:17 of controlled substance distributors in view of
142:18 the prescription drug abuse problem our nation
142:19 currently faces."
142:20   Q. Does Cardinal recognize that at this
142:21 point of time in 2006, that we did have a
142:22 prescription drug abuse problem in our nation?

| 142:24 - 143:17 | **Norris, Jennifer 08-07-2018 (00:01:00)** | NJ01-.194 |

142:24   A. Yes.
143:1   Q. And Cardinal also recognizes that it is
143:2 one of a multitude of players in this distribution

| | | |
|---|---|---|
| **NJ01--CT2 Jennifer Norris PLaintiff Submissions** | | |
| **Page/Line** | **Source** | **ID** |

143:3 channel of prescription drugs, correct?
143:4   A. Yes.
143:5   Q. And that -- strike that.
143:6 If you'll go down to the Background
143:7 section.  Do you see that section next?
143:8   A. Yes.
143:9   Q. And if you'll read that first sentence,
143:10 "As each of you are -- or is undoubtedly aware."
143:11   A. "As each of you is undoubtedly aware,
143:12 the abuse (nonmedical use) of controlled
143:13 prescription drugs is a serious and growing health
143:14 problem in this country."
143:15   Q. Does Cardinal accept and adopt that
143:16 statement during this time frame, or does Cardinal
143:17 reject that statement?

**143:20 - 143:20**   **Norris, Jennifer 08-07-2018 (00:00:01)**   **NJ01-.190**

143:20   A. I think it's a fair statement.

**145:2 - 145:12**   **Norris, Jennifer 08-07-2018 (00:00:24)**   **NJ01-.45**

145:2   Q. Well, you'll notice under C, it asks for
145:3 the past and present interpretation, compliance,
145:4 and agreement and/or disagreement with the Dear
145:5 Registrant letters from the DEA.  And this is a
145:6 Dear Registrant letter from the DEA.  We can agree
145:7 with that, correct?
145:8   A. Correct.
145:9   Q. So I want to know if Cardinal agrees --
145:10 not in your personal capacity.  I want to know if
145:11 Cardinal agrees with the statement that "The CSA
145:12 was designed by Congress to combat diversion."

**146:5 - 146:6**   **Norris, Jennifer 08-07-2018 (00:00:04)**   **NJ01-.46**

146:5   Q. Does Cardinal agree or disagree that the
146:6 CSA was designed to combat diversion?

**146:9 - 146:10**   **Norris, Jennifer 08-07-2018 (00:00:02)**   **NJ01-.195**

146:9   A. I agree that that's the statement that's
146:10 made here.

**148:14 - 149:2**   **Norris, Jennifer 08-07-2018 (00:00:58)**   **NJ01-.47**

148:14 Is Cardinal required to take reasonable
148:15 steps to ensure that the registration isn't being
148:16 utilized as a source of diversion?
148:17   A. I don't recall that being anywhere in

| NJ01--CT2 Jennifer Norris PLaintiff Submissions | |
|---|---|

| Page/Line | Source | ID |
|---|---|---|

148:18 the statute or the regulations.  Cardinal Health's
148:19 obligation is to comply with the statute,
148:20 regulations, and guidance provided by the DEA.
148:21   Q. So -- and I understand your response,
148:22 but now I'm asking you whether Cardinal has to
148:23 take reasonable steps to ensure that the
148:24 registration is not being utilized as a source of
149:1 diversion.
149:2   A. That is a statement in this letter.

**149:22 - 150:21**   **Norris, Jennifer 08-07-2018 (00:01:15)**            **NJ01-.48**

149:22   Q. And does that mean they have to take
149:23 steps to prevent their registration from being
149:24 used as a source of diversion; yes or no?
150:1   A. That is guidance provided by the DEA.
150:2   Q. So being that this letter is guidance
150:3 provided by the DEA, then the answer is yes,
150:4 Cardinal has to take steps to prevent its
150:5 registration from being used as a source of
150:6 diversion, correct?
150:7   A. Generally, yes.
150:8   Q. Generally, yes, or yes?
150:9   A. Generally, yes, in accordance with the
150:10 statute, the regulations, and the guidance
150:11 provided by the DEA.
150:12   Q. Well, you've told me that several times.
150:13 And then I asked the follow-up, being that this
150:14 letter is guidance from the DEA, you would agree
150:15 with that, correct?
150:16   A. Um-hmm, yes.
150:17   Q. Cardinal agrees that this September 27,
150:18 2006 letter provided by Rannazzisi, who was at the
150:19 DEA, is providing guidance to the wholesale
150:20 distributor industry, correct?
150:21   A. Correct.

**151:5 - 151:21**   **Norris, Jennifer 08-07-2018 (00:00:41)**            **NJ01-.49**

151:5   Q. Read the rest
151:6 of that paragraph for me, please.
151:7   A. "Distributors are, of course, one of the
151:8 key components in the distribution chain.  If the
151:9 closed system is to function properly, as Congress

| | NJ01--CT2 Jennifer Norris PLaintiff Submissions | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

151:10 envisioned, distributors must be vigilant in
151:11 deciding whether a prospective customer can be
151:12 trusted to deliver controlled substances only for
151:13 lawful purposes."
151:14 "This responsibility is critical as
151:15 Congress has expressly declared that the illegal
151:16 distribution of controlled substances has a
151:17 substantial and detrimental effect on the health
151:18 and general welfare of the American people."
151:19   Q. And Cardinal agrees and accepts that
151:20 distributors are one of the key components in the
151:21 distribution chain; is that right?

**151:23 - 152:3**   **Norris, Jennifer 08-07-2018 (00:00:18)**   **NJ01-.197**

151:23   A. Yes.
151:24   Q. And that the distributors must be
152:1 vigilant in deciding whether a prospective
152:2 customer can be trusted to deliver controlled
152:3 substances only for lawful purposes; correct?

**152:5 - 152:6**   **Norris, Jennifer 08-07-2018 (00:00:05)**   **NJ01-.196**

152:5   A. In maintaining effective controls
152:6 against diversion, yes.

**153:9 - 153:15**   **Norris, Jennifer 08-07-2018 (00:00:15)**   **NJ01-.50**

153:9   Q. And as we talked earlier, Cardinal has
153:10 an affirmative obligation to maintain effective
153:11 controls against diversion, correct?
153:12   A. Correct.
153:13   Q. That's separate from the suspicious
153:14 order regulation; isn't that true?
153:15   A. Correct.

**154:1 - 154:3**   **Norris, Jennifer 08-07-2018 (00:00:08)**   **NJ01-.51**

154:1   Q. Okay.  So the requirement to maintain
154:2 effective controls against diversion means we have
154:3 to try to prevent diversion; is that correct?

**154:6 - 154:8**   **Norris, Jennifer 08-07-2018 (00:00:04)**   **NJ01-.198**

154:6   A. Cardinal Health has an obligation to
154:7 maintain those effective controls against
154:8 diversion.

**156:21 - 158:2**   **Norris, Jennifer 08-07-2018 (00:01:24)**   **NJ01-.52**

156:21  this is Norris 24.
156:22 And for the record, this is Plaintiff's

NJ01--CT2 Jennifer Norris PLaintiff Submissions

| Page/Line | Source | ID |
|---|---|---|
| | 156:23 Exhibit 14. | |
| | 156:24 | |
| | 157:1 BY MR. FULLER: | |
| | 157:2   Q. Ms. Norris, have you ever seen this | |
| | 157:3 document before? | |
| | 157:4   A. I have not. | |
| | 157:5   Q. And I'll represent to you that it is | |
| | 157:6 from the United States District Court, District of | |
| | 157:7 Arizona. | |
| | 157:8 Do you see that? | |
| | 157:9   A. I see that. | |
| | 157:10   Q. And it's a case in which Arizona | |
| | 157:11 Pharmacy, LLC sued Cardinal Health 110, Inc., et | |
| | 157:12 al.  And this document is actually Defendant | |
| | 157:13 Cardinal's -- Cardinal Health 110, Inc., and | |
| | 157:14 Cardinal Health 411, Inc.'s Response to | |
| | 157:15 Plaintiff's Hearing Brief. | |
| | 157:16 And what I'm going to tell you is that | |
| | 157:17 the basis of this action is that Arizona Pharmacy, | |
| | 157:18 LLC filed a lawsuit requesting a restraining order | |
| | 157:19 against Cardinal for stopping shipments.  Okay? | |
| | 157:20   A. Mm-hmm, yes. | |
| | 157:21   Q. And this is Cardinal's response to that | |
| | 157:22 temporary restraining request, okay? | |
| | 157:23   A. Okay. | |
| | 157:24   Q. So it was written by Cardinal's lawyers | |
| | 158:1 and filed in the Federal District Court in | |
| | 158:2 Arizona. | |
| 159:4 - 159:17 | **Norris, Jennifer 08-07-2018 (00:00:30)** | NJ01-.53 |
| | 159:4   Q. So if you'll turn to page | |
| | 159:5 6. | |
| | 159:6   A. Yes. | |
| | 159:7   Q. And you've had a chance to review this | |
| | 159:8 document, at least most of it, correct? | |
| | 159:9   A. Just now, yes. | |
| | 159:10   Q. Yes, ma'am.  And it is practically what | |
| | 159:11 I -- well, I say practically.  It is what I | |
| | 159:12 explained to you.  It's an action by a pharmacy | |
| | 159:13 or -- a former customer of Cardinal because they | |
| | 159:14 cut -- Cardinal cut them off in trying to get a | |

| NJ01--CT2 Jennifer Norris PLaintiff Submissions | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

