## Designation Run Report

# Hartle, Nathan - Plaintiffs' Submission

---
**Hartle, Nathan 07-31-2018**

---

**Plaintiff Affirmatives  01:03:31**

**Defense Completeness Counters  00:03:16**

**Total Time  01:06:46**



| P013-Hartle, Nathan - Plaintiffs' Submission | | |
| --- | --- | --- |
| **Page/Line** | **Source** | **ID** |

| 15:14 - 15:24 | **Hartle, Nathan 07-31-2018 (00:00:17)** | P013.1 |
| | 15:14   Q. Please state your name. | |
| | 15:15   A. My name is Nathan -- I go by | |
| | 15:16 Nate -- John Hartle. | |
| | 15:17   Q. And what is your occupation, | |
| | 15:18 and who is your employer? | |
| | 15:19   A. I'm currently a vice president | |
| | 15:20 of regulatory affairs and compliance for | |
| | 15:21 McKesson Corporation. | |
| | 15:22   Q. How long have you been employed | |
| | 15:23 by McKesson? | |
| | 15:24   A. Since May of 2014. | |
| 16:09 - 16:12 | **Hartle, Nathan 07-31-2018 (00:00:11)** | P013.2 |
| | 16:9   Q. The first thing is, is are you | |
| | 16:10 aware that today you'll be testifying not as | |
| | 16:11 Nate Hartle but as McKesson Corporation? | |
| | 16:12   A. I am. | |
| 17:06 - 17:11 | **Hartle, Nathan 07-31-2018 (00:00:11)** | P013.310 |
| | 17:6 (McKesson-Hartle Exhibit 2 | |
| | 17:7 marked for identification.) | |
| | 17:8 QUESTIONS BY MR. FARRELL: | |
| | 17:9   Q. There's a second notice.  We'll | |
| | 17:10 have that marked as Exhibit 2, and it's MCK | |
| | 17:11 30(b)(6)_02. | |
| 17:12 - 17:13 | **Hartle, Nathan 07-31-2018 (00:00:04)** | P013.309 |
| | 17:12 Have you had a chance to review | |
| | 17:13 this document before today? | |
| 17:14 - 17:24 | **Hartle, Nathan 07-31-2018 (00:00:32)** | P013.311 |
| | 17:14   A. I have. | |
| | 17:15   Q. Now, it's my understanding that | |
| | 17:16 McKesson has designated you to testify on | |
| | 17:17 certain subject matters within this document | |
| | 17:18 but not all. | |
| | 17:19 Is that your understanding? | |
| | 17:20   A. Correct. | |
| | 17:21   Q. And those numbers are numbers | |
| | 17:22 9, 14, 16, 17, 18, 19, 20, 21 and 22. | |
| | 17:23 Is that your understanding as | |
| | 17:24 well? | |
| 17:25 - 17:25 | **Hartle, Nathan 07-31-2018 (00:00:02)** | P013.292 |

| | P013-Hartle, Nathan - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| | 17:25   A. Yes. | |
| 32:19 - 32:21 | **Hartle, Nathan 07-31-2018 (00:00:05)** | **P013.3** |
| | 32:19 Is McKesson aware of the | |
| | 32:20 publishing of the Masters Pharmaceutical | |
| | 32:21 case? | |
| 32:23 - 33:03 | **Hartle, Nathan 07-31-2018 (00:00:11)** | **P013.4** |
| | 32:23 THE WITNESS:  We are. | |
| | 32:24 QUESTIONS BY MR. FARRELL: | |
| | 32:25  Q. You're aware that in Masters | |
| | 33:1 Pharmaceutical there was a discussion of the | |
| | 33:2 reporting requirement? | |
| | 33:3  A. I am. | |
| 33:14 - 33:17 | **Hartle, Nathan 07-31-2018 (00:00:14)** | **P013.5** |
| | 33:14 We're not going to premark this | |
| | 33:15 because that will absolutely mess up my | |
| | 33:16 numbering system, but the top right-hand | |
| | 33:17 corner it's Bates stamped 2017_06_30. | |
| 33:18 - 33:22 | **Hartle, Nathan 07-31-2018 (00:00:13)** | **P013.260** |
| | 33:18 And I apologize for the | |
| | 33:19 flopping of the documents across the big | |
| | 33:20 table. | |
| | 33:21 This is Masters Pharmaceutical. | |
| | 33:22 Has McKesson read this document? | |
| 33:24 - 33:25 | **Hartle, Nathan 07-31-2018 (00:00:05)** | **P013.6** |
| | 33:24 THE WITNESS:  I believe that | |
| | 33:25 several have read this document. | |
| 35:15 - 35:17 | **Hartle, Nathan 07-31-2018 (00:00:07)** | **P013.7** |
| | 35:15  Q. All right.  Starting with "the | |
| | 35:16 reporting requirement is a relatively modest | |
| | 35:17 one," will you finish the sentence? | |
| 35:18 - 36:03 | **Hartle, Nathan 07-31-2018 (00:00:29)** | **P013.286** |
| | 35:18  A. I read that sentence. | |
| | 35:19  Q. Okay.  Now, will you read it | |
| | 35:20 aloud? | |
| | 35:21  A. "It requires only that a | |
| | 35:22 distributor provide basic information about | |
| | 35:23 certain orders to DEA so that DEA | |
| | 35:24 investigators in the field can aggregate | |
| | 35:25 reports from every point along the legally | |
| | 36:1 regulated supply chain and use the | |

| Page/Line | Source | ID |
|---|---|---|
| | 36:2 information to ferret out potentially illegal | |
| | 36:3 activity." | |
| 36:14 - 36:18 | **Hartle, Nathan 07-31-2018 (00:00:16)** | **P013.8** |
| | 36:14 Does McKesson | |
| | 36:15 acknowledge the reporting requirement, as you | |
| | 36:16 just read aloud, is a duty owed by McKesson | |
| | 36:17 under the federal regulations and United | |
| | 36:18 States Code? | |
| 36:20 - 36:22 | **Hartle, Nathan 07-31-2018 (00:00:04)** | **P013.9** |
| | 36:20 THE WITNESS:  And it's our | |
| | 36:21 responsibility to report suspicious | |
| | 36:22 orders. | |
| 36:24 - 37:02 | **Hartle, Nathan 07-31-2018 (00:00:06)** | **P013.10** |
| | 36:24  Q. So the answer to my question is | |
| | 36:25 yes -- | |
| | 37:1  A. Yes. | |
| | 37:2  Q. -- no, or I don't know. | |
| 37:04 - 37:04 | **Hartle, Nathan 07-31-2018 (00:00:01)** | **P013.11** |
| | 37:4 THE WITNESS:  It is our -- yes. | |
| 37:19 - 37:25 | **Hartle, Nathan 07-31-2018 (00:00:13)** | **P013.12** |
| | 37:19  Q. Now what we're | |
| | 37:20 going to do is go to the beginning of that | |
| | 37:21 sentence on the previous page, and it's the | |
| | 37:22 last full sentence.  It starts with "once a | |
| | 37:23 distributor has." | |
| | 37:24 Do you see that sentence? | |
| | 37:25  A. I see that. | |
| 38:05 - 38:17 | **Hartle, Nathan 07-31-2018 (00:00:41)** | **P013.13** |
| | 38:5  Q. All right.  Now, can you read | |
| | 38:6 it aloud for the record? | |
| | 38:7  A. "Once a distributor has | |
| | 38:8 reported a suspicious order, it must make one | |
| | 38:9 of two choices, decline to ship the order or | |
| | 38:10 conduct some due diligence, and if it is able | |
| | 38:11 to determine that the order is not likely to | |
| | 38:12 be diverted into illegal channels, ship the | |
| | 38:13 order." | |
| | 38:14  Q. Does McKesson acknowledge that | |
| | 38:15 the shipping requirement is a duty it owes | |
| | 38:16 under the United States Code and the Code of | |

Top banner: P013-Hartle, Nathan - Plaintiffs' Submission

| Page/Line | Source | ID |
|---|---|---|
| | 38:17 Federal Regulations? | |
| 38:19 - 38:19 | **Hartle, Nathan 07-31-2018 (00:00:03)** | **P013.14** |
| | 38:19 THE WITNESS:  Yes. | |
| 38:24 - 38:25 | **Hartle, Nathan 07-31-2018 (00:00:07)** | **P013.15** |
| | 38:24 All right.  The next document | |
| | 38:25 we're going to reference is MCK 30(b)(6)_5. | |
| 39:05 - 39:05 | **Hartle, Nathan 07-31-2018 (00:00:00)** | **P013.287** |
| | 39:5  A. Okay. | |
| 39:19 - 40:08 | **Hartle, Nathan 07-31-2018 (00:00:41)** | **P013.17** |
| | 39:19  Q. So the first thing I want you | |
| | 39:20 to take note of on Exhibit 5, page 1, is the | |
| | 39:21 top left-hand corner, which is the great seal | |
| | 39:22 of our United States Congress. | |
| | 39:23 And if you look under the | |
| | 39:24 United States Code, Title 21, for food and | |
| | 39:25 drugs, under Chapter 13, Drug Abuse | |
| | 40:1 Prevention and Control, Subchapter 1, Control | |
| | 40:2 and Enforcement, Part A, Introductory | |
| | 40:3 Provisions, this is the beginning of the | |
| | 40:4 Controlled Substances Act. | |
| | 40:5 McKesson is aware of and | |
| | 40:6 acknowledges that its role in the chain of | |
| | 40:7 distribution of opioids is governed by the | |
| | 40:8 Controlled Substances Act, agreed? | |
| 40:10 - 40:10 | **Hartle, Nathan 07-31-2018 (00:00:01)** | **P013.18** |
| | 40:10 THE WITNESS:  Yes. | |
| 40:12 - 40:19 | **Hartle, Nathan 07-31-2018 (00:00:21)** | **P013.19** |
| | 40:12  Q. Now, I'm going to have you look | |
| | 40:13 down all the way at all those letters and | |
| | 40:14 numbers at the very bottom, Public Law | |
| | 40:15 91-513, Title 2.  And the date there is | |
| | 40:16 October 27, 1970. | |
| | 40:17 McKesson is aware that the | |
| | 40:18 Controlled Substances Act has been in force | |
| | 40:19 and effect since 1970, correct? | |
| 40:21 - 40:21 | **Hartle, Nathan 07-31-2018 (00:00:02)** | **P013.20** |
| | 40:21 THE WITNESS:  Correct. | |
| 40:23 - 41:14 | **Hartle, Nathan 07-31-2018 (00:00:37)** | **P013.21** |
| | 40:23  Q. So Section 801, which is on the | |
| | 40:24 first page, is Congressional findings and | |

P013-Hartle, Nathan - Plaintiffs' Submission

| | | |
|---|---|---|
| | **P013-Hartle, Nathan - Plaintiffs' Submission** | |
| **Page/Line** | **Source** | **ID** |

40:25 declarations regarding controlled substances.
41:1 Do you see that?
41:2   A. I do.
41:3   Q. And it says, "The Congress
41:4 agrees makes the following findings and
41:5 declarations."
41:6 And to be fair, paragraph 1,
41:7 will you read it aloud?
41:8   A. "Many of the drugs included
41:9 within this subchapter have a useful and
41:10 legitimate medical purpose and are necessary
41:11 to maintain the health and general welfare of
41:12 the American people."
41:13   Q. Does McKesson acknowledge and
41:14 agree with that finding?

**41:16 - 41:16    Hartle, Nathan 07-31-2018 (00:00:04)    P013.22**

41:16 THE WITNESS:  Yes.

**41:18 - 42:03    Hartle, Nathan 07-31-2018 (00:00:28)    P013.23**

41:18   Q. Now, will you read Section 2
41:19 aloud, please?
41:20   A. "The illegal importation,
41:21 manufacture, distribution and possession and
41:22 improper use of controlled substances have
41:23 substantially and detrimentally effect --
41:24 have a substantial and detrimental effect on
41:25 the health and general welfare of the
42:1 American people."
42:2   Q. Does McKesson acknowledge and
42:3 agree with those findings?

**42:05 - 42:05    Hartle, Nathan 07-31-2018 (00:00:03)    P013.24**

42:5 THE WITNESS:  Yes.

**42:24 - 43:12    Hartle, Nathan 07-31-2018 (00:00:31)    P013.25**

42:24 You agree with paragraph 2 --
42:25   A. Right.
43:1   Q. -- as McKesson's
43:2 representative, correct?
43:3   A. Correct.
43:4   Q. And what it says is that the
43:5 illegal, and one of the words is
43:6 distribution, of controlled substances has a

| Page/Line | Source | ID |
|---|---|---|

43:7 substantial and detrimental effect on the
43:8 health and general welfare of the American
43:9 people.
43:10 I'm asking you if McKesson
43:11 agrees and acknowledges with this finding by
43:12 Congress in 1970.

**43:14 - 43:17**   **Hartle, Nathan 07-31-2018 (00:00:06)**   P013.26

43:14 THE WITNESS:  Yes, that the
43:15 illegal distribution can -- could
43:16 potentially have an impact on the
43:17 American --

**43:19 - 44:03**   **Hartle, Nathan 07-31-2018 (00:00:18)**   P013.27

43:19  Q. Well, it doesn't say
43:20 "potential" in paragraph 2, does it?
43:21  A. It doesn't.
43:22  Q. It says that if you break the
43:23 law, it has a substantial and detrimental
43:24 effect on the health and general welfare of
43:25 the American people.
44:1  A. That's what it says, correct.
44:2  Q. Does McKesson agree and
44:3 acknowledge that finding?

**44:05 - 44:05**   **Hartle, Nathan 07-31-2018 (00:00:02)**   P013.28

44:5 THE WITNESS:  Yes.

**45:08 - 45:12**   **Hartle, Nathan 07-31-2018 (00:00:13)**   P013.29

45:8 Is McKesson aware that its
45:9 sales of hydrocodone combination products
45:10 rose following the reclassification of those
45:11 opioids from Schedule III to Schedule II?
45:12  A. Yes.

**45:13 - 46:01**   **Hartle, Nathan 07-31-2018 (00:00:28)**   P013.30

45:13  Q. So nonetheless, when we're
45:14 talking about these products, I'm referencing
45:15 Schedule II for today.
45:16  A. Understood.
45:17  Q. So the Schedule II has a
45:18 definition, does it not, under the United
45:19 States Code?
45:20  A. It does.
45:21  Q. There's three aspects to it.

