| WITNESS NAME | Hartman, Mark |
|---|---|
| DEPOSITION DATE | 11/15/2018 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | COUNTER DESIGNATIONS *Pink = Completeness Designation | | | | | REPLY DESIGNATIONS *Pink = Completeness Designation | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | Page/Line End | Objections | Objection Notes | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Objection Notes | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Objection Notes | Replies to Objections |
| 10 | 14 | 10 | 15 | | | n/a | 355 | 9 | 358 | 22 | none | | 90 | 22 | 91 | 10 | | | |
| 16 | 5 | 16 | 10 | | | n/a | 358 | 23 | 360 | 6 | none | | | | | | | | |
| 18 | 21 | 18 | 22 | | | n/a | 360 | 7 | 361 | 5 | none | | | | | | | | |
| 19 | 1 | 19 | 5 | | | n/a | 361 | 6 | 361 | 23 | none if reply designation stays in | | | | | | | | |
| 20 | 22 | 21 | 3 | | | n/a | 361 | 24 | 362 | 21 | none | | | | | | | | |
| 22 | 14 | 23 | 10 | | | n/a | 368 | 5 | 369 | 7 | hearsay | | | | | | | | |
| 90 | 9 | 90 | 21 | Argumentative; Foundation; Assumes Facts Not in Evidence | Counsel's assertion that, "You knew that the regulatory department was understaffed and underfunded" is argumentative and lacks foundation in evidence. | The foundation and facts have been established and/or are in evidence.  See e.g. , 5/20/2021 Trial Tr. at 53:20-54:7 (Adding 24 field QRA Compliance Managers "is a change that I felt was necessary to meet our regulatory obligations."); Dep. Exh. 7 ("We lost in the budget defense big time and Giacomin is mounting an attack on QRA"); Dep. at 139:7-15 (needed more resources).  Moreover, the witness had the required backround, experience, knowledge and job responsibilities at Cardinal to warrant the questioning.  Mr. Hartman worked at Cardinal for over a decade, and for several years starting in 2007, was Cardinal's Senior VP of Supply Chain Integrity and Regulatory Operations, in charge of both Quality Regulatory Affairs and the anti-diversion program.  See  Dep. at 16:1-10, 19:1-5, 23:4-7, 84:22-85:5; Dep. Exh. 1 at p. 1.  The statement is not argumentative, but rather indicative of the established facts.  Further, any alleged argumentative issue with the question can be properly considered, accounted for and/or weighed by the Court in this bench trial. | 369 | 8 | 369 | 17 | none | | | | | | | | |
| 126 | 14 | 126 | 14 | | | n/a | 370 | 22 | 371 | 4 | none | | | | | | | | |
| 126 | 17 | 126 | 22 | Foundation; Assumes Facts Not in Evidence | Counsel asserts that the witness was "aware that there were budgetary battles." | These objections not supported, as the foundation and facts have been established and/or are in evidence.  See e.g. , 5/20/2021 Trial Tr. at 52:6-10 (Cardinal's Quality and Regulatory Affairs department had budgetary constraints and limited resources"); Dep. Exh. 7 ("We lost in the budget defense big time and Giacomin is mounting an attack on QRA"); Dep. at 126:24-127:1 ("there's always budgetary battles"); Id . at 139:7-15 (needed more resources); Dep. Exh. 8 at p. 64 (Under-resourced, "not enough people"); Dep. at 156:3-14 ("I didn't have a function that didn't come in with anything different than this kind of lineup of under-resourced or underfunded or needs money.").  Further, the witness had the required backround, experience, knowledge and job responsibilities at Cardinal to warrant the questioning.  Mr. Hartman worked at Cardinal for over a decade, and for several years starting in 2007, was Cardinal's Senior VP of Supply Chain Integrity and Regulatory Operations, in charge of both Quality Regulatory Affairs and the anti-diversion program.  See Dep. at 16:1-10, 19:1-5, 23:4-7, 84:22-85:5; Dep. Exh. 1 at p 1 | 371 | 12 | 371 | 15 | none | | | | | | | | |
