| | |
|---|---|
| WITNESS NAME | Hartle, Nathan (fact) |
| DEPOSITION DA | 8/1/2018 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | | Page/Line End | | Objections | Objection Notes | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections |
| 15 | 7 | 16 | 12 | | | n/a | 20 | 1 | 22 | 5 | Improper Completeness Designation | | 198 | 19 | 199 | 4 | Compound; argumentative; assumes facts; misstates prior testimony. | The questioning thoroughly included the prior facts regarding McKesson's threshold methodology (which contained multiple components), which were confirmed by the exhibit (*see* Dep. Exh. 56) as well as by the witness's testimony . *See* Dep. at 195:11-14, 196:9-198:13. The factual portion of the questioning correctly summarizes the facts outlined in the exhibit, and the alleged argument is merely questioning about a logical basis/reason for the methodology. The witness was given full opportunity to ansswer, did in fact answer, and indicated no difficulty or confusion regarding same. Further, any alleged issue with the questioning being compound, argumentative, assuming facts and/or misstating testimony, can be properly considered, accounted for and/or weighed in this bench trial. |
| 16 | 24 | 17 | 2 | Foundation; hearsay within hearsay | Hearsay on pages 20-22. | As for foundation, the witness had the necessary knowledge and experience (as McKesson's VP of Regulatory Affairs and Compliance) sufficient to testify about same. In fact, the document itself shows the witness's role as a high-ranking McKesson employee responsible for regulatory matters. *See* Dep. Exh. at pp. 4, 9. Further, McKesson stipulated that this exhibit could be introduced "without the use of a sponsoring witness at trial". *See* ECF No. 1166 at 1, and 4 (row 7). Additionally, foundation is an objection to form which was not made during the deposition relative to introduction/use of the exhibit, and is thus waived. Hearsay is not applicable pursuant to FRE 801(d)(2)(A), FRE 801(d)(2)(B), FRE 801(d)(2)(C), FRE 801(d)(2)(D), and/or 803(6). Moreover, the government report information (from the Centers for Disease Control and U.S. Department of Health and Human Services) presented in this McKesson PowerPoint on pp. 20-22 is not hearsay pursuant to FRE 803(8). Thus, there is no prohibition to this information pursuant to FRE 805. Further, this document is a McKesson Regulatory Affairs training presentation. Thus, even if FRE 803(8) did not apply, the information on pp. 20-22 is still admissible because FRE 801(c)(2) is not satisfied (since it is also for McKesson's notice, knowledge, understanding and/or state of mind regarding: opioid abuse, the opioid epidemic, opioid harms, and/or geography of same, and not solely introduced for the truth of the matter). | 24 | 14 | 24 | 19 | | | 199 | 6 | 199 | 6 | Compound; argumentative; assumes facts; misstates prior testimony. | Same as above. |
| 17 | 20 | 18 | 25 | | | n/a | 25 | 24 | 26 | 9 | Improper Completeness Designation | | 207 | 5 | 207 | 8 | 408; Hearsay; misstates the 2017 settlement which is clear on its face that McKesson's limited admission of liability did not relate to the issue in the question; assumes facts. | The Court has previously ruled on this matter, and the 2017 settlement agreement at issue has been admitted into evidence. *See* P-42554; 5/24/2021 Trial Tr. at 107:18-109:3. Hearsay is not applicable pursuant to FRE 801(d)((2)(A), FRE 801(d)(2)(B), and/or FRE 803(5). As shown by the admitted exhibit, the questioning accurately represents the applicable portions of the 2017 settlement agreement (that the conduct involving McKesson's Aurora distribution center was included, McKesson accepted responsibility for failing to report suspicious orders which should have been detected, and the agreement was for $150 million). *See* P-42554 at p. 2 (Para. 6), p. 3 (Paras. 2 & 3) , p. 8 (Para. i), The facts are not assumed, and the witness's testimony further confirms same. *See* Dep. at 207:23-208:2. Moreover, even if any alleged minor issue with the question existed, it could be properly considered, accounted for and/or weighed by the Court in this bench trial. |
| 19 | 1 | 19 | 20 | | | n/a | 36 | 20 | 36 | 22 | | Designated conditionally as it shows that Plaintiffs' designation of simialr testimony is based on inadmissible hearsay and improper lay opinion. To the extent Plaintiffs' improper designations are struck on this ground, McKesson will withdraw. | 207 | 10 | 207 | 17 | 408; Hearsay; misstates the 2017 settlement which is clear on its face that McKesson's limited admission of liability did not relate to the issue in the question; assumes facts. | Same as above. |
| 22 | 6 | 22 | 17 | | | n/a | 36 | 24 | 37 | 2 | | Designated conditionally as it shows that Plaintiffs' designation of simialr testimony is based on inadmissible hearsay and improper lay opinion. To the extent Plaintiffs' improper designations are struck on this ground, McKesson will withdraw. | 207 | 19 | 207 | 25 | 408; Hearsay; misstates the 2017 settlement which is clear on its face that McKesson's limited admission of liability did not relate to the issue in the question; assumes facts. | Same as above. |
| 22 | 19 | 22 | 24 | | | n/a | 55 | 11 | 55 | 14 | | | 208 | 2 | 208 | 2 | 408; Hearsay; misstates the 2017 settlement which is clear on its face that McKesson's limited admission of liability did not relate to the issue in the question; assumes facts. | Same as above. |
| 23 | 16 | 23 | 21 | | | n/a | 77 | 6 | 77 | 8 | | | 501 | 15 | 501 | 24 | Compound, vague, calls for a legal conclusion, calls for improper expert opinion | The questioning summarized prior facts regarding McKesson's mistakes, as confirmed by exhibits and testimony, and properly did so as a predicate for the topic at issue. *See e.g.* , P-23733 (2008 settlement), P-42554 (2017 settlement); 5/24/2021 Trial Tr. at 82:8-88:17, 107:18-115:24. *See also* , Dep. at 28:5-30:6, 51:16-54:11, 131:16-22, 207:13-208:2. The witness was provided a full opportunity to ansswer the question, did in fact answer, and indicated no difficulty or confusion regarding same. *See* Dep. at 502:1-4. Also, the objections to legal conclusion and expert are not supported. As McKesson's VP of Regulatory Affairs and Compliance, and prior to that as a Senior Director of Regulatory Affairs, Mr. Hartle always maintained responsibility for McKesson's retail national accounts for the entire country. *See* Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson", as well as to understand diversion and enhance McKesson's CSMP to address same. *See e.g.* , Dep. at 15:18-25, 16:2-12, 18:12-23, 23:10-15, 24:20-25:1, 493:24-495:3. His views on McKesson's conduct, prior problems with the CSMP, lack of compliance and the impacts of diversion are within his experience, knowledge, and responsibilities, and the testimony is not a legal conclusion but rather part of his job. The testimony is also allowed pursuant to FRE 701. Further, any alleged issue with the questioning being compound, vague or a legal conclusion/opinion, can be properly considered, accounted for and/or weighed in this bench trial. Plaintiffs submit that the understanding and/or perspectie of Mr. Hartle (McKesson's VP of Regulatory Affairs and Compliance) is valuable and reasonable for the Court to consider. |
| 24 | 6 | 24 | 13 | | | n/a | 136 | 10 | 136 | 23 | Answer at 136:11-13 is non-responsive to prior question | | 502 | 1 | 502 | 4 | Compound, vague, calls for a legal conclusion, calls for improper expert opinion | Same as above. |
| 24 | 20 | 25 | 21 | | | n/a | 136 | 25 | 137 | 7 | Answer at 136:25-137:2 is non-responsive to question asked | | 504 | 8 | 504 | 12 | Compound; argumentative; vague | Plaintiffs disagree that the question is compound, argumentative or vague. The witness was provided a full opportunity to ansswer the question, did in fact answer, and indicated no difficulty or confusion regarding same. Further, any alleged issue with the questioning being compound, argumentive or vague, can be properly considered, accounted for and/or weighed in this bench trial. |
| 26 | 15 | 26 | 18 | Vague; foundation | | The witness had the necessary foundation to answer as he was McKesson's VP of Regulatory Affairs and Compliance, and prior to that, as a Senior Director of Regulatory Affairs, he always maintained responsibility for McKesson's retail national accounts for the entire country. *See* 8/1/2018 Hartle dep. ("Dep.") at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. The question was not unfairly vague as evidenced by the witness's ability to fully answer. Further, while Plaintiffs submit that the question is not unfarily vague, any such issue can be properly considered and weighed in this bench trial. | 137 | 9 | 137 | 13 | Answer at 137:12-13 is non-responsive to question asked. | | 504 | 14 | 504 | 15 | Compound; argumentative; vague | Same as above. |
| 26 | 20 | 26 | 25 | Vague; foundation | | Same as above. | 138 | 18 | 139 | 4 | | | | | | | | |
| 27 | 2 | 27 | 2 | | | n/a | 145 | 7 | 145 | 9 | | | | | | | | |

| WITNESS NAME | Hartle, Nathan (fact) |
|---|---|
| DEPOSITION DA | 8/1/2018 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | | Page/Line End | | Objections | Objection Notes | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections |
| 34 | 5 | 34 | 7 | Hearsay within hearsay - document contains numerous hearsay statements copy/pasted from other organizations. Inclusion of the statements of others in a PowerPoint is not adoption/agreement with those statements, which are outside the purview of Mr. Hartle's expertise, and inclusion of statements by a single McKesson employee is not adoption by the company; geographic scope - presentation to Discount Drug Mart which does not operate in West Virginia; calls for expert testimony; foundation | | This document was authored and presented by the witness in his capacity as McKesson's Senior Director of Regulatory Affairs. *See* Dep. at 34:17-35:5; Dep. Exh. 42 at p. 1. Moreover, the witness repeatedly confirmed that the information in his PowerPoint was meant to be accurate and that he would not have included the information if he disagreed with it or if he thought it was inaccurate. *See e.g.* , Dep. at 35:15-21, 38:4-17. Accordingly, this PowerPoint authored by the witness (while an agent/employee of McKesson), as well as his testimony, is not hearsay pursuant to FRE 801(d)(2)(B), FRE 801(d)(2)(C), FRE 801(d)(2)(D), FRE 803(3), FRE 803(5) and/or FRE 803(6). Further, the statements in this exhibit are made by the witness himself (*see* Dep. Exh. 42 at pp. 1-2, 13, 18-19, 23-41) or are directly adopted/used from specifically cited government publications/reports (*see* Dep. Exh. 42 at pp. 3-12, 14-17) which are exceptions to hearsay (FRE 803(8)). As such, any hearsay within hearsay relative to the exhibit and/or the witness's testimony, is cured by the aforementioned FREs and FRE 805. Additionally, hearsay is not applicable because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind regarding: applicable distribution regulations, diversion, opioid addiction, the opioid epidemic, opioid harms, etc.). The geographic scope objection is not supported. This Court has already ruled that Defendants' conduct outside of Cabell/Huntington "is generally relevant to Defendants' conduct within the Track [Two] Counties." *See* ECF 1297, at 10. The information at issue is consistent with same. Moreover, McKesson's notice, knowledge, understanding and/or state of mind regarding these matters (including its nationwide policies/procedures, the national regulations, DEA's interpretation and/or enforcement, diversion problems, opioid harms, etc.), apply to Cabell/Huntington. In fact, various slides provide national and/or West Virginia data/information. *See e.g.* , Dep. Exh. 42 at pp. 3-8, 14-17. The expert testimony and foundation objections are inapplicable as the witness had the background, experience and responsibility (as McKesson's Sr. Director of Regulatory Affairs) to present and/or testify on these matters, which is what he did with this PowerPoint he authored and his testimony. In fact, the witness authored the PowerPoint with the information he keeps "current" on (*see* Dep. at 38:4-7), and he has authored/given similar presentations for years. *See e.g.* , Dep. Exhs. 41 and 43. Moreover, the witness's testimony is admissible pursuant to FRE 701. Also, for the foundation objection, the witness authored and presented the PowerPoint. Further, McKesson stipulated that this exhibit could be introduced "without the use of a sponsoring witness at trial". *See* ECF No. 1166 at 1, and 4 (row 28). Additionally, foundation is an objection to form which was not made during the deposition relative to introduction/use of the exhibit, and is thus waived. | 145 | 11 | 145 | 17 | | | | | | | | |
| 34 | 11 | 36 | 19 | Hearsay within hearsay; geographic scope; calls for expert testimony; foundation | | Same as above. | 145 | 19 | 145 | 20 | | | | | | | | |
| 37 | 4 | 37 | 9 | Foundation; calls for expert testimony; based on inadmissible hearsay, not personal knowledge (see 36:20-37:2). | | Same as above. | 199 | 11 | 199 | 15 | | | | | | | | |
| 37 | 11 | 37 | 12 | Foundation; calls for expert testimony | | Same as above. | 199 | 23 | 200 | 8 | | | | | | | | |
| 37 | 14 | 38 | 7 | Hearsay within hearsay; geographic scope; calls for expert testimony; foundation | | Same as above. | 204 | 18 | 205 | 2 | Incomplete Designation; No asnwer designated to question at 204:25-205:2 | | | | | | | |
| 38 | 14 | 38 | 20 | Hearsay within hearsay; geographic scope; calls for expert testimony; foundation | | Same as above. | 206 | 24 | 207 | 4 | Improper Narrative that is not in response to any question by counsel | | | | | | | |
| 38 | 24 | 39 | 2 | Hearsay within hearsay - document contains numerous hearsay statements copy/pasted from other organizations. Inclusion of the statements of others in a PowerPoint is not adoption/agreement with those statements, which are outside the purview of Mr. Hartle's expertise, and inclusion of statements by a single McKesson employee is not adoption by the company; geographic scope; calls for expert testimony; foundation | | This document was authored and presented by the witness in his capacity as McKesson's Senior Director of Regulatory Affairs. *See* Dep. at 39:9-40:6; Dep. Exh. 43 at p. 1. Moreover, the witness repeatedly acknowledged the questioning about the information in his PowerPoint. *See e.g* ., Dep. at 40:24-41:8. Accordingly, this PowerPoint authored by the witness (while an agent/employee of McKesson) is not hearsay pursuant to FRE 801(d)(2)(B), FRE 801(d)(2)(C), FRE 801(d)(2)(D), FRE 803(3), FRE 803(5) and/or FRE 803(6). Further, almost all of the statements in this exhibit are made by the witness himself (*see* Dep. Exh. 43 at pp. 1 and 3-11), and the sole slide which contains any other information was adopted/used from a specifically cited government publication/report (*see* Dep. Exh. 43 at p. 2) which is also an exception to hearsay (FRE 803(8)), and any hearsay within hearsay is cured by the aforementioned FREs and FRE 805. Additionally, hearsay is not applicable because FRE 801(c)(2) is not satisfied (as the exhibit also proves notice, knowledge, understanding, and/or acceptance of: applicable distribution regulations, diversion, opioid addiction, the opioid epidemic, opioid harms, etc.). The geographic scope objection is not applicable. This Court has already ruled that Defendants' conduct outside of Cabell/Huntington "is generally relevant to Defendants' conduct within the Track [Two] Counties." *See* ECF 1297, at 10. The information at issue is consistent with same, including McKesson's national policies/procedures as well as the opioid epidemic. Moreover, McKesson's notice, knowledge, understanding and/or state of mind regarding these matters were national in scope, and apply to Cabell/Huntington. The expert testimony objection is inapplicable as the witness had the background, experience and responsibility (as McKesson's Sr. Director of Regulatory Affairs) to present and/or testify on these matters, which is what he did with this PowerPoint he authored, as well as with his testimony. In fact, the witness has authored/given similar presentations for years and was requested to do so by McKesson itself. *See e.g.* , Dep. Exhs. 41 and 42. Moreover, with the witness's testimony is also admissible pursuant to FRE 701. Relative to the foundation objection, the witness authored and presented the PowerPoint. Further, McKesson stipulated that this exhibit could be introduced "without the use of a sponsoring witness at trial". *See* ECF No. 1166 at 1, and 11 (row 17). Additionally, foundation is an objection to form which was not made during the deposition relative to introduction/use of the exhibit, and is thus waived. | 224 | 10 | 225 | 1 | | | | | | | | |
| 39 | 9 | 39 | 17 | | | n/a | 227 | 1 | 227 | 4 | | | | | | | | |
| 40 | 8 | 41 | 11 | Hearsay within hearsay; geographic scope; calls for expert testimony; foundation | | Same response as above relative to 38:24-39:2. | 227 | 6 | 227 | 15 | | | | | | | | |

