Walker, Donald
January 10, 2019

| WITNESS NAME: | Walker, Donald |
| DEPOSITION DATE: | 1/10/2019 |

**AFFIRMATIVE DEPOSITION DESIGNATIONS** | **COUNTER DESIGNATIONS** * Pink = Completeness Designation | **REPLY DESIGNATIONS** * Pink = Completeness Designation

| Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Begin | End | Begin | End | | | Begin | End | Begin | End | | | Begin | End | Begin | End | | |
| 15 | 10 | 15 | 21 | | n/a | 17 | 20 | 18 | 8 | | | 19 | 5 | 19 | 10 | | n/a |
| 16 | 11 | 16 | 18 | | n/a | 18 | 10 | 19 | 4 | Answer at 19:2-4 is non-responsive to question asked | The answer is responsive. | 159 | 19 | 159 | 24 | | n/a |
| 16 | 22 | 17 | 4 | | n/a | 21 | 15 | 21 | 18 | Relevance | Plaintiffs affirmatively designated testimony regarding responsibility for Six Sigma at 21:14. This completeness designation is relevant given that designation. | 199 | 25 | 200 | 5 | Designation covers only an attorney question which was withdrawn without an answer, making the designation improper attorney narrative. | This designation is the question which is continued at 200:8, and answered at 200:9-10, all of which is now designated. This designation provides context and completeness to the question and answer (at 200:8-10) which confirms that this is the witness's slide. |
| 17 | 14 | 17 | 19 | | n/a | | | | | | | 236 | 10 | 236 | 14 | | n/a |
| 19 | 11 | 20 | 14 | | n/a | | | | | | | 236 | 18 | 236 | 21 | | n/a |
| 20 | 16 | 20 | 20 | | n/a | | | | | | | 336 | 11 | 336 | 16 | | n/a |
| 20 | 25 | 21 | 4 | | n/a | | | | | | | 336 | 19 | 337 | 2 | | n/a |
| 21 | 10 | 21 | 14 | | n/a | 53 | 9 | 53 | 15 | Misstates the terms of the 2017 settlement agreement, which the Court has introduced into evidence and can evaluate directly. Lacks foundation, as the witness testifies that he had retired prior to that settlement agreement being signed. | | 347 | 8 | 347 | 10 | Misstates the terms of the 2017 settlement agreement, which the Court has introduced into evidence and can evaluate directly. Lacks foundation, as the witness testifies that he had retired prior to that settlement agreement being signed. | The operative fact of the 2017 settlement (i.e., that McKesson's fine was $150 million) is in evidence and is accurately stated in the question. See P-42554 (2017 settlement); 5/24/2021 Trial Tr. at 107:18-109:3. As such, the foundation for the question has been established. Also, the witness confirmed that he was knowledgeable about the settlement. See Dep. at 347:17 ("I understand that McKesson paid $150 million."). Additionally, as McKesson's Senior VP of Distribution in charge of regulatory affairs from 2005-2015 (which, as testified to by the witness, included the overall responsibility to ensure that McKesson was complying with the regulations associated with the handling and distribution of controlled substances), the witness had the required background, experience and job responsibilities to warrant the questioning. See Dep. at 21:2-14, 22:1-9. Moreover, the questioning at issue did not require the witness to be intimately familiar with the settlement, but rather only the overall amount of the fine (which the witness testified he knew). Further, any alleged misstatement can be properly considered, accounted for, and/or weighed by the Court in this bench trial. |
| 21 | 22 | 22 | 9 | | n/a | 53 | 17 | 53 | 20 | | | 347 | 14 | 347 | 17 | Please see objection above. | Same response as above. |
| 38 | 5 | 38 | 9 | | n/a | 57 | 24 | 58 | 5 | | | 365 | 12 | 365 | 22 | | |
| 38 | 11 | 38 | 14 | | n/a | 75 | 20 | 76 | 1 | | | 366 | 11 | 366 | 21 | | |
| 40 | 5 | 40 | 9 | | n/a | 76 | 8 | 76 | 16 | | | 406 | 21 | 407 | 2 | | |
| 40 | 15 | 40 | 22 | | n/a | 76 | 19 | 76 | 25 | | | 411 | 25 | 412 | 3 | | |
| 40 | 24 | 41 | 8 | Exhibit is hearsay and contains hearsay-within-hearsay. As an internal DEA memo, exhibit cannot have provided notice to McKesson. Lacks relevance/geographic scope as it relates to internet pharmacies in Florida. | The hearsay objection is not supported as this is an exception pursuant to FRE 803(8). Hearsay is also not applicable because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind regarding: applicable distribution regulations, the DEA's interpretation and/or enforcement of same, systemic problems with McKesson policies, McKesson's need to "review in-depth the purchasing patterns and quantities of their customers", diversion, oversupply to customers, etc.). With respect to notice, it was established that this document was sent to McKesson. In fact, the witness confirmed his knowledge and receipt of the document, and that it came from his own files. See 1/10/2019 D. Walker deposition ("Dep.") at 41:5-8. McKesson further confirmed receipt by stipulating that this exhibit could be introduced "without the use of a sponsoring witness at trial". See ECF No. 1166 at 1, and 5 (MCKMDL00496859, 9th row from bottom). Additionally, the objection to form which was not made during the deposition, and is thus waived. The geographic scope objection is not supported. The Court has previously overruled this Florida-related relevance/geographic scope objection. See e.g., 6/8/2021 Trial Tr. at 11:17-23. McKesson's notice, knowledge, understanding and/or state of mind regarding these matters (e.g., systemic issues with its nationwide policies/procedures, systemic oversupply of opioids to customers, the national regulations, DEA's interpretation/enforcement, etc.), apply to Cabell/Huntington. The witness himself testified to same. See Dep. at 89:1-3 ("Our system was a national system. So, yes, anything that occurred in Florida would have been consistent across the country."). | 79 | 17 | 79 | 19 | | | 412 | 6 | 413 | 7 | Relevance - Geographic scope (relates to a Florida pharmacy in 2006) | This Court has already ruled that Defendants' conduct outside of Cabell/Huntington "is generally relevant to Defendants' conduct within the Track [Two] Counties." See ECF 1297, at 10. In fact, the Court has previously overruled this out-of-state relevance/geographic scope objection, and has done so relative to Florida. See e.g., 5/24/2021 Trial Tr. at 83:8-84:14; 6/7/2021 Trial Tr. at 203:16-22; 6/8/2021 Trial Tr. at 11:17-23 ("I'm going to overrule that objection for the reasons I overruled the similar objection yesterday during Mr. Rannazzisi's testimony. I think it -- it embraces the entire situation here with regard to McKesson, which would include the geographic area issue here."). Additionally, issues with McKesson's policies/procedures applied nationally, as confirmed by the witness. See Dep. at 89:1-3 ("Our system was a national system. So, yes, anything that occurred in Florida would have been consistent across the country."). |
| 41 | 15 | 42 | 22 | Objection to questioning on and reading into the record hearsay from an internal DEA memo and asking witness to agree with the truth. Witness confirms at 51:9-13 that he did not attend the meeting, and McKesson could not have be on notice of an internal DEA memo. | Same as above. Also, while the witness may not have been at the meeting, it was established that this document was sent to McKesson, and the witness confirmed his knowledge and receipt of the document (including that it came from his own files). See Dep. at 41:5-8. Further, the questioning seeks the witness's understanding and/or perspective of the information and notice provided in this document that he previously received and reviewed. Additionally, the objection to the questioning on alleged hearsay is an objection to form which was not made during the deposition, and is thus waived. | 79 | 21 | 79 | 24 | | | 415 | 18 | 415 | 21 | Relevance - Geographic scope (relates to a Florida pharmacy in 2006) | Same response as above. |
| 42 | 25 | 43 | 10 | Objection to questioning on and reading into the record hearsay from an internal DEA memo. | n/a | 81 | 2 | 81 | 6 | Improper and incomplete designation; no question and answer designated | Plaintiffs designated testimony before and after this designation. The designation is intended to make clear that the witnesses' prior answer was interrupted by counsel, so as to provide context for the incomplete response designated by plaintiffs. | 415 | 23 | 418 | 11 | | n/a |

Walker, Donald
January 10, 2019

| WITNESS NAME: | Walker, Donald |
| DEPOSITION DATE: | 1/10/2019 |

**AFFIRMATIVE DEPOSITION DESIGNATIONS** | **COUNTER DESIGNATIONS** * Pink = Completeness Designation | **REPLY DESIGNATIONS** * Pink = Completeness Designation

| Page/Line Begin | Page/Line End | Objections (Affirmative) | Replies to Objections (Affirmative) | Page/Line Begin | Page/Line End | Objections (Counter) | Replies to Objections (Counter) | Page/Line Begin | Page/Line End | Objections (Reply) | Replies to Objections (Reply) |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 44 / 11 | 44 / 24 | Objection to questioning on and reading into the record hearsay from an internal DEA memo and asking witness to agree with the truth. Witness confirms at 51:9-13 that he did not attend the meeting, and McKesson could not have be on notice of an internal DEA memo. Additional Objection to 44:21-24 - Calls for speculation. | The objection to questioning using alleged hearsay is an objection to form which was not made during the deposition for nearly all of the designation (44:11-44:20), and is thus waived relative to same. Moreover, the hearsay objection is not supported as this is an exception pursuant to FRE 803(8). Hearsay is also not applicable because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind regarding: applicable distribution regulations, the DEA's interpretation and/or enforcement of same, systemic issues with McKesson policies/procedures, McKesson's need to "review in-depth the purchasing patterns and quantities of their customers", diversion, etc.). With respect to notice, it was established that this document was sent to McKesson. In fact, the witness confirmed his knowledge and receipt of the document, and that it came from his own files. See Dep. at 41:5-8. McKesson further confirmed receipt by stipulating that this exhibit could be introduced "without the use of a sponsoring witness at trial". See ECF No. 1166 at 1, and 5 (MCKMDL00496859, 9th row from bottom). The questioning seeks the witness's understanding and/or perspective of the information and notice provided in this document that he previously received and reviewed. As for the speculation objection (relative to 44:21-24), the witness had the background, knowledge, experience, and job responsibilities sufficient to answer the question, particularly since he received the document and the questioning focuses on his understanding and state of mind regarding same. Further, the witness's answer shows that he is not speculating relative to McKesson's role. See Dep. at 45:2-4. | 82 / 20 | 82 / 25 | Answer is non-responsive to question asked | The answer is responsive to the question asked. | 420 / 11 | 420 / 13 | Argumentative; improper attorney narrative. | The objections to argument and improper narrative are objections to form which were not made during the deposition, and are thus waived. Moreover, the question identifies the exhibit (Dep. Exh. 730) which was presented to the witness directly in response to the witness's statement that McKesson was "diligent in executing against the program". See Dep. at 420:8-9. And, the question tracked the witness's same verbage. |
| 45 / 2 | 45 / 4 | Calls for speculation. Witness responds at 45:8-10 that he does not know the meaning of DEA's phrase in an internal DEA memo. | Speculation is an objection to form which was not made during the deposition relative to this designation, and is thus waived. Moreover, regardless of the witness's response at 45:8-10, the witness testified here to his knowledge and understanding of the fact that McKesson's role in the chain is supplying pharmacies. | 83 / 21 | 83 / 24 | | | 420 / 21 | 421 / 9 | | n/a |
| 45 / 25 | 47 / 15 | Objection to questioning on and reading into the record hearsay from an internal DEA memo and asking witness to agree with the truth. Witness confirms at 51:9-13 that he did not attend the meeting, and McKesson could not have be on notice of an internal DEA memo. | The objection to questioning using alleged hearsay is an objection to form which was not made during the deposition for most of the designation (45:25-47:1), and is thus waived relative to same. Moreover, the hearsay objection is not supported as this is an exception pursuant to 803(8). Hearsay is also not applicable because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind regarding: applicable distribution regulations, the DEA's interpretation and/or enforcement of same, systemic issues with McKesson policies/procedures, McKesson's need to "review in-depth the purchasing patterns and quantities of their customers", diversion, etc.). With respect to notice, it was established that this document was sent to McKesson. In fact, the witness confirmed his knowledge and receipt of the document, and that it came from his own files. See Dep. at 41:5-8. McKesson further confirmed receipt by stipulating that this exhibit could be introduced "without the use of a sponsoring witness at trial". See ECF No. 1166 at 1, and 5 (MCKMDL00496859, 9th row from bottom). The questioning seeks the witness's understanding and/or perspective of the information and notice provided in this document that he previously received and reviewed. | 84 / 1 | 84 / 2 | | | 421 / 11 | 422 / 9 | Relevance - Geographic scope (relates to an audit of the Delran, NJ facility, which does not service West Virginia customers.) | This Court has already ruled that Defendants' conduct outside of Cabell/Huntington "is generally relevant to Defendants' conduct within the Track [Two] Counties." See ECF 1297, at 10. In fact, the Court has previously overruled this out-of-state relevance/geographic scope objection. See e.g., 5/24/2021 Trial Tr. at 83:8-84:14; 6/7/2021 Trial Tr. at 203:16-22; 6/8/2021 Trial Tr. at 11:17-23 ("I'm going to overrule that objection for the reasons I overruled the similar objection yesterday during Mr. Rannazzisi's testimony. I think it -- it embraces the entire situation here with regard to McKesson, which would include the geographic area issue here."). Additionally, issues with McKesson's policies/procedures applied nationally, as confirmed by the witness. See Dep. at 89:1-3 ("Our system was a national system. So, yes, anything that occurred in Florida would have been consistent across the country."). |
| 47 / 18 | 48 / 12 | Objection to questioning on and reading into the record hearsay from an internal DEA memo and asking witness to agree with the truth. Witness confirms at 51:9-13 that he did not attend the meeting, and McKesson could not have be on notice of an internal DEA memo. | With the exception of the objection waiver argument (which only applies herein for 47:18-48:5), same response as above. | 84 / 4 | 84 / 7 | | | 423 / 1 | 424 / 21 | Relevance - Geographic scope (relates to audits of distribution centers in Pennsylvania and Texas, which do not service Huntington-Cabell). | Same response as above. |
| 48 / 15 | 48 / 19 | Objection to questioning on and reading into the record hearsay from an internal DEA memo and asking witness to agree with the truth. Witness confirms at 51:9-13 that he did not attend the meeting, and McKesson could not have be on notice of an internal DEA memo. | The hearsay objection is not supported as this is an exception pursuant to FRE 803(8). Hearsay is also not applicable because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind regarding: applicable distribution regulations, the DEA's interpretation and/or enforcement of same, systemic issues with McKesson policies/procedures, McKesson's need to "review in-depth the purchasing patterns and quantities of their customers", diversion, etc.). With respect to notice, it was established that this document was sent to McKesson. In fact, the witness confirmed his knowledge and receipt of the document, and that it came from his own files. See Dep. at 41:5-8. McKesson further confirmed receipt by stipulating that this exhibit could be introduced "without the use of a sponsoring witness at trial". See ECF No. 1166 at 1, and 5 (MCKMDL00496859, 9th row from bottom). The questioning seeks the witness's understanding and/or perspective of the information and notice provided in this document that he previously received and reviewed. | 84 / 10 | 84 / 10 | | | 424 / 23 | 425 / 7 | | n/a |
| 48 / 21 | 48 / 22 | Objection to questioning on and reading into the record hearsay from an internal DEA memo and asking witness to agree with the truth. Witness confirms at 51:9-13 that he did not attend the meeting, and McKesson could not have be on notice of an internal DEA memo. | Same response as above. | 84 / 12 | 84 / 13 | | | 425 / 12 | 425 / 17 | | n/a |
| 48 / 24 | 48 / 25 | Objection to questioning on and reading into the record hearsay from an internal DEA memo and asking witness to agree with the truth. Witness confirms at 51:9-13 that he did not attend the meeting, and McKesson could not have be on notice of an internal DEA memo. | Same response as above. | 102 / 7 | 102 / 13 | | | 425 / 25 | 426 / 15 | Assumes facts not in evidence; lacks foundation. | These are objections to form which were not made during the deposition, and are thus waived. Moreover, the operative facts at issue were already established. The witness himself testified extensively that he (and other McKesson representatives) met with and gave a presentation to the DEA in 2008. See e.g., Dep. at 396:7-400:4. Also, other exhibits and testimony establish that McKesson: gave customers threshold increases based on Thanksgiving, gave 30% threshold increases to over 200 stores for various national accounts (including CVS), gave threshold increases with a 1-day turnaround. See 8/17/2018 D. Gustin deposition (Gustin Dep.) at 405:3-407:2, 412:3-24. See also, Gustin Dep. Exh. 639 (P-42516), Gustin Dep. Exh. 634 (P-42626). |
| 49 / 2 | 49 / 3 | Objection to questioning on and reading into the record hearsay from an internal DEA memo and asking witness to agree with the truth. Witness confirms at 51:9-13 that he did not attend the meeting, and McKesson could not have be on notice of an internal DEA memo. | Same response as above. | 104 / 2 | 104 / 7 | Subsequent answer is non-responsive to question asked | Answer is responsive. | 426 / 21 | 426 / 25 | Assumes facts not in evidence; lacks foundation. | Same response as above, with the exception of waiver of objections. |

