A.5

Script :          **Thompson B 20200723 & 28 DA PC**

Deposition :      **Thompson, Beth 2020-07-23,Thompson, Beth 2020-07-28**

Highlighter Key :

| | | |
|---|---|---|
| 🟦 | Defense Affirmatives | **01:13:03** |
| 🟪 | Plaintiff Completeness Co | **01:05:33** |
| 🟩 | Defense Counter Counter | **00:04:14** |
| 🟪 | Plaintiff Counters | **00:02:42** |

## Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

| Scene | Designation | Source | Tx Duration | Elapsed | Remains | Media File | Barcode |
|---|---|---|---|---|---|---|---|
| 1 | **4:4 - 4:11** | Thompson, Beth 2020-07-23 | 00:00:36 | 00:00:00 | 02:25:32 | Thompson_B-07232 | MV181.1 |

4:4    This is Media Unit 1 of the video recorded deposition
4:5    of Beth Thompson, as a 30(b)(6) of the Cabell County
4:6    Commission, taken by counsel for Defendant in the
4:7    matter of the City of Huntington and the Cabell
4:8    County Commission vs. AmerisourceBergen Drug
4:9    Corporation, et al, filed in the U.S. District Court
4:10   for the Southern District of West Virginia, Case Nos.
4:11   3:17-01362 and 3:17-0165.

| 2 | **5:13 - 5:15** | Thompson, Beth 2020-07-23 | 00:00:11 | 00:00:36 | 02:24:56 | Thompson_B-07232 | MV181.2 |

5:13         B E T H   T H O M P S O N
5:14     having been duly sworn, testified as follows:
5:15     EXAMINATION BY COUNSEL FOR CARDINAL HEALTH:

| 3 | **5:24 - 6:7** | Thompson, Beth 2020-07-23 | 00:00:14 | 00:00:47 | 02:24:45 | Thompson_B-07232 | MV181.3 |

5:24       Do you understand today that you're
6:1    testifying as the representative of the county
6:2    commission?
6:3    A.  I do.
6:4    Q.  And that the testimony that you give here
6:5    today is testimony of -- is the testimony of the
6:6    county commission in this case?
6:7    A.  Yes, I do.

| 4 | **6:24 - 7:10** | Thompson, Beth 2020-07-23 | 00:00:32 | 00:01:01 | 02:24:31 | Thompson_B-07232 | MV181.4 |

6:24   Q.  Thank you.  You have, I believe, in front
7:1    of you a copy of the Notice of Deposition to the
7:2    Cabell County Commission in this case; is that right?
7:3    A.  Yes, it is.
7:4    Q.  And I have one here, as well.  I believe
7:5    when we put this -- these boxes together, we didn't
7:6    mark this, but I marked the Notice of Deposition as
7:7    Exhibit 1A.
7:8         Have you reviewed the Notice of Deposition
7:9    before you came today, Ms. Thompson?
7:10   A.  I have.

| 5 | **16:3 - 16:17** | Thompson, Beth 2020-07-23 | 00:00:57 | 00:01:33 | 02:23:59 | Thompson_B-07232 | MV181.5 |

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

16:3    Q.   What about that definition of illicit
16:4    opioids do you believe makes the definition of
16:5    prescription opioids unclear?
16:6    A.   Well, we believe that they're both unclear,
16:7    because they're not mutually exclusive.  Just because
16:8    something is a prescription doesn't mean it can't be
16:9    illicit.  I think -- We think that there are
16:10   prescriptions that end up in the wrong hands in all
16:11   kinds of ways that would make them illicit.
16:12   Q.   And I want to make sure I understand you.
16:13   The point that you're making is that it is possible
16:14   for prescription opioids to be diverted so that they
16:15   are in someone's hands illegally or illicitly; is
16:16   that --
16:17   A.   Correct.

---

6    **19:7 -19:9**    Thompson, Beth 2020-07-23    00:00:05    00:02:30    02:23:02    Thompson_B-07232    MV181.6

19:7    Q.   Has diversion of prescription opioids
19:8    occurred in Cabell County?
19:9    A.   Yes.

---

7    **19:19 -19:23**    Thompson, Beth 2020-07-23    00:00:22    00:02:35    02:22:57    Thompson_B-07232    MV181.7

19:19   Q.   Is the theft of prescription opioids a
19:20   significant problem in Cabell County?
19:21   A.   The opioid crisis here, all of it, is a
19:22   significant problem in Cabell County.  The theft, the
19:23   crime, everything related to it is significant.

---

8    **20:7 -20:16**    Thompson, Beth 2020-07-23    00:00:28    00:02:57    02:22:35    Thompson_B-07232    MV181.8

20:7    Q.   Are you aware of any specific incident or
20:8    instance in which prescription opioids have been
20:9    stolen in Cabell County?
20:10   A.   Probably pick up the newspaper, listen to
20:11   the news, about any day, and it would be in there.
20:12   Q.   So you would agree that the theft of
20:13   prescription opioids is a significant problem in
20:14   Cabell County?
20:15   A.   The Commission thinks all of the ways that
20:16   drugs are diverted is a significant problem.

---

9    **20:17 -20:22**    Thompson, Beth 2020-07-23    00:00:29    00:03:25    02:22:07    Thompson_B-07232    MV181.9

20:17   Q.   When did the Commission first become aware

■ Defense Affirmatives     ■ Plaintiff Completeness Counte     ■ Defense Counter Counters     ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

|  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|
| | | 20:18 of the problem of prescription opioid theft? | | | | | |
| | | 20:19 A.  The entire problem, the theft, the | | | | | |
| | | 20:20 overdoses, all of it, I think we've already | | | | | |
| | | 20:21 determined from the lawsuit -- the allegations in the | | | | | |
| | | 20:22 lawsuit that everything was about 2006. | | | | | |

| 10 | **20:23 -21:4** | Thompson, Beth 2020-07-23 | 00:00:25 | 00:03:54 | 02:21:38 | Thompson_B-07232 | MV181.10 |
|---|---|---|---|---|---|---|---|

20:23   Q.  When you say everything was about 2006,
20:24   what exactly was it that the Commission became aware
21:1    of in 2006 concerning prescription opioids?
21:2    A.  The amount of opioids being dumped into our
21:3    communities, the crime increasing, overdoses
21:4    increasing, addiction increasing.

| 11 | **21:5 -21:16** | Thompson, Beth 2020-07-23 | 00:00:33 | 00:04:19 | 02:21:13 | Thompson_B-07232 | MV181.11 |
|---|---|---|---|---|---|---|---|

21:5    Q.  You say the amount of opioids being dumped
21:6    into our communities.  I want to focus on that word,
21:7    "dumped."  What do you mean by "dumped into our
21:8    communities"?
21:9    A.  Just what it says.  Dumped in here.
21:10   Q.  Well, by "dumped," do you mean that
21:11   somebody brought in a dump truck and dumped them out
21:12   in the street?
21:13   A.  You know, it feels like that at times, yes.
21:14   Q.  Where were the opioids dumped in Cabell
21:15   County?
21:16   A.  The entire county.

| 12 | **22:8 -22:12** | Thompson, Beth 2020-07-23 | 00:00:13 | 00:04:52 | 02:20:40 | Thompson_B-07232 | MV181.12 |
|---|---|---|---|---|---|---|---|

22:8    Q.  And so when you say that opioids were
22:9    dumped into Cabell County, you mean that they were
22:10   distributed to pharmacies and to doctors?
22:11   A.  In massive amounts, yes.  Way too much for
22:12   our community.

| 13 | **22:13 -22:24** | Thompson, Beth 2020-07-23 | 00:00:41 | 00:05:05 | 02:20:27 | Thompson_B-07232 | MV181.13 |
|---|---|---|---|---|---|---|---|

22:13   Q.  Did the pharmacies that received
22:14   prescription opioids order those opioids from
22:15   pharmaceutical distributors?
22:16   A.  We would assume they did.
22:17   Q.  And did they then dispense those
22:18   prescription opioids to fill prescriptions that were

■ Defense Affirmatives     ■ Plaintiff Completeness Counte     ■ Defense Counter Counters     ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

22:19   written by physicians?

22:20   A.  We would assume so.

22:21   Q.  And so when a distributor fills a

22:22   lawfully-placed order from a licensed pharmacy, is

22:23   that dumping in the view of the County Commission?

22:24   A.  Yes.

| 14 | 23:23 -24:17 | Thompson, Beth 2020-07-23 | 00:01:09 | 00:05:46 | 02:19:46 | Thompson_B-07232 | MV181.14 |
|----|--------------|---------------------------|----------|----------|----------|------------------|----------|

23:23   Q.  So the Commission -- in the Commission's

23:24   view, filling an order from a pharmacy for any

24:1   medication that can be addictive, constitutes dumping

24:2   that medication?

24:3   A.  It could.

24:4   Q.  It could or it does?

24:5   A.  It could and it does, in instances, yes.

24:6   Q.  You said it could.  How would the

24:7   Commission determine whether or not filling an order

24:8   for medication from a pharmacy constitutes dumping?

24:9   A.  Well, the Commission is not -- that's not

24:10   their function, that's not their role.  But the

24:11   Commission has looked at the things that have

24:12   happened to its county and the problems that have

24:13   been caused by the massive amounts of opioids that

24:14   were dumped in here and realizes the massive

24:15   destruction it's caused.  So the Commission would

24:16   feel that the addictive nature of opioids would be

24:17   dumping -- dumping it here.

| 15 | 24:18 -25:3 | Thompson, Beth 2020-07-23 | 00:00:38 | 00:06:55 | 02:18:37 | Thompson_B-07232 | MV181.15 |
|----|-------------|---------------------------|----------|----------|----------|------------------|----------|

24:18   Q.  And, again, I just want to be clear.  And

24:19   when you testified about dumping in various contexts

24:20   through the day, I'll ask again, when you testified

24:21   about dumping just now, you meant filling orders from

24:22   pharmacies in Cabell County; is that right?

24:23   A.  When the -- when your companies have the

24:24   knowledge of how much they were filling, yes.

25:1   Q.  Yes?  When you say "dumping," you were

25:2   referring to filling orders from pharmacies?

25:3   A.  Yes.

| 16 | 25:23 -26:20 | Thompson, Beth 2020-07-23 | 00:01:05 | 00:07:33 | 02:17:59 | Thompson_B-07232 | MV181.16 |
|----|--------------|---------------------------|----------|----------|----------|------------------|----------|

25:23   Q.  And what did the Commission then do in

Defense Affirmatives    Plaintiff Completeness Counte    Defense Counter Counters    Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

25:24   response when it learned that there was a problem

26:1   with theft of prescription opioids?

26:2   A.   The Commission doesn't have a role in that

26:3   to respond to it.

26:4   Q.   Is it within the power of the Commission to

26:5   ask the sheriff's office to respond to a crime

26:6   problem?

26:7   A.   They're different constitutional offices,

26:8   and they don't have any control over the other.

26:9   Q.   I understand that, but I think it's worth

26:10   exploring a little more.   What is the relationship

26:11   between -- the legal relationship between the County

26:12   Commission and the sheriff's office?

26:13   A.   They're different constitutional offices.

26:14   The Commission is -- they're fiscal agents for the

26:15   county, and the sheriff is the tax collector and the

26:16   law enforcement.

26:17   Q.   Does the County Commission control the

26:18   budget for the sheriff's office?

26:19   A.   It sets the budget, yes.   Once it sets it,

26:20   it doesn't have any control of what he does with it.

| 17 | **26:21 -27:20** | Thompson, Beth 2020-07-23 | 00:01:17 | 00:08:38 | 02:16:54 | Thompson_B-07232 | MV181.17 |

26:21   Q.   So the County Commission determines how

26:22   much money the sheriff's office has to operate each

26:23   year; is that right?

26:24   A.   In a sense, yes.

27:1   Q.   Is there a sense in which that's incorrect?

27:2   A.   Well, there is only so much money there for

27:3   each office to operate on.

27:4   Q.   Okay.   So your point is that the county has

27:5   a finite budget, but within that budget the County

27:6   Commission sets the budget of the sheriff's office;

27:7   is that right?

27:8   A.   Yes.

27:9   Q.   Does the County Commission communicate with

27:10   the sheriff's office about problems that exist in the

27:11   county?

27:12   A.   From time to time, yes.

27:13   Q.   What would be an example of that?

27:14   A.   Like the jail bill being so high, that the

27:15   sheriff would communicate with the Commission

■ Defense Affirmatives      ■ Plaintiff Completeness Counte      ■ Defense Counter Counters      ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

|  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|
| | | | 27:16 | regarding ways to try to reduce the jail bill, | | | | |
| | | | 27:17 | putting more people on home confinement.  Home | | | | |
| | | | 27:18 | confinement is a cheaper way to handle people than | | | | |
| | | | 27:19 | just sending them to jail, so -- for the county. | | | | |
| | | | 27:20 | Things like that. | | | | |

| 18 | **27:21 -28:3** | Thompson, Beth 2020-07-23 | 00:00:19 | 00:09:55 | 02:15:37 | Thompson_B-07232 | MV181.18 |
|---|---|---|---|---|---|---|---|
| | | 27:21 | Q.  Has the County Commission ever budgeted any | | | | |
| | | 27:22 | specific funds for the sheriff's office to address | | | | |
| | | 27:23 | the problem of theft of prescription opioids? | | | | |
| | | 27:24 | A.  No. | | | | |
| | | 28:1 | Q.  Why not? | | | | |
| | | 28:2 | A.  That's not how our budgets are set through | | | | |
| | | 28:3 | the state. | | | | |

| 19 | **28:4 -29:2** | Thompson, Beth 2020-07-23 | 00:01:07 | 00:10:14 | 02:15:18 | Thompson_B-07232 | MV181.19 |
|---|---|---|---|---|---|---|---|
| | | 28:4 | Q.  Does the Commission -- Do the Commission | | | | |
| | | 28:5 | approve every year of a line item budget for the | | | | |
| | | 28:6 | sheriff's office? | | | | |
| | | 28:7 | A.  Yes. | | | | |
| | | 28:8 | Q.  And when I say "line item," I mean a budget | | | | |
| | | 28:9 | that allocates funds for the sheriff's office in | | | | |
| | | 28:10 | particular categories.  So payroll, equipment, et | | | | |
| | | 28:11 | cetera, et cetera. | | | | |
| | | 28:12 | A.  Yes. | | | | |
| | | 28:13 | Q.  Is that how that works? | | | | |
| | | 28:14 | A.  Yes. | | | | |
| | | 28:15 | Q.  And has the Commission ever in that budget | | | | |
| | | 28:16 | allocated any funds to the sheriff's office to | | | | |
| | | 28:17 | address theft of prescription opioids? | | | | |
| | | 28:18 | A.  Well, in the sense the Commission could | | | | |
| | | 28:19 | be -- all of it could be addressing theft, crime. | | | | |
| | | 28:20 | That's what law enforcement does, so. | | | | |
| | | 28:21 | Q.  Has the Commission ever allocated any funds | | | | |
| | | 28:22 | to the sheriff's office specifically to address theft | | | | |
| | | 28:23 | of prescription opioids? | | | | |
| | | 28:24 | A.  The Commission would think all of it would | | | | |
| | | 29:1 | be -- any of the law enforcement would be to address | | | | |
| | | 29:2 | any crime problems in the county. | | | | |

| 20 | **29:23 -30:2** | Thompson, Beth 2020-07-23 | 00:00:11 | 00:11:21 | 02:14:11 | Thompson_B-07232 | MV181.20 |
|---|---|---|---|---|---|---|---|
| | | 29:23 | Q.  Has the County Commission ever communicated | | | | |

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

|  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|
|  |  | 29:24   with the sheriff's office about the problem of theft |  |  |  |  |  |
|  |  | 30:1   of prescription opioids? |  |  |  |  |  |
|  |  | 30:2   A.  Not that I'm aware of specifically. |  |  |  |  |  |

| 21 | **30:12 -30:15** | Thompson, Beth 2020-07-23 | 00:00:11 | 00:11:32 | 02:14:00 | Thompson_B-07232 | MV181.21 |
|---|---|---|---|---|---|---|---|
|  |  | 30:12   Q.  Has the County Commission taken any steps |  |  |  |  |  |
|  |  | 30:13   that you're aware of to address the problem of theft |  |  |  |  |  |
|  |  | 30:14   of prescription opioids? |  |  |  |  |  |
|  |  | 30:15   A.  Yes.  It filed this lawsuit. |  |  |  |  |  |

| 22 | **30:16 -30:24** | Thompson, Beth 2020-07-23 | 00:00:29 | 00:11:43 | 02:13:49 | Thompson_B-07232 | MV181.22 |
|---|---|---|---|---|---|---|---|
|  |  | 30:16   Q.  How does this lawsuit address theft of the |  |  |  |  |  |
|  |  | 30:17   prescription opioids? |  |  |  |  |  |
|  |  | 30:18   A.  Well, my testimony earlier, I think, was |  |  |  |  |  |
|  |  | 30:19   about all crime related to this and all the problems |  |  |  |  |  |
|  |  | 30:20   it has created, not just theft of the opioids, but |  |  |  |  |  |
|  |  | 30:21   the crimes, stealing children's bicycles to go get |  |  |  |  |  |
|  |  | 30:22   your next fix or, you know, whatever the problem is. |  |  |  |  |  |
|  |  | 30:23   That's what we filed this lawsuit for, is to address |  |  |  |  |  |
|  |  | 30:24   all of it. |  |  |  |  |  |

| 23 | **31:22 -32:19** | Thompson, Beth 2020-07-23 | 00:00:59 | 00:12:12 | 02:13:20 | Thompson_B-07232 | MV181.23 |
|---|---|---|---|---|---|---|---|
|  |  | 31:22   Q.  So you've mentioned this lawsuit.  Other |  |  |  |  |  |
|  |  | 31:23   than this lawsuit, has the Commission taken any steps |  |  |  |  |  |
|  |  | 31:24   to -- that -- in its view are intended to address the |  |  |  |  |  |
|  |  | 32:1   theft of prescription opioids? |  |  |  |  |  |
|  |  | 32:2   A.  The Commission's functions and roles are |  |  |  |  |  |
|  |  | 32:3   set out very specifically, and this is the only thing |  |  |  |  |  |
|  |  | 32:4   that the Commission could do to address it. |  |  |  |  |  |
|  |  | 32:5   Q.  Is the answer no? |  |  |  |  |  |
|  |  | 32:6   A.  No, the answer is that we filed this |  |  |  |  |  |
|  |  | 32:7   lawsuit to address it. |  |  |  |  |  |
|  |  | 32:8   Q.  And my question is:  Other than this |  |  |  |  |  |
|  |  | 32:9   lawsuit, has the Commission taken any steps intended |  |  |  |  |  |
|  |  | 32:10   to address the theft of prescription opioids? |  |  |  |  |  |
|  |  | 32:11   A.  It took the only step it could take. |  |  |  |  |  |
|  |  | 32:12   Q.  And understanding that that's the |  |  |  |  |  |
|  |  | 32:13   Commission's position, when you say it took the only |  |  |  |  |  |
|  |  | 32:14   step it could take, you mean filing this lawsuit? |  |  |  |  |  |
|  |  | 32:15   A.  Yes. |  |  |  |  |  |
|  |  | 32:16   Q.  And so is it the Commission's view that |  |  |  |  |  |
|  |  | 32:17   there's nothing else it could do to address the theft |  |  |  |  |  |

■ Defense Affirmatives     ■ Plaintiff Completeness Counte     ■ Defense Counter Counters     ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

|  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|
|  |  | 32:18   of prescription opioids? |  |  |  |  |  |
|  |  | 32:19   A.   Correct. |  |  |  |  |  |

| 24 | **33:3 -33:18** | Thompson, Beth 2020-07-23 | 00:00:52 | 00:13:11 | 02:12:21 | Thompson_B-07232 | MV181.24 |
|---|---|---|---|---|---|---|---|

33:3    Q.   Is it the Commission's view that providing

33:4     additional funding to the sheriff's office would have

33:5     helped address the theft of the prescription opioids?

33:6    A.   The Commission funded the sheriff's office

33:7     appropriately.

33:8    Q.   Would additional funding have helped

33:9     prevent or reduce the theft of prescription opioids?

33:10    A.   The Commission doesn't know.   It wasn't --

33:11    The Commission isn't aware that the sheriff ever

33:12    asked for any more funding to specifically address

33:13    it.

33:14    Q.   Has the sheriff's office ever asked the

33:15    Commission for any funding related to the opioid

33:16    problem in Cabell County?

33:17    A.   The Commission isn't aware of anything

33:18    specific.

| 25 | **33:19 -34:5** | Thompson, Beth 2020-07-23 | 00:00:38 | 00:14:03 | 02:11:29 | Thompson_B-07232 | MV181.25 |
|---|---|---|---|---|---|---|---|

33:19    Q.   We're still on Topic 1, talking about

33:20    diversion.   We've talked about diversion by theft.

33:21    Is another path to diversion in Cabell County people

33:22    obtaining prescription opioids from family members?

33:23    A.   Yes, the Commission would think that was

33:24    another way, yes.

34:1    Q.   Is that a significant problem?

34:2    A.   I think I testified earlier that the

34:3    Commission thinks that everything involved with this

34:4    opioid crisis is a significant problem within our

34:5    county.

| 26 | **34:12 -34:22** | Thompson, Beth 2020-07-23 | 00:00:36 | 00:14:41 | 02:10:51 | Thompson_B-07232 | MV181.26 |
|---|---|---|---|---|---|---|---|

34:12      So I want to make sure that we have a clear

34:13    record.  Does the Commission believe that people

34:14    obtaining prescription opioids from family members is

34:15    a significant problem in Cabell County?

34:16    A.   Yes.

34:17    Q.   When did the county become aware of the

34:18    problem of people getting prescription opioids from

■ Defense Affirmatives      ■ Plaintiff Completeness Counter      ■ Defense Counter Counters      ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

|  | | | | | | | |
|---|---|---|---|---|---|---|---|

34:19   family members?
34:20   A.  I still think the Commission would refer
34:21   back to the dates that we talk about in our lawsuit,
34:22   the 2006.

