D.2

| City of Huntington v. AmerisouceBergen Drug Corp. et al, 17cv01362 | | | |
|---|---|---|---|
| Witness Name: | June Howard (DEA- 30(b)(6)) | | |
| Deposition Date: | 4/25/2019 | | |
| Defendants' Affirmative Designations (w/ Plaintiffs' Objections and Defendants' Replies) | | | |
| **Designations** | | **Objections** | **Reponses** |
| 12:16 - 12:20 | | | |
| 12:16 | Q. My name is Chris Eppich. I represent | | |
| 12:17 | McKesson in this litigation. | | |
| 12:18 | Would you please state your full name | | |
| 12:19 | for the record. | | |
| 12:20 | A. June Howard. | | |
| 13:23 - 14:06 | | | |
| 13:23 | Q. You understand that you're providing | | |
| 13:24 | testimony on behalf of DEA today? | | |
| 13:25 | A. Yes. | | |
| 14:01 | MR. EPPICH: I'd like to mark as | | |
| 14:02 | Exhibit 1 the amended notice of the deposition | | |
| 14:03 | of Ms. Howard. | | |
| 14:04 | (Howard Deposition Exhibit 1 marked for | | |
| 14:05 | identification and attached to the | | |
| 14:06 | transcript.) | | |
| 14:25 - 15:03 | | | |
| 14:25 | Q. Do you understand it to be the letter | | |
| 15:01 | authorizing your testimony on certain subjects | | |
| 15:02 | on behalf of DEA? | | |
| 15:03 | A. Yes. | | |
| 15:11 - 15:19 | | | |
| 15:11 | Q. If you could turn to page 6 and | | |
| 15:12 | topic 11. Topic 11 states, "Your practice of | | |
| 15:13 | notifying DEA-registered distributors when | | |
| 15:14 | another distributor terminated its relationship | | |
| 15:15 | with a customer due to the risk of diversion, | | |
| 15:16 | including when and why you disseminated [sic] | | |
| 15:17 | such practice." | | |
| 15:18 | Are you authorized by the DEA to testify | | |
| 15:19 | on this topic today? | | |
| 15:23 - 15:23 | | | |
| 15:23 | THE WITNESS: Yes. | | |
| 15:25 - 16:02 | | | |
| 15:25 | Q. And you're prepared to testify on this | | |
| 16:01 | topic here today? | | |
| 16:02 | A. Yes. | | |
| 17:24 - 18:08 | | | |
| 17:24 | Q. Now, you're currently the chief of the | | |
| 17:25 | reports analyst group unit -- or excuse me, | | |
| 18:01 | chief of the reports analyst unit; is that | | |
| 18:02 | correct? | | |
| 18:03 | A. Reports analysis unit. | | |
| 18:04 | Q. Thank you. | | |
| 18:05 | And is that -- is that a new -- is that | | |
| 18:06 | the same as the chief of the targeting and | | |
| 18:07 | analysis unit? | | |
| 18:08 | A. Yes. | | |

