# West Virginia Board of Medicine Quarterly Newsletter

**Volume 9, Issue 1**

**January 2005 - March 2005**



## INSIDE THIS ISSUE

| | |
|---|---|
| Policy for the Use of Controlled Substances For the Treatment of Pain | 1-4 |
| Board Members | 4 |
| Licensure Renewals | 5 |
| Continuing Education For Medical Doctors | 6 |
| Continuing Education For Podiatrists | 7 |
| End of Life Continuing Education / Board Meetings / Change of Address | 8 |
| Board Actions | 9-10 |
| Board Staff | 10 |
| Self-Treatment or Treatment of Immediate Family Members | 11 |
| Uniform Credentialing Information | 12 |

### NOTICE

The West Virginia Board of Medicine adopted the following Policy at its meeting in January, 2005. The Board will no longer rely on previous position statements and policies adopted by it and utilized on the subject of controlled substances for the treatment of pain. The following Policy overrides all statements and policies relating to controlled substances for the treatment of pain previously adopted by the Board, except for the <u>Joint Policy Statement on Pain Management at the End of Life</u> adopted March 12, 2001, also adopted by the Boards of Osteopathy, Pharmacy, and Registered Professional Nurses.

## POLICY FOR THE USE OF CONTROLLED SUBSTANCES FOR THE TREATMENT OF PAIN

**EFFECTIVE DATE: January 10, 2005**

### Section I: Preamble

The West Virginia Board of Medicine recognizes that principles of quality medical practice dictate that the people of the State of West Virginia have access to appropriate and effective pain relief. The appropriate application of up-to-date knowledge and treatment modalities can serve to improve the quality of life for those patients who suffer from pain as well as reduce the morbidity and costs associated with untreated or inappropriately treated pain. For the purposes of this policy, the inappropriate treatment of pain includes nontreatment, undertreatment, overtreatment, and the continued use of ineffective treatments.

The diagnosis and treatment of pain is integral to the practice of medicine. The Board encourages physicians to view pain management as a part of quality medical practice for all patients with pain, acute or chronic, and it is especially urgent for patients who experience pain as a result of terminal illness. All physicians should become knowledgeable about assessing patients' pain and effective methods of pain treatment, as well as statutory requirements for prescribing controlled substances. Accordingly, this policy has been developed to clarify the Board's position on pain control, particularly as related to the use of controlled substances, to alleviate physician uncertainty and to encourage better pain management.

Inappropriate pain treatment may result from physicians' lack of knowledge about pain management. Fears of investigation or sanction by federal, state and local agencies may also result in inappropriate treatment of pain. Appropriate pain management is the treating physician's responsibility. As such, the Board will consider the inappropriate treatment of pain to be a departure from standards of practice and will investigate such allegations, recognizing that some types of pain cannot be completely relieved, and taking into account whether the treatment is appropriate for the diagnosis.

CONTINUED ON PAGE 2

MC-WV-01218.00001

MC-WV-01218

# POLICY FOR THE USE OF CONTROLLED SUBSTANCES
# FOR THE TREATMENT OF PAIN
CONTINUED FROM PAGE 1

The Board recognizes that controlled substances including opioid analgesics may be essential in the treatment of acute pain due to trauma or surgery and chronic pain, whether due to cancer or non-cancer origins. The Board will refer to current clinical practice guidelines and expert review in approaching cases involving management of pain. The medical management of pain should consider current clinical knowledge and scientific research and the use of pharmacologic and non-pharmacologic modalities according to the judgment of the physician. Pain should be assessed and treated promptly, and the quantity and frequency of doses should be adjusted according to the intensity, duration of the pain, and treatment outcomes. Physicians should recognize that tolerance and physical dependence are normal consequences of sustained use of opioid analgesics and are not the same as addiction.

The West Virginia Board of Medicine is obligated under the laws of the State of West Virginia to protect the public health and safety. The Board recognizes that the use of opioid analgesics for other than legitimate medical purposes poses a threat to the individual and society and that the inappropriate prescribing of controlled substances, including opioid analgesics, may lead to drug diversion and abuse by individuals who seek them for other than legitimate medical use. Accordingly, the Board expects that physicians incorporate safeguards into their practices to minimize the potential for the abuse and diversion of controlled substances.

