## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement"), dated and effective this 1st day of May 2019 ("Effective Date"), is made by and among the State of West Virginia *ex rel.* Patrick Morrisey, Attorney General, Jeff S. Sandy, in his capacity as the Secretary of the West Virginia Department of Military Affairs and Public Safety ("DMAPS"), and Bill J. Crouch, in his capacity as the Secretary of the West Virginia Department of Health and Human Resources ("DHHR") (together, "the State" or "Plaintiffs"), and McKesson Corporation ("McKesson" or "Defendant") (collectively hereinafter, the "Parties").

### RECITALS

A.   WHEREAS, McKesson, a Delaware corporation, is a licensed wholesale distributor of prescription drugs to certain duly licensed and registered pharmacies in West Virginia;

B.   WHEREAS, in or about January, 2016, Plaintiffs filed in the Circuit Court of Boone County, West Virginia, their Amended Complaint in Civil Action No. 16-C-1, styled *State of West Virginia ex rel. Patrick Morrisey, Attorney General, et al. v. McKesson Corporation*, alleging that Defendant acted tortiously and in violation of West Virginia law governing controlled substances while engaging in wholesale drug distribution in West Virginia (the "Litigation");

C.   WHEREAS, Plaintiffs have asserted, *inter alia*, that this Litigation is brought pursuant to the Attorney General's authority to bring claims for the citizens of the State of West Virginia;

D.   WHEREAS, Plaintiffs allege in their Amended Complaint that McKesson's alleged negligence "tortiously caused injuries in West Virginia," has resulted in the creation and/or continuation of the abuse of and/or addiction to and/or progressive reliance or dependency on

DEF_WV_Trial_00002355

DEF-WV-02150.00001

DEF-WV-02150

prescription medications, that McKesson has, *inter alia*, "caused ongoing damage, hurt or inconvenience to the State of West Virginia and its residents";

E. WHEREAS, Plaintiffs further assert that, through this Litigation, the State seeks to protect the health and well-being of West Virginia residents and their communities;

F. WHEREAS, this litigation reflects the State of West Virginia's interest in remedying harms arising out of the abuse of and/or addiction to and/or progressive reliance or dependency on prescription medications;

G. WHEREAS, on or about February 23, 2016, McKesson filed its Answer and affirmative defenses to the Amended Complaint, denying liability for all claims the State alleged against it in the Litigation and specifically denying that it has violated any applicable law or regulation or breached any legal duty;

H. WHEREAS, McKesson currently conducts a program to detect and help prevent prescription drug diversion, which program it will continue to operate;

I. WHEREAS the State has concluded that it is in its best interest to resolve all claims asserted against McKesson on the terms and conditions set forth below and thereby avoid the vagaries and costs associated with further litigation;

J. WHEREAS, McKesson likewise desires to fully resolve the issues in dispute between it and the State in this Litigation on the terms and conditions provided herein;

K. WHEREAS, without any admissions of liability, the Parties now mutually desire to enter into this Agreement and to provide for the full settlement and discharge of all claims that have been or could have been brought by the Attorney General against Defendant in the Litigation now pending before the Circuit Court of Boone County, West Virginia, including any and all claims based on, related to, or arising out of Defendant's conduct as a distributor of

DEF_WV_Trial_00002356

DEF-WV-02150.00002

pharmaceuticals in the State of West Virginia up to the date of this Agreement, upon the terms and conditions set forth in this Agreement.

## AGREEMENT

NOW, THEREFORE, to avoid the delay, uncertainty, inconvenience, and expense of protracted litigation, and in consideration of the mutual promises, covenants, agreements, understandings, warranties, and payments as hereinafter recited, intending to be legally bound, the Parties agree as follows:

