# Joint Policy Statement on Pain Management at the End of Life

### Rationale

The West Virginia Boards of Examiners for Registered Professional Nurses, Medicine, Osteopathy, and Pharmacy (hereinafter the Boards) recognize that:

- inadequate treatment of pain for patients at end-of-life is a serious health problem affecting thousands of patients every year;
- fear about dying in pain is the number one concern of West Virginians and all Americans facing the end of life;[1]
- principles of quality healthcare practice dictate that the people of the State of West Virginia have access to appropriate and effective pain relief; and
- the appropriate application of up-to-date knowledge and treatment modalities can serve to improve the quality of life for those patients who suffer from pain at the end of life as well as reduce the morbidity associated with untreated or undertreated pain.

Insufficient pain control may result from health care professionals' lack of knowledge about pain management or an inadequate understanding of addiction. Fears of investigation or sanction by federal, state, and local regulatory agencies may also result in inadequate treatment of pain. ***Therefore, this statement has been developed to clarify the Boards' position on adequate pain control and to address misperceptions health care professionals may have, specifically as related to the use of controlled substances for patients with terminal illness, to alleviate health care professional uncertainty and to ensure better pain management.*** This statement is not intended to define complete or best practice, but rather to communicate what the Boards consider to be within the boundaries of professional practice.

It is the position of the Boards that nurses, physicians, and pharmacists (hereinafter healthcare professionals) under their respective jurisdictions shall provide adequate pain control as a part of quality practice for all patients who experience pain as a result of terminal illness. Accordingly, all health care professionals who are engaged in treating terminally ill patients are obligated to become knowledgeable about effective methods of pain assessment and treatment as well as statutory requirements for prescribing, administering, and dispensing controlled substances.

This statement applies explicitly and solely to pain management at the end of life. It creates no presumption regarding appropriate or inappropriate pain management in other circumstances.

---

[1] West Virginia Initiative to Improve End-of-Life Care. A Report of the Values of West Virginians and Health Care Professionals' Knowledge and Attitudes. January 2000, p. 3; Steinhauser, et al. Factors considered important at the end of life by patients, families, physicians, and other care providers. JAMA 2000;284:2476-2482.

DEF_WV_Trial_00008052

DEF-WV-02414.00001


DEF-WV-02414

## Definitions

"Adequate pain control" means pain management that reduces a patient's moderate or severe pain to a level of mild pain or no pain at all, as reported by the patient.

"Terminal illness" means the medical condition of a patient who is dying from an incurable, irreversible disease as diagnosed by a treating physician.

## Collaboration among the Healthcare Team

Communication and collaboration among members of the healthcare team and with the patient and family are essential to achieve adequate pain control in end-of-life care. Within this interdisciplinary framework for end-of-life care, effective pain management should include at a minimum:

- thorough documentation of all aspects of the patient's assessment and care;
- a working diagnosis and therapeutic treatment plan including pharmacologic and non-pharmacologic interventions;
- regular and documented evaluation of response to the interventions and, as appropriate, revisions to the treatment plan;
- evidence of communication among care providers;
- education of the patient and family; and,
- a clear understanding by the patient, the family and healthcare team of the treatment goals.

## Management of Pain

The management of pain should be based upon current knowledge and research and may include the use of both pharmacologic and non-pharmacologic modalities. Pain should be assessed and treated promptly and the quantity and frequency of pain medication doses should be adjusted according to the intensity and duration of the pain. Health care professionals should recognize that tolerance and physical dependence are normal consequences of sustained use of opioid analgesics and are not synonymous with addiction.

The Boards are obligated under the laws of the State of West Virginia to protect the public health and safety. The Boards recognize that inappropriate prescribing, administering, and dispensing of controlled substances, including opioid analgesics, may lead to drug diversion and abuse by individuals who seek them for other than legitimate medical use. Health care professionals should be diligent in preventing the diversion of drugs for illegitimate purposes. While not in any way minimizing the severity of this problem, the Boards recognize that governmental policies to prevent the misuse

2

of controlled substances should not interfere with their appropriate use for the legitimate medical purpose of providing effective relief of pain at the end of life.

Health care professionals should not fear disciplinary action from the Boards for prescribing, administering, or dispensing controlled substances, including opioid analgesics, for a legitimate medical purpose and in the usual course of professional practice. All such prescribing must be established with clear documentation of unrelieved pain and in compliance with applicable state or federal law.

