

5603.013.02  McKesson (Order to Show Cause)

# UNITED STATES DEPARTMENT OF JUSTICE
# DRUG ENFORCEMENT ADMINISTRATION

In the Matter of                    )
                                    )
    McKesson Corporation            )
                                    )
                                    )

## PLEADINGS
## VOLUME I

| NO. | DATE | FILED BY | DESCRIPTION |
|-----|------|----------|-------------|
| 1 | 8/4/06 | DEA | Order to Show Cause |
| 2 | 9/1/06 | HPM | Request for a Hearing |
| 3 | 9/11/06 | DEA | Order for Prehearing Statements |
| 4 | 10/3/06 | DEA | Government's Prehearing Statement |
| 5 | 10/23/06 | DEA | Ruling on Requested Extension |
| 6 | 10/23/06 | HPM | Respondent's Motion for Extension of Time to File Prehearing Statement |
| 7 | 10/27/06 | HPM | Respondent's Motion for a Second Extension of Time to File Prehearing Statement |
| 8 | 10/27/06 | DEA | Ruling on Requested Extension |
| 9 | 11/3/06 | HPM | Prehearing Statement |
| 10 | 11/27/06 | DEA | Prehearing Ruling |
| 11 | 3/16/07 | HPM | Motion for Extension of Time to File Supplemental Prehearing Statements and Exchange Documentary Evidence |
| 12 | 3/16/07 | DEA | Ruling on Extension of Time |

PLAINTIFFS TRIAL EXHIBIT
**P-00016_00001**

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER



S603.013.02  McKesson (Order to Show Cause)

| 13 | 6/7/07 | DEA | Memorandum to Counsel (Failure of both Parties to File Supplemental Prehearing Statements – Possibly Terminating Proceedings) |
|----|--------|-----|---|
| 14 | 6/7/07 | DEA | Memorandum to Counsel (Not Terminating Proceedings) |
| 15 | 6/12/07 | DEA | Government Supplemental Prehearing Statement |
| 16 | 6/13/07 | HPM | Motion To File Supplemental Prehearing Statement; Supplemental Prehearing Statement Of McKesson Corporation |
| 17 | 6/25/07 | DEA | Consent Motion to Reschedule Hearing Dates |
| 18 | 6/26/06 | DEA | Memorandum to Counsel and Order |
| 19 | 9/10/07 | DEA | Memorandum to Counsel |
| 20 | 10/12/07 | HPM | Joint Motion for Extension of Time to File Supplemental Prehearing Statements and Exchange Documentary Evidence |
| 21 | 10/12/07 | DEA | Ruling on Requested Extension |
| 22 | 10/19/07 | DEA | Government Supplemental Prehearing Statement |
| 23 | 10/22/07 | DEA | Government Request That Subpoenas Be Issued For The Appearance And Testimony Of Witness |
| 24 | 10/22/07 | DEA | Letter re:  Subpoenas that had been Issued for Walker and Mahoney |
| 25 | 10/23/07 | DEA | Letter requesting Lists of Attendees |
| 26 | 10/23/07 | DEA | Letter re Hearing Schedule |
| 27 | 10/23/07 | DEA | Subpoenas to William Mahoney, Donald Walker |
| 28 | 10/24/07 | DEA | Letter to William Mahoney, Donald Walker Explaining Subpoena |
| 29 | 10/25/07 | DEA | Request for a Subpoena for Michael Mapes |
| 30 | 10/25/07 | DEA | Letter re Michael Mapes Subpoena |
| 31 | 10/26/07 | DEA | Settlement Offer |
| 32 | 11/1/07 | DEA | Letter re Copies of Transcript |
| 33 | 11/7/07 | DEA | Letter requesting List of Attendees |
| 34 | 11/7/07 | DEA | Letter re Hearing Schedule |
| 35 | 11/19/07 | HPM | Letter:  Re Proposed Settlement |
| 36 | 11/19/07 | DEA | Letter:  Re Proposed Settlement |
| 37 | 11/23/07 | DEA | Order: Request for Stay Granted (November 19, 2007) |
| 38 | 11/23/07 | DEA | Order: Request for Stay Granted (November 20, 2007) |
| 39 | 12/17/07 | DEA | Memorandum to Counsel re Settlement Negotiations |
| 40 | 3/7/08 | HPM | Consent Motion to Stay Administrative Hearing and Proceedings |

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496307

P-00016_00002

 

5603.013.02 McKesson (Order to Show Cause)

| 41 | 3/7/08 | DEA | Order: Hearing for 3/10-12/08 cancelled and Proceedings Stayed Indefinitely |
| 42 | 5/1/08 | DEA | Letter from Linden Barber Authorizing Changes as Agreed Upon by the Six USA's Offices (signed) |
| 43 | 5/5/08 | DEA | Settlement and Release Agreement and Administrative Memorandum of Agreement |
| 44 | 6/2/08 | DOJ | Subpoena to Garry Adam |
| 45 | 6/6/08 | HPM | Joint Motion to Terminate |
| 46 | 6/6/08 | DEA | Order Terminating Proceedings |

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER



**U. S. Department of Justice**
Drug Enforcement Administration

*www.dea.gov*                                 Washington, D.C. 20537

AUG 0 4 2006

IN THE MATTER OF

McKesson Corporation
dba McKesson Drug Company
1515 West Bella Vista Street
Lakeland, Florida 33805

## ORDER TO SHOW CAUSE

PURSUANT to Sections 303 and 304 of the Controlled Substances Act, Title 21, United States Code, Sections 823 and 824,

NOTICE is hereby given to afford McKesson Drug Company of Lakeland, Florida (McKesson-Lakeland), an opportunity to Show Cause before the Drug Enforcement Administration, (DEA) at a place and time to be determined, as to why the DEA should not revoke its Certificate of Registration, PM0000771, as a distributor of controlled substances, and deny any applications for renewal or modification of such registration pursuant to 21 U.S.C. §§ 824(a)(4) and 823(b) and (e), for reason that its registration is inconsistent with the public interest, as that term is used in 21 U.S.C. § 823(b) and (d), as evidenced by, but not limited to, the following:

1.  McKesson Corporation of San Francisco, California operates numerous nationwide Distribution Centers including the facility McKesson-Lakeland, which holds a DEA registration as a distributor of controlled substances at registered premises located in Lakeland, Florida.

2.  Each person who is registered to distribute controlled substances is required to report acquisition and distribution transactions for Schedule II controlled substances and narcotic controlled substances in Schedule III. DEA utilizes the ARCOS system, which is an automated data acquisition program, for this purpose.

3.  In an April 27, 2001 policy statement, entitled, *Dispensing and Purchasing Controlled Substances Over the Internet*, 66 Fed. Reg. 21,181 (2001), DEA delineated certain circumstances in which prescribing over the Internet is unlawful. Many Internet pharmacies bypass a legitimate doctor-patient relationship, usually by use of a cursory online questionnaire or perfunctory telephone "consult" with a doctor, who has a contractual arrangement with the online pharmacy and is often paid on the basis of prescriptions issued. When the established safeguards of an authentic doctor-patient relationship are lacking, controlled substance prescription drugs can not only be misused, but also present potentially serious health risks to patients. Such rogue Internet pharmacies facilitate the easy circumvention of legitimate medical practice, and dispense

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

2

quantities of controlled substances far beyond what normal walk-in or mail order pharmacies dispense.

4. On September 1, 2005, DEA Office of Diversion Control Headquarters personnel held a briefing for corporate officials and counsel of McKesson Corporation. The presentation included information on the characteristics of Internet pharmacies and the nature of their illegal activities. The presentation included a discussion of the DEA Internet policy statement as well as identification of common practices and ordering patterns of these internet pharmacies. The briefing specifically identified problem states, including Florida, as well as problem drugs to include phentermine, alprazolam and the Schedule III narcotic- hydrocodone. DEA also identified one customer of the Lakeland facility (United Prescription Services) whose ordering practices were suspicious.

5. Subsequently, DEA officials reviewed ARCOS reports for the period October 1, 2005, to January 31, 2006, and found that seven Florida pharmacies were still acquiring extraordinary quantities of hydrocodone. Despite its knowledge of suspicious internet practices, McKesson-Lakeland was engaged in a continuing practice of supplying hydrocodone to these seven pharmacies.

6. A specific review of McKesson-Lakeland's distribution of hydrocodone during the month of October 2005, indicated that it had approximately distributed 4.35 million tablets of hydrocodone to 898 different pharmacies. A breakdown of these distribution practices revealed that 486 pharmacy customers received less than 2,000 tablets; 306 pharmacies received 2000-5000 tablets; and 99 pharmacies received between 5,000 and 21,200 tablets each.

7. During October 2005, the remaining seven pharmacy customers of McKesson-Lakeland, all located in the Tampa area, received the following number of hydrocodone tablets: Trelles Pharmacy (Trelles)-53,000, BiWise Drugs (Bi-Wise)-160,300, Universal RX (Universal)-254,700, United Prescription Service (United)-288,100, Accumed Rx (Accumed)-404,400, Medipharm Rx (Medipharm)-500,900, and Avee Pharmacy (Avee)-520,200.

8. A further review of ARCOS data for the full year 2005 indicated that Medipharm and Universal ranked sixth and ninth respectively in the nation for hydrocodone purchases. Furthermore, for the full year 2005, Medipharm, Universal, Avee, and United ranked number one through four for purchases of hydrocodone in the State of Florida.

9. McKesson-Lakeland submitted excessive purchase reports to DEA for the months October and November 2005. In that report, they indicated their self-imposed shipment parameters for 500 count bottles of hydrocodone in various strengths. Despite this, in October 2005 and again in November 2005, McKesson-Lakeland made six sales of hydrocodone to Accumed, Bi-Wise, and Trelles substantially in excess of these limits.

10. An analysis of ARCOS data regarding purchases made during the four month period October 2005 through January 2006, indicated that the national average and Florida average hydrocodone purchases was approximately 24,000 tablets per pharmacy. Over that same four month period, the seven Internet pharmacies received between 245,000

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

3

and 3.5 million tablets. Most of these hydrocodone tablets were acquired from McKesson-Lakeland.

11. Again, on January 3, 2006, DEA Office of Diversion Control Headquarters personnel held a meeting for corporate officials and counsel of McKesson Corporation to discuss the multi-million tablet distributions of hydrocodone to Tampa area pharmacies. At the time of the presentation, it was learned that McKesson-Lakeland had not been able to access the level of sales of generic hydrocodone products from their recordkeeping system for internal analysis.

12. DEA investigators later commenced an analysis of all reported purchases and purchase records of controlled substances to establish percentages of sales for the seven pharmacies. For the month January 2006, the percentage of sales that were hydrocodone sales for these seven pharmacies were as follows: Accumed-77.7%, Avee-79.7%, Bi-Wise-83.3%, Medipharm-87.6%, Trelles-41.3%, United-90.1%, and Universal-77%. These percentages of hydrocodone sales are clearly indicative of a large scale internet dispensing activity, and are far beyond the hydrocodone sale activities of a true walk-in pharmacy or mail order pharmacy.

The following procedures are available to McKesson-Lakeland in this matter:

1. Within 30 days after the date of receipt of this Order to Show Cause, you may file with the Deputy Administrator of the DEA a written request for a hearing in the form set forth in 21 C.F.R. § 1316.47. (See 21 C.F.R. § 1301.43(a)).

2. Within 30 days after the date of receipt of this Order to Show Cause, you may file with the Deputy Administrator a waiver of hearing together with a written statement regarding its position on the matters of fact and law involved. (See 21 C.F.R. §1301.43(c)).

3. Should you decline to file a request for a hearing or should you so file and fail to appear at the hearing, you shall be deemed to have waived the hearing and the Deputy Administrator may cancel such hearing, if scheduled, and may enter her final order in this matter without a hearing and based upon the investigative file and the record of this proceeding as it may then appear. (See 21 C.F.R. §§ 1301.43(d) and 1301.43(e)).

Correspondence concerning this matter, McKesson Corporation, should be addressed to the Hearing Clerk, Office of Administrative Law Judges, Drug Enforcement Administration, Washington, D.C. 20537.

Joseph T. Rannazzisi
Deputy Assistant Administrator
Office of Diversion Control
Drug Enforcement Administration

cc: Hearing Clerk, Office of Administrative Law Judges

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

## REQUEST FOR HEARING

Any person desiring a hearing with respect to an Order to Show Cause must, within thirty (30) days from receipt of the Order to Show Cause, file a request for a hearing in the following format:

[DATE]

Hearing Clerk
Office of the Administrative Law Judges
Drug Enforcement Administration
Washington, D.C. 20537

Dear Madam:

The undersigned, [Name of person], hereby requests a hearing in the matter of [Identification of the proceeding].

> (A) [State with particularity the interest of the person in the proceeding.]
>
> (B) [State with particularity the objections or issues, if any concerning which the person desires to be heard.]
>
> (C) [State briefly the position of the person with regard to the particular objections or issues.]
>
> (D) [Name (either registrant, applicant, or attorney), address (including street address, city, state and zip code), and telephone number (including area code) of person to whom all subsequent notices or mailings in this proceeding should be sent.]

Respectfully yours,

[Signature of registrant, applicant, or attorney]

Note: Pursuant to 21 CFR 1316.47(b), the Administrative Law Judge, upon request and showing of good cause, may grant a reasonable extension of time allowing for response to an Order to Show Cause.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496312
P-00016_00007

U.S. DEPARTMENT OF JUSTICE - DRUG ENFORCEMENT ADMINISTRATION
## RECEIPT FOR CASH OR OTHER ITEMS

| TO: (Name, Title, Address (including ZIP CODE), if applicable) | FILE NO. | G-DEP IDENTIFIER |
|---|---|---|
| MCKESSON CORPORATION D/B/A/ MCKESSON DRUG CO. | FILE TITLE | |
| | DATE 8112006 | |

DIVISION/DISTRICT OFFICE
D/I Deborah Butcher, Lillian Olmo, Kenneth Boggess
DOJ-DRUG ENFORCEMENT ADMINISTRATION
TAMPA DISTRICT OFFICE

I hereby acknowledge receipt of the following described cash or other item(s),
which was given into my custody by the above named individual.

| AMOUNT or QUANTITY | DESCRIPTION OF ITEM(S) | PURPOSE (If Applicable) |
|---|---|---|
| 1 | Executive Correspondence | |
| | Order to Show Cause dated August 4, 2006 | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

| RECEIVED BY (Signature) | NAME AND TITLE (Print or Type) |
|---|---|
| *Brian Westmoreland* | BRIAN WESTMORELAND  ASSISTANT DIST CTR. MANAGER |
| WITNESSED BY (Signature) | NAME AND TITLE (Print or Type) |
| | Colin Dillon, Warehouse Supervisor |

FORM DEA-12 (8-02) *Previous editions obsolete*          Electronic Form Version Designed in JetForm 5.2 Version

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

**REPORT OF GOVERNMENT CONTACT**     Drug Operations Manual
**Exibit 55-39**

12/8/98

**Distribution Center Name and Number:   Lakeland 195**

TO:  Vice President Distribution Operations
Director Distribution Quality

CC:

Gary Hilliard, Director of Regulatory Affairs, Arlington, TX   (fax # 817-652-7699)
Ina Trugman, Law Department, 34th Floor, San Francisco, CA

1.  Time and date of contact by government representatives:
8:25 am Friday August 11, 2006

2.  Name of government representative(s):
Kenneth Boggess, Lillian Olmo, Deborah Butcher

3.  Name of government agency, division, and address at which representative(s) work(s):
Drug Enforcement Administration
4950 W. Kennedy Blvd.
Tampa, FL   33609

4.  Purpose of contact:
Delivery of Order to Show Cause document

5.  If tax is involved, state the nature of the tax, e.g., sales or real estate:

6.  Additional comments:

Document attached

8/11/06                                              Brian Westmoreland
Date Signed                                          Signature

**ATTACH COPIES OF ANY DOCUMENTS RECEIVED OR GIVEN**

(7/2000)

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER




LAW OFFICES

# HYMAN, PHELPS & McNAMARA, P.C.

JAMES R. PHELPS
PAUL M. HYMAN
ROBERT A. DORMER
STEPHEN H. McNAMARA
ROGER C. THIES
THOMAS SCARLETT
JEFFREY N. GIBBS
BRIAN J. DONATO
FRANK J. SASINOWSKI
DIANE B. McCOLL
A. WES SIEGNER, JR.
ALAN M. KIRSCHENBAUM
DOUGLAS B. FARQUHAR
JOHN A. GILBERT, JR.
JOHN R. FLEDER
MARC H. SHAPIRO
JEFFREY N. WASSERSTEIN
DAVID B. CLISSOLD
JOSEPHINE M. TORRENTE

ROBERT T. ANGAROLA
(1945-1996)

DIRECT DIAL (202) 737-4293

700 THIRTEENTH STREET, N.W.

SUITE 1200

WASHINGTON, D. C. 20005-5929

(202) 737-5600

FACSIMILE
(202) 737-9329

www.hpm.com

Received _____9/1/06_____
Office of Administrative
Law Judge
Drug Enforcement Administration

JENNIFER B. DAVIS
KIRK L. DOBBINS*
OF COUNSEL

CASSANDRA A. SOLTIS
MICHELLE L. BUTLER
ANNE MARIE MURPHY
PAUL L. FERRARI
LARRY K. HOUCK
DARA S. KATCHER*
KURT R. KARST
CHRISTINE P. BUMP
BRIAN J. WESOLOSKI
NOELLE C. SITTHIKUL*
RIETTE VAN LAACK*
CARMELINA G. ALLIS*

*NOT ADMITTED IN DC

CHERYL F. GRAHAM, MD, FCP
REGULATORY SCIENTIST

September 1, 2006

## BY FACSIMILE/CONFIRMATION COPY BY HAND DELIVERY

Helen Farmer
Hearing Clerk
Office of the Administrative Law Judges
Drug Enforcement Administration
U.S. Department of Justice
600 Army-Navy Drive
Arlington, Virginia 22202

Re:     Order to Show Cause, McKesson Corporation dba McKesson Drug Company,
        Lakeland, Florida

Dear Ms. Farmer:

        On behalf of McKesson Corporation dba McKesson Drug Company ("McKesson")
and pursuant to 21 C.F.R. §§ 1301.43(a) and 1316.47, the undersigned counsel herein
requests a hearing on the Drug Enforcement Administration's ("DEA's") Order to Show
Cause (Order) that was received at McKesson's Lakeland distribution center on August 11,
2006.

        McKesson is registered with the DEA as a distributor of controlled substances (DEA
No. PM0000771) at 1515 West Bella Vista Street, Lakeland, Florida. The Order provided
notice of DEA's intent to revoke McKesson's DEA registration and deny any pending
application for such registration, on the grounds that McKesson's continued registration is
inconsistent with the public interest.

2603 MAIN STREET
SUITE 760
IRVINE, CALIFORNIA 92614
(949) 553-7400
FAX: (949) 553-7433

4819 EMPEROR BOULEVARD
SUITE 400
DURHAM, NORTH CAROLINA 27703
(919) 313-4750
FAX: (919) 313-4751

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496315

P-00016_00010

Helen Farmer
September 1, 2006
Page 2

HYMAN, PHELPS & McNAMARA, P.C.

     McKesson herein requests a hearing, pursuant to 21 C.F.R. §§ 1301.43(a) and 1316.47, on the issue of whether the continued registration of the above referenced DEA registration is inconsistent with the public interest. McKesson denies generally the allegations raised in the Order that its registration should be revoked or denied. In particular, denies DEA's assertion that McKesson was engaged in the continuing practice of supplying hydrocodone to pharmacies whose practices were suspicious.

     All notices sent pursuant to this proceeding should be addressed to the attention of the undersigned.

                  Respectfully submitted,

                  John A. Gilbert, Jr.
                  Counsel for McKesson Corporation

cc:    Joseph T. Rannazzisi
       Deputy Assistant Administrator
       Office of Diversion Control

       Wayne Patrick
       Office of Chief Counsel (CCD)

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

## UNITED STATES DEPARTMENT OF JUSTICE
### Drug Enforcement Administration

In the Matter of

**McKesson Corporation**
**d/b/a McKesson Drug Company**

Docket No. 06-66

### ORDER FOR PREHEARING STATEMENTS

The undersigned administrative law judge has been duly designated as the presiding officer in the above-captioned case.

Upon consideration of the Order to Show Cause herein and of the response thereto requesting a hearing, it is

ORDERED that the Government, no later than 4:00 p.m. eastern daylight time on October 3, 2006, and Respondent, no later than 4:00 p.m. eastern daylight time on October 24, 2006, file with the Hearing Clerk, in triplicate, and serve on each other, a written statement containing the following sections:

1. **Issue(s).** Statement of the perceived issues.

2. **Stipulations.** Proposed stipulations and admissions of fact.

3. **Witnesses.** Names and addresses of all witnesses whose testimony is to be presented; counsel for Respondent should note that if an agent of Respondent intends to testify, that agent must be listed as a witness, and a summary of the testimony as described below must be provided.

4. **Summary of testimony.** Brief summary of the testimony of each witness (counsel for the Government to indicate clearly each and every act, omission or occurrence upon which he relies in seeking to revoke Respondent's Drug Enforcement Administration Certificate of Registration as a distributor of controlled substances and deny any pending applications for renewal or modification; counsel for Respondent to indicate clearly each and every matter as to which he intends to introduce evidence in opposition to revocation and denial). The summaries are to state what the testimony will be rather than merely listing the areas to be covered. The parties are reminded that testimony not disclosed in the prehearing statements or pursuant to subsequent rulings is likely to be excluded at the hearing.

5. **Documents.** List of all documentary evidence, including affidavits and other exhibits to be offered in evidence, specifying the number of pages in each (Government counsel to include in his list, and submit with his prehearing

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

statement, a copy of the Certificate of Registration that is the subject of the Order to Show Cause). Each exhibit is to be numbered or lettered with the designation to be used at the hearing. Any exhibit of more than five pages shall have each page numbered.

6. **Other matters.**  Any other matters that the parties consider relevant.

7. **Desired location.**  Desired situs for the hearing, with a detailed statement of reasons justifying any location other than Arlington, Virginia.

8. **Best estimate as to time required for presentation of own case.**

All proceedings will be governed by the provisions of 21 C.F.R. §§ 1316.41 - 1316.68 (2006). The date of the hearing will be set subsequent to the filing of prehearing statements.

Dated:  September 11, 2006

*Mary Ellen Bittner*
Mary Ellen Bittner
Administrative Law Judge

N.B.  Attention is directed to 21 C.F.R § 1316.45 (2006) which provides that papers are "deemed filed upon receipt by the Hearing Clerk." The Hearing Clerk's address is:

> Office of Administrative Law Judges
> Drug Enforcement Administration
> Washington, D.C. 20537

Respondent's counsel is cautioned that failure to file timely a prehearing statement as directed above may be considered a waiver of hearing and an implied withdrawal of a request for hearing. Both parties are cautioned that documents are to be filed in triplicate.

2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

This is to certify that the undersigned on September 11, 2006, caused a copy of the foregoing to be delivered via interoffice mail to counsel for the Government, Wayne Patrick, Esq., Office of Chief Counsel, Drug Enforcement Administration, Washington, D.C. 20537, and a copy to be mailed, postage paid, to counsel for Respondent, John A. Gilbert, Jr., Esq., Hyman, Phelps & McNamara, P.C., 700 Thirteenth Street, N.W., Suite 1200, Washington, D.C. 20005.

Patricia A. Medico
Secretary to Mary Ellen Bittner
Administrative Law Judge

3

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496319

P-00016_00014



CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

# UNITED STATES DEPARTMENT OF JUSTICE

## DRUG ENFORCEMENT ADMINISTRATION

| | |
|---|---|
| IN THE MATTER OF ) | |
| ) | |
| MCKESSON CORPORATION ) | Docket No. 06-23 |
| dba ) | |
| MCKESSON DRUG COMPANY ) | |
| ) | |

## GOVERNMENT'S PREHEARING STATEMENT

**Wayne M. Patrick**
**Attorney, Office of Chief Counsel**
**Drug Enforcement Administration**
**2401 Jefferson Davis Highway**
**Alexandria, Virginia 22301**
**(202) 307-8010**

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

**In the Matter of: McKesson Drug Company (Respondent)**

Pursuant to the September 11, 2006, Order of the Administrative Law Judge, the United States Department of Justice, Drug Enforcement Administration, by and through its undersigned attorney, hereby submits the following prehearing statement.

## ISSUE

Whether the Drug Enforcement Administration (DEA) should revoke McKesson Drug Company-Lakeland's (Respondent) (McKesson-Lakeland) DEA Certificate of Registration, PM0000771, as a distributor pursuant to 21 U.S.C. § 824 (a) (4), any deny pending applications for renewal or modification of said registration pursuant to 21 U.S.C. § 823 (f), for reason that its registration would be inconsistent with the public interest as that term is used in 21 U.S.C. § 823 (f).

## PROPOSED STIPULATIONS AND ADMISSIONS OF FACT

1.  Hydrocodone is a Schedule III narcotic controlled substance pursuant to 21 C.F.R. § 1308.13 (e).

## PROPOSED WITNESSES

Diversion Investigator Scott Davis
Drug Enforcement Administration
Philadelphia Field Division
Philadelphia, Pennsylvania

2

MCKMDL00496322

P-00016_00017

Diversion Investigator Shirley Scott
Drug Enforcement Administration
El Paso Field Division
El Paso, Texas

Lisa Sullivan
Staff Coordinator, E-Commerce Section
Office of Diversion Control, DEA HQS
Arlington Virginia

Diversion Investigator Michael Mapes
Chief, E-Commerce Section
Office of Diversion Control, DEA HQS
Arlington Virginia

## PROPOSED TESTIMONY

### Investigator Davis' Proposed Testimony

Investigator Scott Davis will testify that he is a Diversion Investigator with the DEA Philadelphia Field Division. He was assigned to participate in investigations involving the distribution of controlled substances to and from various internet pharmacy operations in the Tampa, Florida vicinity.

He will testify that McKesson Corporation of San Francisco, California operates numerous nationwide Distribution Centers including the facility McKesson-Lakeland, which holds a DEA Certificate of Registration, PM0000771, as a distributor of controlled substances at registered premises located in Lakeland, Florida.

A specific review of McKesson-Lakeland's distribution of hydrocodone during the month of October 2005, indicated that it had distributed 4.35 million tablets of hydrocodone to 898 different pharmacies. A breakdown of these

3

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496323

P-00016_00018

distribution practices revealed that 486 pharmacy customers received less than 2,000 tablets; 306 pharmacies received 2000-5000 tablets; and 99 pharmacies received between 5,000 and 21,200 tablets each.

He will testify that during October 2005, the other seven pharmacy customers of McKesson-Lakeland, all located in the Tampa area, received the following number of hydrocodone tablets: Trelles Pharmacy (Trelles)- 53,000, Bi-Wise Drugs (Bi-Wise)-160,300, Universal RX (Universal)- 254,700, United Prescription Service (United)-288,100, Accumed Rx (Accumed)- 404,400, Medipharm Rx (Medipharm)-500, 900, and Avee Pharmacy (Avee)-520,200.

He will testify that DEA investigators later commenced an analysis of all reported purchases and purchase records of controlled substances to establish percentages of purchases attributable to hydrocodone for the seven pharmacies. For the month January 2006, the percentage of purchases that were hydrocodone for these pharmacies were as follows: Accumed-77.7%, Avee-79.7%, Bi-Wise-83.3%, Medipharm-87.6%, Trelles-41.3%, United-90.1%, and Universal-77%. These percentages of hydrocodone sales are clearly indicative of a large scale internet dispensing activity, and are far beyond the hydrocodone sale activities of a true walk-in pharmacy or mail order pharmacy.

4

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496324

P-00016_00019

**Diversion Investigator Shirley Scott's Proposed Testimony**

Investigator Scott will testify that she is a Diversion Investigator assigned to DEA El Paso Field Division. She will testify as to her training, experience and background as a Diversion Investigator.

She will testify that she was assigned to conduct an investigation of retail pharmacy registrant Accumed Rx, Inc. (Accumed) located at 3104 W. Waters Street, Suite 104B, Tampa, Florida 33614.

She will testify that on September 21, 2005, DEA Tampa, Florida Diversion Investigators visited Accumed. A discussion with management indicated that the pharmacy processed no walk-in prescriptions and utilized the Internet and facsimile exclusively in their dispensing business. A document review revealed that Accumed dispensed 877 nationwide prescriptions issued over two days by various doctors located in Puerto Rico and Florida. The inspection also showed that Accumed had over 700,000 dosage units of hydrocodone products in inventory. A review of records indicated that Accumed obtained predominantly a single controlled substance from multiple distributors. This practice has been observed in some cases as a method to evade the traditional methods used by DEA to monitor sales data from a retail pharmacy.

She will testify that Accumed dispensed more than fifty times as much hydrocodone as the average Florida retail pharmacy.

She will testify that in February 2006, DEA conducted an interview of a Florida physician who purportedly issued prescriptions to facilitate Accumed's

5

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496325

P-00016_00020

She will testify that these seven pharmacies in 2006 were all ranked among the highest distributors of hydrocodone in the State of Florida, and in several cases among the highest in the nation.

**Diversion Investigator Michael Mapes' Proposed Testimony**

Investigator Mapes will testify that he is a Diversion Investigator and the Chief of the DEA HQS Office of Diversion Control, E-Commerce Section. He will testify as to his training, experience and background as a Diversion Investigator and supervisor.

He will testify that The Controlled Substances Act (CSA) establishes a "closed system" of distribution that regulates the movement of controlled substance prescription medications from importation or manufacture through their delivery to the ultimate user patient via the dispensing, administering or prescribing pursuant to the lawful order of a practitioner. The regulations implementing the CSA explicitly describe the parameters of a lawful prescription as follows:

> "A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. 21 C.F.R. § 1306.04 (a)".

Prescriptions issued not in the "usual course of professional practice" are not "prescriptions" for purposes of the CSA and individuals issuing and filling such purported prescriptions are subject to the penalties for violating the CSA's

8

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496326

P-00016_00021

controlled substances provisions. CSA regulations establish certain responsibilities not only on individual practitioners who issue prescriptions for controlled substances, but also on pharmacists who fill them. A pharmacist's "corresponding responsibility" regarding the proper dispensing of controlled substances is explicitly described in 21 C.F.R. § 1306.04(a).

He will testify that in an April 21, 2001 policy statement, entitled, *Dispensing and Purchasing Controlled Substances Over the Internet*, 66 Fed. Reg. 21,181 (2001), DEA delineated certain circumstances in which prescribing over the Internet is unlawful. The policy provides, inter alia, that a controlled substance should not be issued or dispensed unless there was a bona fide doctor/patient relationship. Such a relationship required that the patient has a medical complaint, a medical history be taken, a physical examination performed, and some logical connection exists between the medical complaint, the medical history, the physical examination, and the drug prescribed. The policy statement specifically explained that the completion of "a questionnaire that is then reviewed by a doctor hired by the Internet pharmacy could not be considered the basis for a doctor/patient relationship . . ." Id., at 21, 182-21,183.

He will testify that DEA has observed that while some consumers use Internet pharmacies for the convenience and privacy, others, including minor children, use the anonymity of the Internet to illegally procure controlled substances. Many Internet pharmacies bypass a legitimate doctor-patient relationship, usually by use of a cursory online questionnaire or perfunctory

9

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

telephone "consult" with a doctor, who has a contractual arrangement with the online pharmacy and is often paid on the basis of prescriptions issued. When the established safeguards of an authentic doctor-patient relationship are lacking, controlled substance prescription drugs can not only be misused, but also present potentially serious health risks to patients. Such rogue Internet pharmacies facilitate the easy circumvention of legitimate medical practice.

He will testify that these internet activities typically result in the dispensing of quantities of controlled substances far beyond what normal retail walk-in or true mail order pharmacies dispense.

Mr. Mapes will testify that he concludes that seven Tampa Florida area internet pharmacy operations have been distributing controlled substances in violation of Title 21 United States Code, Sections 829 and 841 (a) (1) in that the owners, pharmacists and employees all have direct knowledge that there is no legitimate physician/patient relationship established between the purported prescribing physician and the customers who order controlled substances directly through the websites. Each of these pharmacies received hydrocodone distributions from McKesson Lakeland.

He will testify that On September 1, 2005, DEA Office of Diversion Control Headquarters personnel held a briefing for corporate officials and counsel of McKesson Corporation. The presentation included information on the characteristics of Internet pharmacies and the nature of their illegal activities. The presentation included the DEA internet policy statement as well as identification

10

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496328

P-00016_00023

of common practices and ordering patterns of these internet pharmacies. The briefing specifically identified problem states, including Florida, as well as problem drugs to include phentermine, alprazolam and the Schedule III narcotic-hydrocodone. Again, on January 3, 2006, DEA Office of Diversion Control Headquarters personnel held a meeting for corporate officials and counsel of McKesson Corporation to discuss the multi-million tablet distributions of hydrocodone to Tampa area pharmacies. At the time of the presentation, it was learned that McKesson Lakeland had not been able to access the level of sales of generic hydrocodone products from their recordkeeping system for their own internal analysis.

### Pharmacy Expert's Proposed Testimony

The Government will present the testimony of an expert in the area of pharmacy practice, who will testify regarding his or her education, background, and experience.  He or she will testify regarding the standard of practice and usual course of business observed by pharmacists and pharmacies when purchasing and dispensing controlled substances.  The expert will testify regarding the concept of corresponding responsibility attaching to pharmacists when dispensing physicians' prescriptions.

The expert will also testify regarding the seven Tampa area Internet Pharmacy's dispensing patterns with regard to the controlled substances they handled.  The expert will opine on the seven Internet pharmacy purchasing

11

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

patterns of all dangerous drugs as demonstrated by a review of distributor records and opine how this compares to known industry walk-in retail pharmacies and known industry mail order pharmacies. The expert will conclude that the seven pharmacy operations do not fit the model of a retail pharmacy and apparently is engaged in dispensing narcotics predominantly to individuals, in amounts not consistent with known demand to retail or mail order pharmacies and by use of prescription authorizations not sufficiently documented to ensure that the pharmacy meets its corresponding responsibility to ensure the substances are for legitimate therapeutic purposes and in the course of professional medical practice.

### DOCUMENTARY EVIDENCE

1. Facsimile copy of DEA Certificate of Registration (McKesson-Lakeland)

2. Copy of DEA notice in 66 Fed. Reg. 21181, dated April 27, 2001

3. Charts- Pharmacy Rankings for Hydrocodone, October 2005-Janaury 2006 (9 pages)

4. Charts- Accumed ARCOS purchases from McKesson, October 2005-Janaury 2006 (9 pages)

5. Charts- Avee ARCOS purchases from McKesson, October 2005-Janaury 2006 (9 pages)

6. Charts- Bi-Wise ARCOS purchases from McKesson, October 2005-Janaury 2006 (9 pages)

7. Charts- Trelles ARCOS purchases from McKesson, October 2005-Janaury 2006 (9 pages)

8. Charts- United ARCOS purchases from McKesson, October 2005-Janaury 2006 (9 pages)

12

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496330

P-00016_00025

9.  Charts- Universal ARCOS purchases from McKesson, October 2005- Janaury 2006 (9 pages)

10. Charts- Medipharm ARCOS purchases from McKesson, October 2005- Janaury 2006 (9 pages)

11. Chart- Accumed *Comparison of hydrocodone purchases by pharmacy October 2005 to January 2006.* ( 1 page)

12. Chart- Avee *Comparison of hydrocodone purchases by pharmacy October 2005 to January 2006.* ( 1 page)

13. Chart- Bi-Wise *Comparison of hydrocodone purchases by pharmacy October 2005 to January 2006.* ( 1 page)

14. Chart- Trelles *Comparison of hydrocodone purchases by pharmacy October 2005 to January 2006.* ( 1 page)

15. Chart- United *Comparison of hydrocodone purchases by pharmacy October 2005 to January 2006.* ( 1 page)

16. Chart- Universal *Comparison of hydrocodone purchases by pharmacy October 2005 to January 2006.* ( 1 page)

17. Chart- Medipharm *Comparison of hydrocodone purchases by pharmacy October 2005 to January 2006.* ( 1 page)

18. Charts- *State of Florida- Suppliers of Hydrocodone to Seven Florida Pharmacies October 31, 2005- January 31, 2006.* (8 pages)

19. Accumed ARCOS purchases, October 2005-Janaury 2006 (3 pages)

20. Spreadsheet-*Mc Kesson Arcos Distribution October 1-31, 2005.* (208 pages)

21. Spreadsheet-*Mc Kesson Arcos Distribution  2006.*

22. Compilation- *Mc Kesson Distribution of Hydrocodone ...to Florida Pharmacies October 1-31, 2005* (16 pages)

23. Compilation- Mc Kesson Distribution of Hydrocodone by DEA Number Sort October 1-31, 2005 (19 pages)

13

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

24.   Chart- *Mc Kesson Hydrocodone Sales October 1-31, 2005.* (2 pages)

25.   Spreadsheet-*Mc Kesson Suspicious Purchase Report,* October-November 2005. (27 pages)

26.   DEA Compilation Sheet- Erroneous DEA number Identification in reports submitted by McKesson -2006.


**OTHER MATTERS**

None


**DESIRED SITUS FOR THE HEARING:**

Washington, D.C. (Arlington, VA)


**TIME FOR PRESENTATION OF THE GOVERNMENT'S CASE**

One and one-half day, exclusive of cross-examination.


