# OPIOID REDUCTION ACT

# WV Code §16-54

**§16-54-1. Definitions.**

As used in this section:

"Acute pain" means a time limited pain caused by a specific disease or injury.

"Chronic pain" means a noncancer, nonend of life pain lasting more than three months or longer than the duration of normal tissue healing.

"Health care practitioner" or "practitioner" means:

(1) A physician authorized pursuant to the provisions of §30-3-1 et seq. and §30-14-1 et seq. of this code;

(2) A podiatrist licensed pursuant to the provisions of §30-3-1 et seq. of this code;

(3) A physician assistant with prescriptive authority as set forth in §30-3E-3 of this code;

(4) An advanced practice registered nurse with prescriptive authority as set forth in §30-7-15a of this code;

(5) A dentist licensed pursuant to the provisions of §30-4-1 et seq. of this code;

(6) An optometrist licensed pursuant to the provisions of §30-8-1 et seq. of this code;

(7) A physical therapist licensed pursuant to the provisions of §30-20-1 et seq. of this code;

(8) An occupational therapist licensed pursuant to the provisions of §30-28-1 et seq. of this code;

(9) An osteopathic physician licensed pursuant to the provisions of §30-14-1 et seq. of this code; and

(10) A chiropractor licensed pursuant to the provisions of §30-16-1 et seq. of this code.

"Insurance provider" means an entity that is regulated under the provisions of §33-15-1 et seq., §33-16-1 et seq., §33-24-1 et seq., §33-25-1 et seq. and §33-25A-1 et seq. of this code.

"Office" means the Office of Drug Control Policy.

"Pain clinic" means the same as that term is defined in §16-5H-2 of this code.

DEF_WV_Trial_00026991

DEF-WV-03054.00001


DEF-WV-03054

"Pain specialist" means a practitioner who is board certified in pain management or a related field.

"Prescribe" means the advisement of a physician or other licensed practitioner to a patient for a course of treatment. It can include but is not limited to medication, services, supplies, equipment, procedures, diagnostic tests, or screening as permitted by the physician or other licensed practitioner"s scope of practice.

"Referral" means the recommendation by a person to another person for the purpose of initiating care by a health care practitioner.

"Schedule II opioid drug" means an opioid drug listed in §60A-2-206 of this code.

"Surgical procedure" means a medical procedure involving an incision with instruments performed to repair damage or arrest disease in a living body.

### §16-54-2. Voluntary nonopioid advanced directive form.

(a) The office shall establish a voluntary nonopioid advanced directive form. The form shall be available on the office's web site. The form shall indicate to a health care practitioner that an individual may not be administered or offered a prescription or medication order for an opioid. The advance directive shall be filed in the individual's medical record in either a health care facility or a private office of a practitioner, or both, and shall be transferred with the person from one practitioner to another or from one health care facility to another.

(b) An individual may revoke the voluntary nonopioid advanced directive form for any reason and may do so by written or oral means.

(c) A practitioner without actual knowledge of an advance directive as set forth in §16-54-2(a) of this code and who prescribes an opioid in a medical emergency situation is not civilly or criminally liable for failing to act in accordance with the directives unless the act or omission was the result of a practitioner's gross negligence or willful misconduct. For purposes of this section, a "medical emergency situation" shall mean an acute injury or illness that poses an immediate risk to a person's life or long-term health.

### §16-54-3. Opioid prescription notifications.

Prior to issuing a prescription for a Schedule II opioid drug, a practitioner shall:

(1) Advise the patient regarding the quantity of the Schedule II opioid drug and a patient"s option to fill the prescription in a lesser quantity; and

(2) Inform the patient of the risks associated with the Schedule II opioid drug prescribed.

DEF_WV_Trial_00026992

DEF-WV-03054.00002

**§16-54-4. Opioid prescription limitations.**

(a) When issuing a prescription for a Schedule II opioid drug to an adult patient seeking treatment in an emergency room for outpatient use, a health care practitioner may not issue a prescription for more than a four-day supply: Provided, That a prescription for a Schedule II opioid drug issued to an adult patient in an emergency room for outpatient use is not considered to be an initial Schedule II opioid prescription.

(b) When issuing a prescription for a Schedule II opioid drug to an adult patient seeking treatment in an urgent care facility setting for outpatient use, a health care practitioner may not issue a prescription for more than a four-day supply: Provided, That an additional dosing for up to no more than a seven-day supply may be permitted, but only if the medical rationale for more than a four-day supply is documented in the medical record.

(c) A health care practitioner may not issue an initial Schedule II opioid drug prescription to a minor for more than a three-day supply and shall discuss with the parent or guardian of the minor the risks associated with Schedule II opioid drug use and the reasons why the prescription is necessary.

(d) A dentist or an optometrist may not issue a Schedule II opioid drug prescription for more than a three-day supply.

