# Model Policy for the Use of Controlled Substances for the Treatment of Pain

## Federation of State Medical Boards of the United States, Inc.

*The recommendations contained herein were adopted as policy by the House of Delegates of the Federation of State Medical Boards of the United States, Inc., May 2004.*

**Introduction**

The Federation of State Medical Boards (the Federation) is committed to assisting state medical boards in protecting the public and improving the quality and integrity of health care in the United States. In 1997, the Federation undertook an initiative to develop model guidelines and to encourage state medical boards and other health care regulatory agencies to adopt policy encouraging adequate treatment, including use of opioids when appropriate for patients with pain. The Federation thanks the Robert Wood Johnson Foundation for awarding a grant in support of the original project, and the American Academy of Pain Medicine, the American Pain Society, the American Society of Law, Medicine, & Ethics, and the University of Wisconsin Pain & Policy Studies Group for their contributions.

Since adoption in April 1998, the *Model Guidelines for the Use of Controlled Substances for the Treatment of Pain* have been widely distributed to state medical boards, medical professional organizations, other health care regulatory boards, patient advocacy groups, pharmaceutical companies, state and federal regulatory agencies, and practicing physicians and other health care providers. The *Model Guidelines* have been endorsed by the American Academy of Pain Medicine, the Drug Enforcement Administration, the American Pain Society, and the National Association of State Controlled Substances Authorities. Many states have adopted pain policy using all or part of the *Model Guidelines*.[1] Despite increasing concern in recent years regarding the abuse and diversion of controlled substances, pain policies have improved due to the efforts of medical, pharmacy, and nursing regulatory boards committed to improving the quality of and access to appropriate pain care.

Notwithstanding progress to date in establishing state pain policies recognizing the legitimate uses of opioid analgesics, there is a significant body of evidence suggesting that both acute and chronic pain continue to be undertreated. Many terminally ill patients unnecessarily experience moderate to severe pain in the last weeks of life.[2] The undertreatment of pain is recognized as a serious public health problem that results in a decrease in patients' functional status and quality of life and may be attributed to a myriad of social, economic, political, legal and educational factors, including inconsistencies and restrictions in state pain policies.[3] Circumstances that contribute to the prevalence of undertreated pain include: (1) lack of knowledge of medical standards, current research, and clinical guidelines for appropriate pain treatment; (2) the perception that prescribing adequate amounts of controlled substances will result in unnecessary scrutiny by regulatory authorities; (3) misunderstanding of addiction and dependence; and (4) lack of understanding of regulatory policies and processes. Adding to this problem is the reality that the successful implementation of state medical board pain policy varies among jurisdictions.

In April 2003, the Federation membership called for an update to its *Model Guidelines* to assure currency and adequate attention to the undertreatment of pain. The goal of the revised model policy is to provide state medical boards with an updated template regarding the appropriate management of pain in compliance with applicable state and federal laws and regulations. The revised policy notes that the state medical board will consider inappropriate treatment, including the undertreatment of pain, a departure from an acceptable standard of practice. The title of the policy has been changed from *Model Guidelines* to *Model Policy* to better reflect the practical use of the document.

DEF_WV_Trial_00043260

DEF-WV-03605.00001


DEF-WV-03605

The *Model Policy* is designed to communicate certain messages to licensees: that the state medical board views pain management to be important and integral to the practice of medicine; that opioid analgesics may be necessary for the relief of pain; that the use of opioids for other than legitimate medical purposes poses a threat to the individual and society; that physicians have a responsibility to minimize the potential for the abuse and diversion of controlled substances; and that physicians will not be sanctioned solely for prescribing opioid analgesics for legitimate medical purposes. This policy is not meant to constrain or dictate medical decision-making.

Through this initiative, the Federation aims to achieve more consistent policy in promotion of adequate pain management and education of the medical community about treating pain within the bounds of professional practice and without fear of regulatory scrutiny. In promulgating this *Model Policy*, the Federation strives to encourage the legitimate medical uses of controlled substances for the treatment of pain while stressing the need to safeguard against abuse and diversion.

State medical boards are encouraged, in cooperation with their state's attorney general, to evaluate their state pain policies, rules, and regulations to identify any regulatory restrictions or barriers that may impede the effective use of opioids to relieve pain. Accordingly, this *Model Policy* has been revised to emphasize the professional and ethical responsibility of the physician to assess patients' pain as well as to update references and definitions of key terms used in pain management.

The *Model Policy* is not intended to establish clinical practice guidelines nor is it intended to be inconsistent with controlled substance laws and regulations.

