# Memorandum

| Subject | Date |
|---|---|
| Meeting Between Office of Diversion Control (OD) and McKesson Corp. on January 3, 2006 (DFN: 060-06.05) | JAN 2 3 2006 |

To
Joseph T. Rannazzisi
Deputy Assistant Administrator
Office of Diversion Control

From
Michael R. Mapes, Chief
E-Commerce Section
Office of Diversion Control

On January 3, 2006, a meeting was held at the Office of Diversion Control conference room between representatives of McKesson Corp. and the Drug Enforcement Administration.

Representing McKesson Corp. were Donald G. Walker, Senior Vice President, Distribution Operations; Bill Mahoney, Distribution Center Manager, Lakeland Distribution Center, Florida; Gary Hillard, Director of Regulatory Affairs; and John A. Gilbert Jr., Attorney at Law, Hyman, Phelps & McNamara.

Representing the Drug Enforcement Administration (DEA), Office of Diversion Control (OD) were Joseph T. Rannazzisi, Deputy Assistant Administrator; Michael R. Mapes, Chief, E-Commerce Section; Kyle J. Wright, Chief, E-Commerce Operations Unit; and Charles E. Trant, Office of Chief Counsel.

The purpose of the meeting was to discuss the delivery of over two million dosage units of hydrocodone to pharmacies located in the Tampa, Florida, area alleged to be Internet pharmacies.

Mr. Mapes opened the meeting by making introductions and covering the background of previous meetings and telephonic conversations between OD and McKesson Corp. Specifically addressed were the following:

- A meeting between McKesson Corp. and E-Commerce Section was held September 1, 2005, at which time McKesson Corp. was given a full detailed briefing of the OD's Distributors Initiative to address the Internet pharmacy problem. McKesson Corp. was provided a briefing book covering the briefing and all supporting documentation.
- Issues to be considered were frequency of orders, size of orders, range of products purchases, and percentage of controlled vs. non-controlled.
- Current controlled substances being abused via the Internet were identified as hydrocodone, alprazolam, and Phentermine.
- Pharmacies of particular concern were located in Florida, Texas, and Colorado.
- Specifically addressed concerns with ████████████████, a current customer of

Confidential – Subject to Protective Order

PLAINTIFFS TRIAL EXHIBIT
P-09116_00001

US-DEA-00000371
P-09116_00001

McKesson's.
- On October 6, 2005, Mr. Mapes called Mr. Gilbert to discuss comments the E-Commerce Section had received that McKesson Corp. was not taking the Internet pharmacy problem seriously. Mr. Mapes was assured by Mr. Gilbert that McKesson Corp. was taking the matters seriously and working to change their procedures.
- On October 10, 2005, a DEA investigator from the Tampa District Office contacted Bill Mahoney at the McKesson Distribution Center in Lakeland, Florida, and expressed concerns of hydrocodone sales to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓.
- The E-Commerce Section retrieved ARCOS data which revealed that between October 10 and October 21, 2005, the following alleged Internet pharmacies received the identified quantities of hydrocodone:



- ▓▓▓▓▓▓ – 252,100 d.u.
- ▓▓▓▓▓▓ – 254,700 d.u.
- ▓▓▓▓▓▓ – 158,400 d.u.
- ▓▓▓▓▓▓ – 520,200 d.u.
- ▓▓▓▓▓▓ – 500,900 d.u.
- ▓▓▓▓▓▓ – 404,400 d.u.

Mr. Rannazzisi then address the representatives of McKesson Corp. and informed them that it was his concerted opinion based upon the information presented, the DEA needed to ask for the surrender of the McKesson's Lakeland Distribution Center registration or DEA would pursue an Order to Show Cause against the DEA registration of the McKesson facility in Lakeland, Florida.

At this time McKesson Corp., represented by Mr. Gilbert, objected to pursuit of these actions. McKesson Corp. stated that they had hoped to come to the DEA with the actions being initiated, not to be asked for surrender of the Distribution Center's DEA registration. Mr. Gilbert went on to elaborate the following:
- If these pharmacies are such a problem, why hasn't the DEA revoked their registration?
- McKesson Corp. is not an enforcement arm of the DEA and cannot, as readily as the DEA, identify the same information as the DEA because of HIPPA constraints.
- From the inspections that McKesson Corp. has conducted to this point, McKesson Corp. was unable to identify the indicators as presented by the DEA.
- The sales reports are not as readily available for analysis as the DEA believes them to be and must be reviewed to address the legitimate concerns of legitimate customers.

Through the course of the above discussion, McKesson Corp., by their own admission, was unable to provide a plausible explanation for the sales of over two million dosage units of hydrocodone, in a 21-day period, to pharmacies previously identified by DEA to McKesson Corp.

Mr. Rannazzisi concluded the meeting by informing the representatives of McKesson Corp. that a further review of the actions discussed and the investigation by the Tampa District Office would be conducted and a determination of the action(s) to be pursued would be made.

After the conclusion of this meeting, it was learned from Gary Hillard of McKesson Corp. that one of the reasons they were not able to realize the full volume of hydrocodone product going out to the Florida pharmacies was that their reports only included the name brand hydrocodone products distributed and was

Confidential – Subject to Protective Order

leaving out the generic products. It was only after realizing that the generic were not being reported, was McKesson Corp. then able to see the large quantities that DEA was bringing to McKesson's attention.

cc: Ms. Curry, OD/D
    Mr. Murphy, OEP
    Chris Sannerud, ODE
    DPM Barbara McGrath
    Miami Field Division

bcc: ✓DFN: 060-06.05
     Chron

ODC _____
ODCO ⟨sxx⟩ :KWright:pln ___pln___ :703-653-2103:01/11/06
Filename: McKesson-1-11-06.doc

Confidential – Subject to Protective Order

US-DEA-00000373
P-09116_00003