PLAINTIFFS' TRIAL EXHIBIT
P-09270_00001

6. Kelly, P., Stallard, N., Zhou, Y., Whitehead, J. & Bowman, C. Sequential genome-wide association studies for monitoring adverse events in the clinical evaluation of new drugs. *Stat. Med.* **25**, 3081–3092 (2006).
7. U.S. Government Accountability Office. New Drug Development: Science, Business, Regulatory, and Intellectual Property Issues Cited as Hampering Drug Development Efforts, GAO-07-49, 35–36 (Government Accountability Office, 17 Nov. 2006).
8. Hetherington, S. *et al.* Genetic variations in HLA-B region and hypersensitivity reactions to abacavir. *Lancet* **359**, 1121–1122 (2002).
9. Mallal, S. *et al.* Association between presence of HLA-B*5701, HLA-DR7, and HLA-DQ3 and hypersensitivity to HIV-1 reverse-transcriptase inhibitor abacavir. *Lancet* **359**, 727–732 (2002).
10. Phillips, E.J. Genetic screening to prevent abacavir hypersensitivity reaction: are we there yet? *Clin. Infect. Dis.* **43**, 103–105 (2006).
11. Hughes, A.R. *et al.* CNA30027 Study Team; CNA30032 Study Team. Association of genetic variations in HLA-B region with hypersensitivity to abacavir in some, but not all, populations. *Pharmacogenomics* **5**, 203–211 (2004).

See ARTICLE page 903

# The DEA's Balancing Act to Ensure Public Health and Safety

JT Rannazzisi[1]

**In their article in this issue, Reidenberg and Willis assert that there are multiple barriers to the adequate treatment of pain and that one of these barriers is fear of government action against a physician who prescribes opioids for patients in pain.[1] At the same time, the authors state that the risk of a physician's being punished by either a state medical board or the Drug Enforcement Administration (DEA) for a patient in pain with adequate medical record documentation is very small.**

The DEA agrees that the percentage of physicians who are subject to adverse action based on a DEA investigation is extremely small. Indeed, the DEA recently published a policy statement that sought to emphasize this very point and alleviate the concerns of some physicians about prescribing controlled substances to treat pain. (The policy statement, published in the Federal Register on September 6, 2006, can be accessed on the Web sites of both the Federal Register and the DEA's Office of Diversion Control.)

As explained in the policy statement, the long-standing requirement under the law that physicians may prescribe controlled substances only for legitimate medical purposes in the usual course of professional practice should in no way interfere with the legitimate practice of medicine or cause any physician to be reluctant to provide legitimate pain treatment. The DEA also stated in that document that it wishes to dispel the mistaken notion among medical professionals that the agency has embarked on a campaign to "target" physicians who prescribe controlled substances for the treatment of pain (or that physicians must curb their legitimate prescribing of pain medications to avoid liability). It appears that the findings of Reidenberg and Willis are consistent with the DEA's assertion that there has been no upsurge in the number of cases initiated by the agency against physicians who prescribe controlled substances for pain.

In the references cited by the authors, physicians raised concerns about not having adequate education or training in pain management to adequately assess and treat their pain patients. This raises a critical question that the authors have not addressed as to whether, and to what extent, the reluctance of some physicians to prescribe adequate pain medications is attributable to the education and training that physicians receive in medical school and postgraduate training as opposed to what the authors term fear of government action. As the DEA stated in the policy statement, it is not the agency's role to provide medical training to physicians on the general practice of medicine or to specify the precise medical circumstances and patient characteristics that warrant the use of opioids to treat pain. Rather, that responsibility is carried by the medical community, and how it does so seems likely to be the primary factor determinative of patient care.

As part of this responsibility, many state boards and associations have issued guidelines regarding appropriate treatment of pain patients, while taking steps to prevent diversion and abuse of the prescribed drugs. The DEA encourages physicians to seek guidance from their state medical boards.