|  | 159:15 restraining order to continue shipments of |  |
|  | 159:16 controlled Schedule II substances, opioids, |  |
|  | 159:17 correct? |  |
| 159:19 - 159:21 | **Norris, Jennifer 08-07-2018 (00:00:07)** | **NJ01-.199** |
|  | 159:19   A. The last piece, the specifics aren't |  |
|  | 159:20 included here, but the distribution of controlled |  |
|  | 159:21 substances I believe is what is at issue. |  |
| 161:9 - 161:23 | **Norris, Jennifer 08-07-2018 (00:00:47)** | **NJ01-.54** |
|  | 161:9   Q. And the lawyer in this brief goes on to |  |
|  | 161:10 say, "Any emphasis on whether the Plaintiff is |  |
|  | 161:11 actually diverting controlled substances is a red |  |
|  | 161:12 herring that has no bearing on whether its |  |
|  | 161:13 ordering pattern indicates -- or its ordering |  |
|  | 161:14 patterns indicate that it might be engaged in |  |
|  | 161:15 diversion." |  |
|  | 161:16 Do you agree with that statement, ma'am? |  |
|  | 161:17   A. One of the ways that Cardinal Health has |  |
|  | 161:18 determined whether a customer poses an |  |
|  | 161:19 unreasonable risk of diversion is to look at |  |
|  | 161:20 ordering patterns and determine whether those are |  |
|  | 161:21 similar to other customers who we have terminated |  |
|  | 161:22 for diverting.  That was an element of our |  |
|  | 161:23 program, an anti-diversion program. |  |
| 163:18 - 163:21 | **Norris, Jennifer 08-07-2018 (00:00:11)** | **NJ01-.55** |
|  | 163:18   Q. Cardinal's obligation to maintain |  |
|  | 163:19 effective controls against diversion doesn't mean |  |
|  | 163:20 it has to actually go out and prove that the |  |
|  | 163:21 drugstore or pharmacy is diverting? |  |
| 163:24 - 164:4 | **Norris, Jennifer 08-07-2018 (00:00:15)** | **NJ01-.200** |
|  | 163:24   A. Correct. |  |
|  | 164:1   Q. Okay.  And what Cardinal is attempting |  |
|  | 164:2 to do is to operate in the safest way possible |  |
|  | 164:3 when it's dealing with controlled substances; is |  |
|  | 164:4 that true? |  |
| 164:6 - 164:12 | **Norris, Jennifer 08-07-2018 (00:00:17)** | **NJ01-.203** |
|  | 164:6   A. Cardinal Health takes very seriously its |  |
|  | 164:7 obligations related to all of the work it |  |
|  | 164:8 provides, but also in regard to its distributing |  |
|  | 164:9 of controlled substances, yes. |  |
|  | 164:10   Q. And it wants to do it the safest way |  |

| NJ01--CT2 Jennifer Norris PLaintiff Submissions | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| | 164:11 possible; one, for the general public and, two, to | |
| | 164:12 comply with the regulations; is that fair? | |
| 164:15 - 164:19 | **Norris, Jennifer 08-07-2018 (00:00:10)** | **NJ01-.202** |
| | 164:15   A. Cardinal Health wants to ensure that | |
| | 164:16 it's complying with the obligations under the | |
| | 164:17 statute and the guidance. | |
| | 164:18   Q. Does it also want to ensure that it does | |
| | 164:19 what it can to prevent the public from harm? | |
| 164:22 - 165:5 | **Norris, Jennifer 08-07-2018 (00:00:14)** | **NJ01-.201** |
| | 164:22   A. I don't know that Cardinal owes a duty | |
| | 164:23 to the public regarding that.  Cardinal Health has | |
| | 164:24 an obligation to comply with its obligations under | |
| | 165:1 the law and the guidelines -- | |
| | 165:2   Q. And I'm just -- | |
| | 165:3   A. -- guidance. | |
| | 165:4   Q. I'm sorry.  Go ahead. | |
| | 165:5   A. Guidance instead of guidelines.  Sorry. | |
| 166:4 - 166:5 | **Norris, Jennifer 08-07-2018 (00:00:04)** | **NJ01-.56** |
| | 166:4   Q. Does Cardinal not feel that it has an | |
| | 166:5 obligation to the general public? | |
| 166:8 - 166:15 | **Norris, Jennifer 08-07-2018 (00:00:19)** | **NJ01-.205** |
| | 166:8   A. Cardinal Health does not have an | |
| | 166:9 obligation to the general public.  Cardinal Health | |
| | 166:10 has an obligation to perform its duties in | |
| | 166:11 accordance with the law, the statute, regulations, | |
| | 166:12 and guidance. | |
| | 166:13   Q. And I got it.  So the answer is no, | |
| | 166:14 Cardinal Health does not believe it has an | |
| | 166:15 obligation to the general public, correct? | |
| 166:18 - 166:18 | **Norris, Jennifer 08-07-2018 (00:00:01)** | **NJ01-.204** |
| | 166:18   A. No. | |
| 166:19 - 166:20 | **Norris, Jennifer 08-07-2018 (00:00:03)** | **NJ01-.105** |
| | 166:19   Q. No, that's not correct, or no, you agree | |
| | 166:20 with me? | |
| 166:23 - 167:1 | **Norris, Jennifer 08-07-2018 (00:00:09)** | **NJ01-.207** |
| | 166:23   Q. Let me ask it a different way.  Yes or | |
| | 166:24 no, does Cardinal have a general obligation to | |
| | 167:1 protect the public? | |
| 167:4 - 167:6 | **Norris, Jennifer 08-07-2018 (00:00:07)** | **NJ01-.206** |
| | 167:4   A. Cardinal Health has an obligation to | |

| Page/Line | Source | ID |
|---|---|---|
| | 167:5 comply with the laws that apply to the services it | |
| | 167:6 provides. | |
| 171:21 - 171:23 | **Norris, Jennifer 08-07-2018 (00:00:08)** | **NJ01-.57** |
| | 171:21 Do you agree that on September 27, 2006, | |
| | 171:22 Cardinal Health got instructions with a new | |
| | 171:23 requirement called the shipping requirement? | |
| 172:1 - 172:4 | **Norris, Jennifer 08-07-2018 (00:00:06)** | **NJ01-.212** |
| | 172:1   A. Yes. | |
| | 172:2   Q. And from that point forward, that was | |
| | 172:3 the law in the United States of America according | |
| | 172:4 to Cardinal? | |
| 172:6 - 172:11 | **Norris, Jennifer 08-07-2018 (00:00:16)** | **NJ01-.211** |
| | 172:6   A. From that point forward, that was the | |
| | 172:7 guidance the DEA was providing to Cardinal Health | |
| | 172:8 regarding its obligations. | |
| | 172:9   Q. And according to the DEA, if you did not | |
| | 172:10 follow this guidance, you may be engaging in | |
| | 172:11 unlawful conduct? | |
| 172:14 - 172:19 | **Norris, Jennifer 08-07-2018 (00:00:20)** | **NJ01-.210** |
| | 172:14   A. We may be engaging in activities that do | |
| | 172:15 not comply with the statute, regulations, and | |
| | 172:16 DEA's guidance. | |
| | 172:17   Q. Okay.  Has Cardinal Health since | |
| | 172:18 September 27, 2006 accepted the duties set forth | |
| | 172:19 in the Dear Registrant letter? | |
| 172:21 - 173:3 | **Norris, Jennifer 08-07-2018 (00:00:18)** | **NJ01-.209** |
| | 172:21   A. Generally, yes, as further modified by | |
| | 172:22 additional DEA guidance. | |
| | 172:23   Q. Very good.  So sitting here today, you | |
| | 172:24 can tell me that as of September 27, 2006, | |
| | 173:1 Cardinal Health's position has been that it will | |
| | 173:2 comply moving forward with the Dear Registrant | |
| | 173:3 letter? | |
| 173:5 - 173:10 | **Norris, Jennifer 08-07-2018 (00:00:16)** | **NJ01-.208** |
| | 173:5   A. Generally speaking, yes, as modified by | |
| | 173:6 the additional guidance Cardinal Health received | |
| | 173:7 over time. | |
| | 173:8   Q. Is there anything set forth in the 2006 | |
| | 173:9 Dear Registrant letter that Cardinal Health | |
| | 173:10 objects to, disagrees with, or takes exception to? | |

| Page/Line | Source | ID |
|---|---|---|
| | **NJ01--CT2 Jennifer Norris PLaintiff Submissions** | |

| Page/Line | Source | ID |
|---|---|---|
| 173:17 - 174:1 | **Norris, Jennifer 08-07-2018 (00:00:21)** | NJ01-.58 |
| | 173:17   A. Generally speaking, at least one of the | |
| | 173:18 issues that Cardinal Health took umbrage with was | |
| | 173:19 that -- the idea that the shipping requirement had | |
| | 173:20 always existed. | |
| | 173:21   Q. Okay. | |
| | 173:22   A. It had not. | |
| | 173:23   Q. Okay.  So do you believe that within the | |
| | 173:24 2006 registrant letter, there is a statement | |
| | 174:1 imposing a shipping requirement? | |
| 174:4 - 174:4 | **Norris, Jennifer 08-07-2018 (00:00:01)** | NJ01-.213 |
| | 174:4   A. Generally speaking, yes. | |
| 174:16 - 174:20 | **Norris, Jennifer 08-07-2018 (00:00:22)** | NJ01-.59 |
| | 174:16   Q. Okay.  So I'm now going to have marked | |
| | 174:17 the next sequential exhibit, which is the | |
| | 174:18 Deposition Exhibit 15, but is Norris 15, which | |
| | 174:19 I'll represent to you is the December 27, 2007 DEA | |
| | 174:20 letter that you just referenced. | |
| 183:19 - 183:24 | **Norris, Jennifer 08-07-2018 (00:00:14)** | NJ01-.214 |
| | 183:19   Q.  Now what I'm going to ask | |
| | 183:20 you to go and look at is -- you're familiar with | |
| | 183:21 the amicus brief in Masters Pharmaceutical? | |
| | 183:22   A. I am. | |
| | 183:23   Q. Did you participate in writing it? | |
| | 183:24   A. I did not. | |
| 185:2 - 185:4 | **Norris, Jennifer 08-07-2018 (00:00:05)** | NJ01-.225 |
| | 185:2 So are you aware of whether or not | |
| | 185:3 Cardinal Health approved the amicus brief prior to | |
| | 185:4 filing? | |
| 185:7 - 185:8 | **Norris, Jennifer 08-07-2018 (00:00:04)** | NJ01-.226 |
| | 185:7   A. It provided commentary.  I don't know if | |
| | 185:8 that commentary rose to the level of approval. | |
| 185:12 - 186:20 | **Norris, Jennifer 08-07-2018 (00:01:56)** | NJ01-.216 |
| | 185:12   Q. I'm going to have marked now Deposition | |
| | 185:13 Exhibit 16.  I'm going to hand it to you.  It is | |
| | 185:14 Bates-stamped ABDCMDL00275057.  It is the | |
| | 185:15 Healthcare Distribution Management Association's | |
| | 185:16 Executive Committee Meeting summary from June 12, | |
| | 185:17 2016 held in Colorado Springs, Colorado. | |
| | 185:18 Have you seen or are you familiar with | |

| Page/Line | Source | ID |
|---|---|---|

185:19 this document?