P013-Hartle, Nathan - Plaintiffs' Submission

| P013-Hartle, Nathan - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

45:22 Do you see those three aspects?

45:23   A. I do.

45:24   Q. Could you read aspect A?

45:25   A. "The drug or other substance

46:1 has a high potential for abuse."

**46:02 - 46:18**   **Hartle, Nathan 07-31-2018 (00:00:49)**   P013.31

46:2   Q. McKesson is aware since 1970

46:3 that it was engaging in business of

46:4 distributing Schedule II controlled

46:5 substances which have a high potential for

46:6 abuse, agreed?

46:7   A. Agreed.

46:8   Q. And you agree that the opioids,

46:9 whether they're Schedule II or formerly

46:10 Schedule III, are drugs that have a high

46:11 potential for abuse?

46:12   A. Agree.

46:13   Q. McKesson knows this?

46:14   A. We do.

46:15   Q. And McKesson has known this

46:16 from the very beginning of their decision to

46:17 distribute controlled substances?

46:18   A. Agreed.

**46:19 - 47:02**   **Hartle, Nathan 07-31-2018 (00:00:21)**   P013.32

46:19   Q. Would you read paragraph B,

46:20 please?

46:21   A. "The drug or other substance

46:22 has a currently accepted medical use and

46:23 treatment in the United States or a currently

46:24 accept medical use with severe restrictions."

46:25   Q. Does McKesson agree and

47:1 acknowledge with this statement from

47:2 Congress?

**47:04 - 47:04**   **Hartle, Nathan 07-31-2018 (00:00:03)**   P013.33

47:4 THE WITNESS:  Yes.

**47:06 - 47:11**   **Hartle, Nathan 07-31-2018 (00:00:16)**   P013.34

47:6   Q. Now, read paragraph C, please.

47:7   A. "Abuse of a drug or other

47:8 substances may lead to severe psychological

47:9 or physical dependence."

| Page/Line | Source | ID |
|---|---|---|
| | 47:10   Q. Does McKesson agree and | |
| | 47:11 acknowledge this finding? | |
| 47:13 - 47:13 | **Hartle, Nathan 07-31-2018 (00:00:02)** | **P013.35** |
| | 47:13 THE WITNESS:  Yes. | |
| 47:15 - 47:22 | **Hartle, Nathan 07-31-2018 (00:00:19)** | **P013.36** |
| | 47:15   Q. So just to be clear, when we're | |
| | 47:16 talking about controlled substances in this | |
| | 47:17 litigation, we're talking about opiates and | |
| | 47:18 opioids, agreed? | |
| | 47:19   A. Agreed. | |
| | 47:20   Q. And what these are, are these | |
| | 47:21 are derivatives of opium in the form of a | |
| | 47:22 pill, agreed? | |
| 47:24 - 47:25 | **Hartle, Nathan 07-31-2018 (00:00:03)** | **P013.37** |
| | 47:24 THE WITNESS:  It's multiple | |
| | 47:25 formulations but, yes. | |
| 48:10 - 48:13 | **Hartle, Nathan 07-31-2018 (00:00:10)** | **P013.293** |
| | 48:10 McKesson distributes pills from | |
| | 48:11 a manufacturer to pharmacies.  That's what | |
| | 48:12 they do, yes? | |
| | 48:13   A. Correct. | |
| 49:15 - 49:24 | **Hartle, Nathan 07-31-2018 (00:00:20)** | **P013.38** |
| | 49:15   Q. So when I say "opium pills," | |
| | 49:16 what I'm talking about is the big | |
| | 49:17 classification of all of these pills derived | |
| | 49:18 from the poppy plant. | |
| | 49:19 Is that fair? | |
| | 49:20   A. Understood. | |
| | 49:21   Q. All right.  And when we talk | |
| | 49:22 about any of the individual pills, whether | |
| | 49:23 it's hydrocodone or oxycodone, those all fall | |
| | 49:24 within the opium pill umbrella, right? | |
| 50:01 - 50:07 | **Hartle, Nathan 07-31-2018 (00:00:15)** | **P013.39** |
| | 50:1 THE WITNESS:  Yes. | |
| | 50:2 QUESTIONS BY MR. FARRELL: | |
| | 50:3   Q. So when McKesson is | |
| | 50:4 distributing opium pills, it knows and | |
| | 50:5 understands that these pills have a high | |
| | 50:6 potential for abuse? | |
| | 50:7   A. We do. | |

**P013-Hartle, Nathan - Plaintiffs' Submission**

**P013-Hartle, Nathan - Plaintiffs' Submission**

| Page/Line | Source | ID |
|---|---|---|
| 50:08 - 50:11 | **Hartle, Nathan 07-31-2018 (00:00:10)** | P013.294 |
| | 50:8   Q. Now, they also -- you also -- | |
| | 50:9 McKesson understands that these pills do have | |
| | 50:10 an accepted medical use in treatment, but | |
| | 50:11 they have severe restrictions, agreed? | |
| 50:13 - 50:14 | **Hartle, Nathan 07-31-2018 (00:00:02)** | P013.295 |
| | 50:13 THE WITNESS:  We understand the | |
| | 50:14 language, yes. | |
| 50:19 - 50:21 | **Hartle, Nathan 07-31-2018 (00:00:04)** | P013.296 |
| | 50:19   Q. Opium pills have a place in | |
| | 50:20 current medical practice? | |
| | 50:21   A. Yes. | |
| 51:04 - 51:09 | **Hartle, Nathan 07-31-2018 (00:00:16)** | P013.41 |
| | 51:4   Q. And that's why the unlawful | |
| | 51:5 distribution of these opium pills, relating | |
| | 51:6 back to page 1, has a substantial and | |
| | 51:7 detrimental effect on the health and general | |
| | 51:8 welfare of the American people. | |
| | 51:9 Does McKesson acknowledge that? | |
| 51:11 - 51:11 | **Hartle, Nathan 07-31-2018 (00:00:02)** | P013.42 |
| | 51:11 THE WITNESS:  Yes. | |
| 52:12 - 52:20 | **Hartle, Nathan 07-31-2018 (00:00:28)** | P013.43 |
| | 52:12   Q. Now let's flip to the next | |
| | 52:13 page.  This is the -- this is where we'll be | |
| | 52:14 spending most of our time today.  This is | |
| | 52:15 page 4, Section 823. | |
| | 52:16 This is from the United States | |
| | 52:17 Code, and it includes, as you'll see down in | |
| | 52:18 paragraph 1, what Congress has said is | |
| | 52:19 McKesson's duty.  I'd like you to first read | |
| | 52:20 that to yourself. | |
| 52:21 - 52:25 | **Hartle, Nathan 07-31-2018 (00:00:13)** | P013.44 |
| | 52:21   A. I've read it. | |
| | 52:22   Q. All right.  Does McKesson | |
| | 52:23 acknowledge that it has a duty to maintain | |
| | 52:24 effective control against diversion of opium | |
| | 52:25 pills as mandated by Congress? | |
| 53:03 - 53:03 | **Hartle, Nathan 07-31-2018 (00:00:04)** | P013.45 |
| | 53:3 THE WITNESS:  We do. | |
| 53:10 - 53:24 | **Hartle, Nathan 07-31-2018 (00:01:04)** | P013.261 |

| Page/Line | Source | ID |
|---|---|---|

P013-Hartle, Nathan - Plaintiffs' Submission

53:10 This is going to be marked as
53:11 Exhibit 6 in the bottom right-hand corner,
53:12 and in the top right-hand corner it's MCK
53:13 30(b)(6)_6.
53:14 For our fans following on the
53:15 telephone, this is the Congressional history
53:16 that can be found at 91-1444.  It is Public
53:17 Law 91-513.
53:18 Do you remember when we were
53:19 looking at the United States Code and it
53:20 referenced Public Law 91-513 from Exhibit 5?
53:21   A. Yes.
53:22   Q. This is that document, I'll
53:23 represent to you.
53:24   A. Okay.

**55:02 - 55:06**   **Hartle, Nathan 07-31-2018 (00:00:14)**   **P013.46**

55:2   Q. I'm going to have you to turn
55:3 to Bates stamp page 8.  And again, these are
55:4 my highlights.  Congress didn't highlight
55:5 So while you
55:6 read it, I'm going to read it out loud.

**55:07 - 55:21**   **Hartle, Nathan 07-31-2018 (00:00:44)**   **P013.47**

55:7 "The bill was designed to
55:8 improve the administration and regulation of
55:9 the manufacturing, distribution and
55:10 dispensing of controlled substances by
55:11 providing for a closed system of drug
55:12 distribution for legitimate handlers of such
55:13 drugs.  Such a closed system should
55:14 significantly reduce the widespread diversion
55:15 of these drugs out of the legitimate channels
55:16 into the illicit market, while at the same
55:17 time providing the legitimate drug industry
55:18 with a unified approach to narcotic and
55:19 dangerous drug control."
55:20 Does McKesson acknowledge the
55:21 truth of this finding by Congress?

**55:23 - 55:23**   **Hartle, Nathan 07-31-2018 (00:00:04)**   **P013.48**

55:23 THE WITNESS:  Yes.

**56:24 - 57:02**   **Hartle, Nathan 07-31-2018 (00:00:10)**   **P013.49**

| Page/Line | Source | ID |
|---|---|---|
| | P013-Hartle, Nathan - Plaintiffs' Submission | |
| | 56:24   Q. So the controlled substances | |
| | 56:25 are in a chain of distribution that are | |
| | 57:1 closed off to the rest of the marketplace. | |
| | 57:2 McKesson acknowledges that? | |
| 57:04 - 57:05 | **Hartle, Nathan 07-31-2018 (00:00:01)** | **P013.50** |
| | 57:4 THE WITNESS:  Correct.  It's a | |
| | 57:5 closed system. | |
| 57:07 - 57:14 | **Hartle, Nathan 07-31-2018 (00:00:23)** | **P013.51** |
| | 57:7   Q. And in order to participate in | |
| | 57:8 the closed system, you have to be one of the | |
| | 57:9 select few that gets a registration | |
| | 57:10 certificate from the DEA, agreed? | |
| | 57:11   A. Agreed. | |
| | 57:12   Q. And the reason Congress did | |
| | 57:13 this was to reduce diversion.  Does McKesson | |
| | 57:14 acknowledge that? | |
| 57:16 - 57:17 | **Hartle, Nathan 07-31-2018 (00:00:04)** | **P013.52** |
| | 57:16 THE WITNESS:  Yes, I believe | |
| | 57:17 that was the overall intent. | |
| 58:18 - 59:05 | **Hartle, Nathan 07-31-2018 (00:00:31)** | **P013.53** |
| | 58:18   Q. So the idea here is that -- to | |
| | 58:19 close the system of distribution so that we | |
| | 58:20 keep these dangerous opium pills inside the | |
| | 58:21 legitimate market for medical care, agreed? | |
| | 58:22   A. Agreed. | |
| | 58:23   Q. And that's why we have these | |
| | 58:24 laws enacted, so that we can do our best to | |
| | 58:25 keep these drugs to the patients that need | |
| | 59:1 them, agreed? | |
| | 59:2   A. Agreed. | |
| | 59:3   Q. And if you don't follow those | |
| | 59:4 laws, then what happens is we have diversion | |
| | 59:5 into the illicit market? | |
| 59:07 - 59:08 | **Hartle, Nathan 07-31-2018 (00:00:02)** | **P013.54** |
| | 59:7 THE WITNESS:  That can happen | |
| | 59:8 if you don't follow those laws. | |
| 59:15 - 59:23 | **Hartle, Nathan 07-31-2018 (00:00:29)** | **P013.55** |
| | 59:15   Q. Next I'm going to have you flip | |
| | 59:16 to page 11.  And I just highlighted one | |
| | 59:17 sentence in here.  And it says, "The price | |

| Page/Line | Source | ID |
|---|---|---|
| | 59:18 for participation in this traffic," which is | |
| | 59:19 illicit drug trafficking, "should be | |
| | 59:20 prohibitive." | |
| | 59:21 Do you see that sentence? | |
| | 59:22   A. I see that. | |
| | 59:23   Q. Does McKesson acknowledge that? | |
| 60:02 - 60:03 | **Hartle, Nathan 07-31-2018 (00:00:03)** | **P013.56** |
| | 60:2   Q. Does McKesson acknowledge that | |
| | 60:3 sentence to be true? | |
| 60:05 - 60:05 | **Hartle, Nathan 07-31-2018 (00:00:02)** | **P013.57** |
| | 60:5 THE WITNESS:  Yes. | |
| 60:07 - 60:10 | **Hartle, Nathan 07-31-2018 (00:00:08)** | **P013.58** |
| | 60:7   Q. It just makes sense, right?  If | |
| | 60:8 you're going to punish somebody and the | |
| | 60:9 punishment isn't very severe, they're likely | |
| | 60:10 to what? | |
| 60:12 - 60:12 | **Hartle, Nathan 07-31-2018 (00:00:04)** | **P013.59** |
| | 60:12 THE WITNESS:  To do it again. | |
| 60:14 - 60:16 | **Hartle, Nathan 07-31-2018 (00:00:06)** | **P013.60** |
| | 60:14   Q. Why? | |
| | 60:15   A. There's no penalty or | |
| | 60:16 accountability. | |
| 62:21 - 63:01 | **Hartle, Nathan 07-31-2018 (00:00:19)** | **P013.61** |
| | 62:21   Q. Like not to be cute, but | |
| | 62:22 McKesson was fined $13 million in 2008 and | |
| | 62:23 then was fined again in 2017 $150 million. | |
| | 62:24 Do you think that the second | |
| | 62:25 fine was intended to be more prohibitive than | |
| | 63:1 the first fine? | |
| 63:03 - 63:03 | **Hartle, Nathan 07-31-2018 (00:00:02)** | **P013.62** |
| | 63:3 THE WITNESS:  I believe so. | |
| 78:04 - 78:08 | **Hartle, Nathan 07-31-2018 (00:00:24)** | **P013.63** |
| | 78:4 Does McKesson acknowledge that | |
| | 78:5 the CFR provision cited in Masters | |
| | 78:6 Pharmaceutical case, which is 21 CFR | |
| | 78:7 1301.74 B, is and always has been the law | |
| | 78:8 governing McKesson's conduct since 1971? | |
| 78:10 - 78:10 | **Hartle, Nathan 07-31-2018 (00:00:03)** | **P013.64** |
| | 78:10 THE WITNESS:  Yes. | |
| 84:10 - 84:16 | **Hartle, Nathan 07-31-2018 (00:00:21)** | **P013.65** |

| P013-Hartle, Nathan - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

84:10   Q. Aside from the statute from the
84:11 United States Code and the regulations
84:12 promulgated by the Department of Justice,
84:13 does McKesson acknowledge that it owes a duty
84:14 to the general public to prevent diversion of
84:15 controlled substances and opium pills into
84:16 the illicit market?