| 126 | 24 | 133 | 23 | Lacks Foundation and Speculation as to 128:3-5; Relevance as to 132:1-2. Speculation as to 133:21-23. | As to Foundation and Speculation on 128:3-5, counsel asks the witness about "budget battles" that occurred "before, after" the witness's time in the relevant role. As to Relevance at 132:1-2, counsel is testifying and asserting his own irrelevant opinion: "I can imagine so. I can imagine so." Speculation as to 133:21-23 as counsel asks the witness to interpret the words another person wrote in an email, "which indicates his budget got cut, right?" - the document speaks for itself. | Same response as above.  Also, the objections to lack of foundation and speculation (at 128:3-5) are objections to form which were not made during the deposition, and are thus waived.  Further, as detailed and cited above, the witness had the required backround, experience, knowledge and job responsibilities at Cardinal sufficient to answer.  As for the relevance objection specific to 132:1-2, Plaintiffs will agree to eliminate that portion of the question if Cardinal withdraws its objection.  With respect to the speculation objection to 133:21-23, the question sought the witness's understanding since the email was sent to the witness. Moreover, the witness's answer indicates that he understood the question and what was conveyed in the email, and the witness had the background, experience and knowledge sufficient to answer. | | | | | | | | | | | | |
| 134 | 1 | 140 | 18 | Speculation (136:9-10) Lacks Foundation and Argumentative (138:11-15); Speculation (140:3-141:5) | Counsel asks the witness to speculate as to what another person meant in an email (136:9-10). Counsel asserts, without support, "you are aware that prior to your taking this position, there are also budget battles and deficiencies in what the regulatory department has as well" - as counsel noted, this was prior to the witness's time in the relevant role. Finally, counsel explicitly asks the witness to speculate as to what another person meant in an email: "do you know what he's referring to here?" (and follow up questions on same topic) - this entire exchange should be stricken as speculative. | The objections to speculation (at 136:9-10), lack of foundation and argumentative (at 138:11-15), and speculation (at 140:3-15) are objections to form which were not made during the depositon, and are thus waived relative to same.  Moreover, Mr. Hartman worked at Cardinal for over a decade, and for several years starting in 2007, was Cardinal's Senior VP of Supply Chain Integrity and Regulatory Operations, in charge of both Quality Regulatory Affairs ("QRA") and the anti-diversion program.  See Dep. at 16:1-10, 19:1-5, 23:4-7, 84:22-85:5; Dep. Exh. 1 at p. 1.  With respect to the objections to speculation (of 136:9-10 and 140:3-141:5), as part of his Senior VP role and being in charge of QRA, Mr. Hartman knew what was meant by "the fourth [floor]" and "unpopular decisions", as evidenced by his detailed explanations regarding same.  See Dep. at 135:23-136:8, 140:6-141:5.  Also, the questioning permissibly sought the witness's understanding of the email which was written to him.  As for the lack of foundation and argumentative objections (of 138:11-15), the foundation and facts have been established and/or are in evidence.  See e.g. , 5/20/2021 Trial Tr. at 52:6-10 (Cardinal's Quality and Regulatory Affairs department had budgetary constraints and limited resources"); Dep. Exh. 7 ("We lost in the budget defense big time and Giacomin is mounting an attack on QRA"); Dep. at 126:24-127:1 ("there's always budgetary battles"); Id . at 139:7-15 (needed more resources in QRA); Dep. Exh. 8 at p. 64 (Under-resourced, "not enough people"); Dep. at 156:3-14 ("I didn't have a function that didn't come in with anything different than this kind of lineup of under-resourced or underfunded or needs money.").  Further, to the extent that any alleged argument issue exists, the Court can properly consider, account for, and/or weigh same in this bench trial. | | | | | | | | | | | | |

| WITNESS NAME | Hartman, Mark |
|---|---|
| DEPOSITION DATE | 11/15/2018 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | COUNTER DESIGNATIONS *Pink = Completeness Designation | | | | | REPLY DESIGNATIONS *Pink = Completeness Designation | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | Page/Line End | Objections | Objection Notes | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Objection Notes | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Objection Notes | Replies to Objections |