| WITNESS NAME | Hartle, Nathan (fact) |
|---|---|
| DEPOSITION DA | 8/1/2018 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | | Page/Line End | | Objections | Objection Notes | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections |
| 41 | 15 | 42 | 25 | Hearsay within hearsay; geographic scope; calls for expert testimony; foundation | | This McKesson PowerPoint and the witness's testimony are not hearsay pursuant to FRE 801(d)(2)(B), FRE 801(d)(2)(C), FRE 801(d)(2)(D), and/or FRE 803(6). Further, slides with other information were adopted/used from a specifically cited government publication/report (*see e.g.* , Dep. Exh. 44 at p. 2) which is also an exception to hearsay (FRE 803(8)), and the slides and any related testimony alleged to be hearsay within hearsay are cured by the aforementioned FREs and FRE 805. Additionally, hearsay is not applicable because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind regarding: applicable distribution regulations, diversion, migration, opioid addiction, transition from Rx opioids to heroin, the opioid epidemic, opioid harms, etc.). The geographic scope objection is not applicable. This Court has already ruled that Defendants' conduct outside of Cabell/Huntington "is generally relevant to Defendants' conduct within the Track [Two] Counties." *See* ECF 1297, at 10. The information at issue is consistent with same. Moreover, McKesson's notice, knowledge, understanding and/or state of mind regarding these nationwide matters (including its policies/procedures, applicable regulations, DEA's interpretation and/or enforcement, diversion, transition from Rx opioids to heroin, opioid harms, etc.), apply to Cabell/Huntington. The expert testimony and foundation objections are inapplicable as the witness had the background, experience and responsibility (as McKesson's Sr. Director of Regulatory Affairs) sufficient to testify on these matters. In fact, the witness has authored/given similar presentations for years and has done so at the specific request of McKesson itself. *See e.g.* , Dep. Exhs. 41, 42 and 43. Moreover, the witness's testimony is also admissible pursuant to FRE 701. Also, relative to foundation, McKesson stipulated that this exhibit could be introduced "without the use of a sponsoring witness at trial". *See* ECF No. 1166 at 1, and 4 (row 21). Additionally, foundation is an objection to form which was not made during the deposition relative to introduction/use of the exhibit, and is thus waived. | 438 | 10 | 438 | 23 | Incomplete and Improper Designation; No asnwer designated or even offered by the witness | McKesson maintains its geographic scope objections to questions about Kermit, WV, but conditionally designates this testimony as it establishes that the questions asked are based on hearsay allegations contained in a letter to Congress that the witness did not receive. McKesson will withdraw these designations if Plaintiffs' withdraw the subsequent hearsay-based questions predicated on this letter. | | | | | | |
| 43 | 2 | 43 | 3 | Hearsay within hearsay; geographic scope; calls for expert testimony; foundation | | Same as above. | 438 | 25 | 439 | 5 | Improper Designation at 439:2-5. No question designated. | McKesson maintains its geographic scope objections to questions about Kermit, WV, but conditionally designates this testimony as it establishes that the questions asked are based on hearsay allegations contained in a letter to Congress that the witness did not receive. McKesson will withdraw these designations if Plaintiffs' withdraw the subsequent hearsay-based questions predicated on this letter. | | | | | | |
| 54 | 18 | 54 | 21 | Calls for speculation; calls for legal conclusion | | The question does not call for speculation or a legal conclusion, but rather the witness's understanding of the applicable regulatory requirement to report suspicious orders. As McKesson's VP of Regulatory Affairs and Compliance, and prior to that, as a Senior Director of Regulatory Affairs, Mr. Hartle always maintained responsibility for McKesson's retail national accounts for the entire country. *See* Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson". *See* Dep. at 23:10-15. Thus, the witness's understanding of the regulation is neither speculation nor a legal conclusion. Moreover, the witness's answer (that the requirement to report suspicious orders is "one of the things intended to prevent diversion") confirms that he is not speculating. *See* Dep. at 54:23-24. | 442 | 15 | 442 | 25 | | McKesson maintains its geographic scope objections to questions about Judy's Drugs, but conditionally designates this testimony as it establishes that the questions designated by plaintiffs are based off an animated video created by Plaintiffs for use in this deposition, and constitute made-for-litigation hearsay statements, not evidence. McKesson submits a still image from this animated video created by Plaintiffs as **Attachment A** for the Court's context. | | | | | | |
| 54 | 23 | 54 | 24 | Calls for speculation; calls for legal conclusion | | Same as above. | 493 | 17 | 493 | 23 | Improper Narrative; No question asked of the witness | The questioning attorney indicated that the witness should "go ahead," prompting the witness's response. | | | | | | |
| 55 | 2 | 55 | 6 | Calls for speculation; calls for legal conclusion; Assume facts. | | The question does not call for speculation or a legal conclusion, and it does not assume facts. Rather the question seeks the witness's understanding of the applicable regulatory requirement to report suspicious orders in the context of the witness's prior answer (that the requirement to report suspicious orders is "one of the things intended to prevent diversion"). *See* Dep. at 54:23-24. As McKesson's VP of Regulatory Affairs and Compliance, and prior to that, as a Senior Director of Regulatory Affairs, Mr. Hartle always maintained responsibility for McKesson's retail national accounts for the entire country. *See* Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson". *See* Dep. at 23:10-15. This includes preventing diversion and understanding the consequences of filling suspicious orders. Thus, the witness's understanding of the regulation is neither speculation nor a legal conclusion, and his knowledge about the consequences of filling suspicious orders does not assume facts. | 497 | 9 | 499 | 4 | Incomplete question at 497:9-11 that is vague and lacks temporal parameters, which leads to narrative response at 497:12-498:1 that is also vague and lacks proper temporal parameters. Improper narrative response at 498:7-499:4 that is also vague and lacks proper temporal parameters. | The question is complete. | | | | | | |
| 55 | 8 | 55 | 9 | Calls for speculation; calls for legal conclusion; Assume facts. | | Same as above. | 499 | 5 | 500 | 12 | Improper narrative response that is also vague and lacks proper temporal parameters. | The witness provided a response to the question asked. | | | | | | |

| WITNESS NAME | Hartle, Nathan (fact) |
|---|---|
| DEPOSITION DA | 8/1/2018 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | | Page/Line End | | Objections | Objection Notes | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections |
| 59 | 22 | 60 | 2 | Foundation; hearsay within hearsay; geographic scope. Exhibit ruled inadmissible by the Court. *See* Trial Tr., May 24, 2021, at 76:22-77:3, 77:15-78:3. Questioning on exclude exhibit should be similarly inadmissible. | | The foundation objection is not supported because the witness had the background, experience and responsibility to testify on these matters. As McKesson's VP of Regulatory Affairs and Compliance, and prior to that, as a Senior Director of Regulatory Affairs, Mr. Hartle always maintained responsibility for McKesson's retail national accounts for the entire country. *See* Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson". *See* Dep. at 23:10-15. Also, relative to foundation, McKesson stipulated that this exhibit could be introduced "without the use of a sponsoring witness at trial". *See* ECF No. 1166 at 1, and 4 (row 11). Additionally, regardless of the exhibit, the questioning about the witness's knowledge and understanding of the substantive information (e.g., opioid abuse, opioid harms, etc.) is admissible for these and the below reasons. The prior ruling was made in connection with testimony of M. Oriente, and in actuality, certain pages of the exhibit were admitted into evidence by the Court. *See* Trial Tr., May 24, 2021, at 77:6-79:5. Also, the presentation was given to the McKesson Regulatory Affairs leadership team (to instruct them) and other employees from across the country, and the author confirmed that the information in the PowerPoint was meant to be accurate. *See* Boggs 1/17/2019 dep. at 129:24-131:9. Accordingly, this PowerPoint is not hearsay pursuant to FRE 801(d)(2)(B), FRE 801(d)(2)(C), FRE 801(d)(2)(D), and/or FRE 803(6). Even the statements in this exhibit that are not made by McKesson are from government publications/reports which are exceptions to hearsay (FRE 803(8)), and any hearsay within hearsay would be cured by the aforementioned FREs and FRE 805. Additionally, hearsay is not applicable because FRE 801(c)(2) is not satisfied (as the exhibit also proves notice, knowledgeand/ or state of mind regarding: applicable distribution regulations, DEA's interpretation or enforcement of same, opioid addiction, the opioid epidemic, harms, etc.). The geographic scope objection is not applicable. This Court has already ruled that Defendants' conduct outside of Cabell/Huntington "is generally relevant to Defendants' conduct within the Track [Two] Counties." *See* ECF 1297, at 10. The information at issue is consistent with same, and McKesson's notice, knowledge, understanding and/or state of mind regarding these matters (including its nationwide policies/procedures, the national regulations, DEA's interpretation and/or enforcement, diversion problems, opioid harms, etc.), apply to Cabell/Huntington. | | | | | | | | | | | | |
| 60 | 4 | 60 | 5 | Foundation; hearsay within hearsay; geographic scope. Exhibit ruled inadmissible by the Court. *See* Trial Tr., May 24, 2021, at 76:22-77:3, 77:15-78:3. Questioning on exclude exhibit should be similarly inadmissible. | | Same as above. | | | | | | | | | | | | |
| 66 | 5 | 66 | 15 | Foundation; ; calls for speculation | | The witness has the proper foundation to answer and the question does not call for speculation. As McKesson's VP of Regulatory Affairs and Compliance, and prior to that, as a Senior Director of Regulatory Affairs, Mr. Hartle always maintained responsibility for McKesson's retail national accounts for the entire country. *See* Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson". *See* Dep. at 23:10-15. Thus, the witness has the background, knowledge, understanding and/or role sufficient to answer the question. Moreover, the witness's answer confirms the foundation and that he is not speculating. *See* Dep. at 66:18-67:1. | | | | | | | | | | | | |
| 66 | 18 | 66 | 23 | Foundation; calls for speculation | | Same as above. | | | | | | | | | | | | |
| 66 | 25 | 67 | 1 | Foundation; calls for speculation | | Same as above. | | | | | | | | | | | | |
| 71 | 18 | 71 | 23 | Foundation; hearsay within hearsay; geographic scope. Exhibit ruled inadmissible by the Court. *See* Trial Tr., May 24, 2021, at 76:22-77:3, 77:15-78:3. Questioning on exclude exhibit should be similarly inadmissible. | | The foundation objection is not supported because the witness had the background, experience and responsibility sufficient to testify on these matters. As McKesson's VP of Regulatory Affairs and Compliance, and prior to that, as a Senior Director of Regulatory Affairs, Mr. Hartle always maintained responsibility for McKesson's retail national accounts for the entire country. *See* Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson". *See* Dep. at 23:10-15. Also, relative to foundation, McKesson stipulated that this exhibit could be introduced "without the use of a sponsoring witness at trial". *See* ECF No. 1166 at 1, and 4 (row 11). Additionally, regardless of the exhibit, the questioning about the witness's knowledge and understanding of the substantive information (e.g., opioid abuse, opioid harms, etc.) is admissible for these and the below reasons. The prior ruling was made in connection with testimony of M. Oriente, and in actuality, certain pages of the exhibit were admitted into evidence by the Court. *See* Trial Tr., May 24, 2021, at 77:6-79:5. Also, the presentation was given to the McKesson Regulatory Affairs leadership team (to instruct them) and other employees from across the country, and the author confirmed that the information in the PowerPoint was meant to be accurate. *See* Boggs 1/17/2019 dep. at 129:24-131:9. Accordingly, this PowerPoint is not hearsay pursuant to FRE 801(d)(2)(B), FRE 801(d)(2)(C), FRE 801(d)(2)(D), and/or FRE 803(6). Even the statements in this exhibit not made by McKesson are from government publications/reports which are exceptions to hearsay (FRE 803(8)), and any hearsay within hearsay would be cured by the aforementioned FREs and FRE 805. Additionally, hearsay is not applicable because FRE 801(c)(2) is not satisfied (as the exhibit also proves notice, knowledge and/or state of mind regarding: applicable distribution regulations, DEA's interpretation or enforcement of distribution regulations, opioid addiction, the opioid epidemic, opioid harms, etc.). The geographic scope objection is not applicable. This Court has already ruled that Defendants' conduct outside of Cabell/Huntington "is generally relevant to Defendants' conduct within the Track [Two] Counties." *See* ECF 1297, at 10. The information at issue provides background regarding same, including McKesson's national policies/procedures as well as the opioid epidemic and/or harms. Moreover, McKesson's notice, knowledge, understanding and/or state of mind regarding these matters were national in scope, and apply to Cabell/Huntington. | | | | | | | | | | | | |
| 72 | 23 | 73 | 1 | Foundation; hearsay within hearsay; geographic scope. Exhibit ruled inadmissible by the Court. *See* Trial Tr., May 24, 2021, at 76:22-77:3, 77:15-78:3. Questioning on exclude exhibit should be similarly inadmissible. | | Same as above. | | | | | | | | | | | | |
| 73 | 3 | 73 | 4 | Foundation; hearsay within hearsay; geographic scope. Exhibit ruled inadmissible by the Court. *See* Trial Tr., May 24, 2021, at 76:22-77:3, 77:15-78:3. Questioning on exclude exhibit should be similarly inadmissible. | | Same as above. | | | | | | | | | | | | |
| 73 | 23 | 74 | 5 | Foundation; hearsay within hearsay; geographic scope. Exhibit ruled inadmissible by the Court. *See* Trial Tr., May 24, 2021, at 76:22-77:3, 77:15-78:3. Questioning on exclude exhibit should be similarly inadmissible. | | Same as above. | | | | | | | | | | | | |