Walker, Donald
January 10, 2019

| WITNESS NAME: | Walker, Donald |
| DEPOSITION DATE: | 1/10/2019 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections |
| Begin | | End | | | | Begin | | End | | | | Begin | | End | | | |
| 49 | 12 | 49 | 14 | Objection to questioning on and reading into the record hearsay from an internal DEA memo and asking witness to agree with the truth. Witness confirms at 51:9-13 that he did not attend the meeting, and McKesson could not have be on notice of an internal DEA memo. | Same response as above. | 104 | 9 | 104 | 12 | Answer is non-responsive to question asked | Answer is responsive. | 427 | 3 | 427 | 15 | Assumes facts not in evidence; lacks foundation. | Same response as above, with the exception of waiver of objections. |
| 49 | 16 | 49 | 17 | Objection to questioning on and reading into the record hearsay from an internal DEA memo and asking witness to agree with the truth. Witness confirms at 51:9-13 that he did not attend the meeting, and McKesson could not have be on notice of an internal DEA memo. | Same response as above. | 104 | 23 | 104 | 25 | | | 427 | 17 | 427 | 18 | Assumes facts not in evidence; lacks foundation. | Same response as above, with the exception of waiver of objections. |
| 49 | 19 | 49 | 22 | Objection to questioning on and reading into the record hearsay from an internal DEA memo and asking witness to agree with the truth. Witness confirms at 51:9-13 that he did not attend the meeting, and McKesson could not have be on notice of an internal DEA memo. | Same response as above. | 105 | 2 | 105 | 5 | | | 432 | 20 | 433 | 4 | Misstates the terms of the 2017 settlement agreement, which the Court has introduced into evidence and can evaluate directly. Lacks foundation, as the witness testifies that he had retired prior to that settlement agreement being signed. | The operative facts of the 2017 settlement (i.e., that McKesson's fine was $150 million, and that it covered conduct from 2009-2017) is in evidence and is accurately stated in the question. See P-42554 (2017 settlement); 5/24/2021 Trial Tr. at 107:18-109:3. As such, the foundation for the question has been established. Also, the witness confirmed that he was knowledgeable about the settlement. See Dep. at 347:17 ("I understand that McKesson paid $150 million."). Additionally, as McKesson's Senior VP of Distribution in charge of regulatory affairs from 2005-2015 (which, as testified to by the witness, included the overall responsibility to ensure that McKesson was complying with the regulations associated with the handling and distribution of controlled substances), the witness had the required background, experience and job responsibilities to warrant the questioning. See Dep. at 21:2-14, 22:1-9. Moreover, the questioning at issue did not require the witness to be intimately familiar with the settlement, but rather only the overall amount of the fine (which the witness testified he knew) and general time period covered (which was public knowledge). Further, any alleged misstatement can be properly considered, accounted for, and/or weighed by the Court in this bench trial. |
| 49 | 24 | 49 | 25 | Objection to questioning on and reading into the record hearsay from an internal DEA memo and asking witness to agree with the truth. Witness confirms at 51:9-13 that he did not attend the meeting, and McKesson could not have be on notice of an internal DEA memo. | Same response as above. | 109 | 6 | 109 | 10 | | | 433 | 7 | 433 | 7 | Misstates the terms of the 2017 settlement agreement, which the Court has introduced into evidence and can evaluate directly. Lacks foundation, as the witness testifies that he had retired prior to that settlement agreement being signed. | Same response as above. |
| 50 | 2 | 50 | 17 | Objection to questioning on and reading into the record hearsay from an internal DEA memo and asking witness to agree with the truth. Witness confirms at 51:9-13 that he did not attend the meeting, and McKesson could not have be on notice by an internal DEA memo. Lacks relevance/geographic scope as it relates to Florida pharmacies. | The objection to questioning using alleged hearsay is an objection to form which was not made during the deposition for this designation, and is thus waived relative to same. Moreover, the hearsay objection is not supported as this is an exception pursuant to FRE 803(8). Hearsay is also not applicable because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind regarding: applicable distribution regulations, the DEA's interpretation and/or enforcement of same, McKesson's need to "review in-depth the purchasing patterns and quantities of their customers", diversion, etc.). With respect to notice, it was established that this document was sent to McKesson. In fact, the witness confirmed his knowledge and receipt of the document, and that it came from his own files. See Dep. at 41:5-8. McKesson further confirmed receipt by stipulating that this exhibit could be introduced "without the use of a sponsoring witness at trial". See ECF No. 1166 at 1, and 5 (MCKMDL00496859, 9th row from bottom). The questioning seeks the witness's understanding and/or perspective of the information and notice provided in this document that he previously received and reviewed. The geographic scope objection is not supported. The Court has previously overruled this Florida-related relevance/geographic scope objection. See e.g., 6/8/2021 Trial Tr. at 11:17-23. McKesson's notice, knowledge, understanding and/or state of mind regarding these matters (e.g., systemic issues with its nationwide policies/procedures, systemic oversupply of opioids to customers, the national regulations, DEA's interpretation/enforcement, etc.), apply to Cabell/Huntington. The witness himself testified to same. See Dep. at 89:1-3 ("Our system was a national system. So, yes, anything that occurred in Florida would have been consistent across the country."). | 109 | 12 | 109 | 15 | | | 433 | 10 | 433 | 15 | Misstates the terms of the 2017 settlement agreement, which the Court has introduced into evidence and can evaluate directly. Lacks foundation, as the witness testifies that he had retired prior to that settlement agreement being signed. | Same response as above. |
| 50 | 24 | 51 | 7 | Objection to questioning on and reading into the record hearsay from an internal DEA memo and asking witness to agree with the truth. Witness confirms at 51:9-13 that he did not attend the meeting, and McKesson could not have be on notice of an internal DEA memo. Lacks relevance/geographic scope as it relates to Florida pharmacies. | With the exception of the objection waiver argument, same response as above. | 110 | 2 | 110 | 5 | Subsequent answer is non-responsive to question asked | Answer is responsive. | 435 | 15 | 435 | 21 | Misstates the terms of the 2017 settlement agreement, which the Court has introduced into evidence and can evaluate directly. Lacks foundation, as the witness testifies that he had retired prior to that settlement agreement being signed. | Same response as above. |

Walker, Donald
January 10, 2019

WITNESS NAME: Walker, Donald
DEPOSITION DATE: 1/10/2019

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | Page/Line End | Objections | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Replies to Objections |
| 51  9 | 52  11 | Objection to questioning on and reading into the record hearsay from an internal DEA memo and asking witness to agree with the truth.  Witness confirms at 51:9-13 that he did not attend the meeting, and McKesson could not have be on notice of an internal DEA memo.  Lacks relevance/geographic scope as it relates to Florida pharmacies. | The objection to questioning using alleged hearsay is an objection to form which was not made during the deposition for most of the designation (51:15-52:11), and is thus waived relative to same.  Moreover, the hearsay objection is not supported as this is an exception pursuant to FRE 803(8).  Hearsay is also not applicable because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind regarding: applicable distribution regulations, the DEA's interpretation and/or enforcement of same, McKesson's need to "review in-depth the purchasing patterns and quantities of their customers", diversion, etc.). With respect to notice, it was established that this document was sent to McKesson.  In fact, the witness confirmed his knowledge and receipt of the document, and that it came from his own files.  See Dep. at 41:5-8.  McKesson further confirmed receipt by stipulating that this exhibit could be introduced "without the use of a sponsoring witness at trial".  See ECF No. 1166 at 1, and 5 (MCKMDL00496859, 9th row from bottom).  The questioning seeks the witness's understanding and/or perspective of the information and notice provided in this document that he previously received and reviewed.  The geographic scope objection is not supported.  The Court has previously overruled this Florida-related relevance/geographic scope objection.  See e.g., 6/8/2021 Trial Tr. at 11:17-23.  McKesson's notice, knowledge, understanding and/or state of mind regarding these matters (e.g., systemic issues with its nationwide policies/procedures, systemic oversupply of opioids to customers, the national regulations, DEA's interpretation/enforcement, etc.), apply to Cabell/Huntington. The witness himself testified to same.  See Dep. at 89:1-3 ("Our system was a national system. So yes, anything that occurred in Florida would have been consistent across the country."). | 110  7 | 110  11 | Answer is non-responsive to question asked | Answer is responsive. | 435  23 | 435  25 | Misstates the terms of the 2017 settlement agreement, which the Court has introduced into evidence and can evaluate directly.  Lacks foundation, as the witness testifies that he had retired prior to that settlement agreement being signed. | Same response as above. |
| 54  11 | 54  16 | Objection to questioning on and reading into the record hearsay from an internal DEA memo and asking witness to agree with the truth.  Witness confirms at 51:9-13 that he did not attend the meeting, and McKesson could not have be on notice of an internal DEA memo.  Lacks relevance/geographic scope as it relates to Florida pharmacies. | With the exception of the objection waiver argument, same response as above. | 127  16 | 127  19 | Subsequent answer is non-responsive to question asked | Answer is responsive. | | | | |
| 54  18 | 55  2 | Objection to questioning on and reading into the record hearsay from an internal DEA memo and asking witness to agree with the truth.  Witness confirms at 51:9-13 that he did not attend the meeting, and McKesson could not have be on notice of an internal DEA memo.  Lacks relevance/geographic scope as it relates to Florida pharmacies. | The objection to questioning using alleged hearsay is an objection to form which was not made during the deposition for a portion of the designation (54:21-55:2), and is thus waived relative to same.  Moreover, the hearsay objection is not supported as this is an exception pursuant to FRE 803(8).  Hearsay is also not applicable because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind regarding: applicable distribution regulations, the DEA's interpretation and/or enforcement of same, McKesson's need to "review in-depth the purchasing patterns and quantities of their customers", diversion, etc.). With respect to notice, it was established that this document was sent to McKesson.  In fact, the witness confirmed his knowledge and receipt of the document, and that it came from his own files.  See Dep. at 41:5-8.  McKesson further confirmed receipt by stipulating that this exhibit could be introduced "without the use of a sponsoring witness at trial".  See ECF No. 1166 at 1, and 5 (MCKMDL00496859, 9th row from bottom).  The questioning seeks the witness's understanding and/or perspective of the information and notice provided in this document that he previously received and reviewed.  The geographic scope objection is not supported.  The Court has previously overruled this Florida-related relevance/geographic scope objection.  See e.g., 6/8/2021 Trial Tr. at 11:17-23.  McKesson's notice, knowledge, understanding and/or state of mind regarding these matters (e.g., systemic issues with its nationwide policies/procedures, systemic oversupply of opioids to customers, the national regulations, DEA's interpretation or enforcement, etc.), apply to Cabell/Huntington. The witness himself testified to same.  See Dep. at 89:1-3 ("Our system was a national system. So, yes, anything that occurred in Florida would have been consistent across the country."). | 127  22 | 128  2 | Answer is non-responsive to question asked | Answer is responsive. | | | | |
| 55  6 | 55  11 | | n/a | 131  12 | 131  17 | Subsequent answer is non-responsive to question asked | Answer is responsive. | | | | |
| 55  14 | 57  7 | Exhibit is hearsay that cannot be offered for truth (McKesson does not object that the memo can show notice as, unlike the last exhibit, it was sent to McKesson) and contains hearsay-within-hearsay.  Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. | The Court has already overruled the hearsay and geographic scope objections, and the exhibit has been admitted into evidence.  See P-09116; 6/8/2021 Trial Tr. at 10:3-11:23. The hearsay objection is not supported as this is an exception pursuant to FRE 803(8), as well as FRE 801(d)(2)(c) and/or FRE 801(d)(2)(D) relative to statements made by McKesson employees/agents (e.g., Mr. Hilliard).  Hearsay is also not supported because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind regarding: applicable distribution regulations, the DEA's interpretation and/or enforcement of same, systemic deficiencies with McKesson's suspicious order monitoring and reporting, diversion, etc.). The witness confirmed his attendance at the meeting in question as well as knowledge and receipt of the document, including that it came from his own files.  See Dep. at 55:3-11, 56:4-15. The geographic scope objection is not supported.  The Court has previously overruled this relevance/geographic scope objection.  See e.g., 6/8/2021 Trial Tr. at 11:17-23.  McKesson's notice, knowledge, understanding and/or state of mind regarding these matters (e.g., systemic issues with its nationwide policies/procedures, systemic oversupply of opioids to customers, applicable national regulations, DEA's interpretation/enforcement, etc.), apply to Cabell/Huntington. The witness himself testified to same.  See Dep. at 89:1-3 ("Our system was a national system. So, yes, anything that occurred in Florida would have been consistent across the country."). | 131  19 | 131  21 | Answer is non-responsive to question asked | Answer is responsive. | | | | |
| 57  10 | 57  23 | | n/a | 142  17 | 142  24 | | | | | | |

Walker, Donald
January 10, 2019

| WITNESS NAME: | Walker, Donald |
| DEPOSITION DATE: | 1/10/2019 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | | Page/Line End | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Replies to Objections |
| 58 | 6 | 59 | 8 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. | The Court has already overruled the hearsay and geographic scope objections, and the underlying exhibit has been admitted into evidence. See P-09116; 6/8/2021 Trial Tr. at 10:3-11:23. The hearsay objection is not supported as this is an exception pursuant to FRE 803(8), as well as FRE 801(d)(2)(c) and/or FRE 801(d)(2)(D) relative to statements made by McKesson employees/agents (e.g., Mr. Hilliard). Hearsay is also not supported because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind regarding: applicable distribution regulations, the DEA's interpretation and/or enforcement of same, systemic deficiencies with McKesson's suspicious order monitoring and reporting, diversion, etc.). The witness confirmed his attendance at the meeting in question as well as knowledge and receipt of the document, including that it came from his own files. See Dep. at 55:3-11, 56:4-15. The questioning seeks the witness's understanding and/or perspective of the information and notice provided during the meeting he attended and/or from this document that he previously received and reviewed. Moreover, the Court previously overruled this Florida-related relevance/geographic scope objection. See e.g., 6/8/2021 Trial Tr. at 11:17-23 ("I'm going to overrule that objection for the reasons I overruled the similar objection yesterday during Mr. Rannazzisi's testimony. I think it -- it embraces the entire situation here with regard to McKesson, which would include the geographic area issue here."). Issues with McKesson's nationwide policies/procedures applied to Huntington/Cabell, as confirmed by the witness. See Dep. at 89:1-3 ("Our system was a national system. So, yes, anything that occurred in Florida would have been consistent across the country."). | 143 | 8 | 143 | 25 | | | | | | |
| 59 | 11 | 59 | 16 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. | Same response as above. | 148 | 24 | 149 | 2 | | | | | | |
| 59 | 20 | 60 | 6 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. | Same response as above. | 149 | 5 | 149 | 7 | | | | | | |
| 60 | 21 | 62 | 17 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. | Same response as above. | 157 | 19 | 158 | 6 | | | | | | |
| 63 | 2 | 64 | 18 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. | Same response as above. | 159 | 7 | 159 | 11 | | | | | | |
| 64 | 25 | 65 | 3 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. | Same response as above. | 159 | 13 | 159 | 17 | | | | | | |
| 65 | 5 | 65 | 6 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. | Same response as above. | 161 | 3 | 161 | 7 | | | | | | |
| 65 | 16 | 66 | 11 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. | Same response as above. | 161 | 10 | 161 | 21 | | | | | | |
| 66 | 13 | 67 | 2 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. | Same response as above. | 161 | 24 | 162 | 7 | | | | | | |
| 67 | 4 | 67 | 12 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. | Same response as above. | 162 | 10 | 162 | 16 | Answer is non-responsive to question asked | Answer is responsive. | | | | |
| 67 | 14 | 67 | 23 | | n/a | 187 | 17 | 187 | 25 | Improper Designation; Comments by witness are not in response to any question | Answer is responsive. | | | | |
| 68 | 2 | 69 | 8 | Relevance/geographic scope as questioning relates to pharmacies in Florida in 2006. Additional objection to 69:4-8: Argumentative, compound, assumes facts not in evidence and misstates document insofar as it purports to reflect McKesson's 2008 settlement agreement, which contains hearsay allegations, no admission of fault, and did not result in the suspension of six distribution licenses. | The Court previously overruled this Florida-related relevance/geographic scope objection. See e.g., 6/8/2021 Trial Tr. at 11:17-23 ("I'm going to overrule that objection for the reasons I overruled the similar objection yesterday during Mr. Rannazzisi's testimony. I think it -- it embraces the entire situation here with regard to McKesson, which would include the geographic area issue here."). Issues with McKesson's nationwide policies/procedures applied to Huntington/Cabell, as confirmed by the witness. See Dep. at 89:1-3 ("Our system was a national system. So, yes, anything that occurred in Florida would have been consistent across the country."). As for the objection relative to 69:4-8, facts are not assumed and the questioning is not argumentative. The 2008 settlement agreement (which was signed by the witness for McKesson) is admitted into evidence and outlines McKesson's fine as well as the basis for same. See Ex. P-23733; Trial Tr., May 24, 2021, at 82:8-88:10. The questioning did not assert that McKesson admitted fault, and while there is some minor inaccuracy with the summary outlined from the questioning (McKesson did not have 6 distribution center licenses suspended but did have multiple suspensions), the witness was given a full opportunity to respond, which he did. Moreover, the minor issues with the question can be properly considered, accounted for and/or weighed by the Court in this bench trial. | 199 | 12 | 199 | 13 | | | | | | |