---

| 27 | **35:5 -35:23** | Thompson, Beth 2020-07-23 | 00:01:03 | 00:15:17 | 02:10:15 | Thompson_B-07232 | MV181.27 |

35:5   Q.  Once the Commission became aware that
35:6   people in Cabell County were getting prescription
35:7   opioids from family members, what did it do to
35:8   prevent that?
35:9   A.  The Commission has specific roles and
35:10   functions that are set out in Code, and it does what
35:11   it can do as far as sets the budgets, and the only
35:12   thing that it can do to address crime problems caused
35:13   by the opioid crisis was to file this lawsuit.
35:14   Q.  Does the Commission have the power to pass
35:15   ordinances?
35:16   A.  It does.  But then it also has a problem
35:17   with enforcing those.
35:18   Q.  What's the problem?
35:19   A.  It's all over the state.  It's how our
35:20   county governments are set up.  The enforcement of
35:21   codes through county government are just -- it's an
35:22   issue.  It's -- ordinances -- county ordinances are
35:23   hard to enforce.

---

| 28 | **38:4 -38:24** | Thompson, Beth 2020-07-23 | 00:01:12 | 00:16:20 | 02:09:12 | Thompson_B-07232 | MV181.28 |

38:4   MR. RUBY:  Could you read it back?
38:5   (The reporter read back the following
38:6   as requested:  "QUESTION:  Why is the noise ordinance
38:7   difficult to enforce?"
38:8   A.  First of all, I want to say that the county
38:9   is not embarrassed over anything.  The County
38:10   Commission did what it could do by filing this
38:11   lawsuit because of the problem that you all created
38:12   here.  So the Commission is not embarrassed about
38:13   anything.
38:14   And enforcement of a noise ordinance code
38:15   in our county is just -- it's ridiculous to even be
38:16   asking us that, number one, but enforcement is --
38:17   there is all kinds of reasons.  I don't know all the
38:18   specifics, but I do know that functions of county

---

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

|  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|
| | | 38:19 | government are specific, and controlling what the | | | | |
| | | 38:20 | distributors did in this county is not one of the | | | | |
| | | 38:21 | functions that we have any control over. | | | | |
| | | 38:22 |     So we're not embarrassed about anything. | | | | |
| | | 38:23 | And we've watched this county suffer, and the only | | | | |
| | | 38:24 | thing we could do, we did, we filed this lawsuit. | | | | |

| 29 | **39:8 -39:16** | Thompson, Beth 2020-07-23 | 00:00:33 | 00:17:32 | 02:08:00 | Thompson_B-07232 | MV181.29 |
|---|---|---|---|---|---|---|---|
| | | 39:8 | Q.   What did the county do about the opioid | | | | |
| | | 39:9 | problem here in the 11 years between 2006 and 2017? | | | | |
| | | 39:10 | A.   Well, the county watched things get set up, | | | | |
| | | 39:11 | like Lily's Place, and all of these sober living | | | | |
| | | 39:12 | homes, and Suboxone clinics and, you know, we watched | | | | |
| | | 39:13 | all of it get set up to try to scratch the surface of | | | | |
| | | 39:14 | this problem.  And none of it is working. | | | | |
| | | 39:15 |     So we finally were able to step in and do | | | | |
| | | 39:16 | something for the county by filing this lawsuit. | | | | |

| 30 | **40:3 -41:5** | Thompson, Beth 2020-07-23 | 00:00:50 | 00:18:05 | 02:07:27 | Thompson_B-07232 | MV181.30 |
|---|---|---|---|---|---|---|---|
| | | 40:3 | Q.   What was the County Commission's | | | | |
| | | 40:4 | involvement in setting up Lily's Place? | | | | |
| | | 40:5 | A.   None. | | | | |
| | | 40:6 | Q.   You also mentioned sober living homes. | | | | |
| | | 40:7 | What was the County Commission's involvement in | | | | |
| | | 40:8 | establishing sober living homes? | | | | |
| | | 40:9 | A.   None.  That's my point.  The Commission | | | | |
| | | 40:10 | doesn't have those kind of functions and roles. | | | | |
| | | 40:11 | Q.   Did the Commission provide any funding for | | | | |
| | | 40:12 | Lily's Place? | | | | |
| | | 40:13 | A.   No. | | | | |
| | | 40:14 | Q.   Did the Commission provide any funding for | | | | |
| | | 40:15 | sober living homes? | | | | |
| | | 40:16 | A.   No. | | | | |
| | | 40:17 | Q.   You mentioned Suboxone clinics.  Did the | | | | |
| | | 40:18 | Commission have any role in setting up Suboxone | | | | |
| | | 40:19 | clinics in Cabell County? | | | | |
| | | 40:20 | A.   No. | | | | |
| | | 40:21 | Q.   Did it provide any funding for those | | | | |
| | | 40:22 | clinics? | | | | |
| | | 40:23 | A.   No. | | | | |
| | | 40:24 | Q.   Why not? | | | | |
| | | 41:1 | A.   That's not part of our function. | | | | |

■ Defense Affirmatives     ■ Plaintiff Completeness Counte     ■ Defense Counter Counters     ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

|  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|
| | | 41:2 | Q.  Could the Commission have provided funding | | | | |
| | | 41:3 | for Lily's Place? | | | | |
| | | 41:4 | A.  I don't know.  I would have to check into | | | | |
| | | 41:5 | it. | | | | |

| 31 | 42:3 -42:13 | Thompson, Beth 2020-07-23 | 00:00:33 | 00:18:55 | 02:06:37 | Thompson_B-07232 | MV181.31 |
|---|---|---|---|---|---|---|---|
| | | 42:3 | Q.  Okay.  I want to return to ordinances.  And | | | | |
| | | 42:4 | I think you anticipated the question I was going to | | | | |
| | | 42:5 | ask when you raised the problem of enforcing | | | | |
| | | 42:6 | ordinances.  Has the county ever passed an ordinance | | | | |
| | | 42:7 | to address the opioid problem? | | | | |
| | | 42:8 | A.  No. | | | | |
| | | 42:9 | Q.  Why not? | | | | |
| | | 42:10 | A.  I'm not sure. | | | | |
| | | 42:11 | Q.  Has the county ever considered passing an | | | | |
| | | 42:12 | ordinance to address the opioid problem? | | | | |
| | | 42:13 | A.  Not that we're aware of. | | | | |

| 32 | 43:8 -43:12 | Thompson, Beth 2020-07-23 | 00:00:13 | 00:19:28 | 02:06:04 | Thompson_B-07232 | MV181.32 |
|---|---|---|---|---|---|---|---|
| | | 43:8 | Q.  Ms. Thompson, I've handed you what has been | | | | |
| | | 43:9 | marked Exhibit 17. | | | | |
| | | 43:10 | A.  Okay. | | | | |
| | | 43:11 | Q.  You can take a minute to familiarize | | | | |
| | | 43:12 | yourself with it. | | | (Edited) | |

| 33 | 43:12 -44:24 | Thompson, Beth 2020-07-23 | 00:01:38 | 00:19:41 | 02:05:51 | Thompson_B-07232 | MV181.33 |
|---|---|---|---|---|---|---|---|
| | | 43:12 | Do you recognize this? | | | (Edited) | |
| | | 43:13 | A.  Yes. | | | | |
| | | 43:14 | Q.  What is it? | | | | |
| | | 43:15 | A.  It's a page off of the website that says | | | | |
| | | 43:16 | "County Ordinances," and then it's ordinances in | | | | |
| | | 43:17 | behind it. | | | | |
| | | 43:18 | Q.  And on page 1 of the exhibit here, there is | | | | |
| | | 43:19 | a list of county ordinances; is that right? | | | | |
| | | 43:20 | A.  Yes. | | | | |
| | | 43:21 | Q.  And the first ordinance that's listed here | | | | |
| | | 43:22 | is "Adults Only Establishments." | | | | |
| | | 43:23 | Is that right? | | | | |
| | | 43:24 | A.  Correct. | | | | |
| | | 44:1 | Q.  Are you familiar with what that ordinance | | | | |
| | | 44:2 | does? | | | | |
| | | 44:3 | A.  It would refer to what it says, adults only | | | | |

🟦 Defense Affirmatives     🟪 Plaintiff Completeness Counte     🟩 Defense Counter Counters     🟪 Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

44:4     establishments.  But I see it's not in here, so.
44:5     Q.   And the next one on the list is Adults Only
44:6     Permit Applications; is that right?
44:7     A.   Correct.
44:8     Q.   And then E911?
44:9     A.   Correct.
44:10    Q.   Do you know what the E911 ordinance does?
44:11    A.   It would be referencing the 911 Center.
44:12    Q.   And then there is an ordinance on leash
44:13    law.  Do you see that?
44:14    A.   I see it, yes.
44:15    Q.   And then one on mapping and addressing,
44:16    noise control one, noise control two, floodplain
44:17    ordinance, building a floodplain permit application,
44:18    dog shelter permit application, and smoking ban.
44:19        Did I read that correctly?
44:20    A.   You did.
44:21    Q.   And my question -- the reason for reading
44:22    all of those is this:  Why has the County Commission
44:23    chosen to enact ordinances on all of these subjects
44:24    but no ordinance on the subject of opioid abuse?

| 34 | **45:3 -46:15** | Thompson, Beth 2020-07-23 | 00:02:11 | 00:21:19 | 02:04:13 | Thompson_B-07232 | MV181.34 |

45:3     A.   These ordinances have been here for a
45:4     while, and the Commission is doing what it feels like
45:5     it can for the county by filing the lawsuit.
45:6     Q.   Would the county have been able to use the
45:7     same legal authority through which it enacted these
45:8     ordinances to also enact an ordinance on prescription
45:9     opioids if it had chosen?
45:10    A.   I believe we could have, yes.
45:11    Q.   But to your knowledge, the county has never
45:12    considered doing that?
45:13    A.   Correct.
45:14    Q.   We have talked, Ms. Thompson, about a
45:15    couple methods of diversion, one of those being theft
45:16    of prescription opioids, one of those being people
45:17    obtaining prescription opioids from family members.
45:18    Is it also true that a diversion pathway in Cabell
45:19    County is the sale of prescription opioids by street
45:20    dealers?
45:21    A.   Yes, that could be one.

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

45:22  Q.  Is that, in fact, a problem that exists in
45:23     Cabell County?
45:24  A.  Yes.
46:1   Q.  Is it a significant problem here?
46:2   A.  Yes.
46:3   Q.  Is it the case that many of those street
46:4     dealers come from outside the state to sell
46:5     prescription pills here?
46:6   A.  Probably.
46:7   Q.  When did the County Commission first become
46:8     aware that it had a problem with street dealers
46:9     selling prescription pills?
46:10  A.  I'm going to go back to the allegations in
46:11     the lawsuit.  In 2006.
46:12  Q.  Has the County Commission done anything to
46:13     prevent street dealers from selling prescription
46:14     pills here?
46:15  A.  It's not a function that it can do.

| 35 | **46:16 -48:21** | Thompson, Beth 2020-07-23 | 00:03:18 | 00:23:30 | 02:02:02 | Thompson_B-07232 | MV181.35 |

46:16  Q.  Has the County Commission allocated any
46:17     funding to prevent street dealers from selling
46:18     prescription pills here?
46:19  A.  It would be the Commission's opinion that,
46:20     you know, all of the law enforcement budget would
46:21     fight all crime.
46:22  Q.  I'll ask a question similar to the one that
46:23     I asked about -- about theft of prescription opioids
46:24     here in Cabell County.  Has the Commission ever
47:1     allocated any funding specifically for the purpose of
47:2     preventing street dealers from selling prescription
47:3     opioids?
47:4   A.  It would be the law enforcement budget.
47:5   Q.  Is there any specific part of the law
47:6     enforcement budget that is dedicated to prescription
47:7     opioids?
47:8   A.  It's dedicated to crime in the county.
47:9   Q.  Meaning all crime?
47:10  A.  Correct.
47:11  Q.  Not prescription opioids specifically?
47:12  A.  Correct.  That's our function, is to handle
47:13     the whole county.

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

47:14  Q.  If the County Commission had chosen to

47:15  allocate a specific portion of the sheriff's office

47:16  budget to fighting prescription opioids, would it

47:17  have had the legal authority to do that?

47:18  A.  No, I don't believe so.

47:19  Q.  And what would have prevented the County

47:20  Commission from doing that?

47:21  A.  The County Commission sets the budget for

47:22  the officeholders, the other constitutional officers.

47:23  It cannot tell them how to place in their line items.

47:24  And then the state tells each of us, each of the

48:1  officeholders what the line items are.

48:2  Q.  Can the County Commission adjust the amount

48:3  in any given line item of an officeholder's budget?

48:4  A.  No.

48:5  Q.  And I'm genuinely trying to understand

48:6  this.  If the sheriff's office presents a budget, and

48:7  it has, let's just say $500,000 in the line for

48:8  payroll, you're saying that the County Commission

48:9  doesn't have the ability to change that to 450,000 or

48:10  550,000?

48:11  A.  The officeholders themselves have to

48:12  request the changes.

48:13  Q.  I see.  Okay.  And so you're saying that

48:14  the County Commission simply has to say "yes" or "no"

48:15  on each line?  In other words, it can't -- it can't

48:16  change the amount that is on any line of the

48:17  sheriff's office budget?

48:18  A.  Correct.  It gives -- it gives the -- each

48:19  officeholder like a bottom line, and that

48:20  officeholder decides within its line items how it

48:21  wants it allocated.

| 36 | 48:22 -49:5 | Thompson, Beth 2020-07-23 | | 00:00:24 | 00:26:48 | 01:58:44 | Thompson_B-07232 | MV181.36 |
|---|---|---|---|---|---|---|---|---|

48:22  Q.  Does the County Commission have the power

48:23  to reject the allocation among line items that the

48:24  officeholder proposes?

49:1  A.  I think it would.

49:2  Q.  Has the County Commission ever rejected the

49:3  line item allocation proposed by the sheriff's

49:4  office?

49:5  A.  Not that we're aware of.

Defense Affirmatives    Plaintiff Completeness Counte    Defense Counter Counters    Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

---

| 37 | **49:6 -49:16** | Thompson, Beth 2020-07-23 | 00:00:30 | 00:27:12 | 01:58:20 | Thompson_B-07232 | MV181.37 |

49:6   Q.   If the County Commission had chosen to
49:7   reject the sheriff's office line item allocation
49:8   because it didn't provide funding specific for
49:9   opioids, would it have had the legal authority to do
49:10   that?
49:11   A.   The state doesn't give us a line item
49:12   specific for opioids.
49:13   Q.   And so you're saying that the lines that
49:14   are in the sheriff's office budget are prescribed by
49:15   the Auditor's Office; is that right?
49:16   A.   Yes.

---

| 38 | **49:17 -49:21** | Thompson, Beth 2020-07-23 | 00:00:23 | 00:27:42 | 01:57:50 | Thompson_B-07232 | MV181.38 |

49:17   Q.   On the issue of drug dealers selling
49:18   prescription opioids, other than what we've already
49:19   discussed, has the county taken any steps to prevent
49:20   that from occurring?
49:21   A.   Other than the lawsuit, no.

---

| 39 | **51:14 -52:2** | Thompson, Beth 2020-07-23 | 00:00:47 | 00:28:05 | 01:57:27 | Thompson_B-07232 | MV181.39 |

51:14       I asked about diversion by people obtaining
51:15   prescription opioids from family members.  Is it also
51:16   the case that diversion occurs in Cabell County by
51:17   people obtaining prescription opioids from friends,
51:18   in addition to family members?
51:19   A.   We would think so.
51:20   Q.   Does the Commission know one way or another
51:21   whether that's ever occurred in Cabell County?
51:22   A.   It does.
51:23   Q.   And is it also the case that diversion
51:24   occurs in Cabell County by means of people using
52:1   forged or fraudulent prescriptions?
52:2   A.   Yes.

---

| 40 | **56:18 -56:23** | Thompson, Beth 2020-07-23 | 00:00:19 | 00:28:52 | 01:56:40 | Thompson_B-07232 | MV181.40 |

56:18   Q.   As a factual matter, though, setting aside
56:19   the Commission's position on what is or is not its
56:20   role, has the Commission done anything to find out
56:21   what the causes are of the opioid problem here?
56:22   A.   It's hired experts and attorneys to look

---

■ Defense Affirmatives      ■ Plaintiff Completeness Counte      ■ Defense Counter Counters      ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

|  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|
|  |  | 56:23   into all of it. |  |  |  |  |  |

| 41 | **57:14 -57:19** | Thompson, Beth 2020-07-23 | 00:00:20 | 00:29:11 | 01:56:21 | Thompson_B-07232 | MV181.41 |

57:14   Q.   Does -- Is the County Commission able to
57:15      name any cause of the opioid problem that exists
57:16      here?
57:17   A.   Yes, these distributors that we've sued.
57:18   Q.   Other than --
57:19   A.   -- the main cause.

| 42 | **58:4 -59:20** | Thompson, Beth 2020-07-23 | 00:02:16 | 00:29:31 | 01:56:01 | Thompson_B-07232 | MV181.42 |

58:4    Q.   And my question is not about the function
58:5      of the County Commission.  My question was a factual
58:6      question, which is that other than the distributors
58:7      who are defendants in this case, can the County
58:8      Commission identify any other cause of the opioid
58:9      problem here?
58:10   A.   It's not -- What I'm trying to say is it's
58:11      not the role of the County Commission.  It's not our
58:12      function to find out other causes.  We just know that
58:13      there's a crisis here, so we are doing the only thing
58:14      we can to try to fix the problem you all created, and
58:15      file this lawsuit.
58:16   Q.   Is it a function of the County Commission
58:17      to determine that the distributors who are defendants
58:18      in this case were a cause of the opioid problem?
58:19   A.   It was a function of the Commission to try
58:20      to fix the problem that was created here, and we
58:21      hired attorneys to do that for us.  And we've been in
58:22      constant contact with our attorneys since we filed
58:23      this suit.
58:24   Q.   How did the County Commission determine
59:1      that the defendants in this case were a cause of the
59:2      opioid problem?
59:3    A.   Through the lawsuit.
59:4    Q.   Through the lawsuit?
59:5    A.   Yes.
59:6    Q.   Before the -- Before this case was filed,
59:7      did the County Commission know what any of the causes
59:8      of the opioid problem were?
59:9    A.   It knew there were several causes -- it
59:10      knew there was a problem, and it knew it needed to be

■ Defense Affirmatives      ■ Plaintiff Completeness Counte      ■ Defense Counter Counters      ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | 59:11 | fixed.  So it did what it could do and filed the |
| | | | 59:12 | lawsuit. |
| | | | 59:13 | Q.   You said it knew there were several causes |
| | | | 59:14 | before it filed this lawsuit.  What were those? |
| | | | 59:15 | A.   I can't specifically name them at the |
| | | | 59:16 | moment. |
| | | | 59:17 | Q.   Can you name any of them? |
| | | | 59:18 | A.   The addiction rate seemed to go up, but -- |
| | | | 59:19 | crime was going up, all kinds of things in the |
| | | | 59:20 | community.  And we knew there was a problem. |

| 43 | **60:3 - 60:16** | Thompson, Beth 2020-07-23 | 00:00:44  00:31:47  01:53:45 | Thompson_B-07232 | MV181.43 |
|---|---|---|---|---|---|

60:3   Q.   So am I correct then from 2006 to 2017, the
60:4   County Commission knew that there was an opioid
60:5   problem in Cabell County but did not know what any of
60:6   the causes were?
60:7   A.   It wasn't its function to find out the
60:8   causes.
60:9   Q.   And I think we're just going to just keep
60:10   going around and around about this.
60:11   A.   I think we are too.
60:12   Q.   I'm not asking, and haven't asked, whether
60:13   it was the function of the County Commission to find
60:14   out the causes.  My question is whether the County
60:15   Commission knew any of the causes.
60:16   A.   It's not a role of theirs to know.

| 44 | **60:17 - 60:24** | Thompson, Beth 2020-07-23 | 00:00:26  00:32:31  01:53:01 | Thompson_B-07232 | MV181.44 |
|---|---|---|---|---|---|

60:17   Q.   Does that mean that they didn't know then?
60:18   A.   No, it's just not their role and their
60:19   function.  It's not their role or their function.
60:20   They're the fiscal agents of the county.
60:21   Q.   The County Commission did know then what
60:22   the causes were of the opioid crisis prior to 2017?
60:23   A.   It's not their function or their role to
60:24   know.

| 45 | **63:13 - 63:16** | Thompson, Beth 2020-07-23 | 00:00:14  00:32:57  01:52:35 | Thompson_B-07232 | MV181.45 |
|---|---|---|---|---|---|

63:13   Q.   Ms. Thompson, what does the County
63:14   Commission believe to be the components of the opioid
63:15   crisis?
63:16   A.   I believe that there's addiction.  Abuse.