1

| Designations | Objections | Reponses |
|---|---|---|
| 19:10 - 19:13<br>19:10  Q. You were the chief of the targeting and<br>19:11  analysis unit from 1996 to 2010; is that<br>19:12  correct?<br>19:13  A. Correct. | | |
| 22:02 - 22:04<br>22:02  Q. Did you join the targeting and analysis<br>22:03  unit as the chief of that unit in 1996?<br>22:04  A. Yes. | | |
| 28:17 - 29:01<br>28:17  Q. Following the first of the distributor<br>28:18  briefings in 2005, DEA established an e-mail<br>28:19  group to announce actions taken by distributors<br>28:20  to either discontinue or limit supply to<br>28:21  customers.<br>28:22  A. Yes.<br>28:23  Q. And these termination notices identified<br>28:24  customers distributors had discontinued or<br>28:25  restricted business with, correct?<br>29:01  A. Correct. | Re: [28:17 to 29:01]<br>Compound; Foundation;<br>Assumes Facts | Re: [28:17 to 29:01]<br>The question is not compound. Ms. Howard was DEA's 30(b)(6) witness on the "practice of notifying DEA-registered distributors when another distributor terminated its relationship with a customer" (see 15:11-19) and had an appropriate foundation of knowledge to answer this question. The question does not assume facts; it asks Ms. Howard to confirm whether certain facts are accurate, which she did. |
| 29:19 - 30:01<br>29:19  Q. Did the DEA want distributors to make<br>29:20  informed decisions about the customers that they<br>29:21  signed up to distribute to?<br>29:22  A. Yes.<br>29:23  Q. DEA understood that distributors trying<br>29:24  to identify potential diversion would benefit<br>29:25  from access to more information than just their<br>30:01  own sales data and customer observations, right? | Re: [29:19 to 30:01]<br>Speculation (29:23-30:1); Foundation (29:23-30:1); Scope (29:23-30:1) | Re: [29:19 to 30:01]<br>The question does not call for speculation as it asks a DEA 30(b)(6) witness for the DEA's understanding. The question falls within the scope of the 30(b)(6) topic on which Ms. Howard was identified (see 15:11-19), such that she had an adequate foundation to respond. |
| 30:06 - 30:06<br>30:06  THE WITNESS: Yes. | Re: [30:06 to 30:06]<br>Speculation; Foundation; Scope (witness not designated for this topic) | Re: [30:06 to 30:06]<br>Please see prior response. |

| Designations | Objections | Reponses |
|---|---|---|
| 30:08 - 30:11<br>30:08  Q. And if the distributors knew the name of<br>30:09  the pharmacies that had been cut off by other<br>30:10  distributors, it could help them identify<br>30:11  potential diversion, correct? | **Re: [30:08 to 30:11]**<br>Speculation;<br>Foundation; Calls for Expert Testimony | **Re: [30:08 to 30:11]**<br>The question does not call for speculation as it asks a DEA 30(b)(6) witness for the DEA's understanding on a topic for which Ms. Howard was identified as a 30(b)(6) witness (see 15:11-19). The question does not call for expert testimony, as it is asked of the DEA, which is tasked with regulating diversion of controlled substances. Notably, the experts qualified to discuss methods to prevent diversion in this case have been qualified on the basis that they previously worked at the DEA, making the suggestion that the DEA itself lacks sufficient knowledge to respond inaccurate. |
| 30:14 - 30:16<br>30:14  THE WITNESS: The information is<br>30:15  limited. They would need more than notification<br>30:16  of pharmacies that have been cut off. | **Re: [30:14 to 30:16]**<br>Speculation;<br>Foundation; Calls for Expert Testimony | **Re: [30:14 to 30:16]**<br>Please see prior response. |
| 31:03 - 31:06<br>31:03  Q. You would agree that the more<br>31:04  information the distributor has on the pharmacy,<br>31:05  the more helpful that would be to prevent<br>31:06  diversion, correct? | **Re: [31:03 to 31:06]**<br>Scope (witness not designated for this topic) | **Re: [31:03 to 31:06]**<br>The question is within the scope of the noticed topic, which relates to information provided to distributors by the DEA and the reasons why the DEA stopped providing that information (see 15:11-19), which includes questioning about whether the DEA believed the information previously provided was useful to the recipient. |
| 31:10 - 31:10<br>31:10  THE WITNESS: Yes. | **Re: [31:10 to 31:10]**<br>Scope (witness not designated for this topic) | **Re: [31:10 to 31:10]**<br>Please see prior response. |
| 31:12 - 31:14<br>31:12  Q. Now, DEA considered the termination<br>31:13  notices to be a valuable lead to identify the<br>31:14  source -- a source of diversion, right? | **Re: [31:12 to 31:14]**<br>Vague | **Re: [31:12 to 31:14]**<br>The question is not vague, and the witness answered the question without issue. |