Physicians should not fear disciplinary action from the Board for ordering, prescribing, dispensing or administering controlled substances, including opioid analgesics, for a legitimate medical purpose and in the course of professional practice. The Board will consider prescribing, ordering, dispensing or administering controlled substances for pain to be for a legitimate medical purpose if based on sound clinical judgment. All such prescribing must be based on clear documentation of unrelieved pain. To be within the usual course of professional practice, a physician-patient relationship must exist and the prescribing should be based on a diagnosis and documentation of unrelieved pain. Compliance with applicable state or federal law is required.

The Board will judge the validity of the physician's treatment of the patient based on available documentation, rather than solely on the quantity and duration of medication administration. The goal is to control the patient's pain while effectively addressing other aspects of the patient's functioning, including physical, psychological, social and work-related factors.

Allegations of inappropriate pain management will be evaluated on an individual basis. The Board will not take disciplinary action against a physician for deviating from this policy when contemporaneous medical records document reasonable cause for deviation. The physician's conduct will be evaluated to a great extent by the outcome of pain treatment, recognizing that some types of pain cannot be completely relieved, and by taking into account whether the drug used is appropriate for the diagnosis, as well as improvement in patient functioning and/or quality of life.

**Section II: Guidelines**
The Board has adopted the following criteria when evaluating the physician's treatment of pain, including the use of controlled substances:

**Evaluation of the Patient**—A medical history and physical examination must be obtained, evaluated, and documented in the medical record. The medical record should document the nature and intensity of the pain, current and past treatments for pain, underlying or coexisting diseases or conditions, the effect of the pain on physical and psychological function, and history of substance abuse. The medical record also should document the presence of one or more recognized medical indications for the use of a controlled substance.

**Treatment Plan**—The written treatment plan should state objectives that will be used to determine treatment success, such as pain relief and improved physical and psychosocial function, and should indicate if any further diagnostic evaluations or other treatments are planned. After treatment begins, the physician should adjust drug therapy to the individual medical needs of each patient. Other treatment modalities or a rehabilitation program may be necessary depending on the etiology of the pain and the extent to which the pain is associated with physical and psychosocial impairment.

CONTINUED ON PAGE 3

# POLICY FOR THE USE OF CONTROLLED SUBSTANCES
# FOR THE TREATMENT OF PAIN
CONTINUED FROM PAGE 2

**Informed Consent and Agreement for Treatment**—The physician should discuss the risks and benefits of the use of controlled substances with the patient, persons designated by the patient or with the patient's surrogate or guardian if the patient is without medical decision-making capacity. The patient should receive prescriptions from one physician and one pharmacy whenever possible. If the patient is at high risk for medication abuse or has a history of substance abuse, the physician should consider the use of a written agreement between physician and patient outlining patient responsibilities, including

- urine/serum medication levels screening when requested;
- number and frequency of all prescription refills; and
- reasons for which drug therapy may be discontinued (e.g., violation of agreement).

**Periodic Review**—The physician should periodically review the course of pain treatment and any new information about the etiology of the pain or the patient's state of health. Continuation or modification of controlled substances for pain management therapy depends on the physician's evaluation of progress toward treatment objectives. Satisfactory response to treatment may be indicated by the patient's decreased pain, increased level of function, or improved quality of life. Objective evidence of improved or diminished function should be monitored and information from family members or other caregivers should be considered in determining the patient's response to treatment. If the patient's progress is unsatisfactory, the physician should assess the appropriateness of continued use of the current treatment plan and consider the use of other therapeutic modalities.

**Consultation**—The physician should be willing to refer the patient as necessary for additional evaluation and treatment in order to achieve treatment objectives. Special attention should be given to those patients with pain who are at risk for medication misuse, abuse or diversion. The management of pain in patients with a history of substance abuse or with a comorbid psychiatric disorder may require extra care, monitoring, documentation and consultation with or referral to an expert in the management of such patients.

**Medical Records**—The physician should keep accurate and complete records to include
1. the medical history and physical examination,
2. diagnostic, therapeutic and laboratory results,
3. evaluations and consultations,
4. treatment objectives,
5. discussion of risks and benefits,
6. informed consent,
7. treatments,
8. medications (including date, type, dosage and quantity prescribed),
9. instructions and agreements and
10. periodic reviews.

Records should remain current and be maintained in an accessible manner and readily available for review.