1. **RELEASE AND DISCHARGE**

In consideration for the payment provided in Paragraph 4 below, the State, through its Attorney General, acting in its sovereign and quasi-sovereign capacities to protect the general health and well-being of all the citizens and entities of the State, whether natural persons or otherwise, and on behalf of its departments, agencies, divisions, boards, commissions, and other instrumentalities of any kind, and any person, in their official capacity elected or appointed to serve the State, its attorneys, and/or by any agency, person, or entity claiming by or through them or any of them (sometimes collectively referred to as the "Releasing Parties") against the Released Entities (as defined below) or any of them, hereby agree to release, remise, acquit, and forever discharge, to the fullest extent permitted by law, McKesson and all of its past and present parents, subsidiaries, divisions, affiliates, predecessors, successors, assigns, and transferees, and each and all of their current and former officers, directors, members, shareholders, employees, insurers, attorneys, contractors, representatives, agents, predecessors, successors in interest, assigns, and anyone acting or purporting to act on their behalf, (sometimes collectively referred to as the "Released Entities"), from any and all claims, demands, debts, damages, liabilities, civil penalties,

DEF_WV_Trial_00002357

DEF-WV-02150.00003

restitution, abatement, disgorgement, reimbursement, fines, expenses, actions, and causes of action whatsoever, known and unknown, foreseen, unforeseen, or unforeseeable, which the State and/or its Attorney General has asserted or could have asserted on their own behalf or in their *parens patriae* capacity, now or in the future against the Released Entities or any of them growing out of, relating to, or concerning the Litigation, or based on, related to, or arising out of Defendant's conduct as a distributor of pharmaceuticals in the State of West Virginia up to the date of this Agreement, subject to the conditions set forth herein ("Released Claims").

The Released Claims include and encompass, without limitation, any claims whether at law or in equity for which the Attorney General has or could have authority to prosecute, or which have been or could have been asserted in the Litigation, including, without limitation, (i) any and all claims in its representative capacity as *parens patriae* concerning the Defendant's alleged wrongful conduct that have been or could have been asserted in the Litigation, (ii) any and all claims the Attorney General has or could have asserted with respect to public health, safety, and well-being in the State of West Virginia; (iii) any and all claims in which the State is interested, whether asserted or unasserted, that were or could have been or could have been asserted; (iv) any and all claims on behalf of consumers in the State that have been or could have been asserted by the State through the Attorney General in the Litigation; (v) any and all claims for damages or relief of any nature whatsoever related to the allegations in the Litigation, including any and all claims relating to any act, conduct, error, or omission in distributing controlled substances in West Virginia, whether or not the controlled substance, the customer to which it was delivered, or the act, conduct, error, or omission was specifically alleged or identified in the Litigation, including, without limitation, claims arising under the West Virginia Uniform Controlled Substances Act, W. Va. Code §§ 60A-1-101, *et seq.*, and its implementing rules, any and all claims based on vicarious

DEF_WV_Trial_00002358

DEF-WV-02150.00004

liability and/or *respondeat superior*, claims for direct negligence, willful and wanton misconduct, and claims for punitive damages, (vi) any and all claims alleging harm to agencies, departments, divisions and instrumentalities of the State of West Virginia, as well as for harm to the health and well-being of the citizens of the State; (vii) any and all claims of harm to the public generally and to agencies or instrumentalities of the State; and (viii) any and all manner of civil (i.e., non-criminal) claims, demands, actions, suits, causes of action, damages (whenever incurred), liabilities of any nature including civil penalties and punitive damages, as well as costs, expenses and attorneys' fees, known or unknown, suspected or unsuspected, accrued or unaccrued, whether legal, equitable, or statutory.

This is a full, final, and complete release of the Released Claims and totally and completely bars any further future claims or demands of any kind or character whatsoever as a result of or relating to the Released Claims by the State, any of its past, present, and future agents, officials acting in their official capacities, legal representatives, its departments, agencies, divisions, regulatory boards, commissions, and instrumentalities of any kind, and any person, in their official capacity, elected or appointed to serve the State, its attorneys, and/or by any agency, person, or entity claiming by or through them or any of them, against the Released Entities or any of them for any and all conduct relating to the Released Claims occurring up to the Effective Date of this Agreement: provided, that this release may not be construed to apply to (a) future conduct of the Released Entities, (b) future conduct that is not related to or concerning the Litigation, and (c) future conduct of a successor in interest or assign independent of the conduct of McKesson.