### Physicians

The West Virginia Boards of Medicine and Osteopathy judge the validity of prescribing based on the physician's treatment of the patient and on available documentation, rather than on the quantity and frequency of prescribing. To facilitate communication between health care professionals, physicians should write on the prescription for a controlled substance for a terminally ill patient the diagnosis "terminal illness." The goal is to control the patient's pain for its duration while effectively addressing other aspects of the patient's functioning, including physical, psychological, social, and spiritual dimensions. The West Virginia Management of Intractable Pain Act sets forth the conditions under which physicians may prescribe opioids without fear of discipline. This act states "that in a case of intractable pain involving a dying patient, the physician discharges his or her professional obligation to relieve the dying patient's intractable pain and promote the dignity and autonomy of the dying patient, even though the dosage exceeds the average dosage of a pain-relieving controlled substance" (West Virginia Code §30-3A-1 *et seq*). This entire act is attached to this statement. Because, by law, West Virginia physicians have a professional and ethical obligation to control the pain of dying patients, the West Virginia Board of Medicine regards inadequate control of pain as a possible basis for professional discipline.[2] The West Virginia Board of Osteopathy acknowledges and accepts that osteopathic physicians have the professional and ethical obligation to control the pain of dying patients.

### Nurses

The nurse is often the healthcare professional most involved in the on-going pain assessment, implementation of the prescribed pain management plan, evaluation of the patient's response to pain medications, and adjustment of the amount of medication administered based on patient status. To accomplish adequate pain control, the physician's prescription must provide dosage ranges and frequency parameters within which the nurse may titrate medication to achieve adequate pain control. Consistent with the scope of professional nursing practice (Title 19, Series 10), which includes prime consideration of comfort and safety for all patients, the registered professional nurse is accountable for implementing the pain management plan utilizing his or her knowledge and documented assessment of the patient's needs. The nurse has the authority to adjust the amount of medication administered within the dosage and frequency ranges stipulated by the treating physician and according to established

---

[2] American Medical Association Code of Medical Ethics. Opinions 2.20, 2.21, and 2.211.

3

protocols of the healthcare institution or agency. However, the nurse does not have the authority to change the medical pain management plan. When adequate pain control is not being achieved under the currently prescribed treatment plan, the nurse is responsible for reporting such findings to the treating physician and documenting this communication. The West Virginia Management of Intractable Pain Act sets forth the conditions under which nurses may administer opioids without fear of discipline.

### **Pharmacists**

With regard to pharmacy practice, West Virginia has no quantity restrictions on dispensing controlled substances including those in Schedule II. This fact is significant when utilizing the federal rule and state law that allow the partial filling of Schedule II prescriptions for up to 60 days for patients who are terminally ill or in a long-term care facility. In these situations it would minimize expenses and unnecessary waste of drugs if the physician would note on the prescription that the patient is terminally ill and specify partial filling may be appropriate. The pharmacist may then dispense smaller quantities of the prescription to meet the patient's needs up to the total quantity authorized. Government-approved labeling for dosage level and frequency can be useful as guidance for patient care. Health professionals may, on occasion, determine that higher levels are justified in specific cases. Federal and state rules also allow the facsimile transmittal of an original prescription for Schedule II drugs for hospice patients. As an exception to the general rule that prescriptions for Schedule II drugs must be in writing and signed by the physician, in an emergency, a pharmacist may dispense a Schedule II pain-relieving controlled substance upon an oral prescription, provided that the quantity dispensed is limited to the amount adequate to treat the patient during the emergency, and a written prescription is supplied to the pharmacy within 7 days following the oral prescription. Pharmacy rules also allow the emergency refilling of prescriptions in Schedules III, IV, and V. The West Virginia Management of Intractable Pain Act sets forth the conditions under which pharmacists may dispense opioids without fear of discipline.

Originally Adopted March 12, 2001
Re-adopted May 10, 2010

WEST VIRGINIA BOARD OF MEDICINE

_____
John A. Wade, Jr., M.D., President

_____
Catherine Slemp, M.D., M.P.H., Secretary

Also approved by:
WV Board of Examiners for Registered Professional Nurses—March 2, 2001
WV Board of Osteopathy—January 24, 2001
WV Board of Pharmacy—February 12, 2001

DEF_WV_Trial_00008055

DEF-WV-02414.00004

## CHAPTER 30.  PROFESSIONS AND OCCUPATIONS.
## ARTICLE 3A.  MANAGEMENT OF INTRACTABLE PAIN.

### §30-3A-1.  Definitions.

For the purposes of this article, the words or terms defined in this section have the meanings ascribed to them. These definitions are applicable unless a different meaning clearly appears from the context.