Respectfully submitted,

Wayne M. Patrick
Attorney, Office of Chief Counsel


Dated:  October 3, 2006


14

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MCKMDL00496332

P-00016_00027

## CERTIFICATE OF SERVICE

On October 3, 2006, I sent via facsimile and mailed a copy of the

foregoing, postage prepaid, to Counsel for Respondent, John A. Gilbert, Jr.,

Esq., Hyman Phelps & McNamara, P.C., 700 13th Street N.W., Washington,

D.C. 20005

Wayne M. Patrick

15

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496333

P-00016_00028

OCT-03-2006  14:42                                                    P.01/15

# CERTIFICATE OF SERVICE

On October 3, 2006, I sent via facsimile and mailed a copy of the

foregoing, postage prepaid, to Counsel for Respondent, John A. Gilbert, Jr.,

Esq., Hyman Phelps & McNamara, P.C., 700 13th Street N.W., Washington,

D.C. 20005

Wayne M. Patrick

15

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496334

P-00016_00029

10/23/2006  16:19    2023078198                    LJ                            PAGE  01/02

**U.S. Department of Justice**

Drug Enforcement Administration
Office of Administrative Law Judges
Washington, D.C. 20537
Tel. (202) 307-8188      Fax 307-8198

# FAX TRANSMISSION

**Date:**      October 23, 2006

**To:**        John A. Gilbert, Esq.
               Wayne Patrick, Esq.

**Fax:**       202-737-9329
               7-4946

**Re:**        *In the Matter of McKesson Corporation, d/b/a McKesson Drug Company*
               Docket No. 06-66

**Sender:**    Patricia Medico
               Secretary to Mary Ellen Bittner
               Chief Administrative Law Judge

---

YOU SHOULD RECEIVE 2 PAGE(S), INCLUDING THIS COVER SHEET.  IF
YOU DO NOT RECEIVE ALL THE PAGES, PLEASE CALL (202) 307-8188.

---

Please see attached "Ruling on Requested Extension."

Attachment

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496335

P-00016  00030

**UNITED STATES DEPARTMENT OF JUSTICE**
**Drug Enforcement Administration**

In the Matter of

    **McKesson Corporation**
    **d/b/a McKesson Drug Company**        Docket No. 06-66

### RULING ON REQUESTED EXTENSION

On October 23, 2006, counsel for Respondent filed a request for an extension of time to October 30, 2006, to file its prehearing statement in the above-captioned matter. Counsel for Respondent advised that counsel for the Government does not oppose the extension.

Inasmuch as it appears that no prejudice will result, Respondent's request is granted. Accordingly, Respondent may file its prehearing statement no later than 4:00 p.m. eastern standard time on October 30, 2006.

Dated:  October 23, 2006

                                       By the direction of
                                       Mary Ellen Bittner
                                       Administrative Law Judge

### CERTIFICATE OF SERVICE

This is to certify that the undersigned on October 23, 2006, caused a copy of the foregoing to be faxed and delivered via interoffice mail to counsel for the Government, Wayne Patrick, Esq., Office of Chief Counsel, Drug Enforcement Administration, Washington, D.C. 20537, and a copy to be faxed and mailed, postage paid, to counsel for Respondent, John A. Gilbert, Jr., Esq., Hyman, Phelps & McNamara, P.C., 700 Thirteenth Street, N.W., Suite 1200, Washington, D.C. 20005.

                                       Patricia A. Medico
                                       Secretary to Mary Ellen Bittner
                                       Administrative Law Judge

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

**UNITED STATES DEPARTMENT OF JUSTICE**
**Drug Enforcement Administration**

Received
Office of Administrative
Law Judge  *10/23/06*
Drug Enforcement Administration
*4:07 P.*

In The Matter of                              )
                                              )
McKesson Corporation                          )          Docket No. 06-66
d/b/a McKesson Drug Company                   )
                                              )

## RESPONDENT'S MOTION FOR EXTENSION OF TIME
## TO FILE PREHEARING STATEMENT

McKesson Corporation d/b/a McKesson Drug Company (Respondent), through

the undersigned counsel, files this motion for an extension of time to file Respondent's

Prehearing Statement in the above captioned matter.  On September 11, 2006, the

Administrative Law Judge (ALJ) issued an order requiring that the Government file its

Prehearing Statement on or before   October 3, 2006 and that Respondent file its

Prehearing Statement on or before October 24, 2006.  Respondent's counsel was served

with a copy of the Government's Prehearing Statement on October 3, 2006.

In order to ensure that Respondent is able to address all of the issues in this matter,

Respondent requests a brief extension of time until October 30, 2006 to file its Prehearing

Statement.  Respondent contacted Government counsel who represented that the

Government does not object to the request for an extension.

1

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

Respectfully submitted,

John A. Gilbert, Jr.
Hyman, Phelps & McNamara PC
700 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 737-5600
(202) 737-9329 (Fax)

Counsel for McKesson Corporation

Dated:  October 23, 2006

2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496338

P-00016_00033

## CERTIFICATE OF SERVICE

This is to certify that the undersigned, on October 23, 2006, caused a copy of the foregoing to be delivered by facsimile and by hand to The Honorable Mary Ellen Bittner U.S. Department of Justice, Drug Enforcement Administration, 600 Army Navy Drive, Arlington, Virginia, 22202, and copies to be sent by facsimile and first class mail to:

> Wayne Patrick
> Diversion and Regulatory Litigation Section
> Office of Chief Counsel
> Drug Enforcement Administration
> 600 Army-Navy Drive
> Arlington, Virginia  22202

R. Ian Kluge

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

## UNITED STATES DEPARTMENT OF JUSTICE
### Drug Enforcement Administration

| | |
|---|---|
| In The Matter of        )<br>                         )<br> McKesson Corporation    )<br> d/b/a McKesson Drug Company   ) | Docket No. 06-66 |

### RESPONDENT'S MOTION FOR A SECOND EXTENSION OF TIME TO FILE PREHEARING STATEMENT

McKesson Corporation d/b/a McKesson Drug Company (Respondent), through the undersigned counsel, files this motion for an second extension of time to file Respondent's Prehearing Statement in the above captioned matter. On September 11, 2006, the Administrative Law Judge (ALJ) issued an order requiring that the Government file its Prehearing Statement on or before October 3, 2006 and that Respondent file its Prehearing Statement on or before October 24, 2006. Respondent's counsel was served with a copy of the Government's Prehearing Statement on October 3, 2006. On October 23, 2006, Respondent requested an extension of time until October 30, 2006 to file its prehearing statement. The ALJ granted this request in an Order dated October 23, 2006.

Respondent herein requests a further extension until Friday, November 3, 2006 to submit its prehearing statement. Because of the press of other matters this week, Counsel for Respondent believes it will need additional time to make sure that it is able to

1

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496340

P-00016_00035

complete its Prehearing Statement.  Respondent contacted Government counsel, Wayne

Patrick, who stated that the Government does not object to this request for an extension.

Respectfully submitted,

John A. Gilbert, Jr.
Hyman, Phelps & McNamara PC
700 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 737-5600
(202) 737-9329 (Fax)

Counsel for McKesson Corporation

Dated:   October 27, 2006

2

MCKMDL00496341

P-00016_00036

## CERTIFICATE OF SERVICE

This is to certify that the undersigned, on October 27, 2006, caused a copy of the foregoing to be delivered by facsimile and by hand to The Honorable Mary Ellen Bittner U.S. Department of Justice, Drug Enforcement Administration, 600 Army Navy Drive, Arlington, Virginia, 22202, and copies to be sent by facsimile and first class mail to:

> Wayne Patrick
> Diversion and Regulatory Litigation Section
> Office of Chief Counsel
> Drug Enforcement Administration
> 600 Army-Navy Drive
> Arlington, Virginia  22202

> Kathleen McKinley

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER



LAW OFFICES

# HYMAN, PHELPS & McNAMARA, P.C.

JAMES R. PHELPS
PAUL M. HYMAN
ROBERT A. DORMER
STEPHEN H. McNAMARA
ROGER C. THIES
THOMAS SCARLETT
JEFFREY N. GIBBS
BRIAN J. DONATO
FRANK J. SASINOWSKI
DIANE B. McCOLL
A. WES SIEGNER, JR.
ALAN M. KIRSCHENBAUM
DOUGLAS B. FARQUHAR
JOHN A. GILBERT, JR.
JOHN R. FLEDER
MARC H. SHAPIRO
JEFFREY N. WASSERSTEIN
DAVID B. CLISSOLD
JOSEPHINE M. TORRENTE

ROBERT T. ANGAROLA
(1945-1996)

700 THIRTEENTH STREET, N.W.

SUITE 1200

WASHINGTON, D. C. 20005-5929

(202) 737-5600

FACSIMILE

(202) 737-9329

www.hpm.com

JENNIFER B. DAVIS
KIRK L. DOBBINS*
OF COUNSEL

CASSANDRA A. SOLTIS
MICHELLE L. BUTLER
ANNE MARIE MURPHY
PAUL L. FERRARI
LARRY K. HOUCK
DARA S. KATCHER*
KURT R. KARST
CHRISTINE P. BUMP
BRIAN J. WESOLOSKI
NOELLE C. SITTHIKUL*
RIËTTE VAN LAACK*
CARMELINA G. ALLIS*

*NOT ADMITTED IN DC

CHERYL F. GRAHAM, MD, FCP
REGULATORY SCIENTIST

## FACSIMILE TRANSMITTAL SHEET

The pages in this facsimile transmission are for the sole use of the individual and entity to whom they are addressed.
They may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you
are not the intended recipient or the employee or agent responsible for delivering this transmission to the intended
recipient, be aware that any disclosure, duplication, distribution, review or use of the contents of this transmission is
strictly prohibited. If you have received this transmission in error, please notify this firm immediately by collect call so
we may arrange to retrieve this transmission at no cost to you.

Tel. No.: (202) 737-5600                                    Fax No.: (202) 737-9329

| | | | |
|---|---|---|---|
| **FROM:** | John Gilbert | **DATE:** | October 27, 2006 |
| **TO:** | Honorable Mary Ellen Bittner | **FAX NO.:** | (202) 307-8198 |
| | Wayne Patrick | | (202) 307-4946 |

**NO. OF PAGES (including this page) :** 3

2603 MAIN STREET
SUITE 760
IRVINE, CALIFORNIA 92614
(949) 553-7400
FAX: (949) 553-7433

4819 EMPEROR BOULEVARD
SUITE 400
DURHAM, NORTH CAROLINA 27703
(919) 313-4750
FAX: (919) 313-4751

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496343

P-00016_00038

10/27/2006  14:40    2023078198              LJ                              PAGE  01/02

**U.S. Department of Justice**

Drug Enforcement Administration
Office of Administrative Law Judges
Washington, D.C. 20537
Tel. (202) 307-8188      Fax 307-8198

# FAX TRANSMISSION

**Date:**      October 27, 2006

**To:**        John A. Gilbert, Jr., Esq.
               Wayne M. Patrick, Esq.

**Fax:**       202-737-9329
               7-4946

**Re:**        *In the Matter of McKesson Corporation d/b/a McKesson Drug Company*

**Sender:**    Jamie L. Stulin
               Law Clerk

YOU SHOULD RECEIVE 2 PAGES, INCLUDING THIS COVER SHEET.  IF
YOU DO NOT RECEIVE ALL THE PAGES, PLEASE CALL (202) 307-8188.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496344

P-00016_00039

10/27/2006  14:40   2023078198                    LJ                              PAGE  02/02

### UNITED STATES DEPARTMENT OF JUSTICE
#### Drug Enforcement Administration

In the Matter of

**McKesson Corporation**
**d/b/a McKesson Drug Company**                    Docket No. 06-66

#### RULING ON REQUESTED EXTENSION

On October 27, 2006, counsel for Respondent filed a request for a second extension of time, to November 3, 2006, to file its prehearing statement in the above-captioned matter. Counsel for Respondent advised that counsel for the Government does not oppose the extension.

Inasmuch as it appears that no prejudice will result, Respondent's request is granted. Accordingly, Respondent may file its prehearing statement no later than 4:00 p.m. eastern standard time on November 3, 2006.

Dated:  October 27, 2006

*Janice Lee Stulic*
By the direction of
Mary Ellen Bittner
Administrative Law Judge

#### CERTIFICATE OF SERVICE

This is to certify that the undersigned, on October 27, 2006, caused a copy of the foregoing to be faxed and delivered via interoffice mail to counsel for the Government, Wayne M. Patrick, Esq., Office of Chief Counsel, Drug Enforcement Administration, Washington, D.C. 20537, and a copy to be faxed and mailed, postage paid, to counsel for Respondent, John A. Gilbert, Jr., Esq., Hyman, Phelps & McNamara, P.C., 700 Thirteenth Street, N.W., Suite 1200, Washington, D.C. 20005.

*Janice Lee Stulic*
Jamie L. Stulin
Law Clerk to Mary Ellen Bittner
Administrative Law Judge

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496345

P-00016_00040

## UNITED STATES DEPARTMENT OF JUSTICE
### Drug Enforcement Administration

In the Matter of

**McKesson Corporation**
**d/b/a McKesson Drug Company**

Docket No. 06-66

### RULING ON REQUESTED EXTENSION

On October 27, 2006, counsel for Respondent filed a request for a second extension of time, to November 3, 2006, to file its prehearing statement in the above-captioned matter. Counsel for Respondent advised that counsel for the Government does not oppose the extension.

Inasmuch as it appears that no prejudice will result, Respondent's request is granted. Accordingly, Respondent may file its prehearing statement no later than 4:00 p.m. eastern standard time on November 3, 2006.

Dated: October 27, 2006

*Jamie Lee Stulin*
By the direction of
Mary Ellen Bittner
Administrative Law Judge

### CERTIFICATE OF SERVICE

This is to certify that the undersigned, on October 27, 2006, caused a copy of the foregoing to be faxed and delivered via interoffice mail to counsel for the Government, Wayne M. Patrick, Esq., Office of Chief Counsel, Drug Enforcement Administration, Washington, D.C. 20537, and a copy to be faxed and mailed, postage paid, to counsel for Respondent, John A. Gilbert, Jr., Esq., Hyman, Phelps & McNamara, P.C., 700 Thirteenth Street, N.W., Suite 1200, Washington, D.C. 20005.

*Jamie Lee Stulin*
Jamie L. Stulin
Law Clerk to Mary Ellen Bittner
Administrative Law Judge

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

## UNITED STATES DEPARTMENT OF JUSTICE
## DRUG ENFORCEMENT ADMINISTRATION

Received ___11/3/06___ 3⁴⁷pm
Office of Administrative
Law Judge
Drug Enforcement Administration

In the Matter of　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　McKesson Corporation　　　　　　)　　　Docket No. 06-66
　d/b/a McKesson Drug Company　　)
　　　　　　　　　　　　　　　　)
_____)

## PREHEARING STATEMENT OF
## MCKESSON CORPORATION

John A. Gilbert, Jr.
Hyman, Phelps & McNamara PC
700 Thirteenth Street, N.W.
Suite 1200
Washington, D.C. 20005
(202) 737-5600
(202) 737-9329 (Fax)

1

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

## PREHEARING STATEMENT OF MCKESSON CORPORATION

McKesson Corporation ("McKesson") by and through the undersigned counsel, respectfully submits this prehearing statement pursuant to the Orders issued by this tribunal on September 11, 2006 and October 23, 2006.

## I.    ISSUE

1.    Whether the Drug Enforcement Administration ("DEA") has demonstrated, by a preponderance of the evidence, that Respondent's DEA Certificate of Registration (#PM0000771) as a distributor of controlled substances at its Lakeland, Florida distribution center (DC) should be revoked as inconsistent with the public interest as that term is defined under 21 U.S.C. §§ 824(a) and 823(f).

## II.    PROPOSED STIPULATIONS OF FACT

1.    Hydrocodone is a Schedule III controlled substance pursuant to 21 C.F.R. § 1308.13(e).

## III.    RESPONDENT'S WITNESSES AND SUMMARIES OF PROPOSED TESTIMONY

### A.    Witness List

1.    William Mahoney
      Distribution Center Manager
      McKesson Corporation
      1515 West Bella Vista
      Lakeland, Florida  33805

2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

2.    Colin Dilley
      Warehouse Supervisor
      McKesson Corporation
      Lakeland, Florida

3.    Cassandra Wentworth
      Computer Room Supervisor
      McKesson Corporation
      Lakeland, Florida

4.    Debra Butcher
      DEA Diversion Investigator
      Tampa, Florida

5.    Kyle Wright
      DEA Diversion Investigator
      Washington, DC

6.    Gary Hilliard
      Director of Regulatory Affairs
      McKesson Corporation

7.    Ron Bone
      McKesson Corporation
      San Francisco, California

8.    Jake Kramer
      McKesson Distribution Center Manager
      McKesson Corporation
      Denver, Colorado

9.    Donald Walker
      Senior Vice President
      McKesson Corporation
      San Francisco, California

3

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496349

P-00016_00044

B.    **Summary of Proposed Testimony**

1.    <u>**Proposed Testimony of William Mahoney**</u>

Mr. Mahoney will testify as to his background and educational experience and provide testimony about his responsibilities as the Distribution Center Manager (DCM) for the McKesson Lakeland DC.  He will testify on the policies and procedures for handling controlled substances.  Mr. Mahoney will testify that he has a BA in English from Dartmouth College and an MBA, specializing in Industrial Science, from Carnegie Mellon University.  Mr. Mahoney has worked in sales, information technology and production management positions at IBM and Morton International.  He has eight years experience in the wholesale drug distribution industry at Cardinal Health and McKesson.

a.    **Overview of the Lakeland Facility**

Mr. Mahoney will testify about the general characteristics of McKesson's DCs and specifically about the business conducted at the Lakeland DC.  [Ex. 1] He will testify that McKesson serves tens of thousands of customers nationwide. Sales of prescription drugs, including controlled substances to pharmacies vary greatly based on the size and type of customer.  The Lakeland DC serves hospitals, health clinics, pharmacies and other health care entities.  In particular, the size and other characteristics of pharmacies affect the type and amount of controlled substances purchased by a pharmacy.  The Lakeland DC serves over 2,000 customers, and about 1,700 of these customers purchase controlled substances from the facility.  The Lakeland DC distributes to customers nationwide but

4

MCKMDL00496350

P-00016_00045

primarily to customers in Florida, Georgia and Alabama. The average monthly sales of health care products for this facility exceeds $250 million. About 15 percent of these sales involve controlled substances. Mr. Mahoney will testify that the Lakeland DC recently increased the number of customers that it serves because of requirements mandated by recent changes in federal and state drug pedigree laws. The drug pedigrees are required for all prescription drugs including controlled substances. The Lakeland DC is equipped with the necessary systems to accurately document and produce drug pedigree documentation for its customers.

Mr. Mahoney will testify as to the personnel responsible for compliance with federal and state regulations regarding controlled substances. Mr. Mahoney will describe the roles and responsibilities of employees who receive and handle controlled substances. He will testify that the Lakeland facility employs about 160 employees. Of these 20 employees are involved in the receipt, handling, security and distribution of controlled substances. Background checks and employee drug testing are conducted on all employees with access to controlled substances. These employees are also provided training on policy and procedures for handling controlled substances, including state and DEA requirements. [Ex. 2] A written DEA Policies and Procedures Manual is made available to all employees to ensure compliance with these requirements.

The facility also employs a warehouse supervisor, who is responsible for all activities in the controlled substance vault and cage. Mr. Mahoney and the warehouse supervisor are responsible for all activities conducted with controlled

5

MCKMDL00496351

P-00016_00046

substances. [Ex. 3] Mr. Mahoney will testify that monthly meetings are conducted with all controlled substances staff to review procedures and discuss ways to improve procedures to ensure safe handling of controlled substances and compliance with state and federal requirements.

He will testify as to the physical security at the facility and the procedures followed to ensure security of controlled substances stored at the facility. On a monthly basis, the Lakeland DC processes thousands of transactions involving controlled substances, including the receipt, storage and distribution to customers. For example, looking at two month period from August 2006 to September 2006, the Lakeland DC averaged 85,155 invoiced lines of controlled substances and sales of over 264,000 pieces (i.e. bottles) of controlled substances per month. This compares to over 1.1 million invoiced lines for all health care products.

Mr. Mahoney will testify that he believes that the Lakeland DC has maintained a strong record of compliance with DEA and state requirements. Mr. Mahoney will testify that the Lakeland DC has not been previously cited by DEA for any compliance violations. The last audit DEA conducted was October 24, 2001. Agents Miguel Soler and Theresa Garnett audited five items and found zero discrepancies. [Ex. 4] No security, reporting or recordkeeping violations were noted. He will testify that this is significant given the volume of controlled substances handled by the facility.

6

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496352

P-00016_00047

Mr. Mahoney will testify that the Lakeland DC has voluntarily cooperated with DEA in prior investigations and has provided DEA with reports and information upon request numerous times since he took over the facility in 2001. Mr. Mahoney will provide examples of McKesson's cooperation with DEA during this time which includes providing ad hoc reports to DEA upon request.

**b.      Verification of Customers**

Mr. Mahoney will testify as to the procedures used by the Lakeland DC to establish new customer accounts and to verify that its customers are appropriately licensed. He will testify that customers are required to go through a thorough financial check before any new account is opened. [Ex. 5] The Lakeland DC employs five (5) sales representatives who handle independent accounts and seven (7) sales representatives who handle hospital and other types of health care entities. The sales representatives are trained to require that new customers submit the appropriate state and federal licenses before any shipments are made to new accounts. Mr. Mahoney will testify that this information is verified at the Lakeland DC and customers cannot receive controlled substances until the DC has verified that a current state and federal license are on file. A tickler file is maintained to track expiration dates.

**c.      Recordkeeping and Reporting Systems**

Mr. Mahoney will testify that the Lakeland DC employs two (2) individuals to handle electronic recordkeeping and reporting requirements. These individuals, Cassandra Wentworth and Adam Voytek, are responsible for generating ARCOS

7

MCKMDL00496353

P-00016_00048

reports and maintaining other data required by DEA regulations. Mr. Mahoney will testify that the Lakeland DC has recently improved these systems and increased focus on accuracy of the ARCOS and other DEA recordkeeping and reporting systems. He will discuss the reports generated on a daily, monthly and quarterly basis (e.g., the "DU 45" report) that enable the Lakeland facility to monitor sales of controlled substances. [Ex. 6] He will discuss the improved procedures for review of controlled substance exception reports.

Mr. Mahoney will discuss the policies and procedures used by the Lakeland DC to file reports of higher than average volume for controlled substances. There reports are generally labeled as "suspicious order" reports. Mr. Mahoney will testify as to his understanding of the basis for these reports. He will also testify as to the distinction between reports involving higher than average volumes and reports or investigations where the Lakeland DC has specific concerns about a customer or order involving controlled substances. He will discuss the criteria for the reports established based on information provided by DEA on historical averages of purchases by customers. Mr. Mahoney will testify about prior reports submitted to DEA about customers that have purchased in excess of historical averages. Mr. Mahoney will testify as to DEA's response to these reports.

Mr. Mahoney will testify about the Lakeland DC's relationship with DEA and voluntary cooperation with DEA in prior investigations. He will testify as to his prior response to subpoenas issued by DEA. He will testify that the Lakeland

8

MCKMDL00496354

P-00016_00049

DC has provided reports to DEA on an ad hoc basis without requiring a subpoena or notice of inspection.

He will discuss procedures that Lakeland DC uses to follow-up with customers on potential suspicious orders. For example, the Lakeland DC received a notice from McKesson's Director of Regulatory Affairs that DEA had identified Direct Pharmacy as an Internet pharmacy. The pharmacy was required to complete an Internet questionnaire. [Ex. 7] The Lakeland DC immediately terminated sale of any controlled substances to this facility until it completed its investigation. He will testify that Direct Pharmacy called the Lakeland DC and requested a meeting to show that the pharmacy was conducting a legitimate business. The Lakeland DC also received a telephone call from the Orlando DEA Field Office asking why the Lakeland DC had stopped selling to Direct Pharmacy. The Lakeland DC explained to the DEA Orland office that this action was based on information received from DEA headquarters. Employees from the Lakeland DC (Brian Westmoreland and Heather Harris) visited Direct Pharmacy in June 2006. Based on this visits and the notice received from DEA, McKesson decided not to reopen the account for controlled substances.

### d.    Distribution Procedures in Case of Emergencies

Mr. Mahoney will testify that because of its location the Lakeland DC is often required to take extraordinary measures to ensure that customers receive an uninterrupted supply of medicines, including controlled substances. This includes authorizing customers to purchase larger amounts of drugs than normal in

9

MCKMDL00496355
P-00016_00050

anticipation of storms as happened when Hurricane Katrina devastated Florida and the gulf states on August 25, 2005 and Hurricane Rita caused extensive damage in Florida on September 20, 2005. The most relevant example was on October 19, 2005, when the Lakeland DC received reports from the National Hurricane Center that Hurricane Wilma was due to hit over the weekend and could be a category 5 strength storm. The Lakeland DC called customers, urging them to order heavily in preparation for the event that it might not be able to reach them on Monday and for sometime thereafter.

e.    **Hydrocodone Sales**

Mr. Mahoney will discuss the sales of hydrocodone products to customers. He will testify that the DC has over 100 customers that purchase hydrocodone products most of which are pharmacies. [Ex. 8] Mr. Mahoney will testify that sales of hydrocodone-containing drugs (including Norco and Vicodin) represent less than a half percent (.5%) total sales of prescription drugs for the facility. He will testify as to the amounts purchased by many of these customers and the frequency of such purchases. [Ex. 9]

Mr. Mahoney will testify as to the due diligence completed for each of the seven pharmacies identified in DEA's order to show cause:  Accumed, Avee, Bi-Wise, Medipharm, Trelles, United prescription Services and Universal RX. He will testify that the Lakeland DC documented that each of the pharmacies maintained at all relevant times the appropriate state, federal and DEA registrations as retail pharmacies. He will testify as to the responses received from

10

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496356

P-00016_00051

each pharmacy from the Internet questionnaires sent to these pharmacies on dispensing of controlled substances.

Mr. Mahoney will testify the Lakeland DC opened the Accumed account on May 25, 2005.  He will testify as to the steps used to verify this account.  [Ex. 10] He will discuss the controlled substances purchased by this facility.  [Ex. 11-13] He will also testify as to the information received from this account in response to the Internet questionnaire.  [Ex. 14]

Mr. Mahoney will testify the Lakeland DC opened the Avee Pharmaceutical account on February 2, 2004.  He will testify as to the steps used to verify this account.  [Ex. 15]  He will discuss the controlled substances purchased by this facility.  [Ex. 16-18]  He will also testify as to the information received from this account in response to the Internet questionnaire.  [Ex.19]

Mr. Mahoney will testify the Lakeland DC opened the Bi-Wise Pharmacy account on in January 2003.  He will testify as to the steps used to verify this account.  [Ex. 20]  He will discuss the controlled substances purchased by this facility.  [Ex. 21-23]  He will also testify as to the information received from this account in response to the Internet questionnaire.  [Ex. 24]

Mr. Mahoney will testify the Lakeland DC opened the MediPharm account in October 2005.  He will testify as to the steps used to verify this account.  [Ex. 25]  He will discuss the controlled substances purchased by this facility.  [Ex. 26-28]  He will also testify as to the information received from this account in response to the Internet questionnaire.  [Ex.29]

11

MCKMDL00496357

P-00016_00052

Mr. Mahoney will testify the Lakeland DC opened the Trelles Pharmacy account in February 2006. He will testify as to the steps used to verify this account. [Ex. 30] He will discuss the controlled substances purchased by this facility. [Ex. 31-33] He will also testify as to the information received from this account in response to the Internet questionnaire. [Ex.34]

Mr. Mahoney will testify the Lakeland DC opened the United Prescription Services account in July 2004. He will testify as to the steps used to verify this account. [Ex. 35] He will discuss the controlled substances purchased by this facility. [Ex. 36-38] He will also testify as to the information received from this account in response to the Internet questionnaire. [Ex.39]

Mr. Mahoney will testify the Lakeland DC opened the Universal Rx account in October 2005. He will testify as to the steps used to verify this account. [Ex. 40] He will discuss the controlled substances purchased by this facility. [Ex. 41-43] He will also testify as to the information received from this account in response to the Internet questionnaire. [Ex. 44]

Mr. Mahoney will testify that on October 3, 2005, the Lakeland facility received a telephone call from DEA Diversion Investigator (DI) Debra Butcher of DEA Tampa Field Office. Ms. Butcher informed Mr. Mahoney that a potential customer, Lexus Pharmacy, is a "suspicious" pharmacy and that the Lakeland DC needs to follow procedures for ensuring that it is not distributing products in violation of the law and regulations. Ms. Butcher requested that the Lakeland DC notify Ms. Butcher as to the action that the Lakeland DC intends to take. Ms.

12

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

Butcher stated that she expected that these telephone calls would become a regular part of the interaction between DEA and the Lakeland DC. Mr. Mahoney will testify that McKesson declined to open Lexus Pharmacy as a customer based on this conversation. He will also testify that Ms. Butcher later notified the Lakeland DC that Lexus had agreed to stop the "offensive behavior," and that DEA had no objections to Lakeland DC doing business with them. McKesson declined to open the account.

Mr. Mahoney will also testify that on November 21, 2005, DI Butcher contacted the Lakeland DC and requested an Internet checklist for Avee Pharmacy. He will testify that she contacted the Lakeland DC again on November 22, 2005 to request a progress report. At that time Ms. Butcher stated that she had inspected the Avee facility and found its business to be "questionable." Mr. Mahoney will testify that he notified McKesson management about this issue immediately.

Mr. Mahoney will testify that on November 22, 2005, as a result of a decision made by Donald Walker, Senior Vice President of Distribution Operations, the Lakeland DC dramatically reduced sales to six pharmacies. Mr. Mahoney will testify that he was aware that DEA had provided the names of the six pharmacies to McKesson as "pharmacies of concern" through outside counsel. Initially these pharmacies were reduced to only 300 dosage units of hydrocodone per day. Mr. Mahoney will further testify as to the steps taken to monitor future sales to these pharmacies on a daily basis. He will testify as to internal procedures

13

MCKMDL00496359

P-00016_00054

employed by the Lakeland DC to monitor drug strength and quantity.  Mr. Mahoney will testify that the Lakeland DC had not received any prior information that any of these pharmacies were involved in unlawful dispensing of controlled substances.

Mr. Mahoney will testify that on November 28, 2005, he contacted DI Butcher by telephone to collaborate with DEA on its need for information on excessive purchases (that is, the "DU-45" report) and determine what information DEA needed about certain customers.  Mr. Mahoney will testify that Ms. Butcher was unclear as to the exact amount of controlled substance orders that would indicate an issue regarding dispensing of controlled substances.  However, she stated that DEA was not generally interested in reports about hospitals, large mail order, or chains—only independents, and perhaps some closed-door pharmacies. She stated that in regard to possible unlawful dispensing: "we know it when we see it."

Mr. Mahoney will testify that on November 29, 2005 he began to receive complaints from all of the pharmacies whose orders had been significantly reduced.  He will testify that he called DI Butcher to discuss the confusion and complaints coming from customers over the limited quantities, however, DI Butcher did not return his telephone call.  [Ex. 45]

Mr. Mahoney will also testify that on November 29, 2005, the Lakeland DC received a report from Pete Pardo, a senior sales representative about some of the pharmacies in question.  Pete Pardo had conducted a due diligence audit at five

14

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496360

P-00016_00055

of the six pharmacies where the Lakeland DC had reduced sales of hydrocodone. Mr. Pardo had used the Internet questionnaire developed by McKesson as well as additional questions provided by McKesson about its business. Based on these responses, Mr. Walker agreed to increase the daily sales to these customers to 2,000 dosage units. This amount was still significantly lower than the prior purchases by these pharmacies.

Mr. Mahoney will also testify that on November 29, 2005 at about 3:15pm, he called DI Butcher and informed her that the Lakeland DC was limiting quantities to the six pharmacies but raising the limit to 2000 units per day. [Ex. 46] Mr. Mahoney will testify that Ms. Butcher stated that Michael Mapes was the best source of information on "levels and limits." Mr. Mahoney will also testify that she told him that how much the Lakeland DC was selling "is our business."

Mr. Mahoney will testify that after November 28, 2005 he continued to receive telephone calls from the six affected pharmacies and many claimed that they had been inspected by DEA and been cleared. Mr. Mahoney will testify that he did not take their word for it but instead on December 8, 2005 contacted DI Butcher to confirm their statements. [Ex. 47] DI Butcher told Mr. Mahoney that DEA had inspected some of these pharmacies but DEA did not give them an all clear. Mr. Mahoney will testify that the Lakeland DC kept these sales restrictions in place.

Mr. Mahoney will testify that in early December 2005, the Lakeland DC provided additional guidance to its sales representatives including a list of

15

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496361

P-00016_00056

customers with high purchases. [Ex. 48] He will testify that the sales staff were instructed to review all of these accounts. He will also testify that on December 21, 2005, additional notices were sent to sales staff regarding high volume accounts. [Ex. 49] A revised questionnaire to be used with new accounts was provided to sales staff.

Mr. Mahoney will testify about information he received that the accounts that McKesson had reduced were receiving products from other distributors. For example, on December 22, 2005, he was contacted by representatives of Accumed Pharmacy. These representatives provided a copy of an invoice showing that Accumed had received 30,000 dosage units in one order from Direct Dispensing of Miami. Accumed asked why McKesson could not supply the same amount as other distributors. The Lakeland DC still declined to increase sales to Accumed.

Mr. Mahoney will testify that Lakeland has implemented new procedures for monitoring pharmacy accounts and is taking all steps necessary to ensure that its pharmacy accounts are engaged in legitimate dispensing.

### 2.   Proposed Testimony of Colin Dilley

Mr. Dilley will testify as to his background and experience as the Warehouse Supervisor at the Lakeland DC. Mr. Dilley will testify as to the policies and procedures implemented by McKesson to maintain security at the Lakeland DC regarding controlled substances. [Ex. 50] He will also testify as to

16

MCKMDL00496362

P-00016_00057

the procedures for protecting against diversion at the facility including review of current and new customer accounts.

### 3.   Proposed Testimony of Cassandra Wentworth

Ms. Wentworth will testify as to her background and experience as the Computer Room Supervisor at the Lakeland DC. She will testify as to the recordkeeping and reporting systems that McKesson has implemented to track controlled substances. Ms. Wentworth will testify as to the "suspicious order" reports filed with DEA on a routine basis. [Ex. 51] She will testify that the Lakeland DC routinely submitted suspicious order reports to DEA at least once per month. She will testify that the Lakeland DC submitted a suspicious order report to DEA on October 19, 2005 identifying Avee Pharmacy as having purchased an extraordinary amount of controlled substances and again on November 10, 2005 for Accumed and Avee Pharmacy. [Ex. 52 and 53]

Ms. Wentworth will testify as to the improvements and new procedures used to generate these reports as well as improvements to the ARCOS reporting system and daily excessive order reports.

### 4.   Proposed Testimony of Debra Butcher

Diversion Investigator (DI) Butcher is expected to testify as to the conversations that she had with the Lakeland DC on questions about pharmacies in the Tampa area that may be dispensing controlled substances via the Internet. She is expected to testify about the discussion she had with the Lakeland DC about

17

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496363

P-00016_00058

Avee and that she had not had a discussion with the Lakeland DC about United Prescription Services prior to November 28, 2006. She is also expected to testify about the investigations that she conducted at several Internet pharmacies in the Tampa area and the results of her investigation. DI Butcher is also expected to testify about her conversations with the staff at DEA Washington Headquarters, including Michael Mapes and Kyle Wright, about the Lakeland DC and Tampa area pharmacies.

5.     **Proposed testimony of Kyle Wright**

Diversion Investigator Kyle Wright is expected to testify as to the meeting he had with Avee Pharmacy about its pharmacy business. Mr. Wright is also expected to testify as to the information provide by Avee about the nature of the hydrocodone prescriptions received and the scope of its pharmacy practice. Mr. Wright is also expected to testify about meetings or conversations he has had with other pharmacies in the Tampa area.

6.     **Proposed Testimony of Gary Hilliard**

Mr. Hilliard will testify as to his background and experience in law enforcement and federal and state compliance issues in working with McKesson Corporation. Mr. Hilliard received a BS in biology from the University of Texas and is a certified hazardous materials manager. For the last nine years Mr. Hilliard has been the Director of Regulatory Affairs for McKesson Corporation. He is responsible for regulatory compliance for 35 DEA registered DCs. He provides

18

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496364

P-00016_00059

support to the DCs on all federal regulatory requirements and state requirements including boards of pharmacy and departments of health.   Prior to working at McKesson, Mr. Hilliard had similar responsibilities for FoxMeyer Drug Company.

Mr. Hilliard will describe his roles and responsibilities at McKesson as the Director of Regulatory Affairs.

### a.   McKesson DEA Compliance Program

Mr. Hilliard will testify that McKesson is fully committed to working with DEA to maintain compliance at all of its DEA registered facilities.  McKesson operates 35 DEA registered DCs nationwide that handle controlled substances. McKesson has a long track record of leading the industry in compliance on DEA regulations.  Mr. Hilliard will testify that DEA compliance is part of the performance standards for McKesson's associates, well documented in McKesson's standard operating procedures (SOPs).  These are internally audited annually.  McKesson recognizes its responsibility to ensure that controlled substances are secure in the supply chain.  McKesson has collaborated with DEA both at the headquarter and field levels on such projects as the suspicious orders task force, the development and implementation of controlled substance ordering system (CSOS), and devising a reporting system for fentanyl and Palladone.