(e) A practitioner, other than a dentist or an optometrist, may not issue an initial Schedule II opioid drug prescription for more than a seven-day supply. The prescription shall be for the lowest effective dose which in the medical judgement of the practitioner would be the best course of treatment for this patient and his or her condition.

(f) Prior to issuing an initial Schedule II opioid drug prescription, a practitioner shall:

(1) Take and document the results of a thorough medical history, including the patient"s experience with nonopioid medication, nonpharmacological pain management approaches, and substance abuse history;

(2) Conduct, as appropriate, and document the results of a physical examination. The physical exam should be relevant to the specific diagnosis and course of treatment, and should assess whether the course of treatment would be safe and effective for the patient.

(3) Develop a treatment plan, with particular attention focused on determining the cause of the patient"s pain; and

(4) Access relevant prescription monitoring information under the Controlled Substances Monitoring Program Database.

(g) Notwithstanding any provision of this code or legislative rule to the contrary, no medication listed as a Schedule II opioid drug as set forth in §60A-2-206 of this code, may be prescribed by a practitioner for greater than a 30-day supply: Provided, That two additional prescriptions, each

for a 30-day period for a total of a 90-day supply, may be prescribed if the practitioner accesses the West Virginia Controlled Substances Monitoring Program Database as set forth in §60A-9-1 et seq. of this code: Provided, however, That the limitations in this section do not apply to cancer patients, patients receiving hospice care from a licensed hospice provider, patients receiving palliative care, a patient who is a resident of a long-term care facility, or a patient receiving medications that are being prescribed for use in the treatment of substance abuse or opioid dependence.

(h) A practitioner is required to conduct and document the results of a physical examination every 90 days for any patient for whom he or she continues to treat with any Schedule II opioid drug as set forth in §60A-2-206 of this code. The physical examination should be relevant to the specific diagnosis and course of treatment, and should assess whether continuing the course of treatment would be safe and effective for the patient.

(i) A veterinarian licensed pursuant to the provisions of §30-10-1 et seq. of this code may not issue an initial Schedule II opioid drug prescription for more than a seven-day supply. The prescription shall be for the lowest effective dose which in the medical judgment of the veterinarian would be the best course of treatment for the patient and his or her condition.

(j) In conjunction with the issuance of the third prescription for a Schedule II opioid drug, the patient shall execute a narcotics contract with the prescribing practitioner. The contract shall be made a part of the patient"s medical record. The narcotics contract is required to provide at a minimum that:

(1) The patient agrees only to obtain scheduled medications from this particular prescribing practitioner;

(2) The patient agrees he or she will only fill those prescriptions at a single pharmacy which includes a pharmacy with more than one location;

(3) The patient agrees to notify the prescribing practitioner within 72 hours of any emergency where he or she is prescribed scheduled medication;

(4) If the patient fails to honor the provisions of the narcotics contract, the prescribing practitioner may either terminate the provider-patient relationship or continue to treat the patient without prescribing a Schedule II opioid drug for the patient. Should the practitioner decide to terminate the relationship, he or she is required to do so pursuant to the provisions of this code and any rules promulgated hereunder. Termination of the relationship for the patient"s failure to honor the provisions of the contract is not subject to any disciplinary action by the practitioner"s licensing board; and

(5) If another physician is approved to prescribe to the patient.

(k) A pharmacist is not responsible for enforcing the provisions of this section and the Board of Pharmacy may not discipline a licensee if he or she fills a prescription in violation of the provisions of this section.

DEF_WV_Trial_00026994

DEF-WV-03054.00004

**§16-54-5. Subsequent prescriptions; limitations.**

(a) After issuing the initial Schedule II opioid drug prescription as set forth in §16-54-4 of this code, the practitioner, after consultation with the patient, may issue a subsequent prescription for a Schedule II opioid drug to the patient if:

(1) The subsequent prescription would not be deemed an initial prescription pursuant to §16-54-4 of this code;

(2) The practitioner determines the prescription is necessary and appropriate to the patient"s treatment needs and documents the rationale for the issuance of the subsequent prescription; and

(3) The practitioner determines that issuance of the subsequent prescription does not present an undue risk of abuse, addiction, or diversion and documents that determination.

(b) Prior to issuing the subsequent Schedule II opioid drug prescription of the course of treatment, a practitioner shall discuss with the patient, or the patient"s parent or guardian if the patient is under 18 years of age, the risks associated with the Schedule II opioid drugs being prescribed. This discussion shall include:

(1) The risks of addiction and overdose associated with Schedule II opioid drugs and the dangers of taking Schedule II opioid drugs with alcohol, benzodiazepines, and other central nervous system depressants;

(2) The reasons why the prescription is necessary;

(3) Alternative treatments that may be available; and

(4) Risks associated with the use of the Schedule II opioid drug being prescribed, specifically that Schedule II opioid drugs are highly addictive, even when taken as prescribed, that there is a risk of developing a physical or psychological dependence on the Schedule II opioid drug, and that the risks of taking more opioids than prescribed, or mixing sedatives, benzodiazepines, or alcohol with opioids, can result in fatal respiratory depression.