1. As of January 2004, 22 of 70 state medical boards have policy, rules, regulations or statutes reflecting the Federation's *Model Guidelines for the Use of Controlled Substances for the Treatment of Pain* and two (2) states have formally endorsed the *Model Guidelines*
2. SUPPORT Study Principal Investigators. A controlled trial to improve care for seriously ill hospitalized patients. *JAMA*, 274(20) (1995) p. 1591-1598
3. A M Gilson, D E Joranson, and M A Mauer, Improving Medical Board Policies Influence of a Model, *J of Law, Medicine, and Ethics*, 31 (2003) p. 128

## Model Policy for the Use of Controlled Substances for the Treatment of Pain

### Section I: Preamble

The (name of board) recognizes that principles of quality medical practice dictate that the people of the State of (name of state) have access to appropriate and effective pain relief. The appropriate application of up-to-date knowledge and treatment modalities can serve to improve the quality of life for those patients who suffer from pain as well as reduce the morbidity and costs associated with untreated or inappropriately treated pain. For the purposes of this policy, the inappropriate treatment of pain includes nontreatment, undertreatment, overtreatment, and the continued use of ineffective treatments.

The diagnosis and treatment of pain is integral to the practice of medicine. The Board encourages physicians to view pain management as a part of quality medical practice for all patients with pain, acute or chronic, and it is especially urgent for patients who experience pain as a result of terminal illness. All physicians should become knowledgeable about assessing patients' pain and effective methods of pain treatment, as well as statutory requirements for prescribing controlled substances. Accordingly, this policy have been developed to clarify the Board's position on pain control, particularly as related to the use of controlled substances, to alleviate physician uncertainty and to encourage better pain management.

Inappropriate pain treatment may result from physicians' lack of knowledge about pain management. Fears of investigation or sanction by federal, state and local agencies may also result in inappropriate treatment of pain. Appropriate pain management is the treating physician's responsibility. As such, the Board will consider the inappropriate treatment of pain to be a departure from standards of practice and will

DEF_WV_Trial_00043261

DEF-WV-03605.00002

investigate such allegations, recognizing that some types of pain cannot be completely relieved, and taking into account whether the treatment is appropriate for the diagnosis.

The Board recognizes that controlled substances including opioid analgesics may be essential in the treatment of acute pain due to trauma or surgery and chronic pain, whether due to cancer or non-cancer origins. The Board will refer to current clinical practice guidelines and expert review in approaching cases involving management of pain. The medical management of pain should consider current clinical knowledge and scientific research and the use of pharmacologic and non-pharmacologic modalities according to the judgment of the physician. Pain should be assessed and treated promptly, and the quantity and frequency of doses should be adjusted according to the intensity, duration of the pain, and treatment outcomes. Physicians should recognize that tolerance and physical dependence are normal consequences of sustained use of opioid analgesics and are not the same as addiction.

The (name of board) is obligated under the laws of the State of (name of state) to protect the public health and safety. The Board recognizes that the use of opioid analgesics for other than legitimate medical purposes pose a threat to the individual and society and that the inappropriate prescribing of controlled substances, including opioid analgesics, may lead to drug diversion and abuse by individuals who seek them for other than legitimate medical use. Accordingly, the Board expects that physicians incorporate safeguards into their practices to minimize the potential for the abuse and diversion of controlled substances.

Physicians should not fear disciplinary action from the Board for ordering, prescribing, dispensing or administering controlled substances, including opioid analgesics, for a legitimate medical purpose and in the course of professional practice. The Board will consider prescribing, ordering, dispensing or administering controlled substances for pain to be for a legitimate medical purpose if based on sound clinical judgment. All such prescribing must be based on clear documentation of unrelieved pain. To be within the usual course of professional practice, a physician-patient relationship must exist and the prescribing should be based on a diagnosis and documentation of unrelieved pain. Compliance with applicable state or federal law is required.

The Board will judge the validity of the physician's treatment of the patient based on available documentation, rather than solely on the quantity and duration of medication administration. The goal is to control the patient's pain while effectively addressing other aspects of the patient's functioning, including physical, psychological, social and work-related factors.

Allegations of inappropriate pain management will be evaluated on an individual basis. The board will not take disciplinary action against a physician for deviating from this policy when contemporaneous medical records document reasonable cause for deviation. The physician's conduct will be evaluated to a great extent by the outcome of pain treatment, recognizing that some types of pain cannot be completely relieved, and by taking into account whether the drug used is appropriate for the diagnosis, as well as improvement in patient functioning and/or quality of life.

### Section II: Guidelines
The Board has adopted the following criteria when evaluating the physician's treatment of pain, including the use of controlled substances:

**Evaluation of the Patient**—A medical history and physical examination must be obtained, evaluated, and documented in the medical record. The medical record should document the nature and intensity of the pain, current and past treatments for pain, underlying or coexisting diseases or conditions, the effect of the pain on physical and psychological function, and history of substance abuse. The medical record also should document the presence of one or more recognized medical indications for the use of a controlled substance.