Under the Controlled Substances Act (CSA), the DEA is obligated to ensure the availability of pharmaceutical controlled substances for legitimate medical, scientific, and commercial purposes and to prevent these controlled substances, which have the potential for abuse and misuse from being diverted into illicit channels. In particular, the DEA's role under the CSA is to ensure that controlled substances are prescribed, administered, and dispensed only for legitimate medical purposes by DEA-registered practitioners acting in the usual course of professional practice and otherwise in accordance with the CSA and DEA regulations.

To protect public health and safety, the DEA has always had a legal obligation to investigate the extremely small fraction of physicians who use their DEA registration to commit criminal acts or otherwise violate the CSA. The DEA takes this obligation seriously, because even a single physician who uses his or her DEA

[1]Office of Diversion Control, Drug Enforcement Administration, Alexandria, Virginia, USA. Correspondence: JT Rannazzisi (dea.diversion.policy@usdoj.gov)

doi:10.1038/sj.clpt.2007.6100312

registration for criminal purposes can cause enormous harm. But the agency takes just as seriously its obligation to ensure that there is no interference with the dispensing of controlled substances to the American public in accordance with the sound medical judgment of their physicians.

Furthermore, the DEA does not apply a greater level of scrutiny to the prescribing of controlled substances to treat pain compared with other ailments. Regardless of the ailment, the DEA applies evenhandedly the requirement that a controlled substance be prescribed for a legitimate medical purpose in the usual course of professional practice. The idea that prescribing opioids to treat pain will trigger special scrutiny by the DEA is false.

It is also important to note that, as explained in the policy statement, the types of cases in which physicians have been found to have dispensed controlled substances improperly under federal law generally involve a physician's conduct that is not merely of questionable legality (or the physician was simply duped by an addict) but constitutes a glaring instance of criminal activity. The new page on the DEA's Diversion Control Program Web site (http://www.deadiversion.usdoj.gov), "Cases Against Doctors," demonstrates the kind of criminal activity that physicians engaged in that resulted in criminal sanctions. These cases include physicians selling drugs in exchange for money, sex, or pharmaceutical/illicit drugs with no bona fide physician–patient relationship.

The DEA recognizes that the majority of physicians are properly prescribing pharmaceutical controlled substances for a legitimate medical purpose in the course of their professional practice. This is evidenced by the fact that, in any given year, including 2005, fewer than one of every 10,000 physicians in the United States (less than 0.01%) lose their controlled-substance registrations based on a DEA investigation of improper prescribing. (Note that the majority of the cases in which physicians lose their DEA registrations result from actions by state medical boards to revoke or suspend the physicians' state medical licenses.) Most of the complaints that the DEA receives regarding improper prescribing are from state law-enforcement agencies and private citizens, including nurses, pharmacies, and other physicians.

Although the authors focus on the reluctance of some physicians to prescribe adequate amounts of pain medications (an extremely important concern), a balanced discussion of the subject should also include mention of the millions of Americans who abuse prescription controlled substances for nonmedical purposes and the enormous resulting harm to the public health. The extent of the prescription drug–abuse problem has been well documented by respected surveys, such as the Department of Health and Human Services' National Survey on Drug Use and Health and the University of Michigan's Monitoring the Future survey.

The DEA understands that physicians may have concerns and even feelings of fear regarding the possibility of an investigation or enforcement action by the DEA or other law-enforcement agencies. We have actively sought to end these fears through the publication of the policy statement as well as follow-up statements made to various media outlets. As the agency has sought to underscore, the DEA's responsibility to enforce the law does not diminish our firm commitment to the balanced policy of promoting proper pain treatment with pharmaceutical controlled substances, while preventing their diversion, abuse, and misuse. This balancing act will require the cooperative efforts of health-care professionals as well as law-enforcement and regulatory agencies.

The DEA wants physicians to treat pain appropriately under accepted medical standards. Physicians acting in accordance with those standards should be confident that they will not be criminally prosecuted for prescribing appropriate pain medications.

**CONFLICT OF INTEREST**
The author declared no conflict of interest.

© ASCPT 2007

1. Reidenberg, M.M. & Willis, O. Prosecution of physicians for prescribing opioids to patients. *Clin. Pharmacol. Ther.* **81**, 903–906 (2007).