185:20   A. I am not.  I have not.

185:21   Q. When you flip to page 2, you'll notice

185:22 that it says June 12, 2016, or on the front page

185:23 as well.

185:24   A. Yes, it says June 12, 2016.

186:1   Q. The first thing I'd like to direct your

186:2 attention to is the very beginning on page 4.  And

186:3 you'll notice at the top, these are the minutes

186:4 from the Pebble Beach, California Executive

186:5 Committee meeting.  And you'll see in

186:6 attendance -- well, you see the second person who

186:7 is in attendance?

186:8   A. Yes.

186:9   Q. Who is that?

186:10   A. John Giacomin, Vice Chairman.

186:11   Q. Of?

186:12   A. CEO, Pharmaceutical Segment, Cardinal

186:13 Health, Inc.

186:14   Q. So Cardinal Health, Inc. sent their CEO

186:15 of the Pharmaceutical Segment to this meeting,

186:16 correct?

186:17   A. Well, I believe John serves on the

186:18 Executive Committee.

186:19   Q. Cardinal Health sent its CEO to attend

186:20 this meeting?

**186:22 - 188:7**   **Norris, Jennifer 08-07-2018 (00:01:43)**   **NJ01-.217**

186:22   A. The CEO of the Pharmaceutical Segment

186:23 who was on the Executive Committee.

186:24   Q. Of HDMA?

187:1   A. Yes.

187:2   Q. Now, if you look down at the bottom at

187:3 the Welcome and Administrative Matters, actually

187:4 Mr. Giacomin from Cardinal Health chaired this

187:5 meeting, correct?

187:6   A. That's what it appears from the

187:7 language, yes.

187:8   Q. Now, if you flip to the next page under

187:9 paragraph C, Legal Issues, the first item is the

187:10 Masters Pharmaceuticals case.

| Page/Line | Source | ID |
|---|---|---|
| | **NJ01--CT2 Jennifer Norris PLaintiff Submissions** | |

187:11 Would you read aloud what the summary
187:12 says?
187:13   A. "The status of the Masters litigation as
187:14 well as discussion of the draft amicus curiae
187:15 brief to be possibly filed on behalf of HDMA will
187:16 be discussed later in the meeting led by President
187:17 Gray and HDMA General Counsel Gallenagh."
187:18   Q. Now, if you flip to the next page,
187:19 you'll see that there is a provision -- no.  We're
187:20 going to go down to the Masters first.  You're
187:21 going to see that under Masters amicus brief, it
187:22 states, "The central theme of the draft brief is
187:23 that DEA must follow statutory and regulatory
187:24 requirements regarding the imposition of
188:1 suspicious order reporting.  Notice-and-comment
188:2 rule-making required."
188:3 Do you see that?
188:4   A. I see that.
188:5   Q. So when you look below at the actions,
188:6 you'll see that it was subject to a vote and
188:7 approved to submit an amicus brief, agreed?

| 188:9 - 188:22 | **Norris, Jennifer 08-07-2018 (00:00:35)** | NJ01-.62 |

188:9   A. The executive committee approved filing
188:10 of the brief.
188:11   Q. Right.  Now, flip to the previous page.
188:12 And the interesting thing is that they're talking
188:13 about the West Virginia litigation.
188:14   A. I'm sorry.  Flip to what page?  I
188:15 apologize.
188:16   Q. That's all right.  The previous page.
188:17 It will be 5 at the bottom of the page, I think.
188:18   A. Yes.
188:19   Q. And you'll see that there's a provision
188:20 in there about the West Virginia litigation under
188:21 Item 4.  And the paragraph at the bottom of the
188:22 page --

| 189:1 - 189:24 | **Norris, Jennifer 08-07-2018 (00:01:00)** | NJ01-.63 |

189:1   A. Okay.
189:2   Q. Now, the last paragraph that's on that
189:3 page starting with "Counsel Frank," will you read

| Page/Line | Source | ID |
|---|---|---|

189:4 that aloud, please?

189:5   A. "Counsel Frank characterized the series

189:6 of DEA and state actions as efforts to improperly

189:7 expand distributors' responsibilities beyond

189:8 simply reporting suspicious orders to actually

189:9 preventing the distribution of controlled

189:10 substances to licensed dispensers.  States are

189:11 bringing these actions for similar reasons but

189:12 also in an effort to collect monetary damages and

189:13 penalties."

189:14   Q. So now you understand my confusion from

189:15 this morning when it seems as if Cardinal Health

189:16 is participating in an amicus brief and

189:17 characterizing the DEA and the state actions as

189:18 actually requiring you, Cardinal Health, to

189:19 prevent distribution of controlled substances to

189:20 licensed dispensers.

189:21 So, again, my question goes back to it.

189:22 Prior to the release of Masters Pharmaceutical,

189:23 are you sure Cardinal Health hadn't flip-flopped

189:24 its positions regarding the shipping requirement?

| 190:3 - 190:12 | **Norris, Jennifer 08-07-2018 (00:00:23)** | **NJ01-.218** |

190:3   A. No, I do not believe Cardinal Health

190:4 flip-flopped its position.  We designed our

190:5 program to comply with the shipping requirement.

190:6 The fact that we participated in these briefs

190:7 doesn't mean that we were not complying with the

190:8 requirements as we understood the DEA to have

190:9 provided us guidance for.

190:10   Q. Understood.  We'll get to the brief now,

190:11 which is going to be marked as Exhibit 17.  It's

190:12 Norris 20.

| 190:22 - 191:7 | **Norris, Jennifer 08-07-2018 (00:00:19)** | **NJ01-.64** |

190:22   Q. Have you reviewed this document prior to

190:23 today?

190:24   A. I have.

191:1   Q. You're aware that it's one of the items

191:2 listed in the 30(b)(6) notice?

191:3   A. I am.

191:4   Q. This is the amicus brief that was

| Page/Line | Source | ID |
|---|---|---|
| | 191:5 approved by HDMA during a meeting chaired by | |
| | 191:6 Cardinal Health's CEO. | |
| | 191:7   A. Approved to be filed, yes. | |
| 192:21 - 193:11 | **Norris, Jennifer 08-07-2018 (00:00:40)** | NJ01-.65 |
| | 192:21   Q. All right.  Now, if you flip to page 5, | |
| | 192:22 Norris 20-005. | |
| | 192:23   A. Yes. | |
| | 192:24   Q. So at the very -- the first highlighted | |
| | 193:1 provision in there, I'll read it aloud to make | |
| | 193:2 this quicker.  "The public health dangers | |
| | 193:3 associated with diversion and abuse of controlled | |
| | 193:4 prescription drugs have been well recognized by | |
| | 193:5 Congress, DEA, public health authorities, and | |
| | 193:6 others, including HDMA and NACDS and their | |
| | 193:7 members." | |
| | 193:8 Do you see that? | |
| | 193:9   A. I do. | |
| | 193:10   Q. Sitting here today, does Cardinal Health | |
| | 193:11 ratify and agree with that statement? | |
| 193:14 - 193:15 | **Norris, Jennifer 08-07-2018 (00:00:03)** | NJ01-.219 |
| | 193:14   A. Cardinal Health agrees with this | |
| | 193:15 statement. | |
| 194:13 - 194:15 | **Norris, Jennifer 08-07-2018 (00:00:07)** | NJ01-.66 |
| | 194:13   Q. Okay.  So how about this:  Let's play | |
| | 194:14 true or false.  I'll read the sentence, and you | |
| | 194:15 say true or say false, okay? | |
| 194:18 - 195:1 | **Norris, Jennifer 08-07-2018 (00:00:19)** | NJ01-.67 |
| | 194:18   A. Okay. | |
| | 194:19   Q. "The public health dangers associated | |
| | 194:20 with the diversion and abuse of controlled | |
| | 194:21 prescription drugs have been well recognized by | |
| | 194:22 Congress, DEA, public health authorities and | |
| | 194:23 others, including HDMA and NACDS and their | |
| | 194:24 members." | |
| | 195:1 True or false? | |
| 195:4 - 195:10 | **Norris, Jennifer 08-07-2018 (00:00:21)** | NJ01-.223 |
| | 195:4   A. True. | |
| | 195:5   Q. "HDMA and NACDS members not only have | |
| | 195:6 statutory and regulatory responsibilities to guard | |
| | 195:7 against diversion of controlled prescription drugs | |

| Page/Line | Source | ID |
|---|---|---|

**NJ01--CT2 Jennifer Norris PLaintiff Submissions**

195:8 but undertakes such efforts as responsible members
195:9 of society."
195:10 True or false?