84:18 - 84:24 **Hartle, Nathan 07-31-2018 (00:00:08)**   **P013.66**

84:18 THE WITNESS:  We do feel
84:19 strongly about playing a role in
84:20 preventing diversion.
84:21 QUESTIONS BY MR. FARRELL:
84:22   Q. So the answer needs to be
84:23 "yes," "no," or "I don't know."
84:24   A. Yes.

85:02 - 85:07 **Hartle, Nathan 07-31-2018 (00:00:16)**   **P013.262**

85:2   Q. So your answer is, yes, aside
85:3 from the statutory and regulatory provisions,
85:4 McKesson acknowledges that it owes a duty to
85:5 the general public to prevent diversion of
85:6 controlled substances and opium pills into
85:7 the illicit market?

85:09 - 85:09 **Hartle, Nathan 07-31-2018 (00:00:01)**   **P013.263**

85:9 THE WITNESS:  Yes.

85:13 - 85:14 **Hartle, Nathan 07-31-2018 (00:00:05)**   **P013.67**

85:13   Q. I'm going to mark what is going
85:14 to be Deposition Exhibit 10.

86:06 - 86:24 **Hartle, Nathan 07-31-2018 (00:00:51)**   **P013.68**

86:6   Q. This one is from December 1910
86:7 and January 1911.  That's a long time ago,
86:8 isn't it?
86:9   A. That would be a long time ago.
86:10   Q. 100 years ago.
86:11 This predates 1970s US Code and
86:12 the 1971 Code of Federal Regulations, agreed?
86:13   A. Clearly, yes.
86:14   Q. This is a hearing on -- take a
86:15 guess.
86:16   A. Opioids.
86:17   Q. In particular, opium.  And it

| P013-Hartle, Nathan - Plaintiffs' Submission |
| --- |

| Page/Line | Source | ID |
| --- | --- | --- |
| | 86:18 was about the importation of opium into | |
| | 86:19 America back in the early turn of the | |
| | 86:20 century. | |
| | 86:21 McKesson was around back then, | |
| | 86:22 wasn't they? | |
| | 86:23  A. McKesson was -- has been | |
| | 86:24 around. | |
| 88:17 - 88:23 | **Hartle, Nathan 07-31-2018 (00:00:19)** | **P013.69** |
| | 88:17  Q. Page 72 is the beginning of the | |
| | 88:18 testimony of Mr. McKesson from McKesson & | |
| | 88:19 Robbins, which is the predecessor and when | |
| | 88:20 McKesson Corporation was in the private hands | |
| | 88:21 of the McKesson family. | |
| | 88:22 You acknowledge that? | |
| | 88:23  A. Correct. | |
| 89:11 - 90:13 | **Hartle, Nathan 07-31-2018 (00:01:03)** | **P013.70** |
| | 89:11  Q. He's asked about whether or not | |
| | 89:12 he's in favor of the bill. | |
| | 89:13 Do you see that? | |
| | 89:14  A. I do. | |
| | 89:15  Q. And his answer is, "Yes, very | |
| | 89:16 much in favor of the bill." | |
| | 89:17 Do you see that provision? | |
| | 89:18  A. I do. | |
| | 89:19  Q. Now, would you please begin | |
| | 89:20 reading the next sentence? | |
| | 89:21  A. Out loud? | |
| | 89:22  Q. Please. | |
| | 89:23  A. "Our firm was founded in 1832, | |
| | 89:24 and we have been ever since against the sale | |
| | 89:25 of habit-forming drugs and all that kind of | |
| | 90:1 thing.  Orders which have come to us from | |
| | 90:2 suspicious people we have put in the hands of | |
| | 90:3 the proper authorities for tracing and | |
| | 90:4 prosecution, if necessary." | |
| | 90:5  Q. So you agree with me that even | |
| | 90:6 before the enactment of the Controlled | |
| | 90:7 Substances Act and the Code of Federal | |
| | 90:8 Regulations, which we discussed earlier this | |
| | 90:9 morning, is that McKesson, Mr. McKesson | |

| Page/Line | Source | ID |
|---|---|---|

**P013-Hartle, Nathan - Plaintiffs' Submission**

|  | 90:10 hisself, was acknowledging that if they have | |
|  | 90:11 suspicious people, they're going to turn it | |
|  | 90:12 over to law enforcement for prosecution, | |
|  | 90:13 agreed? | |
| 90:15 - 90:16 | **Hartle, Nathan 07-31-2018 (00:00:02)** | P013.71 |
|  | 90:15 THE WITNESS:  Agreed based on | |
|  | 90:16 what I'm reading in this document. | |
| 90:18 - 90:20 | **Hartle, Nathan 07-31-2018 (00:00:06)** | P013.72 |
|  | 90:18   Q. And this duty predates the US | |
|  | 90:19 Code and predates the Code of Federal | |
|  | 90:20 Regulations, agreed? | |
| 90:22 - 90:22 | **Hartle, Nathan 07-31-2018 (00:00:01)** | P013.73 |
|  | 90:22 THE WITNESS:  Agreed. | |
| 91:11 - 91:15 | **Hartle, Nathan 07-31-2018 (00:00:12)** | P013.74 |
|  | 91:11 Does McKesson acknowledge it | |
|  | 91:12 owes a common law duty to the American public | |
|  | 91:13 to prevent the diversion of controlled | |
|  | 91:14 substances, including opium pills, into the | |
|  | 91:15 illicit market? | |
| 91:17 - 91:25 | **Hartle, Nathan 07-31-2018 (00:00:19)** | P013.75 |
|  | 91:17 THE WITNESS:  Yes. | |
|  | 91:18 QUESTIONS BY MR. FARRELL: | |
|  | 91:19   Q. Now, the first part of the | |
|  | 91:20 sentence, it kind of grabbed my attention. | |
|  | 91:21 It says, "McKesson has ever since been | |
|  | 91:22 against the sale of habit-forming drugs." | |
|  | 91:23 And this was in 1910. | |
|  | 91:24 Do you see that? | |
|  | 91:25   A. I see that. | |
| 92:06 - 92:09 | **Hartle, Nathan 07-31-2018 (00:00:12)** | P013.76 |
|  | 92:6   Q. At some point in time | |
|  | 92:7 McKesson's philosophy changed, and it went | |
|  | 92:8 from not selling habit-forming drugs to now | |
|  | 92:9 selling habit-forming drugs, agreed? | |
| 92:11 - 92:11 | **Hartle, Nathan 07-31-2018 (00:00:01)** | P013.77 |
|  | 92:11 THE WITNESS:  Agreed. | |
| 92:22 - 93:04 | **Hartle, Nathan 07-31-2018 (00:00:16)** | P013.78 |
|  | 92:22   Q. Well, you could choose not to | |
|  | 92:23 sell opium pills anymore in America, could | |
|  | 92:24 you not? | |

| P013-Hartle, Nathan - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

|  | 92:25   A. You could choose to. |  |
|  | 93:1   Q. But McKesson chooses to |  |
|  | 93:2 continue to sell opium pills in America, |  |
|  | 93:3 despite the fact that we have an opiate pill |  |
|  | 93:4 epidemic? |  |
| 93:06 - 93:06 | **Hartle, Nathan 07-31-2018 (00:00:01)** | P013.79 |
|  | 93:6 THE WITNESS:  We do. |  |
| 96:06 - 96:07 | **Hartle, Nathan 07-31-2018 (00:00:03)** | P013.80 |
|  | 96:6   Q. We're going to have it marked |  |
|  | 96:7 as Exhibit 12. |  |
| 96:19 - 96:24 | **Hartle, Nathan 07-31-2018 (00:00:11)** | P013.81 |
|  | 96:19   Q. Now, does McKesson recognize |  |
|  | 96:20 this document? |  |
|  | 96:21   A. I do. |  |
|  | 96:22   Q. And has McKesson reviewed this |  |
|  | 96:23 document in preparation for today's |  |
|  | 96:24 testimony? |  |
| 97:01 - 97:09 | **Hartle, Nathan 07-31-2018 (00:00:23)** | P013.82 |
|  | 97:1 THE WITNESS:  I have. |  |
|  | 97:2 QUESTIONS BY MR. FARRELL: |  |
|  | 97:3   Q. What is this document? |  |
|  | 97:4   A. This is the operational manual |  |
|  | 97:5 for how controlled substances are handled |  |
|  | 97:6 within McKesson. |  |
|  | 97:7   Q. And what was the date of |  |
|  | 97:8 enactment? |  |
|  | 97:9   A. I believe July of 2000. |  |
| 107:19 - 107:24 | **Hartle, Nathan 07-31-2018 (00:00:21)** | P013.83 |
|  | 107:19   Q. Now, would you read the last |  |
|  | 107:20 sentence? |  |
|  | 107:21   A. "It's extremely important that |  |
|  | 107:22 McKesson employees comply fully with the |  |
|  | 107:23 regulations and the following guidelines." |  |
|  | 107:24   Q. How important is it? |  |
| 108:01 - 108:06 | **Hartle, Nathan 07-31-2018 (00:00:11)** | P013.84 |
|  | 108:1 THE WITNESS:  To recite, it |  |
|  | 108:2 says "extremely important." |  |
|  | 108:3 QUESTIONS BY MR. FARRELL: |  |
|  | 108:4   Q. And why? |  |
|  | 108:5   A. To prevent the diversion of |  |

| P013-Hartle, Nathan - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| | 108:6 controlled substances. | |
| 110:18 - 110:21 | **Hartle, Nathan 07-31-2018 (00:00:12)** | **P013.85** |
| | 110:18   Q. Now, if you flip to the next | |
| | 110:19 page, page 28, at the top it's paragraph A. | |
| | 110:20 And will you read the title of paragraph A? | |
| | 110:21   A. "Detecting suspicious orders." | |
| 110:22 - 111:15 | **Hartle, Nathan 07-31-2018 (00:00:38)** | **P013.297** |
| | 110:22   Q. And what's it say over there on | |
| | 110:23 the right, that number? | |
| | 110:24   A. 1301.74. | |
| | 110:25   Q. What do you think that is? | |
| | 111:1   A. That's from the CFR. | |
| | 111:2   Q. All right.  And then under | |
| | 111:3 paragraph 1, you see where it says, "DEA | |
| | 111:4 regulation defines suspicious orders as | |
| | 111:5 follows"? | |
| | 111:6   A. I do. | |
| | 111:7   Q. Will you read what's in the | |
| | 111:8 quotation marks? | |
| | 111:9   A. "Suspicious orders include | |
| | 111:10 orders of unusual size, orders deviating | |
| | 111:11 substantially from a normal pattern and | |
| | 111:12 orders of unusual frequency." | |
| | 111:13   Q. Now, if you go down to the | |
| | 111:14 paragraph that starts "recent cases," do you | |
| | 111:15 see that? | |
| 111:16 - 111:22 | **Hartle, Nathan 07-31-2018 (00:00:18)** | **P013.86** |
| | 111:16 Will you read the first | |
| | 111:17 sentence? | |
| | 111:18   A. "Recent cases indicate that DEA | |
| | 111:19 will seek large penalties from distributors | |
| | 111:20 who fail to comply with this regulation." | |
| | 111:21   Q. What do you interpret that to | |
| | 111:22 mean? | |
| 111:25 - 112:03 | **Hartle, Nathan 07-31-2018 (00:00:03)** | **P013.87** |
| | 111:25 THE WITNESS:  Exactly what it | |
| | 112:1 says. | |
| | 112:2 QUESTIONS BY MR. FARRELL: | |
| | 112:3   Q. You got to follow the law? | |
| 112:05 - 112:08 | **Hartle, Nathan 07-31-2018 (00:00:05)** | **P013.88** |

| P013-Hartle, Nathan - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

112:5 THE WITNESS:  Right.
112:6 QUESTIONS BY MR. FARRELL:
112:7   Q. And if McKesson doesn't follow
112:8 the law, that makes its conduct unlawful?

| 112:10 - 112:10 | **Hartle, Nathan 07-31-2018 (00:00:01)** | **P013.89** |

112:10 THE WITNESS:  Yes.

| 112:19 - 112:23 | **Hartle, Nathan 07-31-2018 (00:00:08)** | **P013.298** |

112:19   Q. The next sentence says, "It is
112:20 left to the distributor to define what
112:21 constitutes an unusual or suspicious order."
112:22 Do you see that sentence?
112:23   A. I do.

| 119:08 - 119:12 | **Hartle, Nathan 07-31-2018 (00:00:16)** | **P013.90** |

119:8   Q. So my question is, is if an
119:9 order gets picked up as a suspicious order
119:10 under McKesson's detection system in July
119:11 of 2000, was McKesson reporting it to the DEA
119:12 but still shipping it?

| 119:15 - 119:17 | **Hartle, Nathan 07-31-2018 (00:00:13)** | **P013.91** |

119:15 THE WITNESS:  Let me restate.
119:16 Reporting to DEA and still shipping
119:17 it?  I believe so.

| 119:19 - 119:20 | **Hartle, Nathan 07-31-2018 (00:00:02)** | **P013.92** |

119:19   Q. So the answer is yes?
119:20   A. Yes.

| 119:21 - 120:02 | **Hartle, Nathan 07-31-2018 (00:00:12)** | **P013.299** |

119:21   Q. The next sentence says, "It
119:22 does not rely on an individual's judgment or
119:23 knowledge to determine reporting
119:24 appropriateness but rather on statistical
119:25 fact."
120:1 Do you see that?
120:2   A. I see that.