| 140 | 21 | 142 | 5 | Argumentative, Foundation, Assumes Facts Not in Evidence, Speculation all to 142:1-14 | See above entry for speculation objection that spans 140:3-141:5. As to 142:1-14, counsel asserts, "when you came into the department . . . That's not the way it was being done. It was oversaw by people who didn't like unpopular decisions, correct?" - the question explicitly asks the witness to speculate into the mindset of other employees to determine what they "like[d]," counsel's statement assumes facts not in evidence (that the department was in fact overseen by individuals with that mindset), and is argumentative. | Same response as above regarding objection to speculation for 140:3-141:5. As for the objections regarding 142:1-14, the facts and foundation were previously established. See Dep. at 141:12-24. Moreover, Mr. Hartman worked at Cardinal for over a decade, and for several years starting in 2007, was Cardinal's Senior VP of Supply Chain Integrity and Regulatory Operations, in charge of both Quality Regulatory Affairs ("QRA") and the anti-diversion program (see Dep. at 16:1-10, 19:1-5, 23:4-7, 84:22-85:5; Dep. Exh. 1 at p. 1). As part of his Senior VP role and being in charge of QRA, Mr. Hartman should have known how things worked in the system he was responsible for revising, and if he did not know, that goes to competence and/or performance. Further, to the extent that any alleged argument issue exists, the Court can properly consider, account for, and/or weigh same in this bench trial. | | | | | | | | | | |
| 142 | 7 | 145 | 4 | Prejudicial and Argumentative (145:3-4) | | This question is not argumentative or unfairly prejudicial, as it uses the same terminology ("haunt") that the witness himself used in his email, and merely seeks what the witness meant by using that term. See Dep. Exh. 7 ("It's a shame if the departtment is relegated to less than needed authority or investment. It will haunt the org at some point."). As these are the witness's own words, the question is not unfairly prejudicial. Moreover, to the extent that any argument or unfair prejudice is found, the testimony should not be excluded, but rather admitted and weighted accordingly. See Schultz v. Butcher, 24 F.3d 626, 632 (4th. Cir. 1994) ("[I]n the context of a bench trial, evidence should not be excluded under 403 on the ground that it is unfairly prejudicial. Under the Federal Rules of Evidence, admissibility of evidence is favored unless the probative value of the evidence is so low as to warrant exclusion when prejudice is a factor."). | | | | | | | | | | |
| 145 | 7 | 145 | 15 | Prejudicial and Argumentative (145:7-11; 15) | | Same response as above. | | | | | | | | | |
| 145 | 19 | 146 | 19 | Speculation, Argumentative, Lacks Foundation as to 146:14-19) | Counsel explicitly asks the witness to speculate as to another person's mindset: "And now he feels like Giacomin is attacking him." Additionally, the same narrative question is extremely argumentative and unfairly prejudicial - "and the haunting that's coming . . . And the result is what we see here today, an opioid epidemic going on in our country; isn't that true?" | Mr. Hartman worked at Cardinal for over a decade, and for several years starting in 2007, was Cardinal's Senior VP of Supply Chain Integrity and Regulatory Operations, in charge of both Quality Regulatory Affairs ("QRA") and the anti-diversion program. See Dep. at 16:1-10, 19:1-5, 23:4-7, 84:22-85:5; Dep. Exh. 1 at p. 1. With respect to the speculation and foundation objections (to 146:14-19), the witness had the required background, experience and knowledge, and the question properly sought the witness's understanding since the email was sent directly to him. Also, the witness's elaborated answer indicates that he understood the question and what was conveyed in the email. Foundation is also provided by the underlying email chain itself (written and received by the witness), which Cardinal stipulated could be introduced "without the use of a sponsoring witness at trial". See ECF No. 1257 at 1, and ECF No. 1257-1 at 2 (row 39, CAH_MDL2804_02881832). As for the argument objection (to 146:14-19), the question uses the same terminology (e.g., "Giacomin is mounting an attack" and "[i]t will haunt the org at some point") from the email itself. See Dep. Exh. 7. And, the witness agreed there is an opioid epidemic topic, and that there has been one for a long time. See Dep. at 147:3-10. Further, to the extent that any alleged argument issue exists, the Court can properly consider, account for, and/or weigh same in this bench trial. | | | | | | | | | | |