| WITNESS NAME | Hartle, Nathan (fact) |
|---|---|
| DEPOSITION DA | 8/1/2018 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Page/Line Begin* | | *Page/Line End* | | *Objections* | *Objection Notes* | *Replies to Objections* | *Page/Line Begin* | | *Page/Line End* | | *Objections* | *Replies to Objections* | *Page/Line Begin* | | *Page/Line End* | | *Objections* | *Replies to Objections* |
| 74 | 7 | 74 | 8 | Foundation; hearsay within hearsay; geographic scope. Exhibit ruled inadmissible by the Court. *See* Trial Tr., May 24, 2021, at 76:22-77:3, 77:15-78:3. Questioning on exclude exhibit should be similarly inadmissible. | | Same as above. | | | | | | | | | | | | |
| 74 | 10 | 74 | 18 | Foundation; McKesson does not object to use of page 37 of the PPT with the witness, which is one of only two pages admitted by the Court. See Trial Tr., May 24, 2021, at 76:22-77:3, 77:15-78:3. | | The foundation objection is not supported because the witness had the background, experience and responsibility/role sufficient to testify on these matters. As McKesson's VP of Regulatory Affairs and Compliance, and prior to that, as a Senior Director of Regulatory Affairs, Mr. Hartle always maintained responsibility for McKesson's retail national accounts for the entire country. *See* Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson". *See* Dep. at 23:10-15. Further, the foundation is separately provided by this portion of the exhibit already admitted into evidence as well as by other trial testimony. *See e.g.* , Trial Tr., May 24, 2021, at 79:12-23. | | | | | | | | | | | | |
| 75 | 19 | 76 | 7 | Foundation; calls for speculation | | The witness has the proper foundation to answer and the question does not call for speculation. As McKesson's VP of Regulatory Affairs and Compliance, and prior to that, as a Senior Director of Regulatory Affairs, Mr. Hartle always maintained responsibility for McKesson's retail national accounts for the entire country. *See* Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson". *See* Dep. at 23:10-15. Thus, the witness has the background, knowledge, understanding and role sufficient to answer the question. Moreover, the witness's testimony confirms the foundation and that he is not speculating. *See* Dep. at 75:1-3 and 76:6-7. Further, the foundation is separately provided by this portion of the exhibit already admitted into evidence as well as by other trial testimony. *See e.g.* , Trial Tr., May 24, 2021, at 79:12-23. | | | | | | | | | | | | |
| 76 | 22 | 77 | 2 | Foundation; vague | | Same response as above relative to the foundation objection. The foundation is also separately provided by the witness's prior testimony. *See* Dep. at 54:18-55:9. Further, the question is not vague. It was asked such that the witness was able to and did answer. Moreover, to the extent that any vagueness was present, the Court can properly consider, weigh, and/or account for same in this bench trial. | | | | | | | | | | | | |
| 77 | 4 | 77 | 4 | Foundation; vague | | Same as above. | | | | | | | | | | | | |
| 82 | 9 | 82 | 20 | Foundation; vague. McKesson does not object to use of page 37 of the PPT with the witness, which is one of only two pages admitted by the Court. See Trial Tr., May 24, 2021, at 76:22-77:3, 77:15-78:3. | | The objections to foundation and vagueness are objections to form which were not made during the deposition, and are thus waived. Also, lack of foundation is inapplicable as the witness had the background, experience and responsibility/role sufficient to testify on these matters. As McKesson's VP of Regulatory Affairs and Compliance, and prior to that, as a Senior Director of Regulatory Affairs, Mr. Hartle always maintained responsibility for McKesson's retail national accounts for the entire country. *See* Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson". *See* Dep. at 23:10-15. Further, the foundation is separately provided by this portion of the exhibit already admitted into evidence as well as by other trial testimony. *See e.g* ., Trial Tr., May 24, 2021, at 79:12-23; Boggs 1/17/2019 dep. at 130:21-131:13, 134:22-24. Further, the question is not vague. It was asked such that the witness was able to and did answer. Moreover, to the extent that any vagueness was applicable, the Court can properly consider, weigh, and/or account for same in this bench trial. | | | | | | | | | | | | |
| 83 | 17 | 84 | 7 | Foundation; calls for speculation | | The objection to foundation is an objection to form which was not made during the deposition relative to several questions in this designation, and is thus waived. Also, lack of foundation and speculation are not supported because the witness had the background, experience and responsibility/role sufficient to testify on these matters. As McKesson's VP of Regulatory Affairs and Compliance, and prior to that, as a Senior Director of Regulatory Affairs, Mr. Hartle always maintained responsibility for McKesson's retail national accounts for the entire country. *See* Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson". *See* Dep. at 23:10-15. Further, the foundation is separately provided by this portion of the exhibit already admitted into evidence as well as by other trial testimony. *See e.g* ., Trial Tr., May 24, 2021, at 79:12-23; Boggs 1/17/2019 dep. at 130:21-131:13, 134:22-24. Also, the witness's ability to answer as well as the substance of his answers (including that "[i]t's fairly common sense") confirm that speculation is not applicable. *See* Dep. at 85:4. | | | | | | | | | | | | |
| 84 | 9 | 84 | 9 | Foundation; calls for speculation | | Same as above. | | | | | | | | | | | | |
| 84 | 11 | 84 | 14 | Foundation; calls for speculation | | Same as above. | | | | | | | | | | | | |
| 84 | 24 | 85 | 10 | Foundation; calls for legal conclusion | | The proper foundation has been established as the witness had the background, experience and/or role sufficient to testify on these matters (as detailed further as follows). The foundation is separately provided by this portion of the exhibit already admitted into evidence as well as by other trial testimony. See e.g., Trial Tr., May 24, 2021, at 79:12-23; Boggs 1/17/2019 dep. at 130:21-131:13, 134:22-24. The question does not call for a legal conclusion, but rather the witness's understanding of the applicable regulatory requirements and the consequence of non-compliance. As McKesson's VP of Regulatory Affairs and Compliance, and prior to that, as a Senior Director of Regulatory Affairs, Mr. Hartle always maintained responsibility for McKesson's retail national accounts for the entire country. See Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson". See Dep. at 23:10-15. Thus, the witness's knowledge, understanding and/or mind-set regarding the regulation and the consequence of non-compliance is factual and not a legal conclusion. | | | | | | | | | | | | |
| 85 | 12 | 85 | 14 | Foundation; calls for legal conclusion | | Same as above. | | | | | | | | | | | | |
| 85 | 16 | 85 | 19 | Foundation; calls for legal conclusion | | Same as above. | | | | | | | | | | | | |
| 85 | 21 | 85 | 22 | Foundation; calls for legal conclusion | | Same as above. | | | | | | | | | | | | |
| 122 | 15 | 123 | 5 | | | n/a | | | | | | | | | | | | |
| 123 | 7 | 123 | 7 | | | n/a | | | | | | | | | | | | |
| 123 | 9 | 123 | 17 | | | n/a | | | | | | | | | | | | |
| 131 | 8 | 131 | 15 | | | n/a | | | | | | | | | | | | |
| 133 | 8 | 134 | 6 | | | n/a | | | | | | | | | | | | |

| WITNESS NAME | Hartle, Nathan (fact) |
|---|---|
| DEPOSITION DA | 8/1/2018 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | | Page/Line End | | Objections | Objection Notes | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections |
| 134 | 8 | 134 | 18 | compound; assumes facts not in evidence; lacks foundation as it relates to a 2013 manual when the witness did not join McKesson until late 2014. | | The compound objection is not supported. The question merely illustrated examples for the benefit of clarity. Moreover, the witness was allowed the full opportunity to answer, did clearly answer, and indicated no problem with answering. Also, while Plaintiffs submit that the questioning/testimony is appropriate, any potential compound issue can be properly considered/accounted for and weighted accordingly in this bench trial. No facts are assumed in the question. Rather, the question sought confirmation for the basis of why McKesson no longer shares threshold levels with its customers (as previously testified by the witness). *See* Dep. at 134:24-25. Moreover, the witness's answer affirmatively confirmed the basis for the question. *Id*. at 134: 17-18. The foundation objection is not supported b/c the witness had the background, experience and responsibility/role sufficient to testify on these matters. As McKesson's VP of Regulatory Affairs and Compliance, and prior to that, as a Senior Director of Regulatory Affairs, Mr. Hartle always maintained responsibility for McKesson's retail national accounts for the entire country. *See* Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson". *See* Dep. at 23:10-15. Moreover, this 2013 CSMP policy/operation manual was the very one in place at the time Mr. Hartle started as Sr. Director of Regulatory Affairs in May of 2014, and he was knowledgeable about and in fact was involved with enhancing it. *See e.g.*, Dep. at 493:24-495:3. In fact, McKesson designated Mr. Hartle as their 30(b)(6) representative to testify about the history of its CSMP. *See* 7/31/2018 McKesson/Hartle Dep. Ex. 1 at 6 (topic (a) "Your past/present suspicious orders monitoring system, SOMS program, policies and procedures"). The foundation is also separately provided by the exhibit itself, which sets-forth the information at issue. *See* Dep. Exh. 51 at pp. 7-8. Additionally, relative to foundation, McKesson stipulated that this exhibit could be introduced "without the use of a sponsoring witness at trial" and it has otherwise already been admitted during this trial. *See* ECF No. 1166 at 1, and 4 (row 1). | | | | | | | | | | | | |
| 134 | 20 | 134 | 22 | compound; assumes facts not in evidence; lacks foundation as it relates to a 2013 manual when the witness did not join McKesson until late 2014. | | Same as above. | | | | | | | | | | | | |
| 134 | 24 | 135 | 4 | Compound; assumes facts not in evidence; lacks foundation as it relates to a 2013 manual when the witness did not join McKesson until late 2014. | | Same as above. | | | | | | | | | | | | |
| 135 | 6 | 135 | 19 | Calls for speculation; questions relate to a 2013 policy but witness did not join McKesson until late 2014. | | The speculation objection is not supported because the witness had the background, experience and responsibility/role sufficient to testify on these matters. As McKesson's VP of Regulatory Affairs and Compliance, and prior to that, as a Senior Director of Regulatory Affairs, Mr. Hartle always maintained responsibility for McKesson's retail national accounts for the entire country. *See* Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson". *See* Dep. at 23:10-15. Moreover, this 2013 CSMP policy/operation manual was the very one in place at the time Mr. Hartle started as Sr. Director of Regulatory Affairs in May of 2014, and he was knowledgeable about and in fact was involved with enhancing it. *See e.g.*, Dep. at 493:24-495:3. In fact, McKesson designated Mr. Hartle as their 30(b)(6) representative to testify about the history of its CSMP. *See* 7/31/2018 McKesson/Hartle Dep. Ex. 1 at 6 (topic (a) "Your past/present suspicious orders monitoring system, SOMS program, policies and procedures"). Speculation is also separately inapplicable due to the exhibit itself, which sets-forth the information at issue. *See* Dep. Exh. 51 at pp. 7-8. Further, the witness's was able to clearly and fully answer, and in fact elaborated and provided reasoning for his answers. *See* Dep. at 135:24-25, 136:11-14. | | | | | | | | | | | | |
| 135 | 22 | 136 | 6 | Calls for speculation; questions relate to a 2013 policy but witness did not join McKesson until late 2014. | | Same as above. | | | | | | | | | | | | |
| 136 | 8 | 136 | 8 | Calls for speculation. | | Same as above. | | | | | | | | | | | | |
| 137 | 14 | 137 | 21 | Calls for speculation; foundation; relevance | | The speculation and foundatioin objections are not supported because the witness had the background, experience and responsibility/role sufficient to testify on these matters. As McKesson's VP of Regulatory Affairs and Compliance, and prior to that, as a Senior Director of Regulatory Affairs, Mr. Hartle always maintained responsibility for McKesson's retail national accounts for the entire country. See Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson". *See* Dep. at 23:10-15. Moreover, this 2013 CSMP policy/operation manual was the very one in place at the time Mr. Hartle started as Sr. Director of Regulatory Affairs in May of 2014, and he was knowledgeable about and in fact was involved with enhancing it. *See e.g* ., Dep. at 493:24-495:3. In fact, McKesson designated Mr. Hartle as their 30(b)(6) representative to testify about the history of its CSMP. See 7/31/2018 McKesson/Hartle Dep. Ex. 1 at 6 (topic (a) "Your past/present suspicious orders monitoring system, SOMS program, policies and procedures"). Speculation and foundation are also separately inapplicable due to the exhibit itself, which sets-forth the information at issue. *See* Dep. Exh. 51 at pp. 7-8. Further, the witness's was able to clearly and fully answer, and in fact elaborated and provided reasoning for his answers. *See e.g.*, Dep. at 137:9-13, 138:24-139:4. Additionally, relative to foundation, McKesson stipulated that this exhibit could be introduced "without the use of a sponsoring witness at trial" and has already been admitted during this trial. *See* ECF No. 1166 at 1, and 4 (row 1). As for relevance, this testimony shows the importance of not allowing salespeople or DC Managers (who had the financial incentive to increase/continue sales to customers) to be involved with the regulatory decision-making process over controlled substances, and how McKesson recognized the problems/deficiencies with its policies allowing for same. *See* Dep. Exh. 51 at p. 8. As testified by the witness, McKesson eventually "restricted and blocked incentives around controlled substances". *See* Dep. at 138:24-139:4. | | | | | | | | | | | | |
| 137 | 23 | 138 | 2 | Calls for speculation; foundation; relevance | | Same as above. | | | | | | | | | | | | |
| 138 | 5 | 138 | 14 | Calls for speculation; foundation; relevance | | Same as above. | | | | | | | | | | | | |
| 138 | 16 | 138 | 16 | Calls for speculation; foundation; relevance | | Same as above. | | | | | | | | | | | | |
| 139 | 10 | 139 | 15 | Calls for speculation; foundation; relevance | | Same as above. | | | | | | | | | | | | |
| 139 | 17 | 139 | 18 | Calls for speculation; foundation; relevance | | Same as above. | | | | | | | | | | | | |
| 139 | 20 | 140 | 22 | Calls for speculation; foundation; relevance | | Same as above. | | | | | | | | | | | | |
| 140 | 25 | 141 | 1 | Foundation; relevance | | Same as above. | | | | | | | | | | | | |
| 144 | 25 | 145 | 1 | | | n/a | | | | | | | | | | | | |
| 145 | 3 | 145 | 5 | | | n/a | | | | | | | | | | | | |
| 146 | 22 | 148 | 11 | | | n/a | | | | | | | | | | | | |