Walker, Donald
January 10, 2019

| WITNESS NAME: | Walker, Donald |
| DEPOSITION DATE: | 1/10/2019 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections |
| 69 | 10 | 69 | 20 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. | The Court has already overruled the hearsay and geographic scope objections, and the underlying exhibit has been admitted into evidence. See P-09116; 6/8/2021 Trial Tr. at 10:3-11:23. The hearsay objection is not supported as this is an exception pursuant to FRE 803(8), as well as FRE 801(d)(2)(c) and/or FRE 801(d)(2)(D) relative to statements made by McKesson employees/agents (e.g., Mr. Hilliard). Hearsay is also not supported because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind regarding: applicable distribution regulations, the DEA's interpretation and/or enforcement of same, systemic deficiencies with McKesson's suspicious order monitoring and reporting, diversion, etc.). The witness confirmed his attendance at the meeting in question as well as knowledge and receipt of the document, including that it came from his own files. See Dep. at 55:3-11, 56:4-15. The questioning seeks the witness's understanding and/or perspective of the information and notice provided during the meeting he attended and/or from this document that he previously received and reviewed. The geographic scope objection is not supported. The Court has previously overruled this Florida-related relevance/geographic scope objection. See e.g., 6/8/2021 Trial Tr. at 11:17-23 ("I'm going to overrule that objection for the reasons I overruled the similar objection yesterday during Mr. Rannazzisi's testimony. I think it -- it embraces the entire situation here with regard to McKesson, which would include the geographic area issue here."). Issues with McKesson's nationwide policies/procedures applied to Huntington/Cabell, as confirmed by the witness. See Dep. at 89:1-3 ("Our system was a national system. So, yes, anything that occurred in Florida would have been consistent across the country."). | 199 | 16 | 199 | 23 | | | | | | | | | |
| 69 | 23 | 70 | 3 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. | Same response as above. | 218 | 4 | 218 | 9 | | | | | | | | | |
| 70 | 5 | 70 | 20 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. Assumes facts and misstates the document insofar as it purports to describe McKesson's 2008 settlement agreement, which contains no admission of liability. | Same response as above. Also, for the assuming facts and misstating document objections, the 2008 settlement agreement (which was signed by the witness for McKesson) is admitted into evidence and outlines McKesson's fine as well as the basis for same. See Ex. P-23733; Trial Tr., May 24, 2021, at 82:8-88:10. The questioning did not assert that McKesson admitted fault, and otherwise accurately represents the settlement agreement. Moreover, even if there were any issues with the question, they are minor at most and can be properly considered, accounted for and/or weighed by the Court in this bench trial. | 218 | 12 | 218 | 18 | | | | | | | | | |
| 70 | 22 | 71 | 6 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. Additional objection 71:2-6: Counsel asked question that is never answered; counsel's question alone is not evidence. | The Court has already overruled the hearsay and geographic scope objections, and the underlying exhibit has been admitted into evidence. See P-09116; 6/8/2021 Trial Tr. at 10:3-11:23. The hearsay objection is not supported as this is an exception pursuant to FRE 803(8), as well as FRE 801(d)(2)(c) and/or FRE 801(d)(2)(D) relative to statements made by McKesson employees/agents. Hearsay is also not supported because FRE 801(c)(2) is not satisfied, and the witness confirmed his attendance at the meeting in question as well as knowledge and receipt of the document, including that it came from his own files. See Dep. at 55:3-11, 56:4-15. The questioning seeks the witness's understanding and/or perspective of the information and notice provided during the meeting he attended and/or from this document that he previously received and reviewed. The geographic scope objection is not supported. The Court previously overruled this relevance/geographic scope objection. See e.g., 6/8/2021 Trial Tr. at 11:17-23 ("I'm going to overrule that objection for the reasons I overruled the similar objection yesterday during Mr. Rannazzisi's testimony. I think it -- it embraces the entire situation here with regard to McKesson, which would include the geographic area issue here."). Issues with McKesson's nationwide policies/procedures applied to Huntington/Cabell, as confirmed by the witness. See Dep. at 89:1-3 ("Our system was a national system. So, yes, anything that occurred in Florida would have been consistent across the country."). As for the objection regarding the question at 71:2-6, it is actually part of and continued with the question at 71:9-10 (which was necessary as it was bisected by McKesson's objection). Moreover, the witness had the benefit of hearing the entire question (71:2-6 and 71:9-10) and provided his answer in response to same, and the designation is needed for context and thoroughness. | 223 | 19 | 223 | 21 | | | | | | | | | |
| 71 | 9 | 71 | 19 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. | The Court has already overruled the hearsay and geographic scope objections, and the underlying exhibit has been admitted into evidence. See P-09116; 6/8/2021 Trial Tr. at 10:3-11:23. The hearsay objection is not supported as this is an exception pursuant to FRE 803(8), as well as FRE 801(d)(2)(c) and/or FRE 801(d)(2)(D) relative to statements made by McKesson employees/agents (e.g., Mr. Hilliard). Hearsay is also not supported because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind). The witness confirmed his attendance at the meeting in question as well as knowledge and receipt of the document, including that it came from his own files. See Dep. at 55:3-11, 56:4-15. The questioning seeks the witness's understanding and/or perspective of the information and notice provided during the meeting he attended and/or from this document that he previously received and reviewed. This Court previously overruled this Florida-related relevance/geographic scope objection. See e.g., 6/8/2021 Trial Tr. at 11:17-23 ("I'm going to overrule that objection for the reasons I overruled the similar objection yesterday during Mr. Rannazzisi's testimony. I think it -- it embraces the entire situation here with regard to McKesson, which would include the geographic area issue here."). Issues with McKesson's nationwide policies/procedures applied to Huntington/Cabell, as confirmed by the witness. See Dep. at 89:1-3 ("Our system was a national system. So, yes, anything that occurred in Florida would have been consistent across the country."). | 223 | 25 | 223 | 25 | | | | | | | | | |
| 71 | 22 | 72 | 5 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. | Same response as above. | 224 | 2 | 224 | 10 | Answer is non-responsive to question asked | Answer is responsive. | | | | | | |
| 72 | 7 | 72 | 13 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. | Same response as above. | 225 | 9 | 225 | 16 | | | | | | | | | |

Walker, Donald
January 10, 2019

| WITNESS NAME: | Walker, Donald |
| DEPOSITION DATE: | 1/10/2019 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | Objections | Replies to Objections |
| 72 | 17 | 72 | 18 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. | The Court has already overruled the hearsay and geographic scope objections, and the underlying exhibit has been admitted into evidence. See P-09116; 6/8/2021 Trial Tr. at 10:3-11:23. The hearsay objection is not supported as this is an exception pursuant to FRE 803(8), as well as FRE 801(d)(2)(c) and/or FRE 801(d)(2)(D) relative to statements made by McKesson employees/agents. Hearsay is also not supported because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind), and the witness confirmed his attendance at the meeting in question as well as knowledge and receipt of the document, including that it came from his own files. See Dep. at 55:3-11, 56:4-15. The questioning seeks the witness's understanding and/or perspective of the information and notice provided during the meeting he attended and/or from this document that he previously received and reviewed. The geographic scope objection is not supported. The Court has previously overruled this Florida-related relevance/geographic scope objection. See e.g., 6/8/2021 Trial Tr. at 11:17-23 ("I'm going to overrule that objection for the reasons I overruled the similar objection yesterday during Mr. Rannazzisi's testimony. I think it -- it embraces the entire situation here with regard to McKesson, which would include the geographic area issue here."). Issues with McKesson's nationwide policies/procedures applied to Huntington/Cabell, as confirmed by the witness. See Dep. at 89:1-3 ("Our system was a national system. So, yes, anything that occurred in Florida would have been consistent across the country."). | 229 | 6 | 229 | 8 | Improper Completeness Designation; Subsequent answer is non-responsive to question asked | Designation completes the testimony that plaintiffs designated affirmatively at page 227 regarding McKesson's relationship with Retail National Account pharmacies. Answer is responsive. | | | | | |
| 73 | 5 | 74 | 3 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. Calls for a legal conclusion. | Same response as above. Also, the objection to legal conclusion is not supported. Regulatory obligations are not legal conclusions. The witness testified that McKesson was required "to comply with the Code of Federal Regulations in the handling and distribution of controlled substances". See Dep. at 73:14-20. The questioning followed-up on this testimony in relation to McKesson's actions. Moreover, it was the witness's job to make such determinations. From 2005-2015 Mr. Walker was Senior Vice President of Distribution (and in charge of regulatory affairs) for McKesson, which, as testified to by the witness, included the overall responsibility to ensure that McKesson was complying with the regulations associated with the handling and distribution of controlled substances. See Dep. at 21:2-14, 22:1-9. | 229 | 11 | 229 | 15 | Improper completeness designation; Answer is non-responsive to question asked | Designation completes the testimony that plaintiffs designated affirmatively at page 227 regarding McKesson's relationship with Retail National Account pharmacies. Answer is responsive. | | | | | |
| 74 | 6 | 74 | 15 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. Calls for a legal conclusion. | Same response as provided for both 72:18-19 and 73:5-74:3. | 234 | 22 | 235 | 2 | | | | | | | |
| 74 | 18 | 74 | 18 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. Calls for a legal conclusion. Argumentative. Asked and answered. | Same response as provided for both 72:18-19 and 73:5-74:3. Also, relative to the asked and answered and argumentative objections, the witness was not fully responsive with his prior answers and further questioning was required for clarification. Moreover, the witness was given the opportunity to confirm his testimony and he did, with a further explanation. In fact, the witness's answer helped explain how he viewed McKesson's conduct in question. To the extent any alleged issues exist with the question/answer, the Court can properly consider, account for, and/or weigh same in this bench trial. | 235 | 5 | 235 | 5 | | | | | | | |
| 74 | 21 | 74 | 22 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. Calls for a legal conclusion. Argumentative. Asked and answered. | Same response as above. | 235 | 7 | 235 | 21 | | | | | | | |
| 74 | 24 | 75 | 13 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. | The Court has already overruled the hearsay and geographic scope objections, and the underlying exhibit has been admitted into evidence. See P-09116; 6/8/2021 Trial Tr. at 10:3-11:23. The hearsay objection is not supported as this is an exception pursuant to FRE 803(8), as well as FRE 801(d)(2)(c) and/or FRE 801(d)(2)(D) relative to statements made by McKesson employees/agents. Hearsay is also not supported because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind), and the witness confirmed his attendance at the meeting in question as well as knowledge and receipt of the document, including that it came from his own files. See Dep. at 55:3-11, 56:4-15. The questioning seeks the witness's understanding and/or perspective of the information and notice provided during the meeting he attended and/or from this document that he previously received and reviewed. The geographic scope objection is not supported. The Court has previously overruled this Florida-related relevance/geographic scope objection. See e.g., 6/8/2021 Trial Tr. at 11:17-23 ("I'm going to overrule that objection for the reasons I overruled the similar objection yesterday during Mr. Rannazzisi's testimony. I think it -- it embraces the entire situation here with regard to McKesson, which would include the geographic area issue here."). Issues with McKesson's nationwide policies/procedures applied to Huntington/Cabell, as confirmed by the witness. See Dep. at 89:1-3 ("Our system was a national system. So, yes, anything that occurred in Florida would have been consistent across the country."). | 236 | 4 | 236 | 8 | | | | | | | |
| 75 | 16 | 75 | 16 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. | Same response as above. | 302 | 10 | 302 | 11 | Improper Completeness Designation; no designated testimony from plaintiff within 40 pages of this designation | Designation is of questions asked by plaintiffs' attorney and completes the attorney's questioning regarding the evolution of McKesson's suspicious order monitoring programs, which occurs throughout the seven hour deposition. Plaintiffs make no substantive, evidentiary objection to this testimony, so it can be properly considered by the court whether termed a "completeness" or a "counter" designation. | | | | | |

| WITNESS NAME: | Walker, Donald |
|---|---|
| DEPOSITION DATE: | 1/10/2019 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | Page/Line End | Objections | Replies to Objections | | Page/Line Begin | Page/Line End | Objections | Replies to Objections | | Page/Line Begin | Page/Line End | Objections | Replies to Objections | |
| 75 | 18 | 75 | 19 | Questioning seeks to offer hearsay statements in document for their truth. Lacks relevance/geographic scope as it relates to Florida pharmacies in 2006. | Same response as above. | 302 | 12 | 302 | 21 | Improper Completeness Designation; no designated testimony from plaintiff within 40 pages of this designation | Designation is of questions asked by plaintiffs' attorney and completes the attorney's questioning regarding the evolution of McKesson's suspicious order monitoring programs, which occurs throughout the seven hour deposition. Plaintiffs make no substantive, evidentiary objection to this testimony, so it can be properly considered by the court whether termed a "completeness" or a "counter" designation. | | | | |
| 76 | 2 | 76 | 7 | Questioning seeks to offer hearsay statements in document for their truth. Assumes facts not in evidence regarding the basis of McKesson's settlement agreement, which does not contain any admission of liability. | Same response as above.  Also, the assuming facts objection is not supported.  The 2008 settlement agreement (which was signed by the witness o/b/o McKesson) is admitted into evidence and outlines its terms as well as its basis.  See Ex. P-23733; Trial Tr., May 24, 2021, at 82:8-88:10.  As shown, the questioning accurately represents the settlement agreement, and did not assert that McKesson admitted liability. Moreover, even if any alleged minor issues with the question existed, they could be properly considered, accounted for and/or weighed by the Court in this bench trial. | 302 | 25 | 303 | 6 | Improper Completeness Designation; no designated testimony from plaintiff within 40 pages of this designation | Designation is of questions asked by plaintiffs' attorney and completes the attorney's questioning regarding the evolution of McKesson's suspicious order monitoring programs, which occurs throughout the seven hour deposition. Plaintiffs make no substantive, evidentiary objection to this testimony, so it can be properly considered by the court whether termed a "completeness" or a "counter" designation. | | | | |
| 77 | 25 | 78 | 19 | Hearsay within hearsay that cannot be offered for the truth as to the exhibit being read from.  McKesson does not object to questioning for the limited purpose of notice as to what the DEA said, given that Mr. Walker was present and heard the statement. | The Court has already overruled the hearsay objection, and the exhibit has been admitted into evidence.  See P-09116; 6/8/2021 Trial Tr. at 10:3-11:23.  The hearsay objection is not supported as this is an exception pursuant to FRE 803(8), as well as FRE 801(d)(2)(c) and/or FRE 801(d)(2)(D) relative to statements made by McKesson employees/agents.  Plaintiffs also agree that the question/answer at issue is admissible to prove notice.  The witness confirmed his attendance at the meeting in question as well as knowledge and receipt of the document, including that it came from his own files.  See Dep. at 55:3-11, 56:4-15. | 303 | 9 | 303 | 10 | Improper Completeness Designation; no designated testimony from plaintiff within 40 pages of this designation | Designation is of questions asked by plaintiffs' attorney and completes the attorney's questioning regarding the evolution of McKesson's suspicious order monitoring programs, which occurs throughout the seven hour deposition. Plaintiffs make no substantive, evidentiary objection to this testimony, so it can be properly considered by the court whether termed a "completeness" or a "counter" designation. | | | | |
| 78 | 21 | 79 | 10 | Hearsay within hearsay that cannot be offered for the truth as to the exhibit being read from.  McKesson does not object to questioning for the limited purpose of notice as to what the DEA said, given that Mr. Walker was present and heard the statement.  Additional objection 79:7-10: Counsel asks question but does not allow witness to answer; designation of question alone constitutes improper narrative. | Same response as above.  As for the objection to 79:7-10, the question at 79:13 is actually part of and continued with the question at 79:7-10 (which was bisected by McKesson's objection).  Further, the witness had the benefit of hearing the entire question (79:7-10 and 79:13), and in fact provided his answer at 79:15-16, directly after the questioning at issue.  Also, the question is not an improper narrative, but rather provided proper context and/or background for the witness.  Moreover, to the extent than any alleged issue with the question exists, the Court can properly consider, account for, and/or weigh same in this bench trial. | 303 | 12 | 303 | 15 | Improper Completeness Designation; no designated testimony from plaintiff within 40 pages of this designation | Designation is of questions asked by plaintiffs' attorney and completes the attorney's questioning regarding the evolution of McKesson's suspicious order monitoring programs, which occurs throughout the seven hour deposition. Plaintiffs make no substantive, evidentiary objection to this testimony, so it can be properly considered by the court whether termed a "completeness" or a "counter" designation. | | | | |
| 79 | 13 | 79 | 13 | Hearsay within hearsay that cannot be offered for the truth as to the exhibit being read from.  McKesson does not object to questioning for the limited purpose of notice as to what the DEA said, given that Mr. Walker was present and heard the statement. | The Court has already overruled the hearsay objection, and the exhibit has been admitted into evidence.  See P-09116; 6/8/2021 Trial Tr. at 10:3-11:23.  The hearsay objection is not supported as this is an exception pursuant to FRE 803(8), as well as FRE 801(d)(2)(c) and/or FRE 801(d)(2)(D) relative to statements made by McKesson employees/agents.  Plaintiffs also agree that the question/answer at issue is admissible to prove notice.  The witness confirmed his attendance at the meeting in question as well as knowledge and receipt of the document, including that it came from his own files.  See Dep. at 55:3-11, 56:4-15. | 335 | 19 | 336 | 10 | | | | | | |
| 79 | 15 | 79 | 16 | Hearsay within hearsay that cannot be offered for the truth as to the exhibit being read from.  McKesson does not object to questioning for the limited purpose of notice as to what the DEA said, given that Mr. Walker was present and heard the statement. | Same response as above. | 337 | 3 | 337 | 7 | | | | | | |