■ Defense Affirmatives      ■ Plaintiff Completeness Counter      ■ Defense Counter Counters      ■ Plaintiff Counters

### Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

| 46 | **65:1 -65:8** | Thompson, Beth 2020-07-23 | 00:00:33 | 00:33:11 | 01:52:21 | Thompson_B-07232 | MV181.46 |
|---|---|---|---|---|---|---|---|

65:1    Q.   So the question was:  Does the Commission
65:2     know whether marketing of prescription opioids has
65:3     been a component of the cause of the opioid crisis
65:4     here?
65:5    A.   It would think it would have to be.  But
65:6     it's not a function of the Commission to know that.
65:7    Q.   Okay.  And you testified -- I want to make
65:8     sure I get this right.

| 47 | **65:9 -66:6** | Thompson, Beth 2020-07-23 | 00:01:17 | 00:33:44 | 01:51:48 | Thompson_B-07232 | MV181.47 |
|---|---|---|---|---|---|---|---|

65:9         All right.  You testified earlier when I
65:10    asked:  Is the County Commission able to name any
65:11    cause of the opioid problem that exists here, you
65:12    testified, "Yes, these distributors that we've sued."
65:13        And so then my follow-up question to that
65:14    is whether the County Commission is able to name any
65:15    other causes of the opioid problem here besides the
65:16    distributors that the county has sued.
65:17    A.   Yes, there are lots of causes and blame to
65:18    throw around.
65:19    Q.   Okay.  Could you give me an example of one
65:20    of those causes?
65:21    A.   The things we talked about earlier.  The
65:22    theft, the prescriptions going into the wrong hands.
65:23    Q.   Is theft -- Is it that theft of
65:24    prescription opioids is a cause of the opioid problem
66:1    here?
66:2    A.   Part of it.
66:3    Q.   And the sale of opioids by drug dealers is
66:4    a cause of the opioid problem here; is that right?
66:5    A.   The Commission would think that there's
66:6    lots of causes and people to blame, yes.

| 48 | **66:19 -67:13** | Thompson, Beth 2020-07-23 | 00:01:11 | 00:35:01 | 01:50:31 | Thompson_B-07232 | MV181.48 |
|---|---|---|---|---|---|---|---|

66:19    Q.   Sure.  Let me ask it in a different way.  I
66:20    asked whether the sale of opioids by drug dealers is
66:21    a cause of the opioid problem here, and you
66:22    testified:  "The Commission would think that there's
66:23    lots of causes and people to blame, yes."
66:24        And so I'll ask a slightly different

| ■ Defense Affirmatives | ■ Plaintiff Completeness Counte | ■ Defense Counter Counters | ■ Plaintiff Counters |
|---|---|---|---|

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

67:1    question, which is whether one of those causes is the
67:2    sale of opioids by drug dealers?
67:3    A.  We would think that would be one of the
67:4    causes, yes, but not the greatest cause definitely.
67:5    Q.  And how has the Commission determined that
67:6    the sale of opioids by drug dealers is not the
67:7    greatest cause of the drug problem here?
67:8    A.  Because the amount that your clients pumped
67:9    into our communities would be the greatest cause.
67:10   Q.  How does the Commission know that?
67:11   A.  We've been in constant contact with our
67:12   counsel since we filed this lawsuit, and the data
67:13   that you've given us shows that.

| 49 | **69:22 - 70:12** | Thompson, Beth 2020-07-23 | 00:00:53 | 00:36:12 | 01:49:20 | Thompson_B-07232 | MV181.49 |
|----|----|----|----|----|----|----|----|

69:22   Q.  Sticking with Topic No. 2.  And I don't
69:23   want to misstate your testimony, because I certainly
69:24   don't want counsel to have to object.  So I'll ask if
70:1    I understood you correctly to say that the Commission
70:2    believes that companies have marketed opioids in
70:3    Cabell County?  Did I understand that correctly?
70:4        Does the Commission believe that companies
70:5    have marketed opioids in Cabell County?
70:6    A.  Yes.
70:7    Q.  Was that marketing harmful?
70:8    A.  The Commission would think so.
70:9    Q.  And what does the Commission think was
70:10   harmful about the marketing of opioids here?
70:11   A.  That's why we've hired the experts and the
70:12   lawyers to determine.

| 50 | **73:9 - 73:15** | Thompson, Beth 2020-07-23 | 00:00:43 | 00:37:05 | 01:48:27 | Thompson_B-07232 | MV181.50 |
|----|----|----|----|----|----|----|----|

73:9    Q.  And I don't want to invade the Commission's
73:10   communications with counsel, certainly.  So let me
73:11   ask whether prior to meeting with counsel the County
73:12   Commission had ever considered filing this lawsuit?
73:13   A.  The Commission had been aware of a major
73:14   problem in the county and was looking to find a way
73:15   to fix it, and so it talked with counsel.

| 51 | **73:16 - 73:22** | Thompson, Beth 2020-07-23 | 00:00:25 | 00:37:48 | 01:47:44 | Thompson_B-07232 | MV181.51 |
|----|----|----|----|----|----|----|----|

73:16   Q.  Again, I want to make sure we're on the

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

|    |    |    |    |    |    |    |    |
|----|----|----|----|----|----|----|----|
|    |    | 73:17 | same page about the question.  Understanding that the |    |    |    |    |
|    |    | 73:18 | Commission had been aware of a problem in the county |    |    |    |    |
|    |    | 73:19 | and was looking for solutions, my question is still |    |    |    |    |
|    |    | 73:20 | whether prior to meeting with counsel the county had |    |    |    |    |
|    |    | 73:21 | ever considered filing this lawsuit? |    |    |    |    |
|    |    | 73:22 | A.  Not that I'm aware of. |    |    |    |    |

| 52 | **75:20 - 76:2** | Thompson, Beth 2020-07-23 | 00:00:16 | 00:38:13 | 01:47:19 | Thompson_B-07232 | MV181.52 |
|----|----|----|----|----|----|----|----|
|    |    | 75:20 | Q.   Is it your testimony that it's not a part |    |    |    |    |
|    |    | 75:21 | of the function of the County Commission to receive |    |    |    |    |
|    |    | 75:22 | complaints from citizens about prescription opioids? |    |    |    |    |
|    |    | 75:23 | A.   Correct. |    |    |    |    |
|    |    | 75:24 | Q.   And the County Commission has never |    |    |    |    |
|    |    | 76:1 | received a complaint from a citizen about |    |    |    |    |
|    |    | 76:2 | prescription opioids? |    |    |    |    |

| 53 | **76:3 - 76:3** | Thompson, Beth 2020-07-23 | 00:00:01 | 00:38:29 | 01:47:03 | Thompson_B-07232 | MV181.53 |
|----|----|----|----|----|----|----|----|
|    |    | 76:3 | A.  Actually -- |    |    |    |    |

| 54 | **76:5 - 76:11** | Thompson, Beth 2020-07-23 | 00:00:25 | 00:38:30 | 01:47:02 | Thompson_B-07232 | MV181.54 |
|----|----|----|----|----|----|----|----|
|    |    | 76:5 | Q.  I think the question that was pending when |    |    |    |    |
|    |    | 76:6 | Mr. Fuller brought the coffee in was whether the |    |    |    |    |
|    |    | 76:7 | County Commission had ever received a complaint from |    |    |    |    |
|    |    | 76:8 | a citizen about prescription opioids. |    |    |    |    |
|    |    | 76:9 | A.  I believe in their individual capacities, |    |    |    |    |
|    |    | 76:10 | some may have.  But the Commission isn't aware that |    |    |    |    |
|    |    | 76:11 | someone has come to the Commission as a body. |    |    |    |    |

| 55 | **82:18 - 82:22** | Thompson, Beth 2020-07-23 | 00:00:23 | 00:38:55 | 01:46:37 | Thompson_B-07232 | MV181.55 |
|----|----|----|----|----|----|----|----|
|    |    | 82:18 | Q.   So let me ask, Ms. Thompson:  Can the |    |    |    |    |
|    |    | 82:19 | Commission identify any opioid prescriptions for |    |    |    |    |
|    |    | 82:20 | which it is seeking remedies in this lawsuit? |    |    |    |    |
|    |    | 82:21 | A.  The County Commission has hired the |    |    |    |    |
|    |    | 82:22 | attorneys and the experts to ascertain this. |    |    |    |    |

| 56 | **84:22 - 85:21** | Thompson, Beth 2020-07-23 | 00:01:14 | 00:39:18 | 01:46:14 | Thompson_B-07232 | MV181.56 |
|----|----|----|----|----|----|----|----|
|    |    |    |    |    |    | (Edited) |    |
|    |    | 84:22 | My question is whether it's the position of |    |    |    |    |
|    |    | 84:23 | the Commission that every opioid prescription written |    |    |    |    |
|    |    | 84:24 | in Cabell County has contributed to the harms alleged |    |    |    |    |
|    |    | 85:1 | in the lawsuit. |    |    |    |    |
|    |    | 85:2 | A.  The function of County Commission |    |    |    |    |
|    |    | 85:3 | government is to be the fiscal agents of the county, |    |    |    |    |

| ■ Defense Affirmatives | ■ Plaintiff Completeness Counte | ■ Defense Counter Counters | ■ Plaintiff Counters |
|----|----|----|----|

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

85:4     not to be watching how many pills come into our
85:5     county.  And so, you know, our attorneys have asked
85:6     for the information and -- for two years, I think
85:7     they said, and we still haven't been given access to
85:8     it.  So, you know, it's not our function to know
85:9     these things.
85:10    Q.   Setting aside the reason for the county's
85:11    knowledge or lack of knowledge, can the county
85:12    identify any prescription that has contributed to the
85:13    harms it alleges in the Complaint?
85:14    A.   The county is not supposed to.  It's not
85:15    our function.  No, the county is not supposed to.
85:16    It's not our function.
85:17    Q.   So the answer is "no," because --
85:18    A.   It's not our function.  It's not our role.
85:19    That's why we hired the attorneys to file the lawsuit
85:20    to fix this horrible problem that you have created
85:21    here.

| 57 | 85:22 -86:6 | Thompson, Beth 2020-07-23 | 00:00:25 | 00:40:32 | 01:45:00 | Thompson_B-07232 | MV181.57 |

85:22    Q.   Other than filing this lawsuit and hiring
85:23    Mr. Farrell and his colleagues, has the county done
85:24    anything else to try to identify prescriptions that
86:1     have caused the harm alleged in the Complaint?
86:2     A.   The county's functions are set out
86:3     specifically, and we don't have that function or
86:4     role.  This was the only thing we could do.
86:5         MR. FARRELL:  So the answer is?
86:6         THE DEPONENT:  No.

| 58 | 86:7 -86:21 | Thompson, Beth 2020-07-23 | 00:00:42 | 00:40:57 | 01:44:35 | Thompson_B-07232 | MV181.58 |

86:7     Q.   Does the sheriff's office investigate drug
86:8     cases?
86:9     A.   Yes.
86:10    Q.   Has the sheriff's office ever in the course
86:11    of investigating a drug case identified a
86:12    prescription that contributed to the harms alleged in
86:13    the Complaint?
86:14    A.   You'd need to talk to the sheriff about
86:15    anything that they've investigated.
86:16    Q.   Is that something that the Commission has
86:17    ever tried to find out from the sheriff's office?

■ Defense Affirmatives    ■ Plaintiff Completeness Counter    ■ Defense Counter Counters    ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

|  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|
| | | 86:18 | A.  The Commission doesn't function that way. | | | | |
| | | 86:19 | It's not our role.  It hasn't tried to find out.  We | | | | |
| | | 86:20 | have no reason to try to find out.  It's not part of | | | | |
| | | 86:21 | what we do on our day-to-day basis, so no. | | | | |

| 59 | **87:13 - 87:19** | Thompson, Beth 2020-07-23 | 00:00:24 | 00:41:39 | 01:43:53 | Thompson_B-07232 | MV181.59 |
|---|---|---|---|---|---|---|---|
| | | 87:13 | Q.   In the view of the Commission -- and you've | | | | |
| | | 87:14 | given a good deal of testimony, Ms. Thompson, about | | | | |
| | | 87:15 | the function of the County Commission.  In the view | | | | |
| | | 87:16 | of the Commission, is there anything that the | | | | |
| | | 87:17 | Commission could have done to try to abate the opioid | | | | |
| | | 87:18 | problem in Cabell County besides filing this lawsuit? | | | | |
| | | 87:19 | A.  No. | | | | |

| 60 | **92:1 - 92:7** | Thompson, Beth 2020-07-23 | 00:00:25 | 00:42:03 | 01:43:29 | Thompson_B-07232 | MV181.60 |
|---|---|---|---|---|---|---|---|
| | | | | | | (Edited) | |
| | | 92:1 | My question is simply a factual | | | | |
| | | 92:2 | one, which is why the witness made the decision not | | | | |
| | | 92:3 | to ask the sheriff's office for information | | | | |
| | | 92:4 | responsive to Topic No. 3. | | | | |
| | | 92:5 | A.  The County Commission didn't know it needed | | | | |
| | | 92:6 | to.  It's not our function.  It's something you | | | | |
| | | 92:7 | should have been asking the sheriff. | | | | |

| 61 | **96:18 - 97:4** | Thompson, Beth 2020-07-23 | 00:00:32 | 00:42:28 | 01:43:04 | Thompson_B-07232 | MV181.61 |
|---|---|---|---|---|---|---|---|
| | | 96:18 | Q.   Did the county ever take any steps to | | | | |
| | | 96:19 | impose limits on the prescription opioids that it | | | | |
| | | 96:20 | would reimburse or pay for? | | | | |
| | | 96:21 | A.  The county has no function or role | | | | |
| | | 96:22 | whatsoever in that. | | | | |
| | | 96:23 | Q.  And that may be a reason that the county in | | | | |
| | | 96:24 | its view -- or the Commission in its view hasn't | | | | |
| | | 97:1 | taken those steps, but my question is whether the | | | | |
| | | 97:2 | county has ever taken any steps to -- | | | | |
| | | 97:3 | A.  No.  It can't.  No.  It would have no way | | | | |
| | | 97:4 | of doing that. | | | | |

| 62 | **97:9 - 97:13** | Thompson, Beth 2020-07-23 | 00:00:23 | 00:43:00 | 01:42:32 | Thompson_B-07232 | MV181.62 |
|---|---|---|---|---|---|---|---|
| | | 97:9 | Q.  Are you aware that physical therapy, for | | | | |
| | | 97:10 | example, can be an alternative course of treatment to | | | | |
| | | 97:11 | prescribing opioids for pain relief? | | | | |
| | | 97:12 | A.  We aren't doctors.  We aren't | | | | |
| | | 97:13 | prescribing -- We're not health insurance providers. | | | | |

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

| 63 | **98:4 -98:18** | Thompson, Beth 2020-07-23 | 00:00:42 | 00:43:23 | 01:42:09 | Thompson_B-07232 | MV181.63 |
|---|---|---|---|---|---|---|---|

98:4   Q.   Did the county ever take any steps to cause
98:5   its insurer to make physical therapy available as an
98:6   alternative to prescription opioids?
98:7   A.   Not that we're aware of.
98:8   Q.   Was that something that the county ever
98:9   considered?
98:10   A.   We don't recall considering anything like
98:11   that.
98:12      MR. FARRELL:  So the answer is?
98:13      THE DEPONENT:  No.
98:14   Q.   And setting aside physical therapy, did the
98:15   county ever take any steps to cause its health
98:16   insurer to make any alternative to prescription
98:17   opioids available to county employees?
98:18   A.   Not that we're aware of.

| 64 | **99:11 -99:14** | Thompson, Beth 2020-07-23 | 00:00:11 | 00:44:05 | 01:41:27 | Thompson_B-07232 | MV181.64 |
|---|---|---|---|---|---|---|---|

99:11   Q.   Does the county employ any physicians --
99:12   Does the County Commission employ any physicians who
99:13   provide medical treatment?
99:14   A.   No.

| 65 | **100:3 -100:9** | Thompson, Beth 2020-07-23 | 00:00:23 | 00:44:16 | 01:41:16 | Thompson_B-07232 | MV181.65 |
|---|---|---|---|---|---|---|---|

100:3   Q.   Does the -- Other than Mr. Wright, does the
100:4   County Commission employ any other health care
100:5   providers who provide medical treatment?
100:6   A.   If EMS and paramedics are considered health
100:7   care providers, then, yes, it would.
100:8   Q.   Do paramedics write prescriptions?
100:9   A.   No.

| 66 | **107:23 -108:4** | Thompson, Beth 2020-07-23 | 00:00:22 | 00:44:39 | 01:40:53 | Thompson_B-07232 | MV181.66 |
|---|---|---|---|---|---|---|---|

107:23   Q.   And what is the appropriate use for
107:24   prescription opioids?
108:1   A.   The Commission is not a doctor, pharmacist,
108:2   by any means.  It's not part of our function or role,
108:3   but we would think that anything with a legal
108:4   prescription would be proper use.

| 67 | **108:7 -108:21** | Thompson, Beth 2020-07-23 | 00:00:51 | 00:45:01 | 01:40:31 | Thompson_B-07232 | MV181.67 |
|---|---|---|---|---|---|---|---|

■ Defense Affirmatives   ■ Plaintiff Completeness Counte   ■ Defense Counter Counters   ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

108:7     Q.   Has -- or is the County Commission aware of
108:8     any instance in which a physician in Cabell County
108:9     has inappropriately prescribed opioids?
108:10    A.   Yes.  The County Commission is aware of --
108:11    and I believe we answered that in some of the
108:12    interrogatory answers.
108:13    Q.   Can you tell me what -- tell me an
108:14    instance, and if there are more, we'll talk through
108:15    them, but what's an instance in which the County
108:16    Commission is aware in which a physician here has
108:17    inappropriately prescribed opioids?
108:18    A.   I believe there was Anita Dawson.
108:19    Q.   Anita Dawson was a physician here in Cabell
108:20    County?
108:21    A.   Physician, yes.  Milton.

| 68 | 108:22 -109:4 | Thompson, Beth 2020-07-23 | 00:00:33 | 00:45:52 | 01:39:40 | Thompson_B-07232 | MV181.68 |
|---|---|---|---|---|---|---|---|

108:22    Q.   What did she do?
108:23    A.   She was a DO, I believe, and she actually
108:24    prescribed too many prescriptions -- too many opioid
109:1     prescriptions and ultimately lost her license.  And
109:2     that's one instance, yes, the Commission is aware of.
109:3     Q.   Was Dr. Dawson prosecuted?
109:4     A.   Yes.

| 69 | 109:5 -109:11 | Thompson, Beth 2020-07-23 | 00:00:16 | 00:46:25 | 01:39:07 | Thompson_B-07232 | MV181.69 |
|---|---|---|---|---|---|---|---|

109:5     Q.   Dr. Dawson was prescribing opioids
109:6     illegally; is that right?
109:7     A.   Yes.
109:8     Q.   And that's the reason that the Commission
109:9     believes that her prescriptions were inappropriate;
109:10    is that right?
109:11    A.   Yes.

| 70 | 109:22 -110:8 | Thompson, Beth 2020-07-23 | 00:00:36 | 00:46:41 | 01:38:51 | Thompson_B-07232 | MV181.70 |
|---|---|---|---|---|---|---|---|

109:22    Q.   But sticking to doctors for now, is the
109:23    Commission aware of any doctors besides Dr. Dawson
109:24    who inappropriately prescribed opioids in Cabell
110:1     County?
110:2     A.   I don't think so.  I mean, other than what
110:3     would be in the news or...
110:4     Q.   What steps has the Commission taken to

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

|  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|
| | | 110:5 | identify doctors in Cabell County who are | | | | |
| | | 110:6 | inappropriately prescribing opioids? | | | | |
| | | 110:7 | A.  The Commission hasn't taken any steps. | | | | |
| | | 110:8 | It's not our function or role to know this. | | | | |

| 71 | 112:15 -112:20 | Thompson, Beth 2020-07-23 | 00:00:20 | 00:47:17 | 01:38:15 | Thompson_B-07232 | MV181.71 |
|---|---|---|---|---|---|---|---|
| | | 112:15 | Q.   That's fine.  Other than the pharmacies | | | | |
| | | 112:16 | that are described in the county's interrogatory | | | | |
| | | 112:17 | responses, is the Commission aware of any other | | | | |
| | | 112:18 | pharmacy in Cabell County that's inappropriately | | | | |
| | | 112:19 | dispensed opioids? | | | | |
| | | 112:20 | A.   Other than what would be in the news, no. | | | | |

| 72 | 113:5 -113:10 | Thompson, Beth 2020-07-23 | 00:00:21 | 00:47:37 | 01:37:55 | Thompson_B-07232 | MV181.72 |
|---|---|---|---|---|---|---|---|
| | | 113:5 | Q.   Okay.  What steps has the county taken -- | | | | |
| | | 113:6 | strike that.  What steps has the Commission taken to | | | | |
| | | 113:7 | identify any other pharmacies in Cabell County that | | | | |
| | | 113:8 | are inappropriately dispensing opioids? | | | | |
| | | 113:9 | A.   Other than hiring the attorneys and | | | | |
| | | 113:10 | experts, no other steps. | | | | |

| 73 | 113:11 -113:20 | Thompson, Beth 2020-07-23 | 00:00:35 | 00:47:58 | 01:37:34 | Thompson_B-07232 | MV181.73 |
|---|---|---|---|---|---|---|---|
| | | 113:11 | Q.   To the best of the County Commission's | | | | |
| | | 113:12 | knowledge, then, is it correct that physicians in | | | | |
| | | 113:13 | Cabell County, other than Anita Dawson, have | | | | |
| | | 113:14 | prescribed prescription opioids appropriately? | | | | |
| | | 113:15 | A.   Can you say the first part of the question | | | | |
| | | 113:16 | again? | | | | |
| | | 113:17 | Q.   To the best of the Commission's knowledge, | | | | |
| | | 113:18 | have physicians in Cabell County, other than | | | | |
| | | 113:19 | Dr. Dawson, prescribed opioids appropriately? | | | | |
| | | 113:20 | A.   To the best of its knowledge, yes. | | | | |

| 74 | 115:8 -115:13 | Thompson, Beth 2020-07-23 | 00:00:18 | 00:48:33 | 01:36:59 | Thompson_B-07232 | MV181.74 |
|---|---|---|---|---|---|---|---|
| | | 115:8 | Q.   Does the Commission agree that it's up to | | | | |
| | | 115:9 | doctors to decide when a patient needs prescription | | | | |
| | | 115:10 | opioids? | | | | |
| | | 115:11 | A.   The Commission is not a doctor, but would | | | | |
| | | 115:12 | agree that, yes, that's -- it would be up to a | | | | |
| | | 115:13 | doctor. | | | | |

| 75 | 115:14 -115:17 | Thompson, Beth 2020-07-23 | 00:00:22 | 00:48:51 | 01:36:41 | Thompson_B-07232 | MV181.75 |
|---|---|---|---|---|---|---|---|

| ■ Defense Affirmatives | ■ Plaintiff Completeness Counte | ■ Defense Counter Counters | ■ Plaintiff Counters |
|---|---|---|---|

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

|  |  |  |  |  |  |  |  |
|--|--|--|--|--|--|--|--|

115:14   Q.   Is it true that over time, doctors have
115:15   written more and more opioid prescriptions?
115:16   A.   I mean, that's all information that we've
115:17   hired the attorney and experts to determine.

---

76   **115:18 -115:24**   Thompson, Beth 2020-07-23        00:00:26   00:49:13   01:36:19   Thompson_B-07232   MV181.76

115:18   Q.   Does the Commission know whether more
115:19   opioid prescriptions are written in Cabell County
115:20   today than there were in, say, 2000?
115:21   A.   It's not a function of the county
115:22   commission government to know that.
115:23        MR. FARRELL:  So the answer is?
115:24        THE DEPONENT:  No.

---

77   **116:1 -116:12**   Thompson, Beth 2020-07-23        00:00:53   00:49:39   01:35:53   Thompson_B-07232   MV181.77

116:1   Q.   Does -- Has there been any period of time
116:2   in which the number of opioid prescriptions written
116:3   in Cabell County has increased?
116:4   A.   It would be information that we have hired
116:5   the attorneys and the experts to determine.
116:6   Q.   So independent of what the Commission may
116:7   or may not know from experts and attorneys involved
116:8   in this litigation, the Commission doesn't know
116:9   whether the number of opioid prescriptions written in
116:10   Cabell County has ever increased?
116:11   A.   Other than what we have learned from this
116:12   litigation, no.