| Designations | | | Objections | Reponses |
|---|---|---|---|---|
| 31:16 - 31:16 | | | | |
| | 31:16 | THE WITNESS: Yes. | **Re: [31:16 to 31:16]**<br>Vague | **Re: [31:16 to 31:16]**<br>Please see prior response. |
| 34:06 - 34:12 | | | | |
| | 34:06<br>34:07<br>34:08<br>34:09<br>34:10<br>34:11<br>34:12 | Would you agree that the DEA knew and understood that the vast majority of distributors, upon receiving a termination notice, they would conduct additional due diligence or potentially stop supplying a customer that another distributor had terminated? | **Re: [34:06 to 34:12]**<br>Lack of Foundation; Compound; Scope (witness not designated for this topic); Speculation; Vague | **Re: [34:06 to 34:12]**<br>The question is within the scope of the noticed topic, which relates to information provided to distributors by the DEA and the reasons why the DEA stopped providing that information (see 15:11-19), which includes questioning about whether the DEA believed the information previously provided was useful to the recipient. The question is not vague or compound. The question does not call for speculation or lack foundation, as it asks a DEA 30(b)(6) witness for the DEA's understanding. |
| 34:15 - 34:15 | | | | |
| | 34:15 | THE WITNESS: Yes. | **Re: [34:15 to 34:15]**<br>Lack of Foundation; Compound; Scope (witness not designated for this topic); Speculation; Vague | **Re: [34:15 to 34:15]**<br>Please see prior response. |
| 41:23 - 42:01 | | | | |
| | 41:23<br>41:24<br>41:25<br>42:01 | Q. Was it DEA's general practice to perform any type of investigation into the pharmacies and doctors identified in the termination notices sent to distributors? | **Re: [41:23 to 42:01]**<br>Vague (including as to time-frame); Lack of Foundation; Compound; Scope (witness not designated for this topic); Speculation; Relevance | **Re: [41:23 to 42:01]**<br>The question is not vague, including as to time period which was previously established as beginning in 2005 (see 28:17-29:01). The question is within the scope of the noticed topic, which relates to information provided to distributors by the DEA and the reasons why the DEA stopped providing that information (see 15:11-19). This topic fairly includes questioning about whether the DEA believed the information about a termination was relevant and warranted further action. The question does not call for speculation, as it asks for the DEA's own actions. The question is directly relevant to the issues of this case, including the DEA's expectations of and information-sharing with distributors. |

| Designations | | | Objections | Reponses |
|---|---|---|---|---|
| 42:06 - 42:06 | 42:06 | THE WITNESS:  I don't know. | **Re: [42:06 to 42:06]** Vague (including as to time-frame); Lack of Foundation; Compound; Scope (witness not designated for this topic); Speculation; Relevance | **Re: [42:06 to 42:06]** Please see prior response. |
| 42:08 - 42:11 | 42:08 42:09 42:10 42:11 | Q. Was it DEA's general practice to use ARCOS to investigate any of the pharmacies and doctors identified in the termination notices sent to distributors? | **Re: [42:08 to 42:11]** Vague (including as to time-frame); Lack of Foundation; Compound; Scope (witness not designated for this topic); Speculation; Relevance | **Re: [42:08 to 42:11]** Please see prior response. |
| 42:15 - 42:15 | 42:15 | THE WITNESS:  I don't know. | **Re: [42:15 to 42:15]** Vague (including as to time-frame); Lack of Foundation; Compound; Scope (witness not designated for this topic); Speculation; Relevance | **Re: [42:15 to 42:15]** Please see prior response. |
| 42:17 - 42:19 | 42:17 42:18 42:19 | Q. Was it DEA's general practice to set up any monthly monitoring of the pharmacies and doctors identified in the termination notices? | **Re: [42:17 to 42:19]** Vague (including as to time-frame); Lack of Foundation; Compound; Scope (witness not designated for this topic); Speculation; Relevance | **Re: [42:17 to 42:19]** Please see prior response. |
| 42:23 - 42:23 | 42:23 | THE WITNESS:  I don't know. | **Re: [42:23 to 42:23]** Vague (including as to time-frame); Lack of Foundation; Compound; Scope (witness not designated for this topic); Speculation; Relevance | **Re: [42:23 to 42:23]** Please see prior response. |
| 42:25 - 42:25 | 42:25 | Q. DEA had that capability, didn't it? | **Re: [42:25 to 42:25]** Vague (including as to time-frame); Lack of Foundation; Compound; Scope (witness not designated for this topic); Speculation; Relevance | **Re: [42:25 to 42:25]** Please see prior response. |
| 43:04 - 43:05 | 43:04 43:05 | THE WITNESS:  Can you repeat?  The capability to do what? | **Re: [43:04 to 43:05]** Vague (including as to time-frame); Lack of Foundation; Compound; Scope (witness not designated for this topic); Speculation; Relevance | **Re: [43:04 to 43:05]** Please see prior response. |