**Compliance With Controlled Substances Laws and Regulations**—To prescribe, dispense or administer controlled substances, the physician must be licensed in the state and comply with applicable federal and state regulations. Physicians are referred to the Physicians Manual of the U.S. Drug Enforcement Administration and for specific rules governing controlled substances as well as applicable state regulations.

**Section III: Definitions**
For the purposes of these guidelines, the following terms are defined as follows:

CONTINUED ON PAGE 4

# POLICY FOR THE USE OF CONTROLLED SUBSTANCES FOR THE TREATMENT OF PAIN
CONTINUED FROM PAGE 3

**Acute Pain**—Acute pain is the normal, predicted physiological response to a noxious chemical, thermal or mechanical stimulus and typically is associated with invasive procedures, trauma and disease. It is generally time-limited.

**Addiction**—Addiction is a primary, chronic, neurobiologic disease, with genetic, psychosocial, and environmental factors influencing its development and manifestations. It is characterized by behaviors that include the following: impaired control over drug use, craving, compulsive use, and continued use despite harm. Physical dependence and tolerance are normal physiological consequences of extended opioid therapy for pain and are not the same as addiction.

**Chronic Pain**—Chronic pain is a state in which pain persists beyond the usual course of an acute disease or healing of an injury, or that may or may not be associated with an acute or chronic pathologic process that causes continuous or intermittent pain over months or years.

**Pain**—An unpleasant sensory and emotional experience associated with actual or potential tissue damage or described in terms of such damage.

**Physical Dependence**—Physical dependence is a state of adaptation that is manifested by drug class-specific signs and symptoms that can be produced by abrupt cessation, rapid dose reduction, decreasing blood level of the drug, and/or administration of an antagonist. Physical dependence, by itself, does not equate with addiction.

**Pseudoaddiction**—The iatrogenic syndrome resulting from the misinterpretation of relief seeking behaviors as though they are drug-seeking behaviors that are commonly seen with addiction. The relief seeking behaviors resolve upon institution of effective analgesic therapy.

**Substance Abuse**—Substance abuse is the use of any substance(s) for non-therapeutic purposes or use of medication for purposes other than those for which it is prescribed.

**Tolerance**—Tolerance is a physiologic state resulting from regular use of a drug in which an increased dosage is needed to produce a specific effect, or a reduced effect is observed with a constant dose over time. Tolerance may or may not be evident during opioid treatment and does not equate with addiction.

## West Virginia Board of Medicine
### Board Members

| | |
|---|---|
| Angelo N. Georges, M.D., President<br>Wheeling | J. David Lynch, Jr., M.D.<br>Morgantown |
| Carmen R. Rexrode, M.D., Vice President<br>Moorefield | Vettivelu Maheswaran, M.D.<br>Charles Town |
| Catherine Slemp, M.D., M.P.H., Secretary<br>Charleston | Leonard Simmons, D.P.M.<br>Fairmont |
| R. Curtis Arnold, D.P.M.<br>South Charleston | Lee Elliott Smith, M.D.<br>Princeton |
| Rev. Richard Bowyer<br>Fairmont | John A. Wade, Jr., M.D.<br>Point Pleasant |
| Ms. Doris M. Griffin<br>Martinsburg | Badshah J. Wazir, M.D.<br>South Charleston |
| M. Khalid Hasan, M.D.<br>Beckley | |

# LICENSURE RENEWALS

On Friday, May 13, 2005, licensure renewal applications will be mailed certified to all medical doctors whose last names begin with the letters M through Z and all podiatrists, A through Z. Renewal applications will be mailed to the address of record on file at the Board offices. The address of record is the address designated by each physician as his or her preferred mailing address. It is the responsibility of the licensee to keep this office apprised of any address change. In the event of a change of address, the licensee must notify the Board of the change, in writing. (See Change of Address form on page 8).

For a medical/podiatric license to remain valid and in force, the fully completed renewal application and fee must be <u>RECEIVED</u> in the Board offices <u>BEFORE</u> Thursday, June 30, 2005, at 5:00 p.m. The physician's medical/podiatric license will be suspended if the required continuing medical/podiatric education has not been obtained (see articles on page 6 & 7).

**In order to avoid automatic suspension of a medical/podiatric license, a physician must either:**

1) complete the six-page renewal application to renew the license; or

2) complete the one-page certification included in the renewal application packet to lapse/expire the license.