The payment of the Settlement Payment (as defined in Paragraph 4.1 below) fully discharges all Released Entities from any obligation to pay or perform restitution, compensatory damages, punitive damages, attorneys' fees, interest, expenses, costs, disgorgement, injunctive

DEF_WV_Trial_00002359

DEF-WV-02150.00005

relief, equitable remedies, administrative claims, fines, penalties, forfeitures, or other relief of any kind to the State based upon or arising out of the Released Claims. The State covenants that it shall not initiate, prosecute, or participate as a plaintiff in any civil litigation, administrative proceeding, or any other type of proceeding against the Released Entities based upon or arising out of the Released Claims. Upon the payment of the Settlement Payment by McKesson, no default by any Party in the performance of any covenant or obligation under this Agreement or any order entered in connection therewith may affect the dismissal of the Litigation, the *res judicata* effect of the dismissal of the Litigation, or the foregoing releases; provided, however, that all other legal and equitable remedies for violation of a court order or breach of this Agreement shall remain available to all Parties.

2. **RELEASE OF UNKNOWN CLAIMS**

The Releasors may hereafter discover facts other than or different from those which they know or believe to be true with respect to the Released Claims but, as of the Effective Date, they hereby expressly waive and fully, finally, and forever settle, discharge, and release any and all known or unknown, suspected or unsuspected, accrued or unaccrued, asserted or unasserted, contingent or non-contingent claims relating to the Released Claims without regard to the subsequent discovery or existence of such different or additional facts and whether or not they are claimed to have been concealed or hidden.

3. **DELIVERY OF DISMISSAL WITH PREJUDICE**

Concurrently with the execution of this Agreement, the State shall deliver to McKesson an executed Dismissal Order dismissing Plaintiffs' claims against McKesson in the Litigation with prejudice. The Parties agree that the Dismissal Order shall be submitted to the Court for approval,

DEF_WV_Trial_00002360

DEF-WV-02150.00006

and to effectuate the purposes of the settlement, said Dismissal Order shall direct payment and distribution as specified in Section 4, below.

4.  **SETTLEMENT PAYMENT TERMS**

    4.1   *Settlement Payment*: In consideration of Plaintiffs' release and discharge and dismissal of the Litigation with prejudice set forth above, without admitting any liability, wrongdoing, or violation of any law or regulation, and solely for the purpose of resolving the Litigation and avoiding further litigation, McKesson agrees to pay the State of West Virginia the total sum of $37 Million ("Total Settlement Payment"). The Parties agree that the Total Settlement Payment is compensatory and not punitive or restitutionary in nature and is not a fine or penalty. It is expressly agreed that no portion of the Total Settlement Payment is for, may be allocated or attributed to, or may be characterized as, the payment of fines, penalties, punitive damages, forfeitures, or disgorgement. The funds received as part of this settlement do not represent a payment for any Medicaid payments and do not relate to federal money or state matching funds.

    4.2   *Payment Schedule*: The Parties agree that McKesson will wire the Total Settlement Payment to Plaintiffs as follows: an initial payment of $14.5 Million by no later than three (3) business days following the entry of the dismissal order in Boone County Circuit Court Civil Action No. 16-C-1, but only after receiving (i) wire instructions from Plaintiffs and (ii) a completed W-9 from Plaintiffs; a payment of $4.5 Million on or before May 4, 2020, but only after receiving (i) wire instructions from Plaintiffs and (ii) a completed W-9 from Plaintiffs; a payment of $4.5 Million on or before May 3, 2021, but only after receiving (i) wire instructions from Plaintiffs and (ii) a completed W-9 from Plaintiffs; a payment of $4.5 Million on or before May 2, 2022, but only after receiving (i) wire instructions from Plaintiffs and (ii) a completed W-9 from Plaintiffs; a payment of $4.5 Million on or before May 1, 2023, but only after receiving (i) wire

DEF_WV_Trial_00002361

DEF-WV-02150.00007

instructions from Plaintiffs and (ii) a completed W-9 from Plaintiffs; a payment of $4.5 Million on or before May 6 2024, but only after receiving (i) wire instructions from Plaintiffs and (ii) a completed W-9 from Plaintiffs. McKesson has accrued a reserve to account for the full sum of all present and future payments required under this agreement, and shall ensure that such funds are available in full on the schedule set forth in this section. The initial settlement payment will be wired to the IOLTA account of Bailey Javins & Carter, LC and will remain there until such time as the manner of distribution therefrom is agreed by the named Plaintiffs and pursuant to Section 4.3 of this Agreement.