(1) An "accepted guideline" is a care or practice guideline for pain management developed by a nationally recognized clinical or professional association or a specialty society or government-sponsored agency that has developed practice or care guidelines based on original research or on review of existing research and expert opinion. An accepted guideline also includes policy or position statements relating to pain management issued by any West Virginia board included in chapter thirty of the West Virginia Code with jurisdiction over various health care practitioners. Guidelines established primarily for purposes of coverage, payment or reimbursement do not qualify as accepted practice or care guidelines when offered to limit treatment options otherwise covered by the provisions of this article.

(2) "Board" or "licensing board" means the West Virginia Board of Medicine, the West Virginia Board of Osteopathy, the West Virginia Board of Registered Nurses or the West Virginia Board of Pharmacy.

(3) "Nurse" means a registered nurse licensed in the State of West Virginia pursuant to the provisions of article seven of this chapter.

(4) "Pain" means an unpleasant sensory and emotional experience associated with actual or potential tissue damage or described in terms of such damage.

(5) "Pain-relieving controlled substance" includes, but is not limited to, an opioid or other drug classified as a Schedule II through V controlled substance and recognized as effective for pain relief, and excludes any drug that has no accepted medical use in the United States or lacks accepted safety for use in treatment under medical supervision including, but not limited to, any drug classified as a Schedule I controlled substance.

(6) "Pharmacist" means a registered pharmacist licensed in the State of West Virginia pursuant to the provisions of article five of this chapter.

(7) "Physician" means a physician licensed in the State of West Virginia pursuant to the provisions of article three or article fourteen of this chapter.

### §30-3A-2. Limitation on disciplinary sanctions or criminal punishment related to management of pain.

(a) A physician is not subject to disciplinary sanctions by a licensing board or criminal punishment by the state for prescribing, administering or dispensing pain-relieving controlled substances for the purpose of alleviating or controlling pain if:

DEF_WV_Trial_00008056

DEF-WV-02414.00005

(1) In the case of a dying patient experiencing pain, the physician practices in accordance with an accepted guideline as defined in section one of this article and discharges his or her professional obligation to relieve the dying patient's pain and promote the dignity and autonomy of the dying patient; or

(2) In the case of a patient who is not dying and is experiencing pain, the physician discharges his or her professional obligation to relieve the patient's pain, if the physician can demonstrate by reference to an accepted guideline that his or her practice substantially complied with that accepted guideline. Evidence of substantial compliance with an accepted guideline may be rebutted only by the testimony of a clinical expert. Evidence of noncompliance with an accepted guideline is not sufficient alone to support disciplinary or criminal action.

(b) A registered nurse is not subject to disciplinary sanctions by a licensing board or criminal punishment by the state for administering pain-relieving controlled substances to alleviate or control pain, if administered in accordance with the orders of a licensed physician.

(c) A registered pharmacist is not subject to disciplinary sanctions by a licensing board or criminal punishment by the state for dispensing a prescription for a pain-relieving controlled substance to alleviate or control pain, if dispensed in accordance with the orders of a licensed physician.

(d) For purposes of this section, the term "disciplinary sanctions" includes both remedial and punitive sanctions imposed on a licensee by a licensing board, arising from either formal or informal proceedings.

(e) The provisions of this section apply to the treatment of all patients for pain, regardless of the patient's prior or current chemical dependency or addiction. The board may develop and issue policies or guidelines establishing standards and procedures for the application of this article to the care and treatment of persons who are chemically dependent or addicted.

### §30-3A-3. Acts subject to discipline or prosecution.

(a) Nothing in this article shall prohibit disciplinary action or criminal prosecution of a physician for:

(1) Failing to maintain complete, accurate, and current records documenting the physical examination and medical history of the patient, the basis for the clinical diagnosis of the patient, and the treatment plan for the patient;

(2) Writing a false or fictitious prescription for a controlled substance scheduled in article two, chapter sixty-a of this code; or

(3) Prescribing, administering, or dispensing a controlled substance in violation of the provisions of the federal Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§801, *et seq.* or chapter sixty-a of this code; or

DEF_WV_Trial_00008057

DEF-WV-02414.00006

(4) Diverting controlled substances prescribed for a patient to the physician's own personal use.

(b) Nothing in this article shall prohibit disciplinary action or criminal prosecution of a nurse or pharmacist for:

(1) Administering or dispensing a controlled substance in violation of the provisions of the federal Comprehensive Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §§801, *et seq.* or chapter sixty-a of this code; or

(2) Diverting controlled substances prescribed for a patient to the nurse's or pharmacist's own personal use.

### §30-3A-4. Construction of article.
This article may not be construed to legalize, condone, authorize or approve mercy killing or assisted suicide.

DEF_WV_Trial_00008058

DEF-WV-02414.00007