Mr. Hilliard will also testify that McKesson has been aware of the improper practices of Internet pharmacies and prior to September 2005, has worked with DEA to resolve issues regarding potential excessive purchases by its pharmacy customers, particularly in California and Colorado.  Mr. Hilliard will testify that

19

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

identifying and investigating Internet pharmacies poses unique problems for

McKesson and all distributors, especially in cases where these pharmacies are

registered with the state and DEA.  He will testify that these pharmacies are often

able to provide information on procedures used to verify practitioner's licenses.

Mr. Hilliard will testify that McKesson serves tens of thousands of customers

nationwide and sales of controlled substances and other drugs to these customers

varies greatly based on the size of the pharmacy and other characteristics of the

pharmacy's specific practice.

### b.    Suspicious Orders

Mr. Hilliard will testify as to McKesson's participation in the DEA

Suspicious Orders Task Force (SOTF).  He will testify that the SOTF was created

in cooperation with DEA in the mid to late 1990's.  [Ex. 54]  McKesson

participated in that task force to develop system parameters for screening

suspicious orders.  The Task Force established a calculation that involves a twelve

(12) month rolling average of sales based on an item number.  Mr. Hilliard will

testify that the industry and DEA agreed on a variation factor to allow for seasonal

fluctuations.  The threshold criteria established for suspicious orders involved a

factor of three (3) times the average for CII drugs and a factor of eight (8) times

average for III-V drugs and List I products.

Mr. Hilliard will testify that McKesson implemented a suspicious order

reporting system across all of its DCs.  The report automatically generates every

20

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496366

P-00016_00061

night. [Ex. 55]  The industry agreed to send immediately to DEA a report of any pharmacy that exceeded these values by fax.  Mr. Hilliard will testify that large volumes of pharmacies were exceeding these values resulting in McKesson and other distributors faxing long reports to DEA on a nightly basis.  DEA's fax machines were being inundated and DEA offices across the country notified the DCs to stop immediately.  Mr. Hilliard will testify that DEA requested that the offices stated to send the report only if something is suspicious.

McKesson thereafter devised a system to require a person at each DC to review the reports to determine if the quantities are suspicious.  If so, they are to fax the appropriate pages to DEA.  The complete month end report is printed and mailed to DEA following each month.

Mr. Hilliard will also testify that a Customer Recap Report is also generated at month end and submitted to DEA.  [Ex. 55]  This report summarizes the monthly purchases by DEA ingredient base code. This provides a bigger picture by capturing the ingredient purchased regardless of the McKesson item number.

    c.    **Compliance Programs for Internet Pharmacies**

Mr. Hilliard will testify as to McKesson's ongoing efforts to investigate Internet pharmacies.  Mr. Hilliard will testify that on October 31, 2005, he sent written Internet pharmacy guidelines to field personnel at all the DCs.

Mr. Hilliard will testify as to other examples of McKesson's efforts in this area.  For example, in January 2005, the McKesson distribution center in Southern

21

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496367

P-00016_00062

California reported potential suspicious orders from a long time pharmacy customer to DEA. McKesson was concerned because the customer, Fallbrook Pharmacy had made several large purchases. DEA later informed McKesson that they had inspected Fallbrook and had no findings. Nevertheless, McKesson made a decision on January 18, 2005 to stop sales of controlled substances to Fallbrook.

### d. Meeting with DEA on Internet Pharmacies

Mr. Hilliard will testify that on June 14, 2005, he was approached by Kyle Wright at the HDMA Conference in Florida to determine if McKesson and industry partners would be willing to participate in a meeting to work in conjunction with DEA to fight against illegal Internet activity. He will testify that he agreed to work with DEA but recommended that the best forum may be HDMA's Regulatory Affairs Committee.

Mr. Hilliard will also testify that on July 27, 2005, he was contacted by telephone by Michael Mapes and asked whether McKesson would agree to attend a meeting on Internet pharmacies. Mr. Hilliard agreed to assist DEA in these efforts.

Mr. Hilliard will testify that on September 1, 2005, he, along with Ron Bone, and outside counsel, John Gilbert, attended a meeting with DEA in Washington DC. The meeting was attended by Mike Mapes, Kyle Wright and Jim Crawford. He will testify that a binder was provided to McKesson which included a PowerPoint presentation, several court cases, DEA Internet policy, and a questionnaire. DEA outlined the issue of Internet pharmacy abuse and provided

22

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

its views of appropriate Internet pharmacy businesses, and the distributor's

responsibility to monitor and report suspicious orders. [Ex. 57] Mr. Hilliard will

testify that he was surprised by the level at which DEA believed that distributors

would have to be accountable to determine the nature of prescriptions dispensed

by pharmacies. He will testify that in his opinion this standard was inconsistent

with how the wholesale distribution industry had previously reviewed pharmacy

accounts. In particular, he will testify that he is unaware of cases where wholesale

distributors will routinely conduct audits of pharmacy accounts.

He will testify that DEA stated that Internet pharmacies in Colorado, Texas

and Florida were of particular concern. Mr. Hilliard will also testify that DEA

provided two handouts showing the excessive sales of hydrocodone by CityView

Pharmacy in Colorado and Brighton Pharmacy in Colorado. [Ex. 58] The two

pharmacies were part of a Rxplus buying group in Colorado. Mr. Hilliard will

testify that McKesson outlined its suspicious ordering process and reports. DEA

questioned whether these current reports were sufficient to capture the required

information. DEA stated that they expected the Internet DEA questionnaire to be

used as a guide by McKesson and other distributors.

     e.    **Actions taken by McKesson in response to the DEA meeting and notices**

Mr. Hilliard will testify as to the voluntary steps taken by McKesson in

response to information received from DEA about potential issues with Internet

pharmacies. Mr. Hilliard will testify that given DEA's focus on Colorado

23

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

pharmacies at the September meeting, McKesson immediately began an investigation into the pharmacies identified by DEA. Also, on September 7, 2005, the DEA Denver Field Office request sales data for Clear Springs Foothills Pharmacy.

Mr. Hilliard will testify that on September 8, 2005, Mr. Hilliard discussed the Internet pharmacy problem with Denver DCM Jack Kramer. This discussion included a discussion about CityView and Brighton Pharmacy. A follow-up phone call was held with McKesson employees on September 9, 2005. On September 11, 2005, Mr. Hilliard sent a copy of the questions provided by DEA to the Denver DC to be used with new accounts. On September 22, 2005, McKesson received news reports on DEA's suspension of Lindy's and CityView Pharmacy's registration in Denver, Colorado. All controlled substance sales to these two accounts were immediately terminated.

Mr. Hilliard will also testify that on September 27, 2005, McKesson received an e-mail from Kyle Wright and Mike Mapes on the suspension of the DEA registration for Crown Point Pharmacy and Sky Ridge Pharmacy. Both were located in Denver, Colorado. Mr. Hilliard immediately notified Jake Kramer, of the Denver DC. All controls were halted to this account.

Mr. Hilliard will testify that McKesson did not immediately focus on Florida pharmacies after the September 1, 2005 meeting because it appeared from the data provided to McKesson that Colorado was the immediate problem. However, McKesson did initiate a program to develop a computer system to run

24

MCKMDL00496370

P-00016_00065

reports of hydrocodone sales in other parts of the country, including Florida, to determine if there were any problems in any other states. [Ex. 59]

Mr. Hilliard will testify that McKesson restricted sales to six pharmacies in Florida on November 28, 2006. He was aware that McKesson notified Michael Mapes of DEA through outside counsel that McKesson had restricted orders to six pharmacies: Accumed, Avee, Bi-Wise, Medipharm-Rx, United, and Universal Rx. Mr. Hilliard will testify that within a few days he received an e-mail from DEA that had been sent to all major distributors noting that a Florida distributor had restricted sales to Accumed, Avee, Bi-wise, Medipharm-Rx, United, and Universal Rx.

Mr. Hilliard will also testify that he was made aware that McKesson received letters from outside counsel for some of the six pharmacies threatening legal action if McKesson did fill orders for controlled substances.

Mr. Hilliard will testify that McKesson continues to cooperate with DEA on compliance issues and has acted aggressively when it has received information from DEA about Internet pharmacies. Mr. Hilliard will testify that such information is transmitted to all DCs. The DCs are requested to review their customer's lists and take appropriate action if a suspect company is identified. For example:

- On August 22, 2005, McKesson received an e-mail stating a distributor has stopped selling to some pharmacies in TX and FL. No specific pharmacies were named. This alert was sent out to all DCs.

25

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

- On August 26, 2005, McKesson received an e-mail about the suspension of two Florida DEA registrations: Americare Health Solutions and Trinity Health Care.  McKesson determined it did not serve these pharmacies.

- On December 12, 2005, the Conroe, TX DC  notes high orders for several accounts including Aspen Pharmacy.  Mr. Hilliard spoke with the DCM, Jon Cox, regarding the necessary due diligence and DEA's expectations.  Sales managers are to utilize questionnaire with selected accounts.

- On February 16, 2006, Lakeland performed Internet survey on a pharmacy called: "Save on Rx."  As a result of the audit the Lakeland DC stopped filling controlled substance orders.

- On March 7, 2006, the Lakeland DC terminated delivery of controls to Pharmacy One Pro Specialty and Direct Pharmacy, after receiving notification from DEA.

- On March 8, 2006, the Landover DC reported Newcare Pharmacy to DEA for suspicious orders.  DEA stated they are working on this pharmacy.

- On April 12, 2006, Mr. Mapes sent an e-mail to McKesson about CRJ Pharmacy, Florida.  CRJ had applied to do business with McKesson but the account was rejected.

26

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

- In March 2006, the McKesson Omaha DC, using the Internet questionnaire, temporarily stopped selling to a local pharmacy, Walker Pharmacy.

Mr. Hilliard will also testify as to McKesson's investigation into allegations by DEA of erroneous DEA registration numbers contained in ARCOS reports submitted to DEA.

### 7.   Proposed Testimony of Ron Bone

Ron Bone will testify as to his background and experience and his position as a vice president at McKesson Corporation. Mr. Bone will testify as to his responsibilities at McKesson Corporation and the functions of his office.

Mr. Bone will testify as to the actions taken by McKesson following the meeting with DEA on September 1, 2006. In addition to Mr. Hilliard's testimony, Mr. Bone will state that he also noted at that meeting that DEA mentioned a Florida pharmacy, United Prescription Services, as a pharmacy that DEA had some concerns about. However, DEA did not provide any printouts for this pharmacy and he will testify that he did not consider this pharmacy a priority.

Mr. Bone will testify about McKesson's investigation into the two Colorado pharmacies identified by DEA as receiving large quantities of hydrocodone. He will testify as to discussions with DEA's Denver Field Office and the DCM at McKesson's Denver DC.

27

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

Mr. Bone will testify that beginning October 3, 2005, he instructed Sharon Mackarness to begin working on creating sales reports based on DEA criteria. He will testify that McKesson ran reports for several regions around the country including Florida, Texas and Colorado. [Ex. 60 and 61] He will also testify that these report regions were later expanded to include the Northeast region. In some cases, data from the reports were used to perform additional due diligence investigations. For example, the first extraction of sales data indicated that several customers in the Memphis, Tennessee area showed purchases that were higher than the average volume. Based on a follow-up review it was determined that these pharmacies were not involved in the Internet pharmacy business.

Mr. Bone will testify that as a result of the information provided by DEA on November 22, 2005, McKesson reviewed the reports that had been generated in September and October 2005 on all of the Lakeland DC accounts. He will testify that it was determined that the report failed to pick up all of the generics of hydrocodone and thus understated the number of purchases being made by these accounts.

### 8.    Testimony of Jake Kramer

Mr. Kramer will testify as to his background and experience as the DCM at McKesson's Denver DC. He will testify about his discussions with the Denver DEA office in September and October of 2005 about Brighton Pharmacy and CityView Pharmacy. He will also testify as to the actions taken by the Denver DC

28

MCKMDL00496374

P-00016_00069

as a result of these discussions. He will testify that on October 7, 2005, the Denver DC reported a suspicious order from Foothills Pharmacy to the Denver DEA Field Office. [Ex. 62] DEA requested in writing the report of suspicious order, form of monitoring, and copies of daily purchases. He will testify that the Denver DC stopped sales of controlled substances to this customer until the issue was resolved.

Mr. Kramer will also testify that Brighton Pharmacy became an issue again for the Denver DC in the spring of 2006 because of the fact that Brighton Pharmacy and another pharmacy, Western Pharmacy, were owned by the same individual. He will testify that Denver DC discontinued doing business with Western States after receiving information from DEA that they were dispensing prescriptions via the Internet. He will testify that on February 13, 2006, the Colorado Board of Pharmacy requested information about distributions to Western Pharmacy. [Ex. 63] On March 2, 2006, the Denver DEA interviewed employees of the McKesson Denver DC. He will testify that he informed DEA that McKesson had stopped selling controls to Brighton and Western States.

Mr. Kramer will testify that he learned on April 5, 2006, that Western States' DEA registration was reissued. He will testify that on April 10, 2006, Brighton Pharmacy attempted to order controls for Western State Pharmacy. The Denver DC's audit system flagged this order and it was cancelled. He will testify that this information was provided to DEA.

29

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

Mr. Kramer will also testify that he was informed on April 18, 2006 that Brighton Pharmacy and Western Pharmacy threatened to open an account with another major wholesaler, costing McKesson a 20 year account for controlled substances. McKesson continued to work with the Denver DEA office and did not re-open the account because DEA could not provide any information that the issues had been clarified. He will testify as to his knowledge of the current status of the DEA registrations for Brighton and Western Pharmacy.

9.     **Proposed Testimony of Donald Walker**

Mr. Walker will testify as to his education and background. Mr. Walker will testify that he is the Senior Vice President for Distribution Operations. Mr. Walker has 26 years of experience the wholesale distribution industry and nine years of experience in law enforcement. Mr. Walker has a BS in Zoology from the University of California and master's degree in Public Administration from Golden Gate University. Mr. Walker will testify as to his responsibilities at McKesson Corporation.

Mr. Walker will testify that McKesson has led the industry in the delivery of medicines and healthcare products to pharmacies, hospitals and other healthcare entities for over 173 years. A Fortune 16 corporation, McKesson delivers vital pharmaceuticals, medical supplies and health information technology solutions that touch the lives of more than 100 million patients in every healthcare setting. McKesson purchases pharmaceutical products from more than 450 manufacturers

30

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

and supplies over 75,000 customer sites across America. Each week, McKesson delivers over $1 billion worth of pharmaceuticals, or one-third of all medicines used in North America, to healthcare providers in every state. Consequently, McKesson understands the critical importance of medication safety and the need to protect the integrity of the pharmaceutical distribution network. As the largest pharmaceutical distributor in North America, McKesson has an unwavering commitment to the safe, efficient and cost-effective distribution of pharmaceutical products

Mr. Walker will testify that he was initially notified about DEA concern about Internet pharmacies after the meeting with DEA on September 1, 2006. He will testify that McKesson management took DEA's concern very seriously. Additionally, discussions on the appropriate next steps were reviewed and included running regional sales reports based on the criteria provided by DEA. At the September meeting, DEA identified several Colorado pharmacies by name. Upon notification that DEA had suspended the registrations of these pharmacies, McKesson immediately terminated the authority for these Colorado pharmacies to order controlled substances from McKesson.

McKesson has also distributed educational information on Internet pharmacies to Operations and Sales personnel. The materials included DEA's expectations, a checklist questionnaire, and data received during the September 1st meeting at DEA Headquarters. Using the DEA questionnaire, sales personnel for

31

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496377

P-00016_00072

all of the McKesson distribution centers reviewed their customers to determine if those customers were operating over the Internet.

Mr. Walker will testify that he was notified on November 21, 2006 by outside counsel that DEA was extremely concerned about excessive distribution of hydrocodone products to six specific pharmacies in the Tampa, Florida area. He will testify that based on the information provided by DEA he made an immediate decision to significantly reduce sales to these customers. Although McKesson did not have any information at the time that these pharmacies were not engaged in the legitimate distribution of drugs, he decided that McKesson should immediately investigate the matter to determine whether there were any problems with these customers.

He will testify that McKesson immediately imposed a limitation on all of these pharmacies and cut sales of hydrocodone to these pharmacies to only ten (10) percent of the prior orders. Mr. Walker will discuss this process and the additional adjustments made to these accounts. Mr. Walker will testify that McKesson received several complaints by counsel for these customers as a result of this action. McKesson also began an investigation of all of these pharmacies which included requesting additional information from the pharmacies about their customers and steps taken to verify that prescriptions filled are legitimate.

Mr. Walker will also testify that he sought a meeting with DEA as soon as possible to discuss the problem. Mr. Walker will testify that he attended a meeting

32

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496378

P-00016_00073

with DEA on January 6, 2006 to discuss DEA's concerns.  He will testify that

DEA expressed concerns about the amount of hydrocodone sold in a relatively

short period to several pharmacies in Florida.  Mr. Walker will testify that he

assured DEA that McKesson would take appropriate steps to reduce distribution to

Internet pharmacies.  Mr. Walker agreed to provide DEA with a full report of all

distributions of hydrocodone to the six pharmacies for the October – December

time period.

Immediately after McKesson's January 2006 meeting with DEA,

McKesson discontinued sales of all controlled substances to these six pharmacies.

Mr. Walker will also testify that McKesson took additional steps to improve its

compliance program.  For example, on January 10, 2006, the McKesson IT

department created a "vicodin" report to assist the DC's in monitoring excessive

orders.   Also in February 2006, a new suspicious monitoring report was created.

[Ex. 64]

Mr. Walker will testify about the steps that McKesson has taken to reduce

the potential for excessive purchases of controlled substances at all of its facilities,

including the Lakeland DC.

Mr. Walker will testify that the company has distributed educational

information on Internet pharmacies to all of its Operations and Sales personnel.

The materials include a briefing on the problem of Internet pharmacies based on

33

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

the material distributed by DEA headquarters and a customer checklist and questionnaire to be used with existing and new accounts.

Mr. Walker will also testify that using the Internet questionnaire previously issued by DEA, sales personnel for all of the McKesson distribution centers have been required to review their customers to determine if those customers were operating over the Internet. All such accounts will be immediately investigated and subject to suspension and/or termination should prescriptions not be distributed for a legitimate medical purpose.

Mr. Walker will also testify that McKesson's Regulatory Affairs group will review new pharmacy accounts to ensure that the amount and type of controlled substances purchased are consistent with legitimate pharmacy practice. All DCMs will be required to request review by McKesson's Regulatory Affairs section on new accounts that place orders for controlled substances.

Mr. Walker will testify that McKesson is reviewing a policy to establish a monthly threshold for dosage forms of hydrocodone for all pharmacy customers at each of its facilities. Customers requesting to purchase more than this amount will be required to provide additional information on its dispensing practices to justify amounts above this threshold. Such information will be reviewed by McKesson Regulatory Affairs section before a customer will be authorized to purchase more than the threshold per month. McKesson will also establish thresholds for other

34

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

controlled substances purchases.  He will also testify that each McKesson DC will submit a list each quarter to the local DEA office to include any customer who places an order for hydrocodone that exceeds the threshold dosage units per month.

Mr. Walker will testify that McKesson is prepared to provide financial and other resources to assist DEA in developing an industry-wide database to educate manufacturers and distributors about issues involving Internet and mail order sales.  The objective would be to pool the resources of government and industry to facilitate the collection and dissemination of information about potential violations and improper practices by individuals and entities involved in dispensing controlled substances.

Mr. Walker will testify that McKesson's long track record with DEA indicates that its continued registration in Lakeland and at all its DCs is in the public interest.  Revocation of the Lakeland facility will serve no just purpose and could significantly harm the delivery of important medicines to a large population.

## IV.    RESPONDENT'S PROPOSED DOCUMENTARY EXHIBITS

The Respondent proposes to introduce the following documents.

Respondent may request to supplement these documents at a later date.

1.    Photographs of Lakeland DC.
2.    Copy of excerpts from Lakeland DC policies and procedures regarding the handling of controlled substances
3.    Photographs of Controlled Substances Security Cage
4.    McKesson Report of Contact with the DEA, October 2001

35

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496381

P-00016_00076

5.      Copy of relevant customer forms
6.      Copy of Sample DU-45 Report
7.      Copy of completed Internet Pharmacy questionnaire from Direct Pharmacy
8.      Spreadsheet depicting Lakeland DC customers purchasing hydrocodone for 2005 and 2006
9.      Spreadsheet on 2005 and 2006 pharmacy sales of hydrocodone
10.     Copy of Florida state pharmacy license for Accumed
11.     Copy of response to Internet questionnaire from Accumed
12.     Copy of DEA registration for Accumed
13.     Copy of spreadsheet depicting 2005 sales of controlled substances to Accumed
14.     Copy of Lakeland DC customer file for Accumed
15.     Copy of  Florida state pharmacy license for Avee Pharmacy
16.     Copy of DEA Registration for Avee Pharmacy
17.     Copy of Lakeland customer file for Avee Pharmacy
18.     Copy of Internet questionnaire from Avee
19.     Copy of Avee  spreadsheet depicting 2005 sales of controlled substances
20.     Copy of Florida state license for Bi-Wise Pharmacy
21.     Copy of DEA registration for Bi-Wise Pharmacy
22.     Copy of Lakeland DC customer file for Bi-Wise Pharmacy
23.     Copy of response of Internet questionnaire by Bi-Wise
24.     Copy of spreadsheet depicting 2005 sales of controlled substances to Bi-Wise
25.     Copy of Florida Pharmacy License for Medipharm
26.     Copy of DEA registration for Medipharm
27.     Copy of Lakeland DC customer file for Medipharm
28.     Copy of response to Internet questionnaire by Medipharm
29.     Copy of spreadsheet depicting 2005 sales of controlled substances to Medipharm
30.     Copy of Florida state pharmacy license for Trellis Pharmacy
31.     Copy of DEA registration for Trellis Pharmacy
32.     Copy of Lakeland DC customer file for Trellis Pharmacy
33.     Copy of response to Internet pharmacy questionnaire by Trellis Pharmacy
34.     Copy of  spreadsheet depicting 2005 sales of controlled substances to Trellis Pharmacy
35.     Copy of Florida state pharmacy license for United Prescription Services
36.     Copy of DEA registration for United Prescription Services
37.     Copy of Lakeland DC customer file for United Prescription Services
38.     Copy of response to Internet questionnaire from United Prescription Services

36

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

39. Copy of spreadsheet depicting 2005 sales of controlled substances to United Prescription Services
40. Copy of Florida state pharmacy license for Universal RX
41. Copy of DEA registration for Universal RX
42. Copy of Lakeland DC customer file for Universal RX
43. Copy of response to Internet questionnaire by Universal RX
44. Copy of spreadsheet depicting 2005 sales of controlled substances to Universal RX
45. Copy of DEA consultant audit for Universal RX
46. Report of Contact with DEA, November 29, 2005
47. Report of Contact with DEA, December 8, 2005
48. Notice to Sales representatives, December 2005
49. Copy of Internet questionnaire used by Lakeland DC
50. Security pictures of DEA cage.
51. Copies of suspicious order reports filed with DEA, multiple dates.
52. Copy of suspicious order reports for Avee Pharmacy and Accumed
53. Copy of suspicious order reports for Avee and Accumed
54. SOTF Report
55. DU-45 Report
56. Customer Recap Report
57. DEA Manual on Internet pharmacies
58. DEA printouts from September 1, 2205 meeting with McKesson
59. McKesson reports of hydrocodone sales in sales regions for 2005.
60. McKesson reports of controlled substance sales by region for 2005
61. McKesson reports of hydrocodone by region 2005.
62. Suspicious order report from Denver DC to Denver DEA office
63. Colorado Board of Pharmacy request to McKesson
64. Suspicious Order Report

## V.   PROPOSED VENUE

Tampa, Florida

## VI.   TIME FOR HEARING

Respondent expects its case to take approximately three days exclusive of cross examination.

37

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER



# Confirmation Report – Memory Send

Time : Nov-03-06 15:39
Tel line : 2027379329
Name : HYMAN PHELPS AND MCNAMARA

| | | |
|---|---|---|
| Job number | : | 520 |
| Date | : | Nov-03 15:34 |
| To | : | 3078198 |
| Document pages | : | 40 |
| Start time | : | Nov-03 15:34 |
| End time | : | Nov-03 15:39 |
| Pages sent | : | 40 |
| Status | : | OK |

Job number : 520 *** SEND SUCCESSFUL ***

LAW OFFICES
HYMAN, PHELPS & MCNAMARA, P.C.
700 THIRTEENTH STREET, N.W.
SUITE 1200
WASHINGTON, D. C. 20005-5929

FACSIMILE TRANSMITTAL SHEET

The pages in this facsimile transmission are for the sole use of the individual and entity to whom they are addressed. They may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient or the employee or agent responsible for delivering this transmission to the intended recipient, be aware that any disclosure, duplication, distribution, review or use of the contents of this transmission is strictly prohibited. If you have received this transmission in error, please notify this firm immediately by collect call so we may arrange to retrieve this transmission at no cost to you.
Tel. No.: (202) 737-5600 Fax No.: (202) 737-9329

FROM: John Gilbert DATE: November 3, 2006

TO: Honorable Mary Ellen Bittner FAX NO.: (202) 307-8198
Wayne Patrick (202) 307-4946

NO. OF PAGES (including this page) :

# Confirmation Report – Memory Send

Time : Nov-03-06 16:04
Tel line : 2027379329
Name : HYMAN PHELPS AND MCNAMARA

| | | |
|---|---|---|
| Job number | : | 521 |
| Date | : | Nov-03 15:49 |
| To | : | 3074946 |
| Document pages | : | 40 |
| Start time | : | Nov-03 15:49 |
| End time | : | Nov-03 16:04 |
| Pages sent | : | 40 |
| Status | : | OK |

Job number : 521 *** SEND SUCCESSFUL ***

LAW OFFICES
HYMAN, PHELPS & MCNAMARA, P.C.

FACSIMILE TRANSMITTAL SHEET

The pages in this facsimile transmission are for the sole use of the individual and entity to whom they are addressed. They may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient or the employee or agent responsible for delivering this transmission to the intended recipient, be aware that any disclosure, duplication, distribution, review or use of the contents of this transmission is strictly prohibited. If you have received this transmission in error, please notify this firm immediately by collect call so we may arrange to retrieve this transmission at no cost to you.
Tel. No.: (202) 737-5600 Fax No.: (202) 737-9329

FROM: John Gilbert DATE: November 3, 2006

TO: Honorable Mary Ellen Bittner FAX NO.: (202) 307-8198
Wayne Patrick (202) 307-4946

NO. OF PAGES (including this page) : 40

LAW OFFICES

# HYMAN, PHELPS & McNAMARA, P.C.

JAMES R. PHELPS
PAUL M. HYMAN
ROBERT A. DORMER
STEPHEN H. McNAMARA
ROGER C. THIES
THOMAS SCARLETT
JEFFREY N. GIBBS
BRIAN J. DONATO
FRANK J. SASINOWSKI
DIANE B. McCOLL
A. WES SIEGNER. JR.
ALAN M. KIRSCHENBAUM
DOUGLAS B. FARQUHAR
JOHN A. GILBERT. JR.
JOHN R. FLEDER
MARC H. SHAPIRO
JEFFREY N. WASSERSTEIN
DAVID B. CLISSOLD
JOSEPHINE M. TORRENTE

ROBERT T. ANGAROLA
(1945-1996)

700 THIRTEENTH STREET, N.W.
SUITE 1200
WASHINGTON, D. C. 20005-5929
(202) 737-5600
FACSIMILE
(202) 737-9329

www.hpm.com

JENNIFER B. DAVIS
KIRK L. DOBBINS*
OF COUNSEL

CASSANDRA A. SOLTIS
MICHELLE L. BUTLER
ANNE MARIE MURPHY
PAUL L. FERRARI
LARRY K. HOUCK
DARA S. KATCHER*
KURT R. KARST
CHRISTINE P. BUMP
BRIAN J. WESOLOSKI
NOELLE C. SITTHIKUL*
RIËTTE VAN LAACK*
CARMELINA G. ALLIS*

*NOT ADMITTED IN DC

CHERYL F. GRAHAM, MD. FCP
REGULATORY SCIENTIST

## FACSIMILE TRANSMITTAL SHEET

The pages in this facsimile transmission are for the sole use of the individual and entity to whom they are addressed. They may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If you are not the intended recipient or the employee or agent responsible for delivering this transmission to the intended recipient, be aware that any disclosure, duplication, distribution, review or use of the contents of this transmission is strictly prohibited.  If you have received this transmission in error, please notify this firm immediately by collect call so we may arrange to retrieve this transmission at no cost to you.

Tel. No.:  (202) 737-5600                                Fax No.:  (202) 737-9329

**FROM:**        John Gilbert                **DATE:**      November 3, 2006

**TO:**          Honorable Mary Ellen Bittner    **FAX NO.:**    (202) 307-8198
                 Wayne Patrick                              (202) 307-4946

**NO. OF PAGES  (including this page) :**    ~~35~~ 40

2603 MAIN STREET
SUITE 760
IRVINE, CALIFORNIA 92614
(949) 553-7400
FAX: (949) 553-7433

4819 EMPEROR BOULEVARD
SUITE 400
DURHAM, NORTH CAROLINA 27703
(919) 313-4750
FAX: (919) 313-4751

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                              MCKMDL00496386

P-00016_00081

# UNITED STATES DEPARTMENT OF JUSTICE
## Drug Enforcement Administration

In the Matter of

**McKesson Corporation**
**d/b/a McKesson Drug Company**

Docket No. 06-66

## PREHEARING RULING

On November 27, 2006, the undersigned conducted a prehearing conference by telephone with counsel for both parties. This Prehearing Ruling is made pursuant to 21 C.F.R. § 1316.55 (2006).

I. ISSUE

Whether a preponderance of the evidence establishes that Respondent's Drug Enforcement Administration registration as a distributor at its Lakeland, Florida location should be revoked because its continued registration would be inconsistent with the public interest as that term is used in 21 U.S.C. §§ 824(a) and 823(b) and (e).

II. STIPULATIONS

1. Hydrocodone is a Schedule III narcotic controlled substance pursuant to 21 C.F.R. § 1308.13(e).

III. WITNESSES

Counsel for both parties intend to call the witnesses identified in their respective prehearing statements to testify as indicated therein. No later than 4 p.m. eastern standard time on March 19, 2007, both parties are to file supplemental prehearing statements, which shall indicate any additional witnesses who will testify and detail their testimony.

Counsel should note that I generally restrict cross-examination of witnesses to matters covered on direct examination; however, if a party submits an affidavit or letter into evidence from a witness who also testifies in person, I will permit cross-examination as to matters referenced in the document even if the witness does not refer to them in direct testimony. Counsel are reminded to have all witnesses available to testify so as not to delay the proceedings. Counsel are also reminded that testimony not summarized in prehearing statements or supplements thereto may be excluded at the hearing.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

IV.  DOCUMENTS

Counsel for both parties intend to offer into evidence the documents identified in their respective prehearing statements. No later than 4:00 p.m. eastern standard time on March 19, 2007, counsel are to provide to each other copies of all documents listed in their respective prehearing statements and supplemental prehearing statements.

Both counsel are reminded that documents not listed in prehearing statements or supplements thereto or not timely supplied to the opposing party may be excluded at the hearing. At the hearing, counsel are to supply to the undersigned an extra copy of each document to be offered in evidence and/or shown to a witness. Counsel are to ensure that all documents consisting of five or more pages have all pages consecutively numbered.

V.  HEARING

Pursuant to 21 C.F.R. § 1316.44 (2006), and 21 C.F.R. § 1316.53 (2006), regulatory provisions requiring publication of the time and place of the hearing in the *Federal Register* are waived. The hearing will commence in either Tampa, Florida, or Sarasota, Florida, at 9:30 a.m. on July 10, 2007. The parties will be advised of the exact courtroom location as soon as arrangements have been completed. It is anticipated that the hearing will proceed through July 12, 2007 and will resume on July 24, 2007 and continue through July 26, 2007. Counsel are to meet the courtroom clerk in the courtroom at 9:00 a.m. on the morning of July 10, 2007, to have exhibits marked.

VI.  OTHER MATTERS

Counsel should note that this office will not accept filings by facsimile of more than twenty pages.

Dated:  November 27, 2006

Mary Ellen Bittner
Administrative Law Judge

2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

**CERTIFICATE OF SERVICE**

This is to certify that the undersigned on November 27, 2006, caused a copy of the foregoing to be delivered via interoffice mail to counsel for the Government, Wayne M. Patrick, Esq., Office of Chief Counsel, Drug Enforcement Administration, Washington, D.C. 20537, and a copy to be mailed, postage paid, to counsel for Respondent, John A. Gilbert, Jr., Esq., Hyman, Phelps & McNamara PC, 700 Thirteenth Street, N.W., Suite 1200, Washington, D.C. 20005.

*Jamie Lee Stulin*

Jamie L. Stulin
Law Clerk to Mary Ellen Bittner
Administrative Law Judge

3

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

01/19/2007 14:38 2023078198 LJ PAGE 01/04

**U.S. Department of Justice**

Drug Enforcement Administration
Office of Administrative Law Judges
Washington, D.C. 20537
Tel. (202) 307-8188     Fax 307-8198

# FAX TRANSMISSION

**Date:**      January 19, 2007

**To:**        John A. Gilbert, Jr., Esq.

**Fax:**       202-737-9329

**Re:**        *In the Matter of McKesson Corporation d/b/a McKesson Drug Company*

**Sender:**    Jamie Stulin
             Attorney Advisor

YOU SHOULD RECEIVE 4 PAGES, INCLUDING THIS COVER SHEET. IF
YOU DO NOT RECEIVE ALL THE PAGES, PLEASE CALL (202) 307-8188.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496390

P-00016_00085

## UNITED STATES DEPARTMENT OF JUSTICE
### Drug Enforcement Administration

In The Matter of )
)
**McKesson Corporation** )
**d/b/a McKesson Drug Company** )
)

Docket No. 06-66

## MOTION FOR EXTENSION OF TIME
## TO FILE SUPPLEMENTAL PREHEARING STATEMENTS
## AND EXCHANGE DOCUMENTARY EVIDENCE

McKesson Corporation (Respondent), through the undersigned counsel, files this

motion for an extension of time for the parties to file supplemental prehearing statements

and exchange documentary evidence.  Given that the hearing in this matter is not

scheduled to begin until July 10, 2007, neither party will be prejudiced by extending the

time to file this information.  Respondent requests that the ALJ provide the parties with

an extension of time until April 15, 2007 to file a supplemental prehearing statement and

to exchange documents.

Respectfully submitted,

*[signature]*

John A. Gilbert, Jr.
Hyman, Phelps & McNamara PC
700 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 737-5600
(202) 737-9329 (Fax)

Counsel for McKesson Corporation

Dated:  March 16, 2007

1

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

This is to certify that the undersigned, on March 16, 2007, caused a copy of the foregoing to be delivered by facsimile and by hand to The Honorable Mary Ellen Bittner U.S. Department of Justice, Drug Enforcement Administration, 600 Army Navy Drive, Arlington, Virginia, 22202, and copies to be sent by facsimile and first class mail to:

> Wayne Patrick
> Diversion and Regulatory Litigation Section
> Office of Chief Counsel
> Drug Enforcement Administration
> 600 Army-Navy Drive
> Arlington, Virginia  22202

Kathleen McKinley

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER



LAW OFFICES

# HYMAN, PHELPS & McNAMARA, P.C.

700 THIRTEENTH STREET, N.W.

SUITE 1200

WASHINGTON, D. C. 20005-5929

(202) 737-5600

FACSIMILE

(202) 737-9329

www.hpm.com

## FACSIMILE TRANSMITTAL SHEET

| The pages in this facsimile transmission are for the sole use of the individual and entity to whom they are addressed. They may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient or the employee or agent responsible for delivering this transmission to the intended recipient, be aware that any disclosure, duplication, distribution, review or use of the contents of this transmission is strictly prohibited. If you have received this transmission in error, please notify this firm immediately by collect call so we may arrange to retrieve this transmission at no cost to you. | |
| --- | --- |
| Tel. No.: (202) 737-5600 | Fax No.: (202) 737-9329 |

| **FROM:** | John Gilbert | **DATE:** | March 16, 2007 |
| --- | --- | --- | --- |
| **TO:** | Honorable Mary Ellen Bittner<br>Wayne Patrick | **FAX NO.:** | (202) 307-8198<br>(202) 307-4946 |

**NO. OF PAGES  (including this page) :** 3

2603 MAIN STREET
SUITE 760
IRVINE, CALIFORNIA 92614
(949) 553-7400
FAX: (949) 553-7433

4819 EMPEROR BOULEVARD
SUITE 400
DURHAM, NORTH CAROLINA 27703
(919) 313-4750
FAX: (919) 313-4751

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496393

P-00016_00088

**UNITED STATES DEPARTMENT OF JUSTICE**
**Drug Enforcement Administration**

---

In the Matter of

**McKesson Corporation**
**d/b/a McKesson Drug Company**

Docket No. 06-66

---

### RULING ON REQUESTED EXTENSION

On March 16, 2007, counsel for Respondent filed a request for an extension of time for the parties to file supplemental prehearing statements and exchange documentary evidence in the above-captioned matter. Counsel for Respondent advised in a phone conversation with this office on March 16, 2007, that counsel for the Government does not oppose the extension.