(c) The discussion as set forth in §16-54-5(b) of this code shall be included in a notation in the patient"s medical record.

**§16-54-6. Ongoing treatment; referral to pain clinic or pain specialist.**

(a) At the time of the issuance of the third prescription for a Schedule II opioid drug the practitioner shall consider referring the patient to a pain clinic or a pain specialist. The practitioner shall discuss the benefits of seeking treatment through a pain clinic or a pain specialist and provide him or her with an understanding of any risks associated by choosing not to pursue that as an option.

(b) If the patient declines to seek treatment from a pain clinic or a pain specialist and opts to remain a patient of the practitioner, and the practitioner continues to prescribe a Schedule II opioid drug as provided in this code, the practitioner shall:

(1) Note in the patient"s medical records that the patient knowingly declined treatment from a pain clinic or pain specialist;

(2) Review, at a minimum of every three months, the course of treatment, any new information about the etiology of the pain, and the patient"s progress toward treatment objectives and document the results of that review;

(3) Assess the patient prior to every renewal to determine whether the patient is experiencing problems associated with physical and psychological dependence and document the results of that assessment; and

(4) Periodically make reasonable efforts, unless clinically contraindicated, to either stop the use of the controlled substance, decrease the dosage, try other drugs or treatment modalities in an effort to reduce the potential for abuse or the development of physical or psychological dependence, and document with specificity the efforts undertaken.

**§16-54-7. Exceptions.**

(a) This article does not apply to a patient who is currently in active treatment for cancer, receiving hospice care from a licensed hospice provider or palliative care provider, or is a resident of a long-term care facility.

(b) This article does not apply to a patient being prescribed, or ordered, any medication in an inpatient setting at a hospital.

(c) Notwithstanding the limitations on the prescribing of a Schedule II opioid drug contained in §16-54-4 of this code, a practitioner may prescribe an initial seven-day supply of a Schedule II opioid drug to a post-surgery patient immediately following a surgical procedure. Based upon the medical judgment of the practitioner, a subsequent prescription may be prescribed by the practitioner pursuant to the provisions of this code. Nothing in this section authorizes a practitioner to prescribe any medication which he or she is not permitted to prescribe pursuant to their practice act.

(d) A practitioner who acquires a patient after January 1, 2018, who is currently being prescribed a Schedule II opioid drug from another practitioner is required to access the Controlled Substances Monitoring Program Database as set forth in §60A-9-1 et seq. of this code. The practitioner shall otherwise treat the patient as set forth in this code.

(e) This article does not apply to an existing practitioner-patient relationship established before January 1, 2018, where there is an established and current opioid treatment plan which is reflected in the patient"s medical records.

DEF_WV_Trial_00026996

DEF-WV-03054.00006

**§16-54-8. Treatment of pain.**

(a) When a patient seeks treatment, a health care practitioner shall refer or prescribe to the patient any of the following treatment alternatives, as is appropriate based on the practitioner"s clinical judgment and the availability of the treatment, before starting a patient on a Schedule II opioid drug: physical therapy, occupational therapy, acupuncture, massage therapy, osteopathic manipulation, chronic pain management program, and chiropractic services, as defined in §30-16-3 of this code.

(b) Nothing in this section should be construed to require that all of the treatment alternatives set forth in §16-54-8(a) of this code are required to be exhausted prior to the patient"s receiving a prescription for a Schedule II opioid drug.

(c) At a minimum, an insurance provider who offers an insurance product in this state, the Bureau for Medical Services, and the Public Employees Insurance Agency shall provide coverage for 20 visits per event of physical therapy, occupational therapy, osteopathic manipulation, a chronic pain management program, and chiropractic services, as defined in §30-16-3 of this code, when ordered or prescribed by a health care practitioner.

(d) A person may seek physical therapy, occupational therapy, osteopathic manipulation, a chronic pain management program, and chiropractic services, as defined in §30-16-3 of this code, prior to seeking treatment from any other health care practitioner. The licensed health care practitioner providing services pursuant to this section may prescribe within their scope of practice as defined in §16-54-1 of this code. A health care practitioner referral although permitted is not required as a condition of coverage by the Bureau for Medical Services the Public Employees Insurance Agency, and any insurance provider who offers an insurance product in this state. Any deductible, coinsurance, or copay required for any of these services may not be greater than the deductible, coinsurance, or copay required for a primary care visit.

(e) Nothing in this section precludes a practitioner from simultaneously prescribing a Schedule II opioid drug and prescribing or recommending any of the procedures set forth in §16-54-8(a) of this code.

**§16-54-9. Discipline.**

A violation of this article is grounds for disciplinary action by the board that regulates the health care practitioner who commits the violation.

*Source: http://code.wvlegislature.gov/16-54/