DEF_WV_Trial_00043262

DEF-WV-03605.00003

**Treatment Plan**—The written treatment plan should state objectives that will be used to determine treatment success, such as pain relief and improved physical and psychosocial function, and should indicate if any further diagnostic evaluations or other treatments are planned. After treatment begins, the physician should adjust drug therapy to the individual medical needs of each patient. Other treatment modalities or a rehabilitation program may be necessary depending on the etiology of the pain and the extent to which the pain is associated with physical and psychosocial impairment.

**Informed Consent and Agreement for Treatment**—The physician should discuss the risks and benefits of the use of controlled substances with the patient, persons designated by the patient or with the patient's surrogate or guardian if the patient is without medical decision-making capacity. The patient should receive prescriptions from one physician and one pharmacy whenever possible. If the patient is at high risk for medication abuse or has a history of substance abuse, the physician should consider the use of a written agreement between physician and patient outlining patient responsibilities, including

- urine/serum medication levels screening when requested;
- number and frequency of all prescription refills; and
- reasons for which drug therapy may be discontinued (e.g., violation of agreement).

**Periodic Review**—The physician should periodically review the course of pain treatment and any new information about the etiology of the pain or the patient's state of health. Continuation or modification of controlled substances for pain management therapy depends on the physician's evaluation of progress toward treatment objectives. Satisfactory response to treatment may be indicated by the patient's decreased pain, increased level of function, or improved quality of life. Objective evidence of improved or diminished function should be monitored and information from family members or other caregivers should be considered in determining the patient's response to treatment. If the patient's progress is unsatisfactory, the physician should assess the appropriateness of continued use of the current treatment plan and consider the use of other therapeutic modalities.

**Consultation**—The physician should be willing to refer the patient as necessary for additional evaluation and treatment in order to achieve treatment objectives. Special attention should be given to those patients with pain who are at risk for medication misuse, abuse or diversion. The management of pain in patients with a history of substance abuse or with a comorbid psychiatric disorder may require extra care, monitoring, documentation and consultation with or referral to an expert in the management of such patients.

**Medical Records**—The physician should keep accurate and complete records to include

1. the medical history and physical examination,
2. diagnostic, therapeutic and laboratory results,
3. evaluations and consultations,
4. treatment objectives,
5. discussion of risks and benefits,
6. informed consent,
7. treatments,
8. medications (including date, type, dosage and quantity prescribed),
9. instructions and agreements and
10. periodic reviews.

Records should remain current and be maintained in an accessible manner and readily available for review.

**Compliance With Controlled Substances Laws and Regulations**—To prescribe, dispense or administer controlled substances, the physician must be licensed in the state and comply with applicable federal and

state regulations. Physicians are referred to the Physicians Manual of the U.S. Drug Enforcement Administration and (any relevant documents issued by the state medical board) for specific rules governing controlled substances as well as applicable state regulations.

### Section III: Definitions
For the purposes of these guidelines, the following terms are defined as follows:

**Acute Pain**—Acute pain is the normal, predicted physiological response to a noxious chemical, thermal or mechanical stimulus and typically is associated with invasive procedures, trauma and disease. It is generally time-limited.

**Addiction**—Addiction is a primary, chronic, neurobiologic disease, with genetic, psychosocial, and environmental factors influencing its development and manifestations. It is characterized by behaviors that include the following: impaired control over drug use, craving, compulsive use, and continued use despite harm. Physical dependence and tolerance are normal physiological consequences of extended opioid therapy for pain and are not the same as addiction.

**Chronic Pain**—Chronic pain is a state in which pain persists beyond the usual course of an acute disease or healing of an injury, or that may or may not be associated with an acute or chronic pathologic process that causes continuous or intermittent pain over months or years.

**Pain**—An unpleasant sensory and emotional experience associated with actual or potential tissue damage or described in terms of such damage.

**Physical Dependence**—Physical dependence is a state of adaptation that is manifested by drug class-specific signs and symptoms that can be produced by abrupt cessation, rapid dose reduction, decreasing blood level of the drug, and/or administration of an antagonist. Physical dependence, by itself, does not equate with addiction.

**Pseudoaddiction**—The iatrogenic syndrome resulting from the misinterpretation of relief seeking behaviors as though they are drug-seeking behaviors that are commonly seen with addiction. The relief seeking behaviors resolve upon institution of effective analgesic therapy.

**Substance Abuse**—Substance abuse is the use of any substance(s) for non-therapeutic purposes or use of medication for purposes other than those for which it is prescribed.

**Tolerance**—Tolerance is a physiologic state resulting from regular use of a drug in which an increased dosage is needed to produce a specific effect, or a reduced effect is observed with a constant dose over time. Tolerance may or may not be evident during opioid treatment and does not equate with addiction.