| | | |
|---|---|---|
| 195:13 - 195:17 | **Norris, Jennifer 08-07-2018 (00:00:09)** | NJ01-.222 |

195:13   A. I disagree with the "undertake such
195:14 efforts as responsible members of society."  We
195:15 have a statutory and regulatory obligation that we
195:16 comply with.
195:17   Q. So it's false?

| | | |
|---|---|---|
| 195:20 - 196:1 | **Norris, Jennifer 08-07-2018 (00:00:14)** | NJ01-.220 |

195:20   A. No, not in total.
195:21   Q. You're sitting here on behalf of
195:22 Cardinal Health today, not in-house counsel.
195:23 Does Cardinal Health accept or reject
195:24 the fact that as responsible members of society,
196:1 they have a duty to guard against diversion?

| | | |
|---|---|---|
| 196:4 - 196:6 | **Norris, Jennifer 08-07-2018 (00:00:06)** | NJ01-.221 |

196:4   A. Cardinal Health has regulatory and legal
196:5 obligations that it must comply with in performing
196:6 its services, which is what it does.

| | | |
|---|---|---|
| 197:12 - 198:4 | **Norris, Jennifer 08-07-2018 (00:00:45)** | NJ01-.68 |

197:12   Q. Now, if you go down to the next part,
197:13 you'll see where it says "But in certain recent
197:14 pronouncements."
197:15 Would you read that?
197:16   A. Yes.
197:17   Q. It says, "DEA has required distributors
197:18 not only to report suspicious orders, but to
197:19 investigate orders; as an example, interrogating
197:20 pharmacies and physicians and take action to halt
197:21 orders before they are filed.
197:22 "Those added obligations would
197:23 significantly expand the report only duty of
197:24 distributors under the longstanding regulatory
198:1 scheme and impose impractical obligations on
198:2 distributors."
198:3 Does Cardinal Health agree or disagree
198:4 with that statement?

| | | |
|---|---|---|
| 198:7 - 198:20 | **Norris, Jennifer 08-07-2018 (00:00:36)** | NJ01-.228 |

198:7   A. Cardinal Health agrees that the

| Page/Line | Source | ID |
|---|---|---|

NJ01--CT2 Jennifer Norris PLaintiff Submissions

198:8 reporting obligation was a new obligation imposed
198:9 by -- sorry.  I misspoke.  The shipping obligation
198:10 was a new obligation imposed by the DEA which
198:11 Cardinal Health complied with once they were made
198:12 aware of it.
198:13   Q. This is -- listen.  This amicus brief
198:14 was submitted in what year?
198:15   A. 2016, '17.
198:16   Q. Okay.  And what year did Cardinal Health
198:17 receive the shipping requirement Dear Registrant
198:18 letter?
198:19   A. Initially in 2006.
198:20   Q. So a decade earlier, correct?

**198:22 - 198:22   Norris, Jennifer 08-07-2018 (00:00:01)**     **NJ01-.227**

198:22   A. Correct.

**198:23 - 199:2   Norris, Jennifer 08-07-2018 (00:00:11)**     **NJ01-.106**

198:23   Q. This document submitted by Cardinal
198:24 Health's trade group seems to indicate a rejection
199:1 of the shipping requirement ten days before the
199:2 Masters Pharmaceutical case was released.

**199:5 - 199:10   Norris, Jennifer 08-07-2018 (00:00:25)**     **NJ01-.229**

199:5   A. I believe when you read the brief in
199:6 total, it refers clearly to the 2006 DEA letters.
199:7 So the -- if there is an insinuation that they are
199:8 somehow saying that it's new then in 2016, '17,
199:9 that's not the -- that's not what the entire
199:10 letter says.

**199:11 - 199:12   Norris, Jennifer 08-07-2018 (00:00:08)**     **NJ01-.69**

199:11   Q. Well, let's go to page 9 where the brief
199:12 literally says, "Nothing" --

**199:21 - 200:3   Norris, Jennifer 08-07-2018 (00:00:28)**     **NJ01-.70**

199:21   Q. "Nothing in Sections 1301.72 to 1301.76
199:22 requires distributors to investigate the
199:23 legitimacy of orders or to halt shipment of any
199:24 orders deemed to be suspicious."
200:1 That's the position Cardinal Health was
200:2 taking through its trade group in June of 2016 --
200:3 2017.  That's not true, is it?

**200:6 - 200:8   Norris, Jennifer 08-07-2018 (00:00:06)**     **NJ01-.224**

200:6   A. It is true.  There is nothing in the

| NJ01--CT2 Jennifer Norris PLaintiff Submissions | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| Page/Line | Source | ID |
|---|---|---|
| | 200:7 regulation.  The guidance provided by the DEA | |
| | 200:8 provided the shipping requirements. | |
| 201:11 - 201:14 | **Norris, Jennifer 08-07-2018 (00:00:10)** | NJ01-.71 |
| | 201:11   Q. The D.C. Circuit Court of Appeals in | |
| | 201:12 Masters Pharmaceutical affirmed the position taken | |
| | 201:13 by the DEA in its 2006 and 2007 Dear Registrant | |
| | 201:14 letters -- | |
| 201:16 - 201:16 | **Norris, Jennifer 08-07-2018 (00:00:00)** | NJ01-.72 |
| | 201:16   Q. -- agreed? | |
| 201:19 - 201:21 | **Norris, Jennifer 08-07-2018 (00:00:05)** | NJ01-.73 |
| | 201:19   A. It affirmed that there is a shipping | |
| | 201:20 requirement. | |
| | 201:21   Q. So the answer to my question is yes? | |
| 201:24 - 202:20 | **Norris, Jennifer 08-07-2018 (00:01:11)** | NJ01-.74 |
| | 201:24   A. Yes.  They affirmed there is a shipping | |
| | 202:1 requirement. | |
| | 202:2   Q. Now, you testified earlier that there | |
| | 202:3 were -- that the DEA told Cardinal Health that the | |
| | 202:4 duty was report only prior to 2006. | |
| | 202:5 Do you remember that testimony? | |
| | 202:6   A. I don't know that I said the DEA told | |
| | 202:7 us.  It was our understanding that it was report | |
| | 202:8 only based on the guidance we had received from | |
| | 202:9 the DEA prior to 2006. | |
| | 202:10   Q. I've got to write that word down. | |
| | 202:11 Guidance. | |
| | 202:12 What guidance did you receive?  Is it in | |
| | 202:13 writing somewhere? | |
| | 202:14   A. There's the 1998 DEA report to the | |
| | 202:15 Attorney General that speaks to the required | |
| | 202:16 reporting. | |
| | 202:17   Q. So wait a minute.  You're relying upon a | |
| | 202:18 1998 letter to the Attorney General as the basis | |
| | 202:19 for compliance with your duty to prevent | |
| | 202:20 diversion, yes? | |
| 203:4 - 203:15 | **Norris, Jennifer 08-07-2018 (00:00:30)** | NJ01-.230 |
| | 203:4   Q. So I'm asking you again.  Other than the | |
| | 203:5 1998 letter, are there any other written documents | |
| | 203:6 that you rely upon as guidance that your duty was | |
| | 203:7 report only? | |

| NJ01--CT2 Jennifer Norris PLaintiff Submissions | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

|  | 203:8   A. At this time, I'm not aware of any | |
|  | 203:9 specific other written documents. | |
|  | 203:10   Q. Okay.  This 1998 letter, who was it to | |
|  | 203:11 and from? | |
|  | 203:12   A. It wasn't a letter.  It was a report by | |
|  | 203:13 the DEA to the Attorney General. | |
|  | 203:14   Q. Of the United States? | |
|  | 203:15   A. Yes. | |
| 209:9 - 209:12 | **Norris, Jennifer 08-07-2018 (00:00:24)** | **NJ01-.76** |
|  | 209:9   Q. I'm going to have marked next which is | |
|  | 209:10 Plaintiff's Exhibit 18.  It is Bates-stamped | |
|  | 209:11 ABDC_MDL_00278063.  And I'm going to show it to | |
|  | 209:12 you and ask if you've seen this document before. | |
| 210:24 - 212:4 | **Norris, Jennifer 08-07-2018 (00:01:08)** | **NJ01-.77** |
|  | 210:24   Q. I'm not going to spend a tremendous | |
|  | 211:1 amount of time on this document. | |
|  | 211:2   A. That's fine.  I'm sorry.  I've never | |
|  | 211:3 seen this document before, so I'm not even clear | |
|  | 211:4 exactly what the purpose of it is.  So I just | |
|  | 211:5 wanted to make sure I at least -- | |
|  | 211:6   Q. I'll walk you through some of the | |
|  | 211:7 highlights. | |
|  | 211:8 Will you identify the title of this | |
|  | 211:9 document? | |
|  | 211:10   A. The title on the front page is "Crisis | |
|  | 211:11 Playbook:  An Interactive Guide to Crisis | |
|  | 211:12 Communications." | |
|  | 211:13   Q. And it's published by whom? | |
|  | 211:14   A. HDMA is listed on the front. | |
|  | 211:15   Q. And, again, this is the trade | |
|  | 211:16 organization which includes as its members, and on | |
|  | 211:17 the executive committee, Cardinal Health? | |
|  | 211:18   A. Yes. | |
|  | 211:19   Q. And if you look on page 2, you'll notice | |
|  | 211:20 that the Core Crisis Team is identified, and it | |
|  | 211:21 appears to be internal employees of HDMA.  And | |
|  | 211:22 underneath it is the executive committee, and at | |
|  | 211:23 the time, it identifies Mark -- or Mike Kaufmann | |
|  | 211:24 from Cardinal Health, agreed? | |
|  | 212:1   A. Agreed. | |