| 128:09 - 128:24 | **Hartle, Nathan 07-31-2018 (00:00:32)** | **P013.93** |

128:9   Q. Now, at the very bottom of the
128:10 page, page 4, do you see what it -- it says
128:11 "Continued Reporting Responsibility"?
128:12   A. I do.
128:13   Q. Will you read that aloud, first
128:14 sentence?

| Page/Line | Source | ID |
|---|---|---|
| | 128:15  A. The first -- okay. | |
| | 128:16 "Forwarding these reports to | |
| | 128:17 DEA does not relieve the distribution center | |
| | 128:18 of responsibility to review the reports and | |
| | 128:19 note order quantities of unusual size." | |
| | 128:20  Q. So you acknowledge, sitting | |
| | 128:21 here today as McKesson, that simply | |
| | 128:22 submitting reports to the DEA does not comply | |
| | 128:23 with the US Code or the Code of Federal | |
| | 128:24 Regulations? | |
| 129:02 - 129:07 | **Hartle, Nathan 07-31-2018 (00:00:13)** | **P013.94** |
| | 129:2 THE WITNESS:  Agree. | |
| | 129:3 QUESTIONS BY MR. FARRELL: | |
| | 129:4  Q. You have a duty to review and | |
| | 129:5 note orders of unusual size? | |
| | 129:6  A. It's part of our -- this | |
| | 129:7 document program, yes. | |
| 150:01 - 150:03 | **Hartle, Nathan 07-31-2018 (00:00:10)** | **P013.264** |
| | 150:1  Q. I'm going to have marked | |
| | 150:2 Exhibit 15, and the exhibit in the top | |
| | 150:3 right-hand corner is 2004_ 06_17. | |
| 150:10 - 150:17 | **Hartle, Nathan 07-31-2018 (00:00:24)** | **P013.265** |
| | 150:10 This is part of the US Senate | |
| | 150:11 Permanent Subcommittee on Investigations, and | |
| | 150:12 it was a hearing in June of 2004.  And the | |
| | 150:13 title of the hearing was "Buyers Beware:  The | |
| | 150:14 Dangers of Purchasing Pharmaceuticals Over | |
| | 150:15 the Internet." | |
| | 150:16 Now, McKesson has some | |
| | 150:17 experience with this, agreed? | |
| 150:19 - 150:24 | **Hartle, Nathan 07-31-2018 (00:00:08)** | **P013.266** |
| | 150:19 THE WITNESS:  Can you define -- | |
| | 150:20 experience.  What type of experience? | |
| | 150:21 QUESTIONS BY MR. FARRELL: | |
| | 150:22  Q. Well, McKesson was selling to | |
| | 150:23 Internet pharmacies in this time frame, | |
| | 150:24 agreed? | |
| 151:01 - 151:01 | **Hartle, Nathan 07-31-2018 (00:00:02)** | **P013.267** |
| | 151:1 THE WITNESS:  I believe so. | |
| 152:20 - 153:02 | **Hartle, Nathan 07-31-2018 (00:00:18)** | **P013.268** |

| P013-Hartle, Nathan - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| | 152:20  Q. And do you know who this Rudy | |
| | 152:21 Giuliani fellow is? | |
| | 152:22   A. I do know who Mr. Giuliani is. | |
| | 152:23   Q. He's a lawyer, too, isn't he? | |
| | 152:24   A. He is. | |
| | 152:25   Q. And he was hired to do this | |
| | 153:1 investigation by the pharmaceutical industry. | |
| | 153:2 Do you see that? | |
| 153:05 - 153:11 | **Hartle, Nathan 07-31-2018 (00:00:07)** | **P013.269** |
| | 153:5 THE WITNESS:  I don't know if I | |
| | 153:6 see where specifically it states that. | |
| | 153:7 QUESTIONS BY MR. FARRELL: | |
| | 153:8   Q. It says, "Giuliani Partners has | |
| | 153:9 been" -- | |
| | 153:10   A. Oh, in the middle.  Okay. | |
| | 153:11 Sorry. | |
| 153:15 - 153:25 | **Hartle, Nathan 07-31-2018 (00:00:31)** | **P013.270** |
| | 153:15   Q. Now what I'm going to have you | |
| | 153:16 do is I'm going to have you flip over to | |
| | 153:17 page 4, and it's interesting what Rudy | |
| | 153:18 Giuliani found. | |
| | 153:19 Do you see where it says "the | |
| | 153:20 distribution chain"? | |
| | 153:21 It says, "On its face, it | |
| | 153:22 appears that the distribution chain for | |
| | 153:23 prescription medicines in the United States | |
| | 153:24 is fairly straightforward." | |
| | 153:25   A. I was on the wrong number 4. | |
| 154:01 - 155:02 | **Hartle, Nathan 07-31-2018 (00:00:57)** | **P013.288** |
| | 154:1 I see where it says that. | |
| | 154:2   Q. And it says, "Manufacturers | |
| | 154:3 sell their products to wholesalers." | |
| | 154:4 That'd be you, McKesson, | |
| | 154:5 correct? | |
| | 154:6   A. Correct. | |
| | 154:7   Q. "Who, in turn, sell the | |
| | 154:8 products to retail pharmacies and stores, | |
| | 154:9 who, in turn, dispense medicines to patients | |
| | 154:10 with prescriptions." | |
| | 154:11 Do you see that? | |

| Page/Line | Source | ID |
|---|---|---|
| | **P013-Hartle, Nathan - Plaintiffs' Submission** | |

154:12  A. Yes.

154:13  Q. And that's a straightforward

154:14 system is what Rudy Giuliani is saying.

154:15 Will you read the next

154:16 sentence, please?

154:17  A. "It is not until the system is

154:18 studied in greater detail that one begins to

154:19 appreciate both the complexities and the

154:20 vulnerability of the distribution chain and

154:21 potential for exploitation or abuse."

154:22  Q. So big pharma is acknowledging

154:23 in 2004, through hiring their own expert in

154:24 presenting to Congress, that this chain of

154:25 distribution that McKesson is engaged in is

155:1 complex and vulnerable for exploitation or

155:2 abuse, agreed?

**155:05 - 155:24   Hartle, Nathan 07-31-2018 (00:00:52)**                    P013.271

155:5 THE WITNESS:  It's what they

155:6 listed in here and documented, yes.

155:7 QUESTIONS BY MR. FARRELL:

155:8  Q. And the very first factor for

155:9 contributing factors, will you read aloud

155:10 what it says?

155:11  A. "Wholesalers or distributors

155:12 are primarily regulated by the states, with

155:13 no uniform standards across state borders.

155:14 States have a comparatively small number of

155:15 investigators to monitor the licensed

155:16 wholesalers; thus, given the sheer number of

155:17 wholesalers, oversight is minimal."

155:18  Q. In the very next paragraph it

155:19 says, "There are thousands of secondary

155:20 pharmaceutical wholesalers in addition to

155:21 McKesson, AmerisourceBergen and Cardinal

155:22 Health, the big three."

155:23 Do you see that sentence?

155:24  A. I see that.

**157:13 - 157:24   Hartle, Nathan 07-31-2018 (00:00:31)**                    P013.272

157:13  Q. In 2004, big pharma hired Rudy

157:14 Giuliani's firm to do an evaluation of the

| P013-Hartle, Nathan - Plaintiffs' Submission | | |
| --- | --- | --- |
| **Page/Line** | **Source** | **ID** |

157:15 chain of distribution of prescription
157:16 medicines, and what he found was that the
157:17 chain of distribution was subject to
157:18 exploitation or abuse because of lack of
157:19 oversight?
157:20   A. That's what's stated in the
157:21 document, correct.
157:22   Q. And that during this time
157:23 frame, McKesson paid a fine for that very
157:24 thing?

**158:01 - 158:02**   **Hartle, Nathan 07-31-2018 (00:00:03)**   **P013.273**

158:1 THE WITNESS:  In the 2008
158:2 settlement, yes.

**159:19 - 160:11**   **Hartle, Nathan 07-31-2018 (00:00:59)**   **P013.95**

159:19   Q. I'm going to reference
159:20 Exhibit 16 which we've just had marked.  The
159:21 top right-hand corner is 2006_09_27,
159:22 Bates-stamped MCKMDL00478906.
159:23 Do you recognize this document?
159:24   A. I do.
159:25   Q. What is it?
160:1   A. It's a letter from DEA to
160:2 registrants from Joe Rannazzisi.
160:3   Q. Is this -- you might need help
160:4 with counsel a little bit on this.
160:5 I don't see where this letter
160:6 is addressed to McKesson as the recipient;
160:7 however, this document was produced by
160:8 McKesson.  And I'm assuming this is the 2006
160:9 Rannazzisi letter that was sent to McKesson.
160:10 Is that your understanding?
160:11   A. Yes.

**161:19 - 161:23**   **Hartle, Nathan 07-31-2018 (00:00:09)**   **P013.96**

161:19   Q. But sitting here today as the
161:20 McKesson corporate designee, you acknowledge
161:21 receipt of the September 27, 2006 letter from
161:22 Joe Rannazzisi?
161:23   A. Yes.

**163:24 - 164:11**   **Hartle, Nathan 07-31-2018 (00:00:47)**   **P013.97**

163:24   Q. Did McKesson change its conduct

| Page/Line | Source | ID |
|---|---|---|

163:25 at all based upon this correspondence?
164:1   A. From what I understand in
164:2 talking with a former McKesson employee
164:3 before this deposition, this was mostly a
164:4 confirmation or a reiteration of the
164:5 regulations, which McKesson knew, and
164:6 highlighting things that were -- you know,
164:7 that the team was doing.  And it was sort of
164:8 a validation of some of the things that they
164:9 had been doing, so the red flags and things
164:10 like that.  So not significant changes that
164:11 I'm aware of.

| | | |
|---|---|---|
| 165:10 - 165:12 | **Hartle, Nathan 07-31-2018 (00:00:05)** | **P013.98** |

165:10 So let's start with this:  Is
165:11 there anything in this letter that you
165:12 disagree with?

| | | |
|---|---|---|
| 165:14 - 165:16 | **Hartle, Nathan 07-31-2018 (00:00:04)** | **P013.99** |

165:14 THE WITNESS:  I don't believe
165:15 there's anything I would disagree
165:16 with.

| | | |
|---|---|---|
| 165:18 - 165:19 | **Hartle, Nathan 07-31-2018 (00:00:03)** | **P013.100** |

165:18   Q. Is this an accurate statement
165:19 of the law?

| | | |
|---|---|---|
| 165:21 - 165:21 | **Hartle, Nathan 07-31-2018 (00:00:02)** | **P013.101** |

165:21 THE WITNESS:  I believe it is.

| | | |
|---|---|---|
| 165:23 - 166:12 | **Hartle, Nathan 07-31-2018 (00:00:42)** | **P013.102** |

165:23   Q. So as of September 27, 2006,
165:24 the DEA is advising McKesson -- not advising,
165:25 but referencing the fact that there was a
166:1 prescription drug abuse problem in the United
166:2 States of America.  That's in the very first
166:3 paragraph.
166:4 Does McKesson acknowledge that?
166:5   A. Yes.
166:6   Q. The next sentence says, "As
166:7 each of you is undoubtedly aware, the abuse,
166:8 nonmedical use, of controlled prescription
166:9 drugs is a serious and growing health problem
166:10 in the country."
166:11 Does McKesson agree and

| Page/Line | Source | ID |
|---|---|---|
| | **P013-Hartle, Nathan - Plaintiffs' Submission** | |

166:12 acknowledge that fact as of 2006?

| 166:14 - 166:14 | **Hartle, Nathan 07-31-2018 (00:00:03)** | **P013.104** |

166:14 THE WITNESS:  Yes.

| 166:16 - 167:02 | **Hartle, Nathan 07-31-2018 (00:00:34)** | **P013.105** |

166:16   Q. The next full paragraph says,

166:17 "The Controlled Substances Act was designed

166:18 by Congress to combat diversion by providing

166:19 for a closed system of drug distribution in

166:20 which all legitimate handlers of controlled

166:21 substances must obtain a DEA registration; as

166:22 a condition of maintaining such registration,

166:23 must take reasonable steps to ensure that

166:24 their registration is not being utilized as a

166:25 source of diversion."

167:1 Does McKesson acknowledge and

167:2 agree with that statement?

| 167:04 - 167:05 | **Hartle, Nathan 07-31-2018 (00:00:02)** | **P013.106** |

167:4 THE WITNESS:  I agree with

167:5 that.

| 167:07 - 168:03 | **Hartle, Nathan 07-31-2018 (00:00:44)** | **P013.107** |

167:7   Q. I'd like you to read the next

167:8 sentence aloud, please.

167:9   A. Where it starts "distributors

167:10 are"?

167:11   Q. Yes.

167:12   A. "Distributors are, of course,

167:13 one of the key components of the distribution

167:14 chain."

167:15   Q. Keep going, please.

167:16   A. You want me to read the whole

167:17 paragraph?  Okay.