| 146 | 21 | 147 | 2 | Speculation, Argumentative, Prejudicial (as to 146:21-147:2) | Strike the witness's response to the above speculative, argumentative, and unfairly prejudicial narrative question. | Same response as above relative to the speculation and argumentative objections. With respect to the objection to prejudice, the questioning and testimony is not unfairly prejudicial as this is the witness's answer in response to the question seeking the witness's understanding since the email was sent directly to him. Further, to the extent that any unfair prejudice is found, the testimony should not be excluded, but rather admitted and weighted accordingly. See Schultz v. Butcher, 24 F.3d 626, 632 (4th. Cir. 1994) ("[I]n the context of a bench trial, evidence should not be excluded under 403 on the ground that it is unfairly prejudicial. Under the Federal Rules of Evidence, admissibility of evidence is favored unless the probative value of the evidence is so low as to warrant exclusion when prejudice is a factor."). | | | | | | | | | | |
| 149 | 22 | 155 | 6 | Objections forthcoming | | n/a | | | | | | | | | |
| 155 | 15 | 156 | 4 | Speculation and Foundation (156:3-4) | Counsel asks the witness to expand on the meaning of a bullet point in a document that this witness did not prepare or use as part of his role at CAH - "Not enough people, not enough resources. That's what it's saying, correct?" - the document speaks for itself, but counsel cannot ask this witness to adopt counsel's interpretation of a particular bullet point. | The objections to speculation and lack of foundation are not supported. The witness's ability to answer and the foundation are provided by the testimony as well as the exhibit itself. The witness's background, experience and role, shows he had the knowledge and ability to respond, and his extensive answer to the question further proves same. See Dep. at 156:3-24 (e.g., "I oversaw and was a part of watching all of these departments. It's a big, big transformation. Big. Lots of involvement. Huge changes. I'll just tell you that I didn't have a function that didn't come in with anything different than this kind of lineup of under-resourced or underfunded or needs money."). Counsel can ask the witness's understanding of particular bullet point in the document, which is what the question does. Foundation is also provided by the document itself, which states in pertinent part "Under resourced today" and "not enough people"). See Dep. Exh. 8 at p. 64. | | | | | | | | | | |

| WITNESS NAME | Hartman, Mark |
|---|---|
| DEPOSITION DATE | 11/15/2018 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | COUNTER DESIGNATIONS *Pink = Completeness Designation | | | | | REPLY DESIGNATIONS *Pink = Completeness Designation | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | Page/Line End | Objections | Objection Notes | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Objection Notes | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Objection Notes | Replies to Objections |
| 156 | 6 157 6 | Legal Opinion (157:1-6) | Counsel asks the witness to opine on what the law has "labeled" the medications that CAH distributes. | The question does not seek a legal opinion, but rather the witness's knowledge and/or understanding of how the drugs Cardinal distributes are classified. It is a fact that opioids are classified, and the witness had the background, knowledge, experience and responsibility (particularly as Senior VP of Supply Chain Integrity and Regulatory Operations for several years since 2007, in charge of QRA and anti-diversion) such that he should have known in the ordinary course of his job. See Dep. at 16:1-10, 19:1-5, 23:4-7, 84:22-85:5; Dep. Exh. 1 at p. 1. Also, the witness's answer shows that he knew this information as part of his job. See Dep. at 157:8-10. Additionally, to the extent believed that an opinion was sought/provided, the witness had the appropriate experience and knowledge to provide same pursuant to FRE 701 | | | | | | | | | | |