| WITNESS NAME | Hartle, Nathan (fact) |
|---|---|
| DEPOSITION DA | 8/1/2018 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | | Page/Line End | | Objections | Objection Notes | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections |
| 175 | 2 | 175 | 5 | foundation | | The foundation objection is not supported b/c the witness had the background, experience and responsibility to testify on these matters. As McKesson's VP of Regulatory Affairs and Compliance, and prior to that, as a Senior Director of Regulatory Affairs, Mr. Hartle always maintained responsibility for McKesson's retail national accounts for the entire country. See Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson". *See* Dep. at 23:10-15. Additionally, the witness's testimony confirms his knowledge regarding the questioning at issue. Further, the foundation is separately provided by the settlement at issue already admitted into evidence as well as by other trial testimony. *See e.g.* , Exh. P-23733; Trial Tr., May 24, 2021, at 82:8-88:10. | | | | | | | | | | | | |
| 175 | 7 | 175 | 8 | foundation | | Same as above. | | | | | | | | | | | | |
| 175 | 10 | 175 | 13 | foundation | | Same as above. | | | | | | | | | | | | |
| 175 | 16 | 175 | 17 | | | n/a | | | | | | | | | | | | |
| 175 | 21 | 176 | 24 | Document was sent to outside counsel in context of negotiations regarding an investigation and potential settlement, such that use would violate 408; Hearsay; geographic scope; foundation; calls for legal conclusion | | FRE 408 is not supported, as the matter in question involved a separate litigation. This is also plain from the language of the rule, which repeatedly references "prov[ing] or disprov[ing] the validity or amount of a disputed claim" by offering evidence of conduct that occurred while attempting to resolve "the claim." *See* FRE 408(a)(1) and (2). Further, even if FRE 408 applied, the document is admissible for "another purpose," such as to show McKesson's knowledge, notice and/or understanding of: the applicable distribution regulations, deficiencies with its national policies/procedures, the DEA's/DOJ's enforcement of applicable regulations, etc.. Fed. R. Evid. 408(b) and Committee Notes on 2006 amendment. *See also, See Zurich Am. Ins. Co. v. Watts Indus., Inc.* , 417 F.3d 682, 689-690 (7th Cir.2005) (the law allows for the permissible use of settlement communications as evidence when "the settlement communication at issue arise out of a dispute that is distinct from the one for which the evidence is being offered."). Moreover, the MDL Court determined that the document is admissible (*see* MDL dkt. 3052 at pp. 21-22). Hearsay is not applicable because FRE 801(c)(2) is not satisfied (since it is offered for McKesson's notice, knowledge, and/or understanding of the matters identified above, and not solely introduced for the truth of the matter). Geographic scope is not applicable as this Court has already ruled that Defendants' conduct outside of Cabell/Huntington "is generally relevant to Defendants' conduct within the Track [Two] Counties." *See* ECF 1297, at 10. The information at issue relates to national regulations as well as McKesson's national policies/procedures regarding same, each of which apply to Cabell/Huntington. Foundation is established through the document as well as through the witness's testimony confirming his understanding as well as the fact that he was McKesson's Senior Director of Regulatory Affairs at the time. *See* Dep. at 176:3-12. Also, McKesson stipulated that this exhibit could be introduced "without the use of a sponsoring witness at trial". *See* ECF No. 1166 at 1, and 4 (row 26). Further, foundation is an objection to form which was not made during the deposition relative to use of this exhibit and/or relative to one or more questions, and as such the objection is waived as to same. The question does not call for a legal conclusion, but rather the witness's understanding of the applicable regulatory requirements and/or DEA/DOJ enforcement of same. | | | | | | | | | | | | |
| 177 | 18 | 177 | 23 | Document was sent to outside counsel in context of negotiations regarding an investigation and potential settlement, such that use would violate 408; Hearsay; geographic scope; foundation; calls for legal conclusion | | Same as above. | | | | | | | | | | | | |
| 177 | 25 | 178 | 1 | Document was sent to outside counsel in context of negotiations regarding an investigation and potential settlement, such that use would violate 408; Hearsay; geographic scope; foundation; calls for legal conclusion | | Same as above. | | | | | | | | | | | | |
| 178 | 3 | 179 | 18 | Document was sent to outside counsel in context of negotiations regarding an investigation and potential settlement, such that use would violate 408; Hearsay; geographic scope; foundation; calls for legal conclusion | | Same as above. | | | | | | | | | | | | |
| 179 | 20 | 179 | 21 | Document was sent to outside counsel in context of negotiations regarding an investigation and potential settlement, such that use would violate 408; Hearsay; geographic scope; foundation; calls for legal conclusion | | Same as above. | | | | | | | | | | | | |
| 180 | 13 | 181 | 2 | Document was sent to outside counsel in context of negotiations regarding an investigation and potential settlement, such that use would violate 408; Hearsay; geographic scope; foundation | | Same as above. | | | | | | | | | | | | |
| 181 | 6 | 181 | 6 | Document was sent to outside counsel in context of negotiations regarding an investigation and potential settlement, such that use would violate 408; Hearsay; geographic scope; foundation | | Same as above. | | | | | | | | | | | | |
| 181 | 8 | 181 | 8 | Document was sent to outside counsel in context of negotiations regarding an investigation and potential settlement, such that use would violate 408; Hearsay; geographic scope; foundation | | Same as above. | | | | | | | | | | | | |
| 181 | 10 | 181 | 16 | Document was sent to outside counsel in context of negotiations regarding an investigation and potential settlement, such that use would violate 408; Hearsay; geographic scope; foundation; assumes facts not in evidence | | Same as above. | | | | | | | | | | | | |
| 181 | 18 | 181 | 19 | Document was sent to outside counsel in context of negotiations regarding an investigation and potential settlement, such that use would violate 408; Hearsay; geographic scope; foundation; assumes facts not in evidence | | Same as above. | | | | | | | | | | | | |

| WITNESS NAME | Hartle, Nathan (fact) |
|---|---|
| DEPOSITION DA | 8/1/2018 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | | Page/Line End | | Objections | Objection Notes | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections |
| 181 | 21 | 182 | 11 | Document was sent to outside counsel in context of negotiations regarding an investigation and potential settlement, such that use would violate 408; Hearsay; geographic scope; foundation; assumes facts not in evidence | | Same as above. | | | | | | | | | | | | |
| 182 | 14 | 183 | 2 | Document was sent to outside counsel in context of negotiations regarding an investigation and potential settlement, such that use would violate 408; Hearsay; geographic scope; foundation; assumes facts not in evidence | | Same as above. | | | | | | | | | | | | |
| 184 | 12 | 185 | 22 | Document was sent to outside counsel in context of negotiations regarding an investigation and potential settlement, such that use would violate 408; Hearsay; geographic scope; foundation; assumes facts not in evidence | | Same as above. | | | | | | | | | | | | |
| 185 | 24 | 185 | 25 | Document was sent to outside counsel in context of negotiations regarding an investigation and potential settlement, such that use would violate 408; Hearsay; geographic scope; foundation; assumes facts not in evidence | | Same as above. | | | | | | | | | | | | |
| 186 | 2 | 186 | 20 | Document was sent to outside counsel in context of negotiations regarding an investigation and potential settlement, such that use would violate 408; Hearsay; geographic scope; foundation | | Same as above. | | | | | | | | | | | | |
| 186 | 22 | 186 | 24 | Document was sent to outside counsel in context of negotiations regarding an investigation and potential settlement, such that use would violate 408; Hearsay; geographic scope; foundation | | Same as above. | | | | | | | | | | | | |
| 187 | 2 | 187 | 3 | Document was sent to outside counsel in context of negotiations regarding an investigation and potential settlement, such that use would violate 408; Hearsay; geographic scope; foundation | | Same as above. | | | | | | | | | | | | |
| 187 | 6 | 188 | 7 | Document was sent to outside counsel in context of negotiations regarding an investigation and potential settlement, such that use would violate 408; Hearsay; geographic scope; foundation | | Same as above. | | | | | | | | | | | | |
| 188 | 9 | 188 | 10 | Document was sent to outside counsel in context of negotiations regarding an investigation and potential settlement, such that use would violate 408; Hearsay; geographic scope; foundation | | Same as above. | | | | | | | | | | | | |
| 190 | 14 | 190 | 20 | Hearsay; geographic scope; foundation; calls for legal conclusion | | Same as above. | | | | | | | | | | | | |
| 190 | 22 | 190 | 23 | | | n/a | | | | | | | | | | | | |
| 190 | 25 | 191 | 11 | Foundation; relevance | | Lack of foundation is not supported, as this involves an email written by the witness himself. *See* Dep. Exh. 55. Moreover, the witness was McKesson's Senior Director of Regulatory Affairs at the time, with responsibility for McKesson's retail national accounts for the entire country. *See* Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson", which encompasses the topic at issue (thresholds). *See* Dep. at 23:10-15. Additionally, McKesson stipulated that this exhibit could be introduced "without the use of a sponsoring witness at trial". *See* ECF No. 1166 at 1, and 4 (row 33). Plaintiffs submit that the relevance is evident from the document as well as subsequent testimony regarding same. *See* Dep. Exh. 55; Dep. at pp. 193-198. Among other things, this shows how McKesson raised customers' (e.g., Rite Aid) controlled substance thresholds inappropriately and used calculations, buffers, and "rounding up" as part of same. *See* Dep. Exh. 55 at p. 1. | | | | | | | | | | | | |
| 191 | 19 | 193 | 12 | Foundation; geographic scope; relevance; letter referenced at 192:10-15 was sent in the context of a Rule 408 negotiation. | | Lack of foundation is not supported, as this involves another email written by the witness himself. *See* Dep. Exh. 56. Moreover, the witness was McKesson's Senior Director of Regulatory Affairs at the time, with responsibility for McKesson's retail national accounts for the entire country. *See* Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson", which encompasses the topic at issue (thresholds). *See* Dep. at 23:10-15. Additionally, McKesson stipulated that this exhibit could be introduced "without the use of a sponsoring witness at trial". *See* ECF No. 1166 at 1, and 4 (row 32). Geographic scope is not applicable as this Court has already ruled that Defendants' conduct outside of Cabell/Huntington "is generally relevant to Defendants' conduct within the Track [Two] Counties." *See* ECF 1297, at 10. The information at issue relates to McKesson's national policies/procedures, which apply to Cabell/Huntington. Plaintiffs submit that the relevance is evident from the document as well as subsequent testimony regarding same. *See* Dep. Exh. 56; Dep. at pp. 193-198. Among other things, this shows how McKesson's national policy/procedure raised customers' controlled substance thresholds inappropriately and used calculations, buffers, and "rounding up" as part of same. As for the FRE 408 objection regarding the letter referenced at 192:10-15, please see response regarding designation at 175:21-176:24. Moreover, the questioning regarding this letter is merely for context, and any issue with same can be properly considered and weighed in this bench trial. | | | | | | | | | | | | |
| 193 | 14 | 193 | 15 | | | n/a | | | | | | | | | | | | |