Walker, Donald
January 10, 2019

| WITNESS NAME: | Walker, Donald |
| --- | --- |
| DEPOSITION DATE: | 1/10/2019 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Page/Line Begin | | Page/Line End | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections |
| 80 | 2 | 80 | 22 | Hearsay within hearsay. The DEA's statement purporting to repeat McKesson's statement is hearsay not within an exception and cannot be offered for the truth. Relevance/geographic scope - relates to Florida pharmacies in 2006. | Same response as above. As for the relevance/geographic scope, this Court has already ruled that Defendants' conduct outside of Cabell/Huntington "is generally relevant to Defendants' conduct within the Track [Two] Counties." See ECF 1297, at 10. The information at issue is consistent with same. Moreover, the Court has previously overruled this Florida relevance/geographic scope objection. See e.g., 6/8/2021 Trial Tr. at 11:17-23 ("I'm going to overrule that objection for the reasons I overruled the similar objection yesterday during Mr. Rannazzisi's testimony. I think it -- it embraces the entire situation here with regard to McKesson, which would include the geographic area issue here."). McKesson's notice, knowledge, understanding and/or state of mind regarding these matters (e.g., systemic issues with its nationwide policies/procedures, systemic oversupply of opioids to customers, applicable national regulations, DEA's interpretation/enforcement, etc.), apply to Cabell/Huntington, as confirmed by the witness. See Dep. at 89:1-3 ("Our system was a national system. So, yes, anything that occurred in Florida would have been consistent across the country."). | 337 | 11 | 337 | 11 | | | | | | | | |
| 80 | 24 | 81 | 1 | Counsel asks question but does not allow witness to respond, instead reformulating question after objection. As such, such that the designation constitutes improper narrative by counsel without a response. | The improper narrative objection is not supported. The witness was allowed to respond and the witness answered, as shown by this designation. The questioner thought the witness was finished and started to probe further. When the objection was made to allow additional witness testimony relative to the question, it was re-asked in a slightly different manner. In fact, the witness's answer at 81:13-14 is fully consistent with this designation. | 337 | 16 | 337 | 24 | | | | | | | | |
| 81 | 8 | 81 | 20 | | n/a | 342 | 18 | 342 | 24 | | | | | | | | |
| 81 | 22 | 82 | 19 | Hearsay within hearsay. The DEA's statement purporting to repeat McKesson's statement is hearsay not within an exception and cannot be offered for the truth. Relevance/geographic scope - relates to Florida pharmacies in 2006. | The Court has already overruled the hearsay and geographic scope objections, and the underlying exhibit has been admitted into evidence. See P-09116; 6/8/2021 Trial Tr. at 10:3-11:23. The hearsay objection is not supported as this is an exception pursuant to FRE 803(8), as well as FRE 801(d)(2)(c) and/or FRE 801(d)(2)(D) relative to statements made by McKesson employees/agents. Hearsay is also not supported because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind), and the witness confirmed his attendance at the meeting in question as well as knowledge and receipt of the document, including that it came from his own files. See Dep. at 55:3-11, 56:4-15. The questioning seeks the witness's understanding and/or perspective of the information and notice provided during the meeting he attended and/or from this document that he previously received and reviewed. The geographic scope objection is not supported. The Court has previously overruled this Florida-related relevance/geographic scope objection. See e.g., 6/8/2021 Trial Tr. at 11:17-23 ("I'm going to overrule that objection for the reasons I overruled the similar objection yesterday during Mr. Rannazzisi's testimony. I think it -- it embraces the entire situation here with regard to McKesson, which would include the geographic area issue here."). Issues with McKesson's nationwide policies/procedures applied to Huntington/Cabell, as confirmed by the witness. See Dep. at 89:1-3 ("Our system was a national system. So, yes, anything that occurred in Florida would have been consistent across the country."). | 343 | 3 | 343 | 3 | | | | | | | | |
| 83 | 1 | 83 | 20 | Assumes and misstates facts based only on a hearsay statement. Questioning attorney subsequently has witness confirm that DEA analyzed quantity distributed based on ARCOS data, which is provided to the DEA by McKesson, establishing that McKesson was in fact reporting generic hydrocodone volumes through ARCOS -- contrary to the hearsay statement in DEA's memo -- so as to allow the DEA to analyze those quantities (see 101:24-102:16). Calls for speculation. Witness testified at 85:8-10 and 85:20-22 that he does not recall any specifics of the situation the DEA purports to describe in its memorandum. Relevance/geographic scope - relates to Florida pharmacies in 2006. | The objections to assumption/misstatement of facts and speculation are objections to form which were not made during the deposition, and are thus waived. Moreover, these facts are accurate, are established in the record, and are not hearsay. See e.g., 6/8/2021 Trial Tr. at 17:24-18:18, 20:7-12 (in 2006, "failure to monitor generic drugs was a systemic failure at McKesson"). In fact, the objection confuses ARCOS data/reporting with suspicious order reporting (which is very different). See e.g., 6/7/2021 Trial Tr. at 228:2-5, 229:24-230:12, 231:4-20. The Court has already overruled the hearsay objection, and the underlying exhibit has been admitted into evidence. See P-09116; 6/8/2021 Trial Tr. at 10:3-11:23. Also regarding speculation, the witness had the background, knowledge and job responsibilities to answer the question. From 2005-2015 Mr. Walker was Senior Vice President of Distribution (and in charge of regulatory affairs) for McKesson, which included the overall responsibility to ensure that McKesson was complying with the regulations associated with the handling and distribution of controlled substances. See Dep. at 21:2-14, 22:1-9. The witness actually remembered the overall issue in question. See Dep. at 85:9-10 ("I do recall we had an issue with our system at the time. But I don't recall the specifics of that."). Moreover, to the extent the witness did not recall specifics, it goes to competence and/or credibility, and shows further problems with McKesson's order monitoring, particularly since its VP of Distribution did not recall and/or was not aware of the specifics of the deficiency or problem at issue. The geographic scope objection is not supported. The Court has previously overruled this Florida-related relevance/geographic scope objection. See e.g., 6/8/2021 Trial Tr. at 11:17-23 ("I'm going to overrule that objection for the reasons I overruled the similar objection yesterday during Mr. Rannazzisi's testimony. I think it -- it embraces the entire situation here with regard to McKesson, which would include the geographic area issue here."). Issues with McKesson's nationwide policies/procedures applied to Huntington/Cabell, as confirmed by the witness. See Dep. at 89:1-3 ("Our system was a national system. So, yes, anything that occurred in Florida would have been consistent across the country."). | 343 | 5 | 343 | 14 | Answer is non-responsive to question asked | Answer is responsive. | | | | | | |

Walker, Donald
January 10, 2019

| WITNESS NAME: | Walker, Donald |
| DEPOSITION DATE: | 1/10/2019 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | COUNTER DESIGNATIONS  *Pink = Completeness Designation | | | | | | REPLY DESIGNATIONS  *Pink = Completeness Designation | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | Page/Line End | | Objections | Replies to Objections |
| 84 | 14 | 84 | 19 | Assumes and misstates facts based only on a hearsay statement. Questioning attorney subsequently has witness confirm that DEA analyzed quantity distributed based on ARCOS data, which is provided to the DEA by McKesson, establishing that McKesson was in fact reporting generic hydrocodone volumes through ARCOS -- contrary to the hearsay statement in DEA's memo -- so as to allow the DEA to analyze those quantities (see 101:24-102:16). Calls for speculation. Witness testified at 85:8-10 and 85:20-22 that he does not recall any specifics of the situation the DEA purports to describe in its memorandum. Relevance/geographic scope - relates to Florida pharmacies in 2006. | Same response as above. | 347 | 3 | 347 | 7 | Answer is provided without any question pending | The designation includes an attorney statement, to which the witness properly responds and provides an explanation of the topic discussed. | | | | |
| 84 | 21 | 85 | 6 | Assumes and misstates facts based only on a hearsay statement. Questioning attorney subsequently has witness confirm that DEA analyzed quantity distributed based on ARCOS data, which is provided to the DEA by McKesson, establishing that McKesson was in fact reporting generic hydrocodone volumes through ARCOS -- contrary to the hearsay statement in DEA's memo -- so as to allow the DEA to analyze those quantities (see 101:24-102:16). Calls for speculation. Witness testified at 85:8-10 and 85:20-22 that he does not recall any specifics of the situation the DEA purports to describe in its memorandum. Relevance/geographic scope - relates to Florida pharmacies in 2006. | Same response as above. | 351 | 19 | 352 | 13 | | | | | | |
| 85 | 8 | 85 | 15 | Assumes and misstates facts based only on a hearsay statement. Questioning attorney subsequently has witness confirm that DEA analyzed quantity distributed based on ARCOS data, which is provided to the DEA by McKesson, establishing that McKesson was in fact reporting generic hydrocodone volumes through ARCOS -- contrary to the hearsay statement in DEA's memo -- so as to allow the DEA to analyze those quantities (see 101:24-102:16). Calls for speculation. Witness testified at 85:8-10 and 85:20-22 that he does not recall any specifics of the situation the DEA purports to describe in its memorandum. Relevance/geographic scope - relates to Florida pharmacies in 2006. | Same response as above. | 352 | 15 | 352 | 22 | | | | | | |
| 85 | 18 | 85 | 18 | Assumes and misstates facts based only on a hearsay statement. Questioning attorney subsequently has witness confirm that DEA analyzed quantity distributed based on ARCOS data, which is provided to the DEA by McKesson, establishing that McKesson was in fact reporting generic hydrocodone volumes through ARCOS -- contrary to the hearsay statement in DEA's memo -- so as to allow the DEA to analyze those quantities (see 101:24-102:16). Calls for speculation. Witness testified at 85:8-10 and 85:20-22 that he does not recall any specifics of the situation the DEA purports to describe in its memorandum. Relevance/geographic scope - relates to Florida pharmacies in 2006. | Same response as above. | 353 | 15 | 353 | 18 | | | | | | |

Walker, Donald
January 10, 2019

| WITNESS NAME: | Walker, Donald |
|---|---|
| DEPOSITION DATE: | 1/10/2019 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | Page/Line End | Objections | Replies to Objections | | Page/Line Begin | Page/Line End | Objections | Replies to Objections | | | Page/Line Begin | Page/Line End | Objections | Replies to Objections | |
| 85 | 20 | 86 | 3 | Assumes and misstates facts based only on a hearsay statement. Questioning attorney subsequently has witness confirm that DEA analyzed quantity distributed based on ARCOS data, which is provided to the DEA by McKesson, establishing that McKesson was in fact reporting generic hydrocodone volumes through ARCOS -- contrary to the hearsay statement in DEA's memo -- so as to allow the DEA to analyze those quantities (see 101:24-102:16). Calls for speculation. Witness testified at 85:8-10 and 85:20-22 that he does not recall any specifics of the situation the DEA purports to describe in its memorandum. Relevance/geographic scope - relates to Florida pharmacies in 2006.  Calls for a legal conclusion. | Same response as above. | 353 | 21 | 354 | 4 | Answer is non-responsive to question asked | | |
| 86 | 5 | 86 | 16 | Assumes and misstates facts based only on a hearsay statement. Questioning attorney subsequently has witness confirm that DEA analyzed quantity distributed based on ARCOS data, which is provided to the DEA by McKesson, establishing that McKesson was in fact reporting generic hydrocodone volumes through ARCOS -- contrary to the hearsay statement in DEA's memo -- so as to allow the DEA to analyze those quantities (see 101:24-102:16). Calls for speculation. Witness testified at 85:8-10 and 85:20-22 that he does not recall any specifics of the situation the DEA purports to describe in its memorandum. Relevance/geographic scope - relates to Florida pharmacies in 2006. | Same response as above. | 357 | 10 | 359 | 1 | | | |
| 86 | 19 | 86 | 21 | Calls for a legal conclusion. | The objection to legal conclusion is not supported.  Regulatory obligations are not legal conclusions. Also, the witness testified that McKesson was required "to comply with the Code of Federal Regulations in the handling and distribution of controlled substances".  See Dep. at 73:14-20.  And, it was the witness's job to ensure compliance with the CSA.  From 2005-2015 Mr. Walker was Senior Vice President of Distribution (and in charge of regulatory affairs) for McKesson, which, as testified to by the witness, included the overall responsibility to ensure that McKesson was complying with the regulations associated with the handling and distribution of controlled substances.  See Dep. at 21:2-14, 22:1-9. The questioning properly addresses the witness's/McKesson's understanding. | 359 | 18 | 365 | 11 | | | |
| 87 | 15 | 87 | 16 | Assumes facts based only on a hearsay statement; calls for speculation. Witness testified at 85:8-10 and 85:20-22 that he does not recall any specifics of the situation the DEA purports to describe in its memorandum.  Calls for a legal conclusion. | The objections to assumption of facts and speculation are objections to form which were not made during the deposition, and are thus waived.  Moreover, these facts are accurate, are established in the record, and are not hearsay.  See e.g., 6/8/2021 Trial Tr. at 17:24-18:18, 20:7-12 (in 2006, "failure to monitor generic drugs was a systemic failure at McKesson"). The Court has already overruled the hearsay objection, and the underlying exhibit has been admitted into evidence.  See P-09116; 6/8/2021 Trial Tr. at 10:3-11:23. Also regarding speculation, the witness had the background, knowledge and job responsibilities to answer the question.  From 2005-2015 Mr. Walker was Senior Vice President of Distribution (and in charge of regulatory affairs) for McKesson, which included the overall responsibility to ensure that McKesson was complying with the regulations associated with the handling and distribution of controlled substances.  See Dep. at 21:2-14, 22:1-9. The witness actually remembered the overall issue in question.  See Dep. at 85:9-10 ("I do recall we had an issue with our system at the time. But I don't recall the specifics of that.").  Moreover, to the extent the witness did not recall specifics, it goes to competence and/or credibility, and shows further problems with McKesson's order monitoring, particularly since its VP of Distribution did not recall and/or was not aware of the specifics of the deficiency or problem at issue.  Same response as above relative to the objection to legal conclusion. | 365 | 23 | 366 | 10 | | | |
| 88 | 4 | 88 | 14 | | n/a | 366 | 22 | 368 | 12 | Relevance and Improper Character Evidence at 366:22-367:14 | Testimony relates to actions taken by McKesson after the DEA communicated new guidance and expectations.  This testimony is centrally relevant to issues in this case regarding McKesson evolution of its suspicious order monitoring program, and is not "character evidence" about they company, but instead describes specific actions taken. | | | |