---

78   **116:13 -116:17**   Thompson, Beth 2020-07-23        00:00:23   00:50:32   01:35:00   Thompson_B-07232   MV181.78

116:13   Q.   Okay.  Topic No. 7 concerns the standard of
116:14   care with respect to the treatment of pain.  Do you
116:15   know what that phrase means, Ms. Thompson, "standard
116:16   of care with respect to the treatment of pain"?
116:17   A.   No.

---

79   **116:21 -117:10**   Thompson, Beth 2020-07-23        00:00:52   00:50:55   01:34:37   Thompson_B-07232   MV181.79

116:21   Q.   Sure.  And my question is directed to you,
116:22   Ms. Thompson, as the representative of the County
116:23   Commission.
116:24   A.   No, the Commission is not -- their function
117:1   is not to know the standard of care.
117:2   Q.   So that's a little bit different, I think,

■ Defense Affirmatives   ■ Plaintiff Completeness Counte   ■ Defense Counter Counters   ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

| | |
|---|---|
| 117:3 | from the question I was asking.  Setting aside |
| 117:4 | whether the Commission knows what the standard of |
| 117:5 | care is, does the Commission understand what I |
| 117:6 | mean -- do you understand here as representative of |
| 117:7 | the Commission what I mean when I refer to the |
| 117:8 | standard of care for the treatment of pain? |
| 117:9 | A.  Again, no, this is not a function or role |
| 117:10 | of county commission government. |

---

| 80 | **124:3 -126:11** | Thompson, Beth 2020-07-23 | 00:02:30 | 00:51:47 | 01:33:45 | Thompson_B-07232 | MV181.80 |
|---|---|---|---|---|---|---|---|
| | | | | | | (Edited) | |

| | |
|---|---|
| 124:3 | My question was what harms |
| 124:4 | the county has suffered from the marketing of |
| 124:5 | opioids. |
| 124:6 | The response that you gave and the harms |
| 124:7 | that you identified, are those harms that the county |
| 124:8 | has suffered from the marketing of opioids? |
| 124:9 | A.  Yes.  And are you going to go through each |
| 124:10 | one, marketing, distribution, and then dispensing, |
| 124:11 | and you know, is it each thing you're going to go |
| 124:12 | through?  Because in the County Commission's eyes, |
| 124:13 | it's all of it has harmed us, and it has harmed the |
| 124:14 | county as a whole. |
| 124:15 | Q.  So the harms that you identified in your |
| 124:16 | previous testimony in the view of the County |
| 124:17 | Commission, those are harms that have been caused by |
| 124:18 | the marketing of opioids, the promotion of opioids, |
| 124:19 | the distribution of opioids, the dispensing of |
| 124:20 | opioids, and the diversion of opioids; is that |
| 124:21 | correct? |
| 124:22 | A.  Correct.  This is all part of this problem |
| 124:23 | that you all caused by the millions of pills you |
| 124:24 | dumped into our community. |
| 125:1 | Q.  And the answer that you just gave when you |
| 125:2 | say "dumped" -- |
| 125:3 | A.  Yes.  That's what I said earlier yes. |
| 125:4 | Q.  -- do you mean -- |
| 125:5 | A.  We feel like you should have just backed a |
| 125:6 | dump truck in here and just dumped them out, because |
| 125:7 | that's what it seemed like to us. |
| 125:8 | Q.  But let me ask the question about that |
| 125:9 | specific answer.  When you said "dumped" in that |
| 125:10 | answer, do you mean filling orders that were placed |

■ Defense Affirmatives   ■ Plaintiff Completeness Counte   ■ Defense Counter Counters   ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

125:11    by licensed pharmacies in Cabell County?

125:12    A.   No, I mean knowing how many pills you're

125:13    sending in here and not doing anything about it.

125:14    Q.   Do you -- Does the Commission believe that

125:15    the defendants in this case distributed pills to

125:16    Cabell County that were not ordered by pharmacies

125:17    here?

125:18    A.   We believe that you knew how many you were

125:19    sending in here and didn't do anything about it.

125:20    That there was more than any of us could have taken,

125:21    and you didn't do anything about it.

125:22    Q.   That's not the question that I asked.  The

125:23    question is whether the Commission believes that the

125:24    defendants in this case distributed pills to Cabell

126:1     County that were not ordered by pharmacies here.

126:2     A.   The Commission believes that you took no

126:3     precautions to look at the numbers of pills that you

126:4     were sending into this community.

126:5     Q.   That still doesn't answer my question,

126:6     Ms. Thompson.  Does the Commission --

126:7     A.   We believe it does.

126:8     Q.   Does the Commission believe that the

126:9     defendants in this case distributed prescription

126:10    opioids to pharmacies in Cabell County that hadn't

126:11    ordered those opioids?

| 81 | **126:15 - 127:15** | Thompson, Beth 2020-07-23 | | 00:01:28 | 00:54:17 | 01:31:15 | Thompson_B-07232 | MV181.81 |
|----|----|----|----|----|----|----|----|----|

126:15    A.   We believe that you all sent millions of

126:16    pills into here without doing anything about the

126:17    orders, that you knew there was too many coming into

126:18    here.  That's what we believe.

126:19    Q.   Which pharmacies in Cabell County does the

126:20    Commission believe ordered too many prescription

126:21    opioids?

126:22    A.   You know, as we go on, maybe all of them.

126:23    I don't know -- or we don't know, but we're working

126:24    on it, and we're asking you for the information.

127:1     Q.   Let me ask the previous question in a

127:2     slightly different way and try to get an answer.

127:3         Is the Commission aware of any instance in

127:4     which any of the defendants in this case distributed

127:5     prescription opioids to a pharmacy in Cabell County

■ Defense Affirmatives        ■ Plaintiff Completeness Counte        ■ Defense Counter Counters        ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|

127:6    that had not ordered those opioids?

127:7    A.   I believe that that could come out later on

127:8    in discovery.

127:9    Q.   As you sit here now, is the Commission

127:10   aware of any instance in that category?

127:11   A.   No.

127:12   Q.   Let's talk about No. 9:  "All expenditures

127:13   made in response to or caused by the opioid

127:14   epidemic."  What expenditures has the county made in

127:15   that category?

---

| 82 | **127:21 -129:9** | Thompson, Beth 2020-07-23 | | 00:02:20 | 00:55:45 | 01:29:47 | Thompson_B-07232 | MV181.82 |
|---|---|---|---|---|---|---|---|---|

127:21   A.   Well, the Commission would think that our

127:22   entire budget has been expenditures toward this.

127:23   But, you know, to say that the state allows us to do

127:24   anything as a specific line item on an opioid

128:1    epidemic, no, we don't have that function.  We don't

128:2    have that capability, so.

128:3    Q.   It's the Commission's position that its

128:4    entire budget is spent in response to or consists of

128:5    expenditures caused by opioids?

128:6    A.   A large portion of it, yes, because of our

128:7    jail bill and our health care costs, that was like

128:8    over half our budget, so yes.

128:9    Q.   What portion of the county's health care

128:10   costs are caused by opioids?

128:11   A.   I can't quantify it at this time.

128:12   Q.   Do you think it's the majority?

128:13   A.   But I think that -- We think that it's all

128:14   related back to it.

128:15   Q.   And when you say the county's health care

128:16   costs, do you mean the county's health insurance

128:17   expenditures?

128:18   A.   Yes.

128:19   Q.   Expenditures that the county makes for

128:20   health insurance for its employees?

128:21   A.   Yes.

128:22   Q.   And you testified, "We think that it's all

128:23   related back to it."  Do you mean that all of the

128:24   county's expenditures on health insurance for its

129:1    employees are related to opioids?

129:2    A.   Well, just our entire budget is made up

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

129:3    from the taxpayers' dollars, and this is so
129:4    far-reaching, and so broad, it has impacted this
129:5    community in so many ways that, you know -- It's our
129:6    tax dollars, we pay into this, and then to try to fix
129:7    this problem that, you know, crime and everything
129:8    else has affected because of the opioid epidemic,
129:9    yeah, it's all impacted it.  So.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 83 | **130:6 -130:9** | Thompson, Beth 2020-07-23 | 00:00:12 | 00:58:05 | 01:27:27 | Thompson_B-07232 | MV181.83 |

130:6    Q.  Has the County Commission ever attempted to
130:7    quantify how much of its employee health insurance
130:8    expense stems from the opioid problem?
130:9    A.  No, it hasn't.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 84 | **132:16 -132:22** | Thompson, Beth 2020-07-23 | 00:00:23 | 00:58:17 | 01:27:15 | Thompson_B-07232 | MV181.84 |

132:16    Q.   The jail bill, the health insurance bill,
132:17    we have discussed those.  Are there any other --
132:18    recognizing the Commission's position that all of its
132:19    expenditures are related to opioids, are there any
132:20    other specific expenditures that the county can point
132:21    to that are responsive to Topic No. 9?
132:22    A.   The law enforcement.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 85 | **133:8 -133:12** | Thompson, Beth 2020-07-23 | 00:00:14 | 00:58:40 | 01:26:52 | Thompson_B-07232 | MV181.85 |

133:8    Q.   So we've covered law enforcement, jail
133:9    bill, and health insurance.  Any other specific
133:10    expenditures that the Commission believes are related
133:11    to the opioid problem?
133:12    A.   We can't think of any at the moment.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 86 | **133:13 -134:17** | Thompson, Beth 2020-07-23 | 00:01:19 | 00:58:54 | 01:26:38 | Thompson_B-07232 | MV181.86 |

133:13    Q.   Topic 10:  Programs, actions that the
133:14    county has taken to abate the opioid problem.  What
133:15    actions has the Commission taken to mitigate or abate
133:16    the opioid problem in Cabell County?
133:17    A.   Filed this lawsuit.
133:18    Q.   Others?
133:19    A.   No.
133:20    Q.   Does the county provide any addiction
133:21    treatment?
133:22    A.   No.
133:23    Q.   Has the county ever considered doing that?

■ Defense Affirmatives      ■ Plaintiff Completeness Counter      ■ Defense Counter Counters      ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

| | | |
|---|---|---|
| 133:24 | A. | No.  It's not a part of county commission |
| 134:1 | | government. |
| 134:2 | Q. | Does the county provide any funding for |
| 134:3 | | programs that provide addiction treatment? |
| 134:4 | A. | No. |
| 134:5 | Q. | Has the county ever considered doing that? |
| 134:6 | A. | No.  It's not a function of county |
| 134:7 | | commission government. |
| 134:8 | Q. | Has the county ever taken any action to |
| 134:9 | | limit the number of opioid prescriptions that a |
| 134:10 | | doctor can write? |
| 134:11 | A. | No.  It's not a function of county |
| 134:12 | | commission government. |
| 134:13 | Q. | Has the county ever taken action to limit |
| 134:14 | | the number of opioid prescriptions that a pharmacy |
| 134:15 | | can fill? |
| 134:16 | A. | No.  It's not a function of county |
| 134:17 | | commission government. |

| 87 | 134:18 - 134:24 | Thompson, Beth 2020-07-23 | 00:00:38 | 01:00:13 | 01:25:19 | Thompson_B-07232 | MV181.87 |
|---|---|---|---|---|---|---|---|

| | | |
|---|---|---|
| 134:18 | Q. | Has the County Commission ever pursued any |
| 134:19 | | grants to address the opioid problem? |
| 134:20 | A. | The County Commission, with the sheriff |
| 134:21 | | applying for grants, prosecutor's office applying for |
| 134:22 | | grants, having the Commission be the financial |
| 134:23 | | officer listed on those grants, some of those grants |
| 134:24 | | probably were to fight the problem. |

| 88 | 135:3 - 135:19 | Thompson, Beth 2020-07-23 | 00:00:58 | 01:00:51 | 01:24:41 | Thompson_B-07232 | MV181.88 |
|---|---|---|---|---|---|---|---|

| | | |
|---|---|---|
| 135:3 | Q. | What is the County Commission's role in |
| 135:4 | | grants that are pursued by county officers? |
| 135:5 | A. | To be the financial agent. |
| 135:6 | Q. | And what does that entail? |
| 135:7 | A. | The officeholders will make the |
| 135:8 | | application, and then the Commission has to provide |
| 135:9 | | the resolution and acceptance and those type of |
| 135:10 | | things for it and sign off on it for the |
| 135:11 | | officeholders. |
| 135:12 | Q. | When you say the Commission has to provide |
| 135:13 | | the resolution, what do you mean? |
| 135:14 | A. | It would go through a commission meeting. |
| 135:15 | | A. resolution to authorize the application. |

■ Defense Affirmatives     ■ Plaintiff Completeness Counte     ■ Defense Counter Counters     ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

|  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|

135:16   Q.   Okay.  So in order for a county officer to
135:17       apply for a grant, the County Commission has to adopt
135:18       a resolution approving that?
135:19   A.   They have to authorize the application.

---

89    **135:20 -136:17**    Thompson, Beth 2020-07-23    00:01:09   01:01:49   01:23:43    Thompson_B-07232    MV181.89

135:20   Q.   Okay.  Does the County Commission have the
135:21       ability to itself pursue grants?
135:22   A.   Yes.
135:23   Q.   Has it ever done that?  And my first
135:24       question is general:  Has the County Commission ever
136:1    pursued a grant for anything?
136:2    A.   Yes.
136:3    Q.   What's an example of that?
136:4    A.   The Commission itself pursues grants for
136:5    the courthouse facilities improvements.  That's the
136:6    main one that comes to mind at the moment.
136:7    Q.   Has the Commission ever pursued a grant to
136:8    abate the opioid problem?
136:9    A.   Not that I'm aware of.
136:10   Q.   Has the Commission ever been aware of
136:11   grants that might be available to it to abate the
136:12   opioid problem?
136:13   A.   No.
136:14   Q.   Has the Commission ever taken action to
136:15   identify grants that might be available to abate the
136:16   opioid problem?
136:17   A.   Not that I'm aware of.

---

90    **137:4 -137:7**    Thompson, Beth 2020-07-23    00:00:09   01:02:58   01:22:34    Thompson_B-07232    MV181.90

137:4    Q.   Okay.  Has the Commission made a decision
137:5    not to pursue grants that might abate the opioid
137:6    problem?
137:7    A.   No.

---

91    **137:8 -137:10**    Thompson, Beth 2020-07-23    00:00:07   01:03:07   01:22:25    Thompson_B-07232    MV181.91

137:8    Q.   Has the Commission ever discussed pursuing
137:9    grants to abate the opioid problem?
137:10   A.   No.

---

92    **139:4 -139:20**    Thompson, Beth 2020-07-23    00:00:58   01:03:14   01:22:18    Thompson_B-07232    MV181.92

139:4    Q.   Since 2015, setting aside any executive

---

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

139:5    session with council, has the Cabell County
139:6    Commission discussed the opioid problem in a county
139:7    commission meeting?
139:8    A.  Yes.
139:9    Q.  When?
139:10   A.  It would have been prior to the lawsuit.
139:11   Q.  What was the nature of the discussion?
139:12   A.  Meeting with attorneys -- or having
139:13   attorneys speak at the commission meeting.
139:14   Q.  Okay.  So at some point prior to the
139:15   lawsuit, the County Commission discussed having
139:16   attorneys speak at a commission meeting?
139:17   A.  Correct.
139:18   Q.  And was the intended purpose of that
139:19   discussion to discuss this lawsuit?
139:20   A.  Yes.

| 93 | 139:21 -140:2 | Thompson, Beth 2020-07-23 | 00:00:21 | 01:04:12 | 01:21:20 | Thompson_B-07232 | MV181.93 |
|----|---------------|---------------------------|----------|----------|----------|------------------|----------|

139:21   Q.  Other than discussion of this lawsuit, has
139:22   the Commission ever discussed the opioid problem at a
139:23   county commission meeting?
139:24   A.  I think you would have to go back and look
140:1    through all of our minutes to make sure, but I don't
140:2    know of any.

| 94 | 143:4 -143:13 | Thompson, Beth 2020-07-23 | 00:00:26 | 01:04:33 | 01:20:59 | Thompson_B-07232 | MV181.94 |
|----|---------------|---------------------------|----------|----------|----------|------------------|----------|

143:4    Q.  Correct.  Does the County Commission know
143:5    of any specific incident of opioid diversion that is
143:6    connected to any of the defendants in this case?
143:7    A.  Well, that's why the Commission has hired
143:8    the attorneys and the experts to --
143:9         MR. FARRELL:  So the answer is?
143:10        THE DEPONENT:  No.  The County
143:11   Commission has hired the attorneys and the experts.
143:12   Q.  And we'll go through --
143:13   A.  -- to determine this.

| 95 | 143:14 -144:24 | Thompson, Beth 2020-07-23 | 00:02:04 | 01:04:59 | 01:20:33 | Thompson_B-07232 | MV181.95 |
|----|----------------|---------------------------|----------|----------|----------|------------------|----------|

143:14   Q.  Sorry.  We'll go through some of the other
143:15   terms in this topic.  Does the Commission know of any
143:16   specific incidents of opioid abuse that's connected
143:17   to any of the defendants in this case?

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

143:18   A.   No.

143:19   Q.   Does the Commission know of any specific

143:20   incident of opioid addiction that is connected to any

143:21   of the defendants in this case?

143:22   A.   I mean, it would be "no" on all of these,

143:23   other than what we see in the news.  And we have

143:24   hired the attorneys and the experts to determine all

144:1   of this for us.

144:2   Q.   And understanding that, just to make sure I

144:3   have a clear record, I still need to ask about the

144:4   last one, which is whether you know of any specific

144:5   incident of opioid overdose that is connected to any

144:6   of the defendants in this case?

144:7   A.   No.

144:8   Q.   Setting aside the activity in this lawsuit,

144:9   has the county taken any steps to identify any

144:10   specific incident in any of those categories that's

144:11   connected to any of the defendants in this case?

144:12   A.   No.  I mean, it's not a function of county

144:13   commission government.

144:14   Q.   Let's go on to 12, which pertains to

144:15   suspicious orders.  Does the Commission have an

144:16   understanding as to what the term "suspicious order"

144:17   means as it pertains to controlled substances?

144:18   A.   Again, this is not -- No.  This is not a

144:19   function of county commission government.  So we

144:20   wouldn't have no way of knowing.

144:21   Q.   Just to make sure I've got your answer

144:22   clear on the record, the answer was "no"?

144:23   A.   Correct, with my follow-up that it's not a

144:24   function of county commission government.

| 96 | **145:1 -145:14** | Thompson, Beth 2020-07-23 | 00:00:31 | 01:07:03 | 01:18:29 | Thompson_B-07232 | MV181.96 |

145:1   Q.   Does the county know                                    (Edited)

145:2   of any order of prescription opioids placed in Cabell

145:3   County that the Commission would regard as

145:4   suspicious?

145:5   A.   We believe we were asking you all for all

145:6   of that information, so.

145:7        MR. FARRELL:  So the answer is?

145:8        THE DEPONENT:  No.

145:9   Q.   When you say you believe "we're asking you

■ Defense Affirmatives     ■ Plaintiff Completeness Counte     ■ Defense Counter Counters     ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

|  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|

145:10   all for all of that information," you mean the
145:11   defendants in this case or --
145:12   A.   Yes.
145:13   Q.   -- third parties?
145:14   A.   The defendants.

---

| 97 | 145:15 -145:18 | Thompson, Beth 2020-07-23 | 00:00:15 | 01:07:34 | 01:17:58 | Thompson_B-07232 | MV181.97 |
|---|---|---|---|---|---|---|---|

145:15   Q.   Other than any activity in this litigation,
145:16   has the county taken any steps to try to identify any
145:17   suspicious order of prescription opioids?
145:18   A.   No.

---

| 98 | 145:19 -146:2 | Thompson, Beth 2020-07-23 | 00:00:33 | 01:07:49 | 01:17:43 | Thompson_B-07232 | MV181.98 |
|---|---|---|---|---|---|---|---|

145:19   Q.   Let's see.  Thirteen is:  "All actors and
145:20   acts that caused any harm that you suffered from
145:21   prescription opioids or illicit opioids for which you
145:22   are seeking remedies in this lawsuit."
145:23          So I will ask, in response to Topic No. 13:
145:24   What actors does the Commission believe caused the
146:1    harms for which it is seeking remedies in this
146:2    lawsuit?

---

| 99 | 146:9 -147:18 | Thompson, Beth 2020-07-23 | 00:02:23 | 01:08:22 | 01:17:10 | Thompson_B-07232 | MV181.99 |
|---|---|---|---|---|---|---|---|

146:9            MR. RUBY:  Ms. Thompson?
146:10   A.   All actors that caused the harm?
146:11   Q.   And that means companies, people,
146:12   government agencies, anybody who caused any of the
146:13   harm for which the Commission --
146:14   A.   And the defendants?
146:15   Q.   Well, the defendants are companies.  And so
146:16   if you -- if the defendants are on your list, then
146:17   that's fine.  But my question is --
146:18   A.   The defendants are definitely.  They're the
146:19   top of our list.
146:20   Q.   What other actors does the Commission
146:21   believe caused those harms?
146:22   A.   You know, this is -- again, it's something
146:23   that we have done what we can do as a county
146:24   commission government, and we have filed this lawsuit
147:1    to determine all the actors, and that's what we're
147:2    working toward here, is to get this information and
147:3    the -- we've hired the attorneys and the experts

---

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|

147:4    and -- to help us determine who it all is.

147:5    Q.   Does the Commission agree that

147:6    pharmaceutical manufacturers are among the actors who

147:7    caused the harms we're discussing?

147:8    A.   Yes.

147:9    Q.   Does the Commission believe that national

147:10    pharmacy chains are among those actors?

147:11    A.   Yes.  The Commission believes that there

147:12    are numerous people, numerous companies, numerous --

147:13    it's all encompassing.  And the big problem is though

147:14    that you all are the ones that should have known how

147:15    much you were dumping in here and how many pills you

147:16    were dumping in here, and you did nothing about it.

147:17    We're just here to try to clean up the mess you

147:18    caused.  So ...

---

| 100 | **149:9 -151:1** | Thompson, Beth 2020-07-23 | 00:02:21 | 01:10:45 | 01:14:47 | Thompson_B-07232 | MV181.100 |
|---|---|---|---|---|---|---|---|

149:9    MR. RUBY:  We're still on actors.

149:10    As the witness has testified, there

149:11    are lots of people to blame.

149:12    A.   Yes.  And that's why we've hired attorneys

149:13    and experts to determine all of this for us.  The

149:14    only thing that county commission government can do

149:15    is file this lawsuit.