| Designations | | | Objections | Reponses |
|---|---|---|---|---|
| 43:07 - 43:09 | | | **Re: [43:07 to 43:09]** Vague (including as to time-frame); Lack of Foundation; Compound; Scope (witness not designated for this topic); Speculation; Relevance | **Re: [43:07 to 43:09]** Please see prior response. |
| | 43:07 43:08 43:09 | Q. The capability to set up a monthly monitoring of the pharmacies and doctors that were identified in these termination notices. | | |
| 43:11 - 43:12 | | | **Re: [43:11 to 43:12]** Vague (including as to time-frame); Lack of Foundation; Compound; Scope (witness not designated for this topic); Speculation; Relevance | **Re: [43:11 to 43:12]** Please see prior response. |
| | 43:11 43:12 | THE WITNESS:  We had the capability. Yes. | | |
| 43:14 - 43:19 | | | **Re: [43:14 to 43:19]** Relevance; Scope (witness not designated for this topic); Argumentative; Compound | **Re: [43:14 to 43:19]** The question is not argumentative or compound. The question is within the scope of the noticed topic, which relates to information provided to distributors by the DEA and the reasons why "the DEA stopped providing that information (see 15:11-19). This topic includes questioning about whether the DEA believed the information about a termination was relevant and warranted further action. The question is directly relevant to the issues of this case, including |
| | 43:14 43:15 43:16 43:17 43:18 43:19 | Q. And in 2006, while you were the chief of the targeting and analysis group, sitting here today, you're not aware of any investigation or use of ARCOS data or monthly monitoring of the pharmacies and doctors that were identified in the termination notices; is that correct? | | |
| 43:24 - 43:24 | | | **Re: [43:24 to 43:24]** Relevance; Scope (witness not designated for this topic); Argumentative; Compound | **Re: [43:24 to 43:24]** Please see prior response. |
| | 43:24 | THE WITNESS:  That's correct. | | |

| Designations | | | Objections | Reponses |
|---|---|---|---|---|
| 44:23 - 44:25 | | | Re: [44:23 to 44:25] Speculation; Scope (witness not designated for this topic); Calls for Expert Opinion; Vague | Re: [44:23 to 44:25] The question does not call for speculation or expert opinion, as it asks for the personal knowledge of the DEA's Chief of the Targeting and Analysis Group (see 17:24-18:8), which analyzes ARCOS data. Notably, the experts qualified in this case to opine on methods to prevent diversion were qualified based on their experience at the DEA. The question is within the scope of the noticed topic, which relates to information provided to distributors by the DEA and the reasons why the DEA stopped providing that information (see 15:11-19), which includes questioning about the relevance of different DEA data sources. At minimum, however, the question and answer can be considered in Ms. Howard's personal capacity, given her senior DEA role. |
| | 44:23 | Q. Would you agree that ARCOS data would | | |
| | 44:24 | have been helpful to distributors to identify | | |
| | 44:25 | potential diversion? | | |
| 45:04 - 45:04 | | | Re: [45:04 to 45:04] Speculation; Scope (witness not designated for this topic); Calls for Expert Opinion; Vague | Re: [45:04 to 45:04] Please see prior response. |
| | 45:04 | THE WITNESS: Yes. | | |
| 45:06 - 45:13 | | | | |
| | 45:06 | Q. Now, DEA stopped sending termination | | |
| | 45:07 | notices to distributors, correct? | | |
| | 45:08 | A. Correct. | | |
| | 45:09 | Q. And do you know when the DEA stopped | | |
| | 45:10 | sending termination notices to distributors? | | |
| | 45:11 | A. Based on the DEA records that I | | |
| | 45:12 | reviewed, it appears that it ceased in | | |
| | 45:13 | December 2007. | | |
| 47:02 - 48:03 | | | Re: [47:02 to 48:03] Hearsay; Speculation | Re: [47:02 to 48:03] The statements referenced in Ms. Howard's testimony are not hearsay because they are not offered for the truth, but for effect on the listener in relation to why the DEA chose to stop sharing information about terminating sales to pharmacies with distributors. The question and answer does not call for speculation, as Ms. Howard is a designated 30(b)(6) witness on this topic (15:11-19) and had the |
| | 47:02 | Q. Why did DEA stop sending the termination | | |
| | 47:03 | notices to distributors? | | |
| | 47:04 | A. Based on my review of the DEA records, | | |
| | 47:05 | it appears the notification process ceased | | |
| | 47:06 | because diversion investigators in the field | | |
| | 47:07 | expressed concern about the notification, and | | |
| | 47:08 | individuals on the listing were legitimate | | |
| | 47:09 | pharmacies or doctors and needed their product | | |
| | 47:10 | for legitimate medical purposes. | | |
| | 47:11 | Also, the threat of potential | | |
| | 47:12 | litigation. And -- that's it for now, if I | | |
| | 47:13 | can -- yeah. | | |
| | 47:14 | Q. And what were the concerns of the | | |
| | 47:15 | diversion investigators? | | |
| | 47:16 | A. That registrants that were identified | | |
| | 47:17 | had legitimate purposes for ordering product and | | |