**This information must be completed and <u>RECEIVED</u> in the Board offices <u>BEFORE</u> Thursday, June 30, 2005, at 5:00 p.m.**

If a licensee does not receive a renewal application, it is his or her responsibility to inform the Board and to request a duplicate. Please contact the Board's Renewal Coordinator at (304)558-2921, Ext. 218, or fax your written request for a duplicate application to (304)558-2084. A duplicate copy of the renewal application will be mailed to the licensee. Illegible and incomplete applications, as well as those received without the fee, will be returned. The Board will be unable to finalize the processing of any application that is not complete. Completion of the renewal application is the responsibility of the licensee.

Every application is computer-generated to include personalized information previously reported by the physician. However, each physician will need to review this information to ensure that it remains accurate. Each physician MUST provide a telephone number. The Board anticipates that this method of renewal will reduce the time necessary for the physician to complete the application.

# CONTINUING EDUCATION SATISFACTORY TO THE BOARD: MEDICAL DOCTORS

Pursuant to 11 CSR 6 2.2, in order to acquire continuing medical education satisfactory to the Board, a physician may:

    A.    Take continuing medical education designated as Category I by the American Medical Association or the Academy of Family Physicians, or

    B.    Teach medical education courses or lecture to medical students, residents, or licensed physicians, or serve as a preceptor to medical students or residents: Provided, that a physician may not count more than twenty (20) hours in this category toward the required fifty (50) hours of continuing medical education.

    C.    Sit for and pass a certification or recertification examination of one of the American Board of Medical Specialties member boards, and receive certification or recertification from said board: Provided, that a physician may not count more than twenty-five (25) hours in this category toward the required fifty (50) hours of continuing medical education. Certification or recertification from any board other than one of the American Board of Medical Specialties member boards does not qualify the recipient for any credit hours of continuing medical education.

There are no other types or categories of continuing medical education satisfactory to the Board.

(For your information, every physician enrolled in an ACGME approved postgraduate training program automatically receives fifty (50) continuing medical education hours, AMA Category I, per year. Check with your program director.)

WEST VIRGINIA CODE §30-1-7a states:

    Each person issued a license to practice medicine and surgery by the West Virginia Board of Medicine shall complete two (2) hours of continuing education coursework in the subject of end-of-life care including pain management. The two (2) hours shall be part of the total hours of continuing education required and not two (2) additional hours.

# CONTINUING EDUCATION SATISFACTORY TO THE BOARD: PODIATRISTS

Pursuant to 11 CSR 6 2.4, in order to acquire continuing podiatric education satisfactory to the Board, a podiatrist may:

A. Take continuing podiatric education approved by the council on podiatric medical education, or

B. Take continuing podiatric education given under the auspices of the podiatry colleges in the United States, or

C. Take continuing medical education designated as Category I by the American Medical Association or the Academy of Family Physicians.

D. Take continuing podiatric education given under the auspices of the West Virginia Podiatric Medical Association.

E. Teach podiatric education courses or lectures in podiatry taught to podiatric students, residents, or licensed podiatrists, or serve as a preceptor to podiatric students or residents: Provided, that a podiatrist may not count more than twenty (20) hours in this category toward the required fifty (50) hours of podiatric education.

There are no other types or categories of continuing podiatric education satisfactory to the Board.

WEST VIRGINIA CODE §30-1-7a states:

Each person issued a license to practice podiatry by the West Virginia Board of Medicine shall complete two (2) hours of continuing education coursework in the subject of end-of-life care including pain management. The two (2) hours shall be part of the total hours of continuing education required and not two (2) additional hours.

MC-WV-01218.00007

## END-OF-LIFE CONTINUING EDUCATION COURSEWORK

Starting with the reporting period beginning July 1, 2005, the two (2) hour end-of-life continuing education requirement every two (2) years becomes a one (1) time only requirement. Those renewing licenses in 2005 will need to show two (2) hours of the end-of-life coursework between 2003 and 2005. Those renewing in 2006 and after will only need to have completed the two (2) hour coursework since the requirement became effective in 2001.

```
WEST VIRGINIA
BOARD OF MEDICINE
2005 MEETINGS

May 9
July 11
September 12
November 14
ALL BOARD MEETINGS BEGIN AT 9:00 A.M.
```

### CHANGE OF ADDRESS FORM

WV License No: _____   Date of Change: _____

Name of Licensee: _____

**PLEASE CHECK ONLY ONE PREFERRED MAILING ADDRESS:**
(The preferred mailing address is the licensee's address of record, which is public information.)
(Note that telephone numbers are not considered public information.)