4.3.   *Payment Distribution*: At such time as the distribution therefrom is agreed by the named Plaintiffs, all settlement monies attributable to DHHR and DMAPS shall be deposited into accounts designated by them, to be used to support a comprehensive family treatment continuum, develop prevention programs that address adverse childhood experiences and the social detriments of health, develop an adequate workforce to address mental health and substance use, and support data collection and evaluation activities that enhance prevention, treatment and recovery programs; the settlement monies attributed to DHHR and DMAPS also shall be used for the GOALS Drug Rehabilitation Program in jails, for condemnation and demolition of blight properties for rebuilding neighborhoods, for funding the Justice Reinvestment Initiative, for body scanners, for compliance with the Juvenile Justice and Delinquency Prevention Act of 1974, for Vocational Technical programming in prisons and jails (including installation of appropriate training labs and facilities in jails and prisons) and for Drug Prevention Program for Senior Citizens/Grandparents raising grandchildren of addicted parents. The portion of the settlement monies attributable to the Office of the Attorney General will be deposited in the "Fund 1509 Consumer Protection Recovery Fund." The monies deposited in "Fund 1509 Consumer Protection Recovery Fund" may be used

DEF_WV_Trial_00002362

DEF-WV-02150.00008

by the Attorney General for any one or more of the following purposes: Direct and indirect administrative, investigative, compliance, enforcement, or litigation costs and services incurred for consumer protection purposes; to be held for appropriation by the Legislature; and/or distribution to taxpayers and/or consumers. In no event shall McKesson have any responsibility, financial obligation, or liability whatsoever with respect to the distribution or administration of the Total Settlement Payment including, but not limited to, the costs and expenses of such distribution and administration.

**4.4.** *Effect of Payment*: No part of the Settlement Payment represents monies expended by the State of West Virginia's Medicaid Program, nor does it concern any payment made thereunder, nor does the Total Settlement Payment represent any federal money or any state matching funds. Payment of the Total Settlement Payment by McKesson will fulfill all obligations that this Agreement imposes on McKesson. Payment of the Total Settlement Payment also is intended to, and does, fully resolve all of the Releasor's claims against the Released Entities as provided in Paragraph 1.

5. **SUSPICIOUS ORDER REPORTING**

McKesson has no objection, and, to the extent deemed necessary, fully authorizes the West Virginia Board of Pharmacy to provide copies of any suspicious order reports received by it from McKesson to the West Virginia State Police and the West Virginia Attorney General.

6. **NO ADMISSION/ASSUMPTION OF LIABILITY**

Neither the giving of any consideration, nor the Parties' willingness to enter into this Agreement, nor anything contained in this Agreement, shall be construed as an admission by McKesson or any other person or entity, of any liability, wrongdoing, negligence, or failure to comply with any law or regulation, or of the truth of any of the allegations in the Litigation or any

DEF_WV_Trial_00002363

DEF-WV-02150.00009

other claim of any kind made against McKesson. McKesson expressly denies that it is liable as alleged in the Litigation.

The State does not assume any liability to any third parties under the terms of this Agreement.

## 7. ATTORNEYS' FEES

Each party hereto shall bear all attorneys' fees and costs arising from the actions of its own counsel in connection with this Litigation, the Agreement, and all other related matters.

## 8. FULL KNOWLEDGE

In entering into this Agreement, the undersigned expressly warrant and represent that before executing the Agreement, they have fully informed themselves of its terms, conditions, and effects; that in making this Agreement, they have had the benefit of advice of counsel of their own choosing; and that these terms are fully understood and voluntarily accepted by them. Each Party and signatory to this Agreement represents that he, she, or it freely and voluntarily enters into this Agreement without any degree of duress or compulsion from any source.