Inasmuch as it appears that no prejudice will result, Respondent's request is granted. Accordingly, both parties may file their supplemental prehearing statements and exchange documentary evidence no later than 4:00 p.m. eastern daylight time on April 16, 2007.

Dated:  March 16, 2007

_Janice Lee Stulu_
By the direction of
Mary Ellen Bittner
Administrative Law Judge

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496394

P-00016_00089

### CERTIFICATE OF SERVICE

This is to certify that the undersigned, on March 16, 2007, caused a copy of the foregoing to be faxed and delivered via interoffice mail to counsel for the Government, Wayne M. Patrick, Esq., Office of Chief Counsel, Drug Enforcement Administration, Washington, D.C. 20537, and a copy to be faxed and mailed, postage paid, to counsel for Respondent, John A. Gilbert, Jr., Esq., Hyman, Phelps & McNamara, P.C., 700 Thirteenth Street, N.W., Suite 1200, Washington, D.C. 20005.

Jamie L. Stulin
Attorney Advisor to Mary Ellen Bittner
Administrative Law Judge

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496395

P-00016_00090

03/16/2007  14:34   2023078198          LJ                              PAGE  01/03

**U.S. Department of Justice**

Drug Enforcement Administration
Office of Administrative Law Judges
Washington, D.C. 20537
Tel. (202) 307-8188     Fax 307-8198

# FAX TRANSMISSION

**Date:**     March 16, 2007

**To:**       John A. Gilbert, Jr., Esq.
              Wayne M. Patrick, Esq.

**Fax:**      202-737-9329
              7-4946

**Re:**       *In the Matter of McKesson Corporation, d/b/a McKesson Drug Company*
                  Docket No. 06-66

**Sender:**   Jamie Stulin
              Attorney Advisor to Mary Ellen Bittner
              Chief Administrative Law Judge

---

YOU SHOULD RECEIVE 3 PAGES, INCLUDING THIS COVER SHEET.  IF
YOU DO NOT RECEIVE ALL THE PAGES, PLEASE CALL (202) 307-8188.

---

Please see attached "Ruling on Requested Extension."

Attachment

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

**U.S. Department of Justice**

Drug Enforcement Administration
Office of Administrative Law Judges
Washington, D.C. 20537
Tel. (202) 307-8188 Fax 307-8198

# FAX TRANSMISSION

**Date:** June 7, 2007

**To:** John A. Gilbert, Esq.
Wayne Patrick, Esq.

**Fax:** 202-737-9329
7-4946

**Re:** *In the Matter of McKesson Corporation, d/b/a McKesson Drug Company*
Docket No. 06-66

**Sender:** Patricia Medico
Secretary to Mary Ellen Bittner
Chief Administrative Law Judge

---

YOU SHOULD RECEIVE 3 PAGE(S), INCLUDING THIS COVER SHEET. IF
YOU DO NOT RECEIVE ALL THE PAGES, PLEASE CALL (202) 307-8188.

Please see attached "Memorandum to Counsel."

Attachment

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496397

P-00016_00092

**UNITED STATES DEPARTMENT OF JUSTICE**
**Drug Enforcement Administration**

---

In the Matter of

**McKesson Corporation**
**d/b/a McKesson Drug Company**

Docket No. 06-66

---

### MEMORANDUM TO COUNSEL

In my Prehearing Ruling issued on November 27, 2006 in the above-captioned matter, I directed counsel for both parties to file supplemental prehearing statements no later than March 19, 2007. I subsequently extended that filing deadline to April 16, 2007, following a motion from Respondent. As of June 7, 2007, neither party has filed a supplemental prehearing statement.

Counsel may have until 4 p.m. eastern daylight time on June 14, 2007 to advise me why I should not terminate this proceeding so that the Deputy Administrator may issue a final order.

Dated:  June 7, 2007

*Mary Ellen Bittner*
Mary Ellen Bittner
Administrative Law Judge

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496398

P-00016_00093

## CERTIFICATE OF SERVICE

This is to certify that the undersigned on June 7, 2007, caused a copy of the foregoing to be faxed and delivered via interoffice mail to counsel for the Government, Wayne M. Patrick, Esq., Office of Chief Counsel, Drug Enforcement Administration, Washington, D.C. 20537, and a copy to be faxed and mailed, postage paid, to counsel for Respondent, John A. Gilbert, Jr., Esq., Hyman, Phelps & McNamara, P.C., 700 Thirteenth Street, N.W., Suite 1200, Washington, D.C. 20005.

Patricia A. Medico
Secretary to Mary Ellen Bittner
Administrative Law Judge

2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

06/07/2007  15:14    2023078198              LJ                                    PAGE  01/03

**U.S. Department of Justice**

Drug Enforcement Administration
Office of Administrative Law Judges
Washington, D.C. 20537
Tel. (202) 307-8188      Fax 307-8198

# FAX TRANSMISSION

| | |
|---|---|
| **Date:** | June 7, 2007 |
| **To:** | John A. Gilbert, Jr., Esq. |
| | Wayne M. Patrick, Esq. |
| **Fax:** | 202-737-9329 |
| | 7-4946 |
| **Re:** | *In the Matter of McKesson Corporation, d/b/a McKesson Drug Company* |
| | Docket No. 06-66 |
| **Sender:** | Jamie Stulin |
| | Attorney Advisor to Mary Ellen Bittner |
| | Chief Administrative Law Judge |

YOU SHOULD RECEIVE 3 PAGES, INCLUDING THIS COVER SHEET.  IF
YOU DO NOT RECEIVE ALL THE PAGES, PLEASE CALL (202) 307-8188.

Please see attached "Memorandum to Counsel."

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

**UNITED STATES DEPARTMENT OF JUSTICE**
**Drug Enforcement Administration**

In the Matter of

**McKesson Corporation**                    Docket No. 06-66
**d/b/a McKesson Drug Company**

### MEMORANDUM TO COUNSEL

Pursuant to a telephonic conference with both parties, I hereby rescind the
Memorandum to Counsel I issued on June 7, 2007, in which I instructed the parties to
advise me why I should not terminate this proceeding.

Counsel for the Government shall file an amendment to his prehearing statement
no later than 4 p.m. eastern daylight time on June 11, 2007, in which he identifies his
expert witness, if any, and details the witness' testimony.

The hearing in this matter is scheduled for July 10-12, 2007, in Tampa, Florida,
and will be continued on July 24-26, 2007, in Arlington, Virginia.

Dated: June 7, 2007

*Mary Ellen Bittner*
Mary Ellen Bittner
Administrative Law Judge

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

**CERTIFICATE OF SERVICE**

This is to certify that the undersigned on June 7, 2007, caused a copy of the foregoing to be faxed and delivered via interoffice mail to counsel for the Government, Wayne M. Patrick, Esq., Office of Chief Counsel, Drug Enforcement Administration, Washington, D.C. 20537, and a copy to be faxed and mailed, postage paid, to counsel for Respondent, John A. Gilbert, Jr., Esq., Hyman, Phelps & McNamara, P.C., 700 Thirteenth Street, N.W., Suite 1200, Washington, D.C. 20005.

Jamie L. Stulin
Attorney Advisor to Mary Ellen Bittner
Administrative Law Judge

2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496402

P-00016_00097

Activity Report — ~~ceive

```
                          Page     : 002
                          Date & Time: Jun-12-2007  10:43
                          Line 1   : 2027379329
                          Machine ID : HYMAN,PHELPS & McNAMARA, P.C.
                          Scan count :   46557 (0000B5DD)
                          Print count:  179808 (0002BE60)
                          Drum count :   20745 (00005109)
```

| Nbr. | Job | Date | Time | Duration | pgs | From | Dept.nbr | Account | Comm. code | Status |
|------|-----|------|------|----------|-----|------|----------|---------|-----------|--------|
| 708 | 497 | Jun-05 | 11:09 | 00/39 | 001 | Carpet/Air-Duct | | | EC 502 | OK |
| 709 | 498 | Jun-05 | 12:21 | 02/32 | 004 | | | | EC 512 | OK |
| 710 | 499 | Jun-05 | 14:05 | 00/49 | 002 | 3014432896 | | | EC 502 | OK |
| 711 | 500 | Jun-05 | 14:55 | 00/30 | 002 | 202-862-7171 | | | EC 602 | OK |
| 712 | 501 | Jun-05 | 15:26 | 00/48 | 001 | Via Fax | | | EC 300 | OK |
| 713 | 502 | Jun-05 | 16:06 | 00/44 | 001 | 5742166 | | | EC 502 | OK |
| 714 | 503 | Jun-05 | 18:38 | 04/05 | 004 | Via Fax | | | G3 310 | OK |
| 715 | 504 | Jun-06 | 08:50 | 00/35 | 001 | FAX | | | EC 502 | OK |
| 716 | 505 | Jun-06 | 09:17 | 00/26 | 002 | | | | EC 603 | OK |
| 717 | 506 | Jun-06 | 10:54 | 01/03 | 005 | 9145243594 | | | EC 612 | OK |
| 718 | 507 | Jun-06 | 11:01 | 00/46 | 001 | FAX | | | EC 502 | OK |
| 719 | 509 | Jun-06 | 11:55 | 01/37 | 004 | 202 371 0649 | | | EC 502 | OK |
| 720 | 510 | Jun-06 | 13:18 | 00/39 | 001 | 386 775 0673 | | | EC 502 | OK |
| 721 | 511 | Jun-06 | 13:44 | 15/22 | 004 | | | | EC 512 | OK |
| 722 | 512 | Jun-06 | 14:05 | 15/55 | 004 | | | | EC 512 | OK |
| 723 | 513 | Jun-06 | 14:22 | 03/02 | 004 | | | | EC 512 | OK |
| 724 | 514 | Jun-06 | 15:33 | 01/20 | 006 | 9193134751 | | | EX 503 | OK |
| 725 | 515 | Jun-06 | 16:26 | 01/23 | 004 | 3016815968 | | | EC 502 | OK |
| 726 | 516 | Jun-06 | 16:47 | 00/29 | 001 | (800) 208-0584 | | | EC 602 | OK |
| 727 | 517 | Jun-06 | 17:05 | 00/40 | 004 | 8065784214 | | | EC 603 | OK |
| 728 | 518 | Jun-06 | 17:35 | 00/34 | 003 | 4804832604 | | | EC 602 | OK |
| 729 | 519 | Jun-06 | 18:10 | 01/07 | 001 | 2404031417 | | | NG 612 | NG   DO |
| 730 | 520 | Jun-07 | 07:19 | 02/30 | 004 | | | | EC 302 | OK |
| 731 | 521 | Jun-07 | 09:19 | 00/55 | 003 | 7032374813 | | | EC 502 | OK |
| 732 | 522 | Jun-07 | 09:38 | 00/27 | 003 | 2023078198 | | | EC 603 | OK |
| 733 | 523 | Jun-07 | 10:35 | 02/06 | 003 | | | | EC 512 | OK |
| 734 | 525 | Jun-07 | 15:13 | 00/33 | 003 | 2023078198 | | | EC 603 | OK |
| 735 | 526 | Jun-07 | 15:14 | 00/56 | 001 | | | | EC 512 | OK |
| 736 | 528 | Jun-07 | 15:20 | 00/56 | 001 | | | | EC 512 | OK |
| 737 | 529 | Jun-07 | 16:26 | 02/16 | 005 | | | | EC 502 | OK |
| 738 | 530 | Jun-07 | 18:06 | 00/37 | 004 | 1111111111 | | | EC 603 | OK |
| 739 | 531 | Jun-07 | 19:18 | 01/00 | 001 | 757 3029435 | | | EC 500 | OK |
| 740 | 532 | Jun-08 | 11:19 | 00/44 | 002 | 2147069061 | | | EC 612 | OK |
| 741 | 534 | Jun-08 | 15:52 | 01/12 | 003 | 7033219031 | | | EC 300 | OK |
| 742 | 536 | Jun-09 | 21:36 | 01/03 | 001 | | | | EC 612 | NG   DO |
| 743 | 537 | Jun-10 | 09:32 | 01/02 | 001 | | | | EC 612 | NG   DO |
| 744 | 538 | Jun-11 | 01:02 | 00/51 | 001 | 7037906030 | | | G3 501 | OK |
| 745 | 539 | Jun-11 | 09:36 | 00/29 | 001 | 3015837757 | | | EC 502 | OK |
| 746 | 541 | Jun-11 | 11:16 | 02/02 | 006 | 9193134751 | | | EX 503 | OK |
| 747 | 542 | Jun-11 | 11:30 | 00/29 | 001 | (800) 208-0584 | | | EC 602 | OK |
| 748 | 543 | Jun-11 | 13:09 | 01/52 | 003 | | | | EC 512 | OK |
| 749 | 544 | Jun-11 | 13:30 | 01/10 | 002 | 202-862-7171 | | | EC 502 | OK |
| 750 | 545 | Jun-11 | 13:43 | 00/32 | 002 | 202-862-7171 | | | EC 602 | OK |
| 751 | 546 | Jun-11 | 14:35 | 00/56 | 003 | 2406310135 | | | EX 502 | OK |
| 752 | 547 | Jun-11 | 15:52 | 00/58 | 003 | 2026280103 | | | EC 502 | OK |
| 753 | 548 | Jun-11 | 16:40 | 00/27 | 002 | 949 553 7433 | | | EC 603 | OK |
| 754 | 549 | Jun-12 | 07:55 | 03/31 | 005 | | | | EC 302 | OK |
| 755 | 550 | Jun-12 | 08:44 | 01/58 | 007 | | | | EC 502 | OK |
| 756 | 551 | Jun-12 | 10:17 | 01/03 | 005 | 9193134751 | | | EX 503 | OK |
| 757 | 552 | Jun-12 | 10:39 | 00/40 | 001 | Fax | | | EC 502 | OK |

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496403

P-00016_00098

JAN-31-1996  17:57

P.01/07

# UNITED STATES DEPARTMENT OF JUSTICE

# DRUG ENFORCEMENT ADMINISTRATION

| | |
|---|---|
| IN THE MATTER OF )<br>)<br>MCKESSON CORPORATION )<br>dba )<br>MCKESSON DRUG COMPANY ) | Docket No. 06-23 |

## GOVERNMENT SUPPLEMENTAL PREHEARING STATEMENT

Pursuant to the June 7, 2007, Order of the Administrative Law Judge, the United States Department of Justice, Drug Enforcement Administration, by and through its undersigned attorney, hereby submits this supplement to its prehearing statement.

### PROPOSED WITNESSES

| | |
|---|---|
| Diversion Investigator Scott Davis | *[Will testify as previously noticed]* |
| Diversion Investigator Shirley Scott | *[Will testify as previously noticed]* |
| Lisa Sullivan | *[Will testify as previously noticed]* |
| Diversion Investigator Michael Mapes | *[Will testify as previously noticed]* |
| **George Van Komen, M.D.** | *[As described below]* |
| **Carmen Catizone, R.Ph.** | *[As described below* |

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496404

P-00016_00099

## PROPOSED TESTIMONY

### Staff Coordinator Lisa Sullivan's Proposed Testimony

Staff Coordinator Sullivan will testify as previously noticed.

She will further testify that a review of ARCOS data for the first four months of 2007 indicated that in January 2007 McKesson-Lakeland had provided over 68,000 dosage units of hydrocodone to the internet pharmacy operation YPM Total Care Pharmacy. YPM's DEA registration was suspended in early 2007

### Pharmacy Expert Carmen Catizone  Proposed Testimony

The Government will not present the in-person testimony of a pharmacist in the area of dispensing practice, but will present the curriculum vitae and transcript of the testimony of Dr. Catizone *In the Matter of United Prescription Services, Inc.* (United).  This testimony focuses generally on the concept of prescribing and dispensing practices, including the provision of controlled to remote patients, by doctors not otherwise practicing in that State. .

The testimony will further indicate that Dr. Catizone has previously testified in another DEA internet matter where he described the duties of pharmacist in dispensing controlled substances.  He will describe factually relevant scenarios involving the dispensing practices of the Internet pharmacies and will testify as to whether and how such practices are suspicious and indicative of potential diversion of controlled substances.

2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496405

P-00016_00100

His testimony will describe the standard of practice and usual course of business observed by pharmacists and pharmacies when purchasing and dispensing controlled substances.  He will testify regarding the concept of corresponding responsibility attaching to pharmacists when dispensing physicians' prescriptions.

He will testify regarding physicians' prescription patterns and United's corresponding dispensing patterns with regard to controlled substances and opine on Respondent's purchasing patterns of all dangerous drugs as demonstrated by a review of its distributor records and opine how this compares to known industry walk-in retail pharmacies and known industry mail order pharmacies. The expert will conclude that the internet pharmacy operation as operated by United does not fit the model of a retail pharmacy and apparently is engaged in dispensing narcotics predominantly to individuals, in amounts not consistent with known demand to retail or mail order pharmacies and by use of prescription authorizations not sufficiently documented to ensure that the pharmacy meets its corresponding responsibility to ensure the substances are for legitimate therapeutic purposes and in the course of professional medical practice.

**Medical Expert George Van Komen  [transcript of prior testimony]**

The Government will not present the in-person testimony of a medical expert in the area of prescribing practice, but will present the curriculum vitae and transcript of the testimony of Dr. Van Komen *In the Matter of Trinity Healthcare,*

3

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MCKMDL00496406

P-00016_00101

JAN-31-1996  17:57                                                          P.04/07

*Inc.* This testimony focuses generally on the concept of prescribing practices, including the provision of controlled to remote patients, by doctors not otherwise practicing in that State.

**DOCUMENTARY EVIDENCE          [AMENDED]**

1.    Facsimile copy of DEA Certificate of Registration (McKesson-Lakeland)

2.    Copy of DEA notice in 66 Fed. Reg. 21181, dated April 27, 2001

3.    Charts- Pharmacy Rankings for Hydrocodone, October 2005-Janaury 2006 (9 pages)

4.    Charts- Accumed ARCOS purchases from McKesson, October 2005-Janaury 2006 (9 pages)

5.    Charts- Avee ARCOS purchases from McKesson, October 2005-Janaury 2006 (9 pages)

6.    Charts- Bi-Wise ARCOS purchases from McKesson, October 2005-Janaury 2006 (9 pages)

7.    Charts- Trelles ARCOS purchases from McKesson, October 2005-Janaury 2006 (9 pages)

8.    Charts- United ARCOS purchases from McKesson, October 2005-Janaury 2006 (9 pages)

9.    Charts- Universal ARCOS purchases from McKesson, October 2005-Janaury 2006 (9 pages)

10.   Charts- Medipharm ARCOS purchases from McKesson, October 2005-Janaury 2006 (9 pages)

11.   Chart- Accumed *Comparison of hydrocodone purchases by pharmacy October 2005 to January 2006.* ( 1 page)

12.   Chart- Avee *Comparison of hydrocodone purchases by pharmacy October 2005 to January 2006.* ( 1 page)

4

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

JAN-31-1996  17:57                                                    P.05/07

13.  Chart- Bi-Wise *Comparison of hydrocodone purchases by pharmacy October 2005 to January 2006.* ( 1 page)

14.  Chart- Trelles *Comparison of hydrocodone purchases by pharmacy October 2005 to January 2006.* ( 1 page)

15.  Chart- United *Comparison of hydrocodone purchases by pharmacy October 2005 to January 2006.* ( 1 page)

16.  Chart- Universal *Comparison of hydrocodone purchases by pharmacy October 2005 to January 2006.* ( 1 page)

17.  Chart- Medipharm *Comparison of hydrocodone purchases by pharmacy October 2005 to January 2006.* ( 1 page)

18.  Charts- *State of Florida- Suppliers of Hydrocodone to Seven Florida Pharmacies October 31, 2005- January 31, 2006.* (8 pages)

19.  Accumed ARCOS purchases, October 2005-Janaury 2006 (3 pages)

20.  Spreadsheet-*McKesson Arcos Distribution October 1-31, 2005.* (208 pages)

21.  Spreadsheet-*McKesson Arcos Distribution  2006.*

22.  Compilation- *McKesson Distribution of Hydrocodone ...to Florida Pharmacies October 1-31, 2005* (16 pages)

23.  Compilation- McKesson Distribution of Hydrocodone by DEA Number Sort October 1-31, 2005 (19 pages)

24.  Chart- *McKesson Hydrocodone Sales October 1-31, 2005.* (2 pages)

25.  Spreadsheet-*McKesson Suspicious Purchase Report,* October-November 2005. (27 pages)

26.  DEA Compilation Sheet- Erroneous DEA number Identification in reports submitted by McKesson -2006.

27.  **McKesson-Lakeland *Master and Registration History* (7 pages)**

28.  **DEA *Memorandum* dated October 20, 2005 by Michael Mapes to J. Rannazzisi regarding McKesson meeting.  (16 pages)**

5

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496408

P-00016_00103

29. DEA *Memorandum* dated January 23, 2006 by Michael Mapes to J. Rannazzisi regarding McKesson meeting.  (3 pages)

30. ARCOS sales data for hyrocodone by McKesson-Lakeland January to April 2007. (68 pages)

31. *DEA Charts: 2006 hydrocodone purchases by 61,584 pharmacies. (5 pages)*

32. *Testimony of Carmen Catizone, April 10, 2007, In the Matter of United Prescription Services. (Pages 304 -378)*

33. *Biography/CV- Dr. Carmen Catizone (22 pages)*

34. *CV- Dr. George Van Komen*

35. *Testimony of George Van Komen, June 1, 2006, In the Matter of Trinity Healthcare Systems. (Pages 550-616)*

36. *Declaration of George Van Komen, February 22, 2006 (17 pages*

37. *William R. Lockridge, M.D. 71 Fed. Reg. 77,791 (2006)*

Respectfully submitted,

Wayne M. Patrick
Attorney, Office of Chief Counsel

Dated:  June 12, 2007

6

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496409

P-00016_00104

JAN-31-1996  17:58                                                        P.07/07

# CERTIFICATE OF SERVICE

On June 12, 2007, I sent via facsimile and mailed a copy of the

foregoing, postage prepaid, to Counsel for Respondent, John A. Gilbert, Jr.,

Esq., Hyman Phelps & McNamara, P.C., 700 13th Street N.W., Washington,

D.C. 20005

7

TOTAL P.07

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

Activity Report eceive 

```
Page        : 002
Date & Time: Jun-12-2007  10:43
Line I      : 2027379329
Machine ID  : HYMAN,PHELPS & McNAMARA, P.C.
Scan count  :   46557 (0000B5DD)
Print count : 179808 (0002BE60)
Drum count  :   20745 (00005109)
```

| Nbr. | Job | Date | Time | Duration | pgs | From | Dept.nbr | Account | Comm. code | Status | |
|------|-----|------|------|----------|-----|------|----------|---------|-----------|--------|---|
| 708 | 497 | Jun-05 | 11:09 | 00/39 | 001 | Carpet/Air-Duct | | | EC 502 | OK | |
| 709 | 498 | Jun-05 | 12:21 | 02/32 | 004 | | | | EC 512 | OK | |
| 710 | 499 | Jun-05 | 14:05 | 00/49 | 002 | 3014432896 | | | EC 502 | OK | |
| 711 | 500 | Jun-05 | 14:55 | 00/30 | 002 | 202-862-7171 | | | EC 602 | OK | |
| 712 | 501 | Jun-05 | 15:26 | 00/48 | 001 | Via Fax | | | EC 300 | OK | |
| 713 | 502 | Jun-05 | 16:06 | 00/44 | 001 | 5742166 | | | EC 302 | OK | |
| 714 | 503 | Jun-05 | 18:38 | 04/05 | 004 | Via Fax | | | G3 310 | OK | |
| 715 | 504 | Jun-06 | 08:50 | 00/35 | 001 | FAX | | | EC 502 | OK | |
| 716 | 505 | Jun-06 | 09:17 | 00/26 | 002 | | | | EC 603 | OK | |
| 717 | 506 | Jun-06 | 10:54 | 01/03 | 005 | 9145243594 | | | EC 612 | OK | |
| 718 | 507 | Jun-06 | 11:01 | 00/46 | 001 | FAX | | | EC 502 | OK | |
| 719 | 509 | Jun-06 | 11:55 | 01/37 | 004 | 202 371 0649 | | | EC 502 | OK | |
| 720 | 510 | Jun-06 | 13:18 | 00/39 | 001 | 386 775 0673 | | | EC 502 | OK | |
| 721 | 511 | Jun-06 | 13:44 | 15/22 | 004 | | | | EC 512 | OK | |
| 722 | 512 | Jun-06 | 14:05 | 15/55 | 004 | | | | EC 512 | OK | |
| 723 | 513 | Jun-06 | 14:22 | 03/02 | 004 | | | | EC 512 | OK | |
| 724 | 514 | Jun-06 | 15:33 | 01/20 | 006 | 9193134751 | | | EX 503 | OK | |
| 725 | 515 | Jun-06 | 16:26 | 01/23 | 004 | 3016815968 | | | EC 502 | OK | |
| 726 | 516 | Jun-06 | 16:47 | 00/29 | 001 | (800) 208-0584 | | | EC 602 | OK | |
| 727 | 517 | Jun-06 | 17:05 | 00/40 | 004 | 8065786214 | | | EC 603 | OK | |
| 728 | 518 | Jun-06 | 17:35 | 00/34 | 003 | 4804832604 | | | EC 602 | OK | |
| 729 | 519 | Jun-06 | 18:10 | 01/07 | 001 | 2404031417 | | | EC 612 | NG | DO |
| 730 | 520 | Jun-07 | 07:19 | 02/30 | 004 | | | | EC 302 | OK | |
| 731 | 521 | Jun-07 | 09:19 | 00/55 | 003 | 7032374813 | | | EC 502 | OK | |
| 732 | 522 | Jun-07 | 09:38 | 00/27 | 003 | 2023078198 | | | EC 603 | OK | |
| 733 | 523 | Jun-07 | 10:35 | 02/06 | 003 | | | | EC 512 | OK | |
| 734 | 525 | Jun-07 | 15:13 | 00/33 | 003 | 2023078198 | | | EC 603 | OK | |
| 735 | 526 | Jun-07 | 15:14 | 00/56 | 001 | | | | EC 512 | OK | |
| 736 | 528 | Jun-07 | 15:20 | 00/56 | 001 | | | | EC 512 | OK | |
| 737 | 529 | Jun-07 | 16:26 | 02/16 | 005 | | | | EC 502 | OK | |
| 738 | 530 | Jun-07 | 18:06 | 00/37 | 004 | 1111111111 | | | EC 603 | OK | |
| 739 | 531 | Jun-07 | 19:18 | 01/00 | 001 | 757 3029435 | | | EC 500 | OK | |
| 740 | 532 | Jun-08 | 11:19 | 00/44 | 002 | 2147069061 | | | EC 612 | OK | |
| 741 | 534 | Jun-08 | 15:52 | 01/12 | 003 | 7033219031 | | | EC 300 | OK | |
| 742 | 536 | Jun-09 | 21:36 | 01/03 | 001 | | | | EC 612 | NG | DO |
| 743 | 537 | Jun-10 | 09:32 | 01/02 | 001 | | | | EC 612 | NG | DO |
| 744 | 538 | Jun-11 | 01:02 | 00/51 | 001 | 7037906030 | | | G3 501 | OK | |
| 745 | 539 | Jun-11 | 09:36 | 00/29 | 001 | 3015837757 | | | EC 502 | OK | |
| 746 | 541 | Jun-11 | 11:16 | 02/02 | 006 | 9193134751 | | | EX 503 | OK | |
| 747 | 542 | Jun-11 | 11:30 | 00/29 | 001 | (800) 208-0584 | | | EC 602 | OK | |
| 748 | 543 | Jun-11 | 13:09 | 01/52 | 003 | | | | EC 512 | OK | |
| 749 | 544 | Jun-11 | 13:30 | 01/10 | 002 | 202-862-7171 | | | EC 502 | OK | |
| 750 | 545 | Jun-11 | 13:43 | 00/32 | 002 | 202-862-7171 | | | EC 602 | OK | |
| 751 | 546 | Jun-11 | 14:35 | 00/56 | 003 | 2406310135 | | | EX 502 | OK | |
| 752 | 547 | Jun-11 | 15:52 | 00/58 | 003 | 2028280103 | | | EC 502 | OK | |
| 753 | 548 | Jun-11 | 16:40 | 00/27 | 002 | 949 553 7433 | | | EC 603 | OK | |
| 754 | 549 | Jun-12 | 07:55 | 03/31 | 005 | | | | EC 302 | OK | |
| 755 | 550 | Jun-12 | 08:44 | 11/59 | 007 | | | | EC 502 | OK | |
| 756 | 551 | Jun-12 | 10:17 | 01/03 | 005 | 9193134751 | | | EX 503 | OK | |
| 757 | 552 | Jun-12 | 10:39 | 00/40 | 001 | Fax | | | EC 502 | OK | |

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496411

P-00016_00106

UNITED STATES DEPARTMENT OF JUSTICE
DRUG ENFORCEMENT ADMINISTRATION

Received 6/13/07
Office of Administrative
 Law Judge
Drug Enforcement Administra

In the Matter of )
)
McKesson Corporation )        Docket No. 06-66
d/b/a McKesson Drug Company )
)
)

SUPPLEMENTAL PREHEARING STATEMENT
OF MCKESSON CORPORATION

John A. Gilbert, Jr.
Hyman, Phelps & McNamara PC
700 Thirteenth Street, N.W.
Suite 1200
Washington, D.C. 20005
(202) 737-5600
(202) 737-9329 (Fax)

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

## SUPPLEMENTAL PREHEARING STATEMENT
## OF MCKESSON CORPORATION

McKesson Corporation ("McKesson") by and through the undersigned counsel, respectfully submits this supplement to its prehearing statement.

### PROPOSED TESTIMONY

**1.**     **Additional Proposed Testimony of William Mahoney**

Mr. Mahoney will testify as previously noticed.

Mr. Mahoney will further testify as to McKesson's Lakeland DC continued efforts to monitor distributions of controlled substances to pharmacy customers. Mr. Mahoney will testify as to the Lakeland DC's implementation of the Lifestyle Drug Monitoring Program. He will also testify as to recent contacts with DEA Group Supervisor Ken Boggess in regard to reporting of excessive purchases by customers based on McKesson's daily dosage report. Mr. Mahoney will also testify about McKesson's sales of controlled substances to YPM Total Care Pharmacy.

**2.**     **Additional Proposed Testimony of Donald Walker**

Mr. Walker will testify as previously noticed.

Mr. Walker will further testify as to McKesson's efforts to monitor distributions of controlled substances to pharmacies across all of the McKesson DCs. He will also testify about McKesson's implementation of the Lifestyle Drug Monitoring Program. He will discuss the process for identifying purchases that

2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

exceed the 8,000 dosage threshold for certain lifestyle drugs.  He will discuss

McKesson's procedures for conducting additional due diligence on customers who

exceed the threshold.

## RESPONDENT'S PROPOSED SUPPLEMENTAL DOCUMENTARY EXHIBITS

64.     McKesson Report of purchases of hydrocodone Augusts 2005 (Run date October 10, 2005.)

65.     Government Contact between Bill Mahoney and D. Butcher re Lexus Drugs.

66.     Government Contact with Miguel Soloraz, DEA dated January 19, 2005.

67.     Letter from Brian Westmoreland to Janice Barnes, DEA re LPE Pharmacy, dated September 18, 2006.

68.     Letter from Bill Mahoney to Ken Boggess, DEA dated March 16, 2007.

69.     Letter from Bill Mahoney to Ken Boggess, DEA dated March 19, 2007.

70.     Letter from Bill Mahoney to Ken Boggess, DEA dated March 21, 2007.

71.     Letter from Bill Mahoney to Ken Boggess, DEA dated March 23, 2007.

72.     Letter from Bill Mahoney to Ken Boggess, DEA dated April 3, 2007.

73.     Letter from Bill Mahoney to Ken Boggess, DEA dated April 26, 2007.

74.     Lifestyle Drug Monitoring Program, McKesson Operations Manual.

75.     Excerpt from Daily Dosage Report for Lakeland DC.

3

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

76.   Lifestyle Drug PowerPoint Presentation.

77.   McKesson letter to Pharmacy Chain Accounts.

78.   Lifestyle Drug Declaration Form.

79.   Lifestyle Drug Pharmacy Questionnaire.

80.   YPM Pharmacy response to Internet Questionnaire.

Respectfully submitted,

John A. Gilbert, Jr.
Hyman, Phelps & McNamara PC
700 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 737-5600
(202) 737-9329 (Fax)

Counsel for McKesson Corporation

Date:   June 13, 2007

4

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496415

P-00016_00110



LAW OFFICES

# HYMAN, PHELPS & McNAMARA, P.C.

700 THIRTEENTH STREET, N.W
SUITE 1200
WASHINGTON, D.C. 20005-5929
(202) 737-5600
FACSIMILE
(202) 737-9329

www.hpm.com

JOHN A. GILBERT, JR.

Direct Dial (202) 737-4293

June 13, 2007

## BY FACSIMILE/CONFIRMATION COPY BY HAND DELIVERY

Helen Farmer
Hearing Clerk
Office of Administrative Law Judges
Drug Enforcement Administration
600 Army-Navy Drive
Arlington, VA 22202

Re:   In the matter of McKesson Corporation, d/b/a McKesson Drug Company,
      Docket No. 06-66.

Dear Ms. Farmer:

Pursuant to 21 C.F.R. § 1316.52(d), McKesson Corporation ("McKesson"),
Respondent in the above-captioned action, respectfully requests the issuance of a subpoena
to compel the attendance of the individual identified below at the administrative hearing in
the above-captioned matter scheduled to begin on July 10, 2007 in Tampa, Florida.

Debra Butcher
Diversion Investigator
Drug Enforcement Administration
Tampa District Office
4950 W. Kennedy Blvd., Suite 400
Tampa, Florida 33609
(813)287-4765
(813) 287-4766

Ms. Butcher is an employee of the Drug Enforcement Administration and has been
identified as a Respondent witness in its prehearing statement.

2603 MAIN STREET
SUITE 760
IRVINE, CALIFORNIA 92614
(949) 553-7400
FAX: (949) 553-7433

4819 EMPEROR BOULEVARD
SUITE 400
DURHAM, NORTH CAROLINA 27703
(919) 313-4750
FAX: (919) 313-4751

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

Helen Farmer
June 13, 2007
Page 2

HYMAN, PHELPS & MCNAMARA, P.C.

Please let me know if you have any questions.

Sincerely,

John A. Gilbert, Jr.
Counsel to McKesson Corporation

cc:   Wayne Patrick, Esq.
      Office of Diversion & Regulatory Litigation Section
      Office of Chief Counsel
      Drug Enforcement Administration

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496417

P-00016_00112



LAW OFFICES

# HYMAN, PHELPS & MCNAMARA, P.C.

700 THIRTEENTH STREET, N.W.
SUITE 1200
WASHINGTON, D. C. 20005-5929
(202) 737-5600
FACSIMILE
(202) 737-9329

www.hpm.com

## FACSIMILE TRANSMITTAL SHEET

The pages in this facsimile transmission are for the sole use of the individual and entity to whom they are addressed. They may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient or the employee or agent responsible for delivering this transmission to the intended recipient, be aware that any disclosure, duplication, distribution, review or use of the contents of this transmission is strictly prohibited. If you have received this transmission in error, please notify this firm immediately by collect call so we may arrange to retrieve this transmission at no cost to you.

Tel. No.: (202) 737-5600                                      Fax No.: (202) 737-9329

**FROM:**      John Gilbert            **DATE:**      June 13, 2007

**TO:**        Helen Farmer           **FAX NO.:**    (202) 307-8198

**NO. OF PAGES (including this page):**   3

2603 MAIN STREET
SUITE 760
IRVINE, CALIFORNIA 92614
(949) 553-7400
FAX: (949) 553-7433

4819 EMPEROR BOULEVARD
SUITE 400
DURHAM, NORTH CAROLINA 27703
(919) 313-4750
FAX: (919) 313-4751

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER



# Confirmation Report – Memory Send

Time : Jun-13-07 10:41
Tel line : 2027378329
Name : HYMAN PHELPS AND MCNAMARA

| | | |
|---|---|---|
| Job number | : | 843 |
| Date | : | Jun-13 10:40 |
| To | : | 3078198 |
| Document pages | : | 03 |
| Start time | : | Jun-13 10:40 |
| End time | : | Jun-13 10:41 |
| Pages sent | : | 03 |
| Status | : | OK |

Job number : 843 *** SEND SUCCESSFUL ***

LAW OFFICES
HYMAN, PHELPS & McNAMARA, P.C.
www.hpm.com

**FACSIMILE TRANSMITTAL SHEET**

The pages in this facsimile transmission are for the sole use of the individual and entity to whom they are addressed. They may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient or the employee or agent responsible for delivering this transmission to the intended recipient, be aware that any disclosure, duplication, distribution, review or use of the contents of this transmission is strictly prohibited. If you have received this transmission in error, please notify this firm immediately by collect call so we may arrange to retrieve this transmission at no cost to you.
Tel. No.: (202) 737-5600 Fax No.: (202) 737-9329

| | | | |
|---|---|---|---|
| FROM: | John Gilbert | DATE: | June 13, 2007 |
| TO: | Helen Farmer | FAX NO.: | (202) 307-8198 |
| NO. OF PAGES (including this page): | 3 | | |

LAW OFFICES

# HYMAN, PHELPS & McNAMARA, P.C.

700 THIRTEENTH STREET, N.W.
SUITE 1200

JOHN A. GILBERT, JR.