| NJ01--CT2 Jennifer Norris PLaintiff Submissions | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| | | |
|---|---|---|
| | 212:2  Q. On page 3, it identifies the objectives | |
| | 212:3 of this Crisis Playbook, and would you read the | |
| | 212:4 first two. | |
| 212:8 - 212:11 | **Norris, Jennifer 08-07-2018 (00:00:09)** | **NJ01-.78** |
| | 212:8  A. "Provide clear guidelines for | |
| | 212:9 classifying crisis situations.  Define roles and | |
| | 212:10 responsibilities in a crisis situation." | |
| | 212:11  Q. And read the very last entry point. | |
| 212:13 - 212:17 | **Norris, Jennifer 08-07-2018 (00:00:12)** | **NJ01-.231** |
| | 212:13  A. "Have ready-to-use response materials on | |
| | 212:14 hand for high risk scenarios." | |
| | 212:15  Q. Now, this was created in the year 2013, | |
| | 212:16 and as Cardinal Health, are you familiar with it | |
| | 212:17 at all? | |
| 212:20 - 213:5 | **Norris, Jennifer 08-07-2018 (00:00:30)** | **NJ01-.232** |
| | 212:20  Q. If you flip to page 4 where it says | |
| | 212:21 "Communicate Early."  Can you read that aloud? | |
| | 212:22  A. "Getting ahead of an issue, or getting | |
| | 212:23 your message across as early as possible, is | |
| | 212:24 always -- almost always the best way to minimize | |
| | 213:1 damage from a negative event." | |
| | 213:2  Q. And then over where it says "Express | |
| | 213:3 emotion appropriately," would you read that aloud? | |
| | 213:4  A. "The public demands more than the letter | |
| | 213:5 of the law or minimum adherence to regulations." | |
| 214:8 - 214:12 | **Norris, Jennifer 08-07-2018 (00:00:14)** | **NJ01-.79** |
| | 214:8  Q. So as of 2013, this crisis management | |
| | 214:9 plan provided by HDMA to its members includes a | |
| | 214:10 consideration of being able to drive the narrative | |
| | 214:11 in a crisis. | |
| | 214:12 Do you see that? | |
| 214:14 - 214:21 | **Norris, Jennifer 08-07-2018 (00:00:21)** | **NJ01-.235** |
| | 214:14  A. I see a comment that says, "If you | |
| | 214:15 announce first, to what extent will you be able to | |
| | 214:16 drive the narrative?" | |
| | 214:17  Q. If you flip to the next page, you'll see | |
| | 214:18 in 2013, HDMA has already used this chart to run a | |
| | 214:19 risk analysis of the controlled substance | |
| | 214:20 diversion issue. | |
| | 214:21 Do you see that? | |

| Page/Line | Source | ID |
|---|---|---|
| | NJ01--CT2 Jennifer Norris PLaintiff Submissions | |

| Page/Line | Source | ID |
|---|---|---|
| 214:23 - 215:2 | **Norris, Jennifer 08-07-2018 (00:00:10)** | **NJ01-.234** |
| | 214:23   A. I see the bullet point. | |
| | 214:24   Q. Are you aware of whether or not HDMA | |
| | 215:1 circulated to Cardinal Health bullet points to | |
| | 215:2 discuss diversion lawsuits or diversion issues? | |
| 215:4 - 215:4 | **Norris, Jennifer 08-07-2018 (00:00:01)** | **NJ01-.233** |
| | 215:4   A. I am not. | |
| 216:6 - 216:14 | **Norris, Jennifer 08-07-2018 (00:00:21)** | **NJ01-.80** |
| | 216:6   Q. The last three digits are 081, | |
| | 216:7 Third-Party Outreach.  It says, "Identify | |
| | 216:8 potential third parties who could speak | |
| | 216:9 knowledgably about the issue by noting individuals | |
| | 216:10 or groups who have commented on the issue in news | |
| | 216:11 coverage, at conferences, or in published | |
| | 216:12 materials." | |
| | 216:13 Are you aware of any such coordinated | |
| | 216:14 activity? | |
| 216:16 - 217:1 | **Norris, Jennifer 08-07-2018 (00:00:48)** | **NJ01-.236** |
| | 216:16   A. I am not. | |
| | 216:17 MR. FARRELL:  Exhibit page 24? | |
| | 216:18 MS. VELDMAN:  86. | |
| | 216:19 BY MR. FARRELL: | |
| | 216:20   Q. 086 on the Bates stamp.  This Crisis | |
| | 216:21 Playbook identifies six issues related to | |
| | 216:22 diversion.  If you flip to the next page, Scenario | |
| | 216:23 1 is a DEA Registration Suspension. | |
| | 216:24   A. I see "Scenario 1:  DEA Registration | |
| | 217:1 Suspension." | |
| 217:19 - 217:21 | **Norris, Jennifer 08-07-2018 (00:00:10)** | **NJ01-.81** |
| | 217:19   Q. Has Cardinal Health engaged in proactive | |
| | 217:20 efforts to shift the message toward misdirected | |
| | 217:21 DEA enforcement? | |
| 217:24 - 218:4 | **Norris, Jennifer 08-07-2018 (00:00:20)** | **NJ01-.239** |
| | 217:24   A. I do not recall specifically, no. | |
| | 218:1   Q. If, in fact, Cardinal Health has in the | |
| | 218:2 past intervening five years attempted to direct | |
| | 218:3 blame toward the DEA, you would agree that it | |
| | 218:4 happens to coincide with the 2013 playbook? | |
| 218:7 - 218:23 | **Norris, Jennifer 08-07-2018 (00:01:03)** | **NJ01-.238** |
| | 218:7   A. Just because HDMA published a playbook | |

| NJ01--CT2 Jennifer Norris PLaintiff Submissions | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

218:8 that I know Mike Kaufmann was on the executive
218:9 committee does not mean that that's necessarily
218:10 how Cardinal Health handled its communications
218:11 related to the issue at hand.
218:12   Q. If you flip to the next page, "Scenario
218:13 1:  DEA Registration Suspension," there's a "Tough
218:14 Q&A" question.  So this is a playbook that HDMA,
218:15 your trade group, circulated amongst its members,
218:16 including Cardinal Health, and it's how to react
218:17 in the media if one of your members gets its
218:18 registration suspended.
218:19 And one of the tough questions it was
218:20 prepping its members for is, if it's asked, "What
218:21 is HDMA's perspective on the registration
218:22 suspension?  Was this action warranted?"
218:23 Would you read the next sentence?

| 219:2 - 219:11 | **Norris, Jennifer 08-07-2018 (00:00:29)** | NJ01-.237 |

219:2   A. "HDMA is not familiar with the
219:3 particulars of this situation, but we are
219:4 disappointed that the DEA appears to be pursuing a
219:5 path of conflict rather than collaboration with
219:6 our industry."
219:7   Q. So, again, in 2013, this is HDMA
219:8 advising its constituents, including Cardinal
219:9 Health, to push the message that the DEA's
219:10 enforcement actions are paths of conflict rather
219:11 than collaboration?

| 219:14 - 219:16 | **Norris, Jennifer 08-07-2018 (00:00:06)** | NJ01-.164 |

219:14   A. It's providing guidance to the HDMA
219:15 members that the HDMA members can then choose to
219:16 use at their discretion.

| 222:14 - 222:15 | **Norris, Jennifer 08-07-2018 (00:00:04)** | NJ01-.82 |

222:14   Q. So what is Scenario 4 that HDMA is
222:15 preparing for back in 2013?

| 222:17 - 223:1 | **Norris, Jennifer 08-07-2018 (00:00:23)** | NJ01-.163 |

222:17   A. The title of the page is "Scenario 4:
222:18 Congressional Inquiry."
222:19   Q. So five years before Congress subpoenaed
222:20 Cardinal Health, McKesson, AmerisourceBergen, H.D.
222:21 Smith and Miami-Luken, HDMA was ahead of the wave

| Page/Line | Source | ID |
|---|---|---|

223:4 - 223:9

222:22 and already prepping and preparing and advising
222:23 for media statements regarding a Congressional
222:24 inquiry.
223:1 Do you agree with that?

**Norris, Jennifer 08-07-2018 (00:00:10)**                NJ01-.162

223:4   A. The document covers Congressional
223:5 inquiry.  And, again, it's guidance to be provided
223:6 to the members that the members can use at their
223:7 discretion.
223:8   Q. Five years before Congress had an
223:9 inquiry?

223:12 - 223:13   **Norris, Jennifer 08-07-2018 (00:00:03)**                NJ01-.161

223:12   A. Yes, five years prior to the inquiry
223:13 you're referencing.

226:3 - 226:13   **Norris, Jennifer 08-07-2018 (00:00:35)**                NJ01-.83

226:3   Q. Does Cardinal have a suspicious order
226:4 monitoring program?
226:5   A. It does.
226:6   Q. And when did it first create it?
226:7 MS. MAINIGI:  Objection; time period.
226:8   A. Cardinal Health has had a suspicious
226:9 order monitoring system specifically since about
226:10 2007.
226:11   Q. So prior to 2007, Cardinal Health did
226:12 not have a specific suspicious order monitoring
226:13 program --

226:15 - 226:15   **Norris, Jennifer 08-07-2018 (00:00:00)**                NJ01-.160

226:15   Q. -- is that correct?

226:18 - 227:10   **Norris, Jennifer 08-07-2018 (00:00:53)**                NJ01-.84

226:18   A. Cardinal Health maintained the program
226:19 as it understood as directed by the DEA to report
226:20 the orders pursuant to the ingredient limit
226:21 reports we talked about this morning, as well as
226:22 the excessive order reports.  But as far as an
226:23 electronic suspicious order monitoring system, our
226:24 program evolved in 2007 to include that.
227:1   Q. So prior to 2007, Cardinal was not
227:2 monitoring suspicious orders electronically; can
227:3 we agree on that?
227:4   A. No.  Cardinal Health -- the reports were

| NJ01--CT2 Jennifer Norris PLaintiff Submissions | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

227:5 generated electronically, the ingredient limit
227:6 reports, as well as the ARCOS reports actually,
227:7 but --
227:8 (Reporter clarification.)
227:9   A. As well as the ARCOS reports.  So they
227:10 were produced electronically.