167:18 "If the closed system is to

167:19 function properly as Congress envisioned,

167:20 distributors must be vigilant in deciding

167:21 whether a prospective customer can be trusted

167:22 to deliver controlled substances only for

167:23 lawful purposes.  The responsibility is

167:24 critical, as Congress has expressly declared

167:25 that the illegal distribution of controlled

168:1 substances has a substantial and detrimental

| P013-Hartle, Nathan - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| | | |
|---|---|---|
| | 168:2 effect on the health and general welfare of | |
| | 168:3 the American people." | |
| 168:04 - 168:11 | **Hartle, Nathan 07-31-2018 (00:00:18)** | **P013.108** |
| | 168:4   Q. So again, this is the DEA | |
| | 168:5 reiterating what we've discussed before: | |
| | 168:6 that failing to abide by the Code of Federal | |
| | 168:7 Regulations has a substantial and detrimental | |
| | 168:8 effect on the health and general welfare of | |
| | 168:9 the American people. | |
| | 168:10 Does McKesson agree and | |
| | 168:11 acknowledge with that fact? | |
| 168:13 - 168:13 | **Hartle, Nathan 07-31-2018 (00:00:02)** | **P013.109** |
| | 168:13 THE WITNESS:  Yes. | |
| 168:15 - 169:02 | **Hartle, Nathan 07-31-2018 (00:00:42)** | **P013.110** |
| | 168:15   Q. Go to the next page, page 2, | |
| | 168:16 the second full paragraph.  It says, | |
| | 168:17 "Nonetheless, given the extent of | |
| | 168:18 prescription drug abuse in the United States, | |
| | 168:19 along with the potential -- along with | |
| | 168:20 dangerous and potentially lethal consequences | |
| | 168:21 of such abuse" -- will you please finish that | |
| | 168:22 sentence? | |
| | 168:23   A. "Even just one distributor that | |
| | 168:24 uses its DEA registration to facilitate | |
| | 168:25 diversion can cause enormous harm." | |
| | 169:1   Q. Does McKesson acknowledge and | |
| | 169:2 accept that fact? | |
| 169:04 - 169:05 | **Hartle, Nathan 07-31-2018 (00:00:02)** | **P013.111** |
| | 169:4 THE WITNESS:  I agree with | |
| | 169:5 that. | |
| 169:07 - 169:16 | **Hartle, Nathan 07-31-2018 (00:00:31)** | **P013.112** |
| | 169:7   Q. If you go down to the third to | |
| | 169:8 last paragraph, it says, "In addition to | |
| | 169:9 reporting all suspicious orders, a | |
| | 169:10 distributor has a statutory responsibility to | |
| | 169:11 exercise due diligence to avoid filling | |
| | 169:12 suspicious orders that might be diverted into | |
| | 169:13 other than legitimate medical, scientific and | |
| | 169:14 industrial channels." | |
| | 169:15 Does McKesson acknowledge and | |

| Page/Line | Source | ID |
|---|---|---|
| | 169:16 accept that to be true? | |
| 169:18 - 169:18 | **Hartle, Nathan 07-31-2018 (00:00:02)** | P013.113 |
| | 169:18 THE WITNESS:  Yes. | |
| 170:04 - 170:14 | **Hartle, Nathan 07-31-2018 (00:00:31)** | P013.114 |
| | 170:4   Q. All right.  Since I butchered | |
| | 170:5 that sentence, will you please read the last | |
| | 170:6 sentence that's highlighted on the screen? | |
| | 170:7   A. "The distributor should | |
| | 170:8 exercise due care in confirming the | |
| | 170:9 legitimacy of all orders prior to filling." | |
| | 170:10   Q. Now, this is in September | |
| | 170:11 of 2006, agreed? | |
| | 170:12   A. Agreed. | |
| | 170:13   Q. And this is a clear statement | |
| | 170:14 from the DEA; would you agree with that? | |
| 170:15 - 170:15 | **Hartle, Nathan 07-31-2018 (00:00:02)** | P013.115 |
| | 170:15   A. I would agree with that. | |
| 179:17 - 179:18 | **Hartle, Nathan 07-31-2018 (00:00:04)** | P013.116 |
| | 179:17   Q. I'm going to mark what's going | |
| | 179:18 to be Exhibit 17. | |
| 180:10 - 180:18 | **Hartle, Nathan 07-31-2018 (00:00:18)** | P013.117 |
| | 180:10 So to start off with on this | |
| | 180:11 exhibit, you acknowledge that there was a | |
| | 180:12 meeting with the DEA on April 5, 2007.  It's | |
| | 180:13 from the very first paragraph. | |
| | 180:14   A. Yes. | |
| | 180:15   Q. So at this point in time, the | |
| | 180:16 DEA had issued an order to show cause against | |
| | 180:17 McKesson, agreed? | |
| | 180:18   A. Correct. | |
| 181:07 - 181:12 | **Hartle, Nathan 07-31-2018 (00:00:17)** | P013.118 |
| | 181:7 But for what we have here, this | |
| | 181:8 appears that at least in April of 2007, the | |
| | 181:9 DEA had already issued a rule to show cause | |
| | 181:10 complaining that one of your distribution | |
| | 181:11 centers was not following federal law, | |
| | 181:12 agreed? | |
| 181:14 - 181:15 | **Hartle, Nathan 07-31-2018 (00:00:01)** | P013.119 |
| | 181:14 THE WITNESS:  That's what they | |
| | 181:15 alleged. | |

P013-Hartle, Nathan - Plaintiffs' Submission

| P013-Hartle, Nathan - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |
| 187:25 - 188:05 | **Hartle, Nathan 07-31-2018 (00:00:14)** | P013.120 |
| | 187:25   Q. And on page 2 of this exhibit, | |
| | 188:1 it says you're going to implement this | |
| | 188:2 Lifestyle Drug Monitoring Program by May 1, | |
| | 188:3 2007. | |
| | 188:4 Do you see that paragraph? | |
| | 188:5   A. I do. | |
| 191:11 - 191:13 | **Hartle, Nathan 07-31-2018 (00:00:08)** | P013.121 |
| | 191:11   Q. And you've identified 8,000 | |
| | 191:12 pills by base code as the threshold for each | |
| | 191:13 customer, agreed? | |
| 191:15 - 191:20 | **Hartle, Nathan 07-31-2018 (00:00:08)** | P013.259 |
| | 191:15 THE WITNESS:  For those four | |
| | 191:16 specific base codes called out. | |
| | 191:17 QUESTIONS BY MR. FARRELL: | |
| | 191:18   Q. And that includes hydrocodone | |
| | 191:19 and oxycodone? | |
| | 191:20   A. It does. | |
| 192:07 - 192:14 | **Hartle, Nathan 07-31-2018 (00:00:28)** | P013.122 |
| | 192:7 But in general, the DEA in 2007 | |
| | 192:8 is telling McKesson the average pharmacy is | |
| | 192:9 5,000 pills a month for each of these four | |
| | 192:10 drugs, two of which are oxycodone and | |
| | 192:11 hydrocodone, and that McKesson is promising | |
| | 192:12 with its proposed action plan following an | |
| | 192:13 investigation and a rule to show cause to | |
| | 192:14 adopt a threshold of 8,000 pills. | |
| 192:18 - 192:19 | **Hartle, Nathan 07-31-2018 (00:00:02)** | P013.123 |
| | 192:18   Q. That's what it says. | |
| | 192:19   A. Right. | |
| 192:22 - 193:03 | **Hartle, Nathan 07-31-2018 (00:00:28)** | P013.124 |
| | 192:22   Q. And then following that, on the | |
| | 192:23 next page it talks about the level of | |
| | 192:24 reviews.  Page 3.  The top of the page says, | |
| | 192:25 "The customer will not be allowed to exceed | |
| | 193:1 the 8,000 monthly dosage limit until a due | |
| | 193:2 diligence review has been completed." | |
| | 193:3   A. I see that. | |
| 197:14 - 197:23 | **Hartle, Nathan 07-31-2018 (00:00:26)** | P013.125 |
| | 197:14   Q. The next part:  "A distributor | |

| P013-Hartle, Nathan - Plaintiffs' Submission | | |
| --- | --- | --- |
| **Page/Line** | **Source** | **ID** |

197:15 has a statutory responsibility to exercise
197:16 due diligence to avoid filling suspicious
197:17 orders."
197:18 Agreed?
197:19   A. I agree with that language.  It
197:20 doesn't say -- that's not halt.
197:21   Q. Well, it's a halt until you do
197:22 due diligence --
197:23   A. Yeah.

| 198:05 - 198:08 | **Hartle, Nathan 07-31-2018 (00:00:11)** | **P013.126** |

198:5   Q. Block -- all I'm saying is, is
198:6 that McKesson's not allowed to ship a
198:7 suspicious order without looking into it
198:8 first, agreed?

| 198:10 - 198:11 | **Hartle, Nathan 07-31-2018 (00:00:01)** | **P013.127** |

198:10 THE WITNESS:  That's how I read
198:11 that language.

| 198:13 - 198:14 | **Hartle, Nathan 07-31-2018 (00:00:02)** | **P013.128** |

198:13   Q. That is the law?
198:14   A. Yeah.

| 201:15 - 201:18 | **Hartle, Nathan 07-31-2018 (00:00:15)** | **P013.129** |

201:15   Q. The shipping requirement and
201:16 the reporting requirement as outlined in the
201:17 Masters Pharmaceutical case is and always has
201:18 been the law in the United States of America?

| 201:21 - 201:22 | **Hartle, Nathan 07-31-2018 (00:00:04)** | **P013.130** |

201:21 THE WITNESS:  I believe that's
201:22 the law.  I mean...

| 201:24 - 201:24 | **Hartle, Nathan 07-31-2018 (00:00:02)** | **P013.131** |

201:24   Q. Well, you're McKesson --

| 202:02 - 202:03 | **Hartle, Nathan 07-31-2018 (00:00:02)** | **P013.274** |

202:2 THE WITNESS:  I did.  I didn't
202:3 really have a -- yeah.

| 202:06 - 202:07 | **Hartle, Nathan 07-31-2018 (00:00:02)** | **P013.275** |

202:6 QUESTIONS BY MR. FARRELL:
202:7   Q. So your answer is yes?

| 202:09 - 202:09 | **Hartle, Nathan 07-31-2018 (00:00:01)** | **P013.132** |

202:9 THE WITNESS:  Yes.

| 203:07 - 203:11 | **Hartle, Nathan 07-31-2018 (00:00:15)** | **P013.276** |

203:7 The shipping requirement and the reporting

| | P013-Hartle, Nathan - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| | 203:8 requirement as outlined and defined in the | |
| | 203:9 Masters Pharmaceutical case is and always has | |
| | 203:10 been the law in the United States of America; | |
| | 203:11 agree or disagree? | |
| 203:15 - 203:16 | **Hartle, Nathan 07-31-2018 (00:00:03)** | **P013.133** |
| | 203:15 THE WITNESS:  I agree that | |
| | 203:16 that's the law. | |
| 203:18 - 203:19 | **Hartle, Nathan 07-31-2018 (00:00:05)** | **P013.277** |
| | 203:18   Q. And if you don't follow the | |
| | 203:19 law, that makes it unlawful? | |
| 203:21 - 203:25 | **Hartle, Nathan 07-31-2018 (00:00:10)** | **P013.134** |
| | 203:21 THE WITNESS:  If you don't | |
| | 203:22 follow a law, that would be unlawful. | |
| | 203:23 QUESTIONS BY MR. FARRELL: | |
| | 203:24   Q. And if you don't follow the | |
| | 203:25 shipping requirement, that's unlawful? | |
| 204:02 - 204:03 | **Hartle, Nathan 07-31-2018 (00:00:03)** | **P013.289** |
| | 204:2 THE WITNESS:  And if you don't | |
| | 204:3 follow the law, I would agree. | |
| 204:13 - 204:19 | **Hartle, Nathan 07-31-2018 (00:00:36)** | **P013.278** |
| | 204:13   Q. So when you look at paragraph 7 | |
| | 204:14 of Exhibit 17, the 2007 correspondence from | |
| | 204:15 McKesson to the DEA, you are announcing that | |
| | 204:16 you're going to adopt new measures, | |
| | 204:17 additional measures, revised, amended, | |
| | 204:18 changed, more measures, to comply with | |
| | 204:19 federal law? | |
| 204:24 - 205:06 | **Hartle, Nathan 07-31-2018 (00:00:11)** | **P013.279** |
| | 204:24 THE WITNESS:  We're | |
| | 204:25 communicating that we were enhancing | |
| | 205:1 the program. | |
| | 205:2 QUESTIONS BY MR. FARRELL: | |
| | 205:3   Q. In response to allegations that | |
| | 205:4 you were not fulfilling your obligations | |
| | 205:5 under the shipping requirement and reporting | |
| | 205:6 requirement? | |
| 205:08 - 205:09 | **Hartle, Nathan 07-31-2018 (00:00:03)** | **P013.280** |
| | 205:8 THE WITNESS:  In part due to | |
| | 205:9 allegations. | |
| 208:12 - 208:22 | **Hartle, Nathan 07-31-2018 (00:00:33)** | **P013.135** |

| Page/Line | Source | ID |
|---|---|---|
| | P013-Hartle, Nathan - Plaintiffs' Submission | |

| Page/Line | Source | ID |
|---|---|---|
| | 208:12 I could theoretically show you | |
| | 208:13 that a Rite Aid, in May of 2007 in Akron, | |
| | 208:14 Ohio, ordered 26,000 oxycodone pills.  Under | |
| | 208:15 this lifestyle policy, what it seems to | |
| | 208:16 indicate is that that's more than 8,000 a | |
| | 208:17 month. | |
| | 208:18 You'll agree that 26,000 is | |
| | 208:19 more than 8,000? | |
| | 208:20   A. I will agree to that. | |
| | 208:21   Q. And under this policy, you're | |
| | 208:22 not allowed to ship it until you do what? | |
| 208:24 - 208:25 | **Hartle, Nathan 07-31-2018 (00:00:01)** | **P013.136** |
| | 208:24 THE WITNESS:  A review or some | |
| | 208:25 due diligence. | |
| 210:21 - 210:23 | **Hartle, Nathan 07-31-2018 (00:00:12)** | **P013.137** |
| | 210:21   Q. Let's say there's ten.  Should | |
| | 210:22 there be ten customer files that document why | |
| | 210:23 McKesson was exceeding 8,000 pills a month? | |
| 210:25 - 211:01 | **Hartle, Nathan 07-31-2018 (00:00:01)** | **P013.138** |
| | 210:25 THE WITNESS:  There should be | |
| | 211:1 documentation. | |
| 211:11 - 211:16 | **Hartle, Nathan 07-31-2018 (00:00:30)** | **P013.281** |
| | 211:11   Q. If, if, if, three ifs, no due | |
| | 211:12 diligence was performed, yet McKesson still | |
| | 211:13 shipped more than 8,000 oxycodone pills to a | |
| | 211:14 pharmacy in Cuyahoga or Summit County in May | |
| | 211:15 of 2007, is that lawful or unlawful according | |
| | 211:16 to the federal regulations? | |
| 211:19 - 212:02 | **Hartle, Nathan 07-31-2018 (00:00:23)** | **P013.140** |
| | 211:19   Q. Why are you struggling with | |
| | 211:20 this? | |
| | 211:21   A. I'm just thinking.  I mean, | |
| | 211:22 it's -- if it's -- it wouldn't be lawful. | |
| | 211:23   Q. That makes it... | |
| | 211:24   A. If there weren't documentation. | |
| | 211:25 Or due diligence, excuse me. | |
| | 212:1   Q. Then it would be lawful or | |
| | 212:2 unlawful? | |
| 212:04 - 212:05 | **Hartle, Nathan 07-31-2018 (00:00:01)** | **P013.141** |
| | 212:4 THE WITNESS:  It would be | |

| P013-Hartle, Nathan - Plaintiffs' Submission | | |
| --- | --- | --- |
| **Page/Line** | **Source** | **ID** |