| 157 | 8 157 17 | Legal Opinion (157:8-10); Argumentative and Legal Opinion (157:11-17). | As to 157:8-10, same objection as above. As to 157:11-17, counsel's question is clearly argumentative, and also calls for a legal opinion: "This is not a place to skimp . . . Regulatory needs to be beefed up so they can do the job they need to do in compliance with the regulations we talked about earlier." | Same response as above regarding the legal opinion objections. Moreover, the question at 157:11-17 seeks the witness's knowledge, and/or understanding about what was needed at Cardinal and why. This is not argumentative or a legal conclusion, but rather addresses the witness's perspective in the context of his job/role at Cardinal (as Senior VP of Supply Chain Integrity and Regulatory Operations for several years since 2007, in charge of QRA and anti-diversion). To the extent an opinion was sought/provided, the witness had the appropriate experience and knowledge to provide same pursuant to FRE 701. Also, the question reasonably tracks the established facts about Cardinal's need to improve and supplement its regulatory resources. See e.g. , 5/20/2021 Trial Tr. at 52:6-10 (Cardinal's Quality and Regulatory Affairs department had budgetary constraints and limited resources"); Dep. Exh. 7 ("We lost in the budget defense big time and Giacomin is mounting an attack on QRA"); Dep. at 126:24-127:1 ("there's always budgetary battles"); Id . at 139:7-15 (needed more resources in QRA); Dep. Exh. 8 at p. 64 (Under-resourced, "not enough people"); Dep. at 156:3-14 ("I didn't have a function that didn't come in with anything different than this kind of lineup of under-resourced or underfunded or needs money."). Further, to the extent that any alleged argument issue exists, the Court can properly consider, account for, and/or weigh same in this bench trial. | | | | | | | | | | |
| 157 | 19 160 17 | Argumentative and Legal Opinion 157:19-158:2); Prejudicial and Relevance (160:15-17) | As to 157:19-158:2, this answer stems from counsel's argumentative question that called for a legal opinion (see above). It should be stricken. As to 160:15-17, counsel asks the witness about an action brought by the NY AG that concerning a pricing dispute: that has no relevance to Cabell/Huntington, and in fact, relates to a pricing issue. Counsel appears to recognize that this question has no relevance to this case, as counsel has not designated any follow-up questions relating to the details of this New York actio. | Same response as above relative to argumentative and legal opinion objections regarding 157:19-158:2. With respect to the relevance/prejudice objection to 160:15-17, this matter addresses Cardinal's national system, including the systemic diversion issues with same. This Court has already ruled that Defendants' conduct outside of Cabell/Huntington "is generally relevant to Defendants' conduct within the Track [Two] Counties." See ECF 1297, at 10. The information at issue is consistent with same. Moreover, Cardinal's notice, knowledge, understanding and/or state of mind regarding these matters (including its nationwide policies/procedures, diversion problems, etc.), apply to Cabell/Huntington. Further, to the extent that any unfair prejudice is found, the testimony should not be excluded, but rather admitted and weighted accordingly. See Schultz v. Butcher , 24 F.3d 626, 632 (4th. Cir. 1994) ("[I]n the context of a bench trial, evidence should not be excluded under 403 on the ground that it is unfairly prejudicial. Under the Federal Rules of Evidence, admissibility of evidence is favored unless the probative value of the evidence is so low as to warrant exclusion when prejudice is a factor."). | | | | | | | | | | |
| 161 | 2 161 2 | See above. | The witness's answer to the irrelvant and prejudicial question should be stricken - see above. | Same response as above. | | | | | | | | | | |