| WITNESS NAME | Hartle, Nathan (fact) |
|---|---|
| DEPOSITION DA | 8/1/2018 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | | Page/Line End | | Objections | Objection Notes | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections |
| 193 | 17 | 194 | 6 | Foundation; relevance | | Lack of foundation is not supported, as this involves another email written by the witness himself. *See* Dep. Exh. 56. Moreover, the witness was McKesson's Senior Director of Regulatory Affairs at the time, with responsibility for McKesson's retail national accounts for the entire country. See Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson", which encompasses the topic at issue (setting thresholds). *See* Dep. at 23:10-15. Additionally, McKesson stipulated that this exhibit could be introduced "without the use of a sponsoring witness at trial". *See* ECF No. 1166 at 1, and 4 (row 32). As for relevance, Plaintiffs submit that it is evident from the document as well as subsequent testimony regarding same. *See* Dep. Exh. 56; Dep. at pp. 193-198. Among other things, this shows how McKesson's national policy/procedure raised customers' controlled substance thresholds inappropriately and used calculations, buffers, and "rounding up" as part of same. | | | | | | | | | | | | |
| 194 | 14 | 194 | 22 | Foundation; relevance | | Same as above. | | | | | | | | | | | | |
| 195 | 11 | 195 | 23 | Assumes facts not in evidence; foundation; relevance | | Assuming facts and lack of foundation are objections to form which were not raised during the deposition and are thus waived. Moreover, the facts and foundation are provided by the testimony and the exhibit itself, which is an email written by the witness himself. *See* Dep. Exh. 56. Further, the witness had the background, knowledge and role sufficient to testify on this matter, as he was McKesson's Senior Director of Regulatory Affairs at the time, with responsibility for McKesson's retail national accounts for the entire country. *See* Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson", which encompasses the topic at issue (setting thresholds). Additionally, McKesson stipulated that this exhibit could be introduced "without the use of a sponsoring witness at trial". *See* ECF No. 1166 at 1, and 4 (row 32). As for relevance, Plaintiffs submit that it is evident from the document as well as subsequent testimony regarding same. See Dep. Exh. 56; Dep. at pp. 193-198. Among other things, this shows how McKesson's national policy/procedure raised customers' controlled substance thresholds inappropriately and used calculations, buffers, and "rounding up" as part of same. | | | | | | | | | | | | |
| 197 | 6 | 197 | 9 | Vague; Assumes facts. | | The questioining is not vague and facts are not assumed, as the questioning walks through the methodology set-forth by the witness as written in his email. *See* Dep. Exh. 56. The witness clearly understood the questioning and fully answered. In fact, the witness confirms that "[t]hose are part of the calculations at the time". *See* Dep. at 197:3-4. Further, any alleged issue with vagueness can be properly minimized and/or weighed in this bench trial. | | | | | | | | | | | | |
| 197 | 12 | 197 | 19 | Assumes facts not in evidence; foundation; relevance | | The facts and foundation are provided by the testimony as well as the exhibit itself, which is an email written by the witness. *See* Dep. Exh. 56. In fact, the witness confirmed the questioning and elaborated on it in his answer. *See* Dep. at 197:21-22, 25. Further, the witness had the background, knowledge and role sufficient to testify on this matter, as he was McKesson's Senior Director of Regulatory Affairs at the time, with responsibility for McKesson's retail national accounts for the entire country. *See* Dep. at 15:18 25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson", which encompasses the topic at issue (setting thresholds). As for relevance, Plaintiffs submit that it is evident from the document as well as subsequent testimony regarding same. *See* Dep. Exh. 56; Dep. at pp. 193-198. Among other things, this shows how McKesson raised customers' controlled substance thresholds inappropriately and used calculations, buffers, and "rounding up" as part of same. | | | | | | | | | | | | |
| 197 | 21 | 197 | 22 | | | n/a | | | | | | | | | | | | |
| 198 | 1 | 198 | 9 | Assumes facts not in evidence; foundation; relevance | | The facts and foundation are provided by the testimony as well as the exhibit itself, which is an email written by the witness. *See* Dep. Exh. 56. In fact, the witness confirmed the questioning and elaborated on it in his answers. See Dep. at 198:11-13. Further, the witness had the background, knowledge and role sufficient to testify on this matter, as he was McKesson's Senior Director of Regulatory Affairs at the time, with responsibility for McKesson's retail national accounts for the entire country. *See* Dep. at 15:18 25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson", which encompasses the topic at issue (setting thresholds). Additionally, McKesson stipulated that this exhibit could be introduced "without the use of a sponsoring witness at trial". *See* ECF No. 1166 at 1, and 4 (row 32). As for relevance, Plaintiffs submit that it is evident from the document as well as subsequent testimony regarding same. *See* Dep. Exh. 56; Dep. at pp. 193-198. Among other things, this shows how McKesson's national policy/procedure raised customers' controlled substance thresholds inappropriately and used calculations, buffers, and "rounding up" as part of same. | | | | | | | | | | | | |
| 198 | 11 | 198 | 13 | | | n/a | | | | | | | | | | | | |
| 198 | 15 | 198 | 18 | Foundation; vague; relevance | | Lack of foundation and vagueness are objections to form which were not raised during the deposition, and are thus waived. Moreover, the foundation is provided by the testimony and the exhibit itself, which is an email written by the witness himself. *See* Dep. Exh. 56. Further, the witness had the background, knowledge and role sufficient to testify on this matter, as he was McKesson's Senior Director of Regulatory Affairs at the time, with responsibility for McKesson's retail national accounts for the entire country. *See* Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson", which encompasses the topic at issue (setting thresholds). Additionally, McKesson stipulated that this exhibit could be introduced "without the use of a sponsoring witness at trial". *See* ECF No. 1166 at 1, and 4 (row 32). The questioning is not vague, as it walks through the methodology set-forth by the witness as written in his email. *See* Dep. Exh. 56. In fact, the witness understood the questioning and was capable of fully answering same as shown by his testimony. *See* Dep. at 198:11-13, 18. Further, any alleged issue with vagueness can be properly minimized and/or weighed in this bench trial. As for relevance, Plaintiffs submit that it is evident from the document as well as subsequent testimony regarding same. *See* Dep. Exh. 56; Dep. at pp. 193-198. Among other things, this shows how McKesson's national policy/procedure raised customers' controlled substance thresholds inappropriately and used calculations, buffers, and "rounding up" as part of same. | | | | | | | | | | | | |
| 200 | 24 | 202 | 10 | Geographic scope; relevance; foundation | | Geographic scope is not applicable as this Court has already ruled that Defendants' conduct outside of Cabell/Huntington "is generally relevant to Defendants' conduct within the Track [Two] Counties." *See* ECF 1297, at 10. The information at issue relates to McKesson's national policies/procedures, which apply to Cabell/Huntington. As for relevance, Plaintiffs submit that it is evident from the document as well as subsequent testimony regarding same. *See* Dep. Exh. 55; Dep. at pp. 201-206. Among other things, this shows how McKesson raised customers' (e.g., Rite Aid) controlled substance thresholds inappropriately and used calculations, buffers, and "rounding up" as part of same. *See* Dep. Exh. 55 at p. 1. Lack of foundation is not applicable as this involves an email written by and including the witness himself. *See* Dep. Exh. 55. Moreover, the witness was McKesson's Senior Director of Regulatory Affairs at the time, with responsibility for McKesson's retail national accounts for the entire country. *See* Dep. at 15:18 25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson", which encompasses the topic at issue (thresholds). *See* Dep. at 23:10-15. Additionally, McKesson stipulated that this exhibit could be introduced "without the use of a sponsoring witness at trial". *See* ECF No. 1166 at 1, and 4 (row 33). | | | | | | | | | | | | |
| 202 | 22 | 202 | 25 | | | n/a | | | | | | | | | | | | |
| 204 | 7 | 204 | 17 | Geographic scope - McKesson did not service any Wegmans in Huntington/Cabell County | | Geographic scope is not applicable as this Court has already ruled that Defendants' conduct outside of Cabell/Huntington "is generally relevant to Defendants' conduct within the Track [Two] Counties." *See* ECF 1297, at 10. The information at issue relates to McKesson's national policies/procedures, which apply to Cabell/Huntington. Among other things, this shows how McKesson raised customers' (e.g., Rite Aid) controlled substance thresholds inappropriately and used calculations, buffers, and "rounding up" as part of same. *See* Dep. Exh. 55 at p. 1. | | | | | | | | | | | | |

| WITNESS NAME | Hartle, Nathan (fact) |
|---|---|
| DEPOSITION DA | 8/1/2018 |

| *AFFIRMATIVE DEPOSITION DESIGNATIONS* | | | | | | | *COUNTER DESIGNATIONS * Pink = Completeness Designation* | | | | | | *REPLY DESIGNATIONS * Pink = Completeness Designation* | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Page/Line Begin* | | *Page/Line End* | | *Objections* | *Objection Notes* | *Replies to Objections* | *Page/Line Begin* | | *Page/Line End* | | *Objections* | *Replies to Objections* | *Page/Line Begin* | | *Page/Line End* | | *Objections* | *Replies to Objections* |
| 205 | 5 | 205 | 19 | Geographic scope - McKesson did not service any Wegmans in Huntington/Cabell County | | Same as above. | | | | | | | | | | | | |
| 206 | 3 | 206 | 19 | Geographic scope - McKesson did not service any Wegmans in Huntington/Cabell County | | Same as above. | | | | | | | | | | | | |
| 206 | 22 | 206 | 23 | | | n/a | | | | | | | | | | | | |
| 209 | 17 | 210 | 13 | Geographic scope; hearsay; Exhibit was sent to McKesson's outside counsel in the context of an investigation and negotiation of settlement and use is barred under Rule 408. | | Geographic scope is not applicable as this Court has already ruled that Defendants' conduct outside of Cabell/Huntington "is generally relevant to Defendants' conduct within the Track [Two] Counties." See ECF 1297, at 10. The information at issue relates to national regulations as well as McKesson's national policies/procedures regarding same, each of which apply to Cabell/Huntington. Hearsay is not applicable because FRE 801(c)(2) is not satisfied (since it is offered for McKesson's notice, knowledge, and/or understanding of the matters identified above, and not solely introduced for the truth of the matter). FRE 408 is inapplicable as the matter in question involved a separate litigation. This is also plain from the language of the rule, which repeatedly references "prov[ing] or disprov[ing] the validity or amount of a disputed claim" by offering evidence of conduct that occurred while attempting to resolve "the claim." *See* FRE 408(a)(1) and (2). Further, even if FRE 408 applied, the document is admissible for "another purpose," such as to show McKesson's knowledge, notice and/or understanding of: the applicable distribution regulations, deficiencies with its national policies/procedures, the DEA's/DOJ's enforcement of applicable regulations, etc. *See* Fed. R. Evid. 408(b) and Committee Notes on 2006 amendment. *See also, See Zurich Am. Ins. Co. v. Watts Indus., Inc.* , 417 F.3d 682, 689-690 (7th Cir.2005) (the law allows for the permissible use of settlement communications as evidence when "the settlement communication at issue arise out of a dispute that is distinct from the one for which the evidence is being offered."). Moreover, the MDL Court determined that the document is admissible (*see* MDL dkt. 3052 at pp. 21-22). | | | | | | | | | | | | |
| 210 | 16 | 211 | 9 | Geographic scope; hearsay; Exhibit was sent to McKesson's outside counsel in the context of an investigation and negotiation of settlement and use is barred under Rule 408. | | Same as above. | | | | | | | | | | | | |
| 212 | 1 | 212 | 20 | Argumentative; assumes facts; foundation. | | These are objections to form which were not made during the depositon for most of the questions/answers in this designation, and are thus waived relative to same. Moreover, the questions were not argumentative and did not assume facts, but rather set-forth facts which have been established by the testimony and exhibits. The witness wrote the email in question, the opioid epidemic and deaths were previously established, and the witness confirmed his knowledge of same. *See e.g* ., Dep. at 41:15-42:17, 190:25-191:8, 212:10-15. *See also* , Dep. Exh. 44, Dep. Exh. 55. In fact, the opioid epidemic and harms were set-forth in a PowerPoint authored and presented by the witness himself. *See* Dep. at 40:8-41:8, Dep. Exh. 43. Also, the witness had the background, knowledge, experience and role sufficient to testify on this matter, as he was McKesson's Senior Director of Regulatory Affairs at the time, with responsibility for McKesson's retail national accounts for the entire country. *See* Dep. at 15:18 25, 16:2-12, 18:12-23 and 24:20-25:1. | | | | | | | | | | | | |
| 212 | 22 | 212 | 22 | | | n/a | | | | | | | | | | | | |
| 212 | 24 | 213 | 5 | Argumentative; assumes facts; foundation. | | The questions were not argumentative and did not assume facts, but rather set-forth facts which have been established by the testimony and exhibits. The witness wrote the email in question, the opioid epidemic and deaths were previously established, and the witness confirmed his knowledge of same. *See e.g* ., Dep. at 41:15-42:17, 190:25-191:8, 212:10-15. *See also* , Dep. Exh. 44, Dep. Exh. 55. In fact, the opioid epidemic and harms were set-forth in a PowerPoint authored and presented by the witness himself. See Dep. at 40:8-41:8, Dep. Exh. 43. Also, the witness had the background, knowledge, experience and role sufficient to testify on this matter, as he was McKesson's Senior Director of Regulatory Affairs at the time, with responsibility for McKesson's retail national accounts for the entire country. *See* Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. Further, while Plaintiffs submit the question is appropriate, any alleged argument can be properly considered, minimized and/or weighed in this bench trial. | | | | | | | | | | | | |
| 213 | 7 | 213 | 8 | Argumentative; assumes facts; foundation. | | Same as above. | | | | | | | | | | | | |
| 221 | 19 | 222 | 19 | Foundation; McKesson preserves its objection to introduction of this document, but recognizes that the court has ruled it admissible; allegations within the documents are hearsay. | | Foundation is not supported because the witness had the background, knowledge, experience and role sufficient to testify on this matter, as he was McKesson's Senior Director of Regulatory Affairs at the time, with responsibility for McKesson's retail national accounts for the entire country. *See* Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. Also, the confirmed that he previously reviewed it. *See* Dep. at 221:19-24. Further, as noted by McKesson the document has been admitted into evidence. *See* P-42554; 5/24/2021 Trial Tr. at 107:18-109:3. | | | | | | | | | | | | |
| 222 | 21 | 222 | 21 | | | n/a | | | | | | | | | | | | |
| 222 | 25 | 223 | 4 | Foundation; hearsay | | Lack of foundation is an objection to form which was not made during the deposition, and thus is waived. Lack of foundaiton is also not supported because this involves an email chain with one email written directly to the witness, and the other written by the witness himself. *See* Dep. Exh. 59. Moreover, the witness was McKesson's Senior Director of Regulatory Affairs at the time, with responsibility for McKesson's retail national accounts for the entire country, which encompassed the topics at issue (e.g., retail customers, thresholds). *See* Dep. at 15:18-25, 16:2-12, 18:12-23, 23:10-15 and 24:20-25:1. Regardless, McKesson stipulated that this exhibit could be introduced "without the use of a sponsoring witness at trial". *See* ECF No. 1166 at 1, and 4 (row 30). Hearsay is not applicable pursuant to FRE 801(d)(2)(C), FRE 801(d)(2)(D), FRE 803(3), FRE 803(5) and/or 803(6). Further, even if any portion was considered hearsay, the information is still admissible because FRE 801(c)(2) is not satisfied since it is also for notice, knowledge, understanding and/or state of mind regarding the operative topics at issue (e.g., McKesson's buffer and how thresholds were being set). | | | | | | | | | | | | |
| 223 | 8 | 223 | 14 | Foundation; hearsay | | Same as above. | | | | | | | | | | | | |
| 223 | 17 | 224 | 6 | Foundation; hearsay | | With the exception of the objection waiver argument, same as above. | | | | | | | | | | | | |
| 224 | 8 | 224 | 8 | | | n/a | | | | | | | | | | | | |
| 225 | 8 | 225 | 9 | Foundation; calls for speculation; hearsay | | Foundation is provided in the exhibit itself, which is an email chain with one email written directly to the witness, and the other written by the witness himself. *See* Dep. Exh. 59. Further, the witness was McKesson's Senior Director of Regulatory Affairs at the time, with responsibility for McKesson's retail national accounts for the entire country, which encompassed the topics at issue (e.g., retail customers, thresholds). *See* Dep. at 15:18-25, 16:2-12, 18:12-23, 23:10-15 and 24:20-25:1. Speculation is not supported, as this is the actual perception of the McKesson representative who is emailing the witness. Thus, regardless of the customer, the topic being addressed was based on the actual facts as understood by McKesson employees. Moreover, the operative portions of the email chain (e.g., McKesson's buffer and how thresholds were being set) were facts. Hearsay is not applicable pursuant to FRE 801(d)(2)(C), FRE 801(d)(2)(D), FRE 803(3), FRE 803(5) and/or 803(6). Further, even if any portion was considered hearsay, the information is still admissible because FRE 801(c)(2) is not satisfied since it is also for notice, knowledge, understanding and/or state of mind regarding the operative topics at issue (e.g., McKesson's buffer and how thresholds were being set). | | | | | | | | | | | | |
| 225 | 12 | 226 | 19 | Mischaracterizes the content of McKesson's 2017 settlement agreement. | | The question accurately summarizes the facts established, including that the witness's 1/30/2017 email was sent less than 2 weeks after the 1/17/2017 settlement/MOU, that the settlement/MOU was for $150 million, and that the settlement/MOU included multiple allegations McKesson's conduct. *See* Dep. Exh. 59. *See also* , P-42554 at pp. 4, 14. Moreover, the settlement agreement is admitted into evidence, and any potential mischaracterization can be properly considered, accounted for and/or weighed in this bench trial. | | | | | | | | | | | | |