| WITNESS NAME: | Walker, Donald |
|---|---|
| DEPOSITION DATE: | 1/10/2019 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | Page/Line End | Objections | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Replies to Objections |
| 88 16 | 89 3 | Assumes and misstates facts based only on a hearsay statement. Questioning attorney subsequently has witness confirm that DEA analyzed quantity distributed based on ARCOS data, which is provided to the DEA by McKesson, establishing that McKesson was in fact reporting generic hydrocodone volumes through ARCOS -- contrary to the hearsay statement in DEA's memo -- so as to allow the DEA to analyze those quantities (see 101:24-102:16). Calls for speculation. Witness testified at 85:8-10 and 85:20-22 that he does not recall any specifics of the situation the DEA purports to describe in its memorandum. | The objections to assumption/misstatement of facts and speculation are objections to form which were not made during the deposition for 88:20-89:3, and are thus waived relative to same. Moreover, the underlying facts are accurate, are established in the record, and are not hearsay. See e.g., 6/8/2021 Trial Tr. at 17:24-18:18, 20:7-12 (in 2006, "failure to monitor generic drugs was a systemic failure at McKesson"). In fact, the objection confuses ARCOS data/reporting with suspicious order reporting (which is very different). See e.g., 6/7/2021 Trial Tr. at 228:2-5, 229:24-230:12, 231:4-20. The Court has already overruled the hearsay objection, and the underlying exhibit has been admitted into evidence. See P-09116; 6/8/2021 Trial Tr. at 10:3-11:23. The witness was clearly not speculating regarding McKesson having a nationwide system. See Dep. at 89:1-3. Also regarding speculation, the witness had the background, knowledge and job responsibilities to answer the question. From 2005-2015 Mr. Walker was Senior Vice President of Distribution (and in charge of regulatory affairs) for McKesson, which included the overall responsibility to ensure that McKesson was complying with the regulations associated with the handling and distribution of controlled substances. See Dep. at 21:2-14, 22:1-9. The witness actually remembered the overall issue in question. See Dep. at 85:9-10 ("I do recall we had an issue with our system at the time. But I don't recall the specifics of that."). Moreover, to the extent the witness did not recall specifics, it goes to competence and/or credibility, and shows further problems with McKesson's order monitoring, particularly since its VP of Distribution did not recall and/or was not aware of the specifics of the deficiency or problem at issue. The geographic scope objection is not supported. The Court has previously overruled this Florida-related relevance/geographic scope objection. See e.g., 6/8/2021 Trial Tr. at 11:17-23 ("I'm going to overrule that objection for the reasons I overruled the similar objection yesterday during Mr. Rannazzisi's testimony. I think it -- it embraces the entire situation here with regard to McKesson, which would include the geographic area issue here."). Issues with McKesson's nationwide policies/procedures applied to Huntington/Cabell, as confirmed by the witness. See Dep. at 89:1-3 ("Our system was a national system. So, yes, anything that occurred in Florida would have been consistent across the country."). | 368 13 | 368 21 | | | | | | |
| 89 7 | 89 13 | Assumes facts based only on a hearsay statement; calls for speculation. Witness testified at 85:8-10 and 85:20-22 that he does not recall any specifics of the situation the DEA purports to describe in its memorandum. | Same response as above. | 369 8 | 371 7 | Hearsay; Incomplete | McKesson has added the designation of the exhibit to correct this objection. Communication to the DEA is not hearsay under 803(6) as a McKesson business record, but has also been previously admitted by the court for purposes of effect on the recipient (DEA) and notice to the speaker (MCK), and can be admitted on that basis here again. See Trial Tr. (May 8, 2021) at 220:3-7, 223:12-224:8. | | | | |
| 89 16 | 89 18 | Assumes and misstates facts based only on a hearsay statement. Questioning attorney subsequently has witness confirm that DEA analyzed quantity distributed based on ARCOS data, which is provided to McKesson by McKesson, establishing that McKesson was in fact reporting generic hydrocodone volumes through ARCOS -- contrary to the hearsay statement in DEA's memo -- so as to allow the DEA to analyze those quantities (see 101:24-102:16). Calls for speculation. Witness testified at 85:8-10 and 85:20-22 that he does not recall any specifics of the situation the DEA purports to describe in its memorandum. | Same response as above. | 371 21 | 371 24 | Hearsay | Please see above, already admitted by the Court for a non-hearsay purpose. | | | | |
| 98 14 | 98 24 | Assumes facts based only on a hearsay statement; vague; argumentative. | Same response as above relative to assuming facts and hearsay objections. As to the vagueness and argumentative objections, these are objections to form which were not made during the deposition for 98:14-19, and thus are waived relative to same. Moreover, the questioning is not vague or argumentative, as the factual predicate was established and provided with the question, which included a time-period. And, the witness's answer shows that he was able to understand and fully respond. Further, to the extent any alleged vagueness or argumentative issues exist with the question/answer, the Court can properly consider, account for, and/or weigh same in this bench trial. | 372 1 | 373 24 | Hearsay; Lack of Foundation | Please see above, already admitted by the Court for a non-hearsay purpose. Witness, Donald Walker, was in charge of McKesson's regulatory affairs program at the time the letter was written and was involved in responding to the DEA's comments and guidance through the development of McKesson's new suspicious order monitoring programs in 2007 and 2008. | | | | |
| 99 2 | 100 5 | Lack of personal knowledge (witness testifies at 100:15-18 that he has never seen the document and doesn't understand its numbers); hearsay that cannot be offered for the truth; lack of relevance/geographic scope as it relates to Florida pharmacies in 2006. | Same response as provided for both 88:16-89:3 and 98:14-24 relative to the hearsay and geographic scope objections. This designation at 99:2-5 is the answer for the above question at 98:20-24 and 99:2. The lack of personal knowledge objection was not made during the deposition for 99:6-100:3, and is thus waived relative to same. | 374 2 | 375 19 | | | | | | |

Walker, Donald
January 10, 2019

| WITNESS NAME: | Walker, Donald |
|---|---|
| DEPOSITION DATE: | 1/10/2019 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | COUNTER DESIGNATIONS *Pink = Completeness Designation | | | | | REPLY DESIGNATIONS *Pink = Completeness Designation | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | Page/Line End | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | Objections | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Replies to Objections | |
| 100  12 | 100  13 | Lack of personal knowledge (witness testifies at 100:15-18 that he has never seen the document and doesn't understand its numbers); hearsay that cannot be offered for the truth; lack of relevance/geographic scope as it relates to Florida pharmacies in 2006. | The witness had the background, knowledge and job responsibilities sufficient to answer the question.  From 2005-2015 Mr. Walker was Senior Vice President of Distribution (and in charge of regulatory affairs) for McKesson, which included the overall responsibility to ensure that McKesson was complying with the regulations associated with the handling and distribution of controlled substances.  See Dep. at 21:2-14, 22:1-9.  Moreover, to the extent the witness did not recall or understand, it goes to competence and/or credibility, and shows further problems with McKesson's order monitoring, particularly since its VP of Distribution did not recall, understand and/or was not aware of this significant issue.  Further, the questioning can stand as a hypothetical irrespective of any document or personal knowledge, as the point is that McKesson's VP of Distribution believes it is acceptable to ship the amounts of pills as outlined. Hearsay is not supported pursuant to FRE 803(6) and/or FRE 803(8). Hearsay is also not applicable because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind regarding: applicable distribution regulations, the DEA's interpretation and/or enforcement of same, systemic problems with McKesson policies/procedures, diversion, oversupply to customers, etc.).The geographic scope objection is not supported.  The Court has previously overruled this Florida-related relevance/geographic scope objection.  See e.g., 6/8/2021 Trial Tr. at 11:17-23 ("I'm going to overrule that objection for the reasons I overruled the similar objection yesterday during Mr. Rannazzisi's testimony. I think it -- it embraces the entire situation here with regard to McKesson, which would include the geographic area issue here."). Issues with McKesson's nationwide policies/procedures applied to Huntington/Cabell, as confirmed by the witness.  See Dep. at 89:1-3 ("Our system was a national system. So, yes, anything that occurred in Florida would have been consistent across the country."). | 381  2 | | 382  8 | | | | | | |
| 100  15 | 100  21 | Lack of personal knowledge (witness testifies at 100:15-18 that he has never seen the document and doesn't understand its numbers); hearsay that cannot be offered for the truth (questioning attorney asks witness to "assume [the exhibit] to be true" at 101:2); lack of relevance/geographic scope as it relates to Florida pharmacies in 2006. | Same response as above. | 383  3 | | 384  2 | | | | | | |
| 100  24 | 101  8 | Lack of personal knowledge (witness testifies at 100:15-18 that he has never seen the document and doesn't understand its numbers); hearsay that cannot be offered for the truth (questioning attorney asks witness to "assume [the exhibit] to be true" at 101:2); lack of relevance/geographic scope as it relates to Florida pharmacies in 2006. | Same response as above. | 384  7 | | 384  22 | | | | | | |
| 101  11 | 101  18 | Lack of personal knowledge (witness testifies at 100:15-18 that he has never seen the document and doesn't understand its numbers); hearsay that cannot be offered for the truth (questioning attorney asks witness to "assume [the exhibit] to be true" at 101:2); lack of relevance/geographic scope as it relates to Florida pharmacies in 2006. | Same response as above. | 385  1 | | 385  2 | | | | | | |
| 101  20 | 102  1 | Objection to 101:11-2:  Lack of personal knowledge (witness testifies at 100:15-18 that he has never seen the document and doesn't understand its numbers); hearsay that cannot be offered for the truth (questioning attorney asks witness to "assume [the exhibit] to be true" at 101:2); lack of relevance/geographic scope as it relates to Florida pharmacies in 2006. | Same response as above. | 387  7 | | 387  23 | | | | | | |
| 102  3 | 102  6 | | n/a | 388  4 | | 392  5 | | | | | | |

Walker, Donald
January 10, 2019

| WITNESS NAME: | Walker, Donald |
| --- | --- |
| DEPOSITION DATE: | 1/10/2019 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Page/Line Begin | Page/Line End | Objections | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Replies to Objections |
| 102 14 | 102 20 | Objection to 102:17-20: Lack of personal knowledge (witness testifies at 100:15-18 that he has never seen the document and doesn't understand its numbers); hearsay that cannot be offered for the truth (questioning attorney asks witness to "assume [the exhibit] to be true" at 101:2); lack of relevance/geographic scope as it relates to Florida pharmacies in 2006. | The witness had the background, knowledge and job responsibilities sufficient to answer the question. From 2005-2015 Mr. Walker was Senior Vice President of Distribution (and in charge of regulatory affairs) for McKesson, which included the overall responsibility to ensure that McKesson was complying with the regulations associated with the handling and distribution of controlled substances.  See Dep. at 21:2-14, 22:1-9.  Moreover, to the extent the witness did not recall or understand, it goes to competence and/or credibility, and shows further problems with McKesson's order monitoring, particularly since its VP of Distribution did not recall, understand and/or was not aware of this significant issue.  Further, the questioning can stand as a hypothetical irrespective of any document or personal knowledge, as the point is that McKesson's VP of Distribution believes it is acceptable to ship the amounts of pills as outlined.  Hearsay is not supported pursuant to FRE 803(6) and/or FRE 803(8). Hearsay is also not applicable because FRE 801(c)(2) is not satisfied (as the exhibit/testimony also proves notice, knowledge, understanding, and/or state of mind regarding: applicable distribution regulations, the DEA's interpretation and/or enforcement of same, systemic problems with McKesson policies/procedures, diversion, oversupply to customers, etc.).The geographic scope objection is not supported.  The Court has previously overruled this Florida-related relevance/geographic scope objection.  See e.g., 6/8/2021 Trial Tr. at 11:17-23 ("I'm going to overrule that objection for the reasons I overruled the similar objection yesterday during Mr. Rannazzisi's testimony. I think it -- it embraces the entire situation here with regard to McKesson, which would include the geographic area issue here.").  Issues with McKesson's nationwide policies/procedures applied to Huntington/Cabell, as confirmed by the witness.  See Dep. at 89:1-3 ("Our system was a national system. So, yes, anything that occurred in Florida would have been consistent across the country."). | 395 8 | 395 15 | | | | | | |
| 102 23 | 103 5 | Lack of personal knowledge (witness testifies at 100:15-18 that he has never seen the document and doesn't understand its numbers); hearsay that cannot be offered for the truth (questioning attorney asks witness to "assume [the exhibit] to be true" at 101:2); lack of relevance/geographic scope as it relates to Florida pharmacies in 2006. | Same response as above. | 396 7 | 400 4 | | | | | | |
| 103 9 | 103 17 | Counsel asks question but does not allow witness to respond, instead reformulating question after objection. As such, such that the designation constitutes only improper narrative by counsel without a response. | The question at 103:21 is actually part of and continued with the question at 103:9-17 (which was bisected by McKesson's objection).  Further, the witness had the benefit of hearing the entire question (103:9-17 and 103:21), and in fact provided his answer at 103:23-25, directly after the questioning at issue.  Also, the question is not an improper narrative, but rather provided proper context and/or background for the witness. Moreover, to the extent than any alleged issue with the question exists, the Court can properly consider, account for, and/or weigh same in this bench trial. | 400 23 | 406 20 | Vague; Overbroad; Calls for and Elicited Narrative Testimony (400:23-403:5); Non-Responsive Narrative Testimony at 404:5 23; Vague Overbroad; Calls for Narrative Testimony (405:7-406:9) | Witness is being asked questions by his own attorney, so those questions are appropriately open ended and ask for the witness to explain his knowledge regarding communications with the DEA and the evolution of McKesson's Controlled Substance Monitoring Program, to which he properly responds. | | | | |
| 103 21 | 103 21 | | n/a | 407 4 | 407 15 | Answer from 407:8-15 is non-responsive to question asked; improper narrative | | | | | |
| 103 23 | 104 1 | | n/a | 408 24 | 410 13 | Vague; Overbroad; Calls for and elicits narrative testimony; Improper Character Evidence (409:20-410:11) | Please see above. Answer does not offer "character evidence," but instead testimony regarding McKesson's approach to responding to DEA guidance and attempts to ensure its compliance program met DEA's expectations. | | | | |
| 104 13 | 104 22 | Calls for legal conclusion. | The objection to legal conclusion is not supported.  Regulatory obligations are not legal conclusions. Moreover, it was the witness's job to understand the regulations and ensure that McKesson's conduct complied with same.  From 2005-2015 Mr. Walker was Senior Vice President of Distribution (and in charge of regulatory affairs) for McKesson, and his job (as per his testimony) included the overall responsibility to ensure that McKesson was "complying with regulations associated with the handling and distribution of controlled substances".  See Dep. at 21:2-14, 22:1-9. Accordingly, the question requests factual information about what the witness knew and/or understood to be McKesson's regulatory responsibility, including that whether the responsibility extended beyond "just making sure that [McKesson was] selling to a licensed pharmacy". See Dep. at 104:18-19. | 414 6 | 414 15 | Answer from 414:13-15 is non-responsive to question asked | | | | | |
| 105 6 | 105 8 | | n/a | 414 17 | 414 25 | Answer from 414:17-20 is non-responsive to question asked | | | | | |

| WITNESS NAME: | Walker, Donald | | |
|---|---|---|---|
| DEPOSITION DATE: | 1/10/2019 | | |

**AFFIRMATIVE DEPOSITION DESIGNATIONS** | **COUNTER DESIGNATIONS** *Pink = Completeness Designation | **REPLY DESIGNATIONS** *Pink = Completeness Designation

| Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | | Page/Line End | | Objections | Replies to Objections |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 105 | 10 | 105 | 16 | Calls for legal conclusion; assumes facts based only on a hearsay statement as to which witness has already testified he lacks personal knowledge. | The objection to legal conclusion is not supported.  Regulatory obligations are not legal conclusions.  The witness testified that McKesson was required "to comply with the Code of Federal Regulations in the handling and distribution of controlled substances". See Dep. at 73:14-20. Moreover, it was the witness's job to ensure compliance with the CSA. From 2005-2015 Mr. Walker was Senior Vice President of Distribution (and in charge of regulatory affairs) for McKesson, which, as testified to by the witness, inclded the overall responsibility to ensure that McKesson was complying with the regulations associated with the handling and distribution of controlled substances. See Dep. at 21:2-14, 22:1-9. The witness had the background, knowledge and job responsibilities sufficient to answer the question.  Moreover, to the extent the witness did not recall or understand, it goes to competence and/or credibility, and shows further problems with McKesson's order monitoring, particularly since its VP of Distribution did not recall, understand and/or was not aware of this significant issue.  Hearsay is not applicable pursuant to FRE 803(6) and/or FRE 803(8). Also, in terms of notice and not for truth asserted, FRE 801(c)(2) is not satisfied.  Moreover, the facts are not assumed, and are already established in evidence.  See e.g., P-09116 (1/3/2006 DEA-MCK meeting), P-23733 (2008 DEA-MCK settlement). Further, the questioning can stand as a hypothetical irrespective of any document, as the point is that McKesson's VP of Distribution believes it is acceptable to ship the amounts of pills as outlined. | 415 | 4 | 415 | 16 | | |  |  |  |  |  |  |
| 105 | 19 | 106 | 4 | Calls for a legal conclusion. | Same response as above relative to legal conclusion objection. | 418 | 12 | 419 | 3 | Answers Provided are Completely Non-responsive to questions asked | |  |  |  |  |  |  |
| 106 | 7 | 106 | 7 | Assumes and misstates facts based only on a hearsay statement. Questioning attorney has already confirmed earlier in questioning that DEA analyzed quantity distributed based on ARCOS data, which is provided to the DEA by McKesson, establishing that McKesson was reporting generic hydrocodone totals to the DEA.  (see 101:24-102:16) | These facts are accurate, are established in the record, and are  not hearsay.  See e.g., 6/8/2021 Trial Tr. at 17:24-18:18, 20:7-12 (in 2006, "failure to monitor generic drugs was a systemic failure at McKesson"). In fact, the objection confuses ARCOS data/reporting with suspicious order reporting (which is very different).  See e.g., 6/7/2021 Trial Tr. at 228:2-5, 229:24-230:12, 231:4-20.  Hearsay is not applicable pursuant to FRE 803(6) and/or FRE 803(8). Also, in terms of notice and not for truth asserted, FRE 801(c)(2) is not satisfied.  Further, the Court has already overruled the hearsay objection, and an underlying exhibit as well as other related exhibits and testimony have been admitted into evidence.  See P-09116; 6/8/2021 Trial Tr. at 10:3-11:23. Also, the witness previously recalled the overall issue in question. See Dep. at 85:9-10 ("I do recall we had an issue with our system at the time. But I don't recall the specifics of that."), and the questioning can stand regardless of the exhibit.  Additionally, to the extent the witness did not recall specifics, it goes to competence and/or credibility, and shows further problems with McKesson's order monitoring, particularly since its VP of Distribution did not recall and/or was not aware of the specifics of the deficiency or problem at issue.  Further, the questioning can stand as a hypothetical irrespective of any document, as the point is that McKesson's VP of Distribution believes it is acceptable to ship the amounts of pills as outlined. | 419 | 13 | 420 | 3 | Answer provided is completely non-responsive to question asked | |  |  |  |  |  |  |
| 106 | 9 | 106 | 15 | Assumes and misstates facts based only on a hearsay statement. Questioning attorney has already confirmed earlier in questioning that DEA analyzed quantity distributed based on ARCOS data, which is provided to the DEA by McKesson, establishing that McKesson was reporting generic hydrocodone totals to the DEA.  (see 101:24-102:16).  Misstates hearsay allegations in 2008 McKesson settlement agreement, which does not contain any admission of liability. | Same response as above.  Also, with respect to the 2008 settlement, that document is admitted in evidence and outlines its terms as well as its basis. See Ex. P-23733; Trial Tr., May 24, 2021, at 83:8-88:10.  As shown, the questioning accurately represents the settlement agreement, and did not assert that McKesson admitted liability.  Moreover, even if any alleged minor issues with the question existed, they could be properly considered, accounted for and/or weighed by the Court in this bench trial. | 422 | 12 | 422 | 12 | | |  |  |  |  |  |  |
| 106 | 19 | 106 | 23 | | n/a | 422 | 18 | 422 | 25 | Answer is non-responsive to question asked | |  |  |  |  |  |  |
| 110 | 12 | 110 | 21 | Assumes facts based only on a hearsay statement; argumentative; lack of relevance/geographic scope as relates to Florida pharmacies in 2006. | These facts are accurate, are established in the record, and are  not hearsay.  See e.g., 6/8/2021 Trial Tr. at 17:24-18:18, 20:7-12 (in 2006, "failure to monitor generic drugs was a systemic failure at McKesson"). Hearsay is not applicable pursuant to FRE 803(6) and/or FRE 803(8). Also, in terms of notice and not for truth asserted, FRE 801(c)(2) is not satisfied.  Further, the Court has already overruled the hearsay objection, and an underlying exhibit as well as other related exhibits and testimony have been admitted into evidence.  See P-09116; 6/8/2021 Trial Tr. at 10:3-11:23.  Further, the questioning can stand as a hypothetical irrespective of any document, as the point is that McKesson's VP of Distribution believes it is acceptable to ship the amounts of pills as outlined. The geographic scope objection is not supported. The Court has previously overruled this Florida-related relevance/geographic scope objection.  See e.g., 6/8/2021 Trial Tr. at 11:17-23 ("I'm going to overrule that objection for the reasons I overruled the similar objection yesterday during Mr. Rannazzisi's testimony. I think it -- it embraces the entire situation here with regard to McKesson, which would include the geographic area issue here."). Issues with McKesson's nationwide policies/procedures applied to Huntington/Cabell, as confirmed by the witness.  See e.g., 6/8/2021 Trial Tr. at 89:1-3 ("Our system was a national system. So, yes, anything that occurred in Florida would have been consistent across the country."). | 428 | 5 | 428 | 7 | | |  |  |  |  |  |  |
| 110 | 24 | 111 | 5 | | n/a | 428 | 9 | 428 | 19 | Answer at 428:18-19 is non-responsive to question asked | |  |  |  |  |  |  |