149:16    And you brought up the grants and things

149:17    while ago.  To expect the county to apply for grants

149:18    and things that we have to match or spend money -- I

149:19    know my previous deposition, which I know I am not

149:20    here on that, but the attorney had mentioned imposing

149:21    a new tax or levy on our taxpayers.  You know, to

149:22    even suggest that we do something in addition to what

149:23    we've already spent out to cost taxpayers more for

149:24    this problem that you all have caused, it's just --

150:1    it's horrible.

150:2    It's horrible that you all would expect us

150:3    to do anything else except what we've done.  We had

150:4    no other recourse but to file this lawsuit to try to

150:5    fix this problem that you've created.  And, yeah,

150:6    there are multiple people to blame, but you all

150:7    should have known and did know the numbers that you

150:8    were dumping into our community, hundreds of

150:9    thousands.  And you did nothing to stop it or slow it

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

| | | |
|---|---|---|
| 150:10 | down. | |
| 150:11 | And the whole time, we're just sitting here | |
| 150:12 | watching this unfold, and watching the crime | |
| 150:13 | increase, and watching people die from overdoses, and | |
| 150:14 | watching babies be born addicted to substances.  And, | |
| 150:15 | you know, and to think that we're supposed to sit | |
| 150:16 | here and say that we're embarrassed that we didn't do | |
| 150:17 | more, how did we know?  How did we know what all you | |
| 150:18 | all were doing to us?  We didn't know.  We were just | |
| 150:19 | watching it all unfold and not knowing what to do | |
| 150:20 | about it and how to combat it. | |
| 150:21 | And now this is the only thing we can do. | |
| 150:22 | And to suggest that we should do something more, as | |
| 150:23 | far as grants or -- that wouldn't even scratch the | |
| 150:24 | surface.  It's just -- It really makes me mad.  And | |
| 151:1 | it makes the Commission mad too. | |

| 101 | **151:16 -152:15** | Thompson, Beth 2020-07-23 | 00:01:00 | 01:13:06 | 01:12:26 | Thompson_B-07232 | MV181.101 |
|---|---|---|---|---|---|---|---|

| | |
|---|---|
| 151:16 | Q.   Is it inappropriate in some way for the |
| 151:17 | City of Huntington to have obtained grants to abate |
| 151:18 | the opioid problem? |
| 151:19 | A.   Absolutely not.  No.  I'm glad they had the |
| 151:20 | ability to do that.  Their rules are much different |
| 151:21 | than county commission government.  Municipalities |
| 151:22 | are different.  They're different municipalities. |
| 151:23 | They are a municipality.  We are a county commission |
| 151:24 | government.  Different roles, different functions, |
| 152:1 | different funding.  It's all completely different. |
| 152:2 | They have home rule.  We don't have that. |
| 152:3 | You know, it's just -- it's two completely |
| 152:4 | different animals you're talking about.  And I'm glad |
| 152:5 | they have that ability. |
| 152:6 | Q.   Does the county not have the ability?  Does |
| 152:7 | the County Commission not have the ability to obtain |
| 152:8 | grants? |
| 152:9 | A.   It does, but we don't know of any that were |
| 152:10 | out there, and we shouldn't be asked to be spending |
| 152:11 | more money on grants and matching things that I don't |
| 152:12 | even know if they're there, that would even fight to |
| 152:13 | scratch the surface of this problem.  That's what I'm |
| 152:14 | saying, and that's what the County Commission is |
| 152:15 | saying. |

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

---

| 102 | **152:20 - 153:5** | Thompson, Beth 2020-07-23 | 00:00:33 | 01:14:06 | 01:11:26 | Thompson_B-07232 | MV181.102 |

152:20   Q.   Let me go back to the DEA question.  Is the
152:21   Commission aware of whether the Drug Enforcement
152:22   Administration sets quotas for the amount of opioids
152:23   that can be manufactured in the U.S.?
152:24   A.   Yes, I believe it does -- or we believe it
153:1   does, yes.
153:2   Q.   Is the DEA also then a contributor to the
153:3   harms that the Commission identified in its
153:4   Complaint?
153:5   A.   If it neglected its responsibilities, yes.

---

| 103 | **166:13 - 166:20** | Thompson, Beth 2020-07-28 | 00:00:34 | 01:14:39 | 01:10:53 | Thompson_B-07282 | MV181.103 |

166:13   This is Media Unit 1 of the continuing
166:14   30(b)(6) deposition of Beth Thompson for Cabell
166:15   County Commission, taken by counsel for the Defendant
166:16   in the matter of City of Huntington and Cabell County
166:17   Commission vs. AmerisourceBergen Drug Corporation, et
166:18   al, filed in United States District Court for the
166:19   Southern District of West Virginia, being Civil
166:20   Action Nos. 3:17-01362 and 3:17-01665.

---

| 104 | **168:8 - 168:18** | Thompson, Beth 2020-07-28 | 00:00:23 | 01:15:13 | 01:10:19 | Thompson_B-07282 | MV181.104 |

168:8   You understand that you are still under
168:9   oath and that this is a continuation of the
168:10   deposition that we started last Thursday?
168:11   A.   Yes.
168:12   Q.   And this is the Rule 30(b)(6) Deposition of
168:13   the Cabell County Commission.  And so the testimony
168:14   that you give today, like the testimony that you gave
168:15   on Thursday, is testimony that is on behalf of the
168:16   Commission, rather than on behalf of you personally.
168:17   Do you understand that?
168:18   A.   Yes.

---

| 105 | **168:19 - 169:9** | Thompson, Beth 2020-07-28 | 00:00:50 | 01:15:36 | 01:09:56 | Thompson_B-07282 | MV181.105 |

168:19   Q.   All right.  I wanted to do -- to begin with
168:20   a little bit of cleanup of the testimony on Thursday,
168:21   and when I say "cleanup," I mean cleanup of a
168:22   question -- or a couple of questions where I was less
168:23   precise than I should have been.

---

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

| | | | | | | | |
|---|---|---|---|---|---|---|---|

168:24        I asked about the Commission's knowledge of
169:1     practitioners who inappropriately wrote or filled
169:2     prescriptions.  Do you recall that?
169:3     A.  Yes.
169:4     Q.  And Mr. Farrell made the point, with which
169:5     I agreed, that I was not asking about -- asking you
169:6     to prematurely reveal information that's going to be
169:7     included in the county's expert reports, and that
169:8     remains the case.
169:9     A.  Okay.

---

**106**   **169:10 -170:10**   Thompson, Beth 2020-07-28   00:01:03  01:16:26  01:09:06  Thompson_B-07282  MV181.106

169:10   Q.  What I wanted to clarify is that -- and the
169:11   reason I'm making this clarification, is that
169:12   Mr. Farrell and I had a discussion about historical
169:13   knowledge of the Commission, and the clarification
169:14   that I wanted to make is that if the Commission, even
169:15   today, has knowledge outside of the work of its
169:16   experts or the work of its attorneys about doctors or
169:17   pharmacies that have inappropriately written or
169:18   filled prescriptions, then you would still be
169:19   required to testify about that.
169:20       Do you understand the distinction that I am
169:21   making?
169:22   A.  Yes.
169:23   Q.  In other words, historical doesn't mean
169:24   necessarily a long time ago, but if the Commission
170:1    has knowledge today, even knowledge that it's
170:2    acquired since the beginning of this litigation about
170:3    doctors who have inappropriately filled
170:4    prescriptions, that would be fair game for this
170:5    deposition.
170:6       And so my question is whether that
170:7    understanding changes the answer -- the answer that
170:8    you gave about the Commission's knowledge of
170:9    physicians who inappropriately filled prescriptions.
170:10  A.  No.

---

**107**   **170:19 -170:23**   Thompson, Beth 2020-07-28   00:00:35  01:17:29  01:08:03  Thompson_B-07282  MV181.107

170:19   Q.  Exhibit 16 is a document that begins with
170:20   Bates No. CCCOMM 0003832.  And ends at Bates No.
170:21   CCCOMM0003834, and it is an email dated April 3rd,

■ Defense Affirmatives     ■ Plaintiff Completeness Counte     ■ Defense Counter Counters     ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

|  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|

170:22    2018, from kvance@cabellcountyclerk.org to Beth
170:23    Thompson, with an attachment.

---

| 108 | **170:24 - 171:11** | Thompson, Beth 2020-07-28 | 00:00:32 | 01:18:04 | 01:07:28 | Thompson_B-07282 | MV181.108 |
|---|---|---|---|---|---|---|---|

170:24    A.   Okay.
171:1     Q.   Do you recognize this document,
171:2         Ms. Thompson?
171:3     A.   I do.
171:4     Q.   What is this?
171:5     A.   This is an email from Kimberly Vance, who
171:6     worked -- or she still works in the county clerk's
171:7     office, to me, with a copy of a resolution attached
171:8     to it, resolution dated January 26th, 2017, "In the
171:9     Matter of Declaring the Distribution of Pain
171:10    Medications a Public Nuisance and Retain the Firm
171:11    Green Ketchum to Seek Civil Remedy."

---

| 109 | **171:12 - 171:18** | Thompson, Beth 2020-07-28 | 00:00:15 | 01:18:36 | 01:06:56 | Thompson_B-07282 | MV181.109 |
|---|---|---|---|---|---|---|---|

171:12    Q.   And what's the date of the resolution
171:13    that's attached to this document -- attached to this
171:14    email?
171:15    A.   January 26, 2017.
171:16    Q.   The email itself is dated April 3rd,
171:17    2018; is that right?
171:18    A.   Yes.

---

| 110 | **171:24 - 172:14** | Thompson, Beth 2020-07-28 | 00:00:47 | 01:18:51 | 01:06:41 | Thompson_B-07282 | MV181.110 |
|---|---|---|---|---|---|---|---|

171:24    Q.   Do you recognize the resolution that's
172:1     attached to the email?
172:2     A.   Yes.
172:3     Q.   What is this resolution?
172:4     A.   It's titled:  "In the Matter Declaring the
172:5     Distribution of Pain Medications a Public Nuisance
172:6     and Retain the Firm of Green Ketchum to Seek Civil
172:7     Remedy."
172:8     Q.   And what was the reason that the Commission
172:9     adopted this resolution?
172:10    A.   The reason was the devastation that had
172:11    been occurring in our community for years.  And the
172:12    way that we could try to address it was to declare a
172:13    public nuisance to the public health and safety of
172:14    our county.

---

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

| 111 | **172:15 - 172:23** | Thompson, Beth 2020-07-28 | 00:00:28 | 01:19:38 | 01:05:54 | Thompson_B-07282 | MV181.111 |

172:15   Q.   You testified last week -- and correct me
172:16    if I'm wrong -- that the County Commission became
172:17    aware of a serious opioid problem in Cabell County
172:18    around 2006; is that right?
172:19   A.   I believe that's -- yes, that's what it is.
172:20   Q.   Why did the Commission wait 11 years to
172:21    enact or to adopt this resolution?
172:22   A.   Well, it didn't know it needed to act
172:23    quicker.

| 112 | **173:4 - 174:12** | Thompson, Beth 2020-07-28 | 00:01:47 | 01:20:06 | 01:05:26 | Thompson_B-07282 | MV181.112 |

173:4   Q.   Why then, with knowledge of the opioid
173:5    problem that existed, did the county not know that it
173:6    needed to act quicker in this regard?
173:7   A.   Because the defendants were the ones that
173:8    were aware of the amount of pills they were
173:9    distributing into our county.  We had no way of
173:10    knowing that.  We were just watching the devastation
173:11    occur.
173:12   Q.   And so it is the position of the Commission
173:13    that it didn't know until -- Let me back up.  I don't
173:14    want to put words in your mouth.  Did the Commission
173:15    know prior to 2017 that the opioid problem was a
173:16    public nuisance?
173:17   A.   Yes, I mean, it would -- yes.
173:18   Q.   When did the Commission determine that the
173:19    opioid problem in Cabell County was a public
173:20    nuisance?
173:21   A.   Well, it declared it was a resolution dated
173:22    January 26, 2017.
173:23   Q.   Right.  And I see the resolution.  I see
173:24    the acts that the county took.  But I thought you
174:1    indicated that the county knew prior to 2017 that the
174:2    opioid problem was, in fact, a public nuisance.  Did
174:3    I misunderstand that?
174:4   A.   It knew that there was a problem, yes.
174:5   Q.   Did the Commission know then prior to the
174:6    enactment of this resolution that the opioid problem
174:7    was a public nuisance?
174:8   A.   No.

■ Defense Affirmatives    ■ Plaintiff Completeness Counter    ■ Defense Counter Counters    ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

|  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|

174:9   Q.   How did the Commission determine that the

174:10   opioid problem in Cabell County was a public

174:11   nuisance?

174:12   A.   We talked with our counsel and determined.

---

| 113 | **174:16 - 175:12** | Thompson, Beth 2020-07-28 | 00:01:28 | 01:21:53 | 01:03:39 | Thompson_B-07282 | MV181.113 |
|---|---|---|---|---|---|---|---|

174:16   Q.   Did the Commission know prior to 2017 that

174:17   the opioid problem was a hazard to public health?

174:18   A.   The Commission knew -- no.   The Commission

174:19   knew that it was facing a crisis and a dilemma and

174:20   devastation to its community, is what the Commission

174:21   knew, based upon multiple, multiple crimes, and

174:22   addiction, and news articles, and stories about our

174:23   community.   So the Commission knew, and based on all

174:24   of that.

175:1   Q.   I'm trying to understand the distinction

175:2   between those things.   You said the Commission knew

175:3   it was facing a crisis and a dilemma and devastation

175:4   to its community.   Did the Commission understand

175:5   prior to 2017 that those things were a hazard to

175:6   public health?

175:7   A.   It did understand, yes, that there was a

175:8   problem -- a hazard to public health.   What it didn't

175:9   know was the greed behind what was going on with the

175:10   defendants pumping the millions of pills into our

175:11   community.   And we had no way of finding that out

175:12   until we talked with our counsel.

---

| 114 | **175:14 - 175:22** | Thompson, Beth 2020-07-28 | 00:00:34 | 01:23:21 | 01:02:11 | Thompson_B-07282 | MV181.114 |
|---|---|---|---|---|---|---|---|

175:14         When did the Commission first understand

175:15   then that the opioid problem was a hazard to public

175:16   health?

175:17   A.   It would have been -- It's hard to say

175:18   exactly when.   I mean, it's been a problem for years.

175:19   But what we're talking about in this case is, you

175:20   know, the time period that we're allowed to talk

175:21   about, 2006 on.   Because the problem is still there.

175:22   You still haven't fixed it.   We're trying to.

---

| 115 | **176:15 - 177:11** | Thompson, Beth 2020-07-28 | 00:01:05 | 01:23:55 | 01:01:37 | Thompson_B-07282 | MV181.115 |
|---|---|---|---|---|---|---|---|

176:15   Q.   Do you see the first paragraph of

176:16   Exhibit 16, the attachment, the resolution that

■ Defense Affirmatives     ■ Plaintiff Completeness Counte     ■ Defense Counter Counters     ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

176:17   begins "In addition to all other powers"?
176:18   A.   Yes.
176:19   Q.   That says:  "In addition to all other
176:20   powers and duties now confered by law upon county
176:21   commissions, the Cabell County Commission is
176:22   authorized to enact ordinances, issue orders, and
176:23   take other appropriate and necessary actions for the
176:24   elimination of hazards to public health and safety
177:1   and to abate or cause to be abated anything which the
177:2   Commission determines to be a public nuisance.  W.Va.
177:3   Code Section 7-1-3kk, 2002."
177:4      Did I read that correctly?
177:5   A.   Yes.
177:6   Q.   We've talked about hazards to public
177:7   health.  Let's talk about hazards to safety.  Did the
177:8   Commission understand in 2006 when it recognized the
177:9   existence of the opioid problem in Cabell County that
177:10   that problem was a hazard to safety?
177:11   A.   Yes, I believe it would have.

| 116 | 177:19 -178:2 | Thompson, Beth 2020-07-28 | 00:00:22 | 01:25:00 | 01:00:32 | Thompson_B-07282 | MV181.116 |

177:19   Q.   Did the Commission, when it understood in
177:20   2006 that the opioid problem was a hazard to public
177:21   health and safety, consider adopting a resolution
177:22   similar to this?
177:23   A.   I don't believe it did.
177:24   Q.   Did it consider adopting a resolution
178:1   similar to this at any point prior to the resolution
178:2   being suggested by counsel?

| 117 | 178:4 -178:11 | Thompson, Beth 2020-07-28 | 00:00:30 | 01:25:22 | 01:00:10 | Thompson_B-07282 | MV181.117 |

178:4   A.   Not that we're aware of.
178:5   Q.   Is this document that is attached to the
178:6   email in Exhibit 16, is this a resolution or an
178:7   ordinance?
178:8   A.   It is a resolution.
178:9   Q.   Has the Commission enacted any ordinance
178:10   that addresses the opioid problem in Cabell County?
178:11   A.   It has not.

| 118 | 178:12 -178:18 | Thompson, Beth 2020-07-28 | 00:00:22 | 01:25:52 | 00:59:40 | Thompson_B-07282 | MV181.118 |

178:12   Q.   Why has the Commission not adopted or

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

|  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|
|  |  | 178:13 | enacted an ordinance to address the opioid problem in |  |  |  |  |  |
|  |  | 178:14 | Cabell County? |  |  |  |  |  |
|  |  | 178:15 | A.  It's not aware that it's allowed to have an |  |  |  |  |  |
|  |  | 178:16 | ordinance that would be effective.  The functions of |  |  |  |  |  |
|  |  | 178:17 | county commission government don't operate in a way |  |  |  |  |  |
|  |  | 178:18 | that an ordinance would be effective. |  |  |  |  |  |

| 119 | **179:16 - 180:18** | Thompson, Beth 2020-07-28 | 00:01:38 | 01:26:14 | 00:59:18 | Thompson_B-07282 | MV181.119 |
|---|---|---|---|---|---|---|---|

179:16    Q.   Is the Commission's position that it lacks
179:17    the ability to enforce ordinances?
179:18    A.   It's the position that there is not a good
179:19    court structure like in the municipalities to make
179:20    ordinances effective.
179:21    Q.   What is the difference in the court
179:22    structure between the county and the municipality
179:23    that prevents the county from making ordinances
179:24    effective?
180:1     A.   The municipalities have a judge and the --
180:2     can arrest them right there and bring them in front
180:3     of the judge and sentence them and fine them.  We
180:4     don't have that ability.
180:5     Q.   Is there a circuit court in Cabell County?
180:6     A.   There is, but it's not that we can --
180:7     That's not how our ordinances work.  If someone would
180:8     violate our noise ordinance, they are -- they would
180:9     be brought in before the Commission at a commission
180:10    meeting and that kind of thing.  It's not the same
180:11    structure.
180:12    Q.   And so is it the position of the Commission
180:13    that it lacks the authority to create criminal
180:14    penalties for violation of ordinances?
180:15    A.   Yes.
180:16    Q.   Including ordinances that are enacted under
180:17    the section of State Code that is quoted here?
180:18    A.   Yes.

| 120 | **183:5 - 183:23** | Thompson, Beth 2020-07-28 | 00:01:02 | 01:27:52 | 00:57:40 | Thompson_B-07282 | MV181.120 |
|---|---|---|---|---|---|---|---|

183:5     Q.   Since the Commission adopted this
183:6     resolution declaring the opioid problem to be a
183:7     public nuisance, has it done anything to abate that
183:8     nuisance besides filing this lawsuit?
183:9     A.   No.

| ■ Defense Affirmatives | ■ Plaintiff Completeness Counte | ■ Defense Counter Counters | ■ Plaintiff Counters |
|---|---|---|---|

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

| | | | | | | | |
|---|---|---|---|---|---|---|---|

183:10   Q.   Why not?

183:11   A.   It's doing the only thing it knows that it

183:12   can do to correct the situation that you've caused.

183:13   Q.   Do you see that the Code section that the

183:14   Commission cited in this resolution authorizes other

183:15   appropriate and necessary actions for the elimination

183:16   of hazards to public health and safety?

183:17   A.   Yes.

183:18   Q.   Does the Commission agree then that this

183:19   Code section authorizes it to take appropriate and

183:20   necessary actions other than filing a lawsuit to

183:21   eliminate hazards to public health and safety?

183:22   A.   It does, but it believes it's doing what it

183:23   can by filing the lawsuit.

---

| 121 | **183:24 - 184:3** | Thompson, Beth 2020-07-28 | 00:00:09 | 01:28:54 | 00:56:38 | Thompson_B-07282 | MV181.121 |
|---|---|---|---|---|---|---|---|

183:24   Q.   What other actions has the Commission

184:1   considered taking to abate the opioid public nuisance

184:2   in Cabell County besides filing this lawsuit?

184:3   A.   None.

---

| 122 | **184:4 - 184:19** | Thompson, Beth 2020-07-28 | 00:00:42 | 01:29:03 | 00:56:29 | Thompson_B-07282 | MV181.122 |
|---|---|---|---|---|---|---|---|

184:4   Q.   Let's talk about another subject of your

184:5   testimony last week, Ms. Thompson.  Do you recall

184:6   your testimony that the Distributor Defendants in

184:7   this case are the main cause of the opioid problem in

184:8   Cabell County?

184:9   A.   Yes.

184:10   Q.   Do you recall your testimony that the

184:11   Distributor Defendants in this case are similarly the

184:12   greatest cause of the opioid problem here in Cabell

184:13   County?

184:14   A.   Yes.

184:15   Q.   Do you recall your testimony that the

184:16   Distributor Defendants in this case are at the,

184:17   quote, "top of our list of causes of the opioid

184:18   problem"?

184:19   A.   Yes.

---

| 123 | **184:20 - 184:20** | Thompson, Beth 2020-07-28 | 00:00:04 | 01:29:45 | 00:55:47 | Thompson_B-07282 | MV181.123 |
|---|---|---|---|---|---|---|---|

184:20   Q.   Could you open Exhibit 43, please.

---

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

| 124 | **184:21 -186:5** | Thompson, Beth 2020-07-28 | 00:01:35 | 01:29:49 | 00:55:43 | Thompson_B-07282 | MV181.124 |
|-----|-------------------|---------------------------|----------|----------|----------|------------------|-----------|

184:21   A.   Okay.

184:22   Q.   Do you recognize this document?

184:23   A.   Yes.

184:24   Q.   What is this?

185:1   A.   This is the Corrected Joint and Third

185:2   Amended Complaint in the matter regarding National

185:3   Prescription Opiate Litigation.  It has our case

185:4   numbers listed, and Cabell County Commission and City

185:5   of Huntington, West Virginia, Plaintiff, vs. Purdue

185:6   Pharma, et al.