| Designations | | Objections | Reponses |
|---|---|---|---|
| 47:18 | they should not be blacklisted. | | requisite knowledge to answer this question on behalf of the DEA in light of her review of records and position as the Chief of the Targeting and Analysis unit. |
| 47:19 | Q. And you mentioned the threat of | | |
| 47:20 | potential litigation. Did I hear that | | |
| 47:21 | correctly? | | |
| 47:22 | A. That's correct. | | |
| 47:23 | Q. What was the threat of potential | | |
| 47:24 | litigation that you mentioned? | | |
| 47:25 | A. In my review of some of the DEA records, | | |
| 48:01 | Kyle Wright mentioned that once the notification | | |
| 48:02 | termination memos were distributed, pharmacies | | |
| 48:03 | and DEA registrants threatened to sue him. | | |
| 49:02 - 49:05 | | **Re: [49:02 to 49:05]** Argumentative; Calls for Legal Conclusion; Speculation; Vague; Compound | **Re: [49:02 to 49:05]** The question is not argumentative, vague, or compound, and it does not call for a legal conclusion. The question seeks factual knowledge regarding why the DEA took an action. |
| 49:02 | Q. Was the threat of litigation, was that | | |
| 49:03 | threat too scary for the DEA so that it decided | | |
| 49:04 | it would stop sending the termination notices to | | |
| 49:05 | distributors? | | |
| 49:08 - 49:09 | | **Re: [49:08 to 49:09]** Argumentative; Calls for Legal Conclusion; Speculation; Vague; Compound | **Re: [49:08 to 49:09]** Please see prior response. |
| 49:08 | THE WITNESS: I believe it contributed | | |
| 49:09 | to ceasing sending out the notifications. | | |
| 50:12 - 50:16 | | **Re: [50:12 to 50:16]** Calls for Legal Conclusion; Speculation; Vague; Compound | **Re: [50:12 to 50:16]** The question is not vague or compound, and it does not call for a legal conclusion. The question seeks factual knowledge regarding why the DEA took an action. |
| 50:12 | Q. The DEA -- Ms. Howard, did the DEA stop | | |
| 50:13 | sending distribution notices after hearing | | |
| 50:14 | concerns about the threat of litigation against | | |
| 50:15 | the DEA from pharmacies and doctors that were | | |
| 50:16 | identified in the termination notices? | | |
| 50:19 - 50:21 | | **Re: [50:19 to 50:21]** Calls for Legal Conclusion; Speculation; Vague; Compound | **Re: [50:19 to 50:21]** Please see prior response. |
| 50:19 | THE WITNESS: That was one of the | | |
| 50:20 | reasons. It appears that they ceased sending | | |
| 50:21 | the notifications. | | |