( ) Principal Office or Work Location    *ONLY CHECK ONE*    ( ) Home Address

_____    _____

_____    _____

_____    _____

Telephone: _____    Telephone: _____

Signature: _____    Date: _____

Original Signature of Licensee is Required



*Mail completed form(s) to*:    West Virginia Board of Medicine
101 Dee Drive, Suite 103 • Charleston, WV 25311
*Fax copies not accepted.*
*By law, you must keep this office apprised of any and all address changes.*

MC-WV-01218.00008

 

# BOARD ACTIONS
## January 2005—March 2005

BROOKS, SHEILA JEAN, D.P.M. – Bluefield, WV (02/22/05)
WV License No. 230
Board Conclusion:  Relating to engaging in dishonorable, unethical, and/or unprofessional conduct of a character likely to harm the public irrespective of whether or not a patient is injured thereby; and has committed an act contrary to honesty, justice or good morals, whether committed in the course of his or her practice.
Board Action:  License suspended effective February 10, 2005.  The suspension was immediately stayed, and Dr. Brooks' license to practice podiatry was placed on PROBATION, to run concurrent with the January 22, 2004, Court Order entered in the Circuit Court of Mercer County through January 22, 2007.  Dr. Brooks is PUBLICLY REPRIMANDED for committing a misdemeanor battery, which occurred outside of, and unrelated to, her practice of podiatry.

BYRD, JOHN WILLIAM, M.D. – Charleston, WV (03/31/05)
WV License No. 09100
Board Conclusion:  Relating to the inability to practice medicine with reasonable skill and safety due to physical or mental disability or alcohol or chemical dependency; relating to unprofessional and unethical conduct and acts contrary to honesty, justice, or good morals; and relating to violating a law or rule of the Board.
Board Action:  By AMENDED CONSENT ORDER dated March 31, 2005, Dr. Byrd's August, 2003, CONSENT ORDER was amended as follows:  his required psychiatric treatment, with a physician board certified in psychiatry, was amended from no less than twice per month to no less than every two months.

DUWEL, JOHN J., M.D. – Covington, KY (02/28/05)
WV License No. 14064
Board Conclusion:  Relating to failing to practice medicine with the level of care, skill, and treatment which is recognized by a reasonable, prudent physician engaged in the same or similar specialty and relating to being denied a license in another state.
Board Action:  License SURRENDERED effective March 5, 2005, and Dr. Duwel agrees not to apply for a medical license in West Virginia at any time in the future, and understands that if he does so, his request for medical licensure will be denied.

ENDE, MAURICE JOSEPH, M.D. – Houston, TX (03/14/05)
WV License No. 12935
Board Conclusion:  Relating to the renewal of a license to practice medicine and surgery by misrepresentation and making a false statement in connection with a licensure application and relating to having been subjected to disciplinary action by the licensing authority of another state.
Board Action:  License SURRENDERED effective March 10, 2005, and Dr. Ende agrees not to apply for a medical license in West Virginia at any time in the future, and understands that if he does so, his request for medical licensure will be denied.

HUNTER, EDWARD BOYD, JR., M.D. – Bluefield, WV (03/17/05)
WV License No. 19844
Board Conclusion:  The Board determined that Dr. Hunter violated the probationary requirement of the June 30, 2003, Consent Order he entered into with the Board.
Board Action:  The stay of suspension imposed by the Consent Order is terminated and dissolved effective April 22, 2005, at 12:01 a.m.  Effective that day at that time, the license to practice medicine and surgery in the State of West Virginia of Dr. Hunter stands SUSPENDED until further notice from the Board.

RASMUSSEN, DONALD LLOYD, M.D. – Beckley, WV (01/12/05)
WV License No. 8603
Board Conclusion:  Relating to failure to complete all the required continuing medical education coursework in the subject of end-of-life care, including pain management, and relating to failure to perform a statutory or legal obligation placed upon a licensed physician.
Board Action:  PUBLICY REPRIMANDED for deficiency of two (2) hours of CME credits for the renewal period July 1, 2001, to June 30, 2003; shall pay to the Board a fine of $100 per credit hour of his CME deficiency; shall document to the Board his completion of the two (2) required hours in end-of-life care, including pain management.