## 9. WARRANTY OF CAPACITY TO EXECUTE AGREEMENT

The undersigned signatories on behalf of the State represent and warrant that they have carefully read this Agreement, they are the duly authorized and appointed representatives of the State, and they have the full right, power, and authority to execute this Agreement on behalf of and to bind the Releasing Parties. The undersigned McKesson signatory represents and warrants that he is authorized as a result of appropriate company action to execute this Agreement.

## 10. GOVERNING LAW

This Settlement Agreement is entered into in the State of West Virginia, and shall be construed and interpreted in accordance with its laws.

DEF_WV_Trial_00002364

DEF-WV-02150.00010

## 11. CONSTRUCTION AND INTENT

None of the Parties to this Agreement may be considered the drafter of this Agreement or of any included provision for the purpose of any statute, case law, or rule of construction that would or might cause any provision to be construed against the drafter. This Agreement shall be construed and interpreted to effectuate the Parties' intent, which is to completely resolve the Litigation as to the Parties and Releasors' claims against McKesson.

## 12. JURISDICTION AND VENUE

Any action or proceeding brought in state court seeking to enforce any provision of, or based on any right arising out of, this Agreement shall be brought in the Circuit Court of Boone County, West Virginia, and each Party hereby consents to the jurisdiction of such court (and of the appropriate appellate courts) in any such action or proceeding.

## 13. ADDITIONAL DOCUMENTS AND COMPLIANCE WITH ORDERS

The Parties agree to cooperate fully, execute any and all supplementary documents, and take all additional actions which may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement.

## 14. PROTECTIVE ORDERS

The Parties acknowledge that protective orders govern the production of documents used in connection with the Litigation and agree that they and their attorneys shall comply with all such orders, including without limitation the elements of such orders that address the handling of documents upon the conclusion of litigation.

## 15. ENTIRE AGREEMENT AND SUCCESSORS IN INTEREST

This Agreement, comprising thirteen (13) pages (including signature page), constitutes the entire agreement between or among the Parties with regard to the matters set forth herein and shall

DEF_WV_Trial_00002365

DEF-WV-02150.00011

be binding upon and inure to the benefit of the Parties hereto, jointly and severally, and the executors, administrators, personal representatives, heirs, successors, and assigns of each. The Parties acknowledge and agree that by entering into this Agreement, they are not relying on any payments, promises, or representations other than those expressly set forth in this Agreement.

16. **MODIFICATION**

No modifications, amendments, or changes to this Agreement shall be binding or enforceable unless reduced to writing and signed by all Parties.

17. **SEVERABILITY**

Should any of the provisions of this Agreement be held invalid or illegal by a court of competent jurisdiction after exhaustion of all rights of appeal, such invalidity or illegality shall not invalidate the whole of this Agreement, but, rather that Agreement shall be construed as if it did not contain the invalid or illegal part, and the rights and obligations of the Parties shall be construed and enforced accordingly.

18. **EXECUTION IN COUNTERPART**

This Agreement may be executed in counterparts, each of which shall constitute an original and all of which shall constitute one and the same Agreement. The Parties agree that facsimile or electronic signatures shall be deemed as effective as originals.

[SIGNATURE PAGE BELOW]

AGREED TO BY:

**ATTORNEY GENERAL OF WEST VIRGINIA**

By: Paul Anthony Martin
Chief Deputy Attorney General

DATED this 1 day of MAY, 2019.

**WEST VIRGINIA DEPARTMENT OF MILITARY AFFAIRS AND PUBLIC SAFETY**

By: Jeff S. Sandy
Its Secretary

Dated this 1 day of May, 2019.

**WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES**

By: Bill J. Crouch
Its Secretary

Dated this 1st day of May, 2019.

**MCKESSON CORPORATION**

By: Michele Lau
Its Corporate Secretary

Dated this 1 day of May, 2019.

DEF_WV_Trial_00002367

DEF-WV-02150.00013