WASHINGTON, D. C. 20005-5929
(202) 737-5600
FACSIMILE
(202) 737-9329
www.hpm.com

Direct Dial (202) 737-4293

June 13, 2007

Wayne Patrick
Diversion and Regulatory Litigation Section
Office of Chief Counsel
Drug Enforcement Administration
600 Army-Navy Drive
Arlington, Virginia  22202

RE:   In the matter of McKesson Corporation, Docket No. 06-66

Mr. Patrick:

Please find enclosed copies of the documents identified in Respondent's prehearing statement and its supplemental prehearing statement filed with the Administrative Law Judge today.

Respondent will provide copies of several documents not included in the attachment as soon as they are available. In addition, Respondent may not offer all of the documents identified in its prehearing statement and supplemental prehearing statement. I will provide a list of those documents prior to the hearing.

Please do not hesitate to contact me should you have any additional questions.

Sincerely,

John A. Gilbert, Jr.

2603 MAIN STREET
SUITE 760
IRVINE, CALIFORNIA 92614
(949) 553-7400
FAX: (949) 553-7433

4819 EMPEROR BOULEVARD
SUITE 400
DURHAM, NORTH CAROLINA 27703
(919) 313-4750
FAX: (919) 313-4751

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496420

P-00016_00115

LAW OFFICES

# HYMAN, PHELPS & McNAMARA, P.C.

700 THIRTEENTH STREET, N.W.
SUITE 1200
WASHINGTON, D. C. 20005-5929
(202) 737-5600
FACSIMILE
(202) 737-9329
www.hpm.com

JOHN A. GILBERT, JR.

Direct Dial (202) 737-4293

Received __6/13/07__
Office of Administrative
Law Judge
Drug Enforcement Administration

June 13, 2007

## BY FACSIMILE/CONFIRMATION COPY BY HAND DELIVERY

Helen Farmer
Hearing Clerk
Office of Administrative Law Judges
Drug Enforcement Administration
600 Army-Navy Drive
Arlington, VA 22202

Re:   In the matter of McKesson Corporation, d/b/a McKesson Drug Company,
      Docket No. 06-66.

Dear Ms. Farmer:

Pursuant to 21 C.F.R. § 1316.52(d), McKesson Corporation ("McKesson"),
Respondent in the above-captioned action, respectfully requests the issuance of a subpoena
to compel the attendance of the individual identified below at the administrative hearing in
the above-captioned matter scheduled to begin on July 10, 2007 in Tampa, Florida.

Debra Butcher
Diversion Investigator
Drug Enforcement Administration
Tampa District Office
4950 W. Kennedy Blvd., Suite 400
Tampa, Florida 33609
(813)287-4765
(813) 287-4766

Ms. Butcher is an employee of the Drug Enforcement Administration and has been
identified as a Respondent witness in its prehearing statement.

2603 MAIN STREET
SUITE 760
IRVINE, CALIFORNIA 92614
(949) 553-7400
FAX: (949) 553-7433

4819 EMPEROR BOULEVARD
SUITE 400
DURHAM, NORTH CAROLINA 27703
(919) 313-4750
FAX: (919) 313-4751

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496421

P-00016_00116

Helen Farmer
June 13, 2007
Page 2

HYMAN, PHELPS & McNAMARA, P.C.

Please let me know if you have any questions.

Sincerely,

John A. Gilbert, Jr.
Counsel to McKesson Corporation

cc: Wayne Patrick, Esq.
Office of Diversion & Regulatory Litigation Section
Office of Chief Counsel
Drug Enforcement Administration

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496422

P-00016_00117

UNITED STATES DEPARTMENT OF JUSTICE
Drug Enforcement Administration

Received 6/13/07
Office of Administrative
Law Judge
Drug Enforcement Administration

In The Matter of            )
                            )
McKesson Corporation        )          Docket No. 06-66
d/b/a McKesson Drug Company )
                            )

## MOTION TO FILE
## SUPPLEMENTAL PREHEARING STATEMENT

McKesson Corporation (Respondent), through the undersigned counsel, files this

motion to supplement its prehearing statement in the above captioned matter.

On June 7, 2007 the Administrative Law Judge ordered the Government to amend

its prehearing statement to identify its expert witness, if any, and details of the witness's

testimony.  On June 12, 2007, Government counsel provided Respondent with a

supplemental prehearing statement.

The Government's supplemental prehearing statement identifies Carmen Catizone

as an expert witness that will testify based on a transcript from a prior matter.  The

Government has also listed a new witness, George Van Komen, M.D., who will also

testify by transcript from a prior matter.  The government has also provided additional

testimony for a previously noticed witness, Lisa Sullivan.  Finally, the Government has

proposed eleven additional documents to be introduced at the hearing.

Therefore, Respondent now moves the ALJ to supplement its prehearing statement

as described in the attached supplemental prehearing statement.  The Government

provided the transcript of Mr. Catizone's testimony, however, it has not as yet provided a

1

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

copy of the transcript of Dr. Van Komen.  Respondent may request to further supplement

its prehearing statement once it receives a copy of the transcript and can determine the

scope of Dr. Van Komen's transcript testimony.

Respectfully submitted,

John A. Gilbert Jr.
Hyman, Phelps & McNamara PC
700 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 737-5600
(202) 737-9329 (Fax)

Counsel for McKesson Corporation

Dated:  June 13, 2007

2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

This is to certify that the undersigned, on June 13, 2007, caused a copy of the foregoing to be delivered by hand to The Honorable Mary Ellen Bittner U.S. Department of Justice, Drug Enforcement Administration, 600 Army Navy Drive, Arlington, Virginia, 22202, and copies to be delivered by hand to:

Wayne Patrick
Diversion and Regulatory Litigation Section
Office of Chief Counsel
Drug Enforcement Administration
600 Army-Navy Drive
Arlington, Virginia 22202

Kathleen McKinley

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496425

P-00016_00120

 

# UNITED STATES DEPARTMENT OF JUSTICE

## DRUG ENFORCEMENT ADMINISTRATION

| IN THE MATTER OF | |
| --- | --- |
| MCKESSON CORPORATION<br>D/B/A MCKESSON DRUG COMPANY | DOCKET NO. 06-66 |

# CONSENT MOTION TO RESCHEDULE HEARING DATES

D. LINDEN BARBER
ASSOCIATE CHIEF COUNSEL
OFFICE OF CHIEF COUNSEL
2401 JEFFERSON DAVIS HIGHWAY
ALEXANDRIA, VA 22301
VOICE: (202) 307-8010
FAX: (202) 307-4946

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496426

P-00016_00121



The United States Department of Justice, Drug Enforcement Administration (Government), by and through its undersigned attorney, hereby submits this Consent Motion to Reschedule Hearing Dates.

In support of the Consent Motion, the Government offers the following:

1.      Government Counsel and Respondent's Counsel have engaged in settlement discussions regarding this matter.  The Parties mutually desire to continue settlement discussions.

2.      On June 21, 2007, Government Counsel contacted Respondent's Counsel, Mr. Douglas Farquhar, who consented to the request for continuance.  After this discussion with Mr. Farquhar, Government Counsel contacted the Administrative Law Judge who indicated that, if this matter were continued, the Administrative Law Judge could docket this matter for hearing on October 30, 2007, with a second week of hearing beginning November 27, 2007.

3.      On June 25, 2007, Government Counsel contacted Respondent's Counsel who consented to the Government's request to seek a continuance of the hearing in this matter until October 30, 2007.

In consideration of the foregoing, the Government requests, with the consent of Respondent, that the hearing in this matter currently scheduled to begin July 10, 2007, in Tampa, Florida, be rescheduled in accordance with the Administrative Law Judge's docket.  The Parties request that the hearing be scheduled to commence on October 30, 2007, if the Administrative Law Judge's calendar permits.  If a second week of hearing is needed, the Parties request that the second week of hearing be set for November 27, 2007.  This request is not sought for purposes of undue delay.

**WHEREFORE,** the Government requests that the Administrative Law Judge cancel the hearing in this matter scheduled to commence July 10, 2007, and reschedule the hearing for

1

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496427

P-00016_00122



October 30, 2007, or as soon thereafter as possible. Government counsel further asks the

Administrative Law Judge to schedule a conference call with counsel to discuss scheduling.

Respectfully submitted,

D. Linden Barber
Associate Chief Counsel
Drug Enforcement Administration

Date: June 25, 2007

### CERTIFICATE OF SERVICE

I hereby certify that on the date signed below, I caused the original and two copies of the foregoing CONSENT MOTION TO RESCHEDULE HEARING DATES IN THE MATTER OF MCKESSON CORPORATION D/B/A MCKESSON DRUG COMPANY, to be hand delivered to the DEA Office of the Administrative Law Judges; and I caused a copy of the foregoing to be mailed, via first-class postage prepaid mail, to Respondent's counsel at the following address:

> Doug Farquhar, Esq. & John A. Gilbert, Jr., Esq.
> Law Offices of Hyman, Phelps & McNamara, P.C.
> 700 Thirteenth Street, N.W.
> Suite 1200
> Washington, DC 20005-5929

**AND TO BE FAXED** to Respondent's counsel, Doug Farquhar, Esq. & John A. Gilbert, Jr., Esq., at the following number: (202) 737-9329.

6-25-07
Date

Signature

2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496428

P-00016_00123

 

## UNITED STATES DEPARTMENT OF JUSTICE
## DRUG ENFORCEMENT ADMINISTRATION

IN THE MATTER OF )
)
MCKESSON CORPORATION )          Docket No. 06-23
dba )
MCKESSON DRUG COMPANY )
)

### NOTICE OF APPEARANCE

The undersigned David Linden Barber hereby notices his appearance in this

matter as co-counsel for the Government. All filings and notices should continue

to be sent to the attention of the lead Government Counsel, Mr. Wayne Patrick.


Respectfully submitted,

D. Linden Barber
Associate Chief Counsel
Office of Chief Counsel
Co-Counsel for the Government

Dated: June 25, 2007

### CERTIFICATE OF SERVICE

On June 25, 2007, I mailed a copy of the foregoing, postage prepaid,

to Counsel for Respondent, John A. Gilbert, Jr., Esq., Hyman Phelps &

McNamara, P.C., 700 13th Street N.W., Washington, D.C. 20005

D. Linden Barber

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

JUN-25-2007  14:07                                                          P.01/05

**DEPARTMENT OF JUSTICE**
**DRUG ENFORCEMENT ADMINISTRATION**                     **FAX TRANSMITTAL SHE**

| NOTE: If you have any problems with this transmission ( incorrect number of pages/poor quality ), call the transmitter and request retransmission. | NUMBER OF PAGES BEING TRANSMITTED (including this transmittal sheet) | 5 |

| TRANSMITTED TO | FAX FTS NO. 202-737-9329 | FAX COMMERCIAL NO. |

NAME: Doug Faquhar  & John A. Gilbert. Jr.

ORGANIZATION:
Law Offices of. Hyman, Phelps & McNamara, P.C.

| BUILDING, ROOM NO., etc. 700 13th St., Ste 1200 Wash. DC  20005 | TELEPHONE/EXTENSION |

| TRANSMITTED FROM | FAX FTS NO. 202-307-4946 | FAX COMMERCIAL NO. |

NAME:
D. Linden Barber

ORGANIZATION:
DEA, Office of Chief Counsel

| BUILDING, ROOM NO., etc. | TELEPHONE/EXTENSION 202-307-4801 |

COMMENTS:
Consent Motion to Reschedule Hearing Dates

| APPROVED BY (if applicable) | NAME: |

| TRANSMITTED BY (Name): Mia Brent | DATE: 6/25/07 | TIME: 2:00 p |

DEA Form
(C ic. 1981) - 501

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

06/26/2007  15:05    2023078198              LJ                              PAGE  02/03

# UNITED STATES DEPARTMENT OF JUSTICE
## Drug Enforcement Administration

In the Matter of

**McKesson Corporation
d/b/a McKesson Drug Company**

Docket No. 06-66

## MEMORANDUM TO COUNSEL AND ORDER

On June 25, 2007, counsel for the Government filed a motion to reschedule the hearing in the above-captioned matter. Counsel for the Government noted that he and counsel for Respondent are engaged in settlement discussions, and he therefore requests that the hearing be rescheduled for the weeks of October 30 and November 27, 2007. Counsel for the Government advised that counsel for Respondent consents to the motion.

Inasmuch as settlement discussions are underway, I grant the Government's motion. Accordingly, it is ORDERED that the hearing currently scheduled for July 10-12, 2007, and July 24-26, 2007, is cancelled and rescheduled for October 30-November 1, 2007, and November 27-29, 2007, in Tampa, Florida or Arlington, Virginia. My law clerk will schedule a conference call to discuss scheduling matters.

Dated:  June 26, 2007

Mary Ellen Bittner
Administrative Law Judge

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496431
P-00016  00126

06/26/2007  15:05    2023078198          LJ                              PAGE  03/03

## CERTIFICATE OF SERVICE

This is to certify that the undersigned on June 26, 2007, caused a copy of the foregoing to be faxed and delivered via interoffice mail to counsel for the Government, Wayne M. Patrick, Esq., Office of Chief Counsel, Drug Enforcement Administration, Washington, D.C. 20537, and a copy to be faxed and mailed, postage paid, to counsel for Respondent, John A. Gilbert, Jr., Esq., Hyman, Phelps & McNamara, P.C., 700 Thirteenth Street, N.W., Suite 1200, Washington, D.C. 20005.

Patricia A. Medico
Secretary to Mary Ellen Bittner
Administrative Law Judge

2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496432

P-00016 00127

**U.S. Department of Justice**

Drug Enforcement Administration
Office of Administrative Law Judges
Washington, D.C. 20537
Tel. (202) 307-8188     Fax 307-8198

# FAX TRANSMISSION

**Date:**     June 26, 2007

**To:**       John A. Gilbert, Jr., Esq.
              Wayne Patrick, Esq.

**Fax:**      202-737-9329
              7-4946

**Re:**       *In the Matter of McKesson Corporation, d/b/a McKesson Drug Company*
              Docket No. 06-66

**Sender:**   Patricia Medina
              Secretary to Mary Ellen Bittner
              Chief Administrative Law Judge

YOU SHOULD RECEIVE 3 PAGE(S), INCLUDING THIS COVER SHEET. IF
YOU DO NOT RECEIVE ALL THE PAGES, PLEASE CALL (202) 307-8188.

Please see attached "Memorandum to Counsel and Order."

Attachment

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496433

P-00016_00128

**UNITED STATES DEPARTMENT OF JUSTICE**
**Drug Enforcement Administration**

In the Matter of

**McKesson Corporation**
**d/b/a McKesson Drug Company**                    Docket No. 06-66

### MEMORANDUM TO COUNSEL

Pursuant to the discussion in a telephonic conference on September 6, 2007, the initial phase of the above-captioned hearing is scheduled from October 30-November 1, 2007 in Arlington, Virginia. As also discussed, counsel are to exchange documents they intend to introduce into evidence no later than 4:00 p.m eastern daylight time on October 12, 2007. If counsel intend to submit supplemental prehearing statements, they must do so no later than 4:00 p.m eastern daylight time on October 12, 2007.

Dated:  September 10, 2007

Mary Ellen Bittner
Administrative Law Judge

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

This is to certify that the undersigned on September 10, 2007, caused a copy of the foregoing to be delivered via interoffice mail to counsel for the Government, Wayne M. Patrick, Esq., Office of Chief Counsel, Drug Enforcement Administration, Washington, D.C. 20537, and a copy to be mailed, postage paid to counsel for Respondent, John A. Gilbert, Esq., Hyman, Phelps & McNamara, P.C., 700 Thirteenth Street, N.W., Suite 1200, Washington, D.C. 20005.

Thomas 'Skip' Mark
Attorney Advisor to Mary Ellen Bittner
Administrative Law Judge

2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496435

P-00016_00130

**UNITED STATES DEPARTMENT OF JUSTICE**
**Drug Enforcement Administration**

In The Matter of         )
                           )
**McKesson Corporation**     )      Docket No. 06-66
**d/b/a McKesson Drug Company**   )
                           )

**JOINT MOTION FOR EXTENSION OF TIME**
**TO FILE SUPPLEMENTAL PREHEARING STATEMENTS**
**AND EXCHANGE DOCUMENTARY EVIDENCE**

     McKesson Corporation (Respondent), through the undersigned counsel, files this

joint motion for an extension of time for the parties to file supplemental prehearing

statements and exchange documentary evidence.  On September 10, 2007, the ALJ issued

a Memorandum to Counsel stating that the parties should exchange documents and file

supplemental prehearing statements by October 12, 2007.

     The parties are continuing to discuss a resolution to this matter.  Therefore, the

parties request a one week extension until October 19, 2007 to exchange documentary

evidence and file supplemental prehearing statements.   Respondent has discussed this

motion with government counsel and they have agreed to the motion.

1

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

Respectfully submitted,

John A. Gilbert, Jr.
Hyman, Phelps & McNamara PC
700 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 737-5600
(202) 737-9329 (Fax)

Counsel for McKesson Corporation

Dated: October 12, 2007

2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496437

P-00016_00132

## CERTIFICATE OF SERVICE

This is to certify that the undersigned, on October 12, 2007, caused a copy of the foregoing to be delivered by facsimile with a confirmation copy by mail to The Honorable Mary Ellen Bittner U.S. Department of Justice, Drug Enforcement Administration, 600 Army Navy Drive, Arlington, Virginia, 22202, and copies to be delivered by facsimile to:

Wayne Patrick
Diversion and Regulatory Litigation Section
Office of Chief Counsel
Drug Enforcement Administration
600 Army-Navy Drive
Arlington, Virginia  22202

Kathleen McKinley

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER



LAW OFFICES

# HYMAN, PHELPS & McNAMARA, P.C.

700 THIRTEENTH STREET, N.W
SUITE 1200
WASHINGTON, D. C. 20005-5929
(202) 737-5600
FACSIMILE
(202) 737-9329
www.hpm.com

## FACSIMILE TRANSMITTAL SHEET

The pages in this facsimile transmission are for the sole use of the individual and entity to whom they are addressed.
They may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If you
are not the intended recipient or the employee or agent responsible for delivering this transmission to the intended
recipient, be aware that any disclosure, duplication, distribution, review or use of the contents of this transmission is
strictly prohibited.  If you have received this transmission in error, please notify this firm immediately by collect call so
we may arrange to retrieve this transmission at no cost to you.

Tel. No.:  (202) 737-5600                                   Fax No.:  (202) 737-9329

| | | | |
|---|---|---|---|
| **FROM:** | John Gilbert | **DATE:** | October 12, 2007 |
| **TO:** | Honorable Mary Ellen Bittner<br>Wayne Patrick | **FAX NO.:** | (202) 307-8198<br>(202) 307-4946 |

**NO. OF PAGES  (including this page) :**   4

2603 MAIN STREET
SUITE 760
IRVINE, CALIFORNIA 92614
(949) 553-7400
FAX: (949) 553-7433

4819 EMPEROR BOULEVARD
SUITE 400
DURHAM, NORTH CAROLINA 27703
(919) 313-4750
FAX: (919) 313-4751

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496439

P-00016_00134



LAW OFFICES

# HYMAN, PHELPS & MCNAMARA, P.C.

700 THIRTEENTH STREET, N.W.

SUITE 1200

WASHINGTON, D. C. 20005-5929

(202) 737-5600

FACSIMILE

(202) 737-9329

www.hpm.com

## FACSIMILE TRANSMITTAL SHEET

The pages in this facsimile transmission are for the sole use of the individual and entity to whom they are addressed. They may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient or the employee or agent responsible for delivering this transmission to the intended recipient, be aware that any disclosure, duplication, distribution, review or use of the contents of this transmission is strictly prohibited. If you have received this transmission in error, please notify this firm immediately by collect call so we may arrange to retrieve this transmission at no cost to you.

Tel. No.: (202) 737-5600                                  Fax No.: (202) 737-9329

| | | | |
|---|---|---|---|
| **FROM:** | John Gilbert | **DATE:** | October 12, 2007 |
| **TO:** | Linden Barber | **FAX NO.:** | (202) 307-4946 |
| **NO. OF PAGES (including this page) :** | 4 | | |

2603 MAIN STREET
SUITE 760
IRVINE, CALIFORNIA 92614
(949) 553-7400
FAX: (949) 553-7433

4819 EMPEROR BOULEVARD
SUITE 400
DURHAM, NORTH CAROLINA 27703
(919) 313-4750
FAX: (919) 313-4751

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

**UNITED STATES DEPARTMENT OF JUSTICE**
**Drug Enforcement Administration**

In the Matter of

**McKesson Corporation**
**d/b/a McKesson Drug Company**

Docket No. 06-66

### RULING ON REQUESTED EXTENSION

On October 12, 2007,[1] counsel for Respondent filed a joint motion requesting an extension for filing supplemental prehearing statements and exchanging documentary evidence in the above-captioned matter. Counsel requests a one week extension from the October 12 deadline so that the parties can continue to discuss a resolution. Counsel for Respondent advised that counsel for the Government does not oppose the extension.

Inasmuch as it appears that no prejudice will result, Respondent's request is granted. Accordingly, the deadline for exchanging documentary evidence and filing supplemental prehearing statements is extended to October 19.

Dated:  October 12, 2007

Mary Ellen Bittner
Administrative Law Judge

---

[1] All dates herein are 2007.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496441

P-00016_00136

## CERTIFICATE OF SERVICE

This is to certify that the undersigned on October 12, 2007, caused a copy of the foregoing to be faxed and delivered via interoffice mail to counsel for the Government, Wayne Patrick, Esq., Office of Chief Counsel, Drug Enforcement Administration, Washington, D.C. 20537, and a copy to be faxed and mailed, postage paid, to counsel for Respondent, John A. Gilbert, Jr., Esq., Hyman, Phelps & McNamara, P.C., 700 Thirteenth Street, N.W., Suite 1200, Washington, D.C. 20005.

Thomas 'Skip' Mark
Attorney Advisor to Mary Ellen Bittner
Administrative Law Judge

2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496442

P-00016_00137

10/19/2007  18:13  2023074946          OFC OF CC (CCD-CCR)                    PAGE  01/05
                                       OPTIONAL FORM 98 (7-90)

                                       **FAX  TRANSMITTAL**    # of pages ▶  5

                                       To  John Gilbert    From  Linden Barber
                                       Dept./Agency                Phone #

                                       Fax #  202-737-9329    Fax #  202-307-4946
                                       NSN 7540-01-317-7368    5099-101   GENERAL SERVICES ADMINISTRATION

**UNITED STATES**

**DRUG ENFORC**~~EMENT ADMINISTRATION~~

---

```
IN THE MATTER OF        )
                        )
MCKESSON CORPORATION    )        Docket No. 06-23
       d/b/a            )
MCKESSON DRUG COMPANY   )
                        )
```

## GOVERNMENT SUPPLEMENTAL PREHEARING STATEMENT

The United States Department of Justice, Drug Enforcement

Administration, by and through its undersigned attorney, hereby submits this

supplement to its prehearing statement.  All witnesses, proposed testimony, and

documentary evidence previously noticed remain unchanged.  The following new

matters are presented.

## PROPOSED WITNESSES

Joseph T. Rannazzisi          *[As described below]*
Deputy Assistant Administrator
Drug Enforcement Administration

Barbara Boockholdt            *[As described below]*
Staff Coordinator
Drug Enforcement Administration

William Mahoney               *[As described below]*
Distribution Center Manager
McKesson Corporation

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MCKMDL00496443

P-00016_00138

10/19/2007  18:13   2023074946          OFC OF CC (CCD-CCR)              PAGE  02/05

Donald Walker                        *[As described below]*
Senior Vice President
McKesson Corporation

## PROPOSED TESTIMONY

### Joseph T. Rannazzisi

Mr. Rannazzisi will testify regarding his professional background and experience, and the following:  1) that he met with McKesson officials in January 2006 regarding McKesson's extraordinarily large distributions of hydrocodone, and select other controlled substances to pharmacies under circumstances that indicated that the pharmacies were diverting controlled substances; 2) that he asked the McKesson representatives if they could give him any reason why DEA should not revoke McKesson's registration, and the McKesson officials did not explain why their large distributions to pharmacies under suspicious circumstances; 3) that after the January 2006 meeting, McKesson continued to distribute controlled substances under circumstances that were indicative of diversion;  4) the national problem regarding the diversion of hydrocodone and benzodiazepines; 5) the efforts that DEA has taken to educate distributors about the warning signs of diversion, and the efforts that DEA took to educate McKesson.

### Barbara Boockholdt

Ms. Boockholdt will testify regarding her professional background and experience, and the following:  1) that McKesson's distributions of hydrocodone to certain Florida pharmacies were significantly greater than any distributions that she has ever seen for legitimate purposes; 2) that DEA has taken administrative action against or received surrenders of registrations from some of McKesson's largest purchasers of hydrocodone; 3) that information was available on the Internet through simple use of a search engine that could have alerted McKesson that certain pharmacy customers were purchasing hydrocodone to fill prescriptions issued by out-of-state physicians who never conduct an examination of the individual purchasing controlled substances.

### William Mahoney

Mr. Mahoney will testify about McKesson's sales of hydrocodone and other drugs, controlled and non-controlled, to the pharmacies identified in the Order to Show Cause, and its drug distributions to YPM and Mai Pharmacy.  Mr. Mahoney will testify about how the orders from those

<div align="center">2</div>

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MCKMDL00496444

P-00016_00139

pharmacies compare to the orders placed with McKesson by other retail
pharmacies. He will testify about that the orders of hydrocodone by those
pharmacies were of an unusual size, an unusual, frequency, or deviated from
the normal pattern of orders by retail pharmacies, or a combination of more
than one of those factors. He will testify about the steps that McKesson
undertook to ensure that those orders were legitimate before filling those
orders. He will also testify about the attempts that DEA took to educate
McKesson about the signs of diversion by pharmacies. He will testify about
the timing and nature of the training and guidance that he received from
McKesson's corporate headquarters regarding the rogue Internet
pharmacies, signs of diversion, and McKesson's obligations as a DEA
registrant. He will testify about the McKesson employees or agents who
visited the pharmacies, what reports if any they made to him or other
McKesson manager, and what actions McKesson took in response to those
reports. He will also testify about the general operation of the Lakeland
Distribution Center and other matters noticed in Respondent's prehearing
statement. He will testify that after McKesson received the Order to Show
Cause that it distributed a large amount of hydrocodone to YPM under
suspicious circumstances. He will testify that he became aware of DEA's
suspension of a major distributor in central Florida in April 2007.
Notwithstanding his knowledge of this, McKesson supplied an unusually large
amount of hydrocodone to Mai pharmacy in June and July of 2007, and later
determined that McKesson should no longer sell to Mai Pharmacy.

**Donald Walker**

      Mr. Walker will testify about McKesson's sales of hydrocodone
and other drugs, controlled and non-controlled, to the pharmacies identified
in the Order to Show Cause, and its drug distributions to YPM and Mai
Pharmacy. He will testify about the steps that McKesson undertook to ensure
that its managers and employees were promptly trained on the diversion
concerns that DEA brought to McKesson's attention in September 2005. He
will testify about the role of McKesson's corporate headquarters in making
decisions about the sales of controlled substances to pharmacies, and about all
corporate policies related to diversion of controlled substances, and Internet
diversion schemes in particular. He will also testify about the matters noticed
in Respondent's prehearing statement.


## DOCUMENTARY EVIDENCE          [AMENDED]

1-38.  As previously noticed

3

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496445

P-00016_00140

39. Chart showing hydrocodone distributions by Respondent to Mai Pharmacy in 2006 and 2007.

40. Chart showing hydrocodone distributions by Respondent to YPM in 2006 and 2007.

41. Final Order, United Prescription Services, Inc.

42. Final Order, Southwood Pharmaceuticals, Inc.

43. Immediate Suspension Order, Avee Pharmacy

44. Immediate Suspension Order, YPM

45. Order to Show Cause, Trelles Pharmacy

46. Order to Show Cause, Bi-Wise Pharamcy

47. Immediate Suspension, Medipharm-Rx

48. Order to Show Cause, Accumed

49. Letter from Joseph Rannazzisi to McKesson dated September 26, 2006

## OTHER MATTERS

The Government agrees to an extension of time for Respondent to file its Supplemental Prehearing Statement. The Government has no objection to Respondent filing its Supplemental Prehearing Statement any time prior beginning of the hearing.

Respectfully submitted,

D. Linden Barber
Associate Chief Counsel
Drug Enforcement Administration

Dated: September 19, 2007

4

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496446

P-00016_00141

## CERTIFICATE OF SERVICE

On October 19, 2007, I sent via facsimile a copy of the foregoing, to

Counsel for Respondent, John A. Gilbert, Jr., Esq., Hyman Phelps &

McNamara, P.C., 700 13th Street N.W., Washington, D.C. 20005.

D. Linden Barber
Associate Chief Counsel
Drug Enforcement Administration

5

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496447

P-00016_00142

**U.S. Department of Justice**
**Drug Enforcement Administration**
Office of Chief Counsel

_www.dea.gov_                                      Washington, D.C. 20537

                                                 October 22, 2007

Honorable Mary Ellen Bittner
DEA
Office of Administrative Law Judges
Washington, D.C. 20537

Re: In the Matter of McKesson Corporation, DEA Docket No. 06-23

To the Honorable Judge Bittner:

        The Government requests that subpoenas be issued to compel the appearance and testimony of the following witnesses at Arlington, Virginia (estimated for October 30, 2007) and be tendered to the Government for appropriate service.

   Donald G. Walker
   Senior Vice President
   McKesson Pharmaceutical
   One Post Street
   San Francisco, California 94104

   William Mahoney
   Distribution Cneter Manager
   McKesson Drug Company
   1515 West Bella Vista Street
   Lakeland, Florida 33805

                                   Respectfully submitted,

                                   Wayne Patrick
                                   Counsel for the Government

      cc: John A. Gilbert, Jr., Esq.
          F: (202) 737-9329

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER





**United States Department of Justice**

Drug Enforcement Administration
Office of Administrative Law Judges
Washington, D.C. 20537
(202) 307-8188

October 22, 2007

Wayne Patrick, Esq.
Office of Chief Counsel
Drug Enforcement Administration
Washington, D.C. 20537

Re: *In the Matter of McKesson Corporation d/b/a McKesson Drug Company*
Docket No. 06-66

Dear Mr. Patrick:

On October 22, 2007, you filed a request for subpoenas in the above-referenced matter. Subpoenas for the following individuals are enclosed.

Donald G. Walker
Senior Vice President
McKesson Pharmaceutical
One Post Street
San Francisco, California 94104

William Mahoney
Distribution Center Manager
McKesson Drug Company
1515 West Bella Vista Street
Lakeland, Florida 33805

If you have any questions or need additional information, please contact my law clerk, Thomas 'Skip' Mark, at (202) 307-8188.

Sincerely,

*Mary Ellen Bittner*

Mary Ellen Bittner
Administrative Law Judge

Enclosures (2)

cc: John A. Gilbert, Jr., Esq. (w/o enclosures)

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

 

**United States Department of Justice**

Drug Enforcement Administration
Office of Administrative Law Judges
Washington, D.C. 20537
(202) 307-8188

October 23, 2007

John A. Gilbert, Jr., Esq.
Hyman, Phelps & McNamara, P.C.
700 Thirteenth Street, N.W., Suite 1200
Washington, D.C. 20005

Re: *In the Matter of McKesson Corporation d/b/a McKesson Drug Company*
Docket No. 06-66

Dear Counsel:

As you know, the hearing in this proceeding will be held at the Drug Enforcement Administration's (DEA) headquarters. The Office of Security Programs requires a list of all individuals attending the hearing other than DEA employees.

Please notify this office of all persons attending the hearing by 4:00 p.m. eastern daylight time on Wednesday, October 24, 2007. Please direct your response to the Hearing Clerk, Ms. Helen Farmer, and provide the individuals' full name and date of birth. Your prompt attention to this matter is greatly appreciated.

If you have any additional questions or concerns, please contact me at (202) 307-8188. Thank you for your cooperation.

Respectfully,

Thomas Skip Mark
Attorney Advisor to Mary Ellen Bittner
Administrative Law Judge

cc: Wayne M. Patrick, Esq., Office of Chief Counsel
Helen Farmer, Office of Administrative Law Judges

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496450
P-00016_00145





**United States Department of Justice**

Drug Enforcement Administration
Office of Administrative Law Judges
Washington, D.C. 20537
(202) 307-8188

October 23, 2007

Wayne M. Patrick, Esq.
Office of Chief Counsel
Drug Enforcement Administration
Washington, D.C. 20537

John A. Gilbert, Jr., Esq.
Hyman, Phelps & McNamara, P.C.
700 Thirteenth Street, N.W., Suite 1200
Washington, D.C. 20005

Re: *In the Matter of McKesson Corporation d/b/a McKesson Drug Company*
Docket No. 06-66

Dear Counsel:

At Judge Bittner's direction, I am writing to advise you that the hearing scheduled to begin at 9:30 a.m. on October 30, 2007, will be held in the hearing room at the Drug Enforcement Administration's headquarters, 600 Army Navy Drive, Arlington, Virginia. The hearing is scheduled to last three days.

You are reminded to meet the law clerk at 9:00 a.m. on the first day of the hearing to have exhibits marked. Please bring an extra set of exhibits for the judge, and make certain that witnesses are available to testify without delay.

If you have any additional questions or concerns, please contact me at (202) 307-8188.

Respectfully,

Thomas Skip Mark
Law Clerk to Mary Ellen Bittner
Administrative Law Judge

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

10/23/2007  16:34    2023074946              DFC OF CC (CCD-CCR)                    PAGE  01/03

OPTIONAL FORM 99 (7-90)

## FAX TRANSMITTAL

| | | # of pages ► 3 |
|---|---|---|

To JOHN GILBERT   From WAYNE PATRICK

Dept./Agency                    Phone # 202 307 8131

Fax # 202  737 9329    Fax # 202 307 4946

NSN 7540-01-317-7368    5099-101    GENERAL SERVICES ADMINISTRATION

We will ATTEMPT TO SERVE TOMORROW.

I will IDENTIFY POC FOR TRAVEL ARRANGEMENTS
TOMORROW.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496452

P-00016_00147

10/23/2007 16:34    2023074946          OFC OF CC (CCD-COR)              PAGE 02/03

## UNITED STATES DEPARTMENT OF JUSTICE
### Drug Enforcement Administration

In the Matter of

**McKesson Corporation**
**d/b/a McKesson Drug Company**

Docket No. 06-66

### SUBPOENA

TO:   William Mahoney
      Distribution Center Manager
      McKesson Drug Company
      1515 West Bella Vista Street
      Lakeland, Florida 33805

Request therefore having been duly made by Wayne Patrick, Esq., attorney for the Government, you are hereby commanded to appear in the hearing room at the Drug Enforcement Administration headquarters, 600 Army Navy Drive, Arlington, Virginia 22202 on Tuesday, October 30, 2007, at 9:30 a.m. to give testimony in this matter and not to depart without leave.

This subpoena is issued under the authority of the Controlled Substances Act, 21 U.S.C. §§ 875 and 876 (1996) and 21 C.F.R. § 1316.52(d) (2007).

Issued: October 22, 2007

*Mary Ellen Bittner*
Mary Ellen Bittner
Administrative Law Judge

**NOTICE TO WITNESS:**

You may be entitled to witness fees for your attendance, subsistence, and mileage under this subpoena and, if so, such fees are to be paid by the party at whose request this subpoena is issued. All arrangements for payment are to be made with that party.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496453

P-00016_00148

10/23/2007  16:34    2023074946            OFC OF CC (CCD-CCR)              PAGE  03/03

## UNITED STATES DEPARTMENT OF JUSTICE
### Drug Enforcement Administration

In the Matter of

**McKesson Corporation
d/b/a McKesson Drug Company**                    Docket No. 06-66

### SUBPOENA

TO:   Donald G. Walker
      Senior Vice President
      McKesson Pharmaceutical
      One Post Street
      San Francisco, California 94104

Request therefore having been duly made by Wayne Patrick, Esq., attorney for the Government, you are hereby commanded to appear in the hearing room at the Drug Enforcement Administration headquarters, 600 Army Navy Drive, Arlington, Virginia 22202 on Tuesday, October 30, 2007, at 9:30 a.m. to give testimony in this matter and not to depart without leave.

This subpoena is issued under the authority of the Controlled Substances Act, 21 U.S.C. §§ 875 and 876 (1996) and 21 C.F.R. § 1316.52(d) (2007).

Issued: October 22, 2007

_Mary Ellen Bittner_
Mary Ellen Bittner
Administrative Law Judge

**NOTICE TO WITNESS:**

You may be entitled to witness fees for your attendance, subsistence, and mileage under this subpoena and, if so, such fees are to be paid by the party at whose request this subpoena is issued. All arrangements for payment are to be made with that party.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496454

P-00016_00149

10/24/2007  14:08     2023074946                    OFC OF CC (CCD-CCR)                    PAGE  01/09

10-23

OPTIONAL FORM 99 (7-90)

**FAX TRANSMITTAL**          # of pages ▸ 3

To JOHN GILBERT     From WAYNE PATRICK
Dept./Agency                Phone 202 307 8131

Fax # 202  737 9329    Fax # 202 307 4946
NSN 7540-01-317-7368    5099-101    GENERAL SERVICES ADMINISTRATION

We will ATTEMPT TO SERVE TOMORROW.