244:11 - 247:4 | **Norris, Jennifer 08-07-2018 (00:03:15)** | NJ01-.107

244:11 MS. MAINIGI:  Mr. Fuller, Ms. Norris has
244:12 one clarification that she would like to put on
244:13 the record.
244:14 MR. FULLER:  Okay.
244:15 THE WITNESS:  I just want to make sure
244:16 that I was clear, because I think we were using
244:17 "suspicious order monitoring system" and
244:18 "suspicious order monitoring program" somewhat
244:19 interchangeably, and those are two different
244:20 things.
244:21 Cardinal Health has had a suspicious
244:22 order monitoring program in place since the
244:23 inception of the statute, which imposed the
244:24 requirements on us to monitor for suspicious
245:1 orders.
245:2   Q. And does that include the documents that
245:3 we looked at, or is that a separate --
245:4   A. That's part -- you mean the compliance
245:5 policies and procedures, the reporting
245:6 requirements?
245:7   Q. Yes, ma'am.  I'm not sure what you want
245:8 to call them.  I think it's 19, 21 -- 19, 20, 21,
245:9 and 22.
245:10   A. Those detailed --
245:11   Q. The suspicious ordering monitoring
245:12 programs?
245:13   A. Yes.
245:14   Q. Was there anything else that was sent
245:15 out in the suspicious order monitoring programs
245:16 other than what's in those documents?  Are there
245:17 other documents that set out this, quote, unquote,
245:18 program?
245:19   A. Not to my knowledge during that time

| Page/Line | Source | ID |
|---|---|---|

**NJ01--CT2 Jennifer Norris PLaintiff Submissions**

245:20 period.
245:21   Q. And these documents were in place up
245:22 until the -- I think the 2006 document we looked
245:23 at; is that right?
245:24   A. They were -- the second packet was dated
246:1 2006.
246:2   Q. Okay.  Correct.  So are there any other
246:3 documents out there that would set out what
246:4 Cardinal's suspicious order monitoring system or
246:5 program was that you are aware of?
246:6   A. The suspicious order monitoring program,
246:7 not that I'm aware of, no.
246:8   Q. Now, how about the suspicious order
246:9 monitoring systems?
246:10   A. When I refer to the suspicious order
246:11 monitoring system, I'm referring to the
246:12 enhancement to the program that we made in the
246:13 2007 time frame, the electronic order monitoring
246:14 program with thresholds.
246:15   Q. Okay.  So prior to 2007 or whenever this
246:16 new upgrade was rolled out, Cardinal did not
246:17 monitor thresholds, correct?
246:18   A. We didn't call them thresholds, but the
246:19 ingredient limit reports acted like a threshold.
246:20 When the customer purchased the amount as
246:21 indicated by the DEA that they wanted reported, we
246:22 reported it, and we had the ingredient -- I'm
246:23 sorry -- the excessive limit reports which were
246:24 guided somewhat in part by dosage limit charts
247:1 that were posted in our cages and vaults that gave
247:2 guidance to appropriate amounts of the particular
247:3 drugs listed that should be ordered by that type
247:4 of customer.

259:21 - 260:12      **Norris, Jennifer 08-07-2018 (00:00:47)**      **NJ01-.158**

259:21   Q. So before we release an order, we have
259:22 to make sure we have documentation presumptively
259:23 in some sort of diligence file, or due diligence
259:24 file, before we release it, correct, if it exceeds
260:1 a threshold?
260:2   A. Correct.

| Page/Line | Source | ID |
|---|---|---|

NJ01--CT2 Jennifer Norris PLaintiff Submissions

260:3   Q. And if we're not doing that, we're not
260:4 fulfilling our obligation under this policy and
260:5 procedure, correct?
260:6   A. We would not be in compliance with the
260:7 policy if we're not doing what the policy says.
260:8   Q. And if we're not doing our due diligence
260:9 and we're shipping and cutting -- or excuse me --
260:10 shipping and releasing orders they're going to
260:11 flag as suspicious, we wouldn't be complying with
260:12 the law either, correct?

**260:15 - 260:19    Norris, Jennifer 08-07-2018 (00:00:20)**                                   **NJ01-.159**

260:15   A. We wouldn't be complying with our
260:16 policy, and we would not be complying with the
260:17 obligation under the statute and the relevant
260:18 guidance that the DEA has provided that orders
260:19 identified as suspicious should not be shipped.

**264:16 - 264:22    Norris, Jennifer 08-07-2018 (00:00:18)**                                   **NJ01-.156**

264:16   Q. And you would agree with me, would you
264:17 not, that based on the thresholds in the policies
264:18 and procedures that we've looked at, that once an
264:19 entity hits its threshold and has a threshold
264:20 event, it can no longer ship that drug family to
264:21 that same customer, drugstore, or pharmacy,
264:22 correct?

**265:1 - 265:4     Norris, Jennifer 08-07-2018 (00:00:05)**                                   **NJ01-.157**

265:1   A. During the applicable monthly accrual
265:2 cycle.
265:3   Q. Correct.
265:4   A. Yes.

**268:24 - 269:2    Norris, Jennifer 08-07-2018 (00:00:06)**                                   **NJ01-.151**

268:24   Q. Now, there's a procedure to go through
269:1 for a threshold increase, and that would have to
269:2 be something that was documented; is that correct?

**269:4 - 269:22    Norris, Jennifer 08-07-2018 (00:00:54)**                                   **NJ01-.152**

269:4   A. Yes.
269:5   Q. Okay.  What type of things generate or
269:6 cause a threshold increase?  Are you aware?
269:7   A. I am aware of some of them, yes.
269:8   Q. What type of things would cause or be a
269:9 legitimate threshold increase?

| Page/Line | Source | ID |
|---|---|---|

NJ01--CT2 Jennifer Norris PLaintiff Submissions

269:10   A. The customer's business could change.
269:11 For example, they have a hospital nextdoor that
269:12 had 100 beds.  They open up a wing that has an
269:13 additional 400 beds.  They open up a cancer
269:14 center.  There's another type of doctor office
269:15 that opens down the street, for example.
269:16   Q. So some change in the business climate
269:17 or the operations?  Maybe another pharmacy down
269:18 the road went out of business?
269:19   A. Yes.
269:20   Q. That would be a legitimate reason to
269:21 increase a threshold, correct?
269:22   A. Yes.

**269:23 - 270:1**   **Norris, Jennifer 08-07-2018 (00:00:07)**   **NJ01-.153**

269:23   Q. Something like Thanksgiving wouldn't
269:24 necessarily be a legitimate reason to increase a
270:1 threshold, would it?

**270:3 - 270:20**   **Norris, Jennifer 08-07-2018 (00:00:58)**   **NJ01-.154**

270:3   A. There was a period of time --
270:4   Q. Go ahead.
270:5   A. There was a period of time -- and I'm
270:6 thinking of a specific example in the information
270:7 that I reviewed -- that based on how many, for
270:8 example, Mondays and Tuesdays are in a month,
270:9 whether there's a holiday in a month, for example,
270:10 Thanksgiving, that could affect the customer's
270:11 ordering pattern for that month.
270:12 And I believe it was explained in Nick
270:13 Rousch's declaration that there might be a
270:14 threshold increase to account for that for that
270:15 month.
270:16   Q. And then the threshold would have to be
270:17 reduced back down presumptively, correct?  It
270:18 wouldn't be a permanent increase?
270:19   A. That would be my presumption, because it
270:20 was reflecting very specific circumstances.

**276:11 - 277:17**   **Norris, Jennifer 08-07-2018 (00:01:44)**   **NJ01-.148**

276:11   Q. Okay.  Well, let's go with that.  25 it
276:12 is.
276:13   A. Okay.

| | NJ01--CT2 Jennifer Norris PLaintiff Submissions | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

276:14   Q. And you've seen this document before?
276:15   A. I have.
276:16   Q. And you know this to be the Memorandum
276:17 of Agreement between the United States Department
276:18 of Justice, the DEA, and Cardinal Health, correct?
276:19   A. Yes.  The Settlement and Release
276:20 Agreement and Administrative Memorandum of
276:21 Agreement, yes.
276:22   Q. And for the record, it's
276:23 CAH_MDL_PRIORPROD_ HOUSE_0004009.  And this
276:24 included allegations related to several of
277:1 Cardinal's facilities; is that right?
277:2   A. Allegations, yes.
277:3   Q. Against the Auburn, Washington
277:4 distribution center, the Lakeland, Florida
277:5 distribution center, the Swedesboro, New Jersey
277:6 distribution center, the Dublin Court and
277:7 Stafford, Texas distribution center, the McDonough
277:8 facility in Georgia, the Valencia facility in
277:9 California, the Denver facility in Colorado; is
277:10 that correct?
277:11   A. Those are the facilities listed, yes.
277:12   Q. And Cardinal -- well, strike that.
277:13 The allegations were that Cardinal was
277:14 shipping suspicious orders, correct?
277:15   A. The allegation in Number 8 is that
277:16 Cardinal Health failed to report suspicious
277:17 orders.

| | | |
|---|---|---|
| 278:12 - 278:16 | **Norris, Jennifer 08-07-2018 (00:00:20)** | **NJ01-.89** |

278:12   Q. And if you'll turn to page 21.
278:13 Because you're also aware that there were
278:14 immediate suspension orders issued to each of
278:15 these facilities as well, correct?
278:16   A. Yes.

| | | |
|---|---|---|
| 289:5 - 291:12 | **Norris, Jennifer 08-07-2018 (00:02:38)** | **NJ01-.90** |

289:5   Q. All right.  The next document you're
289:6 being provided is Norris 74, I think.  Do you have
289:7 it?
289:8   A. I don't see that number on here.
289:9   Q. No.  It was a last minute add, but for

| Page/Line | Source | ID |
|---|---|---|

NJ01--CT2 Jennifer Norris PLaintiff Submissions

289:10 the record, DEA07_01198345.