212:5 unlawful.

| 213:16 - 213:19 | **Hartle, Nathan 07-31-2018 (00:00:14)** | **P013.142** |

213:16 If you ship more than 8,000
213:17 pills without conducting due diligence,
213:18 McKesson is engaging in unlawful conduct
213:19 according to federal law?

| 213:22 - 214:04 | **Hartle, Nathan 07-31-2018 (00:00:22)** | **P013.143** |

213:22 THE WITNESS:  It can be
213:23 interpreted that way.  I mean, it --
213:24 QUESTIONS BY MR. FARRELL:
213:25   Q. Well, the DEA certainly
214:1 interprets it that way, agreed?
214:2   A. They have.
214:3   Q. And McKesson has paid fines
214:4 based on that DEA interpretation, agreed?

| 214:06 - 214:11 | **Hartle, Nathan 07-31-2018 (00:00:11)** | **P013.146** |

214:6 THE WITNESS:  We've paid fines.
214:7 Again, we're --
214:8 QUESTIONS BY MR. FARRELL:
214:9   Q. Based on the allegations by the
214:10 DEA that you shipped suspicious orders
214:11 without conducting due diligence?

| 214:14 - 214:15 | **Hartle, Nathan 07-31-2018 (00:00:02)** | **P013.148** |

214:14 THE WITNESS:  Based on those
214:15 allegations.

| 215:11 - 215:12 | **Hartle, Nathan 07-31-2018 (00:00:04)** | **P013.149** |

215:11   Q. The next exhibit we're going to
215:12 have marked is Exhibit 18.

| 215:23 - 216:06 | **Hartle, Nathan 07-31-2018 (00:00:18)** | **P013.150** |

215:23 Do you recognize this document?
215:24   A. I do.
215:25   Q. What is it?
216:1   A. This is a presentation given by
216:2 Don Walker about -- at a company meeting
216:3 about the Lifestyle Drug Program.
216:4   Q. And Don Walker at the time
216:5 was -- would be working for McKesson?
216:6   A. Yes.

| 216:22 - 217:01 | **Hartle, Nathan 07-31-2018 (00:00:14)** | **P013.152** |

216:22   Q. So this national operations

| P013-Hartle, Nathan - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

|  | 216:23 conference 2007, this is a conference that is | |
|  | 216:24 just for McKesson employees.  Is that your | |
|  | 216:25 understanding? | |
|  | 217:1   A. Yeah, they typically are. | |
| 220:22 - 220:24 | **Hartle, Nathan 07-31-2018 (00:00:16)** | P013.154 |
|  | 220:22   Q. As of 2007, McKesson is | |
|  | 220:23 recognizing that opioid painkillers kill more | |
|  | 220:24 than cocaine and heroin combined, agreed? | |
| 221:01 - 221:01 | **Hartle, Nathan 07-31-2018 (00:00:01)** | P013.155 |
|  | 221:1 THE WITNESS:  Agree. | |
| 227:07 - 227:12 | **Hartle, Nathan 07-31-2018 (00:00:11)** | P013.282 |
|  | 227:7   Q. And then the next sentence, can | |
|  | 227:8 you read it out loud, please? | |
|  | 227:9   A. The next bullet? | |
|  | 227:10   Q. Yes. | |
|  | 227:11   A. "Wholesalers accountable for | |
|  | 227:12 controlling quantities shipped." | |
| 227:21 - 227:24 | **Hartle, Nathan 07-31-2018 (00:00:09)** | P013.156 |
|  | 227:21 The DEA expects the wholesalers | |
|  | 227:22 to be accountable for controlling quantities | |
|  | 227:23 that they ship. | |
|  | 227:24 Is that fair or unfair? | |
| 228:02 - 228:04 | **Hartle, Nathan 07-31-2018 (00:00:03)** | P013.157 |
|  | 228:2 THE WITNESS:  That's what | |
|  | 228:3 the -- that's what the DEA expects, I | |
|  | 228:4 guess, yeah. | |
| 228:06 - 228:11 | **Hartle, Nathan 07-31-2018 (00:00:15)** | P013.158 |
|  | 228:6   Q. Does McKesson acknowledge that | |
|  | 228:7 it is accountable for controlling the | |
|  | 228:8 quantities of opium pills shipped to American | |
|  | 228:9 pharmacies? | |
|  | 228:10   A. We're accountable as a | |
|  | 228:11 distributor. | |
| 246:25 - 247:01 | **Hartle, Nathan 07-31-2018 (00:00:15)** | P013.306 |
|  | 246:25   Q. Next document, Exhibit 23, | |
|  | 247:1 2007_12_27, Bates stamp MCKMDL00478910. This | |
| 247:02 - 247:08 | **Hartle, Nathan 07-31-2018 (00:00:21)** | P013.305 |
|  | 247:2 is the December 27, 2007 Rannazzisi letter. | |
|  | 247:3 Do you recognize this document? | |
|  | 247:4   A. I do. | |

| Page/Line | Source | ID |
|---|---|---|
| | 247:5  Q. McKesson Corporation | |
| | 247:6 acknowledges receipt of this communication | |
| | 247:7 from the DEA dated December 27, 2007, | |
| | 247:8 correct? | |
| 247:10 - 247:11 | **Hartle, Nathan 07-31-2018 (00:00:05)** | P013.160 |
| | 247:10 THE WITNESS:  Yes, we received | |
| | 247:11 it. | |
| 249:24 - 250:05 | **Hartle, Nathan 07-31-2018 (00:00:25)** | P013.161 |
| | 249:24  Q. This is a 2007 letter, which | |
| | 249:25 predates the Masters Pharmaceutical case by a | |
| | 250:1 decade.  And I'm asking you whether or not | |
| | 250:2 you agree that this letter sets forth the | |
| | 250:3 shipping requirements and the reporting | |
| | 250:4 requirements as outlined in Masters | |
| | 250:5 Pharmaceutical. | |
| 250:07 - 250:08 | **Hartle, Nathan 07-31-2018 (00:00:02)** | P013.162 |
| | 250:7 THE WITNESS:  I'm going to read | |
| | 250:8 this again just so -- | |
| 250:18 - 251:05 | **Hartle, Nathan 07-31-2018 (00:00:31)** | P013.163 |
| | 250:18  Q. It states, "Lastly, registrants | |
| | 250:19 that routinely report suspicious orders, yet | |
| | 250:20 fill these orders without first determining | |
| | 250:21 that order is not being diverted, may be | |
| | 250:22 failing to maintain effective controls | |
| | 250:23 against diversion." | |
| | 250:24 It's what you and I have been | |
| | 250:25 talking about for the last two hours, | |
| | 251:1 correct? | |
| | 251:2  A. Correct. | |
| | 251:3  Q. This is an accurate statement | |
| | 251:4 of federal law from the DEA to McKesson, | |
| | 251:5 agreed? | |
| 251:07 - 251:07 | **Hartle, Nathan 07-31-2018 (00:00:03)** | P013.164 |
| | 251:7 THE WITNESS:  Agreed. | |
| 251:09 - 251:11 | **Hartle, Nathan 07-31-2018 (00:00:05)** | P013.165 |
| | 251:9  Q. This is the same thing the DC | |
| | 251:10 Circuit Court of Appeals said in 2017, | |
| | 251:11 agreed? | |
| 251:13 - 251:13 | **Hartle, Nathan 07-31-2018 (00:00:01)** | P013.166 |
| | 251:13 THE WITNESS:  Agreed. | |

P013-Hartle, Nathan - Plaintiffs' Submission

| | P013-Hartle, Nathan - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| Page/Line | Source | ID |
|---|---|---|
| 254:25 - 255:13 | **Hartle, Nathan 07-31-2018 (00:00:46)** | P013.167 |
| | 254:25   Q. We'll mark Exhibit 25.  It's a | |
| | 255:1 2008_05_02, Bates stamp MCKMDL00355561. | |
| | 255:2 Do you recognize this document? | |
| | 255:3   A. I do. | |
| | 255:4   Q. What is it? | |
| | 255:5   A. It's the settlement agreement | |
| | 255:6 from 2008. | |
| | 255:7   Q. Between? | |
| | 255:8   A. Between McKesson and the DEA, | |
| | 255:9 DOJ. | |
| | 255:10   Q. Settling what? | |
| | 255:11   A. Settling allegations of things | |
| | 255:12 related to our responsibilities as a | |
| | 255:13 distributor. | |
| 258:20 - 258:23 | **Hartle, Nathan 07-31-2018 (00:00:10)** | P013.169 |
| | 258:20   Q. All right.  So it's clear in | |
| | 258:21 2008 what they're telling the DEA -- telling | |
| | 258:22 McKesson is that whatever you're doing, we | |
| | 258:23 think it's not enough? | |
| 258:25 - 259:01 | **Hartle, Nathan 07-31-2018 (00:00:02)** | P013.170 |
| | 258:25 THE WITNESS:  It's clear that | |
| | 259:1 that's what they were alleging. | |
| 261:09 - 261:11 | **Hartle, Nathan 07-31-2018 (00:00:09)** | P013.172 |
| | 261:9 Could the DEA have made it any | |
| | 261:10 clearer that McKesson has a duty to monitor | |
| | 261:11 and detect suspicious orders? | |
| 261:14 - 261:21 | **Hartle, Nathan 07-31-2018 (00:00:12)** | P013.173 |
| | 261:14 THE WITNESS:  To monitor and | |
| | 261:15 detect suspicious orders. | |
| | 261:16 QUESTIONS BY MR. FARRELL: | |
| | 261:17   Q. That's what it says. | |
| | 261:18   A. Very clear. | |
| | 261:19   Q. Could they have been any | |
| | 261:20 clearer that if you get a suspicious order, | |
| | 261:21 you can't just ship it? | |
| 261:24 - 261:24 | **Hartle, Nathan 07-31-2018 (00:00:01)** | P013.174 |
| | 261:24 THE WITNESS:  That's clear. | |
| 262:02 - 262:02 | **Hartle, Nathan 07-31-2018 (00:00:02)** | P013.175 |
| | 262:2   Q. Clear or very clear? | |

| P013-Hartle, Nathan - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| 262:04 - 262:04 | **Hartle, Nathan 07-31-2018 (00:00:01)** | **P013.176** |
| | 262:4 THE WITNESS:  It's very clear. | |
| 268:01 - 268:03 | **Hartle, Nathan 07-31-2018 (00:00:08)** | **P013.307** |
| | 268:1 Is there a relationship between | |
| | 268:2 the number of pills that get sold and the | |
| | 268:3 number of pills that get diverted? | |
| 268:05 - 268:15 | **Hartle, Nathan 07-31-2018 (00:00:15)** | **P013.308** |
| | 268:5 THE WITNESS:  It's hard to say, | |
| | 268:6 but you could assume that the -- you | |
| | 268:7 know -- | |
| | 268:8 QUESTIONS BY MR. FARRELL: | |
| | 268:9  Q. I don't want you to assume. | |
| | 268:10  A. Yeah. | |
| | 268:11  Q. I want you to use common sense. | |
| | 268:12  A. Yeah.  Using common sense and | |
| | 268:13 basic logic, you could assume the more pills | |
| | 268:14 that are out there, the more potential for | |
| | 268:15 diversion there could be. | |
| 268:16 - 268:22 | **Hartle, Nathan 07-31-2018 (00:00:20)** | **P013.300** |
| | 268:16  Q. So if I were to tell you that a | |
| | 268:17 company sold 100 pills and 10 of them got | |
| | 268:18 diverted, and then I come back to you and say | |
| | 268:19 a year later, a thousand pills got sold, what | |
| | 268:20 does common sense and logic tell you as | |
| | 268:21 McKesson Corporation how many pills get | |
| | 268:22 diverted? | |
| 268:24 - 269:04 | **Hartle, Nathan 07-31-2018 (00:00:12)** | **P013.301** |
| | 268:24 THE WITNESS:  I don't think | |
| | 268:25 it's that easy of a connection to say | |
| | 269:1 that happened.  There could be many | |
| | 269:2 different reasons why a thousand | |
| | 269:3 pills -- there may be an increase of a | |
| | 269:4 thousand pills with zero diversion. | |
| 271:14 - 271:18 | **Hartle, Nathan 07-31-2018 (00:00:09)** | **P013.179** |
| | 271:14 So in general, the more pills | |
| | 271:15 that gets diverted, the more abuse and | |
| | 271:16 addiction we find with prescription opium | |
| | 271:17 pills? | |
| | 271:18  A. There's that possibility. | |
| 271:22 - 271:24 | **Hartle, Nathan 07-31-2018 (00:00:11)** | **P013.180** |

| Page/Line | Source | ID |
|---|---|---|

**P013-Hartle, Nathan - Plaintiffs' Submission**

271:22   Q. I'm going to have marked what
271:23 is Deposition Exhibit 27.  The top right-hand
271:24 corner is 2012_5_9.

271:25 - 272:12    **Hartle, Nathan 07-31-2018 (00:00:27)**    P013.254

271:25 This is an amicus brief.
272:1 Do you know what an amicus
272:2 brief is?
272:3   A. I do not.  I do not have legal
272:4 background.
272:5   Q. Okay.  McKesson Corporation is
272:6 a member of the Healthcare Distributors and
272:7 Manufacturers Association, now known as the
272:8 Healthcare Distributors Association, agreed?
272:9   A. Healthcare Distributors
272:10 Management Association?
272:11   Q. Management, I'm sorry, yes.
272:12   A. Yes.