| WITNESS NAME | Hartle, Nathan (fact) |
|---|---|
| DEPOSITION DA | 8/1/2018 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | | Page/Line End | | Objections | Objection Notes | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections |
| 226 | 21 | 226 | 22 | | | n/a | | | | | | | | | | | | |
| 227 | 18 | 227 | 20 | Argumentative; foundation; vague | | The question is not argumentative or vague, as the phrase "business as usual" is quoted from the email itself. *See* Dep. Exh. 59. Moreover, the witness was given the opportunity to answer and did answer with his elaboration, showing that he had no confusion or difficulty with the question. Further, while Plaintiffs submit the question is appropriate, any alleged argument or vagueness can be properly considered, minimized and/or weighed in this bench trial. Foundation is provided in the exhibit itself, and the quoted language is from the email written by the witness himself. *Id* . Further, the witness was McKesson's Senior Director of Regulatory Affairs at the time, with responsibility for McKesson's retail national accounts for the entire country, which encompassed the topics at issue (e.g., retail customers, thresholds). See Dep. at 15:18-25, 16:2-12, 18:12-23, 23:10-15 and 24:20-25:1. | | | | | | | | | | | | |
| 227 | 23 | 227 | 24 | Argumentative; foundation; vague | | Same as above. | | | | | | | | | | | | |
| 228 | 1 | 228 | 2 | Foundation | | Same response as above relative to foundation. | | | | | | | | | | | | |
| 240 | 14 | 242 | 11 | Relevance; foundation | | The relevance is that McKesson's trade organization (HDMA), which works on McKesson's behalf and has McKesson on its Executive Committee, is articulating and admitting the viewpont that the efforts of States to "address, reduce, [and] prevent prescription abuse and diversion" is a problem or "challenge" as opposed to a good thing. Aside from proving notice, mind-set and/or motive, this also contradicts McKesson's claims that it did as much as it could to cooperate with regulators. Also, this Court has already addressed relevance of such information. *See* ECF 1360 at 5-6 ("The court agrees with plaintiffs and Judge Polster that the evidence is relevant for these purposes. Furthermore, the court concludes that the probative value of this evidence is not outweighed by any prejudice to defendants."). The Lack of foundation is an objection to form which was not made during the deposition regarding nearly all of the questions in this designation, and thus is waived regarding same. Lack of foundaiton is also not supported because the witness was McKesson's Senior Director of Regulatory Affairs at the time, with responsibility for McKesson's retail national accounts for the entire country. *See* Dep. at 15:18-25, 16:2-12, 18:12-23, 23:10-15 and 24:20-25:1. And, the witness was knowledgeable about the HDMA and the fact that McKesson was on the Executive Committee. See Dep. at 241:13-18. Further, McKesson stipulated that this exhibit could be introduced "without the use of a sponsoring witness at trial". *See* ECF No. 1166 at 1, and 4 (row 37). | | | | | | | | | | | | |
| 242 | 13 | 242 | 15 | Relevance; foundation; use of document and questions would violate the Noerr-Pennington doctrine as it relates expressly to lobbying efforts and positions. | | Same response as above relative to relevance and foundation objections. As for the Noerr-Pennington objection, this Court and the MDL Court already ruled that Noerr-Pennington related activities (e.g., lobbying, filing amicus briefs, etc.) are relevant and admissible, particularly in light of Defendants' claims that they did not understand their duties. *See* ECF 1360 at 5-6 ("The court agrees with plaintiffs and Judge Polster that the evidence is relevant for these purposes. Furthermore, the court concludes that the probative value of this evidence is not outweighed by any prejudice to defendants."). *See also* , In re Nat'l Prescription Opiate Litig., No. 1:17-MD-2804, 2020 WL 6450290, at *20 (N.D. Ohio Nov. 3, 2020). Moreover, as previously confirmed, Plaintiffs are not arguing that the H.D.A./HDMA and Defendants were not allowed to lobby or that they are liable for lobbying efforts. | | | | | | | | | | | | |
| 242 | 17 | 242 | 19 | Relevance; foundation; use of document and questions would violate the Noerr-Pennington doctrine as it relates expressly to lobbying efforts and positions. | | Same as above. | | | | | | | | | | | | |
| 286 | 18 | 287 | 24 | Foundation; geographic scope; hearsay; calls for speculation; letter asked about in questioning was sent to McKesson's outside counsel in the context of an investigation and negotiation regarding potential settlement and is inadmissible under Rule 408. | | The objections to lack of foundation and speculaiton are objections to form which were not made during the depositon for nearly all of the questions/answers, and are thus waived relative to same. Moreover, the witness was McKesson's Senior Director of Regulatory Affairs at the time, with responsibility for McKesson's retail national accounts for the entire country. See Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson", which encompasses the topics at issue (e.g., regulatory requirements, identifying suspicious orders, reporting suspicious orders, thresholds). *See* Dep. at 23:10-15; Dep. Exh. 54. In fact, the witness testified that he previously reviewed the document at issue, was familiar with the topics, and his answers show that he is not speculating. *See e.g.* , Dep. at 286:18-25, 289:15-18, 290:23-291:19. Additionally, McKesson stipulated that the letter in question could be introduced "without the use of a sponsoring witness at trial". *See* ECF No. 1166 at 1, and 4 (row 26). Geographic scope is not applicable as this Court has already ruled that Defendants' conduct outside of Cabell/Huntington "is generally relevant to Defendants' conduct within the Track [Two] Counties." *See* ECF 1297, at 10. The information at issue relates to McKesson's national policies/procedures, which apply to Cabell/Huntington. FRE 408 is inapplicable as the matter in question involved a separate litigation. This is also plain from the language of the rule, which repeatedly references "prov[ing] or disprov[ing] the validity or amount of a disputed claim" by offering evidence of conduct that occurred while attempting to resolve "the claim." *See* FRE 408(a)(1) and (2). Further, even if FRE 408 applied, the document is admissible for "another purpose," such as to show McKesson's knowledge, notice and/or understanding of: the applicable distribution regulations, deficiencies with its national policies/procedures, the DEA's/DOJ's enforcement of applicable regulations, etc. *See* Fed. R. Evid. 408(b) and Committee Notes on 2006 amendment. *See also, See Zurich Am. Ins. Co. v. Watts Indus., Inc.* , 417 F.3d 682, 689-690 (7th Cir.2005) (the law allows for the permissible use of settlement communications as evidence when "the settlement communication at issue arise out of a dispute that is distinct from the one for which the evidence is being offered."). Moreover, the MDL Court determined that the document is admissible (*see* MDL dkt. 3052 at pp. 21-22). Hearsay is not applicable because FRE 801(c)(2) is not satisfied since it is offered for McKesson's notice, knowledge, and/or understanding of the matters identified (e.g., regulatory requirements, identifying suspicious orders, reporting suspicious orders, thresholds), and not solely introduced for the truth of the matter. | | | | | | | | | | | | |
| 288 | 1 | 288 | 2 | Foundation; geographic scope; hearsay; calls for speculation; letter asked about in questioning was sent to McKesson's outside counsel in the context of an investigation and negotiation regarding potential settlement and is inadmissible under Rule 408. | | Same as above. | | | | | | | | | | | | |
| 288 | 21 | 289 | 14 | Foundation; geographic scope; hearsay; calls for speculation; letter asked about in questioning was sent to McKesson's outside counsel in the context of an investigation and negotiation regarding potential settlement and is inadmissible under Rule 408. | | Same as above response regarding objection to designation at 286:18-287:24. | | | | | | | | | | | | |
| 289 | 19 | 290 | 4 | Foundation; geographic scope; hearsay; calls for speculation; letter asked about in questioning was sent to McKesson's outside counsel in the context of an investigation and negotiation regarding potential settlement and is inadmissible under Rule 408. | | Same as above response regarding objection to designation at 286:18-287:24. | | | | | | | | | | | | |

| WITNESS NAME | Hartle, Nathan (fact) |
|---|---|
| DEPOSITION DA | 8/1/2018 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | | Page/Line End | | Objections | Objection Notes | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections |
| 290 | 6 | 290 | 7 | Foundation; geographic scope; hearsay; calls for speculation; letter asked about in questioning was sent to McKesson's outside counsel in the context of an investigation and negotiation regarding potential settlement and is inadmissible under Rule 408. | | Same as above response regarding objection to designation at 286:18-287:24. | | | | | | | | | | | | |
| 290 | 9 | 290 | 25 | Foundation; geographic scope; hearsay; calls for speculation; letter asked about in questioning was sent to McKesson's outside counsel in the context of an investigation and negotiation regarding potential settlement and is inadmissible under Rule 408. | | Same as above response regarding objection to designation at 286:18-287:24. | | | | | | | | | | | | |
| 291 | 20 | 292 | 7 | Foundation; geographic scope; hearsay; calls for speculation; letter asked about in questioning was sent to McKesson's outside counsel in the context of an investigation and negotiation regarding potential settlement and is inadmissible under Rule 408. | | Same as above response regarding objection to designation at 286:18-287:24. | | | | | | | | | | | | |
| 292 | 9 | 292 | 20 | Foundation; geographic scope; hearsay; calls for speculation; letter asked about in questioning was sent to McKesson's outside counsel in the context of an investigation and negotiation regarding potential settlement and is inadmissible under Rule 408. | | Same as above response regarding objection to designation at 286:18-287:24. | | | | | | | | | | | | |
| 292 | 22 | 292 | 23 | Foundation; geographic scope; hearsay; calls for speculation; letter asked about in questioning was sent to McKesson's outside counsel in the context of an investigation and negotiation regarding potential settlement and is inadmissible under Rule 408. | | Same as above response regarding objection to designation at 286:18-287:24. | | | | | | | | | | | | |
| 292 | 25 | 293 | 12 | Foundation; geographic scope; hearsay; calls for speculation; letter asked about in questioning was sent to McKesson's outside counsel in the context of an investigation and negotiation regarding potential settlement and is inadmissible under Rule 408. | | Same as above response regarding objection to designation at 286:18-287:24. | | | | | | | | | | | | |
| 293 | 14 | 293 | 15 | Foundation; geographic scope; hearsay; calls for speculation; letter asked about in questioning was sent to McKesson's outside counsel in the context of an investigation and negotiation regarding potential settlement and is inadmissible under Rule 408. | | Same as above response regarding objection to designation at 286:18-287:24. | | | | | | | | | | | | |
| 293 | 17 | 293 | 20 | Foundation; geographic scope; hearsay; calls for speculation; letter asked about in questioning was sent to McKesson's outside counsel in the context of an investigation and negotiation regarding potential settlement and is inadmissible under Rule 408. | | Same as above response regarding objection to designation at 286:18-287:24. | | | | | | | | | | | | |
| 293 | 22 | 293 | 23 | Foundation; geographic scope; hearsay; calls for speculation; letter asked about in questioning was sent to McKesson's outside counsel in the context of an investigation and negotiation regarding potential settlement and is inadmissible under Rule 408. | | Same as above response regarding objection to designation at 286:18-287:24. | | | | | | | | | | | | |
| 294 | 1 | 294 | 13 | Argumentative; foundation; geographic scope; hearsay; calls for speculation; letter asked about in questioning was sent to McKesson's outside counsel in the context of an investigation and negotiation regarding potential settlement and is inadmissible under Rule 408. | | Same as above response regarding objection to designation at 286:18-287:24. Also, relative to the argumentative objection, this too is a form objection which was not raised during the deposition relative to the question/answer at 294:1-9, and thus is waived relative to same. Moreover, the witness was capable of answering and did answer the remaining question at 294:10-13. Further, while Plaintiffs submit that the substance of the question at 294:10-13 is valid, any alleged argumentative portion can be properly considered, accounted for and/or weighed in this bench trial. | | | | | | | | | | | | |
| 294 | 15 | 294 | 16 | Argumentative; foundation; geographic scope; hearsay; calls for speculation; letter asked about in questioning was sent to McKesson's outside counsel in the context of an investigation and negotiation regarding potential settlement and is inadmissible under Rule 408. | | Same as above. | | | | | | | | | | | | |