Walker, Donald
January 10, 2019

| WITNESS NAME: | Walker, Donald |
| --- | --- |
| DEPOSITION DATE: | 1/10/2019 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Page/Line Begin | Page/Line End | Objections | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Replies to Objections |
| 111 7 | 111 9 | Argumentative; asked and answered; assumes facts based only on a hearsay statement; lack of relevance/geographic scope as relates to Florida pharmacies in 2006. | The question is posed as such because of the witness's partial answer and evasiveness. Also, any alleged argumentative issue with the questioning can be properly considered, accounted for and/or weighed in this bench trial. These facts are not assumed, but rather are established in the record, and are not hearsay. See e.g., 6/8/2021 Trial Tr. at 17:24-18:18, 20:7-12 (in 2006, "failure to monitor generic drugs was a systemic failure at McKesson"). Hearsay is not applicable pursuant to FRE 803(6) and/or FRE 803(8). Also, in terms of notice and not for truth asserted, FRE 801(c)(2) is not satisfied. Further, the Court has already overruled the hearsay objection, and an underlying exhibit as well as other related exhibits and testimony have been admitted into evidence. See P-09116; 6/8/2021 Trial Tr. at 10:3-11:23. Further, the questioning can stand as a hypothetical irrespective of any document, as the point is that McKesson's VP of Distribution believes it is acceptable to ship the amounts of pills as outlined. The geographic scope objection is not supported. The Court has previously overruled this Florida-related relevance/geographic scope objection. See e.g., 6/8/2021 Trial Tr. at 11:17-23 ("I'm going to overrule that objection for the reasons I overruled the similar objection yesterday during Mr. Rannazzisi's testimony. I think it -- it embraces the entire situation here with regard to McKesson, which would include the geographic area issue here."). Issues with McKesson's nationwide policies/procedures applied to Huntington/Cabell, as confirmed by the witness. See Dep. at 89:1-3 ("Our system was a national system. So, yes, anything that occurred in Florida would have been consistent across the country."). | COUNTER DESIGNATIONS FROM MR. WALKER'S 1/30/2020 DEPOSITION TRANSCRIPT | | | | | | | |
| 111 12 | 111 20 | Argumentative; asked and answered; assumes facts based only on a hearsay statement; lack of relevance/geographic scope as relates to Florida pharmacies in 2006. | Same response as above. | 124 22 | 124 23 | This is a deposition taken in a state action (NY). Additionally, it was attended neither by Cabell nor Huntington. First, this deposition is improperly designated and inconsistent with FRCP 32. Separate and apart from this, these statements are hearsay. | Mr. Walker's deposition in the New York state litigation was taken by Mr. Kennedy, in his role as a member of the Plaintiffs' Executive Committee, who also represented the Plaintiffs' Executive Committee in this action, including having taken Mr. Walker's MDL deposition, from which plaintiffs' now designate, and questioning live witnesses during this trial. Moreover, Plaintiffs' requested and received a discovery order in the MDL that required McKesson and all Defendants to make available all deposition transcript in state litigation so that they became part of the MDL discovery record, which is available to the parties in this action. | | | | |
| 111 24 | 112 6 | Argumentative; asked and answered; assumes facts based only on a hearsay statement; lack of relevance/geographic scope as relates to Florida pharmacies in 2006. | Same response as above. | 125 4 (beginning with "Just") | 132 7 | Same as above. | Please see above. | | | | |
| 112 8 | 113 17 | McKesson preserves its objection to the admission of this settlement agreement for the record, but acknowledges the Court's ruling that the agreement is admissible. Objections as to 11:14-17: Misstates the document insofar as it purports to offer hearsay allegations for the truth. Document contains no admission of liability. | The 2008 settlement agreement (which was signed by the witness o/b/o McKesson) is admitted into evidence and outlines its terms as well as its basis. See Ex. P-23733; Trial Tr., May 24, 2021, at 82:8-88:10. As shown, the questioning accurately represents the settlement agreement, and did not assert that McKesson admitted liability. Moreover, even if any alleged minor issues with the questioning existed, they could be properly considered, accounted for and/or weighed by the Court in this bench trial. | 133 16 | 137 18 | Same as above. | Please see above. | | | | |
| 113 19 | 113 20 | | n/a | 137 21 | 139 19 | Same as above. | Please see above. | | | | |
| 122 14 | 123 18 | | n/a | 140 23 | 141 2 | Same as above. | Please see above. | | | | |
| 124 13 | 124 25 | | n/a | 142 19 | 148 14 | Same as above. | Please see above. | | | | |
| 125 23 | 127 7 | Statements from document read into record are hearsay that cannot be offered for the truth. The witness verifies that he was "pulling information from the agreement draft, which were the DEA's allegations." (See 127:9-15). Repeating the DEA's hearsay allegations in order to provide notice of those allegations does not constitute adoption/agreement. McKesson has no objection to use of this language for the limited purpose of notice of the DEA's allegations. | Plaintiffs agree that this document and testimony is admissible as notice to McKesson. However, this McKesson authored and produced PowerPoint (and related testimony) is also not hearsay pursuant to FRE 801(d)(2)(A), FRE 801(d)(2)(B), FRE 801(d)(2)(C), FRE 801(d)(2)(D). Hearsay is also not applicable to this document and related testimony pursuant to FRE 803(3) and/or FRE 803(6). This was McKesson's understanding of the matters at issue. Moreover, these are statements made and/or chosen by McKesson for purposes of educating and updating regulatory supervisors. The PowerPoint was for this 2008 Directors of Regulatory meeting, and "the purpose of the meeting was to review with the Regulatory staff and then expanded the overview of the Memorandum of Agreement that we were moving forward with." See Dep. at 123:9-12. In fact, this McKesson PowerPoint outlines the terms of the settlement which McKesson entered into (which the witness signed o/b/o McKesson), and which has been admitted in evidence. See Ex. P-23733; Trial Tr., May 24, 2021, at 82:8-88:10. | 149 16 | 149 22 | Same as above. | Please see above. | | | | |

**WITNESS NAME:** Walker, Donald
**DEPOSITION DATE:** 1/10/2019

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | Page/Line End | Objections | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Replies to Objections |
| 127:9 | 127:15 | Statements from document read into record are hearsay that cannot be offered for the truth. The witness verifies that he was "pulling information from the agreement draft, which were the DEA's allegations." (See 127:9-15). Repeating the DEA's hearsay allegations in order to provide notice of those allegations does not constitute adoption/agreement. McKesson has no objection to use of this language for the limited purpose of notice of the DEA's allegations. | Same response as above. | 150:4 | 156:17 | Same as above. | Please see above. | | | | |
| 128:3 | 128:7 | Statements from document read into record are hearsay that cannot be offered for the truth. The witness verifies that he was "pulling information from the agreement draft, which were the DEA's allegations." (See 127:9-15). Repeating the DEA's hearsay allegations in order to provide notice of those allegations does not constitute adoption/agreement. McKesson has no objection to use of this language for the limited purpose of notice of the DEA's allegations. | Same response as above. | 156:21 | 162:1 | Same as above. | Please see above. | | | | |
| 128:10 | 128:13 | Statements from document read into record are hearsay that cannot be offered for the truth. The witness verifies that he was "pulling information from the agreement draft, which were the DEA's allegations." (See 127:9-15). Repeating the DEA's hearsay allegations in order to provide notice of those allegations does not constitute adoption/agreement. McKesson has no objection to use of this language for the limited purpose of notice of the DEA's allegations. | Same response as above. | 162:5 | 176:6 | Same as above. | Please see above. | | | | |
| 130:23 | 131:11 | | n/a | 176:15 | 187:2 | Same as above. | Please see above. | | | | |
| 131:23 | 132:8 | | n/a | 192:14 | 192:20 | Same as above. | Please see above. | | | | |
| 133:9 | 133:13 | | n/a | 192:25 (beginning with "Do") | 193:21 | Same as above. | Please see above. | | | | |
| 133:16 | 134:1 | | n/a | 193:24 | 195:20 | Same as above. | Please see above. | | | | |
| 134:15 | 134:21 | | n/a | 272:24 | 274:24 | Same as above. | Please see above. | | | | |
| 135:22 | 136:2 | | n/a | 275:2 | 275:12 | Same as above. | Please see above. | | | | |
| 136:5 | 136:19 | | n/a | 276:23 | 276:23 | Same as above. | Please see above. | | | | |
| 137:14 | 137:19 | | n/a | | | | | | | | |
| 138:8 | 138:22 | | n/a | | | | | | | | |
| 142:2 | 142:16 | | n/a | | | | | | | | |
| 142:25 | 143:7 | | n/a | | | | | | | | |
| 144:22 | 145:1 | | n/a | | | | | | | | |
| 145:3 | 145:4 | | n/a | | | | | | | | |
| 145:6 | 145:24 | | n/a | | | | | | | | |
| 146:1 | 146:19 | | n/a | | | | | | | | |
| 146:25 | 148:14 | | n/a | | | | | | | | |
| 148:16 | 148:22 | | n/a | | | | | | | | |
| 149:9 | 149:14 | | n/a | | | | | | | | |
| 149:24 | 149:25 | | n/a | | | | | | | | |
| 150:1 | 150:4 | | n/a | | | | | | | | |
| 150:6 | 150:7 | | n/a | | | | | | | | |
| 150:9 | 150:22 | | n/a | | | | | | | | |
| 150:25 | 151:2 | | n/a | | | | | | | | |
| 151:4 | 151:10 | | n/a | | | | | | | | |
| 151:22 | 152:4 | | n/a | | | | | | | | |
| 152:6 | 152:9 | | n/a | | | | | | | | |
| 152:22 | 153:5 | | n/a | | | | | | | | |
| 153:7 | 153:17 | | n/a | | | | | | | | |

Walker, Donald
January 10, 2019

| WITNESS NAME: | Walker, Donald |
| DEPOSITION DATE: | 1/10/2019 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | Page/Line End | Objections | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Replies to Objections |
| 153 20 | 155 3 | Objection to 154:24-155:3: Calls for legal conclusion insofar as question purports to identify an "obligation." | The objection to legal conclusion is not supported. Regulatory obligations are not legal conclusions. Moreover, it was the witness's job to understand the regulations and ensure that McKesson's conduct complied with same. From 2005-2015 Mr. Walker was Senior Vice President of Distribution (and in charge of regulatory affairs) for McKesson, and his job (as per his testimony) included the overall responsibility to ensure that McKesson was "complying with regulations associated with the handling and distribution of controlled substances". See Dep. at 21:2-14, 22:1-9. Accordingly, the question requests factual information about what the witness knew and/or understood about how McKesson was designing and implementing its policies/procedures, including how it was attempting to comply with regulations. | | | | | | | | |
| 155 6 | 155 11 | | n/a | | | | | | | | |
| 158 7 | 158 11 | | n/a | | | | | | | | |
| 158 14 | 158 19 | 158:17-19: Assumes facts; vague. | These facts are not assumed, and it has already been established in the record through exhibits and testimony that a certain percent of cash payments is a sign of diversion. See e.g., 5/24/2021 Trial Tr. at 66:7-12. In fact, it was confirmed by the witness himself. See Dep. at 158:21-22 ("The DEA identified cash payment percentage as a potential indicator [of diversion]".). With respect to the vagueness objection, the question was phrased to confirm generally that percentage of cash payments is a factor to consider regarding analysis for diversion, and the witness understood and fully answered. Further, while Plaintiffs submit that the question is not vague, any alleged vagueness can be properly considered, accounted for and/or weighed in this bench trial. | | | | | | | | |
| 158 21 | 159 1 | | n/a | | | | | | | | |
| 159 3 | 159 5 | | n/a | | | | | | | | |
| 160 7 | 160 19 | Hearsay. | This is not hearsay pursuant to FRE 803(6) and/or FRE 803(8). Hearsay is also not applicable because FRE 801(c)(2) is not satisfied (as what the DEA told McKesson also proves notice, knowledge, understanding, and/or state of mind regarding: applicable distribution regulations, the DEA's interpretation and/or enforcement of same, signs of diversion, etc.). Moreover, the information at issue is already in evidence through the multiple Rannazzisi letters sent to McKesson as well as through other exhibits and testimony. | | | | | | | | |
| 160 22 | 161 2 | | n/a | | | | | | | | |
| 162 17 | 162 24 | Hearsay. | This is not hearsay pursuant to FRE 803(6) and/or FRE 803(8). Hearsay is also not applicable because FRE 801(c)(2) is not satisfied (as what the DEA told McKesson also proves notice, knowledge, understanding, and/or state of mind regarding: applicable distribution regulations, the DEA's interpretation and/or enforcement of same, signs of diversion, etc.). Moreover, the information at issue is already in evidence through the multiple Rannazzisi letters sent to McKesson as well as through other exhibits and testimony. | | | | | | | | |
| 163 2 | 163 5 | Hearsay. | Same response as above. | | | | | | | | |
| 181 6 | 181 24 | | n/a | | | | | | | | |
| 182 25 | 183 4 | Calls for a legal conclusion. | The objection to legal conclusion is not supported. Regulatory obligations are not legal conclusions. Also, the witness testified that McKesson was required "to comply with the Code of Federal Regulations in the handling and distribution of controlled substances". Moreover, it was the witness's job to ensure compliance, as from 2005-2015, Mr. Walker was Senior Vice President of Distribution (and in charge of regulatory affairs) for McKesson, which, as testified to by the witness, included the overall responsibility to ensure that McKesson was complying with the regulations associated with the handling and distribution of controlled substances. See Dep. at 21:2-14, 22:1-9. The questioning addresses the witness's knowledge and perspective relative to same, as shown by the witness' answers. Id. at 183:6-184:12. | | | | | | | | |
| 183 6 | 183 17 | Calls for a legal conclusion. | Same response as above. | | | | | | | | |
| 183 19 | 184 8 | Calls for a legal conclusion. Purports to identify a "know your customer" legal responsibility that is not found in the CSA or regulations. | Same response as above. | | | | | | | | |
| 184 10 | 184 20 | Calls for a legal conclusion. | Same response as above. | | | | | | | | |
| 184 22 | 185 12 | | n/a | | | | | | | | |
| 186 2 | 186 6 | | n/a | | | | | | | | |
| 186 14 | 187 13 | | n/a | | | | | | | | |
| 188 3 | 188 16 | | n/a | | | | | | | | |

Walker, Donald
January 10, 2019

| WITNESS NAME: | Walker, Donald |
|---|---|
| DEPOSITION DATE: | 1/10/2019 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | Page/Line End | Objections | Replies to Objections | | | Page/Line Begin | Page/Line End | Objections | Replies to Objections | | | Page/Line Begin | Page/Line End | Objections | Replies to Objections | |
| 188 19 | 190 4 | Lacks personal knowledge - Mr. Walker is not on the document. | Lack of Personal Knowledge is not supported. This is a form objection and was not made during the deposition for 188:19-189:24, so any such objection was waived. Also, the witness need not be on the document to have personal knowledge of the subject matter; a witness may testify to a matter where evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter, and that evidence may consist of the witness' own testimony, as is the case here, where it has been elicited through the examination.