185:7   Q.   This is a complaint that the Commission

185:8   filed; is that right?

185:9   A.   Yes.

185:10   Q.   And as you noted on page 1, and then

185:11   continuing, there's a list of defendants in the case;

185:12   is that right?

185:13   A.   Yes.

185:14   Q.   And I won't ask you to read all of those,

185:15   but that list of defendants spans across parts of

185:16   three pages; is that right?

185:17   A.   Yes.

185:18   Q.   Am I correct that there are many other

185:19   defendants on this list besides the three defendants

185:20   that are set for trial in this particular case?

185:21   A.   Yes.

185:22   Q.   Is it the position of the County Commission

185:23   that all of these defendants are responsible for the

185:24   opioid problem that exists here?

186:1   A.   The Commission has noted in my testimony

186:2   previously that there are many to blame for the

186:3   problem, yes.

186:4   MR. FARRELL:  So the answer is yes?

186:5   THE DEPONENT:  Yes.

| 125 | **186:6 -186:6** | Thompson, Beth 2020-07-28 | 00:00:11 | 01:31:24 | 00:54:08 | Thompson_B-07282 | MV181.125 |
|-----|------------------|---------------------------|----------|----------|----------|------------------|-----------|
|     |                  |                           |          |          |          | (Edited)         |           |

186:6   Q.   If you would turn to page 75, please.

| 126 | **186:6 -188:10** | Thompson, Beth 2020-07-28 | 00:02:27 | 01:31:35 | 00:53:57 | Thompson_B-07282 | MV181.126 |
|-----|-------------------|---------------------------|----------|----------|----------|------------------|-----------|
|     |                   |                           |          |          |          | (Edited)         |           |

186:6   Q.   Do

186:7   you see paragraph 313 at the bottom of page 75?

186:8   A.   Yes.

| ■ Defense Affirmatives | ■ Plaintiff Completeness Counte | ■ Defense Counter Counters | ■ Plaintiff Counters |
|---|---|---|---|

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

186:9    Q.   That paragraph says:  "This drug crisis

186:10   began with a corporate business plan.  It started

186:11   with a decision by Purdue and the Sackler defendants,

186:12   collectively Purdue entities, to promote opioids

186:13   deceptively and illegally in order to significantly

186:14   increase sales and generate billions of dollars in

186:15   revenue for Purdue's private owners, the Sackler

186:16   family."  Did I read that correctly?

186:17   A.   You did.

186:18   Q.   Does the Commission agree with that

186:19   statement?

186:20   A.   Yes.

186:21   Q.   Is there any part of that that the

186:22   Commission disagrees with?

186:23   A.   No.

186:24   Q.   And so it is the position of the Commission

187:1    that the drug crisis that is the subject of this

187:2    litigation was started by Purdue and the Sackler

187:3    Defendants?

187:4    A.   Yes.

187:5    Q.   Is it also the position of the Commission

187:6    that the Distributor Defendants in this case did not

187:7    start the drug crisis?

187:8    A.   Yes.

187:9    Q.   Let me go on to paragraph 314.  It says:

187:10        "Purdue's strategies were quickly joined by

187:11   other manufacturers, including Endo Health Solutions,

187:12   Inc.; Endo Pharmaceuticals, Inc.; Par Pharmaceutical,

187:13   Inc.; Par Pharmaceutical Companies, Inc., formally

187:14   known as Par Pharmaceutical Holdings, Inc.; Janssen

187:15   Pharmaceuticals, Inc.; Ortho-McNeil-Janssen

187:16   Pharmaceuticals, Inc., now known as Janssen

187:17   Pharmaceuticals, Inc.; Janssen Pharmaceutica, Inc.,

187:18   now known as Janssen Pharmaceuticals, Inc.; Johnson &

187:19   Johnson; Noramco, Inc.; Teva Pharmaceutical

187:20   Industries, Limited; Teva Pharmaceuticals USA, Inc.;

187:21   Cephalon, Inc; Mallinckrodt, PLC; Mallinckrodt LLC;

187:22   SpecGx LLC; Amneal; and KVK Tech, collectively the

187:23   Marketing Defendants."

187:24        Did I read that correctly?

188:1    A.   Yes.

| 188:2 | Q.  Does the Commission agree with that |
|---|---|
| 188:3 | statement? |
| 188:4 | A.  Yes. |
| 188:5 | Q.  Is there any part of that statement that |
| 188:6 | the Commission disagrees with? |
| 188:7 | A.  No. |
| 188:8 | Q.  Are any of the three Distributor Defendants |
| 188:9 | in this case mentioned in paragraph 314? |
| 188:10 | A.  No. |

| 127 | **189:3 - 190:11** | Thompson, Beth 2020-07-28 | 00:01:22 | 01:34:02 | 00:51:30 | Thompson_B-07282 | MV181.127 |
|---|---|---|---|---|---|---|---|

| 189:3 | Q.  In the next paragraph, Ms. Thompson, |
|---|---|
| 189:4 | paragraph 315, do you see the last sentence that |
| 189:5 | begins with "The Marketing Defendants"? |
| 189:6 | A.  Yes. |
| 189:7 | Q.  It says:  "The Marketing Defendants used |
| 189:8 | misrepresentations regarding the risks and benefits |
| 189:9 | of opioids to enable the widespread prescribing of |
| 189:10 | opioids for common chronic pain conditions like low |
| 189:11 | back pain, arthritis and headaches." |
| 189:12 | Does the Commission agree with that |
| 189:13 | statement? |
| 189:14 | A.  Yes. |
| 189:15 | Q.  Any part of that that the Commission |
| 189:16 | disagrees with? |
| 189:17 | A.  No. |
| 189:18 | Q.  And the three Distributor Defendants in |
| 189:19 | this case are not included in the defined term "the |
| 189:20 | Marketing Defendants" that's used in that sentence, |
| 189:21 | are they? |
| 189:22 | A.  Correct. |
| 189:23 | Q.  If you go over to paragraph 319 on the next |
| 189:24 | page, 77, do you see the third sentence which begins |
| 190:1 | with "Marketing Defendants"? |
| 190:2 | A.  Yes. |
| 190:3 | Q.  It says:  "Marketing Defendants' deceptive |
| 190:4 | marketing caused prescribing not only of their |
| 190:5 | opioids, but of opioids as a class, to skyrocket." |
| 190:6 | Does the Commission agree with that |
| 190:7 | statement? |
| 190:8 | A.  Yes. |
| 190:9 | Q.  And is there any mention in that sentence |

| ■ Defense Affirmatives | ■ Plaintiff Completeness Counte | ■ Defense Counter Counters | ■ Plaintiff Counters |
|---|---|---|---|

| | | |
|---|---|---|
| | 190:10 | of the three Distributor Defendants in this case? |
| | 190:11 | A.  No. |

| 128 | **190:12 -191:7** | Thompson, Beth 2020-07-28    00:00:48   01:35:24   00:50:08   Thompson_B-07282   MV181.128 |
|---|---|---|
| | 190:12 | Q.   If you would turn to page 87, Ms. Thompson. |
| | 190:13 | A.   Okay. |
| | 190:14 | Q.   Do you see paragraph 351 there? |
| | 190:15 | A.   Yes. |
| | 190:16 | Q.   It says -- or it begins:  "Armed with this |
| | 190:17 | and other misrepresentations about the risks and |
| | 190:18 | benefits of its new drug, Purdue was able to open an |
| | 190:19 | enormous untapped market.  Patients with |
| | 190:20 | non-end-of-life, non-acute, everyday aches and |
| | 190:21 | pains." |
| | 190:22 | Did I read that correctly? |
| | 190:23 | A.   Yes. |
| | 190:24 | Q.   Does the Commission agree that it was |
| | 191:1 | Purdue that opened the enormous untapped market |
| | 191:2 | that's mentioned in that sentence? |
| | 191:3 | A.   Yes. |
| | 191:4 | Q.   And nowhere in that sentence are any of the |
| | 191:5 | three Distributor Defendants in this case mentioned, |
| | 191:6 | are they? |
| | 191:7 | A.   No. |

| 129 | **191:8 -193:5** | Thompson, Beth 2020-07-28    00:02:35   01:36:12   00:49:20   Thompson_B-07282   MV181.129 |
|---|---|---|
| | 191:8 | Q.   And we'll look at just a couple more |
| | 191:9 | passages from the Complaint, Ms. Thompson.  On |
| | 191:10 | page 90, paragraph 359. |
| | 191:11 | A.   Okay. |
| | 191:12 | Q.   That begins:  "Purdue created a market for |
| | 191:13 | the use of opioids for a range of common aches and |
| | 191:14 | pains by misrepresenting the risks and benefits of |
| | 191:15 | its opioids, but it was far from alone.  The other |
| | 191:16 | Marketing Defendants -- already manufacturers of |
| | 191:17 | prescription opioids -- positioned themselves to take |
| | 191:18 | advantage of the opportunity Purdue created, |
| | 191:19 | developing both branded and generic opioids to |
| | 191:20 | compete with OxyContin, while together with Purdue |
| | 191:21 | and each other, misrepresenting the safety and |
| | 191:22 | efficacy of their products." |
| | 191:23 | Does the Commission agree with that |

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

191:24   statement?

192:1   A.  Yes.

192:2   Q.  Is there any part of that that the

192:3    Commission disagrees with?

192:4   A.  No.

192:5   Q.  Is there any mention in that passage of the

192:6    three Distributor Defendants in this case?

192:7   A.  No.

192:8   Q.  This Complaint also named as defendants

192:9    companies that include Rite Aid of West Virginia,

192:10   Walgreens Boots Alliance, CVS Pharmacy, Inc., and it

192:11   refers to National Pharmacy Defendants.

192:12        Are you familiar with that term as it's

192:13   used in the Complaint, National Pharmacy Defendants?

192:14   A.  Yes.

192:15   Q.  Does the County Commission believe that the

192:16   National Pharmacy Defendants also engaged in

192:17   wrongdoing that caused the opioid problem here?

192:18   A.  Yes.

192:19   Q.  And what did they do wrong?

192:20   A.  The Commission doesn't have the rights to

192:21   those records.

192:22   Q.  Does the Commission believe generally that

192:23   the National Pharmacy Defendants inappropriately

192:24   distributed pharmaceuticals?  Distributed

193:1    prescription opioids?

193:2   A.  Yes.

193:3   Q.  If you turn -- and this is a ways back in

193:4    here, but there is a defined term that I want you to

193:5    take a look at.  If you turn to page 338.

---

| 130 | **193:6 - 194:13** | Thompson, Beth 2020-07-28 | 00:01:19 | 01:38:47 | 00:46:45 | Thompson_B-07282 | MV181.130 |

193:6   A.  Okay.

193:7   Q.  Paragraph 1135 says:  "Pharmacy Benefit

193:8    Managers, PBM, are companies that administer

193:9    prescription drug plans for entities that include

193:10   insurers, self-insured employers, and state and

193:11   federal government agencies.  Collectively these

193:12   entities are referred to as planned sponsors."

193:13        Is the Commission aware of what pharmacy

193:14   benefit managers are?

193:15   A.  Other than what's listed in the Complaint.

■ Defense Affirmatives   ■ Plaintiff Completeness Counte   ■ Defense Counter Counters   ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

193:16        None other than what's listed in the
193:17    Complaint.
193:18    Q.   In paragraph 1137, it says:  "Upon
193:19    information and belief, PBM Defendants colluded with
193:20    manufacturers who offer financial incentives, such as
193:21    rebates and administrative fees, in exchange for
193:22    benefit plan design, formulary placement, and drug
193:23    utilization management that would result in more
193:24    opioids entering the marketplace."
194:1        Does the Commission agree with that
194:2    statement?
194:3    A.   Yes.
194:4    Q.   Is there any part of that that it doesn't
194:5    agree with?
194:6    A.   No.
194:7    Q.   And the collusion that the Commission
194:8    alleges in that paragraph is between PBM Defendants
194:9    and manufacturers; is that correct?
194:10   A.   It is.
194:11   Q.   Is there any mention in that paragraph of
194:12   the Distributor Defendants in this case?
194:13   A.   No.

| 131 | 200:13 - 200:24 | Thompson, Beth 2020-07-28 | 00:00:24 | 01:40:06 | 00:45:26 | Thompson_B-07282 | MV181.131 |

200:13   Q.   Did the County Commission approve the
200:14   filing of the Complaint that's shown here in
200:15   Exhibit 43?
200:16   A.   Yes.
200:17   Q.   Did each of the commissioners agree to do
200:18   that?
200:19   A.   It takes a quorum.  So if it passed, it was
200:20   at least two of them.
200:21   Q.   There was a vote at the County Commission
200:22   that approved the filing of the Third Amended
200:23   Complaint?
200:24   A.   I believe so, yes.

| 132 | 201:1 - 201:19 | Thompson, Beth 2020-07-28 | 00:01:18 | 01:40:30 | 00:45:02 | Thompson_B-07282 | MV181.132 |

201:1    Q.   Let's turn to abatement.  In Exhibit 16 --
201:2    and you don't need to get it back out unless you want
201:3    to, but the Commission and the resolution that was in
201:4    Exhibit 16 used the term "abate" in reference to the

█ Defense Affirmatives     █ Plaintiff Completeness Counter     █ Defense Counter Counters     █ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

| | |
|---|---|
| 201:5 | opioid public nuisance.  Do you recall that? |
| 201:6 | A.   Yes. |
| 201:7 | Q.   What does the Commission understand the |
| 201:8 | term "abate" or the term "abatement" to mean in the |
| 201:9 | context of the opioid problem? |
| 201:10 | A.   To stop and correct an action. |
| 201:11 | Q.   I'm sorry? |
| 201:12 | A.   Just to stop and correct a situation or |
| 201:13 | action. |
| 201:14 | Q.   What does the Commission believe needs to |
| 201:15 | be done to abate the opioid problem in Cabell County? |
| 201:16 | A.   It's ongoing.  It's to be determined. |
| 201:17 | There's so much that's been done by this community, |
| 201:18 | and it's just an ongoing thing.  It's still going on. |
| 201:19 | It's not been stopped yet, so. |

| 133 | **202:9 - 203:24** | Thompson, Beth 2020-07-28 | 00:02:04 | 01:41:48 | 00:43:44 | Thompson_B-07282 | MV181.133 |
|---|---|---|---|---|---|---|---|

| | |
|---|---|
| 202:9 | In the remedy we're seeking in this |
| 202:10 | lawsuit, what do we allege that the defendants should |
| 202:11 | pay for to abate the epidemic? |
| 202:12 | MR. RUBY:  Go ahead. |
| 202:13 | A.   Pay for the problem it caused.  The |
| 202:14 | destruction it caused in this county. |
| 202:15 | MR. FARRELL:  And how are you going to |
| 202:16 | determine that? |
| 202:17 | THE DEPONENT:  By the experts in this |
| 202:18 | case. |
| 202:19 | BY MR. RUBY: |
| 202:20 | Q.   You mentioned the Resiliency Plan, and |
| 202:21 | we'll turn to that in more detail in a bit.  Does the |
| 202:22 | Countybelieve that all of the proposals in the |
| 202:23 | Resiliency Plan are needed to abate the opioid |
| 202:24 | problem here? |
| 203:1 | A.   It believes that they're all needed and |
| 203:2 | much more, yes. |
| 203:3 | Q.   Are there actions beyond those proposed in |
| 203:4 | the Resiliency Plan that the Commission believes are |
| 203:5 | needed to abate the opioid problem? |
| 203:6 | A.   We've hired the experts to determine that. |
| 203:7 | Q.   And I'm not asking you what your experts |
| 203:8 | think.  I'm asking about the knowledge of the County |
| 203:9 | Commission or the position of the County Commission |

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

| | | |
|---|---|---|
| 203:10 | as you sit here right now.  Other than -- again, |
| 203:11 | we'll turn to the Resiliency Plan in some detail |
| 203:12 | later, but setting aside the Resiliency Plan, is |
| 203:13 | there any other action that the Commission, as you |
| 203:14 | sit here right now, believes is needed to abate the |
| 203:15 | opioid problem in Cabell County? |
| 203:16 | A.   We filed the lawsuit, and we hired the |
| 203:17 | experts to try to determine that very thing. |
| 203:18 | Q.   And so is the answer that -- is the answer |
| 203:19 | "no," that setting aside whatever the experts may |
| 203:20 | conclude, the Commission doesn't know of any other |
| 203:21 | actions that need to be taken? |
| 203:22 | A.   No.  I gave my answer.  We've filed a |
| 203:23 | lawsuit, and we've hired the experts to try to |
| 203:24 | determine what all will fix this. |

| 134 | 204:14 -204:19 | Thompson, Beth 2020-07-28 | 00:00:17 | 01:43:52 | 00:41:40 | Thompson_B-07282 | MV181.134 |
|---|---|---|---|---|---|---|---|
| | 204:14 | Q.   Does the Commission have a top priority in |
| | 204:15 | mind, understanding that the full plan might not be |
| | 204:16 | in place yet, does the Commission have a top priority |
| | 204:17 | what it would do with the money you got in this case? |
| | 204:18 | A.   The Commission will just try to correct the |
| | 204:19 | wrongs that you've created in this county. |

| 135 | 264:17 -264:18 | Thompson, Beth 2020-07-28 | 00:00:12 | 01:44:09 | 00:41:23 | Thompson_B-07282 | MV181.135 |
|---|---|---|---|---|---|---|---|
| | | | | | | (Edited) |
| | 264:17 | I'm going to ask you to look at |
| | 264:18 | Exhibit 44. |

| 136 | 264:19 -265:6 | Thompson, Beth 2020-07-28 | 00:00:38 | 01:44:21 | 00:41:11 | Thompson_B-07282 | MV181.136 |
|---|---|---|---|---|---|---|---|
| | 264:19 | A.   Okay. |
| | 264:20 | Q.   Do you recognize the document that's here |
| | 264:21 | in Exhibit 44? |
| | 264:22 | A.   I see what it is.  JAG Grant 2019 through |
| | 264:23 | 2020. |
| | 264:24 | Q.   And are you familiar with the JAG Grant? |
| | 265:1 | A.   Yes.  Somewhat. |
| | 265:2 | Q.   What's the JAG Grant? |
| | 265:3 | A.   It's a grant that the sheriff's department |
| | 265:4 | applies for every year. |
| | 265:5 | Q.   What's the purpose of the grant? |
| | 265:6 | A.   I believe it's on the drug task force. |

| ■ | Defense Affirmatives | ■ | Plaintiff Completeness Counte | ■ | Defense Counter Counters | ■ | Plaintiff Counters |
|---|---|---|---|---|---|---|---|

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

| 137 | **266:15 -267:10** | Thompson, Beth 2020-07-28 | 00:00:45 | 01:44:59 | 00:40:33 | Thompson_B-07282 | MV181.137 |

| | | 266:15 | Q.   Is this the application for the JAG Grant |
| | | 266:16 | for fiscal year 2019? |
| | | 266:17 | A.   It is. |
| | | 266:18 | Q.   On the next page, 2901, you see the -- this |
| | | 266:19 | is a summary sheet of information about the grant. |
| | | 266:20 | At the very top this says:  "West Virginia Justice |
| | | 266:21 | Assistance Grant Program Application."  Do you see |
| | | 266:22 | that? |
| | | 266:23 | A.   Yes. |
| | | 266:24 | Q.   And under that is the applicant agency? |
| | | 267:1 | A.   Yes. |
| | | 267:2 | Q.   What's the applicant agency? |
| | | 267:3 | A.   Cabell County Commission. |
| | | 267:4 | Q.   And then under that is the project |
| | | 267:5 | director; is that right? |
| | | 267:6 | A.   Yes. |
| | | 267:7 | Q.   Who is that? |
| | | 267:8 | A.   The sheriff. |
| | | 267:9 | Q.   Sheriff of Cabell County? |
| | | 267:10 | A.   Yes. |

| 138 | **267:11 -268:6** | Thompson, Beth 2020-07-28 | 00:00:49 | 01:45:44 | 00:39:48 | Thompson_B-07282 | MV181.138 |

| | | 267:11 | Q.   If you look right about the middle of the |
| | | 267:12 | page, there's a line that says, "Number of years |
| | | 267:13 | previously funded."  Do you see that?  Little below |
| | | 267:14 | the middle. |
| | | 267:15 | A.   Yes. |
| | | 267:16 | Q.   And then next to that it says "Estimated |
| | | 267:17 | number to be served."  Do you see that? |
| | | 267:18 | A.   Yes. |
| | | 267:19 | Q.   What's the estimated number of people to be |
| | | 267:20 | served by this grant? |
| | | 267:21 | A.   It says 251,426. |
| | | 267:22 | Q.   And under that is a listing of the |
| | | 267:23 | geographic area to be served.  Do you see that? |
| | | 267:24 | A.   Yes. |
| | | 268:1 | Q.   What's that geographic area? |
| | | 268:2 | A.   Cabell, Lincoln, Mason, Putnam, Wayne. |
| | | 268:3 | Q.   And then under that, the total population |
| | | 268:4 | figure, which is the same 251,426, that you read |
| | | 268:5 | earlier; is that right? |

| ■ Defense Affirmatives | ■ Plaintiff Completeness Counte | ■ Defense Counter Counters | ■ Plaintiff Counters |

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | 268:6 | A.  Yes. | | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 139 | **268:21 -269:20** | Thompson, Beth 2020-07-28 | 00:00:41 | 01:46:33 | 00:38:59 | Thompson_B-07282 | MV181.139 |

268:21  Q.  Do you see there's a signature at the
268:22  bottom of this application cover page?
268:23  A.  Yes.
268:24  Q.  Whose signature is that?
269:1  A.  Commissioner Cartmill's.
269:2  Q.  Do you recognize that as Commissioner
269:3  Cartmill's signature?
269:4  A.  Yes.
269:5  Q.  Above the signature box, do you see the
269:6  certification?
269:7  A.  Yes.
269:8  Q.  It's in the small print there?
269:9  A.  Yes.
269:10  Q.  Says:  "Certification.  To the best of my
269:11  knowledge, the information contained in this
269:12  application is true and correct.  The submission
269:13  thereof has been duly authorized by the governing
269:14  body and the applicant will comply with the attached
269:15  special conditions and assurances, if funding is
269:16  provided."
269:17      Do you see that?
269:18  A.  Yes.
269:19  Q.  Did I read that correctly?
269:20  A.  You did.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 140 | **269:21 -270:11** | Thompson, Beth 2020-07-28 | 00:00:47 | 01:47:14 | 00:38:18 | Thompson_B-07282 | MV181.140 |

269:21  Q.  Let me ask you just generally:  What
269:22  exactly is the Cabell County Drug Task Force?
269:23  A.  I'm unsure.
269:24  Q.  There's also a reference here on the cover
270:1  page for the application to the crime reduction
270:2  program.  Do you see that?
270:3  A.  Yes.
270:4  Q.  What's the crime reduction program?
270:5  A.  I'm unsure.
270:6  Q.  Do you have any idea at all what the Cabell
270:7  County Drug Task Force is?
270:8  A.  I believe it's an organization within the
270:9  sheriff's department that is tasked with fighting the

■ Defense Affirmatives   ■ Plaintiff Completeness Counte   ■ Defense Counter Counters   ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | 270:10 | drug and the crime reduction -- or with the crime | | | | | |
| | | 270:11 | reduction program. | | | | | |

| 141 | **270:22 -272:20** | Thompson, Beth 2020-07-28 | 00:01:51 | 01:48:01 | 00:37:31 | Thompson_B-07282 | MV181.141 |
|---|---|---|---|---|---|---|---|

270:22   Q.  If you turn to just a few pages over, to

270:23   the page Bates numbered 2905.