SORENSEN, MARK, M.D. – Philadelphia, PA (02/14/05)
WV License No. 16527
Board Conclusion:  Relating to becoming addicted to a controlled substance and having his license to practice medicine in another state suspended.
Board Action:  License SURRENDERED effective February 11, 2005, and Dr. Sorensen agrees not to apply for a medical license in West Virginia at any time in the future, and understands that if he does so, his request for medical licensure will be denied.

CONTINUED ON PAGE 10




## BOARD ACTIONS
## January 2005—March 2005
Continued from Page 9

**SZENDI-HORVATH, IMRE, M.D.** – Proctorville, OH (03/14/05)
WV License No. 9525
Board Conclusion:  Relating to failure to complete all the required continuing medical education coursework in the subject of end-of-life care, including pain management, and relating to failure to perform a statutory or legal obligation placed upon a licensed physician.
Board Action:  License SURRENDERED effective March 14, 2005, and Dr. Szendi-Horvath agrees not to apply for a medical license in West Virginia at any time in the future, and understands that if he does so, his request for medical licensure will be denied.

**VEGA-BONILLA, CARLOS, M.D.** – Parkersburg, WV (02/14/05)
WV License No. 14173
Board Conclusion:  Relating to the inability to practice medicine with reasonable skill and safety due to excessive use and abuse of alcohol, and unprofessional, unethical conduct.
Board Action:  License SURRENDERED effective February 8, 2005.

### LICENSE DENIALS
**BAILEY, BRIAN , D.P.M.** – Ashland, KY (03/03/05)
Board Conclusion:   Unqualified to practice podiatry in the State of West Virginia, due to provisions of West Virginia Code §48-15-303, specifying that a license shall not be granted to any person who applies for a license if there is child support arrearage equal to or exceeding the amount payable for six (6) months.
Board Action:  Licensure denial CONFIRMED effective January 27, 2005.

**CHAHO, AMY JANE, M.D.** – Rocky River, OH (01/21/05)
Board Conclusion:  Unqualified to practice medicine and surgery in the State of West Virginia, due to failing to obtain a passing grade on the SPEX examination, demonstrating a lack of professional competence, and failing to practice medicine with that level of care, skill, and treatment which is recognized by a reasonable, prudent physician engaged in the same or similar specialty as being acceptable under similar conditions or circumstances.
Board Action:  Licensure denial CONFIRMED effective December 17, 2004.

| Ext # | Staff of the West Virginia Board of Medicine (304) 558-2921 | |
|---|---|---|
| 227 | Ronald D. Walton, M.A. | Executive Director |
| 214 | Deborah Lewis Rodecker, J.D. | Counsel |
| 215 | Stephen D. Greer, II, J.D. | Prosecuting Attorney |
| 212 | M. Ellen Briggs | Administrative Assistant to the Executive Director |
| 222 | Leslie A. Higginbotham | Paralegal/Investigator |
| 210 | Charlotte A. Jewell | Receptionist/Physician Assistant Coordinator |
| 216 | Michael R. Lilly | Information Systems Coordinator |
| 221 | Crystal Lowe | Licensure Analyst |
| 211 | Janie Pote | Administrative Assistant to Legal Department |
| 224 | Pennie Price | Verification Coordinator |
| 220 | Deb Scott | Fiscal Officer |
| 213 | Sheree Smith | Complaints Coordinator |

# ???DID YOU KNOW???

## Self-Treatment or Treatment of Immediate Family Members

*One of the most asked questions of the Board of Medicine staff is whether there is any prohibition on treatment by physicians of family members. All physicians licensed by the Board of Medicine are by law held to the ethical standards of the American Medical Association (AMA). The Code of Medical Ethics of the Council on Ethical and Judicial Affairs (CEJA) of the AMA has this to say on the subject in Opinion 9.18.*