I will IDENTIFY ROC FOR TRAVEL ARRANGEMENTS
TOMORROW.                                                    8 page.

10/24 — LETTER WILL be DELIVERED WITH SUBPOENA

IF YOUR WITNESSES AVAIL THEMSELVES

of GOVT FUNDING. — They WILL NEED TO PROVIDE

DEBORAH JORDAN WITH A COMPLETED W9 and
completed FFS commercial vendor record

Thanks.
Wayne

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496455

10/24/2007  14:08    2023074946                OFC OF CC (CCD-CCR)                    PAGE  02/09



**U.S. Department of Justice**
**Drug Enforcement**

**Administration**

Office of Chief Counsel

---

*www.dea.gov*

Washington, D.C. 20537

October 24, 2007

William Mahoney
Distribution Center Manager
McKesson Drug Company
1515 West Bella Vista Street
Lakeland, Florida 33805

Dear Mr. Mahoney:

You have been served with a subpoena to appear to testify in the Government's case-in-chief in the matter of McKesson Drug Company on October 30, 2007 in Arlington, Virginia.

If you travel and appear in this proceeding, you may be entitled to Government paid travel, lodging, and certain expenses. However, in order to accomplish this, the DEA must issue you travel orders and must book your flight and lodging for you. In addition, any re-imbursement of expenses must be accomplished by direct deposit to a designated account of yours. In order to arrange this travel, please contact Ms. Deborah Jordan, DEA Office of Chief Counsel at (202) 307-3663.

You may elect to arrange for travel on your own, subject to reimbursement. However, claims for travel and lodging will be limited to reimbursement for coach travel and local area lodging rates at whatever ceiling has been established by Federal travel regulations or contracts.

If you have any questions regarding the subpoena itself, you may have your counsel contact me at (202) 307-8131.

Sincerely,

Wayne Patrick
Attorney
Drug Enforcement Administration

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496456

P-00016_00151

10/24/2007  14:08   2023874946                OFC OF CC (OCD-OCR)                PAGE  03/09



**U.S. Department of Justice**
**Drug Enforcement**

**Administration**

Office of Chief Counsel

_www.dea.gov_                                    Washington, D.C. 20537

                                                 October 24, 2007

Donald G. Walker
Senior Vice President
McKesson Pharmaceutical
One Post Street
San Francisco, California  94104
(415 983- 7062/9060)

Dear Mr. Walker:

         You have been served with a subpoena to appear to testify in the Government's
case-in-chief in the matter of McKesson Drug Company on October 30, 2007 in
Arlington, Virginia.

         If you travel and appear in this proceeding, you may be entitled to Government
paid travel, lodging, and certain expenses. However, in order to accomplish this, the DEA
must issue you travel orders and must book your flight and lodging for you. In addition,
any re-imbursement of expenses must be accomplished by direct deposit to a designated
account of yours. In order to arrange this travel, please contact Ms. Deborah Jordan, DEA
Office of Chief Counsel at (202) 307-3663.

         You may elect to arrange for travel on your own, subject to reimbursement.
However, claims for travel and lodging will be limited to reimbursement for coach travel
and local area lodging rates at whatever ceiling has been established by Federal travel
regulations or contracts.

         If you have any questions regarding the subpoena itself, you may have your
counsel contact me at (202) 307-8131.

                              Sincerely,

                              Wayne Patrick
                              Attorney
                              Drug Enforcement Administration

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                MCKMDL00496457

                                                                         P-00016_00152

10/24/2007  14:08   202307494F                    OFC OF CC (CCD-CCR)                    PAGE  04/09

## Form W-9
(Rev. January 2003)

Department of the Treasury
Internal Revenue Service

# Request for Taxpayer
# Identification Number and Certification

**Give form to the requester. Do not send to the IRS.**

Print or type
See Specific Instructions on page 2.

**Name**

**Business name, if different from above**

**Check appropriate box:** ☐ Individual/Sole proprietor  ☐ Corporation  ☐ Partnership  ☐ Other ▶ ................   ☐ Exempt from backup withholding

**Address (number, street, and apt. or suite no.)**

**City, state, and ZIP code**

**Requester's name and address (optional)**

**List account number(s) here (optional)**

## Part I    Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. For individuals, this is your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

**Social security number**

Note: *If the account is in more than one name, see the chart on page 4 for guidelines on whose number to enter.*

**Employer identification number**

## Part II    Certification

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me), and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding, and

3. I am a U.S. person (including a U.S. resident alien).

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the Certification, but you must provide your correct TIN. (See the instructions on page 4.)

**Sign Here**  |  **Signature of U.S. person ▶**  |  **Date ▶**

## Purpose of Form

A person who is required to file an information return with the IRS, must obtain your correct taxpayer identification number (TIN) to report, for example, income paid to you, real estate transactions, mortgage interest you paid, acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA.

**U.S. person.** Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN to the person requesting it (the requester) and, when applicable, to:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee.

Note: *If a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.*

**Foreign person.** If you are a foreign person, use the appropriate Form W-8 (see Pub. 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the recipient has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

Cat. No. 10231X                                    Form **W-9** (Rev. 1-2003)

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496458

P-00016_00153

10/24/2007   14:08   20230749496F                         OFC OF CC (CCD-CCR)              PAGE   05/09

Form W-9 (Rev. 1-2003)                                                                        Page **2**

**Example:** Article 20 of the U.S. -China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S. -China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity not subject to backup withholding, give the requester the appropriate completed Form W-8.

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 30% of such payments (29% after December 31, 2003; 28% after December 31, 2005). This is called "backup withholding." Payments that may be subject to backup withholding include interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester, or

2. You do not certify your TIN when required (see the Part II instructions on page 4 on details), or

3. The IRS tells the requester that you furnished an incorrect TIN, or

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See the instructions below and the separate Instructions for the Requester of Form W-9.

**Penalties**

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of Federal law, the requester may be subject to civil and criminal penalties.

**Specific Instructions**

**Name**

If you are an individual, you must generally enter the name shown on your social security card. However, if you have changed your last name, for instance, due to marriage without informing the Social Security Administration of the name change, enter your first name, the last name shown on your social security card, and your new last name.

If the account is in joint names, list first, and then circle, the name of the person or entity whose number you entered in Part I of the form.

**Sole proprietor.** Enter your individual name as shown on your social security card on the "Name" line. You may enter your business, trade, or "doing business as (DBA)" name on the "Business name" line.

**Limited liability company (LLC).** If you are a single-member LLC (including a foreign LLC with a domestic owner) that is disregarded as an entity separate from its owner under Treasury regulations section 301.7701-3, enter the owner's name on the "Name" line. Enter the LLC's name on the "Business name" line.

**Other entities.** Enter your business name as shown on required Federal tax documents on the "Name" line. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on the "Business name" line.

**Note:** *You are requested to check the appropriate box for your status (individual/sole proprietor, corporation, etc.)*

**Exempt From Backup Withholding**

If you are exempt, enter your name as described above and check the appropriate box for your status, then check the "Exempt from backup withholding" box in the line following the business name, sign and date the form.

Generally, individuals (including sole proprietors) are not exempt from backup withholding. Corporations are exempt from back withholding for certain payments, such as interest and dividends.

**Note:** *If you are exempt from backup withholding, you should still complete this form to avoid possible erroneous backup withholding.*

**Exempt payees.** Backup withholding is not required on any payments made to the following payees:

1. An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2);

2. The United States or any of its agencies or instrumentalities;

3. A state, the District of Columbia, a possession of the United States; or any of their political subdivisions or instrumentalities;

4. A foreign government or any of its political subdivisions, agencies, or instrumentalities; or

5. An international organization or any of its agencies or instrumentalities.

Other payees that may be exempt from backup withholding include:

6. A corporation;

7. A foreign central bank of issue;

8. A dealer in securities or commodities required to register in the United States, the District of Columbia, or a possession of the United States;

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496459

P-00016_00154

10/24/2007   14:08   2023074945   OFC OF CC (CCD-CCR)   PAGE   06/09

Form W-9 (Rev. 1-2003)                                                                                                Page 3

9. A futures commission merchant registered with the Commodity Futures Trading Commission;

10. A real estate investment trust;

11. An entity registered at all times during the tax year under the Investment Company Act of 1940;

12. A common trust fund operated by a bank under section 584(a);

13. A financial institution;

14. A middleman known in the investment community as a nominee or custodian; or

15. A trust exempt from tax under section 664 or described in section 4947.

The chart below shows types of payments that may be exempt from backup withholding. The chart applies to the exempt recipients listed above, 1 through 15.

| If the payment is for . . . | THEN the payment is exempt for . . . |
|---|---|
| Interest and dividend payments | All exempt recipients except for 9 |
| Broker transactions | Exempt recipients 1 through 13. Also, a person registered under the Investment Advisers Act of 1940 who regularly acts as a broker |
| Barter exchange transactions and patronage dividends | Exempt recipients 1 through 5 |
| Payments over $600 required to be reported and direct sales over $5,000 [1] | Generally, exempt recipients 1 through 7 [2] |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation (including gross proceeds paid to an attorney under section 6045(f), even if the attorney is a corporation) and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees; and payments for services by a Federal executive agency.

## Part I. Taxpayer Identification Number (TIN)

Enter your TIN in the appropriate box. If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see How to get a TIN below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-owner LLC that is disregarded as an entity separate from its owner (see Limited liability company (LLC) on page), enter your SSN (or EIN, if you have one). If the LLC is a corporation, partnership, etc., enter the entity's EIN.

Note: See the chart on page 4 for further clarification of name and TIN combinations.

How to get a TIN. If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local Social Security Administration office or get this form on-line at www.ssa.gov/online/ss5.html. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can get Forms W-7 and SS-4 from the IRS by calling 1-800-TAX-FORM (1-800-829-3676) or from the IRS Web Site at www.irs.gov.

If you are asked to complete Form W-9 but do not have a TIN, write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

Note: Writing "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

Caution: A disregarded domestic entity that has a foreign owner must use the appropriate Form W-8.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496460

P-00016_00155

10/24/2007  14:08   2023074945   OFC OF CC (CCD-CCR)   PAGE  07/09

Form W-9 (Rev. 1-2003)                                                                 Page  4

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 3, and 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). Exempt recipients, see Exempt recipients on Page 2.

**Signature requirements.** Complete the certification as indicated in 1 through 5 below.

1. **Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

2. **Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

3. **Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

4. **Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills of merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

5. **Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA or Archer MSA contributions or distributions, and pension distribution.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account[1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor[2] |
| 4. a. The usual revocable savings trust (grantor is also trustee) | The grantor-trustee[1] |
| b. So-called trust account that is not a legal or valid trust under state law | The actual owner[1] |
| 5. Sole proprietorship or single-owner LLC | The owner[3] |

| For this type of account: | Give name and EIN of: |
|---|---|
| 6. Sole proprietorship or single-owner LLC | The owner[3] |
| 7. A valid trust, estate, or pension trust | Legal entity[4] |
| 8. Corporate or LLC electing corporate status on Form 8832 | The corporation |
| 9. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 10. Partnership or multi-member LLC | The partnership |
| 11. A broker or registered nominee | The broker or nominee |
| 12. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.

[2] Circle the minor's name and furnish the minor's SSN.

[3] You must show your individual name, but you may also enter your business or "DBA" name. You may use either your SSN or EIN (if you have one).

[4] List first and circle the name of the legal trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.)

**Note:** If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons who must file information returns with the IRS to report interest, dividends, and certain other income paid to you, mortgage interest you paid, the acquisition or abandonment of secured property, cancellation of debt, or contributions you made to an IRA or Archer MSA. The IRS uses the numbers for identification purposes and to help verify the accuracy of your tax return. The IRS may also provide this information to the Department of Justice for civil and criminal litigation, and to cities, states, and the District of Columbia to carry out their tax laws. We may also disclose this information to other countries under a tax treaty, or to Federal and state agencies to enforce Federal nontax criminal laws and to combat terrorism.

You must provide your TIN whether or not you are required to file a tax return. Payers must generally withhold 30% of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to a payer. Certain penalties may also apply.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496461

10/24/2007  14:08  202307494⁵                    OFC OF CC (OCD-CCR)                    PAGE  08/09

U.S. DEPARTMENT OF JUSTICE - DRUG ENFORCEMENT ADMINISTRATION

## FFS COMMERCIAL VENDOR RECORD REQUEST FORM
### (CCR) Registration Exempt
(Read Instructions before completing)

| a.     CHANGE ☐ | CREATE NEW ☐  An approved source document must be attached Requests submitted without such a document will not be processed. |
|---|---|

### Vendor Record Information

| b.   Payee Name | c.   W-9 Form must be attached. |
|---|---|
| d.   Remit to Address (if different address on W-9 form) | e.   Tax Exempt? ☐ YES ☐ NO  If YES, a copy of Exempt Certificate must be attached unless the vendor is a Government Entity ☐ YES ☐ NO |

| f. City | g.   State | h.   Zip Code |
|---|---|---|

### Vendor Contact Information

| i.   Name | j.   Phone # | k.   DEA Contact and Phone # |
|---|---|---|

### Vendor Direct Deposit Information

| l.   Financial Institution Name |
|---|

| m. City | n.   State | o.   Zip Code | p.   Phone # |
|---|---|---|---|

| q.   Nine Digit Routing Transit # | r.   Account # |
|---|---|
| | s.   Account Type |

### Vendor Record Requester Information
### (Must be a DEA Employee)

| t. Printed Name  Deborah A. Jordan | u.   Signature |
|---|---|
| v.   Title  Administrative Support Specialist | w.   Phone #  202-307-3663 |
| x.   DEA Office  Chief Counsel | y.   Date |

Instructions for completion of this form are on back

**Vendor** - When completed, please FAX form to DEA contact.

**Requester** - When completed, please FAX form to Office of Finance, FNS (202)353-1134.

FORM DEA-137B (03-04) *Previous editions obsolete*                    Electronic Form Version Designed in JetForm 5.2 Version

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496462

P-00016_00157

## INSTRUCTIONS FOR COMPLETING FORM

A DEA Vendor Record must exist in order to process all obligations and payments for individual and Commercial/Governmental vendors except those where purchase and payment is executed via use of a purchase card.  A properly completed form, containing the required information, submitted by a DEA employee will be the basis for creating a Federal Financial System (FFS) vendor record.  The request form is subject to internal and external review.

**Who is exempt from CCR registration?**
According to the DFARS 204.7302, NASA, DoJ, DoT and Treasury FAR Supplements prospective both current and potential government vendors are required to be registered in CCR to receive payment on a prior contract or prior to the award of a contract; basic agreement, basic ordering agreement, or blanket purchase agreement exceeding $2,500.  Exempt from CCR registration are vendors whose basic agreement is below $2,500 and do not use the electronic funds transfer (EFT) method for payment and are not required to be reported; Also exempt are purchases that (1) Use a Government wide commercial purchase card as both the purchasing and payment mechanism; (2) Classified contracts; (3) Contracts awarded by—(i) Deployed contracting officers in the course of military operations, including but not limited to, contingency operations as defined in 10 U.S.C. 101(a)(13) or humanitarian or peacekeeping operations as defined in 10 U.S.C. 2303(7); or (ii) Contracting officers in the conduct of emergency operations, such as responses to natural or environmental disasters or national or civil emergencies, (4). Contracts to support unusual or compelling needs; (5) Awards made to foreign vendors for work performed outside the United States, if it impractical to obtain CCR registration; (6) Micro-purchases that do not use the electronic funds transfer (EFT) method for payment and are not required to be reported; and (7) Expert witness and litigative consultants who refuse to register as a condition for providing their services.

a.  Check whether this is a change or creation of a new vendor code.  If it is for a new vendor, an approved source document must be attached or the form will not be processed.  Proper source documents are listed in the FFS Financial Handbook, section 5.4 Obligation Documents.
b.  Enter the name of the company/agency under contract or performing business with DEA
c.  An I.R.S. form W-9, Request for Taxpayer Identification Number and Certification, completed by the vendor must be attached for all US vendors unless they are a government entity.  W-9 forms are not required for Foreign vendors.
d.  Remit to address of the vendor if different from the address on the W-9 form, otherwise put N/A.
e.  If the vendor is tax exempt a copy of the exempt certificate must be attached unless the vendor is a government entity.  Also check if the vendor is a government entity or not.
f.  The city of the vendor's remit to address; otherwise put N/A.
g.  The state of the vendor's remit to address; otherwise put N/A.
h.  The zip code of the vendor's remit to address; otherwise put N/A.
i.  Name of the contact person at the vendor's place of business for DEA to contact.
j.  Fill in the phone number of the vendor's contact person.
k.  Enter the DEA Employee's name and phone number responsible for supervising this DEA vendor.
l.  Print the name of the vendor's financial institution/bank.
m.  Print the city of the vendor's bank.
n.  Print the state of the vendor's bank.
o.  Print the zip code of the vendor's bank's address.
p.  Print the phone number of the vendor's bank.
q.  Enter the nine digit routing transit of the vendor's bank.
r.  Enter the account number in the vendor's bank for which the vendor wishes payments deposited.
s.  Enter the type of account for the associated account number you listed.
t.  Print the full name of the vendor record requester.
u.  The vendor record requester must sign their name using his/her official signature.
v.  Print the title of the vendor record requester.
w.  Enter the phone number of the vendor record requester.
x.  Enter the DEA office organization code of the vendor record requester.
y.  Enter the date on which the vendor record requester signed the form.

FORM DEA-137B Instructions (03-04) *Previous editions obsolete*

10/25/2007  10:59    2023874946                 OFC OF CC (CCD-CCR)                    PAGE  01

**U.S. Department of Justice**
**Drug Enforcement Administration**
Office of Chief Counsel

---

*www.dea.gov*                                    Washington, D.C. 20537

                                                 October 25, 2007

Honorable Mary Ellen Bittner
DEA
Office of Administrative Law Judges
Washington, D.C. 20537

Re: In the Matter of McKesson Corporation, DEA Docket No. 06-66

To the Honorable Judge Bittner:

     The Government requests that a subpoena be issued to compel the appearance and
testimony of the following witness at Arlington, Virginia (estimated for October 30,
2007) and be tendered to the Government for appropriate service.

     Michael Mapes
     9323 Hallston Court
     Fairfax Station, Virginia 22039

                                        Respectfully submitted,

                                        Wayne Patrick
                                        Counsel for the Government

cc: John A. Gilbert, Jr., Esq.
    F: (202) 737-9329

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MCKMDL00496464

 

**United States Department of Justice**

Drug Enforcement Administration
Office of Administrative Law Judges
Washington, D.C. 20537
(202) 307-8188

October 25, 2007

Wayne Patrick, Esq.
Office of Chief Counsel
Drug Enforcement Administration
Washington, D.C. 20537

Re: *In the Matter of McKesson Corporation d/b/a McKesson Drug Company*
Docket No. 06-66

Dear Mr. Patrick:

On October 25, 2007, you filed a request for a subpoena in the above-referenced matter. A subpoena for the following individual is enclosed.

Michael Mapes
9323 Hallston Court
Fairfax, Virginia 22039

If you have any questions or need additional information, please contact my law clerk, Thomas 'Skip' Mark, at (202) 307-8188.

Sincerely,

*Mary Ellen Bittner*

Mary Ellen Bittner
Administrative Law Judge

Enclosure

cc: John A. Gilbert, Jr., Esq. (w/o enclosure)

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

10/26/2007  12:20   2023074945          OFC OF CC (CCD-COR)                    PAGE  01/03

**U. S. Department of Justice**
Drug Enforcement Administration

*www.dea.gov*

OPTIONAL FORM 99 (7-90)

**FAX TRANSMITTAL**     # of pages ▶ 3

To John Gilbert      From Linden Barber
Dept./Agency                Phone #

Fax # 202-737-9329      Fax #

NSN 7540-01-317-7368     5099-101     GENERAL SERVICES ADMINISTRATION

John A. Gilbert, Jr.
Hyman, Phelps, and McNamara PC
700 Thirteenth Street, N.W.
Suite 1200
Washington, D.C. 20005

Dear Mr. Gilbert:

In furtherance of our settlement discussions, the Drug Enforcement Administration (DEA) has authorized me to extend the following offer to the McKesson Corporation (McKesson) to resolve certain pending and potential administrative and civil actions against McKesson. Although the specific language of any agreement must be put into a binding written agreement, the key terms of such a settlement from DEA's perspective are as follows:

1. McKesson must pay civil fines for failing to report suspicious orders in accordance with 21 C.F.R. § 1301.74(b) as follows:

   A. In the Middle District of Florida, McKesson must pay $12.8 million;

   B. In the District of Maryland, McKesson must pay $2.4 million; and

   C. In the Southern District of Texas, McKesson must pay $2.4 million.

Final approval from the appropriate United States Attorneys' Offices must be obtained prior to finalizing the proposed civil fine settlement. DEA fully supports settlement at the proposed levels and anticipates final approval from the United States Attorneys' Offices.

2. In the Eastern District of California, McKesson must pay $280,000 for failing to report thefts and significant losses in accordance with 21 C.F.R. § 1301.74(c).

3. McKesson must enter a national Memorandum of Agreement (MOA) covering all registered distribution centers owned or operated by McKesson, including those that may be acquired or registered in the future. The MOA's key terms are as follows:

   A. McKesson must agree to a suspension of its Schedule III hydrocodone codes in the Lakeland and Conroe distribution centers for a period of not less than six months. These drug codes will be restored upon McKesson's implementation of all other requirements set forth in the national MOA, and upon passing an inspection by DEA. If McKesson

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

fails to implement all requirements of the MOA or fails to pass DEA's inspections, DEA will notify McKesson in writing of the deficiencies and will extend the suspensions.

B.  McKesson must agree to implement a system that reports to DEA via Electronic Data Interchange the distributions of all controlled substances and all ephedrine and pseudoephedrine products.  Reports must be made to DEA within two business days of the distribution.

C.  McKesson must agree to inform DEA of all suspicious orders of controlled substances as required by 21 C.F.R. § 1301.74(b), except that McKesson must make such reports to DEA Headquarters in a format that is mutually and reasonably agreed upon by the Parties.

D.  McKesson must acknowledge that any express or implied approval by DEA of a suspicious order reporting system that permits McKesson to provide a monthly "excessive purchase report" is rescinded, and that such a system does not comply with 21 C.F.R. § 1301.74(b).

E.  McKesson must agree that it will not fill a suspicious order unless and until a McKesson employee determines that, notwithstanding the suspicious nature of the order, the order is indeed for a legitimate purpose and not likely to be diverted.

F.  McKesson must agree to submit to inspections by DEA for the purpose of determining compliance with the MOA.  Inspections will occur not sooner than 90 days after the execution of the MOA and not later than 150 days after the execution of the MOA.  DEA will inspect the Lakeland, Florida and Conroe, Texas facilities, and up to six additional facilities.  McKesson must agree to one additional inspection of its Lakeland and Conroe facilities after the hydrocodone drug codes are restored.  These inspections shall occur within 180 days after the hydrocodone codes are restored.  This provision shall in no way limit the authority of DEA to conduct inspections or engage in other authorized regulatory law enforcement activities at or with respect to any of McKesson's registered locations.

G.  McKesson must agree to review its past distributions of hydrocodone and alprazolam and conduct investigations of any current customers that have placed suspicious orders for hydrocodone and alprazolam within the preceding 24 months.

H.  DEA will agree that it will not pursue any administrative action against any McKesson distribution center for distributions of hydrocodone or alprazolam that occurred prior to the execution of the agreement.

I.  DEA will agree that it will not refer to any United States Attorney's Office a case in pursuit of a civil fine against any McKesson distribution center based upon distributions of hydrocodone or alprazolam that occurred prior to the execution of the agreement other

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

than the fines set forth in paragraph 1 above.  Note that the fine in paragraph 2 is not based on distributions of hydrocodone or alprazolam.

    If you believe that this letter does not comport with our discussion on October 25, 2007, please contact me.  This offer shall remain effective until October 26, 2007 at 5:00 p.m. Eastern Daylight Time or unless withdrawn in writing by DEA.

                  Sincerely,

                  D. Linden Barber
                  Associate Chief Counsel
                  Diversion and Regulatory Litigation Section

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496468

P-00016_00163





**U.S. Department of Justice**
**Drug Enforcement Administration**

Office of Chief Counsel [1]
8701 Morrisette Drive
Springfield, VA 22152

*www.dea.gov*

November 1, 2007

Honorable Mary Ellen Bittner
Office of Administrative Law Judges
Washington, DC 20537

Re: In the Matter of McKesson Drug Company, DEA Docket No. 06-66

The parties request that the Office of Administrative Law Judges tender to the parties a copy of the official transcript taken in this matter on October 30-31, 2007 as soon as it is available. I have spoken with counsel for Respondent, and he joins in this request.

Respectfully,

Wayne Patrick
Attorney
Drug Enforcement Administration

Cc: John Gilbert, Jr., Esq.
    Hyman, Phelps & McNamara
    700 Thirteenth Street, NW
    Washington DC  20005

---

[1] Please note new address for regular mail and express delivery mail to DEA HQS offices.

1

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496469

P-00016_00164




**United States Department of Justice**

Drug Enforcement Administration
Office of Administrative Law Judges
Washington, D.C. 20537
(202) 307-8188

November 7, 2007

John A. Gilbert, Jr., Esq.
Hyman, Phelps & McNamara, P.C.
700 Thirteenth Street, N.W., Suite 1200
Washington, D.C. 20005

Re: *In the Matter of McKesson Corporation d/b/a McKesson Drug Company*
Docket No. 06-66

Dear Counsel:

As you know, the hearing in this proceeding will be held at the Drug Enforcement Administration's (DEA) headquarters. The Office of Security Programs requires a list of all individuals attending the hearing other than DEA employees.

Please notify this office of all persons attending the hearing by 4:00 p.m. eastern standard time on Tuesday, November 13, 2007. Please direct your response to the Hearing Clerk, Ms. Helen Farmer, and provide the individuals' full name and date of birth. Your prompt attention to this matter is greatly appreciated.

If you have any additional questions or concerns, please contact me at (202) 307-8188. Thank you for your cooperation.

Respectfully,

Thomas 'Skip' Mark
Law Clerk to Mary Ellen Bittner
Administrative Law Judge

cc:     Wayne M. Patrick, Esq., Office of Chief Counsel
        Helen Farmer, Office of Administrative Law Judges

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496470

P-00016_00165

 

**United States Department of Justice**

Drug Enforcement Administration
Office of Administrative Law Judges
Washington, D.C. 20537
(202) 307-8188

November 7, 2007

Wayne M. Patrick, Esq.
Office of Chief Counsel
Drug Enforcement Administration
Washington, D.C. 20537

John A. Gilbert, Jr., Esq.
Hyman, Phelps & McNamara, P.C.
700 Thirteenth Street, N.W., Suite 1200
Washington, D.C. 20005

Re: *In the Matter of McKesson Corporation d/b/a McKesson Drug Company*
Docket No. 06-66

Dear Counsel:

At Judge Bittner's direction, I am writing to advise you that the hearing scheduled to begin at 9:30 a.m. on November 27, 2007, will be held in the hearing room at the Drug Enforcement Administration's headquarters, 600 Army Navy Drive, Arlington, Virginia 22202. This session of the hearing is scheduled to last for three days.

You are reminded to meet the law clerk at 9:00 a.m. on the first day of the hearing to have exhibits marked. Please bring an extra set of exhibits for the judge, and make certain that witnesses are available to testify without delay.

If you have any additional questions or concerns, please contact me at (202) 307-8188.

Respectfully,

Thomas 'Skip' Mark
Law Clerk to Mary Ellen Bittner
Administrative Law Judge

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

5603.013.01

LAW OFFICES

# HYMAN, PHELPS & McNAMARA, P.C.

700 THIRTEENTH STREET, N.W.
SUITE 1200

JOHN A. GILBERT, JR.

WASHINGTON, D. C. 20005-5929
(202) 737-5600
FACSIMILE
(202) 737-9329

www.hpm.com

Direct Dial (202) 737-4293

November 19, 2007

## BY FACSIMILE/CONFIRMATION COPY BY MAIL

Linden Barber, Esq.
Chief, Regulatory Section
Office of Chief Counsel
Drug Enforcement Administration
600 Army/Navy Drive
Arlington, Virginia 22202

Dear Mr. Barber:

This will confirm our telephone conversation on Friday, November 16, 2007, on the proposed settlement of the pending Drug Enforcement Administration (DEA) administrative and civil actions against several McKesson Corporation (McKesson) facilities. McKesson has agreed to the government's demand to pay a civil penalty in the amount of $13.25 million and enter a settlement agreement with DEA. This offer is contingent on parties finalizing the settlement agreement.

The payment of the fine and settlement agreement will involve a global settlement covering all McKesson facilities, including but not limited to, the matters identified at McKesson's facilities in Lakeland, Florida; Landover, Maryland; Conroe, Texas; West Sacramento, California; and the potential allegation against one of our facilities you mentioned in our telephone conversation.

2603 MAIN STREET
SUITE 760
IRVINE, CALIFORNIA 92614
(949) 553-7400
FAX (949) 553-7433

4819 EMPEROR BOULEVARD
SUITE 400
DURHAM, NORTH CAROLINA 27703
(919) 313-4750
FAX (919) 313-4751

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496472

P-00016_00167

Linden Barber, Esq.
November 19, 2007
Page 2

HYMAN, PHELPS & MCNAMARA, P.C.

     I also understand that the parties will move the Administrative Law Judge (ALJ) to stay the administrative hearing currently pending before DEA, DEA Docket No. 06-66, with the intent to terminate the proceedings upon entering a final settlement agreement.

     Please let me know as soon as possible if you disagree with any part of this summary.

Sincerely,

John A. Gilbert, Jr.

cc:    Ina Trugman, McKesson Corporation

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

 

LAW OFFICES

# HYMAN, PHELPS & McNAMARA, P.C.

JAMES R. PHELPS
PAUL M. HYMAN
ROBERT A. DORMER
STEPHEN H. McNAMARA
ROGER C. THIES
THOMAS SCARLETT
JEFFREY N. GIBBS
BRIAN J. DONATO
FRANK J. SASINOWSKI
DIANE B. McCOLL
A. WES SIEGNER, JR.
ALAN M. KIRSCHENBAUM
DOUGLAS B. FARQUHAR
JOHN A. GILBERT, JR.
JOHN R. FLEDER
MARC H. SHAPIRO
JEFFREY N. WASSERSTEIN
DAVID B. CLISSOLD
JOSEPHINE M. TORRENTE

ROBERT T. ANGAROLA
(1945-1996)

700 THIRTEENTH STREET, N.W.

SUITE 1200

WASHINGTON, D. C. 20005-5929

(202) 737-5600

FACSIMILE
(202) 737-9329

www.hpm.com

JENNIFER B. DAVIS
KIRK L. DOBBINS*
OF COUNSEL

CASSANDRA A. SOLTIS
MICHELLE L. BUTLER
ANNE MARIE MURPHY
PAUL L. FERRARI
LARRY K. HOUCK
DARA S. KATCHER*
KURT R. KARST
CHRISTINE P. BUMP
BRIAN J. WESOLOSKI
NOELLE C. SITTHIKUL*
RIËTTE VAN LAACK*
CARMELINA G. ALLIS*

*NOT ADMITTED IN DC

CHERYL F. GRAHAM, MD, FCP
REGULATORY SCIENTIST

## FACSIMILE TRANSMITTAL SHEET

The pages in this facsimile transmission are for the sole use of the individual and entity to whom they are addressed. They may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient or the employee or agent responsible for delivering this transmission to the intended recipient, be aware that any disclosure, duplication, distribution, review or use of the contents of this transmission is strictly prohibited. If you have received this transmission in error, please notify this firm immediately by collect call so we may arrange to retrieve this transmission at no cost to you.

Tel. No.: (202) 737-5600                        Fax No.: (202) 737-9329

| | | | |
|---|---|---|---|
| **FROM:** | John Gilbert | **DATE:** | November 19, 2007 |
| **TO:** | Linden Barber | **FAX NO.:** | (202) 307-4946 |
| **NO. OF PAGES (including this page):** | 3 | | |

2603 MAIN STREET
SUITE 760
IRVINE, CALIFORNIA 92614
(949) 553-7400
FAX: (949) 553-7433

4819 EMPEROR BOULEVARD
SUITE 400
DURHAM, NORTH CAROLINA 27703
(919) 313-4750
FAX: (919) 313-4751

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496474

P-00016_00169

 

## UNITED STATES DEPARTMENT OF JUSTICE
### Drug Enforcement Administration

In the Matter of

**McKesson Corporation
d/b/a McKesson Drug Company**

Docket No. 08-14

### ORDER

On November 20, 2007, counsel for Respondent filed a request for hearing in the above-captioned matter and, in accordance with a November 19, 2007 telephonic conference with counsel for both parties, requested an indefinite stay of the proceedings pending a settlement of this matter.

In light of the position of the parties to this matter, Respondent's request for a stay is granted, and it is hereby

ORDERED that the proceedings in this matter will remain stayed until March 10, 2008. Counsel for both parties shall participate in a status conference call at 10:00 a.m. on December 17, 2007, apprising me of the progress of settlement negotiations.

Dated:  November 23, 2007

Mary Ellen Bittner
Administrative Law Judge

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

**CERTIFICATE OF SERVICE**

This is to certify that the undersigned, on November 23, 2007, caused a copy of the foregoing to be delivered via interoffice mail to counsel for the Government, Wayne M. Patrick, Esq., Office of Chief Counsel, Drug Enforcement Administration, Washington, D.C. 20537, and a copy to be mailed, postage paid, to counsel for Respondent, John A. Gilbert, Jr., Esq., Hyman, Phelps & McNamara, P.C., 700 Thirteenth Street, N.W., Suite 1200, Washington, D.C. 20005.

Thomas 'Skip' Mark
Law Clerk to Mary Ellen Bittner
Administrative Law Judge

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

**UNITED STATES DEPARTMENT OF JUSTICE**
**Drug Enforcement Administration**

In the Matter of

**McKesson Corporation**
**d/b/a McKesson Drug Company**

Docket No. 06-66

### ORDER

On November 19, 2007, I held a telephonic conference with counsel for both parties to the above-captioned matter. In that conference, counsel advised me that the parties were currently engaged in settlement negotiations, and requested a stay of the proceedings so that they can pursue a settlement.

In light of the position of the parties the parties' request for a stay is granted, and it is hereby

ORDERED that the hearing scheduled for November 27-29, 2007, is cancelled, and it is further

ORDERED that the proceedings in this matter will remain stayed until March 10, 2008. Counsel for both parties shall participate in a status conference call at 10:00 a.m. on December 17, 2007, apprising me of the progress of settlement negotiations.

Dated:  November 23, 2007

*Mary Ellen Bittner*
Mary Ellen Bittner
Administrative Law Judge

MCKMDL00496477

P-00016_00172

11/19/2007  13:51    2023074945          OFC OF CC (CCD-CCR)                    PAGE  01/01

**U. S. Department of Justice**
Drug Enforcement Administration

www.dea.gov

NOV 19 2007

OPTIONAL FORM 99 (7-90)

**FAX TRANSMITTAL** # of pages ►

To _JOHN GILBERT_   From _LINDEN BARBE_
Dept./Agency                Phone #

Fax # _737-9329_   Fax #

NSN 7540-01-317-7368    5099-101    GENERAL SERVICES ADMINISTRATION

John A. Gilbert, Jr.
Hyman, Phelps, and McNamara PC
700 Thirteenth Street, N.W.
Suite 1200
Washington, D.C. 20005

Dear Mr. Gilbert:

I received your letter dated November 19, 2007. I agree that the Drug Enforcement Administration (DEA) and McKesson Corporation (McKesson) should jointly seek a stay of the administrative proceedings involving McKesson's Lakeland, Florida Distribution Center while we attempt to finalize the tentative agreement that we have reached.

I generally agree with the propositions set forth in your letter. However, I note that the new matter involving a fifth McKesson Distribution Center that I discussed with you on November 16, 2007, is not necessarily included in the terms of the proposed settlement. I am working with the DEA Field Division that is investigating the matter to determine the nature and scope of DEA's concerns. I have received information that the preliminary investigation revealed concerns about McKesson's distribution of a wide variety of controlled substances including hydrocodone, methadone, and oxycodone. The distributions were made to an entity that engaged in diversion unrelated to Internet diversion schemes or purported "pain management" clinics and pharmacies. As I indicated in our telephone conversation, DEA cannot commit to resolving this case as part of the global settlement without obtaining additional information.

Also, your letter did not refer to the additional demand that DEA made in its counter-offer requiring McKesson to forego distribution of alprazolam from it Conroe, Texas and Lakeland, Florida Distribution Centers. If McKesson understands the terms of DEA's offer and believes that a settlement can be reached, a stay of the proceedings is appropriate. I understand that the uncertainty regarding the fifth McKesson facility must be resolved before the parties can finalize a settlement.