289:11 Have you seen this document before?

289:12   A. I have.

289:13   Q. Okay.  And did you review it in your

289:14 preparation for the deposition today?

289:15   A. I did.

289:16   Q. And it appears to be a document or an

289:17 e-mail from Steve -- is it Reardon?

289:18   A. Reardon.

289:19   Q. Reardon.  And this is a document that's

289:20 maintained in Cardinal's normal business, I'm

289:21 assuming, on its e-mail server, correct?

289:22   A. In accordance with its document

289:23 retention policies, yes.

289:24   Q. Fair enough.  And does this document and

290:1 the attachments thereto appear to be fair and

290:2 accurate to what the copy you reviewed?

290:3   A. Yes.

290:4   Q. Okay.  And this is actually a summary of

290:5 a meeting that HDMA had with DEA, correct?

290:6   A. That's one part of it, yes.

290:7   Q. And this is an e-mail from Mr. Reardon

290:8 to a Mr. Brantley, who we mentioned earlier,

290:9 Carolyn McPherson, as well as others; is that

290:10 right?

290:11   A. It is.

290:12   Q. And what's the subject?

290:13   A. The subject is "DEA suspicious order

290:14 monitoring."

290:15   Q. And it says, "The HDMA met with DEA

290:16 officials last Friday, September 7th, to discuss

290:17 the agency's current policy position on suspicious

290:18 orders of controlled substances."

290:19 Do you see that there?

290:20   A. I see that sentence, yes.

290:21   Q. And then it talks about a summary.  And

290:22 then it says, "The DEA is setting a new standard

290:23 with which we must comply."

290:24 Correct?

291:1   A. Correct.

| NJ01--CT2 Jennifer Norris PLaintiff Submissions | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| Page/Line | Source | ID |
|---|---|---|
| | 291:2   Q. And then Mr. Reardon says, "This is all | |
| | 291:3 coming about as the result of problems with | |
| | 291:4 Internet pharmacies and controlled substance | |
| | 291:5 diversion." | |
| | 291:6 Isn't that right? | |
| | 291:7   A. That is what this sentence says. | |
| | 291:8   Q. It then talks about that they | |
| | 291:9 recently -- recently they suspended ABC -- which I | |
| | 291:10 think, if you and I are on the same page, is | |
| | 291:11 AmerisourceBergen, correct? | |
| | 291:12   A. Correct. | |
| 291:17 - 292:6 | **Norris, Jennifer 08-07-2018 (00:00:40)** | NJ01-.91 |
| | 291:17   Q. "They recently suspended an ABC | |
| | 291:18 registration and used the suspension to get them | |
| | 291:19 to implement a complex and onerous suspicious | |
| | 291:20 order monitoring program that meets the criteria | |
| | 291:21 spelled out in the HDMA meeting summary." | |
| | 291:22 And then he goes on to say at the | |
| | 291:23 bottom, "We need to be proactive and implement a | |
| | 291:24 program that we develop that will satisfy the | |
| | 292:1 DEA's expectations and that it is not dictated to | |
| | 292:2 us by the agency pursuant to a regulatory action." | |
| | 292:3 Correct? | |
| | 292:4   A. I see that sentence. | |
| | 292:5   Q. And was this prior to the initiation of | |
| | 292:6 the regulatory action -- | |
| 292:8 - 293:2 | **Norris, Jennifer 08-07-2018 (00:01:04)** | NJ01-.147 |
| | 292:8   Q. -- or do you know? | |
| | 292:9   A. I believe that the orders to show cause | |
| | 292:10 were issued after that. | |
| | 292:11   Q. And Mr. Reardon wanted to try to prevent | |
| | 292:12 a regulatory action being forced to adopt any sort | |
| | 292:13 of policies and procedures on suspicious order | |
| | 292:14 monitoring program, correct? | |
| | 292:15   A. Mr. Reardon understood the obligations | |
| | 292:16 that the DEA was implementing, the new obligations | |
| | 292:17 relating to the shipping requirement, and wanted | |
| | 292:18 to make sure that we had a program implemented | |
| | 292:19 that would comply with those new -- the new | |
| | 292:20 guidance. | |

| NJ01--CT2 Jennifer Norris PLaintiff Submissions | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

|  | 292:21   Q. But you said they told you about them | |
|  | 292:22 way back in 2006, right? | |
|  | 292:23   A. The initial communication from | |
|  | 292:24 Rannazzisi was in 2006. | |
|  | 293:1   Q. And you still hadn't done anything to | |
|  | 293:2 implement them now in September of 2007, correct? | |
| 293:5 - 293:23 | **Norris, Jennifer 08-07-2018 (00:00:52)** | **NJ01-.146** |
|  | 293:5   A. I cannot presently say the corporation | |
|  | 293:6 doesn't have present knowledge of the actions that | |
|  | 293:7 we took and the timing of what those actions that | |
|  | 293:8 we took in that period. | |
|  | 293:9   Q. So if I understand you correctly, you | |
|  | 293:10 don't have knowledge as to what actions you, | |
|  | 293:11 Cardinal, took during that time frame; is that | |
|  | 293:12 correct? | |
|  | 293:13   A. I don't know the timing and the actions | |
|  | 293:14 taken during the time period -- | |
|  | 293:15   Q. So you can't tell me -- | |
|  | 293:16   A. -- based on current knowledge. | |
|  | 293:17   Q. So sitting here after prepping for | |
|  | 293:18 three, three and a half weeks, whatever it was, | |
|  | 293:19 you still can't tell us what action Cardinal took | |
|  | 293:20 from the time it was told it had a shipping | |
|  | 293:21 requirement for almost a year, as to what they did | |
|  | 293:22 in relation to that new obligation or what they | |
|  | 293:23 considered a new obligation? | |
| 294:2 - 294:5 | **Norris, Jennifer 08-07-2018 (00:00:07)** | **NJ01-.145** |
|  | 294:2   A. The corporation does not have present | |
|  | 294:3 knowledge about the actions and timing of the | |
|  | 294:4 actions that were taken during that period | |
|  | 294:5 presently. | |
| 295:13 - 295:16 | **Norris, Jennifer 08-07-2018 (00:00:12)** | **NJ01-.92** |
|  | 295:13   Q. So sitting here today, the corporation | |
|  | 295:14 can't answer when it first took action related to | |
|  | 295:15 the Rannazzisi letter of 2006, correct? | |
|  | 295:16   A. I cannot say right now. | |
| 296:3 - 296:8 | **Norris, Jennifer 08-07-2018 (00:00:12)** | **NJ01-.93** |
|  | 296:3   Q.   In this summary being provided by | |
|  | 296:4 HDMA to its members, which Cardinal is one of, as | |
|  | 296:5 you testified earlier, a board member and an | |

| NJ01--CT2 Jennifer Norris PLaintiff Submissions | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

|  | 296:6 executive committee meeting and whatever else, | |
|  | 296:7 correct? | |
|  | 296:8   A. Correct. | |
| 296:16 - 297:2 | **Norris, Jennifer 08-07-2018 (00:00:24)** | NJ01-.94 |
|  | 296:16   Q.  Let's just keep going. | |
|  | 296:17 They say, "Simply complying with the | |
|  | 296:18 suspicious orders, regulatory requirement, does | |
|  | 296:19 not mean in the agency's view that the registrant | |
|  | 296:20 is maintaining effective program to detect and | |
|  | 296:21 prevent diversion." | |
|  | 296:22 Do you see that? | |
|  | 296:23   A. I do. | |
|  | 296:24   Q. Cardinal knew that as far back as the | |
|  | 297:1 first Rannazzisi letter in I believe it was | |
|  | 297:2 September of '06, correct? | |
| 297:4 - 297:14 | **Norris, Jennifer 08-07-2018 (00:00:31)** | NJ01-.144 |
|  | 297:4   A. That is the information provided in the | |
|  | 297:5 initial Rannazzisi letter. | |
|  | 297:6   Q. Okay.  And then also the DEA goes on and | |
|  | 297:7 indicates to the HDMA that they do not have the | |
|  | 297:8 resources to inspect every pharmacy; therefore, it | |
|  | 297:9 is important that the distributor know their | |
|  | 297:10 customers, correct? | |
|  | 297:11   A. Correct. | |
|  | 297:12   Q. You would agree with me that that is a | |
|  | 297:13 good idea on behalf of Cardinal to know who it's | |
|  | 297:14 distributing controlled substances to, correct? | |
| 297:17 - 298:23 | **Norris, Jennifer 08-07-2018 (00:01:53)** | NJ01-.143 |
|  | 297:17   A. The Knowing Your Customer is a component | |
|  | 297:18 of our anti-diversion program. | |
|  | 297:19   Q. And as you testified to earlier, even | |
|  | 297:20 prior to that program going into place, you still | |
|  | 297:21 would take steps to know the customer; is that | |
|  | 297:22 fair? | |
|  | 297:23   A. We've always had the anti-diversion | |
|  | 297:24 program, the suspicious order monitoring program. | |
|  | 298:1 But, yes, but Know Your Customer has been a part | |
|  | 298:2 of that all along, yes. | |
|  | 298:3   Q. And I'm still taken aback. | |
|  | 298:4 Based on when Cardinal became informed | |

| NJ01--CT2 Jennifer Norris PLaintiff Submissions | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