273:03 - 273:09    **Hartle, Nathan 07-31-2018 (00:00:28)**    P013.181

273:3   Q. So in -- on May 9th of 2012,
273:4 HDMA, the Healthcare Distribution Management
273:5 Association, wrote a brief to a federal court
273:6 here in Washington, DC, in support of
273:7 Cardinal Health and against the DEA.
273:8 Was McKesson Corporation aware
273:9 of this amicus brief?

273:18 - 273:19    **Hartle, Nathan 07-31-2018 (00:00:03)**    P013.183

273:18 THE WITNESS:  I don't know for
273:19 100 percent certain, but I assume so.

273:21 - 274:04    **Hartle, Nathan 07-31-2018 (00:00:19)**    P013.302

273:21   Q. Well, I don't want you to
273:22 guess.  This is relatively important.
273:23 Have you seen any
273:24 acknowledgement within McKesson Corporation
273:25 validating or affirming or reviewing or
274:1 participating in this amicus brief?
274:2   A. I have not.
274:3   Q. Are you aware of McKesson being
274:4 involved at all in the amicus briefs?

274:06 - 274:06    **Hartle, Nathan 07-31-2018 (00:00:01)**    P013.303

274:6 THE WITNESS:  I'm not.

| P013-Hartle, Nathan - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |
| 275:09 - 275:11 | **Hartle, Nathan 07-31-2018 (00:00:06)** | P013.185 |
| | 275:9   Q. And, Mr. McKesson Corporation, | |
| | 275:10 you were on the executive committee of HDMA | |
| | 275:11 of 2012, were you not? | |
| 275:14 - 275:15 | **Hartle, Nathan 07-31-2018 (00:00:04)** | P013.186 |
| | 275:14 THE WITNESS:  One of our senior | |
| | 275:15 leaders is. | |
| 275:25 - 276:06 | **Hartle, Nathan 07-31-2018 (00:00:18)** | P013.187 |
| | 275:25   Q. So I'm going to ask you a | |
| | 276:1 couple of questions about it. | |
| | 276:2   A. Okay. | |
| | 276:3   Q. If you flip to page 3... | |
| | 276:4   A. Of the brief? | |
| | 276:5   Q. Of the brief. | |
| | 276:6 The very bottom of the page -- | |
| 276:13 - 276:20 | **Hartle, Nathan 07-31-2018 (00:00:17)** | P013.188 |
| | 276:13   Q. It says, "HDMA's members have | |
| | 276:14 not only statutory and regulatory | |
| | 276:15 responsibilities to detect and prevent | |
| | 276:16 diversion of controlled prescription drugs, | |
| | 276:17 but undertake such efforts as responsible | |
| | 276:18 members of society." | |
| | 276:19 Do you see that? | |
| | 276:20   A. I do. | |
| 277:08 - 277:13 | **Hartle, Nathan 07-31-2018 (00:00:16)** | P013.189 |
| | 277:8   Q. Do you recognize this as an | |
| | 277:9 acknowledgement that all of the distributors | |
| | 277:10 in the country have a common law duty to the | |
| | 277:11 American citizens to prevent controlled | |
| | 277:12 substances from being diverted into the | |
| | 277:13 illicit market? | |
| 277:18 - 278:02 | **Hartle, Nathan 07-31-2018 (00:00:14)** | P013.190 |
| | 277:18   Q. I mean, isn't this what we | |
| | 277:19 talked about earlier? | |
| | 277:20   A. I do. | |
| | 277:21   Q. You do, don't you?  Yes? | |
| | 277:22   A. Yes. | |
| | 277:23   Q. Because it's not just | |
| | 277:24 statutory, regulatory.  You're engaged in | |
| | 277:25 selling opium pills.  You owe a duty to the | |

| P013-Hartle, Nathan - Plaintiffs' Submission | | |
| --- | --- | --- |
| **Page/Line** | **Source** | **ID** |

| 278:06 - 278:10 | 278:1 American people to do your very best to<br>278:2 prevent diversion.<br>**Hartle, Nathan 07-31-2018 (00:00:07)**<br>278:6   Q. Agreed?<br>278:7   A. Agreed.<br>278:8   Q. And this is your trade<br>278:9 organization making the same representation<br>278:10 to a federal court in Washington, DC? | **P013.191** |
| 278:13 - 278:20 | **Hartle, Nathan 07-31-2018 (00:00:19)**<br>278:13 THE WITNESS:  Yes.<br>278:14 QUESTIONS BY MR. FARRELL:<br>278:15   Q. Next sentence:  "The public<br>278:16 health dangers associated with the diversion<br>278:17 and abuse of controlled prescription drugs<br>278:18 have been well-recognized over the years by<br>278:19 Congress, DEA, HDMA and its members, and<br>278:20 public health authorities." | **P013.192** |
| 278:24 - 278:24 | **Hartle, Nathan 07-31-2018 (00:00:01)**<br>278:24 THE WITNESS:  Yes. | **P013.193** |
| 280:07 - 280:12 | **Hartle, Nathan 07-31-2018 (00:00:19)**<br>280:7   Q. Page 7.  "The societal costs of<br>280:8 prescription drug abuse are" -- what's it<br>280:9 say?<br>280:10   A. I flipped to the wrong page.<br>280:11 Excuse me.<br>280:12 "Huge." | **P013.194** |
| 280:21 - 280:24 | **Hartle, Nathan 07-31-2018 (00:00:11)**<br>280:21   Q. If a wholesale distributor<br>280:22 engages in unlawful conduct, should it be<br>280:23 held accountable for the societal costs of<br>280:24 prescription drug abuse? | **P013.195** |
| 281:02 - 281:04 | **Hartle, Nathan 07-31-2018 (00:00:05)**<br>281:2 THE WITNESS:  I believe<br>281:3 distributors have a responsibility in<br>281:4 preventing diversion. | **P013.196** |
| 285:06 - 285:15 | **Hartle, Nathan 07-31-2018 (00:00:35)**<br>285:6   Q. Well, back to McKesson<br>285:7 Corporation, which is you sitting in the<br>285:8 chair today.  Knowing what you know as the<br>285:9 30(b)(6) representative, the corporate | **P013.197** |

| P013-Hartle, Nathan - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

285:10 designee, knowing about your past conduct,
285:11 knowing about the past interactions with the
285:12 DEA, I'm going to ask you again:  Does
285:13 McKesson Corporation accept partial
285:14 responsibility for the societal costs of
285:15 prescription drug abuse in America?

**285:17 - 285:22**   **Hartle, Nathan 07-31-2018 (00:00:15)**   **P013.198**

285:17 THE WITNESS:  Again, you know,
285:18 I -- we're part of the closed system,
285:19 so we're responsible for preventing
285:20 diversion.
285:21 QUESTIONS BY MR. FARRELL:
285:22   Q. So the answer is?

**285:24 - 286:12**   **Hartle, Nathan 07-31-2018 (00:00:28)**   **P013.255**

285:24 THE WITNESS:  Again, I think
285:25 we're responsible for something.  I
286:1 don't know what -- how you define all
286:2 societal costs and -- I still believe
286:3 it depends on different circumstances.
286:4 QUESTIONS BY MR. FARRELL:
286:5   Q. Sir, we're not going to parse
286:6 out percentages.
286:7   A. Yeah.
286:8   Q. Let's just talk globally for
286:9 McKesson Corporation.  So I don't want to put
286:10 words in your mouth because it's got to come
286:11 out of your mouth.  So the answer is yes or
286:12 no.

**286:14 - 286:15**   **Hartle, Nathan 07-31-2018 (00:00:12)**   **P013.199**

286:14 THE WITNESS:  I would say yes,
286:15 partially.

**287:21 - 287:24**   **Hartle, Nathan 07-31-2018 (00:00:23)**   **P013.200**

287:21   Q. Next exhibit I'm going to have
287:22 marked is Exhibit 29.  It's Exhibit
287:23 2013_09_13.  It's Bates stamp
287:24 MCK-AGMS-006000880.

**287:25 - 288:20**   **Hartle, Nathan 07-31-2018 (00:01:07)**   **P013.256**

287:25 Have you seen this document?
288:1   A. I have not.
288:2   Q. Do you know who Gary Boggs is?

| | P013-Hartle, Nathan - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

288:3   A. I do know Gary.
288:4   Q. I'll represent to you that on
288:5 the metadata that was provided by the --
288:6 McKesson, indicates that this presentation is
288:7 dated in late 2012 -- wait, late 2013, I
288:8 think, probably before Gary Boggs came on to
288:9 McKesson.  We'll ask him when we depose him.
288:10 But anyway, this is a McKesson
288:11 spreadsheet from Gary Boggs.  Gary Boggs is
288:12 former DEA.
288:13   A. PowerPoint, not spreadsheet.
288:14   Q. Yeah, I'm sorry.
288:15   A. Okay.
288:16   Q. He's former DEA, correct?
288:17   A. Correct.
288:18   Q. He was the number 2 man on Joe
288:19 Rannazzisi, yes?
288:20   A. Yes.

| 289:07 - 289:10 | **Hartle, Nathan 07-31-2018 (00:00:12)** | **P013.201** |

289:7   Q. The title of this PowerPoint
289:8 slide is what?
289:9   A. Oh, "State of prescription drug
289:10 abuse."

| 289:17 - 289:25 | **Hartle, Nathan 07-31-2018 (00:00:30)** | **P013.202** |

289:17   Q. "Protecting America from
289:18 Prescription Drug Diversion."
289:19 The next page is a history of
289:20 understanding the problem, and on page 4 it
289:21 talks about a collision course.
289:22 And presumably this is two
289:23 planes colliding in the air, and that's
289:24 OxyContin and Percocet.
289:25 Do you see that?

| 290:02 - 290:02 | **Hartle, Nathan 07-31-2018 (00:00:01)** | **P013.203** |

290:2 THE WITNESS:  I see that.

| 290:04 - 290:09 | **Hartle, Nathan 07-31-2018 (00:00:15)** | **P013.204** |

290:4   Q. "In the late 1990s, doctors
290:5 aggressively prescribing painkillers - a
290:6 radical change in health care behavior."
290:7 And that radical change in

| P013-Hartle, Nathan - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| | 290:8 health care behavior did what to the number | |
| | 290:9 of prescriptions? | |
| 290:11 - 290:17 | **Hartle, Nathan 07-31-2018 (00:00:12)** | **P013.257** |
| | 290:11 THE WITNESS:  Increased them. | |
| | 290:12 QUESTIONS BY MR. FARRELL: | |
| | 290:13  Q. Which resulted in an increase | |
| | 290:14 or decrease in the number of pills McKesson | |
| | 290:15 sold? | |
| | 290:16  A. I don't know exact numbers, but | |
| | 290:17 it increased. | |
| 293:07 - 293:10 | **Hartle, Nathan 07-31-2018 (00:00:10)** | **P013.304** |
| | 293:7  Q. Fair enough. | |
| | 293:8 The next page, 5 and 6, | |
| | 293:9 document Purdue Pharma's $635 million fine, | |
| | 293:10 Cephalon's $425 million fine. | |
| 293:11 - 293:18 | **Hartle, Nathan 07-31-2018 (00:00:19)** | **P013.206** |
| | 293:11 Going to page 7, it's comparing | |
| | 293:12 the US rates of opioid overdose deaths, sales | |
| | 293:13 and treatment admissions. | |
| | 293:14 Do you see that? | |
| | 293:15  A. I see that. | |
| | 293:16  Q. What is the correlation between | |
| | 293:17 opioid sales and opioid deaths?  Are they | |
| | 293:18 related or unrelated? | |
| 293:20 - 293:21 | **Hartle, Nathan 07-31-2018 (00:00:02)** | **P013.207** |
| | 293:20 THE WITNESS:  They're both | |
| | 293:21 increasing at a similar rate. | |
| 293:23 - 293:24 | **Hartle, Nathan 07-31-2018 (00:00:03)** | **P013.208** |
| | 293:23  Q. So that means they're related | |
| | 293:24 or unrelated? | |
| 294:01 - 294:02 | **Hartle, Nathan 07-31-2018 (00:00:02)** | **P013.209** |
| | 294:1 THE WITNESS:  They appear to be | |
| | 294:2 related. | |
| 294:11 - 294:12 | **Hartle, Nathan 07-31-2018 (00:00:04)** | **P013.210** |
| | 294:11  Q. Does McKesson believe that | |
| | 294:12 opioid sales are related to opioid deaths? | |
| 294:15 - 294:17 | **Hartle, Nathan 07-31-2018 (00:00:08)** | **P013.211** |
| | 294:15 THE WITNESS:  The volume of | |
| | 294:16 opioids in the market and diversion is | |
| | 294:17 related to opioid deaths, certainly. | |

**P013-Hartle, Nathan - Plaintiffs' Submission**

| Page/Line | Source | ID |
|---|---|---|
| 294:19 - 295:10 | **Hartle, Nathan 07-31-2018 (00:00:50)** | P013.212 |

294:19   Q. Page 8, the Controlled
294:20 Substances Act, the very last provision says,
294:21 "Creates checks and balances between
294:22 registrants to protect the public health and
294:23 safety."
294:24 Again, this is again a
294:25 reaffirmation from Gary Boggs, who is now one
295:1 of your senior regulatory affairs management,
295:2 acknowledging that the registrants and the
295:3 DEA have a duty to protect the public health
295:4 and safety, agreed?
295:5   A. Agreed.
295:6   Q. Page 13.  It says, "What can
295:7 happen when these checks and balances
295:8 collapse?"
295:9 What do you believe this is a
295:10 picture of?

| 295:12 - 295:13 | **Hartle, Nathan 07-31-2018 (00:00:03)** | P013.213 |

295:12 THE WITNESS:  It's a building
295:13 falling down.

| 295:15 - 295:21 | **Hartle, Nathan 07-31-2018 (00:00:24)** | P013.214 |

295:15   Q. A disaster?
295:16   A. It's a building that's falling
295:17 down.  Why it fell down could be a disaster.
295:18   Q. What do you infer from
295:19 Mr. Boggs' implication?
295:20   A. That things can go wrong,
295:21 something can happen.

| 296:13 - 296:22 | **Hartle, Nathan 07-31-2018 (00:00:29)** | P013.215 |

296:13   Q. Page 17, historical comparison.
296:14 He's comparing the opioid crisis to the BP
296:15 oil spill where 11 people were killed and BP
296:16 paid 40 billion, plus 16 billion to the Clean
296:17 Water Act.
296:18 Have more or less than 11
296:19 people been killed by the opioid crisis?
296:20   A. Clearly more.
296:21   Q. Have more people died today
296:22 than 11 people?