| WITNESS NAME | Hartle, Nathan (fact) |
|---|---|
| DEPOSITION DA | 8/1/2018 |

| *AFFIRMATIVE DEPOSITION DESIGNATIONS* | | | | | | | *COUNTER DESIGNATIONS * Pink = Completeness Designation* | | | | | | *REPLY DESIGNATIONS * Pink = Completeness Designation* | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Page/Line Begin* | | *Page/Line End* | | *Objections* | *Objection Notes* | *Replies to Objections* | *Page/Line Begin* | | *Page/Line End* | | *Objections* | *Replies to Objections* | *Page/Line Begin* | | *Page/Line End* | | *Objections* | *Replies to Objections* |
| 318 | 24 | 319 | 10 | Foundation; calls for speculation; relevance/geographic scope - discussion of an abstract possibility of migration without any geographic nexus or evidence related to Huntington/Cabell. | | The objections to foundation and speculation are objections to form which were not made during the deposition, and are thus waived. Moreover, these objections are not supported because the witness had the background, knowledge, experience and role sufficient to testify on this matter (as McKesson's VP of Regulatory Affairs and Compliance, and prior to that, as a Senior Director of Regulatory Affairs, including responsibility to understand diversion and to implement and enhance McKesson's CSMP to address same). *See e.g.* , Dep. at 15:18-25, 16:2-12, 18:12-23, 23:10-15, 24:20-25:1, 493:24-495:3. Additionally, the witness's testimony here and elsewhere shows that he was not speculating and that he was knowledgeable about migration (even testifying that he was "[a]ware of how drugs move and migrate" and "I agree that diversion migrates"). *See* Dep. at 320:16-20; 323:13-14. The objection to relevance/geographic scope is not supported, particularly for Huntington/Cabell or any city/county in West Virginia (a state which has been proven to have the highest per capita supply of opioids in the U.S., and where oversupply to one city or county impacts others)and has been recognized as such by multuple witnesses throughout this trial. | | | | | | | | | | | | |
| 319 | 25 | 320 | 16 | Foundation; hearsay - slide in question was copy/pasted from DEA deck; geographic scope - slide does not depict West Virginia. | | The objection to foundation is an objection to form which was not made during the deposition for nearly all of the questions/answers in this designation, and is thus waived relative to same. Moreover, lack of foundation is not supported because the witness had the background, knowledge, experience and role sufficient to testify on this matter (as McKesson's VP of Regulatory Affairs and Compliance, and prior to that, as a Senior Director of Regulatory Affairs, including responsibility to understand diversion and to implement and enhance McKesson's CSMP to account for same). *See e.g.* , Dep. at 15:18-25, 16:2-12, 18:12-23, 23:10-15, 24:20-25:1, 493:24-495:3. In fact, the witness has authored/given similar presentations himself for years. *See e.g.* , Dep. Exhs. 41, 42 and 43. Additionally, the witness testified that he was familiar with the PowerPoint as well as the topic in question. *See* Dep. at 320:3-20. This McKesson PowerPoint and the witness's testimony are not hearsay pursuant to FRE 801(d)(2)(B), FRE 801(d)(2)(C), FRE 801(d)(2)(D), and/or FRE 803(6). Further, slides with other information were adopted/used from a specifically cited government publication/report which is also an exception to hearsay (FRE 803(8)). Hearsay is also not applicable because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind regarding: migration, opioid addiction, the opioid epidemic, opioid harms, etc.). The geographic scope objection is not applicable because McKesson's notice, knowledge, understanding and/or state of mind regarding these nationwide and/or regional problems apply to Cabell/Huntington. Moreover, migration is particularly applicable to Huntington/Cabell due to the high rate of opioid distribution in West Virginia (because oversupply in other West VIrginia cities/counties impacts Huntington/Cabell)and has been recognized as such by multuple witnesses throughout this trial. | | | | | | | | | | | | |
| 320 | 18 | 320 | 20 | Foundation; hearsay - slide in question was copy/pasted from DEA deck; geographic scope - slide does not depict West Virginia. | | Same as above except for the objection waiver argument. | | | | | | | | | | | | |
| 321 | 6 | 321 | 17 | | | n/a | | | | | | | | | | | | |
| 323 | 5 | 323 | 11 | Vague; calls for speculation; assumes facts insofar as it is asking about diversion from distribution centers, of which there is not evidence; relevant/geographic scope - discussing the possibility of diversion in the abstract without any geographic nexus or evidence related to Huntington/Cabell. | | The vagueness and assuming facts objections are not supported because the point of the questioning was to discuss generally diversion and migration. To the degree that evidence of diversion from distribution centers is required, there are multiple McKesson-DEA/DOJ settlements proving same. Moreover, the witness understood the question and clearly answered same without difficulty. Speculation is not supported for the same reason, and because the witness had the background, knowledge, experience and role sufficient to testify on this matter. *See e.g.* , Dep. at 15:18-25, 16:2-12, 18:12-23, 23:10-15, 24:20-25:1, 493:24-495:3. Additionally, the witness's testimony here and elsewhere shows that he was not speculating and that he was knowledgeable about diversion and migration (even testifying that he was "[a]ware of how drugs move and migrate" and "I agree that diversion migrates"). *See* Dep. at 320:16-20; 323:13-14. The geographic scope objection is not applicable because McKesson's notice, knowledge, understanding and/or state of mind regarding these nationwide and/or regional problems apply to Cabell/Huntington. Moreover, migration is particularly applicable to Huntington/Cabell due to the high rate of opioid distribution in West Virginia (because oversupply in other West VIrginia cities/counties impacts Huntington/Cabell) and has been recognized as such by multuple witnesses throughout this trial. | | | | | | | | | | | | |
| 323 | 13 | 323 | 14 | Vague; calls for speculation; assumes facts insofar as it is asking about diversion from distribution centers, of which there is not evidence; relevant/geographic scope - discussing the possibility of diversion in the abstract without any geographic nexus or evidence related to Huntington/Cabell. | | Same as above. | | | | | | | | | | | | |
| 389 | 12 | 390 | 1 | | | n/a | | | | | | | | | | | | |
| 390 | 3 | 390 | 12 | | | n/a | | | | | | | | | | | | |
| 390 | 14 | 390 | 23 | | | n/a | | | | | | | | | | | | |
| 390 | 25 | 391 | 1 | | | n/a | | | | | | | | | | | | |
| 391 | 13 | 391 | 19 | | | n/a | | | | | | | | | | | | |
| 391 | 21 | 392 | 1 | | | n/a | | | | | | | | | | | | |
| 429 | 15 | 429 | 24 | Foundation; calls for speculation | | Lack of foundation and speculation are not supported because the witness had the background, knowledge, experience and role sufficient to testify on this matter, as he was McKesson's Senior Director of Regulatory Affairs at the time, with responsibility for McKesson's retail national accounts for the entire country. See Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson", which encompasses the topic at issue (knowledge of drugs sold to customers by other distributors). In fact, the witness confirmed his knowledge and his answer shows that he was not speculating. *See* Dep. at 430:1-2, 430:13-20, 431:13-14. | | | | | | | | | | | | |
| 430 | 1 | 430 | 7 | Foundation; calls for speculation | | Same as above. | | | | | | | | | | | | |
| 430 | 9 | 430 | 11 | Foundation; vague; calls for speculation. Objection to 430:4-7 - counsel asks question but does not provide witness an opportunity to respond. Designating counsel's question without any answer is improper narrative. | | Same response as above relative to foundation and speculation. Relative to the vagueness objection, the questioning focused on McKesson's ability to obtain information on drugs sold to customers by other distributors. The witness understood the question and was able to (and did) answer. *See* Dep. at 430:13-20, 431:13-14. As for the objection regarding opportunity to respond, the testimony shows that the witness substantively was able to respond (at 430:13-14 and 430:17-18) responsively and directly (confirming that McKesson was able to see (what drugs customers were selling). Moreover, when counsel for McKesson requested that the questioner make sure not to talk over the witness, the questioner asked a similar question "to be clear" as well as "a little more direct", and the witness was given another opportunity to answer (which the witness did, including with his explanation). *See* Dep. at 430:25-431:14. Plaintiffs submit that the entirety of the questioning is helpful for context. Further, to the extent any alleged vagueness or issues are present, the Court can properly consider, account for and weigh same in this bench trial. | | | | | | | | | | | | |
| 430 | 13 | 430 | 20 | Foundation; calls for speculation; argumentative insofar as the questioning attorney cuts of and speaks over the witness. | | Same as above. | | | | | | | | | | | | |

| WITNESS NAME | Hartle, Nathan (fact) |
|---|---|
| DEPOSITION DA | 8/1/2018 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | | Page/Line End | | Objections | Objection Notes | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections |
| 431 | 5 | 431 | 11 | Foundation; calls for speculation insofar as it seeks to have the witness answer for McKesson's operations prior to him joining the company in 2014. | | Same as above. Also, the witness had testified that, as part of his responsibilities, he researched and was familiar with how McKesson's operations worked prior to his joining the company (as he was involved with enhancements of same). *See e.g.* , Dep. at 493:24-495:3. In fact, McKesson designated Mr. Hartle as their 30(b)(6) representative to testify about the history of its CSMP. *See e.g.* , 7/31/2018 McKesson/Hartle Dep. Ex. 1 at 6 (topic (a) "Your past/present suspicious orders monitoring system, SOMS program, policies and procedures"). Moreover, the question was specifically qualified to address McKesson's operations as of the time the witness joined the company ("at least when you came along"). *See* Dep. at 431:11. | | | | | | | | | | | | |
| 431 | 13 | 431 | 14 | Foundation; calls for speculation insofar as it seeks to have the witness answer for McKesson's operations prior to him joining the company in 2014. | | Same as above. | | | | | | | | | | | | |
| 437 | 20 | 438 | 3 | Foundation; calls for speculation; calls for expert opinion; argumentative insofar a the questioning attorney cut off and spoke over the witness while he answered. | | The lack of foundation, speculation, and expert opinion objections are not supported. The witness had the background, knowledge, experience and role sufficient to testify on this matter, as he was McKesson's Senior Director of Regulatory Affairs, with responsibility for McKesson's retail national accounts for the entire country. *See* Dep. at 15:18-25, 16:2-12, 18:12-23 and 24:20-25:1. As part of his job, Mr. Hartle had the responsibility "to understand and implement the controlled substance monitoring program ["CSMP"] of McKesson", which encompasses the topic at issue (consequences of oversupply). *See* Dep. at 23:10-15. Additionally, the witness's answer did not indicate that he lacked foundation or that he was speculating. As for the argumentative objection, Plaintiffs submit that the attorney did not "cut off" the witness, but rather was agreeing with the witness by saying "right". Moreover, this was very minor and the witness was allowed to (and did) finish his answer. *See* Dep. at 438:5-9. Further, to the extent any alleged argumentative questioning is present, the Court can properly consider, account for and weigh same in this bench trial. | | | | | | | | | | | | |
| 438 | 5 | 438 | 9 | Foundation; calls for speculation; calls for expert opinion; argumentative insofar a the questioning attorney cut off and spoke over the witness while he answered. | | Same as above. | | | | | | | | | | | | |
| 439 | 6 | 439 | 11 | Lacks relevance/geographic scope - questions relate to a town not within Huntington/Cabell; hearsay - questioning is based on hearsay allegations in a letter from Congress that counsel purports to offer for the truth (see 438:2-5). Calls for speculation about distribution predating Mr. Hartle's employment. | | The objection to relevance/geographic scope is not supported. This Court has already ruled that Defendants' conduct outside of Cabell/Huntington "is generally relevant to Defendants' conduct within the Track [Two] Counties." *See* ECF 1297, at 10. The information at issue provides evidence of systemic failures with McKesson's national policies and procedures and/or over-shipping of opioids without proper monitoring or reporting. Moreover, the witness's/McKesson's notice, knowledge, understanding and/or mindset regarding the deficiencies apply equally or similarly to Cabell/Huntington. The hearsay objection is not supported, as the questioning can stand on its own, with the exhibit/letter used for demonstrative purposes (particularly since the witness knew aobut the underlying matter). Moreover, hearsay is inapplicable pursuant to FRE 803(8) and/or FRE 807. Additionally, hearsay is not applicable because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind relative to: shipping suspicious orders, diversion, policy/procedure deficiencies, and other relevant matters). The objection to speculation is not supported because the witness had the background, knowledge, experience and role sufficient to testify on this matter (as McKesson's VP of Regulatory Affairs and Compliance, and prior to that, as a Senior Director of Regulatory Affairs, including responsibility to understand distribution and diversion, and to implement as well as enhance McKesson's CSMP to address same). *See e.g.* , Dep. at 15:18-25, 16:2-12, 18:12-23, 23:10-15, 24:20-25:1, 493:24-495:3. In fact, McKesson designated Mr. Hartle as their 30(b)(6) representative to testify about the history of its CSMP and its shipment of suspicious orders. *See* 7/31/2018 McKesson/Hartle Dep. Ex. 1 at pp. 5-6 (from "1995 to the present", topic (a) "Your past/present suspicious orders monitoring system, SOMS program, policies and procedures", and topic (g) "Whether You historically shipped suspicious orders without reporting and/or conducting due diligence"). Speculation is also not supported based on the witness's testimony that he knew about Kermit, WV and the large number of opioids distributed there. *See* Dep. at 439:13-24. | | | | | | | | | | | | |
| 439 | 13 | 439 | 21 | Lacks relevance/geographic scope - questions relate to a town not within Huntington/Cabell; hearsay - questioning is based on hearsay allegations in a letter from Congress that counsel purports to offer for the truth (see 438:2-5). Calls for speculation about distribution predating Mr. Hartle's employment. | | Same as above. | | | | | | | | | | | | |
| 439 | 23 | 439 | 25 | Lacks relevance/geographic scope - questions relate to a town not within Huntington/Cabell; hearsay - questioning is based on hearsay allegations in a letter from Congress that counsel purports to offer for the truth (see 438:2-5). Calls for speculation about distribution predating Mr. Hartle's employment. | | Same as above. | | | | | | | | | | | | |
| 442 | 4 | 442 | 9 | Lacks relevance/geographic scope - questions relate to a town not within Huntington/Cabell; hearsay - questioning is based on hearsay allegations in a letter from Congress that counsel purports to offer for the truth (see 438:2-5). Calls for speculation about distribution predating Mr. Hartle's employment. | | Same as above. | | | | | | | | | | | | |
| 442 | 11 | 442 | 14 | Lacks relevance/geographic scope - questions relate to a town not within Huntington/Cabell; hearsay - questioning is based on hearsay allegations in a letter from Congress that counsel purports to offer for the truth (see 438:2-5). Calls for speculation about distribution predating Mr. Hartle's employment. | | Same as above. | | | | | | | | | | | | |

| **WITNESS NAME** | Hartle, Nathan (fact) |
|---|---|
| **DEPOSITION DA** | 8/1/2018 |