Specifically, the witness is in a position to know about the Controlled Substances Monitoring Program thresholds because of his extensive McKesson experiences as a Distribution Center Manager from 1992 where his duties included oversite of daily distribution of controlled substances to pharmacies (Walker Dep. 16:13, 17:16, 18:3-4), as a Vice President of Distribution Operations from 1993 (or 1994) where his responsibility extended to McKesson distribution centers' execution of handling and distribution of controlled substances (Walker Dep. 19:19, 20:16-20), and as Senior Vice President of Distribution in 1996 where he was responsible for McKesson's Regulatory Affairs Group, which was responsible for ensuring national compliance with regulations associated with handling and distributing controlled substances (Walker Dep. 21:2-4, 22:1-9). Further, the witness has already testified extensively on the importance of thresholds in McKesson's monitoring program (Walker Dep. 138:20-22), how threshold customer policies developed over the years (Walker Dep. 138:4), how "all threshold increases were reviewed by the Director of Regulatory Affairs (DRAs)." (Walker Dep. 145:17-20)

Here, he agrees with the recitation of the document, which is McKesson-authored by the witness' co-workers providing insight into threshold adjustment protocols for Regional National Accounts (RNAs) and Independent National Accounts (Independents), and the facts are outlined therein but also cogently described by the witness in his own words. In fact, the witness was able to answer based on this experience and knowledge, which clarifies and confirms that McKesson did not require prescribing data to grant a threshold increase for a large chain pharmacy. Id. at 190:6-8 ("Generally we did not ask for any dispensing data from our retail national account pharmacies."). As evidenced by the answer, the witness had personal knowledge of the McKesson policies/ procedures at issue. | | | | | | | | | | | | |
| 190 6 | 192 20 | Lacks personal knowledge - Mr. Walker is not on the document. | Same as above. Also, this objection to form was not made during the deposition for 190:10-192:15, and is thus waived relative to same. | | | | | | | | | | | | |
| 192 23 | 193 8 | | n/a | | | | | | | | | | | | |
| 193 12 | 193 22 | | n/a | | | | | | | | | | | | |
| 193 24 | 193 24 | | n/a | | | | | | | | | | | | |
| 194 2 | 194 7 | | n/a | | | | | | | | | | | | |
| 194 9 | 194 14 | | n/a | | | | | | | | | | | | |
| 194 16 | 195 2 | | n/a | | | | | | | | | | | | |
| 195 5 | 195 10 | Hearsay. | This is not hearsay on its face, as the witness is testifying as to his own interpretations and understandings of DEA information as given to him directly, but nor does it satisfy FRE 801(c)(2). Moreover, even if considered hearsay, it would be considered not hearsay under FRE 801(d)(2), given the Exhibit 752 presentation authored by the witness on the subject matter and distributed to disseminate the facts on "How the DEA sees it" and explained to his McKesson Directors of Regulatory Affairs that ". . . the wholesaler distributors who supply pharmacies without appropriate due diligence have caused and continue to cause millions of dosage units of oxycodone and other controlled substances to be diverted and pose an imminent threat to the public health and safety." | | | | | | | | | | | | |
| 195 13 | 195 15 | Hearsay. | Same as above. | | | | | | | | | | | | |
| 197 7 | 197 22 | Assumes facts regarding what could be observed/concluded from reviewing dispensing data that are unsupported in evidence. Attorney asks questions but cuts of witness without providing an opportunity to answer. Designation of question only is improper. | The examiner's question does not assume facts, instead the predicate provided in the question was a reasonable interpretation of facts previously established by the witness through his personal knowledge and experience. See e.g., Walker Dep. 149:24-150:7 (an independent pharmacy's dispensing data is going to represent to McKesson how much oxycontin they are selling, actually dispensing, filling prescriptions, and dispensing); Walker Dep. 158:24-159:5 (if dispensing data is complete, McKesson would see who the pharmacy's prescribing doctors are); Walker Dep. 192:16-20 (large chain pharmacies were not required to provide prescribing data to receive a threshold increase); Walker Dep. 192:23-193:3 (because McKesson did not obtain prescribing data to increase a large chain pharmacy, McKesson had no direct knowledge of the physicians who were writing prescriptions at large national chain pharmacies). Here, the natural continuation of that inquiry led to attempts to determine the effects of McKesson's lack of dispensing data would have.

Further, examiner's attempts to clarify and narrow the question do not deprive the witness of the ability to answer, which he does at the next designated answer 198:5-6. Any potential argumentative question can be ignored and/or minimized in this Bench trial. | | | | | | | | | | | | |
| 197 25 | 198 3 | Assumes facts regarding what could be observed/concluded from reviewing dispensing data that are unsupported in evidence. Argumentative. | Same as above. | | | | | | | | | | | | |
| 198 5 | 198 6 | Assumes facts regarding what could be observed/concluded from reviewing dispensing data that are unsupported in evidence. Argumentative. | Same as above. | | | | | | | | | | | | |

Walker, Donald
January 10, 2019

| WITNESS NAME: | Walker, Donald |
|---|---|
| DEPOSITION DATE: | 1/10/2019 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | Page/Line End | Objections | Replies to Objections | | Page/Line Begin | Page/Line End | Objections | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Replies to Objections |
| 198  15 | 198  18 | Calls for legal conclusion. | This objection alleging that the inquiry requests the witness to improperly reach a legal conclusion, which is clearly a job reserved for the judge in this bench trial, is unsupported. An inquiry is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact. As McKesson's Senior Vice President of Distribution from 1996 until 2015 where he was responsible for McKesson's Regulatory Affairs Group, which was responsible for ensuring national compliance with regulations associated with handling and distributing controlled substances, it was part of the witness' duties to understand and execute McKesson's DEA-imposed obligations. As such, it is a practical question, not a legal question, to ask what was included in those obligations and a practical answer, not a legal conclusion, when the witness responds. | | | | | | | | | |
| 198  21 | 199  11 | | n/a | | | | | | | | | |
| 200  8 | 200  14 | Assumes facts about what could be observed/concluded from reviewing dispensing data. | The examiner's question does not assume facts, instead the predicate provided in the question was a reasonable interpretation of facts previously established by the witness through his personal knowledge and experience. See e.g., Walker Dep. 149:24-150:7 (an independent pharmacy's dispensing data is going to represent to McKesson how much oxycontin they are selling, actually dispensing, and filling prescriptions); Walker Dep. 158:24-159:5 (if dispensing data is complete, McKesson would see who the pharmacy's prescribing doctors are); Walker Dep. 192:16-20 (large chain pharmacies were not required to provide prescribing data to receive a threshold increase); Walker Dep. 192:23-193:3 (because McKesson did not obtain prescribing data to increase a large chain pharmacy, McKesson had no direct knowledge of the physicians who were writing prescriptions at large national chain pharmacies). Here, the natural continuation of that inquiry led to attempts to determine the effects of McKesson's lack of dispensing data, and the witness was able to answer clearly that, "Without prescribing data from the national accounts, we would not have the elements of prescription data that we have outlined before." As such, only facts are being discussed. | | | | | | | | | |
| 200  17 | 200  19 | Assumes facts about what could be observed/concluded from reviewing dispensing data. | Same as above. | | | | | | | | | |
| 201  6 | 201  14 | | n/a | | | | | | | | | |
| 201  25 | 202  2 | | n/a | | | | | | | | | |
| 202  5 | 203  1 | Calls for speculation. | Speculation is not supported. This is a form objection that were not made to several questions at the time and are thus waived. The witness is not being asked to form a theory or conjecture. Rather, the witness is asked to confirm whether the questions by the examiner are accurate as to the witness' extensive personal experience and knowledge of the industry. Clearly, the witness understood and was able to answer. | | | | | | | | | |
| 203  4 | 204  1 | Calls for speculation. | Same as above. | | | | | | | | | |
| 211  23 | 213  24 | Compound; assumes facts; misstates the document which does provide information about coordination with RNA internal regulatory at page 4. | 213:15-24: Compound, vague, or ambiguous question is not supported. The concern for the clarity of the wording has been demonstrably avoided by the witness' clear response that he didn't recall having a conversation with the DEA regarding the subject matter.<br><br>Assumes Fact not in Evidence is not supported. This is a form objection and was not made at the time, so any such objection was waived. Further, counsel's questions are not in evidence, and the witness expressed his first-hand knowledge of the facts to which he testified.<br><br>The examiner does not misstate the document; MCKMDL00498302 does in fact reflect the Level 1 Review Actions and Outcome Alternatives. The witness testified that, "I prepared the original [presentation]" and it was his "understanding . . . that it was a document that we put together for a review with various DEA field offices and DEA. | | | | | | | | | |
| 214  1 | 214  8 | Assumes facts; misstates prior testimony and document; argumentative. | Same as above. | | | | | | | | | |
| 214  11 | 214  12 | Assumes facts; misstates prior testimony and document; argumentative. | Same as above. | | | | | | | | | |
| 214  20 | 214  24 | | n/a | | | | | | | | | |
| 217  10 | 217  15 | | n/a | | | | | | | | | |
| 217  18 | 217  19 | | n/a | | | | | | | | | |
| 217  21 | 218  2 | | n/a | | | | | | | | | |
| 218  19 | 220  9 | Lacks relevant/geographic scope - McKesson did not service Topco/Piggly Wiggly accounts in Huntington Cabell. | Lack of Relevance is not supported. It is a low burden to show a fact or opinion has some reasonable connection with, and in regard to evidence in trial, having some value or tendency to prove a matter of fact significant to the case. Specifically, the geographic scope of facts provided by a national entity doing business on a national scale and whose national programs are implemented in the subject geographic locale – the City of Huntington and Cabell County – are materially at issue and provide at a minimum background, context, and similarly situated comparables regarding the impact of those national policies on local opioid issues.<br><br>Here, the witness' testimonial evidence has established that, as Senior Vice President of Distribution, the witness was responsible for McKesson's Regulatory Affairs Group that operated nationally, because they were responsible for ensuring national compliance with regulations associated with handling and distributing controlled substances. Additionally, their customers are National Retail Chain Pharmacies. Further, McKesson enacted diversion policies to coordinate the regulatory affairs group with the diversion control divisions at the national retail pharmacies headquarters. This means the McKesson was working with Pharmacies on a national scale despite the geographic locale of the pharmacies to where McKesson was distributing, including the City of Huntington and Cabell County. As such, McKesson's policy implementation and customer dealings provide the factfinder with value through their tendency to prove or support understanding of the consequences of McKesson's actions. | | | | | | | | | |

Walker, Donald
January 10, 2019

| WITNESS NAME: | Walker, Donald |
|---|---|
| DEPOSITION DATE: | 1/10/2019 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | Page/Line End | Objections | Replies to Objections | | Page/Line Begin | Page/Line End | Objections | Replies to Objections | | Page/Line Begin | Page/Line End | Objections | Replies to Objections | |
| 220  11 | 220  25 | Objection to 220:20-25:  Assumes facts; lack of personal knowledge. | Lack of Personal Knowledge is not supported. This is a form objection and was not made at the time, so any such objection was waived.  Also, the witness need not be on a document to have personal knowledge of the subject matter within; a witness may testify to a matter where evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter, and that evidence may consist of the witness' own testimony, as is the case here, where it has been elicited through the examination.

Specifically, the witness is in a position to know about multimillion dollar files paid by McKesson customers for violations of the Controlled Substances Act primarily because of his role as Senior Vice President of Distribution from 1996 until 2015 where he was responsible for McKesson's Regulatory Affairs Group, which was responsible for ensuring national compliance with regulations associated with handling and distributing controlled substances (Walker Dep. 21:2-4, 22:1-9). Further, the witness agrees that CVS "had paid some penalties," but didn't recall the amount, events, or issues," which contradicts the notion that the witness altogether lacked personal knowledge. | | | | | | | | | | |
| 221  4 | 221  15 | 221:8-221:15:  Lacks personal knowledge (Mr. Walker is not on the relevant email); calls for speculation. | Lack of Personal Knowledge is not supported. This is a form objection and was not made at the time, so any such objection was waived.  Also, the witness need not be on a document to have personal knowledge of the subject matter within; a witness may testify to a matter where evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter, and that evidence may consist of the witness' own testimony, as is the case here, where it has been elicited through the examination.

Specifically, the witness is in a position to know about multimillion dollar files paid by McKesson customers for violations of the Controlled Substances Act primarily because of his role as Senior Vice President of Distribution from 1996 until 2015 where he was responsible for McKesson's Regulatory Affairs Group, which was responsible for ensuring national compliance with regulations associated with handling and distributing controlled substances (Walker Dep. 21:2-4, 22:1-9). Further, the witness agrees that CVS "had paid some penalties," but didn't recall the amount, events, or issues," which contradicts the notion that the witness altogether lacked personal knowledge.

Speculation is not supported. The witness is not being asked to form a theory or conjecture. Rather, the witness is asked to confirm whether the questions by the examiner are accurate as to the witness' extensive personal experience, knowledge of the industry, common knowledge, and the exhibit he held in hand. Clearly, the witness understood and was able to answer as to what was written and as to his understanding of the word, "proxy." | | | | | | | | | | |
| 221  18 | 221  19 | Lacks personal knowledge (Mr. Walker is not on the relevant email); calls for speculation. | Same as above. | | | | | | | | | | |
| 221  21 | 223  1 | Lacks personal knowledge (Mr. Walker is not on the relevant email). | Lack of Personal Knowledge is not supported. This is a form objection and was not made at the time, so any such objection was waived.  Also, the witness need not be on a document to have personal knowledge of the subject matter within; a witness may testify to a matter where evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter, and that evidence may consist of the witness' own testimony, as is the case here, where it has been elicited through the examination.

Specifically, the witness is in a position to know about McKesson Regulatory Compliance and reviewing Controlled Substance Monitoring Program because of his extensive McKesson experiences as a Distribution Center Manager from 1992 where his duties included oversite of daily distribution of controlled substances to pharmacies (Walker Dep. 16:13, 17:16, 18:3-4), as a Vice President of Distribution Operations from 1993 (or 1994) where his responsibility extended to McKesson distribution centers' execution of handling and distribution of controlled substances (Walker Dep. 19:19, 20:16-20), and as Senior Vice President of Distribution from 1996 until 2015 where he was responsible for McKesson's Regulatory Affairs Group, which was responsible for ensuring national compliance with regulations associated with handling and distributing controlled substances (Walker Dep. 21:2-4, 22:1-9). Further, the witness had already testified extensively about dispensing data. | | | | | | | | | | |
| 223  4 | 223  7 | Lacks personal knowledge (Mr. Walker is not on the relevant email). | Same as above. | | | | | | | | | | |
| 223  7 | 223  12 | Lacks personal knowledge (Mr. Walker is not on the relevant email). | Same as above. | | | | | | | | | | |
| 223  16 | 223  18 | Lacks personal knowledge (Mr. Walker is not on the relevant email). | Same as above. | | | | | | | | | | |
| 224  12 | 224  16 | Assumes facts; misstates the documents insofar as it suggests that the two documents selected by counsel from millions produced represent the full timeline/policies in place for RNA customers. | Assumes Fact not in Evidence is not supported. This is a form objection not made with the foundation or mischaracterization objections at the time of the deposition, so any such objection was waived. Further, the witness expressed his first-hand knowledge of the facts to which he testified when he described the development of the program.