270:24   A.  Okay.

271:1   Q.  And you see there is a page here that

271:2   says -- near the top -- well, it says at the top,

271:3   "West Virginia Justice Assistance Grant Program

271:4   Application, Project Narrative"?

271:5   A.  Yes.

271:6   Q.  And then it -- a little below that, says:

271:7   "Problem Statement."  Do you see that?

271:8   A.  Yes.

271:9   Q.  I'm going to walk through some of the

271:10   statements that are made in this "Problem Statement"

271:11   that the Countysubmitted to the State of West

271:12   Virginia.  It begins:

271:13        "For many years there has been a strong

271:14   market for illegal drugs in the tri-state area."

271:15        Do you see that?

271:16   A.  Yes.

271:17   Q.  Does the Commission agree with that

271:18   statement?

271:19   A.  Yes.

271:20   Q.  And it says "illegal drugs," plural; is

271:21   that right?

271:22   A.  Yes.

271:23   Q.  The Commission agrees that there has been a

271:24   strong market in the tri-state area for many

272:1   different kinds of illegal drugs; is that right?

272:2   A.  Yes.

272:3   Q.  The next sentence says:  "There are

272:4   numerous customers to whom drug dealers are able to

272:5   distribute a variety of illegal substances and

272:6   diverted pharmaceutical drugs."

272:7        Does the Commission agree with that

272:8   statement?

272:9   A.  Yes.

272:10   Q.  It goes on to say:  "The Huntington,

272:11   West Virginia, area is a well-known drug distribution

■ Defense Affirmatives     ■ Plaintiff Completeness Counte     ■ Defense Counter Counters     ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

272:12    hub for the region which has resulted in a
272:13    deterioration of the area with increased slum and
272:14    blighting conditions."  Do you see that?
272:15    A.  I do.
272:16    Q.  Does the Commission agree that
272:17    Huntington -- the Huntington area is a well-known
272:18    drug distribution hub for the region?
272:19    A.  The Commission would agree with everything
272:20    in here, yes.

| 142 | **274:23 -278:11** | Thompson, Beth 2020-07-28 | 00:04:01 | 01:49:52 | 00:35:40 | Thompson_B-07282 | MV181.142 |

274:23    Q.  But what I would also ask -- ask you to do,
274:24    on any of these statements -- and I can either ask it
275:1     for each one -- I'll just ask it for each one, as to
275:2     whether there's been a change in the Commission's
275:3     knowledge or its position regarding any of these
275:4     statements, okay?
275:5             So since this application was submitted in
275:6     2019 -- July of 2019, has the position of the
275:7     Commission changed with respect to any of the
275:8     statements that we've discussed so far?
275:9     A.  Not that I know of.
275:10    Q.  The next sentence says:  "Much of the," and
275:11    there's a couple of acronyms there, "CCDTF/CRP."  I
275:12    believe that means Cabell County Drug Task
275:13    Force/Crime Reduction Program.  Do you agree with
275:14    that?
275:15    A.  Yes.
275:16    Q.  "Much of the CCDTF/CRP's area of
275:17    responsibility has seen a significant increase in the
275:18    illegal use and distribution of heroin and fentanyl,
275:19    along with Mexican methamphetamine."
275:20            Does the Commission agree with that?
275:21    A.  Yes.
275:22    Q.  Any part of that the Commission disagrees
275:23    with?
275:24    A.  No.
276:1     Q.  And then it also says:  "Distribution of
276:2     cocaine, cocaine base, marijuana, and other illegal
276:3     narcotics seems consistent."
276:4             Does the Commission agree with that?
276:5     A.  Yes.

■ Defense Affirmatives     ■ Plaintiff Completeness Counte     ■ Defense Counter Counters     ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

276:6    Q.   Any part of that that the Commission

276:7     disagrees with?

276:8    A.   No.

276:9    Q.   Any change in the Commission's position on

276:10    those statements between the submission of this

276:11    application in July of 2019 and the present?

276:12   A.   Not that I'm aware of.

276:13   Q.   And then it goes on to say:  "Heroin,

276:14    fentanyl, and Mexican methamphetamine are the most

276:15    pressing drug problems in the CCDTF/CRP's area."

276:16        Does the Commission agree with that

276:17    statement?

276:18   A.   Yes.

276:19   Q.   And is it the position of the Commission

276:20    that this statement remains true?

276:21   A.   Yes.

276:22   Q.   It is accurate, then, is it not, to say

276:23    that there are many drugs that contribute to the

276:24    illegal drug problem in Cabell County?

277:1    A.   That's accurate.

277:2    Q.   If you look at the next paragraph,

277:3     Ms. Thompson, the last sentence says:  "In addition,

277:4     the reduction of heroin market has led to an influx

277:5     of Mexican methamphetamine."

277:6        Did I read that correctly?

277:7    A.   You did.

277:8    Q.   Does the Commission agree with that?

277:9    A.   Yes.

277:10   Q.   Does the Commission agree that Mexican

277:11    methamphetamine is a significant drug problem in

277:12    Cabell County?

277:13   A.   Yes.  You have to understand, this is a

277:14    grant prepared by the sheriff's office.  So, you

277:15    know, they have all the data and knowledge on this.

277:16    That the Commission wants them to be able to get

277:17    access to any grant monies available, so it's going

277:18    to agree with what they're saying, yes.

277:19   Q.   The Commission did sign this, correct?

277:20   A.   Yes.

277:21   Q.   And the Commission did certify that the

277:22    statements made in this document are true?

■ Defense Affirmatives     ■ Plaintiff Completeness Counte     ■ Defense Counter Counters     ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|

277:23   A.   Yes.  That's what I'm saying.

277:24   Q.   You're not -- you don't mean to suggest

278:1     that the Commission believes these statements are

278:2     untrue, do you?

278:3   A.   No.  No.

278:4   Q.   The -- Make sure I got an answer to that.

278:5         Just to make sure we're clear on the

278:6     record.  I appreciate --

278:7   A.   These statements are true, yes.

278:8   Q.   And in particular, the Commission agrees

278:9     that Mexican methamphetamine is a significant drug

278:10    problem in Cabell County; is that right?

278:11   A.   Yes.

---

| 143 | 278:12 -278:14 | Thompson, Beth 2020-07-28 | 00:00:11 | 01:53:53 | 00:31:39 | Thompson_B-07282 | MV181.143 |
|---|---|---|---|---|---|---|---|

278:12   Q.   How has the reduction of the heroin market

278:13    led to an influx of Mexican methamphetamine into

278:14    Cabell County?

---

| 144 | 278:16 -278:17 | Thompson, Beth 2020-07-28 | 00:00:03 | 01:54:04 | 00:31:28 | Thompson_B-07282 | MV181.144 |
|---|---|---|---|---|---|---|---|

278:16   A.   We don't know.  You would have to talk to

278:17    the sheriff's department.

---

| 145 | 279:11 -280:3 | Thompson, Beth 2020-07-28 | 00:00:34 | 01:54:07 | 00:31:25 | Thompson_B-07282 | MV181.145 |
|---|---|---|---|---|---|---|---|

279:11   Q.   The next sentence says:  "The financial

279:12    reward of distributing heroin or methamphetamine in

279:13    Huntington is extremely appealing to drug

279:14    traffickers, as these drugs may sell for up to five

279:15    times the value in Huntington as it does in a larger

279:16    city, such as Detroit, Michigan."

279:17         Did I read that correctly?

279:18   A.   You did.

279:19   Q.   Does the Commission agree with that

279:20    statement?

279:21   A.   Yes.

279:22   Q.   Is there any part of that that the

279:23    Commission disagrees with?

279:24   A.   No.

280:1   Q.   And is it the position of the Commission

280:2     that this statement remains true today?

280:3   A.   Yes.

---

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

| 146 | **281:24 -283:9** | Thompson, Beth 2020-07-28 | | 00:01:16 | 01:54:41 | 00:30:51 | Thompson_B-07282 | MV181.146 |

281:24   Q.   The next sentence says:  "Huntington also
282:1   offers traffickers less violence and less competition
282:2   than they experience in Detroit where street gangs
282:3   battle for territory and a greater share of the drug
282:4   market."
282:5          Does the Commission agree with that
282:6   statement?
282:7   A.   Yes.
282:8   Q.   Does it agree that that statement remains
282:9   true today?
282:10   A.   Yes.
282:11   Q.   The next sentence says:  "Exacerbating the
282:12   heroin epidemic is the presence of fentanyl and
282:13   carfentanil, powerful synthetic opioids that have
282:14   been associated with numerous overdoses in the
282:15   region.  Fentanyl is an opioid analgesic that is 500
282:16   to 100 times more powerful than morphine.
282:17   Carfentanil, an animal tranquilizer and analog of
282:18   fentanyl, is as many as 10,000 times more powerful
282:19   than morphine.  Exposure to a few grains of
282:20   carfentanil can cause a fatal overdose.  Many drug
282:21   traffickers are adding fentanyl and carfentanil to
282:22   heroin in order to produce a larger quantity of drugs
282:23   to sell."
282:24          Does the Commission agree with that
283:1   statement?
283:2   A.   Yes.
283:3   Q.   Does it agree that that statement remains
283:4   true today?
283:5   A.   Yes.
283:6   Q.   Does the Commission agree that fentanyl and
283:7   carfentanil are significant causes of the drug
283:8   problem in Cabell County?
283:9   A.   Yes.

| 147 | **283:10 -283:24** | Thompson, Beth 2020-07-28 | | 00:00:37 | 01:55:57 | 00:29:35 | Thompson_B-07282 | MV181.147 |

283:10   Q.   The county's application here -- or excuse
283:11   me, the Commission's application here goes on to say:
283:12          "Fentanyl is also being sold in the region
283:13   in pure form, with little or no presence of heroin.
283:14   Liquid fentanyl, intended for apparent medicinal

■ Defense Affirmatives        ■ Plaintiff Completeness Counter        ■ Defense Counter Counters        ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

| | | | | | | | |
|---|---|---|---|---|---|---|---|

283:15   purposes for use in hospitals, has been seized in
283:16   search locations.  Numerous recent drug overdoses in
283:17   the region have been due to the presence of fentanyl
283:18   and carfentanil and heroin."
283:19        Does the Commission agree with that
283:20   statement?
283:21   A.  Yes.
283:22   Q.  And does the Commission agree that that
283:23   statement is true today?
283:24   A.  Yes.

---

| 148 | **284:1 -284:20** | Thompson, Beth 2020-07-28 | 00:00:51 | 01:56:34 | 00:28:58 | Thompson_B-07282 | MV181.148 |
|---|---|---|---|---|---|---|---|

284:1   Q.  Let's go on to the next sentence --
284:2        Actually we'll go to the -- just ask the
284:3   question.  Does the Commission agree that
284:4   methamphetamine use is on the rise in Cabell County?
284:5   A.  I'm sorry.  Are you on another --
284:6   Q.  Yeah.  Does the Commission agree that
284:7   methamphetamine use is on the rise in Cabell County?
284:8   A.  Oh.  Yes.
284:9   Q.  And that remains true today?
284:10   A.  Yes.
284:11   Q.  And if you go on to the next paragraph,
284:12   says:  "Cocaine, cocaine base, commonly known as
284:13   crack, and marijuana continue to be widely
284:14   distributed in the region."
284:15        Do you see that?
284:16   A.  Yes.
284:17   Q.  Does the Commission agree with that
284:18   statement?
284:19   A.  Yes.
284:20   Q.  And does that statement remain true today?

---

| 149 | **284:22 -285:11** | Thompson, Beth 2020-07-28 | 00:00:38 | 01:57:25 | 00:28:07 | Thompson_B-07282 | MV181.149 |
|---|---|---|---|---|---|---|---|

284:22   A.  Yes.  I mean, I would assume.  I don't know
284:23   if it's changed or not.
284:24   Q.  Does the Commission have any reason to
285:1   believe that that statement is no longer true today?
285:2   A.  No.
285:3   Q.  If you continue on to the third sentence in
285:4   this paragraph, the Commission's application says:
285:5        "Detroit continues to be a major source and

■ Defense Affirmatives      ■ Plaintiff Completeness Counte      ■ Defense Counter Counters      ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

|  |  |  |  |  |  |  |  |
|--|--|--|--|--|--|--|--|

285:6      city of illegally-controlled substances for the area
285:7      covered by the CCDTF/CRP."  Do you see that?
285:8    A.   Yes.
285:9    Q.   Does the Commission agree with that
285:10   statement?
285:11   A.   Yes.

---

| 150 | 289:12 -289:21 | Thompson, Beth 2020-07-28 | 00:00:21 | 01:58:03 | 00:27:29 | Thompson_B-07282 | MV181.150 |

289:12   Q.   If you go on, the sentence following -- two
289:13   sentences down, it says:  "Many of the law
289:14   enforcement agencies in the CCDTF/CRP's area are
289:15   small, with few resources and limited manpower to
289:16   address the overwhelming illegal drug problem."
289:17          Do you see that?
289:18   A.   Yes.
289:19   Q.   Does the Commission agree with that
289:20   statement?
289:21   A.   Yes.

---

| 151 | 290:2 -290:13 | Thompson, Beth 2020-07-28 | 00:01:04 | 01:58:24 | 00:27:08 | Thompson_B-07282 | MV181.151 |

290:2    Q.   There's another piece of this,
290:3    Ms. Thompson, that I wanted to talk about.  I can't
290:4    seem to put my hands on it right now, so let me just
290:5    ask.  Is it the position of the commission that the
290:6    Distributor Defendants in this case are responsible
290:7    for the rise of methamphetamine in Cabell County?
290:8    A.   Indirectly.  I mean, the Commission
290:9    believes that -- it's their position that the
290:10   Defendants had a duty to report any kind of
290:11   suspicious orders that were coming to them from this
290:12   area, and if they had done that, then maybe we
290:13   wouldn't be in this mess.

---

| 152 | 290:14 -291:3 | Thompson, Beth 2020-07-28 | 00:00:34 | 01:59:28 | 00:26:04 | Thompson_B-07282 | MV181.152 |

290:14   Q.   Does the Commission believe that the
290:15   Distributor Defendants in this case distributed
290:16   methamphetamine?
290:17   A.   No.
290:18   Q.   Does the Commission believe that the
290:19   Distributor Defendants in this case are responsible
290:20   for the distribution of cocaine in Cabell County?
290:21   A.   No.

---

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|

290:22  Q.  What about crack cocaine?

290:23  A.  No.

290:24  Q.  But the Commission does believe that the

291:1    Distributor Defendants in this case are responsible

291:2    for the distribution of methamphetamine?

291:3  A.  No.

---

| 153 | **302:20 -305:16** | Thompson, Beth 2020-07-28 | 00:03:06 | 02:00:02 | 00:25:30 | Thompson_B-07282 | MV181.153 |
|---|---|---|---|---|---|---|---|

302:20  Q.  Let's talk a little bit more about

302:21  something we discussed earlier, which is Cabell

302:22  County's position in the larger region.

302:23      Is it correct to say that Cabell County is

302:24  a commercial hub for the surrounding region?

303:1  A.  I would think so.

303:2  Q.  Do people come from other counties to shop

303:3  in Cabell County?

303:4  A.  Yes.

303:5  Q.  Do people come to Cabell County in

303:6  particular for medical treatment?

303:7  A.  Yes.

303:8  Q.  And I can pull out the exhibit -- or I'll

303:9  just represent to you that on the County Commission's

303:10  website it says that Cabell County is home to two

303:11  regional hospitals.  Do you agree with that

303:12  statement?

303:13  A.  Yes.

303:14  Q.  Those would be Cabell Huntington and

303:15  St. Mary's?

303:16  A.  Yes.

303:17  Q.  And on that -- on the website where the

303:18  Commission says that Cabell County is home to two

303:19  regional hospitals, it means, I take it, that those

303:20  hospitals serve patients from not only Cabell County,

303:21  but also the surrounding counties; is that right?

303:22  A.  Yes.

303:23  Q.  Are prescription opioids dispensed at those

303:24  hospitals?

304:1  A.  Yes.

304:2  Q.  Has that been the case since at least 2006?

304:3  A.  I would assume so, yes.

304:4  Q.  And some of those prescription opioids are

304:5  dispensed to people who don't reside in Cabell

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

304:6    County; is that correct?
304:7    A.  Yes.
304:8    Q.  Has the Commission ever attempted to
304:9    determine what portion of the prescription opioids
304:10   dispensed at Cabell County hospitals are to people
304:11   who don't reside in Cabell County?
304:12   A.  No.
304:13   Q.  Is the Commission aware of anybody that has
304:14   ever attempted to determine that?
304:15   A.  We're unaware.
304:16   Q.  So we've talked about hospitals.  Let's
304:17   touch on doctors for just a minute.  Do people come
304:18   from the surrounding counties to go to the doctor in
304:19   Cabell County?
304:20   A.  Yes.
304:21   Q.  And are there people from outside Cabell
304:22   County who come to work in Cabell County?
304:23   A.  Yes.
304:24   Q.  Is that a relatively large number of
305:1    people?
305:2    A.  I'm unsure.
305:3    Q.  Are there people -- and again, setting
305:4    aside the hospitals, are there people who don't
305:5    reside in Cabell County, but fill prescriptions here
305:6    because they come here for work, or to shop, that
305:7    sort of thing?
305:8    A.  We would think so.  Yes.
305:9    Q.  Has the Commission ever tried to determine
305:10   what portion of the opioid prescriptions that are
305:11   filled at Cabell County pharmacies were for people
305:12   who don't reside in Cabell County?
305:13   A.  No.
305:14   Q.  Does the Commission know of anybody else
305:15   who has ever attempted to determine that?
305:16   A.  It's unaware of anybody.

| 154 | **307:13 -307:19** | Thompson, Beth 2020-07-28 | | 00:00:19 | 02:03:08 | 00:22:24 | Thompson_B-07282 | MV181.154 |

307:13   Q.  Has the county's jail bill decreased in
307:14   recent years?
307:15   A.  Yes, it has.
307:16   Q.  Why is that?
307:17   A.  The biggest change is the home confinement

■ Defense Affirmatives     ■ Plaintiff Completeness Counte     ■ Defense Counter Counters     ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

|  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|
| | | 307:18 | sentencing that the judges have -- and magistrates | | | | |
| | | 307:19 | have done. | | | | |

| 155 | 309:2 -310:8 | Thompson, Beth 2020-07-28 | | 00:01:35 | 02:03:27 | 00:22:05 | Thompson_B-07282 | MV181.155 |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | (Edited) | |

309:2    Q.   What has the
309:3      county done with the money that was freed up as a
309:4      result of that change?
309:5    A.   The county has created a rainy day fund,
309:6      first ever in its existence.
309:7    Q.   How much money is in the rainy day fund?
309:8    A.   500,000.
309:9    Q.   And that's a direct result of the savings
309:10     from the increased use of home confinement?
309:11   A.   We believe it's a direct result of that,
309:12     combined with the insurance change.
309:13   Q.   And when you say the insurance change, I
309:14     think I know what you're talking about, but could you
309:15     tell me what you mean?
309:16   A.   From going from self-insured to fully
309:17     insured.
309:18   Q.   Sorry.  I didn't mean to cut you off.
309:19   A.   Yes, going self-insured to fully insured.
309:20   Q.   How much has that saved the county?
309:21   A.   About 3 million a year.
309:22   Q.   So overall, the county has -- between the
309:23     savings in the jail bill and the savings on health
309:24     insurance premiums, the county has managed to
310:1      decrease its expenses more than $4 million a year; is
310:2      that right?
310:3    A.   Yes.
310:4    Q.   And when did that savings start to occur?
310:5    A.   It would have been within the last year.  I
310:6      think -- well, I know the insurance change was
310:7      August 1, 2019.  The home confinement, I believe it's
310:8      been within the last year as well.

| 156 | 311:4 -311:21 | Thompson, Beth 2020-07-28 | | 00:00:50 | 02:05:02 | 00:20:30 | Thompson_B-07282 | MV181.156 |
|---|---|---|---|---|---|---|---|---|

311:4    Q.   Are there possible uses of that money that
311:5      the Commission is considering?
311:6    A.   Well, part of it actually was to put the
311:7      budgets back that were cut several years ago for the
311:8      constitutional officeholders.  So some of it has been

■ Defense Affirmatives     ■ Plaintiff Completeness Counte     ■ Defense Counter Counters     ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | 311:9 | used, yes, I'm sorry. | | | | |
| | | 311:10 | Q.  So that change has already been made -- | | | | |
| | | 311:11 | A.  Yes. | | | | |
| | | 311:12 | Q.  -- in other words, the funding that was cut | | | | |
| | | 311:13 | in -- was that around 2015, 2016? | | | | |
| | | 311:14 | A.  I believe so, '16, I think it was. | | | | |
| | | 311:15 | Q.  So the funding that was cut around 2016 for | | | | |
| | | 311:16 | the various county constitutional offices has now | | | | |
| | | 311:17 | been restored; is that right? | | | | |
| | | 311:18 | A.  Yes.  It was, I believe, September of '19 | | | | |
| | | 311:19 | it was restored. | | | | |
| | | 311:20 | Q.  And how much money did it take to do that? | | | | |
| | | 311:21 | A.  It was close to $2 million. | | | | |

| 157 | **312:8 -312:16** | Thompson, Beth 2020-07-28 | 00:00:24 | 02:05:52 | 00:19:40 | Thompson_B-07282 | MV181.157 |
|---|---|---|---|---|---|---|---|

312:8    Q.  Has the Commission allocated any of the
312:9     savings from the fall in the jail bill and the fall
312:10   in the health insurance premiums to help abate the
312:11   opioid problem that exists in Cabell County?
312:12   A.  None yet.
312:13   Q.   Does the Commission intend to use any of
312:14    those savings to help abate the opioid problem in
312:15    Cabell County?
312:16   A.  It hasn't been discussed.

| 158 | **313:9 -313:24** | Thompson, Beth 2020-07-28 | 00:00:34 | 02:06:16 | 00:19:16 | Thompson_B-07282 | MV181.158 |
|---|---|---|---|---|---|---|---|

313:9    Q.  All right.  We were on Topic 13, which has
313:10   to do with actors and acts that have caused any harm
313:11   that the Commission has suffered from prescription
313:12   opioids or illicit opioids.
313:13          We had just talked about the Joint
313:14   Commission on the Accreditation of Healthcare
313:15   Organizations.
313:16   A.  Yes.
313:17   Q.  And I believe you testified that you
313:18   were -- the Commission was aware of the Joint
313:19   Commission; is that right?
313:20   A.  Yes.
313:21   Q.  And that it doesn't know whether the Joint
313:22   Commission is a cause of the harms that the County
313:23   has suffered; is that right?
313:24   A.  Correct.