Physicians generally should not treat themselves or members of their immediate families. Professional objectivity may be compromised when an immediate family member or the physician is the patient; the physician's personal feelings may unduly influence his or her professional medical judgment, thereby interfering with the care being delivered. Physicians may fail to probe sensitive areas when taking the medical history or may fail to perform intimate parts of the physical examination. Similarly, patients may feel uncomfortable disclosing sensitive information or undergoing an intimate examination when the physician is an immediate family member. This discomfort is particularly the case when the patient is a minor child, and sensitive or intimate care should especially be avoided for such patients. When treating themselves or immediate family members, physicians may be inclined to treat problems that are beyond their expertise or training. If tensions develop in a physician's professional relationship with a family member, perhaps as a result of a negative medical outcome, such difficulties may be carried over into the family member's personal relationship with the physician. Concerns regarding patient autonomy and informed consent are also relevant when physicians attempt to treat members of their immediate family. Family members may be reluctant to state their preference for another physician or decline a recommendation for fear of offending the physician. In particular, minor children will generally not feel free to refuse care from their parents. Likewise, physicians may feel obligated to provide care to immediate family members even if they feel uncomfortable providing care. It would not always be inappropriate to undertake self-treatment or treatment of immediate family members. In emergency settings or isolated settings where there is no other qualified physician available, physicians should not hesitate to treat themselves or family members until another physician becomes available. In addition, while physicians should not serve as a primary or regular care provider for immediate family members, there are situations in which routine care is acceptable for short-term, minor problems. Except in emergencies, it is not appropriate for physicians to write prescriptions for controlled substances for themselves or immediate family members. (I, II, IV) Issued June 1993.

*Source: Code of Medical Ethics, copyright 2004, American Medical Association*

## WEST VIRGINIA BOARD OF MEDICINE LEGISLATIVE RULE
## Self-Treatment, Treatment of Family Members, and
## Prescribing of Controlled Substances

*Legislative Rules of the West Virginia Board of Medicine address the issue of practitioners prescribing controlled substances to themselves and/or to their family members.*

11 CSR 1A 12.1(w) states:
> The Board may deny an application for a license, place a licensee on probation, suspend a license, limit or restrict a license or revoke any license heretofore or hereafter issued by the Board, upon satisfactory proof that the licensee has:
> Prescribed, dispensed or administered any medicinal drug appearing on any schedule set forth in chapter 60A of the W. Va. Code by the physician or podiatrist to himself or herself, except one prescribed, dispensed or administered to the physician or podiatrist by another practitioner authorized to prescribe, dispense or administer medicinal drugs.

11 CSR 1A 12.2(a)(C) states:
> Acts declared to constitute dishonorable, unethical or unprofessional conduct: As used in this rule at section 12.1.e., "Dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public or any member thereof" includes, but is not limited to:
> Prescribing or dispensing any "Controlled Substance" as defined in Chapter 60A of the West Virginia Code:
> For the licensee's personal use, or for the use of his or her immediate family when the licensee knows or has reason to know that an abuse of controlled substance(s) is occurring, or may result from such a practice.

## OCTOBER 28, 2004, AMENDMENTS TO WEST VIRGINIA MANDATORY UNIFORM CREDENTIALING AND RECREDENTIALING FORMS

As you know, on July 1, 2003, the West Virginia Legislature mandated the use of uniform credentialing and recredentialing forms when credentialing West Virginia health care practitioners. PLEASE BE ADVISED THAT THE UNIFORM CREDENTIALING AND RECREDENTIALING FORMS HAVE BEEN AMENDED. THE EFFECTIVE DATE OF THE AMENDENTS IS OCTOBER 28, 2004.

The amended uniform credentialing and recredentialing forms can be accessed through a link on the West Virginia Insurance Commissioner's website at www.wvinsurance.gov. Although the amended forms are currently in effect, the West Virginia Insurance Commissioner's enforcement position is that health care practitioners who have been credentialed with a payor or network under the pre-amendment forms will not immediately need to be credentialed again using the amended forms that were effective on October 28, 2004. A health care practitioner need only be credentialed using the amended forms in the event that the practitioner is applying for the first time for inclusion into a new network after October 28, 2004. In addition, at a normal recredentialing cycle which occurs after October 28, 2004, health care practitioners will need to be recredentialed using the amended form.

Any questions that you may have regarding the amended forms may be sent to MJ.Pickens@wvinsurance.gov.

**WV Board of Medicine**



101 Dee Drive, Suite 103
Charleston, WV 25311

Phone: 304-558-2921
Fax: 304-558-2084

www.wvdhhr.org/wvbom
Watch for updates and changes.

```
PRESORTED STANDARD
US POSTAGE PAID
CHARLESTON, WV 25301
PERMIT NO. 271
```

```
Place Mailing Address Label
            Here
```