Sincerely,

D. Linden Barber
Associate Chief Counsel
Diversion and Regulatory Litigation Section

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496478

P-00016_00173

## UNITED STATES DEPARTMENT OF JUSTICE
### Drug Enforcement Administration

| | |
|---|---|
| In the Matter of<br><br>**McKesson Corporation<br>d/b/a McKesson Drug Company** | Docket No. 06-66 |

### MEMORANDUM TO COUNSEL

On December 17, 2007, I held a telephonic conference with counsel for both parties to discuss the progress of settlement negotiations in the above-captioned matter. In that conference, counsel advised me that the parties were still engaged in settlement negotiations, but had reached an agreement in principle. In light of the progress of negotiations, I scheduled a second telephonic status conference for January 14, 2008 at 10:00 a.m. eastern standard time, unless the parties reach a settlement prior to this date.

Dated:  December 17, 2007

*Mary Ellen Bittner*
Mary Ellen Bittner
Administrative Law Judge

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

This is to certify that the undersigned, on December 17, 2007, caused a copy of the foregoing to be delivered via interoffice mail to counsel for the Government, Wayne M. Patrick, Esq., Office of Chief Counsel, Drug Enforcement Administration, Washington, D.C. 20537, and a copy to be mailed, postage paid, to counsel for Respondent, John A. Gilbert, Jr., Esq., Hyman, Phelps & McNamara, P.C., 700 Thirteenth Street, N.W., Suite 1200, Washington, D.C. 20005.

Thomas 'Skip' Mark
Law Clerk to Mary Ellen Bittner
Administrative Law Judge

2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496480

P-00016_00175



LAW OFFICES

# HYMAN, PHELPS & MCNAMARA, P.C.

700 THIRTEENTH STREET, N.W.
SUITE 1200
WASHINGTON, D. C. 20005
(202) 737-5600
FACSIMILE
(202) 737-9329
www.hpm.com

## FACSIMILE TRANSMITTAL SHEET

The pages in this facsimile transmission are for the sole use of the individual and entity to whom they are addressed. They may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient or the employee or agent responsible for delivering this transmission to the intended recipient, be aware that any disclosure, duplication, distribution, review or use of the contents of this transmission is strictly prohibited. If you have received this transmission in error, please notify this firm immediately by collect call so we may arrange to retrieve this transmission at no cost to you.

Tel. No.: (202) 737-5600 | Fax No.: (202) 737-9329

| **FROM:** | John Gilbert | **DATE:** | March 7, 2008 |
|---|---|---|---|
| **TO:** | Linden Barber | **FAX NO.:** | (202) 307-4946 |

**NO. OF PAGES (including this page) :** 4

2603 MAIN STREET
SUITE 760
IRVINE, CALIFORNIA 92614
(949) 553-7400
FAX: (949) 553-7433

4819 EMPEROR BOULEVARD
SUITE 400
DURHAM, NORTH CAROLINA 27703
(919) 313-4750
FAX: (919) 313-4751

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

LAW OFFICES

# HYMAN, PHELPS & McNAMARA, P.C.

700 THIRTEENTH STREET, N.W.
SUITE 1200
WASHINGTON, D. C. 20005
(202) 737-5600
FACSIMILE
(202) 737-9329
———
www.hpm.com

## FACSIMILE TRANSMITTAL SHEET

The pages in this facsimile transmission are for the sole use of the individual and entity to whom they are addressed.
They may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you
are not the intended recipient or the employee or agent responsible for delivering this transmission to the intended
recipient, be aware that any disclosure, duplication, distribution, review or use of the contents of this transmission is
strictly prohibited. If you have received this transmission in error, please notify this firm immediately by collect call so
we may arrange to retrieve this transmission at no cost to you.

Tel. No.: (202) 737-5600        Fax No.: (202) 737-9329

| | | | |
|---|---|---|---|
| **FROM:** | John Gilbert | **DATE:** | March 7, 2008 |
| **TO:** | Honorable Mary Ellen Bittner<br>Wayne Patrick | **FAX NO.:** | (202) 307-8198<br>(202) 307-4946 |

**NO. OF PAGES (including this page) :** 4

2603 MAIN STREET
SUITE 760
IRVINE, CALIFORNIA 92614
(949) 553-7400
FAX: (949) 553-7433

4819 EMPEROR BOULEVARD
SUITE 400
DURHAM, NORTH CAROLINA 27703
(919) 313-4750
FAX: (919) 313-4751

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER



**U. S. Department of Justice**
Drug Enforcement Administration

---

*www.dea.gov*                                   Washington, D.C.  20537

**MAY 0 1 2008**

Mr. John A. Gilbert, Jr.
Hyman, Phelps & McNamara, P.C.
7100 Thirteenth Street N.W.
Washington, D.C.  20005-5929

Dear Mr. Gilbert:

     I am writing to confirm our telephone conversation of May 1, 2008.  In order to finalize the Settlement Agreement between the United States and McKesson Corporation ("McKesson"), we agreed to make (and I made) the following changes to the Settlement Agreement ("Agreement"):

     1.  On the first line of the first paragraph of the Agreement, I inserted "30th" in to the blank to indicate that the Parties entered into the Agreement on April 30, 2008, when Mr. Donald Walker was the last representative of a Party to sign the Agreement.

     2.  In paragraph 17, I replaced "April" with "May" to reflect that administrative Memorandum of Agreement ("MOA") between the Drug Enforcement Administration ("DEA") and McKesson will be finalized in May rather than April.  We further agree that upon DEA's execution of the MOA, I will insert the date of the MOA into the blank in paragraph 17.

     3.  In paragraph 22, I struck one occurrence of the word "this" as the word erroneously appeared twice in succession.

In order to finalize the MOA, we agreed to make (and I made) the following changes to the MOA:

     1.  On the second line of the first paragraph of the MOA, I replaced "April" with "May" to reflect that MOA between DEA and McKesson will be finalized in May rather than April.

     2.  On the copy of page 10 that has been executed by McKesson's representatives, I replaced "April" with "May" in the datelines beneath the signature blocks for DEA's representatives.

     By my signature on this letter, I warrant that I am authorized by the six United States Attorney's Offices who executed the Agreement to make the changes that are set forth above to the Agreement.  I further warrant that I am authorized by DEA to make the changes that are set forth above to the MOA.  The modified Agreement and MOA will be the final and binding Agreement and MOA.

---

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                      MCKMDL00496483

P-00016_00178

2

In order to affix the signature pages to Agreement and MOA as modified in accordance with this letter, I require your consent and representation that you are authorized by your client to make these technical modifications. Please counter-sign this letter and return to me by email at your earliest convenience.

Sincerely,

D. Linden Barber
Associate Chief Counsel
Diversion & Regulatory Litigation Section

On behalf of McKesson, I consent to the technical changes described in the letter above that are being made to the Agreement and the MOA to which McKesson is a party. I am authorized by McKesson to consent to these changes. The modified Agreement and MOA will be the final and binding Agreement and MOA.

John A. Gilbert, Jr.
Hyman, Phelps & McNamara, P.C.
Counsel to McKesson Corporation

Dated: May ___/___, 2008

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

UNITED STATES DEPARTMENT OF JUSTICE
Drug Enforcement Administration

In the Matter of

**McKesson Corporation**
**d/b/a McKesson Drug Company**

Docket Nos. 06-66
08-14

### ORDER

On March 7, 2008, counsel for Respondent filed a Consent Motion to Stay Administrative Hearings and Proceedings in the above-captioned matters. The Government and Respondent, through counsel, move to stay the administrative hearing in Docket No. 06-66 and to stay further proceedings in Docket No. 08-14 so that they may finalize their settlement agreement in both matters.

In light of the position of the parties the parties' request for a stay is granted, and it is hereby

ORDERED that the hearing scheduled for March 10-12, 2008, is cancelled, and it is further

ORDERED that the proceedings in both of the above-captioned matters will remain stayed indefinitely. If the parties have not settled these matters prior to April 7, 2008, my attorney advisor will contact counsel for the respective parties to schedule a status conference.

Dated: March 7, 2008

By the direction of
Mary Ellen Bittner
Administrative Law Judge

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

CERTIFICATE OF SERVICE

This is to certify that the undersigned, on March 7, 2008, caused copies of the foregoing to be faxed and delivered via interoffice mail to counsel for the Government, Wayne M. Patrick, Esq., Office of Chief Counsel, Drug Enforcement Administration, Washington, D.C. 20537, and copies to be faxed and mailed, postage paid, to counsel for Respondent, John A. Gilbert, Jr., Esq., Hyman, Phelps & McNamara, P.C., 700 Thirteenth Street, N.W., Suite 1200, Washington, D.C. 20005.

Thomas 'Skip' Mark
Attorney Advisor to Mary Ellen Bittner
Administrative Law Judge

2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496486

P-00016_00181

UNITED STATES DEPARTMENT OF JUSTICE
Drug Enforcement Administration

| | |
|---|---|
| In The Matter of | ) |
| | ) |
| **McKesson Corporation** | ) |
| **d/b/a McKesson Drug Company** | ) |
| | ) |

Docket Nos. 06-66 and
08-14

## CONSENT MOTION TO STAY
## ADMINISTRATIVE HEARING AND PROCEEDINGS

McKesson Corporation (Respondent), by and through the undersigned counsel,

files this Consent Motion to indefinitely stay the administrative hearing in Docket No.

06-66 and stay further proceedings in Docket No. 08-14.

In support of the Consent Motion, McKesson asserts the following:

1. The Government and Respondent have reached an agreement in principle to

resolve both of the above captioned matters. The parties are continuing to negotiate the

terms of the settlement in both matters.

2. The Government and Respondent have discussed this matter and both parties

mutually desire to request an indefinite stay of the matters to allow time to finalize the

settlement agreement in these matters.

3. The Government and Respondent request that the ALJ schedule a telephonic

status conference within 30 days.

1

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

**Wherefore,** the Government and Respondent request that the Administrative Law Judge cancel the hearing in Docket No. 06-66 scheduled to commence on March 10, 2008, and stay further proceedings in Docket Nos. 06-66 and 08-14.

Respectfully submitted,

John A. Gilbert, Jr.
Hyman, Phelps & McNamara PC
700 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 737-5600
(202) 737-9329 (Fax)

Counsel for McKesson Corporation

Dated:  March 7, 2008

2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496488

P-00016_00183

## CERTIFICATE OF SERVICE

This is to certify that the undersigned, on March 7, 2008, caused a copy of the foregoing to be delivered by facsimile with a confirmation copy by hand delivery to The Honorable Mary Ellen Bittner U.S. Department of Justice, Drug Enforcement Administration, 600 Army Navy Drive, Arlington, Virginia, 22202, and copies to be delivered by facsimile and regular mail to:

Wayne Patrick
Diversion and Regulatory Litigation Section
Office of Chief Counsel
Drug Enforcement Administration
600 Army-Navy Drive
Arlington, Virginia  22202

D. Linden Barber
Chief, Regulatory Section
Office of Chief Counsel
Drug Enforcement Administration
600 Army/Navy Drive
Arlington, Virginia  22202

Kathleen McKinley

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

# Confirmation Report – Memory Send

Time : Mar-07-08 10:35
Tel line : 2027379329
Name : HYMAN PHELPS AND MCNAMARA

| | | |
|---|---|---|
| Job number | : | 102 |
| Date | : | Mar-07 10:35 |
| To | : | 2023078198 |
| Document pages | : | 04 |
| Start time | : | Mar-07 10:35 |
| End time | : | Mar-07 10:35 |
| Pages sent | : | 04 |
| Status | : | OK |

Job number : 102 *** SEND SUCCESSFUL ***

LAW OFFICES
HYMAN, PHELPS & MCNAMARA, P.C.

FACSIMILE TRANSMITTAL SHEET

The pages in this facsimile transmission are for the sole use of the individual and entity to whom they are addressed. They may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient or the employee or agent responsible for delivering this transmission to the intended recipient, be aware that any disclosure, duplication, distribution, review or use of the contents of this transmission is strictly prohibited. If you have received this transmission in error, please notify this firm immediately by collect call so we may arrange to retrieve this transmission at no cost to you.
Tel. No.: (202) 737-5600 Fax No.: (202) 737-9329

| | | | |
|---|---|---|---|
| FROM: | John Gilbert | DATE: | March 7, 2008 |
| TO: | Honorable Mary Ellen Bittner<br>Wayne Patrick | FAX NO.: | (202) 307-8198<br>(202) 307-4946 |

NO. OF PAGES (including this page) : 4

# Confirmation Report — Memory Send

```
                              Time     : Mar-07-08  10:40
                              Tel line : 2027379329
                              Name     : HYMAN PHELPS AND MCNAMARA
```

| | | |
|---|---|---|
| Job number | : | 104 |
| Date | : | Mar-07  10:39 |
| To | : | 2023074946 |
| Document pages | : | 04 |
| Start time | : | Mar-07  10:39 |
| End time | : | Mar-07  10:40 |
| Pages sent | : | 04 |
| Status | : | OK |

Job number    : 104              *** SEND SUCCESSFUL  ***

---

FAX NO.: (202) 307-4946

TO:  Linden Barber              NO. OF PAGES (including this page) :

DATE:  March 7, 2008            FROM:  John Gilbert

Fax No.: (202) 737-9329         Tel. No.: (202) 737-5600

The pages in this facsimile transmission are for the sole use of the individual and entity to whom they are addressed.
They may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you
are not the intended recipient or the employee or agent responsible for delivering this transmission to the intended
recipient, be aware that any disclosure, distribution, duplication, review or use of the contents of this transmission is
strictly prohibited. If you have received this transmission in error, please notify this firm immediately by collect call so
we may arrange to retrieve this transmission at no cost to you.

## FACSIMILE TRANSMITTAL SHEET

# HYMAN PHELPS & MCNAMARA, P.C.

LAW OFFICES
700 THIRTEENTH STREET, N.W.
SUITE 1200
WASHINGTON, D. C. 20005
(202) 737-5600
FACSIMILE
(202) 737-9329
www.hpm.com

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

# Confirmation Report — Memory Send

```
Time      : Mar-07-08  10:38
Tel line  : 2027379329
Name      : HYMAN PHELPS AND MCNAMARA
```

| | | |
|---|---|---|
| Job number | : | 103 |
| Date | : | Mar-07 10:37 |
| To | : | 2023074946 |
| Document pages | : | 04 |
| Start time | : | Mar-07 10:37 |
| End time | : | Mar-07 10:38 |
| Pages sent | : | 04 |
| Status | : | OK |

Job number   : 103          *** SEND SUCCESSFUL ***

---

## FACSIMILE TRANSMITTAL SHEET

The pages in this facsimile transmission are for the sole use of the individual and entity to whom they are addressed. They may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If you are not the intended recipient or the employee or agent responsible for delivering this transmission to the intended recipient, be aware that any disclosure, duplication, distribution, review or use of the contents of this transmission is strictly prohibited. If you have received this transmission in error, please notify this firm immediately by collect call or we may arrange to retrieve this transmission at no cost to you.

Tel. No.: (202) 737-5600                          Fax No.: (202) 737-9329

| FROM: | John Gilbert | DATE: | March 7, 2008 |
|---|---|---|---|
| TO: | Honorable Mary Ellen Bitner | FAX NO.: | (202) 307-8198 |
| | Wayne Patrick | | (202) 307-4946 |

NO. OF PAGES (including this page) :   4

### HYMAN PHELPS & MCNAMARA, P.C.
LAW OFFICES
700 THIRTEENTH STREET, N.W.
SUITE 1200
WASHINGTON, D.C. 20005
(202) 737-5600
FACSIMILE
(202) 737-9329
www.hpm.com

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER                    MCKMDL00496492

## SETTLEMENT AND RELEASE AGREEMENT
### AND
## ADMINISTRATIVE MEMORANDUM OF AGREEMENT

This Settlement and Release Agreement and Administrative Memorandum of Agreement ("Agreement") is entered into on this 2nd day of May 2008, by and between the United States Department of Justice, Drug Enforcement Administration (hereinafter "DEA") and McKesson Corporation including facilities doing business as McKesson Pharmaceutical and McKesson Drug Company (hereinafter "McKesson") (each a "Party" and collectively the "Parties").

### APPLICABILITY

This Agreement shall be applicable to McKesson and all McKesson DEA registered facilities as identified in Appendix A.

### BACKGROUND

WHEREAS, on August 4, 2006, DEA, by its Deputy Assistant Administrator, Joseph T. Rannazzisi, issued an Order to Show Cause ("Order #1") to McKesson, with respect to its Lakeland distribution center located at 1515 West Bella Vista Street, Lakeland, Florida 33805 (the "Lakeland Facility"); and

WHEREAS, Order #1 alleged, among other things, that McKesson failed to maintain effective controls at the Lakeland Facility against diversion of particular controlled substances into other than legitimate medical, scientific and industrial channels by sales to certain customers of McKesson; and

WHEREAS, after service of Order #1 on McKesson, representatives of DEA and McKesson entered into discussions on how best to resolve the issues raised in the Order; and

WHEREAS, on November 1, 2007, DEA, by its Deputy Assistant Administrator, Joseph T. Rannazzisi, issued a second Order to Show Cause to McKesson ("Order #2," and "Orders" when jointly referring to Order #1 and Order #2), with respect to its Landover distribution center located at 7721 Polk Street, Landover, Maryland, 20785 (the "Landover Facility"); and

WHEREAS, Order #2 alleged, among other things, that McKesson failed to maintain effective controls at the Landover Facility against diversion of particular controlled substances into other than legitimate medical, scientific and industrial channels by sales to certain customers of McKesson; and

WHEREAS, DEA alleges that McKesson failed to maintain effective controls at its Conroe, Texas distribution center (the "Conroe Facility") against diversion of particular controlled substances into other than legitimate medical, scientific and industrial channels by sales to certain customers of McKesson; and

MCKMDL00496493

P-00016_00188

WHEREAS, DEA alleges that McKesson failed to maintain effective controls at its Denver, Colorado distribution center (the "Denver Facility") against diversion of particular controlled substances into other than legitimate medical, scientific and industrial channels by sales to certain customers of McKesson; and

WHEREAS, DEA alleges that McKesson has failed to report suspicious orders of controlled substances and to report thefts or significant losses of controlled substances as more fully set forth in Appendix B, Paragraph 8 as required by 21 C.F.R. 1301.74(b); and

WHEREAS, McKesson is registered with DEA at 39 facilities as distributors of Schedule II-V controlled substances under the provisions of the Comprehensive Drug Abuse Prevention Control Act of 1970, Title 21 U.S.C. § 801 et seq., ("CSA" or "the Act"); and

WHEREAS, McKesson denies the allegations set forth in the Orders and as otherwise summarized above and also denies any allegations of improper conduct including but not limited to allegations that it failed to maintain effective controls against diversion or failed to file suspicious order reports; and

WHEREAS, the Parties believe that the continued cooperation between the Parties to reduce the potential for diversion is in the public interest, including but not limited to sharing of information related to the distribution of controlled substances; and

WHEREAS, the Parties believe that a settlement in this matter is in the public interest and desire to settle and resolve all outstanding claims and/or issues with respect to the Orders and allegations.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, and for other good and valuable consideration, and intending to be legally bound hereby, the Parties hereto agree as follows:

## I. General

1. Intention of Parties to Effect Settlement. In order to avoid the uncertainty and expense of litigation, the Parties agree to resolve this matter according to the Terms and Conditions below.

2. No Admission or Concession. This Agreement is neither an admission by McKesson of liability or of any allegations made by DEA in the Orders and investigations, nor a concession by DEA that its allegations in the Orders and investigations are not well-founded.

3. Covered Conduct. For purposes of this Agreement, "Covered Conduct" shall mean the following:

    (i)    the conduct alleged in the Orders;

2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496494

P-00016_00189

(ii)     the alleged failure of McKesson to maintain adequate controls against the diversion of controlled substances, on or prior to December 31, 2007, at all distribution facilities operated, owned, or controlled by it;

(iii)    the conduct described in Appendix B, Paragraph 8 to this Agreement; and

(iv)    the alleged failure of McKesson to detect and report suspicious orders of the controlled substances as required by 21 C.F.R. § 1301.74(b) on or before December 31, 2007.

4. <u>DEA Headquarters</u>. For purposes of this Agreement, the DEA Representative shall be the Chief, Pharmaceutical Investigations Section, Operations Division, DEA Headquarters.

5. <u>McKesson Representative</u>. For purposes of this Agreement, the McKesson Representative shall be the Senior Vice President, Distribution Operations or the Vice President, Regulatory Affairs.

II.  <u>Terms and Conditions</u>

1. <u>Obligations of McKesson</u>.

(a)  McKesson agrees to maintain a compliance program designed to detect and prevent diversion of controlled substances as required under the CSA and applicable DEA regulations. This program shall include procedures to review orders for controlled substances. Orders that exceed established thresholds and criteria will be reviewed by a McKesson employee trained to detect suspicious orders for the purposes of determining whether (i) such orders should be not filled and reported to the DEA or (ii) based on a detailed review, the order is for a legitimate purpose and the controlled substances are not likely to be diverted into other than legitimate medical, scientific, or industrial channels. Orders identified as suspicious will be reported to the DEA as discussed in subsection II.1(c). This compliance program shall apply to all current and future McKesson distribution centers registered with the DEA in the United States and its territories and possessions. McKesson acknowledges and agrees that the obligations undertaken in this subparagraph do not fulfill the totality of its obligations to maintain effective controls against the diversion of controlled substances or to detect and report to DEA suspicious orders for controlled substances.

(b) Within five (5) business days following the date of each controlled substance transaction, McKesson shall provide DEA Headquarters with a report of all controlled substance transactions through Electronic Data Interchange in a format mutually and reasonably agreed upon by the Parties. This information will be based on raw sales data and will not be reconciled in the manner that Automation of Reports and Consolidated Orders System (ARCOS) data is reconciled, nor does this requirement supplant the requirement to report ARCOS data in the time and manner required by DEA regulations. The Parties agree that the data provided in this report shall be a true and correct copy of the raw transaction data at the time that the data is transmitted to the DEA and thus does not contain any adjustments or corrections that would normally be part of McKesson's reconciliation of its business records. The Parties agree that the report does not

3

otherwise constitute the basis for McKesson's compliance with recordkeeping and reporting requirements under the CSA or applicable DEA regulations. The Parties agree that such report is not required under the CSA or DEA regulations and that the accuracy of the report or the failure to file such a report is not a basis for a violation of 21 U.S.C. § 842(a)(5). McKesson shall begin transmitting this information no later than 120 days after the Parties have mutually agreed upon a format. The obligations contained in this paragraph shall remain in full force and effect for a period of five (5) years from the Effective Date of this Agreement unless DEA agrees in writing to an earlier termination of the obligations contained in this paragraph.

(c) McKesson shall inform DEA of suspicious orders as required by 21 C.F.R. § 1301.74(b) in a format mutually and reasonably agreed upon by the Parties, except that contrary to DEA regulations, McKesson shall inform DEA Headquarters rather than the local DEA Field Office of suspicious orders, unless and until advised otherwise in writing by DEA Headquarters. DEA agrees to notify all of the DEA Field Offices within 30 days of the Effective Date of this Agreement that McKesson will no longer be required to provide suspicious order reports or any other type of reports regarding excessive purchases of controlled substances to the DEA Field Offices and that this Agreement shall supersede any DEA regulatory requirements to report suspicious orders to DEA. The obligations contained in this paragraph shall be and remain in full force and effect from the Effective Date of this Agreement, and thereafter shall remain in full force and effect unless terminated and revoked by DEA with thirty (30) days written notice.

(d) McKesson agrees to a temporary suspension of its authority to distribute drugs containing the drug codes for Schedule III hydrocodone combination products and alprazolam, that is, DEA drug codes 9805, 9806 and 2882 with respect to the DEA registrations for its Lakeland Facility and its Conroe Facility, except for sales to the accounts as listed in Appendix C. The temporary suspension shall terminate in accordance with subsection II.2(g) unless sooner terminated by the Parties in writing pursuant to the terms of this Agreement.

(e) McKesson agrees that any express or implied approval by DEA of any previously implemented system to detect and report suspicious orders, is hereby rescinded and is of no legal effect with respect to McKesson's obligations to detect and report suspicious orders in accordance with 21 C.F.R. §1301.74(b).

(f) McKesson agrees that within 120 days of the Effective Date of this Agreement it will review distributions of hydrocodone and alprazolam for the 24-month period immediately preceding the execution of this Agreement and identify any current customer whose purchases of hydrocodone and alprazolam exceeded the thresholds established in its compliance program. McKesson shall conduct an investigation and take appropriate action as required by this Agreement, DEA regulations and other procedures established under McKesson's compliance program including its Controlled Substance Monitoring Program (CSMP).

(g) McKesson's policy and procedure is to cooperate with the government in any investigation. McKesson agrees to reasonably cooperate with DEA, the United States Attorneys' Offices, and any other Federal, state, or local law enforcement agency investigating or prosecuting McKesson's customers for alleged violations or activities related to the Covered Conduct unless such matters would affect the rights or obligations of McKesson in regard to any

4

MCKMDL00496496

P-00016_00191

pending or threatened litigation. Such cooperation shall include, but is not limited to, producing records and making employees available for interviews by the DEA or other law enforcement authorities. However, nothing in this paragraph shall be construed as a waiver by McKesson or its employees of any constitutional rights or rights that the company would have as a party to a matter involving pending or threatened litigation with the government or a third party.

(h) McKesson agrees to pay civil penalties to the United States of America under 21 U.S.C. § 842(c) for violations of 21 U.S.C. § 842(a)(5) in the amount of $13,250,000.00 in settlement of claims or potential claims made by the United States of America for failing to report suspicious orders of controlled substances and for failing to report thefts or significant losses of controlled substances. Payment of said civil penalties shall be made by McKesson in the amounts indicated and as directed by the United States Attorneys' Offices set forth in Appendix B, Paragraph 13. McKesson agrees to execute the Settlement Agreement at Appendix B simultaneously with the execution of this Agreement and to execute any other documents necessary to fully and finally settle all claims of the United States of America under this subparagraph, and to fully pay said civil penalties within 30 days of the Effective Date of this Agreement.

(i) Any material breach by any McKesson facility of subsections II.1(a)-(h) of this Agreement by McKesson after the Effective Date of this Agreement may be a basis upon which DEA can issue an Order to Show Cause seeking the revocation of McKesson's DEA certificate(s) of registration for that facility.

2. Obligations of DEA.

(a) At McKesson's request, DEA shall continue to provide diversion prevention and awareness training, as practicable, to retail pharmacy industry members at McKesson trade shows and through written materials. The frequency and content of such training shall be at DEA's sole discretion.

(b) DEA agrees to accept at DEA Headquarters the information regarding suspicious orders as required under 21 C.F.R. §1301.74(b) and described in subsection II.1(c) of this Agreement. DEA agrees that this procedure is consistent with DEA regulatory requirements and hereby waives the regulatory requirement to report suspicious orders of controlled substances to the DEA Field Division Offices.

(c) DEA agrees and acknowledges that neither the CSA, DEA regulations, nor the terms of this Agreement establish a requirement that reporting of a suspicious order means that a customer be designated as a suspicious customer that would de facto require the suspension of all orders or sales of other controlled substances to this customer.

(d) DEA agrees that any request made by DEA or any of its employees that McKesson continue to sell controlled substances to customers for an order that McKesson has determined to be suspicious shall be made in writing to the designated McKesson Representative.

5

(e) Within 150 days of the Effective Date of this Agreement, but not earlier than 90 days after the Effective Date of this Agreement, DEA shall conduct reviews of the functionality of McKesson's diversion compliance program ("Compliance Reviews") at up to eight distribution centers of McKesson, consisting of the Lakeland Facility; the Landover Facility; the Conroe Facility; and five other McKesson distribution centers selected by DEA. DEA shall also review the investigatory files maintained by McKesson of the customers serviced by the distribution centers subject to the Compliance Reviews. DEA shall notify McKesson no less than 48 hours prior to commencing a Compliance Review at a distribution center. DEA shall issue a Notice of Inspection to McKesson upon commencement of a Compliance Review. During the course of a Compliance Review, if requested, McKesson shall provide DEA with information related to the sales of controlled substances, non-controlled drugs, and listed chemicals from Effective Date of Agreement, to the date of the Compliance Review by the particular distribution center being reviewed. At the conclusion of each Compliance Review, DEA shall conduct an exit interview with an appropriate McKesson representative to provide DEA's preliminary conclusions regarding the Compliance Review.

(f) The Compliance Reviews will be deemed satisfactory unless DEA determines that one or more of the facilities being inspected has (i) failed to maintain effective controls against diversion regarding the distribution of any controlled substance; (ii) failed to detect and report to DEA suspicious orders of controlled substances; or (iii) failed to meaningfully investigate new or existing customers regarding the customer's legitimate need to order or purchase controlled substances. The Compliance Reviews shall be deemed "not satisfactory" if DEA provides written notice with specificity to McKesson on or before 165 days from the Effective Date of Agreement, stating that McKesson failed to meet any of the requirements in either subsections II.2(f)(i), (ii), or (iii) of this Agreement. DEA shall not find a Compliance Review "not satisfactory" unless the failure(s) are sufficient to provide DEA with a factual and legal basis for issuing an Order to Show Cause under 21 U.S.C. § 824(a) against one or more of the inspected facilities. In the event that DEA provides such written notice of a Compliance Review Failure(s), DEA shall meet and confer with McKesson within 48 hours regarding such a finding. DEA shall consider remedial measures that McKesson has instituted in determining whether the Compliance Reviews are satisfactory. A finding of "satisfactory" does not otherwise express DEA's approval of the compliance program implemented at any particular distribution center.

(g) Upon the completion of the Compliance Reviews and within 180 days of the Effective Date of this Agreement, DEA will restore the drug codes 9805, 9806 and 2882 to the DEA registrations for the Lakeland and Conroe Facilities. In the event that McKesson has not satisfied DEA in regard to the Compliance Reviews within 180 days of the Effective Date of this Agreement and DEA issues a Show Cause against either of the Lakeland or Conroe Facilities, McKesson agrees to a new period of suspension of the drugs codes at such facility until the matter is resolved by mutual agreement of the Parties or a final decision by the DEA Deputy Administrator. Notwithstanding, nothing in this Agreement shall prevent the Parties from agreeing to an extension or shortening of the suspension period for these drugs codes at the Lakeland and Conroe Facilities at any time during the course of this Agreement. DEA shall not be prevented from taking any action that would otherwise be available to the agency to pursue a new period of suspension of the drug codes at these facilities.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496498

P-00016_00193

(h) DEA shall execute this Agreement only upon obtaining a fully executed copy of the Settlement Agreement at Appendix B.

(i) In the event that DEA discovers information that may warrant administrative action, and which is not otherwise included under the Covered Conduct, DEA shall favorably consider McKesson's entry into this Agreement; all actions taken by McKesson pursuant to this Agreement; any remedial actions taken by McKesson to address the alleged or perceived violative conduct; and the compliance history of McKesson at the particular facility and at other McKesson facilities.

(j) DEA represents that it has reviewed its records for investigations or inspections, initiated or conducted prior to December 31, 2007, which may allege that McKesson failed to report suspicious orders as required by 21 C.F.R. 1301.74(b). DEA further represents that it has reviewed reports and records submitted by McKesson to DEA on or before December 31, 2007 for indications that McKesson may have failed to report suspicious orders as required by 21 C.F.R. 1301.74(b). DEA has not referred and agrees to not refer any conduct (other than conduct in Appendix B, Paragraph 8) occurring before December 31, 2007, for civil penalty proceedings under to 21 U.S.C. § 842(a)(5) that would be based on the Covered Conduct, to any other agency within the Department of Justice.

3. <u>Joint Obligations of the Parties</u>. McKesson and DEA agree that upon the execution of this Agreement, DEA and McKesson shall file a joint motion with the DEA Administrative Law Judge to terminate all pending administrative proceedings against the Lakeland Facility and Landover Facility.

4. <u>Release by DEA</u>. (i) In consideration of the fulfillment of the obligations of McKesson under this Agreement, DEA agrees to:

(i)   Release McKesson from any administrative claims within DEA's enforcement authority for the conduct alleged in the Orders; and

(ii)  Refrain from filing any administrative claims against McKesson within DEA's enforcement authority under 21 U.S.C. §§ 823, 824 and 842, based on the Covered Conduct, only to extent that such conduct was or could have been discovered by DEA through the exercise of due diligence through the examination of open investigations and inspections in existence as of December 31, 2007, and the review of the reports and records McKesson submitted to DEA prior to December 31, 2007.

Notwithstanding the releases by DEA contained in this Paragraph, DEA reserves the right to seek to admit evidence of the Covered Conduct in any other administrative proceedings. Further, nothing in this Paragraph shall prohibit any other agency within the Department of Justice, any State attorney general, or any other law enforcement, administrative, or regulatory agency of the United States or any State thereof ("law enforcement agency"), from initiating administrative, civil, or criminal proceedings with respect to the Covered Conduct and DEA shall, as obligated in fulfilling its statutory duties, assist and cooperate with any law enforcement

7

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

agency that initiates an investigation, action, or proceeding involving the Covered Conduct. At McKesson's request, DEA agrees to disclose the terms of this Agreement to any other law enforcement agency and will represent that McKesson's compliance with this Agreement adequately addressed the administrative and civil allegations raised by DEA as defined in the Covered Conduct. This release is applicable only to the Released Parties and is not applicable in any manner to any other individual, partnership, corporation, or entity.

5. <u>Release by McKesson</u>. McKesson fully and finally releases the United States of America, its agencies, employees, servants, and agents from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) which McKesson has asserted, could have asserted, or may assert in the future against the United States of America, its agencies, employees, servants, and agents, related to the Covered Conduct and the United States' investigation and prosecution thereof.

6. <u>Reservation of Claims</u>. Notwithstanding any term of this Agreement, specifically reserved and excluded from the scope and terms of this Agreement as to any entity or person (including McKesson) are the following:

(a) Any civil, criminal or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code);

(b) Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct subject to Paragraph II.4 of this Agreement; or

(c) Any liability based upon such obligations as are created by this Agreement.

## III. <u>Miscellaneous</u>

1. <u>Binding on Successors</u>. This Agreement is binding on McKesson, and its respective successors, heirs, transferees, and assigns.

2. <u>Costs</u>. Each Party to this Agreement shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

3. <u>No Additional Releases</u>. This Agreement is intended to be for the benefit of the Parties and the Released Parties only, and by this instrument the Parties do not release any claims against any other person or entity other than the Released Parties.

4. <u>Effect of Agreement</u>. This Agreement constitutes the complete agreement between the Parties. All material representations, understandings, and promises of the Parties are contained in this Agreement, and each of the parties expressly agrees and acknowledges that, other than those statements expressly set forth in this Agreement, it is not relying on any statement, whether oral or written, of any person or entity with respect to its entry into this Agreement or to the consummation of the transactions contemplated by this Agreement. Any modifications to this Agreement shall be set forth in writing and signed by all Parties.

8

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

McKesson represents that this Agreement is entered into with advice of counsel and knowledge of the events described herein. McKesson further represents that this Agreement is voluntarily entered into in order to avoid litigation, without any degree of duress or compulsion.

5. <u>Execution of Agreement</u>. This Agreement shall become effective (<u>i.e.</u>, final and binding) five (5) business days after the date of signing by the last signatory (the "Effective Date"). The government agrees to notify McKesson immediately when the final signatory has executed this Agreement.

6. <u>Disclosure</u>. McKesson and DEA may each disclose the existence of this Agreement and information about this Agreement to the public without restriction. However, the Parties agree to provide each other with advance notice the day before or as soon as possible once a decision has been made to issue any public statement or press release related to this Agreement. The Parties shall provide copies of any press release no later than two hours before issuing the press release. This paragraph does not apply to any press release or public statement issued by the Department of Justice or any United States Attorney's Office. This paragraph shall remain in effect for sixty (60) days, commencing with the Effective Date of the Agreement.

7. <u>Execution in Counterparts</u>. This Agreement may be executed in counterparts, each of which constitutes an original, and all of which shall constitute one and the same agreement.

8. <u>Authorizations</u>. The individuals signing this Agreement on behalf of McKesson represent and warrant that they are authorized by McKesson and to execute this Agreement. The individuals signing this Agreement on behalf of DEA represent and warrant that they are signing this Agreement in their official capacities and that they are authorized by DEA to execute this Agreement.

9. <u>Choice of Law and Venue</u>. This Settlement Agreement and Release shall be construed in accordance with the laws of the United States, and either Party may seek judicial enforcement of this Agreement upon a material breach by the other Party. The Parties agree that the jurisdiction and venue for any dispute arising between and among the Parties under subsections II(2)(a-d) of this Agreement will be the United States District Court or, as appropriate, in the Court of Federal Claims, in which the McKesson distribution facility(s) at issue is located. This provision, however, shall not be construed as a waiver of the jurisdictional provisions of the Controlled Substances Act.

9

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

IN WITNESS WHEREOF, the Parties hereto have duly executed this Settlement and Release Agreement as of the date written above.