|  | 298:5 of this shipping requirement by the DEA, sitting |  |
|  | 298:6 here today, you can't tell us when they took any |  |
|  | 298:7 action in that regard, correct?  Actually, let's |  |
|  | 298:8 backstep it. |  |
|  | 298:9 The policies and procedures that were |  |
|  | 298:10 entered into in the latter part of '08 -- we |  |
|  | 298:11 looked at some of them earlier, right, December of |  |
|  | 298:12 '08? |  |
|  | 298:13   A. Mm-hmm. |  |
|  | 298:14   Q. Do you remember that? |  |
|  | 298:15   A. Yes. |  |
|  | 298:16   Q. Okay.  Some of those, I believe -- and |  |
|  | 298:17 correct me if I'm wrong -- include a shipping |  |
|  | 298:18 requirement; do they not? |  |
|  | 298:19   A. The policy that we looked at mentions |  |
|  | 298:20 held orders. |  |
|  | 298:21   Q. So we know at least two years after |  |
|  | 298:22 Cardinal was aware of the shipping requirement, |  |
|  | 298:23 they did something, right? |  |
| 299:1 - 299:11 | **Norris, Jennifer 08-07-2018 (00:00:35)** | NJ01-.95 |
|  | 299:1   Q. September of '06 to December of '08.  I |  |
|  | 299:2 was giving you the benefit of the doubt.  It's |  |
|  | 299:3 actually 26 months, a little over two years, |  |
|  | 299:4 correct? |  |
|  | 299:5   A. We have a policy dated 2008 that |  |
|  | 299:6 mentions held orders.  It does not -- it does not |  |
|  | 299:7 make a statement about prior time period. |  |
|  | 299:8   Q. And sitting here today, can you tell the |  |
|  | 299:9 jury if Cardinal did anything prior to that policy |  |
|  | 299:10 related to what Cardinal considers new obligation |  |
|  | 299:11 as far as shipping requirement? |  |
| 299:13 - 300:1 | **Norris, Jennifer 08-07-2018 (00:00:34)** | NJ01-.142 |
|  | 299:13   A. Yes.  Our anti-diversion program was |  |
|  | 299:14 implemented -- anti-diversion system, suspicious |  |
|  | 299:15 order monitoring system, was implemented in late |  |
|  | 299:16 2007. |  |
|  | 299:17   Q. And did it include a shipping |  |
|  | 299:18 requirement? |  |
|  | 299:19   A. Yes. |  |
|  | 299:20   Q. And where is the policy that |  |

| Page/Line | Source | ID |
|---|---|---|
| | 299:21 specifically provides the shipping requirement? | |
| | 299:22   A. I don't have a copy of that particular | |
| | 299:23 policy. | |
| | 299:24   Q. Did you review it? | |
| | 300:1   A. I don't recall specifically. | |
| 300:20 - 300:22 | **Norris, Jennifer 08-07-2018 (00:00:06)** | NJ01-.140 |
| | 300:20   Q. So you believe that you implemented a | |
| | 300:21 policy and procedure for the shipping requirement | |
| | 300:22 in late 2007? | |
| 300:24 - 301:2 | **Norris, Jennifer 08-07-2018 (00:00:12)** | NJ01-.141 |
| | 300:24   A. We initiated our suspicious order | |
| | 301:1 monitoring system in late 2007.  I cannot speak to | |
| | 301:2 policies and procedures. | |
| 303:17 - 303:24 | **Norris, Jennifer 08-07-2018 (00:00:36)** | NJ01-.135 |
| | 303:17   Q. So prior to 2007, did Cardinal have a | |
| | 303:18 system for detecting all suspicious orders? | |
| | 303:19   A. Prior to 2007, Cardinal Health had a | |
| | 303:20 suspicious order monitoring program that produced | |
| | 303:21 the reports as required by the DEA, the ingredient | |
| | 303:22 limit report, the excessive order report. | |
| | 303:23   Q. So it did not have a specific suspicious | |
| | 303:24 order program, correct? | |
| 304:3 - 304:5 | **Norris, Jennifer 08-07-2018 (00:00:09)** | NJ01-.136 |
| | 304:3   Q. Actually, let me ask it differently.  It | |
| | 304:4 didn't have a specific system in place to report | |
| | 304:5 suspicious orders? | |
| 304:7 - 304:14 | **Norris, Jennifer 08-07-2018 (00:00:23)** | NJ01-.137 |
| | 304:7   A. It had the -- as part of the program, it | |
| | 304:8 had the system in place to calculate the | |
| | 304:9 algorithms to make the suspicious -- to make the | |
| | 304:10 ingredient limit reports as required. | |
| | 304:11   Q. Okay.  Right.  No, I got that. | |
| | 304:12 But, again, did Cardinal Health have a | |
| | 304:13 system for detecting all suspicious orders prior | |
| | 304:14 to January 2007? | |
| 304:16 - 304:18 | **Norris, Jennifer 08-07-2018 (00:00:12)** | NJ01-.138 |
| | 304:16   A. I believe I stated that we had a program | |
| | 304:17 in place to make the reports that we were required | |
| | 304:18 to make to the DEA on the ingredient limit report. | |
| 305:10 - 305:20 | **Norris, Jennifer 08-07-2018 (00:00:30)** | NJ01-.108 |

**NJ01--CT2 Jennifer Norris PLaintiff Submissions**

| Page/Line | Source | ID |
|---|---|---|

305:10   Q. Ms. Norris, what do you need to
305:11 clarify?
305:12   A. I think we're still talking past each
305:13 other.  On the suspicious order reporting
305:14 requirement, prior to 2007 Cardinal Health
305:15 complied with its suspicious order reporting
305:16 requirement in the statute.
305:17 In doing -- but they did that by
305:18 submitting the ingredient limit reports and the
305:19 excessive order reports.  That constituted our
305:20 suspicious order reporting.

**306:16 - 306:19**   **Norris, Jennifer 08-07-2018 (00:00:16)**   **NJ01-.109**

306:16   Q. So I'll ask the question again.
306:17 Did Cardinal have in place a system for reporting
306:18 all suspicious orders prior to 2007?
306:19   A. Yes.

**306:23 - 307:23**   **Norris, Jennifer 08-07-2018 (00:01:18)**   **NJ01-.97**

306:23   Q. Now, as Norris 19, I'm going to pass you
306:24 what has been marked as Plaintiff's 34.  And I'm
307:1 willing to bet you've looked at this before today.
307:2   A. Yes.
307:3   Q. Does that appear to be a true and
307:4 accurate copy of the Memorandum of Agreement
307:5 between the United States Department of Justice,
307:6 the DEA, and Cardinal Health?
307:7   A. Yes.  It's not the fully executed copy,
307:8 but ...
307:9   Q. And if you turn to page 2 of that
307:10 document.
307:11   A. Yes.
307:12   Q. Do you see there in the first paragraph,
307:13 "Cardinal admits that its due diligence efforts
307:14 for some pharmacy customers and its compliance
307:15 with the 2008 MOA in certain respects were
307:16 inadequate."
307:17 Correct?
307:18   A. I see that language, yes.
307:19   Q. Does Cardinal agree with that?
307:20   A. "Cardinal agrees that its due diligence
307:21 efforts for some pharmacy customers in certain

| Page/Line | Source | ID |
|---|---|---|

307:22 respects were inadequate and thus its compliance
307:23 with the 2008 MOA."

**309:22 - 310:19**   **Norris, Jennifer 08-07-2018 (00:01:15)**   **NJ01-.98**

309:22   Q.   So based on this Memorandum
309:23 of Understanding entered in 2012, there were fines
309:24 of combined, I guess, $44 million paid by Cardinal
310:1 for its breaches of the Controlled Substances Act,
310:2 correct?
310:3   A. There was a settlement of 44 -- a total
310:4 of $44 million.  And in connection -- in the
310:5 settlement agreement, there was an admission, a
310:6 limited admission, as to certain actions by
310:7 Cardinal.
310:8   Q. Well, it says the "Covered Conduct:  The
310:9 conduct in the February 2nd, 2012 order to show
310:10 cause, the failure to maintain effective controls
310:11 against diversion; C, the failure to detect and
310:12 report suspicious orders and the failure to adhere
310:13 to the 2008 MOA."
310:14 Is that what it says?
310:15   A. That's the definition of covered
310:16 conduct.
310:17   Q. Okay.  Now, let me show you -- and I
310:18 know we're getting close on time.
310:19   A. Which is what the settlement relates to.

**310:23 - 311:9**   **Norris, Jennifer 08-07-2018 (00:00:42)**   **NJ01-.131**

310:23   Q. All right.  And that's going to be
310:24 Exhibit 35.
311:1 Now, ma'am, before we jump in real
311:2 briefly to those threshold changes, you referenced
311:3 a 1998 report to the U.S. Attorney General.  At
311:4 what point in time did Cardinal adopt that
311:5 document as its policies or procedures?
311:6   A. 1998 when we received notice of it, I
311:7 believe.
311:8   Q. So Cardinal officially adopted it into
311:9 its policies and procedures in 1998 --

**311:11 - 311:23**   **Norris, Jennifer 08-07-2018 (00:00:32)**   **NJ01-.117**

311:11   Q. -- correct?
311:12   A. I don't know the answer about policies

| Page/Line | Source | ID |
|---|---|---|

**NJ01--CT2 Jennifer Norris PLaintiff Submissions**

311:13 and procedures.  That was the guidance we received
311:14 in 1998, which we followed.
311:15   Q. But this was a report provided to the
311:16 U.S. Attorney General.  You mentioned that
311:17 earlier, correct?
311:18   A. Correct, by the DEA.
311:19   Q. Not provided to the wholesale
311:20 distributors?
311:21   A. It wasn't a report directly to the
311:22 wholesale distributors.  It was to the Attorney
311:23 General.

Plaintiff  Designations = 01:32:47
Defense Designations = 00:01:16
Defense Completeness Counters = 00:10:05
Plaintiff Counter Counters = 00:01:07
**Total Time = 01:45:15**