| | P013-Hartle, Nathan - Plaintiffs' Submission | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| Page/Line | Source | ID |
|---|---|---|
| 296:24 - 296:25 | **Hartle, Nathan 07-31-2018 (00:00:02)**<br><br>296:24 THE WITNESS:  Based on the<br>296:25 statistics, yes. | P013.216 |
| 297:02 - 297:05 | **Hartle, Nathan 07-31-2018 (00:00:16)**<br><br>297:2  Q. Page 24.  Does McKesson<br>297:3 acknowledge and agree there is a national<br>297:4 epidemic of prescription pill addiction,<br>297:5 abuse, morbidity and mortality? | P013.217 |
| 297:07 - 297:07 | **Hartle, Nathan 07-31-2018 (00:00:01)**<br><br>297:7 THE WITNESS:  Absolutely. | P013.218 |
| 297:20 - 297:24 | **Hartle, Nathan 07-31-2018 (00:00:19)**<br><br>297:20  Q. Page 37, "distributors have<br>297:21 great power."  The last provision.<br>297:22 You, McKesson Corporation,<br>297:23 control the supply to downstream customers.<br>297:24 Does McKesson acknowledge that duty? | P013.219 |
| 298:01 - 298:05 | **Hartle, Nathan 07-31-2018 (00:00:04)**<br><br>298:1 THE WITNESS:  We control what<br>298:2 we sell.<br>298:3 QUESTIONS BY MR. FARRELL:<br>298:4  Q. So yes?<br>298:5  A. Yes. | P013.220 |
| 298:18 - 298:22 | **Hartle, Nathan 07-31-2018 (00:00:16)**<br><br>298:18  Q. Page 46, "Without sustained<br>298:19 sources of supply, major diversion schemes<br>298:20 wither away."<br>298:21 Who are the major sources of<br>298:22 supply? | P013.222 |
| 298:24 - 299:06 | **Hartle, Nathan 07-31-2018 (00:00:14)**<br><br>298:24 THE WITNESS:  Those in the<br>298:25 closed system of distribution:<br>299:1 manufacturers, distributors.  There's<br>299:2 also sources, illicit sources, outside<br>299:3 of the closed network.<br>299:4 QUESTIONS BY MR. FARRELL:<br>299:5  Q. They all originate within the<br>299:6 closed network, do they not? | P013.223 |
| 299:08 - 299:17 | **Hartle, Nathan 07-31-2018 (00:00:21)**<br><br>299:8 THE WITNESS:  What do you mean<br>299:9 by "all originate"? | P013.225 |

| | | |
|---|---|---|
| **P013-Hartle, Nathan - Plaintiffs' Submission** | | |

| Page/Line | Source | ID |
|---|---|---|

299:10 QUESTIONS BY MR. FARRELL:
299:11   Q. Well, Bob, in his trailer in
299:12 southern West Virginia, isn't making
299:13 OxyContin pills.
299:14   A. No, I'm saying there's other --
299:15 I understand your point.  They come
299:16 ultimately from the manufacturer,
299:17 distributor, pharmacy.

**299:21 - 299:25**   **Hartle, Nathan 07-31-2018 (00:00:30)**   **P013.226**
299:21   Q. Exhibit 30, 2013_10_23, Bates
299:22 stamp MCKMDL00409046.  This is October 23,
299:23 2013.
299:24 McKesson is in trouble again
299:25 with the DEA, agreed?

**300:02 - 300:05**   **Hartle, Nathan 07-31-2018 (00:00:05)**   **P013.258**
300:2 THE WITNESS:  There's
300:3 allegations.
300:4 QUESTIONS BY MR. FARRELL:
300:5   Q. Same ones as before, agreed?

**300:07 - 300:10**   **Hartle, Nathan 07-31-2018 (00:00:05)**   **P013.283**
300:7 THE WITNESS:  Related to the
300:8 regulations.
300:9 QUESTIONS BY MR. FARRELL:
300:10   Q. Same as the 2008?

**300:12 - 300:13**   **Hartle, Nathan 07-31-2018 (00:00:02)**   **P013.284**
300:12 THE WITNESS:  Around suspicious
300:13 orders.

**300:17 - 300:18**   **Hartle, Nathan 07-31-2018 (00:00:14)**   **P013.285**
300:17   Q. Exhibit 31, dated November 6,
300:18 2013.  It's 2013_11_6, MCKMDL00409048.

**300:19 - 300:25**   **Hartle, Nathan 07-31-2018 (00:00:14)**   **P013.290**
300:19 It's again from the United
300:20 States Attorney in the Northern District of
300:21 West Virginia.  It's talking about further
300:22 explanations.
300:23 You would agree with me this is
300:24 the same conduct that McKesson got in trouble
300:25 for in 2008?

**301:02 - 301:04**   **Hartle, Nathan 07-31-2018 (00:00:03)**   **P013.227**
301:2 THE WITNESS:  Yeah, it has to

| Page/Line | Source | ID |
|---|---|---|
| | 301:3 do with suspicious orders, which is | |
| | 301:4 similar. | |
| 302:09 - 303:01 | **Hartle, Nathan 07-31-2018 (00:00:55)** | **P013.228** |
| | 302:9   Q. Exhibit 32, 2014_1_XX, | |
| | 302:10 MCKMDL00409050.  In fact, they put a whole | |
| | 302:11 presentation together. | |
| | 302:12 Have you seen this | |
| | 302:13 presentation? | |
| | 302:14   A. I have seen this one. | |
| | 302:15   Q. I'm not going to go through | |
| | 302:16 this because we'll go through with it a lot | |
| | 302:17 more tomorrow. | |
| | 302:18 In essence, what I'm trying to | |
| | 302:19 accomplish here is that you understand that | |
| | 302:20 the United States District Attorney for the | |
| | 302:21 Northern District of Ohio, and then it turns | |
| | 302:22 out other ones, including Colorado, are | |
| | 302:23 basically telling McKesson:  You have a | |
| | 302:24 systemic failure to monitor, detect and | |
| | 302:25 report suspicious orders. | |
| | 303:1 Is that what they're alleging? | |
| 303:03 - 303:04 | **Hartle, Nathan 07-31-2018 (00:00:01)** | **P013.230** |
| | 303:3 THE WITNESS:  Yes, that's what | |
| | 303:4 they're alleging. | |
| 305:17 - 305:24 | **Hartle, Nathan 07-31-2018 (00:00:13)** | **P013.232** |
| | 305:17   Q. Now, skipping through all of | |
| | 305:18 the other correspondence because we'll get | |
| | 305:19 into that more tomorrow, more recently, as a | |
| | 305:20 result of all of this, even though McKesson | |
| | 305:21 is denying liability, you understand that | |
| | 305:22 McKesson did enter into another settlement | |
| | 305:23 agreement? | |
| | 305:24   A. I understand that. | |
| 306:03 - 306:18 | **Hartle, Nathan 07-31-2018 (00:01:18)** | **P013.233** |
| | 306:3   Q. 2017_01_05A, 35, Exhibit 35, | |
| | 306:4 MCKMDL00355322, the settlement agreement and | |
| | 306:5 release. | |
| | 306:6 Exhibit 37, 2017_01_5B, | |
| | 306:7 MCKMDL00355477. | |
| | 306:8 MS. HENN:  Did you skip 36? | |

P013-Hartle, Nathan - Plaintiffs' Submission

| Page/Line | Source | ID |
|---|---|---|

**P013-Hartle, Nathan - Plaintiffs' Submission**

|  | 306:9 QUESTIONS BY MR. FARRELL: |  |
|  | 306:10   Q. I didn't. |  |
|  | 306:11 36 will be 2017_01_05B, the |  |
|  | 306:12 compliance addendum. |  |
|  | 306:13 MS. HENN:  37. |  |
|  | 306:14 MR. FARRELL:  Oh, okay, I'm |  |
|  | 306:15 sorry.  But it's okay because we'll |  |
|  | 306:16 just put 36 as the administrative |  |
|  | 306:17 memorandum, which is 2017_01_5C, |  |
|  | 306:18 MCKMDL0355513. |  |
| 307:12 - 307:17 | **Hartle, Nathan 07-31-2018 (00:00:17)** | **P013.234** |
|  | 307:12   Q. McKesson's distribution |  |
|  | 307:13 facilities were systematically failing to |  |
|  | 307:14 report suspicious orders and resulted in a |  |
|  | 307:15 $150 million fine assessed by the DEA and |  |
|  | 307:16 paid by McKesson Corporation; true or not |  |
|  | 307:17 true? |  |
| 307:19 - 307:20 | **Hartle, Nathan 07-31-2018 (00:00:02)** | **P013.235** |
|  | 307:19 THE WITNESS:  We did pay that |  |
|  | 307:20 fine, $150 million. |  |
| 307:22 - 307:23 | **Hartle, Nathan 07-31-2018 (00:00:04)** | **P013.236** |
|  | 307:22   Q. Because you were systematically |  |
|  | 307:23 not reporting suspicious orders? |  |
| 307:25 - 308:01 | **Hartle, Nathan 07-31-2018 (00:00:01)** | **P013.237** |
|  | 307:25 THE WITNESS:  That was at the |  |
|  | 308:1 core of it. |  |
| 308:15 - 308:16 | **Hartle, Nathan 07-31-2018 (00:00:04)** | **P013.239** |
|  | 308:15 McKesson wasn't following the |  |
|  | 308:16 law and got fined $150 million? |  |
| 308:18 - 308:22 | **Hartle, Nathan 07-31-2018 (00:00:06)** | **P013.240** |
|  | 308:18 THE WITNESS:  We acknowledged |  |
|  | 308:19 that certain orders did not get |  |
|  | 308:20 flagged in our system. |  |
|  | 308:21 QUESTIONS BY MR. FARRELL: |  |
|  | 308:22   Q. Thousands. |  |
| 308:25 - 309:03 | **Hartle, Nathan 07-31-2018 (00:00:05)** | **P013.242** |
|  | 308:25   Q. Thousands of orders? |  |
|  | 309:1   A. Orders. |  |
|  | 309:2   Q. Like some facilities reported |  |
|  | 309:3 none. |  |

| P013-Hartle, Nathan - Plaintiffs' Submission | | |
|---|---|---|
| **Page/Line** | **Source** | **ID** |

| 309:06 - 309:07 | **Hartle, Nathan 07-31-2018 (00:00:04)** | P013.244 |
| | 309:6  Q. Yes? | |
| | 309:7  A. Systematically none. | |
| 320:14 - 320:17 | **Hartle, Nathan 07-31-2018 (00:00:14)** | P013.245 |
| | 320:14  Q. As the McKesson corporate | |
| | 320:15 representative, do you acknowledge that abuse | |
| | 320:16 of prescription opium pills is a gateway to | |
| | 320:17 the initiation of heroin? | |
| 320:20 - 321:06 | **Hartle, Nathan 07-31-2018 (00:00:25)** | P013.246 |
| | 320:20 THE WITNESS:  Based on | |
| | 320:21 everything that I've read and in the | |
| | 320:22 media and statistics and discussion, I | |
| | 320:23 would agree -- agree to that. | |
| | 320:24 QUESTIONS BY MR. FARRELL: | |
| | 320:25  Q. If you abuse prescription | |
| | 321:1 opiates, the CDC says that you're 40 times | |
| | 321:2 more likely to initiate heroin use. | |
| | 321:3 Does McKesson acknowledge | |
| | 321:4 that -- that prescription opiate pill abuse | |
| | 321:5 is a driving factor in the heroin epidemic | |
| | 321:6 we're also experiencing? | |
| 321:09 - 321:10 | **Hartle, Nathan 07-31-2018 (00:00:05)** | P013.247 |
| | 321:9 THE WITNESS:  Yeah, it's a | |
| | 321:10 factor. | |
| 327:05 - 327:12 | **Hartle, Nathan 07-31-2018 (00:00:24)** | P013.248 |
| | 327:5  Q. And so in 2008, McKesson | |
| | 327:6 Corporation paid $13 million, and in 2017, | |
| | 327:7 McKesson paid $150 million. | |
| | 327:8 What would happen in today's | |
| | 327:9 world if McKesson went to the DEA and said, | |
| | 327:10 "We don't have a duty to investigate and halt | |
| | 327:11 suspicious orders"?  What do you reckon would | |
| | 327:12 happen then? | |
| 327:15 - 327:17 | **Hartle, Nathan 07-31-2018 (00:00:03)** | P013.249 |
| | 327:15 THE WITNESS:  I'm not sure | |
| | 327:16 exactly what would happen, but they | |
| | 327:17 wouldn't be thrilled. | |
| 364:19 - 364:22 | **Hartle, Nathan 07-31-2018 (00:00:08)** | P013.250 |
| | 364:19 Do you agree that one of the | |
| | 364:20 foreseeable harms of engaging in unlawful | |

| Page/Line | Source | ID |
|---|---|---|
| | 364:21 conduct in the distribution of prescription | |
| | 364:22 opioids is diversion? | |
| 364:24 - 364:25 | **Hartle, Nathan 07-31-2018 (00:00:02)** | **P013.251** |
| | 364:24 THE WITNESS:  I think it can | |
| | 364:25 be. | |
| 365:22 - 365:24 | **Hartle, Nathan 07-31-2018 (00:00:05)** | **P013.252** |
| | 365:22   Q. Do you believe the prescription | |
| | 365:23 opiate epidemic is an immediate hazard to | |
| | 365:24 public health and safety? | |
| 366:01 - 366:06 | **Hartle, Nathan 07-31-2018 (00:00:07)** | **P013.253** |
| | 366:1 THE WITNESS:  How do you -- how | |
| | 366:2 are you defining "immediate hazard"? | |
| | 366:3 QUESTIONS BY MR. FARRELL: | |
| | 366:4   Q. A hazard. | |
| | 366:5   A. A hazard? | |
| | 366:6 Sure. | |

Plaintiff Affirmatives = 01:03:31
Defense Completeness Counters = 00:03:16
**Total Time = 01:06:46**