| *AFFIRMATIVE DEPOSITION DESIGNATIONS* | | | | | | | *COUNTER DESIGNATIONS * Pink = Completeness Designation* | | | | | | *REPLY DESIGNATIONS * Pink = Completeness Designation* | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| *Page/Line Begin* | | *Page/Line End* | | *Objections* | *Objection Notes* | *Replies to Objections* | *Page/Line Begin* | | *Page/Line End* | | *Objections* | *Replies to Objections* | *Page/Line Begin* | | *Page/Line End* | | *Objections* | *Replies to Objections* |
| 443 | 1 | 443 | 5 | Foundation; calls for speculation; lacks relevance/geographic scope as Judy's Drugs is not in Huntington/Cabell; questioning is based on hearsay statements in video created by Plaintiffs' for use in deposition. See **Attachment A.** The video is not a proper demonstrative, as it does not demonstrate Mr. Hartle's testimony, but was introduced as an exhibit that formed the basis of questioning. | | The foundation and speculation objections are not supported because the witness had the background, knowledge, experience and role sufficient to testify on this matter (as McKesson's VP of Regulatory Affairs and Compliance, and prior to that, as a Senior Director of Regulatory Affairs, including responsibility to understand diversion and over-supply, as well as to implement and enhance McKesson's CSMP to address same). *See e.g.* , Dep. at 15:18-25, 16:2-12, 18:12-23, 23:10-15, 24:20-25:1, 493:24-495:3. Moreover, the witness's answers show that he is familiar with the material at issue (e.g., diversion, over-supply/distribution). The hearsay objection is not applicable, as the questioning can stand on its own, with the exhibit/video used for demonstrative purposes (particularly since the witness understood the underlying matters of over-suply and diversion). Additionally, hearsay is not applicable because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind relative to: shipping suspicious orders, diversion, over-supply/distribution, opioid harms, etc.). The objection to relevance/geographic scope is not supported. This Court has already ruled that Defendants' conduct outside of Cabell/Huntington "is generally relevant to Defendants' conduct within the Track [Two] Counties." *See* ECF 1297, at 10. The information at issue provides notice of systemic failures with McKesson's national policies and procedures, diversion, over-shipping of opioids without proper monitoring or reporting, and/or opioid harms. Moreover, the witness's/McKesson's notice, knowledge, understanding and/or mindset regarding the deficiencies and/or harms apply equally or similarly to Cabell/Huntington. | | | | | | | | | | | | |
| 443 | 7 | 443 | 14 | Foundation; calls for speculation; lacks relevance/geographic scope as Judy's Drugs is not in Huntington/Cabell; questioning is based on hearsay statements in video created by Plaintiffs' for use in deposition. See **Attachment A.** **The video is not a proper demonstrative, as it does not** | | Same as above. Also, the objections to foundation and speculation are objections to form which were not made during the deposition, and are thus waived. | | | | | | | | | | | | |
| 446 | 7 | 447 | 9 | Foundation; hearsay; hearsay within hearsay; lacks relevance/geographic scope as the hearsay allegations in the document do not relate to any pharmacies located in Huntington-Cabell. | | The foundation objection is not supported because the witness had the background, knowledge, experience and role sufficient to testify on this matter (as McKesson's VP of Regulatory Affairs and Compliance, and prior to that, as a Senior Director of Regulatory Affairs, including responsibility to understand distribution, diversion, over-supply and opioid harms, as well as to implement and enhance McKesson's CSMP to address same). *See e.g* ., Dep. at 15:18-25, 16:2-12, 18:12-23, 23:10-15, 24:20-25:1, 493:24-495:3. Moreover, the witness testified that he was familiar with the material at issue (e.g., diversion, over-supply/distribution, opioid addiction, opioid deaths, opioid harms). The hearsay objection is not supported, as the questioning can stand on its own, with the exhibit/letter used for demonstrative purposes (particularly since the witness knew aobut the underlying matters). Moreover, hearsay is inapplicable pursuant to FRE 803(8) and/or FRE 807. Additionally, hearsay is not applicable because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind relative to: shipping suspicious orders, diversion, over-supply/distribution, policy/procedure deficiencies, opioid harms, and other relevant matters). This also cures any alleged hearsay within hearsay. *See* FRE 805. The objection to relevance/geographic scope is not supported. This Court has already ruled that Defendants' conduct outside of Cabell/Huntington "is generally relevant to Defendants' conduct within the Track [Two] Counties." *See* ECF 1297, at 10. The information at issue provides notice of systemic failures with McKesson's national policies and procedures, over-shipping of opioids without proper monitoring or reporting, and/or opioid harms. Moreover, the witness's/McKesson's notice, knowledge, understanding and/or mindset regarding the deficiencies and/or harms apply equally or similarly to Cabell/Huntington. | | | | | | | | | | | | |
| 447 | 11 | 448 | 3 | Foundation; hearsay; hearsay within hearsay; lacks relevance/geographic scope as the hearsay allegations in the document do not relate to any pharmacies located in Huntington-Cabell. | | Same as above. | | | | | | | | | | | | |
| 448 | 5 | 448 | 7 | Foundation; hearsay; hearsay within hearsay; lacks relevance/geographic scope as the hearsay allegations in the document do not relate to any pharmacies located in Huntington-Cabell. | | Same as above. | | | | | | | | | | | | |
| 450 | 20 | 451 | 16 | Foundation; hearsay; hearsay within hearsay; lacks relevance/geographic scope as the hearsay allegations in the document do not relate to any pharmacies located in Huntington-Cabell. | | Same as above. | | | | | | | | | | | | |
| 452 | 13 | 453 | 6 | Foundation; hearsay; hearsay within hearsay; lacks relevance/geographic scope as the hearsay allegations in the document do not relate to any pharmacies located in Huntington-Cabell. | | Same as above. | | | | | | | | | | | | |
| 453 | 8 | 453 | 23 | Foundation; hearsay; hearsay within hearsay; lacks relevance/geographic scope as the hearsay allegations in the document do not relate to any pharmacies located in Huntington-Cabell. | | Same as above. Also, the objection to foundation is an objection to form which was not made during the deposition relative to nearly all of the quesitons/answers in this designation (453:9-23), and are thus waived relative to same. Further, the witness testified that he was aware of the numbers at issue. *See* Dep. at 453:10-15. | | | | | | | | | | | | |

| WITNESS NAME | Hartle, Nathan (fact) |
|---|---|
| DEPOSITION DA | 8/1/2018 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | | Page/Line End | | Objections | Objection Notes | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections |
| 454 | 3 | 454 | 7 | Foundation; hearsay; hearsay within hearsay; lacks relevance/geographic scope as the hearsay allegations in the document do not relate to any pharmacies located in Huntington-Cabell. | | The foundation objection is not supported because the witness had the background, knowledge, experience and role sufficient to testify on this matter (as McKesson's VP of Regulatory Affairs and Compliance, and prior to that, as a Senior Director of Regulatory Affairs, including responsibility to understand distribution, diversion, over-supply and opioid harms, as well as to implement and enhance McKesson's CSMP to address same). See e.g., Dep. at 15:18-25, 16:2-12, 18:12-23, 23:10-15, 24:20-25:1, 493:24-495:3. Moreover, the witness testified that he was familiar with the material at issue (e.g., diversion, over-supply/distribution, opioid addiction, opioid deaths, opioid harms). The hearsay objection is not supported, as the questioning can stand on its own, with the exhibit/letter used for demonstrative purposes (particularly since the witness knew aobut the underlying matters). Moreover, hearsay is inapplicable pursuant to FRE 803(8) and/or FRE 807. Additionally, hearsay is not applicable because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind relative to: shipping suspicious orders, diversion, over-supply/distribution, policy/procedure deficiencies, opioid harms, and other relevant matters). This also cures any alleged hearsay within hearsay. See FRE 805. The objection to relevance/geographic scope is not supported. This Court has already ruled that Defendants' conduct outside of Cabell/Huntington "is generally relevant to Defendants' conduct within the Track [Two] Counties." See ECF 1297, at 10. The information at issue provides notice of systemic failures with McKesson's national policies and procedures, over-shipping of opioids without proper monitoring or reporting, and/or opioid harms. Moreover, the witness's/McKesson's notice, knowledge, understanding and/or mindset regarding the deficiencies and/or harms apply equally or similarly to Cabell/Huntington. | | | | | | | | | | | | |
| 454 | 13 | 455 | 1 | Foundation; hearsay; hearsay within hearsay; lacks relevance/geographic scope as the hearsay allegations in the document do not relate to any pharmacies located in Huntington-Cabell. | | Same as above. | | | | | | | | | | | | |
| 455 | 3 | 455 | 25 | Foundation; hearsay; hearsay within hearsay; lacks relevance/geographic scope as the hearsay allegations in the document do not relate to any pharmacies located in Huntington-Cabell. | | Same as above. | | | | | | | | | | | | |
| 456 | 2 | 456 | 2 | Foundation; hearsay; hearsay within hearsay; lacks relevance/geographic scope as the hearsay allegations in the document do not relate to any pharmacies located in Huntington-Cabell. | | Same as above. | | | | | | | | | | | | |
| 457 | 1 | 457 | 4 | Calls for speculation. Foundation; hearsay; hearsay within hearsay; lacks relevance/geographic scope as the hearsay allegations in the document do not relate to any pharmacies located in Huntington-Cabell. | | Same as above. | | | | | | | | | | | | |
| 457 | 6 | 457 | 8 | Foundation; hearsay; hearsay within hearsay; lacks relevance/geographic scope as the hearsay allegations in the document do not relate to any pharmacies located in Huntington-Cabell. | | Same as above. | | | | | | | | | | | | |
| 465 | 17 | 465 | 25 | Foundation; hearsay; hearsay within hearsay; lacks relevance/geographic scope as the hearsay allegations in the document do not relate to any pharmacies located in Huntington-Cabell. | | Same as above. | | | | | | | | | | | | |
| 466 | 11 | 466 | 16 | Foundation; hearsay; hearsay within hearsay; lacks relevance/geographic scope as the hearsay allegations in the document do not relate to any pharmacies located in Huntington-Cabell. | | Same as above. | | | | | | | | | | | | |
| 467 | 9 | 467 | 11 | Argumentative. Foundation; hearsay; hearsay within hearsay; lacks relevance/geographic scope as the hearsay allegations in the document do not relate to any pharmacies located in Huntington-Cabell. | | The argumentative objection is inapplicable, as the question was asked seeking the witness's perspective, particularly in his role leading McKesson's regulatory compliance. Also, the witness understood and was able to respond to the question. Further, to the extent any alleged argument is present, the Court can properly consider, account for and/or weigh same in this bench trial. The foundation objection is not supported because the witness had the background, knowledge, experience and role sufficient to testify on this matter (as McKesson's VP of Regulatory Affairs and Compliance, and prior to that, as a Senior Director of Regulatory Affairs, including responsibility to understand distribution, diversion, over-supply and opioid harms, as well as to implement and enhance McKesson's CSMP to address same). See e.g., Dep. at 15:18-25, 16:2-12, 18:12-23, 23:10-15, 24:20-25:1, 493:24-495:3. Moreover, the witness testified that he was familiar with the material at issue (e.g., diversion, over-supply/distribution, opioid addiction, opioid deaths, opioid harms). The hearsay objection is not supported, as the questioning can stand on its own, with the exhibit/letter used for demonstrative purposes (particularly since the witness knew aobut the underlying matters). Moreover, hearsay is inapplicable pursuant to FRE 803(8) and/or FRE 807. Additionally, hearsay is not applicable because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind relative to: shipping suspicious orders, diversion, over-supply/distribution, policy/procedure deficiencies, opioid harms, and other relevant matters). This also cures any alleged hearsay within hearsay. See FRE 805. The objection to relevance/geographic scope is not supported. This Court has already ruled that Defendants' conduct outside of Cabell/Huntington "is generally relevant to Defendants' conduct within the Track [Two] Counties." See ECF 1297, at 10. The information at issue provides notice of systemic failures with McKesson's national policies and procedures, over-shipping of opioids without proper monitoring or reporting, and/or opioid harms. Moreover, the witness's/McKesson's notice, knowledge, understanding and/or mindset regarding the deficiencies and/or harms apply equally or similarly to Cabell/Huntington. | | | | | | | | | | | | |

| WITNESS NAME | Hartle, Nathan (fact) |
|---|---|
| DEPOSITION DA | 8/1/2018 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | | Page/Line End | | Objections | Objection Notes | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections |
| 467 | 13 | 467 | 14 | Argumentative. Foundation; hearsay; hearsay within hearsay; lacks relevance/geographic scope as the hearsay allegations in the document do not relate to any pharmacies located in Huntington-Cabell. | | Same as above. | | | | | | | | | | | | |
| 468 | 21 | 469 | 3 | Argumentative. Foundation; hearsay; hearsay within hearsay; lacks relevance/geographic scope as the hearsay allegations in the document do not relate to any pharmacies located in Huntington-Cabell. | | Same as above. | | | | | | | | | | | | |
| 469 | 5 | 469 | 8 | Argumentative. Foundation; hearsay; hearsay within hearsay; lacks relevance/geographic scope as the hearsay allegations in the document do not relate to any pharmacies located in Huntington-Cabell. | | Same as above. | | | | | | | | | | | | |
| 469 | 14 | 469 | 19 | Argumentative. Foundation; hearsay; hearsay within hearsay; lacks relevance/geographic scope as the hearsay allegations in the document do not relate to any pharmacies located in Huntington-Cabell. | | Same as above. | | | | | | | | | | | | |
| 469 | 21 | 470 | 2 | Argumentative. Foundation; hearsay; hearsay within hearsay; lacks relevance/geographic scope as the hearsay allegations in the document do not relate to any pharmacies located in Huntington-Cabell. | | Same as above. | | | | | | | | | | | | |
| 471 | 5 | 472 | 6 | Argumentative. Foundation; hearsay; hearsay within hearsay; lacks relevance/geographic scope as the hearsay allegations in the document do not relate to any pharmacies located in Huntington-Cabell. | | Same as above. | | | | | | | | | | | | |
| 472 | 10 | 472 | 22 | Argumentative. Foundation; hearsay; hearsay within hearsay; lacks relevance/geographic scope as the hearsay allegations in the document do not relate to any pharmacies located in Huntington-Cabell. | | Same as above. | | | | | | | | | | | | |
| 472 | 24 | 473 | 1 | Argumentative. Foundation; hearsay; hearsay within hearsay; lacks relevance/geographic scope as the hearsay allegations in the document do not relate to any pharmacies located in Huntington-Cabell. | | Same as above. | | | | | | | | | | | | |
| 478 | 12 | 478 | 13 | Foundation; hearsay - document is a 2011 Charleston Gazette article; geographic scope - news paper article relates to Williamson, WV. | | The objection to foundation is an objection to form which was not made during the depositon, and is thus waived. Moreover, the topics at issue (prescription drug abuse, transitioning from prescription opioids to heroin, etc.) are within the witness's knowlege, experience and responsibilities (as McKesson's VP of Regulatory Affairs and Compliance, and prior to that McKesson's Sr. Director of Regulatory Affairs). *See e.g.* , Dep. at 15:18-25, 16:2-12, 18:12-23, 23:10-15, 24:20-25:1, 493:24-495:3. Hearsay is not applicable because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind relative to: transition to heroin, diversion, opioid abuse, and other relevant matters). The geographic scope objection is not supported, as the witness's/McKesson's notice, knowledge, understanding and/or state of mind relative to these matters were national in scope (as were their related policies/procedures), all of which apply to Cabell/Huntington. | | | | | | | | | | | | |
| 478 | 17 | 479 | 8 | Foundation; hearsay - document is a 2011 Charleston Gazette article; geographic scope - news paper article relates to Williamson, WV. | | Same as above. | | | | | | | | | | | | |
| 479 | 21 | 481 | 7 | Foundation; hearsay - document is a 2011 Charleston Gazette article; geographic scope - news paper article relates to Williamson, WV. Objection to 480:15-481:7 - Calls for expert testimony; lacks foundation; stated opinion based on hearsay. While the witness testified he generally stays current on news, that is not evidence he was on "notice" of a specific article published a year prior to him joining McKesson. | | The objection to foundation is an objection to form which was not made during the depositon for nearly all of the questions/answers in this designation (479:21-480:25), and is thus waived relative to same. Moreover, the topic at issue (transitioning from prescription opioids to heroin) is within the witness's knowlege, experience and responsibilities (as McKesson's VP of Regulatory Affairs and Compliance, and prior to that McKesson's Sr. Director of Regulatory Affairs). *See e.g.* , Dep. at 15:18-25, 16:2-12, 18:12-23, 23:10-15, 24:20-25:1, 493:24-495:3. In fact, the witness has authored/given presentations involving this topic for years. *See e.g.* , Dep. Exhs. 42 (at pp. 4 & 16), and 43 (at p. 2). *See also* , Dep. at 480:15-25. Hearsay is not applicable because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind relative to: transition to heroin and other relevant matters). The geographic scope objection is not applicable, as the witness's/McKesson's notice, knowledge, understanding and/or state of mind relative to these matters were national in scope (as were their related policies/procedures), all of which apply to Cabell/Huntington. The expert testimony and foundation objections are not supported as the witness had the background, experience and responsibility (as set-forth above) to present and/or testify on these matters, which is what he did with the aforementioned PowerPoints he authored and his testimony herein. In fact, the witness testified that he keeps "current" on this type of information. *See* Dep. at 38:4-7. Moreover, the witness's testimony is admissible pursuant to FRE 701. | | | | | | | | | | | | |
| 481 | 10 | 481 | 12 | Calls for expert testimony; lacks foundation; stated opinion based on hearsay. | | With the exception of the objection waiver argument, same as above. | | | | | | | | | | | | |