The questions do not misstate the documents. Notwithstanding that plaintiffs chose to question the witness on particular documents out of the millions produced by defendants, the documents chosen when considered in context and in addition to the expertise provided via witness' testimony together address facts surrounding McKesson's policies over time in place for RNA customers. Moreover, even if there were any issues with the question, they are minor at most and can be properly considered, accounted for and/or weighed by the Court in this bench trial. | | | | | | | | | | |
| 224  19 | 224  22 | Assumes facts; misstates the documents insofar as it suggests that the two documents selected by counsel from millions produced represent the full timeline/policies in place for RNA customers. | Same as above. | | | | | | | | | | |
| 225  17 | 226  6 | | n/a | | | | | | | | | | | |
| 226  9 | 226  13 | | n/a | | | | | | | | | | | |

| WITNESS NAME: | Walker, Donald |
| DEPOSITION DATE: | 1/10/2019 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | Page/Line End | Objections | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Replies to Objections |
| 227 8 | 227 15 | Calls for legal conclusion; argumentative; compound; assumes facts and misstates prior testimony regarding McKesson's diligence program for RNA customers. | This objection alleging that the inquiry requests the witness to improperly reach a legal conclusion, which is clearly a job reserved for the judge in this bench trial, is unsupported. An inquiry is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact. Here, opposite from a legal analysis, the question that addresses specifically whether the U.S. government issued any dispensation to McKesson from their legal duties is one of fact. It was the witness's job to make such determinations. From 2005-2015 Mr. Walker was Senior Vice President of Distribution (and in charge of regulatory affairs) for McKesson, which, as testified to by the witness, included the overall responsibility to ensure that McKesson was complying with the regulations associated with the handling and distribution of controlled substances. See Dep. at 21:2-14, 22:1-9.<br><br>Objection to a compound or argumentative question is not supported. As the factual predicate was established by testimony and the witness's answer shows that he was able to understand and fully respond. Further, the concern for the clarity of the wording has been demonstrably avoided by the witness' clear response, so to the extent any alleged vagueness or argumentative issues exist with the question/answer, the Court can properly consider, account for, and/or weigh same in this bench trial. | | | | | | | |
| 227 17 | 227 24 | Calls for legal conclusion; argumentative; compound; assumes facts and misstates prior testimony regarding McKesson's diligence program for RNA customers. | Same as above. | | | | | | | | |
| 229 17 | 229 25 | Calls for a legal conclusion. | The objection to legal conclusion is not supported. An inquiry is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact. Further, regulatory obligations are not legal conclusions. The witness testified that McKesson was required "to comply with the Code of Federal Regulations in the handling and distribution of controlled substances". See Dep. at 73:14-20. Here, the question inquires as to the witness's understanding of regulatory responsibilities of distributors and pharmacies in follow up to the witness's testimony that, "The regulation required that we [McKesson] operate a system to identify suspicious orders and have systems to prevent the diversion of controlled substances . . . and the pharmacies and chains as a registrant had the same responsibility. So we relied upon their responsibility and their tools to assist us in ensuring that we were complying." Walker Dep. 227:17-24. It was the witness's job to make such determinations. From 2005-2015 Mr. Walker was Senior Vice President of Distribution (and in charge of regulatory affairs) for McKesson, which, as testified to by the witness, included the overall responsibility to ensure that McKesson was complying with the regulations associated with the handling and distribution of controlled substances. See Dep. at 21:2-14, 22:1-9. | | | | | | | |
| 230 15 | 230 21 | Calls for a legal conclusion. | Same as above. | | | | | | | | |
| 231 10 | 231 11 | Lacks personal knowledge; Mr. Walker does not appear on email. | Lack of Personal Knowledge is not supported. This is a form objection and was not made during the deposition for 231:10-233:13, so any such objection was waived. Also, the witness need not be on the document to have personal knowledge of the subject matter; a witness may testify to a matter where evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter, and that evidence may consist of the witness' own testimony, as is the case here, where it has been elicited through the examination.<br><br>Specifically, the witness is in a position to know about the Controlled Substances Monitoring Program, because from 2005-2015 Mr. Walker was Senior Vice President of Distribution (and in charge of regulatory affairs) for McKesson, which, as testified to by the witness, included the overall responsibility to ensure that McKesson was complying with the regulations associated with the handling and distribution of controlled substances. See Dep. at 21:2-14, 22:1-9. Here, he agrees with the recitation of the document, which is McKesson-authored by the witness' co-worker, a Director of Regulatory Affairs monitoring large national chains, providing insight into adjustment protocols for Regional National Accounts (RNAs) into the RNA CSMP processes, and the facts are outlined therein. | | | | | | | |
| 231 15 | 233 20 | Lacks personal knowledge; Mr. Walker does not appear on email; calls for speculation. | Same as above.<br><br>Further, speculation is not supported. This is a form objection and was not made at the time, so any such objection was waived. The witness is not being asked to form a theory or conjecture without firm evidence. Rather, the witness is confirming whether the question by the examiner is accurate as to the exhibit he held in hand. | | | | | | | |
| 233 23 | 233 23 | Lacks personal knowledge; Mr. Walker does not appear on email; call for speculation. | Same as above. | | | | | | | | |
| 234 2 | 234 4 | Lacks personal knowledge; Mr. Walker does not appear on email; call for speculation. | Same as above. | | | | | | | | |
| 234 9 | 234 12 | | n/a | | | | | | | | |
| 249 2 | 249 9 | Counsel asks question but does not allow witness to respond, instead reformulating question after objection. As such, that the designation constitutes only improper narrative by counsel without a response. Misstates prior testimony; suggests to witness that a word used in an email by another McKesson employee, Ms. Thomet, constitutes his own prior testimony. | The form of the question is not improper. Narrative was required to provide thorough background and/or a full predicate, but the questioning allowed the witness to properly and/or fully answer, which the witness did at 249:14-18. Additionally, the witness had already confirmed that McKesson was relying upon retail pharmacies to conduct their own due diligence, such that McKesson gave the responsibility of due diligence to the national chain pharmacies. Further, any potential unclarity in the question can be ignored and/or minimized in this Bench trial.<br><br>The questions do not misstate prior testimony. Ms. Thomet did say McKesson was giving its proxy to the big national chains with respect to regulatory oversight. See Ex. 678 and Walker Dep. 221:8-12. The witness is asked to confirm whether the questions by the examiner are accurate as to the witness' extensive personal experience, knowledge of the industry, common knowledge, and the exhibit he held in hand. Clearly, the witness understood and was able to answer, as he clarified exactly what he could not testify to in response. | | | | | | | |

| WITNESS NAME: | Walker, Donald |
|---|---|
| DEPOSITION DATE: | 1/10/2019 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Replies to Objections | | Page/Line Begin | Page/Line End | Objections | Replies to Objections | |
| 249 | 12 | 249 | 12 | Misstates prior testimony; argumentative. | Same as above.<br><br>Further, the form of the question is not argumentative. The questioning allowed the witness to properly and/or fully answer, which the witness did. Any potential argumentative question can be ignored and/or minimized in this Bench trial. | | | | | | | | | | |
| 249 | 14 | 250 | 3 | Objection to 249:25-250:3:  Counsel asks questions but does not provide an opportunity for witness to respond; designation of counsel's question is improper and not evidence. | First, the examiner clarified the question by narrowing the scope of the subject matter after having received an objection to the form of his question. Second, the concern for the clarity of the wording has been demonstrably avoided by the witness' clear response that, "I don't know." | | | | | | | | | | |
| 250 | 6 | 250 | 8 | | n/a | | | | | | | | | | |
| 250 | 12 | 251 | 3 | | n/a | | | | | | | | | | |
| 251 | 11 | 251 | 20 | Calls for speculation as it asks if anyone at McKesson asked a question, as opposed to prior questions which asked only about Mr. Walker himself ("you"). | Speculation is not supported. The witness is not being asked to form a theory or conjecture without firm evidence. Rather, the witness is confirming whether the question by the examiner is accurate as to the exhibit he held in hand in addition to his extensive personal knowledge from his position in charge of all the regulatory during the time framed by the questions in 2008 through 2013. Here, in 2013, the witness clearly states that he - Senior Vice President of Distribution and the one in charge of McKesson regulatory affairs, which included the overall responsibility to ensure that McKesson was complying with the regulations associated with the handling and distribution of controlled substances - does not know if he or anyone at McKesson ever asked any of the big national chains whether or not they had a suspicious order monitoring program in 2008 through 2013. Walker Dep. 21:2-14, 22:1-9, 249:14-251:23. | | | | | | | | | | |
| 251 | 23 | 251 | 23 | Calls for speculation as it asks if anyone at McKesson asked a question, as opposed to prior questions which asked only about Mr. Walker himself ("you"). | Same as above. | | | | | | | | | | |
| 339 | 21 | 341 | 4 | Objection 340:25-2: Assumes facts; misstates document asserting that sales personnel where ever "in the middle of the monitoring program" | Assumes Fact in Evidence is not supported. Counsel's questions are not in evidence, and the witness expressed his first-hand knowledge of the facts to which he testified. The questioner's use of colloquialism in describing the removal of previously "heavily" depended upon sales force as "out of the middle" of the monitoring program was not unclear or a misstatement of the document. Rather, the testimony elicited that the witness could not recall specifically whether it was in 2013 that the witness "modified our go-forward processes" after evaluating in writing that "Prior Controlled Substances Monitoring Program process [was] heavily dependent on sales and op." Moreover, any such minor issues with the question can be properly considered, accounted for, and/or weighed by the Court in this bench trial. | | | | | | | | | | |
| 341 | 5 | 341 | 12 | | n/a | | | | | | | | | | |
| 341 | 16 | 341 | 23 | Assumes facts; calls for speculation; misstates document. | Assumes Fact in Evidence is not supported. This is a form objection and was not made at the time when the lack of foundation objection was made, so any such objection was waived. Further, counsel's questions are not in evidence, and the witness expressed his first-hand knowledge of the facts to which he testified. Moreover, any such minor issues with the question can be properly considered, accounted for, and/or weighed by the Court in this bench trial.<br><br>Speculation is not supported. This is a form objection and was not made at the time when the lack of foundation objection was made, so any such objection was waived. The witness is not being asked to form a theory or conjecture without firm evidence. Rather, the witness is confirming whether the question by the examiner is accurate as to the exhibit he held in hand.<br><br>The interpretation of the meaning of the document is not a misstatement where, as here, the witness repeatedly confirms the accuracy of the statements made from the document. | | | | | | | | | | |
| 342 | 1 | 342 | 17 | Mischaracterizes document which witness describes as relating only to a promotion on product "dating" (i.e., the number of days between receiving a product and having an invoice come due). See 343:7-14. | The questions accurately summarize the document written by the witness and the witness agrees with the recitation. The interpretation of the meaning of the document is not a misstatement where, as here, the witness confirms the accuracy of the statements made from the document. Specifically, nothing is misportrayed when the examiner asked the witness, "Is that what he states?" and the witness replies "Yes." | | | | | | | | | | |
| 343 | 16 | 344 | 15 | Mischaracterizes document which witness describes as relating only to a promotion on product "dating" (i.e., the number of days between receiving a product and having an invoice come due). See 343:7-14. | The questions accurately summarize the document written by the witness and the witness agrees with the recitation. The interpretation of the meaning of the document is not a misstatement where, as here, the witness confirms the accuracy of the statements made from the document. Specifically, nothing is misportrayed when the examiner asked the witness, "Did you use the word 'promo'?" and the witness replies "I used the word 'promo.'" The interpretation of "what was being offered" as opposed to what was actually written, "we would 'promote' controlled substances," is a determination best made by the trier of fact, since any interpretations of this are most properly considered, accounted for, and/or weighed in this bench trial by the trier of fact. | | | | | | | | | | |

Walker, Donald
January 10, 2019

| WITNESS NAME: | Walker, Donald |
| DEPOSITION DATE: | 1/10/2019 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | Page/Line End | Objections | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Replies to Objections |
| 344 19 | 345 8 | Lack of personal knowledge as witness is not on document and testifies he doesn't "understand" the document and "can only see what he's written." (See 345:14-16.) | Lack of Personal Knowledge is not supported. The witness need not be on the document to have personal knowledge of the subject matter; a witness may testify to a matter where evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter, and that evidence may consist of the witness' own testimony, as is the case here, where it has been elicited through examination.<br><br>Specifically, the witness is in a position to know about the Controlled Substances Monitoring Program, because from 2005-2015 he was Senior Vice President of Distribution (and in charge of regulatory affairs) for McKesson, which, as testified to by the witness, included the overall responsibility to ensure that McKesson was complying with the regulations associated with the handling and distribution of controlled substances. See Dep. at 21:2-14, 22:1-9. Furthermore, the witness testified regarding a 2008 email in which he wrote that, "I would like to review . . . how we manage these types of promos going forward" and that "we need to think through how we handle promos on controls especially lifestyle drugs like oxycodone." Here, while the witness does express concern that he can only see what the McKesson author wrote about a 2010 promotion on "Fentanyl checks," he then testifies in the affirmative, "Yes, I see that," in response to the question of "Free item promotion on fentanyl . . . is that what it says?" Walker Dep. 345:18-23. The marketing of controlled substances is within the scope of the witness's experience while at McKesson, and the questioning of the witness on his implementation of policies regarding the marketing of opioids or other controlled substances is squarely rooted in the witness' personal knowledge. | | | | | | | | |
| 345 11 | 345 11 | Lacks relevance; lack of personal knowledge as witness is not on document and testifies that he doesn't "understand" the document and "can only see what he's written." (See 345:14-16.) | Same as above. | | | | | | | | |
| 345 14 | 346 2 | Lack of personal knowledge as witness is not on document and testifies that he doesn't "understand" the document and "can only see what he's written." (See 345:14-16.)  Lack of relevance/geographic scope as the individuals speaking are from the Omaha, Buffalo, and Newcastle distribution centers, which do not service Huntington or Cabell County. | Same as above.<br><br>Further, Lack of Relevance is not supported. It is a low burden to show a fact or opinion has some reasonable connection with, and in regard to evidence in trial, having some value or tendency to prove a matter of fact significant to the case. Specifically, the geographic scope of facts provided by a national entity doing business on a national scale and whose national programs are implemented in the subject geographic locale – the City of Huntington and Cabell County – are materially at issue and provide at a minimum background, context, and similarly situated comparables regarding the impact of those national policies on local opioid issues.<br><br>Additionally, the Court has previously overruled relevance/geographic scope objection.  See e.g., 6/8/2021 Trial Tr. at 11:17-23 ("I'm going to overrule that objection for the reasons I overruled the similar objection yesterday during Mr. Rannazzisi's testimony. I think it – it embraces the entire situation here with regard to McKesson, which would include the geographic area issue here."). Issues with McKesson's nationwide policies/procedures applied to Huntington/Cabell, as confirmed by the witness. See Dep. at 89:1-3 ("Our system was a national system. So, yes, anything that occurred in Florida would have been consistent across the country."). | | | | | | | | |
| 346 6 | 346 7 | Lack of personal knowledge as witness is not on document and testifies that he doesn't "understand" the document and "can only see what he's written." (See 345:14-16.)  Lack of relevance/geographic scope as the individuals speaking are from the Omaha, Buffalo, and Newcastle distribution centers, which do not service Huntington or Cabell County. | Same as above. | | | | | | | | |
| 346 9 | 346 14 | Lack of personal knowledge as witness is not on document and testifies that he doesn't "understand" the document and "can only see what he's written." (See 345:14-16.)  Lack of relevance/geographic scope as the individuals speaking are from the Omaha, Buffalo, and Newcastle distribution centers, which do not service Huntington or Cabell County. | Same as above. | | | | | | | | |
| 346 16 | 347 2 | Lack of personal knowledge as witness is not on document and testifies that he doesn't "understand" the document and "can only see what he's written." (See 345:14-16.)  Lack of relevance/geographic scope as the individuals speaking are from the Omaha, Buffalo, and Newcastle distribution centers, which do not service Huntington or Cabell County. | Same as above. | | | | | | | | |

| WITNESS NAME: | Walker, Donald |
|---|---|
| DEPOSITION DATE: | 1/10/2019 |

| AFFIRMATIVE DEPOSITION DESIGNATIONS | | | | | | COUNTER DESIGNATIONS * Pink = Completeness Designation | | | | | REPLY DESIGNATIONS * Pink = Completeness Designation | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Page/Line Begin | | Page/Line End | | Objections | Replies to Objections | Page/Line Begin | Page/Line End | Objections | Replies to Objections | | Page/Line Begin | Page/Line End | Objections | Replies to Objections | |
| 347 | 18 | 349 | 11 | Lack of relevance/geographic scope - document relates only to the South region, which does not include West Virginia. Additional objection 348:13-19: hearsay statement by Mr. Odom is demonstrably inaccurate and a mistake based on the face of the document, such that reading that potion of the document into record and asking Mr. Walker to confirm only if he "sees" that text mischaracterizes the facts. | Lack of Relevance is not supported. It is a low burden to show a fact or opinion has some reasonable connection with, and in regard to evidence in trial, having some value or tendency to prove a matter of fact significant to the case. Specifically, the geographic scope of facts provided by a national entity doing business on a national scale and whose national programs are implemented in the subject geographic locale – the City of Huntington and Cabell County – are materially at issue and provide at a minimum background, context, and similarly situated comparables regarding the impact of those national policies on local opioid issues.

Additionally, the Court has previously overruled relevance/geographic scope objection.  See e.g., 6/8/2021 Trial Tr. at 11:17-23 ("I'm going to overrule that objection for the reasons I overruled the similar objection yesterday during Mr. Rannazzisi's testimony. I think it -- it embraces the entire situation here with regard to McKesson, which would include the geographic area issue here."). Issues with McKesson's nationwide policies/procedures applied to Huntington/Cabell, as confirmed by the witness.  See Dep. at 89:1-3 ("Our system was a national system. So, yes, anything that occurred in Florida would have been consistent across the country.").

This is not hearsay as it does not satisfy FRE 801(c)(2). Moreover, even if considered hearsay, it would fall under one or more exceptions such as FRE 801(d)(2).  As for the objections regarding 348:13-19, witness responded and extensively elaborated such that he was clearly capable of (and did) fully answer the questioning. Further, while Plaintiffs submit that the document contents are not demonstrably inaccurate or mistaken, any alleged inconsistencies can be properly considered, accounted for, and/or weighed in this bench trial. | | | | | | | | | |
| 349 | 14 | 349 | 14 | Lack of relevance/geographic scope - document relates only to the South region, which does not include West Virginia. | Same as above. | | | | | | | | | | |
| 350 | 6 | 350 | 7 | Lack of relevance/geographic scope - document relates only to the South region, which does not include West Virginia. | Same as above. | | | | | | | | | | |
| 350 | 10 | 351 | 18 | Lack of relevance/geographic scope - document relates only to the South region, which does not include West Virginia. | Same as above. | | | | | | | | | | |
| 352 | 24 | 353 | 9 | Lack of relevance/geographic scope - document relates only to the South region, which does not include West Virginia. Mischaracterizes document and prior testimony. | Same as above.

Further, the form of the question is not a mischaracterization of documents or prior testimony. The questions accurately summarize the document and the witness had agreed with the recitation. Namely, a McKesson employee wrote "thought you might want to see that we're [McKesson] is pushing hydrocodone with ISMC calls again," and another McKesson employee wrote "this is silly," in response while notifying other McKesson employees about the marketing campaign. As such, characterizing these two statements as, "one McKesson employee who says, you're pushing hydrocodone . . . [y]ou have another one saying, silly," does nothing but restate on their face the comments made by those employees. | | | | | | | | | | |