■ Defense Affirmatives     ■ Plaintiff Completeness Counter     ■ Defense Counter Counters     ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 159 | **314:4 -315:4** | Thompson, Beth 2020-07-28 | 00:00:54 | 02:06:50 | 00:18:42 | Thompson_B-07282 | MV181.159 |

314:4    Q.   Is the Commission familiar with the
314:5    American Medical Association?
314:6    A.   Yes.
314:7    Q.   Is the Commission aware that the American
314:8    Medical Association issues guidance to physicians in
314:9    America about topics, including the prescribing of
314:10    opioids?
314:11    A.   Yes.
314:12    Q.   Does the Commission believe that the
314:13    American Medical Association is among the causes of
314:14    the opioid problem that exists here?
314:15    A.   Yes.
314:16    Q.   Is the Commission familiar with the
314:17    American Osteopathic Association?
314:18    A.   Yes.
314:19    Q.   And is the Commission aware that the
314:20    American Osteopathic Association is a counterpart
314:21    organization to the American Medical Association, but
314:22    specifically for osteopathic physicians?
314:23    A.   Yes.
314:24    Q.   Does the Commission agree that the American
315:1    Osteopathic Association also bears some
315:2    responsibility for the opioid problem that exists
315:3    here?
315:4    A.   Yes.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 160 | **315:23 -317:23** | Thompson, Beth 2020-07-28 | 00:01:59 | 02:07:44 | 00:17:48 | Thompson_B-07282 | MV181.160 |

315:23    Q.   And does the Commission know that the
315:24    West Virginia Board of Medicine is responsible for
316:1    overseeing and licensing medical doctors who practice
316:2    in West Virginia?
316:3    A.   Yes.
316:4    Q.   Does the Commission understand that part of
316:5    that oversight role includes the oversight of or
316:6    monitoring of physicians for inappropriate
316:7    prescribing?
316:8    A.   Yes.
316:9    Q.   Does the Commission believe that the
316:10    West Virginia Board of Medicine also shares part of
316:11    the responsibility for the opioid problem here?

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

316:12  A.  Yes.

316:13  Q.  And is the Commission aware that there's a

316:14    counterpart or similar board called the West Virginia

316:15    Board of Osteopathic Medicine that regulates

316:16    osteopathic physicians?

316:17  A.  Yes.

316:18  Q.  Does the Commission believe that the Board

316:19    of Osteopathic Medicine also shares part of the

316:20    responsibility for the opioid problem that exists

316:21    here?

316:22  A.  Yes.

316:23  Q.  And we have talked some today and we also

316:24    talked on Thursday about drug distribution by

317:1    street-level drug dealers; is that right?

317:2  A.  Yes.

317:3  Q.  Does the Commission agree that street-level

317:4    drug dealers also share a part of the responsibility

317:5    for the opioid problem that exists in Cabell County?

317:6  A.  Yes.

317:7  Q.  What about foreign drug cartels?

317:8  A.  Yes.

317:9  Q.  Topic 14 concerns:  "The investigation of

317:10    doctors, pharmacists, pharmacies, clinics, pill

317:11    mills, or hospitals in Cabell County for diversion of

317:12    prescription opioids or improper prescribing of

317:13    opioids."

317:14        We've talked about doctors, pharmacists and

317:15    pharmacies already.  And I believe that you testified

317:16    that the Commission is aware of Dr. Anita Dawson as a

317:17    physician who inappropriately prescribed opioids in

317:18    Cabell County; is that right?

317:19  A.  Yes.

317:20  Q.  And I think there weren't any other

317:21    specific physicians of whom the County was aware who

317:22    prescribed opioids inappropriately?

317:23  A.  Correct.

| 161 | **319:18 -319:21** | Thompson, Beth 2020-07-28 | | 00:00:11 | 02:09:43 | 00:15:49 | Thompson_B-07282 | MV181.161 |

319:18  Q.  Is the Commission aware of any

319:19    investigation of hospitals in Cabell County for the

319:20    diversion or improper prescribing of opioids?

319:21  A.  No.

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

---

| 162 | **322:3 -322:8** | Thompson, Beth 2020-07-28 | 00:00:17 | 02:09:54 | 00:15:38 | Thompson_B-07282 | MV181.162 |
|---|---|---|---|---|---|---|---|

322:3    Q.  Meaning that the Commission believes that
322:4    people have been prosecuted for the diversion and
322:5    illegal sale of prescription opioids, but the
322:6    Commission is not, as you sit here right now, aware
322:7    of specific examples of that?
322:8    A.  Correct.

---

| 163 | **336:10 -336:20** | Thompson, Beth 2020-07-28 | 00:00:28 | 02:10:11 | 00:15:21 | Thompson_B-07282 | MV181.163 |
|---|---|---|---|---|---|---|---|

336:10    Q.  I think you mentioned, as an example of an
336:11    expenditure that is partly -- in some part related to
336:12    the opioid problem, the county's expenditure on law
336:13    enforcement; is that right?
336:14    A.  Yes.
336:15    Q.  Are there other expenditures that the
336:16    County makes that are -- even if they're not
336:17    earmarked for the opioid problem, are in some part
336:18    related to the opioid problem?
336:19    A.  You would think the prosecutor's budget,
336:20    jail bill, certainly other expenditures.

---

| 164 | **336:21 -336:24** | Thompson, Beth 2020-07-28 | 00:00:09 | 02:10:39 | 00:14:53 | Thompson_B-07282 | MV181.164 |
|---|---|---|---|---|---|---|---|

336:21    Q.  And am I correct that the County has not
336:22    tried to quantify how much of any of those
336:23    expenditures is related to the opioid problem?
336:24    A.  Correct.

---

| 165 | **337:12 -337:20** | Thompson, Beth 2020-07-28 | 00:00:22 | 02:10:48 | 00:14:44 | Thompson_B-07282 | MV181.165 |
|---|---|---|---|---|---|---|---|

337:12    Q.  Does the Commission know of any
337:13    communications between the Commission and any member
337:14    of the Cabell County community regarding opioid
337:15    abuse?
337:16    A.  No.
337:17    Q.  And I believe you said that it's opioid --
337:18    the opioid problem has never been discussed in a
337:19    county commission meeting in open session?
337:20    A.  Correct.

---

| 166 | **346:8 -348:3** | Thompson, Beth 2020-07-28 | 00:02:15 | 02:11:10 | 00:14:22 | Thompson_B-07282 | MV181.166 |
|---|---|---|---|---|---|---|---|

346:8    Q.  Topic No. 26:  "Consideration by Plaintiff
346:9    of limiting the prescribing, distribution, or

---

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

346:10    dispensing of prescription opioids."

346:11            What did you do to educate yourself to

346:12    testify about Topic 26?

346:13    A.   Read through the discovery responses.

346:14    Q.   Has the Commission ever considered limiting

346:15    the prescribing of prescription opioids?

346:16    A.   No.

346:17    Q.   Has it ever considered limiting the

346:18    distribution of prescription opioids?

346:19    A.   No.

346:20    Q.   Has it ever considered limiting the

346:21    dispensing of prescription opioids?

346:22    A.   No.

346:23    Q.   Topic 27:  "The coverage of or

346:24    reimbursement of prescription opioids on Plaintiff's

347:1    behalf, including on behalf of Plaintiff's employees,

347:2    their dependents, incarcerated persons, or pension

347:3    beneficiaries and/or through an insurance program or

347:4    pharmacy benefit program."

347:5            What did you do to educate yourself to

347:6    testify about Topic No. 27?

347:7    A.   Nothing other than reading through the

347:8    discovery responses.

347:9    Q.   Am I correct that the County's health

347:10    insurance program does cover prescription opioids for

347:11    employees?

347:12    A.   Yes.

347:13    Q.   And also for their dependents?

347:14    A.   Yes.

347:15    Q.   Does the -- strike that.  I believe you

347:16    testified on Thursday that the County has never

347:17    discussed with its health insurer the possibility of

347:18    limiting payment for opioid prescriptions?

347:19    A.   No.

347:20    Q.   And when the County was self-insured, it

347:21    never considered doing that on its own?

347:22    A.   No.

347:23    Q.   And the County has never considered taking

347:24    steps through its health insurance to encourage

348:1    alternatives to prescription opioids, like physical

348:2    therapy, for example; is that right?

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | 348:3 | A. Correct. | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 167 | 350:17 - 351:18 | Thompson, Beth 2020-07-28 | | 00:01:03 | 02:13:25 | 00:12:07 | Thompson_B-07282 | MV181.167 |

350:17   Q.   Topic 30 is your organizational structure.

350:18   So this -- Let's talk about this for a few minutes.

350:19         So the County Commission of Cabell County

350:20   is an elected body of three members that serves as

350:21   the County's fiscal agent and carries out certain

350:22   other functions; is that right?

350:23   A.   Yes.

350:24   Q.   What agencies are directly under the County

351:1   Commission?

351:2   A.   It would be 911 and EMS.

351:3   Q.   Any others?

351:4   A.   No.

351:5   Q.   Okay.  How many employees does the County

351:6   Commission have roughly?

351:7   A.   About 320.

351:8   Q.   320?

351:9   A.   Yes.

351:10   Q.   Not including the other constitutional

351:11   officers?

351:12   A.   No, that is including.

351:13   Q.   Okay.

351:14   A.   They're considered co-employers.

351:15   Q.   Everybody who works for the other

351:16   constitutional officers, the County Commission

351:17   considers its employee; is that right?

351:18   A.   Yes.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 168 | 352:16 - 353:16 | Thompson, Beth 2020-07-28 | | 00:01:39 | 02:14:28 | 00:11:04 | Thompson_B-07282 | MV181.168 |

352:16   Q.   And so other than the county

352:17   administrator's office, the 911 service, and EMS, are

352:18   there any other functional units that are directly

352:19   below the County Commission?

352:20   A.   No.

352:21   Q.   How many employees does EMS have?

352:22   A.   About 150.

352:23   Q.   And 911, I guess, is organizationally

352:24   different from EMS?

353:1   A.   Yes.

353:2   Q.   How many employees does 911 have?

■ Defense Affirmatives     ■ Plaintiff Completeness Counte     ■ Defense Counter Counters     ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

353:3    A.   Thirty-four?  Thirty-six?

353:4    Q.   Okay.  Do you know roughly what the

353:5    employee counts are in the other county

353:6    constitutional offices?

353:7    A.   Let's see.  Sheriff's department would be,

353:8    I think, 44 deputies and about 30 in the tax office

353:9    and in the administrative.

353:10        The circuit clerk's office, I think 24.

353:11   About the same in the county clerk's office.

353:12        Assessor's office about 20; prosecutor's

353:13   office about 20.

353:14   Q.   Okay.  And all of those people are, from a

353:15   legal standpoint, employed by the County Commission?

353:16   A.   Yes.

| 169 | 366:8 - 368:22 | Thompson, Beth 2020-07-28 | 00:03:28 | 02:16:07 | 00:09:25 | Thompson_B-07282 | MV181.169 |

366:8    Q.   Is the Commission familiar with the Quick

366:9    Response Team?

366:10   A.   Yes.

366:11   Q.   What is the Quick Response Team?

366:12   A.   It's a team that's headed up by Connie

366:13   Priddy at EMS, and they provide immediate support to

366:14   overdose victims and -- as far as, you know,

366:15   treatment, addiction treatment, and things of that

366:16   nature, counseling.  I think even pastoral services.

366:17   Q.   Does the Commission help provide funding

366:18   for that program?

366:19   A.   Not directly.

366:20   Q.   Does it provide funding indirectly?

366:21   A.   I'm unsure how it's funded.

366:22   Q.   Is it funded through EMS?

366:23   A.   I'm unsure how it's funded.  If it is

366:24   funded through EMS, then it would be an indirect.

367:1    Q.   Does the Commission believe that the Quick

367:2    Response Team program is effective?

367:3    A.   Yes.

367:4    Q.   Has the Commission ever taken steps to

367:5    measure the effectiveness of the Quick Response Team

367:6    program?

367:7    A.   No.

367:8    Q.   What's the basis then for the Commission's

367:9    belief that the QRT program is effective?

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

367:10    A.  The EMS director and Connie Priddy both
367:11    have spoke about it from time to time.
367:12    Q.  And what have Mr. Merry and Ms. Priddy told
367:13    the Commission about the effectiveness of the QRT
367:14    program?
367:15    A.  Just that they're getting a lot of good
367:16    response.  It does seem to be helping.
367:17    Q.  Helping who?
367:18    A.  The victims.
367:19    Q.  And when you say "it's helping," do you
367:20    mean that the QRT program helps people with
367:21    addiction, helps them overcome their addiction, or
367:22    manage their addiction problem?
367:23    A.  Gets the services to them quicker.
367:24    Q.  And when you say "the services," that
368:1    includes addiction treatment services?
368:2    A.  I believe so, yes.
368:3    Q.  Does the County have sufficient capacity in
368:4    addiction treatment services?
368:5    A.  Sufficient capacity?
368:6    Q.  Enough capacity in the addiction treatment
368:7    programs that exist here to meet the demand?
368:8    A.  We're unsure.
368:9    Q.  Has the Commission taken any steps to
368:10    determine whether the addiction treatment capacity
368:11    that exists in Cabell County is sufficient?
368:12    A.  No.
368:13    Q.  The Harm Reduction Program we talked about
368:14    on Thursday.  That's the needle exchange program; is
368:15    that right?
368:16    A.  Yes.
368:17    Q.  And the Commission is familiar with that
368:18    program, I take it?
368:19    A.  Yes.
368:20    Q.  Does the Commission believe that that
368:21    program is effective?
368:22    A.  Yes.

| 170 | **371:12 -372:12** | Thompson, Beth 2020-07-28 | 00:00:50 | 02:19:35 | 00:05:57 | Thompson_B-07282 | MV181.170 |

371:12    Q.  And WEAR, on the same line as the Drug
371:13    Court, does the Commission know what WEAR is?
371:14    A.  No, I don't remember.

■ Defense Affirmatives     ■ Plaintiff Completeness Counte     ■ Defense Counter Counters     ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

371:15   Q.   PEP or CCSAPP.  Does the Commission know
371:16    what that program is?
371:17   A.   No.
371:18   Q.   LEAD.  Does the Commission -- L-E-A-D, all
371:19    caps -- does the Commission know what that program
371:20    is?
371:21   A.   No.
371:22   Q.   Project Hope for Women and Children.  Does
371:23    the Commission know what that program is?
371:24   A.   No.
372:1    Q.   PROACT.  Does the Commission know what
372:2     PROACT is?
372:3    A.   No.
372:4    Q.   Healthy Connections.  Does the Commission
372:5     know what Healthy Connections is?
372:6    A.   No.
372:7    Q.   Peer Recovery.  Does the Commission know
372:8     what that is?
372:9    A.   No.
372:10   Q.   And CORE.  Does the Commission know what
372:11    CORE is?
372:12   A.   No.

---

| 171 | **393:23 - 394:9** | Thompson, Beth 2020-07-28 | | 00:00:32 | 02:20:25 | 00:05:07 | Thompson_B-07282 | MV181.171 |

393:23   Q.   Are you familiar with this document?
393:24   A.   Yes.
394:1    Q.   What is this?
394:2    A.   It is an email from Commissioner Sobonya,
394:3     dated July 3rd, 2019, to myself and to Marie in my
394:4     office.  The subject is Cabell County -- or County
394:5     Commission Language.  And the attachment talks about
394:6     the PEP program.
394:7    Q.   And is this language for a proposed County
394:8     Commission resolution?
394:9    A.   Yes.

---

| 172 | **394:10 - 395:3** | Thompson, Beth 2020-07-28 | | 00:00:47 | 02:20:57 | 00:04:35 | Thompson_B-07282 | MV181.172 |

394:10   Q.   Does this refresh your recollection as to
394:11    what the PEP program is?
394:12   A.   Yes.
394:13   Q.   And now that you've seen this document, can
394:14    you tell me what that program is?

---

■ Defense Affirmatives    ■ Plaintiff Completeness Counte    ■ Defense Counter Counters    ■ Plaintiff Counters

Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23

394:15    A.   Yes.  I believe it was the -- Angie
394:16    Saunders, we had talked about earlier, had spoke to
394:17    the Commission about it, and it's a program that the
394:18    United Way does.  I think it had to do with backpacks
394:19    and -- let's see --
394:20         "Collaborative committee of community-based
394:21    organizations partnering together to address the drug
394:22    crisis in the community.
394:23         "Through its partnerships, subcommittees
394:24    and workgroups will provide technical assistance,
395:1    capacity building, community outreach, and education
395:2    and training for high-risk populations that need
395:3    higher levels of prevention;

| 173 | 395:9 -396:4 | Thompson, Beth 2020-07-28 | | 00:00:43 | 02:21:44 | 00:03:48 | Thompson_B-07282 | MV181.173 |
|---|---|---|---|---|---|---|---|---|

395:9         THE DEPONENT:  "PEP has set as its
395:10    goal to increase access to prevention services for --
395:11    youth and families in five counties served by United
395:12    Way; and
395:13         "PEP will empower youth not only to
395:14    deal with drug crisis, but to effect positive change
395:15    in their neighborhoods; and
395:16         "We commend the PEP committee members
395:17    for their efforts in our community.
395:18         "Now, therefore, we, the Cabell County
395:19    Commission of Cabell County, West Virginia, recognize
395:20    that the Prevention Empowerment Partnership is the
395:21    preeminent drug prevention coalition for the City of
395:22    Huntington, West Virginia, and underscore the
395:23    importance of working together to prevent substance
395:24    misuse in our area."
396:1    BY MR. RUBY:
396:2    Q.   Did the Commission adopt a resolution
396:3    regarding the PEP?
396:4    A.  I believe it did, yes.

| 174 | 401:18 -402:6 | Thompson, Beth 2020-07-28 | | 00:01:18 | 02:22:27 | 00:03:05 | Thompson_B-07282 | MV181.174 |
|---|---|---|---|---|---|---|---|---|

401:18    Q.   Let's turn to Exhibit 32.
401:19    A.   Okay.
401:20    Q.   Are you familiar with this document?
401:21    A.   Yes.
401:22    Q.   What is this document?

■ Defense Affirmatives    ■ Plaintiff Completeness Counter    ■ Defense Counter Counters    ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

401:23   A.   This is the request to the Cabell County
401:24    Commission for fiscal years 2018-2019 for CCEEMS'
402:1    Budget Fund 27.
402:2   Q.   CCEEMS is Cabell County Emergency Management
402:3    Services?
402:4   A.   Emergency Medical Services.
402:5   Q.   Emergency Medical Services?
402:6   A.   Yes.

| 175 | 404:1 -404:18 | Thompson, Beth 2020-07-28 | 00:00:48 | 02:23:45 | 00:01:47 | Thompson_B-07282 | MV181.175 |

404:1   Q.   If you see the line there at the bottom of
404:2    this table called "Carryover 2017/2018" -- do you see
404:3    that?
404:4   A.   Yes.
404:5   Q.   And that shows $2.5 million; am I correct?
404:6   A.   Correct.
404:7   Q.   What is the carryover from 2017 and 2018?
404:8    What are those funds?
404:9   A.   What are they?
404:10   Q.   Uh-huh.  What are those funds?
404:11   A.   It's the amount that wasn't spent during
404:12    the year.
404:13   Q.   Is it typical for the Cabell County EMS to
404:14    have a significant carryover from year to year?
404:15   A.   Yes.
404:16   Q.   Is two and a half million a typical amount
404:17    for that carryover?
404:18   A.   Yes.

| 176 | 405:2 -405:21 | Thompson, Beth 2020-07-28 | 00:00:55 | 02:24:33 | 00:00:59 | Thompson_B-07282 | MV181.176 |

405:2   Q.   Who controls the allocation of the amount
405:3    that EMS carries over from year to year?
405:4   A.   It would be -- it's submitted through the
405:5    budget and the Commission approves it.
405:6   Q.   And so ultimately the Commission decides
405:7    what is done with that money?
405:8   A.   Ultimately.
405:9   Q.   Has the Commission ever allocated any of
405:10    the EMS carryover funding to abate the opioid problem
405:11    in Cabell County?
405:12   A.   Not specifically.
405:13   Q.   Why not?

■ Defense Affirmatives      ■ Plaintiff Completeness Counter      ■ Defense Counter Counters      ■ Plaintiff Counters

**Thompson B 20200723 & 28 DA PC (& Completeness) DCC COMBINED 7-23**

405:14    A.   I don't know.
405:15    Q.   Has the Commission ever considered
405:16    allocating any of the two and a half million dollars,
405:17    or different amounts in other years, of EMS carryover
405:18    to abate the opioid problem in Cabell County?
405:19    A.   Not that I'm aware of.
405:20    Q.   Why not?
405:21    A.   I don't have an answer.

Play Time for this Script:    **02:25:32**

**Total time for all Scripts in this report:**    **02:25:32**

<table>
<tr><td>■ Defense Affirmatives</td><td>■ Plaintiff Completeness Counte</td><td>■ Defense Counter Counters</td><td>■ Plaintiff Counters</td></tr>
</table>