MCKESSON CORPORATION

By: _____
    John H. Hammergren
    President
    McKesson Corporation

Dated: April 28, 2008

By: _____
    Donald G. Walker
    Senior Vice President
    McKesson Corporation

Dated: April 20, 2008


THE UNITED STATES DEPARTMENT OF JUSTICE
DRUG ENFORCEMENT ADMINISTRATION

By: _____
    Michele M. Leonhart
    Acting Administrator
    Drug Enforcement Administration

Dated: May 2, 2008

By: _____
    Wendy H. Goggin
    Chief Counsel
    Drug Enforcement Administration

Dated: May 1, 2008

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496502

P-00016_00197

Appendix A

**McKesson Distribution Center DEA Registered Facilities**

| Location | DEA Registration # |
|---|---|
| Carol Stream, IL | RM0220599 |
| Methuen, MA | PM0020850 |
| West Seneca, NY | PM0003094 |
| Everett, WA | PM0150538 |
| Anchorage, AK | RM0227430 |
| Aurora, CO | PM0018425 |
| Livonia, MI | PM0030849 |
| Honolulu, HI | PM0001014 |
| Santa Fe Springs, CA | PF0000012 |
| Duluth, GA | PR0040357 |
| Memphis, TN | PM0001951 |
| Washington Ct. House, OH | RM0220688 |
| Oklahoma City, OK | RM0138328 |
| La Vista, NE | PM0038693 |
| Tolleson, AZ | PM0021131 |
| Wilsonville, OR | PM0022929 |
| La Crosse, WI | RM0220537 |
| Delran, NJ | RM0173055 |
| Salt Lake City, UT | PM0023046 |
| West Sacramento, CA | PM0021535 |
| O'Fallon, MO | PM0037374 |
| Memphis, TN | RM0207286 |
| Lakeland, FL | PM0000771 |
| New Castle, PA | RM0258601 |
| Landover, MD | PD0029567 |
| Aberdeen, SD | RM0335869 |
| Conroe, TX | RM0328408 |
| McCalla, AL | RM0336950 |
| Little Canada, MN | PM0036334 |
| Cape Girardeau, MO | RM0337534 |
| Rocky Hill, CT | PR0104593 |
| Aurora, CO | RM0354958 |

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

Appendix B

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into this _30th_ day of April, 2008, by and between the United States Department of Justice, through the United States Attorney's Offices for the Districts of Maryland, Middle Florida, Southern Texas, Colorado, Utah and Eastern California ("United States") and McKesson Corporation including facilities doing business as McKesson Pharmaceuticals and McKesson Drug Company, ("McKesson") and collectively referred to as "the Parties."

### RECITALS

1.     McKesson is a Delaware corporation and is headquartered in San Francisco, California. Among other things, McKesson is in the business of distributing branded and generic prescription drugs, as well as over-the-counter medications, to retail pharmacies throughout the United States. In furtherance of this business objective, McKesson operates numerous distribution facilities in the United States, including six facilities more fully described in Attachment A to this Agreement ("the Six Facilities").

2.     As more fully described in Attachment A, McKesson holds Certificates of Registration issued by the Drug Enforcement Administration ("DEA") authorizing it to distribute controlled substances from these facilities  including the Six Facilities.

3.     McKesson is required to operate the Six Facilities in accordance with the statutory and regulatory provisions of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* ("the CSA").

4.     Each of the Six Facilities supplies prescription medications, including controlled substances, to retail pharmacies and other health care providers within the respective

1

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

jurisdictions as stated in Paragraph 8.

5.      DEA is the Department of Justice component agency primarily responsible for administering the CSA and is vested with the responsibility of investigating CSA violations.

6.      The Attorney General, through the United States Attorneys, has primary authority to bring civil actions to enforce the CSA in the Districts noted above. *See* 21 U.S.C. § 871 *and* 28 C.F.R. § 0.55(c).

7.      Methadone, Hydrocodone, Phentermine, Fentanyl and Oxycodone are medications whose manufacture, distribution, sale and possession are regulated by DEA under the CSA. This includes a requirement to report customer orders for controlled substances that are suspicious as the term is defined under 21 C.F.R. §1301.74(b).

8.      The "Covered Conduct" shall mean the following alleged conduct:

A.   Within the District of Maryland: From January 2005 through October 2006, McKesson-Landover sold approximately 3 million dosage units of hydrocodone to NewCare Pharmacy in Baltimore, and failed to report these sales as suspicious orders to DEA when discovered, as required by and in violation of 21 C.F.R. § 1301.74(b) and 21 U.S.C. § 842(a)(5). Further, from August 2006 to February 2007, McKesson-Landover sold large quantities of phentermine based products to Smeeta Pharmacy in Highland, Maryland and failed to report these sales as suspicious orders to DEA when discovered, as required by and in violation of 21 C.F.R. § 1301.74(b) and 21 U.S.C. § 842(a)(5);

B.   Within the Middle District of Florida: In October 2005, McKesson-Lakeland sold approximately 2.1 million dosage units of hydrocodone to seven pharmacies in the Tampa area (Trelles Pharmacy, BiWise Drugs, Universal RX, United Prescription Service, Accumed Rx Medipharm RX and Avee Pharmacy) and failed to report these sales as suspicious orders to DEA when discovered, as required by and in violation of 21 C.F.R. § 1301.74(b) and 21 U.S.C. § 842(a)(5);

C.   Within the Southern District of Texas:   From February to September 2007, McKesson-Conroe sold approximately 2.6 million dosage units of hydrocodone to Mercury Drive Pharmacy and Maswoswe's Alternative Pharmacy and failed to report these sales as suspicious orders to DEA when discovered, as required by and in violation of 21 C.F.R. § 1301.74(b) and 21 U.S.C. § 842(a)(5);

2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

D. <u>Within the District of Colorado</u>: From September 2005 through November 2007, McKesson-Aurora sold large quantities of hydrocodone to three Colorado pharmacies (Brighton Pharmacy in Brighton, Colorado; Western States Pharmacy in Brighton, Colorado; and St. Vrain's Pharmacy in Lyons, Colorado), and failed to report these sales as suspicious orders to DEA when discovered, as required by and in violation of 21 C.F.R. § 1301.74(b) and 21 U.S.C. § 842(a)(5);

E. <u>Within the District of Utah</u>: From January 2005 through October 2007, McKesson-Salt Lake City sold approximately 824,000 dosage units of hydrocodone, Oxycodone, Fentanyl and Methadone to the Blackfeet Clinic in Browning, Montana, and failed to report these sales as suspicious orders to DEA when discovered, as required by and in violation of 21 C.F.R. § 1301.74(b) and 21 U.S.C. § 842(a)(5);

F. <u>Within the Eastern District of California</u>: From October 2007 through June 2007, McKesson-West Sacramento suffered the theft or significant loss of controlled substances on twenty-eight separate occasions, and failed to timely submit required theft and loss reports to DEA , in violation of 21 C.F.R. §§ 1301.74(c) and 1301.76(b), and 21 U.S.C. § 842(a)(5).

9.     By entering into this Agreement, McKesson does not admit to the violations alleged as a result of any DEA investigation, or to any violation of law, liability, fault, misconduct, or wrongdoing. McKesson explicitly denies any allegations of violations of the CSA or DEA regulations and represents that the company has defenses to the violations alleged by the government.

10.    At all times relevant to the activity alleged in these Recitals and Attachments, the CSA (21 U.S.C. § 842(c)(1)), authorized the imposition of a civil penalty of up to $25,000 for each violation of the Section, except that violations of § 842(a)(5) (record keeping and reporting violations) are subject to a civil penalty of up to $10,000 for each violation.

11.    To avoid the delay, expense, inconvenience and uncertainty of litigation of these claims, the Parties agree to settle, compromise, and resolve all existing or potential claims for civil penalties the United States may have against McKesson under § 842 of the CSA based on the Covered Conduct as further described in Paragraphs 13 and 14 below.

3

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496506

P-00016_00201

12.     This Agreement is neither an admission of liability by McKesson nor a concession

by the United States that its claims are not well founded.  In consideration of the mutual

promises, covenants, and obligations set forth in this Agreement, the Parties agree as

follows:

## TERMS AND CONDITIONS

13.     McKesson shall pay to the United States the sum of Thirteen Million, Two Hundred

Fifty Thousand Dollars ($13,250,000) (the "Settlement Amount") within thirty (30) days of

the effective date of this Agreement, payable as follows:

    A.     For Conduct Alleged to have Occurred within the District of Maryland:
McKesson shall pay the sum of Two Million Dollars ($2,000,000).  Payment shall be
by electronic funds transfer to the United States Attorney's Office, District of
Maryland, pursuant to instructions provided by the United States.

    B.     For Conduct Alleged to have Occurred within the Middle District of Florida:
McKesson shall pay the sum of Seven Million Four Hundred Fifty-Six Thousand
Dollars ($7,456,000).  Payment shall be by electronic funds transfer to the United
States Attorney's Office, Middle District of Florida, pursuant to instructions provided
by the United States.

    C.     For Conduct Alleged to have Occurred within the Southern District of Texas:
McKesson shall pay the sum of Two Million Dollars ($2,000,000).  Payment shall be
by electronic funds transfer to the United States Attorney's Office, Southern District
of Texas, pursuant to instructions provided by the United States.

    D.  For Conduct Alleged to have Occurred within the District of Colorado:  McKesson
shall pay the sum of One Million Dollars ($1,000,000).  Payment shall be by
electronic funds transfer to the United States Attorney's Office, District of Colorado,
pursuant to instructions provided by the United States.

    E.  For Conduct Alleged to have Occurred within the District of Utah:  McKesson
shall pay the sum of Five Hundred Forty-Four Thousand Dollars ($544,000).
Payment shall be by electronic funds transfer to the United States Attorney's Office,
District of Utah, pursuant to instructions provided by the United States.

    F.  For Conduct Alleged to have Occurred within the Eastern District of California:
McKesson shall pay the sum of Two Hundred Fifty Thousand Dollars ($250,000).
Payment shall be by electronic funds transfer to the United States Attorney's Office,

4

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

Eastern District of California, pursuant to instructions provided by the United States.

14.     In consideration of the undertakings by McKesson, the United States agrees to settle and relinquish all claims for civil penalties it may have under 21 U.S.C. § 842(c)(1) against McKesson, its officers, directors, and employees for possible violations of the CSA, and the regulations promulgated thereunder, based on the Covered Conduct.

15.     McKesson fully and finally releases the United States, its agencies, employees, servants, and agents from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) which it has asserted, could have asserted, or may assert in the future against the United States, its agencies, employees, servants, and agents, related to the investigation, prosecution and settlement of this matter.

16.     Notwithstanding any term of this Agreement, specifically reserved and excluded from its scope and terms as to any entity or person are the following:

    A. Any potential criminal liability;

    B. Any criminal, civil or administrative claims arising under Title 26, U.S. Code (Internal Revenue Service);

    C. Any administrative liability, including mandatory exclusion from any federal programs;

    D. Any liability to the United States for any conduct other than that covered by the release in Paragraph 14; and

    E. Any claims based on such obligations as are created by this agreement.

17.     McKesson acknowledges that each of its DEA registered facilities is required to comply with the controlled substance record keeping and reporting requirements of the CSA. McKesson represents that it has taken good-faith actions to detect and prevent

5

diversion including agreeing to implement the policies and procedures that are the subject of an administrative settlement agreement between it and DEA dated May **2**, 2008.

18.     McKesson agrees that any and all costs it has or will incur in connection with this matter--including payment of the Settlement Amount under this Agreement, attorney's fees, costs of investigation, negotiation, and remedial action--shall be unallowable costs for government contract accounting and for Medicare, Medicaid, TriCare, and FEHBP reimbursement purposes.

19.     This Agreement is not intended by the Parties to be, and shall not be interpreted to constitute, a release of any person or entity not identified or referred to herein.

20.     This Agreement shall be governed by the laws of the United States. If a dispute arises under this Agreement between McKesson and an Office of the United States Attorney signing this Agreement, exclusive jurisdiction and venue shall lie in the federal judicial district of the Office with whom the dispute arose, and to the extent that state law applies to the dispute, the law of the State within the jurisdictional district shall apply. If a dispute arises under this Agreement between McKesson and more than one of the United States Attorney's Office signing this Agreement, exclusive jurisdiction and venue shall lie in the District of Maryland and to the extent that state law applies to the dispute, the law of Maryland shall apply.

21.     The Parties agree that this Agreement does not constitute evidence or an admission by any person or entity, and shall not be construed as an admission by any person or entity, with respect to any issue of law or fact.

22.     This Agreement constitutes the entire agreement between the Parties and cannot be amended except in writing and when signed by all the Parties to this Agreement.

6

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

23.     McKesson acknowledges that its authorized representatives have read this Agreement and understand that as of its effective date, it will be a matter of public record.

24.     Each person who signs this Agreement in a representative capacity warrants that he or she is fully authorized to do so.

25.     This Agreement shall be effective on the date of signing by all the Parties. It may be executed in counterparts, each of which shall constitute an original and all of which shall constitute one and the same agreement.


**On Behalf of McKesson Corporation**
**One Post Street**
**San Francisco, California  94104**

By _____

　　　John H. Hammergren
　　　President

Dated: _Apr, / 28_ , 2008

By _____

　　　John A. Gilbert, Jr.
　　　Hyman, Phelps & McNamara, P.C.
　　　Counsel to McKesson Corporation

Dated: _April 25_ , 2008

By: _____

　　　Donald G. Walker
　　　Senior Vice President

Dated: _April 30_ , 2008


7

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

On Behalf of the United States

ROD J. ROSENSTEIN
United States Attorney
District of Maryland

By: _____

Michael A. DiPietro
Assistant United States Attorney

Dated: April 28, 2008


Dated: April 29, 2008

ROBERT E. O'NEILL
United States Attorney
Middle District of Florida

By: _____
Javier Guzman
Assistant United States Attorney

Dated: April 21, 2008


DONALD J. DeGABRIELLE
United States Attorney
Southern District of Texas

By: _____
Jill Venezia
Assistant United States Attorney

Dated: April 28, 2008


TROY A. EID
United States Attorney
District of Colorado

By: _____
Amanda Rocque
Assistant United States Attorney

Dated: April 29, 2008


BRETT L. TOLMAN
United States Attorney
District of Utah

By: _____
Eric A. Overby
Assistant United States Attorney


McGREGOR W. SCOTT
United States Attorney
Eastern District of California

By: _____
Catherine Swann
Assistant United States Attorney

Dated: April 29, 2008

-- 8 --

## ATTACHMENT A

### (Six McKesson Facilities Referenced in Paragraph 1 of this Agreement)

1.    7721 Polk Street in Landover Maryland ("McKesson-Landover"), located within the District of Maryland and operating under DEA registration number PD0029567;

2.    1515 West Bella Vista Street in Lakeland Florida ("McKesson-Lakeland"), located within the Middle District of Florida and operating under DEA registration number PM 0000771;

3.    3301 Pollock Drive in Conroe Texas ("McKesson-Conroe"), located within the Southern District of Texas and operating under DEA registration number RM 0328408;

4.    14500 East 39th Avenue in Aurora Colorado ("McKesson-Aurora"), located within the District of Colorado and operating under DEA registration number PM 0018425;

5.    1900 South 4490 West in Salt Lake City Utah ("McKesson-Salt Lake City"), located within District of Utah and operating under DEA registration number PM0023046; and

6.    3775 Seaport Boulevard in West Sacramento California ("McKesson-West Sacramento"), located within the Eastern District of California and operating under DEA registration number PM 0021535.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

**Appendix C - Sales Accounts at Lakeland and Conroe Facilities authroized by DEA as an exception to Paragraph II.1(d).**
**(Lakeland DC Code = 195/Conroe Code = 115)**

| Account Name | DC DEA | Address | City | St | Zip |
|---|---|---|---|---|---|
| CENTRAL TX VA-SPD TEMPLE | 115 AB4451124 | 1901 SOUTH FIRST STREET | TEMPLE | TX | 76504 |
| VA MED CTR CH PINEVILLE | 115 AD3351070 | 2495 SHREVEPORT HWY | PINEVILLE | LA | 71360 |
| FCI SEAGOVILLE | 115 AF2404527 | 2113 NORTH HIGHWAY 175 | SEAGOVILLE | TX | 75159 |
| FCI MIAMI | 195 AF6804733 | 15801 SW 137TH AVENUE | MIAMI | FL | 33177 |
| FCI BASTROP | 115 AF8942650 | 1341 HIGHWAY 95 NORTH | BASTROP | TX | 78602 |
| USPHS HOSPITAL UNIT-FCI | 195 AK4351982 | FED COR/501 CAPITAL CR NE | TALLAHASSEE | FL | 32301 |
| US PUBLIC HEALTH SERVICE | 195 AU1434911 | 18201 SW 12 STREET | MIAMI | FL | 33194 |
| VA OP CLINIC PHARMACY | 195 AV1230313 | 5599 N DIXIE HIGHWAY | OAKLAND PARK | FL | 33334 |
| VA LAKE CITY OUTPATIENT | 195 AV4277845 | 619 S MARION STREET | LAKE CITY | FL | 32025 |
| VA MEDICAL CENTER/INPAT | 195 AV4345559 | 1201 NW 16TH ST | MIAMI | FL | 33125 |
| VA MEDICAL CENTER-OP PHCY | 115 AV4515790 | 2002 HOLCOMBE BLVD | HOUSTON | TX | 77030 |
| VA MEDICAL CENTER-CH | 115 AV4515815 | 510 EAST STONER AVE | SHREVEPORT | LA | 71101 |
| VA MED CTR GAINESVILLE IP | 195 AV4671372 | 1601 SW ARCHER ROAD | GAINESVILLE | FL | 32608 |
| CENTRAL TX VETS-CONT WACO | 115 AV4718714 | 4800 MEMORIAL DRIVE | WACO | TX | 76711 |
| VA OUTPATIENT CLINIC | 195 AV5214488 | 1833 BOULEVARD | JACKSONVILLE | FL | 32206 |
| VA MEDICAL CENTER I/P | 195 AV5307889 | 10000 BAY PINES BLVD | SAINT PETERSBURG | FL | 33708 |
| VA MEDICAL CTR-KERRVILLE | 115 AV5318856 | 3600 MEMORIAL DRIVE | KERRVILLE | TX | 78028 |
| VA MED CT IP-AUDIE MURPHY | 115 AV5546936 | 7400 MERTON MINTER BLVD | SAN ANTONIO | TX | 78229 |
| VA MC I/P-O/P NEW ORLEANS | 115 AV6767719 | 1601 PERDIDO ST/RM#1F157 | NEW ORLEANS | LA | 70112 |
| VA O/P CLINIC BEAUMONT | 115 AV7507164 | 3420 VETERAN CIRCLE | BEAUMONT | TX | 77707 |
| VA OUTPATIENT CLIN A&MMS | 195 AV8635469 | 3033 WINKLER AVE HT | FORT MYERS | FL | 33916 |
| VA OUTPATIENT CLINIC | 115 AV9426760 | 7968 ESSEN PARK AVE | BATON ROUGE | LA | 70809 |
| ALA-COUSHATTA INDIAN IHS | 115 BA7647502 | 129 DAYCARE ROAD | LIVINGSTON | TX | 77351 |
| FEDERAL PRISON CAMP PENSC | 195 BB1595911 | FED PRISON CAMP PENSCOLA | PENSACOLA | FL | 32509 |
| MICCOSUKEE HLTH CTR IHS | 195 BB3849518 | MILE MARKER 70, US HWY 41 | MIAMI | FL | 33144 |
| COUSHATTA HLT DEPART IHS | 115 BC6820383 | PO BOX 519 2003 CC BEL RO | ELTON | LA | 70532 |
| DEPT OF VET AFFAIRS MED | 195 BD2256990 | 10 CALLE CASIA | SAN JUAN | PR | 921 |
| VA MEDICAL CENTER | 195 BD2669995 | 7305 NORTH MILITARY TRAIL | WEST PALM BEACH | FL | 33410 |
| VA OUTPATIENT CLINIC | 195 BD4632015 | 5201 RAYMOND STREET | ORLANDO | FL | 32803 |
| VETS NURSING HM/FL SVH2 | 195 BD5967180 | 1920 MASON AVENUE | DAYTONA BEACH | FL | 32117 |
| BALDOMERO LOPEZ MEM SVH2 | 195 BD6136534 | 6919 PARKWAY BLVD | LAND O LAKES | FL | 34639 |
| FED PRISON CMP BRYAN | 115 BF1742332 | 1100 URSULINE | BRYAN | TX | 77803 |
| FED DETENTION CNT OAKDALE | 115 BF2225589 | POB BOX 5060 E WHATLEY RD | OAKDALE | LA | 71463 |
| FCI THREE RIVERS | 115 BF2295017 | PO BOX 4000 HWY 72 WEST | THREE RIVERS | TX | 78071 |
| FED DETENTION CNT MIAMI | 195 BF3780219 | 33 NE 4TH STREET | MIAMI | FL | 33132 |
| FED CORR CMP COLEMAN | 195 BF4461783 | 811 NE 54TH TERRACE | COLEMAN | FL | 33521 |

1

MCKMDL00496513
P-00016_00208

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

**Appendix C - Sales Accounts at Lakeland and Conroe Facilities authroized by DEA as an exception to Paragraph II.1(d).**
**(Lakeland DC Code = 195/Conroe Code = 115)**

| | | | | | |
|---|---|---|---|---|---|
| FED DETENTION CTR HOUSTON | 115 BF6451506 | 1200 TEXAS AVENUE | HOUSTON | TX | 77002 |
| US PENITENTIARY-POLLOCK | 115 BF7167845 | POB 1000 1000 AIR BASE RD | POLLOCK | LA | 71467 |
| ALEXANDER NININGER   SVH2 | 195 BF7171589 | 8401 W CYPRESS DR | PEMBROKE PINES | FL | 33025 |
| CLIFFORD CHESTER SIMSSVH2 | 195 BF8568909 | 4419 TRAM ROAD | SPRINGFIELD | FL | 32404 |
| D.T. JABSON ST NH   SVH2 | 195 BF8646816 | 21281 GRAYTON TERRACE | PORT CHARLOTTE | FL | 33954 |
| HARLINGEN VA OUTPT CLINIC | 115 BH9206714 | 2106 TREASURE HILLS BLVD | HARLINGEN | TX | 78550 |
| INS DETENTION FACILITY | 115 BI2613885 | BUENA VISTA ROAD | BAYVIEW | TX | 78566 |
| IMMIGRATIONS & CUSTOMS VA | 115 BI8861367 | 15850 EXPORT PLAZA DRIVE | HOUSTON | TX | 77032 |
| IMMIGRAT&CUSTOMS/PEARSALL | 115 BI9144457 | 566 VETERANS DRIVE | PEARSALL | TX | 78061 |
| JAMES A HALEY/VA MED I/P | 195 BJ0413839 | 13000 BRUCE B DOWNS BLVD | TAMPA | FL | 33612 |
| FCI MARIANNA | 195 BM1291347 | 3625 FCI ROAD | MARIANNA | FL | 32446 |
| NORTH CENTRAL FED CLINIC | 115 BN9966500 | 17440 HENDERSON PASS | SAN ANTONIO | TX | 78232 |
| POARCH BAND-CREEK IND IHS | 195 BP1332080 | 5811 JACK SPRINGS RD | ATMORE | AL | 36502 |
| CHITIMACHA HLTH&HUMAN IHS | 115 BP7040176 | 3231 CHITIMACHA TRAIL | CHARENTON | LA | 70523 |
| SNH BVAMC/BAY MINETT SVH2 | 195 BS7636698 | 300 FAULKNER DRIVE | BAY MINETTE | AL | 36507 |
| SW LA WAR VETERANS HOME | 115 BS9016379 | 1610 EVANGELINE HWY | JENNINGS | LA | 70546 |
| USPHS IMMIGRATION CUSTOMS | 115 BU9827140 | 1001 WELCH STREET | TAYLOR | TX | 76574 |
| USPHS MEDICAL CLINIC BICE | 115 BU9834640 | 1800 INDUSTRIAL DRIVE | RAYMONDVILLE | TX | 78580 |
| V A OUTPATIENT CLINIC | 195 BV0255706 | 551 NATIONAL HLTH CARE DR | DAYTONA BEACH | FL | 32114 |
| VA MAYAGUEZ OUTPAT CLINIC | 195 BV0366787 | STATE RD 2, KM. 156.2 | MAYAGUEZ | PR | 680 |
| VA MC PHCY O/P/PENSACOLA | 195 BV0464761 | 312 KENMORE RD / RM 1G222 | PENSACOLA | FL | 32503 |
| VA OP CLIN-CORPUS CHRISTI | 115 BV1253739 | 5283 OLD BROWNSVILLE ROAD | CORPUS CHRISTI | TX | 78405 |
| VA OP CLINIC-FRANK TEJEDA | 115 BV1276206 | 5788 ECKHERT ROAD | SAN ANTONIO | TX | 78240 |
| VA PONCE OUTPAT CLINIC | 195 BV1501700 | 1010 PASEO DEL VETERANO | PONCE | PR | 716 |
| VA OUTPATIENT CLINIC | 115 BV2325644 | 1301 WEST FRANK STREET | LUFKIN | TX | 75904 |
| VA O/P CLINIC - AUSTIN | 115 BV2524913 | 2901 MONTOPOLIS DRIVE | AUSTIN | TX | 78741 |
| VA M/C PHCY O/P MOBILE | 195 BV2658687 | 1504 SPRINGHILL AVE #1504 | MOBILE | AL | 36604 |
| VA OUTPAT CLINIC-MCALLEN | 115 BV2813182 | 2101 S COLONEL ROWE BLVD | MCALLEN | TX | 78503 |
| VA OUTPATIENT CLINIC | 195 BV3465970 | 1607 ST JAMES COURT | TALLAHASSEE | FL | 32308 |
| VA OUTPATIENT CLINIC | 195 BV4345319 | 9912 LITTLE ROAD | NEW PORT RICHEY | FL | 34654 |
| VA OUTPATIENT CLINIC | 195 BV6325852 | 2900 VETERANS WAY | VIERA | FL | 32940 |
| VA COMM BASED OUTPAT CLIN | 195 BV7743241 | ROUTE #2 BAY 15-17 | KINGSHILL | VI | 850 |
| NW LA WAR VETERANS HOME | 115 FN0209103 | 3130 ARTHUR RAY TEAGUE PK | BOSSIER CITY | LA | 71112 |
| SE LA WAR VETS HOME | 115 FS0318685 | 4080 WEST AIRLINE HIGHWAY | RESERVE | LA | 70084 |
| USPHS IMMIGRATION JENA | 115 FU0594350 | 830 PINEHILL ROAD | JENA | LA | 71342 |
| SUBSTANCE DEPEND TREAT PR | 115 PV0122161 | 2002 HOLCOMBE BLVD | HOUSTON | TX | 77030 |
| VA MEDICAL CTR DETOX | 115 RS0222480 | 7400 MERTON MINTER BLVD | SAN ANTONIO | TX | 78229 |

2

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496515
P-00016_00210

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

**Appendix C - Sales Accounts at Lakeland and Conroe Facilities authroized by DEA as an exception to Paragraph II.1(d). (Lakeland DC Code = 195/Conroe Code = 115)**

| VA FOXTROT | 195 RV0329688 | 401 GILLIS DRIVE | ORLANDO | FL | 32824 |

3

MCKMDL00496516
P-00016_00211

LAW OFFICES

# HYMAN, PHELPS & MCNAMARA, P.C.

700 THIRTEENTH STREET, N.W.
SUITE 1200
WASHINGTON, D. C. 20005-5929
(202) 737-5600
FACSIMILE
(202) 737-9329
———
www.hpm.com

## FACSIMILE TRANSMITTAL SHEET

The pages in this facsimile transmission are for the sole use of the individual and entity to whom they are addressed. They may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient or the employee or agent responsible for delivering this transmission to the intended recipient, be aware that any disclosure, duplication, distribution, review or use of the contents of this transmission is strictly prohibited. If you have received this transmission in error, please notify this firm immediately by collect call so we may arrange to retrieve this transmission at no cost to you.

| Tel. No.: (202) 737-5600 | Fax No.: (202) 737-9329 |
|---|---|

| | | | |
|---|---|---|---|
| **FROM:** | John Gilbert | **DATE:** | May 1, 2008 |
| **TO:** | Linden Barber | **FAX NO.:** | (202) 307-4946 |
| **NO. OF PAGES (including this page) :** | 3 | | |

4819 EMPEROR BOULEVARD
SUITE 400
DURHAM, NORTH CAROLINA 27703
(919) 313-4750
FAX (919) 313-4751

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

AO89 (Rev: 1/20/2005) [MD Rev. 01/29/2002] Subpoena in a Criminal Case

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

V.

Steven A. Sodipo, etal

**SUBPOENA IN A
CRIMINAL CASE**

Case Number:

BEL-06-0444

TO:

Mr. Garry Adam
c/o McKesson Drug Company
7721 Polk Avenue
Landover, MD 20785
Fax: 415-983-9369

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below,
or any subsequent place, date and time set by the court, to testify in the above referenced case. This subpoena shall
remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| PLACE | COURTROOM |
|---|---|
| United States Courthouse<br>101 West Lombard Street<br>Baltimore, Maryland 21201 | 7D |
| | DATE AND TIME<br>June 9, 2008<br>10:00 am |

☐ YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | DATE |
|---|---|
| Felicia C. Cannon, Clerk | May 29, 2008 |
| (By) Deputy Clerk | |

ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER:
Andrea L. Smith/Paul E. Budlow
Assistant U. S. Attorney, 36 South Charles Street, 4th Floor, Baltimore, Maryland 21201
(410) 209-4800

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

**Department of Justice**
**Office of the United States Attorney**
**District of Maryland**
**36 South Charles Street**
**Fourth Floor**
**Baltimore, MD 21201**
**Fax (410) 962-0122**
**Phone (410) 209-4800**



**Rod J. Rosenstein**
**United States Attorney**

## FACSIMILE OUTGOING TRANSMISSION COVER SHEET

**To:**          John Gilbert, Esq.          **Fax No:**   202-737-9329

**Organization:**   Hyman, Phelps & McNamara

**Date:**          6/2/07

**From:**          Andrea L. Smith, AUSA

**Phone:**         410-209-4858

**Number of pages including cover:**   2

**Comments:**      Thanks.  A

---

### U.S. ATTORNEY FACSIMILE COMMUNICATION--NOTICE OF CONFIDENTIALITY

The information contained in this facsimile message, and any and all accompanying documents may
be legally privileged and is intended for the use of the intended recipient named above.  This
information is the property of the U.S. Attorney's Office.  If you are not the intended recipient of this
information or if you received this message in error, please notify us immediately at the above number
to make arrangements for its return to us.

---

Note: If you do not receive the total number of pages indicated,
please call the sending individual listed above.

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

LAW OFFICES

# HYMAN, PHELPS & MCNAMARA, P.C.

700 THIRTEENTH STREET, N.W.

SUITE 1200

WASHINGTON, D. C. 20005-5929

(202) 737-5600

FACSIMILE
(202) 737-9329

www.hpm.com

## FACSIMILE TRANSMITTAL SHEET

The pages in this facsimile transmission are for the sole use of the individual and entity to whom they are addressed. They may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If you are not the intended recipient or the employee or agent responsible for delivering this transmission to the intended recipient, be aware that any disclosure, duplication, distribution, review or use of the contents of this transmission is strictly prohibited.  If you have received this transmission in error, please notify this firm immediately by collect call so we may arrange to retrieve this transmission at no cost to you.

Tel. No.:  (202) 737-5600                                           Fax No.:  (202) 737-9329

| **FROM:** | John Gilbert | **DATE:** | June 6, 2008 |
|---|---|---|---|
| **TO:** | Honorable Mary Ellen Bittner Linden Barber | **FAX NO.:** | (202) 307-8198 (202) 307-4946 |

**NO. OF PAGES  (including this page) :**  3

4818 EMPEROR BOULEVARD
SUITE 400
DURHAM, NORTH CAROLINA 27703
(919) 313-4750
FAX (919) 313-4751

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496520

P-00016_00215

# Confirmation Report – Memory Send

Time : Jun-06-08 11:37am
Tel line : 2027379329
Name : HYMAN PHELPS AND MCNAMARA

| | | |
|---|---|---|
| Job number | : | 199 |
| Date | : | Jun-06 11:36am |
| To | : | 2023078198 |
| Document pages | : | 03 |
| Start time | : | Jun-06 11:36am |
| End time | : | Jun-06 11:37am |
| Pages sent | : | 03 |
| Status | : | OK |

Job number : 199 *** SEND SUCCESSFUL ***

[illegible]

NO. OF PAGES (including this page) : 3

| | | | |
|---|---|---|---|
| FROM: | John Gilbert | DATE: | June 6, 2008 |
| TO: | Honorable Mary Ellen Bittner<br>Linden Barber | FAX NO.: | (202) 307-8198<br>(202) 307-4946 |

The pages in this facsimile transmission are for the sole use of the individual and entity to whom they are addressed. They may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient or the employee or agent responsible for delivering this transmission to the intended recipient, be aware that any disclosure, duplication, distribution, review or use of the contents of this transmission is strictly prohibited. If you have received this transmission in error, please notify this firm immediately by collect call so we may arrange to retrieve this transmission at no cost to you.
Tel. No.: (202) 737-5600 Fax No.: (202) 737-9329

FACSIMILE TRANSMITTAL SHEET

LAW OFFICES
HYMAN, PHELPS & McNAMARA, P.C.
[illegible]

# Confirmation Report – Memory Send

Time : Jun-06-08 11:39am
Tel line : 2027379329
Name : HYMAN PHELPS AND MCNAMARA

| | | |
|---|---|---|
| Job number | : | 200 |
| Date | : | Jun-06 11:38am |
| To | : | 2023074946 |
| Document pages | : | 03 |
| Start time | : | Jun-06 11:38am |
| End time | : | Jun-06 11:39am |
| Pages sent | : | 03 |
| Status | : | OK |

Job number : 200 *** SEND SUCCESSFUL ***

HYMAN, PHELPS & MCNAMARA, P.C.

FACSIMILE TRANSMITTAL SHEET

The pages in this facsimile transmission are for the sole use of the individual and entity to whom they are addressed. They may contain information that is privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient or the employee or agent responsible for delivering this transmission to the intended recipient, be aware that any disclosure, duplication, distribution, review or use of the contents of this transmission is strictly prohibited. If you have received this transmission in error, please notify this firm immediately by collect call so we may arrange to retrieve this transmission at no cost to you.

Tel. No.: (202) 737-5600 Fax No.: (202) 737-9329

FROM: John Gilbert DATE: June 6, 2008

TO: Honorable Mary Ellen Bittner FAX NO.: (202) 307-8198
Linden Barber (202) 307-4946

NO. OF PAGES (including this page): 3

**UNITED STATES DEPARTMENT OF JUSTICE**
**Drug Enforcement Administration**

In the Matter of

    **McKesson Corporation**
    **d/b/a McKesson Drug Company**

Docket Nos. 06-66
               08-14

### ORDER TERMINATING PROCEEDINGS

On June 6, 2008, counsel filed a joint motion to terminate the proceedings in the above-captioned matters on grounds that the parties have entered into an agreement that resolves the issues in both of the pending matters.

Inasmuch as it appears that these proceedings are now moot, it is

ORDERED that all proceedings in the above-captioned matters before the undersigned be, and they hereby are, terminated.

Dated: June 6, 2008

Mary Ellen Bittner
Administrative Law Judge

### CERTIFICATE OF SERVICE

This is to certify that the undersigned, on June 6, 2008, caused a copy of the foregoing to be delivered via interoffice mail to counsel for the Government, Wayne Patrick, Esq., Office of Chief Counsel, Drug Enforcement Administration, Washington, D.C. 20537, and a copy to be mailed, postage paid, to counsel for Respondent, John A. Gilbert, Jr., Esq., Hyman, Phelps & McNamara, P.C., 700 Thirteenth Street, N.W., Suite 1200, Washington, D.C. 20005.

Thomas 'Skip' Mark
Attorney Advisor to Mary Ellen Bittner
Administrative Law Judge

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

UNITED STATES DEPARTMENT OF JUSTICE
Drug Enforcement Administration

| | |
|---|---|
| In The Matter of ) | |
| ) | |
| McKesson Corporation ) | Docket Nos. 06-66 |
| d/b/a McKesson Drug Company ) | and 08-14 |
| ) | |

## JOINT MOTION TO TERMINATE

McKesson Corporation (Respondent), through the undersigned counsel,

respectfully submits this Joint Motion to Terminate the hearing and any further

proceedings in the above captioned matters. As grounds for this request, the parties state

that on May 2, 2008, Respondent and the Government entered into a Settlement and

Release Agreement and Administrative Memorandum of Agreement that resolves both of

the pending matters, Docket Nos. 06-66 and 08-14. The undersigned has discussed this

motion with D. Linden Barber, Esq. and Wayne Patrick, Esq. counsel for the Government

in these matters. The Government joins in the motion.

Respectfully submitted,

John A. Gilbert, Jr.
Hyman, Phelps & McNamara PC
700 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 737-5600
(202) 737-9329 (Fax)

Counsel for McKesson Corporation

Dated: June 6, 2008

1

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

This is to certify that the undersigned, on June 6, 2008, caused a copy of the foregoing to be delivered by facsimile with a confirmation copy by regular mail to The Honorable Mary Ellen Bittner U.S. Department of Justice, Drug Enforcement Administration, 600 Army Navy Drive, Arlington, Virginia, 22202, and copies to be delivered by facsimile and regular mail to:

D. Linden Barber
Chief, Regulatory Section
Office of Chief Counsel
Drug Enforcement Administration
600 Army/Navy Drive
Arlington, Virginia  22202


Kathleen McKinley

CONFIDENTIAL-SUBJECT TO PROTECTIVE ORDER

MCKMDL00496525

P-00016_00220